IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| DR. GEORGE RICHARDSON, ROSALIE WEISFELD, AUSTIN JUSTICE COALITION, COALITION OF TEXANS WITH DISABILITIES, MOVE TEXAS CIVIC FUND, LEAGUE OF WOMEN VOTERS OF TEXAS, and AMERICAN GI FORUM OF TEXAS, INC., *Plaintiffs*, <br><br> v. <br><br> TEXAS SECRETARY OF STATE, TRUDY HANCOCK, in her official capacity as BRAZOS COUNTY ELECTIONS ADMINISTRATOR, and PERLA LARA in her official capacity as CITY OF MCALLEN, TEXAS SECRETARY, *Defendants*. | § § § § § § § § § § § § § § § § | No. 5:19-cv-00963 |

**DEFENDANT SECRETARY OF STATE'S REPLY IN SUPPORT OF MOTION TO DISMISS**

Defendant Secretary of State of Texas respectfully files this reply in support of her pending motion to dismiss, Dkt. 30. Plaintiffs' response in opposition to that motion, Dkt. 32, does not refute the motion's showings that this case should be dismissed for lack of standing or, in the alternative, for failure to state a claim on which relief may be granted. As a result, the Secretary requests that she be dismissed as a defendant herein.[1]

### I. Plaintiffs' failure to establish standing defeats the Court's jurisdiction.

Austin Justice[2] and MOVE claim standing to bring this suit on their own behalf. Dkt. 32 at 12. CTD, the League, and GI Forum claim standing to bring this case on behalf of their members. Dkt. 32 at 12-13. Plaintiffs have not pleaded injury-in-fact to support any of these theories of standing. And the individual Plaintiffs have not alleged injury caused by or redressable through the Secretary.

---

[1] This reply addresses Plaintiffs' arguments that might benefit from further clarification. It stands on the existing briefing on the dismissal arguments not revisited here and does not abandon any of these arguments.

[2] For clarity, this filing refers to these Plaintiffs by the short names in their response, Dkt. 32. The Secretary's motion to dismiss referred to Austin Justice as "ACJ," to the League as "LWV," and to GI Forum as "AGIF." *See* Dkt. 30.

1

### a. No Plaintiff organization alleges injury-in-fact.

On the face of the Complaint, the Plaintiff organizations' voter outreach efforts would take place regardless of any alleged action (or inaction) by the Secretary. This compels the conclusion that no Plaintiff organization has alleged injury-in-fact sufficient to show organizational standing, as set out in the motion to dismiss. Dkt. 30 at 6-8. Plaintiffs attempt to avoid this result by citing *OCA-Greater Houston v. Texas* for the proposition that "in determining whether an organization has organizational standing, '[courts] conduct the same inquiry as in the case of an individual,'" and that an "injury alleged as an Article III injury-in-fact need not be substantial." Dkt. 32 at 16 (citing 867 F.3d 604, 612 (5th Cir. 2017) (additional citations omitted)). This is true, as far as it goes, but does not absolve an organizational plaintiff from the requirement to articulate concrete, legally cognizable injury. Indeed, the "injury-in-fact" element of standing "serves to distinguish a person with a direct stake in the outcome of a litigation—even though small—from a person with a mere interest in the problem." *United States v. Students Challenging Regulatory Agency Procedures*, 412 U.S. 669, 689 n.14 (1973).

An examination of the facts in *OCA-Greater Houston* demonstrates that it is inapposite. There, the Court found that organizational plaintiff OCA alleged injury-in-fact where "addressing the challenged provisions frustrates and complicates [OCA's] routine community outreach activities." 867 F.3d at 610. The Court noted that "OCA calibrated its outreach efforts to spend extra time and money educating its members about these Texas provisions and how to avoid their negative effects," but this generalized recital alone was not enough. *Id.* "*Specifically*, OCA employees and volunteers must carefully explain to those it contacts, in the language they understand," the interpretation assistance process at issue. *Id.* (emphasis added). OCA had "explain[ed] that these in-depth conversations take more time than merely explaining the requirements of the VRA, and therefore OCA must spend more time on each call (and reach fewer people in the same amount of time) because of Texas's law." *Id.* Thus, the need to redirect resources to these "in-depth conversations," the Court concluded, "'perceptibly

impaired' OCA's ability to" fulfill its mission to "'get out the vote' among its members." *Id.* (citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982)). *See also* Dkt. 32 at 17, n.3 (stating that *Havens* found injury-in-fact based on "duplicative efforts" that plaintiff had to undertake because of the defendant's actions) (citing 455 U.S. at 379).

