**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **Dr. George Richardson,** | § | |
| **Rosalie Weisfeld, Austin** | § | |
| **Justice Coalition, Coalition** | § | |
| **of Texans with Disabilities,** | § | |
| **Move Texas Civic Fund,** | § | |
| **League of Women Voters** | § | |
| **Of Texas and American GI** | § | |
| **Forum of Texas, Inc.** | § | |
| *Plaintiffs,* | § | |
| | § | |
| **v.** | § | **Civil Action No.: 5:19-CV-00963** |
| | § | |
| **Texas Secretary of State** | § | |
| **Trudy Hancock, in her official** | § | |
| **Capacity as Brazos County** | § | |
| **Elections Administrator and** | § | |
| **Perla Lara in her official** | § | |
| **Capacity as City of McAllen,** | § | |
| **Texas Secretary,** | § | |
| *Defendants* | § | |

**DEFENDANT BRAZOS COUNTY ELECTIONS ADMINISTRATOR**
**TRUDY HANCOCK'S MOTION FOR SUMMARY JUDGMENT**

TO THE HONORABLE JUDGE OF THIS COURT:

Defendant Brazos County Elections Administrator Trudy Hancock (hereinafter "Hancock") files this Motion for Summary Judgment. In support hereof, Defendant Hancock relies on the following:

### I.     Statement of the Case

Plaintiffs, Dr. George Richardson ("Richardson"), Rosalie Weisfeld ("Weisfeld"), Austin Justice Coalition ("Austin Justice"), Coalition of Texans with Disabilities ("CTD"), MOVE Texas Civic Fund ("MOVE"), League of Women Voters of Texas (the "League"), and American GI

Forum of Texas, Inc.[1], filed their Original Complaint on August 7, 2019 (hereinafter "Complaint"). Docket Entry No. 1. Plaintiffs filed this lawsuit against: (1) the Texas Secretary of State; (2) Trudy Hancock, in her official capacity as the Brazos County Elections Administrator; and (3) Perla Lara, in her official capacity as City of McAllen, Texas Secretary. *Id.*

Plaintiffs seek declaratory and injunctive relief pursuant to 42 U.S.C. §1983 and the United States Constitution. *Id.* "Plaintiff Coalition with Texans with Disabilities additionally seeks declaratory and injunctive relief pursuant to Title II of the Americans with Disabilities Act and the Rehabilitation Act of 1973." *Id.* Specifically, Plaintiffs request a declaratory judgment "that the State of Texas' statutory scheme requiring the rejections of mail-in ballots with alleged signature mismatches, specifically set out in Texas Election Code §§87.041(b)(2), (e), and (f), is unconstitutional and violates the ADA and the RA." *Id.* at pg. 24. Further, Plaintiffs request that the Court enjoin the Defendants and the other 254 county agencies administering elections in Texas from: (1) "rejecting any mail-in ballot for signature mismatch reasons"; or, in the alternative, require that they: (1) "provide voters meaningful rejection of a mail-in ballot based on an alleged signature mismatch; and (2) offer voters the ability to cure a mail-in ballot questioned for an alleged signature mismatch." *Id.*

## II.   ISSUES FOR CONSIDERATION

1. Whether any Plaintiff established standing under Article III of the Constitution to sue Defendant Hancock.
2. Whether Defendant Hancock, as the Brazos County Elections Administrator, has the statutory duty under the Texas Election Code to process early voting results, including accepting or rejecting ballots based on the voter's signature.
    a. Whether any Plaintiff demonstrated that Defendant Hancock violated the Due Process Clause of the Fourteenth Amendment for failure to provide a pre-rejection notice and opportunity to cure.
    b. Whether any Plaintiff established that Defendant Hancock violated the Equal Protection Clause of the Fourteenth Amendment.

---

[1] American GI Forum of Texas, Inc. was dismissed from this lawsuit by a Joint Stipulation of Dismissal on May 19, 2020. Docket Entry No. 61.

    c.   Whether any Plaintiff proved that Defendant Hancock violated the Equal Protection Clause of the Fourteenth Amendment by failing to provide uniform guidelines or principles for Counties to compare signatures.

    d.   Whether any Plaintiff established that Defendant Hancock violated Title II of the Americans with Disabilities Act and the Rehabilitation Act of 1973.

## III.   ARGUMENT

### A.  Summary Judgement Standard

Pursuant to Fed. R. Civ. P. 56(c), summary judgment should be granted where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Speaks v. Trikora Lloyd P.T.*, 838 F.2d 1436, 1438-39 (5th Cir. 1988). Fed. R. Civ. P. 56(e) provides, in part:

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party. Fed. R. Civ. P. 56(e)(2).

