1   Texas?

2        A.    By mail.

3        Q.    Okay.   And anything besides that?

4        A.    Those are the only three ways I know that

5   people can vote.

6        Q.    Okay.   And have you voted in person on election

7   day in Texas before?

8        A.    Yes.

9        Q.    I know it may not be -- it may be difficult to

10  give a precise answer, but can you estimate about how

11  many times?

12       A.    No.

13       Q.    That's fine.   Have you voted in person early in

14  Texas before?

15       A.    Yes.

16       Q.    And do you -- are you able to give a rough

17  estimate of how many times?

18       A.    I don't recall.

19       Q.    Okay.   That's fine.

20             And this -- this lawsuit, we're talking

21  about the 2019 runoff election ballot by mail.   Other

22  than that election, have you voted by mail in Texas

23  before?

24       A.    Yes, I have.

25       Q.    And are you able to approximate about how many

1  that, you weren't required to provide a form of

2  identification to vote.  Did I understand your

3  testimony?

4      A.   No, no, no.  It's a difference between a

5  picture ID and then you had the voter registration card

6  that you could take in or you could take in any kind of

7  identification.

8      Q.   I see.  So the change was from a form of

9  identification to a form of photo identification?

10     A.   Yes.  And only a specific form of

11  identification.  So, like, a student ID card wouldn't

12  count now -- doesn't count now.

13     Q.   Okay.  So let me try to ask my question a

14  little bit better.  Do you remember a time that you

15  voted in Texas where you didn't have to provide any form

16  of identification at all in person?

17     A.   Not to my recollection.

18     Q.   And to your knowledge, have you ever had a

19  ballot rejected other than in the 2019 City of McAllen

20  runoff election?

21     A.   No, never.

22     Q.   So it sounds from your testimony like it would

23  be fair to say you vote regularly.  Is that right?

24     A.   Yes, that is correct.

25     Q.   Would you describe yourself as politically

1  **independent -- like, apart from any candidate?**

2      A.   I study the candidates.  I have particular,

3  yes, issues that are a concern to me; and I choose the

4  candidate that I intend to vote for based on their

5  positions and how I feel they will best represent my --

6  represent me and the concerns I have.  Is that what

7  you're asking?

8      **Q.   Yeah.  Sure.  Can you give me a few examples of**

9  **those issues that are particularly important to you in**

10 **deciding which candidates to support?**

11     A.   Well, for example, I'll use the city election

12 without telling you my -- who I voted for because that's

13 not -- that's private and privileged information.  But I

14 talked to the candidates and observed them, listened to

15 them on issues pertaining to the City such as business,

16 parks, environment, the recycling program we have now in

17 place, economic issues, how they plan to work together

18 with the school district and made my decision based on

19 their -- their interests and where they stood on those

20 particular issues.

21     **Q.   Okay.  Thank you for that.**

22          **I want to now focus in on the 2019 City of**

23 **McAllen runoff election that is kind of at the center of**

24 **your claims in this case.  When we were discussing**

25 **voting by mail earlier, you mentioned that had you voted**

1    by mail several times in the past.  Has that always been

2    because you were outside the county, or was there ever

3    another reason that you were eligible to vote by mail?

4         A.   It was because I was outside the county during

5    the election period, both early voting and election day.

6         Q.   And for this 2019 City of McAllen runoff

7    election, that was also the reason you were eligible,

8    because you were outside the county?

9         A.   Yes.

10        Q.   Okay.  Do you remember when you applied for the

11   ballot in the 2019 City of McAllen runoff election?  And

12   I mean the ballot by mail, just to be crystal clear.

13        A.   For the runoff?

14        Q.   Yes, ma'am.

15        A.   It was either in April or May.  It was after

16   the election, and there was a requirement -- I mean, one

17   of the races was in -- there was a runoff.  And so when

18   the runoff was declared, I knew I would be out of town.

19        Q.   How did you know that you would be out of town?

20        A.   My niece was graduating from college, and I

21   knew that I would be out of the state and -- well, out

22   of the county because I was going to visit the family.

23        Q.   And where were you visiting family for the

24   graduation?

25        A.   In New York.  I was in New York.

1  election?

2       A.   Yes.   I voted in the May election because I was

3  out of town.   And I had clicked off -- checked off any

4  resulting runoff, but then I don't -- someone from the

5  City called me to verify that I do -- did still want a

6  ballot for the runoff election.   It was either Perla or

7  somebody in the office.   And I said, "Yes, I do."

8       Q.   And you mentioned -- you mentioned Perla and

9  referring to her on a first-name basis.   Would you say

10  that you-all have a -- a personal relationship?

11       A.   We have a working relationship.

12       Q.   Okay.   How long have you known Ms. Lara?

13       A.   For many years.   She was the assistant -- she

14  was the assistant before she -- before she became the --

15  the secretary.

16       Q.   Okay.   And is that how you became acquainted

17  with her?

18       A.   Yes.

19       Q.   All right.   And down under the number 10,

20  there's an "X."   And next to that is a signature.   Is

21  that your signature?

22       A.   Yes, it is.

23       Q.   Okay.   And when you completed this application,

24  what was your understanding of what that signature would

25  be used for?

1   A.   It was -- it -- it says that I certify that the

2   information given in this application is mine, and I

3   understand that giving false information is this -- in

4   this application is a crime.  So it was my signature to

5   confirm that I was telling the truth in completing

6   this -- completing this application.

7        Q.   Okay.  And jumping up a little bit to Box 8 --

8        A.   Uh-huh.

9        Q.   -- when you initially applied for this ballot

10  by mail in March of 2019 --

11       A.   Uh-huh.

12       Q.   -- it indicates that you anticipate being

13  absent from the county from April 1st, 2019, through

14  May 10th, 2019.  Did I read that right?

15       A.   Yes.

16       Q.   And where were you during that time?

17       A.   I don't recall, but I wasn't in -- I wasn't

18  in -- I wasn't in McAllen for the election.  So that's

19  why I requested a ballot by mail.

20       Q.   And maybe we can get some clues from the

21  document.  It might refresh your recollection.

22       A.   Uh-huh.

23       Q.   If you go to line 3, it says -- it lists an

24  address in Houston --

25       A.   Correct.

1    Q.    -- for your ballot by mail.

2    A.    Yes.

3    Q.    Is it possible that you were at that address

4   from April 1st to May 10th of 2019?

5    A.    I -- I could have been here for part of it, but

6   it was the address that I requested that the ballot be

7   mailed to.

8    Q.    And why did you choose that address if you were

9   only going to be there for part of the time?

10    A.    Because I'm engaged to be married and it is the

11   address of my fianci ¿‰.

12    Q.    Well, what cause for celebration.  I am, too,

13   actually.  We had to postpone our wedding because of the

14   pandemic.

15    A.    Congratulations.

16    Q.    Thank you.

17          And so you mentioned that you don't

18   specifically recall where you were for the entire period

19   of absence.  Do you remember any of the places you might

20   have been besides Houston?

21    A.    I really don't.  No.

22    Q.    Would it be fair to say that you travel quite a

23   bit?

24    A.    Yes, it is.  That is true.

25    Q.    And why do you have occasion to travel so

```
 1   is a two-page document -- so the second page.

 2        A.   Oh.  Let me fix this one.  Okay.

 3        Q.   And is that your signature on the outside of

 4   this carrier envelope?

 5        A.   Yes, it is.

 6        Q.   And what was your understanding of what that

 7   signature would be used for?

 8        A.   They -- they use it -- it's used to -- it's

 9   used to -- to -- to -- they compare it to all the other

10   signatures that are on file.  It can go back and look in

11   the -- on the computer at a lot of different signatures.

12   But it also is -- you see -- you see it says there:  "I

13   certify that the enclosed ballot expresses my wishes

14   independent of any dictation or undue persuasion by any

15   person."  It just means that I filled it out and

16   completed it myself and mailed it myself.  I even told

17   them I was going be in New York; and you can see, it has

18   a New York postmark.

19        Q.   And do you see down below that where it says

20   that a voter may be -- actually, never mind.  That's all

21   that I have on that -- actually, sorry, one more thing.

22   Down at the bottom where it says "Name of Voter" --

23        A.   Uh-huh.

24        Q.   -- did you also -- is that also your

25   handwriting?
```

Rosale Weisfeld - 5/13/2020

40

1   from that trip.

2      A.   I don't.

3      Q.   Okay.  And after that trip, did you immediately

4   come back to Texas?

5      A.   I don't recall.  I don't recall because several

6   of my family members were having graduations and I went

7   to California and -- I think I went to California.   I

8   don't recall all the places I went to for graduations.

9      Q.   Okay.

10     A.   And we had a -- we had other family -- thank

11  God they were celebrations, to attend during that time

12  period.

13     Q.   All right.  I'm going to share a document with

14  you, and this will be Exhibit 4 to this deposition.

