1   paying for subscriptions to have this and maintain

2   the database, but no, we don't keep the cost per

3   item.

4        Q.    I want to talk through -- down at the

5   bottom, it looks like it talks at methods of

6   voting --

7        A.    Uh-huh.

8        Q.    -- in Texas.  And it lists kind of two

9   methods for voting at the polls, one being

10   independently, with an accessible voting machine;

11   and then the second one being, at an accessible

12   voting machine with assistance of a person's

13   choosing, as long as they're not an election worker

14   or their employer.

15            Is it your understanding that those two

16   methods of voting at the polls are still available

17   in Texas?

18        A.    I believe so, yes.

19        Q.    Okay.  And then moving down to -- under

20   the heading Alternative Methods of Voting, it

21   mentions curbside voting and also voting by mail for

22   voters over 65 or voters who have a disability.

23            Is it your understanding that those two

24   methods of voting are still available in Texas?

25                MR. MIRZA:  Objection, form.

```
 1              You can answer, Chase.  I think you

 2  already did, but you can answer.

 3      A.    Yes.

 4  BY MS. MACKIN:

 5      Q.    Okay.  I want to talk a little bit

 6  more -- that's all the questions that I have on this

 7  exhibit.

 8              I want to talk a little bit more about --

 9  we touched on this earlier, but I'm looking at

10  paragraph 82 of the complaint.  It says that CTD

11  wants the defendants to, you know, provide a way for

12  voters, who are disabled and cannot vote in person

13  and due to their disability cannot sign matching

14  signatures, an opportunity to vote that is equal and

15  equally effective as that opportunity provided to

16  others.

17              And so what would that -- what would that

18  look like?

19              MR. MIRZA:  Objection, form.

20      A.    At the end of the day --

21              MR. MIRZA:  Objection, form.

22              You can answer, Chase.

23      A.    At the end of the day, I think the State

24  of Texas and the counties, all giving the people the

25  right to cure a ballot, if the current program stays
```

1      Q.    Do you know if any CTD member has had a

2   mail-in ballot rejected because of a signature

3   mismatch?

4      A.    I do not.

5      Q.    Do you know if CTD has ever assisted any

6   voter after their ballot was rejected for a

7   signature mismatch?

8                MR. MIRZA:  Objection to form.

9                You can answer, Chase.

10     A.    No.

11  BY MS. MACKIN:

12     Q.    I want to talk a little bit about the

13  witness process.  We've discussed it a little bit,

14  but I want to understand more how it impacts CTD and

15  CTD's mission.  You know, is it your understanding

16  that if a voter is unable to mark their ballot or

17  sign their name, and I'm talking about a mail-in

18  ballot, that they can have a witness mark the ballot

19  and sign it for them?

20                MR. MIRZA:  Objection, form.

21                You can answer, Chase.

22     A.    Yes.  And if a witness signs it, at the

23  same time that takes away the person's ability to

24  have that private ballot.  Also people will have a

25  hard time finding witnesses who are willing to sign

72

1          But I -- you know, I try and make sure

2    every time I sign something, I sign it the correct

3    way, no matter what, or as close as possible.  But

4    for us in trainings, you know, it's just trying to

5    get in front of people and talking to them.  The

6    virtual Raise Your Voice programs that we're

7    planning for -- starting in July, around the ADA

8    30th anniversary, we'll have a voting segment in

9    there and we will actually talk about it, discuss

10   all the options of mail-in ballots, why their

11   signature really needs to have focus.  But also all

12   the ins and outs of what parts of the form to fill

13   out, when do they got to be there.  It's complex.

14   Especially someone being in a hospital like I had at

15   the last election.  I broke my leg and ended up in

16   the hospital for a month, thought I was going to be

17   voting ahead of time at a polling site and I tried

18   to do the mail-in ballots and ran into all kinds of

19   issues of trying to get it to them.  So it's not as

20   easy.

21        Q.    So does -- and I think I know the answer

22   based on what you just said, but does the Coalition

23   of Texans With Disabilities intend to continue

24   training voters on voting by mail?

25        A.    Yes.  Yes.

Appx._152

1    Q.    And then one last thing.  The complaint
2 says that there are members on whose behalf the CTD
3 is suing.  How many members are you suing on behalf
4 of?

5              MR. MIRZA:  Objection, form.

6              You can answer, Chase.

7    A.    So I would say any and every one of our
8 members that this would affect.  And I think
9 something that gets forgotten is not just our
10 membership, we always represent all Texans with
11 disabilities, their family members.  It's -- our
12 sole purpose is to make sure they continue to have
13 access even if they don't know that issue is there.
14 So it's all Texans with disabilities is who we
15 really want to ensure have that access, along with
16 everyone else.

17              But at the end of the day, also to follow
18 up on -- sorry, that last question you said, we will
19 continue to do mail-in ballot training just to
20 remind people that that option's out there, because
21 not everyone uses it each time.  But at the same
22 time, if we do find a way to cure this and the
23 signature issue, that's one less thing I have to
24 work on making sure they understand in the midst of
25 a lot of information in one day they usually

1  receive.  That allows me to move on to the next

2  issue that we're dealing with; be it attendant

3  wages, transportation, education.  So every little

4  thing we fix, you know, we allow people access to,

5  moves us to the next step of something we need to

6  accomplish.

7  BY MS. MACKIN:

8      Q.    This is not a suggestion that you should

9  have done this, because I know that, you know,

10 you've expressed that there are -- you have some

11 concerns about the process, but I'm just curious as

12 to whether CTD has dedicated any resources to try

13 and help folks who can't get to the polling place in

14 person, get a witness for their mail-in ballot?

15             MR. MIRZA:  Objection, form.

16             You can answer.

17     A.    No.

18 BY MS. MACKIN:

19     Q.    That's fair.  That was all I --

20     A.    Actually, let me back up and say, with

21 Susie and Juan, they did ask me about a witness,

22 their witness that they had chosen.  So I did talk

23 them through it.  We have talked to people about --

24 we don't send witnesses out.  We don't do any of

25 that.  We try and help them understand it so that

81

1                    REPORTER'S CERTIFICATION

2

3          I, Micheal A. Johnson, Registered Diplomate

4    Reporter, Certified Realtime Reporter and Notary

5    Public in and for the State of Texas, certify that

6    on the 19th day of May, 2020, I reported the Remote

7    Oral Deposition of CHASE BEARDEN, after the witness

8    had first been duly cautioned and sworn to testify

9    under oath; said deposition was subsequently

10   transcribed by me and under my supervision and

11   contains a full, true and complete transcription of

12   the proceedings had at said time and place; and that

13   reading and signing was requested.

14         I further certify that I am neither counsel

15   for nor related to any party in this cause and am

16   not financially interested in its outcome.

17         GIVEN UNDER MY HAND AND SEAL of office on

18   this 29th day of May, 2020.

19

20

21   _____
     MICHEAL A. JOHNSON, RDR, CRR
22   NCRA Registered Diplomate Reporter
     NCRA Certified Realtime Reporter
23
     Notary Public in and for the
24   State of Texas
     My Commission Expires:  8/8/2020
25

                                          Appx._155

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| DR. GEORGE RICHARDSON, ROSALIE | § | |
| WEISFELD, AUSTIN JUSTICE COALITION, | § | |
| COALITION OF TEXANS WITH | § | |
| DISABILITIES, MOVE TEXAS CIVIC FUND, | § | |
| LEAGUE OF WOMEN VOTERS OF TEXAS, | § | |
| and AMERICAN GI FORUM OF TEXAS, | § | |
| INC., | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | No. 5:19-cv-00963 |
| | § | |
| TEXAS SECRETARY OF STATE, TRUDY | § | |
| HANCOCK, IN HER OFFICIAL CAPACITY | § | |
| AS BRAZOS COUNTY ELECTIONS | § | |
| ADMINISTRATOR, AND PERLA LARA IN | § | |
| HER OFFICIAL CAPACITY AS CITY OF | § | |
| MCALLEN, TEXAS SECRETARY, | § | |
| *Defendants.* | § | |

### DEFENDANT SECRETARY OF STATE'S NOTICE OF ORAL DEPOSITION PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30

TO:   Coalition of Texans with Disabilities, by and through its attorneys of record, Hani Mirza, Zachary D. Dolling, Beth Stevens, and Ryan Cox, Texas Civil Rights Project, 1405 Montopolis Drive, Austin, Texas 78741; and Richard Mancino, Jennifer Hardy, Joanna Suriani, Willkie Farr & Gallagher LLP, 1875 K Street, N.W., Washington, DC 20006.

