signatures" significant enough to result in a ballot being erroneously rejected for signature mismatch "are more prevalent in people who are elderly, disabled, under extreme stress, or who speak English as a second language," as referenced in Paragraph 48 of your Complaint.

 **RESPONSE**: LWV objects to this request for production on the ground that it calls for expert witness testimony. Plaintiffs' expert witness report was served on Defendants on February 3, 2020. Subject to and without waiving the foregoing, LWV has no responsive documents.

9. All documents and communications supporting your contention that "the cost of remedial procedures" you seek in this Lawsuit "would likely be low," as alleged at Dkt. 32, p. 40.

**RESPONSE**: LWV objects to this request for production on the ground that the contention requires a legal analysis. Subject to and without waiving the foregoing, LWV has no responsive documents.

10. All documents and communications supporting your contention that Texas's signature matching procedure is "error-prone," as alleged in Paragraph 70 of your Complaint.

**RESPONSE**: LWV objects to this request for production on the ground that it calls for expert witness testimony. Plaintiffs' expert witness report was served on Defendants on February 3, 2020. Subject to and without waiving the foregoing, LWV has no responsive documents .

11. All documents and communications supporting your contention that "each county (and even each committee if multiple SVC panels are created) necessarily develops its own idiosyncratic, arbitrary, and ad hoc procedure to determine that a ballot should be rejected," and that "[t]hese standards will necessarily vary from county to county, panel to panel, and even from meeting to meeting or ballot to ballot within the same committee panel," as alleged in Paragraph 41 of your Complaint.

**RESPONSE**: LWV objects to this request for production on the ground that it calls for expert witness testimony. Plaintiffs' expert witness report was served on Defendants on February 3, 2020. Subject to and without waiving the foregoing, please see attached LWV has no responsive documents.

## <u>LWV'S OBJECTIONS AND RESPONSES TO INTERROGATORIES</u>

1.      Describe any relief that Plaintiffs contend would "provide voters meaningful notice prior to the rejection of a mail-in ballot and [] offer voters the ability to cure a mail-in ballot questioned for an alleged signature mismatch," as discussed in Paragraph 7 of your Complaint.

**<u>RESPONSE</u>**: LWV objects to this interrogatory on the ground that it calls for a legal conclusion. Subject to and without waiving the foregoing, there are multiple forms of prospective relief that would provide voters meaningful notice prior to the rejection of a mail-in ballot and offer voters the ability to cure a mail-in ballot questioned for an alleged signature mismatch. Plaintiffs' counsel discuss such forms to relief in their pleadings as well as in communications with opposing counsel. To be meaningful, notice prior to final rejection must clearly explain the reason why the voter's ballot was questioned, be received by the voter through a method of delivery the voter has quick and easy access to, and be received with enough time for the voter to attempt to effectively cure the questioned ballot. A cure process must provide voters simple methods and ample time to correct a ballot wrongly questioned for signature mismatch.

2.   State the basis for your contention that "[n]either the claims asserted nor the relief requested by LWV require the participation of its individual members who regularly vote by mail," as alleged in Paragraph 27 of your Complaint.

**<u>RESPONSE</u>**: LWV objects to this interrogatory on the ground that it calls for a legal conclusion.

3.      If you contend that the Secretary has "rule making authority" to "establish any standards or guidance that must be used for actually determining if a signature is that of the voter," as referenced in Paragraph 41 of your Complaint, please state the basis for that contention.

**<u>RESPONSE</u>**: LWV objects to this interrogatory on the ground that it calls for a legal conclusion.

4.      State the basis for your contention that "each county (and even each committee if multiple SVC panels are created) necessarily develops its own idiosyncratic, arbitrary, and ad hoc procedure to determine that a ballot should be rejected," and that "[t]hese standards will necessarily vary from county to county, panel to panel, and even from meeting to meeting or ballot to ballot within the same committee panel," as alleged in Paragraph 41 of your Complaint.

**<u>RESPONSE</u>**: LWV objects to this interrogatory on the ground that it calls for expert witness testimony. Plaintiffs' expert witness report was served on Defendants on February 3, 2020. Subject to and without waiving the foregoing, as alleged in paragraph 2 of the Complaint, "current rules authorize untrained local election officials to arbitrarily and subjectively reject mail-in ballots if officials believe, based on their own layman analysis, that the signature on a ballot is not in fact the voter's signature." Please also see responses to Open Records Requests from local election officials produced for Requests for Production above.

11

5.      State the basis for your contention that the "signature verification procedure is not and cannot be performed anonymously," as alleged in Paragraph 42 of your Complaint.

**RESPONSE**: LWV objects to this interrogatory on the ground that Defendants are better equipped to answer it. Subject to and without waiving the foregoing, LWV's understanding is that signature verification requires reviewing the written name of the voter. As a result, it essentially cannot be performed anonymously.

6.      If you contend that SOS is responsible for delivering, receiving, or accepting completed mail-in ballots, please state the basis for that contention.

**RESPONSE**: LWV objects to this interrogatory on the ground that it calls for a legal conclusion. The provisions of the Texas Election Code speak for themselves.

7.      If you contend that SOS has the authority to seek judicial relief in connection with a local election official's decision to reject a mail-in ballot, please state the basis for that contention.

**RESPONSE**: LWV objects to this interrogatory on the ground that it calls for a legal conclusion. The provisions of the Texas Election Code speak for themselves.

8.      If you contend that eligible voters have a constitutionally protected right to pre-rejection notice and opportunity to cure before a ballot voted by mail is rejected for signature mismatch, please state the basis for that contention.

**RESPONSE**: LWV objects to this interrogatory on the ground that it calls for a legal conclusion.

9.      If you contend that eligible voters have a protected liberty interest in casting a ballot by mail, please state the basis for that contention.

**RESPONSE**: LWV objects to this interrogatory on the ground that it calls for a legal conclusion.

10.      If you contend that eligible voters have a protected property interest in casting a ballot by mail, please state the basis for that contention.

**RESPONSE**: LWV objects to this interrogatory on the ground that it calls for a legal conclusion.

11.      Describe what "specific standards" you contend are required for the signature comparison process to "ensure its equal application," as alleged in Paragraph 74 of your Complaint.

**RESPONSE**: LWV objects to this interrogatory on the ground that it calls for a legal conclusion. Subject to and without waiving the foregoing, there are multiple types of specific

standards that could be put in place to resolve the issues in this lawsuit. Plaintiffs' counsel discuss such forms to relief in their pleadings and in communications with opposing counsel, and their expert witness' report served on Defendants on February 3, 2020 also discusses such issues.

12.     If you contend that SOS has the authority to reject any mail-in ballot for signature mismatch, please state the basis of that contention.

**RESPONSE**: LWV objects to this interrogatory on the ground that it calls for a legal conclusion. The provisions of the Texas Election Code speak for themselves.

13.     Describe any guidelines or trainings you contend SOS must provide to local election officials, EVBBs, or SVCs, including how you contend any such guidelines or trainings should be provided.

**RESPONSE**: LWV objects to this interrogatory on the ground that it calls for a legal conclusion and expert testimony. Subject to and without waiving the foregoing, there are multiple types of guidelines and trainings Defendant SOS could provide to resolve at least some of the issues in this lawsuit. Plaintiffs' counsel discuss such forms to relief in their pleadings as well as communications with opposing counsel.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

| | | |
|---|---|---|
| DR. GEORGE RICHARDSON, ROSALIE WEISFELD, AUSTIN JUSTICE COALITION, COALITION OF TEXANS WITH DISABILITIES MOVE TEXAS CIVIC FUND, AND LEAGUE OF WOMEN VOTERS OF TEXAS,<br>        *Plaintiffs*, | § § § § § § § | |
| v. | § § | No. 5:19-cv-00963 |
| TEXAS SECRETARY OF STATE, TRUDY HANCOCK IN HER OFFICIAL CAPACITY AS BRAZOS COUNTY ELECTIONS ADMINISTRATOR, AND PERLA LARA IN HER OFFICIAL CAPACITY AS CITY OF MCALLEN, TEXAS SECRETARY,<br>        *Defendants*. | § § § § § § § | |

## DEFENDANT SECRETARY OF STATE'S MOTION FOR SUMMARY JUDGMENT

## Tab 6

## MOVE Texas Civic Fund

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

DR. GEORGE RICHARDSON,    *
ROSALIE WEISFELD, AUSTIN  *
JUSTICE COALITION,        *
COALITION OF TEXANS WITH  *
DISABILITIES, MOVE TEXAS  *
CIVIC FUND, LEAGUE OF     *
WOMEN VOTERS OF TEXAS,    *
and AMERICAN GI FORUM OF  *
TEXAS, INC.,              *
                         *
        Plaintiffs,      *
                         *          CIVIL ACTION NUMBER
VS.                      *          5:19-cv-0963
                         *
TEXAS SECRETARY OF        *
STATE, TRUDY HANCOCK, IN  *
HER OFFICIAL CAPACITY AS  *
BRAZOS COUNTY ELECTIONS   *
ADMINISTRATOR, AND PERLA  *
LARA IN HER OFFICIAL      *
CAPACITY AS CITY OF       *
McALLEN, TEXAS            *
SECRETARY,                *
                         *
        Defendants.      *


Remote Oral Deposition of

MOVE Texas Civic Fund,

By and through their Designated Representative,

HILLIARD DREW GALLOWAY

May 22, 2020

10:02 a.m.


