IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **Dr. George Richardson,** | § | |
| **Rosalie Weisfeld, Austin** | § | |
| **Justice Coalition, Coalition** | § | |
| **of Texans with Disabilities,** | § | |
| **Move Texas Civic Fund,** | § | |
| **League of Women Voters** | § | |
| **Of Texas and American GI** | § | |
| **Forum of Texas, Inc.** | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | Civil Action No.: 5:19-CV-00963 |
| | § | |
| **Texas Secretary of State** | § | |
| **Trudy Hancock, in her official** | § | |
| **Capacity as Brazos County** | § | |
| **Elections Administrator and** | § | |
| **Perla Lara in her official** | § | |
| **Capacity as City of McAllen,** | § | |
| **Texas Secretary,** | § | |
| *Defendants* | § | |

### <u>DEFENDANT BRAZOS COUNTY ELECTIONS ADMINISTRATOR TRUDY HANCOCK'S RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT</u>

TO THE HONORABLE JUDGE OF THIS COURT:

Defendant Brazos County Elections Administrator Trudy Hancock (hereinafter "Hancock") files this response to Plaintiffs', Dr. George Richardson ("Richardson"), Rosalie Weisfeld ("Weisfeld"), Austin Justice Coalition ("Austin Justice"), Coalition of Texans with Disabilities ("CTD"), MOVE Texas Civic Fund ("MOVE"), and League of Women Voters of Texas (the "League"), motion for summary judgment. Defendant Hancock offers the following:

This case is simply about Texas' signature-verification process for mail-in ballots pursuant to Texas Election Code § 87.041. Specifically, Plaintiffs challenged only those subsections related

to this process found in Texas Election Code §§ 87.041 (b)(2), (e) and (f). Dkt. 1[1]. In their summary judgment motion, Plaintiffs assert that they are "entitled to judgment as a matter of law and pray the Court grant their Motion for Summary Judgment as to all claims, and enter all final declaratory judgment and injunctive relief." *See* Dkt. 65, pg. 53.  In their Original Complaint, Plaintiffs seek the following relief:

1. That the Court enter declaratory judgment that the State of Texas' statutory scheme requiring the rejection of mail-in ballots with alleged signature mismatches, specifically set out in Texas Election Code §§ 87.041(b)(2), (e), and (f), is unconstitutional and violates the ADA and the RA;
2. That the Court permanently enjoin the State of Texas, the Texas Secretary of State, the Brazos County Elections Administrator, the City of McAllen, Texas Secretary, the 254 county agencies administering elections, and all other political subdivisions administering elections from rejecting any mail-in ballot for signature mismatch reasons, or, in the alternative, require the State of Texas, the Texas Secretary of State, the Brazos County Elections Administrator, the City of McAllen, Texas Secretary, the 254 county agencies administering elections, and all other political subdivisions administering elections to (a) provide voters meaningful notice prior to the rejection of a mail-in ballot based on an alleged signature mismatch and (b) offer voters the ability to cure a mail-in ballot questioned for an alleged signature mismatch.
3. That Plaintiffs be awarded attorneys' fees under 42 U.S.C. § 1988 and 29 U.S.C. § 794a;
4. That all costs of this action be taxed against Defendants; and
5. That the Court award any additional or alternative relief as may be deemed appropriate under the circumstances.

Dkt. 1, pgs. 24-25.

## I.   Argument & Authorities

Plaintiffs assert three main arguments in their motion:  (1) that the state-created process, Texas' statutory provisions related to signature verification, violates due process; (2) that Texas' statutory provisions related to "signature matching procedures" violate the Equal Protection Clause; and (3) that the Texas Election Code's "mail-in ballot provisions" violates Title II of the Americans with Disabilities Act of 1990 and the Rehabilitation Act of 1973. Specifically, Plaintiffs

---

[1] References to the Court's Docket will be abbreviated from Docket Entry No. __ to "Dkt. __."

allege that mail-in voters should be provided with a "pre-rejection notice" and/or an opportunity to cure any defects or correct any erroneously rejected ballots. Dkt. 65, pgs. 2-4.

