IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

|  |  |  |
|---|---|---|
| DR. GEORGE RICHARDSON, ROSALIE WEISFELD, AUSTIN JUSTICE COALITION, COALITION OF TEXANS WITH DISABILITIES, MOVE TEXAS CIVIC FUND, LEAGUE OF WOMEN VOTERS OF TEXAS | § § § § § § § § § | |
| *Plaintiffs* | § § | |
| VS. | § § § | Civil Case No. 5:19-cv-00963 |
| TEXAS SECRETARY OF STATE, TRUDY HANCOCK, in her official Capacity as BRAZOS COUNTY ELECTIONS ADMINISTRATOR and PERLA LARA in her official Capacity as CITY OF MCALLEN, TEXAS SECRETARY, *Defendants* | § § § § § § § § | |

**DEFENDANT PERLA LARA'S, IN HER OFFICIAL
CAPACITY AS CITY OF MCALLEN CITY SECRETARY,
RESPONSE TO PLAINTIFFS', DR. GEORGE RICHARDSON,
ROSALIE WEISFELD, AUSTIN JUSTICE COALITION, COALITION
OF TEXANS WITH DISABILITIES, MOVE TEXAS CIVIC FUND, AND
LEAGUE OF WOMEN VOTERS OF TEXAS MOTION FOR SUMMARY
JUDGMENT**

TO THE HONORABLE JUDGE OF THIS COURT:

COMES NOW¸ Defendant Perla Lara, in her official capacity as McAllen City

Secretary, and files her response to Plaintiffs', Dr. George Richardson, Rosalie

1

Weisfeld, Austin Justice Coalition, Coalition of Texans with Disabilities, MOVE Texas Civic Fund, and League of Women Voters of Texas, motion for summary judgment, and would show unto the Court as follows:

## I.      Introduction

This case has been brought under the Fourteenth Amendment, Title II of the Americans with Disabilities Act (ADA), 24 U.S.C. §12131, *et seq.*, and the Rehabilitation Act of 1973 (RA), 29 U.S.C. § 794.3 and concerns Plaintiffs' purported right of voters to be notified prior to the rejection of a mail-in ballot in Texas.  There are six plaintiffs in this case who may be categorized as one of two types of claimants: voters and non-profit civic organizations. Plaintiffs are challenging several provisions of the Texas Election Code, specifically the signature comparison procedure found at §§ 87.041(b)(2), (e) and (f). Plaintiffs' motion fails to raise a genuine issue of material fact and as a result several Plaintiffs lack standing to bring suit. Further, Plaintiffs fail to raise a genuine issue of material fact that Defendant Lara, in her Official Capacity as McAllen City Secretary, lacks the authority to remedy the Plaintiffs' claims regarding the signature comparison procedure. Therefore, Plaintiffs' motion should be denied, and Defendant's motion should be granted.

## II.      STATEMENT OF ALLEGED FACTS

Plaintiffs filed their Original Complaint seeking declaratory and injunctive relief on August 7, 2019. Plaintiffs brought suit against Defendant Perla Lara only in

her official capacity as City Secretary for the City of McAllen, Texas.

There are no facts sufficient to support a claim against Perla Lara in her official Capacity as City of McAllen, Texas Secretary and in fact, Plaintiffs do not seek specific relief from Defendant Lara. Rather, the Complaint seeks to enjoin Defendant Lara, as a local election official, from following certain clear requirements of the Texas Election Code. Plaintiffs have failed to establish standing to include Defendant Lara, a local election official, as a necessary party to litigation challenging state law over which she has no discretion, control nor authority to change. Defendant Lara is in no position to provide the relief sought even if she were in complete agreement with the Plaintiffs' position.