Plaintiffs do not allege that they must have in-depth conversations distinct from their routine activities. Austin Justice, CTD, and the League merely claim to "instruct[] voters to write out signatures neatly." Dkt. 1 ¶¶ 12-14, 15-19, 24-27. MOVE claims to tell voters "to sign mail-in ballots as clearly and legibly as possible." Dkt. 1 ¶¶22, 23. And GI Forum does not allege *any* activity to "counteract" any action by the Secretary at all. Since no Plaintiff organization has alleged facts which (if true) state "perceptible impairment" of its routine activities, none has alleged organizational injury-in-fact—not under the authorities in the Secretary's motion to dismiss, and not under *OCA-Greater Houston*.

Plaintiffs' only attempt to overcome this is by arguing that "[a]ll applicable Plaintiffs allege that each 'must expend additional resources'" in the course of "providing instruction and support on mail-in ballots to voters." Dkt. 32 at 15, n.2. (citing Dkt. 1 ¶¶ 14, 18, 23, 26). But these are the very sorts of "threadbare recitals" which the Supreme Court finds insufficient to state injury-in-fact at the pleading stage. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

  **b. Because no Plaintiff organization states injury-in-fact to its members, none has associational standing.**

Plaintiffs contend that the Secretary does not "contest that the Plaintiffs representing their members suffered an injury-in-fact as to their constitutional claims." Dkt. 32 at 13. This is wrong. As the parties have briefed, it is settled that an association seeking to "bring suit on behalf of its members" has standing only if—among other things—"its members would otherwise have standing to sue in their own right." *Hunt v. Washington St. Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). This, in turn, requires an allegation that a member of the organization has suffered injury-in-fact. *Id.*; *see also, e.g.*, *United Food & Comm. Workers Union Loc. 751 v. Brown Grp., Inc.*, 517 U.S. 544, 555 (1996) (An

"association 'can establish standing only as representatives of those of their members who have been injured in fact, and thus could have brought suit in their own right.'") (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 (1976)).

Plainly, the Complaint does not allege that any member of CTD, the League, or GI Forum has had their mail-in ballot rejected based on a determination that the signature on the application and the carrier envelope were not executed by the same person. Thus, none has experienced the result Plaintiffs contend is illegal here. Consequently, none has met the requirement for "plaintiff-organizations to make specific allegations establishing that at least one identified member had suffered or would suffer harm" under the challenged law. *Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 563 (2009) (holding that an organization lacked standing because it failed to "submit affidavits . . . showing, through specific facts . . . that one or more of [its] members would . . . be 'directly' affected" by the allegedly illegal activity.")) (alterations in *Summers*).[3] Thus, the Plaintiff organizations lack associational standing to bring constitutional claims for the same reason CTD lacks associational standing to bring an ADA/RA claim—they have not made specific allegations establishing that at least one identified member has suffered or will suffer harm. Dkt. 30 at 12 (quoting *Summers v. Earth Island Inst.*, 555 U.S. at 498).

Plaintiffs dispute this principle's application here, contending that the Fifth Circuit has rejected "the proposition that an association must 'name names' to demonstrate associational standing at the pleading stage." Dkt. 32 at 21 (citing *Hancock Cty. Bd. of Sup'rs. v. Ruhr*, 487 F. App'x 189, 198 (5th Cir. 2012)).[4] It misses the mark to say that the Secretary's associational standing argument is based upon

---

[3] Plaintiffs also make the bizarre argument that it is "improper" to cite cases that do not arise at the Rule 12(b) stage of litigation for the elements of standing. Dkt. 32 at 21 (arguing that certain authorities in the Secretary's motion to dismiss were "appellate and Supreme Court cases reviewing, at least in part, trial court determinations of a motion for summary judgment, a request for preliminary injunction, or a hearing on the merits of a case.") While the standard of *proof* may be different at various stages of litigation, the *elements* of standing are the same—and it is these elements for which the Secretary relies upon the cases Plaintiffs would distinguish.
[4] Plaintiffs only make this assertion in the context of CTD's ADA/RA claim, presumably based upon their mistaken impression that the Secretary does not contest that CTD, the League, and GI Forum have associational standing to assert

the Plaintiff organizations' failure to "name names." And, in any event, the unpublished *Hancock* decision did not so hold. Rather, it found that associational standing could be established where plaintiff "NAACP branches were not merely alleging that some members *might* suffer a 'one person, one vote' violation," but were instead "alleging that some members *were* suffering such a violation." *Hancock Cty. Bd. Of Sup'rs. v. Ruhr*, 487 F. App'x. at 198 (emphasis original). The panel concluded, "[b]y alleging that some of its members were voters from overpopulated and under-represented districts, the NAACP branches adequately alleged that some of its members were suffering a concrete, particularized injury." *Id.*