Summary judgment is precluded under Fed. R. Civ. P. 56(c) when the dispute is genuine and the disputed facts might affect the outcome of the suit. *Id.*; *Speaks*, 838 F.2d at 1438-39. To satisfy this burden, the movant must either submit evidentiary documents that negate the existence of some material element of the nonmoving party's claim or defense or, if the crucial issue is one for which the nonmoving party will bear the burden of proof at trial, merely point out that the evidentiary documents in the record contain insufficient proof concerning an essential element of the nonmoving party's claim or defense. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). A summary judgment movant who will not bear the burden of proof at trial may meet its initial burden of establishing that there is no genuine issue of material fact merely by pointing out the absence of evidence supporting the nonmoving party's case. *See Stults v. Conoco, Inc.*, 76 F.3d 651, 656 (5th Cir. 1996); *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718-719 (5th Cir. 1995).

Once the moving party has carried that burden, the burden shifts to the nonmoving party to show that summary judgment is not appropriate. *See Exxon Corp. v. Baton Rouge Oil & Chem. Workers Union*, 77 F.3d 850, 853 (5th Cir. 1996); *Stults*, 76 F.3d at 656. The party opposing summary judgment cannot establish a genuine issue of material fact by resting on the allegations made in his pleadings without setting forth specific facts establishing a genuine issue worthy of trial. *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992), *cert. denied* 506 U.S. 825 (1992). "Mere conclusory allegations are not competent summary judgment evidence, and they are therefore insufficient to defeat or support a motion for summary judgment." *Id*.

**B. Standing**

The Doctrine of Standing establishes that at a constitutional minimum, standing contains three elements. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "To establish standing under Article III of the Constitution, a plaintiff must demonstrate (1) that he or she suffered an injury in fact that is concrete, particularized, and actual or imminent, (2) that the injury was caused by the defendant, and (3) that the injury would likely be redressed by the requested judicial relief." *Texas Democratic Party v. Abbott*, No. 20-50407, 2020 WL 2982937, at *5 (5th Cir. June 4, 2020)(*quoting Thole v. U.S. Bank N.A.*, 140 S.Ct. 1615, 1618 (U.S. June 1, 2020)). In this matter, Plaintiffs consist of two individuals, Richardson and Weisfeld, and four associations/organizations, Austin Justice, CTD, MOVE and the League.

In order to have standing for an association or organization, the association or organization must meet all of the well-known requirements of *Lujan*:

> First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized; and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'" Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court." Third, it must

be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

*OCA-Greater Houston v. Texas*, 867 F.3d 604, 609-610 (5th Cir. 2017)(*quoting Lujan,* 504 U.S. at 560–61). There are two theories where an association or organization can establish an injury-in-fact, either "associational standing" or "organizational standing." *Id.* at 610. "'Associational standing' is derivative of the standing of the association's members, requiring that they have standing and that the interests the association seeks to protect be germane to its purpose." *Id.* "By contrast, 'organizational standing' does not depend on the standing of the organization's members" – where the organization, in its own name "meets the same standing test that applies to individuals." *Id.*

At the summary judgment stage, Plaintiffs can no longer rest on "mere allegations"; instead, "each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof," by providing evidence of specific facts to defeat summary judgment. *Lujan*, 504 U.S. at 561. "When the suit is one challenging the legality of government action or inaction, the nature and extent of facts that must be averred (at the summary judgment stage) … in order to establish standing depends considerably upon whether the plaintiff is himself an object of the action (or forgone action) at issue." *Id.* If the plaintiff's claimed "injury arises from the government's allegedly unlawful regulation (or lack of regulation) of *someone else,* much more is needed" and standing is "substantially more difficult" to establish. *Id.* at 562.

The challenge of the validity of a Texas election statute "is, without question, fairly traceable to and redressable by ... its Secretary of State, who serves as the 'chief election officer of the state.'" *Texas Democratic Party*, 2020 WL 2982937, at *6 (*quoting OCA-Greater-Houston*, 867 F.3d at 613). It is the Secretary of State that "has the power to take appropriate action to protect Texans' voting rights from abuse by the authorities administering the state's electoral processes."

*Id.* (internal quotations omitted). The Secretary of State has the duty to "'obtain and maintain uniformity in the application, operation, and interpretation of' Texas's election laws, including by 'prepar[ing] detailed and comprehensive written directives and instructions relating to' those vote-by-mail rules." *Id.* (*quoting* TEX. ELEC. CODE § 31.003).

"Courts sometimes make standing law more complicated than it needs to be[,]" "[P]laintiffs [may] lack Article III standing for a simple, commonsense reason" under ordinary Article III standing analysis. *Thole*, 140 S.Ct. at 1622. "[I]n 'every case involving construction of a statute,' the 'starting point ... is the language itself.'" *Id.* at 1623 (THOMAS, J., with who J. GORSUCH joins, concurring)(*quoting Varity Corp. v. Howe*, 516 U.S. 489, 528 (1996) and *Ernst & Ernst v. Hochfelder*, 425 U.S. 185 (1976); ellipsis in original).