15               (Exhibit 4 marked)

16     Q.   (BY MS. MACKIN)  And please let me know when

17  you are able to open up that document and take a look at

18  it.

19     A.   I see it.

20     Q.   Okay.  Do you recognize Exhibit 4?

21     A.   Yes.

22     Q.   What is it?

23     A.   It's the letter of rejection that I received.

24     Q.   And is this letter the first notice you

25  received that your ballot had been rejected?

1    A.    Yes, it was.

2    Q.    And who provided this notice to you?

3    A.    It came in the mail from the City of McAllen,

4  but I don't know whose signature that is at the bottom.

5  Do you know who the early voting ballot board judge was?

6    Q.    I could probably find it in the documents, and

7  I actually -- we will touch on it later.  So if it's

8  okay with you, if we could just come back to that in a

9  little bit.

10    A.    Okay.

11    Q.    Do you remember -- well, strike that.

12          Exhibit 4 is dated June 22nd, 2019.  Is

13  that right?

14    A.    Correct.

15    Q.    And do you know if that was the date of the

16  runoff election?

17    A.    I don't recall.

18    Q.    And do you know when Exhibit 4 arrived in your

19  mailbox?

20    A.    I saw it on the 4th of July.

21    Q.    Could it have arrived before that?

22    A.    I -- I don't know.

23    Q.    Okay.  And do you remember which address

24  Exhibit 4 was sent to?

25    A.    Yes.  It's stamped right there:  Rosalie

43

1    these questions.  I could have prepared.

2        Q.    That's okay.

3        A.    But I -- I didn't know you were going to ask

4    anything about my travel schedule.  So I didn't study

5    it.

6        Q.    That's okay.  It's no big deal.  What -- what

7    I'm trying to understand is when Exhibit 4 arrived at

8    this Houston address because, from our conversation, it

9    sounds like you were not at that Houston address from

10   late May through July 4th of 2019.

11       A.    No, no, no.  I came back.  I -- I -- I was in

12   Texas, and I -- I don't remember exactly -- the exact

13   date of my flight -- you know, flights, my trips, my --

14   I -- I don't recall all of them.

15       Q.    That's fine.  And I don't expect you to.

16   That's not a problem.  What I'm trying to understand is

17   whether you have any recollection that might help me

18   figure out when Exhibit 4 arrived in the mailbox at

19   9206 Cliffwood Drive, Houston, Texas.  And if you don't

20   have any knowledge about that, that's -- or

21   recollection, that's fine.  I'm --

22       A.    I -- I don't -- I'm sure you could look at a

23   calendar and you could see maybe what day they mailed it

24   and then you could figure out if it was a Saturday or

25   Sunday or a holiday or what days the mail -- what days

1   carrier envelope was not signed by the same person?

2       A.   No, I do not.

3       Q.   Do you know why that determination was made?

4       A.   No, I -- I do not.  It was this -- it's --

5   it -- I -- I signed it.

6       Q.   Do you know what was considered in making the

7   determination that the signature on the application for

8   ballot by mail and carrier envelope were not signed by

9   the same person?

10      A.   No, I do not.

11      Q.   Do you know how the people who evaluated the

12  signature on your ballot by mail for the 2019 City of

13  McAllen runoff election were selected?

14      A.   No, I do not.

15      Q.   Do you know whether the Texas Secretary of

16  State's Office was involved in the decision -- was

17  involved in the determination that the signature on the

18  application for ballot by mail and carrier envelope was

19  not signed by the same person?

20           MR. DOLLING:  Objection, form.

21           MS. MACKIN:  And, actually, let me -- let

22  me ask -- let me start over.

23      Q.   (BY MS. MACKIN)  Do you know whether the Texas

24  Secretary of State's Office was involved in the

25  determination that the signature on the application for

1  ballot by mail and carrier envelope was not signed by

2  the same person?

3       A.   I do not.  No, I do not.

4       Q.   Did you ever contact the Secretary of State's

5  Office about the rejection of your ballot in the 2019

6  City of McAllen runoff election?

7       A.   No.

8       Q.   I'm going to share a document.

9       A.   Do I close this one?

10      Q.   Yes, ma'am.  I do not have any other questions

11 about that.

12           And I'll make that Exhibit 5 to this

13 deposition.  Please let me know when you are able to

14 access the document and take a look at it.

15           (Exhibit 5 marked)

16      A.   I see it.

17      Q.   (BY MS. MACKIN)  All right.  Do you recognize

18 Exhibit 5, Ms. Weisfeld?

19      A.   Yes, I have seen this.

20      Q.   And what is it?

21      A.   It is the -- it is the civil case that was

22 filed on my behalf and Dr. Richardson and the other

23 organizations.

24      Q.   Did you review Exhibit 5 before it was filed?

25      A.   Yes, I did have the opportunity.

85

```
 1   STATE OF TEXAS
     COUNTY OF MONTGOMERY
 2                    REPORTER'S CERTIFICATE

 3        I, Dana Richardson, a Certified Shorthand Reporter

 4   in and for the State of Texas, do certify that this

 5   deposition transcript is a true record of the testimony

 6   given by the witness named herein, after said witness

 7   was duly sworn by me.  The witness was requested to

 8   review the deposition.

 9        I further certify that I am neither attorney or

10   counsel for, related to, nor employed by any parties to

11   the action in which this testimony is taken and,

12   further, that I am not a relative or employee of any

13   counsel employed by the parties hereto or financially

14   interested in the action.

15        I further certify that the amount of time used by
     each party at the deposition is as follows:
16
             Ms. Anna Mackin - 01:41
17           Mr. Isaac Tawil - 00:20
             Mr. Zachary D. Dolling - 00:01
18
          SUBSCRIBED AND SWORN TO under my hand and seal of
19   office on this the 26th day of May, 2020.

20                   _____
                     Dana Richardson, RPR, TX CSR 5386
21                   Expiration:  01/31/22
                     Integrity Legal Support Solutions
22                   Firm Registration No. 528
                     PO Box 245
23                   Manchaca, Texas 78652
                     (512) 320-8690
24                   (512) 320-8692 (fax)

25
```

Appx._062

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

| | |
|---|---|
| Dr. George Richardson, Rosalie Weisfeld, Austin Justice Coalition, Coalition of Texans With Disabilities, Move Texas Civic Fund, League of Women Voters of Texas, and American GI Forum of Texas, Inc., §<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | |
| *Plaintiffs*, § | |
| §<br>v. § | No. 5:19-cv-00963 |
| § | |
| Texas Secretary of State, Trudy Hancock, In Her Official Capacity As Brazos County Elections Administrator, and Perla Lara In Her Official Capacity as City of McAllen, Texas Secretary, §<br>§<br>§<br>§<br>§<br>§ | |
| *Defendants*. § | |

### DEFENDANT SECRETARY OF STATE'S FIRST AMENDED NOTICE OF ORAL DEPOSITION OF ROSALIE WEISFELD

TO:   Rosalie Weisfeld, by and through her attorneys of record, Hani Mirza, Zachary D. Dolling, Beth Stevens and Ryan Cox, Texas Civil Rights Project, 1405 Montopolis Drive, Austin, Texas 78741; and Joanna Suriani, Willkie Farr & Gallagher LLP, 1875 K Street, N.W., Washington, DC 20006.

Defendant Texas Secretary of State hereby notices the deposition upon oral examination of Rosalie Weisfeld beginning at **2:00 PM** on **May 13, 2020** and continuing from day to day until complete. The deposition will be held virtually via Zoom videoconference and will be transcribed and videotaped by a certified court reporter designated by Defendant. Defendant reserves the right to use the deposition

1



Exhibit
Rosalie Weisfeld

1

App. _063

for any purpose permitted under the Federal Rules of Civil Procedure or Federal Rules of Evidence.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

RYAN L. BANGERT
Deputy First Assistant Attorney General

DARREN L. MCCARTY
Deputy Attorney General for Civil Litigation

THOMAS A. ALBRIGHT
Chief for General Litigation Division

*/s/ Anne Marie Mackin*
ANNE MARIE MACKIN
Texas Bar No. 24078898
Assistant Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2798 | FAX: (512) 320-0667
anna.mackin@oag.texas.gov

**ATTORNEYS FOR DEFENDANT
TEXAS SECRETARY OF STATE**

2

### CERTIFICATE OF SERVICE

I certify that that on May 6, 2020 this notice was served upon counsel listed below via email.