Defendant Texas Secretary of State hereby notices the deposition upon oral examination of Coalition of Texans with Disabilities "CTD," including all subsidiaries, DBAs, and aliases, beginning at **10:00 AM** on, **Tuesday**, **May 19, 2020** and continuing from day to day until complete. The deposition will be held virtually via Zoom videoconference and will be transcribed and videotaped by a certified court reporter and videographer designated by Defendant. Defendant reserves the right to

1



Exhibit
Chase Bearden

1

5/19/2020    MJ

Appx._180

use the deposition for any purpose permitted under the Federal Rules of Civil Procedure or Federal Rules of Evidence.

Pursuant to Federal Rule of Civil Procedure 30(b)(6), CTD is directed to designate one or more officers, directors, managing agents, or other persons who will testify on CTD's behalf regarding all information known or reasonably available to CTD with respect to the matters set forth in **Attachment A**.

Pursuant to Federal Rules of Civil Procedure 30(b)(2) and 45, CTD is also requested to produce at least 24 hours before the videoconference deposition, all documents in response to the subpoena duces tecum in **Attachment B**.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

RYAN L. BANGERT
Deputy First Assistant Attorney General

DARREN L. MCCARTY
Deputy Attorney General for Civil Litigation

THOMAS A. ALBRIGHT
Chief for General Litigation Division

*/s/ Anne Marie Mackin*
ANNE MARIE MACKIN
Texas Bar No. 24078898
Assistant Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2798 | FAX: (512) 320-0667
anna.mackin@oag.texas.gov

2

**ATTORNEYS FOR DEFENDANT**
**TEXAS SECRETARY OF STATE**

**CERTIFICATE OF SERVICE**

I certify that that on May 14, 2020 this notice was served upon counsel listed below via email.

**Hani Mirza**
hani@texascivilrightsproject.org
**Zachary D. Dolling**
zachary@texascivilrightsproject.org
**Rebecca Harrison Stevens**
beth@texascivilrightsproject.org
**Ryan V. Cox**
ryan@texascivilrightsproject.org
**Samuel Kalar**
skalar@willkie.com
**Joanna Suriani**
jsuriani@willkie.com
**Eric Magee**
e.magee@allison-bass.com
**Isaac J. Tawil**
itawil@mcallen.net
**Austin Stevenson**
astevenson@mcallen.net
**C. Robert Heath**
bheath@bickerstaff.com
**Gunnar P. Seaquist**
gseaquist@bickerstaff.com

*/s/Anne Marie Mackin*
ANNE MARIE MACKIN
Assistant Attorney General

3

## DEFINITIONS

The terms below are used in this notice as follows:

1. "Coalition of Texans with Disabilities," "CTD," "you," "your," or "yours" mean League of Women Voters of Texas (a plaintiff in this Lawsuit) and anyone acting or purporting to act on their behalf with respect to any matter inquired about herein, including without limitation representatives, employees, or agents.

2. "Austin Justice Coalition," or "AJC," means Austin Justice Coalition (a plaintiff in this Lawsuit), and anyone acting or purporting to act on its behalf with respect to any matter inquired about herein, including without limitation representatives, employees, or agents.

3. "League of Women Voters," "LWV," or "LWVTX," means League of Women Voters of Texas (a plaintiff in this Lawsuit) and anyone acting or purporting to act on their behalf with respect to any matter inquired about herein, including without limitation representatives, employees, or agents.

4. "MOVE Texas Civic Fund," "MOVE Texas," or "MOVE" means MOVE Texas Civic Fund (a plaintiff in this Lawsuit), and anyone acting or purporting to act on its behalf with respect to any matter inquired about herein, including without limitation representatives, employees, or agents.

5. "Individual Plaintiffs" means Dr. George Richardson and Ms. Rosalie Weisfeld, natural persons who are plaintiffs in this lawsuit, and anyone acting or purporting to act on their behalf with respect to any matter inquired about herein, including without limitation representatives, employees, or agents.

6. "Organizational Plaintiffs" means AJC, CTD, MOVE, and LWVTX, and anyone acting or purporting to act on their behalf with respect to any matter inquired about herein, including without limitation representatives, employees, or agents.

7. "Plaintiffs" means the Individual Plaintiffs and the Organizational Plaintiffs.

8. "Person" means the plural as well as the singular and includes: natural persons, corporations, firms, associations, partnerships, joint ventures, trusts, estates, or any other form of legal entity; and governmental agencies, departments, units, or subdivisions thereof.

4

9. "SOS" means the Defendant Texas Secretary of State, in her official capacity, including without limitation representatives, employees, agents, or officers acting on her behalf with respect to any matter inquired about herein.

10. "Defendants" means SOS; Trudy Hancock, in her official capacity as Brazos County Elections Administrator; and Perla Lara, in her official capacity as City of McAllen, Texas, Secretary.

11. "Lawsuit" means the case styled, *Dr. George Richardson, et. al. v. Texas Secretary of State, et al.*, civil action no. 5:19-cv-00963 in the United States District Court for the Western District of Texas, San Antonio Division.

12. "Complaint" means your live pleading in this case—as of service of these discovery requests, the document entitled "Plaintiff's Original Complaint," filed in this Lawsuit on August 7, 2019 (Dkt. 1).

13. "Communication" means any manner or means of disclosure, transfer, or exchange of information, whether oral, written, in-person, telephonic, electronic, digital, mailed, or otherwise.

14. "Document" includes all writings of every kind, source and authorship, both originals and all non-identical copies thereof including handwritten, typewritten, printed, photocopied, photographic, or electronically recorded matter. For purposes of illustration and not limitation, the term shall include: emails, Facebook postings, social media postings, letters, journals, diaries, bank statements, charts, Excel spreadsheets, handwritten notes, affidavits, schedules, workpapers, audio recordings, video recordings, transcriptions, contracts, agreements, and memoranda of any kind.

15. "Relating to" means in any way concerning, constituting, analyzing, discussing, describing, considering, modifying, amending, confirming, endorsing, evidencing, representing, supporting, substantiating, qualifying, negating or refuting, unless qualified by word of limitation.

16. The singular includes the plural and vice versa.

17. The masculine gender includes the feminine and vice versa.

18. All other terms are to be interpreted in accordance with their normal usage in the English language.

5

## Attachment A

### 30(B)(6) CORPORATE REPRESENTATIVE DEPOSITION TOPICS

1. Your mission.

2. Your organization, including your organizational structure, employees, physical assets, parent and sibling entities, tax status, and history; the services that you provide, and the activities you perform.

3. The activities on which you have spent funds or to which you have dedicated resources in Texas between January 1, 2017 and the present.

4. Your members on whose behalf you seek to maintain this lawsuit.

5. The allegations you make in your Complaint and the factual bases therefor.

6. The relief that you contend would remedy the claims you make in this lawsuit.

7. The documents produced in response to

   a. the subpoena duces tecum described in Attachment B, and;

   b. Defendants' Requests for Admission, Interrogatories, and Requests for Production in this cause.

Appx._161

## Attachment B

To the extent not already produced by you in response to the Secretary of State's discovery requests in this cause, produce the following:

1. Documents sufficient to substantiate the factual allegations you make in your Complaint.

2. All communications between you and any person to assist them in voting by mail in Texas.

3. Documents sufficient to show all information described and/or requested in 30(b)(6) deposition topic numbers 2, 3, 4, and 5 in Attachment A to this notice.

4. To the extent not already provided in response to items 1-3 above, all documents reviewed in preparation for your deposition.

If documents responsive to these categories have already been produced in discovery, the witness is expected to be able to identify those documents by bates numbers.

CTD About Us | Coalition of Texans with Disabilities



HOME   ABOUT US   ADVOCACY   FILM FESTIVAL   BLOG   CONSULTING   GET INVOLVED

Home >
CDS DIVISION

# ABOUT US

Founded in 1978, CTD is the largest and oldest member-driven cross-disability organization in the state. "Cross-disability" refers to all types of disabilities and different functional needs, rather than a particular disability or subset of disabilities. CTD envisions a future where all Texans with all disabilities may work, live, learn, play, and participate fully in the community of their choice.

We focus on governmental advocacy, public awareness activities, and professional disability consulting to make Texas a leader in disability-related public policy and culture.



_See full-sized Infographic_

https://www.txdisabilities.org/about-us

Exhibit
Chase Bearden

3

5/19/2020  MJ

1/4

Appx_163
CTD-00000080

CTD About Us - Coalition of Texans with Disabilities

Donate Now | Contact Us | Sign Up for Newsletter

# CTD Coalition of Texans with Disabilities

HOME | ABOUT US | ADVOCACY | FILM FESTIVAL | BLOG | CONSULTING | GET INVOLVED

CTD DIVISION

Engaging the general public contributes to positive cultural shifts, and for this reason, CTD is committed to holding outstanding **public awareness** initiatives. Each year, we produce events and presentations that focus on disability in the arts, sports & recreation, and consumer education, most notably, our award winning Cinema Touching Disability Film Festival & Short Film Competition.