Reported by:

Micheal A. Johnson, RDR, CRR

1           But go ahead, Drew, if you know.

2      A.     Both organizations are funded by donors.

3  BY MS. MACKIN:

4      Q.     Okay.  And we touched on this, but again,

5  just so we have a clear record.  Do all of the MOVE

6  Texas employees provide services to both the civic

7  fund and the action fund?

8      A.     Yes, for the most part.  There's

9  different functions of each organization that

10 belongs to that, but in general our full-time

11 employees and part-time employees formally work for

12 MOVE Texas Action Fund and then, as part of their

13 time reporting mechanism, they split that time

14 between (c)(3) and (c)(4) activities and we invoice

15 the (c)(3) for (c)(3) permissible activities.

16     Q.     Okay.  So the employees are paid -- their

17 check comes from the action fund and then the --

18 wait.  And then the action fund invoices the civic

19 fund for the hours spent on work for the (c)(3)?

20     A.     That is correct.

21     Q.     Okay.

22     A.     We pay them from the action fund and then

23 that is when we invoice the -- MOVE Texas Action

24 Fund invoices MOVE Texas Civic Fund.

25     Q.     Okay.  Thank you for that.  I'm going to

1    Q.    Okay.  And how about Trudy Hancock or the

2  Brazos County election administrator?

3    A.    Not to my knowledge, other than if our

4  organizers engaged Brazos County election

5  administrator on voter registration, like

6  deputization, like those general items.

7    Q.    Okay.  But you're not sure whether or not

8  that happened?

9    A.    We have organizers that are deputized in

10  Brazos County.

11    Q.    Okay.  That is all that I have on the

12  complaint.  I'm going to put that off to the side.

13        I'm going to pivot to the topics in the

14  notice, starting with the first one.  And again, I

15  know we have covered this, but different case, fresh

16  record.  So what is MOVE Texas Civic Fund's mission?

17    A.    MOVE Texas Civic Fund is a grassroots

18  nonpartisan nonprofit organization building power

19  for young people through civic education, leadership

20  development and issue advocacy.

21    Q.    And who developed that mission statement?

22    A.    That mission statement was developed by

23  the founders of MOVE in 2013, roughly.

24    Q.    I actually -- I had one quick follow-up

25  question on that, to backtrack a little bit.

1          You mentioned that the MOVE organization

2  grew out of a student chapter at The University of

3  Texas at San Antonio.  A student chapter of what?

4          A.     MOVE Texas Civic -- the original founders

5  of what is now MOVE Texas Civic Fund and MOVE Texas

6  Action Fund formed a student-led organization at The

7  University of Texas at San Antonio that was called

8  Mobilize, Organize, Vote and Empower UTSA.

9          Q.     Got it.  Okay.  Cool.  Thank you for

10  that.  All right.

11          And so that mission statement that you

12  just discussed, based on our conversation, I think I

13  know the answer, but has that changed over time?

14          A.     No, that's been the overarching mission

15  statement since the organization was founded.

16          Q.     And is it the same as the mission of MOVE

17  Texas Action Fund?

18          A.     MOVE Texas Action Fund's mission is, you

19  know, very, very close, yes.

20          Q.     And I know that they do slight -- they do

21  some different activities, but do they use the same

22  mission statement?

23          A.     They use -- yes.  Yes.  A very similar

24  mission statement.

25          Q.     And so you mentioned civic education,

29

1  canvassing?  What is that?

2       A.     Canvassing is our third method of voter

3  registration that involves youth organizers walking

4  around a specific campus, community college, high

5  school event and/or community event, with clipboards

6  and voter registration forms and asking individuals

7  if they would like to register to vote.

8       Q.     And then the one time that you mailed

9  voter registration applications out, when was that?

10       A.     That was in December of 2019.

11       Q.     And how did you determine which voters --

12  well, how did you determine which people to send

13  those voter registration applications to?

14       A.     We determined the list by age.

15       Q.     Okay.  What age?

16       A.     We chose voters that we believed were

17  unregistered or were not registered in our system,

18  under the age of 30.

19       Q.     And would you say that -- well, outside

20  of that specific mail-out project that we talked

21  about, in the context of all of MOVE Texas Civic

22  Fund's voter registration efforts, does MOVE Texas

23  Civic Fund target particular voters to get them

24  registered?

25       A.     We specifically target young voters,

MOVE Texas – 5/22/2020

30

1  which we identify as 17 and ten months, which is the

2  beginning age limit for voter registration, all the

3  way through, roughly, 35 years old.   But we target

4  mostly college students, high school students,

5  community college students, but we will register

6  anybody that walks up to the table.

7       Q.    Barely hanging on.  I turned 34 earlier

8  this week.  Got one more year.

9       A.    You passed our target demographic.

10      Q.    So other than those age criteria, does

11 MOVE Texas Civic Fund target voters in any other way

12 for its voter registration efforts?

13            MR. COX:  Object to form.

14            You can answer, Drew, if you have --

15 if you understand the question.

16      A.    We will register anybody that is in the

17 classroom or comes to our events regardless of age,

18 political ideology, demographic issues.

19 BY MS. MACKIN:

20      Q.    Okay.  Does MOVE Texas Civic Fund engage

21 in any voter registration efforts that are specific

22 to voting by mail?

23      A.    Can you repeat the question?

24      Q.    Sure.  Does MOVE Texas Civic Fund engage

25 in any voter registration activities that are

Appx._259

1  specific to voting by mail?

2              MR. COX:  Object to form.

3       A.    Voter registration is a precursor to

4  voting, whether that's in person or voting by mail,

5  so we register any Texan that we can register.  But

6  often, vote by mail questions arise in the voter

7  registration process, especially close to election

8  time.  And vote by mail questions arise in other

9  programming environments.

10  BY MS. MACKIN:

11      Q.    Okay.  And again, correct me if I'm

12  wrong, I'm not trying to put words in your mouth.

13  It sounds like vote by mail is a part of your voter

14  registration activities because it comes up.  I

15  mean --

16      A.    It's part of our civic education

17  activities, which a bucket of civic education work

18  is voter registration.

19      Q.    Are there specific projects or specific

20  outings, specific class raps or tabling events or

21  canvassing events, where MOVE Texas Civic Fund

22  focuses just on voting by mail?

23      A.    I'm not sure if I understand the

24  question.  So whenever we're doing voter

25  registration, we often talk about other -- or answer

1    questions of people that we're registering to vote.

2    Those questions can range from when is the next

3    election, to what IDs do I need to go vote, to what

4    happens if I take an internship and I leave the

5    county for the fall semester.  So when those

6    questions arise, our organizers have to answer them.

7    And so that's how vote by mail would come into that

8    environment.

9         Q.   Thank you for that.  Okay.

10             I want to talk now about the third topic

11   in the notice, the activities on which you, MOVE

12   Texas Civic Fund, have spent funds and to which you

13   have dedicated resources in Texas between

14   January 1st, 2017, and the present.  And based on

15   our earlier conversation, it sounds like the best

16   documents to show this information would be the

17   2017, 2018, 2019 and 2020 budgets that were produced

18   in discovery; is that right?

19        A.   That is correct.

20        Q.   Okay.  Then I am going to share those

21   documents.  And it is part of a larger PDF file that

22   begins on MOVE 916.

23        A.   I see that.  I have the document open

24   now.

25        Q.   Okay.  Thank you.  And then scrolling

1      A.    It could also include civic education

2  work as well.

3      Q.    So would there be any way for MOVE Texas

4  Civic Fund to put a dollar value on the money

5  allocated for voter registration efforts

6  specifically in 2020?

7      A.    We do not currently track -- track voter

8  registration at that level at this time.

9      Q.    Okay.  So would that be a no?

10     A.    No.

11     Q.    Okay.  And would your answer be the same

12  for 2019?

13     A.    One second.  I just need to make that

14  bigger because I can't see that section.  For the

15  2019 budget, which just to be -- just to clarify, is

16  MOVE-00000919, again, this is -- voter registration

17  would be included in wages and salaries and then

18  additionally things like office supplies and travel

19  and staff meals.

20     Q.    But would it be possible for MOVE Texas

21  Civic Fund to put a dollar value -- a precise dollar

22  value on the money spent specifically on voter

23  registration in 2019?