In a clear attempt to mislead the Court and confuse the allegations related to Texas Election Code §§ 87.041 (b)(2), (e) and (f), Plaintiffs spend numerous pages attempting to describe the statutory provisions related to the processing of **applications for ballot by mail.** *Id.* at pgs. 5-8. The statutory provisions of the Texas Election Code for processing and/or receiving a mail-in ballot application or the mail-in ballot by the early voting clerk have not been challenged nor have Plaintiffs sought any relief related to these provisions. Plaintiffs correctly assert that "[o]nce the application process is complete and the voter has delivered their mail-in ballot, the EVC [early voting clerk] is responsible for placing the carrier envelopes containing the mail-in ballots, as well as the voters' early voting ballot applications, into jacket envelopes, *id.* § 86.011(b), and then delivering the jacket envelopes to the Early Voting Ballot Board ("EVBB") *id.* §§ 87.021-87.024." *Id.* at 8. Again, Plaintiffs have not challenged nor have they sought any relief related to these statutory provisions related to the EVC delivering the ballots to the EVBB.

Plaintiffs clear attempt to mislead the Court becomes evident by erroneously stating that "[b]ecause the EVC generally controls every other aspect of the early voting process, the EVC also has authority to manage the EVBB and assist the EVBB in completing its narrow and specific functions." *Id.* at pgs. 9-10. Further, Plaintiffs falsely state that the "EVC **manages the EVBB** by providing EVBB committee members the EVBB Handbook, a space to convene, all the office supplies necessary to carry out their tasks, **assistance whenever the EVBB requires help making a signature determination**, and mails out rejection notices for the EVBB." *Id.* at 10. To support these statements, Plaintiffs state that they rely on the Deposition of Hancock at 41:20-46:12 and 56:24-57:23. *See* Plaintiffs' Exhibit 10. However, a review of the testimony provided by Hancock,

at 41:20-46:12 and 56:24-57:23, relates only to the processing of **applications for ballot by mail**. *Id.*; *see also*, attached Exhibit 9, 41:20-46:12 and 56:24-57:23. This procedure for receiving and processing the applications for ballot by mail has not been challenged by Plaintiffs. Further, Hancock expressly rejects Plaintiffs assertion that she "manages the EVBB"; specifically stating that she does not have responsibilities throughout the mail-in ballot process – only "to a certain point. As far as the statute allows." *Id.* at 43:23-44:2. After the mail-in ballot is received, it is placed in a locked box and provided to the early voting ballot board when they meet, "typically on a Saturday – on the Saturday before election." *Id.* at 61:17-62:8. The EVBB is statutorily created, its members are nominated by the parties, and it is supervised by the EVBB judge, who is supervised by no one. *Id.* at 72:17-72:19; 75:16-75:19. There is no statutory authority granting Hancock with the ability to oversee, instruct or manage the EVBB. *See* Tex. Elec. Code Ch. 87.

In Brazos County, the EVBB consists of 8 to 12 members which are determined by the EVBB presiding judge in accordance with the Texas Elections Code. Exhibit 8 at 13:12 – 13:25. The EVBB presiding judge "seeks out members or volunteers from recommendations from both parties." *Id.* At no time does a County Elections Administrator have discretion to intervene in this process of mail-in ballot validation, as the only role of Defendant Hancock after delivery of the ballots to the EVBB in the process of signature validation is to provide a copy of the handbook from the Texas Secretary of State to the EVBB presiding judge. *Id.* at 16:17 – 18:17; *Id.* at Exhibit 7. The Texas Legislature established that only the EVBB has the authority to determine the validity of mail-in ballots and Plaintiffs have falsely alleged that the EVC manages the EVBB. Tex. Elec. Code §87.001. Further, the Texas Legislature required that "[t]he secretary of state shall adopt rules as necessary to implement the requirements" for a notice of a rejected ballot by the EVBB. *Id.* at §87.0431(c).