## III.   ARGUMENT

### A. Legal Standard

Summary judgment is appropriate when there are no genuine issues as to any material facts, and the moving party is entitled to judgment as a matter of law.[1] A court must be satisfied that no reasonable trier of fact could find for the nonmoving party or, in other words, "that the evidence favoring the nonmoving party is insufficient to enable a reasonable jury to return a verdict in [its] favor."[2] Because the City will not have the burden of proof at the trial on Plaintiffs' claims, it can meet its summary

---

[1] See Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-323 (1986).
[2] *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

judgment obligation by pointing the Court to the absence of evidence to support said claims.[3]  If the moving party meets the initial burden of establishing that there is no genuine issue as to any material facts, the burden shifts to the non-moving party to produce evidence of the existence of a genuine issue for trial.[4] However, to avoid summary judgment, the non-movant must go beyond the pleadings and come forward with specific facts indicating a genuine issue for trial.[5]

### B. Plaintiffs' Claims Are Barred for a Lack of Standing

Standing is a prerequisite to federal jurisdiction and cannot be waived. *United States v. Hays*, 515 U.S. 737 (1995). Standing considers the question of who may properly bring suit in federal court, and "involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). The party invoking federal jurisdiction bears the burden of establishing its existence. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 104 (U.S. 1998).

To have standing, an association or organization must satisfy the requirements of *Lujan*. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992). First, the plaintiff must have suffered an "injury in fact" – an invasion of a legally protected interest which is (a) concrete and particularized; and (b) "actual or

---

[3] See Celotex Corp., 477 U.S. at 325
[4] *See Celotex Corp.*, 477 U.S. at 322-323
[5] *See Piazza's Seafood World, L.L.C. v. Odom*, 448 F. 3d 744, 752 (5th Cir. 2006).

imminent, not 'conjectural' or 'hypothetical.'" Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly… trace[able] to the challenged action of the defendant, and not... the result of the independent action of some third party not before the court. Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision." *OCA-Greater Houston v. Texas*, 867 F.3d 604, 610 (5th Cir. 2017); *NAACP v. City of Kyle, Tex.*, 626 F.3d 233, 237 (5th Cir. 2010). An association or organization can establish injury in-fact through either of two theories: (1) "associational standing" is derivative of the standing of the association's members, requiring that they have standing and that the interests the association seeks to protect be germane to its purpose, or (2) "organizational standing" does not depend on the standing of the organization's members, but the organization can establish standing in its own name if it meets the same standing test that applies to individuals. *Id.* Here, the organizational plaintiffs rely on the organizational standing theory as neither individual plaintiff is, nor claims to be, a member of the organizational plaintiffs' organizations.

The organizational plaintiffs' claimed injury-in-fact is the use of resources to educate and encourage the public to vote only to have some of those votes, particularly mail-in ballots, rejected due to the signature comparison procedure. However, none of the organizational plaintiffs in the case at bar is able to provide a single example of a

voter who was a recipient of their outreach efforts that subsequently had a vote rejected due to a signature mismatch. Plaintiffs cite no record evidence of significant, concrete, and identifiable resources that they were required to divert from other uses or any specific projects that they were compelled to forgo as a result of the rejection of Weisfeld's mail-in ballot. *Ass'n of Cmty. Orgs, for Reform Now*, 178 F.3d at 360 (holding organization failed to establish standing where no evidence of any "concrete or identifiable resources that [it] could reallocate to other uses" if the defendant ceased its putatively unlawful conduct adduced); *La. ACORN Fair Housing v. LeBlanc*, 211 F.3d 298, 305 (5th Cir. 2000) (holding organization failed to establish standing where no evidence that it was required to put any "specific projects" on hold or "re-double efforts" in response to the defendant's conduct adduced). If a plaintiff seeks prospective relief, as Plaintiffs do here, "the plaintiff must be suffering a continuing injury or be under a real and immediate threat of being injured in the future." *Tandy v. City of Wichita*, 380 F.3d 1277, 1284 (10th Cir. 2004) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02, 107 n.8 (1983)). A threatened injury must be "'certainly impending' and not merely speculative." *Id*. (internal citation omitted). "Injuries that are contingent upon speculation or conjecture are beyond the bounds of a federal court's jurisdiction." *Id*. (citing *Whitmore v. Arkansas*, 495 U.S. 149, 158, (1990)).

Organizational Plaintiffs concede they did not assist individual Plaintiff Weisfeld in applying for or submitting her ballot by mail. The organizational plaintiffs and Plaintiff Richardson have no other connection to Defendant Lara other than through Plaintiff Weisfeld's claims, which each admits in their respective depositions, attached as Exhibit A. Further, Plaintiff Weisfeld never complained to the City of McAllen nor Perla Lara, City of McAllen, Texas Secretary regarding the disposition of the mail-in ballot about which she complains. *Id.* The broad efforts to educate voters have no relation to Plaintiff Weisfeld or the rejection of her ballot in the 2019 City of McAllen Run-off Election. Organizational Plaintiffs did not establish that they suffered an injury in fact. Their mission was not frustrated and there is no record evidence that they diverted concrete and identifiable resources that would have gone elsewhere in the absence of the signature comparison procedure. Abstract (i.e. conjectural and hypothetical) injuries are insufficient as a matter of law to establish injury in fact and that is all Plaintiffs have offered this Court.