Here, by contrast, no Plaintiff organization alleges that its members *have* had a mail-in ballot rejected—only that some unidentified member *might* have a mail-in ballot rejected at some unspecified point in the future. *Hancock* therefore does not change the fact that no Plaintiff organization has pleaded facts sufficient to establish associational standing—either under the Constitution, or under the ADA/RA. Indeed, "[t]he Supreme Court has rejected the contention that standing can be established by 'accepting the organization's self-description of the activities of its members' and determining that 'there is a statistical probability that some of those members are threatened with concrete injury.'" *Funeral Consumers All., Inc. v. Serv. Corp. Int'l*, 695 F.3d 330, 343-44 (5th Cir. 2012) (quoting *Summers*, 555 U.S. at 497).

Still, Plaintiffs attempt to avoid this result by arguing that, because they "seek only equitable relief," the Court need not make "any individualized inquiry into damages sustained by any member." Dkt. 1 ¶¶ 19, 27, 31. But whether an individualized assessment of damages is necessary (the third *Hunt* factor) is a different matter from whether a plaintiff has adequately alleged injury-in-fact on behalf of

---

constitutional claims. The Secretary does contest this, and the Complaint wholly omits any allegation that any Plaintiff organization member had their ballot rejected. The principles of associational standing apply equally to the constitutional and ADA/RA claims in this case.

5

its members (the first *Hunt* factor).[5] The two inquiries are separate factors of the associational standing analysis, and failure to demonstrate either one is sufficient to defeat associational standing. *See, e.g., Hunt*, 432 U.S. at 343. *See also Ass'n of Am. Physicians & Surgeons, Inc. v. Texas Med. Bd.*, 627 F.3d 547, 550 (5th Cir. 2010) (noting that "[t]he first two components of *Hunt* address constitutional requirements, while the third prong is solely prudential.") Because no Plaintiff organization has alleged facts establishing that any of "its members would otherwise have standing to sue in their own right," the constitutional requirement of injury-in-fact has not been satisfied, and it is immaterial whether—from a prudential standpoint—the relief requested requires participation of any individual member. *Cf. Hunt*, 432 U.S. at 343.

### c. The individual Plaintiffs cannot establish causation or redressability as to the Secretary.

Plaintiffs premise the bulk of their causation and redressability argument upon *OCA-Greater Houston*, which they cite for the proposition that the Texas Secretary of State as the State's chief election officer is a proper party in a challenge to a state election law. Dkt. 32 at 18-19. *OCA* does not save the individual Plaintiffs' claims because—unlike in *OCA-Greater Houston*—Texas law sets out the challenged ballot verification process in detail, and specifically delegates to local election officers the task of administering it. *See* Dkts. 30 at 1-4; 32 at 22-28. As Plaintiffs' response shows, it was local officials' engagement in that process (a process they alone have authority to administer), that gave rise to the individual Plaintiffs' alleged injury. Dkt. 32 at 22-28. Thus, the individual Plaintiffs' claims are not traceable to or redressable through the Texas Secretary of State. *See* Dkt. 30 at 8-11; *accord OCA-Greater Houston*, 867 F.3d at 613–14.

---

[5] *Hunt*, 432 U.S. at 343 (holding that an association has Article III standing to bring a suit on behalf of its members when "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.")

### II. Plaintiffs' response to the Secretary's motion to dismiss does not revive any claim in this case.

#### a. Plaintiffs do not state a procedural due process claim.

Citing a handful of non-controlling cases, Plaintiffs contend that "[t]he proper standard of review for allegations of procedural due process violations" in the context "of mail-in ballot signature matching laws, is the balancing test set forth in *Mathews v. Eldridge*." Dkt. 32 at 32 (citing 424 U.S. 319, 335 (1976)). But in the Fifth Circuit, "[a] court considering a challenge to a state election law must weigh the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments against the precise interests put forward by the State as justifications for the burden imposed by its rule." *Texas Indep. Party v. Kirk*, 84 F.3d 178, 182 (5th Cir. 1996) (citing *Burdick*, *Takushi*, 504 U.S. 428, 434 (1992); *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1993)). Plaintiffs' attempt to cast aside this standard fails, as *Kirk* was not limited to its facts, but instead—by its terms—addressed any "challenge to a state election law." *Id.* Tellingly, Plaintiffs do not cite a single controlling case applying *Mathews* (rather than *Anderson/Burdick*) to a state election law since *Burdick* was decided.