In this matter, Plaintiffs Richardson and Weisfeld cannot satisfy any of the three required elements of standing and therefore, lack statutory standing to bring any claims against Defendant Hancock. Specifically, Weisfeld, who is not a registered voter in Brazos County, has no concrete or particularized stake in any claims asserted against Defendant Hancock. Additionally, Plaintiffs Austin Justice, CTD, MOVE and the League cannot meet either "associational standing" or "organizational standing" to establish an Article III case or controversy against Defendant Hancock. Plaintiff Austin Justice, CTD, MOVE and the League cannot identify any concrete or particularized stake in any claims against Defendant Hancock. The acceptance or rejection of mail-in ballots is statutorily mandated to be carried out by the early voting ballot board (EVBB), not Brazos County or Defendant Hancock.

### 1. Texas Election Code

In this matter, Plaintiffs challenge the validity of the statutory scheme set out in Texas Election Code §§87.041(b)(2), (e), and (f), requiring the rejections of mail-in ballots with alleged

signature mismatches. Docket Entry No. 1. Texas Election Code, section 87.041 provides as follows:

(a) **<u>The early voting ballot board shall</u>** open each jacket envelope for an early voting ballot voted by mail and determine whether to accept the voter's ballot.

(b) A ballot may be accepted only if:

(1) the carrier envelope certificate is properly executed;

<u>(2) neither the voter's signature on the ballot application nor the signature on the carrier envelope certificate is determined to have been executed by a person other than the voter, unless signed by a witness;</u>

(3) the voter's ballot application states a legal ground for early voting by mail;

(4) the voter is registered to vote, if registration is required by law;

(5) the address to which the ballot was mailed to the voter, as indicated by the application, was outside the voter's county of residence, if the ground for early voting is absence from the county of residence;

(6) for a voter to whom a statement of residence form was required to be sent under Section 86.002(a), the statement of residence is returned in the carrier envelope and indicates that the voter satisfies the residence requirements prescribed by Section 63.0011; and

(7) the address to which the ballot was mailed to the voter is an address that is otherwise required by Sections 84.002 and 86.003.

(c) If a ballot is accepted, the board shall enter the voter's name on the poll list unless the form of the list makes it impracticable to do so. The names of the voters casting ballots by mail shall be listed separately on the poll list from those casting ballots by personal appearance.

(d) <u>A ballot shall be rejected if any requirement prescribed by Subsection (b) is not satisfied. In that case, the board shall indicate the rejection by entering "rejected" on the carrier envelope and on the corresponding jacket envelope.</u>

(e) In making the determination under Subsection (b)(2), **the board** <u>may also compare the signatures with any two or more signatures of the voter made within the preceding six years and on file with the county clerk or voter registrar to determine whether the signatures are those of the voter.</u>

(f) In making the determination under Subsection (b)(2) for a ballot cast under Chapter 101 or 105, **the board shall** <u>compare the signature on the carrier envelope</u>

<u>or signature cover sheet with the signature of the voter on the federal postcard
application.</u>

(g) A person commits an offense if the person intentionally accepts a ballot for
voting or causes a ballot to be accepted for voting that the person knows does not
meet the requirements of Subsection (b). An offense under this subsection is a Class
A misdemeanor.

Tex. Elec. Code §87.041 (emphasis added). In Texas, the EVBB **shall** have jurisdiction to process

early voting results as it is statutorily required to be created for that purpose, not the County or the

early voting clerk (Brazos County and/or Brazos County Election Administrator, Trudy Hancock).

*Id*. at §87.001 (emphasis added). The EVBB consists of a presiding judge and at least two other

members. *Id*. at §87.002(a). The presiding judge is appointed from a list provided "by the political

party whose nominee for governor received the most votes in the county in the most recent

gubernatorial general election." *Id*. at §87.002(d). "Each county chair of a political party with

nominees on the general election ballot shall submit … a list of names of persons eligible to serve

on the early voting ballot board." *Id*. at §87.002(c). The members of the EVBB are statutorily

required to take the following oath:

> I swear (or affirm) that I will objectively work to be sure every eligible voter's vote
> is accepted and counted, and that only the ballots of those voters who violated the
> Texas Election Code will be rejected. I will make every effort to correctly reflect
> the voter's intent when it can be clearly determined. I will not work alone when
> ballots are present and will work only in the presence of a member of a political
> party different from my own. I will faithfully perform my duty as an officer of the
> election and guard the purity of the election.

*Id*. at §87.006(a).  The EVBB, not Brazos County and/or Hancock, determines "whether

to accept early voting ballots voted by mail in accordance with Section 87.041." *Id*. at

§87.0241(a).