**Hani Mirza**
hani@texascivilrightsproject.org

**Zachary D. Dolling**
zachary@texascivilrightsproject.org

**Rebecca Harrison Stevens**
beth@texascivilrightsproject.org

**Ryan V. Cox**
ryan@texascivilrightsproject.org

**Samuel Kalar**
skalar@willkie.com

**Joanna Suriani**
jsuriani@willkie.com

**Eric Magee**
e.magee@allison-bass.com

**Isaac J. Tawil**
itawil@mcallen.net

**Austin Stevenson**
astevenson@mcallen.net

**C. Robert Heath**
bheath@bickerstaff.com

**Gunnar P. Seaquist**
gseaquist@bickerstaff.com

*/s/Anne Marie Mackin*
ANNE MARIE MACKIN
Assistant Attorney General

3

DO NOT REMOVE PERFORATED TABS. Moisten here and fold bottom to top to seal.    DO NOT REMOVE PERFORATED TABS. Moisten here and fold bottom to top to seal.   **5**

I05467835O

## Application for Ballot by Mail

Prescribed by the Office of the Secretary of State of Texas A5-15 12/17

For Official Use Only VUID #, County Election Precinct #, Statement of Residence, etc.

1. Last Name (Please print information): **Weisfeld** ✓   Suffix (Jr., Sr., III, etc):    First Name: **Rosalie** ✓   Middle Initial:

2. Residence Address: **4801 North 16 Street** ✓   City: **McAllen** ✓   ,TX   ZIP Code: **78504**

3. Mail my ballot to: If mailing address differs from residence address, please complete Box # 7. ✓   **9206 Cliffwood Drive**   City: **Houston**   State: **TX**   ZIP Code: **77096**

4. Date of Birth (mm/dd/yyyy) (Optional): **06 16 1956** ✓   Contact Information (Optional): **956.793.5814   rosalie.weisfeld@gmail.com**

5. Reason for Voting by Mail:
- 65 years of age or older. (Complete Box #6a.)
- Disability. (Complete Box #6a.)
- ☑ Expected absence from the county. (Complete Box #6b and Box #8) You will receive a ballot for the upcoming election only ✓
- Confinement in jail. (Complete Box #6b) You will receive a ballot for the upcoming election only

7. If you are requesting this ballot be mailed to a different address (other than residence) indicate where the ballot will be mailed.
- Mailing Address as listed on my voter registration certificate
- Nursing home, assisted living facility, or long term care facility
- Hospital
- Retirement Center
- Address of the jail
- Relative, not named above
- ☑ Address outside the county (see Box #3)

6a. ONLY Voters 65 Years of Age or Older or Voters with a Disability:
- Annual Application
Uniform and Other Elections: May Election, November Election, Other ___
Primary Elections: Democratic Primary, Republican Primary, Any Resulting Runoff

8. If you selected "expected absence from the county," see reverse for instructions.
**04 01 2019 — 05 10 2019**
Date you can begin to receive mail at this address    Date of return to residence address

9. Voters may submit a completed, signed, and scanned application to the Early Voting Clerk.
(early voting clerk's e-mail address)   (early voting clerk's fax)

6b. ONLY Voters Absent from County or Voters Confined in Jail:
- ☑ May Election
- November Election
- Other ___
Primary Elections: Democratic Primary, Republican Primary, ☑ Any Resulting Runoff

10. "I certify that the information given in this application is true, and I understand that giving false information in this application is a crime."
**X Rosalie Weisfeld   Date 3/27/2019** ✓
SIGN HERE

11. Witness/Assistant section (blank)

Exhibit Rosalie Weisfeld 2   5/13/20 DR

Este formulario está disponible en Español...

**WARNING:** (1) Knowingly possessing another person's ballot or carrier envelope may be a crime unless you provide your signature, printed name and address (2) A person commits an offense if the person compensates another person or receives compensation for depositing a carrier envelope in the mail as part of a scheme in which the person is compensated based on the number of carrier envelopes deposited. For additional information on offenses related to carrier envelopes, please see the "**Information About Returning your Carrier Envelope,**" included with the materials sent to you with your ballot.

**ADVERTENCIA:** (1) El acto de poseer conscientemente la boleta o el sobre de envío de otra persona puede ser un delito a menos de que usted proporcione su firma, nombre impreso, y su dirección. (2) Una persona comete un delito si recompensa o recibe compensación a cambio de depositar el sobre de envío en el correo como parte de un plan en el cual la persona es recompensada en base al número de sobres de envío depositados. Para obtener información adicional sobre los delitos relacionados con los sobres de envío, por favor vea la "**Información Sobre Cómo Devolver su Sobre de Envío,**" incluido con los materiales enviados a usted con su boleta.

5-22 – Prescribed by Secretary of State – 12/17
Section 86.013, Texas Election Code 173704

Weisfeld, Rosalie
VUID# 1054678350 SMD 5
June 22, 2019
Run-Off Election



City Secretary's Office
Received
Date 6/3/19

**OFFICIAL ELECTION MAIL**
Authorized by the U.S. Postal Service

**CARRIER ENVELOPE FOR EARLY VOTING BALLOT**
*(SOBRE DE ENVÍO PARA LA BOLETA DE VOTACIÓN ANTICIPADA)*

**TO (A):**

**Perla Lara, City Secretary**
Early Voting Clerk *(Secretario de Votación Anticipada)*

**P.O. Box 220/1300 Houston Ave**
Mailing Address *(Dirección Postal)*

**McAllen**                     , Texas  **78505-0220**
City *(Ciudad)*                             Zip *(Código Postal)*

Exhibit
Rosalie Weisfeld

**3**

5/13/20  DR

Appx._067

**Instructions:** This envelope must be sealed and signed by the voter before it leaves the voter's hands. Do not sign this envelope unless the ballot has been marked by you or at your direction. This carrier envelope may not be used to return more than one voter's ballot. For instructions on the methods and deadlines to deliver this carrier envelope, see the "Information About Returning your Carrier Envelope," included with the materials sent to you with your ballot. (Instrucciones al Votante: Selle este sobre y después firme su nombre en el espacio proporcionado abajo. Este sobre debe de ser sellado y firmado por el votante antes de que el votante lo entregue. No firme este sobre a menos de que la boleta haya sido llenada por usted o bajo su dirección. Este sobre de envío no debe ser utilizado para entregar la boleta de más de un solo votante. Para obtener instrucciones sobre los métodos y plazos para entregar este sobre de envío, vea la "Información Sobre Cómo Devolver su Sobre de Envío," incluido con los materiales enviados a usted con su boleta.)

I certify that the enclosed ballot expresses my wishes independent of any dictation or undue persuasion by any person. (Certifico que la boleta adjunta expresa mis deseos independientemente de ningún dictado o persuasión indebida por parte de cualquier persona.)

SEAL ENVELOPE AND SIGN OVER SEALED FLAP
(SELLE EL SOBRE Y FIRME ENCIMA DE SOLAPA DEL SOBRE)

X Rosalie Weisfeld

SIGNATURE OR MARK OF VOTER (FIRMA O MARCA DEL VOTANTE)

**Instructions to Assistant:** A voter may only be assisted with reading or marking the ballot if they have a physical disability that renders them unable to write or see, or have an inability to read the language in which the ballot is written. If you are assisting the voter, you must read the oath and complete the section below, before assisting the voter. (Instrucciones al Asistente: Un votante puede recibir ayuda para leer o marcar la boleta solamente si el votante tiene una discapacidad física la cual le impide escribir o ver, o si no tiene la habilidad de leer el lenguaje en el cual la boleta está escrita. Si usted le proporcionará ayuda a un votante, usted debe leer el juramento y llenar la siguiente sección abajo, antes de asistir al votante.)

**Oath of Person Assisting Voter:** I swear (or affirm) that I will not suggest, by word, sign, or gesture, how the voter should vote; I will confine my assistance to answering the voter's questions, to stating propositions on the ballot, and to naming candidates and, if listed, their political parties; I will prepare the voter's ballot as the voter directs; and I am not the voter's employer, an agent of the voter's employer, or an officer or agent of a labor union to which the voter belongs. (Juramento de la Persona Asistiendo al Votante: Juro (o afirmo) que no sugeriré con palabras, señales, o gestos, la manera en la cual el votante debe votar; limitare mi asistencia a responder las preguntas del votante, leer propuestas en la boleta, nombrar a los candidatos, y si es mencionado, su partido político; preparará la boleta del votante de acuerdo a sus instrucciones; y yo no soy el empleador del votante, un agente del empleador del votante, o un oficial o agente de un sindicato al cual el votante pertenece.)

**Instructions to Witness:** You are serving as a witness for _____(name of voter). You must complete the section below if you witness the mark of the voter, or if the voter cannot make a mark. If the voter cannot make a mark, check here ____. (Instrucciones al Testigo: Usted está fungiendo como testigo para _____ (nombre del votante). Usted debe llenar la siguiente sección abajo si usted fue testigo de que el votante firmo, o de que el votante no puede firmar. Si el votante no puede firmar, marque sus iniciales aquí ____.)

**Instructions to Person Depositing Carrier Envelope in Mail or to Common or Contract Carrier:** If you are assisting a voter by depositing the carrier envelope in the mail or with a common or contract carrier, you must complete the section below. (Instrucciones a la Persona Quien Deposite el Sobre de Envío en el Correo o Entregue al Transportista Público o Comercial: Si usted asistirá al votante a depositar el sobre de envío en el correo o con un transportista público o comercial, usted debe llenar la sección que aparece abajo.)