*Our staff (L-R, back row): Aracely Menendez, Rosie Williams, Denise Ellison, Dennis Borel, Chris Masey, Tiffany Williams, William Greer, Kit Cuny. (L-R, front row) Jennifer Bracy, Susie Angel, Chase Bearden, Laura Perna.*

## ABOUT US

### Our Staff
Based in Austin, CTD's staff is composed of dedicated individuals with and without disabilities.

Appx. 164
CTD-00000081

Donate Now | Contact Us | Sign Up for Newsletter



HOME   ABOUT US   ADVOCACY   FILM FESTIVAL   BLOG   CONSULTING   GET INVOLVED

Members of the media interested in leveraging our expertise or scheduling an interview about an issue or upcoming event are encouraged to contact Dennis Borel at 512-478-3366.

CDS DIVISION

View the CTD Media Kit

## ANNUAL REPORT

Learn about this year's advocacy and organizing activities, arts and community events, and more in our detailed, easy to read annual reports.

**2019 Annual Report**

More reports



1716 San Antonio St.
Austin, Texas 78701
Phone: (512) 478-3366
Fax: (512) 478-3370
email: info@txdisabilities.org

*CTD works to ensure that persons with disabilities may work, live, learn, play and participate fully in the community of their choice. CTD is a 501(c)(3) nonprofit organization with Federal Tax ID #74-2071160.*

Home | About Us | Advocacy | Film Festival | Blog | Consulting | Get Involved | CDS Division
Donate Now | Contact Us | Sign Up for Newsletter

Site Map | Site Information | Accessibility | Report A Website Problem

© 2020 Coalition of Texans with Disabilities
Site by: Mighty Citizen

Appx._165
CTD-00000082



HOME     ABOUT US     ADVOCACY     FILM FESTIVAL     BLOG     CONSULTING     GET INVOLVED

CDS DIVISION

Appx._166
CTD-00000083

| | A | B | C | D | E | F | G |
|---|---|---|---|---|---|---|---|
| 1 | **COALITION OF TEXANS WITH DISABILITIES** | | | | | | |
| 2 | *ANNUAL BUDGET* | | | | | | |
| 3 | **For January 1 - December 31, 2019** | | | | | | |
| 4 | | | | | | | |
| 5 | | | | | | | |
| 6 | | 2018 | 2019 | | | | |
| 7 | **Description** | | | | | | |
| 8 | | | | | | | |
| 9 | **REVENUE AND SUPPORT:** | | | | | | |
| 10 | | | | | | | |
| 11 | Grant-St. David's Foundation | 40000 | 160000 | 2nd payment of CDS space renovation | | | |
| 12 | Grant-Other-consumer stipends, Policy Fellow | 70000 | 45500 | stipends = 3500, fellow= 42000 | | | |
| 13 | Grant-DentaQuest | | 85000 | grant #1 renewed at lower amount in 2019 | | | |
| 14 | CDS Revenue (net rev. before operating ex.) | 475000 | 480000 | | | | |
| 15 | Conference Sponsors | 25000 | 50000 | RYV | | | |
| 16 | Contributions/Donations | 75000 | 70000 | | | | |
| 17 | Special Events | 100000 | 100000 | FF | | | |
| 18 | Consultant Fees | 90000 | 45000 | lege session retricts availablility for consulting | | | |
| 19 | Interest & Other Income | 2500 | 2500 | | | | |
| 20 | **TOTAL REVENUE AND SUPPORT** | 877500 | 1038000 | | | | |
| 21 | | | | | | | |
| 22 | **EXPENSES:** | | | | | | |
| 23 | Payroll/Benefits | 625000 | 705000 | sal. Imrpovem + new position _JB | | | |
| 24 | St. David's Fdn grant exp. | 40000 | 160000 | | | | |
| 25 | Accounting/Audit/Consultants/Professional Fees | 17000 | 57000 | acctg/audit=17,000, Jeff K tech=40000 | | | |
| 26 | Film Fest Expenses | 11000 | 14000 | | | | |
| 27 | Postage/Office Supplies | 25500 | 26000 | | | | |
| 28 | Occupancy | 22000 | 28000 | prop taxes,util, ins. , maint. | | | |
| 29 | Subscriptions/Dues/Permits | 5000 | 5000 | | | | |
| 30 | Telecommunications | 15000 | 15000 | | | | |
| 31 | Miscellaneous Expenses | 75000 | 75000 | | | | |
| 32 | | | | | | | |
| 33 | **TOTAL EXPENSES** | 835500 | 1085000 | | | | |
| 34 | | | | | | | |
| 35 | Mortage Loan payments | 69756 | 69756 | princpal and interest | | | |
| 36 | | | | | | | |
| 37 | Total Expenditures | 905256 | 1154756 | | | | |
| 38 | | | | | | | |
| 39 | **To Be Raised** | 27756 | 116756 | | | | |

 

Spread the word »

**May 14**

**CTD Competitions:**

**1. Adjusted Lens: CTD's Disability Photo Competition.** This is our very first year for this competition and it's part of this year's Cinema Touching Disability Short Film Competition. We are looking for photos that capture person(s) with disabilities working, living, learning, playing, and fully participating in their communities.

Deadline: August 24, 2012

Who can enter? Anyone who can take a digital photo.

Prizes:

*Grand Prize* -- $150.00 and a framed print of his/her photo. *2nd Place* -- A 1st edition copy of La Vida Brinca: A Book of Tragaluz Photographs by Bill Wittcliff (Value $50.00) and a framed print of his/her photo. *3rd Place* -- A framed print of his/her photo.

***All winning photos and selected entries will be featured at the Cinema Touching Disability Film Festival and displayed in a traveling Adjusted Lens exhibit.

For rules and entry instructions, visit Adjusted Lens

**2. 2012 Cinema Touching Disability Short Film Competition** We want to see your best 3-20 minute film made about disability or by a person with a disability.

Deadline: August 10, 2012

Who can enter? Emerging Filmmakers (18+ yrs) and Scholastic Filmmakers (grades 6th - 12th)



Logo for CTD Messenger

Party primaries for State & Federal Elections are right around the corner. Early voting begins May 14th until May 25th, and then the official Election Day will be held on Tuesday May 29th. While considering when to vote, keep in mind that early voting is much easier because the voting sites will be less crowded and you don't need to know what precinct you are assigned to. Just take your voters' registration card to any early voting site and vote. Also, be aware that the voter ID laws that were passed by the legislature in 2011 will not be in effect for these primaries. According to Secretary of State Hope Andrade, this is because they are currently under review by the courts & Department of Justice.

Picture: Secreta... State Hope Andra... talking to CTD St... (Left to Right: Bry... Smith, William Gr... Chase Bearden, De... Borel)

CTD urges everyone who is registered to vote to do so. Many people don't realize what exercising their right to vote really means. Not only are you picking your candidate choices, but your vote also shows your interest in what happens in your community and legislators will be more apt to listen to their constituents with disabilities.

*Voting at the Polls:*

There are two ways to cast your ballot if you are a Texas voter with a disability or an ol... Texas voter:

1. Independently with an accessible voting machine: Accessible machines are avail... every polling place, except in some nonfederal elections that are held in counties... have a population under 20,000.
2. At an accessible voting machine with assistance: You can be assisted by a person... your choice that isn't an election worker, 2 election workers on Election Day, or... election worker at early voting. However, the person you choose cannot be your... employer, an agent of your employer, or an officer or agent of your union. He/sh... also take an oath which states that he/she will not influence your vote, will mark... ballot as you direct, and will not tell anyone how you voted.

*Alternative Methods of Voting:*

Whether you are a Texas voter with a disability or an older Texas voter who is unable to... physically get to voting polls or you just can't go into the voting place for some reason,... can still exercise your right to vote by using one of the two other ways:

- Curbside voting: An election official can bring the ballot to you at the entrance o... car at curbside. After you mark your ballot, give it back to an election official an... he/she will put it in the ballot box. You may also request that a companion hand t... ballot to you and deposit it for you. If you plan to be alone during curbside voting... should call ahead so election officials will expect you.
- By mail: If you will be 65 or older on Election Day, have a disability, or will be o... the county during early voting hours and on Election Day, you may apply to vote... mail. Simply submit a completed and signed application for a ballot by mail any... between now and May 23rd to the proper early voting clerk. Applications for a ba...



Exhibit
Chase Bearden
5
5/19/2020  MJ

Appx._168

CTD-00000026

Prizes:

*1st Place* -- $500
*2nd Place* -- $250
*3rd Place* -- $100

<u>Click Here</u> to enter our competition.

Or, for the rules and to find out more, visit:
<u>Cinema Touching Disability Short Film Competition</u>

**3. Pen 2 Paper Creative Writing Competition** is still collecting your stories, your perspectives, your fears, and your discoveries about disability.