24     A.    No, we do not track voter registration.

25     Q.    And would your answer be the same for

1  2018?

2       A.    My answer would be the same.

3       Q.    And one last thing.  I'm not sure whether

4  we got a 2017 budget.  Do you know if that appears

5  anywhere in the production, Mr. Galloway?

6       A.    I do not see it in this file, but I --

7  I'm positive that we have a 2017 budget.

8       Q.    Based on your knowledge of the 2017

9  budget, even if the document's not in front of us,

10 is there a way for MOVE Texas Civic Fund to put a

11 dollar value on the funds spent specifically on

12 voter registration in 2017?

13      A.    No.

14      Q.    All right.  I'm going to make just

15 MOVE 917 through MOVE 919, Exhibit 3 to this

16 deposition.  And we can close out of that.  That's

17 all that I have on that.

18                 (Deposition Exhibit 3 marked for

19 identification.)

20 BY MS. MACKIN:

21      Q.    Are any of the funds that MOVE Texas

22 Civic Fund receives restricted to use for certain

23 activities?

24      A.    We do have donor-restricted funds.

25      Q.    Do you have any donor-restricted funds

1   that are restricted to voter registration

2   90activities?

3       A.   No, not to my knowledge.

4       Q.   And does MOVE Texas Civic Fund track

5   whether each voter it registers is already

6   registered in their county of residence?

7       A.   We track the number of voters that we

8   register and we track the number of -- we do that by

9   tracking the number of people that we come in

10  contact with at the events that we hold.  We track

11  the number of forms that we turn in to the specific

12  county election administrators or election

13  departments.  And so that's what we track on voter

14  registration.

15      Q.   So you don't track whether each voter was

16  already registered in their county of residence?

17      A.   The only way that we would know if

18  they're registered in their county of residence is

19  when we ask them are you registered to vote, you

20  know, in the county that you live in.  If they say,

21  yes, I am, which at that point doesn't matter to the

22  voter registration question so much and we move on

23  to the next -- we move on to a different part of

24  that conversation.

25      Q.   Sure.  Okay.  You mentioned that you

1  times.  So we could be doing voter registration

2  pretty close to the election or the voter

3  registration deadline, but vote by mail often comes

4  up close to election times.

5      Q.    Does MOVE Texas Civic Fund engage in any

6  activities that are specific to vote by mail?

7      A.    Yes.

8      Q.    What are those?

9      A.    We educate young people about the ability

10 to vote by mail if they, one, have a disability or,

11 two, are not going to be in the county during the

12 election cycle; for instance, they have an

13 internship in another state or in Washington, D.C.,

14 or if they move back home for -- and there's a

15 summer election or something to those effects.

16     Q.    Okay.  Anything else?

17     A.    We also do -- MOVE Texas Action Fund and

18 MOVE Texas Civic Fund does some vote by mail

19 advocacy work at the elections administrators'

20 office.

21     Q.    Okay.  Which elections administrators?

22     A.    Bexar, Travis, Dallas, Harris, Webb and

23 Hays.

24     Q.    All right.  So I've got educating young

25 people about the ability to vote by mail if they're

1   eligible --

2       A.    Correct.

3       Q.    -- and advocacy to the elections

4   administrators that you mentioned.  Does MOVE Texas

5   Civic Fund engage in any other activity that is

6   specific to vote by mail?

7       A.    Not that I can think of right now.

8       Q.    Okay.  Can MOVE Texas Civic Fund

9   apportion the cost to register each voter that it

10  registers?

11      A.    We have a generalized cost of how much it

12  cost us to register a voter per year.

13      Q.    And what is that based on?

14      A.    That's based on the budgets that you saw

15  in 2020, 2019 and 2018.

16      Q.    And so what is that cost for 2020?

17      A.    Roughly, about $24 a voter.

18      Q.    And how is that $24 calculated?

19      A.    It's calculated by our projected civic

20  education activities and how many voters we project

21  that we're going to register during all of those --

22  like all of those activities.

23      Q.    Okay.  And is there a cost to register

24  each voter that MOVE Texas Civic Fund calculated for

25  its 2019 voter registration efforts?

1  rejected.  We also commonly have to educate young

2  people in classes, tabling, canvassing, other

3  activities, of the importance of making sure that

4  their signature is the same because of the situation

5  in Texas.

6     Q.   What I'm trying to get at, though, here

7  is -- so you passed along -- or someone with MOVE

8  passed along Ms. Weisfeld's information to Texas

9  Civil Rights Project.  Are you aware of any other

10 individual voter who MOVE Texas Civic Fund assisted

11 after their ballot was rejected for signature

12 mismatch?

13    A.   We have no documentation of any

14 discussion; otherwise we would have produced that.

15    Q.   So you're not aware of any specific

16 individual voter?

17    A.   That doesn't mean that it hasn't

18 happened.  We haven't answered those questions

19 orally or directed them to contact the elections

20 department.  We just have nothing else other than

21 what we produced in writing.

22    Q.   Okay.  So sitting here today you couldn't

23 give me the name any other voter who MOVE Texas

24 Civic Fund assisted after their ballot was rejected

25 for signature mismatch?

48

1    A.    Other than Ms. Weisfeld, we do not -- we

2  don't track that information.  Like the only reason

3  we know Ms. Weisfeld is because we have the e-mail

4  from her.

5    Q.    So you cannot give me the name of any

6  other individual voter whose mail-in ballot was

7  rejected for signature mismatch --

8              MR. COX:  Objection, asked and

9  answered, Anna.  I think he's answered that

10  question.

11             MS. MACKIN:  He has not given me yes

12  or no and it is a yes-or-no question.

13    A.    No.

14  BY MS. MACKIN:

15    Q.    Do you know if any voter who MOVE Texas

16  Civic Fund assisted in registering to vote has ever

17  had a ballot by mail rejected for signature

18  mismatch?

19    A.    We do not have written documentation,

20  other than Ms. Weisfeld, of this situation

21  happening.

22    Q.    Okay.  And just to be clear, did MOVE

23  Texas Civic Fund assist Ms. Weisfeld in registering

24  to vote?

25    A.    Not to my knowledge.

1       Q.    Okay.   All right.   Just a few more

2  things.

3            Have all of MOVE Texas Civic Fund's

4  training materials specific to voting by mail been

5  produced to us in this case?

6       A.    Yes, to my knowledge.

7            MS. MACKIN:  Mr. Galloway, I

8  appreciate your time and bearing with me once again.

9  I do not have any other questions for you right now,

10 I so will -- I will thank you and pass the witness.

11            THE WITNESS:  Thank you.

12            MR. TAWIL:  Can we take a short break

13 just to gather some thoughts, maybe five minutes or

14 so, and then resume?

15            MR. COX:  Sure.

16            MS. MACKIN:  Sounds good.

17            (Recess taken from 11:26 a.m. to

18 11:36 a.m.)

19                  EXAMINATION

20 BY MR. STEVENSON:

21       Q.    Good afternoon, Mr. Galloway.

22       A.    Good afternoon.

23       Q.    My name is Austin Stevenson.  Like I just

24 told the court reporter, I represent Perla Lara in

25 her official capacity as the McAllen city secretary.

61

1                    REPORTER'S CERTIFICATION

2

3          I, Micheal A. Johnson, Registered Diplomate

4    Reporter, Certified Realtime Reporter and Notary

5    Public in and for the State of Texas, certify that

6    on the 22nd day of May, 2020, I reported the Remote

7    Oral Deposition of HILLIARD DREW GALLOWAY, after the

8    witness had first been duly cautioned and sworn to

9    testify under oath; said deposition was subsequently

10   transcribed by me and under my supervision and

11   contains a full, true and complete transcription of

12   the proceedings had at said time and place; and that

13   reading and signing was requested.

14         I further certify that I am neither counsel

15   for nor related to any party in this cause and am

16   not financially interested in its outcome.

17         GIVEN UNDER MY HAND AND SEAL of office on

18   this 26th day of May, 2020.

19

20

21   _____
     MICHEAL A. JOHNSON, RDR, CRR
22   NCRA Registered Diplomate Reporter
     NCRA Certified Realtime Reporter
23
     Notary Public in and for the
24   State of Texas
     My Commission Expires:  8/8/2020
25

Appx._270

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

DR. GEORGE RICHARDSON, ROSALIE §
WEISFELD, AUSTIN JUSTICE COALITION, §
COALITION OF TEXANS WITH §
DISABILITIES, MOVE TEXAS CIVIC FUND, §
LEAGUE OF WOMEN VOTERS OF TEXAS, §
and AMERICAN GI FORUM OF TEXAS, §
INC., §
    *Plaintiffs,* §
    §
v.     §      No. 5:19-cv-00963
    §
TEXAS SECRETARY OF STATE, TRUDY §
HANCOCK, IN HER OFFICIAL CAPACITY §
AS BRAZOS COUNTY ELECTIONS §
ADMINISTRATOR, AND PERLA LARA IN §
HER OFFICIAL CAPACITY AS CITY OF §
MCALLEN, TEXAS SECRETARY, §
    *Defendants.* §

## DEFENDANT SECRETARY OF STATE'S NOTICE OF ORAL DEPOSITION PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30

TO:    Austin Justice Coalition, by and through its attorneys of record, Hani Mirza, Zachary D. Dolling, Beth Stevens, and Ryan Cox, Texas Civil Rights Project, 1405 Montopolis Drive, Austin, Texas 78741; and Richard Mancino, Jennifer Hardy, Joanna Suriani, Willkie Farr & Gallagher LLP, 1875 K Street, N.W., Washington, DC 20006.