**A. Plaintiffs' claims related to Texas Election Code §§87.041(b)(2), (e), and (f).**

In this matter, Plaintiffs challenge the validity of the statutory scheme set out in Texas Election Code §§87.041(b)(2), (e), and (f), requiring the rejections of mail-in ballots with alleged signature mismatches. Dkt.. 1. Texas Election Code, section 87.041 provides as follows:

> (a) **<u>The early voting ballot board shall</u>** open each jacket envelope for an early voting ballot voted by mail and determine whether to accept the voter's ballot.
> (b) A ballot may be accepted only if:
> > (1) the carrier envelope certificate is properly executed;
> > <u>(2) neither the voter's signature on the ballot application nor the signature on the carrier envelope certificate is determined to have been executed by a person other than the voter, unless signed by a witness;</u>
> > (3) the voter's ballot application states a legal ground for early voting by mail;
> > (4) the voter is registered to vote, if registration is required by law;
> > (5) the address to which the ballot was mailed to the voter, as indicated by the application, was outside the voter's county of residence, if the ground for early voting is absence from the county of residence;
> > (6) for a voter to whom a statement of residence form was required to be sent under Section 86.002(a), the statement of residence is returned in the carrier envelope and indicates that the voter satisfies the residence requirements prescribed by Section 63.0011; and
> > (7) the address to which the ballot was mailed to the voter is an address that is otherwise required by Sections 84.002 and 86.003.
> (c) If a ballot is accepted, the board shall enter the voter's name on the poll list unless the form of the list makes it impracticable to do so. The names of the voters casting ballots by mail shall be listed separately on the poll list from those casting ballots by personal appearance.
> (d) <u>A ballot shall be rejected if any requirement prescribed by Subsection (b) is not satisfied. In that case, the board shall indicate the rejection by entering "rejected" on the carrier envelope and on the corresponding jacket envelope</u>.
> (e) In making the determination under Subsection (b)(2), **<u>the board</u>** <u>may also compare the signatures with any two or more signatures of the voter made within</u>

<u>the preceding six years and on file with the county clerk or voter registrar to determine whether the signatures are those of the voter.</u>
(f) In making the determination under Subsection (b)(2) for a ballot cast under Chapter 101 or 105, **the board shall** <u>compare the signature on the carrier envelope or signature cover sheet with the signature of the voter on the federal postcard application.</u>
(g) A person commits an offense if the person intentionally accepts a ballot for voting or causes a ballot to be accepted for voting that the person knows does not meet the requirements of Subsection (b). An offense under this subsection is a Class A misdemeanor.

Tex. Elec. Code §87.041 (emphasis added). In Texas, the EVBB **shall** have jurisdiction to process early voting results as it is statutorily required to be created for that purpose, not the County or the early voting clerk (Brazos County and/or Brazos County Election Administrator, Trudy Hancock). *Id*. at §87.001 (emphasis added). The EVBB consists of a presiding judge and at least two other members. *Id*. at §87.002(a). The presiding judge is appointed from a list provided "by the political party whose nominee for governor received the most votes in the county in the most recent gubernatorial general election." *Id*. at §87.002(d). "Each county chair of a political party with nominees on the general election ballot shall submit … a list of names of persons eligible to serve on the early voting ballot board." *Id*. at §87.002(c). The members of the EVBB are statutorily required to take the following oath:

> I swear (or affirm) that I will objectively work to be sure every eligible voter's vote is accepted and counted, and that only the ballots of those voters who violated the Texas Election Code will be rejected. I will make every effort to correctly reflect the voter's intent when it can be clearly determined. I will not work alone when ballots are present and will work only in the presence of a member of a political party different from my own. I will faithfully perform my duty as an officer of the election and guard the purity of the election.

*Id.* at §87.006(a). The EVBB, not Brazos County and/or Hancock, determines "whether to accept early voting ballots voted by mail in accordance with Section 87.041." *Id.* at §87.0241(a).

    **1. Plaintiffs' request for a pre-rejection notice of a mail-in ballot based on an alleged signature mismatch and voters' ability to cure a mail-in ballot questioned for an alleged signature mismatch.**

Plaintiffs seek relief for the rejection of mail-in ballots based on a signature mismatch by the EVBB, not the County or EVC. Dkt. 1. It is undisputed that the Texas Election Code provides that the EVBB "may determine whether to accept early voting ballots voted by mail in accordance with Section 87.041 at any time after the ballots are delivered to the board;" however, the EVBB "may not count early voting ballots until: (1) the polls open on election day; or (2) in an election conducted by an authority of a county with a population of 100,000 or more or conducted jointly with such a county, the end of the period for early voting by personal appearance." Tex. Elec. Code § 87.0241(a) & (b). "The **secretary of state shall** prescribe any procedures necessary for implementing this section in regard to elections described in Subsection (b)(2)," elections conducted in a county with a population of 100,000 or more. *Id.* at §87.0241(c) (emphasis added).