## C. Individual Plaintiffs Lack Requisite Standing under Article III of the United states Constitution

It is well settled that the "irreducible constitutional minimum of standing" in the "case or controversy" requirement, as set forth in Article III of the United States Constitution, has three parts: (1) injury in fact (a *concrete* harm suffered by the plaintiff that is actual or imminent); (2) causation; and (3) redressibility. *Doe v.*

*Nat'l Bd. of Medical Examiners,* 199 F.3d 146, 152 (3d Cir. 1999) (citing *Lujan v.*
*Defenders of Wildlife,* 504 U.S. 555, 560 (1992)).   "Article III judicial power exists
only to redress or otherwise to protect against injury to the complaining party."
*Warth v. Seldin,* 422 U.S. 490, 498-99 (1975).

Different standards apply when a defendant challenges standing on a
Fed.R.Civ.P. 12(b) motion than on a motion for summary judgment under
Fed.R.Civ.P. 56.  *Cramer v. Skinner,* 931 F.2d 1020, 1025 (5th Cir. 1991).  When a
court considers standing on a motion for a Rule 12(b) dismissal, it must accept the
allegations in the pleadings as true.  *Lujan,* 504 U.S. at 563 (1992).  "When the
defendant moves for summary judgment because of lack of standing, however, the
plaintiff must submit affidavits and comparable evidence that indicate that a genuine
issue of fact exists on the standing issue."  *Cramer,* 931 F.2d at 1025.  Therefore, to
demonstrate it has standing to pursue its claim against Defendant Perla Lara in her
capacity as City of McAllen, Texas Secretary, Plaintiff must point to specific
evidence showing that it was "directly affected" or "injured" by Ms. Lara's actions.
*Lujan,* 504 U.S. at 563 (1992) (internal quotation marks omitted).  As will be
discussed in more detail below, Plaintiff cannot do so.  In fact, Plaintiff Weisfeld
testified that she never provided notice to Ms. Lara; without said notice, Ms. Lara
would have no reason or information to exercise her authority to seek relief from a
District Court under the Texas Election Code.  *See* Exhibit A.

**D.  Plaintiffs' alleged causes of action are not supported by facts sufficient to state a claim against Defendant Lara.**

2.6 Plaintiffs' Complaint alleges four separate counts under the Fourteenth Amendment Due Process Clause, Equal Protection Clause and Title II of the Disabilities and Rehabilitation Act. However, the only allegations against Defendant Lara found in the entire Complaint are:

"56. Defendants have not established a procedure for providing voters whose mail-in ballots are rejected because of an illegal signature mismatch pre-rejection notice, an opportunity to be heard, or the ability to cure. …

78. Defendant SOS, as a state agency, and Defendants Brazos EA and McAllen City Secretary, as other political subdivision agencies, are public entities…. The administration of elections and voting, including mail-in ballot voting and the counting of votes, is a service, program or activity provided by Defendants SOS, Brazos EA, and McAllen City Secretary..."

The record is completely devoid of any allegation of wrongdoing on the part of the McAllen City Secretary. Instead, it points to Defendant Lara's adherence to state laws with which Plaintiffs take issue. The facts now made the record in this case substantiate

9

Plaintiffs' legal shortcomings. *See Exhibit A.*

Based on the requested relief, it appears this suit is meant to argue the Texas Election Code violates federal law. The McAllen City Secretary does not have the authority to revise or defend state law. The Texas Attorney General is constitutionally obligated to defend the State regarding a state law and its implementation. Tex. Const. art. IV, § 22. A challenge to constitutionality of a state statute is initiated in federal court, the suit should be brought against **state officials** rather than the state or its agencies. *See McCarthy ex rel. Travis v. Hawkins*, 381 F.3d 407, 412 (5th Cir. 2004)(emphasis added). In matters of litigation, the Attorney General is the officer authorized by law to protect the interests of the state and must exercise judgment and discretion, which will not be controlled by other authorities. *Bullock v. Texas Skating Ass'n*, 583 S.W.2d 888, 894 (Tex. Civ. App. 1979), *writ refused NRE* (Nov. 21, 1979); Charles Scribner's Sons v. Marrs, 114 Tex. 11, 262 S.W. 722, 727 (1924); *Lewright v. Bell*, 94 Tex. 556, 63 S.W. 623 (1901).