But even if *Mathews* applied, Plaintiffs' equal protection claim would still fail under Rule 12(b)(6). Courts applying *Mathews* consider "the private interest that will be affected by the official action," "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," as well as "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335.

The private interest in voting is undeniably important, but the private interest in casting a ballot by mail is less so.[6] This is particularly the case here, given that voters are on notice that their

---

[6] It is also worth noting that "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). Plaintiffs cite no controlling case recognizing the right to vote a ballot by mail as a protected "liberty" or "property" interest. *Cf. McDonald v. Board of Election Comm'rs,* 394 U.S. 802, 809

ballots will be verified using the signatures on the ballot application and carrier envelope, are made aware of the option to use a witness signature on the carrier envelope, and may elect an alternative method of casting a ballot if they wish. TEX. ELEC. CODE §§ 84.011(a)(4)(B), 87.041(b)(2). The risk of erroneous deprivation of the right to vote is similarly reduced by the alternative avenues of voting available, as well as the fact that the requirements for voting by mail are clearly communicated to both applicants for a mail-in ballot and local officials assessing signatures to determine whether they were executed by the same person, unless signed by a witness. *See, e.g.*, TEX. ELEC. CODE §§ 87.041(e), (f) (EVBB uses "any two or more signatures of the voter made within the preceding six years" and where applicable "the signature of the voter on the federal postcard application"), 87.027(i) (SVC uses same signatures used under § 87.041(e)).

The government's interest is significant—especially in the context of mail-in voting, which is uniquely vulnerable to fraud.[7] Plaintiffs allude to "expert training" and "uniform standards" for handwriting analysis but fail to explain how such training or standards might change the result in any of their cases. And while Plaintiffs broadly contend that "the cost of remedial procedures would likely be low," Dkt. 32 at 40, they tellingly fail to identify any alternative process that they believe would provide adequate "notice and an opportunity to cure"—let alone one addressing the State's interests.

---

(1969) (distinguishing (protected) right to vote from (unprotected) right to vote by absentee ballot, and holding that laws that require voters to cast different kinds of ballots are valid so long as there is "some rational relationship to a legitimate state end."); *Prigmore v. Renfro*, 356 F. Supp. 427,432 (N.D. Ala. 1972) (upholding constitutionality of Alabama statute concerning absentee balloting, noting that "no fundamental right is involved. The right to vote is unquestionably basic to a democracy, but the right to an absentee ballot is not. Historically, the absentee ballot has always been viewed as a privilege, not an absolute right.") (citations omitted); *Erickson v. Blair*, 670 P.2d 749, 754 (Colo. 1983) (explaining that the idea that absentee voting is a privilege "is based on the premise that the constitutional right of suffrage means the right of a qualified elector to cast a ballot in person at a designated polling place on the day of the election," and that under this view, "absentee voting legislation grants voters something to which they are not constitutionally entitled.")

[7] *See, e.g., Eu v. San Francisco Cty. Democratic Cent. Comm.*, 489 U.S. 214, 231 (1989) (noting that the state "indisputably has a compelling interest in preserving the integrity of its election process."); *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006) (acknowledging "the State's compelling interest in preventing voter fraud"); *Veasey v. Abbott*, 830 F.3d 216, 307, n.46 (5th Cir. 2016) (Jones, Circuit Judge, concurring in part and dissenting in part) ("[T]he greatest fraud risk exists when unauthorized persons direct an elderly, immobile voter's choices on a mail-in ballot"); *Crawford*, 553 U.S. at 225 (Souter, J., dissenting) ("absentee-ballot fraud . . . is a documented problem"); *Griffin v. Roupas*, 385 F.3d 1128, 1131 (7th Cir. 2004) ("Voting fraud . . . is facilitated by absentee voting.").

*Cf.* Dkt. 32 at 38 (complaining that witness option is inadequate because "the Election Code permits a person to only serve as a witness one time for mail-in ballot applications, making it difficult to facilitate efficient use of witnesses.") (citing TEX. ELEC. CODE § 84.004). Thus, even under *Mathews*, Plaintiffs are due no more process than already provided by law.