The early voting clerk, Hancock, has no statutory role or authority of oversight related to the EVBB and the EVBB's processing of early voting results. *Id.* §87.001, *et seq*. The EVBB is independent from the County and the early voting clerk, as the membership consists of nominations from lists provided by the political parties – not Brazos County and/or Hancock. The role of the early voting clerk in the processing of early voting results, Hancock, is the delivery of the ballots to the EVBB. Specifically, "[t]he early voting clerk **shall** deliver to the early voting ballot board the jacket envelopes containing the early voting ballots voted by mail, regardless of the ballot type or voting system used." *Id.* at §87.021(2) (emphasis added). The timeframe for the delivery of ballots and other materials to the EVBB by the early voting clerk is mandated by statute:

> the materials shall be delivered to the early voting ballot board under this subchapter during the time the polls are open on election day, or as soon after the polls close as practicable, at the time or times specified by the presiding judge of the board;

> [i]n an election in which regular paper ballots are used for early voting by personal appearance or by mail, the materials may be delivered to the board between the end of the period for early voting by personal appearance and the closing of the polls on election day, or as soon after closing as practicable, at the time or times specified by the presiding judge of the board; and

> in an election conducted by an authority of a county with a population of 100,000 or more or conducted jointly with such a county, the jacket envelopes containing the early voting ballots voted by mail may be delivered to the board between the end of the ninth day before the last day of the period for early voting by personal appearance and the closing of the polls on election day, or as soon after closing as practicable, at the time or times specified by the presiding judge of the board.

*Id.* at §§87.022; 87.0221(a); & 87.0222(a), respectively.

Here, the delivery of the ballots and other materials is not at issue or any way a part of this lawsuit – Plaintiffs seek relief for the rejection of mail-in ballots based on a signature mismatch by the EVBB or signature verification committee (SVC). Docket Entry No. 1. Plaintiffs cannot

dispute that Brazos County does not have an SVC or that the County had an SVC in the past. Docket Entry No 1 and Exhibit 8 at 12:24 – 13:4.[2]

The EVBB "may determine whether to accept early voting ballots voted by mail in accordance with Section 87.041 at any time after the ballots are delivered to the board;" however, the EVBB "may not count early voting ballots until: (1) the polls open on election day; or (2) in an election conducted by an authority of a county with a population of 100,000 or more or conducted jointly with such a county, the end of the period for early voting by personal appearance." Tex. Elec. Code § 87.0241(a) & (b). "The **secretary of state shall** prescribe any procedures necessary for implementing this section in regard to elections described in Subsection (b)(2)," elections conducted in a county with a population of 100,000 or more. *Id.* at §87.0241(c) (emphasis added).

If a ballot is rejected, it is the duty of the presiding judge of the EVBB, not Defendant Hancock, to deliver written notice to the voter of the reason for the rejection of the ballot. *Id.* at §87.0431(a). Specifically, "[n]ot later than the 10th day after election day, the **presiding judge of the early voting ballot board shall** deliver written notice of the reason for the rejection of a ballot to the voter at the residence address on the ballot application." *Id.* (emphasis added). The only role of the early voting clerk is the statutory requirement to "deliver notice to the attorney general, including certified copies of the carrier envelope and corresponding ballot application, of any ballot rejected because: (1) the voter was deceased; (2) the voter already voted in person in the same election; (3) the signatures on the carrier envelope and ballot application were not executed by the same person; (4) the carrier envelope certificate lacked a witness signature; or (5) the carrier envelope certificate was improperly executed by an assistant", not later than the 30th day after

---

[2] References to deposition testimony is cited as page number : line number.

election day. *Id*. at §87.0431(b). "The **attorney general shall** prescribe the form and manner of submission under Subsection (b). **The secretary of state shall adopt rules as necessary to implement the requirements prescribed under this subsection**." *Id*. at §87.0431(c)(emphasis added).

### 2.  Dr. George Richardson

In this matter, Richardson alleges that "the county gave him no notice of its decision until after the election, notwithstanding the fact that Dr. Richardson would have confirmed that it was his signature on the mail-in ballot if so asked." Docket Entry No. 1, ¶ 3. Further, Richardson mistakenly asserts that "[a]fter the election, he received a letter from Brazos County notifying him that his ballot was rejected because of a signature mismatch." *Id.* at ¶ 10. Finally, Richardson claims that he will continue to cast mail-in ballots only when "the county either stops rejecting mail-in ballots based on an alleged signature mismatch or provides voters, at the very least, a pre-rejection notice and the ability to cure mail-in ballots questioned for an alleged signature mismatch." *Id.*

In this case, Dr. Richardson cannot establish that that he suffered an injury in fact that is concrete, particularized, and actual or imminent. Even Plaintiffs' own expert, Linton Mohammed, Phd., testified that he reviewed the signatures from the mail-in ballot and application purported to be from Dr. Richardson. Exhibit 1 at 26:5 – 29:5. Specifically, Dr. Mohammed testified that in his expert opinion as a forensic document examiner that the two signatures were not a match – "they were pictorially dissimilar." *Id*. at 29:1 – 29:5.

As shown above, Defendant Hancock is not the official statutorily charged with reviewing votes by mail to determine whether to accept a voter's ballot. Tex. Elec. Code §87.041. The EVBB

has the sole jurisdiction to process early voting results, including mail-in ballots. *Id*. and *Id*. at §87.001. Dr. Richardson testified:

```
13      Q. (BY MR. MAGEE) Besides being told by someone
14      about the process used for reviewing signatures on
15      mail-in ballots, have you done anything else to
16      familiarize yourself with the process to review those
17      ballots?
18      A. No.
```

Exhibit 2 at 51:13 – 51:18. Further, Richardson mistakenly argues that the County needs to stop rejecting mail-in ballots, provide a pre-rejection notice and ability to cure mail-in ballots. However, Brazos County has no statutory duty or requirement concerning notification of a rejected ballot. Docket Entry No. 1, ¶ 10. As stated above, it is the duty of the presiding judge of the EVBB, not Defendant Hancock, to deliver written notice to the voter of the reason for the rejection of the ballot not later than the 10th day after election day. Tex. Elec. Code §87.0431(a). Therefore, any alleged injury by Richardson was not caused by Defendant Hancock.