If you are an assistant or witness, check the appropriate box below and provide information: (Si usted es un asistente o testigo, marque la casilla correcta y proporcione su información):

| ☐ Assistant/ Asistente ☐ Witness/ Testigo | Signature (Firma) | Printed Name (Nombre impreso) | Street Address (Domicilio residencial) |
|---|---|---|---|
| ☐ Assistant/ Asistente ☐ Witness/ Testigo | Signature (Firma) | Printed Name (Nombre impreso) | Street Address (Domicilio residencial) |

Completed by Early Voting Clerk: Name of Election (Nombre de Elección): _____ **Run-Off Election)**

Name of Voter (Nombre del votante): Rosalie Weisfeld        Date of Election (Fecha de Elección): 6.22 2019

AW5-42
Prescribed by Secretary of State
Sec. 87.0431, Texas Election Code
1/07

# NOTICE OF REJECTED BALLOT

This is to serve as notice that your ballot for the ___**June 22, 2019**___ Election was rejected by the early voting ballot board and was not counted.

Name of Voter _Weisfeld, Rosalie_

VUID Number _1054678350_

Reason for Rejection: (Check As Appropriate)

| | | |
|---|---|---|
| _____ | 1) | Certificate on carrier envelope was not properly executed. |
| | | _____ You failed to sign your signature or make your mark. |
| | | _____ The witness failed to indicate on the envelope that you could not make a mark. |
| | | _____ The assistant or witness failed to print their name. |
| | | _____ The assistant or witness failed to sign their name. |
| | | _____ The residence address of the assistant or witness was not given. |
| ✓ | 2) | It was determined that the signature on the application for ballot by mail and carrier envelope was not signed by the same person. |
| _____ | 3) | Application for ballot by mail did not state a legal ground for voting by mail. |
| _____ | 4) | Voter registration records indicated you did not have an effective registration for this election. |
| _____ | 5) | Address to which ballot was mailed was not outside the county. Voting early by mail due to expected absence from the county requires balloting materials be mailed to an address outside the county. |
| _____ | 6) | The residence address on the statement of residence is not located in the political subdivision conducting the election. |
| _____ | 7) | The mailing address on the application for ballot by mail did not match your voter registration address nor did the mailing address match any addresses provided on your statement of residence. Since you did not indicate on your application for a ballot by mail that you were having your ballot mailed to a hospital, retirement center, long term care facility, nursing home, jail, or a relative, your ballot was rejected. |
| _____ | 8) | The statement of residence was not included in the carrier envelope. |
| _____ | 9) | No identification was included with your mail ballot. |
| _____ | 10) | Other: |

_____
Signature of Early Voting Ballot Board Judge

**June 22, 2019**
Date

**Weisfeld, Rosalie**
**9206 Cliffwood Drive**
**Houston  TX  77096**



Exhibit
Rosalie Weisfeld
**4**
5/13/20 DR

Appx._____

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

DR. GEORGE RICHARDSON, ROSALIE §
WEISFELD,      AUSTIN      JUSTICE §
COALITION, COALITION OF TEXANS §
WITH   DISABILITIES,  MOVE   TEXAS §
CIVIC  FUND,  LEAGUE  OF  WOMEN §
VOTERS OF TEXAS, and AMERICAN GI §
FORUM OF TEXAS, INC., §
                                                        §
                         *Plaintiffs*                   §
                                                        §
v.                                                      §          Civil Case No. 5:19-cv-00963
                                                        §
TEXAS SECRETARY OF STATE, TRUDY §
HANCOCK, in her official capacity as §
BRAZOS      COUNTY      ELECTIONS §
ADMINISTRATOR, and PERLA LARA in §
her official capacity as CITY OF MCALLEN, §
TEXAS SECRETARY, §
                                                        §
                         *Defendants*.                  §

**PLAINTIFF ROSALIE WEISFELD'S OBJECTIONS AND RESPONSES TO
DEFENDANT SECRETARY OF STATE'S FIRST REQUESTS FOR ADMISSION,
INTERROGATORIES, AND REQUESTS FOR PRODUCTION**

TO:    Defendant Texas Secretary of State, by and through her attorneys of record Ken Paxton,
       Jeffrey C. Mateer, Darren L. McCarty, Thomas A. Albright, and Anne Marie Mackin, via
       e-mail to anna.mackin@oag.texas.gov.

       Pursuant to Federal Rules of Civil Procedure 33, 34, and 36, Plaintiff Rosalie Weisfeld

hereby serves the following Objections and Responses to Defendants' First Requests for

Admissions, Requests for Production, and Interrogatories.

Dated: April 16, 2020                          Respectfully Submitted,

                                               /s/ _____*Hani Mirza*_____

                                               **TEXAS CIVIL RIGHTS PROJECT**
                                               Mimi M.D. Marziani

1



Exhibit
Rosalie Weisfeld

**6**

Texas Bar No. 24091906
mimi@texascivilrightsproject.org
Rebecca Harrison Stevens
Texas Bar No. 24065381
beth@texascivilrightsproject.org
Hani Mirza
Texas Bar No. 24083512
hani@texascivilrightsproject.org
Ryan V. Cox
Texas Bar No. 24074087
ryan@texascivilrightsproject.org
Zachary D. Dolling
Texas Bar No. 24105809
zachary@texascivilrightsproject.org

1405 Montopolis Drive
Austin, Texas 78741
512-474-5073 (Telephone)
512-474-0726 (Facsimile)

**WILLKIE FARR & GALLAGHER LLP**

Richard Mancino (NY Bar No. 1852797)
Samuel Kalar (NY Bar No. 5360995)
JoAnna Suriani (NY Bar No. 5706395)

787 Seventh Avenue
New York, New York 10019
Telephone: (212) 728-8000
Facsimile: (212) 728-8111
Email: rmancino@willkie.com
         skalar@willkie.com
         jsuriani@willkie.com

-AND-

Jennifer J. Hardy (TX Bar No. 24096068)
Denis A. Fallon (TX Bar No. 24059731)
Garrett Johnston (TX Bar No. 24087812)
Audra White (TX Bar No. 24098608)

600 Travis Street, Suite 2100
Houston, Texas 77002
Telephone: (713) 510-1700
Facsimile: (713) 510-1799
Email: jhardy2@willkie.com

Appx.__071

afallon@willkie.com
gjohnston@willkie.com
awhite@willkie.com

***COUNSEL FOR PLAINTIFFS***

## CERTIFICATE OF SERVICE

I hereby certify that on the 16th day of April, 2020, a true and correct copy of the foregoing *Plaintiff Rosalie Weisfeld's Objections and Responses to Defendant Secretary of State's First Requests for Admission, Request for Production, and Interrogatories* was served upon counsel of record via email.

/s/ Hani Mirza_____

## RESERVATION OF RIGHTS

Ms. Weisfeld has responded to these requests for admission, requests for production, and interrogatories based on the information currently available to her. Discovery, however, is not yet complete. Additional discovery and investigation may lead to additions to, changes in, or modification of these responses. Ms. Weisfeld therefore reserves her right to supplement, amend, revise, correct, modify, or clarify these responses as additional information becomes available.

Ms. Weisfeld makes her objections and responses in accordance with her interpretation and understanding of *Defendant Secretary of State's First Requests for Admission, Request for Production, and Interrogatories* ("Requests") and in accordance with her current knowledge, understanding, and belief as to the facts and information available to her at the time of serving these responses. If Defendant subsequently provides an interpretation of any of its Requests that differs from Ms. Weisfeld's understanding of the same, Ms. Weisfeld reserves her right to complete the discovery of facts in this case and rely at trial or in any other proceeding on documents and information in addition to the information provided herein, regardless of whether

Appx._072

such information is newly discovered or newly in existence. She also reserves the right to amend, revise, correct, modify, or clarify her responses to properly respond to any interpretation Defendant may give these Requests.

Ms. Weisfeld reserves her right to object on any grounds, at any time, to the admission or use of any response on any ground. Ms. Weisfeld is also willing to meet and confer about any of her objections or responses.

## GENERAL OBJECTIONS

1.       Ms. Weisfeld objects to these Requests, including the definitions and instructions, to the extent that they seek information or documents: (i) protected by attorney client privilege, the work product doctrine, or any other applicable privilege or immunity; (ii) not in Ms. Weisfeld's possession, custody, or control; and (iii) that are publicly available or already within Defendants' possession.

2.       Ms. Weisfeld objects to these Requests to the extent they are duplicative of a request that Defendants have propounded to another Plaintiff in this Lawsuit. To the extent that Plaintiffs agree to produce a document that is responsive to multiple Requests duplicated across multiple Plaintiffs, Plaintiffs will only produce such documents once.