Deadline: August 20, 2012

Contest is open to Texas writers, with or without disabilities, of all writing levels.

To find out guidelines and to look at entries from past winners, visit <u>Pen 2 Paper.</u>

Follow all the work we do and the progress we're making by checking us out on:

  

By clicking on the donate button below, you will become a supporting member of CTD and help us to keep advocating for Texans with disabilities.



*Table: Your polling places will meet these strict accessibility standards*

Logo for MY MEDICAID MATTERS: REAL PEOPLE REAL VOICES REAL REFORM

by mail may be submitted in person a main early voting polling place, as lo early voting by personal appearance taking place.

If you have any problems voting, ple contact Disability Rights Texas at 51 4816 or call the voting hotline 1-888-VOTE and someone will investigate matter.

The My Medicaid website has just launched at <u>www.mmmtx.org,</u> so take a moment t learn more about our education campaign. You will be able to learn more about the benefits of Medicaid, what could happen to Texas if Medicaid were reduced or eliminated, and how you can become a supporting organization. If all the informatio seems overwhelming, please <u>at least</u> find and sign our electronic petition.

Tel: (51
Fax: (51
Email: <u>cotwc</u>
<u>Click here to</u>

Appx._169
CTD-00000027

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| DR. GEORGE RICHARDSON, ROSALIE WEISFELD, AUSTIN JUSTICE COALITION, COALITION OF TEXANS WITH DISABILITIES, MOVE TEXAS CIVIC FUND, LEAGUE OF WOMEN VOTERS OF TEXAS, and AMERICAN GI FORUM OF TEXAS, INC., | § § § § § § § § | |
| | § | |
| *Plaintiffs* | § | |
| | § | |
| v. | § | Civil Case No. 5:19-cv-00963 |
| | § | |
| TEXAS SECRETARY OF STATE, TRUDY HANCOCK, in her official capacity as BRAZOS COUNTY ELECTIONS ADMINISTRATOR, and PERLA LARA in her official capacity as CITY OF MCALLEN, TEXAS SECRETARY, | § § § § § § § | |
| | § | |
| *Defendants.* | § | |

## PLAINTIFF COALITION OF TEXANS WITH DISABILITIES' OBJECTIONS AND RESPONSES TO DEFENDANT SECRETARY OF STATE'S FIRST REQUESTS FOR ADMISSION, INTERROGATORIES, AND REQUESTS FOR PRODUCTION

TO:     Defendant Texas Secretary of State, by and through her attorneys of record Ken Paxton, Jeffrey C. Mateer, Darren L. McCarty, Thomas A. Albright, and Anne Marie Mackin, via e-mail to anna.mackin@oag.texas.gov.

Pursuant to Federal Rules of Civil Procedure 33, 34, and 36, Plaintiff Coalition of Texans with Disabilities (CTD) hereby serves the following Objections and Responses to Defendants' First Requests for Admissions, Requests for Production, and Interrogatories.

Dated: April 16, 2020                    Respectfully Submitted,

/s/        *Hani Mirza*

**TEXAS CIVIL RIGHTS PROJECT**

Mimi M.D. Marziani
Texas Bar No. 24091906
mimi@texascivilrightsproject.org
Rebecca Harrison Stevens
Texas Bar No. 24065381
beth@texascivilrightsproject.org
Hani Mirza
Texas Bar No. 24083512
hani@texascivilrightsproject.org
Ryan V. Cox
Texas Bar No. 24074087
ryan@texascivilrightsproject.org
Zachary D. Dolling
Texas Bar No. 24105809
zachary@texascivilrightsproject.org

1405 Montopolis Drive
Austin, Texas 78741
512-474-5073 (Telephone)
512-474-0726 (Facsimile)

**WILLKIE FARR & GALLAGHER LLP**

Richard Mancino (NY Bar No. 1852797)
Samuel Kalar (NY Bar No. 5360995)
JoAnna Suriani (NY Bar No. 5706395)

787 Seventh Avenue
New York, New York 10019
Telephone: (212) 728-8000
Facsimile: (212) 728-8111
Email: rmancino@willkie.com
        skalar@willkie.com
        jsuriani@willkie.com

-AND-

Jennifer J. Hardy (TX Bar No. 24096068)
Denis A. Fallon (TX Bar No. 24059731)
Garrett Johnston (TX Bar No. 24087812)
Audra White (TX Bar No. 24098608)

600 Travis Street, Suite 2100
Houston, Texas 77002

Telephone: (713) 510-1700
Facsimile: (713) 510-1799
Email: jhardy2@willkie.com
       afallon@willkie.com
       gjohnston@willkie.com
       awhite@willkie.com

***COUNSEL FOR PLAINTIFFS***

## CERTIFICATE OF SERVICE

I hereby certify that on the 16th day of April, 2020, a true and correct copy of the foregoing *Plaintiff Coalition of Texans with Disabilities' Objections and Responses to Defendant Secretary of State's First Requests for Admission, Request for Production, and Interrogatories* was served upon counsel of record via email.

/s/ Hani Mirza_____

## RESERVATION OF RIGHTS

CTD has responded to these requests for admission, requests for production, and interrogatories based on the information currently available to it. Discovery, however, is not yet complete. Additional discovery and investigation may lead to additions to, changes in, or modification of these responses. CTD therefore reserves its right to supplement, amend, revise, correct, modify, or clarify these responses as additional information becomes available.

CTD makes its objections and responses in accordance with its interpretation and understanding of *Defendant Secretary of State's First Requests for Admission, Request for Production, and Interrogatories* ("Requests") and in accordance with its current knowledge, understanding, and belief as to the facts and information available to it at the time of serving these responses. If Defendant subsequently provides an interpretation of any of its Requests that differs from CTD's understanding of the same, CTD reserves its right to complete the discovery of facts in

this case and rely at trial or in any other proceeding on documents and information in addition to the information provided herein, regardless of whether such information is newly discovered or newly in existence. It also reserves the right to amend, revise, correct, modify, or clarify its Responses to properly respond to any interpretation Defendant may give these Requests.

CTD reserves his right to object on any grounds, at any time, to the admission or use of any response on any ground. CTD is also willing to meet and confer about any of its objections or responses.

## **GENERAL OBJECTIONS**

1. CTD objects to these Requests, including the definitions and instructions, to the extent that they seek information or documents: (i) protected by attorney client privilege, the work product doctrine, or any other applicable privilege or immunity; (ii) not in CTD's possession, custody, or control; and (iii) that are publicly available or already within Defendants' possession.

2. CTD objects to these Requests to the extent they are duplicative of a request that Defendants have propounded to another Plaintiff in this Lawsuit. To the extent that Plaintiffs agree to produce a document that is responsive to multiple Requests duplicated across multiple Plaintiffs, Plaintiffs will only produce such documents once.

3. CTD objects to the definitions of "Coalition of Texans with Disabilities," "CTD," "Austin Justice Coalition," "AJC," "MOVE Texas Civic Fund," "MOVE Texas," "MOVE," "League of Women Voters of Texas," "LWVTX," "LWV," "Individual Plaintiffs," and "Organizational Plaintiffs," (together, "Plaintiffs Definitions") as overly broad and unduly burdensome to the extent that they define each party as including "anyone acting or purporting to act on their behalf with respect to any matter inquired about herein, including without limitation representatives, employees, or agents."  For the purposes of these responses, each Plaintiff will construe the Plaintiffs Definitions

in accordance with the definition of "Plaintiffs" as found in Plaintiffs' First Set of Discovery Requests served on February 5, 2020.

4.      CTD objects to the definitions of "EVBB" and "SVC" as vague and ambiguous. For the purposes of these responses, CTD will construe the terms "EVBB" and "SVC" in accordance with the definitions of "EVBB" and "SVC" found in Plaintiffs' First Set of Discovery Requests served on February 5, 2020.

5.      These General Objections are incorporated into each of the specific responses and objections set forth below. No specific response or objection herein shall constitute a waiver, in whole or in part, of any of the foregoing General Objections. CTD reserves the right at any time to revise, correct, supplement, or clarify the objections or responses set forth herein and any production made pursuant thereto.

## CTD'S OBJECTIONS AND RESPONSES TO REQUESTS FOR ADMISSION

1.      Admit that if a county election officer determines that a ballot was incorrectly rejected by the EVBB before the time set for convening the canvassing authority, the county election officer may petition a district court for injunctive or other relief as the court determines appropriate.

**RESPONSE**: CTD objects to this request for admission on the ground that it calls for a legal conclusion. CTD has no particular knowledge of this legal issue. The provisions of the Texas Election Code speak for themselves.

2.      Admit that SOS does not select the members of any EVBB.

**RESPONSE**: CTD can neither admit nor deny because it has no particular knowledge of the actions Defendant SOS takes. Defendant SOS is the appropriate party with information responsive to this request.