Defendant Texas Secretary of State hereby notices the deposition upon oral examination of MOVE Texas Civic Fund "MOVE," including all subsidiaries, DBAs, and aliases, beginning at **10:00 AM** on **Friday**, **May 22, 2020** and continuing from day to day until complete. The deposition will be held virtually via Zoom videoconference and will be transcribed and videotaped by a certified court reporter and videographer designated by Defendant. Defendant reserves the right to use the



Exhibit
Hilliard Drew Galloway

1

exhibitsticker.com

Appx. 272

deposition for any purpose permitted under the Federal Rules of Civil Procedure or Federal Rules of Evidence.

Pursuant to Federal Rule of Civil Procedure 30(b)(6), MOVE is directed to designate one or more officers, directors, managing agents, or other persons who will testify on MOVE's behalf regarding all information known or reasonably available to MOVE with respect to the matters set forth in **Attachment A**.

Pursuant to Federal Rules of Civil Procedure 30(b)(2) and 45, MOVE is also requested to produce at least 24 hours before the videoconference deposition, all documents in response to the subpoena duces tecum in **Attachment B**.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

RYAN L. BANGERT
Deputy First Assistant Attorney General

DARREN L. MCCARTY
Deputy Attorney General for Civil Litigation

THOMAS A. ALBRIGHT
Chief for General Litigation Division

/s/ Anne Marie Mackin
ANNE MARIE MACKIN
Texas Bar No. 24078898
Assistant Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2798 | FAX: (512) 320-0667
anna.mackin@oag.texas.gov

2

ATTORNEYS FOR DEFENDANT
TEXAS SECRETARY OF STATE

CERTIFICATE OF SERVICE

I certify that that on May 14, 2020 this notice was served upon counsel listed below via email.

**Hani Mirza**
hani@texascivilrightsproject.org
**Zachary D. Dolling**
zachary@texascivilrightsproject.org
**Rebecca Harrison Stevens**
beth@texascivilrightsproject.org
**Ryan V. Cox**
ryan@texascivilrightsproject.org
**Samuel Kalar**
skalar@willkie.com
**Joanna Suriani**
jsuriani@willkie.com
**Eric Magee**
e.magee@allison-bass.com
**Isaac J. Tawil**
itawil@mcallen.net
**Austin Stevenson**
astevenson@mcallen.net
**C. Robert Heath**
bheath@bickerstaff.com
**Gunnar P. Seaquist**
gseaquist@bickerstaff.com

*/s/ Anne Marie Mackin*
ANNE MARIE MACKIN
Assistant Attorney General

3

## DEFINITIONS

The terms below are used in this notice as follows:

1. "MOVE Texas Civic Fund," "MOVE Texas," "MOVE," "you," "your," or "yours" means MOVE Texas Civic Fund (a plaintiff in this Lawsuit), and anyone acting or purporting to act on its behalf with respect to any matter inquired about herein, including without limitation representatives, employees, or agents.

2. "Austin Justice Coalition," or "AJC," means Austin Justice Coalition (a plaintiff in this Lawsuit) and anyone acting or purporting to act on their behalf with respect to any matter inquired about herein, including without limitation representatives, employees, or agents.

3. "League of Women Voters," "LWVTX" or "LWV" means the League of Women Voters of Texas (a plaintiff in this Lawsuit), and anyone acting or purporting to act on its behalf with respect to any matter inquired about herein, including without limitation representatives, employees, or agents.

4. "Coalition of Texans with Disabilities" or "CTD" means Coalition of Texans with Disabilities (a plaintiff in this Lawsuit), and anyone acting or purporting to act on its behalf with respect to any matter inquired about herein, including without limitation representatives, employees, or agents.

5. "Individual Plaintiffs" means Dr. George Richardson and Ms. Rosalie Weisfeld, natural persons who are plaintiffs in this lawsuit, and anyone acting or purporting to act on their behalf with respect to any matter inquired about herein, including without limitation representatives, employees, or agents.

6. "Organizational Plaintiffs" means AJC, CTD, MOVE, and LWVTX, and anyone acting or purporting to act on their behalf with respect to any matter inquired about herein, including without limitation representatives, employees, or agents.

7. "Plaintiffs" means the Individual Plaintiffs and the Organizational Plaintiffs.

8. "Person" means the plural as well as the singular and includes: natural persons, corporations, firms, associations, partnerships, joint ventures, trusts, estates, or any other form of legal entity; and governmental agencies, departments, units, or subdivisions thereof.

9. "SOS" means the Defendant Texas Secretary of State, in her official capacity, including without limitation representatives, employees, agents, or officers acting on her behalf with respect to any matter inquired about herein.

10. "Defendants" means SOS; Trudy Hancock, in her official capacity as Brazos County Elections Administrator; and Perla Lara, in her official capacity as City of McAllen, Texas, Secretary.

11. "Lawsuit" means the case styled, *Dr. George Richardson, et. al. v. Texas Secretary of State, et al.*, civil action no. 5:19-cv-00963 in the United States District Court for the Western District of Texas, San Antonio Division.

12. "Complaint" means your live pleading in this case—as of service of these discovery requests, the document entitled "Plaintiff's Original Complaint," filed in this Lawsuit on August 7, 2019 (Dkt. 1).

13. "Communication" means any manner or means of disclosure, transfer, or exchange of information, whether oral, written, in-person, telephonic, electronic, digital, mailed, or otherwise.

14. "Document" includes all writings of every kind, source and authorship, both originals and all non-identical copies thereof including handwritten, typewritten, printed, photocopied, photographic, or electronically recorded matter. For purposes of illustration and not limitation, the term shall include: emails, Facebook postings, social media postings, letters, journals, diaries, bank statements, charts, Excel spreadsheets, handwritten notes, affidavits, schedules, workpapers, audio recordings, video recordings, transcriptions, contracts, agreements, and memoranda of any kind.

15. "Relating to" means in any way concerning, constituting, analyzing, discussing, describing, considering, modifying, amending, confirming, endorsing, evidencing, representing, supporting, substantiating, qualifying, negating or refuting, unless qualified by word of limitation.

16. The singular includes the plural and vice versa.

17. The masculine gender includes the feminine and vice versa.

18. All other terms are to be interpreted in accordance with their normal usage in the English language.

5

### Attachment A

**30(B)(6) CORPORATE REPRESENTATIVE DEPOSITION TOPICS**

1. Your mission.

2. Your organization, including your organizational structure, employees, physical assets, parent and sibling entities, tax status, and history; the services that you provide, and the activities you perform.

3. The activities on which you have spent funds or to which you have dedicated resources in Texas between January 1, 2017 and the present.

4. The allegations you make in your Complaint and the factual bases therefor.

5. The relief that you contend would remedy the claims you make in this lawsuit.

6. The documents produced in response to

   a. the subpoena duces tecum described in Attachment B, and;

   b. Defendants' Requests for Admission, Interrogatories, and Requests for Production in this cause.

**Attachment B**

To the extent not already produced by you in response to the Secretary of State's discovery requests in this cause, produce the following:

1. Documents sufficient to substantiate the factual allegations you make in your Complaint.

2. All communications between you and any person to assist them in voting by mail in Texas.

3. Documents sufficient to show all information described and/or requested in 30(b)(6) deposition topic numbers 2, 3, and 4 in Attachment A to this notice.

4. To the extent not already provided in response to items 1-3 above, all documents reviewed in preparation for your deposition.

If documents responsive to these categories have already been produced in discovery, the witness is expected to be able to identify those documents by bates numbers.

7

MOVE TEXAS Mail - Fwd: Democracy Done Right Updates Requested by Tuesday at noon ET (for a funder)



John Wingert <john@movetexas.org>

---

## Fwd: Democracy Done Right Updates Requested by Tuesday at noon ET (for a funder)

**John Wingert** <john@movetexas.org>
To: Alex Birnel <alex@movetexas.org>
Cc: Drew Galloway <drew@movetexas.org>

Mon, Sep 9, 2019 at 2:15 PM



Exhibit
Hilliard Drew Galloway

**4**

5/22/2020    MJ

Here's an updated and expanded draft Alex and I have worked on:

Hey Sarah,

I'd be happy to share some updates with you on our work regarding voting rights.