If a ballot is rejected, it is the duty of the presiding judge of the EVBB, not Defendant Hancock, to deliver written notice to the voter of the reason for the rejection of the ballot. *Id.* at §87.0431(a). Specifically, "[n]ot later than the 10th day after election day, the **presiding judge of the early voting ballot board shall** deliver written notice of the reason for the rejection of a ballot to the voter at the residence address on the ballot application." *Id.* (emphasis added). The only role of the early voting clerk is the statutory requirement to "deliver notice to the attorney general, including certified copies of the carrier envelope and corresponding ballot application, of any ballot rejected because: (1) the voter was deceased; (2) the voter already voted in person in the same election; (3) the signatures on the carrier envelope and ballot application were not executed

by the same person; (4) the carrier envelope certificate lacked a witness signature; or (5) the carrier envelope certificate was improperly executed by an assistant", not later than the 30th day after election day. *Id.* at §87.0431(b). "The **attorney general shall** prescribe the form and manner of submission under Subsection (b). **The secretary of state shall adopt rules as necessary to implement the requirements prescribed under this subsection**." *Id.* at §87.0431(c)(emphasis added).

Plaintiffs fail to articulate any statutory authority providing Defendant Hancock (or any of "**the 254 county agencies administering elections, and all other political subdivisions administering elections**") with the ability to "manage" or oversee any decisions by the EVBB concerning whether to accept the voter's ballot. Such a determination is within the sole discretion of the EVBB. Further, Plaintiffs have not and cannot provide this Court with any statutory provision authorizing Defendant Hancock to make the requested statutory changes for providing a pre-rejection notice and opportunity to cure a ballot by mail – such a change must come from the Texas Legislature. Nor can Plaintiffs provide any statutory authority granting Defendant Hancock with the ability to invade the jurisdiction of the EVBB. Finally, it is clear that Defendant Hancock must follow the Texas Election Code and exercise only the authority granted to her. Therefore, Plaintiffs' motion for summary judgment should be denied in its entirety with respect to their claims asserted against Defendant Hancock.

### B. Standing

In this matter, Plaintiffs Richardson and Weisfeld cannot satisfy any of the three required elements of standing and therefore, lack statutory standing to bring any claims against Defendant Hancock. Additionally, Plaintiffs Austin Justice, CTD, MOVE and the League cannot meet either "associational standing" or "organizational standing" to establish an Article III case or controversy

against Defendant Hancock. Plaintiff Austin Justice, CTD, MOVE and the League cannot identify any concrete or particularized stake in any claims against Defendant Hancock. As demonstrated above, the acceptance or rejection of mail-in ballots is statutorily mandated to be carried out by the early voting ballot board (EVBB), not Brazos County or Defendant Hancock.

The Doctrine of Standing establishes that at a constitutional minimum, standing contains three elements. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "To establish standing under Article III of the Constitution, a plaintiff must demonstrate (1) that he or she suffered an injury in fact that is concrete, particularized, and actual or imminent, (2) that the injury was caused by the defendant, and (3) that the injury would likely be redressed by the requested judicial relief." *Texas Democratic Party v. Abbott*, No. 20-50407, 2020 WL 2982937, at *5 (5th Cir. June 4, 2020)(*quoting Thole v. U.S. Bank N.A.*, 140 S.Ct. 1615, 1618 (U.S. June 1, 2020)). In this matter, Plaintiffs consist of two individuals, Richardson and Weisfeld, and four associations/organizations, Austin Justice, CTD, MOVE and the League.