Defendant Lara, as the City Secretary for the City of McAllen, Texas has no role in interpreting or litigating the constitutionality of state law. To the extent the Plaintiffs argue that the Texas Election Code violates the U.S. Constitution, Defendant Lara does not have any authority in that legal process. Defendant Lara is not responsible for the interpretation or defense of Texas law, did not draft it, cannot change it, and does not have the authority to defend it. *See generally* Tex. Const. arts.

III, IV, and IX.

The facts now made part of the record in this matter highlight the process by which the Texas Secretary of State regulates and circulates its implementation of the Election Code. *See Exhibit B.*

### E.  Under the Texas Election Code and federal law, the Texas Legislature and Texas Secretary of State are the only parties who can grant Plaintiffs' requested relief.

Under the Texas Election Code, any qualified voter may vote early in person, but only certain persons, including the differently abled, the elderly, and those who will be absent from the county, may vote early by mail. Tex. Elec. Code §§ 82.001-.006. The Election Code further requires the creation of an Early Voting Ballot Board (EVBB) and, in certain circumstances a Signature Verification Committee (SVC) and empowers it to screen early voting ballots. Tex. Elec. Code §§ 87.0001-.003, 87.041.

To vote early by mail, a voter must first apply in writing for a ballot then mail it to the election clerk in an official carrier envelope bearing her signature. Tex. Elec. Code § 86.005. The early voter applications, which require the signature of the voter on both the ballot and the carrier envelope, are statutorily furnished by the Secretary of State. Tex. Elec. Code § 84.013. The EVBB and SVC shall decide whether to accept mailed absentee ballots based on several criteria expressly provided by state statute. Tex. Elec. Code § 87.041. A ballot may only be accepted only if these criteria are met, including "neither the voter's signature on the ballot application nor the signature on

the carrier envelope certificate is determined to have been executed by a person other than the vote, unless signed by a witness…". Tex. Elec. Code § 87.041(b)(2). The EVBB and SVC must act on the basis of the signatures before it and is not expected to contact voters whose signatures do not match, and the code neither requires nor authorizes it to do so. Tex. Elec. Code § 87.041. The board must simply preserve the rejected ballots and notify voters within ten days after the election. Tex. Elec. Code § 87.043, 87.0431.

All of the above-listed requirements and procedures are from the Texas Election Code. The City of McAllen, including the City Secretary's Office, does not promulgate regulations related to mail-in ballots or the manner in which the ballots are evaluated. The Secretary of State has general authority to take appropriate action to protect the voting rights of citizens. Tex. Elec. Code § 31.005.

### F.  Plaintiffs' mischaracterize clear Texas law and are not entitled to the relief they seek.

Plaintiffs, in their motion, mischaracterize the distinct roles of the Early Voting Clerk, and the Early Voting Ballot Board.  Under Texas Law these roles are clear and distinct.  Texas Election Code, Section 87.041 provides:

(a) **The early voting ballot board shall** open each jacket envelope for an early voting ballot voted by mail and determine whether to accept the voter's ballot.

(b) A ballot may be accepted only if:

(1) the carrier envelope certificate is properly executed;

(2) neither the voter's signature on the ballot application nor the signature on the carrier envelope certificate is determined to have been executed by a person other than the voter, unless signed by a witness;

(3) the voter's ballot application states a legal ground for early voting by mail;

(4) the voter is registered to vote, if registration is required by law;

(5) the address to which the ballot was mailed to the voter, as indicated by the application, was outside the voter's county of residence, if the ground for early voting is absence from the county of residence;

(6) for a voter to whom a statement of residence form was required to be sent under Section 86.002(a), the statement of residence is returned in the carrier envelope and indicates that the voter satisfies the residence requirements prescribed by Section 63.0011; and

(7) the address to which the ballot was mailed to the voter is an address that is otherwise required by Sections 84.002 and 86.003.