### b. Plaintiffs do not state an equal protection claim, either.

Plaintiffs' equal protection argument relies heavily upon their view that they "need not meet any 'similarly situated' requirement to state their equal protection claim under *Anderson-Burdick*." Dkt. 32 at 42. Even if this were a complete and accurate statement of the (nuanced) law on this point, it would not relieve Plaintiffs of their obligation to allege a burden which outweighs the State's interests. But rather than engage with the argument in the Secretary's motion to dismiss, Dkt. 30 at 17-19, Plaintiffs simply quote inapposite, non-controlling cases out of context. They have not alleged a violation of the Equal Protection Clause, for the reasons in the Secretary's motion to dismiss.

### c. Given Texas's various accommodations for disabled voters, Plaintiffs cannot maintain an ADA/RA claim.

Plaintiffs attempt to press forward with their ADA/RA claim by arguing that Texas's witness option is "inadequate or impractical." Dkt. 32 at 48. They plead no facts to support such a conclusion and discuss no caselaw applying such a standard to a case like this. In fact, the Complaint does not even *mention* the witness option. Plaintiffs' summary assertion of "inadequacy" or "impracticality" fails on its face.

In the alternative, Plaintiffs argue that the witness option is inadequate because it is "the sole accommodation" for disabled voters, citing *National Federation of the Blind v. Lamone. Id.* (citing 813 F.3d 494, 506-07 (4th Cir. 2016)). This does not save their ADA/RA claim, for two independent reasons. First, it is false—disabled voters also have the option to vote in-person, a process which accommodates disabled voters by, *inter alia*, allowing them to vote curbside, allowing them to be assisted by an assistant of their choosing if they wish, and allowing local election officers to modify

procedures as necessary to ensure disabled individuals are able to vote. TEX. ELEC. CODE § 64.009.[8] Texas law also requires that polling places provide voting stations that comply with the RA and ADA Title II, and that "provide[] a practical and effective means for voters with physical disabilities to cast a secret ballot." *Id.* § 61.012.

Second, Plaintiffs' argument is irrelevant, as accommodations under the ADA are not measured in terms of their numbers. Rather, to prevail on such a claim, "plaintiffs must propose a reasonable modification to the challenged public program that will allow them the meaningful access they seek." *Lamone*, 813 F.3d at 507. And as Plaintiffs acknowledge, the Fourth Circuit in *Lamone* was concerned with the fact that Maryland's "absentee voting program [did] not allow disabled individuals . . . to mark their ballots without assistance." Dkt. 32 at 48, n.7 (quoting *Lamone*, 813 F.3d at 506). Notably here, the signature verification process has nothing to do with how the ballot itself is marked. Rather, a voter who is unable to provide a required signature because of disability may mark the ballot in private and simply have a witness sign the carrier envelope after the ballot is already inside. *E.g.*, TEX. ELEC. CODE § 87.041(b)(1)-(2); *see also id.* § 1.011(a). There is no burden on a disabled voter's ability to cast a secret ballot—either in person, or if the individual elects to vote by mail.

---

[8] This Section provides, *inter alia*, "[i]f a voter is physically unable to enter the polling place . . . on the voter's request, an election officer shall deliver a ballot to the voter at the polling place entrance or curb." TEX. ELEC. CODE § 64.009(a). It further establishes that "[t]he regular voting procedures may be modified by the election officer to the extent necessary to conduct voting under this section, and that "[o]n the voter's request, a person accompanying the voter shall be permitted to select the voter's ballot and deposit the ballot in the ballot box." *Id.* § 64.009(b), (d).

## CONCLUSION

For the foregoing reasons and those in the motion to dismiss, the Secretary should be dismissed as a defendant in this lawsuit.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

DARREN L. MCCARTY
Deputy Attorney General for Civil Litigation

THOMAS A. ALBRIGHT
Chief for General Litigation Division

*/s/ Anne Marie Mackin*
ANNE MARIE MACKIN
Texas Bar No. 24078898
Assistant Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2798 | FAX: (512) 320-0667
anna.mackin@oag.texas.gov

**ATTORNEY FOR DEFENDANT
TEXAS SECRETARY OF STATE**

## CERTIFICATE OF SERVICE

I certify that that on October 30, 2019 this document was filed electronically via the Court's CM/ECF system, causing electronic service upon all counsel of record.

*/s/ Anne Marie Mackin*
ANNE MARIE MACKIN
Assistant Attorney General