Finally, Richardson cannot establish that any alleged injury would likely be redressed by the requested judicial relief against Defendant Hancock. Richardson has failed to sue the Brazos County EVBB.

For these reasons, Richardson fails to establish standing under Article III of the Constitution and his claims should be dismissed in their entirety against Defendant Hancock.

### 3.  Rosalie Weisfeld

Weisfeld's allegations related to a city run-off election in 2019 where the City of McAllen rejected her mail-in ballot. Docket Entry No. 1, ¶ 4. Further, Weisfeld states that she is an individual voter in McAllen, Texas and alleges that she "was improperly and unconstitutionally disenfranchised in the 2019 McAllen, Texas city run-off election." *Id.* at ¶ 11.

It is undisputed that Weisfeld cannot establish standing against Defendant Hancock as she has not claimed any injury that occurred from Brazos County or that there is a causal connection between any alleged injury and Defendant Hancock. *Id.* Further, Weisfeld cannot demonstrate that any alleged injury she may have suffered would be adequately redressed by a judicial decision against Defendant Hancock. *Id.* Weisfeld has had no prior dealings with the Brazos County election administrator or Defendant Hancock. Exhibit 3 at 51:16 – 51:22.

For these reasons, Weisfeld fails to establish standing under Article III of the Constitution and her claims should be dismissed in their entirety against Defendant Hancock.

### 4. Austin Justice Coalition

In this Complaint, AJC states that it is a non-partisan, non-profit organization. Docket Entry No. 1, ¶ 12. "AJC operates #ProjectOrange, a coordinated campaign to enter the Travis County Jail, register eligible voters, and provide support to them in requesting and submitting mail-in ballots." *Id.* Further, AJC states that it "works with the Travis County Jail and the Travis County Elections Department to ensure applications are received on time by the Elections Department, mail-in ballots are received by the inmate voters, and completed mail-in ballots are received by the Elections Department on time." *Id.* at ¶ 13. Finally, AJC claims that "[b]ecause of Defendants' unlawful signature comparison procedure, each signed ballot improperly and arbitrarily rejected for an alleged signature mismatch undermines the efficacy of AJC's #Project Orange campaign." *Id.* at ¶ 14.

Austin Justice cannot establish that a concrete and particularized injury occurred or that there is any actual or imminent threat of injury that is not conjectural or hypothetical. Secondly, Austin Justice fails to establish that there is a causal connection between any alleged injury and Defendant Hancock. Finally, Austin Justice cannot demonstrate that any alleged injury of Austin

Justice would be adequately redressed by a judicial decision against Defendant Hancock, such an assertion would be merely speculative.

Larissa Rodionov, on behalf of Austin Justice, testified that Austin Justice operates a project named Project Orange which assists inmates by mail applications. Exhibit 4 at 46:4 – 46:9. All of the work by Austin Justice is performed in Travis County at the Travis County Correctional Complex. *Id*. at 59:2 – 59:7. Ms. Rodionov testified that she is not aware of any time that Austin Justice has assisted any voter whose mail-in ballot was rejected for a signature mismatch. *Id*. at 64:18 – 64:22. Austin Justice has not worked in Brazos County and has had no communications with the Brazos County elections office. *Id*. at 70:8 – 70:19. Therefore, Austin Justice cannot identify any policy or regulation of Brazos County/Defendant Hancock concerning signature verification or mail-in ballots that Austin Justice challenges resulting in an injury caused by Brazos County/Defendant Hancock.

For these reasons, Austin Justice fails to establish standing under Article III of the Constitution and its claims should be dismissed in their entirety against Defendant Hancock.

### 5.  Coalition of Texans with Disabilities

CTD is suing the "Defendants on its own behalf and on behalf of its members who use the mail-in ballot process based on their eligibility due to disability." Docket Entry No. 1, ¶ 15. CTD alleges that its "mission is significantly frustrated by the current state laws and policies that result in the improper rejection of disabled voters' mail-in ballots." *Id.* at ¶ 18. Further, CTD claims that "[b]ecause of Defendants' unlawful signature comparison procedure, each signed ballot improperly and arbitrarily rejected for an alleged signature mismatch undermines the efficacy of CTD's mail-in ballot work." *Id.* Finally, CTD assets that "[n]either the claims asserted nor the

relief requested by CTD require the participation of its individual members who regularly vote by mail." *Id.* at ¶ 19.