3.       Ms. Weisfeld objects to the definitions of "Coalition of Texans with Disabilities," "CTD," "Austin Justice Coalition," "AJC," "MOVE Texas Civic Fund," "MOVE Texas," "MOVE," "League of Women Voters of Texas," "LWVTX," "LWV," "Individual Plaintiffs," and "Organizational Plaintiffs," (together, "Plaintiffs Definitions") as overly broad and unduly burdensome to the extent that they define each party as including "anyone acting or purporting to act on their behalf with respect to any matter inquired about herein, including without limitation representatives, employees, or agents." For the purposes of these responses, each Plaintiff will

4

construe the Plaintiffs Definitions in accordance with the definition of "Plaintiffs" as found in Plaintiffs' First Set of Discovery Requests served on February 5, 2020.

4.      Ms. Weisfeld objects to the definitions of "EVBB" and "SVC" as vague and ambiguous. For the purposes of these responses, Ms. Weisfeld will construe the terms "EVBB" and "SVC" in accordance with the definitions of "EVBB" and "SVC" found in Plaintiffs' First Set of Discovery Requests served on February 5, 2020.

5.      These General Objections are incorporated into each of the specific responses and objections set forth below. No specific response or objection herein shall constitute a waiver, in whole or in part, of any of the foregoing General Objections. Ms. Weisfeld reserves the right at any time to revise, correct, supplement, or clarify the objections or responses set forth herein and any production made pursuant thereto.

Appx._074

## <u>MS. WEISFELD'S OBJECTIONS AND RESPONSES TO REQUESTS FOR</u><br><u>ADMISSION</u>

1.    Admit that SOS did not, "during a city run-off election in 2019 . . . reject[] Plaintiff Rosalie Weisfeld's mail-in ballot," as alleged in Paragraph 4 of your Complaint.

**<u>RESPONSE:</u>** Ms. Weisfeld objects to this request for admission on the ground that it calls for a legal conclusion. Ms. Weisfeld has no particular knowledge of this legal issue. Subject to and without waiving the foregoing, Ms. Weisfeld has no particular knowledge of the actions that Defendant SOS takes. Defendant SOS is the appropriate party with information responsive to this request.

2.    Admit that if a county election officer determines that a ballot was incorrectly rejected by the EVBB before the time set for convening the canvassing authority, the county election officer may petition a district court for injunctive or other relief as the court determines appropriate.

**<u>RESPONSE</u>**: Ms. Weisfeld objects to this request for admission on the ground that it calls for a legal conclusion. Ms. Weisfeld has no particular knowledge of this legal issue. The provisions of the Texas Election Code speak for themselves.

3.    Admit that SOS does not select the members of any EVBB.

**<u>RESPONSE</u>**: Ms. Weisfeld can neither admit nor deny because she has no particular knowledge of the actions Defendant SOS takes. Defendant SOS is the appropriate party with information responsive to this request.

4.    Admit that SOS did not select the members of any EVBB responsible for reviewing your mail-in ballot in the 2019 city runoff election referenced in Paragraph 4 of your Complaint.

**<u>RESPONSE:</u>** Ms. Weisfeld objects to this request for admission on the ground that it calls for a legal conclusion. Ms. Weisfeld has no particular knowledge of this legal issue. Subject to and without waiving the foregoing, Ms. Weisfeld has no particular knowledge of the actions that Defendant SOS takes. Defendant SOS is the appropriate party with information responsive to this request.

5.    Admit that SOS does not select the members of any SVC.

**<u>RESPONSE</u>**: Ms. Weisfeld can neither admit nor deny because she has no particular knowledge of the actions Defendant SOS takes. Defendant SOS is the appropriate party with information responsive to this request.

6.    Admit that SOS did not select the members of any SVC responsible for reviewing your mail-in ballot in the 2019 city runoff election referenced in Paragraph 4 of your Complaint.

**<u>RESPONSE:</u>** Ms. Weisfeld objects to this request for admission on the ground that it calls

Appx._075

for a legal conclusion. Ms. Weisfeld has no particular knowledge of this legal issue. Subject to and without waiving the foregoing, Ms. Weisfeld can neither admit nor deny because she has no particular knowledge of the actions that Defendant SOS takes. Defendant SOS is the appropriate party with information responsive to this request.

7.      Admit that local election authorities, and not SOS, are responsible for receiving completed mail-in ballots.

**RESPONSE**: Ms. Weisfeld objects to this request for admission on the ground that it calls for a legal conclusion. Ms. Weisfeld has no particular knowledge of this legal issue. The provisions of the Texas Election Code speak for themselves.

8.      Admit that local election authorities, and not SOS, were responsible for receiving your completed mail-in ballot in the 2019 city runoff election referenced in Paragraph 4 of your Complaint.

**RESPONSE:** Ms. Weisfeld objects to this request for admission on the ground that it calls for a legal conclusion. Ms. Weisfeld has no particular knowledge of this legal issue. Subject to and without waiving the foregoing, Ms. Weisfeld can neither admit nor deny because she has no particular knowledge of the actions that Defendant SOS and local election authorities take. Defendants SOS and/or local elections authorities are the appropriate parties with information responsive to this request.

9.      Admit that local election authorities, and not SOS, are responsible for delivering completed mail-in ballots to the appropriate EVBB or SVC.

**RESPONSE**: Ms. Weisfeld objects to this request for admission on the ground that it calls for a legal conclusion. Ms. Weisfeld has no particular knowledge of this legal issue. The provisions of the Texas Election Code speak for themselves.

10.     Admit that local election authorities, and not SOS, were responsible for delivering your completed mail-in ballot in the 2018 General Election to the appropriate EVBB or SVC.

**RESPONSE:** Ms. Weisfeld objects to this request for admission on the ground that it calls for a legal conclusion. Ms. Weisfeld has no particular knowledge of this legal issue. Subject to and without waiving the foregoing, Ms. Weisfeld can neither admit nor deny because she has no particular knowledge of the actions that Defendant SOS and local election authorities take. Defendants SOS and/or local elections authorities are the appropriate parties with information responsive to this request.

11.     Admit that SOS lacks authority to reject any mail-in ballot for signature mismatch.

**RESPONSE**: Ms. Weisfeld objects to this request for admission on the ground that it calls for a legal conclusion. Ms. Weisfeld has no particular knowledge of this legal issue. The provisions of the Texas Election Code speak for themselves.

7

12.    Admit that SOS lacked authority to reject your mail-in ballot in the 2019 city runoff election referenced in Paragraph 4 of your complaint for signature mismatch.

**RESPONSE**: Ms. Weisfeld objects to this request for admission on the ground that it calls for a legal conclusion. Ms. Weisfeld has no particular knowledge of this legal issue. The provisions of the Texas Election Code speak for themselves.

13.    Admit that mail in ballot applications and carrier envelopes need not be signed by the voter if they are signed by a witness.

**RESPONSE**: Ms. Weisfeld objects to this request for admission on the grounds that it calls for a legal conclusion and is vague. It is vague because there are specific requirements that must be met for a voter to be eligible to use a witness, and specific requirements that must be met for a voter to not need to sign their mail-in ballot application and carrier envelope. The provisions of the Texas Election Code speak for themselves.

14.    Admit that mail-in ballots signed by a witness cannot be rejected for signature mismatch.

**RESPONSE**: Ms. Weisfeld objects to this request for admission on the grounds that it calls for a legal conclusion and is vague. It is vague because there are specific requirements that must be met for a voter to be eligible to use a witness, and specific requirements that must be met for a voter to not need to sign their mail-in ballot application and carrier envelope. The provisions of the Texas Election Code speak for themselves.

15.    Admit that you were eligible to vote in person in the 2019 city runoff election referenced in Paragraph 4 of your Complaint.

**RESPONSE:** Ms. Weisfeld objects to this request for admission on the ground that it calls for a legal conclusion. Ms. Weisfeld has no particular knowledge of this legal issue. Subject to and without waiving the foregoing, admit only to the extent that Ms. Weisfeld submitted a mail-in ballot and that she believes she was eligible to vote in person.

16.    Admit that voting by mail is a different process from in-person voting.

**RESPONSE**: Ms. Weisfeld objects to this request for admission on the ground that it calls for a legal conclusion and is vague. Subject to and without waiving the foregoing, admit only to the extent that, as a practical matter, voting by mail involves some different procedures than voting in-person.

17.    Admit that Texas has an interest in ensuring that only eligible voters cast ballots.

**RESPONSE**: Ms. Weisfeld objects to this request for admission on the ground that it calls for a legal conclusion and is vague. Subject to and without waiving the foregoing, Ms. Weisfeld can neither admit nor deny because she has no particular knowledge of the current interests of the State of Texas. Texas, including Defendant SOS, is the appropriate party with information responsive to this request.