3.      Admit that SOS does not select the members of any SVC.

**RESPONSE**: CTD can neither admit nor deny because it has no particular knowledge of the actions Defendant SOS takes. Defendant SOS is the appropriate party with information responsive to this request.

4.      Admit that local election authorities, and not SOS, are responsible for receiving completed mail-in ballots.

**RESPONSE**: CTD objects to this request for admission on the ground that it calls for a legal conclusion. CTD has no particular knowledge of this legal issue. The provisions of the Texas Election Code speak for themselves.

5.      Admit that local election authorities, and not SOS, are responsible for delivering completed mail-in ballots to the appropriate EVBB or SVC.

**RESPONSE**: CTD objects to this request for admission on the ground that it calls for a legal conclusion. CTD has no particular knowledge of this legal issue. The provisions of the Texas Election Code speak for themselves.

6.      Admit that SOS lacks authority to reject any mail-in ballot for signature mismatch.

**RESPONSE**: CTD objects to this request for admission on the ground that it calls for a legal conclusion. CTD has no particular knowledge of this legal issue. The provisions of the Texas Election Code speak for themselves.

7.      Admit that mail in ballot applications and carrier envelopes need not be signed by the voter if signed by a witness.

**RESPONSE**: CTD objects to this request for admission on the grounds that it calls for a legal conclusion and is vague. It is vague because there are specific requirements that must be met for a voter to be eligible to use a witness, and specific requirements that must be met for a voter to not need to sign their mail-in ballot application and carrier envelope. The provisions of the Texas Election Code speak for themselves.

8.      Admit that mail-in ballots signed by a witness cannot be rejected for signature mismatch.

**RESPONSE**: CTD objects to this request for admission on the grounds that it calls for a legal conclusion and is vague. It is vague because there are specific requirements that must be met for a voter to be eligible to use a witness, and specific requirements that must be met for a voter to not need to sign their mail-in ballot application and carrier envelope. The provisions of the Texas Election Code speak for themselves.

9.      Admit that if a voter cannot make their signatures match due to a disability that originates on or after the day before the last day for submitting an application for a ballot to be voted by mail, the voter is eligible to vote a late ballot.

**RESPONSE**: CTD objects to this request for admission on the ground that it calls for a legal conclusion. CTD has no particular knowledge of this legal issue. The provisions of the Texas Election Code speak for themselves.

10.     Admit that voting by mail is a different process from in-person voting.

**RESPONSE**: CTD objects to this request for admission on the ground that it calls for a legal conclusion and is vague. Subject to and without waiving the foregoing, admit only to the extent that, as a practical matter, voting by mail involves some different procedures than voting in-person.

11.     Admit that Texas has an interest in ensuring that only eligible voters cast ballots.

**RESPONSE**: CTD objects to this request for admission on the ground that it calls for a legal conclusion and is vague. Subject to and without waiving the foregoing, CTD can neither admit nor deny because it has no particular knowledge of the current interests of the State of Texas. Texas, including Defendant SOS, is the appropriate party with information responsive to this request.

12.     Admit that Texas permits disabled voters to vote curbside.

**RESPONSE**: CTD objects to this request for admission on the ground that it calls for a legal conclusion. CTD has no particular knowledge of this legal issue. The provisions of the Texas Election Code speak for themselves.

13.     Admit that Texas permits disabled voters to be assisted in voting by an assistant of the disabled voter's choosing.

**RESPONSE**: CTD objects to this request for admission on the ground that it calls for a legal conclusion. CTD has no particular knowledge of this legal issue. The provisions of the Texas Election Code speak for themselves.

14.     Admit that Texas empowers local election officials to modify procedures to ensure disabled individuals are able to vote.

**RESPONSE**: CTD objects to this request for admission on the ground that it calls for a legal conclusion. CTD has no particular knowledge of this legal issue. The provisions of the Texas Election Code speak for themselves.

15.     Admit that Texas requires that polling places provide voting stations that are ADA and Rehabilitation Act compliant.

**RESPONSE**: CTD objects to this request for admission on the ground that it calls for a legal conclusion. CTD has no particular knowledge of this legal issue. The provisions of the Texas Election Code, ADA, and Rehabilitation Act speak for themselves.

16.     Admit that Texas requires that polling places provide a practical and effective means for voters with disabilities to cast a secret ballot.

**RESPONSE**: CTD objects to this request for admission on the ground that it calls for a legal conclusion. CTD has no particular knowledge of this legal issue.

17.     Admit that voters voting by mail may mark their ballots in private before obtaining a witness signature on the carrier envelope.

**RESPONSE**: CTD objects to this request for admission on the ground that it calls for a legal conclusion and is vague. CTD has no particular knowledge of this legal issue. It is also vague because, as a practical matter, voters receive their mail-in ballots in multiple different ways and complete these ballots under multiple different circumstances. Subject to and without waiving the foregoing, CTD can neither admit nor deny because it has no particular knowledge of each voter's situation when they receive and complete their mail-in ballot.

## CTD'S OBJECTIONS AND RESPONSES TO REQUESTS FOR PRODUCTION

1. All documents and communications supporting your contention that "Texas unlawfully rejects the duly signed mail-in ballots of thousands of eligible voters every major election," as alleged in Paragraph 1 of your Complaint.

   **RESPONSE**: Please see attached BATES GENERAL-00000001-2030.

2. All documents and communications supporting your contention that "Texas counties rejected at least 1,873 mail-in ballots during the 2018 General Election and at least 1,567 mail-in ballots during the 2016 General Election solely on the basis of mismatching signatures," as alleged in Paragraph 1 of your Complaint.

   **RESPONSE**: Please see attached BATES GENERAL-00000001-2030

3. Documents sufficient to show all activities on which you have spent funds or to which you have dedicated resources in Texas between January 1, 2017 and the present, including
   a. Total spent on all activities;
   b. Total spent on organizing events on accessible voting;
   c. Total spent on organizing events on civil rights;
   d. Total spent on organizing events on new state level initiatives with the potential to affect the disability community;
   e. Total spent on informing and educating voters about mail-in ballots and encouraging eligible voters to vote by mail;
   f. Activities other than those identified in b-e above on which you spent funds or to which you have dedicated resources in Texas; and total spent on each of those activities.

   **RESPONSE**: Please see attached BATES CTD-00000034-60, CTD-00000064, CTD-00000088-107, CTD-00000110-114.

4. All training, educational, or promotional material you have developed or presented to inform or educate people about using mail-in ballots.

   **RESPONSE**: Please see attached BATES CTD-00000005-24, CTD-00000026-33, CTD-00000037-44, CTD-00000061-63, CTD-00000065-69, CTD-00000084-91, CTD-00000108-117.

5. All documents and communications supporting your contention that "CTD's mission is significantly frustrated by the current state laws and policies," as alleged in Paragraph 18 of your Complaint.

   **RESPONSE**: Please see attached BATES CTD-00000005-24, CTD-00000025-56, CTD-00000061-63, CTD-00000065-87, CTD-00000108-109, CTD-00000115-117.

6. All documents and communications supporting your contention that "[m]any of the people

CTD serves are especially likely to have variations in their signatures from one writing to the next, due to disability," as alleged in Paragraph 18 of your Complaint.

**RESPONSE**: CTD objects to this request for production on the ground that it calls for expert witness testimony. Plaintiffs' expert witness report was served on Defendants on February 3, 2020. Subject to and without waiving the foregoing, please see attached BATES CTD-00000084-85, CTD-00000116-117.

7.   All documents and communications supporting your contention that "[t]he groups that are eligible to vote by mail are also the same groups, in many cases, that are most likely to have signature variations that could cause an improper rejection—especially the elderly, disabled, and persons who speak English as a second language," as alleged in Paragraph 46 of your Complaint.

**RESPONSE**: CTD objects to this request for production on the ground that it calls for expert witness testimony. Plaintiffs' expert witness report was served on Defendants on February 3, 2020. Subject to and without waiving the foregoing, CTD has no responsive documents.

8.   All documents and communications supporting your contention that "growing old, illness, injury, symptoms from taking certain medicine, change in eyesight, and consuming alcohol and/or drugs; mechanical factors such as pen type, ink, signing surface, signing position, and paper quality; and psychological factors such as distress, anger, fear, depression, happiness, [or] nervousness" can affect an individual's handwriting to the extent that their ballot would be erroneously rejected for signature mismatch, as referenced in Paragraph 48 of your Complaint.

**RESPONSE**: CTD objects to this request for production on the ground that it calls for expert witness testimony. Plaintiffs' expert witness report was served on Defendants on February 3, 2020. Subject to and without waiving the foregoing, CTD has no responsive documents.

9.   All documents and communications supporting your contention that "a person's handwriting naturally changes over time" to the extent that their ballot would be erroneously rejected for signature mismatch, as referenced in Paragraph 48 of your Complaint.