A major win for MOVE last year was securing the polling place at Texas State University, which serves over 38,000 students. After lines lingered for three hours during early voting last November at the Texas State polling location, county officials were going to shut the polling place down halfway through Early Voting. MOVE threatened to sue the county, and they kept the polling location there for the rest of Early Voting and for Election Day, which allowed thousands more students to cast their ballot.

One of the major areas of focus for MOVE this year was our work in the Texas legislature against Senate Bill 9. The anti-voter bill would have criminalized innocent voting mistakes, increased barriers for elderly and disabled voters, allowed poll workers to look over the shoulder of those needing English language assistance, and added burdensome paperwork at every step of the voting process. MOVE with the help of our coalition partners organized protests, worked with legislators, and packed out hearing rooms to put the brakes on this terrible bill.

There was a great moment when MOVE's Advocacy Manager, Alex Birnel, said SB 9 would have been "creating another step in the process to cast a ballot that tired and busy people may not take. As a disabled voter, I know what it means to be tired, and as an advocate for voting rights, I know what it means to be busy. We need to make it easier not harder. Making it easier is MOVE's goal. Making it harder for everyone seems to be SB 9's goal . . . As someone who uses crutches, I think I know a crutch when I see one."

Due to our activism, this bill was slowed so much that it did not pass in the legislature. However, MOVE and our partners did not stop there. We have continued to use that energy and passion for voter inclusion to create a slate of local reforms. Our Democracy From the Ground Up campaign will target urban counties in Texas to adopt policies like polling locations on campuses with over 8,000 students for Early Voting and Election Day, making voter registrar training available in more languages and online, creating a civic engagement board of advisors requiring youth representation, as well as enforcing high school voter registration laws. We are really excited about these reforms and plan to see implementation across Dallas, Houston, and San Antonio before the end of the year.

We have also produced a campaign toolkit enabling people across all 254 counties of Texas to push for these reforms in their community with their county commissioners. Our goal is to activate 5,000 new voting rights advocates to take action either through testifying, protesting, blockwalking, phonebanking, or social media posting which will create pressure to pass these reforms and strengthen our democracy.

Appx. 278
MOVE-00000519

This week, MOVE team members will also be speaking at redistricting hearings in Austin and San Antonio to make clear the impact of proposed district lines on college campuses. We know that the way these lines are drawn would deliberately put students in noncompetitive districts to dilute the power of their vote. MOVE Texas is not staying quiet about these attacks.

If you have any questions about the examples I've included here of MOVE's Democracy Done Right work, just reach out for clarification. Thanks for letting me know about this update from the Democracy Fund!

**John Wingert** *(he/him/his)*
Development Manager | MOVE Texas
1023 North Pine Street, San Antonio, TX 78202
john@movetexas.org | (314) 448-2687



On Fri, Sep 6, 2019 at 12:15 PM Alex Birnel <alex@movetexas.org> wrote:
John - I'll slack you regarding this.

Best,
Alex

On Fri, Sep 6, 2019 at 12:02 PM Drew Galloway <drew@movetexas.org> wrote:
Can you add more details about DFGU? Like some of the suggested initiatives?

Looping in Alex here in case he has any other ideas.

Once that is done and Alex is satisfied, you can send directly to Sarah and cc me. Thanks John!

Drew

On Fri, Sep 6, 2019 at 11:37 AM John Wingert <john@movetexas.org> wrote:
Below is a draft email you could send to Sarah, or if you'd rather I can send it myself. Just let me know.

Hey Sarah,

I'd be happy to share some updates with you on our work regarding voting rights.

A major win for MOVE last year was securing the polling place at Texas State University, which serves over 38,000 students. After lines lingered for three hours during early voting last November at the Texas State polling location, county officials were going to shut the polling place down halfway through Early Voting. MOVE threatened to sue the county, and they kept the polling location there for the rest of Early Voting and for Election Day, which allowed thousands more students to cast their ballot.

One of the major areas of focus for MOVE this year was our work in the Texas legislature against Senate Bill 9. The anti-voter bill would have criminalized innocent voting mistakes, increased barriers for elderly and disabled voters, allowed poll workers to look over the shoulder of those needing English language assistance, and added burdensome paperwork at every step of the voting process. MOVE with the help of our coalition partners organized protests, worked with legislators, and packed out hearing rooms to put the brakes on this terrible bill.

Appx. 279
MOVE-00000520

There was a great moment when MOVE's Advocacy Manager, Alex Birnel, said SB 9 would have been "creating another step in the process to cast a ballot that tired and busy people may not take. As a disabled voter, I know what it means to be tired, and as an advocate for voting rights, I know what it means to be busy. We need to make it easier not harder. Making it easier is MOVE's goal. Making it harder for everyone seems to be SB 9's goal . . . As someone who uses crutches, I think I know a crutch when I see one."

Due to our activism, this bill was slowed so much that it did not pass in the legislature. However, MOVE and our partners did not stop there. We have continued to use that energy and passion for voter inclusion to create a slate of local reforms. These will target urban counties in Texas to adopt policies like polling locations on campuses with over 8,000 students for Early Voting and Election Day, making voter registrar training available in more languages and online, as well as enforcing high school voter registration laws. We are really excited about these reforms and plan to see implementation across Dallas, Houston, and San Antonio before the end of the year.

If you have any questions about the examples I've included here of MOVE's Democracy Done Right work, just reach out for clarification. Thanks for letting me know about this update from the Democracy Fund!


**John Wingert** *(he/him/his)*
Development Manager | MOVE Texas
1023 North Pine Street, San Antonio, TX 78202
john@movetexas.org | (314) 448-2687




On Fri, Sep 6, 2019 at 9:47 AM Drew Galloway <drew@movetexas.org> wrote:
    Due next Tuesday

    ---------- Forwarded message ----------
    From: **Sarah Audelo** <audelo@allianceforyouthaction.org>
    Date: Thu, Sep 5, 2019 at 12:24 PM
    Subject: Democracy Done Right Updates Requested by Tuesday at noon ET (for a funder)
    To: conclave <conclave@allianceforyouthaction.org>
    CC: Gary Decker <gary@allianceforyouthaction.org>, Scarlett Jimenez <scarlett@allianceforyouthaction.org>,
    Mariella Villacorta <mariella@allianceforyouthaction.org>, Dawn Boudwin <dawn@allianceforyouthaction.org>


    Hey hey EDs!

    Apologies for the quick response request, but I was just outreached to by Democracy Fund staff about a meeting
    next Wednesday to catch up.

    As many of you know, we have all been chasing their funding for some time, but frequently come up short
    because historically they have taken an approach that has centered bipartisanship in their funding portfolio. I've
    heard recently that this approach is no more (YAY) and am even more excited about the prospect of funding as
    they are flying me out to SF to participate on a panel they're hosting for major donors.

    As you can see, I'm very hopeful of finally getting some of these resources. We have a ton of great information
    about what you all have accomplished this year thus far on Democracy Done Right (thank you and congrats!).
    We have less information on what's to come. Can folks either reply all or at least to me and my team about what
    you're working on specifically as it relates to the Democracy Done Right campaign? This could include:

        • 2020 state legislative work
        • Clerk outreach & engagement

Appx. 280
MOVE-00000521

- Litigation (in partnership with friends of course)
- Election protection work
- Getting polling places on campuses & jails/extending polling place hours/etc.
- Implementation work on bills you've helped to pass
- Poll worker recruitment/training
- Language access work
- Absentee ballot work
- Other administrative advocacy

I'm sure I'm missing categories, but you know what I'm basically talking about.

***We need this information by Tuesday, September 10th at noon*** so we can compile it all.

Holler if you have any questions and thank you in advance!

Sarah
—
**H. Drew Galloway**
Executive Director (he/him/his)
MOVE Texas Civic Fund & MOVE Texas Action Fund



E: drew@movetexas.org
P: (210) 396-0845
A: 1023 N Pine St, San Antonio, TX 78202
W: http://movetexas.org

—
**H. Drew Galloway**
Executive Director (he/him/his)
MOVE Texas Civic Fund & MOVE Texas Action Fund



E: drew@movetexas.org
P: (210) 396-0845
A: 1023 N Pine St, San Antonio, TX 78202
W: http://movetexas.org

—
**Alex Birnel**
Advocacy Manager (he/him/his)
MOVE Texas Action Fund



E: alex@movetexas.org
P: 210-422-3223
A: 1023 N Pine St, San Antonio, TX 78202
W: http://movetexas.org

Appx. 281
MOVE-00000522

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| DR. GEORGE RICHARDSON, ROSALIE WEISFELD, AUSTIN JUSTICE COALITION, COALITION OF TEXANS WITH DISABILITIES, MOVE TEXAS CIVIC FUND, LEAGUE OF WOMEN VOTERS OF TEXAS, and AMERICAN GI FORUM OF TEXAS, INC., | § § § § § § § § | |
| *Plaintiffs* | § § | |
| v. | § § | Civil Case No. 5:19-cv-00963 |
| TEXAS SECRETARY OF STATE, TRUDY HANCOCK, in her official capacity as BRAZOS COUNTY ELECTIONS ADMINISTRATOR, and PERLA LARA in her official capacity as CITY OF MCALLEN, TEXAS SECRETARY, | § § § § § § § | |
| *Defendants.* | § § | |

**PLAINTIFF MOVE TEXAS CIVIC FUND'S OBJECTIONS AND RESPONSES TO DEFENDANT SECRETARY OF STATE'S FIRST REQUESTS FOR ADMISSION, INTERROGATORIES, AND REQUESTS FOR PRODUCTION, AND SECOND REQUESTS FOR PRODUCTION**

TO:   Defendant Texas Secretary of State, by and through her attorneys of record Ken Paxton, Jeffrey C. Mateer, Darren L. McCarty, Thomas A. Albright, and Anne Marie Mackin, via e-mail to anna.mackin@oag.texas.gov.