In order to have standing for an association or organization, the association or organization must meet all of the well-known requirements of *Lujan*:

> First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized; and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'" Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

*OCA-Greater Houston v. Texas*, 867 F.3d 604, 609-610 (5th Cir. 2017)(*quoting Lujan,* 504 U.S. at 560–61). There are two theories where an association or organization can establish an injury-in-fact, either "associational standing" or "organizational standing." *Id.* at 610. "'Associational standing' is derivative of the standing of the association's members, requiring that they have

standing and that the interests the association seeks to protect be germane to its purpose." *Id*. "By contrast, 'organizational standing' does not depend on the standing of the organization's members" – where the organization, in its own name "meets the same standing test that applies to individuals." *Id*.

At the summary judgment stage, Plaintiffs can no longer rest on "mere allegations"; instead, "each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof," by providing evidence of specific facts to defeat summary judgment. *Lujan*, 504 U.S. at 561. "When the suit is one challenging the legality of government action or inaction, the nature and extent of facts that must be averred (at the summary judgment stage) … in order to establish standing depends considerably upon whether the plaintiff is himself an object of the action (or forgone action) at issue." *Id.* If the plaintiff's claimed "injury arises from the government's allegedly unlawful regulation (or lack of regulation) of *someone else,* much more is needed" and standing is "substantially more difficult" to establish. *Id.* at 562.

The challenge of the validity of a Texas election statute "is, without question, fairly traceable to and redressable by ... its Secretary of State, who serves as the 'chief election officer of the state.'" *Texas Democratic Party*, 2020 WL 2982937, at \*6 (*quoting OCA-Greater-Houston*, 867 F.3d at 613). It is the Secretary of State that "has the power to take appropriate action to protect Texans' voting rights from abuse by the authorities administering the state's electoral processes." *Id.* (internal quotations omitted). The Secretary of State has the duty to "'obtain and maintain uniformity in the application, operation, and interpretation of" Texas's election laws, including by 'prepar[ing] detailed and comprehensive written directives and instructions relating to' those vote-by-mail rules." *Id.* (*quoting* TEX. ELEC. CODE § 31.003).

"Courts sometimes make standing law more complicated than it needs to be[,]" "[P]laintiffs [may] lack Article III standing for a simple, commonsense reason" under ordinary Article III standing analysis. *Thole*, 140 S.Ct. at 1622. "[I]n 'every case involving construction of a statute,' the 'starting point ... is the language itself.'" *Id.* at 1623 (THOMAS, J., with who J. GORSUCH joins, concurring)(*quoting Varity Corp. v. Howe*, 516 U.S. 489, 528 (1996) and *Ernst & Ernst v. Hochfelder*, 425 U.S. 185 (1976); ellipsis in original).

**1. Dr. George Richardson**

Richardson mistakenly asserts that his "mail-in ballot was rejected by Brazos County in the 2018 General Election after the Brazos County EVBB erroneously determined his signature was not his." Dkt. 65, pg. 16. Further, Richardson inaccurately alleges that "he received a letter from Brazos County notifying him that his ballot was rejected because of a signature mismatch." *Id*. As demonstrated by Plaintiffs' Exhibit 25, Richardson received a Notice of Rejected Ballot signed by the Early Voting Ballot Board Judge on November 3, 2018, on form letter AW5-42, prescribed by the Secretary of State pursuant to Sec. 87.0431 of the Texas Election Code. *See* Plaintiffs' Exhibit 25. Therefore, it is undisputed that Richardson's ballot was not rejected by Brazos County nor was the notice of rejection from Brazos County.

In this case, Dr. Richardson cannot establish that that he suffered an injury in fact that is concrete, particularized, and actual or imminent. Even Plaintiffs' own expert, Linton Mohammed, Phd., testified that he reviewed the signatures from the mail-in ballot and application purported to be from Dr. Richardson. Exhibit 1 at 26:5 – 29:5. Specifically, Dr. Mohammed testified that in his expert opinion as a forensic document examiner that the two signatures were not a match – "they were pictorially dissimilar." *Id*. at 29:1 – 29:5.