(c) If a ballot is accepted, the board shall enter the voter's name on the poll list unless the form of the list makes it impracticable to do so. The names of the voters casting ballots by mail shall be listed separately on the poll list from those casting ballots by personal appearance.

(d) A ballot shall be rejected if any requirement prescribed by Subsection (b) is not satisfied. In that case, the board shall indicate the rejection by entering "rejected" on the carrier envelope and on the corresponding jacket envelope.

(e) In making the determination under Subsection (b)(2), **the board** may also compare the signatures with any two or more signatures of the voter made within the preceding six years and on file with the county clerk or voter registrar to determine whether the signatures are those of the voter.

(f) In making the determination under Subsection (b)(2) for a ballot cast under Chapter 101 or 105, **the board shall** compare the signature on the carrier envelope or signature cover sheet with the signature of the voter on the federal postcard application.

(g) A person commits an offense if the person intentionally accepts a ballot for voting or causes a ballot to be accepted for voting that the person knows does not meet the requirements of Subsection (b). An offense under this subsection is a Class A misdemeanor.

Tex. Elec. Code §87.041 (emphasis added).

Therefore, statutorily in Texas it is the EVBB and not the City or Early Voting Clerk that bears responsibility for processing early voting results. The EVBB is presided over by an appointed judge and several other members. Id. At

§87.002(a). Once appointed as provided by Texas Election Code Section 87.002, the Early Voting Ballot Board must take the following oath:

> I swear (or affirm) that I will objectively work to be sure every eligible voter's vote is accepted and counted, and that only the ballots of those voters who violated the Texas Election Code will be rejected. I will make every effort to correctly reflect the voter's intent when it can be clearly determined. I will not work alone when ballots are present and will work only in the presence of a member of a political party different from my own. I will faithfully perform my duty as an officer of the election and guard the purity of the election.

*Id*. at §87.006(a). It is the EVBB, not the Early Voting Clerk, in this case Defendant Lara, that determines it an early vote is cased in accordance with Texas law. *Id*. at §87.0241(a).

Plaintiffs seek relief of this Court imposing on Defendant Lara, discretion that rests soundly with the Texas Secretary of State who is responsible for prescribing the procedures necessary for implementation of the early voting system in Texas. *Id*. at §87.0241(c). Further, Plaintiffs fail to point this court to any authority providing Defendant Lara any discretion to manage or oversee the actions of the EVBB. Again, this authority reses with the EVBB and the Texas Secretary of State.

## IV.  CONCLUSION

For any or all of the foregoing reasons, Defendant Lara prays that the Court deny Plaintiffs' Motion for Summary Judgment, grant Defendant Lara's Motion for Summary Judgment (Dkt. 64) and deny all relief requested by the Plaintiffs against her.

Respectfully submitted,

Kevin D Pagan
City Attorney of McAllen, Texas

/s/ Isaac J Tawil
Isaac Tawil
*Attorney-in-Charge*
State Bar No. 24013605
Federal ID No. 29804
Attorney-in-Charge
Assistant City Attorney
1300 Houston Avenue
McAllen, Texas 78501
Telephone: (956) 681-1090
Facsimile: (956) 681-1099
Email: itawil@mcallen.net

Austin Stevenson
State Bar No. 24085961
Federal ID No. 3157070
Assistant City Attorney
Email: astevenson@mcallen.net

BICKERSTAFF HEATH

DELGADO ACOSTA LLP
3711 South MoPac Expressway
Building One, Suite 300
Austin, Texas 78746
(512) 472-8021 (Telephone)
(512) 320-5638 (Facsimile)

C. Robert Heath
*Local Counsel*
Texas State Bar No. 09347500
bheath@bickerstaff.com

Gunnar P. Seaquist
*Local Counsel*
Texas State Bar No. 24043358
gseaquist@bickerstaff.com

**ATTORNEYS FOR DEFENDANT
CITY OF McALLEN, TEXAS**

## <u>CERTIFICATE OF SERVICE</u>

I certify that that on July 6, 2020 this document was filed electronically via the

Court's CM/ECF system, causing electronic service upon all counsel of record.

<u>/s/ Isaac J Tawil</u>
Isaac Tawil