In this case, CTD cannot establish that a concrete and particularized injury occurred or that there is any actual or imminent threat of injury that is not conjectural or hypothetical. Secondly, CTD fails to establish that there is a causal connection between any alleged injury and Defendant Hancock. Finally, the League cannot demonstrate that any alleged injury of CTD would be adequately redressed by a judicial decision against Defendant Hancock, such an assertion would be merely speculative.

Chase Bearden, on behalf of CTD, testified that he does not know of any CTD member that has had a mail-in ballot rejected because of a signature mismatch, including any in Brazos County. Exhibit 5 at 66:1 – 66:10; 77:12 – 77:20. Mr. Bearden testified that he spoke with several members of CTD about mail-in ballots, their disabilities and this litigation. *Id.* at 13:6 – 15:8. Further, Mr. Bearden testified that he nor any of the three CTD members that he discussed mail-in ballots are registered voters in Brazos County. *Id.* at 77:2 – 77:11. Finally, Mr. Bearden did not identify any policy or regulation of Brazos County/Defendant Hancock concerning signature verification or mail-in ballots that CTD challenges resulting in an injury caused by Brazos County/Defendant Hancock.

For these reasons, CTD fails to establish standing under Article III of the Constitution and its claims should be dismissed in their entirety against Defendant Hancock.

### 6. MOVE Texas Civic Fund

MOVE states that it "sues Defendants on its own behalf." Docket Entry No. 1, ¶ 20. MOVE claims to work "with three distinct groups of students in relation to mail-in ballots: (1) eligible students who attend schools outside of Texas and away from their county of residence; (2) eligible

students who attend a Texas school outside of their county of residence; and (3) eligible students who attend a Texas school and consider their address at or nearby school as their residence, but are nevertheless away from school during an election for summer work, holidays, or another conflict." *Id.* at ¶ 21. Finally, MOVE alleges that its "mission is significantly frustrated by the current state laws and policies that result in the improper rejection of youth voters' mail-in ballots. Because of Defendants' unlawful signature comparison procedure, each signed ballot improperly and arbitrarily rejected for an alleged signature mismatch undermines the efficacy of MOVE's mail-in ballot work." *Id.* at ¶ 23.

MOVE cannot establish that a concrete and particularized injury occurred or that there is any actual or imminent threat of injury that is not conjectural or hypothetical. Secondly, MOVE fails to establish that there is a causal connection between any alleged injury and Defendant Hancock. Finally, MOVE cannot demonstrate that any alleged injury of CTD would be adequately redressed by a judicial decision against Defendant Hancock, such an assertion would be merely speculative.

Hilliard Drew Galloway, on behalf of MOVE, testified that MOVE cannot identify any voter it assisted excluding Plaintiff Weisfeld related to mail-in ballots that was rejected for signature mismatch. Exhibit 6 at 46:21 – 48:21. Mr. Galloway testified that he had no knowledge of any contact by MOVE with Brazos County/Defendant Hancock with the exception of communications related to voter registration. *Id.* at 24:8 – 25:10. MOVE does some vote by mail advocacy work at elections administrators' offices in Bexar, Travis, Dallas, Harris, Webb and Hays Counties. *Id.* at 38:5 – 38:23. Finally, MOVE cannot identify any policy or regulation of Brazos County/Defendant Hancock concerning accepting or rejecting mail-in ballots based on the voter's

signature that MOVE challenges resulting in an injury caused by Brazos County/Defendant Hancock.

For these reasons, MOVE fails to establish standing under Article III of the Constitution and its claims should be dismissed in their entirety against Defendant Hancock.

### 7.   League of Women Voters of Texas

The League is suing "Defendants on its own behalf and on behalf of its members who use the mail-in ballot process." Docket Entry No. 1 at ¶ 24. The League alleges that its "mission is significantly frustrated by the current state laws and policies that result in the improper rejection of voters' mail-in ballots. Because of Defendants' unlawful signature comparison procedure, each signed ballot improperly and arbitrarily rejected for an alleged signature mismatch undermines the efficacy of LWV's work." *Id.* at ¶ 23. Finally, the League assets that "[n]either the claims asserted nor the relief requested by LWV require the participation of its individual members who regularly vote by mail." *Id.* at ¶ 27.

Here, the League cannot establish standing – that a concrete and particularized injury occurred or that there is any actual or imminent threat of injury that is not conjectural or hypothetical. Secondly, it is undisputed that the League fails to establish that there is a causal connection between any alleged injury and Defendant Hancock. Finally, the League cannot demonstrate that any alleged injury would be adequately redressed by a judicial decision against Defendant Hancock, such an assertion would be merely speculative.