Appx._077

## MS. WEISFELD'S OBJECTIONS AND RESPONSES TO REQUESTS FOR PRODUCTION

1.     All documents and communications supporting your contention that "Texas unlawfully rejects the duly signed mail-in ballots of thousands of eligible voters every major election," as alleged in Paragraph 1 of your Complaint.

RESPONSE: Please see attached BATES GENERAL-00000001-2030.

2.     All documents and communications supporting your contention that "Texas counties rejected at least 1,873 mail-in ballots during the 2018 General Election and at least 1,567 mail-in ballots during the 2016 General Election solely on the basis of mismatching signatures," as alleged in Paragraph 1 of your Complaint.

RESPONSE: Please see attached BATES GENERAL-00000001-2030.

3.     All documents and communications supporting your contention that you "properly signed and timely mailed [your] ballot in compliance with the Texas Election Code," as alleged in Paragraph 11 of your Complaint.

RESPONSE: Ms. Weisfeld objects to this request for production on the ground that the contention requires a legal analysis. Subject to and without waiving the foregoing, please see attached BATES WEISFELD-00000001-28.

4.     All documents and communications supporting your contention that "[t]he groups that are eligible to vote by mail are also the same groups, in many cases, that are most likely to have signature variations that could cause an improper rejection—especially the elderly, disabled, and persons who speak English as a second language," as alleged in Paragraph 46 of your Complaint.

RESPONSE: Ms. Weisfeld objects to this request for production on the ground that it calls for expert witness testimony. Plaintiffs' expert witness report was served on Defendants on February 3, 2020. Subject to and without waiving the foregoing, Ms. Weisfeld has no responsive documents.

5.     All documents and communications supporting your contention that "growing old, illness, injury, symptoms from taking certain medicine, change in eyesight, and consuming alcohol and/or drugs; mechanical factors such as pen type, ink, signing surface, signing position, and paper quality; and psychological factors such as distress, anger, fear, depression, happiness, [or] nervousness" can affect an individual's handwriting to the extent that their ballot would be erroneously rejected for signature mismatch, as referenced in Paragraph 48 of your Complaint.

RESPONSE: Ms. Weisfeld objects to this request for production on the ground that it calls for expert witness testimony. Plaintiffs' expert witness report was served on Defendants on February 3, 2020. Subject to and without waiving the foregoing, Ms. Weisfeld has no responsive documents.

6.     All documents and communications supporting your contention that "a person's handwriting naturally changes over time" to the extent that their ballot would be erroneously rejected for signature mismatch, as referenced in Paragraph 48 of your Complaint.

**RESPONSE**: Ms. Weisfeld objects to this request for production on the ground that it calls for expert witness testimony. Plaintiffs' expert witness report was served on Defendants on February 3, 2020. Subject to and without waiving the foregoing, Ms. Weisfeld has no responsive documents.

7.     All documents and communications supporting your contention that "[v]ariances between signatures" significant enough to result in a ballot being erroneously rejected for signature mismatch "are more prevalent in people who are elderly, disabled, under extreme stress, or who speak English as a second language," as referenced in Paragraph 48 of your Complaint.

**RESPONSE**: Ms. Weisfeld objects to this request for production on the ground that it calls for expert witness testimony. Plaintiffs' expert witness report was served on Defendants on February 3, 2020. Subject to and without waiving the foregoing, Ms. Weisfeld has no responsive documents.

8.     All documents and communications supporting your contention that "the cost of remedial procedures" you seek in this Lawsuit "would likely be low," as alleged at Dkt. 32, p. 40.

**RESPONSE:** Ms. Weisfeld objects to this request for production on the ground that the contention requires legal analysis. Subject to and without waiving the foregoing, please see attached BATES WEISFELD-00000001, WEISFELD-00000003-4, WEISFELD-00000008-9, WEISFELD-00000015, WEISFELD-00000018-28.

9.     All documents and communications supporting your contention that Texas's signature matching procedure is "error-prone," as alleged in Paragraph 70 of your Complaint.

**RESPONSE**: Ms. Weisfeld objects to this request for production on the ground that it calls for expert witness testimony. Plaintiffs' expert witness report was served on Defendants on February 3, 2020. Subject to and without waiving the foregoing, please see attached BATES WEISFELD-00000001-2, WEISFELD-00000005-12, WEISFELD-00000015-28.

10.    Documents sufficient to show each "erroneous deprivation of the right to vote" you contend was caused by "an error-prone and flawed signature comparison," as alleged in Paragraph 55 of your Complaint.

**RESPONSE**: Ms. Weisfeld objects to this request for production on the ground that it calls for expert witness testimony and that the contention requires legal analysis. Plaintiffs' expert witness report was served on Defendants on February 3, 2020. Subject to and without waiving the foregoing, please see attached BATES WEISFELD-00000001-2, WEISFELD-00000005-12, WEISFELD-00000015-28.

11.    All documents and communications supporting your contention that "each county

10

(and even each committee if multiple SVC panels are created) necessarily develops its own idiosyncratic, arbitrary, and ad hoc procedure to determine that a ballot should be rejected," and that "[t]hese standards will necessarily vary from county to county, panel to panel, and even from meeting to meeting or ballot to ballot within the same committee panel," as alleged in Paragraph 41 of your Complaint.

      **RESPONSE**: Ms. Weisfeld objects to this request for production on the ground that it calls for expert witness testimony. Plaintiffs' expert witness report was served on Defendants on February 3, 2020. Subject to and without waiving the foregoing, Ms. Weisfeld has no responsive documents.

      12.    To the extent not already produced in response to the requests above, all documents you may rely upon to support your claims in this Lawsuit.

      **RESPONSE**: Ms. Weisfeld objects to this request as broad and vague and because it demands that she marshal all of her evidence that may be presented at trial, regardless of whether that evidence is within her care, custody, or control or whether Defendants have superior access of right to such documents. Ms. Weisfeld will produce all documents she relies upon to support his claims in this lawsuit according to the Amended Scheduling Order, the Federal Rules of Civil Procedure, and the Federal Rules of Evidence.

## MS. WEISFELD'S OBJECTIONS AND RESPONSES TO INTERROGATORIES

1.      Describe any relief that Plaintiffs contend would "provide voters meaningful notice prior to the rejection of a mail-in ballot and [] offer voters the ability to cure a mail-in ballot questioned for an alleged signature mismatch," as referenced in Paragraph 7 of your Complaint.

**RESPONSE**: Ms. Weisfeld objects to this interrogatory on the ground that it calls for a legal conclusion. Subject to and without waiving the foregoing, there are multiple forms of prospective relief that would provide voters meaningful notice prior to the rejection of a mail-in ballot and offer voters the ability to cure a mail-in ballot questioned for an alleged signature mismatch. Plaintiffs' counsel discuss such forms to relief in their pleadings as well as in communications with opposing counsel. To be meaningful, notice prior to final rejection must clearly explain the reason why the voter's ballot was questioned, be received by the voter through a method of delivery the voter has quick and easy access to, and be received with enough time for the voter to attempt to effectively cure the questioned ballot. A cure process must provide voters simple methods and ample time to correct a ballot wrongly questioned for signature mismatch.

2.      If you contend that the Secretary has "rule making authority" to "establish any standards or guidance that must be used for actually determining if a signature is that of the voter," as referenced in Paragraph 41 of your Complaint, please state the basis for that contention.

**RESPONSE**: Ms. Weisfeld objects to this interrogatory on the ground that it calls for a legal conclusion.

3.      State the basis for your contention that "each county (and even each committee if multiple SVC panels are created) necessarily develops its own idiosyncratic, arbitrary, and ad hoc procedure to determine that a ballot should be rejected," and that "[t]hese standards will necessarily vary from county to county, panel to panel, and even from meeting to meeting or ballot to ballot within the same committee panel," as alleged in Paragraph 41 of your Complaint.

**RESPONSE:** Ms. Weisfeld objects to this interrogatory on the ground that it calls for expert witness testimony. Plaintiffs' expert witness report was served on Defendants on February 3, 2020. Subject to and without waiving the foregoing, as alleged in paragraph 2 of the Complaint, "current rules authorize untrained local election officials to arbitrarily and subjectively reject mail-in ballots if officials believe, based on their own layman analysis, that the signature on a ballot is not in fact the voter's signature." Please also see responses to Open Records Requests from local election officials produced for Requests for Production above.

4.      State the basis for your contention that the "signature verification procedure is not and cannot be performed anonymously," as alleged in Paragraph 42 of your Complaint.

**RESPONSE**: Ms. Weisfeld objects to this interrogatory on the ground that Defendants are better equipped to answer it. Subject to and without waiving the foregoing, Ms. Weisfeld's understanding is that signature verification requires reviewing the written name of the voter. As a result, it essentially cannot be performed anonymously.

5.     If you contend that SOS is responsible for delivering, receiving, or accepting completed mail-in ballots, please state the basis for that contention.