**RESPONSE**: CTD objects to this request for production on the ground that it calls for expert witness testimony. Plaintiffs' expert witness report was served on Defendants on February 3, 2020. Subject to and without waiving the foregoing, CTD has no responsive documents.

10.  All documents and communications supporting your contention that "[v]ariances between signatures" significant enough to result in a ballot being erroneously rejected for signature mismatch "are more prevalent in people who are elderly, disabled, under extreme stress, or who speak English as a second language," as referenced in Paragraph 48 of your Complaint.

**RESPONSE**: CTD objects to this request for production on the ground that it calls for expert witness testimony. Plaintiffs' expert witness report was served on Defendants on February 3, 2020. Subject to and without waiving the foregoing, CTD has no responsive documents.

11.  All documents and communications supporting your contention that "the cost of remedial procedures" you seek in this Lawsuit "would likely be low," as alleged at Dkt. 32, p. 40.

**RESPONSE**: CTD objects to this request for production on the ground that the contention requires a legal analysis. Subject to and without waiving the foregoing, CTD has no responsive documents.

12.  All documents and communications supporting your contention that Texas's signature matching procedure is "error-prone," as alleged in Paragraph 70 of your Complaint.

**RESPONSE**: CTD objects to this request for production on the ground that it calls for expert witness testimony. Plaintiffs' expert witness report was served on Defendants on February 3, 2020. Subject to and without waiving the foregoing, please see attached BATES CTD-00000001-4, CTD-00000025, CTD-00000061-63, CTD-00000084-87, CTD-00000115-117.

13.  Documents sufficient to show each "erroneous deprivation of the right to vote" you contend was caused by "an error-prone and flawed signature comparison," as alleged in Paragraph 55 of your Complaint.

**RESPONSE**: CTD objects to this request for production on the ground that it calls for expert witness testimony, calls CTD to marshal evidence, and the contention requires legal analysis. Plaintiffs' expert witness report was served on Defendants on February 3, 2020. Subject to and without waiving the foregoing, please see attached BATES CTD-00000061-63, CTD-00000086-87.

14.  All documents and communications supporting your contention that "each county (and even each committee if multiple SVC panels are created) necessarily develops its own idiosyncratic, arbitrary, and ad hoc procedure to determine that a ballot should be rejected," and that "[t]hese standards will necessarily vary from county to county, panel to panel, and even from meeting to meeting or ballot to ballot within the same committee panel," as alleged in Paragraph 41 of your Complaint.

**RESPONSE**: CTD objects to this request for production on the ground that it calls for expert witness testimony. Plaintiffs' expert witness report was served on Defendants on February 3, 2020. Subject to and without waiving the foregoing, please see attached BATES CTD-00000116-117.

15.  To the extent not already produced in response to the requests above or any subpoena duces tecum served upon you in this Lawsuit, all documents you may rely upon to support your claims in this Lawsuit.

**RESPONSE**: CTD objects to this request as broad and vague and because it demands that CTD marshal all of its evidence that may be presented at trial, regardless of whether that evidence is within CTD's care, custody, or control or whether Defendants have superior access of right to such documents. CTD will produce all documents it relies upon to support its claims in this lawsuit according to the Amended Scheduling Order, the Federal Rules of Civil Procedure, and Federal Rules of Evidence."

## CTD'S OBJECTIONS AND RESPONSES TO INTERROGATORIES

1.      Describe any relief that Plaintiffs contend would "provide voters meaningful notice prior to the rejection of a mail-in ballot and [] offer voters the ability to cure a mail-in ballot questioned for an alleged signature mismatch," as discussed in Paragraph 7 of your Complaint.

**RESPONSE**: CTD objects to this interrogatory on the ground that it calls for a legal conclusion. Subject to and without waiving the foregoing, there are multiple forms of prospective relief that would provide voters meaningful notice prior to the rejection of a mail-in ballot and offer voters the ability to cure a mail-in ballot questioned for an alleged signature mismatch. Plaintiffs' counsel discuss such forms to relief in their pleadings as well as in communications with opposing counsel. To be meaningful, notice prior to final rejection must clearly explain the reason why the voter's ballot was questioned, be received by the voter through a method of delivery the voter has quick and easy access to, and be received with enough time for the voter to attempt to effectively cure the questioned ballot. A cure process must provide voters simple methods and ample time to correct a ballot wrongly questioned for signature mismatch.

2.      State the basis for your contention that "Neither the claims asserted nor the relief requested by CTD [in this lawsuit] require the participation of its individual members who regularly vote by mail," as alleged in Paragraph 19 of your Complaint.

**RESPONSE**: CTD objects to this interrogatory on the ground that it calls for a legal conclusion.

3.      If you contend that the Secretary has "rule making authority" to "establish any standards or guidance that must be used for actually determining if a signature is that of the voter," as referenced in Paragraph 41 of your Complaint, please state the basis for that contention.

**RESPONSE**: CTD objects to this interrogatory on the ground that it calls for a legal conclusion.

4.      State the basis for your contention that "each county (and even each committee if multiple SVC panels are created) necessarily develops its own idiosyncratic, arbitrary, and ad hoc procedure to determine that a ballot should be rejected," and that "[t]hese standards will necessarily vary from county to county, panel to panel, and even from meeting to meeting or ballot to ballot within the same committee panel," as alleged in Paragraph 41 of your Complaint.

**RESPONSE**: CTD objects to this interrogatory on the ground that it calls for expert witness testimony. Plaintiffs' expert witness report was served on Defendants on February 3, 2020. Subject to and without waiving the foregoing, as alleged in paragraph 2 of the Complaint, "current rules authorize untrained local election officials to arbitrarily and subjectively reject mail-in ballots if officials believe, based on their own layman analysis, that the signature on a ballot is not in fact the voter's signature." Please also see responses to Open Records Requests from local election officials produced for Requests for Production above.

5.      State the basis for your contention that the "signature verification procedure is not and cannot be performed anonymously," as alleged in Paragraph 42 of your Complaint.

**RESPONSE**: CTD objects to this interrogatory on the ground that Defendants are better equipped to answer it. Subject to and without waiving the foregoing, CTD's understanding is that signature verification requires reviewing the written name of the voter. As a result, it essentially cannot be performed anonymously.

6.      If you contend that SOS is responsible for delivering, receiving, or accepting completed mail-in ballots, please state the basis for that contention.

**RESPONSE**: CTD objects to this interrogatory on the ground that it calls for a legal conclusion. The provisions of the Texas Election Code speak for themselves.

7.      If you contend that SOS has the authority to seek judicial relief in connection with a local election official's decision to reject a mail-in ballot, please state the basis for that contention.

**RESPONSE**: CTD objects to this interrogatory on the ground that it calls for a legal conclusion. The provisions of the Texas Election Code speak for themselves.

8.      If you contend that eligible voters have a constitutionally protected right to pre-rejection notice and opportunity to cure before a ballot voted by mail is rejected for signature mismatch, please state the basis for that contention.

**RESPONSE**: CTD objects to this interrogatory on the ground that it calls for a legal conclusion.

9.      If you contend that eligible voters have a protected liberty interest in casting a ballot by mail, please state the basis for that contention.

**RESPONSE**: CTD objects to this interrogatory on the ground that it calls for a legal conclusion.

10.     If you contend that eligible voters have a protected property interest in casting a ballot by mail, please state the basis for that contention.

**RESPONSE**: CTD objects to this interrogatory on the ground that it calls for a legal conclusion.

11.     Please state the basis for your contention that Texas's provision for a mail-in ballot or carrier envelope to be signed by a witness is "inadequate or impractical," as alleged at Dkt. 32, p. 48.

**RESPONSE**: CTD objects to this interrogatory on the ground that it calls for a legal conclusion, it calls for expert witness testimony, and Plaintiffs' brief was quoted incorrectly here.

14

Plaintiffs' expert witness report was served on Defendants on February 3, 2020. Subject to and without waiving the foregoing, one basis is that for those disabled voters who are eligible to use a witness, many simply do not, or may not, have access to a person who can serve as a witness, such as those voters living alone.

12.     Identify and describe a reasonable modification to Texas's ballot-by-mail procedure which would provide disabled voters the meaningful access to the franchise that you contend in this Lawsuit they are denied.

**RESPONSE**: CTD objects to this interrogatory on the ground that it calls for a legal conclusion. Subject to and without waiving the foregoing, there are multiple types of reasonable modifications that could be put in place to resolve the issues in this lawsuit. Such modifications would provide voters meaningful notice prior to the final rejection of a mail-in ballot and offer voters the ability to cure a mail-in ballot questioned for an alleged signature mismatch  Plaintiffs' counsel discuss such forms of relief in their pleadings as well as in communications with opposing counsel.

13.     Describe what "specific standards" you contend are required for the signature comparison process to "ensure its equal application," as alleged in Paragraph 74 of your Complaint.