Pursuant to Federal Rules of Civil Procedure 33, 34, and 36, Plaintiff MOVE Texas Civic Fund ("MOVE") hereby serves the following Objections and Responses to Defendants' First Requests for Admissions, Requests for Production, and Interrogatories, and Second Requests for Production.

Dated: April 16, 2020                          Respectfully Submitted,

                                                        /s/_____*Hani Mirza*_____

**TEXAS CIVIL RIGHTS PROJECT**

Mimi M.D. Marziani
Texas Bar No. 24091906
mimi@texascivilrightsproject.org
Rebecca Harrison Stevens
Texas Bar No. 24065381
beth@texascivilrightsproject.org
Hani Mirza
Texas Bar No. 24083512
hani@texascivilrightsproject.org
Ryan V. Cox
Texas Bar No. 24074087
ryan@texascivilrightsproject.org
Zachary D. Dolling
Texas Bar No. 24105809
zachary@texascivilrightsproject.org

1405 Montopolis Drive
Austin, Texas 78741
512-474-5073 (Telephone)
512-474-0726 (Facsimile)

**WILLKIE FARR & GALLAGHER LLP**

Richard Mancino (NY Bar No. 1852797)
Samuel Kalar (NY Bar No. 5360995)
JoAnna Suriani (NY Bar No. 5706395)

787 Seventh Avenue
New York, New York 10019
Telephone: (212) 728-8000
Facsimile: (212) 728-8111
Email: rmancino@willkie.com
        skalar@willkie.com
        jsuriani@willkie.com

-AND-

Jennifer J. Hardy (TX Bar No. 24096068)
Denis A. Fallon (TX Bar No. 24059731)
Garrett Johnston (TX Bar No. 24087812)
Audra White (TX Bar No. 24098608)

600 Travis Street, Suite 2100
Houston, Texas 77002
Telephone: (713) 510-1700
Facsimile: (713) 510-1799
Email: jhardy2@willkie.com
      afallon@willkie.com
      gjohnston@willkie.com
      awhite@willkie.com

***COUNSEL FOR PLAINTIFFS***

## CERTIFICATE OF SERVICE

I hereby certify that on the 16th day of April, 2020, a true and correct copy of the foregoing *Plaintiff MOVE Texas Civic Fund's Objections and Responses to Defendant Secretary of State's First Requests for Admission, Request for Production, and Interrogatories and Second Requests for Production* was served upon counsel of record via email.

/s/ Hani Mirza_____

## RESERVATION OF RIGHTS

MOVE has responded to these requests for admission, requests for production, and interrogatories based on the information currently available to it. Discovery, however, is not yet complete. Additional discovery and investigation may lead to additions to, changes in, or modification of these responses. MOVE therefore reserves its right to supplement, amend, revise, correct, modify, or clarify these responses as additional information becomes available.

MOVE makes its objections and responses in accordance with its interpretation and understanding of *Defendant Secretary of State's First Requests for Admission, Request for Production, and Interrogatories* and *Defendant Secretary of State's Second Requests for Production* ("Requests") in accordance with its current knowledge, understanding, and belief as to the facts and information available to it at the time of serving these responses. If Defendant subsequently provides

an interpretation of any of its Requests that differs from MOVE's understanding of the same, MOVE reserves its right to complete the discovery of facts in this case and rely at trial or in any other proceeding on documents and information in addition to the information provided herein, regardless of whether such information is newly discovered or newly in existence. It also reserves the right to amend, revise, correct, modify, or clarify its responses to properly respond to any interpretation Defendant may give these Requests.

MOVE reserves his right to object on any grounds, at any time, to the admission or use of any response on any ground. MOVE is also willing to meet and confer about any of its objections or responses.

## GENERAL OBJECTIONS

1.      MOVE objects to these Requests, including the definitions and instructions, to the extent that they seek information or documents: (i) protected by attorney client privilege, the work product doctrine, or any other applicable privilege or immunity; (ii) not in MOVE's possession, custody, or control; and (iii) that are publicly available or already within Defendants' possession.

2.      MOVE objects to these Requests to the extent they are duplicative of a request that Defendants have propounded to another Plaintiff in this Lawsuit. To the extent that Plaintiffs agree to produce a document that is responsive to multiple Requests duplicated across multiple Plaintiffs, Plaintiffs will only produce such documents once.

3.      MOVE objects to the definitions of "Coalition of Texans with Disabilities," "CTD," "Austin Justice Coalition," "AJC," "MOVE Texas Civic Fund," "MOVE Texas," "MOVE," "League of Women Voters of Texas," "LWVTX," "LWV," "Individual Plaintiffs," and "Organizational Plaintiffs," (together, "Plaintiffs Definitions") as overly broad and unduly burdensome to the extent that they define each party as including "anyone acting or purporting to act on their behalf with

respect to any matter inquired about herein, including without limitation representatives, employees, or agents." For the purposes of these responses, each Plaintiff will construe the Plaintiffs Definitions in accordance with the definition of "Plaintiffs" as found in Plaintiffs' First Set of Discovery Requests served on February 5, 2020.

4.      MOVE objects to the definitions of "EVBB" and "SVC" as vague and ambiguous. For the purposes of these responses, MOVE will construe the terms "EVBB" and "SVC" in accordance with the definitions of "EVBB" and "SVC" found in Plaintiffs' First Set of Discovery Requests served on February 5, 2020.

5.      These General Objections are incorporated into each of the specific responses and objections set forth below. No specific response or objection herein shall constitute a waiver, in whole or in part, of any of the foregoing General Objections. MOVE reserves the right at any time to revise, correct, supplement, or clarify the objections or responses set forth herein and any production made pursuant thereto.

## MOVE'S OBJECTIONS AND RESPONSES TO REQUESTS FOR ADMISSION

     1.     Admit that if a county election officer determines that a ballot was incorrectly rejected by the EVBB before the time set for convening the canvassing authority, the county election officer may petition a district court for injunctive or other relief as the court determines appropriate.

**RESPONSE**: MOVE objects to this request for admission on the ground that it calls for a legal conclusion. MOVE has no particular knowledge of this legal issue. The provisions of the Texas Election Code speak for themselves.

     2.     Admit that SOS does not select the members of any EVBB.

**RESPONSE**: MOVE can neither admit nor deny because it has no particular knowledge of the actions Defendant SOS takes. Defendant SOS is the appropriate party with information responsive to this request.

     3.     Admit that SOS does not select the members of any SVC.

**RESPONSE**: MOVE can neither admit nor deny because it has no particular knowledge of the actions Defendant SOS takes. Defendant SOS is the appropriate party with information responsive to this request.

     4.     Admit that local election authorities, and not SOS, are responsible for receiving completed mail-in ballots.

**RESPONSE**: MOVE objects to this request for admission on the ground that it calls for a legal conclusion. MOVE has no particular knowledge of this legal issue. The provisions of the Texas Election Code speak for themselves.

     5.     Admit that local election authorities, and not SOS, are responsible for delivering completed mail-in ballots to the appropriate EVBB or SVC.

**RESPONSE**: MOVE objects to this request for admission on the ground that it calls for a legal conclusion. MOVE has no particular knowledge of this legal issue. The provisions of the Texas Election Code speak for themselves.

     6.     Admit that SOS lacks authority to reject any mail-in ballot for signature mismatch.

**RESPONSE**: MOVE objects to this request for admission on the ground that it calls for a legal conclusion. MOVE has no particular knowledge of this legal issue. The provisions of the Texas Election Code speak for themselves.

     7.     Admit that voting by mail is a different process from in-person voting.

**RESPONSE**: MOVE objects to this request for admission on the ground that it calls for a

legal conclusion and is vague. Subject to and without waiving the foregoing, admit only to the extent that, as a practical matter, voting by mail involves some different procedures than voting in-person.