As shown above, Defendant Hancock is not the official statutorily charged with reviewing votes by mail to determine whether to accept a voter's ballot. Tex. Elec. Code §87.041. The EVBB has the sole jurisdiction to process early voting results, including mail-in ballots. *Id*. and *Id*. at §87.001. Dr. Richardson testified:

```
13   Q. (BY MR. MAGEE) Besides being told by someone
14      about the process used for reviewing signatures on
15      mail-in ballots, have you done anything else to
16      familiarize yourself with the process to review those
17      ballots?
18   A. No.
```

Exhibit 2 at 51:13 – 51:18. Further, Richardson mistakenly argues that "[h]ad Brazos County notified Dr. Richardson during the election that county election officials questioned the signature on his application or carrier envelope, Dr. Richardson would have confirmed the signatures were, in fact, his own." Dkt 65, pg. 17. As clearly demonstrated, Hancock did not question the signature on Richardson's application and Richardson has not asserted any claims related to his ballot by mail application. These claims only relate to the rejection of his ballot by the EVBB. As required by the Texas Elections Code, it is the duty of the presiding judge of the EVBB, not Defendant Hancock, to deliver written notice to the voter of the reason for the rejection of the ballot not later than the 10th day after election day. Tex. Elec. Code §87.0431(a). Therefore, any alleged injury to Richardson was not caused by Defendant Hancock.

Finally, Richardson cannot establish that any alleged injury would likely be redressed by the requested judicial relief against Defendant Hancock. Richardson has failed to sue the Brazos County EVBB.

For these reasons, Richardson fails to establish standing under Article III of the Constitution and his claims should be dismissed in their entirety against Defendant Hancock.

### 2. Rosalie Weisfeld

Weisfeld's allegations related to a city run-off election in 2019 where the City of McAllen rejected her mail-in ballot. Dkt. 1, ¶ 4. Further, Weisfeld states that she is an individual voter in McAllen, Texas and alleges that she "was improperly and unconstitutionally disenfranchised in the 2019 McAllen, Texas city run-off election." *Id.* at ¶ 11. Further, Weisfeld makes no reference to Brazos County and/or Defendant Hancock nor asserts any allegations/claims against Brazos County and/or Defendant Hancock in Plaintiffs' motion for summary judgment. Dkt. 65, ¶ 2, pgs. 18-19.

It is undisputed that Weisfeld cannot establish standing against Defendant Hancock as she has not claimed any injury that occurred from Brazos County or that there is a causal connection between any alleged injury and Defendant Hancock. *Id.* Further, Weisfeld cannot demonstrate that any alleged injury she may have suffered would be adequately redressed by a judicial decision against Defendant Hancock. *Id.* Weisfeld has had no prior dealings with the Brazos County election administrator or Defendant Hancock. Exhibit 3 at 51:16 – 51:22.

For these reasons, Weisfeld fails to establish standing under Article III of the Constitution and her claims should be dismissed in their entirety against Defendant Hancock.

### 3. Austin Justice Coalition

In the summary judgment motion, Austin Justice states that it "sues Defendants on its own behalf.  AJC is a non-partisan, non-profit organization 'dedicated to serving people who are historically and systematically impacted by gentrification, segregation, over policing, lack of educational and employment opportunities, and other institutional forms of racism **in Austin**." Dkt. 65, ¶ 3, pg. 19. "AJC operates Project Orange, a coordinated campaign to enter the Travis County Jail, register eligible voters, and assist them in requesting and submitting mail-in ballots

are received by the inmate voters and that completed mail-in ballots are received by the Travis County Elections Department on time." *Id.* at pg. 20.  Austin Justice makes no reference to Brazos County and/or Defendant Hancock nor asserts any allegations/claims against Brazos County and/or Defendant Hancock in Plaintiffs' motion for summary judgment. Dkt. 65, ¶ 3, pgs. 19-20.

Austin Justice cannot establish that a concrete and particularized injury occurred or that there is any actual or imminent threat of injury that is not conjectural or hypothetical. Secondly, Austin Justice fails to establish that there is a causal connection between any alleged injury and Defendant Hancock. Finally, Austin Justice cannot demonstrate that any alleged injury of Austin Justice would be adequately redressed by a judicial decision against Defendant Hancock, such an assertion would be merely speculative.