The President of the League, Grace Chimene, testified that she could not identify any times where the League "assisted any individual voter after their mail-in ballot was rejected for signature mismatch" – the League merely provides a national telephone number to the Election Protection Coalition. Exhibit 7 at 77:8 – 80:10. The League does not contribute any funds to the Election

---

Protection Coalition. *Id.* at 79:17 – 79:23. Specifically, Ms. Chimene testified that she does not know of any of the League's members that have ever had a mail-in ballot rejected based on a signature mismatch. *Id.* at 80:21 – 81:8. The only direct involvement with Brazos County that the League could provide related to a county election website review and not related to any rejected mail-in ballots. *Id.* at 25:12 – 25:23. Brazos County received an outstanding award certificate from the League. *Id.* at 104:9 – 107:5, *Id.* at Exhibit 11. Ms. Chimene testified that she loved Brazos County's election website and "to tell [Brazos County] to keep doing a great job." *Id.* Therefore, Ms. Chimene failed to identify any policy or regulation of Brazos County/Defendant Hancock concerning signature verification that the League challenges resulting in an injury.

For these reasons, the League fails to establish standing under Article III of the Constitution and its claims should be dismissed in their entirety against Defendant Hancock.

### C.  Texas Election Code – Processing of Early Voting Results

As stated above, Chapter 87 of the Texas Elections Code governs the appointment and composition of an EVBB and requires that the EVBB review mail-in ballots. Tex. Elec. Code, Ch. 87. Plaintiffs acknowledge that Chapter 87 of the Texas Elections Code govern the processing of early voting results. Doc. 1 at ¶¶ 35-40. The EVBB consists of a presiding judge and at least two other members, all of whom are selected from lists provided by the political parties with nominees on the general election ballot. Tex. Elec. Code §87.002. The presiding judge is selected from the list provided by the political party whose nominee for governor received the most votes in the county in the most recent gubernatorial general election. *Id.* The EVBB verifies whether a signature is valid. *Id.* at §87.041.

In Brazos County, the EVBB consists of 8 to 12 members which are determined by the EVBB presiding judge in accordance with the Texas Elections Code. Exhibit 8 at 13:12 – 13-25.

The EVBB presiding judge "seeks out members or volunteers from recommendations from both parties." *Id*. Brazos County does not have a signature verification committee and has not had one in the past. *Id*. at 12:24 – 13:4. At no time does a County Elections Administrator have discretion to intervene in this process of mail-in ballot validation, as the only role of Defendant Hancock after delivery of the ballots to the EVBB in the process of signature validation to provide a copy of the handbook from the Texas Secretary of State to the EVBB presiding judge. *Id*. at 16:17 – 18:17; *Id*. at Exhibit 7. The Texas Legislature established that only the EVBB has the authority to determine the validity of mail-in ballots. Tex. Elec. Code §87.001. Further, the Texas Legislature required that "[t]he secretary of state shall adopt rules as necessary to implement the requirements" for a notice of a rejected ballot by the EVBB. *Id*. at §87.0431(c).

As stated in their Complaint, Plaintiffs pray for (1) a declaratory judgment that the State of Texas violated the U.S. Constitution; (2) that the Court enjoin the State of Texas and all 254 Texas counties from following Chapter 87 of the Elections Code; and (3) for attorney fees, costs, and other relief. Hancock is not a proper party to this suit because a judgment against her will not grant Plaintiffs any of the relief they seek. It is clear that the Plaintiffs are requesting that the Court re-write Texas law related to early voting results. Plaintiffs' Complaint negates the need for Hancock as a party because only the Texas Legislature has the authority to provide the relief sought. Specifically, Hancock lacks statutory authority to provide the relief sought as she is obligated, as a matter of law, to follow the mail-in ballot elections procedures mandated by the Texas Elections Code. Thus, Plaintiffs are asking this Court to dictate the process and insert its judgment in place of the Texas Legislature. As demonstrated above, Plaintiffs lack standing and Defendant Hancock is an improper party. Defendant Hancock is not the proper party to defend any action taken by the EVBB as required under state law.

Therefore, the Court should dismiss all of the causes of action asserted by Plaintiffs against

Defendant Hancock:

1. **Count I – alleged violation of the Due Process of the Fourteenth Amendment for failure to provide pre-rejection notice and opportunity to cure.**

In the Complaint, Plaintiffs do not make a single allegation of wrongdoing against

Hancock, other than she followed Texas law. Count I states:

> By mandating the unilateral and non-reviewable rejection of mail-in ballots due to an alleged signature mismatch without according pre-rejection notice, an opportunity to be heard, and an ability to cure, <u>Texas' scheme as outlined in Texas Election Code</u> §§ 87.041(b)(2) and (d), both on its face and as it is applied, violates the Due Process Clause of the Fourteenth Amendment. Defendants deprived and continue to deprive Texas voters, including Mr. Richardson and Ms. Rosalie, voters provided support by organizational Plaintiffs, and voters who are members of associational Plaintiffs, of adequate procedural due process to protect their fundamental right to vote.

Doc. 1 at ¶ 57 (emphasis added). Plaintiffs assert that a voter that has an alleged signature mismatch

should receive a pre-rejection notice and an opportunity to cure any defect in a mail-in ballot. *Id.*

at ¶¶ 58-9. There are no allegations that Hancock did anything improper or failed to follow Texas

law. Further, Plaintiffs have failed to establish that they have standing under Article III of the

Constitution against Defendant Hancock. As demonstrated above, the EVBB is the statutorily

required board that verifies whether a signature on a mail-in ballot is valid. It is undisputed that

Hancock did not review the signatures in question. Therefore, Hancock should be dismissed from

this suit because she is not a proper party.