**RESPONSE**: Ms. Weisfeld objects to this interrogatory on the ground that it calls for a legal conclusion. The provisions of the Texas Election Code speak for themselves.

6.     If you contend that SOS has the authority to seek judicial relief in connection with a local election official's decision to reject a mail-in ballot, please state the basis for that contention.

**RESPONSE**: Ms. Weisfeld objects to this interrogatory on the ground that it calls for a legal conclusion. The provisions of the Texas Election Code speak for themselves.

7.     If you contend that you had a constitutionally protected right to pre-rejection notice and opportunity to cure before your mail-in ballot in the 2018 General Election was allegedly rejected for signature mismatch, please state the basis for that contention.

**RESPONSE**: Ms. Weisfeld objects to this interrogatory on the ground that it calls for a legal conclusion.

8.     If you contend that you have a protected liberty interest in casting a ballot by mail, please state the basis for that contention.

**RESPONSE**: Ms. Weisfeld objects to this interrogatory on the ground that it calls for a legal conclusion.

9.     If you contend that you have a protected property interest in casting a ballot by mail, please state the basis for that contention.

**RESPONSE**: Ms. Weisfeld objects to this interrogatory on the ground that it calls for a legal conclusion.

10.     If you contend that SOS has the authority to reject any mail-in ballot for signature mismatch, please state the basis for that contention.

**RESPONSE**: Ms. Weisfeld objects to this interrogatory on the ground that it calls for a legal conclusion. The provisions of the Texas Election Code speak for themselves.

11.     Describe what "specific standards" you contend are required for the signature comparison process to "ensure its equal application," as alleged in Paragraph 74 of your Complaint.

**RESPONSE**: Ms. Weisfeld objects to this interrogatory on the ground that it calls for a legal conclusion. Subject to and without waiving the foregoing, there are multiple types of specific standards that could be put in place to resolve the issues in this lawsuit. Plaintiffs' counsel discuss such forms to relief in their pleadings and in communications with opposing counsel, and their

13

expert witness' report served on Defendants on February 3, 2020 also discusses such issues.

      12.    Describe any guidelines or trainings you contend SOS must provide to local election officials, EVBBs, or SVCs, including how you contend any such guidelines or trainings should be provided.

      **RESPONSE**: Ms. Weisfeld objects to this interrogatory on the ground that it calls for a legal conclusion. Subject to and without waiving the foregoing, there are multiple types of guidelines and trainings Defendant SOS could provide to resolve at least some of the issues in this lawsuit. Plaintiffs' counsel discuss such forms to relief in their pleadings as well as communications with opposing counsel.

14

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| DR. GEORGE RICHARDSON, ROSALIE WEISFELD, AUSTIN JUSTICE COALITION, COALITION OF TEXANS WITH DISABILITIES MOVE TEXAS CIVIC FUND, AND LEAGUE OF WOMEN VOTERS OF TEXAS, <br> *Plaintiffs*, <br><br> v. <br><br> TEXAS SECRETARY OF STATE, TRUDY HANCOCK IN HER OFFICIAL CAPACITY AS BRAZOS COUNTY ELECTIONS ADMINISTRATOR, AND PERLA LARA IN HER OFFICIAL CAPACITY AS CITY OF MCALLEN, TEXAS SECRETARY, <br> *Defendants*. | § § § § § § § § § § § § § § § § | No. 5:19-cv-00963 |

<u>**DEFENDANT SECRETARY OF STATE'S MOTION FOR SUMMARY JUDGMENT**</u>

**Tab 3**

**Austin Justice Coalition**

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

DR. GEORGE RICHARDSON,     *
ROSALIE WEISFELD, AUSTIN   *
JUSTICE COALITION,         *
COALITION OF TEXANS WITH   *
DISABILITIES, MOVE TEXAS   *
CIVIC FUND, LEAGUE OF      *
WOMEN VOTERS OF TEXAS,     *
and AMERICAN GI FORUM OF   *
TEXAS, INC.,               *
                           *
        Plaintiffs,        *
                           *          CIVIL ACTION NUMBER
VS.                        *          5:19-cv-0963
                           *
TEXAS SECRETARY OF         *
STATE, TRUDY HANCOCK, IN   *
HER OFFICIAL CAPACITY AS   *
BRAZOS COUNTY ELECTIONS    *
ADMINISTRATOR, AND PERLA   *
LARA IN HER OFFICIAL       *
CAPACITY AS CITY OF        *
McALLEN, TEXAS             *
SECRETARY,                 *
                           *
        Defendants.        *


            Remote Oral Deposition of

            Austin Justice Coalition,

    By and through their Designated Representative,

                LARISSA RODIONOV

                May 20, 2020

                10:16 a.m.


Reported by:

Micheal A. Johnson, RDR, CRR

Austin Justice Coalition - 5/20/2020

25

1       A.      Yes.

2       Q.      Has AJC had any prior dealings with the

3  Texas Secretary of State's office?

4       A.      No.

5       Q.      How about Perla Lara, the McAllen city

6  secretary?

7       A.      No.

8       Q.      And how about Trudy Hancock, the Brazos

9  County election administrator?

10      A.      No.

11      Q.      All right.  Thank you for bearing with me

12  on that.  Now I'm going to turn back to AJC as an

13  organization.  Topic 1 in the notice is just your

14  mission.  So how would you describe AJC's mission?

15      A.      I believe it's in the -- in a response

16  document that we sent to you, but basically, AJC is

17  a black-led organization that serves the black and

18  brown populations of Austin, Texas, in helping them

19  liberate themselves from the systemic racism in our

20  society.

21      Q.      And do you know if -- I think you

22  testified that AJC was founded in 2016; is that

23  right?

24      A.      2015.

25      Q.      And do you know if its mission has

26

1  changed since its founding?

2       A.      I don't believe so, no.

3       Q.      And I believe you also testified that

4  Chas Moore, the current executive director, founded

5  AJC?

6       A.      Yes.

7       Q.      Okay.  Do you know if anyone else was

8  involved in founding the organization?

9       A.      Yes.

10      Q.      Who was that?

11      A.      Fatima Mann.

12      Q.      And do you know if -- you said Mann, like

13  M-a-n-n?

14      A.      Yes.

15      Q.      Do you know if Ms. Mann is still involved

16  with AJC?

17      A.      She is not.

18      Q.      Do you know why?

19      A.      They had -- Fatima and Chas had different

20  ideas of how to reach certain goals.

21      Q.      Fair enough.  Do you know if she started

22  a different organization?

23      A.      She did.

24      Q.      And do you know what organization that

25  was?

43

1  brown populations in Texas jails.

2      Q.    Thank you.  And then if we can

3  fast-forward now down to AJC 26.  So tell me about

4  Project Orange?

5      A.    One second.  I lost the document somehow.

6  Let me --

7      Q.    Want me to send it to you?  Oh, it's

8  still there.  Okay.

9      A.    I should have it on my computer.  It

10  should be here.  I'm not sure what I did.  Okay.

11  You said AJC 26?

12      Q.    Yes.

13      A.    Okay.  Project Orange.

14      Q.    Yes.  So tell me about Project Orange.

15      A.    What specifically would you like to know?

16      Q.    Well, when did AJC first launch Project

17  Orange?

18      A.    So our first voter registration drive at

19  the jail was in February 2018.  There was obviously

20  some planning that went into that, probably late

21  2017.

22      Q.    And how does Project Orange further AJC's

23  mission?

24      A.    So as I said earlier, the jail population

25  is disproportionately black and brown and there is

Appx._088

Austin Justice Coalition - 5/20/2020

44

1   no way for inmates in jail to vote -- to get

2   registered to vote, first.  That is our main mission

3   with Project Orange, is to register these folks to

4   vote.  Because in Texas it is not easy to register

5   to vote.  You need to fill out a form with a VDR,

6   who is trained and certified as a voter deputy

7   register.  Or you need to obtain a form that you can

8   fill out and mail in.  So these options are not

9   available to folks in jail.  So we go into the jails

10  and register eligible inmates to vote.

11          And then we also -- during the -- every

12  November election and during the presidential

13  primary elections, we help inmates to get a mail-in

14  ballot.

15      Q.    So this first bullet point here mentions

16  that Project Orange registered more than 550

17  incarcerated citizens, up from over 300 in 2018.  So

18  do I read that right as, Project Orange registered

19  over 300 incarcerated citizens in 2018 and it

20  registered more than 550 incarcerated citizens in

21  2019?