**RESPONSE**: CTD objects to this interrogatory on the ground that it calls for a legal conclusion. Subject to and without waiving the foregoing, there are multiple types of specific standards that could be put in place to resolve the issues in this lawsuit. Plaintiffs' counsel discuss such forms to relief in their pleadings and in communications with opposing counsel, and their expert witness' report served on Defendants on February 3, 2020 also discusses such issues.

14.     If you contend that SOS has the authority to reject any mail-in ballot for signature mismatch, please state the basis of that contention.

**RESPONSE**: CTD objects to this interrogatory on the ground that it calls for a legal conclusion. The provisions of the Texas Election Code speak for themselves.

15.     Describe any guidelines or trainings you contend SOS must provide to local election officials, EVBBs, or SVCs, including how you contend any such guidelines or trainings should be provided.

**RESPONSE**: CTD objects to this interrogatory on the ground that it calls for a legal conclusion and expert testimony. Subject to and without waiving the foregoing, there are multiple types of guidelines and trainings Defendant SOS could provide to resolve at least some of the issues in this lawsuit. Plaintiffs' counsel discuss such forms to relief in their pleadings as well as communications with opposing counsel.

Donate Now | Contact Us | Sign Up for Newsletter



  

| HOME | ABOUT US | ADVOCACY | FILM FESTIVAL | BLOG | CONSULTING | GET INVOLVED | CDS DIVISION |

Home >

# GET INVOLVED

As a member-driven organization, CTD needs YOU to succeed in our mission. What does membership in CTD entail? We want you to be involved in our efforts in ways that work for you. Whether you join our e-newsletter mailing list, donate money, volunteer, or attend events, you are a member.

CTD members receive our e-newsletter, The Messenger, which keeps you up to date on our advocacy efforts and events all year. Members are the first to hear about annual events like our Convention and Film Fest and are often the first to hear about CTD special events. During the legislative session, CTD provides members the resources and support they need to advocate effectively, from anywhere in the state.

## Subscribe to the Newsletter

Subscribe to our monthly newsletter, *The Messenger* to stay current with CTD events, advocacy opportunities, disability news, and more!

## Donate

Donate to CTD. Your donation is your personal commitment to our cause and work. Large or small, every donation counts at CTD!

## Be An Advocate

Learn about Advocacy Efforts. At the Capitol or home, in a crowd, or as a crowd of one: make your voice heard! Find out the campaigns we're currently working on and our access advocacy resources.

## Participate

CTD holds events all year long. Attend our Annual Convention or Film Festival. Submit creative work to one of our artistic competitions. Keep an eye out for special events and consumer education opportunities.

## Volunteer

We love our interns and volunteers! Paid and upaid opportunities to work with CTD are posted as they become available.

## Sponsor us

If your business or organization has a stake in disability issues, consider supporting our work. Opportunities for specific projects are available throughout the year, each with great benefits to you!

## Follow Us on Social Media

Like us on Facebook and follow us on Twitter. We use our social media pages to stay in touch with members, post photos, inform you about special offers, and more!

### ANNUAL & ONGOING EVENTS

- CTD Advocacy Events
- Cinema Touching Disability Film Festival & Short Film Competition



Donate Now | Contact Us | Sign Up for Newsletter



  

| HOME | ABOUT US | ADVOCACY | FILM FESTIVAL | BLOG | CONSULTING | GET INVOLVED | CDS DIVISION |
|------|----------|----------|---------------|------|------------|--------------|--------------|

- Thursday, June 15: **Power: The TEXAS Disability Vote** (REV UP Texas)

- Friday, July 3:
  **New Mail-In Ballot Application Deadline**

- Friday, July 3: **Virtually Lion & Pirate Open Mic** (with Art Spark Texas & Malvern Books; rescheduled from July 11)

- Monday - Friday July 6 - 10: **New Early Voting** (note, 5 days only)

- Tuesday, July 14: **New Election Day and Mail-In Ballot Return Deadline** (7pm CST)

- Thursday, August 27:
  **Our Lives Disabilities Conference**
  (Volar CIL, El Paso; rescheduled from March 26)

- Saturday, September 19:
  **2020 Online Texas Advocates Conference**
  (Texas Advocates; rescheduled from July 31- August 2)



1716 San Antonio St.
Austin, Texas 78701
Phone: (512) 478-3366
Fax: (512) 478-3370
email: info@txdisabilities.org

*CTD works to ensure that persons with disabilities may work, live, learn, play and participate fully in the community of their choice. CTD is a 501(c)(3) nonprofit organization with Federal Tax ID #74-2071160.*

Home | About Us | Advocacy | Film Festival | Blog | Consulting | Get Involved | CDS Division

Donate Now | Contact Us | Sign Up for Newsletter

View Desktop Site

Site Map | Site Information | Accessibility | Report A Website Problem

© 2020 Coalition of Texans with Disabilities
Site by: Mighty Citizen



**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| DR. GEORGE RICHARDSON, ROSALIE WEISFELD, AUSTIN JUSTICE COALITION, COALITION OF TEXANS WITH DISABILITIES MOVE TEXAS CIVIC FUND, AND LEAGUE OF WOMEN VOTERS OF TEXAS, | § § § § § § | |
| *Plaintiffs,* | § § | |
| v. | § § | No. 5:19-cv-00963 |
| TEXAS SECRETARY OF STATE, TRUDY HANCOCK IN HER OFFICIAL CAPACITY AS BRAZOS COUNTY ELECTIONS ADMINISTRATOR, AND PERLA LARA IN HER OFFICIAL CAPACITY AS CITY OF MCALLEN, TEXAS SECRETARY, | § § § § § § | |
| *Defendants.* | § | |

**DEFENDANT SECRETARY OF STATE'S MOTION FOR SUMMARY JUDGMENT**

**Tab 5**

**League of Women Voters of Texas**

```
              IN THE UNITED STATES DISTRICT COURT
              FOR THE WESTERN DISTRICT OF TEXAS
                    SAN ANTONIO DIVISION

DR. GEORGE RICHARDSON,     *
ROSALIE WEISFELD, AUSTIN   *
JUSTICE COALITION,         *
COALITION OF TEXANS WITH   *
DISABILITIES, MOVE TEXAS   *
CIVIC FUND, LEAGUE OF      *
WOMEN VOTERS OF TEXAS,     *
and AMERICAN GI FORUM OF   *
TEXAS, INC.,               *
                           *
          Plaintiffs,      *
                           *         CIVIL ACTION NUMBER
VS.                        *         5:19-cv-0963
                           *
TEXAS SECRETARY OF         *
STATE, TRUDY HANCOCK, IN   *
HER OFFICIAL CAPACITY AS   *
BRAZOS COUNTY ELECTIONS    *
ADMINISTRATOR, AND PERLA   *
LARA IN HER OFFICIAL       *
CAPACITY AS CITY OF        *
McALLEN, TEXAS             *
SECRETARY,                 *
                           *
          Defendants.      *
```

               Remote Oral Deposition of

           League of Women Voters of Texas,

     By and through their Designated Representative,

                    GRACE CHIMENE

                   May 18, 2020

                    10:08 a.m.

Reported by:

Micheal A. Johnson, RDR, CRR

League of Women Voters of Texas - 5/18/2020

14

1   documents to prepare for the deposition today?

2        A.    Yes.  We -- after talking with the

3   lawyers on Friday, we made a request for -- that

4   we -- I believe they shared with you this morning,

5   to -- for some members to provide information if

6   they vote by mail or plan to vote by mail, and also

7   we sent out a survey to our members on Friday about

8   voting by mail.  And so I reviewed those too, those

9   results over the weekend.

10       Q.    And yes, your attorneys did provide those

11  to me --

12       A.    Okay.

13       Q.    -- this morning, so I appreciate you

14  walking me through that.  Any other documents that

15  you reviewed in preparation for the deposition

16  today?

17       A.    I don't believe so.

18       Q.    Okay.

19            MS. SURIANI:  Anna, before we move

20  on, I just want to object on the record about the

21  document request that came attached to the subpoena.

22  I know we all sent that to you in writing on Friday,

23  but I just want to put for the record that

24  specifically Request No. 2 attached to the subpoena

25  duces tecum, that, you know, we view it as untimely

League of Women Voters of Texas - 5/18/2020

15

1   and also vague and overbroad.  So I just want to

2   state that for the record before we move on.

3             MS. MACKIN:  Thanks for that.  Were

4   any documents withheld on the basis of that

5   objection?

6             MS. SURIANI:  I don't believe so.  We

7   produced those documents to you this morning that

8   Grace prepared and reviewed in preparation for the

9   deposition, which is in accordance with how we

10  viewed your discovery request.