8.      Admit that Texas has an interest in ensuring that only eligible voters cast ballots.

**RESPONSE**: MOVE objects to this request for admission on the ground that it calls for a legal conclusion and is vague. Subject to and without waiving the foregoing, MOVE can neither admit nor deny because it has no particular knowledge of the current interests of the State of Texas. Texas, including Defendant SOS, is the appropriate party with information responsive to this request.

**MOVE'S OBJECTIONS AND RESPONSES TO FIRST REQUESTS FOR PRODUCTION**

1. To the extent not already produced in response to a subpoena duces tecum served upon you in this Lawsuit, all documents you may rely upon to support your claims in this Lawsuit.

**RESPONSE**:  MOVE objects to this request as broad and vague and because it demands that MOVE marshal all of its evidence that may be presented at trial, regardless of whether that evidence is within MOVE's care, custody, or control or whether Defendants have superior access of right to such documents. MOVE will produce all documents it relies upon to support its claims in this lawsuit according to the Amended Scheduling Order, the Federal Rules of Civil Procedure, and Federal Rules of Evidence.

**MOVE'S OBJECTIONS AND RESPONSES TO SECOND REQUESTS FOR PRODUCTION**

1. All documents and communications supporting your contention that "Texas unlawfully rejects the duly signed mail-in ballots of thousands of eligible voters every major election," as alleged in Paragraph 1 of your Complaint.

**RESPONSE**: Please see attached BATES GENERAL-00000001-00002030, MOVE-0000001-3,  MOVE-0000008-10,  MOVE-0000369-70,  MOVE-0000374-79,  MOVE-0000410-11, MOVE-0000420-21, MOVE-0000496-97, MOVE-0000528-29, MOVE-0000702-704.

2. All documents and communications supporting your contention that "Texas counties rejected at least 1,873 mail-in ballots during the 2018 General Election and at least 1,567 mail-in ballots during the 2016 General Election solely on the basis of mismatching signatures," as alleged in Paragraph 1 of your Complaint.

**RESPONSE**: Please see attached BATES GENERAL-00000001-2030, MOVE-00000369-70, MOVE-0000496-97, MOVE-0000702-704.

3. Documents sufficient to show all activities on which you have spent funds or to which you have dedicated resources in Texas between January 1, 2017 and the present, including

   a. Total spent on all activities in Texas;
   b. Total spent on civic education in Texas;
   c. Total spent on leadership development in Texas;
   d. Total spent on issue advocacy in Texas;
   e. Total spent on GOTV efforts in Texas;
   f. Total spent on voter registration efforts in Texas;
   g. Activities other than those identified in b-f above on which you spent funds or to which you have dedicated resources in Texas; and total spent on each of those activities.

**RESPONSE**: Please see attached BATES MOVE 00000011-368, 371-79, 381-87, 394-409, 412-432, 445-488, 498-522, 535-579, 602-701, 705-816, 859-915.

4. All documents and communications supporting your contention that "[t]he groups that are eligible to vote by mail are also the same groups, in many cases, that are most likely to have signature variations that could cause an improper rejection—especially the elderly, disabled, and persons who speak English as a second language," as alleged in Paragraph 46 of your Complaint.

   **RESPONSE**: MOVE objects to this request for production on the ground that it calls for an expert witness testimony. Plaintiffs' expert witness report was served on Defendants on February 3, 2020. Subject to and without waiving the foregoing, please see attached BATES MOVE-00000496-97, MOVE-0000528-29, MOVE-0000702-704.

5. All documents and communications supporting your contention that "growing old, illness, injury, symptoms from taking certain medicine, change in eyesight, and consuming alcohol and/or drugs; mechanical factors such as pen type, ink, signing surface, signing position, and paper quality; and psychological factors such as distress, anger, fear, depression, happiness, [or] nervousness" can affect an individual's handwriting to the extent that their ballot would be erroneously rejected for signature mismatch, as referenced in Paragraph 48 of your Complaint.

   **RESPONSE**: MOVE objects to this request for production on the ground that it calls for expert witness testimony. Plaintiffs' expert witness report was served on Defendants on February 3, 2020. Subject to and without waiving the foregoing, please see attached BATES MOVE-00000369-70, MOVE-0000469-70, MOVE-0000496-97, MOVE-0000528-29, MOVE-0000702-204.

6. All documents and communications supporting your contention that "a person's handwriting naturally changes over time" to the extent that their ballot would be erroneously rejected for signature mismatch, as referenced in Paragraph 48 of your Complaint.

   **RESPONSE**: MOVE objects to this request for production on the ground that it calls for expert witness testimony. Plaintiffs' expert witness report was served on Defendants on February 3, 2020. Subject to and without waiving the foregoing, please see attached BATES MOVE-00000496-97, MOVE-0000702-704.

7. All documents and communications supporting your contention that "[v]ariances between signatures" significant enough to result in a ballot being erroneously rejected for signature mismatch "are more prevalent in people who are elderly, disabled, under extreme stress, or who speak English as a second language," as referenced in Paragraph 48 of your Complaint.

   **RESPONSE**: MOVE objects to this request for production on the ground that it calls for

expert witness testimony. Plaintiffs' expert witness report was served on Defendants on February 3, 2020. Subject to and without waiving the foregoing, please see attached BATES MOVE-00000496-97, MOVE-0000702-704.

8.  All documents and communications supporting your contention that "the cost of remedial procedures" you seek in this Lawsuit "would likely be low," as alleged at Dkt. 32, p. 40.

**RESPONSE**: MOVE objects to this request for production on the ground that the contention requires a legal analysis. Subject to and without waiving the foregoing, MOVE has no responsive documents.

9.  All documents and communications supporting your contention that Texas's signature matching procedure is "error-prone," as alleged in Paragraph 70 of your Complaint.

**RESPONSE**: MOVE objects to this request for production on the ground that it calls for expert witness testimony. Plaintiffs' expert witness report was served on Defendants on February 3, 2020. Subject to and without waiving the foregoing, please see attached BATES MOVE 00000001-7, MOVE-0000369-70, MOVE-0000433-44, MOVE-0000496-97, MOVE-0000528-29, MOVE-0000702-704.

10. Documents sufficient to show each "erroneous deprivation of the right to vote" you contend was caused by "an error-prone and flawed signature comparison," as alleged in Paragraph 55 of your Complaint.

**RESPONSE**: MOVE objects to this request for production on the ground that it calls for expert witness testimony, calls MOVE to marshal evidence, and the contention requires legal analysis. Plaintiffs' expert witness report was served on Defendants on February 3, 2020. Subject to and without waiving the foregoing, please see attached BATES MOVE-00000001-10, MOVE-0000420-21, MOVE-0000528-29.

11. All documents and communications supporting your contention that "each county (and even each committee if multiple SVC panels are created) necessarily develops its own idiosyncratic, arbitrary, and ad hoc procedure to determine that a ballot should be rejected," and that "[t]hese standards will necessarily vary from county to county, panel to panel, and even from meeting to meeting or ballot to ballot within the same committee panel," as alleged in Paragraph 41 of your Complaint.

**RESPONSE**: MOVE objects to this request for production on the ground that it calls for expert witness testimony. Plaintiffs' expert witness report was served on Defendants on February 3, 2020. Subject to and without waiving the foregoing, MOVE has no responsive documents.

## MOVE'S OBJECTIONS AND RESPONSES TO INTERROGATORIES

1.     Describe any relief that Plaintiffs contend would "provide voters meaningful notice prior to the rejection of a mail-in ballot and [] offer voters the ability to cure a mail-in ballot questioned for an alleged signature mismatch," as discussed in Paragraph 7 of your Complaint.

**RESPONSE**: MOVE objects to this interrogatory on the ground that it calls for a legal conclusion. Subject to and without waiving the foregoing, there are multiple forms of prospective relief that would provide voters meaningful notice prior to the rejection of a mail-in ballot and offer voters the ability to cure a mail-in ballot questioned for an alleged signature mismatch. Plaintiffs' counsel discuss such forms to relief in their pleadings as well as in communications with opposing counsel. To be meaningful, notice prior to final rejection must clearly explain the reason why the voter's ballot was questioned, be received by the voter through a method of delivery the voter has quick and easy access to, and be received with enough time for the voter to attempt to effectively cure the questioned ballot. A cure process must provide voters simple methods and ample time to correct a ballot wrongly questioned for signature mismatch.

2.     State the criteria you utilize to determine whether, in a given election, you will "expend[] resources to educate students about mail-in ballots, encourage eligible student voters to use mail-in ballots, and provide support to eligible student voters utilizing such ballots," as referenced in Paragraph 22 of your Complaint.