Larissa Rodionov, on behalf of Austin Justice, testified that Austin Justice operates a project named Project Orange which assists inmates by mail applications. Exhibit 4 at 46:4 – 46:9. All of the work by Austin Justice is performed in Travis County at the Travis County Correctional Complex. *Id.* at 59:2 – 59:7. Ms. Rodionov testified that she is not aware of any time that Austin Justice has assisted any voter whose mail-in ballot was rejected for a signature mismatch. *Id.* at 64:18 – 64:22. Austin Justice has not worked in Brazos County and has had no communications with the Brazos County elections office. *Id.* at 70:8 – 70:19. Therefore, Austin Justice cannot identify any policy or regulation of Brazos County/Defendant Hancock concerning signature verification or mail-in ballots that Austin Justice challenges resulting in an injury caused by Brazos County/Defendant Hancock.

For these reasons, Austin Justice fails to establish standing under Article III of the Constitution and its claims should be dismissed in their entirety against Defendant Hancock.

### 4. Coalition of Texans with Disabilities

CTD is suing the "Defendants on its own behalf and on behalf of its members who use the mail-in ballot process based on their eligibility due to disability." Dkt. 65, ¶ 4, pg. 20. CTD alleges that its "mission is significantly frustrated by the current state laws and policies that result in the improper rejection of disabled voters' mail-in ballots." Dkt 1. at ¶ 18. Further, CTD claims that "[b]ecause of Defendants' unlawful signature comparison procedure, each signed ballot improperly and arbitrarily rejected for an alleged signature mismatch undermines the efficacy of CTD's mail-in ballot work." *Id.* CTD makes no reference to Brazos County and/or Defendant Hancock nor asserts any allegations/claims against Brazos County and/or Defendant Hancock in Plaintiffs' motion for summary judgment. Dkt. 65, ¶ 4, pgs. 20-22.

In this case, CTD cannot establish that a concrete and particularized injury occurred or that there is any actual or imminent threat of injury that is not conjectural or hypothetical. Secondly, CTD fails to establish that there is a causal connection between any alleged injury and Defendant Hancock. Finally, CTD cannot demonstrate that any alleged injury of CTD would be adequately redressed by a judicial decision against Defendant Hancock, such an assertion would be merely speculative.

Chase Bearden, on behalf of CTD, testified that he does not know of any CTD member that has had a mail-in ballot rejected because of a signature mismatch, including any in Brazos County. Exhibit 5 at 66:1 – 66:10; 77:12 – 77:20. Mr. Bearden testified that he spoke with several members of CTD about mail-in ballots, their disabilities and this litigation. *Id*. at 13:6 – 15:8. Further, Mr. Bearden testified that neither he nor any of the three CTD members that he discussed mail-in ballots are registered voters in Brazos County. *Id*. at 77:2 – 77:11. Finally, Mr. Bearden did not identify any policy or regulation of Brazos County/Defendant Hancock concerning

signature verification or mail-in ballots that CTD challenges resulting in an injury caused by Brazos County/Defendant Hancock.

For these reasons, CTD fails to establish standing under Article III of the Constitution and its claims should be dismissed in their entirety against Defendant Hancock.

### 5. MOVE Texas Civic Fund

MOVE states that it "sues Defendants on its own behalf" and that its "principal place of business is in San Antonio, Texas." Dkt. 65, ¶ 5, pg. 22. MOVE states that it "actively registers eligible young people to vote and ensure that they cast a ballot that actually counts." *Id.* MOVE states that it "operates on more than 32 college campuses around the State of Texas, with 14 of those in the San Antonio area, and registers thousands of students to vote every year." *Id.* In its summary judgment motion, MOVE makes no reference to Brazos County and/or Defendant Hancock nor asserts any allegations/claims against Brazos County and/or Defendant Hancock. Dkt. 65, ¶ 5, pgs. 22-26.

MOVE cannot establish that a concrete and particularized injury occurred or that there is any actual or imminent threat of injury that is not conjectural or hypothetical. Secondly, MOVE fails to establish that there is a causal connection between any alleged injury and Defendant Hancock. Finally, MOVE cannot demonstrate that any alleged injury of CTD would be adequately redressed by a judicial decision against Defendant Hancock, such an assertion would be merely speculative.