2. **Count II – alleged violations of the Equal Protection Clause of the Fourteenth Amendment due to severe burden on voters not justified by a legitimate government interest**.

Count II also fails to state any allegations or claims against Hancock. Count II states, in

part:

> Texas Election Code Sections 87.041(b)(2) and (d), by mandating the unilateral, arbitrary, and ad hoc rejection of mail-in ballots due to an alleged signature mismatch, disenfranchise mail-in ballot voters, a burden that is undoubtedly severe, especially when such voters are given no pre-rejection notice or opportunity to resolve the mismatch or otherwise confirm their identity.

*Id.* at ¶69. Again, Plaintiffs' Complaint alleges that Texas law is unconstitutional. "A court considering a challenge to a state election law must carefully balance the character and magnitude of the injury to the First and Fourteenth Amendment rights that Plaintiffs seek to vindicate against the justifications put forward by Defendants for the burdens imposed by the rule." *Id.* at ¶ 65 (emphasis added). Texas Election Code, section 87.041 relates to the requirements of the EVBB, not the Brazos County Elections Administrator, Defendant Hancock.

As demonstrated above, the EVBB is the statutorily required board that verifies whether a signature on a mail-in ballot is valid. It is undisputed that Hancock did not review the signatures in question. Therefore, Hancock should be dismissed from this suit because she is not a proper party and Plaintiffs have failed to establish that they have standing under Article III of the Constitution against Defendant Hancock.

### 3. Count III -- alleged violations of the Equal Protection Clause of the Fourteenth Amendment due to failure to provide any uniform guidelines or principles for Counties to compare signatures.

Count III states, "Texas has not promulgated any procedures to assist individual counties or the EVBB or SVCs within those counties in evaluating signatures on mail-in ballots, thereby creating an arbitrary system for evaluation in which committees of laypersons 'eye-ball' signatures and evaluate them based on their own ad hoc standards." *Id.* at ¶ 72 (emphasis added). The Complaint, taken as true, alleges that the State of Texas violates the Fourteenth Amendment.

Plaintiffs have failed to establish that they have standing under Article III of the Constitution against Defendant Hancock. As demonstrated above, the EVBB is the statutorily

required board that verifies whether a signature on a mail-in ballot is valid. It is undisputed that Hancock did not review the signatures in question. Further, Hancock is not statutorily required to provide uniform guidelines or principles for all Texas counties. The Secretary of State has the duty to "'obtain and maintain uniformity in the application, operation, and interpretation of" Texas's election laws, including by 'prepar[ing] detailed and comprehensive written directives and instructions relating to' those vote-by-mail rules." *Texas Democratic Party*, 2020 WL 2982937, at *6 (*quoting* TEX. ELEC. CODE § 31.003). Therefore, Hancock should be dismissed from this suit because she is not a proper party.

### 4. Count IV – alleged violation of Title II of the Americans with Disabilities Act and the Rehabilitation Act of 1973.

Count IV states:

> Members of CTD who use the mail-in ballot process and, due to their disability, cannot make their signatures match, risk disenfranchisement. By reason of such disability, the members at issue have suffered and/or risk future exclusion from participation in and denial of the benefits of the services, programs, or activities of Defendants, and are subjected to discrimination by Defendants. By failing to meet their obligation to provide voters who are disabled, cannot vote in person, and, due to their disability, cannot sign matching signatures an opportunity to vote that is equal and equally effective as that opportunity provided to others, Defendants are in violation of the ADA and the RA.

*Id*. at ¶ 82.

As demonstrated above, CTD does not know of any member that has had a mail-in ballot rejected because of a signature mismatch, including any in Brazos County. Further, CTD testified that none of its members with concerns about the mail-in ballot process are registered voters in Brazos County. CTD fails to identify any policy or regulation of Brazos County/Defendant Hancock concerning signature verification or mail-in ballots that CTD challenges resulting in an injury caused by Brazos County/Defendant Hancock.

Count IV alleges that the State of Texas has an invalid law that does not comply with the ADA, not that Hancock violated the law.

## IV.   Prayer

For these reasons, Defendant Hancock requests that the Court grant her Motion for Summary Judgment dismissing Plaintiffs Richardson, Weisfeld, Austin Justice, CTD, MOVE and the League's claims in their entirety and for such other relief as the court deems just and proper.

Respectfully submitted,

*/s/ J. Eric Magee*
J. Eric Magee
SBN: 24007585
e.magee@allison-bass.com
**ALLISON, BASS & MAGEE, L.L.P.**
A.O. Watson House
402 W. 12th Street
Austin, Texas 78701
(512) 482-0701 telephone
(512) 480-0902 facsimile
*Attorneys for Brazos County Elections*
*Administrator Trudy Hancock*

## CERTIFICATE OF SERVICE

I hereby certify that on the 22nd day of June, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

*/s/ J. Eric Magee*
J. Eric Magee