22      A.    So this actual bullet point has not been

23  updated.  I did give Joao Paulo the updated

24  information.  This was published -- I think the 550

25  was supposed to be in 2019 and the 320 '18 and we've

Austin Justice Coalition - 5/20/2020

45

```
 1   now hit over a thousand on -- total, from adding

 2   those together with what we did in 2020 so far.

 3        Q.    And so did Project Orange first start

 4   registering voters in 2018?

 5        A.    Yes.

 6        Q.    And then I just -- just so I break it

 7   out, the approximate numbers, over 320 '18 and then

 8   in addition to that more than 550 in 2019?

 9        A.    Yes.

10        Q.    And then you mentioned over a thousand in

11   2020, and I just want to make sure that I'm clear on

12   whether you mean since 2018 or in 2020 alone?

13        A.    Since 2018.  We've done almost 200 in --

14   well, we did almost 200 in the first couple months

15   of 2020.

16        Q.    And does that 500 include the 300 from

17   2018?

18        A.    No.

19        Q.    Sorry, the 550?

20        A.    No, it does not.

21        Q.    Okay.  But the over 1,000 from 2020 does

22   include the 550?

23        A.    Yes.  That's total since Project Orange

24   began.

25        Q.    Thank you.  And then the second bullet,
```

Appx._090

Austin Justice Coalition - 5/20/2020

46

1    "Since October 2019 we've helped 159 inmates fill

2    out ballot by mail applications."

3         A.    Yes.

4         Q.    Did Project Orange help inmates with

5    ballot by mail applications -- well, let me ask that

6    better.

7              When did Project Orange start helping

8    inmates with ballot by mail applications?

9         A.    The election in November 2018.

10        Q.    So that would have been --

11        A.    We would have been there in October of

12   2018 to help them fill out their ballot by mail

13   applications.

14        Q.    Okay.  And then the 159 inmates since

15   October 2019 -- well, how many -- do you know how

16   many inmates AJC helped with a ballot by mail before

17   October 2019?

18        A.    No.  We did not keep a record of that,

19   unfortunately.  And I believe this number of 159

20   does not include the primary election held in March

21   this year.

22        Q.    All right.  And then who --

23        A.    We did about another 60.

24        Q.    The next bullet point talks about a

25   potential expansion in 2020.  Which counties are you

Appx._091

Austin Justice Coalition - 5/20/2020

47

1   considering expanding to?

2        A.    I have a list -- one of the AJC

3   volunteers did research into different counties in

4   Texas, identifying which had been voting more

5   Democrat recently and looking at -- with all that

6   process in there, we have a short list of about ten

7   counties and I don't know them off the top of my

8   head.  I do have a document with them on it, though.

9        Q.    And what -- you mentioned some voting

10  trends were looked at in determining counties to

11  expand to.  Do you know what else is factoring in to

12  the decision?

13            MR. KALAR:  Objection to form.

14       A.    Yeah.

15            MR. KALAR:  But go ahead.

16            THE WITNESS:  Okay.  Sorry.

17       A.    Voting trends and we looked at who the

18  sheriff was, who the district attorney was.  We also

19  looked at how many polling places different counties

20  had and whether that had increased or decreased

21  recently.

22  BY MS. MACKIN:

23       Q.    And why did those factors matter?

24       A.    Because we were looking for a place that

25  would encourage -- or would be open to further voter

Austin Justice Coalition - 5/20/2020

49

1   BY MS. MACKIN:

2        Q.     Does AJC participate in any activities

3   that are not reflected on Exhibit 4?

4                    MR. KALAR:  Objection to form.

5                    But go ahead.

6        A.     So I don't believe that all of the

7   different events that AJC hosts are included in this

8   document.  There are probably some minor policy

9   issues that are not elaborated on in this document.

10  BY MS. MACKIN:

11       Q.     Okay.  Anything else?

12       A.     No.

13       Q.     All right.  That's all that I have on

14  that document.

15                   MS. MACKIN:  Why don't we go ahead

16  and take maybe a five-, ten-minute break.  Let's go

17  off the record.

18                   THE REPORTER:  We're off the record.

19                   (Recess taken from 11:27 a.m. to

20  11:40 a.m.)

21  BY MS. MACKIN:

22       Q.     All right.  Ms. Rodionov, I am sharing a

23  document with you that is Bates-labeled AJC 1 and it

24  is, in fact, a spreadsheet.  Sorry, I'm having a

25  little bit of document trouble.  Just one more

1      Q.      And we will make this Exhibit 5 to this

2   deposition.

3              (Deposition Exhibit 5 marked for

4   identification.)

5   BY MS. MACKIN:

6      Q.      Do you know why this document was

7   prepared?

8      A.      To keep an account of our finances.

9      Q.      Sure.  I was just -- I ask that because

10   sometimes folks might prepare something specifically

11   for a deposition.  So that was the reason for the

12   question.

13      A.      Okay.

14      Q.      And why is the first year that is listed

15   on this document fiscal year 2018?

16      A.      We did not have funding prior to that.

17   We got our first grant in August of 2017.

18      Q.      Okay.  So I'd like to start by looking at

19   the sheet that says Fiscal Year 2018.  Can you tell

20   me which of these categories includes AJC's voter

21   registration efforts?

22              MR. KALAR:  Objection to form.

23              But go ahead.

24              THE WITNESS:  Sorry.

25      A.      None specific -- sorry?

Austin Justice Coalition - 5/20/2020

52

1    BY MS. MACKIN:

2         Q.    You can answer.  Go ahead.

3         A.    Okay.  None specifically.  Our -- AJC's

4    Project Orange expenses would be included in the

5    things like printing and copying, where AJC included

6    information about Project Orange in other materials

7    about the organization.  And also I don't think it's

8    on this one in 2018.  The website, which includes

9    information about Project Orange, would also be

10   included.  But there's no actual entry relating

11   specifically to Project Orange.

12        Q.    You did mention printing and copying and

13   the website?

14        A.    Yes.

15        Q.    Anything else?

16        A.    No.

17        Q.    Okay.  And you mentioned that the

18   printing and copying expenses related to Project

19   Orange were used to publicize Project Orange; is

20   that right?

21        A.    Yes.

22        Q.    Okay.  Were they used for anything else?

23        A.    No.

24        Q.    Okay.  And then the website, how is the

25   website used to --

Austin Justice Coalition - 5/20/2020

53

1     A.    Project Orange has -- sorry.  Go ahead.

2     Q.    -- to further Project Orange?

3     A.    The website contains a page specifically

4   for Project Orange.  So we -- it has information

5   about what we do, it has a link to our Project

6   Orange e-mail to get in touch with us and it

7   outlines the steps of how to become a Project Orange

8   volunteer.

9     Q.    All right.  Let's move on to Fiscal

10  Year 2019.  Which of these categories reflects the

11  resources that AJC dedicated to Project Orange?

12              MR. KALAR:  Objection to form.

13              Go ahead.

14     A.    So under Color, there is website and

15  materials, that again would have included Project

16  Orange.  And also other expenses may have included

17  things for Project Orange to promote the project.

18  BY MS. MACKIN:

19     Q.    Okay.  And the other expenses, you mean

20  the $600 reflected on row 79?

21     A.    Yes.

22     Q.    And do you know how those expenses were

23  used to support Project Orange?

24     A.    Not exactly.  Frances mentioned to me

25  that any money spent on Project Orange would have

54

1   come out of line 78, 79 and then back up at 31.  As

2   far as I know, we have not had any direct expenses

3   for Project Orange in the past year.

4        Q.    Okay.  So your answer would be the same

5   if I asked you about the 2020 budget?

6        A.    Right.

7             MR. KALAR:  Objection to form.

8        A.    We don't have any -- we have not had any

9   expenses in 2020.

10  BY MS. MACKIN:

11       Q.    Okay.

12       A.    Aside from, again, the website and any

13  other printed material that included information

14  about Project Orange.

15       Q.    All right.  Thank you.  We are done with

16  that exhibit for now.  I am sharing with you a

17  document.  It's also a spreadsheet marked AJC 16.

18  And that will be Exhibit 6 to this deposition.

19             (Deposition Exhibit 6 marked for

20  identification.)

21  BY MS. MACKIN:

22       Q.    Please let me know when you're able to

23  pull it up and ready to discuss it.

24       A.    I'm ready.

25       Q.    Do you recognize Exhibit 6?

Austin Justice Coalition - 5/20/2020

60

1    registered to vote while in jail.

2       Q.    Does Tiffany track any other information

3    about the people who you help apply for a ballot by

4    mail?

5                 MR. KALAR:  Objection to form.

6       A.    I do not know for certain what all

7    information she tracks.  The information that she

8    sends to us is how many people filled out the

9    application, I believe she tells us how many people

10   return their ballots and then how many people -- of

11   those, how many people registered to vote from --

12   while they were in jail.

13   BY MS. MACKIN:

14      Q.    So do you learn anything about whether

15   anyone that you assist with a ballot by mail has

16   their ballot rejected?

17                 MR. KALAR:  Objection to form.

18      A.    We are not -- as I said, we are not

19   allowed contact with the inmates outside of the

20   times that we come to help them with their

21   applications and their voter registration, so we

22   would have no way of knowing that.

23   BY MS. MACKIN:

24      Q.    And other than Exhibit 6, there are no

25   other records of the time spent on Project Orange;

Appx._098