11            MS. MACKIN:  Thanks.

12  BY MS. MACKIN:

13       Q.    Okay.  Ms. Chimene, did you meet with

14  anyone at -- did you meet with anyone at the League

15  of Women Voters of Texas to prepare for today's

16  deposition?

17       A.    No.  I did ask the president of the other

18  leagues to provide themselves or members to vote by

19  mail.  I mentioned that earlier.  So that wasn't

20  really a meeting about this.  It was just a request.

21       Q.    Fair enough.  Thank you.  I appreciate

22  you being forthcoming.  And so just to kind of close

23  the loop on Exhibit 1 for now, are you adequately

24  familiar with the facts to testify on the topics?

25       A.    Yes.

League of Women Voters of Texas - 5/18/2020

24

1  some of their staff.  Sometimes I e-mail them,

2  generally about different ideas to improve voting

3  and election information in Texas.

4       Q.    So fair to say you have kind of a line of

5  communication with the Secretary of State's office?

6       A.    Yeah.  Yes.  Sorry.

7       Q.    That's fine.  And who specifically at the

8  Texas Secretary of State's office do you reach out

9  to if you want to send along an idea or raise an

10  issue?

11      A.    So there's three folks that I normally

12  would contact:  Keith Ingram and Christina Adkins.

13  And then if it's about, like, communications or

14  press or something like that, then it would be

15  Stephen Chang, I think his name is.  But I could be

16  wrong about his name.  I would have to -- it would

17  pop up in my e-mail if I started an e-mail to him.

18  That's generally who I would talk to, though we do

19  have specific in-person meetings with the Secretary

20  of State.

21      Q.    And in your experience, are the folks at

22  the Secretary of State's office responsive to you?

23      A.    It depends on what I'm asking them for.

24  They're always polite.  They always are responsive.

25  They don't always do what I ask.

Appx._191

League of Women Voters of Texas - 5/18/2020

25

1      Q.      Fair enough.   Now I see the word

2  "responsive" is somewhat unclear.   They always write

3  back.   They don't always do what you ask?

4      A.      There you go.   That's okay.   We have a

5  nice working relationship.

6      Q.      And how about -- to your knowledge, has

7  the League of Women Voters of Texas had any prior

8  dealings with the City of McAllen's secretary?

9      A.      No.

10      Q.      What about the --

11      A.      No.

12      Q.      What about the Brazos County elections

13  administrator?

14      A.      More than likely, yes.

15      Q.      And why do you -- what makes you say

16  that?

17      A.      Because we do something called a county

18  election website review.   We've done them on and off

19  since 2016, and we do contact the county election

20  administrators of all the counties and send them the

21  results of their county election website review.

22  And then I may have sent -- any e-mails would have

23  been about that.

24      Q.      Tell me about the county election website

25  review.

1  and we try to give kudos to all the different size

2  counties, depending on how well they're doing.

3      Q.   All right.  So now I'm just going to

4  track along the topics in the deposition notice.  I

5  don't need you to pull it back up.

6      A.   Okay.

7      Q.   I'm just letting you know what I'm doing.

8           So how would you describe the mission of

9  the League of Women Voters of Texas?

10     A.   The mission of the league is empowering

11 voters and defending democracy.  I'm very happy that

12 now it's a four-word mission.  Before it was longer

13 and I couldn't memorize it.  So to me those words

14 are perfect for what we're trying to do and what

15 we've been trying to do over the years.  So I really

16 love our mission.  It's hard for me to say

17 defending -- empowering voters and defending

18 democracy without also saying yay at the end.

19     Q.   And you mentioned it used to be a longer

20 mission statement.  I can tell you that you were --

21 that was way too long for your taste.  When did the

22 mission statement -- the current mission

23 statement --

24     A.   I think maybe four years ago.  Maybe

25 four years ago.

League of Women Voters of Texas - 5/18/2020

29

```
 1        Q.    And who developed it?

 2        A.    The LWVUS.

 3        Q.    Okay.  So you mentioned that the mission

 4    statement changed.  Would you say that the

 5    mission -- the actual mission of the League of Women

 6    Voters of Texas has changed over time?

 7        A.    No, I don't think so.  Not since I've

 8    been in it.

 9        Q.    And this actually pivots nicely into the

10    next thing I want to talk about.  You mentioned

11    League of Women Voters US.

12        A.    Uh-huh.

13        Q.    What is that?

14        A.    The League of Women Voters is a

15    three-tiered organization.  When you join the League

16    of Women Voters as a member, you normally join as

17    a -- into your local league, so the league that

18    serves your community, because that's where your

19    local activities are done.  When you join your local

20    league, you also are joining as a member of the

21    state league and the US league.  So we're all one

22    organization.  We speak with one voice and it is --

23    but it is serving -- the local leagues serve the

24    populations of the community, the state league

25    serves the whole state and the US league serves all
```

Appx._194

League of Women Voters of Texas - 5/18/2020

30

1  the US.

2      Q.    And can you explain to me a little bit

3  more -- I know this might not be a great question.

4  I'm just -- so I'm sorry.  Let me know if it doesn't

5  make sense -- but a little bit more about the

6  relationship between the US league, the state

7  leagues and the local leagues.

8      A.    The relationship?  So we're all members

9  of the same organization.  All our membership data

10  is kept up at the LWVUS.  So when you join, you

11  join -- you pay the money to join.  It's a

12  membership organization.  You pay the money to join.

13  Some of the money stays at the local level, some of

14  the money goes to the state level and some of the

15  money goes to the US level.

16      Q.    That's helpful.

17      A.    The positions -- yeah, okay.  The

18  positions are -- at the national level, we support

19  everything they do.  We support that at the state

20  level and also at the local level.  So we are a

21  membership organization.  We don't do something that

22  is not supported by one of our positions at the US

23  level, state or local level.  Does that make sense?

24      Q.    And so would there maybe be some

25  circumstances in which a state league or a local

```
1          A.    Just a second.

2                     (Witness reviews document.)

3          A.    So to me, Anna, it starts on 19.  If you

4    scroll up to 19, just to see the whole budget --

5    BY MS. MACKIN:

6          Q.    I see.

7          A.    -- information.

8          Q.    Okay.

9          A.    Right.  And then 20 and 21 is what I have

10   it as.

11         Q.    Okay.

12         A.    Okay.

13         Q.    That makes sense.  And so at the top of

14   this document -- at the top of page 19, it looks

15   like it explains a little bit about what we already

16   touched on, the fact that -- well, I actually don't

17   know how much we touched on it.  But it looks like

18   there were two organizations, a 501(c)(3) and a

19   501(c)(4) for 2016-2018; is that right?

20         A.    Right.

21         Q.    And what was the -- what was the

22   difference between these two organizations, the

23   League of Women Voters of Texas and the League of

24   Women Voters of Texas Education Fund?

25         A.    So at -- during this convention at this
```

League of Women Voters of Texas - 5/18/2020

40

```
 1  time in 2016, League of Women Voters of Texas was a

 2  501(c)(4).

 3       Q.    Okay.

 4       A.    League of Women Voters of Texas Education

 5  Fund was a 501(c)(3).

 6       Q.    Okay.

 7       A.    They had -- at that point they had

 8  different boards and different board meetings and

 9  that's it.  Is there something else you want me to

10  say?

11       Q.    I'm curious as to which -- would it be

12  fair to say that all the activities that the League

13  of Women Voters of Texas does now were split between

14  the 501(c)(3) and the 501(c)(4) during 2016-2018?

15       A.    Yes.

16       Q.    Okay.  And kind of at a high level, what

17  activities would the 501(c)(4) do compared to the

18  501(c)(3)?

19       A.    So the 501(c)(4) would do basically

20  things at the capitol, lobby for bills that we

21  supported, lobby against bills that we opposed.  And

22  does that make sense?  High level.  Was there

23  another question about the education fund?

24       Q.    I guess I'm just -- I'm trying to parcel

25  out the difference between these two organizations
```

1    our work under the 501(c)(3) League of Women Voters

2    of Texas.

3        Q.    I want to drill down a little on

4    something you mentioned about educating voters about

5    voter registration.  Does that mean that the league

6    is actively trying to register folks or is it more

7    of just a here's the education, here's the

8    information, now go out and register?

9        A.    We have -- we provide the information in

10   many, many different formats.  We also are actively

11   registering voters in person because Texas has the,

12   you know, archaic voter registration method.  And so

13   that our members are very enthusiastic about

14   registering the voters in their community, so that

15   is one of our main activities that we do.

16       Q.    Is that done -- the actual voter

17   registration, is that done by the local leagues or

18   is that done by the League of Women Voters of Texas?

19       A.    The members of the local leagues who are

20   also members of the League of Women Voters of Texas,

21   and US, they are registering voters in their local

22   community.  Yeah.  The board of Texas is just the

23   board.  All of the members are our members who are

24   all across Texas.

25       Q.    And does the League of Women Voters of