**RESPONSE**:  To varying degrees, MOVE will expend resources to educate students about mail-in ballots, encourage eligible student voters to use mail-in ballots, and provide support to eligible student voters for each and every election.  Among other factors that can contribute to the degree of resources expended on these activities are (1) the timing of a particular election (for example, if an election is occurring during the summer or during school breaks, students are more likely to be away from their home address and eligible to vote by mail), and (2) particular outreach efforts that might involve interactions with students more likely to be eligible to vote by mail because of disability or some other reason (for example, possible future outreach at schools designed for people with disabilities, like the deaf or blind).

3.     If you contend that the Secretary has "rule making authority" to "establish any standards or guidance that must be used for actually determining if a signature is that of the voter," as referenced in Paragraph 41 of your Complaint, please state the basis for that contention.

**RESPONSE**: MOVE objects to this interrogatory on the ground that it calls for a legal conclusion.

4.     State the basis for your contention that "each county (and even each committee if multiple SVC panels are created) necessarily develops its own idiosyncratic, arbitrary, and ad hoc procedure to determine that a ballot should be rejected," and that "[t]hese standards will necessarily vary from county to county, panel to panel, and even from meeting to meeting or ballot to ballot within the same committee panel," as alleged in Paragraph 41 of your Complaint.

**RESPONSE**: MOVE objects to this interrogatory on the ground that it calls for expert witness testimony. Plaintiffs' expert witness report was served on Defendants on February 3, 2020. Subject to and without waiving the foregoing, as alleged in paragraph 2 of the Complaint, "current rules authorize untrained local election officials to arbitrarily and subjectively reject mail-in ballots if officials believe, based on their own layman analysis, that the signature on a ballot is not in fact the voter's signature." Please also see responses to Open Records Requests from local election officials produced for Requests for Production above.

5.      State the basis for your contention that the "signature verification procedure is not and cannot be performed anonymously," as alleged in Paragraph 42 of your Complaint.

**RESPONSE**: MOVE objects to this interrogatory on the ground that Defendants are better equipped to answer it. Subject to and without waiving the foregoing, MOVE's understanding is that signature verification requires reviewing the written name of the voter. As a result, it essentially cannot be performed anonymously.

6.      If you contend that SOS is responsible for delivering, receiving, or accepting completed mail-in ballots, please state the basis for that contention.

**RESPONSE**: MOVE objects to this interrogatory on the ground that it calls for a legal conclusion. The provisions of the Texas Election Code speak for themselves.

7.      If you contend that SOS has the authority to seek judicial relief in connection with a local election official's decision to reject a mail-in ballot, please state the basis for that contention.

**RESPONSE**: MOVE objects to this interrogatory on the ground that it calls for a legal conclusion. The provisions of the Texas Election Code speak for themselves.

8.      If you contend that eligible voters have a constitutionally protected right to pre-rejection notice and opportunity to cure before a ballot voted by mail is rejected for signature mismatch, please state the basis for that contention.

**RESPONSE**: MOVE objects to this interrogatory on the ground that it calls for a legal conclusion.

9.      If you contend that eligible voters have a protected liberty interest in casting a ballot by mail, please state the basis for that contention.

**RESPONSE**: MOVE objects to this interrogatory on the ground that it calls for a legal conclusion.

10.      If you contend that eligible voters have a protected property interest in casting a ballot by mail, please state the basis for that contention.

**RESPONSE**: MOVE objects to this interrogatory on the ground that it calls for a legal

conclusion.

11.     Describe what "specific standards" you contend are required for the signature comparison process to "ensure its equal application," as alleged in Paragraph 74 of your Complaint.

**RESPONSE**: MOVE objects to this interrogatory on the ground that it calls for a legal conclusion. Subject to and without waiving the foregoing, there are multiple types of specific standards that could be put in place to resolve the issues in this lawsuit. Plaintiffs' counsel discuss such forms to relief in their pleadings and in communications with opposing counsel, and their expert witness' report served on Defendants on February 3, 2020 also discusses such issues.

12.     If you contend that SOS has the authority to reject any mail-in ballot for signature mismatch, please state the basis of that contention.

**RESPONSE**: MOVE objects to this interrogatory on the ground that it calls for a legal conclusion. The provisions of the Texas Election Code speak for themselves.

13.     Describe any guidelines or trainings you contend SOS must provide to local election officials, EVBBs, or SVCs, including how you contend any such guidelines or trainings should be provided.

**RESPONSE**: MOVE objects to this interrogatory on the ground that it calls for a legal conclusion and expert testimony. Subject to and without waiving the foregoing, there are multiple types of guidelines and trainings Defendant SOS could provide to resolve at least some of the issues in this lawsuit. Plaintiffs' counsel discuss such forms of relief in their pleadings and communications with opposing counsel.

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| DR. GEORGE RICHARDSON, ROSALIE WEISFELD, AUSTIN JUSTICE COALITION, COALITION OF TEXANS WITH DISABILITIES MOVE TEXAS CIVIC FUND, AND LEAGUE OF WOMEN VOTERS OF TEXAS, *Plaintiffs*, | § § § § § § § | |
| v. | § § | No. 5:19-cv-00963 |
| TEXAS SECRETARY OF STATE, TRUDY HANCOCK IN HER OFFICIAL CAPACITY AS BRAZOS COUNTY ELECTIONS ADMINISTRATOR, AND PERLA LARA IN HER OFFICIAL CAPACITY AS CITY OF MCALLEN, TEXAS SECRETARY, *Defendants*. | § § § § § § § | |

**DEFENDANT SECRETARY OF STATE'S MOTION FOR SUMMARY JUDGMENT**

**Tab 7**

**Dr. Linton Mohammed**

UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF TEXAS

SAN ANTONIO DIVISION

---oOo---

DR. GEORGE RICHARDSON, ROSALIE    )
WEISFELD, AUSTIN JUSTICE          )
COALITION, COALITION OF TEXANS    )
WITH DISABILITIES, MOVE TEXAS     )
CIVIC FUND, LEAGUE OF WOMEN       )
VOTERS OF TEXAS, AND AMERICAN     )
GI FORUM OF TEXAS, INC.,          )
                                  )
         Plaintiffs,              )
vs.                               ) No. 5:19-cv-00963
                                  )
TEXAS SECRETARY OF STATE,         )
TRUDY HANCOCK, IN HER OFFICIAL    )
CAPACITY AS BRAZOS COUNTY         )
ELECTIONS ADMINISTRATOR AND       )
PERLA LARA IN HER OFFICIAL        )
CAPACITY AS CITY OF MCALLEN,      )
TEXAS SECRETARY,                  )
                                  )
         Defendants.              )
_____   )


Remote Videotaped Oral Deposition of

LINTON A. MOHAMMED, PhD

30(b)(6)

Monday, May 4th, 2020


Reported by:
KIMBERLEE SCHROEDER, CSR, RPR, CCRR
TX CSR 10925 - CA CSR 11414

Linton Mohammed - 5/4/2020

2

```
 1                    APPEARANCES

 2         (All Appearances Via Remote Videoconference)

 3   For the Plaintiffs:

 4      TEXAS CIVIL RIGHTS PROJECT
        By:  HANI MIRZA
 5           RYAN COX
             ZACHARY DOLLING
 6           Attorneys at Law
        1405 Montopolis Drive
 7      Austin, Texas 78741
        Ph:  512-474-5073
 8      E-mail:  hani@texascivilrightsproject.org
                 ryan@texascivilrightsproject.org
 9               zachary@texascivilrightsproject.org

10   - and -

11      WILLKIE, FARR & GALLAGHER, LLP
        By:  JOANNA SURIANI
12           Attorney at Law
        1875 K Street NW
13      Washington, D.C. 20006
        Ph:  202-303-1193
14      E-mail:  jsuriani@willkie.com

15      By:  SAMUEL KALAR
             Attorney at Law
16      787 Seventh Avenue
        New York, New York 10019
17      Ph:  212-728-8724
        E-mail:  skalar@willkie.com

18

19   For the Defendant Texas Secretary of State:

20      OFFICE OF THE ATTORNEY GENERAL OF TEXAS
        By:  ANNE MARIE MACKIN
21           Assistant Attorney General
        General Litigation Division
22      P.O. Box 12548, Capitol Station
        Austin, Texas 78711
23      Ph:  512-463-2798
        E-mail:  anna.mackin@oag.texas.gov

24
     (Continued)
25
```

Appx._297

Linton Mohammed - 5/4/2020

3

1                    APPEARANCES (Continued)

2  For the Defendant Perla Lara in Her Official Capacity as
   City of McAllen, Texas Secretary:

3
       CITY OF MCALLEN
4      By:  ISAAC JOEL TAWIL
            AUSTIN STEVENSON
5           Attorneys at Law
       1300 W Houston Ave
6      McAllen, Texas 78501-5002
       Ph:  956-681-1090
7      E-mail:  itawil@mcallen.net
                astevenson@mcallen.net
8

9  Also Present:

10     AMELIA CHRISTOPHER, Videographer

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Appx._298