Hilliard Drew Galloway, on behalf of MOVE, testified that MOVE cannot identify any voter it assisted excluding Plaintiff Weisfeld related to mail-in ballots that was rejected for signature mismatch. Exhibit 6 at 46:21 – 48:21. Mr. Galloway testified that he had no knowledge of any contact by MOVE with Brazos County/Defendant Hancock with the exception of

communications related to voter registration. *Id*. at 24:8 – 25:10. MOVE does some vote by mail advocacy work at elections administrators' offices in Bexar, Travis, Dallas, Harris, Webb and Hays Counties. *Id*. at 38:5 – 38:23. Finally, MOVE cannot identify any policy or regulation of Brazos County/Defendant Hancock concerning accepting or rejecting mail-in ballots based on the voter's signature that MOVE challenges resulting in an injury caused by Brazos County/Defendant Hancock.

For these reasons, MOVE fails to establish standing under Article III of the Constitution and its claims should be dismissed in their entirety against Defendant Hancock.

**6.  League of Women Voters of Texas**

The League is suing "Defendants on its own behalf and on behalf of its members who use the mail-in ballot process." Dkt.65 at ¶ 6, pg. 26. The League claims that "[t]he improper rejection of mail-in ballots decreases overall confidence in the mail-in ballot process, and elections, generally, which directly undermines the efforts LWV takes to encourage eligible voters to use mail-in ballots and assist said voters with those mail-in ballots." *Id. at pg. 27*.  Further, the League states that it "has expended and intends to continue to expend resources to educate Texans about mail-in ballots, encourage eligible voters to use mail-in ballots, and guide eligible voters on how to use such ballots.  *Id*. The League makes no reference to Brazos County and/or Defendant Hancock nor asserts any allegations/claims against Brazos County and/or Defendant Hancock in Plaintiffs' summary judgment motion. Dkt. 65, ¶ 6, pgs. 26-28.

Here, the League cannot establish standing – that a concrete and particularized injury occurred or that there is any actual or imminent threat of injury that is not conjectural or hypothetical. Secondly, it is undisputed that the League fails to establish that there is a causal connection between any alleged injury and Defendant Hancock. Finally, the League cannot

demonstrate that any alleged injury would be adequately redressed by a judicial decision against Defendant Hancock, such an assertion would be merely speculative.

The President of the League, Grace Chimene, testified that she could not identify any times where the League "assisted any individual voter after their mail-in ballot was rejected for signature mismatch" – the League merely provides a national telephone number to the Election Protection Coalition. Exhibit 7 at 77:8 – 80:10. The League does not contribute any funds to the Election Protection Coalition. *Id*. at 79:17 – 79:23. Specifically, Ms. Chimene testified that she does not know of any of the League's members that have ever had a mail-in ballot rejected based on a signature mismatch. *Id*. at 80:21 – 81:8. The only direct involvement with Brazos County that the League could provide related to a county election website review and not related to any rejected mail-in ballots. *Id*. at 25:12 – 25:23. Brazos County received an outstanding award certificate from the League. *Id*. at 104:9 – 107:5, *Id*. at Exhibit 11. Ms. Chimene testified that she loved Brazos County's election website and "to tell [Brazos County] to keep doing a great job." *Id*. Therefore, Ms. Chimene failed to identify any policy or regulation of Brazos County/Defendant Hancock concerning signature verification that the League challenges resulting in an injury.

For these reasons, the League fails to establish standing under Article III of the Constitution and its claims should be dismissed in their entirety against Defendant Hancock.

### III. Prayer

For these reasons, Defendant Hancock requests that the Court deny Plaintiffs' Motion for Summary Judgment, grant Defendant Hancock's Motion for Summary Judgment (Dkt. 66) and deny all relief requested by the Plaintiffs against her.

                      Respectfully submitted,

                      */s/ J. Eric Magee*
                      J. Eric Magee

SBN: 24007585
e.magee@allison-bass.com
**ALLISON, BASS & MAGEE, L.L.P.**
A.O. Watson House
402 W. 12th Street
Austin, Texas 78701
(512) 482-0701 telephone
(512) 480-0902 facsimile
*Attorneys for Brazos County Elections
Administrator Trudy Hancock*

### CERTIFICATE OF SERVICE

I hereby certify that on the 6th day of July, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

*/s/ J. Eric Magee*
J. Eric Magee