UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| DR. GEORGE RICHARDSON, ROSALIE WEISFELD, AUSTIN JUSTICE COALITION, COALITION OF TEXANS WITH DISABILITIES, MOVE TEXAS CIVIC FUND, LEAGUE OF WOMEN VOTERS OF TEXAS, and AMERICAN GI FORUM OF TEXAS, INC., | § § § § § § § § § | |
| *Plaintiffs* | § § | |
| v. | § § | Civil Case No. 5:19-cv-00963-OG |
| TEXAS SECRETARY OF STATE, TRUDY HANCOCK, in her official capacity as BRAZOS COUNTY ELECTIONS ADMINISTRATOR, and PERLA LARA in her official capacity as CITY OF MCALLEN, TEXAS SECRETARY, | § § § § § § § | |
| *Defendants.* | § § § | |

**SUPPLEMENTAL APPENDIX OF DEPOSITION TRANSCRIPTS AND EXHIBITS**

**TABLE OF CONTENTS**

1. Transcript of Deposition of Keith Ingram……………………………………………6
    Exhibit 1 ………………………………………………………………133
    Exhibit 2 ………………………………………………………………139
    Exhibit 3 ………………………………………………………………141
    Exhibit 4 ………………………………………………………………142
    Exhibit 5 ………………………………………………………………192
    Exhibit 6 ………………………………………………………………217

2. Transcript of 30(b)(6) Deposition of Texas Secretary of State – Keith Ingram……………………………………………………………..222
    Exhibit 1 ………………………………………………………………324
    Exhibit 2 ………………………………………………………………335
    Exhibit 3 ………………………………………………………………338
    Exhibit 4 ………………………………………………………………339
    Exhibit 5 ………………………………………………………………340

Exhibit 6 ........................................................................341
Exhibit 7 ........................................................................342
Exhibit 8 ........................................................................345
Exhibit 9 ........................................................................346
Exhibit 10 ......................................................................355
Exhibit 11 (Filed Separately Under Seal)...................................357
Exhibit 12 ......................................................................358
Exhibit 13 (Filed Separately Under Seal)...................................403

3.    Transcript of Deposition of Trudy Hancock ............................404
Exhibit 2 ........................................................................553
Exhibit 3 ........................................................................554
Exhibit 4 ........................................................................559
Exhibit 5 ........................................................................560

4.    Transcript of 30(b)(6) Deposition of Brazos County Elections
Administrator – Trudy Hancock............................................561
Exhibit 2 ........................................................................635
Exhibit 4 ........................................................................636
Exhibit 6 ........................................................................637
Exhibit 7 ........................................................................649
Exhibit 8 ........................................................................699
Exhibit 9 ........................................................................703
Exhibit 10 ......................................................................709

5.    Transcript of Deposition of Perla Lara.................................738
Exhibit 1 ........................................................................904
Exhibit 2 ........................................................................910
Exhibit 3 ........................................................................929
Exhibit 4 ......................................................................1043
Exhibit 5 ......................................................................1100
Exhibit 6 ......................................................................1258
Exhibit 7 ......................................................................1327
Exhibit 8 ......................................................................1350

6.    Transcript of 30(b)(6) Deposition of City of McAllen, City
Secretary – Perla Lara    ...............................................1362
Exhibit 1 ......................................................................1446
Exhibit 2 ......................................................................1458
Exhibit 3 ......................................................................1508

7.    Transcript of Expert Witness Deposition of Dr. Linton Mohammed..............1513
Exhibit 1 ......................................................................1610
Exhibit 2 ......................................................................1613
Exhibit 3 ......................................................................1670

8.    Transcript of Deposition of Dr. George Richardson ……………………………...1705
            Exhibit 1 ………………………………………………………………1760
            Exhibit 2 ………………………………………………………………1763
            Exhibit 3 ………………………………………………………………1764
            Exhibit 4 ………………………………………………………………1766
            Exhibit 5 ………………………………………………………………1767
            Exhibit 6 ………………………………………………………………1768
            Exhibit 7 ………………………………………………………………1769
            Exhibit 8 ………………………………………………………………1775

9.    Transcript of Deposition of Rosalie Weisfeld……………………………………1789
            Exhibit 1 ………………………………………………………………1874
            Exhibit 2 ………………………………………………………………1877
            Exhibit 3 ………………………………………………………………1878
            Exhibit 4 ………………………………………………………………1880
            Exhibit 5 ………………………………………………………………1881
            Exhibit 6 ………………………………………………………………1910
            Exhibit 7 ………………………………………………………………1924
            Exhibit 8 ………………………………………………………………1925
            Exhibit 9 ………………………………………………………………1930
            Exhibit 10 ……………………………………………………………1932
            Exhibit 11 ……………………………………………………………1934

10.   Transcript of 30(b)(6) Deposition of Austin Justice Coalition –
      Larissa Rodionov……………………………………………………………1984
            Exhibit 1 ………………………………………………………………2057
            Exhibit 2 ………………………………………………………………2064
            Exhibit 3 (Filed Separately Under Seal)………………………………2093
            Exhibit 4 ………………………………………………………………2094
            Exhibit 5 (Filed Separately Under Seal)………………………………2106
            Exhibit 6 ………………………………………………………………2107
            Exhibit 7 ………………………………………………………………2109

11.   Transcript of 30(b)(6) Deposition of Coalition of Texans with
      Disabilities – Chase Bearden…………………………………………………...2111
            Exhibit 1 ………………………………………………………………2192
            Exhibit 2 ………………………………………………………………2199
            Exhibit 3 ………………………………………………………………2228
            Exhibit 4 (Filed Separately Under Seal)  ……………………………2232
            Exhibit 5 ………………………………………………………………2233

12.   Transcript of 30(b)(6) Deposition of League of Women Voters of
      Texas – Grace Chimene …………………………………………………………2235
            Exhibit 1 ………………………………………………………………2354
            Exhibit 2 ………………………………………………………………2361
            Exhibit 3 (Filed Separately Under Seal)………………………………2390

Exhibit 4 .........................................................................2391
Exhibit 5 .........................................................................2394
Exhibit 6 (Filed Separately Under Seal)....................................2396
Exhibit 7 .........................................................................2397
Exhibit 8 .........................................................................2400
Exhibit 9 .........................................................................2424
Exhibit 10 (Filed Separately Under Seal)...................................2448
Exhibit 11 (Erroneously stamped "Exhibit 10") ...........................2449
Exhibit 12 (Filed Separately Under Seal)...................................2454
Exhibit 13 (Filed Separately Under Seal) ...................................2455

13. Transcript of 30(b)(6) Deposition of MOVE Texas Civic Fund –
    Drew Galloway    .........................................................................2456
         Exhibit 1 .........................................................................2517
         Exhibit 2 .........................................................................2524
         Exhibit 3(Filed Separately Under Seal)....................................2553
         Exhibit 4 .........................................................................2554
         Exhibit 5 .........................................................................2558

Dated: July 30, 2020                      Respectfully submitted,

/s/  Ryan Cox

**TEXAS CIVIL RIGHTS PROJECT**

Mimi M.D. Marziani
Texas Bar No. 24091906
mimi@texascivilrightsproject.org
Hani Mirza
Texas Bar No. 24083512
hani@texascivilrightsproject.org
Ryan V. Cox
Texas Bar No. 24074087
ryan@texascivilrightsproject.org
Zachary D. Dolling
Texas Bar No. 24105809
zachary@texascivilrightsproject.org

1405 Montopolis Drive
Austin, Texas 78741
512-474-5073 (Telephone)
512-474-0726 (Facsimile)

**WILLKIE FARR & GALLAGHER LLP**

Richard Mancino (NY Bar No. 1852797)
Samuel Kalar (NY Bar No. 5360995)
JoAnna Suriani (NY Bar No. 5706395)

787 Seventh Avenue
New York, New York 10019
Telephone: (212) 728-8000
Facsimile: (212) 728-8111
Email: rmancino@willkie.com
        skalar@willkie.com
        jsuriani@willkie.com

-AND-

Jennifer J. Hardy (TX Bar No. 24096068)
Denis A. Fallon (TX Bar No. 24059731)
Garrett Johnston (TX Bar No. 24087812)
Audra White (TX Bar No. 24098608)

600 Travis Street, Suite 2100
Houston, Texas 77002
Telephone: (713) 510-1700
Facsimile: (713) 510-1799
Email: jhardy2@willkie.com
        afallon@willkie.com
        gjohnston@willkie.com
        awhite@willkie.com

***COUNSEL FOR PLAINTIFFS***

## CERTIFICATE OF SERVICE

By my signature below, I certify that a true and correct copy of the foregoing has been served on all counsel of record on July 30, 2020 through the Electronic Case File System of the Western District of Texas.

/s/  Ryan Cox
_____

RICHARDSON: BRIAN KEITH INGRAM

Page 1

```
 1              UNITED STATES DISTRICT COURT
                WESTERN DISTRICT OF TEXAS
 2                SAN ANTONIO DIVISION

 3   DR. GEORGE RICHARDSON;          )
     ROSALIE WEISFELD; AUSTIN JUSTICE )
 4   COALITION; COALITION OF TEXANS  )
     WITH DISABILITIES; MOVE TEXAS   )
 5   CIVIC FUND; LEAGUE OF WOMEN     )
     VOTERS OF TEXAS; and AMERICAN GI )
 6   FORUM OF TEXAS, INC.,           )
                                     )
 7         Plaintiffs,               )
                                     )Civil Case No.
 8   v.                              )5:19-cv-00963-OLG
                                     )
 9   TEXAS SECRETARY OF STATE; TRUDY )
     HANCOCK, in her official        )
10   capacity as BRAZOS COUNTY       )
     ELECTIONS ADMINISTRATOR; and    )
11   PERLA LARA, in her official     )
     capacity as CITY OF McALLEN,    )
12   TEXAS, SECRETARY,               )
                                     )
13         Defendants.               )
```

**CERTIFIED TRANSCRIPT**

```
14         *********************************
               REMOTE VIDEOTAPED DEPOSITION OF
15                  BRIAN KEITH INGRAM
                      May 11, 2020
16         *********************************

17         REMOTE VIDEOTAPED DEPOSITION OF BRIAN KEITH

18    INGRAM, produced as a witness at the instance of

19    the Plaintiffs, and duly sworn, was taken in the

20    above-styled and numbered cause on May 11, 2020,

21    from 9:32 a.m. to 12:38 p.m., remotely before

22    Rebecca A. Graziano, CSR, RPR, CRR, in and for the

23    State of Texas, reported by machine shorthand,

24    pursuant to the Federal Rules of Civil Procedure

25    and the provisions stated on the record.
```

RICHARDSON: BRIAN KEITH INGRAM

Page 2

```
 1              A P P E A R A N C E S

 2

 3    REPRESENTING THE PLAINTIFFS:

 4    Mr. Hani Mirza (via videoconference)
      Mr. Ryan Cox (via videoconference)
 5    Mr. Zachary D. Dolling (via videoconference)
      TEXAS CIVIL RIGHTS PROJECT
 6    1405 Montopolis Drive
      Austin, Texas  78741
 7    (512) 474-5073
      hani@texascivilrightsproject.org
 8    ryan@texascivilrightsproject.org
      zachary@texascivilrightsproject.org
 9
            and
10
      Mr. Samuel Kalar (via videoconference)
11    Ms. Joanna Suriani (via videoconference)
      WILLKIE FARR & GALLAGHER, LLP
12    787 Seventh Avenue
      New York City, New York  10019
13    (212) 728-8000
      skalar@willkie.com
14    jsuriani@willkie.com

15
      REPRESENTING THE DEFENDANT, TEXAS SECRETARY OF
16    STATE:

17    Ms. Anna Mackin (via videoconference)
      OFFICE OF THE ATTORNEY GENERAL
18    300 West 15th Street
      Austin, Texas  78701
19    (512) 463-2100
      anna.mackin@texasattorneygeneral.gov
20
      REPRESENTING THE DEFENDANT, TRUDY HANCOCK, in her
21    official capacity as BRAZOS COUNTY ELECTIONS
      ADMINISTRATOR:
22
      Mr. J. Eric Magee (via videoconference)
23    ALLISON, BASS & MAGEE, LLP
      402 West 12th Street
24    Austin, Texas  78701
      (512) 482-0701
25    e.magee@allison-bass.com
```



RICHARDSON: BRIAN KEITH INGRAM

Page 3

1                    A P P E A R A N C E S

2

3   REPRESENTING THE DEFENDANT, PERLA LARA, in her
    official capacity as CITY OF McALLEN, TEXAS,
4   SECRETARY:

5     Mr. Isaac J. Tawil (via videoconference)
      Mr. Austin W. Stevenson (via videoconference)
6     CITY OF McALLEN CITY ATTORNEY'S OFFICE
      1300 Houston Avenue, Second Floor
7     McAllen, Texas  78501
      (956) 681-3111
8     itawil@mcallen.net
      astevenson@mcallen.net

9

10  VIDEOCONFERENCE TECHNICIAN:

11    Ms. Maygun Flanagan

12

13

14

15

16

17

18

19

20

21

22

23

24

25

RICHARDSON: BRIAN KEITH INGRAM

```
                                                          Page 4
 1                          INDEX
                                                          PAGE
 2

 3     EXAMINATION BY MR. MIRZA.........................  7

 4

 5                         EXHIBITS

 6    NUMBER            DESCRIPTION                       PAGE

 7    Exhibit 1         Notice of Deposition................ 11

 8    Exhibit 2         Application for Ballot by Mail....... 33

 9    Exhibit 3         Carrier Envelope; Bates

10                      WEISFELD-00000002.................... 35

11    Exhibit 4         Early Voting Ballot Board &

12                      Signature Verification Committee

13                      Handbook for Election Judges and

14                      Clerks, 2020; Bates SOS_000428

15                      through 000477...................... 58

16    Exhibit 5         Election Inspector Handbook; Bates

17                      SOS_001005 through 001029........... 69

18    Exhibit 6         Email with Election Advisory

19                      Attachment; Bates SOS_000737

20                      through 000741...................... 84

21

22

23

24

25
```

hg

RICHARDSON: BRIAN KEITH INGRAM

```
1              PROCEEDINGS
2         (On the record at 9:32 a.m.)
3         THE VIDEOGRAPHER:  We are going on
4    the video record.  Today is May 11th,
5    2020.  The time is approximately 9:32 a.m.
6         The civil action number is
7    5:19-cv-00963-OLG in the matter of
8    Dr. George Richardson, et al., versus
9    Texas Secretary of State.  The deponent is
10   Keith Ingram.  The video deposition is
11   requested by the plaintiffs' counsel,
12   Texas Civil Rights Project, Austin.
13        My name is Maygun Flanagan.  I'm
14   the videographer.  The court reporter
15   today is Becky Graziano.  We are both
16   representing HG Litigation Services.
17        Would counsel like to state their
18   appearances on the record or transcript?
19        MR. MIRZA:  On the record works.
20        My name is Hani Mirza.  I'm
21   representing the plaintiffs in this case.
22        MR. COX:  Ryan Cox, also on behalf
23   of plaintiffs.
24        MS. MACKIN:  Anna Mackin with the
25   Texas Attorney General's office on behalf
```

**hg**

RICHARDSON: BRIAN KEITH INGRAM

Page 6

```
 1        of the defendants.
 2             MR. TAWIL:  Isaac Tawil
 3        representing Perla Lara in her capacity as
 4        city secretary of the City of McAllen.
 5             MS. MACKIN:  And I'm sorry.  Let me
 6        clarify.  On behalf of defendant -- this
 7        is Anna Mackin on behalf of defendant Ruth
 8        Hughs in her official capacity as
 9        Secretary of State of Texas.
10             MR. MAGEE:  And this is Eric Magee
11        on behalf of defendant Trudy Hancock in
12        her official capacity as the Brazos County
13        elections administrator.
14             MR. KALAR:  And also for
15        plaintiffs, Samuel Kalar with the law firm
16        Willkie Farr & Gallagher.
17             MS. SURIANI:  I'm Joanna Suriani of
18        the law firm Willkie Farr & Gallagher,
19        also on behalf of plaintiffs.
20             THE VIDEOGRAPHER:  Okay.  The
21        deponent may now be sworn in.
22           (Witness duly sworn.)
23                BRIAN KEITH INGRAM,
24     being first duly sworn, testified as follows:
25
```



RICHARDSON: BRIAN KEITH INGRAM

1      EXAMINATION

2   BY MR. MIRZA:

3    Q     Good morning, Mr. Ingram.  Can you hear

4   me?

5    A     Yes.

6    Q     Okay.  My name is Hani Mirza, as I stated

7   a few moments before.  I'm an attorney

8   representing the plaintiffs in this case, and I'll

9   be taking your deposition today.

10          To start things off, please state and

11   spell your full name.

12    A     My name is Brian Keith Ingram, B-r-i-a-n,

13   K-e-i-t-h, I-n-g-r-a-m.

14    Q     I'd like to go over a few general rules to

15   make sure we're both on the same page.

16          Have you ever been deposed before?

17    A     I have.

18    Q     Can you state how many times you've been

19   deposed?

20    A     I'm not really sure.  Quite a few.  Ten,

21   eight, eleven.  Somewhere in that neighborhood.

22    Q     Okay.  Okay.  In addition to being

23   videotaped, my questions and your answers are

24   being recorded by a court reporter.  Because of

25   this, I'm going to ask that you give verbal

RICHARDSON: BRIAN KEITH INGRAM

Page 8

1   answers so that the record is accurate.  The court
2   reporter cannot record a nod or a head shake.
3           Does that make sense?
4   A    It does.
5   Q    Okay.  And just going back a little bit,
6   for the deposition -- the times you've been
7   deposed, was it always in your capacity as the
8   director of elections with the Secretary of State?
9   A    Yes.  All of my depositions have been
10  since January of 2012, when I began this job.
11  Q    Okay.  It is also important that you --
12  A    All of my depositions -- let me clarify.
13          All the depositions that I've given.
14  I took a whole bunch of depositions when I was
15  practicing law.
16  Q    Okay.  Thank you.
17          It's also important that you speak
18  clearly and say "yes" or "no" instead of "uh-huh"
19  or "huh-uh."  Will you do that?
20  A    I will.
21  Q    Okay.  Especially given that we are
22  conducting this deposition via videoconference, it
23  is very important that we don't talk over each
24  other.  Will you try to wait until I finish a
25  question before you answer?

**hg**

1  A      I will.

2  Q      And will you let me know if you ever don't

3  understand my question?

4  A      Yes.

5  Q      Will you also let me know right away if

6  you have any technical difficulties or if you

7  can't hear me?

8  A      Yes.

9  Q      Okay.  We are looking for full and

10  complete answers to the questions I'm going to ask

11  you.  Do you understand?

12  A      Yes.

13  Q      Okay.  And sometimes it happens that you

14  will give an answer as completely as you can, and

15  then later on, maybe five minutes later or maybe

16  two hours later, you remember some additional

17  information or perhaps some clarification in

18  response to that earlier question.  If that

19  happens, please tell me that you would like to add

20  something to your earlier answer, and we will do

21  that then while it is on your mind.

22        Will you do that?

23  A      Absolutely.

24  Q      It also may occur to you that a previous

25  answer was not completely accurate.  If that

RICHARDSON: BRIAN KEITH INGRAM

Page 10

```
1   happens, will you tell me and make any
2   necessary -- any necessary corrections to your
3   answers?
4    A      Yes.
5    Q      You are under oath today and are required
6   to testify truthfully, the same as if you were
7   testifying in court; do you understand?
8    A      I do.
9    Q      Is there any reason you cannot give
10  complete and truthful testimony today?
11   A      No, sir.
12   Q      We will try to take breaks throughout the
13  testimony today, but if you need to take a break
14  at any time for any reason, please tell me.  The
15  only time we will not take a break is if you have
16  already been asked a question and you have yet to
17  answer or are in the middle of your answer; is
18  that fair?
19   A      Well, sure.
20   Q      Okay.  Okay.  I'm going to try to test out
21  the document system right now just to make sure
22  that it's easy for you to access and review the
23  documents that I'd like to show you during the
24  deposition.  So let me just...
25              Okay.  I'm going to send you a link to
```

RICHARDSON: BRIAN KEITH INGRAM

Page 11

1    a document through the chat.  And I'd like to mark

2    this document titled "Plaintiffs' First

3    Amendment -- Amended Notice of Videotaped Oral

4    Deposition of Keith Ingram" as Exhibit 1.

5              (Exhibit 1 marked.)

6    BY MR. MIRZA:

7     Q      Mr. Ingram, were you able to open that

8    document and access it?

9     A      Yes.  I'm looking at it right now.

10    Q      Okay.  Do you recognize this document?

11    A      I do.

12    Q      Okay.  Okay.  And it is your notice of

13    this deposition; correct?

14    A      That's correct.

15    Q      Okay.  For the times you've been deposed

16    before, what was the nature of the matters you

17    were deposed on?

18    A      Oh, goodness.  So I've been deposed in

19    voter ID several times; I've been deposed in an

20    Edwards [audio interference] case; I've been

21    deposed in a lawsuit that was filed because of our

22    Death Master File list maintenance activity that

23    we did in 2012; and then the previous litigation

24    in -- the NVRA in Stringer, and then in the

25    current Stringer case.  So it's been a variety of

**hg**

RICHARDSON: BRIAN KEITH INGRAM

Page 12

1  election-related lawsuits.

2  Q      Okay.  Have you ever been a plaintiff or a

3  defendant in a lawsuit before?

4  A      You mean personally sued or been sued?

5  Q      Yes, yeah.

6  A      I have been sued in my personal capacity I

7  think once.  Maybe twice.

8  Q      Okay.  And what did those lawsuits

9  involve?

10  A      One of them was a candidate -- I don't

11  remember if I was named in this one or just

12  Christina.  But there was a candidate whose

13  application was rejected to -- she wanted to run

14  for governor, and she sued us, per se.

15             And then there was another case where

16  we had been requested by the Presidential

17  Commission on Election Administration to furnish

18  some documents regarding vote -- voters, and the

19  League of Women Voters sued Secretary Pablos and I

20  personally as well as in our official capacity.

21  Q      Okay.  Have you ever been subject to any

22  professional disciplinary action?

23  A      I have not.  I did have a complaint filed

24  on me by an unhappy person.  It was summarily

25  rejected by the bar.

RICHARDSON: BRIAN KEITH INGRAM

Page 13

1   **Q      Okay.  What did you do to prepare for**
2   **today's deposition?**
3    A      I read the two depo notices, this one and
4   the one that's coming later this afternoon; and I
5   read the discovery answers in the case, the
6   requests for production answers, the
7   interrogatories, and requests for admissions.  I
8   reviewed the early voting ballot board handbook,
9   and then I also reviewed some information that we
10  give the counties about vote history and
11  ballot-by-mail codes so that I would be up to
12  speed on the -- one of the document requests for
13  later this afternoon -- or not document requests.
14  Subject matter requests.
15   **Q      Did you have any meetings with anyone to**
16  **prepare for today's deposition?**
17   A      Yes.  I did meet with my lawyer twice, and
18  I also talked to my voter registration manager
19  this morning.
20   **Q      Okay.  And what is that person's name?**
21   A      Kristi Hart.
22   **Q      Okay.  And the meeting you had this**
23  **morning with your voter registration manager, what**
24  **did you discuss?**
25   A      It was about the ballot-by-mail and vote



RICHARDSON: BRIAN KEITH INGRAM

Page 14

1   history, what we keep in TEAM, and that's when she

2   sent me the documents that I reviewed.

3   **Q      And how long did each of these meetings**

4   **last?**

5   A      The phone call this morning lasted about

6   3 minutes.  Meetings with attorneys, I probably

7   had an hour meeting the first time and maybe

8   30 minutes the second time.

9   **Q      So approximately how many hours in total**

10  **did you spend preparing for the deposition?**

11  A      Including those meetings, three hours,

12  four hours.

13  **Q      And I think you mentioned some documents**

14  **already, specifically the early voting ballot**

15  **board handbook, but did you review any other**

16  **documents in preparation for today's deposition?**

17  A      Yes.  I told you already.

18  **Q      So the interrogatories -- well, anything**

19  **else than the interrogatories, the notices, and**

20  **the early voting board -- ballot board handbook?**

21  A      Yes.  What I listed before.

22  **Q      Can you relist them?**

23  A      So I looked at the ballot board handbook.

24  I looked at the vote history.  I don't know.  I

25  guess you'd call it mini-manual for counties and a

**hg**

Page 15

1 summary of ballot-by-mail activities.  So those

2 are two different documents from this morning.  Of

3 course, both depo notices, my discovery answers.

4 **Q     Okay.**

5 A     I have an email from Travis County to our

6 office that Caroline Geppert was talking

7 to -- what was her name? -- Parker, Michelle

8 Parker.  And then I've got an email that I sent to

9 a disgruntled voter ID person.

10 **Q     Okay.  And that email you sent,**

11 **when -- was this sent recently, or was it sent --**

12 A     Oh, no.  No, it was back in 2013.

13 **Q     Okay.  Okay.  What is your educational**

14 **background?**

15 A     Well, I went to elementary school, started

16 in Odessa, Texas, at San Jacinto Elementary, and

17 then I went to Austin Elementary for fourth grade.

18 In fifth grade, my parents and our family, we

19 moved to Algeria, North Africa, so I went to the

20 Bechtel school.  It was -- Bechtel was a

21 construction corporation.  And they had a school

22 for expatriates, and so I went there for fifth and

23 sixth grade.

24          In seventh, eighth, and ninth grade, I

25 went to the International School at Bethioua --

**hg**

RICHARDSON: BRIAN KEITH INGRAM

1    "Beth"-i-o-u-a is how you spell that -- Algeria.

2    And then in tenth, eleventh, and twelfth grade, I

3    was back in Odessa at the Permian Basin Christian

4    School, where I graduated valedictorian in 1985.

5              I went to Texas A&M University,

6    graduated magna cum laude in political science in

7    1989, and then I went to UT law school, graduated

8    with honors in 1993.

9    **Q      Do you currently hold any professional**

10   **designations or certifications?**

11   A      I'm a doctor of jurisprudence.

12   **Q      Okay.  Any others -- certifications?**

13   A      No.  I'm not -- I'm not board-certified in

14   any area.

15   **Q      Okay.  So your current position with the**

16   **Secretary of State is director of elections;**

17   **correct?**

18   A      It is.

19   **Q      When did you start this position?**

20   A      January 5th, 2012.

21   **Q      How did you come to be director of**

22   **elections?**

23   A      Well, I was hired.

24   **Q      Did you -- did you apply for the position?**

25   A      I did.

**hg**

RICHARDSON: BRIAN KEITH INGRAM

Page 17

1   **Q       What qualifications were required for the**
2   **job of a director of elections when you applied?**
3   A       Well, they preferred an attorney.  They
4   needed somebody who was familiar with the
5   legislative process.  They needed somebody who
6   could manage people.  Those are probably the main
7   qualifications.
8   **Q       What are your responsibilities as director**
9   **of elections?**
10  A       Well, the Secretary of State is the chief
11  election officer for the State of Texas, and the
12  legislature specifically and statute provided for
13  her to have a division of her office that will
14  help her fulfill that responsibility, and I am the
15  director of that division.
16  **Q       And I guess what are your specific**
17  **responsibilities, day-to-day responsibilities?**
18  A       Well, our job is to obtain and maintain
19  uniformity in the interpretation, application, and
20  operation of the election code and election laws
21  outside of the election code, and we do that by
22  assisting and advising election officials across
23  the state.  So we assist and advise, and we -- so
24  we answer questions, basically, from election
25  officials.  We answer questions from the voting

**hg**

RICHARDSON: BRIAN KEITH INGRAM

Page 18

1  public as well.  And we send out advisories and

2  directives regarding election law, and we do

3  training on a regular basis of election officials.

4   Q     Does your office also create forms?

5   A     We do.

6   Q     Is there anything else that you and your

7  office does that we might have missed?

8   A     Oh, I'm sure there's a lot of other

9  things.  We assist with the legislative process.

10  We're always available as a resource witness to

11  legislators as they craft bills to change policy.

12  We are -- we're available to help them -- guide

13  them to accomplish what they want to accomplish or

14  explain pitfalls if they are interested in hearing

15  them.

16   Q     Who do you report to?

17   A     The deputy secretary of state, Joe

18  Esparza, and of course the secretary and of course

19  the governor.

20   Q     Anyone else?

21   A     No.

22   Q     Who reports -- who do you supervise?

23   A     My immediate reports are three managers in

24  my division.  I've got Kristi Hart, who is the

25  manager for voter registration and administration.

RICHARDSON: BRIAN KEITH INGRAM

Page 19

1    I've got Dan Glotzer, who is the manager over

2    election funds, and then I've got Christina

3    Adkins, who's the legal director.  So she manages

4    the attorneys and legal team.  Those are my direct

5    reports, and then I indirectly manage the people

6    in those various sections.

7    **Q     Okay.  Prior to your current job, where**

8    **did you work?**

9    A     Prior to my current job, I was at the

10   governor's office.

11   **Q     What was your position?**

12   A     I was an appointments manager for

13   Governor Perry for four years.

14   **Q     What were your responsibilities in that**

15   **position?**

16   A     My portfolio of appointments was generally

17   judicial appointments.  So any time there was a

18   vacancy in a district or appellate court, I would

19   assist the governor with filling those vacancies

20   until the next election.  We also -- I also worked

21   on any other lawyer-related appointments, so the

22   judicial council and that sort of thing.  And then

23   I had a -- just a hodgepodge of other boards that

24   were mine:  The fitters and dispensers of hearing

25   instruments, the physical therapy board, the

**hg**

RICHARDSON: BRIAN KEITH INGRAM

Page 20

1   occupational therapy board.  Just a variety of

2   boards that I helped find folks for.

**3   Q     And why did you leave that position and**

**4   become director of elections?**

5   A     Well, the appointments job is sort of

6   governor-specific, and so it's not something that

7   you can do forever.  And then, of course, the

8   elections director position, I knew the previous

9   director and had visited with her quite a bit in

10  my role as appointments manager any time we had a

11  question of election law.  And so I knew that the

12  job was interesting and challenging, and I felt

13  like it would be a good opportunity for me to

14  learn an area of law -- because my previous

15  litigation background was primarily in medical

16  malpractice, and the tort reform bill of 2003

17  basically put a halt to that.  So I needed to

18  learn a new area of law, and this seemed like a

19  good and interesting one to do.

**20  Q     And so you previously mentioned the**

**21  responsibilities of the director of elections.  Is**

**22  anyone else responsibility -- is anyone else**

**23  responsible for the responsibilities that you**

**24  mentioned?**

25          MS. MACKIN:  Objection; form.



Page 21

1          You can answer if you understand.

2          THE WITNESS:  Yeah, I don't know

3    what that means.

4  BY MR. MIRZA:

5    **Q      Okay.**

6    A      I'm the only one that does my job.

7    **Q      Okay.  And how does your office receive**

8  **funding?**

9    A      General revenue from the legislature,

10  legislative appropriation requests.

11   **Q      Do you have any involvement in that**

12  **process?**

13   A      Yes.

14   **Q      Can you explain that involvement?**

15   A      Well, I help with the drafting of the

16  legislative appropriation requests and -- and then

17  I am available to testify if the legislature has

18  any questions that they want to ask about our

19  particular requests.  And then obviously, there's

20  quite a few phone calls with the legislative

21  budget board and meetings with the legislative

22  budget board about our requests, and, you know,

23  then we talk to staffers in the legislature about

24  the requests.

25   **Q      Do you know, off the top of your head,**

Page 22

1    your office's annual budget?

2     A      No.  It varies.  Even-numbered years, it

3    was quite a bit more than odd-numbered years.

4     Q      **What training did you receive when you**

5    **became the director of elections?**

6     A      I did not receive any training.

7     Q      **And does your staff receive any training?**

8     A      Yes.  We've got training programs for the

9    different positions, and then, of course, we

10   cross-train so that people can fill each other's

11   roles when necessary.

12    Q      **Has anybody in your staff had training**

13   **specific to mail-in ballots since you became**

14   **director of elections?**

15    A      No.  That's not how we train.

16    Q      **Can you explain how you-all train?**

17    A      So the thing about our work is that you

18   can deal with the education code one second and

19   then be dealing with the water code the next and

20   then some sort of special law district the next.

21   So you have to be able to correctly think about

22   the issue being presented and what additional

23   information you're going to need in order to

24   research an answer to the question, and then

25   you're going to have to research an answer.  So

**hg**

RICHARDSON: BRIAN KEITH INGRAM

Page 23

1   you have to be flexible with regard to the

2   questions that are presented and your approach to

3   them.

4           And so you have to -- you know, what

5   the training involves is sort of getting the

6   lawyers used to asking the next questions, because

7   most of the questions that we get are nuanced, and

8   the people who are asking us the questions don't

9   understand how nuanced the question is, and so

10  they leave out information.  And so the lawyer has

11  to be aware of the fact that they might need

12  additional information than that which is

13  initially presented, and then they have to ask

14  those questions and then, if you feel like you

15  still are missing something, to be very ready to

16  ask the other lawyers for assistance and to engage

17  in a conversation with the rest of us so that

18  institutional knowledge can be transmitted

19  appropriately.

20  **Q     And you mentioned earlier that the**

21  **Secretary of State is the chief elections officer**

22  **for elections in Texas.**

23  A     The Secretary of State has the role of

24  chief election officer, yes.

25  **Q       And what kind of duties does the chief**



RICHARDSON: BRIAN KEITH INGRAM

Page 24

1  election officer have?

2   A      Oh, I thought we answered this already.

3          She has to obtain and maintain

4  uniformity in the interpretation, application, and

5  operation of the election code and election laws

6  outside of the election code.  She has to host a

7  1-800 number for the public to answer -- to field

8  questions from the public, and she has to assist

9  and advise election officials in their duties

10 through the advisories and training materials and

11 forms.  We have to prescribe official forms.

12  Q      And does the Secretary of State

13 follow -- wait.  Hold on.

14         Are there regulations developed for

15 the Secretary of State to follow with regard to

16 elections?

17  A      I have no idea what that means.

18         MS. MACKIN:  Objection; form.

19 BY MR. MIRZA:

20  Q      Are there rules and regulations created

21 pertaining to elections in Texas?

22  A      I don't know what that means.  What are

23 you trying to ask?

24  Q      I'll come back to that section.

25         So does the SOS develop procedures for

RICHARDSON: BRIAN KEITH INGRAM

Page 25

1   **counties to follow with regard to elections?**

2    A     So like I said, we have the role of

3   assisting and advising election officials in

4   conducting elections; and so that means that we

5   will prescribe forms for them to use, that we will

6   issue advisories regarding different subject

7   matters, and that we will send out mass emails

8   regarding a particular subject matter, and that we

9   will issue trainings -- either Webex or in-person

10   trainings -- on particular matters.

11   **Q     So these advisories, are local election**

12   **officials required to follow these advisories?**

13    A     We don't have any enforcement power.

14   We're -- we can't make people do anything.

15   They're not required to follow anything.  They --

16   we give them advice, we give them assistance.

17   Generally they follow it because they believe that

18   if they do so, they will be doing their job

19   correctly.

20   **Q     And have you encountered local election**

21   **officials who don't follow your advisories?**

22    A     Yes.

23   **Q     Can the Secretary of State take any action**

24   **against those local officials?**

25    A     Generally no.  31.005 is a narrow



RICHARDSON: BRIAN KEITH INGRAM

Page 26

1   exception to that rule that we can involve the

2   Attorney General if voting rights are being abused

3   by a local election official.

4   **Q      Okay.  Do you ever look to other states or**

5   **jurisdictions to develop the guidance you provide**

6   **to local election officials?**

7   A      Well, I'm a member of the National

8   Association of State Election Directors and

9   currently the immediate past president of that

10  organization, and we get together twice a year to

11  cross-pollinate with regard to best practices.

12  And so yes, I definitely take that knowledge into

13  account whenever we're developing materials here

14  in Texas.

15  **Q      What is your familiarity with the Texas**

16  **Election Code?  How familiar are you with it?**

17  A      I'm pretty familiar with it.

18  **Q      Have you read the code?**

19  A      I have never read it word for word

20  straight through, no.

21  **Q      Since you became the director of**

22  **elections, what questions have you been -- have**

23  **you been asked about the mail-in ballot signature**

24  **comparison procedure?**

25  A      Just -- from anywhere?

RICHARDSON: BRIAN KEITH INGRAM

Page 27

1   Q      Yeah.  Well, let's start with from local
2   elections officials.
3   A      So when you say "local election
4   officials," do you mean ballot board members, or
5   do you mean city secretaries?  Do you mean school
6   district secretaries?  What do you mean, "local
7   election officials"?
8   Q      So all local election officials:  Early
9   voting clerks, ballot board members, signature
10  verification committee members.
11  A      It's just way too broad a question.  You
12  know, we get asked about how you appoint members
13  to the ballot board, who gets to appoint the
14  members, how many members there should be, what
15  constitutes a majority.  We get -- we get asked,
16  you know, what are the proper procedures for
17  processing mail ballots when they return.  We get
18  asked specific questions about, you know, if a
19  witness signed the application and the voter
20  signed the ballot carrier envelope, what do we do.
21         We get asked all kinds of questions.
22  I mean, I don't really know how to -- how to
23  narrow that down to an answer that wouldn't take
24  three days.
25  Q      So I guess -- and you can answer this



RICHARDSON: BRIAN KEITH INGRAM

Page 28

```
 1    generally, but I guess what I'm asking is:  Do you
 2    get any questions about the specific procedure --
 3    the signature comparison procedure specifically?
 4    A      Sometimes.  It's not the most
 5    often-occurring question, but it does happen, yes.
 6    Q      And what kind of questions do you get?
 7    A      Well, you know, they want to know what the
 8    standard is.  Usually the question involves a
 9    situation where they had somebody else sign the
10    carrier envelope as a witness and they signed the
11    application, so there's not a -- there's not
12    signatures to compare and they want to know what
13    to do in that situation.  You know, especially
14    in -- on election day in smaller counties where
15    the ballot board is meeting, those are the kind of
16    questions that we usually get because they haven't
17    encountered that very often and so they
18    don't -- they don't know what to do with it.
19    Q      And you listed -- you listed your
20    responsibilities previously.  Are there any
21    responsibilities with regard to mail-in voting
22    that you have that you might not have listed?
23            MS. MACKIN:  Objection; form.
24            THE WITNESS:  It's the same as our
25        responsibility with all of it.  We assist
```

RICHARDSON: BRIAN KEITH INGRAM

Page 29

1       and advise and we train.  We issue
2       advisories and the mass emails and
3       directives.
4   BY MR. MIRZA:
5    Q      Okay.  And what forms does the Secretary
6   of State prescribe related to mail-in
7   voting -- mail-in voting?
8    A      Oh, my God.  Okay.  We prescribe an
9   application for a ballot-by-mail.  We prescribe --
10  let me just go get the list.  It's on our forms
11  page.
12              The envelope, the carrier envelope,
13  the secrecy envelope.  The application for
14  ballot-by-mail, the confidentiality voter
15  registration form and early voting ballot
16  application, the federal postcard application
17  checklist, the sample letter email to accompany
18  the list of application for ballot-by-mail voters
19  whenever somebody in one early voting clerk's
20  office is sending it to another entity in that
21  county.
22              We prescribe a notice of rejected
23  application for ballot-by-mail, a notice of
24  improper delivery, a request for an updated annual
25  application for ballot-by-mail, a request to

**hg**

RICHARDSON: BRIAN KEITH INGRAM

Page 30

```
1    cancel the application for ballot-by-mail, a
2    notice of denial of request to cancel an
3    application for ballot-by-mail.
4              We prescribe the ballot envelope; the
5    carrier envelope; the notice to voter who must
6    provide identification if they're ID voters on the
7    list that -- that are voting by mail; information
8    about returning your carrier envelope, the carrier
9    insert; the jacket envelope; and the early voting
10   envelope for a blank ballot.
11             We prescribe an application for a
12   presidential ballot; a notice to voter registrar
13   of application for presidential ballot; a federal
14   postcard registration and absentee ballot request;
15   the federal postcard applications checklist, like
16   I said before; the notice of defective federal
17   postcard application; the envelope to mail ballot
18   materials to an FPCA voter; the carrier envelope
19   and insert for an FPCA voter; the cancellation of
20   the federal postcard application; the federal
21   postcard application forwarding form; the
22   restricted ballot roster; and an affidavit if
23   somebody wants to vote in person on -- in person
24   after they've done a ballot-by-mail request.
25             We do the receipt of sealed early
```



RICHARDSON: BRIAN KEITH INGRAM

Page 31

1    voting ballot board boxes for the ballot board,

2    the poll list for mail voters or voters voting

3    mail procedure, the poll list for mail voters, the

4    notice of rejected ballot, the envelope for

5    rejected early voting ballots, the ballot

6    transmittal form for early voting ballots.  And,

7    of course, we've got tally sheets if they need

8    them.

9              That might be all.  There could be

10   something that I missed in the list, but they're

11   listed on our forms page if you want to go look at

12   them.

13   Q     Okay.  And are local elections officials

14   required to use these forms?

15   A     So some yes, some no.  Mostly -- mostly

16   they're not required, and if they want to modify

17   it, they send the modification list to us to

18   review and see if it complies with the law.  So

19   they can do that with any of the forms, modify

20   them and get it -- get it approved by our office.

21             Applications for ballot-by-mail do not

22   have to follow any particular form.  Those

23   are -- those can be handwritten.  They can do

24   anything.  They just have to have the required

25   material, and they do not need prior approval for

RICHARDSON: BRIAN KEITH INGRAM

Page 32

1   the changes for those.

**2   Q      And besides the forms that you listed,**

**3   what other information does the Secretary of State**

**4   provide on its website to voters who wish to vote**

**5   by mail?**

6   A      Okay.  So votetexas.gov has a whole

7   vote-by-mail section that you can go read at your

8   leisure.

**9   Q      What does it generally explain to voters?**

10  A      That they need to apply for a ballot, and

11  that they need to mail it back in after they mark

12  it.  They need to sign the carrier envelope.

**13  Q      Okay.  I'm going to pull a document.**

14          MR. MIRZA:  Anna, can you still

15      hear us?  I just saw your message.

16          MS. MACKIN:  Yes.  Yes.  It cut out

17      for maybe ten seconds, but --

18          MR. MIRZA:  Okay.

19          MS. MACKIN:  I'm good now.  Thank

20      you.

21  BY MR. MIRZA:

**22  Q      Did you receive the link I just sent,**

**23  Mr. Ingram?**

24  A      Yes.

**25  Q      I'm going to mark this link, which is an**

**hg**

RICHARDSON: BRIAN KEITH INGRAM

```
 1    application for ballot-by-mail, as Exhibit 2.
 2            (Exhibit 2 marked.)
 3    BY MR. MIRZA:
 4     Q      Okay.  Are you familiar with this
 5    document?
 6     A      I am.
 7     Q      Okay.  And this document allows voters to
 8    provide their telephone number and email address
 9    if they wish to; correct?
10     A      Yes.
11     Q      And can you discuss -- does this document
12    explain in any way how a voter -- wait.  Let me
13    rephrase that question.
14            And so Section 10 is where the voter
15    signs the document; correct?
16     A      Yes.
17     Q      And what happens if the voter is not able
18    to sign?
19     A      They can have a witness sign for them.
20     Q      Does it -- does the -- does this form
21    provide any instructions with regard to
22    Section 10, besides instructions on when you're
23    allowed to have a signature -- so when you're
24    allowed to have a witness sign for you and under
25    what conditions?
```

hg

RICHARDSON: BRIAN KEITH INGRAM

Page 34

1           MS. MACKIN:  I'm going to object to
2       the form of the question, and also I
3       believe the document speaks for itself as
4       to what instructions it provides.
5           But, Keith, you can answer.
6           THE WITNESS:  Yeah, I don't really
7       understand the question.
8   BY MR. MIRZA:
9    Q     Let me try to rephrase it.
10          Does this -- does this document
11   mention -- provide any instructions -- or let me
12   rephrase the question.
13          Does this document explain to voters
14   that the signature could be used during the
15   signature verification process?
16          MS. MACKIN:  Same objection.
17          You can answer if you understand,
18       Keith.
19          THE WITNESS:  It doesn't -- I mean,
20       I can read these directions.  The
21       instructions are on the back of the form,
22       and it does tell the witness -- the person
23       they can sign or have a witness sign it.
24   BY MR. MIRZA:
25    Q     But does it -- does it inform the voter

RICHARDSON: BRIAN KEITH INGRAM

Page 35

1    that the signature can be -- will be used during

2    the signature verification process?

3      A      It doesn't -- it doesn't talk about how

4    this is processed, no.

5      Q      Okay.  I'm going to provide another link.

6            Did you receive my link?  It was just

7    sent.

8      A      Yes.

9      Q      Okay.  I'd like to mark this as Exhibit 3.

10           (Exhibit 3 marked.)

11   BY MR. MIRZA:

12     Q      Does this document look familiar,

13   generally speaking?

14     A      It looks like a carrier envelope.

15     Q      Okay.  And on -- is it correct that the

16   voter is required to sign on -- over the flap of

17   the envelope on a carrier envelope?

18     A      Yes.

19     Q      And is it true that when they sign,

20   generally the signature will most -- will -- half

21   the signature will be on the flap of the envelope

22   and the other half will be on the envelope itself?

23     A      That's ideal, yes.

24           MS. MACKIN:  Objection; form.

25   BY MR. MIRZA:

RICHARDSON: BRIAN KEITH INGRAM

Page 36

```
1    Q      Sorry.  I didn't catch the answer.
2    A      That's ideal, yes.
3    Q      Okay.  Isn't it -- isn't it true that
4    having voters sign this way could distort their
5    signature to some extent?
6               MS. MACKIN:  Objection; form.
7               THE WITNESS:  Yeah, I don't know
8         the answer to that question.
9    BY MR. MIRZA:
10   Q      Is it true that defendant -- sorry.
11          Is it true that the Secretary of State
12   is required to provide a method by which counties
13   and political subdivisions located in the county
14   can exchange and update information on an annual
15   mail-in ballot application?
16   A      It is true that the requests for an annual
17   application for ballot-by-mail needs to be shared
18   by election-holding entities within the county,
19   yes.
20   Q      Is it true that the Secretary of State
21   prescribes appropriate procedures to provide
22   accountability for the delivery of the carrier
23   envelopes from the voting place to the early
24   voting clerk?
25              MS. MACKIN:  Objection; form.
```



RICHARDSON: BRIAN KEITH INGRAM

Page 37

```
1             THE WITNESS:  Yeah, they don't make
2       a trip like that.  I don't know what
3       you're talking about.
4  BY MR. MIRZA:
5   Q      So does the Secretary of State provide any
6  procedures related to the delivery of the carrier
7  envelope from the voting place to the early voting
8  clerk?
9   A      Again, that doesn't -- there's not a trip
10  like that.  I don't know what that means.
11   Q      I'm not totally hearing the word.  There's
12  not a "trip"?
13   A      It's not a trip.  There's no movement from
14  the election place to the early voting clerk.
15   Q      Okay.  Okay.  And does the Secretary of
16  State prescribe necessary procedures to count
17  mail-in ballots that arrive after the required
18  deadline but are deemed not untimely under the
19  election code?
20   A      We do provide advice and assistance and
21  training about meeting as a late ballot board
22  after election day, yes.
23   Q      Can you generally explain those
24  procedures?
25   A      Well, they just talk about the fact that
```

RICHARDSON: BRIAN KEITH INGRAM

Page 38

1   you have to have meetings to look for mail ballots

2   that come in the day after the election by

3   5:00 p.m. that are postmarked on or before

4   election day, and you also have to meet to qualify

5   overseas ballots and military ballots that can

6   come in as much as five and six days after the

7   election, and you also have to meet to qualify

8   provisional ballots.  And you have to do it all

9   within a certain time frame, because the canvass

10   has to occur.

11   **Q      And what would happen if they -- a local**

12   **election official did not follow this guidance?**

13              MS. MACKIN:  Objection; form.

14              THE WITNESS:  I'm not sure.  It

15       depends on what part of the guidance they

16       don't follow.

17   BY MR. MIRZA:

18   **Q      Okay.  And the Secretary of State is**

19   **required to monitor the situation and advise the**

20   **early voting clerk -- sorry.  Hold on one second.**

21   **Let me rephrase that.**

22              **The Secretary of State also maintains**

23   **a supply of official mail-in ballot application**

24   **forms; correct?**

25   A      We have a supply of applications for

RICHARDSON: BRIAN KEITH INGRAM

1  ballot-by-mail, yes.

2  **Q      And the Secretary of State is required to**

3  **furnish the forms in reasonable quantities without**

4  **charge to individuals or organizations requesting**

5  **them for distribution to voters; correct?**

6  A      We do that, yes.

7  **Q      Does the mail-in ballot process change**

8  **from election to election?**

9  A      The mail-in ballot process doesn't change

10  unless the statutes governing it change.

11  **Q      And --**

12  A      The mechanism for getting a ballot board

13  is different from different elections.  I don't

14  know what you mean by the "mail-in ballot

15  process," is the problem I'm having.  Because the

16  process for handling and counting mail ballots

17  doesn't change, but the ballot board composition

18  does and the way it's composed does.  So is that

19  part of the process?

20  **Q      I think that makes sense.**

21  **        Okay.  Can you walk through the**

22  **process that a voter must take if they want to**

23  **vote by mail for, say, example, the 2020 general**

24  **election that is coming up?**

25  A      Well, they have to fill out an application

**hg**

RICHARDSON: BRIAN KEITH INGRAM

Page 40

1   for a ballot-by-mail, they have to state a reason

2   why they're voting by mail, and they have to list

3   whatever information is required in Chapter 84.

4   So they can send a letter to that effect or they

5   can fill out an official application, but it's got

6   to have the required components on it.

7           And then whenever they get their mail

8   ballot, the blank ballot, assuming their

9   application was sufficient and wasn't rejected,

10  then they have to fill out that ballot and put it

11  in the secrecy envelope, put that in the carrier

12  envelope, sign the carrier envelope, and send it

13  back.  They can hand deliver it on election day to

14  the early voting clerk.

15  **Q     All right.  Is it true that early voting**

16  **clerks are responsible for receiving mail-in**

17  **ballots submitted by voters?**

18  A      Yes.

19  **Q     They're also responsible for mailing**

20  **voters a mail-in ballot application if requested**

21  **by the voter?**

22  A      Yes.

23  **Q     And that -- they're responsible for**

24  **mailing or otherwise delivering a mail-in ballot**

25  **to a qualifying voter?**

RICHARDSON: BRIAN KEITH INGRAM

```
 1              MS. MACKIN:  Objection; form.
 2              THE WITNESS:  They need to submit
 3         the blank ballot materials to a voter if
 4         they qualify, yes.
 5    BY MR. MIRZA:
 6     Q       They're also responsible for notifying
 7    voters about rejected applications and reasons for
 8    the rejection?
 9     A       That's right.
10     Q       And they're also responsible for
11    determining whether a voter's official carrier
12    envelope was returned timely?
13     A       That's right.
14     Q       They're also responsible for allowing a
15    voter to cure defects in their mail-in ballot
16    carrier envelope prior to the mail-in ballot
17    deadline?
18              MS. MACKIN:  Objection; form.
19              THE WITNESS:  So there's an
20         opportunity for early voting clerks to
21         have voters correct the defects before
22         it's submitted to the ballot board.  If
23         they choose to do so, then they have to
24         treat all voters similarly situated
25         equally.
```

hg

RICHARDSON: BRIAN KEITH INGRAM

Page 42

1   BY MR. MIRZA:

**2   Q      Does the Secretary of State provide any**

**3   guidance on that specific topic?**

4   A      Just what I just said, that if they choose

5   to notify one voter of a defect, all voters with

6   the same defect have to be similarly notified.

7   That is our advice and training, and it's what the

8   law says.

**9   Q      Does the Secretary of State provide any**

**10   guidance on what types of defects that the early**

**11   voting clerk should look out for?**

12   A      No, but obviously the big one is if they

13   don't sign the carrier envelope.  Missing

14   signature is the most common defect, from our

15   experience, that we get questions about.

**16   Q      And is the -- is it true that the early**

**17   voting clerk is responsible for placing the**

**18   carrier envelope containing the voter's mail-in**

**19   ballot into jacket envelopes if the ballot is**

**20   returned timely?**

21   A      That's correct.

**22   Q      And the early voting clerk is responsible**

**23   for delivering all qualifying jacket envelopes to**

**24   either the early voting ballot board or the**

**25   signature verification committee?**



RICHARDSON: BRIAN KEITH INGRAM

Page 43

1    A    That's correct.

2    Q    Can you list the types of individuals who

3    are eligible for -- to vote by mail in Texas?

4    A    Over 65, disabled, out of the county

5    during the entire early voting period and election

6    day, or in jail.

7              Military and overseas voters can vote

8    by mail if they're out of their home county.

9    Q    And so who's tasked with reviewing -- the

10   comparing signatures on the mail-in ballot?

11   A    I don't understand that question.  There's

12   one signature on the ballot -- on the carrier

13   envelope.

14   Q    Sorry.  I mean with --

15   A    There's another signature on the ballot.

16   Q    Sorry.  Let me rephrase it.  I wasn't

17   being clear.

18             Who is tasked with the signature --

19   with reviewing signatures related to mail-in

20   ballots?

21             MS. MACKIN:  Objection; form.

22             THE WITNESS:  I don't understand

23       that question.

24   BY MR. MIRZA:

25   Q    There's a signature verification process

RICHARDSON: BRIAN KEITH INGRAM

Page 44

1   at some point that's required to take place;
2   correct?
3    A      If you're talking about the processing of
4   a mail ballot by the ballot board, yes.
5    Q      Okay.  And the ballot board is responsible
6   for that process; correct?
7    A      Yes.  They can -- a county or another
8   election-holding entity can have a signature
9   verification committee that takes a first crack at
10  them.  But generally, a ballot board is going to
11  have the final say.
12   Q      And the -- who creates the signature
13  verification committee?  Is it the early voting
14  clerk who has that responsibility?
15   A      It's the early voting clerk that can
16  decide whether to or not, yes.
17   Q      Did you catch my question?  Sorry.  Hello?
18   A      It's the early voting clerk that can
19  decide whether to or not, yes.
20          Hello.  I'm here.
21   Q      Can you hear me?  Yeah.
22          And if the early voting clerk
23  disagrees with the signature determination by the
24  early voting ballot board, what actions can they
25  take to overturn that determination?

hg

RICHARDSON: BRIAN KEITH INGRAM

Page 45

1    A        87.127 of the election code creates a
2   procedure where if a -- if an early voting clerk
3   believes a ballot board wrongfully accepted or
4   rejected mail-in ballots or provisional ballots,
5   then they've got the opportunity to take that
6   determination to district court and get a judge to
7   look at it.
8    **Q        During your time as -- sorry.  Let me**
9   **rephrase that.**
10             **Are you aware of any local election**
11  **official -- sorry.**
12             **Are you aware of any early voting**
13  **clerk taking that type of action?**
14   A        Yes.
15   **Q        Tell me which early voting clerks have**
16  **taken that action from -- based on your knowledge?**
17   A        Well, the one that I know did it was in
18  Caldwell County.
19   **Q        Do you know of any other instance where**
20  **that action has been taken by an early voting**
21  **clerk?**
22   A        No.  We've talked to some early voting
23  clerks and reminded them that it's an
24  available -- that it's an available option for
25  them.  I don't know whether they actually went to

**hg**

RICHARDSON: BRIAN KEITH INGRAM

Page 46

1  court or not.

2  **Q     Okay.  And what happened after -- what**

3  **happened -- what was the result of the Caldwell**

4  **County case?**

5  A     I don't remember precisely the details.

6  It seems like it was, like, five or six ballots

7  that she thought had been rejected incorrectly,

8  and so she took those to district court.  The

9  Court agreed with the early voting clerk that all

10  but one of those were rejected incorrectly but

11  that the last one was properly rejected.

12          The one that the district court upheld

13  the rejection on, that voter complained to our

14  office because she felt like her ballot had been

15  wrongfully rejected by both the ballot board and

16  the district court judge.

17  **Q     Can you explain to me generally the duties**

18  **of the early voting ballot board?**

19  A     So the early voting ballot board, their

20  primary responsibility is to deal with the

21  processing and counting of mail ballots.  They

22  have a secondary responsibility to

23  determine -- make determinations on provisional

24  ballots.

25  **Q     And how often does the early voting ballot**



RICHARDSON: BRIAN KEITH INGRAM

Page 47

1    board meet per -- during an election or per

2    election cycle?

3     A      Well, it depends on the county, and it

4    depends on the size of the county, and it depends

5    upon how often they feel like they need to meet.

6     Q      What's the -- is there a minimum amount of

7    times they're required to meet?

8     A      Well, no.  I mean, if they -- if they

9    don't have any mail ballots, then they don't need

10   to meet, and if they don't have any provisional

11   ballots, they don't need to meet.  So the minimum

12   would be zero if they don't have any.

13               If they've got mail ballots, then they

14   need to meet at least once to process and count

15   those.  And if they've got any mail ballots that

16   come in after the election, they have to meet once

17   again, and they could combine that with the

18   provisional ballot meeting.  So if they've got

19   mail ballots and provisional ballots, the minimum

20   I guess would be two, but they can meet a lot more

21   than that.

22    Q      And there's no limit to the number of

23   times they can meet?

24    A      No.  I think our TAC rule says that there

25   is, but our TAC rule has been superseded by



Page 48

1  legislation.

2  Q      Are the members of the early voting ballot

3  board required to undergo any training?

4  A      They're not required to undergo training.

5  We recommend that they have training.

6  Q      And can you describe the trainings that

7  you recommend?

8  A      Well, we recommend that the early voting

9  clerk go through the ballot board handbook with

10  them before they start.

11  Q      And why do you recommend the early voting

12  clerk do that?

13  A      So that they've got a sense of what their

14  about to undertake.

15  Q      And why -- why do you recommend that the

16  early voting clerk and not somebody else take that

17  action?

18  A      Well, I mean, anybody can do it, and you

19  can read the ballot board handbook on your own.

20  The main thing is to become familiar with the

21  ballot board handbook.  I don't know why you want

22  to get hung up on who familiarizes them with it.

23  Q      I'm just asking why the recommendation

24  is --

25  A      We don't --



RICHARDSON: BRIAN KEITH INGRAM

Page 49

1    Q       -- for the early voting clerk.

2    A       "Recommendation" might be too strong a

3    word, and it might be that you're getting hung up

4    on recommending that the early voting clerk do it.

5    It doesn't matter who does it.  We would recommend

6    that the ballot board read the book before they

7    start work.

8    Q       Okay.  Is any training provided on how

9    signatures should be compared?

10   A       It's in the ballot board handbook, yes.

11   Q       Can you generally describe the training on

12   that specific topic?

13   A       So "Section 84.- -- 87.041(c) [sic]

14   provides that the board/committee may compare

15   signatures with any two or more signatures of the

16   voter made within the preceding six years and on

17   file with the voter registrar, clerk, or elections

18   administrators.  These additional signatures may

19   be used to confirm that the signatures are either

20   those or are not those of the same person."

21           If there's no signature, the ballot

22   must be rejected.  If the voter was unable to sign

23   his or her name on the application and/or carrier

24   envelope, then they have to be signed by a

25   witness, and since different people can witness

**hg**

RICHARDSON: BRIAN KEITH INGRAM

1   those, then the ballot is accepted.

2   Q        Is there any training -- so you mentioned

3   that they can -- that the types of signatures that

4   they are supposed to compare -- or the

5   signatures -- the documents with the signatures

6   that they're supposed to compare.  Can you -- do

7   you know of any standards that SOS recommends or

8   how those signatures should be compared?

9   A        Our standard is could they have been made

10  by the same person.

11  Q        Okay.  And what kind of -- did -- what

12  kind of recommendation -- let me rephrase that.

13              Does SOS help local -- the EVBB

14  members or SVC members -- scratch that.

15              Are there any guidelines on how to

16  determine whether a signature was signed by the

17  same person or not, that the SOS provides?

18  A        So it is at the discretion of the

19  committee members to use their best judgment and

20  to verify that the signatures are made by the same

21  person.  The committee members must use their best

22  judgment if the signatures match, and they can

23  look at other signatures on file from the same

24  voter in the past six years, either from other

25  applications and carrier envelopes or voter

RICHARDSON: BRIAN KEITH INGRAM

Page 51

1   registration.  And then they have to decide by a

2   majority vote that the signatures are of the same

3   person or of not the same person, and the standard

4   has to be whether or not the two signatures could

5   have been made by the same person.

6   Q      And so...

7          Who appoints the EVBB presiding judge?

8   A      Well, it depends upon the election.  But

9   in a general election for state and county

10  officers, it would be the political party whose

11  candidate won the governor in the last race -- in

12  the last gubernatorial election.

13  Q      Okay.  And who appoints the EVBB members?

14  A      So then there's lists provided by both

15  parties, assuming we're talking about state and

16  county officer elections, and you have to select a

17  member from each list.

18  Q      Okay.  Do early voting clerks ever appoint

19  early voting ballot board members?

20  A      Yes.  I mean, the entity elections, they

21  do.

22  Q      And what document are you -- are you

23  looking at a document right now to --

24  A      Yes, I'm looking at the election code.

25         Anyway, we've got nice fancy charts in

RICHARDSON: BRIAN KEITH INGRAM

Page 52

1   our training materials from the summer election

2   seminar and the one that we do for city, school,

3   and other political subdivisions.

4           Yeah, so the entity ordering the

5   election can appoint the early voting ballot board

6   under 87.004.

7   **Q       Okay.  Is there any requirement for an**

8   **early voting ballot board presiding judge or**

9   **member or anybody in the SVC to be a handwriting**

10  **expert or a document examiner?**

11  A       No.  No, we do not expect them to be

12  handwriting experts or document examiners.

13  **Q       Can you go through the requirements of the**

14  **signature verification committee generally?**

15          MS. MACKIN:  Objection; form.

16          THE WITNESS:  Well --

17          MS. MACKIN:  You can answer if you

18      understand.

19          THE WITNESS:  I don't know what

20      that means.  The requirements for what

21      they do or the requirements for who they

22      are?

23  BY MR. MIRZA:

24  **Q       What they do.**

25  A       So the signature verification committee is

hg

Page 53

1    a group that -- that's what they do, is they

2    compare signatures on the applications and carrier

3    envelopes.

4    **Q       And for the early voting ballot board --**

5    **I'll go back a little bit -- what -- what are the**

6    **qualifications to become an early voting ballot**

7    **board member?  Are there any specific**

8    **requirements?**

9    A       Sure.

10   **Q       What are those?**

11   A       You got to meet the requirements for

12   eligibility for services of presiding election

13   judge in a precinct, except that you have to be a

14   qualified voter of somewhere in the territory, not

15   in a particular precinct, just within the

16   territory.

17   **Q       Anything else?**

18   A       Well, you got to meet the qualifications

19   of the presiding judge in a precinct.

20   **Q       And how about for members of the signature**

21   **verification committee?**

22   A       It's got to be least five people.  State

23   and county officer elections, they do them off of

24   the list submitted by the parties.  You got to be

25   a qualified voter of the county in the countywide

**hg**

RICHARDSON: BRIAN KEITH INGRAM

Page 54

1   elections --

2            THE REPORTER:  I'm sorry.

3            THE WITNESS:  What in the world is

4       that?

5            THE REPORTER:  Yeah.  I'm sorry.

6       I'm having a really hard time hearing.

7       There's some type of buzzing that keeps

8       happening.  I don't know if anyone else

9       can hear it, but that last answer was

10      really going in and out for me.

11           THE WITNESS:  So they -- they have

12      to have at least five people.  They have

13      to be a qualified voter of the county for

14      a countywide election, and then they've

15      got to be a qualified voter of the part of

16      the county that the election is held in if

17      it's something less than the entire

18      county, or the political subdivision if

19      it's an entity election.

20  BY MR. MIRZA:

21   Q     **And it's true that the signature**

22  **verification committee doesn't actually count the**

23  **ballots they're reviewing; correct?**

24   A     That's correct.  They submit them to the

25  ballot board for counting.

Page 55

1   Q      And what is the purpose behind allowing

2   local elections officials to create signature

3   verification committees?

4              MS. MACKIN:  Objection; form.

5              THE WITNESS:  Well, it --

6              MS. MACKIN:  You can answer if you

7        know.

8              THE WITNESS:  Yeah, in my

9        particular work, so that you've got more

10       people doing the job.

11  BY MR. MIRZA:

12  Q      And what signatures can be used during the

13  signature verification process?

14  A      Same as with the ballot board.  I mean,

15  it's any signature made by the voter within the

16  last six years.

17  Q      And that includes signatures on voter

18  registration applications?

19  A      Yes.

20  Q      Who is generally tasked with providing the

21  early voting ballot board any additional

22  signatures, not including the signature on the

23  carrier envelope and the signature on the

24  application for ballot-by-mail?

25  A      The early voting clerk.

RICHARDSON: BRIAN KEITH INGRAM

Page 56

```
 1   Q      And the early voting clerk decides whether
 2   a signature verification committee needs to
 3   convene after election day; correct?
 4   A      That's correct, and how many there need to
 5   be.
 6   Q      The early voting clerk sets the time,
 7   place, and days for the signature verification to
 8   meet; right?
 9   A      Yes.
10   Q      Is there any action that is required to be
11   taken if the early voting ballot board does not
12   complete their review of the mail-in
13   ballot -- mail-in ballot signatures by the
14   deadline under the election code?
15   A      What was the question?
16   Q      Is there any action that has -- is
17   required to be taken if the early voting ballot
18   board does not complete their review of mail-in
19   ballots by the deadline under the election code?
20   A      Which deadline?
21   Q      The deadline to deliver the ballots --
22   return the ballots to the early voting clerk.
23   A      Which ballots?
24   Q      The mail-in -- mail-in ballots.
25   A      Which mail-in ballots?
```

hg

RICHARDSON: BRIAN KEITH INGRAM

1    Q       The -- I'm -- like the mail-in -- so

2    there's a deadline after --

3    A       Are you talking about --

4    Q       Go ahead.

5    A       No, no.  I'm waiting.

6    Q       I'm talking about mail-in ballots

7    that -- I guess mail-in ballots that are received

8    after the election day.

9    A       So if the ballot board doesn't complete

10   its work by the deadline for the ballot board to

11   complete its work, what do they do?

12   Q       Is there any action that's required to be

13   taken in that situation?

14   A       If the ballot board needs to meet after

15   the deadline, they have to get a court order to do

16   so.

17   Q       And the signature verification committee

18   is required to follow the same signature

19   verification procedures that the early voting

20   ballot board follows; correct?

21   A       Yes.

22   Q       What are the general -- can you generally

23   explain the process that the early voting clerk

24   has to follow when delivering the mail-in ballots

25   to the early voting ballot board?

RICHARDSON: BRIAN KEITH INGRAM

Page 58

1   A      They have to post notice of the delivery,
2   and they have to deliver them.
3   **Q      And how -- and how do they -- are they**
4   **required to deliver them?**
5   A      In the jacket envelopes.
6   **Q      Okay.  And what is the process for the**
7   **early voting ballot board -- or the early voting**
8   **clerk to receive the ballots from the early voting**
9   **ballot board after they've been reviewed by them?**
10  A      I don't know.  I don't work in a county.
11  I don't know what -- I mean, the process is that
12  they have processed the ballots; they've rejected
13  some, they've accepted others; the ones they've
14  accepted, they've counted; and they give the
15  materials back to the early voting clerk with the
16  tabulation of the votes.
17  **Q      I'm going to link to a document.  I'll get**
18  **that ready right now.**
19          **Did you receive that link?**
20  A      Yes.
21  **Q      So I'd like to mark this as Exhibit 4.**
22  **It's the "Early Voting Ballot Board & Signature**
23  **Verification Handbook for Election Judges and**
24  **Clerks, 2020."**
25          (Exhibit 4 marked.)

RICHARDSON: BRIAN KEITH INGRAM

```
 1   BY MR. MIRZA:
 2    Q      Do you recognize this document?
 3    A      I do.
 4    Q      Can you explain what it is generally?
 5    A      It's the early voting ballot board
 6   handbook.
 7    Q      And who creates this handbook?
 8    A      Our office.
 9    Q      And what's the -- what's the general
10   purpose of this handbook?
11    A      To help the early voting ballot board do
12   its job.
13    Q      Okay.  If you could jump to -- if you
14   could jump to...
15           Actually, I'll come back to that.
16           So how are -- what are the steps that
17   the EVBB must take to accept -- to qualify a
18   ballot?
19    A      Well, they open the jacket envelope.  They
20   look at the application and the carrier envelope,
21   and, you know, it depends on how they've organized
22   their work.  You know, if it's the whole ballot
23   board, then they'll all take a look at it.  If
24   they've organized themselves into subcommittees,
25   then the subcommittee will look at the materials.
```

**hg**

RICHARDSON: BRIAN KEITH INGRAM

Page 60

1  And they will make a determination as to whether

2  or not the signatures could have been made by the

3  same person.

4          And then if they say "yes," they will

5  open the carrier envelope, pull out the secrecy

6  envelope and put it in a basket, and then they

7  wait until they have several ballots qualified and

8  accepted before they open the secrecy envelopes to

9  preserve ballot secrecy on the part of the voter.

10  **Q      And if the early voting ballot board**

11  **rejects a ballot, what is the process for**

12  **providing the rejection notice to the voter?**

13  A      Well, once the ballot's been rejected,

14  then the early voting clerk generates the

15  rejection notice of the voter.

16  **Q      Okay.  Can the -- can you repeat that?**

17  **Sorry.  You cut out.**

18  A      The early voting clerk prepares the

19  rejection notices and sends them to the voters.

20  **Q      Okay.  Okay.  Can you -- in Exhibit -- I**

21  **think this was Exhibit 4.  Can you go to Bates**

22  **Number 466, which is --**

23  A      466?

24  **Q      4- -- SOS_000466, which is on Page 39 of**

25  **this document.**

Page 61

```
 1    A     Okay.
 2    Q     Okay.  So can you look at A1 and review
 3  that question and the paragraph answer?
 4    A     Yes.
 5    Q     Okay.  So my question is:  If, say, there
 6  were two signatures, both of them -- one was on
 7  the carrier envelope and another was on an
 8  application for ballot-by-mail, and both of them
 9  exactly matched, would -- should those -- should
10  the determination of the early voting ballot board
11  be to accept that ballot?
12    A     I don't know what you're getting at.  If
13  the signatures match, they should accept the
14  ballot, yes.
15    Q     Okay.  Is it that they have to match
16  exactly?
17    A     No.  Of course not.
18    Q     Okay.  What kind of discrepancies are
19  allowed?
20    A     The committee members must use their best
21  judgments, and the standard is whether or not the
22  signatures could have been made by the same
23  person.
24    Q     So let me know if I get this right or
25  I'll -- based on what you just said.
```

hg

RICHARDSON: BRIAN KEITH INGRAM

1        **So it's based on that analysis,**
2   **whether -- what, like, discrepancies are allowed**
3   **is based on the best judgment of the early voting**
4   **ballot board member?**
5    A     The signature --
6              MS. MACKIN:  Objection.
7              THE WITNESS:  -- verification
8        committee and ballot boards members must
9        use their best judgment.
10  BY MR. MIRZA:
11   **Q     Okay.  But can you answer whether what I**
12  **said was a correct interpretation of what you**
13  **said?**
14             MS. MACKIN:  Objection; form.
15             THE WITNESS:  I said what I said.
16  BY MR. MIRZA:
17   **Q     But that's -- that's not the question I**
18  **was asking, though.**
19   A     Well, your question -- I don't want to
20  characterize what I said.  What I said was the
21  committee members must use their best judgment,
22  and the standard by which they use their best
23  judgment is could these signatures have been made
24  by the same person.
25             THE WITNESS:  It looks like we've

RICHARDSON: BRIAN KEITH INGRAM

Page 63

1     lost Anna again.
2           MR. MIRZA:  No.  I'm right here.
3     Hello?
4           THE WITNESS:  It looks like we lost
5     Anna again.
6           MR. MIRZA:  Oh.
7           THE WITNESS:  A more prolonged
8     absence this time.
9           MR. MIRZA:  Anna, are you back?
10           THE WITNESS:  Oh, there she is.
11           MR. MIRZA:  Can you hear us?  We
12     can't hear you.
13           MS. MACKIN:  Hi.  Sorry.  Yes.
14           MR. MIRZA:  Good.  No worries.
15  BY MR. MIRZA:
16   Q     Can you jump to page -- Bates
17  Number SOS_000468, which is Page 41 on the PDF
18  document?
19   A     Did you say 448?
20   Q     468.
21   A     Yes.
22   Q     Okay.  Can you review Situation 1?
23           Let me know when you're ready.  And
24  take your time.
25   A     Okay.

RICHARDSON: BRIAN KEITH INGRAM

Page 64

1    Q        Okay.   Do you know when -- is this the

2    first time this section has been included in

3    the -- this handbook?

4    A        I do not know.

5    Q        Okay.   There are also specific voter ID

6    requirements for some mail-in ballot -- that some

7    mail-in ballot voters have to meet; correct?

8    A        If a voter is identified as an ID voter in

9    the voter registration database, then yes, they

10   will have to submit a copy of their photo ID with

11   their mail ballot.

12   Q        What do you mean by "ID voter"?

13   A        An ID voter comes from the Help America

14   Vote Act of 2002.  It required that voters submit

15   a form of identification whenever they register to

16   vote, either the last four of social or their

17   driver's license number.  And we, when we get that

18   voter registration application in our system --

19   the county keys it in -- we run it through what we

20   call "live check" to see if the last name, the

21   date of birth, and the given number match with

22   the -- with the voter's name.  And if they don't,

23   then they're flagged as an ID voter.

24   Q        How must mail-in ballot voters provide ID?

25   What's the process for them to provide ID

hg

RICHARDSON: BRIAN KEITH INGRAM

Page 65

1   verification to the local election officials?

2    A      Well, they have to submit a copy of an

3   acceptable form of photo ID.

4    Q      Can you jump to Bates Number SOS_000476?

5   And that's Page 49 in the document, of the PDF

6   document.

7    A      Uh-huh.  I'm here.

8    Q      Okay.  Can you review procedure for

9   Scenario 2B, and let me know when you're -- when

10   you're done reviewing it?

11          MS. MACKIN:  I'm sorry, Hani.  What

12      Bates number?

13          MR. MIRZA:  SOS_000476.

14          MS. MACKIN:  Okay.  Thank you.

15          MR. MIRZA:  No problem.

16          THE WITNESS:  Okay.

17   BY MR. MIRZA:

18    Q      Okay.  Can you generally explain what this

19   procedure -- what this is discussing?

20    A      Well, it's -- there's a possibility with

21   two May elections that -- the primary runoff

22   election at the end of May and uniform election at

23   the 1st of May, that voters could have two

24   different mail ballots, and so they could have put

25   the -- their entity mail ballot in the runoff

RICHARDSON: BRIAN KEITH INGRAM

Page 66

```
 1   carrier envelope and vice versa.
 2    Q      Okay.  And it says on the first line that
 3   the election officials can contact the voter to
 4   resolve this issue potentially; is that correct?
 5    A      That is correct.
 6    Q      In what ways -- are there any ways
 7   that -- sorry.  Let me rephrase that question.
 8            Are there any methods of contacting
 9   the voter that the SOS does not recommend here?
10    A      I'm not sure what you asked.
11    Q      So they can -- I guess I'll rephrase it.
12            So under this scenario, they can
13   contact the voter by phone, email, mail, or by
14   going to their place of residence; correct?
15    A      That's correct.
16    Q      So I wanted to discuss the signature
17   verification committee real quickly.
18            The early voting clerk can create
19   subcommittees within the signature verification
20   committee; correct?
21    A      Yes.  I don't know if the early voting
22   clerk does it or the presiding judge of the ballot
23   board, but yeah, they can have subcommittees.
24    Q      Okay.  And what is the general practice
25   behind the sub- -- creating those subcommittees?
```



Page 67

1    A    Again, to spread out the work to be done

2    in a more efficient manner.

3    Q    Who's generally the county chair?

4    A    What?

5    Q    So I'm done with this document.

6    A    Okay.

7    Q    Are you familiar with the term "county

8    chair"?

9    A    "County chair"?

10    Q    Yes.

11    A    Yes, I'm familiar with that.

12    Q    Okay.  Who generally is designated with

13    that role?

14            MS. MACKIN:  Objection; form.

15            THE WITNESS:  So people run for

16        that office.  So the one selected by the

17        majority of the voters in the primary

18        election holds that office.

19    BY MR. MIRZA:

20    Q    And what are their duties with respect to

21    the mail-in ballot process?

22    A    Well, it depends on the election, but in

23    the primary election, it's their duty to have a

24    ballot board ready to work.  In the state and

25    county officer election in November, it's their

**hg**

RICHARDSON: BRIAN KEITH INGRAM

Page 68

```
 1   duty to submit a list to the early voting clerk so
 2   that the early voting clerk can appoint ballot
 3   board members.
 4            MR. MIRZA:  Okay.  I think I'm
 5        close to -- like, I think I need probably
 6        another hour, but I was thinking this
 7        might be a good time to take a break for
 8        15 minutes, if that works.
 9            THE WITNESS:  Okay.
10            MS. MACKIN:  Fine with me.
11            MR. MIRZA:  Thank you.
12            THE VIDEOGRAPHER:  We are going off
13        the record.  The time is 11:14 a.m.
14          (Recess from 11:14 a.m. to 11:32 a.m.)
15            THE VIDEOGRAPHER:  We are going
16        back on the record.  The time is
17        approximately 11:32 a.m.
18   BY MR. MIRZA:
19    Q    Okay.  I think the next thing I would like
20   to do is screen share a document with you.  Let me
21   know if you're able to view it.
22            MR. COX:  Hey, Hani, are we missing
23        Anna?
24            MR. MIRZA:  Oh, I heard -- I
25        thought I heard Anna.
```

**hg**

RICHARDSON: BRIAN KEITH INGRAM

Page 69

1          Anna, are you there?

2          MS. MACKIN:  Yes, I'm here, but I

3     did not say anything.

4          MR. MIRZA:  Oh, I apologize.

5          MS. MACKIN:  I think it may have

6     been -- it may have been Ryan.

7          MR. COX:  Yeah.  I was just saying

8     I didn't see the video, so I was making

9     sure you were on.  I apologize.

10          MR. MIRZA:  I apologize, Anna.

11          Are we ready to begin?

12          MS. MACKIN:  I'm good.

13          MR. MIRZA:  Okay.  Great.

14    BY MR. MIRZA:

15     Q    So I'd like to turn your attention to the

16    pages that start with Bates Number SOS_001005 and

17    end at Bates Number SOS_00- -- it should be 29.

18    End at SOS_001029.  And just go back to the

19    beginning.

20          And I'll mark this as Exhibit -- I

21    think it's 5.

22          (Exhibit 5 marked.)

23    BY MR. MIRZA:

24     Q    Okay.  Does this document look -- let me

25    just zoom out here.

Page 70

1          **Does this document look familiar to**
2   **you?**
3    A      Yes.
4    **Q      And what is it?**
5    A      It's a handbook for our election
6   inspectors that we send out.
7    **Q      Okay.  Who creates this handbook?**
8    A      Our office.
9    **Q      Okay.  How often is it updated?**
10   A      Well, it's updated usually every
11  odd-numbered year after the legislature meets.
12   **Q      Okay.  And I -- let's see.**
13          **And what is the purpose for this**
14  **handbook?**
15   A      I'm sorry.  What?  You were cutting out.
16   **Q      What is -- oh, sorry.**
17          **Why -- who is this handbook created**
18  **for?**
19   A      For state election inspectors.
20   **Q      And what is a state election inspector?**
21   A      Well, the code allows the Secretary of
22  State to appoint people to monitor elections, and
23  the ones that we appoint are state election
24  inspectors.
25   **Q      And what are their duties -- day-to-day**

hg

Page 71

1   duties?

2   A       Well, their day-to-day duties are whatever

3   they do for work.  I mean, this is not a full-time

4   job.  This is a --

5   Q       No.  During an election, while they're

6   inspecting.

7   A       While they're inspecting, their job is to

8   observe and make observations.

9   Q       Okay.  What kind of observations are they

10  supposed to make?

11  A       Well, there's a -- there's a checklist

12  that they have to fill out regarding activities in

13  the polling place, the setup of the equipment, the

14  disability -- disabled access.  There's all kinds

15  of things like that that -- they have a checklist

16  they fill out, and then they have a notes section

17  where they describe any --

18  Q       Describe what?

19  A       -- discrepancies or -- describe any

20  discrepancies or issues that they observe, you

21  know, that don't fit in a tick box.

22  Q       And are they required to observe

23  the -- how mail-in ballot voting is conducted

24  during an election?

25  A       Not every --

RICHARDSON: BRIAN KEITH INGRAM

Page 72

1          MS. MACKIN:  Objection; form.

2          THE WITNESS:  Yeah, not every

3      inspector and not every election, but we

4      do have a checklist if they do observe the

5      early voting ballot board at work.

6  BY MR. MIRZA:

7   Q     Okay.  And are they paid for their work?

8   A     No.  They're paid -- you know, they're

9  either -- they either have to use paid time off

10  from their agency, or some agencies will let them

11  use this as a workday.

12   Q     Okay.  What are the qualifications for

13  becoming -- what are -- what qualifications --

14  what qualifications are you required to meet to

15  become an elections inspector?

16   A     To be an elections inspector, you have to

17  be a state [audio interference] several agencies

18  that we use, and then you have to be willing to do

19  it.  You have to go through a training and pass a

20  test.

21   Q     And is that every -- for every election,

22  or once you become an inspector, you can remain an

23  inspector for a certain number of years?

24   A     Yes, I don't know.  I think it may be two

25  years that the certification lasts, and then you

RICHARDSON: BRIAN KEITH INGRAM

Page 73

1    have to be recertified.

2    Q       Okay.  And who prepares the test?

3    A       Our office.

4    Q       And are inspectors deployed in every

5    single county during an election?

6    A       No.  No.

7    Q       Okay.  How does the Secretary of State

8    determine what counties inspectors should be sent

9    to?

10              MS. MACKIN:  Objection; form.

11              THE WITNESS:  Well, we get

12        requests.  So if 15 voters in a

13        jurisdiction want an inspector, they can

14        request it up to Wednesday before election

15        day, and so we will honor those requests.

16              And then for the inspectors that we

17        have left over, we sort of take an

18        approach of doing a cross-section of urban

19        and rural, and then we keep a list of what

20        counties we've been to recently and

21        then -- and, you know, go to different

22        ones.  So different geographic regions,

23        kinds of voting equipment, you know, just

24        try to get a good cross-section of the

25        election for every election date.

hg

RICHARDSON: BRIAN KEITH INGRAM

Page 74

1    BY MR. MIRZA:

2    Q       If there's a county that has not been

3    following the election code in the past or

4    inspectors have found them to not be following the

5    election code in the past, would the Secretary of

6    State make sure to continue to send elections

7    inspectors to that county in future elections?

8    A       No.  I mean, that's generally not what we

9    do.

10   Q       And --

11   A       The inspectors make a report; the report

12   is sent to that county.  We expect that the

13   county's going to address any deficiencies that

14   are found.  But it's up to the county to do that.

15   Q       And is there any follow-up by the

16   Secretary of State's office on whether the

17   inspectors -- of the counties following the

18   inspectors' recommendation?

19   A       No.  No, the inspectors don't make

20   recommendations.  They make observations.  And if

21   they observe something that's incorrect, then

22   that's pointed out in the inspector report.  But

23   it's not recommendations.  It's just observations.

24   Q       Okay.  And so these inspectors -- some

25   inspectors inspect the -- so inspectors can

RICHARDSON: BRIAN KEITH INGRAM

Page 75

1   inspect the work of the early voting ballot board;
2   correct?
3   A     They can.
4   Q     They can also inspect the work of the
5   early voting clerk; correct?
6   A     No.  I don't even know what that means.
7   They can go to the ballot board, they can go to
8   the central counting station, and they can go to
9   polling places.
10  Q     Okay.  So they can't go --
11  A     Just go hang out -- hang out in their
12  voting clerk's office, no.
13  Q     Okay.  So there's no such thing as
14  failing -- you can't fail an inspection; correct?
15  A     No.
16        MS. MACKIN:  Objection; form.
17  BY MR. MIRZA:
18  Q     Sorry.  I didn't catch your answer.
19  A     No.
20  Q     Okay.  I'm going to jump to page...
21        Can you see this page?
22  A     I can.  It's pretty small, but I can see
23  it.
24  Q     I can zoom in.  Is that better?
25  A     Yes.

RICHARDSON: BRIAN KEITH INGRAM

Page 76

1    Q      Okay.  Can you review this page?  And let
2   me know when you would like me to scroll down to
3   the rest of it.
4    A      All right.  Go to Number 4.
5           It looks like we got a typo in there.
6   Okay.
7    Q      Are you familiar with this page?
8    A      I'm -- I don't know if I've ever seen it,
9   but I'm familiar with the content, yes.
10   Q      I'd like you to look at Item 2.  After
11  reviewing that, I wanted to ask, is it -- is it
12  possible for signatures to not match but still be
13  signed by the same voter?
14   A      Is that possible?
15   Q      Yes.
16   A      So what the ballot board determines is
17  could the signatures have been made by the same
18  person.  They can definitely -- it's certainly
19  possible that a ballot board could reject
20  signatures that were, in fact, made by the same
21  person that they didn't believe were made by the
22  same person that -- using their best judgment.
23   Q      Okay.  But what I'm asking is:  Is it
24  possible for signatures to match -- sorry.
25          Is it possible for signatures to not

RICHARDSON: BRIAN KEITH INGRAM

Page 77

1   match but still be signed by the same voter?

2    A      What I said, it is reasonable for a ballot

3   board -- and possibly happens for a ballot board

4   using their best judgment -- to have signatures

5   that were, in fact, made by the same person that

6   they reject because they do not believe they were

7   made by the same person.

8    Q      Okay.  So I'm not asking about the ballot

9   board.  I'm just asking, based on your knowledge

10   and experience, is it possible for signatures to

11   not match and still be signed by the same voter?

12    A      And what I'm telling you is the ballot

13   board can possibly make a determination that if

14   signatures were not made by the same person when,

15   in fact, they were made by the same person.

16           I'm going to answer it the same way

17   every time.

18    Q      Okay.  But you're not answering my

19   question.  It's a yes-or-no question.

20    A      Yes, I am.  I am -- I'm definitely

21   answering your question.

22    Q      Can you explain how you're answering my

23   question?

24           MS. MACKIN:  Why don't --

25           THE WITNESS:  What you want to do

RICHARDSON: BRIAN KEITH INGRAM

Page 78

```
1    is say that signatures don't match when
2    they're made by the same person, and what
3    I'm telling you is that's a nonsensical
4    question.  What happens is the ballot
5    board makes a determination as to whether
6    or not the signatures could have been made
7    by the same person using their best
8    judgment.  That's what happens.
9          There's not any -- there's not any
10   match or no match in the Platonic ideal.
11   There's what a ballot board does.
12         MR. MIRZA:  Okay.  I'm going to
13   object on the record, because that answer
14   was nonresponsive.
15         MS. MACKIN:  And I believe the
16   witness has answered the question the best
17   way that he's able, because the question
18   doesn't actually track the facts that are
19   in the record that we've developed at this
20   deposition.
21         MR. MIRZA:  Well --
22         MS. MACKIN:  He's not obligated to
23   tell you "yes" or "no" if the question
24   can't fairly be responded to that way.
25         MR. MIRZA:  Okay.
```

hg

RICHARDSON: BRIAN KEITH INGRAM

Page 79

1          MS. MACKIN:  But I understand

2      you're preserving your objection.

3          MR. MIRZA:  Yeah.

4  BY MR. MIRZA:

5   Q     **So I want to ask a clarifying question.**

6  **Let me know if I've understood this incorrectly.**

7          **So when the early voting ballot board**

8  **is comparing signatures, whether their signatures**

9  **match is not a requirement that they have to make**

10 **in their determination.**

11  A     They have --

12          MS. MACKIN:  Objection; form.

13          THE WITNESS:  They have to

14      determine whether the signatures could

15      have been made by the same person.

16  BY MR. MIRZA:

17  Q     **And how -- how do they go about doing**

18 **that?**

19  A     Using their best judgment and other

20 signatures on file, if necessary.

21  Q     **Their individual best judgment; correct?**

22  A     Their collective best judgment, because

23 it's a majority vote that's going to determine

24 whether or not to accept or reject the ballot.

25  Q     **Okay.  And so that's the collective best**

RICHARDSON: BRIAN KEITH INGRAM

Page 80

1   **judgment of the members on that specific board;**
2   **correct?**
3   A      On the members of that specific board,
4   usually members of which are listed by both
5   political parties.  So it's a bipartisan
6   determination.
7   **Q      Okay.  If an early voting ballot board**
8   **believes that the signature on a mail-in -- a**
9   **ballot carrier envelope and a signature on the**
10  **application for ballot-by-mail don't match but**
11  **they believe that both are signed by the same**
12  **person, should the early voting ballot board**
13  **reject that mail-in ballot?**
14          MS. MACKIN:  Objection; form.  This
15      is -- I believe this is mischaracterizing
16      what the witness has testified to.
17          MR. MIRZA:  I'm not going back to
18      any of his prior testimony.  This is a
19      question on its own.
20          THE WITNESS:  The ballot board
21      doesn't determine whether or not
22      signatures match.  They determine whether
23      or not signatures could have been made by
24      the same person.  There's no such thing as
25      a match or a nonmatch.  There is a

RICHARDSON: BRIAN KEITH INGRAM

Page 81

```
1        determination as to whether or not the
2        signatures could reasonably have been made
3        by the same person.
4   BY MR. MIRZA:
5    Q      Okay.  So under that scenario, the early
6   voting ballot board should accept that mail-in
7   ballot then; correct?
8    A      I don't agree with that, no.  I
9   don't -- there's no such thing as a determination
10  of a match separate from whether or not they could
11  have been made by the same person.  The ballot
12  board is charged with determining whether or not
13  the signature on the application for a
14  ballot-by-mail could have been made by the same
15  person who signed the carrier envelope.
16   Q      Okay.  I think we're done with this
17  document for now.
18             MS. MACKIN:  Hani, really quick.
19             MR. MIRZA:  Go ahead.
20             MS. MACKIN:  I just can't see it on
21      the screen, and I didn't write it down.
22      Can you let me know what Bates number
23      we're looking at right now?  It was --
24             MR. MIRZA:  Oh.  Yeah.
25             MS. MACKIN:  Was it 1023?
```

hg

RICHARDSON: BRIAN KEITH INGRAM

Page 82

1      SOS_1023?

2                MR. MIRZA:  SOS_1025.

3                MS. MACKIN:  Okay.  Thank you.

4                MR. MIRZA:  No problem.

5  BY MR. MIRZA:

6   Q      Okay.  So you talked about this earlier,

7  but I'm going to jump to election advisories.

8             Has the Secretary of State's office

9  ever reached out to local election officials to

10 discuss -- to help assist in formulating an

11 election advisory?

12  A      I'm not sure how to answer that question.

13 Most of our advisories are either something that

14 we do for every election or they're something that

15 we're doing because we're getting questions from

16 election officials on the topic or, you know,

17 there's been a change in legislation and we're

18 anticipating questions from election officials on

19 the topic.

20  Q      Okay.  So when the Secretary of State

21 issues an election advisory, how does it ensure

22 that it's implemented?

23  A      We don't ensure implementation on

24 anything.  We have no enforcement power.  Our

25 office assists and advises counties and other

RICHARDSON: BRIAN KEITH INGRAM

Page 83

1  election officials, and that's what we do with

2  advisories, is we advise them.

3  **Q      How does the Secretary of State provide**

4  **their election advisories to local election**

5  **officials?**

6  A      We post them on our -- on our website, and

7  then there's specific "Conducting Your Elections"

8  for different kinds of election officials, and the

9  advisories applicable to that kind of election

10  official is on their "Conducting Your Elections"

11  page.  We also send them out by email, either a

12  link or as an attachment, to the group of election

13  officials that the advisory is directed to.

14  **Q      Do you have election advisories that -- I**

15  **guess if you have an election advisory**

16  **specifically talking about -- advising on the**

17  **duties of the early voting ballot board, who is**

18  **sent those -- that -- who would be sent that**

19  **election advisory?**

20  A      Well, it kind of depends upon what -- what

21  the advisory is about.  If it's about the general

22  election for state and county officers or if it's

23  about the primary election, then it will go to the

24  county clerk/election administrator email list.

25  If it's more generally applicable, then it will go

RICHARDSON: BRIAN KEITH INGRAM

Page 84

1  to the county clerk and election administrator

2  list and the list of cities, schools, and other

3  political subdivisions that we have.

4    Q    Since the members of the early voting

5  board can change from election to election, how do

6  you ensure that any advisories related to duties

7  of the early voting ballot board get to the early

8  voting ballot board?

9    A    We don't ensure it.  We send them to the

10  election officials, and that's -- our duty to

11  communicate has been resolved.

12    Q    And by "election officials," do you mean

13  the early voting clerk?

14    A    Right.  The early voting clerk.

15    Q    Okay.  I'm going to pull up another

16  document.

17         Okay.  This is -- 1, 2, 3 --

18  Exhibit 6, I think.  I just sent it.

19         (Exhibit 6 marked.)

20  BY MR. MIRZA:

21    Q    Let me know if you -- when you receive it.

22    A    I have it.

23    Q    Okay.  And this is a ballot by -- this is

24  SOS_737 to SOS_741.

25         Can you review these -- the first page

**hg**

RICHARDSON: BRIAN KEITH INGRAM

Page 85

1   and let me know when you're ready?

2       A       Yes.

3       Q       Okay.  And that page is, for the record,

4   SOS_737.

5               So can you generally describe -- are

6   you -- first of all, are you familiar with this

7   document generally?

8       A       Yes.

9       Q       Okay.  What is it?

10      A       This is an email from Christina Adkins to

11  the county clerks and election administrators.

12      Q       And what is the email communicating?

13      A       That we've issued an advisory and a new

14  notice of rejected ballot form that are posted on

15  our website.

16      Q       Okay.  And this is dated -- this is

17  February 12th, 2020; correct?

18      A       It is.  That's right.

19      Q       And is this when the -- this specific

20  advisory was issued?

21      A       Yes.

22      Q       Did you assist in creating this advisory?

23      A       I did.

24      Q       Did you assist in creating the updated or

25  the revised version of the notice of rejected

hg

RICHARDSON: BRIAN KEITH INGRAM

Page 86

1  ballot?

2   A      I did.

3   Q      Who else assisted in both the advisory and

4  the revised version of the notice of rejected

5  ballot?

6   A      Christina Adkins, and then, of course, we

7  run it by all of the attorneys for input.  And

8  help on the form would have been Alexa Buxkemper.

9   Q      Okay.  And the last person, what is her

10  title?

11   A      Alexa Buxkemper is one of our election

12  security trainers.

13   Q      Okay.  Okay.  I'd like to turn to the

14  actual advisory, which is included on

15  Pages SOS_738 and SOS_739.  I'll give you time to

16  review this -- these two pages.  Let me know when

17  you're ready.

18   A      I'm ready.

19   Q      Okay.  And can you read the bold print in

20  the middle of the document?

21   A      You're talking about on Page 738?

22   Q      Yes.  Yeah.

23   A      "However, our office recommends mailing

24  notices of rejected ballots to affected voters as

25  soon as possible."

RICHARDSON: BRIAN KEITH INGRAM

Page 87

1    Q      Why does your office recommend that?

2    A      Because the voter can have a chance to

3    talk to the early voting clerk about it.  If the

4    early voting clerk determines -- you know, they've

5    got the option to go to district court if they

6    determine that the ballot was wrongfully rejected,

7    and one of the ways that they know to do that is

8    if a voter complains about it.  And the voter

9    can't complain about it if they didn't get the

10   rejection in time.

11   Q      Okay.  And is there a deadline for when an

12   early voting clerk can request to overturn the

13   decision by the early voting ballot board in

14   district court?

15   A      Yes.

16   Q      And what is that deadline?

17   A      Whenever the votes are canvassed at the

18   local level.

19   Q      And how many days after an election is

20   that?

21   A      Well, it can't be earlier than 3 for

22   entity elections, and it can't be later than 15 or

23   18 days for a general election for state officers.

24   I think it's 18.  Hold, please.

25              It depends, but it's got to be in that

RICHARDSON: BRIAN KEITH INGRAM

Page 88

1    window.

2    Q      Okay.  Is there any other recourse an

3    early voting clerk can take to overturn the

4    decision by the early voting ballot board?

5                MS. MACKIN:  Objection; form.

6                THE WITNESS:  Yeah, the general

7         election for officers, the local canvass

8         can't be sent later than the 14th day

9         after election day.  So anywhere from 3 to

10        14 days.

11   BY MR. MIRZA:

12   Q      Okay.  Sorry.  Okay.  Thank you.

13               So is there any other action that the

14   early voting clerk can take to overturn the

15   decision by the early voting ballot board to

16   reject a ballot because it wasn't -- because they

17   determined that it wasn't signed by the same

18   voter?

19   A      I don't understand that question.

20   Q      So besides going to district court, is

21   there any other action that the early voting clerk

22   can take to overturn a decision by the early

23   voting ballot board?

24   A      No.

25               MS. MACKIN:  Objection; form.

hg

RICHARDSON: BRIAN KEITH INGRAM

Page 89

```
 1            THE WITNESS:   The decision of the
 2       ballot board is final unless the district
 3       court overturns it.
 4  BY MR. MIRZA:
 5    Q       Have you received any questions from local
 6  election officials about this advisory?
 7    A       I haven't, no.   I don't know if our office
 8  has.
 9    Q       Do you know if local elections officials
10  are using the updated or the revised notice of
11  rejected ballot?
12    A       I do not know.   I mean, it's loaded into
13  TEAM, so if they're generating their rejection
14  notices in TEAM, they're using it.
15    Q       Okay.   And when the Secretary of State
16  prescribes forms, what -- what do they take into
17  account when creating those forms?
18    A       The law.
19    Q       The election code; right?
20    A       That's right, or election laws outside of
21  the election code.   But a good form is a map to
22  the statute.
23    Q       Okay.   If it --
24    A       And then secondarily, we try to make it
25  legible and useable by voters and by election
```

hg

RICHARDSON: BRIAN KEITH INGRAM

Page 90

1    officials that use them.

2    **Q       Okay.  And the parts of the form that are**

3    **included because they are required by the election**

4    **code or any other election-related law, are those**

5    **the parts of the forms that cannot be altered by**

6    **local election officials if the election officials**

7    **decide to create their own forms?**

8    A       So you can't really separate parts of the

9    form that way.  The form is required by law.  The

10   stuff on the form is required by law; the layout,

11   not necessarily.  So if there's, you know, a

12   difference of opinion about how to lay this thing

13   out and the county wants to take a crack at making

14   it more user-friendly, then they're welcome to do

15   that and run that by us.

16   **Q       Okay.  And so the revisions that were made**

17   **on the notice of rejected ballot, local election**

18   **officials are required to include those revisions,**

19   **even if they decide to create their own version of**

20   **that notice?**

21   A       If they -- if they want to create their

22   own version of the notice of rejected ballot, it

23   should have the same content.  It just might be

24   arranged differently.

25   **Q       Okay.**



RICHARDSON: BRIAN KEITH INGRAM

Page 91

1   A      There are some -- there are some form

2   revisions that we make that you can keep using

3   your old stock.  You don't have to update to the

4   new form until you run out of your existing, you

5   know, printed stock of forms.  But other ones

6   require you to throw away your old stock and start

7   using this one immediately.  I believe this form

8   is one where you could keep using your old

9   versions if you have some printed already.

10  **Q      Okay.  Okay.  And what is the benefit of**

11  **mailing notices -- a notice of rejected ballot as**

12  **soon as possible?**

13  A      Like I said, it gives the voter time to

14  complain to the early voting clerk about the

15  decision and potentially preserves the right to

16  get the district court to overturn that decision,

17  if necessary.

18  **Q      If we could turn to the notice of rejected**

19  **ballot, the English version, which is on**

20  **SOS_000740.**

21  A      Okay.

22  **Q      Okay.  What portions of this -- what are**

23  **the revised or updated portions of this form, if**

24  **you could point -- if you could indicate those for**

25  **me?**

**hg**

RICHARDSON: BRIAN KEITH INGRAM

Page 92

1    A       I don't know.  I would have to look at a
2    redline version.
3    Q       Okay.  Was Item 1 on the old form?
4    A       I don't know.  I believe all of these were
5    on the old form.  They might not have been worded
6    exactly the same way.
7    Q       Okay.  Okay.  And if you could read the
8    first paragraph, and let me know when you're done.
9    A       I'm not sure what you mean by "first
10   paragraph" on the form.
11   Q       Right under --
12   A       "Reason for rejection:  (Check as
13   appropriate)."
14   Q       No, right under notice of -- the title
15   "Notice of Rejected Ballot."  So it starts with
16   "This is to serve as notice."  Let me know if
17   you're having trouble finding it.
18   A       Okay.  "This is to serve as notice that
19   your ballot for the" -- blank -- "election was
20   rejected by the early voting ballot board and was
21   not counted.  If you believe that your mail ballot
22   was rejected in error, please contact your early
23   voting clerk to determine what remedies may be
24   available to you."
25   Q       Was this -- have any handbooks been

hg

RICHARDSON: BRIAN KEITH INGRAM

Page 93

1   published related to mail-in voting since this
2   advisory was issued?
3    A      I don't know.  I don't know when we
4   updated the ballot board, if it was before or
5   after this.  It probably was before this, but I
6   don't know.
7    Q      Okay.  And so then the action you read,
8   "If you believe your mail ballot was rejected in
9   error, please contact your early voting clerk to
10  determine what remedies may be available to you,"
11  do you know if this action is mentioned in the
12  early voting ballot board handbook?
13   A      It's not -- it wouldn't need to be there.
14  Of course it wouldn't be there.
15   Q      And why wouldn't it be there?
16   A      Because the ballot board is not involved
17  in this transaction.
18   Q      Okay.  Is it included in any other
19  handbook?
20   A      No.
21   Q      Okay.  And what is the reason for that?
22   A      Because we don't have handbooks for early
23  voting clerks.
24   Q      Okay.  Well, any -- not just early voting
25  clerk handbook, but any -- I'm not just talking

**hg**

RICHARDSON: BRIAN KEITH INGRAM

Page 94

1   about hand- -- potential -- or hypothetical

2   handbooks for the early voting clerks.  I'm

3   talking about any handbooks related to mail-in

4   ballots.

5    A      But this is something that the early

6   voting clerk needs to know about, not anybody

7   else.  So it wouldn't be -- we try real hard,

8   believe it or not -- I don't believe it myself

9   sometimes -- but we try real hard not to have

10   extra words in our handbooks.

11   Q      Okay.  Is there any other guidance issued

12   by the Secretary of State that brings up this

13   action that voters can take?

14             MS. MACKIN:  Objection; form.

15             THE WITNESS:  I don't -- I don't

16       know what you're asking.

17   BY MR. MIRZA:

18   Q      So let's look back at the second sentence

19   of that first paragraph:  "If you believe that

20   your mail ballot was rejected in error, please

21   contact your early voting clerk to determine what

22   remedies may be available to you."

23             Is this mentioned in any other

24   guidance besides this advisory that this Secretary

25   of State has issued?



RICHARDSON: BRIAN KEITH INGRAM

Page 95

1   A     I don't think so.  I don't think it needs

2   to be anywhere else.  I'm not sure what you're

3   getting at.

4   **Q     And what -- why do you believe it doesn't**

5   **have to be mentioned anywhere else?**

6   A     Because this is the form that the voters

7   get that -- upon which they need to take action.

8   I don't know -- I really don't understand what

9   your point is.

10  **Q     So there's no other SOS guidance**

11  **allowing -- just, like, I guess, you know --**

12  **scratch that.**

13  **          Okay.  Is your office expecting an**

14  **increase in the use of mail-in ballots by voters**

15  **for the next elections, specifically the runoff**

16  **primary and the general election, due to concerns**

17  **about COVID-19?**

18            MS. MACKIN:  I'm going to object to

19        the form and also to the extent that this

20        question asks for attorney-client

21        communications between the office of the

22        Secretary of State, its personnel, and

23        their counsel regarding the upcoming

24        election.

25            And to the extent that you can



RICHARDSON: BRIAN KEITH INGRAM

Page 96

```
 1        answer without revealing attorney-client
 2        privileged information, Keith, you can do
 3        so.
 4              THE WITNESS:  So we do believe that
 5        mail ballot use is going to increase this
 6        year, yes.
 7   BY MR. MIRZA:
 8   Q     Okay.  What preparation --
 9   A     Let me rephrase that.  Let me rephrase
10   that.
11             We believe it's a possibility that
12   mail ballot use is going to increase this year,
13   and we have advised the counties to prepare for
14   that fact -- to prepare for that expectation.
15   Q     I didn't catch the -- I didn't catch the
16   last part of that answer.
17   A     So we believe it's conceivable that mail
18   ballot use could increase this year, and we have,
19   in our COVID Advisory 2020-14, advised the
20   counties to prepare for increased mail ballot use.
21   Q     Okay.  Has your office taken any
22   other -- made any other preparations for this
23   possible increase?
24              MS. MACKIN:  And same instruction
25        with respect to attorney-client privileged
```

hg

RICHARDSON: BRIAN KEITH INGRAM

Page 97

1      information.
2            To the extent that you can answer
3      without revealing that information, please
4      do so.
5            THE WITNESS:  We have convened an
6      advisory group of counties -- about, I
7      don't know, 22, 23 counties -- that we're
8      having biweekly phone calls with to talk
9      about ways to prepare for -- one of the
10     things we're talking about is ways to
11     prepare for increased mail ballot usage
12     and whether or not any of the mail ballot
13     forms should be revised, especially the
14     size of the envelopes or their appearance
15     of the envelopes, in order to facilitate
16     better transmission through the postal
17     system and cheaper.
18  BY MR. MIRZA:
19   Q     And what actions have you recommended
20  local elections officials take specifically to
21  manage for an increase in applications?
22   A     Well, it's in our 2020-14 advisory.
23   Q     Can you generally explain to me what --
24  what that said?
25   A     It says to prepare for an increase.

RICHARDSON: BRIAN KEITH INGRAM

Page 98

1    Q     But how -- does it explain how they should

2    explain -- prepare for an increase?

3    A     Let's just go read it.

4    Q     If you could just tell me based on --

5    A     Yeah, I can tell you after I read it.

6    Thank you.

7              "Because there may be a higher volume

8    of ballot-by-mail requests in 2020, we strongly

9    recommend that you review your current supply of

10   applications, balloting materials, and ballot

11   stock for future elections.  It's important that

12   you have the necessary supply on hand to meet

13   increased requests that you may receive."

14   Q     Okay.  Okay.  So during this deposition,

15   you've reviewed the COVID-19 advisory, the forms

16   page, and the election -- specific sections of the

17   election code.  Was there anything else you

18   reviewed while this deposition was going on?

19   A     No.

20   Q     Have you taken any notes during this

21   deposition?

22   A     I have not.

23   Q     Okay.  Okay.  Let's see.

24             Okay.  I'd like to turn back to -- I

25   think this was 1, 2 -- 1, 2, 3, 4 -- Exhibit 4.

**hg**

RICHARDSON: BRIAN KEITH INGRAM

Page 99

1    I'm going to send the link again, just to make

2    sure we're on the same page.

3    A      Okay.

4    Q      Okay.  I'd like to turn back to Bates

5    Number SOS_000468, and that should be Page 41 of

6    the PDF.

7    A      468 looks like Page 37 to me.

8    Q      It's 30- -- Page 37 of the actual

9    handbook, but of the PDF I sent, it's Page 41.

10   A      Oh, okay.

11   Q      Yeah.  Okay.  So do you see this -- did

12   you -- so we're back at "Situation 1:  Voter's

13   Signature Does Not Match."

14          Did you assist in preparing this

15   section?

16   A      I don't know.  I mean, I go to the lawyer

17   meetings whenever they're reviewing any changes to

18   these.  So, I mean, I was present.  I don't

19   know -- I don't remember having any specific

20   contributions to it.

21   Q      Okay.  Do you know who prepared this

22   section?

23   A      I do not know.

24   Q      Okay.  And if you could -- do you see the

25   sentence that says:  "The committee members must

RICHARDSON: BRIAN KEITH INGRAM

Page 100

```
1    use their best judgment if the signatures match"?
2    A      Uh-huh.
3    Q      Can you explain that sentence to me, what
4    that means?
5    A      Well, it means the committee members must
6    use their best judgment to see if the signatures
7    could have been made by the same person.
8    Q      Okay.  So are -- so I guess this is where
9    I'm having a little bit of trouble.
10            Are you saying that "signatures made
11   by the same person" equals "match" here?  Because
12   all you did was remove "match" and added
13   "signatures made by the same person."
14   A      That's right.  Because that's --
15           MS. MACKIN:  Objection; form.
16           THE WITNESS:  The common vernacular
17       for -- "made by the same person" is "a
18       match."
19   BY MR. MIRZA:
20   Q      Okay.  Okay.  And do you see the sentence:
21   "With that said, it is at the discretion of
22   committee members to use their best judgment and
23   to verify if these signatures are the same"?  It's
24   the second sentence.
25   A      Yes.
```

**hg**

RICHARDSON: BRIAN KEITH INGRAM

Page 101

1    Q       Okay.   And so does "same" have the same

2    meaning as "match" did in that other sentence we

3    just looked at?

4               MS. MACKIN:   Objection; form.

5               THE WITNESS:   They have to

6          decide -- their duty is to decide whether

7          or not the signatures could have been made

8          by the same person, whether they are of

9          the same person.   So "same" means "same

10         person."

11   BY MR. MIRZA:

12   Q       Okay.   To your knowledge, have election

13   officials contacted you or your office and asked

14   what this paragraph specifically and the duties

15   mentioned with -- for signature comparison -- I

16   mean signature verification, have they called to

17   ask what -- let me rephrase that question,

18   actually.   Strike that.

19              So looking at this sentence, has any

20   local election official called to ask what this

21   sentence means?

22   A       No.   That's not what they call about.

23   They call to ask about whether or not they should

24   accept a ballot.

25   Q       Okay.   So they usually don't call about

hg

RICHARDSON: BRIAN KEITH INGRAM

Page 102

1   whether -- like, how to --

2   A     They don't call about --

3   **Q     -- verify signatures?**

4   A     No.  That's not what I said, sir.

5   **Q     Okay.**

6   A     They don't call about what a particular

7   paragraph in the handbook means.  They call about

8   a particular signature on a particular carrier

9   envelope and whether to accept it or not.

10  **Q     Okay.  But what advice do you generally**

11  **give to them in that case?**

12  A     What we tell them is you're not

13  handwriting experts, nobody expects you to be a

14  handwriting expert; that your determination has to

15  be whether or not they could have been made by the

16  same person.

17        Now, it could have been made by the

18  same person.  Sometimes I write my signature in a

19  hurry; sometimes I write it more formally.  But

20  they're pretty clearly both my signature, even

21  though they're a lot different, but they're

22  recognizably made by the same person.  I said if

23  you're looking at that, then you should accept it.

24  You should not be hypertechnical.  You should not

25  expect the signatures to be an exact match.

RICHARDSON: BRIAN KEITH INGRAM

Page 103

 1   That's not what the election code requires.

 2              The election code requires you to

 3   determine whether or not they could have been made

 4   by the same person.  So think about your own

 5   signature and think about the variances therein,

 6   and then use your best judgment to determine

 7   whether or not what you're looking at could have

 8   been made by the same person.

 9   Q      Okay.  And then for the carrier envelopes

10   that are delivered to mail-in ballot voters, is

11   there any information on that envelope about

12   whether -- about -- kind of informing them about

13   the -- that a signature verification procedure

14   will take place?

15   A      I don't believe so, no.

16   Q      I'm sorry.  Can you repeat that?

17   A      I don't believe so, no.  The envelope is

18   full of statutory language.  We don't have any

19   room for anything else.

20   Q      Okay.  And the same goes for the

21   application for ballot-by-mail?

22   A      The application for ballot-by-mail, we've

23   already gone over.

24   Q      Okay.  And is there any other -- is that

25   information provided on any other material that is

RICHARDSON: BRIAN KEITH INGRAM

Page 104

1    sent to a mail-in ballot voter who requests a

2    ballot-by-mail?

3    A       I don't believe so.

4            There is some language where we have a

5    letter to the voter that -- it's included in the

6    mail ballot information, and it says:  "When we

7    receive your ballot back, we record its receipt,

8    and then after the signature on your application

9    for ballot-by-mail is compared to your signature

10   on the carrier envelope, place the -- we place the

11   unopened pink envelope into a ballot box.  As a

12   result, when the ballots are counted, there's no

13   connection between who you are and which ballot is

14   yours."

15   Q       And what are you reading right now?

16   A       I'm reading an email from Caroline Geppert

17   to Michelle Parker from 2013.

18   Q       So is that something that's provided to

19   every mail-in ballot voter, that information?

20   A       Yeah, it's in the ballot-by-mail

21   instructions.

22   Q       The ballot-by-mail instructions on the

23   website, or where --

24   A       Under the ballot-by-mail instructions that

25   are -- that are included with the ballot-by-mail

RICHARDSON: BRIAN KEITH INGRAM

1   materials.

2   Q      Okay.  And so when a -- when somebody who

3   requests a mail-in ballot receives the ballot

4   materials, what are included in those materials?

5   A      They get a "Dear Voter" letter.  They get

6   instructions.  They -- if they need to have a

7   statement of residence, they get a statement of

8   residence form.  If they need to have an ID

9   provided when they return it, they get a notice to

10   ID voters.  They get the carrier envelope, and

11   they get a secrecy envelope.  I don't know of

12   anything else.

13   Q      And so that mentioned signature comparison

14   is made in which document out of all those

15   documents?

16   A      The carrier envelope and the application.

17   Q      The carrier envelope?  Oh, sorry.  You cut

18   out for a second.  Can you repeat the answer?

19   A      The carrier envelope and the application.

20   Q      The carrier envelope and the application,

21   I think there might be some confusion.

22          The carrier envelope and the

23   application mention signature -- the signature

24   verification procedure?

25   A      No.

RICHARDSON: BRIAN KEITH INGRAM

Page 106

1    Q      Okay.  So what I'm asking is which one of

2    the documents that you just listed that a person

3    who's requested a mail-in ballot receives includes

4    the mention of the signature verification

5    procedure?

6    A      I believe it's on the instructions, but

7    let me find it.

8            If we can take a break a minute, I've

9    got to make a phone call to figure out where these

10   are.

11   Q      Who are you planning to make a phone call

12   to?

13   A      Christina Adkins.

14   Q      And the sole purpose of that call is to

15   figure out where that document is?

16   A      So that I can read it.

17   Q      Okay.  How much of a break will you need?

18   A      I don't know.  I mean, it's 12:30.  I was

19   hoping I would get to eat sometime today.

20   Q      We're pretty close to the end.

21           MS. MACKIN:  Hani, what if we just

22       cover this in the 30(b)(6)?

23           MR. MIRZA:  Sure.  I think -- I

24       think that should work.

25           MS. MACKIN:  And that way, you

RICHARDSON: BRIAN KEITH INGRAM

Page 107

```
 1   know, we can take a break and he can talk
 2   to Christina and figure this out and then
 3   get you a fulsome answer.
 4           MR. MIRZA:  Okay.  Yeah, that
 5   works.
 6           Okay.  I think I have only a couple
 7   more questions.  I want to take a quick
 8   break after that, and then we can resume.
 9   Let me -- let's just take a five-minute
10   break right now.  I think I'm close to the
11   end.  I just want to make sure I don't
12   have anything that I'm missing.  And so we
13   can be back at 12:36?
14           THE WITNESS:  Okay.
15           MS. MACKIN:  Okay.
16           THE VIDEOGRAPHER:  We're going off
17   the video record.  The time is 12:32 p.m.
18       (Recess from 12:32 p.m. to 12:37 p.m.)
19           THE VIDEOGRAPHER:  We are back on
20   the record.  The time is 12:37 p.m.
21           MR. MIRZA:  Okay.  I don't think I
22   have any questions at this time, so I'm
23   going to pass the witness.
24           MS. MACKIN:  And I will reserve any
25   questions.
```

RICHARDSON: BRIAN KEITH INGRAM

Page 108

1              MR. MIRZA:   Thank you.

2              MR. TAWIL:   This is Isaac Tawil for

3      Perla Lara in her capacity as city

4      secretary, City of McAllen.   We, too, will

5      reserve any questions.

6              MR. MAGEE:   This is Eric Magee on

7      behalf of Trudy Hancock in her official

8      capacity as Brazos County elections

9      administrator.   We'll reserve our

10     questions as well.

11             THE VIDEOGRAPHER:   Okay.   This

12     concludes the video deposition of Keith

13     Ingram.   The time is 12:38 p.m.   We are

14     now off the record.

15         (Off the record at 12:38 p.m.)

16

17

18

19

20

21

22

23

24

25

**hg**

RICHARDSON: BRIAN KEITH INGRAM

Page 109

```
 1                UNITED STATES DISTRICT COURT
                  WESTERN DISTRICT OF TEXAS
 2                   SAN ANTONIO DIVISION

 3   DR. GEORGE RICHARDSON;          )
     ROSALIE WEISFELD; AUSTIN JUSTICE )
 4   COALITION; COALITION OF TEXANS  )
     WITH DISABILITIES; MOVE TEXAS   )
 5   CIVIC FUND; LEAGUE OF WOMEN     )
     VOTERS OF TEXAS; and AMERICAN GI )
 6   FORUM OF TEXAS, INC.,           )
                                     )
 7          Plaintiffs,              )
                                     )Civil Case No.
 8   v.                              )5:19-cv-00963-OLG
                                     )
 9   TEXAS SECRETARY OF STATE; TRUDY )
     HANCOCK, in her official        )
10   capacity as BRAZOS COUNTY       )
     ELECTIONS ADMINISTRATOR; and    )
11   PERLA LARA, in her official     )
     capacity as CITY OF McALLEN,    )
12   TEXAS, SECRETARY,               )
                                     )
13          Defendants.              )

14
                    REPORTER'S CERTIFICATION
15           REMOTE VIDEOTAPED DEPOSITION OF
                    BRIAN KEITH INGRAM
16                    May 11, 2020

17          I, Rebecca A. Graziano, Certified Shorthand

18   Reporter in and for the State of Texas, hereby

19   certify to the following:

20          That the witness, BRIAN KEITH INGRAM, was

21   duly sworn and that the transcript of the oral

22   deposition is a true record of the testimony given

23   by the witness;

24          I further certify that pursuant to FRCP Rule

25   30(f)(1) that the signature of the deponent:
```

**hg**

1          ____ was requested by the deponent or a

2     party before the completion of the deposition and

3     returned within 30 days from date of receipt of

4     the transcript.  If returned, the attached Changes

5     and Signature Page contains any changes and the

6     reasons therefor.

7          ____ was not requested by the deponent or a

8     party before the completion of the deposition.

9          I further certify that I am neither attorney

10    nor counsel for, related to, nor employed by any

11    of the parties to the action in which this

12    testimony was taken.

13          Further, I am not a relative or employee of

14    any attorney of record in this cause, nor do I

15    have a financial interest in the action.

16          Subscribed and sworn to on this ___ day of

17    _____, 2020.

18

19

20

21    _____

      Rebecca A. Graziano, CSR, RPR, CRR

22    Texas CSR No. 9306

      Expiration Date:  07/31/22

23

24

25

RICHARDSON: BRIAN KEITH INGRAM

## 0

**000477** 4:15

**000741** 4:20

**001029** 4:17

## 1

**1** 4:7 11:4,5 63:22 84:17 92:3 98:25 99:12

**1-800** 24:7

**10** 33:14,22

**10019** 2:12

**1023** 81:25

**11** 1:15,20 4:7

**11:14** 68:13,14

**11:32** 68:14,17

**11th** 5:4

**12:30** 106:18

**12:32** 107:17,18

**12:36** 107:13

**12:37** 107:18,20

**12:38** 1:21 108:13,15

**12th** 2:23 85:17

**14** 88:10

**1405** 2:6

**14th** 88:8

**15** 68:8 73:12 87:22

**15th** 2:18

**18** 87:23,24

**1985** 16:4

**1989** 16:7

**1993** 16:8

**1st** 65:23

## 2

**2** 4:8 33:1,2 76:10 84:17 98:25

**2002** 64:14

**2003** 20:16

**2012** 8:10 11:23 16:20

**2013** 15:12 104:17

**2020** 1:15,20 4:14 5:5 39:23 58:24 85:17 98:8

**2020-14** 96:19 97:22

**212 728-8000** 2:13

**22** 97:7

**23** 97:7

**29** 69:17

**2B** 65:9

## 3

**3** 4:9 14:6 35:9,10 84:17 87:21 88:9 98:25

**30** 14:8

**30(b)(6)** 106:22

**30-** 99:8

**300** 2:18

**31.005** 25:25

**33** 4:8

**35** 4:10

**37** 99:7,8

**39** 60:24

## 4

**4** 4:11 58:21,25 60:21 76:4 98:25

**4-** 60:24

**41** 63:17 99:5,9

**448** 63:19

**466** 60:22,23

**468** 63:20 99:7

**49** 65:5

## 5

**5** 4:16 69:21,22

**512 463-2100** 2:19

**512 474-5073** 2:7

**512 482-0701** 2:24

**58** 4:15

**5:00** 38:3

**5:19-cv-00963-olg** 5:7

**5th** 16:20

## 6

**6** 4:18 84:18,19

**65** 43:4

**69** 4:17

## 7

**7** 4:3

**738** 86:21

**78501** 3:7

**787** 2:12

**78701** 2:18,24

**78741** 2:6

## 8

**84** 4:20 40:3

**84.-** 49:13

**87.004** 52:6

**87.041(c)** 49:13

**87.127** 45:1

## 9

**956 681-3111** 3:7

**9:32** 1:21 5:2,5

## A

**A&m** 16:5

**a.m.** 1:21 5:2,5 68:13,14,17



RICHARDSON: BRIAN KEITH INGRAM

**A1** 61:2

**above-styled** 1:20

**absence** 63:8

**absentee** 30:14

**Absolutely** 9:23

**abused** 26:2

**accept** 59:17 61:11,13 79:24 81:6 101:24 102:9,23

**acceptable** 65:3

**accepted** 45:3 50:1 58:13,14 60:8

**access** 10:22 11:8 71:14

**accompany** 29:17

**accomplish** 18:13

**account** 26:13 89:17

**accountability** 36:22

**accurate** 8:1 9:25

**Act** 64:14

**action** 5:6 12:22 25:23 45:13,16, 20 48:17 56:10,16 57:12 88:13,21 93:7,11 94:13 95:7

**actions** 44:24 97:19

**activities** 15:1 71:12

**activity** 11:22

**actual** 86:14 99:8

**add** 9:19

**added** 100:12

**addition** 7:22

**additional** 9:16 22:22 23:12 49:18 55:21

**address** 33:8 74:13

**Adkins** 19:3 85:10 86:6 106:13

**administration** 12:17 18:25

**administrator** 1:10 2:21 6:13 83:24 84:1 108:9

**administrators** 49:18 85:11

**admissions** 13:7

**advice** 25:16 37:20 42:7 102:10

**advise** 17:23 24:9 29:1 38:19 83:2

**advised** 96:13,19

**advises** 82:25

**advising** 17:22 25:3 83:16

**advisories** 18:1 24:10 25:6,11,12, 21 29:2 82:7,13 83:2,4,9,14 84:6

**advisory** 4:18 82:11,21 83:13,15, 19,21 85:13,20,22 86:3,14 89:6 93:2 94:24 96:19 97:6,22 98:15

**affected** 86:24

**affidavit** 30:22

**Africa** 15:19

**afternoon** 13:4,13

**agencies** 72:10,17

**agency** 72:10

**agree** 81:8

**agreed** 46:9

**ahead** 57:4 81:19

**Alexa** 86:8,11

**Algeria** 15:19 16:1

**ALLISON** 2:23

**allowed** 33:23,24 61:19 62:2

**allowing** 41:14 55:1 95:11

**altered** 90:5

**Amended** 11:3

**Amendment** 11:3

**America** 64:13

**AMERICAN** 1:5

**amount** 47:6

**analysis** 62:1

**and/or** 49:23

**Anna** 2:17 5:24 6:7 32:14 63:1,5,9 68:23,25 69:1,10

**anna.mackin@ texasattorneygeneral.gov** 2:19

**annual** 22:1 29:24 36:14,16

**answering** 77:18,21,22

**answers** 7:23 8:1 9:10 10:3 13:5,6 15:3

**anticipating** 82:18

**ANTONIO** 1:2

**apologize** 69:4,9,10

**appearance** 97:14

**appearances** 5:18

**appellate** 19:18

**applicable** 83:9,25

**application** 4:8 12:13 17:19 24:4 27:19 28:11 29:9,13,16,18,23,25 30:1,3,11,13,17,20,21 33:1 36:15, 17 38:23 39:25 40:5,9,20 49:23 55:24 59:20 61:8 64:18 80:10 81:13 103:21,22 104:8 105:16,19, 20,23

**applications** 30:15 31:21 38:25 41:7 50:25 53:2 55:18 97:21 98:10

**applied** 17:2

**apply** 16:24 32:10

**appoint** 27:12,13 51:18 52:5 68:2 70:22,23

**appointments** 19:12,16,17,21 20:5,10

**appoints** 51:7,13

**approach** 23:2 73:18

**appropriately** 23:19

**appropriation** 21:10,16

**approval** 31:25

**approved** 31:20

**approximately** 5:5 14:9 68:17

**area** 16:14 20:14,18

**arranged** 90:24

**arrive** 37:17

**asks** 95:20

**assist** 17:23 18:9 19:19 24:8 28:25 82:10 85:22,24 99:14

**assistance** 23:16 25:16 37:20

**assisted** 86:3

**assisting** 17:22 25:3

**assists** 82:25



**Association** 26:8

**assuming** 40:8 51:15

**astevenson@mcallen.net** 3:8

**attachment** 4:19 83:12

**attention** 69:15

**attorney** 2:17 5:25 7:7 17:3 26:2

**ATTORNEY'S** 3:6

**attorney-client** 95:20 96:1,25

**attorneys** 14:6 19:4 86:7

**audio** 11:20 72:17

**Austin** 1:3 2:6,18,24 3:5 5:12 15:17

**Avenue** 2:12 3:6

**aware** 23:11 45:10,12

---

**B**

**B-R-I-A-N** 7:12

**back** 8:5 15:12 16:3 24:24 32:11 34:21 40:13 53:5 58:15 59:15 63:9 68:16 69:18 80:17 94:18 98:24 99:4,12 104:7 107:13,19

**background** 15:14 20:15

**ballot** 4:8,11 13:8 14:14,20,23 26:23 27:4,9,13,20 28:15 29:15 30:4,10,12,13,14,17,22 31:1,4,5 32:10 36:15 37:21 38:23 39:7,9,12, 14,17 40:8,10,20,24 41:3,15,16,22 42:19,24 43:10,12,15 44:4,5,10,24 45:3 46:14,15,18,19,25 47:18 48:2, 9,19,21 49:6,10,21 50:1 51:19 52:5,8 53:4,6 54:25 55:14,21 56:11,13,17 57:9,10,14,20,25 58:7, 9,22 59:5,11,18,22 60:9,10,11 61:10,11,14 62:4,8 64:6,7,11,24 65:25 66:22 67:21,24 68:2 71:23 72:5 75:1,7 76:16,19 77:2,3,8,12 78:4,11 79:7,24 80:7,9,12,13,20 81:6,7,11 83:17 84:7,8,23 85:14 86:1,5 87:6,13 88:4,15,16,23 89:2, 11 90:17,22 91:11,19 92:15,19,20, 21 93:4,8,12,16 94:20 96:5,12,18, 20 97:11,12 98:10 101:24 103:10 104:1,6,7,11,13,19 105:3 106:3

**ballot's** 60:13

**ballot-by-mail** 13:11,25 15:1 29:9,14,18,23,25 30:1,3,24 31:21 33:1 36:17 39:1 40:1 55:24 61:8 80:10 81:14 98:8 103:21,22 104:2, 9,20,22,24,25

**balloting** 98:10

**ballots** 22:13 27:17 31:5,6 37:17 38:1,5,8 39:16 40:17 43:20 45:4 46:6,21,24 47:9,11,13,15,19 54:23 56:19,21,22,23,24,25 57:6,7,24 58:8,12 60:7 65:24 86:24 94:4 95:14 104:12

**bar** 12:25

**based** 45:16 61:25 62:1,3 77:9 98:4

**basically** 17:24 20:17

**Basin** 16:3

**basis** 18:3

**basket** 60:6

**BASS** 2:23

**Bates** 4:9,14,16,19 60:21 63:16 65:4,12 69:16,17 81:22 99:4

**Bechtel** 15:20

**Becky** 5:15

**began** 8:10

**begin** 69:11

**beginning** 69:19

**behalf** 5:22,25 6:6,7,11,19 108:7

**believes** 45:3 80:8

**benefit** 91:10

**Beth"-i-o-u-a** 16:1

**Bethioua** 15:25

**big** 42:12

**bill** 20:16

**bills** 18:11

**bipartisan** 80:5

**birth** 64:21

**bit** 8:5 20:9 22:3 53:5 100:9

**biweekly** 97:8

**blank** 30:10 40:8 41:3 92:19

**board** 4:11 13:8 14:15,20,23 19:25 20:1 21:21,22 27:4,9,13 28:15 31:1 37:21 39:12,17 41:22 42:24 44:4,5, 10,24 45:3 46:15,18,19 47:1 48:3, 9,19,21 49:6,10 51:19 52:5,8 53:4, 7 54:25 55:14,21 56:11,18 57:9,10, 14,20,25 58:7,9,22 59:5,11,23 60:10 61:10 62:4 66:23 67:24 68:3 72:5 75:1,7 76:16,19 77:3,9,13 78:5,11 79:7 80:1,3,7,12,20 81:6, 12 83:17 84:5,7,8 87:13 88:4,15,23 89:2 92:20 93:4,12,16

**board-certified** 16:13

**board/committee** 49:14

**boards** 19:23 20:2 62:8

**bold** 86:19

**book** 49:6

**box** 71:21 104:11

**boxes** 31:1

**Brazos** 1:10 2:21 6:12 108:8

**break** 10:13,15 68:7 106:8,17 107:1,8,10

**breaks** 10:12

**Brian** 1:15,17 6:23 7:12

**brings** 94:12

**broad** 27:11

**budget** 21:21,22 22:1

**bunch** 8:14

**Buxkemper** 86:8,11

**buzzing** 54:7

---

**C**

**Caldwell** 45:18 46:3

**call** 14:5,25 64:20 101:22,23,25 102:2,6,7 106:9,11,14

**called** 101:16,20

**calls** 21:20 97:8

**cancel** 30:1,2

**cancellation** 30:19

**candidate** 12:10,12 51:11



**canvass** 38:9 88:7

**canvassed** 87:17

**capacity** 1:10,11 2:21 3:3 6:3,8,12 8:7 12:6,20 108:3,8

**Caroline** 15:6 104:16

**carrier** 4:9 27:20 28:10 29:12 30:5, 8,18 32:12 35:14,17 36:22 37:6 40:11,12 41:11,16 42:13,18 43:12 49:23 50:25 53:2 55:23 59:20 60:5 61:7 66:1 80:9 81:15 102:8 103:9 104:10 105:10,16,17,19,20,22

**case** 1:7 5:21 7:8 11:20,25 12:15 13:5 46:4 102:11

**catch** 36:1 44:17 75:18 96:15

**central** 75:8

**certification** 72:25

**certifications** 16:10,12

**chair** 67:3,8,9

**challenging** 20:12

**chance** 87:2

**change** 18:11 39:7,9,10,17 82:17 84:5

**Chapter** 40:3

**characterize** 62:20

**charge** 39:4

**charged** 81:12

**charts** 51:25

**chat** 11:1

**cheaper** 97:17

**check** 64:20 92:12

**checklist** 29:17 30:15 71:11,15 72:4

**chief** 17:10 23:21,24,25

**choose** 41:23 42:4

**Christian** 16:3

**Christina** 12:12 19:2 85:10 86:6 106:13 107:2

**cities** 84:2

**city** 1:11 2:12 3:3,6 6:4 27:5 52:2 108:3,4

**CIVIC** 1:5

**civil** 1:24 2:5 5:6,12

**clarification** 9:17

**clarify** 6:6 8:12

**clarifying** 79:5

**clear** 43:17

**clerk** 36:24 37:8,14 38:20 40:14 42:11,17,22 44:14,15,18,22 45:2, 13,21 46:9 48:9,12,16 49:1,4,17 55:25 56:1,6,22 57:23 58:8,15 60:14,18 66:18,22 68:1,2 75:5 84:1,13,14 87:3,4,12 88:3,14,21 91:14 92:23 93:9,25 94:6,21

**clerk's** 29:19 75:12

**clerk/election** 83:24

**clerks** 4:14 27:9 40:16 41:20 45:15,23 51:18 58:24 85:11 93:23 94:2

**close** 68:5 106:20 107:10

**COALITION** 1:4

**code** 17:20,21 22:18,19 24:5,6 26:16,18 37:19 45:1 51:24 56:14, 19 70:21 74:3,5 89:19,21 90:4 98:17 103:1,2

**codes** 13:11

**collective** 79:22,25

**combine** 47:17

**Commission** 12:17

**committee** 4:12 27:10 42:25 44:9, 13 50:19,21 52:14,25 53:21 54:22 56:2 57:17 61:20 62:8,21 66:17,20 99:25 100:5,22

**committees** 55:3

**common** 42:14 100:16

**communicate** 84:11

**communicating** 85:12

**communications** 95:21

**compare** 28:12 49:14 50:4,6 53:2

**compared** 49:9 50:8 104:9

**comparing** 43:10 79:8

**comparison** 26:24 28:3 101:15

105:13

**complain** 87:9 91:14

**complained** 46:13

**complains** 87:8

**complaint** 12:23

**complete** 9:10 10:10 56:12,18 57:9,11

**completely** 9:14,25

**complies** 31:18

**components** 40:6

**composed** 39:18

**composition** 39:17

**conceivable** 96:17

**concerns** 95:16

**concludes** 108:12

**conditions** 33:25

**conducted** 71:23

**conducting** 8:22 25:4 83:7,10

**confidentiality** 29:14

**confirm** 49:19

**confusion** 105:21

**connection** 104:13

**constitutes** 27:15

**construction** 15:21

**contact** 66:3,13 92:22 93:9 94:21

**contacted** 101:13

**contacting** 66:8

**content** 76:9 90:23

**continue** 74:6

**contributions** 99:20

**convene** 56:3

**convened** 97:5

**conversation** 23:17

**copy** 64:10 65:2

**corporation** 15:21

**correct** 11:13,14 16:17 33:9,15 35:15 38:24 39:5 41:21 42:21 43:1



44:2,6 54:23,24 56:3,4 57:20 62:12 64:7 66:4,5,14,15,20 75:2,5,14 79:21 80:2 81:7 85:17

**corrections** 10:2

**correctly** 22:21 25:19

**council** 19:22

**counsel** 5:11,17 95:23

**count** 37:16 47:14 54:22

**counted** 58:14 92:21 104:12

**counties** 13:10 14:25 25:1 28:14 36:12 73:8,20 74:17 82:25 96:13, 20 97:6,7

**counting** 39:16 46:21 54:25 75:8

**county** 1:10 2:21 6:12 15:5 29:21 36:13,18 43:4,8 44:7 45:18 46:4 47:3,4 51:9,16 53:23,25 54:13,16, 18 58:10 64:19 67:3,7,9,25 73:5 74:2,7,12,14 83:22,24 84:1 85:11 90:13 108:8

**county's** 74:13

**countywide** 53:25 54:14

**couple** 107:6

**court** 1:1 5:14 7:24 8:1 10:7 19:18 45:6 46:1,8,9,12,16 57:15 87:5,14 88:20 89:3 91:16

**cover** 106:22

**COVID** 96:19

**COVID-19** 95:17 98:15

**Cox** 2:4 5:22 68:22 69:7

**crack** 44:9 90:13

**craft** 18:11

**create** 18:4 55:2 66:18 90:7,19,21

**created** 24:20 70:17

**creates** 44:12 45:1 59:7 70:7

**creating** 66:25 85:22,24 89:17

**cross-pollinate** 26:11

**cross-section** 73:18,24

**cross-train** 22:10

**CRR** 1:22

**CSR** 1:22

**cum** 16:6

**cure** 41:15

**current** 11:25 16:15 19:7,9 98:9

**cut** 32:16 60:17 105:17

**cutting** 70:15

**cycle** 47:2

---

**D**

**Dan** 19:1

**database** 64:9

**date** 64:21 73:25

**dated** 85:16

**day** 28:14 37:22 38:2,4 40:13 43:6 56:3 57:8 73:15 88:8,9

**day-to-day** 17:17 70:25 71:2

**days** 27:24 38:6 56:7 87:19,23 88:10

**deadline** 37:18 41:17 56:14,19,20, 21 57:2,10,15 87:11,16

**deal** 22:18 46:20

**dealing** 22:19

**Dear** 105:5

**Death** 11:22

**decide** 44:16,19 51:1 90:7,19 101:6

**decides** 56:1

**decision** 87:13 88:4,15,22 89:1 91:15,16

**deemed** 37:18

**defect** 42:5,6,14

**defective** 30:16

**defects** 41:15,21 42:10

**defendant** 2:15,20 3:3 6:6,7,11 12:3 36:10

**defendants** 1:13 6:1

**deficiencies** 74:13

**deliver** 40:13 56:21 58:2,4

**delivered** 103:10

**delivering** 40:24 42:23 57:24

**delivery** 29:24 36:22 37:6 58:1

**denial** 30:2

**depends** 38:15 47:3,4 51:8 59:21 67:22 83:20 87:25

**deployed** 73:4

**depo** 13:3 15:3

**deponent** 5:9 6:21

**deposed** 7:16,19 8:7 11:15,17,18, 19,21

**deposition** 1:14,17 4:7 5:10 7:9 8:6,22 10:24 11:4,13 13:2,16 14:10,16 78:20 98:14,18,21 108:12

**depositions** 8:9,12,13,14

**deputy** 18:17

**describe** 48:6 49:11 71:17,18,19 85:5

**DESCRIPTION** 4:6

**designated** 67:12

**designations** 16:10

**details** 46:5

**determination** 44:23,25 45:6 60:1 61:10 77:13 78:5 79:10 80:6 81:1,9 102:14

**determinations** 46:23

**determine** 46:23 50:16 73:8 79:14,23 80:21,22 87:6 92:23 93:10 94:21 103:3,6

**determined** 88:17

**determines** 76:16 87:4

**determining** 41:11 81:12

**develop** 24:25 26:5

**developed** 24:14 78:19

**developing** 26:13

**difference** 90:12

**differently** 90:24

**difficulties** 9:6

**direct** 19:4

**directed** 83:13



**directions** 34:20

**directives** 18:2 29:3

**director** 8:8 16:16,21 17:2,8,15
19:3 20:4,8,9,21 22:5,14 26:21

**Directors** 26:8

**DISABILITIES** 1:4

**disability** 71:14

**disabled** 43:4 71:14

**disagrees** 44:23

**disciplinary** 12:22

**discovery** 13:5 15:3

**discrepancies** 61:18 62:2 71:19,
20

**discretion** 50:18 100:21

**discuss** 13:24 33:11 66:16 82:10

**discussing** 65:19

**disgruntled** 15:9

**dispensers** 19:24

**distort** 36:4

**distribution** 39:5

**district** 1:1 19:18 22:20 27:6 45:6
46:8,12,16 87:5,14 88:20 89:2
91:16

**division** 1:2 17:13,15 18:24

**doctor** 16:11

**document** 10:21 11:1,2,8,10
13:12,13 32:13 33:5,7,11,15 34:3,
10,13 35:12 51:22,23 52:10,12
58:17 59:2 60:25 63:18 65:5,6 67:5
68:20 69:24 70:1 81:17 84:16 85:7
86:20 105:14 106:15

**documents** 10:23 12:18 14:2,13,
16 15:2 50:5 105:15 106:2

**Dolling** 2:5

**drafting** 21:15

**Drive** 2:6

**driver's** 64:17

**due** 95:16

**duly** 1:19 6:22,24

**duties** 23:25 24:9 46:17 67:20
70:25 71:1,2 83:17 84:6 101:14

**duty** 67:23 68:1 84:10 101:6

**E**

**e.magee@allison-bass.com**
2:25

**earlier** 9:18,20 23:20 82:6 87:21

**early** 4:11 13:8 14:14,20 27:8
29:15,19 30:9,25 31:5,6 36:23
37:7,14 38:20 40:14,15 41:20
42:10,16,22,24 43:5 44:13,15,18,
22,24 45:2,12,15,20,22 46:9,18,19,
25 48:2,8,11,16 49:1,4 51:18,19
52:5,8 53:4,6 55:21,25 56:1,6,11,
17,22 57:19,23,25 58:7,8,15,22
59:5,11 60:10,14,18 61:10 62:3
66:18,21 68:1,2 72:5 75:1,5 79:7
80:7,12 81:5 83:17 84:4,7,13,14
87:3,4,12,13 88:3,4,14,15,21,22
91:14 92:20,22 93:9,12,22,24 94:2,
5,21

**easy** 10:22

**eat** 106:19

**education** 22:18

**educational** 15:13

**Edwards** 11:20

**effect** 40:4

**efficient** 67:2

**eighth** 15:24

**election** 4:13,16,18 12:17 17:11,
20,21,22,24 18:2,3 19:2,20 20:11
23:24 24:1,5,6,9 25:3,11,20 26:3,6,
8,16 27:3,7,8 28:14 37:14,19,22
38:2,4,7,12 39:8,24 40:13 43:5
45:1,10 47:1,2,16 51:8,9,12,24
52:1,5 53:12 54:14,16,19 56:3,14,
19 57:8 58:23 65:1,22 66:3 67:18,
22,23,25 70:5,19,20,23 71:5,24
72:3,21 73:5,14,25 74:3,5 82:7,9,
11,14,16,18,21 83:1,4,8,9,12,14,
15,19,22,23 84:1,5,10,12 85:11
86:11 87:19,23 88:7,9 89:6,19,20,
21,25 90:3,6,17 92:19 95:16,24
98:16,17 101:12,20 103:1,2

**election-holding** 36:18 44:8

**election-related** 12:1 90:4

**elections** 1:10 2:21 6:13 8:8
16:16,22 17:2,9 20:4,8,21 22:5,14
23:21,22 24:16,21 25:1,4 26:22
27:2 31:13 39:13 49:17 51:16,20
53:23 54:1 55:2 65:21 70:22 72:15,
16 74:6,7 83:7,10 87:22 89:9 95:15
97:20 98:11 108:8

**elementary** 15:15,16,17

**eleven** 7:21

**eleventh** 16:2

**eligibility** 53:12

**eligible** 43:3

**email** 4:18 15:5,8,10 29:17 33:8
66:13 83:11,24 85:10,12 104:16

**emails** 25:7 29:2

**encountered** 25:20 28:17

**end** 65:22 69:17,18 106:20 107:11

**enforcement** 25:13 82:24

**engage** 23:16

**English** 91:19

**ensure** 82:21,23 84:6,9

**entire** 43:5 54:17

**entities** 36:18

**entity** 29:20 44:8 51:20 52:4 54:19
65:25 87:22

**envelope** 4:9 27:20 28:10 29:12,
13 30:4,5,8,9,10,17,18 31:4 32:12
35:14,17,21,22 37:7 40:11,12
41:12,16 42:13,18 43:13 49:24
55:23 59:19,20 60:5,6 61:7 66:1
80:9 81:15 102:9 103:11,17
104:10,11 105:10,11,16,17,19,20,
22

**envelopes** 36:23 42:19,23 50:25
53:3 58:5 60:8 97:14,15 103:9

**equally** 41:25

**equals** 100:11

**equipment** 71:13 73:23

**Eric** 2:22 6:10 108:6

**error** 92:22 93:9 94:20



Esparza 18:18

et al 5:8

EVBB 50:13 51:7,13 59:17

Even-numbered 22:2

exact 102:25

EXAMINATION 4:3 7:1

examiner 52:10

examiners 52:12

exception 26:1

exchange 36:14

exhibit 4:7,8,9,11,16,18 11:4,5
33:1,2 35:9,10 58:21,25 60:20,21
69:20,22 84:18,19 98:25

EXHIBITS 4:5

existing 91:4

expatriates 15:22

expect 52:11 74:12 102:25

expectation 96:14

expecting 95:13

expects 102:13

experience 42:15 77:10

expert 52:10 102:14

experts 52:12 102:13

explain 18:14 21:14 22:16 32:9
33:12 34:13 37:23 46:17 57:23
59:4 65:18 77:22 97:23 98:1,2
100:3

extent 36:5 95:19,25 97:2

extra 94:10

---

**F**

facilitate 97:15

fact 23:11 37:25 76:20 77:5,15
96:14

facts 78:18

fail 75:14

failing 75:14

fair 10:18

fairly 78:24

familiar 17:4 26:16,17 33:4 35:12
48:20 67:7,11 70:1 76:7,9 85:6

familiarity 26:15

familiarizes 48:22

family 15:18

fancy 51:25

Farr 2:11 6:16,18

February 85:17

federal 1:24 29:16 30:13,15,16,20

feel 23:14 47:5

felt 20:12 46:14

field 24:7

figure 106:9,15 107:2

file 11:22 49:17 50:23 79:20

filed 11:21 12:23

fill 22:10 39:25 40:5,10 71:12,16

filling 19:19

final 44:11 89:2

find 20:2 106:7

finding 92:17

Fine 68:10

finish 8:24

firm 6:15,18

fit 71:21

fitters 19:24

five-minute 107:9

flagged 64:23

Flanagan 3:11 5:13

flap 35:16,21

flexible 23:1

Floor 3:6

folks 20:2

follow 24:13,15 25:1,12,15,17,21
31:22 38:12,16 57:18,24

follow-up 74:15

forever 20:7

form 20:25 24:18 28:23 29:15
30:21 31:6,22 33:20 34:2,21 35:24
36:6,25 38:13 41:1,18 43:21 52:15
55:4 62:14 64:15 65:3 67:14 72:1
73:10 75:16 79:12 80:14 85:14
86:8 88:5,25 89:21 90:2,9,10 91:1,
4,7,23 92:3,5,10 94:14 95:6,19
100:15 101:4 105:8

formally 102:19

forms 18:4 24:11 25:5 29:5,10
31:11,14,19 32:2 38:24 39:3 89:16,
17 90:5,7 91:5 97:13 98:15

formulating 82:10

FORUM 1:6

forwarding 30:21

found 74:4,14

fourth 15:17

FPCA 30:18,19

frame 38:9

fulfill 17:14

full 7:11 9:9 103:18

full-time 71:3

fulsome 107:3

FUND 1:5

funding 21:8

funds 19:2

furnish 12:17 39:3

future 74:7 98:11

---

**G**

Gallagher 2:11 6:16,18

general 2:17 7:14 21:9 26:2 39:23
51:9 57:22 59:9 66:24 83:21 87:23
88:6 95:16

General's 5:25

generally 19:16 25:17,25 28:1
32:9 35:13,20 37:23 44:10 46:17
49:11 52:14 55:20 57:22 59:4
65:18 67:3,12 74:8 83:25 85:5,7
97:23 102:10

generates 60:14



**generating** 89:13

**geographic** 73:22

**George** 1:3 5:8

**Geppert** 15:6 104:16

**GI** 1:5

**give** 7:25 9:14 10:9 13:10 25:16 58:14 86:15 102:11

**Glotzer** 19:1

**God** 29:8

**good** 7:3 20:13,19 32:19 63:14 68:7 69:12 73:24 89:21

**goodness** 11:18

**governing** 39:10

**governor** 12:14 18:19 19:13,19 51:11

**governor's** 19:10

**governor-specific** 20:6

**grade** 15:17,18,23,24 16:2

**graduated** 16:4,6,7

**Graziano** 1:22 5:15

**Great** 69:13

**group** 53:1 83:12 97:6

**gubernatorial** 51:12

**guess** 14:25 17:16 27:25 28:1 47:20 57:7 66:11 83:15 95:11 100:8

**guidance** 26:5 38:12,15 42:3,10 94:11,24 95:10

**guide** 18:12

**guidelines** 50:15

**H**

**half** 35:20,22

**halt** 20:17

**Hancock** 1:9 2:20 6:11 108:7

**hand** 40:13 98:12

**hand-** 94:1

**handbook** 4:13,16 13:8 14:15,20, 23 48:9,19,21 49:10 58:23 59:6,7,

10 64:3 70:5,7,14,17 93:12,19,25 99:9 102:7

**handbooks** 92:25 93:22 94:2,3,10

**handling** 39:16

**handwriting** 52:9,12 102:13,14

**handwritten** 31:23

**hang** 75:11

**Hani** 2:4 5:20 7:6 65:11 68:22 81:18 106:21

**hani@texascivilrightsproject. org** 2:7

**happen** 28:5 38:11

**happened** 46:2,3

**happening** 54:8

**hard** 54:6 94:7,9

**Hart** 13:21 18:24

**head** 8:2 21:25

**hear** 7:3 9:7 32:15 44:21 54:9 63:11,12

**heard** 68:24,25

**hearing** 18:14 19:24 37:11 54:6

**held** 54:16

**helped** 20:2

**Hey** 68:22

**HG** 5:16

**higher** 98:7

**hired** 16:23

**history** 13:10 14:1,24

**hodgepodge** 19:23

**hold** 16:9 24:13 38:20 87:24

**holds** 67:18

**home** 43:8

**honor** 73:15

**honors** 16:8

**hoping** 106:19

**host** 24:6

**hour** 14:7 68:6

**hours** 9:16 14:9,11,12

**Houston** 3:6

**Hughs** 6:8

**huh-uh** 8:19

**hung** 48:22 49:3

**hurry** 102:19

**hypertechnical** 102:24

**hypothetical** 94:1

**I**

**I-N-G-R-A-M** 7:13

**ID** 11:19 15:9 30:6 64:5,8,10,12,13, 23,24,25 65:3 105:8,10

**idea** 24:17

**ideal** 35:23 36:2 78:10

**identification** 30:6 64:15

**identified** 64:8

**immediately** 91:7

**implementation** 82:23

**implemented** 82:22

**important** 8:11,17,23 98:11

**improper** 29:24

**in-person** 25:9

**include** 90:18

**included** 64:2 86:14 90:3 93:18 104:5,25 105:4

**includes** 55:17 106:3

**including** 14:11 55:22

**incorrect** 74:21

**incorrectly** 46:7,10 79:6

**increase** 95:14 96:5,12,18,23 97:21,25 98:2

**increased** 96:20 97:11 98:13

**INDEX** 4:1

**indirectly** 19:5

**individual** 79:21

**individuals** 39:4 43:2



**inform** 34:25

**information** 9:17 13:9 22:23
23:10,12 30:7 32:3 36:14 40:3 96:2
97:1,3 103:11,25 104:6,19

**informing** 103:12

**Ingram** 1:15,18 5:10 6:23 7:3,12
11:4,7 32:23 108:13

**initially** 23:13

**input** 86:7

**insert** 30:9,19

**inspect** 74:25 75:1,4

**inspecting** 71:6,7

**inspection** 75:14

**inspector** 4:16 70:20 72:3,15,16,
22,23 73:13 74:22

**inspectors** 70:6,19,24 73:4,8,16
74:4,7,11,17,19,24,25

**inspectors'** 74:18

**instance** 1:18 45:19

**institutional** 23:18

**instruction** 96:24

**instructions** 33:21,22 34:4,11,21
104:21,22,24 105:6 106:6

**instruments** 19:25

**interested** 18:14

**interesting** 20:12,19

**interference** 11:20 72:17

**International** 15:25

**interpretation** 17:19 24:4 62:12

**interrogatories** 13:7 14:18,19

**involve** 12:9 26:1

**involved** 93:16

**involvement** 21:11,14

**involves** 23:5 28:8

**Isaac** 3:5 6:2 108:2

**issue** 22:22 25:6,9 29:1 66:4

**issued** 85:13,20 93:2 94:11,25

**issues** 71:20 82:21

**itawil@mcallen.net** 3:8

**Item** 76:10 92:3

---

### J

**Jacinto** 15:16

**jacket** 30:9 42:19,23 58:5 59:19

**jail** 43:6

**January** 8:10 16:20

**Joanna** 2:11 6:17

**job** 8:10 17:2,18 19:7,9 20:5,12
21:6 25:18 55:10 59:12 71:4,7

**Joe** 18:17

**jsuriani@willkie.com** 2:14

**judge** 45:6 46:16 51:7 52:8 53:13,
19 66:22

**Judges** 4:13 58:23

**judgment** 50:19,22 62:3,9,21,23
76:22 77:4 78:8 79:19,21,22 80:1
100:1,6,22 103:6

**judgments** 61:21

**judicial** 19:17,22

**jump** 59:13,14 63:16 65:4 75:20
82:7

**jurisdiction** 73:13

**jurisdictions** 26:5

**jurisprudence** 16:11

**JUSTICE** 1:3

---

### K

**K-E-I-T-H** 7:13

**Kalar** 2:10 6:14,15

**Keith** 1:15,17 5:10 6:23 7:12 11:4
34:5,18 96:2 108:12

**keys** 64:19

**kind** 23:25 28:6,15 50:11,12 61:18
71:9 83:9,20 103:12

**kinds** 27:21 71:14 73:23 83:8

**knew** 20:8,11

**knowledge** 23:18 26:12 45:16
77:9 101:12

**Kristi** 13:21 18:24

---

### L

**language** 103:18 104:4

**Lara** 1:11 3:3 6:3 108:3

**lasted** 14:5

**lasts** 72:25

**late** 37:21

**laude** 16:6

**law** 6:15,18 8:15 16:7 18:2 20:11,
14,18 22:20 31:18 42:8 89:18 90:4,
9,10

**laws** 17:20 24:5 89:20

**lawsuit** 11:21 12:3

**lawsuits** 12:1,8

**lawyer** 13:17 23:10 99:16

**lawyer-related** 19:21

**lawyers** 23:6,16

**lay** 90:12

**layout** 90:10

**League** 1:5 12:19

**learn** 20:14,18

**leave** 20:3 23:10

**left** 73:17

**legal** 19:3,4

**legible** 89:25

**legislation** 48:1 82:17

**legislative** 17:5 18:9 21:10,16,20,
21

**legislators** 18:11

**legislature** 17:12 21:9,17,23
70:11

**leisure** 32:8

**letter** 29:17 40:4 104:5 105:5

**level** 87:18

**license** 64:17



**limit** 47:22

**link** 10:25 32:22,25 35:5,6 58:17, 19 83:12 99:1

**list** 11:22 29:10,18 30:7 31:2,3,10, 17 40:2 43:2 51:17 53:24 68:1 73:19 83:24 84:2

**listed** 14:21 28:19,22 31:11 32:2 80:4 106:2

**lists** 51:14

**litigation** 5:16 11:23 20:15

**live** 64:20

**LLP** 2:11,23

**loaded** 89:12

**local** 25:11,20,24 26:3,6 27:1,3,6,8 31:13 38:11 45:10 50:13 55:2 65:1 82:9 83:4 87:18 88:7 89:5,9 90:6, 17 97:20 101:20

**located** 36:13

**long** 14:3

**looked** 14:23,24 101:3

**lost** 63:1,4

**lot** 18:8 47:20 102:21

---

**M**

**machine** 1:23

**Mackin** 2:17 5:24 6:5,7 20:25 24:18 28:23 32:16,19 34:1,16 35:24 36:6,25 38:13 41:1,18 43:21 52:15,17 55:4,6 62:6,14 63:13 65:11,14 67:14 68:10 69:2,5,12 72:1 73:10 75:16 77:24 78:15,22 79:1,12 80:14 81:18,20,25 82:3 88:5,25 94:14 95:18 96:24 100:15 101:4 106:21,25 107:15,24

**made** 49:16 50:9,20 51:5 55:15 60:2 61:22 62:23 76:17,20,21 77:5, 7,14,15 78:2,6 79:15 80:23 81:2, 11,14 90:16 96:22 100:7,10,13,17 101:7 102:15,17,22 103:3,8 105:14

**Magee** 2:22,23 6:10 108:6

**magna** 16:6

**mail** 4:8 27:17 30:7,17 31:2,3 32:5, 11 38:1 39:16,23 40:2,7 43:3,8

44:4 46:21 47:9,13,15,19 64:11 65:24,25 66:13 92:21 93:8 94:20 96:5,12,17,20 97:11,12 104:6

**mail-in** 22:13 26:23 28:21 29:6,7 36:15 37:17 38:23 39:7,9,14 40:16, 20,24 41:15,16 42:18 43:10,19 45:4 56:12,13,18,24,25 57:1,6,7,24 64:6,7,24 67:21 71:23 80:8,13 81:6 93:1 94:3 95:14 103:10 104:1,19 105:3 106:3

**mailing** 40:19,24 86:23 91:11

**main** 17:6 48:20

**maintain** 17:18 24:3

**maintains** 38:22

**maintenance** 11:22

**majority** 27:15 51:2 67:17 79:23

**make** 7:15 8:3 10:1,21 25:14 37:1 46:23 60:1 71:8,10 74:6,11,19,20 77:13 79:9 89:24 91:2 99:1 106:9, 11 107:11

**makes** 39:20 78:5

**making** 69:8 90:13

**malpractice** 20:16

**manage** 17:6 19:5 97:21

**manager** 13:18,23 18:25 19:1,12 20:10

**managers** 18:23

**manages** 19:3

**manner** 67:2

**map** 89:21

**mark** 11:1 32:11,25 35:9 58:21 69:20

**marked** 11:5 33:2 35:10 58:25 69:22 84:19

**mass** 25:7 29:2

**Master** 11:22

**match** 50:22 61:13,15 64:21 76:12,24 77:1,11 78:1,10 79:9 80:10,22,25 81:10 99:13 100:1,11, 12,18 101:2 102:25

**matched** 61:9

**material** 31:25 103:25

**materials** 24:10 26:13 30:18 41:3 52:1 58:15 59:25 98:10 105:1,4

**matter** 5:7 13:14 25:8 49:5

**matters** 11:16 25:7,10

**Maygun** 3:11 5:13

**Mcallen** 1:11 3:3,6,7 6:4 108:4

**meaning** 101:2

**means** 21:3 24:17,22 25:4 37:10 52:20 75:6 100:4,5 101:9,21 102:7

**mechanism** 39:12

**medical** 20:15

**meet** 13:17 38:4,7 47:1,5,7,10,11, 14,16,20,23 53:11,18 56:8 57:14 64:7 72:14 98:12

**meeting** 13:22 14:7 28:15 37:21 47:18

**meetings** 13:15 14:3,6,11 21:21 38:1 99:17

**meets** 70:11

**member** 26:7 51:17 52:9 53:7 62:4

**members** 27:4,9,10,12,14 48:2 50:14,19,21 51:13,19 53:20 61:20 62:8,21 68:3 80:1,3,4 84:4 99:25 100:5,22

**mention** 34:11 105:23 106:4

**mentioned** 14:13 20:20,24 23:20 50:2 93:11 94:23 95:5 101:15 105:13

**message** 32:15

**method** 36:12

**methods** 66:8

**Michelle** 15:7 104:17

**middle** 10:17 86:20

**military** 38:5 43:7

**mind** 9:21

**mine** 19:24

**mini-manual** 14:25

**minimum** 47:6,11,19

**minute** 106:8

**minutes** 9:15 14:6,8 68:8



**Mirza** 2:4 4:3 5:19,20 7:2,6 11:6
21:4 24:19 29:4 32:14,18,21 33:3
34:8,24 35:11,25 36:9 37:4 38:17
41:5 42:1 43:24 52:23 54:20 55:11
59:1 62:10,16 63:2,6,9,11,14,15
65:13,15,17 67:19 68:4,11,18,24
69:4,10,13,14,23 72:6 74:1 75:17
78:12,21,25 79:3,4,16 80:17 81:4,
19,24 82:2,4,5 84:20 88:11 89:4
94:17 96:7 97:18 100:19 101:11
106:23 107:4,21 108:1

**mischaracterizing** 80:15

**missed** 18:7 31:10

**missing** 23:15 42:13 68:22 107:12

**modification** 31:17

**modify** 31:16,19

**moments** 7:7

**monitor** 38:19 70:22

**Montopolis** 2:6

**morning** 7:3 13:19,23 14:5 15:2

**MOVE** 1:4

**moved** 15:19

**movement** 37:13

**N**

**named** 12:11

**narrow** 25:25 27:23

**National** 26:7

**nature** 11:16

**necessarily** 90:11

**needed** 17:4,5 20:17

**neighborhood** 7:21

**nice** 51:25

**ninth** 15:24

**nod** 8:2

**nonmatch** 80:25

**nonresponsive** 78:14

**nonsensical** 78:3

**North** 15:19

**notes** 71:16 98:20

**notice** 4:7 11:3,12 29:22,23 30:2,
5,12,16 31:4 58:1 60:12,15 85:14,
25 86:4 89:10 90:17,20,22 91:11,
18 92:14,15,16,18 105:9

**notices** 13:3 14:19 15:3 60:19
86:24 89:14 91:11

**notified** 42:6

**notify** 42:5

**notifying** 41:6

**November** 67:25

**nuanced** 23:7,9

**number** 4:6 5:6 24:7 33:8 47:22
60:22 63:17 64:17,21 65:4,12
69:16,17 72:23 76:4 81:22 99:5

**numbered** 1:20

**NVRA** 11:24

**O**

**oath** 10:5

**object** 34:1 78:13 95:18

**objection** 20:25 24:18 28:23
34:16 35:24 36:6,25 38:13 41:1,18
43:21 52:15 55:4 62:6,14 67:14
72:1 73:10 75:16 79:2,12 80:14
88:5,25 94:14 100:15 101:4

**obligated** 78:22

**observations** 71:8,9 74:20,23

**observe** 71:8,20,22 72:4 74:21

**obtain** 17:18 24:3

**occupational** 20:1

**occur** 9:24 38:10

**odd-numbered** 22:3 70:11

**Odessa** 15:16 16:3

**office** 2:17 3:6 5:25 15:6 17:13
18:4,7 19:10 21:7 29:20 31:20
46:14 59:8 67:16,18 70:8 73:3
74:16 75:12 82:8,25 86:23 87:1
89:7 95:13,21 96:21 101:13

**office's** 22:1

**officer** 17:11 23:21,24 24:1 51:16

53:23 67:25

**officers** 51:10 83:22 87:23 88:7

**official** 1:9,11 2:21 3:3 6:8,12
12:20 24:11 26:3 38:12,23 40:5
41:11 45:11 83:10 101:20 108:7

**officials** 17:22,25 18:3 24:9 25:3,
12,21,24 26:6 27:2,4,7,8 31:13
55:2 65:1 66:3 82:9,16,18 83:1,5,8,
13 84:10,12 89:6,9 90:1,6,18 97:20
101:13

**often-occurring** 28:5

**open** 11:7 59:19 60:5,8

**operation** 17:20 24:5

**opinion** 90:12

**opportunity** 20:13 41:20 45:5

**option** 45:24 87:5

**Oral** 11:3

**order** 22:23 57:15 97:15

**ordering** 52:4

**organization** 26:10

**organizations** 39:4

**organized** 59:21,24

**other's** 22:10

**overseas** 38:5 43:7

**overturn** 44:25 87:12 88:3,14,22
91:16

**overturns** 89:3

**P**

**p.m.** 1:21 38:3 107:17,18,20
108:13,15

**Pablos** 12:19

**pages** 69:16 86:15,16

**paid** 72:7,8,9

**paragraph** 61:3 92:8,10 94:19
101:14 102:7

**parents** 15:18

**Parker** 15:7,8 104:17

**part** 38:15 39:19 54:15 60:9 96:16



**parties** 51:15 53:24 80:5

**parts** 90:2,5,8

**party** 51:10

**pass** 72:19 107:23

**past** 26:9 50:24 74:3,5

**PDF** 63:17 65:5 99:6,9

**people** 17:6 19:5 22:10 23:8 25:14 49:25 53:22 54:12 55:10 67:15 70:22

**period** 43:5

**Perla** 1:11 3:3 6:3 108:3

**Permian** 16:3

**Perry** 19:13

**person** 12:24 15:9 30:23 34:22 49:20 50:10,17,21 51:3,5 60:3 61:23 62:24 76:18,21,22 77:5,7,14, 15 78:2,7 79:15 80:12,24 81:3,11, 15 86:9 100:7,11,13,17 101:8,9,10 102:16,18,22 103:4,8 106:2

**person's** 13:20

**personal** 12:6

**personally** 12:4,20

**personnel** 95:22

**pertaining** 24:21

**phone** 14:5 21:20 66:13 97:8 106:9,11

**photo** 64:10 65:3

**physical** 19:25

**pink** 104:11

**pitfalls** 18:14

**place** 36:23 37:7,14 44:1 56:7 66:14 71:13 103:14 104:10

**places** 75:9

**placing** 42:17

**plaintiff** 12:2

**plaintiffs** 1:7,19 2:3 5:21,23 6:15, 19 7:8

**plaintiffs'** 5:11 11:2

**planning** 106:11

**Platonic** 78:10

**point** 44:1 91:24 95:9

**pointed** 74:22

**policy** 18:11

**political** 16:6 36:13 51:10 52:3 54:18 80:5 84:3

**poll** 31:2,3

**polling** 71:13 75:9

**portfolio** 19:16

**portions** 91:22,23

**position** 16:15,19,24 19:11,15 20:3,8

**positions** 22:9

**possibility** 65:20 96:11

**possibly** 77:3,13

**post** 58:1 83:6

**postal** 97:16

**postcard** 29:16 30:14,15,17,20,21

**posted** 85:14

**postmarked** 38:3

**potential** 94:1

**potentially** 66:4 91:15

**power** 25:13 82:24

**practice** 66:24

**practices** 26:11

**practicing** 8:15

**preceding** 49:16

**precinct** 53:13,15,19

**precisely** 46:5

**preferred** 17:3

**preparation** 14:16 96:8

**preparations** 96:22

**prepare** 13:1,16 96:13,14,20 97:9, 11,25 98:2

**prepared** 99:21

**prepares** 60:18 73:2

**preparing** 14:10 99:14

**prescribe** 24:11 25:5 29:6,8,9,22 30:4,11 37:16

**prescribes** 36:21 89:16

**present** 99:18

**presented** 22:22 23:2,13

**preserve** 60:9

**preserves** 91:15

**preserving** 79:2

**president** 26:9

**presidential** 12:16 30:12,13

**presiding** 51:7 52:8 53:12,19 66:22

**pretty** 26:17 75:22 102:20 106:20

**previous** 9:24 11:23 20:8,14

**previously** 20:20 28:20

**primarily** 20:15

**primary** 46:20 65:21 67:17,23 83:23 95:16

**print** 86:19

**printed** 91:5,9

**prior** 19:7,9 31:25 41:16 80:18

**privileged** 96:2,25

**problem** 39:15 65:15 82:4

**procedure** 1:24 26:24 28:2,3 31:3 45:2 65:8,19 103:13 105:24 106:5

**procedures** 24:25 27:16 36:21 37:6,16,24 57:19

**PROCEEDINGS** 5:1

**process** 17:5 18:9 21:12 34:15 35:2 39:7,9,15,16,19,22 43:25 44:6 47:14 55:13 57:23 58:6,11 60:11 64:25 67:21

**processed** 35:4 58:12

**processing** 27:17 44:3 46:21

**produced** 1:18

**production** 13:6

**professional** 12:22 16:9

**programs** 22:8

**Project** 2:5 5:12



**prolonged** 63:7

**proper** 27:16

**properly** 46:11

**provide** 26:5 30:6 32:4 33:8,21
  34:11 35:5 36:12,21 37:5,20 42:2,9
  64:24,25 83:3

**provided** 17:12 49:8 51:14 103:25
  104:18 105:9

**providing** 55:20 60:12

**provisional** 38:8 45:4 46:23
  47:10,18,19

**provisions** 1:25

**public** 18:1 24:7,8

**published** 93:1

**pull** 32:13 60:5 84:15

**purpose** 55:1 59:10 70:13 106:14

**pursuant** 1:24

**put** 20:17 40:10,11 60:6 65:24


**Q**

**qualifications** 17:1,7 53:6,18
  72:12,13,14

**qualified** 53:14,25 54:13,15 60:7

**qualify** 38:4,7 41:4 59:17

**qualifying** 40:25 42:23

**quantities** 39:3

**question** 8:25 9:3,18 10:16 20:11
  22:24 23:9 27:11 28:5,8 33:13
  34:2,7,12 36:8 43:11,23 44:17
  56:15 61:3,5 62:17,19 66:7 77:19,
  21,23 78:4,16,17,23 79:5 80:19
  82:12 88:19 95:20 101:17

**questions** 7:23 9:10 17:24,25
  21:18 23:2,6,7,8,14 24:8 26:22
  27:18,21 28:2,6,16 42:15 82:15,18
  89:5 107:7,22,25 108:5,10

**quick** 81:18 107:7

**quickly** 66:17


**R**

**race** 51:11

**reached** 82:9

**read** 13:3,5 26:18,19 32:7 34:20
  48:19 49:6 86:19 92:7 93:7 98:3,5
  106:16

**reading** 104:15,16

**ready** 23:15 58:18 63:23 67:24
  69:11 85:1 86:17,18

**real** 66:17 94:7,9

**reason** 10:9,14 40:1 92:12 93:21

**reasonable** 39:3 77:2

**reasons** 41:7

**Rebecca** 1:22

**receipt** 30:25 104:7

**receive** 21:7 22:4,6,7 32:22 35:6
  58:8,19 84:21 98:13 104:7

**received** 57:7 89:5

**receives** 105:3 106:3

**receiving** 40:16

**recently** 15:11 73:20

**recertified** 73:1

**recess** 68:14 107:18

**recognizably** 102:22

**recognize** 11:10 59:2

**recommend** 48:5,7,8,11,15 49:5
  66:9 87:1 98:9

**recommendation** 48:23 49:2
  50:12 74:18

**recommendations** 74:20,23

**recommended** 97:19

**recommending** 49:4

**recommends** 50:7 86:23

**record** 1:25 5:2,4,18,19 8:1,2
  68:13,16 78:13,19 85:3 104:7
  107:17,20 108:14,15

**recorded** 7:24

**recourse** 88:2

**redline** 92:2

**reform** 20:16

**regard** 23:1 24:15 25:1 26:11

28:21 33:21

**regions** 73:22

**register** 64:15

**registrar** 30:12 49:17

**registration** 13:18,23 18:25 29:15
  30:14 51:1 55:18 64:9,18

**regular** 18:3

**regulations** 24:14,20

**reject** 76:19 77:6 79:24 80:13
  88:16

**rejected** 12:13,25 29:22 31:4,5
  40:9 41:7 45:4 46:7,10,11,15 49:22
  58:12 60:13 85:14,25 86:4,24 87:6
  89:11 90:17,22 91:11,18 92:15,20,
  22 93:8 94:20

**rejection** 41:8 46:13 60:12,15,19
  87:10 89:13 92:12

**rejects** 60:11

**related** 29:6 37:6 43:19 84:6 93:1
  94:3

**relist** 14:22

**remain** 72:22

**remedies** 92:23 93:10 94:22

**remember** 9:16 12:11 46:5 99:19

**reminded** 45:23

**REMOTE** 1:14,17

**remotely** 1:21

**remove** 100:12

**repeat** 60:16 103:16 105:18

**rephrase** 33:13 34:9,12 38:21
  43:16 45:9 50:12 66:7,11 96:9
  101:17

**report** 18:16 74:11,22

**reported** 1:23

**reporter** 5:14 7:24 8:2 54:2,5

**reports** 18:22,23 19:5

**representing** 2:3,15,20 3:3 5:16,
  21 6:3 7:8

**request** 29:24,25 30:2,14,24 73:14
  87:12



RICHARDSON: BRIAN KEITH INGRAM

**requested** 5:11 12:16 40:20 106:3

**requesting** 39:4

**requests** 13:6,7,12,13,14 21:10, 16,19,22,24 36:16 73:12,15 98:8, 13 104:1 105:3

**require** 91:6

**required** 10:5 17:1 25:12,15 31:14,16,24 35:16 36:12 37:17 38:19 39:2 40:3,6 44:1 47:7 48:3,4 56:10,17 57:12,18 58:4 64:14 71:22 72:14 90:3,9,10,18

**requirement** 52:7 79:9

**requirements** 52:13,20,21 53:8, 11 64:6

**requires** 103:1,2

**research** 22:24,25

**reserve** 107:24 108:5,9

**residence** 66:14 105:7,8

**resolve** 66:4

**resolved** 84:11

**resource** 18:10

**respect** 67:20 96:25

**responded** 78:24

**response** 9:18

**responsibilities** 17:8,17 19:14 20:21,23 28:20,21

**responsibility** 17:14 20:22 28:25 44:14 46:20,22

**responsible** 20:23 40:16,19,23 41:6,10,14 42:17,22 44:5

**rest** 23:17 76:3

**restricted** 30:22

**result** 46:3 104:12

**resume** 107:8

**return** 27:17 56:22 105:9

**returned** 41:12 42:20

**returning** 30:8

**revealing** 96:1 97:3

**revenue** 21:9

**review** 10:22 14:15 31:18 56:12,18 61:2 63:22 65:8 76:1 84:25 86:16 98:9

**reviewed** 13:8,9 14:2 58:9 98:15, 18

**reviewing** 43:9,19 54:23 65:10 76:11 99:17

**revised** 85:25 86:4 89:10 91:23 97:13

**revisions** 90:16,18 91:2

**Richardson** 1:3 5:8

**rights** 2:5 5:12 26:2

**role** 20:10 23:23 25:2 67:13

**roles** 22:11

**room** 103:19

**ROSALIE** 1:3

**roster** 30:22

**RPR** 1:22

**rule** 26:1 47:24,25

**rules** 1:24 7:14 24:20

**run** 12:13 64:19 67:15 86:7 90:15 91:4

**runoff** 65:21,25 95:15

**rural** 73:19

**Ruth** 6:7

**Ryan** 2:4 5:22 69:6

**ryan@texascivilrightsproject. org** 2:8

**S**

**sample** 29:17

**Samuel** 2:10 6:15

**San** 1:2 15:16

**scenario** 65:9 66:12 81:5

**school** 15:15,20,21,25 16:4,7 27:5 52:2

**schools** 84:2

**science** 16:6

**scratch** 50:14 95:12

**screen** 68:20 81:21

**scroll** 76:2

**sealed** 30:25

**secondarily** 89:24

**secondary** 46:22

**seconds** 32:17

**secrecy** 29:13 40:11 60:5,8,9 105:11

**secretaries** 27:5,6

**secretary** 1:9,12 2:15 3:4 5:9 6:4, 9 8:8 12:19 16:16 17:10 18:17,18 23:21,23 24:12,15 25:23 29:5 32:3 36:11,20 37:5,15 38:18,22 39:2 42:2,9 70:21 73:7 74:5,16 82:8,20 83:3 89:15 94:12,24 95:22 108:4

**section** 24:24 32:7 33:14,22 49:13 64:2 71:16 99:15,22

**sections** 19:6 98:16

**security** 86:12

**select** 51:16

**selected** 67:16

**seminar** 52:2

**send** 10:25 18:1 25:7 31:17 40:4, 12 70:6 74:6 83:11 84:9 99:1

**sending** 29:20

**sends** 60:19

**sense** 8:3 39:20 48:13

**sentence** 94:18 99:25 100:3,20,24 101:2,19,21

**separate** 81:10 90:8

**serve** 92:16,18

**services** 5:16 53:12

**sets** 56:6

**setup** 71:13

**seventh** 2:12 15:24

**shake** 8:2

**share** 68:20

**shared** 36:17

**sheets** 31:7



RICHARDSON: BRIAN KEITH INGRAM

**shorthand** 1:23

**show** 10:23

**sic** 49:13

**sign** 28:9 32:12 33:18,19,24 34:23 35:16,19 36:4 40:12 42:13 49:22

**signature** 4:12 26:23 27:9 28:3 33:23 34:14,15 35:1,2,20,21 36:5 42:14,25 43:12,15,18,25 44:8,12, 23 49:21 50:16 52:14,25 53:20 54:21 55:2,13,15,22,23 56:2,7 57:17,18 58:22 62:5 66:16,19 80:8, 9 81:13 99:13 101:15,16 102:8,18, 20 103:5,13 104:8,9 105:13,23 106:4

**signatures** 28:12 43:10,19 49:9, 15,18,19 50:3,5,8,20,22,23 51:2,4 53:2 55:12,17,22 56:13 60:2 61:6, 13,22 62:23 76:12,17,20,24,25 77:4,10,14 78:1,6 79:8,14,20 80:22,23 81:2 100:1,6,10,13,23 101:7 102:3,25

**signed** 27:19,20 28:10 49:24 50:16 76:13 77:1,11 80:11 81:15 88:17

**signs** 33:15

**similarly** 41:24 42:6

**single** 73:5

**sir** 10:11 102:4

**situated** 41:24

**situation** 28:9,13 38:19 57:13 63:22 99:12

**sixth** 15:23

**size** 47:4 97:14

**skalar@willkie.com** 2:13

**small** 75:22

**smaller** 28:14

**social** 64:16

**sole** 106:14

**sort** 19:22 20:5 22:20 23:5 73:17

**SOS** 24:25 50:7,13,17 66:9 95:10

**SOS_00-** 69:17

**SOS_000428** 4:14

**SOS_000466** 60:24

**SOS_000468** 63:17 99:5

**SOS_000476** 65:4,13

**SOS_000737** 4:19

**SOS_000740** 91:20

**SOS_001005** 4:17 69:16

**SOS_001029** 69:18

**SOS_1023** 82:1

**SOS_1025** 82:2

**SOS_737** 84:24 85:4

**SOS_738** 86:15

**SOS_739** 86:15

**SOS_741** 84:24

**speak** 8:17

**speaking** 35:13

**speaks** 34:3

**special** 22:20

**specific** 17:16 22:13 27:18 28:2 42:3 49:12 53:7 64:5 80:1,3 83:7 85:19 98:16 99:19

**specifically** 14:14 17:12 28:3 83:16 95:15 97:20 101:14

**speed** 13:12

**spell** 7:11 16:1

**spend** 14:10

**spread** 67:1

**staff** 22:7,12

**staffers** 21:23

**standard** 28:8 50:9 51:3 61:21 62:22

**standards** 50:7

**start** 7:10 16:19 27:1 48:10 49:7 69:16 91:6

**started** 15:15

**starts** 92:15

**state** 1:9,23 2:16 5:9,17 6:9 7:10, 18 8:8 16:16 17:10,11,23 18:17 23:21,23 24:12,15 25:23 26:8 29:6 32:3 36:11,20 37:5,16 38:18,22

39:2 40:1 42:2,9 51:9,15 53:22 67:24 70:19,20,22,23 72:17 73:7 74:6 82:20 83:3,22 87:23 89:15 94:12,25 95:22

**State's** 74:16 82:8

**stated** 1:25 7:6

**statement** 105:7

**states** 1:1 26:4

**station** 75:8

**statute** 17:12 89:22

**statutes** 39:10

**statutory** 103:18

**steps** 59:16

**Stevenson** 3:5

**stock** 91:3,5,6 98:11

**straight** 26:20

**Street** 2:18,23

**Strike** 101:18

**Stringer** 11:24,25

**strong** 49:2

**strongly** 98:8

**stuff** 90:10

**sub-** 66:25

**subcommittee** 59:25

**subcommittees** 59:24 66:19,23, 25

**subdivision** 54:18

**subdivisions** 36:13 52:3 84:3

**subject** 12:21 13:14 25:6,8

**submit** 41:2 54:24 64:10,14 65:2 68:1

**submitted** 40:17 41:22 53:24

**sued** 12:4,6,14,19

**sufficient** 40:9

**summarily** 12:24

**summary** 15:1

**summer** 52:1

**superseded** 47:25



**supervise** 18:22

**supply** 38:23,25 98:9,12

**supposed** 50:4,6 71:10

**Suriani** 2:11 6:17

**SVC** 50:14 52:9

**sworn** 1:19 6:21,22,24

**system** 10:21 64:18 97:17

---

**T**

**tabulation** 58:16

**TAC** 47:24,25

**takes** 44:9

**taking** 7:9 45:13

**talk** 8:23 21:23 35:3 37:25 87:3 97:8 107:1

**talked** 13:18 45:22 82:6

**talking** 15:6 37:3 44:3 51:15 57:3, 6 83:16 86:21 93:25 94:3 97:10

**tally** 31:7

**tasked** 43:9,18 55:20

**Tawil** 3:5 6:2 108:2

**team** 14:1 19:4 89:13,14

**technical** 9:6

**TECHNICIAN** 3:10

**telephone** 33:8

**telling** 77:12 78:3

**ten** 7:20 32:17

**tenth** 16:2

**term** 67:7

**territory** 53:14,16

**test** 10:20 72:20 73:2

**testified** 6:24 80:16

**testify** 10:6 21:17

**testifying** 10:7

**testimony** 10:10,13 80:18

**TEXANS** 1:4

**Texas** 1:1,4,5,6,9,12,23 2:5,6,15,

18,24 3:3,7 5:9,12,25 6:9 15:16 16:5 17:11 23:22 24:21 26:14,15 43:3

**therapy** 19:25 20:1

**thing** 19:22 22:17 48:20 68:19 75:13 80:24 81:9 90:12

**things** 7:10 18:9 71:15 97:10

**thinking** 68:6

**thought** 24:2 46:7 68:25

**throw** 91:6

**tick** 71:21

**time** 5:5 10:14,15 14:7,8 19:17 20:10 38:9 45:8 54:6 56:6 63:8,24 64:2 68:7,13,16 72:9 77:17 86:15 87:10 91:13 107:17,20,22 108:13

**timely** 41:12 42:20

**times** 7:18 8:6 11:15,19 47:7,23

**title** 86:10 92:14

**titled** 11:2

**today** 5:4,15 7:9 10:5,10,13 106:19

**today's** 13:2,16 14:16

**told** 14:17

**top** 21:25

**topic** 42:3 49:12 82:16,19

**tort** 20:16

**total** 14:9

**totally** 37:11

**track** 78:18

**train** 22:15,16 29:1

**trainers** 86:12

**training** 18:3 22:4,6,7,8,12 23:5 24:10 37:21 42:7 48:3,4,5 49:8,11 50:2 52:1 72:19

**trainings** 25:9,10 48:6

**transaction** 93:17

**transcript** 5:18

**transmission** 97:16

**transmittal** 31:6

**transmitted** 23:18

**Travis** 15:5

**treat** 41:24

**trip** 37:2,9,12,13

**trouble** 92:17 100:9

**Trudy** 1:9 2:20 6:11 108:7

**true** 35:19 36:3,10,11,16,20 40:15 42:16 54:21

**truthful** 10:10

**truthfully** 10:6

**turn** 69:15 86:13 91:18 98:24 99:4

**twelfth** 16:2

**type** 45:13 54:7

**types** 42:10 43:2 50:3

**typo** 76:5

---

**U**

**uh-huh** 8:18 65:7 100:2

**unable** 49:22

**undergo** 48:3,4

**understand** 9:3,11 10:7 21:1 23:9 34:7,17 43:11,22 52:18 79:1 88:19 95:8

**understood** 79:6

**undertake** 48:14

**unhappy** 12:24

**uniform** 65:22

**uniformity** 17:19 24:4

**UNITED** 1:1

**University** 16:5

**unopened** 104:11

**untimely** 37:18

**upcoming** 95:23

**update** 36:14 91:3

**updated** 29:24 70:9,10 85:24 89:10 91:23 93:4

**upheld** 46:12

**urban** 73:18



Index: usage..zoom

**usage** 97:11

**useable** 89:25

**user-friendly** 90:14

**UT** 16:7

_____

**V**

**vacancies** 19:19

**vacancy** 19:18

**valedictorian** 16:4

**variances** 103:5

**varies** 22:2

**variety** 11:25 20:1

**verbal** 7:25

**verification** 4:12 27:10 34:15 35:2 42:25 43:25 44:9,13 52:14,25 53:21 54:22 55:3,13 56:2,7 57:17, 19 58:23 62:7 65:1 66:17,19 101:16 103:13 105:24 106:4

**verify** 50:20 100:23 102:3

**vernacular** 100:16

**versa** 66:1

**version** 85:25 86:4 90:19,22 91:19 92:2

**versions** 91:9

**versus** 5:8

**vice** 66:1

**video** 5:4,10 69:8 107:17 108:12

**videoconference** 2:4,5,10,11,17, 22 3:5,10 8:22

**view** 68:21

**visited** 20:9

**volume** 98:7

**vote** 12:18 13:10,25 14:24 30:23 32:4 39:23 43:3,7 51:2 64:14,16 79:23

**vote-by-mail** 32:7

**voter** 11:19 13:18,23 15:9 18:25 27:19 29:14 30:5,12,18,19 33:12, 14,17 34:25 35:16 39:22 40:21,25 41:3,15 42:5 46:13 49:16,17,22

50:24,25 53:14,25 54:13,15 55:15, 17 60:9,12,15 64:5,8,9,12,13,18,23 66:3,9,13 76:13 77:1,11 87:2,8 88:18 91:13 104:1,5,19 105:5

**voter's** 41:11 42:18 64:22 99:12

**voters** 1:5 12:18,19 29:18 30:6 31:2,3 32:4,9 33:7 34:13 36:4 39:5 40:17,20 41:7,21,24 42:5 43:7 60:19 64:7,14,24 65:23 67:17 73:12 86:24 89:25 94:13 95:6,14 103:10 105:10

**votes** 58:16 87:17

**votetexas.gov** 32:6

**voting** 4:11 13:8 14:14,20 17:25 26:2 27:9 28:21 29:7,15,19 30:7,9 31:1,2,5,6 36:23,24 37:7,14 38:20 40:2,14,15 41:20 42:11,17,22,24 43:5 44:13,15,18,22,24 45:2,12,15, 20,22 46:9,18,19,25 48:2,8,11,16 49:1,4 51:18,19 52:5,8 53:4,6 55:21,25 56:1,6,11,17,22 57:19,23, 25 58:7,8,15,22 59:5,11 60:10,14, 18 61:10 62:3 66:18,21 68:1,2 71:23 72:5 73:23 75:1,5,12 79:7 80:7,12 81:6 83:17 84:4,7,8,13,14 87:3,4,12,13 88:3,4,14,15,21,23 91:14 92:20,23 93:1,9,12,23,24 94:2,6,21

_____

**W**

**wait** 8:24 24:13 33:12 60:7

**waiting** 57:5

**walk** 39:21

**wanted** 12:13 66:16 76:11

**water** 22:19

**ways** 66:6 87:7 97:9,10

**Webex** 25:9

**website** 32:4 83:6 85:15 104:23

**Wednesday** 73:14

**WEISFELD** 1:3

**WEISFELD-00000002** 4:10

**West** 2:18,23

**WESTERN** 1:1

**Willkie** 2:11 6:16,18

**window** 88:1

**Women** 1:5 12:19

**won** 51:11

**word** 26:19 37:11 49:3

**worded** 92:5

**words** 94:10

**work** 19:8 22:17 49:7 55:9 57:10, 11 58:10 59:22 67:1,24 71:3 72:5,7 75:1,4 106:24

**workday** 72:11

**worked** 19:20

**works** 5:19 68:8 107:5

**world** 54:3

**worries** 63:14

**write** 81:21 102:18,19

**wrongfully** 45:3 46:15 87:6

_____

**Y**

**year** 26:10 70:11 96:6,12,18

**years** 19:13 22:2,3 49:16 50:24 55:16 72:23,25

**yes-or-no** 77:19

**York** 2:12

**you-all** 22:16

_____

**Z**

**Zachary** 2:5

**zachary@ texascivilrightsproject.org** 2:8

**zoom** 69:25 75:24



UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| DR. GEORGE RICHARDSON, ROSALIE WEISFELD, AUSTIN JUSTICE COALITION, COALITION OF TEXANS WITH DISABILITIES, MOVE TEXAS CIVIC FUND, LEAGUE OF WOMEN VOTERS OF TEXAS, and AMERICAN GI FORUM OF TEXAS, INC., | § § § § § § § § | |
| *Plaintiffs* | § § | |
| v. | § § | Civil Case No. 5:19-cv-00963-OLG |
| TEXAS SECRETARY OF STATE, TRUDY HANCOCK, in her official capacity as BRAZOS COUNTY ELECTIONS ADMINISTRATOR, and PERLA LARA in her official capacity as CITY OF MCALLEN, TEXAS SECRETARY, | § § § § § § § | |
| *Defendants*. | § § | |

## PLAINTIFFS' FIRST AMENDED NOTICE OF VIDEOTAPED ORAL DEPOSITION OF KEITH INGRAM

**TO:**  Defendant Texas Secretary of State, by and through her attorney of record, Anna Mackin, Office of the Attorney General, 300 West 15th Street, Austin, Texas 78701.

PLEASE TAKE NOTICE THAT, pursuant to Federal Rules of Civil Procedure 26 and 30(a)(1), Plaintiffs hereby notice the deposition upon oral examination of **Keith Ingram** on **May 11, 2020**, **beginning at 9:30 a.m.** by videoconference. This deposition shall continue from day to day until completed. The oral deposition will be transcribed and recorded by a court reporter and videographer designated by Plaintiffs. Plaintiffs reserve the right to utilize this videotaped deposition at trial in lieu of live testimony, or in addition to live testimony, and/or for any purpose permitted under the Federal Rules of Civil Procedure and Federal Rules of Evidence.

For purposes of this notice and request for production at the deposition:

1.      The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise), including statements, discussions, conversations, correspondence, speeches, meetings, remarks, questions, answers, panel discussions, and symposia, whether written or oral. The term includes, without limitation of generality, both communications and statements which are face-to-face, and those which are transmitted by means of intercom, telephone, television, radio, mail, facsimile, or email/electronic mail.

2.      The term "document" or "documents," includes any recorded form of writing or communication whether it be by paper, film, microfilm, microfiche, computer print-out, reports, records, lists, memoranda, e-mail, correspondence, communications, telegrams, schedules, photographs, drawings, charts and other forms of tangible and electronic information preservation, including, but not limited to: correspondence, letter, memoranda, electronic mail, telefax, message, note, report, cable, telegram, photograph, film, tape, and all other written communications of every kind and character; note, recording disk, or any other record of oral communication; microfilm; worksheet; schedule; exhibit; demonstrative aid; letter; contract; agreement; diagrams; logs; summaries; printouts; graphs, charts; floppy disks, CDs or DVDs, compilations, tables; publications; manuals; minutes; minute books, diaries; calendars; bank statements; lists; data tapes, audio tapes, video tapes; spreadsheets and any other data compilations from which information can be obtained and translated.

3.      The term "lawsuit" refers to the entire series of interactions, statements, actions, dealings, investigations, documents, correspondence, and communications relating to the allegations and defenses of Plaintiffs and Defendants, including all employees and representatives in this case, Civil Action No. 5:19-cv-00963-OLG in the United States Court for the Western District of Texas, San Antonio Division.

4.      "Local election officials" means any official responsible for the management or operation of elections in any political subdivision of the state of Texas under the Texas Election Code.  For the avoidance of doubt, "local election officials" includes, without limitation, Early Voting Clerks, Election Judges, and officials serving on an Early Voting Ballot Board or Signature Verification Committee.

5.       "Mail-in ballot" means a ballot cast by mail during an election.

6.      "Mail-in ballot application" or "application" means any type of application to vote by mail offered to a voter under the Texas Election Code.

7.      "Texas Secretary of State," "Secretary of State," or "SOS" shall refer to the Texas Secretary of State, and all of its offices and agencies.

This notice will also serve as a request for production to request that Keith Ingram bring with him to the deposition the non-privileged documents in his possession listed below. If Mr. Ingram claims that some of the responsive materials sought in this notice have been previously produced to Plaintiffs, the witness is expected to be able to identify such materials by Bates numbers.

1.  Any and all documents Mr. Ingram reviewed in preparation for this deposition;

2.  Any and all documents, including personal notes, relating to Plaintiffs' allegations in this lawsuit;

3.  Any and all documents related to the mail-in ballot process, Texas' obligations under statutes related to mail-in ballots, and any guidance provided to local election officials on how to comply with statutes related to mail-in ballots;

4.  Any and all documents reflecting the Secretary of State's involvement with mail-in ballots and the mail-in ballot process.

5. Any and all documents reflecting how the Secretary of State coordinated with local election officials on training related to mail-in ballots;

6. Any and all communication Mr. Ingram sent or received regarding Plaintiffs' allegations in this lawsuit, including:

   a. Any and all communication regarding changes or contemplated changes to guidance on the mail-in ballot process since 2014;

   b. Any and all communication discussing Texas' obligations related to the mail-in ballot statutes.

   c. Any and all communication regarding how the Secretary of State receives, stores, and distributes information about mail-in ballot voters and applicants for mail-in ballots from local election officials;

   d. Any communication regarding complaints from voters whose mail-in ballots were rejected due to an alleged signature mismatch.

   e. Any communication related to how local election officials work with the Secretary of State on issues related to mail-in ballots and/or the mail-in ballot process.

Date: April 17, 2020.                          Respectfully submitted,

                                               /s/    *Hani Mirza*

                                               **TEXAS CIVIL RIGHTS PROJECT**

                                               Mimi M.D. Marziani
                                               Texas Bar No. 24091906
                                               mimi@texascivilrightsproject.org
                                               Rebecca Harrison Stevens
                                               Texas Bar No. 24065381
                                               beth@texascivilrightsproject.org
                                               Hani Mirza
                                               Texas Bar No. 24083512
                                               hani@texascivilrightsproject.org
                                               Ryan V. Cox

Texas Bar No. 24074087
ryan@texascivilrightsproject.org
Zachary D. Dolling
Texas Bar No. 24105809
zachary@texascivilrightsproject.org

1405 Montopolis Drive
Austin, Texas 78741
512-474-5073 (Telephone)
512-474-0726 (Facsimile)

**WILLKIE FARR & GALLAGHER LLP**

Richard Mancino (NY Bar No. 1852797)
JoAnna Suriani (NY Bar No. 5706395)

787 Seventh Avenue
New York, New York 10019
Telephone: (212) 728-8000
Facsimile: (212) 728-8111
Email: rmancino@willkie.com
        jsuriani@willkie.com

-AND-

Jennifer J. Hardy (TX Bar No. 24096068)
Denis A. Fallon (TX Bar No. 24059731)
Garrett Johnston (TX Bar No. 24087812)
Audra White (TX Bar No. 24098608)

600 Travis Street, Suite 2100
Houston, Texas 77002
Telephone: (713) 510-1700
Facsimile: (713) 510-1799
Email: jhardy2@willkie.com
        afallon@willkie.com
        gjohnston@willkie.com
        awhite@willkie.com

*ATTORNEYS FOR PLAINTIFFS*

---

## CERTIFICATE OF SERVICE

By my signature below, I certify that a true and correct copy of the foregoing was served on each

Defendant's counsel of record on April 17, 2020 via email.

Dated: April 17, 2020.

By: _/s/   Hani Mirza_

DO NOT REMOVE PERFORATED TABS. Moisten here and fold bottom to top to seal.        DO NOT REMOVE PERFORATED TABS. Moisten here and fold bottom to top to seal.

## Application for Ballot by Mail

Texas
A5-15 12/17

VUID #, County Election Precinct #, Statement of Residence, etc.

**1** Last Name (Please print information) | (Jr., Sr., III, etc) | **First Name** | **Middle Initial**

**2** Residence Address: See back of this application for instructions. | **City** | ,TX | **ZIP Code**

**3** Mail my ballot to: If mailing address differs from residence address, please complete Box # 7. | **City** | **State** | **ZIP Code**

**4** Date of Birth (mm/dd/yyyy) (Optional)

Contact Information (Optional)*
Please list phone number and/or email address:
*

**5** Reason for Voting by Mail:

☐ 65 years of age or older. (**Complete Box #6a**)

☐ Disability. (**Complete Box #6a**)

☐ Expected absence from the county. (**Complete Box #6b and Box #8**)
You will receive a ballot for the upcoming election only

☐ Confinement in jail. (**Complete Box #6b**)
You will receive a ballot for the upcoming election only

**7** If you are requesting this ballot be mailed to a different address (other than residence), indicate where the ballot will be mailed. See reverse for instructions.

☐ Mailing address

☐ Nursing home, assisted living facility, or long term care facility

☐ Hospital

☐ Retirement Center

☐ Address of the jail

☐ Relative; relationship _____

☐ Address outside the county (see Box #8)

**6a** ONLY Voters 65 Years of Age or Older or Voters with a Disability:
If applying for one election, select appropriate box.
If applying once for elections in the calendar year, select "Annual Application."

☐ Annual Application

Uniform and Other Elections:
☐ May Election
☐ November Election
☐ Other ___

Primary Elections:
You must declare one political party to vote in a primary:
☐ Democratic Primary
☐ Republican Primary

☐ Any Resulting Runoff

**8** If you selected "expected absence from the county," see reverse for instructions

Date you can begin to receive mail at this address — Date of return to residence address

**9** Voters may submit a completed, signed, and scanned application to the Early Voting Clerk at:

_____ (early voting clerk's e-mail address) _____ (early voting clerk's fax)

NOTE: If you fax or e-mail this form, please be aware that you must also mail the form to the early voting clerk within four business days. See "Submitting Application" on the back of this form for additional information.

**6b** ONLY Voters Absent from County or Voters Confined in Jail:
You may only apply for a ballot by mail for one election, and any resulting runoff.
Please select the appropriate box.

Uniform and Other Elections:
☐ May Election
☐ November Election
☐ Other _____

Primary Elections:
You must declare one political party to vote in a primary:
☐ Democratic Primary
☐ Republican Primary

☐ Any Resulting Runoff

**10** "I certify that the information given in this application is true, and I understand that giving false information in this application is a crime."

➡ **X** _____ Date

SIGN HERE
If applicant is unable to sign or make a mark in the presence of a witness, the witness shall complete Box #11.

**If someone helped you to complete this form or mails the form for you, then that person must complete the sections below.**

**11** See back for Witness and Assistant Information

If applicant is unable to mark Box #10 and you are acting as a **Witness** to that fact, please check this box and sign below. ☐

If you assisted the applicant in completing this application in the applicant's presence or e-mailed/mailed or faxed the application on behalf of the applicant, please check this box as an **Assistant** and sign below. ☐

★ If you are acting as Witness and Assistant, please check both boxes. Failure to complete this information is a Class A misdemeanor if signature was witnessed or applicant was assisted in completing the application.

**X** _____
Signature of Witness /Assistant

**X** _____
Printed Name of Witness/Assistant

_____        _____
Street Address        Apt Number (if applicable)

_____
City

**Witness' Relationship to Applicant**
(Refer to Instructions on back for clarification)

_____
State

_____
ZIP Code

*Este formulario está disponible en Español. Para conseguir la version en Español favor de llamar sin cargo al 1.800.252.8683 o visite nuestra página de internet www.sos.texas.gov votación por Adelantado.*

DO NOT REMOVE PERFORATED TABS. Moisten tab and fold top to bottom to seal.

FROM: _____

_____

**AFFIX FIRST CLASS POSTAGE**

**AFFIX LABEL HERE OR ADDRESS**

**TO:  EARLY VOTING CLERK**

_____

_____

OFFICIAL ELECTION MAIL™
Authorized by the U.S. Postal Service

## Instructions for Application for Ballot by Mail

**Residence Address** - Give full address as shown on your voter registration □ □ □ □ □ □ □ □ have moved within the county but not yet changed your voter registration address with the voter registrar, indicate your new residence address.

**Mail Ballot To** - Give full address where you wish to have ballot mailed, if the address is different from your residence address.

**Mailing Ballot to a Different Address** - Your ballot must be mailed to your home where you live or to your mailing address on your voter registration □ □ □ □ □ □ □ □ □ □ allow you to have your ballot mailed to a dif □ □ □ □ □ □ □ □ □ □ □ □ □

| Reason for voting by mail | Location to mail ballot |
|---|---|
| 65 or disabled | Nursing home, assisted living/retirement center, relative, hospital |
| In jail | Address of jail or relative |
| Absent from county | Address located outside of county |

**Expected Absence from County** - If you chose expected absence from county, you must expect to be absent from the county on election day and during the hours of early voting in person or for the remainder of the early voting period after you submit your application. **Your ballot must be mailed to an address outside the county.** Important: Give date you can begin to receive mail at the address given.

**Annual Application** - If you are 65 years of age or older, or disabled you may apply to receive all ballots by mail for a calendar year. If you do not select any elections in Box 6a, your application will be considered an Annual Application. If you submit an annual application for a ballot by mail, your application may be forwarded to other entities holding elections where you are a □ □ □ □ voter. This means that you may receive a ballot for those elections in addition to the ballot(s) you requested with this application.

### Submitting Application

1. Sign and date your application - If unable to sign, please go to Witness/Address boxes (11 on reverse) and have a person witness your mark. Witness/Assistant instructions follow below.

2. **Deliver to Early Voting Clerk** - You may submit your application via these methods:

**In Person:** Only the applicant may submit their application in person to the Early Voting Clerk until the early voting period begins. However, after the early voting period begins for an election, the applicant may only submit their application via mail, common contract carrier, fax, or e-mail.

**By Mail:** You may mail your application via the U.S. Postal Service.

**By Common Contract Carrier:** You may submit via a common or contract carrier which is a bona □ □ □ □ □ □ □ □ □ □ □ □

**By Fax:** You may fax your application to the Early Voting Clerk. Please contact your Early Voting Clerk  or the Secretary of State □ □ □ □ □ □ □ □ □ □ □

**By E-Mail:** You may e-mail a signed, scanned image of your application to the Early Voting Clerk. Please contact your Early Voting Clerk or the Secretary of State □ □ □ □ □ □ □ □ □ □ □ □ □ □ □

**IF YOU FAX OR E-MAIL YOUR APPLICATION TO THE EARLY VOTING CLERK, YOU MUST ALSO MAIL THE APPLICATION SO THAT THE CLERK RECEIVES IT NO LATER THAN THE FOURTH BUSINESS DAY AFTER THE DAY THE CLERK RECEIVED YOUR FAXED OR EMAILED APPLICATION. If you fax or e-mail your application by the** deadline noted below, your application will be considered complete and timely as long as **the original is received by the early voting clerk by the fourth business day after it was** submitted by fax or e-mail.

### Deadline

Your application must be received by the early voting clerk of the local entity conducting the election not later than the 11th day before election day. If the 11th day is a weekend or holiday, the deadline is the □ □ preceding business day. You may submit an application throughout the calendar year, beginning January 1. Please remember that the application must be received not later than the 1 □ □ □ □ □ □ □ □ □ □ □ □ □ □ □ □ □ □ □ □ □ □ □ □ □ □ . □ □ □

If you submit an Annual Application for Ballot by Mail within 60 days before an election that takes place in the following calendar year, your application will be valid for any election that takes place in the following calendar year, regardless of the fact that your application was submitted prior to the end of the preceding calendar year. This applies to Annual Applications only and not to a regular application for ballot by mail.

### Witness/Assistant Section

**Witness:** If you are unable to sign your name (due to a physical disability or illiteracy), the application may be signed at Box #11 for you by a Witness. You must □ □ your mark to the application in Box #10 or, if you are unable to make a mark, then the Witness must check the appropriate box in 11 indicating the inability to make a mark. The Witness must state his/her name in printed form and indicate his/her relationship to you or, if unrelated, state that fact. The Witness must sign and provide his or her printed name and residence address. Unless the Witness is a close relative of the voter (parent, grandparent, spouse, child or sibling), it is a Class B misdemeanor for a person to witness more than one application for ballot by mail.

**Assistant:** If a person (other than a close relative or person registered to vote at the same address) assists you in completing this application in your presence or mails/faxes/e-mails this application on your behalf, then that person must complete Box #11. The Assistant must sign, provide his or her printed name, and his or her residence address. A person commits a Class A misdemeanor if the person provides assistance without providing the information described above unless a close relative or registered at your address.

**If you have further questions or need additional assistance, please contact your Early Voting Clerk or The Secretary of State's □ □ □ □ or www.sos.state.tx.us.**

Print     Reset

**Instructions:** This envelope must be sealed and signed by the voter before it leaves the voter's hands. Do not sign this envelope unless the ballot has been marked by you or at your direction. This carrier envelope may not be used to return more than one voter's ballot. For instructions on the methods and deadlines to deliver this carrier envelope, see the "Information About Returning your Carrier Envelope," included with the materials sent to you with your ballot. (Instrucciones al Votante: Selle este sobre y después firme su nombre en el espacio proporcionado abajo. Este sobre debe de ser sellado y firmado por el votante antes de que el votante lo entregue. No llene este sobre a menos de que la boleta haya sido llenada por usted o bajo su dirección. Este sobre de envío no debe ser utilizado para entregar la boleta de más de un solo votante. Para obtener instrucciones sobre los métodos y plazos para entregar este sobre de envío, vea la "Información Sobre Cómo Devolver su Sobre de Envío," incluido con los materiales enviados a usted con su boleta.)

I certify that the enclosed ballot expresses my wishes independent of any dictation or undue persuasion by any person. (Certifico que la boleta adjunta expresa mis deseos independientemente de ningún dictado o persuasión indebida por parte de cualquier persona.)

SEAL ENVELOPE AND SIGN OVER SEALED FLAP
(SELLE EL SOBRE Y FIRME ENCIMA DE SOLAPA DEL SOBRE) →

X *Rosalie Weisfeld*

SIGNATURE OR MARK OF VOTER (FIRMA O MARCA DEL VOTANTE)

**Instructions to Assistant:** A voter may only be assisted with reading or marking the ballot if they have a physical disability that renders them unable to write or see, or have an inability to read the language in which the ballot is written. If you are assisting the voter, you must read the oath and complete the section below, before assisting the voter. (Instrucciones al Asistente: Un votante puede recibir ayuda para leer o llenar la boleta solamente si el votante tiene una discapacidad física la cual le impide escribir o ver, o si no tiene la habilidad de leer el lenguaje en el cual la boleta está escrita. Si usted le proporcionará ayuda a un votante, usted debe leer el juramento y llenar la siguiente sección abajo, antes de asistir al votante.)

**Oath of Person Assisting Voter:** I swear (or affirm) that I will not suggest, by word, sign, or gesture, how the voter should vote; I will confine my assistance to answering the voter's questions, to stating propositions on the ballot, and to naming candidates and, if listed, their political parties; I will prepare the voter's ballot as the voter directs, and I am not the voter's employer, an agent of the voter's employer, or an officer or agent of a labor union to which the voter belongs. (Juramento de la Persona Asistiendo al Votante: Juro (o afirmo) que no sugeriré con palabras, señales, o gestos, la manera en la cual el votante debe votar; limitaré mi asistencia a responder las preguntas del votante, leer propuestas en la boleta, y nombrar a los candidatos, y si es mencionado, su partido político; preparé la boleta del votante de acuerdo a sus instrucciones; y yo no soy el empleador del votante, un agente del empleador del votante, o un oficial o agente de un sindicato al cual el votante pertenece.)

**Instructions to Witness:** You are serving as a witness for _____ (name of voter). You must complete the section below if you witnessed the mark of the voter, or if the voter cannot make a mark. If the voter cannot make a mark, check here ____. (Instrucciones al Testigo: Usted está fungiendo como testigo para _____ (nombre del votante). Usted debe llenar la siguiente sección abajo si usted fue testigo de que el votante firmó, o de que el votante no puede firmar. Si el votante no puede firmar, marque sus iniciales aquí ____.)

**Instructions to Person Depositing Carrier Envelope in Mail or to Common or Contract Carrier:** If you are assisting a voter by depositing the carrier envelope in the mail or with a common or contract carrier, you must complete the section below. (Instrucciones a la Persona Quien Deposita el Sobre de Envío en el Correo o Entregue al Transportista Público o Comercial: Si usted asistirá al votante a depositar el sobre de envío en el correo o con un transportista público o comercial, usted debe llenar la sección que aparece abajo.)

If you are an assistant or witness, check the appropriate box below and provide information: (Si usted es un asistente o testigo, marque la casilla correcta y proporcione su información:)

☐ Assistant/ Asistente
☐ Witness/ Testigo
_____ _____ _____
Signature (Firma)   Printed Name (Nombre impreso)   Street Address (Domicilio residencial)

☐ Assistant/ Asistente
☐ Witness/ Testigo
_____ _____ _____
Signature (Firma)   Printed Name (Nombre impreso)   Street Address (Domicilio residencial)

**Run-Off Election)**

Completed by Early Voting Clerk: **Name of Election (Nombre de Elección):** _____

Name of Voter (Nombre del votante): *Rosalie Weisfeld*

**Date of Election (Fecha de Elección):** _____

141

WEISFELD-00000002

# EARLY VOTING BALLOT BOARD & SIGNATURE VERIFICATION COMMITEE

## Handbook for Election Judges and Clerks 2020

### FOR USE IN GENERAL, PRIMARY, AND
#### OTHER POLITICAL SUBDIVISION ELECTIONS



**Issued by**

The Office of the Texas Secretary of State, Elections Division
1-800-252-VOTE(8683) or (512) 463-5650

SOS_000428

www.sos.state.tx.us
www.VoteTexas.gov

# TABLE OF CONTENTS

**INTRODUCTON**                                                                        i

**CHAPTER 1 – CREATION OF THE EARLY VOTING BALLOT BOARD & SIGNATURE**
**VERIFICATION COMMITEE**                                                              1

    SECTION A.   COMPOSITION OF THE EVBB                                 1
    SECTION B.   COMPOSITION OF A SIGNATURE VERIFICATION COMMITTEE       2

**CHAPTER 2 — SIGNATURE VERIFICATION COMMITTEE CONVENES**                              1

    SECTION A.   Convening the Signature Verification Committee          4
    SECTION B.   Delivery Of Materials To The Committee                  4
    SECTION C.   Receipt For Delivery                                    5
    SECTION D.   Security Of Early Voting Ballots                        6

**CHAPTER 3  — THE EARLY VOTING BALLOT BOARD CONVENES**                                7

    SECTION A.   Convening the Early Voting Ballot Board                 7
    SECTION B.   Delivery of Materials to the Board                       8
    SECTION C.   Receipt for Delivery                                    9
    SECTION D.   Security of Early Voting Ballots                        10

**CHAPTER 4  — QUALIFYING BALLOTS VOTED BY MAIL OR VOTED USING MAIL**
**PROCEDURES**                                                                        11

    SECTION A.   Types Of Early Voting Ballot Applications               11
    SECTION B.   Valid Reasons For Voting Early By Mail                  11
    SECTION C.   Qualifying Early Voting Ballots Voted By Mail           12
    SECTION D.   Qualifying Signatures for the Signature Verification Committee   15
    SECTION E.   Accepted Ballots                                       16
    SECTION F.   Rejected Ballots                                       18

**CHAPTER 5 — COUNTING HAND-COUNTED PAPER BALLOTS**                                    19

    SECTION A.   Establishing The Counting Teams                        19
    SECTION B.   Opening The Ballot Box Containing Hand-Counted Paper Ballots   19
    SECTION C.   Rules Governing The Counting Procedure                 20
    SECTION D.   The Counting Procedure                                 20
    SECTION E.   Rules For Counting Manually-Cast Or Hand-Counted Optical Scan Ballots   21
    SECTION F.   Handling The Election Returns For Paper Ballots        24
    SECTION G.   Reporting Early Votes                                  27

**CHAPTER 6 — EXAMINING, PREPARING, AND COUNTING VOTED OPTICAL**
**SCAN BALLOTS**                                                                       28

SECTION A.   Processing Ballots Counted At Central Counting Station     28
SECTION B.   Delivery Of Ballot Box     28

**CHAPTER 7 — RECONVENING EARLY VOTING BALLOT BOARD**     29

SECTION A.   Establishing The Early Voting Ballot Board To Review Provisional Ballots     29
SECTION B.   Reconvening For Qualifying Late Early Ballots By Mail     33

**APPENDIX A.  Signature Verification Committee**     39
SECTION A.   Questions in Regards to Verifying Signatures     39
SITUATIONS.     41

**APPENDIX B.  Early Voting Ballot Board**     44
SECTION A.   Questions in Regards to Board     44
SITUATIONS.     48

SOS_000430

# INTRODUCTION

The Elections Division of the Secretary of State's Office has prepared this handbook for an overview of the Early Voting Ballot Board and Signature Verification Committee.  This handbook contains a thorough outline of who is able to serve as part of the Early Voting Ballot Board, who is able to serve on the Signature Verification Committee, convening the board/committee, qualifying ballots and counting ballot procedures for the Early Voting Ballot Board and Signature Verification Committee.  It incorporates changes in election laws through the regular session of the 86th Texas Legislature (2019).

The handbook starts at the selection process of the Early Voting Ballot Board and Signature Verification Committee, whether it is for a Primary, General, or a Political Subdivisions Election. Throughout the handbook, references are made to the appropriate section in the Texas Election Code or the Texas Administrative Code, unless otherwise indicated.  Information in *italics* relates to primary elections.

The Elections Division of the Secretary of State's Office is open during the hours that the polls are open for voting on all uniform election dates.  Answers to questions on election law and procedures may be obtained by telephoning the Elections Division toll-free at 1-800-252-2216 or (512) 463-5650.

Please visit us at our Internet home page for additional election information at http://www.sos.state.tx.us.

The Office of the Secretary of State does not discriminate on the basis of race, color, national origin, sex, religion, age, or disability in employment or the provision of services.

i

SOS_000431

# CHAPTER 1

## CREATION OF THE EARLY VOTING BALLOT BOARD & SIGNATURE VERIFICATION COMMITTEE

### SECTION A.  COMPOSITION OF THE EVBB

1.  An early voting ballot board (EVBB) shall be created in each election to process early voting results from the territory served by the early voting clerk. [87.001] No matter what type of election an entity is having, they must have an early voting ballot board.

2.  The EVBB consists of a presiding judge and at least two other members. The presiding judge of the EVBB is appointed in the same manner as a presiding election judge. Except in the general election for state and county officers, each county chair of a political party with nominees on the general election ballot shall submit to the county election board a list of names of persons eligible to serve on the early voting ballot board. The county election board shall appoint at least one person from each list to serve as a member of the early voting ballot board. The same number of members must be appointed from each list. The other members are appointed by the presiding judge in the same manner as the precinct election clerks. In addition to the members appointed under the general election, the county election board shall appoint the presiding judge from the list provided under that subsection by the political party whose nominee for governor received the most votes in the county in the most recent gubernatorial general election. [87.002]

    **NOTE:** If the county has an elections administrator, or if commissioner's court has transferred the election duties of the county clerk to the county tax assessor collector, he/she will serve as the county election board chair in place of the county clerk. (31.043, 31.072 & 31.073)

    **Recommend: We recommend that the county election board appoint the members of the early voting ballot board for the November 3, 2020 no later than October 1, 2020, to allow time for notice requirements.**

| Type of Election | Presiding Judge | EVBB Clerks |
|---|---|---|
| General Election for State and County Officers | County Election Board --from list provided by political party whose nominee for Gov received the most votes in the county | County Election Board -- from lists provided by political parties (same number from each list) |
| Primary Elections | County Chair of Political Party with approval of County Executive Committee | Presiding Judge of EVBB |
| All Other County ordered elections | Commissioner's Court if no County Election Board is established | Presiding Judge of EVBB |
| All other Elections | Authority ordering election | Presiding Judge of EVBB |

1

SOS_000432

3. To be eligible for appointment to the early voting ballot board, a person must meet the requirements for eligibility for service as a presiding election judge, [32.051] except that the appointee must be a qualified voter of the territory served by the early voting clerk and is not required to be a qualified voter of any other particular territory. [87.003]

4. An EVBB member would be ineligible if, they hold public elective office, opposed candidate in election on the same day, related to an opposed candidate within 2nd degree by blood or marriage, or serving as campaign treasurer/campaign manager for candidate in election.

5. Required Oaths by Early Voting Ballot Board Members: All EVBB members should recite this oath, prior to beginning service on the Board. [87.006]

   For use in Joint Primary Elections, General Election for State and County Officers, Elections ordered by the Governor:

   "I swear (or affirm) that I will objectively work to be sure every eligible voter's vote is accepted and counted, and that only the ballots of those voters who violated the Texas Election Code will be rejected. I will make every effort to correctly reflect the voter's intent when it can be clearly determined. I will not work alone when ballots are present and will work only in the presence of a member of a political party different from my own. I will faithfully perform my duty as an officer of the election and guard the purity of the election."

   For use in all Separate Primary Elections and Other Elections that do not contain Party Affiliation:

   "I swear (or affirm) that I will objectively work to be sure every eligible voter's vote is accepted and counted, and that only the ballots of those voters who violated the Texas Election Code will be rejected. I will make every effort to correctly reflect the voter's intent when it can be clearly determined. I will not work alone when ballots are present. I will faithfully perform my duty as an officer of the election and guard the purity of the election. "

## SECTION B.  COMPOSITION OF A SIGNATURE VERIFICATION COMMITTEE

1. Unlike an EVBB that is mandatory, a Signature Verification Committee (SVC) may be created. There are two ways for this committee to be created. The first way is through the early voting clerk. The early voting clerk has authority for determining whether a signature verification committee is needed. The second way is through a petition that is submitted to the early voting clerk. The petition must contain at least 15 registered voters in the territory in order for the committee to be created. The SVC must consist of not fewer than five members. If more than 12 members are appointed to serve on the signature verification committee, the early voting clerk may designate two or more subcommittees of not less than six members. [87.027]

2. In an election in which party alignment is indicated on the ballot, each county chair of a political party with a nominee or aligned candidate on the ballot shall submit to the appointing authority a list of names of persons eligible to serve on the signature verification committee. The authority shall appoint at least two persons from each list to serve as members of the committee. The same number of members must be appointed from each list. The authority shall appoint the chair of the committee from the list provided by the political party whose nominee for governor received the most votes in the county in the most recent gubernatorial general election. [87.027(d)]

2

SOS_000433

3. The signature verification committee is a group that meets prior to election day to compare the signatures on the applications for ballot by mail to the corresponding carrier envelopes. (87.027) If the early voting clerk determines that a signature verification committee is desirable **or** if the clerk receives a petition signed by 15 registered voters, the clerk shall issue a written order creating the committee. The deadline to submit a petition requesting creation of a signature verification committee for the November 3, 2020 is October 1, 2020. (87.027, 1.006) A request submitted by mail is considered submitted at the time of its receipt by the early voting clerk. The early voting clerk determines the number of members on the committee, providing for a minimum of five (the committee chair and four members). The county election board appoints the members. The party chairs, including the county chairs of the Libertarian and Green Party of Texas, submit lists of eligible persons for appointment to the committee.

4. In order to serve on the committee, a person must be a qualified voter of the entity. **IT is NOT RECOMMENDED that members that serve on the EVBB serve on the SVC. This creates a conflict because if a SVC has determined that the signatures are not those of the same person, the EVBB may make a determination that the signatures are those of the same person by a majority vote of the board's membership. [87.027(j)]**

The county chairs' lists for the appointment of the signature verification committee members are not subject to the June 30th or the July 30th deadline. The county elections board shall appoint the members of the signature verification committee not later than the 5th day after the date the early voting clerk issues the order calling for the creation of the committee OR not later than October 15, 2020, if the committee is created after a valid petition was submitted requesting its creation. We recommend that the signature verification committee be appointed (if needed) by October 10, 2020, to allow time for all necessary notice requirements. Therefore, we recommend that the parties submit the lists to the chair of the county elections board (county clerk or elections administrator) by August 29, 2020, to allow for appointment during the month of September or no later than the October 10, 2020 recommended date. The chair of the signature verification committee is appointed from the list of the party whose candidate for governor received the highest vote in the 2018 gubernatorial election countywide. For the remaining members, the county election board must select at least two qualified individuals from each chair's list. If clerks beyond the minimum requirement are ordered, an equal number must be chosen from each list.

| Type of Election | Chair | SVC Clerks |
|---|---|---|
| General Election for State and County Officers | County Election Board appoints who is the chair, in an election for which the board is established -- from list provided by the county chairs | County Election Board appoints, in an election for which the board is established --from list provided by the county chairs |
| Primary Elections | County Chair of Political Party with approval of County Executive Committee | County Chair of Political Party with approval of County Executive Committee |
| All Other County ordered elections | Commissioner's Court | Commissioner's Court |
| All other Elections | Authority ordering election | Authority ordering election |

SOS_000434

# CHAPTER 2

## SIGNATURE VERIFICATION COMMITTEE CONVENES

### SECTION A.  CONVENING THE SIGNATURE VERIFICATION COMMITTEE

1. The early voting clerk shall determine the place, day or days, and hours of operation of the signature verification committee and shall state that information in the order calling for the committee's appointment. A committee may not begin operating before the 20th day before election day. [87.027(f)]

2. The early voting clerk shall post a copy of the order calling for the appointment of the signature verification committee. The copy must remain posted continuously for at least 10 days before the first day the committee meets. [ Sec. 87.027(g)]

3. The committee must complete the following tasks:
   (a) Compare the signature on each carrier envelope certificate (except those signed for a voter by a witness, with the signature on the voter's ballot application to determine whether the signatures are those of the voter). [87.027(i)] The signature verification committee may use electronic copies of the mail ballot application and carrier envelope certificate for comparing signatures.
   (b) The committee may also compare the signatures with any two or more signatures of the voter made within the preceding six years and on file with the county clerks or voter registrar to determine whether the signatures are those of the voter. If ballot materials or ballot applications are recorded electronically as provided by Section 87.126, the signature verification committee may use an electronic copy of a carrier envelope certificate or the voter's ballot application in making the comparison under Section 87.027(i).
   (c) Rejection of signatures must be made by a majority vote of the committee. [87.027(i)]
   (d) The only purpose of the SVC is to compare signatures the EVBB will count the ballot. **THE SVC SHOULD NOT BE COUNTING BALLOTS. [87.027(j)]**

### SECTION B.  DELIVERY OF MATERIALS TO THE COMMITTEE

1. If a signature verification committee is appointed for the election, the early voting clerk shall deliver the jacket envelopes containing the early voting ballots voted by mail to the committee instead of to the early voting ballot board. [Sec. 87.027(h)]

2. The following notices must be posted on an entity's website if available: (HB 933 86R)
   a. Copy of order calling for the appointment
   b. EV Clerk's notice of names and addresses of members
   c. Notice of delivery of ballots

3. Deliveries may be made only during the period of the committee's operation at times scheduled in advance of delivery by the early voting clerk. The clerk shall post notice of the time of each delivery. The notice must remain posted continuously for at least two days before the date of the delivery. [87.027(h)]

4. Postings shall be made on the bulletin board used for posting notice of meetings of the commissioners court, in an election for which the county election board is established or a primary election, or of the governing body of the political subdivision in other elections. [Sec. 87.027(k)]

4

SOS_000435

5. The committee chair or committee members may request from the voter registrar, county clerk, or election administrator ahead of time signatures that are on file from the past six years. This does not have to be done ahead of time, however our office recommends in order to give the voter registrar, county clerk or election administrator ample time. This may be provided electronically.

6.  In 2017, SB 5 85 R removed the prohibition against the committee using the registration application signature to determine that the signatures are not those of the same person. The bill authorizes the early voting ballot board or signature verification committee to compare a voter's signature on a ballot application or carrier envelope certificate with two or more signatures of the voter made within the preceding six years and on file with the county clerk, in addition to the board's existing authority to make such a comparison with signatures on file with the voter registrar, to determine whether the signatures are those of the same person. The bill removes the prohibition against the board using such signatures on file to determine that the signatures are not those of the same person. The board or the committee may now use the signatures to determine if they are or if they are not that of the same person.

7. The committee compares signatures on applications and corresponding carrier envelopes only to determine that the signatures on these documents are of the same person or not.  [Sec. 87.027(i)]. The signature verification committee may use electronic copies of the mail ballot application and carrier envelope certificate for comparing signatures. The standard should be whether the two signatures could have been made by the same person. If using electronic signatures to compare, please have a plan in place and use that procedure throughout the duration.

8. The committee places carrier envelopes and applications that are the signatures of the same person in one container and those that are not of the same person in another separate container.

9. Committee chair delivers sorted materials to the Board as directed by the presiding judge of the Board.

10. If the signature verification committee has decided that the signatures are from the same person, the Board may not override the committee's decision.  If the signature verification committee has decided that the signatures are not from the same person, the Board may override the committee's decision that the signatures are of the same person by a majority vote of the Board. [Sec. 87.027(j)]

11. A determination that signatures are not from the same person must be made by a majority vote of the committee or subcommittee as applicable.  If the early voting clerk has designated subcommittees within the signature verification committee, the subcommittee makes its signature determinations by a majority vote of the subcommittee members.  [Sec. 87.027(l)] There is nothing in the Election Code that states what constitutes a majority vote. This may be something that is discussed among the committee to determine what constitutes a majority vote. Please note that if the committee has determined what constitutes a majority vote, that the committee use that process throughout the entire process.

12. The Board makes a determination if the signature verification committee cannot determine whether the signatures are made by the same person.

13. **Convening the Committee after election day**. The early voting clerk may determine whether or not the committee will need to reconvene after election day to verify signatures or leave that authority with the early voting ballot board. We recommend that this decision be done prior to election day. If the authority is left with the committee we recommend that the committee coordinates with the board and the early voting clerk for delivery of the jacket envelope ballots by mail.

SOS_000436

## SECTION C. RECEIPT FOR DELIVERY

1.  Upon delivery of a sealed early voting ballot box, the committee chair of the signature verification committee must inspect the box to determine whether the seals on the box are intact, and whether the numbers on the seals correspond to the numbers indicated on the record of serial numbers prepared by the early voting clerk.  [Secs. 87.062(b), 127.068]

2.  If the seals are intact and the numbers match, the committee chair should accept the ballot box and so indicate on the receipt.

3.  If the seals are not intact or the numbers do not match, the committee chair should accept the ballot box, but note any discrepancies on the receipt and in his or her records.

## SECTION D. SECURITY OF EARLY VOTING BALLOTS

1.  The voted early voting ballots must be secured from the last day of voting by personal appearance at a polling place until the day the ballots are counted.  [T.A.C. Sec. 81.34]

    a.  If the signature verification meets before election day, the committee chair shall, upon each adjournment of the board, lock and seal each ballot box prior to delivering the boxes back to the custodian of records.  The chair shall complete a ballot box security form indicating each serial number used to seal each box.  The form shall be signed by the chair and another committee member who has witnessed the procedure.  In a general election for state and county officers, the committee member must be from a different political party than the judge.  The custodian of records shall also sign the form.

    b.  The committee chair shall deliver the key(s) used to lock the ballot box(es) to the custodian.  The key shall be retained by the authority designated in accordance with Section 66.060(a) of the Code:

        (1)  the sheriff for an election ordered by the governor or county authority or *a primary election*, except that in a year when the office of sheriff is on the ballot, the key shall be delivered to the county judge.  When both these offices are on the ballot, the key shall be delivered to the county auditor or to a designated member of the commissioners court who is not on the ballot and who is appointed by the court, if the county does not have an auditor;

        (2)  the chief of police or city marshal for an election ordered by a city authority; or

        (3)  the constable of the justice precinct in which the office of the political subdivision is located, or if the office of constable is vacant, the sheriff of the county in which the political subdivision is located if the election is ordered by an authority of a political subdivision other than a city or county**.**

    c.  Upon reconvening the committee, the chair shall ensure that each ballot box is intact.  The chair shall follow these procedures each day except upon final delivery to the custodian of records or delivery to the central counting station.

    d.  If it is impracticable for the chair to deliver the ballot boxes each day upon adjournment, the authority conducting the election shall submit an alternate security procedure to the Secretary of State for approval.

6

SOS_000437

# CHAPTER 3

## THE EARLY VOTING BALLOT BOARD CONVENES

## SECTION A.  CONVENING THE EARLY VOTING BALLOT BOARD

1. The Early Voting Ballot Board (the "Board") generally meets twice during an election.  First, the Board meets to qualify ballots by mail on election day or after the last day to vote early by personal appearance.  Second, the Board meets after election day to review any provisional ballots and to qualify any mail-in ballots received by the 5th and 6th day after election day from voters casting a ballot from outside the U.S. or military voters who located outside the voter's home county and is on active duty or a spouse of a military person on active duty .

2. The board must convene to complete the following tasks:
   (a) Qualify and Process Regular Ballots by Mail
   (b) Qualify and Process Late Ballots (old and new categories)
   (c) Qualify and Process Provisional Ballots

3. Convening the Board on election day or after early voting by personal appearance ends.

Except as provided below, the Board may meet to qualify and accept ballots at any time after the end of the early voting by personal appearance, but <u>may not count</u> votes until the polls open on election day.  [Secs. 87.024-87.0241]

**NOTES**:

- General rule: May convene at the end of Early Voting by Personal Appearance (3rd day before) to <u>qualify</u> ballots.
- In elections conducted by a county with a population of 100,000 or more <u>and elections held jointly with such a county</u>, the Board may meet to <u>qualify and accept</u> voted mail ballots beginning the end of the 9th day before the last day of the period of early voting.
- If there is a central counting station that has been established, then the ballots will not be sent to the ballot board, but rather to central count.
- The Board like the Committee may also compare signatures with any two or more signatures of the voter made within the preceding six years and on file with the voter registrar.

In 2017, SB 5 85 R removed the prohibition against the board using the registration application signature to determine that the signatures are not those of the same person. The bill authorizes the early voting ballot board or signature verification committee to compare a voter's signature on a ballot application or carrier envelope certificate with two or more signatures of the voter made within the preceding six years and on file with the county clerk, in addition to the board's existing authority to make such a comparison with signatures on file with the voter registrar, to determine whether the signatures are those of the same person. The bill removes the prohibition against the board using such signatures on file to determine that the signatures are not those of the same person. The board or the committee may now use the signatures to determine if they are or if they are not that of the same person.

4. Convening the Board after election day.

a. The Board cannot convene until the 6th day after an election because voters that did not have a valid form of identification when voting have 6 days to: (1) present to the voter registrar a valid photo identification, (2) complete one of the two curing affidavits set out in Section 65.054(b)(2)(B) (consistent religious objection to photographs) or Section 65.054(b)(2)(C) (identification unavailable due to declared natural disaster), or (3) apply for and receive a disability exemption. A board may convene earlier but continue on a rolling basis until the 6th day.

b. In an election held on the date of the general election for state and county officers, the Board must convene no later than the 13th day after the date of the election to count provisional ballots.

c. In all other elections held on dates other than the date of the general election for state and county officers, the Board must convene no later than the 9th day to complete the review of provisional ballots.

d. The Board shall convene on the 9th day after election day or earlier if the early voting clerk certifies that all ballots from outside of the U.S. have been received and all provisional ballots have been processed by the voter registrar. [Sec. 87.125]  If this date falls on a Saturday, Sunday, or legal state or national holiday, the Board convenes on the next regular business day. [Sec. 87.125(c)].

e. *For Primary and Primary Runoff Elections-not earlier than 6 p.m. on the second Tuesday or later than 1 p.m. on the second Friday after election day at the hour specified by the county chair.*

**NOTE**: From time to time, the office of the Secretary of State will amend this time period by administrative rule.  *See* T.A.C. Sec. 81.33.

SEE CHAPTER 7 FOR RECONVENING OF BALLOT BOARD FOR THE PROCESSING AND COUNTING OF PROVISIONAL AND OVERSEAS LATE BALLOTS.

## SECTION B. DELIVERY OF MATERIALS TO THE BOARD

1. The board should obtain from the authority conducting the election a package of supplies, including the following forms:

   a. Oath of Election Judges and Clerks; [Sec. 62.003]

   "I swear (or affirm) that I will not in any manner request or seek to persuade or induce any voter to vote for or against any candidate or measure to be voted on, and that I will faithfully perform my duty as an officer of the election and guard the purity of the election."

   b. Poll List of Early Voting by Mail Voters or Voters Voting by Mail Procedure; [Sec. 87.021]

   c. List of Early Voting Provisional Voters; [T.A.C. Sec. 81.172 – 81.174]

   d. List of Provisional Voters Who Presented Proper Identification to Voter Registrar; [Sec. 65.0541]

   e. Envelope for Rejected Early Voting Ballots; [Sec. 87.043]

   f. Tally Sheets; [Sec. 65.004]

   g. Return Sheets; [Sec. 65.014]

   h. Envelopes for distribution of returns and election records; [Sec. 66.003]

   i. Statement of Compensation; [Sec. 32.094]

   j. List of "ID" Voters; and

   k. Notice of Delivery of Ballots Voted by Mail (if delivered prior to the opening of the polls.

2. The early voting clerk delivers to the board:

8

a.  Each ballot box containing ballots voted by personal appearance;

b.  List of Declared Write-In Candidates (if applicable);

c.  The early voting clerk's key to each ballot box;

d.  The jacket envelopes containing ballots voted by mail and the corresponding applications;

e.  The list of registered voters, containing voters' permanent and mailing addresses of record, used in conducting early voting;

f.  Notice of Rejection of Early Voted Ballots (to be completed by Judge of Ballot Board);

g.  The ballot transmittal form for early voted ballots; and

h.  Receipt for each ballot box, to be completed when box received.

3.  The custodian of the key to the second lock on the ballot boxes containing ballots voted by personal appearance must deliver his or her key to the presiding officer of the early voting ballot board at his or her request if the Board will be hand counting personal appearance ballots.  [Sec. 87.025]

4.  If ballots will be counted electronically at the central counting station, then:

- The key and the unopened ballot box should be delivered to the central counting station at the direction of the presiding judge of the central counting station and not to the ballot board, since the law prohibits the ballot board judge from opening the early voting by personal appearance ballot boxes containing ballots that are to be counted by automatic tabulating equipment at a central counting station.  [Sec. 87.101]

- If accessible voting equipment (such as direct record electronic equipment ("DREs")) or precinct count optical scan equipment was used for early voting, the ballot board should not process the early voting by personal appearance ballot boxes or voting machines.

5.  The custodian of the key is:

-- for county elections, the county sheriff, unless the sheriff is on the ballot, in which case the key is kept by the county judge.  If both the sheriff and the county judge are on the ballot, the key is kept by the county auditor, or if there is no county auditor, by a member of the commissioners court, named by the court, who is not on the ballot.

-- for city elections, the chief of police or city marshal.

-- for elections of other political subdivisions, the constable of the justice precinct in which the office of the political subdivision's governing body is located, or if there is no constable in that precinct, the sheriff.  [Sec. 66.060(a)]

6.  Notice of each delivery to be made prior to the time the polls open on election day must be posted at the main early voting polling place for at least 24 hours immediately preceding the delivery.  [Secs. 87.023(b), 87.024(b)]

7.  In the general election for state and county officers, if ballots are to be delivered before election day, the early voting clerk must notify the county chair of each political party with a nominee on the ballot at least 24 hours before the first delivery is made.  [Secs. 87.023(c), 87.024(c)]

**SECTION C. RECEIPT FOR DELIVERY**

1.  Upon delivery of a sealed early voting ballot box, the presiding judge of the early voting ballot board must inspect the box to determine whether the seals on the box are intact, and whether the numbers on the seals

SOS_000440

correspond to the numbers indicated on the record of serial numbers prepared by the early voting clerk. [Secs. 87.062(b), 127.068]

2. If the seals are intact and the numbers match, the presiding judge should accept the ballot box and so indicate on the receipt.

3. If the seals are not intact or the numbers do not match, the presiding judge should accept the ballot box, but note any discrepancies on the receipt and in his or her records.

## SECTION D. SECURITY OF EARLY VOTING BALLOTS

1. The voted early voting ballots must be secured from the last day of voting by personal appearance at a polling place until the day the ballots are counted.  [T.A.C. Sec. 81.34]

   a. If the early voting ballot board convenes before election day, the presiding judge shall, upon each adjournment of the board, lock and seal each ballot box prior to delivering the boxes back to the custodian of records.  The judge shall complete a ballot box security form indicating each serial number used to seal each box.  The form shall be signed by the judge and another early voting ballot board member who has witnessed the procedure.  In a general election for state and county officers, the early voting ballot board member must be from a different political party than the judge.  The custodian of records shall also sign the form.

   c. The presiding judge shall deliver the key(s) used to lock the ballot box(es) to the custodian.  The key shall be retained by the authority designated in accordance with Section 66.060(a) of the Code:

      (1) the sheriff for an election ordered by the governor or county authority or *a primary election*, except that in a year when the office of sheriff is on the ballot, the key shall be delivered to the county judge. When both these offices are on the ballot, the key shall be delivered to the county auditor or to a designated member of the commissioners court who is not on the ballot and who is appointed by the court, if the county does not have an auditor;

      (2) the chief of police or city marshal for an election ordered by a city authority; or

      (3) the constable of the justice precinct in which the office of the political subdivision is located, or if the office of constable is vacant, the sheriff of the county in which the political subdivision is located if the election is ordered by an authority of a political subdivision other than a city or county.

   c. Upon reconvening the ballot board, the presiding judge shall ensure that each ballot box is intact.  The presiding judge shall follow these procedures each day except upon final delivery to the custodian of records.

   e. If it is impracticable for the ballot board judge to deliver the ballot boxes each day upon adjournment, the authority conducting the election shall submit an alternate security procedure to the Secretary of State for approval.

10

SOS_000441

# CHAPTER 4

## QUALIFYING BALLOTS VOTED BY MAIL OR VOTED USING MAIL PROCEDURES

### SECTION A. TYPES OF EARLY VOTING BALLOT APPLICATIONS

The early voting ballot board may encounter several types of applications for early voting ballots. There is not only one form that may be used. They include:

1. The "Application for Ballot by Mail" prescribed by the Secretary of State. [Secs. 84.001(a), 84.011]

2. An informal application for a ballot by mail, which is a written request by the applicant that is not made on the official application form prescribed by the Secretary of State. This application must comply with the statutory requirements for applying for a ballot by mail. [Sec. 84.001(c)]

3. The "Application for Limited Ballot" prescribed by the Secretary of State. [Sec. 112.005]

4. The "Federal Post Card Application" (FPCA) used by military and overseas citizen voters. [Sec. 101.003]

5. The "Application for Presidential Ballot" prescribed by the Secretary of State (only applicable in elections held in November of the presidential election year). [Sec. 113.003]

6. The "Application for Emergency Late Ballot Due to Sickness or Physical Disability" prescribed by the Secretary of State. [Sec. 102.002]

7. The "Application for Emergency Late Ballot Due to Death" prescribed by the Secretary of State. [Sec. 103.002]

8. The "Affidavit for Voting at Main Early Voting Place on Election Day" prescribed by the Secretary of State for voting by disabled voters when electronic voting equipment is being used at the precinct polling place. [Sec. 104.002]

### SECTION B. VALID REASONS FOR VOTING EARLY BY MAIL

Only the following persons may vote early by mail:

1. Persons who are 65 years of age or older on election day. [Sec. 82.003]

2. Persons who have a sickness or physical condition that prevents them from appearing at the polling place on election day without a likelihood of needing personal assistance or injuring their health. Expected or likely confinement for childbirth on election day is sufficient cause to entitle a voter to vote early by mail on the ground of disability. [Sec. 82.002]

3. Persons who are confined in jail at the time the application is submitted must be either:

   a. serving a misdemeanor sentence that ends on or after election day; or

   b. pending trial or appeal after denial of bail or if release on bail is unlikely until after election day. [Sec. 82.004]

4. Persons who expect to be absent from the county on election day and during regular early voting hours for that part of the period for early voting remaining after the application is made. [Sec. 82.001] If this reason for voting early is checked, the address to which the ballot was mailed must be an address outside the county. [Sec. 86.003(c)(1)]

5. Persons who are certified for participation in the address confidentiality program.

   a. An application for ballot by mail submitted by a person eligible under Section 82.007 must include:

11

SOS_000442

i. the name and address at which the person is registered to vote;

ii. the substitute post office box designated by the attorney general for the person's use in place of the true residential address; and

iii. an indication for each election for which the person is applying for a ballot.

b. The information on an application for ballot by mail submitted by a voter related to the **address at which the voter is registered is confidential**, except that it must be disclosed if requested by a law enforcement agency or required under a court order. This application is good for 3 years.

## SECTION C. QUALIFYING EARLY VOTING BALLOTS VOTED BY MAIL

1. Each jacket envelope will contain:

   a. an application for an early ballot to be voted by mail (or one of the other application procedures in Section A above that uses mail procedures) [Secs. 86.011(b), (c)];  If FPCA was submitted, jacket envelope must include a copy of the FPCA and the signature cover sheet.

   b. the envelope in which the application was delivered to the early voting clerk, if applicable; and

   c. the carrier envelope, which will contain:

      -- a ballot envelope with the ballot inside; and

      -- statements of residence, copy of identification, or other requested items, if applicable. [Sec. 86.002]

2. Remove the application and carrier envelope from the jacket envelope.

3. Check the voter's application to be sure that it states a legal ground for voting early by mail (See Section B above).  [Sec. 87.041(b)(3)]

4. If the reason for voting early by mail is absence from the county, the application must show an address outside the county to which the ballot was mailed.  [Sec. 87.041(b)(5)]

   **NOTE**:  If the application was submitted after the period for early voting by personal appearance began, the application must show that the voter was absent from the county when the application was submitted.  A voter checking expected absence from county and providing an out of county address on the official application is sufficient.

5. If the grounds for voting by mail is either being 65 or over, or disability, and the applicant has not provided his or her official mailing address as shown on the list of registered voters as the address for mailing his or her ballot, the address provided must be that of a hospital, nursing home, other long term care facility, retirement center, or the address of a relative within the second degree of affinity or third degree of consanguinity with whom the applicant is living.  [Sec. 86.003(c)(3)]

6. If the reason for voting early by mail is confinement in jail, the address to which the balloting materials must be addressed is that of the jail facility or a relative within the second degree of affinity or third degree of consanguinity.  [Sec. 86.003(c)(2)]

7. Check to make sure that the address to which the ballot was mailed is one of the following:

   a. the voter's residence or mailing address indicated on the voter's registration record;

   b. the facility that the voter is residing at if the voter has indicated on his or her application to vote by mail that the reason for voting is 65 years of age or older or disability and has provided a mailing address that does <u>not</u> match the voter's official residence or mailing address; the facility must be one of the following:

      (1) hospital;

12

SOS_000443

(2) nursing home or long-term care facility;

(3) retirement center; or

(4) relative that is related to the voter by 2nd degree of affinity (by marriage) or the 3rd degree of consanguinity.  Relatives include: parent, child, brother, sister, grandparent, grandchild, great-grandchild, great-grandparent, uncle, aunt, nephew, niece, spouse, spouse's parent, son-in-law, daughter-in-law, brother's spouse, sister's spouse, spouse's brother, spouse's sister and spouse's grandparent.

c.  the jail facility, if the reason for voting by mail is confinement in jail, or the address of a relative listed in Section C. 7. b. above.

d.  an address outside of the county, if the reason for voting by mail is expected absence from the county.

e.  the voter's new address as provided on the enclosed statement of residence if the voter has moved within the county but has failed to update his address with the county voter registrar and is having a ballot mailed to a new residence address. [Secs. 84.002, 86.002, 86.003, 87.041

**NOTE**: Please note that all though you will be looking to ensure that the ballot was mailed to an address, you will not be determining where the voter mails back their ballot. You should not be looking at the delivery postmark.

8.  Check the list of registered voters to ensure applicant is a registered voter. [Sec. 87.041(b)(4)]

**Note:** Due to various address confidentiality laws, some voters will not have a residential address next to their name on the list of registered voters.

a.  If an "S" notation appears next to a voter's name on the list of registered voters, or if the residence address on the application for ballot by mail does not match the residence address on the list of registered voters, the carrier envelope will be stamped "STATEMENT ENCLOSED."  The voter's ballot may NOT be accepted UNLESS a completed, signed Statement of Residence is included in the carrier envelope.  If a completed Statement of Residence is not enclosed, the ballot must be rejected. [Sec. 87.041(b)(6)]

b.  If an "ID" notation appears next to a voter's name on the list of registered voters, the voter's ballot may NOT be accepted unless the voter encloses a copy of one of the documents listed below that establishes the voter's identity:

(1) Texas Driver's License issued by the Department of Public Safety ("DPS");

(2) Texas Election Certificate issued by DPS;

(3) Texas Personal Identification Card issued by DPS;

(4) Texas Handgun License issued by DPS;

(5) United States Military Identification Card containing the person's photograph;

(6) United States Citizenship Certificate containing the person's photograph; or

(7) United States Passport.

NOTE: For voter's who are between 18-60 the above ID's may be expired for up to 4 years. For a voter who is 70 years of age or older the above ID may be more 4 years old. Please note some ID's do not have expiration dates such as a Texas Identification Cards for persons aged 60 or older may be permanent and marked "INDEF;"Texas Election Identification Certificates (EIC) for persons aged 70 or older are permanent cards; Some military ID cards are permanent, including Uniformed Services ID cards and Veterans Affairs ID cards.  These

13

SOS_000444

are usually marked "INDEF;" and Certificates of Naturalization and Certificates of Citizenship do not expire.

**If a voter does not possess, and cannot reasonably obtain one of the above acceptable forms of photo identification, the voter may also enclose a copy of one of the supporting forms of identification listed below that establishes the voter's identity along with a signed Reasonable Impediment Declaration:**

- copy or original of a government document that shows the voter's name and an address, including the voter's voter registration certificate (other examples of government documents include, but are not limited to: driver's licenses from other states, ID cards issued by federally recognized Native American tribes (if the ID card contains an address), DPS Receipts (without a photo), expired voter registration certificates, and, for voters aged 18-69, expired Texas DPS-issued driver licenses or personal ID cards);
- copy of or original current utility bill;
- copy of or original bank statement;
- copy of or original government check;
- copy of or original paycheck; or
- copy of or original of (a) a certified domestic (from a U.S. state or territory) birth certificate or (b) a document confirming birth admissible in a court of law which establishes the voter's identity (which may include a foreign birth document).

**NOTE: The address on either a supporting form of ID or an acceptable photo identification does not need to match the address on the list of registered voters.**

**\*If a voter does not have a valid form of photo identification, they may apply for a free election identification certificate at their local Texas Department of Public Safety office. Reminder: (a) if a voter does not possess one of the seven (7) acceptable forms of photo identification, which, for voters aged 18-69, is not expired for more than four years, or, for voters aged 70 and older, may be expired for any length of time but is otherwise valid, and the voter can reasonably obtain one of these forms of identification or (b) if the voter possesses, but did not bring to the polling place, one of the seven forms of acceptable photo identification, which, for voters aged 18-69, is not expired for more than four years, or, for voters aged 70 and older, may be expired for any length of time but is otherwise valid, or (c) if the voter does not possess one of the seven forms of acceptable photo identification, which, for voters aged 18-69, is not expired for more than four years, or, for voters aged 70 and older, may be expired for any length of time but is otherwise valid, could otherwise not reasonably obtain one, but did not bring a supporting form of identification to the polling place; and the voter does not have a permanent disability exemption indicated on their voter registration certificates, the voter may cast a provisional ballot at the polls.**

**Exemption**:  Voters with a disability may apply with the county voter registrar for a permanent exemption. The application must contain written documentation from either the U.S. Social Security Administration evidencing the applicant's disability, or from the U.S. Department of Veterans Affairs evidencing a disability rating of at least 50 percent. In addition, the applicant must state that he or she has no valid form of photo identification. Those who obtain a disability exemption will be allowed to vote by presenting a voter registration certificate reflecting the exemption.

**Provisional Voting:** If a voter (a) does not possess one of the seven (7) acceptable forms of photo

identification, which, for voters aged 18-69, is not expired for more than four years, or, for voters aged 70 and older, may be expired for any length of time but is otherwise valid, and the voter can reasonably obtain one of these forms of identification or (b) possesses, but did not bring to the polling place, one of the seven forms of acceptable photo identification, which, for voters aged 18-69, is not expired for more than four years, or, for voters aged 70 and older, may be expired for any length of time but is otherwise valid, or (c) if the voter does not possess one of the seven forms of acceptable photo identification, which, for voters aged 18-69, is not expired for more than four years, or, for voters aged 70 and older, may be expired for any length of time but is otherwise valid, could otherwise not reasonably obtain one, but did not bring a supporting form of identification to the polling place; and the voter did not present a voter registration certificate with a permanent disability exemption indicated on their voter registration certificate, the voter may cast a provisional ballot at the polls.

The voter will have six (6) calendar days after election day (1) present to the voter registrar an acceptable form of photo identification; (2) if the voter does not possess and cannot reasonably obtain one of the acceptable forms of photo identification, execute a Reasonable Impediment Declaration and present to the voter registrar an acceptable form of supporting identification; (3) complete one of the curing affidavits (consistent religious objection to being photographed or natural disaster exception), if applicable or (4) qualify for a permanent disability exemption, if applicable.

   c. An application from a voter who is accepted into the Address Confidentiality Program must also include their substitute P.O. Box designated by the Attorney General and an indication for each election for which the person is applying for a ballot.  This application is good for 3 years, unlike a regular ABBM application.

   d. Certain persons may vote even though they are not registered to vote in your county and their names do not appear on your list of registered voters.  They are:

      (1) Persons applying on Federal Post Card Applications.  The FPCA may be used by persons who are registered voters of your county or who are not registered voters of your county since the federal post card application acts as a temporary registration pending permanent voter registration status (see note below).  [Sec. 101.001]

      (2) Persons applying for limited ballots.  A person who moves from one county to another, and the person is either still registered in the former county of residence or was registered in the former county of residence when the person applied to register in the new county of residence.  He or she may vote in their new county of residence, on offices or propositions that are on the ballot in both their new county and the county of his or her former residence.  [Sec. 112.002]

   f. If the voter's name does not appear on the list of registered voters and he or she is not categorized in the group of voters listed in "d" above, the presiding judge must refer to the registration correction list, if provided, to see if the voter's name appears on that form.

## SECTION D: QUALIFYING SIGNATURES FOR THE SIGNATURE VERIFICATION COMMITTEE

1. Check to see that the certificate on the carrier envelope was properly executed.  The certificate is the statement the voter signs and may include portions filled out by assistants or witnesses.  [Sec. 87.041(b)(1)

SOS_000446

2. Check the signatures of the applicant on the application and on the carrier envelope to confirm that both signatures have been executed by the voter, unless either document was signed by a witness.  [Sec. 87.041(b)(2)]

3. A voter may use different witnesses/assistants on their application for ballot by mail and on their certificate. If a voter uses a witness, you would not compare signatures and the ballot should be accepted pending all other qualifications.

4. Section 87.041(e) provides that the Board/Committee may compare signatures with any two or more signatures of the voter made within the preceding six years and on file with the voter registrar, county clerk or elections administrator.  These additional signatures may be used to confirm that the signatures are either those are not those of the same person.  SB 5 (85th Legislature, 1, 2017) This bill removed the prohibition against the committee using the registration application signature to determine that the signatures are not those of the same person. The bill authorizes the early voting ballot board or signature verification committee to compare a voter's signature on a ballot application or carrier envelope certificate with two or more signatures of the voter made within the preceding six years and on file with the county clerk, in addition to the board's existing authority to make such a comparison with signatures on file with the voter registrar, to determine whether the signatures are those of the same person. The bill removes the prohibition against the board using such signatures on file to determine that the signatures are not those of the same person. The board or the committee may now use the signatures to determine if they are or if they are not that of the same person.

5. If there is no signature on the carrier envelope (by voter or witness), the ballot must be rejected (see Section F of this chapter for disposition of rejected ballots).  [Sec. 87.041(d)] If the signature is not on the certificate but elsewhere on envelope, our office has said the signature is valid.

-- **EXCEPTIONS**:

a. If the voter was unable to sign his or her name, the application and/or carrier envelope must each be signed by a witness.  Different people may have witnessed the voter's mark on the application and on the carrier envelope.  If the voter was unable to sign the application and/or carrier envelope himself or herself and one or both were signed by witnesses, then the signature will not be compared.  [Sec. 87.041(b)(2)]

b. If the voter applied for an early voting ballot on the Application for Late Emergency Ballot Due to Death or the Affidavit for Voting at Early Voting Place on Election Day, the certificate on the carrier envelope does not need to be signed by the applicant.  The carrier envelope will have a notation "103" or "104" written on it by the early voting clerk when the voter applies under these procedures.  [Secs. 103.004(c), 104.004(c)]

   **NOTE:**   A voter's witnessed application or witnessed carrier envelope are not invalid merely because there is no explanation of the voter's inability to make his or her mark. A ballot may not be rejected merely because the voter signed either the application or the carrier envelope and the other document was witnessed.

c. If the voter applied for a ballot on the Application for Late Emergency Ballot Due to Sickness or Disability, the name, address, and signature of the representative who delivered the application to the early voting clerk must appear on the application and on the carrier envelope containing the voted ballot.  The same representative who submitted the voter's application must deliver the voter's ballot back to the early voting clerk, and the same representative's name must appear on both the application and the carrier envelope.  [Secs. 102.002, 102.004(b), 102.006(a), (b)]

d. Applicants applying for a limited ballot or a presidential ballot also known as a restricted ballot must have two applications if voting this procedure by mail (i.e., the application for early ballot by

SOS_000447

mail and the application for the "restricted" ballot) enclosed in the jacket envelope.  [Secs. 111.004, 112.005, 113.003]

**6.    Signatures that have been either accepted or rejected need to be separated. If the committee has determined that the signatures are not those of the same person, the board may make a determination that the signatures are those of the same person by a majority vote of the board's membership.**

## SECTION E. ACCEPTED BALLOTS

1.   If the applicant has met all the requirements discussed above, the ballot must be accepted for voting.

2.   Open the carrier envelope without defacing the certificate on the carrier envelope and remove the ballot envelope.  [Sec. 87.042(a)]

   a.   A ballot is considered valid even if it is not enclosed in a ballot secrecy envelope; the voter simply loses his/her secrecy of the votes cast.  [Secs. 86.005(d), 87.042(d)]

   b.  If the front of the carrier envelope has "Statement Enclosed" stamped on it, check to see that the statement of residence form is enclosed.  If the applicant's name appears on the list of registered voters with an "S" notation beside it, the applicant is required to complete the statement of residence prior to voting.  If the completed, signed statement is not enclosed, the ballot must be rejected.  (See Section E of this chapter for disposition of rejected early voting ballots.)  [Sec. 87.041(d)]

   NOTE: It is the position of the Office of the Secretary of State that the lack of a statement of residence form included in the envelope of an FPCA voter does not result in a rejected ballot since the FPCA would act as a temporary registration that would prevail the residence address provided on any previous registration applications already on file.

   c.   If the applicant's name appears on the list of registered voters with an "ID" notation beside it, an applicant who possesses an acceptable form of photo identification is required to submit a copy of acceptable photo identification (or, if the voter does not possess, and cannot reasonably obtain an acceptable form of photo ID, a signed Declaration of Reasonable Impediment (see Form 5-22a) and an acceptable form of supporting documentation, or, if the voter has a voter registration certificate with an "E" notation on it, that), along with their mail ballot, unless the voter checks one of the "Exemptions (If Applicable" boxes on Form 5-22a.

3.   Place the unopened ballot envelope in a ballot box or other safe container.  [Sec. 87.042(b)]

4.   Enter the voter's name on the poll list for early voters voting by mail or list for voters using other mail procedures such as limited ballot.  [Secs. 87.041(c); 102.008; 103.005, 104.006]

   a.   If the voter is an FPCA voter, place a check in the "FPCA" column on the poll list next to the voter's name.  [Sec. 101.004]

   b.   If the voter applied for a limited ballot, place a check in the column marked "Limited Ballot" on the poll list next to the voter's name.  [Sec. 111.008]

   c.   In presidential general elections, if the voter applied for a presidential ballot only, place a check in the column marked "Pres. Ballot" on the poll list next to the voter's name.  [Sec. 111.008]

   d.   If the voter is an overseas citizen voter eligible only for a federal ballot, place a check in the column "Overseas Citizen" on the poll list next to the voter's name.  (Only applicable in *primary* and general elections for state and county officers since these voters are limited to federal offices only.)  [Sec. 111.008]

17

SOS_000448

5. Place the application for the early voting ballot and the envelope that was used to mail the application (if applicable), the carrier envelope, and any accompanying papers back into the jacket envelope. (If the jacket envelope is to be used in a subsequent election, the early voting clerk may provide another envelope to be used in lieu of the jacket envelope.) Place any affidavits, statements of residence, and copies of identification in Envelope No. 4 to be delivered to the Voter Registrar. [Sec. 87.044(a)]

6. At least 10 early voting ballots voted by mail must be qualified before the ballots may be counted. Ballots may be removed for manual, hand counting at any time when there are at least 10 ballot envelopes containing ballots that have been qualified in the ballot box (or other safe container). If ballots are to be counted by electronic equipment, the general custodian of election must transmit the accepted by mail ballots to the presiding judge of the central counting station in a locked and sealed ballot box or other container approved by the Secretary of State.

## SECTION F. REJECTED BALLOTS

1. If the application and carrier envelope do not meet the requirements discussed above, the ballot must be rejected and may not be counted. [Sec. 87.041(d)]

2. Write the word "rejected" on the carrier envelope. [Sec. 87.041(d)]

3. Write the word "rejected" on the corresponding jacket envelope. [Sec. 87.041(d)]

4. Place the unopened carrier envelopes containing rejected ballots in the large envelope or container marked "Rejected Early Voting Ballots." [Sec. 87.043(b)]

5. The "Rejected Early Voting Ballot" envelope must be sealed and signed by the presiding judge, and the date and nature of the election must be written on the envelope. More than one envelope may be used if necessary. Record the number of rejected ballots, which are placed in the envelope for rejected ballots. [Secs. 87.043(a), (b)]

6. If the ballot was rejected after the carrier envelope was opened, the presiding judge should make a note on the carrier envelope of the reason the carrier envelope was opened and then rejected.

7. Place the application, the envelope used to mail the application to the early voting clerk (if applicable), and any accompanying papers or affidavits in the corresponding jacket envelope. (If the jacket envelope is to be used in a subsequent election, the early voting clerk may provide another envelope to be used in lieu of the jacket envelope.) [Sec. 87.044(a)]

NOTE: The Early Voting Ballot Board judge must deliver written notice to the voter of the reason for the rejection of his or her ballot no later than the 10th day after election day. [Sec. 87.0431] If this is not done within 10 days and the ballots have been sent back and placed in a ballot box, a court order will be needed to reopen the ballot box. Please contact our office for sample court orders if needed.

SOS_000449

# CHAPTER 5

## COUNTING HAND-COUNTED PAPER BALLOTS

### SECTION A. ESTABLISHING THE COUNTING TEAMS

1.  There may be more than one counting team to tally the early voting ballots.  [Secs. 81.002, 65.001]

2.  Each counting team must consist of two or more early voting ballot board members.  [Secs. 81.002, 65.001]

    a.  One member will be designated the reader.

    b.  The reader may also keep a tally list.

    c.  If there are only two members on a team, one member will keep two tally lists, and the reader will keep one tally list in addition to reading the ballots.

3.  If there is more than one counting team, after all ballots have been counted, the votes for each candidate and/or proposition must be added together with the tallies of the other counting teams, and the totals must be placed on the return sheet.

4.  A member of a counting team may not be replaced after the vote tallying is begun unless each existing discrepancy among the three tally lists is corrected before the replacement is made.  [Secs. 81.002, 65.006(a)]

5.  If a counting member is replaced, he or she must certify the accuracy of the tally list as of the time he or she was replaced.  [Secs. 81.002, 65.006(b)]

### SECTION B. OPENING THE BALLOT BOX CONTAINING HAND-COUNTED PAPER BALLOTS

> **NOTE**: ELECTRONIC BALLOTS CAST IN PERSON ARE NOT TABULATED BY THE EARLY VOTING BALLOT BOARD, BUT RATHER AT A CENTRAL COUNTING STATION.

1.  Open the double-locked ballot box containing the ballots voted by personal appearance.  [Sec. 87.062]

    > **NOTE**:   The early voting clerk will deliver one key to the ballot box when he or she delivers the ballots.  The custodian of the second key will deliver the second key at the time specified by the early voting ballot board's presiding judge.  [Secs. 87.021(1), 87.025]

2.  After the presiding judge opens the ballot box, the judge shall remove any provisional ballots and verify the number of provisional ballots in the ballot box, which is reflected on the Early Voting List of Provisional Voters.

3.  The provisional ballots shall be prepared for delivery to the voter registrar and placed in a closed and sealed box for delivery by the general custodian of election records to the voter registrar.  [T.A.C. Sec. 81.174]

4.  All early voting ballots must be sorted by precinct before they are counted so that a separate total of early voting votes cast in each precinct may be obtained.  [Sec. 87.1231]

5.  For political subdivisions using hand-counted paper ballots, early voting ballots cast by personal appearance may be counted while the ballots cast by mail are being qualified if the early voting ballot board consists of enough members.

6.  When at least 10 early voting ballots cast by mail have been qualified and placed in the ballot box or other container, the ballot envelopes may be removed from the box or container, opened, the ballots removed, the ballot envelopes discarded, and the ballots counted.  This process may be repeated any time there are at least 10 ballot envelopes in the box or container.  [Sec. 87.062(a)]

19

**NOTE**: If there is more than one ballot in a ballot envelope, neither ballot may be counted. The presiding judge must make notation on the back of each ballot of the reason the ballot was not counted. These ballots are then placed with the voted ballots in the early voting ballot box. [Sec. 65.010(a)(2)]

## SECTION C. RULES GOVERNING THE COUNTING PROCEDURE

1.  The ballots must be counted separately by precinct. [Sec. 87.1231]

2.  Three original tally lists are required for each precinct. [Secs. 65.004, 87.1231] A separate page of the same tally book may be used for each precinct's tally list. These tally lists should be completely filled out, and include the following:

    --  Names and offices of candidates; and/or

    --  Propositions;

    --  Date;

    --  Precinct number;

    --  Type of election;

    --  Name of presiding judge; and

    --  Signature of the person keeping the tally list.

3.  Before the counting begins, the early voting Ballot Box should be inspected to ensure that it is empty. It should then be locked and remain locked (except as authorized by the presiding judge), and within view of the counting officials. [Sec. 65.003(c)]

4.  No marks should be made on any ballot by an election official, except that if a ballot is not counted because the judge determines it was not provided by the early voting clerk or because two or more ballots were folded together, an election official must indicate on the back of the ballot the reason for not counting it. [Sec. 65.010(c)]

## SECTION D. THE COUNTING PROCEDURE

1.  The reader must read and distinctly announce to the officials keeping the tally lists each name of a candidate or proposition for which there is a vote. [Sec. 65.005(a)]

2.  The intent of the voter in marking the ballot may be determined by:

    a.  a distinguishing mark adjacent to the name of a candidate or voting choice associated with a proposition;

    b.  an oval, box, or similar marking clearly drawn around the name of a candidate or a voting choice associated with a proposition;

    c.  a line drawn through:

        (1) the names of all candidates in a manner that indicates a preference for the candidate not marked if the names of the candidates not marked do not exceed the number of persons that may be elected to that office;

        (2) a voting choice associated with a proposition in a manner that clearly indicates a preference for the other voting choice associated with the proposition; or

    d.  any other evidence that clearly indicates the intent of the voter in choosing a candidate or deciding on a proposition. [Sec. 65.009]

20

SOS_000451

3. As each vote is read, a tally mark is made by the corresponding name or number on the tally lists.  [Sec. 65.005(a)]

4. The tally lists should be compared periodically and any errors or discrepancies corrected.  [Sec. 65.005(b)]

5. When the reader has completely read and announced all the votes on the ballot, he or she deposits the ballot in the locked early voting ballot box.

6. Any voted ballot that is not counted is also deposited in the box containing the counted ballots.  [Sec. 65.012(b)]

   **NOTE**: A ballot that was not counted should contain a clear notation on the back that it was not counted to avoid an accidental counting during a recount, etc.  [Sec. 65.010(c)]

## SECTION E. RULES FOR COUNTING MANUALLY-CAST OR HAND-COUNTED OPTICAL SCAN BALLOTS

(See generally, Chapter 65 and Secs. 64.003-64.006)

1. The voter should mark his or her ballot by placing an "X" or other mark in the square beside each candidate, proposition, or party column for which he or she wishes to vote (See Figure 1).  [Sec. 64.003]

| | | |
|---|---|---|
| | *(Primary Election Ballot)* | |
| | For Governor | |
| | ☐ Candidate A | |
| | ☐ Candidate B | |
| | *☒ Candidate C | |

| (General Election Ballot) | | | | |
|---|---|---|---|---|
| Candidates for | ☐ PARTY A | ☐ PARTY B | ☐ PARTY C | ☐ Independent   ☐ Write-In |
| Governor | ☐ Candidate A | ☐ Candidate B | *☒ Candidate C | |

**Figure 1.  Illustrations of marked ballots.**
**(The asterisks indicate the candidates for whom the ballot is counted.)**

2. Election officials shall not refuse to count a ballot because the voter marked his or her ballot by scratching out the names of candidates for whom, or the statement of propositions for which, he or she did not want to vote (See Figure 2). [Sec. 65.009(b)]

| Candidates for | ☐☐ PARTY A | ☐ PARTY B | ☐☐ ~~PARTY C~~ | ☐☐ INDEPENDENT | ☐WRITE-IN |
|---|---|---|---|---|---|
| First Office | ☐~~Candidate~~ | ☐~~Candidate~~ | ☐~~Candidate~~ | ☐~~Candidate~~ | ☐_____ |
| Second Office | * ☐Candidate | ☐~~Candidate~~ | | ☐~~Candidate~~ | ☐_____ |
| Third Office | * ☐Candidate | ☐~~Candidate~~ | | ☐~~Candidate~~ | ☐_____ |
| Fourth Office | * ☐Candidate | ☐~~Candidate~~ | | | |
| Fifth Office | * ☐Candidate | | | | |
| Sixth Office | * ☐Candidate | | | | |
| Seventh Office | * ☐Candidate | ☐~~Candidate~~ | | | |

21

SOS_000452

| Eighth Office | * ☐ Candidate | ☐ ~~Candidate~~ | | ☐ ~~Candidate~~ | |
| Etc. | | | | | |

**Figure 2.  Illustration of the scratch method.**
**(The asterisks indicate the candidates for whom the ballot is counted.)**

3.  **Figure 2.  Illustration of Guideline No. 1.**
       **Two party squares marked and individual candidates also marked in one or more columns.**
          **(The asterisks indicate the candidates for whom the ballot is counted.)**

| Candidates for | ☐PARTY A | ☐PARTY B | ☐ PARTY C | ☐INDEPENDENT | ☐WRITE-IN |
|---|---|---|---|---|---|
| First Office | *☒ Candidate | *☒ Candidate | ☐Candidate | ☐Candidate | ☐_____ |
| Second Office | ☐Candidate | *☒ Candidate | | ☐Candidate | ☐_____ |
| Third Office | *☒ Candidate | Candidate | | ☐Candidate | ☐_____ |
| Fourth Office | ☐Candidate | ☐Candidate | | | |
| Fifth Office | ☐Candidate | | | | |
| Sixth Office | *☒ Candidate | | | | |
| Seventh Office | ☐Candidate | ☐Candidate | | | |
| Eighth Office | ☐Candidate | *☒ Candidate | | ☐Candidate | |
| Etc. | | | | | |

Guideline No. 1.  Where more than one candidate square is marked, those votes may not be tallied, and the ballot may be counted only for candidates individually marked, if any. (If there are no candidates individually marked, no portion of the ballot is counted.) [Sec. 65.007(d)]

b.  An entire ballot cannot be voided if the intent of the voter can be determined for any one race or proposition on the ballot. [Sec. 65.009(c)]

c.  <u>An individual vote</u> is not counted in the following situations:

   (1)  <u>An individual vote</u> is not counted if the intent of the voter cannot be determined. [Sec. 65.009(c)]

   (2)  <u>An individual vote</u> is not counted if the voter marked more than one candidate for one race ("overvote").

      In municipal, school board, or other political subdivision elections where it is possible to vote for more than one candidate in the same race, a ballot may not be counted if a voter has marked more candidates than are to be elected. [Sec. 65.011]   A ballot is not invalid if the voter has marked fewer candidates than the number to be elected ("undervote"). [Sec. 65.009]

VOTE FOR NONE, ONE, TWO, OR THREE
☒ Candidate

☒ Candidate

22

SOS_000453

☐ Candidate

☐ Candidate

☒ Candidate

☒ Candidate

**Figure 3.  Illustration of overvoting; voter has voted for more candidates
than are to be elected.  (No portion of this ballot is counted.)**

VOTE FOR NONE, ONE, TWO, OR THREE

*☒ Candidate

☐ Candidate

*☒ Candidate

☐ Candidate

☐ Candidate

☐ Candidate

**Figure 4.  Illustration of undervoting; voter has voted for fewer candidates
than are to be elected.  (A vote is counted for each candidate receiving a vote.)**

(3)  <u>An individual vote</u> is not counted in the following write-in voting situations:

   (a)  The voter used a sticker or rubber stamp with the name of a write-in candidate printed or written on it. [Sec. 65.008(b)]

   (b)  *The election is the primary election for the office of precinct chair or county chair*, a November general election, city council officer elections, an independent or common school district trustee election, special elections for state representative and state senator, or other elections where declaration of write-in is required and the voter writes in the name of a person whose name is not on the list of declared write-in candidates.  [Secs. 144.006, 146.031(d), 146.054, 146.055, 146.082, 171.0231 Election Code; Secs. 11.056(c), 11.304, 130.081, 130.0825, Education Code; Sec. 285.131, Health and Safety Code; Secs. 326.0431 & 326.0432, Local Government Code; Secs. 36.059, 49.101, 63.0945, Water Code]

   (c)  *The election is a primary and the voter writes in a vote for a candidate for public office; only write-in votes for declared candidates for party officer of county chair and precinct chair may be counted. [Sec. 172.112]*

   (d)  The election is a runoff election and a voter writes in any candidate's name; no write-in votes may be counted at a runoff election. [Sec. 146.002]

   (e)  The voter voted for the presidential candidate of one party and the vice-presidential candidate of another party or voted for the presidential or vice-presidential candidate of one party and wrote in the name of a candidate he or she desires to vote for instead of that candidate's running mate. [Sec. 192.037]

d.  A <u>ballot</u> is not counted in the following situations:

   (1)  A <u>ballot</u> is not counted if the intent of the voter cannot be determined. [Sec. 65.009] (See Figure 8).

| Candidates for | ☐ PARTY A | ☐ PARTY B | ☐ PARTY C | ☐ INDEPENDENT | ☐ WRITE-IN |
|---|---|---|---|---|---|

23

SOS_000454

| First Office | ☒ Candidate | ☐ Candidate | ☒ Candidate | ☐ Candidate | ☐ _____ |
| Second Office | ☒ Candidate | ☒ Candidate | | ☐ Candidate | ☐ _____ |
| Third Office | ☐ Candidate | ☒ Candidate | | ☒ Candidate | ☒ *John Smith* |
| Fourth Office | ☒ Candidate | ☒ Candidate | | | |
| Fifth Office | ☒ Candidate | | ☒ Candidate | | |
| Sixth Office | ☐ Candidate | ☒ Candidate | ☒ Candidate | | |
| Seventh Office | ☒ Candidate | ☒ Candidate | | | |
| Eighth Office | ☒ Candidate | ☒ Candidate | | ☐ Candidate | |
| Etc. | | | | | |

**Figure 5.  Illustration of lack of knowledge of intent of voter.**
**(No portion of this ballot is counted.)**

(2) A <u>ballot</u> is not counted if two or more ballots are folded together in a manner that indicates they were folded together when deposited in the ballot box by the voter.  [Sec. 65.010(a)(2)]

(3) A <u>ballot</u> is not counted if the ballot is not numbered or not signed by the judge and the judge determines that this ballot was not provided at the polling place.  However, this ballot may be counted if the judge determines that it was provided at the polling place.  [Secs. 65.010(a)(1), (b)]

(4) A provisional ballot found by an election worker not contained within the provisional voter affidavit envelope.  [T.A.C. §§ 81.172-81.174]

Guideline No. 6.  Where the voter marks a candidate but writes in a declared write-in, the write-in vote is counted.

| Candidates for | ☐   PARTY A | ☐   PARTY B | ☐ PARTY C | ☐ INDEPENDENT | ☐ WRITE-IN |
| First Office | ☐ Candidate | *☒ Candidate | ☐ Candidate | | *  ☐ *John Smith* |
| Second Office | ☐ Candidate | *☒ Candidate | | | ☐ _____ |
| Third Office | ☐ Candidate | * ☐ Candidate | | | ☐ _____ |
| Fourth Office | ☒ Candidate | ☒ Candidate | | | |
| Fifth Office | ☐ Candidate | | | | |
| Sixth Office | ☐ Candidate | | | | |
| Seventh Office | ☐ Candidate | * ☐ Candidate | | | |
| Eighth Office | ☐ Candidate | * ☐ Candidate | | | |
| Etc. | | | | | |

**Figure 6.  Casting a write-in vote.  Illustration of Guideline No. 6.**
**(The asterisks indicate the candidates for whom the ballot is counted.)**

Guideline No. 6.  Where voter fails to properly mark an "X" in the write-in box, the write-in vote may be counted if the presiding judge can determine the intent of the voter. [Secs. 52.070(e), 65.009]

## SECTION F. HANDLING THE ELECTION RETURNS FOR PAPER BALLOTS

1.  Making out the returns.

24

SOS_000455

a. After all ballots are counted, the tally list, including separate totals for precincts, must be totaled and signed by the counting officer keeping it.  If more than one officer has kept one particular list, each officer signs the list upon finishing. [Sec. 65.005(c)]

b. Total each tally list to obtain the total number of votes cast for each candidate and/or for or against each proposition. [Sec. 65.005(c)]

c. The presiding judge must make out and sign all copies of the returns. [Sec. 65.014(c)]

d. A separate return sheet must be made for each precinct. [Sec. 87.1231]

e. Election officials should also prepare a summary return sheet to show complete early voting returns for all precincts.

2. Distribution of election returns, poll lists, and tally lists.

a. There must be four copies of the returns for each precinct. [Secs. 65.014(c), 87.1231]

b. There must be three copies of the poll list (or four copies of the combination form). [Sec. 63.003(b)]

c. There must be three originals of the tally list for each precinct. [Secs. 65.004, 87.1231]

3. Five envelopes for distribution of election records are furnished with the supplies.

a. Envelope No. 1 is addressed to the presiding officer of the local canvassing authority. [Sec. 66.003(b)(1)]

-- County judge (general election for state and county officers or election held by the county).

-- *County chair (primary election).*

-- Mayor (municipal election).

-- Presiding officer of the governing board (other elections).

b. Envelope No. 2 is addressed to the general custodian of election records. [Secs. 66.001, 66.003(b)(2)]

-- County clerk or county elections administrator (general election for state and county officers, election held by the county, *primary election*).

-- City clerk or secretary (municipal election).

-- Secretary of the governing board, or if none, the presiding officer of the governing board (other elections).

c. Envelope No. 3 is addressed to the early voting ballot board judge. [Sec. 66.003(b)(3)]

d. Envelope No. 4 is addressed to the Voter Registrar. [Sec. 66.003(b)(4)]

e. *Envelope No. 5 is addressed to the County Chair.*

4. The records of the election must be distributed as follows:

a. Contents of Envelope No. 1. [Sec. 66.022]

(1) The original of the election returns of early voting ballots for each precinct.

(2) One copy of the tally list for each precinct (from each counting team, if applicable).

b. Contents of Envelope No. 2. [Sec. 66.023]

(1) A copy of the returns of the early voting ballots for each precinct and the summary return.

(2) A copy of the tally list for each precinct (from each counting team, if applicable).

25

SOS_000456

(3) The original of the poll list of early voting voters voting by personal appearance and by mail.

(4) The signature roster.

(5) The precinct early voting list

(6) An affidavits completed at the polling place.

(7) Any certificates of appointment of poll watchers.

c. Contents of Envelope No. 3. [Sec. 66.024]

(1) A copy of the returns of early voting ballots for each precinct and the summary return.

(2) A copy of the poll list of early voters voting by personal appearance and by mail.

(3) A copy of the ballot register.

d. Contents of Envelope No. 4. [Sec. 66.0241]

(l) The precinct list of registered voters.

(2) The registration correction list, if any.

(3) Any Statements of Residence completed at the polling place or by mail or copies of identification submitted by mail.

(4) List of "ID" Voters.

(5) Copy of Combination Form, if used instead of individual affidavits.

e. *Contents of Envelope No. 5.*

-- *Original of the Statement of Compensation, in a primary election.*

f. Contents of early voting ballot box. [Sec. 66.025]

(1) The voted ballots.

(2) A copy of the early voting returns for each precinct and the summary return.

(3) A copy of the tally list for each precinct.

(4) A copy of the poll list of early voters voting by personal appearance and by mail.

5. Manner and time of delivery of records.

a. The presiding judge must deliver Envelope No. 1 in person to the presiding officer of the local canvassing authority, or if that officer is unavailable, to the general custodian of election records. [Sec. 66.051(a)]

b. The presiding judge must deliver Envelope No. 2 and Ballot Box No. 3, the rejected ballot envelope, the jacket envelopes containing the carrier envelopes and applications, and all unused supplies in person to the general custodian of election records. [Sec. 66.051(b)]

c. The presiding judge retains Envelope No. 3. [Sec. 66.051(c)]

d. The presiding judge must deliver Envelope No. 4 in person to the voter registrar, or if that officer is unavailable, to the general custodian of election records for later delivery to the voter registrar. [Sec. 66.051(d)]

e. The judge delivers the keys to the Ballot Box to:

SOS_000457

(1) The sheriff for an election ordered by the governor or a county authority or *for a primary election*, unless the sheriff is on the ballot, in which case the keys are delivered to the county judge.  If both the sheriff and the county judge are on the ballot, the keys are delivered to the county auditor, or, if there is no county auditor, to a member of the commissioners court, named by the court, who is not on the ballot. [Sec. 66.060(a)(1)]

(2) The chief of police or city marshal for an election ordered by a city authority. [Sec. 66.060(a)(2)]

(3) The constable of the justice precinct in which the governing body's office is located, or if the constable's office is vacant, to the sheriff of the county, for an election ordered by a political subdivision other than a county or city. [Sec. 66.060(a)(3)]

f. *Envelope No. 5 is delivered to the County Chair.*

g. Time.

(1) Records must be delivered to the appropriate authority immediately after the returns are completed. [Secs. 66.053(a), 87.063]

(2) If the judge determines that the ballots will not be counted in time to permit delivery of the records by 2:00 a.m. of the day following the election, he or she must notify the general custodian of election records by telephone between midnight of election day and 1:00 a.m. of the following day of:

-- The vote totals tallied for each candidate and for and against each measure at the time of notification.

-- The expected time of finishing the count. [Secs. 66.053(b), 87.063]

(3) In every election, the early voting ballot board records must be delivered to the appropriate authorities not later than 24 hours after the polls close. [Secs. 66.053(c), 87.063]

6. At the time the early voting ballot board records are delivered, supplies shall be returned to the authority responsible for providing such supplies.  The presiding judge shall follow the instructions of such authority regarding the storage or return of empty ballot boxes and their keys and other equipment. [Sec. 87.123]

## SECTION G. REPORTING EARLY VOTES

1. The presiding judge of the Board must deliver the counted ballots, the early voting election returns, other early voting election records, and ballot box keys to the appropriate authorities.  [Sec. 87.063]

2. The early voting totals must reflect the number of early votes for each candidate or measure by election precinct.  [Secs. 67.004(c), 87.1231]

27

SOS_000458

# CHAPTER 6

## EXAMINING, PREPARING, AND COUNTING VOTED OPTICAL SCAN BALLOTS

### SECTION A. PROCESSING BALLOTS COUNTED AT CENTRAL COUNTING STATION

**NOTE**:   If the ballots are to be delivered to the central counting station before the time the polls are closed on election day, the intervals during the day at which the ballots are to be delivered must be stated in the resolution, order, or other official action authorizing the early deliveries. [Sec. 127.124]

1.  The early voting clerk shall deliver the early voting ballots to the central counting station. This should include the container for the early voting electronic system ballots that are to be counted by automatic tabulating equipment at a central counting station.  This shall be done without opening the container.

2.  The early voting electronic system ballots counted at a central counting station shall be tabulated separately from the ballots cast at precinct polling places and shall be separately reported on returns. [Sec. 87.103]

3.  The general custodian of records shall post a guard to ensure the security of ballot boxes containing voted ballots throughout the period of tabulation at the central counting station. [Sec. 127.1232]

### SECTION B. DELIVERY OF BALLOT BOX.

1.  Poll watchers may accompany election officials delivering ballot container after optical scan mail ballots are qualified. [Sec. 33.060]

    If delivery is made in a vehicle, it is sufficient to allow the watchers to follow in a different vehicle and to drive in such a manner that the watchers are able to keep the delivery vehicle in sight.

2.  The officers must present the ballot box to the presiding judge of the counting station or his or her designee.

3.  The delivering officers must then exchange the ballot box for a signed receipt. [Sec. 127.068(a)]

4.  The rejected ballot envelopes, jacket envelopes containing the carrier envelopes, and any unused supplies are returned to the general custodian of election records.

SOS_000459

# CHAPTER 7

## RECONVENING EARLY VOTING BALLOT BOARD

The early voting ballot board must reconvene after the election to review and qualify provisional ballots and to qualify ballots that were cast from outside the United States on or before election day and that are received by the sixth day after election day.  The early voting clerk may determine whether or not the committee will need to reconvene after election day to verify signatures or leave that authority with the early voting ballot board. We recommend that this decision be done prior to the election day. If the authority is left with the committee we recommend that the committee coordinates with the board and the early voting clerk for delivery of the jacket envelope ballots by mail. If there is a SVC, the SVC must verify the signatures before the EVBB meets. The SVC would follow the same procedures of when they first convene.

## SECTION A. ESTABLISHING THE EARLY VOTING BALLOT BOARD TO REVIEW PROVISIONAL BALLOTS

The authority appointing the early voting ballot board may determine which members of the board will review and count the provisional ballots.  The entire ballot board is not required to be present.  A minimum of three members of the board is required to conduct the review.

1. Convening Early Voting Ballot Board.

   a. The presiding judge of the early voting ballot board may convene the board as soon as practicable after the voter registrar has completed the review of the provisional ballots, **or if the voter registrar reviews the provisional ballots in "batches" and releases completed "batches" sequentially, the presiding judge may convene the board as soon as practicable after the voter registrar has completed one or more "batches."** The judge must post a notice on the bulletin board used for posting notices of meetings of the governing body ordering the election no later than 24 hours before each time the board is scheduled to meet. The board may also convene while the voter registrar continues the review.

   b. The early voting ballot board cannot convene a final time until after the 6th day after the election due to Voter ID verification. We recommend to review provisional ballots on a rolling basis.

2. Delivery of Materials To Early Voting Ballot Board.

   a. The board should obtain from the authority conducting the election a package of supplies, including the:

      (1) Return sheets;

      (2) Tally sheets; and

      (3) Envelopes for Accepted and Rejected Ballots.

   b. The general custodian will deliver to the early voting ballot board the Lists of Provisional Voters from each precinct.

3. Delivery of Provisional Ballots.

   a. The early voting ballot board presiding judge shall take receipt of (1) the provisional ballots directly from the voter registrar or the custodian of election records and (2) List of List of Provisional Voters Who Presented Proper Identification to Voter Registrar at a time and place to be determined by the presiding judge and; [Sec. 65.0541]

   b. The presiding judge completes the Verification of Provisional Ballots and Serial Numbers Form by signing at the time of receipt that the seal(s) were intact, the serial numbers of the seal(s) were accurately reflected, and the number of provisional ballots received.

SOS_000460

4.  Review of Provisional Ballots.

The early voting ballot board shall review both the election judge's and the voter registrar's notation on each Provisional Ballot Affidavit Envelope to determine whether or not the ballot should be counted as indicated below.

a.  Provisional ballots to be counted:

(1) The ballot shall be counted if the voter failed to submit identification at the polling place, but the voter registrar indicated the voter presented an acceptable form of identification in person at the registrar's office within six calendar days after the date of the election and the voter was otherwise eligible to vote in the election.

(2) The ballot shall be counted if the voter failed to submit identification at the polling place, but the voter registrar indicated on the Provisional Ballot Affidavit Envelope that the voter applied for and received the disability exemption under Section 13.002(i) of the Election Code by the sixth day after election day and the voter was otherwise eligible to vote in the election.

(3) The ballot shall be counted if the voter failed to submit identification at the polling place, but the voter registrar indicated the voter completed one of the two curing affidavits set out in Section 65.054(b)(2)(B) (consistent religious objection to photographs) or 65.054(b)(2)(C) (identification unavailable due to declared natural disaster) no later than the sixth day after election day.

(4) If the election judge indicated that the reason for casting a provisional ballot was that the voter appeared on the list of registered voters as having cast a ballot by mail, and the voter claimed that he never received the mail ballot, or would like to cancel his or her mail ballot, the provisional ballot shall be counted if the voter's mail ballot has not already been received.

(5) If the voter registrar indicated that the provisional voter is registered to vote in the territory holding the election, the ballot shall be counted.

(6) If the voter registrar indicated that the provisional voter is registered to vote, but was erroneously listed in the wrong precinct, the ballot shall be counted.

(7) If the voter was erroneously removed from the voter registration list and is otherwise qualified to vote, the ballot shall be counted.

(8) The voter registrar has information in the office that the voter did complete an application, and the voter is otherwise qualified, the ballot shall be counted.  (For example, evidence that the voter submitted and application at a DPS office or via a volunteer deputy registrar.)

b.  Provisional ballots not to be counted:

(1) If the election judge indicated that the voter did not provide an acceptable form of identification and the voter registrar noted that the voter did not (1) present an acceptable form of identification to the voter registrar, (2) complete one of the curing affidavits set out in Section 65.054(b)(2)(B), or (3) apply for and receive a disability exemption by the sixth day after election day, then the ballot shall not be counted.

(2) If the election judge indicated that a voter with a permanent disability exemption to the identification requirements did not submit the registration certificate at the polling place, and the voter registrar notes that the voter failed to (1) present their registration certificate with exemption, (2) present another form of acceptable identification, or (3) apply for and receive a permanent disability exemption by the sixth day after election day, the ballot shall not be counted.

30

SOS_000461

(3)  If a voter voted provisionally due to having an outstanding mail ballot that has not yet been cancelled, the provisional ballot shall not be counted <u>if the provisional voter has already voted</u>.

(4)  If the voter registrar indicated that the provisional voter is not registered to vote in the territory holding the election or the registration was not effective in time for the election, the ballot shall not be counted.

(5)  If the voter registrar indicated that the provisional voter is registered to vote at a different precinct other than the one the voter voted in, the ballot shall not be counted. This is not the case if the county that is part of the countywide polling place program.

(6)  If the election judge indicated that the voter was on the list of registered voters, but the voter's registered residence address is outside the political subdivision, the ballot shall not be counted.

(7)  If the voter registrar indicated that an incomplete application was received from the provisional voter but the required additional information was not returned, the ballot shall not be counted.

5.  Disposition of Accepted or Rejected Ballots.

   a.  The presiding judge shall indicate the disposition of each ballot on the provisional voter affidavit envelope.

   b.  The presiding judge shall also indicate the disposition of each ballot on the List of Provisional Voters for that precinct.

   c.  The ballots to be counted shall be removed from their provisional ballot envelopes (which are sealed in a secrecy envelope).  After at least 10 secrecy envelopes have been removed from the provisional ballot envelopes and placed in a separate container, the secrecy envelopes are opened, and the ballots are counted under the normal procedure for counting ballots by mail in an election either by hand counting or by central counting station [See Chapters 5 and 6].  The presiding judge of the early voting ballot board or central counting station shall complete a return sheet of the votes and record them by precinct. The Provisional Voter Affidavit Envelopes are placed in the Envelope for Accepted Voters and delivered to the general custodian of election records.

   d.  The Provisional Voter Affidavits Envelopes that are not counted are placed in the Envelope for Rejected Provisional Ballots and delivered to the general custodian of election records.

   e.  Rejected Provisional Ballot Affidavit Envelopes may not be opened except by court order. [T.A.C. Sec.81.176 (14)]

6.  Counting Paper Ballot Provisional Ballots.

   a.  See Chapters 5 and 6 for counting rules.

   b.  Once counted, the provisional ballots shall be re-locked and returned to the custodian of election records. The key shall be delivered to the custodian of the key.

   c.  If a DRE system is used for provisional voting, the entity conducting the election will direct how provisional ballots are processed.

7.  Counting of Provisional Ballots Electronically (optical scan).

   a.  The manager of the central counting station shall decide whether the ballot board shall manually count the ballots with the totals manually added to the computer count for a canvass total or whether the central counting station shall reconvene.

31

SOS_000462

b.   The manager shall send notice to the presiding judge of the ballot board prior to reconvening the board as to whether the ballots are to be counted manually by the board or whether the ballots are to be prepared for delivery to the central counting station.

c.   If the ballots are to be counted by the central counting station, the manager must post notice at least 24 hours prior to reconvening the central counting station.  Section 1.006 does not apply.

d.   A ballot transmittal form must be completed by the presiding judge of the ballot board.  The transmittal form will accompany the accepted provisional ballots.

e.   Prior to the beginning of the count at a central counting station, the manager shall run the required second logic and accuracy test using the same test deck as on Election Day. After the count is complete, the manager shall run the required third logic and accuracy test. If the test is not successful, the count is void.

f.   The central counting manager may add the provisional ballots to the original returns by hand in order to provide one complete return sheet, may enter the provisional ballots directly on the electronic voting system to have one final electronic return sheet or may provide a separate return sheet with just provisional ballot vote totals. The return sheets are placed in Envelope No. 2 and delivered to the custodian of election records.

g.   The counted provisional ballots and other election materials are returned to the custodian of election records and retained for the appropriate preservation period.

   NOTE:    Since provisional ballots will probably be processed and counted at the same time as the late early voting by mail ballots, additional procedures relating to late ballots pursuant to T.A.C. Sec. 81.37 may also apply.

8.   Notice to Provisional Voters.

   Not later than the 10th day after the local canvass, the early voting ballot board's presiding judge shall deliver written notice regarding whether the provisional ballot was counted to the provisional voter, and if the ballot was not counted, the reason the ballot was not counted. The presiding judge shall use the information provided on the affidavit to obtain the proper mailing address for the voter and the final resolution of the provisional ballot.

9.   Distribution of Provisional Voting Records.

   a.   Custodian of election records receives:

      (1) Lists of Provisional Voters;

      (2) Return sheets;

      (3) Tally Sheets;

      (4) Envelopes for Accepted and Rejected Provisional Ballot Affidavit Envelopes;

      (5) Counted Ballots; and

      (6) Verification of Provisional Ballots and Serial Numbers.

   b.   Custodian of the key receives the key to the ballot box after it has been locked.

   c.   Presiding officer of the canvassing authority receives:

      (1) Return sheets; and

      (2) Tally Sheets.

32

SOS_000463

## SECTION B. RECONVENING FOR QUALIFYING LATE EARLY BALLOTS BY MAIL

1. Requirements for ballots to be counted late.

   The Board must reconvene to count mail ballots which were:

   a. arrived by 5pm on the day after election and bears a cancellation mark of a common or contract carrier or courier indicting a time not later than 7pm at the location of the election on election day.

   b. cast from outside the United States;

   c. placed in delivery before the polls closed; and

   d. which arrived not later than the 5th day (non military overseas) and 6th day (military)  after election day. [Sec. 86.007(d)]

      **NOTE**:   If the 5th of 6th day falls on a weekend day, federal or state holiday, this deadline is extended to the next regular business day.

2. When should the board reconvene?

   a. The general rule is on the 9th day after election day or earlier, if the early voting clerk can determine that all ballots cast from outside the United States have been received.  [Sec. 87.125(a)].

   b. For a general election for state and county officers the date moves to the 13th day after election day, or earlier if the early voting clerk can determine that all ballots cast from outside the United States have been received.  [Sec. 87.125(a-1)].

3. The Carrier Envelope must be:

   a. timely submitted;

   b. properly addressed with postage (no postage is required for FPCA carrier envelopes); and

   c. bear a cancellation mark from a postal service before the polls close or a receipt mark from a common or contract carrier indicating the ballot was received before the polls closed.

4. Additional general provisions.

   a. The presiding judge shall notify the early voting clerk as to the time and place where the board will reconvene.  The notice must be made in time so the early voting clerk may give proper notice of the delivery.  The early voting clerk must post notice of delivery of jacket envelopes and any other accompanying papers to the early voting ballot board at least 24 hours prior to the delivery.  The notice shall be posted at the main early voting polling place.  Section 1.006 does not apply.

   b. The presiding judge shall send notice to the custodian of the key and the custodian of election records to redeliver the ballot box containing the counted ballots and the key to the box.  After the late ballots have been counted, the presiding judge shall lock the late counted ballots in the ballot box.  The presiding judge shall deliver the ballot box to the general custodian of election records and the key to the ballot box to the custodian of the key.

   c. Poll watchers are entitled to be present.

   d. If all mail ballots were received by the close of voting on election day or no ballots were received by the appropriate deadline for the election, the early voting clerk shall certify that fact and deliver the certification to the canvassing board before they convene to canvass the votes. [Sec. 87.125(a)]

5. Special provisions for paper ballots.

SOS_000464

a. Once the ballots have been qualified, the presiding judge shall use the regular method of counting ballots by keeping three new tally sheets, counting by precinct, and having at least two members per tally team.  [Ch. 65, Secs. 87.062, 87.103; T.A.C. § 81.37(b)]

b. Once the board has counted all the ballots, an original and three copies of the return sheet shall be prepared.

c. The distribution of the tally sheets and return sheets shall be made in accordance with the Texas Election Code, Subchapter B, Chapter 66.

d. The canvassing board shall add the returns from both early voting return sheets when canvassing the vote.

6. Provisions for Electronic Voting Systems. [T.A.C. §§ 81.37(c), 87.103]

a. The manager of the central counting station shall decide whether the ballot board shall manually count the ballots with the totals manually added to the computer count for a canvass total or whether the central counting station shall reconvene.

b. The manager shall send notice to the presiding judge of the ballot board prior to reconvening the board as to whether the ballots are to be counted manually by the board or whether the ballots are to be prepared for delivery to the central counting station.

c. If the ballots are to be counted by the central counting station, the manager must post notice at least 24 hours prior to reconvening the central counting station.  Section 1.006 does not apply.

d. A ballot transmittal form must be completed by the presiding judge of the ballot board.  The transmittal form will accompany the ballots qualified.

e. The manager must order a 2nd test to be conducted prior to the count.  The test must be successful.

f. Poll watchers are entitled to be present.

g. After the 2nd test is successful, the unofficial election results preserved by electronic means shall be loaded in the tabulating equipment.

h. The tabulation supervisor shall print a status report before the count is to begin.  This status report shall be compared with the report run on election night.  If the two status reports do not match, the electronic ballots must be counted by hand and the total manually added to the returns printed on election night.

i. If the status reports match, the tabulation supervisor may order the count to begin.  The precinct returns from these counts may be included with the original precinct counts.  The tabulation supervisor does not need to keep the precinct-by-precinct results of the late ballots separate from other early voted ballots.

j. Once the ballots have been counted, results shall be prepared in the regular manner.  The manager shall prepare a certification and attach it to the returns, then place both in envelope #1 to be delivered to the presiding officer of the canvassing board indicating that the results supersede any returns printed prior to the reconvening of the central counting station after election day.

k. After the results have been prepared, a successful 3rd test must be performed.

l. The results, ballots, and distribution of ballots and all records shall be made in the regular manner.

SOS_000465

# APPENDIX A

**This chapter will have examples of questions we see arise for a Signature Verification Committee and examples of situations.**

**A. Questions in regards to verifying signatures:**

1. Do signatures have to be identical?

   As part of the Signature Verification Committee their duty is to compare signatures, however we understand that the SVC are not handwriting experts. With that said it is at the discretion of the committee members to use their best judgment and to verify if these signatures are the same. The committee chair or committee members may request from the county clerk, election administrator, or voter registrar ahead of time signatures that are on file from the past six years. This may be provided electronically. The committee members must use their best judgement if the signatures match. The committee must decide by a majority vote that the signatures are of the same person, or not of the same person. The standard should be whether the two signatures could have been made by the same person.

2. When does the committee need to ask for copies of signatures within the past 6 years from the county clerk?

   There is nothing in the Election code that states when this may be done. The committee members may ask for these documents of voters signatures in advance as long as it is reasonable. We recommend that this may be done within ample time to allow for the clerk to prepare all these documents. Electronic copies of these documents may be sent to the committee. Only committee members can request this.

3. What is a majority vote?

   The Election Code does not state what constitutes as a majority of the SVC. Some counties will determine by the full committee, committee members present, or members of the subcommittees. Our recommendation is that the board comes to an agreement of what constitutes as a majority and that the committeee use that throughout the process.

4. May the SVC keep notes?

   The SVC may not disclose the results of the accepted and rejected ballots. With that, the committee may keep notes. Please keep in mind that these notes are subject to public information requests.

5. Are the carrier envelopes and applications public information?

   Yes. A copy of an application for a ballot to be voted by mail is not available for public inspection, except to the voter seeking to verify that the information pertaining to the voter is accurate, until the first business day after the election day of the earliest occurring election for which the application is submitted. Originals of the applications and carrier envelopes are not available for public inspection until those materials are delivered to the general custodian of election records after the election. [86.014]

SOS_000466

6. Does the SVC separate rejected and accepted ballots?

Yes. The SVC needs to separate the rejected and accepted ballots, because if the SVC has determined that the signatures are not those of the same person, the board may make a determination that the signatures are those of the same person by a majority vote of the board's membership. The EVBB **may not** determine whether a voter's signatures on the carrier envelope certificate and ballot application are those of the same person if the committee has determined that the signatures are those of the same person by the SVC.  [87.027(j)]

7. When is the earliest the SVC can meet?

The first day the SVC can meet is 20 days before the Election. For November 3 of 2020, the earliest the SVC may meet is October 14, 2020. There is no county population requirement for meeting 20 days before Election Day.

8. Is there a limit on how many times the SVC may meet?

No. There is no limit on the times the SVC may meet. The clerk shall post notice of the time of each delivery. The notice must remain posted continuously for at least two days before the date of the delivery. [87.027(h)] Postings required by this section shall be made on the bulletin board used for posting notice of meetings of the commissioners court, in an election for which the county election board is established or a primary election, or of the governing body of the political subdivision in other elections. [87.027(k)] The SVC may meet after Election Day to verify signatures of late ballots, however that is to the discretion of the Early Voting Clerk.

9. May a vacancy be filled if the SVC has conveyed?

Yes. A vacancy on the committee shall be filled by appointment from the original list or from a new list submitted by the appropriate county chair. [87.027(d)]

SOS_000467

---

**SITUATION 1:**
**Voter's Signature does not Match**

---

1. As part of the Signature Verification Committee their duty is to compare signatures, however we understand that the SVC are not handwriting experts. With that said it is at the discretion of the committee members to use their best judgment and to verify if these signatures are the same. The committee chair or committee members may request from the county clerk, election administrator, or voter registrar ahead of time signatures that are on file from the past six years. This may be provided electronically. The committee members must use their best judgement if the signatures match. The committee must decide by a majority vote that the signatures are of the same person, or not of the same person. The standard should be whether the two signatures could have been made by the same person.

2. A majority vote must be decided by the committee members. For example if there are 5 members you may decide 3 out 5 is a majority, or 4 out of 5. Once decided, the committee needs to be consist with that process. If you have subcommittees they must consist of at least two members each with the chair as the deciding vote.

3. If committee members are unsure whether a signature is that of the voter or not, they should put those aside. The committee may decide if all members will need to look at it as a whole or let the subcommittee's decide amongst themselves. If the committee is unsure of certain signatures, they may request from the county clerk, election administrator or voter registrar copies of signatures that are on file from the past six years.

4. A rejected signature must be decided by a majority vote. If there are subcommittees, the committee needs to decide whether the subcommittees may make a majority vote with the chair as the tie breaker if needed, or if they must put those potential rejected ballots aside and decide as whole which ones should be rejected by a majority.

5. Even if unsure the committee must make a decision whether to accept or reject a signature.

6. If the signature is rejected, the committee must place and separate the rejected and accepted carrier envelopes.

7. Once the committee has accepted and rejected all carrier envelopes, the committee has no authority to review the signatures again once delivered to the general custodian of the election.

---

**SITUATION 2:**
**Voter's Signature is not on the Signature Line for the Carrier Envelope**

---

1. If a voter's signature does not appear on the signature line also known as the certificate of the carrier envelope, but is located elsewhere on the envelope, then the signature is valid. As long as the signature is somewhere on the envelope, then the signature would be valid.

2. What if the carrier envelope is signed by a witness? If the carrier envelope is witnessed, then there would be no signature the committee would compare to. However, that does not invalidate the signature. A carrier envelope may be witnessed, as long as the portion is completed correctly.

SOS_000468

3. What if the ABBM is signed by the voter, but their carrier envelope is witnessed? A voter may complete their ABBM and then have their carrier envelope witnessed. An example of this would be if a person breaks their hand (or an injury that would prevent them from signing) after they submit their ABBM, the voter may have a person witness their carrier envelope. The answer would be the same if a person has someone witness their ABBM, however they signed their carrier envelope. This does not invalidate the signature, as long as the witness portion is completed correctly.

4. What if the signature that is signed by the witness on the carrier envelope and the application for ballot by mail do not match? A voter may have someone witness their application for ballot by mail and their carrier envelope. The voter does not have to use the same witness. As long as the witness has included the print of the person that cannot sign, affix their own signature to the document, print their own name, state their residence address or official title, if election officer. The only time a witness may not fill out their information would be if the witness is a relative within the 2nd degree by affinity or 3rd degree by consanguinity OR witness was physically living in the same dwelling as the voter at the time of witnessing the carrier, Sec. 85.0051(a),(e). If the witness fits under one of these categories, then they would need to include that on the carrier.

---

**SITUATION 3:**
**Committee did not Separate Rejected and Accepted Ballots**

---

1. If the committee does not separate the rejected and accepted carrier envelopes, do they have to start all over? No. If the committee cannot determine what carrier envelopes were accepted and rejected, then they would pass all carrier envelopes to the EVBB. There is nothing in the election code that states the SVC may review all carrier envelopes again. However, the EVBB has authority to review rejected signatures and overturn rejected decisions made by the SVC. [87.027(j)] Therefore, our office recommends that since the EVBB has the authority to review rejected signatures by the SVC that the carrier envelopes be forwarded to the EVBB to review. The SVC may still continue to verify signatures after this.

2. Our office recommends that the SVC comes up with a checklist of (1) what a majority is (2) how the committee will accept and reject signatures (3) how the committee will separate rejected and accepted signatures (4) whether the committee will choose to verify signatures electronically or paper, (5) how the committee will verify signatures if they choose to verify by electronic or paper (6) if using electronic verification, then have a number to call if a technical error occurs (7) if there are any signatures that are questionable, know where to separate them (8) know who is going to sign off on the ballot box for delivery to the general custodian of election and (9) set up a time to deliver the box to the custodian of election.

```
┌─────────────────────────────────────────────┐
│              SITUATION 4:                     │
│         Creating a Subcommittee               │
└─────────────────────────────────────────────┘
```

1. If more than 12 members are appointed to serve on the signature verification committee, the early voting clerk may designate two or more subcommittees of not less than six members. If subcommittees have been designated, a determination under Subsection (i) of TEC is made by a majority of the subcommittee. [87.027(l)]

2. If the SVC has less than 12 members you still may have a subcommittee. Please keep in mind that the subcommittees need to be even. If there is an election where party alignment is indicated on the ballot, you should take that into consideration when making subcommittees. If possible, try to have different party alignment in each subcommittee. This should be done amongst the committee and before the committee begins verifying signatures. Whatever process is decided should be used throughout the whole verification process.

3. If a subcommittee is created the chair should be the tie breaker, therefore the chair should not be part of a subcommittee.

4. If there are subcommittees, the full signature verification committee needs to decide whether the subcommittees have authority to accept or reject ballots using a majority vote of the subcommittee members. Alternative, the whole committee could decide to give the subcommittee only authority to accept ballots and set aside rejected ballots and decide as whole which ones should be rejected by a majority.

SOS_000470

# APPENDIX B

**This appendix will have examples of questions we see arise for an Early Voting Ballot Board and examples of common situations.**

1. **Our entity doesn't have any ballots by mail, do we have to have a ballot board?**

   Yes. All entities must have a ballot board. An early voting ballot board shall be created in each election to process early voting results and provisional ballots from the territory served by the early voting clerk. [87.001] You must always appoint a ballot board because you will not know until Election Day whether there will be provisional ballots that need to be reviewed by the EVBB

2. **May the deputy early voting clerks or election day workers serve on the ballot board?**

   This depends. Our office advises that a deputy early voting clerk may not serve on the EVBB. Duties conflict in scope and time for performance. An election day officer may serve on the EVBB. Please keep in mind that both duties may not be done at the same time.

3. **May the early ballot board members serve on the signature verification committee?**

   Not recommended. Since the ballot board members may override a rejected signature decision by the committee, a ballot board member should not serve on the signature verification committee. [87.027]

4. **Do members from the ballot board have to be from different parties?**

   Yes. The same number of members must be appointed from each list provided by political parties with party affiliation on the ballot. This includes all parties that have nominees on the general election ballot including the Libertarians and Green Party.

5. **What if our county does not have a chair from one of the political parties, what do we do?**

   The party first needs to fill the vacancy of the party chair. Then the chair would be able to provide a list of names. If there is no vacancy filed then the Presiding Judge or County Election Board whichever is applicable should appoint members.

6. **If the EVBB is verifying signatures and not the SVC, when does the board need to ask for copies of signatures within the past 6 years from the county clerk?**

   There is nothing in the Election code that states when this may be done. The board members may ask for these documents of voters signatures in advance as long as it is reasonable. We recommend that this may be done within ample time to allow for the clerk to prepare all these documents. Electronic copies of these documents may be sent to the board.

7. **What is a majority vote?**

SOS_000471

The Election Code does not state what constitutes as a majority of the EVBB. Some counties will determine by the full board membership, board members present, or members of the subcommittees. Our recommendation is that the board comes to an agreement of what constitutes as a majority and that the board use that throughout the process.

**8. May the EVBB keep notes?**

The EVBB may not disclose the results of the accepted and rejected ballots. With that, the board may keep notes. Please keep in mind that these notes are subject to public information requests.

**9. Are the carrier envelopes and applications public information?**

Yes. A copy of an application for a ballot to be voted by mail is not available for public inspection, except to the voter seeking to verify that the information pertaining to the voter is accurate, until the first business day after the election day of the earliest occurring election for which the application is submitted. Originals of the applications and carrier envelopes are not available for public inspection until those materials are delivered to the general custodian of election records after the election. [86.014]

**10. Does the EVBB separate rejected and accepted ballots?**

Yes. The EVBB needs to separate the rejected and accepted ballots. If the board did not separate rejected and accepted ballots and cannot determine which ones were accepted or rejected, the board will need to start the process over as they have the authority to do so.

**11. When is the earliest the EVBB can meet?**

This depends on the population of the county. This is the same rule if your entity is in a county with this population and conducting an election jointly. Counties with a population of less than 100,000 may convene at the end of Early Voting by Personal Appearance (3rd day before). Ballots may not be counted until after the polls open on election day. Counties with a population of 100,000 or more may convene on the 8th day before the last day of the period of early voting (12th day before). EVBB may deliver ballots to the central counting station for early counting after the end of the early voting period. Results may not be released until the close of polls on election day.

| | Regular Ballots by Mail | Late Ballots from Outside the US | Provisional Ballots *All Late Ballots* |
|---|---|---|---|
| **Counties** with a population of <u>less</u> than 100,000 | After the end of Early Voting by Personal Appearance (3rd day before) | *Final meeting no earlier than 6th day after election day | **Final meeting no later than the 9th day after election (13th in Nov. 2020). |
| **Counties** with a population of 100,000 or <u>more</u> | The 8th day before the end of early voting (12th day before) | *Final meeting no earlier than 6th day after election day | **Final meeting no later than the 9th day after election (13th in Nov. 2020). |

41

SOS_000472

**12. Is there a limit on how many times the EVBB may meet?**

No. There is no limit on the times the EVBB may meet. The clerk shall post notice each time the ballot board convenes. The clerk shall also post notice of delivery of ballots each time. The notice must remain posted 24 hours before delivery. The prescribed SOS form is AW6-6 (Mail ballots only) & AW6-7 (Mail and paper balloting materials). This notice must be posted at the main early voting polling place at least 24 hours prior to first delivery of ballots. [87.0222] In general elections for state and county officers, the county clerk/elections administrator must notify each county chair at least 24 hours of each delivery.

**13. May a vacancy be filled if EVBB has conveyed?**

Yes. A vacancy on the board shall be filled by appointment such as a vacancy for a presiding judge/alternate judge on Election Day. [32.007]

42

SOS_000473

---

**SITUATION 1:**
**Two Ballots in One Carrier Envelope**

---

**1. If you receive an envelope or package with two or more carrier envelopes from individuals registered at the same address inside may you accept the ballots?**

This depends. If you receive an envelope or package with two carrier envelopes from individuals registered at the same address inside and the carrier envelopes are separated (meaning two different carrier envelopes with two different ballots), then you may accept the ballots pending any other qualifications. If you receive an envelope or package with two or more carrier envelopes from individuals registered at the same address inside and the carrier envelopes are not separated (meaning two or more ballots are in one carrier), then you may not accept both ballots and they would be rejected. This scenario is often found when a couple mails both their ballots in the same carrier envelope.

---

**SITUTATION 2:**
**Carrier Envelope Witness/Assistant Portion Filled out Incorrectly**

---

**1. If you receive a carrier envelope with the witness/assistant portion filled out incorrectly, do you accept it?**

No. The Witness/Assistance portion must be filled out correctly.

3. If the Early Voting Clerk receives a timely carrier envelope that does not fully comply with the applicable requirements prescribed by this title, the clerk may deliver the carrier envelope in person or by mail to the voter and may receive, before the deadline, the corrected carrier envelope from the voter, or the clerk may notify the voter of the defect by telephone and advise the voter that the voter may come to the clerk's office in person to correct the defect or cancel the voter's application to vote by mail and vote on election day. If the early voting clerk chooses to do this with one voter, this must be applied uniformly to all carrier envelopes. A poll watcher is entitled to observe the procedures if this is done. This procedure may be used if the early voting clerk can determine that two carrier envelopes are in one

SOS_000474

| SITUATION 3: |
| --- |
| **Wrong Ballot in Wrong Carrier Envelope Delivered to Board** |

These different scenarios are for a Primary/May Uniform Date Election. In the situations below this is where the county has contracted with local entities to serve as the local entities' early voting clerk, there is a concern that voters will return both ballots in a single carrier envelope.

**Scenario 1:**

The early voting ballot board ("EVBB") for the May 2, 2020 election is meeting to count ballots. They open a ballot secrecy envelope and there is a primary runoff ballot inside. As the ballot secrecy envelope would have been separated from the carrier envelope, there would be no way to determine which voter's ballot this is.

**Procedure for 1:**

This ballot cannot be counted nor retained in a carrier envelope to be forwarded to the EVBB for the runoff primary election. We suggest that the EVBB presiding judge make a notation on the ballot to explain the situation and why the ballot was not counted. The ballot should be stored in the envelope that contains the other rejected ballots (which will still be in their carrier envelopes). See Texas Election Code Section 87.043. Unfortunately, as there is no way to know which voter submitted this ballot, no notice of rejection can be sent to the voter. We note that there is no authority in the Texas Election Code ("the Code") to store a voted ballot outside of the jacket or carrier envelope. Additionally, while the EVBB qualified the voter's ballot with respect to the May 2, 2020 election, the EVBB did not qualify the ballot with respect to the runoff primary. The May 2, 2020 EVBB board does not have the authority to qualify a ballot for the runoff primary.

**Scenario 2a:**

The EVBB for the May 2, 2020 election reviews a carrier envelope (that is marked to show it is a carrier for the May 2, 2020 election) and determines it will accept the ballot. The EVBB proceeds to open the carrier envelope to remove the ballot secrecy envelope, but the ballot is not in a secrecy envelope. The EVBB is able to immediately determine that the ballot inside the carrier is a primary runoff ballot. In this scenario, the ballot is tied to a particular voter as the carrier envelope is still effectively with the ballot.

**Procedure for 2a:**

We recommend that the EVBB immediately put the ballot back in the carrier envelope and seal the envelope. The EVBB should deliver the carrier envelope to the early voting clerk, who should then place the carrier envelope in the jacket envelope for that voter for the primary runoff, ready to be forwarded to the EVBB for that election at the appropriate time. We also suggest that the presiding judge of the EVBB write a memo to detail what occurred, what actions were taken, and the date those actions were taken. The presiding judge and at least one other member of the EVBB should sign off on the memo. A copy of the memo should be placed in the voter's May 2, 2020 jacket envelope and a copy provided to the early voting clerk for placement in the voter's primary runoff jacket envelope. When the EVBB for the primary runoff election convenes and sees a carrier envelope for the May 2, 2020 election in the jacket envelope for the primary runoff, the memo will serve to inform that EVBB of what has occurred.

44

SOS_000475

**Scenario 2b:**

As a corollary to scenario 2a, as the voter's May 2, 2020 carrier envelope contained the primary runoff ballot, it is possible that the primary runoff carrier contains the May 2, 2020 ballot. Can the early voting clerk take the runoff primary carrier and provide it to the May 2, 2020 EVBB for processing?

**Procedure for Scenario 2b**:

As we can identify the voter under these scenarios, and hopefully contact the voter, the chain of custody can be well established. Regarding the carrier envelope for the runoff, which presumably contains the May 2, 2020 entity ballot, we suggest that the early voting clerk call the voter (if possible) to see if voter can confirm that the May 2, 2020 ballot is probably in the runoff carrier envelope. If the voter confirms that s/he believes the ballot in the primary runoff carrier envelope is in fact the May 2, 2020 ballot (or if the early voting clerk is unable to reach voter), the early voting clerk may forward that carrier envelope to the May 2, 2020 election EVBB to process as normal, if able to do so in a timely manner. We do not recommend that the early voting clerk open the carrier envelope, with or without the voter's permission, to determine whether the carrier actually contains the May 2, 2020 ballot. Only the EVBB should be opening this carrier envelope, once the EVBB has determined that the carrier envelope was properly processed (signature comparison completed, voter eligibility determined, etc.). We do suggest that the early voting clerk write a memo to detail what occurred, what actions were taken, and the date those actions were taken, and place a copy of the memo in the voter's May 2, 2020 jacket envelope. Another copy should be placed in the voter's primary runoff jacket envelope.

**Scenario 3a:**

The EVBB for the May 2, 2020 election qualifies the carrier envelope and finds two ballots, each inside a separate ballot secrecy envelope or neither ballot in a ballot secrecy envelope.

**Procedure for Scenario 3a:**

We feel that under this limited circumstance, the EVBB may open the ballot secrecy envelopes, if used by the voter. (The EVBB has the discretion to open a ballot secrecy envelope in limited circumstances. For example, to see if there is a statement of residence included in the secrecy envelope rather than the carrier envelope. It is also not a requirement for a ballot to be in the secrecy envelope.) If one of the ballots is for the May 2, 2020 election and one is for the primary runoff election, the May 2, 2020 ballot may be counted. The primary runoff ballot cannot be counted. There is no authority for the EVBB to, for example, copy the carrier envelope for the May 2, 2020 election and place the runoff ballot back in the carrier envelope for forwarding to the primary runoff EVBB (as in scenario 2b, above). We suggest that the presiding judge of the EVBB makes a notation on the primary runoff ballot to explain the situation and why the ballot was not counted. The primary runoff ballot should be stored in the envelope that contains the rejected ballots (which will still be in their carrier envelopes). See Section 87.043. We recommend sending this voter a rejection letter, even though this EVBB is not the proper ballot board for the May 26, 2020 primary runoff ballot. As above, we recommend that a memo be written and signed by the EVBB presiding judge to detail actions taken. A copy of the memo should be placed in the voter's May 2, 2020 jacket envelope and a copy provided to the early voting clerk for placement in the voter's primary runoff jacket envelope.

SOS_000476

**Scenario 3b:**

The EVBB for the May 2, 2020 election qualifies the carrier envelope, later discovers that the ballot secrecy envelope contains both a May 2, 2020 ballot and a primary runoff ballot.


**Procedure for 3b:**

As in 3a, the May 2, 2020 ballot may be counted, but the May 26, 2020 primary runoff ballot cannot. No notice can be sent to the voter as the identity of the voter cannot be determined by the time the error (2 ballots in one secrecy envelope) is discovered. Again, we suggest that the presiding judge of the EVBB make a notation on the rejected primary runoff ballot and store it with the rejected May 2, 2020 ballots.


---

**SITUATION 4:**
**Voters Mailing Address on ABBM is Different than Voter Registration Address on File**

---

1. If the grounds for voting by mail is either being 65 or over, or disability, and the applicant has not provided his or her official mailing address as shown on the list of registered voters as the address for mailing his or her ballot, the address provided must be that of a hospital, nursing home, other long term care facility, retirement center, or the address of a relative within the second degree of affinity or third degree of consanguinity with whom the applicant is living.  If this information was not provided on the Application for Ballot by Mail, the ballot should be rejected per Section 87.041 of the Code.

SOS_000477



# Election Inspector Handbook

ISSUED BY

SECRETARY OF STATE
STATE OF TEXAS
ELECTIONS DIVISION
1-800-252-8683
OR
(512) 463-5650

SOS_001005

# T ABLE OF C ONTENTS

INTRODUCTION………………………………………………………………… 3
FREQUENTLY ASKED QUESTIONS……………………………………….. 4
  Inspecting an Election………………………………………………………. 4
  Polling Place Setup and Required Forms……………………………….. 5
  Election Officials and Workers…………………………………………… 6
  Poll Watchers………………………………………………………………… 6
  Processing Voters…………………………………………………………… 7
  Casting a Ballot……………………………………………………………... 9
  Assistance to a Voter………………………………………………………. 11
  Securing Voted Ballots…………………………………………………….. 11
  Counting Ballots and Posting Number of Voters……………………… 11
  Electioneering………………………………………………………………. 12
ATTACHMENTS…………………………………………………………….. 13
EARLY VOTING BALLOT BOARD FAQs…………………………………. 19
CENTRAL COUNTING STATION FAQs…………………………………… 20
TIPS…………………………………………………………………………… 21
DUTIES……………………………………………………………………….. 23

SOS_001006

# INTRODUCTION

The Elections Division of the Secretary of State's office has prepared this handbook for use by all appointed election inspectors. This handbook is a quick reference which contains tips and other information. It should be used in conjunction with the handbook for judges and clerks and/or any other informative materials provided by this office.

The Elections Division of the Secretary of State's office is open during the hours that the polls are open for voting on all uniform election dates. Answers to questions on election law and procedures may be obtained by calling the Elections Division toll-free at 1-800-252-8683 or direct at (512) 463-5650.

This handbook was last updated in September 2016.

SOS_001007

# FREQUENTLY ASKED QUESTIONS

## A. Inspecting an Election

1. **How often should inspectors call in?**

   *Inspectors are no longer required to call and check in with the Secretary of State's office periodically. If a problem occurs, or if you have a question regarding either your assignment or a question regarding an action in the polling place, the inspector should call our office as soon as possible.*

2. **Is an inspector there to answer questions?**

   *No.  However, if the election judge asks an inspector an election question, the inspector may answer the question if the inspector **knows** the answer or can find the answer in the handbook.  If unsure, the inspector should call the Secretary of State's office to obtain a response for the election judge.  An inspector should try to be as helpful as possible.*

3. **If an inspector gets asked why the inspector is present, what should the response be?**

   *The inspector should explain that the inspector was probably requested by 15 local registered voters, and that upon this request the Secretary of State must send an inspector.  Do not give the names of the people who signed the request.*

4. **Are copies of the petition requesting an inspector available to the public?**

   *Yes.  However, they are not available until the __day after the election.__*

5. **If a member of the media asks the inspector a question, what should be the inspector's response?**

   *An inspector should never communicate with the media.  If the member of the media is persistent, the inspector should tell them to contact the Secretary of State's office.*

6. **How can someone obtain a copy of the inspector's report?**

   *The requestor may contact the Secretary of State's Elections Division by phone at 1-800-252-8683 or via email at elections@sos.texas.gov to request any materials regarding the inspector's report.*

7. **When is an inspector check-off list (report) due?**

   *Within five days after the inspector returns back to work.  You will be given instructions on how to complete the check off list, which is submitted electronically.*

8. **Is the inspector required to remain at the polling place from 7:00 a.m. to 7:00 p.m.?**

   *No, the inspector may come and go as the inspector is directed by the Secretary of State's office; the inspector is usually assigned to more than one polling place.  Remember, the Secretary of State's Office requires inspectors*

SOS_001008

*to be at their first polling place prior to 7 a.m. and to close a polling place at 7 p.m.*

## B. Polling Place Setup and Required Forms

**1. What voter information should be posted in the polling place?**

*The Secretary of State's voter information poster, voter complaint poster, notice of prohibition of certain devices, instructions on how to cast a vote, and the sample ballot must be posted in a prominent location in the voting area. The notice of acceptable identification must be posted on the outside door of the polling place. Also, the list of declared write-in candidates (if applicable) should be posted in each voting booth.*

**2. Are voting booths required?**

*Yes. However, a divider placed on a table will suffice, as long as a voter's privacy is maintained.*

**3. Must polling places be accessible to voters with disabilities?**

*Yes.*

**4. Should instruction posters be printed in English and Spanish?**

*All election materials used in the polling place must be printed in English and Spanish. In some counties, additional languages may be required.*

**5. Combination form:  What does the form look like?  Result of failure to sign form?**

*The form combines all of the forms necessary to qualify a voter, including most of the affidavits needed by the election officials. It is a legal size paper in four parts with a signature roster on one side and the poll list on the opposite side, in reverse direction, so the voter can sign the roster without the form having to be turned around. If the form is inadvertently not signed, the result is an inaccurate total for the number of voters who voted; however, the voter's ballot is still counted. (Refer to Attachment A). Please note that the Combination Form will not be updated at this time to reflect the August 10, 2016 Court Order referenced herein, but the substantially similar name affidavit on the form should be considered still valid not withstanding that it references Section 63.0101 of the Texas Election Code.*

**6. What does an Affidavit of Provisional Voter look like?**

*It is an envelope with the Affidavit of Provisional Voter on the front for the voter to complete their information. On the back is an area for the Election Judge to state why the voter is voting a provisional ballot and a place for the Voter Registrar to complete the review of the voter's registration status. (Refer to Attachment B). There is an area for "Other" on the Affidavit for scenarios not explicitly covered on the form.*

**7. What is a Notice to Provisional Voter?**

*This notice is provided to each provisional voter. The presiding judge shall give the voter the "Notice to Provisional Voter" form, which explains that the voter will receive*

SOS_001009

*notice in the mail informing the voter whether the provisional ballot was counted and contain the following additional information if the voter cast a provisional due lack of identification:*

   a) *a list of acceptable forms of photo voter identification, and instructions to appear at the county voter registrar's office within 6 calendar days of the date of the election to present an acceptable form of photo identification;*
   b) *a map to the voter registrar's office; and*
   c) *notice that if all procedures are followed and the voter is found to eligible to vote and is voting in the correct precincts, the voter's provisional ballot will be accepted.*

## C. Election Officials and Workers

**1. Who has authority at the polling place?**
*The election judge is in charge of and responsible for the management and conduct of the election at the polling place.  If the election judge orders the inspector to leave, the inspector should do so and then call our office.*

**2. Are election judges, clerks, poll watchers, and state or federal inspectors required to wear an ID badge?**
*Yes.  The ID badge must indicate the person's name and title or position.*

**3. Who is allowed in the polling place?**
*Only authorized persons may be in the polling place.  Authorized persons include the following: election judges and clerks, voters who are voting, poll watchers, inspectors, authorized federal observers, secretary of state and staff, peace officers requested by the judge, interpreters, assistants, children under the age of 18 accompanying the parent, students participating in a student election, a voting system technician who is there to work on voting system equipment, and sheriffs or other law enforcement personnel delivering supplies.  Note that in primary elections only, the county chair may be present in a polling place in order to perform administrative functions connected to the election.*

## D. Poll Watchers

**1. Are poll watchers allowed to wear badges or name tags in the polling place?**
*Yes. Poll watchers must wear a form of identification prescribed by the Secretary of State and provided by the presiding judge or other election officer.*

**2. Is a poll watcher required to report to the polling place by 7:00 a.m.?  Is a poll watcher required to stay at the polling place from 7:00 a.m. to 7:00 p.m.?**
*A poll watcher is not required to be at the polling place by 7:00 a.m..  A poll watcher that serves for more than five continuous hours may serve at the polling place during the hours the watcher chooses, except that if the watcher is present when ballots are counted, the watcher may not leave until the counting is complete; if the poll watcher leaves before the counting is*

SOS_001010

*complete, the presiding judge may not allow them to return.  A poll watcher may not be accepted for service if he or she possesses any mechanical or electronic means of recording images or sound <u>unless the poll watcher disables or deactivates the device</u>.  The election judge may inquire whether a watcher has possession of any prohibited recording device before accepting the watcher for service.*

3. **Is a poll watcher allowed to take notes while serving in a polling place?**
*Poll watchers may take notes, but if the poll watcher leaves the polling place while the polls are open, the election judge may require that the poll watcher leave the notes with another election official of the poll watcher's choice if the poll watcher plans to return.  This person must retain the notes until the poll watcher returns to duty.  If the poll watcher does not plan to return they may take their notes with them.*

E. <u>**Processing Voters**</u>
1. **When must a voter be registered in order to vote in an election?**
*The person must submit an application at least thirty days prior to an election.  A voter's registration certificate will indicate the effective date of the registration, which must be by election day for the voter to be eligible to vote a regular ballot.*

2. **What must a voter bring to be accepted for voting?**

*Pursuant to a court order issued on August 10, 2016, if a voter has obtained an acceptable form of photo ID, from the list below, a voter must present an acceptable form of photo ID to vote.  Voters who have not been able to obtain one of the forms of acceptable photo identification listed below, and have a reasonable impediment or difficulty to obtaining the required photo identification, may present a supporting form of identification of the voter and execute a Reasonable Impediment Declaration, noting the voter's reasonable impediment or difficulty to obtaining an acceptable form of photo identification, stating that the voter is the same person who personally appeared at the polling place, and stating that the voter is casting a ballot while voting in-person.*

*Acceptable Forms of Photo ID:*

1) *Texas Driver's License issued by the Department of Public Safety ("DPS");*
2) *Texas Election Identification Certificate issued by DPS*
   *NOTE: If a voter does not have a valid form of photo identification, they may apply for a free election identification certificate at their local Texas Department of Public Safety office.*
3) *Texas Personal Identification Card issued by DPS;*
4) *Texas License to Carry a Handgun or Texas Concealed Carry Permit issued by DPS;*
5) *United States Military Identification Card containing the person's photograph;*
6) *United States Citizenship Certificate containing the person's photograph; or*

SOS_001011

7)   *United States Passport.*

*With the exception of the U.S. citizenship certificate, which has no expiration date, the acceptable photo identification must be current or have expired no more than 4 years before being presented for voter qualification at the polling place.*

**NOTE:** *This is a change from previous procedure.  Prior law required that the photo ID not be expired for more than 60 days.*

*Here is a list of the supporting forms of ID that can be presented if the voter cannot obtain, and has a reasonable impediment or difficulty to obtaining one of the forms of acceptable photo ID:*

1)   *Valid voter registration certificate*
2)   *Certified birth certificate (must be an original)*
3)   *Copy of or original current utility bill*
4)   *Copy of or original bank statement*
5)   *Copy of or original government check*
6)   *Copy of or original paycheck*
7)   *Copy of or original government document with your name and an address (original required if it contains a photograph)*

**NOTE:**   *The address on either a supporting form of ID or an acceptable photo identification does not need to match the address on the list of registered voters.*

**NOTE:**   *The entity conducting the election may authorize an election officer to access electronically readable information on a driver's license or personal identification card for proof of identification when determining whether a voter shall be accepted for voting.  [Sec. 63.0102]*

**3.  What is a permanent exemption to the requirement to show a photo ID, and how does a voter show that he or she has received a permanent exemption?**
*Voters with a disability may apply with their county voter registrar for a <u>permanent exemption</u> to the requirement to show a photo ID.  The application must contain written documentation from either the U.S. Social Security Administration evidencing the applicant's disability, or from the U.S. Department of Veterans Affairs evidencing a disability rating of at least 50 percent. In addition, the applicant must state that he or she has no valid form of photo identification. Those who obtain a disability exemption will be allowed to vote by presenting a voter registration certificate reflecting the exemption.*

*The voter's registration certificate will have an "(E)" next to the VUID number on their voter registration certificate.*

**4.  Are there are other exemptions to the photo identification requirement?**
*Yes.  A voter may apply for a temporary exemption if the voter has a consistent religious objection to being photographed OR does not present an acceptable form of photo*

SOS_001012

*identification as a result of certain natural disasters as declared by the President of the United States or the Texas Governor.*

*A voter that wishes to obtain a temporary exemption should vote provisionally and then appear in person at the county voter registrar's office to execute an affidavit for the temporary exemption.*

5. **What is the six day "cure period" and what does it mean for voters?**
   *A voter who has not obtained an acceptable form of photo ID and does not have a reasonable impediment or difficulty in obtaining an acceptable form of photo ID, or a voter who has obtained an acceptable form of photo ID, but does not present that ID at the time they offer to vote may cast a provisional ballot at the polls and then will have **until the sixth calendar day** after election day to present an acceptable form of photo ID in the presence of the county voter registrar. If the voter appears at the voter registrar's office and presents an acceptable form of photo ID, the voter's provisional ballot will be counted.*

   *Voter Seeking a Permanent Exemption:  A voter may submit an application for a permanent exemption in person at the voter registrar. A voter may also submit the application via facsimile or regular mail, but the application must be completed with the requisite paperwork attached, and received by the voter registrar no later than the **sixth calendar day** after election day.*

   *Voter Seeking a Temporary Exemption:  If a voter has a consistent religious objection to being photographed, or a voter does not present an acceptable form of photo identification as a result of a natural disaster, as declared by the President of the United States or the Texas Governor, the voter may vote a provisional ballot, and then appear at the voter registrar's office by the **sixth calendar day** after election day to sign an affidavit swearing to the religious objection or natural disaster. If the voter takes these steps to execute an affidavit for a temporary exemption, their provisional ballot will be counted.*

6. **If a voter's name does appear on the precinct's list of registered voters, may the voter still vote?**
   *Yes, if the voter has a current voter registration certificate, showing the voter is registered in the precinct in which the voter is appearing, and (1) an acceptable form of photo identification, or (2) a reasonable impediment or difficulty to obtaining an acceptable form of photo identification and an acceptable form of supporting identification. Also, if the voter has a current voter registration certificate showing the voter is registered in a different precinct, and (1) an acceptable form of photo identification, or (2) a reasonable impediment or difficulty to obtaining an acceptable form of photo identification and an acceptable form of supporting identification, the voter may execute an affidavit stating that the voter is a resident of the precinct and entitled to vote, was a resident of the precinct in which the voter is offering to vote at the time the information on the voter's residence address was last provided to the voter registrar, did*

SOS_001013

*not deliberately provide false information to secure registration in a precinct in which I do not reside, and is voting only once in the election. This affidavit is entitled the "Affidavit for Voter Not on List" and appears on the Combination Form.*

*If the voter is not on the list of registered of voters and does not have a valid voter's registration certificate, the voter should be advised of the right to vote a provisional ballot.*

**7. What does the "S" notation on the list of registered voters indicate?**
*An "S" notation means a voter has been placed on the Suspense List because he or she has probably moved.  If a voter with an "S" notation desires to vote, the voter must sign the Statement of Residence (Refer to Attachment C) on which they must provide their current residence address, which must be located within the same county.   The voter must vote in his or her old precinct.  If the voter submits a Statement of Residence for a different county, the county voter registrar shall forward the Statement of Residence form to the voter's new county voter registrar.*

*NOTE that once a voter has moved to another county, the voter may not return to the previous county of residence to vote (but may be able to vote a limited ballot in the new county during the early voting period, if there are offices or propositions in common between the old and the new county).*

**8. What does the "ID" notation on the list of registered voters indicate?**
*The "ID" notation alerts the judge to the fact that a voter has either not been issued a Texas Driver's License or personal ID number or a social security number or the numbers provided could not be verified, and the voter must present an acceptable form of photo identification, or, if the voter has a reasonable impediment or difficulty to obtaining an acceptable form of photo identification, the voter must present an acceptable supporting form of identification and execute a Reasonable Impediment Declaration.*

**9. What does an election official do if the name on the ID presented by the voter does not match the voter's name as it appears on the official list of registered voters?**

*The voter may still be accepted for voting a regular ballot if the election official determines that the voter's name on the ID is "substantially similar" to the name on the list of registered voters.  A voter's name is considered substantially similar if one or more of the following circumstances applies:*
a. *The name on the ID is slightly different from one or more of the name fields on the official list of registered voters.*
b. *The name on the voter's ID or on list of registered voters is a customary variation of the voter's formal name. For example, Bill for William, or Beto for Alberto.*
c. *The voter's name contains an initial, middle name, or former name that is either not on the official list of registered voters or on the voter's ID.*

SOS_001014

    *d. A first name, middle name, former name or initial of the voter's name occupies a different field on the presented ID document than it does on the list of registered voters.*

*In considering whether a name is substantially similar, election officials should also look at whether information on the presented ID matches elements of the voter's information on the official list of registered voters such as the voter's residence address or date of birth.*

*If the election official determines the name is substantially similar, the voter may be accepted for voting after initialing the Similar Name Affidavit on the Combination Form.*

## F. **Casting a Ballot**

**1. What is the difference between paper ballots and optical scan ballots?**
*Paper ballots are ballots hand-counted by the election officials. Optical scan ballots are paper ballots electronically counted by a machine.*

**2. What if a voter picks up the wrong ballot?**
*If the voter does not walk away from the table with the wrong ballot, it can simply be placed with the new ballots to be given to another voter. If the voter walks to the voting booth with the wrong ballot before the voter realizes it is the wrong ballot and returns the ballot to the Election Judge, the ballot should be treated as a spoiled ballot, regardless of whether the voter marked the ballot.*

**3. What if the voter incorrectly marks the ballot?**
*If the ballot has already been deposited into the ballot box, it's too late for the voter to receive another ballot. If the ballot has not been deposited, the voter may ask for another ballot. The voter is entitled to ask for up to three ballots.*

**4. Should voters select their own ballot?**
*Yes. The voter should always select the voter's own ballot.*

**5. Should there be instructions on ballots?**
*Yes. Instructions are required to appear on the ballot or ballot label depending on the type of voting system used.*

**6. What is the proper display of ballots?**
*Ballots should be placed faced down and signed by the election judge, but they should not be in numerical order. There is no minimum number of ballots required to be displayed as long as the voter has a choice of several. Also, there should be an additional set of provisional ballots for voters from which to select. The provisional ballots should also have "provisional" stamped on the back, along with the election judge's signature.*

SOS_001015

7. **May voters walk over to another booth where there is someone voting?**
   *No, voters should not talk to each other while voting, even if they are married to each other.*

8. **Are election officials <u>required</u> to check voting booths for election-related materials discarded by previous voters?**
   *Yes.  The law requires election officials to <u>periodically</u> check each voting station and common areas of the polling place for sample ballots or other written election materials pertaining to the election that may have been left by previous voters.*

9. **What should the election officials do if they run out of ballots?**
   *First, if the judge sees that the quantity of ballots is getting low, the judge should call the authority responsible for ordering the ballots (e.g., county clerk, city secretary, school superintendent) to obtain additional ballots or have more reproduced.  In an emergency situation, they may make copies of a ballot or if no ballots are remaining, have the voter provide their vote choices on a blank sheet of paper.*

10. **What should the election judge do if the supply of combination forms runs out?**
    *Contact the person in charge of the election (e.g., county clerk, city secretary, school superintendent) to obtain additional forms.  If necessary, make copies of the form before the supply is completely exhausted.*

11. **Is it true that ballots should be marked with an indelible marker (non-erasable)?**
    *Yes.  The Election Code requires that an indelible marker be used to mark ballots, and is defined as an instrument that makes marks that cannot easily be removed or erased.*

## G. <u>Assistance to a Voter</u>

1. **How many election officials should assist a voter if the voter requests assistance from the election officials?**
   *On election day, a voter who is qualified to receive assistance must be assisted by two election officials.  Instead of being assisted by election officials, a voter may also be assisted by any person of the voter's choice, as long as the assistant is not an agent of the voter's employer, or an officer or agent of the voter's labor union, if any, and they take the oath of assistance.  **During early voting, a voter may be assisted by one election official.***

2. **Are interpreters allowed in the polling place?**
   *Yes. The voter may communicate through an interpreter selected by the voter or provided by the political subdivision if the voter does not provide his or her own interpreter, regardless of whether an election officer who attempts to communicate with a voter understands the language used by the voter. Before serving as an interpreter, the person selected as the interpreter must take the "Oath of Interpreter" administered by an election officer.  The*

SOS_001016

*interpreter may be any person selected by the voter other than the voter's employer, an agent of the voter's employer, or an officer or agent of a labor union to which the voter belongs.  **NOTE:** This is a change in prior law, due to Court Orders issued on August 12 and 30, 2016.*

**3. What election materials may a voter bring into the polling place?**
*A voter may bring written campaign materials into the polling place to assist in marking his or her ballot.*

## H. Securing Voted Ballots
**1. Are provisional ballots placed in a separate box?**
*Yes.  The provisional ballots, sealed in a ballot secrecy envelope and then in the provisional ballot envelope, must be placed in a secure container separate from the regular voted ballots.*

**2. How many seals and locks are the ballot boxes required to have?**
*On election day, only one lock is required.  The ballot box must, in addition to being locked, be sealed before the box is delivered to the central counting station either with a wire seal or paper seal (depending on the design of the ballot box).  If optical scan ballots are used, "pre-locked, pre-sealed" ballot boxes must be used during the time the polls are open.  These boxes are locked and sealed before the polls open and are not opened until delivered to the central counting station.*

*During early voting, two locks plus a wire hasp seal are required, and, if necessary, the paper seal, which covers the slot through which voters deposit their ballots.*

## I. Counting Ballots and Posting Number of Voters
**1. May ballots be counted prior to 7:00 p.m. when the polls close?**
*Yes.  As long as there are at least 10 ballots in the box each time counting begins, and as long as it is past 8 a.m.  This is for "regular" paper ballot jurisdictions only.  Optical scan ballots are sent to the central counting station after the polls close to be counted.*

**2. How often should the total number of voters be posted on the door outside the polling place?**
*Election officials should post the number of people who have voted every two hours, beginning at 9:30 a.m. and ending at 5:30 p.m.*

## J. Electioneering
**1. Who can provide rides to polling places?**
*Anyone may provide a ride to the polling place (candidates, campaign workers, etc.).  However, these individuals are still prohibited from electioneering within the 100-foot area outside the door to the building in which the polling place is located.*

SOS_001017

**2. What is considered electioneering?**
*Electioneering includes promoting a candidate, measure, or political party through verbal or written communications.  This includes buttons, t-shirts, and bumper stickers.*

**3. What is the distance limitation for electioneering?**
*Electioneering is prohibited inside the polling place and up to a 100-ft. radius of any entrance into building in which the polling place is located.*

**4. What should the election judge do if electioneering is taking place within 100 ft.?**
*The election judge should ask the violators to move outside the distance marker.  If the individuals continue to disobey the election judge, the judge may contact a peace officer to maintain order.*

SOS_001018

ATTACHMENT   A

**COMBINATION FORM**
**Poll List/Signature Roster (Affidavits)**
**for Election Day**

SOS_001019

ATTACHMENT B
FRONT SIDE

## Affidavit of Provisional Voter (Declaración Jurada de Votante Provisional) (Ballot number if using DRE)

TO BE COMPLETED BY VOTER: I am a registered voter of this political subdivision and in the precinct in which I'm attempting to vote and have not already voted in this election (either in person or by mail). I am a resident of this political subdivision, have not been finally convicted of a felony or if a felon, I have completed all of my punishment including any term of incarceration, parole, supervision, period of probation, or I have not been pardoned. I have not been determined by a final judgment of a court exercising probate jurisdiction to be totally mentally incapacitated or partially mentally incapacitated without the right to vote. I understand that giving false information under oath is a misdemeanor, and I understand that it is a felony of the 2nd degree to vote in an election for which I know I am not eligible.

PARA QUE EL VOTANTE LO LLENE: Estoy inscrito como votante en esta subdivisión política y en el precinto en cual estoy votando y aún no he votado en esta elección (en persona o por correo). Soy residente de esta subdivisión política, no he sido definitivamente declarado culpable de un delito grave o si soy el autor de un delito grave, he cumplido toda mi condena inclusive el periodo de encarcelamiento, la libertad condicional, la libertad vigilada, o he sido indultado. No me han determinado por un juicio final de una corte de la legalización de un testamento, ser totalmente incapacitado mentalmente o parcialmente incapacitado sin el derecho de votar. Entiendo que dar información falsa bajo juramento es un delito menor y también entiendo que es un delito grave de 2° grado votar en una elección sabiendo que no cumplo con los requisitos necesarios.

| Last Name / Apellido usual | First Name / Su nombre de pila | Middle Name (if any) / Segundo nombre (si tiene) | Former Name / Nombre anterior |
|---|---|---|---|

Gender: (Optional) / Sexo (Optativo)
☐ Male (Hombre)   ☐ Female (Mujer)

Date of Birth: Month, Day, Year
Fecha de nacimiento: mes, día, año
☐☐ ☐☐ ☐☐☐☐

**Residence Address:** Street Address and Apartment Number, City, State, and ZIP. If none, describe where you live (Do not include PO Box, Rural Rt, Or Business Address)
Domicilio: calle y número de apartamento, Ciudad, Estado, y Código Postal. A falta de estos datos, describa la localidad de su residencia. (No incluya el apartado de correo.)

**Mailing Address:** City, State, and ZIP. If mail cannot be delivered to your residence address. / Dirección postal: Ciudad, Estado y Código Postal (si es imposible entregarle la correspondencia a su domicilio).

**TX Driver's License No. or Personal I.D. No. (issued by Dept of Public Safety)**
Número de su licencia de conducir de Texas o de su Cédula de Identidad expedida por el Departamento de Seguridad Pública de Texas)
☐☐☐☐☐☐☐☐

**Social Security No. (last 4 digits required if you do not have a driver's license or I.D. number)** / Número de Seguro Social (Si no tiene licencia de conducir ni identificación personal, requiere los últimos 4 números de su seguro social)
XXX-XX-☐☐☐☐

☐ I have not been issued a TX driver's license/personal identification number or Social Security Number.
Yo no tengo una licencia de conducir de Texas/Cédula de identidad personal ni Número de Seguro Social.

**Check appropriate box. ARE YOU A UNITED STATES CITIZEN?**
Marque el cuadro apropiado. Soy ciudadano/a de los Estados Unidos.
Yes (Sí) ☐   NO (No) ☐

**Signature of Voter / Firma del votante**
X

SOS_001020

A T T A C H M E N T   B
B A C K   S I D E

## TO BE COMPLETED BY ELECTION JUDGE:

VOTER PRESENTED ACCEPTABLE FORM OF IDENTIFICATION

☐ Yes    ☐ No

### REASON FOR VOTING PROVISIONAL

1. _____ Failed to present acceptable form of identification or voter certificate with exemption.
2. _____ Voter not on list of registered voters.
3. _____ Voter not on list, registered in another precinct.
4. _____ Voter on list of people who voted early by mail, and voter has not cancelled mail ballot application.
5. _____ Voting after 7:00 p.m. due to court order.
6. _____ Voter on list, but registered residence address outside the _____ political subdivision.
7. _____ Other _____ (Please explain)

Sworn and subscribed to before me this date _____

Signature of Election Judge _____

**Action taken by the Early Voting Ballot Board:** ☐ ACCEPTED

## TO BE COMPLETED BY THE COUNTY VOTER REGISTRAR FOR STATUS:

I, the voter registrar/deputy registrar, did research the records of my office and the following conclusion(s) was made:

### FOR VOTERS WHO DID NOT PRESENT ACCEPTABLE PHOTO IDENTIFICATION AT THE POLLING PLACE

1. _____ Voter presented acceptable form of identification within 6 days of election day.
2. _____ Voter met disability exemption within 6 days of election day.
3. _____ Voter executed religious objection affidavit within 6 days of election day.
4. _____ Voter executed natural disaster affidavit within 6 days of election day.
5. _____ Voter did not satisfy identification or affidavit requirements, listed in categories 1-4 above, within 6 days of election day.

### FOR VOTERS WHO VOTED PROVISIONALLY FOR OTHER REASONS

6. _____ Not a registered voter or registration not effective in time for this election.
7. _____ Registered to vote, erroneously listed in wrong precinct.
8. _____ Registered to vote in a different precinct within the county.
9. _____ Information on file indicating applicant completed a voter registration application, but it was never received in the voter registrar's office.
10. _____ Voter erroneously removed from the list.
11. _____ Voter is not registered to vote in _____ political subdivision.
12. _____ Other: _____ (Please explain)

Signature of Voter Registrar _____   Date _____

☐ REJECTED    Signature of Ballot Board Judge

SOS_001021

# A T T A C H M E N T   C
# F R O N T   S I D E

## Instructions for Voting by Mail on Back
(Al Dorso: Instrucciones si vota por correo)

B3-1-41 (10/00)

## STATEMENT OF RESIDENCE
For persons whose residence address does not match voter registration address.

### CONSTANCIA DE DOMICILIO PERMANENTE
Para personas cuya dirección no coincide con la que aparece en la lista oficial de votantes inscritos.

| Last Name Include suffix if any | First Name | Middle Name (If any) | Former Name |
|---|---|---|---|
| Apellido (incluir sufijo si lo hay) (Jr., Sr., III) | Nombre de pila | Segundo nombre (si aplica) | Apellido anterior |

**Residence Address: Street Address and Apartment Number, City, State, and Zip.**
If none, describe where you live. (Do not include P.O. Box, Rural Route, or Business Address)
Domicilio residencial: Número y calle, y número de apartamento, Ciudad, Estado, y Código postal. Si no existe un domicilio, describe donde vive (no incluya apartados postales, rutas rurales o dirección del trabajo.)

**Gender (Optional)**
Sexo (Optativo)

☐ Male Masculino
☐ Female Femenino

**Mailing Address: Address, City, State, and Zip:** if mail cannot be delivered to your residence address.
Dirección postal: Número y calle, y número de apartamento, Ciudad, Estado, y Código postal (si no se puede entregar correo en su domicilio residencial)

Date of Birth: month, day, year
Fecha de Nacimiento: mes, día, año

☐☐ / ☐☐ / ☐☐☐☐

**Texas Driver's License No. or Texas Personal I.D. No.** (issued by the Department of Public Safety)
No. de licencia de conducir de Texas o no. de identificación personal de Texas (Expedido por el Departamento de Seguridad Pública)

☐☐☐☐☐☐☐☐☐

**If no Texas Driver's License or Personal identification, give last 4 digits of your Social Security Number.**
Si no tiene licencia de conducir de Texas o no. de identificación personal, proporcione los 4 últimos dígitos de su número de Seguro Social.

XXX-XX- ☐☐☐☐

☐ I have not been issued a Texas Driver's License/Personal identification Number or Social Security Number.
Yo no tengo una Licencia de conducir de Texas/Cédula de identidad personal de Texas o Número de Seguro Social.

- I am a resident of this county and a U.S. citizen; and
- I have not been finally convicted of a felony, or if a felon, I have completed all of my punishment including any term of incarceration, parole, supervision, period of probation, or I have been pardoned; and
- I have not been determined by a final judgment of a court exercising probate jurisdiction to be totally mentally incapacitated or partially mentally incapacitated without the right to vote.

- soy residente de este condado y ciudadano de los Estados Unidos; y
- no he sido condenado por un delito grave, o en caso de ser delincuente, he purgado mi pena por completo, incluyendo cualquier plazo de encarcelamiento, libertad condicional, supervisión, periodo de prueba, o se me otorgó un indulto; y
- no se me ha declarado, total o parcialmente, como discapacitado mental sin derecho al voto, por el fallo final de un juzgado de sucesiones.

X _____

Date ___ / ___ / ___

**Signature of Applicant or Agent and Relationship to Applicant or Printed Name of Applicant if Signed by Witness and Date.**
Firma del solicitante o su agente (apoderado) y relación de éste con el solicitante, o nombre en letra del molde del solicitante si la firma es la de un testigo, y fecha.

SOS_001022

# ATTACHMENT C
# BACK SIDE

## VOTING BY MAIL:

The residence address on your application for ballot by mail does not match the residence address at which you are registered to vote or the voter registrar has received information which indicates that you may have moved.  You must complete the enclosed statement of residence and return it in the carrier envelope with your marked (voted) ballot.

**If the statement of residence is not returned, your ballot will not be counted.**

Your statement of residence will be reviewed to determine that your permanent residence address is still in the political jurisdiction before your ballot is counted.  The residence address on the application for ballot by mail must be the same as the residence address on the statement of residence.    The statement of residence will be forwarded to the voter registrar to change your voter registration records.  You will be mailed a new voting certificate indicating your new precinct (if applicable) and residence address.

If it is determined that your residence address listed on this form is in a different county, this form will be forwarded to the voter registrar of the new county to get your voter registration transferred.  You will receive a new voting certificate from the voter registrar in your new county.

**You must sign the card.  If you have any question you may call _____.**

## SI VOTA POR CORREO:

Ya que su solicitud de una boleta electoral postal contiene un domicilio o dirección permanente distinto al domicilio bajo cual está inscrito para votar, o ya que la Oficina del Registro Electoral tiene información que indica que usted se ha mudado, será necesario que complete la Constancia de domicilio permanente aquí incluida, y que la devuelva con su boleta electoral completada (o sea, en la que ha marcado su voto) en el sobre proporcionado.

**Si no nos envía la Constancia de domicilio permanente, su voto no se incluirá en el conteo final.**

Antes de incluir sus votos en el conteo final, se verificará que su nuevo domicilio permanente aún queda dentro de la jurisdicción apropiada. El domicilio postal indicado en la solicitud de una boleta postal tiene que ser el mismo que aparece en la Constancia de domicilio permanente.  Esta Constancia será enviada a las Oficinas del Registro Electoral para que las actas de inscripción electoral sean modificadas y Ud. recibirá una cédula electoral nueva que indicará el número de su nuevo recinto electoral, si esto fuera a cambiarse, y su nuevo domicilio permanente.

Si se determina que su residencia anotada en este formulario se ubica en otro condado, este formulario se enviará a la Oficina del Registro Electoral del nuevo condado para transferir su inscripción electoral.  Usted recibirá una nueva cédula electoral de la Oficina del Registro Electoral de su nueva condado.

**Es necesario que firme la tarjeta.**
**Para mayor información o para aclarar cualquier duda, por favor llame al _____.**

SOS_001023

A T T A C H M E N T   D

# Secretary of State

Pursuant to VTCA, Election Code Sec. 34.001

NAME

Is Designated as an Election Inspector

For All 2016 Elections

Carlos H. Cascos, Secretary of State

SOS_001024

# EARLY VOTING BALLOT BOARD

1. **What is an Early Voting Ballot Board?**
   *The board is a group of individuals assigned the task of processing and, in some cases, counting early voting ballots. In some elections, the election judge and clerks serving a polling place may also serve as the early voting ballot board. The Early Voting Ballot Board will also be the authority on whether a provisional ballot is or is not counted when it reconvenes after election day to review provisional ballots.*

2. **Should signatures on the application for ballot by mail and the carrier envelope match?**
   *The board must determine if the signatures could have been written by the same person. If it appears that the signatures are not by the same person, then the board rejects the ballot, unless one of the documents was witnessed because the voter could not sign.*

3. **What if there are no signatures?**
   *The ballot should be rejected if the carrier envelope has no signature, unless signed by a witness indicating the voter could not sign the carrier envelope.*

4. **May EARLY VOTING BALLOTS be counted prior to 7 A.M. on election day when the polls open?**
   *Yes. The Election Code allows the early voting ballot board in counties with a population of 100,000 or more (and political subdivisions holding joint elections in such counties) to begin counting after the before of the early voting period. These populated counties do not have to wait until after 7:00 a.m. on election day to begin counting. However, no vote totals may be released before 7:00 p.m. on election day.*

SOS_001025

# CENTRAL COUNTING STATION

**1.  What happens if a mark on a voter's ballot is unclear?**
*A team of ballot qualifiers (commonly referred to as the resolution board) will review the ballot. If they are able to determine the intent of the voter, the ballot should be duplicated, if necessary, so the ballot tabulating system will be able to accurately count the ballot.*

**2.  If the voter's intent is unclear on a particular office or measure, is the entire ballot void?**
*No, each office and/or measure is considered independent of each other; only the unclear office(s) or measure(s) would be voided (not counted).  The remainder of the ballot should be counted.*

SOS_001026

# INSPECTOR TIPS

## BEFORE LEAVING FOR YOUR TRIP

Go through your packet and check for the locations of your polling places on the map enclosed or via one of the online maps.  If you need to purchase a local map, you will be reimbursed, as long as the receipt and the map are submitted with your final travel memorandum.  Read the handbooks enclosed.

## ARRIVING AT THE POLLING PLACE

1. Make sure that you are wearing your badge. (Refer to Attachment D).
2. Introduce yourself to the election judge.
3. Tell him/her you are there to "observe and monitor the election on behalf of the Office of the Secretary of State."
4. Observe the activities at the table where voters are being qualified to vote or in the area where the votes are being cast and counted.
5. Review the checklist that was given to you.  Upon completing the checklist, if the polling place appears calm, spend a few more minutes and then continue to the next polling place.
6. Inform the election judge that you are leaving to go to another polling place and that you may come back later.
7. CENTRAL COUNTING STATION.  If you are asked to go to the central counting station, it is very important that you remain there until all votes have been tabulated.  Please remind the election judge to call in final results as soon as possible to our office (if applicable - only for certain elections).
8. Point out any irregularities.  If there is something illegal taking place, notify the election judge.  If the judge does not do anything about it, call this office.  Remember, everything should be noted on your report.
9. Always call in if you have any questions or if you are not sure about something.  There are always plenty of staff on-line ready to assist you.
10. CHECK-OFF LIST.  Your report should be filed with the Secretary of State within 5 working days after you return to the office OR as otherwise instructed.
11. If you have any questions, please contact this office toll-free at 1-800-252-2216 and press 5 for a staff member.
12. Be pleasant at all times.
13. Maintain a professional distance from the election workers.
14. If a poll watcher asks you a question, tell him/her to go to the election judge for an answer.
15. If a poll watcher points out an irregularity, tell him/her to go tell the election judge.
16. REMEMBER that you are just an observer and are not in charge of running the election.  You must not get involved in any part of the election process except to point out an irregularity to the election judge.
17. You must be wearing your inspector badge ID at all times.

SOS_001027

# T H I N G S   <u>N O T</u>   T O   D O

1. Take sides.
2. Become too familiar with anyone in the polling place.
3. Talk to anyone in the polling place, except the election officials.
4. Contact anyone connected with the petitioners.
5. Allow anyone connected with the election to pay for your meal or hotel.
6. Argue with the election judge.
7. Cause the election judge any embarrassment.

-24-

SOS_001028

# YOUR RIGHTS AND DUTIES

- A state inspector is entitled to be present at and observe any function or activity at a polling place, central counting station, ballot board meeting, place of canvass, or other place at which official election or voter registration functions or activities take place.  An inspector may take reasonable steps to obtain information regarding a function or activity being performed at a polling place.
- A state inspector may not observe the preparation of a voter's ballot, unless the voter is being assisted by an election officer.
- A state inspector shall report to the Secretary of State any violation of law that the inspector observes.

# CHECKLIST

First, the checklist is not public information until it has been reviewed by our office after the election.  Do not show anyone the checklist.  If someone would like a copy of the findings or observations, they may request this information in writing from our office.  All election inspectors are required to complete a checklist, with notes at the end of the checklist to explain anything that may need further explanation.  The checklist will be in your packet.  Please complete the checklist at the polling location and add any notes as soon as possible after you leave the location so that it is fresh in your mind.  You must complete every check box whether it be Yes (Y), No (N), Not Applicable (N/A), or Not Observed (N/O).  The checklist will be sent to you electronically after you return from your assignment and will be filed electronically with our office no later than five (5) days after your return to office.

As you prepare your checklist, remember that these are open records, which may be released to the media.  Also, our office has a procedure in which we automatically send a copy of the report to the political subdivision conducting the election.  Try to note only the facts you observed and avoid stating your opinion or reporting something you were told, but did not witness.  For example, instead of writing the "County Clerk was rude," a better option is to write "the County Clerk failed to properly explain voting procedures."

If you are required to observe the central counting station, include your observations in the note area on the back of the checklist.  If you are required to be at the early voting ballot board meeting, you will be provided an additional checklist regarding ballot board procedures.

# THANK YOU FOR YOUR SERVICE.

SOS_001029

| From: | Elections Internet |
|---|---|
| To: | Elections Internet |
| Subject: | MASS EMAIL ADVISORY (CC/EA- 660)- 2020-07 - Ballot By Mail Reminders |
| Date: | Wednesday, February 12, 2020 8:11:22 AM |
| Attachments: | image001.png |
| | ADV2020-07 - Ballot by Mail Reminders.pdf |
| | 5-42 - Notice of Rejected Ballot (rev02.2020).pdf |
| Sensitivity: | Personal |

Dear Election Officials,

Our office has issued Advisory 2020-07 – Ballot by Mail Reminders. In addition to this advisory, we have also released a revised version of our Notice of Rejected Ballot. Both the advisory and the revised form have been posted to our website. I've also attached them to this email for your convenience.

This advisory and other resources are located on our Conducting Elections pages.

**Christina Worrell Adkins**

Legal Director – Elections Division

Office of the Texas Secretary of State

1019 Brazos Street | Rudder Building, 2nd Floor | Austin, Texas 78701

1.800.252.VOTE (8683)

elections@sos.texas.gov | www.sos.texas.gov

**<span style="color:red">For Voter Related Information, please visit:</span>**



*The information contained in this email is intended to provide advice and assistance in election matters per §31.004 of the Texas Election Code. It is not intended to serve as a legal opinion for any matter. Please review the law yourself, and consult with an attorney when your legal rights are involved.*

SOS_000737

# The State of Texas



Elections Division
P.O. Box 12060
Austin, Texas 78711-2060
www.sos.texas.gov

Phone: 512-463-5650
Fax: 512-475-2811
Dial 7-1-1 For Relay Services
(800) 252-VOTE (8683)

**Ruth R. Hughs**
Secretary of State

## ELECTION ADVISORY
### No. 2020-07

**TO:**       County Clerks/Elections Administrators

**FROM:**   Keith Ingram, Director of Elections

**DATE:**    February 11, 2020

**RE:**       Ballot by Mail Reminders

---

The purpose of this advisory is to remind county election officials of certain steps that must be taken with respect to the processing and rejection of mail ballots.

**Timing of Processing Mail Ballots**

Pursuant to Section 87.0241 of the Texas Election Code, the early voting ballot board may determine whether to accept early voting ballots voted by mail at any time after the ballots are delivered to the board. (Sec. 87.0241(a)). The early voting ballot board may begin to count early voting ballots (1) when the polls open on election day; or (2) at the end of the early voting period, in the case of an election conducted by an authority of a county with a population of 100,000 or more or an election conducted jointly with such a county. (Sec. 87.0241(b)).

**Notice of Rejected Ballot**

Section 87.0431 of the Texas Election Code outlines certain requirements for providing a voter with notice of a rejected mail ballot. If the early voting ballot board rejects a voter's ballot, the presiding judge of the early voting ballot board must notify the voter in writing of the reason for the rejection. This notice must be sent to the voter, at the residence address listed on the ballot by mail application, no later than the 10th day after election day. However, **our office recommends mailing notices of rejected ballots to affected voters as soon as possible**. For voters who requested a mail ballot with a Federal Postcard Application (FPCA), and receive their balloting materials via e-mail, the presiding judge shall also provide notice of the rejected ballot to the e-mail address to which the ballot was sent.

In accordance with Section 87.0431, the Secretary of State has prescribed a form for this purpose (Notice of Rejected Ballot, AW5-42). We are issuing a revised version of the Notice of Rejected Ballot along with this advisory. The revised notice includes an additional sentence advising the voter: "If you believe that your mail ballot was rejected in error, please contact your early voting clerk to determine what remedies may be available to you."

SOS_000738

Case 5:19-cv-00963-OLG   Document 84   Filed 07/30/20   Page 219 of 2561

Page 2

**Resolution of Incorrect Determination by Early Voting Ballot Board**

As a reminder, if a county election officer determines that a ballot was incorrectly rejected or accepted by the early voting ballot board before the time set for convening the canvassing authority, the county election officer may petition a district court for injunctive or other relief as the court determines appropriate.  (Sec. 87.127(a)).

In an election ordered by the governor or the county judge, the county election officer must confer with and establish the agreement of the county chair of each political party before petitioning the district court. (Sec. 87.127(b)).

Please contact us at 1-800-252-VOTE (8683) or at elections@sos.texas.gov if you have any questions.

KI:CA

SOS_000739

AW5-42
Prescribed by Secretary of State
Sec. 87.0431, Texas Election Code
2/2020

# NOTICE OF REJECTED BALLOT

This is to serve as notice that your ballot for the _____ Election was rejected by the early voting ballot board and was not counted.  If you believe that your mail ballot was rejected in error, please contact your early voting clerk to determine what remedies may be available to you.

Name of Voter _____

VUID Number_____

Reason for Rejection: (Check As Appropriate)

_____   1)   Certificate on carrier envelope was not properly executed.
_____ You failed to sign your signature or make your mark.
_____ The witness failed to indicate on the envelope that you could not make a mark.
_____ The assistant or witness failed to print their name.
_____ The assistant or witness failed to sign their name.
_____ The residence address of the assistant or witness was not given.

_____   2)   It was determined that the signature on the application for ballot by mail and carrier envelope was not signed by the same person.

_____   3)   Application for ballot by mail did not state a legal ground for voting by mail.

_____   4)   Voter registration records indicated you did not have an effective registration for this election.

_____   5)   Address to which ballot was mailed was not outside the county.  Voting early by mail due to expected absence from the county requires balloting materials be mailed to an address outside the county.

_____   6)   The residence address on the statement of residence is not located in the political subdivision conducting the election.

_____   7)   The mailing address on the application for ballot by mail did not match your voter registration address nor did the mailing address match any addresses provided on your statement of residence.  Since you did not indicate on your application for a ballot by mail that you were having your ballot mailed to a hospital, retirement center, long term care facility, nursing home, jail, or a relative, your ballot was rejected.

_____   8)   The statement of residence was not included in the carrier envelope.

_____   9)   No identification was included with your mail ballot.

_____   10)   Other:_____

_____

Signature of Early Voting Ballot Board Judge


_____

Date

SOS_000740

AW5-42
Requerido por la Secretaría de Estado
Sección 87.0431, Código Electoral de Texas
2/2020

## AVISO DE BOLETA RECHAZADA

Esto sirve como aviso de que su boleta para la Elección _____ fue rechazada por la Junta de Votación Anticipada y no fue contada. Si cree que su boleta por correo fue rechazada por error, comuníquese con su secretario de votación anticipada para determinar qué remedios pueden estar disponibles para usted.

Nombre del votante _____

VUID (número único de identificación de votante) _____

La razón del rechazo fue (a continuación indique las razones):

_____  1)   La constancia que aparece en el sobre de envío no se ejecutó en forma apropiada.
          _____ Le falta su firma o marca.
          _____ El testigo no anotó en el sobre que Ud. no podía hacer su marca.
          _____ El asistente o testigo no imprimió su nombre.
          _____ El asistente o testigo no firmó su nombre.
          _____ No se dio la dirección de residencia del asistente o testigo.

_____  2)   Se determinó que la firma en la solicitud de boleta postal y el sobre de envío no estaba firmada por la misma persona.

_____  3)   La solicitud de boleta postal no estableció un fundamento legal para votar por correo.

_____  4)   Las actas del registro electoral indican que en la fecha en que celebraron estas elecciones, usted no estaba inscrito como votante.

_____  5)   La dirección a la cual se envió la boleta no está ubicada fuera de este condado. Votar por anticipado por correo debido a la ausencia esperada del condado requiere que los materiales de votación sean enviados por correo a una dirección fuera del condado.

_____  6)   La dirección de residencia indicada en la declaración de residencia no se encuentra en la subdivisión política que lleva a cabo la elección.

_____  7)   La dirección postal indicada en la solicitud de boleta postal no coincidía con su dirección de registro de votante ni con la dirección postal incluida en su declaración de residencia. Dado que no indicó en su solicitud de boleta postal que estaba teniendo su boleta enviada por correo a un hospital, centro de jubilación, centro de cuidado a largo plazo, hogar de ancianos, cárcel o un pariente, su boleta fue rechazada.

_____  8)   La declaración de residencia no vino incluida en el sobre de envío.

_____  9)   No incluyó ninguna identificación con su boleta por correo.

_____  10)   Otra: _____

_____
Firma del Juez de la Junta de Votación Anticipada

_____
Fecha

SOS_000741

RICHARDSON: BRIAN KEITH INGRAM - 30(B)(6)

Page 1

```
 1              UNITED STATES DISTRICT COURT
                WESTERN DISTRICT OF TEXAS
 2                 SAN ANTONIO DIVISION

 3   DR. GEORGE RICHARDSON;         )
     ROSALIE WEISFELD; AUSTIN JUSTICE )
 4   COALITION; COALITION OF TEXANS  )
     WITH DISABILITIES; MOVE TEXAS   )
 5   CIVIC FUND; LEAGUE OF WOMEN     )
     VOTERS OF TEXAS; and AMERICAN GI )
 6   FORUM OF TEXAS, INC.,          )
                                     )
 7          Plaintiffs,            )
                                     )Civil Case No.
 8   v.                            )5:19-cv-00963-OLG
                                     )
 9   TEXAS SECRETARY OF STATE; TRUDY )
     HANCOCK, in her official        )
10   capacity as BRAZOS COUNTY       )
     ELECTIONS ADMINISTRATOR; and    )
11   PERLA LARA, in her official     )
     capacity as CITY OF McALLEN,    )
12   TEXAS, SECRETARY,               )
                                     )
13          Defendants.            )
          ****************************************
14       REMOTE VIDEOTAPED 30(b)(6) DEPOSITION OF
                  BRIAN KEITH INGRAM
15                   May 11, 2020
          ****************************************
16       REMOTE VIDEOTAPED 30(b)(6) DEPOSITION OF

17     BRIAN KEITH INGRAM, produced as a witness at the

18     instance of the Plaintiffs, and duly sworn, was

19     taken in the above-styled and numbered cause on

20     May 11, 2020, from 1:37 p.m. to 4:17 p.m.,

21     remotely before Rebecca A. Graziano, CSR, RPR,

22     CRR, in and for the State of Texas, reported by

23     machine shorthand, pursuant to the Federal Rules

24     of Civil Procedure and the provisions stated on

25     the record.
```

**CERTIFIED TRANSCRIPT**

RICHARDSON: BRIAN KEITH INGRAM - 30(B)(6)

Page 2

```
 1              A P P E A R A N C E S

 2

 3    REPRESENTING THE PLAINTIFFS:

 4    Mr. Ryan Cox (via videoconference)
      Mr. Hani Mirza (via videoconference)
 5    Mr. Zachary D. Dolling (via videoconference)
      TEXAS CIVIL RIGHTS PROJECT
 6    1405 Montopolis Drive
      Austin, Texas  78741
 7    (512) 474-5073
      ryan@texascivilrightsproject.org
 8    hani@texascivilrightsproject.org
      zachary@texascivilrightsproject.org
 9
            and
10
      Mr. Samuel Kalar (via videoconference)
11    Ms. Joanna Suriani (via videoconference)
      WILLKIE FARR & GALLAGHER, LLP
12    787 Seventh Avenue
      New York City, New York  10019
13    (212) 728-8000
      skalar@willkie.com
14    jsuriani@willkie.com

15
      REPRESENTING THE DEFENDANT, TEXAS SECRETARY OF
16    STATE:

17    Ms. Anna Mackin (via videoconference)
      OFFICE OF THE ATTORNEY GENERAL
18    300 West 15th Street
      Austin, Texas  78701
19    (512) 463-2100
      anna.mackin@texasattorneygeneral.gov
20
      REPRESENTING THE DEFENDANT, TRUDY HANCOCK, in her
21    official capacity as BRAZOS COUNTY ELECTIONS
      ADMINISTRATOR:
22
      Mr. J. Eric Magee (via videoconference)
23    ALLISON, BASS & MAGEE, LLP
      402 West 12th Street
24    Austin, Texas  78701
      (512) 482-0701
25    e.magee@allison-bass.com
```



RICHARDSON: BRIAN KEITH INGRAM - 30(B)(6)

1                    A P P E A R A N C E S

2

3    REPRESENTING THE DEFENDANT, PERLA LARA, in her
     official capacity as CITY OF McALLEN, TEXAS,
4    SECRETARY:

5      Mr. Isaac J. Tawil (via videoconference)
       Mr. Austin W. Stevenson (via videoconference)
6      CITY OF McALLEN CITY ATTORNEY'S OFFICE
       1300 Houston Avenue, Second Floor
7      McAllen, Texas  78501
       (956) 681-3111
8      itawil@mcallen.net
       astevenson@mcallen.net

9

10   VIDEOCONFERENCE TECHNICIAN:

11     Ms. Maygun Flanagan

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
                                              Page 4
 1                      INDEX
                                              PAGE
 2

 3    EXAMINATION BY MR. MIRZA.......................... 8

 4

 5                     EXHIBITS

 6    NUMBER          DESCRIPTION                    PAGE

 7    Exhibit 1       Notice of Deposition................. 10

 8    Exhibit 2       Email Chain; Bates SOS_001316

 9                    through 001318...................... 40

10    Exhibit 3       Survey Responses; Bates SOS_001336... 41

11    Exhibit 4       Survey Responses; Bates SOS_001392... 42

12    Exhibit 5       Survey Responses; Bates SOS_001408... 44

13    Exhibit 6       Survey Responses; Bates SOS_001411... 46

14    Exhibit 7       Inspector Report for Early Voting

15                    Ballot Board Meeting; Bates

16                    SOS_001935 through 001937............ 47

17    Exhibit 8       Inspector Report for Early Voting

18                    Ballot Board Meeting;

19                    Bates SOS_004398..................... 50

20    Exhibit 9       Election Advisory; Bates SOS_025088

21                    through 025095...................... 56

22    Exhibit 10      Email Chain; Bates SOS_034540

23                    through 034541...................... 59

24

25
```

RICHARDSON: BRIAN KEITH INGRAM - 30(B)(6)

Page 5

```
 1                           EXHIBITS
 2    NUMBER          DESCRIPTION                        PAGE
 3    Exhibit 11    Email Chain with Attachment;
 4                  Bates SOS_034653 through 034662
 5                  **CONFIDENTIAL DOCUMENT**........... 62
 6    Exhibit 12    Operating Budget for Fiscal Year
 7                  2020 (no Bates range)............... 71
 8    Exhibit 13    Training Manual for Voting History
 9                  in TEAM; Bates SOS_035102 through
10                  035124 - ATTORNEYS' EYES ONLY....... 81
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

**hg**

```
 1                 PROCEEDINGS
 2          (On the record at 1:37 p.m.)
 3          THE VIDEOGRAPHER:  We are going on
 4   the video record.  Today is May 11th,
 5   2020.  The time is 1:37 p.m.
 6          The civil action number is
 7   5:19-cv-00963-OLG in the matter of
 8   Dr. George Richardson, et al., versus
 9   Texas Secretary of State.  The deponent is
10   Texas Secretary of State 30(b)(6), Keith
11   Ingram.  The video deposition is requested
12   by the plaintiffs' counsel, Texas Civil
13   Rights Project, Austin.
14          My name is Maygun Flanagan.  I'm
15   the videographer.  The court reporter
16   today is Becky Graziano.  We are both
17   representing HG Litigation Services.
18          Would counsel like to state their
19   appearances on the record or transcript?
20          MR. MIRZA:  Hello.  Can you hear
21   me?
22          THE VIDEOGRAPHER:  Yes.
23          MR. MIRZA:  Oh, you can hear me?
24   Okay.
25          I'd like to -- we can state it on
```

hg

RICHARDSON: BRIAN KEITH INGRAM - 30(B)(6)

```
 1    the record.  My name is Hani Mirza.  I'm
 2    with the Texas Civil Rights Project, and
 3    I'm representing plaintiffs.
 4          MR. COX:  Ryan Cox, also with the
 5    Texas Civil Rights Project on behalf of
 6    the plaintiffs.
 7          MS. MACKIN:  Anna Mackin with the
 8    Texas Office of the Attorney General,
 9    representing the defendant Texas Secretary
10    of State, in her official capacity.
11          MR. MAGEE:  This is Eric Magee.
12    I'm here on behalf of defendant Trudy
13    Hancock, the Brazos County
14    electric -- elections administrator, in
15    her official capacity.
16          MR. TAWIL:  Isaac Tawil on behalf
17    of Perla Lara, City of McAllen city
18    secretary.
19          MR. KALAR:  On behalf of
20    plaintiffs, Samuel Kalar of the law firm
21    Willkie Farr & Gallagher.
22          MS. SURIANI:  And Joanna Suriani
23    from the law firm Willkie Farr & Gallagher
24    on behalf of plaintiff.
25          THE VIDEOGRAPHER:  The deponent may
```

**hg**

RICHARDSON: BRIAN KEITH INGRAM - 30(B)(6)

Page 8

```
 1        now be sworn in.
 2             (Witness duly sworn.)
 3                  BRIAN KEITH INGRAM,
 4    being first duly sworn, testified as follows:
 5                      EXAMINATION
 6   BY MR. MIRZA:
 7    Q      Okay.  Welcome back, Mr. Ingram.  I'm
 8   going -- can you please state your full name for
 9   the record?
10    A      Brian Keith Ingram.
11    Q      And do you remember the general guidelines
12   I spoke about for depositions this morning?
13    A      Yes.
14    Q      Are your responses to those
15   questions -- to the questions related to those
16   guidelines the same?
17    A      Yes.
18    Q      And you are the director of elections,
19   correct, for the Secretary of State?
20    A      I am.
21    Q      Okay.  And what did you do to prepare for
22   this deposition?
23    A      Well, I reviewed some documents and I met
24   with my attorneys.
25    Q      Okay.  Did you review -- did you review
```

hg

RICHARDSON: BRIAN KEITH INGRAM - 30(B)(6)

Page 9

1  the same documents for this deposition as you did

2  for the deposition this morning?

3  A     Yes.

4  Q     Did you review any additional documents?

5  A     Yes.

6  Q     And what are those documents?

7  A     I've also -- this morning I talked to my

8  voter registration manager, and on the lunch

9  break, I talked to my legal director.

10  Q     And they sent you documents?

11  A     No.  But my legal director did tell me

12  that Form 522 -- 5-22b is the one I was looking

13  for.

14  Q     And can you explain to me what you mean by

15  that?

16  A     The instructions that go with the mail --

17  mail-in ballots, the instruction and cert page.

18  Q     Okay.  Okay.  I wanted to add one

19  instruction.  If you do decide to go on the

20  internet or your computer to review any document,

21  would you let me know before you begin doing that?

22  A     Yes.

23  Q     Okay.  And then when you are doing that,

24  will you provide me the name of the documents?

25  A     Sure.

RICHARDSON: BRIAN KEITH INGRAM - 30(B)(6)

Page 10

1    Q      Okay.  Okay.  Do you understand that you

2    have been designated by the Secretary of State to

3    testify on certain topics in this deposition?

4    A      Yes.

5    Q      Okay.  I'm going to provide Exhibit 1 as a

6    link right now.

7               Let me know when you've been able to

8    access that link.

9    A      I've got it.

10   Q      Okay.  Does this document look familiar to

11   you?

12   A      It does.

13   Q      I'm going to mark this document as

14   Exhibit 1.  It's the "Notice of Deposition of

15   Defendant Texas Secretary of State Pursuant to

16   Federal Rule of Civil Procedure 30(b)(6) by

17   Plaintiffs."

18              (Exhibit 1 marked.)

19   BY MR. MIRZA:

20   Q      What -- can you explain to me generally

21   what this document is?

22   A      The notice of the deposition of the

23   corporate agent for the Secretary of State.

24   Q      All right.  Can you jump to

25   Pages -- Page 7 and then review Pages 7 to 9?

hg

RICHARDSON: BRIAN KEITH INGRAM - 30(B)(6)

1    A       Yes.

2    Q       Okay.  Are you prepared to testify about

3    the topics listed in this document?

4    A       I believe so.

5    Q       Are there any topics on which you are not

6    prepared to testify?

7    A       Not that I know of.

8    Q       Okay.  And do you understand that you are

9    testifying in this deposition -- one second.

10           And you became educated on these

11   topics prior to this deposition; correct?

12   A       Yes.

13   Q       Can you think of any reason why you can't

14   speak on these -- speak to these topics as a

15   representative of SOS?

16   A       I think I'm prepared.  You know, I don't

17   know what questions you're going to ask, so I

18   don't know with 100 percent certainty, but I

19   believe that I've prepared myself.

20   Q       Okay.  Okay.

21           Okay.  So this morning at your other

22   deposition, we spoke about the duties of the

23   Secretary of State related to mail-in ballots;

24   correct?

25   A       We talked about what with the Secretary of

RICHARDSON: BRIAN KEITH INGRAM - 30(B)(6)

Page 12

```
 1    State regarding mail-in ballots?
 2    Q       The responsibilities of the Secretary of
 3    State.
 4    A       We did.
 5    Q       Okay.  Can you generally list what those
 6    responsibilities are?
 7    A       So Debbie is the chief election officer
 8    for the State of Texas, and she has the
 9    responsibility to obtain and maintain uniformity
10    in the interpretation, application, and operation
11    of the election code and election laws outside of
12    the election code.  And we do that by assisting
13    and advising election officials as they conduct
14    elections.
15    Q       Okay.
16            THE REPORTER:  I'm sorry.  You said
17        a name at the beginning, and it cut out.
18        What was the name of that person you just
19        described?
20            THE WITNESS:  The Secretary of
21        State?
22            THE REPORTER:  Oh, okay.  That was
23        it.  Thank you.
24    BY MR. MIRZA:
25    Q       And the Secretary of State also prescribes
```

RICHARDSON: BRIAN KEITH INGRAM - 30(B)(6)

Page 13

```
 1   forms related to mail-in ballots; correct?
 2   A     That's right.
 3   Q     And provides instructions for voters who
 4   wish to vote by mail on their website; correct?
 5   A     Yes.
 6   Q     And then -- and then the Secretary of
 7   State also provides guidance and training for
 8   local election officials on how to -- on the
 9   mail-in ballot process; correct?
10   A     We do.
11   Q     Okay.  Okay.  When it is not possible for
12   a local authority to send certain mail-in ballots
13   to voters by the required deadline, is the
14   Secretary of State required to monitor the
15   situation and advise the clerk?
16                MS. MACKIN:  Objection; form.
17                THE WITNESS:  Yeah, I don't
18        understand that question.
19   BY MR. MIRZA:
20   Q     Okay.  So under this scenario when it is
21   not possible for local authorities to send certain
22   mail-in ballots to voters by their required
23   deadline --
24   A     It is not possible for a local election
25   official to send out a blank ballot.  Is that the
```

RICHARDSON: BRIAN KEITH INGRAM - 30(B)(6)

Page 14

1   question?

2   **Q       Yeah.  If it's not possible to send, like,**

3   **the ballot materials by the required deadline to**

4   **voters who have requested a mail-in ballot.**

5   **           Under that --**

6   A       What about that?

7   **Q       Yeah.  Under that scenario, do you -- does**

8   **the SOS have any obligations?**

9   A       We are not an enforcement agency.  We're

10  not an oversight agency.  We're an

11  assist-and-advise agency.  So if a county calls

12  and they've got some sort of problem with mailing

13  out their blank ballots, we will talk them through

14  the possible scenarios of, you know, using

15  emergency ballots or alternative procedures to get

16  that accomplished for them.  But we assist and

17  advise and we answer questions.  We don't oversee.

18  **Q       Okay.  And is the Secretary of State, in**

19  **that situation, required to provide advice to the**

20  **local election official?**

21              MS. MACKIN:  Objection; form.

22              THE WITNESS:  If they ask, we --

23      it's our job to assist and advise.

24  BY MR. MIRZA:

25  **Q       Okay.  For elections conducted by an**

hg

RICHARDSON: BRIAN KEITH INGRAM - 30(B)(6)

Page 15

```
 1   authority of a county with a population of over
 2   100,000 -- of 100,000 or more were conducted
 3   jointly with such a county, the SOS is supposed to
 4   prescribe any procedures necessary for
 5   implementing after the early voting -- after early
 6   voting when the ballot board can determine whether
 7   to accept a mail-in ballot?
 8                 MS. MACKIN:  Objection; form.
 9                 THE WITNESS:  I don't -- I don't
10         understand the question.
11   BY MR. MIRZA:
12    Q     Are there specific procedures that SOS is
13   required to prescribe when, after the early voting
14   by personal appearance ends, a ballot board can
15   determine whether to accept a mail-in ballot in an
16   election conducted by a county with 100,000 people
17   or more?
18                 MS. MACKIN:  Objection; form.
19                 THE WITNESS:  I'm still -- I'm not
20         understanding your question.  I don't have
21         any idea what you're talking about.
22   BY MR. MIRZA:
23    Q     Okay.  Okay.  I can come back to that,
24   then.
25                 Okay.  So you mentioned that the SOS
```

**hg**

RICHARDSON: BRIAN KEITH INGRAM - 30(B)(6)

Page 16

```
 1   does not oversee local election officials; they
 2   only advise.  So the Texas Election Code doesn't
 3   require the SOS -- what you're saying is the Texas
 4   Election Code -- and let me know if I'm
 5   wrong -- the Texas Election Code does not require
 6   the SOS to implement any oversight measures over
 7   local election officials?
 8    A      No.
 9           MS. MACKIN:  Objection; form.
10   BY MR. MIRZA:
11    Q      I'm sorry.  I missed the answer.
12    A      No.
13    Q      Okay.
14    A      We have a little bit of oversight over
15   compliance with voter registration activities.
16   It's not the topic of today's conversation, but
17   18.064 allows us to withhold their Chapter 19
18   money for substantial noncompliance with voter
19   registration procedures.  That's about the only
20   oversight we've gotten.
21    Q      Okay.  And can you generally list the
22   trainings that are provided to local election
23   officials by the Secretary of State?
24           MS. MACKIN:  And I'm just going to
25       object to the extent that this goes
```

RICHARDSON: BRIAN KEITH INGRAM - 30(B)(6)

Page 17

1      outside the scope of the 30(b)(6) notice.

2           But as it relates to the

3      allegations in this case and the subject

4      matter that we've been talking about

5      today, you can answer.

6  BY MR. MIRZA:

7   Q      And specifically -- I'll kind of narrow

8  the scope of that question.

9           I'm specifically talking about related

10 to mail-in ballot -- the mail-in ballot process.

11  A      Right.  We do a seminar, an in-person

12 seminar in the summer, that is three days long

13 that's for county election officials, and we

14 generally will have a presentation on mail ballots

15 and the early voting ballot board.  At that

16 seminar, we also will combine that with federal

17 postcard application presentation, so usually

18 those two are combined into one.

19           We also have a seminar every

20 off-numbered year from political chairs, the

21 county political chairs of the Republican and the

22 Democratic party.  We will talk about -- you know,

23 briefly, not as extensively -- ballot board

24 procedures with them.  And then in city, school,

25 and other political subdivisions seminar is a

RICHARDSON: BRIAN KEITH INGRAM - 30(B)(6)

Page 18

1   seminar that we do in December.  We will include a

2   talk on ballot board and applications and early

3   voting by mail, including the FPCA talk as well.

4   **Q       What kind of --**

5   A       I don't know if we do -- I don't know if

6   we do the talk every seminar, but most of them.

7   **Q       Okay.  And by "every seminar," you're**

8   **talking about the -- which specific seminar are**

9   **you talking about there?**

10  A       I'm talking about at every county election

11  official seminar every year or every CSO seminar

12  every year.  You know, we're up to 32 or so CSO

13  seminars, we're up to 36 or 37 CEO seminars; and I

14  don't know if we've had a ballot-by-mail

15  presentation at every single one of those, but

16  most of them.

17  **Q       Okay.  And then for -- and you're done**

18  **answering that question?  I don't want to -- it's**

19  **kind of choppy, so I can't catch it.**

20  A       I'm done.

21  **Q       Okay.  And does the Secretary of State**

22  **monitor the -- how local elections officials**

23  **conduct the mail-in ballot process?**

24  A       We do not monitor.  We do not monitor

25  counties.  We do send inspectors, and they can

RICHARDSON: BRIAN KEITH INGRAM - 30(B)(6)

Page 19

1  observe -- if they are at the ballot board, they

2  can observe the actions of the early voting ballot

3  board, but we don't monitor counties.

4  **Q       Okay.  And are you -- okay.  So you send**

5  **inspectors, and do they -- after they've made**

6  **their observations, who are they required to send**

7  **those observations to?**

8  A       They submit a report to us, and we

9  submit -- we send that report to the counties, or

10 if it's an entity holding the election, to the

11 city secretary or school board secretary or water

12 district president, or whoever the early voting

13 clerk is.

14 **Q       And besides sending that information on to**

15 **the local election official, do you do anything**

16 **else with that information?**

17 A       Nope.

18 **Q       Do you collect information on the number**

19 **of rejected ballots due to the signature -- a**

20 **determination by the early voting ballot board**

21 **that the signature is not that of the voter?**

22 A       We don't have the reason for rejection,

23 no.

24 **Q       No, I'm asking if you collect the number**

25 **of --**

**hg**

Page 20

1   A     I said -- I said we don't have the reason

2  for rejection.

**3   Q     Oh, okay.  Okay.  So then how is -- are**

**4  the determinations of mail-in ballots collected?**

5            MS. MACKIN:  Objection; form.

6            THE WITNESS:  I don't know what you

7     mean.

8  BY MR. MIRZA:

**9   Q     Do you collect the number of -- from local**

**10  election officials, do you collect the number of**

**11  mail-in ballots that were rejected in an election?**

12   A     Not -- not like that, we don't.  We

13  collect information regarding the voters and their

14  vote history so -- and whether or not their ballot

15  by mail was accepted or rejected.  So that's part

16  of the voter's history.  It's not a -- we don't

17  collect number of rejected ballots as a thing.

**18   Q     Okay.  Are you familiar with the Election**

**19  Administration and Voting Survey?**

20   A     The EAVS?

**21   Q     Yes.**

22   A     Yes, I'm familiar with the EAVS survey.

**23   Q     What are SOS's responsibilities with**

**24  regard to EAVS?**

25   A     To collect the data and transmit it to the

**hg**

RICHARDSON: BRIAN KEITH INGRAM - 30(B)(6)

Page 21

1   Election Assistance Commission.

2   **Q       And do you -- what data is collected**

3   **with -- for the EAVS survey with regard to mail-in**

4   **ballots?**

5   A      I don't know.  It's -- they've got a

6   section for FPCAs, federal postcard application

7   mail ballots, and for mail ballots, and the

8   counties fill those out.

9   **Q       So do -- the counties, when they're**

10  **filling those out, do they send that information**

11  **to you and then you put it together and send it to**

12  **the EAC, or is there another process?**

13  A      No, that's -- that's basically the

14  process.  But this last time they used an online

15  form that the counties could fill out, so it went

16  directly into the system.  So that was the first

17  time they'd used the online form without us just

18  sending Excel spreadsheets to the counties and

19  collecting the Excels back.

20  **Q       Okay.  And do all counties respond to the**

21  **EAVS survey?**

22  A      I don't know.  I'd have to go look and see

23  if we got answers from every county.  They're

24  supposed to.

25  **Q       Okay.  And what happens if a county fails**

RICHARDSON: BRIAN KEITH INGRAM - 30(B)(6)

Page 22

1   to respond to the EAVS survey?

2   A      We call them.

3   Q      And if they -- if they choose not to

4   respond, is there any -- any action taken against

5   them by either -- by the state?

6   A      No.  We're not an enforcement agency.

7   We're an assist-and-advise agency.

8   Q      And then the -- a certain -- certain types

9   of ballots that are rejected -- mail-in ballots

10  that are rejected are required to be sent by the

11  local election officials to the Attorney General;

12  correct?

13  A      That is correct.

14  Q      Can you list the types of mail-in

15  ballots -- mail-in ballot rejections that are

16  supposed to be sent?

17  A      I cannot without looking at the statute.

18  I know that they're supposed to send signature

19  mismatch rejections and they're supposed to send

20  persons that are rejected because they were

21  deceased when they applied.

22  Q      Okay.  Is SOS involved in any way with

23  that process?

24  A      We are not.

25  Q      So those rejections go directly to the AG;

RICHARDSON: BRIAN KEITH INGRAM - 30(B)(6)

Page 23

1    they don't go to the SOS who sends them to the AG

2    or anything like that?

3    A       That's correct.

4    Q       Okay.  Okay.  So in the previous

5    deposition, you mentioned that you are required to

6    report to the deputy secretary of state; is that

7    correct?

8    A       That's correct.

9    Q       And you also mentioned a couple of other

10   people.  Can you restate those people?

11   A       The secretary and ultimately the governor.

12   Q       Okay.  And then there are -- and then

13   there are people in your office who directly

14   report to you; correct?

15   A       That is correct.

16   Q       And can you list those people again?

17   A       Sure.  Dan Glotzer, Kristi Hart, and

18   Christina Adkins are my direct reports.

19   Q       Okay.  And can you list their titles?

20   A       Christina Adkins is the legal director,

21   and Dan Glotzer is the manager of election funds

22   management, and Kristi Hart is the

23   administrator -- the manager of election

24   administration and voter registration.

25   Q       Okay.  So how many people are in the legal

RICHARDSON: BRIAN KEITH INGRAM - 30(B)(6)

1   department?

2    A     In the legal department, we've got

3   Christina, six lawyers, and a paralegal.  So what

4   is that?  Eight.

5    **Q     Okay.  And they all report directly to**

6   **Christina?**

7    A     They do.

8    **Q     Okay.  And then for -- can you list the**

9   **number of people in all the other departments**

10  **and --**

11   A     Oh, I'm sorry.  We do have two more that

12  are in the legal department that are new, so I

13  forgot them.

14          We've also got our election security

15  trainers, so there's two more.  So that's ten in

16  the legal division, legal section.

17   **Q     Okay.  And can you give me the number of**

18  **people who directly respond to each other director**

19  **that you mentioned.**

20          **So you mentioned multiple departments;**

21  **correct?  So the legal department --**

22   A     There's --

23   **Q     Go ahead.**

24   A     Yeah.  Election funds management, there's

25  Dan Glotzer, and he has two people that work for

**hg**

RICHARDSON: BRIAN KEITH INGRAM - 30(B)(6)

Page 25

1   him.

2     **Q      Okay.**

3     A      Kristi Hart has got election

4   administration that's got a team lead of Beva

5   Kellison, and then working with Beva are -- three,

6   four, five -- maybe eight work with Beva in

7   election administration.  And then we've got Lily

8   Eder, who's the voter registration lead, and she's

9   got -- if all the positions were filled, one of

10  them is unfilled, and one of the election

11  administration positions is unfilled as well.  But

12  if all of them were filled...

13    **Q      Okay.  Is there anybody we're missing that**

14  **is -- works under -- in your -- I guess the**

15  **elections department?**

16    A      No.  If I did my numbers right for each of

17  those, we should -- you should get a total of 30.

18  We've got 30 that work in the elections division,

19  including myself, and 28 of those positions are

20  filled.

21    **Q      Okay.  And how many of those people**

22  **directly communicate with local elections**

23  **officials as part of their job?**

24    A      I would say all of them.

25    **Q      Okay.**

**hg**

RICHARDSON: BRIAN KEITH INGRAM - 30(B)(6)

Page 26

1    A       And -- yeah.  For one reason or another,
2    they would all have occasion to speak to election
3    officials.
4    Q       Okay.  So you mentioned that the Secretary
5    of State's role with regard to elections is almost
6    entirely advisory, so the Secretary of State does
7    not provide any remedial -- or take any remedial
8    action against local elections authorities; right?
9                MS. MACKIN:  Objection; form.
10               THE WITNESS:  We do not.
11               But like I mentioned this morning,
12          the one exception to that is if an
13          election official is abusing a voter's
14          rights, we've got the ability to ask the
15          Attorney General to intervene under 31.005
16          of the election code.
17   BY MR. MIRZA:
18   Q       And how many times in the past has the
19   Secretary of State used that authority?
20   A       The 31.005 authority?
21   Q       Yeah.
22   A       We used once in 2012.  We didn't actually
23   have to get the Attorney General involved, but we
24   threatened it.  And we've thought about it -- no,
25   no, we also threatened in 2012 with the Harris

RICHARDSON: BRIAN KEITH INGRAM - 30(B)(6)

```
 1   County registrar.
 2            THE REPORTER:  I'm sorry.  You're
 3        going to have to -- you're going to have
 4        to repeat that answer.  It was -- there
 5        was some interference there.
 6            THE WITNESS:  We also made a threat
 7        to the Harris County voter registrar in
 8        2012.
 9   BY MR. MIRZA:
10   Q     Okay.  What -- what local election
11   official did the first use of the authority
12   target?
13   A     There was a school district that was
14   having a consolidation election with another
15   school district, and they wanted to have a meeting
16   to cancel that election after early voting had
17   begun.
18   Q     Okay.  Do you remember the name of the
19   school districts?
20   A     Novice ISD.
21   Q     And what school district was it trying to
22   consolidate with?
23   A     Coleman Independent School District.
24   Q     Okay.  And the result of that issue was
25   that you didn't need to ultimately seek the AG's
```

hg

RICHARDSON: BRIAN KEITH INGRAM - 30(B)(6)

1    involvement?

2    A      That's right.

3    Q      Okay.  And why was that?

4    A      Because they didn't have their meeting to

5    cancel the election once early voting had begun.

6    Q      Okay.  And then what happened with the

7    Harris County registrar issue?

8    A      Now that I think about it, that wasn't a

9    31.005 that we threatened with him.  That was an

10   18.064, noncompliance sanction for voter

11   registration.

12   Q      And is that one of the -- and so can you

13   explain that further, what happened?

14   A      He -- he was a lame duck at that point.

15   He had lost the primary election, and he refused

16   to send any notices of examination to strong-match

17   deceased persons from the Social Security

18   Administration's Death Master File list.

19   Q      Okay.  And what was the result of that

20   issue?

21   A      He sent the notices of examination.

22   Q      Okay.  And you just said "he sent the

23   notices of examination"?  Is that what I --

24   A      That's right.

25   Q      Does the Secretary of State have any



RICHARDSON: BRIAN KEITH INGRAM - 30(B)(6)

Page 29

1      rulemaking authority?

2      A      We do.

3      Q      Can you explain that?

4      A      Well, we've got -- we're a state agency

5      and we follow the Administrative Procedures Act,

6      and we've got the ability to make rules.

7      Q      And how does the rulemaking process work

8      at the Secretary of State?

9      A      Well, we draft a rule, and we -- or we

10     draft an amendment to an existing rule, and we

11     post it in the "Texas Register" for comment.  And

12     after the comment period, we will either adopt or

13     not adopt the rule or amended rule.

14     Q      Is -- does the Secretary of State

15     designate -- I guess I'll say this differently.

16             The Secretary of State doesn't

17     designate anyone in their office to be the contact

18     person with regard to mail-in ballots; correct?

19     For local election officials.

20                 MS. MACKIN:  Objection; form.

21                 THE WITNESS:  No, we do not have

22         such a position.

23     BY MR. MIRZA:

24     Q      Sorry.  I didn't catch the answer.

25     A      No, we do not have such a position.

RICHARDSON: BRIAN KEITH INGRAM - 30(B)(6)

Page 30

1    Q       Okay.  So does the Secretary of State
2    use -- how does the Secretary of State track the
3    results of mail-in ballots, whether they were
4    counted -- whether they were rejected or counted?
5    A       Like I said before, we don't track that
6    information as such.  We collect voter history.
7    The voter history will include whether or not they
8    requested a mail ballot and whether or not it was
9    accepted or rejected.
10   Q       And how is that -- through what system is
11   that information collected?
12   A       It's in -- it's part of the voter
13   registration database.  It's -- it goes with that
14   voter and their voter registration, how the -- how
15   they've used that voter registration in a
16   particular election.
17   Q       Okay.  And is any of the data related to
18   whether a ballot was rejected -- a mail-in ballot
19   was rejected or counted stored in TEAM -- the TEAM
20   system?
21   A       That's what I just said.
22   Q       So what you're describing, that system is
23   the TEAM system; correct?
24   A       It is.
25   Q       Okay.  Does the TEAM system record

RICHARDSON: BRIAN KEITH INGRAM - 30(B)(6)

Page 31

1   anything else related to mail-in ballots, or

2   collect anything else?

3               MS. MACKIN:  Objection; form.

4               THE WITNESS:  No.

5   BY MR. MIRZA:

6   Q       Okay.  What is generally the TEAM system's

7   role?

8   A       Well, it began life as the voter

9   registration database.  It -- we added some

10  modules on last year for election management and

11  candidate management and election night reporting

12  that were contemplated in the original proposal

13  but which we'd never added until last year.

14  Q       And TEAM can generate reports; correct?

15  A       TEAM can generate reports, yes.

16  Q       And for how long has the state been using

17  TEAM?

18  A       This version, the redeveloped TEAM was

19  rolled out in 2015.  From May to September of 2015

20  was the rollout.

21  Q       And the information stored in TEAM, how

22  far does it go back?

23  A       I don't know what that means.

24  Q       So for an individual voter, how far does

25  their information, like, stored on TEAM go back?

RICHARDSON: BRIAN KEITH INGRAM - 30(B)(6)

Page 32

1    A       It depends on the voter.

2    **Q       What are the -- what are the oldest**

3    **records that are currently stored in TEAM?**

4    A       I don't know what your question is asking.

5    What -- I don't know what you mean by "oldest

6    record."  When it was entered or the

7    information --

8    **Q       No.**

9    A       -- that pertains to that record, what

10   it's -- what it purports to represent?  I don't

11   know what -- I don't know what you mean.

12   **Q       I'm talking about a voter information,**

13   **how -- okay.  Let me -- let me rephrase the**

14   **question.**

15               **So would the TEAM system have voter**

16   **information -- could the TEAM system include voter**

17   **information of a voter from -- the voter**

18   **information from, like, the 1950s?**

19   A       I would -- I would say "no" on that.

20   **Q       And why is that?**

21   A       Because we didn't have a computer system

22   back then.  The previous version of TEAM started

23   in 2007.  Before that, they had the TVRS system.

24   And both of those were, you know, databases, and

25   so that some data could have been transmitted from

**hg**

RICHARDSON: BRIAN KEITH INGRAM - 30(B)(6)

Page 33

1  TVRS to original TEAM.  Some of the TVRS data

2  could be transmitted to TEAM, redeveloped TEAM.

3          So we could have data going back to

4  the old TVRS system, but if you're looking for

5  voter history, specifically if you're looking for

6  ballot-by-mail history, then you need to know that

7  the law changed in 2011 to require counties to

8  submit vote history to us, and the law changed

9  again, I believe in 2017, to require that vote

10 history to be broken out by early in person or

11 early by mail.

12         So counties could have submitted vote

13 history prior to 2012, and they could have

14 submitted detailed vote history broken down by

15 early voting by mail or in person before 2017, but

16 they weren't required to.  So they won't have

17 complete -- have complete data for every voter and

18 their vote history before those things were

19 required.

20         MS. MACKIN:  And, Hani, I'd just

21     like to note the topics, I think, in the

22     depo notice all talked about January 1st,

23     2012, to the present.

24         MR. MIRZA:  Uh-huh.

25         MS. MACKIN:  So, you know, I'm

RICHARDSON: BRIAN KEITH INGRAM - 30(B)(6)

Page 34

```
 1        comfortable with you exploring this a
 2        little bit, but if we can kind of keep it
 3        focused to that, because that's what Keith
 4        has been prepped on, we would appreciate
 5        that.
 6               MR. MIRZA:  Yeah.  That works.  And
 7        that was my last question about that
 8        specific issue.
 9   BY MR. MIRZA:
10   Q     And are there any procedures in place
11   for -- SOS procedures in place for determining
12   whether to modify the TEAM system?
13               MS. MACKIN:  Objection --
14   BY MR. MIRZA:
15   Q     So about --
16               MR. MIRZA:  Oh, go ahead.  Sorry.
17               MS. MACKIN:  I'm going to object to
18        the form.
19               But, Keith, you can answer to the
20        extent you can.
21               THE WITNESS:  I don't know what you
22        mean, "modify the TEAM system."
23   BY MR. MIRZA:
24   Q     So you've mentioned that there's an
25   updated version of the TEAM system that's
```

**hg**

RICHARDSON: BRIAN KEITH INGRAM - 30(B)(6)

Page 35

1    currently being used; correct?

2    A      That's right.

3    Q      How -- why did that -- how does SOS decide

4    when to update the system?

5    A      Well, I don't know, because, I

6    mean -- okay.  So TVRS was what they used in the

7    old days, pre-HAVA.  The Help America Vote Act of

8    2002 made a federal statutory requirement that

9    every state have an election -- an electronic

10   voter registration database, and so the first TEAM

11   was developed in response to that requirement.

12             The redeveloped TEAM, we decided to

13   redevelop it because we had some consultants who

14   worked us through a process to determine whether

15   or not we needed to update/upgrade the existing

16   TEAM or replace it altogether.  And that process

17   led us to the decision to replace it altogether,

18   which is what we did.  But that was an extensive

19   and thorough analysis by outside consultants that

20   led to that decision.

21   Q      So besides SOS and these outside

22   consultants, was anybody else involved in the

23   process to determine whether they need to create a

24   completely redeveloped version of TEAM?

25   A      Yes.  The department of information



RICHARDSON: BRIAN KEITH INGRAM - 30(B)(6)

Page 36

1    resources was with us through the whole process,

2    and, of course, the comptroller was involved

3    because you've got to get a review of the proposed

4    documents from the comptroller.

5    **Q        Okay.  Are there any modifications to the**

6    **system -- the TEAM system that are currently**

7    **planned for the next four years?**

8                    MS. MACKIN:  And I'm going to,

9            again, object to the extent that this

10           exceeds the scope of the 30(b)(6) topics.

11                   To the extent that it relates to

12           those topics, Keith, you can answer.

13                   THE WITNESS:  Yeah, and I don't

14           know what you mean by "proposed

15           modifications."  We're doing things all

16           the time, so I don't know what you mean.

17           What -- what constitutes a "modification"?

18    BY MR. MIRZA:

19    **Q        An update to the system -- the TEAM**

20    **system -- or any updates to the TEAM system**

21    **currently planned for the next four years.**

22                   MS. MACKIN:  And same objection to

23           the extent that it exceeds the scope of

24           the 30(b)(6) notice.

25                   THE WITNESS:  I'm sorry.  I just

**hg**

RICHARDSON: BRIAN KEITH INGRAM - 30(B)(6)

Page 37

1     don't understand what you mean.

2   BY MR. MIRZA:

3   **Q     So the TEAM system doesn't go through any**

4   **updates or modifications generally?**

5   A     I didn't say that.  I don't know what

6   you're asking for.

7   **Q     I'm asking if -- are there any updates or**

8   **modifications that are planned for the near**

9   **future?**

10  A     We are doing stuff to improve TEAM all the

11  time.  We've got issue tracks in to make

12  modifications all the them.

13  **Q     Okay.**

14  A     I don't know what you're asking about.

15  **Q     Okay.  And can you -- can you define what**

16  **you mean by "issue tracks"?**

17  A     An issue track is a project management

18  sort of system where you have a problem, you have

19  a desired change, and you submit it and it goes

20  through the process and gets resolved, and then

21  the issue track is deleted.

22  **Q     Okay.  And how often are these issue**

23  **tracks created?**

24              MS. MACKIN:  Objection; form.

25              THE WITNESS:  Issue track is

RICHARDSON: BRIAN KEITH INGRAM - 30(B)(6)

Page 38

```
 1        created all the time.  Issue tracks are
 2        created all the time and, you know,
 3        they're sort of collected into
 4        what -- what's going to be part of the
 5        next build, and the next build has a
 6        certain number of issue track fixes in it,
 7        and, you know, go on to the next build.
 8   BY MR. MIRZA:
 9    Q     Okay.  Let me -- one second.  I'm going to
10   pull up a document.
11             Okay.  I'm going to share my screen.
12   And this is Bates Number -- it starts at Bates
13   Number SOS_001316.
14             So I'm going to let you review this
15   email thread, so just let me know when you want me
16   to scroll down -- you're done.
17    A     Yeah, go down, down.  Keep going down.
18   Okay.  Keep going down.  Keep going.  And go.
19   Keep going.
20    Q     Okay.  So that's the end of the email, and
21   then we have -- I see here it says "see
22   attachment."  So we have the attachment connected
23   to it.
24             Can you generally explain what this
25   email thread is about?
```

RICHARDSON: BRIAN KEITH INGRAM - 30(B)(6)

Page 39

1    A      Yes.  It's about whether or not we could

2    take down a survey off the website so that we

3    won't get any more answers.

4    Q      Okay.  And what is attached -- what is

5    mentioned that's attached to this email that was

6    sent?

7    A      Answers to the survey questions from

8    counties.

9    Q      Okay.  And I'm going to jump to Bates

10   Number -- well, let me see.  Well, before I do

11   that...

12              Okay.  And then the next pages are the

13   attachments.  Are you familiar with this -- and

14   I'm going to scroll slowly and just let me know

15   when you want me to stop or you want me to go

16   faster.

17              Is this layout familiar to you?

18   A      It is not.

19   Q      Okay.  Do you generally review inspector

20   reports?

21   A      This doesn't have anything to do with

22   inspector reports.

23   Q      Okay.

24   A      But yes, I do review them.

25   Q      Okay.  I mean the surveys that are

hg

RICHARDSON: BRIAN KEITH INGRAM - 30(B)(6)

Page 40

1    submitted by counties.

2    A       No.

3    Q       Okay.  I'm going to jump to Bates

4    Number -- SOS_001336.

5              And by the way, this is all -- I'm

6    going to mark this all as Exhibit 2, I believe.

7              (Exhibit 2 marked.)

8              MS. MACKIN:  And by "this all,"

9         Hani, would you mind just identifying the

10        Bates range, please?

11             MR. MIRZA:  Sure.  So it's the

12        Bates range -- I'm going to skip around

13        through this document, so it's the Bates

14        range starting at 1316, and I think it

15        actually goes on until the end of this

16        document, if I'm not mistaken.

17             But what we can -- and maybe a

18        better way to do it is I can -- we'll just

19        count the emails as one exhibit, so Bates

20        range 1316 to 1318.

21             MS. MACKIN:  Thanks.  I just want

22        to keep everything clear since we're doing

23        it all remotely.

24             MR. MIRZA:  Yeah.  Yeah.

25    BY MR. MIRZA:

RICHARDSON: BRIAN KEITH INGRAM - 30(B)(6)

Page 41

1   Q     Okay.  I'm going to jump to Page Bates

2   Number SOS_001336.

3           What does this -- and I'll give you

4   time to review this.  Let me know when you're done

5   reviewing the page, and also, we're going to mark

6   this as Exhibit 3.

7           (Exhibit 3 marked.)

8           THE WITNESS:  Okay.  I don't have a

9       question.  I mean, you --

10  BY MR. MIRZA:

11  Q     Oh, no, I'm -- are you done reviewing the

12  page?

13  A     I am.

14  Q     Okay.  Do you recognize this as survey

15  responses by local election officials?

16  A     That's what it appears to be.

17  Q     Okay.  And so -- so do you see the -- the

18  paragraph in the middle of the page that begins

19  with "The board meets in the election

20  administrator's office"?

21  A     Yes.

22  Q     Can you read that paragraph and let me

23  know when you're done?

24  A     "The board meets in the election

25  administrator office in a separate area of office.

RICHARDSON: BRIAN KEITH INGRAM - 30(B)(6)

Page 42

```
 1    The EA is present but does not interfere.  The EA
 2    answers questions only if asked."
 3      Q      Does that sound -- does this comply with
 4    the Texas Election Code?
 5                MS. MACKIN:  Objection; form.
 6                THE WITNESS:  Sure.
 7    BY MR. MIRZA:
 8      Q      Sorry.  I can't hear.
 9      A      Sure.  Absolutely.
10      Q      Okay.  I think we're at Exhibit 4, I
11    believe.  I'm going to mark Bates
12    Number SOS_001392 as Exhibit 4.
13                (Exhibit 4 marked.)
14                MR. MAGEE:  I'll just ask a quick
15          question.  This is Eric Magee.  So
16          Exhibit 3 was 1336, and that was it;
17          right?
18                MR. MIRZA:  Yes.
19                MR. MAGEE:  Okay.  And then
20          Exhibit 2 was just 1316 through 1318;
21          right?
22                MR. MIRZA:  Yes.
23                MR. MAGEE:  Okay.
24    BY MR. MIRZA:
25      Q      And this is Exhibit 4, 1392.
```

RICHARDSON: BRIAN KEITH INGRAM - 30(B)(6)

Page 43

1           Does this appear to be more survey

2    responses by counties?

3    A       It does.

4    Q       And I'll give you a chance to review the

5    whole page.  Let me know when you want me to

6    scroll down.

7    A       Down would be good.

8            Okay.

9    Q       If you could read the paragraph in the

10   middle that starts with "The ballot board

11   members."

12   A       "The ballot board members who open the

13   mail ballots always concur with one another if

14   they have a question about a signature or other

15   problem.  If they don't agree on a signature,

16   et cetera, then they bring it to me for final

17   approval -- for the final approval."

18   Q       And the "me" referenced here is the early

19   voting clerk; correct?

20   A       I have no idea --

21             MS. MACKIN:  Objection; form.

22             THE WITNESS:  -- who that is.  It

23        presumably is either a county clerk or an

24        election administrator filling out the

25        survey, but it could be somebody that

RICHARDSON: BRIAN KEITH INGRAM - 30(B)(6)

Page 44

```
 1         works in that office.  I don't know.
 2    BY MR. MIRZA:
 3     Q      Okay.  If the "me" was the early voting
 4    clerk, would this comply with the election code?
 5              MS. MACKIN:  Objection; form.
 6              THE WITNESS:  It does not.
 7    BY MR. MIRZA:
 8     Q      Did you say "it would not"?
 9     A      It does not.
10     Q      Okay.  Okay.  I'm going to mark SOS_001408
11    as Exhibit 5.
12          (Exhibit 5 marked.)
13    BY MR. MIRZA:
14     Q      I'm going to have you review -- and this,
15    again, is more -- it appears to be more survey
16    responses by counties -- local election officials.
17     A      Okay.
18              Okay.
19     Q      Okay.  That's the whole page.
20              Does this appear to be more responses
21    to a survey from local election officials?
22     A      It does.
23     Q      And could you review the second row -- the
24    responses on the second row and let me know when
25    you're done?
```

hg

RICHARDSON: BRIAN KEITH INGRAM - 30(B)(6)

Page 45

```
 1    A      Okay.  I'm done.
 2    Q      Okay.  Do you believe what is mentioned
 3   here complies with the Texas Election Code?
 4                MS. MACKIN:  Objection; form.
 5                THE WITNESS:  I do.
 6   BY MR. MIRZA:
 7    Q      Okay.
 8    A      Yes, it does.
 9    Q      Okay.  So early voting clerks -- well, let
10   me rephrase it.
11                Can early voting clerks help early
12   voting ballot boards manage the review of mail-in
13   ballots?
14    A      The early voting clerk is responsible for
15   all the early voting activity, including the
16   ballot board, yes.
17    Q      Okay.  And they -- so they can help manage
18   the -- their -- the signature verification review
19   of the mail-in ballots?
20    A      It says that they answer questions and
21   they "deliver all replies backed by the election
22   code."  So if they have a question, the ballot
23   board has a question, then the person answering
24   this responds with election code provisions, and
25   they use the ballot board manual and direct them
```

**hg**

RICHARDSON: BRIAN KEITH INGRAM - 30(B)(6)

Page 46

```
 1    as needed to follow the manual.  That's perfectly
 2    right.
 3              They "open, reconcile, close, and lock
 4    everything for the board," which is what they're
 5    supposed to do because they're the custodian of
 6    records, and have the judges sign off on all of
 7    the forms.  That's all perfectly fine.
 8    Q      Okay.  Okay.  And then this is -- I think
 9    I'm on Exhibit 6 or -- I'm going to mark this as
10    Bates Number SOS_001411.
11              (Exhibit 6 marked.)
12    BY MR. MIRZA:
13    Q      I'm going to have you review the document.
14    Let me know when you want me to scroll down.
15    A      Okay.  Okay.  Okay.
16    Q      Okay.  This appears to be more survey
17    responses by local election officials; correct?
18    A      It does.
19    Q      Okay.  If you could review the first row
20    of the page and let me know when you're done.
21    A      I'm done.
22    Q      Okay.  Does the process listed in the
23    longer paragraph comply -- in that row comply with
24    the Texas Election Code?
25    A      It does.
```

RICHARDSON: BRIAN KEITH INGRAM - 30(B)(6)

Page 47

1          MS. MACKIN:  Objection; form.
2    BY MR. MIRZA:
3    **Q      And so this process does not conflict in**
4    **any way with SOS guidance?**
5    A      It doesn't appear to.  Asking a board for
6    an explanation and then explaining to them what
7    the law is does not conflict with anything.  It's
8    probably a good idea.
9    **Q      Okay.  And local election officials are**
10   **allowed to create, what's stated here, "a**
11   **shorter/more laymen-friendly version of --**
12   **version," end quote, of SOS manuals?**
13   A      Yeah.  I'd prefer that we review it before
14   they use it, if we're going to use that one or
15   not.
16   **Q      Okay.  This document starts at**
17   **Bates SOS_1935 and ends at Bates SOS_1937.  We'll**
18   **mark this as Exhibit 7.**
19          (Exhibit 7 marked.)
20   BY MR. MIRZA:
21   **Q      And I'll give you a chance to review this.**
22   **Let me know when you want me to scroll down.**
23   A      Yes, scroll down.  Go down.  Go down.  Go
24   down, down.  Go down.  Go down.  Okay.
25   **Q      Okay.  On Bates SOS_00137 [sic], can**

**hg**

RICHARDSON: BRIAN KEITH INGRAM - 30(B)(6)

Page 48

1    you -- oh, first of all, does this appear to be

2    an -- this document appear to be an inspector

3    report for early voting ballot board meeting for

4    the City of Del Rio runoff election?

5    A      Yes.

6    Q      If you could jump to SOS_001937 at the

7    last paragraph, can you review that and let me

8    know when you're done?

9    A      I read it.

10   Q      Okay.  Is this -- was this decision by the

11   early voting ballot board judge proper?

12   A      Yeah.

13          MS. MACKIN:  Objection; form.

14   BY MR. MIRZA:

15   Q      Sorry.  I didn't hear what you said.

16   A      Who are you talking to?

17   Q      To you.

18   A      Yes, this is a good decision -- a correct

19   decision.

20   Q      Okay.  And why is that?

21   A      Because it's the right thing to do.

22   Q      And she -- in the second sentence of that

23   paragraph, it says:  "She asked if she could

24   confirm by affidavit the signatures on those

25   ballots."

RICHARDSON: BRIAN KEITH INGRAM - 30(B)(6)

Page 49

1          Why is that an improper action?

2   A     The ballot board is there to look at what

3   they've got.  They're not there to get more

4   evidence.  They don't have any statutory ability

5   or requirement that they review more evidence

6   other than other signatures by the same voter.

7                In 2014, they can only review other

8   signatures to help the voter.  They couldn't use

9   it to disqualify a ballot.  Now, then they can use

10  it to help or hurt the voter.  But that's the only

11  additional information they get, are signatures

12  from the last six years.

13  Q     Okay.  And we talked about this in the

14  other deposition regarding signatures that they

15  can use for the last six years.  One of those

16  signatures is the signature on the voter

17  registration application, if that's available;

18  correct?

19  A     If it's available, yes.

20  Q     What other documents generally are on file

21  for the voter where the voter signature are -- is

22  included?

23  A     Past ballots-by-mail carrier envelopes,

24  applications for ballot-by-mail, and voter

25  registration signatures.

RICHARDSON: BRIAN KEITH INGRAM - 30(B)(6)

Page 50

1    Q      Have you seen anything else being used to
2   make a signature verification determination?
3    A      I don't know what else there would be.
4    Q      Okay.  Okay.  This exhibit -- I think
5   we're at Exhibit 8 -- starts at SOS_4398.  I think
6   we'll just mark 4398.
7           (Exhibit 8 marked.)
8   BY MR. MIRZA:
9    Q      I want to let you review this document.
10  Let me know when you want me to scroll down.
11   A      Go down.  Okay.
12   Q      It's the end of the page.
13          We'll mark this, I think, as -- I
14  mentioned this before, but Exhibit 8.
15          Does this appear to be an inspector
16  report for early voting ballot board meeting for
17  the City of Crystal City?
18   A      Yes.
19   Q      Okay.  If I could direct your attention to
20  Item Number 24, do you see that?
21   A      I do.
22   Q      Can you read that statement?
23   A      "There were three poll watchers.  All of
24  the poll watchers were harassing the board
25  regarding signature rejections."

RICHARDSON: BRIAN KEITH INGRAM - 30(B)(6)

1   Q      Okay.  Do you -- do you know if the

2   SOS -- the Secretary of State took any measures in

3   response to this statement?

4   A      We don't take measures.  We're not an

5   enforcement agency.  We observe and we collect the

6   information.  We send it to the city secretary for

7   the City of Crystal City.

8   Q      And do you know if the City of Crystal

9   City took any measures in response to this

10  statement?

11  A      I know that their city attorney was

12  indicted and convicted on various charges.

13  Q      Were those charges related to -- in any

14  way to the statement that was just -- made here?

15  A      I don't know.

16  Q      Okay.  I'm going to stop sharing.  Okay.

17  I'm going to pull up another document.

18          Is it true that the -- actually, I'm

19  not going to pull up a document.  I'm going to ask

20  you a few questions before.

21          Is it true that an application for

22  ballot by mail may be submitted via electronic

23  submission?

24  A      Yes, it can.

25  Q      And -- and is it true that the early

**hg**

RICHARDSON: BRIAN KEITH INGRAM - 30(B)(6)

Page 52

```
 1    voting clerk is required -- that that application
 2    is sent to the early voting clerk via email?
 3    A       They can be sent by email to the early
 4    voting clerk, yes.
 5    Q       And the early voting clerk is required to
 6    provide an email address on its website and to the
 7    Secretary of State to put on their website?
 8    A       Yes.
 9    Q       Are there any requirements -- any limits
10    on how this email address can be used to contact
11    the voter?
12                MS. MACKIN:  Objection; form.
13                THE WITNESS:  I don't know what you
14        mean by "this email address."
15    BY MR. MIRZA:
16    Q       The early voting clerk's email address.
17    Are there any limits on how the email address can
18    be used to contact a voter who submits an
19    application for ballot by mail via email?
20                MS. MACKIN:  Objection; form.
21                THE WITNESS:  So the restriction is
22        that if they contact a voter because of
23        some defect in either the application or
24        the carrier envelope, they have to treat
25        every voter the same.
```

RICHARDSON: BRIAN KEITH INGRAM - 30(B)(6)

Page 53

```
 1   BY MR. MIRZA:
 2     Q      So -- are you done with the answer?
 3     A      Yes.
 4     Q      Okay.  So if they contact the voter about
 5   a defective application via email, as long as they
 6   provide -- they do that for all other voters who
 7   submit an application for ballot by mail, that is
 8   proper?
 9     A      Well, no.  I didn't say that.
10     Q      Okay.  Can you explain what you were
11   saying?
12     A      So the early voting clerk -- generally if
13   there's a problem with a -- with an application
14   for ballot by mail, they just reject it.  They
15   send the rejection notice, the voter submits a new
16   one, and it's fixed.  But if they decide to treat
17   a voter in that way, then they have to treat all
18   voters similarly situated.
19            So if the defect is the same on
20   another voter's application, then they have to
21   treat that voter the same as they treated the
22   first one.  So if they choose to email a voter
23   about a defect in an application for a ballot by
24   mail, then they need to do the same for everybody
25   that submits an application for ballot by mail
```

RICHARDSON: BRIAN KEITH INGRAM - 30(B)(6)

Page 54

```
 1   that's got the same defect.
 2    Q     Okay.  Besides that restriction, there are
 3   no other restrictions on the early voting clerk to
 4   communicate with the voter about their mail-in
 5   ballot?
 6              MS. MACKIN:  Objection; form.
 7              THE WITNESS:  I don't know what you
 8         mean by "restrictions."
 9   BY MR. MIRZA:
10    Q     Like besides that -- I guess not
11   restriction, but besides that requirement that all
12   similarly situated mail-in ballot voters have to
13   be treated the same -- let me -- let's scratch
14   that.  Let me say it again.
15              Are there any -- are early voting
16   clerks allowed to communicate with voters --
17   mail-in ballot voters about the mail-in ballot
18   process via email?
19    A     Sure.
20    Q     Okay.  And that includes about the voters'
21   mail-in ballot specifically -- information
22   specific to the voters' mail-in ballot?
23              MS. MACKIN:  Objection; form.
24              THE WITNESS:  I don't know.  They
25         get a carrier envelope.  They don't
```

**hg**

RICHARDSON: BRIAN KEITH INGRAM - 30(B)(6)

Page 55

1       have -- they don't know anything about the
2       ballot.  They've got a carrier envelope.
3       So they call voters about carrier
4       envelopes.  They don't call them about
5       mail-in ballots.  That's the part that's
6       just throwing me off.
7   BY MR. MIRZA:
8   Q       Okay.
9   A       They call them about applications maybe.
10  They call them about carrier envelopes maybe, if
11  they decide to do it, and then they treat all
12  voters similarly situated the same way.  But they
13  don't -- they don't have mail ballots.  They have
14  carrier envelopes.  The ballot board is going to
15  get the ballot out if they -- after they approve
16  the signature.
17  Q       Okay.  Yes.  Sorry about that.  I was
18  using the term "mail-in ballot" generally.  I'll
19  make sure to be more specific.
20          But that -- that communication can
21  happen over email, over phone, in person.  That's
22  all proper; correct?
23          MS. MACKIN:  Objection; form.
24          THE WITNESS:  It's all proper --
25      it's all proper, presuming that they treat

RICHARDSON: BRIAN KEITH INGRAM - 30(B)(6)

1      voters similarly situated the same way.

2    BY MR. MIRZA:

3      Q      Okay.

4      A      They can choose not to engage with the

5    voters, or they can choose to engage with all the

6    voters who have the same problem the same way.

7      Q      Okay.  Let me just pull up this document.

8            Okay.  I'm going to share this

9    document on the screen.

10           Okay.  This is Exhibit 9.  It starts

11   at SOS_025088 and ends at SOS_025095.

12           (Exhibit 9 marked.)

13   BY MR. MIRZA:

14     Q      Okay.  I'm going to...

15           Okay.  Does this document look

16   familiar to you?

17     A      It does.  I need to amend my answer from

18   this morning and this afternoon.  This is also a

19   document that I reviewed getting ready for today.

20     Q      Okay.  Okay.  And this appears to be an

21   election advisory; correct?

22     A      It is.

23     Q      And you prepared this advisory?

24     A      No.  I reviewed it and signed it, but I

25   didn't prepare it.

**hg**

RICHARDSON: BRIAN KEITH INGRAM - 30(B)(6)

Page 57

1   Q      Okay.  Who was involved in preparing the

2   advisory?

3   A      In 2013, I don't know.  Probably Caroline

4   Geppert had the primary drafting on it, and then,

5   of course, all the lawyers, including me, reviewed

6   it.

7   Q      And this is Election Advisory

8   Number 2013-10; correct?

9   A      Yes, that's correct.

10  Q      Okay.  And it was issued on September 5th,

11  2013?

12  A      Yes.

13  Q      Okay.  So I'm going to scroll down to

14  Bates SOS_25089.

15         Okay.  Before I ask questions, what

16  was the purpose of this advisory?

17             MS. MACKIN:  I'm going to --

18             THE WITNESS:  To give a brief

19     run- --

20             MS. MACKIN:  Go ahead.

21             THE WITNESS:  To give a brief

22     rundown of changes in election law out of

23     the 2013 session, the 83rd legislative

24     session.

25  BY MR. MIRZA:

**hg**

RICHARDSON: BRIAN KEITH INGRAM - 30(B)(6)

Page 58

1   Q    Okay.  I'm going to direct your attention

2  to House Bill 2233.  Do you see that on the page?

3  A    Yes.

4   Q    Okay.  Can you review that section and let

5  me know when you're done?

6  A    I'm done.

7   Q    Okay.  And this specific rule, does it

8  still exist to this day?

9  A    No.  It's been modified.

10   Q    And how has it been modified?

11  A    You see that last sentence, where it says

12  "signature comparison can only be used to confirm

13  signatures of the same person," now it can be used

14  to confirm or reject that the signatures are of

15  the same person.

16   Q    Okay.  Okay.  We'll stop sharing this

17  screen.

18          I'm just going to quickly load a

19  document right now.

20        MR. MIRZA:  Okay.  This is

21     Exhibit -- I think we're at -- the last

22     one was 10.  I think so.  This will be

23     Exhibit 11.

24        THE REPORTER:  This is actually

25     going to be 10.  The last one marked

RICHARDSON: BRIAN KEITH INGRAM - 30(B)(6)

Page 59

```
 1        was 9.
 2                MR. MIRZA:  Oh, 9?  Okay.  And did
 3        I mark the last one?
 4                THE REPORTER:  The last one you
 5        marked as Number 9 was Number 25088
 6        through 25095.
 7                MR. MIRZA:  250- -- yeah.  Okay.
 8        Yeah.  So this is Exhibit 10.
 9                THE REPORTER:  Yep.
10                MR. MIRZA:  Great.  And it starts
11        at Bates Number SOS_34540, and -- yeah.  I
12        think ends at SOS_34541, I believe.  Yeah.
13            (Exhibit 10 marked.)
14    BY MR. MIRZA:
15     Q    Okay.  I'm going to give you -- this is an
16    email from Caroline -- Caroline Geppert to
17    leti@ghcwcid2.com [sic].  I'm going to give you
18    some time to review.  Let me know when you're
19    done.
20     A    Okay.  Okay.  Is there any more?  Okay.
21     Q    Okay.  Can you explain generally -- well,
22    this appears to be an email correspondence between
23    the Secretary of State's office and a local
24    election official?
25     A    That's correct.
```

**hg**

RICHARDSON: BRIAN KEITH INGRAM - 30(B)(6)

Page 60

1    Q      And can you explain what is going on in
2    this correspondence?
3    A      Apparently the water control improvement
4    district sent out some mail ballots, and the
5    person who was doing that job didn't put the
6    voter's name on the carrier envelopes before they
7    sent them out on a few.
8    Q      And what was the advice -- go ahead.
9    A      The early voting ballot -- the early
10   voting clerk wants to know what to do about that,
11   and so Caroline says that's just a helpful aid for
12   the election officials when the vote ballot comes
13   back.  It's not necessary to be there.
14   Q      Okay.  And then do you see the second
15   sentence in Caroline's email?  "Also, it is
16   helpful to have the name on the carrier envelope
17   if the voter returns the ballot without a
18   signature so that the voter can be contacted to
19   fix that mistake."
20   A      That's right.
21   Q      And so is Caroline describing the
22   defective application process that early voting
23   clerks can utilize where they receive defective
24   carrier envelopes?
25              MS. MACKIN:  Objection; form.

**hg**

RICHARDSON: BRIAN KEITH INGRAM - 30(B)(6)

Page 61

1          THE WITNESS:  Yeah, that question
2      doesn't make any sense.
3    BY MR. MIRZA:
4      Q      Is she describing the -- so you're
5    familiar with the authority early voting clerks
6    have to correct defects on carrier envelope
7    applications?
8      A      Yes.  We talked about it earlier.
9      Q      Yeah.  And I guess -- I'll phrase this
10   differently.
11          What authority do early voting clerks
12   have that allows them to contact the voter to fix
13   a ballot that is returned without a signature?
14     A      The election code allows them to contact
15   the voter to fix those sort of defects before it
16   goes to the ballot board.
17     Q      Okay.  And having no signature --
18     A      Well --
19     Q      Go ahead.
20     A      It's the most common -- this is the most
21   common defect that needs to be fixed, yes.
22     Q      Okay.
23     A      And the caveat is that if they do that for
24   one voter, they have to do it for all voters
25   similarly situated.

hg

RICHARDSON: BRIAN KEITH INGRAM - 30(B)(6)

Page 62

```
1    Q      Okay.  And for the record, you're looking
2  at the election code while answering this
3  question?
4  A      I am.
5    Q      Okay.  Okay.
6              I'm going to stop sharing.
7  A      Yeah.  The Election Code 86.011(d) is what
8  I'm talking about.
9              THE REPORTER:  I'm sorry.  Can you
10        repeat that?  I didn't hear you.
11              THE WITNESS:  Sure.
12              It's 86.011(d).  It says if there's
13         a time that a carrier envelope's received
14         that doesn't fully comply, they can
15         contact the voter, but it "must be applied
16         uniformly to all carrier envelopes covered
17         by this subsection."  So they've got to
18         treat them all the same way.
19  BY MR. MIRZA:
20    Q      Okay.  I'm going to send another document.
21              Now I'm going to send this on the
22  chat, and this will be Exhibit 11, I believe.
23          (Exhibit 11 marked and designated as
24            confidential.)
25  BY MR. MIRZA:
```

**hg**

RICHARDSON: BRIAN KEITH INGRAM - 30(B)(6)

1    Q      Let me know when you have it open.

2    A      I have it.

3    Q      Okay.  Can you review the email

4    correspondence starting at SOS_34653 and ending at

5    34654?  And let me know when you're done.

6    A      Okay.

7    Q      Okay.  And just for the record, this is

8    Exhibit 11, an email between Genevieve -- I don't

9    know if it's "Gill" or "Gill" --

10   A      Yeah.

11   Q      Gill?  Okay -- to mbarber83@gmail.com, on

12   May 14th, 2019.

13            Do you recognize this as

14   correspondence between the Secretary of State's

15   office and a -- I think somebody -- a professor of

16   political science at Brigham Young University?

17   A      That's what it appears to be, yes, sir.

18   Q      Okay.  And if you -- I want to direct your

19   attention to -- this is actually on the 34654,

20   Question Number 3 by the professor.

21   A      Okay.

22   Q      And then I want to direct your attention

23   to Genevieve's answer on Page 34653.

24   A      Yes.

25   Q      When you get a chance to read that --

RICHARDSON: BRIAN KEITH INGRAM - 30(B)(6)

Page 64

1    okay.

2              Do you agree with the point that

3    Genevieve is making here?

4              MS. MACKIN:  Objection; form.

5    BY MR. MIRZA:

6    Q      You can answer the question.

7    A      I did.  Yes, I agree with her.

8    Q      Oh.  Oh, okay.

9              Okay.  Okay.  So I want to talk about

10   the process a voter goes through to submit a

11   mail-in ballot.

12             So the first thing they do is submit

13   an application for ballot by mail; correct?

14   A      That is correct.

15   Q      And then what materials are sent to the

16   voter if their application is accepted by the

17   early voting clerk?

18   A      The blank ballot, carrier envelope,

19   secrecy envelope, instructions to the voter, a

20   "Dear Voter" letter, possibly a notice of ID

21   required, and possibly a notice of that you need

22   to update your address -- what do they call

23   it -- notice of -- notice to suspense voter is

24   what I think it's called, but it requires that

25   they do a statement of residence.  So they also

RICHARDSON: BRIAN KEITH INGRAM - 30(B)(6)

Page 65

1   get the statement of residence in their mail

2   packet.

3   **Q     Okay.  What is included in the "Dear**

4   **Voter" letter?**

5   A     The "Dear Voter" letter is a letter from

6   the secretary that talks about their rights as a

7   voter and voting by mail.

8   **Q     Okay.  Does the "Dear Voter" letter**

9   **mention anything about the signature verification**

10  **procedure?**

11  A     I don't know.

12  **Q     Okay.  Is that something the SOS can get**

13  **information on?**

14  A     Yes.  I can look it up.

15  **Q     Okay.**

16  **          And before you answer the question,**

17  **please just state what document you're -- you're**

18  **looking at.**

19  A     What I'm looking at right now is Form

20  Number 5-35.  It's not the "Dear Voter" letter,

21  but it mentions the "Dear Voter" letter.

22  **Q     Okay.**

23  A     It looks like 5-35 is an earlier version

24  of 5-22b that I mentioned earlier.

25  **Q     Okay.**

**hg**

RICHARDSON: BRIAN KEITH INGRAM - 30(B)(6)

Page 66

```
 1    A      I can't find it.
 2    Q      Okay.
 3             MR. MIRZA:  Anna, would it be
 4        possible to get -- I don't -- I'm not sure
 5        if the "Dear Voter" letter was provided in
 6        the discovery responses.  If you could
 7        either -- if it was, like, if you could
 8        tell me the Bates number or if you could
 9        supplement.
10             I think you're on mute.
11             MS. MACKIN:  Sorry.  That would
12        have been, I think, one of the publicly
13        available forms on the SOS website.  I can
14        provide you a link to that.
15             MR. MIRZA:  Okay.  The "Dear Voter"
16        letter specifically?
17             MS. MACKIN:  Yes.
18             MR. MIRZA:  Okay.  Okay.  Sounds
19        good.
20    BY MR. MIRZA:
21    Q      And then, Mr. Ingram, you mentioned
22    another document that provides instructions to the
23    voter?
24    A      Yes.  It's 5-22b.
25    Q      Does that mention the signature
```

**hg**

RICHARDSON: BRIAN KEITH INGRAM - 30(B)(6)

Page 67

1   verification procedure?

2   A    It does not.  I thought it did, but it

3   doesn't.

4   **Q**    **Okay.**

5   A    It's probably a good thing to add, though,

6   so we'll probably be adding it in a future

7   version.

8   **Q**    **Okay.  Do any of the materials you**

9   **mentioned that are sent to the voter mention the**

10   **signature verification procedure?**

11   A    I don't know about the "Dear Voter"

12   letter.  That's what I would like to read.

13           I stink.  Busted link.

14           I'm writing an email to Christina

15   Adkins right quick to point me to the "Dear Voter"

16   letter.

17   **Q**    **Okay.  I do want to remind you that any**

18   **documents you have opened, any, like,**

19   **communications during the deposition, we would**

20   **have -- are discoverable in our opinion.**

21   A    Okay.  I just sent her an email saying:

22   "Can you point me to the 'Dear Voter' letter."

23   **Q**    **Okay.  But besides the "Dear Voter"**

24   **letter, which you don't know about whether it**

25   **mentions the verification procedure, do any of the**



RICHARDSON: BRIAN KEITH INGRAM - 30(B)(6)

Page 68

1    other materials that are -- ballot materials that

2    are sent to the voter, do any of them mention the

3    signature verification procedure?

4    A      No.

5    Q      Okay.

6            MR. MIRZA:  Okay.  I think this is

7        a good time to take a, let's say,

8        15-minute break.  We can get -- come back

9        on the record at 3:40, if that works for

10       everyone.

11           MS. MACKIN:  That's fine, but

12       before we go off, I would like to

13       please -- I didn't notice this when we

14       produced it, but it appears that 34658

15       through 34662 has some personal

16       information of someone who participated in

17       the address confidentiality program

18       because she was a victim of domestic

19       violence; and so I'd like to designate

20       those pages as confidential, just in the

21       interest of protecting that individual's

22       privacy.

23           MR. MIRZA:  And that is fine with

24       us.

25           MS. MACKIN:  Thank you.

RICHARDSON: BRIAN KEITH INGRAM - 30(B)(6)

Page 69

```
 1              THE VIDEOGRAPHER:  All right.  We
 2       are going off the record.  The time is
 3       3:26 p.m.
 4           (Recess from 3:26 p.m. to 3:45 p.m.)
 5              THE VIDEOGRAPHER:  We are going
 6       back on the record.  The time is 3:45 p.m.
 7  BY MR. MIRZA:
 8   Q      Okay.  So I have, I think, only a few
 9  questions left, and I think after that, we'll take
10  a short break and then come back, and hopefully I
11  won't have any questions after that.  But we'll
12  see.
13              You mentioned earlier in the
14  deposition that the Secretary of State has -- can
15  withhold funds to noncompliant counties when it
16  comes to very specific situations.  Can you
17  explain what those situations are?
18   A      Yeah.  It's one specific situation.  It's
19  one kind of funds -- it's Chapter 19, which is the
20  money that counties get for voter registration,
21  new registrations, and changes for registration,
22  and it can be withheld under 18.064 of the
23  election code for substantial noncompliance.
24              Usually, what we do when we withhold
25  the Chapter 19 money is because the offline
```

Page 70

```
 1   counties, the counties that do their voter
 2   registration on their own system and batch process
 3   with us overnight, didn't send -- didn't send a
 4   batch overnight and didn't tell us that they
 5   didn't have one.  You know what I mean?  So that's
 6   the most common reason for noncompliance, is they
 7   don't comply with the nightly batch process.
 8   Q      And the Chapter 19 money, how much is
 9   that, like, generally, like a rough -- roughly
10   speaking for, like, a small county or, like, large
11   counties?
12   A      It depends upon the number of new voter
13   registrations in the last year and the number of
14   changes.  There's a specific formula in Chapter 19
15   of the election code.  But basically -- I'm trying
16   to think -- for the biggest county -- I want to
17   say, like, Harris County was maybe 700,000, and
18   then for the smallest county, maybe 2- or $300.
19   Q      Okay.  Okay.
20           Okay.  I want to send a link to a
21   document.
22   A      The amount appropriated for an
23   even-numbered year is about 5 million.  The amount
24   appropriated for an odd-numbered year is about
25   1 million.
```



RICHARDSON: BRIAN KEITH INGRAM - 30(B)(6)

Page 71

1    Q      Okay.  And what are those funds

2    used -- what are counties -- local election

3    officials allowed to use those funds for?

4    A      It's only voter registrars, and they can

5    only use it for voter registration purposes, and

6    they can't use it to supplant county spending.  So

7    it has to be new spending, and they can use it for

8    temps, they can use it for computer equipment,

9    they can use it for poll books.  They can use it

10   for copy machines.  Anything related to voter

11   registration that they didn't already budget for

12   with county money.

13   Q      Okay.  I'm going to send you a link.  This

14   is -- I'm going to mark this as Exhibit 12.

15           (Exhibit 12 marked.)

16   BY MR. MIRZA:

17   Q      Let me know when you have accessed it.

18   It's --

19   A      Yes.

20   Q      Okay.  We'll call this "Operating Budget

21   for Fiscal Year 2020."

22           Does this look familiar to you?

23   A      Yes.

24   Q      What is this document?

25   A      It appears to be our final legislative

Page 72

1    appropriation request.

2       Q      Okay.

3       A      But it seems to also be -- yeah.  I don't

4    know.  December of 2019 is a -- is a weird date,

5    so I don't know.  It looks like our budget.

6       Q      Okay.

7       A      I don't -- I don't know if this is our

8    budget request or if this is the actual budget.  I

9    don't know -- I don't use this document.

10      Q      Okay.  And what -- what document do you

11   generally use -- is there, like, a more updated

12   version of this document that you use?

13      A      Well, there's the actual budget that came

14   out of the house and the senate.

15      Q      Okay.

16      A      You know, the budget from the state, it's

17   printed in a paperback book that -- that I have a

18   copy of on my shelf.  And so you go to the

19   Secretary of State's section, and that's our

20   budget.

21      Q      And so you --

22      A      I don't know really what this is.

23      Q      Okay.  And so you use usually that

24   document -- that paper document when you look at

25   the Secretary of State's budget?

hg

RICHARDSON: BRIAN KEITH INGRAM - 30(B)(6)

Page 73

1    A      Yes, and you can also look up HB1 online

2    and read it online, but it's the same thing that's

3    in the paperback book.

4    **Q      Okay.**

5    A      I honestly don't know what this is.

6    **Q      Okay.  But do you want to review for a**

7    **couple of moments to just figure out if you can**

8    **determine what this is?**

9    A      Yeah, it won't help me.

10            MS. MACKIN:  Which -- which

11        deposition topic are we getting into here?

12            MR. MIRZA:  So there was a specific

13        question I wanted to ask.  The topic would

14        be -- let me pull it up.  It would be 1,

15        2, and 3(a) -- or 3.  There's a quick -- a

16        question I wanted to ask on -- based on

17        Page 5, Goal 2, related to SOS's general

18        authority.

19            THE WITNESS:  Okay.  I don't know

20        what you're looking at.

21    BY MR. MIRZA:

22    **Q      Okay.  Okay.  We can move to -- if you**

23    **could turn to Page 5 of the PDF document.**

24    A      I don't see Page 5.  I see Page 1 of 1,

25    and then I see Page 1 of 2, 2.A.  I don't see

RICHARDSON: BRIAN KEITH INGRAM - 30(B)(6)

```
 1   Page 5.
 2    Q      Yeah.  So it's 2.A, Page 1 of 2.
 3   The -- it's -- the 5 that I was mentioning is
 4   Page 5 of the actual PDF document.
 5    A      I don't get page numbers on this PDF --
 6    Q      Oh.
 7    A      -- so I don't know those.
 8    Q      Okay.  Okay.  So it's 2.A, Page 1 of 2.
 9    A      Okay.
10    Q      And can you review this page and let me
11   know what it looks like.
12              MS. MACKIN:  And I'm going to
13         just --
14              THE WITNESS:  I see what it says.
15              MS. MACKIN:  I'm going to object to
16         the extent that the witness wasn't able to
17         say for sure what the document is.
18              MR. MIRZA:  Uh-huh.
19              MS. MACKIN:  To the extent that you
20         want to, you know, try to explore anything
21         that's relevant to the topics, you know,
22         go ahead.  But since we can't authenticate
23         this document sitting here, I'd just like
24         to note that caveat on the record.
25              MR. MIRZA:  Yeah.  That's fine.
```

**hg**

RICHARDSON: BRIAN KEITH INGRAM - 30(B)(6)

Page 75

```
1          I'm hoping that my questions will -- we
2          will -- I'm hoping that either we'll be
3          able to kind of figure out what this
4          document is or the questions I ask will be
5          related enough to the document to where we
6          don't need authentication of the document
7          to get answers on them.
8               THE WITNESS:  Well, asking me a
9          general question about what I'm looking at
10         is not going to get you a very good
11         answer, because I don't know.
12  BY MR. MIRZA:
13   Q     Okay.  So you -- this page does not look
14  familiar to you at all?
15   A     No.
16   Q     Okay.  Okay.
17   A     Do you have something more specific to
18  ask?
19   Q     Yeah.  Yeah.  So under Goal 2, it says:
20  "Maintain uniformity and integrity of elections;
21  oversee election process."
22          Does that -- is that something that is
23  mentioned on a regular -- in this context, in a
24  budget document?
25   A     So you're seriously hung up on that word
```

RICHARDSON: BRIAN KEITH INGRAM - 30(B)(6)

Page 76

1   "oversee"?  Is that what you're doing?  Because

2   no, we don't oversee elections.  We assist and

3   advise elections, and every single one of these

4   budget categories has helped -- helps us assist

5   and advise election officials.

6   **Q      Okay.  I just generally want to know what**

7   **you mean by "oversee" in this content -- in this**

8   **context.**

9   A      I have -- I have no -- I have no idea who

10  drafted this or why they put the word "oversee"

11  there, but it is an incorrect word for what we do.

12  **Q      Okay.  Okay.**

13  A      And I want to iterate that in the

14  strongest terms possible.  That is absolutely not

15  what we do.

16  **Q      Okay.  Let's see if I have the language.**

17  **          Okay.  Did you receive the "Dear**

18  **Voter" letter?**

19  A      Yes.  I sent it to Anna for you to look at

20  too.

21  **Q      Okay.  Was there any mention of the**

22  **signature verification procedure in that letter?**

23  A      There was not.

24  **Q      Okay.**

25  A      I did have a conversation with Christina

RICHARDSON: BRIAN KEITH INGRAM - 30(B)(6)

Page 77

1    when she was telling me where to get it from and
2    suggested that probably we'd want to include some
3    language about that in the instructions and the
4    "Dear Voter" letter.  She mentioned that we had
5    received Travis County's materials.  We were
6    probably going to get some ideas from them about
7    how to do that.
8    **Q      And when you say "Travis County's**
9    **materials," what do you mean?**
10   A      What they send to mail ballot voters.
11   What I was reading from in that email earlier, in
12   the first deposition, between Michelle Parker and
13   Caroline Geppert.
14   **Q      And so Travis County does provide some**
15   **information about that; is that what you're**
16   **saying?**
17   A      They do.  They send the forms for approval
18   to our office so I'll know -- 2013 apparently, and
19   we approved them.  And now I'm thinking that not
20   only should we approve them, we should probably
21   imitate them.
22   **Q      And as long as they're -- and so generally**
23   **speaking, early voting clerks can modify materials**
24   **sent to the voter -- mail-in ballot materials sent**
25   **to the voter as long as they're approved by the**



RICHARDSON: BRIAN KEITH INGRAM - 30(B)(6)

Page 78

1    Secretary of State?

2              MS. MACKIN:  Objection; form.

3              THE WITNESS:  Yeah.  As we

4        discussed earlier.

5              MR. MIRZA:  Great.  I don't think I

6        have -- I'll have any more questions.

7              I'm just going to review the

8        document you sent, Anna, the attorneys'

9        eyes only one.

10             MS. MACKIN:  Okay.

11             MR. MIRZA:  But I think that's -- I

12       don't think I'll have many more questions,

13       but I think we'll just take a short break,

14       like five minutes, and we can get back on

15       the record and finalize.

16             MS. MACKIN:  Okay.

17             THE WITNESS:  Perfect.

18             THE VIDEOGRAPHER:  We're going off

19       the record.  The time is 3:58 p.m.

20          (Recess from 3:58 p.m. to 4:04 p.m.)

21             THE VIDEOGRAPHER:  We are back on

22       the record.  The time is 4:04 p.m.

23             MR. MIRZA:  Thank you.

24             Anna, I'd like to ask a few

25       questions about the attorneys' eyes only

**hg**

RICHARDSON: BRIAN KEITH INGRAM - 30(B)(6)

Page 79

```
1        document.  What's the best way for Keith
2        to have that available to view?
3               MS. MACKIN:  Keith, I believe that
4        you have an unredacted copy of the
5        document; is that correct?
6               MR. MIRZA:  I don't think I
7        heard --
8               MS. MACKIN:  I think you're muted.
9               MR. MIRZA:  Keith, I think you're
10       on mute.
11              THE WITNESS:  Yeah, I'm not hearing
12       anything if you-all are saying anything.
13              MR. MIRZA:  Oh.
14              MS. MACKIN:  There you are.
15              MR. MIRZA:  Oh, there you go.
16       There you go.
17              Did you hear Anna's question?
18  BY MR. MIRZA:
19   Q      Do you have the attorneys' eyes only
20  document that was just provided to us?
21   A      There we go.
22   Q      Do you have the attorneys' eyes only
23  document that was just provided to us by the
24  state?
25   A      Do I have that?  No.
```

**hg**

RICHARDSON: BRIAN KEITH INGRAM - 30(B)(6)

Page 80

1           MS. MACKIN:  Keith, it would have
2     been one of the two documents that you
3     reviewed that you provided this morning.
4     I just tried to send you a copy of the
5     redacted version.
6           THE WITNESS:  Is it the one about
7     adding vote history in TEAM?
8           MS. MACKIN:  Yes.
9           THE WITNESS:  Okay.
10          MS. MACKIN:  And I don't
11    know -- did you receive my email just now?
12          I just sent you a copy of the
13    Bates-numbered version that we produced to
14    the plaintiffs.  Since that's the kind
15    we'll be looking at, I thought that might
16    be the most straightforward way to review.
17          THE WITNESS:  I do not have that
18    email.
19          MS. MACKIN:  Okay.
20          THE WITNESS:  I do have the
21    document unredacted.
22          MS. MACKIN:  Okay.  That's fine.
23   BY MR. MIRZA:
24    Q    Okay.  I'd like to add -- let's see the
25   title -- the adding -- well, SOS Bates 35102 to

**hg**

RICHARDSON: BRIAN KEITH INGRAM - 30(B)(6)

Page 81

1    SOS_35124 as Exhibit -- I think we're on 13?

2              (Exhibit 13 marked and designated as

3                attorneys' eyes only.)

4                MS. MACKIN:  And I'll just note

5         that as -- since it was designated

6         attorneys' eyes only, that we would just

7         request that all parties and the reporter

8         not discuss or transmit it via unsecured

9         means.

10               MR. MIRZA:  Sounds good.

11   BY MR. MIRZA:

12   Q      Keith, can you generally -- are you

13   familiar with this document?

14   A      I don't know if I've ever seen it before

15   this morning, but it's a -- it's a training

16   manual, is what we call them, for vote history,

17   for uploading vote history into TEAM.

18   Q      Okay.  And if you can skip to -- I think

19   for you it would just be Page 7 of 18.

20   A      Okay.

21   Q      Can you review this page and kind of

22   describe what -- and, obviously, not the redacted

23   parts of the page, but the unredacted parts of the

24   page -- and describe what it says in relation to

25   ballots by mail?

hg

Page 82

1    A      Well, what this is doing is explaining to

2    counties why they're getting an error message when

3    they try to upload voter history.  So if you do

4    things out of order or if a code appears that

5    shouldn't appear, then the voter history will get

6    rejected.

7    **Q      Okay.  And does this document explain how**

8    **voter history related to mail-in ballots should be**

9    **implemented?**

10   A      Not exactly.  This -- this says that if

11   you're getting error messages, it could be for

12   these reasons.

13   **Q      Okay.  Okay.  And if you could jump to**

14   **Page 11 of 18.  If you could review the -- oh, go**

15   **ahead.**

16   A      Now, this is -- this is more like how you

17   record the vote history for a voter so that it

18   shows up properly and won't cause you an error

19   message.

20   **Q      Okay.  And this information is sent to all**

21   **counties that -- all local election officials or**

22   **specifically county local election officials?**

23   A      No.  It's only for counties.  We don't

24   generally get vote history information from local

25   entities.  And it's -- so far, we haven't been

RICHARDSON: BRIAN KEITH INGRAM - 30(B)(6)

Page 83

```
 1   able to get this responsibility moved to the
 2   county clerk where it belongs, so this goes to the
 3   voter registrar.  For some reason, the voter
 4   registrar is tasked with providing vote history to
 5   TEAM, even though the person that actually does
 6   that work is the early voting clerk, which would
 7   be the county clerk or the EA.
 8              So it's kind of an odd system where
 9   the VR, that doesn't really have anything to do
10   with this, is the one that has to give us the
11   answer because it's tied to a voter registration
12   record.  We've tried the last couple sessions in
13   cleanup bills to fix that, but our cleanup bills
14   have been the victim of circumstances, so we
15   haven't had a cleanup bill in a while.
16   Q     Okay.  And so under the current process,
17   does the early voting clerk usually send this
18   information to the voter registrar, who then
19   up- -- inputs that information into TEAM?
20   A     That's the way it's -- it works in some
21   counties, yeah.
22   Q     Okay.  And when the -- so is the county
23   required to input information about rejected
24   ballots?
25   A     They put it down whether they -- they do
```

RICHARDSON: BRIAN KEITH INGRAM - 30(B)(6)

Page 84

1    use the code "AX" for ballot rejected.  They use

2    the code "AB" for ballot accepted.

3    **Q      Do they have to input why the ballot was**

4    **rejected?**

5    A      They do not.  Sometimes they do, but they

6    don't have to.

7    **Q      Okay.  And if they wanted to, where would**

8    **they generally -- is there, like, a space for them**

9    **to do that where they can type something in, or is**

10   **it more standardized?**

11   A      It says "See the record layout appendix,"

12   so I'm guessing it's in the record layout.

13   **Q      Sorry.  I had trouble hearing that.  What**

14   **did you say?**

15   A      It says "See the record layout appendix,"

16   so I'm assuming it's in the record layout.

17   **Q      Okay.  And so where is the record layout?**

18   **Is that included in --**

19   A      It's in an appendix.

20   **Q      Okay.  Do you know if that's included --**

21   A      I don't have --

22   **Q      -- in the document?**

23   A      I don't have the appendix.

24             MR. MIRZA:  Okay.  Anna, do you

25        know if that is supposed to be part of

RICHARDSON: BRIAN KEITH INGRAM - 30(B)(6)

1        this document?

2               MS. MACKIN:  No, I don't think it

3        is.  I think it would be the appendix to

4        the entire collection of many manuals.

5        And I think based on my reading of this

6        file that that would be something that

7        would be highly sensitive, technical

8        information.  But I will verify -- I mean,

9        I'll verify that with the subject matter

10       experts with my client.

11              MR. MIRZA:  Okay.  Thank you.  And

12       if you can just let us know, that'd be

13       great.

14   BY MR. MIRZA:

15    Q     So since we -- thank you.

16              Since we can't see the document you're

17   referring to, can you generally explain where the

18   county voter registrar would input any additional

19   information they would want to put -- input about

20   how a ballot was rejected?

21    A     They don't do that.  I don't -- I don't

22   know what document you're talking about.  You're

23   talking about the record layout?  I can't see it

24   either.

25    Q     No.  I'm just generally talking about,

Page 86

1    like, the interface they see when they're

2    inputting information into TEAM.

3    A        Yeah, and I don't know.  I would have to

4    ask my voter registration manager.

5    Q        Okay.  Okay.

6                MR. MIRZA:  I think those are all

7          the questions I have.  Pass the witness.

8                MS. MACKIN:  I will reserve any

9          questions and pass the witness.

10               MR. TAWIL:  This is Isaac Tawil for

11         Perla Lara in her capacity as city

12         secretary of City of McAllen.  We'll

13         reserve our questions.

14               MR. MAGEE:  This is Eric Magee on

15         behalf of defendant Trudy Hancock, the

16         elections administrator of Brazos County,

17         in her official capacity.  We'll reserve

18         our questions.

19               THE VIDEOGRAPHER:  Okay.  This

20         concludes the video deposition of Texas

21         Secretary of State rep -- 30(b)(6) rep

22         Keith Ingram.  The time is 4:17 p.m.  We

23         are now off the video record.

24           (Off the record at 4:17 p.m.)

25

RICHARDSON: BRIAN KEITH INGRAM - 30(B)(6)

Page 87

```
 1                 UNITED STATES DISTRICT COURT
                    WESTERN DISTRICT OF TEXAS
 2                     SAN ANTONIO DIVISION

 3   DR. GEORGE RICHARDSON;           )
     ROSALIE WEISFELD; AUSTIN JUSTICE )
 4   COALITION; COALITION OF TEXANS   )
     WITH DISABILITIES; MOVE TEXAS    )
 5   CIVIC FUND; LEAGUE OF WOMEN      )
     VOTERS OF TEXAS; and AMERICAN GI )
 6   FORUM OF TEXAS, INC.,            )
                                      )
 7           Plaintiffs,              )
                                      )Civil Case No.
 8   v.                               )5:19-cv-00963-OLG
                                      )
 9   TEXAS SECRETARY OF STATE; TRUDY  )
     HANCOCK, in her official         )
10   capacity as BRAZOS COUNTY        )
     ELECTIONS ADMINISTRATOR; and     )
11   PERLA LARA, in her official      )
     capacity as CITY OF McALLEN,     )
12   TEXAS, SECRETARY,                )
                                      )
13           Defendants.             )

14

15                 REPORTER'S CERTIFICATION
             REMOTE VIDEOTAPED DEPOSITION OF
                     BRIAN KEITH INGRAM
16                      May 11, 2020

17           I, Rebecca A. Graziano, Certified Shorthand

18      Reporter in and for the State of Texas, hereby

19      certify to the following:

20           That the witness, BRIAN KEITH INGRAM, was

21      duly sworn and that the transcript of the oral

22      deposition is a true record of the testimony given

23      by the witness;

24           I further certify that pursuant to FRCP Rule

25      30(f)(1) that the signature of the deponent:
```

**hg**

1          ____ was requested by the deponent or a

2     party before the completion of the deposition and

3     returned within 30 days from date of receipt of

4     the transcript.  If returned, the attached Changes

5     and Signature Page contains any changes and the

6     reasons therefor.

7          ____ was not requested by the deponent or a

8     party before the completion of the deposition.

9          I further certify that I am neither attorney

10    nor counsel for, related to, nor employed by any

11    of the parties to the action in which this

12    testimony was taken.

13          Further, I am not a relative or employee of

14    any attorney of record in this cause, nor do I

15    have a financial interest in the action.

16          Subscribed and sworn to on this ___ day of

17    _____, 2020.

18

19

20

21    _____
      Rebecca A. Graziano, CSR, RPR, CRR
22    Texas CSR No. 9306
      Expiration Date:  07/31/22

23

24

25

**$**

**$300** 70:18

**0**

**001318** 4:9
**001937** 4:16
**025095** 4:21
**034541** 4:23
**034662** 5:4
**035124** 5:10

**1**

**1** 4:7 10:5,14,18 70:25 73:14,24,25 74:2,8
**10** 4:7,22 58:22,25 59:8,13
**100** 11:18
**100,000** 15:2,16
**10019** 2:12
**11** 1:15,20 5:3 58:23 62:22,23 63:8 82:14
**11th** 6:4
**12** 5:6 71:14,15
**12th** 2:23
**13** 5:8 81:1,2
**1316** 40:14,20 42:20
**1318** 40:20 42:20
**1336** 42:16
**1392** 42:25
**1405** 2:6
**14th** 63:12
**15-minute** 68:8
**15th** 2:18
**18** 81:19 82:14
**18.064** 16:17 28:10 69:22
**19** 16:17 69:19,25 70:8,14

**1950s** 32:18
**1:37** 1:20 6:2,5
**1st** 33:22

**2**

**2** 4:8 40:6,7 42:20 73:15,17,25 74:2,8 75:19
**2-** 70:18
**2.A** 73:25 74:2,8
**2002** 35:8
**2007** 32:23
**2011** 33:7
**2012** 26:22,25 27:8 33:13,23
**2013** 57:3,11,23 77:18
**2013-10** 57:8
**2014** 49:7
**2015** 31:19
**2017** 33:9,15
**2019** 63:12 72:4
**2020** 1:15,20 5:7 6:5 71:21
**212 728-8000** 2:13
**2233** 58:2
**24** 50:20
**250-** 59:7
**25088** 59:5
**25095** 59:6
**28** 25:19

**3**

**3** 4:10 41:6,7 42:16 63:20 73:15
**3(a)** 73:15
**30** 25:17,18
**30(b)(6)** 1:14,16 6:10 10:16 17:1 36:10,24 86:21
**300** 2:18
**31.005** 26:15,20 28:9

**32** 18:12
**34653** 63:23
**34654** 63:5,19
**34658** 68:14
**34662** 68:15
**35102** 80:25
**36** 18:13
**37** 18:13
**3:26** 69:3,4
**3:40** 68:9
**3:45** 69:4,6
**3:58** 78:19,20

**4**

**4** 4:11 42:10,12,13,25
**40** 4:9
**41** 4:10
**42** 4:11
**4398** 50:6
**44** 4:12
**46** 4:13
**47** 4:16
**4:04** 78:20,22
**4:17** 1:20 86:22,24

**5**

**5** 4:12 44:11,12 70:23 73:17,23,24 74:1,3,4
**5-22b** 9:12 65:24 66:24
**5-35** 65:20,23
**50** 4:19
**512 463-2100** 2:19
**512 474-5073** 2:7
**512 482-0701** 2:24
**522** 9:12
**56** 4:21



**59** 4:23

**5:19-cv-00963-olg** 6:7

**5th** 57:10

---

**6**

**6** 4:13 46:9,11

**62** 5:5

---

**7**

**7** 4:14 10:25 47:18,19 81:19

**700,000** 70:17

**71** 5:7

**78501** 3:7

**787** 2:12

**78701** 2:18,24

**78741** 2:6

---

**8**

**8** 4:3,17 50:5,7,14

**81** 5:10

**83rd** 57:23

**86.011(d)** 62:7,12

---

**9**

**9** 4:20 10:25 56:10,12 59:1,2,5

**956 681-3111** 3:7

---

**A**

**AB** 84:2

**ability** 26:14 29:6 49:4

**above-styled** 1:19

**absolutely** 42:9 76:14

**abusing** 26:13

**accept** 15:7,15

**accepted** 20:15 30:9 64:16 84:2

**access** 10:8

**accessed** 71:17

**accomplished** 14:16

**Act** 29:5 35:7

**action** 6:6 22:4 26:8 49:1

**actions** 19:2

**activities** 16:15

**activity** 45:15

**actual** 72:8,13 74:4

**add** 9:18 67:5 80:24

**added** 31:9,13

**adding** 67:6 80:7,25

**additional** 9:4 49:11 85:18

**address** 52:6,10,14,16,17 64:22
68:17

**Adkins** 23:18,20 67:15

**administration** 20:19 23:24 25:4,
7,11

**Administration's** 28:18

**Administrative** 29:5

**administrator** 1:10 2:21 7:14
23:23 41:25 43:24 86:16

**administrator's** 41:20

**adopt** 29:12,13

**advice** 14:19 60:8

**advise** 13:15 14:17,23 16:2 76:3,5

**advising** 12:13

**advisory** 4:20 26:6 56:21,23 57:2,
7,16

**affidavit** 48:24

**afternoon** 56:18

**AG** 22:25 23:1

**AG's** 27:25

**agency** 14:9,10,11 22:6,7 29:4
51:5

**agent** 10:23

**agree** 43:15 64:2,7

**ahead** 24:23 34:16 57:20 60:8

**61:19 74:22 82:15

**aid** 60:11

**allegations** 17:3

**ALLISON** 2:23

**allowed** 47:10 54:16 71:3

**alternative** 14:15

**altogether** 35:16,17

**amend** 56:17

**amended** 29:13

**amendment** 29:10

**America** 35:7

**AMERICAN** 1:5

**amount** 70:22,23

**analysis** 35:19

**Anna** 2:17 7:7 66:3 76:19 78:8,24
84:24

**Anna's** 79:17

**anna.mackin@
texasattorneygeneral.gov** 2:19

**answering** 18:18 45:23 62:2

**answers** 21:23 39:3,7 42:2 75:7

**ANTONIO** 1:2

**apparently** 60:3 77:18

**appearance** 15:14

**appearances** 6:19

**appears** 41:16 44:15 46:16 56:20
59:22 63:17 68:14 71:25 82:4

**appendix** 84:11,15,19,23 85:3

**application** 12:10 17:17 21:6
49:17 51:21 52:1,19,23 53:5,7,13,
20,23,25 60:22 64:13,16

**applications** 18:2 49:24 55:9 61:7

**applied** 22:21 62:15

**appropriated** 70:22,24

**appropriation** 72:1

**approval** 43:17 77:17

**approve** 55:15 77:20

**approved** 77:19,25



**area** 41:25

**assist** 14:16,23 76:2,4

**assist-and-advise** 14:11 22:7

**Assistance** 21:1

**assisting** 12:12

**assuming** 84:16

**astevenson@mcallen.net** 3:8

**attached** 39:4,5

**attachment** 5:3 38:22

**attachments** 39:13

**attention** 50:19 58:1 63:19,22

**attorney** 2:17 7:8 22:11 26:15,23 51:11

**ATTORNEY'S** 3:6

**attorneys** 8:24

**attorneys'** 5:10 78:8,25 79:19,22 81:3,6

**Austin** 1:3 2:6,18,24 3:5 6:13

**authenticate** 74:22

**authentication** 75:6

**authorities** 13:21 26:8

**authority** 13:12 15:1 26:19,20 27:11 29:1 61:5,11 73:18

**Avenue** 2:12 3:6

**AX** 84:1

---

**B**

**back** 8:7 15:23 21:19 31:22,25 32:22 33:3 60:13 68:8 69:6,10 78:14,21

**backed** 45:21

**ballot** 4:15,18 13:9,25 14:3,4 15:6, 7,14,15 17:10,15,23 18:2,23 19:1, 2,20 20:14 22:15 30:8,18 43:10,12 45:12,16,22,25 48:3,11 49:2,9 50:16 51:22 52:19 53:7,14,23,25 54:5,12,17,21,22 55:2,14,15,18 60:9,12,17 61:13,16 64:11,13,18 68:1 77:10,24 84:1,2,3 85:20

**ballot-by-mail** 18:14 33:6 49:24

**ballots** 9:17 11:23 12:1 13:1,12,22 14:13,15 17:14 19:19 20:4,11,17 21:4,7 22:9,15 29:18 30:3 31:1 43:13 45:13,19 48:25 55:5,13 60:4 81:25 82:8 83:24

**ballots-by-mail** 49:23

**based** 73:16 85:5

**basically** 21:13 70:15

**BASS** 2:23

**batch** 70:2,4,7

**Bates** 4:8,10,11,12,13,15,19,20,22 5:4,7,9 38:12 39:9 40:3,10,12,13, 19 41:1 42:11 46:10 47:17,25 57:14 59:11 66:8 80:25

**Bates-numbered** 80:13

**Becky** 6:16

**began** 31:8

**begin** 9:21

**beginning** 12:17

**begins** 41:18

**begun** 27:17 28:5

**behalf** 7:5,12,16,19,24 86:15

**belongs** 83:2

**Beva** 25:4,5,6

**biggest** 70:16

**bill** 58:2 83:15

**bills** 83:13

**bit** 16:14 34:2

**blank** 13:25 14:13 64:18

**board** 4:15,18 15:6,14 17:15,23 18:2 19:1,3,11,20 41:19,24 43:10, 12 45:16,23,25 46:4 47:5 48:3,11 49:2 50:16,24 55:14 61:16

**boards** 45:12

**book** 72:17 73:3

**books** 71:9

**Brazos** 1:10 2:21 7:13 86:16

**break** 9:9 68:8 69:10 78:13

**Brian** 1:14,17 8:3,10

**briefly** 17:23

**Brigham** 63:16

**bring** 43:16

**broken** 33:10,14

**budget** 5:6 71:11,20 72:5,8,13,16, 20,25 75:24 76:4

**build** 38:5,7

**Busted** 67:13

---

**C**

**call** 22:2 55:3,4,9,10 64:22 71:20 81:16

**called** 64:24

**calls** 14:11

**cancel** 27:16 28:5

**candidate** 31:11

**capacity** 1:10,11 2:21 3:3 7:10,15 86:11,17

**Caroline** 57:3 59:16 60:11,21 77:13

**Caroline's** 60:15

**carrier** 49:23 52:24 54:25 55:2,3, 10,14 60:6,16,24 61:6 62:13,16 64:18

**case** 1:7 17:3

**catch** 18:19 29:24

**categories** 76:4

**caveat** 61:23 74:24

**CEO** 18:13

**cert** 9:17

**certainty** 11:18

**cetera** 43:16

**Chain** 4:8,22 5:3

**chairs** 17:20,21

**chance** 43:4 47:21 63:25

**change** 37:19

**changed** 33:7,8

**Chapter** 16:17 69:19,25 70:8,14



**charges** 51:12,13

**chat** 62:22

**chief** 12:7

**choose** 22:3 53:22 56:4,5

**choppy** 18:19

**Christina** 23:18,20 24:3,6 67:14 76:25

**circumstances** 83:14

**city** 1:11 2:12 3:3,6 7:17 17:24 19:11 48:4 50:17 51:6,7,8,9,11 86:11,12

**CIVIC** 1:5

**civil** 1:24 2:5 6:6,12 7:2,5 10:16

**cleanup** 83:13,15

**clear** 40:22

**clerk** 13:15 19:13 43:19,23 44:4 45:14 52:1,2,4,5 53:12 54:3 60:10 64:17 83:2,6,7,17

**clerk's** 52:16

**clerks** 45:9,11 54:16 60:23 61:5,11 77:23

**client** 85:10

**close** 46:3

**COALITION** 1:4

**code** 12:11,12 16:2,4,5 26:16 42:4 44:4 45:3,22,24 46:24 61:14 62:2,7 69:23 70:15 82:4 84:1,2

**Coleman** 27:23

**collect** 19:18,24 20:9,10,13,17,25 30:6 31:2 51:5

**collected** 20:4 21:2 30:11 38:3

**collecting** 21:19

**collection** 85:4

**combine** 17:16

**combined** 17:18

**comfortable** 34:1

**comment** 29:11,12

**Commission** 21:1

**common** 61:20,21 70:6

**communicate** 25:22 54:4,16

**communication** 55:20

**communications** 67:19

**comparison** 58:12

**complete** 33:17

**completely** 35:24

**compliance** 16:15

**complies** 45:3

**comply** 42:3 44:4 46:23 62:14 70:7

**comptroller** 36:2,4

**computer** 9:20 32:21 71:8

**concludes** 86:20

**concur** 43:13

**conduct** 12:13 18:23

**conducted** 14:25 15:2,16

**confidential** 5:5 62:24 68:20

**confidentiality** 68:17

**confirm** 48:24 58:12,14

**conflict** 47:3,7

**connected** 38:22

**consolidate** 27:22

**consolidation** 27:14

**constitutes** 36:17

**consultants** 35:13,19,22

**contact** 29:17 52:10,18,22 53:4 61:12,14 62:15

**contacted** 60:18

**contemplated** 31:12

**content** 76:7

**context** 75:23 76:8

**control** 60:3

**conversation** 16:16 76:25

**convicted** 51:12

**copy** 71:10 72:18 79:4 80:4,12

**corporate** 10:23

**correct** 8:19 11:11,24 13:1,4,9

**22:12,13 23:3,7,8,14,15 24:21 29:18 30:23 31:14 35:1 43:19 46:17 48:18 49:18 55:22 56:21 57:8,9 59:25 61:6 64:13,14 79:5**

**correspondence** 59:22 60:2 63:4,14

**counsel** 6:12,18

**count** 40:19

**counted** 30:4,19

**counties** 18:25 19:3,9 21:8,9,15, 18,20 33:7,12 39:8 40:1 43:2 44:16 69:15,20 70:1,11 71:2 82:2,21,23 83:21

**county** 1:10 2:21 7:13 14:11 15:1, 3,16 17:13,21 18:10 21:23,25 27:1, 7 28:7 43:23 70:10,16,17,18 71:6, 12 77:14 82:22 83:2,7,22 85:18 86:16

**County's** 77:5,8

**couple** 23:9 73:7 83:12

**court** 1:1 6:15

**covered** 62:16

**Cox** 2:4 7:4

**create** 35:23 47:10

**created** 37:23 38:1,2

**CRR** 1:22

**Crystal** 50:17 51:7,8

**CSO** 18:11,12

**CSR** 1:21

**current** 83:16

**custodian** 46:5

**cut** 12:17

---

**D**

**Dan** 23:17,21 24:25

**data** 20:25 21:2 30:17 32:25 33:1, 3,17

**database** 30:13 31:9 35:10

**databases** 32:24

**date** 72:4



**day** 58:8

**days** 17:12 35:7

**deadline** 13:13,23 14:3

**Dear** 64:20 65:3,5,8,20,21 66:5,15 67:11,15,22,23 76:17 77:4

**Death** 28:18

**Debbie** 12:7

**deceased** 22:21 28:17

**December** 18:1 72:4

**decide** 9:19 35:3 53:16 55:11

**decided** 35:12

**decision** 35:17,20 48:10,18,19

**defect** 52:23 53:19,23 54:1 61:21

**defective** 53:5 60:22,23

**defects** 61:6,15

**defendant** 2:15,20 3:3 7:9,12 10:15 86:15

**Defendants** 1:13

**define** 37:15

**Del** 48:4

**deleted** 37:21

**deliver** 45:21

**Democratic** 17:22

**department** 24:1,2,12,21 25:15 35:25

**departments** 24:9,20

**depends** 32:1 70:12

**depo** 33:22

**deponent** 6:9 7:25

**deposition** 1:14,16 4:7 6:11 8:22 9:1,2 10:3,14,22 11:9,11,22 23:5 49:14 67:19 69:14 73:11 77:12 86:20

**depositions** 8:12

**deputy** 23:6

**describe** 81:22,24

**describing** 30:22 60:21 61:4

**DESCRIPTION** 4:6 5:2

**designate** 29:15,17 68:19

**designated** 10:2 62:23 81:2,5

**desired** 37:19

**detailed** 33:14

**determination** 19:20 50:2

**determinations** 20:4

**determine** 15:6,15 35:14,23 73:8

**determining** 34:11

**developed** 35:11

**differently** 29:15 61:10

**direct** 23:18 45:25 50:19 58:1 63:18,22

**directly** 21:16 22:25 23:13 24:5,18 25:22

**director** 8:18 9:9,11 23:20 24:18

**DISABILITIES** 1:4

**discoverable** 67:20

**discovery** 66:6

**discuss** 81:8

**discussed** 78:4

**disqualify** 49:9

**district** 1:1 19:12 27:13,15,21,23 60:4

**districts** 27:19

**division** 1:2 24:16 25:18

**document** 5:5 9:20 10:10,13,21 11:3 38:10 40:13,16 46:13 47:16 48:2 50:9 51:17,19 56:7,9,15,19 58:19 62:20 65:17 66:22 70:21 71:24 72:9,10,12,24 73:23 74:4,17, 23 75:4,5,6,24 78:8 79:1,5,20,23 80:21 81:13 82:7 84:22 85:1,16,22

**documents** 8:23 9:1,4,6,10,24 36:4 49:20 67:18 80:2

**Dolling** 2:5

**domestic** 68:18

**draft** 29:9,10

**drafted** 76:10

**drafting** 57:4

**Drive** 2:6

**duck** 28:14

**due** 19:19

**duly** 1:18 8:2,4

**duties** 11:22

---

**E**

e.magee@allison-bass.com 2:25

**EA** 42:1 83:7

**EAC** 21:12

**earlier** 61:8 65:23,24 69:13 77:11 78:4

**early** 4:14,17 15:5,13 17:15 18:2 19:2,12,20 27:16 28:5 33:10,11,15 43:18 44:3 45:9,11,14,15 48:3,11 50:16 51:25 52:2,3,5,16 53:12 54:3,15 60:9,22 61:5,11 64:17 77:23 83:6,17

**EAVS** 20:20,22,24 21:3,21 22:1

**Eder** 25:8

**educated** 11:10

**election** 4:20 12:7,11,12,13 13:8, 24 14:20 15:16 16:1,2,4,5,7,22 17:13 18:10 19:10,15 20:10,11,18 21:1 22:11 23:21,23 24:14,24 25:3, 7,10 26:2,13,16 27:10,14,16 28:5, 15 29:19 30:16 31:10,11 35:9 41:15,19,24 42:4 43:24 44:4,16,21 45:3,21,24 46:17,24 47:9 48:4 56:21 57:7,22 59:24 60:12 61:14 62:2,7 69:23 70:15 71:2 75:21 76:5 82:21,22

**elections** 1:10 2:21 7:14 8:18 12:14 14:25 18:22 25:15,18,22 26:5,8 75:20 76:2,3 86:16

**electric** 7:14

**electronic** 35:9 51:22

**email** 4:8,22 5:3 38:15,20,25 39:5 52:2,3,6,10,14,16,17,19 53:5,22 54:18 55:21 59:16,22 60:15 63:3,8 67:14,21 77:11 80:11,18

**emails** 40:19



**emergency** 14:15

**end** 38:20 40:15 47:12 50:12

**ending** 63:4

**ends** 15:14 47:17 56:11 59:12

**enforcement** 14:9 22:6 51:5

**engage** 56:4,5

**entered** 32:6

**entire** 85:4

**entities** 82:25

**entity** 19:10

**envelope** 52:24 54:25 55:2 60:16 61:6 64:18,19

**envelope's** 62:13

**envelopes** 49:23 55:4,10,14 60:6, 24 62:16

**equipment** 71:8

**Eric** 2:22 7:11 42:15 86:14

**error** 82:2,11,18

**et al** 6:8

**even-numbered** 70:23

**evidence** 49:4,5

**examination** 4:3 8:5 28:16,21,23

**exceeds** 36:10,23

**Excel** 21:18

**Excels** 21:19

**exception** 26:12

**exhibit** 4:7,8,10,11,12,13,14,17, 20,22 5:3,6,8 10:5,14,18 40:6,7,19 41:6,7 42:10,12,13,16,20,25 44:11, 12 46:9,11 47:18,19 50:4,5,7,14 56:10,12 58:21,23 59:8,13 62:22, 23 63:8 71:14,15 81:1,2

**EXHIBITS** 4:5 5:1

**exist** 58:8

**existing** 29:10 35:15

**experts** 85:10

**explain** 9:14 10:20 28:13 29:3 38:24 53:10 59:21 60:1 69:17 82:7 85:17

**explaining** 47:6 82:1

**explanation** 47:6

**explore** 74:20

**exploring** 34:1

**extensive** 35:18

**extensively** 17:23

**extent** 16:25 34:20 36:9,11,23 74:16,19

**eyes** 5:10 78:9,25 79:19,22 81:3,6

---

**F**

**fails** 21:25

**familiar** 10:10 20:18,22 39:13,17 56:16 61:5 71:22 75:14 81:13

**Farr** 2:11 7:21,23

**faster** 39:16

**federal** 1:23 10:16 17:16 21:6 35:8

**figure** 73:7 75:3

**file** 28:18 49:20 85:6

**fill** 21:8,15

**filled** 25:9,12,20

**filling** 21:10 43:24

**final** 43:16,17 71:25

**finalize** 78:15

**find** 66:1

**fine** 46:7 68:11,23 74:25 80:22

**firm** 7:20,23

**Fiscal** 5:6 71:21

**fix** 60:19 61:12,15 83:13

**fixed** 53:16 61:21

**fixes** 38:6

**Flanagan** 3:11 6:14

**Floor** 3:6

**focused** 34:3

**follow** 29:5 46:1

**forgot** 24:13

**form** 9:12 13:16 14:21 15:8,18

16:9 20:5 21:15,17 26:9 29:20 31:3 34:18 37:24 42:5 43:21 44:5 45:4 47:1 48:13 52:12,20 54:6,23 55:23 60:25 64:4 65:19 78:2

**forms** 13:1 46:7 66:13 77:17

**formula** 70:14

**FORUM** 1:6

**FPCA** 18:3

**FPCAS** 21:6

**full** 8:8

**fully** 62:14

**FUND** 1:5

**funds** 23:21 24:24 69:15,19 71:1,3

**future** 37:9 67:6

---

**G**

**Gallagher** 2:11 7:21,23

**general** 2:17 7:8 8:11 22:11 26:15, 23 73:17 75:9

**generally** 10:20 12:5 16:21 17:14 31:6 37:4 38:24 39:19 49:20 53:12 55:18 59:21 70:9 72:11 76:6 77:22 81:12 82:24 84:8 85:17,25

**generate** 31:14,15

**Genevieve** 63:8 64:3

**Genevieve's** 63:23

**George** 1:3 6:8

**Geppert** 57:4 59:16 77:13

**GI** 1:5

**Gill** 63:9,11

**give** 24:17 41:3 43:4 47:21 57:18, 21 59:15,17 83:10

**Glotzer** 23:17,21 24:25

**Goal** 73:17 75:19

**good** 43:7 47:8 48:18 66:19 67:5 68:7 75:10 81:10

**governor** 23:11

**Graziano** 1:21 6:16

**great** 59:10 78:5 85:13



**guess** 25:14 29:15 54:10 61:9

**guessing** 84:12

**guidance** 13:7 47:4

**guidelines** 8:11,16

---

**H**

**Hancock** 1:9 2:20 7:13 86:15

**Hani** 2:4 7:1 33:20 40:9

**hani@texascivilrightsproject. org** 2:8

**happen** 55:21

**happened** 28:6,13

**harassing** 50:24

**Harris** 26:25 27:7 28:7 70:17

**Hart** 23:17,22 25:3

**HB1** 73:1

**hear** 6:20,23 42:8 48:15 62:10 79:17

**heard** 79:7

**hearing** 79:11 84:13

**helped** 76:4

**helpful** 60:11,16

**helps** 76:4

**HG** 6:17

**highly** 85:7

**history** 5:8 20:14,16 30:6,7 33:5,6, 8,10,13,14,18 80:7 81:16,17 82:3, 5,8,17,24 83:4

**holding** 19:10

**honestly** 73:5

**hoping** 75:1,2

**house** 58:2 72:14

**Houston** 3:6

**hung** 75:25

**hurt** 49:10

---

**I**

**ID** 64:20

**idea** 15:21 43:20 47:8 76:9

**ideas** 77:6

**identifying** 40:9

**imitate** 77:21

**implement** 16:6

**implemented** 82:9

**implementing** 15:5

**improper** 49:1

**improve** 37:10

**improvement** 60:3

**in-person** 17:11

**include** 18:1 30:7 32:16 77:2

**included** 49:22 65:3 84:18,20

**includes** 54:20

**including** 18:3 25:19 45:15 57:5

**incorrect** 76:11

**Independent** 27:23

**INDEX** 4:1

**indicted** 51:12

**individual** 31:24

**individual's** 68:21

**information** 19:14,16,18 20:13 21:10 30:6,11 31:21,25 32:7,12,16, 17,18 35:25 49:11 51:6 54:21 65:13 68:16 77:15 82:20,24 83:18, 19,23 85:8,19 86:2

**Ingram** 1:14,17 6:11 8:3,7,10 66:21 86:22

**input** 83:23 84:3 85:18,19

**inputs** 83:19

**inputting** 86:2

**inspector** 4:14,17 39:19,22 48:2 50:15

**inspectors** 18:25 19:5

**instance** 1:18

**instruction** 9:17,19

**instructions** 9:16 13:3 64:19 66:22 77:3

**integrity** 75:20

**interest** 68:21

**interface** 86:1

**interfere** 42:1

**interference** 27:5

**internet** 9:20

**interpretation** 12:10

**intervene** 26:15

**involved** 22:22 26:23 35:22 36:2 57:1

**involvement** 28:1

**Isaac** 3:5 7:16 86:10

**ISD** 27:20

**issue** 27:24 28:7,20 34:8 37:11,16, 17,21,22,25 38:1,6

**issued** 57:10

**itawil@mcallen.net** 3:8

**Item** 50:20

**iterate** 76:13

---

**J**

**January** 33:22

**Joanna** 2:11 7:22

**job** 14:23 25:23 60:5

**jointly** 15:3

**jsuriani@willkie.com** 2:14

**judge** 48:11

**judges** 46:6

**jump** 10:24 39:9 40:3 41:1 48:6 82:13

**JUSTICE** 1:3

---

**K**

**Kalar** 2:10 7:19,20



RICHARDSON: BRIAN KEITH INGRAM - 30(B)(6)

Index: Keith..Mirza

**Keith** 1:14,17 6:10 8:3,10 34:3,19 36:12 79:1,3,9 80:1 81:12 86:22

**Kellison** 25:5

**kind** 17:7 18:4,19 34:2 69:19 75:3 80:14 81:21 83:8

**Kristi** 23:17,22 25:3

---

**L**

**lame** 28:14

**language** 76:16 77:3

**Lara** 1:11 3:3 7:17 86:11

**large** 70:10

**law** 7:20,23 33:7,8 47:7 57:22

**laws** 12:11

**lawyers** 24:3 57:5

**laymen-friendly** 47:11

**layout** 39:17 84:11,12,15,16,17 85:23

**lead** 25:4,8

**LEAGUE** 1:5

**led** 35:17,20

**left** 69:9

**legal** 9:9,11 23:20,25 24:2,12,16, 21

**legislative** 57:23 71:25

**leti@ghcwcid2.com** 59:17

**letter** 64:20 65:4,5,8,20,21 66:5,16 67:12,16,22,24 76:18,22 77:4

**life** 31:8

**Lily** 25:7

**limits** 52:9,17

**link** 10:6,8 66:14 67:13 70:20 71:13

**list** 12:5 16:21 22:14 23:16,19 24:8 28:18

**listed** 11:3 46:22

**Litigation** 6:17

**LLP** 2:11,23

**load** 58:18

**local** 13:8,12,21,24 14:20 16:1,7, 22 18:22 19:15 20:9 22:11 25:22 26:8 27:10 29:19 41:15 44:16,21 46:17 47:9 59:23 71:2 82:21,22,24

**lock** 46:3

**long** 17:12 31:16 53:5 77:22,25

**longer** 46:23

**lost** 28:15

**lunch** 9:8

---

**M**

**machine** 1:23

**machines** 71:10

**Mackin** 2:17 7:7 13:16 14:21 15:8, 18 16:9,24 20:5 26:9 29:20 31:3 33:20,25 34:13,17 36:8,22 37:24 40:8,21 42:5 43:21 44:5 45:4 47:1 48:13 52:12,20 54:6,23 55:23 57:17,20 60:25 64:4 66:11,17 68:11,25 73:10 74:12,15,19 78:2, 10,16 79:3,8,14 80:1,8,10,19,22 81:4 85:2 86:8

**made** 19:5 27:6 35:8 51:14

**Magee** 2:22,23 7:11 42:14,15,19, 23 86:14

**mail** 9:16 13:4 17:14 18:3 20:15 21:7 30:8 33:11,15 43:13 51:22 52:19 53:7,14,24,25 55:13 60:4 64:13 65:1,7 77:10 81:25

**mail-in** 9:17 11:23 12:1 13:1,9,12, 22 14:4 15:7,15 17:10 18:23 20:4, 11 21:3 22:9,14,15 29:18 30:3,18 31:1 45:12,19 54:4,12,17,21,22 55:5,18 64:11 77:24 82:8

**mailing** 14:12

**maintain** 12:9 75:20

**make** 29:6 37:11 50:2 55:19 61:2

**making** 64:3

**manage** 45:12,17

**management** 23:22 24:24 31:10, 11 37:17

**manager** 9:8 23:21,23 86:4

**manual** 5:8 45:25 46:1 81:16

**manuals** 47:12 85:4

**mark** 10:13 40:6 41:5 42:11 44:10 46:9 47:18 50:6,13 59:3 71:14

**marked** 10:18 40:7 41:7 42:13 44:12 46:11 47:19 50:7 56:12 58:25 59:5,13 62:23 71:15 81:2

**Master** 28:18

**materials** 14:3 64:15 67:8 68:1 77:5,9,23,24

**matter** 6:7 17:4 85:9

**Maygun** 3:11 6:14

**mbarber83@gmail.com** 63:11

**Mcallen** 1:11 3:3,6,7 7:17 86:12

**means** 31:23 81:9

**measures** 16:6 51:2,4,9

**meeting** 4:15,18 27:15 28:4 48:3 50:16

**meets** 41:19,24

**members** 43:11,12

**mention** 65:9 66:25 67:9 68:2 76:21

**mentioned** 15:25 23:5,9 24:19,20 26:4,11 34:24 39:5 45:2 50:14 65:24 66:21 67:9 69:13 75:23 77:4

**mentioning** 74:3

**mentions** 65:21 67:25

**message** 82:2,19

**messages** 82:11

**met** 8:23

**Michelle** 77:12

**middle** 41:18 43:10

**million** 70:23,25

**mind** 40:9

**minutes** 78:14

**Mirza** 2:4 4:3 6:20,23 7:1 8:6 10:19 12:24 13:19 14:24 15:11,22 16:10 17:6 20:8 26:17 27:9 29:23 31:5 33:24 34:6,9,14,16,23 36:18 37:2 38:8 40:11,24,25 41:10 42:7,18,22, 24 44:2,7,13 45:6 46:12 47:2,20



48:14 50:8 52:15 53:1 54:9 55:7
56:2,13 57:25 58:20 59:2,7,10,14
61:3 62:19,25 64:5 66:3,15,18,20
68:6,23 69:7 71:16 73:12,21 74:18,
25 75:12 78:5,11,23 79:6,9,13,15,
18 80:23 81:10,11 84:24 85:11,14
86:6

**mismatch** 22:19

**missed** 16:11

**missing** 25:13

**mistake** 60:19

**mistaken** 40:16

**modification** 36:17

**modifications** 36:5,15 37:4,8,12

**modified** 58:9,10

**modify** 34:12,22 77:23

**modules** 31:10

**moments** 73:7

**money** 16:18 69:20,25 70:8 71:12

**monitor** 13:14 18:22,24 19:3

**Montopolis** 2:6

**morning** 8:12 9:2,7 11:21 26:11
56:18 80:3 81:15

**move** 1:4 73:22

**moved** 83:1

**multiple** 24:20

**mute** 66:10 79:10

**muted** 79:8

**N**

**narrow** 17:7

**needed** 35:15 46:1

**night** 31:11

**nightly** 70:7

**noncompliance** 16:18 28:10
69:23 70:6

**noncompliant** 69:15

**note** 33:21 74:24 81:4

**notice** 4:7 10:14,22 17:1 33:22

36:24 53:15 64:20,21,23 68:13

**notices** 28:16,21,23

**Novice** 27:20

**number** 4:6 5:2 6:6 19:18,24 20:9,
10,17 24:9,17 38:6,12,13 39:10
40:4 41:2 42:12 46:10 50:20 57:8
59:5,11 63:20 65:20 66:8 70:12,13

**numbered** 1:19

**numbers** 25:16 74:5

**O**

**object** 16:25 34:17 36:9 74:15

**objection** 13:16 14:21 15:8,18
16:9 20:5 26:9 29:20 31:3 34:13
36:22 37:24 42:5 43:21 44:5 45:4
47:1 48:13 52:12,20 54:6,23 55:23
60:25 64:4 78:2

**obligations** 14:8

**observations** 19:6,7

**observe** 19:1,2 51:5

**obtain** 12:9

**occasion** 26:2

**odd** 83:8

**odd-numbered** 70:24

**off-numbered** 17:20

**office** 2:17 3:6 7:8 23:13 29:17
41:20,25 44:1 59:23 63:15 77:18

**officer** 12:7

**official** 1:9,11 2:21 3:3 7:10,15
13:25 14:20 18:11 19:15 26:13
27:11 59:24 86:17

**officials** 12:13 13:8 16:1,7,23
17:13 18:22 20:10 22:11 25:23
26:3 29:19 41:15 44:16,21 46:17
47:9 60:12 71:3 76:5 82:21,22

**offline** 69:25

**oldest** 32:2,5

**online** 21:14,17 73:1,2

**open** 43:12 46:3 63:1

**opened** 67:18

**Operating** 5:6 71:20

**operation** 12:10

**opinion** 67:20

**order** 82:4

**original** 31:12 33:1

**overnight** 70:3,4

**oversee** 14:17 16:1 75:21 76:1,2,
7,10

**oversight** 14:10 16:6,14,20

**P**

**p.m.** 1:20 6:2,5 69:3,4,6 78:19,20,
22 86:22,24

**packet** 65:2

**pages** 10:25 39:12 68:20

**paper** 72:24

**paperback** 72:17 73:3

**paragraph** 41:18,22 43:9 46:23
48:7,23

**paralegal** 24:3

**Parker** 77:12

**part** 20:15 25:23 30:12 38:4 55:5
84:25

**participated** 68:16

**parties** 81:7

**parts** 81:23

**party** 17:22

**pass** 86:7,9

**past** 26:18 49:23

**PDF** 73:23 74:4,5

**people** 15:16 23:10,13,16,25 24:9,
18,25 25:21

**percent** 11:18

**Perfect** 78:17

**perfectly** 46:1,7

**period** 29:12

**Perla** 1:11 3:3 7:17 86:11

**person** 12:18 29:18 33:10,15



45:23 55:21 58:13,15 60:5 83:5

**personal** 15:14 68:15

**persons** 22:20 28:17

**pertains** 32:9

**phone** 55:21

**phrase** 61:9

**place** 34:10,11

**plaintiff** 7:24

**plaintiffs** 1:7,18 2:3 7:3,6,20 10:17 80:14

**plaintiffs'** 6:12

**planned** 36:7,21 37:8

**point** 28:14 64:2 67:15,22

**political** 17:20,21,25 63:16

**poll** 50:23,24 71:9

**population** 15:1

**position** 29:22,25

**positions** 25:9,11,19

**possibly** 64:20,21

**post** 29:11

**postcard** 17:17 21:6

**pre-hava** 35:7

**prefer** 47:13

**prepare** 8:21 56:25

**prepared** 11:2,6,16,19 56:23

**preparing** 57:1

**prepped** 34:4

**prescribe** 15:4,13

**prescribes** 12:25

**present** 33:23 42:1

**presentation** 17:14,17 18:15

**president** 19:12

**presuming** 55:25

**previous** 23:4 32:22

**primary** 28:15 57:4

**printed** 72:17

**prior** 11:11 33:13

**privacy** 68:22

**problem** 14:12 37:18 43:15 53:13 56:6

**procedure** 1:24 10:16 65:10 67:1, 10,25 68:3 76:22

**procedures** 14:15 15:4,12 16:19 17:24 29:5 34:10,11

**PROCEEDINGS** 6:1

**process** 13:9 17:10 18:23 21:12, 14 22:23 29:7 35:14,16,23 36:1 37:20 46:22 47:3 54:18 60:22 64:10 70:2,7 75:21 83:16

**produced** 1:17 68:14 80:13

**professor** 63:15,20

**program** 68:17

**project** 2:5 6:13 7:2,5 37:17

**proper** 48:11 53:8 55:22,24,25

**properly** 82:18

**proposal** 31:12

**proposed** 36:3,14

**protecting** 68:21

**provide** 9:24 10:5 14:19 26:7 52:6 53:6 66:14 77:14

**provided** 16:22 66:5 79:20,23 80:3

**providing** 83:4

**provisions** 1:24 45:24

**publicly** 66:12

**pull** 38:10 51:17,19 56:7 73:14

**purports** 32:10

**purpose** 57:16

**purposes** 71:5

**pursuant** 1:23 10:15

**put** 21:11 52:7 60:5 76:10 83:25 85:19

**Q**

**question** 13:18 14:1 15:10,20 17:8 18:18 32:4,14 34:7 41:9 42:15

43:14 45:22,23 61:1 62:3 63:20 64:6 65:16 73:13,16 75:9 79:17

**questions** 8:15 11:17 14:17 39:7 42:2 45:20 51:20 57:15 69:9,11 75:1,4 78:6,12,25 86:7,9,13,18

**quick** 42:14 67:15 73:15

**quickly** 58:18

**quote** 47:12

**R**

**range** 5:7 40:10,12,14,20

**read** 41:22 43:9 48:9 50:22 63:25 67:12 73:2

**reading** 77:11 85:5

**ready** 56:19

**reason** 11:13 19:22 20:1 26:1 70:6 83:3

**reasons** 82:12

**Rebecca** 1:21

**receive** 60:23 76:17 80:11

**received** 62:13 77:5

**recess** 69:4 78:20

**recognize** 41:14 63:13

**reconcile** 46:3

**record** 1:25 6:2,4,19 7:1 8:9 30:25 32:6,9 62:1 63:7 68:9 69:2,6 74:24 78:15,19,22 82:17 83:12 84:11,12, 15,16,17 85:23 86:23,24

**records** 32:3 46:6

**redacted** 80:5 81:22

**redevelop** 35:13

**redeveloped** 31:18 33:2 35:12,24

**referenced** 43:18

**referring** 85:17

**refused** 28:15

**regard** 20:24 21:3 26:5 29:18

**Register** 29:11

**registrar** 27:1,7 28:7 83:3,4,18 85:18



**registrars** 71:4

**registration** 9:8 16:15,19 23:24 25:8 28:11 30:13,14,15 31:9 35:10 49:17,25 69:20,21 70:2 71:5,11 83:11 86:4

**registrations** 69:21 70:13

**regular** 75:23

**reject** 53:14 58:14

**rejected** 19:19 20:11,15,17 22:9, 10,20 30:4,9,18,19 82:6 83:23 84:1,4 85:20

**rejection** 19:22 20:2 53:15

**rejections** 22:15,19,25 50:25

**related** 8:15 11:23 13:1 17:9 30:17 31:1 51:13 71:10 73:17 75:5 82:8

**relates** 17:2 36:11

**relation** 81:24

**relevant** 74:21

**remedial** 26:7

**remember** 8:11 27:18

**remind** 67:17

**REMOTE** 1:14,16

**remotely** 1:21 40:23

**rep** 86:21

**repeat** 27:4 62:10

**rephrase** 32:13 45:10

**replace** 35:16,17

**replies** 45:21

**report** 4:14,17 19:8,9 23:6,14 24:5 48:3 50:16

**reported** 1:22

**reporter** 6:15 12:16,22 27:2 58:24 59:4,9 62:9 81:7

**reporting** 31:11

**reports** 23:18 31:14,15 39:20,22

**represent** 32:10

**representative** 11:15

**representing** 2:3,15,20 3:3 6:17 7:3,9

**Republican** 17:21

**request** 72:1,8 81:7

**requested** 6:11 14:4 30:8

**require** 16:3,5 33:7,9

**required** 13:13,14,22 14:3,19 15:13 19:6 22:10 23:5 33:16,19 52:1,5 64:21 83:23

**requirement** 35:8,11 49:5 54:11

**requirements** 52:9

**requires** 64:24

**reserve** 86:8,13,17

**residence** 64:25 65:1

**resolved** 37:20

**resources** 36:1

**respond** 21:20 22:1,4 24:18

**responds** 45:24

**response** 35:11 51:3,9

**responses** 4:10,11,12,13 8:14 41:15 43:2 44:16,20,24 46:17 66:6

**responsibilities** 12:2,6 20:23

**responsibility** 12:9 83:1

**responsible** 45:14

**restate** 23:10

**restriction** 52:21 54:2,11

**restrictions** 54:3,8

**result** 27:24 28:19

**results** 30:3

**returned** 61:13

**returns** 60:17

**review** 8:25 9:4,20 10:25 36:3 38:14 39:19,24 41:4 43:4 44:14,23 45:12,18 46:13,19 47:13,21 48:7 49:5,7 50:9 58:4 59:18 63:3 73:6 74:10 78:7 80:16 81:21 82:14

**reviewed** 8:23 56:19,24 57:5 80:3

**reviewing** 41:5,11

**Richardson** 1:3 6:8

**rights** 2:5 6:13 7:2,5 26:14 65:6

**Rio** 48:4

**role** 26:5 31:7

**rolled** 31:19

**rollout** 31:20

**ROSALIE** 1:3

**rough** 70:9

**roughly** 70:9

**row** 44:23,24 46:19,23

**RPR** 1:21

**rule** 10:16 29:9,10,13 58:7

**rulemaking** 29:1,7

**rules** 1:23 29:6

**run-** 57:19

**rundown** 57:22

**runoff** 48:4

**Ryan** 2:4 7:4

**ryan@texascivilrightsproject. org** 2:7

**S**

**Samuel** 2:10 7:20

**SAN** 1:2

**sanction** 28:10

**scenario** 13:20 14:7

**scenarios** 14:14

**school** 17:24 19:11 27:13,15,19, 21,23

**science** 63:16

**scope** 17:1,8 36:10,23

**scratch** 54:13

**screen** 38:11 56:9 58:17

**scroll** 38:16 39:14 43:6 46:14 47:22,23 50:10 57:13

**secrecy** 64:19

**secretary** 1:9,12 2:15 3:4 6:9,10 7:9,18 8:19 10:2,15,23 11:23,25 12:2,20,25 13:6,14 14:18 16:23 18:21 19:11 23:6,11 26:4,6,19 28:25 29:8,14,16 30:1,2 51:2,6



52:7 59:23 63:14 65:6 69:14 72:19, 25 78:1 86:12,21

**section**  21:6 24:16 58:4 72:19

**security**  24:14 28:17

**seek**  27:25

**seminar**  17:11,12,16,19,25 18:1,6, 7,8,11

**seminars**  18:13

**senate**  72:14

**send**  13:12,21,25 14:2 18:25 19:4, 6,9 21:10,11 22:18,19 28:16 51:6 53:15 62:20,21 70:3,20 71:13 77:10,17 80:4 83:17

**sending**  19:14 21:18

**sends**  23:1

**sense**  61:2

**sensitive**  85:7

**sentence**  48:22 58:11 60:15

**separate**  41:25

**September**  31:19 57:10

**Services**  6:17

**session**  57:23,24

**sessions**  83:12

**Seventh**  2:12

**share**  38:11 56:8

**sharing**  51:16 58:16 62:6

**shelf**  72:18

**short**  69:10 78:13

**shorter/more**  47:11

**shorthand**  1:23

**shows**  82:18

**sic**  47:25 59:17

**sign**  46:6

**signature**  19:19,21 22:18 43:14, 15 45:18 49:16,21 50:2,25 55:16 58:12 60:18 61:13,17 65:9 66:25 67:10 68:3 76:22

**signatures**  48:24 49:6,8,11,14,16, 25 58:13,14

**signed**  56:24

**similarly**  53:18 54:12 55:12 56:1 61:25

**single**  18:15 76:3

**sir**  63:17

**sitting**  74:23

**situated**  53:18 54:12 55:12 56:1 61:25

**situation**  13:15 14:19 69:18

**situations**  69:16,17

**skalar@willkie.com**  2:13

**skip**  40:12 81:18

**slowly**  39:14

**small**  70:10

**smallest**  70:18

**Social**  28:17

**sort**  14:12 37:18 38:3 61:15

**SOS**  11:15 14:8 15:3,12,25 16:3,6 22:22 23:1 34:11 35:3,21 47:4,12 51:2 65:12 66:13 80:25

**SOS's**  20:23 73:17

**SOS_001316**  4:8 38:13

**SOS_001336**  4:10 40:4 41:2

**SOS_00137**  47:25

**SOS_001392**  4:11 42:12

**SOS_001408**  4:12 44:10

**SOS_001411**  4:13 46:10

**SOS_001935**  4:16

**SOS_001937**  48:6

**SOS_004398**  4:19

**SOS_025088**  4:20 56:11

**SOS_025095**  56:11

**SOS_034540**  4:22

**SOS_034653**  5:4

**SOS_035102**  5:9

**SOS_1935**  47:17

**SOS_1937**  47:17

**SOS_25089**  57:14

**SOS_34540**  59:11

**SOS_34541**  59:12

**SOS_34653**  63:4

**SOS_35124**  81:1

**SOS_4398**  50:5

**sound**  42:3

**Sounds**  66:18 81:10

**space**  84:8

**speak**  11:14 26:2

**speaking**  70:10 77:23

**specific**  15:12 18:8 34:8 54:22 55:19 58:7 69:16,18 70:14 73:12 75:17

**specifically**  17:7,9 33:5 54:21 66:16 82:22

**spending**  71:6,7

**spoke**  8:12 11:22

**spreadsheets**  21:18

**standardized**  84:10

**started**  32:22

**starting**  40:14 63:4

**starts**  38:12 43:10 47:16 50:5 56:10 59:10

**state**  1:9,22 2:16 6:9,10,18,25 7:10 8:8,19 10:2,15,23 11:23 12:1,3,8, 21,25 13:7,14 14:18 16:23 18:21 22:5 23:6 26:6,19 28:25 29:4,8,14, 16 30:1,2 31:16 35:9 51:2 52:7 65:17 69:14 72:16 78:1 79:24 86:21

**State's**  26:5 59:23 63:14 72:19,25

**stated**  1:24 47:10

**statement**  50:22 51:3,10,14 64:25 65:1

**STATES**  1:1

**statute**  22:17

**statutory**  35:9 49:4

**Stevenson**  3:5

**stink**  67:13



**stop** 39:15 51:16 58:16 62:6

**stored** 30:19 31:21,25 32:3

**straightforward** 80:16

**Street** 2:18,23

**strong-match** 28:16

**strongest** 76:14

**stuff** 37:10

**subdivisions** 17:25

**subject** 17:3 85:9

**submission** 51:23

**submit** 19:8,9 33:8 37:19 53:7 64:10,12

**submits** 52:18 53:15,25

**submitted** 33:12,14 40:1 51:22

**subsection** 62:17

**substantial** 16:18 69:23

**suggested** 77:2

**summer** 17:12

**supplant** 71:6

**supplement** 66:9

**supposed** 15:3 21:24 22:16,18,19 46:5 84:25

**Suriani** 2:11 7:22

**survey** 4:10,11,12,13 20:19,22 21:3,21 22:1 39:2,7 41:14 43:1,25 44:15,21 46:16

**surveys** 39:25

**suspense** 64:23

**sworn** 1:18 8:1,2,4

**system** 21:16 30:10,20,22,23,25 32:15,16,21,23 33:4 34:12,22,25 35:4 36:6,19,20 37:3,18 70:2 83:8

**system's** 31:6

**T**

**talk** 14:13 17:22 18:2,3,6 64:9

**talked** 9:7,9 11:25 33:22 49:13 61:8

**talking** 15:21 17:4,9 18:8,9,10 32:12 48:16 62:8 85:22,23,25

**talks** 65:6

**target** 27:12

**tasked** 83:4

**Tawil** 3:5 7:16 86:10

**team** 5:9 25:4 30:19,23,25 31:6,14, 15,17,18,21,25 32:3,15,16,22 33:1, 2 34:12,22,25 35:10,12,16,24 36:6, 19,20 37:3,10 80:7 81:17 83:5,19 86:2

**technical** 85:7

**TECHNICIAN** 3:10

**telling** 77:1

**temps** 71:8

**ten** 24:15

**term** 55:18

**terms** 76:14

**testified** 8:4

**testify** 10:3 11:2,6

**testifying** 11:9

**TEXANS** 1:4

**Texas** 1:1,4,5,6,9,12,22 2:5,6,15, 18,24 3:3,7 6:9,10,12 7:2,5,8,9 10:15 12:8 16:2,3,5 29:11 42:4 45:3 46:24 86:20

**that'd** 85:12

**thing** 20:17 48:21 64:12 67:5 73:2

**things** 33:18 36:15 82:4

**thinking** 77:19

**thought** 26:24 67:2 80:15

**thread** 38:15,25

**threat** 27:6

**threatened** 26:24,25 28:9

**throwing** 55:6

**tied** 83:11

**time** 6:5 21:14,17 36:16 37:11 38:1,2 41:4 59:18 62:13 68:7 69:2, 6 78:19,22 86:22

**times** 26:18

**title** 80:25

**titles** 23:19

**today** 6:4,16 17:5 56:19

**today's** 16:16

**topic** 16:16 73:11,13

**topics** 10:3 11:3,5,11,14 33:21 36:10,12 74:21

**total** 25:17

**track** 30:2,5 37:17,21,25 38:6

**tracks** 37:11,16,23 38:1

**trainers** 24:15

**training** 5:8 13:7 81:15

**trainings** 16:22

**transcript** 6:19

**transmit** 20:25 81:8

**transmitted** 32:25 33:2

**Travis** 77:5,8,14

**treat** 52:24 53:16,17,21 55:11,25 62:18

**treated** 53:21 54:13

**trouble** 84:13

**Trudy** 1:9 2:20 7:12 86:15

**true** 51:18,21,25

**turn** 73:23

**TVRS** 32:23 33:1,4 35:6

**type** 84:9

**types** 22:8,14

**U**

**Uh-huh** 33:24 74:18

**ultimately** 23:11 27:25

**understand** 10:1 11:8 13:18 15:10 37:1

**understanding** 15:20

**unfilled** 25:10,11

**uniformity** 12:9 75:20



RICHARDSON: BRIAN KEITH INGRAM - 30(B)(6)

Index: uniformly..zachary@texascivilri

**uniformly** 62:16

**UNITED** 1:1

**University** 63:16

**unredacted** 79:4 80:21 81:23

**unsecured** 81:8

**up-** 83:19

**update** 35:4 36:19 64:22

**update/upgrade** 35:15

**updated** 34:25 72:11

**updates** 36:20 37:4,7

**upload** 82:3

**uploading** 81:17

**utilize** 60:23

---

**V**

**verification** 45:18 50:2 65:9 67:1, 10,25 68:3 76:22

**verify** 85:8,9

**version** 31:18 32:22 34:25 35:24 47:11,12 65:23 67:7 72:12 80:5,13

**versus** 6:8

**victim** 68:18 83:14

**video** 6:4,11 86:20,23

**videoconference** 2:4,5,10,11,17, 22 3:5,10

**view** 79:2

**violence** 68:19

**vote** 13:4 20:14 33:8,9,12,14,18 35:7 60:12 80:7 81:16,17 82:17,24 83:4

**voter** 9:8 16:15,18 19:21 23:24 25:8 27:7 28:10 30:6,7,12,14,15 31:8,24 32:1,12,15,16,17 33:5,17 35:10 49:6,8,10,16,21,24 52:11,18, 22,25 53:4,15,17,21,22 54:4 60:17, 18 61:12,15,24 62:15 64:10,16,19, 20,23 65:4,5,7,8,20,21 66:5,15,23 67:9,11,15,22,23 68:2 69:20 70:1, 12 71:4,5,10 76:18 77:4,24,25 82:3,5,8,17 83:3,11,18 85:18 86:4

**voter's** 20:16 26:13 53:20 60:6

**voters** 1:5 13:3,13,22 14:4 20:13 53:6,18 54:12,16,17 55:3,12 56:1, 5,6 61:24 77:10

**voters'** 54:20,22

**voting** 4:14,17 5:8 15:5,6,13 17:15 18:3 19:2,12,20 20:19 27:16 28:5 33:15 43:19 44:3 45:9,11,12,14,15 48:3,11 50:16 52:1,2,4,5,16 53:12 54:3,15 60:9,10,22 61:5,11 64:17 65:7 77:23 83:6,17

**VR** 83:9

---

**W**

**wanted** 9:18 27:15 73:13,16 84:7

**watchers** 50:23,24

**water** 19:11 60:3

**website** 13:4 39:2 52:6,7 66:13

**weird** 72:4

**WEISFELD** 1:3

**West** 2:18,23

**WESTERN** 1:1

**Willkie** 2:11 7:21,23

**withheld** 69:22

**withhold** 16:17 69:15,24

**WOMEN** 1:5

**word** 75:25 76:10,11

**work** 24:25 25:6,18 29:7 83:6

**worked** 35:14

**working** 25:5

**works** 25:14 34:6 44:1 68:9 83:20

**writing** 67:14

**wrong** 16:5

---

**Y**

**year** 5:6 17:20 18:11,12 31:10,13 70:13,23,24 71:21

**years** 36:7,21 49:12,15

**York** 2:12

**you-all** 79:12

**Young** 63:16

---

**Z**

**Zachary** 2:5

**zachary@ texascivilrightsproject.org** 2:8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| DR. GEORGE RICHARDSON, ROSALIE WEISFELD, AUSTIN JUSTICE COALITION, COALITION OF TEXANS WITH DISABILITIES, MOVE TEXAS CIVIC FUND, LEAGUE OF WOMEN VOTERS OF TEXAS, and AMERICAN GI FORUM OF TEXAS, INC., | § § § § § § § § | |
| *Plaintiffs* | § § | |
| v. | § § | Civil Case No. 5:19-cv-00963 |
| TEXAS SECRETARY OF STATE, TRUDY HANCOCK, in her official capacity as BRAZOS COUNTY ELECTIONS ADMINISTRATOR, and PERLA LARA in her official capacity as CITY OF MCALLEN, TEXAS SECRETARY, | § § § § § § § | |
| *Defendants*. | § § | |

## NOTICE OF DEPOSITION OF DEFENDANT TEXAS SECRETARY OF STATE PURSUANT TO FED. R. CIV. P. 30(b)(6) BY PLAINTIFFS

**TO:**    Defendant Texas Secretary of State, by and through her attorney of record, Anna Mackin, Office of the Attorney General, 300 West 15th Street, Austin, Texas 78701.

**PLEASE TAKE NOTICE** that, pursuant to Rule 30(b)(6) of the Federal Rules of Civil

Procedure, Plaintiffs Dr. George Richardson, Rosalie Weisfeld, Austin Justice Coalition, Coalition

of Texans with Disabilities, MOVE Texas Civic Fund, and League of Women Voters of Texas,

through counsel, will take the deposition by oral examination of Defendant Texas Secretary of

State by video conference on May 11, 2020, at 1:30 p.m. Central Time, or immediately after the

deposition of Keith Ingram, which is currently scheduled for May 11, 2020 at 9:30 a.m. Central

Time, or at such alternative date, time, and place as mutually agreed upon by counsel for the

1

parties. This deposition shall continue from day to day until completed. The oral deposition will be transcribed and recorded by a court reporter and videographer designated by Plaintiffs. Plaintiffs reserve the right to utilize this videotaped deposition at trial in lieu of live testimony, or in addition to live testimony, and/or for any purpose permitted under the Federal Rules of Civil Procedure and Federal Rules of Evidence.

**PLEASE TAKE FURTHER NOTICE** that in accordance with Rule 30(b)(6) of the Federal Rules of Civil Procedure, Defendant Texas Secretary of State is required to designate one or more officers, directors, managing agents or other persons who will testify on her behalf with respect to each of the topics set forth in the attached Schedule A. In addition, Plaintiffs request that Defendant Texas Secretary of State provide counsel for Plaintiffs with written notice, at least five days in advance of the deposition, of the name and title of each witness who will testify for Defendant Texas Secretary of State, and the topic(s) set forth in the attached Schedule A for as to which each such witness will testify. Defendant Texas Secretary of State is also commanded to produce at the deposition or before, all documents in response to the subpoena *duces tecum* on Schedule B.

Dated: April 17, 2020                             Respectfully submitted,


                                                  /s/ *Hani Mirza*

                                                  **TEXAS CIVIL RIGHTS PROJECT**

                                                  Mimi M.D. Marziani
                                                  Texas Bar No. 24091906
                                                  mimi@texascivilrightsproject.org
                                                  Rebecca Harrison Stevens
                                                  Texas Bar No. 24065381
                                                  beth@texascivilrightsproject.org
                                                  Hani Mirza
                                                  Texas Bar No. 24083512
                                                  hani@texascivilrightsproject.org

                                                  2

Ryan V. Cox
Texas Bar No. 24074087
ryan@texascivilrightsproject.org
Zachary D. Dolling
Texas Bar No. 24105809
zachary@texascivilrightsproject.org

1405 Montopolis Drive
Austin, Texas 78741
512-474-5073 (Telephone)
512-474-0726 (Facsimile)

**WILLKIE FARR & GALLAGHER LLP**

Richard Mancino (NY Bar No. 1852797)
Samuel Kalar (NY Bar No. 5360995)
JoAnna Suriani (NY Bar No. 5706395)

787 Seventh Avenue
New York, New York 10019
Telephone: (212) 728-8000
Facsimile: (212) 728-8111
Email: rmancino@willkie.com
        skalar@willkie.com
        jsuriani@willkie.com

-AND-

Jennifer J. Hardy (TX Bar No. 24096068)
Denis A. Fallon (TX Bar No. 24059731)
Garrett Johnston (TX Bar No. 24087812)
Audra White (TX Bar No. 24098608)

600 Travis Street, Suite 2100
Houston, Texas 77002
Telephone: (713) 510-1700
Facsimile: (713) 510-1799
Email: jhardy2@willkie.com
        afallon@willkie.com
        gjohnston@willkie.com
        awhite@willkie.com

***ATTORNEYS FOR PLAINTIFFS***

3

**SCHEDULE A**

**DEFINITIONS**

1.　"Defendant," "Secretary of State," or "you" (and the possessive forms of each) shall mean the Texas Secretary of State, and where applicable, her predecessors and successors in their official capacities as Texas Secretary of State, including the current and former attorneys, agents, trustees, investigators, representatives, employees, officers, contractors, and consultants of any of them.

2.　"Early Voting Clerk" means the local election official charged under the Texas Election Code with conducting the early voting in each election, holding the same duties and authority with respect to early voting as a presiding election judge has with respect to regular voting except as otherwise provided by Title 7 of the Texas Election Code.

3.　"Election Judge" means the local election official who is in charge of and responsible for the management and conduct of the election at the polling place of the election precinct that the judge serves pursuant to the Texas Election Code.

4.　"Early Voting Ballot Board" or "EVBB" shall refer to the entity or entities created and operating pursuant to Tex. Elec. Code § 87.001.

5.　"Signature Verification Committee" or "SVC" shall refer to the entity or entities created and operating pursuant to Tex. Elec. Code § 87.027.

6.　"Local election officials" means any official responsible for the management or operation of any aspect elections in any political subdivision of the state of Texas under the Texas Election Code, including their offices, agents, employees, and representatives. For the avoidance of doubt, "local election officials" includes, without limitation, Early Voting

4

Clerks, Election Judges, and officials serving on an Early Voting Ballot Board or Signature Verification Committee.

7.    "Brazos County" shall refer to Brazos County, Texas, and all of its offices and agencies, including the offices or entities of Early Voting Clerk, the Early Voting Ballot Board, and any Signature Verification Committee.

8.    "City of McAllen" shall refer to the City of McAllen, Texas, and all of its offices and agencies, including the offices or entities of Early Voting Clerk, the Early Voting Ballot Board, and any Signature Verification Committee.

9.    "Plaintiffs" shall refer to Dr. George Richardson, Rosalie Weisfeld, the Austin Justice Coalition, the Coalition of Texans with Disabilities, MOVE Texas Civic Fund, League of Women Voters of Texas, and American GI Forum, Inc.

10.   "Mail-in ballot" means a ballot cast by mail during an election.

11.   "Mail-in ballot application" or "application" means any type of application to vote by mail offered to a voter under the Texas Election Code.

12.   "Signature comparison procedure" shall refer to process of comparing signatures used by local election officials pursuant to the Texas Election Code.

13.   "Notice of rejection" shall refer to any communication sent to a mail-in ballot voter pursuant to the Texas Election Code.

14.   "Mail-in ballot process" or "mail-in ballot procedure" means any aspect or step, individually or in the aggregate, of the process or procedure by which a voter in Texas obtains and then utilizes a mail-in ballot to cast their vote in any election, including but not limited to any aspect or step of the process or procedure by which local election officials decide whether to accept or reject a mail-in ballot application or a mail-in ballot, any

5

signature comparison procedure utilized in those determinations, or any notice of rejection or other communication sent to any mail-in ballot voter.

15.    Use of the term "person" includes any individual, independent contractor, public or private corporation, partnership, unincorporated association, incorporated association, government agency or entity, or any other entity, its officers, directors, partners, employees, agents, and representatives.

16.    The term "including" shall be construed broadly, and shall encompass "including but not limited to" and "including without limitation."

17.    The terms "and," "or" and "and/or" shall be construed disjunctively or conjunctively as necessary in order to bring within the scope of the request all responses which otherwise might be construed to be outside its scope.

18.    The terms "any" and "all" shall be read to give the broadest possible scope to the request as permitted under the Federal Rules of Civil Procedure.

19.    A verb used in any tense shall encompass the verb in all other tenses.

20.    A word in singular form shall encompass the plural form and vice versa.

21.    Use of the terms "document," "documents," "documentation," "written materials" or "printed matter" mean any recorded form of writing or communication whether it be by paper, film, microfilm, microfiche, computer print-out, reports, records, lists, memoranda, e-mail, correspondence, communications, telegrams, schedules, photographs, drawings, charts and other forms of tangible and electronic information preservation, including, but not limited to:

       correspondence, letter, memoranda, electronic mail, telefax, message, note, report, cable, telegram, photograph, film, tape, and all other written communications of

6

every kind and character; note, recording disk, or any other record of oral communication; microfilm; worksheet; schedule; exhibit; demonstrative aid; letter; contract; agreement; diagrams; logs; summaries; printouts; graphs, charts; floppy disks, CDs or DVDs, compilations, tables; publications; manuals; minutes; minute books, diaries; calendars; bank statements; lists; data tapes, audio tapes, video tapes; spreadsheets and any other data compilations from which information can be obtained and translated.

22. "Complaint" shall mean the Complaint filed by Plaintiffs in Civil Action 5:19-cv- 00963 on or about August 7, 2019.

## **DEPOSITION TOPICS**

1. The duties and responsibilities of the Secretary of State, and/or her representatives, employees or agents concerning implementation, administration, coordination, oversight, and compliance with the Texas Election Code or any other state laws or regulations as they relate to the mail-in ballot process from January 1, 2012, to the present. This includes but is not limited to any training, monitoring, or oversight of local election officials in their implementation of the mail-in ballot process, including their procedures for accepting or rejecting mail-in ballots.

2. The organization and structure of the Secretary of State during the period from January 1, 2012 to the present, including but not limited to:

    a. lines of authority to and from all Secretary of State personnel who have responsibility for any aspect of the oversight of local election officials' implementations of the mail-in ballot process; and

7

b.      lines of authority to and from all Secretary of State personnel who communicate with local election officials (including their offices, agents, employees, and representatives) regarding the mail-in ballot process.

3.      The Secretary of State's policies, practices, and procedures related to the mail-in ballot process, during the period from January 1, 2012 to the present, including but not limited to:

a.      oversight mechanisms by which the Secretary of State ensures local election officials' compliance with the Texas Election Code or other laws, including but not limited to how the Secretary of State evaluates local election officials with respect to their implementation of the mail-in ballot process;

b.      how the Secretary of State determines whether any remedial action will be taken if it is discovered that its policies, opinions, or decisions with respect to the mail-in ballot process have not been followed;

c.      communications with local election officials regarding the implementation of the mail-in ballot process, including but not limited to any training or guidance provided to local election officials;

d.      how documentation or information from local election officials related to the mail-in ballot process is transmitted to the Secretary of State and/or any other appropriate election officials; and

e.      any action(s) taken or contemplated by the Secretary of State regarding the implementation of the mail-in ballot process pursuant to its rulemaking and regulatory authority, including but not limited to the issuance of advisory opinions and regulations.

8

4.    Whether the Secretary of State currently designates, or has ever designated, a mail-in ballot overseer, monitor, coordinator and/or contact person who is responsible for overseeing, monitoring, or coordinating local election officials' mail-in ballot procedures, and the name and contact information for all such persons, if any, during the period from January 1, 2012 to the present.

5.    All policies, practices, and procedures related to any computer system utilized by the Secretary of State to track documentation, data, or information relating to the mail-in ballot process, including applications for and the use of mail-in ballots, including any communications or documentation from local election officials relating to mail-in ballot applications, mail-in ballots, or the mail-in ballot process, including but not limited to:

    a.    the system's role, function, and functionalities, including available data fields and report generating capabilities;

    b.    the system's computer structures and operating program;

    c.    the data recorded in the system and the system's ability to produce reports of particular data;

    d.    the procedures for determining whether to modify the system;

    e.    past and current modifications (including the substance of the modifications and cost);

    f.    the system's capability for further modifications;

    g.    modifications to the system currently planned for the next four years, including deadlines and any timelines of goals; and

    h.    the system's ability to accept mail-in ballot related information from local election officials.

9

## **SCHEDULE B**

Definitions are incorporated by reference from Schedule A.

Documents to be produced:

1.      All documents reviewed in preparation for your deposition.

10

## **CERTIFICATE OF SERVICE**

By my signature below, I certify that a true and correct copy of the foregoing was served

on each Defendant's counsel of record on April 17, 2020 via email.

Dated: April 17, 2020

/s/ *Hani Mirza*

11

| | |
|---|---|
| **From:** | Webmaster </O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=777BE69F852345AE9CC3115688346D29-WEBMASTER> |
| **To:** | Ashley Fischer; Elizabeth Kirkwood |
| **Sent:** | 8/26/2014 11:47:18 AM |
| **Subject:** | RE: New Early Voting Ballot Board Survey |
| **Attachments:** | survey-082614.xls; SurveySummary_08262014.xls |

Hi Ashley,

The new reports are ready for your review. On a related note, please be sure to select the "question" tabs at the bottom of the worksheet on the second report to view all of the results.

Thank you,
Pepe De La Garza
Web Projects Manager
Office of the Texas Secretary of State
512-463-5637
www.sos.state.tx.us
Follow the Texas Secretary of State on Twitter
VoteTexas.gov: Make Your Mark on Texas
Like VoteTexas.gov on Facebook
Follow VoteTexas.gov on Twitter

---

**From:** Ashley Fischer
**Sent:** Tuesday, August 26, 2014 10:56 AM
**To:** Webmaster; Elizabeth Kirkwood
**Subject:** RE: New Early Voting Ballot Board Survey

Thank you!

**Ashley Fischer**

Legal Director – Elections Division
Office of the Texas Secretary of State
1019 Brazos Street | Rudder Building, 2nd Floor | Austin, Texas 78701
Telephone: 512.475.2821
afischer@sos.texas.gov | www.sos.state.tx.us
Elections Related Questions: elections@sos.texas.gov
**For Voter Related Information, please visit:**



*The information contained in this email is intended to provide advice and assistance in election matters per §31.004 of the Texas Election Code. It is not intended to serve as a legal opinion for any matter. Please review the law yourself, and consult with an attorney when your legal rights are involved.*

---

**From:** Webmaster
**Sent:** Tuesday, August 26, 2014 9:09 AM
**To:** Ashley Fischer; Elizabeth Kirkwood
**Subject:** RE: New Early Voting Ballot Board Survey

Hi Ashley,

SOS_001316

You got it. I will run the reports today.

Thank you,
Pepe De La Garza
Web Projects Manager
Office of the Texas Secretary of State
512-463-5637
**www.sos.state.tx.us**
Follow the Texas Secretary of State on Twitter
**VoteTexas.gov**: Make Your Mark on Texas
Like VoteTexas.gov on Facebook
Follow VoteTexas.gov on Twitter

---

**From:** Ashley Fischer
**Sent:** Tuesday, August 26, 2014 7:53 AM
**To:** Webmaster; Elizabeth Kirkwood
**Subject:** RE: New Early Voting Ballot Board Survey

Yes-it may be decommissioned, but we would need one last report to just make sure we got all of the data.

Ashley Fischer
Legal Director – Elections Division
Office of the Texas Secretary of State
1019 Brazos Street | Rudder Building, 2nd Floor | Austin, Texas 78701
Telephone: 512.475.2821
afischer@sos.texas.gov | www.sos.state.tx.us
Elections Related Questions: elections@sos.texas.gov
For Voter Related Information, please visit:



VOTETEXAS.GOV
POWERED BY THE TEXAS SECRETARY OF STATE

*The information contained in this email is intended to provide advice and assistance in election matters per §31.004 of the Texas Election Code.  It is not intended to serve as a legal opinion for any matter.  Please review the law yourself, and consult with an attorney when your legal rights are involved.*

---

**From:** Webmaster
**Sent:** Monday, August 25, 2014 6:48 PM
**To:** Ashley Fischer; Elizabeth Kirkwood
**Subject:** RE: New Early Voting Ballot Board Survey

Hi Ashley,

Can the Early Voting Ballot Board Survey be decommissioned? Do you need any final reports?

Thank you,
Pepe De La Garza
Web Projects Manager
Office of the Texas Secretary of State
512-463-5637
**www.sos.state.tx.us**
Follow the Texas Secretary of State on Twitter
**VoteTexas.gov**: Make Your Mark on Texas
Like VoteTexas.gov on Facebook

SOS_001317

Case 5:19-cv-00963-OLG   Document 84   Filed 07/30/20   Page 337 of 2561

**From:** Pepe De La Garza
**Sent:** Tuesday, July 29, 2014 10:53 AM
**To:** Ashley Fischer; Elizabeth Kirkwood
**Cc:** Christina Adkins
**Subject:** RE: EVBB Survey Results

Hi Ashley,

Attached are the latest results for the survey. Please do not hesitate to contact me if you need anything else?

Thank you,

Pepe De La Garza
Web Projects Manager

**From:** Pepe De La Garza
**Sent:** Tuesday, July 29, 2014 9:39 AM
**To:** Ashley Fischer; Elizabeth Kirkwood
**Cc:** Christina Adkins
**Subject:** RE: EVBB Survey Results

Hi Ashley,

You got it. I'll send them later this morning. Thanks!

Thank you,

Pepe De La Garza
Web Projects Manager

**From:** Ashley Fischer
**Sent:** Tuesday, July 29, 2014 9:38 AM
**To:** Pepe De La Garza; Elizabeth Kirkwood
**Cc:** Christina Adkins
**Subject:** EVBB Survey Results

Pepe and Elizabeth,

Do you mind sending Christina and I the results?

We a few outstanding counties that may participate, and we'll likely ask for the results one more time.

Thanks,

Ashley

**Ashley Fischer**
Legal Director – Elections Division

**See attachment**

SOS_001318

| | 2. In elections other than the general election for state and county officers (where the "list procedure" must be used) how does the presiding judge select the members of the ballot board? | 3. When the early voting ballot board meets, who is present in the room other than the members of the EVBB and what is their purpose for being in the room? | 4. Where are ballots, envelopes, and other materials stored after the ballot board has stopped its work for the day? What safeguards are taken to ensure security of the ballots? |
|---|---|---|---|
| **e. May Uniform Election Date:** | Open-Ended Response | Open-Ended Response | Open-Ended Response |
| NA | With approval of party chairs. | No one allowed, except poll watchers. | Remains with the Early Voting Clerk in the Election room where ballots are counted. |
| 3 | Appointed by the Commissioners Court | The board meets in the Election Administrator office in a separate area of office. The EA is present but does not interfere. The EA answers questions only if asked... | Ballots are locked in E-Scan after scanning and other materials are in a double locked box. |
| 4 | YES | | |

SOS_001336

No

Yes          The ballot board members
             who open the mail ballots
             always concur with one
             another if they have a
             question about a signature
             or other problem. If they
             don't agree on a signature
             etc. then they bring it to me
             for the final approval.

Early Voting Clerk          No

                            No                          N/A

                            No

                            No

SOS_001392

| | | | |
|---|---|---|---|
| Using the Election Code and SOS EVBB handbook; and require to attend early voting in-person training classes. | provide meeting location; provide assistance in answering any questions as needed; assist in packing up the election records to return to the custodian; to resolve Any issues with ballots delivery to central count; any issues with provisional ballot resolution | will the number of ballot received in a very large county, EVBB should be able to convene earlier and process even if not counting manually | Very Large (Over 250,000) |
| On the Job Training ;) | We serve as a "General Manager" of the Ballot Board.  All questions come through us and we deliver all replies backed by the election code.  I walk around with the EVBB manual and direct them as needed.  We open, reconcile, close & lock everything for the Board.  We do have the judges sign off on EVERYTHING. | As an EA office, we are also the General Custodian of Election Records.  We "RUN" every position behind the scenes...puppetmasters :) ....nothing comes in or goes out without our staff knowing and approving. | Small (25,000-50,000) |
| They EVVB all received the last materials that are provided by the SOS. They are also giving a detailed paper showing the steps to recreate a ballot based on the lastest information provided by the SOS ( created in house from the SOS information) and using suggested practices from our vendor that services our tally equipment. | I answer questions as needed and provide them forms and information when requested. | | Medium (50,000 - 100,000) |
| | | | Very Small (Under 25,000) |
| | | | Very Small (Under 25,000) |

SOS_001408

| | | |
|---|---|---|
| We give them the SOS manual. Then we created a shorter/ more layman-friendly version for their use. We go over procedures from both manuals and help them organize their room. | Our EVBB tends to make mistakes. When they reject ballots, we ask them to explain the reason to us. Frequently, we explain the law and they change their minds. Often we pull additional signatures for their comparison. We have received complaint letters in the past from voters whose ballots were rejected when they should have been accepted. We are left to "clean up the mess." While we don't tell them what to do, we do advise them as to whether their decision fits within the law. | Large (100,000 - 200,000) |
| Our Judge and Alternate Judge have been doing this for over 30 years.  I review any changes in law or procedure with them and highlight the sections in the manual. | | Very Small (Under 25,000) |
| Election School | | Very Small (Under 25,000) |
| training sessions | demos, dvd if needed, q & a, one on one | Very Small (Under 25,000) |
| We give the the training book and go over all paper work. | Be there if they may have any questions. | Large (100,000 - 200,000) |
| They are trained along with the judges and clerks. | We only talk prior to and election. | Very Small (Under 25,000) |

SOS_001411

**Inspector Report for Early Voting Ballot Board Meeting**

Political Subdivision Inspected: _____City of Del Rio Run-Off_____
(Name of City, School, County, or other)

Date of Election: _____June 21, 2014_____

Inspector: _____ _____Meridith Debus_____

Type of Voting: Paper __X___ Optical Scan _____

Answer all questions Y, N, Not/Observed, or Not/Applicable, unless otherwise indicated.

**PAPERWORK:** Did officials have…

| | |
|---|---|
| 1. Early voting poll list?  (Y or N) | |
| 2.  Jacket Envelopes containing applications, carrier envelopes, and other accompanying information?  (Y or N) | Y |
| 3. List of Declared Write-In Candidates, if any.  (Y, N or N/A) | N/A |
| 4a. Envelope #1?  (Y or N) | Y |
| 4b. Envelope #2?  (Y or N) | Y |
| 4c. Envelope #3?  (Y or N) | Y |
| 4d. Envelope #4?  (Y or N) | Y |
| **MISCELLANEOUS:** | |
| 5.  How many members did the early voting ballot board consist of? (Provide number) | 6 |
| 6.  When were the early voting ballot materials delivered to the early voting ballot board? (Provide time/estimation) | 6/21 8 a.m. |
| 7.  Did the early voting ballot board/signature verification committee meet prior to election day to qualify the early voting ballots?  (i.e., to compare the signature on the application for a ballot by mail with the signature on the carrier envelope.)  (Y or N) | N |
| 8.  In counties with over 100,000 population using electronic voting- did the EVBB begin counting ballots <u>before</u> election day?  (Y, N or N/A) | N/A |
| **PROCEDURES:** | |
| 9.  Were the early voting ballot boxes delivered with two locks and a numbered wire seal? (Y, N or N/A, if ballot boxes were not used) | Y |
| 10. If the ballots were not pre-qualified the day/night before meeting, did the ballot board members compare signatures properly?  (Y, N or N/A) | Y |
| 11. Did the ballot board review each application to ensure it was a valid application?  (Y or N) | Y |

12. If #10 or #11 is no, what were the procedures:  (Explain)

SOS_001935

**Inspector Report for Early Voting Ballot Board Meeting, page 2**

Political Subdivision Inspected: _____City of Del Rio Run-Off_____
(Name of City, School, County, or other)

Date of Election: _____June 21, 2014_____

Inspector: _____ _____Meridith Debus_____

Type of Voting: Paper __X___   Optical Scan _____

Answer all questions Y, N, Not/Observed, or Not/Applicable, unless otherwise indicated.

| | |
|---|---|
| 13. Once the ballots were qualified, did the ballot board open the carrier envelopes, remove the ballot envelopes, and then deposit the unopened ballot envelopes into a ballot box? (Y or N) | N |
| 14. If #13 is no, what procedure was used?  (Please explain) | see below |
| 15. Once qualified, was the voter's name entered on the early voting poll list?  (Y or N) | Y |
| 16. Were the applications, carrier envelopes, and accompanying papers put back in the voter's jacket envelope?  (Y or N) | Y |
| 17. Did the ballot board make sure there were at least 10 ballots in the ballot box before removing ballots from the ballot envelope and COUNTING the ballots? If not, please explain below.  (Y or N) | see below |
| 18. Were the completed Affidavits and Statements of Residence placed in Envelope Number 4 or another container designated for the county voter registrar?  (Y, N or N/A) | N/A |
| 19. Were ballots rejected if the carrier envelopes were marked"Statement Enclosed" and did not contain the "Statement of Residence"?  (Y, N or N/A) | N/A |
| 20. If the statement of residence was not found in the carrier envelope, did the board open the ballot envelope at that time to confirm it was not enclosed with the ballot? (Y or N) | N/O |
| 21. Were ballots rejected if the list of registered voters had "ID" marked next to the voter's name and no copy of ID (or no completed Notice to Voter Who Must Provide ID) was enclosed?  (Y or N) | N/O |
| 22. If no ID was enclosed in the carrier envelope, did the board open the ballot envelope at that time to confirm a copy of ID or completed Notice was not enclosed with the ballot? (Y or N) | N/O |
| 23. Were poll watchers present?  (Y or N) ) If not wearing a nametag please write in comment section number 25. | Y |
| 24. Were there any problems with poll watchers? If yes, explain in the comments section of this report or attach another page. | N |
| 25. Provide specific information concerning any unusual activity personally observed by you. | |

No. 14: The ballots were removed from the carrier envelopes, then removed from the ballot

envelopes, sorted by precinct, and then counted. The unopened ballot envelopes were not deposited

into a ballot box prior to counting.

SOS_001936

**Inspector Report for Early Voting Ballot Board Meeting, page 3**

Political Subdivision Inspected: _____City of Del Rio Run-Off_____
(Name of City, School, County, or other)

Date of Election: _____June 21, 2014_____

Inspector: _____ _____Meridith Debus_____

Type of Voting:  Paper __X___  Optical Scan _____

| |
|---|
| No. 17: The ballot box was not used for depositing ballot envelopes. However, there were at least 10 ballots before ballots were counted. |
| No. 23: Poll watchers were not wearing nametags. |
| No. 25: Some mailed-in ballots were not canceled and postmarked by the U.S. Postal Service (USPS).The USPS had informed the City Secretary that the ballots were set aside to expedite delivery instead of sending the ballots to San Antonio so that the ballots would be canceled and postmarked. The Early Voting Ballot Board Judge put the question as to whether the ballots should accepted or rejected to a vote of the Early Voting Ballot Board. The Board voted to accept the ballots. |
| There were a few mailed-in ballots that did not have matching signatures and were to be rejected, and one poll watcher observing stated she knew those individuals. She asked if she could confirm by affidavit the signatures on those ballots. The Early Voting Ballot Board Judge informed the poll watcher that she could not confirm by affidavit the signatures of  those individuals. |

SOS_001937

## Inspector Report for Early Voting Ballot Board Meeting

Political Subdivision Inspected:  <u>City of Crystal City</u>
(Name of City, School, County, or other)

Date of Election:                          <u>May 9, 2015</u>

Inspector:                                   <u>Clarissa Rodriquez</u>

Type of Voting:  Paper  <u> X </u>  Optical Scan  <u>_____</u>

Answer all questions Y, N, Not/Observed, or Not/Applicable, unless otherwise indicated.

25.  Explanations:

26. Provide specific information concerning any unusual activity personally observed by you.

#1     <u>The EVBB did not have the poll list to enter the names of the persons who's signatures were accepted.</u>

#2     <u>The application was just folded over the carrier envelope.</u>

#9     <u>The box did not have a wire seal but a paper security sticker with a seal number on it.</u>

#24    <u>There were 3 poll watchers. All of the poll watchers were harassing the board regarding signature rejections.</u>

SOS_004398

# The State of Texas



Elections Division
P.O. Box 12060
Austin, Texas 78711-2060
www.sos.state.tx.us

Phone: 512-463-5650
Fax: 512-475-2811
Dial 7-1-1 For Relay Services
(800) 252-VOTE (8683)

**John Steen**
**Secretary of State**

## ELECTION ADVISORY
### No. 2013-10

**TO:**        All Election Officials

**FROM:**   Keith Ingram, Director of Elections

**DATE:**    September 5, 2013

**RE:**        2013 Legislative Summary

---

Below is a brief summary of the major election-related legislation that passed during the 83rd Regular Session.  Please note the following:

## Bills

**House Bill 148** -- The bill prohibits anyone from paying or receiving compensation for the mailing of completed carrier envelopes and mail ballots or assisting persons with the completion of mail ballots.  It also requires that a notice of this prohibition be given with the mail ballot materials on the carrier envelope or another sheet of paper.

Effective Date:  Effective September 1, 2013
Statutes Affected:  TEX. ELEC. CODE § § 86.0052, 86.0105, 86.013

**House Bill 259** – The bill prohibits owners and operators of public buildings serving as polling places from impeding electioneering outside of 100 foot marker.  However, it allows owners and operators to enact "reasonable regulations" concerning the "time, place, and manner of electioneering."

Effective Date:  Effective immediately.  (June 14, 2013)

Statutes Affected:  TEX. ELEC. CODE §§ 61.003, 85.036.

**House Bill 396** – Allows FPCA voters to vote in general and special elections held by a county, municipality or school district for the calendar year in which the FPCA is received.
Requires early voting clerks to send FPCAs to  early voting clerks who conduct an election in which the FPCA voter is eligible.

Effective Date:  September 1, 2013

Statutes Affected:  TEX. ELEC. CODE § 101.054(a) and (b)

SOS_025087

**House Bill 506** – Requires political subdivisions, other than counties, to use a county polling place within the political subdivision during early voting for November uniform elections.

Any shared polling place that is designated as the main early voting location must be open for voting for all political subdivisions, and keep the hours of the political subdivision making the designation.

Effective Date:  September 1, 2013

Statutes Affected:  TEX. ELEC. CODE § 85.010

**House Bill 630** – Amends the quorum requirement for filling vacancies on a political party's county executive committee.  Allows a state chair to appoint a party chair from an adjacent county for counties under 5000 population or contract with a county directly for the primary of statewide offices if there is a vacancy and a county executive committee cannot be established.

Effective Date:  Effective immediately (June 14, 2013)

Statutes Affected:  TEX. ELEC. CODE §§ 171.024 (b) and (c), 171.025, 172.128

**House Bill 666** – Allows voters eligible to vote early due to either disability and/or age (over 65 years old) to file an ABBM annually.  Previously, ABBMs  would need to be submitted to the early voting clerk for every election.

Effective Date:  January 1, 2014

Statutes Affected:  TEX. ELEC. CODE § 86.0015

**House Bill 985** – Amends rules for November general election for state and county officers *only*.  Provides that the EVBB shall verify and count provisional ballots by the 13th day after the election.  Previously, the EVBB was required to complete counting by the 7th day after the election.  Provides that the Voter Registrar must have seven calendar days to complete the review of provisional voter's eligibility the governor's canvass is amended to become 18 to 33 days following the elections.

Effective Date:  September 1, 2013

Statutes Affected:  TEX. ELEC. CODE §§ 65.051, 65.052, 67.003, 67.012(a)

**House Bill 1129** – Establishes a one county pilot program for receiving ballots from military voters in a combat zone.

Effective Date:  Effective immediately (June 14, 2013)

Statutes Affected:  TEX. ELEC. CODE § 105.004

**House Bill 1164** – Amends §42.005(a) to provide that a county election precinct may contain territory from more than one ward in cities with a population of 10,000 or more.

SOS_025088

<u>ELECTION ADVISORY</u>
<u>No. 2013-10</u>
Page 3

<u>Effective Date</u>:  Effective immediately (May 24, 2014)

<u>Statutes Affected</u>:  TEX. ELEC. CODE §§ 42.005, 42.010

**<u>House Bill 1632</u>** – Codifies existing practice regarding confidentiality of information for certain public officials including peace officers.

<u>Effective Date</u>:  Effective immediately (June 14 2013)

<u>Statutes Affected</u>:  TEX. ELEC. CODE § 13.004(c); TEX. GOV'T CODE 552.1175

**<u>House Bill 1996</u>** – Provides that a County Chair is permitted in the polling place during a primary election to perform "administrative functions related to the conduct of the election."

<u>Effective Date</u>:  September 1, 2013

<u>Statutes Affected</u>:  TEX. ELEC. CODE § 172.1113

**<u>House Bill 2006</u>** – Allows a person that is an "employee of the political subdivision that adopts or owns the voting system" to serve as a counting station manager, even if they are not a registered voter of the political subdivision.

<u>Effective Date</u>:  Effective immediately (June 14, 2013)

<u>Statutes Affected</u>:  TEX. ELEC. CODE § 127.002(b)

**<u>House Bill 2110</u>** – Prohibits a person from being a poll worker if related to or employed by a candidate for party office which appears on the ballot in that precinct.  Requires election officers to wear an identification badge.  SOS will provide the form of the ID badge.

<u>Effective Date</u>:  September 1, 2013

<u>Statutes Affected</u>:  TEX. ELEC. CODE §§ 32.054(a), 62.003

**<u>House Bill 2233</u>** – Provides that the EVBB may compare any "two or more signatures of the voter made within the preceding six years" when reviewing a ballot by mail.  The signature comparison can only be used to confirm signatures are from the same person.

<u>Effective Date</u>:  Effective immediately (June 14 2014)

<u>Statutes Affected</u>:  TEX. ELEC. CODE § 87.041(e)

**<u>House Bill 2263</u>** – Allows voters to order a replacement voter registration certificate telephonically or electronically.

<u>Effective Date</u>:  Effective immediately (June 14, 2013)

<u>Statutes Affected</u>:  TEX. ELEC. CODE § 15.004

SOS_025089

ELECTION ADVISORY
No. 2013-10
Page 4

**House Bill 2373** – Allows for electronic capture of a voter's signature for the signature roster/combination form.  SOS must approve devices and make rules regarding the minimum requirements of signature capture devices.

Effective Date:  September 1 2013

Statutes Affected:  TEX. ELEC. CODE § 63.002

**House Bill 2465** – Requires SOS, to the extent practicable, to indicate if a voter is on the suspense list on the SOS website.

Effective Date:  September 1, 2013

Statutes Affected:  TEX. ELEC. CODE § 15.086

**House Bill 2475** – Amends the §64.034 oath taken by persons assisting a voter, to state that the assistant is not the voter's employer, an agent of the employer, or an officer or agent of a labor union to which the voter belongs.

Effective Date:  September 1, 2013

Statutes Affected:  TEX. ELEC. CODE § 64.034

**House Bill 2512** – Allows disclosure by DPS to SOS of information such as social security number and other personal information to assist in the maintenance of the voter registration records.

Effective Date:  Effective immediately (June 14, 2013)

Statutes Affected:  TEX. TRANSP. CODE § 521.044 (a) and (c), 730.005

**House Bill 2818** – Clarifies language and boundaries of local option elections in Justice Precincts when the boundaries change between the local option elections.

Effective Date:  September 1, 2013

Statutes Affected:  Alcoholic Beverage Code §§ 25.14, 69.17, 70.04, 251.72, 251.80

**House Bill 3102** – Allows for parties to have more flexibility in governing party operations.

Effective Date:  Effective immediately (June 14, 2013)

Statutes Affected:   TEX. ELEC. CODE §§ 162.001(a), 162.008, 162.010, 162.011(a), 162.017, 163.004, 163.005, 163.006, 171.0221, 171.024 (a), (b) and (e), 174.021, 174.022 (a), (b), (c) and (d), 174.023(a) and (b), 174.025(a), (c), (d) and (e), 174.026, 174.027, 174.062, 174.063(a), (b) and (c), 174.064(a) and (b), 174.065, 174.067, 174.068, 174.069, 174.092(a), 174.093, 174.094, 174.096, 181.063, 181.066, 181.067, 191.031(a) and (c)

SOS_025090

**House Bill 3103** – Makes changes to the administration of primaries:
- Requires county chairs to post application filing locations and notices on the party's website.
- Requires certification of application electronically to the SOS, and provides that the SOS will post a list of certified candidates on SOS' website.
- Requires SOS to adopt rules for submission of candidate information.
- Requires SOS to study effects of changing presidential primary date.

Effective Date:  Effective immediately (June 14, 2013)

Statutes Affected:  TEX. ELEC. CODE §§ 172.022(b), 172.028 (a) and (b), 172.029, 172.056 (a) and (b), 172.082(e), 172.084(e), 172.118(a) and (d), 172.119(b), 172.124, 172.125, 181.033

**House Bill 3593** – Provides changes to process of determining potentially deceased voters. Allows for the SOS to work with other state agencies to review databases with information contained in the voter registration process.  Requires counties to investigate potential ineligibility of weak match deceased.

Effective Date:  September 1, 2013

Statutes Affected:  TEX. ELEC. CODE §§ 16.033, 18.068

**Senate Bill 160** – Requires poll watchers to wear an identification badge upon being accepted for service.  Texas SOS will produce the form of the badge to be worn.

Effective Date:  September 1, 2013

Statutes Affected:  TEX. ELEC. CODE § 33.051

**Senate Bill 553** – Allows for high school students to serve as early voting clerks, in addition to election day clerks (maximum of two days).

Effective Date:  Effective immediately (June 14, 2013)

Statutes Affected:  TEX. ELEC. CODE § 83.012; TEX. EDUC. CODE §§ 25.87, 33.092

**Senate Bill 578** – Allows for countywide polling places during a primary election.  If a political subdivision is holding joint elections with a county under the countywide polling places program, the political subdivision may use only the countywide polling places in their territory in a primary runoff.

Effective Date:  September 1, 2013

Statutes Affected:  TEX. ELEC. CODE §§ 43.004, 43.007(a)

**Senate Bill 637** – New notice requirements in the election order for bond elections in political subdivisions.

SOS_025091

ELECTION ADVISORY
No. 2013-10
Page 6

Effective Date:  September 1, 2013

Statutes Affected:  TEX. ELEC. CODE §§ 3.009, 4.003

**Senate Bill 817** – Amends Chapter 181 to require nominating party conventions be held the second Saturday in April, instead of the second Saturday in June.  Allows candidates or office holders to serve as county or precinct chairs for political parties under Chapter 181 (nominating convention parties).

Effective Date:  Effective immediately (June 14, 2013)

Statutes Affected:  TEX. ELEC. CODE §§ 161.005, 163.002, 181.061

**Senate Bill 902** –  Water District cleanup bill.  Please review carefully for Water District elections changes. Sections below are the ones pertinent to elections.

Effective Date:  September 1, 2013, except Sections 30 and 31 take effect immediately (May 18, 2013)

Statutes Affected:  Water Code §§ 49.1045, 49.105, 49.108, 49.109, 49.110, 49.111, 49.112, 49.113

**Senate Bill 904** – Amends §145.092 to change the withdrawal deadline to 5 p.m. on the fifth day after the filing deadline.  Previously, a candidate must have withdrawn by 5 p.m. on the third day after the filing deadline.  Requires the SOS to create a checklist for early voting clerks to use while processing FPCAs and ballots.  Provides that a voter that completes the signature sheet is not required to complete a carrier envelope.

Effective Date: September 1, 2013, except Section 8 takes effect December 31, 2016

Statutes Affected:  TEX. ELEC. CODE §§ 101.007, 145.092, 172.054(a) and (b), 172.057, 172.058(a), 202.004 (a) and (c)

- **Senate Bill 910** – Requires that "curbside" early voting in person under §85.034 be conducted in the same way that such voting is conducted under §64.009 on election day.
- Amends §202.004 to provide that a political party's nominee for an unexpired term must be nominated by primary election if the vacancy occurs on or before the 5th day before the regular filing deadline.
- Previously, the law provided nomination if the vacancy occurred on or before the 62nd day before the election.
- Allows the actual expenses incurred for printing ballot images from a voting system to be assessed.
- Amends §201.054 to provide two filing periods for special elections (the third period is eliminated).
- Allows for documents or papers to be filed by facsimile.
- Allows for voter registration applications to be faxed to voter registrar.  The hard copy of the application must be mailed and must be received by the registrar within four days of receipt of the faxed application.

SOS_025092

ELECTION ADVISORY
No. 2013-10
Page 7

- Requires abstracts of death certificates and probate records to be filed electronically with the SOS.
- Provides that the SOS may prescribe a different form for an application for a place on the ballot for the following:
  - Offices of the federal government
  - Offices of the state government
  - Offices of a political party
- Standardizes the first day of the filing period by providing that political subdivisions, other than counties and cities, may not allow an application to be filed earlier than the 30th day before the filing deadline.
- Provides that the filing deadline for primaries is extended if the candidate dies, withdraws or is declared ineligible by the first day after the date of the regular filing deadline.
- Changes the filing deadline to the fifth day after the filing deadline.
- Amends §145.096 to read that a candidate's name will remain on the ballot if the candidate is declared ineligible after 5 p.m. on the third day after the filing deadline.
- Previously, a candidate's name would remain on the ballot if not declared ineligible by 5 p.m. on the second day after the filing deadline.
- Allows more time for filing authorities to review applications.
- Amends §172.057 to provide that a candidate's name will be omitted from the ballot if the candidate withdraws, dies or is declared ineligible on or before the first day after the regular filing deadline.
- Amends §172.058 to read that if a candidate dies or is declared ineligible after the first day after the regular filing deadline, his or her name remains on the ballot.
- These provisions were formerly the 79th day before the primary.
- Amends §84.007 to require that an ABBM must be submitted to the early voting clerk between the 60th day before an election and the 9th day before an election.
- If 9th day is a Saturday, Sunday or holiday, deadline falls on preceding regular business day.
- Previously, voters could submit an ABBM up until the 7th day before an election.

Effective Date:  September 1, 2013

Statutes Affected:  TEX. ELEC. CODE §§ 1.007(c), 13.002, 13.143, 16.001, 31.006(b), 32.054, 52.075, 63.0011, 84.007(c), 85.034, 86.001(f), 86.014(a), 141.031, 144.005(a), 145.96(a), 172.054(a) and (b), 172.057, 172.058(a), 201.052, 201.054(a), 202.004(a) and (c), 215.002; TEX. GOV'T Code § 62.113

# Joint Resolutions

## Proposition 1

"The constitutional amendment authorizing the legislature to provide for an exemption from ad valorem taxation of all or part of the market value of the residence homestead of the surviving spouse of a member of the armed services of the United States who is killed in action."

**HJR 62** proposes a constitutional amendment to authorize the legislature to provide by statute for an exemption from ad valorem taxation of all or part of the market value of the residence homestead of the surviving spouse of a member of the United States armed services who is killed in action, as long as that surviving spouse has not remarried.  A surviving spouse who later

352

SOS_025093

qualifies a different property as the surviving spouse's residence homestead would be entitled to an exemption from ad valorem taxation of the subsequently qualified homestead in the same amount as the exemption received by the first homestead in the last year it was received on that property, again as long as the spouse has not remarried.

**Proposition 2**

"The constitutional amendment eliminating an obsolete requirement for a State Medical Education Board and a State Medical Education Fund, neither of which is operational."

**HJR 79** proposes a constitutional amendment to repeal the constitutional provision requiring the creation of a State Medical Education Board and a State Medical Education Fund, neither of which is in operation.  No new loans have been made from the fund by the board in more than 25 years, and the board currently has no appointees and receives no program funding.

**Proposition 3**

"The constitutional amendment to authorize a political subdivision of this state to extend the number of days that aircraft parts that are exempt from ad valorem taxation due to their location in this state for a temporary period may be located in this state for purposes of qualifying for the tax exemption."

**HJR 133** would authorize local political subdivisions to extend the length of time that aircraft parts could remain temporarily in this state before being subject to ad valorem taxation. Under current law, merchandise, wares, and goods (including aircraft parts) may remain in this state temporarily for up to 175 days before being subject to ad valorem taxation; the proposed amendment would permit taxing entities to extend the exemption up to 730 days after the date that a person acquired or imported aircraft parts in the state.

**Proposition 4**

"The constitutional amendment authorizing the legislature to provide for an exemption from ad valorem taxation of part of the market value of the residence homestead of a partially disabled veteran or the surviving spouse of a partially disabled veteran if the residence homestead was donated to the disabled veteran by a charitable organization."

**HJR 24** proposes a constitutional amendment that would allow for the legislature to provide for an exemption from ad valorem taxation of part of the market value of the residence homestead of a partially disabled veteran or the surviving spouse of a partially disabled veteran if the residence homestead was donated to the disabled veteran by a charitable organization.

**Proposition 5**

"The constitutional amendment to authorize the making of a reverse mortgage loan for the purchase of homestead property and to amend lender disclosures and other requirements in connection with a reverse mortgage loan."

**SJR 18** would authorize the making of reverse mortgage loans for the purchase of homestead property in addition to the current legal uses of those loans, and would give lenders recourse against borrowers who fail to timely occupy the homestead properties purchased with such loans. Required disclosures would be amended to include relevant written warnings of the risks and conditions applicable to "for purchase" reverse mortgage borrowers and their spouses.

SOS_025094

ELECTION ADVISORY
No. 2013-10
Page 9

**Proposition 6**

"The constitutional amendment providing for the creation of the State Water Implementation Fund for Texas and the State Water Implementation Revenue Fund for Texas to assist in the financing of priority projects in the state water plan to ensure the availability of adequate water resources."

**SJR 1** would create the State Water Implementation Fund as a special fund inside the state treasury and outside the General Revenue Fund. Money in the fund would be administered by the Texas Water Development Board (TWDB) and would be used to implement the state water plan, as adopted by general law, by TWDB.

**Proposition 7**

"The constitutional amendment authorizing a home-rule municipality to provide in its charter the procedure to fill a vacancy on its governing body for which the unexpired term is 12 months or less."

**HJR 87** proposes a constitutional amendment to allow home-rule municipalities to adopt charter provisions authorizing the filling of vacancies in the governing body by appointment, but only when the remainder of the vacant term is less than 12 months. Under current law, municipal voters may adopt terms of office for municipal officers longer than two years, but upon approving longer terms of office, any resulting vacancies in office must be filled by special election. The proposed amendment would provide an option for home-rule municipalities to fill short-term vacancies through appointment.

**Proposition 8**

"The constitutional amendment repealing Section 7, Article IX, Texas Constitution, which relates to the creation of a hospital district in Hidalgo County."

**HJR 147** would repeal the Texas Constitution's maximum tax rate for a Hidalgo County hospital district; the maximum rate is currently set at 10 cents per $100 valuation. This rate is lower than the maximum tax rate allowable for hospital districts in all other counties in the State (75 cents per $100 valuation). The repeal of the constitutional cap would authorize hospital district tax rates in Hidalgo County equal to the hospital district tax rate laws applicable to all other Texas counties.

**Proposition 9**

"The constitutional amendment relating to expanding the types of sanctions that may be assessed against a judge or justice following a formal proceeding instituted by the State Commission on Judicial Conduct."

**SJR 42** would expand the potential sanctions that the State Commission on Judicial Conduct can issue following a formal proceeding. This constitutional amendment would allow the Commission to issue an order of public admonition, warning, reprimand, or a requirement to obtain additional training or education in addition to the Commission's current authority to issue a public censure or recommend removal or retirement of a judge.

SOS_025095

| | |
|---|---|
| **From:** | Caroline Geppert </O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=D84E8EB9C19B4B3185CC538E0AFEB862-CGEPPERT> |
| **To:** | leti@jhcwcid2.com |
| **BCC:** | Ashley Fischer; Elections Internet |
| **Sent:** | 4/28/2016 8:22:30 AM |
| **Subject:** | RE: Water District WCID |

Dear Ms. Tolentino:

The voter's name is placed on the carrier envelope primarily for administrative purposes, so that it is clear which carrier envelope goes with which application for a ballot by mail (ABBM).  Also, it is helpful to have the name on the carrier envelope if the voter returns the ballot without a signature, so that the voter can be contacted to fix that mistake. However, failure to include the voter's name of the carrier envelope does not have an effect on the validity of the ballot, and the carrier envelope should still be forwarded to the early voting ballot board so that that group can compare the signatures on the carrier envelope to the signature on the ABBM. Only if the carrier is not signed or the signature is unreadable so that you cannot identify who has returned the ballot (or pair the carrier envelope with the appropriate ABBM) could this impact the counting of the ballot.

I hope this is helpful.

Sincerely,

Caroline Geppert
Staff Attorney – Elections Division
Office of the Texas Secretary of State
1019 Brazos Street | Rudder Building, 2nd Floor | Austin, Texas 78701
1.800.252.VOTE (8683)
elections@sos.texas.gov | www.sos.state.tx.us



*The information contained in this email is intended to provide advice and assistance in election matters per §31.004 of the Texas Election Code.  It is not intended to serve as a legal opinion for any matter.  Please review the law yourself, and consult with an attorney when your legal rights are involved.*

---

**From:** Leticia [mailto:leti@jhcwcid2.com]
**Sent:** Tuesday, April 26, 2016 11:14 AM
**To:** Elections Internet
**Subject:** Water District WCID
**Importance:** High

Gentlemen:

The presiding judge for the early voting election mailed out the ballots for the voters that requested ballots by mail but forgot to put the name of the voter in the return envelope.  She did this on several before she realized what she had done.

SOS_034540

What solution do you have for that?  What can be done when if they return the ballots?

Leticia Tolentino
JHCWCID#2
Office Manager
P. O. BOX 148
601 N. CEDAR ST.
HEBBRONVILLE, TX  78361
361-527-3287 x 3 office
361-527-3420 fax

SOS_034541

Document Filed Under Seal

Operating Budget

For Fiscal Year 2020



Submitted to the Governor's Office of Budget, Planning and Policy
And the Legislative Budget Board

By

The Office of the Secretary of State

December 20, 2019 (Revised)

**Table of Contents**

Budget Overview

| | | |
|---|---|---|
| 1.A. | Certification of Dual Submission | 1.A.  Page 1 |
| 2.A. | Summary of Budget by Strategy | 2.A.  Page 1 |
| 2.B. | Summary of Budget by Method of Finance | 2.B.  Page 1 |
| 2.C. | Summary of Budget by Object of Expense | 2.C.  Page 1 |
| 2.D. | Summary of Budget by Objective Outcomes | 2.D.  Page 1 |
| 3.A. | Strategy Level Detail | 3.A.  Page 1 |
| 4.A. | Capital Budget Project Schedule | 4.A.  Page 1 |
| | Capital Budget Allocation to Strategies | |
| 4.B. | Federal Funds Supporting Schedule | 4.B.  Page 1 |
| 4.C. | Federal Funds Tracking Schedule | 4.C.  Page 1 |
| 4.D. | Estimated Revenue Collections Supporting Schedule | 4.D.  Page 1 |
| 4.F. | Part A Budgetary Impacts Related to Recently Enacted State Legislation Schedule | 4.F.   Page 1 |
| | Part B Summary of Costs Related to Recently Enacted State Legislation Schedule | |

**Budget Overview**

86th Regular Session, Fiscal Year 2020 Operating Budget

Automated Budget and Evaluation System of Texas (ABEST)

307 Secretary of State

| | | GENERAL REVENUE FUNDS | | GR DEDICATED | | FEDERAL FUNDS | | OTHER FUNDS | | ALL FUNDS | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | 2019 | 2020 | 2019 | 2020 | 2019 | 2020 | 2019 | 2020 | 2019 | 2020 |
| **Goal: 1. Provide and Process Information Efficiently; Enforce Laws/Rules** | | | | | | | | | | | |
| 1.1.1. Document Filing | | 2,136,059 | 1,156,520 | | | | | 5,094,129 | 6,963,000 | 7,230,188 | 8,119,520 |
| 1.2.1. Document Publishing | | 423,820 | 390,650 | | | | | 19,611 | 67,678 | 443,431 | 458,328 |
| | **Total, Goal** | **2,559,879** | **1,547,170** | | | | | **5,113,740** | **7,030,678** | **7,673,619** | **8,577,848** |
| **Goal: 2. Maintain Uniformity & Integrity of Elections; Oversee Election Process** | | | | | | | | | | | |
| 2.1.1. Elections Administration | | 4,477,705 | 6,489,600 | | | | | 1,948,882 | 623,000 | 6,426,587 | 7,112,600 |
| 2.1.2. Primary Funding/Vr Postage | | 1,462,699 | 18,598,600 | | | | | | | 1,462,699 | 18,598,600 |
| 2.1.3. Constitutional Amendments | | 3,112 | 1,233,000 | | | | | | | 3,112 | 1,233,000 |
| 2.1.4. Elections Improvement | | | 1,162,630 | 606,589 | 675,000 | 5,157,271 | 21,633,949 | | | 5,763,860 | 23,471,579 |
| 2.1.5. Financing Voter Registration | | 502,962 | 4,777,500 | | | | | | | 502,962 | 4,777,500 |
| | **Total, Goal** | **6,446,478** | **32,261,330** | **606,589** | **675,000** | **5,157,271** | **21,633,949** | **1,948,882** | **623,000** | **14,159,220** | **55,193,279** |
| **Goal: 3. International Protocol** | | | | | | | | | | | |
| 3.1.1. Protocol/Border Affairs | | 292,307 | 280,606 | | | | | | | 292,307 | 280,606 |
| | **Total, Goal** | **292,307** | **280,606** | | | | | | | **292,307** | **280,606** |
| **Goal: 4. Indirect Administration** | | | | | | | | | | | |
| 4.1.1. Indirect Administration | | 4,887,445 | 4,769,482 | | | | | 708,255 | 1,942,000 | 5,595,700 | 6,711,482 |
| | **Total, Goal** | **4,887,445** | **4,769,482** | | | | | **708,255** | **1,942,000** | **5,595,700** | **6,711,482** |
| | **Total, Agency** | **14,186,109** | **38,858,588** | **606,589** | **675,000** | **5,157,271** | **21,633,949** | **7,770,877** | **9,595,678** | **27,720,846** | **70,763,215** |
| | **Total FTEs** | | | | | | | | | **175.4** | **205.0** |

Page 1 of 1



## C E R T I F I C A T E

**Agency Name**     **Secretary of State**

This is to certify that the information contained in the agency operating budget filed with the Legislative Budget Board (LBB) and the Governor's Office of Budget, Planning and Policy (GOBPP) is accurate to the best of my knowledge and that the electronic submission to the LBB via the Automated Budget and Evaluation System of Texas (ABEST) and the PDF file submitted via the LBB Document Submission application are identical.

Additionally, should it become likely at any time that unexpended balances will accrue for any account, the LBB and the GOBPP will be notified in writing in accordance with House Bill 1, Article IX, Section 7.01, Eighty-sixth Legislature, Regular Session, 2019.

| **Chief Executive Office** | **Chief Financial Officer** |
|---|---|
| Signature | Signature |
| Joe Esparza | Vincent Houston |
| Printed Name | Printed Name |
| Deputy Secretary of State | Director of Administrative Services |
| Title | Title |
| November 26, 2019 | November 26, 2019 |
| Date | Date |

**2.A. Summary of Budget By Strategy**

DATE : **12/18/2019**
TIME : **11:10:20AM**

86th Regular Session, Fiscal Year 2020 Operating Budget
Automated Budget and Evaluation System of Texas (ABEST)

Agency code:   **307**      Agency name:   **Secretary of State**

| Goal/*Objective*/STRATEGY | EXP 2018 | EXP 2019 | BUD 2020 |
|---|---:|---:|---:|
| **1**   Provide and Process Information Efficiently; Enforce Laws/Rules | | | |
| **1**   *Process Documents & Provide Accurate & Reliable Info on a Timely Basis* | | | |
| **1**   DOCUMENT FILING | $5,292,634 | $7,230,188 | $8,119,520 |
| **2**   *File & Publish Admin Rules and Agency Public Notices* | | | |
| **1**   DOCUMENT PUBLISHING | $428,244 | $443,431 | $458,328 |
| **TOTAL, GOAL 1** | **$5,720,878** | **$7,673,619** | **$8,577,848** |
| **2**   Maintain Uniformity & Integrity of Elections; Oversee Election Process | | | |
| **1**   *Interpret Elect Laws/HAVA; Publish Const Amends; Reimburse Elect Costs* | | | |
| **1**   ELECTIONS ADMINISTRATION | $4,449,262 | $6,426,587 | $7,112,600 |
| **2**   PRIMARY FUNDING/VR POSTAGE | $17,504,327 | $1,462,699 | $18,598,600 |
| **3**   CONSTITUTIONAL AMENDMENTS | $1,182,650 | $3,112 | $1,233,000 |
| **4**   ELECTIONS IMPROVEMENT | $3,508,133 | $5,763,860 | $23,471,579 |
| **5**   FINANCING VOTER REGISTRATION | $3,347,036 | $502,962 | $4,777,500 |
| **TOTAL, GOAL 2** | **$29,991,408** | **$14,159,220** | **$55,193,279** |
| **3**   International Protocol | | | |
| **1**   *Provide Protocol Services and Representation on Border Issues* | | | |
| **1**   PROTOCOL/BORDER AFFAIRS | $278,106 | $292,307 | $280,606 |
| **2**   COLONIAS INITIATIVES | $0 | $0 | $0 |
| **TOTAL, GOAL 3** | **$278,106** | **$292,307** | **$280,606** |
| **4**   Indirect Administration | | | |
| **1**   *Indirect Administration* | | | |
| **1**   INDIRECT ADMINISTRATION | $5,985,259 | $5,595,700 | $6,711,482 |
| **TOTAL, GOAL 4** | **$5,985,259** | **$5,595,700** | **$6,711,482** |

**2.A. Summary of Budget By Strategy**

86th Regular Session, Fiscal Year 2020 Operating Budget
Automated Budget and Evaluation System of Texas (ABEST)

Agency code: **307**          Agency name:    **Secretary of State**

| Goal/*Objective*/STRATEGY | EXP 2018 | EXP 2019 | BUD 2020 |
|---|---|---|---|
| **General Revenue Funds:** | | | |
| 1   General Revenue Fund | $30,742,159 | $14,186,109 | $38,858,588 |
| | **$30,742,159** | **$14,186,109** | **$38,858,588** |
| **General Revenue Dedicated Funds:** | | | |
| 5095   Election Improvement Fund | $147,279 | $606,589 | $675,000 |
| | **$147,279** | **$606,589** | **$675,000** |
| **Federal Funds:** | | | |
| 555   Federal Funds | $3,360,854 | $5,157,271 | $21,633,949 |
| | **$3,360,854** | **$5,157,271** | **$21,633,949** |
| **Other Funds:** | | | |
| 666   Appropriated Receipts | $7,725,359 | $7,770,877 | $9,595,678 |
| | **$7,725,359** | **$7,770,877** | **$9,595,678** |
| **TOTAL, METHOD OF FINANCING** | **$41,975,651** | **$27,720,846** | **$70,763,215** |
| **FULL TIME EQUIVALENT POSITIONS** | **175.6** | **175.4** | **205.0** |

2.A. Page 2 of 2

**2.B. Summary of Budget By Method of Finance**

86th Regular Session, Fiscal Year 2020 Operating Budget

Automated Budget and Evaluation System of Texas (ABEST)

DATE: **12/18/2019**

TIME: **11:10:58AM**

| | | | |
|---|---|---|---|
| Agency code: | **307** | Agency name: | **Secretary of State** |

| METHOD OF FINANCING | Exp 2018 | Exp 2019 | Bud 2020 |
|---|---|---|---|

### GENERAL REVENUE

**1** General Revenue Fund

*REGULAR APPROPRIATIONS*

| | Exp 2018 | Exp 2019 | Bud 2020 |
|---|---|---|---|
| Regular Appropriations from MOF Table (2020-21 GAA) | $0 | $0 | $38,858,588 |
| Regular Appropriations from MOF Table (2018-19 GAA) | $31,414,407 | $10,677,077 | $0 |

*RIDER APPROPRIATION*

| | Exp 2018 | Exp 2019 | Bud 2020 |
|---|---|---|---|
| Rider 11, Unexpended Balances  Between and Within Biennia for Election and Voter Registration Funds (2018-19 GAA) | $3,696,739 | $0 | $0 |

**Comments:** UB of Primary Election Funds from AY 16, the agency practice is to transfer the majority of unused funds to the subsequent year and leave a small balance for adjustments and close out of the funds in FY 18 after all expenses are paid.

| | Exp 2018 | Exp 2019 | Bud 2020 |
|---|---|---|---|
| Rider 11, Unexpended Balances  Between and Within Biennia for Election and Voter Registration Funds (2018-19 GAA) | $(380,970) | $380,970 | $0 |

**Comments:** UB of Primary Election Funds from AY 16, the agency practice is to transfer the majority of unused funds to the subsequent year and leave a small balance for adjustments and close out of the funds in FY 19 after all expenses are paid.  This entry represent the adjustment amount.

| | Exp 2018 | Exp 2019 | Bud 2020 |
|---|---|---|---|
| Rider 10, Unexpended Balances Within the Biennium for Document Filing (2018-19 GAA) | $(1,145,934) | $1,145,934 | $0 |
| Rider 9, Senate Bill 14: Contingency Appropriation for Voter Education: Related to Voter Identification - Unexpended balance authority (2018-19 GAA) | $(2,211,516) | $2,211,516 | $0 |

*LAPSED APPROPRIATIONS*

| | Exp 2018 | Exp 2019 | Bud 2020 |
|---|---|---|---|
| Regular Appropriations from MOF Table (2018-19 GAA) | $(864) | $0 | $0 |

*UNEXPENDED BALANCES AUTHORITY*

| | Exp 2018 | Exp 2019 | Bud 2020 |
|---|---|---|---|
| Rider 2, Capital Budget (2018-19 GAA) | $(5,934) | $5,934 | $0 |

**Comments:** Acquisition of Information Resource Technologies (IT Refresh)

2.B. Page 1 of 6

**2.B. Summary of Budget By Method of Finance**

86th Regular Session, Fiscal Year 2020 Operating Budget

Automated Budget and Evaluation System of Texas (ABEST)

DATE:  **12/18/2019**

TIME:  **11:10:58AM**

---

Agency code:  **307**          Agency name:  **Secretary of State**

| METHOD OF FINANCING | Exp 2018 | Exp 2019 | Bud 2020 |
|---|---|---|---|
| Rider 2, Capital Budget (2018-19 GAA) | $(7,312) | $7,312 | $0 |
| **Comments:** Acquisition of Information Resource Technologies (CAPPS Project) | | | |
| Rider 2, Capital Budget (2018-19 GAA) | $(186,601) | $186,601 | $0 |
| **Comments:** Acquisition of Information Resource Technologies (DATA Center) | | | |
| *BASE ADJUSTMENT* | | | |
| Governor's Veto Proclamation - Colonias | $(429,856) | $(429,235) | $0 |
| **TOTAL,**          **General Revenue Fund** | $30,742,159 | $14,186,109 | $38,858,588 |
| **TOTAL, ALL**     **GENERAL REVENUE** | $30,742,159 | $14,186,109 | $38,858,588 |

**GENERAL REVENUE FUND - DEDICATED**

| | Exp 2018 | Exp 2019 | Bud 2020 |
|---|---|---|---|
| **5095**  GR Dedicated - Election Improvement Fund No. 5095 | | | |
| *REGULAR APPROPRIATIONS* | | | |
| Regular Appropriations from MOF Table (2020-21 GAA) | $0 | $0 | $200,000 |
| Regular Appropriations from MOF Table (2018-19 GAA) | $8,140 | $3,140 | $0 |
| *BASE ADJUSTMENT* | | | |
| General Revenue Dedicated - Additional Collections (Interest on Funds) | $57,506 | $55,693 | $0 |
| **Comments:** These funds are spent in the year earned and spent on HAVA Team expenses for system maintenance. | | | |
| General Revenue Dedicated - Additional Collections (Interest on Funds) | $81,633 | $547,756 | $475,000 |
| **Comments:** These funds are spent in the year earned and spent on HAVA Security related expenses. | | | |

| Agency code: | **307** | Agency name: | **Secretary of State** | | |
|---|---|---|---|---|---|

| METHOD OF FINANCING | | **Exp 2018** | **Exp 2019** | **Bud 2020** |
|---|---|---|---|---|
| **TOTAL,** | **GR Dedicated - Election Improvement Fund No. 5095** | | | |
| | | $147,279 | $606,589 | $675,000 |
| **TOTAL, ALL** | **GENERAL REVENUE FUND - DEDICATED** | | | |
| | | $147,279 | $606,589 | $675,000 |

**FEDERAL FUNDS**

**555**  Federal Funds

*REGULAR APPROPRIATIONS*

| | **Exp 2018** | **Exp 2019** | **Bud 2020** |
|---|---|---|---|
| Regular Appropriations from MOF Table (2020-21 GAA) | $0 | $0 | $10,881,229 |
| Regular Appropriations from MOF Table (2018-19 GAA) | $1,840,568 | $1,097,719 | $0 |

   Comments: HAVA - 39.011 Section 101

*TRANSFERS*

| | **Exp 2018** | **Exp 2019** | **Bud 2020** |
|---|---|---|---|
| UB of GR-D Election Improvement Fund NO. 5095 (2018-19 GAA) | $(23,114,790) | $23,114,790 | $0 |

   Comments: The program was funded up front in FY 2018. TSF represent unspent grant amount and does not include earned interest (HAVA - 90.404).

| | **Exp 2018** | **Exp 2019** | **Bud 2020** |
|---|---|---|---|
| UB of GR-D Election Improvement Fund NO. 5095 (2020 -21 GAA) | $0 | $(20,084,933) | $20,084,933 |

   Comments: The program was funded up front in FY 2018. TSF represent unspent grant amount and does not include earned interest (HAVA - 90.404).

| | **Exp 2018** | **Exp 2019** | **Bud 2020** |
|---|---|---|---|
| UB of GR-D Election Improvement Fund NO. 5095 (2018-19 GAA) | $(2,578,711) | $2,578,711 | $0 |

   Comments: HAVA - 39.011 Section 101

| | **Exp 2018** | **Exp 2019** | **Bud 2020** |
|---|---|---|---|
| UB of GR-D Election Improvement Fund NO. 5095 (2020 -21 GAA) | $0 | $(1,549,016) | $1,549,016 |

   Comments: HAVA - 39.011 Section 101

| | **Exp 2018** | **Exp 2019** | **Bud 2020** |
|---|---|---|---|
| UB of GR-D Election Improvement Fund NO. 5095 (2018-19 GAA) | $3,961,183 | $0 | $0 |

2.B. Page 3 of 6

**2.B. Summary of Budget By Method of Finance**

86th Regular Session, Fiscal Year 2020 Operating Budget

Automated Budget and Evaluation System of Texas (ABEST)

DATE: **12/18/2019**

TIME: **11:10:58AM**

---

Agency code:   **307**     Agency name:   **Secretary of State**

| METHOD OF FINANCING | Exp 2018 | Exp 2019 | Bud 2020 |
|---|---|---|---|
| **Comments:** HAVA 39.011 | | | |
| *BASE ADJUSTMENT* | | | |
| Art IX, Sec 13.01, Federal Funds/Block Grants (2018-19 GAA) | $23,252,604 | $0 | $0 |
| **Comments:** 2018 HAVA Election Security Grant (HAVA - 90.404) | | | |
| Art IX, Sec 13.01, Federal Funds/Block Grants (2020-21 GAA) | $0 | $0 | $(10,881,229) |
| **Comments:** Fed Grants detailed below in TRs | | | |
| **TOTAL,**     **Federal Funds** | | | |
| | **$3,360,854** | **$5,157,271** | **$21,633,949** |
| **TOTAL, ALL**     **FEDERAL FUNDS** | | | |
| | **$3,360,854** | **$5,157,271** | **$21,633,949** |

**OTHER FUNDS**

| | Exp 2018 | Exp 2019 | Bud 2020 |
|---|---|---|---|
| **666**  Appropriated Receipts | | | |
| *REGULAR APPROPRIATIONS* | | | |
| Regular Appropriations from MOF Table (2020-21 GAA) | $0 | $0 | $8,746,000 |
| Regular Appropriations from MOF Table (2018-19 GAA) | $7,100,000 | $7,550,000 | $0 |
| *RIDER APPROPRIATION* | | | |
| Art IX, Sec 8.07, Seminars and Conferences (2018-19 GAA) | $282,582 | $333,294 | $0 |
| Art IX, Sec 8.07, Seminars and Conferences (2018-19 GAA) | $18,853 | $0 | $0 |
| **Comments:** UB From AY 17 to AY 18 | | | |
| Art IX, Sec 8.07, Seminars and Conferences (2018-19 GAA) | $(6,860) | $6,860 | $0 |
| **Comments:** UB From AY 18 to AY 19 | | | |

**2.B. Summary of Budget By Method of Finance**

86th Regular Session, Fiscal Year 2020 Operating Budget

Automated Budget and Evaluation System of Texas (ABEST)

DATE: **12/18/2019**

TIME: **11:10:58AM**

Agency code: **307**          Agency name: **Secretary of State**

| METHOD OF FINANCING | Exp 2018 | Exp 2019 | Bud 2020 |
|---|---|---|---|
| Art IX, Sec 8.07, Seminars and Conferences (2020-21 GAA) | $0 | $(44,778) | $44,778 |
| Comments: UB From AY 19 to AY 20 | | | |
| Art IX, Sec 8.10, Credit, Charge, or Debit Card Service (2018-19 GAA) | $1,499,645 | $0 | $0 |
| Comments: UB From AY 17 to AY 18 | | | |
| Art IX, Sec 8.10, Credit, Charge, or Debit Card Service (2018-19 GAA) | $1,786,797 | $1,842,897 | $0 |
| Comments: Collections | | | |
| Art IX, Sec 8.10, Credit, Charge, or Debit Card Service (2018-19 GAA) | $(1,622,905) | $1,622,902 | $0 |
| Comments: UB from AY 18 to AY 19 | | | |
| Art IX, Sec 8.10, Credit, Charge, or Debit Card Service (2020-21 GAA) | $0 | $(1,604,900) | $1,604,900 |
| Comments: UB from AY 19 to AY 20 | | | |
| *LAPSED APPROPRIATIONS* | | | |
| Regular Appropriations from MOF Table (2018-19 GAA) | $(485,278) | $(443) | $0 |
| *BASE ADJUSTMENT* | | | |
| Art IX, Sec 6.08 Benefits paid proportional by Method of Finance (2018-19 GAA) | $(847,475) | $(1,934,955) | $0 |
| Art IX, Sec 6.08 Benefits paid proportional by Method of Finance (2020-21 GAA) | $0 | $0 | $(800,000) |
| **TOTAL,**    **Appropriated Receipts** | **$7,725,359** | **$7,770,877** | **$9,595,678** |
| **TOTAL, ALL**    **OTHER FUNDS** | **$7,725,359** | **$7,770,877** | **$9,595,678** |
| **GRAND TOTAL** | **$41,975,651** | **$27,720,846** | **$70,763,215** |

2.B. Page 5 of 6

**2.B. Summary of Budget By Method of Finance**

86th Regular Session, Fiscal Year 2020 Operating Budget

Automated Budget and Evaluation System of Texas (ABEST)

DATE: **12/18/2019**

TIME: **11:10:58AM**

Agency code: **307**    Agency name: **Secretary of State**

| METHOD OF FINANCING | Exp 2018 | Exp 2019 | Bud 2020 |
|---|---|---|---|
| **FULL-TIME-EQUIVALENT POSITIONS** | | | |
| REGULAR APPROPRIATIONS | | | |
| Regular Appropriations from MOF Table (2020-21 GAA) | 0.0 | 0.0 | 205.0 |
| Regular Appropriations from MOF Table (2018-19 GAA) | 205.0 | 203.0 | 0.0 |
| LAPSED APPROPRIATIONS | | | |
| Regular Appropriations from MOF Table (2018-19 GAA) | (29.4) | (27.6) | 0.0 |
| **Comments:** The agency experienced challenges in hiring and retaining certain skilled and non-skilled positions. | | | |
| **TOTAL, ADJUSTED FTES** | **175.6** | **175.4** | **205.0** |

**NUMBER OF 100% FEDERALLY FUNDED FTEs**

**2.C. Summary of Budget By Object of Expense**
86th Regular Session, Fiscal Year 2020 Operating Budget
Automated Budget and Evaluation System of Texas (ABEST)

DATE: **12/18/2019**
TIME: **11:11:27AM**

Agency code:  **307**          Agency name:  **Secretary of State**

| OBJECT OF EXPENSE | EXP 2018 | EXP 2019 | BUD 2020 |
|---|---|---|---|
| 1001  SALARIES AND WAGES | $9,184,708 | $9,295,340 | $10,130,943 |
| 1002  OTHER PERSONNEL COSTS | $855,379 | $446,320 | $444,100 |
| 2001  PROFESSIONAL FEES AND SERVICES | $2,078,372 | $4,731,352 | $2,346,033 |
| 2002  FUELS AND LUBRICANTS | $220 | $829 | $600 |
| 2003  CONSUMABLE SUPPLIES | $93,978 | $95,579 | $115,100 |
| 2004  UTILITIES | $29,158 | $35,310 | $43,500 |
| 2005  TRAVEL | $185,251 | $125,635 | $141,090 |
| 2006  RENT - BUILDING | $33,885 | $37,616 | $32,250 |
| 2007  RENT - MACHINE AND OTHER | $58,792 | $69,226 | $96,950 |
| 2009  OTHER OPERATING EXPENSE | $8,932,590 | $12,205,269 | $34,435,549 |
| 4000  GRANTS | $20,474,266 | $502,962 | $22,777,100 |
| 5000  CAPITAL EXPENDITURES | $49,052 | $175,408 | $200,000 |
| **Agency Total** | **$41,975,651** | **$27,720,846** | **$70,763,215** |

2.C. Page 1 of 1

**2.D. Summary of Budget By Objective Outcomes**
86th Regular Session, Fiscal Year 2020 Operating Budget
Automated Budget and Evaluation system of Texas (ABEST)

Date : **12/18/2019**
Time: **11:11:59AM**

Agency code:  **307**          Agency name:  **Secretary of State**

| Goal/ *Objective* / **OUTCOME** | **Exp 2018** | **Exp 2019** | **Bud2020** |
|---|---|---|---|
| 1   Provide and Process Information Efficiently; Enforce Laws/Rules | | | |
| *1              Process Documents & Provide Accurate & Reliable Info on a Timely Basis* | | | |
| **KEY    1 % of Bus, Comm, and Public Filings & Info Requests Completed in 3 Days** | 98.31  % | 98.36  % | 97.00  % |
| **KEY    2 Avg Cost Per Bus, Comm, and Public Filings Trans + Pub Info Request** | 0.57 | 0.56 | 0.65 |
| **3 Average Cost Per Register and Administrative Code Published** | 8,173.50 | 6,309.11 | 8,500.00 |
| 2   Maintain Uniformity & Integrity of Elections; Oversee Election Process | | | |
| *1              Interpret Elect Laws/HAVA; Publish Const Amends; Reimburse Elect Costs* | | | |
| **1 Percent of Election Authorities Assisted or Advised** | 229.66  % | 156.00  % | 100.00  % |
| **2 Percent of Polling Places Having at Least One Accessible Voting Device** | 96.37  % | 77.09  % | 100.00  % |
| **KEY    3 Average Cost Per Election Authority Assisted or Advised** | 7.60 | 6.85 | 7.50 |

2.D. Page 1 of 1

3.A. Strategy Level Detail

DATE:     12/18/2019
TIME:     11:12:33AM

86th Regular Session, Fiscal Year 2020 Operating Budget
Automated Budget and Evaluation System of Texas (ABEST)

---

Agency code:   **307**        Agency name:   **Secretary of State**

GOAL:           1    Provide and Process Information Efficiently; Enforce Laws/Rules

OBJECTIVE:    1    Process Documents & Provide Accurate & Reliable Info on a Timely Basis        Service Categories:

STRATEGY:     1    File/Reject Statutory Filings        Service:   17    Income:   A.2    Age:   B.3

| CODE | DESCRIPTION | EXP 2018 | EXP 2019 | BUD 2020 |
|------|-------------|----------|----------|----------|
| **Output Measures:** | | | | |
| KEY   1 | Number of Business, Comm, and Public Filings Transactions Processed | 2,703,230.00 | 2,768,872.00 | 2,730,000.00 |
| KEY   2 | Number of Requests for Information and Filings Processed | 6,424,746.00 | 6,441,039.00 | 6,250,000.00 |
| **Explanatory/Input Measures:** | | | | |
| 1 | Number of Registrants | 7,501.00 | 5,003.00 | 12,000.00 |
| 2 | Number of Notary Commissions Issued | 111,756.00 | 110,690.00 | 111,000.00 |
| 3 | Business, Commercial, and Public Filings Revenue | 111,207,569.00 | 113,026,552.00 | 103,000,000.00 |
| **Objects of Expense:** | | | | |
| 1001 | SALARIES AND WAGES | $3,916,629 | $3,865,844 | $4,076,178 |
| 1002 | OTHER PERSONNEL COSTS | $371,276 | $144,082 | $205,900 |
| 2001 | PROFESSIONAL FEES AND SERVICES | $377,774 | $478,125 | $525,000 |
| 2003 | CONSUMABLE SUPPLIES | $66,039 | $71,393 | $78,600 |
| 2004 | UTILITIES | $1,960 | $2,223 | $1,500 |
| 2005 | TRAVEL | $4,079 | $8,206 | $5,300 |
| 2007 | RENT - MACHINE AND OTHER | $28,927 | $37,395 | $39,600 |
| 2009 | OTHER OPERATING EXPENSE | $525,950 | $2,587,972 | $2,987,442 |
| 5000 | CAPITAL EXPENDITURES | $0 | $34,948 | $200,000 |
| **TOTAL, OBJECT OF EXPENSE** | | **$5,292,634** | **$7,230,188** | **$8,119,520** |
| **Method of Financing:** | | | | |
| 1 | General Revenue Fund | $203 | $2,136,059 | $1,156,520 |
| **SUBTOTAL, MOF (GENERAL REVENUE FUNDS)** | | **$203** | **$2,136,059** | **$1,156,520** |
| **Method of Financing:** | | | | |
| 666 | Appropriated Receipts | $5,292,431 | $5,094,129 | $6,963,000 |

**3.A. Strategy Level Detail**

DATE:  12/18/2019
TIME:  11:12:33AM

86th Regular Session, Fiscal Year 2020 Operating Budget
Automated Budget and Evaluation System of Texas (ABEST)

| | | |
|---|---|---|
| Agency code: | **307** | Agency name: **Secretary of State** |

GOAL:  1   Provide and Process Information Efficiently; Enforce Laws/Rules

OBJECTIVE:  1   Process Documents & Provide Accurate & Reliable Info on a Timely Basis     Service Categories:

STRATEGY:  1   File/Reject Statutory Filings     Service:  17   Income:  A.2   Age:  B.3

| CODE | DESCRIPTION | EXP 2018 | EXP 2019 | BUD 2020 |
|---|---|---|---|---|
| **SUBTOTAL, MOF (OTHER FUNDS)** | | $5,292,431 | $5,094,129 | $6,963,000 |
| **TOTAL, METHOD OF FINANCE :** | | $5,292,634 | $7,230,188 | $8,119,520 |
| **FULL TIME EQUIVALENT POSITIONS:** | | 94.0 | 94.0 | 101.0 |

**3.A. Strategy Level Detail**

DATE:  12/18/2019
TIME:  11:12:33AM

86th Regular Session, Fiscal Year 2020 Operating Budget
Automated Budget and Evaluation System of Texas (ABEST)

---

Agency code:  **307**  Agency name:  **Secretary of State**

GOAL:  1  Provide and Process Information Efficiently; Enforce Laws/Rules

OBJECTIVE:  2  File & Publish Admin Rules and Agency Public Notices  Service Categories:

STRATEGY:  1  Publish the Texas Register and the Texas Administrative Code  Service:  05  Income:  A.2  Age:  B.3

| CODE | DESCRIPTION | EXP 2018 | EXP 2019 | BUD 2020 |
|---|---|---|---|---|
| **Explanatory/Input Measures:** | | | | |
| 1 | Number of Rules and Notices Filed in the Texas Register | 20,653.00 | 16,804.00 | 0.00 |
| **Objects of Expense:** | | | | |
| 1001 | SALARIES AND WAGES | $334,496 | $357,295 | $352,000 |
| 1002 | OTHER PERSONNEL COSTS | $31,206 | $14,420 | $21,000 |
| 2003 | CONSUMABLE SUPPLIES | $4,215 | $2,435 | $5,000 |
| 2005 | TRAVEL | $1,705 | $0 | $0 |
| 2007 | RENT - MACHINE AND OTHER | $639 | $639 | $750 |
| 2009 | OTHER OPERATING EXPENSE | $55,983 | $68,642 | $79,578 |
| **TOTAL, OBJECT OF EXPENSE** | | **$428,244** | **$443,431** | **$458,328** |
| **Method of Financing:** | | | | |
| 1 | General Revenue Fund | $391,694 | $423,820 | $390,650 |
| **SUBTOTAL, MOF (GENERAL REVENUE FUNDS)** | | **$391,694** | **$423,820** | **$390,650** |
| **Method of Financing:** | | | | |
| 666 | Appropriated Receipts | $36,550 | $19,611 | $67,678 |
| **SUBTOTAL, MOF  (OTHER FUNDS)** | | **$36,550** | **$19,611** | **$67,678** |
| **TOTAL, METHOD OF FINANCE :** | | **$428,244** | **$443,431** | **$458,328** |
| **FULL TIME EQUIVALENT POSITIONS:** | | **8.0** | **8.0** | **8.0** |

**3.A. Strategy Level Detail**

DATE: 12/18/2019

TIME: 11:12:33AM

86th Regular Session, Fiscal Year 2020 Operating Budget

Automated Budget and Evaluation System of Texas (ABEST)

---

Agency code: **307**    Agency name:    **Secretary of State**

GOAL:    2    Maintain Uniformity & Integrity of Elections; Oversee Election Process

OBJECTIVE:    1    Interpret Elect Laws/HAVA; Publish Const Amends; Reimburse Elect Costs    Service Categories:

STRATEGY:    1    Provide Statewide Elections Administration    Service:    07    Income:    A.2    Age:    B.3

---

| CODE | DESCRIPTION | EXP 2018 | EXP 2019 | BUD 2020 |
|------|-------------|----------|----------|----------|
| **Output Measures:** | | | | |
| KEY   1 | Number of Election Officials Assisted or Advised | 259,545.00 | 176,298.00 | 235,000.00 |
| 2 | Number of Public Customers Advised, Trained or Assisted | 117,698.00 | 5,919,513.00 | 160,000.00 |
| **Explanatory/Input Measures:** | | | | |
| 1 | Number of Registered Voters | 15,249,541.00 | 15,793,257.00 | 15,700,000.00 |
| **Objects of Expense:** | | | | |
| 1001 | SALARIES AND WAGES | $1,311,079 | $1,353,487 | $1,479,000 |
| 1002 | OTHER PERSONNEL COSTS | $104,537 | $61,967 | $52,000 |
| 2001 | PROFESSIONAL FEES AND SERVICES | $2,875 | $213,785 | $22,500 |
| 2003 | CONSUMABLE SUPPLIES | $10,368 | $7,401 | $13,000 |
| 2004 | UTILITIES | $3,328 | $4,548 | $2,500 |
| 2005 | TRAVEL | $61,444 | $54,549 | $60,950 |
| 2006 | RENT - BUILDING | $0 | $0 | $250 |
| 2007 | RENT - MACHINE AND OTHER | $7,167 | $8,277 | $35,000 |
| 2009 | OTHER OPERATING EXPENSE | $2,948,464 | $4,722,573 | $5,447,400 |
| | **TOTAL, OBJECT OF EXPENSE** | **$4,449,262** | **$6,426,587** | **$7,112,600** |
| **Method of Financing:** | | | | |
| 1 | General Revenue Fund | $3,455,136 | $4,477,705 | $6,489,600 |
| | **SUBTOTAL, MOF (GENERAL REVENUE FUNDS)** | **$3,455,136** | **$4,477,705** | **$6,489,600** |
| **Method of Financing:** | | | | |
| 666 | Appropriated Receipts | $994,126 | $1,948,882 | $623,000 |
| | **SUBTOTAL, MOF  (OTHER FUNDS)** | **$994,126** | **$1,948,882** | **$623,000** |

**3.A. Strategy Level Detail**

86th Regular Session, Fiscal Year 2020 Operating Budget

Automated Budget and Evaluation System of Texas (ABEST)

DATE:   12/18/2019

TIME:   11:12:33AM

---

Agency code:   **307**      Agency name:   **Secretary of State**

GOAL:         2    Maintain Uniformity & Integrity of Elections; Oversee Election Process

OBJECTIVE:   1    Interpret Elect Laws/HAVA; Publish Const Amends; Reimburse Elect Costs        Service Categories:

STRATEGY:    1    Provide Statewide Elections Administration        Service:   07    Income:   A.2    Age:   B.3

| CODE | DESCRIPTION | EXP 2018 | EXP 2019 | BUD 2020 |
|------|-------------|----------|----------|----------|
| **TOTAL, METHOD OF FINANCE :** | | **$4,449,262** | **$6,426,587** | **$7,112,600** |
| **FULL TIME EQUIVALENT POSITIONS:** | | **17.0** | **18.0** | **26.0** |

3.A. Page 5 of 13

**3.A. Strategy Level Detail**

DATE:   12/18/2019
TIME:   11:12:33AM

86th Regular Session, Fiscal Year 2020 Operating Budget
Automated Budget and Evaluation System of Texas (ABEST)

---

Agency code:   **307**   Agency name:   **Secretary of State**

GOAL:   2   Maintain Uniformity & Integrity of Elections; Oversee Election Process

OBJECTIVE:   1   Interpret Elect Laws/HAVA; Publish Const Amends; Reimburse Elect Costs   Service Categories:

STRATEGY:   2   Primary Election Financing; VR Postal Payment to Postal Services   Service:   07   Income:   A.2   Age:   B.3

| CODE | DESCRIPTION | EXP 2018 | EXP 2019 | BUD 2020 |
|---|---|---|---|---|
| **Efficiency Measures:** | | | | |
| 1 | Program Mgmt Cost Per Dollar of Primary Election Funds Distributed | 0.02 | 0.00 | 0.01 |
| 2 | Program Mgmt Cost Per Dollar of Voter Registration Postage Reimbursed | 0.23 | 0.17 | 0.20 |
| **Explanatory/Input Measures:** | | | | |
| 1 | Amount of Primary Election Funds Distributed to Political Parties | 10,893,133.00 | 0.00 | 15,000,000.00 |
| 2 | Amount of Voter Registration Postage Reimbursed to Counties | 188,613.00 | 254,135.00 | 375,000.00 |
| **Objects of Expense:** | | | | |
| 1001 | SALARIES AND WAGES | $169,732 | $172,868 | $178,000 |
| 1002 | OTHER PERSONNEL COSTS | $16,890 | $3,660 | $4,000 |
| 2009 | OTHER OPERATING EXPENSE | $190,475 | $1,286,171 | $417,000 |
| 4000 | GRANTS | $17,127,230 | $0 | $17,999,600 |
| **TOTAL, OBJECT OF EXPENSE** | | **$17,504,327** | **$1,462,699** | **$18,598,600** |
| **Method of Financing:** | | | | |
| 1 | General Revenue Fund | $17,504,327 | $1,462,699 | $18,598,600 |
| **SUBTOTAL, MOF (GENERAL REVENUE FUNDS)** | | **$17,504,327** | **$1,462,699** | **$18,598,600** |
| **TOTAL, METHOD OF FINANCE :** | | **$17,504,327** | **$1,462,699** | **$18,598,600** |
| **FULL TIME EQUIVALENT POSITIONS:** | | **3.0** | **3.0** | **3.0** |

**3.A. Strategy Level Detail**

86th Regular Session, Fiscal Year 2020 Operating Budget
Automated Budget and Evaluation System of Texas (ABEST)

DATE:    12/18/2019
TIME:    11:12:33AM

---

| Agency code: | **307** | Agency name: | **Secretary of State** | | | |
|---|---|---|---|---|---|---|

GOAL:    2    Maintain Uniformity & Integrity of Elections; Oversee Election Process

OBJECTIVE:    1    Interpret Elect Laws/HAVA; Publish Const Amends; Reimburse Elect Costs          Service Categories:

STRATEGY:    3    Publish and Interpret Constitutional Amendments          Service:    05    Income:    A.2    Age:    B.3

| CODE | DESCRIPTION | EXP 2018 | EXP 2019 | BUD 2020 |
|---|---|---|---|---|
| **Output Measures:** | | | | |
| KEY    1 | Number of Constitutional Amendment Translations Mailed | 2,054,937.00 | 0.00 | 2,054,937.00 |
| **Efficiency Measures:** | | | | |
| 1 | Average Cost Per Amendment Published | 169,600.80 | 0.00 | 205,493.00 |
| **Objects of Expense:** | | | | |
| 2009 | OTHER OPERATING EXPENSE | $1,182,650 | $3,112 | $1,233,000 |
| | **TOTAL, OBJECT OF EXPENSE** | **$1,182,650** | **$3,112** | **$1,233,000** |
| | | | | |
| **Method of Financing:** | | | | |
| 1 | General Revenue Fund | $1,182,650 | $3,112 | $1,233,000 |
| | **SUBTOTAL, MOF (GENERAL REVENUE FUNDS)** | **$1,182,650** | **$3,112** | **$1,233,000** |
| | | | | |
| | **TOTAL, METHOD OF FINANCE :** | **$1,182,650** | **$3,112** | **$1,233,000** |
| | **FULL TIME EQUIVALENT POSITIONS:** | | | |

**3.A. Strategy Level Detail**

86th Regular Session, Fiscal Year 2020 Operating Budget
Automated Budget and Evaluation System of Texas (ABEST)

DATE: 12/18/2019
TIME: 11:12:33AM

---

Agency code: **307**    Agency name:    **Secretary of State**

GOAL:    2    Maintain Uniformity & Integrity of Elections; Oversee Election Process

OBJECTIVE:    1    Interpret Elect Laws/HAVA; Publish Const Amends; Reimburse Elect Costs    Service Categories:

STRATEGY:    4    Administer the Federal Help America Vote Act (HAVA)    Service:    07    Income:    A.2    Age:    B.3

---

| CODE | DESCRIPTION | EXP 2018 | EXP 2019 | BUD 2020 |
|---|---|---|---|---|
| **Explanatory/Input Measures:** | | | | |
| 1 | Number of Counties Using Voter Registration Online | 213.00 | 216.00 | 0.00 |
| 2 | Number of Federal HAVA Dollars Spent Per Voting Age Population | 0.00 | 0.12 | 0.00 |
| **Objects of Expense:** | | | | |
| 2001 | PROFESSIONAL FEES AND SERVICES | $5,220 | $2,830,698 | $0 |
| 2009 | OTHER OPERATING EXPENSE | $3,502,913 | $2,865,422 | $23,471,579 |
| 5000 | CAPITAL EXPENDITURES | $0 | $67,740 | $0 |
| **TOTAL, OBJECT OF EXPENSE** | | **$3,508,133** | **$5,763,860** | **$23,471,579** |
| **Method of Financing:** | | | | |
| 1 | General Revenue Fund | $0 | $0 | $1,162,630 |
| **SUBTOTAL, MOF (GENERAL REVENUE FUNDS)** | | **$0** | **$0** | **$1,162,630** |
| **Method of Financing:** | | | | |
| 5095 | Election Improvement Fund | $147,279 | $606,589 | $675,000 |
| **SUBTOTAL, MOF (GENERAL REVENUE FUNDS - DEDICATED)** | | **$147,279** | **$606,589** | **$675,000** |
| **Method of Financing:** | | | | |
| 555 | Federal Funds | | | |
| 39.011.000 | Election Reform Payments | $3,223,040 | $3,095,919 | $1,549,016 |
| 90.404.000 | 2018 HAVA Election Security Grants | $137,814 | $2,061,352 | $20,084,933 |
| CFDA Subtotal, Fund    555 | | $3,360,854 | $5,157,271 | $21,633,949 |
| **SUBTOTAL, MOF (FEDERAL FUNDS)** | | **$3,360,854** | **$5,157,271** | **$21,633,949** |
| **TOTAL, METHOD OF FINANCE :** | | **$3,508,133** | **$5,763,860** | **$23,471,579** |
| **FULL TIME EQUIVALENT POSITIONS:** | | **2.0** | **0.0** | **0.0** |

3.A. Page 8 of 13

**3.A. Strategy Level Detail**

86th Regular Session, Fiscal Year 2020 Operating Budget
Automated Budget and Evaluation System of Texas (ABEST)

DATE:   12/18/2019
TIME:   11:12:33AM

| Agency code: | **307** | Agency name: | **Secretary of State** |

GOAL:          2   Maintain Uniformity & Integrity of Elections; Oversee Election Process

OBJECTIVE:     1   Interpret Elect Laws/HAVA; Publish Const Amends; Reimburse Elect Costs          Service Categories:

STRATEGY:      5   Payments to Counties for Voter Registration Activity. Estimated.          Service:   07   Income:   A.2   Age:   B.3

| CODE | DESCRIPTION | EXP 2018 | EXP 2019 | BUD 2020 |
|------|-------------|----------|----------|----------|
| **Objects of Expense:** | | | | |
| 4000  GRANTS | | $3,347,036 | $502,962 | $4,777,500 |
| **TOTAL, OBJECT OF EXPENSE** | | **$3,347,036** | **$502,962** | **$4,777,500** |
| | | | | |
| **Method of Financing:** | | | | |
| 1  General Revenue Fund | | $3,347,036 | $502,962 | $4,777,500 |
| **SUBTOTAL, MOF (GENERAL REVENUE FUNDS)** | | **$3,347,036** | **$502,962** | **$4,777,500** |
| | | | | |
| **TOTAL, METHOD OF FINANCE :** | | **$3,347,036** | **$502,962** | **$4,777,500** |
| **FULL TIME EQUIVALENT POSITIONS:** | | **5.0** | **6.0** | **0.0** |

**3.A. Strategy Level Detail**

86th Regular Session, Fiscal Year 2020 Operating Budget
Automated Budget and Evaluation System of Texas (ABEST)

DATE:   12/18/2019
TIME:   11:12:33AM

| | | |
|---|---|---|
| Agency code: | **307** | Agency name:   **Secretary of State** |

GOAL:   3   International Protocol

OBJECTIVE:   1   Provide Protocol Services and Representation on Border Issues          Service Categories:

STRATEGY:   1   Provide Protocol Services and Representation on Border Issues          Service:   02   Income:   A.2   Age:   B.3

| CODE | DESCRIPTION | EXP 2018 | EXP 2019 | BUD 2020 |
|---|---|---:|---:|---:|
| **Output Measures:** | | | | |
| 1 | # Meetings w/Intern'l Diplomatic Off/Foreign Gov Off/Bus Leaders | 82.00 | 46.00 | 80.00 |
| 2 | Number of Border Events Attended | 146.00 | 174.00 | 55.00 |
| **Objects of Expense:** | | | | |
| 1001 | SALARIES AND WAGES | $233,678 | $227,702 | $253,606 |
| 1002 | OTHER PERSONNEL COSTS | $18,033 | $29,088 | $8,200 |
| 2004 | UTILITIES | $1,340 | $1,690 | $0 |
| 2005 | TRAVEL | $21,133 | $28,855 | $16,300 |
| 2009 | OTHER OPERATING EXPENSE | $3,922 | $4,972 | $2,500 |
| **TOTAL, OBJECT OF EXPENSE** | | **$278,106** | **$292,307** | **$280,606** |
| | | | | |
| **Method of Financing:** | | | | |
| 1 | General Revenue Fund | $278,106 | $292,307 | $280,606 |
| **SUBTOTAL, MOF (GENERAL REVENUE FUNDS)** | | **$278,106** | **$292,307** | **$280,606** |
| | | | | |
| **TOTAL, METHOD OF FINANCE :** | | **$278,106** | **$292,307** | **$280,606** |
| | | | | |
| **FULL TIME EQUIVALENT POSITIONS:** | | **3.0** | **2.0** | **3.0** |

3.A. Page 10 of 13

**3.A. Strategy Level Detail**

86th Regular Session, Fiscal Year 2020 Operating Budget
Automated Budget and Evaluation System of Texas (ABEST)

DATE:  12/18/2019
TIME:  11:12:33AM

| | | | | | |
|---|---|---|---|---|---|
| Agency code: | **307** | Agency name: | **Secretary of State** | | |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| GOAL: | 3 | International Protocol | | | | | | |
| OBJECTIVE: | 1 | Provide Protocol Services and Representation on Border Issues | Service Categories: | | | | | |
| STRATEGY: | 2 | Improve Physical Living Conditions in Colonias | Service: | 07 | Income: | A.1 | Age: | B.3 |

| CODE | DESCRIPTION | EXP 2018 | EXP 2019 | BUD 2020 |
|---|---|---|---|---|
| **Objects of Expense:** | | | | |
| 1001 | SALARIES AND WAGES | $0 | $0 | $0 |
| 1002 | OTHER PERSONNEL COSTS | $0 | $0 | $0 |
| 2003 | CONSUMABLE SUPPLIES | $0 | $0 | $0 |
| 2004 | UTILITIES | $0 | $0 | $0 |
| 2005 | TRAVEL | $0 | $0 | $0 |
| 2006 | RENT - BUILDING | $0 | $0 | $0 |
| 2009 | OTHER OPERATING EXPENSE | $0 | $0 | $0 |
| **TOTAL, OBJECT OF EXPENSE** | | **$0** | **$0** | **$0** |
| | | | | |
| **Method of Financing:** | | | | |
| 1 | General Revenue Fund | $0 | $0 | $0 |
| **SUBTOTAL, MOF (GENERAL REVENUE FUNDS)** | | **$0** | **$0** | **$0** |
| | | | | |
| **TOTAL, METHOD OF FINANCE :** | | **$0** | **$0** | **$0** |
| | | | | |
| **FULL TIME EQUIVALENT POSITIONS:** | | **0.0** | **0.0** | **0.0** |

3.A. Page 11 of 13

**3.A. Strategy Level Detail**

86th Regular Session, Fiscal Year 2020 Operating Budget
Automated Budget and Evaluation System of Texas (ABEST)

DATE:  12/18/2019
TIME:  11:12:33AM

| Agency code: | **307** | Agency name: | **Secretary of State** | | | | |
|---|---|---|---|---|---|---|---|

| GOAL: | 4 | Indirect Administration | | | | | | |
|---|---|---|---|---|---|---|---|---|
| OBJECTIVE: | 1 | Indirect Administration | | Service Categories: | | | | |
| STRATEGY: | 1 | Indirect Administration | | Service: | 09 | Income: A.2 | Age: B.3 | |

| CODE | DESCRIPTION | EXP 2018 | EXP 2019 | BUD 2020 |
|---|---|---|---|---|
| **Objects of Expense:** | | | | |
| 1001 | SALARIES AND WAGES | $3,219,094 | $3,318,144 | $3,792,159 |
| 1002 | OTHER PERSONNEL COSTS | $313,437 | $193,103 | $153,000 |
| 2001 | PROFESSIONAL FEES AND SERVICES | $1,692,503 | $1,208,744 | $1,798,533 |
| 2002 | FUELS AND LUBRICANTS | $220 | $829 | $600 |
| 2003 | CONSUMABLE SUPPLIES | $13,356 | $14,350 | $18,500 |
| 2004 | UTILITIES | $22,530 | $26,849 | $39,500 |
| 2005 | TRAVEL | $96,890 | $34,025 | $58,540 |
| 2006 | RENT - BUILDING | $33,885 | $37,616 | $32,000 |
| 2007 | RENT - MACHINE AND OTHER | $22,059 | $22,915 | $21,600 |
| 2009 | OTHER OPERATING EXPENSE | $522,233 | $666,405 | $797,050 |
| 5000 | CAPITAL EXPENDITURES | $49,052 | $72,720 | $0 |
| **TOTAL, OBJECT OF EXPENSE** | | **$5,985,259** | **$5,595,700** | **$6,711,482** |
| | | | | |
| **Method of Financing:** | | | | |
| 1 | General Revenue Fund | $4,583,007 | $4,887,445 | $4,769,482 |
| **SUBTOTAL, MOF (GENERAL REVENUE FUNDS)** | | **$4,583,007** | **$4,887,445** | **$4,769,482** |
| | | | | |
| **Method of Financing:** | | | | |
| 666 | Appropriated Receipts | $1,402,252 | $708,255 | $1,942,000 |
| **SUBTOTAL, MOF (OTHER FUNDS)** | | **$1,402,252** | **$708,255** | **$1,942,000** |
| | | | | |
| **TOTAL, METHOD OF FINANCE :** | | **$5,985,259** | **$5,595,700** | **$6,711,482** |
| | | | | |
| **FULL TIME EQUIVALENT POSITIONS:** | | **43.6** | **44.4** | **64.0** |

**3.A. Strategy Level Detail**

86th Regular Session, Fiscal Year 2020 Operating Budget
Automated Budget and Evaluation System of Texas (ABEST)

DATE:      12/18/2019
TIME:      11:12:33AM

---

**SUMMARY TOTALS:**

| | | | |
|---|---|---|---|
| **OBJECTS OF EXPENSE:** | $41,975,651 | $27,720,846 | $70,763,215 |
| **METHODS OF FINANCE :** | $41,975,651 | $27,720,846 | $70,763,215 |
| **FULL TIME EQUIVALENT POSITIONS:** | 175.6 | 175.4 | 205.0 |

3.A. Page 13 of 13

**4.A. Capital Budget Project Schedule**
86th Regular Session, Fiscal Year 2020 Operating Budget
Automated Budget and Evaluation System of Texas (ABEST)

DATE: **12/18/2019**
TIME: **11:13:02AM**

Agency code:   **307**                                                              Agency name: **Secretary of State**

**Category Code / Category Name**
    *Project Sequence/Project Id/ Name*

| OOE / TOF / MOF CODE | | EXP 2018 | EXP 2019 | BUD 2020 |
|---|---|---|---|---|
| **5005  Acquisition of Information Resource Technologies** | | | | |
| *1/1 Acquisition of Information Resource Technologies* | | | | |
| **OBJECTS OF EXPENSE** | | | | |
| Capital | | | | |
| 1001  SALARIES AND WAGES | | $0 | $0 | $200,000 |
| 5000  CAPITAL EXPENDITURES | | $49,052 | $72,720 | $0 |
| Capital Subtotal OOE, Project | 1 | $49,052 | $72,720 | $200,000 |
| Subtotal OOE, Project | 1 | **$49,052** | **$72,720** | **$200,000** |
| **TYPE OF FINANCING** | | | | |
| Capital | | | | |
| CA      1   General Revenue Fund | | $49,052 | $72,720 | $200,000 |
| Capital Subtotal TOF, Project | 1 | $49,052 | $72,720 | $200,000 |
| Subtotal TOF, Project | 1 | **$49,052** | **$72,720** | **$200,000** |
| *2/2 Business Entity Secured Transaction System Replacement Study* | | | | |
| **OBJECTS OF EXPENSE** | | | | |
| Capital | | | | |
| 5000  CAPITAL EXPENDITURES | | $0 | $0 | $200,000 |
| Capital Subtotal OOE, Project | 2 | $0 | $0 | $200,000 |
| Subtotal OOE, Project | 2 | **$0** | **$0** | **$200,000** |
| **TYPE OF FINANCING** | | | | |
| Capital | | | | |
| CA      1   General Revenue Fund | | $0 | $0 | $200,000 |
| Capital Subtotal TOF, Project | 2 | $0 | $0 | $200,000 |
| Subtotal TOF, Project | 2 | **$0** | **$0** | **$200,000** |

4.A. Page 1 of 4

**4.A. Capital Budget Project Schedule**
86th Regular Session, Fiscal Year 2020 Operating Budget
Automated Budget and Evaluation System of Texas (ABEST)

DATE:  **12/18/2019**
TIME :  **11:13:02AM**

Agency code:   **307**                                     Agency name:  **Secretary of State**

**Category Code / Category Name**
*Project Sequence/Project Id/ Name*

| OOE / TOF / MOF CODE | EXP 2018 | EXP 2019 | BUD 2020 |
|---|---|---|---|
| Capital Subtotal, Category      5005 | $49,052 | $72,720 | $400,000 |
| Informational Subtotal, Category      5005 | | | |
| **Total, Category      5005** | **$49,052** | **$72,720** | **$400,000** |

**7000  Data Center Consolidation**

*3/3 Data Center Consolidation*
**OBJECTS OF EXPENSE**
Capital

| | | | |
|---|---|---|---|
| 2001  PROFESSIONAL FEES AND SERVICES | $1,489,366 | $1,138,476 | $1,003,075 |
| Capital Subtotal OOE, Project      3 | $1,489,366 | $1,138,476 | $1,003,075 |
| Subtotal OOE, Project      3 | **$1,489,366** | **$1,138,476** | **$1,003,075** |

**TYPE OF FINANCING**
Capital

| | | | |
|---|---|---|---|
| CA      1   General Revenue Fund | $1,489,366 | $1,138,476 | $1,003,075 |
| Capital Subtotal TOF, Project      3 | $1,489,366 | $1,138,476 | $1,003,075 |
| Subtotal TOF, Project      3 | **$1,489,366** | **$1,138,476** | **$1,003,075** |
| Capital Subtotal, Category      7000 | $1,489,366 | $1,138,476 | $1,003,075 |
| Informational Subtotal, Category      7000 | | | |
| **Total, Category      7000** | **$1,489,366** | **$1,138,476** | **$1,003,075** |

**8000  Centralized Accounting and Payroll/Personnel System (CAPPS)**

*4/4 CAPPS Accounting Implementation*
**OBJECTS OF EXPENSE**
Capital

| | | | |
|---|---|---|---|
| 1001  SALARIES AND WAGES | $157,688 | $0 | $200,000 |

4.A. Page 2 of 4

**4.A. Capital Budget Project Schedule**
86th Regular Session, Fiscal Year 2020 Operating Budget
Automated Budget and Evaluation System of Texas (ABEST)

DATE: **12/18/2019**
TIME: **11:13:02AM**

Agency code: **307**    Agency name: **Secretary of State**

**Category Code / Category Name**
*Project Sequence/Project Id/ Name*

| OOE / TOF / MOF CODE | | EXP 2018 | EXP 2019 | BUD 2020 |
|---|---|---|---|---|
| Capital Subtotal OOE, Project | 4 | $157,688 | $0 | $200,000 |
| Subtotal OOE, Project | 4 | **$157,688** | **$0** | **$200,000** |
| **TYPE OF FINANCING** | | | | |
| Capital | | | | |
| CA    1   General Revenue Fund | | $157,688 | $0 | $200,000 |
| Capital Subtotal TOF, Project | 4 | $157,688 | $0 | $200,000 |
| Subtotal TOF, Project | 4 | **$157,688** | **$0** | **$200,000** |
| Capital Subtotal, Category    8000 | | $157,688 | $0 | $200,000 |
| Informational Subtotal, Category    8000 | | | | |
| **Total, Category    8000** | | **$157,688** | **$0** | **$200,000** |
| **AGENCY TOTAL -CAPITAL** | | **$1,696,106** | **$1,211,196** | **$1,603,075** |
| **AGENCY TOTAL -INFORMATIONAL** | | | | |
| **AGENCY TOTAL** | | **$1,696,106** | **$1,211,196** | **$1,603,075** |
| **METHOD OF FINANCING:** | | | | |
| Capital | | | | |
| 1   General Revenue Fund | | $1,696,106 | $1,211,196 | $1,603,075 |
| Total, Method of Financing-Capital | | $1,696,106 | $1,211,196 | $1,603,075 |
| **Total, Method of Financing** | | **$1,696,106** | **$1,211,196** | **$1,603,075** |

4.A. Page 3 of 4

**4.A. Capital Budget Project Schedule**
86th Regular Session, Fiscal Year 2020 Operating Budget
Automated Budget and Evaluation System of Texas (ABEST)

DATE: **12/18/2019**
TIME : **11:13:02AM**

Agency code:   **307**

Agency name: **Secretary of State**

**Category Code / Category Name**
*Project Sequence/Project Id/ Name*

| OOE / TOF / MOF CODE | EXP 2018 | EXP 2019 | BUD 2020 |
|---|---|---|---|
| **TYPE OF FINANCING:** | | | |
| <u>Capital</u> | | | |
| CA     CURRENT APPROPRIATIONS | $1,696,106 | $1,211,196 | $1,603,075 |
| Total, Type of Financing-Capital | $1,696,106 | $1,211,196 | $1,603,075 |
| **Total,Type of Financing** | **$1,696,106** | **$1,211,196** | **$1,603,075** |

4.A. Page 4 of 4

**Capital Budget Allocation to Strategies**

86th Regular Session, Fiscal Year 2020 Operating Budget

Automated Budget and Evaluation System of Texas (ABEST)

DATE: **12/18/2019**
TIME: **11:13:24AM**

Agency code: **307**       Agency name: **Secretary of State**

**Category Code/Name**

*Project Sequence/Project Id/Name*

| | Goal/Obj/Str | Strategy Name | EXP 2018 | EXP 2019 | BUD 2020 |
|---|---|---|---|---|---|
| **5005** | **Acquisition of Information Resource Technologies** | | | | |
| *1/1* | | *Acquisition of Info. Resource Tech.* | | | |
| Capital | 1-1-1 | DOCUMENT FILING | 0 | 0 | $200,000 |
| Capital | 4-1-1 | INDIRECT ADMINISTRATION | 49,052 | 72,720 | 0 |
| | | TOTAL, PROJECT | $49,052 | $72,720 | $200,000 |
| *2/2* | | *B.E.S.T. Replacement Study* | | | |
| Capital | 1-1-1 | DOCUMENT FILING | 0 | 0 | 200,000 |
| | | TOTAL, PROJECT | $0 | $0 | $200,000 |
| **7000** | **Data Center Consolidation** | | | | |
| *3/3* | | *Data Center Consolidation* | | | |
| Capital | 4-1-1 | INDIRECT ADMINISTRATION | 1,489,366 | 1,138,476 | 1,003,075 |
| | | TOTAL, PROJECT | $1,489,366 | $1,138,476 | $1,003,075 |
| **8000** | **Centralized Accounting and Payroll/Personnel System (CAPPS)** | | | | |
| *4/4* | | *CAPPS Accounting Implementation* | | | |
| Capital | 4-1-1 | INDIRECT ADMINISTRATION | 157,688 | 0 | 200,000 |
| | | TOTAL, PROJECT | $157,688 | $0 | $200,000 |

Page 1 of 2

**Capital Budget Allocation to Strategies**

86th Regular Session, Fiscal Year 2020 Operating Budget

Automated Budget and Evaluation System of Texas (ABEST)

DATE: **12/18/2019**
TIME: **11:13:24AM**

Agency code:   **307**          Agency name:   **Secretary of State**

**Category Code/Name**

*Project Sequence/Project Id/Name*

| | Goal/Obj/Str | Strategy Name | EXP 2018 | EXP 2019 | BUD 2020 |
|---|---|---|---|---|---|
| | | **TOTAL CAPITAL, ALL PROJECTS** | **$1,696,106** | **$1,211,196** | **$1,603,075** |
| | | **TOTAL INFORMATIONAL, ALL PROJECTS** | | | |
| | | **TOTAL, ALL PROJECTS** | **$1,696,106** | **$1,211,196** | **$1,603,075** |

**4.B. Federal Funds Supporting Schedule**

86th Regular Session, Fiscal Year 2020 Operating Budget

Automated Budget and Evaluation System of Texas (ABEST)

DATE: **12/18/2019**

TIME: **11:13:50AM**

Agency code:   **307**          Agency name:   Secretary of State

| CFDA NUMBER/ STRATEGY | | EXP 2018 | EXP 2019 | BUD 2020 |
|---|---|---|---|---|
| **39.011.000** | Election Reform Payments | | | |
| 2  - 1  - 4 | ELECTIONS IMPROVEMENT | 3,223,040 | 3,095,919 | 1,549,016 |
| | **TOTAL, ALL STRATEGIES** | **$3,223,040** | **$3,095,919** | **$1,549,016** |
| | **ADDL FED FNDS FOR EMPL BENEFITS** | 0 | 0 | 0 |
| | **TOTAL,  FEDERAL FUNDS** | **$3,223,040** | **$3,095,919** | **$1,549,016** |
| | **ADDL GR FOR EMPL BENEFITS** | **$0** | **$0** | **$0** |
| **90.404.000** | 2018 HAVA Election Security Grants | | | |
| 2  - 1  - 4 | ELECTIONS IMPROVEMENT | 137,814 | 2,061,352 | 20,084,933 |
| | **TOTAL, ALL STRATEGIES** | **$137,814** | **$2,061,352** | **$20,084,933** |
| | **ADDL FED FNDS FOR EMPL BENEFITS** | 0 | 0 | 0 |
| | **TOTAL,  FEDERAL FUNDS** | **$137,814** | **$2,061,352** | **$20,084,933** |
| | **ADDL GR FOR EMPL BENEFITS** | **$0** | **$0** | **$0** |

4.B. Page 1 of 2

**4.B. Federal Funds Supporting Schedule**

86th Regular Session, Fiscal Year 2020 Operating Budget

Automated Budget and Evaluation System of Texas (ABEST)

DATE: **12/18/2019**

TIME: **11:13:50AM**

| Agency code: | **307** | Agency name: | Secretary of State | | | |
|---|---|---|---|---|---|---|
| **CFDA  NUMBER**/ STRATEGY | | | | **EXP 2018** | **EXP 2019** | **BUD 2020** |

<u>**SUMMARY LISTING OF FEDERAL PROGRAM AMOUNTS**</u>

| | | EXP 2018 | EXP 2019 | BUD 2020 |
|---|---|---|---|---|
| 39.011.000 | Election Reform Payments | 3,223,040 | 3,095,919 | 1,549,016 |
| 90.404.000 | 2018 HAVA Election Security Grants | 137,814 | 2,061,352 | 20,084,933 |
| **TOTAL, ALL STRATEGIES** | | $3,360,854 | $5,157,271 | $21,633,949 |
| **TOTAL , ADDL FED FUNDS FOR EMPL BENEFITS** | | 0 | 0 | 0 |
| **TOTAL, FEDERAL FUNDS** | | **$3,360,854** | **$5,157,271** | **$21,633,949** |
| **TOTAL, ADDL GR FOR EMPL BENEFITS** | | **$0** | **$0** | **$0** |

4.B. Page 2 of 2

**4.C. Federal Funds Tracking Schedule**
86th Regular Session, Fiscal Year 2020 Operating Budget
Automated Budget and Evaluation System of Texas (ABEST)

DATE: **12/18/2019**
TIME : **11:14:27AM**

Agency code:  **307**          Agency name:  **Secretary of State**

| Federal FY | | Expended SFY 2017 | Estimated SFY 2018 | Budgeted SFY 2019 | Requested SFY 2020 | Requested SFY 2021 | Estimated SFY 2022 | Total | Difference from Award |
|---|---|---|---|---|---|---|---|---|---|
| **CFDA 39.011.000**  Election Reform Payments | | | | | | | | | |
| **2003** | $23,476,116 | $1,365,277 | $1,431,837 | $1,436,837 | $1,091,229 | $0 | $0 | $5,325,180 | $18,150,936 |
| **Total** | **$23,476,116** | **$1,365,277** | **$1,431,837** | **$1,436,837** | **$1,091,229** | **$0** | **$0** | **$5,325,180** | **$18,150,936** |
| **Empl. Benefit Payment** | | $0 | $0 | $0 | $0 | $0 | $0 | $0 | |

4.C. Page 1 of 2

**4.C. Federal Funds Tracking Schedule**
86th Regular Session, Fiscal Year 2020 Operating Budget
Automated Budget and Evaluation System of Texas (ABEST)

DATE: **12/18/2019**
TIME : **11:14:27AM**

Agency code: **307**          Agency name: **Secretary of State**

| Federal FY | Expended SFY 2017 | Estimated SFY 2018 | Budgeted SFY 2019 | Requested SFY 2020 | Requested SFY 2021 | Estimated SFY 2022 | Total | Difference from Award |
|---|---|---|---|---|---|---|---|---|
| **CFDA 90.404.000**  2018 HAVA Election Security Grants | | | | | | | | |
| **2018** | $23,252,604 | $0 | $319,000 | $4,420,000 | $9,790,000 | $0 | $0 | $14,529,000 | $8,723,604 |
| **Total** | **$23,252,604** | **$0** | **$319,000** | **$4,420,000** | **$9,790,000** | **$0** | **$0** | **$14,529,000** | **$8,723,604** |
| **Empl. Benefit Payment** | | $0 | $0 | $0 | $0 | $0 | $0 | $0 | |

4.C. Page 2 of 2

**4.D. Estimated Revenue Collections Supporting Schedule**
86th Regular Session, Fiscal Year 2020 Operating Budget
Automated Budget and Evaluation System of Texas (ABEST)

DATE: 12/18/2019
TIME: 11:15:05AM

Agency Code: **307**        Agency name: **Secretary of State**

| FUND/ACCOUNT | Exp 2018 | Exp 2019 | Bud 2020 |
|---|---|---|---|
| **666**  **Appropriated Receipts** | | | |
| Beginning Balance (Unencumbered): | $1,500,000 | $1,473,862 | $1,750,000 |
| Estimated Revenue: | | | |
| 3719   Fees/Copies or Filing of Records | 6,795,501 | 7,580,038 | 6,600,000 |
| 3722   Conf, Semin, & Train Regis Fees | 282,582 | 333,294 | 300,000 |
| 3752   Sale of Publications/Advertising | 5,000 | 5,000 | 5,000 |
| 3802   Reimbursements-Third Party | 386 | 1,492 | 25,000 |
| 3879   Credit Card and Related Fees | 1,786,797 | 1,842,896 | 1,750,000 |
| Subtotal: Estimated Revenue | 8,870,266 | 9,762,720 | 8,680,000 |
| **Total Available** | **$10,370,266** | **$11,236,582** | **$10,430,000** |
| **Ending Fund/Account Balance** | **$10,370,266** | **$11,236,582** | **$10,430,000** |

**REVENUE ASSUMPTIONS:**

**CONTACT PERSON:**

Alfonso Royal

4.D. Page 1 of 1

**4.F. Part A Budgetary Impacts Related to Recently Enacted State Legislation Schedule**

86th Regular Session, Fiscal Year 2020 Operating Budget

Automated Budget and Evaluation System of Texas (ABEST)

DATE: **12/20/2019**
TIME: **3:16:36PM**

Agency code:   **307**          Agency name:   **Secretary of State**

| | Exp 2019 | Bud 2020 | Est 2021 | Est 2022 | Est 2023 |
|---|---|---|---|---|---|

**Expanded or New Initiative:**          1. Help America Vote Act State Matching Funds

**Legal Authority for Item:**

House Bill No. 1 Conference Committee Report (Eightysixth Legislature, Regular Session)

**Description/Key Assumptions (including start up/implementation costs and ongoing costs):**

5% Required match to ensure the States share of the federal funds $23,252,604.  Funds must be used to improve elections in Texas.  Specifically, the funds will be used to improve security of state and local elections.

**State Budget by Program:**          Elections Improvement
**IT Component:**          No
**Involve Contracts > $50,000:**          No

**Objects of Expense**

**Strategy: 2-1-4 ELECTIONS IMPROVEMENT**

| | | Exp 2019 | Bud 2020 | Est 2021 | Est 2022 | Est 2023 |
|---|---|---|---|---|---|---|
| 2009   OTHER OPERATING EXPENSE | | $0 | $1,162,630 | $0 | $0 | $0 |
| | **SUBTOTAL, Strategy 2-1-4** | **$0** | **$1,162,630** | **$0** | **$0** | **$0** |
| | **TOTAL, Objects of Expense** | **$0** | **$1,162,630** | **$0** | **$0** | **$0** |

**Method of Financing**
**GENERAL REVENUE FUNDS**
**Strategy: 2-1-4 ELECTIONS IMPROVEMENT**

| | | Exp 2019 | Bud 2020 | Est 2021 | Est 2022 | Est 2023 |
|---|---|---|---|---|---|---|
| 1   General Revenue Fund | | $0 | $1,162,630 | $0 | $0 | $0 |
| | **SUBTOTAL, Strategy 2-1-4** | **$0** | **$1,162,630** | **$0** | **$0** | **$0** |
| | **SUBTOTAL, GENERAL REVENUE FUNDS** | **$0** | **$1,162,630** | **$0** | **$0** | **$0** |
| | **TOTAL, Method of Financing** | **$0** | **$1,162,630** | **$0** | **$0** | **$0** |

4.F. Page 1 of 6

**4.F. Part A Budgetary Impacts Related to Recently Enacted State Legislation Schedule**
86th Regular Session, Fiscal Year 2020 Operating Budget
Automated Budget and Evaluation System of Texas (ABEST)

DATE: **12/20/2019**
TIME: **3:16:36PM**

Agency code:   **307**              Agency name:   **Secretary of State**

|  | **Exp 2019** | **Bud 2020** | **Est 2021** | **Est 2022** | **Est 2023** |
|---|---|---|---|---|---|

**Expanded or New Initiative:**              2. Electronic Registration Information Center (ERIC)

**Legal Authority for Item:**
House Bill No. 1 Conference Committee Report (Eightysixth Legislature, Regular Session)

**Description/Key Assumptions (including start up/implementation costs and ongoing costs):**
Texas enrollment in the Electronic Registration Information Center (ERIC) with a focus on improving the accuracy of the state voter rolls and access to registration for citizens.

**State Budget by Program:**      Elections Administration
**IT Component:**                No
**Involve Contracts > $50,000:**    No

**Objects of Expense**

| | | Exp 2019 | Bud 2020 | Est 2021 | Est 2022 | Est 2023 |
|---|---|---|---|---|---|---|
| **Strategy: 2-1-1 ELECTIONS ADMINISTRATION** | | | | | | |
| 2009 | OTHER OPERATING EXPENSE | $0 | $1,500,000 | $0 | $1,500,000 | $0 |
| | **SUBTOTAL, Strategy 2-1-1** | **$0** | **$1,500,000** | **$0** | **$1,500,000** | **$0** |
| | **TOTAL, Objects of Expense** | **$0** | **$1,500,000** | **$0** | **$1,500,000** | **$0** |

**Method of Financing**
**GENERAL REVENUE FUNDS**

| | | Exp 2019 | Bud 2020 | Est 2021 | Est 2022 | Est 2023 |
|---|---|---|---|---|---|---|
| **Strategy: 2-1-1 ELECTIONS ADMINISTRATION** | | | | | | |
| 1 | General Revenue Fund | $0 | $1,500,000 | $0 | $1,500,000 | $0 |
| | **SUBTOTAL, Strategy 2-1-1** | **$0** | **$1,500,000** | **$0** | **$1,500,000** | **$0** |
| | **SUBTOTAL, GENERAL REVENUE FUNDS** | **$0** | **$1,500,000** | **$0** | **$1,500,000** | **$0** |
| | **TOTAL, Method of Financing** | **$0** | **$1,500,000** | **$0** | **$1,500,000** | **$0** |

4.F. Page 2 of 6

**4.F. Part A Budgetary Impacts Related to Recently Enacted State Legislation Schedule**
86th Regular Session, Fiscal Year 2020 Operating Budget
Automated Budget and Evaluation System of Texas (ABEST)

DATE: **12/20/2019**
TIME: **3:16:36PM**

Agency code:   **307**                     Agency name:   **Secretary of State**

| | Exp 2019 | Bud 2020 | Est 2021 | Est 2022 | Est 2023 |
|---|---|---|---|---|---|

**Expanded or New Initiative:**             3. Posting of Election Information on the SOS Internet

**Legal Authority for Item:**
House Bill No. 933 (Eightysixth Legislature, Regular Session)

**Description/Key Assumptions (including start up/implementation costs and ongoing costs):**
Modifications to the Statewide Voter Registration System (TEAM) to allow county election officials working collaboratively with county entities hosting elections to input polling locations for all county and local elections.   Information provided by county officials is now displayed on a newly created Election Information webpage as well as through the My Voter Portal .

**State Budget by Program:**          Elections Improvement
**IT Component:**                  No
**Involve Contracts > $50,000:**       No

4.F. Page 3 of 6

**4.F. Part A Budgetary Impacts Related to Recently Enacted State Legislation Schedule**
86th Regular Session, Fiscal Year 2020 Operating Budget
Automated Budget and Evaluation System of Texas (ABEST)

DATE:   **12/20/2019**
TIME:   **3:16:36PM**

Agency code:   **307**              Agency name:   **Secretary of State**

|  | Exp 2019 | Bud 2020 | Est 2021 | Est 2022 | Est 2023 |
|---|---|---|---|---|---|

**Expanded or New Initiative:**              4. Cybersecurity Enhancements to Voter Registration List

**Legal Authority for Item:**
House Bill No. 1421 (Eightysixth Legislature, Regular Session)

**Description/Key Assumptions (including start up/implementation costs and ongoing costs):**
Development of training, rules, and procedures on best practices for electronic storage and security of election data including conducting security assessments and the notification of security breaches.

**State Budget by Program:**          Elections Improvement
**IT Component:**                     No
**Involve Contracts > $50,000:**      No

4.F. Page 4 of 6

**4.F. Part A Budgetary Impacts Related to Recently Enacted State Legislation Schedule**
86th Regular Session, Fiscal Year 2020 Operating Budget
Automated Budget and Evaluation System of Texas (ABEST)

DATE: **12/20/2019**
TIME: **3:16:36PM**

Agency code:  **307**                              Agency name:  **Secretary of State**

| | Exp 2019 | Bud 2020 | Est 2021 | Est 2022 | Est 2023 |
|---|---|---|---|---|---|

**Expanded or New Initiative:**          5. Candidates Nominated by Convention

**Legal Authority for Item:**
House Bill No. 2504 (Eightysixth Legislature, Regular Session)

**Description/Key Assumptions (including start up/implementation costs and ongoing costs):**
SOS to provide advisory materials related to the filing fee requirements or petitions in lieu of filing fees for candidates nominated by the convention process.

**State Budget by Program:**          Elections Improvement
**IT Component:**                          No
**Involve Contracts > $50,000:**          No

4.F. Page 5 of 6

**4.F. Part A Budgetary Impacts Related to Recently Enacted State Legislation Schedule**
86th Regular Session, Fiscal Year 2020 Operating Budget
Automated Budget and Evaluation System of Texas (ABEST)

DATE: **12/20/2019**
TIME: **3:16:36PM**

Agency code:   **307**                          Agency name:   **Secretary of State**

| | Exp 2019 | Bud 2020 | Est 2021 | Est 2022 | Est 2023 |
|---|---|---|---|---|---|

**Expanded or New Initiative:**                 6. Electronic Devise for Accepting Voters

**Legal Authority for Item:**
House Bill No. 4130 (Eightysixth Legislature, Regular Session)

**Description/Key Assumptions (including start up/implementation costs and ongoing costs):**
SOS to update advisory and training materials for electronic poll books and the certification process.  The updates will include new functional and security requirements along with a requirement for vendors to be compatible with NIST established common data formats.

**State Budget by Program:**          Elections Improvement
**IT Component:**                      No
**Involve Contracts > $50,000:**       No

4.F. Page 6 of 6

**4.F. Part B Summary of Costs Related to Recently Enacted State Legislation Schedule**
86th Regular Session, Fiscal Year 2020 Operating Budget
Automated Budget and Evaluation System of Texas (ABEST)

DATE: **12/20/2019**
TIME: **3:17:20PM**

Agency code:   **307**          Agency name:   **Secretary of State**

| ITEM | EXPANDED OR NEW INITIATIVE | Exp 2019 | Bud 2020 | Est 2021 | Est 2022 | Est 2023 |
|---|---|---|---|---|---|---|
| 1 | Help America Vote Act State Matching Funds | $0 | $1,162,630 | $0 | $0 | $0 |
| 2 | Electronic Registration Information Center (ERIC) | $0 | $1,500,000 | $0 | $1,500,000 | $0 |
| 3 | Posting of Election Information on the SOS Internet | | | | | |
| 4 | Cybersecurity Enhancements to Voter Registration List | | | | | |
| 5 | Candidates Nominated by Convention | | | | | |
| 6 | Electronic Devise for Accepting Voters | | | | | |
| **Total, Cost Related to Expanded or New Initiatives** | | **$0** | **$2,662,630** | **$0** | **$1,500,000** | **$0** |

**METHOD OF FINANCING**

| | | | | | | |
|---|---|---|---|---|---|---|
| | GENERAL REVENUE FUNDS | $0 | $2,662,630 | $0 | $1,500,000 | $0 |
| **Total, Method of Financing** | | **$0** | **$2,662,630** | **$0** | **$1,500,000** | **$0** |

**FULL-TIME-EQUIVALENTS (FTES):**

4.F. Page 1 of 1

Document Filed Under Seal

RICHARDSON: TRUDY HANCOCK

Page 1

```
 1              UNITED STATES DISTRICT COURT
                WESTERN DISTRICT OF TEXAS
 2                SAN ANTONIO DIVISION

 3   DR. GEORGE RICHARDSON;          )
     ROSALIE WEISFELD; AUSTIN JUSTICE )
 4   COALITION; COALITION OF TEXANS   )
     WITH DISABILITIES; MOVE TEXAS    )
 5   CIVIC FUND; LEAGUE OF WOMEN      )
     VOTERS OF TEXAS; and AMERICAN GI )
 6   FORUM OF TEXAS, INC.,            )
                                      )
 7          Plaintiffs,               )
                                      )Civil Case No.
 8   v.                               )5:19-cv-00963-OLG
                                      )
 9   TEXAS SECRETARY OF STATE; TRUDY  )
     HANCOCK, in her official         )
10   capacity as BRAZOS COUNTY        )
     ELECTIONS ADMINISTRATOR; and     )
11   PERLA LARA, in her official      )
     capacity as CITY OF McALLEN,     )
12   TEXAS, SECRETARY,                )
                                      )
13          Defendants.               )

14        ********************************
              REMOTE VIDEOTAPED DEPOSITION OF
15                 TRUDY HANCOCK
                   May 5, 2020
16        ********************************

17   REMOTE VIDEOTAPED DEPOSITION OF TRUDY HANCOCK,

18   produced as a witness at the instance of the

19   Plaintiffs, and duly sworn, was taken in the

20   above-styled and numbered cause on May 5, 2020,

21   from 9:39 a.m. to 1:44 p.m., remotely before

22   Rebecca A. Graziano, CSR, RPR, CRR, in and for the

23   State of Texas, reported by machine shorthand,

24   pursuant to the Federal Rules of Civil Procedure

25   and the provisions stated on the record.
```

**CERTIFIED TRANSCRIPT**

RICHARDSON: TRUDY HANCOCK

Page 2

1                   A P P E A R A N C E S

2

3    REPRESENTING THE PLAINTIFFS:

4    Mr. Hani Mirza (via videoconference)
     Mr. Zachary D. Dolling (via videoconference)
5    TEXAS CIVIL RIGHTS PROJECT
     1405 Montopolis Drive
6    Austin, Texas  78741
     (512) 474-5073
7    hani@texascivilrightsproject.org
     zachary@texascivilrightsproject.org
8
           and
9
     Mr. Samuel Kalar (via videoconference)
10   Ms. Joanna Suriani (via videoconference)
     WILLKIE FARR & GALLAGHER, LLP
11   787 Seventh Avenue
     New York City, New York  10019
12   (212) 728-8000
     skalar@willkie.com
13   jsuriani@willkie.com

14
     REPRESENTING THE DEFENDANT, TEXAS SECRETARY OF
15   STATE:

16   Ms. Anna Mackin (via videoconference)
     OFFICE OF THE ATTORNEY GENERAL
17   300 West 15th Street
     Austin, Texas  78701
18   (512) 463-2100
     anna.mackin@texasattorneygeneral.gov
19

20   REPRESENTING THE DEFENDANT, TRUDY HANCOCK, in her
     official capacity as BRAZOS COUNTY ELECTIONS
21   ADMINISTRATOR:

22   Mr. J. Eric Magee (via videoconference)
     ALLISON, BASS & MAGEE, LLP
23   402 West 12th Street
     Austin, Texas  78701
24   (512) 482-0701
     e.magee@allison-bass.com

25

**hg**

RICHARDSON: TRUDY HANCOCK

Page 3

1                A P P E A R A N C E S

2

3    REPRESENTING THE DEFENDANT, PERLA LARA, in her
     official capacity as CITY OF McALLEN, TEXAS,
4    SECRETARY:

5      Mr. Isaac J. Tawil (via videoconference)
       Mr. Austin W. Stevenson (via videoconference)
6      CITY OF McALLEN CITY ATTORNEY'S OFFICE
       1300 Houston Avenue, Second Floor
7      McAllen, Texas  78501
       (956) 681-3111
8      itawil@mcallen.net
       astevenson@mcallen.net

9

10   VIDEOCONFERENCE TECHNICIAN:

11     Mr. Justin McAdams

12

     ALSO PRESENT:
13
       Mr. Bruce Erratt (via videoconference)
14

15

16

17

18

19

20

21

22

23

24

25

RICHARDSON: TRUDY HANCOCK

```
1                              INDEX                    Page 4

2                                                      PAGE

3     EXAMINATION BY MR. KALAR.........................   5

4

5                            EXHIBITS

6    NUMBER          DESCRIPTION                       PAGE

7    Exhibit 2       Ballot Applications Spreadsheet;

8                    Bates BRAZOS - 000001............... 49

9    Exhibit 3       February 2020 Election Advisory

10                   Email; Bates SOS_000737 through

11                   000741.............................. 83

12   Exhibit 4       12/5/2016 Letter to Colton

13                   Kilpatrick; Bates BRAZOS - 000053.... 108

14   Exhibit 5       11/26/2018 Letter to George

15                   Richardson; Bates BRAZOS - 000052.... 117

16

17

18

19

20

21

22

23

24

25
```

**hg**

Page 5

```
 1                     PROCEEDINGS
 2              (On the record at 9:39 a.m.)
 3                 (Witness duly sworn.)
 4                   TRUDY HANCOCK,
 5    being first duly sworn, testified as follows:
 6                    EXAMINATION
 7   BY MR. KALAR:
 8    Q      Good morning, Ms. Hancock.
 9    A      Good morning.
10    Q      My name is Sam Kalar, and I'm an attorney
11   representing the plaintiffs in this case, and I
12   will be taking your deposition today.
13              First things off, please state and
14   spell your first name.
15    A      Trudy Hancock, T-r-u-d-y, H-a-n-c-o-c-k.
16    Q      I'd like to go over a few general rules to
17   make sure we're both on the same page about how
18   things should go today.
19              Have you ever been deposed before?
20    A      Yes.
21    Q      This might all sound familiar.
22              So in addition to being videotaped, my
23   questions and your answers are being recorded by a
24   court reporter.  Because of this, I'm going to ask
25   that you give verbal answers so that the record is
```

**hg**

Page 6

1    accurate.  The court reporter cannot hear a nod or

2    a head shake.  Does that make sense?

3    A      Yes, sir.

4    Q      It's also important that you speak clearly

5    and say "yes" or "no," rather than "uh-huh" or

6    "huh-uh."  Does that make sense?

7    A      Yes, sir.

8    Q      Especially given that we are conducting

9    this deposition via videoconference, it's very

10   important that we don't talk over each other.

11   Will you try to wait until you finish -- until I

12   finish a question before you answer?

13   A      Yes, sir.

14   Q      Great.  And I'll try to do the same with

15   your answers.

16          Will you ever let me know if you don't

17   understand a question?

18   A      Okay.

19   Q      And will you also let me know right away

20   if you have any technical difficulties or if you

21   can't hear me?

22   A      Okay.

23   Q      We are looking for your full and complete

24   answers to the questions that I am going to ask

25   you today.  Does that make sense?

RICHARDSON: TRUDY HANCOCK

Page 7

```
 1    A      Yes, sir.
 2    Q      Sometimes you might give an answer as
 3   completely as you can, but maybe five minutes
 4   later, maybe two hours later, you think of
 5   something else that you might have forgotten.
 6   Will you let me know if that happens, and you can
 7   correct your answer while it's on your mind?
 8    A      Yes, sir.
 9            MR. MIRZA:  Sam, we're getting an
10       audio feedback.  I think Isaac is as well.
11       I'm not sure why.
12            MR. KALAR:  I'm getting a little
13       bit of an echo.  I was not sure if that's
14       coming from somebody else or from my end.
15            HG, do you have any idea?
16            THE VIDEOGRAPHER:  It looks like
17       everyone's muted, so there's not a lot I
18       could do at this point.  It would be
19       within -- Webex software within itself.
20       Everyone's muted.
21            MR. ERRATT:  I turned our volume
22       down.  Did that help?
23            MR. MIRZA:  Yes, I think so.
24            MR. KALAR:  Okay.  Great.
25   BY MR. KALAR:
```

**hg**

RICHARDSON: TRUDY HANCOCK

Page 8

1    Q      Ms. Hancock, you are under oath today and

2   are required to testify truthfully, the same as if

3   you were testifying in court.  Do you understand

4   that?

5    A      Yes, sir.

6    Q      Is there any reason you can't give

7   complete and truthful testimony today?

8    A      No, sir.

9    Q      We will try to take breaks throughout your

10  testimony today, but if you ever need to take a

11  break for any reason, please let me know.  The

12  only time we will not take a break is if I have

13  already asked a question and you haven't yet

14  answered it or are in the middle of answering it.

15  Does that make sense?

16   A      Yes, sir.

17   Q      Great.

18          Before we go any further, I'd like to

19  test of the screen sharing function of our

20  technology.  This is how I will show you various

21  documents through the deposition, and I'm just

22  going to try that now.

23          And on your screen, can you see a

24  letter dated March 6th, 2020, from J. Eric Magee?

25   A      Yes, sir.

RICHARDSON: TRUDY HANCOCK

Page 9

```
 1    Q      And you can read that?
 2    A      I probably have to move closer to the
 3   screen.
 4              MR. ERRATT:  Oh, there you go.
 5              THE WITNESS:  Yes, that's better.
 6   BY MR. KALAR:
 7    Q      Okay.  I'll try to zoom in, and please let
 8   me know if I ever show you anything and you need
 9   me to zoom in.
10              MR. ERRATT:  So that share is only,
11         like, a quarter of our screen.  I'm
12         looking to see if there's some way I can
13         expand it, but I don't see -- I don't see
14         how we would do that.  Okay.
15              MR. KALAR:  Okay.  Good.  I'll try
16         to zoom in as much as I can when needed,
17         and if we need to figure out something
18         else, we can as we go.
19   BY MR. KALAR:
20    Q      Have I stopped sharing my screen now?
21   Great.
22              So you said you've been deposed
23   before.  How many times?
24    A      Just once.
25    Q      And what was the nature of that matter?
```

hg

RICHARDSON: TRUDY HANCOCK

Page 10

1    A     A lawsuit from the -- a plaintiff against
2    the City of Hearne for a voting violation.
3    Q     I'm sorry.  I couldn't understand that
4    last part.
5    A     It had to do with the City of Hearne and a
6    voting violation by a voter.
7    Q     Were you personally named in that lawsuit?
8    A     Yes.
9    Q     When was that lawsuit?
10   A     Probably about eight years ago.
11   Q     What was the nature of your testimony?
12   A     My duties as the elections administrator
13   and whether or not his signature appeared on an
14   affidavit.
15   Q     Did you do anything to prepare for today's
16   deposition?
17   A     I read over the interrogatories that we
18   answered.
19   Q     Anything else?
20   A     No, sir.
21   Q     Did you have any meetings with anyone to
22   prepare for today's deposition?
23   A     Yes, sir.
24   Q     My apologies.  Was that a "yes" or a "no"?
25   A     Yes.

**hg**

RICHARDSON: TRUDY HANCOCK

Page 11

1    Q        Who did you meet with?

2    A        Bruce Erratt, the county -- associate

3    county attorney, and Eric Magee.

4    Q        How many meetings did you have?

5    A        Two.

6    Q        Who was present for each meeting?

7    A        Myself, Eric Magee, and Bruce Erratt.

8    Q        Anyone else?

9    A        No, sir.

10   Q        About how long in total did you have these

11   meetings to prepare for today's deposition?

12   A        Probably a couple of hours.

13   Q        Other than the interrogatories you already

14   mentioned, did you review any documents in

15   preparing for today's deposition?

16   A        Only the documents that we attached to the

17   interrogatories and discovery.

18   Q        These were the 70 or so documents that you

19   produced as part of this litigation?

20   A        Yes, sir.

21   Q        And just returning to my -- to a previous

22   topic, you mentioned you'd only been deposed once.

23   Have you ever testified in court?

24   A        No, sir.

25   Q        Did you have any discussions with anyone

hg

RICHARDSON: TRUDY HANCOCK

Page 12

1   other than counsel in preparing for today's

2   deposition?

3    A      No, sir.

4    Q      Did you have any discussions with anyone

5   other than counsel about the facts and issues in

6   this case?

7    A      No, sir.

8    Q      Do you have any documents in front of you

9   right now?

10   A      Yes, sir.

11   Q      What are those documents?

12   A      The inter- -- copies of the

13  interrogatories and the documents that we attached

14  to those.

15   Q      Do you have anything in front of you that

16  hasn't been produced in this litigation?

17   A      No, sir.

18   Q      Did you do anything else to prepare for

19  this deposition?

20   A      No, sir.

21   Q      Thank you.

22          What is your educational background?

23   A      I have a bachelor's degree from

24  WIN [phonetic] as a paralegal, and then I'm a

25  certified -- it's Texas elections administrator

RICHARDSON: TRUDY HANCOCK

1    and nationally certified CERA certificate through

2    the Election Center for national elections

3    administrator.

4    Q     What year did you graduate from college?

5    A     2001.

6    Q     Have you attended any other colleges?

7    A     No, sir.

8    Q     And you mentioned you're a certified

9    elections registration administrator; is that

10   correct?

11   A     Yes.

12   Q     What did you have to do to become a

13   certified elections registration administrator?

14   A     There are classes through the Election

15   Center that's sponsored by Auburn University, but

16   it's a certificate that you can get to be state

17   certified, and then they also have a national

18   certification.

19   Q     What do those classes involve?

20   A     Everything from budgeting to

21   changing -- helping facilitate changes in

22   legislation to everyday occurrences in the

23   office -- office procedures, policies and

24   procedures, things to make your office run

25   smoother.

**hg**

RICHARDSON: TRUDY HANCOCK

Page 14

1    **Q**    **Anything else?**

2    A    No, sir.

3    **Q**    **And is that certification -- is that**

4    **specific to Texas?**

5    A    I hold both Texas and national

6    certifications.

7    **Q**    **What year did you obtain those**

8    **certifications?**

9    A    Texas -- the state certification for Texas

10    in 2016, and the national certification in 2018.

11    **Q**    **Are those certifications required for your**

12    **position as Brazos County elections administrator?**

13    A    No, sir.

14    **Q**    **Are they recommended or encouraged?**

15    A    Yes.

16    **Q**    **Do you happen to know, is it common for**

17    **elections administrators in Texas to have these**

18    **certifications?**

19    A    Yes, sir.  I am on the board for the

20    association, and we encourage our members to get

21    as much education as they can.

22    **Q**    **How long does it take to acquire these**

23    **certifications?**

24    A    It just depends on the county's ability to

25    fund the classes and, you know, your availability

**hg**

RICHARDSON: TRUDY HANCOCK

Page 15

1    to attend those classes.

2    Q      Approximately how many hours' worth of

3    classes are there?

4    A      I'm not certain.

5    Q      Is it hundreds or dozens?

6    A      It's dozens of classes.

7    Q      And is then -- is there a final

8    certification exam or something like that?

9    A      No, sir.  As long as you attend every

10   class and complete the class and the work that's

11   required, then you receive your certification.

12   Q      And you said you currently hold a position

13   within that organization?

14   A      No.  With the Texas Association of

15   Elections Administrator.

16   Q      What is your position there?

17   A      Secretary.

18   Q      And what are your duties as secretary?

19   A      To maintain the minutes -- keep the

20   minutes and maintain the information from any --

21   any meetings that we hold.

22   Q      Anything else?

23   A      No, sir.

24   Q      How did you obtain this position?

25   A      A vote by my peers.

RICHARDSON: TRUDY HANCOCK

Page 16

1    Q      And are you appointed for a set term?

2    A      For one year.

3    Q      And then will you rotate out or might you

4    run again?

5    A      Rotate up.

6    Q      Do you know what you will rotate to?

7    A      Treasurer.

8    Q      What are the responsibilities of the

9    treasurer?

10   A      To maintain the financial records.

11   Q      Anything else?

12   A      Not to my knowledge.

13   Q      And this organization, this is a statewide

14   organization; correct?

15   A      Yes, sir.

16   Q      And does every county participate?

17   A      No, sir.

18   Q      How many counties participate?

19   A      I don't know right off the top of my head,

20   but we do have a majority of the counties that

21   participate.

22   Q      Who funds the activities of your

23   organization?

24   A      The dues that are paid by the membership.

25   Q      "The membership" being the county?

RICHARDSON: TRUDY HANCOCK

Page 17

1     A      Yes.

2     Q      I'd like to get a little bit more into

3   your employment history.

4             What is your current position?

5     A      Elections administrator.

6     Q      And that's the elections administrator for

7   Brazos County?

8     A      Correct.

9     Q      When did you start this position?

10    A      July 1st, 2016.

11    Q      2016?

12    A      Yes, sir.

13    Q      And how did you become the Brazos County

14   elections administrator?

15    A      They created the position and opened it

16   up, advertised for someone to apply, and I made an

17   application for them -- for the position.

18    Q      You said they created the position?

19    A      Yes.  Not all counties in Texas have an

20   elections administrator position.  It has to be

21   created by the county.

22    Q      Who served in that position before you?

23    A      No one.

24    Q      Who performed the duties that you perform

25   as elections administrator before you in Brazos

RICHARDSON: TRUDY HANCOCK

Page 18

1  County?

2   A     The county clerk handled elections, and

3  the tax assessor handled voter registration.

4   **Q     What qualification was Brazos County**

5  **looking for when it put out its notice that it was**

6  **accepting applications for the elections**

7  **administrator position?**

8   A     I don't remember the exact qualifications.

9   **Q     Was there an interview process?**

10   A     Yes, sir.

11   **Q     Who did you interview with?**

12   A     An elections administrator in Texas is

13  hired by the election commission.  That's the

14  county judge, county clerk, tax assessor, and a

15  representative from both parties.

16   **Q     And was that one interview or a series of**

17  **interviews?**

18   A     Two interviews.

19   **Q     Where did you work prior to your current**

20  **job?**

21   A     Admin- -- elections administrator for

22  Robertson County.

23   **Q     Robertson County?**

24   A     Correct.

25   **Q     When did you hold that position?**

**hg**

RICHARDSON: TRUDY HANCOCK

Page 19

```
 1    A      From 2005 until 2016, when I came to
 2   Brazos County.
 3    Q      What were your responsibilities in
 4   Robertson County?
 5    A      The same as they are here:  To run the
 6   elections and voter registration, budget, things
 7   like that.
 8    Q      Anything else?
 9    A      There's a long list of responsibilities
10   when it comes to an elections administrator, so...
11    Q      Why did you leave that position?
12    A      Just for advancement, a larger county.
13   I'm getting close to retirement, so the extra
14   salary helps out.
15    Q      Where did you work before Robertson
16   County?
17    A      I worked for a law firm in Hearne, Texas.
18    Q      And what was your position there?
19    A      Legal secretary.
20    Q      And when were you there?
21    A      2002 to 2005.
22    Q      What was the name of that law firm?
23    A      Palmos, Russ, McCullough, & Russ.
24    Q      Did you have any job before that?
25    A      Yes.  I have -- prior to them, I worked
```

**hg**

RICHARDSON: TRUDY HANCOCK

Page 20

1   for three years for the county clerk for Robertson

2   County.

3   **Q**      **And what was your position there?**

4   A      Deputy clerk.

5   **Q**      **And have you ever been subject to any**

6   **professional disciplinary action?**

7   A      No, sir.

8   **Q**      **As the Brazos County elections**

9   **administrator, you're responsible for the**

10  **administration of elections conducted in Brazos**

11  **County; correct?**

12  A      Correct.

13  **Q**      **And it's your responsibility to develop**

14  **and implement policies to ensure that Brazos**

15  **County's elections run properly; correct?**

16  A      Correct.

17  **Q**      **And it is your responsibility to develop**

18  **and implement policies to ensure that Brazos**

19  **County elections take place in accordance with the**

20  **Texas Election Code; correct?**

21  A      Correct.

22  **Q**      **It is also your responsibility to make**

23  **sure that Brazos County elections comply with**

24  **federal law; correct?**

25  A      Correct.

**hg**

RICHARDSON: TRUDY HANCOCK

Page 21

1    Q       So when you say that you're responsible

2    for the administration of elections conducted in

3    Brazos County, I'd like to get into what you mean

4    by that just a little bit.

5              For example, take the upcoming 2020

6    general election.  What are your responsibilities

7    related to that?

8    A       Are you speaking of the primary or the

9    general?  Because they're different.

10   Q       We can start with the primary.

11   A       For the primary, I work with the parties.

12   We contract with both parties.  We -- my office

13   handles lining up polling locations, helping with

14   workers, programming the equipment, making sure we

15   have the proper equipment in the facility,

16   approving the ballot, just over- -- general

17   oversight.

18   Q       Anything else?

19   A       No, sir.

20   Q       How about with respect to the general

21   election?

22   A       For the general election, my staff

23   oversees locations, judges, workers, equipment,

24   programming the equipment, delivery and setup of

25   the equipment, and then afterwards reports to go

RICHARDSON: TRUDY HANCOCK

Page 22

1    as far as the canvass.

2    Q        And generally speaking, what is your job

3    or your responsibilities when you're not preparing

4    for an election?

5    A        Day to day, we do voter -- we accept voter

6    registration applications, updates, changes,

7    anything that comes across the web portal from

8    DPS, social security for expired status.  Mostly

9    voter registration during the off time.

10   Q        Anything else?

11   A        No.  Just starting to prepare for whatever

12   the next election is.

13   Q        Is anyone else responsible for the

14   administration of elections conducted in Brazos

15   County?

16   A        Well, I'm not sure how to answer that.

17             The city secretaries are -- they

18   oversee the elections for the cities, the

19   superintendent for the schools oversees -- they

20   oversee their elections, but we contract with

21   those entities and, you know, we handle the

22   logistics of it all.

23   Q        And are you, as the elections

24   administrator, at the top of the pyramid when it

25   comes to administering elections in Brazos County?

RICHARDSON: TRUDY HANCOCK

Page 23

1     A      I don't know that I would say I was at the

2  top.  We work in conjunction with all the entities

3  in our -- in our district:  Schools, cities,

4  special utility districts, fire districts, things

5  like that.

6     **Q      How does your office receive funding?**

7     A      Our budget is funded by Brazos County.

8     **Q      And what is your involvement in that**

9  **process?**

10    A      I submit a budget of what are expected

11 expenses for the next budget year, and it's either

12 approved or denied upon whatever the budget

13 committee deems necessary.

14    **Q      And do you personally make a presentation**

15 **to the budget committee?**

16    A      In Brazos County, if your budget does not

17 change, you're not required to make a

18 presentation.  You just submit your numbers.  But

19 if you have significant increases, you're expected

20 to make a presentation as to why those increases

21 are needed.

22    **Q      And do you usually have significant**

23 **increases year-to-year that would require this**

24 **presentation?**

25    A      I've only had to present two budgets, and

RICHARDSON: TRUDY HANCOCK

Page 24

```
 1   we were working on buying -- facilitating the
 2   purchase of new election equipment.  So yes, I've
 3   made presentations for both budgets that I
 4   presented.
 5   Q      What was your office's annual budget in
 6   2020?
 7   A      I don't know that off the top of my head.
 8   Q      Can you -- do you have an estimate?
 9   A      No, sir.  I'd rather not make an estimate.
10   Q      Do you have any documents that would show
11   this?
12   A      Not with me.
13   Q      But those documents exist?
14   A      Yes, they do.
15   Q      And what would those documents be?
16   A      We receive a budget packet every year with
17   what our current expenditures and what our current
18   budget line items are.  We make adjustments to
19   that and submit for the -- for the following
20   year's budget.
21   Q      Any other documentation?
22   A      No, sir.  Just any backup that I would
23   have for any expendi- -- large expenditures that I
24   would need to make during that budget year.
25   Q      Who determines how the money within your
```

**hg**

RICHARDSON: TRUDY HANCOCK

1   budget is spent?

2    A      I do.

3    Q      And is that determined at the time you

4   make the proposal, or do you have discretion

5   throughout the year?

6    A      Generally we make a -- we propose a

7   budget, and then if there are things that come up

8   during the year -- such as this year, we've had a

9   lot of extra expenses for COVID -- we may have to

10  adjust some of those line items and take

11  from -- from lines that we have money left in that

12  budget.

13   Q      But in general, you have discretion to

14  spend the election administrator's office budget?

15   A      Yes.  If -- any changes made after the

16  budget is approved would have to go through

17  commissioners court.

18   Q      And does that happen very often?

19   A      No, sir.  It just depends on the year and

20  what expense -- I mean, you know, unexpected

21  expenses you have that come up.

22   Q      Has it happened in 2020?

23   A      Yes.

24   Q      Did it happen in 2019?

25   A      Yes, probably some small changes.

RICHARDSON: TRUDY HANCOCK

Page 26

1    Q        How about in 2018?

2    A        I couldn't say.

3    Q        When you became the Brazos County

4    elections administrator, what training did you

5    receive?

6    A        Are you speaking of once I came to Brazos

7    County or prior to coming to Brazos County?

8    Q        Let's start with once you came to Brazos

9    County.

10   A        I was trained in the financial

11   software -- you know, POs, requisitions, things

12   like that -- that are all in-house programs that

13   would be different from the location and the

14   county where I came from.

15   Q        Any other training?

16   A        No, sir.

17   Q        Who provided this training?

18   A        Brazos County.

19   Q        Anyone in particular at Brazos County?

20   A        The IT department.

21   Q        Prior to coming to Brazos County, did you

22   undergo any training related to being the county

23   elections administrator?

24   A        Just through the Secretary of State's

25   office.  They have an annual conference that we

RICHARDSON: TRUDY HANCOCK

Page 27

1   attend to keep us up to date on any legislative

2   changes or procedural and policy changes that they

3   have implemented in the past year.

4   Q      And I'm sorry.  Who hosts that?

5   A      Texas Secretary of State.

6   Q      And that's every year?

7   A      Yes, sir.

8   Q      Do you attend every year?

9   A      Yes, sir.

10   Q      Does anyone else from your office attend

11   every year?

12   A      Not every year, but I do have staff that

13   attend -- it just depends on the agenda and

14   whether it applies to their jobs.

15   Q      And did you attend every year when you

16   worked for Robertson County?

17   A      Yes, sir.

18   Q      And what training do you receive at these

19   annual conferences?

20   A      They're just basic:  How to facilitate an

21   election, how to hire election workers, best

22   policies and procedures.  For the last couple

23   years, it's -- there's been a big push on the

24   security as far as elections.  Items along those

25   lines.

RICHARDSON: TRUDY HANCOCK

Page 28

1    Q       Have you ever received any training at

2    these conferences specific to mail-in ballots?

3    A       Yes, sir.

4    Q       What has that training involved?

5    A       They usually do a PowerPoint that shows

6    you the workflow, reasons to accept and reject,

7    how to qualify the applications, things along

8    those lines.

9    Q       Anything else?

10   A       No, sir.

11   Q       And do you have a copy of this PowerPoint?

12   A       I do not.

13   Q       When did this presentation take place?

14   A       Normally they cover general items like

15   that at every conference, but I can't tell you

16   exactly the last time that it was covered.

17   Q       There have been many occasions, though,

18   when you've received training on mail-in ballots

19   at these conferences, though; correct?

20   A       Yes, sir.

21   Q       And who provides this training?

22   A       One of the employees at the Secretary of

23   State's office.

24   Q       Do you remember who generally?

25   A       No.  It can be a number of different

RICHARDSON: TRUDY HANCOCK

Page 29

1  people.

2  Q    And when is this conference every year?

3  A    The last couple years, it's been the last

4  week of July or the first week of August.

5  Q    And how long is the conference?

6  A    Three days.

7        (Discussion off the record.)

8  BY MR. KALAR:

9  Q    Other than this annual conference, do you

10 receive any other ongoing training as the Brazos

11 County elections administrator?

12 A    The Texas Association of Elections

13 Administrator holds -- holds a conference in

14 January, a midwinter conference, and we always

15 have guest speakers to bring us the -- you know,

16 the latest things in security or whatever the

17 topic is currently that we may be covering.

18 Q    And do you attend that every year?

19 A    Yes, sir.

20 Q    When was the first time you attended that?

21 A    I don't remember offhand.

22 Q    Have you attended every year since you

23 began working for Brazos County?

24 A    Yes, sir.

25 Q    And you attended at times while you worked

RICHARDSON: TRUDY HANCOCK

Page 30

```
 1   for Robertson County?

 2   A      Yes, sir.

 3   Q      But not every year?

 4   A      I attend every year, but I couldn't tell

 5   you what the first year was that I attended.

 6   Q      And you've attended the Secretary of State

 7   conference every year since you worked for both

 8   Robertson and Brazos Counties?

 9   A      Correct.

10   Q      And do you ever provide -- yourself, do

11   you provide any training to anyone throughout the

12   year?

13   A      We provide the training for election

14   workers, early voting, and election day elec- --

15   election workers and judges.

16   Q      And when you say "we," do you mean you

17   personally or your office?

18   A      Myself and my staff.

19   Q      And what does that training involve?

20   A      Election day procedures, how to set up

21   your polling places, voting procedures, what's

22   required when someone doesn't have an ID or if

23   they need to change their address.  Just different

24   procedures throughout the day.  How to close down

25   your polling place at night and then bringing the
```

**hg**

RICHARDSON: TRUDY HANCOCK

Page 31

1   equipment back to central count to have -- to have

2   the ballots counted.

3    Q      Anything else?

4    A      No.

5    Q      And other than these poll workers, is

6   there anybody else you train throughout the year?

7    A      No, sir.

8    Q      Have you ever been accused of -- have you

9   ever received any training specific to mail-in

10   ballots signature comparisons?

11    A      No, sir.

12    Q      And that's been while you've been at

13   Brazos County and prior to that at Robertson

14   County?

15    A      Correct.

16    Q      To your knowledge, has anyone on your

17   staff been trained in comparing or analyzing

18   signatures?

19    A      No, sir.

20    Q      Generally speaking, what rules or

21   regulations do you follow to administer Brazos

22   County elections?

23    A      The election code and advisories from the

24   Secretary of State's office.

25    Q      Anything else?

RICHARDSON: TRUDY HANCOCK

Page 32

1   A      No, sir.

2   Q      And how are those advisories developed?

3   A      I -- I wouldn't know that.

4   Q      Are you ever involved in developing the

5   Secretary of State's advisories?

6   A      No, sir.

7   Q      Do you know if they ever reach out to

8   county elections officials, such as yourself, to

9   develop these advisories?

10  A      I do not know.

11  Q      Have you ever spoken with anybody from the

12  Secretary of State's office about their

13  advisories?

14  A      Yes.

15  Q      How many times?

16  A      Oh, I couldn't -- I couldn't tell you

17  exactly.

18  Q      Does it happen every time an advisory

19  comes up?

20  A      No, sir.

21  Q      When was the last time you remember

22  talking to them about that?

23  A      Probably last year.

24  Q      And who did you speak with?

25  A      Christina Adkins.

RICHARDSON: TRUDY HANCOCK

Page 33

1  Q     And what did you talk with her about?

2  A     It had to do with letters that were

3  required to be sent to voters who were thought to

4  be illegal citizens.

5  Q     And what was the nature of your

6  conversation?

7  A     Just discussion as to the advisory itself

8  and whether or not there would be consequences for

9  the county if -- the way the letter was presented.

10 Q     As the Brazos County elections

11 administrator, are there any other procedures that

12 you follow to administer elections?

13 A     No, sir.

14 Q     Do you have any local procedures or

15 handbooks that you follow?

16 A     No.  We have general policies and

17 procedures for the office, but not for elections

18 themselves.

19 Q     And what's covered by those policies and

20 procedures of the office?

21 A     Just general policies such as cell phone

22 use, proper dress, sick leave, vacation.  Just

23 normal office procedures.

24 Q     And are those procedures related to the

25 management of the office or the administration of

RICHARDSON: TRUDY HANCOCK

Page 34

1   elections?

2    A      The management of the office.

3    **Q      Do you have any other internal policies or**

4   **procedures that you follow?**

5    A      We do have a central count policy that

6   we're required by law to have for public view just

7   stating what our policy is at central count on

8   election night.

9    **Q      I'm sorry.  Can you say that last part**

10   **again?**

11   A      It's policies and procedures for central

12   count and how things will work on election night.

13   **Q      And generally speaking, what's in those**

14   **policies?**

15   A      Just the procedures of the workflow for

16   accepting judges bringing in the controllers and

17   the votes for the night and how those votes will

18   be processed.

19   **Q      Other than the Texas Election Code and the**

20   **Secretary of State advisories, is there any other**

21   **policies or procedures you follow to administer**

22   **mail-in ballot -- mail-in ballot voting?**

23   A      Only the handbook that's produced by the

24   Texas -- I mean by the Secretary of State's

25   office.

**hg**

RICHARDSON: TRUDY HANCOCK

Page 35

1    **Q      And how often does that handbook come out?**

2    A      They update it periodically, so -- but

3    there's always -- it's online, so it's always

4    readily available.

5    **Q      Do you ever look to or speak with**

6    **officials at other counties to discuss election**

7    **procedures?**

8    A      Yes, sir.

9    **Q      And what do you talk about?**

10   A      Just best practices, what works and what

11   doesn't.  Not all counties can do things the same,

12   even if they have the same equipment, so...

13   **Q      My apologies.  Can you repeat that last**

14   **part?**

15   A      Yeah.  I said not all counties do the --

16   everything the same, and so we just talk about

17   best practices and what works best for each other.

18   **Q      And what sort of things do counties do**

19   **differently?**

20   A      I mean, even if you use the same

21   equipment, you may have a different workflow just

22   depending on the size of the location you're at,

23   the number of staff that you have, the -- you

24   know, the county's availability to hire outside

25   people to help.  So there are a lot of logistics

**hg**

RICHARDSON: TRUDY HANCOCK

Page 36

```
 1   that go into workflow.
 2     Q      Anything else?
 3     A      No, sir.
 4     Q      Have you discussed this litigation with
 5   any officials from other counties in Texas?
 6     A      No, sir.
 7     Q      Generally speaking, do the procedures you
 8   follow in Brazos County differ at all from the
 9   procedures you followed in Robertson County?
10     A      Slightly.
11     Q      How do they differ?
12     A      Robertson County is a paper-based county,
13   so there's a lot more checks and balances when it
14   comes to a paper-based county as opposed to an
15   electronic county.
16     Q      Anything else?
17     A      No, sir.
18     Q      Are there any differences in mail-in
19   ballot procedures in Robertson County versus
20   Brazos County?
21     A      No, sir.
22     Q      What is your familiarity with the Texas
23   Election Code?
24     A      I've been in elections for almost
25   20 years, so I'm fairly familiar with most of it,
```

RICHARDSON: TRUDY HANCOCK

1   but it's -- it evolves every year, so...

2   **Q       Have you personally read the Texas**

3   **Election Code?**

4    A       No, not from front to back.  Only when

5   there -- when a question comes up that can't be

6   answered by an advisory or if I can't find it from

7   other avenues.

8   **Q       And how often do you read the Texas**

9   **Election Code in those situations?**

10   A       It would just depend on the situation.

11  **Q       What are some examples of those**

12  **situations?**

13   A       I can't think of one right off the top of

14  my head.

15  **Q       Do you remember the last time you read the**

16  **Texas Election Code?**

17   A       I did read Section 87 as we were preparing

18  for this interrogatory.

19  **Q       I'm sorry.  That was Section 87?**

20   A       Yes.

21  **Q       And when was that?**

22   A       Yesterday.

23  **Q       Have you ever received any training on the**

24  **Texas Election Code?**

25   A       There is always -- at the Secretary of

**hg**

RICHARDSON: TRUDY HANCOCK

Page 38

1   State's conference, we always discuss if there

2   were legislative changes or anything that would

3   impact the way we hold our elections.

4   **Q      Any other training on the Texas Election**

5   **Code?**

6   A      No, sir.

7   **Q      When you first became the elections**

8   **administrator of Robertson County, was there any**

9   **initial training on the Texas Election Code?**

10  A      No, sir.

11  **Q      And same when you began as the elections**

12  **administrator in Brazos County?**

13  A      Correct.

14  **Q      The Texas Election Code imposes certain**

15  **duties on you as the Brazos County elections**

16  **administrator; correct?**

17  A      Correct.

18  **Q      And what are those duties?**

19  A      To oversee and conduct the election

20  process.

21  **Q      Anything else?**

22  A      And voter registration.

23  **Q      Anything else?**

24  A      No, sir.

25  **Q      How do you determine whether Brazos**

RICHARDSON: TRUDY HANCOCK

Page 39

1    County's elections procedures are in compliance

2    with the Texas Election Code?

3     A     Try to stay up on the changes in the

4    legislation and if there's any changes in the law.

5     Q     Other than that, how do you ensure that

6    you're in compliance with the Texas Election Code?

7     A     If we receive a complaint, then I discuss

8    that with the Secretary of State's office to

9    determine -- to make sure that we are doing things

10   properly.

11    Q     So when you have questions about the Texas

12   Election Code, do you call the Secretary of

13   State's office?

14    A     Yes, or the assistant county attorney,

15   Bruce Erratt.

16    Q     I'm sorry.  I didn't catch that last part.

17    A     The Secretary of State's office or the

18   assistant county attorney, Bruce Erratt.

19    Q     Anyone else?

20    A     No, sir.

21    Q     Do you have any staff that you rely on to

22   interpret the Texas Election Code?

23    A     I do have an elections coordinator and a

24   voter registration coordinator.

25    Q     Who else is on your staff?

RICHARDSON: TRUDY HANCOCK

Page 40

1    A     I have a staff member who handles --

2    qualifies the ballot-by-mail requests when they

3    came in -- come in, and then I have four full-time

4    people that handle voter registration, and then

5    two part-time people.

6    **Q    So is that eight full-time people in your**

7    **office?**

8    A    No.  There's only -- there's six of us

9    full-time.

10    **Q    Six full-time?**

11    A    Yes.

12    **Q    And do all of those employees report to**

13    **you?**

14    A    Yes.

15    **Q    And who do you report to?**

16    A    The election commission or the county

17    judge.

18    **Q    And who's on the election commission?**

19    A    The county judge, the county clerk,

20    elections -- I mean the tax assessor, and then a

21    representative from both parties.

22    **Q    And how often do you interact with them?**

23    A    I've not interacted with them since I was

24    hired.

25    **Q    Have not interacted with them?**

RICHARDSON: TRUDY HANCOCK

Page 41

1    A      No.  They are only there for the hiring

2    process, and then if there's a problem, that's

3    where -- if I was to be terminated, that's where

4    it would originate.

5    **Q      So since you became the Brazos County**

6    **elections administrator, you haven't interacted**

7    **with the board again?**

8    A      No, sir.

9    **Q      Or excuse me.  The commission.**

10   A      No, sir.

11   **Q      Other than what we've just discussed, do**

12   **you refer to or otherwise use the Texas Election**

13   **Code as part of your job as the elections**

14   **administrator?**

15   A      Yes.

16   **Q      How so?**

17   A      Just to make sure that our office is

18   running properly and that we follow the code as

19   best we can.

20   **Q      As the Brazos County elections**

21   **administrator, you oversee Brazos County's mail-in**

22   **voting process; correct?**

23   A      Correct.

24   **Q      What are your responsibilities of either**

25   **you or your office with respect to mail-in voting?**

**hg**

RICHARDSON: TRUDY HANCOCK

Page 42

1    A      We accept the applications either by a

2    voter bringing in an application, faxing it,

3    emailing it, or sending by the post office.  We

4    receive those applications, process them to make

5    sure that they qualify.  And then if they qualify,

6    we process them and send their ballots, and then

7    we receive those ballots back.

8    Q      **Anything else?**

9    A      No.

10   Q      **And what procedures do you follow**

11   **throughout that process?**

12   A      When the application comes in, it's

13   file-stamped with the date it's received.  It's

14   given to the ballot clerk.  She qualifies that to

15   make sure that all the required doc- -- all the

16   required elements are on the application.  If it

17   is, then it's processed through the state

18   database.  Then labels are issued, placed on the

19   envelope; a ballot is printed, put in that

20   envelope, and mailed to the voter.

21   Q      **Anything else?**

22   A      When we receive the ballot back, it's also

23   tracked through the state database and placed into

24   a secure box until it goes to the early voting

25   ballot board.

**hg**

RICHARDSON: TRUDY HANCOCK

Page 43

1    Q      Anything else?

2    A      No, sir.

3    Q      And do you serve as the early voting clerk

4    for Brazos County?

5    A      Correct.

6    Q      And as the early voting clerk, you have

7    authority over the early voting process in Brazos

8    County; correct?

9    A      Correct.

10   Q      Are you aware that the Texas Election Code

11   states that the early voting clerk has the same

12   duties and authority with respect to early voting

13   as a presiding election judge has with respect to

14   regular voting?

15   A      Yes.

16   Q      And what does that mean to you?

17   A      That we follow those procedures for early

18   voting, walk-in, and mail.

19   Q      Does it mean that you're in charge of and

20   responsible for the management of the early voting

21   process?

22   A      Yes.

23   Q      And as the Brazos County early voting

24   clerk, you have responsibilities throughout the

25   mail-in ballot process; correct?

**hg**

RICHARDSON: TRUDY HANCOCK

Page 44

1   A     To a certain point.  As far as the statute

2   allows.

3   Q     So just walking through some of those

4   responsibilities.  You're responsible for mailing

5   voters a mail-in ballot application if requested

6   by the voter; correct?

7   A     Correct.

8   Q     And you're responsible for reviewing each

9   application for a mail-in ballot; correct?

10  A     Correct.

11  Q     And you're responsible for providing an

12  official ballot to a qualifying mail-in voter?

13  A     Correct.

14  Q     And you're responsible for providing

15  ballot envelopes and carrier envelopes to voters?

16  A     Correct.

17  Q     And then you're responsible for receiving

18  all mail-in ballots submitted by voters?

19  A     Correct.

20  Q     And it is your responsibility, as the

21  early voting clerk, to accept or reject mail-in

22  ballot applications; correct?

23  A     Applications, yes.

24  Q     And it is your responsibility, as the

25  early voting clerk, to accept or reject carrier

RICHARDSON: TRUDY HANCOCK

Page 45

1    envelopes submitted by voters using mail-in

2    ballots; correct?

3     A     Correct.

4     Q     So throughout this mail-in ballot process,

5    the Texas Election Code requires that voters

6    receive notice and an opportunity to correct any

7    ballot applications or carrier envelopes that are

8    rejected; correct?

9     A     Can you restate -- rephrase that -- ask

10   that again?

11    Q     Sure.

12          If a mail-in ballot application is

13   rejected, the Texas Election Code requires that

14   you, as the early voting clerk, notify the voter

15   that their application has been rejected; correct?

16    A     Correct.

17    Q     And if a mail-in ballot application is

18   rejected, the Texas Election Code also requires

19   that you, as the early voting clerk, deliver a new

20   application to the applicant; correct?

21    A     Correct.

22    Q     And along with the new application, you

23   must also provide an explanation of why the prior

24   application was rejected; correct?

25    A     Correct.

RICHARDSON: TRUDY HANCOCK

Page 46

1    Q      And you must also provide instructions for

2    submitting the second application; correct?

3    A      Correct.

4    Q      And if you, as the early voting clerk,

5    receive a timely carrier envelope that is

6    defective, the Texas Election Code states that you

7    may notify the voter of the defects in person, by

8    mail, or over the phone; correct?

9    A      Correct.

10   Q      And then you would provide them an

11   opportunity to correct the problem; correct?

12   A      Yes.

13   Q      Does your office have a policy stating how

14   notice of a defective carrier envelope is

15   provided?

16   A      We send a letter.

17   Q      And did that policy exist when you became

18   the Brazos County election administrator?

19   A      Yes, it did.

20   Q      You also had the option to provide notice

21   in person or over the phone; correct?

22   A      Correct.

23   Q      Have you ever considered doing that?

24   A      No, sir.

25   Q      And who drafts these letters with the

**hg**

RICHARDSON: TRUDY HANCOCK

1   notice?

2    A      It's a form letter that's drafted -- it's

3   in the forms catalog from the Secretary of State's

4   office.

5    Q      And who fills out that form?

6    A      The ballot-by-mail clerk.

7    Q      And that's one of your subordinates;

8   correct?

9    A      Correct.

10   Q      And do they physically mail out the notice

11  then?

12   A      Yes.

13          And we are speaking of the notice for

14  the application; correct?

15   Q      Both, I guess.

16          Let's -- just to clarify, for the

17  notice if an application is rejected, what

18  happens?

19   A      The ballot-by-mail clerk would then send

20  them a letter and a new application.

21   Q      And if a carrier envelope is defective and

22  rejected, how is notice provided?

23   A      We do not reject the envelope.  The only

24  thing we can do is look at the signature.

25  Sometimes we'll receive those back without a

**hg**

RICHARDSON: TRUDY HANCOCK

Page 48

1   signature on those, and we do return the unsigned

2   ones to that voter for them to sign that carrier

3   envelope and return it.  But that's the only

4   notification we do.

5   Q      And I'm sorry.  What happens if you

6   receive that envelope and it's not properly

7   signed?

8   A      We would return it to the voter for

9   signature.

10  Q      And you would return it by mail?

11  A      Yes, sir.

12  Q      And would you include with that a note or

13  a letter stating the problem?

14  A      Yes, we would send a letter.

15  Q      And who sends that letter?

16  A      The ballot-by-mail clerk.

17  Q      So as the Brazos County early voting

18  clerk, have you, in fact -- you or your

19  office -- notified applicants when their mail-in

20  ballot applications were defective?

21  A      Yes.

22  Q      And you would provide the new applications

23  to these applicants?

24  A      Yes.

25  Q      How many times have you done this?

**hg**

RICHARDSON: TRUDY HANCOCK

1    A       I couldn't give you a number.  If it's a

2    big year, you know, we do what we have to.

3    Sometimes it's too much for one person to handle.

4    Q       **What would be an average year?**

5    A       We have anywhere from, I would say, 1,200

6    to 3,000 ballot-by-mails.  So it just depends

7    on -- it depends on the size of the election.

8    Q       **Do you recall how many ballot applications**

9    **were defective in the 2018 general election?**

10   A       Can you rephrase -- can you ask that

11   again?

12   Q       **Sure.**

13           **Do you recall how many ballot-by-mail**

14   **applications were rejected by your office in the**

15   **2018 general election?**

16   A       No, not right off the top of my head.

17   Q       **Do you have an estimate?**

18   A       No.

19   Q       **I'm going to show you what we'll**

20   **call -- and I apologize that the numbering is a**

21   **little out of order, but we'll call it Exhibit 2.**

22           (Exhibit 2 marked.)

23              MR. KALAR:  And just bear with me.

24   BY MR. KALAR:

25   Q       **Do you see that on your screen?**

RICHARDSON: TRUDY HANCOCK

Page 50

1    A      We see part of it.  But the camera is not
2    showing part of it.
3    **Q      What can you see right now?**
4    A      I can't see the column that says
5    "rejected."
6    **Q      Oh.**
7    A      Oh, there you go.  You fixed it.  I can
8    see it all --
9    **Q      You can see it now?**
10   A      Yes.
11   **Q      Okay.  Great.**
12   **             So this is Exhibit 2, and this was**
13   **produced in this litigation and bears Bates**
14   **Number BRAZOS - 000001.**
15   **             What is this document?**
16   A      Information that was requested on
17   applications:  How many received, how many mailed,
18   and how many were rejected.
19   **Q      And how was this information collected?**
20   A      Historical data.
21   **Q      When was this document created?**
22   A      I couldn't tell you that exactly.  During
23   the process of answering the interrogatories and
24   discovery.
25   **Q      So this document wasn't created in the**

hg

RICHARDSON: TRUDY HANCOCK

Page 51

1    ordinary course of your work?

2    A      No, sir.

3    Q      And why is there no information for

4    "Applications Received" or "Applications Rejected"

5    for all but the top three listed elections?

6    A      The retention period for elections is

7    22 months, and so those documents have already

8    been shredded or discarded.

9    Q      But you do still have a record of ballots

10   mailed from that time period?

11   A      Yes.  We can -- I can create a report

12   within our data system that shows me how many

13   ballots were mailed.

14   Q      And how far back does that information go?

15   A      The state changed systems in, I think,

16   2012.  So anything older than that, we would have

17   to request that information from the Secretary of

18   State's office.

19   Q      But you do have that information going

20   back to 2012?

21   A      Yes.  The number of ballots mailed only.

22   Q      Other than the three elections listed at

23   the top of this document, do you have any record

24   for the number of applications you've rejected?

25   A      No, sir.

RICHARDSON: TRUDY HANCOCK

Page 52

1   Q      So for these top three elections, or only

2   the first and third that have applications that

3   were rejected, your office mailed out rejection

4   notices to all of these applicants; correct?

5   A      Correct.

6   Q      So 83 letters were sent out for the

7   March 2020 primaries?

8   A      Correct.

9   Q      And 78 letters were sent out for the

10  November 2019 election?

11  A      Correct.

12  Q      And for each of these, your office was

13  responsible for sending out the letter; correct?

14  A      Correct.

15  Q      Is it fair to say in these elections and

16  in these application processes that your office

17  regularly has contact with Brazos County mail-in

18  voters?

19  A      I didn't understand -- I didn't understand

20  the question.

21  Q      I'm sorry.  What was that?

22  A      I didn't -- it kind of garbled.  I didn't

23  understand the question.

24  Q      Oh, apologies.

25          Is it fair to say that your office

RICHARDSON: TRUDY HANCOCK

Page 53

1    regularly has contact with Brazos County mail-in
2    voters during the mail-in ballot process?
3     A      Correct.
4     Q      And has my screen stopped sharing now?
5     A      Yes, it has.
6     Q      Thank you very much.
7              If at any point during the mail-in
8    ballot process if a voter has a problem or a
9    question, is your office the proper place to reach
10   out?
11    A      Yes, sir.
12    Q      And do voters reach out to your office
13   with questions?
14    A      Yes, sir.
15    Q      How often?
16    A      Like I said, a lot of things depend on the
17   size of the election.  But yes, we do -- I mean,
18   like going into the presidential election, we'll
19   receive a lot of calls.  Questions on how to
20   obtain it, how to fill it out, where to return it.
21    Q      And just to clarify, there was a lot of
22   calls pertaining to mail-in ballots?
23    A      Correct.
24    Q      Are you familiar with the website
25   brazosvotes.org?

RICHARDSON: TRUDY HANCOCK

Page 54

1    A     Yes.

**2    Q     What is this website?**

3    A     It's a website that the county maintains
4    to keep up-to-date election information.

**5    Q     And how old is this website?**

6    A     I couldn't answer that.  I don't know.  It
7    was in effect when I came to Brazos County.

**8    Q     And who runs it?**

9    A     Brazos County IT.

**10   Q     Do you know who pays for it?**

11   A     No, sir.

**12   Q     Does your office pay for it?**

13   A     No, sir.

**14   Q     So on the brazosvotes.org home page, if**
**15   voters need assistance, they're directed to call**
**16   the following phone number:  (979) 361-5770.**

**17           Are you familiar with that number?**

18   A     Correct.  That's the main line for the
19   office.

**20   Q     So if a voter calls that number, who picks**
**21   up the phone?**

22   A     It depends on what they choose in the
23   phone tree.

**24   Q     And what are their options?**

25   A     For voter registration, choose one -- you

RICHARDSON: TRUDY HANCOCK

Page 55

1   know, a number, and then for elections -- or you

2   can choose a person.  It would depend on how the

3   caller -- what they chose.

4      Q       And if they chose a person, who would they

5   be connected with?

6      A       Whatever person they chose from the list.

7      Q       Do voters ever reach out to you personally

8   with questions or concerns about mail-in ballots?

9      A       Yes.

10     Q       How often?

11     A       Just -- like I said, it will depend on how

12  big the election is, for how many calls we

13  receive.

14     Q       Could it be every day?

15     A       Not most of the time.

16     Q       In the lead-up to an election, might it be

17  every day?

18     A       Yes.

19     Q       And multiple times a day?

20     A       Depending on the size, yes.  If it's,

21  like, going into the presidential, I would expect

22  to receive multiples a day.

23     Q       And what are some examples of the

24  questions or concerns that you get?

25     A       If they qualify to vote by mail, just

hg

RICHARDSON: TRUDY HANCOCK

Page 56

1    general questions about requirements.  A lot of

2    people are confused about checking the

3    out-of-county box.  With a large student

4    population, we get a lot of questions about that.

5    **Q     Anything else?**

6    A     Time period, when to expect their ballot.

7    Just general information.

8    **Q     Anything else?**

9    A     No.

10   **Q     And are these questions and concerns and**

11   **your responses documented in any way?**

12   A     No.

13   **Q     We previously discussed the mail-in ballot**

14   **application and voting processes a bit.  Does this**

15   **process change from election to election?**

16   A     No, not generally.  Unless there's a

17   legislative change, we won't make any changes in

18   the process.

19   **Q     And so I take it, then, the**

20   **responsibilities of you and your office with**

21   **respect to mail-in voting do not change from**

22   **election to election?**

23   A     No.

24   **Q     This might overlap a bit with what we've**

25   **talked about already, but I'd like to briefly walk**

**hg**

RICHARDSON: TRUDY HANCOCK

Page 57

1    through the process of mail-in voting with you

2    step-by-step, and we'll use the upcoming 2020

3    general election as an example.

4              Who in Brazos County is eligible to

5    vote by mail in the 2020 general election?

6    A       Over 65, disabled, who will be out of the

7    county or confined to jail.

8    Q       Anybody else?

9    A       No.

10   Q       If I'm a Brazos County voter who's

11   eligible to vote by mail, how do I initiate that

12   process?

13   A       You can go to the website and print off

14   the application, call the office and ask for an

15   application, or go to texasvote.org and print off

16   an application.

17   Q       And your office specifically responds to

18   those requests; correct?

19   A       Most of them are automatic, like they can

20   print it, download the form and -- you know, if

21   it's an online interaction.  Or if they call the

22   office, then, yes, we take their name and address

23   and mail them the application.

24   Q       Once I receive a mail-in ballot

25   application, does it contain a phone number or

RICHARDSON: TRUDY HANCOCK

Page 58

1   contact information if I have any questions?

2   A      No.

3   Q      But people, like we talked about, still

4   reach out with questions to your office; correct?

5   A      Correct.

6   Q      And once I complete my application, where

7   do I send it?

8   A      It is prestamped with the address for my

9   office:  300 East William J. Bryan, Suite 100, in

10  Bryan.

11  Q      And who at your office would receive that?

12  A      Victoria Elliott.

13  Q      And what is her position?

14  A      She's the elections coordinate --

15  assistant election coordinator, and she's --

16  handles the ballots-by-mail.

17  Q      So who reviews these application and

18  determines whether it has been properly filled

19  out?

20          MR. KALAR:  I'm getting an echo

21      now.  That might have resolved it.

22  BY MR. KALAR:

23  Q      I'll repeat the question.

24          Who reviews my mail-in ballot

25  application and determines whether it has been

Page 59

1    properly filled out?

2    A       Victoria Elliott.

3    Q       And is it Ms. Elliott who determines

4    whether I'm eligible for a mail-in ballot?

5    A       According to whatever box is selected on

6    the application, yes.

7    Q       And if my application has not been

8    properly filled out, what happens?

9    A       She would send a letter of a defective

10   application along with a new application to that

11   voter.

12   Q       And who drafts that explanation?

13   A       It's a form letter issued by the Secretary

14   of State's office, and she just checks the

15   appropriate box and sends that letter with the

16   application.

17   Q       If my application was properly filled out

18   and I am eligible to vote by mail, who sends me my

19   mail-in ballot?

20   A       My office.

21   Q       And does your office pay for this whole

22   process?

23   A       Yes.

24   Q       And are those expenses part of that annual

25   budget that we discussed?

hg

Page 60

1    A      Yes.

2    Q      And is part of that budget specifically

3    earmarked for these mailings with voters, or is it

4    part of a general fund?

5    A      The general supplies are marked --

6    earmarked for my budget.  Most postage just is in

7    a general budget for the county.

8    Q      So where do I send my completed ballot and

9    carrier envelope once I receive them?

10   A      The carrier envelope has our -- it's

11   preaddressed to my office, and it comes to the

12   300 East William J. Bryan, Suite 100.

13   Q      And when I mail it there, who receives it

14   and processes it?

15   A      Victoria Elliott.

16   Q      And does Ms. Elliott determine whether my

17   carrier envelope has been properly submitted?

18   A      She checks to see if the -- if there's a

19   signature on a -- on the envelope.  That's her

20   only duty.

21   Q      And other than Ms. Elliott, is there

22   anyone in your office who reviews either the

23   applications or the carrier envelopes when your

24   office receives them?

25   A      Her immediate supervisor, the elections

RICHARDSON: TRUDY HANCOCK

Page 61

1   coordinator, Krystal Ocon, also helps in that

2   capacity if it's -- if the daily work is too much

3   for Victoria to handle.

4   **Q      And that's only if there are more**

5   **applications than Victoria Elliott can process?**

6   A      Correct.

7   **Q      And so if I properly filled out my carrier**

8   **envelope and it's received by Ms. Elliott, what**

9   **happens next?**

10  A      It is entered into the database, which is

11  TEAM, which is the state database.  Then labels

12  are generated, placed on the carrier envelope and

13  the outside envelope.  A ballot is generated and

14  put in that envelope and mailed to that voter.

15  **Q      I'm sorry.  That envelope goes where?**

16  A      It's mailed to the voter.

17  **Q      And so when your office receives a carrier**

18  **envelope containing a ballot, at the end of the**

19  **mail-in ballot process, what happens next?**

20  A      It's file-stamped the day that we receive

21  it, processed in TEAM to show that we've received

22  that ballot, and then it's placed in a locked box.

23  **Q      I'm sorry.  What was that last part?**

24  A      It's placed in a locked box.

25  **Q      And where is that locked box?**

RICHARDSON: TRUDY HANCOCK

Page 62

1    A      In our mail room.

**2    Q      And what happens to that locked box?**

3    A      It's maintained by my office until the

4    early voting ballot board meets.  Then it's turned

5    over to the early voting ballot board.

**6    Q      And when does that occur?**

7    A      For us, typically on a Saturday -- on the

8    Saturday before election.

**9    Q      So the box is in your mail room until the**

**10   Saturday before the election?**

11   A      Correct.

**12   Q      And then that Saturday is typically when**

**13   the early voting ballot board meets?**

14   A      Correct.

15             MR. KALAR:  And now would be a good

16        time for a brief mid-morning break, if

17        that works.

18             THE WITNESS:  Fine with me.

19             MR. KALAR:  So how about we pick

20        back up at 11:05, Central time.

21             MR. MAGEE:  That will be fine.

22             MR. KALAR:  Great.  Can we go off

23        the record?

24         (Recess from 10:54 a.m. to 11:07 a.m.)

25

**hg**

RICHARDSON: TRUDY HANCOCK

Page 63

```
 1   BY MR. KALAR:
 2       Q      So returning briefly to the Secretary of
 3   State annual training that we discussed earlier,
 4   do members of the early voting ballot board attend
 5   these conferences?
 6   A       No.
 7       Q      Are they allowed to attend?
 8   A       It's open to the public.  Normally it's
 9   just elections officials.
10       Q      And you mentioned before that some of this
11   training or presentation involved training on
12   accepting and rejecting; is that correct?
13   A       Applications.
14       Q      This is mail-in ballot applications?
15   A       Correct, just the applications.
16       Q      And could you also please briefly list the
17   other members of your staff and their positions,
18   just to make sure we caught it all?
19   A       Krystal Ocon is my elections coordinator.
20   Victoria Elliott is the assistance -- assistant
21   elections coordinator.  Kathy Schuetze is the
22   voter registration coordinator.  Then I have
23   Regina White, Norma Tijerina, Theresa Romero, who
24   are full-time voter registration clerks; and then
25   I have full-time -- a three-quarter time, Patricia
```

**hg**

RICHARDSON: TRUDY HANCOCK

Page 64

1   Alston; and two part-time, Elizabeth Lopez and

2   Emily Barn.

3   **Q      Anyone else?**

4   A      No, sir.

5   **Q      And pardon me if I misheard, but is**

6   **Ms. Elliott also the ballot-by-mail clerk?**

7   A      Correct, she is.

8   **Q      You also talked briefly about the TEAM**

9   **database; is that correct?**

10  A      Correct.

11  **Q      What is that exactly?**

12  A      It's a statewide database for voter

13  registration.  It also is used to track

14  ballot-by-mails.  It tracks from the request all

15  the way through if the ballot is received and then

16  if it's accepted or rejected by the board.

17  **Q      Does it have any other functions?**

18  A      It handles all the aspects of voter

19  registration.  It also facilitates voter

20  registration files for elections databases.

21  **Q      And what are its functions specific to**

22  **mail-in ballots?**

23  A      To track those.

24  **Q      And it tracks -- so when does it start**

25  **tracking that process?**

Page 65

1    A      When we put in that we've received an

2    application.

3    Q      And then would the database also track to

4    the end and say whether or not the ballot is

5    eventually accepted or rejected?

6    A      Correct.

7    Q      And who maintains this database?

8    A      My staff.

9    Q      And is this database used statewide?

10   A      Yes.

11   Q      Was it provided to Brazos County

12   from -- by someone?

13   A      It's provided by the Secretary of State's

14   office.

15   Q      And how long has it been in use?

16   A      I could not answer that.

17   Q      Was it in use when you started at

18   Robertson County?

19   A      Not that specific database, no.

20   Q      Was it in use when you started at Brazos

21   County?

22   A      Yes, it was.

23   Q      And was there a different database when

24   you were at Robertson?

25   A      Yes.

RICHARDSON: TRUDY HANCOCK

Page 66

1   Q      Also run by the Secretary of State?

2   A      Correct.

3   Q      And did it track the same things?

4   A      Yes.

5   Q      What was different about it, if anything?

6   A      It was called NVRA, and it was mostly to

7   track voter registration information.

8   Q      Did it also track mail-in ballots?

9   A      I don't remember.

10  Q      With respect to mail-in ballot

11  applications and then whether the ballot is

12  accepted or rejected, how far back in time does

13  the TEAM database go?

14  A      I could not answer that.

15  Q      Do you know if it goes back many years?

16  A      It goes back several, yes.

17  Q      Do you know if it goes back until 2012?

18  A      Parts of it do, but they've made

19  enhancements over the past several years, so I

20  can't tell you which portions of that

21  data- -- what all is covered in that database.

22  Q      Does the Secretary of State's office

23  require you to use TEAMs?

24  A      No.

25  Q      Do you know if any counties don't use

RICHARDSON: TRUDY HANCOCK

Page 67

1   TEAMs?

2    A      There are some of the -- some counties

3   that have a -- have their own database that they

4   pay for.  There are companies that do voter

5   registration, and they do upload nightly to TEAM

6   to keep the state files active.

7    Q      **Why does your office use TEAMs?**

8    A      It was what was in place when I came here.

9   It's a free database that's offered by the state.

10  And so, you know, I don't know what the reason for

11  the county choosing that was.

12   Q      **You've also mentioned throughout the**

13  **morning that there are various forms that the**

14  **Secretary of State's office provides you with;**

15  **correct?**

16   A      Correct.

17   Q      **And some of these forms are related to**

18  **mail-in ballots?**

19   A      Correct.

20   Q      **And did you mention that there's a catalog**

21  **or something like that of these forms?**

22   A      There's an online manual where you can

23  obtain those forms.

24   Q      **And what forms are there that relate to**

25  **mail-in ballots?**

**hg**

RICHARDSON: TRUDY HANCOCK

Page 68

1   A      I would have to look on the manual and

2   read them to you.  I don't know off the top of my

3   head what they are.

4   **Q      Are there any forms or letters you use**

5   **throughout any point of the mail-in ballot process**

6   **that don't come from the Secretary of State?**

7   A      Not generally.

8   **Q      When you say "not generally," are there**

9   **exceptions?**

10  A      Just as it -- in this case, the letter

11  that I sent to Dr. Richardson, if there's

12  something to follow up and there's not a form

13  letter, then I may do some kind of correspondence.

14  **Q      So as a matter of course, the forms you**

15  **use are from the Secretary of State?**

16  A      Yes, sir.

17  **Q      And when you use a different form or**

18  **letter, it's an exception?**

19  A      Yes, sir.

20  **Q      You also talked a little bit about your**

21  **office's document retention; is that correct?**

22  A      Correct.

23  **Q      And what are the document retention rules**

24  **or regulations that apply to your office?**

25  A      Election records are required -- if

RICHARDSON: TRUDY HANCOCK

Page 69

```
 1    there's a federal or state election, it's required
 2    to be maintained for 22 months from the date of
 3    the election.
 4    Q       And where does that regulation come from?
 5    A       From the archives.  From the state
 6    archives.
 7    Q       Is that in the Texas Election Code?
 8    A       Yes, it is also stated in the code.
 9    Q       And what exactly do you have to retain?
10    A       We retain all documents.
11    Q       And this would be all documents related to
12    mail-in ballot voting?
13    A       Yes.
14    Q       And this would include the application?
15    A       Yes.
16    Q       And it would include the carrier envelope
17    that's returned?
18    A       Yes.
19    Q       And the filled-out ballot?
20    A       Yes.
21    Q       Does it include the reject- -- any
22    rejection notices that are sent to voters?
23    A       Yes, sir.
24    Q       Excuse me.  Was that a "yes" or a "no"?
25    A       Yes, sir.
```

RICHARDSON: TRUDY HANCOCK

Page 70

1    Q      And would that be a rejection notice

2    related to the final ballot as well as the ballot

3    application?

4    A      Both.

5    Q      Are there any other document retention

6    policies that apply to your office?

7    A      No, sir.

8    Q      Do you have any email retention policies

9    in your office?

10   A      Whatever the state archive schedule is.

11   Q      Are there any county-specific policies?

12   A      Not to my knowledge.

13   Q      You mentioned just before the break the

14   early voting ballot board.  What is an early

15   voting ballot board?

16   A      It's a group that's appointed to qualify

17   the mail-in ballots.

18   Q      And what is the role of the early voting

19   ballot board in Brazos County?

20   A      I'm sorry.  The role?

21   Q      The role.  What role do they play?

22   A      They qualify all mail-in ballots, civilian

23   and military.

24   Q      And what you mean by "qualify"?

25   A      They check to make sure that the

RICHARDSON: TRUDY HANCOCK

Page 71

```
1    application was filled out properly.  I mean, you
2    would have to look at the code.  I don't -- I
3    mean, I'm not a part of that board.  I have
4    general knowledge of what they do.
5        Q      And where did you acquire this general
6    knowledge?
7     A      Just through the code and the handbook for
8    the Secretary of State's office.
9        Q      And just going forward, is the early
10   voting ballot board also sometimes referred to as
11   the "EVBB"?
12    A      Correct.
13       Q      So if I say "EVBB," you'll know that I
14   mean the early voting ballot board?
15    A      Yes, sir.
16       Q      Who is Robert Davis?
17    A      He is the chair or the judge of the early
18   voting ballot board.
19       Q      And that's the early voting ballot board
20   for Brazos County?
21    A      Yes.  It is a -- for -- they're appointed
22   each election.  So he was for past elections and
23   has not been appointed yet for November.  We
24   haven't completed that process yet.
25       Q      How many elections has he served as the
```

Page 72

1    EVBB judge for?

2    A      I could not tell you that number right off

3    the top of my head.

4    Q      Has it been several elections?

5    A      Yes.

6    Q      Has it been several consecutive elections?

7    A      Yes.

8    Q      Do you remember who the judge was

9    beforehand?

10   A      No, sir.

11   Q      What are Mr. Davis' qualifications to be

12   EVBB judge?

13   A      The only qualification are set out in the

14   code, and he is appointed by the party.

15   Q      Any other qualifications?

16   A      No.

17   Q      Who else is on the EVBB?

18   A      They're individ- -- voter -- registered

19   voters that are nominated by their parties.

20   Q      And that happens every election?

21   A      Yes, sir.

22   Q      And what are the qualifications of EVBB

23   members?

24   A      To -- they basically have the same

25   qualifications as an election judge.

RICHARDSON: TRUDY HANCOCK

Page 73

1   Q      And what are those qualifications?

2   A      To be a registered voter, live in the

3   jurisdiction.

4   Q      Anything else?

5   A      No.

6   Q      Are members of the early voting ballot

7   board required to undergo any training?

8   A      I do not know.

9   Q      Have you ever heard of any training of

10  EVBB members occurring?

11  A      The only thing I have knowledge of is that

12  we always supply them a copy of the handbook

13  before they meet.

14  Q      And that's the Secretary of State's

15  election handbook?

16  A      Correct, the early voting ballot board

17  handbook.

18  Q      And who exactly provides that to the EVBB?

19  A      Myself.

20  Q      And who do you give it to?

21  A      The judge.

22  Q      And does this happen every election?

23  A      Yes.

24  Q      And you just use the most recent version

25  of that handbook?

RICHARDSON: TRUDY HANCOCK

Page 74

1    A      Yes, sir.

2    Q      **Does the judge then give the handbook to**

3    **other members of the EVBB?**

4    A      I would not know.

5    Q      **Has the judge or anyone from the EVBB ever**

6    **asked you any questions about their role?**

7    A      About the board's role?

8    Q      **Correct.**

9    A      No.

10   Q      **Have they ever asked you any questions in**

11   **general about their duties?**

12   A      No.

13   Q      **Has the judge ever asked you any questions**

14   **when you turn over the Secretary of State**

15   **handbook?**

16   A      No, sir.

17   Q      **Are members of the EVBB paid?**

18   A      Yes.

19   Q      **And how much are they paid?**

20   A      Currently, they pay -- they're paid the

21   same amount as an election worker.  Currently,

22   it's $5 an hour.

23   Q      **And who pays them?**

24   A      If it's a general and it's a county

25   election, the county does.  If it's a party

RICHARDSON: TRUDY HANCOCK

Page 75

1    election, like a primary, then the party pays

2    them.

3    **Q      And how is the EVBB budget determined?**

4    A      I don't -- as far as I know, they don't

5    have a budget.

6    **Q      Does the money that goes towards their**

7    **salaries come from your office?**

8    A      No.

9    **Q      Where does it come from?**

10   A      It comes out of the county general budget.

11   If it's a -- if it's a general election and the

12   county's paying them, then it comes out of the

13   general budget as a payroll --

14   **Q      And who supervises -- oh, apologies.**

15   A      I'm sorry -- as a payroll expense.

16   **Q      And who supervises the EVBB?**

17   A      The early -- the EVBB judge.

18   **Q      And who supervises the EVBB judge?**

19   A      No one, to my knowledge.

20   **Q      If the EVBB rejects a mail-in ballot for**

21   **any reason, what happens?**

22   A      They fill out a letter letting them know

23   why their ballot was rejected, and then they turn

24   those over to myself, and we make copies of those

25   letters and mail them out to them.

RICHARDSON: TRUDY HANCOCK

Page 76

1    Q        Who fills out those letters?

2    A        The judge.

3    Q        That's the EVBB judge?

4    A        Correct.

5    Q        Mr. Davis, in recent elections?

6    A        Correct.

7    Q        And then did you say you mail out copies

8    of those letters to the voters?

9    A        We mail the original and keep a copy.

10   Q        And how long do you keep those copies for?

11   A        For the 22-month retention period.

12   Q        What happens after that?

13   A        They're shredded.

14   Q        What are the reasons that the EVBB can

15   reject a mail-in ballot?

16   A        If it's not received in a timely manner,

17   if signatures from the application and carrier

18   envelope don't match.

19   Q        Any other reasons?

20   A        The letter lists, like, ten things.

21   There's -- whether or not the witness filled out

22   properly, if the carrier envelope was not executed

23   properly.

24   Q        And you said you reviewed Section 87 of

25   the Texas Election Code before this deposition;

RICHARDSON: TRUDY HANCOCK

1    correct?

2    A      Correct.

3    Q      I'd like to pull that up quick.  Bear with

4    me one moment.

5    A      Okay.

6    Q      And can you see that?

7    A      Yes.

8    Q      So what I'm displaying here is

9    Section 87.041 of the Texas Election Code.

10            Does this look familiar?

11   A      Yes.

12   Q      So you previously looked at some reasons

13   that the EVBB might reject a mail-in ballot, and

14   you mentioned that one reason might be that the

15   signatures don't match; is that correct?

16   A      Correct.

17   Q      And when you say that, are you referring

18   to Section 87.041(b)(2), which I've highlighted

19   here?

20   A      Correct.

21   Q      And that section reads:  "A ballot may be

22   accepted only if:  Neither the voter's signature

23   on the ballot application nor the signature on the

24   carrier envelope certificate is determined to have

25   been executed by a person other than the voter,

**hg**

RICHARDSON: TRUDY HANCOCK

Page 78

1    unless signed by a witness."

2              Is that correct?

3    A      Correct.

4    Q      Do you believe that this regulation is the

5    same as saying a ballot must be rejected if the

6    signatures don't match?

7    A      Yes.

8    Q      And what do you base that on?

9    A      The application that's received from my

10   office and the carrier envelope should be filled

11   out by the same person.

12   Q      And if the signatures don't match, what

13   does that mean to you?

14   A      If they're not similar.

15   Q      Under this provision of the Texas Election

16   Code, what are the standards that the EVBB uses to

17   determine if the signature on the ballot

18   application and the signature on the carrier

19   envelope were executed by different people?

20   A      I don't know.  I'm not a member of that

21   board.

22   Q      Is it your belief that the standard is if

23   the signatures don't match, that determines that

24   it's been signed by a different person?

25   A      Correct.

hg

RICHARDSON: TRUDY HANCOCK

Page 79

1   Q        I'm going to stop sharing that for now.

2            Did the document go away?

3   A        Yes, it did.

4   Q        Thank you.

5            Other than what we've discussed, what

6   interactions do you or your office generally have

7   with the office of the Texas Secretary of State?

8   A        Just oversight on the elections,

9   questions -- if there's questions that should

10  arise or just advice that we need.

11  Q        And how often do you speak with

12  representatives of the Secretary of State's

13  office?

14  A        I wouldn't say very often.

15  Q        How often is not very often?

16  A        It just depends on what's going on.  Like

17  recently, with COVID-19 going on, I've had quite a

18  few conversations just trying to figure out what

19  we need to get our polling places to make sure

20  that people are safe to vote.  But normally, we

21  would not -- it would not be a daily occurrence.

22  Q        During the 2018 election, for example, how

23  many times do you think you spoke with the Texas

24  Secretary of State's office during the election

25  process?

hg

RICHARDSON: TRUDY HANCOCK

Page 80

1    A      I would not be able to answer that.

**2    Q      But you did speak with them?**

3    A      I can't answer "yes" or "no."  I would

4    assume that at some point I probably did, but I

5    couldn't tell you.

**6    Q      And do you recall ever speaking with the**

**7    Secretary of State's office about mail-in ballots?**

8    A      No.

**9    Q      Has anyone in your office ever spoken with**

**10   the Secretary of State's office about mail-in**

**11   ballots?**

12   A      No.  The only -- we sometimes have

13   questions on the overseas voters, and so the

14   election coordinator, Ms. Ocon, would call the

15   state periodically with questions for overseas

16   voters, whether or not they qualified according to

17   what they chose on the application.

**18   Q      Any other conversations with the Secretary**

**19   of State's office?**

20   A      Not that I remember.

**21   Q      And you're familiar with the election**

**22   advisories that are issued by the Secretary of**

**23   State's office; correct?**

24   A      Correct.

**25   Q      And what are election advisories?**

RICHARDSON: TRUDY HANCOCK

Page 81

1   A       Sometimes best practices, sometimes

2   reminders of what we need to do, just upcoming

3   things to be sure to put on your calendar.  Things

4   like that.  Just advisories to be sure that the

5   state is running, you know, all elections in the

6   same manner.

7   **Q       And as the Brazos County elections**

8   **administrator, are you obligated to act in**

9   **accordance with any election advisory from the**

10  **Secretary of State?**

11  A       Yes.

12  **Q       And when that -- when an election advisory**

13  **comes out, who receives it?**

14  A       Most of the time, they're distributed by

15  email, just statewide offices.

16  **Q       And do you receive all election advisories**

17  **via email?**

18  A       Yes.

19  **Q       Does anyone else from your office?**

20  A       Yes.

21  **Q       And when election advisories are emailed**

22  **around, do you discuss them with members of your**

23  **staff?**

24  A       Yes, depending on what the advisory

25  pertains to.  If it's elections, then I would

RICHARDSON: TRUDY HANCOCK

Page 82

 1   discuss that with my elections coordinator.  If

 2   it's voter registration, then I would discuss that

 3   with the voter registration coordinator.

 4   **Q      Have you discussed them with anyone else**

 5   **in Brazos County?**

 6   A      Only if I had questions on it, I would

 7   discuss it with the county attorney.

 8   **Q      I'm sorry.  You said the county attorney?**

 9   A      Yes.

10   **Q      And who is the county attorney?**

11   A      My liaison is the assistant county

12   attorney, Bruce Erratt.

13   **Q      Do you ever speak with other elections**

14   **administrators in Texas about the Secretary of**

15   **State's election advisories?**

16   A      Not normally, no.

17   **Q      Do you recall ever speaking to other**

18   **election administrators about them?**

19   A      No, not really.

20   **Q      When the Secretary of State issues an**

21   **election advisory, what is the process that your**

22   **office uses to implement whatever is in the**

23   **advisory?**

24   A      Most advisories are just reminders of what

25   a process or procedure is.  If there's any changes

RICHARDSON: TRUDY HANCOCK

Page 83

1   that need to be implemented, then we would follow

2   that advisory and make whatever adjustments

3   necessary.

4   **Q      And do you hold meetings in your office to**

5   **discuss the advisories?  Or what happens?**

6   A      I'm sorry?

7   **Q      And do you hold meetings with your staff**

8   **to discuss election advisories?  Or what happens?**

9   A      I don't know that I would call it a

10  "meeting."  I would just, you know, discuss it

11  with whichever coordinator that it pertains to.

12  **Q      If you or your office refuse to follow an**

13  **election advisory, what would the consequences be?**

14  A      I don't know.

15  **Q      Do you have any understanding of what they**

16  **might be?**

17  A      No, I do not.

18  **Q      I'm going to pull up another document that**

19  **we'll call Exhibit 3.**

20          (Exhibit 3 marked.)

21  BY MR. KALAR:

22  **Q      Can you see that?**

23  A      Yes.

24  **Q      This document was produced in this**

25  **litigation by the Secretary of State's office, and**

**hg**

RICHARDSON: TRUDY HANCOCK

Page 84

```
1    you can see in the bottom right-hand corner, it
2    bears the Bates Number SOS_000737.
3              Do you see that?
4    A      Where at?  Oh, yes.
5    Q      Oh, apologies.  There in the bottom
6    right-hand corner.
7    A      Yes.
8    Q      Do you recognize this email?
9    A      I can't say I recognize it.  We receive
10   the emails, you know, sometimes daily from them,
11   so...
12   Q      Does this look like emails that you have
13   received from the Secretary of State's office?
14   A      Yes, it does.
15   Q      And do you know, are you on -- it looks
16   like the "To" field is "Elections Internet."
17   A      Yes.
18   Q      Do you know, are you on that list there?
19   A      Yes, I am.
20   Q      So you have no reason to believe that you
21   did not receive this email?
22   A      Correct.
23   Q      And this is generally how you receive
24   election advisories; correct?
25   A      Correct.
```

**hg**

RICHARDSON: TRUDY HANCOCK

Page 85

1    Q       Turning to Page 2 of the document, do you

2    recognize this document?

3    A       We have -- I may have read it.  I don't

4    recognize it at face value, no.

5    Q       Does this look like an election advisory

6    that you would have received from the Secretary of

7    State's office?

8    A       Yes, it does.

9    Q       And what would be your standard practice

10   upon receiving this election advisory?

11   A       Just to read over it, make sure that those

12   are the procedures that we're following.  Like I

13   said, implement any changes that we needed to.

14   Q       Anything else?

15   A       No.

16   Q       And this advisory says it's from Keith

17   Ingram.  Do you see that?

18   A       Yes.

19   Q       Who is Keith Ingram?

20   A       The director of elections for the

21   Secretary of State's office.

22   Q       Do you know him personally?

23   A       I've met him.  I wouldn't consider us

24   friends, but I know who he is, yes.

25                   (Discussion off the record.)

Page 86

1              MR. MIRZA:  I think we lost Sam.

2              He's calling in right now.

3              MS. SURIANI:  Hani, do we maybe

4       want to go off the record for a minute

5       while Sam gets back in?

6              MR. MIRZA:  Sounds good.

7              MS. SURIANI:  I think we can go off

8       the record temporarily.

9          (Recess from 11:41 a.m. to 11:41 a.m.)

10             MR. KALAR:  Sorry about that,

11      Ms. Hancock.

12             MS. SURIANI:  Sam, we're missing

13      your video.

14             MR. MAGEE:  I'm here, Eric Magee.

15             MR. KALAR:  There we go.  I think

16      I'm back now.

17   BY MR. KALAR:

18    Q      Sorry about that, Ms. Hancock.

19    A      Okay.

20    Q      Returning to this election advisory, can

21   you see that again?

22    A      Yes.

23    Q      I believe my last question was about Keith

24   Ingram, and I can repeat it.

25             Do you interact with Keith Ingram on a

**hg**

RICHARDSON: TRUDY HANCOCK

1    professional basis?

2    A      Yes.

3    Q      How often?

4    A      I see him at the Secretary of State's

5    trainings, also at the TAEA conference in January.

6    Q      Anything else?

7    A      No, sir.

8    Q      And this election advisory is addressed to

9    "county clerks/elections administrators."

10           Do you see that?

11   A      Yes.

12   Q      And is your understanding that these

13   election advisories get sent to every county clerk

14   and elections administrator in the state?

15   A      Yes.

16   Q      So at the bottom of this advisory -- I'm

17   going to scroll to Page 2 -- you see here it says:

18   "Please contact us at 1-800-252-VOTE, or

19   at" -- and it gives an email address -- "if you

20   have any questions."

21           Do you see that?

22   A      Yes.

23   Q      Have you ever used that phone number or

24   email address to ask any questions about an

25   election advisory?

**hg**

RICHARDSON: TRUDY HANCOCK

Page 88

1    A     Yes.

2    Q     Did you use that phone number or email

3    address to ask any questions about this election

4    advisory?

5    A     No.

6    Q     How often have you used these methods to

7    ask about election advisories?

8    A     About advisories themselves, not very

9    often.

10   Q     And when was the last time you received an

11   advisory and reached out to the Secretary of

12   State's office with questions?

13   A     I don't -- I don't remember.  It's been a

14   while.

15   Q     Within the past year?

16   A     No.

17   Q     I'm going to scroll to a section.  If you

18   see the heading, it's "Notice of Rejected Ballot."

19          Do you see that?

20   A     Yes.

21   Q     Can you see, bolded in that section, the

22   advisory states:  "However, our office recommends

23   mailing notices of rejected ballots to affected

24   voters as soon as possible"?

25   A     Yes.

**hg**

RICHARDSON: TRUDY HANCOCK

Page 89

1    Q      Do you see that?

2    A      I do.

3    Q      What does your office do to implement this

4    recommendation?

5    A      When the early voting ballot board turns

6    the paperwork over to us at the end of the day, we

7    copy those letters, put them in envelopes, address

8    them, and mail them out the next mailing day.

9    Q      And was this procedure implemented after

10   you received this advisory?

11   A      That has been our procedure.

12   Q      You always receive the ballots from the

13   advisory -- excuse me.  Withdrawn.

14          You receive the rejected ballots from

15   the EVBB, and then the following day, you mail out

16   the notices?

17   A      Yes, sir.  If it -- well, if it's a -- the

18   next mailing day.  If it's a Saturday, the mail

19   won't go out until Monday.

20   Q      So if it's a Saturday, you would mail out

21   the notices on Monday?

22   A      Correct.

23   Q      So with respect to this specific election

24   advisory, did any policy or procedure of your

25   office change?

RICHARDSON: TRUDY HANCOCK

Page 90

1   A       No, sir.

2   Q       Did you speak with anyone at the EVBB

3   about this advisory?

4   A       No, sir.

5   Q       Did you speak with any other county

6   election officials about this advisory?

7   A       Only my staff, and we didn't speak of the

8   advisory itself.  That's just our normal

9   procedure.

10  Q       Did you speak about this bolded

11  recommendation with anyone on your staff?

12  A       No, because that is already our process.

13  Q       And what is the benefit of mailing notices

14  of rejected ballots out as soon as possible?

15  A       To notify the voter.

16  Q       And why is it beneficial to notify them

17  earlier rather than later?

18  A       I had -- the way the mail service is,

19  there's not really a benefit to mailing it out as

20  soon as possible, because they're not going to get

21  it prior to election day.

22  Q       When do you usually receive the notices

23  from the EVBB that you then mail out?

24  A       At the end of the day, when they're

25  through processing their ballots, they turn all

RICHARDSON: TRUDY HANCOCK

Page 91

1   the paperwork back to us.  We get the ballots in a

2   locked box, any rejected ballots with their

3   letters, and their receipts showing that they

4   received those ballot boxes.  I'll come back to my

5   office for retention, and then at that time, we

6   process those letters.

7   Q      And this is always on the same day that

8   the EVBB meets?

9   A      Correct.

10  Q      And on what days does the EVBB meet?

11  A      Generally it's the Saturday before the

12  election, they meet election day, and then they

13  meet six days after the election.

14  Q      So they usually meet twice during an

15  election period; is that correct?

16  A      Two to three times, determinant on -- it's

17  just determined by how large that election is and

18  then the need.

19  Q      I'm sorry.  I didn't catch that.

20  Determined by what?

21  A      The size of the election and if there's a

22  need for them to meet more than once.

23  Q      And who determines how often they meet?

24  A      For our county, our size, they always meet

25  the weekend before to process those -- those

RICHARDSON: TRUDY HANCOCK

1   ballots.  Then they meet again election day to

2   process anything that came in after, and then

3   they're required to meet six -- at least six days

4   after the election to process any late ballots or

5   provisionals.  So it's set out in the code.

6   **Q      Could they meet additional times if they**

7   **chose?**

8   A      If it's necessary.  The board -- the judge

9   would set those times.

10  **Q      And who makes that decision?**

11  A      The EVBB judge.

12  **Q      And where does the EVBB meet in Brazos**

13  **County?**

14  A      Currently they meet in the training room

15  in my office at the Ruth McLeod Building.

16  **Q      And do they coordinate with your office**

17  **every time they meet on logistics?**

18  A      Correct.

19  **Q      Is your office generally in contact with**

20  **the EVBB throughout their process?**

21  A      We're on-site in case they need any backup

22  of documentation.

23  **Q      So when the EVBB meets, is somebody from**

24  **your office present?**

25  A      We're in the office, but we are not in

RICHARDSON: TRUDY HANCOCK

```
 1  with the board.
 2    Q      And who from your office is in the office
 3  during those times?
 4    A      Typically myself, Krystal Ocon, and
 5  Victoria Elliott.
 6    Q      And that's every time the EVBB meets for
 7  every election?
 8    A      Yes.
 9    Q      Is there anything in the Texas Election
10  Code that dictates when you need to mail a
11  rejection notice to a voter?
12    A      Not to my knowledge.
13    Q      But it is your office's practice to mail
14  that notice the day after receiving it from the
15  EVBB; correct?
16    A      Correct.
17    Q      And what was your process in Robertson
18  County?
19    A      It was similar.
20    Q      Was it the same?
21    A      In Robertson County, they're smaller.  So
22  by population, their early voting ballot board
23  does not meet until the day before the election.
24  They can't meet until -- because of their size,
25  they can't meet as early, and so most of the time,
```

RICHARDSON: TRUDY HANCOCK

Page 94

1  those letters do not go out until election day.

2  Q     And turning back to this advisory --

3  apologies.

4          Okay.  Looking at the bottom paragraph

5  on the page that is stamped SOS_000738, the

6  sentence that starts with:  "In accordance with

7  Section 87.0431."

8          Do you see that?

9  A     Yes.

10 Q     So that paragraph states:  "We are issuing

11 a revised version of the 'Notice of Rejected

12 Ballot' along with this advisory."

13         Do you see that?

14 A     Yes.

15 Q     What does that mean?

16 A     That they had changed that notice of

17 rejected ballot by some way, and so they are

18 submitting us a new form to use, or notifying us

19 that there is a new form to use.

20 Q     And are you required to use that form?

21 A     Yes.

22 Q     What requires you to use that form?

23 A     We always use the latest form.

24 Q     And that form always comes from the

25 Secretary of State; correct?

**hg**

RICHARDSON: TRUDY HANCOCK

Page 95

1    A      Correct.

2    Q      That paragraph continues:  "The revised

3    notice includes an additional sentence advising

4    the voter, quote:  'If you believe that your mail

5    ballot was rejected in error, please contact your

6    early voting clerk to determine what remedies may

7    be available to you,'" end quote.

8              Do you see that?

9    A      Yes, I do.

10   Q      And I'm going to scroll down.  This notice

11   was attached to this election advisory.  Do you

12   see on the screen now the "Notice of Rejected

13   Ballot"?

14   A      I do.

15   Q      And is this the notice of rejected ballot

16   that Brazos County uses?

17   A      Yes.

18   Q      And who fills out this notice?

19   A      The early voting ballot board judge.

20   Q      And who provides the early voting ballot

21   board judge with these forms?

22   A      My office.

23   Q      And do you see the second sentence at the

24   top of the notice reads:  "If you believe that

25   your mail ballot was rejected in error, please

RICHARDSON: TRUDY HANCOCK

Page 96

1   contact your early voting clerk to determine what

2   remedies may be available to you"?

3    A        Correct.  I read that, yes.

4    Q        So if a voter in Brazos County receives

5   this notice of rejected ballot, they can contact

6   you, as the early voting clerk, to determine what

7   remedies may be available; correct?

8    A        Correct.

9    Q        And what might those remedies be?

10   A        It's dependent on the time -- the time

11  frame.

12   Q        What do you mean?

13   A        Well, if the election is over and the, you

14  know, election day has passed, there's really no

15  remedy for that voter.  If it's prior to election

16  day, then they would be able to cast a ballot in

17  person.

18   Q        So if a voter receives a rejection notice

19  early enough, they can correct their ballot?

20   A        Correct.

21   Q        And if a voter received this notice of

22  rejected ballot and there was still time to submit

23  a new ballot, is that what you would advise they

24  do if they contacted you?

25   A        Are you asking can they -- can they submit

RICHARDSON: TRUDY HANCOCK

1   a new ballot-by-mail ballot or vote in person?

2   Q      I can rephrase.

3   A      Yes, please.

4   Q      If a Brazos County voter receives this
5   notice prior to election day and calls your office
6   asking for remedies, what would you recommend they
7   do?

8   A      That they take the notice and appear at
9   the polling place and vote in person.

10   Q      Would they be able to submit a new mail-in
11   ballot?

12   A      No.  They would not have time to do that.

13   Q      When does the mail-in ballot need to be
14   received to be counted?

15   A      The day after the election.  It has to be
16   postmarked by election day and received the day
17   after.

18   Q      So if a Brazos County voter received this
19   notice of rejected ballot after election day and
20   called you as the early voting clerk, what
21   remedies would you be able to provide?

22   A      To my knowledge, none.

23   Q      And have you used this revised notice in
24   any elections yet?

25   A      If that is their most current form, then

RICHARDSON: TRUDY HANCOCK

Page 98

1   that is what we would be using currently.

2   Q      Have you used this form in an election

3   yet?

4   A      Again, all I can say is if it's the most

5   current -- like if -- I don't remember what the

6   date was on the letter, when it went into effect.

7   But that would be the one that we would be using,

8   if it's there --

9   Q      I can scroll up.

10         So the new form, based on the

11   advisory, came out on February 11th, 2020.

12   A      So yes, we would have used --

13   Q      Have there been --

14   A      We would have used it in the primary.

15   Q      And did any voters contact you after

16   receiving this notice during the primaries?

17   A      No, sir.

18   Q      Do you know if any mail-in ballots were

19   rejected during these most recent primaries?

20   A      Yes, sir.

21   Q      How many?

22   A      I could not tell you that number off the

23   top of my head.

24   Q      Do you remember if it was more or less

25   than 100?

**hg**

RICHARDSON: TRUDY HANCOCK

Page 99

1    A       Less than 100.

2    Q       **More or less than 10?**

3    A       Less.

4    Q       **And during this last primary, when were**

5    **these notices of rejected ballots to those voters**

6    **sent out by your office?**

7    A       I could not tell you the exact date

8    without looking at the letter to see.  But if

9    we -- the normal procedure would be to send them

10   out after the board met.

11   Q       **So is it fair to say that the Texas**

12   **Election Code allows a voter to correct an**

13   **otherwise rejected mail-in ballot?**

14   A       Yes, if it's in a timely manner.

15   Q       **So is it fair to say the timing of the**

16   **notice is important to whether or not the ballot**

17   **can be corrected?**

18   A       Correct.

19   Q       **And if the notice is received in time,**

20   **there's nothing in the Texas Election Code that**

21   **prevents a voter from correcting their ballot;**

22   **correct?**

23   A       Correct.

24   Q       **Scrolling back up to the election**

25   **advisory, on the top of Page 2 of the advisory, do**

RICHARDSON: TRUDY HANCOCK

Page 100

1   you see this bold section saying "Resolution of

2   Incorrect Determination By Early Voting Ballot

3   Board"?

4    A      Yes, I see that.

5    Q      This section references Section 87.127 of

6   the Texas Election Code; correct?

7    A      Correct.

8    Q      Are you familiar with Section 87.127 of

9   the Texas Election Code?

10   A      Yes.

11   Q      What does it say?

12   A      Do you want me to read it to you from what

13   the advisory says?

14   Q      That's okay.  What's your understanding of

15   what Section 87.127 says?

16   A      That prior to canvass, I can get an

17   injunction by a district court if the ballot was

18   incorrectly rejected.

19   Q      Now I'm actually going to turn to the

20   Texas Election Code in that provision.

21           Can you see that highlighted portion

22   on the screen?

23   A      Correct.

24   Q      And this is the Section 87.127 that you

25   just described to me; correct?

hg

RICHARDSON: TRUDY HANCOCK

Page 101

1    A     Yes.

2    Q     And this section gives power to a county

3    election officer; is that right?

4    A     Yes.

5    Q     And are you a county election officer?

6    A     Yes.

7    Q     Is anyone else in Brazos County a county

8    election officer?

9    A     No.

10   Q     The section of the Texas Election Code

11   also references "the time set for convening the

12   canvassing authority."

13             Do you see that?

14   A     I'm sorry.  Restate that.

15   Q     I'm sorry.  The section of the Texas

16   Election Code references "the time set for

17   convening the canvassing authority."

18             Do you see that?

19   A     Yes.

20   Q     And what is the time set for convening the

21   canvassing authority?

22   A     By statute, normally 7 to 14 days after

23   election day.

24   Q     And what determines whether it is 7 or 14

25   or somewhere in between?

Page 102

1    A      Just the availability of the canvassing

2  authority.

**3    Q     And what is the canvassing authority?**

4    A      For a state or local election, it's the

5  commissioners court.

**6    Q     I'm sorry.  It's the what?**

7    A      For the state and local offices, it's the

8  commissioners court.

**9    Q     And is that a county entity?**

10    A      Yes.  Brazos County Commissioners Court.

**11    Q     And are you involved in that process?**

12    A      Only to the extent that I prepare the

13  paperwork for them.

**14    Q     Who is on that board?**

15    A      The county judge and the commissioners.

**16    Q     And how many commissioners are there?**

17    A      For Brazos County, four.

**18    Q     And is the judge and the four**

**19  commissioners elected?**

20    A      Yes, sir.

**21    Q     Do you report to the judge or the**

**22  commissioners?**

23    A      I don't -- I don't understand what you

24  mean by "report."

**25    Q     I guess are they -- as the Brazos County**

**hg**

RICHARDSON: TRUDY HANCOCK

Page 103

1   election administrator, are they -- are they your

2   superiors?

3   A    Yes.

4   Q    So back to Section 87.127, under this

5   provision of the Texas Election Code, you have the

6   power to "petition a district court for injunctive

7   or other relief" if you "determine that a ballot

8   was incorrectly rejected or accepted by the early

9   voting ballot board before the time set for

10   convening the canvassing authority;" correct?

11   A    Correct.

12   Q    Have you ever petitioned a district court

13   for injunctive or other relief pursuant to this

14   section of the Texas Election Code?

15   A    No, sir.

16   Q    You haven't done so while you've been the

17   Brazos County election commissioner?

18   A    No.

19   Q    How about while you worked for Robertson

20   County?

21   A    No, and the statute wasn't in effect then.

22   Q    When did the statute go into effect?

23   A    According to your document, September 1st,

24   2017.

25   Q    So understanding that you've never

RICHARDSON: TRUDY HANCOCK

Page 104

1   petitioned a district court for relief, since you

2   became the Brazos County election administrator,

3   have you ever determined that a ballot was

4   incorrectly rejected or accepted by the early

5   voting ballot board?

6   A       No, I don't do that determination.

7   Q       What do you mean by that?

8   A       I feel that that's the board's

9   responsibility, and I do not check their work.

10  It's not my responsibility to do that.

11  Q       And that was true at Robertson County as

12  well?

13  A       Correct.

14  Q       As the Brazos County election

15  administrator, if you were to determine that a

16  ballot was incorrectly rejected or accepted by the

17  early voting ballot board, how would you go about

18  petitioning the district court for relief?

19  A       I'd speak with the county attorney or seek

20  advice from him.

21  Q       And would the county attorney file this

22  petition?

23  A       If he see -- if he saw necessary, yes.

24  Q       Do you know what relief you'd be able to

25  get from a court?

RICHARDSON: TRUDY HANCOCK

1    A      I do not.

2    Q      Have you ever discussed what relief might

3    be available with anyone?

4    A      I have not.

5    Q      Have you ever discussed the process of

6    petitioning the district court, pursuant to

7    Section 87.127, with anyone?

8    A      No, sir.

9    Q      If an action was brought in district

10   court, who would pay for it?

11   A      I do not know.

12   Q      So Section 87.127 of the Texas Election

13   Code contemplates that a county election official

14   determines that a ballot was incorrectly rejected

15   or accepted by the early voting ballot board;

16   correct?

17   A      Yes.

18   Q      And as a county election officer, what are

19   the tools or resources that you have to determine

20   whether a ballot was incorrectly rejected or

21   accepted by the early voting ballot board?

22   A      I don't have any.

23   Q      As the county election officer, what

24   criteria could you use to determine whether a

25   ballot was incorrectly rejected or accepted by the

RICHARDSON: TRUDY HANCOCK

Page 106

1    early voting ballot board?

2    A       I don't know.

3    Q       Do you have any ability at all to

4    determine whether a ballot has been incorrectly

5    rejected or accepted by the early voting ballot

6    board?

7    A       No.

8    Q       So is it fair to say that there is no

9    possible way for you to petition a district court

10   as contemplated by Section 87.127 of the Texas

11   Election Code?

12   A       No.  As I said, I would seek advice from a

13   county attorney.

14   Q       Do you review ballots that have been

15   rejected or accepted by the early voting ballot

16   board?

17   A       No, I do not.

18   Q       Do you review their work in any way?

19   A       No.

20   Q       Do you ever investigate the early voting

21   ballot board's decision to reject or accept a

22   ballot?

23   A       No, I do not.

24   Q       Do you have any way at all to determine

25   whether the early voting ballot board has made a

RICHARDSON: TRUDY HANCOCK

Page 107

1    mistake?

2    A       No.   We do not look at those afterwards.

3    Q       So is it fair to say that it would be

4    impossible for you to determine whether a ballot

5    was incorrectly rejected or accepted by the early

6    voting ballot board?

7    A       Rephrase that.

8    Q       Sure.

9            Because you do not review the work of

10   the early voting ballot board in any way, is it

11   fair to say that it would be impossible for you to

12   determine whether a ballot was incorrectly

13   rejected or accepted by the early voting ballot

14   board?

15   A       That is correct.

16   Q       So is it fair to say that there's no

17   possible way for you to bring a district court

18   action under Section 87.127?

19   A       Yes.

20   Q       We're going to turn to a new document now,

21   and please let me know when this appears on your

22   screen.

23           Do you see that letter?

24   A       Yes.

25           Can you make it a little larger?



RICHARDSON: TRUDY HANCOCK

Page 108

1     Q      Sure.

2            Did that help?

3     A      Yes.

4     Q      So we're going to call this Exhibit 4, and

5     this is a December 5th, 2016, letter from you to

6     Colton Kilpatrick, and it's Bates-stamped, if you

7     see -- and I'll scroll down to the bottom

8     right -- BRAZOS - 000053.

9            (Exhibit 4 marked.)

10    BY MR. KALAR:

11    Q      Do you see all that?

12    A      I do.

13    Q      What is this letter?

14    A      We received correspondence from

15    Mr. Kilpatrick saying that he was "extremely

16    disappointed" his ballot didn't count, and I

17    responded with the correspondence that you see.

18    Q      And do you still have the correspondence

19    from Mr. Kilpatrick?

20    A      I am not sure.

21    Q      Did you search for it as part of your

22    responses to discovery requests in this case?

23    A      Yes.

24    Q      I'm sorry.  Was that "yes"?

25    A      Yes.  I had the electronic form of the

RICHARDSON: TRUDY HANCOCK

Page 109

1    letter that we sent him.

2    Q      But you didn't find the letter that he

3    sent you?

4    A      No.

5    Q      Do you recall what it said?

6    A      No.

7    Q      So with respect to his 2016 ballot that is

8    the subject of this letter, did you ever discuss

9    Mr. Kilpatrick's ballot with anyone in your

10   office?

11   A      No.

12   Q      Did you ever discuss Mr. Kilpatrick's

13   ballot with anyone on the EVBB?

14   A      No, not that I remember.

15   Q      If you look a little more than halfway

16   down the main paragraph in the middle of the

17   letter, do you see the sentence that reads:  "If

18   it is determined the signature is reasonably

19   similar, the ballot is accepted.  If it is

20   determined that the signature is not reasonably

21   similar, the ballot is rejected"?

22           Do you see that?

23   A      Correct.  Yes, I do.

24   Q      And what did you mean by this?

25   A      Just that a reasonable person would see

RICHARDSON: TRUDY HANCOCK

Page 110

1    that the writing was similar or not.

2    Q        And is that the standard that the EVBB

3    applies to signature analysis?

4    A        I'm not on that board, so I couldn't

5    answer that.

6    Q        I guess, how did you come up with this

7    standard when you put it in the letter to

8    Mr. Kilpatrick?

9    A        It's just a general standard that is just

10   known in the election community.

11   Q        I'm sorry.  Was that "it's the general

12   standard known in the election community"?

13   A        Yes.

14   Q        And what is that based on?

15   A        Just years of experience and how the early

16   voting ballot board normally works.

17   Q        Has anyone ever taught you those

18   standards?

19   A        No.

20   Q        Have you ever discussed those standards

21   with anyone?

22   A        Not off the -- not that I remember.

23   Q        Have those signature comparison standards

24   ever been the subject of any communication you've

25   had with the Secretary of State of Texas?

RICHARDSON: TRUDY HANCOCK

Page 111

1    A     No.

2    Q     Have those standards ever been the subject

3  of any of the conferences put on by the Secretary

4  of State that you have attended?

5    A     No.

6    Q     Have signature comparison standards ever

7  been the subject of any training that you've had

8  in your career as an elections officer?

9    A     No.

10   Q     So when you wrote that this was the

11 standard to Mr. Kilpatrick, you meant this was the

12 standard applied by the EVBB; correct?

13   A     Yes.

14   Q     How do you know that this was the standard

15 they applied?

16   A     Like I say, it's not something that's

17 discussed or taught or -- it's just -- I guess

18 just an inference -- something inferred by the

19 election code that it's just a reasonable

20 standard, what a reasonable person would think.

21   Q     And do you know what standard the EVBB of

22 Brazos County applied to Mr. Kilpatrick's ballot?

23   A     I would assume a reasonable standard.

24   Q     You're just assuming that?

25   A     I'm sorry?

RICHARDSON: TRUDY HANCOCK

Page 112

1    Q      Did you say you're just assuming that?

2    A      Yes.

3    Q      So you don't know what standard they

4    actually applied to Mr. Kilpatrick's ballot;

5    correct?

6    A      Correct.

7    Q      During your time as the Brazos County

8    elections administrator, do you often send letters

9    like this to voters?

10   A      No.  Only if there's a -- if we receive

11   a -- you know, a written request from them, a

12   written correspondence.

13   Q      And how often has that occurred during

14   your time as the Brazos County election

15   administrator?

16   A      I think I've only sent this one and one

17   other, Mr. Richardson.

18   Q      And are these the only two complaints

19   you've ever received, since you became the Brazos

20   County elections administrator, from voters?

21   A      Sometimes -- occasionally we'll have a

22   voter call in and complain or, you know, say that

23   they don't understand why their ballot didn't

24   count.  We just explain to them whatever box is

25   checked and what that means, and tell them that

RICHARDSON: TRUDY HANCOCK

Page 113

1   that was the early voting ballot board's

2   determination.

3   **Q      And during your time as the Brazos County**

4   **elections administrator, have any of these calls**

5   **been related to signature verification?**

6   A      Yes.

7   **Q      Do you recall how many?**

8   A      No, sir, I do not.

9   **Q      And have you personally answered any of**

10  **those calls?**

11  A      Yes, sir, I have.

12  **Q      Do you recall how many you personally**

13  **answered?**

14  A      No, sir.

15  **Q      And if a voter's mail-in ballot has been**

16  **rejected due to a signature mismatch and they call**

17  **to complain, what do you tell them?**

18  A      We just explain to them that the -- how

19  the board works, that it's a group of voters that

20  are nominated by the parties, they work as

21  teams -- one Democrat, one Republican -- they look

22  at that signature and determine the best that they

23  can.

24  **Q      Do you recall telling this to voters that**

25  **have called you?**

**hg**

RICHARDSON: TRUDY HANCOCK

1   A      Yes, sir.

2   **Q      Are you obligated to respond to voters in**

3   **writing, like you did to Mr. Kilpatrick?**

4   A      No, sir.  Professionally I feel that I

5   should, but I don't know that there's any

6   obligation.

7   **Q      And did you do the same thing when you**

8   **were the elections administrator in Robertson**

9   **County?**

10   A      Correct.

11   **Q      Do you recall voters complaining about**

12   **signature mismatch ballot rejections when you**

13   **worked in Robertson County?**

14   A      Yes, sir.

15   **Q      And do you recall sending any similar**

16   **letters as this?**

17   A      No, sir.

18   **Q      When -- excuse me.**

19   **What was the date of the 2016 general**

20   **election?**

21   A      The letter states -- oh, I couldn't tell

22   you right off the top of my head.

23   **Q      Could it have been November 8th, 2016?**

24   A      It could have, if that's the first

25   Tuesday.

RICHARDSON: TRUDY HANCOCK

Page 115

1  Q     And Mr. Kilpatrick's letter, based on your

2  letter, was sent to your office on November 2nd,

3  2016; correct?

4  A     His letter -- my correspondence says his

5  letter was dated November 2nd.

6  Q     Do you have any reason to believe that his

7  letter was not dated November 2nd?

8  A     No, I do not.

9  Q     So this would mean that Mr. Kilpatrick

10 received his notice of rejection before election

11 day; correct?

12 A     If election day was November 8th, but like

13 I said, I don't -- I don't know.

14 Q     So assuming that election day was

15 November 8th, 2016, would it have been unusual for

16 Mr. Kilpatrick to receive a notice of ballot

17 rejection six or more days before then?

18 A     Yes, because the ballot board does not

19 meet until the Saturday before.  So if election

20 day was the 8th, the ballot board wouldn't have

21 met until, like, November 6th, so...

22 Q     If Mr. Kilpatrick received his notice of

23 rejection prior to election day, he would still

24 have time to submit a legal vote; correct?

25 A     Correct.

RICHARDSON: TRUDY HANCOCK

Page 116

1    Q     And by "legal vote," I mean he would still

2  have time to submit a vote that would be accepted.

3    A     He would still have time to vote in

4  person, yes, if he had received this notice.

5    Q     Do you recall, when Mr. Kilpatrick mailed

6  his complaint to your office, who received that

7  letter?

8    A     I -- we don't know.  It's whoever

9  worked -- was working in the lobby at that time

10 would have received all the mail, stamped it,

11 opened it, and then forwarded it to the proper

12 person, so...

13   Q     And would it have been your practice to

14 immediately open that mail?

15   A     Yes.

16   Q     Do you recall immediately opening this

17 letter?

18   A     I -- no.  I could not tell you that, from

19 2016.

20   Q     Is there a reason you waited until

21 December 5th, 2016, to respond to Mr. Kilpatrick?

22   A     No, other than just the time frame and

23 with the election we have so much paperwork

24 afterwards.  I mean, I wouldn't have been able to

25 respond to him until that day.

RICHARDSON: TRUDY HANCOCK

Page 117

1   Q      If you had gotten in touch with

2   Mr. Kilpatrick immediately, assuming that he

3   received his notice of rejection prior to election

4   day, what would you have recommended?

5   A      That he vote in person.

6   Q      I'd like to turn to another letter that

7   you previously referenced.

8              Do you see that on the screen now?

9   A      I do.

10  Q      Great.  We'll call this Exhibit 5.

11         (Exhibit 5 marked.)

12  BY MR. KALAR:

13  Q      And this is a November 26th, 2018, letter

14  from you to Dr. George Richardson, and do you see

15  in the bottom right corner, it was produced in

16  this litigation and Bates-stamped BRAZOS - 000052?

17             Do you see that?

18  A      Yes, I do.

19  Q      And what is this?

20  A      It's a response that I made to

21  Mr. Richardson regarding a "Dear Editor" letter in

22  "The Eagle."

23  Q      And what was the letter that

24  Dr. Richardson sent to "The Eagle"?

25  A      It was a letter stating that how -- that

**hg**

RICHARDSON: TRUDY HANCOCK

Page 118

```
 1   he was upset that his ballot-by-mail did not

 2   count.

 3     Q      Do you recall anything else that it said?

 4     A      Not exactly, no.

 5     Q      Did you discuss Dr. Richardson's letter to

 6   "The Eagle" with anyone else?

 7     A      Yes.  I had a couple of phone calls from

 8   people who know me and said that they had seen the

 9   letter in the newspaper and thought that it

10   warranted a response.

11     Q      And were you specifically mentioned in the

12   letter?

13     A      No.

14     Q      And who are the people you discussed this

15   with?

16     A      I remember one call came from Ruth

17   McLeod -- she works for the county -- and I can't

18   remember who the second person was.

19     Q      What does she do for the county?

20     A      She currently works part-time in the

21   county clerk's office, but she has worked for the

22   county for over 50 years in different capacities.

23     Q      Did she call you as part of her

24   professional obligations?

25     A      No.  We're friends.
```

**hg**

RICHARDSON: TRUDY HANCOCK

Page 119

```
1    Q      And other than her and you said one person
2    who you can't recall, did you discuss
3    Dr. Richardson's letter with anybody else?
4    A      No, not to my recollection.
5    Q      Have you ever reviewed Dr. Richardson's
6    ballots and compared the signatures that are
7    referenced in this letter?
8    A      After I read his letter in "The Eagle,"
9    yes, I did pull his jacket and look at the
10   information inside.
11   Q      And what did you look at?
12   A      The application, the letter to see how
13   they rejected it, and the carrier envelope.
14   Q      Have you ever discussed Dr. Richardson's
15   ballot or his application with any member of the
16   EVBB?
17   A      No.
18   Q      Have you ever discussed Dr. Richardson's
19   letter to "The Eagle" or your response with any
20   member of the EVBB?
21   A      No.
22   Q      You write to Dr. Richardson:  "I want to
23   assure you that we follow the Texas Election Code
24   in the processes of qualifying a ballot that is
25   received in the mail."
```

RICHARDSON: TRUDY HANCOCK

1              Do you see that?

2    A     Yes.

3    Q     Is it your understanding that the EVBB

4    follows the Texas Election Code when comparing

5    signatures?

6    A     Yes.

7    Q     And what is the basis for your

8    understanding?

9    A     Just general knowledge.

10   Q     Do you have any firsthand knowledge of the

11   signature comparison practices used by the Brazos

12   County EVBB?

13   A     No, I do not.

14   Q     Do you have any knowledge of who on the

15   EVBB reviewed Dr. Richardson's 2018 mail-in

16   ballot?

17   A     No, I do not.

18   Q     Do you see in the second paragraph of your

19   letter, you discuss "a team of two volunteers from

20   opposing parties"?

21   A     Yes.

22   Q     You write:  "It is up to that team to make

23   the determination if the signatures are similar

24   enough to accept the ballot."

25              Do you see that?

Page 121

1    A      Yes.

2    Q      **What do you mean by that?**

3    A      That they compare the signatures to the

4    application -- from the application to the carrier

5    envelope, and if a reasonable person would deem

6    them the same signature, then it's accepted.

7    Q      **Do you believe that's the standard that**

8    **the EVBB applied when it reviewed Dr. Richardson's**

9    **ballot in the 2018 general election?**

10   A      Yes.

11   Q      **Why do you think that?**

12   A      General practices.

13   Q      **So you have no firsthand knowledge that**

14   **that's what happened; correct?**

15   A      Correct.

16   Q      **And back to that language, you write:  "It**

17   **is up to that team to make the determination if**

18   **the signatures are similar enough."**

19          **Do you see that?**

20   A      No.  Wait a minute.

21   Q      **It's the second-to-last sentence in the**

22   **middle paragraph of the letter.**

23   A      Yes.  Okay.

24   Q      **What constitutes "similar enough" in terms**

25   **of comparing signatures?**

hg

RICHARDSON: TRUDY HANCOCK

Page 122

1    A      A reasonable person's acceptance.

2    Q      And you write:  "This is the procedure

3    that is set up in the Texas Election Code."

4           Do you see that?

5    A      Yes.

6    Q      Does the Texas Election Code contain this

7    "reasonable person" standard?

8    A      I'm not certain.  I'm speaking more to the

9    way the board is set up.

10   Q      To your knowledge, what does the Texas

11   Election Code say with respect to signature

12   comparison standards?

13   A      I'm not certain.

14   Q      So again, you write to Dr. Richardson that

15   that team of two volunteers determined to reject

16   his ballot.  Is that what you're saying?

17   A      Yes.

18   Q      Does the same team of two volunteers

19   review every mail-in ballot in Brazos County?

20   A      No.

21   Q      How many teams might there be in a Brazos

22   County election?

23   A      It just depends.  For a general election,

24   we normally have about six to ten teams, dependent

25   on the mail-out vote turnout.

Page 123

1   Q      Do you recall how many teams there were in

2   the 2018 general election?

3   A      No, I do not.

4   Q      So it's up to each specific team of two

5   volunteers to determine whether signatures on a

6   ballot are similar enough to signatures on an

7   application; correct?

8   A      Correct.

9   Q      Is it possible for different teams to

10  reach a different conclusion with respect to the

11  same ballot?

12  A      Yes.

13  Q      I'm going to turn off the screen share

14  now.

15            MR. KALAR:  And now, especially for

16        those of us on the East Coast, would be a

17        good time for a lunch break.  I don't have

18        very much left in terms of the fact

19        deposition, but I think it would make

20        sense to take a lunch break now and then

21        come back and finish off the fact

22        deposition and then turn to the 30(b)(6)

23        deposition, if that works for everybody.

24            THE WITNESS:  That's fine.

25            MR. KALAR:  And how about we return

RICHARDSON: TRUDY HANCOCK

Page 124

1          at 1:15 p.m. Central time.  Is that enough

2          time, or would you prefer less time?

3                  THE WITNESS:  I would prefer about

4          an hour.

5                  MR. KALAR:  You'd prefer an hour?

6                  THE WITNESS:  Uh-huh.

7                  MR. KALAR:  An hour would be fine.

8          Let's return at 2:35 p.m. Central time.

9                  MR. MAGEE:  1:35.

10                 THE WITNESS:  1:35.

11                 MR. KALAR:  Excuse me.  2:35

12         Eastern time; 1:35 Central time.

13                 THE WITNESS:  Okay.

14                 MR. KALAR:  Okay.  Can we go off

15         the record, please?

16             (Recess from 12:35 p.m. to 1:37 p.m.)

17     BY MR. KALAR:

18      Q      Hi, Ms. Hancock.  Welcome back.  Just a

19     few more questions before we wrap up this first

20     part of the deposition.

21                 We talked a little bit about your

22     office's budget earlier.  How much does it cost

23     for your office to call a voter?

24      A      To call a voter?  Nothing.  I mean, I

25     don't -- I don't know what the costs are.

RICHARDSON: TRUDY HANCOCK

Page 125

1    Q       How much does it cost your office to mail

2    a letter or a rejection notice to a voter?

3    A       Normal postage.  Right now it's $0.50, I

4    think.

5    Q       And are these costs budgeted at the

6    beginning of the annual budget that we talked

7    about earlier, or are these discretionary funds

8    that you use?

9    A       Budgeted.

10   Q       We also talked a little bit about your

11   office's correspondence with voters generally.

12           Do you or your office ever

13   affirmatively reach out to voters for -- to

14   inquire about their, for example, mail-in ballot

15   applications?

16   A       No.

17   Q       Do you or your office ever reach out to

18   voters to inquire about any other issues?

19   A       No.

20   Q       Does your office receive email inquiries

21   from voters?

22   A       Yes.

23   Q       And who in your office reviews those

24   inquiries?

25   A       Whoever they're addressed to.

Page 126

1   Q      Do you personally receive them?

2   A      Some of them, yes.

3   Q      And do other employees of your office

4   receive them as well?

5   A      Yes.

6   Q      Do you ever receive email inquiries from

7   voters about the mail-in ballot process?

8   A      Yes.

9   Q      Do you ever receive email inquiries from

10  voters after their mail-in ballot has been

11  rejected?

12  A      I don't remember receiving any, no.

13  Q      And that's true for your entire time with

14  Brazos County?

15  A      Correct.

16  Q      How about during your time at Robertson

17  County?

18  A      I don't remember any.

19  Q      Does your office save these emails?

20  A      Yes.

21  Q      Have you produced any of these emails in

22  this litigation?

23  A      No.

24  Q      In response to the discovery requests that

25  you received from plaintiffs in this litigation,

**hg**

RICHARDSON: TRUDY HANCOCK

Page 127

1   what did you do to collect or search for documents

2   in your possession?

3    A      I either went through emails, reports.  It

4   just depended on what was being requested.

5    Q      How did you go about reviewing your

6   emails?

7    A      Just went through my inbox.

8    Q      Did anybody -- anybody else in your office

9   search their emails?

10   A      No.

11   Q      Did anybody else in your office search for

12   files?

13   A      No.

14   Q      Does your email system save emails

15   indefinitely?

16   A      I would not know.  IT handles that.

17   Q      And do you have a practice of deleting

18   your emails regularly?

19   A      No.

20   Q      So to your knowledge, on your email server

21   right now, are there email inquiries from voters

22   about the mail-in ballot process?

23   A      I do not know.

24   Q      Are there email inquiries from voters,

25   among the emails that you have right now, with

RICHARDSON: TRUDY HANCOCK

Page 128

1    complaints after ballots have been rejected?

2    A      Not to my knowledge.

3    Q      Is there anything else you did in response

4    to the discovery requests in this litigation?

5    A      No.

6              MR. KALAR:  And that's all the

7         questions I have right now for the fact

8         portion of the deposition.  I noted

9         earlier off the record that I think we

10        should have everybody state their

11        appearances, and we can do that either at

12        the very end or right now.

13             But otherwise, I'll pass the

14        witness.

15             MS. MACKIN:  This is Anna Mackin.

16        I represent the Secretary of State, and

17        we'll reserve our questions.

18             MR. TAWIL:  This is Isaac Tawil

19        representing Perla Lara in her capacity of

20        city secretary of the City of McAllen.

21        We, too, will reserve our questions.

22             MR. MAGEE:  This is Eric Magee on

23        behalf of Ms. Hancock, and we will reserve

24        our questions.

25             MR. KALAR:  Great.  Thank you very

RICHARDSON: TRUDY HANCOCK

Page 129

1    much, Ms. Hancock.

2          THE REPORTER:  Okay.  We're going

3    off the record.

4        (Off the record at 1:44 p.m.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

RICHARDSON: TRUDY HANCOCK

Page 130

1                    UNITED STATES DISTRICT COURT
                       WESTERN DISTRICT OF TEXAS
2                        SAN ANTONIO DIVISION

3    DR. GEORGE RICHARDSON;            )
     ROSALIE WEISFELD; AUSTIN JUSTICE  )
4    COALITION; COALITION OF TEXANS    )
     WITH DISABILITIES; MOVE TEXAS     )
5    CIVIC FUND; LEAGUE OF WOMEN       )
     VOTERS OF TEXAS; and AMERICAN GI  )
6    FORUM OF TEXAS, INC.,             )
                                       )
7            Plaintiffs,               )
                                       )Civil Case No.
8    v.                                )5:19-cv-00963-OLG
                                       )
9    TEXAS SECRETARY OF STATE; TRUDY   )
     HANCOCK, in her official          )
10   capacity as BRAZOS COUNTY         )
     ELECTIONS ADMINISTRATOR; and      )
11   PERLA LARA, in her official       )
     capacity as CITY OF McALLEN,      )
12   TEXAS, SECRETARY,                 )
                                       )
13           Defendants.               )

14

                       REPORTER'S CERTIFICATION
15             REMOTE VIDEOTAPED DEPOSITION OF
                          TRUDY HANCOCK
16                        May 5, 2020

17           I, Rebecca A. Graziano, Certified Shorthand

18   Reporter in and for the State of Texas, hereby

19   certify to the following:

20           That the witness, TRUDY HANCOCK, was duly

21   sworn and that the transcript of the oral

22   deposition is a true record of the testimony given

23   by the witness;

24           I further certify that pursuant to FRCP Rule

25   30(f)(1) that the signature of the deponent:

hg

1          ____ was requested by the deponent or a

2     party before the completion of the deposition and

3     returned within 30 days from date of receipt of

4     the transcript.  If returned, the attached Changes

5     and Signature Page contains any changes and the

6     reasons therefor.

7          ____ was not requested by the deponent or a

8     party before the completion of the deposition.

9          I further certify that I am neither attorney

10    nor counsel for, related to, nor employed by any

11    of the parties to the action in which this

12    testimony was taken.

13          Further, I am not a relative or employee of

14    any attorney of record in this cause, nor do I

15    have a financial interest in the action.

16          Subscribed and sworn to on this ___ day of

17    _____, 2020.

18

19

20

21    _____

       Rebecca A. Graziano, CSR, RPR, CRR

22     Texas CSR No. 9306

       Expiration Date:  07/31/22

23

24

25

**$**

**$0.50** 125:3

**$5** 74:22

**0**

**000001** 4:8 50:14

**000052** 4:15 117:16

**000053** 4:13 108:8

**000741** 4:11

**1**

**1,200** 49:5

**1-800-252-VOTE** 87:18

**10** 99:2

**100** 58:9 60:12 98:25 99:1

**10019** 2:11

**108** 4:13

**10:54** 62:24

**11/26/2018** 4:14

**117** 4:15

**11:05** 62:20

**11:07** 62:24

**11:41** 86:9

**11th** 98:11

**12/5/2016** 4:12

**12:35** 124:16

**12th** 2:23

**14** 101:22,24

**15th** 2:17

**1:15** 124:1

**1:35** 124:9,10,12

**1:37** 124:16

**1:44** 1:21 129:4

**1st** 17:10 103:23

**2**

**2** 4:7 49:21,22 50:12 85:1 87:17 99:25

**20** 36:25

**2001** 13:5

**2002** 19:21

**2005** 19:1,21

**2012** 51:16,20 66:17

**2016** 14:10 17:10,11 19:1 108:5 109:7 114:19,23 115:3,15 116:19, 21

**2017** 103:24

**2018** 14:10 26:1 49:9,15 79:22 117:13 120:15 121:9 123:2

**2019** 25:24 52:10

**2020** 1:15,20 4:9 8:24 21:5 24:6 25:22 52:7 57:2,5 98:11

**212 728-8000** 2:12

**22** 51:7 69:2

**22-month** 76:11

**26th** 117:13

**2:35** 124:8,11

**2nd** 115:2,5,7

**3**

**3** 4:9 83:19,20

**3,000** 49:6

**30(b)(6)** 123:22

**300** 2:17 58:9 60:12

**4**

**4** 4:12 108:4,9

**402** 2:23

**49** 4:8

**5**

**5** 1:15,20 4:3,14 117:10,11

**50** 118:22

**512 463-2100** 2:18

**512 474-5073** 2:6

**512 482-0701** 2:24

**5th** 108:5 116:21

**6**

**65** 57:6

**6th** 8:24 115:21

**7**

**7** 101:22,24

**70** 11:18

**78** 52:9

**78501** 3:7

**787** 2:11

**78701** 2:17,23

**78741** 2:6

**8**

**83** 4:11 52:6

**87** 37:17,19 76:24

**87.041** 77:9

**87.041(b)(2)** 77:18

**87.0431** 94:7

**87.127** 100:5,8,15,24 103:4 105:7, 12 106:10 107:18

**8th** 114:23 115:12,15,20

**9**

**956 681-3111** 3:7

**979 361-5770** 54:16

**9:39** 1:21 5:2

**A**

**a.m.** 1:21 5:2 62:24 86:9



**ability** 14:24 106:3

**above-styled** 1:20

**accept** 22:5 28:6 42:1 44:21,25 106:21 120:24

**acceptance** 122:1

**accepted** 64:16 65:5 66:12 77:22 103:8 104:4,16 105:15,21,25 106:5,15 107:5,13 109:19 116:2 121:6

**accepting** 18:6 34:16 63:12

**accordance** 20:19 81:9 94:6

**accurate** 6:1

**accused** 31:8

**acquire** 14:22 71:5

**act** 81:8

**action** 20:6 105:9 107:18

**active** 67:6

**activities** 16:22

**addition** 5:22

**additional** 92:6 95:3

**address** 30:23 57:22 58:8 87:19, 24 88:3 89:7

**addressed** 87:8 125:25

**adjust** 25:10

**adjustments** 24:18 83:2

**Adkins** 32:25

**Admin-** 18:21

**administer** 31:21 33:12 34:21

**administering** 22:25

**administration** 20:10 21:2 22:14 33:25

**administrator** 1:10 2:21 10:12 12:25 13:3,9,13 14:12 15:15 17:5, 6,14,20,25 18:7,12,21 19:10 20:9 22:24 26:4,23 29:11,13 33:11 38:8, 12,16 41:6,14,21 46:18 81:8 87:14 103:1 104:2,15 112:8,15,20 113:4 114:8

**administrator's** 25:14

**administrators** 14:17 82:14,18 87:9

**advancement** 19:12

**advertised** 17:16

**advice** 79:10 104:20 106:12

**advise** 96:23

**advising** 95:3

**advisories** 31:23 32:2,5,9,13 34:20 80:22,25 81:4,16,21 82:15, 24 83:5,8 84:24 87:13 88:7,8

**advisory** 4:9 32:18 33:7 37:6 81:9, 12,24 82:21,23 83:2,13 85:5,10,16 86:20 87:8,16,25 88:4,11,22 89:10, 13,24 90:3,6,8 94:2,12 95:11 98:11 99:25 100:13

**affected** 88:23

**affidavit** 10:14

**affirmatively** 125:13

**agenda** 27:13

**ALLISON** 2:22

**allowed** 63:7

**Alston** 64:1

**AMERICAN** 1:5

**amount** 74:21

**analysis** 110:3

**analyzing** 31:17

**Anna** 2:16 128:15

**anna.mackin@ texasattorneygeneral.gov** 2:18

**annual** 24:5 26:25 27:19 29:9 59:24 63:3 125:6

**answering** 8:14 50:23

**answers** 5:23,25 6:15,24

**ANTONIO** 1:2

**apologies** 10:24 35:13 52:24 75:14 84:5 94:3

**apologize** 49:20

**appearances** 128:11

**appeared** 10:13

**appears** 107:21

**applicant** 45:20

**applicants** 48:19,23 52:4

**application** 17:17 42:2,12,16 44:5,9 45:12,15,17,20,22,24 46:2 47:14,17,20 52:16 56:14 57:14,15, 16,23,25 58:6,17,25 59:6,7,10,16, 17 65:2 69:14 70:3 71:1 76:17 77:23 78:9,18 80:17 119:12,15 121:4 123:7

**applications** 4:7 18:6 22:6 28:7 42:1,4 44:22,23 45:7 48:20,22 49:8,14 50:17 51:4,24 52:2 60:23 61:5 63:13,14,15 66:11 125:15

**applied** 111:12,15,22 112:4 121:8

**applies** 27:14 110:3

**apply** 17:16 68:24 70:6

**appointed** 16:1 70:16 71:21,23 72:14

**approved** 23:12 25:16

**approving** 21:16

**Approximately** 15:2

**archive** 70:10

**archives** 69:5,6

**arise** 79:10

**aspects** 64:18

**assessor** 18:3,14 40:20

**assistance** 54:15 63:20

**assistant** 39:14,18 58:15 63:20 82:11

**associate** 11:2

**association** 14:20 15:14 29:12

**assume** 80:4 111:23

**assuming** 111:24 112:1 115:14 117:2

**assure** 119:23

**astevenson@mcallen.net** 3:8

**attached** 11:16 12:13 95:11

**attend** 15:1,9 27:1,8,10,13,15 29:18 30:4 63:4,7

**attended** 13:6 29:20,22,25 30:5,6 111:4

**attorney** 2:16 5:10 11:3 39:14,18



82:7,8,10,12 104:19,21 106:13

**ATTORNEY'S** 3:6

**Auburn** 13:15

**audio** 7:10

**August** 29:4

**Austin** 1:3 2:6,17,23 3:5

**authority** 43:7,12 101:12,17,21
102:2,3 103:10

**automatic** 57:19

**availability** 14:25 35:24 102:1

**Avenue** 2:11 3:6

**avenues** 37:7

**average** 49:4

**aware** 43:10

———————

**B**

**bachelor's** 12:23

**back** 31:1 37:4 42:7,22 47:25
51:14,20 62:20 66:12,15,16,17
86:5,16 91:1,4 94:2 99:24 103:4
121:16 123:21 124:18

**background** 12:22

**backup** 24:22 92:21

**balances** 36:13

**ballot** 4:7 21:16 34:22 36:19 42:14,
19,22,25 43:25 44:5,9,12,15,22
45:4,7,12,17 48:20 49:8 53:2,8
56:6,13 57:24 58:24 59:4,19 60:8
61:13,18,19,22 62:4,5,13 63:4,14
64:15 65:4 66:10,11 68:5 69:12,19
70:2,14,15,19 71:10,14,18,19 73:6,
16 75:20,23 76:15 77:13,21,23
78:5,17 88:18 89:5 91:4 93:22
94:17 95:5,13,15,19,20,25 96:5,16,
19,22,23 97:1,11,13,19 99:13,16,
21 100:2,17 103:7,9 104:3,5,16,17
105:14,15,20,21,25 106:1,4,5,15,
21,22,25 107:4,6,10,12,13 108:18
109:7,9,13,19,21 110:16 111:22
112:4,23 113:1,15 114:12 115:16,
18,20 119:15,24 120:16,24 121:9
122:16,19 123:6,11 125:14 126:7,
10 127:22

**Ballot'** 94:12

**ballot-by-mail** 40:2 47:6,19 48:16
49:13 64:6 97:1 118:1

**ballot-by-mails** 49:6 64:14

**ballots** 28:2,18 31:2,10 42:6,7
44:18 45:2 51:9,13,21 53:22 55:8
64:22 66:8 67:18,25 70:17,22 80:7,
11 88:23 89:12,14 90:14,25 91:1,2
92:1,4 98:18 99:5 106:14 119:6
128:1

**ballots-by-mail** 58:16

**Barn** 64:2

**base** 78:8

**based** 98:10 110:14 115:1

**basic** 27:20

**basically** 72:24

**basis** 87:1 120:7

**BASS** 2:22

**Bates** 4:8,10,13,15 50:13 84:2

**Bates-stamped** 108:6 117:16

**bear** 49:23 77:3

**bears** 50:13 84:2

**began** 29:23 38:11

**beginning** 125:6

**behalf** 128:23

**belief** 78:22

**beneficial** 90:16

**benefit** 90:13,19

**big** 27:23 49:2 55:12

**bit** 7:13 17:2 21:4 56:14,24 68:20
124:21 125:10

**board** 14:19 41:7 42:25 62:4,5,13
63:4 64:16 70:14,15,19 71:3,10,14,
18,19 73:7,16 78:21 89:5 92:8
93:1,22 95:19,21 99:10 100:3
102:14 103:9 104:5,17 105:15,21
106:1,6,16,25 107:6,10,14 110:4,
16 113:19 115:18,20 122:9

**board's** 74:7 104:8 106:21 113:1

**bold** 100:1

**bolded** 88:21 90:10

**bottom** 84:1,5 87:16 94:4 108:7
117:15

**box** 42:24 56:3 59:5,15 61:22,24,
25 62:2,9 91:2 112:24

**boxes** 91:4

**Brazos** 1:10 2:20 4:8,13,15 14:12
17:7,13,25 18:4 19:2 20:8,10,14,
18,23 21:3 22:14,25 23:7,16 26:3,
6,7,8,18,19,21 29:10,23 30:8
31:13,21 33:10 36:8,20 38:12,15,
25 41:5,20,21 43:4,7,23 46:18
48:17 50:14 52:17 53:1 54:7,9
57:4,10 65:11,20 70:19 71:20 81:7
82:5 92:12 95:16 96:4 97:4,18
101:7 102:10,17,25 103:17 104:2,
14 108:8 111:22 112:7,14,19 113:3
117:16 120:11 122:19,21 126:14

**brazosvotes.org** 53:25 54:14

**break** 8:11,12 62:16 70:13 123:17,
20

**breaks** 8:9

**briefly** 56:25 63:2,16 64:8

**bring** 29:15 107:17

**bringing** 30:25 34:16 42:2

**brought** 105:9

**Bruce** 3:13 11:2,7 39:15,18 82:12

**Bryan** 58:9,10 60:12

**budget** 19:6 23:7,10,11,12,15,16
24:5,16,18,20,24 25:1,7,12,14,16
59:25 60:2,6,7 75:3,5,10,13 124:22
125:6

**budgeted** 125:5,9

**budgeting** 13:20

**budgets** 23:25 24:3

**Building** 92:15

**buying** 24:1

———————

**C**

**calendar** 81:3

**call** 39:12 49:20,21 54:15 57:14,21
80:14 83:9,19 108:4 112:22 113:16
117:10 118:16,23 124:23,24



**called**  66:6 97:20 113:25

**caller**  55:3

**calling**  86:2

**calls**  53:19,22 54:20 55:12 97:5 113:4,10 118:7

**camera**  50:1

**canvass**  22:1 100:16

**canvassing**  101:12,17,21 102:1,3 103:10

**capacities**  118:22

**capacity**  1:10,11 2:20 3:3 61:2 128:19

**career**  111:8

**carrier**  44:15,25 45:7 46:5,14 47:21 48:2 60:9,10,17,23 61:7,12, 17 69:16 76:17,22 77:24 78:10,18 119:13 121:4

**case**  1:7 5:11 12:6 68:10 92:21 108:22

**cast**  96:16

**catalog**  47:3 67:20

**catch**  39:16 91:19

**caught**  63:18

**cell**  33:21

**Center**  13:2,15

**central**  31:1 34:5,7,11 62:20 124:1,8,12

**CERA**  13:1

**certificate**  13:1,16 77:24

**certification**  13:18 14:3,9,10 15:8, 11

**certifications**  14:6,8,11,18,23

**certified**  12:25 13:1,8,13,17

**chair**  71:17

**change**  23:17 30:23 56:15,17,21 89:25

**changed**  51:15 94:16

**changing**  13:21

**charge**  43:19

**check**  70:25 104:9

**checked**  112:25

**checking**  56:2

**checks**  36:13 59:14 60:18

**choose**  54:22,25 55:2

**choosing**  67:11

**chose**  55:3,4,6 80:17 92:7

**Christina**  32:25

**cities**  22:18 23:3

**citizens**  33:4

**city**  1:11 2:11 3:3,6 10:2,5 22:17 128:20

**CIVIC**  1:5

**Civil**  1:24 2:5

**civilian**  70:22

**clarify**  47:16 53:21

**class**  15:10

**classes**  13:14,19 14:25 15:1,3,6

**clerk**  18:2,14 20:1,4 40:19 42:14 43:3,6,11,24 44:21,25 45:14,19 46:4 47:6,19 48:16,18 64:6 87:13 95:6 96:1,6 97:20

**clerk's**  118:21

**clerks**  63:24

**clerks/elections**  87:9

**close**  19:13 30:24

**closer**  9:2

**COALITION**  1:4

**Coast**  123:16

**code**  20:20 31:23 34:19 36:23 37:3,9,16,24 38:5,9,14 39:2,6,12, 22 41:13,18 43:10 45:5,13,18 46:6 69:7,8 71:2,7 72:14 76:25 77:9 78:16 92:5 93:10 99:12,20 100:6,9, 20 101:10,16 103:5,14 105:13 106:11 111:19 119:23 120:4 122:3, 6,11

**collect**  127:1

**collected**  50:19

**college**  13:4

**colleges**  13:6

**Colton**  4:12 108:6

**column**  50:4

**commission**  18:13 40:16,18 41:9

**commissioner**  103:17

**commissioners**  25:17 102:5,8, 10,15,16,19,22

**committee**  23:13,15

**common**  14:16

**communication**  110:24

**community**  110:10,12

**companies**  67:4

**compare**  121:3

**compared**  119:6

**comparing**  31:17 120:4 121:25

**comparison**  110:23 111:6 120:11 122:12

**comparisons**  31:10

**complain**  112:22 113:17

**complaining**  114:11

**complaint**  39:7 116:6

**complaints**  112:18 128:1

**complete**  6:23 8:7 15:10 58:6

**completed**  60:8 71:24

**completely**  7:3

**compliance**  39:1,6

**comply**  20:23

**concerns**  55:8,24 56:10

**conclusion**  123:10

**conduct**  38:19

**conducted**  20:10 21:2 22:14

**conducting**  6:8

**conference**  26:25 28:15 29:2,5,9, 13,14 30:7 38:1 87:5

**conferences**  27:19 28:2,19 63:5 111:3

**confined**  57:7



**confused** 56:2

**conjunction** 23:2

**connected** 55:5

**consecutive** 72:6

**consequences** 33:8 83:13

**considered** 46:23

**constitutes** 121:24

**contact** 52:17 53:1 58:1 87:18
92:19 95:5 96:1,5 98:15

**contacted** 96:24

**contemplated** 106:10

**contemplates** 105:13

**continues** 95:2

**contract** 21:12 22:20

**controllers** 34:16

**convening** 101:11,17,20 103:10

**conversation** 33:6

**conversations** 79:18 80:18

**coordinate** 58:14 92:16

**coordinator** 39:23,24 58:15 61:1
63:19,21,22 80:14 82:1,3 83:11

**copies** 12:12 75:24 76:7,10

**copy** 28:11 73:12 76:9 89:7

**corner** 84:1,6 117:15

**correct** 7:7 13:10 16:14 17:8 18:24
20:11,12,15,16,20,21,24,25 28:19
30:9 31:15 38:13,16,17 41:22,23
43:5,8,9,25 44:6,7,9,10,13,16,19,
22 45:2,3,6,8,15,16,20,21,24,25
46:2,3,8,9,11,21,22 47:8,9,14 52:4,
5,8,11,13,14 53:3,23 54:18 57:18
58:4,5 61:6 62:11,14 63:12,15
64:7,9,10 65:6 66:2 67:15,16,19
68:21,22 71:12 73:16 74:8 76:4,6
77:1,2,15,16,20 78:2,3,25 80:23,24
84:22,24,25 89:22 91:9,15 92:18
93:15,16 94:25 95:1 96:3,7,8,19,20
99:12,18,22,23 100:6,7,23,25
103:10,11 104:13 105:16 107:15
109:23 111:12 112:5,6 114:10
115:3,11,24,25 121:14,15 123:7,8
126:15

**corrected** 99:17

**correcting** 99:21

**correspondence** 68:13 108:14,
17,18 112:12 115:4 125:11

**cost** 124:22 125:1

**costs** 124:25 125:5

**counsel** 12:1,5

**count** 31:1 34:5,7,12 108:16
112:24 118:2

**counted** 31:2 97:14

**counties** 16:18,20 17:19 30:8
35:6,11,15,18 36:5 66:25 67:2

**county** 1:10 2:20 11:2,3 14:12
16:16,25 17:7,13,21 18:1,2,4,14,
22,23 19:2,4,12,16 20:1,2,8,11,19,
23 21:3 22:15,25 23:7,16 26:3,7,9,
14,18,19,21,22 27:16 29:11,23
30:1 31:13,14,22 32:8 33:9,10
36:8,9,12,14,15,19,20 38:8,12,15
39:14,18 40:16,19 41:5,20 43:4,8,
23 46:18 48:17 52:17 53:1 54:3,7,9
57:4,7,10 60:7 65:11,18,21 67:11
70:19 71:20 74:24,25 75:10 81:7
82:5,7,8,10,11 87:9,13 90:5 91:24
92:13 93:18,21 95:16 96:4 97:4,18
101:2,5,7 102:9,10,15,17,25
103:17,20 104:2,11,14,19,21
105:13,18,23 106:13 111:22 112:7,
14,20 113:3 114:9,13 118:17,19,
21,22 120:12 122:19,22 126:14,17

**county's** 14:24 20:15 35:24 39:1
41:21 75:12

**county-specific** 70:11

**couple** 11:12 27:22 29:3 118:7

**court** 1:1 5:24 6:1 8:3 11:23 25:17
100:17 102:5,8,10 103:6,12 104:1,
18,25 105:6,10 106:9 107:17

**cover** 28:14

**covered** 28:16 33:19 66:21

**covering** 29:17

**COVID** 25:9

**COVID-19** 79:17

**create** 51:11

**created** 17:15,18,21 50:21,25

**criteria** 105:24

**CRR** 1:22

**CSR** 1:22

**current** 17:4 18:19 24:17 97:25
98:5

**D**

**daily** 61:2 79:21 84:10

**data** 50:20 51:12

**data-** 66:21

**database** 42:18,23 61:10,11 64:9,
12 65:3,7,9,19,23 66:13,21 67:3,9

**databases** 64:20

**date** 27:1 42:13 69:2 98:6 99:7
114:19

**dated** 8:24 115:5,7

**Davis** 71:16 76:5

**Davis'** 72:11

**day** 22:5 30:14,20,24 55:14,17,19,
22 61:20 89:6,8,15,18 90:21,24
91:7,12 92:1 93:14,23 94:1 96:14,
16 97:5,15,16,19 101:23 115:11,
12,14,20,23 116:25 117:4

**days** 29:6 91:10,13 92:3 101:22
115:17

**Dear** 117:21

**December** 108:5 116:21

**decision** 92:10 106:21

**deem** 121:5

**deems** 23:13

**defective** 46:6,14 47:21 48:20
49:9 59:9

**defects** 46:7

**DEFENDANT** 2:14,20 3:3

**Defendants** 1:13

**degree** 12:23

**deleting** 127:17

**deliver** 45:19

**delivery** 21:24

**Democrat** 113:21



**denied** 23:12

**department** 26:20

**depend** 37:10 53:16 55:2,11

**depended** 127:4

**dependent** 96:10 122:24

**depending** 35:22 55:20 81:24

**depends** 14:24 25:19 27:13 49:6,7 54:22 79:16 122:23

**deposed** 5:19 9:22 11:22

**deposition** 1:14,17 5:12 6:9 8:21 10:16,22 11:11,15 12:2,19 76:25 123:19,22,23 124:20 128:8

**Deputy** 20:4

**DESCRIPTION** 4:6

**determinant** 91:16

**determination** 100:2 104:6 113:2 120:23 121:17

**determine** 38:25 39:9 60:16 78:17 95:6 96:1,6 103:7 104:15 105:19, 24 106:4,24 107:4,12 113:22 123:5

**determined** 25:3 75:3 77:24 91:17,20 104:3 109:18,20 122:15

**determines** 24:25 58:18,25 59:3 78:23 91:23 101:24 105:14

**develop** 20:13,17 32:9

**developed** 32:2

**developing** 32:4

**dictates** 93:10

**differ** 36:8,11

**differences** 36:18

**differently** 35:19

**difficulties** 6:20

**directed** 54:15

**director** 85:20

**DISABILITIES** 1:4

**disabled** 57:6

**disappointed** 108:16

**discarded** 51:8

**disciplinary** 20:6

**discovery** 11:17 50:24 108:22 126:24 128:4

**discretion** 25:4,13

**discretionary** 125:7

**discuss** 35:6 38:1 39:7 81:22 82:1,2,7 83:5,8,10 109:8,12 118:5 119:2 120:19

**discussed** 36:4 41:11 56:13 59:25 63:3 79:5 82:4 105:2,5 110:20 111:17 118:14 119:14,18

**discussion** 29:7 33:7 85:25

**discussions** 11:25 12:4

**displaying** 77:8

**distributed** 81:14

**district** 1:1 23:3 100:17 103:6,12 104:1,18 105:6,9 106:9 107:17

**districts** 23:4

**DIVISION** 1:2

**doc-** 42:15

**document** 50:15,21,25 51:23 68:21,23 70:5 79:2 83:18,24 85:1,2 103:23 107:20

**documentation** 24:21 92:22

**documented** 56:11

**documents** 8:21 11:14,16,18 12:8,11,13 24:10,13,15 51:7 69:10, 11 127:1

**Dolling** 2:4

**download** 57:20

**dozens** 15:5,6

**DPS** 22:8

**drafted** 47:2

**drafts** 46:25 59:12

**dress** 33:22

**Drive** 2:5

**due** 113:16

**dues** 16:24

**duly** 1:19 5:3,5

**duties** 10:12 15:18 17:24 38:15,18 43:12 74:11

**duty** 60:20

---

**E**

**e.magee@allison-bass.com** 2:24

**Eagle** 117:22,24 118:6 119:8,19

**earlier** 63:3 90:17 124:22 125:7 128:9

**early** 30:14 42:24 43:3,6,7,11,12, 17,20,23 44:21,25 45:14,19 46:4 48:17 62:4,5,13 63:4 70:14,18 71:9,14,17,19 73:6,16 75:17 89:5 93:22,25 95:6,19,20 96:1,6,19 97:20 100:2 103:8 104:4,17 105:15,21 106:1,5,15,20,25 107:5, 10,13 110:15 113:1

**earmarked** 60:3,6

**East** 58:9 60:12 123:16

**Eastern** 124:12

**echo** 7:13 58:20

**Editor** 117:21

**education** 14:21

**educational** 12:22

**effect** 54:7 98:6 103:21,22

**elec-** 30:14

**elected** 102:19

**election** 4:9 13:2,14 18:13 20:20 21:6,21,22 22:4,12 24:2 25:14 27:21 30:13,14,15,20 31:23 34:8, 12,19 35:6 36:23 37:3,9,16,24 38:4,9,14,19 39:2,6,12,22 40:16,18 41:12 43:10,13 45:5,13,18 46:6,18 49:7,9,15 52:10 53:17,18 54:4 55:12,16 56:15,22 57:3,5 58:15 62:8,10 68:25 69:1,3,7 71:22 72:20,25 73:15,22 74:21,25 75:1, 11 76:25 77:9 78:15 79:22,24 80:14,21,25 81:9,12,16,21 82:15, 18,21 83:8,13 84:24 85:5,10 86:20 87:8,13,25 88:3,7 89:23 90:6,21 91:12,13,15,17,21 92:1,4 93:7,9,23 94:1 95:11 96:13,14,15 97:5,15,16, 19 98:2 99:12,20,24 100:6,9,20 101:3,5,8,10,16,23 102:4 103:1,5, 14,17 104:2,14 105:12,13,18,23 106:11 110:10,12 111:19 112:14



114:20 115:10,12,14,19,23 116:23 117:3 119:23 120:4 121:9 122:3,6, 11,22,23 123:2

**elections** 1:10 2:20 10:12 12:25 13:2,9,13 14:12,17 15:15 17:5,6, 14,20,25 18:2,6,12,21 19:6,10 20:8,10,15,19,23 21:2 22:14,18,20, 23,25 26:4,23 27:24 29:11,12 31:22 32:8 33:10,12,17 34:1 36:24 38:3,7,11,15 39:1,23 40:20 41:6, 13,20 51:5,6,22 52:1,15 55:1 58:14 60:25 63:9,19,21 64:20 71:22,25 72:4,6 76:5 79:8 81:5,7,25 82:1,13 84:16 85:20 87:14 97:24 111:8 112:8,20 113:4 114:8

**electronic** 36:15 108:25

**elements** 42:16

**eligible** 57:4,11 59:4,18

**Elizabeth** 64:1

**Elliott** 58:12 59:2,3 60:15,16,21 61:5,8 63:20 64:6 93:5

**email** 4:10 70:8 81:15,17 84:8,21 87:19,24 88:2 125:20 126:6,9 127:14,20,21,24

**emailed** 81:21

**emailing** 42:3

**emails** 84:10,12 126:19,21 127:3, 6,9,14,18,25

**Emily** 64:2

**employees** 28:22 40:12 126:3

**employment** 17:3

**encourage** 14:20

**encouraged** 14:14

**end** 7:14 61:18 65:4 89:6 90:24 95:7 128:12

**enhancements** 66:19

**ensure** 20:14,18 39:5

**entered** 61:10

**entire** 126:13

**entities** 22:21 23:2

**entity** 102:9

**envelope** 42:19,20 46:5,14 47:21, 23 48:3,6 60:9,10,17,19 61:8,12,

13,14,15,18 69:16 76:18,22 77:24 78:10,19 119:13 121:5

**envelopes** 44:15 45:1,7 60:23 89:7

**equipment** 21:14,15,23,24,25 24:2 31:1 35:12,21

**Eric** 2:22 8:24 11:3,7 86:14 128:22

**Erratt** 3:13 7:21 9:4,10 11:2,7 39:15,18 82:12

**error** 95:5,25

**estimate** 24:8,9 49:17

**EVBB** 71:11,13 72:1,12,17,22 73:10,18 74:3,5,17 75:3,16,17,18, 20 76:3,14 77:13 78:16 89:15 90:2, 23 91:8,10 92:11,12,20,23 93:6,15 109:13 110:2 111:12,21 119:16,20 120:3,12,15 121:8

**eventually** 65:5

**everyday** 13:22

**everyone's** 7:17,20

**evolves** 37:1

**exact** 18:8 99:7

**exam** 15:8

**EXAMINATION** 4:3 5:6

**examples** 37:11 55:23

**exception** 68:18

**exceptions** 68:9

**excuse** 41:9 69:24 89:13 114:18 124:11

**executed** 76:22 77:25 78:19

**exhibit** 4:7,9,12,14 49:21,22 50:12 83:19,20 108:4,9 117:10,11

**EXHIBITS** 4:5

**exist** 24:13 46:17

**expand** 9:13

**expect** 55:21 56:6

**expected** 23:10,19

**expendi-** 24:23

**expenditures** 24:17,23

**expense** 25:20 75:15

**expenses** 23:11 25:9,21 59:24

**experience** 110:15

**expired** 22:8

**explain** 112:24 113:18

**explanation** 45:23 59:12

**extent** 102:12

**extra** 19:13 25:9

**extremely** 108:15

---

**F**

**face** 85:4

**facilitate** 13:21 27:20

**facilitates** 64:19

**facilitating** 24:1

**facility** 21:15

**fact** 48:18 123:18,21 128:7

**facts** 12:5

**fair** 52:15,25 99:11,15 106:8 107:3, 11,16

**fairly** 36:25

**familiar** 5:21 36:25 53:24 54:17 77:10 80:21 100:8

**familiarity** 36:22

**FARR** 2:10

**faxing** 42:2

**February** 4:9 98:11

**federal** 1:24 20:24 69:1

**feedback** 7:10

**feel** 104:8 114:4

**field** 84:16

**figure** 9:17 79:18

**file** 104:21

**file-stamped** 42:13 61:20

**files** 64:20 67:6 127:12

**fill** 53:20 75:22

**filled** 58:18 59:1,8,17 61:7 71:1 76:21 78:10



**filled-out** 69:19

**fills** 47:5 76:1 95:18

**final** 15:7 70:2

**financial** 16:10 26:10

**find** 37:6 109:2

**fine** 62:18,21 123:24 124:7

**finish** 6:11,12 123:21

**fire** 23:4

**firm** 19:17,22

**firsthand** 120:10 121:13

**fixed** 50:7

**Floor** 3:6

**follow** 31:21 33:12,15 34:4,21 36:8
41:18 42:10 43:17 68:12 83:1,12
119:23

**forgotten** 7:5

**form** 47:2,5 57:20 59:13 68:12,17
94:18,19,20,22,23,24 97:25 98:2,
10 108:25

**forms** 47:3 67:13,17,21,23,24
68:4,14 95:21

**FORUM** 1:6

**forward** 71:9

**forwarded** 116:11

**frame** 96:11 116:22

**free** 67:9

**friends** 85:24 118:25

**front** 12:8,15 37:4

**full** 6:23

**full-time** 40:3,6,9,10 63:24,25

**function** 8:19

**functions** 64:17,21

**fund** 1:5 14:25 60:4

**funded** 23:7

**funding** 23:6

**funds** 16:22 125:7

---

## G

**GALLAGHER** 2:10

**garbled** 52:22

**general** 2:16 5:16 21:6,9,16,20,22
25:13 28:14 33:16,21 49:9,15 56:1,
7 57:3,5 60:4,5,7 71:4,5 74:11,24
75:10,11,13 110:9,11 114:19 120:9
121:9,12 122:23 123:2

**generally** 22:2 25:6 28:24 31:20
34:13 36:7 56:16 68:7,8 79:6 84:23
91:11 92:19 125:11

**generated** 61:12,13

**George** 1:3 4:14 117:14

**GI** 1:5

**give** 5:25 7:2 8:6 49:1 73:20 74:2

**good** 5:8,9 9:15 62:15 86:6 123:17

**graduate** 13:4

**Graziano** 1:22

**Great** 6:14 7:24 8:17 9:21 50:11
62:22 117:10 128:25

**group** 70:16 113:19

**guess** 47:15 102:25 110:6 111:17

**guest** 29:15

---

## H

**H-A-N-C-O-C-K** 5:15

**halfway** 109:15

**Hancock** 1:9,15,17 2:20 5:4,8,15
8:1 86:11,18 124:18 128:23 129:1

**handbook** 34:23 35:1 71:7 73:12,
15,17,25 74:2,15

**handbooks** 33:15

**handle** 22:21 40:4 49:3 61:3

**handled** 18:2,3

**handles** 21:13 40:1 58:16 64:18
127:16

**Hani** 2:4 86:3

**hani@texascivilrightsproject.
org** 2:7

---

**happen** 14:16 25:18,24 32:18
73:22

**happened** 25:22 121:14

**head** 6:2 16:19 24:7 37:14 49:16
68:3 72:3 98:23 114:22

**heading** 88:18

**hear** 6:1,21

**heard** 73:9

**Hearne** 10:2,5 19:17

**helping** 13:21 21:13

**helps** 19:14 61:1

**HG** 7:15

**highlighted** 77:18 100:21

**hire** 27:21 35:24

**hired** 18:13 40:24

**hiring** 41:1

**Historical** 50:20

**history** 17:3

**hold** 14:5 15:12,21 18:25 38:3
83:4,7

**holds** 29:13

**home** 54:14

**hosts** 27:4

**hour** 74:22 124:4,5,7

**hours'** 7:4 11:12

**hours'** 15:2

**Houston** 3:6

**huh-uh** 6:6

**hundreds** 15:5

---

## I

**ID** 30:22

**idea** 7:15

**illegal** 33:4

**immediately** 116:14,16 117:2

**impact** 38:3

**implement** 20:14,18 82:22 85:13
89:3



**implemented** 27:3 83:1 89:9

**important** 6:4,10 99:16

**imposes** 38:14

**impossible** 107:4,11

**in-house** 26:12

**inbox** 127:7

**include** 48:12 69:14,16,21

**includes** 95:3

**Incorrect** 100:2

**incorrectly** 100:18 103:8 104:4,16 105:14,20,25 106:4 107:5,12

**increases** 23:19,20,23

**indefinitely** 127:15

**INDEX** 4:1

**individ-** 72:18

**inference** 111:18

**inferred** 111:18

**information** 15:20 50:16,19 51:3, 14,17,19 54:4 56:7 58:1 66:7 119:10

**Ingram** 85:17,19 86:24,25

**initial** 38:9

**initiate** 57:11

**injunction** 100:17

**injunctive** 103:6,13

**inquire** 125:14,18

**inquiries** 125:20,24 126:6,9 127:21,24

**inside** 119:10

**instance** 1:18

**instructions** 46:1

**inter-** 12:12

**interact** 40:22 86:25

**interacted** 40:23,25 41:6

**interaction** 57:21

**interactions** 79:6

**internal** 34:3

**Internet** 84:16

**interpret** 39:22

**interrogatories** 10:17 11:13,17 12:13 50:23

**interrogatory** 37:18

**interview** 18:9,11,16

**interviews** 18:17,18

**investigate** 106:20

**involve** 13:19 30:19

**involved** 28:4 32:4 63:11 102:11

**involvement** 23:8

**Isaac** 3:5 7:10 128:18

**issued** 42:18 59:13 80:22

**issues** 12:5 82:20 125:18

**issuing** 94:10

**itawil@mcallen.net** 3:8

**items** 24:18 25:10 27:24 28:14

### J

**jacket** 119:9

**jail** 57:7

**January** 29:14 87:5

**Joanna** 2:10

**job** 18:20 19:24 22:2 41:13

**jobs** 27:14

**jsuriani@willkie.com** 2:13

**judge** 18:14 40:17,19 43:13 71:17 72:1,8,12,25 73:21 74:2,5,13 75:17,18 76:2,3 92:8,11 95:19,21 102:15,18,21

**judges** 21:23 30:15 34:16

**July** 17:10 29:4

**jurisdiction** 73:3

**JUSTICE** 1:3

**Justin** 3:11

### K

**Kalar** 2:9 4:3 5:7,10 7:12,24,25 9:6,15,19 29:8 49:23,24 58:20,22 62:15,19,22 63:1 83:21 86:10,15, 17 108:10 117:12 123:15,25 124:5, 7,11,14,17 128:6,25

**Kathy** 63:21

**Keith** 85:16,19 86:23,25

**Kilpatrick** 4:13 108:6,15,19 110:8 111:11 114:3 115:9,16,22 116:5,21 117:2

**Kilpatrick's** 109:9,12 111:22 112:4 115:1

**kind** 52:22 68:13

**knowledge** 16:12 31:16 70:12 71:4,6 73:11 75:19 93:12 97:22 120:9,10,14 121:13 122:10 127:20 128:2

**Krystal** 61:1 63:19 93:4

### L

**labels** 42:18 61:11

**language** 121:16

**Lara** 1:11 3:3 128:19

**large** 24:23 56:3 91:17

**larger** 19:12 107:25

**late** 92:4

**latest** 29:16 94:23

**law** 19:17,22 20:24 34:6 39:4

**lawsuit** 10:1,7,9

**lead-up** 55:16

**LEAGUE** 1:5

**leave** 19:11 33:22

**left** 25:11 123:18

**legal** 19:19 115:24 116:1

**legislation** 13:22 39:4

**legislative** 27:1 38:2 56:17

**letter** 4:12,14 8:24 33:9 46:16 47:2,20 48:13,14,15 52:13 59:9,13,



15 68:10,13,18 75:22 76:20 98:6
99:8 107:23 108:5,13 109:1,2,8,17
110:7 114:21 115:1,2,4,5,7 116:7,
17 117:6,13,21,23,25 118:5,9,12
119:3,7,8,12,19 120:19 121:22
125:2

**letters** 33:2 46:25 52:6,9 68:4
75:25 76:1,8 89:7 91:3,6 94:1
112:8 114:16

**letting** 75:22

**liaison** 82:11

**lines** 25:11 27:25 28:8

**lining** 21:13

**list** 19:9 55:6 63:16 84:18

**listed** 51:5,22

**lists** 76:20

**litigation** 11:19 12:16 36:4 50:13
83:25 117:16 126:22,25 128:4

**live** 73:2

**LLP** 2:10,22

**lobby** 116:9

**local** 33:14 102:4,7

**location** 26:13 35:22

**locations** 21:13,23

**locked** 61:22,24,25 62:2 91:2

**logistics** 22:22 35:25 92:17

**long** 11:10 14:22 15:9 19:9 29:5
65:15 76:10

**looked** 77:12

**Lopez** 64:1

**lost** 86:1

**lot** 7:17 25:9 35:25 36:13 53:16,19,
21 56:1,4

**lunch** 123:17,20

---

**M**

**machine** 1:23

**Mackin** 2:16 128:15

**made** 17:16 24:3 25:15 66:18
106:25 117:20

**Magee** 2:22 8:24 11:3,7 62:21
86:14 124:9 128:22

**mail** 43:18 46:8 47:10 48:10 55:25
57:5,11,23 59:18 60:13 62:1,9
75:25 76:7,9 89:8,15,18,20 90:18,
23 93:10,13 95:4,25 116:10,14
119:25 125:1

**mail-in** 28:2,18 31:9 34:22 36:18
41:21,25 43:25 44:5,9,12,18,21
45:1,4,12,17 48:19 52:17 53:1,2,7,
22 55:8 56:13,21 57:1,24 58:24
59:4,19 61:19 63:14 64:22 66:8,10
67:18,25 68:5 69:12 70:17,22
75:20 76:15 77:13 80:7,10 97:10,
13 98:18 99:13 113:15 120:15
122:19 125:14 126:7,10 127:22

**mail-out** 122:25

**mailed** 42:20 50:17 51:10,13,21
52:3 61:14,16 116:5

**mailing** 44:4 88:23 89:8,18 90:13,
19

**mailings** 60:3

**main** 54:18 109:16

**maintain** 15:19,20 16:10

**maintained** 62:3 69:2

**maintains** 54:3 65:7

**majority** 16:20

**make** 5:17 6:2,6,25 8:15 13:24
20:22 23:14,17,20 24:9,18,24 25:4,
6 39:9 41:17 42:4,15 56:17 63:18
70:25 75:24 79:19 83:2 85:11
107:25 120:22 121:17 123:19

**makes** 92:10

**making** 21:14

**management** 33:25 34:2 43:20

**manner** 76:16 81:6 99:14

**manual** 67:22 68:1

**March** 8:24 52:7

**marked** 49:22 60:5 83:20 108:9
117:11

**match** 76:18 77:15 78:6,12,23

**matter** 9:25 68:14

**Mcadams** 3:11

**Mcallen** 1:11 3:3,6,7 128:20

**Mccullough** 19:23

**Mcleod** 92:15 118:17

**means** 112:25

**meant** 111:11

**meet** 11:1 73:13 91:10,12,13,14,
22,23,24 92:1,3,6,12,14,17 93:23,
24,25 115:19

**meeting** 11:6 83:10

**meetings** 10:21 11:4,11 15:21
83:4,7

**meets** 62:4,13 91:8 92:23 93:6

**member** 40:1 78:20 119:15,20

**members** 14:20 63:4,17 72:23
73:6,10 74:3,17 81:22

**membership** 16:24,25

**mention** 67:20

**mentioned** 11:14,22 13:8 63:10
67:12 70:13 77:14 118:11

**met** 85:23 99:10 115:21

**methods** 88:6

**mid-morning** 62:16

**middle** 8:14 109:16 121:22

**midwinter** 29:14

**military** 70:23

**mind** 7:7

**minute** 86:4 121:20

**minutes** 7:3 15:19,20

**Mirza** 2:4 7:9,23 86:1,6

**misheard** 64:5

**mismatch** 113:16 114:12

**missing** 86:12

**mistake** 107:1

**moment** 77:4

**Monday** 89:19,21

**money** 24:25 25:11 75:6

**months** 51:7 69:2

**Montopolis** 2:5



**morning** 5:8,9 67:13

**move** 1:4 9:2

**multiple** 55:19

**multiples** 55:22

**muted** 7:17,20

---

## N

**named** 10:7

**national** 13:2,17 14:5,10

**nationally** 13:1

**nature** 9:25 10:11 33:5

**needed** 9:16 23:21 85:13

**newspaper** 118:9

**night** 30:25 34:8,12,17

**nightly** 67:5

**nod** 6:1

**nominated** 72:19 113:20

**Norma** 63:23

**normal** 33:23 90:8 99:9 125:3

**note** 48:12

**noted** 128:8

**notice** 18:5 45:6 46:14,20 47:1,10, 13,17,22 70:1 88:18 93:11,14 94:11,16 95:3,10,12,15,18,24 96:5, 18,21 97:5,8,19,23 98:16 99:16,19 115:10,16,22 116:4 117:3 125:2

**notices** 52:4 69:22 88:23 89:16,21 90:13,22 99:5

**notification** 48:4

**notified** 48:19

**notify** 45:14 46:7 90:15,16

**notifying** 94:18

**November** 52:10 71:23 114:23 115:2,5,7,12,15,21 117:13

**number** 4:6 28:25 35:23 49:1 50:14 51:21,24 54:16,17,20 55:1 57:25 72:2 84:2 87:23 88:2 98:22

**numbered** 1:20

**numbering** 49:20

**numbers** 23:18

**NVRA** 66:6

---

## O

**oath** 8:1

**obligated** 81:8 114:2

**obligation** 114:6

**obligations** 118:24

**obtain** 14:7 15:24 53:20 67:23

**occasionally** 112:21

**occasions** 28:17

**occur** 62:6

**occurred** 112:13

**occurrence** 79:21

**occurrences** 13:22

**occurring** 73:10

**Ocon** 61:1 63:19 80:14 93:4

**offered** 67:9

**offhand** 29:21

**office** 2:16 3:6 13:23,24 21:12 23:6 25:14 26:25 27:10 28:23 30:17 31:24 32:12 33:17,20,23,25 34:2, 25 39:8,13,17 40:7 41:17,25 42:3 46:13 47:4 48:19 49:14 51:18 52:3, 12,16,25 53:9,12 54:12,19 56:20 57:14,17,22 58:4,9,11 59:14,20,21 60:11,22,24 61:17 62:3 65:14 66:22 67:7,14 68:24 70:6,9 71:8 75:7 78:10 79:6,7,13,24 80:7,9,10, 19,23 81:19 82:22 83:4,12,25 84:13 85:7,21 88:12,22 89:3,25 91:5 92:15,16,19,24,25 93:2 95:22 97:5 99:6 109:10 115:2 116:6 118:21 124:23 125:1,12,17,20,23 126:3,19 127:8,11

**office's** 24:5 68:21 93:13 124:22 125:11

**officer** 101:3,5,8 105:18,23 111:8

**offices** 81:15 102:7

**official** 1:9,11 2:20 3:3 44:12 105:13

**officials** 32:8 35:6 36:5 63:9 90:6

**older** 51:16

**on-site** 92:21

**ongoing** 29:10

**online** 35:3 57:21 67:22

**open** 63:8 116:14

**opened** 17:15 116:11

**opening** 116:16

**opportunity** 45:6 46:11

**opposed** 36:14

**opposing** 120:20

**option** 46:20

**options** 54:24

**order** 49:21

**ordinary** 51:1

**organization** 15:13 16:13,14,23

**original** 76:9

**originate** 41:4

**out-of-county** 56:3

**over-** 21:16

**overlap** 56:24

**overseas** 80:13,15

**oversee** 22:18,20 38:19 41:21

**oversees** 21:23 22:19

**oversight** 21:17 79:8

---

## P

**p.m.** 1:21 124:1,8,16 129:4

**packet** 24:16

**paid** 16:24 74:17,19,20

**Palmos** 19:23

**paper-based** 36:12,14

**paperwork** 89:6 91:1 102:13 116:23

**paragraph** 94:4,10 95:2 109:16 120:18 121:22

**paralegal** 12:24

**pardon** 64:5



**part** 10:4 11:19 34:9 35:14 39:16 41:13 50:1,2 59:24 60:2,4 61:23 71:3 108:21 118:23 124:20

**part-time** 40:5 64:1 118:20

**participate** 16:16,18,21

**parties** 18:15 21:11,12 40:21 72:19 113:20 120:20

**Parts** 66:18

**party** 72:14 74:25 75:1

**pass** 128:13

**passed** 96:14

**past** 27:3 66:19 71:22 88:15

**Patricia** 63:25

**pay** 54:12 59:21 67:4 74:20 105:10

**paying** 75:12

**payroll** 75:13,15

**pays** 54:10 74:23 75:1

**peers** 15:25

**people** 29:1 35:25 40:4,5,6 56:2 58:3 78:19 79:20 118:8,14

**perform** 17:24

**performed** 17:24

**period** 51:6,10 56:6 76:11 91:15

**periodically** 35:2 80:15

**Perla** 1:11 3:3 128:19

**person** 46:7,21 49:3 55:2,4,6 77:25 78:11,24 96:17 97:1,9 109:25 111:20 116:4,12 117:5 118:18 119:1 121:5 122:7

**person's** 122:1

**personally** 10:7 23:14 30:17 37:2 55:7 85:22 113:9,12 126:1

**pertaining** 53:22

**pertains** 81:25 83:11

**petition** 103:6 104:22 106:9

**petitioned** 103:12 104:1

**petitioning** 104:18 105:6

**phone** 33:21 46:8,21 54:16,21,23 57:25 87:23 88:2 118:7

**phonetic** 12:24

**physically** 47:10

**pick** 62:19

**picks** 54:20

**place** 20:19 28:13 30:25 53:9 67:8 97:9

**places** 30:21 79:19

**plaintiff** 10:1

**plaintiffs** 1:7,19 2:3 5:11 126:25

**play** 70:21

**point** 7:18 44:1 53:7 68:5 80:4

**policies** 13:23 20:14,18 27:22 33:16,19,21 34:3,11,14,21 70:6,8, 11

**policy** 27:2 34:5,7 46:13,17 89:24

**poll** 31:5

**polling** 21:13 30:21,25 79:19 97:9

**population** 56:4 93:22

**portal** 22:7

**portion** 100:21 128:8

**portions** 66:20

**POS** 26:11

**position** 14:12 15:12,16,24 17:4,9, 15,17,18,20,22 18:7,25 19:11,18 20:3 58:13

**positions** 63:17

**possession** 127:2

**post** 42:3

**postage** 60:6 125:3

**postmarked** 97:16

**power** 101:2 103:6

**Powerpoint** 28:5,11

**practice** 85:9 93:13 116:13 127:17

**practices** 35:10,17 81:1 120:11 121:12

**preaddressed** 60:11

**prefer** 124:2,3,5

**prepare** 10:15,22 11:11 12:18 22:11 102:12

**preparing** 11:15 12:1 22:3 37:17

**present** 3:12 11:6 23:25 92:24

**presentation** 23:14,18,20,24 28:13 63:11

**presentations** 24:3

**presented** 24:4 33:9

**presidential** 53:18 55:21

**presiding** 43:13

**prestamped** 58:8

**prevents** 99:21

**previous** 11:21

**previously** 56:13 77:12 117:7

**primaries** 52:7 98:16,19

**primary** 21:8,10,11 75:1 98:14 99:4

**print** 57:13,15,20

**printed** 42:19

**prior** 18:19 19:25 26:7,21 31:13 45:23 90:21 96:15 97:5 100:16 115:23 117:3

**problem** 41:2 46:11 48:13 53:8

**procedural** 27:2

**procedure** 1:24 82:25 89:9,11,24 90:9 99:9 122:2

**procedures** 13:23,24 27:22 30:20,21,24 33:11,14,17,20,23,24 34:4,11,15,21 35:7 36:7,9,19 39:1 42:10 43:17 85:12

**PROCEEDINGS** 5:1

**process** 18:9 23:9 38:20 41:2,22 42:4,6,11 43:7,21,25 45:4 50:23 53:2,8 56:15,18 57:1,12 59:22 61:5,19 64:25 68:5 71:24 79:25 82:21,25 90:12 91:6,25 92:2,4,20 93:17 102:11 105:5 126:7 127:22

**processed** 34:18 42:17 61:21

**processes** 52:16 56:14 60:14 119:24

**processing** 90:25

**produced** 1:18 11:19 12:16 34:23 50:13 83:24 117:15 126:21



**professional** 20:6 87:1 118:24

**Professionally** 114:4

**programming** 21:14,24

**programs** 26:12

**PROJECT** 2:5

**proper** 21:15 33:22 53:9 116:11

**properly** 20:15 39:10 41:18 48:6 58:18 59:1,8,17 60:17 61:7 71:1 76:22,23

**proposal** 25:4

**propose** 25:6

**provide** 30:10,11,13 45:23 46:1, 10,20 48:22 97:21

**provided** 26:17 46:15 47:22 65:11,13

**providing** 44:11,14

**provision** 78:15 100:20 103:5

**provisionals** 92:5

**provisions** 1:25

**public** 34:6 63:8

**pull** 77:3 83:18 119:9

**purchase** 24:2

**pursuant** 1:24 103:13 105:6

**push** 27:23

**put** 18:5 42:19 61:14 65:1 81:3 89:7 110:7 111:3

**pyramid** 22:24

---

**Q**

**qualification** 18:4 72:13

**qualifications** 18:8 72:11,15,22, 25 73:1

**qualified** 80:16

**qualifies** 40:2 42:14

**qualify** 28:7 42:5 55:25 70:16,22, 24

**qualifying** 44:12 119:24

**quarter** 9:11

**question** 6:12,17 8:13 37:5 52:20, 23 53:9 58:23 86:23

**questions** 5:23 6:24 39:11 53:13, 19 55:8,24 56:1,4,10 58:1,4 74:6, 10,13 79:9 80:13,15 82:6 87:20,24 88:3,12 124:19 128:7,17,21,24

**quick** 77:3

**quote** 95:4,7

---

**R**

**reach** 32:7 53:9,12 55:7 58:4 123:10 125:13,17

**reached** 88:11

**read** 9:1 10:17 37:2,8,15,17 68:2 85:3,11 96:3 100:12 119:8

**readily** 35:4

**reads** 77:21 95:24 109:17

**reason** 8:6,11 67:10 75:21 77:14 84:20 115:6 116:20

**reasonable** 109:25 111:19,20,23 121:5 122:1,7

**reasons** 28:6 76:14,19 77:12

**Rebecca** 1:22

**recall** 49:8,13 80:6 82:17 109:5 113:7,12,24 114:11,15 116:5,16 118:3 119:2 123:1

**receipts** 91:3

**receive** 15:11 23:6 24:16 26:5 27:18 29:10 39:7 42:4,7,22 45:6 46:5 47:25 48:6 53:19 55:13,22 57:24 58:11 60:9 61:20 81:16 84:9, 21,23 89:12,14 90:22 112:10 115:16 125:20 126:1,4,6,9

**received** 28:1,18 31:9 37:23 42:13 50:17 51:4 61:8,21 64:15 65:1 76:16 78:9 84:13 85:6 88:10 89:10 91:4 96:21 97:14,16,18 99:19 108:14 112:19 115:10,22 116:4,6, 10 117:3 119:25 126:25

**receives** 60:13,24 61:17 81:13 96:4,18 97:4

**receiving** 44:17 85:10 93:14 98:16 126:12

**recent** 73:24 76:5 98:19

**recently** 79:17

**recess** 62:24 86:9 124:16

**recognize** 84:8,9 85:2,4

**recollection** 119:4

**recommend** 97:6

**recommendation** 89:4 90:11

**recommended** 14:14 117:4

**recommends** 88:22

**record** 1:25 5:2,25 29:7 51:9,23 62:23 85:25 86:4,8 124:15 128:9 129:3,4

**recorded** 5:23

**records** 16:10 68:25

**refer** 41:12

**referenced** 117:7 119:7

**references** 100:5 101:11,16

**referred** 71:10

**referring** 77:17

**refuse** 83:12

**Regina** 63:23

**registered** 72:18 73:2

**registration** 13:9,13 18:3 19:6 22:6,9 38:22 39:24 40:4 54:25 63:22,24 64:13,19,20 66:7 67:5 82:2,3

**regular** 43:14

**regularly** 52:17 53:1 127:18

**regulation** 69:4 78:4

**regulations** 31:21 68:24

**reject** 28:6 44:21,25 47:23 76:15 77:13 106:21 122:15

**reject-** 69:21

**rejected** 45:8,13,15,18,24 47:17, 22 49:14 50:5,18 51:4,24 52:3 64:16 65:5 66:12 75:23 78:5 88:18, 23 89:14 90:14 91:2 94:11,17 95:5, 12,15,25 96:5,22 97:19 98:19 99:5, 13 100:18 103:8 104:4,16 105:14, 20,25 106:5,15 107:5,13 109:21 113:16 119:13 126:11 128:1

---



**rejecting**  63:12

**rejection**  52:3 69:22 70:1 93:11 96:18 115:10,17,23 117:3 125:2

**rejections**  114:12

**rejects**  75:20

**relate**  67:24

**related**  21:7 26:22 33:24 67:17 69:11 70:2 113:5

**relief**  103:7,13 104:1,18,24 105:2

**rely**  39:21

**remedies**  95:6 96:2,7,9 97:6,21

**remedy**  96:15

**remember**  18:8 28:24 29:21 32:21 37:15 66:9 72:8 80:20 88:13 98:5, 24 109:14 110:22 118:16,18 126:12,18

**reminders**  81:2 82:24

**REMOTE**  1:14,17

**remotely**  1:21

**repeat**  35:13 58:23 86:24

**rephrase**  45:9 49:10 97:2 107:7

**report**  40:12,15 51:11 102:21,24

**reported**  1:23

**reporter**  5:24 6:1 129:2

**reports**  21:25 127:3

**represent**  128:16

**representative**  18:15 40:21

**representatives**  79:12

**representing**  2:3,14,20 3:3 5:11 128:19

**Republican**  113:21

**request**  51:17 64:14 112:11

**requested**  44:5 50:16 127:4

**requests**  40:2 57:18 108:22 126:24 128:4

**require**  23:23 66:23

**required**  8:2 14:11 15:11 23:17 30:22 33:3 34:6 42:15,16 68:25 69:1 73:7 92:3 94:20

**requirements**  56:1

**requires**  45:5,13,18 94:22

**requisitions**  26:11

**reserve**  128:17,21,23

**Resolution**  100:1

**resolved**  58:21

**resources**  105:19

**respect**  21:20 41:25 43:12,13 56:21 66:10 89:23 109:7 122:11 123:10

**respond**  114:2 116:21,25

**responded**  108:17

**responds**  57:17

**response**  117:20 118:10 119:19 126:24 128:3

**responses**  56:11 108:22

**responsibilities**  16:8 19:3,9 21:6 22:3 41:24 43:24 44:4 56:20

**responsibility**  20:13,17,22 44:20, 24 104:9,10

**responsible**  20:9 21:1 22:13 43:20 44:4,8,11,14,17 52:13

**restate**  45:9 101:14

**retain**  69:9,10

**retention**  51:6 68:21,23 70:5,8 76:11 91:5

**retirement**  19:13

**return**  48:1,3,8,10 53:20 123:25 124:8

**returned**  69:17

**returning**  11:21 63:2 86:20

**review**  11:14 106:14,18 107:9 122:19

**reviewed**  76:24 119:5 120:15 121:8

**reviewing**  44:8 127:5

**reviews**  58:17,24 60:22 125:23

**revised**  94:11 95:2 97:23

**Richardson**  1:3 4:15 68:11 112:17 117:14,21,24 119:22

**requirements**  122:14

**Richardson's**  118:5 119:3,5,14, 18 120:15 121:8

**right-hand**  84:1,6

**RIGHTS**  2:5

**Robert**  71:16

**Robertson**  18:22,23 19:4,15 20:1 27:16 30:1,8 31:13 36:9,12,19 38:8 65:18,24 93:17,21 103:19 104:11 114:8,13 126:16

**role**  70:18,20,21 74:6,7

**Romero**  63:23

**room**  62:1,9 92:14

**ROSALIE**  1:3

**rotate**  16:3,5,6

**RPR**  1:22

**rules**  1:24 5:16 31:20 68:23

**run**  13:24 16:4 19:5 20:15 66:1

**running**  41:18 81:5

**runs**  54:8

**Russ**  19:23

**Ruth**  92:15 118:16

─────────

### S

**safe**  79:20

**salaries**  75:7

**salary**  19:14

**Sam**  5:10 7:9 86:1,5,12

**Samuel**  2:9

**SAN**  1:2

**Saturday**  62:7,8,10,12 89:18,20 91:11 115:19

**save**  126:19 127:14

**schedule**  70:10

**schools**  22:19 23:3

**Schuetze**  63:21

**screen**  8:19,23 9:3,11,20 49:25 53:4 95:12 100:22 107:22 117:8 123:13



**scroll** 87:17 88:17 95:10 98:9 108:7

**Scrolling** 99:24

**search** 108:21 127:1,9,11

**second-to-last** 121:21

**secretaries** 22:17

**secretary** 1:9,12 2:14 3:4 15:17, 18 19:19 26:24 27:5 28:22 30:6 31:24 32:5,12 34:20,24 37:25 39:8, 12,17 47:3 51:17 59:13 63:2 65:13 66:1,22 67:14 68:6,15 71:8 73:14 74:14 79:7,12,24 80:7,10,18,22 81:10 82:14,20 83:25 84:13 85:6, 21 87:4 88:11 94:25 110:25 111:3 128:16,20

**section** 37:17,19 76:24 77:9,18,21 88:17,21 94:7 100:1,5,8,15,24 101:2,10,15 103:4,14 105:7,12 106:10 107:18

**secure** 42:24

**security** 22:8 27:24 29:16

**seek** 104:19 106:12

**selected** 59:5

**send** 42:6 46:16 47:19 48:14 58:7 59:9 60:8 99:9 112:8

**sending** 42:3 52:13 114:15

**sends** 48:15 59:15,18

**sense** 6:2,6,25 8:15 123:20

**sentence** 94:6 95:3,23 109:17 121:21

**September** 103:23

**series** 18:16

**serve** 43:3

**served** 17:22 71:25

**server** 127:20

**service** 90:18

**set** 16:1 30:20 72:13 92:5,9 101:11,16,20 103:9 122:3,9

**setup** 21:24

**Seventh** 2:11

**shake** 6:2

**share** 9:10 123:13

**sharing** 8:19 9:20 53:4 79:1

**shorthand** 1:23

**show** 8:20 9:8 24:10 49:19 61:21

**showing** 50:2 91:3

**shows** 28:5 51:12

**shredded** 51:8 76:13

**sick** 33:22

**sign** 48:2

**signature** 10:13 31:10 47:24 48:1, 9 60:19 77:22,23 78:17,18 109:18, 20 110:3,23 111:6 113:5,16,22 114:12 120:11 121:6 122:11

**signatures** 31:18 76:17 77:15 78:6,12,23 119:6 120:5,23 121:3, 18,25 123:5,6

**signed** 48:7 78:1,24

**significant** 23:19,22

**similar** 78:14 93:19 109:19,21 110:1 114:15 120:23 121:18,24 123:6

**sir** 6:3,7,13 7:1,8 8:5,8,16,25 10:20,23 11:9,20,24 12:3,7,10,17, 20 13:7 14:2,13,19 15:9,23 16:15, 17 17:12 18:10 20:7 21:19 24:9,22 25:19 26:16 27:7,9,17 28:3,10,20 29:19,24 30:2 31:7,11,19 32:1,6,20 33:13 35:8 36:3,6,17,21 38:6,10,24 39:20 41:8,10 43:2 46:24 48:11 51:2,25 53:11,14 54:11,13 64:4 68:16,19 69:23,25 70:7 71:15 72:10,21 74:1,16 87:7 89:17 90:1,4 98:17,20 102:20 103:15 105:8 113:8,11,14 114:1,4,14,17

**situation** 37:10

**situations** 37:9,12

**size** 35:22 49:7 53:17 55:20 91:21, 24 93:24

**skalar@willkie.com** 2:12

**Slightly** 36:10

**small** 25:25

**smaller** 93:21

**smoother** 13:25

**social** 22:8

**software** 7:19 26:11

**sort** 35:18

**SOS_000737** 4:10 84:2

**SOS_000738** 94:5

**sound** 5:21

**Sounds** 86:6

**speak** 6:4 32:24 35:5 79:11 80:2 82:13 90:2,5,7,10 104:19

**speakers** 29:15

**speaking** 21:8 22:2 26:6 31:20 34:13 36:7 47:13 80:6 82:17 122:8

**special** 23:4

**specific** 14:4 28:2 31:9 64:21 65:19 89:23 123:4

**specifically** 57:17 60:2 118:11

**spell** 5:14

**spend** 25:14

**spent** 25:1

**spoke** 79:23

**spoken** 32:11 80:9

**sponsored** 13:15

**Spreadsheet** 4:7

**staff** 21:22 27:12 30:18 31:17 35:23 39:21,25 40:1 63:17 65:8 81:23 83:7 90:7,11

**stamped** 94:5 116:10

**standard** 78:22 85:9 110:2,7,9,12 111:11,12,14,20,21,23 112:3 121:7 122:7

**standards** 78:16 110:18,20,23 111:2,6 122:12

**start** 17:9 21:10 26:8 64:24

**started** 65:17,20

**starting** 22:11

**starts** 94:6

**state** 1:9,23 2:15 5:13 13:16 14:9 27:5 30:6 34:20 42:17,23 51:15 61:11 63:3 66:1 67:6,9 68:6,15 69:1,5 70:10 74:14 79:7 80:15



81:5,10 82:20 87:14 94:25 102:4,7
110:25 111:4 128:10,16

**State's** 26:24 28:23 31:24 32:5,12
34:24 38:1 39:8,13,17 47:3 51:18
59:14 65:13 66:22 67:14 71:8
73:14 79:12,24 80:7,10,19,23
82:15 83:25 84:13 85:7,21 87:4
88:12

**stated** 1:25 69:8

**states** 1:1 43:11 46:6 88:22 94:10
114:21

**statewide** 16:13 64:12 65:9 81:15

**stating** 34:7 46:13 48:13 117:25

**status** 22:8

**statute** 44:1 101:22 103:21,22

**stay** 39:3

**step-by-step** 57:2

**Stevenson** 3:5

**stop** 79:1

**stopped** 9:20 53:4

**Street** 2:17,23

**student** 56:3

**subject** 20:5 109:8 110:24 111:2,7

**submit** 23:10,18 24:19 96:22,25
97:10 115:24 116:2

**submitted** 44:18 45:1 60:17

**submitting** 46:2 94:18

**subordinates** 47:7

**Suite** 58:9 60:12

**superintendent** 22:19

**superiors** 103:2

**supervises** 75:14,16,18

**supervisor** 60:25

**supplies** 60:5

**supply** 73:12

**Suriani** 2:10 86:3,7,12

**sworn** 1:19 5:3,5

**system** 51:12 127:14

**systems** 51:15

---

## T

**T-R-U-D-Y** 5:15

**TAEA** 87:5

**taking** 5:12

**talk** 6:10 33:1 35:9,16

**talked** 56:25 58:3 64:8 68:20
124:21 125:6,10

**talking** 32:22

**taught** 110:17 111:17

**Tawil** 3:5 128:18

**tax** 18:3,14 40:20

**team** 61:11,21 64:8 66:13 67:5
120:19,22 121:17 122:15,18 123:4

**teams** 66:23 67:1,7 113:21 122:21,
24 123:1,9

**technical** 6:20

**TECHNICIAN** 3:10

**technology** 8:20

**telling** 113:24

**temporarily** 86:8

**ten** 76:20 122:24

**term** 16:1

**terminated** 41:3

**terms** 121:24 123:18

**test** 8:19

**testified** 5:5 11:23

**testify** 8:2

**testifying** 8:3

**testimony** 8:7,10 10:11

**TEXANS** 1:4

**Texas** 1:1,4,5,6,9,12,23 2:5,6,14,
17,23 3:3,7 12:25 14:4,5,9,17
15:14 17:19 18:12 19:17 20:20
27:5 29:12 34:19,24 36:5,22 37:2,
8,16,24 38:4,9,14 39:2,6,11,22
41:12 43:10 45:5,13,18 46:6 69:7
76:25 77:9 78:15 79:7,23 82:14
93:9 99:11,20 100:6,9,20 101:10,
15 103:5,14 105:12 106:10 110:25

---

119:23 120:4 122:3,6,10

**texasvote.org** 57:15

**Theresa** 63:23

**thing** 47:24 73:11 114:7

**things** 5:13,18 13:24 19:6 23:4
25:7 26:11 28:7 29:16 34:12 35:11,
18 39:9 53:16 66:3 76:20 81:3

**thought** 33:3 118:9

**three-quarter** 63:25

**Tijerina** 63:23

**time** 8:12 22:9 25:3 28:16 29:20
32:18,21 37:15 51:10 55:15 56:6
62:16,20 63:25 66:12 81:14 88:10
91:5 92:17 93:6,25 96:10,22 97:12
99:19 101:11,16,20 103:9 112:7,14
113:3 115:24 116:2,3,9,22 123:17
124:1,2,8,12 126:13,16

**timely** 46:5 76:16 99:14

**times** 9:23 29:25 32:15 48:25
55:19 79:23 91:16 92:6,9 93:3

**timing** 99:15

**today** 5:12,18 6:25 8:1,7,10

**today's** 10:15,22 11:11,15 12:1

**tools** 105:19

**top** 16:19 22:24 23:2 24:7 37:13
49:16 51:5,23 52:1 68:2 72:3 95:24
98:23 99:25 114:22

**topic** 11:22 29:17

**total** 11:10

**touch** 117:1

**track** 64:13,23 65:3 66:3,7,8

**tracked** 42:23

**tracking** 64:25

**tracks** 64:14,24

**train** 31:6

**trained** 26:10 31:17

**training** 26:4,15,17,22 27:18 28:1,
4,18,21 29:10 30:11,13,19 31:9
37:23 38:4,9 63:3,11 73:7,9 92:14
111:7

**trainings** 87:5



**treasurer** 16:7,9

**tree** 54:23

**Trudy** 1:9,15,17 2:20 5:4,15

**true** 104:11 126:13

**truthful** 8:7

**truthfully** 8:2

**Tuesday** 114:25

**turn** 74:14 75:23 90:25 100:19
107:20 117:6 123:13,22

**turned** 7:21 62:4

**turning** 85:1 94:2

**turnout** 122:25

**turns** 89:5

**typically** 62:7,12 93:4

---

**U**

**uh-huh** 6:5 124:6

**undergo** 26:22 73:7

**understand** 6:17 8:3 10:3 52:19,
23 102:23 112:23

**understanding** 83:15 87:12
100:14 103:25 120:3,8

**unexpected** 25:20

**UNITED** 1:1

**University** 13:15

**unsigned** 48:1

**unusual** 115:15

**up-to-date** 54:4

**upcoming** 21:5 57:2 81:2

**update** 35:2

**updates** 22:6

**upload** 67:5

**upset** 118:1

**utility** 23:4

---

**V**

**vacation** 33:22

**verbal** 5:25

**verification** 113:5

**version** 73:24 94:11

**versus** 36:19

**Victoria** 58:12 59:2 60:15 61:3,5
63:20 93:5

**video** 86:13

**videoconference** 2:4,9,10,16,22
3:5,10,13 6:9

**view** 34:6

**violation** 10:2,6

**volume** 7:21

**volunteers** 120:19 122:15,18
123:5

**vote** 15:25 55:25 57:5,11 59:18
79:20 97:1,9 115:24 116:1,2,3
117:5 122:25

**voter** 10:6 18:3 19:6 22:5,9 38:22
39:24 40:4 42:2,20 44:6,12 45:14
46:7 48:2,8 53:8 54:20,25 57:10
59:11 61:14,16 63:22,24 64:12,18,
19 66:7 67:4 72:18 73:2 77:25
82:2,3 90:15 93:11 95:4 96:4,15,
18,21 97:4,18 99:12,21 112:22
124:23,24 125:2

**voter's** 77:22 113:15

**voters** 1:5 33:3 44:5,15,18 45:1,5
52:18 53:2,12 54:15 55:7 60:3
69:22 72:19 76:8 80:13,16 88:24
98:15 99:5 112:9,20 113:19,24
114:2,11 125:11,13,18,21 126:7,10
127:21,24

**votes** 34:17

**voting** 10:2,6 30:14,21 34:22
41:22,25 42:24 43:3,6,7,11,12,14,
18,20,23 44:21,25 45:14,19 46:4
48:17 56:14,21 57:1 62:4,5,13 63:4
69:12 70:14,15,18 71:10,14,18,19
73:6,16 89:5 93:22 95:6,19,20
96:1,6 97:20 100:2 103:9 104:5,17
105:15,21 106:1,5,15,20,25 107:6,
10,13 110:16 113:1

---

**W**

**wait** 6:11 121:20

**waited** 116:20

**walk** 56:25

**walk-in** 43:18

**walking** 44:3

**warranted** 118:10

**web** 22:7

**Webex** 7:19

**website** 53:24 54:2,3,5 57:13

**week** 29:4

**weekend** 91:25

**WEISFELD** 1:3

**West** 2:17,23

**WESTERN** 1:1

**whichever** 83:11

**White** 63:23

**William** 58:9 60:12

**WILLKIE** 2:10

**WIN** 12:24

**Withdrawn** 89:13

**WOMEN** 1:5

**work** 15:10 18:19 19:15 21:11 23:2
34:12 51:1 61:2 104:9 106:18
107:9 113:20

**worked** 19:17,25 27:16 29:25 30:7
103:19 114:13 116:9 118:21

**worker** 74:21

**workers** 21:14,23 27:21 30:14,15
31:5

**workflow** 28:6 34:15 35:21 36:1

**working** 24:1 29:23 116:9

**works** 35:10,17 62:17 110:16
113:19 118:17,20 123:23

**worth** 15:2

**wrap** 124:19

**write** 119:22 120:22 121:16 122:2,
14

**writing** 110:1 114:3

**written** 112:11,12



**wrote** 111:10

---

### Y

---

**year** 13:4 14:7 16:2 23:11 24:16,24
  25:5,8,19 27:3,6,8,11,12,15 29:2,
  18,22 30:3,4,5,7,12 31:6 32:23
  37:1 49:2,4 88:15

**year's** 24:20

**year-to-year** 23:23

**years** 10:10 20:1 27:23 29:3 36:25
  66:15,19 110:15 118:22

**Yesterday** 37:22

**York** 2:11

**you,'** 95:7

---

### Z

---

**Zachary** 2:4

**zachary@
texascivilrightsproject.org** 2:7

**zoom** 9:7,9,16



| Request 1-Applications | | | |
|---|---|---|---|
| Election | Applications Rcv | Ballots Mailed | App Rejected |
| March 2020 Primaries | 1914 | 1831 | 83 |
| City of College Station 2019 | 401 | 401 | 0 |
| November 2019 | 627 | 549 | 78 |
| Bryan ISD May 2019 | | 14 | |
| City of College Station Runoff December 2018 | | 1201 | |
| November 2018 | | 3966 | |
| Primary Runoff May 2018 | | 1738 | |
| March 2018 Primaries | | 1718 | |
| November 2017 | | 59 | |
| Bryan TRE October 2017 | | 6 | |
| November 2016 General | | 3496 | |

**EXHIBIT**

**2**

exhibitsticker.com

BRAZOS - 000001

| From: | Elections Internet |
|---|---|
| To: | Elections Internet |
| Subject: | MASS EMAIL ADVISORY (CC/EA- 660)- 2020-07 - Ballot By Mail Reminders |
| Date: | Wednesday, February 12, 2020 8:11:22 AM |
| Attachments: | image001.png |
| | ADV2020-07 - Ballot by Mail Reminders.pdf |
| | 5-42 - Notice of Rejected Ballot (rev02.2020).pdf |
| Sensitivity: | Personal |

Dear Election Officials,

Our office has issued Advisory 2020-07 – Ballot by Mail Reminders. In addition to this advisory, we have also released a revised version of our Notice of Rejected Ballot. Both the advisory and the revised form have been posted to our website. I've also attached them to this email for your convenience.

This advisory and other resources are located on our Conducting Elections pages.

**Christina Worrell Adkins**

Legal Director – Elections Division

Office of the Texas Secretary of State

1019 Brazos Street | Rudder Building, 2nd Floor | Austin, Texas 78701

1.800.252.VOTE (8683)

elections@sos.texas.gov | www.sos.texas.gov

**For Voter Related Information, please visit:**



*The information contained in this email is intended to provide advice and assistance in election matters per §31.004 of the Texas Election Code. It is not intended to serve as a legal opinion for any matter. Please review the law yourself, and consult with an attorney when your legal rights are involved.*

**EXHIBIT**

**3**

exhibitsticker.com

SOS_000737

# The State of Texas



Elections Division
P.O. Box 12060
Austin, Texas 78711-2060
www.sos.texas.gov

Phone: 512-463-5650
Fax: 512-475-2811
Dial 7-1-1 For Relay Services
(800) 252-VOTE (8683)

**Ruth R. Hughs**
Secretary of State

## ELECTION ADVISORY
### No. 2020-07

**TO:**        County Clerks/Elections Administrators

**FROM:**   Keith Ingram, Director of Elections

**DATE:**    February 11, 2020

**RE:**        Ballot by Mail Reminders

The purpose of this advisory is to remind county election officials of certain steps that must be taken with respect to the processing and rejection of mail ballots.

**Timing of Processing Mail Ballots**

Pursuant to Section 87.0241 of the Texas Election Code, the early voting ballot board may determine whether to accept early voting ballots voted by mail at any time after the ballots are delivered to the board. (Sec. 87.0241(a)). The early voting ballot board may begin to count early voting ballots (1) when the polls open on election day; or (2) at the end of the early voting period, in the case of an election conducted by an authority of a county with a population of 100,000 or more or an election conducted jointly with such a county. (Sec. 87.0241(b)).

**Notice of Rejected Ballot**

Section 87.0431 of the Texas Election Code outlines certain requirements for providing a voter with notice of a rejected mail ballot. If the early voting ballot board rejects a voter's ballot, the presiding judge of the early voting ballot board must notify the voter in writing of the reason for the rejection. This notice must be sent to the voter, at the residence address listed on the ballot by mail application, no later than the 10th day after election day. However, **our office recommends mailing notices of rejected ballots to affected voters as soon as possible**. For voters who requested a mail ballot with a Federal Postcard Application (FPCA), and receive their balloting materials via e-mail, the presiding judge shall also provide notice of the rejected ballot to the e-mail address to which the ballot was sent.

In accordance with Section 87.0431, the Secretary of State has prescribed a form for this purpose (Notice of Rejected Ballot, AW5-42). We are issuing a revised version of the Notice of Rejected Ballot along with this advisory. The revised notice includes an additional sentence advising the voter: "If you believe that your mail ballot was rejected in error, please contact your early voting clerk to determine what remedies may be available to you."

SOS_000738

Page 2

**Resolution of Incorrect Determination by Early Voting Ballot Board**

As a reminder, if a county election officer determines that a ballot was incorrectly rejected or accepted by the early voting ballot board before the time set for convening the canvassing authority, the county election officer may petition a district court for injunctive or other relief as the court determines appropriate.  (Sec. 87.127(a)).

In an election ordered by the governor or the county judge, the county election officer must confer with and establish the agreement of the county chair of each political party before petitioning the district court. (Sec. 87.127(b)).

Please contact us at 1-800-252-VOTE (8683) or at elections@sos.texas.gov if you have any questions.

KI:CA

SOS_000739

Revised 5
Prescribed by Secretary of State
Sec. 87.0431, Texas Election Code
2/2020

## NOTICE OF REJECTED BALLOT

This is to serve as notice that your ballot for the _____ Election was rejected by the early voting ballot board and was not counted.  If you believe that your mail ballot was rejected in error, please contact your early voting clerk to determine what remedies may be available to you.

Name of Voter _____ __

VUID Number_____

Reason for Rejection: (Check As Appropriate)

_____     1)     Certificate on carrier envelope was not properly executed.
_____ You failed to sign your signature or make your mark.
_____ The witness failed to indicate on the envelope that you could not make a mark.
_____ The assistant or witness failed to print their name.
_____ The assistant or witness failed to sign their name.
_____ The residence address of the assistant or witness was not given.

_____     2)     It was determined that the signature on the application for ballot by mail and carrier envelope was not signed by the same person.

_____     3)     Application for ballot by mail did not state a legal ground for voting by mail.

_____     4)     Voter registration records indicated you did not have an effective registration for this election.

_____     5)     Address to which ballot was mailed was not outside the county.  Voting early by mail due to expected absence from the county requires balloting materials be mailed to an address outside the county.

_____     6)     The residence address on the statement of residence is not located in the political subdivision conducting the election.

_____     7)     The mailing address on the application for ballot by mail did not match your voter registration address nor did the mailing address match any addresses provided on your statement of residence.  Since you did not indicate on your application for a ballot by mail that you were having your ballot mailed to a hospital, retirement center, long term care facility, nursing home, jail, or a relative, your ballot was rejected.

_____     8)     The statement of residence was not included in the carrier envelope.

_____     9)     No identification was included with your mail ballot.

_____     10)    Other:_____

_____
Signature of Early Voting Ballot Board Judge


_____
Date

SOS_000740

Requerido por la Secretaría de Estado
Sección 87.0431, Código Electoral de Texas
2/2020

## AVISO DE BOLETA RECHAZADA

Esto sirve como aviso de que su boleta para la Elección _____ fue rechazada por la Junta de Votación Anticipada y no fue contada. Si cree que su boleta por correo fue rechazada por error, comuníquese con su secretario de votación anticipada para determinar qué remedios pueden estar disponibles para usted.

Nombre del votante _____

VUID (número único de identificación de votante) _____

La razón del rechazo fue (a continuación indique las razones):

_____    1)    La constancia que aparece en el sobre de envío no se ejecutó en forma apropiada.
                 _____ Le falta su firma o marca.
                 _____ El testigo no anotó en el sobre que Ud. no podía hacer su marca.
                 _____ El asistente o testigo no imprimió su nombre.
                 _____ El asistente o testigo no firmó su nombre.
                 _____ No se dio la dirección de residencia del asistente o testigo.

_____    2)    Se determinó que la firma en la solicitud de boleta postal y el sobre de envío no estaba firmada por la misma persona.

_____    3)    La solicitud de boleta postal no estableció un fundamento legal para votar por correo.

_____    4)    Las actas del registro electoral indican que en la fecha en que celebraron estas elecciones, usted no estaba inscrito como votante.

_____    5)    La dirección a la cual se envió la boleta no está ubicada fuera de este condado. Votar por anticipado por correo debido a la ausencia esperada del condado requiere que los materiales de votación sean enviados por correo a una dirección fuera del condado.

_____    6)    La dirección de residencia indicada en la declaración de residencia no se encuentra en la subdivisión política que lleva a cabo la elección.

_____    7)    La dirección postal indicada en la solicitud de boleta postal no coincidía con su dirección de registro de votante ni con la dirección postal incluida en su declaración de residencia. Dado que no indicó en su solicitud de boleta postal que estaba teniendo su boleta enviada por correo a un hospital, centro de jubilación, centro de cuidado a largo plazo, hogar de ancianos, cárcel o un pariente, su boleta fue rechazada.

_____    8)    La declaración de residencia no vino incluida en el sobre de envío.

_____    9)    No incluyó ninguna identificación con su boleta por correo.

_____    10)   Otra: _____


_____
Firma del Juez de la Junta de Votación Anticipada


_____
Fecha

SOS_000741



**TRUDY HANCOCK**
ELECTIONS ADMINISTRATOR
302 EAST 24TH STREET
BRYAN TX 77803
(979) 361-5770
(979) 361-5779 (Fax)

# BRAZOS COUNTY

December 5, 2016

Colton Kilpatrick
1504 Greenbriar Ridge Way, Apt. 910
Knoxville, TN 37909

RE:     Ballot By Mail

Dear Mr. Kilpatrick:

I am in receipt of your letter dated November 2, 2016. I understand that you are "extremely disappointed" that your ballot for the November 2016 General Election was rejected. I wanted to take the time to explain to you the procedures that are in place to insure that your vote is protected.

The Early Voting Ballot Board (EVBB) is appointed by nominations made from the Democratic, Republican and Libertarian party chairs. The EVBB's duties include qualifying the 3,360 ballots that were submitted by voters of Brazos County. Teams are formed within the EVBB with one member from each party. The team takes the jacket envelope that includes the application for ballot by mail and the yellow courier envelope that contains the ballot. The team will open the jacket envelope and compare the signature on the application to the signature on the courier envelope. If it is determined the signature is reasonably similar the ballot is accepted. If it is determined that the signature is not reasonable similar the ballot is rejected. The courier envelopes are not looked at by a "professional handwriting expert" but a group of reasonable voters such as yourself. A signature is the only means the EVBB has to determine if you voted that ballot or someone else. The procedures for qualifying ballots by mail are set out in the Texas Election Code.

I have attached a copy of your application for ballot by mail and a copy of your courier envelope for your inspection. If you feel something was not managed properly by this office you may file a complaint with the Texas Secretary of State's office by sending an email to elections@sos.texas.gov.

If I can be of further assistance, please feel free to contact me at any time.

Sincerely,

Trudy R. Hancock, REO
Elections Administrator

Enc.



**EXHIBIT**

**4**

BRAZOS - 000053



**TRUDY HANCOCK, REO, CERA**
ELECTIONS ADMINISTRATOR
300 E WM J BRYAN PRKWY,
SUITE 100
BRYAN TX 77803
(979) 361-5770
(979) 361-5779 (Fax)

# BRAZOS COUNTY

November 26, 2018

Mr. George Richardson
4070 Sweetwater Drive
College Station, Texas 77845

RE:   Ballot By Mail

Dear Mr. Richardson:

I saw in The Eagle that you had some concerns of how your ballot by mail was qualified for the November 6 General Election. I understand that you were upset but I want to assure you that we follow the Texas Election Code in the processes of qualifying a ballot that is received in the mail.

The early voting ballot board is comprised of individuals appointed by both parties. A team of two volunteers from opposite parties work together. The team compares the signature on the courier envelope to the signature on the application for ballot by mail to determine if the person that voted and returned the ballot is the same person who requested it. It is up to that team to make the determination if the signatures are similar enough to accept the ballot. This is the procedure that is set up in the Texas Election Code.

I hope this explanation helps ease your confusion and frustration with voting by mail. I have enclosed a copy of your application for ballot by mail and your courier envelope.

If you should have any questions, please feel free to contact me at any time.

Sincerely,

Trudy R. Hancock, REO, CERA
Elections Administrator

Enc.

**EXHIBIT**

5

BRAZOS - 000052

Page 1

1                 UNITED STATES DISTRICT COURT
                  WESTERN DISTRICT OF TEXAS
2                   SAN ANTONIO DIVISION

3    DR. GEORGE RICHARDSON;           )
     ROSALIE WEISFELD; AUSTIN JUSTICE )
4    COALITION; COALITION OF TEXANS   )
     WITH DISABILITIES; MOVE TEXAS    )
5    CIVIC FUND; LEAGUE OF WOMEN      )
     VOTERS OF TEXAS; and AMERICAN GI )
6    FORUM OF TEXAS, INC.,            )
                                      )
7              Plaintiffs,            )
                                      )Civil Case No.
8    v.                               )5:19-cv-00963-OLG
                                      )
9    TEXAS SECRETARY OF STATE; TRUDY  )
     HANCOCK, in her official         )
10   capacity as BRAZOS COUNTY        )
     ELECTIONS ADMINISTRATOR; and     )
11   PERLA LARA, in her official      )
     capacity as CITY OF McALLEN,     )
12   TEXAS, SECRETARY,                )
                                      )
13             Defendants.            )

14        *****************************************
          VIDEOTAPED REMOTE 30(b)(6) DEPOSITION OF
15                    TRUDY HANCOCK
                      May 5, 2020
16        *****************************************

17        VIDEOTAPED REMOTE 30(b)(6) DEPOSITION OF

18   TRUDY HANCOCK, produced as a witness at the

19   instance of the Plaintiffs, and duly sworn, was

20   taken in the above-styled and numbered cause on

21   May 5, 2020, from 1:44 p.m. to 3:30 p.m., remotely

22   before Rebecca A. Graziano, CSR, RPR, CRR, in and

23   for the State of Texas, reported by machine

24   shorthand, pursuant to the Federal Rules of Civil

25   Procedure and the provisions stated on the record.

**CERTIFIED TRANSCRIPT**

RICHARDSON: TRUDY HANCOCK - 30(B)(6)

Page 2

```
 1                  A P P E A R A N C E S

 2

 3   REPRESENTING THE PLAINTIFFS:

 4   Mr. Hani Mirza (via videoconference)
     Mr. Zachary D. Dolling (via videoconference)
 5   TEXAS CIVIL RIGHTS PROJECT
     1405 Montopolis Drive
 6   Austin, Texas  78741
     (512) 474-5073
 7   hani@texascivilrightsproject.org
     zachary@texascivilrightsproject.org
 8
          and
 9
     Mr. Samuel Kalar (via videoconference)
10   Ms. Joanna Suriani (via videoconference)
     WILLKIE FARR & GALLAGHER, LLP
11   787 Seventh Avenue
     New York City, New York  10019
12   (212) 728-8000
     skalar@willkie.com
13   jsuriani@willkie.com

14

15   REPRESENTING THE DEFENDANT, TEXAS SECRETARY OF
     STATE:

16   Ms. Anna Mackin (via videoconference)
     OFFICE OF THE ATTORNEY GENERAL
17   300 West 15th Street
     Austin, Texas  78701
18   (512) 463-2100
     anna.mackin@texasattorneygeneral.gov
19

20   REPRESENTING THE DEFENDANT, TRUDY HANCOCK, in her
     official capacity as BRAZOS COUNTY ELECTIONS
21   ADMINISTRATOR:

22   Mr. J. Eric Magee (via videoconference)
     ALLISON, BASS & MAGEE, LLP
23   402 West 12th Street
     Austin, Texas  78701
24   (512) 482-0701
     e.magee@allison-bass.com
25
```

**hg**

RICHARDSON: TRUDY HANCOCK - 30(B)(6)

Page 3

1                     A P P E A R A N C E S

2

3    REPRESENTING THE DEFENDANT, PERLA LARA, in her
     official capacity as CITY OF McALLEN, TEXAS,
4    SECRETARY:

5     Mr. Isaac J. Tawil (via videoconference)
      Mr. Austin W. Stevenson (via videoconference)
6     CITY OF McALLEN CITY ATTORNEY'S OFFICE
      1300 Houston Avenue, Second Floor
7     McAllen, Texas  78501
      (956) 681-3111
8     itawil@mcallen.net
      astevenson@mcallen.net

9

10   VIDEOCONFERENCE TECHNICIAN:

11    Mr. Justin McAdams

12

     ALSO PRESENT:
13
      Mr. Bruce Erratt (via videoconference)
14

15

16

17

18

19

20

21

22

23

24

25

RICHARDSON: TRUDY HANCOCK - 30(B)(6)

```
                                                          Page 4
 1                          INDEX
                                                         PAGE
 2

 3    EXAMINATION BY MR. KALAR.........................  6

 4

 5                         EXHIBITS

 6    NUMBER           DESCRIPTION                      PAGE

 7    Exhibit 6        30(b)(6) Deposition Notice...........  7

 8    Exhibit 7        2020 Early Voting Ballot Board and

 9                     Signature Verification Committee

10                     Handbook for Election Judges and

11                     Clerks; Bates SOS_000428 through

12                     000477.............................. 17

13    Exhibit 8        2016 General Election Early Voting

14                     Ballot Board Sign-in Sheets;

15                     BRAZOS 000054 through 000057......... 20

16    Exhibit 9        2018 General Election Early Voting

17                     Ballot Board Sign-in Sheets; Bates

18                     BRAZOS - 000059 through 000064....... 31

19    Exhibit 10       2018 General Election Notice of

20                     Rejected Ballots (miscellaneous

21                     Bates range)......................... 32

22

23

24

25
```

hglitigation.com

**hg**

RICHARDSON: TRUDY HANCOCK - 30(B)(6)

Page 5

1              PREVIOUSLY MARKED EXHIBITS

2   NUMBER          DESCRIPTION                      PAGE

3   Exhibit 2    Ballot Applications Spreadsheet;

4                Bates BRAZOS - 000001................ 26

5   Exhibit 4    12/5/2016 Letter to Colton

6                Kilpatrick; Bates BRAZOS - 000053.... 28

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

RICHARDSON: TRUDY HANCOCK - 30(B)(6)

```
 1                    PROCEEDINGS
 2              (On the record at 1:44 p.m.)
 3                (Witness duly sworn.)
 4                   TRUDY HANCOCK,
 5    being first duly sworn, testified as follows:
 6                    EXAMINATION
 7   BY MR. KALAR:
 8    Q      Hello again, Ms. Hancock.
 9            Do you understand that this portion of
10   the deposition -- or in this portion of the
11   deposition, you will be testifying on behalf of
12   Brazos County?
13    A      Yes, sir.
14    Q      And all the guidelines that I talked about
15   this morning in terms of talking over each other,
16   sharing of documents, things like that, those are
17   all in effect.  Does that make sense?
18    A      Yes, sir.
19    Q      Okay.  And once again, can you please
20   state your full name for the record?
21    A      Trudy Hancock.
22    Q      And what is your current position?
23    A      Elections administrator for Brazos County.
24    Q      And other than what we talked about this
25   morning, what did you do to prepare for this
```

hg

RICHARDSON: TRUDY HANCOCK - 30(B)(6)

Page 7

1    portion of the deposition?

2    A     Nothing different.  Just read over the

3    interrogatories.

4    Q     And do you understand that you've been

5    designated by Brazos County to testify on certain

6    topics?

7    A     Yes, sir.

8    Q     Great.  I'm going to show you a document

9    now.

10          (Exhibit 6 marked.)

11   BY MR. KALAR:

12   Q     And this is the Rule 30(b)(6) deposition

13   notice that was sent to Brazos County in this

14   litigation.

15          Do you recognize this?

16   A     Yes.

17   Q     And what is this?

18   A     It's the request for -- to be deposed.

19   Q     I'm going to scroll down through this, and

20   you'll see -- and apologies if I didn't mention

21   this before.  We will refer to this going forward

22   as Exhibit 6, and that is the Rule 30(b)(6)

23   deposition notice.

24          And you'll see I stopped on Page 7

25   towards the bottom.  There's a heading called

**hg**

RICHARDSON: TRUDY HANCOCK - 30(B)(6)

Page 8

1    "Deposition Topics."  Do you see that?

2    A      Yes.

3    Q      And then I'll scroll through fairly

4    quickly, but there's a list of -- with some

5    subparts, five things.  Do you see that?

6    A      Yes.

7    Q      And have you reviewed those in advance of

8    this deposition?

9    A      I did not read over those yesterday, no.

10   I mean, I read them earlier, but I did not read

11   them again last night.

12   Q      But you have read them before?

13   A      Yes.

14   Q      And are you prepared to testify about the

15   topics listed in this document?

16   A      Yes.

17   Q      Are there any topics listed in this

18   document on which you are not prepared to testify?

19   A      No.

20   Q      And you understand that you're testifying

21   in this deposition not only to your personal

22   knowledge, but as a representative of Brazos

23   County who is prepared to testify on these topics?

24   A      Yes.

25   Q      Can you think of any reason why you can't

RICHARDSON: TRUDY HANCOCK - 30(B)(6)

Page 9

1    speak to these topics as a representative of

2    Brazos County?

3    A      No.

4    Q      Okay.  And I've stopped sharing my screen

5    now.

6            Please describe the role of Brazos

7    County generally in administering the mail-in

8    ballot process.

9    A      My office oversees accepting the

10   applications, qualifying those applications,

11   processing the ballots, and mailing those out.

12   Q      Anything else?

13   A      We do receive those back and maintain them

14   until the early voting ballot board meets.

15   Q      Anything else?

16   A      No.

17   Q      And how does Brazos County devise its

18   processes for carrying out mail-in voting?

19   A      I'm sorry?  You broke up a little bit.  I

20   couldn't understand you.

21   Q      Oh, apologies.

22            How does Brazos County devise its

23   processes for carrying out mail-in voting?

24   A      By the election code and office

25   procedures.

RICHARDSON: TRUDY HANCOCK - 30(B)(6)

Page 10

1    Q       And what general duties does Brazos County

2    have in administering the mail-in ballot process?

3    A       Qualifying -- receiving and qualifying the

4    applications, processing those, mailing out the

5    ballots, and receiving those ballots back.

6    Q       And is it a duty of Brazos County to

7    ensure that its administration of the mail-in

8    ballot process is in compliance with the Texas

9    Election Code?

10   A       Correct.

11   Q       And in compliance with federal law?

12   A       Yes.

13   Q       Are there any other regulations that

14   Brazos County ensures its elections follow?

15   A       Sometimes the government code, if it's an

16   entity, like a MUD or a utility district, that's

17   covered by a different code than the election

18   code.

19   Q       And who oversees Brazos County's

20   administration of mail-in voting?

21   A       I do.

22   Q       And that's you, Trudy Hancock, as the

23   Brazos County election administrator; correct?

24   A       Correct.

25   Q       And as the Brazos County early voting

hg

RICHARDSON: TRUDY HANCOCK - 30(B)(6)

Page 11

1   clerk; correct?

2    A      Correct.

3    Q      What other entities within Brazos County

4   are involved in the mail-in ballot process?

5    A      We contract with all the entities and

6   subdivisions in our county, so we oversee all of

7   that.

8    Q      Is there a Brazos County election board?

9    A      Yes.

10   Q      And who is on that board?

11   A      The county judge, the sheriff, tax

12  assessor, and party representation.

13   Q      And are they all elected to the county

14  election board?

15   A      It's part of their duties assigned.

16  It's -- the board is set up by the code, and so

17  just by filling that -- being elected to that

18  position, they're on that board.

19   Q      And what is the county election board's

20  role in the mail-in ballot process?

21   A      To determine the amount of workers needed

22  to be able to -- to facilitate the early voting

23  ballot board.

24   Q      And as the elections administrator, what

25  is your involvement in that process?

**hg**

RICHARDSON: TRUDY HANCOCK - 30(B)(6)

Page 12

1    A      I act to see that those plans are
2    taken -- are overseen.
3    **Q      And are you involved in working with the**
4    **board to create those plans?**
5    A      I have not met with that board.  Their
6    policies and procedures were in place when I came
7    into office.  We haven't made any changes to
8    those.
9    **Q      Do you know, does the Brazos County**
10   **election board meet on a regular schedule?**
11   A      No, they do not.
12   **Q      When do they meet?**
13   A      If needed, they would meet to determine
14   any requirements or things that they would need to
15   supervise the elections, such as a change in the
16   number of board members or requirements for those
17   things.
18   **Q      When was the last time they met?**
19   A      I do not know.
20   **Q      Was it within the past year?**
21   A      No, not to my knowledge.
22   **Q      Within the past two years?**
23   A      Not to my knowledge.
24   **Q      Does Brazos County have a signature**
25   **verification committee?**

hg

RICHARDSON: TRUDY HANCOCK - 30(B)(6)

1    A       No, they do not.

2    Q       During your time with Brazos County, have

3    they ever had a signature verification committee?

4    A       No, they have not.

5    Q       During your time with Robertson County,

6    did you utilize a signature verification

7    committee?

8    A       Yes, they did.

9    Q       Are there any other Brazos County entities

10   involved in the mail-in ballot process?

11   A       No.

12   Q       How many members are there of the early

13   voting ballot board?

14   A       Normally 8 to 12.

15   Q       And who determines that number?

16   A       Normally the judge.

17   Q       When you say "normally the judge," is

18   there ever a time in which the judge does not

19   determine that?

20   A       Not since I've been here, no.

21   Q       And how does one become a member of the

22   early voting ballot board?

23   A       The judge is appointed by commissioners

24   court, and then he seeks out members or volunteers

25   from recommendations from both parties.

RICHARDSON: TRUDY HANCOCK - 30(B)(6)

Page 14

1   Q      Is there any special knowledge, skills, or
2   training required to be an early voting ballot
3   board member?
4   A      Not to my knowledge.
5   Q      And where does the EVBB meet?
6   A      It meets at -- in the Ruth McLeod Training
7   Room in my office.
8   Q      And where is that physically in relation
9   to the rest of your staff?
10  A      It's just a different room adjoining our
11  normal office space.
12  Q      And did the EVBB use that during every
13  election?
14  A      Since I've been here, yes.
15  Q      And has your office moved at all since you
16  began working for Brazos County?
17  A      Yes.
18  Q      All right.  Where did it move?
19  A      We were at 302 East 24th Street.
20  Q      And when did you move?
21  A      December of '18.
22  Q      And prior to December of 2018, did the
23  EVBB meet at your old office?
24  A      Yes.
25  Q      And that old office is where you were

hg

Page 15

1   during your entire time with Brazos County up

2   until December 2018; correct?

3   A      Correct.

4   Q      Who provides funding for the EVBB's work?

5   A      I don't understand what you mean by

6   "funding."

7   Q      Does the EVBB use office supplies, for

8   example?

9   A      Yes.

10  Q      And where do they get those?

11  A      We furnish them pens and letter openers.

12  Q      Apologies.  You broke up there at the end.

13  A      We provide them letter openers and pens.

14  Q      "We" being the election administrator's

15  office; correct?

16  A      Yes.

17  Q      Do you provide them with anything else?

18  A      No, sir.

19  Q      What training does Brazos County provide

20  to members of the EVBB?

21  A      None.

22  Q      Does Brazos County provide any training to

23  EVBB members related to signature comparison?

24  A      No.

25  Q      To your knowledge, does anybody else

RICHARDSON: TRUDY HANCOCK - 30(B)(6)

Page 16

1    provide such training?

2    A       No.

3    Q       The Texas Election Code does not specify

4    any signature comparison training that must be

5    provided to the EVBB members; correct?

6    A       Correct.

7    Q       The Texas Election Code does not prohibit

8    Brazos County from providing signature comparison

9    training to EVBB members; correct?

10   A       Correct.

11   Q       What are the duties and obligations of an

12   EVBB member?

13   A       They qualify the ballots-by-mail to be

14   counted in an election.

15   Q       Anything else?

16   A       No.

17   Q       While performing their service, where can

18   an EVBB member turn if they have questions about

19   their obligations?

20   A       To the EVBB judge.

21   Q       And where can the EVBB judge turn if he

22   has questions about his obligations?

23   A       Well, I would guess the handbook that's

24   provided by the Secretary of State.

25   Q       And the Brazos County elections

RICHARDSON: TRUDY HANCOCK - 30(B)(6)

Page 17

1   administrator's office provides that handbook to

2   the EVBB judge; correct?

3   A      Correct.

4   Q      Do EVBB members take an oath?

5   A      Yes.

6   Q      Who administers that oath?

7   A      The judge.

8   Q      And that is the EVBB judge?

9   A      Correct.

10  Q      Are you or anyone from Brazos County

11  present when that oath is administered?

12  A      No.

13  Q      Are you familiar with that oath?

14  A      Yes.  It is a form that comes back with

15  their paperwork.

16  Q      And you've said before you're familiar

17  with the EVBB handbook generally; correct?

18  A      Yes.

19  Q      I'm going to share a document.

20         Can you see that on your screen?

21  A      Yes, sir.

22  Q      So we'll call this Exhibit 7.

23      (Exhibit 7 marked.)

24  BY MR. KALAR:

25  Q      And this is the "Early Voting Ballot Board

Page 18

1    and Signature Verification Committee Handbook for

2    Election Judges and Clerks" of 2020.

3                  Is that accurate?

4    A     Yes, sir.

5    Q      And this was produced in this case by the

6    Secretary of State and bears Bates

7    Numbers SOS_000428, if you see that in the bottom

8    right corner.

9    A     I do.

10   Q      And what is this document?

11   A     An online -- well, the handbook that's --

12   that we give out to the early voting ballot board.

13   I print it from the online services.

14   Q      And what is the significance of the rules

15   contained in this handbook?

16   A     It's guidance for the early voting ballot

17   board and signature verification committee.

18   Q      And do you use this handbook as part of

19   your duties as the Brazos County election

20   administrator?

21   A     No.

22   Q      Do you review this handbook when it is

23   distributed by the Secretary of State?

24   A     I have read it in the past, yes.

25   Q      Have you read this 2020 version of the

RICHARDSON: TRUDY HANCOCK - 30(B)(6)

1   handbook?

2   A      No, I have not.

3   Q      What was the last version that you

4   reviewed?

5   A      I'm not certain.

6   Q      Was it within the past five years?

7   A      Yes.

8   Q      Within the past two years?

9   A      Probably.

10  Q      To your knowledge, does this 2020 version

11  differ significantly from the last version that

12  you reviewed?

13  A      Not to my knowledge.

14  Q      I'm going to turn to Page 2 of this

15  document.  Do you see in somewhat the middle of

16  the page, there's Item Number 5, which reads:

17  "Required Oaths by Early Voting Ballot Board

18  Members"?

19  A      Yes.

20  Q      And below that, you see that there's a

21  typed out oath to use for early voting ballot

22  board members?

23  A      Correct.

24  Q      And is this the oath that you referred to

25  earlier when you said the EVBB members swear an

RICHARDSON: TRUDY HANCOCK - 30(B)(6)

Page 20

1    oath?

2    A       Yes.

3    Q       And do you see that that oath begins:  "I

4    swear (or affirm) that I will objectively work to

5    be sure every eligible voter's vote is accepted

6    and counted, and that only the ballots of those

7    voters who violate -- violated the Texas Election

8    Code will be rejected"?

9    A       I see that.

10   Q       Is it fair to say that Brazos County has

11   an obligation to ensure that every eligible

12   voter's vote is accepted and counted?

13   A       Yes.

14   Q       Is it fair to say that Brazos County has

15   an interest in ensuring that every eligible

16   voter's vote is counted?

17   A       Yes.

18   Q       I'd like to turn to a different document

19   now.  This will be Exhibit 8.

20           (Exhibit 8 marked.)

21   BY MR. KALAR:

22   Q       And this is a document that was produced

23   in discovery bearing Bates Number BRAZOS - 000054

24   on the first page, and I'm going to scroll through

25   it quickly.  You'll see that it's four pages with

RICHARDSON: TRUDY HANCOCK - 30(B)(6)

1   consecutive Bates numbers up to BRAZOS - 000057.

2           Is that accurate?

3   A       Yes.

4   Q       Do you recognize these documents?

5   A       It's a payroll sheet, or the sign-in

6   sheet, for the early voting ballot board.

7   Q       Who gives this sign-in sheets to the EVBB?

8   A       I do.

9   Q       And who collects this sign-in sheet from

10  the EVBB?

11  A       It's turned in with all their paperwork at

12  the end of their process.

13  Q       And is that turned over to you personally?

14  A       No.  Normally to staff member Krystal

15  Ocon.

16  Q       Are there times when it's turned over to

17  someone else?

18  A       No.  Krystal handles payroll.

19  Q       Who maintains these sign-in sheet records?

20  A       My office does.

21  Q       Is it important that these records are

22  accurate?

23  A       Yes.

24  Q       Who ensures that these records are

25  accurate?

RICHARDSON: TRUDY HANCOCK - 30(B)(6)

Page 22

1    A       The early voting ballot board is -- the

2   judge is the one who signs off that the times are

3   accurate and the membership.

4    Q       Do sign-in sheets like this exist for

5   every meeting of the early voting ballot board?

6    A       Yes.

7    Q       Does anyone who is not listed on this

8   sign-in sheet attend an EVBB meeting?

9    A       No.

10    Q       Outside of members of the EVBB, does

11   anyone employed by Brazos County attend meetings

12   of the EVBB?

13    A       No.

14    Q       Does anyone employed by Brazos County help

15   organize or facilitate the EVBB meetings?

16    A       No.

17    Q       And would the exception to that be your

18   office's coordination on the logistics to

19   physically host the meetings?

20    A       I'm sorry?

21    Q       Does your office assist the EVBB in the

22   logistics associated with their meetings?

23    A       Yes.

24    Q       So turning back to this Exhibit 8, across

25   these four pages -- and I'll scroll through them

**hg**

RICHARDSON: TRUDY HANCOCK - 30(B)(6)

Page 23

```
1    quickly, but let me know if you'd like to look at

2    them again -- is it fair to say that this document

3    shows every individual who served on the Brazos

4    County EVBB for the 2016 general election?

5     A     Yes.

6     Q     To your knowledge, did any of these

7    individuals receive training of any kind before

8    serving on the EVBB?

9     A     No, not to my knowledge.

10    Q     And whose signature is that in the bottom

11   left corner of each of these pages?

12    A     Robert Davis, the judge.

13    Q     Based on this sign-in sheet, when did the

14   EVBB meet during the 2016 general election?

15    A     November 8th.

16    Q     And what is the significance of the

17   date -- the handwritten date that you see on the

18   top left of your "Statement of Compensation and

19   Oaths"?

20    A     I'm sorry.  You are correct.  Where it

21   stated "Date, November 8th," that is the election

22   day.  November 15th would be the date that the

23   board met.

24    Q     So the EVBB met, with respect to the 2016

25   general election, on November 15th, 2016; correct?
```

RICHARDSON: TRUDY HANCOCK - 30(B)(6)

Page 24

1    A      I'm not certain.  That would not be my

2    notation.  That would be Krystal's.  And so I

3    would assume that that's what that is.

4    **Q      Do you have any reason to believe the EVBB**

5    **did not meet that day?**

6    A      No.

7    **Q      During the 2016 general election, did the**

8    **EVBB meet on any other days?**

9    A      They would have met the Saturday prior to

10   election day.

11   **Q      Would a sign-in sheet like this exist for**

12   **that meeting?**

13   A      Yes.

14   **Q      Do you know if that sign-in sheet was**

15   **produced as a part of this litigation?**

16   A      I have produced all payroll information

17   that we had in our office.

18   **Q      And when you say "in your office," what do**

19   **you mean by that?**

20   A      Well, any records that we have that we

21   have not already destroyed.

22   **Q      When the EVBB meets, you're in the office**

23   **next door; correct?**

24   A      Correct.

25   **Q      How long do they generally meet for?**

**hg**

RICHARDSON: TRUDY HANCOCK - 30(B)(6)

Page 25

1    A        Depends on the number of ballots they have

2    and the time it takes them to qualify those.

3    Q        Based on the sign-in sheet in Exhibit 8,

4    it looks like individuals' "Total Hours"

5    worked -- if you see that column towards the

6    right -- varies from 1.25 up to 3.25.

7             Do you see that?

8    A        Yes, I do.

9    Q        And do you see that on the second page as

10   well?

11   A        Yes, sir.

12   Q        And do you see on the third page, it looks

13   like Mr. Davis worked for more hours than the

14   other members?

15   A        Correct.

16   Q        And on the fourth and final page, Doris

17   Milam worked for more hours than the other EVBB

18   members?

19   A        Yes.

20   Q        And who is Doris Milam?

21   A        Doris Milam, she's a submember of the

22   early voting ballot board and the central count

23   team.

24   Q        So is it fair to say that the EVBB met,

25   with the exception of Mr. Davis and Ms. Milam, for

RICHARDSON: TRUDY HANCOCK - 30(B)(6)

Page 26

1    at most 3.25 -- or excuse me -- 3.5 hours during

2    the 2016 general election?

3    A     Right.

4    Q     I'm going to turn back to what we

5    previously marked as Exhibit 2 in your prior

6    deposition.

7         (Exhibit 2 tendered.)

8    BY MR. KALAR:

9    Q     And that is the spreadsheet you prepared

10   reflecting the number of applications and ballots

11   mailed for various elections; correct?

12   A     Yes.

13   Q     Looking at the line at the bottom saying

14   "November 2016 General," that indicates that 3,496

15   ballots were mailed; correct?

16   A     Correct.

17   Q     And is that how many ballots your office

18   mailed for the 2016 general election?

19   A     According to that report I printed, yes.

20   Q     And do you have any reason to believe that

21   this report is inaccurate?

22   A     No.

23   Q     So from the 3,496 ballots that were mailed

24   for the November 2016 general election, does that

25   refer to the number that your office mailed out to

**hg**

RICHARDSON: TRUDY HANCOCK - 30(B)(6)

Page 27

```
 1   voters or the number that your office received
 2   from voters?
 3    A      Mailed.
 4    Q      And how many ballots did your office
 5   receive that year?
 6    A      I would not know without running a report.
 7    Q      Do you have an estimate?
 8    A      No, I do not.
 9    Q      Do you believe it was in the thousands,
10   but fewer than 3,496?
11    A      I would say it was fewer than 3,496.
12    Q      Was it more than 1,000?
13    A      I -- again, I don't know.
14    Q      And for the ballots that were returned,
15   your office would then send them to the EVBB;
16   correct?
17    A      Correct.
18    Q      And based on this sign-in sheet, is it
19   your understanding that for the 2016 general
20   election, the EVBB reviewed those ballots, with
21   the exception of two EVBB members, for at most
22   three and a half hours?
23    A      Yes, according to the sign-in sheet.
24    Q      And do you have any reason to think that
25   the sign-in sheet is inaccurate?
```

RICHARDSON: TRUDY HANCOCK - 30(B)(6)

Page 28

```
1    A      No.
2    Q      What is the sign-in sheet used for after
3    it is given to your office?
4    A      That's how we pay the early voting ballot
5    board.
6           (Exhibit 4 tendered.)
7    BY MR. KALAR:
8    Q      Excuse me.  Turning back to Exhibit 4
9    briefly, do you recognize this as the letter that
10   you sent to Colton Kilpatrick in December of 2016?
11   A      Yes.
12          MR. MAGEE:  Samuel, I'm going to
13      object real quick.  This is Eric Magee.  I
14      think we're getting outside the bounds of
15      the Brazos County designated
16      representative's depo and we're back to
17      her individual deposition.  How does this
18      relate back to -- which topic are you
19      referring back to in her deposition notice
20      of the Brazos County designated
21      representatives?
22          MR. KALAR:  This question
23      specifically will refer to what she was
24      just testifying about, the number of
25      mail-in ballots in 2016.  And then I will
```

RICHARDSON: TRUDY HANCOCK - 30(B)(6)

```
 1        be done using this exhibit.
 2              MR. MAGEE:  Okay.  I'll let you go
 3        a little while, and so I'm probably going
 4        to start objecting more if we get outside
 5        the bounds of your depo notice.
 6              MR. KALAR:  Understood.
 7   BY MR. KALAR:
 8    Q      So returning briefly to Exhibit 4, this
 9   was a letter that you sent to Colton Kilpatrick on
10   December 5th, 2016; correct?
11    A      Correct.
12    Q      Do you see in the second sentence of the
13   second paragraph, you wrote:  "The EVBB's duties
14   include qualifying the 3,360 ballots that were
15   submitted by voters of Brazos County"?
16    A      Yes, I see that.
17    Q      And is that how many ballots were
18   submitted by voters to Brazos County in the 2016
19   general election?
20    A      I'm not -- I can't -- I mean, I would
21   assume, since that's what was in the letter.  But
22   I don't remember.
23    Q      Do you have any reason to doubt that this
24   letter is accurate?
25    A      No, I do not.
```

**hg**

RICHARDSON: TRUDY HANCOCK - 30(B)(6)

Page 30

1    Q      Turning briefly back to this sign-in

2  sheet, do you see the bolded language at the top

3  that reads:  "For primary only:  Check next to

4  judge/clerk's name if they attended a training

5  program as prescribed by the Secretary of State"?

6              Do you see that?

7    A      I do.

8    Q      What is this training program?

9    A      That is for the primary, and all -- this

10  is an old form that was used for election workers,

11  and so they have to qualify by attending a

12  training, which is hosted either by the party or

13  by my office, to be paid for their services.  It's

14  not pertinent to the early voting ballot board.

15    Q      And who provides this training?

16    A      For the election workers, either my office

17  or the parties do.  In the primaries, the parties

18  train their own workers.

19    Q      And this does not apply for a nonprimary

20  election; is that right?

21    A      Correct.

22    Q      I'd like to turn to what is marked -- or

23  will be called Exhibit 9, which is the 2018

24  general election EVBB sign-in, which was produced

25  as BRAZOS - 000059.

RICHARDSON: TRUDY HANCOCK - 30(B)(6)

Page 31

```
 1              (Exhibit 9 marked.)
 2     BY MR. KALAR:
 3      Q      Do you see that?
 4      A      I do.
 5      Q      And I'll click through it briefly.  Do you
 6     see that it's six pages?  It's six pages ending in
 7     BRAZOS - 000064; is that right?
 8      A      Correct.
 9      Q      And like you testified to for the 2016
10     election, this sign-in sheet would indicate all
11     the individuals who served on the EVBB during the
12     2018 election; correct?
13      A      Correct.
14      Q      The spreadsheet that we previously
15     discussed, Exhibit 2, indicated that 3,966 ballots
16     were mailed for the 2018 general election.  Does
17     that sound right?
18      A      If that's what that form said.  I don't
19     remember.  I didn't --
20      Q      I can pull it up again briefly.
21              So is that correct?
22      A      Yes.
23      Q      How many mail-in ballots did the Brazos
24     County EVBB reject during the 2018 general
25     election?
```

RICHARDSON: TRUDY HANCOCK - 30(B)(6)

Page 32

```
 1    A      I do not know right off the top of my
 2   head.
 3    Q      Would Brazos County have those records?
 4    A      For 2018?  Yes, we should still have
 5   those.
 6    Q      How many mail-in ballots did the Brazos
 7   County EVBB reject during the 2018 general
 8   election due to perceived discrepancies in
 9   signatures?
10    A      Again, I would not be able to tell you
11   that off the top of my head.
12    Q      I'm going to turn to what we'll call
13   Exhibit 10.
14           (Exhibit 10 marked.)
15   BY MR. KALAR:
16    Q      Do you see that on the screen?
17    A      Yes.
18    Q      And what is this?
19    A      It's a "Notice of Rejected Ballot."
20    Q      So Exhibit 10 begins with what has been
21   produced in this litigation as Bates
22   Number BRAZOS - 000002, and this collection is 29
23   pages long and ranges in Bates numbers from
24   BRAZOS - 000002 to BRAZOS - 000075 with gaps in
25   between.
```

**hg**

RICHARDSON: TRUDY HANCOCK - 30(B)(6)

Page 33

1          And very briefly again, what are

2   these?

3    A     The "Notice of Rejected Ballot."

4    Q     And these are documents that are retained

5   by the county; correct?

6    A     Correct.

7    Q     Does Brazos County have a record like this

8   for every mail-in ballot that is rejected by the

9   EVBB?

10   A     Yes.

11   Q     And were all of those records produced in

12  this litigation?

13   A     Yes.

14   Q     How far back do those records go?

15   A     We would have the last 22 months.

16   Q     And how about anything older than

17  22 months?

18   A     No.  Most of that has already been shipped

19  off to be shredded.

20   Q     Are notices like this stored anywhere else

21  within the county?

22   A     No.  Only in my office.

23   Q     And who creates these notices?

24   A     The early voting ballot board judge.

25   Q     He's the one who filled these -- fills

**hg**

RICHARDSON: TRUDY HANCOCK - 30(B)(6)

Page 34

```
 1   these out; correct?
 2    A      I don't know if he filled them out
 3   personally or had someone within the board fill
 4   them out.
 5    Q      But he signed each one; correct?
 6    A      Correct.
 7    Q      And when does the Brazos County election
 8   administrator's office receive these?
 9    A      When the early voting ballot board
10   finishes their process, they turn over the opened
11   ballots in a sealed box and all pertinent
12   information that has to be retained.
13    Q      When did Brazos -- when did the Brazos
14   County election administrator's office receive
15   these notices from the 2018 general election?
16    A      It would have been turned over at the time
17   that the board finished processing them.
18    Q      Do you recall when that was?
19    A      No.  It would have been at the end of
20   the -- if it was processed on that Saturday, it
21   would have been at the end of that day.  If it was
22   processed on election day, it would have been at
23   the end of that process, or if it was processed
24   within -- it would be late provisional ballots, it
25   would have been done at that time.
```

**hg**

RICHARDSON: TRUDY HANCOCK - 30(B)(6)

Page 35

1    Q       In the notice that's on the screen right

2    now, it's dated November 13th, 2018.  Do you see

3    that?

4    A       I do.

5    Q       Is it your understanding, then, that your

6    office would have received these that day?

7    A       Correct.

8    Q       And then your office would have mailed

9    these rejection notices out the following day if

10   it wasn't the Saturday?

11   A       Correct.

12   Q       Does Brazos County or the Brazos County

13   election administrator's office ever perform any

14   type of audit on these notices of rejection?

15   A       No.

16   Q       Does Brazos County or the Brazos County

17   election administrator's office ever investigate

18   mail-in ballots that were rejected by the EVBB?

19   A       No.

20   Q       Did Brazos County or the Brazos County's

21   election administrator's office investigate any

22   mail-in ballots that were rejected by the EVBB

23   during the 2018 general election?

24   A       No.

25   Q       So these 29 notices of rejection were

RICHARDSON: TRUDY HANCOCK - 30(B)(6)

Page 36

1    produced as part of this litigation pertaining to

2    the 2018 general election.  And let me know if

3    you'd like me to scroll through them all, but I'm

4    going to assert to you that all 29 of these have

5    the reason for rejection checked as Number 2:  "It

6    was determined that the signature on the

7    application for ballot by mail and carrier

8    envelope was not signed by the same person."

9              Do you have any reason to believe that

10   more than 29 ballots were rejected for this reason

11   in the 2018 general election?

12   A      No.

13   Q      If any ballot during the 2018 general

14   election was rejected due to a signature mismatch,

15   would there be a notice of rejection with this

16   line checked on it?

17   A      Yes.

18   Q      And is that true of all elections that are

19   run by Brazos County?

20   A      Yes.

21   Q      I'm going to turn to the last page of this

22   document.  This is still a notice of rejection for

23   the 2018 general election, and do you see the name

24   of the voter is George Adams Richardson?

25   A      Correct.

RICHARDSON: TRUDY HANCOCK - 30(B)(6)

Page 37

1    Q       And do you recognize that name as one of

2    the plaintiffs in this case?

3    A       Yes, sir.

4    Q       And based on this form, was

5    Dr. Richardson's ballot rejected in the 2018

6    general election due to a perceived signature

7    mismatch by the EVBB?

8    A       Yes.

9    Q       Have you ever performed an analysis of

10   Dr. Richardson's signatures?

11   A       No.

12   Q       I'm going to stop sharing now.  Let me

13   know when that's off the screen.

14   A       It's off.

15   Q       How many ballots does Brazos County reject

16   every election due to signature mismatch?

17   A       I do not have that information available.

18   Q       What records would show that?

19   A       If the -- receipt for the ballots returned

20   from the board.

21   Q       I'm sorry.  Can you repeat that last part?

22   A       It's a form called a "receipt for

23   ballots," and it has how many ballots were

24   received by the board, how many were rejected by

25   the board, and how many were sent for counting.

RICHARDSON: TRUDY HANCOCK - 30(B)(6)

Page 38

1   Q      And where are those records kept?

2   A      In my office.

3   Q      And were they produced as a part of this

4   litigation?

5   A      Yes, if they were available.

6   Q      And were they available?

7   A      I would have to look back to see what all

8   we sent, so...

9   Q      We just discussed that based on the

10  information we were provided, your records

11  indicate that 29 ballots were rejected in the 2018

12  general election due to signature mismatch; is

13  that correct?

14  A      Yes.

15  Q      Do you have any sense if that's a usual

16  amount rejected for that reason?

17  A      No.

18  Q      Do you think that an average election has

19  fewer or more rejected for that reason?

20  A      No.  There's no way to know.  Every

21  election is completely different.

22  Q      And what is the signature verification

23  committee?

24  A      They verify the signatures on the carrier

25  envelope against the application.

hg

RICHARDSON: TRUDY HANCOCK - 30(B)(6)

Page 39

1    Q      And who's on the signature verification

2    committee?

3    A      Brazos County does not have a signature

4    verification committee.

5    Q      And are the rules and regulations for a

6    signature verification committee laid out in the

7    Texas Election Code?

8    A      Yes.

9    Q      Do you know what the Texas Election Code

10   says in terms of who serves on a signature

11   verification committee, generally speaking?

12   A      Any -- it's called for by the early voting

13   clerk and is by nomination of the parties.

14   Q      And you mentioned previously that you

15   utilized a signature verification committee in

16   Robertson County; correct?

17   A      Correct.

18          MR. MAGEE:  I'm going to object to

19       this as it goes outside the deposition

20       topic for Brazos County.  That's an

21       individual question for Ms. Hancock in her

22       individual capacity, not a Brazos County

23       representative.

24   BY MR. KALAR:

25   Q      And has Brazos County ever utilized a

RICHARDSON: TRUDY HANCOCK - 30(B)(6)

Page 40

1    signature verification committee?

2    A      No.

3    Q      As the early voting clerk, do you have the

4    ability to utilize a signature verification

5    committee in Brazos County?

6    A      Yes.

7    Q      Have you ever considered doing so?

8    A      No.

9    Q      Why not?

10   A      In a county our size, the early voting

11   ballot board can start earlier, so there's not as

12   big a time push as it is for a small county that

13   can only open them, you know, the day before the

14   election.  So there's not the need.

15   Q      And have you ever discussed this with

16   anyone within Brazos County?

17   A      No.

18                MR. MAGEE:  Whenever we have a

19        chance, can we take a break?

20                MR. KALAR:  Now is actually a great

21        time.

22                MR. MAGEE:  Okay.  Thanks.

23                MR. KALAR:  How long do you need?

24                MR. MAGEE:  Just a few minutes.

25                MR. KALAR:  Okay.  How about we

RICHARDSON: TRUDY HANCOCK - 30(B)(6)

Page 41

```
 1        take a ten-minute break, if that works for
 2        everybody, and get back on at 2:45 p.m.
 3        Central time.
 4                MR. MAGEE:  Thank you.
 5                MR. KALAR:  Great.  Are we off the
 6        record?
 7                THE REPORTER:  Yes, we're off the
 8        record.
 9            (Recess from 2:34 p.m. to 2:47 p.m.)
10    BY MR. KALAR:
11     Q      Ms. Hancock, did you review any documents
12    in preparation for this 30(b)(6) deposition?
13     A      Just looked over the interrogatories and
14    discovery.
15     Q      And to be clear, that was the
16    interrogatories and discovery requests made by
17    plaintiffs and your responses to those requests?
18     A      Yes, sir.
19     Q      Along with the documents -- the 70 or so
20    documents that were produced by Brazos County to
21    plaintiffs?
22     A      Yes, sir.
23     Q      And is there any document that you
24    reviewed that has not been turned over in
25    discovery?
```

**hg**

RICHARDSON: TRUDY HANCOCK - 30(B)(6)

Page 42

1    A       No, sir.

2    Q       I'm going to direct you back to Exhibit 7.

3            And, again, this is the handbook that

4    Brazos County provides from the Secretary of State

5    to the early voting ballot board?

6    A       Correct.

7    Q       We're going to turn to Page 11 -- excuse

8    me -- Page 7 of the handbook.  You'll see at the

9    top this is the beginning of Chapter 3, and it's

10   titled "The Early Voting Ballot Board Convenes."

11           Do you see that?

12   A       Yes.

13   Q       And do you see in the middle of the page,

14   there's the bold word "Notes" and then a series of

15   bullet points beneath that?

16   A       Can you make it a little bit larger?  I

17   mean, I can see it --

18   Q       Sure.

19   A       -- but I can't read it.

20           Okay.

21   Q       Is that better?

22   A       Yes, it is.  Thank you.

23   Q       Okay.  So do you see the "Notes"

24   with -- there are four bullet points, I guess,

25   beneath that.

RICHARDSON: TRUDY HANCOCK - 30(B)(6)

Page 43

1    A      Yes.

2    Q      Do you see the very bottom note reads:

3    "The board, like the committee, may also compare

4    signatures with any two or more signatures of the

5    voter made within the preceding six years and on

6    file with the voter registrar."

7            Do you see that?

8    A      Yes.

9    Q      What is your understanding of what that

10   means?

11   A      The board can ask to see any voter

12   registration applications that we have on

13   our -- on file in our office up to six years.

14   Q      And where are those records stored?

15   A      We maintain those electronically.

16   Q      And that is the office of the elections

17   administrator that retains those?

18   A      Correct.

19   Q      Are those records a part of the 22-month

20   shredding policy that you have?

21   A      No.  Those are permanent records.

22   Q      So those records are kept indefinitely?

23   A      Correct.

24   Q      So if the early voting ballot board wants

25   to compare additional signatures, how would they

RICHARDSON: TRUDY HANCOCK - 30(B)(6)

Page 44

1    go about attaining those records?

2    A       The early voting ballot board judge would

3    come to my office and ask us to print those for

4    them.

5    Q       And just to confirm, he would essentially

6    walk next door to your office from the meeting

7    room that he's in?

8    A       Correct.

9    Q       And what information would he provide you

10   to find those records?

11   A       The name and the VUID, voter unique

12   identifier, for that voter, and we would print

13   those records for him.

14   Q       And would you personally get that request

15   or somebody in your office?

16   A       Just depends.  If I was busy, then someone

17   else in the office would see to it.

18   Q       And what is the process like to find those

19   records?

20   A       You just search the name in the voter

21   registration database in Laserfiche, print the

22   records that are up to six years old.

23   Q       And then you would bring them back to the

24   judge, or he would wait in your office for them?

25   A       Normally, he would just wait for those.

hg

RICHARDSON: TRUDY HANCOCK - 30(B)(6)

Page 45

1    Q        In this most recent 2020 primary election,

2    the EVBB met in your office; correct?

3    A        In the Ruth McLeod Training Room, yes.

4    Q        And you were present while they were

5    meeting?

6    A        Not in the room, but yes, in my office.

7    Q        During that time, did they make any

8    requests for additional signatures?

9    A        I do not remember.

10   Q        Do you have any reason to think one way or

11   the other?

12   A        No.

13   Q        Did they make such a request during the

14   2018 general election?

15   A        I do not remember.

16   Q        How about during the 2016 general

17   election?

18   A        I do not remember.

19   Q        When the EVBB makes such a request, is

20   there any record of it?

21   A        After the documents are printed, they're

22   put in a jacket envelope for the -- that contains

23   all the voter -- the ballot-by-mail information.

24   Q        And are those the records that are

25   shredded after 22 months?

RICHARDSON: TRUDY HANCOCK - 30(B)(6)

Page 46

```
1    A      Yes.

2    Q      But in those interim 22 months, those

3    records would be available; correct?

4    A      Correct.

5    Q      And so it could be inferred that any

6    ballot that is accompanied by those records is one

7    for which the EVBB requested additional

8    signatures; correct?

9    A      Correct.

10   Q      Did you find any such ballots and records

11   pursuant to the searches you did to respond to the

12   discovery requests in this case?

13   A      No.

14   Q      Do you have a sense -- how often does the

15   EVBB judge make a request for these records while

16   the EVBB is meeting?

17   A      It just varies.

18   Q      Does it happen at least once every

19   election?

20   A      Normally.

21   Q      Does it ever happen dozens of times per

22   election?

23   A      No.

24   Q      So you previously said that Brazos County

25   has decided not to use a signature verification
```

Page 47

1    committee, but it is your understanding that the

2    rules that the EVBB must follow for comparing

3    signatures are the same as the rules that a

4    signature verification committee would have to

5    follow?

6    A       Correct.

7    Q       The Texas Election Code doesn't provide

8    different rules or processes for the two, does it?

9    A       No, it does not.

10   Q       So going back to the handbook, I'm going

11   to turn to Page 35, which you'll see at the top is

12   marked Appendix A.  And do you see the note in

13   bold right below that that reads:  "This chapter

14   will have examples of questions we see arise for a

15   signature verification committee and examples of

16   situations."

17              Do you see that?

18   A       Yes.

19   Q       And beneath that, a question -- it's

20   marked under Subheading A, Question Number 1.  The

21   question posed is:  "Do signatures have to be

22   identical?"

23              Do you see that?

24   A       I do.

25   Q       And what is your understanding of whether

RICHARDSON: TRUDY HANCOCK - 30(B)(6)

Page 48

1    signatures need to be identical?

2    A      As we spoke of earlier, it's just a

3    reasonable person -- if the signature looks -- you

4    know, looks similar to a reasonable person.

5    Q      All right.  And you see the response there

6    under Question Number 1 reads:  "As part of the

7    signature verification committee, their duty is to

8    compare signatures; however, we understand that

9    the SVC are not handwriting experts.  With that

10   said, it is at the discretion of the committee

11   members to use their best judgment and to verify

12   if these signatures are the same."

13            Do you see that?

14   A      Yes, I do.

15   Q      And is this consistent with your

16   understanding of the Texas Election Code?

17   A      Yes.

18   Q      So in Brazos County, is it at the

19   discretion of the EVBB members to use their best

20   judgment and to verify if signatures are the same?

21   A      Yes.

22   Q      What does Brazos County do to ensure that

23   EVBB members are using their best judgment?

24   A      Nothing.

25   Q      What standards are EVBB members provided



RICHARDSON: TRUDY HANCOCK - 30(B)(6)

Page 49

1  to analyze signatures?

2  A      I don't know.

3  Q      Given that signature verification is at

4  the discretion of individual EVBB members, is it

5  fair to say that whether a ballot is accepted or

6  rejected due to a signature mismatch may vary

7  among individual EVBB members?

8  A      Yes.

9  Q      I'm going to close out of the exhibit now.

10         When a mail-in ballot is rejected by

11  the EVBB, what recourse or options does Brazos

12  County provide to a voter?

13  A      I'm not sure I understand that question.

14  Q      Sure.

15         Are there any steps that Brazos County

16  takes to remedy if a voter believes that their

17  mail-in ballot was inappropriately rejected?

18  A      No.

19  Q      Does Brazos County provide any opportunity

20  for a voter to correct a rejected mail-in ballot?

21  A      If they were notified in time to be able

22  to vote in person.

23  Q      How about other than that?

24  A      No.

25  Q      And as a general matter, does Brazos

RICHARDSON: TRUDY HANCOCK - 30(B)(6)

Page 50

1   **County communicate with affected voters regarding**

2   **rejected mail-in ballots?**

3   A     No.  We only mail the notice that's filled

4   out by the early voting ballot board.

5   **Q     Have any of the policies or procedures in**

6   **your office changed with respect to mail-in ballot**

7   **applications in response to the COVID-19 crisis?**

8   A     No.

9   **Q     Have you and your office discussed the**

10   **impact that the COVID-19 crisis might have on**

11   **mail-in ballot voting?**

12   A     Yes.

13   **Q     What have you discussed?**

14   A     The likely increase of --

15         MR. MAGEE:  I'm going to object

16      real quick.  This goes outside the bounds

17      of the deposition notice as well.

18         What question -- deposition topic

19      do you think this relates to?

20         MR. KALAR:  Sorry, Eric.  You cut

21      out in the middle of your objection for

22      me.  Can you repeat that?

23         MR. MAGEE:  Sure.  What deposition

24      topic do you think this belongs with?

25         MR. KALAR:  I mean, among others,

hg

RICHARDSON: TRUDY HANCOCK - 30(B)(6)

Page 51

1        Brazos County's responsibilities and

2        duties during the early voting period and

3        the actions that Brazos County takes to

4        execute those responsibilities.

5               And my questioning --

6               MR. MAGEE:   What was your question

7        again?

8               MR. KALAR:   -- in this area will be

9        very light.

10              MR. MAGEE:   What was your question?

11              MR. KALAR:   What discussions has

12       Ms. Hancock had in her office in preparing

13       for mail-in ballot voting in response to

14       the COVID-19 crisis.

15              MR. MAGEE:   And you said your

16       question is going to be brief?

17              MR. KALAR:   Yeah.   There will be

18       very few questions in this area.

19              MR. MAGEE:   Okay.

20  BY MR. KALAR:

21   Q      **You can answer the question, Ms. Hancock.**

22   A      We've discussed the likelihood of an

23  increase in ballot-by-mail requests due to people

24  not wanting to appear in the polling place.

25   Q      **And is it the expectation of Brazos County**

RICHARDSON: TRUDY HANCOCK - 30(B)(6)

Page 52

1   that mail-in ballot voting will increase?

2   A      Yes.

3   Q      And is the county doing anything to

4   prepare for that?

5   A      Just purchased some supplies.

6   Q      Anything else?

7   A      No.

8           MR. KALAR:  So I only have a

9       handful -- or a medium-sized handful of

10      questions left, and I think it would be

11      sped up if we took a brief break right now

12      and then we can come back and finish up,

13      if that works for everybody.

14          MR. ERRATT:  Sure.

15          MR. KALAR:  Great.  How about we

16      reconvene at 4:15 and we can wrap up after

17      that.

18          Or excuse me.  4:15 Eastern time;

19      3:15 Central time.

20          MR. ERRATT:  That would be fine.

21          MR. KALAR:  Great.  Can we go off

22      the record?

23          THE REPORTER:  We are off the

24      record.

25          (Recess from 3:02 p.m. to 3:17 p.m.)

**hg**

RICHARDSON: TRUDY HANCOCK - 30(B)(6)

Page 53

1   BY MR. KALAR:

2    Q      Ms. Hancock, you've testified previously

3   that you do not know what standards the EVBB uses

4   to analyze mail-in ballots; is that correct?

5    A      Yes.

6    Q      And is it your testimony that Brazos

7   County has no knowledge of the standard the EVBB

8   uses to analyze mail-in ballots or that you

9   personally have no knowledge?

10   A      Both.

11   Q      And you are the head of the elections

12  administrator's office; correct?

13   A      Yes.

14   Q      Who all directly reports to the Brazos

15  County election administrator?

16   A      My staff.

17   Q      And who does your staff include again?

18   A      Do you want them by name or position or

19  both?

20   Q      By position -- by position is fine, if we

21  already have their name.

22   A      I have an elections coordinator, voter

23  registration coordinator, assistant elections

24  coordinator, four voter registration clerks, and

25  two part-time.

**hg**

RICHARDSON: TRUDY HANCOCK - 30(B)(6)

Page 54

1    Q      Anybody else?

2    A      No, sir.

3    Q      And do any of those positions have any

4    direct reports?

5    A      Do they have any what?  Sorry.

6    Q      Does anybody directly report to any of

7    those individuals?

8    A      No.

9    Q      And does the Brazos County elections

10   administrator directly report to anybody?

11   A      No.

12   Q      Within the Brazos County elections

13   administrator's office, other than the elections

14   administrator and the mail-in ballot clerk, does

15   anyone else work to implement Brazos County's

16   mail-in ballot process?

17   A      No.

18   Q      Does the mail-in ballot clerk report

19   directly to the elections administrator?

20   A      Yes.

21   Q      Does anybody report directly to the

22   mail-in ballot clerk?

23   A      No.

24   Q      Does Brazos County have any communication

25   whatsoever with members of the EVBB about their

RICHARDSON: TRUDY HANCOCK - 30(B)(6)

Page 55

1   work on mail-in ballots?

2   A      No.

3   Q      Has the EVBB ever contacted any Brazos

4   County employee with questions about the mail-in

5   ballot process?

6   A      No.

7   Q      Has any member of the EVBB ever contacted

8   any Brazos County employee for any reasons?

9   A      Not to my knowledge.

10  Q      Does Brazos County review or audit --

11         MR. ERRATT:  Sam?  Sam, did -- by

12      that, did you mean about this process?

13      Because there are people on that board

14      that deal with the county on other issues

15      all the time, like one of them is in the

16      democrat party and she's called and busted

17      me about other things.  So I didn't -- you

18      said there hadn't been any contact with

19      the county.  Some of these people

20      communicate with the county on totally

21      other issues.

22         MR. KALAR:  Sure.  I'll clarify.

23  BY MR. KALAR:

24  Q      During the process of reviewing mail-in

25  ballots, has any member of the EVBB communicated

**hg**

RICHARDSON: TRUDY HANCOCK - 30(B)(6)

Page 56

1   with any Brazos County employee about that

2   process?

3    A      No.

4    Q      Prior to that process, has any member of

5   the EVBB communicated with any Brazos County

6   employee about that process?

7    A      No.  Only logistics of scheduling a place

8   to meet.

9    Q      Does Brazos County review or audit any

10  action taken by the EVBB?

11   A      No.

12   Q      Has Brazos County ever taken any remedial

13  action against the EVBB?

14   A      No.

15   Q      Who has access to Brazos County's TEAMs

16  database?

17   A      Only those who have gone through the

18  training for TEAM and have been authorized by the

19  Secretary of State.

20   Q      And who would those individuals include?

21   A      My office staff.

22   Q      And is that everyone on your office staff

23  has access to TEAMs?

24   A      Correct.

25   Q      Did you review any data stored on TEAMs in

RICHARDSON: TRUDY HANCOCK - 30(B)(6)

Page 57

1    response to the discovery requests in this action?

2    A      Yes.

3    Q      What did you review?

4    A      The number of ballots that were mailed

5    out.

6    Q      And is that what was compiled into what we

7    have been calling Exhibit 2, the spreadsheet?

8    A      Correct.

9    Q      Did you review any other information

10   stored on TEAMs?

11   A      No.

12   Q      Generally speaking, what information does

13   Brazos County have with respect to each registered

14   voter?

15   A      All pertinent personal information to

16   verify that they are qualified to vote in Brazos

17   County.

18   Q      Anything else?

19   A      No.

20   Q      What contact information does Brazos

21   County have with respect to each registered voter?

22   A      Name and address.

23   Q      Anything else?

24   A      Sometimes on a voter registration or a

25   ballot-by-mail application, they may put a phone

RICHARDSON: TRUDY HANCOCK - 30(B)(6)

Page 58

1    number, but it is optional.  So most people do not

2    supply that information.

3    Q      If a voter has provided a phone number,

4    does Brazos County store that information

5    somewhere?

6    A      No.  Only on the copy of the application.

7    Q      And that application, in turn, is stored

8    for 22 months?

9    A      For ballot-by-mail, yes, 22 months.  For

10   voter registration, it's a permanent record.

11   Q      Does Brazos County send documentation or

12   information related to the mail-in ballot process

13   and voters who vote by mail to the Secretary of

14   State, to the Texas Attorney General, or any other

15   government officials or entities?

16   A      Can you -- can you state that again?  I'm

17   not sure I follow your question.

18   Q      Sure.

19          Does Brazos County provide any

20   documentation or other information related to the

21   mail-in ballot process or mail-in ballot voters to

22   the Texas Secretary of State?

23   A      If requested.

24   Q      I'm sorry.  What was that?

25   A      If the Secretary of State's office or

RICHARDSON: TRUDY HANCOCK - 30(B)(6)

1    Attorney General office requests that, then yes,

2    we do.

3    **Q      And which of those offices does Brazos**

4    **County send information to?**

5    A      The office that requests it.

6    **Q      And what sort of information do those**

7    **offices request?**

8    A      In the past, it has been requested that we

9    send copies of the -- the rejection notices.

10   **Q      When has that been requested?**

11   A      I would have to look back at records and

12   see what years that those were requested.

13   **Q      And is that something that Brazos County**

14   **does every election or only in certain elections?**

15   A      No.  Only when requested.

16   **Q      And for the requests you have in mind, who**

17   **made those requests?**

18   A      The Secretary of State's office.

19   **Q      Have any other state entities requested**

20   **information on Brazos County's mail-in ballot**

21   **processes or voters?**

22   A      No.

23   **Q      Who maintains, within Brazos County, the**

24   **TEAMs database?**

25   A      We do not maintain at all.  It is

RICHARDSON: TRUDY HANCOCK - 30(B)(6)

Page 60

1    maintained by the Secretary of State.

2        Q      Who maintains the election

3    administration's office's internal electronic

4    databases?

5        A      Brazos County IT.

6        Q      I'm sorry.  Was that "Brazos County IT"?

7        A      Yes.

8        Q      And what sort of electronic records does

9    Brazos County election office -- excuse me.  I'll

10   rephrase that.

11              What electronic information does the

12   Brazos County elections administrator's office

13   store?

14       A      We store all voter registration records on

15   electronic, digitally, and then in the past year,

16   we've started maintaining all ballot-by-mail

17   applications electronically.

18       Q      And when did that begin?

19       A      2019.

20       Q      Excuse me.  Give me one moment here.

21              And who within Brazos County prepares

22   and maintains the forms and records associated

23   with the mail-in ballot process?

24       A      Some are generated automatically through

25   TEAM, and then some are -- we print off of the

Page 61

1   Secretary of State's website.

2   Q      And which are available on TEAMs?

3   A      When a voter files an application, if it's

4   rejected, it's an automatic notice through TEAM.

5               MR. KALAR:  Thank you very much.   I

6         have no further questions, and we'll pass

7         the witness.

8               MR. TAWIL:  This is Isaac Tawil,

9         attorney for Perla Lara in her capacity as

10        city secretary for the City of McAllen,

11        and we'll reserve any questions.

12              MS. MACKIN:  This is Anna Mackin

13        with the Secretary of State, and we will

14        also reserve any questions.

15              MR. MAGEE:  This is Eric Magee on

16        behalf of Brazos County and Ms. Hancock,

17        and we'll reserve any questions.

18              MR. KALAR:  Great.  Thank you all

19        very much.

20              THE REPORTER:  Okay.  We're off the

21        record.

22          (Off the record at 3:30 p.m.)

23

24

25

**hg**

RICHARDSON: TRUDY HANCOCK - 30(B)(6)

Page 62

```
 1              UNITED STATES DISTRICT COURT
                 WESTERN DISTRICT OF TEXAS
 2                 SAN ANTONIO DIVISION

 3   DR. GEORGE RICHARDSON;           )
     ROSALIE WEISFELD; AUSTIN JUSTICE )
 4   COALITION; COALITION OF TEXANS   )
     WITH DISABILITIES; MOVE TEXAS    )
 5   CIVIC FUND; LEAGUE OF WOMEN      )
     VOTERS OF TEXAS; and AMERICAN GI )
 6   FORUM OF TEXAS, INC.,            )
                                      )
 7            Plaintiffs,             )
                                      )Civil Case No.
 8   v.                               )5:19-cv-00963-OLG
                                      )
 9   TEXAS SECRETARY OF STATE; TRUDY  )
     HANCOCK, in her official         )
10   capacity as BRAZOS COUNTY        )
     ELECTIONS ADMINISTRATOR; and     )
11   PERLA LARA, in her official      )
     capacity as CITY OF McALLEN,     )
12   TEXAS, SECRETARY,                )
                                      )
13            Defendants.             )

14
                 REPORTER'S CERTIFICATION
15       REMOTE VIDEOTAPED 30(b)(6) DEPOSITION OF
                      TRUDY HANCOCK
16                    May 5, 2020

17            I, Rebecca A. Graziano, Certified Shorthand

18   Reporter in and for the State of Texas, hereby

19   certify to the following:

20            That the witness, TRUDY HANCOCK, was duly

21   sworn and that the transcript of the oral

22   deposition is a true record of the testimony given

23   by the witness;

24            I further certify that pursuant to FRCP Rule

25   30(f)(1) that the signature of the deponent:
```

**hg**

1        ____ was requested by the deponent or a

2    party before the completion of the deposition and

3    returned within 30 days from date of receipt of

4    the transcript.  If returned, the attached Changes

5    and Signature Page contains any changes and the

6    reasons therefor.

7        ____ was not requested by the deponent or a

8    party before the completion of the deposition.

9        I further certify that I am neither attorney

10   nor counsel for, related to, nor employed by any

11   of the parties to the action in which this

12   testimony was taken.

13       Further, I am not a relative or employee of

14   any attorney of record in this cause, nor do I

15   have a financial interest in the action.

16       Subscribed and sworn to on this ___ day of

17   _____, 2020.

18

19

20

21   _____

     Rebecca A. Graziano, CSR, RPR, CRR
22   Texas CSR No. 9306
     Expiration Date:  07/31/22

23

24

25

**0**

**000001** 5:4

**000002** 32:22,24

**000053** 5:6

**000054** 4:15 20:23

**000057** 4:15 21:1

**000059** 4:18 30:25

**000064** 4:18 31:7

**000075** 32:24

**000477** 4:12

**1**

**1** 47:20 48:6

**1,000** 27:12

**1.25** 25:6

**10** 4:19 32:13,14,20

**10019** 2:11

**11** 42:7

**12** 13:14

**12/5/2016** 5:5

**12th** 2:23

**13th** 35:2

**15th** 2:17 23:22,25

**17** 4:12

**18** 14:21

**1:44** 1:21 6:2

**2**

**2** 5:3 19:14 26:5,7 31:15 36:5 57:7

**20** 4:15

**2016** 4:13 23:4,14,24,25 24:7 26:2, 14,18,24 27:19 28:10,25 29:10,18 31:9 45:16

**2018** 4:16,19 14:22 15:2 30:23 31:12,16,24 32:4,7 34:15 35:2,23 36:2,11,13,23 37:5 38:11 45:14

**2019** 60:19

**2020** 1:15,21 4:8 18:2,25 19:10 45:1

**212 728-8000** 2:12

**22** 33:15,17 45:25 46:2 58:8,9

**22-month** 43:19

**24th** 14:19

**26** 5:4

**28** 5:6

**29** 32:22 35:25 36:4,10 38:11

**2:34** 41:9

**2:45** 41:2

**2:47** 41:9

**3**

**3** 42:9

**3,360** 29:14

**3,496** 26:14,23 27:10,11

**3,966** 31:15

**3.25** 25:6 26:1

**3.5** 26:1

**30(b)(6)** 1:14,17 4:7 7:12,22 41:12

**300** 2:17

**302** 14:19

**31** 4:18

**32** 4:21

**35** 47:11

**3:02** 52:25

**3:15** 52:19

**3:17** 52:25

**3:30** 1:21 61:22

**4**

**4** 5:5 28:6,8 29:8

**402** 2:23

**4:15** 52:16,18

**5**

**5** 1:15,21 19:16

**512 463-2100** 2:18

**512 474-5073** 2:6

**512 482-0701** 2:24

**5th** 29:10

**6**

**6** 4:3,7 7:10,22

**7**

**7** 4:7,8 7:24 17:22,23 42:2,8

**70** 41:19

**78501** 3:7

**787** 2:11

**78701** 2:17,23

**78741** 2:6

**8**

**8** 4:13 13:14 20:19,20 22:24 25:3

**8th** 23:15,21

**9**

**9** 4:16 30:23 31:1

**956 681-3111** 3:7

**A**

**ability** 40:4

**above-styled** 1:20

**accepted** 20:5,12 49:5

**accepting** 9:9

**access** 56:15,23

**accompanied** 46:6

**accurate** 18:3 21:2,22,25 22:3 29:24



**act** 12:1

**action** 56:10,13 57:1

**actions** 51:3

**Adams** 36:24

**additional** 43:25 45:8 46:7

**address** 57:22

**adjoining** 14:10

**administered** 17:11

**administering** 9:7 10:2

**administers** 17:6

**administration** 10:7,20

**administration's** 60:3

**administrator** 1:10 2:21 6:23 10:23 11:24 18:20 43:17 53:15 54:10,14,19

**administrator's** 15:14 17:1 34:8, 14 35:13,17,21 53:12 54:13 60:12

**advance** 8:7

**affected** 50:1

**affirm** 20:4

**ALLISON** 2:22

**AMERICAN** 1:5

**amount** 11:21 38:16

**analysis** 37:9

**analyze** 49:1 53:4,8

**Anna** 2:16 61:12

**anna.mackin@ texasattorneygeneral.gov** 2:18

**ANTONIO** 1:2

**apologies** 7:20 9:21 15:12

**Appendix** 47:12

**application** 36:7 38:25 57:25 58:6,7 61:3

**applications** 5:3 9:10 10:4 26:10 43:12 50:7 60:17

**apply** 30:19

**appointed** 13:23

**area** 51:8,18

**arise** 47:14

**assert** 36:4

**assessor** 11:12

**assigned** 11:15

**assist** 22:21

**assistant** 53:23

**assume** 24:3 29:21

**astevenson@mcallen.net** 3:8

**attaining** 44:1

**attend** 22:8,11

**attended** 30:4

**attending** 30:11

**attorney** 2:16 58:14 59:1 61:9

**ATTORNEY'S** 3:6

**audit** 35:14 55:10 56:9

**Austin** 1:3 2:6,17,23 3:5

**authorized** 56:18

**automatic** 61:4

**automatically** 60:24

**Avenue** 2:11 3:6

**average** 38:18

---

**B**

**back** 9:13 10:5 17:14 22:24 26:4 28:8,16,18,19 30:1 33:14 38:7 41:2 42:2 44:23 47:10 52:12 59:11

**ballot** 4:8,14,17 5:3 9:8,14 10:2,8 11:4,20,23 13:10,13,22 14:2 17:25 18:12,16 19:17,21 21:6 22:1,5 25:22 28:4 30:14 32:19 33:3,8,24 34:9 36:7,13 37:5 40:11 42:5,10 43:24 44:2 46:6 49:5,10,17,20 50:4,6,11 51:13 52:1 54:14,16,18, 22 55:5 58:12,21 59:20 60:23

**ballot-by-mail** 45:23 51:23 57:25 58:9 60:16

**ballots** 4:20 9:11 10:5 20:6 25:1 26:10,15,17,23 27:4,14,20 28:25 29:14,17 31:15,23 32:6 34:11,24 35:18,22 36:10 37:15,19,23 38:11 46:10 50:2 53:4,8 55:1,25 57:4

**ballots-by-mail** 16:13

**based** 23:13 25:3 27:18 37:4 38:9

**BASS** 2:22

**Bates** 4:11,17,21 5:4,6 18:6 20:23 21:1 32:21,23

**bearing** 20:23

**bears** 18:6

**began** 14:16

**begin** 60:18

**beginning** 42:9

**begins** 20:3 32:20

**behalf** 6:11 61:16

**believes** 49:16

**belongs** 50:24

**beneath** 42:15,25 47:19

**big** 40:12

**bit** 9:19 42:16

**board** 4:8,14,17 9:14 11:8,10,14, 16,18,23 12:4,5,10,16 13:13,22 14:3 17:25 18:12,17 19:17,22 21:6 22:1,5 23:23 25:22 28:5 30:14 33:24 34:3,9,17 37:20,24,25 40:11 42:5,10 43:3,11,24 44:2 50:4 55:13

**board's** 11:19

**bold** 42:14 47:13

**bolded** 30:2

**bottom** 7:25 18:7 23:10 26:13 43:2

**bounds** 28:14 29:5 50:16

**box** 34:11

**Brazos** 1:10 2:20 4:15,18 5:4,6 6:12,23 7:5,13 8:22 9:2,6,17,22 10:1,6,14,19,23,25 11:3,8 12:9,24 13:2,9 14:16 15:1,19,22 16:8,25 17:10 18:19 20:10,14,23 21:1 22:11,14 23:3 28:15,20 29:15,18 30:25 31:7,23 32:3,6,22,24 33:7 34:7,13 35:12,16,20 36:19 37:15 39:3,20,22,25 40:5,16 41:20 42:4 46:24 48:18,22 49:11,15,19,25 51:1,3,25 53:6,14 54:9,12,15,24 55:3,8,10 56:1,5,9,12,15 57:13,16, 20 58:4,11,19 59:3,13,20,23 60:5, 6,9,12,21 61:16



**break** 40:19 41:1 52:11

**briefly** 28:9 29:8 30:1 31:5,20 33:1

**bring** 44:23

**broke** 9:19 15:12

**Bruce** 3:13

**bullet** 42:15,24

**busted** 55:16

**busy** 44:16

---

**C**

**call** 17:22 32:12

**called** 7:25 30:23 37:22 39:12 55:16

**calling** 57:7

**capacity** 1:10,11 2:20 3:3 39:22 61:9

**carrier** 36:7 38:24

**carrying** 9:18,23

**case** 1:7 18:5 37:2 46:12

**central** 25:22 41:3 52:19

**chance** 40:19

**change** 12:15

**changed** 50:6

**chapter** 42:9 47:13

**Check** 30:3

**checked** 36:5,16

**city** 1:11 2:11 3:3,6 61:10

**CIVIC** 1:5

**Civil** 1:24 2:5

**clarify** 55:22

**clear** 41:15

**clerk** 11:1 39:13 40:3 54:14,18,22

**clerks** 4:11 18:2 53:24

**click** 31:5

**close** 49:9

**COALITION** 1:4

**code** 9:24 10:9,15,17,18 11:16

16:3,7 20:8 39:7,9 47:7 48:16

**collection** 32:22

**collects** 21:9

**Colton** 5:5 28:10 29:9

**column** 25:5

**commissioners** 13:23

**committee** 4:9 12:25 13:3,7 18:1, 17 38:23 39:2,4,6,11,15 40:1,5 43:3 47:1,4,15 48:7,10

**communicate** 50:1 55:20

**communicated** 55:25 56:5

**communication** 54:24

**compare** 43:3,25 48:8

**comparing** 47:2

**comparison** 15:23 16:4,8

**Compensation** 23:18

**compiled** 57:6

**completely** 38:21

**compliance** 10:8,11

**confirm** 44:5

**consecutive** 21:1

**considered** 40:7

**consistent** 48:15

**contact** 55:18 57:20

**contacted** 55:3,7

**contained** 18:15

**contract** 11:5

**Convenes** 42:10

**coordination** 22:18

**coordinator** 53:22,23,24

**copies** 59:9

**copy** 58:6

**corner** 18:8 23:11

**correct** 10:10,23,24 11:1,2 15:2,3, 15 16:5,6,9,10 17:2,3,9,17 19:23 23:20,25 24:23,24 25:15 26:11,15, 16 27:16,17 29:10,11 30:21 31:8, 12,13,21 33:5,6 34:1,5,6 35:7,11 36:25 38:13 39:16,17 42:6 43:18,

23 44:8 45:2 46:3,4,8,9 47:6 49:20 53:4,12 56:24 57:8

**count** 25:22

**counted** 16:14 20:6,12,16

**counting** 37:25

**county** 1:10 2:20 6:12,23 7:5,13 8:23 9:2,7,17,22 10:1,6,14,23,25 11:3,6,8,11,13,19 12:9,24 13:2,5,9 14:16 15:1,19,22 16:8,25 17:10 18:19 20:10,14 22:11,14 23:4 28:15,20 29:15,18 31:24 32:3,7 33:5,7,21 34:7,14 35:12,16,20 36:19 37:15 39:3,16,20,22,25 40:5, 10,12,16 41:20 42:4 46:24 48:18, 22 49:12,15,19 50:1 51:3,25 52:3 53:7,15 54:9,12,24 55:4,8,10,14, 19,20 56:1,5,9,12 57:13,17,21 58:4,11,19 59:4,13,23 60:5,6,9,12, 21 61:16

**County's** 10:19 35:20 51:1 54:15 56:15 59:20

**court** 1:1 13:24

**covered** 10:17

**COVID-19** 50:7,10 51:14

**create** 12:4

**creates** 33:23

**crisis** 50:7,10 51:14

**CRR** 1:22

**CSR** 1:22

**current** 6:22

**cut** 50:20

---

**D**

**data** 56:25

**database** 44:21 56:16 59:24

**databases** 60:4

**date** 23:17,21,22

**dated** 35:2

**Davis** 23:12 25:13,25

**day** 23:22 24:5,10 34:21,22 35:6,9 40:13



**days** 24:8

**deal** 55:14

**December** 14:21,22 15:2 28:10 29:10

**decided** 46:25

**DEFENDANT** 2:14,20 3:3

**Defendants** 1:13

**democrat** 55:16

**depends** 25:1 44:16

**depo** 28:16 29:5

**deposed** 7:18

**deposition** 1:14,17 4:7 6:10,11 7:1,12,23 8:1,8,21 26:6 28:17,19 39:19 41:12 50:17,18,23

**describe** 9:6

**DESCRIPTION** 4:6 5:2

**designated** 7:5 28:15,20

**destroyed** 24:21

**determine** 11:21 12:13 13:19

**determined** 36:6

**determines** 13:15

**devise** 9:17,22

**differ** 19:11

**digitally** 60:15

**direct** 42:2 54:4

**directly** 53:14 54:6,10,19,21

**DISABILITIES** 1:4

**discovery** 20:23 41:14,16,25 46:12 57:1

**discrepancies** 32:8

**discretion** 48:10,19 49:4

**discussed** 31:15 38:9 40:15 50:9, 13 51:22

**discussions** 51:11

**distributed** 18:23

**district** 1:1 10:16

**DIVISION** 1:2

**document** 7:8 8:15,18 17:19

18:10 19:15 20:18,22 23:2 36:22 41:23

**documentation** 58:11,20

**documents** 6:16 21:4 33:4 41:11, 19,20 45:21

**Dolling** 2:4

**door** 24:23 44:6

**Doris** 25:16,20,21

**doubt** 29:23

**dozens** 46:21

**Drive** 2:5

**due** 32:8 36:14 37:6,16 38:12 49:6 51:23

**duly** 1:19 6:3,5

**duties** 10:1 11:15 16:11 18:19 29:13 51:2

**duty** 10:6 48:7

---

### E

**e.magee@allison-bass.com** 2:24

**earlier** 8:10 19:25 40:11 48:2

**early** 4:8,13,16 9:14 10:25 11:22 13:12,22 14:2 17:25 18:12,16 19:17,21 21:6 22:1,5 25:22 28:4 30:14 33:24 34:9 39:12 40:3,10 42:5,10 43:24 44:2 50:4 51:2

**East** 14:19

**Eastern** 52:18

**effect** 6:17

**elected** 11:13,17

**election** 4:10,13,16,19 9:24 10:9, 17,23 11:8,14,19 12:10 14:13 15:14 16:3,7,14 18:2,19 20:7 23:4, 14,21,25 24:7,10 26:2,18,24 27:20 29:19 30:10,16,20,24 31:10,12,16, 25 32:8 34:7,14,15,22 35:13,17,21, 23 36:2,11,14,23 37:6,16 38:12,18, 21 39:7,9 40:14 45:1,14,17 46:19, 22 47:7 48:16 53:15 59:14 60:2,9

**elections** 1:10 2:20 6:23 10:14 11:24 12:15 16:25 26:11 36:18 43:16 53:11,22,23 54:9,12,13,19

59:14 60:12

**electronic** 60:3,8,11,15

**electronically** 43:15 60:17

**eligible** 20:5,11,15

**employed** 22:11,14

**employee** 55:4,8 56:1,6

**end** 15:12 21:12 34:19,21,23

**ending** 31:6

**ensure** 10:7 20:11 48:22

**ensures** 10:14 21:24

**ensuring** 20:15

**entire** 15:1

**entities** 11:3,5 13:9 58:15 59:19

**entity** 10:16

**envelope** 36:8 38:25 45:22

**Eric** 2:22 28:13 50:20 61:15

**Erratt** 3:13 52:14,20 55:11

**essentially** 44:5

**estimate** 27:7

**EVBB** 14:5,12,23 15:7,20,23 16:5, 9,12,18,20,21 17:2,4,8,17 19:25 21:7,10 22:8,10,12,15,21 23:4,8, 14,24 24:4,8,22 25:17,24 27:15,20, 21 30:24 31:11,24 32:7 33:9 35:18, 22 37:7 45:2,19 46:7,15,16 47:2 48:19,23,25 49:4,7,11 53:3,7 54:25 55:3,7,25 56:5,10,13

**EVBB's** 15:4 29:13

**EXAMINATION** 4:3 6:6

**examples** 47:14,15

**exception** 22:17 25:25 27:21

**excuse** 26:1 28:8 42:7 52:18 60:9, 20

**execute** 51:4

**exhibit** 4:7,8,13,16,19 5:3,5 7:10, 22 17:22,23 20:19,20 22:24 25:3 26:5,7 28:6,8 29:1,8 30:23 31:1,15 32:13,14,20 42:2 49:9 57:7

**EXHIBITS** 4:5 5:1

**exist** 22:4 24:11



RICHARDSON: TRUDY HANCOCK - 30(B)(6)

**expectation** 51:25

**experts** 48:9

---

### F

**facilitate** 11:22 22:15

**fair** 20:10,14 23:2 25:24 49:5

**fairly** 8:3

**familiar** 17:13,16

**FARR** 2:10

**federal** 1:24 10:11

**fewer** 27:10,11 38:19

**file** 43:6,13

**files** 61:3

**fill** 34:3

**filled** 33:25 34:2 50:3

**filling** 11:17

**fills** 33:25

**final** 25:16

**find** 44:10,18 46:10

**fine** 52:20 53:20

**finish** 52:12

**finished** 34:17

**finishes** 34:10

**Floor** 3:6

**follow** 10:14 47:2,5 58:17

**form** 17:14 30:10 31:18 37:4,22

**forms** 60:22

**FORUM** 1:6

**forward** 7:21

**fourth** 25:16

**full** 6:20

**FUND** 1:5

**funding** 15:4,6

**furnish** 15:11

---

### G

**GALLAGHER** 2:10

**gaps** 32:24

**general** 2:16 4:13,16,19 10:1 23:4, 14,25 24:7 26:2,14,18,24 27:19 29:19 30:24 31:16,24 32:7 34:15 35:23 36:2,11,13,23 37:6 38:12 45:14,16 49:25 58:14 59:1

**generally** 9:7 17:17 24:25 39:11 57:12

**generated** 60:24

**George** 1:3 36:24

**GI** 1:5

**give** 18:12 60:20

**government** 10:15 58:15

**Graziano** 1:22

**great** 7:8 40:20 41:5 52:15,21 61:18

**guess** 16:23 42:24

**guidance** 18:16

**guidelines** 6:14

---

### H

**half** 27:22

**Hancock** 1:9,15,18 2:20 6:4,8,21 10:22 39:21 41:11 51:12,21 53:2 61:16

**handbook** 4:10 16:23 17:1,17 18:1,11,15,18,22 19:1 42:3,8 47:10

**handful** 52:9

**handles** 21:18

**handwriting** 48:9

**handwritten** 23:17

**Hani** 2:4

**hani@texascivilrightsproject. org** 2:7

**happen** 46:18,21

**head** 32:2,11 53:11

---

**heading** 7:25

**host** 22:19

**hosted** 30:12

**hours** 25:4,13,17 26:1 27:22

**Houston** 3:6

---

### I

**identical** 47:22 48:1

**identifier** 44:12

**impact** 50:10

**implement** 54:15

**important** 21:21

**inaccurate** 26:21 27:25

**inappropriately** 49:17

**include** 29:14 53:17 56:20

**increase** 50:14 51:23 52:1

**indefinitely** 43:22

**INDEX** 4:1

**individual** 23:3 28:17 39:21,22 49:4,7

**individuals** 23:7 31:11 54:7 56:20

**individuals'** 25:4

**inferred** 46:5

**information** 24:16 34:12 37:17 38:10 44:9 45:23 57:9,12,15,20 58:2,4,12,20 59:4,6,20 60:11

**instance** 1:19

**interest** 20:15

**interim** 46:2

**internal** 60:3

**interrogatories** 7:3 41:13,16

**investigate** 35:17,21

**involved** 11:4 12:3 13:10

**involvement** 11:25

**Isaac** 3:5 61:8

**issues** 55:14,21

**itawil@mcallen.net** 3:8

---



**Item** 19:16

**J**

**jacket** 45:22

**Joanna** 2:10

**jsuriani@willkie.com** 2:13

**judge** 11:11 13:16,17,18,23 16:20, 21 17:2,7,8 22:2 23:12 33:24 44:2, 24 46:15

**judge/clerk's** 30:4

**Judges** 4:10 18:2

**judgment** 48:11,20,23

**JUSTICE** 1:3

**Justin** 3:11

**K**

**Kalar** 2:9 4:3 6:7 7:11 17:24 20:21 26:8 28:7,22 29:6,7 31:2 32:15 39:24 40:20,23,25 41:5,10 50:20, 25 51:8,11,17,20 52:8,15,21 53:1 55:22,23 61:5,18

**Kilpatrick** 5:6 28:10 29:9

**kind** 23:7

**knowledge** 8:22 12:21,23 14:1,4 15:25 19:10,13 23:6,9 53:7,9 55:9

**Krystal** 21:14,18

**Krystal's** 24:2

**L**

**laid** 39:6

**language** 30:2

**Lara** 1:11 3:3 61:9

**larger** 42:16

**Laserfiche** 44:21

**late** 34:24

**law** 10:11

**LEAGUE** 1:5

**left** 23:11,18 52:10

**letter** 5:5 15:11,13 28:9 29:9,21,24

**light** 51:9

**likelihood** 51:22

**list** 8:4

**listed** 8:15,17 22:7

**litigation** 7:14 24:15 32:21 33:12 36:1 38:4

**LLP** 2:10,22

**logistics** 22:18,22 56:7

**long** 24:25 32:23 40:23

**looked** 41:13

**M**

**machine** 1:23

**Mackin** 2:16 61:12

**made** 12:7 41:16 43:5 59:17

**Magee** 2:22 28:12,13 29:2 39:18 40:18,22,24 41:4 50:15,23 51:6,10, 15,19 61:15

**mail** 36:7 50:3 58:13

**mail-in** 9:7,18,23 10:2,7,20 11:4, 20 13:10 28:25 31:23 32:6 33:8 35:18,22 49:10,17,20 50:2,6,11 51:13 52:1 53:4,8 54:14,16,18,22 55:1,4,24 58:12,21 59:20 60:23

**mailed** 26:11,15,18,23,25 27:3 31:16 35:8 57:4

**mailing** 9:11 10:4

**maintain** 9:13 43:15 59:25

**maintained** 60:1

**maintaining** 60:16

**maintains** 21:19 59:23 60:2,22

**make** 6:17 42:16 45:7,13 46:15

**makes** 45:19

**marked** 5:1 7:10 17:23 20:20 26:5 30:22 31:1 32:14 47:12,20

**matter** 49:25

**Mcadams** 3:11

**Mcallen** 1:11 3:3,6,7 61:10

**Mcleod** 14:6 45:3

**means** 43:10

**medium-sized** 52:9

**meet** 12:10,12,13 14:5,23 23:14 24:5,8,25 56:8

**meeting** 22:5,8 24:12 44:6 45:5 46:16

**meetings** 22:11,15,19,22

**meets** 9:14 14:6 24:22

**member** 13:21 14:3 16:12,18 21:14 55:7,25 56:4

**members** 12:16 13:12,24 15:20, 23 16:5,9 17:4 19:18,22,25 22:10 25:14,18 27:21 48:11,19,23,25 49:4,7 54:25

**membership** 22:3

**mention** 7:20

**mentioned** 39:14

**met** 12:5,18 23:23,24 24:9 25:24 45:2

**middle** 19:15 42:13 50:21

**Milam** 25:17,20,21,25

**mind** 59:16

**minutes** 40:24

**Mirza** 2:4

**miscellaneous** 4:20

**mismatch** 36:14 37:7,16 38:12 49:6

**moment** 60:20

**months** 33:15,17 45:25 46:2 58:8, 9

**Montopolis** 2:5

**morning** 6:15,25

**move** 1:4 14:18,20

**moved** 14:15

**MUD** 10:16

**N**

**needed** 11:21 12:13



**night** 8:11

**nomination** 39:13

**nonprimary** 30:19

**normal** 14:11

**notation** 24:2

**note** 43:2 47:12

**Notes** 42:14,23

**notice** 4:7,19 7:13,23 28:19 29:5
32:19 33:3 35:1 36:15,22 50:3,17
61:4

**notices** 33:20,23 34:15 35:9,14,25
59:9

**notified** 49:21

**November** 23:15,21,22,25 26:14,
24 35:2

**number** 4:6 5:2 12:16 13:15 19:16
20:23 25:1 26:10,25 27:1 28:24
32:22 36:5 47:20 48:6 57:4 58:1,3

**numbered** 1:20

**numbers** 18:7 21:1 32:23

---

**O**

**oath** 17:4,6,11,13 19:21,24 20:1,3

**Oaths** 19:17 23:19

**object** 28:13 39:18 50:15

**objecting** 29:4

**objection** 50:21

**objectively** 20:4

**obligation** 20:11

**obligations** 16:11,19,22

**Ocon** 21:15

**office** 2:16 3:6 9:9,24 12:7 14:7,11,
15,23,25 15:7,15 17:1 21:20 22:21
24:17,18,22 26:17,25 27:1,4,15
28:3 30:13,16 33:22 34:8,14 35:6,
8,13,17,21 38:2 43:13,16 44:3,6,
15,17,24 45:2,6 50:6,9 51:12 53:12
54:13 56:21,22 58:25 59:1,5,18
60:9,12

**office's** 22:18 60:3

---

**offices** 59:3,7

**official** 1:9,11 2:20 3:3

**officials** 58:15

**older** 33:16

**online** 18:11,13

**open** 40:13

**opened** 34:10

**openers** 15:11,13

**opportunity** 49:19

**optional** 58:1

**options** 49:11

**organize** 22:15

**oversee** 11:6

**overseen** 12:2

**oversees** 9:9 10:19

---

**P**

**p.m.** 1:21 6:2 41:2,9 52:25 61:22

**pages** 20:25 22:25 23:11 31:6
32:23

**paid** 30:13

**paperwork** 17:15 21:11

**paragraph** 29:13

**part** 11:15 18:18 24:15 36:1 37:21
38:3 43:19 48:6

**part-time** 53:25

**parties** 13:25 30:17 39:13

**party** 11:12 30:12 55:16

**pass** 61:6

**past** 12:20,22 18:24 19:6,8 59:8
60:15

**pay** 28:4

**payroll** 21:5,18 24:16

**pens** 15:11,13

**people** 51:23 55:13,19 58:1

**perceived** 32:8 37:6

**perform** 35:13

---

**performed** 37:9

**performing** 16:17

**period** 51:2

**Perla** 1:11 3:3 61:9

**permanent** 43:21 58:10

**person** 36:8 48:3,4 49:22

**personal** 8:21 57:15

**personally** 21:13 34:3 44:14 53:9

**pertaining** 36:1

**pertinent** 30:14 34:11 57:15

**phone** 57:25 58:3

**physically** 14:8 22:19

**place** 12:6 51:24 56:7

**plaintiffs** 1:7,19 2:3 37:2 41:17,21

**plans** 12:1,4

**points** 42:15,24

**policies** 12:6 50:5

**policy** 43:20

**polling** 51:24

**portion** 6:9,10 7:1

**posed** 47:21

**position** 6:22 11:18 53:18,20

**positions** 54:3

**preceding** 43:5

**preparation** 41:12

**prepare** 6:25 52:4

**prepared** 8:14,18,23 26:9

**prepares** 60:21

**preparing** 51:12

**prescribed** 30:5

**present** 3:12 17:11 45:4

**previously** 5:1 26:5 31:14 39:14
46:24 53:2

**primaries** 30:17

**primary** 30:3,9 45:1

**print** 18:13 44:3,12,21 60:25



**printed** 26:19 45:21

**prior** 14:22 24:9 26:5 56:4

**Procedure** 1:25

**procedures** 9:25 12:6 50:5

**PROCEEDINGS** 6:1

**process** 9:8 10:2,8 11:4,20,25 13:10 21:12 34:10,23 44:18 54:16 55:5,12,24 56:2,4,6 58:12,21 60:23

**processed** 34:20,22,23

**processes** 9:18,23 47:8 59:21

**processing** 9:11 10:4 34:17

**produced** 1:18 18:5 20:22 24:15, 16 30:24 32:21 33:11 36:1 38:3 41:20

**program** 30:5,8

**prohibit** 16:7

**PROJECT** 2:5

**provide** 15:13,17,19,22 16:1 44:9 47:7 49:12,19 58:19

**provided** 16:5,24 38:10 48:25 58:3

**providing** 16:8

**provisional** 34:24

**provisions** 1:25

**pull** 31:20

**purchased** 52:5

**pursuant** 1:24 46:11

**push** 40:12

**put** 45:22 57:25

---

**Q**

**qualified** 57:16

**qualify** 16:13 25:2 30:11

**qualifying** 9:10 10:3 29:14

**question** 28:22 39:21 47:19,20,21 48:6 49:13 50:18 51:6,10,16,21 58:17

**questioning** 51:5

**questions** 16:18,22 47:14 51:18

---

52:10 55:4 61:6,11,14,17

**quick** 28:13 50:16

**quickly** 8:4 20:25 23:1

---

**R**

**range** 4:21

**ranges** 32:23

**read** 7:2 8:9,10,12 18:24,25 42:19

**reads** 19:16 30:3 43:2 47:13 48:6

**real** 28:13 50:16

**reason** 8:25 24:4 26:20 27:24 29:23 36:5,9,10 38:16,19 45:10

**reasonable** 48:3,4

**reasons** 55:8

**Rebecca** 1:22

**recall** 34:18

**receipt** 37:19,22

**receive** 9:13 23:7 27:5 34:8,14

**received** 27:1 35:6 37:24

**receiving** 10:3,5

**recent** 45:1

**recess** 41:9 52:25

**recognize** 7:15 21:4 28:9 37:1

**recommendations** 13:25

**reconvene** 52:16

**record** 1:25 6:2,20 33:7 41:6,8 45:20 52:22,24 58:10 61:21,22

**records** 21:19,21,24 24:20 32:3 33:11,14 37:18 38:1,10 43:14,19, 21,22 44:1,10,13,19,22 45:24 46:3, 6,10,15 59:11 60:8,14,22

**recourse** 49:11

**refer** 7:21 26:25 28:23

**referred** 19:24

**referring** 28:19

**reflecting** 26:10

**registered** 57:13,21

**registrar** 43:6

---

**registration** 43:12 44:21 53:23,24 57:24 58:10 60:14

**regular** 12:10

**regulations** 10:13 39:5

**reject** 31:24 32:7 37:15

**rejected** 4:20 20:8 32:19 33:3,8 35:18,22 36:10,14 37:5,24 38:11, 16,19 49:6,10,17,20 50:2 61:4

**rejection** 35:9,14,25 36:5,15,22 59:9

**relate** 28:18

**related** 15:23 58:12,20

**relates** 50:19

**relation** 14:8

**remedial** 56:12

**remedy** 49:16

**remember** 29:22 31:19 45:9,15,18

**REMOTE** 1:14,17

**remotely** 1:21

**repeat** 37:21 50:22

**rephrase** 60:10

**report** 26:19,21 27:6 54:6,10,18,21

**reported** 1:23

**REPORTER** 41:7 52:23 61:20

**reports** 53:14 54:4

**representation** 11:12

**representative** 8:22 9:1 39:23

**representative's** 28:16

**representatives** 28:21

**REPRESENTING** 2:3,14,20 3:3

**request** 7:18 44:14 45:13,19 46:15 59:7

**requested** 46:7 58:23 59:8,10,12, 15,19

**requests** 41:16,17 45:8 46:12 51:23 57:1 59:1,5,16,17

**required** 14:2 19:17

**requirements** 12:14,16

---



reserve 61:11,14,17

respect 23:24 50:6 57:13,21

respond 46:11

response 48:5 50:7 51:13 57:1

responses 41:17

responsibilities 51:1,4

rest 14:9

retained 33:4 34:12

retains 43:17

returned 27:14 37:19

returning 29:8

review 18:22 41:11 55:10 56:9,25 57:3,9

reviewed 8:7 19:4,12 27:20 41:24

reviewing 55:24

Richardson 1:3 36:24

Richardson's 37:5,10

RIGHTS 2:5

Robert 23:12

Robertson 13:5 39:16

role 9:6 11:20

room 14:7,10 44:7 45:3,6

ROSALIE 1:3

RPR 1:22

Rule 7:12,22

rules 1:24 18:14 39:5 47:2,3,8

run 36:19

running 27:6

Ruth 14:6 45:3

― S ―

Sam 55:11

Samuel 2:9 28:12

SAN 1:2

Saturday 24:9 34:20 35:10

schedule 12:10

scheduling 56:7

screen 9:4 17:20 32:16 35:1 37:13

scroll 7:19 8:3 20:24 22:25 36:3

sealed 34:11

search 44:20

searches 46:11

secretary 1:9,12 2:14 3:4 16:24 18:6,23 30:5 42:4 56:19 58:13,22, 25 59:18 60:1 61:1,10,13

seeks 13:24

send 27:15 58:11 59:4,9

sense 6:17 38:15 46:14

sentence 29:12

series 42:14

served 23:3 31:11

serves 39:10

service 16:17

services 18:13 30:13

serving 23:8

set 11:16

Seventh 2:11

share 17:19

sharing 6:16 9:4 37:12

sheet 21:5,6,9,19 22:8 23:13 24:11,14 25:3 27:18,23,25 28:2 30:2 31:10

sheets 4:14,17 21:7 22:4

sheriff 11:11

shipped 33:18

shorthand 1:24

show 7:8 37:18

shows 23:3

shredded 33:19 45:25

shredding 43:20

sign-in 4:14,17 21:5,7,9,19 22:4,8 23:13 24:11,14 25:3 27:18,23,25 28:2 30:1,24 31:10

signature 4:9 12:24 13:3,6 15:23 16:4,8 18:1,17 23:10 36:6,14 37:6,

16 38:12,22 39:1,3,6,10,15 40:1,4 46:25 47:4,15 48:3,7 49:3,6

signatures 32:9 37:10 38:24 43:4, 25 45:8 46:8 47:3,21 48:1,8,12,20 49:1

signed 34:5 36:8

significance 18:14 23:16

significantly 19:11

signs 22:2

similar 48:4

sir 6:13,18 7:7 15:18 17:21 18:4 25:11 37:3 41:18,22 42:1 54:2

situations 47:16

size 40:10

skalar@willkie.com 2:12

skills 14:1

small 40:12

sort 59:6 60:8

SOS_000428 4:11 18:7

sound 31:17

space 14:11

speak 9:1

speaking 39:11 57:12

special 14:1

specifically 28:23

sped 52:11

spoke 48:2

spreadsheet 5:3 26:9 31:14 57:7

staff 14:9 21:14 53:16,17 56:21,22

standard 53:7

standards 48:25 53:3

start 29:4 40:11

started 60:16

state 1:9,23 2:15 6:20 16:24 18:6, 23 30:5 42:4 56:19 58:14,16,22 59:19 60:1 61:13

State's 58:25 59:18 61:1

stated 1:25 23:21



**Statement** 23:18

**STATES** 1:1

**steps** 49:15

**Stevenson** 3:5

**stop** 37:12

**stopped** 7:24 9:4

**store** 58:4 60:13,14

**stored** 33:20 43:14 56:25 57:10 58:7

**Street** 2:17,23 14:19

**subdivisions** 11:6

**Subheading** 47:20

**submember** 25:21

**submitted** 29:15,18

**subparts** 8:5

**supervise** 12:15

**supplies** 15:7 52:5

**supply** 58:2

**Suriani** 2:10

**SVC** 48:9

**swear** 19:25 20:4

**sworn** 1:19 6:3,5

---

**T**

**takes** 25:2 49:16 51:3

**talked** 6:14,24

**talking** 6:15

**Tawil** 3:5 61:8

**tax** 11:11

**team** 25:23 56:18 60:25 61:4

**TEAMS** 56:15,23,25 57:10 59:24 61:2

**TECHNICIAN** 3:10

**ten-minute** 41:1

**tendered** 26:7 28:6

**terms** 6:15 39:10

**testified** 6:5 31:9 53:2

**testify** 7:5 8:14,18,23

**testifying** 6:11 8:20 28:24

**testimony** 53:6

**TEXANS** 1:4

**Texas** 1:1,4,5,6,9,12,23 2:5,6,14, 17,23 3:3,7 10:8 16:3,7 20:7 39:7,9 47:7 48:16 58:14,22

**things** 6:16 8:5 12:14,17 55:17

**thousands** 27:9

**time** 12:18 13:2,5,18 15:1 25:2 34:16,25 40:12,21 41:3 45:7 49:21 52:18,19 55:15

**times** 21:16 22:2 46:21

**titled** 42:10

**top** 23:18 30:2 32:1,11 42:9 47:11

**topic** 28:18 39:20 50:18,24

**topics** 7:6 8:1,15,17,23 9:1

**Total** 25:4

**totally** 55:20

**train** 30:18

**training** 14:2,6 15:19,22 16:1,4,9 23:7 30:4,8,12,15 45:3 56:18

**Trudy** 1:9,15,18 2:20 6:4,21 10:22

**true** 36:18

**turn** 16:18,21 19:14 20:18 26:4 30:22 32:12 34:10 36:21 42:7 47:11 58:7

**turned** 21:11,13,16 34:16 41:24

**turning** 22:24 28:8 30:1

**type** 35:14

**typed** 19:21

---

**U**

**understand** 6:9 7:4 8:20 9:20 15:5 48:8 49:13

**understanding** 27:19 35:5 43:9 47:1,25 48:16

**Understood** 29:6

**unique** 44:11

**UNITED** 1:1

**usual** 38:15

**utility** 10:16

**utilize** 13:6 40:4

**utilized** 39:15,25

---

**V**

**varies** 25:6 46:17

**vary** 49:6

**verification** 4:9 12:25 13:3,6 18:1, 17 38:22 39:1,4,6,11,15 40:1,4 46:25 47:4,15 48:7 49:3

**verify** 38:24 48:11,20 57:16

**version** 18:25 19:3,10,11

**videoconference** 2:4,9,10,16,22 3:5,10,13

**violate** 20:7

**violated** 20:7

**volunteers** 13:24

**vote** 20:5,12,16 49:22 57:16 58:13

**voter** 36:24 43:5,6,11 44:11,12,20 45:23 49:12,16,20 53:22,24 57:14, 21,24 58:3,10 60:14 61:3

**voter's** 20:5,12,16

**voters** 1:5 20:7 27:1,2 29:15,18 50:1 58:13,21 59:21

**voting** 4:8,13,16 9:14,18,23 10:20, 25 11:22 13:13,22 14:2 17:25 18:12,16 19:17,21 21:6 22:1,5 25:22 28:4 30:14 33:24 34:9 39:12 40:3,10 42:5,10 43:24 44:2 50:4,11 51:2,13 52:1

**VUID** 44:11

---

**W**

**wait** 44:24,25

**walk** 44:6

**wanting** 51:24

**website** 61:1

**WEISFELD** 1:3



**West**  2:17,23

**WESTERN**  1:1

**whatsoever**  54:25

**WILLKIE**  2:10

**WOMEN**  1:5

**word**  42:14

**work**  15:4 20:4 54:15 55:1

**worked**  25:5,13,17

**workers**  11:21 30:10,16,18

**working**  12:3 14:16

**works**  41:1 52:13

**wrap**  52:16

**wrote**  29:13

---

**Y**

---

**year**  12:20 27:5 60:15

**years**  12:22 19:6,8 43:5,13 44:22
  59:12

**yesterday**  8:9

**York**  2:11

---

**Z**

---

**Zachary**  2:4

**zachary@
texascivilrightsproject.org**  2:7



| Request 1-Applications | | | |
|---|---|---|---|
| Election | Applications Rcv | Ballots Mailed | App Rejected |
| March 2020 Primaries | 1914 | 1831 | 83 |
| City of College Station 2019 | 401 | 401 | 0 |
| November 2019 | 627 | 549 | 78 |
| Bryan ISD May 2019 | | 14 | |
| City of College Station Runoff December 2018 | | 1201 | |
| November 2018 | | 3966 | |
| Primary Runoff May 2018 | | 1738 | |
| March 2018 Primaries | | 1718 | |
| November 2017 | | 59 | |
| Bryan TRE October 2017 | | 6 | |
| November 2016 General | | 3496 | |

**EXHIBIT**

**2**

exhibitsticker.com

BRAZOS - 000001



**TRUDY HANCOCK**
ELECTIONS ADMINISTRATOR
302 EAST 24TH STREET
BRYAN TX 77803
(979) 361-5770
(979) 361-5779 (Fax)

# BRAZOS COUNTY

December 5, 2016

Colton Kilpatrick
1504 Greenbriar Ridge Way, Apt. 910
Knoxville, TN 37909

RE:     Ballot By Mail

Dear Mr. Kilpatrick:

I am in receipt of your letter dated November 2, 2016. I understand that you are "extremely disappointed" that your ballot for the November 2016 General Election was rejected. I wanted to take the time to explain to you the procedures that are in place to insure that your vote is protected.

The Early Voting Ballot Board (EVBB) is appointed by nominations made from the Democratic, Republican and Libertarian party chairs. The EVBB's duties include qualifying the 3,360 ballots that were submitted by voters of Brazos County. Teams are formed within the EVBB with one member from each party. The team takes the jacket envelope that includes the application for ballot by mail and the yellow courier envelope that contains the ballot. The team will open the jacket envelope and compare the signature on the application to the signature on the courier envelope. If it is determined the signature is reasonably similar the ballot is accepted. If it is determined that the signature is not reasonable similar the ballot is rejected. The courier envelopes are not looked at by a "professional handwriting expert" but a group of reasonable voters such as yourself. A signature is the only means the EVBB has to determine if you voted that ballot or someone else. The procedures for qualifying ballots by mail are set out in the Texas Election Code.

I have attached a copy of your application for ballot by mail and a copy of your courier envelope for your inspection. If you feel something was not managed properly by this office you may file a complaint with the Texas Secretary of State's office by sending an email to elections@sos.texas.gov.

If I can be of further assistance, please feel free to contact me at any time.

Sincerely,

Trudy R. Hancock, REO
Elections Administrator

Enc.



**EXHIBIT**

4

exhibitsticker.com

BRAZOS - 000053

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| DR. GEORGE RICHARDSON, ROSALIE WEISFELD, AUSTIN JUSTICE COALITION, COALITION OF TEXANS WITH DISABILITIES, MOVE TEXAS CIVIC FUND, LEAGUE OF WOMEN VOTERS OF TEXAS, and AMERICAN GI FORUM OF TEXAS, INC., | § § § § § § § § | |
| *Plaintiffs* | § § | |
| v. | § § | Civil Case No. 5:19-cv-00963 |
| TEXAS SECRETARY OF STATE, TRUDY HANCOCK, in her official capacity as BRAZOS COUNTY ELECTIONS ADMINISTRATOR, and PERLA LARA in her official capacity as CITY OF MCALLEN, TEXAS SECRETARY, | § § § § § § § | |
| *Defendants.* | § § | |

**NOTICE OF DEPOSITION OF DEFENDANT BRAZOS COUNTY ELECTIONS ADMINISTRATOR PURSUANT TO FED. R. CIV. P. 30(b)(6) BY PLAINTIFFS**

**TO:**   Defendant Brazos County Elections Administrator, by and through her attorney of record, J. Eric Magee, Allison, Bass & Magee, L.L.P., A.O. Watson House, 402 W. 12th Street, Austin, Texas 78701.

**PLEASE TAKE NOTICE** that, pursuant to Rule 30(b)(6) of the Federal Rules of Civil

Procedure, Plaintiffs Dr. George Richardson, Rosalie Weisfeld, Austin Justice Coalition, Coalition

of Texans with Disabilities, MOVE Texas Civic Fund, and League of Women Voters of Texas,

through counsel, will take the deposition by oral examination of Defendant Brazos County

Elections Administrator on May 5, 2020, at 1:30 p.m. Central Time, by videoconference, or at

such alternative date, time, and place as mutually agreed upon by counsel for the parties. This

deposition shall continue from day to day until completed. The oral deposition will be transcribed

1

**EXHIBIT**

**6**

exhibitsticker.com

and recorded by a court reporter and videographer designated by Plaintiffs. Plaintiffs reserve the right to utilize this videotaped deposition at trial in lieu of live testimony, or in addition to live testimony, and/or for any purpose permitted under the Federal Rules of Civil Procedure and Federal Rules of Evidence.

**PLEASE TAKE FURTHER NOTICE** that in accordance with Rule 30(b)(6) of the Federal Rules of Civil Procedure, Defendant Brazos County Elections Administrator is required to designate one or more officers, directors, managing agents or other persons who will testify on her behalf with respect to each of the topics set forth in the attached Schedule A. In addition, Plaintiffs request that Defendant Brazos County Elections Administrator provide counsel for Plaintiffs with written notice, at least five days in advance of the deposition, of the name and title of each witness who will testify for Defendant Brazos County Elections Administrator, and the topic(s) set forth in the attached Schedule A for as to which each such witness will testify. Defendant Brazos County Elections Administrator is also commanded to produce at the deposition or before, all documents in response to the subpoena *duces tecum* on Schedule B.

Dated: April 17, 2020           Respectfully submitted,

/s/ *Hani Mirza*

**TEXAS CIVIL RIGHTS PROJECT**

Mimi M.D. Marziani
Texas Bar No. 24091906
mimi@texascivilrightsproject.org
Rebecca Harrison Stevens
Texas Bar No. 24065381
beth@texascivilrightsproject.org
Hani Mirza
Texas Bar No. 24083512
hani@texascivilrightsproject.org
Ryan V. Cox
Texas Bar No. 24074087

2

ryan@texascivilrightsproject.org
Zachary D. Dolling
Texas Bar No. 24105809
zachary@texascivilrightsproject.org

1405 Montopolis Drive
Austin, Texas 78741
512-474-5073 (Telephone)
512-474-0726 (Facsimile)

**WILLKIE FARR & GALLAGHER LLP**

Richard Mancino (NY Bar No. 1852797)
Samuel Kalar (NY Bar No. 5360995)
JoAnna Suriani (NY Bar No. 5706395)

787 Seventh Avenue
New York, New York 10019
Telephone: (212) 728-8000
Facsimile: (212) 728-8111
Email: rmancino@willkie.com
        skalar@willkie.com
        jsuriani@willkie.com

-AND-

Jennifer J. Hardy (TX Bar No. 24096068)
Denis A. Fallon (TX Bar No. 24059731)
Garrett Johnston (TX Bar No. 24087812)
Audra White (TX Bar No. 24098608)

600 Travis Street, Suite 2100
Houston, Texas 77002
Telephone: (713) 510-1700
Facsimile: (713) 510-1799
Email: jhardy2@willkie.com
        afallon@willkie.com
        gjohnston@willkie.com
        awhite@willkie.com

*ATTORNEYS FOR PLAINTIFFS*

3

**SCHEDULE A**

**DEFINITIONS**

1.     "Defendant," "Brazos County Elections Administrator," or "you" (and the possessive forms of each) shall mean the Brazos County Elections Administrator, including Trudy Hancock, in her official capacity as the current Brazos County Elections Administrator; where applicable, her predecessors and successors in their official capacities as Brazos County Elections Administrator; and the current and former attorneys, agents, trustees, investigators, representatives, employees, officers, contractors, and consultants of any of them.

2.     "Early Voting Clerk" means the local election official charged under the Texas Election Code with conducting the early voting in each election, holding the same duties and authority with respect to early voting as a presiding election judge has with respect to regular voting except as otherwise provided by Title 7 of the Texas Election Code.

3.     "Election Judge" means the local election official who is in charge of and responsible for the management and conduct of the election at the polling place of the election precinct that the judge serves pursuant to the Texas Election Code.

4.     "Brazos County" shall refer to Brazos County, Texas, and all of its offices and agencies, including the offices or entities of the Brazos County Elections Administrator, the Early Voting Clerk, the Early Voting Ballot Board, and any Signature Verification Committee.

5.     "Early Voting Ballot Board" or "EVBB" shall refer to the entity or entities created and operating in Brazos County pursuant to Tex. Elec. Code § 87.001.

6.     "Signature Verification Committee" or "SVC" shall refer to the entity or entities created and operating in Brazos County pursuant to Tex. Elec. Code § 87.027.

4

7.  "Local election officials" or "Brazos County election officials" means any official responsible for the management or operation of any aspect of elections in Brazos County, including their offices, agents, employees, and representatives. For the avoidance of doubt, "local election officials" or "Brazos County election officials" includes, without limitation, the Brazos County Elections Administrator, the Early Voting Clerk, any Election Judges, and any officials serving on an Early Voting Ballot Board or Signature Verification Committee.

8.  "Texas Secretary of State" or "SOS" shall refer to the Texas Secretary of State, and all of its offices and agencies.

9.  "Texas Attorney General" or "AG" shall refer to the Texas Attorney General, and all of its offices and agencies.

10. "Plaintiffs" shall refer to Dr. George Richardson, Rosalie Weisfeld, the Austin Justice Coalition, the Coalition of Texans with Disabilities, MOVE Texas Civic Fund, League of Women Voters of Texas, and American GI Forum, Inc.

11. "Mail-in ballot" means a ballot cast by mail during an election.

12. "Mail-in ballot application" or "application" means any type of application to vote by mail offered to a voter under the Texas Election Code.

13. "Signature comparison procedure" shall refer to process of comparing signatures used by local election officials, including in Brazos County, pursuant to the Texas Election Code.

14. "Notice of rejection" shall refer to any communication sent to a mail-in ballot voter pursuant to the Texas Election Code.

15. "Mail-in ballot process" or "mail-in ballot procedure" means any aspect or step, individually or in the aggregate, of the process or procedure by which a voter in Texas

5

obtains and then utilizes a mail-in ballot to cast their vote in any election, including but not limited to any aspect or step of the process or procedure by which local election officials decide whether to accept or reject a mail-in ballot application or a mail-in ballot, any signature comparison procedure utilized in those determinations, or any notice of rejection or other communication sent to any mail-in ballot voter.

16.     Use of the term "person" includes any individual, independent contractor, public or private corporation, partnership, unincorporated association, incorporated association, government agency or entity, or any other entity, its officers, directors, partners, employees, agents, and representatives.

17.     The term "including" shall be construed broadly, and shall encompass "including but not limited to" and "including without limitation."

18.     The terms "and," "or" and "and/or" shall be construed disjunctively or conjunctively as necessary in order to bring within the scope of the request all responses which otherwise might be construed to be outside its scope.

19.     The terms "any" and "all" shall be read to give the broadest possible scope to the request as permitted under the Federal Rules of Civil Procedure.

20.     A verb used in any tense shall encompass the verb in all other tenses.

21.     A word in singular form shall encompass the plural form and vice versa.

22.     Use of the terms "document," "documents," "documentation," "written materials" or "printed matter" mean any recorded form of writing or communication whether it be by paper, film, microfilm, microfiche, computer print-out, reports, records, lists, memoranda, e-mail, correspondence, communications, telegrams, schedules, photographs, drawings,

6

charts and other forms of tangible and electronic information preservation, including, but not limited to:

> correspondence, letter, memoranda, electronic mail, telefax, message, note, report, cable, telegram, photograph, film, tape, and all other written communications of every kind and character; note, recording disk, or any other record of oral communication; microfilm; worksheet; schedule; exhibit; demonstrative aid; letter; contract; agreement; diagrams; logs; summaries; printouts; graphs, charts; floppy disks, CDs or DVDs, compilations, tables; publications; manuals; minutes; minute books, diaries; calendars; bank statements; lists; data tapes, audio tapes, video tapes; spreadsheets and any other data compilations from which information can be obtained and translated.

23.    "Complaint" shall mean the Complaint filed by Plaintiffs in Civil Action 5:19-cv- 00963 on or about August 7, 2019.

**DEPOSITION TOPICS**

1.    The duties and responsibilities of Brazos County and/or its representatives, employees or agents concerning the implementation, administration, coordination, oversight, and compliance with the Texas Election Code or any other state laws or regulations as they relate to the mail-in ballot process from January 1, 2012, to the present. This includes but is not limited to any training, monitoring, or oversight of any Brazos County election official in their implementation of the mail-in ballot process, including their procedures for accepting or rejecting mail-in ballots.

7

2.     The organization and structure of any Brazos County office or entity that in any way regulated the conduct of early voting during the period from January 1, 2012 to the present, including but not limited to:

a.     lines of authority to and from all Brazos County personnel who have responsibility for any aspect of the oversight of the implementation of the mail-in ballot process; and

b.     lines of authority to and from all Brazos County personnel who communicate with local election officials  regarding the mail-in ballot process.

3.     Brazos County's responsibilities and duties during the early voting period and the actions that Brazos County takes to execute those responsibilities and duties.

4.     Brazos County's policies, practices, and procedures related to the mail-in ballot process, during the period from January 1, 2012 to the present, including but not limited to:

a.     the aspects of the mail-in ballot process that Brazos County is responsible for carrying out or implementing;

c.     Brazos County's role in appointing an EVBB or SVC;

d.     any oversight or control exercised by Brazos County over an EVBB's or SVC's activities, whether directly or indirectly;

e.     any communications with Brazos County election officials, including the members of the EVBB or SVC, regarding the implementation of the mail-in ballot process;

f.     the training or guidance that Brazos County provides to the members of an EVBB or SVC regarding the signature matching procedure or on any other matter;

8

g.     whether Brazos County reviews or audits the actions taken by an EVBB or SVC, the remedial action that Brazos County takes if it determines that a decision of an EVBB or SVC is incorrect, and how the determination to take such action is made;

h.     the procedures for communicating with voters who vote by mail and the methods used and/or available for accomplishing those communications, including how a notice of rejection or other disposition of a vote by mail is communicated to voters;

i.     what information Brazos County possesses with respect to individual voters, including information it possesses or may reasonably obtain to facilitate communications with voters who vote by mail, such as phone numbers, addresses, or e-mail addresses;

j.     whether Brazos County sends documentation or information related to the mail-in ballot process and voters who vote by mail to the Secretary of State, the Texas Attorney General, and/or any other governmental officials or entities; and

k.     whether Brazos County has received any documentation, information, or training related to the mail-in ballot process from the Secretary of State or any other government official or entity.

5.     All policies, practices, and procedures related to any computer system utilized by Brazos County to track documentation, data, or information relating to the mail-in ballot process, including applications for and the use of mail-in ballots, including any communications or documentation from Brazos County election officials relating to mail-in ballot applications, mail-in ballots, or the mail-in ballot process, including but not limited to:

a.     the system's role, function, and functionalities, including available data fields and report generating capabilities;

9

b.      the system's computer structures and operating program;

c.      the data recorded in the system and the system's ability to produce reports of particular data;

d.      the procedures for determining whether to modify the system;

e.      past and current modifications (including the substance of the modifications and cost);

f.      the system's capability for further modifications;

g.      modifications to the system currently planned for the next four years, including deadlines and any timelines of goals; and

h.      the system's ability to accept mail-in ballot related information from local election officials.

10

## SCHEDULE B

Definitions are incorporated by reference from Schedule A.

Documents to be produced:

1.    All documents reviewed in preparation for your deposition.

11

## <u>CERTIFICATE OF SERVICE</u>

By my signature below, I certify that a true and correct copy of the foregoing was served on each Defendant's counsel of record on April 17, 2020 via email.

Dated: April 17, 2020

<u>/s/ *Hani Mirza*</u>

12

# EARLY VOTING BALLOT BOARD & SIGNATURE VERIFICATION COMMITEE

## Handbook for Election Judges and Clerks 2020

### FOR USE IN GENERAL, PRIMARY, AND
#### OTHER POLITICAL SUBDIVISION ELECTIONS



**EXHIBIT**

7

exhibitsticker.com

**Issued by**

The Office of the Texas Secretary of State, Elections Division
1-800-252-VOTE(8683) or (512) 463-5650

SOS_000428

www.sos.state.tx.us
www.VoteTexas.gov

# TABLE OF CONTENTS

**INTRODUCTON** i

**CHAPTER 1 – CREATION OF THE EARLY VOTING BALLOT BOARD & SIGNATURE VERIFICATION COMMITEE** 1

SECTION A.  COMPOSITION OF THE EVBB 1
SECTION B.  COMPOSITION OF A SIGNATURE VERIFICATION COMMITTEE 2

**CHAPTER 2 — SIGNATURE VERIFICATION COMMITTEE   CONVENES** 1

SECTION A.   Convening the Signature Verification Committee 4
SECTION B.   Delivery Of Materials To The Committee 4
SECTION C.   Receipt For Delivery 5
SECTION D.   Security Of Early Voting Ballots 6

**CHAPTER 3  — THE EARLY VOTING BALLOT BOARD CONVENES** 7

SECTION A.   Convening the Early Voting Ballot Board 7
SECTION B.   Delivery of Materials to the Board 8
SECTION C.   Receipt for Delivery 9
SECTION D.   Security of Early Voting Ballots 10

**CHAPTER 4  — QUALIFYING BALLOTS VOTED BY MAIL OR VOTED USING MAIL PROCEDURES** 11

SECTION A.   Types Of Early Voting Ballot Applications 11
SECTION B.   Valid Reasons For Voting Early By Mail 11
SECTION C.   Qualifying Early Voting Ballots Voted By Mail 12
SECTION D.   Qualifying Signatures for the Signature Verification Committee 15
SECTION E.   Accepted Ballots 16
SECTION F.   Rejected Ballots 18

**CHAPTER 5 — COUNTING HAND-COUNTED PAPER BALLOTS** 19

SECTION A.   Establishing The Counting Teams 19
SECTION B.   Opening The Ballot Box Containing Hand-Counted Paper Ballots 19
SECTION C.   Rules Governing The Counting Procedure 20
SECTION D.   The Counting Procedure 20
SECTION E.   Rules For Counting Manually-Cast Or Hand-Counted Optical Scan Ballots 21
SECTION F.   Handling The Election Returns For Paper Ballots 24
SECTION G.   Reporting Early Votes 27

**CHAPTER 6 — EXAMINING, PREPARING, AND COUNTING VOTED OPTICAL SCAN BALLOTS** 28

SOS_000429

i

SECTION A.   Processing Ballots Counted At Central Counting Station         28
SECTION B.   Delivery Of Ballot Box         28

**CHAPTER 7 — RECONVENING EARLY VOTING BALLOT BOARD**         29

SECTION A.   Establishing The Early Voting Ballot Board To Review Provisional Ballots         29
SECTION B.   Reconvening For Qualifying Late Early Ballots By Mail         33

**APPENDIX A.  Signature Verification Committee**         39
SECTION A.   Questions in Regards to Verifying Signatures         39
SITUATIONS.         41

**APPENDIX B.  Early Voting Ballot Board**         44
SECTION A.   Questions in Regards to Board         44
SITUATIONS.         48

SOS_000430

# INTRODUCTION

The Elections Division of the Secretary of State's Office has prepared this handbook for an overview of the Early Voting Ballot Board and Signature Verification Committee. This handbook contains a thorough outline of who is able to serve as part of the Early Voting Ballot Board, who is able to serve on the Signature Verification Committee, convening the board/committee, qualifying ballots and counting ballot procedures for the Early Voting Ballot Board and Signature Verification Committee. It incorporates changes in election laws through the regular session of the 86th Texas Legislature (2019).

The handbook starts at the selection process of the Early Voting Ballot Board and Signature Verification Committee, whether it is for a Primary, General, or a Political Subdivisions Election. Throughout the handbook, references are made to the appropriate section in the Texas Election Code or the Texas Administrative Code, unless otherwise indicated. Information in *italics* relates to primary elections.

The Elections Division of the Secretary of State's Office is open during the hours that the polls are open for voting on all uniform election dates. Answers to questions on election law and procedures may be obtained by telephoning the Elections Division toll‑free at 1‑800‑252‑2216 or (512) 463‑5650.

Please visit us at our Internet home page for additional election information at http://www.sos.state.tx.us.

The Office of the Secretary of State does not discriminate on the basis of race, color, national origin, sex, religion, age, or disability in employment or the provision of services.

SOS_000431

i

# CHAPTER 1

## CREATION OF THE EARLY VOTING BALLOT BOARD & SIGNATURE VERIFICATION COMMITEE

### SECTION A.  COMPOSITION OF THE EVBB

1. An early voting ballot board (EVBB) shall be created in each election to process early voting results from the territory served by the early voting clerk. [87.001] No matter what type of election an entity is having, they must have an early voting ballot board.

2. The EVBB consists of a presiding judge and at least two other members. The presiding judge of the EVBB is appointed in the same manner as a presiding election judge. Except in the general election for state and county officers, each county chair of a political party with nominees on the general election ballot shall submit to the county election board a list of names of persons eligible to serve on the early voting ballot board. The county election board shall appoint at least one person from each list to serve as a member of the early voting ballot board. The same number of members must be appointed from each list. The other members are appointed by the presiding judge in the same manner as the precinct election clerks. In addition to the members appointed under the general election, the county election board shall appoint the presiding judge from the list provided under that subsection by the political party whose nominee for governor received the most votes in the county in the most recent gubernatorial general election. [87.002]

**NOTE:** If the county has an elections administrator, or if commissioner's court has transferred the election duties of the county clerk to the county tax assessor collector, he/she will serve as the county election board chair in place of the county clerk. (31.043, 31.072 & 31.073)

**Recommend: We recommend that the county election board appoint the members of the early voting ballot board for the November 3, 2020 no later than October 1, 2020, to allow time for notice requirements.**

| Type of Election | Presiding Judge | EVBB Clerks |
|---|---|---|
| General Election for State and County Officers | County Election Board --from list provided by political party whose nominee for Gov received the most votes in the county | County Election Board -- from lists provided by political parties (same number from each list) |
| Primary Elections | County Chair of Political Party with approval of County Executive Committee | Presiding Judge of EVBB |
| All Other County ordered elections | Commissioner's Court if no County Election Board is established | Presiding Judge of EVBB |
| All other Elections | Authority ordering election | Presiding Judge of EVBB |

1

SOS_000432

3. To be eligible for appointment to the early voting ballot board, a person must meet the requirements for eligibility for service as a presiding election judge, [32.051] except that the appointee must be a qualified voter of the territory served by the early voting clerk and is not required to be a qualified voter of any other particular territory. [87.003]

4. An EVBB member would be ineligible if, they hold public elective office, opposed candidate in election on the same day, related to an opposed candidate within 2nd degree by blood or marriage, or serving as campaign treasurer/campaign manager for candidate in election.

5. <u>Required Oaths by Early Voting Ballot Board Members</u>: All EVBB members should recite this oath, prior to beginning service on the Board. [87.006]

   <u>For use in Joint Primary Elections, General Election for State and County Officers, Elections ordered by the Governor:</u>

   "I swear (or affirm) that I will objectively work to be sure every eligible voter's vote is accepted and counted, and that only the ballots of those voters who violated the Texas Election Code will be rejected. I will make every effort to correctly reflect the voter's intent when it can be clearly determined. I will not work alone when ballots are present and will work only in the presence of a member of a political party different from my own. I will faithfully perform my duty as an officer of the election and guard the purity of the election."

   <u>For use in all Separate Primary Elections and Other Elections that do not contain Party Affiliation:</u>

   "I swear (or affirm) that I will objectively work to be sure every eligible voter's vote is accepted and counted, and that only the ballots of those voters who violated the Texas Election Code will be rejected. I will make every effort to correctly reflect the voter's intent when it can be clearly determined. I will not work alone when ballots are present. I will faithfully perform my duty as an officer of the election and guard the purity of the election. "

## SECTION B.  COMPOSITION OF A SIGNATURE VERIFICATION COMMITTEE

1. Unlike an EVBB that is mandatory, a Signature Verification Committee (SVC) may be created. There are two ways for this committee to be created. The first way is through the early voting clerk. The early voting clerk has authority for determining whether a signature verification committee is needed. The second way is through a petition that is submitted to the early voting clerk. The petition must contain at least 15 registered voters in the territory in order for the committee to be created. The SVC must consist of not fewer than five members. If more than 12 members are appointed to serve on the signature verification committee, the early voting clerk may designate two or more subcommittees of not less than six members. [87.027]

2. In an election in which party alignment is indicated on the ballot, each county chair of a political party with a nominee or aligned candidate on the ballot shall submit to the appointing authority a list of names of persons eligible to serve on the signature verification committee. The authority shall appoint at least two persons from each list to serve as members of the committee. The same number of members must be appointed from each list. The authority shall appoint the chair of the committee from the list provided by the political party whose nominee for governor received the most votes in the county in the most recent gubernatorial general election. [87.027(d)]

2

SOS_000433

3. The signature verification committee is a group that meets prior to election day to compare the signatures on the applications for ballot by mail to the corresponding carrier envelopes. (87.027) If the early voting clerk determines that a signature verification committee is desirable **or** if the clerk receives a petition signed by 15 registered voters, the clerk shall issue a written order creating the committee. The deadline to submit a petition requesting creation of a signature verification committee for the November 3, 2020 is October 1, 2020. (87.027, 1.006) A request submitted by mail is considered submitted at the time of its receipt by the early voting clerk. The early voting clerk determines the number of members on the committee, providing for a minimum of five (the committee chair and four members). The county election board appoints the members. The party chairs, including the county chairs of the Libertarian and Green Party of Texas, submit lists of eligible persons for appointment to the committee.

4. In order to serve on the committee, a person must be a qualified voter of the entity. **IT is NOT RECOMMENDED that members that serve on the EVBB serve on the SVC. This creates a conflict because if a SVC has determined that the signatures are not those of the same person, the EVBB may make a determination that the signatures are those of the same person by a majority vote of the board's membership. [87.027(j)]**

The county chairs' lists for the appointment of the signature verification committee members are not subject to the June 30th or the July 30th deadline. The county elections board shall appoint the members of the signature verification committee not later than the 5th day after the date the early voting clerk issues the order calling for the creation of the committee OR not later than October 15, 2020, if the committee is created after a valid petition was submitted requesting its creation. We recommend that the signature verification committee be appointed (if needed) by October 10, 2020, to allow time for all necessary notice requirements. Therefore, we recommend that the parties submit the lists to the chair of the county elections board (county clerk or elections administrator) by August 29, 2020, to allow for appointment during the month of September or no later than the October 10, 2020 recommended date. The chair of the signature verification committee is appointed from the list of the party whose candidate for governor received the highest vote in the 2018 gubernatorial election countywide. For the remaining members, the county election board must select at least two qualified individuals from each chair's list. If clerks beyond the minimum requirement are ordered, an equal number must be chosen from each list.

| Type of Election | Chair | SVC Clerks |
|---|---|---|
| General Election for State and County Officers | County Election Board appoints who is the chair, in an election for which the board is established --from list provided by the county chairs | County Election Board appoints, in an election for which the board is established --from list provided by the county chairs |
| Primary Elections | County Chair of Political Party with approval of County Executive Committee | County Chair of Political Party with approval of County Executive Committee |
| All Other County ordered elections | Commissioner's Court | Commissioner's Court |
| All other Elections | Authority ordering election | Authority ordering election |

3

SOS_000434

# CHAPTER 2

## SIGNATURE VERIFICATION COMMITTEE CONVENES

### SECTION A.  CONVENING THE SIGNATURE VERIFICATION COMMITTEE

1. The early voting clerk shall determine the place, day or days, and hours of operation of the signature verification committee and shall state that information in the order calling for the committee's appointment. A committee may not begin operating before the 20th day before election day. [87.027(f)]

2. The early voting clerk shall post a copy of the order calling for the appointment of the signature verification committee. The copy must remain posted continuously for at least 10 days before the first day the committee meets. [ Sec. 87.027(g)]

3. The committee must complete the following tasks:
   (a) Compare the signature on each carrier envelope certificate (except those signed for a voter by a witness, with the signature on the voter's ballot appliation to determine whether the signatures are those of the voter). [87.027(i)] The signature verification committee may use electronic copies of the mail ballot application and carrier envelope certificate for comparing signatures.
   (b) The committee may also compare the signatures with any two or more signatures of the voter made within the preceding six years and on file with the county clerks or voter registrar to determine whether the signatures are those of the voter. If ballot materials or ballot applications are recorded electronically as provided by Section 87.126, the signature verification committee may use an electronic copy of a carrier envelope certificate or the voter's ballot application in making the comparison under Section 87.027(i).
   (c) Rejection of signatures must be made by a majority vote of the committee. [87.027(i)]
   (d) The only purpose of the SVC is to compare signatures the EVBB will count the ballot. **THE SVC SHOULD NOT BE COUNTING BALLOTS. [87.027(j)]**

### SECTION B.  DELIVERY OF MATERIALS TO THE COMMITTEE

1. If a signature verification committee is appointed for the election, the early voting clerk shall deliver the jacket envelopes containing the early voting ballots voted by mail to the committee instead of to the early voting ballot board. [Sec. 87.027(h)]

2. The following notices must be posted on an entity's website if available: (HB 933 86R)
   a. Copy of order calling for the appointment
   b. EV Clerk's notice of names and addresses of members
   c. Notice of delivery of ballots

3. Deliveries may be made only during the period of the committee's operation at times scheduled in advance of delivery by the early voting clerk. The clerk shall post notice of the time of each delivery. The notice must remain posted continuously for at least two days before the date of the delivery. [87.027(h)]

4. Postings shall be made on the bulletin board used for posting notice of meetings of the commissioners court, in an election for which the county election board is established or a primary election, or of the governing body of the political subdivision in other elections. [Sec. 87.027(k)]

4

SOS_000435

5.  The committee chair or committee members may request from the voter registrar, county clerk, or election administrator ahead of time signatures that are on file from the past six years. This does not have to be done ahead of time, however our office recommends in order to give the voter registrar, county clerk or election administrator ample time. This may be provided electronically.

6.   In 2017, SB 5 85 R removed the prohibition against the committee using the registration application signature to determine that the signatures are not those of the same person. The bill authorizes the early voting ballot board or signature verification committee to compare a voter's signature on a ballot application or carrier envelope certificate with two or more signatures of the voter made within the preceding six years and on file with the county clerk, in addition to the board's existing authority to make such a comparison with signatures on file with the voter registrar, to determine whether the signatures are those of the same person. The bill removes the prohibition against the board using such signatures on file to determine that the signatures are not those of the same person. The board or the committee may now use the signatures to determine if they are or if they are not that of the same person.

7.  The committee compares signatures on applications and corresponding carrier envelopes only to determine that the signatures on these documents are of the same person or not.  [Sec. 87.027(i)]. The signature verification committee may use electronic copies of the mail ballot application and carrier envelope certificate for comparing signatures. The standard should be whether the two signatures could have been made by the same person. If using electronic signatures to compare, please have a plan in place and use that procedure throughout the duration.

8.  The committee places carrier envelopes and applications that are the signatures of the same person in one container and those that are not of the same person in another separate container.

9.  Committee chair delivers sorted materials to the Board as directed by the presiding judge of the Board.

10. If the signature verification committee has decided that the signatures are from the same person, the Board may not override the committee's decision  If the signature verification committee has decided that the signatures are not from the same person, the Board may override the committee's decision that the signatures are of the same person by a majority vote of the Board. [Sec. 87.027(j)]

11. A determination that signatures are not from the same person must be made by a majority vote of the committee or subcommittee as applicable.  If the early voting clerk has designated subcommittees within the signature verification committee, the subcommittee makes its signature determinations by a majority vote of the subcommittee members.  [Sec. 87.027(l)] There is nothing in the Election Code that states what constitutes a majority vote. This may be something that is discussed among the committee to determine what constitutes a majority vote. Please note that if the committee has determined what constitutes a majority vote, that the committee use that process throughout the entire process.

12. The Board makes a determination if the signature verification committee cannot determine whether the signatures are made by the same person.

13. **Convening the Committee after election day**. The early voting clerk may determine whether or not the committee will need to reconvene after election day to verify signatures or leave that authority with the early voting ballot board. We recommend that this decision be done prior to election day. If the authority is left with the committee we recommend that the committee coordinates with the board and the early voting clerk for delivery of the jacket envelope ballots by mail.

SOS_000436

## SECTION C. RECEIPT FOR DELIVERY

1. Upon delivery of a sealed early voting ballot box, the committee chair of the signature verification committee must inspect the box to determine whether the seals on the box are intact, and whether the numbers on the seals correspond to the numbers indicated on the record of serial numbers prepared by the early voting clerk.  [Secs. 87.062(b), 127.068]

2. If the seals are intact and the numbers match, the committee chair should accept the ballot box and so indicate on the receipt.

3. If the seals are not intact or the numbers do not match, the committee chair should accept the ballot box, but note any discrepancies on the receipt and in his or her records.

## SECTION D. SECURITY OF EARLY VOTING BALLOTS

1. The voted early voting ballots must be secured from the last day of voting by personal appearance at a polling place until the day the ballots are counted.  [T.A.C. Sec. 81.34]

   a. If the signature verification meets before election day, the committee chair shall, upon each adjournment of the board, lock and seal each ballot box prior to delivering the boxes back to the custodian of records.  The chair shall complete a ballot box security form indicating each serial number used to seal each box.  The form shall be signed by the chair and another committee member who has witnessed the procedure.  In a general election for state and county officers, the committee member must be from a different political party than the judge.  The custodian of records shall also sign the form.

   b. The committee chair shall deliver the key(s) used to lock the ballot box(es) to the custodian.  The key shall be retained by the authority designated in accordance with Section 66.060(a) of the Code:

      (1) the sheriff for an election ordered by the governor or county authority or *a primary election*, except that in a year when the office of sheriff is on the ballot, the key shall be delivered to the county judge.  When both these offices are on the ballot, the key shall be delivered to the county auditor or to a designated member of the commissioners court who is not on the ballot and who is appointed by the court, if the county does not have an auditor;

      (2) the chief of police or city marshal for an election ordered by a city authority; or

      (3) the constable of the justice precinct in which the office of the political subdivision is located, or if the office of constable is vacant, the sheriff of the county in which the political subdivision is located if the election is ordered by an authority of a political subdivision other than a city or county.

   c. Upon reconvening the committee, the chair shall ensure that each ballot box is intact.  The chair shall follow these procedures each day except upon final delivery to the custodian of records or delivery to the central counting station.

   d. If it is impracticable for the chair to deliver the ballot boxes each day upon adjournment, the authority conducting the election shall submit an alternate security procedure to the Secretary of State for approval.

6

SOS_000437

# CHAPTER 3

## THE EARLY VOTING BALLOT BOARD CONVENES

### SECTION A.  CONVENING THE EARLY VOTING BALLOT BOARD

1. The Early Voting Ballot Board (the "Board") generally meets twice during an election.  First, the Board meets to qualify ballots by mail on election day or after the last day to vote early by personal appearance.  Second, the Board meets after election day to review any provisional ballots and to qualify any mail-in ballots received by the 5th and 6th day after election day from voters casting a ballot from outside the U.S. or military voters who located outside the voter's  home county and is on active duty or a spouse of a military person on active duty .

2. The board must convene to complete the following tasks:
   (a) Qualify and Process Regular Ballots by Mail
   (b) Qualify and Process Late Ballots (old and new categories)
   (c) Qualify and Process Provisional Ballots

3. Convening the Board on election day or after early voting by personal appearance ends.

Except as provided below, the Board may meet to qualify and accept ballots at any time after the end of the early voting by personal appearance, but <u>may not count</u> votes until the polls open on election day.  [Secs. 87.024-87.0241]

**NOTES**:

* General rule: May convene at the end of Early Voting by Personal Appearance (3rd day before) to <u>qualify</u> ballots.

* In elections conducted by a county with a population of 100,000 or more <u>and elections held jointly with such a county</u>, the Board may meet to <u>qualify and accept</u> voted mail ballots beginning the end of the 9th day before the last day of the period of early voting.

* If there is a central counting station that has been established, then the ballots will not be sent to the ballot board, but rather to central count.

* The Board like the Committee may also compare signatures with any two or more signatures of the voter made within the preceding six years and on file with the voter registrar.

   In 2017, SB 5 85 R removed the prohibition against the board using the registration application signature to determine that the signatures are not those of the same person. The bill authorizes the early voting ballot board or signature verification committee to compare a voter's signature on a ballot application or carrier envelope certificate with two or more signatures of the voter made within the preceding six years and on file with the county clerk, in addition to the board's existing authority to make such a comparison with signatures on file with the voter registrar, to determine whether the signatures are those of the same person. The bill removes the prohibition against the board using such signatures on file to determine that the signatures are not those of the same person. The board or the committee may now use the signatures to determine if they are or if they are not that of the same person.

4. Convening the Board after election day.

SOS_000438

a. The Board cannot convene until the 6th day after an election because voters that did not have a valid form of identification when voting have 6 days to: (1) present to the voter registrar a valid photo identification, (2) complete one of the two curing affidavits set out in Section 65.054(b)(2)(B) (consistent religious objection to photographs) or Section 65.054(b)(2)(C) (identification unavailable due to declared natural disaster), or (3) apply for and receive a disability exemption. A board may convene earlier but continue on a rolling basis until the 6th day.

b. In an election held on the date of the general election for state and county officers, the Board must convene <u>no later than the 13th day after the date of the election</u> to count provisional ballots.

c. In all other elections held on dates other than the date of the general election for state and county officers, the Board must convene no later than the 9th day to complete the review of provisional ballots.

d. The Board shall convene on the 9th day after election day or earlier if the early voting clerk certifies that all ballots from outside of the U.S. have been received and all provisional ballots have been processed by the voter registrar. [Sec. 87.125]  If this date falls on a Saturday, Sunday, or legal state or national holiday, the Board convenes on the next regular business day. [Sec. 87.125(c)]

e. *For Primary and Primary Runoff Elections-not earlier than 6 p.m. on the second Tuesday or later than 1 p.m. on the second Friday after election day at the hour specified by the county chair.*

**NOTE**: From time to time, the office of the Secretary of State will amend this time period by administrative rule.  *See* T.A.C. Sec. 81.33.

SEE CHAPTER 7 FOR RECONVENING OF BALLOT BOARD FOR THE PROCESSING AND COUNTING OF PROVISIONAL AND OVERSEAS LATE BALLOTS.

## SECTION B. DELIVERY OF MATERIALS TO THE BOARD

1. The board should obtain from the authority conducting the election a package of supplies, including the following forms:

   a. Oath of Election Judges and Clerks; [Sec. 62.003]

   "I swear (or affirm) that I will not in any manner request or seek to persuade or induce any voter to vote for or against any candidate or measure to be voted on, and that I will faithfully perform my duty as an officer of the election and guard the purity of the election."

   b. Poll List of Early Voting by Mail Voters or Voters Voting by Mail Procedure; [Sec. 87.021]

   c. List of Early Voting Provisional Voters; [T.A.C. Sec. 81.172 – 81.174]

   d. List of Provisional Voters Who Presented Proper Identification to Voter Registrar; [Sec. 65.0541]

   e. Envelope for Rejected Early Voting Ballots; [Sec. 87.043]

   f. Tally Sheets; [Sec. 65.004]

   g. Return Sheets; [Sec. 65.014]

   h. Envelopes for distribution of returns and election records; [Sec. 66.003]

   i. Statement of Compensation; [Sec. 32.094]

   j. List of "ID" Voters; and

   k. Notice of Delivery of Ballots Voted by Mail (if delivered prior to the opening of the polls.

2. The early voting clerk delivers to the board:

8

SOS_000439

a. Each ballot box containing ballots voted by personal appearance;

b. List of Declared Write-In Candidates (if applicable);

c. The early voting clerk's key to each ballot box;

d. The jacket envelopes containing ballots voted by mail and the corresponding applications;

e. The list of registered voters, containing voters' permanent and mailing addresses of record, used in conducting early voting;

f. Notice of Rejection of Early Voted Ballots (to be completed by Judge of Ballot Board);

g. The ballot transmittal form for early voted ballots; and

h. Receipt for each ballot box, to be completed when box received.

3. The custodian of the key to the second lock on the ballot boxes containing ballots voted by personal appearance must deliver his or her key to the presiding officer of the early voting ballot board at his or her request if the Board will be hand counting personal appearance ballots.  [Sec. 87.025]

4. If ballots will be counted electronically at the central counting station, then:

   * The key and the unopened ballot box should be delivered to the central counting station at the direction of the presiding judge of the central counting station and not to the ballot board, since the law prohibits the ballot board judge from opening the early voting by personal appearance ballot boxes containing ballots that are to be counted by automatic tabulating equipment at a central counting station.  [Sec. 87.101]

   * If accessible voting equipment (such as direct record electronic equipment ("DREs")) or precinct count optical scan equipment was used for early voting, the ballot board should not process the early voting by personal appearance ballot boxes or voting machines.

5. The custodian of the key is:

   -- for county elections, the county sheriff, unless the sheriff is on the ballot, in which case the key is kept by the county judge.  If both the sheriff and the county judge are on the ballot, the key is kept by the county auditor, or if there is no county auditor, by a member of the commissioners court, named by the court, who is not on the ballot.

   -- for city elections, the chief of police or city marshal.

   -- for elections of other political subdivisions, the constable of the justice precinct in which the office of the political subdivision's governing body is located, or if there is no constable in that precinct, the sheriff.  [Sec. 66.060(a)]

6. Notice of each delivery to be made prior to the time the polls open on election day must be posted at the main early voting polling place for at least 24 hours immediately preceding the delivery.  [Secs. 87.023(b), 87.024(b)]

7. In the general election for state and county officers, if ballots are to be delivered before election day, the early voting clerk must notify the county chair of each political party with a nominee on the ballot at least 24 hours before the first delivery is made.  [Secs. 87.023(c), 87.024(c)]

**SECTION C. RECEIPT FOR DELIVERY**

1. Upon delivery of a sealed early voting ballot box, the presiding judge of the early voting ballot board must inspect the box to determine whether the seals on the box are intact, and whether the numbers on the seals

9

correspond to the numbers indicated on the record of serial numbers prepared by the early voting clerk. [Secs. 87.062(b), 127.068]

2. If the seals are intact and the numbers match, the presiding judge should accept the ballot box and so indicate on the receipt.

3. If the seals are not intact or the numbers do not match, the presiding judge should accept the ballot box, but note any discrepancies on the receipt and in his or her records.

## SECTION D. SECURITY OF EARLY VOTING BALLOTS

1. The voted early voting ballots must be secured from the last day of voting by personal appearance at a polling place until the day the ballots are counted.  [T.A.C. Sec. 81.34]

   a. If the early voting ballot board convenes before election day, the presiding judge shall, upon each adjournment of the board, lock and seal each ballot box prior to delivering the boxes back to the custodian of records.  The judge shall complete a ballot box security form indicating each serial number used to seal each box.  The form shall be signed by the judge and another early voting ballot board member who has witnessed the procedure.  In a general election for state and county officers, the early voting ballot board member must be from a different political party than the judge.  The custodian of records shall also sign the form.

   c. The presiding judge shall deliver the key(s) used to lock the ballot box(es) to the custodian.  The key shall be retained by the authority designated in accordance with Section 66.060(a) of the Code:

       (1) the sheriff for an election ordered by the governor or county authority or *a primary election*, except that in a year when the office of sheriff is on the ballot, the key shall be delivered to the county judge. When both these offices are on the ballot, the key shall be delivered to the county auditor or to a designated member of the commissioners court who is not on the ballot and who is appointed by the court, if the county does not have an auditor;

       (2) the chief of police or city marshal for an election ordered by a city authority; or

       (3) the constable of the justice precinct in which the office of the political subdivision is located, or if the office of constable is vacant, the sheriff of the county in which the political subdivision is located if the election is ordered by an authority of a political subdivision other than a city or county.

   c. Upon reconvening the ballot board, the presiding judge shall ensure that each ballot box is intact.  The presiding judge shall follow these procedures each day except upon final delivery to the custodian of records.

   e. If it is impracticable for the ballot board judge to deliver the ballot boxes each day upon adjournment, the authority conducting the election shall submit an alternate security procedure to the Secretary of State for approval.

SOS_000441

# CHAPTER 4

## QUALIFYING BALLOTS VOTED BY MAIL OR VOTED USING MAIL PROCEDURES

### SECTION A. TYPES OF EARLY VOTING BALLOT APPLICATIONS

The early voting ballot board may encounter several types of applications for early voting ballots. There is not only one form that may be used. They include:

1. The "Application for Ballot by Mail" prescribed by the Secretary of State. [Secs. 84.001(a), 84.011]

2. An informal application for a ballot by mail, which is a written request by the applicant that is not made on the official application form prescribed by the Secretary of State. This application must comply with the statutory requirements for applying for a ballot by mail. [Sec. 84.001(c)]

3. The "Application for Limited Ballot" prescribed by the Secretary of State. [Sec. 112.005]

4. The "Federal Post Card Application" (FPCA) used by military and overseas citizen voters. [Sec. 101.003]

5. The "Application for Presidential Ballot" prescribed by the Secretary of State (only applicable in elections held in November of the presidential election year). [Sec. 113.003]

6. The "Application for Emergency Late Ballot Due to Sickness or Physical Disability" prescribed by the Secretary of State. [Sec. 102.002]

7. The "Application for Emergency Late Ballot Due to Death" prescribed by the Secretary of State. [Sec. 103.002]

8. The "Affidavit for Voting at Main Early Voting Place on Election Day" prescribed by the Secretary of State for voting by disabled voters when electronic voting equipment is being used at the precinct polling place. [Sec. 104.002]

### SECTION B. VALID REASONS FOR VOTING EARLY BY MAIL

Only the following persons may vote early by mail:

1. Persons who are 65 years of age or older on election day. [Sec. 82.003]

2. Persons who have a sickness or physical condition that prevents them from appearing at the polling place on election day without a likelihood of needing personal assistance or injuring their health. Expected or likely confinement for childbirth on election day is sufficient cause to entitle a voter to vote early by mail on the ground of disability. [Sec. 82.002]

3. Persons who are confined in jail at the time the application is submitted must be either:

   a. serving a misdemeanor sentence that ends on or after election day; or

   b. pending trial or appeal after denial of bail or if release on bail is unlikely until after election day. [Sec. 82.004]

4. Persons who expect to be absent from the county on election day and during regular early voting hours for that part of the period for early voting remaining after the application is made. [Sec. 82.001] If this reason for voting early is checked, the address to which the ballot was mailed must be an address outside the county. [Sec. 86.003(c)(1)]

5. Persons who are certified for participation in the address confidentiality program.

   a. An application for ballot by mail submitted by a person eligible under Section 82.007 must include:

11

SOS_000442

     i.  the name and address at which the person is registered to vote;

    ii.  the substitute post office box designated by the attorney general for the person's use in place of the true residential address; and

   iii.  an indication for each election for which the person is applying for a ballot.

  b.  The information on an application for ballot by mail submitted by a voter related to the **address at which the voter is registered is confidential**, except that it must be disclosed if requested by a law enforcement agency or required under a court order. This application is good for 3 years.

## SECTION C. QUALIFYING EARLY VOTING BALLOTS VOTED BY MAIL

1.  Each jacket envelope will contain:

  a.  an application for an early ballot to be voted by mail (or one of the other application procedures in Section A above that uses mail procedures) [Secs. 86.011(b), (c)];  If FPCA was submitted, jacket envelope must include a copy of the FPCA and the signature cover sheet.

  b.  the envelope in which the application was delivered to the early voting clerk, if applicable; and

  c.  the carrier envelope, which will contain:

    **--** a ballot envelope with the ballot inside; and

    **--** statements of residence, copy of identification, or other requested items, if applicable. [Sec. 86.002]

2.  Remove the application and carrier envelope from the jacket envelope.

3.  Check the voter's application to be sure that it states a legal ground for voting early by mail (See Section B above).  [Sec. 87.041(b)(3)]

4.  If the reason for voting early by mail is absence from the county, the application must show an address outside the county to which the ballot was mailed.  [Sec. 87.041(b)(5)]

  **NOTE**:  If the application was submitted after the period for early voting by personal appearance began, the application must show that the voter was absent from the county when the application was submitted.  A voter checking expected absence from county and providing an out of county address on the official application is sufficient.

5.  If the grounds for voting by mail is either being 65 or over, or disability, and the applicant has not provided his or her official mailing address as shown on the list of registered voters as the address for mailing his or her ballot, the address provided must be that of a hospital, nursing home, other long term care facility, retirement center, or the address of a relative within the second degree of affinity or third degree of consanguinity with whom the applicant is living.  [Sec. 86.003(c)(3)]

6.  If the reason for voting early by mail is confinement in jail, the address to which the balloting materials must be addressed is that of the jail facility or a relative within the second degree of affinity or third degree of consanguinity.  [Sec. 86.003(c)(2)]

7.  Check to make sure that the address to which the ballot was mailed is one of the following:

  a.  the voter's residence or mailing address indicated on the voter's registration record;

  b.  the facility that the voter is residing at if the voter has indicated on his or her application to vote by mail that the reason for voting is 65 years of age or older or disability and has provided a mailing address that does <u>not</u> match the voter's  official residence or mailing address, the facility must be one of the following:

    (1) hospital;

SOS_000443

(2) nursing home or long-term care facility;

(3) retirement center; or

(4) relative that is related to the voter by 2nd degree of affinity (by marriage) or the 3rd degree of consanguinity. Relatives include: parent, child, brother, sister, grandparent, grandchild, great-grandchild, great-grandparent, uncle, aunt, nephew, niece, spouse, spouse's parent, son-in-law, daughter-in-law, brother's spouse, sister's spouse, spouse's brother, spouse's sister and spouse's grandparent.

c.  the jail facility, if the reason for voting by mail is confinement in jail, or the address of a relative listed in Section C. 7. b. above.

d.  an address outside of the county, if the reason for voting by mail is expected absence from the county.

e.  the voter's new address as provided on the enclosed statement of residence if the voter has moved within the county but has failed to update his address with the county voter registrar and is having a ballot mailed to a new residence address. [Secs. 84.002, 86.002, 86.003, 87.041

**NOTE**: Please note that all though you will be looking to ensure that the ballot was mailed to an address, you will not be determining where the voter mails back their ballot. You should not be looking at the delivery postmark.

8.  Check the list of registered voters to ensure applicant is a registered voter. [Sec. 87.041(b)(4)]

**Note:** Due to various address confidentiality laws, some voters will not have a residential address next to their name on the list of registered voters.

a.  If an "S" notation appears next to a voter's name on the list of registered voters, or if the residence address on the application for ballot by mail does not match the residence address on the list of registered voters, the carrier envelope will be stamped "STATEMENT ENCLOSED." The voter's ballot may NOT be accepted UNLESS a completed, signed Statement of Residence is included in the carrier envelope. If a completed Statement of Residence is not enclosed, the ballot must be rejected. [Sec. 87.041(b)(6)]

b.  If an "ID" notation appears next to a voter's name on the list of registered voters, the voter's ballot may NOT be accepted unless the voter encloses a copy of one of the documents listed below that establishes the voter's identity:

(1) Texas Driver's License issued by the Department of Public Safety ("DPS");

(2) Texas Election Certificate issued by DPS;

(3) Texas Personal Identification Card issued by DPS;

(4) Texas Handgun License issued by DPS;

(5) United States Military Identification Card containing the person's photograph;

(6) United States Citizenship Certificate containing the person's photograph; or

(7) United States Passport.

**NOTE:** For voter's who are between 18-60 the above ID's may be expired for up to 4 years. For a voter who is 70 years of age or older the above ID may be more 4 years old. Please note some ID's do not have expiration dates such as a Texas Identification Cards for persons aged 60 or older may be permanent and marked "INDEF;"Texas Election Identification Certificates (EIC) for persons aged 70 or older are permanent cards; Some military ID cards are permanent, including Uniformed Services ID cards and Veterans Affairs ID cards. These

13

SOS_000444

are usually marked "INDEF;" and Certificates of Naturalization and Certificates of Citizenship do not expire.

**If a voter does not possess, and cannot reasonably obtain one of the above acceptable forms of photo identification, the voter may also enclose a copy of one of the supporting forms of identification listed below that establishes the voter's identity along with a signed Reasonable Impediment Declaration:**

 * copy or original of a government document that shows the voter's name and an address, including the voter's voter registration certificate (other examples of government documents include, but are not limited to: driver's licenses from other states, ID cards issued by federally recognized Native American tribes (if the ID card contains an address), DPS Receipts (without a photo), expired voter registration certificates, and, for voters aged 18-69, expired Texas DPS-issued driver licenses or personal ID cards);

 * copy of or original current utility bill;

 * copy of or original bank statement;

 * copy of or original government check;

 * copy of or original paycheck; or

 * copy of or original of (a) a certified domestic (from a U.S. state or territory) birth certificate or (b) a document confirming birth admissible in a court of law which establishes the voter's identity (which may include a foreign birth document).

**NOTE: The address on either a supporting form of ID or an acceptable photo identification does not need to match the address on the list of registered voters.**

**\*If a voter does not have a valid form of photo identification, they may apply for a free election identification certificate at their local Texas Department of Public Safety office. Reminder: (a) if a voter does not possess one of the seven (7) acceptable forms of photo identification, which, for voters aged 18-69, is not expired for more than four years, or, for voters aged 70 and older, may be expired for any length of time but is otherwise valid, and the voter can reasonably obtain one of these forms of identification or (b) if the voter possesses, but did not bring to the polling place, one of the seven forms of acceptable photo identification, which, for voters aged 18-69, is not expired for more than four years, or, for voters aged 70 and older, may be expired for any length of time but is otherwise valid, or (c) if the voter does not possess one of the seven forms of acceptable photo identification, which, for voters aged 18-69, is not expired for more than four years, or, for voters aged 70 and older, may be expired for any length of time but is otherwise valid, could otherwise not reasonably obtain one, but did not bring a supporting form of identification to the polling place; and the voter does not have a permanent disability exemption indicated on their voter registration certificates, the voter may cast a provisional ballot at the polls.**

**Exemption**:  Voters with a disability may apply with the county voter registrar for a permanent exemption. The application must contain written documentation from either the U.S. Social Security Administration evidencing the applicant's disability, or from the U.S. Department of Veterans Affairs evidencing a disability rating of at least 50 percent. In addition, the applicant must state that he or she has no valid form of photo identification. Those who obtain a disability exemption will be allowed to vote by presenting a voter registration certificate reflecting the exemption.

**Provisional Voting:** If a voter (a) does not possess one of the seven (7) acceptable forms of photo

14

SOS_000445

identification, which, for voters aged 18-69, is not expired for more than four years, or, for voters aged 70 and older, may be expired for any length of time but is otherwise valid, and the voter can reasonably obtain one of these forms of identification or (b) possesses, but did not bring to the polling place, one of the seven forms of acceptable photo identification, which, for voters aged 18-69, is not expired for more than four years, or, for voters aged 70 and older, may be expired for any length of time but is otherwise valid, or (c) if the voter does not possess one of the seven forms of acceptable photo identification, which, for voters aged 18-69, is not expired for more than four years, or, for voters aged 70 and older, may be expired for any length of time but is otherwise valid, could otherwise not reasonably obtain one, but did not bring a supporting form of identification to the polling place; and the voter did not present a voter registration certificate with a permanent disability exemption indicated on their voter registration certificate, the voter may cast a provisional ballot at the polls.

The voter will have six (6) calendar days after election day (1) present to the voter registrar an acceptable form of photo identification; (2) if the voter does not possess and cannot reasonably obtain one of the acceptable forms of photo identification, execute a Reasonable Impediment Declaration and present to the voter registrar an acceptable form of supporting identification; (3) complete one of the curing affidavits (consistent religious objection to being photographed or natural disaster exception), if applicable or (4) qualify for a permanent disability exemption, if applicable.

c. An application from a voter who is accepted into the Address Confidentiality Program must also include their substitute P.O. Box designated by the Attorney General and an indication for each election for which the person is applying for a ballot.  This application is good for 3 years, unlike a regular ABBM application.

d. Certain persons may vote even though they are not registered to vote in your county and their names do not appear on your list of registered voters.  They are:

(1) Persons applying on Federal Post Card Applications.  The FPCA may be used by persons who are registered voters of your county or who are not registered voters of your county since the federal post card application acts as a temporary registration pending permanent voter registration status (see note below).  [Sec. 101.001]

(2) Persons applying for limited ballots.  A person who moves from one county to another, and the person is either still registered in the former county of residence or was registered in the former county of residence when the person applied to register in the new county of residence.  He or she may vote in their new county of residence, on offices or propositions that are on the ballot in both their new county and the county of his or her former residence.  [Sec. 112.002]

f. If the voter's name does not appear on the list of registered voters and he or she is not categorized in the group of voters listed in "d" above, the presiding judge must refer to the registration correction list, if provided, to see if the voter's name appears on that form.

## SECTION D: QUALIFYING SIGNATURES FOR THE SIGNATURE VERIFICATION COMMITTEE

1. Check to see that the certificate on the carrier envelope was properly executed.  The certificate is the statement the voter signs and may include portions filled out by assistants or witnesses.  [Sec. 87.041(b)(1)

15

2.  Check the signatures of the applicant on the application and on the carrier envelope to confirm that both signatures have been executed by the voter, unless either document was signed by a witness.  [Sec. 87.041(b)(2)]

3.  A voter may use different witnesses/assistants on their application for ballot by mail and on their certificate. If a voter uses a witness, you would not compare signatures and the ballot should be accepted pending all other qualifications.

4.  Section 87.041(e) provides that the Board/Committee may compare signatures with any two or more signatures of the voter made within the preceding six years and on file with the voter registrar, county clerk or elections administrator.  These additional signatures may be used to confirm that the signatures are either those are not those of the same person.   SB 5 (85th Legislature, 1, 2017) This bill removed the prohibition against the committee using the registration application signature to determine that the signatures are not those of the same person. The bill authorizes the early voting ballot board or signature verification committee to compare a voter's signature on a ballot application or carrier envelope certificate with two or more signatures of the voter made within the preceding six years and on file with the county clerk, in addition to the board's existing authority to make such a comparison with signatures on file with the voter registrar, to determine whether the signatures are those of the same person. The bill removes the prohibition against the board using such signatures on file to determine that the signatures are not those of the same person. The board or the committee may now use the signatures to determine if they are or if they are not that of the same person.

5.  If there is no signature on the carrier envelope (by voter or witness), the ballot must be rejected (see Section F of this chapter for disposition of rejected ballots).  [Sec. 87.041(d)] If the signature is not on the certificate but elsewhere on envelope, our office has said the signature is valid.

**-- EXCEPTIONS**:

a.  If the voter was unable to sign his or her name, the application and/or carrier envelope must each be signed by a witness.  Different people may have witnessed the voter's mark on the application and on the carrier envelope.  If the voter was unable to sign the application and/or carrier envelope himself or herself and one or both were signed by witnesses, then the signature will not be compared.  [Sec. 87.041(b)(2)]

b.  If the voter applied for an early voting ballot on the Application for Late Emergency Ballot Due to Death or the Affidavit for Voting at Early Voting Place on Election Day, the certificate on the carrier envelope does not need to be signed by the applicant.  The carrier envelope will have a notation "103" or "104" written on it by the early voting clerk when the voter applies under these procedures.  [Secs. 103.004(c), 104.004(c)]

   **NOTE:**   A voter's witnessed application or witnessed carrier envelope are not invalid merely because there is no explanation of the voter's inability to make his or her mark. A ballot may not be rejected merely because the voter signed either the application or the carrier envelope and the other document was witnessed.

c.  If the voter applied for a ballot on the Application for Late Emergency Ballot Due to Sickness or Disability, the name, address, and signature of the representative who delivered the application to the early voting clerk must appear on the application and on the carrier envelope containing the voted ballot.  The same representative who submitted the voter's application must deliver the voter's ballot back to the early voting clerk, and the same representative's name must appear on both the application and the carrier envelope.  [Secs. 102.002, 102.004(b), 102.006(a), (b)]

d.  Applicants applying for a limited ballot or a presidential ballot also known as a restricted ballot must have two applications if voting this procedure by mail (i.e., the application for early ballot by

16

SOS_000447

mail and the application for the "restricted" ballot) enclosed in the jacket envelope.   [Secs. 111.004, 112.005, 113.003]

6.  **Signatures that have been either accepted or rejected need to be separated. If the committee has determined that the signatures are not those of the same person, the board may make a determination that the signatures are those of the same person by a majority vote of the board's membership.**

## SECTION E. ACCEPTED BALLOTS

1.  If the applicant has met all the requirements discussed above, the ballot must be accepted for voting.

2.  Open the carrier envelope without defacing the certificate on the carrier envelope and remove the ballot envelope.  [Sec. 87.042(a)]

    a.  A ballot is considered valid even if it is not enclosed in a ballot secrecy envelope; the voter simply loses his/her secrecy of the votes cast.  [Secs. 86.005(d), 87.042(d)]

    b.  If the front of the carrier envelope has "Statement Enclosed" stamped on it, check to see that the statement of residence form is enclosed.  If the applicant's name appears on the list of registered voters with an "S" notation beside it, the applicant is required to complete the statement of residence prior to voting.  If the completed, signed statement is not enclosed, the ballot must be rejected.  (See Section E of this chapter for disposition of rejected early voting ballots.)  [Sec. 87.041(d)]

    NOTE: It is the position of the Office of the Secretary of State that the lack of a statement of residence form included in the envelope of an FPCA voter does not result in a rejected ballot since the FPCA would act as a temporary registration that would prevail the residence address provided on any previous registration applications already on file.

    c.  If the applicant's name appears on the list of registered voters with an "ID" notation beside it, an applicant who possesses an acceptable form of photo identification is required to submit a copy of acceptable photo identification (or, if the voter does not possess, and cannot reasonably obtain an acceptable form of photo ID, a signed Declaration of Reasonable Impediment (see Form 5-22a) and an acceptable form of supporting documentation, or, if the voter has a voter registration certificate with an "E" notation on it, that), along with their mail ballot, unless the voter checks one of the "Exemptions (If Applicable" boxes on Form 5-22a.

3.  Place the unopened ballot envelope in a ballot box or other safe container.  [Sec. 87.042(b)]

4.  Enter the voter's name on the poll list for early voters voting by mail or list for voters using other mail procedures such as limited ballot.  [Secs. 87.041(c); 102.008; 103.005, 104.006]

    a.  If the voter is an FPCA voter, place a check in the "FPCA" column on the poll list next to the voter's name.  [Sec. 101.004]

    b.  If the voter applied for a limited ballot, place a check in the column marked "Limited Ballot" on the poll list next to the voter's name.  [Sec. 111.008]

    c.  In presidential general elections, if the voter applied for a presidential ballot only, place a check in the column marked "Pres. Ballot" on the poll list next to the voter's name.  [Sec. 111.008]

    d.  If the voter is an overseas citizen voter eligible only for a federal ballot, place a check in the column "Overseas Citizen" on the poll list next to the voter's name.  (Only applicable in *primary* and general elections for state and county officers since these voters are limited to federal offices only.)  [Sec. 111.008]

17

SOS_000448

5. Place the application for the early voting ballot and the envelope that was used to mail the application (if applicable), the carrier envelope, and any accompanying papers back into the jacket envelope. (If the jacket envelope is to be used in a subsequent election, the early voting clerk may provide another envelope to be used in lieu of the jacket envelope.) Place any affidavits, statements of residence, and copies of identification in Envelope No. 4 to be delivered to the Voter Registrar. [Sec. 87.044(a)]

6. At least 10 early voting ballots voted by mail must be qualified before the ballots may be counted. Ballots may be removed for manual, hand counting at any time when there are at least 10 ballot envelopes containing ballots that have been qualified in the ballot box (or other safe container). If ballots are to be counted by electronic equipment, the general custodian of election must transmit the accepted by mail ballots to the presiding judge of the central counting station in a locked and sealed ballot box or other container approved by the Secretary of State.

## SECTION F. REJECTED BALLOTS

1. If the application and carrier envelope do not meet the requirements discussed above, the ballot must be rejected and may not be counted. [Sec. 87.041(d)]

2. Write the word "rejected" on the carrier envelope. [Sec. 87.041(d)]

3. Write the word "rejected" on the corresponding jacket envelope. [Sec. 87.041(d)]

4. Place the unopened carrier envelopes containing rejected ballots in the large envelope or container marked "Rejected Early Voting Ballots." [Sec. 87.043(b)]

5. The "Rejected Early Voting Ballot" envelope must be sealed and signed by the presiding judge, and the date and nature of the election must be written on the envelope. More than one envelope may be used if necessary. Record the number of rejected ballots, which are placed in the envelope for rejected ballots. [Secs. 87.043(a), (b)]

6. If the ballot was rejected after the carrier envelope was opened, the presiding judge should make a note on the carrier envelope of the reason the carrier envelope was opened and then rejected.

7. Place the application, the envelope used to mail the application to the early voting clerk (if applicable), and any accompanying papers or affidavits in the corresponding jacket envelope. (If the jacket envelope is to be used in a subsequent election, the early voting clerk may provide another envelope to be used in lieu of the jacket envelope.) [Sec. 87.044(a)]

NOTE: The Early Voting Ballot Board judge must deliver written notice to the voter of the reason for the rejection of his or her ballot no later than the 10th day after election day. [Sec. 87.0431] If this is not done within 10 days and the ballots have been sent back and placed in a ballot box, a court order will be needed to reopen the ballot box. Please contact our office for sample court orders if needed.

18

SOS_000449

# CHAPTER 5

## COUNTING HAND-COUNTED PAPER BALLOTS

### SECTION A. ESTABLISHING THE COUNTING TEAMS

1.  There may be more than one counting team to tally the early voting ballots.  [Secs. 81.002, 65.001]

2.  Each counting team must consist of two or more early voting ballot board members.  [Secs. 81.002, 65.001]

    a.  One member will be designated the reader.

    b.  The reader may also keep a tally list.

    c.  If there are only two members on a team, one member will keep two tally lists, and the reader will keep one tally list in addition to reading the ballots.

3.  If there is more than one counting team, after all ballots have been counted, the votes for each candidate and/or proposition must be added together with the tallies of the other counting teams, and the totals must be placed on the return sheet.

4.  A member of a counting team may not be replaced after the vote tallying is begun unless each existing discrepancy among the three tally lists is corrected before the replacement is made.  [Secs. 81.002, 65.006(a)]

5.  If a counting member is replaced, he or she must certify the accuracy of the tally list as of the time he or she was replaced.  [Secs. 81.002, 65.006(b)]

### SECTION B. OPENING THE BALLOT BOX CONTAINING HAND-COUNTED PAPER BALLOTS

> **NOTE**: ELECTRONIC BALLOTS CAST IN PERSON ARE NOT TABULATED BY THE EARLY VOTING BALLOT BOARD, BUT RATHER AT A CENTRAL COUNTING STATION.

1.  Open the double-locked ballot box containing the ballots voted by personal appearance.  [Sec. 87.062]

    > **NOTE**:  The early voting clerk will deliver one key to the ballot box when he or she delivers the ballots. The custodian of the second key will deliver the second key at the time specified by the early voting ballot board's presiding judge.  [Secs. 87.021(1), 87.025]

2.  After the presiding judge opens the ballot box, the judge shall remove any provisional ballots and verify the number of provisional ballots in the ballot box, which is reflected on the Early Voting List of Provisional Voters.

3.  The provisional ballots shall be prepared for delivery to the voter registrar and placed in a closed and sealed box for delivery by the general custodian of election records to the voter registrar.  [T.A.C. Sec. 81.174]

4.  All early voting ballots must be sorted by precinct before they are counted so that a separate total of early voting votes cast in each precinct may be obtained.  [Sec. 87.1231]

5.  For political subdivisions using hand-counted paper ballots, early voting ballots cast by personal appearance may be counted while the ballots cast by mail are being qualified if the early voting ballot board consists of enough members.

6.  When at least 10 early voting ballots cast by mail have been qualified and placed in the ballot box or other container, the ballot envelopes may be removed from the box or container, opened, the ballots removed, the ballot envelopes discarded, and the ballots counted.  This process may be repeated any time there are at least 10 ballot envelopes in the box or container.  [Sec. 87.062(a)]

19

SOS_000450

**NOTE**:   If there is more than one ballot in a ballot envelope, neither ballot may be counted.   The presiding judge must make notation on the back of each ballot of the reason the ballot was not counted.   These ballots are then placed with the voted ballots in the early voting ballot box. [Sec. 65.010(a)(2)]

## SECTION C. RULES GOVERNING THE COUNTING PROCEDURE

1.   The ballots must be counted separately by precinct.  [Sec. 87.1231]

2.   Three original tally lists are required for each precinct.   [Secs. 65.004, 87.1231]   A separate page of the same tally book may be used for each precinct's tally list.   These tally lists should be completely filled out, and include the following:

--   Names and offices of candidates; and/or

--   Propositions;

--   Date;

--   Precinct number;

--   Type of election;

--   Name of presiding judge; and

--   Signature of the person keeping the tally list.

3.   Before the counting begins, the early voting Ballot Box should be inspected to ensure that it is empty.   It should then be locked and remain locked (except as authorized by the presiding judge), and within view of the counting officials.  [Sec. 65.003(c)]

4.   No marks should be made on any ballot by an election official, except that if a ballot is not counted because the judge determines it was not provided by the early voting clerk or because two or more ballots were folded together, an election official must indicate on the back of the ballot the reason for not counting it. [Sec. 65.010(c)]

## SECTION D. THE COUNTING PROCEDURE

1.   The reader must read and distinctly announce to the officials keeping the tally lists each name of a candidate or proposition for which there is a vote.  [Sec. 65.005(a)]

2.   The intent of the voter in marking the ballot may be determined by:

a.   a distinguishing mark adjacent to the name of a candidate or voting choice associated with a proposition;

b.   an oval, box, or similar marking clearly drawn around the name of a candidate or a voting choice associated with a proposition;

c.   a line drawn through:

(1)   the names of all candidates in a manner that indicates a preference for the candidate not marked if the names of the candidates not marked do not exceed the number of persons that may be elected to that office;

(2)   a voting choice associated with a proposition in a manner that clearly indicates a preference for the other voting choice associated with the proposition; or

d.   any other evidence that clearly indicates the intent of the voter in choosing a candidate or deciding on a proposition.  [Sec. 65.009]

20

SOS_000451

3.  As each vote is read, a tally mark is made by the corresponding name or number on the tally lists.  [Sec. 65.005(a)]

4.  The tally lists should be compared periodically and any errors or discrepancies corrected.  [Sec. 65.005(b)]

5.  When the reader has completely read and announced all the votes on the ballot, he or she deposits the ballot in the locked early voting ballot box.

6.  Any voted ballot that is not counted is also deposited in the box containing the counted ballots.  [Sec. 65.012(b)]

   **NOTE**: A ballot that was not counted should contain a clear notation on the back that it was not counted to avoid an accidental counting during a recount, etc.  [Sec. 65.010(c)]

## SECTION E. RULES FOR COUNTING MANUALLY-CAST OR HAND-COUNTED OPTICAL SCAN BALLOTS

(See generally, Chapter 65 and Secs. 64.003-64.006)

1.  The voter should mark his or her ballot by placing an "X" or other mark in the square beside each candidate, proposition, or party column for which he or she wishes to vote (See Figure 1).  [Sec. 64.003]

| (Primary Election Ballot) |
| --- |
| For Governor |
| ☐ Candidate A |
| ☐ Candidate B |
| *☒ Candidate C |

| (General Election Ballot) | | | | | |
| --- | --- | --- | --- | --- | --- |
| Candidates for | ☐ PARTY A | ☐ PARTY B | ☐ PARTY C | ☐ Independent | ☐ Write-In |
| Governor | ☐ Candidate A | ☐ Candidate B | *☒ Candidate C | | |

**Figure 1.  Illustrations of marked ballots.**
**(The asterisks indicate the candidates for whom the ballot is counted.)**

2.  Election officials shall not refuse to count a ballot because the voter marked his or her ballot by scratching out the names of candidates for whom, or the statement of propositions for which, he or she did not want to vote (See Figure 2). [Sec. 65.009(b)]

| Candidates for | ☐ PARTY A | ☐ PARTY B | ☐ ~~PARTY C~~ | ☐ INDEPENDENT | ☐ WRITE-IN |
| --- | --- | --- | --- | --- | --- |
| First Office | ☐ ~~Candidate~~ | ☐ ~~Candidate~~ | ☐ ~~Candidate~~ | ☐ ~~Candidate~~ | ☐ _____ |
| Second Office | * ☐ Candidate | ☐ ~~Candidate~~ | | ☐ ~~Candidate~~ | ☐ _____ |
| Third Office | * ☐ Candidate | ☐ ~~Candidate~~ | | ☐ ~~Candidate~~ | ☐ _____ |
| Fourth Office | * ☐ Candidate | ☐ ~~Candidate~~ | | | |
| Fifth Office | * ☐ Candidate | | | | |
| Sixth Office | * ☐ Candidate | | | | |
| Seventh Office | * ☐ Candidate | ☐ ~~Candidate~~ | | | |

21

SOS_000452

| Eighth Office | * ☐ Candidate | ☐ ~~Candidate~~ | ☐ ~~Candidate~~ | |
|---|---|---|---|---|
| Etc. | | | | |

**Figure 2.  Illustration of the scratch method.**
**(The asterisks indicate the candidates for whom the ballot is counted.)**

3.  **Figure 2.  Illustration of Guideline No. 1.**
    **Two party squares marked and individual candidates also marked in one or more columns.**
    **(The asterisks indicate the candidates for whom the ballot is counted.)**

| Candidates for | ☐ PARTY A | ☐ PARTY B | ☐ PARTY C | ☐ INDEPENDENT | ☐ WRITE-IN |
|---|---|---|---|---|---|
| First Office | * ☒ Candidate | * ☒ Candidate | ☐ Candidate | ☐ Candidate | ☐ _____ |
| Second Office | ☐ Candidate | * ☒ Candidate | | ☐ Candidate | ☐ _____ |
| Third Office | * ☒ Candidate | Candidate | | ☐ Candidate | ☐ _____ |
| Fourth Office | ☐ Candidate | ☐ Candidate | | | |
| Fifth Office | ☐ Candidate | | | | |
| Sixth Office | * ☒ Candidate | | | | |
| Seventh Office | ☐ Candidate | ☐ Candidate | | | |
| Eighth Office | ☐ Candidate | * ☒ Candidate | | ☐ Candidate | |
| Etc. | | | | | |

Guideline No. 1.  Where more than one candidate square is marked, those votes may not be tallied, and the ballot may be counted only for candidates individually marked, if any. (If there are no candidates individually marked, no portion of the ballot is counted.) [Sec. 65.007(d)]

b.  An entire ballot cannot be voided if the intent of the voter can be determined for any one race or proposition on the ballot. [Sec. 65.009(c)]

c.  <u>An individual vote</u> is not counted in the following situations:

(1)  <u>An individual vote</u> is not counted if the intent of the voter cannot be determined. [Sec. 65.009(c)]

(2)  <u>An individual vote</u> is not counted if the voter marked more than one candidate for one race ("overvote").

In municipal, school board, or other political subdivision elections where it is possible to vote for more than one candidate in the same race, a ballot may not be counted if a voter has marked more candidates than are to be elected. [Sec. 65.011]   A ballot is not invalid if the voter has marked fewer candidates than the number to be elected ("undervote"). [Sec. 65.009]

VOTE FOR NONE, ONE, TWO, OR THREE
☒ Candidate
☒ Candidate

22

SOS_000453

☐ Candidate

☐ Candidate

☒ Candidate

☒ Candidate

**Figure 3.  Illustration of overvoting; voter has voted for more candidates than are to be elected.  (No portion of this ballot is counted.)**

VOTE FOR NONE, ONE, TWO, OR THREE

\*☒ Candidate

☐ Candidate

\*☒ Candidate

☐ Candidate

☐ Candidate

☐ Candidate

**Figure 4.  Illustration of undervoting; voter has voted for fewer candidates than are to be elected.  (A vote is counted for each candidate receiving a vote.)**

(3)  <u>An individual vote</u> is not counted in the following write-in voting situations:

(a)  The voter used a sticker or rubber stamp with the name of a write-in candidate printed or written on it. [Sec. 65.008(b)]

(b)  *The election is the primary election for the office of precinct chair or county chair*, a November general election, city council officer elections, an independent or common school district trustee election, special elections for state representative and state senator, or other elections where declaration of write-in is required and the voter writes in the name of a person whose name is not on the list of declared write-in candidates.  [Secs. 144.006, 146.031(d), 146.054, 146.055, 146.082, 171.0231 Election Code; Secs. 11.056(c), 11.304, 130.081, 130.0825, Education Code; Sec. 285.131, Health and Safety Code; Secs. 326.0431 & 326.0432, Local Government Code; Secs 36.059, 49.101, 63.0945, Water Code]

(c)  *The election is a primary and the voter writes in a vote for a candidate for public office; only write-in votes for declared candidates for party officer of county chair and precinct chair may be counted. [Sec. 172.112]*

(d)  The election is a runoff election and a voter writes in any candidate's name; no write-in votes may be counted at a runoff election. [Sec. 146.002]

(e)  The voter voted for the presidential candidate of one party and the vice-presidential candidate of another party or voted for the presidential or vice-presidential candidate of one party and wrote in the name of a candidate he or she desires to vote for instead of that candidate's running mate. [Sec. 192.037]

d.  A <u>ballot</u> is not counted in the following situations:

(1)  A <u>ballot</u> is not counted if the intent of the voter cannot be determined. [Sec. 65.009] (See Figure 8).

| Candidates for | ☐ PARTY A | ☐ PARTY B | ☐ PARTY C | ☐ INDEPENDENT | ☐ WRITE-IN |
|---|---|---|---|---|---|

23

SOS_000454

| | | | | | |
|---|---|---|---|---|---|
| First Office | ☒ Candidate | ☐ Candidate | ☒ Candidate | ☐ Candidate | ☐ _____ |
| Second Office | ☒ Candidate | ☒ Candidate | | ☐ Candidate | ☐ _____ |
| Third Office | ☐ Candidate | ☒ Candidate | | ☒ Candidate | ☒ *John Smith* |
| Fourth Office | ☒ Candidate | ☒ Candidate | | | |
| Fifth Office | ☒ Candidate | | ☒ Candidate | | |
| Sixth Office | ☐ Candidate | ☒ Candidate | ☒ Candidate | | |
| Seventh Office | ☒ Candidate | ☒ Candidate | | | |
| Eighth Office | ☒ Candidate | ☒ Candidate | | ☐ Candidate | |
| Etc. | | | | | |

**Figure 5. Illustration of lack of knowledge of intent of voter.**
**(No portion of this ballot is counted.)**

(2) A <u>ballot</u> is not counted if two or more ballots are folded together in a manner that indicates they were folded together when deposited in the ballot box by the voter. [Sec. 65.010(a)(2)]

(3) A <u>ballot</u> is not counted if the ballot is not numbered or not signed by the judge and the judge determines that this ballot was not provided at the polling place. However, this ballot may be counted if the judge determines that it was provided at the polling place. [Secs. 65.010(a)(1), (b)]

(4) A provisional ballot found by an election worker not contained within the provisional voter affidavit envelope. [T.A.C. §§ 81.172-81.174]

Guideline No. 6. Where the voter marks a candidate but writes in a declared write-in, the write-in vote is counted.

| Candidates for | ☐ PARTY A | ☐ PARTY B | ☐ PARTY C | ☐ INDEPENDENT | ☐ WRITE-IN |
|---|---|---|---|---|---|
| First Office | ☐ Candidate | *☒ Candidate | ☐ Candidate | | * ☐ *John Smith* |
| Second Office | ☐ Candidate | *☒ Candidate | | | ☐ _____ |
| Third Office | ☐ Candidate | * ☐ Candidate | | | ☐ _____ |
| Fourth Office | ☒ Candidate | ☒ Candidate | | | |
| Fifth Office | ☐ Candidate | | | | |
| Sixth Office | ☐ Candidate | | | | |
| Seventh Office | ☐ Candidate | * ☐ Candidate | | | |
| Eighth Office | ☐ Candidate | * ☐ Candidate | | | |
| Etc. | | | | | |

**Figure 6. Casting a write-in vote. Illustration of Guideline No. 6.**
**(The asterisks indicate the candidates for whom the ballot is counted.)**

Guideline No. 6. Where voter fails to properly mark an "X" in the write-in box, the write-in vote may be counted if the presiding judge can determine the intent of the voter. [Secs. 52.070(e), 65.009]

## SECTION F. HANDLING THE ELECTION RETURNS FOR PAPER BALLOTS

1. Making out the returns.

SOS_000455

a. After all ballots are counted, the tally list, including separate totals for precincts, must be totaled and signed by the counting officer keeping it. If more than one officer has kept one particular list, each officer signs the list upon finishing. [Sec. 65.005(c)]

b. Total each tally list to obtain the total number of votes cast for each candidate and/or for or against each proposition. [Sec. 65.005(c)]

c. The presiding judge must make out and sign all copies of the returns. [Sec. 65.014(c)]

d. A separate return sheet must be made for each precinct. [Sec. 87.1231]

e. Election officials should also prepare a summary return sheet to show complete early voting returns for all precincts.

2. Distribution of election returns, poll lists, and tally lists.

a. There must be four copies of the returns for each precinct. [Secs. 65.014(c), 87.1231]

b. There must be three copies of the poll list (or four copies of the combination form). [Sec. 63.003(b)]

c. There must be three originals of the tally list for each precinct. [Secs. 65.004, 87.1231]

3. Five envelopes for distribution of election records are furnished with the supplies.

a. Envelope No. 1 is addressed to the presiding officer of the local canvassing authority. [Sec. 66.003(b)(1)]

-- County judge (general election for state and county officers or election held by the county).

-- *County chair (primary election).*

-- Mayor (municipal election).

-- Presiding officer of the governing board (other elections).

b. Envelope No. 2 is addressed to the general custodian of election records. [Secs. 66.001, 66.003(b)(2)]

-- County clerk or county elections administrator (general election for state and county officers, election held by the county, *primary election*).

-- City clerk or secretary (municipal election).

-- Secretary of the governing board, or if none, the presiding officer of the governing board (other elections).

c. Envelope No. 3 is addressed to the early voting ballot board judge. [Sec. 66.003(b)(3)]

d. Envelope No. 4 is addressed to the Voter Registrar. [Sec. 66.003(b)(4)]

e. *Envelope No. 5 is addressed to the County Chair.*

4. The records of the election must be distributed as follows:

a. Contents of Envelope No. 1. [Sec. 66.022]

(1) The original of the election returns of early voting ballots for each precinct.

(2) One copy of the tally list for each precinct (from each counting team, if applicable).

b. Contents of Envelope No. 2. [Sec. 66.023]

(1) A copy of the returns of the early voting ballots for each precinct and the summary return.

(2) A copy of the tally list for each precinct (from each counting team, if applicable).

25

SOS_000456

(3)  The original of the poll list of early voting voters voting by personal appearance and by mail.

(4)  The signature roster.

(5)  The precinct early voting list

(6)  An affidavits completed at the polling place.

(7)  Any certificates of appointment of poll watchers.

c.  Contents of Envelope No. 3. [Sec. 66.024]

(1)  A copy of the returns of early voting ballots for each precinct and the summary return.

(2)  A copy of the poll list of early voters voting by personal appearance and by mail.

(3)  A copy of the ballot register.

d.  Contents of Envelope No. 4. [Sec. 66.0241]

(l)  The precinct list of registered voters.

(2)  The registration correction list, if any.

(3)  Any Statements of Residence completed at the polling place or by mail or copies of identification submitted by mail.

(4)  List of "ID" Voters.

(5)  Copy of Combination Form, if used instead of individual affidavits.

e.  *Contents of Envelope No. 5.*

--  *Original of the Statement of Compensation, in a primary election.*

f.  Contents of early voting ballot box. [Sec. 66.025]

(1)  The voted ballots.

(2)  A copy of the early voting returns for each precinct and the summary return.

(3)  A copy of the tally list for each precinct.

(4)  A copy of the poll list of early voters voting by personal appearance and by mail.

5.  Manner and time of delivery of records.

a.  The presiding judge must deliver Envelope No. 1 in person to the presiding officer of the local canvassing authority, or if that officer is unavailable, to the general custodian of election records. [Sec. 66.051(a)]

b.  The presiding judge must deliver Envelope No. 2 and Ballot Box No. 3, the rejected ballot envelope, the jacket envelopes containing the carrier envelopes and applications, and all unused supplies in person to the general custodian of election records. [Sec. 66.051(b)]

c.  The presiding judge retains Envelope No. 3. [Sec. 66.051(c)]

d.  The presiding judge must deliver Envelope No. 4 in person to the voter registrar, or if that officer is unavailable, to the general custodian of election records for later delivery to the voter registrar. [Sec. 66.051(d)]

e.  The judge delivers the keys to the Ballot Box to:

(1) The sheriff for an election ordered by the governor or a county authority or *for a primary election*, unless the sheriff is on the ballot, in which case the keys are delivered to the county judge. If both the sheriff and the county judge are on the ballot, the keys are delivered to the county auditor, or, if there is no county auditor, to a member of the commissioners court, named by the court, who is not on the ballot. [Sec. 66.060(a)(1)]

(2) The chief of police or city marshal for an election ordered by a city authority. [Sec. 66.060(a)(2)]

(3) The constable of the justice precinct in which the governing body's office is located, or if the constable's office is vacant, to the sheriff of the county, for an election ordered by a political subdivision other than a county or city. [Sec. 66.060(a)(3)]

f.  *Envelope No. 5 is delivered to the County Chair.*

g.  Time.

(1) Records must be delivered to the appropriate authority immediately after the returns are completed. [Secs. 66.053(a), 87.063]

(2) If the judge determines that the ballots will not be counted in time to permit delivery of the records by 2:00 a.m. of the day following the election, he or she must notify the general custodian of election records by telephone between midnight of election day and 1:00 a.m. of the following day of:

-- The vote totals tallied for each candidate and for and against each measure at the time of notification.

-- The expected time of finishing the count. [Secs. 66.053(b), 87.063]

(3) In every election, the early voting ballot board records must be delivered to the appropriate authorities not later than 24 hours after the polls close. [Secs. 66.053(c), 87.063]

6.  At the time the early voting ballot board records are delivered, supplies shall be returned to the authority responsible for providing such supplies. The presiding judge shall follow the instructions of such authority regarding the storage or return of empty ballot boxes and their keys and other equipment. [Sec. 87.123]

## SECTION G. REPORTING EARLY VOTES

1.  The presiding judge of the Board must deliver the counted ballots, the early voting election returns, other early voting election records, and ballot box keys to the appropriate authorities. [Sec. 87.063]

2.  The early voting totals must reflect the number of early votes for each candidate or measure by election precinct. [Secs. 67.004(c), 87.1231]

27

SOS_000458

# CHAPTER 6

## EXAMINING, PREPARING, AND COUNTING VOTED OPTICAL SCAN BALLOTS

### SECTION A. PROCESSING BALLOTS COUNTED AT CENTRAL COUNTING STATION

**NOTE**:  If the ballots are to be delivered to the central counting station before the time the polls are closed on election day, the intervals during the day at which the ballots are to be delivered must be stated in the resolution, order, or other official action authorizing the early deliveries. [Sec. 127.124]

1.  The early voting clerk shall deliver the early voting ballots to the central counting station. This should include the container for the early voting electronic system ballots that are to be counted by automatic tabulating equipment at a central counting station.  This shall be done without opening the container.

2.  The early voting electronic system ballots counted at a central counting station shall be tabulated separately from the ballots cast at precinct polling places and shall be separately reported on returns. [Sec. 87.103]

3.  The general custodian of records shall post a guard to ensure the security of ballot boxes containing voted ballots throughout the period of tabulation at the central counting station. [Sec. 127.1232]

### SECTION B. DELIVERY OF BALLOT BOX.

1.  Poll watchers may accompany election officials delivering ballot container after optical scan mail ballots are qualified. [Sec. 33.060]

    If delivery is made in a vehicle, it is sufficient to allow the watchers to follow in a different vehicle and to drive in such a manner that the watchers are able to keep the delivery vehicle in sight.

2.  The officers must present the ballot box to the presiding judge of the counting station or his or her designee.

3.  The delivering officers must then exchange the ballot box for a signed receipt. [Sec. 127.068(a)]

4.  The rejected ballot envelopes, jacket envelopes containing the carrier envelopes, and any unused supplies are returned to the general custodian of election records.

SOS_000459

# CHAPTER 7

## RECONVENING EARLY VOTING BALLOT BOARD

The early voting ballot board must reconvene after the election to review and qualify provisional ballots and to qualify ballots that were cast from outside the United States on or before election day and that are received by the sixth day after election day.  The early voting clerk may determine whether or not the committee will need to reconvene after election day to verify signatures or leave that authority with the early voting ballot board. We recommend that this decision be done prior to the election day. If the authority is left with the committee we recommend that the committee coordinates with the board and the early voting clerk for delivery of the jacket envelope ballots by mail. If there is a SVC, the SVC must verify the signatures before the EVBB meets. The SVC would follow the same procedures of when they first convene.

## SECTION A. ESTABLISHING THE EARLY VOTING BALLOT BOARD TO REVIEW PROVISIONAL BALLOTS

The authority appointing the early voting ballot board may determine which members of the board will review and count the provisional ballots.  The entire ballot board is not required to be present.  A minimum of three members of the board is required to conduct the review.

1. Convening Early Voting Ballot Board.

   a. The presiding judge of the early voting ballot board may convene the board as soon as practicable after the voter registrar has completed the review of the provisional ballots, **or if the voter registrar reviews the provisional ballots in "batches" and releases completed "batches" sequentially, the presiding judge may convene the board as soon as practicable after the voter registrar has completed one or more "batches."** The judge must post a notice on the bulletin board used for posting notices of meetings of the governing body ordering the election no later than 24 hours before each time the board is scheduled to meet. The board may also convene while the voter registrar continues the review.

   b. The early voting ballot board cannot convene a final time until after the 6th day after the election due to Voter ID verification. We recommend to review provisional ballots on a rolling basis.

2. Delivery of Materials To Early Voting Ballot Board.

   a. The board should obtain from the authority conducting the election a package of supplies, including the:

      (1) Return sheets;

      (2) Tally sheets; and

      (3) Envelopes for Accepted and Rejected Ballots.

   b. The general custodian will deliver to the early voting ballot board the Lists of Provisional Voters from each precinct.

3. Delivery of Provisional Ballots.

   a. The early voting ballot board presiding judge shall take receipt of (1) the provisional ballots directly from the voter registrar or the custodian of election records and (2) List of List of Provisional Voters Who Presented Proper Identification to Voter Registrar at a time and place to be determined by the presiding judge and; [Sec. 65.0541]

   b. The presiding judge completes the Verification of Provisional Ballots and Serial Numbers Form by signing at the time of receipt that the seal(s) were intact, the serial numbers of the seal(s) were accurately reflected, and the number of provisional ballots received.

SOS_000460

4.  Review of Provisional Ballots.

The early voting ballot board shall review both the election judge's and the voter registrar's notation on each Provisional Ballot Affidavit Envelope to determine whether or not the ballot should be counted as indicated below.

a.  Provisional ballots to be counted:

(1) The ballot shall be counted if the voter failed to submit identification at the polling place, but the voter registrar indicated the voter presented an acceptable form of identification in person at the registrar's office within six calendar days after the date of the election and the voter was otherwise eligible to vote in the election.

(2) The ballot shall be counted if the voter failed to submit identification at the polling place, but the voter registrar indicated on the Provisional Ballot Affidavit Envelope that the voter applied for and received the disability exemption under Section 13.002(i) of the Election Code by the sixth day after election day and the voter was otherwise eligible to vote in the election.

(3) The ballot shall be counted if the voter failed to submit identification at the polling place, but the voter registrar indicated the voter completed one of the two curing affidavits set out in Section 65.054(b)(2)(B) (consistent religious objection to photographs) or 65.054(b)(2)(C) (identification unavailable due to declared natural disaster) no later than the sixth day after election day.

(4) If the election judge indicated that the reason for casting a provisional ballot was that the voter appeared on the list of registered voters as having cast a ballot by mail, and the voter claimed that he never received the mail ballot, or would like to cancel his or her mail ballot, the provisional ballot shall be counted if the voter's mail ballot has not already been received

(5) If the voter registrar indicated that the provisional voter is registered to vote in the territory holding the election, the ballot shall be counted.

(6) If the voter registrar indicated that the provisional voter is registered to vote, but was erroneously listed in the wrong precinct, the ballot shall be counted.

(7) If the voter was erroneously removed from the voter registration list and is otherwise qualified to vote, the ballot shall be counted.

(8) The voter registrar has information in the office that the voter did complete an application, and the voter is otherwise qualified, the ballot shall be counted.  (For example, evidence that the voter submitted and application at a DPS office or via a volunteer deputy registrar.)

b.  Provisional ballots not to be counted:

(1) If the election judge indicated that the voter did not provide an acceptable form of identification and the voter registrar noted that the voter did not (1) present an acceptable form of identification to the voter registrar, (2) complete one of the curing affidavits set out in Section 65.054(b)(2)(B), or (3) apply for and receive a disability exemption by the sixth day after election day, then the ballot shall not be counted.

(2) If the election judge indicated that a voter with a permanent disability exemption to the identification requirements did not submit the registration certificate at the polling place, and the voter registrar notes that the voter failed to (1) present their registration certificate with exemption, (2) present another form of acceptable identification, or (3) apply for and receive a permanent disability exemption by the sixth day after election day, the ballot shall not be counted.

30

SOS_000461

(3) If a voter voted provisionally due to having an outstanding mail ballot that has not yet been cancelled, the provisional ballot shall not be counted <u>if the provisional voter has already voted</u>.

(4) If the voter registrar indicated that the provisional voter is not registered to vote in the territory holding the election or the registration was not effective in time for the election, the ballot shall not be counted.

(5) If the voter registrar indicated that the provisional voter is registered to vote at a different precinct other than the one the voter voted in, the ballot shall not be counted. This is not the case if the county that is part of the countywide polling place program.

(6) If the election judge indicated that the voter was on the list of registered voters, but the voter's registered residence address is outside the political subdivision, the ballot shall not be counted.

(7) If the voter registrar indicated that an incomplete application was received from the provisional voter but the required additional information was not returned, the ballot shall not be counted.

5. Disposition of Accepted or Rejected Ballots.

   a. The presiding judge shall indicate the disposition of each ballot on the provisional voter affidavit envelope.

   b. The presiding judge shall also indicate the disposition of each ballot on the List of Provisional Voters for that precinct.

   c. The ballots to be counted shall be removed from their provisional ballot envelopes (which are sealed in a secrecy envelope).  After at least 10 secrecy envelopes have been removed from the provisional ballot envelopes and placed in a separate container, the secrecy envelopes are opened, and the ballots are counted under the normal procedure for counting ballots by mail in an election either by hand counting or by central counting station [See Chapters 5 and 6].  The presiding judge of the early voting ballot board or central counting station shall complete a return sheet of the votes and record them by precinct.  The Provisional Voter Affidavit Envelopes are placed in the Envelope for Accepted Voters and delivered to the general custodian of election records.

   d. The Provisional Voter Affidavits Envelopes that are not counted are placed in the Envelope for Rejected Provisional Ballots and delivered to the general custodian of election records.

   e. Rejected Provisional Ballot Affidavit Envelopes may not be opened except by court order. [T.A.C. Sec.81.176 (14)]

6. Counting Paper Ballot Provisional Ballots.

   a. See Chapters 5 and 6 for counting rules.

   b. Once counted, the provisional ballots shall be re-locked and returned to the custodian of election records. The key shall be delivered to the custodian of the key.

   c. If a DRE system is used for provisional voting, the entity conducting the election will direct how provisional ballots are processed.

7. Counting of Provisional Ballots Electronically (optical scan).

   a. The manager of the central counting station shall decide whether the ballot board shall manually count the ballots with the totals manually added to the computer count for a canvass total or whether the central counting station shall reconvene.

31

SOS_000462

b.  The manager shall send notice to the presiding judge of the ballot board prior to reconvening the board as to whether the ballots are to be counted manually by the board or whether the ballots are to be prepared for delivery to the central counting station.

c.  If the ballots are to be counted by the central counting station, the manager must post notice at least 24 hours prior to reconvening the central counting station.  Section 1.006 does not apply.

d.  A ballot transmittal form must be completed by the presiding judge of the ballot board.  The transmittal form will accompany the accepted provisional ballots.

e.  Prior to the beginning of the count at a central counting station, the manager shall run the required second logic and accuracy test using the same test deck as on Election Day. After the count is complete, the manager shall run the required third logic and accuracy test. If the test is not successful, the count is void.

f.  The central counting manager may add the provisional ballots to the original returns by hand in order to provide one complete return sheet, may enter the provisional ballots directly on the electronic voting system to have one final electronic return sheet or may provide a separate return sheet with just provisional ballot vote totals. The return sheets are placed in Envelope No. 2 and delivered to the custodian of election records.

g.  The counted provisional ballots and other election materials are returned to the custodian of election records and retained for the appropriate preservation period.

NOTE:    Since provisional ballots will probably be processed and counted at the same time as the late early voting by mail ballots, additional procedures relating to late ballots pursuant to T.A.C. Sec. 81.37 may also apply.

8.  Notice to Provisional Voters.

Not later than the 10th day after the local canvass, the early voting ballot board's presiding judge shall deliver written notice regarding whether the provisional ballot was counted to the provisional voter, and if the ballot was not counted, the reason the ballot was not counted. The presiding judge shall use the information provided on the affidavit to obtain the proper mailing address for the voter and the final resolution of the provisional ballot.

9.  Distribution of Provisional Voting Records.

a.  Custodian of election records receives:

(1) Lists of Provisional Voters;

(2) Return sheets;

(3) Tally Sheets;

(4) Envelopes for Accepted and Rejected Provisional Ballot Affidavit Envelopes;

(5) Counted Ballots; and

(6) Verification of Provisional Ballots and Serial Numbers.

b.  Custodian of the key receives the key to the ballot box after it has been locked.

c.  Presiding officer of the canvassing authority receives:

(1) Return sheets; and

(2) Tally Sheets.

SOS_000463

## SECTION B. RECONVENING FOR QUALIFYING LATE EARLY BALLOTS BY MAIL

1. Requirements for ballots to be counted late.

   The Board must reconvene to count mail ballots which were:

   a. arrived by 5pm on the day after election and bears a cancellation mark of a common or contract carrier or courier indicting a time not later than 7pm at the location of the election on election day.

   b. cast from outside the United States;

   c. placed in delivery before the polls closed; and

   d. which arrived not later than the 5th day (non military overseas) and 6th day (military) after election day. [Sec. 86.007(d)]

      **NOTE**:   If the 5th of 6th day falls on a weekend day, federal or state holiday, this deadline is extended to the next regular business day.

2. When should the board reconvene?

   a. The general rule is on the 9th day after election day or earlier, if the early voting clerk can determine that all ballots cast from outside the United States have been received.  [Sec. 87.125(a)].

   b. For a general election for state and county officers the date moves to the 13th day after election day, or earlier if the early voting clerk can determine that all ballots cast from outside the United States have been received.  [Sec. 87.125(a-1)].

3. The Carrier Envelope must be:

   a. timely submitted;

   b. properly addressed with postage (no postage is required for FPCA carrier envelopes); and

   c. bear a cancellation mark from a postal service before the polls close or a receipt mark from a common or contract carrier indicating the ballot was received before the polls closed.

4. Additional general provisions.

   a. The presiding judge shall notify the early voting clerk as to the time and place where the board will reconvene.  The notice must be made in time so the early voting clerk may give proper notice of the delivery.  The early voting clerk must post notice of delivery of jacket envelopes and any other accompanying papers to the early voting ballot board at least 24 hours prior to the delivery.  The notice shall be posted at the main early voting polling place.  Section 1.006 does not apply.

   b. The presiding judge shall send notice to the custodian of the key and the custodian of election records to redeliver the ballot box containing the counted ballots and the key to the box.  After the late ballots have been counted, the presiding judge shall lock the late counted ballots in the ballot box.  The presiding judge shall deliver the ballot box to the general custodian of election records and the key to the ballot box to the custodian of the key.

   c. Poll watchers are entitled to be present.

   d. If all mail ballots were received by the close of voting on election day or no ballots were received by the appropriate deadline for the election, the early voting clerk shall certify that fact and deliver the certification to the canvassing board before they convene to canvass the votes. [Sec. 87.125(a)]

5. Special provisions for paper ballots.

SOS_000464

a. Once the ballots have been qualified, the presiding judge shall use the regular method of counting ballots by keeping three new tally sheets, counting by precinct, and having at least two members per tally team.  [Ch. 65, Secs. 87.062, 87.103; T.A.C. § 81.37(b)]

b. Once the board has counted all the ballots, an original and three copies of the return sheet shall be prepared.

c. The distribution of the tally sheets and return sheets shall be made in accordance with the Texas Election Code, Subchapter B, Chapter 66.

d. The canvassing board shall add the returns from both early voting return sheets when canvassing the vote.

6. Provisions for Electronic Voting Systems. [T.A.C. §§ 81.37(c), 87.103]

a. The manager of the central counting station shall decide whether the ballot board shall manually count the ballots with the totals manually added to the computer count for a canvass total or whether the central counting station shall reconvene.

b. The manager shall send notice to the presiding judge of the ballot board prior to reconvening the board as to whether the ballots are to be counted manually by the board or whether the ballots are to be prepared for delivery to the central counting station.

c. If the ballots are to be counted by the central counting station, the manager must post notice at least 24 hours prior to reconvening the central counting station.  Section 1.006 does not apply.

d. A ballot transmittal form must be completed by the presiding judge of the ballot board.  The transmittal form will accompany the ballots qualified.

e. The manager must order a 2nd test to be conducted prior to the count.  The test must be successful.

f. Poll watchers are entitled to be present.

g. After the 2nd test is successful, the unofficial election results preserved by electronic means shall be loaded in the tabulating equipment.

h. The tabulation supervisor shall print a status report before the count is to begin.  This status report shall be compared with the report run on election night.  If the two status reports do not match, the electronic ballots must be counted by hand and the total manually added to the returns printed on election night.

i. If the status reports match, the tabulation supervisor may order the count to begin.  The precinct returns from these counts may be included with the original precinct counts.  The tabulation supervisor does not need to keep the precinct-by-precinct results of the late ballots separate from other early voted ballots.

j. Once the ballots have been counted, results shall be prepared in the regular manner.  The manager shall prepare a certification and attach it to the returns, then place both in envelope #1 to be delivered to the presiding officer of the canvassing board indicating that the results supersede any returns printed prior to the reconvening of the central counting station after election day.

k. After the results have been prepared, a successful 3rd test must be performed.

l. The results, ballots, and distribution of ballots and all records shall be made in the regular manner.

SOS_000465

## APPENDIX A

**This chapter will have examples of questions we see arise for a Signature Verification Committee and examples of situations.**

   **A.  Questions in regards to verifying signatures:**

   1.  Do signatures have to be identical?

      As part of the Signature Verification Committee their duty is to compare signatures, however we understand that the SVC are not handwriting experts. With that said it is at the discretion of the committee members to use their best judgment and to verify if these signatures are the same. The committee chair or committee members may request from the county clerk, election administrator, or voter registrar ahead of time signatures that are on file from the past six years. This may be provided electronically. The committee members must use their best judgement if the signatures match. The committee must decide by a majority vote that the signatures are of the same person, or not of the same person. The standard should be whether the two signatures could have been made by the same person.

   2.  When does the committee need to ask for copies of signatures within the past 6 years from the county clerk?

      There is nothing in the Election code that states when this may be done. The committee members may ask for these documents of voters signatures in advance as long as it is reasonable. We recommend that this may be done within ample time to allow for the clerk to prepare all these documents. Electronic copies of these documents may be sent to the committee. Only committee members can request this.

   3.  What is a majority vote?

      The Election Code does not state what constitutes as a majority of the SVC. Some counties will determine by the full committee, committee members present, or members of the subcommittees. Our recommendation is that the board comes to an agreement of what constitutes as a majority and that the committeee use that throughout the process.

   4.  May the SVC keep notes?

      The SVC may not disclose the results of the accepted and rejected ballots. With that, the committee may keep notes. Please keep in mind that these notes are subject to public information requests.

   5.  Are the carrier envelopes and applications public information?

      Yes. A copy of an application for a ballot to be voted by mail is not available for public inspection, except to the voter seeking to verify that the information pertaining to the voter is accurate, until the first business day after the election day of the earliest occurring election for which the application is submitted. Originals of the applications and carrier envelopes are not available for public inspection until those materials are delivered to the general custodian of election records after the election. [86.014]

SOS_000466

6. Does the SVC separate rejected and accepted ballots?

Yes. The SVC needs to separate the rejected and accepted ballots, because if the SVC has determined that the signatures are not those of the same person, the board may make a determination that the signatures are those of the same person by a majority vote of the board's membership. The EVBB **may not** determine whether a voter's signatures on the carrier envelope certificate and ballot application are those of the same person if the committee has determined that the signatures are those of the same person by the SVC.  [87.027(j)]

7. When is the earliest the SVC can meet?

The first day the SVC can meet is 20 days before the Election. For November 3 of 2020, the earliest the SVC may meet is October 14, 2020. There is no county population requirement for meeting 20 days before Election Day.

8. Is there a limit on how many times the SVC may meet?

No. There is no limit on the times the SVC may meet. The clerk shall post notice of the time of each delivery. The notice must remain posted continuously for at least two days before the date of the delivery. [87.027(h)] Postings required by this section shall be made on the bulletin board used for posting notice of meetings of the commissioners court, in an election for which the county election board is established or a primary election, or of the governing body of the political subdivision in other elections. [87.027(k)] The SVC may meet after Election Day to verify signatures of late ballots, however that is to the discretion of the Early Voting Clerk.

9. May a vacancy be filled if the SVC has conveyed?

Yes. A vacancy on the committee shall be filled by appointment from the original list or from a new list submitted by the appropriate county chair. [87.027(d)]

SOS_000467

---

**SITUATION 1:**
**Voter's Signature does not Match**

---

1. As part of the Signature Verification Committee their duty is to compare signatures, however we understand that the SVC are not handwriting experts. With that said it is at the discretion of the committee members to use their best judgment and to verify if these signatures are the same. The committee chair or committee members may request from the county clerk, election administrator, or voter registrar ahead of time signatures that are on file from the past six years. This may be provided electronically. The committee members must use their best judgement if the signatures match. The committee must decide by a majority vote that the signatures are of the same person, or not of the same person. The standard should be whether the two signatures could have been made by the same person.

2. A majority vote must be decided by the committee members. For example if there are 5 members you may decide 3 out 5 is a majority, or 4 out of 5. Once decided, the committee needs to be consist with that process. If you have subcommittees they must consist of at least two members each with the chair as the deciding vote.

3. If committee members are unsure whether a signature is that of the voter or not, they should put those aside. The committee may decide if all members will need to look at it as a whole or let the subcommittee's decide amongst themselves. If the committee is unsure of certain signatures, they may request from the county clerk, election administrator or voter registrar copies of signatures that are on file from the past six years.

4. A rejected signature must be decided by a majority vote. If there are subcommittees, the committee needs to decide whether the subcommittees may make a majority vote with the chair as the tie breaker if needed, or if they must put those potential rejected ballots aside and decide as whole which ones should be rejected by a majority.

5. Even if unsure the committee must make a decision whether to accept or reject a signature.

6. If the signature is rejected, the committee must place and separate the rejected and accepted carrier envelopes.

7. Once the committee has accepted and rejected all carrier envelopes, the committee has no authority to review the signatures again once delivered to the general custodian of the election.

---

**SITUATION 2:**
**Voter's Signature is not on the Signature Line for the Carrier Envelope**

---

1. If a voter's signature does not appear on the signature line also known as the certificate of the carrier envelope, but is located elsewhere on the envelope, then the signature is valid. As long as the signature is somewhere on the envelope, then the signature would be valid.

2. What if the carrier envelope is signed by a witness? If the carrier envelope is witnessed, then there would be no signature the committee would compare to. However, that does not invalidate the signature. A carrier envelope may be witnessed, as long as the portion is completed correctly.

SOS_000468

3. What if the ABBM is signed by the voter, but their carrier envelope is witnessed? A voter may complete their ABBM and then have their carrier envelope witnessed. An example of this would be if a person breaks their hand (or an injury that would prevent them from signing) after they submit their ABBM, the voter may have a person witness their carrier envelope. The answer would be the same if a person has someone witness their ABBM, however they signed their carrier envelope. This does not invalidate the signature, as long as the witness portion is completed correctly.

4. What if the signature that is signed by the witness on the carrier envelope and the application for ballot by mail do not match? A voter may have someone witness their application for ballot by mail and their carrier envelope. The voter does not have to use the same witness. As long as the witness has included the print of the person that cannot sign, affix their own signature to the document, print their own name, state their residence address or official title, if election officer. The only time a witness may not fill out their information would be if the witness is a relative within the 2nd degree by affinity or 3rd degree by consanguinity OR witness was physically living in the same dwelling as the voter at the time of witnessing the carrier, Sec. 85.0051(a),(e). If the witness fits under one of these categories, then they would need to include that on the carrier.

---

**SITUATION 3:**
**Committee did not Separate Rejected and Accepted Ballots**

---

1. If the committee does not separate the rejected and accepted carrier envelopes, do they have to start all over? No. If the committee cannot determine what carrier envelopes were accepted and rejected, then they would pass all carrier envelopes to the EVBB. There is nothing in the election code that states the SVC may review all carrier envelopes again. However, the EVBB has authority to review rejected signatures and overturn rejected decisions made by the SVC. [87.027(j)] Therefore, our office recommends that since the EVBB has the authority to review rejected signatures by the SVC that the carrier envelopes be forwarded to the EVBB to review. The SVC may still continue to verify signatures after this.

2. Our office recommends that the SVC comes up with a checklist of (1) what a majority is (2) how the committee will accept and reject signatures (3) how the committee will separate rejected and accepted signatures (4) whether the committee will choose to verify signatures electronically or paper, (5) how the committee will verify signatures if they choose to verify by electronic or paper (6) if using electronic verification, then have a number to call if a technical error occurs (7) if there are any signatures that are questionable, know where to separate them (8) know who is going to sign off on the ballot box for delivery to the general custodian of election and (9) set up a time to deliver the box to the custodian of election.

SOS_000469

> **SITUATION 4:**
> **Creating a Subcommittee**

1. If more than 12 members are appointed to serve on the signature verification committee, the early voting clerk may designate two or more subcommittees of not less than six members. If subcommittees have been designated, a determination under Subsection (i) of TEC is made by a majority of the subcommittee. [87.027(l)]

2. If the SVC has less than 12 members you still may have a subcommittee. Please keep in mind that the subcommittees need to be even. If there is an election where party alignment is indicated on the ballot, you should take that into consideration when making subcommittees. If possible, try to have different party alignment in each subcommittee. This should be done amongst the committee and before the committee begins verifying signatures. Whatever process is decided should be used throughout the whole verification process.

3. If a subcommittee is created the chair should be the tie breaker, therefore the chair should not be part of a subcommittee.

4. If there are subcommittees, the full signature verification committee needs to decide whether the subcommittees have authority to accept or reject ballots using a majority vote of the subcommittee members. Alternative, the whole committee could decide to give the subcommittee only authority to accept ballots and set aside rejected ballots and decide as whole which ones should be rejected by a majority.

SOS_000470

## APPENDIX B

**This appendix will have examples of questions we see arise for an Early Voting Ballot Board and examples of common situations.**

1. **Our entity doesn't have any ballots by mail, do we have to have a ballot board?**

   Yes. All entities must have a ballot board. An early voting ballot board shall be created in each election to process early voting results and provisional ballots from the territory served by the early voting clerk. [87.001] You must always appoint a ballot board because you will not know until Election Day whether there will be provisional ballots that need to be reviewed by the EVBB

2. **May the deputy early voting clerks or election day workers serve on the ballot board?**

   This depends. Our office advises that a deputy early voting clerk may not serve on the EVBB. Duties conflict in scope and time for performance. An election day officer may serve on the EVBB. Please keep in mind that both duties may not be done at the same time.

3. **May the early ballot board members serve on the signature verification committee?**

   Not recommended. Since the ballot board members may override a rejected signature decision by the committee, a ballot board member should not serve on the signature verification committee. [87.027]

4. **Do members from the ballot board have to be from different parties?**

   Yes. The same number of members must be appointed from each list provided by political parties with party affiliation on the ballot. This includes all parties that have nominees on the general election ballot including the Libertarians and Green Party.

5. **What if our county does not have a chair from one of the political parties, what do we do?**

   The party first needs to fill the vacancy of the party chair. Then the chair would be able to provide a list of names. If there is no vacancy filed then the Presiding Judge or County Election Board whichever is applicable should appoint members.

6. **If the EVBB is verifying signatures and not the SVC, when does the board need to ask for copies of signatures within the past 6 years from the county clerk?**

   There is nothing in the Election code that states when this may be done. The board members may ask for these documents of voters signatures in advance as long as it is reasonable. We recommend that this may be done within ample time to allow for the clerk to prepare all these documents. Electronic copies of these documents may be sent to the board.

7. **What is a majority vote?**

SOS_000471

The Election Code does not state what constitutes as a majority of the EVBB. Some counties will determine by the full board membership, board members present, or members of the subcommittees. Our recommendation is that the board comes to an agreement of what constitutes as a majority and that the board use that throughout the process.

**8. May the EVBB keep notes?**

The EVBB may not disclose the results of the accepted and rejected ballots. With that, the board may keep notes. Please keep in mind that these notes are subject to public information requests.

**9. Are the carrier envelopes and applications public information?**

Yes. A copy of an application for a ballot to be voted by mail is not available for public inspection, except to the voter seeking to verify that the information pertaining to the voter is accurate, until the first business day after the election day of the earliest occurring election for which the application is submitted. Originals of the applications and carrier envelopes are not available for public inspection until those materials are delivered to the general custodian of election records after the election. [86.014]

**10. Does the EVBB separate rejected and accepted ballots?**

Yes. The EVBB needs to separate the rejected and accepted ballots. If the board did not separate rejected and accepted ballots and cannot determine which ones were accepted or rejected, the board will need to start the process over as they have the authority to do so.

**11. When is the earliest the EVBB can meet?**

This depends on the population of the county. This is the same rule if your entity is in a county with this population and conducting an election jointly. Counties with a population of less than 100,000 may convene at the end of Early Voting by Personal Appearance (3rd day before). Ballots may not be counted until after the polls open on election day. Counties with a population of 100,000 or more may convene on the 8th day before the last day of the period of early voting (12th day before). EVBB may deliver ballots to the central counting station for early counting after the end of the early voting period. Results may not be released until the close of polls on election day.

| | Regular Ballots by Mail | Late Ballots from Outside the US | Provisional Ballots *All Late Ballots* |
|---|---|---|---|
| **Counties** with a population of <u>less</u> than 100,000 | After the end of Early Voting by Personal Appearance (3rd day before) | *Final meeting no earlier than 6th day after election day | **Final meeting no later than the 9th day after election (13th in Nov. 2020). |
| **Counties** with a population of 100,000 or more | The 8th day before the end of early voting (12th day before) | *Final meeting no earlier than 6th day after election day | **Final meeting no later than the 9th day after election (13th in Nov. 2020). |

SOS_000472

**12. Is there a limit on how many times the EVBB may meet?**

No. There is no limit on the times the EVBB may meet. The clerk shall post notice each time the ballot board convenes. The clerk shall also post notice of delivery of ballots each time. The notice must remain posted 24 hours before delivery. The prescribed SOS form is AW6-6 (Mail ballots only) & AW6-7 (Mail and paper balloting materials). This notice must be posted at the main early voting polling place at least 24 hours prior to first delivery of ballots. [87.0222] In general elections for state and county officers, the county clerk/elections administrator must notify each county chair at least 24 hours of each delivery.

**13. May a vacancy be filled if EVBB has conveyed?**

Yes. A vacancy on the board shall be filled by appointment such as a vacancy for a presiding judge/alternate judge on Election Day. [32.007]

SOS_000473

---

**SITUATION 1:**
**Two Ballots in One Carrier Envelope**

---

**1. If you receive an envelope or package with two or more carrier envelopes from individuals registered at the same address inside may you accept the ballots?**

This depends. If you receive an envelope or package with two carrier envelopes from individuals registered at the same address inside and the carrier envelopes are separated (meaning two different carrier envelopes with two different ballots), then you may accept the ballots pending any other qualifications. If you receive an envelope or package with two or more carrier envelopes from individuals registered at the same address inside and the carrier envelopes are not separated (meaning two or more ballots are in one carrier), then you may not accept both ballots and they would be rejected. This scenario is often found when a couple mails both their ballots in the same carrier envelope.

---

**SITUTATION 2:**
**Carrier Envelope Witness/Assistant Portion Filled out Incorrectly**

---

**1. If you receive a carrier envelope with the witness/assistant portion filled out incorrectly, do you accept it?**

No. The Witness/Assistance portion must be filled out correctly.

3. If the Early Voting Clerk receives a timely carrier envelope that does not fully comply with the applicable requirements prescribed by this title, the clerk may deliver the carrier envelope in person or by mail to the voter and may receive, before the deadline, the corrected carrier envelope from the voter, or the clerk may notify the voter of the defect by telephone and advise the voter that the voter may come to the clerk's office in person to correct the defect or cancel the voter's application to vote by mail and vote on election day. If the early voting clerk chooses to do this with one voter, this must be applied uniformly to all carrier envelopes. A poll watcher is entitled to observe the procedures if this is done. This procedure may be used if the early voting clerk can determine that two carrier envelopes are in one

43

SOS_000474

| SITUTATION 3: |
| :---: |
| **Wrong Ballot in Wrong Carrier Envelope Delivered to Board** |

These different scenarios are for a Primary/May Uniform Date Election. In the situations below this is where the county has contracted with local entities to serve as the local entities' early voting clerk, there is a concern that voters will return both ballots in a single carrier envelope.

**Scenario 1:**

The early voting ballot board ("EVBB") for the May 2, 2020 election is meeting to count ballots. They open a ballot secrecy envelope and there is a primary runoff ballot inside. As the ballot secrecy envelope would have been separated from the carrier envelope, there would be no way to determine which voter's ballot this is.

**Procedure for 1:**

This ballot cannot be counted nor retained in a carrier envelope to be forwarded to the EVBB for the runoff primary election. We suggest that the EVBB presiding judge make a notation on the ballot to explain the situation and why the ballot was not counted. The ballot should be stored in the envelope that contains the other rejected ballots (which still be in their carrier envelopes). See Texas Election Code Section 87.043. Unfortunately, as there is no way to know which voter submitted this ballot, no notice of rejection can be sent to the voter. We note that there is no authority in the Texas Election Code ("the Code") to store a voted ballot outside of the jacket or carrier envelope. Additionally, while the EVBB qualified the voter's ballot with respect to the May 2, 2020 election, the EVBB did not qualify the ballot with respect to the runoff primary. The May 2, 2020 EVBB board does not have the authority to qualify a ballot for the runoff primary.

**Scenario 2a:**

The EVBB for the May 2, 2020 election reviews a carrier envelope (that is marked to show it is a carrier for the May 2, 2020 election) and determines it will accept the ballot. The EVBB proceeds to open the carrier envelope to remove the ballot secrecy envelope, but the ballot is not in a secrecy envelope. The EVBB is able to immediately determine that the ballot inside the carrier is a primary runoff ballot. In this scenario, the ballot is tied to a particular voter as the carrier envelope is still effectively with the ballot.

**Procedure for 2a:**

We recommend that the EVBB immediately put the ballot back in the carrier envelope and seal the envelope. The EVBB should deliver the carrier envelope to the early voting clerk, who should then place the carrier envelope in the jacket envelope for that voter for the primary runoff, ready to be forwarded to the EVBB for that election at the appropriate time. We also suggest that the presiding judge of the EVBB write a memo to detail what occurred, what actions were taken, and the date those actions were taken. The presiding judge and at least one other member of the EVBB should sign off on the memo. A copy of the memo should be placed in the voter's May 2, 2020 jacket envelope and a copy provided to the early voting clerk for placement in the voter's primary runoff jacket envelope. When the EVBB for the primary runoff election convenes and sees a carrier envelope for the May 2, 2020 election in the jacket envelope for the primary runoff, the memo will serve to inform that EVBB of what has occurred.

SOS_000475

**Scenario 2b:**

As a corollary to scenario 2a, as the voter's May 2, 2020 carrier envelope contained the primary runoff ballot, it is possible that the primary runoff carrier contains the May 2, 2020 ballot. Can the early voting clerk take the runoff primary carrier and provide it to the May 2, 2020 EVBB for processing?

**Procedure for Scenario 2b**:

As we can identify the voter under these scenarios, and hopefully contact the voter, the chain of custody can be well established. Regarding the carrier envelope for the runoff, which presumably contains the May 2, 2020 entity ballot, we suggest that the early voting clerk call the voter (if possible) to see if voter can confirm that the May 2, 2020 ballot is probably in the runoff carrier envelope. If the voter confirms that s/he believes the ballot in the primary runoff carrier envelope is in fact the May 2, 2020 ballot (or if the early voting clerk is unable to reach voter), the early voting clerk may forward that carrier envelope to the May 2, 2020 election EVBB to process as normal, if able to do so in a timely manner. We do not recommend that the early voting clerk open the carrier envelope, with or without the voter's permission, to determine whether the carrier actually contains the May 2, 2020 ballot. Only the EVBB should be opening this carrier envelope, once the EVBB has determined that the carrier envelope was properly processed (signature comparison completed, voter eligibility determined, etc.). We do suggest that the early voting clerk write a memo to detail what occurred, what actions were taken, and the date those actions were taken, and place a copy of the memo in the voter's May 2, 2020 jacket envelope. Another copy should be placed in the voter's primary runoff jacket envelope.

**Scenario 3a:**

The EVBB for the May 2, 2020 election qualifies the carrier envelope and finds two ballots, each inside a separate ballot secrecy envelope or neither ballot in a ballot secrecy envelope.

**Procedure for Scenario 3a:**

We feel that under this limited circumstance, the EVBB may open the ballot secrecy envelopes, if used by the voter. (The EVBB has the discretion to open a ballot secrecy envelope in limited circumstances. For example, to see if there is a statement of residence included in the secrecy envelope rather than the carrier envelope. It is also not a requirement for a ballot to be in the secrecy envelope.) If one of the ballots is for the May 2, 2020 election and one is for the primary runoff election, the May 2, 2020 ballot may be counted. The primary runoff ballot cannot be counted. There is no authority for the EVBB to, for example, copy the carrier envelope for the May 2, 2020 election and place the runoff ballot back in the carrier envelope for forwarding to the primary runoff EVBB (as in scenario 2b, above). We suggest that the presiding judge of the EVBB makes a notation on the primary runoff ballot to explain the situation and why the ballot was not counted. The primary runoff ballot should be stored in the envelope that contains the rejected ballots (which will still be in their carrier envelopes). See Section 87.043. We recommend sending this voter a rejection letter, even though this EVBB is not the proper ballot board for the May 26, 2020 primary runoff ballot. As above, we recommend that a memo be written and signed by the EVBB presiding judge to detail actions taken. A copy of the memo should be placed in the voter's May 2, 2020 jacket envelope and a copy provided to the early voting clerk for placement in the voter's primary runoff jacket envelope.

SOS_000476

**Scenario 3b:**

The EVBB for the May 2, 2020 election qualifies the carrier envelope, later discovers that the ballot secrecy envelope contains both a May 2, 2020 ballot and a primary runoff ballot.

**Procedure for 3b:**

As in 3a, the May 2, 2020 ballot may be counted, but the May 26, 2020 primary runoff ballot cannot. No notice can be sent to the voter as the identity of the voter cannot be determined by the time the error (2 ballots in one secrecy envelope) is discovered. Again, we suggest that the presiding judge of the EVBB make a notation on the rejected primary runoff ballot and store it with the rejected May 2, 2020 ballots.

---

| SITUTATION 4: |
| :---: |
| **Voters Mailing Address on ABBM is Different than Voter Registration Address on File** |

---

1. If the grounds for voting by mail is either being 65 or over, or disability, and the applicant has not provided his or her official mailing address as shown on the list of registered voters as the address for mailing his or her ballot, the address provided must be that of a hospital, nursing home, other long term care facility, retirement center, or the address of a relative within the second degree of affinity or third degree of consanguinity with whom the applicant is living. If this information was not provided on the Application for Ballot by Mail, the ballot should be rejected per Section 87.041 of the Code.

46

AW8-3
Prescribed by Secretary of State
Section 32.094, Texas Election
Code  3/07

**For primary only:** "√" Check next to judge/clerk's name if they attended a training program as prescribed by the Secretary of State.

"I swear (or affirm) that I will not in any manner request or seek to persuade or induce any voter to vote for or against any candidate or measure to be voted on, and that I will faithfully perform my duty as an officer of the election and guard the purity of the election. I swear (or affirm) that I will not suggest by word, sign or gesture, how the voter should vote. I will confine my assistance to answering the voter's questions, to stating the propositions on the ballot, and to naming candidates and, if listed, their political parties; and I will prepare the voter's ballot as the voter directs."

## STATEMENT OF COMPENSATION And OATHS

Nov 8

Prov. No. **Prov AB**

Authority Conducting Election: **Brazos County**

Date: **Nov 8, 2016**

Type of Election: **General**

| √ | Name of Election Official (Please Print Legibly) | Complete Address (Include City, Zip) | Social Security Number | Signature | Hours Worked From | Hours Worked To | Total Hours X | Rate of Pay = | Amount |
|---|---|---|---|---|---|---|---|---|---|
| √ | Dora Cuzan | 1116 Westover C.S. College Sta. TX 77840 | | Dora Cuy | 8:00 | 11:15 | 3.25 | | |
| | Rosemarie Swanson | 3601 Cavitt Ave Bryan TX 77801 | | Rosemarie Swanson | 800 | 1115 | 3.25 | | |
| | Allise Burns | 3407 FM 2038 Kurten TX 77808 | | Allise Burns | 8:30 | 10:30 | .05 | | |
| | Barbara Seim | 17647 Indian Lakes DR College Sta TX 77845 | | Barbara Seim | 915 | 10:30 | 1.25 | | |
| | Susan Spears | 4016 Mayward Dr Bryan TX 77801 | | Susan Spears | 9:30 | 11:15 | 1.75 | | |
| | ~~Name of Person/Persons who Delivered Election Supplies (Do Not Include Above)~~ | | | | | | | | |
| | Susan Stevenson | 3506 Wakefield Dr Bryan TX 77808 | | Susan Stevenson | 8:00 | 11:30 | 3.5 | | |
| | | TX | | | | | | | |
| | | | | | | | | | |

Amount of Compensation to be allocated to each person who delivered supplies ..............

Other Expenses (describe).......................

Total

I state that the above is a true and correct statement of the names, addresses and hours served of all the election officials conducting the above named election and of the other expenses incurred in this election.

_Robert W Davis_
Presiding Judge

EXHIBIT
8

BRAZOS - 000054

699

AW8-3
Prescribed by Secretary of State
Section 32.094, Texas Election
Code  3/07

**For primary only: "√" Check next to judge/clerk's name if they attended a training program as prescribed by the Secretary of State.**

"I swear (or affirm) that I will not in any manner request or seek to persuade or induce any voter to vote for or against any candidate or measure to be voted on, and that I will faithfully perform my duty as an officer of the election and guard the purity of the election; I swear (or affirm) that I will not suggest by word, sign or gesture, how the voter should vote, I will confine my assistance to answering the voter's questions, to stating the propositions on the ballot, and to naming candidates and, if listed, their political parties; and I will prepare the voter's ballot as the voter directs."

## STATEMENT OF COMPENSATION And OATHS

| | Name of Election Official (Please Print Legibly) | Complete Address (Include City, Zip) | Social Security Number | Signature | Authority Conducting Election: Brazos County — Date: Nov 8, 2016 — Hours Worked From / To | Total Hours X Rate of Pay = Amount |
|---|---|---|---|---|---|---|
| Pct. No. | | | | | Type of Election: General | Rate $8.50/hr |
| √ | SUSAN L. MILLER | 2907 Durango Ct / College St / TX 7845 | | [signature] | 8:00AM 10:30 | 2.5 |
| | AUDREY PATTON | 306 Cocunaia Ct / College Station TX 77846 | | [signature] | 8:00 11:15 | 3.25 |
| | BARRY D CLARK | 1107 W 26th St / Bryan TX75803 | | [signature] | 8AM 11:15 / 3h 6m | 3h 6m |
| | Diana L Davis | 2321 Carter Creek / Bryan TX 77802 | | [signature] | 8 10:45 | 2.75 |
| | STEVE MILAM | 1317 WILSHIRE CT / C.S. TX 77845 | | [signature] | 8AM 1115 | 3.25 |
| | | | | | | |

**Name of Person/Persons who Delivered Election Supplies (Do Not Include Above)**

| | | | | | | |
|---|---|---|---|---|---|---|
| | DORIS MILAM | 1317 WILSHIRE CT / C.S. TX 7845 | | [signature] | 8AM 1115 | 3.25 |
| | Rhoda Segur | 100 College View DR / Bryan TX 77801 | | [signature] | 8:00 1115 | 3.25 |

Amount of Compensation to be allocated to each person who delivered supplies ..........

Other Expenses (describe)..................................................

**Total**

I state that the above is a true and correct statement of the names, addresses and hours served of all the election officials conducting the above named election and of the other expenses incurred in this election.

[signature] Robert W Dan

Presiding Judge

BRAZOS - 000055

AW8-3
Prescribed by Secretary of State
Section 32.094, Texas Election
Code     3/07

**For primary only: "√" Check next to judge/clerk's name if they attended a training program as prescribed by the Secretary of State.**

"I swear (or affirm) that I will not in any manner request or seek to persuade or induce any voter to vote for or against any candidate or measure to be voted on, and that I will faithfully perform my duty as an officer of the election and guard the purity of the election; I swear (or affirm) that I will not suggest by word, sign or gesture, how the voter should vote; I will confine my assistance to answering the voter's questions, to stating the propositions on the ballot, and to naming candidates and, if listed, their political parties; and I will prepare the voter's ballot as the voter directs."

## STATEMENT OF COMPENSATION And OATHS

Pct. No. **Boards**

Authority Conducting Election: **Brazos County**

Date: **Nov 8, 2016**

Type of Election: **General**

| √ | Name of Election Official (Please Print Legibly) | Complete Address (Include City, Zip) | Social Security Number | Signature | Hours Worked From | To | Total Hours | X Rate of Pay | = Amount |
|---|---|---|---|---|---|---|---|---|---|
| √ | Robert W Davis | 2324 Carter Creek Bryan TX 77802 | [redacted] | Robert W Davis | 12 | 5:30 | 5.5 | 11.50/hr | |
| √ | Robert W Davis | TX | - - | Robert W Davis | 6:00 am | 10:00 pm | 16 | | |
| √ | Robert W Davis | TX | - - | Robert W Davis | 7:30 5:30 | 11:15 6:30 | 3.75 1 | | |
| | | TX | - - | | | | | | |
| | | TX | - - | | | | | | |
| | | TX | - - | | | | | | |

### Name of Person/Persons who Delivered Election Supplies (Do Not Include Above)

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | TX | - - | | | | | | |
| | | TX | - - | | | | | | |

Amount of Compensation to be allocated to each person who delivered supplies ............

Other Expenses (describe) ..................................................

Total

I state that the above is a true and correct statement of the names, addresses and hours served of all the election officials conducting the above named election and of the other expenses incurred in this election.

Robert W Davis

Presiding Judge

BRAZOS - 000056

701

AW8-3
Prescribed by Secretary of State
Section 32.094, Texas Election
Code   3/07

## STATEMENT OF COMPENSATION And OATHS

**For primary only: "√" Check next to judge/clerk's name if they attended a training program as prescribed by the Secretary of State.**

"I swear (or affirm) that I will not in any manner request or seek to persuade or induce any voter to vote for or against any candidate or measure to be voted on, and that I will faithfully perform my duty as an officer of the election and guard the purity of the election; I swear (or affirm) that I will not suggest by word, sign or gesture, how the voter should vote; I will confine my assistance to answering the voter's questions, to stating the propositions on the ballot, and to naming candidates and, if listed, their political parties; and I will prepare the voter's ballot as the voter directs."

Authority Conducting Election: BRAZOS COUNTY

Date: Nov. 8, 2016

Type of Election: GENERAL

| √ | Name of Election Official (Please Print Legibly) | Complete Address (Include City, Zip) | Social Security Number | Signature | Hours Worked From | To | Total Hours | X Rate of Pay | = Amount |
|---|---|---|---|---|---|---|---|---|---|
| 11/8 2016 | DORIS MILAM | 1317 WILSHIRE CT. College Station TX 77845 | | Doris Milam | 0900 | 0445 | 7.75 | | $8.50 |
| 11/9 2016 | DORIS MILAM | " TX | | Doris Milam | 0100 | 0430 | 3.5 | | |
| | STEVE ANDREWS | # TX | | | | | | | |
| | | TX | | | | | | | |
| | | TX | | | | | | | |

Pct. No. 400 JUDGES / JUDGES

Name of Person/Persons who Delivered Election Supplies (Do Not Include Above)

| | | | |
|---|---|---|---|
| | TX | | |
| | TX | | |

Amount of Compensation to be allocated to each person who delivered supplies ..........

Other Expenses (describe)..........

Total

I state that the above is a true and correct statement of the names, addresses and hours served of all the election officials conducting the above named election and of the other expenses incurred in this election.

Robert W Davis

Presiding Judge

BRAZOS - 000057

702

AW8-3
*Prescribed by Secretary of State
Section 32.094, Texas Election
Code
3/07

**For primary only: "√" Check next to judge/clerk's name if they attended a training program as prescribed by the Secretary of State.**

"I swear (or affirm) that I will not in any manner request or seek to persuade or induce any voter to vote for or against any candidate or measure to be voted on, and that I will faithfully perform my duty as an officer of the election and guard the purity of the election; I swear (or affirm) that I will not suggest by word, sign or gesture, how the voter should vote; I will confine my assistance to answering the voter's questions, to stating the propositions on the ballot, and to naming candidates and, if listed, their political parties; and I will prepare the voter's ballot as the voter directs."

STATEMENT OF COMPENSATION
And OATHS

Pct. No. MB13

Authority Conducting Election
Brazos County

Date 11-3-18

Type of Election
General

| √ | Name of Election Official (Please Print Legibly) | Complete Address (Include City, Zip) | Social Security Number | Signature | Date | Hours Worked From | To | Total Hours X | Rate of Pay = | Amount |
|---|---|---|---|---|---|---|---|---|---|---|
| | Shirley DuPriest | 400 Fairview CS  TX 77184 | | | | 8 | 3 | | | $650 |
| | Fred E. DuPriest | 400 Fairview CS  TX 77186 | | | | 8½ | 12 | | | |
| | Fred E. DuPriest | | | | | | | | | |
| | Susan Stevenson | 3506 Wakefield  Bryan  TX 77808 | | | | 6 | 2 | | | |
| | | | | Susan Stevenson | | 8 | 3 | | | |
| | Doris Milam | 1317 Wilshire Ct TX 77845 | | Doris Milam | | 8:00 | 3:00 | | | |
| | Steve Milam | College Stat TX 77845 | | Steve Milam | | 8:00 | 3:00 | | | |
| | | II  "  TX | | | | | | | | |
| | | "  TX | | | | | | | | |

Name of Person/Persons who Delivered Election Supplies (Do Not Include Above)

Amount of Compensation to be allocated to each person who delivered supplies .........

| | | TX | | | | | | | | |
| | | TX | | | | | | | | |

Other Expenses (describe).........

Total

I state that the above is a true and correct statement of the names, addresses and hours served of all the election officials conducting the above named election and of the other expenses incurred in this election.

R.W. Davis

Presiding Judge

EXHIBIT
9

exhibitsticket.com

BRAZOS - 000059

703

AW8-3
Prescribed by Secretary of State
Section 32.094, Texas Election
Code          3/07

**For primary only: "√" Check next to judge/clerk's name if they attended a training program as prescribed by the Secretary of State.**

"I swear (or affirm) that I will not in any manner request or seek to persuade or induce any voter to vote for or against any candidate or measure to be voted on, and that I will faithfully perform my duty as an officer of the election and guard the purity of the election; I swear (or affirm) that I will not suggest by word, sign or gesture, how the voter should vote; I will confine my assistance to answering the voter's questions, to stating the propositions on the ballot, and to naming candidates and, if listed, their political parties; and I will prepare the voter's ballot as the voter directs."

STATEMENT OF COMPENSATION
And OATHS

| Authority Conducting Election | Pct. No. | Date | Type of Election |
|---|---|---|---|
| Brazos Co | MBB | 11/5/2018 | General 2018 |

| √ | Name of Election Official (Please Print Legibly) | Complete Address (Include City, Zip) | Social Security Number | Signature | Hours Worked From | To | Total Hours | X | Rate of Pay | = | Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | Cathy Cortes | 3000 Willow Vale St, Bryan 77807 TX | | C. Cortes | 8:00 | 11:08 | | | | | $8.52 |
| | Erin Hill | 4002 Tanglewood Dr, Bryan TX 7782 | | Erin Hill | 8:00 | 12:00 | | | | | |
| | Sherry Garland | 3100 Rolling Glen, Bryan TX 77807 | | Sherry Garland | 8:00 | 1:30 | | | | | |
| | Clyde Garland | 3100 Rolling Glen, Bryan TX 77807 | | Clyde L. Garland | 9:00 | 1:20 | | | | | |
| | Ruth M. Blanter | 1005 Ashburn Ave, Coll. Sta., TX 77840 | | Ruth Blanter | 8:00 | 1:20 | | | | | |
| | | TX | - - | | | | | | | | |
| | | TX | - - | | | | | | | | |
| | | TX | - - | | | | | | | | |

Name of Person/Persons who Delivered Election Supplies (Do Not Include Above)

Amount of Compensation to be allocated to each person who delivered supplies ...............

Other Expenses (describe).................................

Total

I state that the above is a true and correct statement of the names, addresses and hours served of all the election officials conducting the above named election and of the other expenses incurred in this election.   Ruth Davis

Presiding Judge

BRAZOS - 000060

704

AW8-3
Prescribed by Secretary of State
Section 32.094, Texas Election
Code   3/07

**For primary only: "√" Check next to judge/clerk's name if they attended a training program as prescribed by the Secretary of State.**

"I swear (or affirm) that I will not in any manner request or seek to persuade or induce any voter to vote for or against any candidate or measure to be voted on, and that I will faithfully perform my duty as an officer of the election and guard the purity of the election; I swear (or affirm) that I will not suggest by word, sign or gesture, how the voter should vote; I will confine my assistance to answering the voter's questions, to stating the propositions on the ballot, and to naming candidates and, if listed, their political parties; and I will prepare the voter's ballot as the voter directs."

## STATEMENT OF COMPENSATION And OATHS

Authority Conducting Election: Brazos Cty
Pct. No.: MBB
Date: 11/3/2018
Type of Election: General 2018

| √ | Name of Election Official (Please Print Legibly) | Complete Address (Include City, Zip) | Social Security Number | Signature | Hours Worked From | To | Total Hours | X | Rate of Pay | = | Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | TC Langford | 4313 Nolan Bryan Tx TX 7140 | | M. | 8am | 11:30 | | | | | $9.82 |
| | Oleg E Shaw | 2805 Brothers Blvd College Station TX 77845 | | O.E. Shaw | 8am | 1:20 | | | | | |
| | Susan Spears | 4216 Maycroft Bryan TX 77801 | | Susan Spears | 8 Am | 1:30 | | | | | |
| | Mary Stasiowski | 2610 Sandlewood College Sta. TX 7845 | | Mary Stasiowski | 8 am | 3:00 pm | | | | | |
| | Marla Calvin | 1833 Fountain Ave Bryan TX 7801 | | Marla Calvin | 8:00 | 1130 | | | | | |

Name of Person/Persons who Delivered Election Supplies (Do Not Include Above)

| | | | | |
|---|---|---|---|---|
| | TX | | | |
| | TX | | | |
| | TX | | | |

Amount of Compensation to be allocated to each person who delivered supplies ..............

Other Expenses (describe)..............

Total

I state that the above is a true and correct statement of the names, addresses and hours served of all the election officials conducting the above named election and of the other expenses incurred in this election.

_Ron Davis_
Presiding Judge

BRAZOS - 000061

705

AW8-3
Prescribed by Secretary of State
Section 32.094, Texas Election
Code 3/07

**For primary only: "√" Check next to judge/clerk's name if they attended a training program as prescribed by the Secretary of State.**

"I swear (or affirm) that I will not in any manner request or seek to persuade or induce any voter to vote for or against any candidate or measure to be voted on, and that I will faithfully perform my duty as an officer of the election and guard the purity of the election; I swear (or affirm) that I will not suggest by word, sign or gesture, how the voter should vote; I will confine my assistance to answering the voter's questions, to stating the propositions on the ballot, and to naming candidates and, if listed, their political parties; and I will prepare the voter's ballot as the voter directs."

## STATEMENT OF COMPENSATION And OATHS

Pct. No. **𝄪 B13**

Authority Conducting Election **Brazos County**

Date **11/8/2008**

Type of Election **General 2008**

| √ | Name of Election Official (Please Print Legibly) | Complete Address (Include City, Zip) | Social Security Number | Signature | Hours Worked From | To | Total Hours | X of Pay | Rate = | Amount |
|---|---|---|---|---|---|---|---|---|---|---|
| | Richard Seim | 17647 Indian Lakes Dr. C.S. TX 77845 | ▮ | | 8:4 | 7:30 | 6.5 | | $8.00 | |
| | Barbara Seim | 17647 Indian Lakes Dr. C.S. TX 77845 | ▮ | Barbara Seim | 8 AM | 2:30 | 6.5 | | | |
| | Cameron Gallucci | Bryan TX 77780 | ▮ | | 8 A | 3 P | 7 | | | |
| | Audrey Patton | 306 Columbia Ct Quaker Spring TX 77840 | ▮ | | 8 A | 3 P | 7 | | | |
| | Diana Davis | 2321 Carter Creek Bryan TX 77802 | ▮ | Diana Davis | 8:00 | 3:30 | 8.5 | | | |

Name of Person/Persons who Delivered Election Supplies (Do Not Include Above)

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | Bob Davis | 2321 Carter Creek Place Bryan TX 77802 | ▮ | R W Davis | 7:45 | 3:30 | 7.75 | | | |
| | | TX | - - | | | | | | | |

Amount of Compensation to be allocated to each person who delivered supplies ............

Other Expenses (describe)............

Total

I state that the above is a true and correct statement of the names, addresses and hours served of all the election officials conducting the above named election and of the other expenses incurred in this election.

_R W Davis_
Presiding Judge

BRAZOS - 000062

AW8-3
*Prescribed by Secretary of State
Section 32.094, Texas Election
Code     3/07

**For primary only: "✓" Check next to judge/clerk's name if they attended a training program as prescribed by the Secretary of State.**

"I swear (or affirm) that I will not in any manner request or seek to persuade or induce any voter to vote for or against any candidate or measure to be voted on, and that I will faithfully perform my duty as an officer of the election and guard the purity of the election; I swear (or affirm) that I will not suggest by word, sign or gesture, how the voter should vote; I will confine my assistance to answering the voter's questions, to stating the propositions on the ballot, and to naming candidates and, if listed, their political parties; and I will prepare the voter's ballot as the voter directs."

## STATEMENT OF COMPENSATION And OATHS

Authority Conducting Election: BRAZOS County

Pct. No. M66 Mail ballot

Date 11-3-18

Type of Election: General

| ✓ | Name of Election Official (Please Print Legibly) | Complete Address (Include City, Zip) | Social Security Number | Signature | Hours Worked From | To | Total Hours X Rate of Pay = Amount |
|---|---|---|---|---|---|---|---|
| | Carol Nichols | 6250 Zweifel Road Bryan TX 77808 | | Carol Q Nichols | 8:00 | 3:15 | $0.00 |
| | BARRY D CLARK | 1107 W 26th St BRYAN TX 77803 | | [signature] | 8:00 | 3:15 | |
| | Patric morgan | 711 university dr Apt 717 College Station TX | | Patrik morgan | 8:00 | 3:15 | |
| | Jim Byrd | 549 Marino Rd #17 TX | | Jim Byrd | 8:00 | 3:15 | |
| | Cari Pullington | 8434 Innsbrook NS TX | | Cari Pullington | 8:30 | 3:15 | |
| | | TX | | | | | |
| | | TX | | | | | |

Name of Person/Persons who Delivered Election Supplies (Do Not Include Above)

Amount of Compensation to be allocated to each person who delivered supplies ............

Other Expenses (describe)..............

| | | |
|---|---|---|
| | | |
| | | |

Total: [blank]

I state that the above is a true and correct statement of the names, addresses and hours served of all the election officials conducting the above named election and of the other expenses incurred in this election.

[signature]
Presiding Judge

BRAZOS - 000063

707

AW8-3
*Prescribed by Secretary of State
Section 32.094, Texas Election
Code 3/07

**For primary only: "√" Check next to judge/clerk's name if they attended a training program as prescribed by the Secretary of State.**

"I swear (or affirm) that I will not in any manner request or seek to persuade or induce any voter to vote for or against any candidate or measure to be voted on, and that I will faithfully perform my duty as an officer of the election and guard the purity of the election; I swear (or affirm) that I will not suggest by word, sign or gesture, how the voter should vote; I will confine my assistance to answering the voter's questions, to stating the propositions on the ballot, and to naming candidates and, if listed, their political parties; and I will prepare the voter's ballot as the voter directs."

## STATEMENT OF COMPENSATION And OATHS

Pct. No. ___
Authority Conducting Election: Brazos County
Date: 11-6-18

| √ | Name of Election Official (Please Print Legibly) | Complete Address (Include City, Zip) | Social Security Number | Signature | Hours Worked From | Hours Worked To | Total Hours X | Rate of Pay = | Amount |
|---|---|---|---|---|---|---|---|---|---|
| | Audrey L Patton | 306 Columbia Ct College Station TX 77845 | ▮ | Audrey Patton | 10 A | 12:30 | | | $ 8.50 |
| | William G Stacy | 2703 Colony Village Bryan TX 77808 | ▮ | Stacy | 10AM | 12:30 | | | |
| | TC Langford | 4313 Auburn Bryan TX 77801 | ▮ | DLL | 10 | 10:30 | | | |
| | | TX | ' ' | | | | | | |
| | | TX | ' ' | | | | | | |
| | Name of Person/Persons who Delivered Election Supplies (Do Not Include Above) | | | | | | | | |
| | Bob Davis | 2831 Cedar Creek. | ▮ | | 10 Am | 1pm | | | $ 8.50 |
| | | TX | ' ' | | | | | | |
| | | TX | ' ' | | | | | | |

Amount of Compensation to be allocated to each person who delivered supplies ........

Other Expenses (describe)........

Total

I state that the above is a true and correct statement of the names, addresses and hours served of all the election officials conducting the above named election and of the other expenses incurred in this election.

_Bob Davis_
Presiding Judge

BRAZOS - 000064

708

AW5-42
Prescribed by Secretary of State
Sec. 87.0431, Texas Election Code
3/07

## NOTICE OF REJECTED BALLOT

This is to serve as notice that your ballot for the _GENERAL_ Election was rejected by the early voting ballot board and was not counted.

Name of Voter _LUKE STRAIN_

VUID Number _____

Reason for Rejection: (Check As Appropriate)

_____ 1) Certificate on carrier envelope was not properly executed.
_____ You failed to sign your signature or make your mark.
_____ The witness failed to indicate on the envelope that you could not make a mark.
_____ The assistant or witness failed to print their name.
_____ The assistant or witness failed to sign their name.
_____ The residence address of the assistant or witness was not given.

__✓__ 2) It was determined that the signature on the application for ballot by mail and carrier envelope was not signed by the same person.

_____ 3) Application for ballot by mail did not state a legal ground for voting by mail.

_____ 4) Voter registration records indicated you did not have an effective registration for this election.

_____ 5) Address to which ballot was mailed was not outside the county. Voting early by mail due to expected absence from the county requires balloting materials be mailed to an address outside the county.

_____ 6) The residence address on the statement of residence is not located in the political subdivision conducting the election.

_____ 7) The mailing address on the application for ballot by mail did not match your voter registration address nor did the mailing address match any addresses provided on your statement of residence. Since you did not indicate on your application for a ballot by mail that you were having your ballot mailed to a hospital, retirement center, long term care facility, nursing home, jail, or a relative, your ballot was rejected.

_____ 8) The statement of residence was not included in the carrier envelope.

_____ 9) No identification was included with your mail ballot.

_____ 10) Other: _____

Signature of Early Voting Ballot Board Judge

_11-13-2018_
Date

**EXHIBIT**

**10**

exhibitsticker.com

BRAZOS - 000002

AW5-42
Prescribed by Secretary of State
Sec. 87.0431, Texas Election Code
3/07

## NOTICE OF REJECTED BALLOT

This is to serve as notice that your ballot for the *2018 General* Election was rejected by the early voting ballot board and was not counted.

Name of Voter *Lidia Ramirez*
VUID Number *104110 4957*

Reason for Rejection: (Check As Appropriate)

_____ 1) Certificate on carrier envelope was not properly executed.

        _____ You failed to sign your signature or make your mark.
        _____ The witness failed to indicate on the envelope that you could not make a mark.
        _____ The assistant or witness failed to print their name.
        _____ The assistant or witness failed to sign their name.
        _____ The residence address of the assistant or witness was not given.

___✓___ 2) It was determined that the signature on the application for ballot by mail and carrier envelope was not signed by the same person.

_____ 3) Application for ballot by mail did not state a legal ground for voting by mail.

_____ 4) Voter registration records indicated you did not have an effective registration for this election.

_____ 5) Address to which ballot was mailed was not outside the county. Voting early by mail due to expected absence from the county requires balloting materials be mailed to an address outside the county.

_____ 6) The residence address on the statement of residence is not located in the political subdivision conducting the election.

_____ 7) The mailing address on the application for ballot by mail did not match your voter registration address nor did the mailing address match any addresses provided on your statement of residence. Since you did not indicate on your application for a ballot by mail that you were having your ballot mailed to a hospital, retirement center, long term care facility, nursing home, jail, or a relative, your ballot was rejected.

_____ 8) The statement of residence was not included in the carrier envelope.

_____ 9) No identification was included with your mail ballot.

_____ 10) Other: _____

_____

*RW Davi*
Signature of Early Voting Ballot Board Judge

*11/3/2018*
Date

BRAZOS - 000005

AW5-42
Prescribed by Secretary of State
Sec. 87.0431, Texas Election Code
3/07

## NOTICE OF REJECTED BALLOT

This is to serve as notice that your ballot for the _2018 General_ Election was rejected by the early voting ballot board and was not counted.

Name of Voter _James William Smith_

VUID Number _104081012 2_

Reason for Rejection: (Check As Appropriate)

_____ 1) Certificate on carrier envelope was not properly executed.
　　_____ You failed to sign your signature or make your mark.
　　_____ The witness failed to indicate on the envelope that you could not make a mark.
　　_____ The assistant or witness failed to print their name.
　　_____ The assistant or witness failed to sign their name.
　　_____ The residence address of the assistant or witness was not given.

✓ 2) It was determined that the signature on the application for ballot by mail and carrier envelope was not signed by the same person.

_____ 3) Application for ballot by mail did not state a legal ground for voting by mail.

_____ 4) Voter registration records indicated you did not have an effective registration for this election.

_____ 5) Address to which ballot was mailed was not outside the county. Voting early by mail due to expected absence from the county requires balloting materials be mailed to an address outside the county.

_____ 6) The residence address on the statement of residence is not located in the political subdivision conducting the election.

_____ 7) The mailing address on the application for ballot by mail did not match your voter registration address nor did the mailing address match any addresses provided on your statement of residence. Since you did not indicate on your application for a ballot by mail that you were having your ballot mailed to a hospital, retirement center, long term care facility, nursing home, jail, or a relative, your ballot was rejected.

_____ 8) The statement of residence was not included in the carrier envelope.

_____ 9) No identification was included with your mail ballot.

_____ 10) Other:

_____
_RW Davis_
Signature of Early Voting Ballot Board Judge

_____
_11/3/2018_
Date

BRAZOS - 000006

AWS–12
Prescribed by Secretary of State
Sec. 87.0431, Texas Election Code
3/07

## NOTICE OF REJECTED BALLOT

This is to serve as notice that your ballot for the _2018 GENERAL_ Election was rejected by the early voting ballot board and was not counted.

Name of Voter _PENNY McCULLUM MATTHEWS_

VUID Number _1D4 05897 96_

Reason for Rejection: (Check As Appropriate)

_____ 1) Certificate on carrier envelope was not properly executed.

_____ You failed to sign your signature or make your mark.

_____ The witness failed to indicate on the envelope that you could not make a mark.

_____ The assistant or witness failed to print their name.

_____ The assistant or witness failed to sign their name.

_____ The residence address of the assistant or witness was not given.

✓ 2) It was determined that the signature on the application for ballot by mail and carrier envelope was not signed by the same person.

_____ 3) Application for ballot by mail did not state a legal ground for voting by mail.

_____ 4) Voter registration records indicated you did not have an effective registration for this election.

_____ 5) Address to which ballot was mailed was not outside the county.  Voting early by mail due to expected absence from the county requires balloting materials be mailed to an address outside the county.

_____ 6) The residence address on the statement of residence is not located in the political subdivision conducting the election.

_____ 7) The mailing address on the application for ballot by mail did not match your voter registration address nor did the mailing address match any addresses provided on your statement of residence.  Since you did not indicate on your application for a ballot by mail that you were having your ballot mailed to a hospital, retirement center, long term care facility, nursing home, jail, or a relative, your ballot was rejected.

_____ 8) The statement of residence was not included in the carrier envelope.

_____ 9) No identification was included with your mail ballot.

_____ 10) Other: _____

_____

Signature of Early Voting Ballot Board Judge

_11/3/2018_

Date

BRAZOS - 000009

AW5-42
Prescribed by Secretary of State
Sec. 87.0431, Texas Election Code
3/07

## NOTICE OF REJECTED BALLOT

This is to serve as notice that your ballot for the _2018 General_ Election was rejected by the early voting ballot board and was not counted.

Name of Voter _Nena Kelly Harden_

VUID Number _100 579 33 79_

Reason for Rejection: (Check As Appropriate)

_____ 1)   Certificate on carrier envelope was not properly executed.

      \_\_\_\_\_ You failed to sign your signature or make your mark.

      \_\_\_\_\_ The witness failed to indicate on the envelope that you could not make a mark.

      \_\_\_\_\_ The assistant or witness failed to print their name.

      \_\_\_\_\_ The assistant or witness failed to sign their name.

      \_\_\_\_\_ The residence address of the assistant or witness was not given.

_✓_ 2)   It was determined that the signature on the application for ballot by mail and carrier envelope was not signed by the same person.

_____ 3)   Application for ballot by mail did not state a legal ground for voting by mail.

_____ 4)   Voter registration records indicated you did not have an effective registration for this election.

_____ 5)   Address to which ballot was mailed was not outside the county.  Voting early by mail due to expected absence from the county requires balloting materials be mailed to an address outside the county.

_____ 6)   The residence address on the statement of residence is not located in the political subdivision conducting the election.

_____ 7)   The mailing address on the application for ballot by mail did not match your voter registration address nor did the mailing address match any addresses provided on your statement of residence.  Since you did not indicate on your application for a ballot by mail that you were having your ballot mailed to a hospital, retirement center, long term care facility, nursing home, jail, or a relative, your ballot was rejected.

_____ 8)   The statement of residence was not included in the carrier envelope.

_____ 9)   No identification was included with your mail ballot.

_____ 10)   Other:

_____

_RW Davis_
Signature of Early Voting Ballot Board Judge

_11 / 3 / 2018_
Date

BRAZOS - 000010

AW5-42
Prescribed by Secretary of State
Sec. 87.0431, Texas Election Code
3/07

## NOTICE OF REJECTED BALLOT

This is to serve as notice that your ballot for the _2018 General_ Election was rejected by the early voting ballot board and was not counted.

Name of Voter _Trevor Colin Goehl_

VUID Number _1166 7 47499_

Reason for Rejection: (Check As Appropriate)

_____ 1) Certificate on carrier envelope was not properly executed.

    _____ You failed to sign your signature or make your mark.

    _____ The witness failed to indicate on the envelope that you could not make a mark.

    _____ The assistant or witness failed to print their name.

    _____ The assistant or witness failed to sign their name.

    _____ The residence address of the assistant or witness was not given.

_✓_ 2) It was determined that the signature on the application for ballot by mail and carrier envelope was not signed by the same person.

_____ 3) Application for ballot by mail did not state a legal ground for voting by mail.

_____ 4) Voter registration records indicated you did not have an effective registration for this election.

_____ 5) Address to which ballot was mailed was not outside the county. Voting early by mail due to expected absence from the county requires balloting materials be mailed to an address outside the county.

_____ 6) The residence address on the statement of residence is not located in the political subdivision conducting the election.

_____ 7) The mailing address on the application for ballot by mail did not match your voter registration address nor did the mailing address match any addresses provided on your statement of residence. Since you did not indicate on your application for a ballot by mail that you were having your ballot mailed to a hospital, retirement center, long term care facility, nursing home, jail, or a relative, your ballot was rejected.

_____ 8) The statement of residence was not included in the carrier envelope.

_____ 9) No identification was included with your mail ballot.

_____ 10) Other:

_____

_Rev Davis_

Signature of Early Voting Ballot Board Judge

_11/3/2018_

Date

BRAZOS - 000011

AW5-42
Prescribed by Secretary of State
Sec. 87.0431, Texas Election Code
3/07

## NOTICE OF REJECTED BALLOT

This is to serve as notice that your ballot for the *208 General* Election was rejected by the early voting ballot board and was not counted.

Name of Voter _*Manuel Pina*_

VUID Number _*104075 4332*_

Reason for Rejection: (Check As Appropriate)

_____ 1) Certificate on carrier envelope was not properly executed.

    _____ You failed to sign your signature or make your mark.

    _____ The witness failed to indicate on the envelope that you could not make a mark.

    _____ The assistant or witness failed to print their name.

    _____ The assistant or witness failed to sign their name.

    _____ The residence address of the assistant or witness was not given.

___✓___ 2) It was determined that the signature on the application for ballot by mail and carrier envelope was not signed by the same person.

_____ 3) Application for ballot by mail did not state a legal ground for voting by mail.

_____ 4) Voter registration records indicated you did not have an effective registration for this election.

_____ 5) Address to which ballot was mailed was not outside the county. Voting early by mail due to expected absence from the county requires balloting materials be mailed to an address outside the county.

_____ 6) The residence address on the statement of residence is not located in the political subdivision conducting the election.

_____ 7) The mailing address on the application for ballot by mail did not match your voter registration address nor did the mailing address match any addresses provided on your statement of residence. Since you did not indicate on your application for a ballot by mail that you were having your ballot mailed to a hospital, retirement center, long term care facility, nursing home, jail, or a relative, your ballot was rejected.

_____ 8) The statement of residence was not included in the carrier envelope.

_____ 9) No identification was included with your mail ballot.

_____ 10) Other:

_____

_*RW Davis*_
Signature of Early Voting Ballot Board Judge

_*11/3/2018*_
Date

BRAZOS - 000013

AW5-42
Prescribed by Secretary of State
Sec. 87.0431, Texas Election Code
3/07

## NOTICE OF REJECTED BALLOT

This is to serve as notice that your ballot for the ___2018 General___ Election was rejected by the early voting ballot board and was not counted.

Name of Voter ___Ray Willie McDade___

VUID Number ___10415155386___

Reason for Rejection: (Check As Appropriate)

| | | |
|---|---|---|
| _____ | 1) | Certificate on carrier envelope was not properly executed. |
| | | _____ You failed to sign your signature or make your mark. |
| | | _____ The witness failed to indicate on the envelope that you could not make a mark. |
| | | _____ The assistant or witness failed to print their name. |
| | | _____ The assistant or witness failed to sign their name. |
| | | _____ The residence address of the assistant or witness was not given. |
| ✓ | 2) | It was determined that the signature on the application for ballot by mail and carrier envelope was not signed by the same person. |
| _____ | 3) | Application for ballot by mail did not state a legal ground for voting by mail. |
| _____ | 4) | Voter registration records indicated you did not have an effective registration for this election. |
| _____ | 5) | Address to which ballot was mailed was not outside the county.  Voting early by mail due to expected absence from the county requires balloting materials be mailed to an address outside the county. |
| _____ | 6) | The residence address on the statement of residence is not located in the political subdivision conducting the election. |
| _____ | 7) | The mailing address on the application for ballot by mail did not match your voter registration address nor did the mailing address match any addresses provided on your statement of residence.  Since you did not indicate on your application for a ballot by mail that you were having your ballot mailed to a hospital, retirement center, long term care facility, nursing home, jail, or a relative, your ballot was rejected. |
| _____ | 8) | The statement of residence was not included in the carrier envelope. |
| _____ | 9) | No identification was included with your mail ballot. |
| _____ | 10) | Other: |

_____

___RW Davis___
Signature of Early Voting Ballot Board Judge

___11/3/2018___
Date

BRAZOS - 000014

AW5-42
Prescribed by Secretary of State
Sec. 87.0431, Texas Election Code
3/07

## NOTICE OF REJECTED BALLOT

This is to serve as notice that your ballot for the _____ 2018 *General* _____ Election was rejected by the early voting ballot board and was not counted.

Name of Voter _____ *Karina Alanis- Baldera* _____

VUID Number _____ *1886 07620* _____

Reason for Rejection: (Check As Appropriate)

_____  1)  Certificate on carrier envelope was not properly executed.

        _____ You failed to sign your signature or make your mark.

        _____ The witness failed to indicate on the envelope that you could not make a mark.

        _____ The assistant or witness failed to print their name.

        _____ The assistant or witness failed to sign their name.

        _____ The residence address of the assistant or witness was not given.

  ✓      2)  It was determined that the signature on the application for ballot by mail and carrier envelope was not signed by the same person.

_____  3)  Application for ballot by mail did not state a legal ground for voting by mail.

_____  4)  Voter registration records indicated you did not have an effective registration for this election.

_____  5)  Address to which ballot was mailed was not outside the county.  Voting early by mail due to expected absence from the county requires balloting materials be mailed to an address outside the county.

_____  6)  The residence address on the statement of residence is not located in the political subdivision conducting the election.

_____  7)  The mailing address on the application for ballot by mail did not match your voter registration address nor did the mailing address match any addresses provided on your statement of residence.  Since you did not indicate on your application for a ballot by mail that you were having your ballot mailed to a hospital, retirement center, long term care facility, nursing home, jail, or a relative, your ballot was rejected.

_____  8)  The statement of residence was not included in the carrier envelope.

_____  9)  No identification was included with your mail ballot.

_____  10)  Other: _____

_____

_____ *RW Davis* _____

Signature of Early Voting Ballot Board Judge

_____ *11/ 3 /2018* _____

Date

BRAZOS - 000015

AW5-42
Prescribed by Secretary of State
Sec. 87.0431, Texas Election Code
3/07

## NOTICE OF REJECTED BALLOT

This is to serve as notice that your ballot for the ___General___ Election was rejected by the early voting ballot board and was not counted.

Name of Voter ___Willie Arthur Seg fus___

VUID Number ___10405 20625___

Reason for Rejection: (Check As Appropriate)

_____ 1) Certificate on carrier envelope was not properly executed.
      _____ You failed to sign your signature or make your mark.
      _____ The witness failed to indicate on the envelope that you could not make a mark.
      _____ The assistant or witness failed to print their name.
      _____ The assistant or witness failed to sign their name.
      _____ The residence address of the assistant or witness was not given.

___✓___ 2) It was determined that the signature on the application for ballot by mail and carrier envelope was not signed by the same person.

_____ 3) Application for ballot by mail did not state a legal ground for voting by mail.

_____ 4) Voter registration records indicated you did not have an effective registration for this election.

_____ 5) Address to which ballot was mailed was not outside the county.  Voting early by mail due to expected absence from the county requires balloting materials be mailed to an address outside the county.

_____ 6) The residence address on the statement of residence is not located in the political subdivision conducting the election.

_____ 7) The mailing address on the application for ballot by mail did not match your voter registration address nor did the mailing address match any addresses provided on your statement of residence.  Since you did not indicate on your application for a ballot by mail that you were having your ballot mailed to a hospital, retirement center, long term care facility, nursing home, jail, or a relative, your ballot was rejected.

_____ 8) The statement of residence was not included in the carrier envelope.

_____ 9) No identification was included with your mail ballot.

_____ 10) Other: _____

_____

_____
Signature of Early Voting Ballot Board Judge

___11/3/2018___
_____
Date

BRAZOS - 000016

AW5-42
Prescribed by Secretary of State
Sec. 87.0431, Texas Election Code
3/07

## NOTICE OF REJECTED BALLOT

This is to serve as notice that your ballot for the _2018 General_ Election was rejected by the early voting ballot board and was not counted.

Name of Voter _Helen Cash Ussery_

VUID Number _10073 72497_

Reason for Rejection: (Check As Appropriate)

_____ 1)    Certificate on carrier envelope was not properly executed.
    _____ You failed to sign your signature or make your mark.
    _____ The witness failed to indicate on the envelope that you could not make a mark.
    _____ The assistant or witness failed to print their name.
    _____ The assistant or witness failed to sign their name.
    _____ The residence address of the assistant or witness was not given.

__✓__ 2)    It was determined that the signature on the application for ballot by mail and carrier envelope was not signed by the same person.

_____ 3)    Application for ballot by mail did not state a legal ground for voting by mail.

_____ 4)    Voter registration records indicated you did not have an effective registration for this election.

_____ 5)    Address to which ballot was mailed was not outside the county.  Voting early by mail due to expected absence from the county requires balloting materials be mailed to an address outside the county.

_____ 6)    The residence address on the statement of residence is not located in the political subdivision conducting the election.

_____ 7)    The mailing address on the application for ballot by mail did not match your voter registration address nor did the mailing address match any addresses provided on your statement of residence.  Since you did not indicate on your application for a ballot by mail that you were having your ballot mailed to a hospital, retirement center, long term care facility, nursing home, jail, or a relative, your ballot was rejected.

_____ 8)    The statement of residence was not included in the carrier envelope.

_____ 9)    No identification was included with your mail ballot.

_____ 10)   Other:
   _____

_RW Davis_
Signature of Early Voting Ballot Board Judge

_11/3/2018_
Date

BRAZOS - 000018

AW5-42
Prescribed by Secretary of State
Sec. 87.0431, Texas Election Code
3/07

## NOTICE OF REJECTED BALLOT

This is to serve as notice that your ballot for the *2018 General* election was rejected by the early voting ballot board and was not counted.

Name of Voter _David S. Livingston_

VUID Number _104074739__

Reason for Rejection: (Check As Appropriate)

_____ 1) Certificate on carrier envelope was not properly executed.
       _____ You failed to sign your signature or make your mark.
       _____ The witness failed to indicate on the envelope that you could not make a mark.
       _____ The assistant or witness failed to print their name.
       _____ The assistant or witness failed to sign their name.
       _____ The residence address of the assistant or witness was not given.

__✓__ 2) It was determined that the signature on the application for ballot by mail and carrier envelope was not signed by the same person.

_____ 3) Application for ballot by mail did not state a legal ground for voting by mail.

_____ 4) Voter registration records indicated you did not have an effective registration for this election.

_____ 5) Address to which ballot was mailed was not outside the county. Voting early by mail due to expected absence from the county requires balloting materials be mailed to an address outside the county.

_____ 6) The residence address on the statement of residence is not located in the political subdivision conducting the election.

_____ 7) The mailing address on the application for ballot by mail did not match your voter registration address nor did the mailing address match any addresses provided on your statement of residence. Since you did not indicate on your application for a ballot by mail that you were having your ballot mailed to a hospital, retirement center, long term care facility, nursing home, jail, or a relative, your ballot was rejected.

_____ 8) The statement of residence was not included in the carrier envelope.

_____ 9) No identification was included with your mail ballot.

_____ 10) Other:

         _____

_RW Davis_
Signature of Early Voting Ballot Board Judge

_11/3/2018_
Date

BRAZOS - 000019

AW5-42
Prescribed by Secretary of State
Sec. 87.0431, Texas Election Code
3/07

## NOTICE OF REJECTED BALLOT

This is to serve as notice that your ballot for the *2018 General* Election was rejected
by the early voting ballot board and was not counted.

Name of Voter *Dorotha Jean Smith*

VUID Number *10406277259*

Reason for Rejection: (Check As Appropriate)

_____   1)   Certificate on carrier envelope was not properly executed.

      _____   You failed to sign your signature or make your mark.

      _____   The witness failed to indicate on the envelope that you could not
make a mark.

      _____   The assistant or witness failed to print their name.

      _____   The assistant or witness failed to sign their name.

      _____   The residence address of the assistant or witness was not given.

____✓____   2)   It was determined that the signature on the application for ballot by mail and
carrier envelope was not signed by the same person.

_____   3)   Application for ballot by mail did not state a legal ground for voting by mail.

_____   4)   Voter registration records indicated you did not have an effective registration
for this election.

_____   5)   Address to which ballot was mailed was not outside the county.  Voting
early by mail due to expected absence from the county requires balloting
materials be mailed to an address outside the county.

_____   6)   The residence address on the statement of residence is not located in the
political subdivision conducting the election.

_____   7)   The mailing address on the application for ballot by mail did not match your
voter registration address nor did the mailing address match any addresses
provided on your statement of residence.  Since you did not indicate on your
application for a ballot by mail that you were having your ballot mailed to a
hospital, retirement center, long term care facility, nursing home, jail, or a
relative, your ballot was rejected.

_____   8)   The statement of residence was not included in the carrier envelope.

_____   9)   No identification was included with your mail ballot.

_____   10)   Other:

_____

*RW Davis*
_____
Signature of Early Voting Ballot Board Judge

*11/3/2018*
_____
Date

BRAZOS - 000020

AW5-42
Prescribed by Secretary of State
Sec. 87.0431, Texas Election Code
3/07

## NOTICE OF REJECTED BALLOT

This is to serve as notice that your ballot for the 2018 *General* Election was rejected by the early voting ballot board and was not counted.

Name of Voter *Martha Elizabeth Quinn*
VUID Number *104 895 5077*

Reason for Rejection: (Check As Appropriate)

_____ 1) Certificate on carrier envelope was not properly executed.
 _____ You failed to sign your signature or make your mark.
 _____ The witness failed to indicate on the envelope that you could not make a mark.
 _____ The assistant or witness failed to print their name.
 _____ The assistant or witness failed to sign their name.
 _____ The residence address of the assistant or witness was not given.

✓ 2) It was determined that the signature on the application for ballot by mail and carrier envelope was not signed by the same person.

_____ 3) Application for ballot by mail did not state a legal ground for voting by mail.

_____ 4) Voter registration records indicated you did not have an effective registration for this election.

_____ 5) Address to which ballot was mailed was not outside the county. Voting early by mail due to expected absence from the county requires balloting materials be mailed to an address outside the county.

_____ 6) The residence address on the statement of residence is not located in the political subdivision conducting the election.

_____ 7) The mailing address on the application for ballot by mail did not match your voter registration address nor did the mailing address match any addresses provided on your statement of residence. Since you did not indicate on your application for a ballot by mail that you were having your ballot mailed to a hospital, retirement center, long term care facility, nursing home, jail, or a relative, your ballot was rejected.

_____ 8) The statement of residence was not included in the carrier envelope.

_____ 9) No identification was included with your mail ballot.

_____ 10) Other:
_____

*R W Davis*
Signature of Early Voting Ballot Board Judge

*11 / 3 / 2018*
Date

BRAZOS - 000021

AW5–42
Prescribed by Secretary of State
Sec. 87.0431, Texas Election Code
3/07

# NOTICE OF REJECTED BALLOT

This is to serve as notice that your ballot for the _2018 General_ Election was rejected by the early voting ballot board and was not counted.

Name of Voter _Monrow Renchie_

VUID Number _104054 7818_

Reason for Rejection: (Check As Appropriate)

_____   1)   Certificate on carrier envelope was not properly executed.
          _____ You failed to sign your signature or make your mark.
          _____ The witness failed to indicate on the envelope that you could not make a mark.
          _____ The assistant or witness failed to print their name.
          _____ The assistant or witness failed to sign their name.
          _____ The residence address of the assistant or witness was not given.

___✓___   2)   It was determined that the signature on the application for ballot by mail and carrier envelope was not signed by the same person.

_____   3)   Application for ballot by mail did not state a legal ground for voting by mail.

_____   4)   Voter registration records indicated you did not have an effective registration for this election.

_____   5)   Address to which ballot was mailed was not outside the county.  Voting early by mail due to expected absence from the county requires balloting materials be mailed to an address outside the county.

_____   6)   The residence address on the statement of residence is not located in the political subdivision conducting the election.

_____   7)   The mailing address on the application for ballot by mail did not match your voter registration address nor did the mailing address match any addresses provided on your statement of residence.  Since you did not indicate on your application for a ballot by mail that you were having your ballot mailed to a hospital, retirement center, long term care facility, nursing home, jail, or a relative, your ballot was rejected.

_____   8)   The statement of residence was not included in the carrier envelope.

_____   9)   No identification was included with your mail ballot.

_____   10)   Other:

_____

_R W Davis_
Signature of Early Voting Ballot Board Judge

_11 / 3 / 2018_
Date

BRAZOS - 000022

AW5-42
Prescribed by Secretary of State
Sec. 87.0431, Texas Election Code
3/07

## NOTICE OF REJECTED BALLOT

This is to serve as notice that your ballot for the _2018 General_ Election was rejected by the early voting ballot board and was not counted.

Name of Voter _Billy Carl Goold Sr_

VUID Number _1040568287_

Reason for Rejection: (Check As Appropriate)

_____  1)  Certificate on carrier envelope was not properly executed.
    \_\_\_\_\_ You failed to sign your signature or make your mark.
    \_\_\_\_\_ The witness failed to indicate on the envelope that you could not make a mark.
    \_\_\_\_\_ The assistant or witness failed to print their name.
    \_\_\_\_\_ The assistant or witness failed to sign their name.
    \_\_\_\_\_ The residence address of the assistant or witness was not given.

_✓_  2)  It was determined that the signature on the application for ballot by mail and carrier envelope was not signed by the same person.

_____  3)  Application for ballot by mail did not state a legal ground for voting by mail.

_____  4)  Voter registration records indicated you did not have an effective registration for this election.

_____  5)  Address to which ballot was mailed was not outside the county. Voting early by mail due to expected absence from the county requires balloting materials be mailed to an address outside the county.

_____  6)  The residence address on the statement of residence is not located in the political subdivision conducting the election.

_____  7)  The mailing address on the application for ballot by mail did not match your voter registration address nor did the mailing address match any addresses provided on your statement of residence. Since you did not indicate on your application for a ballot by mail that you were having your ballot mailed to a hospital, retirement center, long term care facility, nursing home, jail, or a relative, your ballot was rejected.

_____  8)  The statement of residence was not included in the carrier envelope.

_____  9)  No identification was included with your mail ballot.

_____  10)  Other:

_____

_RW Davis_

Signature of Early Voting Ballot Board Judge

_11/3/2018_

Date

BRAZOS - 000023

AW5-42
Prescribed by Secretary of State
Sec. 87.0431, Texas Election Code
3/07

## NOTICE OF REJECTED BALLOT

This is to serve as notice that your ballot for the *2018 General* Election was rejected by the early voting ballot board and was not counted.

Name of Voter *Shirley Rae Colgrove*

VUID Number *10410906177*

Reason for Rejection: (Check As Appropriate)

_____ 1) Certificate on carrier envelope was not properly executed.
        _____ You failed to sign your signature or make your mark.
        _____ The witness failed to indicate on the envelope that you could not make a mark.
        _____ The assistant or witness failed to print their name.
        _____ The assistant or witness failed to sign their name.
        _____ The residence address of the assistant or witness was not given.

   ✓ 2) It was determined that the signature on the application for ballot by mail and carrier envelope was not signed by the same person.

_____ 3) Application for ballot by mail did not state a legal ground for voting by mail.

_____ 4) Voter registration records indicated you did not have an effective registration for this election.

_____ 5) Address to which ballot was mailed was not outside the county.  Voting early by mail due to expected absence from the county requires balloting materials be mailed to an address outside the county.

_____ 6) The residence address on the statement of residence is not located in the political subdivision conducting the election.

_____ 7) The mailing address on the application for ballot by mail did not match your voter registration address nor did the mailing address match any addresses provided on your statement of residence.  Since you did not indicate on your application for a ballot by mail that you were having your ballot mailed to a hospital, retirement center, long term care facility, nursing home, jail, or a relative, your ballot was rejected.

_____ 8) The statement of residence was not included in the carrier envelope.

_____ 9) No identification was included with your mail ballot.

_____ 10) Other:

_____

*R W Davis*
_____
Signature of Early Voting Ballot Board Judge

*11/3/2018*
_____
Date

BRAZOS - 000024

AW5-42
Prescribed by Secretary of State
Sec. 87.0431, Texas Election Code
3/07

# NOTICE OF REJECTED BALLOT

This is to serve as notice that your ballot for the *2018 General* Election was rejected by the early voting ballot board and was not counted.

Name of Voter *James Edward Shepard*

VUID Number *1 6 5 2 0 4 3 8 4*

Reason for Rejection: (Check As Appropriate)

_____ 1) Certificate on carrier envelope was not properly executed.
        _____ You failed to sign your signature or make your mark.
        _____ The witness failed to indicate on the envelope that you could not make a mark.
        _____ The assistant or witness failed to print their name.
        _____ The assistant or witness failed to sign their name.
        _____ The residence address of the assistant or witness was not given.

___✓___ 2) It was determined that the signature on the application for ballot by mail and carrier envelope was not signed by the same person.

_____ 3) Application for ballot by mail did not state a legal ground for voting by mail.

_____ 4) Voter registration records indicated you did not have an effective registration for this election.

_____ 5) Address to which ballot was mailed was not outside the county.  Voting early by mail due to expected absence from the county requires balloting materials be mailed to an address outside the county.

_____ 6) The residence address on the statement of residence is not located in the political subdivision conducting the election.

_____ 7) The mailing address on the application for ballot by mail did not match your voter registration address nor did the mailing address match any addresses provided on your statement of residence.  Since you did not indicate on your application for a ballot by mail that you were having your ballot mailed to a hospital, retirement center, long term care facility, nursing home, jail, or a relative, your ballot was rejected.

_____ 8) The statement of residence was not included in the carrier envelope.

_____ 9) No identification was included with your mail ballot.

_____ 10) Other: _____

_____

Signature of Early Voting Ballot Board Judge

*11/3/2018*

Date

BRAZOS - 000026

AW5-42
Prescribed by Secretary of State
Sec. 87.0431, Texas Election Code
3/07

## NOTICE OF REJECTED BALLOT

This is to serve as notice that your ballot for the _General 2018_ Election was rejected by the early voting ballot board and was not counted.

Name of Voter _David Leland Carlton_

VUID Number _1040790011_

Reason for Rejection: (Check As Appropriate)

_____  1)  Certificate on carrier envelope was not properly executed.
\_\_\_\_\_ You failed to sign your signature or make your mark.
\_\_\_\_\_ The witness failed to indicate on the envelope that you could not make a mark.
\_\_\_\_\_ The assistant or witness failed to print their name.
\_\_\_\_\_ The assistant or witness failed to sign their name.
\_\_\_\_\_ The residence address of the assistant or witness was not given.

✓  2)  It was determined that the signature on the application for ballot by mail and carrier envelope was not signed by the same person.

_____  3)  Application for ballot by mail did not state a legal ground for voting by mail.

_____  4)  Voter registration records indicated you did not have an effective registration for this election.

_____  5)  Address to which ballot was mailed was not outside the county.  Voting early by mail due to expected absence from the county requires balloting materials be mailed to an address outside the county.

_____  6)  The residence address on the statement of residence is not located in the political subdivision conducting the election.

_____  7)  The mailing address on the application for ballot by mail did not match your voter registration address nor did the mailing address match any addresses provided on your statement of residence.  Since you did not indicate on your application for a ballot by mail that you were having your ballot mailed to a hospital, retirement center, long term care facility, nursing home, jail, or a relative, your ballot was rejected.

_____  8)  The statement of residence was not included in the carrier envelope.

_____  9)  No identification was included with your mail ballot.

_____  10)  Other:

_____

_RW Davis_
Signature of Early Voting Ballot Board Judge

_11/3/2018_
Date

BRAZOS - 000027

727

AW5-42
Prescribed by Secretary of State
Sec. 87.0431, Texas Election Code
3/07

## NOTICE OF REJECTED BALLOT

This is to serve as notice that your ballot for the _General 2018_ election was rejected by the early voting ballot board and was not counted.

Name of Voter _Vera Veronica Pillano_

VUID Number _1040061343_

Reason for Rejection: (Check As Appropriate)

_____ 1)   Certificate on carrier envelope was not properly executed.
         _____ You failed to sign your signature or make your mark.
         _____ The witness failed to indicate on the envelope that you could not make a mark.
         _____ The assistant or witness failed to print their name.
         _____ The assistant or witness failed to sign their name.
         _____ The residence address of the assistant or witness was not given.

__✓____ 2)   It was determined that the signature on the application for ballot by mail and carrier envelope was not signed by the same person.

_____ 3)   Application for ballot by mail did not state a legal ground for voting by mail.

_____ 4)   Voter registration records indicated you did not have an effective registration for this election.

_____ 5)   Address to which ballot was mailed was not outside the county.  Voting early by mail due to expected absence from the county requires balloting materials be mailed to an address outside the county.

_____ 6)   The residence address on the statement of residence is not located in the political subdivision conducting the election.

_____ 7)   The mailing address on the application for ballot by mail did not match your voter registration address nor did the mailing address match any addresses provided on your statement of residence.  Since you did not indicate on your application for a ballot by mail that you were having your ballot mailed to a hospital, retirement center, long term care facility, nursing home, jail, or a relative, your ballot was rejected.

_____ 8)   The statement of residence was not included in the carrier envelope.

_____ 9)   No identification was included with your mail ballot.

_____ 10)  Other:

_____

_Rw Davis_
Signature of Early Voting Ballot Board Judge

_11 / 3 / 2018_
Date

BRAZOS - 000030

AW5-42
Prescribed by Secretary of State
Sec. 87.0431, Texas Election Code
3/07

# NOTICE OF REJECTED BALLOT

This is to serve as notice that your ballot for the *2018 General* Election was rejected by the early voting ballot board and was not counted.

Name of Voter *Mary L Chapman*
VUID Number *1041077694*

Reason for Rejection: (Check As Appropriate)

_____ 1) Certificate on carrier envelope was not properly executed.
   _____ You failed to sign your signature or make your mark.
   _____ The witness failed to indicate on the envelope that you could not make a mark.
   _____ The assistant or witness failed to print their name.
   _____ The assistant or witness failed to sign their name.
   _____ The residence address of the assistant or witness was not given.

✓ 2) It was determined that the signature on the application for ballot by mail and carrier envelope was not signed by the same person.

_____ 3) Application for ballot by mail did not state a legal ground for voting by mail.

_____ 4) Voter registration records indicated you did not have an effective registration for this election.

_____ 5) Address to which ballot was mailed was not outside the county.  Voting early by mail due to expected absence from the county requires balloting materials be mailed to an address outside the county.

_____ 6) The residence address on the statement of residence is not located in the political subdivision conducting the election.

_____ 7) The mailing address on the application for ballot by mail did not match your voter registration address nor did the mailing address match any addresses provided on your statement of residence.  Since you did not indicate on your application for a ballot by mail that you were having your ballot mailed to a hospital, retirement center, long term care facility, nursing home, jail, or a relative, your ballot was rejected.

_____ 8) The statement of residence was not included in the carrier envelope.

_____ 9) No identification was included with your mail ballot.

_____ 10) Other: _____

_____
Signature of Early Voting Ballot Board Judge

_____11/3/2015_____
Date

BRAZOS - 000031

AW5-42
Prescribed by Secretary of State
Sec. 87.0431, Texas Election Code
3/07

## NOTICE OF REJECTED BALLOT

This is to serve as notice that your ballot for the *General, 2018* Election was rejected by the early voting ballot board and was not counted.

Name of Voter *Edna Merle Bondo*

VUID Number *1021039685*

Reason for Rejection: (Check As Appropriate)

_____  1)  Certificate on carrier envelope was not properly executed.
        _____ You failed to sign your signature or make your mark.
        _____ The witness failed to indicate on the envelope that you could not make a mark.
        _____ The assistant or witness failed to print their name.
        _____ The assistant or witness failed to sign their name.
        _____ The residence address of the assistant or witness was not given.

___✓___  2)  It was determined that the signature on the application for ballot by mail and carrier envelope was not signed by the same person.

_____  3)  Application for ballot by mail did not state a legal ground for voting by mail.

_____  4)  Voter registration records indicated you did not have an effective registration for this election.

_____  5)  Address to which ballot was mailed was not outside the county.  Voting early by mail due to expected absence from the county requires balloting materials be mailed to an address outside the county.

_____  6)  The residence address on the statement of residence is not located in the political subdivision conducting the election.

_____  7)  The mailing address on the application for ballot by mail did not match your voter registration address nor did the mailing address match any addresses provided on your statement of residence.  Since you did not indicate on your application for a ballot by mail that you were having your ballot mailed to a hospital, retirement center, long term care facility, nursing home, jail, or a relative, your ballot was rejected.

_____  8)  The statement of residence was not included in the carrier envelope.

_____  9)  No identification was included with your mail ballot.

_____  10)  Other: _____

_____

_____*RW Davis*_____
Signature of Early Voting Ballot Board Judge

_____*11/3/2018*_____
Date

BRAZOS - 000034

AW5-42
Prescribed by Secretary of State
Sec. 87.0431, Texas Election Code
3/07

## NOTICE OF REJECTED BALLOT

This is to serve as notice that your ballot for the *2018 General* Election was rejected by the early voting ballot board and was not counted.

Name of Voter *John Davis Turner*

VUID Number *1022652371*

Reason for Rejection: (Check As Appropriate)

_____ 1) Certificate on carrier envelope was not properly executed.
     _____ You failed to sign your signature or make your mark.
     _____ The witness failed to indicate on the envelope that you could not make a mark.
     _____ The assistant or witness failed to print their name.
     _____ The assistant or witness failed to sign their name.
     _____ The residence address of the assistant or witness was not given.

__X__ 2) It was determined that the signature on the application for ballot by mail and carrier envelope was not signed by the same person.

_____ 3) Application for ballot by mail did not state a legal ground for voting by mail.

_____ 4) Voter registration records indicated you did not have an effective registration for this election.

_____ 5) Address to which ballot was mailed was not outside the county. Voting early by mail due to expected absence from the county requires balloting materials be mailed to an address outside the county.

_____ 6) The residence address on the statement of residence is not located in the political subdivision conducting the election.

_____ 7) The mailing address on the application for ballot by mail did not match your voter registration address nor did the mailing address match any addresses provided on your statement of residence. Since you did not indicate on your application for a ballot by mail that you were having your ballot mailed to a hospital, retirement center, long term care facility, nursing home, jail, or a relative, your ballot was rejected.

_____ 8) The statement of residence was not included in the carrier envelope.

_____ 9) No identification was included with your mail ballot.

_____ 10) Other:
_____

*R W Davis*
Signature of Early Voting Ballot Board Judge

*11 / 3 / 2018*
Date

BRAZOS - 000035

AW5-42
Prescribed by Secretary of State
Sec. 87.0431, Texas Election Code
3/07

## NOTICE OF REJECTED BALLOT

This is to serve as notice that your ballot for the *2018 General* Election was rejected by the early voting ballot board and was not counted.

Name of Voter *Leonard, Watts*

VUID Number *1190081598*

Reason for Rejection: (Check As Appropriate)

**1)** Certificate on carrier envelope was not properly executed.
  _____ You failed to sign your signature or make your mark.
  _____ The witness failed to indicate on the envelope that you could not make a mark.
  _____ The assistant or witness failed to print their name.
  _____ The assistant or witness failed to sign their name.
  _____ The residence address of the assistant or witness was not given.

**X**  **2)** It was determined that the signature on the application for ballot by mail and carrier envelope was not signed by the same person.

**3)** Application for ballot by mail did not state a legal ground for voting by mail.

**4)** Voter registration records indicated you did not have an effective registration for this election.

**5)** Address to which ballot was mailed was not outside the county.  Voting early by mail due to expected absence from the county requires balloting materials be mailed to an address outside the county.

**6)** The residence address on the statement of residence is not located in the political subdivision conducting the election.

**7)** The mailing address on the application for ballot by mail did not match your voter registration address nor did the mailing address match any addresses provided on your statement of residence.  Since you did not indicate on your application for a ballot by mail that you were having your ballot mailed to a hospital, retirement center, long term care facility, nursing home, jail, or a relative, your ballot was rejected.

**8)** The statement of residence was not included in the carrier envelope.

**9)** No identification was included with your mail ballot.

**10)** Other: _____

_____
Signature of Early Voting Ballot Board Judge

*11/3/2018*
Date

BRAZOS - 000036

AW5–42
Prescribed by Secretary of State
Sec. 87.0431, Texas Election Code
3/07

## NOTICE OF REJECTED BALLOT

This is to serve as notice that your ballot for the *2018 General* Election was rejected by the early voting ballot board and was not counted.

Name of Voter *Gregory Lee Cohan*

VUID Number *1040572553*

Reason for Rejection: (Check As Appropriate)

_____ 1) Certificate on carrier envelope was not properly executed.

       \_\_\_\_\_ You failed to sign your signature or make your mark.

       \_\_\_\_\_ The witness failed to indicate on the envelope that you could not make a mark.

       \_\_\_\_\_ The assistant or witness failed to print their name.

       \_\_\_\_\_ The assistant or witness failed to sign their name.

       \_\_\_\_\_ The residence address of the assistant or witness was not given.

✓ 2) It was determined that the signature on the application for ballot by mail and carrier envelope was not signed by the same person.

_____ 3) Application for ballot by mail did not state a legal ground for voting by mail.

_____ 4) Voter registration records indicated you did not have an effective registration for this election.

_____ 5) Address to which ballot was mailed was not outside the county. Voting early by mail due to expected absence from the county requires balloting materials be mailed to an address outside the county.

_____ 6) The residence address on the statement of residence is not located in the political subdivision conducting the election.

_____ 7) The mailing address on the application for ballot by mail did not match your voter registration address nor did the mailing address match any addresses provided on your statement of residence. Since you did not indicate on your application for a ballot by mail that you were having your ballot mailed to a hospital, retirement center, long term care facility, nursing home, jail, or a relative, your ballot was rejected.

_____ 8) The statement of residence was not included in the carrier envelope.

_____ 9) No identification was included with your mail ballot.

_____ 10) Other: _____

_____

Signature of Early Voting Ballot Board Judge

*11/3/2018*

Date

BRAZOS - 000037

AW5-42
Prescribed by Secretary of State
Sec. 87.0431, Texas Election Code
3/07

## NOTICE OF REJECTED BALLOT

This is to serve as notice that your ballot for the _2018 General_ Election was rejected by the early voting ballot board and was not counted.

Name of Voter _IDA Rice Holland_
VUID Number _1040641832_

Reason for Rejection: (Check As Appropriate)

_____ 1) Certificate on carrier envelope was not properly executed.
      _____ You failed to sign your signature or make your mark.
      _____ The witness failed to indicate on the envelope that you could not make a mark.
      _____ The assistant or witness failed to print their name.
      _____ The assistant or witness failed to sign their name.
      _____ The residence address of the assistant or witness was not given.

___✓___ 2) It was determined that the signature on the application for ballot by mail and carrier envelope was not signed by the same person.

_____ 3) Application for ballot by mail did not state a legal ground for voting by mail.

_____ 4) Voter registration records indicated you did not have an effective registration for this election.

_____ 5) Address to which ballot was mailed was not outside the county. Voting early by mail due to expected absence from the county requires balloting materials be mailed to an address outside the county.

_____ 6) The residence address on the statement of residence is not located in the political subdivision conducting the election.

_____ 7) The mailing address on the application for ballot by mail did not match your voter registration address nor did the mailing address match any addresses provided on your statement of residence. Since you did not indicate on your application for a ballot by mail that you were having your ballot mailed to a hospital, retirement center, long term care facility, nursing home, jail, or a relative, your ballot was rejected.

_____ 8) The statement of residence was not included in the carrier envelope.

_____ 9) No identification was included with your mail ballot.

_____ 10) Other:

_____

_R.W. Davis_
Signature of Early Voting Ballot Board Judge

_11 / 3 / 2018_
Date

BRAZOS - 000039

AW5-12
Prescribed by Secretary of State
Sec. 87.0431, Texas Election Code
3/07

## NOTICE OF REJECTED BALLOT

This is to serve as notice that your ballot for the _2018 General_ Election was rejected by the early voting ballot board and was not counted.

Name of Voter _Robert James Tessen_

VUID Number _113653 9471_

Reason for Rejection: (Check As Appropriate)

_____   1)   Certificate on carrier envelope was not properly executed.
      _____   You failed to sign your signature or make your mark.
      _____   The witness failed to indicate on the envelope that you could not make a mark.
      _____   The assistant or witness failed to print their name.
      _____   The assistant or witness failed to sign their name.
      _____   The residence address of the assistant or witness was not given.

___✓___   2)   It was determined that the signature on the application for ballot by mail and carrier envelope was not signed by the same person.

_____   3)   Application for ballot by mail did not state a legal ground for voting by mail.

_____   4)   Voter registration records indicated you did not have an effective registration for this election.

_____   5)   Address to which ballot was mailed was not outside the county.  Voting early by mail due to expected absence from the county requires balloting materials be mailed to an address outside the county.

_____   6)   The residence address on the statement of residence is not located in the political subdivision conducting the election.

_____   7)   The mailing address on the application for ballot by mail did not match your voter registration address nor did the mailing address match any addresses provided on your statement of residence.  Since you did not indicate on your application for a ballot by mail that you were having your ballot mailed to a hospital, retirement center, long term care facility, nursing home, jail, or a relative, your ballot was rejected.

_____   8)   The statement of residence was not included in the carrier envelope.

_____   9)   No identification was included with your mail ballot.

_____   10)   Other: _____

_____

_RW Davis_
Signature of Early Voting Ballot Board Judge

_11/3/2018_
Date

BRAZOS - 000040

AW5-42
Prescribed by Secretary of State
Sec. 87.0431, Texas Election Code
3/07

## NOTICE OF REJECTED BALLOT

This is to serve as notice that your ballot for the _2018 General_ Election was rejected by the early voting ballot board and was not counted.

Name of Voter _Betty Lou Jassawalla_
VUID Number _1181508038_

Reason for Rejection: (Check As Appropriate)

_____ 1) Certificate on carrier envelope was not properly executed.
_____ You failed to sign your signature or make your mark.
_____ The witness failed to indicate on the envelope that you could not make a mark.
_____ The assistant or witness failed to print their name.
_____ The assistant or witness failed to sign their name.
_____ The residence address of the assistant or witness was not given.

_✓_ 2) It was determined that the signature on the application for ballot by mail and carrier envelope was not signed by the same person.

_____ 3) Application for ballot by mail did not state a legal ground for voting by mail.

_____ 4) Voter registration records indicated you did not have an effective registration for this election.

_____ 5) Address to which ballot was mailed was not outside the county. Voting early by mail due to expected absence from the county requires balloting materials be mailed to an address outside the county.

_____ 6) The residence address on the statement of residence is not located in the political subdivision conducting the election.

_____ 7) The mailing address on the application for ballot by mail did not match your voter registration address nor did the mailing address match any addresses provided on your statement of residence. Since you did not indicate on your application for a ballot by mail that you were having your ballot mailed to a hospital, retirement center, long term care facility, nursing home, jail, or a relative, your ballot was rejected.

_____ 8) The statement of residence was not included in the carrier envelope.

_____ 9) No identification was included with your mail ballot.

_____ 10) Other:

_____

_Robert W Davis_
Signature of Early Voting Ballot Board Judge

_Nov 6, 2018_
Date

BRAZOS - 000045

AWS-42
Prescribed by Secretary of State
Sec. 87.0431, Texas Election Code
3/07

## NOTICE OF REJECTED BALLOT

This is to serve as notice that your ballot for the *General 2018* Election was rejected by the early voting ballot board and was not counted.

Name of Voter *George Adams Richardson*
VUID Number *1040885456*

Reason for Rejection: (Check As Appropriate)

_____   1)   Certificate on carrier envelope was not properly executed.
                       _____ You failed to sign your signature or make your mark.
                       _____ The witness failed to indicate on the envelope that you could not make a mark.
                       _____ The assistant or witness failed to print their name.
                       _____ The assistant or witness failed to sign their name.
                       _____ The residence address of the assistant or witness was not given.

__✓_____   2)   It was determined that the signature on the application for ballot by mail and carrier envelope was not signed by the same person.

_____   3)   Application for ballot by mail did not state a legal ground for voting by mail.

_____   4)   Voter registration records indicated you did not have an effective registration for this election.

_____   5)   Address to which ballot was mailed was not outside the county.  Voting early by mail due to expected absence from the county requires balloting materials be mailed to an address outside the county.

_____   6)   The residence address on the statement of residence is not located in the political subdivision conducting the election.

_____   7)   The mailing address on the application for ballot by mail did not match your voter registration address nor did the mailing address match any addresses provided on your statement of residence.  Since you did not indicate on your application for a ballot by mail that you were having your ballot mailed to a hospital, retirement center, long term care facility, nursing home, jail, or a relative, your ballot was rejected.

_____   8)   The statement of residence was not included in the carrier envelope.

_____   9)   No identification was included with your mail ballot.

_____   10)  Other:

_____

_____
Signature of Early Voting Ballot Board Judge

___11 / 3 / 2018___
Date

BRAZOS - 000075

RICHARDSON: PERLA LARA

Page 1

```
 1              UNITED STATES DISTRICT COURT
                WESTERN DISTRICT OF TEXAS
 2                 SAN ANTONIO DIVISION

 3   DR. GEORGE RICHARDSON;          )
     ROSALIE WEISFELD; AUSTIN JUSTICE )
 4   COALITION; COALITION OF TEXANS  )
     WITH DISABILITIES; MOVE TEXAS   )
 5   CIVIC FUND; LEAGUE OF WOMEN     )
     VOTERS OF TEXAS; and AMERICAN GI )
 6   FORUM OF TEXAS, INC.,           )
                                     )
 7          Plaintiffs,              )
                                     )Civil Case No.
 8   v.                              )5:19-cv-00963-OLG
                                     )
 9   TEXAS SECRETARY OF STATE; TRUDY )
     HANCOCK, in her official        )
10   capacity as BRAZOS COUNTY       )
     ELECTIONS ADMINISTRATOR; and    )
11   PERLA LARA, in her official     )
     capacity as CITY OF McALLEN,    )
12   TEXAS, SECRETARY,               )
                                     )
13          Defendants.              )

14          ********************************
            REMOTE VIDEOTAPED DEPOSITION OF
15                  PERLA LARA
                   May 14, 2020
16          ********************************

17          REMOTE VIDEOTAPED DEPOSITION OF PERLA LARA,

18      produced as a witness at the instance of the

19      Plaintiffs, and duly sworn, was taken in the

20      above-styled and numbered cause on May 14, 2020,

21      from 9:34 a.m. to 1:40 p.m., remotely before

22      Rebecca A. Graziano, CSR, RPR, CRR, in and for the

23      State of Texas, reported by machine shorthand,

24      pursuant to the Federal Rules of Civil Procedure

25      and the provisions stated on the record.
```

**CERTIFIED TRANSCRIPT**

RICHARDSON: PERLA LARA

Page 2

```
 1                    A P P E A R A N C E S

 2

 3     REPRESENTING THE PLAINTIFFS:

 4     Mr. Hani Mirza (via videoconference)
       Mr. Ryan Cox (via videoconference)
 5     Mr. Zachary D. Dolling (via videoconference)
       TEXAS CIVIL RIGHTS PROJECT
 6     1405 Montopolis Drive
       Austin, Texas  78741
 7     (512) 474-5073
       hani@texascivilrightsproject.org
 8     ryan@texascivilrightsproject.org
       zachary@texascivilrightsproject.org
 9
            and
10
       Mr. Samuel Kalar (via videoconference)
11     Ms. Joanna Suriani (via videoconference)
       WILLKIE FARR & GALLAGHER, LLP
12     787 Seventh Avenue
       New York City, New York  10019
13     (212) 728-8000
       skalar@willkie.com
14     jsuriani@willkie.com

15
       REPRESENTING THE DEFENDANT, TEXAS SECRETARY OF
16     STATE:

17     Ms. Anna Mackin (via videoconference)
       OFFICE OF THE ATTORNEY GENERAL
18     300 West 15th Street
       Austin, Texas  78701
19     (512) 463-2100
       anna.mackin@texasattorneygeneral.gov
20
       REPRESENTING THE DEFENDANT, TRUDY HANCOCK, in her
21     official capacity as BRAZOS COUNTY ELECTIONS
       ADMINISTRATOR:
22
       Mr. J. Eric Magee (via videoconference)
23     ALLISON, BASS & MAGEE, LLP
       402 West 12th Street
24     Austin, Texas  78701
       (512) 482-0701
25     e.magee@allison-bass.com
```

RICHARDSON: PERLA LARA

1            A P P E A R A N C E S

2

3    REPRESENTING THE DEFENDANT, PERLA LARA, in her
     official capacity as CITY OF McALLEN, TEXAS,
4    SECRETARY:

5     Mr. Isaac J. Tawil (via videoconference)
      Mr. Austin W. Stevenson (via videoconference)
6     CITY OF McALLEN CITY ATTORNEY'S OFFICE
      1300 Houston Avenue, Second Floor
7     McAllen, Texas  78501
      (956) 681-3111
8     itawil@mcallen.net
      astevenson@mcallen.net

9

10   ALSO PRESENT:

11    Mr. Bruce Erratt (via videoconference)

12

     VIDEOCONFERENCE TECHNICIAN:
13
      Ms. Maygun Flanagan
14

15

16

17

18

19

20

21

22

23

24

25

RICHARDSON: PERLA LARA

Page 4

1                        INDEX

                                              PAGE

2

3    EXAMINATION BY MR. COX........................... 7

4

5                       EXHIBITS

6    NUMBER          DESCRIPTION                   PAGE

7    Exhibit 1    Notice of Deposition................. 14

8    Exhibit 2    City of McAllen's Objections and

9                 Answers to Plaintiffs' First Set of

10               Discovery Requests................... 94

11   Exhibit 3    Exhibit E to Document Production..... 104

12   Exhibit 4    Exhibit L to Document Production..... 110

13   Exhibit 5    Exhibit M to Document Production..... 116

14   Exhibit 6    Exhibit O to Document Production..... 120

15   Exhibit 7    Exhibit S to Document Production..... 123

16   Exhibit 8    Exhibit V to Document Production..... 131

17

18

19

20

21

22

23

24

25

Page 5

```
1                    PROCEEDINGS
2           (On the record at 9:34 a.m.)
3           THE VIDEOGRAPHER:  We are going on
4    the video record.  Today is May 14th,
5    2020.  The time is 9:34 a.m.
6           The civil action number is
7    5:19-cv-00963-OLG in the matter of
8    Dr. George Richardson, et al., versus
9    Texas Secretary of State.  The deponent is
10   Perla Lara.  The video deposition is
11   requested by plaintiffs' counsel, Texas
12   Civil Rights Project, Austin.
13          My name is Maygun Flanagan.  I'm
14   the videographer.  The court reporter
15   today is Becky Graziano.  We are both
16   representing HG Litigation Services.
17          Will counsel please identify
18   themselves for the record?
19          MR. COX:  My name is Ryan Cox,
20   C-o-x, with the Texas Civil Rights Project
21   on behalf of the plaintiffs.
22          MR. STEVENSON:  Austin --
23          MR. TAWIL:  Isaac --
24          MR. STEVENSON:  -- Stevenson,
25   S-t-e-v-e-n-s-o-n, for Perla Lara in her
```

**hg**

RICHARDSON: PERLA LARA

Page 6

1   official capacity as the McAllen city

2   secretary.

3         MR. TAWIL:  Isaac Tawil for

4   Ms. Lara as well.

5         THE VIDEOGRAPHER:  Okay.  The

6   deponent may now be sworn in.

7         MR. COX:  We do have some

8   other -- I'm sorry.  We do have some other

9   folks here from TCRP, but they may be

10  coming in and out.

11        But if any of you-all did want to

12  make an appearance, now would be the time

13  to do that.

14        MR. MIRZA:  Yeah.  This is

15  Hani -- Hani Mirza with the Texas Civil

16  Rights Project on behalf of plaintiffs.

17        MR. KALAR:  Also on behalf of

18  plaintiffs, this is Samuel Kalar with the

19  law firm Willkie Farr & Gallagher.

20        MS. SURIANI:  And also on behalf of

21  plaintiffs, this is Joanna Suriani with

22  the law firm Willkie Farr & Gallagher.

23        MR. MAGEE:  This is Eric Magee.

24  I'm with defendant Trudy Hancock in her

25  official capacity as the Brazos County

Page 7

1          elections administrator.

2               MS. MACKIN:  And this is Anna

3     Mackin.  I represent the defendant Texas

4     Secretary of State, sued in her official

5     capacity.

6          (Witness duly sworn.)

7                    PERLA LARA,

8   being first duly sworn, testified as follows:

9                    EXAMINATION

10  BY MR. COX:

11   Q      Excellent.  Thank you, Ms. Lara.

12          Good morning.  My name is Ryan Cox.

13  I'm an attorney, like I said, with the Texas Civil

14  Rights Project on behalf of the plaintiffs, and so

15  I'm going to be conducting your deposition today.

16          To start things off, can you please

17  just state and spell your name for the record?

18   A      Perla Lara, P-e-r-l-a, Lara, L-a-r-a.

19   Q      Okay.  Have you ever been deposed before?

20   A      No.

21   Q      Okay.  So, you know, here at the

22  beginning, I like to go over kind of a few general

23  rules, you know, for this deposition, make sure

24  we're clear on a few things.

25          The first thing is that, you know, in

RICHARDSON: PERLA LARA

Page 8

1    addition to being videotaped, the questions are

2    being recorded by a court reporter; and so because

3    of this, I want to ask you to give verbal answers

4    so the record is accurate.   The court reporter

5    can't, you know, record a nod or a head shake.

6    Does that make sense?

7       A     Yes.

8       Q     And it's also important to speak clearly

9    and say "yes" and "no" instead of "uh-huh" or

10   "huh-uh" or anything like that.   Does that make

11   sense?

12      A     Yes.

13      Q     And especially since we're conducting this

14   by videoconference, it's also important that we

15   try not to talk over each other.   So I'll try to

16   wait, you know, until you've given a complete

17   response until I ask another question, and I'd ask

18   that you also wait until I finish a question

19   before you start to answer.   Does that make sense?

20      A     Yes.

21      Q     Okay.   And if at any time I ask a question

22   and you don't understand the question, will you

23   let me know that you don't understand the

24   question?

25      A     Yes.

RICHARDSON: PERLA LARA

1    Q      And, you know, I know you have counsel

2    there with you, but if you have any technical

3    difficulties or at any time you can't hear me,

4    will you please let me know right away about that?

5    A      Yes.

6    Q      Okay.  And if -- so if you or I or your

7    counsel have any technical difficulties, we'll

8    immediately go off the record and try to get those

9    resolved.  Okay?

10   A      Yes.

11   Q      And so today we're looking for full and

12   complete answers to the questions I'm going to

13   ask.  Do you understand that?

14   A      Yes.

15   Q      And sometimes -- you know, we'll be going

16   for several hours here probably.  So, you know, if

17   I ask a question and then later down the line you

18   realize that you made a misstatement or you needed

19   to clarify an answer in some way, please let me

20   know, and we'll go ahead and do that right when

21   it's on your mind instead of, you know, waiting

22   until the end or something like that.  Does that

23   make sense?

24   A      Yes.

25   Q      Okay.  And you're under oath today and

RICHARDSON: PERLA LARA

1    required to testify truthfully, the same as if you

2    were testifying in court.  Do you understand that?

3    A      Yes.

4    Q      Is there any reason you cannot give

5    complete and truthful testimony today?

6    A      No.

7    Q      Okay.  And so I certainly plan to take

8    breaks throughout this.  You know, we don't want

9    anyone, you know, needing to use the restroom or

10   anything like that.  So if you need to take a

11   break, let me know.  As long as we're not in the

12   middle of a question and you've provided an answer

13   to the last question, you know, I'm happy to take

14   a break.  Just let me know and we'll -- we will do

15   that.  We'll also definitely, you know, take

16   some -- a couple of breaks anyway, just so that

17   everybody, you know, isn't sitting in one space

18   too long.

19            And because we're taking this by

20   videoconference today, we're not physically in the

21   same place, can you tell me today where you are

22   and who is present with you today?

23   A      Legal conference room with [audio

24   interference] Austin Stevenson.

25            MR. COX:  Okay.  So I'm having

hg

RICHARDSON: PERLA LARA

Page 11

```
 1    trouble hearing you.  Is the court
 2    reporter -- are you able to hear -- were
 3    you able to hear that?
 4          THE REPORTER:  Yeah, I wasn't able
 5    to hear any of that.
 6          MR. COX:  Can you -- Ms. Lara, can
 7    you try to move the microphone closer to
 8    you if you have a microphone there or -- I
 9    think we're having -- might not be able to
10    hear you where you're sitting.
11          MR. TAWIL:  Austin, there's
12    probably the option to dial in from that
13    conference phone rather than relying on
14    the computer's audio.  Why don't we do
15    that?
16          MR. STEVENSON:  You-all want to go
17    off record real quick and we'll get this
18    sorted out?
19          MR. COX:  Sure.  Let's do that.
20          THE VIDEOGRAPHER:  We're going
21    off -- we're going off the record.  The
22    time is 9:40 a.m.
23       (Recess from 9:40 a.m. to 9:43 a.m.)
24          THE VIDEOGRAPHER:  We are back on
25    the record.  The time is 9:43 a.m.
```

**hg**

RICHARDSON: PERLA LARA

1    BY MR. COX:

2    Q     Okay.  Ms. Lara, the last question I asked

3    before we went off the record was that, you know,

4    since we're not able to be in the same location,

5    if you could tell me where you are right now and

6    who's present with you there.

7    A     Legal department conference room with

8    assistant city attorney, Austin Stevenson.

9    Q     Okay.  Great.

10         And additionally, you know, since

11   we're not in the same physical location, it's

12   hard -- you know -- you know, you're in a

13   conference room, which is actually easier than

14   this normally is -- but, you know, I'm not able to

15   really see what you're doing or anything like

16   that.  So I'd ask you to, you know, not bring up

17   any computer tabs or be on your cell phone or

18   anything like that during the deposition unless we

19   ask you to.

20         Does that make sense?

21   A     Yes.

22   Q     Okay.  Great.

23         And the last thing here is that, you

24   know, since I can't actually hand you any physical

25   documents, our plan is to provide any exhibits in

**hg**

RICHARDSON: PERLA LARA

Page 13

1   this deposition in the chat box of this Webex

2   meeting and have you open them up so that you can

3   look at them and we can all look at them

4   simultaneously.

5            Does that make sense to you?

6   A     Yes.

7   Q     Okay.  So let's practice that real quick.

8   I'm going to put the first link in the -- okay.

9   So I put a link in there -- oh, wait.  It's

10  not -- that didn't work.  That's not the full

11  link.  Hold on.

12            MR. TAWIL:  That worked, Ryan.  I

13       got it.

14            MR. COX:  Oh, did it?  Okay.  It

15       didn't look like it showed up as the full

16       hyperlink.

17  BY MR. COX:

18  Q     Ms. Lara, can you see --

19            MR. TAWIL:  You have to --

20  BY MR. COX:

21  Q     Can you open that link?

22  A     Yes.

23  Q     Okay.  And do you recognize this document

24  that is -- we're going to call Exhibit 1?

25  A     Yes.

RICHARDSON: PERLA LARA

1              (Exhibit 1 marked.)

2     BY MR. COX:

3     Q      Okay.  And what do you recognize this to

4     be?

5     A      The "Notice of Videotaped Oral Deposition

6     of Perla Lara."

7     Q      Okay.  And did you review this document

8     before today?

9     A      No.

10    Q      Okay.  And -- but this is the document

11    that lists today's date and the time for this

12    deposition and the reason you showed up today; is

13    that right?

14    A      Yes.

15    Q      Okay.  Great.

16            We'll continue to put links in a chat

17    like that.  If there are any issues, you know,

18    reading them or whatever, let us know.  We'll get

19    off the record and make sure we can get that

20    worked out.

21    A      Okay.

22    Q      Okay.  So I want to start out by -- you

23    mention that you've never been deposed before.

24    Have you ever been a plaintiff or a defendant in a

25    lawsuit before?

**hg**

RICHARDSON: PERLA LARA

Page 15

```
 1    A      No.
 2    Q      Have you ever testified in a court before
 3   for any reason?
 4    A      No.
 5    Q      Okay.  And have you ever been subject to
 6   any kind of disciplinary action, whether that's
 7   through your current employer or through, like, a
 8   state agency that certifies you or anything like
 9   that?
10    A      No.
11    Q      Okay.  So the next thing I want to ask you
12   is what -- about what you did to prepare for
13   today's deposition.
14           Did you have any meetings with anyone
15   to prepare for this deposition?
16    A      Yes.
17    Q      And I assume you met with your lawyers,
18   but did you meet with anyone else besides counsel
19   to prepare for this deposition?
20    A      No.
21    Q      Okay.  And how long would you say you
22   spent preparing for this deposition in terms of
23   meetings or, you know, looking at any documents or
24   anything like that?
25    A      30 minutes.
```

RICHARDSON: PERLA LARA

1    Q      Okay.  And did you review any documents

2    specifically in preparation for this deposition?

3    A      No.

4    Q      Okay.  And so did you do anything else,

5    you know, besides talking to your counsel, to

6    prepare for this deposition in any way?

7    A      No.

8    Q      Okay.  All right.  So I want to get into

9    talking about kind of your -- your background

10   before we get into any kind of -- anything

11   substantive.

12              So can you tell me starting, you

13   know -- starting after high school, what is your

14   educational background, if you attended college,

15   earned degrees, anything like that?

16   A      Yes.  STC [sic] -- STC and UT Pan Am, and

17   I've got an associate's on -- through my church

18   and the Bible-ship.

19   Q      Okay.  And when did you -- you received an

20   associate's degree from UT Pan Am; is that

21   correct?

22   A      No.  No, that's through church.

23   Q      Okay.

24   A      It's a church program.

25   Q      Okay.  Okay.  And so what did you study at

RICHARDSON: PERLA LARA

Page 17

1    UT Pan Am?

2    A     Public administration.

3    Q     And did you graduate from that program at

4    UT Pan Am?

5    A     No.

6    Q     Okay.  Did you attend any other schools or

7    colleges besides that after high school?

8    A     STC.

9    Q     STC.  And what does that stand for?

10   A     Well, it was Texas State Technical

11   Institute back then.  It's STC now.

12   Q     Okay.  And did you graduate from

13   that -- from that program?

14   A     Yes.

15   Q     Okay.  And what -- and what kind of

16   certification or degree did you earn from that

17   program?

18   A     Computerized bookkeeping.

19   Q     Okay.  And do you currently hold any kind

20   of other professional designations or

21   certifications, whether that's through a

22   government association or any other kind of

23   organization that would certify your -- your

24   skills or abilities in doing anything?

25   A     Yes.

Page 18

1    Q      Okay.  And what would that be?

2    A      TRMC, a Texas registered municipal clerk,

3    and a CMC, certified municipal clerk.

4    Q      Great.

5            And who issued those certifications?

6    A      University of Denton through the city

7    of -- the state secretary's program.

8    Q      The Texas Secretary of State program?

9    A      The Texas registered municipal clerks

10   program.

11   Q      Okay.

12   A      TMCPP [sic].

13   Q      Okay.  And so getting into kind of your

14   employment history, what is your current position

15   with the City of McAllen?

16   A      City secretary.

17   Q      Okay.  And when did you start in this

18   position?

19   A      December 2015.

20   Q      Okay.  And how did you come to be the

21   McAllen city secretary?

22   A      Previous city secretary retired.

23   Q      And were you appointed to that position?

24   A      Yes, interim.

25   Q      Okay.  And you were appointed the interim

RICHARDSON: PERLA LARA

Page 19

1    secretary in December 2015?

2    A      No, September.

3    Q      Okay.  And who appointed you to that

4    position?

5    A      Mayor and city commission.

6    Q      And were you already working for the City

7    of McAllen at that time?

8    A      Yes.

9    Q      Okay.  I'll get into that in a minute.

10           When you were appointed city

11   secretary, was there a job posting for this or an

12   official announcement or something along those

13   lines that you recall?

14   A      Yes.

15   Q      Okay.  And do you remember if it listed

16   any qualifications that someone would need to be

17   the McAllen city secretary?

18   A      Can you repeat that again?  I'm sorry.

19   Q      Excuse me.  Yeah, sure.

20           Do you remember if that announcement

21   included any specific qualifications that a

22   McAllen city secretary would have to have to be

23   appointed?

24   A      No -- I mean, not specifics.  I remember

25   the announcement, but I don't -- it's been a

Page 20

1   while.  I can't give you all --

2   Q       No, that's okay.

3   A       -- the specifications.  But I remember the

4   announcement --

5   Q       Okay.

6   A       -- and the job posting.

7   Q       And so then what -- what are your

8   responsibilities as McAllen city secretary?  What

9   are your job duties?

10   A       Official recordkeeper of all the city's

11   documents, records retention, attending meetings,

12   taking minutes for the mayor and city commission,

13   and also conducting elections on election years.

14   Basically, it's the official recordkeeper for all

15   documents.

16   Q       Okay.  And is that position, the position

17   of McAllen city secretary, defined or in any way

18   discussed in the city charter, that you know of?

19   A       The city charter?

20   Q       Do you have a city charter?

21   A       You're asking if -- well, it lists several

22   positions for several of the appointed officials.

23   I'm not sure [audio interference] --

24   Q       So are you familiar with -- are you

25   familiar with --

Page 21

1    A       The charter?   Yes.

2    Q       -- the McAllen city charter?

3            You are?

4    A       Yes.

5    Q       Okay.   And is there a particular section

6    of the charter that requires the city to have a

7    secretary and explains what the secretary does?

8    A       Yes.

9    Q       And to the best of your recollection,

10   what -- what does that -- those -- what do those

11   sections of the code about the city secretary say,

12   or what are the duties outlined in the city

13   charter?

14   A       Briefly, just what I previously stated,

15   the official recordkeeper and the conducting of

16   elections.

17   Q       Okay.   Great.

18           And as the city secretary, who do you

19   report to?

20   A       Mayor and commission.

21   Q       Okay.   And is that on a day-to-day basis,

22   or is that only in official ways, like at a city

23   council meeting or something like that?

24   A       At city council meetings, but I -- I mean,

25   I also work with -- closely with management.   But

**hg**

RICHARDSON: PERLA LARA

Page 22

1    the mayor is the full-time mayor, so I see him on

2    a daily basis.

3    Q       Excellent.

4            And who are you -- who do you

5    supervise at the city?

6    A       The city secretary staff, I have a staff

7    of nine in my immediate department; our vital

8    statistics staff, a staff of three; and our

9    passport division, a staff of four.

10   Q       And in the office of the city secretary,

11   where you have a staff of nine, are there managers

12   in that department or is there a hierarchy, or is

13   everyone kind of on the same field, all nine of

14   those staff members?

15   A       I have one records manager.  I've got my

16   deputy city secretary, and I've got a public

17   information specialist that's supervisory.

18   Q       And what else?

19   A       And then my regular staff.

20   Q       Okay.  And what are the duties of the

21   deputy secretary?

22   A       She basically does what I do in my

23   absence.  She takes over, but she's deputy --

24   she's the -- my deputy, or the assistant city

25   secretary.  She basically mimics or does

**hg**

Page 23

1    everything that I do.  She's trained to do the

2    same.

3    Q      Okay.  And what's her name?

4    A      Yesenia Rodriguez.

5    Q      Okay.  And so prior to becoming the

6    McAllen city secretary, what was your job at that

7    time, back in September of 2015?

8    A      Deputy city secretary.

9    Q      And how long were you in that role?

10   A      Since 2007.

11   Q      And were the job responsibilities of that

12   the same through that period, as you just

13   discussed a minute ago?

14   A      Yes, basically.

15   Q      Okay.

16   A      Whenever the city secretary was out, I'd

17   step in.

18   Q      Okay.  And so that included

19   responsibilities related to official records,

20   recordkeeping, minutes, and elections; is that

21   right?

22   A      Yes.

23   Q      Excellent.

24          And prior to becoming the deputy city

25   secretary, did you -- what was your job before

RICHARDSON: PERLA LARA

Page 24

1   that?

2   A      I was the supervisor from --

3   Q      **In the city secretary's office?**

4   A      In the city secretary's office -- from

5   2001 to '07.

6   Q      **A lot of experience there.**

7   A      Yes.

8   Q      **Okay.  Great.**

9          **And prior to that, did you -- do you**

10  **have any other experience -- job experience that**

11  **has, you know, informed or prepared you to be the**

12  **McAllen city secretary?  I ask it that way --**

13  A      From --

14  Q      **-- because I don't -- I don't need to know**

15  **everywhere you've ever worked.  I just want to**

16  **know, you know, if you think there's specific**

17  **experience that, you know, helped you to become**

18  **the McAllen city secretary before 2001.**

19  A      From 1991 -- from 1999 to 2001, I enrolled

20  in the TMCPP [sic] programs, and that's what

21  helped.  That's how.  Yeah.

22  Q      **Okay.  Great.**

23  A      I was with the city back then also.

24  Q      **So how long have you worked for the city**

25  **in total?**

RICHARDSON: PERLA LARA

Page 25

1    A        Since March of 1999.

2    Q        Excellent.  Great.  Okay.

3              So now I kind of want to talk more

4    about this specific case.  I'd like to start by

5    asking you, what is your understanding of what

6    this case is about, generally?

7                   MR. TAWIL:  Objection; form.

8    BY MR. COX:

9    Q        You can answer, Ms. Lara, unless your

10   counsel asks you not to.

11   A        Okay.  It's got to do with the -- that

12   I -- what I -- what I know is that it's got to do

13   with the mail ballots.  They might have one or two

14   mail ballots that were rejected.

15   Q        Okay.  Yeah, I don't -- I'm not asking you

16   to be, like, a legal expert on any of this.  I

17   just wanted to, you know, ask you what you --

18   A        Yeah.

19   Q        -- knew about what was going on.

20              And so as the McAllen city secretary,

21   are you responsible for the administration of all

22   city elections for the City of McAllen?

23   A        Yes.

24   Q        Okay.  And is -- in that role, is it your

25   responsibility to develop and/or implement

RICHARDSON: PERLA LARA

Page 26

1  policies to ensure that the McAllen city elections

2  run properly?

3                    MR. TAWIL:  Objection; form.

4                    MR. STEVENSON:  You may answer.

5                    THE WITNESS:  Yes, develop and

6        follow the -- the guidelines and processes

7        that the Texas Secretary of State provides

8        us with.  Yes.

9  BY MR. COX:

10  Q      Okay.  And so kind of in a similar vein,

11  is it also your responsibility to ensure that the

12  City of McAllen elections take place in accordance

13  with -- with the law, the Texas and federal law?

14  Is that your responsibility?

15  A      Yes.

16  Q      And what do your responsibilities --

17  stemming from that, your responsibilities to

18  implement and -- to oversee the administration of

19  McAllen city elections, what do those

20  responsibilities include for your office -- for

21  you?

22  A      The training.  We provide the information

23  to the -- to the alternate -- to the judges and

24  alternate judges and clerks.  We provide

25  trainings, give them the -- you know, we go over

Page 27

1    all the SOS guidelines, processes.  We give them

2    the advisories that the SOS issues out on the

3    particular year.  We provide them the resources,

4    the EVBB handbooks.

5              We give them trainings on the -- on

6    our election machines, our election equipment,

7    with ES&S.  We go over the equipment as well.  We

8    train them on the DS200s, which -- it's basically

9    all the ExpressVotes, the tablets, and just give

10   them the resources, the handbooks, the Texas

11   Election Code book as well.

12             And then we refer them to the

13   Secretary of State's website so that they can go

14   in there and take additional trainings that they

15   have there.  They've got additional advisories

16   that they can review and basically give them as

17   much -- provide them with as much information as

18   possible so that they can, you know, go through

19   the process of qualifying and accepting the

20   information.

21   Q     Excellent.

22             And so I think I'll get into this a

23   little bit later, but just while it's at the top

24   of mind, do you develop any of your own trainings,

25   or are these all trainings and materials that you

**hg**

Page 28

1    get from the SOS?

2     A      I mean, we develop.  We do some in-house.

3    It's basically we download that information, and

4    we just make it more, like, local.  You know, try

5    to do -- just give them a little bit more

6    hands-on.  For the most part, they're experienced

7    judges because we share the judges and clerks with

8    our EA, our elections administrator, at the

9    county, and we just try to expand on that and give

10   them just additional trainings.

11              We bring them into the office and do

12   one-to-one trainings if they still have questions,

13   you know, come in and view videos.  They come in

14   and look at the equipment also.  I have -- I'll

15   have the equipment in my office, and they come and

16   practice and what have you before election, and we

17   make that available for them.

18   **Q      And for all of those kind of tasks**

19   **that -- the training that you provide -- you know,**

20   **providing demonstrations, whatever else you do,**

21   **are you personally involved in that, or is that**

22   **something that is handled by your staff members,**

23   **or both?**

24    A      So it's both.  For the most part, I've got

25   my staff.  We'll do -- we do trainings, and I've

**hg**

Page 29

1    got one person that will handle -- ship the forms,

2    and we'll go over all the forms, how to prepare

3    them.  We'll do samples, examples that they can

4    look at, what to do, what not to do.  I've got

5    somebody else that will go through the envelopes,

6    Envelopes 1 through 4.  You know, the pink is for

7    this, the yellow's for this, the white is for

8    this.  This is where you put, you know -- as far

9    as zero tapes for the early -- for the early votes

10   and the mail-in, so...

11             It's different ones.  I've got my

12   records manager that will do the -- like, the IT

13   training, he -- he and she -- I've got two,

14   actually, that will do the equipment.  But I'll be

15   there also, and when we do the presentations, I'm

16   there.  I do the welcome.  I, you know, ask

17   them -- if they have any questions, we'll set up

18   trainings.  They'll come to my office also, and I

19   can also help -- I'm hands-on as well, but I've

20   got staff that -- and I've got somebody that does

21   the PowerPoint presentations, and if they need to

22   come back, she'll review them with them as well.

23   Q      And so who is the person on your staff

24   that is -- if there is a person that fits this

25   description, that is primarily responsible for,

RICHARDSON: PERLA LARA

Page 30

1    like you said, the PowerPoint presentations or

2    those kind of trainings like that?

3                MR. TAWIL:  Objection; form.

4                MR. STEVENSON:  You can answer.

5                THE WITNESS:  Okay.  Well, that was

6         our records manager, but she since then

7         retired, so I've got a new staff person

8         now that's taken over that I've been

9         training.  I've been training him, so

10        we -- he hasn't been involved in an

11        election yet, but the previous one

12        retired.

13   BY MR. COX:

14    Q     And so what was the name of the previous

15   person that you're referencing?

16    A     Josie Cortez.

17    Q     Okay.  And how long was she with the city

18   in that kind of role?

19    A     35 years.

20    Q     Wow.  Okay.  Excellent.

21          Okay.  So besides you, is there anyone

22   else that you're aware of at the City of McAllen

23   that is responsible for the administration of

24   elections?

25    A     No.

RICHARDSON: PERLA LARA

Page 31

1   Q       Okay.  And so if -- if, say, the --

2   someone that you report to, like the mayor or the

3   city commission, I believe you said, came to you

4   with an issue about an election, would they be

5   able to direct your actions on that, or do you

6   exercise kind of independent authority to

7   administer the elections?

8              MR. TAWIL:  Objection; form.

9   BY MR. COX:

10  Q       Did that question make sense?  I'm sorry.

11  A       I -- I usually come to my -- we have

12  several assistant city attorneys, and I usually

13  consult with them.

14  Q       Okay.

15  A       Yeah.

16  Q       But someone like the mayor or people you

17  report to directly wouldn't direct your actions as

18  to how to conduct an election; is that correct?

19  Or is that a fair statement?

20  A       Correct.

21  Q       Okay.  Now, how does your office receive

22  funding?

23  A       We budget.  It's budgeted.  We don't get

24  funding like our elections administrator.  It's

25  the -- I -- every election year, I'll budget for

RICHARDSON: PERLA LARA

Page 32

1    an election.  We have elections every other year,
2    but I always budget for one just in case we call a
3    special election or somebody resigns or what have
4    you.  I always budget every year, even though we
5    have elections every other year.
6    Q       Okay.  And so in that process, you would
7    propose a budget for, say, elections, along with
8    the other activities that your office does, and go
9    to the city council -- or I guess it's called the
10   city commission -- and present that to the city
11   commission for approval; is that correct?
12   A       No.  I mean, I budget for it, but the --
13   we have a city commission liaison that does that
14   budget, so she comes to me and she asks, you know,
15   "Should we budget?"  And, of course, every year I
16   tell her, "Yes, just go ahead and plan for -- you
17   know, for an election just in case, that way, you
18   know, the funds are there."  But I don't -- don't
19   go for approval.  That would be our city
20   commission liaison, and she handles that line
21   item.
22   Q       Okay.  And so your involvement in that
23   process would be just to explain to that liaison
24   person how much you think that line item should
25   be?



Page 33

1   A      Correct.

2   Q      And in doing so, would you have to break

3   that out by, you know, individual staff, you know,

4   paying election workers, things like that, or is

5   it just one flat line item for the whole election?

6   A      It's just one flat item.  We've got one

7   just for the election, and then we've got one just

8   for payroll and overtime.

9   Q      Okay.  And what -- is that -- is the

10  amount proposed for that the same every year?

11  A      It varies.  If I know I'm having an

12  election --

13  Q      And --

14  A      If I know I'm having an election and it's,

15  you know -- if it includes the mayoral, it's going

16  to be different because by -- we run by district,

17  and so I know I'm going to be having all the

18  polling places open, 1 through 6, because it's a

19  position at large, versus when I know it's just

20  the commissioners running, it's going to be only

21  that single-member district.  So on a mayoral,

22  state commission year, it's going to be more than

23  when it's just that single-member district -- 1

24  and 2, 3, you know, versus when it's at large.

25  Q      Understood.

RICHARDSON: PERLA LARA

Page 34

1       And so when was the last at-large
2   election that you're talking about that would
3   involve all of those polling places being open?
4   A       2017.
5   Q       Okay.
6   A       Mayoral --
7   Q       And --
8   A       -- and the state commission.
9   Q       All right.  And do you recall what the
10  line item in the budget for that election was for
11  your office?
12  A       Not exactly.  It's usually about
13  40-, 45,000.
14  Q       Okay.  And that doesn't include the staff
15  costs, right, because that's paid out of a
16  separate line item, you said?
17  A       Correct.
18  Q       Okay.  And does that include kind of
19  discretionary funds?  So, for example -- well, let
20  me just ask you that.
21          Does it include kind of funds that
22  you're able to use your discretion in determining
23  how best to spend them to conduct the election?
24  A       I don't understand that question.
25  Q       Okay.  So when you are budgeted a certain

Page 35

1    amount for an election --

2    A     Okay.

3    Q     -- are you required to spend that on

4    certain things, or do you then take that -- those

5    funds and decide in your own discretion the best

6    way to spend that money to administer the

7    election?

8    A     Yes.  Well, it's discretionary.  If we --

9    we use it for training, for supplies, for election

10   equipment, licenses, and, of course, the ballots,

11   the printing and things, the judges and clerks.

12   Q     Got it.

13         And so if some additional expense came

14   up, it would be within your discretion to spend

15   those budgeted funds to deal with that expense; is

16   that correct?  Or is that a fair statement?

17   A     Right.

18         MR. TAWIL:  Objection; form.

19   BY MR. COX:

20   Q     Okay.  So I want to talk about, kind of,

21   training that you had that would help you run

22   elections, and I know you've been doing this for a

23   long time in different kind of capacities.

24         And so I wanted to ask you, you know,

25   what kind of specific training you went through,

**hg**

RICHARDSON: PERLA LARA

Page 36

1   either when you first became the city secretary or

2   since you've been the city secretary, to help you

3   administer elections correctly.

4   A       Like I said, through the Texas registered

5   municipal clerks program, we go to their trainings

6   every year.  I also go to the Secretary of State's

7   trainings that they have every year for the -- for

8   counties, cities, and, you know, other local

9   municipalities.  We do that every year.

10              We go to those two trainings, and then

11  we go to the optional seminars to do a

12  step-by-step training as well, and we attend

13  those, the trainings too.  We spend an entire day

14  doing a step-by-step.

15  Q       And when you say "we," who do you mean

16  besides yourself?

17  A       I take my staff, my deputy city secretary,

18  and I'll take my records manager, and -- we take

19  turns.  I end up going to all of them regardless,

20  my deputy and I.  But the staff, I'll take part of

21  the staff to the Texas registered municipal clerks

22  seminar -- actually, they both happen in

23  December -- and then the other half will go to the

24  SOS seminar.

25              And then in addition to that,

RICHARDSON: PERLA LARA

1   everybody on staff will go to the Hidalgo County

2   elections, the administrator's classes that she

3   has, and I take my staff there every year also to

4   get the -- deputize the deputy volunteers.  And

5   they take additional trainings at the county as

6   well, and they all have certification.

7   **Q       And that, you mean deputy volun- -- voter**

8   **registrars?  Is that what you mean?**

9   A       Yes.  Yeah.

10  **Q       Got it.**

11  **         And the Texas registered municipal**

12  **clerk seminar, does that involve just elections,**

13  **or did that involve kind of like the broader**

14  **things that your office works on?**

15  A       Well, it involves everything, but the

16  December one, it's nothing but elections.

17  It's -- sometimes the -- depending on the year, it

18  will be a two-day -- two-and-a-half-day or

19  three-day seminar.  It's nothing but elections,

20  nothing but scenarios.

21          And like I said, we end up -- we sign

22  up for the additional day, which is a step-by-step

23  program.  We do that every year.  It's really for

24  beginners, but I like for my staff to do it since

25  we do elections every other year.  It's good for

**hg**

RICHARDSON: PERLA LARA

Page 38

```
 1    them to get the basics, you know, year after year.
 2               It's the -- it's really tedious.  You
 3    go through -- you know, from the beginning, you
 4    know, doing forms, hiring and finding clerks, city
 5    clerks -- not city clerks, but clerks for
 6    the -- for the judge and the alternate judge.  You
 7    go through the early -- the early voting, the
 8    notices.  And basically that's all you do all day,
 9    and do the different scenarios, question and
10    answer, and a lot of networking.
11    Q     Got it.
12               And so in this kind of step-by-step,
13    optional seminar, is it kind of a
14    role-playing-type thing where you -- where you
15    actually run through, like, what it would be like
16    if you're on, like, a -- if you're an election
17    judge or if you're on the early voting ballot
18    board?  Is that how that works?
19    A     Yes, it varies.  It depends on the
20    presenters, but for the most part, it will be a
21    lot of role-playing.  But some presenters will
22    just, you know, stick to the PowerPoint.  But the
23    majority of the time, we do the role-playing,
24    accepting the voters, going through the questions
25    that you would ask the voter.  Yeah.
```

Page 39

1    Q       And do any of -- do any of that

2    role-playing or that specific step-by-step

3    training include anything related to -- or at

4    least that you've been a part of, does any of that

5    include signature comparisons?

6    A       No.

7    Q       Okay.  And does it include work done by

8    the early voting ballot board generally and just

9    not include signature comparisons, or does it

10   exclude kind of the ballot board work altogether?

11               MR. TAWIL:  Objection; form.

12               THE WITNESS:  It doesn't -- it

13        doesn't exclude it, but they do give

14        PowerPoint presentations on that.  They

15        give us booklets on it.  That's the

16        presentation separate and apart from the

17        actual voting at the -- at the polling

18        place.  They provide us information and

19        basically, you know, give us the

20        information to give back to our judges and

21        our alternate judges, and they just touch

22        on it.

23               You know, it's -- you compare, you

24        just make sure that, you know -- ascertain

25        that, you know, the signature on the

**hg**

RICHARDSON: PERLA LARA

Page 40

```
 1          application and that the signature on
 2          the -- on the corresponding carrier
 3          envelope are similar to that of the voter.
 4          And that's really all that they stress on.
 5    BY MR. COX:
 6     Q      Okay.  And when you said they give you
 7    kind of handbooks, are -- is there -- do they have
 8    their own handbook about this, or are they
 9    providing you materials that you -- you know, you
10    already have through the Secretary of State or
11    something?
12     A      Correct.  Yes, they download that -- the
13    step-by-step book is basically the same thing.
14    They download all the forms, but they just give it
15    to us in a real nice bounded book, but it's
16    the -- they're downloading everything that the SOS
17    has.  And, of course, they always let us know that
18    there's new advisories or new information that
19    they're going to have and for us just to, you
20    know, be aware of that and refer to the website
21    for whatever forms that are coming in that might
22    be new that might change.
23     Q      Got it.
24             And so the Secretary of State
25    trainings that you mentioned going to, is that
```

hg

RICHARDSON: PERLA LARA

Page 41

1    also something that you attend every year

2    personally or not?

3    A       Yes, every year.

4    Q       Okay.  And so when was the last time you

5    went to that, or when was the last one?

6    A       Last year.  December of 2019.

7    December/November of 2019.

8    Q       Okay.  And can you tell me generally what

9    was covered in that -- in that training or

10   seminar, or whatever you would call it?

11   A       It's basically the same.  They hand out an

12   SOS elections handbook, bounded book that they

13   give everybody, and basically, you know, Christina

14   and the rest of the attorneys will give the

15   presentations.  And we just follow the book with

16   all the, you know, legislative or house bills,

17   senate bills that -- you know, they go over all

18   the changes, and same thing.  They -- it's divided

19   into sections, and we go through all of the

20   different processes of qualifying and processing.

21           They take us from the plan -- the

22   calendar, planning the dates, the important dates,

23   and the training of the judges for the early

24   voting period, training on -- they go over

25   the -- also the voting by mail, voting in person.

**hg**

RICHARDSON: PERLA LARA

Page 42

1    They go over all the different envelopes, the
2    compensations, the oath.  They'll touch -- I think
3    there was a new section on the oath that they
4    added as well, so they review that.  They don't
5    have all the forms, but, again, just like at the
6    Texas clerks, they'll just tell us, "No, we're
7    going to be providing the new forms and make sure
8    you download that from the web."
9              Christina Adkinson [sic] will follow
10   with emails, and if there's new forms or anything
11   that changes, she'll send all the city clerks
12   the -- an email with the attachments, and we
13   download that.  And then we just regularly
14   continue to go to the website to download the memo
15   and advisories, and then they give us a list of
16   all the resources and links.
17   Q    Got it.
18   A    And they have a Q and A.
19   Q    Okay.  Great.
20        And so do they -- at those trainings,
21   do the presenters, whether -- who are the
22   presenters?  Is it all Secretary of State
23   employees, or is it other people as well?
24   A    It's all SOS employees.
25   Q    Okay.  And do they go into more detail

RICHARDSON: PERLA LARA

Page 43

1    about specifics of -- you know, giving examples of

2    what to do in certain situations than you would

3    find in, say, advisories on their website?  Or,

4    you know, at least to your knowledge, do they

5    stick to what you could already find on their

6    website, or do they go into more detail?  I

7    apologize about that question.

8     A       They -- well, they refer us to the

9    website.  A lot of times if we have questions, you

10   know, we'll -- as city clerks, we do call, and

11   they just tell us that they put that information

12   just for us to review.  But at the end of the day,

13   they refer us to our legal counsel for

14   interpretations, and that's what I do.  I -- you

15   know, I'll call them, they refer us to counsel,

16   and I'll ask counsel.

17    Q       And in the Q and A sessions at those

18   trainings, is it just kind of a free-for-all, or

19   is it kind of -- you know, about anything, or is

20   it kind of topic-specific, focused on individual

21   topics?

22    A       It's really a free-for-all, but they do

23   have Q and A's after every presentation.  So --

24   but a lot of times, you know, they'll go back

25   to -- they'll have a question regarding the

RICHARDSON: PERLA LARA

Page 44

1    morning session or people will come back from

2    lunch and they'll have a question from the

3    previous, so we -- you know, they really don't

4    stick to that session because, you know, we'll

5    remember something and we'll have another

6    question.

7                We can also go to them.  At the end of

8    the session, they'll say, "You know, we're going

9    to stay back here five, ten minutes," or during

10   breaks if we have any individual questions, we

11   also go to them.

12               What they're doing now at the new

13   seminars, they'll put their phone number on the

14   screen, and they're like, "If you have any

15   questions, you can also text us."  So a lot of

16   times they'll just, you know, answer us through a

17   text.  If they feel it's something that -- it

18   merits everybody to listen, then they'll just, you

19   know, call it up to -- they'll just, you know,

20   read it and let everybody know.

21               But if we have individual questions,

22   we go up to them during breaks.  Then they'll

23   answer those questions.  A lot of times they'll

24   say, "We'll get back to you," and they're very

25   good about getting back to us right away.

Page 45

1   **Q       And have you ever had occasion to text**
2   **anybody from the Secretary of State's office with**
3   **questions like -- that you might have?**
4   A       No, I personally haven't.  If I do have a
5   question, they also have microphones on each -- on
6   the aisles.  You know, we'll get -- if we have a
7   question, I'd rather just answer it -- you know,
8   ask for it right then and there, just for the
9   benefit of every -- we have a lot of city clerks
10  here from the Valley that go also, and we like to
11  network.  So, you know, we like to help everybody.
12  **Q       Understood.  Great.**
13  **        And to your recollection, do you**
14  **remember hearing any questions asked about the**
15  **signature-matching process at -- at least at the**
16  **last one you went to in December 2019?**
17  A       I personally didn't have any at the -- the
18  question that's come across, and basically, you
19  know, it's the same answer that we hear every
20  year, you know.  We're not handwriting experts,
21  but as long as they resemble each other -- you
22  know, you compare the application to the carrier
23  envelope, and if it resembles it, you know, you
24  can ascertain that it's the -- that it was the
25  voter.

**hg**

RICHARDSON: PERLA LARA

Page 46

```
 1    Q      Okay.  Great.
 2               So let me ask you this:  Are you
 3    familiar with the Texas Association of Elections
 4    Administrators?
 5    A      Not very familiar, but I've heard about
 6    them.  Those are the ones that go to the trainings
 7    every -- I think it's July or August; right?  Is
 8    that them?
 9    Q      I'm not sure.  I'm just wondering if
10    you -- if you've heard of them --
11    A      No.
12    Q      -- or if you're -- are you a member?
13    A      No.
14    Q      Okay.  And so do you recall having any
15    training since you've become the city secretary
16    that is specific to handling mail-in ballots and
17    doing signature evaluations?
18               MR. TAWIL:  Objection; form.
19    BY MR. COX:
20    Q      Whether that's at a specific seminar or
21    any training provided to you by the city or that
22    you've hired anyone to do.
23               MR. TAWIL:  Objection; form.
24               THE WITNESS:  Just the -- just the
25         ones that I go to every year, like I
```

RICHARDSON: PERLA LARA

Page 47

1        stated before, the TMCCPs and the SOS.

2   BY MR. COX:

3   **Q      Okay.  Now, I want to, you know, switch**

4   **gears a little bit and talk about kind of McAllen**

5   **processes.**

6            **Does the City of McAllen maintain any**

7   **kind of internal rules and regulations or**

8   **procedures about how to administer city elections?**

9   **And so I mean specifically things besides what you**

10  **would find in the election code or from the**

11  **Secretary of State.  Does the City of McAllen have**

12  **its own kind of internal procedures and rule book**

13  **or anything along those lines?**

14  A      No.  We follow the SOS.  The only thing

15  that I got different is the -- that's for our

16  actual ES&S election equipment, for pollbooks, our

17  tablets, and our DS200s, because we don't -- we

18  have our own equipment, and we don't lease from

19  the county.  We've got ES&S and they've got Hart.

20  We've got an internal process for that.  That's

21  the only place where we differ, that we're a

22  little bit different.

23  **Q      Okay.**

24  A      Everything else is just we download -- you

25  know, we might put it on our own stationery, but



RICHARDSON: PERLA LARA

Page 48

```
 1   it's the same.

 2    Q      Got it.

 3           And so you would not be providing any

 4   training materials or kind of rules and procedures

 5   to any employees in your office or to anyone who

 6   is employed for an election except for what

 7   is -- you have from the Secretary of State's

 8   office and from these seminars and from the Texas

 9   Election Code; is that right?

10    A      Correct.

11    Q      Okay.  And, you know, in administering the

12   elections in McAllen, do you ever look to or ask

13   other jurisdictions about best practices or

14   anything along those lines, whether that's someone

15   like Hidalgo County or people you network with at

16   these seminars?  Do you discuss kind of best

17   practices about how to run a local election with

18   anyone else?

19    A      We network.  We've got our city clerks'

20   associations where, you know, our -- our city

21   clerks will email each other if we've got any

22   questions as to, you know, notices and forms, or

23   if we have a doubt on something, we have a city

24   clerks' Yahoo group that we ask questions, mentor

25   each other.
```

Page 49

1              I'll -- not very often, but once in a

2      while, you know, we might call the elections

3      administrator in Hidalgo.  Like I said, we don't

4      have too many judges and clerks, and because we

5      share them, you know, sometimes we'll call out

6      there and see if, you know, they've got names that

7      they can share or a bank or what have you as it

8      relates to the judges and clerks, because we tend

9      to share the same judges and clerks.  So sometimes

10     they call us; sometimes I call them, but --

11     **Q       Okay.**

12     A       -- just our --

13     **Q       And --**

14     A       -- our city clerks' group.

15     **Q       And in that city clerks' group, do you**

16     **recall seeing any discussions or conversations**

17     **about mail-in ballots specifically or the**

18     **signature-matching process specifically?**

19     A       No.

20     **Q       Okay.  And whether at these networking**

21     **events or through, you know, your city clerks'**

22     **group, have you talked to any other election**

23     **officials about this case?**

24     A       No.

25     **Q       Okay.  Okay.  I wanted to ask you next,**

hg

RICHARDSON: PERLA LARA

Page 50

1    you know, about your familiarity with the Texas

2    Election Code.

3              Is that something that you -- that is

4    a requirement of your job, to be familiar with the

5    Texas Election Code?

6              MR. TAWIL:  Objection; form.

7              THE WITNESS:  Yes.

8    BY MR. COX:

9    Q      Okay.  And so at least the portions that

10   are applicable to your job -- because I know that

11   not all of it applies to you -- have you -- do you

12   believe you've read the portions of the Texas

13   Election Code that apply to your job?

14   A      Yes.

15   Q      Okay.  And when would you say was the last

16   time you read those sections of the code?

17   A      The last -- the 2019 election.

18   Q      And is it your understanding that the

19   Texas Election Code imposes certain duties on

20   early voting clerks?

21             MR. TAWIL:  Objection; form.

22             THE WITNESS:  Yes.

23   BY MR. COX:

24   Q      And am I correct that you are the early

25   voting clerk for the City of McAllen?

Page 51

```
 1    A     Yes.
 2    Q     And so what do you understand the duties
 3   of an early voting clerk to be, according to the
 4   election code?
 5             MR. TAWIL:  Objection --
 6   BY MR. COX:
 7    Q     And I know you're not an attorney, so I
 8   don't expect you to be, like, very technical about
 9   this.  But just generally, what are -- what is
10   your understanding of the early voting clerk's
11   responsibilities?
12             MR. TAWIL:  Objection; form.
13             Perla, you can answer that question
14        if you know.
15             THE WITNESS:  Yes.  It's just
16        basically the administration of the
17        election, running the election to form,
18        and providing the information to the
19        judges and the alternate judges, and just
20        making sure that we run a fair election.
21   BY MR. COX:
22    Q     Okay.  Anything else?
23    A     That's it.
24    Q     And if you had a question about what your
25   obligations under the election code were, who
```

hg

RICHARDSON: PERLA LARA

1   would you talk to about that?

2   A      My legal counsel.

3   Q      Okay.  Anybody else?

4   A      That's it.

5   Q      Okay.  Now, and do you maintain -- whether

6   you've gotten it from someone else or created it

7   yourself, do you maintain any kind of list or

8   database that kind of lists out all of your duties

9   under the election code or all the things that you

10  have to make sure you do?  Is there any kind of

11  list like that that you have?

12  A      I just follow my election calendar.  I

13  download that from the Secretary of State's office

14  and Texas registered municipal clerks' websites,

15  and we take the -- I get that calendar, and I use

16  my calendar as well.

17         And as far as the list of duties, I

18  just follow the step-by-step.  I've got -- it's a

19  huge notebook that we have, and I've just got it

20  tagged by sections.  You know, this is where it

21  starts, this is where you start the planning, I do

22  my notices.  I start counting my -- my days, you

23  know, as far as the deadlines, the reports, when

24  they're due.  It's basically a handbook that I

25  follow.

**hg**

Page 53

1              It's not -- you know, I have to go

2    through that every time we have an election

3    because that's not the only duty that I have.

4    That's one of the duties that -- as the city

5    secretary, you know, to run an election when you

6    don't -- like, we don't contract that, but I also

7    have a lot of duties as the city secretary, so I

8    always have to have that handbook --

9    Q      Great.  Okay.

10   A      -- close by.

11             And basically, it's just the election

12   calendar.  The SOS give -- gives it to us, and we

13   just follow it.

14   Q      Got it.

15             **And do you ever ask your staff to**

16   **research any of these kind of issues related to**

17   **the Texas Election Code, or would that be**

18   **something exclusively you would go to counsel**

19   **about?**

20   A      We -- I -- we research -- I research, my

21   deputy will research, and then we bring it to

22   counsel so that they can make a determination.  A

23   lot of times they'll come and ask, you know,

24   if -- "Am I understanding it right," or "Is this

25   what I'm interpreting," and they'll look at it and

**hg**

Page 54

1   then they'll let me know.  They'll give me their

2   opinion.  I do all -- that all the time.  I'll

3   look at it, I'll read it, and then I'll ask them

4   if they're interpreting the same thing that I'm

5   interpreting.

6   **Q      And is -- and is that something you would**

7   **usually do in person or you would create a memo**

8   **kind of with your staff before -- before going to**

9   **counsel or something like that?**

10  A      Most of the time, I do it in person.  I

11  just walk into the legal office and -- you know,

12  whatever attorney is here.  I'll bring the Texas

13  Election Code book.

14              And we get a lot of questions.  I'll

15  go to the code book.  I pick out the section.

16  I -- you know, I'll come and ask them, "Am I

17  right?  You know, this is what I'm interpreting,"

18  they look at it, and then I'll go back and answer

19  the questions that was asked.  Or, you know, if

20  staff is asking something, same thing.  I'll -- I

21  always go back to the code book.

22  **Q      Got it.**

23  **            And have you asked anyone on your**

24  **staff -- whether that's your deputy director or**

25  **anyone else -- to perform any research about**

**hg**

Page 55

```
 1    mail-in ballot procedures or signature
 2    verification procedures?
 3     A       No.
 4     Q       Okay.  Okay.  I'd like to, I guess, go
 5    through a little bit of a list about your
 6    responsibilities related to mail-in ballots.  And
 7    then once I get through that, I think we can take
 8    a break right after that, if that sounds good to
 9    you.
10     A       Yes.
11     Q       Okay.  So we covered that you're the early
12    voting clerk for the City of McAllen; correct?
13     A       Yes.
14     Q       And as the early voting clerk, is it part
15    of your responsibilities to receive all mail-in
16    ballots submitted by voters for an election that
17    you're overseeing?
18     A       Yes.
19     Q       And is it -- are you responsible for
20    mailing voters a mail-in ballot application if
21    they request one?
22     A       Yes.
23     Q       And are you -- are you responsible for
24    delivering the actual mail-in ballot to the voter
25    after they've applied and been qualified?
```

1    A      I -- yes, I have a staff that works on

2    those, and they send them out under my direction.

3    Q      Okay.  Got it.

4           And are you responsible for notifying

5    voters if their application is rejected and the

6    reasons why?

7    A      The application, yes.

8    Q      Okay.  And are you required -- are you

9    responsible for providing ballot envelopes and

10   carrier envelopes, along with the ballot as well,

11   to the voter?

12   A      Correct.  The only thing that we keep is

13   the jacket envelope where we put all the

14   materials.

15   Q      Okay.  And after a ballot has been mailed

16   to the voter and they mail it back in to you, are

17   you responsible for determining whether that

18   carrier envelope was received timely -- or mailed

19   timely by the voter?

20   A      Yes.

21   Q      Okay.  And is it your responsibility to

22   decide whether to allow a voter to cure defects in

23   their mail-in ballot carrier envelope if it's

24   prior to the mail-in ballot deadline?

25   A      They have until the day of the election to

Page 57

1    cancel or spoil the ballot if they wish to do

2    that.

3    **Q      Okay.  And if a -- if a carrier envelope**

4    **comes back to you and it's -- and it's deficient**

5    **in some way, would it be your office that would**

6    **contact the voter to correct that deficiency?**

7    A      No.

8    **Q      Okay.  And who would it -- would there be**

9    **anyone that would contact the voter to correct**

10   **that deficiency?**

11   A      We receive the carrier envelopes, and all

12   we do is -- of course, we log in the information,

13   we enter it and put it -- like I told you before,

14   we are a single-member district, so we separate

15   them, depending -- if it's a mayoral election

16   year, I'm going to have Districts 1 through 6.  If

17   it's just a particular district that's running,

18   you separate them.  And basically, all we do is

19   keep that information, log the information, and

20   have it ready for the ballot board that's going to

21   qualify and go through the process.

22              I have had instances where individuals

23   will call and they'll want to cancel, or they come

24   back -- you know, the reason might be that

25   they're -- they were expected to be out of the

RICHARDSON: PERLA LARA

Page 58

```
 1    county, they came back, and they want to go to the
 2    polling place and vote, you know, before the end
 3    of the early voting or on election day, and
 4    we've -- we've canceled.
 5        Q      Okay.  And if there's any other deficiency
 6    in the carrier envelope -- for example, not all
 7    the information that's required was filled out or
 8    something like that -- would you contact -- would
 9    your office contact the voter and let them know
10    that if -- you know, say it's before election
11    day -- so that they could go vote in person or
12    cancel their ballot, or would you just send them a
13    rejection notice?
14        A      No.  Before -- before election day, we
15    have contacted them, especially if we get them
16    before the election -- or, you know, when they
17    still have an opportunity to vote on election day,
18    we will contact them.
19        Q      Okay.  And is that a policy of your office
20    universally, or is that done on a case-by-case
21    basis?
22        A      Case-by-case.
23        Q      Okay.  And why is that?
24        A      Because that -- like I said, they'll call
25    and, you know, they'll either tell us that they
```

RICHARDSON: PERLA LARA

Page 59

1   don't -- you know, they didn't mean to vote by

2   mail or they'll call and they'll say, you know,

3   "We received that information."  A lot of times

4   they think it's the city clerk -- or city

5   secretary that has sent them to them because it's

6   the -- the campaigns will send them out.  And then

7   they find out that it wasn't the city secretary,

8   so then they say, you know, "We don't want to

9   vote.  Can we still vote?"  And, of course, we let

10  them know that they can vote on election day.

11          But it's mainly them calling in

12  saying, "We didn't request it and, you know, they

13  were helping.  They -- they helped us fill them

14  out, but -- you know, we just did it because they

15  were asking, but we don't feel comfortable.  We

16  want to vote on election day."  And so we'll just

17  document --

18  Q      Got it.

19  A      -- that they decided they want to vote on

20  election day.

21  Q      Yeah, that makes sense.

22          Now, in the case where no one calls

23  you but they just mail back in their ballot and

24  there's some deficiency in it and it's before

25  election day, would you always try to contact that

RICHARDSON: PERLA LARA

Page 60

```
 1   voter to let them know, or would you sometimes
 2   contact that voter to let them know and sometimes
 3   not?
 4              MR. TAWIL:  Objection; form.  Are
 5         you talking about the ballot or the
 6         application?
 7              MR. COX:  I'm talking about the
 8         carrier envelope for the ballot.
 9              MR. TAWIL:  Yeah, because you asked
10         her about the ballot, so I'll object.
11              MR. COX:  Yeah.
12              MR. TAWIL:  But if you want to
13         clarify your question.
14              MR. COX:  Yeah.
15              THE WITNESS:  Yeah.
16   BY MR. COX:
17    Q     I mean, I'll ask you the question for
18   both.
19              If you receive an application that has
20   deficiencies, an application for a ballot by mail,
21   and it has deficiencies and there's still time to
22   fix those deficiencies, would you always contact
23   the voter about that?
24    A     Yes.  On the application, yes.
25    Q     Okay.  And now when you receive a -- after
```

**hg**

RICHARDSON: PERLA LARA

1    someone's submitted an application and been

2    qualified and received their ballot in the mail,

3    and now they return their ballot to you and you

4    find some deficiency in that document, the carrier

5    envelope, would you then contact the voter if

6    there's -- if it's received before election day,

7    for example --

8               MR. TAWIL:  Objection; form.

9    BY MR. COX:

10   Q     -- as a rule or not?

11              MR. TAWIL:  Objection; form.

12              THE WITNESS:  Yeah, no, we

13       just -- as far as the ballots, when we

14       receive the ballots, we just file them.

15       We enter it as received -- as received and

16       log it in in the spreadsheets, and that's

17       what we hold for the board.  Once we

18       received it, unless they call us and let

19       us know that they've changed their mind,

20       that they don't want to vote by mail, I

21       mean, that's the final product.  You know,

22       they've sent it to us.

23              But on the applications, definitely

24       we do -- we do review that.  I mean, the

25       number one area that we get, they'll check

**hg**

RICHARDSON: PERLA LARA

Page 62

```
1        and say, you know, 65.  Then we'll look at
2        the age and if they don't meet that
3        qualification, but they do meet the
4        disability or the sickness, or maybe they
5        meant to -- out of the county.  So that,
6        we do check, because that's something that
7        we can open and verify.
8              But as far as the ballots, once we
9        get it, it's been received, we log it in
10       to the particular district, and we color
11       code it by district, and then we put that
12       information away until we meet with the
13       ballot board to turn that information over
14       to them.
15  BY MR. COX:
16   Q      Got it.
17          And does any of these -- the
18  procedures you just described change from election
19  to election since you've been city secretary?
20   A      No.
21   Q      Okay.  And do you have different
22  responsibilities in any kind of election context
23  based on what kind of election you're running,
24  whether that's a bond election or, you know, a
25  bigger election than that?  Do your
```

**hg**

RICHARDSON: PERLA LARA

Page 63

1  responsibilities change at all?

2  A    No.  They're basically the same.  It

3  doesn't matter if it's a district, a bond

4  election, a mayoral election.  They're -- I mean,

5  it's the same.  We follow the same -- the same

6  guidelines, the same processes that the SOS

7  designates.

8  Q    Okay.  Great.

9        So let me just do this real quick, and

10  then we'll take a break.  I just want to walk

11  through really kind of all of the steps that

12  happen, you know, if someone wants to vote by mail

13  in McAllen.  And then -- I don't think it will

14  take very long, and then we can take the short

15  break.

16  A    Okay.

17  Q    If I'm a voter in McAllen and I'm, say,

18  just -- I'm over 65 years old and I want to vote

19  by mail, how would I -- how would I go about

20  initiating that process with your office?

21  A    If you want to do that through our office,

22  you'll call our department and you request an

23  ABBM, an application ballot by mail, and we'll

24  send it to you.  You fill it out, send it back to

25  us with your, of course, corresponding district

RICHARDSON: PERLA LARA

Page 64

1   that you belong to if we have our ballots

2   color-coded, and we send that information to you.

3   **Q       And when you send that application, does**

4   **it include any kind of a letter or instructions**

5   **along with the letter or anything like that?**

6   A      Yes, there's instructions that we send,

7   and we fold that instruction sheet and put that in

8   the envelope that we send to you.

9   **Q       Okay.  And that's -- is that some -- a**

10  **letter that you, your office, has developed, or is**

11  **that something you got from somewhere else?**

12  A      We get it from the companies that we order

13  our supplies from.  Sometimes we'll order from

14  Capital Graphic; sometimes we order from Hart.  It

15  just depends who -- who my records person orders

16  from.  And they've got those sheets inside that's

17  got the instructions.

18  **Q       But I mean who wrote the -- who wrote the**

19  **instructions?  Did you -- did you -- is this**

20  **something you have provided to the voters as the**

21  **City of McAllen, or you got it from the county or**

22  **you got it from the Secretary of State or**

23  **something like that?**

24  A      I -- I don't know who our vendors get that

25  information from.  You know, we order -- we get



Page 65

```
 1   what we call the "pizza boxes" with all the

 2   information on there.  They send us the -- the

 3   applications and the envelopes.  You know, we just

 4   put that insert inside the envelope.

 5           And, of course --

 6   Q      Okay.

 7   A       -- the instructions are on the -- on the

 8   envelope as well.  On the back, it tells you what

 9   you need to do, and basically you check off the

10   boxes.

11   Q      And are those identical instructions to

12   the ones provided in the kind of slip of paper

13   you're talking about?

14   A       I mean, no.  They're not identical,

15   because a lot of times -- I mean, those are the

16   ones that we have when -- if it's a -- not a bond

17   election but a district election or mayoral

18   election, sometimes they've got consultants that I

19   guess download the information and they preprint

20   their own material.  It's very similar, but

21   they -- you know, they move those words around and

22   change it a little.  But we still accept them.

23   Q      Okay.  And do you know if those

24   instructions include any kind of explanation about

25   signatures or anything like that?
```

**hg**

Page 66

1    A       No.  I mean, it's just got the box where

2   it says, you know, you -- "signature here," and

3   just like the application, it's got a place for

4   your signature.

5    **Q       Okay.  So it doesn't provide any**

6   **additional instructions or warnings or anything**

7   **like that to the voter about their signature or**

8   **anything?**

9    A       Correct.

10   **Q       Okay.  And so now I'm a McAllen voter and**

11   **I've sent in that application and put all the**

12   **correct information on there, and it's received in**

13   **your office, and you've put it into -- what**

14   **happens then, once it gets to your office?**

15               MR. TAWIL:  Objection; form.

16               THE WITNESS:  Then I'll get it at

17        the -- yeah.

18               We'll get it -- my staff will

19        review it and make sure that you belong to

20        that district.  A lot of times we have

21        citizens that will request a ballot by

22        mail and they're thinking it's an election

23        at large so they don't belong to that

24        district, so then we'll send them a letter

25        saying that, you know, we don't have an

**hg**

Page 67

1        election and it's -- they would have to

2        wait until the next one.

3              So we review that and make sure

4        that they belong to Districts 1 through 6,

5        that we'll go into the -- the counties

6        will provide us their -- a voters'

7        registration list so that we can go in

8        there and verify, like I said, the age if

9        they're claiming the 65.  If they're

10       claiming a disability or a, you know -- on

11       grounds of disability or sickness,

12       especially if it's a disability, we --

13       we'll okay that one.  It's basically we're

14       just checking for the age, making sure

15       that they are in the correct district.

16             And after we review that, then --

17       and determine that it's for that

18       particular district, then we prepare the

19       information, prepare the ballots, stamp

20       them and send them out to them.  We put

21       the -- we even do the labels and populate

22       everything for them so that -- to make it

23       easier.

24   BY MR. COX:

25   Q      And besides the age that you -- age

**hg**

RICHARDSON: PERLA LARA

Page 68

1    **requirement that you mentioned, if someone checks**

2    **eligibility for any of the other reasons, do you**

3    **investigate any of those to make sure that they**

4    **qualify to check that box, like whether they're**

5    **in -- currently incarcerated or anything like**

6    **that?**

7       A      Right, I've never had anybody that's

8    checked off -- at least not during my time -- that

9    they're in jail or confined to jail or they're

10   going to be in jail at the time of the election or

11   election day.  We do get the one for they want to

12   vote because of the absence from the county, and

13   we do check because we do need an address that

14   states they're, in effect, going to be out of the

15   county.  That's the only other one that we do

16   check.

17               I've never gotten one for being

18   confined.  I have never gotten one for

19   the -- participating in the confidentiality

20   program, and I think --

21      **Q      Okay.**

22      A      -- maybe once I got an FPCA, but that one

23   never -- they requested it, but it never came in.

24      **Q      Got it.**

25               **And so then after you've determined**



RICHARDSON: PERLA LARA

Page 69

1    whether the applicant is qualified or not, then is

2    it -- then you send them a ballot in carrier

3    envelopes?  Is that correct?

4     A     Right.  We -- like I said, we go over the

5    information, we put the ballot in the

6    corresponding carrier envelope, and we send it out

7    to them.

8     Q     Okay.  And then -- I'm the voter -- I get

9    that in the mail.  I -- you know, follow the

10   directions and send it back in with my ballot

11   inside the carrier envelope, and then is that also

12   inside of another -- a second envelope?  Is that

13   right?

14    A     Yes.

15    Q     And then I send -- I send that in to you,

16   and what happens to the ballot once you get it

17   back?

18    A     I know you said that sometimes it's inside

19   the envelope.  Sometimes when -- and it hasn't

20   happened, but they've told us at the training --

21   sometimes they don't put it inside the envelope,

22   though.  Basically our -- our board would still

23   accept that, but it just takes away the secrecy,

24   because you didn't follow instructions.  But --

25   you know, the instructions are on there, but

RICHARDSON: PERLA LARA

Page 70

1    sometimes they don't -- they don't follow.

2    **Q       Understood.**

3    **And once you get that ballot back,**

4    **then what happens to it in your office?**

5    A      All we do is enter it, and we have a

6    spreadsheet that says -- where it lists everything

7    that's going out.  So then we'll get a spreadsheet

8    and as we're receiving them, we'll log them in as

9    received.  Then we go to our poll tablet that we

10   have, and we document them as the -- we'll go in

11   there and enter them as voted.  That way, if they

12   try voting in person -- I mean, they shouldn't

13   because they're expected to be out of the county,

14   but then we've got those that are 65 or older --

15   they don't vote twice because it's already showing

16   that they voted.

17   **Q       Got it.**

18   **And would there --**

19   A      And then we just put this away under lock

20   and key.

21   **Q       Okay.  And would there ever be a reason**

22   **for you -- your office to reject a ballot before**

23   **it gets to the early voting ballot board, or -- or**

24   **does every ballot that comes in automatically get**

25   **sent to the EVBB, no matter what it has on it or**

RICHARDSON: PERLA LARA

Page 71

1    what?

2    A      Correct.

3              MR. TAWIL:  Objection; form.

4              THE WITNESS:  Yes, there's no

5       reason -- there's no reason for me to

6       press "reject."

7    BY MR. COX:

8    Q      Okay.  So then do you -- when the ballot

9    comes in, do you review it for correct postmark or

10   if it was postmarked in time?

11   A      Right.  That's it.  As long as we got it

12   on time -- on a timely basis, we enter it and then

13   just throw them away until it's time for the

14   qualifying and processing.

15   Q      And if you get one that's not received on

16   time, would you -- would your office do the

17   rejection of that ballot for being untimely, or

18   would you still send it to the ballot board to

19   make that determination?

20   A      Yes, no, we have to reconvene again and

21   bring back my -- my board so that they can reject

22   that it didn't come in on time.

23   Q      Okay.  And then so once you have all of

24   the ballots, it's election day now, and you're

25   taking the sealed ballots to the ballot board,

Page 72

1  what happens to them then?

2   A      Right.  We -- the ballot board comes in,

3  they take their oath, and then they take over.  We

4  hand the information to them, the ballots by mail,

5  and we also hand the information for the early

6  voting by personal appearance.  So they usually do

7  that first, and then they start working on the

8  mail ballots.

9   Q      Okay.

10   A      And then, of course, the provisionals, but

11  we have to -- that's the day, you know -- until we

12  get the provisional ballots, if we have any, we

13  reconvene again to also qualify and process and do

14  the provisional ballots.

15   Q      Got it.

16          MR. COX:  I think we can take a

17      break.  We'll come back and talk more

18      about the early voting ballot board, but

19      let's take a break for 15 minutes.  Does

20      that sound good?

21          THE WITNESS:  Yes.

22          MR. COX:  Okay.

23          MR. TAWIL:  That's fine.

24          THE VIDEOGRAPHER:  Okay.  We're

25      going off --

**hg**

RICHARDSON: PERLA LARA

Page 73

```
1              MR. COX:  We -- all right.

2              THE WITNESS:  Thank you.

3              THE VIDEOGRAPHER:  We're going off

4      the record.  The time is 11:01 a.m.

5          (Recess from 11:02 a.m. to 11:19 a.m.)

6              THE VIDEOGRAPHER:  We are back on

7      the record.  The time is 11:19 a.m.

8  BY MR. COX:

9   Q      Okay.  So --

10             MR. TAWIL:  Ryan, if I could -- if

11     I could interject real quick.  I think

12     Perla wanted to clarify one item from a

13     prior question that you asked.

14             MR. COX:  Sure.

15  BY MR. COX:

16   Q     Ms. Lara, go ahead and clarify

17  what -- whatever you think needs clarification

18  right now.  We'll do that right now.

19   A     Okay.  That was the item as to whether or

20  not this was my first deposition.  I understood it

21  to be as in my official capacity, but personally,

22  yes, I've had a depo with a car accident.

23   Q      Okay.  And did that --

24   A     Mediation -- mediation settled out of

25  court.
```

**hg**

RICHARDSON: PERLA LARA

Page 74

1    Q      Okay.  And did that have anything to do

2    with your -- your official job duties or in any

3    way your role as the city secretary?

4    A      No.  Personal.

5    Q      And did it involve any liability claims

6    against the city?

7    A      No.

8    Q      Okay.  Great.  Thank you -- thank you for

9    clarifying that.

10            So before the break, we were talking

11   about the early voting ballot board, and so I'd

12   just like to ask you a couple of general questions

13   about that.

14            What -- what is an early voting ballot

15   board?

16   A      They're -- basically, it's the authority

17   that processes and qualifies the early vote by

18   personal appearance, the mail-in ballots, and, of

19   course, any provisionals that come in after the

20   fact.

21   Q      Okay.  And can you explain how --

22   A      Or after that fact that -- you know, that

23   the voter -- I'm sorry -- the voter provisionals

24   that were sent to the county, and then we wait for

25   that answer.

Page 75

1    Q      Got it.

2           And can you describe for me how you

3    personally interact with the early voting ballot

4    board, either as a board or any of its individual

5    members?

6    A      Other than the training, I don't take any

7    process in the -- in the actual qualifying

8    process.  I am not in the room with them.  I -- we

9    don't -- we don't talk or have any interaction

10   after the trainings and after I deliver the

11   material.

12   Q      Okay.  And can you explain for me the

13   timing of these trainings that you have for them,

14   whether -- like, I guess, how far in advance of an

15   election do you do these trainings and do they

16   happen every year, or when do they happen?

17   A      They happen only when we're having

18   elections.  We do the trainings a month before,

19   and then we do on one -- one-on-one trainings up

20   to and leading to the day that the early vote

21   starts.  The -- we hand out the different

22   materials, the books, the TEC book.

23           We order books for all our judges and

24   we give each judge, including the ballot board

25   judge -- you got to keep in mind that they're also

Page 76

1    judges during the early voting period; and then on

2    election day, you know, some of them -- especially

3    if it's the -- not an at-large, we'll take them

4    out of being the judge for whatever polling place

5    that they were at and they become our EVBB judge.

6              We give them the handbooks as well,

7    the election judge handbook for early voting by

8    mail, and then we just give them a list of all the

9    supplies and what we're going to give them.  We go

10   over the forms, the tally sheets, our

11   spreadsheets.

12             We also -- that's just the by-mail,

13   because we also do the training on that Saturday

14   where they have to go to the different sites to

15   retrieve the information from the ExpressVotes,

16   from the ExpressVote machines, and that's a

17   different process.

18   **Q      And so is there -- is it a separate**

19   **training for their role as an EVBB member as**

20   **opposed to just being a regular election judge, or**

21   **are those two trainings combined into one?**

22   A      They're combined.  Because I've got staff

23   there, and after we do that, then we -- at the

24   ballot boards -- because like I said, they do both

25   functions.  We'll ask that group, which is my EVBB

**hg**

Page 77

1   board, to come over and then we hand out the

2   information for the early voting ballot-by-mail

3   process, which is the --

4       Q       Okay.

5       A       -- the same handbooks that we give to

6   them.

7       Q       **And so when you -- you said you provide**

8   **them a copy of the Texas Election Code.  Is**

9   **that -- do you point them also to particular**

10  **provisions of the election code that they need to**

11  **know about, or you just provide them the whole**

12  **thing and let them kind of fend for themselves on**

13  **that?**

14      A       I provide them the book as is.  Of course,

15  you know, I let them know what they -- what they

16  need to look -- I mean, it's a big book.  The

17  judges -- they've been doing this for a long time.

18  Like I said, the county also uses them, and they

19  have also served as the judges for their ballot

20  boards.

21              So I know we don't because our budget

22  has been permitted, but the counties do send these

23  judges also to the trainings.  And that's where I

24  have heard about the election administrators'

25  trainings that they go to, because they go to

**hg**

RICHARDSON: PERLA LARA

Page 78

1   those trainings as well and they're provided with

2   materials.

3   **Q       Okay.  And what -- what does the content**

4   **of the training related to mail-in ballots**

5   **include?**

6   A       It's basically reviewing that handbook.

7   It's the -- it's not a big handbook.  It's not as

8   big as the TEC book that we order.  They used to

9   send the handbooks to us.  Now we download it, and

10  I don't think it's more than 30 pages, unless it's

11  been revised.

12              And basically, all we do is just --

13  you know, we -- we go over the book and just point

14  out the sections.  You know, this is what the

15  authority of the EVBB -- you know, this is what it

16  is, you know, at the -- at the front of the page.

17  We just -- I think the first or second page, it's

18  got a table of contents.  It's got a couple of

19  examples that we tell them, you know, "Go back to

20  the examples.  You know, if you have any

21  questions, this is what you're looking for."

22              And it's basically just review --

23  review the entire book.  I've got staff there with

24  me, and we just go over the different sections.

25  Like I said, it's not a very -- a very big book.



Page 79

1    As a matter of fact, it includes both the EVBB and

2    the SVC.  I think the SVC is just, like, maybe

3    half a page.  It's not a lot.

4        **Q      And this is the early voting ballot board**

5    **handbook provided by the Secretary of State's**

6    **office; is that correct?**

7        A      Right.  It's -- I think it's entitled

8    for -- "Handbook for Judges and Clerk, EVBB."

9        **Q      Okay.  And in the training that you**

10   **provide that involves this handbook, is there any**

11   **training that is specific to recognizing**

12   **mismatching signatures or evaluating whether, you**

13   **know, two marks made were made by the same person**

14   **or any kind of training like that?**

15       A      No.  Well, the actual -- the book does

16   have a section on that.  I always remind them that

17   we are not handwriting experts.  I remind them

18   that they are not the SVC committee, because it's

19   not.  It's two separate authorities.

20            And I do -- I mean, that's one section

21   that I do point out to them:  "We -- all that we

22   do is just compare the signature from the

23   application," just -- it's a reminder, "Don't

24   forget, we're comparing the signature of the

25   application to the corresponding carrier envelope

hglitigation.com

**hg**

RICHARDSON: PERLA LARA

Page 80

1    just to determine that the signatures were that of

2    the voter."

3              And I do remind them, I mean, that's

4    all that we're doing, and just making sure that

5    the information is in there.  You know, because we

6    do point out -- I think there's a section also

7    that -- or it's, like, two or three pages where it

8    tells you the reasons why you would reject or not

9    accept the vote, and that's if they check off one

10   or two when you can only select one candidate.

11             So we -- we review that and, I mean,

12   they're -- those judges have a lot of experience.

13   Like I said, they've been with the county as well

14   for years.  But we still review it, and we let

15   them know the reasons that they can't.  You know,

16   if they -- if they check off two people or if -- a

17   lot of times they send it back and they send them

18   blank.  They don't select a person.  Well, then,

19   you know, that's another instance.

20             But it's basically just to review all

21   the examples that are in the handbook.

22   **Q      And in any of these trainings, have you**

23   **ever got questions about what to do if they were**

24   **unsure of whether a signature was a match or**

25   **signed by the same person?**

Page 81

1    A      No.

2              MR. TAWIL:  Objection; form.

3              THE WITNESS:  No.

4    BY MR. COX:

5    **Q      And so can you estimate how much time in**

6    **this training for early voting ballot board**

7    **members is spent talking about or training them on**

8    **signature mismatches?**

9    A      Again, we don't.  We just review the

10   handbook, and like I said, that's the only section

11   that I refer to the -- that I refer back to.  It's

12   just the part that says all we do is just

13   ascertain that it was the -- the same voter that

14   signed a document.  Just, you know -- all we have

15   to look at is the application and the

16   corresponding carrier envelope.  If it resembled

17   and you ascertained, you know -- and all we do is

18   ascertain that it's the same individual and the

19   same voter.

20   **Q      And do you train them to accept two**

21   **signatures if they resemble each other?**

22   A      We -- we go over the book, and I just

23   remind them if they have a question, I just remind

24   them that, you know, you take a vote.  If it's a

25   unanimous vote, you know, that's the decision that

RICHARDSON: PERLA LARA

Page 82

1    we're going to go by.  If somebody feels that --

2    you know, if it's not unanimous and somebody feels

3    that it was, you know -- it resembled -- or that

4    it reasonably resembled the signature, you can

5    take another vote.

6              I always remind them, you know, you

7    could always override it, and once you override,

8    that would be the final decision.  But I do -- I

9    do make them aware that if somebody feels

10   uncomfortable, you could always go back and

11   override and do that.

12   Q    Can you explain that for me?  I don't -- I

13   don't think I understand how one person could

14   override if they feel uncomfortable.

15   A    No, well --

16   Q    Can you explain that?

17   A    All right.  You take another vote.

18   Q    I see.

19   A    And sometimes, you know, it will change.

20   They might come back and say, well -- you know, if

21   that person can convince them that it was

22   the -- you know, that it's reasonably the same --

23   they take another vote, and if it's unanimous,

24   then the previous one doesn't count and we go with

25   the -- with the override; and if the override says

RICHARDSON: PERLA LARA

Page 83

```
 1   we count, they count it.
 2     Q      Got it.
 3     A      And for the most part, it's usually -- for
 4   the most part, it's unanimous.
 5     Q      And a minute ago you said that you remind
 6   people getting these trainings that they're not
 7   signature experts and that they're not members of
 8   the SVC, the signature verification committee.
 9   Can you explain to me the distinction that you're
10   making there between the EVBB and the SVC?
11     A      I do that because that's one of the
12   questions that I get from them at the training:
13   "So are we supposed to do that?"  Because
14   they -- that book -- and I see why it would be
15   misleading or confusing, because it's -- it talks
16   about both committees on the same book.  So when
17   they're reading that, they're thinking, "Oh, you
18   know, it says 'SVC.'  Are we supposed to do that?"
19   So I just remind them that that's the way -- you
20   know, that book, you know, it includes both the
21   SVC committee and the EVBB board as well.
22              So, you know, I always tell them I
23   don't have an SVC.  As a matter of fact, I've
24   only -- I've only had it once.  So I -- you know,
25   I tell them you're just the early voting ballot
```

hglitigation.com

**hg**

RICHARDSON: PERLA LARA

Page 84

```
 1    board, and so we're not -- you know, we're not
 2    here to make that determination.  As long as it's
 3    the -- you know, you can ascertain that it was,
 4    you know, similar, that's what we go with.
 5              But it's because they bring that
 6    question up when they see that it includes the
 7    SVC, so they always -- I mean, they always
 8    question that.
 9    Q      Got it.
10              And you -- you mentioned that
11    you -- part of the information you've given in the
12    past is that a member of the EVBB can ask for
13    another vote and that would override a previous
14    vote; is that -- am I getting that right?
15    A      Right.  If somebody -- if it's not
16    unanimous or somebody feels that it is, you know,
17    the same, that it's -- that they're similar, then
18    the judge will call for another vote, you know, of
19    those that -- that feel, you know, it should be
20    counted because it's similar.  You know, they can
21    vote.  And a lot of times the other, you know,
22    three, four clerks will change their mind, and so
23    that would override the decision not to count.
24    Q      Now, is that advice that you've given --
25    A      It happened in the case --
```

**hg**

Page 85

1    Q      Okay.

2    A      Sorry.

3    Q      Yeah, that -- I guess that was going to be

4   my next question, was:  Did -- have you given that

5   advice to members of an early voting ballot board

6   that contacted you because there was a

7   disagreement about a signature?

8    A      I do that at the trainings.

9    Q      Okay.  Okay.  I'm going to put in the chat

10  here a link to a document.

11   A      Okay.

12   Q      Hopefully.  For some reason, it doesn't

13  want to let me -- oh, I'm putting it in the wrong

14  box.  Sorry.  There we go.

15   A      All right.  There.

16   Q      Please let me know if you're able to open

17  that document.

18   A      Yes.

19   Q      Okay.  And do you recognize this document?

20   A      Yes.

21   Q      Okay.  And what do you recognize this to

22  be?

23   A      It's the list of -- what is it the list

24  of? -- answers, objections and answers.

25   Q      Uh-huh.

**hg**

RICHARDSON: PERLA LARA

Page 86

1    A       Yes.

2    **Q       Okay.  And were you --**

3    A       Objection and answers.

4    **Q       I'm sorry?**

5    A       Yes, that's what I said.

6    **Q       Okay.**

7    A       It's the answers to the -- the list of

8    objections and answers.

9    **Q       Okay.  And were you involved in responding**

10   **to the requests in this document?**

11   A       Yes.

12   **Q       Okay.  And did anyone else -- besides your**

13   **counsel, did anyone else in your office help you**

14   **put together the information to answer the**

15   **questions in this document?**

16   A       Yes.

17   **Q       Okay.  Who else helped you put together**

18   **some information for these answers?**

19   A       Our records manager.  Because we had all

20   those -- all that information stored and filed, so

21   I requested that that information be brought to

22   me.

23   **Q       Okay.  And there you're talking about the**

24   **documents; correct?**

25   A       Yes.  Correct.

RICHARDSON: PERLA LARA

Page 87

1    Q      Okay.  Did she also help in drafting the
2    actual answers that you gave?

3    A      No.  They just brought me the boxes, and
4    then I sorted through that.

5    Q      Okay.  All right.  So I'd like to ask you
6    to go down to Page 5.

7    A      Okay.

8    Q      There -- at the top of Page 5 is your
9    answer to -- let's see -- Interrogatory Number 6.

10   A      Uh-huh.  Okay.

11   Q      And so in this response, you listed past
12   members of the McAllen early voting ballot board
13   in various elections; is that right?  Is that what
14   this is right here?

15   A      Yes.

16   Q      Okay.  And so, for example, an individual,
17   Daniel Codina, he's been on that board for at
18   least the last three elect- -- I'm sorry.  Not the
19   last three -- he was on the -- on that board in
20   2017 through May of 2018, and then it lists all of
21   the other members of the ballot board; is that
22   right?

23   A      Yes.

24   Q      Okay.  So my question for you is:
25   How -- how are these individuals -- all these

RICHARDSON: PERLA LARA

Page 88

1   people named in this response, how are they

2   selected to be on the ballot board?

3    A      I make recommendations to the mayor and

4   city commission and put that on the agenda, and

5   they appoint them.

6    Q      Okay.  And how do you go about deciding

7   who you're going to recommend for these particular

8   jobs?

9    A      Like I said, we share them with our

10  Hidalgo County administrator, and we share the

11  same judges, and this is people that have

12  been -- they've been doing elections with the city

13  about -- most of them since 1999, that I started.

14  It's basically the same ones.

15   Q      Okay.  And so is it the --

16   A      Yeah.

17   Q      Let me know if I'm getting this right or

18  not.  But these are the same people that are on

19  the early voting ballot board for Hidalgo County;

20  is that correct?

21   A      At different times.  I mean, not

22  necessarily.  When they're working with us on an

23  election, of course they're not working with the

24  county.  But, you know, some of them right now,

25  they're getting ready to work on the -- on the

RICHARDSON: PERLA LARA

Page 89

1   July election that starts -- the early voting

2   starts in June, and they're -- they're with the

3   county right now, but when the city is doing

4   elections, well, then they come work with the

5   city.

6   **Q      Got it.**

7   A      They -- they go back and forth.

8   **Q      And so do you -- so do you kind of accept**

9   **the -- these folks that the county uses based on**

10  **the fact that the county already uses them, or do**

11  **you independently I guess vet them, or do you do**

12  **both?  Or -- I'm trying to understand how -- how**

13  **you decide which of these people who also work for**

14  **the county get hired by the city.**

15  A      Right.  Well, most of them, like I said,

16  they -- they don't grow on trees.  It's hard to

17  find judges.  I don't know if you're experienced

18  with it, but they're all retirees.  We -- it's

19  hard to find them, so we do share them.  It's

20  people that I've known for years.

21          If they're new, of course, we do

22  interview them.  Excuse me.  The -- our HR

23  department will also do a background search on

24  them.  But, like, Danny -- Daniel Codina, Luis

25  Longoria, Richard Hinojosa, they had just retired

RICHARDSON: PERLA LARA

Page 90

1    back in 1999 when -- when I started.  It's been an
2    ongoing relationship with them.  But the new ones
3    that are coming in, yes, they get interviewed.
4              They -- I mean, even -- even the ones
5    that -- that are working right now, every year
6    they have -- they go through a -- through a
7    background test as well and, of course, they get
8    clearance.  But they're very experienced judges
9    and clerks.
10   Q    Okay.
11   A    And, of course, they have to be a
12   qualified resident of the City of McAllen.  I
13   mean, we get several that the county will refer
14   that -- and they'll -- they'll come to my office.
15   But if they're not from McAllen --
16   Q    Right.
17   A    -- I can't -- they can't work for us --
18   Q    Yeah.
19   A    -- versus the county, there it doesn't
20   matter.  As long as they're a qualified voter,
21   they can work for the county.  But it's not the
22   same for the city, so it's even harder for us.
23   Q    Yeah.  I used to live in McAllen.  I know
24   that you've got kind of Edinburg and Pharr and all
25   these other little towns, like, right around.

RICHARDSON: PERLA LARA

Page 91

```
 1    A      Yes.  It's difficult.
 2    Q      So I understand that.
 3           Let me ask you -- you did mention that
 4   you've known many of these people for a very long
 5   time, and so I just want to ask you, do you
 6   interact with any of the people listed on this
 7   document outside of their role as an EVBB member,
 8   so like socially or in any other way?
 9    A      No.  It's just at election time.
10    Q      Okay.  And so understanding that
11   it's -- like you said, these folks willing to do
12   this work don't grow on trees, are there any
13   specific qualifications that these folks have to
14   meet to qualify to serve on the early voting
15   ballot board?
16    A      Other than being a -- and it's from what
17   the SOS tells us -- being a qualified voter,
18   registered to vote.  I do look for, however, that
19   they have had experience.  There is an application
20   that they fill out every year regardless.  If I
21   want to see if they -- they've -- they did an
22   election the year before with the county -- or
23   several.  Normally they do several.
24           We do have them do that application,
25   and I do ask, you know, "What are the last
```

RICHARDSON: PERLA LARA

Page 92

1    elections that you've been at?"  But --

2    Q       And are --

3    A       -- as long as they -- especially for the

4    judge and alternate judge, we -- we do ask for a

5    little bit more than we would just for the -- for

6    the clerks.

7    Q       And what is it that you ask more?

8    A       That they've got experience as far as

9    being judges and alternate judges, that they're

10   familiar with the process.  And that's what I was

11   saying earlier.  We have to concentrate more on

12   the equipment because a lot of that time, they'll

13   come off from running a -- conducting an election

14   for the county, and then they come to conduct one

15   for us and we've got different equipment.  They've

16   got the Hart InterCivic equipment and we've got

17   ES&S, and that tends to be a little bit confusing

18   because they -- it's different equipment, it's

19   different scanners.  So that's where --

20   Q       Got it.

21   A       -- where we have to do additional

22   trainings.

23           But basically, I'm looking that they

24   have done the election work with the county.  They

25   fill out combination forms with that.  It's all

RICHARDSON: PERLA LARA

Page 93

1    electronic, and so they -- that tends to be a

2    little bit confusing also because they're asking

3    for combination forms and we've got electronic

4    rosters.

5              But as far as the ABBM process, that's

6    pretty much the same, but I do want them to have

7    experience as being judges and alternate judges.

8    Because our pool of judges and alternate judges is

9    getting up in the late 70s/early 80s, I'm starting

10   to cross-train recent retirees, our clerks, that

11   have been doing that, and so what I do is I pair

12   them up with our experienced judges so that they

13   can start learning the process, because a lot of

14   them are -- you know, I don't know if they're

15   going to be back for the next election.

16   **Q      Understood.  I totally understand that.**

17   **It seems like good planning.**

18   **          But let me ask you this specifically,**

19   **because it relates to this case.**

20   A      Okay.

21   **Q      Do you require any of these ballot board**

22   **members, before you recommend them for**

23   **appointment, to demonstrate any experience or**

24   **knowledge or expertise in evaluating signatures?**

25             MR. TAWIL:  Objection; form.



Page 94

1           THE WITNESS:  No.

2   BY MR. COX:

3    Q      Thank you.

4           Okay.  So -- okay.  So let's go back

5   to the document that I shared a minute ago, which

6   I'm going -- which is Exhibit 2.  I don't know if

7   I mentioned that earlier, but we're going to mark

8   this Exhibit 2.

9           (Exhibit 2 marked.)

10  BY MR. COX:

11   Q      I have a couple more questions about this

12  document.

13          So down on Page 8, kind of towards the

14  top of Page 8, there is a request called "Request

15  Number 2."

16   A      Okay.

17   Q      And it's -- do you see that?

18   A      Yes.

19   Q      And it says:  "Admit that Ms. Lara is

20  responsible for the administration of joint

21  elections conducted within the City of McAllen

22  with Hidalgo County," and you indicated "Deny."

23          Am I reading that right?

24   A      Yes.

25   Q      Okay.  So my question is:  Do -- does the

**hg**

RICHARDSON: PERLA LARA

Page 95

1    City of McAllen ever have joint elections with

2    Hidalgo County?

3    A      We -- we have, but --

4             MR. TAWIL:  Objection; form.

5             THE WITNESS:  Yeah, we have, but

6        not recently.  I think it was back in -- I

7        don't know -- 2000/2001 that we had a

8        joint election.  Normally the City of

9        McAllen runs their own elections.

10   BY MR. COX:

11   Q      Okay.  And who -- who is -- makes a

12   decision about whether to have the city run its

13   own elections or ask the county to run those

14   elections?  Who makes that decision?

15   A      Mayor and city commission, or city

16   council.

17   Q      Okay.  And do -- to the extent you have

18   any knowledge about this, do you know why the city

19   council and the mayor have decided to have the

20   City of McAllen run its own elections?

21            MR. TAWIL:  Objection; form.

22            THE WITNESS:  No.  That's just the

23       way the city -- ever since I came on

24       board, that's what they've always done.

25   BY MR. COX:

RICHARDSON: PERLA LARA

Page 96

1    Q      Okay.

2    A      We -- it started where we would lease out

3    the equipment from the -- from the county, and

4    just -- as of 2015 and on, the city purchased

5    their own equipment.

6    Q      Okay.  And to your knowledge, the last

7    time that a joint election was run, did

8    Hidalgo -- which you said was -- let me ask you

9    this:  Is your testimony that the last time a

10   joint election was run with the county and the

11   city, you believe it was somewhere around 2001,

12   give or take?

13   A      Give or take, yeah.

14   Q      Okay.

15   A      It could have been --

16   Q      And --

17   A      -- a little bit later.  It could have been

18   a little bit later.

19   Q      Okay.

20   A      I'm trying to remember.

21   Q      I'm not trying to --

22   A      It's such a long time ago.

23   Q      I'm not trying to do any kind of -- any

24   kind of "gotcha" thing on this.

25   A      Okay.

Page 97

1    Q       I'm just trying to --

2    A       Yeah.

3    Q       And you were working with the city at that

4    time?

5    A       Yes.

6    Q       Okay.  And to your recollection, did the

7    city secretary's office administer that election,

8    or did the Hidalgo County -- did Hidalgo County

9    administer that election?

10   A       When they -- yeah, when they do joint

11   elections, the county really takes over, except

12   for the nontransferable -- duties that are

13   nontransferable.  Other than that, the county took

14   care of all the trainings and, you know -- when

15   it's a joint election, they take care of

16   everything --

17   Q       Got it.  Okay.

18   A       -- other than the nontransferable, those

19   things, et cetera.

20   Q       That makes sense to me.  That's all I have

21   on that.

22   A       Okay.

23   Q       If you could scroll down to Page 9 of this

24   same document, there at the top of the page is

25   Request Number 6.  Do you see that?

hg

RICHARDSON: PERLA LARA

Page 98

1    A       Yes.

2    Q       And it says:  "Admit that the City of

3    McAllen received a signed and timely mailed 2019

4    city runoff election ballot from Ms. Weisfeld in

5    compliance with the Texas Election Code," and you

6    indicated "Deny."

7              Did I read that correctly?

8    A       Yes.

9    Q       Okay.  And so I -- I think this

10   is -- there's certainly something in here that is

11   my poor drafting skills on this, so I wanted to

12   run through kind of the sub-elements of this and

13   see what caused you to deny this request.

14              Are you aware of -- of the City of

15   McAllen receiving a ballot by mail from

16   Ms. Weisfeld in the 2019 city runoff election?

17   A       Yes.

18   Q       And when that was received by your office,

19   was it received timely?

20   A       Yes.

21   Q       And when you received that in your office,

22   was there a signature on -- on it?

23   A       Yes.

24   Q       Okay.  So then that leads me to believe

25   that you denied this request because of the last

RICHARDSON: PERLA LARA

Page 99

1   part that says:  "In compliance with the Texas

2   Election Code."

3                   Is that right?

4   A       Correct.  Correct.

5   Q       Okay.  And can you explain to me why you

6   denied this request based on that part of the

7   sentence?

8   A       Because I -- as the city clerk, I just

9   receive them.

10                  MR. TAWIL:  Objection; form.

11                  THE WITNESS:  I just -- I just

12       receive them.  The ballot board was the

13       one that was going to process and qualify.

14   BY MR. COX:

15   Q       So is it because the ballot board rejected

16   it that your -- that you believe it was not in

17   compliance with the Texas Election Code?  I guess

18   is that -- is that what you're saying?

19                  MR. TAWIL:  Perla, I'm going to ask

20       you not to answer this question at this

21       point.  The determination to deny the

22       request for admission was made by counsel,

23       and that goes to privilege.

24   BY MR. COX:

25   Q       Okay.  I'm just -- we'll just move on from

1    that.

2              Okay.  In the same document, can you

3    scroll up to Page 6, please?  Let's see.

4              Okay.  Do you see at the top of Page 6

5    where it says "Answer" and then:  "Records from

6    2012 to 2015"?  Do you see that part?

7    A      Yes.

8    Q      Okay.  And it says:  "Records from 2012 to

9    2015 met retention requirements and were

10   destroyed."

11             Is that -- did I read that correctly?

12   A      Correct.

13   Q      Okay.  Can you explain to me what you mean

14   by "met retention requirements" in this?

15   A      It's met retention in accordance to our

16   retention schedule with the Texas archive library.

17   Q      Okay.

18   A      And pursuant to election code, they've met

19   their time.

20   Q      Okay.  And so what is the -- just

21   hopefully briefly, what is the retention schedule

22   for election-related materials?

23             MR. TAWIL:  Objection; form.

24             THE WITNESS:  They'll sometimes

25        change --

Page 101

```
1              MR. TAWIL:  Perla, you can answer
2        if you know.
3              THE WITNESS:  Right.
4              It changes, but I believe at that
5        time, if memory serves me right, it was
6        22 months.
7   BY MR. COX:
8    Q      Okay.  And so at this point -- or by the
9   time we filed this lawsuit, everything prior to
10  2015 had already been destroyed in accordance with
11  that policy?
12   A      Yes.  Yes.
13   Q      Okay.  And now materials that you already
14  had after this lawsuit was filed are being
15  preserved and not going to be destroyed in
16  accordance with that policy; is that your
17  understanding?
18   A      Yes.
19   Q      Okay.  Okay.  And then one more thing on
20  this document.  If you could go down to Page 10.
21   A      Okay.
22   Q      Page 10, and so I will -- just have a
23  quick question about where -- in about the middle
24  of the page, it says "Request Number 1."  Do you
25  see that?
```

RICHARDSON: PERLA LARA

Page 102

1    And it says -- well, there's two of
2    them, I guess --
3    A    Yes.
4    Q    But it says:  "Admit that since January 1,
5    2012, the City of McAllen has received mail-in
6    ballot applications in which an applicant selected
7    'confinement in jail' in Box 5 of the
8    application," and you indicated "Deny."
9         Did I read that correctly?
10   A    Correct.
11   Q    Okay.  And you testified earlier this
12   morning that to your memory, you had never seen
13   any application for ballot by mail that checked
14   that box; is that right?
15   A    Correct.
16   Q    And would there be anyone else in your
17   office, besides you, that would review those which
18   box was checked?
19   A    Yes.  My records manager, who retired.
20   Q    Okay.  And this specifically asks about
21   from 2012 to the present, and so -- and you told
22   me that all of the documents between 2012 and 2015
23   have been destroyed, and so I'm wondering if -- I
24   guess I'm wondering if there's any possibility
25   that between 2012 and 2015, someone checked that

Page 103

```
 1   box, and there's no way to know because those
 2   records are destroyed.
 3               MR. TAWIL:  Objection to form.
 4               Perla, you've denied that request,
 5        and you've answered his question that you
 6        don't recall ever having received it.
 7        This question has been asked and answered
 8        ten times.  I'm going to instruct the
 9        witness not to answer.
10   BY MR. COX:
11   Q      So between 2012 and 2015, who was the city
12   secretary for the City of McAllen?
13   A      Annette Villarreal.
14   Q      And between 2012 and 2015, would she
15   potentially have reviewed applications for ballot
16   by mail that no one else saw?
17   A      Correct.
18   Q      Okay.  And so even if you can't remember
19   ever seeing this box checked, is it possible that
20   she could have seen this box checked on an
21   application?
22               MR. TAWIL:  Objection; form.
23               You can answer that question if you
24        know.
25               THE WITNESS:  I don't know.
```

**hg**

RICHARDSON: PERLA LARA

Page 104

```
 1   BY MR. COX:
 2    Q     Okay.  Thank you.
 3          All right.  So that's all I have on
 4   that document, but I'm about to send you another
 5   one.
 6    A     Okay.
 7    Q     Okay.  Let me know if you're able to open
 8   that.  We're going to mark that as Exhibit 3.
 9          (Exhibit 3 marked.)
10   BY MR. COX:
11    Q     Were you able to open that?
12    A     Yes.
13    Q     Okay.  So this is a long document, and it
14   was produced to us by your counsel as Exhibit E,
15   and I'm not going to try to go through all of it.
16   It's -- you know, it's I think -- let's see
17   exactly -- 114 pages long.
18          But just -- if you know, can you tell
19   me what this -- what is in these documents or just
20   generally what these documents include?
21    A     I'll have to walk over there.  It's too
22   small.  The handwriting is too small.
23          MR. STEVENSON:  Just for the
24      record, Ms. Lara is approaching the screen
25      because it's a small exhibit, small type,
```

Page 105

1          so she's getting closer so she can clearly

2          see what it is.

3                MR. COX:  Understood.

4                THE WITNESS:  Yes, it's basically

5          the rosters for the early ballot by mail;

6          and then the rejected ones, another roster

7          for rejected; and then the notices -- the

8          signed notices that went out.

9     BY MR. COX:

10     Q     Okay.  Great.

11           And so I'd like to just bring your

12     attention to a couple of these pages, and these

13     aren't Bates-stamped, so it might be a little

14     tough, but I'm going to do my best.  This

15     is -- the first page I'd like you to go down to is

16     Page 34.  Hopefully that lines up.

17           And that is -- let me know when you

18     get there.

19     A     Okay.

20     Q     Okay.  And that's a green -- a copy of a

21     green envelope sent to the City of McAllen; is

22     that right?

23     A     Yes.

24     Q     Or I'm sorry.  Returned to the City of

25     McAllen.  Got it.

**hg**

RICHARDSON: PERLA LARA

Page 106

1        And so there's a -- like a pink

2   Post-it note on this, and I just wanted to ask you

3   about that.  It says:  "Called the following

4   numbers."  It lists several phone numbers.  Then

5   below that, there's a yellow sticker that looks

6   like it was return to sender from the voter back

7   to you.

8        And so my question is --

9   A     Correct.

10  Q     Can you hear me?

11  A     Yes.

12  Q     Okay.  My question is:  Why would this

13  individual voter have been called, and on all of

14  these numbers, if you received a return to sender

15  on this?

16  A     It probably came back before election day.

17  I mean, I don't -- I can't answer for my -- my

18  records manager at that time other than they were

19  trying to, in a good faith effort, reach that

20  person to let them know that, you know, it got

21  returned back, and we're trying to get

22  another -- perhaps another forwarding address or,

23  you know, let them know that it came back.

24  Q     Okay.  And that -- that would be her

25  handwriting on this pink Post-it note, I suppose,

hg

1    if you recognize it?

2     A      Yes, that -- right.  That's not my

3    handwriting.  Yeah.

4     Q      Okay.  Great.  All right.  Then -- that's

5    all I had on that.

6             If you could then scroll down to

7    Page 104.  See if I can find 104.

8             Okay.  Let me know when you get there.

9     A      Okay.

10    Q      Okay.  To me, this looks like text

11   messages, Page 104 and 105, sent to a voter; is

12   that correct?

13    A      Correct.  That's what it looks like.

14    Q      Okay.  And is this -- is this your phone

15   number on the top of this, or would that be the

16   recipient?  Or do you know?  Do you recognize this

17   at all?

18    A      Yeah, no, I don't -- I'm not good with

19   phone numbers.  I've got my contacts and just dial

20   out, so I'm not sure if -- it's somebody from

21   staff that must have texted.

22    Q      Okay.  And --

23    A      I'd have to --

24    Q      -- it looks like this person's application

25   for ballot by mail was being rejected, and so they

**hg**

RICHARDSON: PERLA LARA

Page 108

1   were texting the voter to let them know about

2   that; is that a fair analysis of this?

3    A      Correct.

4    Q      Okay.  And is this something that you-all

5   would do for voters regularly, send them a text

6   message if they're being -- going to have a ballot

7   rejected like that -- I mean an application

8   rejected like that?

9    A      No.  No.  It must have been an exception.

10  They must have been calling from -- you know,

11  wanting to vote from out of the county or

12  something like that.  But no, it's not a practice.

13   Q      Okay.  And --

14   A      I'm sure there was --

15   Q      And so this is not something that would

16  have been done uniformly or, like, I guess been

17  offered to all the voters who you had a phone

18  number for in the same situation?

19   A      Correct.

20   Q      Okay.  And earlier we looked at

21  a -- either an application or a ballot -- I'm not

22  sure -- that had phone numbers that were called.

23  Is there any reason your office would call someone

24  but not send them a text message?

25   A      No.  Like I said, it was probably because

Page 109

```
 1   it -- Annette -- like I said, I mean, she's not --
 2   no longer here.  I can't ask her.  But I'm just
 3   thinking that it -- because it got back and there
 4   was still time for them to -- to either vote or
 5   time to send another ballot, it was just in a
 6   good-faith-based effort.
 7   Q      Okay.
 8   A      You know, we really try.
 9   Q      Yeah.  All right.  And then if you could
10   just scroll up two pages to Page 102.
11   A      Okay.
12   Q      It looks -- this looks to me like the
13   application for ballot by mail that was filed by
14   the voter who was texted a second ago; do you
15   agree with that?
16   A      Hold on.  I lost the page.
17   Q      Sorry.
18   A      Yes.
19   Q      Okay.  And then it looks like there's a
20   Post-it note on here that says:  "Per Perla, since
21   applicant was already notified via text, no notice
22   of rejected application is -- no application is
23   required," or does -- did I read that correctly,
24   or does that make sense?
25   A      Yes, correct.
```

**hg**

RICHARDSON: PERLA LARA

Page 110

1    Q      Okay.  And so in this particular

2    case -- and this is -- I recognize this is not

3    done uniformly, but you sent the actual rejection

4    notice of the application to the individual by

5    text message, or your office did.  Does that seem

6    right?

7    A      Correct.

8    Q      Okay.  And then if -- on this same

9    document, if you could look -- I know it's

10   sideways, at least on my screen, so I know it's

11   kind of hard.

12   A      Uh-huh.

13   Q      But in Box Number 8 -- oh, I'm -- I'm

14   sorry.

15   A      8.  Okay.  I'll tell you what --

16   Q      Hold on.  Hold on.  I'm sorry.  Not 8.

17          Okay.  That's all I have on that

18   particular document.

19          All right.  I'm going to send you a

20   link to a new -- another exhibit.

21   A      Okay.

22   Q      And this is going to be Exhibit 4.

23          (Exhibit 4 marked.)

24   BY MR. COX:

25   Q      And let me know when you're able to open

RICHARDSON: PERLA LARA

Page 111

1    that.

2    A        Okay.

3    Q        And so this, again, is not Bates-numbered,

4    but this was Exhibit L in the documents that your

5    counsel sent to us, and -- and so I'd like you to

6    scroll down first to the first page.  After it

7    says "Exhibit L," the next page.

8    A        Okay.

9    Q        This, to me, looks like a handwritten list

10   of rejected ballots split up by district number

11   for a particular election.  It doesn't look like

12   that election is indicated on this particular

13   document, but it looks like for whatever election

14   this was, it was 13 total rejected ballots, and

15   this is handwritten by someone; is that right?

16   A        Correct.

17   Q        Okay.  And is this your handwriting, or

18   did you handwrite this?

19   A        No.  Not -- that's not my handwriting.

20   Q        Okay.  Do you recognize whose it is?

21   A        Not the print.  The -- that part says "13

22   total rejected" ballots --

23   Q        Uh-huh.  It's okay if you don't --

24   A        -- it could be somebody from my staff,

25   yeah.  The cursive, I -- looks familiar.

RICHARDSON: PERLA LARA

1    Q     Okay.  No problem there.

2          The -- I'd like you to scroll down to

3    Page 31.

4    A     Okay.  Guadalupe.

5    Q     And this is really just a random rejection

6    notice I picked out, on Page 31.

7          This is just the standard notice of

8    rejected ballot that you or -- that McAllen sends

9    to someone if their ballot is rejected for any

10   reason; is that right?

11   A     Uh-huh.  Correct.

12   Q     And this one -- and this one in particular

13   has checked Box Number 2, which says:  "It was

14   determined that the signature on the application

15   for ballot by mail and carrier envelope was not

16   signed by the same person."

17          Is that right?

18   A     Correct.

19   Q     And the signature at the bottom, do you

20   recognize whose signature that is?

21   A     I think that's Dan's.  It could be Dan

22   Codina.

23   Q     Early voting ballot board judge in 2018?

24   A     Yeah.

25   Q     If you know.  If you don't, that's okay.

Page 113

1    A      No.   Okay.

2    Q      So once the -- this form is filled out by

3    the early voting ballot board judge; is that

4    right?

5    A      Correct, yes.

6    Q      Okay.  And so once it's filled out by that

7    person, what happens to this form from there?

8    A      We mail out the original and keep a copy

9    for our records.

10   Q      Okay.  And so who mails out the original?

11   I mean, who -- yeah, who emails out the original?

12   A      He puts everything in the envelopes.  Of

13   course, we make copies and return the originals.

14   He puts everything in the envelopes, seal them,

15   and then we take them downstairs.  And we have a

16   carrier that picks up the information, the mail,

17   in the mornings and in the afternoons.

18   Q      Okay.  And if those were, say, returned to

19   sender, they would come back to your office?

20   A      Yes.

21   Q      Okay.  Now, I want you to scroll up four

22   pages to Page 27.  This looks to me like another

23   notice of rejected ballot.

24          Let me know if you're there.

25   A      Okay.

**hg**

RICHARDSON: PERLA LARA

Page 114

1    Q       And it says for -- I can't read exactly,

2    but Felicitas Salinas.  Is that what you're

3    looking at?

4    A       Felicitas Salinas, yes.  Felicitas.

5    Q       Okay.  All right.  Now, this is also a

6    notice of rejected ballot, and -- but this one has

7    checked Number 10, "Other," and it looks to me

8    like it says:  "Signatures on application and

9    carrier envelope did not match."

10           Did I read that right?

11   A       Yes.

12   Q       Okay.  And now this is -- looks like it's

13   signed by the same person as the one we looked at

14   before; right?

15   A       Yes.

16   Q       And this is for the same date, the same

17   election; is that right?

18   A       Yes.

19   Q       Okay.  Now, why would -- is there any

20   reason why -- or I guess what -- what is your

21   understanding of why this particular ballot was

22   rejected?

23           MR. TAWIL:  Objection; form.

24           THE WITNESS:  Right.  Because the

25      signatures did not resemble.

RICHARDSON: PERLA LARA

Page 115

1    BY MR. COX:

2     Q       Okay.  And why would there be a reason to

3    write that they -- the signatures "did not match"

4    versus checking Number 2, which says they were

5    "not signed by the same person"?

6                   MR. TAWIL:  Objection; form.

7    BY MR. COX:

8     Q       Is there any reason for that?

9                   MR. TAWIL:  Objection; form.

10                   Perla, you can answer if you know.

11                   THE WITNESS:  I don't know.

12   BY MR. COX:

13    Q       Do you have any knowledge or understanding

14   from this particular election about whether this

15   was actually the same reason or a different reason

16   for a rejected ballot?

17                   MR. TAWIL:  Objection; form.

18                   Same instruction.

19                   THE WITNESS:  I don't know.

20   BY MR. COX:

21    Q       Okay.  All right.  Okay.  That's all I

22   have on that.  We can get out of that one.  And

23   I'll send you Exhibit 5.

24    A       Okay.

25                   MR. COX:  Hold on.  My headphones

Page 116

1      are actually dying, so I'm going to switch

2      that out real quick.  Just hold on one

3      second.

4            THE WITNESS:  Okay.

5   BY MR. COX:

6   Q      Okay.  I put another link in the chat box.

7   This going to be Exhibit 5.

8          (Exhibit 5 marked.)

9   BY MR. COX:

10  Q      Let me know when you're able to open it.

11  A      Okay.

12  Q      Okay.  And this is a -- this is also,

13  again, not Bates-stamped, but it's marked as

14  Exhibit M in the documents that your counsel sent

15  to us, and it's also a very long document -- 158

16  pages -- so I don't want you to, you know, spend a

17  lot of time reviewing this, but if you could just

18  go down to Page 95.

19  A      Okay.

20  Q      Okay.  And do you recognize this to be an

21  application for ballot by mail sent in to your

22  office?

23  A      Yes.

24  Q      Okay.  And do you recognize it to be an

25  application, at least purportedly, sent by Rosalie

RICHARDSON: PERLA LARA

Page 117

1   Weisfeld?

2   A      Yes.

3   Q      Okay.  And now, in Box Number 4, it asks

4   for contact information, and says that that is

5   optional.

6            Here, Ms. Weisfeld did provide contact

7   information; is that correct?

8   A      Yes.

9   Q      And what is the -- your understanding of

10  the purpose for having a voter include their

11  name -- their phone number and email address on

12  this application?

13            MR. TAWIL:  Objection; form.

14            THE WITNESS:  It's -- I mean, it's

15       optional that you can provide or not

16       provide.

17  BY MR. COX:

18  Q      And --

19  A      She provided it.

20  Q      Okay.  Okay.  And so if a voter provides

21  this information, what would your office do with

22  that information, potentially?

23            MR. TAWIL:  Objection; form.

24            THE WITNESS:  In the event that we

25       need to contact her or do something, like

Page 118

```
 1       on the previous one, in a good faith
 2       effort to try and contact them, we would
 3       have a phone number or an email.  If it
 4       was, like, an FPCA and you're overseas, I
 5       mean, it's always good to have that email
 6       as well.
 7  BY MR. COX:
 8   Q      Got it.
 9            And so -- and to your knowledge, was
10  Ms. Weisfeld contacted on any of these
11  contacting -- any of this contact information
12  provided prior to her ballot being rejected by the
13  EVBB?
14            MR. TAWIL:  Are you asking Perla if
15       she contacted them, or the EVBB?
16            MR. COX:  I'm asking Perla if she
17       has any knowledge of whether anyone
18       contacted --
19            MR. TAWIL:  I'll object to form
20       there.
21            MR. COX:  -- this voter.
22            THE WITNESS:  No, I don't.
23       Everything --
24  BY MR. COX:
25   Q      I'm sorry.
```

**hg**

RICHARDSON: PERLA LARA

Page 119

1    A      -- looks to form, everything was filled

2    out.  So I'm thinking the ballot was sent to her

3    because all the -- everything is checked off

4    properly.

5    **Q      Okay.**

6    A      I don't see a reason why we would have

7    contacted her, because everything's there.

8    **Q      Okay.  So everything's here on the**

9    **application, but we -- we know that -- or are you**

10   **aware that Ms. Weisfeld's ballot that was sent in**

11   **after this application was rejected by the early**

12   **voting ballot board?**

13   A      Yes.

14   **Q      Okay.  And do you know if at any time**

15   **between your office receiving this particular**

16   **application and that ballot being rejected, if**

17   **anyone contacted Ms. Weisfeld at any time?**

18            MR. TAWIL:  Objection; form.

19         You're asking the witness to testify as to

20         anyone at any time?

21            MR. COX:  I'm asking her -- yeah,

22         you're right.  Let me limit that.

23   BY MR. COX:

24   **Q      Are you -- do you have knowledge of anyone**

25   **in your office or anyone on the early voting**

**hg**

RICHARDSON: PERLA LARA

Page 120

1   ballot board contacting Ms. Weisfeld at any time,

2   with this contact information --

3           MR. TAWIL:  Objection; form.

4   BY MR. COX:

5   Q      -- prior to her ballot being rejected?

6           MR. TAWIL:  Same objection.

7           THE WITNESS:  No.

8   BY MR. COX:

9   Q      Okay.  Thank you.

10          Okay.  That's all on that document.

11  We can go now and do -- I'll send another link

12  here.  I'm trying to push through these so we

13  don't spend all afternoon.

14          Okay.  I sent another link, which

15  we'll mark as Exhibit 6.

16          (Exhibit 6 marked.)

17          THE WITNESS:  Okay.

18  BY MR. COX:

19  Q      And please let me know when you're able to

20  open that.

21  A      Opened.

22  Q      Okay.  This is marked as Exhibit O from

23  the documents that your counsel sent to us, and

24  I'd just like to ask you real quick if -- it's 69

25  pages long, and to me, it looks like it is

RICHARDSON: PERLA LARA

Page 121

1    entirely one PowerPoint presentation.

2              If you could take a minute to look at

3    this and tell me if that seems right.

4    A    Yes.

5    Q    Okay.  And is this the PowerPoint

6    presentation that you mentioned earlier is used to

7    train your early voting ballot board members?

8    A    Yes.  That's one of them, in addition to

9    the handbook.

10   Q    Right.  In addition -- but is this -- but

11   this is the actual PowerPoint presentation you

12   use, like, when they're sitting in -- together for

13   the training?

14   A    Yes.

15   Q    Okay.  And do you know where -- I realize

16   you may not -- do you know where in this document

17   it talks about determining whether two signatures

18   are made by the same person?

19   A    I'm not sure on that one.  On the

20   handbook -- on the actual EVBB handbook, it does

21   touch on that.

22   Q    Okay.  So this presentation doesn't

23   actually talk about how to determine if two

24   signatures are signed by the same person at all?

25              MR. TAWIL:  Objection; form.  The

RICHARDSON: PERLA LARA

Page 122

1        document speaks for itself.

2    BY MR. COX:

3    Q       You know, I actually withdraw that

4    question.   I think the document's too long to have

5    you just try to sit and review, like, you know,

6    right now.   So let me ask you this instead.

7               Let me just ask you this:   This has a

8    date on it that says "10/23/2018."   Is this the

9    most up-to-date version of this training that you

10   use?

11   A       No.   Well, there's a -- there's a 2019 as

12   well, but I'm not sure if they just uploaded that

13   one.   But that's the one I had at that time.

14   Q       Okay.   And this is just the training

15   that's available on the Texas Secretary of State's

16   website?

17   A       Right.

18   Q       Okay.   And besides this particular --

19   besides this presentation from the Secretary of

20   State, are there any other, like, visual,

21   PowerPoint-type presentations that you use during

22   trainings?

23   A       We've got another one, but it's more like

24   an Elections 101 that covers everything from the

25   early voting, election date, poll watchers, you

**hg**

RICHARDSON: PERLA LARA

Page 123

```
 1  know, media --
 2     Q      Right.
 3     A      -- counseling.
 4     Q      Right.
 5     A      It's more like a 101.
 6     Q      Okay.  All right.  Great.  That's all I
 7  have on that document, and I'm going to send you
 8  another one.  We're going to -- rapid fire here.
 9     A      Okay.
10     Q      All right.  I just sent another link, and
11  that will be Exhibit 7.
12            (Exhibit 7 marked.)
13  BY MR. COX:
14     Q      And please let me know when you're able to
15  get that open.
16     A      Okay.  Open.
17     Q      Okay.  And this is -- was provided to us
18  by your counsel as Exhibit S in our discovery
19  requests.
20            Can you scroll down to the second page
21  and tell me if you recognize what this is?  It's
22  a -- it's 23 pages long, but I think it's more
23  than one document.
24     A      Right.  That was the request to appoint
25  the signature verification committee that was
```

hg

RICHARDSON: PERLA LARA

Page 124

1    taken to a regular city commission meeting for

2    approval.

3    **Q      Okay.  And -- and you -- was it you that**

4    **decided you wanted to appoint a signature**

5    **verification committee for this particular**

6    **election?  Or how was that decision made, if it**

7    **wasn't you?**

8    A      For that one, that was the mayoral

9    election, and normally, I -- we don't get that

10   many mail-in ballots, and for that particular

11   election, we -- we had a large amount of ballots

12   that were coming in.  So I -- I did ask

13   management, you know, how they felt about it, and,

14   you know, I told them that it would be good to

15   have one so that that way the process wouldn't

16   take us long when we were -- when the early voting

17   ballot board would come in to qualify the ballots;

18   otherwise, it would have taken a lot longer.

19   **Q      Okay.**

20   A      As it is -- as it is, they didn't finish

21   until after midnight that year.  We had that many.

22   Yeah.

23   **Q      So that's really for -- for efficiency**

24   **purposes, you thought you could review things**

25   **faster with an SVC?**

**hg**

Page 125

```
 1    A      Right.
 2    Q      Okay.  And so in this PDF, it's Page --
 3  the bottom of Page 9, but it -- the actual page on
 4  it -- the page number on the page says "3," but in
 5  the PDF, it's Page -- the bottom of Page 9.
 6    A      Okay.
 7    Q      Section D, or letter D.
 8    A      Okay.
 9    Q      This looks to me like what you were just
10  talking about, and it says:  "Staff recommended
11  approval of order for signature verification
12  committee."
13           So when it says "staff," that's
14  talking about you?
15    A      Correct.
16    Q      Okay.  And it says:  "Discussion ensued,
17  and staff answered questions posed by the mayor
18  and city commission."
19           Did -- was it you presenting this to
20  the city -- or to the mayor and the city
21  commission?
22    A      Correct.
23    Q      And what kind of questions or concerns did
24  you get from the mayor and city commission?
25    A      I mean, I don't recall exactly.  It was
```

Page 126

1   back in 2017, but it's normally -- you know,

2   they're asking for dates, times, notices.  It just

3   had to do with probably the notices and the

4   postings and polling places, polling sites.

5   **Q      All right.  And then so if you scroll down**

6   **to Page 14 of the PDF, this is the order -- I**

7   **believe this is the order actually appointing that**

8   **committee from the city; is that right?**

9   A      Right.  Correct.

10  **Q      And then the following page is -- that is**

11  **appointing the actual members of the committee; is**

12  **that right?**

13  A      Yes.

14  **Q      And these look to be largely the same**

15  **members that you -- that we looked at earlier that**

16  **served on EVBBs for the City of McAllen; is that**

17  **correct?**

18  A      Right.  Yes, that's correct.  Virginia

19  Brenneman is no longer with us, but yes.

20  **Q      Okay.**

21  A      The others are -- yes.

22  **Q      And we discussed already how members of**

23  **the EVBB are selected.  Is the -- was it the same**

24  **process for the signature verification committee?**

25  **Or what were the differences in how this**

**hg**

RICHARDSON: PERLA LARA

Page 127

1   was -- the members of this were selected versus

2   the early voting ballot board?

3    A      No, I mean, it's the same process except

4   for the SVC, that was a separate item because I

5   didn't know that we were going to have that many

6   ballots that year.  Normally the early voting

7   ballot board, we include that in the ordinance

8   when we call the election.  Because we -- I mean,

9   we know for a fact that we're going to have an

10  early voting ballot board if we receive any

11  applications by mail.

12          The only reason that the SVC was a

13  separate item was because I did not know -- you

14  know, it's not until we realized that we had that

15  many coming in that I suggested perhaps having an

16  SVC.

17   Q      Understood.  Okay.

18          All right.  So if you could scroll

19  down, then, to Page 19.  Let me know when you're

20  there.

21   A      Okay.

22   Q      Okay.  This looks like -- it says it's a

23  "City of McAllen Application For Contract

24  Employment" for an election worker, and so it

25  looks like this is the application to be appointed



RICHARDSON: PERLA LARA

Page 128

1   as a member of the SVC; is that right?

2      A      Correct.

3      Q      Okay.  And who would get this application

4   when it's done being filled out?

5      A      They get turned in to me.

6      Q      Okay.  And then you would approve it and

7   then suggest appointments; is that right?

8      A      Right.  Correct.

9      Q      Okay.  And then down here, if you look

10  down at Number 7, it asks them to list two

11  elections they've worked, and what is the purpose

12  of that question?

13     A      I just like to have -- I want to know if

14  they've worked elections.  I mean, I get -- I get

15  clerks that apply and have absolutely no knowledge

16  and experience.  I mean, we don't hold that

17  against them as clerks.  They can -- they can

18  learn, and our judges and alternate judges can

19  mentor them.

20            But if you're going to be a member of

21  the ballot board or you're wanting to be a judge

22  or an alternate judge, that helps me know that

23  they've worked elections, whether they worked with

24  us before or if they've worked with the county.  I

25  mean, I get others --

RICHARDSON: PERLA LARA

1    Q       Got it.

2    A       -- that have worked with -- Luis Longoria

3    worked for the City of San Antonio, and so he had

4    that experience that he's done elections over

5    there as well.  So that's what I look for.

6    Q       Okay.  And then for Number 8, it says:

7    "List any special skills, expertise, or trainings

8    related to elections."

9            Is this basically the same thing,

10   you're looking for people that have experience for

11   those same reasons you just listed?

12   A       Right.  Yes.  He's got experience with

13   Hidalgo County as well.

14   Q       Okay.  And considering -- and -- but this

15   application doesn't have any requests for

16   experience or knowledge or expertise about

17   comparing signatures; is that right?

18   A       Right.

19   Q       And this is an application specifically

20   for the signature verification committee and not

21   for the broader EVBB; is that right?

22   A       Right.

23   Q       Okay.  And is there any other place where

24   a person might indicate that they did have

25   experience in, I don't know, forensic document

Page 130

1   examination or anything along those lines, or

2   would they put it here in Number 8?  Is that --

3   that's where they would have to put it?

4                MR. TAWIL:  Objection; form.

5                THE WITNESS:  I guess that's the

6        only place.

7   BY MR. COX:

8    Q      Okay.  And then -- so Pages 19 through, I

9   think, the end of the document are just more of

10   these applications for other people that were

11   appointed to the board.  Does that seem right to

12   you?

13    A      Correct.

14    Q      And are -- do any of them list any kind of

15   special skills, expertise, or training related to

16   either evaluating signatures or document

17   examination or signature verification or any of

18   those types of things?

19    A      No.

20    Q      Okay.  All right.  That's all the

21   questions I had on that.  And I know we want to

22   get out for lunch here, but I just have one more

23   document before that.

24    A      Okay.

25    Q      And then I think we can get out.

**hg**

1        Okay.  And that should be Exhibit 8.

2  I just put a link.

3           (Exhibit 8 marked.)

4  BY MR. COX:

5    Q      Please let me know when you're able to

6  open that.

7    A      Opened.

8    Q      Okay.  And so this is -- again, is not

9  Bates-stamped, but it was marked as Exhibit V that

10 was produced to us by your counsel in this case.

11           Can you scroll down to the second page

12 of the PDF and let me know if you recognize this

13 document?

14   A      Yes.

15   Q      Okay.  Now, what is this?

16   A      That was the state inspection that we had.

17   Q      And so what is this letter in particular

18 about?

19   A      I believe one of the candidates requested

20 an inspector to be there at that particular --

21 with the ballot -- I guess with -- to inspect the

22 process of the election and the ballot board, and

23 so that's the inspector's report.

24   Q      Okay.  And so when -- when there's a

25 request for an inspection to be done on an

**hg**

RICHARDSON: PERLA LARA

Page 132

1    election that you're in charge of, are -- how are

2    you notified about that before the election?

3    A      I get a call from the SOS.

4    Q      Uh-huh.  And they come and tell you the

5    specific places they're going to be monitoring, or

6    they just tell you that "We're going to be there

7    and we'll be around"?  Or what do they tell you?

8    A      Correct.  Correct.  They just tell us that

9    we're going to have one, but we really don't know

10   where they're going to be at.

11   Q      Okay.  And you mentioned that this was

12   requested -- this particular one was requested by

13   a political candidate, and was -- and was not

14   requested by the city or by a voter petition or

15   something like that.

16   A      Correct.

17   Q      Okay.  And when you get this report from

18   the Secretary of State after -- after an

19   inspection, what do you do with it?

20   A      I presented it to my -- to the management

21   team.

22   Q      The -- who --

23   A      And if they have any questions, they'll

24   ask.

25   Q      Okay.  Who -- what do you mean when you

Page 133

1   say "management team"?

2   A       My assistant city manager, at our weekly

3   meetings.

4   Q       Okay.  And then based on -- if there are

5   particular findings or recommendations, you take

6   action based on those things that are in the

7   report or --

8   A       Correct.

9   Q       Okay.

10  A       Correct.

11              MR. TAWIL:  Objection; form.

12              I'm sorry.  I couldn't get my mute

13      off.

14  BY MR. COX:

15  Q       And so this particular report that was

16  sent to you in July of last year, have you -- did

17  you review this report when it was sent to you

18  prior to today?

19  A       I'm sorry.  Can you repeat that again?

20  Q       So did you review this report and discuss

21  it with your management team at the time it was

22  sent to you back in July of 2019?

23  A       Yes.  Yes, I did.

24  Q       Okay.  And so I have a question --

25  A       Okay.

RICHARDSON: PERLA LARA

Page 134

1    Q        -- about -- so down on Page 11 -- it's

2    like the second-to-the-last page -- I think it's

3    Page 11.  Let me see.  No, Page -- yeah, Page 11.

4              Question 7, the inspector

5    answered -- the question says:  "Did the early

6    voting ballot board/signature verification

7    committee meet prior to election day to qualify

8    the early voting ballots?"  The answer is "no"

9    from the inspector.

10              Did I read that correctly?

11   A        Correct.

12   Q        And does the -- the ballot board or

13   signature verification committee in McAllen ever

14   meet before election day?

15   A        The early ballot board?

16   Q        Uh-huh.

17   A        No.  They meet on election day.

18   Q        Okay.  So are they required to meet on

19   election day by statute, if you know?

20   A        I believe that there's an option,

21   depending on the population, that you could meet

22   the day before.  But we've always met on election

23   day, because we've never -- other than that year,

24   we've never had that many ballots.

25   Q        Okay.  And so just because the number of

RICHARDSON: PERLA LARA

Page 135

```
 1    ballots is so small, you don't want to have to
 2    convene twice.  Is that the idea?
 3    A      Yes.  Correct.
 4    Q      Okay.  Now -- but is it your understanding
 5    that you -- you have the -- well, who decides when
 6    the early voting ballot board meets?
 7    A      I do.
 8    Q      Okay.  And is it your understanding that
 9    you have the option for that board to meet earlier
10    than election day?
11    A      Correct.
12    Q      Okay.  And so if a particular voter had
13    their ballot rejected by an early voting ballot
14    board before election day, would that individual
15    be able to vote in person?
16              MR. TAWIL:  Objection; form.
17    BY MR. COX:
18    Q      If they -- assuming they received notice
19    and knew that their ballot had been rejected the
20    day before election day, would they be able to
21    vote on election day in person?
22              MR. TAWIL:  Objection; form.
23              THE WITNESS:  I've never had that
24        situation.  If it -- if it happened and we
25        did that, that would -- certainly I would
```

RICHARDSON: PERLA LARA

Page 136

1      check with the SOS and I would check with

2      my -- with my legal team --

3  BY MR. COX:

4   Q      Okay.

5   A      -- and seek direction because I've never

6  had that situation happen.

7   Q      Yeah, that's fair.

8           Since you've been city secretary, has

9  the early voting ballot board or signature

10  verification committee ever met prior to election

11  day during any election?

12  A      No.

13  Q      Okay.  Okay.  And then the last

14  question -- and then we can get some lunch here --

15  is if you could scroll down to the last page, the

16  very bottom, Item Number 26 allows the inspector

17  to provide -- it says:  "Provide specific

18  information concerning any unusual activity

19  personally observed by you."

20           And the inspector responded:  "In my

21  opinion, board members were having a hard time

22  agreeing on signatures and had a little trouble on

23  other issues.  When ballots were delivered to the

24  EVBB, it was not locked or sealed."

25           Did I read that correctly?

RICHARDSON: PERLA LARA

Page 137

1    A      Yes, you read it correctly.

2    **Q      Okay.  And so during this election last**

3    **year, did you ever hear from any members of the**

4    **EVBB -- EVBB during the time they were considering**

5    **mail-in ballot signatures?**

6    A      No.

7    **Q      Okay.  And this says that "board members**

8    **are having a hard time agreeing on signatures."**

9    **In your training for EVBB members, does it include**

10   **any specific instructions about what to do if**

11   **you're having -- quote, "having a hard time**

12   **agreeing on signatures"?  Is there any part of the**

13   **training that covers what happens -- or what those**

14   **board members should do if that happened?**

15   A      Just what I mentioned to you earlier.  If

16   you can't agree, then take a vote, and if it's

17   unanimous, to accept or not accept, you know,

18   that's the -- that's what you decide on, whether

19   it's a "yes" or a "no," and then you move on.

20   Otherwise, you delay the process if you spend too

21   much time trying to agree.

22           It's like, just take a vote, a show of

23   hand.  If it's unanimous, you know, it counts.  If

24   you're still having difficulty, then you take a

25   vote, you know, again.  And if the -- if it's --

RICHARDSON: PERLA LARA

Page 138

```
 1   the verdict's different, then it's -- it gets
 2   overridden and you count it.
 3            I'm not sure really what type of
 4   issues the inspector -- I mean, this report, I got
 5   it after the fact.  So whatever -- you know, I'm
 6   not sure what they were agreeing or not agreeing
 7   on.  I wasn't there.
 8   Q      Understood.
 9            And so I guess let me just ask you
10   this, then:  After you received this report in
11   July of 2019, you would have discussed it with
12   your management team at the City of McAllen;
13   correct?
14   A      Correct.
15   Q      And were any actions taken subsequent to
16   getting this inspection report for future
17   elections or changes to policies and procedures or
18   trainings or any kind of changes or -- that were
19   made because of this -- getting this inspection
20   report?
21   A      Yes.  The part where the ballots that were
22   delivered were not locked or sealed.  What
23   happened there -- but we -- we have made some
24   changes.  The inspector got there after -- when
25   the board was already -- we had already delivered
```

**hg**

RICHARDSON: PERLA LARA

Page 139

1    the information, but the -- the information was

2    under lock and key but in our -- in our office.

3    So when we, you know, unlocked the cabinets and

4    took out the information, we gave it to them, but

5    that's when -- when the inspector got there.

6              What I've done now is we've enclosed

7    the office and we've moved our records department

8    to the back area where we're going to keep

9    everything in boxes that are with -- under lock

10   and key.  And that's what we're going to deliver

11   to them, and they'll be opening them up

12   individually by district instead of just --

13   **Q      Okay.**

14   A      -- everything -- taking everything

15   out -- out of that drawer that we had.

16   **Q      Okay.  And then were there any changes or**

17   **considered changes because of -- to trainings or**

18   **anything because of the fact that the inspector**

19   **reported that "board members were having a hard**

20   **time agreeing on signatures"?**

21   A      Right.  That's when I started stressing to

22   them -- so now, you know, at every training, we do

23   let them know that -- you know, that they're there

24   just to ascertain that it was the voter that

25   signed the application and the corresponding

Page 140

1   carrier envelope, and that, you know, we're not

2   there to -- to be, you know, handwriting experts.

3            They just need to agree that it was

4   the same person, and that any other issues, they

5   just need to take a vote to avoid the

6   disagreements, instead of going back and forth.

7   They just need to take a vote when they can't

8   decide.

9   **Q    Okay.  Great.  That is all the questions I**

10  **have on this document, and so I appreciate you**

11  **sticking with me a little bit past lunchtime, and**

12  **let me see here.  Sorry.  I've got the document**

13  **up.**

14            MR. COX:  Isaac?

15            MR. TAWIL:  Yeah.

16            MR. COX:  Do you want to take a

17       full hour, or what do you want to do on

18       that?  To go back to the --

19            MR. TAWIL:  I'll defer to Perla.

20       However long she reasonably needs is okay

21       with me.

22            MR. COX:  Okay.  Perla, we had

23       originally scheduled an hour for lunch.

24       If you want that full time, you know, we

25       can do that.  If you want to shorten it

RICHARDSON: PERLA LARA

1    up, we can come back earlier and get done

2    earlier this afternoon if you want.  Let

3    me know what you --

4           THE WITNESS:  I can do a

5    shorter -- I can do a 30-minute lunch,

6    40-minute lunch.

7           MR. COX:  Okay.  Yeah, let's --

8    okay.

9           MR. STEVENSON:  Can we just do

10   45 minutes, please?  It's Austin.  We have

11   security protocols in our building right

12   now that might slow us down going in and

13   out with temperature screenings.

14          THE WITNESS:  Oh, yeah.

15          MR. STEVENSON:  So I think

16   45 minutes, just to be safe.

17          MR. TAWIL:  Yeah, that's true.  If

18   you-all go outside, you're going to have

19   to sit and cool off for ten minutes or so

20   before you can get your temperature taken.

21          THE WITNESS:  Yeah.  They might not

22   let me in.

23          MR. COX:  Okay.

24          MR. TAWIL:  That's true.

25          MR. COX:  Let's just plan to come

**hg**

```
 1   back at 1:30, and if you-all, you know,

 2   are not here yet, we'll just wait for you.

 3          MR. STEVENSON:  Yeah.  We'll be

 4   back as soon as we can to 1:30.

 5          THE WITNESS:  Okay.

 6          MR. COX:  Okay.  Great.  And we can

 7   go off the record.

 8          And that's going to be the end of

 9   this deposition, though, Isaac, and we're

10   going to start a new one.  So I guess I

11   just need to pass the witness, actually.

12   Sorry.

13          Sorry, Perla.  One second.

14          MR. TAWIL:  Okay.  Why don't we go

15   ahead and take lunch real quick.  If I

16   have -- that will give me time to review

17   my notes.  If I have any questions, I can

18   ask them real quick after lunch.

19          MR. COX:  Yeah, that's fine.

20   That's fine.  We'll keep it open until we

21   get back.

22          THE VIDEOGRAPHER:  Okay.  We're

23   going off the record.  The time is

24   12:51 p.m.

25          (Recess from 12:51 p.m. to 1:39 p.m.)
```

**hg**

Page 143

1          THE VIDEOGRAPHER:  We're going back
2     on the record.  The time is 1:39 p.m.
3          MR. TAWIL:  Okay.  This is Isaac
4     Tawil, attorney for Perla Lara in her
5     official capacity as city secretary of the
6     City of McAllen.  At this time, I have no
7     questions for the witness, and I'll
8     reserve my questions and pass the witness.
9          MR. MAGEE:  This is Eric Magee.
10    We'll reserve our questions until the time
11    of trial.
12          THE VIDEOGRAPHER:  Okay.  This
13    concludes the video deposition of Perla
14    Lara.  The time is 1:40 p.m.  We are now
15    off the video record.
16         (Off the record at 1:40 p.m.)
17
18
19
20
21
22
23
24
25

**hg**

RICHARDSON: PERLA LARA

| | | | |
|---|---|---|---|
| | | | Page 144 |
| 1 | | CHANGES AND SIGNATURE | |
| 2 | PAGE/LINE | CHANGE | REASON |
| 3 | 16 / 18 | "Bible-ship" to "Bible disciplship" | zoom issue |

RICHARDSON: PERLA LARA

Page 145

1    I, PERLA LARA, have read the foregoing

2  deposition and hereby affix my signature that same

3  is true and correct, except as noted above.

4                                    PERLA LARA

5

6

7  THE STATE OF _Texas_ )

8  COUNTY OF _Hidalgo_ )

9    BEFORE ME, _Alma Villarreal_ , on

10  this day personally appeared PERLA LARA, known to

11  me (or proved to me under oath of

12  _____ or through

13  _____ ) (description of

14  identity card or other document) to be the person

15  whose name is subscribed to the foregoing

16  instrument and acknowledged to me that they

17  executed the same for the purposes and

18  consideration therein expressed.

19    Given under my hand and seal of office this

20  _11th_ day of _June_ , 2020.

21

22

23  [SEAL: ALMA VILLARREAL, Notary Public, STATE OF TEXAS, Notary ID# 12474934-4, My Comm. Exp. 11-17-2023]    NOTARY PUBLIC IN AND FOR

24  THE STATE OF _Texas_
    MY COMMISSION EXPIRES:

25  _11/17/2023_

RICHARDSON: PERLA LARA

Page 146

```
 1                 UNITED STATES DISTRICT COURT
                    WESTERN DISTRICT OF TEXAS
 2                     SAN ANTONIO DIVISION

 3   DR. GEORGE RICHARDSON;          )
     ROSALIE WEISFELD; AUSTIN JUSTICE )
 4   COALITION; COALITION OF TEXANS   )
     WITH DISABILITIES; MOVE TEXAS    )
 5   CIVIC FUND; LEAGUE OF WOMEN      )
     VOTERS OF TEXAS; and AMERICAN GI )
 6   FORUM OF TEXAS, INC.,            )
                                      )
 7           Plaintiffs,             )
                                      )Civil Case No.
 8   v.                              )5:19-cv-00963-OLG
                                      )
 9   TEXAS SECRETARY OF STATE; TRUDY  )
     HANCOCK, in her official         )
10   capacity as BRAZOS COUNTY        )
     ELECTIONS ADMINISTRATOR; and     )
11   PERLA LARA, in her official      )
     capacity as CITY OF McALLEN,     )
12   TEXAS, SECRETARY,                )
                                      )
13           Defendants.             )

14

                    REPORTER'S CERTIFICATION
15            REMOTE VIDEOTAPED DEPOSITION OF
                          PERLA LARA
16                      May 14, 2020

17           I, Rebecca A. Graziano, Certified Shorthand

18      Reporter in and for the State of Texas, hereby

19      certify to the following:

20              That the witness, PERLA LARA, was duly sworn

21      and that the transcript of the oral deposition is

22      a true record of the testimony given by the

23      witness;

24              I further certify that pursuant to FRCP Rule

25      30(f)(1) that the signature of the deponent:
```

**hg**

1          ____ was requested by the deponent or a

2     party before the completion of the deposition and

3     returned within 30 days from date of receipt of

4     the transcript.  If returned, the attached Changes

5     and Signature Page contains any changes and the

6     reasons therefor.

7          ____ was not requested by the deponent or a

8     party before the completion of the deposition.

9          I further certify that I am neither attorney

10    nor counsel for, related to, nor employed by any

11    of the parties to the action in which this

12    testimony was taken.

13          Further, I am not a relative or employee of

14    any attorney of record in this cause, nor do I

15    have a financial interest in the action.

16          Subscribed and sworn to on this ___ day of

17    _____, 2020.

18

19

20

21    _____

22    Rebecca A. Graziano, CSR, RPR, CRR
      Texas CSR No. 9306

23    Expiration Date:  07/31/22

24

25

RICHARDSON: PERLA LARA

## 0

**07** 24:5

## 1

**1** 4:7 13:24 14:1 29:6 33:18,23 57:16 67:4 101:24 102:4

**10** 101:20,22 114:7

**10/23/2018** 122:8

**10019** 2:12

**101** 122:24 123:5

**102** 109:10

**104** 4:11 107:7,11

**105** 107:11

**11** 134:1,3

**110** 4:12

**114** 104:17

**116** 4:13

**11:01** 73:4

**11:02** 73:5

**11:19** 73:5,7

**120** 4:14

**123** 4:15

**12:51** 142:24,25

**12th** 2:23

**13** 111:14,21

**131** 4:16

**14** 1:15,20 4:7 126:6

**1405** 2:6

**14th** 5:4

**15** 72:19

**158** 116:15

**15th** 2:18

**19** 127:19 130:8

**1991** 24:19

**1999** 24:19 25:1 88:13 90:1

## 2

**1:30** 142:1,4

**1:39** 142:25 143:2

**1:40** 1:21 143:14,16

**2** 4:8 33:24 94:6,8,9,15 112:13 115:4

**2000/2001** 95:7

**2001** 24:5,18,19 96:11

**2007** 23:10

**2012** 100:6,8 102:5,21,22,25 103:11,14

**2015** 18:19 19:1 23:7 96:4 100:6,9 101:10 102:22,25 103:11,14

**2017** 34:4 87:20 126:1

**2018** 87:20 112:23

**2019** 41:6,7 45:16 50:17 98:3,16 122:11 133:22 138:11

**2020** 1:15,20 5:5

**212 728-8000** 2:13

**22** 101:6

**23** 123:22

**26** 136:16

**27** 113:22

## 3

**3** 4:11 33:24 104:8,9 125:4

**30** 15:25 78:10

**30-minute** 141:5

**300** 2:18

**31** 112:3,6

**34** 105:16

**35** 30:19

## 4

**4** 4:12 29:6 110:22,23 117:3

**40-** 34:13

## 5

**40-minute** 141:6

**45** 141:10,16

**45,000** 34:13

## 5

**5** 4:13 87:6,8 102:7 115:23 116:7,8

**512 463-2100** 2:19

**512 474-5073** 2:7

**512 482-0701** 2:24

**5:19-cv-00963-olg** 5:7

## 6

**6** 4:14 33:18 57:16 67:4 87:9 97:25 100:3,4 120:15,16

**65** 62:1 63:18 67:9 70:14

**69** 120:24

## 7

**7** 4:3,15 123:11,12 128:10 134:4

**70s/early** 93:9

**78501** 3:7

**787** 2:12

**78701** 2:18,24

**78741** 2:6

## 8

**8** 4:16 94:13,14 110:13,15,16 129:6 130:2 131:1,3

**80s** 93:9

## 9

**9** 97:23 125:3,5

**94** 4:10

**95** 116:18

**956 681-3111** 3:7

**9:34** 1:21 5:2,5



**9:40** 11:22,23

**9:43** 11:23,25

---

**A**

**A's** 43:23

**a.m.** 1:21 5:2,5 11:22,23,25 73:4,5, 7

**ABBM** 63:23 93:5

**abilities** 17:24

**above-styled** 1:20

**absence** 22:23 68:12

**absolutely** 128:15

**accept** 65:22 69:23 80:9 81:20 89:8 137:17

**accepting** 27:19 38:24

**accident** 73:22

**accordance** 26:12 100:15 101:10, 16

**accurate** 8:4

**action** 5:6 15:6 133:6

**actions** 31:5,17 138:15

**activities** 32:8

**activity** 136:18

**actual** 39:17 47:16 55:24 75:7 79:15 87:2 110:3 121:11,20 125:3 126:11

**added** 42:4

**addition** 8:1 36:25 121:8,10

**additional** 27:14,15 28:10 35:13 37:5,22 66:6 92:21

**additionally** 12:10

**address** 68:13 106:22 117:11

**Adkinson** 42:9

**administer** 31:7 35:6 36:3 47:8 97:7,9

**administering** 48:11

**administration** 17:2 25:21 26:18 30:23 51:16 94:20

**administrator** 1:10 2:21 7:1 28:8

31:24 49:3 88:10

**administrator's** 37:2

**Administrators** 46:4

**administrators'** 77:24

**admission** 99:22

**Admit** 94:19 98:2 102:4

**advance** 75:14

**advice** 84:24 85:5

**advisories** 27:2,15 40:18 42:15 43:3

**afternoon** 120:13 141:2

**afternoons** 113:17

**age** 62:2 67:8,14,25

**agency** 15:8

**agenda** 88:4

**agree** 109:15 137:16,21 140:3

**agreeing** 136:22 137:8,12 138:6 139:20

**ahead** 9:20 32:16 73:16 142:15

**aisles** 45:6

**ALLISON** 2:23

**alternate** 26:23,24 38:6 39:21 51:19 92:4,9 93:7,8 128:18,22

**altogether** 39:10

**AMERICAN** 1:5

**amount** 33:10 35:1 124:11

**analysis** 108:2

**and/or** 25:25

**Anna** 2:17 7:2

**anna.mackin@ texasattorneygeneral.gov** 2:19

**Annette** 103:13 109:1

**announcement** 19:12,20,25 20:4

**answers** 4:9 8:3 9:12 85:24 86:3, 7,8,18 87:2

**Antonio** 1:2 129:3

**apologize** 43:7

**appearance** 6:12 72:6 74:18

**applicable** 50:10

**applicant** 69:1 102:6 109:21

**application** 40:1 45:22 55:20 56:5,7 60:6,19,20,24 61:1 63:23 64:3 66:3,11 79:23,25 81:15 91:19, 24 102:8,13 103:21 107:24 108:7, 21 109:13,22 110:4 112:14 114:8 116:21,25 117:12 119:9,11,16 127:23,25 128:3 129:15,19 139:25

**applications** 61:23 65:3 102:6 103:15 127:11 130:10

**applied** 55:25

**applies** 50:11

**apply** 50:13 128:15

**appoint** 88:5 123:24 124:4

**appointed** 18:23,25 19:3,10,23 20:22 127:25 130:11

**appointing** 126:7,11

**appointment** 93:23

**appointments** 128:7

**approaching** 104:24

**approval** 32:11,19 124:2 125:11

**approve** 128:6

**archive** 100:16

**area** 61:25 139:8

**ascertain** 39:24 45:24 81:13,18 84:3 139:24

**ascertained** 81:17

**asks** 25:10 32:14 102:20 117:3 128:10

**assistant** 12:8 22:24 31:12 133:2

**associate's** 16:17,20

**association** 17:22 46:3

**associations** 48:20

**assume** 15:17

**assuming** 135:18

**astevenson@mcallen.net** 3:8

**at-large** 34:1 76:3

**attachments** 42:12



**attend** 17:6 36:12 41:1

**attended** 16:14

**attending** 20:11

**attention** 105:12

**attorney** 2:17 7:13 12:8 51:7 54:12 143:4

**ATTORNEY'S** 3:6

**attorneys** 31:12 41:14

**audio** 10:23 11:14 20:23

**August** 46:7

**Austin** 1:3 2:6,18,24 3:5 5:12,22 10:24 11:11 12:8 141:10

**authorities** 79:19

**authority** 31:6 74:16 78:15

**automatically** 70:24

**Avenue** 2:12 3:6

**avoid** 140:5

**aware** 30:22 40:20 82:9 98:14 119:10

---

**B**

**back** 11:24 17:11 23:7 24:23 29:22 39:20 43:24 44:1,9,24,25 54:18,21 56:16 57:4,24 58:1 59:23 63:24 65:8 69:10,17 70:3 71:21 72:17 73:6 78:19 80:17 81:11 82:10,20 89:7 90:1 93:15 94:4 95:6 106:6, 16,21,23 109:3 113:19 126:1 133:22 139:8 140:6,18 141:1 142:1,4,21 143:1

**background** 16:9,14 89:23 90:7

**ballot** 38:17 39:8,10 55:1,20,24 56:9,10,15,23,24 57:1,20 58:12 59:23 60:5,8,10,20 61:2,3 62:13 63:23 66:21 69:2,5,10,16 70:3,22, 23,24 71:8,17,18,25 72:2,18 74:11, 14 75:3,24 76:24 77:19 79:4 81:6 83:25 85:5 87:12,21 88:2,19 91:15 93:21 98:4,15 99:12,15 102:6,13 103:15 105:5 107:25 108:6,21 109:5,13 112:8,9,15,23 113:3,23 114:6,21 115:16 116:21 118:12 119:2,10,12,16 120:1,5 121:7 124:17 127:2,7,10 128:21 131:21,

22 134:6,12,15 135:6,13,19 136:9 137:5

**ballot-by-mail** 77:2

**ballots** 25:13,14 35:10 46:16 49:17 55:6,16 61:13,14 62:8 64:1 67:19 71:24,25 72:4,8,12,14 74:18 78:4 111:10,14,22 124:10,11,17 127:6 134:8,24 135:1 136:23 138:21

**bank** 49:7

**based** 62:23 89:9 99:6 133:4,6

**basically** 20:14 22:22,25 23:14 27:8,16 28:3 38:8 39:19 40:13 41:11,13 45:18 51:16 52:24 53:11 57:18 63:2 65:9 67:13 69:22 74:16 78:6,12,22 80:20 88:14 92:23 105:4 129:9

**basics** 38:1

**basis** 21:21 22:2 58:21 71:12

**BASS** 2:23

**Bates-numbered** 111:3

**Bates-stamped** 105:13 116:13 131:9

**Becky** 5:15

**beginners** 37:24

**beginning** 7:22 38:3

**behalf** 5:21 6:16,17,20 7:14

**belong** 64:1 66:19,23 67:4

**benefit** 45:9

**Bible-ship** 16:18

**big** 77:16 78:7,8,25

**bigger** 62:25

**bills** 41:16,17

**bit** 27:23 28:5 47:4,22 55:5 92:5,17 93:2 96:17,18 140:11

**blank** 80:18

**board** 38:18 39:8,10 57:20 61:17 62:13 69:22 70:23 71:18,21,25 72:2,18 74:11,15 75:4,24 77:1 79:4 81:6 83:21 84:1 85:5 87:12,17,19, 21 88:2,19 91:15 93:21 95:24 99:12,15 112:23 113:3 119:12 120:1 121:7 124:17 127:2,7,10

128:21 130:11 131:22 134:12,15 135:6,9,14 136:9,21 137:7,14 138:25 139:19

**board/signature** 134:6

**boards** 76:24 77:20

**bond** 62:24 63:3 65:16

**book** 27:11 40:13,15 41:12,15 47:12 54:13,15,21 75:22 77:14,16 78:8,13,23,25 79:15 81:22 83:14, 16,20

**bookkeeping** 17:18

**booklets** 39:15

**books** 75:22,23

**bottom** 112:19 125:3,5 136:16

**bounded** 40:15 41:12

**box** 13:1 66:1 68:4 85:14 102:7,14, 18 103:1,19,20 110:13 112:13 116:6 117:3

**boxes** 65:1,10 87:3 139:9

**Brazos** 1:10 2:21 6:25

**break** 10:11,14 33:2 55:8 63:10,15 72:17,19 74:10

**breaks** 10:8,16 44:10,22

**Brenneman** 126:19

**briefly** 21:14 100:21

**bring** 12:16 28:11 53:21 54:12 71:21 84:5 105:11

**broader** 37:13 129:21

**brought** 86:21 87:3

**Bruce** 3:11

**budget** 31:23,25 32:2,4,7,12,14,15 34:10 77:21

**budgeted** 31:23 34:25 35:15

**building** 141:11

**by-mail** 76:12

---

**C**

**C-O-X** 5:20

**cabinets** 139:3



RICHARDSON: PERLA LARA

**calendar** 41:22 52:12,15,16 53:12

**call** 13:24 32:2 41:10 43:10,15 44:19 49:2,5,10 57:23 58:24 59:2 61:18 63:22 65:1 84:18 108:23 127:8 132:3

**called** 32:9 94:14 106:3,13 108:22

**calling** 59:11 108:10

**calls** 59:22

**campaigns** 59:6

**cancel** 57:1,23 58:12

**canceled** 58:4

**candidate** 80:10 132:13

**candidates** 131:19

**capacities** 35:23

**capacity** 1:10,11 2:21 3:3 6:1,25 7:5 73:21 143:5

**Capital** 64:14

**car** 73:22

**care** 97:14,15

**carrier** 40:2 45:22 56:10,18,23 57:3,11 58:6 60:8 61:4 69:2,6,11 79:25 81:16 112:15 113:16 114:9 140:1

**case** 1:7 25:4,6 32:2,17 49:23 59:22 84:25 93:19 110:2 131:10

**case-by-case** 58:20,22

**caused** 98:13

**cell** 12:17

**certification** 17:16 37:6

**certifications** 17:21 18:5

**certified** 18:3

**certifies** 15:8

**certify** 17:23

**cetera** 97:19

**change** 40:22 62:18 63:1 65:22 82:19 84:22 100:25

**changed** 61:19

**charge** 132:1

**charter** 20:18,19,20 21:1,2,6,13

**chat** 13:1 14:16 85:9 116:6

**check** 61:25 62:6 65:9 68:4,13,16 80:9,16 136:1

**checked** 68:8 102:13,18,25 103:19,20 112:13 114:7 119:3

**checking** 67:14 115:4

**checks** 68:1

**Christina** 41:13 42:9

**church** 16:17,22,24

**cities** 36:8

**citizens** 66:21

**city** 1:11 2:12 3:3,6 4:8 6:1 12:8 18:6,15,16,21,22 19:5,6,10,17,22 20:8,12,17,18,19,20 21:2,6,11,12, 18,22,24 22:5,6,10,16,24 23:6,8, 16,24 24:3,4,12,18,23,24 25:20,22 26:1,12,19 30:17,22 31:3,12 32:9, 10,13,19 36:1,2,17 38:4,5 42:11 43:10 45:9 46:15,21 47:6,8,11 48:19,20,23 49:14,15,21 50:25 53:4,7 55:12 59:4,7 62:19 64:21 74:3,6 88:4,12 89:3,5,14 90:12,22 94:21 95:1,8,12,15,18,20,23 96:4, 11 97:3,7 98:2,4,14,16 99:8 102:5 103:11,12 105:21,24 124:1 125:18, 20,24 126:8,16 127:23 129:3 132:14 133:2 136:8 138:12 143:5,6

**city's** 20:10

**CIVIC** 1:5

**civil** 1:24 2:5 5:6,12,20 6:15 7:13

**claiming** 67:9,10

**claims** 74:5

**clarification** 73:17

**clarify** 9:19 60:13 73:12,16

**clarifying** 74:9

**classes** 37:2

**clear** 7:24

**clearance** 90:8

**clerk** 18:2,3 37:12 50:25 51:3 55:12,14 59:4 79:8 99:8

**clerk's** 51:10

**clerks** 18:9 26:24 28:7 35:11 36:5, 21 38:4,5 42:6,11 43:10 45:9 48:21

**clerks'** 48:19,24 49:14,15,21 52:14

**close** 53:10

**closely** 21:25

**closer** 11:7 105:1

**CMC** 18:3

**COALITION** 1:4

**code** 21:11 27:11 47:10 48:9 50:2, 5,13,16,19 51:4,25 52:9 53:17 54:13,15,21 62:11 77:8,10 98:5 99:2,17 100:18

**Codina** 87:17 89:24 112:22

**college** 16:14

**colleges** 17:7

**color** 62:10

**color-coded** 64:2

**combination** 92:25 93:3

**combined** 76:21,22

**comfortable** 59:15

**commission** 19:5 20:12 21:20 31:3 32:10,11,13,20 33:22 34:8 88:4 95:15 124:1 125:18,21,24

**commissioners** 33:20

**committee** 79:18 83:8,21 123:25 124:5 125:12 126:8,11,24 129:20 134:7,13 136:10

**committees** 83:16

**companies** 64:12

**compare** 39:23 45:22 79:22

**comparing** 79:24 129:17

**comparisons** 39:5,9

**compensations** 42:2

**complete** 8:16 9:12 10:5

**compliance** 98:5 99:1,17

**computer** 12:17

**computer's** 11:14

**Computerized** 17:18

**concentrate** 92:11



**concerns** 125:23

**concludes** 143:13

**conduct** 31:18 34:23 92:14

**conducted** 94:21

**conducting** 7:15 8:13 20:13 21:15 92:13

**conference** 10:23 11:13 12:7,13

**confidentiality** 68:19

**confined** 68:9,18

**confinement** 102:7

**confusing** 83:15 92:17 93:2

**considered** 139:17

**consult** 31:13

**consultants** 65:18

**contact** 57:6,9 58:8,9,18 59:25 60:2,22 61:5 117:4,6,25 118:2,11 120:2

**contacted** 58:15 85:6 118:10,15, 18 119:7,17

**contacting** 118:11 120:1

**contacts** 107:19

**content** 78:3

**contents** 78:18

**context** 62:22

**continue** 14:16 42:14

**contract** 53:6 127:23

**convene** 135:2

**conversations** 49:16

**convince** 82:21

**cool** 141:19

**copies** 113:13

**copy** 77:8 105:20 113:8

**correct** 16:21 31:18,20 32:11 33:1 34:17 35:16 40:12 48:10 50:24 55:12 56:12 57:6,9 66:9,12 67:15 69:3 71:2,9 79:6 86:24,25 88:20 99:4 100:12 102:10,15 103:17 106:9 107:12,13 108:3,19 109:25 110:7 111:16 112:11,18 113:5 117:7 125:15,22 126:9,17,18

128:2,8 130:13 132:8,16 133:8,10 134:11 135:3,11 138:13,14

**correctly** 36:3 98:7 100:11 102:9 109:23 134:10 136:25 137:1

**Cortez** 30:16

**costs** 34:15

**council** 21:23,24 32:9 95:16,19

**counsel** 5:11,17 9:1,7 15:18 16:5 25:10 43:13,15,16 52:2 53:18,22 54:9 86:13 99:22 104:14 111:5 116:14 120:23 123:18 131:10

**counseling** 123:3

**count** 82:24 83:1 84:23 138:2

**counted** 84:20

**counties** 36:8 67:5 77:22

**counting** 52:22

**counts** 137:23

**county** 1:10 2:21 6:25 28:9 37:1,5 47:19 48:15 58:1 62:5 64:21 68:12, 15 70:13 74:24 77:18 80:13 88:10, 19,24 89:3,9,10,14 90:13,19,21 91:22 92:14,24 94:22 95:2,13 96:3, 10 97:8,11,13 108:11 128:24 129:13

**couple** 10:16 74:12 78:18 94:11 105:12

**court** 1:1 5:14 8:2,4 10:2 11:1 15:2 73:25

**covered** 41:9 55:11

**covers** 122:24 137:13

**Cox** 2:4 4:3 5:19 6:7 7:10,12 10:25 11:6,19 12:1 13:14,17,20 14:2 25:8 26:9 30:13 31:9 35:19 40:5 46:19 47:2 50:8,23 51:6,21 60:7,11,14,16 61:9 62:15 67:24 71:7 72:16,22 73:1,8,14,15 81:4 94:2,10 95:10,25 99:14,24 101:7 103:10 104:1,10 105:3,9 110:24 115:1,7,12,20,25 116:5,9 117:17 118:7,16,21,24 119:21,23 120:4,8,18 122:2 123:13 130:7 131:4 133:14 135:17 136:3 140:14,16,22 141:7,23,25 142:6,19

**create** 54:7

**created** 52:6

**cross-train** 93:10

**CRR** 1:22

**CSR** 1:22

**cure** 56:22

**current** 15:7 18:14

**cursive** 111:25

**D**

**daily** 22:2

**Dan** 112:21

**Dan's** 112:21

**Daniel** 87:17 89:24

**Danny** 89:24

**database** 52:8

**date** 14:11 114:16 122:8,25

**dates** 41:22 126:2

**day** 36:13 37:22 38:8 43:12 56:25 58:3,11,14,17 59:10,16,20,25 61:6 68:11 71:24 72:11 75:20 76:2 106:16 134:7,14,17,19,22,23 135:10,14,20,21 136:11

**day-to-day** 21:21

**days** 52:22

**deadline** 56:24

**deadlines** 52:23

**deal** 35:15

**December** 18:19 19:1 36:23 37:16 41:6 45:16

**December/november** 41:7

**decide** 35:5 56:22 89:13 137:18 140:8

**decided** 59:19 95:19 124:4

**decides** 135:5

**deciding** 88:6

**decision** 81:25 82:8 84:23 95:12, 14 124:6

**defects** 56:22

**defendant** 2:15,20 3:3 6:24 7:3 14:24



**Defendants** 1:13

**defer** 140:19

**deficiencies** 60:20,21,22

**deficiency** 57:6,10 58:5 59:24 61:4

**deficient** 57:4

**defined** 20:17

**degree** 16:20 17:16

**degrees** 16:15

**delay** 137:20

**deliver** 75:10 139:10

**delivered** 136:23 138:22,25

**delivering** 55:24

**demonstrate** 93:23

**demonstrations** 28:20

**denied** 98:25 99:6 103:4

**Denton** 18:6

**deny** 94:22 98:6,13 99:21 102:8

**department** 12:7 22:7,12 63:22 89:23 139:7

**depending** 37:17 57:15 134:21

**depends** 38:19 64:15

**depo** 73:22

**deponent** 5:9 6:6

**deposed** 7:19 14:23

**deposition** 1:14,17 4:7 5:10 7:15, 23 12:18 13:1 14:5,12 15:13,15,19, 22 16:2,6 73:20 142:9 143:13

**deputize** 37:4

**deputy** 22:16,21,23,24 23:8,24 36:17,20 37:4,7 53:21 54:24

**describe** 75:2

**description** 4:6 29:25

**designates** 63:7

**designations** 17:20

**destroyed** 100:10 101:10,15 102:23 103:2

**detail** 42:25 43:6

**determination** 53:22 71:19 84:2 99:21

**determine** 67:17 80:1 121:23

**determined** 68:25 112:14

**determining** 34:22 56:17 121:17

**develop** 25:25 26:5 27:24 28:2

**developed** 64:10

**dial** 11:12 107:19

**differ** 47:21

**differences** 126:25

**difficult** 91:1

**difficulties** 9:3,7

**difficulty** 137:24

**direct** 31:5,17

**direction** 56:2 136:5

**directions** 69:10

**directly** 31:17

**director** 54:24

**DISABILITIES** 1:4

**disability** 62:4 67:10,11,12

**disagreement** 85:7

**disagreements** 140:6

**disciplinary** 15:6

**discovery** 4:10 123:18

**discretion** 34:22 35:5,14

**discretionary** 34:19 35:8

**discuss** 48:16 133:20

**discussed** 20:18 23:13 126:22 138:11

**Discussion** 125:16

**discussions** 49:16

**distinction** 83:9

**district** 1:1 33:16,21,23 57:14,17 62:10,11 63:3,25 65:17 66:20,24 67:15,18 111:10 139:12

**Districts** 57:16 67:4

**divided** 41:18

**division** 1:2 22:9

**document** 4:11,12,13,14,15,16 13:23 14:7,10 59:17 61:4 70:10 81:14 85:10,17,19 86:10,15 91:7 94:5,12 97:24 100:2 101:20 104:4, 13 110:9,18 111:13 116:15 120:10 121:16 122:1 123:7,23 129:25 130:9,16,23 131:13 140:10,12

**document's** 122:4

**documents** 12:25 15:23 16:1 20:11,15 86:24 102:22 104:19,20 111:4 116:14 120:23

**Dolling** 2:5

**doubt** 48:23

**download** 28:3 40:12,14 42:8,13, 14 47:24 52:13 65:19 78:9

**downloading** 40:16

**downstairs** 113:15

**drafting** 87:1 98:11

**drawer** 139:15

**Drive** 2:6

**DS200S** 27:8 47:17

**due** 52:24

**duly** 1:19 7:6,8

**duties** 20:9 21:12 22:20 50:19 51:2 52:8,17 53:4,7 74:2 97:12

**duty** 53:3

**dying** 116:1

---

**E**

**e.magee@allison-bass.com** 2:25

**EA** 28:8

**earlier** 92:11 94:7 102:11 108:20 121:6 126:15 135:9 137:15 141:1,2

**early** 29:9 38:7,17 39:8 41:23 50:20,24 51:3,10 55:11,14 58:3 70:23 72:5,18 74:11,14,17 75:3,20 76:1,7 77:2 79:4 81:6 83:25 85:5 87:12 88:19 89:1 91:14 105:5 112:23 113:3 119:11,25 121:7 122:25 124:16 127:2,6,10 134:5,8, 15 135:6,13 136:9



**earn** 17:16

**earned** 16:15

**easier** 12:13 67:23

**Edinburg** 90:24

**educational** 16:14

**effect** 68:14

**efficiency** 124:23

**effort** 106:19 109:6 118:2

**elect-** 87:18

**election** 20:13 27:6,11 28:16
30:11 31:4,18,25 32:1,3,17 33:4,5,
7,12,14 34:2,10,23 35:1,7,9 38:16
47:10,16 48:6,9,17 49:22 50:2,5,
13,17,19 51:4,17,20,25 52:9,12
53:2,5,11,17 54:13 55:16 56:25
57:15 58:3,10,14,16,17 59:10,16,
20,25 61:6 62:18,19,22,23,24,25
63:4 65:17,18 66:22 67:1 68:10,11
71:24 75:15 76:2,7,20 77:8,10,24
88:23 89:1 91:9,22 92:13,24 93:15
95:8 96:7,10 97:7,9,15 98:4,5,16
99:2,17 100:18 106:16 111:11,12,
13 114:17 115:14 122:25 124:6,9,
11 127:8,24 131:22 132:1,2 134:7,
14,17,19,22 135:10,14,20,21
136:10,11 137:2

**election-related** 100:22

**elections** 1:10 2:21 7:1 20:13
21:16 23:20 25:22 26:1,12,19 28:8
30:24 31:7,24 32:1,5,7 35:22 36:3
37:2,12,16,19,25 41:12 46:3 47:8
48:12 49:2 75:18 87:13 88:12 89:4
92:1 94:21 95:1,9,13,14,20 97:11
122:24 128:11,14,23 129:4,8
138:17

**electronic** 93:1,3

**eligibility** 68:2

**email** 42:12 48:21 117:11 118:3,5

**emails** 42:10 113:11

**employed** 48:6

**employees** 42:23,24 48:5

**employer** 15:7

**employment** 18:14 127:24

**enclosed** 139:6

**end** 9:22 36:19 37:21 43:12 44:7
58:2 130:9 142:8

**enrolled** 24:19

**ensued** 125:16

**ensure** 26:1,11

**enter** 57:13 61:15 70:5,11 71:12

**entire** 36:13 78:23

**entitled** 79:7

**envelope** 40:3 45:23 56:13,18,23
57:3 58:6 60:8 61:5 64:8 65:4,8
69:6,11,12,19,21 79:25 81:16
105:21 112:15 114:9 140:1

**envelopes** 29:5,6 42:1 56:9,10
57:11 65:3 69:3 113:12,14

**equipment** 27:6,7 28:14,15 29:14
35:10 47:16,18 92:12,15,16,18
96:3,5

**Eric** 2:22 6:23 143:9

**Erratt** 3:11

**ES&S** 27:7 47:16,19 92:17

**estimate** 81:5

**et al** 5:8

**evaluating** 79:12 93:24 130:16

**evaluations** 46:17

**EVBB** 27:4 70:25 76:5,19,25 78:15
79:1,8 83:10,21 84:12 91:7 118:13,
15 121:20 126:23 129:21 136:24
137:4,9

**EVBBS** 126:16

**event** 117:24

**events** 49:21

**everything's** 119:7,8

**examination** 4:3 7:9 130:1,17

**examples** 29:3 43:1 78:19,20
80:21

**Excellent** 7:11 22:3 23:23 25:2
27:21 30:20

**exception** 108:9

**exclude** 39:10,13

**exclusively** 53:18

**Excuse** 19:19 89:22

**exercise** 31:6

**exhibit** 4:7,8,11,12,13,14,15,16
13:24 14:1 94:6,8,9 104:8,9,14,25
110:20,22,23 111:4,7 115:23
116:7,8,14 120:15,16,22 123:11,
12,18 131:1,3,9

**exhibits** 4:5 12:25

**expand** 28:9

**expect** 51:8

**expected** 57:25 70:13

**expense** 35:13,15

**experience** 24:6,10,17 80:12
91:19 92:8 93:7,23 128:16 129:4,
10,12,16,25

**experienced** 28:6 89:17 90:8
93:12

**expert** 25:16

**expertise** 93:24 129:7,16 130:15

**experts** 45:20 79:17 83:7 140:2

**explain** 32:23 74:21 75:12 82:12,
16 83:9 99:5 100:13

**explains** 21:7

**explanation** 65:24

**Expressvote** 76:16

**Expressvotes** 27:9 76:15

**extent** 95:17

---

**F**

**fact** 74:20,22 79:1 83:23 89:10
127:9 138:5 139:18

**fair** 31:19 35:16 51:20 108:2 136:7

**faith** 106:19 118:1

**familiar** 20:24,25 46:3,5 50:4
92:10 111:25

**familiarity** 50:1

**Farr** 2:11 6:19,22

**faster** 124:25

**federal** 1:24 26:13



**feel** 44:17 59:15 82:14 84:19

**feels** 82:1,2,9 84:16

**Felicitas** 114:2,4

**felt** 124:13

**fend** 77:12

**field** 22:13

**file** 61:14

**filed** 86:20 101:9,14 109:13

**fill** 59:13 63:24 91:20 92:25

**filled** 58:7 113:2,6 119:1 128:4

**final** 61:21 82:8

**find** 43:3,5 47:10 59:7 61:4 89:17, 19 107:7

**finding** 38:4

**findings** 133:5

**fine** 72:23 142:19,20

**finish** 8:18 124:20

**fire** 123:8

**firm** 6:19,22

**fits** 29:24

**fix** 60:22

**Flanagan** 3:13 5:13

**flat** 33:5,6

**Floor** 3:6

**focused** 43:20

**fold** 64:7

**folks** 6:9 89:9 91:11,13

**follow** 26:6 41:15 42:9 47:14 52:12,18,25 53:13 63:5 69:9,24 70:1

**forensic** 129:25

**forget** 79:24

**form** 25:7 26:3 30:3 31:8 35:18 39:11 46:18,23 50:6,21 51:12,17 60:4 61:8,11 66:15 71:3 81:2 93:25 95:4,21 99:10 100:23 103:3,22 113:2,7 114:23 115:6,9,17 117:13, 23 118:19 119:1,18 120:3 121:25 130:4 133:11 135:16,22

**forms** 29:1,2 38:4 40:14,21 42:5,7, 10 48:22 76:10 92:25 93:3

**FORUM** 1:6

**forwarding** 106:22

**FPCA** 68:22 118:4

**free-for-all** 43:18,22

**front** 78:16

**full** 9:11 13:10,15 140:17,24

**full-time** 22:1

**functions** 76:25

**FUND** 1:5

**funding** 31:22,24

**funds** 32:18 34:19,21 35:5,15

**future** 138:16

---

**G**

**Gallagher** 2:11 6:19,22

**gave** 87:2 139:4

**gears** 47:4

**general** 2:17 7:22 74:12

**generally** 25:6 39:8 41:8 51:9 104:20

**George** 1:3 5:8

**GI** 1:5

**give** 8:3 10:4 20:1 26:25 27:1,5,9, 16 28:5,9 39:13,15,19,20 40:6,14 41:13,14 42:15 53:12 54:1 75:24 76:6,8,9 77:5 96:12,13 142:16

**giving** 43:1

**good** 7:12 37:25 44:25 55:8 72:20 93:17 106:19 107:18 118:1,5 124:14

**good-faith-based** 109:6

**gotcha** 96:24

**government** 17:22

**graduate** 17:3,12

**Graphic** 64:14

**Graziano** 1:22 5:15

**Great** 12:9,22 14:15 18:4 21:17 24:8,22 25:2 42:19 45:12 46:1 53:9 63:8 74:8 105:10 107:4 123:6 140:9 142:6

**green** 105:20,21

**grounds** 67:11

**group** 48:24 49:14,15,22 76:25

**grow** 89:16 91:12

**Guadalupe** 112:4

**guess** 32:9 55:4 65:19 75:14 85:3 89:11 99:17 102:2,24 108:16 114:20 130:5 131:21 138:9 142:10

**guidelines** 26:6 27:1 63:6

---

**H**

**half** 36:23 79:3

**Hancock** 1:9 2:20 6:24

**hand** 12:24 41:11 72:4,5 75:21 77:1 137:23

**handbook** 40:8 41:12 52:24 53:8 76:7 78:6,7 79:5,8,10 80:21 81:10 121:9,20

**handbooks** 27:4,10 40:7 76:6 77:5 78:9

**handle** 29:1

**handled** 28:22

**handles** 32:20

**handling** 46:16

**hands-on** 28:6 29:19

**handwrite** 111:18

**handwriting** 45:20 79:17 104:22 106:25 107:3 111:17,19 140:2

**handwritten** 111:9,15

**Hani** 2:4 6:15

**hani@texascivilrightsproject. org** 2:7

**happen** 36:22 63:12 75:16,17 136:6

**happened** 69:20 84:25 135:24 137:14 138:23



RICHARDSON: PERLA LARA

Index: happy..Joanna

**happy** 10:13

**hard** 12:12 89:16,19 110:11 136:21 137:8,11 139:19

**harder** 90:22

**Hart** 47:19 64:14 92:16

**head** 8:5

**headphones** 115:25

**hear** 9:3 11:2,3,5,10 45:19 106:10 137:3

**heard** 46:5,10 77:24

**hearing** 11:1 45:14

**helped** 24:17,21 59:13 86:17

**helping** 59:13

**helps** 128:22

**HG** 5:16

**Hidalgo** 37:1 48:15 49:3 88:10,19 94:22 95:2 96:8 97:8 129:13

**hierarchy** 22:12

**high** 16:13 17:7

**Hinojosa** 89:25

**hired** 46:22 89:14

**hiring** 38:4

**history** 18:14

**hold** 13:11 17:19 61:17 109:16 110:16 115:25 116:2 128:16

**hour** 140:17,23

**hours** 9:16

**house** 41:16

**Houston** 3:6

**HR** 89:22

**huge** 52:19

**huh-uh** 8:10

**hyperlink** 13:16

---

**I**

**idea** 135:2

**identical** 65:11,14

**identify** 5:17

**immediately** 9:8

**implement** 25:25 26:18

**important** 8:8,14 41:22

**imposes** 50:19

**in-house** 28:2

**incarcerated** 68:5

**include** 26:20 34:14,18,21 39:3,5, 7,9 64:4 65:24 78:5 104:20 117:10 127:7 137:9

**included** 19:21 23:18

**includes** 33:15 79:1 83:20 84:6

**including** 75:24

**independent** 31:6

**independently** 89:11

**INDEX** 4:1

**individual** 33:3 43:20 44:10,21 75:4 81:18 87:16 106:13 110:4 135:14

**individually** 139:12

**individuals** 57:22 87:25

**information** 22:17 26:22 27:17,20 28:3 39:18,20 40:18 43:11 51:18 57:12,19 58:7 59:3 62:12,13 64:2, 25 65:2,19 66:12 67:19 69:5 72:4,5 76:15 77:2 80:5 84:11 86:14,18,20, 21 113:16 117:4,7,21,22 118:11 120:2 136:18 139:1,4

**informed** 24:11

**initiating** 63:20

**insert** 65:4

**inside** 64:16 65:4 69:11,12,18,21

**inspect** 131:21

**inspection** 131:16,25 132:19 138:16,19

**inspector** 131:20 134:4,9 136:16, 20 138:4,24 139:5,18

**inspector's** 131:23

**instance** 1:18 80:19

**instances** 57:22

**Institute** 17:11

**instruct** 103:8

**instruction** 64:7 115:18

**instructions** 64:4,6,17,19 65:7, 11,24 66:6 69:24,25 137:10

**interact** 75:3 91:6

**interaction** 75:9

**Intercivic** 92:16

**interference** 10:24 20:23

**interim** 18:24,25

**interject** 73:11

**internal** 47:7,12,20

**interpretations** 43:14

**interpreting** 53:25 54:4,5,17

**Interrogatory** 87:9

**interview** 89:22

**interviewed** 90:3

**investigate** 68:3

**involve** 34:3 37:12,13 74:5

**involved** 28:21 30:10 86:9

**involvement** 32:22

**involves** 37:15 79:10

**Isaac** 3:5 5:23 6:3 140:14 142:9 143:3

**issue** 31:4

**issued** 18:5

**issues** 14:17 27:2 53:16 136:23 138:4 140:4

**itawil@mcallen.net** 3:8

**item** 32:21,24 33:5,6 34:10,16 73:12,19 127:4,13 136:16

---

**J**

**jacket** 56:13

**jail** 68:9,10 102:7

**January** 102:4

**Joanna** 2:11 6:21



**job** 19:11 20:6,9 23:6,11,25 24:10 50:4,10,13 74:2

**jobs** 88:8

**joint** 94:20 95:1,8 96:7,10 97:10,15

**Josie** 30:16

**jsuriani@willkie.com** 2:14

**judge** 38:6,17 75:24,25 76:4,5,7,20 84:18 92:4 112:23 113:3 128:21,22

**judges** 26:23,24 28:7 35:11 39:20, 21 41:23 49:4,8,9 51:19 75:23 76:1 77:17,19,23 79:8 80:12 88:11 89:17 90:8 92:9 93:7,8,12 128:18

**July** 46:7 89:1 133:16,22 138:11

**June** 89:2

**jurisdictions** 48:13

**JUSTICE** 1:3

---

**K**

**Kalar** 2:10 6:17,18

**key** 70:20 139:2,10

**kind** 7:22 15:6 16:9,10 17:15,19,22 18:13 22:13 25:3 26:10 28:18 30:2, 18 31:6 34:18,21 35:20,23,25 37:13 38:12,13 39:10 40:7 43:18, 19,20 47:4,7,12 48:4,16 52:7,8,10 53:16 54:8 62:22,23 63:11 64:4 65:12,24 77:12 79:14 89:8 90:24 94:13 96:23,24 98:12 110:11 125:23 130:14 138:18

**knew** 25:19 135:19

**knowledge** 43:4 93:24 95:18 96:6 115:13 118:9,17 119:24 128:15 129:16

---

**L**

**L-A-R-A** 7:18

**labels** 67:21

**Lara** 1:11,15,17 3:3 5:10,25 6:4 7:7,11,18 11:6 12:2 13:18 14:6 25:9 73:16 94:19 104:24 143:4,14

**large** 33:19,24 66:23 124:11

**largely** 126:14

**late** 93:9

**law** 6:19,22 26:13

**lawsuit** 14:25 101:9,14

**lawyers** 15:17

**leading** 75:20

**leads** 98:24

**LEAGUE** 1:5

**learn** 128:18

**learning** 93:13

**lease** 47:18 96:2

**legal** 10:23 12:7 25:16 43:13 52:2 54:11 136:2

**legislative** 41:16

**letter** 64:4,5,10 66:24 125:7 131:17

**liability** 74:5

**liaison** 32:13,20,23

**library** 100:16

**licenses** 35:10

**limit** 119:22

**lines** 19:13 47:13 48:14 105:16 130:1

**link** 13:8,9,11,21 85:10 110:20 116:6 120:11,14 123:10 131:2

**links** 14:16 42:16

**list** 42:15 52:7,11,17 55:5 67:7 76:8 85:23 86:7 111:9 128:10 129:7 130:14

**listed** 19:15 87:11 91:6 129:11

**listen** 44:18

**lists** 14:11 20:21 52:8 70:6 87:20 106:4

**Litigation** 5:16

**live** 90:23

**LLP** 2:11,23

**local** 28:4 36:8 48:17

**location** 12:4,11

**lock** 70:19 139:2,9

**locked** 136:24 138:22

**log** 57:12,19 61:16 62:9 70:8

**long** 10:11,18 15:21 23:9 24:24 30:17 35:23 45:21 63:14 71:11 77:17 84:2 90:20 91:4 92:3 96:22 104:13,17 116:15 120:25 122:4 123:22 124:16 140:20

**longer** 109:2 124:18 126:19

**Longoria** 89:25 129:2

**looked** 108:20 114:13 126:15

**lost** 109:16

**lot** 24:6 38:10,21 43:9,24 44:15,23 45:9 53:7,23 54:14 59:3 65:15 66:20 79:3 80:12,17 84:21 92:12 93:13 116:17 124:18

**Luis** 89:24 129:2

**lunch** 44:2 130:22 136:14 140:23 141:5,6 142:15,18

**lunchtime** 140:11

---

**M**

**machine** 1:23

**machines** 27:6 76:16

**Mackin** 2:17 7:2,3

**made** 9:18 79:13 99:22 121:18 124:6 138:19,23

**Magee** 2:22,23 6:23 143:9

**mail** 25:13,14 41:25 56:16 59:2,23 60:20 61:2,20 63:12,19,23 66:22 69:9 72:4,8 76:8 98:15 102:13 103:16 105:5 107:25 109:13 112:15 113:8,16 116:21 127:11

**mail-in** 29:10 46:16 49:17 55:1,6, 15,20,24 56:23,24 74:18 78:4 102:5 124:10 137:5

**mailed** 56:15,18 98:3

**mailing** 55:20

**mails** 113:10

**maintain** 47:6 52:5,7

**majority** 38:23

**make** 6:12 7:23 8:6,10,19 9:23 12:20 13:5 14:19 28:4,17 31:10



39:24 42:7 52:10 53:22 66:19 67:3, 22 68:3 71:19 82:9 84:2 88:3 109:24 113:13

**makes** 59:21 95:11,14 97:20

**making** 51:20 67:14 80:4 83:10

**management** 21:25 124:13 132:20 133:1,21 138:12

**manager** 22:15 29:12 30:6 36:18 86:19 102:19 106:18 133:2

**managers** 22:11

**March** 25:1

**mark** 94:7 104:8 120:15

**marked** 14:1 94:9 104:9 110:23 116:8,13 120:16,22 123:12 131:3,9

**marks** 79:13

**match** 80:24 114:9 115:3

**material** 65:20 75:11

**materials** 27:25 40:9 48:4 56:14 75:22 78:2 100:22 101:13

**matter** 5:7 63:3 70:25 79:1 83:23 90:20

**Maygun** 3:13 5:13

**mayor** 19:5 20:12 21:20 22:1 31:2, 16 88:3 95:15,19 125:17,20,24

**mayoral** 33:15,21 34:6 57:15 63:4 65:17 124:8

**Mcallen** 1:11 3:3,6,7 6:1 18:15,21 19:7,17,22 20:8,17 21:2 23:6 24:12,18 25:20,22 26:1,12,19 30:22 47:4,6,11 48:12 50:25 55:12 63:13,17 64:21 66:10 87:12 90:12, 15,23 94:21 95:1,9,20 98:3,15 102:5 103:12 105:21,25 112:8 126:16 127:23 134:13 138:12 143:6

**Mcallen's** 4:8

**meant** 62:5

**media** 123:1

**mediation** 73:24

**meet** 15:18 62:2,3,12 91:14 134:7, 14,17,18,21 135:9

**meeting** 13:2 21:23 124:1

**meetings** 15:14,23 20:11 21:24 133:3

**meets** 135:6

**member** 46:12 76:19 84:12 91:7 128:1,20

**members** 22:14 28:22 75:5 81:7 83:7 85:5 87:12,21 93:22 121:7 126:11,15,22 127:1 136:21 137:3, 7,9,14 139:19

**memo** 42:14 54:7

**memory** 101:5 102:12

**mention** 14:23 91:3

**mentioned** 40:25 68:1 84:10 94:7 121:6 132:11 137:15

**mentor** 48:24 128:19

**merits** 44:18

**message** 108:6,24 110:5

**messages** 107:11

**met** 15:17 100:9,14,15,18 134:22 136:10

**microphone** 11:7,8

**microphones** 45:5

**middle** 10:12 101:23

**midnight** 124:21

**mimics** 22:25

**mind** 9:21 27:24 61:19 75:25 84:22

**minute** 19:9 23:13 83:5 94:5 121:2

**minutes** 15:25 20:12 23:20 44:9 72:19 141:10,16,19

**Mirza** 2:4 6:14,15

**misleading** 83:15

**mismatches** 81:8

**mismatching** 79:12

**misstatement** 9:18

**money** 35:6

**monitoring** 132:5

**month** 75:18

**months** 101:6

**Montopolis** 2:6

**morning** 7:12 44:1 102:12

**mornings** 113:17

**move** 1:4 11:7 65:21 99:25 137:19

**moved** 139:7

**municipal** 18:2,3,9 36:5,21 37:11 52:14

**municipalities** 36:9

**mute** 133:12

---

**N**

---

**named** 88:1

**names** 49:6

**necessarily** 88:22

**needed** 9:18

**needing** 10:9

**network** 45:11 48:15,19

**networking** 38:10 49:20

**nice** 40:15

**nod** 8:5

**nontransferable** 97:12,13,18

**note** 106:2,25 109:20

**notebook** 52:19

**notes** 142:17

**notice** 4:7 14:5 58:13 109:21 110:4 112:6,7 113:23 114:6 135:18

**notices** 38:8 48:22 52:22 105:7,8 126:2,3

**notified** 109:21 132:2

**notifying** 56:4

**number** 4:6 5:6 44:13 61:25 87:9 94:15 97:25 101:24 107:15 108:18 110:13 111:10 112:13 114:7 115:4 117:3,11 118:3 125:4 128:10 129:6 130:2 134:25 136:16

**numbered** 1:20

**numbers** 106:4,14 107:19 108:22



**O**

**oath** 9:25 42:2,3 72:3

**object** 60:10 118:19

**objection** 25:7 26:3 30:3 31:8 35:18 39:11 46:18,23 50:6,21 51:5, 12 60:4 61:8,11 66:15 71:3 81:2 86:3 93:25 95:4,21 99:10 100:23 103:3,22 114:23 115:6,9,17 117:13,23 119:18 120:3,6 121:25 130:4 133:11 135:16,22

**objections** 4:8 85:24 86:8

**obligations** 51:25

**observed** 136:19

**occasion** 45:1

**offered** 108:17

**office** 2:17 3:6 22:10 24:3,4 26:20 28:11,15 29:18 31:21 32:8 34:11 37:14 45:2 48:5,8 52:13 54:11 57:5 58:9,19 63:20,21 64:10 66:13,14 70:4,22 71:16 79:6 86:13 90:14 97:7 98:18,21 102:17 108:23 110:5 113:19 116:22 117:21 119:15,25 139:2,7

**official** 1:9,11 2:21 3:3 6:1,25 7:4 19:12 20:10,14 21:15,22 23:19 73:21 74:2 143:5

**officials** 20:22 49:23

**older** 70:14

**one-on-one** 75:19

**one-to-one** 28:12

**ongoing** 90:2

**open** 13:2,21 33:18 34:3 62:7 85:16 104:7,11 110:25 116:10 120:20 123:15,16 131:6 142:20

**Opened** 120:21 131:7

**opening** 139:11

**opinion** 54:2 136:21

**opportunity** 58:17

**opposed** 76:20

**option** 11:12 134:20 135:9

**optional** 36:11 38:13 117:5,15

**Oral** 14:5

**order** 64:12,13,14,25 75:23 78:8 125:11 126:6,7

**orders** 64:15

**ordinance** 127:7

**organization** 17:23

**original** 113:8,10,11

**originally** 140:23

**originals** 113:13

**outlined** 21:12

**overridden** 138:2

**override** 82:7,11,14,25 84:13,23

**overseas** 118:4

**oversee** 26:18

**overseeing** 55:17

**overtime** 33:8

**P**

**P-E-R-L-A** 7:18

**p.m.** 1:21 142:24,25 143:2,14,16

**pages** 78:10 80:7 104:17 105:12 109:10 113:22 116:16 120:25 123:22 130:8

**paid** 34:15

**pair** 93:11

**Pan** 16:16,20 17:1,4

**paper** 65:12

**part** 28:6,24 36:20 38:20 39:4 55:14 81:12 83:3,4 84:11 99:1,6 100:6 111:21 137:12 138:21

**participating** 68:19

**pass** 142:11 143:8

**passport** 22:9

**past** 84:12 87:11 140:11

**paying** 33:4

**payroll** 33:8

**PDF** 125:2,5 126:6 131:12

**people** 31:16 42:23 44:1 48:15

80:16 83:6 88:1,11,18 89:13,20 91:4,6 129:10 130:10

**perform** 54:25

**period** 23:12 41:24 76:1

**Perla** 1:11,15,17 3:3 5:10,25 7:7, 18 14:6 51:13 73:12 99:19 101:1 103:4 109:20 115:10 118:14,16 140:19,22 142:13 143:4,13

**permitted** 77:22

**person** 29:1,23,24 30:7,15 32:24 41:25 54:7,10 58:11 64:15 70:12 79:13 80:18,25 82:13,21 106:20 112:16 113:7 114:13 115:5 121:18, 24 129:24 135:15,21 140:4

**person's** 107:24

**personal** 72:6 74:4,18

**personally** 28:21 41:2 45:4,17 73:21 75:3 136:19

**petition** 132:14

**Pharr** 90:24

**phone** 11:13 12:17 44:13 106:4 107:14,19 108:17,22 117:11 118:3

**physical** 12:11,24

**physically** 10:20

**pick** 54:15

**picked** 112:6

**picks** 113:16

**pink** 29:6 106:1,25

**pizza** 65:1

**place** 10:21 26:12 39:18 47:21 58:2 66:3 76:4 129:23 130:6

**places** 33:18 34:3 126:4 132:5

**plaintiff** 14:24

**plaintiffs** 1:7,19 2:3 5:21 6:16,18, 21 7:14

**plaintiffs'** 4:9 5:11

**plan** 10:7 12:25 32:16 41:21 141:25

**planning** 41:22 52:21 93:17

**point** 77:9 78:13 79:21 80:6 99:21 101:8



**policies** 26:1 138:17

**policy** 58:19 101:11,16

**political** 132:13

**poll** 70:9 122:25

**pollbooks** 47:16

**polling** 33:18 34:3 39:17 58:2 76:4 126:4

**pool** 93:8

**poor** 98:11

**populate** 67:21

**population** 134:21

**portions** 50:9,12

**posed** 125:17

**position** 18:14,18,23 19:4 20:16 33:19

**positions** 20:22

**possibility** 102:24

**Post-it** 106:2,25 109:20

**posting** 19:11 20:6

**postings** 126:4

**postmark** 71:9

**postmarked** 71:10

**potentially** 103:15 117:22

**Powerpoint** 29:21 30:1 38:22 39:14 121:1,5,11

**Powerpoint-type** 122:21

**practice** 13:7 28:16 108:12

**practices** 48:13,17

**preparation** 16:2

**prepare** 15:12,15,19 16:6 29:2 67:18,19

**prepared** 24:11

**preparing** 15:22

**preprint** 65:19

**present** 3:10 10:22 12:6 32:10 102:21

**presentation** 39:16 43:23 121:1, 6,11,22 122:19

**presentations** 29:15,21 30:1 39:14 41:15 122:21

**presented** 132:20

**presenters** 38:20,21 42:21,22

**presenting** 125:19

**preserved** 101:15

**press** 71:6

**pretty** 93:6

**previous** 18:22 30:11,14 44:3 82:24 84:13 118:1

**previously** 21:14

**primarily** 29:25

**print** 111:21

**printing** 35:11

**prior** 23:5,24 24:9 56:24 73:13 101:9 118:12 120:5 133:18 134:7 136:10

**privilege** 99:23

**problem** 112:1

**Procedure** 1:24

**procedures** 47:8,12 48:4 55:1,2 62:18 138:17

**PROCEEDINGS** 5:1

**process** 27:19 32:6,23 45:15 47:20 49:18 57:21 63:20 72:13 75:7,8 76:17 77:3 92:10 93:5,13 99:13 124:15 126:24 127:3 131:22 137:20

**processes** 26:6 27:1 41:20 47:5 63:6 74:17

**processing** 41:20 71:14

**produced** 1:18 104:14 131:10

**product** 61:21

**Production** 4:11,12,13,14,15,16

**professional** 17:20

**program** 16:24 17:3,13,17 18:7,8, 10 36:5 37:23 68:20

**programs** 24:20

**Project** 2:5 5:12,20 6:16 7:14

**properly** 26:2 119:4

**propose** 32:7

**proposed** 33:10

**protocols** 141:11

**provide** 12:25 26:22,24 27:3,17 28:19 39:18 66:5 67:6 77:7,11,14 79:10 117:6,15,16 136:17

**provided** 10:12 46:21 64:20 65:12 78:1 79:5 117:19 118:12 123:17

**providing** 28:20 40:9 42:7 48:3 51:18 56:9

**provisional** 72:12,14

**provisionals** 72:10 74:19,23

**provisions** 1:25 77:10

**public** 17:2 22:16

**purchased** 96:4

**purportedly** 116:25

**purpose** 117:10 128:11

**purposes** 124:24

**pursuant** 1:24 100:18

**push** 120:12

**put** 13:8,9 14:16 29:8 43:11 44:13 47:25 56:13 57:13 62:11 64:7 65:4 66:11,13 67:20 69:5,21 70:19 85:9 86:14,17 88:4 116:6 130:2,3 131:2

**puts** 113:12,14

**putting** 85:13

**Q**

**qualification** 62:3

**qualifications** 19:16,21 91:13

**qualified** 55:25 61:2 69:1 90:12,20 91:17

**qualifies** 74:17

**qualify** 57:21 68:4 72:13 91:14 99:13 124:17 134:7

**qualifying** 27:19 41:20 71:14 75:7

**question** 8:17,18,21,22,24 9:17 10:12,13 12:2 31:10 34:24 38:9 43:7,25 44:2,6 45:5,7,18 51:13,24 60:13,17 73:13 81:23 84:6,8 85:4 87:24 94:25 99:20 101:23 103:5,7,



23 106:8,12 122:4 128:12 133:24
134:4,5 136:14

**questions** 8:1 9:12 28:12 29:17
38:24 43:9 44:10,15,21,23 45:3,14
48:22,24 54:14,19 74:12 78:21
80:23 83:12 86:15 94:11 125:17,23
130:21 132:23 140:9 142:17 143:7,
8,10

**quick** 11:17 13:7 63:9 73:11
101:23 116:2 120:24 142:15,18

**quote** 137:11

### R

**random** 112:5

**rapid** 123:8

**reach** 106:19

**read** 44:20 50:12,16 54:3 98:7
100:11 102:9 109:23 114:1,10
134:10 136:25 137:1

**reading** 14:18 83:17 94:23

**ready** 57:20 88:25

**real** 11:17 13:7 40:15 63:9 73:11
116:2 120:24 142:15,18

**realize** 9:18 121:15

**realized** 127:14

**reason** 10:4 14:12 15:3 57:24
70:21 71:5 85:12 108:23 112:10
114:20 115:2,8,15 119:6 127:12

**reasons** 56:6 68:2 80:8,15 129:11

**Rebecca** 1:22

**recall** 19:13 34:9 46:14 49:16
103:6 125:25

**receive** 31:21 55:15 57:11 60:19,
25 61:14 99:9,12 127:10

**received** 16:19 56:18 59:3 61:2,6,
15,18 62:9 66:12 70:9 71:15 98:3,
18,19,21 102:5 103:6 106:14
135:18 138:10

**receiving** 70:8 98:15 119:15

**recent** 93:10

**recently** 95:6

**recess** 11:23 73:5 142:25

**recipient** 107:16

**recognize** 13:23 14:3 85:19,21
107:1,16 110:2 111:20 112:20
116:20,24 123:21 131:12

**recognizing** 79:11

**recollection** 21:9 45:13 97:6

**recommend** 88:7 93:22

**recommendations** 88:3 133:5

**recommended** 125:10

**reconvene** 71:20 72:13

**record** 1:25 5:2,4,18 7:17 8:4,5 9:8
11:17,21,25 12:3 14:19 73:4,7
104:24 142:7,23 143:2,15,16

**recorded** 8:2

**recordkeeper** 20:10,14 21:15

**recordkeeping** 23:20

**records** 20:11 22:15 23:19 29:12
30:6 36:18 64:15 86:19 100:5,8
102:19 103:2 106:18 113:9 139:7

**refer** 27:12 40:20 43:8,13,15 81:11
90:13

**referencing** 30:15

**registered** 18:2,9 36:4,21 37:11
52:14 91:18

**registrars** 37:8

**registration** 67:7

**regular** 22:19 76:20 124:1

**regularly** 42:13 108:5

**regulations** 47:7

**reject** 70:22 71:6,21 80:8

**rejected** 25:14 56:5 99:15 105:6,7
107:25 108:7,8 109:22 111:10,14,
22 112:8,9 113:23 114:6,22 115:16
118:12 119:11,16 120:5 135:13,19

**rejection** 58:13 71:17 110:3 112:5

**related** 23:19 39:3 53:16 55:6 78:4
129:8 130:15

**relates** 49:8 93:19

**relationship** 90:2

**relying** 11:13

**remember** 19:15,20,24 20:3 44:5
45:14 96:20 103:18

**remind** 79:16,17 80:3 81:23 82:6
83:5,19

**reminder** 79:23

**REMOTE** 1:14,17

**remotely** 1:21

**repeat** 19:18 133:19

**report** 21:19 31:2,17 131:23
132:17 133:7,15,17,20 138:4,10,
16,20

**reported** 1:23 139:19

**reporter** 5:14 8:2,4 11:2,4

**reports** 52:23

**represent** 7:3

**representing** 2:3,15,20 3:3 5:16

**request** 55:21 59:12 63:22 66:21
94:14 97:25 98:13,25 99:6,22
101:24 103:4 123:24 131:25

**requested** 5:11 68:23 86:21
131:19 132:12,14

**requests** 4:10 86:10 123:19
129:15

**require** 93:21

**required** 10:1 35:3 56:8 58:7
109:23 134:18

**requirement** 50:4 68:1

**requirements** 100:9,14

**requires** 21:6

**research** 53:16,20,21 54:25

**resemble** 45:21 81:21 114:25

**resembled** 81:16 82:3,4

**resembles** 45:23

**reserve** 143:8,10

**resident** 90:12

**resigns** 32:3

**resolved** 9:9

**resources** 27:3,10 42:16

**responded** 136:20



RICHARDSON: PERLA LARA

**responding** 86:9

**response** 8:17 87:11 88:1

**responsibilities** 20:8 23:11,19 26:16,17,20 51:11 55:6,15 62:22 63:1

**responsibility** 25:25 26:11,14 56:21

**responsible** 25:21 29:25 30:23 55:19,23 56:4,9,17 94:20

**rest** 41:14

**restroom** 10:9

**retention** 20:11 100:9,14,15,16,21

**retired** 18:22 30:7,12 89:25 102:19

**retirees** 89:18 93:10

**retrieve** 76:15

**return** 61:3 106:6,14 113:13

**returned** 105:24 106:21 113:18

**review** 14:7 16:1 27:16 29:22 42:4 43:12 61:24 66:19 67:3,16 71:9 78:22,23 80:11,14,20 81:9 102:17 122:5 124:24 133:17,20 142:16

**reviewed** 103:15

**reviewing** 78:6 116:17

**revised** 78:11

**Richard** 89:25

**Richardson** 1:3 5:8

**Rights** 2:5 5:12,20 6:16 7:14

**Rodriguez** 23:4

**role** 23:9 25:24 30:18 74:3 76:19 91:7

**role-playing** 38:21,23 39:2

**role-playing-type** 38:14

**room** 10:23 12:7,13 75:8

**Rosalie** 1:3 116:25

**roster** 105:6

**rosters** 93:4 105:5

**RPR** 1:22

**rule** 47:12 61:10

**rules** 1:24 7:23 47:7 48:4

**run** 26:2 33:16 35:21 38:15 48:17 51:20 53:5 95:12,13,20 96:7,10 98:12

**running** 33:20 51:17 57:17 62:23 92:13

**runoff** 98:4,16

**runs** 95:9

**Ryan** 2:4 5:19 7:12 13:12 73:10

**ryan@texascivilrightsproject. org** 2:8

**S**

**S-T-E-V-E-N-S-O-N** 5:25

**safe** 141:16

**Salinas** 114:2,4

**samples** 29:3

**Samuel** 2:10 6:18

**San** 1:2 129:3

**Saturday** 76:13

**scanners** 92:19

**scenarios** 37:20 38:9

**schedule** 100:16,21

**scheduled** 140:23

**school** 16:13 17:7

**schools** 17:6

**screen** 44:14 104:24 110:10

**screenings** 141:13

**scroll** 97:23 100:3 107:6 109:10 111:6 112:2 113:21 123:20 126:5 127:18 131:11 136:15

**seal** 113:14

**sealed** 71:25 136:24 138:22

**search** 89:23

**second-to-the-last** 134:2

**secrecy** 69:23

**secretary** 1:9,12 2:15 3:4 5:9 6:2 7:4 18:8,16,21,22 19:1,11,17,22 20:8,17 21:7,11,18 22:6,10,16,21, 25 23:6,8,16,25 24:12,18 25:20 26:7 27:13 36:1,2,6,17 40:10,24

42:22 45:2 46:15 47:11 48:7 52:13 53:5,7 59:5,7 62:19 64:22 74:3 79:5 103:12 122:15,19 132:18 136:8 143:5

**secretary's** 18:7 24:3,4 97:7

**section** 21:5 42:3 54:15 79:16,20 80:6 81:10 125:7

**sections** 21:11 41:19 50:16 52:20 78:14,24

**security** 141:11

**seek** 136:5

**select** 80:10,18

**selected** 88:2 102:6 126:23 127:1

**seminar** 36:22,24 37:12,19 38:13 41:10 46:20

**seminars** 36:11 44:13 48:8,16

**senate** 41:17

**send** 42:11 56:2 58:12 59:6 63:24 64:2,3,6,8 65:2 66:24 67:20 69:2,6, 10,15 71:18 77:22 78:9 80:17 104:4 108:5,24 109:5 110:19 115:23 120:11 123:7

**sender** 106:6,14 113:19

**sends** 112:8

**sense** 8:6,11,19 9:23 12:20 13:5 31:10 59:21 97:20 109:24

**sentence** 99:7

**separate** 34:16 39:16 57:14,18 76:18 79:19 127:4,13

**September** 19:2 23:7

**serve** 91:14

**served** 77:19 126:16

**serves** 101:5

**Services** 5:16

**session** 44:1,4,8

**sessions** 43:17

**set** 4:9 29:17

**settled** 73:24

**Seventh** 2:12

**shake** 8:5



**share** 28:7 49:5,7,9 88:9,10 89:19

**shared** 94:5

**she'll** 29:22 42:11

**sheet** 64:7

**sheets** 64:16 76:10

**ship** 29:1

**short** 63:14

**shorten** 140:25

**shorter** 141:5

**shorthand** 1:23

**show** 137:22

**showed** 13:15 14:12

**showing** 70:15

**sic** 16:16 18:12 24:20 42:9

**sickness** 62:4 67:11

**sideways** 110:10

**sign** 37:21

**signature** 39:5,9,25 40:1 46:17
55:1 66:2,4,7 79:22,24 80:24 81:8
82:4 83:7,8 85:7 98:22 112:14,19,
20 123:25 124:4 125:11 126:24
129:20 130:17 134:13 136:9

**signature-matching** 45:15 49:18

**signatures** 65:25 79:12 80:1
81:21 93:24 114:8,25 115:3
121:17,24 129:17 130:16 136:22
137:5,8,12 139:20

**signed** 80:25 81:14 98:3 105:8
112:16 114:13 115:5 121:24
139:25

**similar** 26:10 40:3 65:20 84:4,17,
20

**simultaneously** 13:4

**single-member** 33:21,23 57:14

**sit** 122:5 141:19

**sites** 76:14 126:4

**sitting** 10:17 11:10 121:12

**situation** 108:18 135:24 136:6

**situations** 43:2

**skalar@willkie.com** 2:13

**skills** 17:24 98:11 129:7 130:15

**slip** 65:12

**slow** 141:12

**small** 104:22,25 135:1

**socially** 91:8

**someone's** 61:1

**sorted** 11:18 87:4

**SOS** 27:1,2 28:1 36:24 40:16 41:12
42:24 47:1,14 53:12 63:6 91:17
132:3 136:1

**sound** 72:20

**sounds** 55:8

**space** 10:17

**speak** 8:8

**speaks** 122:1

**special** 32:3 129:7 130:15

**specialist** 22:17

**specific** 19:21 24:16 25:4 35:25
39:2 46:16,20 79:11 91:13 132:5
136:17 137:10

**specifically** 16:2 47:9 49:17,18
93:18 102:20 129:19

**specifications** 20:3

**specifics** 19:24 43:1

**spell** 7:17

**spend** 34:23 35:3,6,14 36:13
116:16 120:13 137:20

**spent** 15:22 81:7

**split** 111:10

**spoil** 57:1

**spreadsheet** 70:6,7

**spreadsheets** 61:16 76:11

**staff** 22:6,8,9,11,14,19 28:22,25
29:20,23 30:7 33:3 34:14 36:17,20,
21 37:1,3,24 53:15 54:8,20,24 56:1
66:18 76:22 78:23 107:21 111:24
125:10,13,17

**stamp** 67:19

**stand** 17:9

**standard** 112:7

**start** 7:16 8:19 14:22 18:17 25:4
52:21,22 72:7 93:13 142:10

**started** 88:13 90:1 96:2 139:21

**starting** 16:12,13 93:9

**starts** 52:21 75:21 89:1,2

**state** 1:9,23 2:16 5:9 7:4,17 15:8
17:10 18:7,8 26:7 33:22 34:8
40:10,24 42:22 47:11 64:22 122:20
131:16 132:18

**State's** 27:13 36:6 45:2 48:7 52:13
79:5 122:15

**stated** 1:25 21:14 47:1

**statement** 31:19 35:16

**states** 1:1 68:14

**stationery** 47:25

**statistics** 22:8

**statute** 134:19

**stay** 44:9

**STC** 16:16 17:8,9,11

**stemming** 26:17

**step** 23:17

**step-by-step** 36:12,14 37:22
38:12 39:2 40:13 52:18

**steps** 63:11

**Stevenson** 3:5 5:22,24 10:24
11:16 12:8 26:4 30:4 104:23 141:9,
15 142:3

**stick** 38:22 43:5 44:4

**sticker** 106:5

**sticking** 140:11

**stored** 86:20

**Street** 2:18,23

**stress** 40:4

**stressing** 139:21

**study** 16:25

**sub-elements** 98:12

**subject** 15:5



**submitted** 55:16 61:1

**subsequent** 138:15

**substantive** 16:11

**sued** 7:4

**suggest** 128:7

**suggested** 127:15

**supervise** 22:5

**supervisor** 24:2

**supervisory** 22:17

**supplies** 35:9 64:13 76:9

**suppose** 106:25

**supposed** 83:13,18

**Suriani** 2:11 6:20,21

**SVC** 79:2,18 83:8,10,18,21,23 84:7 124:25 127:4,12,16 128:1

**switch** 47:3 116:1

**sworn** 1:19 6:6 7:6,8

---

**T**

**table** 78:18

**tablet** 70:9

**tablets** 27:9 47:17

**tabs** 12:17

**tagged** 52:20

**takes** 22:23 69:23 97:11

**taking** 10:19 20:12 71:25 139:14

**talk** 8:15 25:3 35:20 47:4 52:1 72:17 75:9 121:23

**talked** 49:22

**talking** 16:5,9 34:2 60:5,7 65:13 74:10 81:7 86:23 125:10,14

**talks** 83:15 121:17

**tally** 76:10

**tapes** 29:9

**tasks** 28:18

**Tawil** 3:5 5:23 6:3 11:11 13:12,19 25:7 26:3 30:3 31:8 35:18 39:11 46:18,23 50:6,21 51:5,12 60:4,9,12

61:8,11 66:15 71:3 72:23 73:10 81:2 93:25 95:4,21 99:10,19 100:23 101:1 103:3,22 114:23 115:6,9,17 117:13,23 118:14,19 119:18 120:3,6 121:25 130:4 133:11 135:16,22 140:15,19 141:17,24 142:14 143:3,4

**TCRP** 6:9

**team** 132:21 133:1,21 136:2 138:12

**TEC** 75:22 78:8

**technical** 9:2,7 17:10 51:8

**TECHNICIAN** 3:12

**tedious** 38:2

**tells** 65:8 80:8 91:17

**temperature** 141:13,20

**ten** 44:9 103:8 141:19

**tend** 49:8

**terms** 15:22

**test** 90:7

**testified** 7:8 15:2 102:11

**testify** 10:1 119:19

**testifying** 10:2

**testimony** 10:5 96:9

**TEXANS** 1:4

**Texas** 1:1,4,5,6,9,12,23 2:5,6,15, 18,24 3:3,7 5:9,11,20 6:15 7:3,13 17:10 18:2,8,9 26:7,13 27:10 36:4, 21 37:11 42:6 46:3 48:8 50:1,5,12, 19 52:14 53:17 54:12 77:8 98:5 99:1,17 100:16 122:15

**text** 44:15,17 45:1 107:10 108:5,24 109:21 110:5

**texted** 107:21 109:14

**texting** 108:1

**thing** 7:25 12:23 15:11 38:14 40:13 41:18 47:14 54:4,20 56:12 77:12 96:24 101:19 129:9

**things** 7:16,24 33:4 35:4,11 37:14 47:9 52:9 97:19 124:24 130:18 133:6

**thinking** 66:22 83:17 109:3 119:2

**thought** 124:24

**three-day** 37:19

**throw** 71:13

**time** 5:5 6:12 8:21 9:3 11:22,25 14:11 19:7 23:7 35:23 38:23 41:4 50:16 53:2 54:2,10 60:21 68:8,10 71:10,12,13,16,22 73:4,7 77:17 81:5 91:5,9 92:12 96:7,9,22 97:4 100:19 101:5,9 106:18 109:4,5 116:17 119:14,17,20 120:1 122:13 133:21 136:21 137:4,8,11,21 139:20 140:24 142:16,23 143:2,6, 10,14

**timely** 56:18,19 71:12 98:3,19

**times** 43:9,24 44:16,23 53:23 59:3 65:15 66:20 80:17 84:21 88:21 103:8 126:2

**timing** 75:13

**TMCCPS** 47:1

**TMCPP** 18:12 24:20

**today** 5:4,15 7:15 9:11,25 10:5,20, 21,22 14:8,12 133:18

**today's** 14:11 15:13

**told** 57:13 69:20 102:21 124:14

**top** 27:23 87:8 94:14 97:24 100:4 107:15

**topic-specific** 43:20

**topics** 43:21

**total** 24:25 111:14,22

**totally** 93:16

**touch** 39:21 42:2 121:21

**tough** 105:14

**towns** 90:25

**train** 27:8 81:20 121:7

**trained** 23:1

**training** 26:22 28:19 29:13 30:9 35:9,21,25 36:12 39:3 41:9,23,24 46:15,21 48:4 69:20 75:6 76:13,19 78:4 79:9,11,14 81:6,7 83:12 121:13 122:9,14 130:15 137:9,13 139:22

**trainings** 26:25 27:5,14,24,25 28:10,12,25 29:18 30:2 36:5,7,10,



13 37:5 40:25 42:20 43:18 46:6
75:10,13,15,18,19 76:21 77:23,25
78:1 80:22 83:6 85:8 92:22 97:14
122:22 129:7 138:18 139:17

**trees**  89:16 91:12

**trial**  143:11

**TRMC**  18:2

**trouble**  11:1 136:22

**Trudy**  1:9 2:20 6:24

**true**  141:17,24

**truthful**  10:5

**truthfully**  10:1

**turn**  62:13

**turned**  128:5

**turns**  36:19

**two-and-a-half-day**  37:18

**two-day**  37:18

**type**  104:25 138:3

**types**  130:18

---

### U

**uh-huh**  8:9 85:25 87:10 110:12
111:23 112:11 132:4 134:16

**unanimous**  81:25 82:2,23 83:4
84:16 137:17,23

**uncomfortable**  82:10,14

**understand**  8:22,23 9:13 10:2
34:24 51:2 82:13 89:12 91:2 93:16

**understanding**  25:5 50:18 51:10
53:24 91:10 101:17 114:21 115:13
117:9 135:4,8

**understood**  33:25 45:12 70:2
73:20 93:16 105:3 127:17 138:8

**uniformly**  108:16 110:3

**UNITED**  1:1

**universally**  58:20

**University**  18:6

**unlocked**  139:3

**unsure**  80:24

**untimely**  71:17

**unusual**  136:18

**up-to-date**  122:9

**uploaded**  122:12

**UT**  16:16,20 17:1,4

---

### V

**Valley**  45:10

**varies**  33:11 38:19

**vein**  26:10

**vendors**  64:24

**verbal**  8:3

**verdict's**  138:1

**verification**  55:2 83:8 123:25
124:5 125:11 126:24 129:20
130:17 134:6,13 136:10

**verify**  62:7 67:8

**version**  122:9

**versus**  5:8 33:19,24 90:19 115:4
127:1

**vet**  89:11

**video**  5:4,10 143:13,15

**videoconference**  2:4,5,10,11,17,
22 3:5,11,12 8:14 10:20

**videos**  28:13

**view**  28:13

**Villarreal**  103:13

**Virginia**  126:18

**visual**  122:20

**vital**  22:7

**volun-**  37:7

**volunteers**  37:4

**vote**  58:2,11,17 59:1,9,10,16,19
61:20 63:12,18 68:12 70:15 74:17
75:20 80:9 81:24,25 82:5,17,23
84:13,14,18,21 91:18 108:11 109:4
135:15,21 137:16,22,25 140:5,7

**voted**  70:11,16

**voter**  37:7 38:25 40:3 45:25 55:24

56:11,16,19,22 57:6,9 58:9 60:1,2,
23 61:5 63:17 66:7,10 69:8 74:23
80:2 81:13,19 90:20 91:17 106:6,
13 107:11 108:1 109:14 117:10,20
118:21 132:14 135:12 139:24

**voters**  1:5 38:24 55:16,20 56:5
64:20 108:5,17

**voters'**  67:6

**votes**  29:9

**voting**  38:7,17 39:8,17 41:24,25
50:20,25 51:3,10 55:12,14 58:3
70:12,23 72:6,18 74:11,14 75:3
76:1,7 77:2 79:4 81:6 83:25 85:5
87:12 88:19 89:1 91:14 112:23
113:3 119:12,25 121:7 122:25
124:16 127:2,6,10 134:6,8 135:6,
13 136:9

---

### W

**wait**  8:16,18 13:9 67:2 74:24 142:2

**waiting**  9:21

**walk**  54:11 63:10 104:21

**wanted**  25:17 35:24 49:25 73:12
98:11 106:2 124:4

**wanting**  108:11 128:21

**warnings**  66:6

**watchers**  122:25

**ways**  21:22

**web**  42:8

**Webex**  13:1

**website**  27:13 40:20 42:14 43:3,6,
9 122:16

**websites**  52:14

**weekly**  133:2

**Weisfeld**  1:3 98:4,16 117:1,6
118:10 119:17 120:1

**Weisfeld's**  119:10

**West**  2:18,23

**WESTERN**  1:1

**white**  29:7

**Willkie**  2:11 6:19,22



**withdraw**  122:3

**WOMEN**  1:5

**wondering**  46:9 102:23,24

**words**  65:21

**work**  13:10 21:25 39:7,10 88:25
  89:4,13 90:17,21 91:12 92:24

**worked**  13:12 14:20 24:15,24
  128:11,14,23,24 129:2,3

**worker**  127:24

**workers**  33:4

**working**  19:6 72:7 88:22,23 90:5
  97:3

**works**  37:14 38:18 56:1

**Wow**  30:20

**write**  115:3

**wrong**  85:13

**wrote**  64:18

---

### Y

**Yahoo**  48:24

**year**  27:3 31:25 32:1,4,5,15 33:10,
  22 36:6,7,9 37:3,17,23,25 38:1
  41:1,3,6 45:20 46:25 57:16 75:16
  90:5 91:20,22 124:21 127:6 133:16
  134:23 137:3

**years**  20:13 30:19 63:18 80:14
  89:20

**yellow**  106:5

**yellow's**  29:7

**Yesenia**  23:4

**York**  2:12

**you-all**  6:11 11:16 108:4 141:18
  142:1

---

### Z

**Zachary**  2:5

**zachary@
texascivilrightsproject.org**  2:8



UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| DR. GEORGE RICHARDSON, ROSALIE WEISFELD, AUSTIN JUSTICE COALITION, COALITION OF TEXANS WITH DISABILITIES, MOVE TEXAS CIVIC FUND, LEAGUE OF WOMEN VOTERS OF TEXAS, and AMERICAN GI FORUM OF TEXAS, INC., | § § § § § § § § | |
| *Plaintiffs* | § § | |
| v. | § § | Civil Case No. 5:19-cv-00963-OLG |
| TEXAS SECRETARY OF STATE, TRUDY HANCOCK, in her official capacity as BRAZOS COUNTY ELECTIONS ADMINISTRATOR, and PERLA LARA in her official capacity as CITY OF MCALLEN, TEXAS SECRETARY, | § § § § § § § | |
| *Defendants*. | § § | |

## PLAINTIFFS' AMENDED NOTICE OF VIDEOTAPED ORAL DEPOSITION OF PERLA LARA

**TO:**  Defendant City of McAllen, Texas City Secretary, by and through her attorneys of record, Isaac Tawil and Austin Stevenson, 1300 Houston Avenue, McAllen, Texas 78501, and C. Robert Heath and Gunnar P. Seaquist, 3711 South MoPac Expressway Building One, Suite 300 Austin, Texas 78746.

PLEASE TAKE NOTICE THAT, pursuant to Federal Rules of Civil Procedure 26 and 30(a)(1), Plaintiffs hereby notice the deposition upon oral examination of **Perla Lara** on **May 14, 2020**, **beginning at 9:30 a.m.** by videoconference. This deposition shall continue from day to day until completed. The oral deposition will be transcribed and recorded by a court reporter and videographer designated by Plaintiffs. Plaintiffs reserve the right to utilize this videotaped deposition at trial in lieu of live testimony, or in addition to live testimony, and/or for any purpose permitted under the Federal Rules of Civil Procedure and Federal Rules of Evidence.

For purposes of this notice and request for production at the deposition:

1.      "City of McAllen" shall refer to the City of McAllen, Texas, and all of its offices and agencies, including the offices or entities of the Early Voting Clerk, the Early Voting Ballot Board, and any Signature Verification Committee.

2.      The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise), including statements, discussions, conversations, correspondence, speeches, meetings, remarks, questions, answers, panel discussions, and symposia, whether written or oral. The term includes, without limitation of generality, both communications and statements which are face-to-face, and those which are transmitted by means of intercom, telephone, television, radio, mail, facsimile, or email/electronic mail.

3.      The term "document" or "documents" includes any recorded form of writing or communication whether it be by paper, film, microfilm, microfiche, computer print-out, reports, records, lists, memoranda, e-mail, correspondence, communications, telegrams, schedules, photographs, drawings, charts, and other forms of tangible and electronic information preservation, including, but not limited to: correspondence, letter, memoranda, electronic mail, telefax, message, note, report, cable, telegram, photograph, film, tape, and all other written communications of every kind and character; note, recording disk, or any other record of oral communication; microfilm; worksheet; schedule; exhibit; demonstrative aid; letter; contract; agreement; diagrams; logs; summaries; printouts; graphs, charts; floppy disks, CDs or DVDs, compilations, tables; publications; manuals; minutes; minute books, diaries; calendars; bank statements; lists; data tapes, audio tapes, video tapes; spreadsheets and any other data compilations from which information can be obtained and translated.

4.      The term "lawsuit" refers to the entire series of interactions, statements, actions, dealings, investigations, documents, correspondence, and communications relating to the allegations and defenses of Plaintiffs and Defendants, including all employees and representatives in this case, Civil Action No. 5:19-cv-00963-OLG in the United States Court for the Western District of Texas, San Antonio Division.

5.      "Local election officials" means any official responsible for the management or operation of elections in any political subdivision of the state of Texas under the Texas Election Code.  For the avoidance of doubt, "local election officials" includes, without limitation, Early Voting Clerks, Election Judges, and officials serving on an Early Voting Ballot Board or Signature Verification Committee.

6.      "Mail-in ballot" means a ballot cast by mail during an election.

7.      "Mail-in ballot application" or "application" means any type of application to vote by mail offered to a voter under the Texas Election Code.

8.      "Texas Secretary of State," "Secretary of State," or "SOS" shall refer to the Texas Secretary of State, and all of its offices and agencies.

This notice will also serve as a request for production to request that Perla Lara bring with her to the deposition the non-privileged documents in her possession listed below. If Ms. Lara claims that some of the responsive materials sought in this notice have been previously produced to Plaintiffs, the witness is expected to be able to identify such materials by Bates numbers.

1.      Any and all documents Ms. Lara reviewed in preparation for this deposition;

2.      Any and all documents, including personal notes, relating to Plaintiffs' allegations in this lawsuit;

3.      Any and all documents related to the mail-in ballot process, the City of McAllen's

obligations under statutes related to mail-in ballots, and any guidance provided on how to comply with statutes related to mail-in ballots;

4.      Any and all documents reflecting the City of McAllen's involvement with mail-in ballots and the mail-in ballot process.

5.      Any and all documents reflecting how the City of McAllen trained local election officials regarding mail-in ballots and the mail-in ballot process;

6.      Any and all communication Ms. Lara sent or received regarding Plaintiffs' allegations in this lawsuit, including:

a.   Any and all communication regarding changes or contemplated changes to guidance on the mail-in ballot process since 2014;

b.   Any and all communication discussing Texas' obligations related to the mail-in ballot statutes;

c.   Any and all communication regarding how the City of McAllen receives, stores, and distributes information about mail-in ballot voters and applicants for mail-in ballots;

d.   Any communication regarding complaints from voters whose mail-in ballots were rejected due to an alleged signature mismatch; and

e.   Any communication related to how local election officials work with the Secretary of State on issues related to mail-in ballots and/or the mail-in ballot process.

Date: April 17, 2020.                                    Respectfully submitted,

                                                        /s/      *Hani Mirza*

                                                        **TEXAS CIVIL RIGHTS PROJECT**

                                                        Mimi M.D. Marziani
                                                        Texas Bar No. 24091906
                                                        mimi@texascivilrightsproject.org
                                                        Rebecca Harrison Stevens

Texas Bar No. 24065381
beth@texascivilrightsproject.org
Hani Mirza
Texas Bar No. 24083512
hani@texascivilrightsproject.org
Ryan V. Cox
Texas Bar No. 24074087
ryan@texascivilrightsproject.org
Zachary D. Dolling
Texas Bar No. 24105809
zachary@texascivilrightsproject.org

1405 Montopolis Drive
Austin, Texas 78741
512-474-5073 (Telephone)
512-474-0726 (Facsimile)

**WILLKIE FARR & GALLAGHER LLP**

Richard Mancino (NY Bar No. 1852797)
Samuel Kalar (NY Bar No. 5360995)
JoAnna Suriani (NY Bar No. 5706395)

787 Seventh Avenue
New York, New York 10019
Telephone: (212) 728-8000
Facsimile: (212) 728-8111
Email: rmancino@willkie.com
        jsuriani@willkie.com

-AND-

Jennifer J. Hardy (TX Bar No. 24096068)
Denis A. Fallon (TX Bar No. 24059731)
Garrett Johnston (TX Bar No. 24087812)
Audra White (TX Bar No. 24098608)

600 Travis Street, Suite 2100
Houston, Texas 77002
Telephone: (713) 510-1700
Facsimile: (713) 510-1799
Email: jhardy2@willkie.com
        afallon@willkie.com
        gjohnston@willkie.com
        awhite@willkie.com

*ATTORNEYS FOR PLAINTIFFS*

## <u>CERTIFICATE OF SERVICE</u>

By my signature below, I certify that a true and correct copy of the foregoing was served on each

Defendant's counsel of record on April 17, 2020 via email.

Dated: April 17, 2020.

By: */s/   Hani Mirza*

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| DR. GEORGE RICHARDSON, ROSALIE WEISFELD, AUSTIN JUSTICE COALITION, COALITION OF TEXANS WITH DISABILITIES, MOVE TEXAS CIVIC FUND, LEAGUE OF WOMEN VOTERS OF TEXAS, and AMERICAN GI FORUM OF TEXAS, INC., | § § § § § § § § | |
| *Plaintiffs* | § § | |
| v. | § § | Civil Case No. 5:19-cv-00963 |
| TEXAS SECRETARY OF STATE, TRUDY HANCOCK, in her official capacity as BRAZOS COUNTY ELECTIONS ADMINISTRATOR, and PERLA LARA in her official capacity as CITY OF MCALLEN, TEXAS SECRETARY, | § § § § § § § | |
| *Defendants.* | § § | |

### DEFENDANT CITY OF MCALLEN'S OBJECTIONS AND ANSWERS TO PLAINTIFFS' FIRST SET OF DISCOVERY REQUESTS

To Plaintiffs: Dr. George Richardson, Rosalie Weisfeld, Austin Justice Coalition, Coalition of Texans with Disabilities, Move Texas Civic Fund, League of Women Voters of Texas, and American GI Forum of Texas, Inc., by and through Plaintiffs' attorneys of record:

**TEXAS CIVIL RIGHTS PROJECT**

Mimi M.D. Marziani
Rebecca Harrison Stevens
Hani Mirza
Ryan V. Cox
Zachary D. Dolling
1405 Montopolis Drive
Austin, Texas 78741
512-474-5073 (Telephone)
512-474-0726 (Facsimile)

**WILLKIE FARR & GALLAGHER LLP**

Richard Mancino
JoAnna Suriani
787 Seventh Avenue
New York, New York 10019
Jennifer J. Hardy
Denis A. Fallon
Garrett Johnston
Audra White
600 Travis Street, Suite 2100
Houston, Texas 77002

1

COMES NOW, DEFENDANT PERLA LARA, IN HER OFFICIAL CAPACITY AS MCALLEN

CITY SECRETARY, and serves her objections, answers, and responses to Plaintiffs' first set of

discovery requests in accordance with the Federal Rules of Civil Procedure.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this instrument was sent to all counsel of record on

this the 6th day of March 2020 via e-mail and DropBox.

/s/ Isaac J. Tawil
Isaac J. Tawil

## DEFENDANT PERLA LARA'S OBJECTIONS AND ANSWERS TO PLAINTIFF
## ROSALIE WEISFELD'S FIRST SET OF INTERROGATORIES

## INTERROGATORY NO. 1.

Identify all persons who you believe have knowledge of relevant facts pertaining to the allegations

in the Complaint and identify with particularity the issues upon which you believe they have

knowledge.

**ANSWER:**      Perla Lara
Early Voting Ballot Board:
Luis Longoria
Ricardo Hinojosa
Ruth Bostick
Fran Heartfield
Ron Tomlinson

## INTERROGATORY NO. 2.

Identify and describe with particularity and give the location of databases, documents,

electronically-stored information, and tangible things relevant to the allegations in the Complaint,

other than those used to support your claims and defenses.

**ANSWER:** None.

## INTERROGATORY NO. 3.

2

Identify and describe the process by which the City of McAllen receives and processes mail-in ballot applications, including the manner and means by which the City of McAllen receives the applications, the names and positions of those individuals who process the applications, if and how applications are stored or otherwise retained, the manner and means by which an application is approved and a ballot is sent to an eligible voter, and whether an applicant's signature is inspected, evaluated, or otherwise verified at the time the applications are processed.

**ANSWER:** As the EV Clerk, I receive applications and my team reviews the following:

-Verify application is delivered to the correct clerk (City Secretary or Hidalgo County Administrator). If it's for Hidalgo County, I forward to the county.

-Verify the registration status

-Verify the residence and mailing address

-Verify request is being made for 1) Outside County, 2) Disability, 3) 65 or older

-Verify if address is different thereafter check for:  1) out of county, 2) voter in jail, 3) voter in hospital, etc.

-Once application has been verified – staff sends balloting material and notes on list that voter was a mailed a ballot and enter information on tablet (ES&S)

**INTERROGATORY NO. 4.**

Identify and describe the process by which the City of McAllen receives and processes mail-in ballots, including the manner and means by which the City of McAllen receives the ballots, the names and positions of those individuals who process the applications, and if and how applications are stored or otherwise retained.

ANSWER: As EV Clerk we received the mail in ballots and do as follows:

-Once application has been verified – staff sends balloting material and notes on list that voter was a mailed a ballot and enter information on election pollbook tablet (ES&S)

-Application is mailed to voter 1) Ballot, 2) Place ballot in Secrecy (white envelope)

-Receive the official ballot in the carrier (yellow envelope)

-Verify the white label (voter information, VUID #, District Number and type of election) then go to pollbook tablet and enter voter as (Voted ABBM)

3

-After all information is verified – carrier (yellow) envelope is placed in Jacket (Gold) envelope and filed under lock and key

## INTERROGATORY NO. 5.

For each election since January 1, 2012, including general elections, primaries, special elections, run-off elections, referenda, and any other election administered by the City of McAllen, identify and describe whether the signature comparison procedure was performed by the City of McAllen's EVBB or, alternatively, whether the Early Voting Clerk established an SVC to conduct the signature comparison procedure during that election cycle.

**ANSWER:** An SVC was established only for the 2017 Mayor/City Commission election.

## INTERROGATORY NO. 6.

Identify and describe with particularity all individuals who have served on the City of McAllen's EVBB or, if applicable, SVC since January 1, 2012, including the position title, job description, and dates each position was held. Within each job description, please specify any duties each member had with regard to the signature comparison procedure, mail-in ballot evaluation and acceptance or rejection, and how long each person had those duties.

4

**ANSWER:** Records from 2012 through 2015 met retention requirements and were destroyed. There is no job description. Human Resources conducts background checks and processes paperwork.

2017 – 1) Judge – Daniel Codina 2) Alternate Judge – Luis Longoria, 3) Clerk Angela Oaks, 4) Virginia Brenneman and 4) Henrietta Guzman

Jan. 2018 May 2018 - 1) Judge – Dan Codina, 2) Alternate Luis Longoria and 3) Clerk – Richard Hinojosa

May 2018 - 1) Judge – Dan Codina, 2) Alternate Judge – Luis Longoria and 3) Clerk – Ricardo Hinojosa

General 2019 - 1) Judge – Luis Longoria 2) Alternate Judge – Ofelia Fernandez, 3) Clerk Noe Salinas and 4) Ron Tomllinson

Run Off Ballot 2019   1) Judge – Luis Longoria 2) Alternate Judge – Ricardo Hinojosa, 3) Clerk Ruth Bostick, 4) Fran Heartfield and 5) Ron Tomllinson

## INTERROGATORY NO. 7.

Identify and describe the process by which the City of McAllen's Early Voting Clerk determines

whether a SVC should be established.

**ANSWER:** EV Clerk has the authority to recommend a Signature Verification Committee and presents information to City Commission for consideration.  Qualifications reviewed are that Judge and clerks are qualified voters and McAllen residents.

## INTERROGATORY NO. 8.

Identify and describe the process by which the City of McAllen's EVBB or, if applicable, SVC

performs the signature comparison procedure, including any steps taken to review the signatures,

any steps taken to verify or authenticate the signature, and whether and how any signature is

compared with any previous signature on file for a voter.

**ANSWER:** Records from 2012 through 2015 met retention requirements and were destroyed. SVC duties are to compare signature on application for mail ballot to carrier (yellow envelope) to confirm signature is that of the voter's.  EBB duties process early voting results for the election and process the provisional ballots.

## INTERROGATORY NO. 9.

Identify and describe with particularity and give the location of any and all documents containing

5

a previous signature on file for a voter used by the City of McAllen's EVBB or, if applicable, SVC

when performing the signature comparison procedure for mail-in ballots since January 1, 2012.

**ANSWER:** Records from 2012 through 2015 met retention requirements and were destroyed. The 2017 Mayor/City Commission election is the only election after 2015 that an SVC was appointed.

### INTERROGATORY NO. 10.

Identify and describe any standards, guidance, or training provided to the City of McAllen's EVBB

or, if applicable, SVC to perform signature comparisons for mail-in ballots, including the

individual or entity who established, administered, or otherwise provided the standards, guidance,

or training.

**ANSWER:** EV Clerk and staff provide group training for Judges, Alt. Judges and EVVB Board. SOS Early Voting Ballot Board Handbook and Texas Election Code Books are distributed to them at trainings.
Procedures and Forms and reviewed at trainings:
1) Qualifying Votes, 2) Provisional Ballots, 3) Cancelling Mail Ballots, 4) Assistance & Curbside Voting, 5) Acceptable Voter ID Lists, 6) Additional Forms, 7) Answer Questions

### INTERROGATORY NO. 11.

Identify and describe with particularity any communications the City of McAllen election officials

and employees have had with the Texas Secretary of State regarding mail-in ballot procedures and

signature comparisons since January 1, 2012, including the specific topic of communication, the

date of the communications, the individuals who participated in the communications, and the

outcome of the communications.

**ANSWER:** Records from 2012 through 2015 met retention requirements and were destroyed. No responsive communication on mail in ballot. Only email dates 1/5/2018 was email from Christina Adkins attaching revised forms to provide to our election / poll workers. Advisory was also issued informing us about updated forms. Regular email advisories are emailed during each election cycle.

### INTERROGATORY NO. 12.

Identify and describe with particularity any and all guidance the Texas Secretary of State provides

or has provided to the City of McAllen and any procedures the Texas Secretary of State implements

6

or has implemented to ensure the City of McAllen's compliance with the Texas Election Code regarding the mail-in ballot process, including the content of the guidance or procedures, why the Texas Secretary of State provided the guidance and implemented the procedures, and the date the guidance or procedures went into effect or otherwise began.

**ANSWER:** EV and staff attend the Secretary of State Annual Election Law Conference, and review the Texas Election Code Edition, Step by Step Book and the Texas Secretary of State Elections Division Website

.**INTERROGATORY NO. 13.**

Identify each person, including their title, areas of responsibility, expertise, and particularized knowledge, with whom you spoke or who provided information used in answering these interrogatories, indicating the number of the interrogatory and its subpart as to each such person.

**ANSWER:** Defendant objects to this request as the information sought is exempt from discovery and protected from disclosure pursuant to the attorney-client privilege. Subject to, and without waiving said objection, the only assistance I received in answering these questions is protected by the attorney-client privileged. No person aside from my attorneys assisted in these responses.

7

**DEFENDANT LARA'S RESPONSES TO PLAINTIFF ROSALIE WEISFELD REQUESTS FOR ADMISSION**

**REQUEST NO. 1:**    Admit that as the City of McAllen, Texas Secretary, Perla Lara serves as the City of McAllen's Early Voting Clerk.

Admit:___X_____          Deny: _____

**REQUEST NO. 2:**    Admit that Ms. Lara is responsible for the administration of joint elections conducted within the City of McAllen with Hidalgo County.

Admit:_____          Deny: _____X_____

**REQUEST NO. 3:**    Admit that Ms. Lara is responsible for the administration of elections conducted within the City of McAllen that are independent from elections conducted by Hidalgo County.

Admit:_____X_____          Deny: _____

**REQUEST NO. 4:**    Admit that Ms. Lara is responsible for ensuring the City of McAllen's compliance with the Texas Election Code.

Admit:___X____    Deny: _____

**REQUEST NO. 5:**    Admit that Ms. Weisfeld applied for a mail-in ballot on June 22, 2019 for the 2019 city run-off election due to her eligibility as a voter who would be out of the county during the early voting period and on Election Day.

Admit:_____X_____          Deny: _____

8

**REQUEST NO. 6:**     Admit that the City of McAllen received a signed and timely mailed 2019 city run-off election ballot from Ms. Weisfeld in compliance with the Texas Election Code.

Admit:_____          Deny: _____X_____

**REQUEST NO. 7:**     Admit that Ms. Weisfeld's 2019 city run-off election ballot was rejected because of a signature mismatch.

Admit:___X___     Deny: _____

**REQUEST NO. 8:**     Admit that the City of McAllen sent Ms. Weisfeld a letter approximately ten days after the 2019 city run-off election notifying her that her ballot was rejected because of a signature mismatch.

Admit:_____X_____          Deny: _____

**REQUEST NO. 9:**     Admit that Ms. Weisfeld was not notified prior to the completion of the 2019 city run-off election that her ballot had been rejected because of a signature mismatch.

Admit:_____X_____          Deny: _____

**REQUEST NO. 10:**     Admit that Ms. Lara is responsible for overseeing the administration of any Early Voting Ballot Board and, if applicable, any Signature Verification Committee operating in the City of McAllen.

Defendant cannot admit or deny. Defendant objects to the question as overbroad and vague, specifically Defendant is unable to ascertain what Plaintiff considers "administration."

9

**REQUEST NO. 11:**   Admit that an EVBB or SVC, if applicable, performs  Signature Verification Procedures for all mail-in ballots cast in City of McAllen elections.

Admit:_____X_____          Deny: _____

**REQUEST NO. 12:**   Admit that the only statutory guidance for an EVBB or, if applicable, SVC performing Signature Verification Procedures in the City of McAllen is stated in Texas Election Code Section 87.027(i).

Defendant cannot admit or deny as the request calls for a legal conclusion and is improper.

**REQUEST NO. 13:**   Admit that the City of McAllen does not establish or administer other standards or guidance to perform mail-in-ballot voting signature comparisons or to otherwise determine that a ballot should be accepted or rejected on the basis of signature mismatch.

Defendant cannot admit deny. Defendant objects to the request as overbroad and vague, specifically, Defendant is unable to ascertain what "other" references.

### DEFENDANT LARA'S RESPONSES TO PLAINTIFF AUSTIN JUSTICE COALITION REQUESTS FOR ADMISSION

**REQUEST NO. 1:**   Admit that since January 1, 2012, the City of McAllen has received  mail-in ballot applications in which an applicant selected "Confinement in jail" in Box #5 of the application.

Admit:_____          Deny: _____X_____

### DEFENDANT LARA'S RESPONSES TO PLAINTIFF COALITION OF TEXANS WITH DISABILITIES REQUESTS FOR ADMISSION

**REQUEST NO. 1:**   Admit that since January 1, 2012, the City of McAllen has received  mail-in ballot applications in which an applicant selected "Disability" in Box #5 of the application.

Admit:_____X_____          Deny: _____

## DEFENDANT LARA'S RESPONSES TO PLAINTIFF MOVE TEXAS CIVIC FUND REQUESTS FOR ADMISSION

**REQUEST NO. 1:**      Admit that since January 1, 2012, the City of McAllen has received  mail-in ballot applications in which an applicant selected "expected absence from the county" in Box #5 of the application.

Admit:_____X_____          Deny: _____

## DEFENDANT LARA'S RESPONSES TO PLAINTIFF LEAGUE OF WOMEN VOTERS OF TEXAS REQUESTS FOR ADMISSION

**REQUEST NO. 1:**      Admit that since January 1, 2012, the City of McAllen has received  mail-in ballot applications in which an applicant selected "65 years of age or older" in Box #5 of the application.

Admit:_____X_____          Deny: _____

11

## DEFENDANT LARA'S OBJECTIONS AND RESPONSES
## TO REQUESTS FOR PRODUCTION

**REQUEST NO. 1.**        Provide all data since January 1, 2012, broken down by election cycle, sufficient to show:

      (a)        The number of mail-in ballot applications received by the City of McAllen;

      (b)        The number of mail-in ballots sent by the City of McAllen to voters; and

      (c)         The number of mail-in ballot applications rejected by the City of McAllen.

**RESPONSE:** Defendant objects to the request as overbroad and vague, specifically as to "all data." Subject to, and without waiving said objections, please see:

(a) Exhibits A, D, F, G, H, I, K and M

(b) Exhibits D, F, H, I, K, and M

(c) Exhibits E, G, J, L and N

**REQUEST NO. 2.**        Provide all data since January 1, 2012, broken down by election cycle, sufficient to show:

      (a)        The number of mail-in ballot applications received by the City of McAllen in which an applicant selected "65 years of age or older" in Box #5 of the application;

      (b)        The number of mail-in ballot applications received by the City of McAllen in which an applicant selected "Disability" in Box #5 of the application;

      (c)        The number of mail-in ballot applications received by the City of McAllen in which an applicant selected "Expected absence from the county" in Box #5 of the application; and

      (d)        The number of mail-in ballot applications received by the City of McAllen in which an applicant selected "Confinement in jail" in Box #5 of the application.

**RESPONSE:** The Defendant objects to the requests as the information sought is not relevant to the causes of action alleged against this Defendant and are not likely to lead to admissible evidence.

Subject to, and without waiving said objections, see Exhibits D-N.

12

**REQUEST NO. 3.**     Provide all data since January 1, 2012, broken down by election

cycle, sufficient to show:

(a)     The number of mail-in ballots sent by the City of McAllen to voters who selected "65 years of age or older" in Box #5 of their mail-in ballot application;

(b)     The number of mail-in ballots sent by the City of McAllen to voters who selected "Disability" in Box #5 of their mail-in ballot application;

(c)     The number of mail-in ballots sent by the City of McAllen to voters who selected "Expected absence from the county" in Box #5 of their mail-in ballot application; and

(d)     The number of mail-in ballots sent by the City of McAllen to voters who selected "Confinement in jail" in Box #5 of their mail-in ballot application.

**RESPONSE:** The Defendant objects to the requests as the information sought is not relevant to the causes of action alleged against this Defendant and are not likely to lead to admissible evidence.

Subject to, and without waiving said objections, see Exhibits D-N.

**REQUEST NO. 4.**     Provide all data since January 1, 2012, broken down by election

cycle, sufficient to show:

(a)     The number of mail-in ballots received by the City of McAllen;

(b)     The number of mail-in ballots approved and counted by the City of McAllen;

(c)     The number of mail-in ballots rejected by the City of McAllen; and

(d)     The number of mail-in ballots rejected by the City of McAllen for failure to satisfy the City's mail-in ballot signature comparison requirements.

**RESPONSE:**

The Defendant objects to the requests as the information sought is not relevant to the causes of action alleged against this Defendant and are not likely to lead to admissible evidence.

Subject to, and without waiving said objections, see Exhibits D-N.

13

**REQUEST NO. 5.**     Provide all data since January 1, 2012, broken down by election cycle, sufficient to show:

    (a)    The number of voters sent or provided a notice of rejection by the City of McAllen stating that their mail-in ballot had been rejected; and

    (b)    The number of voters sent or provided a notice of rejection by the City of McAllen stating that their mail-in ballot had been rejected for signature mismatch.

**RESPONSE:** Please see response to request for production number one.

**REQUEST NO. 6.**     Documents and communications concerning procedures for processing mail-in ballot applications in the City of McAllen.

**RESPONSE:** Defendant objects to the request as some of the information sought is protected by the attorney-client privilege. Subject to, and without waiving said objection, please see Exhibits O through R.

**REQUEST NO. 7.**     Documents and communications concerning all individuals, including but not limited to Rosalie Weisfield, who submitted a mail-in ballot to the City of McAllen since January 1, 2012, but whose mail-in ballot was rejected.

**RESPONSE:** Please see response to request for production number one.

**REQUEST NO. 8.**     Documents sufficient to show the signatures that were compared for each mail-in ballot voter whose mail-in ballot was rejected for signature mismatch.

**RESPONSE:** Please see response to request for production number one.

**REQUEST NO. 9.**     Documents and communications concerning or demonstrating the reason(s) given for the determination made for each City of McAllen voter whose mail-in ballot was rejected for signature mismatch.

**RESPONSE:** Please see response to request for production number one.

**REQUEST NO. 10.**     Documents and communications kept on file with the county clerk

14

or voter registrar which contain signatures used by the City of McAllen to compare signatures.

**RESPONSE:** None

**REQUEST NO. 11.**   Documents and communications concerning and describing the process or actions taken to keep voter signatures on file with the county clerk or voter registrar by the City of McAllen.

**RESPONSE:** None

**REQUEST NO. 12.**   Documents and communications concerning procedures for choosing members of the EVBB in the City of McAllen.

**RESPONSE:** Please see Exhibit T.

**REQUEST NO. 13.**   Documents and communications concerning procedures for establishing a SVC in the City of McAllen.

**RESPONSE:** Please see Exhibit S.

**REQUEST NO. 14.**   Documents and communications detailing the election cycles during which the City of McAllen established an SVC for the purposes of performing signature comparisons for mail-in ballots.

**RESPONSE:** Please see Exhibit S.

**REQUEST NO. 15.**   Documents and communications concerning procedures for choosing members of an SVC in the City of McAllen.

**RESPONSE:** Please see Exhibit S.

**REQUEST NO. 16.**   Documents and communications identifying the names of and contact information for each person who served as a member of an EVBB or SVC in the City of McAllen, broken down by election cycle.

**RESPONSE:** Please see Exhibit S.

15

**REQUEST NO. 17.**     Documents and communications related to auditing for errors or otherwise reviewing ballots rejected by an EVBB or SVC for signature mismatch.

**RESPONSE:** None

**REQUEST NO. 18.**     All training or guidance materials provided or presentations made to the City of McAllen employees, EVBB officials, and/or SVC officials concerning signature comparisons for mail-in ballots since January 1, 2012.

**RESPONSE:** Please see Exhibits O through R.

**REQUEST NO. 19.**     Documents and communications concerning the City of McAllen's practices, policies, directives, guidelines, instructions, advisories, operating manuals, procedural manuals, and/or user manual forms or rules that are or were in place since January 1, 2012 related to comparing signatures for mail-in ballots.

**RESPONSE:** Please see Exhibits O through R.

**REQUEST NO. 20.**     Documents and communications related to policies, practices, and procedures employed by City of McAllen EVBB officials when comparing signatures for mail-in ballots.

**RESPONSE:** Please see Exhibits O through R.

**REQUEST NO. 21.**     Documents and communications related to policies, practices, and procedures employed by City of McAllen SVC officials when comparing signatures for mail-in ballots.

**RESPONSE:** Please see Exhibits O through R.

**REQUEST NO. 22.**     Documents and communications related to policies, practices, and procedures employed by other City of McAllen officials, including the Early Voting Clerk and other election officials, when comparing signatures for mail-in ballots.

**RESPONSE:** None

16

**REQUEST NO. 23.**     Documents and communications concerning the handwriting expertise of City of McAllen EVBB officials.

**RESPONSE:** None

**REQUEST NO. 24.**     Documents and communications concerning the handwriting expertise of City of McAllen SVC officials.

**RESPONSE:** None

**REQUEST NO. 25.**     Documents and communications concerning the handwriting expertise of the Early Voting Clerk and other election officials.

**RESPONSE:** None

**REQUEST NO. 26.**     Any reports, analyses, or data compilations regarding compliance

with mail-in ballot procedures or Texas Election Code Section 87.027.

**RESPONSE:** None

**REQUEST NO. 27.**     Documents and communications relating to any issues, concerns,

or problems with signature comparisons for mail-in ballots since January 1, 2012.

**RESPONSE:** None

**REQUEST NO. 28.**     Documents and communications related to procedures for collecting and addressing mail-in ballot voter complaints since January 1, 2012.

**RESPONSE:** None.

**REQUEST NO. 29.**     Documents and communications identifying all mail-in ballot applicants who made complaints to the City of McAllen concerning ballot rejection due to signature mismatch since January 1, 2012.

17

**RESPONSE:** Please see Exhibit W.

**REQUEST NO. 30.**    Documents and communications related to any actions taken by the City of McAllen in response to complaints from mail-in ballot applicants concerning ballot rejection due to signature mismatch since January 1, 2012.

**RESPONSE:** Please see Exhibit X.

**REQUEST NO. 31.**    Documents and communications related to the City of McAllen's efforts to inform potential voters around the City about mail-in ballot procedures.

**RESPONSE:** Please see Exhibit U.

**REQUEST NO. 32.**    Documents and communications related to the City of McAllen's efforts to inform potential voters around the City about signature comparison requirements.

**RESPONSE:** None

**REQUEST NO. 33.** Documents and communications related to any conversations or coordination between the City of McAllen and the Texas Secretary of State regarding mail-in ballot procedures.

**RESPONSE:** Please see Exhibits R and V.

**REQUEST NO. 34.**    Documents and communications related to any conversations or coordination between the City of McAllen and the Texas Secretary of State regarding signature comparison requirements.

**RESPONSE:** Please see Exhibits O, P, Q, R and V.

**REQUEST NO. 35.**    Any documents Defendant the City of McAllen has identified in her initial disclosures, any supplemental disclosures, or intends to introduce into evidence at any stage in this proceeding.

18

**RESPONSE:** Defendant objects to the request as a fishing an expedition and an attempt to require Defendant to marshal its evidence. Defendant will abide by any pre-trial order issued by the Court regarding exhibits. Subject to, and without waiving said objections, please see all of the exhibits attached hereto.

19

# EXHIBIT E

## ROSTER FOR EARLY VOTING BY MAIL FOR - May 4, 2019 GENERAL ELECTION DISTRICT

| DATE ABBM REC'D | DATE BALLOT MAILED | VUID# | DIST.# | NAME | ADDRESS | CITY | STATE | ZIP | MAIL TO ADDRESS | DATE BALLOT REC'D |
|---|---|---|---|---|---|---|---|---|---|---|
| 3/6/19 | 3/21/19 | 1055312987 | 5 | Alaniz, Ana Maria | 412 N. 16th St. | McAllen | TX | 78501 | same | 3/25/19 |
| 3/6/19 | 3/21/19 | 1031168406 | 5 | Cantu, Olga | 417 N. 16th St. | McAllen | TX | 78501 | same | 3/25/19 |
| 3/27/19 | 3/28/19 | 2148151167 | 5 | Esger, Jack A. | 1309 Westway Ave. | McAllen | TX | 78501 | 650 River Rd. # 5209, San Marcos, TX 78666 | Ret. 4/8/19 |
| 3/29/19 | 3/29/19 | 1206430689 | 5 | Goolsby, Julia B. | 1600 Hibiscus Ave. | McAllen | TX | 78501 | Calle Del Doctor Esquerdo, 128 6H Madrid, Spain 28007 | 4/11/19 |
| 4/3/19 | 4/3/19 | 1173766404 | 5 | Weisfeld-Hinojosa, Johnathan S. | 4801 N. 16th St. | McAllen | TX | 78504 | 11539 Hubener Rd. Apt. 3236 San Antonio, TX 78230 | 4/15/19 |
| 4/3/19 | 4/3/19 | 1054678350 | 5 | Weisfeld, Rosalie | 4801 N. 16th St. | McAllen | TX | 78504 | 9206 Cliffwood Drive Houston, TX 77096 | 4/22/19 |
| 4/15/19 | 4/16/19 | 2129521060 | 5 | Wright, Mary F. | 1213 W. Esperanza | McAllen | TX | 78501 | 800 Lancaster Ave. # 1993 Villanova, PA 19085 | 4/29/19 |
| 4/17/19 | 4/18/19 | 1053382950 | 4 | Garza, Oscar A. | 218 S. 25th St. | McAllen | TX | 78501 | same | 4/26/19 |
| 4/17/19 | 4/18/19 | 1053802675 | 4 | Garza, Olga | 219 S. 25th St. | McAllen | TX | 78501 | same | 4/27/19 |
| 4/18/19 | 4/18/19 | 1054055218 | 4 | Garza, Guadalupe Trevino | 2412 Daytona Ave | McAllen | TX | 78503 | same | 4/23/19 |
| 4/18/19 | 4/18/19 | 1053347790 | 4 | Garza, Pera M. | 2412 Daytona Ave | McAllen | TX | 78503 | same | 4/24/19 |
| 4/18/19 | 4/18/19 | 1054749957 | 4 | Salinas, Rosaura | 2309 S. 45th St. | McAllen | TX | 78503 | same | 4/24/19 |
| 4/18/19 | 4/18/19 | 1053668794 | 4 | Tellez, Guadalupe Pedro | 517 S. 29th St. | McAllen | TX | 78501 | same | 5/3/19 |
| 4/18/19 | 4/18/19 | 1053174137 | 4 | Rangel, George Loya | 109 S. 35th St. | McAllen | TX | 78501 | same | 4/26/19 |
| 4/22/19 | 4/23/19 | 1055147261 | 4 | Canino, Linda Lee | 3101 Jordan Ave # 0-42 | McAllen | TX | 78503 | same | 4/26/19 |
| 4/22/19 | 4/23/19 | 1210670869 | 4 | Vega, Josefina Ibarra | 2101 S. 26 1/2 St. | McAllen | TX | 78503 | same | 4/26/19 |
| 4/22/19 | 4/23/19 | 1053668787 | 4 | Tellez, Juanita Losoya | 517 S. 29th St. | McAllen | TX | 78501 | same | 5/3/19 |
| 4/22/19 | 4/23/19 | 1054284513 | 4 | Tijerina, Felipe Jr. | 3101 Jordan Ave # 1-34 | McAllen | TX | 78503 | same | |
| 4/22/19 | 4/23/19 | 1055930013 | 4 | Hernandez, Juanita Vidal | 5404 S. 28th St. | McAllen | TX | 78503 | same | 4/26/19 |
| 4/22/19 | 4/23/19 | 1053576015 | 4 | Gonzalez, Nabor Solis | 2541 Mobile St. | McAllen | TX | 78501 | same | 4/30/19 |
| 4/22/19 | 4/23/19 | 1146782491 | 4 | De La Cruz, Irma | 2421 Dalia Ave. | McAllen | TX | 78501 | same | 4/29/19 |
| 4/22/19 | 4/23/19 | 1054615988 | 4 | Gonzalez, Teresa | 2541 Mobile Ave. | McAllen | TX | 78501 | same | 4/30/19 |
| 4/22/19 | 4/23/19 | 1055539655 | 4 | Deanda, Jose | 2505 Kennedy Ave. | McAllen | TX | 78501 | same | 4/27/19 |
| 4/22/19 | 4/23/19 | 1055186720 | 4 | Guzman, Eva | 3101 Jordan Ave. Apt 127 | McAllen | TX | 78503 | same | 4/29/19 |
| 4/22/19 | 4/23/19 | 1055079747 | 5 | Guzman, Lictor | 3101 Jordan Ave. # J-77 | McAllen | TX | 78503 | same | 4/29/19 |
| 4/22/19 | 4/23/19 | 1053076582 | 5 | Moffitt, Mary K. | 1601 Marigold | McAllen | TX | 78501 | same | 5/2/19 |
| 4/23/19 | 4/23/19 | 1055568014 | 4 | Rodriguez, Agustin H. | 3501 W. Agusta Ave | McAllen | TX | 78503 | same | 4/30/19 |
| 4/23/19 | 4/23/19 | 1053339573 | 4 | Cervantes, Maria Elena | 2013 Cortez Ave | McAllen | TX | 78503 | same | 4/27/19 |

Color Key:
Green: Received
Returned Mail

*Note: Ballot will be mailed at figure. Polls 4/10/19

*Note: Per phone call 4/29, Ballot retrieved prior to mail-out, updated pollbook status. Citizen voted on-site 4/25.

# REJECTED APPLICATIONS ROSTER FOR EARLY VOTING BY MAIL FOR - May 4, 2019 GENERAL ELECTION DISTRICT

| | DATE REC.D | DATE ABBM LETTER MAILED | VUID# | DIST.# | NAME | ADDRESS | CITY | STATE | ZIP | REASON FOR REJECTION |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 3/5/2019 | 4/25/2019 | 1054524579 | 3 | Fetters, Agnes | 2305 N. 36th St. | McAllen | TX | 78501 | Voter in district # 3, no election in this district |
| 2 | 3/5/2019 | 4/25/2019 | 1054552861 | 3 | Fetters, Rodger | 2305 N. 36th St. | McAllen | TX | 78501 | Voter in district # 3, no election in this district |
| | | Per Perla, letter not rqd. (applicant notified via txt) | 1055526119 | 4 | Garza, Noelia | | McAllen | TX | 78503 | Voter couldn't provide forwarding address |
| 3 | 3/15/2019 | | 1055526119 | | | 4813 S. 30th St. | | | | |
| 4 | 3/20/2019 | 4/25/2019 | 1053942135 | 1 | Hernandez, Aurora N. | 2100 Rice Ave. | McAllen | TX | 78504 | Voter in district # 1, no election in this district |
| 5 | 4/24/2019 | 4/25/2019 | 1055253616 | 4 | Almanza, Erasmo Grandos | 3218 Daytona Ave. | McAllen | TX | 78503 | Application received after deadline |
| 6 | 4/24/2019 | 4/25/2019 | 1054654124 | 4 | Reyna, Maria Idalia | 21215 S. 33rd St. | McAllen | TX | 78503 | Application received after deadline |
| 7 | 4/24/2019 | 4/25/2019 | 1053773106 | 4 | Sanchez, Welester | 716 S. 25 1/2 St. E | McAllen | TX | 78501 | Application received after deadline |
| 8 | 4/24/2019 | 4/25/2019 | 1053647239 | 4 | Morales, Alfredo | 700 S. 25 1/2 St. E | McAllen | TX | 78501 | Application received after deadline |
| 9 | 4/24/2019 | 4/25/2019 | 1055506889 | 4 | Sanchez, Blanca Cavazos | 716 S. 25 1/2 St. E | McAllen | TX | 78501 | Application received after deadline |
| 10 | 4/24/2019 | 4/25/2019 | 1054213929 | 4 | Almanza, Jovita Garza | 3218 Daytona Ave. | McAllen | TX | 78503 | Application received after deadline |
| 11 | 4/25/2019 | 4/26/2019 | 1054086061 | 4 | Arellano, Yolanda | 1405 Savannah Ave. | McAllen | TX | 78503 | Application received after deadline |
| 12 | 4/26/2019 | 4/26/2019 | 1156446563 | 1 | DePagter, Allen E. | 4704 N. 6th St. | McAllen | TX | 78504 | Application received after deadline |
| 13 | 4/27/2019 | 4/29/2019 | 1054403879 | 4 | Sanchez, Maria De La Luz | 2812 Uvalde Ave | McAllen | TX | 78503 | Application received after deadline |
| 14 | 4/27/2019 | 4/29/2019 | 1053736634 | 4 | Aguilar, Maria G. | 2036 Cortez Ave. | McAllen | TX | 78503 | Application received after deadline |
| 15 | 4/27/2019 | 4/29/2019 | 2132622614 | 1 | De Pagter, Maria A. | 4704 N. 6th St. | McAllen | TX | 78504 | Application received after deadline |
| 16 | 5/1/2019 | 5/1/2019 | 1053666985 | 4 | Arellano, Areopajita | 1405 Savannah Ave. | McAllen | TX | 78503 | Application received after deadline |

AWS-42
Prescribed by Secretary of State
Sec. 87.0431, Texas Election Code
3/07

## NOTICE OF REJECTED BALLOT

This is to serve as notice that your ballot for the ___May 4, 2019___ Election was rejected by the early voting ballot board and was not counted.

Name of Voter ___RODRIGUEZ, Agustin H.___
VUID Number ___1053682014___

Reason for Rejection: (Check As Appropriate)

_____ 1) Certificate on carrier envelope was not properly executed.
        _____ You failed to sign your signature or make your mark.
        _____ The witness failed to indicate on the envelope that you could not make a mark.
        _____ The assistant or witness failed to print their name.
        _____ The assistant or witness failed to sign their name.
        _____ The residence address of the assistant or witness was not given.

___✓___ 2) It was determined that the signature on the application for ballot by mail and carrier envelope was not signed by the same person.

_____ 3) Application for ballot by mail did not state a legal ground for voting by mail.

_____ 4) Voter registration records indicated you did not have an effective registration for this election.

_____ 5) Address to which ballot was mailed was not outside the county. Voting early by mail due to expected absence from the county requires balloting materials be mailed to an address outside the county.

_____ 6) The residence address on the statement of residence is not located in the political subdivision conducting the election.

_____ 7) The mailing address on the application for ballot by mail did not match your voter registration address nor did the mailing address match any addresses provided on your statement of residence. Since you did not indicate on your application for a ballot by mail that you were having your ballot mailed to a hospital, retirement center, long term care facility, nursing home, jail, or a relative, your ballot was rejected.

_____ 8) The statement of residence was not included in the carrier envelope.

_____ 9) No identification was included with your mail ballot.

_____ 10) Other: .

_____
Signature of Early Voting Ballot Board Judge

___May 4, 2019___
Date

AW5-42
Requerido por el Secretario de Estado
Frac. 87.0431, Código Electoral
3/07

## AVISO DEL RECHAZO DE UNA PAPELETA ELECTORAL

Por medio de éste se le notifica que la papeleta electoral que usted entregó en las elecciones 4 de mayo de 2019 fue rechazada por el Consejo de Votación por Adelantado y no fue incluido en el conteo final.

Nombre del elector _Rodriguez, Agustin H._

VUID de inscripción electoral número _105 368 2014_

La razón del rechazo fue (a continuación indique las razones):

1) La constancia que aparece en el sobre de entrega no se firmó en forma apropiada.
   ___ Le falta su firma o marca.
   ___ El testigo no anotó en el sobre que Ud. no puede hacer su marca.
   ___ Falta el nombre del testigo o la persona quien le ayudó en letras de molde.
   ___ Falta la firma del testigo o de la persona quien le ayudó votar.
   ___ Falta el domicilio del testigo o el de la persona quien le ayudó votar.

✓ 2) Un análisis de las firmas que aparecen en la solicitud de una papeleta postal y el sobre de entrega indica que éstas no son la letra de la misma persona.

3) De acuerdo a la ley, la razón dada en la solicitud de una papeleta postal no lo califica para poder votar por correo.

4) Las actas del registro electoral indican que en la fecha en que celebraron estas elecciones, usted no estaba inscrito como votante.

5) El domicilio al cual se envió la papeleta está ubicado dentro de este condado. Sólo aquellas personas que anticipan estar fuera del condado pueden votar por anticipado y por correo, por esta razón la papeleta electorales se tiene que enviar a un domicilio ubicado fuera del condado.

6) El domicilio indicado en la solicitud de una papeleta postal no queda dentro del área geográfica de la entidad política que efectúa estas elecciones.

7) El domicilio indicado en la solicitud de una papeleta postal no es igual al indicado en: la constancia de domicilio permanente ni su inscripción electoral ni es la dirección postal indicada en su solicitud de inscripción. Además, usted no indicó que su papeleta debería enviarse a un hospital, centro de jubilación, centro de cuidados médicos a largo plazo, centro de enfermería o el hogar de algún familiar.

8) La constancia de domicilio permanente no vino incluida en el sobre de entrega.

9) No incluyó ninguna identificación con su boleta por correo.

10) Otra: _____

Firma del Juez del Consejo Administrativo de las Papeletas de Votación por Adelantado

4 de mayo de 2019
Fecha

**Instructions:** This envelope must be sealed and signed by the voter before it leaves the voter's hands. Do not sign this envelope unless the ballot has been marked by you or at your direction. This carrier envelope may not be used to return more than one voter's ballot. For instructions on the methods and deadlines to deliver this carrier envelope, see the "Information About Returning your Carrier Envelope" included with the materials sent to you with your ballot. (Instrucciones al Votante: Selle este sobre y después firme suf nombre en el espacio proporcionado abajo. Este sobre debe de ser sellado y firmado por el votante antes de que el votante lo entregue. No firme este sobre a menos de que la boleta haya sido llenada por usted o bajo su dirección. Este sobre de envio no debe ser utilizado para entregar la boleta de más de un solo votante. Para obtener instrucciones sobre los métodos y plazos para entregar este sobre de envío, vea la "Información Sobre Cómo Devolver su Sobre de Envío," incluido con los materiales enviados a usted con su boleta.)

I certify that the enclosed ballot expresses my wishes independent of any dictation or undue persuasion by any person. (Certifico que la boleta adjunta expresa mis deseos independientemente de ningún dictado o persuasión indebida por parte de cualquier persona.)

## SEAL ENVELOPE AND SIGN OVER SEALED FLAP
## (SELLE EL SOBRE Y FIRME ENCIMA DE SOLAPA DEL SOBRE)

X _Aquilina N. Rodriguez_

**SIGNATURE OR MARK OF VOTER (FIRMA O MARCA DEL VOTANTE)**

**Oath of Person Assisting Voter:** I swear (or affirm) that I will not suggest, by word, sign, or gesture, how the voter should vote; I will confine my assistance to answering the voter's questions; to stating propositions on the ballot; and to naming candidates and, if listed, their political parties; I will prepare the voter's ballot as the voter directs; and I am not the voter's employer, an agent of the voter's employer, or an officer or agent of a labor union to which the voter belongs. (Juramento de la Persona Asistiendo al Votante: Juro (o afirmo) que no sugeriré con palabras, señales, o gestos, la manera en la cual el votante debe votar; limitaré mi asistencia a responder las preguntas del votante, leer propuestas en la boleta, nombrar a los candidatos, y si es mencionado, su partido político; preparare la boleta del votante de acuerdo a sus instrucciones; y yo no soy el empleador del votante, un agente del empleador del votante, o un oficial o agente de un sindicato al cual el votante pertenece.)

**Instructions to Assistant:** A voter may only be assisted with reading or marking the ballot if they have a physical disability that renders them unable to write or read, or have an inability to read the language in which the ballot is written. If you are assisting the voter, you must read the oath and complete the section below, before assisting the voter. (Instrucciones al Asistente: Un votante puede recibir ayuda para leer o llenar la boleta solamente si el votante tiene una discapacidad física la cual le impide escribir o ver, o si no tiene la habilidad de leer el lenguaje en el cual la boleta está escrita. Si usted le proporciona ayuda a un votante, usted debe leer el juramento y llenar la siguiente sección abajo, antes de asistir al votante.)

**Instructions to Witness:** You are serving as a witness for _____ (name of voter). You must complete the section below if you witness the mark of the voter, or if the voter cannot make a mark. If the voter cannot make a mark, check here _____ (Instrucciones al Testigo: Usted está fungiendo como testigo para _____ (nombre del votante). Usted debe llenar la siguiente sección abajo si usted fue testigo de que el votante firmó, o de que el votante no puede firmar. Si el votante no puede firmar, marque sus iniciales aquí _____.)

**Instructions to Person Depositing Carrier Envelope in Mail or to Common or Contract Carrier:** If you are assisting a voter by depositing the carrier envelope in the mail or with a common or contract carrier, you must complete the section below. (Instrucciones a la Persona Quien Deposita el Sobre de Envío en el Correo o Entregan al Transportista Público o Comercial: Si usted asiste a votante a depositar el sobre de envío en el correo o con un transportista público o comercial, usted debe llenar la sección que aparece abajo.)

If you are an assistant or witness, check the appropriate box below and provide information: (Si usted es un asistente o testigo, marque la casilla correcta y proporcione su información):

☐ Assistant
☐ Asistente
☐ Witness/
☐ Testigo

☐ Assistant/
☐ Asistente
☐ Witness/
☐ Testigo

Completed by Early Voting Clerk: Name of Election (Nombre de Elección): **General Election**

| Name of Voter (Nombre del votante): | | | |
| --- | --- | --- | --- |
| | Signature (Firma) | Printed Name (Nombre impreso) | Street Address (Domicilio residencial) |
| | Signature (Firma) | Printed Name (Nombre impreso) | Street Address (Domicilio residencial) |

Date of Election (Fecha de Elección): _Nov. 4, 2019_



Rodriguez, Agustin H.
VUID# 1053682014 SMD#4
May 4, 2019
General Election

OFFICIAL ELECTION MAIL
Authorized by the U.S. Postal Service

RECEIVED
APR 30 2019

CARRIER ENVELOPE FOR EARLY VOTING BALLOT
(SOBRE DE ENVÍO PARA LA BOLETA DE VOTACIÓN ANTICIPADA)

Perla Lara, City Secretary
Early Voting Clerk (Secretario de Votación Anticipada)

P.O. Box 220/1300 Houston Ave
Mailing Address (Dirección Postal)

McAllen, Texas 78505-0220
City (Ciudad)                      Zip (Código Postal)

**WARNING:** (1) Knowingly possessing another person's ballot or carrier envelope may be a crime unless you provide your signature, printed name and address (2) A person commits an offense if the person compensates another person or receives compensation for depositing a carrier envelope in the mail as part of a scheme in which the person is compensated based on the number of carrier envelopes deposited. For additional information on offenses related to carrier envelopes, please see the "Information About Returning your Carrier Envelope," included with the materials sent to you with your ballot.

**ADVERTENCIA:** (1) El acto de poseer conscientemente la boleta o el sobre de envío de otra persona puede ser un delito a menos de que usted proporcione su firma, nombre impreso y su dirección. (2) Una persona comete un delito si recompensa o recibe compensación a cambio de depositar el sobre de envío en el correo como parte de un plan en el cual le persona es recompensada en base al número de sobres de envío depositados. Para obtener información adicional sobre los delitos relacionados con los sobres de envío, por favor vea la "Información Sobre Cómo Devolver su Sobre de Envío," incluido con los materiales enviados a usted con su boleta.

5-22 – Prescribed by Secretary of State – 12/17
Section 86.013, Texas Election Code 173704

935

105 3 4 8 2014

4

## Application for Ballot by Mail

**DO NOT REMOVE PERFORATED TABS. Moisten here and fold bottom to top to seal.     DO NOT REMOVE PERFORATED TABS. Moisten here and fold bottom to top to seal.**

*Prescribed by the Office of the Secretary of State of Texas*
*A/-W 9217*

For Official Use Only.
Voter's ID Number, Precinct #,
Statement of Residence, etc.

**1  Last Name** (Please print information)
Rodriguez

**First Name**
Agustin

**Suffix** (Jr., Sr., III, etc.)

**Middle Initial**
H

**2  Residence Address:** See back of this application for instructions.
3501 W Agusta Ave

**City**
McAllen

,TX

**ZIP Code**
78503

**3  Mail my ballot to:** If mailing address differs from residence address, please complete Box #7.

**City**

**State**

**ZIP Code**

**4  Date of Birth** (mm/dd/yyyy) (Optional)
8/28/1946

**5  Reason for Voting by Mail:**
☒ 65 years of age or older (Complete Box #6a)
☐ Disability (Complete Box #6a)
☐ Expected absence from the county (Complete Box #6a and Box #8)
☐ You will receive a ballot or ballot for the upcoming election only.
☐ Confinement in jail (Complete Box #6b)
☐ You will receive a ballot for the upcoming election only.

**6a  ONLY Voters 65 Years of Age or Older OR Voters with a Disability:**
If applying for one election, select appropriate box.
If applying once for elections in the calendar year, select "Annual Application."

☐ Annual Application

**Primary Elections:**
You must declare one political party to vote in a primary.
☒ Democratic Primary
☐ Republican Primary

**Uniform and Other Elections:**
☐ May Election
☐ November Election
☐ Other _____

☐ Any Resulting Runoff

**6b  ONLY Voters Absent from County or Voters Confined in Jail:**
You may only apply for a ballot by mail for one election and any resulting runoff.
Please check the appropriate box.

**Primary Elections:**
You must declare one political party to vote in a primary.
☐ Democratic Primary
☐ Republican Primary

**Uniform and Other Elections:**
☐ May Election
☐ November Election
☐ Other _____

☐ Any Resulting Runoff

**7  Contact Information** (Optional)*
Please list phone number and/or email address:
* Used in case our office has questions.

**7  If you are requesting this ballot be mailed to a different address** (other than residence), indicate where the ballot will be mailed. See reverse for instructions.

☐ Address on my voter registration certificate.

☐ Mailing Address as listed on my voter registration certificate.
☐ Nursing home, assisted living facility, or long term care facility
☐ Hospital
☐ Preliminary Center

☐ Address of my jail
☐ Relative; relationship _____
☐ Address outside the county (see Box #8)

**8  If you selected "expected absence from the county," see reverse for instructions**

Date you can begin to receive mail at this address

Date of return to residence address

**9**
Date you can begin to receive mail at this address
plera@mcallen.net
(verify voting clerk's e-mail address)

Voters may submit a completed, signed, and scanned application to the Early Voting Clerk at:
(956) 681-1029
(verify voting clerk's fax)

NOTE: If you fax or e-mail this form, please be aware that you must also mail the form to the early voting clerk within your business days. See "Submitting Application" on the back of this form for additional information.

**10  "I certify that the information given in this application is true, and I understand that giving false information in the application is a crime."**

SIGN HERE
If applicant is unable to sign or make a mark in the presence of a witness, the witness shall complete Box #11.

X  Agustin Rodriguez ✓   **Date** 4-18-19

**11  See back for Witness and Assistant definitions.**
If applicant is unable to complete this application, the applicant must sign Box #10 and you are acting as a Witness to that fact, please check this box and sign below.  ☐

If you are assisting the applicant in completing this application in the applicant's presence or e-mailed/mailed for the applicant, please check the box as an Assistant and sign below. ☐

Witness: Relationship to Applicant
(Refer to instructions on back for clarification)

**Witness/Assistant:**
Will you are acting as Witness **and** Assistant, please check both boxes. Failure to complete this information is a Class A misdemeanor if signature was witnessed or applicant was assisted in completing the application.

X
Signature of Witness/Assistant

X
Printed Name of Witness/Assistant

Street Address                      Apt Number (if applicable)

State        City                    ZIP Code

*Este formulario está disponible en Español. Para conseguir la versión en Español favor de llamar sin cargo al 1.800.252.8683 a la oficina del Secretario de Estado o la Secretaría de Vacación por Adelantado.*

## Instructions for Application for Ballot by Mail

**Residence Address** - Give full address as shown on your voter registration certificate. If you have moved within the county but not yet changed your voter registration address with the voter registrar, indicate your new residence address.

**Mail Ballot To** - Give full address where you wish to have ballot mailed, if the address is different from your residence address.

**Mailing Ballot to a Different Address** - Your ballot must be mailed to your home where you live or to your mailing address on your voter registration certificate. There are some exceptions that allow you to have your ballot mailed to a different location as specified below.

| If you're applying because you are: | Then you can have the ballot mailed to: |
|---|---|
| 65 or disabled | Nursing home, assisted living/retirement center, relative, hospital |
| In jail | Address of jail or relative |
| Absent from county | Address located outside of county |

**Expected Absence from County** - If you chose expected absence from county, you must expect to be absent from the county on election day and during the hours of early voting in person or for the remainder of the early voting period after you submit your application. Your ballot must be mailed to an address outside the county. Important: Give date you can begin to receive mail at the address given.

**Annual Application** - If you are 65 years of age or older, or disabled you may apply to receive all ballots by mail for a calendar year. If you do not select any elections in Box 8a, your application will be considered an Annual Application. If you submit an annual application for a ballot by mail, your application may be forwarded to other entities holding elections where you are a qualified voter. This means that you may receive a ballot for those elections in addition to the ballot(s) you requested with this application.

### Submitting Application

1. Sign and date your application - If unable to sign, please go to Witness/Address boxes (11 on reverse) and have a person witness your mark. Witness/Assistant instructions follow below.

2. Deliver to Early Voting Clerk - You may submit your application via these methods:

**In Person:** Only the applicant may submit their application in person to the Early Voting Clerk until the early voting period begins. However, after the early voting period begins for an election, the applicant may only submit their application via mail, common contract carrier, fax, or e-mail.

**By Mail:** You may mail your application via the U.S. Postal Service.

**By Common Contract Carrier:** You may submit via a common or contract carrier which is a bona fide for profit carrier.

**By Fax:** You may fax your application to the Early Voting Clerk. Please contact your Early Voting Clerk or the Secretary of State's Office for fax numbers.

**By E-Mail:** You may e-mail a signed, scanned image of your application to the Early Voting Clerk. Please contact your Early Voting Clerk or the Secretary of State's Office for e-mail addresses.

**IF YOU FAX OR E-MAIL YOUR APPLICATION TO THE EARLY VOTING CLERK, YOU MUST ALSO MAIL THE APPLICATION SO THAT THE CLERK RECEIVES IT NO LATER THAN THE FOURTH BUSINESS DAY AFTER THE DAY THE CLERK RECEIVED YOUR FAXED OR EMAILED APPLICATION. If you fax or e-mail your application by the deadline noted below, your application will be considered complete and timely as long as the original is received by the early voting clerk by the fourth business day after it was submitted by fax or e-mail.**

### Deadline

Your application must be received by the early voting clerk of the local entity conducting the election not later than the 11th day before election day. If the 11th day is a weekend or holiday, the deadline is the first preceding business day. You may submit an application throughout the calendar year, beginning January 1. Please remember that the application must be received not later than the 11th day before the first election in which you seek to vote by mail.

If you submit an Annual Application for Ballot by Mail within 60 days before an election that takes place in the following calendar year, your application will be valid for any election that takes place in the following calendar year, regardless of the fact that your application was submitted prior to the end of the preceding calendar year. This applies to Annual Applications only and not to a regular application for ballot by mail.

### Witness/Assistant Section

**Witness:** If you are unable to sign your name (due to a physical disability or illiteracy) the application may be signed at Box 10 for you by a Witness. You must affix your mark to the application in Box #10 or, if you are unable to make a mark, then the Witness must check the appropriate box in 11 indicating the inability to make a mark. The Witness must affix his/her name in printed form and indicate his/her relationship to you or, if unrelated, state that fact. The Witness must sign and provide his or her printed name and residence address. Unless the Witness is a close relative of the voter (parent, grandparent, spouse, child or sibling), it is a Class B misdemeanor for a person to witness more than one application for ballot by mail

**Assistant:** If a person (other than a close relative or person registered to vote at the same address) assists you in completing this application in your presence or receives faxes/faxes/e-mails this application on your behalf, then that person must complete Box #11. The Assistant must sign, provide his or her printed name, and his or her residence address. A person commits a Class A misdemeanor if the person provides assistance without providing the information described above unless a close relative or registered at your address.

If you have further questions or need additional assistance, please contact your Early Voting Clerk or The Secretary of State's office at 1-800-252-8683 or www.sos.state.tx.us.



**DO NOT REMOVE PERFORATED TABS.** Moisten tab and fold top to bottom to seal.

**FROM:** Agustin Rodriguez

3501 W Agusta Ave

McAllen, TX 78501

AFFIX LABEL HERE OR ADDRESS

**To:** Early Voting Clerk

Perla Lara

PO Box 220/1300 Houston Ave.

McAllen Texas 78505-0220



AWS-42
Prescribed by Secretary of State
Sec. 87.0431, Texas Election Code
3/07

## NOTICE OF REJECTED BALLOT

This is to serve as notice that your ballot for the ___May 4, 2019___ Election was rejected by the early voting ballot board and was not counted.

Name of Voter *GARZA, OLGA*
VUID Number *1053802675*

Reason for Rejection: (Check As Appropriate)

_____  1)  Certificate on carrier envelope was not properly executed.
　　　　　　　_____ You failed to sign your signature or make your mark.
　　　　　　　_____ The witness failed to indicate on the envelope that you could not make a mark.
　　　　　　　_____ The assistant or witness failed to print their name.
　　　　　　　_____ The assistant or witness failed to sign their name.
　　　　　　　_____ The residence address of the assistant or witness was not given.

___✓___  2)  It was determined that the signature on the application for ballot by mail and carrier envelope was not signed by the same person.

_____  3)  Application for ballot by mail did not state a legal ground for voting by mail.

_____  4)  Voter registration records indicated you did not have an effective registration for this election.

_____  5)  Address to which ballot was mailed was not outside the county.  Voting early by mail due to expected absence from the county requires balloting materials be mailed to an address outside the county.

_____  6)  The residence address on the statement of residence is not located in the political subdivision conducting the election.

_____  7)  The mailing address on the application for ballot by mail did not match your voter registration address nor did the mailing address match any addresses provided on your statement of residence.  Since you did not indicate on your application for a ballot by mail that you were having your ballot mailed to a hospital, retirement center, long term care facility, nursing home, jail, or a relative, your ballot was rejected.

_____  8)  The statement of residence was not included in the carrier envelope.

_____  9)  No identification was included with your mail ballot.

_____  10)  Other:

_____
Signature of Early Voting Ballot Board Judge

___May 4, 2019___
Date

938

AW5-42
Requerido por el Secretario de Estado
Frac. 87.0431, Código Electoral
3/07

## AVISO DEL RECHAZO DE UNA PAPELETA ELECTORAL

Por medio de éste se le notifica que la papeleta electoral que usted entregó en las elecciones 4 de mayo de 2019 fue rechazada por el Consejo de Votación por Adelantado y no fue incluido en el conteo final.

Nombre del elector *GARZA, OLGA*

VUID de inscripción electoral número *105380 26 75*

La razón del rechazo fue (a continuación indique las razones):

_____ 1) La constancia que aparece en el sobre de entrega no se firmó en forma apropiada.

    _____ Le falta su firma o marca.

    _____ El testigo no anotó en el sobre que Ud. no puede hacer su marca.

    _____ Falta el nombre del testigo o la persona quien le ayudó en letras de molde.

    _____ Falta la firma del testigo o de la persona quien le ayudó votar.

    _____ Falta el domicilio del testigo o el de la persona quien le ayudó votar.

✓ 2) Un análisis de las firmas que aparecen en la solicitud de una papeleta postal y el sobre de entrega indica que éstas no son la letra de la misma persona.

_____ 3) De acuerdo a la ley, la razón dada en la solicitud de una papeleta postal no lo califica para poder votar por correo.

_____ 4) Las actas del registro electoral indican que en la fecha en que celebraron estas elecciones, usted no estaba inscrito como votante.

_____ 5) El domicilio al cual se envió la papeleta está ubicado dentro de este condado. Sólo aquellas personas que anticipan estar fuera del condado pueden votar por anticipado y por correo, por esta razón la papeleta electorales se tiene que enviar a un domicilio ubicado fuera del condado.

_____ 6) El domicilio indicado en la solicitud de una papeleta postal no queda dentro del área geográfica de la entidad política que efectúa estas elecciones.

_____ 7) El domicilio indicado en la solicitud de una papeleta postal no es igual al indicado en: la constancia de domicilio permanente ni su inscripción electoral ni es la dirección postal indicada en su solicitud de inscripción. Además, usted no indicó que su papeleta debería enviarse a un hospital, centro de jubilación, centro de cuidados médicos a largo plazo, centro de enfermería o el hogar de algún familiar.

_____ 8) La constancia de domicilio permanente no vino incluida en el sobre de entrega.

_____ 9) No incluyó ninguna identificación con su boleta por correo.

_____ 10) Otra: _____

_____
Firma del Juez del Consejo Administrativo de
las Papeletas de Votación por Adelantado

4 de mayo de 2019
Fecha

939

**Instructions:** This envelope must be sealed and signed by the voter before it leaves the voter's hands. Do not sign this envelope unless the ballot has been marked by you or at your direction. This voter envelope may not be used to return more than one voter's ballot. For instructions on the methods and deadlines to deliver this carrier envelope, see the "Information About Returning your Carrier Envelope," included with the materials sent to you with your ballot. (Instrucciones al Votante: Selle este sobre y después firme su nombre en el espacio proporcionado abajo. Este sobre debe de ser sellado y firmado por el votante antes de que el votante lo entregue. No firme este sobre a menos de que la boleta haya sido llenado por usted o bajo su dirección. Este sobre de envío no debe ser utilizado para entregar la boleta de más de un solo votante. Para obtener instrucciones sobre los métodos y plazos para entregar este sobre de envío, vea la "Información Sobre Cómo Devolver su Sobre de Envío," incluido con los materiales enviados a usted con su boleta.

**SEAL ENVELOPE AND SIGN OVER SEALED FLAP**
(SELLE EL SOBRE Y FIRME ENCIMA DE SOLAPA DEL SOBRE)

➡ X _(signature)_

**SIGNATURE OR MARK OF VOTER (FIRMA O MARCA DEL VOTANTE)**

I certify that the enclosed ballot expresses my wishes independent of any dictation or undue persuasion by any person. (Certifico que la boleta adjunta expresa mis deseos independientemente de ningún dictado o persuasión indebida por parte de cualquier persona.)

**Instructions to Assistant:** A voter may only be assisted with reading or marking the ballot if they have a physical disability that renders them unable to write or see, or have an inability to read the language in which the ballot is written. If you are assisting the voter, you must read the oath and complete the section below, naming yourself as the voter's assistant. (Instrucciones al Asistente: Un votante puede recibir ayuda para leer o llenar la boleta solamente si el votante tiene una discapacidad física la cual le impide escribir o ver, o si no tiene la habilidad de leer el lenguaje en el cual la boleta está escrita. Si usted le proporciona ayuda a un votante, usted debe leer el juramento y llenar la siguiente sección abajo, antes de asistir al votante.)

**Oath of Person Assisting Voter:** I swear (or affirm) that I will not suggest, by word, sign, or gesture, how the voter should vote, I will confine my assistance to answering the voter's questions, to stating propositions on the ballot, and to naming candidates and, if listed, their political parties. I will prepare the voter's ballot as the voter directs, and I am not the voter's employer, an agent of the voter's employer, or an officer or agent of a labor union to which the voter belongs. (Juramento de la Persona Asistiendo al Votante: Juro (o afirmo), que no le sugeriré con palabras, señales, o gestos, de la manera en la cual el votante debe votar, limitare mi asistencia a responder las preguntas del votante, leer propuestas en la boleta, nombrar a los candidatos, y si es mencionado, su partido político; preparará la boleta del votante de acuerdo a sus instrucciones, y yo no soy el empleador del votante, un agente del empleador del votante, o un oficial o agente de un sindicato al cual el votante pertenece.)

**Instructions to Witness:** You are serving as a witness for _____ (name of voter). You must complete the section below if you witness the mark of the voter, or if the voter cannot make a mark. If the voter cannot make a mark, check here ☐ (Instrucciones al Testigo: Usted está fungiendo como testigo para _____ (nombre del votante). Usted debe llenar la siguiente sección abajo si usted fue testigo de la marca del votante, o de que el votante no puede firmar. Si el votante no puede firmar, marque sus iniciales aquí ____)

**Instructions to Person Depositing Carrier Envelope in Mail or to Common or Contract Carrier:** If you are assisting a voter by depositing the carrier envelope in the mail or with a common or contract carrier, you must complete the section below. (Instrucciones a la Persona Quien Deposita el Sobre de Envío en el Correo o Entregue al Transportista Público o Comercial: Si usted asista a votante a depositar el sobre de envío en el correo o con un transportista público o comercial, usted debe llenar la sección que aparece abajo).

If you are an assistant or witness, check the appropriate box below and provide information: (Si usted es un asistente o testigo, marque la casilla correcta y proporcione su información):

☐ Assistant/
   Asistente

☐ Witness/
   Testigo

_(signature)_
Signature (Firma)

_(handwritten)_
Printed Name (Nombre Impreso)

Street Address (Domicilio residencial)

☐ Assistant/
   Asistente
☐ Witness/
   Testigo
☐ Carrier/

_(signature)_
Signature (Firma)

Printed Name (Nombre Impreso)

Street Address (Domicilio residencial)

**Name of Voter (Nombre del votante):**

**Name of Election (Nombre de Elección):** McCAY 1 1 2019 APR 2015 PM

**General Election**

**Date of Election (Fecha de Elección):** 5 · 4 · 2019

Garza, Olga
VUID# 1053802675
May 4, 2019
General Election

SMD#4

**WARNING:** (1) Knowingly possessing another person's ballot or carrier envelope may be a crime unless you provide your signature, printed name and address (2) A person commits an offense if the person compensates another person or receives compensation for depositing a carrier envelope in the mail as part of a scheme in which the person is compensated based on the number of carrier envelopes deposited. For additional information on offenses related to carrier envelopes, please see the "Information About Returning your Carrier Envelope," included with the materials sent to you with your ballot.

**ADVERTENCIA:** (1) El acto de poseer conscientemente la boleta o el sobre de envío de otra persona puede ser un delito a menos de que usted proporcione su firma, nombre impreso, y su dirección. (2) Una persona comete un delito si recompensa o recibe compensación a cambio de depositar el sobre de envío en el correo como parte de un plan en el cual la persona es recompensada en base al número de sobres de envío depositados. Para obtener información adicional sobre los delitos relacionados con los sobres de envío, por favor vea la "Información Sobre Cómo Devolver su Sobre de Envío," incluido con los materiales enviados a usted con su boleta.

5-22 — Prescribed by Secretary of State — 12/17
Section 86.013, Texas Election Code 173704

City Secretary's Office

OFFICIAL ELECTION MAIL
Authorized by the U.S. Postal Service

Revised
Date 4/27/19

**CARRIER ENVELOPE FOR EARLY VOTING BALLOT**
*(SOBRE DE ENVÍO PARA LA BOLETA DE VOTACIÓN ANTICIPADA)*

TO (A):

Perla Lara, City Secretary
Early Voting Clerk (Secretario de Votación Anticipada)

P.O. Box 220/1300 Houston Ave
Mailing Address (Dirección Postal)

McAllen                          Texas    78505-0220
City (Ciudad)                             Zip (Código Postal)

City Secretary's Office

Revised

Date 4-27-19

DO NOT REMOVE PERFORATED TABS. Moisten here and fold bottom to top to seal.        DO NOT REMOVE PERFORATED TABS. Moisten here and fold bottom to top to seal.

## Application for Ballot by Mail

**Prescribed by the Office of the Secretary of State 4/2013**
*Statement of Residence, etc.*
*V.U.C.E. (Code) (Section), Precinct #,*
**For Official Use Only**

**1**  Last Name (Please print information)  | Suffix (Jr., Sr., III, etc.) | First Name | City | ZIP Code | Middle Initial
Garza | | Olga | McAllen | 78501

**2**  Residence Address. See back of this application for instructions.  | City | State | ZIP Code
218 S 25th St | McAllen | TX | 78501

**3**  Mail my ballot to: If mailing address differs from residence address, please complete Box # 7.

**4**  Date of Birth (mm/dd/yyyy) (Optional)
7/1/1950

**5**  Reason for Voting by Mail
- ☑ 65 years of age or older. **(Complete Box #6a)**
- ☐ Disability **(Complete Box #6a)**
- ☐ Expected absence from the county. **(Complete Box #6b and Box #8)**
  You will receive a ballot for the upcoming election only.
- ☐ Confinement in jail. **(Complete Box #8b)**
  You will not receive a ballot for the upcoming election only.

**6a**  ONLY Voters 65 Years of Age or Older or Voters with a Disability:
If applying for one election, select appropriate box.
If applying once for all elections in the calendar year, select "Annual Application."
- ☐ Annual Application
- **Uniform and Other Elections:**
  - ☐ May Election
  - ☐ November Election
  - ☐ Other _____
- **Primary Elections:**
  You must declare one political party to vote in a primary.
  - ☐ Democratic Primary
  - ☐ Republican Primary
  - ☐ Any Resulting Runoff

**6b**  ONLY Voters Absent from County or Voters Confined in Jail:
You may only apply for a ballot by mail for one election, and any resulting runoff. Please select the appropriate box.
- **Uniform and Other Elections:**
  - ☐ May Election
  - ☐ November Election
  - ☐ Other _____
- **Primary Elections:**
  You must declare one political party to vote in a primary.
  - ☐ Democratic Primary
  - ☐ Republican Primary
  - ☐ Any Resulting Runoff

**7**  Contact Information (Optional)
Please list phone number and/or email address:
* Used in case our office has questions.

**8**  If you selected "expected absence from the county," (see reverse for instructions)
- ☐ Mailing Address as listed on my voter registration certificate
- ☐ Nursing home, assisted living facility, or long term care facility
- ☐ Hospital
- ☐ Retirement Center

**9**  If you are requesting this ballot be mailed to a different address (other than current residence), indicate where the ballot will be mailed. See reverse for instructions.
- ☐ Address of the jail
- ☐ Relative, relationship _____
- ☐ Address outside the county (see Box #8)

Date you can begin to receive mail at this address _____

Voters may submit a completed, signed, and scanned application to the Early Voting Clerk at:
plara@mcallen.net
(early voting clerk's e-mail address)
(956) 681-1029
(early voting clerk's fax)
NOTE: If you fax or e-mail this form, please be aware that you must also mail this form to the early voting clerk within four business days. See "Submitting Application" on the back of this form for additional information.

**10**  "I certify that the information given in this application is true, and I understand that giving false information in this application is a crime."

**SIGN HERE**
If applicant is unable to sign or make a mark in the presence of a witness, the witness shall complete Box #11.

X _____  Date _____

*(handwritten signature)* Olga Garza  9-16-18

**11**  See back for Witness and Assistant definitions.
If applicant is unable to mark Box #10 and you are acting as a Witness to that fact, please check this box and sign below.  ☐

If you assisted the applicant in completing this application in the applicant's presence or mailed or faxed this application on behalf of the applicant, please check this box as an Assistant and sign below.  ☐
If you are acting as a Witness and Assistant, please check both boxes. Failure to complete this information is a Class A misdemeanor if signature was witnessed or applicant was assisted in completing the application.

X _____
Signature of Witness/Assistant

X _____
Printed Name of Witness/Assistant

_____
Street Address

_____
Apt. Number (if applicable)

_____
City

_____
State

_____
ZIP Code

_____
Witness' Relationship to Applicant
(Refer to instructions on back for clarification)

If someone helped you to complete this form or mails the form for you, then that person must complete the sections below.

Este formulario está disponible en Español. Para conseguir la versión en Español favor de llamar sin cargo al 1.800.252.8683 a la oficina del Secretario de Estado o la Secretaría de Votación por Adelantado.

[handwritten: 105 350 2075]

4

## Instructions for Application for Ballot by Mail

**Residence Address** - Give full address as shown on your voter registration certificate. If you have moved within the county but not yet changed your voter registration address with the voter registrar, indicate your new residence address.

**Mail Ballot To** - Give full address where you wish to have ballot mailed, if the address is different from your residence address.

**Mailing Ballot to a Different Address** - Your ballot must be mailed to your home where you live or to your mailing address on your voter registration certificate. There are some exceptions that allow you to have your ballot mailed to a different location as specified below.

| [illegible] | |
|---|---|
| 65 or disabled | Nursing home, assisted living/retirement center, relative, hospital |
| In jail | Address of jail or relative |
| Absent from county | Address located outside of county |

**Expected Absence from County** - If you chose expected absence from county, you must expect to be absent from the county on election day and during the hours of early voting in person or for the remainder of the early voting period after you submit your application. **Your ballot must be mailed to an address outside the county.** Important: Give date you can begin to receive mail at the address given.

**Annual Application** - If you are 65 years of age or older, or disabled you may apply to receive all ballots by mail for a calendar year. If you do not select any elections in Box 6a, your application will be considered an Annual Application. If you submit an annual application for a ballot by mail, your application may be forwarded to other entities holding elections where you are a qualified voter. This means that you may receive a ballot for those elections in addition to the ballot(s) you requested with this application.

### Submitting Application

**1. Sign and date your application** - If unable to sign, please go to Witness/Address boxes (11 on reverse) and have a person witness your mark. Witness/Assistant instructions follow below.

**2. Deliver to Early Voting Clerk** - You may submit your application via these methods:

In Person: Only the applicant may submit their application in person to the Early Voting Clerk until the early voting period begins. However, after the early voting period begins for an election, the applicant may only submit their application via mail, common contract carrier, fax, or e-mail.

By Mail: You may mail your application via the U.S. Postal Service.

By Common Contract Carrier: You may submit via a common or contract carrier which is a bona fide, for profit carrier.

By Fax: You may fax your application to the Early Voting Clerk. Please contact your Early Voting Clerk or the Secretary of State's Office for fax numbers.

By E-Mail: You may e-mail a signed, scanned image of your application to the Early Voting Clerk. Please contact your Early Voting Clerk or the Secretary of State's Office for e-mail addresses.

**IF YOU FAX OR E-MAIL YOUR APPLICATION TO THE EARLY VOTING CLERK, YOU MUST ALSO MAIL THE APPLICATION SO THAT THE CLERK RECEIVES IT NO LATER THAN THE FOURTH BUSINESS DAY AFTER THE DAY THE CLERK RECEIVED YOUR FAXED OR EMAILED APPLICATION. If you fax or e-mail your application by the deadline noted below, your application will be considered complete and timely as long as the original is received by the early voting clerk by the fourth business day after it was submitted by fax or e-mail.**

### Deadline

Your application must be received by the early voting clerk of the local entity conducting the election not later than the 11th day before election day. If the 11th day is a weekend or holiday, the deadline is the first preceding business day. You may submit an application throughout the calendar year, beginning January 1. Please remember that the application must be received not later than the 11th day before the first election in which you seek to vote by mail.

If you submit an Annual Application for Ballot by Mail within 60 days before an election that takes place in the following calendar year, your application will be valid for any election that takes place in the following calendar year, regardless of the fact that your application was submitted prior to the end of the preceding calendar year. This applies to Annual Applications only and not to a regular application for ballot by mail.

### Witness/Assistant Section

**Witness:** If you are unable to sign your name (due to a physical disability or illiteracy), the application may be signed at Box #11 for you by a Witness. You must affix your mark to the application in Box #10 or, if you are unable to make a mark, then the Witness must check the appropriate box in 11 indicating the inability to make a mark. The Witness must state his/her name in printed form and indicate his/her relationship to you or, if unrelated, state that fact. The Witness must sign and provide his or her printed name and residence address. Unless the Witness is a close relative of the voter (parent, grandparent, spouse, child or sibling), it is a Class B misdemeanor for a person to witness more than one application for ballot by mail.

**Assistant:** If a person (other than a close relative or person registered to vote at the same address) assists you in completing this application in your presence or mails/faxes/e-mails this application on your behalf, then that person must complete Box #11. The Assistant must sign, provide his or her printed name, and his or her residence address. A person commits a Class A misdemeanor if the person provides assistance without providing the information described above unless a close relative or registered at your address.

**If you have further questions or need additional assistance, please contact your Early Voting Clerk or The Secretary of State's office at 1-800-252-8683 or www.sos.state.tx.us.**

DO NOT REMOVE PERFORATED TABS. Moisten tab and fold top to bottom to seal.

City Secretary's Office
Received
Date 4-17-19

FROM: Olga Garza
218 S 25th St
McAllen, TX. 78501-7632

AFFIX LABEL HERE OR ADDRESS

To: Early Voting Clerk
Perla Lara
PO Box 220/1300 Houston Ave.
McAllen Texas 78505-0220

AW5-42
Prescribed by Secretary of State
Sec. 87.0431, Texas Election Code
3/07

# NOTICE OF REJECTED BALLOT

This is to serve as notice that your ballot for the  May 4, 2019          Election was rejected
by the early voting ballot board and was not counted.

Name of Voter  GARZA, GUADALUPE TREVIÑO

VUID Number  1054055218

Reason for Rejection: (Check As Appropriate)

_____   1)   Certificate on carrier envelope was not properly executed.
                 _____ You failed to sign your signature or make your mark.
                 _____ The witness failed to indicate on the envelope that you could not
                        make a mark.
                 _____ The assistant or witness failed to print their name.
                 _____ The assistant or witness failed to sign their name.
                 _____ The residence address of the assistant or witness was not given.

___✓___   2)   It was determined that the signature on the application for ballot by mail and
                 carrier envelope was not signed by the same person.

_____   3)   Application for ballot by mail did not state a legal ground for voting by mail.

_____   4)   Voter registration records indicated you did not have an effective registration
                 for this election.

_____   5)   Address to which ballot was mailed was not outside the county.  Voting
                 early by mail due to expected absence from the county requires balloting
                 materials be mailed to an address outside the county.

_____   6)   The residence address on the statement of residence is not located in the
                 political subdivision conducting the election.

_____   7)   The mailing address on the application for ballot by mail did not match your
                 voter registration address nor did the mailing address match any addresses
                 provided on your statement of residence.  Since you did not indicate on your
                 application for a ballot by mail that you were having your ballot mailed to a
                 hospital, retirement center, long term care facility, nursing home, jail, or a
                 relative, your ballot was rejected.

_____   8)   The statement of residence was not included in the carrier envelope.

_____   9)   No identification was included with your mail ballot.

_____   10)  Other:

_____

Signature of Early Voting Ballot Board Judge

  May 4, 2019
Date

AWS-42
Requerido por el Secretario de Estado
Prac. 87.0431, Código Electoral
3/07

## AVISO DEL RECHAZO DE UNA PAPELETA ELECTORAL

Por medio de éste se le notifica que la papeleta electoral que usted entregó en las elecciones 4 de mayo de 2019 fue rechazada por el Consejo de Votación por Adelantado y no fue incluído en el conteo final.

Nombre del elector _GARZA, GUADALUPE TREVIÑO_
VUID de inscripción electoral número _1054055218_

La razón del rechazo fue (a continuación indique las razones):

1) La constancia que aparece en el sobre de entrega no se firmó en forma apropiada.
    Le falta su firma o marca.
    El testigo no anotó en el sobre que Ud. no puede hacer su marca.
    Falta el nombre del testigo o la persona quien le ayudó en letras de molde.
    Falta la firma del testigo o de la persona quien le ayudó votar.
    Falta el domicilio del testigo o el de la persona quien le ayudó votar.

✓ 2) Un análisis de las firmas que aparecen en la solicitud de una papeleta postal y el sobre de entrega indica que éstas no son la letra de la misma persona.

3) De acuerdo a la ley, la razón dada en la solicitud de una papeleta postal no lo califica para poder votar por correo.

4) Las actas del registro electoral indican que en la fecha en que celebraron estas elecciones, usted no estaba inscrito como votante.

5) El domicilio al cual se envió la papeleta está ubicado dentro de este condado. Sólo aquellas personas que anticipan estar fuera del condado pueden votar por anticipado y por correo, por esta razón la papeleta electorales se tiene que enviar a un domicilio ubicado fuera del condado.

6) El domicilio indicado en la solicitud de una papeleta postal no queda dentro del área geográfica de la entidad política que efectúa estas elecciones.

7) El domicilio indicado en la solicitud de una papeleta postal no es igual al indicado en: la constancia de domicilio permanente ni su inscripción electoral ni es la dirección postal indicada en solicitud de inscripción. Además, usted no indicó que su papeleta debería enviarse a un hospital, centro de jubilación, centro de cuidados médicos a largo plazo, centro de enfermería o el hogar de algún familiar.

8) La constancia de domicilio permanente no vino incluida en el sobre de entrega.

9) No incluyó ninguna identificación con su boleta por correo.

10) Otra: _____

_Firma del Juez del Consejo Administrativo de_
las Papeletas de Votación por Adelantado

4 de mayo de 2019
Fecha

945

**Instructions:** This envelope must be sealed and signed by the voter before it leaves the voter's hands. Do not sign this envelope unless the ballot has been marked by you, or at your direction. This envelope may not be used to return more than one voter's ballot. For instructions on the methods and deadlines to deliver this carrier envelope, see the "Information About Returning your Carrier Envelope," included with the materials sent to you with your ballot. (Instrucciones al Votante: Selle esto sobre y después firme su nombre en el espacio proporcionado abajo. Este sobre debe de ser sellado y firmado por el votante antes de que el votante lo entregue. No firme este sobre a menos de que la boleta haya sido llenada por usted o bajo su dirección. Este sobre de envío no debe ser utilizado para entregar la boleta de más de un solo votante. Para obtener instrucciones sobre los métodos y plazos para entregar este sobre de envío, vea la "Información Sobre Cómo Devolver su Sobre de Envío," incluido con los materiales enviados a usted con su boleta.)

I certify that the enclosed ballot expresses my wishes independent of any dictation or undue persuasion by any person. (Certifico que la boleta adjunta expresa mis deseos independientemente de ningún dictado o persuasión indebida por parte de cualquier persona.)

SEAL ENVELOPE AND SIGN OVER SEALED FLAP
(SELLE EL SOBRE Y FIRME ENCIMA DE SOLAPA DEL SOBRE)

→

X [signature]

SIGNATURE OR MARK OF VOTER (FIRMA O MARCA DEL VOTANTE)

**Instructions to Assistant:** A voter may only be assisted with reading or marking the ballot if they have a physical disability that renders them unable to write or see, or have an inability to read the language in which the ballot is written. If you are assisting the voter, you must read the oath and complete the section below, before assisting the voter. (Instrucciones al Asistente: Un votante puede recibir ayuda para leer o llenar la boleta solamente si el votante tiene una discapacidad física la cual le impide escribir o ver, o si no tiene la habilidad de leer el lenguaje en el cual la boleta está escrita. Si usted le proporcionara ayuda a un votante, usted debe leer el juramento y llenar la siguiente sección abajo, antes de asistir al votante.)

**Oath of Person Assisting Voter:** I swear (or affirm) that I will not suggest, by word, sign, or gesture, how the voter should vote; I will confine my assistance to answering the voter's questions, to stating propositions on the ballot, and to naming candidates and, if listed, their political parties; I will prepare the voter's ballot as the voter directs, and I am not the voter's employer, an agent of the voter's employer, or an officer or agent of a labor union to which the voter belongs. (Juramento de la Persona Asistiendo al Votante: Juro (o afirmo) que no sugeriré con palabras, señales, o gestos, la manera en la cual el votante debe votar; limitaré mi asistencia a responder las preguntas del votante, leer propuestas en la boleta, nombrar a los candidatos, y si es mencionado, su partido político; prepararé la boleta del votante de acuerdo a sus instrucciones; y yo no soy el empleador del votante, un agente del empleador del votante, o un oficial o agente de un sindicato al cual el votante pertenece.)

**Instructions to Witness:** You are serving as a witness for _____ (name of voter). You must complete the section below if you witness the mark of the voter, or if the voter cannot make a mark. If the voter cannot make a mark, check here ___ (Instrucciones al Testigo: Usted está fungiendo como testigo para (nombre del votante). Usted debe llenar la siguiente sección abajo si usted fue testigo de que el votante firmó, o de que el votante no puede firmar. Si el votante no puede firmar, marque sus iniciales aquí ___.)

**Instructions to Person Depositing Carrier Envelope in Mail or to Common or Contract Carrier:** If you are assisting a voter by depositing the carrier envelope in the mail or with a common or contract carrier, you must complete the section below. (Instrucciones a la Persona Quien Depositará el Sobre de Envío en el Correo o Entregue al Transportista Público o Comercial: Si usted asistirá al votante a depositar el sobre de envío en el correo o con un transportista público o comercial, usted debe llenar la sección que aparece abajo.)

If you are an assistant or witness, check the appropriate box below and provide information: (Si usted es un asistente o testigo, marque la casilla correcta y proporcione su información):

☐ Assistant/
   Asistente
☐ Witness/      Signature (Firma)        Printed Name (Nombre impreso)      Street Address (Domicilio residencial)
   Testigo
☐ Assistant/
   Asistente
☐ Witness/      Signature (Firma)        Printed Name (Nombre impreso)      Street Address (Domicilio residencial)
   Testigo

Completed by Early Voting Clerk: Name of Election (Nombre de Elección): **General Election**      Date of Election (Fecha de Elección) 5 4 2019

Name of Voter (Nombre del votante): _____

MCALLEN TX 785

Garza, Guadalupe Trevino
VUID# 1054055218
May 4, 2019
General Election

City Secretary's Office

OFFICIAL ELECTION MAIL
Authorized by the U.S. Postal Service

Received
Date 4/23/19

RECEIVED
APR 23 2019
ALLEN
MAIN / CENTER

**CARRIER ENVELOPE FOR EARLY VOTING BALLOT**
*(SOBRE DE ENVÍO PARA LA BOLETA DE VOTACIÓN ANTICIPADA)*

TO (A):

**Perla Lara, City Secretary**
Early Voting Clerk *(Secretario de Votación Anticipada)*

**P.O. Box 220/1300 Houston Ave**
Mailing Address *(Dirección Postal)*

**McAllen**_____, Texas **78505-0220**.
City *(Ciudad)*         Zip *(Código Postal)*

City Secretary's Office
Received
Date 4-23-19

78505-0220

**WARNING:** (1) Knowingly possessing another person's ballot or carrier envelope may be a crime unless you provide your signature, printed name and address (2) A person commits an offense if the person compensates another person or receives compensation for depositing a carrier envelope in the mail as part of a scheme in which the person is compensated based on the number of carrier envelopes deposited. For additional information on offenses related to carrier envelopes, please see the "Information About Returning your Carrier Envelope," included with the materials sent to you with your ballot.

**ADVERTENCIA:** (1) El acto de poseer conscientemente la boleta o el sobre de envío de otra persona puede ser un delito a menos de que usted proporcione su firma, nombre impreso, y su dirección. (2) Una persona comete un delito si recompensa o recibe compensación a cambio de depositar el sobre de envío en el correo como parte de un plan en el cual la persona es recompensada en base al número de sobres de envío depositados. Para obtener información adicional sobre los delitos relacionados con los sobres de envío, por favor vea la "Información Sobre Cómo Devolver su Sobre de Envío," incluida con los materiales enviados a usted con su boleta.

5-22 -- Prescribed by Secretary of State - 12/17
Section 86.013, Texas Election Code 1/3704

947

# Application for Ballot by Mail

Prepared by the Office of the Secretary of State of Texas
AB-6.12/17

For Official Use Only
VUID #, County Election Precinct #, Statement of Residence, etc.

1. Last Name (Please print information)
   Garza

   First Name
   Guadalupe

   Suffix (Jr., Sr., III, etc.)

   Middle Initial
   Trevino

2. Residence Address: See back of this application for instructions.
   2412 Daytona Ave

   City
   McAllen

   , TX

   ZIP Code
   78503

3. Mail my ballot to: If mailing address differs from residence address, please complete Box #7.
   City

   State

   ZIP Code

4. Date of Birth (mm/dd/yyyy) (Optional)
   2/11/1918

5. **Reason for Voting by Mail:**
   - ☑ 65 years of age or older. (Complete Box #6a)
   - ☐ Disability. (Complete Box #6a)
   - ☐ Expected absence from the county. (Complete Box #6b and Box #8)
     You will receive a ballot for the upcoming election only.
   - ☐ Confinement in jail. (Complete Box #6b)
     You will receive a ballot for the upcoming election only.

6a. ONLY Voters 65 Years of Age or Older or Voters with a Disability:
    If applying for one election, select appropriate box.
    If applying once for elections in the calendar year, select "Annual Application".
    - ☐ Annual Application

    Uniform and Other Elections:
    - ☑ May Election
    - ☐ November Election
    - ☐ Other

    Primary Elections:
    You must declare which political party to vote in a primary:
    - ☐ Democratic Primary
    - ☐ Republican Primary
    - ☐ Any Resulting Runoff

6b. ONLY Voters Absent from County or Voters Confined in Jail:
    You may only apply for a ballot for one election, and any resulting runoff.
    Please select the appropriate box.

    Uniform and Other Elections:
    - ☐ May Election
    - ☐ November Election
    - ☐ Other _____

    Primary Elections:
    You must declare which political party to vote in a primary:
    - ☐ Democratic Primary
    - ☐ Republican Primary
    - ☐ Any Resulting Runoff

7. If you are requesting this ballot be mailed to a different address (other than residence), indicate where the ballot will be mailed. See reverse for instructions.
   * Used in case you move during the election.
   - ☑ Mailing Address as listed on my voter registration certificate
   - ☐ Nursing home, assisted living facility, or long term care facility
   - ☐ Hospital
   - ☐ Retirement Center
   - ☐ Address of the jail
   - ☐ Relative, relationship: _____
   - ☐ Address outside the county (see Box #8)

   Address: _____   City: _____   State: _____   ZIP Code: _____

   Contact Information (Optional)
   Please list phone number and/or email address:
   plara@mcallen.net

8. If you selected "expected absence from the county," see reverse for instructions
   Date you can begin to receive mail at this address
   [          ]
   Date of return to residence address
   [          ]

9. If you are requesting this ballot be mailed to a different address (other than residence), indicate where the ballot
   ☑ Making Address as listed on my voter registration certificate
   (956) 681-1029
   (early voting clerk's fax)

10. I certify that the information given in this application is true, and I understand that giving false information in this application is a crime.

    SIGN HERE ➡ **X** _[signature]_ _____ Date

    NOTE: If you have an email address, please have the early voting clerk within four business days. See "Submitting Application" on the back of this form for additional information.

    If someone helped you to complete this form or mails this form for you, then that person must complete the sections below.

11. See back for Witness and Assistant definitions.
    You may only apply for a ballot for one election, and any resulting runoff.
    Please select the appropriate box.

    If applicant is unable to mark Box #10 and you are acting as a Witness to that fact, please check the box and sign below. ☐
    If you assisted the applicant in completing this application in the applicant's presence or mailed or faxed the application on behalf of the applicant, please check this box as an Assistant and sign below. ☐
    If you are acting as Witness and Assistant, please check both boxes. Failure to complete this information is a misdemeanor if signature was witnessed or applicant was assisted in completing the application.

    Signature of Witness/Assistant
    X

    Printed Name of Witness/Assistant
    X

    Street Address _____   Apt. Number (if applicable) _____
    City _____
    State _____   ZIP Code _____

    Witness' Relationship to Applicant
    (Refer to instructions on back for clarification)

Este formulario está disponible en Español. Para conseguir la versión en Español favor de llamar sin cargo al 1.800.252.8683 o la Oficina del Secretario de Estado o la Secretaría de Votación por Adelantado.



## Instructions for Application for Ballot by Mail

**Residence Address** - Give full address as shown on your voter registration certificate. If you have moved within the county but not yet changed your voter registration address with the voter registrar, indicate your new residence address.

**Mail Ballot To** - Give full address where you wish to have ballot mailed, if this address is different from your residence address.

**Mailing Ballot to a Different Address** - Your ballot must be mailed to your home where you live or to your mailing address on your voter registration certificate. There are some exceptions that allow you to have your ballot mailed to a different location as specified below.

| If you selected this... | Your ballot must be mailed to... |
|---|---|
| 65 or disabled | Nursing home, assisted living/retirement center, relative, hospital |
| In jail | Address of jail or relative |
| Absent from county | Address located outside of county |

**Expected Absence from County** - If you chose expected absence from county, you must expect to be absent from the county on election day and during the hours of early voting in person or for the remainder of the early voting period after you submit your application. Your ballot must be mailed to an address outside the county. Important: Give date you can begin to receive mail at the address given.

**Annual Application** - If you are 65 years of age or older, or disabled you may apply to receive all ballots by mail for a year. If you do not select any elections in Box 6a, your application will be considered an Annual Application. If you submit an annual application for a ballot by mail, your application may be forwarded to other entities holding elections where you are a qualified voter. This means that you may receive a ballot for those elections in addition to the ballot(s) you requested with this application.

### Submitting Application

**Sign and date your application** - If unable to sign, please go to Witness/Address boxes (11 in reverse) and have a person witness your mark. Witness/Assistant Instructions follow below.

**Deliver to Early Voting Clerk** - You may submit your application via these methods:

**In Person:** Only the applicant may submit their application in person to the Early Voting Clerk until the early voting period begins. However, after the early voting period begins for an election, the applicant may only submit their application via mail, common contract carrier, fax, or e-mail.

**By Mail:** You may mail your application via the U.S. Postal Service.

**By Common Contract Carrier:** You may submit via a common or contract carrier which is a bona fide, for profit carrier.

**By Fax:** You may fax your application to the Early Voting Clerk. Please contact your Early Voting Clerk or the Secretary of State's Office for fax numbers.

**By E-Mail:** You may e-mail a signed, scanned image of your application to the Early Voting Clerk. Please contact your Early Voting Clerk or the Secretary of State's Office for e-mail addresses.

IF YOU FAX OR E-MAIL YOUR APPLICATION TO THE EARLY VOTING CLERK, YOU MUST ALSO MAIL THE APPLICATION SO THAT THE CLERK RECEIVES IT NO LATER THAN THE FOURTH BUSINESS DAY AFTER THE DAY THE CLERK RECEIVED YOUR FAXED OR EMAILED APPLICATION. If you fax or e-mail your application by the deadline noted below, your application will be considered complete and timely as long as the original is received by the early voting clerk by the fourth business day after it was submitted by fax or e-mail.

### Deadline

Your application must be received by the early voting clerk of the local entity conducting the election not later than the 11th day before election day. If the 11th day is a weekend or holiday, the deadline is the first preceding business day. You may submit an application throughout the calendar year, beginning January 1. Please remember that this application must be received not later than the 11th day before the first election in which you seek to vote by mail.

If you submit an Annual Application for Ballot by Mail within 60 days before an election that takes place in the following calendar year, your application will be valid for any election that takes place in the following calendar year, regardless of the fact that your application was submitted prior to the end of the preceding calendar year. This applies to Annual Applications only and not to a regular application for ballot by mail.

### Witness/Assistant Section

**Witness:** If you are unable to sign your name (due to a physical disability or illiteracy), the application may be signed at Box #11 for you by a Witness. You must affix your mark to the application in Box #10a. If you are unable to make a mark, then the Witness must check the appropriate box in 10 indicating the inability to make a mark. The Witness must state his/her name is printed form and indicate his/her relationship to you or, if unrelated, state that fact. The Witness must sign and provide his or her printed name and residence address. Unless the Witness is a close relative of the voter (parent, grandparent, spouse, child or sibling), it is a Class A misdemeanor for a person to witness more than one application for ballot by mail.

**Assistant:** If a person (other than a close relative or person registered to vote at the same address) assists you in completing this application in your presence or marks/faxes/e-mails this application on your behalf, then that person must complete Box #11. The Assistant must sign, provide his or her printed name, and his or her residence address. A person commits a Class A misdemeanor if the person provides assistance without providing the information described above unless a close relative or registered at your address.

If you have further questions or need additional assistance, please contact your Early Voting Clerk or The Secretary of State's office at 1-800-252-8683. www.sos.state.tx.us.

DO NOT REMOVE PERFORATED TABS. Moisten tab and fold top to bottom to seal.

FROM:

Guadalupe Garza I

2412 Daytona Ave

McAllen, TX. 78503-7511

AFFIX LABEL HERE OR ADDRESS

To: Early Voting Clerk

Perla Lara

PO Box 220/1300 Houston Ave.

McAllen Texas 78505-0220

City Secretary's Office
Received
Date 4-18-19





AW5-42
Prescribed by Secretary of State
Sec. 87.0431, Texas Election Code
3/07

## NOTICE OF REJECTED BALLOT

This is to serve as notice that your ballot for the ___May 4, 2019___ Election was rejected by the early voting ballot board and was not counted.

Name of Voter _Petra M. Garza_
VUID Number _105 384 7790_

Reason for Rejection: (Check As Appropriate)

| | | |
|---|---|---|
| _____ | 1) | Certificate on carrier envelope was not properly executed. |
| | | _____ You failed to sign your signature or make your mark. |
| | | _____ The witness failed to indicate on the envelope that you could not make a mark. |
| | | _____ The assistant or witness failed to print their name. |
| | | _____ The assistant or witness failed to sign their name. |
| | | _____ The residence address of the assistant or witness was not given. |
| ✓ | 2) | It was determined that the signature on the application for ballot by mail and carrier envelope was not signed by the same person. |
| _____ | 3) | Application for ballot by mail did not state a legal ground for voting by mail. |
| _____ | 4) | Voter registration records indicated you did not have an effective registration for this election. |
| _____ | 5) | Address to which ballot was mailed was not outside the county. Voting early by mail due to expected absence from the county requires balloting materials be mailed to an address outside the county. |
| _____ | 6) | The residence address on the statement of residence is not located in the political subdivision conducting the election. |
| _____ | 7) | The mailing address on the application for ballot by mail did not match your voter registration address nor did the mailing address match any addresses provided on your statement of residence. Since you did not indicate on your application for a ballot by mail that you were having your ballot mailed to a hospital, retirement center, long term care facility, nursing home, jail, or a relative, your ballot was rejected. |
| _____ | 8) | The statement of residence was not included in the carrier envelope. |
| _____ | 9) | No identification was included with your mail ballot. |
| _____ | 10) | Other: |

_____
Signature of Early Voting Ballot Board Judge

__May 4, 2019__
Date

950

AW5-42
Requerido por el Secretario de Estado
Frac. 87.0431, Código Electoral
3/07

## AVISO DEL RECHAZO DE UNA PAPELETA ELECTORAL

Por medio de éste se le notifica que la papeleta electoral que usted entregó en las elecciones
4 de mayo de 2019 fue rechazada por el Consejo de Votación por Adelantado y no fue incluido
en el conteo final.

Nombre del elector _Petra M. Garza_

VUID de inscripción electoral número _105384 7790_

La razón del rechazo fue (a continuación indique las razones):

_____ 1) La constancia que aparece en el sobre de entrega no se firmó en forma
apropiada.

         _____ Le falta su firma o marca.

         _____ El testigo no anotó en el sobre que Ud. no puede hacer su marca.

         _____ Falta el nombre del testigo o la persona quien le ayudó en letras de
molde.

         _____ Falta la firma del testigo o de la persona quien le ayudó votar.

         _____ Falta el domicilio del testigo o el de la persona quien le ayudó
votar.

✓ 2) Un análisis de las firmas que aparecen en la solicitud de una papeleta
postal y el sobre de entrega indica que éstas no son la letra de la misma
persona.

_____ 3) De acuerdo a la ley, la razón dada en la solicitud de una papeleta postal no
lo califica para poder votar por correo.

_____ 4) Las actas del registro electoral indican que en la fecha en que celebraron
estas elecciones, usted no estaba inscrito como votante.

_____ 5) El domicilio al cual se envió la papeleta está ubicado dentro de este
condado. Sólo aquellas personas que anticipan estar fuera del condado
pueden votar por anticipado y por correo, por esta razón la papeleta
electorales se tiene que enviar a un domicilio ubicado fuera del condado.

_____ 6) El domicilio indicado en la solicitud de una papeleta postal no queda
dentro del área geográfica de la entidad política que efectúa estas
elecciones.

_____ 7) El domicilio indicado en la solicitud de una papeleta postal no es igual al
indicado en: la constancia de domicilio permanente ni su inscripción
electoral ni es la dirección postal indicada en su solicitud de inscripción.
Además, usted no indicó que su papeleta debería enviarse a un hospital,
centro de jubilación, centro de cuidados médicos a largo plazo, centro de
enfermería o el hogar de algún familiar.

_____ 8) La constancia de domicilio permanente no vino incluida en el sobre de
entrega.

_____ 9) No incluyó ninguna identificación con su boleta por correo.

10) Otra: _____

Firma del Juez del Consejo Administrativo de
las Papeletas de Votación por Adelantado

4 de mayo de 2019
Fecha

**Instructions:** This envelope must be sealed and signed by the voter before it leaves the voter's hands. Do not sign this envelope unless the ballot has been marked by you or at your direction. This carrier envelope may not be used to return more than one voter's ballot. For instructions on the methods and deadlines to deliver this carrier envelope, see the "Information About Returning Your Carrier Envelope." Included with the materials sent to you with your ballot. (Instrucciones al Votante: Selle este sobre y después firme su nombre en el espacio proporcionado abajo. Este sobre debe de ser sellado y firmado por el votante antes de que el votante lo entregue. No firme este sobre a menos de que la boleta haya sido llenada por usted o bajo su dirección. Este sobre de envío no debe ser utilizado para entregar la boleta de más de un solo votante. Para obtener instrucciones sobre los métodos y plazos para entregar este sobre de envío, vea la "Información Sobre Cómo Devolver su Sobre de Envío," Incluido con los materiales enviadas a usted con su boleta.

I certify that the enclosed ballot expresses my wishes independent of any dictation or undue persuasion by any person. (Certifico que la boleta adjunta expresa mis deseos independientemente de ningún dictado o persuasión indebida por parte de cualquier persona.)

**SEAL ENVELOPE AND SIGN OVER SEALED FLAP**
**(SELLE EL SOBRE Y FIRME ENCIMA DE SOLAPA DEL SOBRE)**

X _____
**SIGNATURE OR MARK OF VOTER (FIRMA O MARCA DEL VOTANTE)**

**Instructions to Assistant:** A voter may only be assisted with reading or marking the ballot if they have a physical disability that renders them unable to write or see, or have an inability to read the language in which the ballot is written. If you are assisting the voter, you must read the oath and complete the section below, before assisting the voter. (Instrucciones al Asistente: Un votante puede recibir ayuda para leer o llenar la boleta solamente si el votante tiene una discapacidad física la cual le impide escribir o ver, o si no tiene la habilidad de leer el lenguaje en el cual la boleta está escrita. Si usted le proporciona ayuda a un votante, usted debe leer el juramento y llenar la siguiente sección abajo, antes de asistir el votante.)

**Oath of Person Assisting Voter:** I swear (or affirm) that I will not suggest, by word, sign, or gesture, how the voter should vote; I will confine my assistance to answering the voter's questions, to stating propositions on the ballot, and to naming candidates and, if listed, their political parties; I will prepare the voter's ballot as the voter directs; and I am not the voter's employer, an agent of the voter's employer, or an officer or agent of a labor union to which the voter belongs. (Juramento de la Persona Asistiendo al Votante: Juro (o afirmo) que no sugeriré con palabras, señales, o gestos, la manera en la cual el votante debe votar; limitaré mi asistencia a responder las preguntas del votante, leer propuestas en la boleta, nombrar a los candidatos, y si es mencionado, su partido político; prepararé la boleta del votante de acuerdo a sus instrucciones; y yo no soy el empleador del votante, un agente del empleador del votante, o un oficial o agente de un sindicato al cual el votante pertenece.)

**Instructions to Witness:** You are serving as a witness for _____ (name of voter). You must complete the section below if you witness the mark of the voter, or if the voter cannot make a mark, check here _____ (Instrucciones al Testigo: Usted está fungiendo como testigo para _____ (nombre del votante). Usted debe llenar la siguiente sección abajo si usted fue testigo de que el votante firmó, o de que el votante no puede firmar. Si el votante no puede firmar, marque sus iniciales aquí ____.)

**Instructions to Person Depositing Carrier Envelope in Mail or to Common or Contract Carrier:** If you are assisting a voter by depositing the carrier envelope in the mail or with a common or contract carrier, you must complete the section below. (Instrucciones a la Persona Quien Deposita el Sobre de Envío en el Correo o Entregue al Transportista Público o Comercial: Si usted asistirá a votante a depositar el sobre de envío en el correo o con un transportista público o comercial, usted debe llenar la sección que aparece abajo.)

If you are an assistant or witness, check the appropriate box below and provide information: (Si usted es un asistente o testigo, marque la casilla correcta y proporcione su información):

☐ Assistant/
   Asistente
☐ Witness/
   Testigo
☐ Assistant/
   Asistente
☐ Witness/
   Testigo

| Signature (Firma) | Printed Name (Nombre impreso) | Street Address (Domicilio residencial) |
| --- | --- | --- |

| Signature (Firma) | Printed Name (Nombre impreso) | Street Address (Domicilio residencial) |
| --- | --- | --- |

**General Election**

Completed by Early Voting Clerk: Name of Election (Nombre de Elección): _____ Date of Election (Fecha de Elección): 5-4-2019

Name of Voter (Nombre del votante): _____



RECEIVED
APR 24 2019
CITY OF MCALLEN
MAIL CENTER

Garza, Petra M.
VUID# 1053847790
May 4, 2019
General Election

MCALLEN TX 785
SMD#4
22 APR 2019 PM 2 L

City Secretary's Office
Received
4/24/19
Date

OFFICIAL
ELECTION MAIL
Authorized by the U.S. Postal Service ®

**CARRIER ENVELOPE FOR EARLY VOTING BALLOT**
*(SOBRE DE ENVÍO PARA LA BOLETA DE VOTACIÓN ANTICIPADA)*

Perla Lara, City Secretary
Early Voting Clerk *(Secretario de Votación Anticipada)*

PO Box 220/1300 Houston Ave
Mailing Address *(Dirección Postal)*

McAllen                                    , Texas   78505-0220
City *(Ciudad)*

City Secretary's Office
Received

TO:

**WARNING:** (1) Knowingly possessing another person's ballot or carrier envelope may be a crime unless you provide your signature, printed name and address (2) A person commits an offense if the person compensates another person or receives compensation for depositing a carrier envelope in the mail as part of a scheme in which the person is compensated based on the number of carrier envelopes deposited. For additional information on offenses related to carrier envelopes, please see the "Information About Returning your Carrier Envelope," included with the materials sent to you with your ballot.

**ADVERTENCIA:** (1) El acto de poseer conscientemente la boleta o el sobre de envío de otra persona puede ser un delito a menos de que usted proporcione su firma, nombre impreso, y su dirección. (2) Una persona comete un delito si recompensa o recibe compensación a cambio de depositar el sobre de envío en el correo como parte de un plan en el cual la persona es recompensada en base al número de sobres de envío depositados. Para obtener información adicional sobre los delitos relacionados con los sobres de envío, por favor vea la "Información Sobre Cómo Devolver su Sobre de Envío," incluida con los materiales enviados a usted con su boleta.

5-22 – Prescribed by Secretary of State – 12/17
Section 86.013, Texas Election Code 1/3704

# Application for Ballot by Mail

Inspected by the Office of the Secretary of State of Texas
AS-16-12177

For Official Use Only
VUID # County Election Precinct #, Statement of Residence, etc.

105384770

**1** Last Name (Please print information)
Garza

First Name
Petra

Middle Initial
M

Suffix (Jr., Sr., III, etc)

**2** Residence Address. See back of the application for instructions.
2412 Daytona Ave

City
McAllen

State
TX

ZIP Code
78503

**3** Mail my ballot to: If mailing address differs from residence address, please complete Box #7.

City

State

ZIP Code

**4** Date of Birth (mm/dd/yyyy) (Optional)
7/14/1930

**5** Reason for Voting by Mail

☑ 65 years of age or older (**Complete Box #6a**)

☐ Disability (**Complete Box #6a**)

☐ Expected absence from the county (**Complete Box #6a and Box #8**)

☐ You will receive a ballot for the upcoming election only.

☐ Confinement in Jail. (**Complete Box #6b**)
☐ You will receive a ballot for the upcoming election only

**6a** ONLY Voters 65 Years of Age or Older OR Voters with a Disability:
If applying for one election, select appropriate box.
If applying once for the calendar year, select "Annual Application."
☑ Annual Application

Primary Elections:
You must declare a political party to vote in a primary.
☐ Democratic Primary
☐ Republican Primary
☐ Any Resulting Runoff

☑ May Session
☐ November Election
☐ Other: _____

**6b** ONLY Voters Absent from County or Voters Confined in Jail:
You may only apply for a ballot by mail for one election, and any resulting runoff.
Please select the appropriate box.

Uniform and Other Elections:
☐ May Election:
You must declare which election you are applying for.
☐ November Election
☐ Other: _____

Primary Elections:
You must declare a political party to vote in a primary.
☐ Democratic Primary
☐ Republican Primary
☐ Any Resulting Runoff

**7** Contact Information (Optional)
Please list phone number and/or email address.
* Used to answer any questions.

**8** If you are requesting a ballot be mailed to a different address (other than residence), indicate where the ballot will be mailed. See reverse for instructions.
☑ Mailing Address as listed on my voter registration certificate
☐ Nursing home, assisted living facility, or long term care facility:
☐ Hospital
☐ Retirement Center

☐ Address of the jail
☐ Relative, relationship: _____
☐ Address outside the county (see Box #9)

**9** Voters may submit a completed, signed, and scanned application to the Early Voting Clerk at:
plara@mcallen.net
(956)681-1029
(early voting clerk's email address)
(early voting clerk's fax)
NOTE: If you fax or e-mail this form, please be sure that you must also mail this form to the early voting clerk within four business days. See "Submitting Application" on the back of this form for additional information.

**10** "I certify that the information given in this application is true, and I understand that giving false information in this application is a crime."

SIGN HERE
If applicant is unable to sign or make a mark in the presence of a witness, the witness shall complete Box #11.

X _Petra M Garza_
Date

* Missing
date * check
* legal = OK √

**11** See back for Witness and Assistant definitions.
If applicant is unable to mark Box #10 and you are acting as a Witness to that fact, please check this box and sign below.  ☐

If you are acting as an Assistant in completing this application, the applicant's presence or the e-mailed/mailed or faxed this application on behalf of the applicant, please check this box as an Assistant and sign below.
* If you are acting as a Witness and Assistant, please check both boxes. Failure to complete this information is a Class A misdemeanor if signature was witnessed or applicant was assisted in completing the application.

X _____
Signature of Witness/Assistant

X _____
Printed Name of Witness/Assistant

_____
Street Address

Apt Number (if applicable)

City

ZIP Code

Witness Relationship to Applicant
(Refer to instructions on back for clarification)

Date

If someone helped you to complete this form or mails the form for you, then that person must complete the sections below.

Este formulario está disponible en Español. Para conseguir la versión en Español favor de llamar sin cargo al 1.800.252.8683 a la oficina del Secretario de Estado o la Secretaria de Votación por Adelantado.

954

4

DO NOT REMOVE PERFORATED TABS. Moisten tab and fold top to bottom to seal.

FROM:

Petra Garza

2412 Daytona Ave

McAllen, TX. 78503-7511

AFFIX LABEL HERE OR ADDRESS

To: Early Voting Clerk

Perla Lara

PO Box 220/1300 Houston Ave.

McAllen Texas 78505-0220

City Secretary's Office
Revised
Date 4-18-19

AWS-42
Prescribed by Secretary of State
Sec. 87.0431, Texas Election Code
3/07

## NOTICE OF REJECTED BALLOT

This is to serve as notice that your ballot for the ___May 4, 2019___ Election was rejected by the early voting ballot board and was not counted.

Name of Voter _SALINAS, ROSAURA_

VUID Number _1654749957_

Reason for Rejection: (Check As Appropriate)

_____ 1) Certificate on carrier envelope was not properly executed.
 _____ You failed to sign your signature or make your mark.
 _____ The witness failed to indicate on the envelope that you could not make a mark.
 _____ The assistant or witness failed to print their name.
 _____ The assistant or witness failed to sign their name.
 _____ The residence address of the assistant or witness was not given.

_____ 2) It was determined that the signature on the application for ballot by mail and carrier envelope was not signed by the same person.

_____ 3) Application for ballot by mail did not state a legal ground for voting by mail.

_____ 4) Voter registration records indicated you did not have an effective registration for this election.

_____ 5) Address to which ballot was mailed was not outside the county. Voting early by mail due to expected absence from the county requires balloting materials be mailed to an address outside the county.

_____ 6) The residence address on the statement of residence is not located in the political subdivision conducting the election.

_____ 7) The mailing address on the application for ballot by mail did not match your voter registration address nor did the mailing address match any addresses provided on your statement of residence. Since you did not indicate on your application for a ballot by mail that you were having your ballot mailed to a hospital, retirement center, long term care facility, nursing home, jail, or a relative, your ballot was rejected.

_____ 8) The statement of residence was not included in the carrier envelope.

_____ 9) No identification was included with your mail ballot.

✓ 10) Other:

_No Ballot_

Signature of Early Voting Ballot Board Judge

___May 4, 2019___
Date

AW5-42
Requerido por el Secretario de Estado
Frac. 87.0431, Código Electoral
3/07

## AVISO DEL RECHAZO DE UNA PAPELETA ELECTORAL

Por medio de éste se le notifica que la papeleta electoral que usted entregó en las elecciones 4 de mayo de 2019 fue rechazada por el Consejo de Votación por Adelantado y no fue incluido en el conteo final.

Nombre del elector *SALINAS, ROSAURA*
VUID de inscripción electoral número *1054149957*

La razón del rechazo fue (a continuación indique las razones):

_____ 1) La constancia que aparece en el sobre de entrega no se firmó en forma apropiada.
_____ Le falta su firma o marca.
_____ El testigo no anotó en el sobre que Ud. no puede hacer su marca.
_____ Falta el nombre del testigo o la persona quien le ayudó en letras de molde.
_____ Falta la firma del testigo o de la persona quien le ayudó votar.
_____ Falta el domicilio del testigo o el de la persona quien le ayudó votar.

_____ 2) Un análisis de las firmas que aparecen en la solicitud de una papeleta postal y el sobre de entrega indica que éstas no son la letra de la misma persona.

_____ 3) De acuerdo a la ley, la razón dada en la solicitud de una papeleta postal no lo califica para poder votar por correo.

_____ 4) Las actas del registro electoral indican que en la fecha en que celebraron estas elecciones, usted no estaba inscrito como votante.

_____ 5) El domicilio al cual se envió la papeleta está ubicado dentro de este condado. Sólo aquellas personas que anticipan estar fuera del condado pueden votar por anticipado y por correo, por esta razón la papeleta electorales se tiene que enviar a un domicilio ubicado fuera del condado.

_____ 6) El domicilio indicado en la solicitud de una papeleta postal no queda dentro del área geográfica de la entidad política que efectúa estas elecciones.

_____ 7) El domicilio indicado en la solicitud de una papeleta postal no es igual al indicado en: la constancia de domicilio permanente ni su inscripción electoral ni es la dirección postal indicada en su solicitud de inscripción. Además, usted no indicó que su papeleta debería enviarse a un hospital, centro de jubilación, centro de cuidados médicos a largo plazo, centro de enfermería o el hogar de algún familiar.

_____ 8) La constancia de domicilio permanente no vino incluida en el sobre de entrega.

_____ 9) No incluyó ninguna identificación con su boleta por correo.

✓ 10) Otra: *No Ballot* _____

_____
Firma del Juez del Consejo Administrativo de
las Papeletas de Votación por Adelantado

4 de mayo de 2019
Fecha

# Application for Ballot by Mail

Prescribed by the Office of the Secretary of State of Texas
AS-48 2017

For Official Use Only
VUID #, County Election Precinct #,
Statement of Residence, etc.

**1** Last Name (Please print information)
Salinas

Suffix (Jr., Sr., III, etc)

First Name
Rosaura

Middle Initial

**2** Residence Address: See back of this application for instructions.
2309 S 45th St

City
McAllen

State
, TX

ZIP Code
78503

**3** Mail my ballot to: If mailing address differs from residence address, please complete Box # 7.

City

State

ZIP Code

**4** Date of Birth (mm/dd/yyyy) (Optional)
9/22/1945

**5** Reason for Voting by Mail:
If applying by mail (Complete Box #5a)
If applying for one election, select appropriate box.
If applying once in the calendar year, select "Annual Application."

☐ 65 years of age or older (Complete Box #5a)
☐ Disability (Complete Box #5a)
☐ Expected absence from the county (Complete Box #8b and Box #9)
☐ You will receive a ballot for the next election each only
☐ Other:
☐ Confinement in jail (Complete Box #6b)
☐ You will receive a ballot for the upcoming election only

**6a** ONLY Voters 65 Years of Age or Older or Voters with a Disability:
If applying for one election, select appropriate box.
If applying once in the calendar year, select "Annual Application."*
Please select the appropriate box.

☐ Annual Application

**6b** ONLY Voters Absent from County or Voters Confined in Jail:
Your may only apply for a ballot by mail for one election, and any resulting runoff.
Please select the appropriate box.

Uniform and Other Elections:
☐ May Election
☐ November Election
☐ Other:

Primary Elections:
You must declare one political party to vote in:
☐ Democratic Primary
☐ Republican Primary

☐ Any Resulting Runoff

**7** If you are requesting this ballot be mailed to a different address (other than residence), indicate where the ballot will be mailed. See reverse for instructions.

☐ Mailing Address as listed on my voter registration certificate
☐ Nursing home, assisted living facility, or long term care facility
☐ Hospital
☐ Retirement Center

☐ Address of the Jail
☐ Relative, relationship
☐ Address outside the county (see Box #8)

**8** If you selected "expected absence from the county," see reverse for instructions

Date of Return to residence address

**9** Date you can begin to receive mail at this address

Mail completed application to the Early Voting Clerk at:
(956) 681-1029
(early voting clerk's fax)

plara@mcallen.net
(early voting clerk's e-mail address)

NOTE: If you fax or e-mail this form, please be aware that you must also mail this form to the early voting clerk within four business days. See "Submitting Application" on the back of this form for additional information.

**10** "I certify that the information given in this application is true, and I understand that giving false information in this application is a crime."

SIGN HERE
If applicant is unable to sign or make a mark in the presence of a witness, the witness shall complete Box #11.

X _____ Date 0 4 - 16 - 19

Printed Name of Witness/Assistant

Witness' Relationship to Applicant
(Refer to instructions on back for clarification)

**11** See back for Witness and Assistant definitions.
If applicant is unable to mark Box #10 and you are acting as a Witness to that fact, please check this box and sign below.  ☐
If you assisted the applicant in completing this application in the applicant's presence or e-mailed/faxed the information on behalf of the applicant, please check this box as an Assistant and sign below.  ☐
If you are acting as a Witness and Assistant, please check both boxes. Failure to complete this information as a Class A misdemeanor if signature was witnessed or applicant was assisted in completing the application.

X _____
Signature of Witness/Assistant

Street Address

Apt. Number (if applicable)

City

State

ZIP Code

Este formulario está disponible en Español. Para conseguir la versión en Español favor de elegir sin cargo al 1-800-252-8683 o la oficina del Secretario.

105474949157

4

DO NOT REMOVE PERFORATED TABS. Moisten tab and fold top to bottom to seal.

FROM: Rosaura Salinas
2309 S 45th St
McAllen, TX. 78503-8177

MCALLEN TX 785
17 APR 2019 PM 2 L

RECEIVED
APR 18 2019
CITY OF MCALLEN
MAIL CENTER

AFFIX LABEL HERE OR ADDRESS

City Secretary's Office
Received
Date 4-18-2019

To: Early Voting Clerk
Perla Lara
PO Box 220/1300 Houston Ave.
McAllen Texas 78505-0220

78505$0220

## Instructions for Application for Ballot by Mail

**Residence Address** - Give full address as shown on your voter registration certificate. If you have moved within the county but not yet changed your voter registration address with the voter registrar, indicate your new residence address.

**Mail Ballot To** - Give full address where you wish to have ballot mailed, if the address is different from your residence address.

**Mailing Ballot to a Different Address** - Your ballot must be mailed to your home where you live or to your mailing address on your voter registration certificate. There are some exceptions that allow you to have your ballot mailed to a different location as specified below.

| Reason for voting by mail | Location to mail ballot |
|---|---|
| 65 or disabled | Nursing home, assisted living/retirement center, relative, hospital |
| In jail | Address of jail or relative |
| Absent from county | Address located outside of county |

**Expected Absence from County** - If you chose expected absence from county, you must expect to be absent from the county on election day and during the hours of early voting in person or for the remainder of the early voting period after you submit your application. **Your ballot must be mailed to an address outside the county.** Important: Give date you can begin to receive mail at the address given.

**Annual Application** - If you are 65 years of age or older, or disabled you may apply to receive all ballots by mail for a calendar year. If you do not select any elections in Box 6a, your application will be considered an Annual Application. If you submit an annual application for a ballot by mail, your application may be forwarded to other entities holding elections where you are a qualified voter. This means that you may receive a ballot for those elections in addition to the ballot(s) you requested with this application.

### Submitting Application

**1. Sign and date your application** - If unable to sign, please go to Witness/Address boxes (11 on reverse) and have a person witness your mark. Witness/Assistant instructions follow below.

**2. Deliver to Early Voting Clerk** - You may submit your application via these methods:

In Person: Only the applicant may submit their application in person to the Early Voting Clerk until the early voting period begins. However, after the early voting period begins for an election, the applicant may only submit their application via mail, common contract carrier, fax, or e-mail.

By Mail: You may mail your application via the U.S. Postal Service.

By Common Contract Carrier: You may submit via a common or contract carrier which is a bona fide, for profit carrier.

By Fax: You may fax your application to the Early Voting Clerk. Please contact your Early Voting Clerk or the Secretary of State's Office for fax numbers.

By E-Mail: You may e-mail a signed, scanned image of your application to the Early Voting Clerk. Please contact your Early Voting Clerk or the Secretary of State's Office for e-mail addresses.

**IF YOU FAX OR E-MAIL YOUR APPLICATION TO THE EARLY VOTING CLERK, YOU MUST ALSO MAIL THE APPLICATION SO THAT THE CLERK RECEIVES IT NO LATER THAN THE FOURTH BUSINESS DAY AFTER THE DAY THE CLERK RECEIVED YOUR FAXED OR EMAILED APPLICATION.** If you fax or e-mail your application by the deadline noted below, your application will be considered complete and timely as long as the original is received by the early voting clerk by the fourth business day after it was submitted by fax or e-mail.

### Deadline

Your application must be received by the early voting clerk of the local entity conducting the election not later than the 11th day before election day. If the 11th day is a weekend or holiday, the deadline is the first preceding business day. You may submit an application throughout the calendar year, beginning January 1. Please remember that the application must be received not later than the 11th day before the first election in which you seek to vote by mail.

If you submit an Annual Application for Ballot by Mail within 60 days before an election that takes place in the following calendar year, your application will be valid for any election that takes place in the following calendar year, regardless of the fact that your application was submitted prior to the end of the preceding calendar year. This applies to Annual Applications only and not to a regular application for ballot by mail.

### Witness/Assistant Section

**Witness:** If you are unable to sign your name (due to a physical disability or illiteracy), the application may be signed at Box #11 for you by a Witness. You must affix your mark to the application in Box #10 or, if you are unable to make a mark, then the Witness must check the appropriate box in 11 indicating the inability to make a mark. The Witness must state his/her name in printed form and indicate his/her relationship to you or, if unrelated, state that fact. The Witness must sign and provide his or her printed name and residence address. Unless the Witness is a close relative of the voter (parent, grandparent, spouse, child or sibling), it is a Class B misdemeanor for a person to witness more than one application for ballot by mail.

**Assistant:** If a person (other than a close relative or person registered to vote at the same address) assists you in completing this application in your presence or mails/faxes/e-mails this application on your behalf, then that person must complete Box #11. The Assistant must sign, provide his or her printed name, and his or her residence address. A person commits a Class A misdemeanor if the person provides assistance without providing the information described above unless a close relative or registered at your address.

If you have further questions or need additional assistance, please contact your Early Voting Clerk or The Secretary of State's office at 1-800-252-8683 www.sos.state.tx.us.

AW5-42
Prescribed by Secretary of State
Sen. 87.0431, Texas Election Code
3/07

## NOTICE OF REJECTED BALLOT

This is to serve as notice that your ballot for the ___May 4, 2019___ Election was rejected by the early voting ballot board and was not counted.

Name of Voter ___Jack Egger___

VUID Number ___2148463767___

Reason for Rejection: (Check As Appropriate)

_____ 1) Certificate on carrier envelope was not properly executed.
_____ You failed to sign your signature or make your mark.
_____ The witness failed to indicate on the envelope that you could not make a mark.
_____ The assistant or witness failed to print their name.
_____ The assistant or witness failed to sign their name.
_____ The residence address of the assistant or witness was not given.

_____ 2) It was determined that the signature on the application for ballot by mail and carrier envelope was not signed by the same person.

_____ 3) Application for ballot by mail did not state a legal ground for voting by mail.

_____ 4) Voter registration records indicated you did not have an effective registration for this election.

_____ 5) Address to which ballot was mailed was not outside the county. Voting early by mail due to expected absence from the county requires balloting materials be mailed to an address outside the county.

_____ 6) The residence address on the statement of residence is not located in the political subdivision conducting the election.

_____ 7) The mailing address on the application for ballot by mail did not match your voter registration address nor did the mailing address match any addresses provided on your statement of residence. Since you did not indicate on your application for a ballot by mail that you were having your ballot mailed to a hospital, retirement center, long term care facility, nursing home, jail, or a relative, your ballot was rejected.

_____ 8) The statement of residence was not included in the carrier envelope.

_____ 9) No identification was included with your mail ballot.

___✓___ 10) Other: ___Ballot returned to City Secretary___

Signature of Early Voting Ballot Board Judge

___May 4, 2019___
Date

AWS-42
Requerido por el Secretario de Estado
Frac. 87.0431, Código Electoral
3/07

## AVISO DEL RECHAZO DE UNA PAPELETA ELECTORAL

Por medio de éste se le notifica que la papeleta electoral que usted entregó en las elecciones 4 de mayo de 2019 fue rechazada por el Consejo de Votación por Adelantado y no fue incluido en el conteo final.

Nombre del elector _Jack Egger_
VUID de inscripción electoral número _214816 3167_

La razón del rechazo fue (a continuación indique las razones):

_____ 1) La constancia que aparece en el sobre de entrega no se firmó en forma apropiada.
_____ Le falta su firma o marca.
_____ El testigo no anotó en el sobre que Ud. no puede hacer su marca.
_____ Falta el nombre del testigo o la persona quien le ayudó en letras de molde.
_____ Falta la firma del testigo o de la persona quien le ayudó votar.
_____ Falta el domicilio del testigo o el de la persona quien le ayudó votar.

_____ 2) Un análisis de las firmas que aparecen en la solicitud de una papeleta postal y el sobre de entrega indica que éstas no son la letra de la misma persona.

_____ 3) De acuerdo a la ley, la razón dada en la solicitud de una papeleta postal no lo califica para poder votar por correo.

_____ 4) Las actas del registro electoral indican que en la fecha en que celebraron estas elecciones, usted no estaba inscrito como votante.

_____ 5) El domicilio al cual se envió la papeleta está ubicado dentro de este condado. Sólo aquellas personas que anticipan estar fuera del condado pueden votar por anticipado y por correo, por esta razón la papeleta electorales se tiene que enviar a un domicilio ubicado fuera del condado.

_____ 6) El domicilio indicado en la solicitud de una papeleta postal no queda dentro del área geográfica de la entidad política que efectúa estas elecciones.

_____ 7) El domicilio indicado en la solicitud de una papeleta postal no es igual al indicado en: la constancia de domicilio permanente ni su inscripción electoral ni es la dirección postal indicada en su solicitud de inscripción. Además, usted no indicó que su papeleta debería enviarse a un hospital, centro de jubilación, centro de cuidados médicos a largo plazo, centro de enfermería o el hogar de algún familiar.

_____ 8) La constancia de domicilio permanente no vino incluida en el sobre de entrega.

_____ 9) No incluyó ninguna identificación con su boleta por correo.

_✓_ 10) Otra: _Ballot returned to City Secretary_

Firma del Juez del Consejo Administrativo de
las Papeletas de Votación por Adelantado

4 de mayo de 2019
Fecha



From (De) _____

**Perla Lara, City Secretary**

P.O. Box 220 / 1300 Houston Ave.

**McAllen** _____ , Texas _____ 78505-0220

RECEIVED

Records Management Department

RECEIVED

APR 18 2019

City Secretary's Office

Received

Date 4/8/19

This envelope contains blank
EARLY VOTING OFFICIAL BALLOT
and accompanying envelopes for:

(Este sobre contiene en blanco
BOLETA OFICIAL PARA VOTACION EN ADELANTADA
Y sobres acompañantes para)

_____ Voter (Votante)

# City of McAllen
## General City Election

or (para) _____ Election (Eleccion)

7-28— Prescribed by Secretary of State — 08/15
ection 86.003, Texas Election Code-173706

Called the
following #'s:

407-0410 (wrong #)
907-0410 (N/A)
407-6910 (left mssage)
907-0910 (N/A)

Egger, Jack A.
650 River Rd. # 5209
San Marcos, TX. 78666

962

Application for Ballot by Mail

21481631607

5

AWS-42
Prescribed by Secretary of State
Sec. 87.0431, Texas Election Code
3/07

## NOTICE OF REJECTED BALLOT

This is to serve as notice that your ballot for the ___May 4, 2019___ Election was rejected
by the early voting ballot board and was not counted.

Name of Voter ___Felipe Tijerina Jr___
VUID Number ___1054284513___

Reason for Rejection: (Check As Appropriate)

_____ 1) Certificate on carrier envelope was not properly executed.
_____ You failed to sign your signature or make your mark.
_____ The witness failed to indicate on the envelope that you could not
make a mark.
_____ The assistant or witness failed to print their name.
_____ The assistant or witness failed to sign their name.
_____ The residence address of the assistant or witness was not given.

_____ 2) It was determined that the signature on the application for ballot by mail and
carrier envelope was not signed by the same person.

_____ 3) Application for ballot by mail did not state a legal ground for voting by mail.

_____ 4) Voter registration records indicated you did not have an effective registration
for this election.

_____ 5) Address to which ballot was mailed was not outside the county. Voting
early by mail due to expected absence from the county requires balloting
materials be mailed to an address outside the county.

_____ 6) The residence address on the statement of residence is not located in the
political subdivision conducting the election.

_____ 7) The mailing address on the application for ballot by mail did not match your
voter registration address nor did the mailing address match any addresses
provided on your statement of residence. Since you did not indicate on your
application for a ballot by mail that you were having your ballot mailed to a
hospital, retirement center, long term care facility, nursing home, jail, or a
relative, your ballot was rejected.

_____ 8) The statement of residence was not included in the carrier envelope.

_____ 9) No identification was included with your mail ballot.

___✓___ 10) Other: ___VOTED AT PALM VIEW Community Center___

_____
Signature of Early Voting Ballot Board Judge

___May 4, 2019___
Date

AW5-42
Requerido por el Secretario de Estado
Frac. 87.0431, Código Electoral
3/07

## AVISO DEL RECHAZO DE UNA PAPELETA ELECTORAL

Por medio de éste se le notifica que la papeleta electoral que usted entregó en las elecciones 4 de mayo de 2019 fue rechazada por el Consejo de Votación por Adelantado y no fue incluido en el conteo final.

Nombre del elector  Felipe Tijerina Jr.
VUID de inscripción electoral número  105 428 4513

La razón del rechazo fue (a continuación indique las razones):

1) La constancia que aparece en el sobre de entrega no se firmó en forma apropiada.
   _____ Le falta su firma o marca.
   _____ El testigo no anotó en el sobre que Ud. no puede hacer su marca.
   _____ Falta el nombre del testigo o la persona quien le ayudó en letras de molde.
   _____ Falta la firma del testigo o de la persona quien le ayudó votar.
   _____ Falta el domicilio del testigo o el de la persona quien le ayudó votar.

2) Un análisis de las firmas que aparecen en la solicitud de una papeleta postal y el sobre de entrega indica que éstas no son la letra de la misma persona.

3) De acuerdo a la ley, la razón dada en la solicitud de una papeleta postal no lo califica para poder votar por correo.

4) Las actas del registro electoral indican que en la fecha en que celebraron estas elecciones, usted no estaba inscrito como votante.

5) El domicilio al cual se envió la papeleta está ubicado dentro de este condado. Sólo aquellas personas que anticipan estar fuera del condado pueden votar por anticipado y por correo, por esta razón la papeleta electorales se tiene que enviar a un domicilio ubicado fuera del condado.

6) El domicilio indicado en la solicitud de una papeleta postal no queda dentro del área geográfica de la entidad política que efectúa estas elecciones.

7) El domicilio indicado en la solicitud de una papeleta postal no es igual al indicado en: la constancia de domicilio permanente ni su inscripción electoral ni es la dirección postal indicada en su solicitud de inscripción. Además, usted no indicó que su papeleta debería enviarse a un hospital, centro de jubilación, centro de cuidados médicos a largo plazo, centro de enfermería o el hogar de algún familiar.

8) La constancia de domicilio permanente no vino incluida en el sobre de entrega.

9) No incluyó ninguna identificación con su boleta por correo.

10) Otra:  VOTO EN Palm View Community Center

Firma del Juez del Consejo Administrativo de las Papeletas de Votación por Adelantado

4 de mayo de 2019
Fecha

965

**DO NOT REMOVE PERFORATED TABS. Moisten here and fold bottom to top to seal.    DO NOT REMOVE PERFORATED TABS. Moisten here and fold bottom to top to seal.**

## Application for Ballot by Mail

Prescribed by the Office of the Secretary of State of Texas
A6-45 12/17

For Official Use Only
VUID #, County, Election Precinct #,
Statement of Residence, etc.

105 42 84513

1. Last Name (Please print information)
Tijerina    First Name: Felipe    Middle Initial

2. Residence Address: See back of this application for instructions.
3101 Jordan Ave #L-34    City: McAllen    ,TX    ZIP Code: 78503

3. Mail my ballot to: (if mailing address differs from residence address, please complete Box #7.)
City    State    ZIP Code

4. Date of Birth (mm/dd/yyyy) (Optional)
2/5/1944

Suffix (Jr., Sr., III, etc)

5. Reason for Voting by Mail:
☐ 65 years of age or older. (Complete Box #6a)
☐ Disability. (Complete Box #6a)
☐ Expected absence from the county. (Complete Box #6a and Box #8)
☐ You will not receive a ballot for the upcoming election only.
☐ Confinement in jail. (Complete Box #6b)
☐ You will receive a ballot for the upcoming election only

6a. ONLY Voters 65 Years of Age or Older or Voters with a Disability:
If applying for one election, select appropriate box.
If applying once for elections in the calendar year, select "Annual Application."
☐ Annual Application

Uniform and Other Elections:
☐ Uniform Election
☐ November Election
☐ Other: _____

Primary Elections:
(You must declare one political party to vote in a primary.)
☐ Democratic Primary
☐ Republican Primary
☐ Any Resulting Runoff

6b. ONLY Voters Confined in Jail:
You may only apply for a ballot for one election, and any resulting runoff.
Please select the appropriate box.

Uniform and Other Elections:
☐ New Election
☐ November Election
☐ Other: _____

Primary Elections:
(You must declare one political party to vote in a primary.)
☐ Democratic Primary
☐ Republican Primary
☐ Any Resulting Runoff

7. If you are requesting this ballot be mailed to a different address (other than residence), indicate where the ballot will be mailed. See reverse for instructions.
☐ Mailing Address as listed on my voter registration certificate.
☐ Nursing home, assisted living facility, or long term care facility:
☐ Hospital
☐ Retirement Center
☐ Address of the jail
☐ Relative: relationship _____
☐ Address outside the county (see Box #3)

Contact Information (Optional):
Please list phone number and/or email address.
☐ Used in case our office has questions.

8. If you selected "expected absence from the county," see reverse for instructions.

Date you can begin to receive mail at this address: _____    Date of return to residence address: _____

9. Voters who assist a non-relative, (signed, and signature to the Election/Voting Clerk at:
piara@mcallen.net    (956)681-1029    (verify voting clerk's fax)

NOTE: If you fax or e-mail this form, please be aware that you must also mail this form to the early voting clerk within four business days. See "Submitting Application" on the back of this form for additional information.

10. "I certify that the information given in this application is true, and I understand that giving false information in this application is a crime."

SIGN HERE
If applicant is unable to sign or make a mark in the presence of a witness, the witness shall complete Box #11.

X _[signature]_    Date: 4/18/19

11. See back for Witness and Assistant definitions.
If applicant is unable to mark Box #10 and you are acting as a Witness to that fact, please check this box and sign below.    ☐

If you assisted the applicant in completing this application in the applicant's presence or e-mailed/faxed the application on behalf of the applicant, please check this box as an Assistant and sign below.    ☐

If you are acting as Witness and Assistant, please check both boxes. Failure to complete this information is a Class A misdemeanor if signature was witnessed or applicant was assisted in completing the application.

X _____    X _____
Signature of Witness /Assistant    Printed Name of Witness/Assistant

_____    _____    _____
Street Address    Apt Number (if applicable)    City

_____    _____
State    ZIP Code

Witness' Relationship to Applicant
(Refer to instructions on back for clarification)

If someone helped you to complete this form or mails this form for you, then that person must complete the section below.

Este formulario está disponible en Español. Para conseguir la versión en Español favor de llamar sin cargo al 1.800.252.8683 a la oficina del Secretario de Estado o la Secretaría de Votación, por Adelantado.

4

966



# Instructions for Application for Ballot by Mail

**Residence Address** - Give full address as shown on your voter registration certificate. If you have moved within the county but not yet changed your voter registration address with the voter registrar, indicate your new residence address.

**Mail Ballot To** - Give full address where you wish to have ballot mailed, if the address is different from your residence address.

**Mailing Ballot to a Different Address** - Your ballot must be mailed to your home where you live or to your mailing address on your voter registration certificate. There are some exceptions that allow you to have your ballot mailed to a different location as specified below:

| Reason for voting by mail | Location to mail ballot |
|---|---|
| 65 or disabled | Nursing home, assisted living/retirement center, relative, hospital |
| In jail | Address of jail or relative |
| Absent from county | Address located outside of county |

**Expected Absence from County** - If you chose expected absence from county, you must expect to be absent from the county on election day and during the hours of early voting in person or for the remainder of the early voting period after you submit your application. **Your ballot must be mailed to an address outside the county.** Important: Give date you can begin to receive mail at the address given.

**Annual Application** - If you are 65 years of age or older, or disabled you may apply to receive all ballots by mail for a calendar year. If you do not select any elections in Box 6a, your application will be considered an Annual Application. If you submit an annual application for a ballot by mail, your application may be forwarded to other entities holding elections where you are a qualified voter. This means that you may receive a ballot for those elections in addition to the ballot(s) you requested with this application.

## Submitting Application

**1. Sign and date your application** - If unable to sign, please go to Witness/Address boxes (11 on reverse) and have a person witness your mark. Witness/Assistant instructions follow below.

**2. Deliver to Early Voting Clerk** - You may submit your application via these methods:

In Person: Only the applicant may submit their application in person to the Early Voting Clerk until the early voting period begins. However, after the early voting period begins for an election, the applicant may only submit their application via mail, common contract carrier, fax, or e-mail.

By Mail: You may mail your application via the U.S. Postal Service.

By Common Contract Carrier: You may submit via a common or contract carrier which is a bona fide, for profit carrier.

By Fax: You may fax your application to the Early Voting Clerk. Please contact your Early Voting Clerk or the Secretary of State's Office for fax numbers.

By E-Mail: You may e-mail a signed, scanned image of your application to the Early Voting Clerk. Please contact your Early Voting Clerk or the Secretary of State's Office for e-mail addresses.

**IF YOU FAX OR E-MAIL YOUR APPLICATION TO THE EARLY VOTING CLERK, YOU MUST ALSO MAIL THE APPLICATION SO THAT THE CLERK RECEIVES IT NO LATER THAN THE FOURTH BUSINESS DAY AFTER THE DAY THE CLERK RECEIVED YOUR FAXED OR EMAILED APPLICATION. If you fax or e-mail your application by the deadline noted below, your application will be considered complete and timely as long as the original is received by the early voting clerk by the fourth business day after it was submitted by fax or e-mail.**

## Deadline

Your application must be received by the early voting clerk of the local entity conducting the election not later than the 11th day before election day. If the 11th day is a weekend or holiday, the deadline is the first preceding business day. You may submit an application throughout the calendar year, beginning January 1. Please remember that the application must be received not later than the 11th day before the first election in which you seek to vote by mail.

If you submit an Annual Application for Ballot by Mail within 60 days before an election that takes place in the following calendar year, your application will be valid for any election that takes place in the following calendar year, regardless of the fact that your application was submitted prior to the end of the preceding calendar year. This applies to Annual Applications only and not to a regular application for ballot by mail.

## Witness/Assistant Section

**Witness:** If you are unable to sign your name (due to a physical disability or illiteracy), the application may be signed at Box #11 for you by a Witness. You must affix your mark to the application in Box #10 or, if you are unable to make a mark, then the Witness must check the appropriate box in 11 indicating the inability to make a mark. The Witness must state his/her name in printed form and indicate his/her relationship to you or, if unrelated, state that fact. The Witness must sign and provide his or her printed name and residence address. Unless the Witness is a close relative of the voter (parent, grandparent, spouse, child or sibling), it is a Class B misdemeanor for a person to witness more than one application for ballot by mail.

**Assistant:** If a person (other than a close relative or person registered to vote at the same address) assists you in completing this application in your presence or mails/faxes/e-mails this application on your behalf, then that person must complete Box #11. The Assistant must sign, provide his or her printed name, and his or her residence address. A person commits a Class A misdemeanor if the person provides assistance without providing the information described above unless a close relative or registered at your address.

**If you have further questions or need additional assistance, please contact your Early Voting Clerk or The Secretary of State's office at 1-800-252-8683 or www.sos.state.tx.us.**

DO NOT REMOVE PERFORATED TABS. Moisten tab and fold top to bottom to seal.

FROM: Felipe Tijerina
3101 Jordan Ave # L-34
McAllen, TX. 78503-7837

City Secretary's Office
Received
4/22/19
Date

AFFIX LABEL HERE OR ADDRESS

To: Early Voting Clerk
Perla Lara
PO Box 220/1300 Houston Ave.
McAllen Texas 78505-0220

USA FOREVER

Verified &
this voter
voted on
4/25/19 @ 8:44
am
(Ballot not
mailed)

Tijerina, Felipe Jr.
3101 Jordan Ave # L-34
McAllen, TX 78503

Perla Lara, City Secretary
P.O. Box 220 / 1300 Houston Ave.

McAllen , Texas    78505-0220

4/25/19.
Ballot was retrieved
prior to mail-out.
Location = Palm ViewCC
Citizen voted on-site.

* Noted on List.
                    - John

Y sobres acompañantes para)

Voter (Votante)

City of McAllen
General City Election

Election (Eleccion)

from (De)

or (para)

73b - Prescribed by Secretary of State — 08/15
ection 86.003, Texas Election Code -173706

968

WARNING: (1) Knowingly possessing another person's ballot or carrier envelope may be a crime unless your provide your signature, printed name and address (2) A person commits an offense if, the person compensates another person or receives compensation for depositing a carrier envelope in the mail as part of a scheme in which the person is compensated based on the number of carrier envelopes deposited. For additional information on offenses related to carrier envelopes, please see the "Information About Returning your Carrier Envelope," included with the materials sent to you with your ballot.

ADVERTENCIA: (1) El acto de poseer conscientemente la boleta o el sobre de envío de otra persona puede ser un delito a menos de que usted proporcione su firma, nombre impreso, y su dirección. (2) Una persona comete un delito si recompensa o recibe compensación a cambio de depositar el sobre de envío en el correo como parte de un plan en el cual la persona es recompensada en base al número de sobres de envío depositados. Para obtener información adicional sobre los delitos relacionados con los sobres de envío, por favor vea la "Información Sobre Cómo Devolver su Sobre de Envío," incluido con los materiales enviados a usted con su boleta.

5-22 – Prescribed by Secretary of State – 12/17
Section 86.013, Texas Election Code 173704

Alaniz, Ana Maria
VUID# 105312987 SMD# 5
May 4, 2019
General Election

MCALLEN TX 785
22 MAR 2019 PM 1 T

☆ OFFICIAL ☆
ELECTION MAIL
Authorized by U.S. Postal Service

CARRIER ENVELOPE FOR EARLY VOTING BALLOT
(SOBRE DE ENVÍO PARA LA BOLETA DE VOTACIÓN ANTICIPADA)

TO (A):

Perla Lara, City Secretary
Early Voting Clerk (Secretario de Votación Anticipada)

Mailing Address (Dirección Postal)

P.O. Box 220/1300 Houston Ave

McAllen                          Texas   78505-0220
City (Ciudad)                            Zip (Código Postal)

CITY OF McALLEN
MAR 25 2019
City Secretary's Office
Received

3/25/19

**Instructions:** This envelope must be sealed and signed by the voter before it leaves the voter's hands. Do not sign this envelope unless the ballot has been marked by you or at your direction. This carrier envelope may not be used to return more than one voter's ballot. For instructions on the methods and deadlines to deliver this carrier envelope, see the "Information About Returning your Carrier Envelope," included with the materials sent to you with your ballot. (Instrucciones al Votante: Selle este sobre y después firme su nombre en el espacio proporcionado abajo. Este sobre debe de ser sellado y firmado por el votante antes de que el votante lo entregue. No firme este sobre a menos de que la boleta haya sido llenada por usted o bajo su dirección. Este sobre de envío no debe ser utilizado para entregar la boleta de más de un solo votante. Para obtener instrucciones sobre los métodos y plazos para entregar este sobre de envío, vea la "Información Sobre Cómo Devolver su Sobre de Envío," incluido con los materiales enviados a usted con su boleta.

I certify that the enclosed ballot expresses my wishes independent of any dictation or persuasion by any person. (Certifico que la boleta adjunta expresa mis deseos independientemente de ningún dictado o persuasión indebida por parte de cualquier persona.)

**SEAL ENVELOPE AND SIGN OVER SEALED FLAP**
(SELLE EL SOBRE Y FIRME ENCIMA DE SOLAPA DEL SOBRE)

X _____ **SIGNATURE OR MARK OF VOTER (FIRMA O MARCA DEL VOTANTE)**

**Instructions to Assistant:** A voter may only be assisted with reading or marking the ballot if they have a physical disability that renders them unable to write or see, or have an inability to read the language in which the ballot is written. If you are assisting the voter, you must read the oath and complete the section below, before assisting the voter. (Instrucciones al Votante: Un votante puede recibir ayuda para leer o llenar la boleta solamente si el votante tiene una discapacidad física la cual le impide escribir o ver, o si no tiene la habilidad de leer el lenguaje en el cual la boleta está escrita. Si usted le proporcionará ayuda a un votante, usted debe leer el juramento y llenar la siguiente sección abajo, antes de asistir al votante.)

**Oath of Person Assisting Voter:** I swear (or affirm) that I will not suggest, by word, sign, or gesture, how the voter should vote; I will confine my assistance to answering the voter's questions, to stating propositions on the ballot, and to naming candidates and, if listed, their political parties; I will prepare the voter's ballot as the voter directs; and I am not the voter's employer, an agent of the voter's employer, or an officer or agent of a labor union to which the voter belongs. (Juramento de la Persona Asistiendo al Votante: Juro (o afirmo) que no sugeriré con palabras, señales, o gestos, la manera en la cual el votante debe votar; limitaré mi asistencia a responder las preguntas del votante, leer propuestas en la boleta, nombrar a los candidatos, y si es mencionado, su partido político; prepararé la boleta del votante de acuerdo a sus instrucciones; y yo no soy el empleador del votante, un agente del empleador del votante, o un oficial o agente de un sindicato al cual el votante pertenece.)

**Instructions to Witness:** You are serving as a witness for _____ (name of voter). You must complete the section below if you witness the mark of the voter, or if the voter cannot make a mark. If the voter cannot make a mark, check here ___. (Instrucciones al Testigo: Usted está fungiendo como testigo para _____ (nombre del votante). Usted debe llenar la siguiente sección abajo si usted fue testigo de que el votante firme, o de que el votante no puede firmar. Si el votante no puede firmar, marque sus iniciales aquí ___.)

**Instructions to Person Depositing Carrier Envelope in Mail or to Common or Contract Carrier:** If you are assisting a voter by depositing the carrier envelope in the mail or with a common or contract carrier, you must complete the section below. (Instrucciones a la Persona Quien Deposite el Sobre de Envío en el Correo o Entregue al Transportista Público o Comercial: Si usted asistirá al votante a depositar el sobre de envío en el correo o con un transportista público o comercial, usted debe llenar la sección que aparece abajo.)

If you are an assistant or witness, check the appropriate box below and provide information: (Si usted es un asistente o testigo, marque la casilla correcta y proporcione su información):

☐ Assistant/ Asistente
☐ Witness/ Testigo

Signature (Firma) _____ Printed Name (Nombre impreso) _____ Street Address (Domicilio residencial) _____

☐ Assistant/ Asistente
☐ Witness y Testigo

Signature (Firma) _____ Printed Name (Nombre impreso) _____ Street Address (Domicilio residencial) _____

Completed by Early Voting Clerk: Name of Election (Nombre de Elección): **General Election**

Name of Voter (Nombre del votante): _____

Date of Election (Fecha de Elección): **5/4/2019**

970

AW5-42
Prescribed by Secretary of State
Sec. 87.0431, Texas Election Code
3/07

## NOTICE OF REJECTED BALLOT

This is to serve as notice that your ballot for the ___May  4,  2019_____ Election was rejected
by the early voting ballot board and was not counted.

Name of Voter ___ANA  MARIA  Alaniz_____

VUID Number ___105531,2981_____

Reason for Rejection: (Check As Appropriate)

_____ 1) Certificate on carrier envelope was not properly executed.
　　　　　　 _____ You failed to sign your signature or make your mark.
　　　　　　 _____ The witness failed to indicate on the envelope that you could not
　　　　　　　　　　make a mark.
　　　　　　 _____ The assistant or witness failed to print their name.
　　　　　　 _____ The assistant or witness failed to sign their name.
　　　　　　 _____ The residence address of the assistant or witness was not given.

✓ 2) It was determined that the signature on the application for ballot by mail and
carrier envelope was not signed by the same person.

_____ 3) Application for ballot by mail did not state a legal ground for voting by mail.

_____ 4) Voter registration records indicated you did not have an effective registration
for this election.

_____ 5) Address to which ballot was mailed was not outside the county.  Voting
early by mail due to expected absence from the county requires balloting
materials be mailed to an address outside the county.

_____ 6) The residence address on the statement of residence is not located in the
political subdivision conducting the election.

_____ 7) The mailing address on the application for ballot by mail did not match your
voter registration address nor did the mailing address match any addresses
provided on your statement of residence.  Since you did not indicate on your
application for a ballot by mail that you were having your ballot mailed to a
hospital, retirement center, long term care facility, nursing home, jail, or a
relative, your ballot was rejected.

_____ 8) The statement of residence was not included in the carrier envelope.

_____ 9) No identification was included with your mail ballot.

_____ 10) Other:

_____
Signature of Early Voting Ballot Board Judge

___May 4, 2019_____
Date

971

AWS-42
Requerido por el Secretario de Estado
Frac. 87.0431, Código Electoral
3/07

## AVISO DEL RECHAZO DE UNA PAPELETA ELECTORAL

Por medio de éste se le notifica que la papeleta electoral que usted entregó en las elecciones
4 de mayo de 2019 fue rechazada por el Consejo de Votación por Adelantado y no fue incluido
en el conteo final.

Nombre del elector ANA MARIA ALANIZ
VUID de inscripción electoral número 1055312987

La razón del rechazo fue (a continuación indique las razones):

_____  1)  La constancia que aparece en el sobre de entrega no se firmó en forma
           apropiada.
           _____  Le falta su firma o marca.
           _____  El testigo no anotó en el sobre que Ud. no puede hacer su marca.
           _____  Falta el nombre del testigo o la persona quien le ayudó en letras de
                  molde.
           _____  Falta la firma del testigo o de la persona quien le ayudó votar.
           _____  Falta el domicilio del testigo o el de la persona quien le ayudó
                  votar.

✓  2)  Un análisis de las firmas que aparecen en la solicitud de una papeleta
       postal y el sobre de entrega indica que éstas no son la letra de la misma
       persona.

_____  3)  De acuerdo a la ley, la razón dada en la solicitud de una papeleta postal no
           lo califica para poder votar por correo.

_____  4)  Las actas del registro electoral indican que en la fecha en que celebraron
           estas elecciones, usted no estaba inscrito como votante.

_____  5)  El domicilio al cual se envió la papeleta está ubicado dentro de este
           condado.  Sólo aquellas personas que anticipan estar fuera del condado
           pueden votar por anticipado y por correo, por esta razón la papeleta
           electorales se tiene que enviar a un domicilio ubicado fuera del condado.

_____  6)  El domicilio indicado en la solicitud de una papeleta postal no queda
           dentro del área geográfica de la entidad política que efectúa estas
           elecciones.

_____  7)  El domicilio indicado en la solicitud de una papeleta postal no es igual al
           indicado en: la constancia de domicilio permanente ni su inscripción
           electoral ni es la dirección postal indicada en su solicitud de inscripción.
           Además, usted no indicó que su papeleta debería enviarse a un hospital,
           centro de jubilación, centro de cuidados médicos a largo plazo, centro de
           enfermería o el hogar de algún familiar.

_____  8)  La constancia de domicilio permanente no vino incluida en el sobre de
           entrega.

_____  9)  No incluyó ninguna identificación con su boleta por correo.

_____  10)  Otra:

Firma del Juez del Consejo Administrativo de
las Papeletas de Votación por Adelantado

4 de mayo de 2019
Fecha

972

**WARNING:** (1) Knowingly possessing another person's ballot or carrier envelope may be a crime unless you provide your signature, printed name and address (2) A person commits an offense if the person compensates another person or receives compensation for depositing a carrier envelope in the mail as part of a scheme in which the person is compensated based on the number of carrier envelopes deposited. For additional information on offenses related to carrier envelopes, please see the "Information About Returning Your Carrier Envelope," included with your ballot materials sent to you with your ballot.

**ADVERTENCIA:** (1) El acto de poseer conscientemente la boleta o el sobre de envío de otra persona puede ser un delito a menos de que usted proporcione su firma, nombre impreso, y su dirección. (2) Una persona comete un delito si recompensa o recibe compensación a cambio de depositar el sobre de envío en el cual la persona es recompensada en base al número de sobres de envío depositados. Para obtener información adicional sobre los delitos relacionados con los sobres de envío, por favor vea la "Información Sobre Cómo Devolver su Sobre de Envío," incluido con los materiales enviados a usted con su boleta.

5-22 – Prescribed by Secretary of State – 12/17
Section 86.013., Texas Election Code 173704

Moffitt, Mary K.
VUID# 1053267582   SMD#5:
May 4, 2019
General Election

*OFFICIAL*
*ELECTION MAIL*
Authorized by the U.S. Postal Service ®

Secretary's Office
Revised

TO (A):

**Perla Lara, City Secretary**
(SOBRE DE ENVÍO PARA LA BOLETA DE VOTACIÓN ANTICIPADA)

CARRIER ENVELOPE FOR EARLY VOTING BALLOT

Early Voting Clerk (Secretario de Votación Anticipada)

**P.O. Box 220/1300 Houston Ave**
Mailing Address (Dirección Postal)

**McAllen** _____ **Texas**
City (Ciudad)              Zip (Código Postal) **78505-0220**

5-2-19

5/2/19

RECEIVED
MAY 0 2 2019
McALLEN
[EARLY VOTING CENTER]

MAY 02 2019

**Instructions:** This envelope must be sealed and signed by the voter before it leaves the voter's hands. Do not sign this envelope unless the ballot has been marked by you or at your direction. This carrier envelope may not be used to return more than one voter's ballot. For instructions on the methods and deadlines to deliver this carrier envelope, see the "Information About Returning your Carrier Envelope," included with the materials sent to you with your ballot. (Instrucciones al Votante: Selle este sobre y después firme su nombre en el espacio proporcionado abajo. Este sobre debe de ser sellado y firmado por el votante antes de que el votante lo entregue. No firme este sobre a menos de que la boleta haya sido llenada por usted o bajo su dirección. Este sobre de envío no debe ser utilizado para entregar la boleta de más de un solo votante. Para obtener instrucciones sobre los métodos y plazos para entregar este sobre de envío, vea la "Información Sobre Cómo Devolver su Sobre de Envío," incluido con los materiales enviados a usted con su boleta.)

I certify that the enclosed ballot expresses my wishes independent of any dictation or undue persuasion by any person. (Certifico que la boleta adjunta expresa mis deseos independientemente de ningún dictado o persuasión indebida por parte de cualquier persona.)

**SEAL ENVELOPE AND SIGN OVER SEALED FLAP**
**(SELLE EL SOBRE Y FIRME ENCIMA DE SOLAPA DEL SOBRE)**

X _____

SIGNATURE OR MARK OF VOTER (FIRMA O MARCA DEL VOTANTE)

**Instructions to Assistant:** A voter may only be assisted with reading or marking the ballot if they have a physical disability that renders them unable to write or see, or have an inability to read the language in which the ballot is written. If you are assisting the voter, you must read the oath and complete the section below, before assisting the voter. (Instrucciones al Asistente: Un votante puede recibir ayuda para leer o llenar la boleta solamente si el votante tiene una discapacidad física la cual le impide escribir o ver, o si no tiene la habilidad de leer el lenguaje en el cual la boleta está escrita. Si usted le proporcionará ayuda a un votante, usted debe leer el juramento y llenar la siguiente sección abajo, antes de asistir al votante.)

**Oath of Person Assisting Voter:** I swear (or affirm) that I will not suggest, by word, sign, or gesture, how the voter should vote; I will confine my assistance to answering the voter's questions, to stating propositions on the ballot, and to naming candidates and, if listed, their political parties; I will prepare the voter's ballot as the voter directs; and I am not the voter's employer, an agent of the voter's employer, or an officer or agent of a labor union to which the voter belongs. (Juramento de la Persona Asistiendo al Votante: Juro (o afirmo) que no sugeriré con palabras, señales, o gestos, la manera en la cual el votante debe votar; limitaré mi asistencia a responder las preguntas del votante, leer propuestas en la boleta, nombrar a los candidatos, y si es mencionado, su partido político; prepararé la boleta del votante de acuerdo a sus instrucciones; y yo no soy el empleador del votante, un agente del empleador del votante, o un oficial o agente de un sindicato al cual el votante pertenece.)

**Instructions to Witness:** You are serving as a witness for _MARY KAY NOFFITT_ (name of voter). You must complete the section below if you witness the mark of the voter, or if the voter cannot make a mark. If the voter cannot make a mark, check here __v__ (Instrucciones al Testigo: Usted está fungiendo como testigo para _____ (nombre del votante). Usted debe llenar la siguiente sección abajo si usted fue testigo de que el votante firmó, o de que el votante no puede firmar. Si el votante no puede firmar, marque sus iniciales aquí ____)

**Instructions to Person Depositing Carrier Envelope in Mail or to Common or Contract Carrier:** If you are assisting a voter by depositing the carrier envelope in the mail or with a common or contract carrier, you must complete the section below. (Instrucciones a la Persona Quien Deposita el Sobre de Envío en el Correo o Entregue al Correo o Entregue al Transportista Público o Comercial: Si usted asistirá al votante a depositar el sobre de envío en el correo o con un transportista público o comercial, usted debe llenar la sección que aparece abajo.)

If you are an assistant or witness, check the appropriate box below and provide information: (Si usted es un asistente o testigo, marque la casilla correcta y proporcione su información):

| | Signature (Firma) | Printed Name (Nombre impreso) | Street Address (Domicilio residencial) |
|---|---|---|---|
| ☑ Assistant/ Asistente ☐ Witness/ Testigo | _William Harris_ | _MELISSA HARRIS_ | _1712 Macfield McMlan TX 7850_ |
| ☑ Assistant/ Asistente ☐ Witness/ Testigo | _Melissa Harris_ | _MELISSA HARRIS_ | _1712 Macfield McMlan TX 7850_ |

Completed by Early Voting Clerk: **Name of Election (Nombre de Elección):** **General Election**

Date of Election (Fecha de Elección): _5/4/2018_

Name of Voter (Nombre del votante): _MARY KAY NOFFITT_

974

AWS-42
Prescribed by Secretary of State
Sec. 87.0431, Texas Election Code
3/07

## NOTICE OF REJECTED BALLOT

This is to serve as notice that your ballot for the ___May 4, 2019___ Election was rejected by the early voting ballot board and was not counted.

Name of Voter _MoFFiT, MARY K._
VUID Number _1053267582_

Reason for Rejection: (Check As Appropriate)

_____ 1)   Certificate on carrier envelope was not properly executed.
_____   You failed to sign your signature or make your mark.
_____   The witness failed to indicate on the envelope that you could not make a mark.
_____   The assistant or witness failed to print their name.
_____   The assistant or witness failed to sign their name.
_____   The residence address of the assistant or witness was not given.

__✓__ 2)   It was determined that the signature on the application for ballot by mail and carrier envelope was not signed by the same person.

_____ 3)   Application for ballot by mail did not state a legal ground for voting by mail.

_____ 4)   Voter registration records indicated you did not have an effective registration for this election.

_____ 5)   Address to which ballot was mailed was not outside the county.  Voting early by mail due to expected absence from the county requires balloting materials be mailed to an address outside the county.

_____ 6)   The residence address on the statement of residence is not located in the political subdivision conducting the election.

_____ 7)   The mailing address on the application for ballot by mail did not match your voter registration address nor did the mailing address match any addresses provided on your statement of residence. Since you did not indicate on your application for a ballot by mail that you were having your ballot mailed to a hospital, retirement center, long term care facility, nursing home, jail, or a relative, your ballot was rejected.

_____ 8)   The statement of residence was not included in the carrier envelope.

_____ 9)   No identification was included with your mail ballot.

_____ 10)   Other:

_____
Signature of Early Voting Ballot Board Judge

___May 4, 2019___
Date

975

AW5-42
Requerido por el Secretario de Estado
Frac. 87.0431, Código Electoral
3/07

## AVISO DEL RECHAZO DE UNA PAPELETA ELECTORAL

Por medio de éste se le notifica que la papeleta electoral que usted entregó en las elecciones 4 de mayo de 2019 fue rechazada por el Consejo de Votación por Adelantado y no fue incluido en el conteo final.

Nombre del elector *Moffit, Mary K.*
VUID de inscripción electoral número *105326758 2*

La razón del rechazo fue (a continuación indique las razones):

1) La constancia que aparece en el sobre de entrega no se firmó en forma apropiada.
_____ Le falta su firma o marca.
_____ El testigo no anotó en el sobre que Ud. no puede hacer su marca.
_____ Falta el nombre del testigo o la persona quien le ayudó en letras de molde.
_____ Falta la firma del testigo o de la persona quien le ayudó votar.
_____ Falta el domicilio del testigo o el de la persona quien le ayudó votar.

2) Un análisis de las firmas que aparecen en la solicitud de una papeleta postal y el sobre de entrega indica que éstas no son la letra de la misma persona.

3) De acuerdo a la ley, la razón dada en la solicitud de una papeleta postal no lo califica para poder votar por correo.

4) Las actas del registro electoral indican que en la fecha en que celebraron estas elecciones, usted no estaba inscrito como votante.

5) El domicilio al cual se envió la papeleta está ubicada dentro de este condado. Sólo aquellas personas que anticipan estar fuera del condado pueden votar por anticipado y por correo, por esta razón la papeleta electorales se tiene que enviar a un domicilio ubicado fuera del condado.

6) El domicilio indicado en la solicitud de una papeleta postal no queda dentro del área geográfica de la entidad política que efectúa estas elecciones.

7) El domicilio indicado en la solicitud de una papeleta postal no es igual al indicado en: la constancia de domicilio permanente ni su inscripción electoral ni la dirección postal indicada en su solicitud de inscripción. Además, usted no indicó que su papeleta debería enviarse a un hospital, centro de jubilación, centro de cuidados médicos a largo plazo, centro de enfermería o el hogar de algún familiar.

8) La constancia de domicilio permanente no vino incluida en el sobre de entrega.

9) No incluyó ninguna identificación con su boleta por correo.

10) Otra: _____

Firma del Juez del Consejo Administrativo de
las Papeletas de Votación por Adelantado

4 de mayo de 2019
Fecha

Guzman-Vargas, Olivia
VOID#1053637317

AWS-000
Prescribed by Secretary of State
Section 86.008(b), 86.0015 Texas Election Code
12/17

## NOTICE OF REJECTED APPLICATION FOR BALLOT BY MAIL

I have received and reviewed your application for a ballot by mail.  I have determined that your application must be rejected for the following reason(s):

(Check as applicable)

_____ 1.  Your application was received earlier than the 60th day before an election held in January or February of the year following the year the ABBM was submitted.

_____ 2.  Your application was not properly delivered.

__X__ 3.  Your application was received after the deadline to apply for a ballot by mail for the upcoming election.
(Check if appropriate:)

_____√_____  However, since you indicated on the application that it was to be an Annual application for a ballot by mail, the application will be considered valid for other elections held this year and for which the application was submitted before the deadline.

_____ 4.  You indicate you are voting due to expected absence from the county, but the address to which your ballot is to be sent is not an address outside the county.  When voting by mail on the grounds of expected absence from the county, the address to which your ballot is to be mailed must be outside the county.

_____ 5.  When voting by mail due to confinement in jail, the address to which your ballot is to be mailed must be that of the jail or a relative.  Your application did not indicate either address.

_____ 6.  Your application was not signed.

_____ 7.  The witness who signed your application did not:
_____ (a)   indicate a relationship on your application;
_____ (b)   indicate that you were unable to make your mark in lieu of your signature; or
_____ (c)   provide his or her printed name or residence address.

_____ 8.  Your application did not indicate the reason you are entitled to vote by mail.

_____ 9.  For a primary election, you must indicate your party preference.
(Check if appropriate:)
_____  However, if you have submitted an Annual ABBM, you will receive ballots for other elections held this year other than the Primary or Runoff Election.

_____ 10.  Your residence address of registration was not provided on your application.

_____ 11.  Your application was received after the deadline for receiving an application for a ballot by mail.
The deadline for receiving the application was _____.
(Date)

(Check if appropriate)
_____  However, since you have requested a ballot for the run-off election, if one is to be held, your application is valid for that election.

_____ 12.  According to the records of the voter registrar, you are not currently registered to vote or your registration, if you have applied, will not be effective on or before election day.

_____ 13.  I could not determine the election for which you were applying for a ballot.

_____ 14.  Your application was initially submitted via fax or email, but an original hardcopy of the application was not received within four business days.

_____ 15.  Other:_____

If you wish to vote, it will be necessary for you to submit another application to me, and that application must be received by _____  *If new application is faxed or emailed, the original hardcopy must be received within four
(*Date)                        business days.

If you have any questions regarding your application, please contact me at __ **(956) 681-1020**_____.
(Phone Number)

_____
Early Voting Clerk

977

AW_____
Prescrito por el Secretario de Estado
Código Electoral de Texas Secs. 86.008(b), 86.0015
12/17

**German Vargas Olivar**
**VUID#1053637317**

### AVISO DE SOLICITUD RECHAZADA PARA RECIBIR UNA BOLETA POR CORREO

Su solicitud para recibir una boleta por correo postal fue recibida y analizada. Hemos determinado que su solicitud debe ser rechazada por la siguiente razón:

(Marcar las que apliquen)

_____1.   Su solicitud fue recibida antes del 60º día antes de una elección celebrada en enero o febrero del año siguiente al año en que se presentó el ABBM ("ABBM" por sus siglas en Ingles).

___2___.   La solicitud no fue entregada de manera apropiada.

__X__3.   Su solicitud fue recibida después de la fecha límite para aplicar para recibir una boleta por correo para esta elección. (Marque abajo si es apropiado).

       ___√___Sin embargo, ya que usted indico en la solicitud que su solicitud es una solicitud anual para votar por correo, la solicitud se considerará válida para las otras elecciones que sucedan este año y para las cuales su solicitud fue enviada antes de la fecha límite.

_____4.   Usted indico que desea votar por correo por que planea estar ausente del condado pero la dirección que usted proporciono para recibir su boleta no es una dirección fuera del condado. Cuando usted aplica para votar por correo en base a que estará ausente del condado, la dirección a la cual usted recibirá su boleta **debe** estar ubicada fuera del condado.

_____5.   Si usted está encarcelado, para que pueda votar por correo es necesario que su boleta sea enviada directamente a la cárcel o al domicilio de algún familiar. Su solicitud no indicó ninguna de estas direcciones.

_____6.   No firmó su solicitud.

_____7.   El testigo que firmó su solicitud no:
       _____(a)   indicó, en la solicitud, qué parentesco o tipo relación existe entre ustedes;
       _____(b)   indicó que además de no poder firmar, usted no puede poner su marca en la solicitud; o
       _____(c)   proporciono su nombre completo en letra de molde y su dirección residencial.

_____8.   No indicó la base de elegibilidad por la cual usted tiene derecho a votar por correo.

_____9.   Para las elecciones primarias, usted debe indicar su preferencia de partido político. (Marque abajo si es apropiado).

       _____ Sin embargo, si usted envió una solicitud anual para votar por correo postal (Annual ABBM, por sus siglas en Ingles), usted recibirá las boletas para todas las demás elecciones oficiadas este año _que no sean_ elecciones primarias o elecciones primarias de desempate.

_____10.   No proporciono la dirección residencial bajo la cual usted está registrado/a.

_____11.   Su solicitud fue recibida después de la fecha límite para recibir solicitudes para votar por correo postal. La fecha límite fue el _____ de _____, _____.
                (día)     (mes)     (año)

       (Marque abajo si es apropiado)
       _____ Sin embargo, ya que usted solicito una boleta para la elección de desempate, si una sucede, su solicitud es válida para esa elección.

_____12.   Los documentos del registro electoral indican que usted no está inscrito como votante y si ha solicitado dicha inscripción, ésta no entrará en vigor en o antes del Día de la Elección.

_____13.   No se pudo determinar las elecciones en las cuales usted desea votar por correo.

_____14.   Su solicitud fue inicialmente enviada por fax o correo electrónico, pero una copia impresa original de la solicitud no fue recibida dentro de los cuatro días hábiles.

_____15.   Otro:_____

Si usted desea votar por correo, es necesario que envíe otra solicitud a esta oficina y su solicitud debe ser recibida por_____(Fecha). *Si la nueva solicitud es enviada por fax o por correo electrónico, la copia impresa original debe ser recibida dentro de cuatro días hábiles.

Si tiene una pregunta en cuanto a su solicitud, por favor comuníquese conmigo llamando al **(956) 681-1020** ____
                                                      (Número de Teléfono)

                                                    Secretario/a de Votación Anticipada

Guzman Vargas, Olivia
313 S. 25th Street
McAllen TX  78501



**City Secretary's Department**
**CITY OF**
**McALLEN**
POST OFFICE BOX 220
McALLEN, TEXAS 78505-0220

22.6948

DO NOT REMOVE PERFORATED TABS. Moisten here and fold bottom to top to seal.    DO NOT REMOVE PERFORATED TABS. Moisten here and fold bottom to top to seal.

## Application for Ballot by Mail

*Prescribed by the Office of the Secretary of State of Texas   AS-15 12/17*

For Official Use Only
VUID #, County, Election, Precinct #,
Statement of Residence, etc.

10536373 17

**1** Last Name (Please print information)
Guzman Vargas

First Name
Olivia

Suffix (Jr., Sr., III, etc)

Middle Initial
Guzman

**2** Residence Address: See back of this application for instructions.
313 S 25th St

City
McAllen

, TX

ZIP Code
78501

**3** Mail my ballot to: If mailing address differs from residence address, please complete Box #7.

City

State

ZIP Code

**4** Date of Birth (mm/dd/yyyy) (Optional)
1/30/1937

Contact Information (Optional)*
Please list phone number and/or email address:
* Used in case our office has questions.

**5** Reason for Voting by Mail:

☑ 65 years of age or older: (Complete Box #6a)

☐ Disability: (Complete Box #6a)

☐ Expected absence from the county. (Complete Box #6b and Box #8)
You will receive a ballot for the upcoming election only.

☐ Confinement in jail: (Complete Box #6b)
You will receive a ballot for the upcoming election only.

**7** If you are requesting this ballot be mailed to a different address (other than residence), indicate where the ballot will be mailed. See reverse for instructions.

☐ Mailing Address as listed on my voter registration certificate

☐ Nursing home, assisted living facility, or long term care facility

☐ Hospital

☐ Retirement Center

☐ Address of the jail

☐ Relative, relationship ____

☐ Address outside the county (see Box #8)

**6a** ONLY Voters 65 Years of Age or Older: or Voters with a Disability:
If applying for one election, select appropriate box.
If applying once for elections in the calendar year, select "Annual Application."

☑ Annual Application

Uniform and Other Elections:
☑ May Election
☐ November Election
☐ Other ____

Primary Elections:
You must declare one political party to vote in a primary.
☐ Democratic Primary
☐ Republican Primary
☑ Any Resulting Runoff

**8** If you selected "expected absence from the county," see reverse for instructions

Date of return to residence address

☐☐☐☐ — ☐☐☐ — ☐☐☐☐

Date you can begin to receive mail at this address

**9** Voters may submit a completed, signed, and scanned application to the Early Voting Clerk at:
(956)681-1029
(early voting clerk's fax)

piara@mcallen.net
(early voting clerk's e-mail address)

NOTE: If you fax or e-mail this form, please be aware that you must also mail the form to the early voting clerk within four business days. See "Submitting Application" on the back of the form for additional information.

**6b** ONLY Voters Absent from County or Voters Confined in Jail:
You may only apply for a ballot by mail for one election, and any resulting runoff.
Please select the appropriate box.

Uniform and Other Elections:
☐ May Election
☐ November Election
☐ Other ____

Primary Elections:
You must declare one political party to vote in a primary.
☐ Democratic Primary
☐ Republican Primary
☐ Any Resulting Runoff

**10** "I certify that the information given in this application is true, and I understand that giving false information in this application is a crime."

X _Olivia G Vargas_   Date ____

SIGN HERE
If applicant is unable to sign or make a mark in the presence of a witness, the witness shall complete Box #11.

Witness' Relationship to Applicant
(Refer to instructions on back for clarification)

If someone helped you to complete this form or mails the form for you, then that person must complete the sections below.

**11** See back for Witness and Assistant definitions.

If applicant is unable to mark Box #10 and you are acting as a Witness to that fact, please check this box and sign below. ☐

If you assisted the applicant in completing this application in the applicant's presence or e-mailed/mailed or faxed the application on behalf of the applicant, please check this box as an Assistant and sign below.

★If you are acting as Witness and Assistant, please check both boxes. Failure to complete this information is a Class A misdemeanor if signature was witnessed or applicant was assisted in completing the application. ☐

X ____
Signature of Witness /Assistant

X ____
Printed Name of Witness/Assistant

Street Address        Apt Number (if applicable)

City

State

ZIP Code

*Este formulario está disponible en Español. Para conseguir la versión en Español favor de llamar sin cargo al 1.800.252.8683 a la oficina del Secretario de Estado o la Secretaria de Votación por Adelantado.*



AW5-16
Prescribed by Secretary of State
Section 86.008(b), 86.0015 Texas Election Code
12/17

Arellano, Areopajita T.
VUID # 1053666985 SMD#4

## NOTICE OF REJECTED APPLICATION FOR BALLOT BY MAIL

I have received and reviewed your application for a ballot by mail. I have determined that your application must be rejected for the following reason(s):

(Check as applicable)

_____ 1.　Your application was received earlier than the 60th day before an election held in January or February of the year following the year the ABBM was submitted.

_____ 2.　Your application was not properly delivered.

__X__ 3.　Your application was received after the deadline to apply for a ballot by mail for the upcoming election.

　　　　　(Check if appropriate:)

　　　　　_____ However, since you indicated on the application that it was to be an Annual application for a ballot by mail, the application will be considered valid for other elections held this year and for which the application was submitted before the deadline.

_____ 4.　You indicate you are voting due to expected absence from the county, but the address to which your ballot is to be sent is not an address outside the county. When voting by mail on the grounds of expected absence from the county, the address to which your ballot is to be mailed <u>must</u> be outside the county.

_____ 5.　When voting by mail due to confinement in jail, the address to which your ballot is to be mailed must be that of the jail or a relative. Your application did not indicate either address.

_____ 6.　Your application was not signed.

_____ 7.　The witness who signed your application did not:

　　　　　_____ (a)　　indicate a relationship on your application;

　　　　　_____ (b)　　indicate that you were unable to make your mark in lieu of your signature; or

　　　　　_____ (c)　　provide his or her printed name or residence address.

_____ 8.　Your application did not indicate the reason you are entitled to vote by mail.

_____ 9.　For a primary election, you must indicate your party preference.

　　　　　(Check if appropriate:)

　　　　　_____ However, if you have submitted an Annual ABBM, you will receive ballots for other elections held this year <u>other</u> than the Primary or Runoff Election.

_____ 10.　Your residence address of registration was not provided on your application.

_____ 11.　Your application was received after the deadline for receiving an application for a ballot by mail. The deadline for receiving the application was _____.
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　(Date)

　　　　　(Check if appropriate)

　　　　　_____ However, since you have requested a ballot for the run-off election, if one is to be held, your application is valid for that election.

_____ 12.　According to the records of the voter registrar, you are not currently registered to vote or your registration, if you have applied, will not be effective on or before election day.

_____ 13.　I could not determine the election for which you were applying for a ballot.

_____ 14.　Your application was initially submitted via fax or email, but an original hardcopy of the application was not received within four business days.

_____ 15.　Other:_____

If you wish to vote, it will be necessary for you to submit another application to me, and that application must be received by _____ *If new application is faxed or emailed, the original hardcopy must be received within four
　　(*Date)　　　　　　　　　　business days.

If you have any questions regarding your application, please contact me at __(956) 681-1020__.

　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　(Phone Number)

　　　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Early Voting Clerk

AW5-16
Prescrito por el Secretario de Estado
Código Electoral de Texas Secs. 86.008(b), 86.0015
12/17

Arellano, Areopajita T.
VUID # 1053666985 SMD#4

### AVISO DE SOLICITUD RECHAZADA PARA RECIBIR UNA BOLETA POR CORREO

Su solicitud para recibir una boleta por correo postal fue recibida y analizada.  Hemos determinado que su solicitud debe ser rechazada por la siguiente razón:

(Marcar las que apliquen)

_____ 1.  Su solicitud fue recibida antes del 60º día antes de una elección celebrada en enero o febrero del año siguiente al año en que se presentó el ABBM ("ABBM" por sus siglas en Ingles).

_____ 2.  La solicitud no fue entregada de manera apropiada.

__X__ 3.  Su solicitud fue recibida después de la fecha límite para aplicar para recibir una boleta por correo para esta elección. (Marque abajo si es apropiado).

        _____ Sin embargo, ya que usted indico en la solicitud que su solicitud es una solicitud anual para votar por correo, la solicitud se considerará válida para las otras elecciones que sucedan este año y para las cuales su solicitud fue enviada antes de la fecha límite.

_____ 4.  Usted indico que desea votar por correo por que planea estar ausente del condado pero la dirección que usted proporciono para recibir su boleta no es una dirección fuera del condado.  Cuando usted aplica para votar por correo en base a que estará ausente del condado, la dirección a la cual usted recibirá su boleta <u>debe</u> estar ubicada fuera del condado.

_____ 5.  Si usted está encarcelado, para que pueda votar por correo es necesario que su boleta sea enviada directamente a la cárcel o al domicilio de algún familiar.  Su solicitud no indicó ninguna de estas direcciones.

_____ 6.  No firmó su solicitud.

_____ 7.  El testigo que firmó su solicitud no:
        _____ (a)  indicó, en la solicitud, qué parentesco o tipo relación existe entre ustedes;
        _____ (b)  indicó que además de no poder firmar, usted no puede poner su marca en la solicitud; o
        _____ (c)  proporciono su nombre completo en letra de molde y su dirección residencial.

_____ 8.  No indicó la base de elegibilidad por la cual usted tiene derecho a votar por correo.

_____ 9.  Para las elecciones primarias, usted debe indicar su preferencia de partido político. (Marque abajo si es apropiado).

        _____ Sin embargo, si usted envió una solicitud anual para votar por correo postal (Annual ABBM, por sus siglas en Ingles), usted recibirá las boletas para todas las demás elecciones oficiadas este año <u>que no sean</u> elecciones primarias o elecciones primarias de desempate.

_____ 10.  No proporciono la dirección residencial bajo la cual usted está registrado/a.

_____ 11.  Su solicitud fue recibida después de la fecha límite para recibir solicitudes para votar por correo postal.  La fecha límite fue el ____ de _____, _____.
                          (día)    (mes)    (año)

        (Marque abajo si es apropiado)
        _____ Sin embargo, ya que usted solicito una boleta para la elección de desempate, si una sucede, su solicitud es válida para esa elección.

_____ 12.  Los documentos del registro electoral indican que usted no está inscrito como votante y si ha solicitado dicha inscripción, ésta no entrará en vigor en o antes del Día de la Elección.

_____ 13.  No se pudo determinar las elecciones en las cuales usted desea votar por correo.

_____ 14.  Su solicitud fue inicialmente enviada por fax o correo electrónico, pero una copia impresa original de la solicitud no fue recibida dentro de los cuatro días hábiles.

_____ 15.  Otro:_____

Si usted desea votar por correo, es necesario que envíe otra solicitud a esta oficina y su solicitud debe ser recibida por_____(Fecha).  *Si la nueva solicitud es enviada por fax o por correo electrónico, la copia impresa original debe ser recibida dentro de cuatro días hábiles.

Si tiene una pregunta en cuanto a su solicitud, por favor comuníquese conmigo llamando al (956) 681-1020
                                                                 (Número de Teléfono)

                                                            Secretario/a de Votación Anticipada

# Application for Ballot by Mail

DO NOT REMOVE PERFORATED TABS. Moisten here and fold bottom to top to seal.   DO NOT REMOVE PERFORATED TABS. Moisten here and fold bottom to top to seal.

Prescribed by the Office of the Secretary of State 2/2012
Section 84.002

For Official Use Only
VUID # County Election Precinct #,
Statement of Residence, etc.

**1** Last Name (Please print information)
Arellano

First Name
Areopajita

Middle Initial
T

**2** Residence Address: Sign back in on this application for instructions.
1405 Savannah Ave

City
McAllen

State
, TX

ZIP Code
78503

**3** Mail my ballot to: If mailing address differs from residence address, please complete Box 7a.

City

State

ZIP Code

**4** Date of Birth (mm/dd/yyyy) (Optional)
10/9/1928

**5** Reason for Voting by Mail:
- ☒ 65 years of age or older: (Complete Box #6a)
- ☐ Disability: (Complete Box #6b)
- ☐ Expected absence from the county: (Complete Box #6b and Box #8)
- ☐ You will be outside of the county during the early voting period and on election day
- ☐ Confinement in jail: (Complete Box #8)
  You will receive a ballot for the upcoming election only

**6a** ONLY Voters 65 Years of Age or Older or Voters with a Disability:
If applying for one election, select appropriate box.
If applying once for elections in the calendar year, select "Annual Application."

- ☐ Annual Application

**Primary Elections:**
(You must declare a political party to vote in a primary)
- ☐ Democratic Primary
- ☐ Republican Primary
- ☐ Any Resulting Runoff

**Uniform and Other Elections:**
- ☒ May Election
- ☐ November Election
- ☐ Other:

**6b** ONLY Voters Absent from County or Voters Confined in Jail:
You may only apply for a ballot by mail for one election, and any resulting runoff. Please select the appropriate box.

**Uniform and Other Elections:**
- ☐ May Election
- ☐ November Election
- ☐ Other:

**Primary Elections:**
You must declare a political party to vote in a primary.
- ☐ Democratic Primary
- ☐ Republican Primary
- ☐ Any Resulting Runoff

**7** If you are requesting this ballot be mailed to a different address (other than residence), indicate where the ballot will be mailed. See reverse for instructions.
- ☐ Address of the jail
- ☐ Relative, relationship
- ☐ Address outside the county (see Box #8)

**7a** Mailing Address as listed on my voter registration certificate.

City

State

ZIP Code

**8** If you selected "expected absence from the county," see reverse for instructions
- ☐ Nursing home, assisted living facility, or long term care facility
- ☐ Hospital
- ☐ Retirement Center

Date you can begin to receive mail at this address.
Date of return to residence address.

**9** Contact Information (optional)
Please list phone number and/or email address.
Need in case our office has questions.

Voters may submit a completed, signed, and scanned application to the Early Voting Clerk at:
plara@mcallen.net
(early voting clerk's e-mail address)
(956)681-1029
(early voting clerk's fax)
NOTE: If you fax or e-mail this form, please be aware that you must also mail this form to the early voting clerk within four business days. See "Submitting Application" on the back of this form for additional information.

**10** "I certify that the information given in this application is true, and I understand that giving false information in this application is a crime."

SIGN HERE
If applicant is unable to sign or make a mark in the presence of a witness, the witness shall complete Box #11.

X _Areopajita T. Arellano_
Date

**11** See back for Witness and Assistant definitions.
If applicant is unable to mark Box #10 and you are acting as a Witness, please check this box and sign below.  ☐
If you assisted the applicant in completing this application in the applicant's presence or on behalf of the applicant, please check this box as an Assistant and sign below.
☒If you are acting as a Witness and Assistant, please check both boxes. Failure to complete the applicant's presence or assisted or applicant was witnessed or applicant was assisted in completing the application.

Signature of Witness/Assistant
X

Printed Name of Witness/Assistant

Witness' Relationship to Applicant
(Refer to Instructions on back for clarification)

Street Address

Apt Number (if applicable)

City

State

ZIP Code

If someone helped you to complete this form or mails this form for you, then that person must complete the sections below.

Este formulario está disponible en Español. Para conseguir la versión en Español favor de llamar sin cargo al 1.800.252.8683 a la oficina del Secretario de Estado o a la Secretaría de Votación por Adelantado.

984

## Instructions for Application for Ballot by Mail

**Residence Address** – Give full address as shown on your voter registration certificate. If you have moved within the county but not yet changed your voter registration address with the voter registrar, indicate your new residence address.

**Mail Ballot To** – Give full address where you wish to have ballot mailed, if the address is different from your residence address.

**Mailing Ballot to a Different Address** – Your ballot must be mailed to your home where you live or to your mailing address on your voter registration certificate. There are some exceptions that allow you to have your ballot mailed to a different location as specified below:

| Reason for voting by mail | Location to mail ballot |
|---|---|
| 65 or disabled | Nursing home, assisted living/retirement center, relative, hospital |
| In jail | Address of jail or relative |
| Absent from county | Address located outside of county |

**Expected Absence from County** – If you chose expected absence from county, you must expect to be absent from the county on election day and during the hours of early voting in person or for the remainder of the early voting period after you submit your application. Your ballot must be mailed to an address outside the county. Important: Give date you can begin to receive mail at the address given.

**Annual Application** – If you are 65 years of age or older, or disabled you may apply to receive all ballots by mail for a calendar year. If you do not select any elections in Box 6a, your application will be considered an Annual Application. If you submit an annual application for a ballot by mail, your application may be forwarded to other entities holding elections where you are a qualified voter. This means that you may receive a ballot for those elections in addition to the ballot(s) you requested with this application.

### Submitting Application

**1. Sign and date your application** – If unable to sign, please go to Witness/Address boxes (11 on reverse) and have a person witness your mark. Witness/Assistant instructions follow below.

**2. Deliver to Early Voting Clerk** – You may submit your application via these methods:

**In Person:** Only the applicant may submit their application in person to the Early Voting Clerk until the early voting period begins. However, after the early voting period begins for an election, the applicant may only submit their application via mail, common contract carrier, fax, or e-mail.

**By Mail:** You may mail your application via the U.S. Postal Service.

**By Common Contract Carrier:** You may submit via a common or contract carrier which is a bona fide, for profit carrier.

**By Fax:** You may fax your application to the Early Voting Clerk. Please contact your Early Voting Clerk or the Secretary of State's Office for fax numbers.

**By E-Mail:** You may e-mail a signed, scanned image of your application to the Early Voting Clerk. Please contact your Early Voting Clerk or the Secretary of State's Office for e-mail addresses.

**IF YOU FAX OR E-MAIL YOUR APPLICATION TO THE EARLY VOTING CLERK, YOU MUST ALSO MAIL THE APPLICATION SO THAT THE CLERK RECEIVES IT NO LATER THAN THE FOURTH BUSINESS DAY AFTER THE DAY THE CLERK RECEIVED YOUR FAXED OR EMAILED APPLICATION.** If you fax or e-mail your application by the deadline noted below, your application will be considered complete and timely as long as the original is received by the early voting clerk by the fourth business day after it was submitted by fax or e-mail.

### Deadline

Your application must be received by the early voting clerk of the local entity conducting the election not later than the 11th day before election day. If the 11th day is a weekend or holiday, the deadline is the first preceding business day. You may submit an application throughout the calendar year, beginning January 1. Please remember that the application must be received not later than the 11th day before the first election in which you seek to vote by mail.

If you submit an Annual Application for Ballot by Mail within 60 days before an election that takes place in the following calendar year, your application will be valid for any election that takes place in the following calendar year, regardless of the fact that your application was submitted prior to the end of the preceding calendar year. This applies to Annual Applications only and not to a regular application for ballot by mail.

### Witness/Assistant Section

**Witness:** If you are unable to sign your name (due to a physical disability or illiteracy), the application may be signed at Box #11 for you by a Witness. You must affix your mark to the application in Box #10 or, if you are unable to make a mark, then the Witness must check the appropriate box in 11 indicating the inability to make a mark. The Witness must state his/her name in printed form and indicate his/her relationship to you or, if unrelated, state that fact. The Witness must sign and provide his or her printed name and residence address. Unless the Witness is a close relative of the voter (parent, grandparent, spouse, child or sibling), it is a Class B misdemeanor for a person to witness more than one application for ballot by mail.

**Assistant:** If a person (other than a close relative of person registered to vote at the same address) assists you in completing this application in your presence or mails/faxes/e-mails this application on your behalf, then that person must complete Box #11. The Assistant must sign, provide his or her printed name, and his or her residence address. A person commits a Class A misdemeanor if the person provides assistance without providing the information described above unless a close relative or registered at your address.

**If you have further questions or need additional assistance, please contact your Early Voting Clerk or The Secretary of State's office at 1-800-252-8683 or www.sos.state.tx.us.**



City Secretary's Office
Received
Date 5-1-19

FROM:
Areopajita Arellano
1405 Savannah Ave
McAllen, TX. 78503-5504

AFFIX LABEL HERE OR ADDRESS

To: Early Voting Clerk
Perla Lara
PO Box 220/1300 Houston Ave.
McAllen Texas 78505-0220

City Secretary's Office
Received
Date 5/1/19

RECEIVED
MAY 01 2019
CITY OF McALLEN
MAIL CENTER

DO NOT REMOVE PERFORATED TABS. Moisten tab and fold top to bottom to seal.

AW5-16
Prescribed by Secretary of State
Section 86.008(b), 86.0015 Texas Election Code
12/17

Almanza, Erasmo Grandos
VUID # 1055253616 SMD#4

## NOTICE OF REJECTED APPLICATION FOR BALLOT BY MAIL

I have received and reviewed your application for a ballot by mail.  I have determined that your application must be rejected for the following reason(s):

(Check as applicable)

_____ 1.  Your application was received earlier than the 60th day before an election held in January or February of the year following the year the ABBM was submitted.

_____ 2.  Your application was not properly delivered.

__X__ 3.  Your application was received after the deadline to apply for a ballot by mail for the upcoming election.

(Check if appropriate:)

_____ However, since you indicated on the application that it was to be an Annual application for a ballot by mail, the application will be considered valid for other elections held this year and for which the application was submitted before the deadline.

_____ 4.  You indicate you are voting due to expected absence from the county, but the address to which your ballot is to be sent is not an address outside the county.  When voting by mail on the grounds of expected absence from the county, the address to which your ballot is to be mailed must be outside the county.

_____ 5.  When voting by mail due to confinement in jail, the address to which your ballot is to be mailed must be that of the jail or a relative.  Your application did not indicate either address.

_____ 6.  Your application was not signed.

_____ 7.  The witness who signed your application did not:

_____ (a)  indicate a relationship on your application;

_____ (b)  indicate that you were unable to make your mark in lieu of your signature; or

_____ (c)  provide his or her printed name or residence address.

_____ 8.  Your application did not indicate the reason you are entitled to vote by mail.

_____ 9.  For a primary election, you must indicate your party preference.

(Check if appropriate:)

_____ However, if you have submitted an Annual ABBM, you will receive ballots for other elections held this year other than the Primary or Runoff Election.

_____ 10.  Your residence address of registration was not provided on your application.

_____ 11.  Your application was received after the deadline for receiving an application for a ballot by mail. The deadline for receiving the application was _____.
(Date)

(Check if appropriate)

_____ However, since you have requested a ballot for the run-off election, if one is to be held, your application is valid for that election.

_____ 12.  According to the records of the voter registrar, you are not currently registered to vote or your registration, if you have applied, will not be effective on or before election day.

_____ 13.  I could not determine the election for which you were applying for a ballot.

_____ 14.  Your application was initially submitted via fax or email, but an original hardcopy of the application was not received within four business days.

_____ 15.  Other:_____

If you wish to vote, it will be necessary for you to submit another application to me, and that application must be received by _____ *If new application is faxed or emailed, the original hardcopy must be received within four
(*Date)                                    business days.

If you have any questions regarding your application, please contact me at  (956) 681-1020            .
(Phone Number)

_____
Early Voting Clerk

986

AW5-16
Prescrito por el Secretario de Estado
Código Electoral de Texas Secs. 86.008(b), 86.0015
12/17

Almanza, Erasmo Grandos
VUID # 1055253616 SMD#4

## AVISO DE SOLICITUD RECHAZADA PARA RECIBIR UNA BOLETA POR CORREO

Su solicitud para recibir una boleta por correo postal fue recibida y analizada.  Hemos determinado que su solicitud debe ser rechazada por la siguiente razón:

(Marcar las que apliquen)

_____1.   Su solicitud fue recibida antes del 60° día antes de una elección celebrada en enero o febrero del año siguiente al año en que se presentó el ABBM ("ABBM" por sus siglas en Ingles).

_____2.   La solicitud no fue entregada de manera apropiada.

__X__3.   Su solicitud fue recibida después de la fecha límite para aplicar para recibir una boleta por correo para esta elección. (Marque abajo si es apropiado).

_____Sin embargo, ya que usted indico en la solicitud que su solicitud es una solicitud anual para votar por correo, la solicitud se considerará válida para las otras elecciones que sucedan este año y para las cuales su solicitud fue enviada antes de la fecha límite.

_____4.   Usted indico que desea votar por correo por que planea estar ausente del condado pero la dirección que usted proporciono para recibir su boleta no es una dirección fuera del condado.  Cuando usted aplica para votar por correo en base a que estará ausente del condado, la dirección a la cual usted recibirá su boleta debe estar ubicada fuera del condado.

_____5.   Si usted está encarcelado, para que pueda votar por correo es necesario que su boleta sea enviada directamente a la cárcel o al domicilio de algún familiar.  Su solicitud no indicó ninguna de estas direcciones.

_____6.   No firmó su solicitud.

_____7.   El testigo que firmó su solicitud no:
_____(a)   indicó, en la solicitud, qué parentesco o tipo relación existe entre ustedes;
_____(b)   indicó que además de no poder firmar, usted no puede poner su marca en la solicitud; o
_____(c)   proporciono su nombre completo en letra de molde y su dirección residencial.

_____8.   No indicó la base de elegibilidad por la cual usted tiene derecho a votar por correo.

_____9.   Para las elecciones primarias, usted debe indicar su preferencia de partido político. (Marque abajo si es apropiado).

_____Sin embargo, si usted envió una solicitud anual para votar por correo postal (Annual ABBM, por sus siglas en Ingles), usted recibirá las boletas para todas las demás elecciones oficiadas este año que no sean elecciones primarias o elecciones primarias de desempate.

_____10.   No proporciono la dirección residencial bajo la cual usted está registrado/a.

_____11.   Su solicitud fue recibida después de la fecha límite para recibir solicitudes para votar por correo postal.  La fecha límite fue el _____ de _____, _____.
(día)   (mes)   (año)

(Marque abajo si es apropiado)
_____ Sin embargo, ya que usted solicito una boleta para la elección de desempate, si una sucede, su solicitud es válida para esa elección.

_____12.   Los documentos del registro electoral indican que usted no está inscrito como votante y si ha solicitado dicha inscripción, ésta no entrará en vigor en o antes del Día de la Elección.

_____13.   No se pudo determinar las elecciones en las cuales usted desea votar por correo.

_____14.   Su solicitud fue inicialmente enviada por fax o correo electrónico, pero una copia impresa original de la solicitud no fue recibida dentro de los cuatro días hábiles.

_____15.   Otro:_____

Si usted desea votar por correo, es necesario que envíe otra solicitud a esta oficina y su solicitud debe ser recibida por_____(Fecha).  *Si la nueva solicitud es enviada por fax o por correo electrónico, la cópia impresa original debe ser recibida dentro de cuatro días hábiles.

Si tiene una pregunta en cuanto a su solicitud, por favor comuníquese conmigo llamando al  (956) 681-1020
(Número de Teléfono)

Secretario/a de Votación Anticipada

**DO NOT REMOVE PERFORATED TABS. Moisten here and fold bottom to top to seal.**    **DO NOT REMOVE PERFORATED TABS. Moisten here and fold bottom to top to seal.**

## Application for Ballot by Mail

Prescribed by the Office of the Secretary of State of Texas
4/5/15.12/17

For Official Use Only.
VUID #, County Election Precinct #,
Statement of Residence, etc.

10DSAS 3616

**1** Last Name (Please print information)
Almanza

Suffix (Jr., Sr., III, etc)

First Name
Erasmo

Middle Initial
Grandos

**2** Residence Address: See back of this application for instructions.
3218 Daytona Ave

City
McAllen

,TX
ZIP Code
78503

**3** Mail my ballot to: If mailing address differs from residence address, please complete Box 7.

City

State

ZIP Code

**4** Date of Birth (mm/dd/yyyy) (Optional)
11/25/1941

**5** Reason for Voting by Mail:
☐ 65 years of age or older: (Complete Box #6a)
☐ Disability: (Complete Box #6a)
☐ Expected absence from the county: (Complete Box #6b and Box #9)
You will receive a ballot for the upcoming election only
☐ Confinement in jail: (Complete Box #6b)
You will receive a ballot for the upcoming election only

**6a** ONLY Voters 65 Years of Age or Older or Voters with a disability:
If applying for one election, select appropriate box.
If applying for one or more elections in the calendar year, select "Annual Application".
☐ Annual Application.

**6b** ONLY Voters Absent from County or Voters Confined in Jail:
You may only apply for a ballot by mail for one election, and any resulting runoff.
Please select the appropriate box.

**11** See back for Witness and Assistant definitions.
If applicant is unable to mark Box #10 and you are acting as a Witness to that fact, please check this box and sign below.
If you assisted the applicant in completing this application in the applicant's presence or e-mailed/faxed the application on behalf of the applicant, please check this box as an Assistant and sign below.
*If you are acting as Witness and Assistant, please check both boxes. Failure to complete this information is a Class A misdemeanor if signature was witnessed or applicant was assisted in completing the application.

Signature of Witness/Assistant

Printed Name of Witness/Assistant

Witness: Relationship to Applicant
(Refer to instructions on back for clarification.)

**Uniform and Other Elections:**
☒ May Election
☐ November Election
☐ Other: _____
☐ Any Resulting Runoff

**Uniform and Other Elections:**
☐ May Election
☐ November Election
☐ Other: _____
☐ Any Resulting Runoff

**Primary Elections:**
You must declare a political party to vote in a primary
☐ Democratic Primary
☐ Republican Primary

**Primary Elections:**
You must declare political party to vote in a primary
☐ Democratic Primary
☐ Republican Primary

**7** If you are requesting this ballot be mailed to a different address (other than residence), indicate where the ballot will be mailed. See reverse for instructions.
☐ Mailing Address as listed on my voter registration certificate
☐ Nursing home, assisted living facility, or long term care facility
☐ Hospital
☐ Retirement Center
☐ Address of the jail
☐ Relative, relationship _____
☐ Address outside the county (see Box #9)

Contact information (Optional)*
Please list phone number and/or email address:
plara@mcallen.net
* Used in case our office has questions.

**8** If you selected "expected absence from the county", see reverse for instructions

**9** Voters may submit a completed, signed, and scanned application to the Early Voting Clerk at:
plara@mcallen.net

(early voting clerk's e-mail address)

(956)681-1029

(early voting clerk's fax)

Date you can begin to receive/e-mail at this address ☐☐☐☐    Date of return to residence address ☐☐☐☐

NOTE: If you fax or e-mail this form, please be aware that you must also mail this form to the early voting clerk within four business days. See "Submitting Application" on the back of this form for additional information.

**10** I certify that the information given in this application is true, and I understand that giving false information in this application is a crime.

SIGN HERE
If applicant is unable to sign or make a mark in the presence of a witness, the witness shall complete Box #11.

X [signature]    Date _____

Este formulario está disponible en Español. Para conseguir la versión en Español favor de llamar sin cargo al 1,800,252,8683 a la oficina del Secretario de Estado o a la Secretaria de Estado o la Secretaria de Votación por Adelantado.

4

## Instructions for Application for Ballot by Mail

**Residence Address** - Give full address as shown on your voter registration certificate. If you have moved within the county but not yet changed your voter registration address with the voter registrar, indicate your new residence address.

**Mail Ballot To** - Give full address where you wish to have ballot mailed, if the address is different from your residence address.

**Mailing Ballot to a Different Address** - Your ballot must be mailed to your home where you live or to your mailing address on your voter registration certificate. There are some exceptions that allow you to have your ballot mailed to a different location as specified below:

| Reason for voting by mail | Location to mail ballot |
|---|---|
| 65 or disabled | Nursing home, assisted living/retirement center, relative, hospital |
| In jail | Address of jail or relative |
| Absent from county | Address located outside of county |

**Expected Absence from County** - If you chose expected absence from county, you must expect to be absent from the county on election day and during the hours of early voting in person or for the remainder of the early voting period after you submit your application. Your ballot must be mailed to an address outside the county. Important: Give date you can begin to receive mail at the address given.

**Annual Application**—If you are 65 years of age or older, or disabled you may apply to receive all ballots by mail for a calendar year. If you do not select any elections in Box 6a, your application will be considered an Annual Application. If you submit an annual application for a ballot by mail, your application may be forwarded to other entities holding elections where you are a qualified voter. This means that you may receive a ballot for those elections in addition to the ballot(s) you requested with this application.

### Submitting Application

**1.** Sign and date your application - If unable to sign, please go to Witness/Address boxes (11 on reverse) and have a person witness your mark. Witness/Assistant instructions follow below.

**2.** Deliver to Early Voting Clerk - You may submit your application via these methods:

**In Person:** Only the applicant may submit their application in person to the Early Voting Clerk until the early voting period begins. However, after the early voting period begins for an election, the applicant may only submit their application via mail, common contract carrier, fax, or e-mail.

**By Mail:** You may mail your application via the U.S. Postal Service.

**By Common Contract Carrier:** You may submit via a common or contract carrier which is a bona fide, for profit carrier.

**By Fax:** You may fax your application to the Early Voting Clerk. Please contact your Early Voting Clerk or the Secretary of State's Office for fax numbers.

**By E-Mail:** You may e-mail a signed, scanned image of your application to the Early Voting Clerk. Please contact your Early Voting Clerk or the Secretary of State's Office for e-mail addresses.

**IF YOU FAX OR E-MAIL YOUR APPLICATION TO THE EARLY VOTING CLERK, YOU MUST ALSO MAIL THE APPLICATION SO THAT THE CLERK RECEIVES IT NO LATER THAN THE FOURTH BUSINESS DAY AFTER THE DAY THE CLERK RECEIVED YOUR FAXED OR EMAILED APPLICATION.** If you fax or e-mail your application by the deadline noted below, your application will be considered complete and timely as long as the original is received by the early voting clerk by the fourth business day after it was submitted by fax or e-mail.

### Deadline

Your application must be received by the early voting clerk of the local entity conducting the election not later than the 11th day before election day. If the 11th day is a weekend or holiday, the deadline is the first preceding business day. You may submit an application throughout the calendar year, beginning January 1. Please remember that the application must be received not later than the 11th day before the first election in which you seek to vote by mail.

If you submit an Annual Application for Ballot by Mail within 60 days before an election that takes place in the following calendar year, your application will be valid for any election that takes place in the following calendar year, regardless of the fact that your application was submitted prior to the end of the preceding calendar year. This applies to Annual Applications only and not to a regular application for ballot by mail.

### Witness/Assistant Section

**Witness:** If you are unable to sign your name (due to a physical disability or illiteracy), the application may be signed at Box #11 for you by a Witness. You must affix your mark to the application in Box #10 or, if you are unable to make a mark, then the Witness must check the appropriate box in 11 indicating the inability to make a mark. The Witness must state his/her name in printed form and indicate his/her relationship to you or, if unrelated, state that fact. The Witness must sign and provide his or her printed name and residence address. Unless the Witness is a close relative of the voter (parent, grandparent, spouse, child or sibling), it is a Class B misdemeanor for a person to witness more than one application for ballot by mail.

**Assistant:** If a person (other than a close relative or person registered to vote at the same address) assists you in completing this application in your presence or mails/faxes/e-mails this application on your behalf, then that person must complete Box #11. The Assistant must sign, provide his or her printed name, and his or her residence address. A person commits a Class A misdemeanor if the person provides assistance without providing the information described above unless a close relative or registered at your address.

If you have further questions or need additional assistance, please contact your Early Voting Clerk or The Secretary of State's office at 1-800-252-8683 or www.sos.state.tx.us.

989

---

*City Secretary's Office*
*Received*

Date: 4-24-19

FROM:
Erasmo Almanza
3218 Daytona Ave
McAllen, TX. 78503-7704

To: Early Voting Clerk
Perla Lara
PO Box 220/1300 Houston Ave.
McAllen Texas 78505-0220

AFFIX LABEL HERE OR ADDRESS

DO NOT REMOVE PERFORATED TABS. Moisten tab and fold top to bottom to seal.

City Secretary's Office
Received
Date: 4/24/19

CITY OF McALLEN
MAIL CENTER
RECEIVED
APR 24 2019

78505-0220  B002

Aguilar, Maria G.
VUID # 1053736634 SMD#4

AW5-16
Prescribed by Secretary of State
Section 86.008(b), 86.0015 Texas Election Code
12/17

## NOTICE OF REJECTED APPLICATION FOR BALLOT BY MAIL

I have received and reviewed your application for a ballot by mail. I have determined that your application must be rejected for the following reason(s):

(Check as applicable)

_____ 1.    Your application was received earlier than the 60th day before an election held in January or February of the year following the year the ABBM was submitted.

_____ 2.    Your application was not properly delivered.

__X__ 3.    Your application was received after the deadline to apply for a ballot by mail for the upcoming election.
       (Check if appropriate:)
       _____ However, since you indicated on the application that it was to be an Annual application for a ballot by mail, the application will be considered valid for other elections held this year and for which the application was submitted before the deadline.

_____ 4.    You indicate you are voting due to expected absence from the county, but the address to which your ballot is to be sent is not an address outside the county. When voting by mail on the grounds of expected absence from the county, the address to which your ballot is to be mailed <u>must</u> be outside the county.

_____ 5.    When voting by mail due to confinement in jail, the address to which your ballot is to be mailed must be that of the jail or a relative. Your application did not indicate either address.

_____ 6.    Your application was not signed.

_____ 7.    The witness who signed your application did not:
       _____ (a)      indicate a relationship on your application;
       _____ (b)      indicate that you were unable to make your mark in lieu of your signature; or
       _____ (c)      provide his or her printed name or residence address.

_____ 8.    Your application did not indicate the reason you are entitled to vote by mail.

_____ 9.    For a primary election, you must indicate your party preference.
       (Check if appropriate:)
       _____ However, if you have submitted an Annual ABBM, you will receive ballots for other elections held this year <u>other</u> than the Primary or Runoff Election.

_____ 10.    Your residence address of registration was not provided on your application.

_____ 11.    Your application was received after the deadline for receiving an application for a ballot by mail.
       The deadline for receiving the application was _____.
                                                   (Date)
       (Check if appropriate)
       _____ However, since you have requested a ballot for the run-off election, if one is to be held,
             your application is valid for that election.

_____ 12.    According to the records of the voter registrar, you are not currently registered to vote or your registration, if you have applied, will not be effective on or before election day.

_____ 13.    I could not determine the election for which you are applying for a ballot.

_____ 14.    Your application was initially submitted via fax or email, but an original hardcopy of the application was not received within four business days.

_____ 15.    Other:_____

If you wish to vote, it will be necessary for you to submit another application to me, and that application must be received by _____ *If new application is faxed or emailed, the original hardcopy must be received within four
      (*Date)               business days.

If you have any questions regarding your application, please contact me at __(956) 681-1020__.
                                                           (Phone Number)

                                       Early Voting Clerk

AW5-16
Prescrito por el Secretario de Estado
Código Electoral de Texas Secs. 86.008(b), 86.0015
12/17

Aguilar, Maria G.
VUID # 1053736634 SMD#4

### AVISO DE SOLICITUD RECHAZADA PARA RECIBIR UNA BOLETA POR CORREO

Su solicitud para recibir una boleta por correo postal fue recibida y analizada.  Hemos determinado que su solicitud debe ser rechazada por la siguiente razón:

(Marcar las que apliquen)

_____1.  Su solicitud fue recibida antes del 60° día antes de una elección celebrada en enero o febrero del año siguiente al año en que se presentó el ABBM ("ABBM" por sus siglas en Ingles).

_____2.  La solicitud no fue entregada de manera apropiada.

__X__3.  Su solicitud fue recibida después de la fecha límite para aplicar para recibir una boleta por correo para esta elección. (Marque abajo si es apropiado).

_____ Sin embargo, ya que usted indico en la solicitud que su solicitud es una solicitud anual para votar por correo, la solicitud se considerará válida para las otras elecciones que sucedan este año y para las cuales su solicitud fue enviada antes de la fecha límite.

_____4.  Usted indico que desea votar por correo por que planea estar ausente del condado pero la dirección que usted proporciono para recibir su boleta no es una dirección fuera del condado.  Cuando usted aplica para votar por correo en base a que estará ausente del condado, la dirección a la cual recibirá su boleta <u>debe</u> estar ubicada fuera del condado.

_____5.  Si usted está encarcelado, para que pueda votar por correo es necesario que su boleta sea enviada directamente a la cárcel o al domicilio de algún familiar.  Su solicitud no indicó ninguna de estas direcciones.

_____6.  No firmó su solicitud.

_____7.  El testigo que firmó su solicitud no:
_____(a)  indicó, en la solicitud, qué parentesco o tipo relación existe entre ustedes;
_____(b)  indicó que además de no poder firmar, usted no puede poner su marca en la solicitud; o
_____(c)  proporciono su nombre completo en letra de molde y su dirección residencial.

_____8.  No indicó la base de elegibilidad por la cual usted tiene derecho a votar por correo.

_____9.  Para las elecciones primarias, usted debe indicar su preferencia de partido político. (Marque abajo si es apropiado).

_____ Sin embargo, si usted envió una solicitud anual para votar por correo postal (Annual ABBM, por sus siglas en Ingles), usted recibirá las boletas para todas las demás elecciones oficiadas este año <u>que no sean</u> elecciones primarias o elecciones primarias de desempate.

_____10.  No proporciono la dirección residencial bajo la cual usted está registrado/a.

_____11.  Su solicitud fue recibida después de la fecha límite para recibir solicitudes para votar por correo postal.  La fecha límite fue el _____ de _____, _____.
(día)    (mes)    (año)

(Marque abajo si es apropiado)
_____ Sin embargo, ya que usted solicito una boleta para la elección de desempate, si una sucede, su solicitud es válida para esa elección.

_____12.  Los documentos del registro electoral indican que usted no está inscrito como votante y si ha solicitado dicha inscripción, ésta no entrará en vigor en o antes del Día de la Elección.

_____13.  No se pudo determinar las elecciones en las cuales usted desea votar por correo.

_____14.  Su solicitud fue inicialmente enviada por fax o correo electrónico, pero una copia impresa original de la solicitud no fue recibida dentro de los cuatro días hábiles.

_____15.  Otro:_____

Si usted desea votar por correo, es necesario que envíe otra solicitud a esta oficina y su solicitud debe ser recibida por_____(Fecha).  *Si la nueva solicitud es enviada por fax o por correo electrónico, la copia impresa original debe ser recibida dentro de cuatro días hábiles.

Si tiene una pregunta en cuanto a su solicitud, por favor comuníquese conmigo llamando al  (956) 681-1020
(Número de Teléfono)

Secretario/a de Votación Anticipada

105373 0034

4

**DO NOT REMOVE PERFORATED TABS. Moisten here and fold bottom to top to seal.**   **DO NOT REMOVE PERFORATED TABS. Moisten here and fold bottom to top to seal.**

# Application for Ballot by Mail

*Prescribed by the Office of the Secretary of State of Texas*
*A5-16 12/17*

For Official Use Only
Voter's, County Election Precinct #:
Statement of Residence, etc.

**1** Last Name (Please print information)
Aguilar

First Name
Maria

Suffix (Jr., Sr., III, etc.)

Middle Initial
G

**2** Residence Address: See back of this application for instructions.
2036 Cortez Ave

City
McAllen

City
:TX

ZIP Code
78503

**3** Mail my ballot to: If mailing address differs from residence address, please complete Box #7.

City

State

ZIP Code

**4** Date of Birth (mm/dd/yyyy) (Optional)
12/17/1947

**5** Reason for Voting by Mail:

☒ 65 years of age or older. **(Complete Box #6a)**

☐ Disability. **(Complete Box #6a)**

☐ Expected absence from the county. **(Complete Box #6b and Box #8)**
☐ You will receive a ballot for the upcoming election only.

☐ Confinement in jail. **(Complete Box #6b)**
☐ You will receive a ballot for the upcoming election only.

**6a** ONLY Voters 65 Years of Age or Older or Voters with a Disability:
If applying for one election, select appropriate box.
If applying once for elections in the calendar year, select "Annual Application."

☐ Annual Application.

**Primary Elections:**
You must declare one political party in which to vote in a primary.

☐ May Election

☒ November Election

☐ Other: _____

☐ Democratic Primary:
☐ Republican Primary:

☐ Any Resulting Runoff

**6b** ONLY Voters Absent from County or Voters Confined in Jail:
You may only apply for a ballot by mail for one election, and any resulting runoff.
Please select the appropriate box.

**Uniform and Other Elections:**

☐ May Election

☐ November Election

☐ Other: _____

**Primary Elections:**
You must declare one political party in which to vote in a primary.

☐ Democratic Primary:
☐ Republican Primary:

☐ Any Resulting Runoff

**7** If you are requesting this ballot be mailed to a different address (other than residence), indicate where the ballot
will be mailed. See reverse for instructions.

☐ Mailing Address as listed on my voter registration certificate.

☐ Nursing home, assisted living facility, or long term care facility.

☐ Hospital

☐ Retirement Center

☐ Address of the jail

☐ Relative, relationship:

☐ Address outside the county (see Box #8)

**Contact Information (Optional)**
Please list a phone number and/or email address:
• Used in case our office has questions.

(956) 685-____

**8** If you selected "expected absence from the county," see reverse for instructions.

Date you will begin to receive mail at this address

☐☐☐ — ☐☐ — ☐☐

Date of return to residence address

☐☐☐ — ☐☐ — ☐☐

**9** Voters may submit a completed, signed, and scanned application to the Early Voting Clerk at:
(early voting clerk's e-mail address)
plara@mcallen.net

(956) 681-1029
(early voting clerk's fax)

NOTE: If you fax or e-mail this form, please be aware that you must also mail the form to the early voting clerk within four
business days. See "Submitting Application" on the back of instructions for additional information.

**10** "I certify that the information given in this application is true, and I understand that giving false information
in this application is a crime."

➤ **SIGN HERE**
If applicant is unable to sign or make a
mark in the presence of a witness, the
witness shall complete Box #11.

X _____
[signature]

Date: 1-28-19

**11** See back for Witness and Assistant definitions.
If applicant is unable to mark 2box #10 and you are acting as a Witness to that fact, please check this box and sign below.

If you assisted the applicant in completing this application in the applicant's presence or mailed or faxed the application on behalf of the applicant, please check this box as an Assistant and sign below.

☐ If you are acting as Witness and Assistant, please check both boxes. Failure to complete the information in a Class A misdemeanor if signature was witnessed or applicant was assisted in completing the application.

X _____
Signature of Witness/Assistant

_____
Street Address

_____
State

_____
Printed Name of Witness/Assistant

_____
Apt Number (if applicable)

_____
City

_____
ZIP Code

Witness' Relationship to Applicant
(Refer to instructions on back for clarification)

If someone helped you to complete this form or mails the form for you, then that person must complete the sections below.

*Este formulario está disponible en Español. Para conseguir la versión en Español favor de llamar sin cargo al 1.800.252.8683 a la oficina del Secretario de Estado o la Secretaría de Votación por Adelantado.*

992

## Instructions for Application for Ballot by Mail

**Residence Address** - Give full address as shown on your voter registration certificate. If you have moved within the county but not yet changed your voter registration address with the voter registrar, indicate your new residence address.

**Mail Ballot To** - Give full address where you wish to have ballot mailed, if the address is different from your residence address.

**Mailing Ballot to a Different Address** - Your ballot must be mailed to your home where you live or to your mailing address on your voter registration certificate. There are some exceptions that allow you to have your ballot mailed to a different location as specified below:

| Reason for voting by mail | Location to mail ballot |
|---|---|
| 65 or disabled | Nursing home, assisted living/retirement center, relative, hospital |
| In jail | Address of jail or relative |
| Absent from county | Address located outside of county |

**Expected Absence from County** - If you chose expected absence from county, you must expect to be absent from the county on election day and during the hours of early voting in person or for the remainder of the early voting period after you submit your application. Your ballot must be mailed to an address outside the county. Important: Give date you can begin to receive mail at the address given.

**Annual Application** - If you are 65 years of age or older, or disabled you may apply to receive all ballots by mail for a calendar year. If you do not select any elections in Box 6a, your application will be considered an Annual Application. If you submit an annual application for a ballot by mail, your application may be forwarded to other entities holding elections where you are a qualified voter. This means that you may receive a ballot for those elections in addition to the ballot(s) you requested with this application.

### Submitting Application

**1. Sign and date your application** - If unable to sign, please go to Witness/Address boxes (11 on reverse) and have a person witness your mark. Witness/Assistant instructions follow below.

**2. Deliver to Early Voting Clerk** - You may submit your application via these methods:

In Person: Only the applicant may submit their application in person to the Early Voting Clerk until the early voting period begins. However, after the early voting period begins for an election, the applicant may only submit their application via mail, common contract carrier, fax, or e-mail.

By Mail: You may mail your application via the U.S. Postal Service.

By Common Contract Carrier: You may submit via a common or contract carrier which is a bona fide, for profit carrier.

By Fax: You may fax your application to the Early Voting Clerk. Please contact your Early Voting Clerk or the Secretary of State's Office for fax numbers.

By E-Mail: You may e-mail a signed, scanned image of your application to the Early Voting Clerk. Please contact your Early Voting Clerk or the Secretary of State's Office for e-mail addresses. IF YOU FAX OR E-MAIL YOUR APPLICATION TO THE EARLY VOTING CLERK, YOU MUST ALSO MAIL THE APPLICATION SO THAT THE CLERK RECEIVES IT NO LATER THAN THE FOURTH BUSINESS DAY AFTER THE DAY THE CLERK RECEIVED YOUR FAXED OR E-MAILED APPLICATION. If you fax or e-mail your application by the deadline noted below, your application will be considered complete and timely as long as the original is received by the early voting clerk by the fourth business day after it was submitted by fax or e-mail.

### Deadline

Your application must be received by the early voting clerk of the local entity conducting the election not later than the 11th day before election day. If the 11th day is a weekend or holiday, the deadline is the first preceding business day. You may submit an application throughout the calendar year, beginning January 1. Please remember that the application must be received not later than the 11th day before the first election in which you seek to vote by mail.

If you submit an Annual Application for Ballot by Mail within 60 days before an election that takes place in the following calendar year, your application will be valid for any election that takes place in the following calendar year, regardless of the fact that your application was submitted prior to the end of the preceding calendar year. This applies to Annual Applications only and not to a regular application for ballot by mail.

### Witness/Assistant Section

**Witness:** If you are unable to sign your name (due to a physical disability or illiteracy), the application may be signed at Box 11 for you by a Witness. You must affix your mark to the application in Box 10 or, if you are unable to make a mark, then the Witness must check the appropriate box in 11 indicating the inability to make a mark. The Witness must state his/her name in printed form and indicate his/her relationship to you or, if unrelated, state that fact. The Witness must sign and provide his or her printed name and residence address. Unless the Witness is a close relative of the voter (parent, grandparent, spouse, child or sibling), it is a Class B misdemeanor for a person to witness more than one application for ballot by mail.

**Assistant:** If a person (other than a close relative or person registered to vote at the same address) assists you in completing this application in your presence or mails/faxes/e-mails this application on your behalf, then that person must complete Box 11. The Assistant must sign, provide his or her printed name, and his or her residence address. A person commits a Class A misdemeanor if the person provides assistance without providing the information described above unless a close relative or registered at your address.

**If you have further questions or need additional assistance, please contact your Early Voting Clerk or The Secretary of State's office at 1-800-252-8683 or www.sos.state.tx.us.**

FROM:

Maria Aguilar

2036 Cortez Ave

McAllen, TX. 78503-5619

AFFIX LABEL HERE OR ADDRESS

To: Early Voting Clerk

Perla Lara

PO Box 220/1300 Houston Ave.

McAllen Texas 78505-0220

DO NOT REMOVE PERFORATED TABS. Moisten tab and fold top to bottom to seal.

City Secretary's Office Received 4/27/19

City Secretary's Office Received 4-27-19

AFFIX FIRST CLASS POSTAGE

AWS-16
Prescribed by Secretary of State
Section 86.008(b), 86.0015 Texas Election Code
12/17

Sanchez, Welester
VUID # 1053773106 SMD#4

## NOTICE OF REJECTED APPLICATION FOR BALLOT BY MAIL

I have received and reviewed your application for a ballot by mail.  I have determined that your application must be rejected for the following reason(s):

(Check as applicable)

_____ 1.   Your application was received earlier than the 60th day before an election held in January or February of the year following the year the ABBM was submitted.

_____ 2.   Your application was not properly delivered.

__X__ 3.   Your application was received after the deadline to apply for a ballot by mail for the upcoming election.
(Check if appropriate:)
_____ However, since you indicated on the application that it was to be an Annual application for a ballot by mail, the application will be considered valid for other elections held this year and for which the application was submitted before the deadline.

_____ 4.   You indicate you are voting due to expected absence from the county, but the address to which your ballot is to be sent is not an address outside the county.  When voting by mail on the grounds of expected absence from the county, the address to which your ballot is to be mailed must be outside the county.

_____ 5.   When voting by mail due to confinement in jail, the address to which your ballot is to be mailed must be that of the jail or a relative.  Your application did not indicate either address.

_____ 6.   Your application was not signed.

_____ 7.   The witness who signed your application did not:
_____ (a)   indicate a relationship on your application;
_____ (b)   indicate that you were unable to make your mark in lieu of your signature; or
_____ (c)   provide his or her printed name or residence address.

_____ 8.   Your application did not indicate the reason you are entitled to vote by mail.

_____ 9.   For a primary election, you must indicate your party preference.
(Check if appropriate:)
_____ However, if you have submitted an Annual ABBM, you will receive ballots for other elections held this year other than the Primary or Runoff Election.

_____ 10.   Your residence address of registration was not provided on your application.

_____ 11.   Your application was received after the deadline for receiving an application for a ballot by mail.
The deadline for receiving the application was _____.
(Date)
(Check if appropriate)
_____ However, since you have requested a ballot for the run-off election, if one is to be held, your application is valid for that election.

_____ 12.   According to the records of the voter registrar, you are not currently registered to vote or your registration, if you have applied, will not be effective on or before election day.

_____ 13.   I could not determine the election for which you were applying for a ballot.

_____ 14.   Your application was initially submitted via fax or email, but an original hardcopy of the application was not received within four business days.

_____ 15.   Other:_____

If you wish to vote, it will be necessary for you to submit another application to me, and that application must be received by _____ *If new application is faxed or emailed, the original hardcopy must be received within four
(*Date)                                                business days.

If you have any questions regarding your application, please contact me at  (956) 681-1020                      .
(Phone Number)

_____
Early Voting Clerk

AW5-16
Prescrito por el Secretario de Estado
Código Electoral de Texas Secs. 86.008(b), 86.0015
12/17

Sanchez, Welester
VUID # 1053773106 SMD#4

## AVISO DE SOLICITUD RECHAZADA PARA RECIBIR UNA BOLETA POR CORREO

Su solicitud para recibir una boleta por correo postal fue recibida y analizada. Hemos determinado que su solicitud debe ser rechazada por la siguiente razón:

(Marcar las que apliquen)

_____ 1.   Su solicitud fue recibida antes del 60º día antes de una elección celebrada en enero o febrero del año siguiente al año en que se presentó el ABBM ("ABBM" por sus siglas en Ingles).

_____ 2.   La solicitud no fue entregada de manera apropiada.

__X__ 3.   Su solicitud fue recibida después de la fecha límite para aplicar para recibir una boleta por correo para esta elección. (Marque abajo si es apropiado).

_____ Sin embargo, ya que usted indico en la solicitud que su solicitud es una solicitud anual para votar por correo, la solicitud se considerará válida para las otras elecciones que sucedan este año y para las cuales su solicitud fue enviada antes de la fecha límite.

_____ 4.   Usted indico que desea votar por correo por que planea estar ausente del condado pero la dirección que usted proporciono para recibir su boleta no es una dirección fuera del condado. Cuando usted aplica para votar por correo en base a que estará ausente del condado, la dirección a la cual usted recibirá su boleta debe estar ubicada fuera del condado.

_____ 5.   Si usted está encarcelado, para que pueda votar por correo es necesario que su boleta sea enviada directamente a la cárcel o al domicilio de algún familiar. Su solicitud no indicó ninguna de estas direcciones.

_____ 6.   No firmó su solicitud.

_____ 7.   El testigo que firmó su solicitud no:
_____ (a)   indicó, en la solicitud, qué parentesco o tipo relación existe entre ustedes;
_____ (b)   indicó que además de no poder firmar, usted no puede poner su marca en la solicitud; o
_____ (c)   proporciono su nombre completo en letra de molde y su dirección residencial.

_____ 8.   No indicó la base de elegibilidad por la cual usted tiene derecho a votar por correo.

_____ 9.   Para las elecciones primarias, usted debe indicar su preferencia de partido político. (Marque abajo si es apropiado).

_____ Sin embargo, si usted envió una solicitud anual para votar por correo postal (Annual ABBM, por sus siglas en Ingles), usted recibirá las boletas para todas las demás elecciones oficiadas este año que no sean elecciones primarias o elecciones primarias de desempate.

_____ 10.   No proporciono la dirección residencial bajo la cual usted está registrado/a.

_____ 11.   Su solicitud fue recibida después de la fecha límite para recibir solicitudes para votar por correo postal. La fecha límite fue el _____ de _____ , _____ .
(día)        (mes)        (año)

(Marque abajo si es apropiado)
_____ Sin embargo, ya que usted solicito una boleta para la elección de desempate, si una sucede, su solicitud es válida para esa elección.

_____ 12.   Los documentos del registro electoral indican que usted no está inscrito como votante y si ha solicitado dicha inscripción, ésta no entrará en vigor en o antes del Día de la Elección.

_____ 13.   No se pudo determinar las elecciones en las cuales usted desea votar por correo.

_____ 14.   Su solicitud fue inicialmente enviada por fax o correo electrónico, pero una copia impresa original de la solicitud no fue recibida dentro de los cuatro días hábiles.

_____ 15.   Otro:_____

Si usted desea votar por correo, es necesario que envíe otra solicitud a esta oficina y su solicitud debe ser recibida por _____(Fecha). *Si la nueva solicitud es enviada por fax o por correo electrónico, la copia impresa original debe ser recibida dentro de cuatro días hábiles.

Si tiene una pregunta en cuanto a su solicitud, por favor comuníquese conmigo llamando al **(956) 681-1020**
(Número de Teléfono)

Secretario/a de Votación Anticipada

995

DO NOT REMOVE PERFORATED TABS: Moisten here and fold bottom to top to seal.

# Application for Ballot by Mail

Prescribed by the Office of the Secretary of State
Statement of Residence.

For Office Use Only
SBB04_County Election Precinct #,
Statement of Residence, etc.

**1.** Last Name (Please print information)
Sanchez

First Name
Welester

Middle Initial

Suffix (Jr, Sr, III, etc)

**2.** Residence Address: See back of this application for instructions.
716 S 25 1/2 St E

City
McAllen

State
, TX

ZIP Code
78501

**3.** Mail my ballot to: If mailing address differs from residence address, please complete Box # 7c.

City

State

ZIP Code

**4.** Date of Birth (mm/dd/yyyy) (Optional)
2/14/1944

**5.** Reason for Voting by Mail:

☐ 65 years of age or older. (Complete Box #6a)
☐ Disability. (Complete Box #6a)
☐ Expected absence from the county. (Complete Box #6b and Box #8)
☐ You will receive a ballot for the upcoming election only.
☐ Confinement in jail. (Complete Box #6b)
☐ You will receive a ballot for the upcoming election only.

**6a.** ONLY Voters 65 Years of Age or Older or Voters with a Disability
If applying once for the upcoming election, select this box.
If applying once for elections in the calendar year, select "Annual Application."

☐ Annual Application.

**6b.** ONLY Voters Absent from County or Voters Confined in Jail.
You may only apply for a ballot by mail for one election, and any resulting runoff.
Please select the appropriate box.

Uniform and Other Elections:
☐ May Election
☐ November Election
☐ Other _____

Uniform and Other Elections:
☐ May Election
☐ November Election
☐ Other _____

☐ Any Resulting Runoff

Primary Elections:
(You must declare see political party to vote in a primary.)
☐ Democratic Primary
☐ Republican Primary
☐ Any Resulting Runoff

**7.** If you are requesting this ballot be mailed to a different address (other than residence), indicate where the ballot will be mailed. See reverse for instructions.

☐ Mailing Address as listed on my voter registration certificate

☐ Address of the Jail
☐ Nursing home, assisted living facility, or long term care facility
☐ Relative, relationship _____
☐ Hospital
☐ Address outside the county (See Box #8)
☐ Retirement Center

**8.** If you selected "expected absence from the county," see reverse for instructions

Date you can begin to receive mail at this address

Date of return to residence address

**9.** Votes may submit a completed, signed, and scanned application to the Early Voting Clerk at:
plara@mcallen.net
(entity voting clerk's email address)
(956)681-1029
(entity voting clerk's fax)
NOTE: If you fax or e-mail this form, please also mail the original form to the early voting clerk within four business days. See "Submitting Application" on the back of this form for additional information.

**10.** "I certify that the information given in this application is true, and I understand that giving false information in this application is a crime."

X _____
SIGN HERE
If applicant is unable to sign or make a mark in the presence of a witness, the witness shall complete Box #11.

Date _____

**11.** See back for Witness and Assistant definitions.
If someone helped you to complete this form or mails the form for you, then that person must complete the sections below.

If applicant is unable to mark Box #10 and you are acting as a Witness to that fact, please check this box and sign below.  ☐

If you are assisted the applicant in completing this application, or mailed/faxed the form on behalf of the applicant's presence or e-mailed/mailed or faxed this application is a Class A misdemeanor if signature was witnessed or applicant was assisted in completing the application.

*If you are acting as Witness and Assistant, please check both boxes. Failure to complete this information is a Class A misdemeanor if signature was witnessed or applicant was assisted in completing the application.

X _____
Signature of Witness/Assistant

Printed Name of Witness/Assistant

Witness' Relationship to Applicant
(Refer to instructions on back for clarification)

Street Address

Apt Number (if applicable)

City

State

ZIP Code

Este formulario está disponible en Español. Para conseguir la versión en Español favor de llamar sin cargo al 1.800.252.8683 a la oficina del Secretario de Estado o la Secretaría de Votación por Adelantado.

## Instructions for Application for Ballot by Mail

**Residence Address** - Give full address as shown on your voter registration certificate. If you have moved within the county but not yet changed your voter registration address with the voter registrar, indicate your new residence address.

**Mail Ballot To** - Give full address where you wish to have ballot mailed, if the address is different from your residence address.

**Mailing Ballot to a Different Address** - Your ballot must be mailed to your home where you live or to your mailing address on your voter registration certificate. There are some exceptions that allow you to have your ballot mailed to a different location as specified below:

| Reason for voting by mail | Location to mail ballot |
|---|---|
| 65 or disabled | Nursing home, assisted living/retirement center, relative, hospital |
| In jail | Address of jail or relative |
| Absent from county | Address located outside of county |

**Expected Absence from County** - If you chose expected absence from county, you must expect to be absent from the county on election day and during the hours of early voting in person or for the remainder of the early voting period after you submit your application. Your ballot must be mailed to an address outside the county. Important: Give date you can begin to receive mail at the address given.

**Annual Application** - If you are 65 years of age or older, or disabled you may apply to receive all ballots by mail for a calendar year. If you do not select any elections in Box 6a, your application will be considered an Annual Application. If you submit an annual application for a ballot by mail, your application may be forwarded to other entities holding elections where you are a qualified voter. This means that you may receive a ballot for those elections in addition to the ballot(s) you requested with this application.

### Submitting Application

1. **Sign and date your application** - If unable to sign, please go to Witness/Address boxes (11 on reverse) and have a person witness your mark. Witness/Assistant instructions follow below.

2. **Deliver to Early Voting Clerk** - You may submit your application via these methods:

**In Person:** Only the applicant may submit their application in person to the Early Voting Clerk until the early voting period begins. However, after the early voting period begins for an election, the applicant may only submit their application via mail, common contract carrier, fax, or e-mail.

**By Mail:** You may mail your application via the U.S. Postal Service.

**By Common Contract Carrier:** You may submit via a common or contract carrier which is a bona fide, for profit carrier.

**By Fax:** You may fax your application to the Early Voting Clerk. Please contact your Early Voting Clerk or the Secretary of State's Office for fax numbers.

**By E-Mail:** You may e-mail a signed, scanned image of your application to the Early Voting Clerk. Please contact your Early Voting Clerk or the Secretary of State's Office for e-mail addresses.

**IF YOU FAX OR E-MAIL YOUR APPLICATION TO THE EARLY VOTING CLERK, YOU MUST ALSO MAIL THE APPLICATION SO THAT THE CLERK RECEIVES IT NO LATER THAN THE FOURTH BUSINESS DAY AFTER THE DAY THE CLERK RECEIVED YOUR FAXED OR EMAILED APPLICATION. If you fax or e-mail your application by the deadline noted below, your application will be considered complete and timely as long as the original is received by the early voting clerk by the fourth business day after it was submitted by fax or e-mail.**

### Deadline

Your application must be received by the early voting clerk of the local entity conducting the election not later than the 11th day before election day. If the 11th day is a weekend or holiday, the deadline is the first preceding business day. You may submit an application throughout this calendar year, beginning January 1. Please remember that the application must be received not later than the 11th day before the first election in which you seek to vote by mail.

If you submit an Annual Application for Ballot by Mail within 60 days before an election that takes place in the following calendar year, your application will be valid for any election that takes place in the following calendar year, regardless of the fact that your application was submitted prior to the end of the preceding calendar year. This applies to Annual Applications only and not to a regular application for ballot by mail.

### Witness/Assistant Section

**Witness:** If you are unable to sign your name (due to a physical disability or illiteracy), the application may be signed at Box #11 for you by a Witness. You must affix your mark to the application in Box #10 or, if you are unable to make a mark, then the Witness must check the appropriate box in 11 indicating the inability to make a mark. The Witness must state his/her name in printed form and indicate his/her relationship to you or, if unrelated, state that fact. The Witness must sign and provide his or her printed name and residence address. Unless the Witness is a close relative of the voter (parent, grandparent, spouse, child or sibling), it is a Class B misdemeanor for a person to witness more than one application for ballot by mail.

**Assistant:** If a person (other than a close relative or person registered to vote at the same address) assists you in completing this application in your presence or mails/faxes/e-mails this application on your behalf, then that person must complete Box #11. The Assistant must sign, provide his or her printed name, and his or her residence address. A person commits a Class A misdemeanor if the person provides assistance without providing the information described above unless a close relative or registered at your address.

If you have further questions or need additional assistance, please contact your Early Voting Clerk or The Secretary of State's office at 1-800-252-8683 or www.sos.state.tx.us.



City Secretary's Office
Received

Date 4-24-19

DO NOT REMOVE PERFORATED TABS. Moisten tab and fold top to bottom to seal.

**FROM:**

Welester Sanchez

716 S 25 1/2 St E

McAllen, TX. 78501-7706

**AFFIX LABEL HERE OR ADDRESS**

**To:** Early Voting Clerk

Perla Lara

PO Box 220/1300 Houston Ave.

McAllen Texas 78505-0220

City Secretary's Office
Received 4/24/19

RECEIVED
CITY OF McALLEN
APR 24 2019
MAIL CENTER

AW5-16
Prescribed by Secretary of State
Section 86.008(b), 86.0015 Texas Election Code
12/17

Sanchez, Maria De La Luz
VUID # 1054403879 SMD#4

## NOTICE OF REJECTED APPLICATION FOR BALLOT BY MAIL

I have received and reviewed your application for a ballot by mail. I have determined that your application must be rejected for the following reason(s):

(Check as applicable)

_____ 1.   Your application was received earlier than the 60th day before an election held in January or February of the year following the year the ABBM was submitted.

_____ 2.   Your application was not properly delivered.

__X__ 3.   Your application was received after the deadline to apply for a ballot by mail for the upcoming election.

    (Check if appropriate:)

    _____ However, since you indicated on the application that it was to be an Annual application for a ballot by mail, the application will be considered valid for other elections held this year and for which the application was submitted before the deadline.

_____ 4.   You indicate you are voting due to expected absence from the county, but the address to which your ballot is to be sent is not an address outside the county. When voting by mail on the grounds of expected absence from the county, the address to which your ballot is to be mailed <u>must</u> be outside the county.

_____ 5.   When voting by mail due to confinement in jail, the address to which your ballot is to be mailed must be that of the jail or a relative. Your application did not indicate either address.

_____ 6.   Your application was not signed.

_____ 7.   The witness who signed your application did not:

    _____ (a)   indicate a relationship on your application;

    _____ (b)   indicate that you were unable to make your mark in lieu of your signature; or

    _____ (c)   provide his or her printed name or residence address.

_____ 8.   Your application did not indicate the reason you are entitled to vote by mail.

_____ 9.   For a primary election, you must indicate your party preference.

    (Check if appropriate:)

    _____ However, if you have submitted an Annual ABBM, you will receive ballots for other elections held this year <u>other</u> than the Primary or Runoff Election.

_____ 10.  Your residence address of registration was not provided on your application.

_____ 11.  Your application was received after the deadline for receiving an application for a ballot by mail.

    The deadline for receiving the application was _____
                                          (Date)

    (Check if appropriate)

    _____ However, since you have requested a ballot for the run-off election, if one is to be held, your application is valid for that election.

_____ 12.  According to the records of the voter registrar, you are not currently registered to vote or your registration, if you have applied, will not be effective on or before election day.

_____ 13.  I could not determine the election for which you were applying for a ballot.

_____ 14.  Your application was initially submitted via fax or email, but an original hardcopy of the application was not received within four business days.

_____ 15.  Other:_____

If you wish to vote, it will be necessary for you to submit another application to me, and that application must be received by _____ *If new application is faxed or emailed, the original hardcopy must be received within four
    (*Date)                business days.

If you have any questions regarding your application, please contact me at  (956) 681-1020 _____.
                                         (Phone Number)

                          Early Voting Clerk

AW5-16
Prescrito por el Secretario de Estado
Código Electoral de Texas Secs. 86.008(b), 86.0015
12/17

Sanchez, Maria De La Luz
VUID # 1054403879 SMD#4

## AVISO DE SOLICITUD RECHAZADA PARA RECIBIR UNA BOLETA POR CORREO

Su solicitud para recibir una boleta por correo postal fue recibida y analizada.  Hemos determinado que su solicitud debe ser rechazada por la siguiente razón:

(Marcar las que apliquen)

_____1.      Su solicitud fue recibida antes del 60° día antes de una elección celebrada en enero o febrero del año siguiente al año en que se presentó el ABBM ("ABBM" por sus siglas en Ingles).

_____2.      La solicitud no fue entregada de manera apropiada.

__X__3.      Su solicitud fue recibida después de la fecha límite para aplicar para recibir una boleta por correo para esta elección. (Marque abajo si es apropiado).

            _____Sin embargo, ya que usted indico en la solicitud que su solicitud es una solicitud anual para votar por correo, la solicitud se considerará válida para las otras elecciones que sucedan este año y para las cuales su solicitud fue enviada antes de la fecha límite.

_____4.      Usted indico que desea votar por correo por que planea estar ausente del condado pero la dirección que usted proporciono para recibir su boleta no es una dirección fuera del condado.  Cuando usted aplica para votar por correo en base a que estará ausente del condado, la dirección a la cual usted recibirá su boleta debe estar ubicada fuera del condado.

_____5.      Si usted está encarcelado, para que pueda votar por correo es necesario que su boleta sea enviada directamente a la cárcel o al domicilio de algún familiar.  Su solicitud no indicó ninguna de estas direcciones.

_____6.      No firmó su solicitud.

_____7.      El testigo que firmó su solicitud no:
            _____(a)      indicó, en la solicitud, qué parentesco o tipo relación existe entre ustedes;
            _____(b)      indicó que además de no poder firmar, usted no puede poner su marca en la solicitud; o
            _____(c)      proporciono su nombre completo en letra de molde y su dirección residencial.

_____8.      No indicó la base de elegibilidad por la cual usted tiene derecho a votar por correo.

_____9.      Para las elecciones primarias, usted debe indicar su preferencia de partido político. (Marque abajo si es apropiado).

            _____Sin embargo, si usted envió una solicitud anual para votar por correo postal (Annual ABBM, por sus siglas en Ingles), usted recibirá las boletas para todas las demás elecciones oficiadas este año que no sean elecciones primarias o elecciones primarias de desempate.

_____10.     No proporciono la dirección residencial bajo la cual usted está registrado/a.

_____11.     Su solicitud fue recibida después de la fecha límite para recibir solicitudes para votar por correo postal.
            La fecha límite fue el _____ de _____, _____.
                        (día)    (mes)    (año)

            (Marque abajo si es apropiado)
            _____ Sin embargo, ya que usted solicito una boleta para la elección de desempate, si una sucede, su solicitud es válida para esa elección.

_____12.     Los documentos del registro electoral indican que usted no está inscrito como votante y si ha solicitado dicha inscripción, ésta no entrará en vigor en o antes del Día de la Elección.

_____13.     No se pudo determinar las elecciones en las cuales usted desea votar por correo.

_____14.     Su solicitud fue inicialmente enviada por fax o correo electrónico, pero una copia impresa original de la solicitud no fue recibida dentro de los cuatro días hábiles.

_____15.     Otro:_____

Si usted desea votar por correo, es necesario que envíe otra solicitud a esta oficina y su solicitud debe ser recibida por_____(Fecha).  *Si la nueva solicitud es enviada por fax o por correo electrónico, la copia impresa original debe ser recibida dentro de cuatro días hábiles.

Si tiene una pregunta en cuanto a su solicitud, por favor comuníquese conmigo llamando al  (956) 681-1020
                                                                                            (Número de Teléfono)

                                                                                            Secretario/a de Votación Anticipada

# Application for Ballot by Mail

DO NOT REMOVE PERFORATED TABS. Moisten here and fold bottom to top to seal.    DO NOT...    ...ORATED TABS. m...

Prescribed by the Office of the Secretary of State
Sections 84.001, 84.011, 84.012
5/2014

For Official Use Only
VUID #, County Election Precinct #,
Statement of Residence, etc.

**1** List Name (Please print information)

| | First Name | Middle Initial |
|---|---|---|
| Sanchez | Maria | De La Luz |
| Suffix (Jr., Sr., III, etc.) | | |

**2** Residence Address: See back of this application for instructions.

2812 Uvalde Ave.

| City | State | ZIP Code |
|---|---|---|
| McAllen | ,TX | ,78503 |

**3** Mailing my ballot to: (If mailing address differs from residence address, please complete Box #7.)

| City | State | ZIP Code |
|---|---|---|

**4** Date of Birth (mm/dd/yyyy)(Optional)

8/7/1922

**5** Reason for Voting by Mail:

- ☒ 65 years of age or older. **(Complete Box #6a)**
- ☐ Disability. **(Complete Box #6a)**
- ☐ Expected absence from the county. **(Complete Box #6b and Box #8)**
- ☐ You will be voting a ballot for the upcoming election only.
- ☐ Confinement in jail. **(Complete Box #6b)**
- ☐ You will receive a ballot for the upcoming election only.

**6a** ONLY Voters 65 Years of Age or Older or Voters with a Disability.
If applying for one election, select appropriate box.
If applying once for elections in the calendar year, select "Annual Application".

- ☐ Annual Application
- ☐ Any Resulting Runoff

**6b** ONLY Voters Absent from County or Voters Confined in Jail.
You may only apply for a ballot by mail for this one election, and any resulting runoff.
Please select the appropriate box.

**Uniform and Other Elections:**
- ☐ May Election
- ☐ November Election
- ☐ Other:

**Primary Elections:**
You must declare which political party to vote in a primary.
- ☐ Democratic Primary
- ☐ Republican Primary
- ☐ Any Resulting Runoff

**7** If you are requesting this ballot be mailed to a different address (other than residence), indicate where the ballot will be mailed. See reverse for instructions.

- ☐ Mailing address as listed on my voter registration certificate.
- ☐ Nursing home / assisted living facility, or long term care facility
- ☐ Hospital
- ☐ Retirement Center
- ☐ Address of the jail
- ☐ Relative, relationship
- ☐ Address outside the county (see Box #9)

**8** If you selected "expected absence from the county", see reverse for instructions

Date of return to residence address

**9** **"Contact Information (Optional)"** phone number and email address:
- Used if there is a question about your application.

plara@mcallen.net    (956)681-1029

Date you can begin to receive mail at this address

Ballot may also be e-mailed, scanned and sealed application to the Early Voting Clerk at:
Early Voting Clerk's e-mail address
NOTE: If you fax an e-mail this form, please be aware that you must also mail this form to the early voting clerk within four business days. See "Submitting Application" on the back of this form for additional information.

**10** "I certify that the information given in this application is true, and I understand that giving false information in this application is a crime."

X Maria ___

SIGN HERE
If applicant is unable to sign or make a mark in the presence of a witness, the witness shall complete Box #11.

Date 4/26/2019

**11** See back for Witness and Assistant definitions.
If applicant is unable to mark box #10 and you are acting as a Witness to that fact, please check this box and sign below.  ☐

If you assisted the applicant in completing this application or (aided the applicant, please check this box as an Assistant and sign below.  ☐

*If you are acting as a Witness and Assistant, please check both boxes. Failure to complete this information is a Class A misdemeanor if signature was witnessed or applicant was assisted in completing the application.

X ___

| Signature of Witness/Assistant | Witness'/Relationship to Applicant (Refer to instructions on back for clarification) |
|---|---|
| Printed Name of Witness/Assistant | |
| Street Address | Apt. Number (if applicable) |
| City | State | ZIP Code |

Este form... *Responsible en Español. Para conseguir la versión en Español, favor de llamar sin cargo al 1.800.252.8683 a la Oficina del Secretario de Estado o la Secretaría de Votación por Adelantado.

DO NOT REMOVE PERFORATED TABS. Moisten tab and fold top to bottom to seal.

FROM: Maria Sanchez
2812 Uvalde Ave
McAllen, TX. 78503-7992

City Secretary's Office
Received
Date 4/27/19

AFFIX LABEL HERE OR ADDRESS

To: Early Voting Clerk
Perla Lara
PO Box 220/1300 Houston Ave.
McAllen Texas 78505-0220

OFFICIAL ELECTION MAIL

City Secretary's Office
Received
Date 4-27-19

7850580220 B002

## Instructions for Application for Ballot by Mail

**Residence Address** - Give full address as shown on your voter registration certificate. If you have moved within the county but not yet changed your voter registration address with the voter registrar, indicate your new residence address.

**Mail Ballot To** - Give full address where you wish to have ballot mailed, if the address is different from your residence address.

**Mailing Ballot to a Different Address** - Your ballot must be mailed to your home where you live or to your mailing address on your voter registration certificate. There are some exceptions that allow you to have your ballot mailed to a different location as specified below:

| Reason for voting by mail | Location to mail ballot |
|---|---|
| 65 or disabled | Nursing home, assisted living/retirement center, relative, hospital |
| In jail | Address of jail or relative |
| Absent from county | Address located outside of county |

**Expected Absence from County** - If you chose expected absence from county, you must expect to be absent from the county on election day and during the hours of early voting in person or for the remainder of the early voting period after you submit your application. **Your ballot must be mailed to an address outside the county.** Important: Give date you can begin to receive mail at the address given.

**Annual Application** - If you are 65 years of age or older, or disabled you may apply to receive all ballots by mail for a calendar year. If you do not select any elections in Box 6a, your application will be considered an Annual Application. If you submit an annual application for a ballot by mail, your application may be forwarded to other entities holding elections where you are a qualified voter. This means that you may receive a ballot for those elections in addition to the ballot(s) you requested with this application.

## Submitting Application

**1. Sign and date your application** - If unable to sign, please go to Witness/Address boxes (11 on reverse) and have a person witness your mark. Witness/Assistant instructions follow below.

**2. Deliver to Early Voting Clerk** - You may submit your application via these methods:

In Person: Only the applicant may submit their application in person to the Early Voting Clerk until the early voting period begins. However, after the early voting period begins for an election, the applicant may only submit their application via mail, common contract carrier, fax, or e-mail.

By Mail: You may mail your application via the U.S. Postal Service.

By Common Contract Carrier: You may submit via a common or contract carrier which is a bona fide, for profit carrier.

By Fax: You may fax your application to the Early Voting Clerk. Please contact your Early Voting Clerk or the Secretary of State's Office for fax numbers.

By E-Mail: You may e-mail a signed, scanned image of your application to the Early Voting Clerk. Please contact your Early Voting Clerk or the Secretary of State's Office for e-mail addresses.

**IF YOU FAX OR E-MAIL YOUR APPLICATION TO THE EARLY VOTING CLERK, YOU MUST ALSO MAIL THE APPLICATION SO THAT THE CLERK RECEIVES IT NO LATER THAN THE FOURTH BUSINESS DAY AFTER THE DAY THE CLERK RECEIVED YOUR FAXED OR EMAILED APPLICATION. If you fax or e-mail your application by the deadline noted below, your application will be considered complete and timely as long as the original is received by the early voting clerk by the fourth business day after it was submitted by fax or e-mail.**

## Deadline

Your application must be received by the early voting clerk of the local entity conducting the election not later than the 11th day before election day. If the 11th day is a weekend or holiday, the deadline is the first preceding business day. You may submit an application throughout the calendar year, beginning January 1. Please remember that the application must be received not later than the 11th day before the first election in which you seek to vote by mail.

If you submit an Annual Application for Ballot by Mail within 60 days before an election that takes place in the following calendar year, your application will be valid for any election that takes place in the following calendar year, regardless of the fact that your application was submitted prior to the end of the preceding calendar year. This applies to Annual Applications only and not to a regular application for ballot by mail.

## Witness/Assistant Section

**Witness:** If you are unable to sign your name (due to a physical disability or illiteracy), the application may be signed at Box #11 for you by a Witness. You must affix your mark to the application in Box #10 or, if you are unable to make a mark, then the Witness must check the appropriate box in 11 indicating the inability to make a mark. The Witness must state his/her name in printed form and indicate his/her relationship to you or, if unrelated, state that fact. The Witness must sign and provide his or her printed name and residence address. Unless the Witness is a close relative of the voter (parent, grandparent, spouse, child or sibling), it is a Class B misdemeanor for a person to witness more than one application for ballot by mail.

**Assistant:** If a person (other than a close relative or person registered to vote at the same address) assists you in completing this application in your presence or mails/faxes/e-mails this application on your behalf, then that person must complete Box #11. The Assistant must sign, provide his or her printed name, and his or her residence address. A person commits a Class A misdemeanor if the person provides assistance without providing the information described above unless a close relative or registered at your address.

**If you have further questions or need additional assistance, please contact your Early Voting Clerk or The Secretary of State's office at 1-800-252-8683 or www.sos.state.tx.us.**

AWS-16
Prescribed by Secretary of State
Section 86.008(b), 86.0015 Texas Election Code
12/17

Sanchez, Blanca Cavazos
VUID # 1055506689 SMD#4

## NOTICE OF REJECTED APPLICATION FOR BALLOT BY MAIL

I have received and reviewed your application for a ballot by mail. I have determined that your application must be rejected for the following reason(s):

(Check as applicable)

_____ 1.   Your application was received earlier than the 60th day before an election held in January or February of the year following the year the ABBM was submitted.

_____ 2.   Your application was not properly delivered.

__X__ 3.   Your application was received after the deadline to apply for a ballot by mail for the upcoming election.
      (Check if appropriate:)
      _____ However, since you indicated on the application that it was to be an Annual application for a ballot by mail, the application will be considered valid for other elections held this year and for which the application was submitted before the deadline.

_____ 4.   You indicate you are voting due to expected absence from the county, but the address to which your ballot is to be sent is not an address outside the county. When voting by mail on the grounds of expected absence from the county, the address to which your ballot is to be mailed <u>must</u> be outside the county.

_____ 5.   When voting by mail due to confinement in jail, the address to which your ballot is to be mailed must be that of the jail or a relative. Your application did not indicate either address.

_____ 6.   Your application was not signed.

_____ 7.   The witness who signed your application did not:
      _____ (a)   indicate a relationship on your application;
      _____ (b)   indicate that you were unable to make your mark in lieu of your signature; or
      _____ (c)   provide his or her printed name or residence address.

_____ 8.   Your application did not indicate the reason you are entitled to vote by mail.

_____ 9.   For a primary election, you must indicate your party preference.
      (Check if appropriate:)
      _____ However, if you have submitted an Annual ABBM, you will receive ballots for other elections held this year <u>other</u> than the Primary or Runoff Election.

_____ 10.  Your residence address of registration was not provided on your application.

_____ 11.  Your application was received after the deadline for receiving an application for a ballot by mail.
      The deadline for receiving the application was _____.
                                           (Date)
      (Check if appropriate)
      _____ However, since you have requested a ballot for the run-off election, if one is to be held, your application is valid for that election.

_____ 12.  According to the records of the voter registrar, you are not currently registered to vote or your registration, if you have applied, will not be effective on or before election day.

_____ 13.  I could not determine the election for which you were applying for a ballot.

_____ 14.  Your application was initially submitted via fax or email, but an original hardcopy of the application was not received within four business days.

_____ 15.  Other:_____

If you wish to vote, it will be necessary for you to submit another application to me, and that application must be received by _____ *If new application is faxed or emailed, the original hardcopy must be received within four
     (*Date)           business days.

If you have any questions regarding your application, please contact me at  (956) 681-1020
                                                  (Phone Number)

                                            Early Voting Clerk

AW5-16
Prescrito por el Secretario de Estado
Código Electoral de Texas Secs. 86.008(b), 86.0015
12/17

Sanchez, Blanca Cavazos
VUID # 1055506689 SMD#4

## AVISO DE SOLICITUD RECHAZADA PARA RECIBIR UNA BOLETA POR CORREO

Su solicitud para recibir una boleta por correo postal fue recibida y analizada.  Hemos determinado que su solicitud debe ser rechazada por la siguiente razón:

(Marcar las que apliquen)

_____1.     Su solicitud fue recibida antes del 60° día antes de una elección celebrada en enero o febrero del año siguiente al año en que se presentó el ABBM ("ABBM" por sus siglas en Ingles).

_____2.     La solicitud no fue entregada de manera apropiada.

__X__3.     Su solicitud fue recibida después de la fecha límite para aplicar para recibir una boleta por correo para esta elección. (Marque abajo si es apropiado).

            _____Sin embargo, ya que usted indico en la solicitud que su solicitud es una solicitud anual para votar por correo, la solicitud se considerará válida para las otras elecciones que sucedan este año y para las cuales su solicitud fue enviada antes de la fecha límite.

_____4.     Usted indico que desea votar por correo por que planea estar ausente del condado pero la dirección que usted proporciono para recibir su boleta no es una dirección fuera del condado.  Cuando usted aplica para votar por correo en base a que estará ausente del condado, la dirección a la cual usted recibirá su boleta debe estar ubicada fuera del condado.

_____5.     Si usted está encarcelado, para que pueda votar por correo es necesario que su boleta sea enviada directamente a la cárcel o al domicilio de algún familiar.  Su solicitud no indicó ninguna de estas direcciones.

_____6.     No firmó su solicitud.

_____7.     El testigo que firmó su solicitud no:
            _____(a)     indicó, en la solicitud, qué parentesco o tipo relación existe entre ustedes;
            _____(b)     indicó que además de no poder firmar, usted no puede poner su marca en la solicitud; o
            _____(c)     proporciono su nombre completo en letra de molde y su dirección residencial.

_____8.     No indicó la base de elegibilidad por la cual usted tiene derecho a votar por correo.

_____9.     Para las elecciones primarias, usted debe indicar su preferencia de partido político. (Marque abajo si es apropiado).

            _____Sin embargo, si usted envió una solicitud anual para votar por correo postal (Annual ABBM, por sus siglas en Ingles), usted recibirá las boletas para todas las demás elecciones oficiadas este año que no sean elecciones primarias o elecciones primarias de desempate.

_____10.   No proporciono la dirección residencial bajo la cual usted está registrado/a.

_____11.   Su solicitud fue recibida después de la fecha límite para recibir solicitudes para votar por correo postal.
            La fecha límite fue el ____ de ____ _____
                              (día)      (mes)      (año)

            (Marque abajo si es apropiado)
            _____ Sin embargo, ya que usted solicito una boleta para la elección de desempate, si una sucede, su solicitud es válida para esa elección.

_____12.   Los documentos del registro electoral indican que usted no está inscrito como votante y si ha solicitado dicha inscripción, ésta no entrará en vigor en o antes del Día de la Elección.

_____13.   No se pudo determinar las elecciones en las cuales usted desea votar por correo.

_____14.   Su solicitud fue inicialmente enviada por fax o correo electrónico, pero una copia impresa original de la solicitud no fue recibida dentro de los cuatro días hábiles.

_____15.   Otro:_____

Si usted desea votar por correo, es necesario que envíe otra solicitud a esta oficina y su solicitud debe ser recibida por_____(Fecha).  *Si la nueva solicitud es enviada por fax o por correo electrónico, la copia impresa original debe ser recibida dentro de cuatro días hábiles.

Si tiene una pregunta en cuanto a su solicitud, por favor comuníquese conmigo llamando al  (956) 681-1020
                                                                              (Número de Teléfono)

                                                                              Secretario/a de Votación Anticipada

DO NOT REMOVE PERFORATED TABS. Moisten here and fold bottom to top to seal.   DO NOT REMOVE PERFORATED TABS. Moisten here and fold bottom to top to seal.

## Application for Ballot by Mail

Reproduced by the Office of the Secretary of State of Texas
VUID #, County Election Precinct #,
Statement of Residence, etc.

For Official Use Only

**1** Last Name (Please print information)
Sanchez

First Name
Bianca

Middle Initial
Cavazos

Suffix (Jr., Sr., II, etc)

**2** Residence Address. See back of this application for instructions.
716 S 25 1/2 St E

City
McAllen

State
,TX

ZIP Code
78501

**3** Mail my ballot to: If mailing address differs from residence address, please complete Box #Tr.

City

State

ZIP Code

**4** Date of Birth (mm/dd/yyyy) (Optional)
8/5/1941

**5** Reason for Voting by Mail
☒ 65 years of age or older. (Complete Box #6a)
☐ Disability. (Complete Box #6a)
☐ Expected absence from the county. (Complete Box #6b and Box #8)
☐ You will receive a ballot for the upcoming election only
☐ You will receive a ballot for the upcoming election only

**6a** ONLY Voters 65 Years of Age or Older or Voters with a Disability:
If applying for one election, select appropriate box.
If applying once for all elections in the calendar year, select "Annual Application":

☐ Uniform and Other Elections:
☒ May Election
☐ November Election
☐ Other _____

☐ Annual Application.

Primary Elections:
You must declare one political party to vote in a primary.
☐ Democratic Primary
☐ Republican Primary

☐ Any Resulting Runoff

**6b** ONLY Voters Absent from County or Voters Confined in Jail:
You may only apply for a ballot by mail for one election, and any resulting runoff.
Please select the appropriate box.

☐ Uniform and Other Elections:
☐ May Election
☐ November Election
☐ Other _____

Primary Elections:
You must declare one political party to vote in a primary.
☐ Democratic Primary
☐ Republican Primary

☐ Any Resulting Runoff

**7** If you are requesting this ballot be mailed to a different address (other than residence), indicate where the ballot will be mailed. See reverse for instructions.
☐ Address of the jail
☐ Relative, relationship _____
☐ Address outside the county (see Box #9)

**8** If you selected "expected absence from the county", see reverse for instructions

_____   Date of return to residence address

**9** Date you can begin to receive mail at this address

Voters may submit a completed, signed, and scanned application to the Early Voting Clerk at:
plara@mcallen.net
(early voting clerk's e-mail address)

NOTE: If you fax or e-mail this form, please be aware that you must also mail the form to the early voting clerk within four business days. See "Submitting Application" on the back of this form for additional information.

Date of return to residence address
__/__/____   Date of return to residence address

☐ Nursing home, assisted-living facility, or long-term care facility
☐ Hospital
☐ Retirement Center

"Contact information (Optional)"
Please list phone number and/or email address.
* Used in case our office has questions.

(956)681-1029
(early voting clerk's fax)

**10** "I certify that the information given in this application is true, and I understand that giving false information in this application is a crime."

**SIGN HERE**
↓ If applicant is unable to sign or make a mark in the presence of a witness, the witness shall complete Box #11.

X _Bianca Sanchez_

**11** See back for Witness and Assistant definitions.
If applicant is unable to mark Box #10 and you are acting as a Witness to that fact, please check this box and sign below: ☐

If you assisted the applicant in completing this application in the applicant's presence or e-mailed/faxed this application on behalf of the applicant, please check this box as an Assistant and sign below: ☐

X _____
Signature of Witness/Assistant

X _____
Printed Name of Witness/Assistant.

Apt Number (if applicable)

Street Address

City

State

ZIP Code

Witness' Relationship to Applicant
(Refer to instructions on back for clarification)

Date _____

If you are acting as a Witness and Assistant, please check both boxes. Failure to complete the applicant's presence or e-mailed/faxed to complete this form or mails the form for you, then that person must complete the sections below.

Este formulario está disponible en Español.   Para conseguir la versión en Español favor de llamar sin cargo al 1.800.252.8683 a la oficina del Secretario de Estado o la Secretaria de Votación por Adelantado.

1004

## Instructions for Application for Ballot by Mail

**Residence Address** - Give full address as shown on your voter registration certificate. If you have moved within the county but not yet changed your voter registration address with the voter registrar, indicate your new residence address.

**Mail Ballot To** - Give full address where you wish to have ballot mailed, if the address is different from your residence address.

**Mailing Ballot to a Different Address** - Your ballot must be mailed to your home where you live or to your mailing address on your voter registration certificate. There are some exceptions that allow you to have your ballot mailed to a different location as specified below.

| Reason for voting by mail | Location to mail ballot |
|---|---|
| 65 or disabled | Nursing home, assisted living/retirement center, relative, hospital |
| In jail | Address of jail or relative. |
| Absent from county | Address located outside of county |

**Expected Absence from County** - If you choose expected absence from county, you must expect to be absent from the county on election day and during the hours of early voting in person or for the remainder of the early voting period after you submit your application. Your ballot must be mailed to an address outside the county. Important: Give date you can begin to receive mail at the address given.

**Annual Application** - If you are 65 years of age or older, or disabled you may apply to receive all ballots by mail for a calendar year. If you do not select any elections in Box 6a, your application will be considered an Annual Application. If you submit an annual application for a ballot by mail, your application may be forwarded to other entities holding elections where you are a qualified voter. This means that you may receive a ballot for those elections in addition to the ballot(s) you requested with this application.

### Submitting Application

1. **Sign and date your application** - If unable to sign, please go to Witness/Address boxes (11 on reverse) and have a person witness your mark. Witness/Assistant instructions follow below.

2. **Deliver to Early Voting Clerk** - You may submit your application via these methods:

**In Person:** Only the applicant may submit their application in person to the Early Voting Clerk until the early voting period begins. However, after the early voting period begins for an election, the applicant may only submit application via mail, common contract carrier, fax, or e-mail.

**By Mail:** You may mail your application via the U.S. Postal Service.

**By Common Contract Carrier:** You may submit via a common or contract carrier which is a bona fide, for profit carrier.

**By Fax:** You may fax your application to the Early Voting Clerk. Please contact your Early Voting Clerk or the Secretary of State's Office for fax numbers.

**By E-Mail:** You may e-mail a signed, scanned image of your application to the Early Voting Clerk. Please contact your Early Voting Clerk or the Secretary of State's Office for e-mail addresses. IF YOU FAX OR E-MAIL YOUR APPLICATION TO THE EARLY VOTING CLERK, YOU MUST ALSO MAIL THE APPLICATION SO THAT THE CLERK RECEIVES IT NO LATER THAN THE FOURTH BUSINESS DAY AFTER THE DAY THE CLERK RECEIVED YOUR FAXED OR EMAILED APPLICATION. If you fax or e-mail your application by the deadline noted below, your application will be considered complete and timely as long as the original is received by the early voting clerk by the fourth business day after it was submitted by fax or e-mail.

### Deadline

Your application must be received by the early voting clerk of the local entity conducting the election not later than the 11th day before election day. If the 11th day is a weekend or holiday, the deadline is the first preceding business day. You may submit an application throughout the calendar year, beginning January 1. Please remember that the application must be received not later than the 11th day before the first election in which you seek to vote by mail.

If you submit an Annual Application for Ballot by Mail within 60 days before an election that takes place in the following calendar year, your application will be valid for any election that takes place in the following calendar year, regardless of the fact that your application was submitted prior to the end of the preceding calendar year. This applies to Annual Applications only and not to a regular application for ballot by mail.

### Witness/Assistant Section

**Witness:** If you are unable to sign your name (due to a physical disability or literacy), the application may be signed at Box #11 for you by a Witness. You must affix your mark to the application in Box #10 or, if you are unable to make a mark, then the Witness must check the appropriate box in 11 indicating the inability to make a mark. The Witness must state his/her name in printed form and indicate his/her relationship to you or, if unrelated, state that fact. The Witness must sign and provide his or her printed name and residence address. Unless the Witness is a close relative of the voter (parent, grandparent, spouse, child or sibling), it is a Class B misdemeanor for a person to witness more than one application for ballot by mail.

**Assistant:** If a person (other than a close relative or person registered to vote at the same address) assists you in completing this application in your presence or mails/faxes/e-mails this application on your behalf, then that person must complete Box #11. The Assistant must sign, provide his or her printed name, and his or her residence address. A person commits a Class A misdemeanor if the person provides assistance without providing the information described above unless a close relative or registered at your address.

If you have further questions or need additional assistance, please contact your Early Voting Clerk or The Secretary of State's office at 1-800-252-8683 or www.sos.state.tx.us.



To: Early Voting Clerk
Perla Lara
PO Box 220/1300 Houston Ave.
McAllen Texas 78505-0220

FROM: Blanca Sanchez
716 S 25 1/2 St E
McAllen, TX. 78501-7706

City Secretary's Office
Received
Date 4-24-19

AFFIX LABEL HERE OR ADDRESS

DO NOT REMOVE PERFORATED TABS. Moisten tab and fold top to bottom to seal.

1005

AW5-16
Prescribed by Secretary of State
Section 86.008(b), 86.0015 Texas Election Code
12/17

Reyna, Maria Idalia
VUID # 1054654124 SMD#4

## NOTICE OF REJECTED APPLICATION FOR BALLOT BY MAIL

I have received and reviewed your application for a ballot by mail. I have determined that your application must be rejected for the following reason(s):

(Check as applicable)

_____ 1.   Your application was received earlier than the 60th day before an election held in January or February of the year following the year the ABBM was submitted.

_____ 2.   Your application was not properly delivered.

__X__ 3.   Your application was received after the deadline to apply for a ballot by mail for the upcoming election.

(Check if appropriate:)

_____ However, since you indicated on the application that it was to be an Annual application for a ballot by mail, the application will be considered valid for other elections held this year and for which the application was submitted before the deadline.

_____ 4.   You indicate you are voting due to expected absence from the county, but the address to which your ballot is to be sent is not an address outside the county. When voting by mail on the grounds of expected absence from the county, the address to which your ballot is to be mailed must be outside the county.

_____ 5.   When voting by mail due to confinement in jail, the address to which your ballot is to be mailed must be that of the jail or a relative. Your application did not indicate either address.

_____ 6.   Your application was not signed.

_____ 7.   The witness who signed your application did not:

_____ (a)   indicate a relationship on your application;

_____ (b)   indicate that you were unable to make your mark in lieu of your signature; or

_____ (c)   provide his or her printed name or residence address.

_____ 8.   Your application did not indicate the reason you are entitled to vote by mail.

_____ 9.   For a primary election, you must indicate your party preference.

(Check if appropriate:)

_____ However, if you have submitted an Annual ABBM, you will receive ballots for other elections held this year other than the Primary or Runoff Election.

_____ 10.   Your residence address of registration was not provided on your application.

_____ 11.   Your application was received after the deadline for receiving an application for a ballot by mail.

The deadline for receiving the application was _____
                                                                              (Date)

(Check if appropriate)

_____ However, since you have requested a ballot for the run-off election, if one is to be held, your application is valid for that election.

_____ 12.   According to the records of the voter registrar, you are not currently registered to vote or your registration, if you have applied, will not be effective on or before election day.

_____ 13.   I could not determine the election for which you were applying for a ballot.

_____ 14.   Your application was initially submitted via fax or email, but an original hardcopy of the application was not received within four business days.

_____ 15.   Other:_____

If you wish to vote, it will be necessary for you to submit another application to me, and that application must be received by _____   *If new application is faxed or emailed, the original hardcopy must be received within four
            (*Date)                              business days.

If you have any questions regarding your application, please contact me at   (956) 681-1020
                                                                                              (Phone Number)

_____
Early Voting Clerk

1006

AWS-16
Prescrito por el Secretario de Estado
Código Electoral de Texas Secs. 86.008(b), 86.0015
12/17

Reyna, Maria Idalia
VUID # 1054654124 SMD#4

## AVISO DE SOLICITUD RECHAZADA PARA RECIBIR UNA BOLETA POR CORREO

Su solicitud para recibir una boleta por correo postal fue recibida y analizada.  Hemos determinado que su solicitud debe ser rechazada por la siguiente razón:

(Marcar las que apliquen)

_____ 1.  Su solicitud fue recibida antes del 60° día antes de una elección celebrada en enero o febrero del año siguiente al año en que se presentó el ABBM ("ABBM" por sus siglas en Ingles).

_____ 2.  La solicitud no fue entregada de manera apropiada.

_X_ 3.  Su solicitud fue recibida después de la fecha límite para aplicar para recibir una boleta por correo para esta elección. (Marque abajo si es apropiado).

_____ Sin embargo, ya que usted indico en la solicitud que su solicitud es una solicitud anual para votar por correo, la solicitud se considerará válida para las otras elecciones que sucedan este año y para las cuales su solicitud fue enviada antes de la fecha límite.

_____ 4.  Usted indico que desea votar por correo por que planea estar ausente del condado pero la dirección que usted proporciono para recibir su boleta no es una dirección fuera del condado.  Cuando usted aplica para votar por correo en base a que estará ausente del condado, la dirección a la cual usted recibirá su boleta **debe** estar ubicada fuera del condado.

_____ 5.  Si usted está encarcelado, para que pueda votar por correo es necesario que su boleta sea enviada directamente a la cárcel o al domicilio de algún familiar.  Su solicitud no indicó ninguna de estas direcciones.

_____ 6.  No firmó su solicitud.

_____ 7.  El testigo que firmó su solicitud no:
_____ (a)  indicó, en la solicitud, qué parentesco o tipo relación existe entre ustedes;
_____ (b)  indicó que además de no poder firmar, usted no puede poner su marca en la solicitud; o
_____ (c)  proporciono su nombre completo en letra de molde y su dirección residencial.

_____ 8.  No indicó la base de elegibilidad por la cual usted tiene derecho a votar por correo.

_____ 9.  Para las elecciones primarias, usted debe indicar su preferencia de partido político. (Marque abajo si es apropiado).

_____ Sin embargo, si usted envió una solicitud anual para votar por correo postal (Annual ABBM, por sus siglas en Ingles), usted recibirá las boletas para todas las demás elecciones oficiadas este año que no sean elecciones primarias o elecciones primarias de desempate.

_____ 10.  No proporciono la dirección residencial bajo la cual usted está registrado/a.

_____ 11.  Su solicitud fue recibida después de la fecha límite para recibir solicitudes para votar por correo postal. La fecha límite fue el _____ de _____, _____.
_____(día)_____(mes)_____(año)

(Marque abajo si es apropiado)
_____ Sin embargo, ya que usted solicito una boleta para la elección de desempate, si una sucede, su solicitud es válida para esa elección.

_____ 12.  Los documentos del registro electoral indican que usted no está inscrito como votante y si ha solicitado dicha inscripción, ésta no entrará en vigor en o antes del Día de la Elección.

_____ 13.  No se pudo determinar las elecciones en las cuales usted desea votar por correo.

_____ 14.  Su solicitud fue inicialmente enviada por fax o correo electrónico, pero una copia impresa original de la solicitud no fue recibida dentro de los cuatro días hábiles.

_____ 15.  Otro:_____

Si usted desea votar por correo, es necesario que envíe otra solicitud a esta oficina y su solicitud debe ser recibida por_____(Fecha).  *Si la nueva solicitud es enviada por fax o por correo electrónico, la copia impresa original debe ser recibida dentro de cuatro días hábiles.

Si tiene una pregunta en cuanto a su solicitud, por favor comuníquese conmigo llamando al (956) 681-1020
(Número de Teléfono)

Secretario/a de Votación Anticipada

1007

DO NOT REMOVE PERFORATED TABS. Moisten here and fold bottom to top to seal.

# Application for Ballot by Mail

Prescribed by the Office of the Secretary of State of Texas
A6.16.12/17

For Official Use Only
Valid & County Election Precinct #:
Statement of Residence, etc.

**1** Last Name (Please print information)
Reyna

First Name
Maria

Middle Initial
Idalia

Suffix (Jr., Sr., III, etc.)

**2** Residence Address. See back of this application for instructions.
2121 S 33rd St.

City
McAllen

State
, TX

ZIP Code
78503

**3** Mail my ballot to: If mailing address differs from residence address, please complete Box #7x.

City | State | ZIP Code

**4** Date of Birth (mm/dd/yyyy) (Optional)
12/10/1946

**5** Reason for Voting by Mail:
☐ 65 years of age or older. **Complete Box #6A.**
☐ Disability. **(Complete Box #6a)**
☐ Expected absence from the county. **(Complete Box #6b and Box #8)**
☐ Confinement in jail. **(Complete Box #8)**
☐ You will receive a ballot for the upcoming person only.

**6a** ONLY Voters 65 Years of Age or Older or Voters with a Disability.
If you are voting because you are 65 years of age or older, select "Annual Application."
If applying once for one election, select appropriate box.

☐ Annual Application.
You must provide one political party to vote in a primary.

Primary Elections.
You must choose one political party to vote in a primary:
☐ Democratic Primary
☐ Republican Primary

☐ Any Resulting Runoff

**6b** ONLY Voters Absent from County or Voters Confined in Jail.
You must provide a ballot for one election, and any resulting runoff.
Please select the appropriate box.

☐ Disability and Other Elections.
You must provide one political party to vote in a primary.

Primary Elections.
You must choose one political party to vote in a primary:
☐ Democratic Primary
☐ Republican Primary

☐ Any Resulting Runoff

☐ Republican Election
☑ May Election
☐ November Election
☐ Other:

**7** If you are requesting this ballot be mailed to a different address (either than residence), indicate where the ballot will be mailed. See reverse for instructions.
☐ Mailing Address as stated on my voter registration certificate.
☐ Nursing home, assisted living facility, long-term care facility
☐ Hospital
☐ Retirement Center
☐ Address of the jail
☐ Relative, relationship ____
☐ Address outside the county (see Box #3)

**8** If you selected "expected absence from the county," see reverse for instructions

☐☐☐☐☐  ☐☐☐☐☐

**9** Date you can begin to receive mail at this address

Date of return to residence address

Voters may submit a completed, signed, and scanned application to the Early Voting Clerk at:
plara@mcallen.net

(early voting clerk's email address)
(956)681-1029
(early voting clerk's fax)

NOTE: If you fax or e-mail this form, please be aware that you must also mail this form to the early voting clerk within four business days. See "Submitting Application" on the back of this form for additional information.

**10** "I certify that the information given in this application is true, and I understand that giving false information in this application is a crime."

SIGN HERE
If applicant is unable to sign or make a mark in the presence of a witness, the witness shall complete Box #11.

X _Maria Idelia Reyna_  Date _X-16-19_

**6b** If someone helped you to complete this form or mailed the form for you, then that person must complete the sections below.

**11** See back for Witness and Assistant definitions.
If applicant is unable to mark Box #10 and you are acting as a Witness to that fact, please check this box and sign below.  ☐
If you assisted the applicant in completing this application in the applicant's presence or e-mailed/faxed the application on behalf of the applicant, please check this box as an Assistant and sign below.  ☐
If you are acting as a Witness and Assistant, please check both boxes. Failure to complete this information as a Class A misdemeanor if signature was witnessed or applicant was assisted in completing the application.

X _____
Signature of Witness/Assistant

Printed Name of Witness/Assistant:

Witness Relationship to Applicant:
(Refer to instructions on back for clarification)

Street Address:

Apt Number (if applicable)

City

State:

ZIP Code

Este formulario está disponible en Español. Para consultar la versión en Español favor de llamar sin cargo al 1.800.252.8683 a la oficina del Secretario de Estado o la Secretaría de Votación por Adelantado.

*City Secretary's Office*
*Received*

Date 4-24-19

DO NOT REMOVE PERFORATED TABS. Moisten tab and fold top to bottom to seal.

FROM:

Maria Reyna
2121 S 33rd St
McAllen, TX. 78503-8321

AFFIX LABEL HERE OR ADDRESS

To: Early Voting Clerk

Perla Lara

McAllen Texas 78505-0220

PO Box 220/1300 Houston Ave.

## Instructions for Application for Ballot by Mail

**Residence Address** - Give full address as shown on your voter registration certificate. If you have moved within the county but not yet changed your voter registration address with the voter registrar, indicate your new residence address.

**Mail Ballot To** - Give full address where you wish to have ballot mailed, if the address is different from your residence address.

**Mailing Ballot to a Different Address** - Your ballot must be mailed to your home where you live or to your mailing address on your voter registration certificate. There are some exceptions that allow you to have your ballot mailed to a different location as specified below.

| Reason for voting by mail | Location to mail ballot |
|---|---|
| 65 or disabled | Nursing home, assisted living/retirement center, relative, hospital |
| In Jail | Address of jail or relative |
| Absent from county | Address located outside of county |

**Expected Absence from County** - If you chose expected absence from county, you must expect to be absent from the county on election day and during the hours of early voting in person or for the remainder of the early voting period after you submit your application. **Your ballot must be mailed to an address outside the county.** Important: Give date you can begin to receive mail at the address given.

**Annual Application** - If you are 65 years of age or older, or disabled you may apply to receive all ballots by mail for a calendar year. If you do not select any elections in Box 6a, your application will be considered an Annual Application. If you submit an annual application for a ballot by mail, your application may be forwarded to other entities holding elections where you are a qualified voter. This means that you may receive a ballot for those elections in addition to the ballot(s) you requested with this application.

### Submitting Application

1. **Sign and date your application** - If unable to sign, please go to Witness/Address boxes (11 on reverse) and have a person witness your mark. Witness/Assistant instructions follow below.

2. **Deliver to Early Voting Clerk** - You may submit your application via these methods:

**In Person:** Only the applicant may submit their application in person to the Early Voting Clerk until the early voting period begins. However, after the early voting period begins for an election, the applicant may only submit their application via mail, common contract carrier, fax, or e-mail.

**By Mail:** You may mail your application via the U.S. Postal Service.

**By Common Contract Carrier:** You may submit via a common contract carrier which is a bona fide, for profit carrier.

**By Fax:** You may fax your application to the Early Voting Clerk. Please contact your Early Voting Clerk or the Secretary of State's Office for fax numbers.

**By E-Mail:** You may e-mail a signed, scanned image of your application to the Early Voting Clerk. Please contact your Early Voting Clerk or the Secretary of State's Office for e-mail addresses.

**IF YOU FAX OR E-MAIL YOUR APPLICATION TO THE EARLY VOTING CLERK, YOU MUST ALSO MAIL THE APPLICATION SO THAT THE CLERK RECEIVES IT NO LATER THAN THE FOURTH BUSINESS DAY AFTER THE DAY THE CLERK RECEIVED YOUR FAXED OR EMAILED APPLICATION.** If you fax or e-mail your application by the deadline noted below, your application will be considered complete and timely as long as the original is received by the early voting clerk by the fourth business day after it was submitted by fax or e-mail.

### Deadline

Your application must be received by the early voting clerk of the local entity conducting the election not later than the 11th day before election day. If the 11th day is a weekend or holiday, the deadline is the first preceding business day. You may submit an application throughout the calendar year, beginning January 1. Please remember that the application must be received not later than the 11th day before the first election in which you seek to vote by mail.

If you submit an Annual Application for Ballot by Mail within 60 days before an election that takes place in the following calendar year, your application will be valid for any election that takes place in the following calendar year, regardless of the fact that your application was submitted prior to the end of the preceding calendar year. This applies to Annual Applications only and not to a regular application for ballot by mail.

### Witness/Assistant Section

**Witness:** If you are unable to sign your name (due to a physical disability or literacy), the application may be signed at Box 11 for you by a Witness. You must affix your mark to the application in Box #10 or, if you are unable to make a mark, then the Witness must check the appropriate box in 11 indicating the inability to make a mark. The Witness must state his/her name in printed form and indicate his/her relationship to you or, if unrelated, state that fact. The Witness must sign and provide his or her printed name and residence address. Unless the Witness is a close relative of the voter (parent, grandparent, spouse, child or sibling), it is a Class B misdemeanor for a person to witness more than one application for ballot by mail.

**Assistant:** If a person (other than a close relative or person registered to vote at the same address) assists you in completing this application in your presence or mails/faxes/e-mails this application on your behalf, then that person must complete Box #11. The Assistant must sign, provide his or her printed name, and his or her residence address. A person commits a Class A misdemeanor if the person provides assistance without providing the information described above unless a close relative or registered at your address.

If you have further questions or need additional assistance, please contact your Early Voting Clerk or The Secretary of State's office at 1-800-252-8683 or www.sos.state.tx.us.

McALLEN TX 785

RECEIVED
APR 24 2019
CITY OF McALLEN
MAIL CENTER

23 APR 2019 PM 1 T

AWS-16
Prescribed by Secretary of State
Section 86.008(b), 86.0015 Texas Election Code
12/17

Morales, Afredo
VUID # 1053647239 SMD#4

## NOTICE OF REJECTED APPLICATION FOR BALLOT BY MAIL

I have received and reviewed your application for a ballot by mail.  I have determined that your application must be rejected for the following reason(s):

(Check as applicable)

_____ 1.   Your application was received earlier than the 60th day before an election held in January or February of the year following the year the ABBM was submitted.

_____ 2.   Your application was not properly delivered.

__X__ 3.   Your application was received after the deadline to apply for a ballot by mail for the upcoming election.

   (Check if appropriate:)

   _____ However, since you indicated on the application that it was to be an Annual application for a ballot by mail, the application will be considered valid for other elections held this year and for which the application was submitted before the deadline.

_____ 4.   You indicate you are voting due to expected absence from the county, but the address to which your ballot is to be sent is not an address outside the county.  When voting by mail on the grounds of expected absence from the county, the address to which your ballot is to be mailed must be outside the county.

_____ 5.   When voting by mail due to confinement in jail, the address to which your ballot is to be mailed must be that of the jail or a relative.  Your application did not indicate either address.

_____ 6.   Your application was not signed.

_____ 7.   The witness who signed your application did not:

   _____ (a)   indicate a relationship on your application;

   _____ (b)   indicate that you were unable to make your mark in lieu of your signature; or

   _____ (c)   provide his or her printed name or residence address.

_____ 8.   Your application did not indicate the reason you are entitled to vote by mail.

_____ 9.   For a primary election, you must indicate your party preference.

   (Check if appropriate:)

   _____ However, if you have submitted an Annual ABBM, you will receive ballots for other elections held this year other than the Primary or Runoff Election.

_____ 10.   Your residence address of registration was not provided on your application.

_____ 11.   Your application was received after the deadline for receiving an application for a ballot by mail.

   The deadline for receiving the application was _____.
   (Date)

   (Check if appropriate)

   _____ However, since you have requested a ballot for the run-off election, if one is to be held, your application is valid for that election.

_____ 12.   According to the records of the voter registrar, you are not currently registered to vote or your registration, if you have applied, will not be effective on or before election day.

_____ 13.   I could not determine the election for which you were applying for a ballot.

_____ 14.   Your application was initially submitted via fax or email, but an original hardcopy of the application was not received within four business days.

_____ 15.   Other:_____

If you wish to vote, it will be necessary for you to submit another application to me, and that application must be received by _____   *If new application is faxed or emailed, the original hardcopy must be received within four
   (*Date)               business days.

If you have any questions regarding your application, please contact me at  (956) 681-1020 .
                                                                           (Phone Number)

                                                    Early Voting Clerk

1010

AW5-16
Prescrito por el Secretario de Estado
Código Electoral de Texas Secs. 86.008(b), 86.0015
12/17

Morales, Alredo
VUID # 1053647239 SMD#4

**AVISO DE SOLICITUD RECHAZADA PARA RECIBIR UNA BOLETA POR CORREO**

Su solicitud para recibir una boleta por correo postal fue recibida y analizada. Hemos determinado que su solicitud debe ser rechazada por la siguiente razón:

(Marcar las que apliquen)

_____ 1.   Su solicitud fue recibida antes del 60° día antes de una elección celebrada en enero o febrero del año siguiente al año en que se presentó el ABBM ("ABBM" por sus siglas en Ingles).

_____ 2.   La solicitud no fue entregada de manera apropiada.

__X__ 3.   Su solicitud fue recibida después de la fecha límite para aplicar para recibir una boleta por correo para esta elección. (Marque abajo si es apropiado).

_____ Sin embargo, ya que usted indico en la solicitud que su solicitud es una solicitud anual para votar por correo, la solicitud se considerará válida para las otras elecciones que sucedan este año y para las cuales su solicitud fue enviada antes de la fecha límite.

_____ 4.   Usted indico que desea votar por correo por que planea estar ausente del condado pero la dirección que usted proporciono para recibir su boleta no es una dirección fuera del condado. Cuando usted aplica para votar por correo en base a que estará ausente del condado, la dirección a la cual usted recibirá su boleta debe estar ubicada fuera del condado.

_____ 5.   Si usted está encarcelado, para que pueda votar por correo es necesario que su boleta sea enviada directamente a la cárcel o al domicilio de algún familiar. Su solicitud no indicó ninguna de estas direcciones.

_____ 6.   No firmó su solicitud.

_____ 7.   El testigo que firmó su solicitud no:
_____ (a)   indicó, en la solicitud, qué parentesco o tipo relación existe entre ustedes;
_____ (b)   indicó que además de no poder firmar, usted no puede poner su marca en la solicitud; o
_____ (c)   proporciono su nombre completo en letra de molde y su dirección residencial.

_____ 8.   No indicó la base de elegibilidad por la cual usted tiene derecho a votar por correo.

_____ 9.   Para las elecciones primarias, usted debe indicar su preferencia de partido político. (Marque abajo si es apropiado).

_____ Sin embargo, si usted envió una solicitud anual para votar por correo postal (Annual ABBM, por sus siglas en Ingles), usted recibirá las boletas para todas las demás elecciones oficiadas este año que no sean elecciones primarias o elecciones primarias de desempate.

_____ 10.  No proporciono la dirección residencial bajo la cual usted está registrado/a.

_____ 11.  Su solicitud fue recibida después de la fecha límite para recibir solicitudes para votar por correo postal. La fecha límite fue el _____ de _____, _____.
                                              (día)      (mes)      (año)

(Marque abajo si es apropiado)
_____ Sin embargo, ya que usted solicito una boleta para la elección de desempate, si una sucede, su solicitud es válida para esa elección.

_____ 12.  Los documentos del registro electoral indican que usted no está inscrito como votante y si ha solicitado dicha inscripción, ésta no entrará en vigor en o antes del Día de la Elección.

_____ 13.  No se pudo determinar las elecciones en las cuales usted desea votar por correo.

_____ 14.  Su solicitud fue inicialmente enviada por fax o correo electrónico, pero una copia impresa original de la solicitud no fue recibida dentro de los cuatro días hábiles.

_____ 15.  Otro: _____

Si usted desea votar por correo, es necesario que envíe otra solicitud a esta oficina y su solicitud debe ser recibida por _____ (Fecha). *Si la nueva solicitud es enviada por fax o por correo electrónico, la copia impresa original debe ser recibida dentro de cuatro días hábiles.

Si tiene una pregunta en cuanto a su solicitud, por favor comuníquese conmigo llamando al (956) 681-1020
(Número de Teléfono)

Secretario/a de Votación Anticipada

# Application for Ballot by Mail

DO NOT REMOVE PERFORATED TABS. Moisten here and fold bottom to top to seal.    DO NOT REMOVE PERFORATED TABS. Moisten here and fold bottom to top to seal.

Received by the Office of the Secretary of State of Texas
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

For Official Use Only
Precinct #, County Election Precinct #, Statement of Residence, etc.

1. Last Name (Please print information)
Morales

First Name
Alfredo

Suffix (Jr., Sr., III, etc.)

Middle Initial

2. Residence Address. See back of this application for instructions.
700 S 25 1/2 St E

City
McAllen

State
, TX

ZIP Code
78501

3. Mail my ballot to: If mailing address differs from residence address, please complete Box # 7a.

City

State

ZIP Code

4. Date of Birth (mm/dd/yyyy) (Optional)
7/22/1933

5. Reason for Voting by Mail:

[X] 65 years of age or older (Complete Box #6a)

[ ] Disability. (Complete Box #6a)
   [ ] Expected absence from the county. (Complete Box #6b and Box #8)
     [ ] You will receive a ballot for the upcoming election only
   [ ] Other
   [ ] You will receive a ballot for the upcoming election only

[ ] Confinement in jail. (Complete Box #6b)

6a. ONLY Voters 65 Years of Age or Older or Voters with a disability:
If applying for one election, select appropriate box.
If applying only for elections in the calendar year, select "Annual Application."

[ ] Annual Application

Primary Elections:
You must declare one political party to vote in a primary.
[ ] Democratic Primary
[ ] Republican Primary
   [ ] Any Resulting Runoff

Uniform and Other Elections:
[X] May Election
[ ] November Election
[ ] Other
   [ ] Any Resulting Runoff

6b. ONLY Voters Absent from County or Voters Confined in Jail:
You may only apply for a ballot by mail for one election, and any resulting runoff.
Please select the appropriate box.

Primary Elections:
You must declare one political party to vote in a primary.
[ ] Democratic Primary
[ ] Republican Primary
   [ ] Any Resulting Runoff

Uniform and Other Elections:
[ ] May Election
[ ] November Election
[ ] Other
   [ ] Any Resulting Runoff

7. If you are requesting this ballot be mailed to a different address (other than residence), indicate where the ballot will be mailed. See reverse for instructions.

[ ] Mailing Address, as listed on my voter registration certificate.
[ ] Nursing home, assisted living facility, or long term care facility
[ ] Hospital
[ ] Retirement Center

[ ] Address of the Jail
[ ] Relative, relationship ____
[ ] Address outside the county (see Box #8)

*Contact Information (Optional)*
Please list phone number and/or email address:
* Used in case our office has questions.

8. If you selected "expected absence from the county," see reverse for instructions.

Date of return to residence address

9. Voters may submit a completed, signed, and scanned application to the Early Voting Clerk at
plara@mcallen.net
(956)681-1029
(early voting clerk's email address)        (early voting clerk's fax)

NOTE: If you fax or e-mail this form, please be aware that you must also mail the form to the early voting clerk within four business days. See "Submitting Application" on the back of this form for additional information.

10. "I certify that the information given in this application is true, and I understand that giving false information in this application is a crime."

X [signature: Alfredo Morales]

11. See back for Witness and Assistant definitions.
If applicant is unable to mark Box #10 and you are acting as a Witness to that fact, please check this box and sign below:

*SIGN HERE*
If applicant is unable to sign or make a mark in the presence of a witness, the witness shall complete Box #11.

If you assisted in completing this application in the applicant's presence or e-mailed/mailed or faxed the application on behalf of the applicant, please check this box as an Assistant and sign below: [ ]
If you are acting as a Witness and Assistant, please check both boxes. Failure to complete this information is a Class A misdemeanor if signature was/witnessed or if applicant was assisted in completing the application.

X
Signature of Witness/Assistant

Printed Name of Witness/Assistant

Apt Number (if applicable)

ZIP Code

City

ZIP Code

Witness' Relationship to Applicant
(Refer to Instructions on back for clarification)

Date [signature/date]

Street Address

State

If someone helped you to complete this form or mails the form for you, then that person must complete the sections below.

Este formulario está disponible en Español. Para conseguir la versión en Español favor de llamar sin cargo al 1.800.252.8683 a la oficina del Secretario de Estado o la Secretaría de Votación, por Adelantado.

## Instructions for Application for Ballot by Mail

**Residence Address** - Give full address as shown on your voter registration certificate. If you have moved within the county but not yet changed your voter registration address with the voter registrar, indicate your new residence address.

**Mail Ballot To** - Give full address where you wish to have ballot mailed, if the address is different from your residence address.

**Mailing Ballot to a Different Address** - Your ballot must be mailed to your home where you live or to your mailing address on your voter registration certificate. There are some exceptions that allow you to have your ballot mailed to a different location as specified below.

| Reason for voting by mail | Location to mail ballot |
|---|---|
| 65 or disabled | Nursing home, assisted living/retirement center, relative, hospital |
| In jail | Address of jail or relative |
| Absent from county | Address located outside of county |

**Expected Absence from County** - If you chose expected absence from county, you must expect to be absent from the county on election day and during the hours of early voting in person or for the remainder of the early voting period after you submit your application. Your ballot must be mailed to an address outside the county. Important: Give date you can begin to receive mail at the address given.

**Annual Application** - If you are 65 years of age or older, or disabled you may apply to receive all ballots by mail for a calendar year. If you do not select any elections in Box 6a, your application will be considered an Annual Application. If you submit an annual application for a ballot by mail, your application may be forwarded to other entities holding elections where you are a qualified voter. This means that you may receive a ballot for those elections in addition to the ballot(s) you requested with this application.

### Submitting Application

**1. Sign and date your application** - If unable to sign, please go to Witness/Address boxes (11 on reverse) and have a person witness your mark. Witness/Assistant instructions follow below.

**2. Deliver to Early Voting Clerk** - You may submit your application via these methods:

**In Person:** Only the applicant may submit their application in person to the Early Voting Clerk until the early voting period begins. However, after the early voting period begins for an election, the applicant may only submit their application via mail, common contract carrier, fax, or e-mail.

**By Mail:** You may mail your application via the U.S. Postal Service.

**By Common Contract Carrier:** You may submit via a common or contract carrier which is a bona fide, for profit carrier.

**By Fax:** You may fax your application to the Early Voting Clerk. Please contact your Early Voting Clerk or the Secretary of State's Office for fax numbers.

**By E-Mail:** You may e-mail a signed, scanned image of your application to the Early Voting Clerk. Please contact your Early Voting Clerk or the Secretary of State's Office for e-mail addresses.

**IF YOU FAX OR E-MAIL YOUR APPLICATION TO THE EARLY VOTING CLERK, YOU MUST ALSO MAIL THE APPLICATION SO THAT THE CLERK RECEIVES IT NO LATER THAN THE FOURTH BUSINESS DAY AFTER THE DAY THE CLERK RECEIVED YOUR FAXED OR EMAILED APPLICATION.** If you fax or e-mail your application by the deadline noted below, your application will be considered complete and timely as long as the original is received by the early voting clerk by the fourth business day after it was submitted by fax or e-mail.

### Deadline

Your application must be received by the early voting clerk of the local entity conducting the election not later than the 11th day before election day. If the 11th day is a weekend or holiday, the deadline is the first preceding business day. You may submit an application throughout the calendar year beginning January 1. Please remember that the application must be received not later than the 11th day before the first election in which you seek to vote by mail.

If you submit an Annual Application for Ballot by Mail within 60 days before an election that takes place in the following calendar year, your application will be valid for any election that takes place in the following calendar year, regardless of the fact that your application was submitted prior to the end of the preceding calendar year. This applies to Annual Applications only and not to a regular application for ballot by mail.

### Witness/Assistant Section

**Witness:** If you are unable to sign your name (due to a physical disability or illiteracy), the application may be signed at Box #11 for you by a Witness. You must affix your mark to the application in Box #10 or, if you are unable to make a mark, then the Witness must check the appropriate box in 11 indicating the inability to make a mark. The Witness must state his/her name (in printed form and indicate his/her relationship to you or, if unrelated, state that fact. The Witness must sign and provide his or her printed name and residence address. Unless the Witness is a close relative of the voter (parent, grandparent, spouse, child or sibling), it is a Class B misdemeanor for a person to witness more than one application for ballot by mail.

**Assistant:** If a person (other than a close relative or person registered to vote at the same address) assists you in completing this application in your presence or mails/faxes/e-mails this application on your behalf, then that person must complete Box #11. The Assistant must sign, provide his or her printed name, and his or her residence address. A person commits a Class A misdemeanor if the person provides assistance without providing the information described above unless a close relative or registered at your address.

If you have further questions or need additional assistance, please contact your Early Voting Clerk or The Secretary of State's office at 1-800-252-8683 or www.sos.state.tx.us.



City Secretary's Office
Received
Date 4-24-19

**FROM:**
Alfredo Morales
700 S 25 1/2 St E
McAllen, TX. 78501-7706

**To: Early Voting Clerk**
Perla Lara
PO Box 220/1300 Houston Ave.
McAllen Texas 78505-0220

AFFIX LABEL HERE OR ADDRESS

DO NOT REMOVE PERFORATED TABS. Moisten tab and fold top to bottom to seal.

City Secretary's Office
Received
Date 4/24/19

CITY OF McALLEN
MAIL CENTER
RECEIVED
APR 24 2019

USA FOREVER

AWS-16
Prescribed by Secretary of State
Section 86.008(b), 86.0015 Texas Election Code
12/17

De Pagter, Maria A.
VUID # 2132622614 SMD#1

## NOTICE OF REJECTED APPLICATION FOR BALLOT BY MAIL

I have received and reviewed your application for a ballot by mail. I have determined that your application must be rejected for the following reason(s):

(Check as applicable)

\_\_\_\_\_ 1.  Your application was received earlier than the 60th day before an election held in January or February of the year following the year the ABBM was submitted.

\_\_\_\_\_ 2.  Your application was not properly delivered.

\_\_X\_\_ 3.  Your application was received after the deadline to apply for a ballot by mail for the upcoming election.

      (Check if appropriate:)

      \_\_\_\_\_ However, since you indicated on the application that it was to be an Annual application for a ballot by mail, the application will be considered valid for other elections held this year and for which the application was submitted before the deadline.

\_\_\_\_\_ 4.  You indicate you are voting due to expected absence from the county, but the address to which your ballot is to be sent is not an address outside the county. When voting by mail on the grounds of expected absence from the county, the address to which your ballot is to be mailed <u>must</u> be outside the county.

\_\_\_\_\_ 5.  When voting by mail due to confinement in jail, the address to which your ballot is to be mailed must be that of the jail or a relative. Your application did not indicate either address.

\_\_\_\_\_ 6.  Your application was not signed.

\_\_\_\_\_ 7.  The witness who signed your application did not:

      \_\_\_\_\_ (a)    indicate a relationship on your application;

      \_\_\_\_\_ (b)    indicate that you were unable to make your mark in lieu of your signature; or

      \_\_\_\_\_ (c)    provide his or her printed name or residence address.

\_\_\_\_\_ 8.  Your application did not indicate the reason you are entitled to vote by mail.

\_\_\_\_\_ 9.  For a primary election, you must indicate your party preference.

      (Check if appropriate:)

      \_\_\_\_\_ However, if you have submitted an Annual ABBM, you will receive ballots for other elections held this year <u>other</u> than the Primary or Runoff Election.

\_\_\_\_\_ 10.  Your residence address of registration was not provided on your application.

\_\_\_\_\_ 11.  Your application was received after the deadline for receiving an application for a ballot by mail. The deadline for receiving the application was _____.
                                              (Date)

      (Check if appropriate)

      \_\_\_\_\_ However, since you have requested a ballot for the run-off election, if one is to be held, your application is valid for that election.

\_\_\_\_\_ 12.  According to the records of the voter registrar, you are not currently registered to vote or your registration, if you have applied, will not be effective on or before election day.

\_\_\_\_\_ 13.  I could not determine the election for which you were applying for a ballot.

\_\_\_\_\_ 14.  Your application was initially submitted via fax or email, but an original hardcopy of the application was not received within four business days.

\_\_\_\_\_ 15.  Other:_____

If you wish to vote, it will be necessary for you to submit another application to me, and that application must be received by _____ *If new application is faxed or emailed, the original hardcopy must be received within four
      (*Date)                 business days.

If you have any questions regarding your application, please contact me at   (956) 681-1020  .
                                                       (Phone Number)

                                                  Early Voting Clerk

AW5-16
Prescrito por el Secretario de Estado
Código Electoral de Texas Secs. 86.008(b), 86.0015
12/17

De Pagter, Maria A
VUID # 2132622614 SMD#1

## AVISO DE SOLICITUD RECHAZADA PARA RECIBIR UNA BOLETA POR CORREO

Su solicitud para recibir una boleta por correo postal fue recibida y analizada.  Hemos determinado que su solicitud debe ser rechazada por la siguiente razón:

(Marcar las que apliquen)

_____ 1.  Su solicitud fue recibida antes del 60º día antes de una elección celebrada en enero o febrero del año siguiente al año en que se presentó el ABBM ("ABBM" por sus siglas en Ingles).

_____ 2.  La solicitud no fue entregada de manera apropiada.

__X__ 3.  Su solicitud fue recibida después de la fecha límite para aplicar para recibir una boleta por correo para esta elección. (Marque abajo si es apropiado).

_____ Sin embargo, ya que usted indico en la solicitud que su solicitud es una solicitud anual para votar por correo, la solicitud se considerará válida para las otras elecciones que sucedan este año y para las cuales su solicitud fue enviada antes de la fecha límite.

_____ 4.  Usted indico que desea votar por correo por que planea estar ausente del condado pero la dirección que usted proporciono para recibir su boleta no es una dirección fuera del condado.  Cuando usted aplica para votar por correo en base a que estará ausente del condado, la dirección a la cual usted recibirá su boleta debe estar ubicada fuera del condado.

_____ 5.  Si usted está encarcelado, para que pueda votar por correo es necesario que su boleta sea enviada directamente a la cárcel o al domicilio de algún familiar.  Su solicitud no indicó ninguna de estas direcciones.

_____ 6.  No firmó su solicitud.

_____ 7.  El testigo que firmó su solicitud no:
_____ (a)   indicó, en la solicitud, qué parentesco o tipo relación existe entre ustedes;
_____ (b)   indicó que además de no poder firmar, usted no puede poner su marca en la solicitud; o
_____ (c)   proporciono su nombre completo en letra de molde y su dirección residencial.

_____ 8.  No indicó la base de elegibilidad por la cual usted tiene derecho a votar por correo.

_____ 9.  Para las elecciones primarias, usted debe indicar su preferencia de partido político. (Marque abajo si es apropiado).

_____ Sin embargo, si usted envió una solicitud anual para votar por correo postal (Annual ABBM, por sus siglas en Ingles), usted recibirá las boletas para todas las demás elecciones oficiadas este año que no sean elecciones primarias o elecciones primarias de desempate.

_____ 10.  No proporciono la dirección residencial bajo la cual usted está registrado/a.

_____ 11.  Su solicitud fue recibida después de la fecha límite para recibir solicitudes para votar por correo postal. La fecha límite fue el _____ de _____, _____
(día)       (mes)       (año)

(Marque abajo si es apropiado)
_____ Sin embargo, ya que usted solicito una boleta para la elección de desempate, si una sucede, su solicitud es válida para esa elección.

_____ 12.  Los documentos del registro electoral indican que usted no está inscrito como votante y si ha solicitado dicha inscripción, ésta no entrará en vigor en o antes del Día de la Elección.

_____ 13.  No se pudo determinar las elecciones en las cuales usted desea votar por correo.

_____ 14.  Su solicitud fue inicialmente enviada por fax o correo electrónico, pero una copia impresa original de la solicitud no fue recibida dentro de los cuatro días hábiles.

_____ 15.  Otro: _____

Si usted desea votar por correo, es necesario que envíe otra solicitud a esta oficina y su solicitud debe ser recibida por _____ (Fecha).  *Si la nueva solicitud es enviada por fax o por correo electrónico, la copia impresa original debe ser recibida dentro de cuatro días hábiles.

Si tiene una pregunta en cuanto a su solicitud, por favor comuníquese conmigo llamando al  (956) 681-1020
(Número de Teléfono)

Secretario/a de Votación Anticipada

DO NOT REMOVE PERFORATED TABS. Moisten here and fold bottom to top to seal.

DO NOT REMOVE PERFORATED TABS. Moisten here and fold bottom to top to seal.

# Application for Ballot by Mail

Prescribed by the Office of the Secretary of State of Texas
A5-15 12/17

**For Official Use Only**
VUID #, County Election Precinct #,
Statement of Residence, etc.

ПISЛОЛΛЛИΤ

**1** Last Name (Please print information)
*De Pagter*

First Name
*Maria*

Middle Initial
*A*

Suffix (Jr., Sr., III, etc)
*Mrs*

**2** Residence Address: See back of this application for instructions.
*4704 N 6 St*

City
*McAllen*

, TX

ZIP Code
*78504*

**3** Mail my ballot to: If mailing address differs from residence address, please complete Box #7.

City

State

ZIP Code

**4** Date of Birth (mm/dd/yyyy) (Optional)
`0 4 / 0 5 / 1 9 3 3`

**5** Reason for Voting by Mail:
- ☑ 65 years of age or older. (Complete Box #6a)
- ☑ Disability. (Complete Box #6a)
- ☐ Expected absence from the county. (Complete Box #6b and Box #8)
- ☐ You will receive a ballot for the upcoming election only.
- ☐ Confinement in jail. (Complete Box #6b)
- ☐ You will receive a ballot for the upcoming election only.

**6a** ONLY Voters 65 Years of Age or Older or Voters with a Disability:
If applying for one election, select appropriate box.
If applying on/or for elections in the calendar year, select "Annual Application."

☐ Annual Application

Uniform and Other Elections:
- ☐ May Election
- ☑ November Election
- ☐ Other _____

Primary Elections:
You must declare one political party to vote in a primary.
- ☑ Democratic Primary
- ☐ Republican Primary

☐ Any Resulting Runoff

**7** If you are requesting this ballot be mailed to a different address (other than residence), indicate where the ballot will be mailed. See reverse for instructions.
- ☐ Mailing Address as listed on my voter registration certificate
- ☐ Nursing home, assisted living facility, or long term care facility
- ☐ Hospital
- ☐ Retirement Center
- ☐ Address of the Jail
- ☐ Relative, relationship _____
- ☐ Address outside the county (see Box #9)

**Contact Information (Optional)***
Please list phone number and/or email address:
* Used in case our office has questions.

*piara@mcallen.net*

**8** If you selected "expected absence from the county," see reverse for instructions

Date you can begin to receive mail at this address

Date of return to residence address

**9** Voters may submit a completed, signed, and scanned application to the Early Voting Clerk at:
*piara@mcallen.net*
(early-voting clerk's e-mail address)

**(956)681-1029**
(early voting clerk's fax)

NOTE: If you fax or e-mail this form, please be aware that you must also mail the form to the early voting clerk within four business days. See "Submitting Application" on the back of this form for additional information.

**10** "I certify that the information given in this application is true, and I understand that giving false information in this application is a crime."

➤ SIGN HERE
If applicant is unable to sign or make a mark in the presence of a witness, the witness shall complete Box #11.

X *Maria Alicia dePagter*   Date *4-25-19*

**6b** ONLY Voters Absent from County or Voters Confined in Jail:
You may only apply for a ballot by mail for one election, and any resulting runoff.
Please select the appropriate box.

Uniform and Other Elections:
- ☐ May Election
- ☐ November Election
- ☐ Other _____

Primary Elections:
You must declare one political party to vote in a primary.
- ☐ Democratic Primary
- ☐ Republican Primary

☐ Any Resulting Runoff

**11** See back for Witness and Assistant definitions.
If you are unable to mark #10 and you are acting as a Witness to that fact, please check this box and sign below. ☐

If you assisted the applicant in completing this application on behalf of the applicant, please check this box as an Assistant and sign below.

If you are acting as Witness and Assistant, please check both boxes. Failure to complete this application is a Class A misdemeanor if signature was witnessed or applicant was assisted in completing the application.

X _____
Signature of Witness/Assistant

X _____
Printed Name of Witness/Assistant

If someone helped you to complete this form or mails the form for you, then that person must complete the sections below.

Witness' Relationship to Applicant
(Refer to instructions on back for clarification)

1016

# structions for Application for Ballot by Mail

**ddress** - Give full address as shown on your voter registration certificate. If you within the county but not yet changed your voter registration address with the voter ate your new residence address.

**b** - Give full address where you wish to have ballot mailed, if the address is different dence address.

**t to a Different Address** - Your ballot must be mailed to your home where you live ling address on your voter registration certificate. There are some exceptions that ave your ballot mailed to a different location as specified below.

| n for voting by mail | Location to mail ballot |
|---|---|
| sabled | Nursing home, assisted living/retirement center, relative, hospital |
| | Address of jail or relative |
| from county | Address located outside of county |

**ence from County** - If you chose expected absence from county, you must expect rom the county on election day and during the hours of early voting in person or der of the early voting period after you submit your application. **Your ballot must an address outside the county.** Important: Give date you can begin to receive dress given.

**cation** - If you are 65 years of age or older, or disabled you may apply to receive all l for a calendar year. If you do not select any elections in Box 6a, your application ered an Annual Application. If you submit an annual application for a ballot by mail, on may be forwarded to other entities holding elections where you are a qualified eans that you may receive a ballot for those elections in addition to the ballot(s) with this application.

## ng Application

**ate your application** - If unable to sign, please go to Witness/Address boxes (11 id have a person witness your mark. Witness/Assistant instructions follow below.

**Early Voting Clerk** - You may submit your application via these methods:

ly the applicant may submit their application in person to the Early Voting Clerk voting period begins. However, after the early voting period begins for an election, nay only submit their application via mail, common contract carrier, fax, or e-mail.

nay mail your application via the U.S. Postal Service.

**Contract Carrier:** You may submit via a common or contract carrier which is a bona carrier.

nay fax your application to the Early Voting Clerk. Please contact your Early Voting Secretary of State's Office for fax numbers.

u may e-mail a signed, scanned image of your application to the Early Voting Clerk. t your Early Voting Clerk or the Secretary of State's Office for e-mail addresses.

**OR E-MAIL YOUR APPLICATION TO THE EARLY VOTING CLERK, YOU MUST THE APPLICATION SO THAT THE CLERK RECEIVES IT NO LATER THAN I BUSINESS DAY AFTER THE DAY THE CLERK RECEIVED YOUR FAXED OR PLICATION. If you fax or e-mail your application by the deadline noted below, ion will be considered complete and timely as long as the original is received voting clerk by the fourth business day after it was submitted by fax or e-mail.**

on must be received by the early voting clerk of the local entity conducting the iter than the 11th day before election day. If the 11th day is a weekend or holiday, s the first preceding business day. You may submit an application throughout the ; beginning January 1. Please remember that the application must be received not 11th day before the first election in which you seek to vote by mail.

an Annual Application for Ballot by Mail within 60 days before an election that takes llowing calendar year, your application will be valid for any election that takes place ng calendar year, regardless of the fact that your application was submitted prior the preceding calendar year. This applies to Annual Applications only and not to a ation for ballot by mail.

## Assistant Section

ou are unable to sign your name (due to a physical disability or illiteracy), the ay be signed at Box #11 for you by a Witness. You must affix your mark to the Box #10 or, if you are unable to make a mark, then the Witness must check the ox in 11 indicating the inability to make a mark. The Witness must state his/her ted form and indicate his/her relationship to you or, if unrelated, state that fact. must sign and provide his or her printed name and residence address. Unless the lose relative of the voter (parent, grandparent, spouse, child or sibling), it is a Class nor for a person to witness more than one application for ballot by mail.

a person (other than a close relative or person registered to vote at the same ists you in completing this application in your presence or mails/faxes/e-mails this n your behalf, then that person must complete Box #11. The Assistant must sign, r her printed name, and his or her residence address. A person commits a Class nor if the person provides assistance without providing the information described a close relative or registered at your address.

further questions or need additional assistance, please contact oting Clerk or The Secretary of State's office at 1-800-252-8683 state tx us.



TO: EARLY VOTING CLERK
P.O. Box 220/1300 Houston Ave
McAllen     Texas     78505-0220

Peña Lara

FROM:

MaryJanes...
...
McAllen, TX 78504

City Secretary's Office
Received
Date 4/23/19

City Secretary's Office
Received
Date 4-27-19

AW5-16
Prescribed by Secretary of State
Section 86.008(b), 86.0015 Texas Election Code
12/17

DePagter, Allen E.
VUID # 1156446563 SMD#1

## NOTICE OF REJECTED APPLICATION FOR BALLOT BY MAIL

I have received and reviewed your application for a ballot by mail.  I have determined that your application must be rejected for the following reason(s):

(Check as applicable)

_____ 1.   Your application was received earlier than the 60th day before an election held in January or February of the year following the year the ABBM was submitted.

_____ 2.   Your application was not properly delivered.

__X__ 3.   Your application was received after the deadline to apply for a ballot by mail for the upcoming election.

(Check if appropriate:)

__√__ However, since you indicated on the application that it was to be an Annual application for a ballot by mail, the application will be considered valid for other elections held this year and for which the application was submitted before the deadline.

_____ 4.   You indicate you are voting due to expected absence from the county, but the address to which your ballot is to be sent is not an address outside the county.  When voting by mail on the grounds of expected absence from the county, the address to which your ballot is to be mailed must be outside the county.

_____ 5.   When voting by mail due to confinement in jail, the address to which your ballot is to be mailed must be that of the jail or a relative.  Your application did not indicate either address.

_____ 6.   Your application was not signed.

_____ 7.   The witness who signed your application did not:

_____ (a)   indicate a relationship on your application;

_____ (b)   indicate that you were unable to make your mark in lieu of your signature; or

_____ (c)   provide his or her printed name or residence address.

_____ 8.   Your application did not indicate the reason you are entitled to vote by mail.

_____ 9.   For a primary election, you must indicate your party preference.

(Check if appropriate:)

_____ However, if you have submitted an Annual ABBM, you will receive ballots for other elections held this year other than the Primary or Runoff Election.

_____ 10.   Your residence address of registration was not provided on your application.

_____ 11.   Your application was received after the deadline for receiving an application for a ballot by mail.

The deadline for receiving the application was _____.
                                                                            (Date)

(Check if appropriate)

_____ However, since you have requested a ballot for the run-off election, if one is to be held, your application is valid for that election.

_____ 12.   According to the records of the voter registrar, you are not currently registered to vote or your registration, if you have applied, will not be effective on or before election day.

_____ 13.   I could not determine the election for which you were applying for a ballot.

_____ 14.   Your application was initially submitted via fax or email, but an original hardcopy of the application was not received within four business days.

_____ 15.   Other:_____

If you wish to vote, it will be necessary for you to submit another application to me, and that application must be received by _____ *If new application is faxed or emailed, the original hardcopy must be received within four
        (*Date)                                    business days.

If you have any questions regarding your application, please contact me at (956) 681-1020 .
                                                                                                    (Phone Number)

_____
Early Voting Clerk

1018

AW5-16
Prescrito por el Secretario de Estado
Código Electoral de Texas Secs. 86.008(b), 86.0015
12/17

DePagter, Allen E.
VUID # 1156446563 SMD#1

### AVISO DE SOLICITUD RECHAZADA PARA RECIBIR UNA BOLETA POR CORREO

Su solicitud para recibir una boleta por correo postal fue recibida y analizada. Hemos determinado que su solicitud debe ser rechazada por la siguiente razón:

(Marcar las que apliquen)

_____ 1.  Su solicitud fue recibida antes del 60° día antes de una elección celebrada en enero o febrero del año siguiente al año en que se presentó el ABBM ("ABBM" por sus siglas en Ingles).

___2___ 2.  La solicitud no fue entregada de manera apropiada.

__X__ 3.  Su solicitud fue recibida después de la fecha límite para aplicar para recibir una boleta por correo para esta elección. (Marque abajo si es apropiado).

   ____√____ Sin embargo, ya que usted indico en la solicitud que su solicitud es una solicitud anual para votar por correo, la solicitud se considerará válida para las otras elecciones que sucedan este año y para las cuales su solicitud fue enviada antes de la fecha límite.

_____ 4.  Usted indicó que desea votar por correo por que planea estar ausente del condado pero la dirección que usted proporciono para recibir su boleta no es una dirección fuera del condado. Cuando usted aplica para votar por correo en base a que estará ausente del condado, la dirección a la cual usted recibirá su boleta <u>debe</u> estar ubicada fuera del condado.

_____ 5.  Si usted está encarcelado, para que pueda votar por correo es necesario que su boleta sea enviada directamente a la cárcel o al domicilio de algún familiar. Su solicitud no indicó ninguna de estas direcciones.

_____ 6.  No firmó su solicitud.

_____ 7.  El testigo que firmó su solicitud no:
   _____ (a)   indicó, en la solicitud, qué parentesco o tipo relación existe entre ustedes;
   _____ (b)   indicó que además de no poder firmar, usted no puede poner su marca en la solicitud; o
   _____ (c)   proporciono su nombre completo en letra de molde y su dirección residencial.

_____ 8.  No indicó la base de elegibilidad por la cual usted tiene derecho a votar por correo.

_____ 9.  Para las elecciones primarias, usted debe indicar su preferencia de partido político. (Marque abajo si es apropiado).

   _____ Sin embargo, si usted envió una solicitud anual para votar por correo postal (Annual ABBM, por sus siglas en Ingles) usted recibirá las boletas para todas las demás elecciones oficiadas este año <u>que no sean</u> elecciones primarias o elecciones primarias de desempate.

_____ 10.  No proporciono la dirección residencial bajo la cual usted está registrado/a.

_____ 11.  Su solicitud fue recibida después de la fecha límite para recibir solicitudes para votar por correo postal. La fecha límite fue el ____ de _____, _____.
   (día)      (mes)      (año)

   (Marque abajo si es apropiado)
   _____ Sin embargo, ya que usted solicito una boleta para la elección de desempate, si una sucede, su solicitud es válida para esa elección.

_____ 12.  Los documentos del registro electoral indican que usted no está inscrito como votante y si ha solicitado dicha inscripción, ésta no entrará en vigor en o antes del Día de la Elección.

_____ 13.  No se pudo determinar las elecciones en las cuales usted desea votar por correo.

_____ 14.  Su solicitud fue inicialmente enviada por fax o correo electrónico, pero una copia impresa original de la solicitud no fue recibida dentro de los cuatro días hábiles.

_____ 15.  Otro:_____

Si usted desea votar por correo, es necesario que envíe otra solicitud a esta oficina y su solicitud debe ser recibida por_____(Fecha). *Si la nueva solicitud es enviada por fax o por correo electrónico, la copia impresa original debe ser recibida dentro de cuatro días hábiles.

Si tiene una pregunta en cuanto a su solicitud, por favor comuníquese conmigo llamando al   (956) 681-1020
   (Número de Teléfono)

_____
Secretario/a de Votación Anticipada

# Application for Ballot by Mail

Prescribed by the Office of the Secretary of State
AS-15 12/17

VUID #, County Election Precinct #,
Statement of Residence, etc.

115044 0305

**1** Last Name (Please print information)

De Pagter

Suffix (Jr., Sr., III, etc)

Mr.

First Name

Allen

Middle Initial

E

**2** Residence Address: See back of this application for instructions.

4704 N 6 St

City

McAllen

, TX

ZIP Code

78504

**3** Mail my ballot to: If mailing address differs from residence address, please complete Box # 7.

City

State

ZIP Code

**4** Date of Birth (mm/dd/yyyy) (Optional)

1 2 / 2 4 / 1 9 3 0

**5** Reason for Voting by Mail:

☒ 65 years of age or older. **(Complete Box #6a)**

☐ Disability. **(Complete Box #6a)**

☐ Expected absence from the county. **(Complete Box #6b and #9)**

☐ You will receive a ballot for the upcoming election **only**

☐ Confinement in jail. **(Complete Box #6b)**

☐ You will receive a ballot for the upcoming election **only**

**Contact Information (Optional)**
Please list phone number and/or email address:
* Used in case our office has questions.

**7** If you are requesting this ballot be mailed to a different address (other than residence), indicate where the ballot will be mailed. See reverse for instructions.

☐ Mailing Address as listed on my voter registration certificate

☐ Nursing home, assisted living facility, or long term care facility

☐ Hospital

☐ Retirement Center

☐ Address of the Jail

☐ Relative; relationship _____

☐ Address outside the county (see Box #8)

**6a**
If applying for one election, select appropriate box.
If applying once for elections in the calendar year, select "Annual Application."

ONLY Voters 65 Years of Age or Older or Voters with a Disability:

☒ Annual Application

**8** If you selected "expected absence from the county," see reverse for instructions

Date you can begin to receive mail at this address

[___][___][___]  —  [___][___][___][___]

Date of return to residence address

[___][___][___]  —  [___][___][___][___]

Uniform and Other Elections:

☐ May Election

☐ November Election

☐ Other _____

**Primary Elections:**
You must declare one political party to vote in a primary:

☐ Democratic Primary

☐ Republican Primary

☐ Any Resulting Runoff

**9** Voters may submit a completed, signed, and scanned application to the Early Voting Clerk at:

**plar@mcallen.net**
(early voting clerk's e-mail address)

**(956) 681-1029**
(early voting clerk's fax)

NOTE: If you fax or e-mail this form, please be aware that you must also mail the form to the early voting clerk within four business days. See "Submitting Application" on the back of this form for additional information.

**6b**
You may only apply for a ballot by mail for one election, and any resulting runoff.
Please select the appropriate box.

ONLY Voters Absent from County or Voters Confined in Jail:

Uniform and Other Elections:

☐ May Election

☒ November Election

☐ Other _____

**Primary Elections:**
You must declare one political party to vote in a primary:

☐ Democratic Primary

☒ Republican Primary

☐ Any Resulting Runoff

**10**

**SIGN HERE**
If applicant is unable to sign or make a mark in the presence of a witness, the witness shall complete Box #11.

X Allen E DePagter

**"I certify that the information given in this application is true, and I understand that giving false information in this application is a crime."**

Date 4-25-19

**11** See back for Witness and Assistant definitions.

If applicant is unable to mark Box #10 and you are acting as a Witness to that fact, please check this box and sign below. ☐

If you assisted the applicant in completing this application in the applicant's presence or e-mailed/mailed or faxed the application on behalf of the applicant, please check this box as an Assistant and sign below. ☐

* If you are acting as Witness **and** Assistant, please check **both boxes.** Failure to complete this information is a Class A misdemeanor if signature was witnessed or applicant was assisted in completing the application.

X _____
Signature of Witness/Assistant

_____
Printed Name of Witness/Assistant

_____
Witness' Relationship to Applicant
(Refer to Instructions on back for clarification)

Street Address

Apt Number (if applicable)

City

State

ZIP Code

**If someone helped you to complete this form or mails the form for you, then that person must complete the sections below.**

Este formulario está disponible en Español. Para conseguir la versión en Español favor de llamar sin cargo al 1.800.252.8683 a la oficina del Secretario de Estado o la Secretaría de Votación por Adelantado.

1020

AWS-16
Prescribed by Secretary of State
Section 86.008(b), 86.0015 Texas Election Code
12/17

Almanza, Jovita Garza
VUID # 1054213929 SMD#4

## NOTICE OF REJECTED APPLICATION FOR BALLOT BY MAIL

I have received and reviewed your application for a ballot by mail. I have determined that your application must be rejected for the following reason(s):

(Check as applicable)

_____ 1.  Your application was received earlier than the 60th day before an election held in January or February of the year following the year the ABBM was submitted.

_____ 2.  Your application was not properly delivered.

__X__ 3.  Your application was received after the deadline to apply for a ballot by mail for the upcoming election.

(Check if appropriate:)

_____ However, since you indicated on the application that it was to be an Annual application for a ballot by mail, the application will be considered valid for other elections held this year and for which the application was submitted before the deadline.

_____ 4.  You indicate you are voting due to expected absence from the county, but the address to which your ballot is to be sent is not an address outside the county. When voting by mail on the grounds of expected absence from the county, the address to which your ballot is to be mailed must be outside the county.

_____ 5.  When voting by mail due to confinement in jail, the address to which your ballot is to be mailed must be that of the jail or a relative. Your application did not indicate either address.

_____ 6.  Your application was not signed.

_____ 7.  The witness who signed your application did not:

_____ (a)  indicate a relationship on your application;

_____ (b)  indicate that you were unable to make your mark in lieu of your signature; or

_____ (c)  provide his or her printed name or residence address.

_____ 8.  Your application did not indicate the reason you are entitled to vote by mail.

_____ 9.  For a primary election, you must indicate your party preference.

(Check if appropriate:)

_____ However, if you have submitted an Annual ABBM, you will receive ballots for other elections held this year other than the Primary or Runoff Election.

_____ 10.  Your residence address of registration was not provided on your application.

_____ 11.  Your application was received after the deadline for receiving an application for a ballot by mail.

The deadline for receiving the application was _____
(Date)

(Check if appropriate)

_____ However, since you have requested a ballot for the run-off election, if one is to be held, your application is valid for that election.

_____ 12.  According to the records of the voter registrar, you are not currently registered to vote or your registration, if you have applied, will not be effective on or before election day.

_____ 13.  I could not determine the election for which you were applying for a ballot.

_____ 14.  Your application was initially submitted via fax or email, but an original hardcopy of the application was not received within four business days.

_____ 15.  Other:_____

If you wish to vote, it will be necessary for you to submit another application to me, and that application must be received by _____ *If new application is faxed or emailed, the original hardcopy must be received within four
(*Date)                                    business days.

If you have any questions regarding your application, please contact me at  (956) 681-1020 .
(Phone Number)

_____
Early Voting Clerk

1022

AWS-16
Prescrito por el Secretario de Estado
Código Electoral de Texas Secs. 86.008(b), 86.0015
12/17

Almanza, Jovita Garza
VUID # 1054213929 SMD#4

## AVISO DE SOLICITUD RECHAZADA PARA RECIBIR UNA BOLETA POR CORREO

Su solicitud para recibir una boleta por correo postal fue recibida y analizada. Hemos determinado que su solicitud debe ser rechazada por la siguiente razón:

(Marcar las que apliquen)

_____1.     Su solicitud fue recibida antes del 60° día antes de una elección celebrada en enero o febrero del año siguiente al año en que se presentó el ABBM ("ABBM" por sus siglas en Ingles).

_____2.     La solicitud no fue entregada de manera apropiada.

_X_3.     Su solicitud fue recibida después de la fecha límite para aplicar para recibir una boleta por correo para esta elección. (Marque abajo si es apropiado).

_____ Sin embargo, ya que usted indico en la solicitud que su solicitud es una solicitud anual para votar por correo, la solicitud se considerará válida para las otras elecciones que sucedan este año y para las cuales su solicitud fue enviada antes de la fecha límite.

_____4.     Usted indico que desea votar por correo por que planea estar ausente del condado pero la dirección que usted proporciono para recibir su boleta no es una dirección fuera del condado. Cuando usted aplica para votar por correo en base a que estará ausente del condado, la dirección a la cual usted recibirá su boleta <u>debe</u> estar ubicada fuera del condado.

_____5.     Si usted está encarcelado, para que pueda votar por correo es necesario que su boleta sea enviada directamente a la cárcel o al domicilio de algún familiar. Su solicitud no indicó ninguna de estas direcciones.

_____6.     No firmó su solicitud.

_____7.     El testigo que firmó su solicitud no:
_____(a)     indicó, en la solicitud, qué parentesco o tipo relación existe entre ustedes;
_____(b)     indicó que además de no poder firmar, usted no puede poner su marca en la solicitud; o
_____(c)     proporciono su nombre completo en letra de molde y su dirección residencial.

_____8.     No indicó la base de elegibilidad por la cual usted tiene derecho a votar por correo.

_____9.     Para las elecciones primarias, usted debe indicar su preferencia de partido político. (Marque abajo si es apropiado).

_____ Sin embargo, si usted envió una solicitud anual para votar por correo postal (Annual ABBM, por sus siglas en Ingles), usted recibirá las boletas para todas las demás elecciones oficiadas este año <u>que no sean</u> elecciones primarias o elecciones primarias de desempate.

_____10.    No proporciono la dirección residencial bajo la cual usted está registrado/a.

_____11.    Su solicitud fue recibida después de la fecha límite para recibir solicitudes para votar por correo postal. La fecha límite fue el ____ de _____, _____
                 (día)     (mes)     (año)

(Marque abajo si es apropiado)
_____ Sin embargo, ya que usted solicito una boleta para la elección de desempate, si una sucede, su solicitud es válida para esa elección.

_____12.    Los documentos del registro electoral indican que usted no está inscrito como votante y si ha solicitado dicha inscripción, ésta no entrará en vigor en o antes del Día de la Elección.

_____13.    No se pudo determinar las elecciones en las cuales usted desea votar por correo.

_____14.    Su solicitud fue inicialmente enviada por fax o correo electrónico, pero una copia impresa original de la solicitud no fue recibida dentro de los cuatro días hábiles.

_____15.    Otro:_____

Si usted desea votar por correo, es necesario que envíe otra solicitud a esta oficina y su solicitud debe ser recibida por_____(Fecha). *Si la nueva solicitud es enviada por fax o por correo electrónico, la copia impresa original debe ser recibida dentro de cuatro días hábiles.

Si tiene una pregunta en cuanto a su solicitud, por favor comuníquese conmigo llamando al (956) 681-1020
                 (Número de Teléfono)

                 Secretario/a de Votación Anticipada

**DO NOT REMOVE PERFORATED TABS.** Moisten here and fold bottom to top to seal.

**DO NOT REMOVE PERFORATED TABS.** Moisten here and fold bottom to top to seal.

IU3 Tal 5141 7
4

# Application for Ballot by Mail

Prescribed by the Office of the Secretary of State of Texas
Sec 1-5, 84.012

For Official Use Only
VUID #, County Election Precinct #,
Statement of Residence, etc.

**1** Last Name (Please print information)
Almanza

First Name
Jovita

Middle Initial
Garza

Suffix (Jr., Sr., III, etc.)

**2** Residence Address: See back of this application for instructions.
3218 Daytona Ave

City
McAllen

,TX

ZIP Code
78503

**3** Mail my ballot to: If mailing address differs from residence address, please complete Box #7.

City

State

ZIP Code

**4** Date of Birth (mm/dd/yyyy) (Optional)
8/4/1946

**5** Reason for Voting by Mail:
☒ 65 years of age or older. (Complete Box #6a)
☒ Disability. (Complete Box #6a)
☐ Expected absence from the county. (Complete Box #8 and Box #9)
☐ You will receive a ballot for the upcoming election only.

☐ Confinement in jail. (Complete Box #6b)
☐ You will receive a ballot for the upcoming election only.

**6a** ONLY Voters 65 Years of Age or Older or Voters with a Disability:
If applying for one election, select appropriate box.
If applying once for all elections in the calendar year, select "Annual Application".

☐ Annual Application

**6b** ONLY Voters Absent from County or Voters Confined in Jail:
You may only apply for a ballot by mail for one election, and any resulting runoff.
Please select the appropriate box.

Uniform and Other Elections:
☒ May Election
☐ November Election
☐ Other:

☐ Any Resulting Runoff

Primary Elections:
☐ Democratic Primary
☐ Republican Primary
(You must declare one political party to vote in a primary)

☐ Any Resulting Runoff

Uniform and Other Elections:
☐ Annual Application

Primary Elections:
You must declare one political party to vote in a primary.
☐ Democratic Primary
☐ Republican Primary

☐ "If someone helped you to complete this form or mails the form for you, then that person must complete the sections below.

**7** If you are requesting the ballot be mailed to a different address (other than residence), indicate where the ballot will be mailed. See reverse for instructions.
☐ Mailing Address as listed on my voter registration certificate

Contact Information (Optional)
Please list the phone number and email address
in case there is any question about your application.

Phone number:
Email: plara@mcallen.net

☐ Nursing home, assisted living facility, or long term care facility
☐ Hospital
☐ Retirement Center

**8** If you selected "expected absence from the county," see reverse for instructions
Date of return to residence address

☐ Address of the jail
☐ Relative, relationship
☐ Address outside the county (see Box #9)

**9** Voters may submit a completed, signed, and scanned application to the Early Voting Clerk at:
plara@mcallen.net
(early voting clerk's e-mail address)
(956)681-1029
(early voting clerk's fax)
NOTE: If you fax or e-mail this form, please be aware that you must also mail this form to the early voting clerk within four business days. See "Submitting Application" on the back of this form for additional information.

Date you can begin to receive mail at this address

**10** "I certify that the information given in this application is true, and I understand that giving false information in this application is a crime."

SIGN HERE →
If applicant is unable to sign or make a
mark in the presence of a witness, the
witness shall complete Box #11.

X  Jovita Almanza

Printed Name of Witness/Assistant

X

Witness Relationship to Applicant
(Refer to instructions on back for clarification)

**11** See back for Witness and Assistant definitions.
If applicant is unable to mark Box #10 and you are acting as a "Witness to that fact, please check the box and sign below.
If you are assisting the applicant in the completion of this application on behalf of the applicant, please check this box as an Assistant and sign below.

☐ May Election
☐ November Election
☐ Other:

*If you are acting as Witness and Assistant, please check both boxes. Failure to complete this form is a Class A misdemeanor if signature was witnessed or mailed on behalf of applicant was assisted in completing the application.

Signature of Witness/Assistant

Street Address

City

State

ZIP Code

Act Number (if applicable)

Este formulario está disponible en Español. Para conseguir la versión en Español favor de llamar sin cargo al 1.800.252.8683 a la oficina del Secretario de Estado o la Secretaría de Votación por Adelantado.

## Instructions for Application for Ballot by Mail

**Residence Address** - Give full address as shown on your voter registration certificate. If you have moved within the county but not yet changed your voter registration address with the voter registrar, indicate your new residence address.

**Mail Ballot To** - Give full address where you wish to have ballot mailed, if the address is different from your residence address.

**Mailing Ballot to a Different Address** - Your ballot must be mailed to your home where you live or to your mailing address on your voter registration certificate. There are some exceptions that allow you to have your ballot mailed to a different location as specified below.

| Reason for voting by mail | Location to mail ballot |
|---|---|
| 65 or disabled | Nursing home, assisted living/retirement center, relative, hospital |
| In jail | Address of jail or relative |
| Absent from county | Address located outside of county |

**Expected Absence from County** - If you chose expected absence from county, you must expect to be absent from the county on election day and during the hours of early voting in person or for the remainder of the early voting period after you submit your application. Your ballot must be mailed to an address outside the county. Important: Give date you can begin to receive mail at the address given.

**Annual Application** - If you are 65 years of age or older, or disabled you may apply to receive all ballots by mail for a calendar year. If you do not select any elections in Box 6a, your application will be considered an Annual Application. If you submit an annual application for a ballot by mail, your application may be forwarded to other entities holding elections where you are a qualified voter. This means that you may receive a ballot for those elections in addition to the ballot(s) you requested with this application.

### Submitting Application

1. **Sign and date your application** - If unable to sign, please go to Witness/Address boxes (11 on reverse) and have a person witness your mark. Witness/Assistant instructions follow below.

2. **Deliver to Early Voting Clerk** - You may submit your application via these methods:

**In Person:** Only the applicant may submit their application in person to the Early Voting Clerk until the early voting period begins. However, after the early voting period begins for an election, the applicant may only submit their application via mail, common contract carrier, fax, or e-mail.

**By Mail:** You may mail your application via the U.S. Postal Service.

**By Common Contract Carrier:** You may submit via a common or contract carrier which is a bona fide, for profit carrier.

**By Fax:** You may fax your application to the Early Voting Clerk. Please contact your Early Voting Clerk or the Secretary of State's Office for fax numbers.

**By E-Mail:** You may e-mail a signed, scanned image of your application to the Early Voting Clerk. Please contact your Early Voting Clerk or the Secretary of State's Office for e-mail addresses.

**IF YOU FAX OR E-MAIL YOUR APPLICATION TO THE EARLY VOTING CLERK, YOU MUST ALSO MAIL THE APPLICATION SO THAT THE CLERK RECEIVES IT NO LATER THAN THE FOURTH BUSINESS DAY AFTER THE DAY THE CLERK RECEIVED YOUR FAXED OR EMAILED APPLICATION.** If you fax or e-mail your application by the deadline noted below, your application will be considered complete and timely as long as the original is received by the early voting clerk by the fourth business day after it was submitted by fax or e-mail.

### Deadline

Your application must be received by the early voting clerk of the local entity conducting the election not later than the 11th day before election day. If the 11th day is a weekend or holiday, the deadline is the first preceding business day. You may submit an application throughout the calendar year, beginning January 1. Please remember that the application must be received not later than the 11th day before the first election in which you seek to vote by mail.

If you submit an Annual Application for Ballot by Mail within 60 days before an election that takes place in the following calendar year, your application will be valid for any election that takes place in the following calendar year, regardless of the fact that your application was submitted prior to the end of the preceding calendar year. This applies to Annual Applications only and not to a regular application for ballot by mail.

### Witness/Assistant Section

**Witness:** If you are unable to sign your name (due to a physical disability or illiteracy), the application may be signed at Box #11 for you by a Witness. You must affix your mark to the application in Box #10 or, if you are unable to make a mark, then the Witness must check the appropriate box in 11 indicating the inability to make a mark. The Witness must state his/her name in printed form and indicate his/her relationship to you or, if unrelated, state that fact. The Witness must sign and provide his or her printed name and residence address. Unless the Witness is a close relative of the voter (parent, grandparent, spouse, child or sibling), it is a Class B misdemeanor for a person to witness more than one application for ballot by mail.

**Assistant:** If a person (other than a close relative or person registered to vote at the same address) assists you in completing this application in your presence or mails/faxes/e-mails this application on your behalf, then that person must complete Box #11. The Assistant must sign, provide his or her printed name, and his or her residence address. A person commits a Class A misdemeanor if the person provides assistance without providing the information described above unless a close relative or registered at your address.

If you have further questions or need additional assistance, please contact your Early Voting Clerk or The Secretary of State's office at 1-800-252-8683 or www.sos.state.tx.us.



1025

AW5-16
Prescribed by Secretary of State
Section 86.008(b), 86.0015 Texas Election Code
12/17

Arellano, Yolanda
VUID # 1054086061 SMD#4

## NOTICE OF REJECTED APPLICATION FOR BALLOT BY MAIL

I have received and reviewed your application for a ballot by mail. I have determined that your application must be rejected for the following reason(s):

(Check as applicable)

_____ 1.   Your application was received earlier than the 60th day before an election held in January or February of the year following the year the ABBM was submitted.

_____ 2.   Your application was not properly delivered.

__X__ 3.   Your application was received after the deadline to apply for a ballot by mail for the upcoming election.
(Check if appropriate:)
_____ However, since you indicated on the application that it was to be an Annual application for a ballot by mail, the application will be considered valid for other elections held this year and for which the application was submitted before the deadline.

_____ 4.   You indicate you are voting due to expected absence from the county, but the address to which your ballot is to be sent is not an address outside the county. When voting by mail on the grounds of expected absence from the county, the address to which your ballot is to be mailed must be outside the county.

_____ 5.   When voting by mail due to confinement in jail, the address to which your ballot is to be mailed must be that of the jail or a relative. Your application did not indicate either address.

_____ 6.   Your application was not signed.

_____ 7.   The witness who signed your application did not:
_____ (a)   indicate a relationship on your application;
_____ (b)   indicate that you were unable to make your mark in lieu of your signature; or
_____ (c)   provide his or her printed name or residence address.

_____ 8.   Your application did not indicate the reason you are entitled to vote by mail.

_____ 9.   For a primary election, you must indicate your party preference.
(Check if appropriate:)
_____ However, if you have submitted an Annual ABBM, you will receive ballots for other elections held this year other than the Primary or Runoff Election.

_____ 10.   Your residence address of registration was not provided on your application.

_____ 11.   Your application was received after the deadline for receiving an application for a ballot by mail.
The deadline for receiving the application was _____.
(Date)

(Check if appropriate)
_____ However, since you have requested a ballot for the run-off election, if one is to be held, your application is valid for that election.

_____ 12.   According to the records of the voter registrar, you are not currently registered to vote or your registration, if you have applied, will not be effective on or before election day.

_____ 13.   I could not determine the election for which you were applying for a ballot.

_____ 14.   Your application was initially submitted via fax or email, but an original hardcopy of the application was not received within four business days.

_____ 15.   Other:_____

If you wish to vote, it will be necessary for you to submit another application to me, and that application must be received by _____ *If new application is faxed or emailed, the original hardcopy must be received within four
(*Date)                                business days.

If you have any questions regarding your application, please contact me at  (956) 681-1020  .
(Phone Number)

_____
Early Voting Clerk

1026

AW5-16
Prescrito por el Secretario de Estado
Código Electoral de Texas Secs. 86.008(b), 86.0015
12/17

Arellano, Yolanda
VUID # 1054086061 SMD#4

### AVISO DE SOLICITUD RECHAZADA PARA RECIBIR UNA BOLETA POR CORREO

Su solicitud para recibir una boleta por correo postal fue recibida y analizada. Hemos determinado que su solicitud debe ser rechazada por la siguiente razón:

(Marcar las que apliquen)

_____1.    Su solicitud fue recibida antes del 60° día antes de una elección celebrada en enero o febrero del año siguiente al año en que se presentó el ABBM ("ABBM" por sus siglas en Ingles).

_____2.    La solicitud no fue entregada de manera apropiada.

__X__3.    Su solicitud fue recibida después de la fecha límite para aplicar para recibir una boleta por correo para esta elección. (Marque abajo si es apropiado).

_____Sin embargo, ya que usted indico en la solicitud que su solicitud es una solicitud anual para votar por correo, la solicitud se considerará válida para las otras elecciones que sucedan este año y para las cuales su solicitud fue enviada antes de la fecha límite.

_____4.    Usted indico que desea votar por correo por que planea estar ausente del condado pero la dirección que usted proporciono para recibir su boleta no es una dirección fuera del condado. Cuando usted aplica para votar por correo en base a que estará ausente del condado, la dirección a la cual usted recibirá su boleta debe estar ubicada fuera del condado.

_____5.    Si usted está encarcelado, para que pueda votar por correo es necesario que su boleta sea enviada directamente a la cárcel o al domicilio de algún familiar. Su solicitud no indicó ninguna de estas direcciones.

_____6.    No firmó su solicitud.

_____7.    El testigo que firmó su solicitud no:
_____(a)    indicó, en la solicitud, qué parentesco o tipo relación existe entre ustedes;
_____(b)    indicó que además de no poder firmar, usted no puede poner su marca en la solicitud; o
_____(c)    proporciono su nombre completo en letra de molde y su dirección residencial.

_____8.    No indicó la base de elegibilidad por la cual usted tiene derecho a votar por correo.

_____9.    Para las elecciones primarias, usted debe indicar su preferencia de partido político. (Marque abajo si es apropiado).

_____Sin embargo, si usted envió una solicitud anual para votar por correo postal (Annual ABBM, por sus siglas en Ingles), usted recibirá las boletas para todas las demás elecciones oficiadas este año que no sean elecciones primarias o elecciones primarias de desempate.

_____10.    No proporciono la dirección residencial bajo la cual usted está registrado/a.

_____11.    Su solicitud fue recibida después de la fecha límite para recibir solicitudes para votar por correo postal. La fecha límite fue el _____ de _____, _____.
   (día)      (mes)      (año)

(Marque abajo si es apropiado)
_____ Sin embargo, ya que usted solicito una boleta para la elección de desempate, si una sucede, su solicitud es válida para esa elección.

_____12.    Los documentos del registro electoral indican que usted no está inscrito como votante y si ha solicitado dicha inscripción, ésta no entrará en vigor en o antes del Día de la Elección.

_____13.    No se pudo determinar las elecciones en las cuales usted desea votar por correo.

_____14.    Su solicitud fue inicialmente enviada por fax o correo electrónico, pero una copia impresa original de la solicitud no fue recibida dentro de los cuatro días hábiles.

_____15.    Otro:_____

Si usted desea votar por correo, es necesario que envíe otra solicitud a esta oficina y su solicitud debe ser recibida por _____(Fecha). *Si la nueva solicitud es enviada por fax o por correo electrónico, la copia impresa original debe ser recibida dentro de cuatro días hábiles.

Si tiene una pregunta en cuanto a su solicitud, por favor comuníquese conmigo llamando al  (956) 681-1020
   (Número de Teléfono)

Secretario/a de Votación Anticipada

# Application for Ballot by Mail

Prescribed by the Office of the Secretary of State of Texas
Sections 84.011
5/16/2017

For Official Use Only
VUID/#, County Election Precinct #,
Statement of Residence, etc.

105 408 0001

DO NOT REMOVE PERFORATED TABS. Moisten here and fold bottom to top to seal.

**1** Last Name (Please print information.)
Arellano

First Name
Yolanda

Middle Initial

Suffix (Jr., Sr., III, etc.)

**2** Residence Address: See back of this application for instructions.
1405 Savannah Ave

City
McAllen

State
TX

ZIP Code
78503

**3** Mail my ballot to: If mailing address differs from residence address, please complete Box #7.

City

State

ZIP Code

**4** Date of Birth (mm/dd/yyyy) (Optional)
11/6/1948

**5** Reason for Voting by Mail:

☐ 65 years of age or older. (Complete Box #6a)
☐ Disability. (Complete Box #6b)
☐ Expected absence from the county. (Complete Box #8 and Box #9)
☐ Confinement in jail. (Complete Box #8)

**6a** ONLY Voters 65 Years of Age or Older or Voters with a Disability:
If applying for one election/ballot, select appropriate box.
If applying once for all elections in the calendar year, select "Annual Application."

☐ Uniform and Other Elections:
☐ November Election
☐ Other:

☐ Annual Application.

**6b** ONLY Voters Absent from County or Voters Confined in Jail:
You may only apply for a ballot by mail for one election, and any resulting runoff.
Please select the appropriate box.

☐ Uniform and Other Elections:
☐ May Election
☐ November Election
☐ Other:

Primary Elections:
☐ Democratic Primary
☐ Republican Primary

☐ Any Resulting Runoff

**7** If you are requesting this ballot be mailed to a citizen address (other than residence), indicate where the ballot will be mailed. See reverse for instructions.

☐ Mailing Address as listed on my voter registration certificate
☐ Nursing home, assisted living facility, or long term care facility
☐ Hospital
☐ Retirement Center

-Contact Information (Optional)-
* Please list your phone number and/or email address:
* Used in case our office has questions.

☐ Address of the jail
☐ Relative, relationship
☐ Address outside the county (see Box #8)

**8** If you selected "expected absence from the county," see reverse for instructions

[ boxes ]                    [ boxes ]

Date of return to residence address

**9** Voters may submit a completed, signed, and scanned application to the Early Voting Clerk at:
plara@mcallen.net
(early voting clerk's e-mail address)

(956) 681-1029
(early voting clerk's fax)

NOTE: If you fax or e-mail this form, please be aware that you must also mail this form to the early voting clerk within four business days. See "Submitting Application" on the back of this form for additional information.

Date you can begin to receive mail at this address

**10** "I certify that the information given in this application is true, and I understand that giving false information in this application is a crime."

X   [signature: Yolanda Quillen-o]   Date 4/24/19

SIGN HERE
If applicant is unable to sign or makes a mark, in the presence of a witness, the witness shall complete Box #11.

**11** See back for Witness and Assistant definitions.
If applicant is unable to make his/her (1) and you are acting as a Witness to that fact, please check the box and sign below.   ☐
If you assisted the applicant in completing this application in the applicant's presence or e-mailed/mailed or faxed the application on behalf of the applicant, please check this box as an Assistant and sign below.   ☐
• If you are acting as Witness and Assistant, please check both boxes. Failure to complete this information is a Class A misdemeanor if signature was witnessed or applicant was assisted in completing the application.

X

Signature of Witness/Assistant

Printed Name of Witness/Assistant

Witness' Relationship to Applicant
(Refer to instructions on back for clarification)

If someone helped you to complete this form or mails the form for you, then that person must complete the sections below.

Street Address

Apt Number (if applicable)

City

ZIP Code

State:

Este formulario está disponible en Español. Para conseguir la versión en Español favor de llamar sin cargo al 1.800.252.8683 a la oficina del Secretario de Estado o la Secretaría de Votación por Adelantado.

1028

## Instructions for Application for Ballot by Mail

**Residence Address** - Give full address as shown on your voter registration certificate. If you have moved within the county but not yet changed your voter registration address with the voter registrar, indicate your new residence address.

**Mail Ballot To** - Give full address where you wish to have ballot mailed, if the address is different from your residence address.

**Mailing Ballot to a Different Address** - Your ballot must be mailed to the home where you live or to your mailing address on your voter registration certificate. There are some exceptions that allow you to have your ballot mailed to a different location as specified below.

| Reason for voting by mail | Location to mail ballot |
|---|---|
| 65 or disabled | Nursing home, assisted living/retirement center, relative, hospital |
| In jail | Address of jail or relative |
| Absent from county | Address located outside of county |

**Expected Absence from County** - If you chose expected absence from county, you must expect to be absent from the county on election day and during the hours of early voting in person or for the remainder of the early voting period after you submit your application. Your ballot must be mailed to an address outside the county. Important: Give date you can begin to receive mail at the address given.

**Annual Application** - If you are 65 years of age or older, or disabled you may apply to receive all ballots by mail for a calendar year. If you do not select any elections in Box 6a, your application will be considered an Annual Application. If you submit an annual application for a ballot by mail, your application may be forwarded to other entities holding elections where you are a qualified voter. This means that you may receive a ballot for those elections in addition to the ballot(s) you requested with this application.

### Submitting Application

1. Sign and date your application. - If unable to sign, please go to Witness/Address boxes (11 on reverse) and have a person witness your mark. Witness/Assistant instructions follow below.

2. Deliver to Early Voting Clerk - You may submit your application via these methods:

**In Person:** Only the applicant may submit their application in person to the Early Voting Clerk until the early voting period begins. However, after the early voting period begins for an election, the applicant may only submit their application via mail, common contract carrier, fax, or e-mail.

**By Mail:** You may mail your application via the U.S. Postal Service.

**By Common Contract Carrier:** You may submit via a common or contract carrier which is a bona fide, for profit carrier.

**By Fax:** You may fax your application to the Early Voting Clerk. Please contact your Early Voting Clerk or the Secretary of State's Office for fax numbers.

**By E-Mail:** You may e-mail a signed, scanned image of your application to the Early Voting Clerk. Please contact your Early Voting Clerk or the Secretary of State's Office for e-mail addresses.

IF YOU FAX OR E-MAIL YOUR APPLICATION TO THE EARLY VOTING CLERK, YOU MUST ALSO MAIL THE APPLICATION SO THAT THE CLERK RECEIVES IT NO LATER THAN THE FOURTH BUSINESS DAY AFTER THE DAY THE CLERK RECEIVED YOUR FAXED OR EMAILED APPLICATION. If you fax or e-mail your application by the deadline noted below, your application will be considered complete and timely as long as the original is received by the early voting clerk by the fourth business day after it was submitted by fax or e-mail.

### Deadline

Your application must be received by the early voting clerk of the local entity conducting the election not later than the 11th day before election day. If the 11th day is a weekend or holiday, the deadline is the first preceding business day. You may submit an application throughout the calendar year, beginning January 1. Please remember that the application must be received not later than the 11th day before the first election in which you seek to vote by mail.

If you submit an Annual Application for Ballot by Mail within 60 days before an election that takes place in the following calendar year, your application will be valid for any election that takes place in the following calendar year, regardless of the fact that your application was submitted prior to the end of the preceding calendar year. This applies to Annual Applications only and not to a regular application for ballot by mail.

### Witness/Assistant Section

**Witness:** If you are unable to sign your name, (due to a physical disability or illiteracy), the application may be signed at Box #11 for you by a Witness. You must affix your mark to the application in Box #10 or, if you are unable to make a mark, then the Witness must check the appropriate box in 11 indicating the inability to make a mark. The Witness must state his/her name in printed form and indicate his/her relationship to you or, if unrelated, state that fact. The Witness must sign and provide his or her printed name and residence address. Unless the Witness is a close relative of the voter (parent, grandparent, spouse, child or sibling), it is a Class B misdemeanor for a person to witness more than one application for ballot by mail.

**Assistant:** If a person (other than a close relative or person registered to vote at the same address) assists you in completing this application in your presence or mails/faxes/e-mails this application on your behalf, then that person must complete Box #11. The Assistant must sign, provide his or her printed name, and his or her residence address. A person commits a Class A misdemeanor if the person provides assistance without providing the information described above unless a close relative or registered at your address.

If you have further questions or need additional assistance, please contact your Early Voting Clerk or The Secretary of State's office at 1-800-252-8683 or www.sos.state.tx.us.

---

DO NOT REMOVE PERFORATED TABS. Moisten tab and fold top to bottom to seal.

FROM:

Yolanda Arellano

1405 Savannah Ave

McAllen, TX 78503-5504

AFFIX LABEL HERE OR ADDRESS

To: Early Voting Clerk

Perla Lara

PO Box 220/1300 Houston Ave.

McAllen Texas 78505-0220

RECEIVED

APR 25 2019

CITY OF McALLEN CITY SECRETARY'S OFFICE

MCALLEN TX
24 APR 20
P.M.

AS-15 12/17

VUID #, County Election Precinct #,
Statement of Residence, etc.

**1** Last Name, (Please print information)
Garza

Suffix (Jr., Sr., III, etc)

First Name
Noelia

Middle Initial

**2** Residence Address: See back of this application for instructions.
4113 S. 30th St.

City
McAllen

ZIP Code
78503

**3** Mail my ballot to: If mailing address differs from residence address, please complete Box #7.
4113 S. 30th St.

City
McAllen

State
TX

ZIP Code
78503

**4** Date of Birth (mm/dd/yyyy) (Optional)
1 0 / 0 2 / 1 9 5 8

**5** Reason for Voting by Mail:
- ☐ 65 years of age or older. (Complete Box #6a)
- ☐ Disability. (Complete Box #6a)
- ☒ Expected absence from the county. (Complete Box #6b and Box #8)
  You will receive a ballot for the upcoming election only.
- ☐ Confinement in jail. (Complete Box #6b)
  You will receive a ballot for the upcoming election only.

**6a** ONLY Voters 65 Years of Age or Older or Voters with a Disability.
If applying for one election, select appropriate box.
If applying once for all elections in the calendar year, select "Annual Application."
- ☐ Annual Application

*Por Perla* — *Since applicant provide a address out of county — was already notified via text no "notice of rejected" is required*

**6b** Uniform and Other Elections:
- ☒ May Election
- ☐ November Election
- ☐ Other ____

4/24/19 — couldn't formatting
John B.

ONLY Voters Absent:
You may only apply to
Please select the app

- ☐ Uniform and Oth
- ☐ May Election
- ☐ November Elect
- ☐ Other ____

See back for Witn
If applicant is unab
If you assisted the

**✗** ____
Signature or Witness /

If you are acting

Street Address                    Apt Number (if applicable)

State                             City                   ZIP Code

Primary Elections:
You must declare one political party to vote in
a primary.
- ☐ Democratic Primary
- ☐ Republican Primary

**7** Contact Information (Optional)*
* Please list phone number and/or email address:
* Used in case our office has questions.

para@mcallen.net

If you are requesting this ballot be mailed to a different address (other than residence), indicate where the ballot will be mailed. See reverse for instructions.
- ☒ Mailing Address as listed on my voter registration certificate
- ☐ Address of the jail
- ☐ Relative, relationship
- ☐ Address outside the county (see Box #8)

**8** If you selected "expected absence from the county," see reverse for instructions.
Date you can begin to receive mail at this address
0 4 / 1 2 / 2 0 1 9  —  Date of return to residence address  0 5 / 0 7 / 2 0 1 9

**9** Voters may submit a completed, signed, and scanned application to the Early Voting Clerk at:
para@mcallen.net
(early voting clerk's e-mail address)

(956) 681-1029
(early voting clerk's fax)

NOTE: If you fax or e-mail this form, please be aware that you must also mail the form to the early voting clerk within four
business days. See "Submitting Application" on the back of this form for additional information.

**10** "I certify that the information given in this application is true, and I understand that giving false information
in this application is a crime."

SIGN HERE
If applicant is unable to sign or make a
mark in the presence of a witness, the
witness shall complete Box #11.

**✗** _(signature)_   Date March 25, 2019

**✗** ____
Printed Name of Witness/Assistant

Witness' Relationship to Applicant
(Refer to instructions on back for clarification)

Este formulario está disponible en Español. Para conseguir la versión en Español favor de llamar sin cargo al 1.800.252.8683 a la oficina del Secretario de Estado o la Secretaría de Votación por Adelantado.

## Instructions for Application for Ballot by Mail

**Residence Address** - Give full address as shown on your voter registration certificate. If you have moved within the county but not yet changed your voter registration address with the voter registrar, indicate your new residence address.

**Mail Ballot To** - Give full address where you wish to have ballot mailed, if the address is different from your residence address.

**Mailing Ballot to a Different Address** - Your ballot must be mailed to your home where you live or to your mailing address on your voter registration certificate. There are some exceptions that allow you to have your ballot mailed to a different location as specified below.

| Reason for voting by mail | Location to mail ballot |
|---|---|
| 65 or disabled | Nursing home, assisted living/retirement center, relative, hospital |
| In jail | Address of jail or relative |
| Absent from county | Address located outside of county |

**Expected Absence from County** - If you chose expected absence from county, you must expect to be absent from the county on election day and during the hours of early voting in person or for the remainder of the early voting period after you submit your application. **Your ballot must be mailed to an address outside the county. Important: Give date you can begin to receive** mail at the address given.

**Annual Application** - If you are 65 years of age or older, or disabled you may apply to receive all ballots by mail for a calendar year. If you do not select any elections in Box 8a, your application will be considered an Annual Application. If you submit an annual application for a ballot by mail, your application may be forwarded to other entities holding elections where you are a qualified voter. This means that you may receive a ballot for those elections in addition to the ballot(s) you requested with this application.

### Submitting Application

**Sign and date your application** - If unable to sign, please go to Witness/Address boxes (11 on reverse) and have a person witness your mark. Witness/Assistant instructions follow below.

**Deliver to Early Voting Clerk** - You may submit your application via these methods:

*In Person*: Only the applicant may submit their application in person to the Early Voting Clerk until the early voting period begins. However, after the early voting period begins for an election, the applicant may only submit his application via mail, common contract carrier, fax, or e-mail.

*By Mail*: You may mail your application via the U.S. Postal Service.

*By Common Contract Carrier*: You may submit via a common or contract carrier which is a bona fide, for profit carrier.

*By Fax*: You may fax your application to the Early Voting Clerk. Please contact your Early Voting Clerk or the Secretary of State's Office for fax numbers.

*By E-Mail*: You may e-mail a signed, scanned image of your application to the Early Voting Clerk. Please contact your Early Voting Clerk or the Secretary of State's Office for e-mail addresses.

**IF YOU FAX OR E-MAIL YOUR APPLICATION TO THE EARLY VOTING CLERK, YOU MUST ALSO MAIL THE APPLICATION SO THAT THE CLERK RECEIVES IT NO LATER THAN THE FOURTH BUSINESS DAY AFTER THE DAY THE CLERK RECEIVED YOUR FAXED OR MAILED APPLICATION.** If you fax or e-mail your application by the deadline noted below, your application will be considered complete and timely as long as the original is received by the early voting clerk by the fourth business day after it was submitted by fax or e-mail.

### Deadline

Your application must be received by the early voting clerk of the local entity conducting the election not later than the 11th day before election day. If the 11th day is a weekend or holiday, the deadline is the first preceding business day. You may submit an application throughout the calendar year, beginning January 1. Please remember that the application must be received not later than the 11th day before the first election in which you seek to vote by mail.

If you submit an Annual Application for Ballot by Mail within 60 days before an election that takes place in the following calendar year, your application will be valid for any election that takes place the following calendar year, regardless of the fact that your application was submitted prior to the end of the preceding calendar year. This applies to Annual Applications only and not to a regular application for ballot by mail.

### Witness/Assistant Section

**Witness:** If you are unable to sign your name (due to a physical disability or illiteracy), the application may be signed in Box #11 for you by a Witness. You must affix your mark to the application in Box #11 and, if you are unable to make a mark, then the Witness must check the appropriate box in 11 indicating the inability to make a mark. The Witness must state his/her name in printed form and indicate his/her relationship to you or, if unrelated, state that fact. The Witness must sign and provide his or her printed name and residence address. Unless the Witness is a close relative of the voter (parent, grandparent, spouse, child or sibling), it is a Class A misdemeanor for a person to witness more than one application for ballot by mail.

**Assistant:** If a person (other than a close relative or person registered to vote at the same address) assists you in completing this application in your presence or mails/faxes/e-mails this application on your behalf, then that person must complete Box #11. The Assistant must sign, provide his or her printed name, and his or her residence address. A person commits a Class A misdemeanor if the person provides assistance without providing the information described above unless a close relative or registered at your address.

If you have further questions or need additional assistance, please contact your Early Voting Clerk or The Secretary of State's office at 1-800-252-8683.
www.sos.state.tx.us

FROM:

AFFIX LABEL HERE OR ADDRESS

TO: EARLY VOTING CLERK

Perla Lara

P.O. Box 220/300 Houston Ave

McAllen   Texas   78505-0220



AFFIX FIRST CLASS POSTAGE

1031




(956) 239-3027

Good afternoon Ms. Garza

I am contacting you from City of McAllen City Secretary Office to advise you that I called Secretary of State about your application for ballot.

I'm sorry to inform you that we will be unable to process your application you do not meet the qualifications.

If you have any questions or concerns you can call Secretary of State at 1-800-252-8683.

4:19 PM

Thank you...you tried..and the rules

3/20/2019                                        Mail - Joann Balderrama - Outlook

are rules...have a great   

afternoon...

4:47 PM

Enter message                                              Send

AW5-16
Prescribed by Secretary of State
Section 86.008(b), 86.0015 Texas Election Code
12/17

Fetters, Rodger D.
VUID # 1054562861 SMD#3

### NOTICE OF REJECTED APPLICATION FOR BALLOT BY MAIL

I have received and reviewed your application for a ballot by mail.  I have determined that your application must be rejected for the following reason(s):

(Check as applicable)

_____ 1.   Your application was received earlier than the 60th day before an election held in January or February of the year following the year the ABBM was submitted.

_____ 2.   Your application was not properly delivered.

_____ 3.   Your application was received after the deadline to apply for a ballot by mail for the upcoming election.
(Check if appropriate:)

_____ However, since you indicated on the application that it was to be an Annual application for a ballot by mail, the application will be considered valid for other elections held this year and for which the application was submitted before the deadline.

_____ 4.   You indicate you are voting due to expected absence from the county, but the address to which your ballot is to be sent is not an address outside the county.  When voting by mail on the grounds of expected absence from the county, the address to which your ballot is to be mailed must be outside the county.

_____ 5.   When voting by mail due to confinement in jail, the address to which your ballot is to be mailed must be that of the jail or a relative.  Your application did not indicate either address.

_____ 6.   Your application was not signed.

_____ 7.   The witness who signed your application did not:

_____ (a)   indicate a relationship on your application;

_____ (b)   indicate that you were unable to make your mark in lieu of your signature; or

_____ (c)   provide his or her printed name or residence address.

_____ 8.   Your application did not indicate the reason you are entitled to vote by mail.

_____ 9.   For a primary election, you must indicate your party preference.
(Check if appropriate:)

_____ However, if you have submitted an Annual ABBM, you will receive ballots for other elections held this year other than the Primary or Runoff Election.

_____ 10.  Your residence address of registration was not provided on your application.

_____ 11.  Your application was received after the deadline for receiving an application for a ballot by mail.
The deadline for receiving the application was _____.
                                                                              (Date)

(Check if appropriate)

_____ However, since you have requested a ballot for the run-off election, if one is to be held, your application is valid for that election.

_____ 12.  According to the records of the voter registrar, you are not currently registered to vote or your registration, if you have applied, will not be effective on or before election day.

_____ 13.  I could not determine the election for which you were applying for a ballot.

_____ 14.  Your application was initially submitted via fax or email, but an original hardcopy of the application was not received within four business days.

___X___ 15.  Other: Your address is in District 3, the General Election is for Districts 4 & 5.

If you wish to vote, it will be necessary for you to submit another application to me, and that application must be received by _____ *If new application is faxed or emailed, the original hardcopy must be received within four
      (*Date)                                            business days.

If you have any questions regarding your application, please contact me at ___(956) 681-1020___
                                                                                            (Phone Number)

_____
Early Voting Clerk

AW5-16
Prescrito por el Secretario de Estado
Código Electoral de Texas Secs. 86.008(b), 86.0015
12/17

Fetters, Rodger D.
VUID # 1054562861 SMD#3

**AVISO DE SOLICITUD RECHAZADA PARA RECIBIR UNA BOLETA POR CORREO**

Su solicitud para recibir una boleta por correo postal fue recibida y analizada. Hemos determinado que su solicitud debe ser rechazada por la siguiente razón:

(Marcar las que apliquen)

_____ 1. Su solicitud fue recibida antes del 60° día antes de una elección celebrada en enero o febrero del año siguiente al año en que se presentó el ABBM ("ABBM" por sus siglas en Ingles).

_____ 2. La solicitud no fue entregada de manera apropiada.

_____ 3. Su solicitud fue recibida después de la fecha límite para aplicar para recibir una boleta por correo para esta elección. (Marque abajo si es apropiado).

_____ Sin embargo, ya que usted indico en la solicitud que su solicitud es una solicitud anual para votar por correo, la solicitud se considerará válida para las otras elecciones que sucedan este año y para las cuales su solicitud fue enviada antes de la fecha límite.

_____ 4. Usted indico que desea votar por correo por que planea estar ausente del condado pero la dirección que usted proporciono para recibir su boleta no es una dirección fuera del condado. Cuando usted aplica para votar por correo en base a que estará ausente del condado, la dirección a la cual recibirá su boleta <u>debe</u> estar ubicada fuera del condado.

_____ 5. Si usted está encarcelado, para que pueda votar por correo es necesario que su boleta sea enviada directamente a la cárcel o al domicilio de algún familiar. Su solicitud no indicó ninguna de estas direcciones.

_____ 6. No firmó su solicitud.

_____ 7. El testigo que firmó su solicitud no:
_____ (a) indicó, en la solicitud, qué parentesco o tipo relación existe entre ustedes;
_____ (b) indicó que además de no poder firmar, usted no puede poner su marca en la solicitud; o
_____ (c) proporciono su nombre completo en letra de molde y su dirección residencial.

_____ 8. No indicó la base de elegibilidad por la cual usted tiene derecho a votar por correo.

_____ 9. Para las elecciones primarias, usted debe indicar su preferencia de partido político. (Marque abajo si es apropiado).

_____ Sin embargo, si usted envió una solicitud anual para votar por correo postal (Annual ABBM, por sus siglas en Ingles), usted recibirá las boletas para todas las demás elecciones oficiadas este año <u>que no sean</u> elecciones primarias o elecciones primarias de desempate.

_____ 10. No proporciono la dirección residencial bajo la cual usted está registrado/a.

_____ 11. Su solicitud fue recibida después de la fecha límite para recibir solicitudes para votar por correo postal. La fecha límite fue el _____ de _____, _____.
(día)      (mes)        (año)

(Marque abajo si es apropiado)
_____ Sin embargo, ya que usted solicito una boleta para la elección de desempate, si una sucede, su solicitud es válida para esa elección.

_____ 12. Los documentos del registro electoral indican que usted no está inscrito como votante y si ha solicitado dicha inscripción, ésta no entrará en vigor en o antes del Día de la Elección.

_____ 13. No se pudo determinar las elecciones en las cuales usted desea votar por correo.

_____ 14. Su solicitud fue inicialmente enviada por fax o correo electrónico, pero una copia impresa original de la solicitud no fue recibida dentro de los cuatro días hábiles.

__X__ 15. Otro: <u>Su domicilio es en el Distrito 3, la Elección General es para Distritos 4 y 5.</u>

Si usted desea votar por correo, es necesario que envíe otra solicitud a esta oficina y su solicitud debe ser recibida por_____(Fecha). *Si la nueva solicitud es enviada por fax o por correo electrónico, la copia impresa original debe ser recibida dentro de cuatro días hábiles.

Si tiene una pregunta en cuanto a su solicitud, por favor comuníquese conmigo llamando al (956) 681-1020
(Número de Teléfono)

_____
Secretario/a de Votación Anticipada

emailed
2/5/19.

district #3

105456 2841

## Application for Ballot by Mail

Prepared by the Office of the Secretary of State of Texas

1 Last Name, First Name, Middle Name (or Initial), Former Name, Suffix (Jr., Sr., III, etc.)   First Name: RODGER

2 Residence Address   City   RGA LLEN

3 Mailing Address   City   , TX   State   ZIP Code

4 Date of Birth (mm/dd/yyyy) (Optional)   01 26 1956

Contact Information (Optional)
Please list phone number and/or email address.

**5 Reason for Voting by Mail**
☐ 65 years of age or older (Complete Box 5A)
☐ Disability (Complete Box 5A)
☐ Expected absence from the county (Complete Box 5A and Box 8B)
☐ Confinement in jail (Complete Box 8A)

**6a Annual Application**
Uniform and Other Elections
☐ May Election
☐ November Election
☐ Other _____

Primary Election
☐ Democratic Primary
☐ Republican Primary
☐ Any Party by Itself

**6b**
Uniform and Other Elections
☐ May Election
☐ November Election
☐ Other _____

Primary Election
☐ Democratic Primary
☐ Republican Primary
☐ Any Party by Itself

**10** SIGN HERE
X   Rodger D Petteet   21 FEB 2019   Date

11 See back for Witness and Assistant certifications.

1036

AW5-16
Prescribed by Secretary of State
Section 86.008(b), 86.0015 Texas Election Code
12/17

Fetters, Agnes
VUID # 1054524579 SMD#3

## NOTICE OF REJECTED APPLICATION FOR BALLOT BY MAIL

I have received and reviewed your application for a ballot by mail.  I have determined that your application must be rejected for the following reason(s):

(Check as applicable)

_____ 1.  Your application was received earlier than the 60th day before an election held in January or February of the year following the year the ABBM was submitted.

_____ 2.  Your application was not properly delivered.

_____ 3.  Your application was received after the deadline to apply for a ballot by mail for the upcoming election.
       (Check if appropriate:)
       _____  However, since you indicated on the application that it was to be an Annual application for a ballot by mail, the application will be considered valid for other elections held this year and for which the application was submitted before the deadline.

_____ 4.  You indicate you are voting due to expected absence from the county, but the address to which your ballot is to be sent is not an address outside the county.  When voting by mail on the grounds of expected absence from the county, the address to which your ballot is to be mailed must be outside the county.

_____ 5.  When voting by mail due to confinement in jail, the address to which your ballot is to be mailed must be that of the jail or a relative.  Your application did not indicate either address.

_____ 6.  Your application was not signed.

_____ 7.  The witness who signed your application did not:
       _____ (a)  indicate a relationship on your application;
       _____ (b)  indicate that you were unable to make your mark in lieu of your signature; or
       _____ (c)  provide his or her printed name or residence address.

_____ 8.  Your application did not indicate the reason you are entitled to vote by mail.

_____ 9.  For a primary election, you must indicate your party preference.
       (Check if appropriate:)
       _____  However, if you have submitted an Annual ABBM, you will receive ballots for other elections held this year other than the Primary or Runoff Election.

_____ 10.  Your residence address of registration was not provided on your application.

_____ 11.  Your application was received after the deadline for receiving an application for a ballot by mail.
       The deadline for receiving the application was _____.
                                                                (Date)
       (Check if appropriate)
       _____  However, since you have requested a ballot for the run-off election, if one is to be held,
              your application is valid for that election.

_____ 12.  According to the records of the voter registrar, you are not currently registered to vote or your registration, if you have applied, will not be effective on or before election day.

_____ 13.  I could not determine the election for which you were applying for a ballot.

_____ 14.  Your application was initially submitted via fax or email, but an original hardcopy of the application was not received within four business days.

__X__ 15.  Other: Your address is in District 3, the General Election is for Districts 4 & 5.

If you wish to vote, it will be necessary for you to submit another application to me, and that application must be received by _____ *If new application is faxed or emailed, the original hardcopy must be received within four
           (*Date)                                                    business days.

If you have any questions regarding your application, please contact me at  (956) 681-1020 _____.
                                                                              (Phone Number)

_____
Early Voting Clerk

1037

AW5-16
Prescrito por el Secretario de Estado
Código Electoral de Texas Secs. 86.008(b), 86.0015
12/17

Fetters, Agnes
VUID # 1054524579 SMD#3

## AVISO DE SOLICITUD RECHAZADA PARA RECIBIR UNA BOLETA POR CORREO

Su solicitud para recibir una boleta por correo postal fue recibida y analizada. Hemos determinado que su solicitud debe ser rechazada por la siguiente razón:

(Marcar las que apliquen)

_____1.    Su solicitud fue recibida antes del 60º día antes de una elección celebrada en enero o febrero del año siguiente al año en que se presentó el ABBM ("ABBM" por sus siglas en Ingles).

_____2.    La solicitud no fue entregada de manera apropiada.

_____3.    Su solicitud fue recibida después de la fecha límite para aplicar para recibir una boleta por correo para esta elección. (Marque abajo si es apropiado).

_____Sin embargo, ya que usted indico en la solicitud que su solicitud es una solicitud anual para votar por correo, la solicitud se considerará válida para las otras elecciones que sucedan este año y para las cuales su solicitud fue enviada antes de la fecha límite.

_____4.    Usted indico que desea votar por correo por que planea estar ausente del condado pero la dirección que usted proporciono para recibir su boleta no es una dirección fuera del condado.  Cuando usted aplica para votar por correo en base a que estará ausente del condado, la dirección a la cual usted recibirá su boleta debe estar ubicada fuera del condado.

_____5.    Si usted está encarcelado, para que pueda votar por correo es necesario que su boleta sea enviada directamente a la cárcel o al domicilio de algún familiar.  Su solicitud no indicó ninguna de estas direcciones.

_____6.    No firmó su solicitud.

_____7.    El testigo que firmó su solicitud no:
_____(a)    indicó, en la solicitud, qué parentesco o tipo relación existe entre ustedes;
_____(b)    indicó que además de no poder firmar, usted no puede poner su marca en la solicitud; o
_____(c)    proporciono su nombre completo en letra de molde y su dirección residencial.

_____8.    No indicó la base de elegibilidad por la cual usted tiene derecho a votar por correo.

_____9.    Para las elecciones primarias, usted debe indicar su preferencia de partido político. (Marque abajo si es apropiado).

_____Sin embargo, si usted envió una solicitud anual para votar por correo postal (Annual ABBM, por sus siglas en Ingles), usted recibirá las boletas para todas las demás elecciones oficiadas este año que no sean elecciones primarias o elecciones primarias de desempate.

_____10.   No proporciono la dirección residencial bajo la cual usted está registrado/a.

_____11.   Su solicitud fue recibida después de la fecha límite para recibir solicitudes para votar por correo postal.
La fecha límite fue el _____ de _____, _____.
             (día)         (mes)        (año)

(Marque abajo si es apropiado)
_____ Sin embargo, ya que usted solicito una boleta para la elección de desempate, si una sucede, su solicitud es válida para esa elección.

_____12.   Los documentos del registro electoral indican que usted no está inscrito como votante y si ha solicitado dicha inscripción, ésta no entrará en vigor en o antes del Día de la Elección.

_____13.   No se pudo determinar las elecciones en las cuales usted desea votar por correo.

_____14.   Su solicitud fue inicialmente enviada por fax ó correo electrónico, pero una copia impresa original de la solicitud no fue recibida dentro de los cuatro días hábiles.

__X__15.   Otro: Su domicilio es en el Distrito 3, la Elección General es para Distritos 4 y 5.

Si usted desea votar por correo, es necesario que envíe otra solicitud a esta oficina y su solicitud debe ser recibida por_____(Fecha). *Si la nueva solicitud es enviada por fax o por correo electrónico, la copia impresa original debe ser recibida dentro de cuatro días hábiles.

Si tiene una pregunta en cuanto a su solicitud, por favor comuníquese conmigo llamando al (956) 681-1020
                                                                                      (Número de Teléfono)

Secretario/a de Votación Anticipada

emailed
3/5/19.

district #3

05 45 245579

## Application for Ballot by Mail

**Last Name** FETTERS

**First Name** AGNES

**Middle Initial**

Contact Information (Optional)
c/o C. ALLEN

TX

City     State     ZIP Code

Date of birth 12/08/1942

Reason for Voting by Mail:
☑ 65 years of age or older

GBOV Voter is unable to sign
☒ Annual Application

☒ Republican Primary

Political Party Affiliation:
☒ Republican Primary

X Agnes R. Fetter     Date Feb 21 2019

SIGN HERE

X Roger D. Fetters
X C. Allen
C/O RN 26 H ST
TX 78501
HUSBAND
WITHOUT ASSISTANCE

1039

AW5-16
Prescribed by Secretary of State
Section 86.008(b), 86.0015 Texas Election Code
12/17

Hernandez, Aurora N.
VUID # 1053942135 SMD#1

NOTICE OF REJECTED APPLICATION FOR BALLOT BY MAIL

I have received and reviewed your application for a ballot by mail. I have determined that your application must be rejected for the following reason(s):

(Check as applicable)

_____ 1.  Your application was received earlier than the 60th day before an election held in January or February of the year following the year the ABBM was submitted.

_____ 2.  Your application was not properly delivered.

_____ 3.  Your application was received after the deadline to apply for a ballot by mail for the upcoming election.
(Check if appropriate:)
_____ However, since you indicated on the application that it was to be an Annual application for a ballot by mail, the application will be considered valid for other elections held this year and for which the application was submitted before the deadline.

_____ 4.  You indicate you are voting due to expected absence from the county, but the address to which your ballot is to be sent is not an address outside the county. When voting by mail on the grounds of expected absence from the county, the address to which your ballot is to be mailed <u>must</u> be outside the county.

_____ 5.  When voting by mail due to confinement in jail, the address to which your ballot is to be mailed must be that of the jail or a relative. Your application did not indicate either address.

_____ 6.  Your application was not signed.

_____ 7.  The witness who signed your application did not:
_____ (a)   indicate a relationship on your application;
_____ (b)   indicate that you were unable to make your mark in lieu of your signature; or
_____ (c)   provide his or her printed name or residence address.

_____ 8.  Your application did not indicate the reason you are entitled to vote by mail.

_____ 9.  For a primary election, you must indicate your party preference.
(Check if appropriate:)
_____ However, if you have submitted an Annual ABBM, you will receive ballots for other elections held this year <u>other</u> than the Primary or Runoff Election.

_____ 10.  Your residence address of registration was not provided on your application.

_____ 11.  Your application was received after the deadline for receiving an application for a ballot by mail.
The deadline for receiving the application was _____.
(Date)

(Check if appropriate)
_____ However, since you have requested a ballot for the run-off election, if one is to be held, your application is valid for that election.

_____ 12.  According to the records of the voter registrar, you are not currently registered to vote or your registration, if you have applied, will not be effective on or before election day.

_____ 13.  I could not determine the election for which you were applying for a ballot.

_____ 14.  Your application was initially submitted via fax or email, but an original hardcopy of the application was not received within four business days.

__X__ 15.  Other: <u>Your address is in District 1, the General Election is for Districts 4 & 5.</u>

If you wish to vote, it will be necessary for you to submit another application to me, and that application must be received by _____ *If new application is faxed or emailed, the original hardcopy must be received within four
(*Date)                                    business days.

If you have any questions regarding your application, please contact me at (956) 681-1020
(Phone Number)

_____
Early Voting Clerk

1040

AW5-16
Prescrito por el Secretario de Estado
Código Electoral de Texas Secs. 86.008(b), 86.0015
12/17

Hernandez, Aurora N.
VUID # 1053942135 SMD#1

### AVISO DE SOLICITUD RECHAZADA PARA RECIBIR UNA BOLETA POR CORREO

Su solicitud para recibir una boleta por correo postal fue recibida y analizada.  Hemos determinado que su solicitud debe ser rechazada por la siguiente razón:

(Marcar las que apliquen)

_____ 1.  Su solicitud fue recibida antes del 60° día antes de una elección celebrada en enero o febrero del año siguiente al año en que se presentó el ABBM ("ABBM" por sus siglas en Ingles).

_____ 2.  La solicitud no fue entregada de manera apropiada.

_____ 3.  Su solicitud fue recibida después de la fecha límite para aplicar para recibir una boleta por correo para esta elección. (Marque abajo si es apropiado).

_____ Sin embargo, ya que usted indico en la solicitud que su solicitud es una solicitud anual para votar por correo, la solicitud se considerará válida para las otras elecciones que sucedan este año y para las cuales su solicitud fue enviada antes de la fecha límite.

_____ 4.  Usted indico que desea votar por correo por que planea estar ausente del condado pero la dirección que usted proporciono para recibir su boleta no es una dirección fuera del condado.  Cuando usted aplica para votar por correo en base a que estará ausente del condado, la dirección a la cual usted recibirá su boleta debe estar ubicada fuera del condado.

_____ 5.  Si usted está encarcelado, para que pueda votar por correo es necesario que su boleta sea enviada directamente a la cárcel o al domicilio de algún familiar.  Su solicitud no indicó ninguna de estas direcciones.

_____ 6.  No firmó su solicitud.

_____ 7.  El testigo que firmó su solicitud no:
_____ (a)    indicó, en la solicitud, qué parentesco o tipo relación existe entre ustedes;
_____ (b)    indicó que además de no poder firmar, usted no puede poner su marca en la solicitud; o
_____ (c)    proporciono su nombre completo en letra de molde y su dirección residencial.

_____ 8.  No indicó la base de elegibilidad por la cual usted tiene derecho a votar por correo.

_____ 9.  Para las elecciones primarias, usted debe indicar su preferencia de partido político. (Marque abajo si es apropiado).

_____ Sin embargo, si usted envió una solicitud anual para votar por correo postal (Annual ABBM, por sus siglas en Ingles), usted recibirá las boletas para todas las demás elecciones oficiadas este año que no sean elecciones primarias o elecciones primarias de desempate.

_____ 10.  No proporciono la dirección residencial bajo la cual usted está registrado/a.

_____ 11.  Su solicitud fue recibida después de la fecha límite para recibir solicitudes para votar por correo postal. La fecha límite fue el ____ de _____, _____
                                                                (día)        (mes)        (año)

(Marque abajo si es apropiado)
_____ Sin embargo, ya que usted solicito una boleta para la elección de desempate, si una sucede, su solicitud es válida para esa elección.

_____ 12.  Los documentos del registro electoral indican que usted no está inscrito como votante y si ha solicitado dicha inscripción, ésta no entrará en vigor en o antes del Día de la Elección.

_____ 13.  No se pudo determinar las elecciones en las cuales usted desea votar por correo.

_____ 14.  Su solicitud fue inicialmente enviada por fax o correo electrónico, pero una copia impresa original de la solicitud no fue recibida dentro de los cuatro días hábiles.

__X__ 15.  Otro: Su domicilio es en el Distrito 1, la Elección General es para Distritos 4 y 5.

Si usted desea votar por correo, es necesario que envíe otra solicitud a esta oficina y su solicitud debe ser recibida por _____ (Fecha). *Si la nueva solicitud es enviada por fax o por correo electrónico, la copia impresa original debe ser recibida dentro de cuatro días hábiles.

Si tiene una pregunta en cuanto a su solicitud, por favor comuníquese conmigo llamando al  (956) 681-1020
                                                                                           (Número de Teléfono)

                                                                         Secretario/a de Votación Anticipada

# Application for Ballot by Mail

Prescribed by the Office of the Secretary of State of Texas A5-15 12/17

For Office Use Only
VUID #, County Election Precinct #,
Statement of Residence, etc.

(55) 01 - 155879

**1. Last Name** (Please print information): Hernandez
Suffix (Jr., Sr., III, etc)
**First Name:** Aurora
**Middle Initial:** N.

**2. Residence Address:** See back of this application for instructions.
2100 Rice Avenue
**City:** McAllen
**State:** TX
**ZIP Code:** 78504

**3. Mail my ballot to:** If mailing address differs from residence address, please complete Box #7.
2100 Rice Avenue
**City:** McAllen
**State:** TX
**ZIP Code:** 78504

**4. Date of Birth (mm/dd/yyyy)** (Optional): 0 6 / 1 8 / 1 9 5 1

**Contact Information** (Optional)*
Please list phone number and/or email address:
* Used in case our office has questions.
1 - 956 - 587 - 1948

**5. Reason for Voting by Mail:**
☒ 65 years of age or older (Complete Box #6a)
☐ Disability (Complete Box #6a)
☐ Expected absence from the county (Complete Box #6b and Box #8)
You will receive a ballot for the upcoming election only.
☐ Confinement in jail (Complete Box #6b)
You will receive a ballot for the upcoming election only.

**6a. ONLY Voters 65 Years of Age or Older or Voters with a Disability:**
If applying for one election, select appropriate box.
If applying once for elections in the calendar year, select "Annual Application."
☒ Annual Application

Uniform and Other Elections:
☒ May Election
☒ November Election
☐ Other _____

Primary Elections:
You must declare one political party to vote in a primary.
☒ Democratic Primary
☐ Republican Primary
☐ Any Resulting Runoff

**6b. ONLY Voters Absent from County or Voters Confined in Jail:**
You may only apply for a ballot by mail for one election, and any resulting runoff.
Please select the appropriate box.

Uniform and Other Elections:
☐ May Election
☐ November Election
☐ Other _____

Primary Elections:
You must declare one political party to vote in a primary:
☐ Democratic Primary
☐ Republican Primary
☐ Any Resulting Runoff

**7.** If you are requesting that this ballot be mailed to a different address (other than residence), indicate where the ballot will be mailed. See reverse for instructions.
☐ Mailing Address as listed on my voter registration certificate
☐ Nursing home, assisted living facility, or long term care facility
☐ Hospital
☐ Retirement Center
☐ Address of the jail
☐ Relative; relationship _____
☐ Address outside the county (see Box #8)

**8.** If you selected "expected absence from the county," see reverse for instructions.

_____ _____ - _____
Date of return to residence address

Date you can begin to receive mail at this address

**9.** Voters may submit a completed, signed, and scanned application to the Early Voting Clerk at:
_____
(early voting clerk's e-mail address)
_____
(early voting clerk's fax)

NOTE: If you fax or e-mail this form, please be aware that you must also mail this form to the early voting clerk within four business days. See "Submitting Application" on the back of this form for additional information.

**10.** "I certify that the information given in this application is true, and I understand that giving false information in this application is a crime."

**X** Aurora Ning Hernandez   **Date:** 3/8/2019

REC'D MAR 20 2019

**SIGN HERE**
If applicant is unable to sign or make a mark in the presence of a witness, the witness shall complete Box #11.

**11.** If someone helped you to complete this form or mails the form for you, then that person must complete the sections below.

See back for Witness and Assistant definitions.

If the applicant is unable to mark Box #10 and you are acting as a Witness to that fact, please check this box and sign below. ☐

If you assisted the applicant in completing this application by mailing/emailing or e-mailed/mailed or faxed the application on behalf of the applicant, please check this box as an Assistant and sign below. ☐
If you assisted the applicant in completing this application, please check both boxes. Failure to complete this information is a Class A misdemeanor if signature was witnessed or applicant was assisted in completing the application.

**X** _____
Signature of Witness/Assistant

**X** _____
Printed Name of Witness/Assistant

Street Address _____   Apt Number (if applicable) _____
City _____

State _____   ZIP Code _____

Witness' Relationship to Applicant
(Refer to instructions on back for clarification)

*If you are acting as Witness and Assistant, please check both boxes.

Esto formulario está disponible en Español. Para conseguir la versión en Español favor de llamar sin cargo al 1.800.252.8683 a la oficina del Secretario de Estado de Texas, o a la Secretaría de Votación por Adelanto de su condado.

1042

# EXHIBIT L

# Rejected Ballots

DIST # 1 — (3) Rejected BALLOTS
WILSON, IRMA MARMOLEJO
RIVERA, LILIA DIANA
HINOJOSA, MARY O

DIST. # 2 — (2) Rejected BALLOTS
DUTREMAINE, TERESA
DUTREMAINE, BRIAN A.

DIST. # 3 — (1) Reject BALLOT
GUILLON, Dolores

DIST. # 4 — (2) Rejected BALLOTS
SALINAS, FELICITAS
GARZA, TROVINO GUADALUPE

DIST. # 5 — (2) Rejected BALLOT
MARIA SALAS
Adela ZAPATA

DIST. # 6 — (3) Rejected BALLOTS
Leona Diener
NYE-SPARKS DONNA JO
Maldonado MARTINA

(13) Total Rejected

AW5-42
Prescribed by Secretary of State
Sec. 87.0431, Texas Election Code
3/07

## NOTICE OF REJECTED BALLOT

This is to serve as notice that your ballot for the _May 6th Bond_ Election was rejected by the early voting ballot board and was not counted.

Name of Voter _Irma Marmolejo Wilson_

VUID Number _105292639b_

Reason for Rejection: (Check As Appropriate)

_✓_      1)      Certificate on carrier envelope was not properly executed.

          _✓_ You failed to sign your signature or make your mark.

          _____ The witness failed to indicate on the envelope that you could not make a mark.

          _____ The assistant or witness failed to print their name.

          _____ The assistant or witness failed to sign their name.

          _____ The residence address of the assistant or witness was not given.

_____      2)      It was determined that the signature on the application for ballot by mail and carrier envelope was not signed by the same person.

_____      3)      Application for ballot by mail did not state a legal ground for voting by mail.

_____      4)      Voter registration records indicated you did not have an effective registration for this election.

_____      5)      Address to which ballot was mailed was not outside the county.  Voting early by mail due to expected absence from the county requires balloting materials be mailed to an address outside the county.

_____      6)      The residence address on the statement of residence is not located in the political subdivision conducting the election.

_____      7)      The mailing address on the application for ballot by mail did not match your voter registration address nor did the mailing address match any addresses provided on your statement of residence.  Since you did not indicate on your application for a ballot by mail that you were having your ballot mailed to a hospital, retirement center, long term care facility, nursing home, jail, or a relative, your ballot was rejected.

_____      8)      The statement of residence was not included in the carrier envelope.

_____      9)      No identification was included with your mail ballot.

_____      10)      Other:

Signature of Early Voting Ballot Board Judge

_5-7-2018_
Date

**IRMA WILSON**
**11512 N 29TH ST**
**MCALLEN, TX  78504**

Mcl

*105292639.6 A*

# Ballot By Mail Request Form

Registration Address
Irma Marmolejo Wilson
11512 N 29th St
McAllen, TX 78504

**OFFICE USE ONLY**
Voter ID: 1052926396.
Precinct 54

01-31-2018



I am over 65 years of age and requesting an **Annual Ballot By Mail** to receive a ballot for all elections in 2018, including any **Democratic Party** elections, local elections, and the November 2018 General Election. Mail my ballots to the address indicated above (unless noted otherwise below).

SIGNATURE(FIRMA) _Irma M. Wilson_    REC'D JAN 31 2018

*Must be signed. Do not print. If you cannot sign, make a mark and have witness fill out the box to the right.*

I certify that the information given in this application is true, and I understand that giving false information in this application is a crime.

If you are not able to receive ballots at the address where you are registered to vote, the ballot may be mailed to an alternate address. This address may only be one of the following. Check which address you are using:

☐ A hospital, nursing home, retirement center or other long-term care facility.
☐ The address of a person related to applicant. Relationship: _____
☑ Mailing Address listed on applicant's voter registration card.

Mailing Address
Irma Wilson
11512 N 29th St
McAllen, TX 78504

Address where ballot
should be sent, if different:

_____
_____
_____
_____

**FOR WITNESS (Only if Applicant Cannot Sign):**
If applicant is unable to make mark,
Witness shall check here: ☐
Witness Name _____
Witness Address _____

Relationship to Applicant *(Check One)*
☐ spouse ☐ child ☐ reside at same address as applicant
☐ other: _____
Witness Signature _____
Date _____

If you are unable to sign your name (due to a physical disability or illiteracy), the application may be signed for you by a Witness. You must affix your mark to the application or, if you are unable to make a mark, then the Witness must sign and provide his or her printed name and residence address. Unless the Witness is a close relative of the voter (parent, grandparent, spouse, child or sibling), it is a Class B misdemeanor for a person to witness more than one application in a calendar year.

**WARNING:** (1) Knowingly possessing another person's ballot or carrier envelope may be a crime unless you provide your signature, printed name and address (2) A person commits an offense if the person compensates another person or receives compensation for depositing a carrier envelope in the mail as part of a scheme in which the person is compensated based on the number of carrier envelopes deposited. For additional information on offenses related to carrier envelopes, please see the "Information About Returning your Carrier Envelope," included with the materials sent to you with your ballot.

**ADVERTENCIA:** (1) El acto de poseer consientemente la boleta o el sobre de envío de otra persona puede ser un delito a menos de que usted proporcione su firma, nombre impreso, y su dirección. (2) Una persona comete un delito si recompensa o recibe compensación a cambio de depositar el sobre de envío en el correo como parte de un plan en el cual la persona es recompensada en base al número de sobres de envío depositados. Para obtener información adicional sobre los delitos relacionados con los sobres de envío, por favor vea la "Información Sobre Cómo Devolver su Sobre de Envío," incluido con los materiales enviados a usted con su boleta.

5-22 – Prescribed by Secretary of State – 12/17
Section 86.013, Texas Election Code 173704

WILSON, IRMA MARMOLEJO
VUID# 105292639G
DISTRICT #1
BOND ELECTION 05/05/18

Date 5-2-18

CARRIER ENVELOPE FOR EARLY VOTING BALLOT
(SOBRE DE ENVÍO PARA LA BOLETA DE VOTACIÓN ANTICIPADA)

Perla Lara, City Secretary
Early Voting Clerk (Secretario de Votación Anticipada)

P.O. Box 220/1300 Houston Ave
Mailing Address (Dirección Postal)

McAllen                    Texas        78505-0220
City (Ciudad)                           Zip (Código Postal)

78505-9999

Case 5:19-cv-00963-OLG   Document 84   Filed 07/30/20   Page 1048 of 2561

**Instructions:** This carrier envelope must be sealed and signed by the voter before it leaves the voter's hands. Do not sign this envelope unless the ballot has been marked by you or at your direction. This carrier envelope may not be used to return more than one voter's ballot. For instructions on the methods and deadlines to deliver this carrier envelope, see the "Information About Returning Your Carrier Envelope," included with the materials sent to you with your ballot. (Instrucciones al Votante: Selle este sobre y después, firme su nombre en el espacio proporcionado abajo. Este sobre debe de ser sellado y firmado por el votante antes de que el votante lo entregue. No firme este sobre a menos de que la boleta haya sido llenada por usted o bajo su dirección. Este sobre de envío no debe ser utilizado para entregar la boleta de más de un solo votante. Para obtener instrucciones sobre los métodos y plazos para entregar este sobre de envío, vea la "Información Sobre Cómo Devolver su Sobre de Envío," incluido con los materiales enviados a usted con su boleta.)

I certify that the enclosed ballot expresses my wishes independent of any dictation or undue persuasion by any person. (Certifico que la boleta adjunta expresa mis deseos independientemente de ningún dictado o persuasión indebida por parte de cualquier persona.)

**SEAL ENVELOPE AND SIGN OVER SEALED FLAP.**
**(SELLE EL SOBRE Y FIRME ENCIMA DE SOLAPA DEL SOBRE)**

➡️

┌─────────────────────────────────────────┐
│ **SIGNATURE OR MARK OF VOTER (FIRMA O MARCA DEL VOTANTE)** │
│                                           │
│   X _____      │
└─────────────────────────────────────────┘

**Instructions to Person Assisting Voter:** I swear (or affirm) that I will not suggest, by word, sign, or gesture, how the voter should vote; I will confine my assistance to answering the voter's questions, to stating propositions on the ballot, and to naming candidates and, if listed, their political parties; I will prepare the voter's ballot as the voter directs; and I am not the voter's employer, an agent of the voter's employer, or an officer or agent of a labor union to which the voter belongs. (Juramento de la Persona Asistiendo al Votante: Juro (o afirmo) que no le sugeriré al votante, con palabras, señales, o gestos, la manera en la cual el votante debe votar; limitaré mi asistencia a responder las preguntas del votante, leer proposiciones en la boleta, nombrar a los candidatos, y si es mencionados, su partido político; prepararé la boleta del votante de acuerdo a sus instrucciones; y yo no soy el empleador del votante, un agente del empleador del votante, o un oficial o agente de un sindicato al cual el votante pertenece.)

**Instructions to Witness:** (You are serving as a witness for _____ (name of voter). You must complete the section below if you witness the mark of the voter, or if the voter cannot make a mark. If the voter cannot make a mark, check here ___. (Instrucciones al Testigo: Usted está fungiendo como testigo para _____ (nombre del votante). Usted debe llenar la siguiente sección abajo si usted fue testigo de que el votante firmó, o de que el votante no puede firmar. Si el votante no puede firmar, marque aquí ___.)

**Instructions to Person Depositing Carrier Envelope in Mail or to Common or Contract Carrier:** If you are assisting a voter by depositing the carrier envelope in the mail or with a common or contract carrier, you must complete the section below. (Instrucciones a la Persona Quien Deposita el Sobre de Envío en el Correo o Entrega al Transportista Público Comercial: Si usted asistirá al votante a depositar el sobre de envío en el correo o con un transportista público o comercial, usted debe llenar la sección que aparece abajo.)

If you are an assistant or witness, check the appropriate box below and provide information: (Si usted es un asistente o testigo, marque la casilla correcta y proporcione su información.)

| | | | |
|---|---|---|---|
| ☐ Assistant/ Asistente | | | |
| ☐ Witness/ Testigo | Signature (Firma) | Printed Name (Nombre impreso) | Street Address (Domicilio residencial) |
| ☐ Assistant/ Asistente | | | |
| ☐ Witness/ Testigo | Signature (Firma) | Printed Name (Nombre impreso) | Street Address (Domicilio residencial) |

**Bond Election**

Completed by Early Voting Clerk: Name of Election (Nombre de Elección): _____   Date of Election (Fecha de Elección): 5/5/18

Name of Voter (Nombre del votante): _____

1048

AW5-42
Prescribed by Secretary of State
Sec. 87.0431, Texas Election Code
3/07

## NOTICE OF REJECTED BALLOT

This is to serve as notice that your ballot for the _May 5th Bond_ Election was rejected by the early voting ballot board and was not counted.

Name of Voter _Lilia Diana Rivera_

VUID Number _1201038577_

Reason for Rejection: (Check As Appropriate)

_____  1)  Certificate on carrier envelope was not properly executed.
                _____ You failed to sign your signature or make your mark.
                _____ The witness failed to indicate on the envelope that you could not make a mark.
                _____ The assistant or witness failed to print their name.
                _____ The assistant or witness failed to sign their name.
                _____ The residence address of the assistant or witness was not given.

_____  2)  It was determined that the signature on the application for ballot by mail and carrier envelope was not signed by the same person.

_____  3)  Application for ballot by mail did not state a legal ground for voting by mail.

_____  4)  Voter registration records indicated you did not have an effective registration for this election.

_____  5)  Address to which ballot was mailed was not outside the county.  Voting early by mail due to expected absence from the county requires balloting materials be mailed to an address outside the county.

_____  6)  The residence address on the statement of residence is not located in the political subdivision conducting the election.

_____  7)  The mailing address on the application for ballot by mail did not match your voter registration address nor did the mailing address match any addresses provided on your statement of residence.  Since you did not indicate on your application for a ballot by mail that you were having your ballot mailed to a hospital, retirement center, long term care facility, nursing home, jail, or a relative, your ballot was rejected.

_____  8)  The statement of residence was not included in the carrier envelope.

_____  9)  No identification was included with your mail ballot.

_____  10) Other: _Signatures on application and Carrier envelope did not match._

Signature of Early Voting Ballot Board Judge

_5/7/2018_
Date

**LILIA DIANA RIVERA
84 SUNRISE RD
RIO GRANDE CITY, TX  78582**

# Ballot By Mail Request Form

**Registration Address**
Lilia Diana Rivera
7300 N 17th St
McAllen, TX 78504

**OFFICE USE ONLY**
Voter ID: 1201038517
Precinct 341

I am over 65 years of age and requesting an **Annual Ballot By Mail** to receive a ballot for all elections in 2018, including any **Democratic Party** elections, local elections, and the November 2018 General Election. Mail my ballots to the address indicated above (unless noted otherwise below).

**SIGNATURE (FIRMA)** _____

*Must be signed. Do not print. If you cannot sign, make a mark and have a witness fill out the box to the right.*

I certify that the information given in this application is true, and I understand that giving false information in this application is a crime.

If you are not able to receive ballots at the address where you are registered to vote, the ballot may be mailed to an alternate address. This address may only be one of the following. Check which address you are using:

☐ A hospital, nursing home, retirement center or other long-term care facility.
☐ The address of a person related to applicant. Relationship: _____
☐ Mailing Address listed on applicant's voter registration card.

**Mailing Address**
Lilia Rivera
84 Sunrise Rd
Rio Grande City, TX 78582

**Address where ballot should be sent, if different:**
_____
_____
_____

**FOR WITNESS (Only If Applicant Cannot Sign):**
If applicant is unable to make mark,
Witness shall check here: ☐
Witness Name _____
Witness Address _____

**Relationship to Applicant** *(Check One)*
☐ spouse ☐ child ☐ reside at same address as applicant
☐ other: _____
Witness Signature _____
Date _____

If you are unable to sign your name (due to a physical disability or illiteracy) the application may be signed for you by a Witness. You must affix your mark to the application and, or, if you are unable to make a mark, then the Witness must sign and provide his or her printed name and residence address. Unless the Witness is a close relative of the voter (parent, grandparent, spouse, child or sibling) it is a Class B misdemeanor for a person to witness more than one application in a calendar year.

721

Doc ID: 21620505   Page: 1 of 1.

**WARNING:** (1) Knowingly possessing another person's ballot or carrier envelope may be a crime unless you provide your signature, printed name and address (2) A person commits an offense if the person compensates another person or receives compensation for depositing a carrier envelope in the mail as part of a scheme in which the person is compensated based on the number of carrier envelopes deposited. For additional information on offenses related to carrier envelopes, please see the "Information About Returning your Carrier Envelope," included with the materials sent to you with your ballot.

**ADVERTENCIA:** (1) El acto de poseer conscientemente la boleta o el sobre de envío de otra persona puede ser un delito a menos de que usted proporcione su firma, nombre impreso, y su dirección. (2) Una persona comete un delito si recompensa o recibe compensación a cambio de depositar el sobre de envío en el correo como parte de un plan en el cual la persona es recompensada en base al número de sobres de envío depositados. Para obtener información adicional sobre los delitos relacionados con los sobres de envío, por favor vea la "Información Sobre Cómo Devolver su Sobre de Envío," incluido con los materiales enviados a usted con su boleta.

5-22 — Prescribed by Secretary of State – 12/17
Section 86.013, Texas Election Code 173704

RIVERA, LILIA DIANA
VUID# 1201038517
DISTRICT #1
BOND ELECTION 05/05/18

Ctty Secretary's Office

Date 5-2-18

MCALLEN TX 785...
01 MAY 2018 PM 2 T...

OFFICIAL ELECTION MAIL
Authorized by the U.S. Postal Service

RECEIVED
MAY 02 2018
MCALLEN MAIL CENTER

**CARRIER ENVELOPE FOR EARLY VOTING BALLOT**
*(SOBRE DE ENVÍO PARA LA BOLETA DE VOTACIÓN ANTICIPADA)*

Early Voting Clerk *(Secretario de Votación Anticipada)*
**Perla Lara, City Secretary**

**P.O. Box 220/1300 Houston Ave**

Mailing Address *(Dirección Postal)*

**McAllen** _____ Texas **78505-0220**
City *(Ciudad)*                Zip *(Código Postal)*

78505-0220

**Instructions:** This carrier envelope must be sealed and signed by the voter before it leaves the voter's hands. Do not sign this envelope unless the ballot has been marked by you or at your direction. This carrier envelope may not be used to return more than one voter's ballot. For instructions on the methods and deadlines to deliver this carrier envelope, see the "Information About Returning your Carrier Envelope," included with the materials sent to you with your ballot. (Instrucciones al Votante: Selle este sobre y después firme su nombre en el espacio proporcionado abajo. Este sobre debe de ser sellado y firmado por el votante antes de que el votante lo entregue. No firme este sobre a menos de que la boleta haya sido llenada por usted o bajo su dirección. Este sobre de envío no debe ser utilizado para entregar la boleta de más de un solo votante. Para obtener instrucciones sobre los métodos y plazos para entregar este sobre de envío, vea la "Información Sobre Cómo Devolver su Sobre de Envío," incluido con los materiales enviados a usted con su boleta.)

I certify that the enclosed ballot expresses my wishes independent of any dictation or undue persuasion by any person. (Certifico que la boleta adjunta expresa mis deseos independientemente de ningún dictado o persuasión indebida por parte de cualquier persona.)

**SEAL ENVELOPE AND SIGN OVER SEALED FLAP**
[SELLE EL SOBRE Y FIRME ENCIMA DE SOLAPA DEL SOBRE]

X _____

**SIGNATURE OR MARK OF VOTER (FIRMA O MARCA DEL VOTANTE)**

**Oath of Person Assisting Voter:** I swear (or affirm) that I will not suggest, by word, sign, or gesture, how the voter should vote; I will confine my assistance to answering the voter's questions, to stating propositions on the ballot, and to naming candidates and, if listed, their political parties; I will prepare the voter's ballot as the voter directs; and I am not the voter's employer, an agent of the voter's employer, or an officer or agent of a labor union to which the voter belongs. (Juramento de la Persona Asistiendo al Votante: Juro (o afirmo) que no le sugeriré con palabras, señales, o gestos, la manera en la cual el votante debe votar; limitaré mi asistencia a responder las preguntas del votante, leer propuestas en la boleta, nombrar a los candidatos, y si es mencionado, su partido político; prepararé la boleta del votante de acuerdo a sus instrucciones; y yo no soy el empleador del votante, un agente del empleador del votante, o un oficial o agente de un sindicato al cual el votante pertenece.)

**Instructions to Witness:** You are serving as a witness for _____ (name of voter). You must complete the section below if you witness the mark of the voter, or if the voter cannot make a mark. If the voter cannot make a mark, check here _____. (Instrucciones al Testigo: Usted está fungiendo como testigo para _____ (nombre del votante). Usted debe llenar la siguiente sección abajo si usted fue testigo de que el votante firmó, o de que el votante no puede firmar. Si el votante no puede firmar, marque sus iniciales aquí _____.)

**Instructions to Person Depositing Carrier Envelope in Mail or to Common or Contract Carrier:** If you are assisting a voter by depositing the carrier envelope in the mail or with a common or contract carrier, you must complete the section below. (Instrucciones a la Persona Quien Deposite el Sobre de Envío en el Correo o Entregue al Transportista Público Comercial: Si usted asistía al votante a depositar el sobre de envío en el correo o con un transportista público o comercial, usted debe llenar la sección que aparece abajo.)

**Instructions to Assistant:** A voter may only be assisted with reading or marking the ballot if they have a physical disability that renders them unable to write or see, or have an inability to read the language in which the ballot is written. If you are assisting the voter, you must read the oath and complete the section below, before assisting the voter. (Instrucciones al Asistente: Un votante puede recibir ayuda para leer o llenar la boleta solamente si el votante tiene una discapacidad física la cual le impide escribir o ver, o si no tiene la habilidad de leer el lenguaje en el cual la boleta está escrita. Si usted le proporcionará ayuda a un votante, usted debe leer el juramento y llenar la siguiente sección abajo, antes de asistir al votante.)

| | | | |
|---|---|---|---|
| ☐ Witness/ Testigo ☐ Assistant/ Asistente | Signature (Firma) | Printed Name (Nombre impreso) | Street Address (Domicilio residencial) |
| ☐ Witness/ Testigo ☐ Assistant/ Asistente | Signature (Firma) | Printed Name (Nombre impreso) | Street Address (Domicilio residencial) |

If you are an assistant or witness, check the appropriate box below and provide information: (Si usted es un asistente o testigo, marque la casilla correcta y proporcione su información):

Completed by Early Voting Clerk: Name of Election (Nombre de Elección): _____ Date of Election (Fecha de Elección): 5518

**Bond Election**

Name of Voter (Nombre del votante): _____

AWS-42
Prescribed by Secretary of State
Sec. 87.0431, Texas Election Code
3/07

## NOTICE OF REJECTED BALLOT

This is to serve as notice that your ballot for the _May 5th Bond_ Election was rejected by the early voting ballot board and was not counted.

Name of Voter _Mary O Hinojosa_

VUID Number _1055264090_

Reason for Rejection: (Check As Appropriate)

_____  1)  Certificate on carrier envelope was not properly executed.

      _____ You failed to sign your signature or make your mark.

      _____ The witness failed to indicate on the envelope that you could not make a mark.

      _____ The assistant or witness failed to print their name.

      _____ The assistant or witness failed to sign their name.

      _____ The residence address of the assistant or witness was not given.

✓  2)  It was determined that the signature on the application for ballot by mail and carrier envelope was not signed by the same person.

_____  3)  Application for ballot by mail did not state a legal ground for voting by mail.

_____  4)  Voter registration records indicated you did not have an effective registration for this election.

_____  5)  Address to which ballot was mailed was not outside the county.  Voting early by mail due to expected absence from the county requires balloting materials be mailed to an address outside the county.

_____  6)  The residence address on the statement of residence is not located in the political subdivision conducting the election.

_____  7)  The mailing address on the application for ballot by mail did not match your voter registration address nor did the mailing address match any addresses provided on your statement of residence.  Since you did not indicate on your application for a ballot by mail that you were having your ballot mailed to a hospital, retirement center, long term care facility, nursing home, jail, or a relative, your ballot was rejected.

_____  8)  The statement of residence was not included in the carrier envelope.

_____  9)  No identification was included with your mail ballot.

_____  10) Other: _____

_____

Signature of Early Voting Ballot Board Judge

_5-7-2018_

Date

**MARY HINOJOSA**
**501 BLUEBIRD AVE**
**MCALLEN, TX  78504**

1055264090 A MCI

# Ballot By Mail Request Form

Registration Address
Mary O Hinojosa
501 Bluebird Ave
McAllen, TX 78504

**OFFICE USE ONLY**
Voter ID: 1055264090
Precinct 62    236354

I am over 65 years of age and requesting an **Annual Ballot By Mail** to receive a ballot for all elections in 2018, including any **Democratic Party** elections, (local elections, and the November 2018 General Election. Mail my ballots to the address indicated above (unless noted otherwise below).

RECD JAN 31 2018



SIGNATURE(FIRMA) _____
*Must be signed. Do not print. If you cannot sign, make a mark and have witness fill out the box to the right.*

I certify that the information given in this application is true, and I understand that giving false information in this application is a crime.

If you are not able to receive ballots at the address where you are registered to vote, the ballot may be mailed to an alternate address. This address may only be one of the following. Check which address you are using:
☐ A hospital, nursing home, retirement center or other long-term care facility.
☐ The address of a person related to applicant. Relationship:_____
☐ Mailing Address listed on applicant's voter registration card.

Mailing Address
Mary Hinojosa
501 Bluebird Ave
McAllen, TX 78504

Address where ballot
should be sent, if different:

_____
_____
_____
_____

**FOR WITNESS (Only if Applicant Cannot Sign):**
If applicant is unable to make mark,
Witness shall check here: ☐
Witness Name _____
Witness Address _____

Relationship to Applicant (Check One)
☐ spouse ☐ child ☐ reside at same address as applicant
☐ other: _____
Witness Signature _____
Date _____

If you are unable to sign your name (due to a physical disability or illiteracy) the application may be signed for you by a Witness. You must affix your mark to the application or, if you are unable to make a mark, then the Witness must sign and provide his or her printed name and residence address. Unless the Witness is a close relative of the voter (parent, grandparent, spouse, child or sibling), it is a Class II misdemeanor for a person to witness more than one application in a calendar year.

712

Doc ID: 21628045   Page: 1 of 1.

WARNING: (1) Knowingly possessing another person's ballot or carrier envelope may be a crime unless you provide your signature, printed name and address (2) A person commits an offense if the person compensates another person or receives compensation for depositing a carrier envelope in the mail as part of a scheme in which the person is compensated based on the number of carrier envelopes deposited. For additional information on offenses related to carrier envelopes, please see the "Information About Returning your Carrier Envelope," included with the materials sent to you with your ballot.

ADVERTENCIA: (1) El acto de poseer conscientemente la boleta o el sobre de envío de otra persona puede ser un delito a menos de que usted proporcione su firma, nombre impreso, y su dirección. (2) Una persona comete un delito si recompensa o recibe compensación a cambio de depositar el sobre de envío en el correo como parte de un plan en el cual la persona es recompensada en base al número de sobres de envío depositados. Para obtener información adicional sobre los delitos relacionados con los sobres de envío, por favor vea la "Información Sobre Cómo Devolver su Sobre de Envío," incluido con los materiales enviados a usted con su boleta.

5-22 – Prescribed by Secretary of State – 12/27
Section 86.013, Texas Election Code 173/704

HINOJOSA, MARY O
VUID# 1055264090
DISTRICT #1
BOND ELECTION 05/05/18

McALLEN TX 785

CARRIER ENVELOPE FOR EARLY VOTING BALLOT
(SOBRE DE ENVÍO PARA LA BOLETA DE VOTACIÓN ANTICIPADA)

Peña Lara, City Secretary

Early Voting Clerk (Secretario de Votación Anticipada)
P.O. Box 220/1300 Houston Ave

Mailing Address (Dirección Postal)
McAllen

City (Ciudad)                          Texas 78505-0220
                                        Zip (Código Postal)

*OFFICIAL ELECTION MAIL*
Authorized by the U.S. Postal Service

City Secretary's Office
Date 4/26/18

RECEIVED
APR 26 2018
CITY OF McALLEN
MAIL CENTER

1055

**Bond Election**

**SIGNATURE OR MARK OF VOTER (FIRMA O MARCA DEL VOTANTE)**

X _Mel. Ce_

**SEAL ENVELOPE AND SIGN OVER SEALED FLAP**
**(SELLE EL SOBRE Y FIRME ENCIMA DE SOLAPA DEL SOBRE)**

I certify that the enclosed ballot expresses my wishes independent of any dictation or unique persuasion by any person. (Certifico que la boleta adjunta expresa mis deseos independientemente de ningún dictado o persuasión indebida por parte de cualquier persona.)

**Instructions to Assistant:** A voter may only be assisted with reading or marking the ballot if they have a physical disability that renders them unable to write or see, or have an inability to read the language in which the ballot is written; if you are assisting the voter, you must read the oath and complete the section below, before assisting the voter. (Instrucciones al Asistente: Un votante puede recibir ayuda para leer o llenar la boleta solamente si el votante tiene una discapacidad física la cual le impide escribir o ver, o si no tiene la habilidad de leer el lenguaje en el cual la boleta está escrita. Si usted le proporciona ayuda a un votante, usted debe leer el juramento y llenar la siguiente sección abajo, antes de asistir al votante.)

**Oath of Person Assisting Voter:** I swear (or affirm) that: I will not suggest, by word, sign, or gesture, how the voter should vote; I will confine my assistance to answering the voter's questions, to stating propositions on the ballot, and to naming candidates and, if listed, their political parties; I will prepare the voter's ballot as the voter directs; and I am not the voter's employer, an agent of the voter's employer, or an officer or agent of a labor union to which the voter belongs. (Juramento de la Persona Asistiendo al Votante: Juro (O afirmo) que no le sugerí con palabras, señales, o gestos, la manera en la cual el votante debe votar; limitaré mi asistencia a responder las preguntas del votante, leer propuestas en la boleta, nombrar a los candidatos, y si es mencionado, su partido político; prepararé la boleta del votante de acuerdo a sus instrucciones; y yo no soy el empleador del votante, un agente del empleador del votante, o un oficial o agente de un sindicato al cual el votante pertenece.)

**Instructions to Witness:** You are serving as a witness for _____ (name of voter). You must complete the section below. If you witness the mark of the voter, or, if the voter cannot make a mark. If the voter cannot make a mark, check here _____ (Instrucciones al Testigo: Usted está fungiendo como testigo para _____ (nombre del votante). Usted debe llenar la siguiente sección abajo. Si usted fue testigo de que el votante firmó, o de que el votante no puede firmar. Si una boleta no puede firmar, marque sus iniciales aquí ____)

**Instructions to Person Depositing Carrier Envelope in Mail or to Common or Contract Carrier:** If you are assisting a voter by depositing the carrier envelope in the mail or with a common or contract carrier, you must complete the section below. (Instrucciones a la Persona Quien Deposita el Sobre de Envío en el Correo o Entrega al Transportista Público o Comercial: Si usted asiste a votante a depositar el sobre de envío en el correo o con un transportista público o comercial, usted debe llenar la sección que aparece abajo.)

If you are an assistant or witness, check the appropriate box below and provide information: (Si usted es un asistente o testigo, marque la casilla correcta y proporcione su información):

☐ Assistant/
   Asistente

☐ Witness/
   Testigo

Signature (Firma) _____

Printed Name (Nombre impreso) _____

Street Address (Domicilio residencial) _____

☐ Assistant/
   Asistente

☐ Witness/
   Testigo

Signature (Firma) _____

Printed Name (Nombre impreso) _____

Street Address (Domicilio residencial) _____

Completed by Early Voting Clerk: Name of Election (Nombre de Elección):

Name of Voter (Nombre del votante): _____

Date of Election (Fecha de Elección): 5/5/18

1056

AW5-42
Prescribed by Secretary of State
Sec. 87.0431, Texas Election Code
3/07

## NOTICE OF REJECTED BALLOT

This is to serve as notice that your ballot for the __05/05/2018 - BOND__ Election was rejected by the early voting ballot board and was not counted.

Name of Voter _Teresa Dutremaine_

VUID Number_6053908573_

Reason for Rejection: (Check As Appropriate)

✓     1)    Certificate on carrier envelope was not properly executed.
             ✓ You failed to sign your signature or make your mark.
             _____ The witness failed to indicate on the envelope that you could not make a mark.
             _____ The assistant or witness failed to print their name.
             _____ The assistant or witness failed to sign their name.
             _____ The residence address of the assistant or witness was not given.

_____    2)    It was determined that the signature on the application for ballot by mail and carrier envelope was not signed by the same person.

_____    3)    Application for ballot by mail did not state a legal ground for voting by mail.

_____    4)    Voter registration records indicated you did not have an effective registration for this election.

_____    5)    Address to which ballot was mailed was not outside the county. Voting early by mail due to expected absence from the county requires balloting materials be mailed to an address outside the county.

_____    6)    The residence address on the statement of residence is not located in the political subdivision conducting the election.

_____    7)    The mailing address on the application for ballot by mail did not match your voter registration address nor did the mailing address match any addresses provided on your statement of residence. Since you did not indicate on your application for a ballot by mail that you were having your ballot mailed to a hospital, retirement center, long term care facility, nursing home, jail, or a relative, your ballot was rejected.

_____    8)    The statement of residence was not included in the carrier envelope.

_____    9)    No identification was included with your mail ballot.

_____    10)   Other: _____

_____
Signature of Early Voting Ballot Board Judge

_5 - 7 - 2018_
Date

**TERESA J. DUTREMAINE**
**3604 QUAIL AVE**
**MCALLEN, TX  78504**

1053908513   A

MC2

## APPLICATION FOR BALLOT BY MAIL - 2018

For Official Use Only.
VUID #, County Election Precinct #,
Statement of Residence, etc.

1053908513

2701-18778l

**1** Last Name (Please print information)
Dutremaine

Suffix (Jr., Sr., II, III)

First Name
Teresa

Middle Initial
J.

**2** Residence Address: See list of ID's application for instructions.
3604 Quail Ave

City
McAllen

Zip Code
78504

**3** Mail my ballot to: If mailing address other than residence address, please complete Box # 1.
3604 Quail Ave

City
McAllen

State
TX

Zip Code
78504

**4** Date of Birth (mm/dd/yyyy) (Optional)
0 1 / 1 4 / 1 9 4 7

**5** Reason for Voting by Mail:
☑ 65 years of age or older (Complete Box #8)

FEB 14 2018

**7** ONLY Voters 65 Years of Age or Older or Voters with a Disability:
If applying for one election, select appropriate box.
If applying once for elections in the calendar year,
select "Annual Application."

☐ Annual Application

Uniform and Other Election:
☐ May Election
☐ November Election
☐ Other

Primary Election:
You must select one option per the rule of a party.
☐ Democratic Primary
☐ Republican Primary
☐ Any Resulting Runoff

**8** If you are requesting the ballot be mailed to
a different address (other than residence),
indicate where the ballot will be mailed.
☐ Nursing home or long term care center
☐ Hospital
☐ Retirement center
☐ Address of facility
☐ Relative, relationship
☐ Address outside the county

**6** "I certify that the information given in this application is true, and I understand that giving false information in this application is a crime."

X _Teresa J. Dutremaine_

SIGN HERE

Date 2/10/18

DUTREMAINE, TERESA
VUID# 1053908513
DISTRICT #2
BOND ELECTION 05/05/18

**WARNING:** (1) Knowingly possessing another person's ballot or carrier envelope may be a crime unless you provide your signature, printed name and address (2) A person commits an offense if the person compensates another person or receives compensation for depositing a carrier envelope in the mail as part of a scheme in which the person is compensated based on the number of carrier envelopes deposited. For additional information on offenses related to carrier envelopes, please see the "Information About Returning your Carrier Envelope," included with the materials sent to you with your ballot.

**ADVERTENCIA:** (1) El acto de poseer conscientemente la boleta o el sobre de envío de otra persona puede ser un delito a menos de que usted proporcione su firma, nombre impreso, y su dirección. (2) Una persona comete un delito si recompensa o recibe recompensa a cambio de depositar el sobre de envío en el correo como parte de un plan en el cual la persona es recompensada en base al número de sobres de envío depositados. Para obtener información adicional sobre los delitos relacionados con los sobres de envío, por favor vea la "Información Sobre Cómo Devolver su Sobre de Envío," incluído con los materiales enviados a usted con su boleta.

*City Secretary's Office*
*Received*
Date: 5-2-18

CARRIER ENVELOPE FOR EARLY VOTING BALLOT
*(SOBRE DE ENVÍO PARA LA BOLETA DE VOTACIÓN ANTICIPADA)*

DE(A):

Early Voting Clerk *(Secretario de Votación Anticipada)*

**Perla Lara, City Secretary**

Mailing Address *(Dirección Postal)*
**P.O. Box 220/1300 Houston Ave**

**McAllen**
City *(Ciudad)*

Texas **78505-0220**
Zip *(Código Postal)*

MCALLEN TX 785
01 MAY 2018 PM 2 T

RECEIVED
MAY 0 2 2018
CITY OF MCALLEN
MAIL CENTER

OFFICIAL ELECTION MAIL
*Authorized by the U.S. Postal Service*®

5-22 – Prescribed by Secretary of State – 12/17
Section 86.013, Texas Election Code 173704

78505=0220 BC02

1059

**Instructions:** This envelope must be sealed and signed by the voter before it leaves the voter's hands. Do not sign this envelope unless the ballot has been marked by you or at your direction. This carrier envelope may not be used to return more than one voter's ballot. For instructions on the methods and deadlines to deliver this carrier envelope, see the "Information About Returning your Carrier Envelope," included with the materials sent to you with your ballot. (Instrucciones al Votante: Selle este sobre y después firme su nombre en el espacio proporcionado abajo. Este sobre debe de ser sellado y firmado por el votante antes de que el votante lo entregue. No firme este sobre a menos de que la boleta haya sido llenada por usted o bajo su dirección. Este sobre de envío no debe ser utilizado para entregar la boleta de más de un solo votante. Para obtener instrucciones sobre los métodos y plazos para entregar este sobre de envío, vea la "Información Sobre Cómo Devolver su Sobre de Envío," incluido con los materiales enviados a usted con su boleta.)

I certify that the enclosed ballot expresses my wishes independent of any dictation or undue persuasion by any person. (Certifico que la boleta adjunta expresa mis deseos independientemente de ningún dictado o persuasión indebida por parte de cualquier persona.)

SEAL ENVELOPE AND SIGN OVER SEALED FLAP
(SELLE EL SOBRE Y FIRME ENCIMA DE SOLAPA DEL SOBRE)

→

SIGNATURE OR MARK OF VOTER (FIRMA O MARCA DEL VOTANTE)

X _____

**Oath of Person Assisting Voter:** I swear (or affirm) that I will not suggest, by word, sign, or gesture, how the voter should vote; I will confirm my assistance to answering the voter's questions, to stating propositions on the ballot, and to naming candidates and, if listed, their political parties; I will prepare the voter's ballot as the voter directs; and I am not the voter's employer, an agent of the voter's employer, or an officer or agent of a labor union to which the voter belongs. (Juramento de la Persona Asistiendo al Votante: Juro (o afirmo) que no sugeriré con palabras, señales, o gestos, la manera en la cual el votante debe votar; limitaré mi asistencia a responder las preguntas del votante, leer propuestas en la boleta, nombrar a los candidatos, y si es mencionado, su partido político, prepararé la boleta del votante de acuerdo a sus instrucciones; y yo no soy el empleador del votante, un agente del empleador del votante, o un oficial o agente de un sindicato al cual el votante pertenece.)

**Instructions to Witnesses:** You are serving as a witness for _____ (name of voter). You must complete the section below if you witness the mark of the voter, or, if the voter cannot make a mark, check here ____. (Instrucciones al Testigo: Usted está fungiendo como testigo para _____ (nombre del votante). Usted debe llenar la siguiente sección abajo si usted fue testigo de que el votante firmó; o de que el votante no puede firmar. Si el votante no puede firmar, marque sus iniciales aquí ____.)

**Instructions to Person Depositing Carrier Envelope in Mail or to Common or Contract Carrier:** If you are assisting a voter by depositing the carrier envelope in the mail or with a common or contract carrier, you must complete the section below. (Instrucciones a la Persona Quien Deposita el Sobre de Envío en el Correo o Entregue al Transportista Público o Comercial: Si usted asiste al votante a depositar el sobre de envío en el correo o con un transportista público o comercial, usted debe llenar la sección que aparece abajo.)

If you are an assistant or witness, check the appropriate box below and provide information: (Si usted es un asistente o testigo, marque la casilla correcta y proporcione su información):

☐ Assistant/ Asistente
☐ Witness/ Testigo

Signature (Firma) _____

Printed Name (Nombre impreso) _____

Street Address (Domicilio residencial) _____

☐ Assistant/ Asistente
☐ Witness/ Testigo

Signature (Firma) _____

Printed Name (Nombre impreso) _____

Street Address (Domicilio residencial) _____

**Bond Election**

Completed by Early Voting Clerk: Name of Voter (Nombre del votante): _____

Name of Election (Nombre de Elección): TERESA DUTRE MAINE

Date of Election (Fecha de Elección): 5/5/18

1060

AW5-42
Prescribed by Secretary of State
Sec. 87.0431, Texas Election Code
3/07

## NOTICE OF REJECTED BALLOT

This is to serve as notice that your ballot for the _May 8th Bond_ Election was rejected by the early voting ballot board and was not counted.

Name of Voter _Brain Dutremaine_

VUID Number_____

Reason for Rejection: (Check As Appropriate)

_✓_     1)     Certificate on carrier envelope was not properly executed.
            _✓_ You failed to sign your signature or make your mark.
            _____ The witness failed to indicate on the envelope that you could not make a mark.
            _____ The assistant or witness failed to print their name.
            _____ The assistant or witness failed to sign their name.
            _____ The residence address of the assistant or witness was not given.

_____     2)     It was determined that the signature on the application for ballot by mail and carrier envelope was not signed by the same person.

_____     3)     Application for ballot by mail did not state a legal ground for voting by mail.

_____     4)     Voter registration records indicated you did not have an effective registration for this election.

_____     5)     Address to which ballot was mailed was not outside the county.  Voting early by mail due to expected absence from the county requires balloting materials be mailed to an address outside the county.

_____     6)     The residence address on the statement of residence is not located in the political subdivision conducting the election.

_____     7)     The mailing address on the application for ballot by mail did not match your voter registration address nor did the mailing address match any addresses provided on your statement of residence.  Since you did not indicate on your application for a ballot by mail that you were having your ballot mailed to a hospital, retirement center, long term care facility, nursing home, jail, or a relative, your ballot was rejected.

_____     8)     The statement of residence was not included in the carrier envelope.

_____     9)     No identification was included with your mail ballot.

_____     10)    Other: _____

_____
Signature of Early Voting Ballot Board Judge

_____5 - 7 - 2018_____
Date

**BRIAN A. DUTREMAINE**
**3604 QUAIL AVE**
**MCALLEN, TX  78504**

1061

1053908495     A     MC2

257-01
85 779

## APPLICATION FOR
## BALLOT BY MAIL - 2018

| For Official Use Only |
| VUID #, County Election Precinct #, |
| Statement of Residence, etc. |

1053908495

**Last Name** (Please print information)
Dutremaine

**Suffix** (Jr., Sr., III, etc.)

**First Name**
Brian

**Middle Initial**
A

**Residence Address:** See back of this application for instructions.
3604 Quail Ave

**City**
McAllen

**Zip Code**
78504

**Mail my ballot to:** If mailing address differs from residence address, please complete Box # 7.
3604 Quail Ave

**City**
McAllen,

**State**
TX

**Zip Code**
78504

**Date of Birth (mm/dd/yyyy) (Optional)**

**ONLY Voters 65 Years of Age or Older**
**or Voters with a Disability:**
If applying for one election, select appropriate box.
If applying once for elections in the calendar year,
select "Annual Application."

☐ Annual Application

**Uniform and Other Elections**
☐ May Election
☐ November Election
☐ Other

**Primary Elections**
The most factors you submit
party is now in the way.
☐ Democratic Primary
☐ Republican Primary
☐ Any Resulting Runoff

**Reason for Voting by Mail:**
☑ 65 years of age or older. (Complete Box (6).)

If you are requesting this ballot be mailed to
a different address (other than residence),
indicate where the ballot will be mailed.

☐ Mailing Address as filed on my voter registration certificate
☐ Nursing home, licensed long-term, or long-term care facility
☐ Hospital
☐ Retirement center
☐ Address (specify)
☐ Relative (relationship)
☐ Address outside the local)

"I certify that the information given in this application is true, and I understand that giving false information in this application is a crime."

**SIGN HERE**   X   Brian [signature]     Date 2-10-11

**WARNING:** (1) Knowingly possessing another person's ballot or carrier envelope may be a crime unless you provide your signature, printed name and address (2) A person commits an offense if the person compensates another person or receives compensation for depositing a carrier envelope in the mail as part of a scheme in which the person is compensated based on the number of carrier envelopes deposited. For additional information on offenses related to carrier envelopes, please see the "Information About Returning your Carrier Envelope," included with the materials sent to you with your ballot.

**ADVERTENCIA:** (1) El acto de poseer conscientemente la boleta o el sobre de envío de otra persona puede ser un delito a menos de que usted proporcione su firma, nombre impreso, y su dirección. (2) Una persona comete un delito si recompensa o recibe compensación a cambio de depositar el sobre de envío en el correo como parte de un plan en el cual la persona es recompensada en base al número de sobres de envío depositados. Para obtener información adicional sobre los delitos relacionados con los sobres de envío, por favor vea la "Información Sobre Cómo Devolver su Sobre de Envío," incluido con los materiales enviados a usted con su boleta.

5-22 — Prescribed by Secretary of State – 12/17
Section 86.013, Texas Election Code 1737/04

DUTREMAINE, BRIAN
VUID# 1053908495
DISTRICT #2
BOND ELECTION 05/05/18

City Secretary's Office
Received

Date: 5-3-18

CARRIER ENVELOPE FOR EARLY VOTING BALLOT
(SOBRE DE ENVÍO PARA LA BOLETA DE VOTACIÓN ANTICIPADA)

Perla Lara, City Secretary
Early Voting Clerk (Secretario de Votación Anticipada)

P.O. Box 220/1300 Houston Ave
Mailing Address (Dirección Postal)

McAllen                          Texas 78505-0220
City (Ciudad)                    Zip (Código Postal)

OFFICIAL ELECTION MAIL
Authorized by the U.S. Postal Service ®

RECEIVED
MAY 3 2018
McALLEN MAIL CENTER

**instructions:** This envelope must be sealed and signed by the voter before it leaves the voter's hands. Do not sign this envelope unless the ballot has been marked by you or at your direction. This carrier envelope may not be used to return more than one voter's ballot. For instructions on the methods and deadlines to deliver this carrier envelope, see the "Information About Returning your Carrier Envelope," included with the materials sent to you with your ballot. (Instrucciones al Votante: Selle este sobre y después firme su nombre en el espacio proporcionado abajo. Este sobre debe de ser sellado y firmado por el votante antes de que el votante lo entregue. No firme este sobre a menos de que la boleta haya sido llenada por usted o bajo su dirección. Este sobre de envío no debe ser utilizado para entregar la boleta de más de un solo votante. Para obtener instrucciones sobre los métodos y plazos para entregar este sobre de envío, vea la "Información Sobre Cómo Devolver su Sobre de Envío," incluido con los materiales enviados a usted con su boleta.)

I certify that the enclosed ballot expresses my wishes independent of any dictation or undue persuasion by any person. (Certifico que la boleta adjunta expresa mis deseos independientemente de ningún dictado o persuasión indebida por parte de cualquier persona.)

## SEAL ENVELOPE AND SIGN OVER SEALED FLAP
### (SELLE EL SOBRE Y FIRME ENCIMA DE SOLAPA DEL SOBRE)

X _____

**SIGNATURE OR MARK OF VOTER (FIRMA O MARCA DEL VOTANTE)**

**Oath of Person Assisting Voter:** I swear (or affirm) that I will not suggest, by word, sign, or gesture, how the voter should vote; I will confine my assistance to answering the voter's questions, to stating propositions on the ballot, and to naming candidates and, if listed, their political parties; I will prepare the voter's ballot as the voter directs; and I am not the voter's employer, an agent of the voter's employer, or an officer or agent of a labor union to which the voter belongs. (Juramento de la Persona Asistiendo al Votante: Juro (o afirmo) que no sugeriré con palabras, señales, o gestos, la manera en la cual el votante debe votar; limitaré mi asistencia a responder las preguntas del votante, leer proposiciones en la boleta, nombrar a los candidatos, y si es mencionado, su partido político; prepararé la boleta del votante de acuerdo a sus instrucciones; y yo no soy el empleador del votante, un agente del empleador del votante, o un oficial o agente de un sindicato al cual el votante pertenece.)

**Instructions to Witness:** You are serving as a witness for _____ (name of voter). You must complete the section below if you witness the mark of the voter, or if the voter cannot make a mark, check here _____. (Instrucciones al Testigo: Usted está fungiendo como testigo para _____ (nombre del votante). Usted debe llenar la siguiente sección abajo si usted fue testigo de que el votante firmó, o de que el votante no puede firmar. Si el votante no puede firmar, marque sus iniciales aquí _____.)

**Instructions to Person Depositing Carrier Envelope in Mail or to Common or Contract Carrier:** If you are assisting a voter by depositing the carrier envelope in the mail or with a common or contract carrier, you must complete the section below. (Instrucciones a la Persona Quien Deposite al Sobre de Envío en el Correo o Entregue al Transportista Público o Comercial: Si usted asistió a un votante a depositar el sobre de envío en el correo o con un transportista público o comercial, usted debe llenar la sección que aparece abajo.)

If you are an assistant or witness, check the appropriate box below and provide information: (Si usted es un asistente o testigo, marque la casilla correcta y proporcione su información):

| | | |
|---|---|---|
| ☐ Assistant/ Asistente<br>☐ Witness/ Testigo | | |
| ☐ Assistant/ Asistente<br>☐ Witness/ Testigo | | |

| Signature (Firma) | Printed Name (Nombre impreso) | Street Address (Domicilio residencial) |
|---|---|---|
| | | |
| | | |

Completed by Early Voting Clerk: Name of Voter (Nombre del votante): Brian Dutchene

Name of Election (Nombre de Elección): Bond Election

Date of Election (Fecha de Elección): 5518

**Bond Election**

AWS-42
Prescribed by Secretary of State
Sec. 87.0431, Texas Election Code
3/07

## NOTICE OF REJECTED BALLOT

This is to serve as notice that your ballot for the __05/05/2018 - BOND__ Election was rejected by the early voting ballot board and was not counted.

Name of Voter _Dolores Guillon_

VUID Number _1054372973_

Reason for Rejection: (Check As Appropriate)

_____   1)   Certificate on carrier envelope was not properly executed.

_____   You failed to sign your signature or make your mark.

_____   The witness failed to indicate on the envelope that you could not make a mark.

_____   The assistant or witness failed to print their name.

_____   The assistant or witness failed to sign their name.

_____   The residence address of the assistant or witness was not given.

_____   2)   It was determined that the signature on the application for ballot by mail and carrier envelope was not signed by the same person.

_____   3)   Application for ballot by mail did not state a legal ground for voting by mail.

_____   4)   Voter registration records indicated you did not have an effective registration for this election.

_____   5)   Address to which ballot was mailed was not outside the county.  Voting early by mail due to expected absence from the county requires balloting materials be mailed to an address outside the county.

_____   6)   The residence address on the statement of residence is not located in the political subdivision conducting the election.

_____   7)   The mailing address on the application for ballot by mail did not match your voter registration address nor did the mailing address match any addresses provided on your statement of residence.  Since you did not indicate on your application for a ballot by mail that you were having your ballot mailed to a hospital, retirement center, long term care facility, nursing home, jail, or a relative, your ballot was rejected.

_____   8)   The statement of residence was not included in the carrier envelope.

_____   9)   No identification was included with your mail ballot.

___✓___   10)   Other:

_Signatures on application and Carrier envelope did not match._

Signature of Early Voting Ballot Board Judge

_5-7-2018_

Date

**DOLORES GUILLON**
**4001 LAUREL AVE**
**MCALLEN, TX  78501**

*1054372973*     *MC3*

# Ballot By Mail Request Form

Registration Address
Dolores Guillon
4001 Laurel Ave
McAllen, TX 78501

OFFICE USE ONLY

Voter ID: 1054372973
Precinct: 49     01    3605989

I am over 65 years of age and requesting an **Annual Ballot By Mail** to receive a ballot for all elections in 2018, including any **Democratic Party** elections, local elections, and the November 2018 General Election. Mail my ballots to the address indicated above (unless noted otherwise below).

SIGNATURE(FIRMA) *Dolores Guillon*

*Must be signed. Do not print. If you cannot sign, make a mark and have witness fill out the box to the right.*

I certify that the information given in this application is true, and I understand that giving false information in this application is a crime.

If you are not able to receive ballots at the address where you are registered to vote, the ballot may be mailed to an alternate address. This address may only be one of the following. Check which address you are using:

☐ A hospital, nursing home, retirement center or other long-term care facility.
☐ The address of a person related to applicant. Relationship: _____
☒ Mailing Address listed on applicant's voter registration card.

Mailing Address
Dolores Guillon
4001 Laurel Ave
McAllen, TX 78501

Address where ballot
should be sent, if different:

_____

_____

_____

**FOR WITNESS (Only if Applicant Cannot Sign):**
If applicant is unable to make mark,
Witness shall check here: ☐
Witness Name _____
Witness Address _____
_____

Relationship to Applicant *(Check One)*
☐ spouse ☐ child ☐ reside at same address as applicant
☐ other: _____
Witness Signature _____
Date _____

If you are unable to sign your name (due to a physical disability or illiteracy), the application may be signed for you by a Witness. You must affix your mark to the application or, if you are unable to make a mark, then the Witness must sign and provide his or her printed name and residence address. Unless the Witness is a close relative of the voter (parent, grandparent, spouse, child or sibling), it is a Class B misdemeanor for a person to witness more than one application in a calendar year

*Guillon*

GUILLON, Delores
VUID# 105437297З
DISTRICT #3
BOND ELECTION 05/05/18

MCALLEN TX 785
27 APR 2018 PM 2:1

RECEIVED
APR 30 2018
CITY OF MCALLEN
CITY SECRETARY

OFFICIAL ELECTION MAIL
Authorized by the U.S. Postal

RECEIVED
CITY OF MCALLEN
MAIL CENTER
APR 30 2018

CARRIER ENVELOPE FOR EARLY VOTING BALLOT
(SOBRE DE ENVÍO PARA LA BOLETA DE VOTACIÓN ANTICIPADA)

TO (A):

Perla Lara, City Secretary
Early Voting Clerk (Secretario de Votación Anticipada)

P.O. Box 220/1300 Houston Ave
Mailing Address (Dirección)

McAllen
(City) (Ciudad)

Texas

78505/0220

**WARNING:** (1) Knowingly possessing another person's ballot or carrier envelope may be a crime unless you provide your signature, printed name and address (2) A person commits an offense if the person compensates another person or receives compensation for depositing a carrier envelope in the mail as part of a scheme in which the person is compensated based on the number of carrier envelopes deposited. For additional information on offenses related to carrier envelopes, please see the "Information About Returning your Carrier Envelope," included with the materials sent to you with your ballot.

**ADVERTENCIA:** (1) El acto de poseer conscientemente la boleta o el sobre de envío de otra persona puede ser un delito a menos de que usted proporcione su firma, nombre impreso, y su dirección. (2) Una persona comete un delito si recompensa o recibe compensación a cambio de depositar el sobre de envío en el correo como parte de un plan en el cual la persona es recompensada en base al número de sobres de envío depositados. Para obtener información adicional sobre los delitos relacionados con los sobres de envío, por favor vea la "Información Sobre Cómo Devolver su Sobre de Envío," incluido con los materiales enviados a usted con su boleta.

Case 5:19-cv-00963-OLG Document 84 Filed 07/30/20 Page 96 of 2561

SEAL ENVELOPE AND SIGN OVER SEALED FLAP
(SELLE EL SOBRE Y FIRME ENCIMA DE SOLAPA DEL SOBRE)

→

SIGNATURE OR MARK OF VOTER (FIRMA O MARCA DEL VOTANTE)

X  Dolores Guillor

I certify that the enclosed ballot expresses my wishes, independent of any dictation or undue persuasion by any person." (Certifico que la boleta adjunta expresa mis deseos independientemente de ningún dictado o persuasión indebida por parte de cualquier persona.)

Oath of Person Assisting Voter: I swear (or affirm) that I will not suggest, by word, sign, or gesture, how the voter should vote; I will confine my assistance to answering the voter's questions, to stating propositions on the ballot, and to naming candidates and, if listed, their political parties; I will prepare the voter's ballot as the voter directs; and I am not the voter's employer, an agent of the voter's employer, or an officer or agent of a labor union to which the voter belongs." (Juramento de la Persona Asistiendo al Votante: Juro (o afirmo) que no le sugeriré al votante, por palabras, señales, o gestos, la manera en la cual el votante debe votar; limitaré mi asistencia a responder las preguntas del votante, leer propuestas en la boleta, nombrar los candidatos y si les es mencionado, su partido político; prepararé la boleta del votante de acuerdo a sus instrucciones; y no soy el empleador del votante, un agente del empleador del votante, o un oficial o agente de un sindicato al cual el votante pertenece.)

Instructions to Witness.: You are serving as a witness for _____ (name of voter). You must complete the section below if you witness the mark of the voter, or, if the voter cannot make a mark, check here ____ (Instrucciones al Testigo: Usted está fungiendo como testigo para _____ (nombre del votante). Usted debe llenar la siguiente sección abajo si usted fue testigo de que el votante firmó, o de que el votante no puede firmar, marque sus iniciales aquí ____)

Signature (Firma)  Vidal Villa
Signature (Firma) _____

Printed Name (Nombre impreso)  ISRAEL GUILLON
Printed Name (Nombre impreso) _____

Assistant/
Asistente
Witness/
Testigo

Assistant/
Asistente
Witness/
Testigo

Street Address (Domicilio residencial)  1304 Monaco DR Micow TX 78553
Street Address (Domicilio residencial) _____

Date of Election (Fecha de Elección) 5 5 18

Bond Election;

Instructions to Person Depositing Carrier Envelope in Mail or to Common or Contract Carrier: If you are assisting a voter by depositing the carrier envelope in the mail or with a common or contract carrier, you must complete the section below. (Instrucciones a la Persona Quien Deposita el Sobre de Envio en el Correo o Entregue al Transportista Público o Comercial: Si usted asiste a al votante a depositar el sobre de envío en el correo o con un transportista público o comercial, usted debe llenar la sección que aparece abajo.)

If you are an assistant or a witness, check the appropriate box below and provide information: (Si usted es un asistente o testigo, marque la casilla correcta y proporcione su información.)

Instructions to Assistant: A voter may only be assisted with reading or marking the ballot if they have a physical disability that renders them unable to write or see, or have an inability to read the language in which the ballot is written. If you are assisting the voter, you must read the oath and complete the section below, before assisting the voter. (Instrucciones al Asistente: Un votante puede recibir ayuda para leer o llenar la boleta solamente si el votante tiene una discapacidad física la cual le impide escribir o ver, o si no tiene la habilidad de leer el lenguaje en el cual la boleta está escrita. Si usted le proporciona ayuda a un votante, usted debe leer el juramento y llenar la siguiente sección abajo, antes de asistir al votante.)

Completed by Early Voting Clerk: Name of Election (Nombre de Elección): _____

Name of Voter (Nombre del votante): _____

1068

AWS-42
Prescribed by Secretary of State
Sec. 87.0431, Texas Election Code
3/07

# NOTICE OF REJECTED BALLOT

This is to serve as notice that your ballot for the __05/05/2018 - BOND__ Election was rejected by the early voting ballot board and was not counted.

Name of Voter _Felicitas Salinas_

VUID Number _105505 6537_

Reason for Rejection: (Check As Appropriate)

_____ 1) Certificate on carrier envelope was not properly executed.
_____ You failed to sign your signature or make your mark.
_____ The witness failed to indicate on the envelope that you could not make a mark.
_____ The assistant or witness failed to print their name.
_____ The assistant or witness failed to sign their name.
_____ The residence address of the assistant or witness was not given.

_____ 2) It was determined that the signature on the application for ballot by mail and carrier envelope was not signed by the same person.

_____ 3) Application for ballot by mail did not state a legal ground for voting by mail.

_____ 4) Voter registration records indicated you did not have an effective registration for this election.

_____ 5) Address to which ballot was mailed was not outside the county. Voting early by mail due to expected absence from the county requires balloting materials be mailed to an address outside the county.

_____ 6) The residence address on the statement of residence is not located in the political subdivision conducting the election.

_____ 7) The mailing address on the application for ballot by mail did not match your voter registration address nor did the mailing address match any addresses provided on your statement of residence. Since you did not indicate on your application for a ballot by mail that you were having your ballot mailed to a hospital, retirement center, long term care facility, nursing home, jail, or a relative, your ballot was rejected.

_____ 8) The statement of residence was not included in the carrier envelope.

_____ 9) No identification was included with your mail ballot.

____✓____ 10) Other:
_Signatures on application and Carrier envelope did not match_

_____
Signature of Early Voting Ballot Board Judge

_5/7/2018_
Date

**FELICITAS SALINAS
1016 S 26TH
MCALLEN, TX  78573**

1069

105505537—A

# Application for Ballot by Mail

**1** Last Name (Please print information) — Salinas   Suffix (Jr., Sr., III, etc.)   First Name — Felicitas

Provided by the Secretary of State of Texas
AW-16 (10/17)

For Official Use Only
V.U.D. & County Election Precinct #, Statement of Residence, etc.

MCY
(47-0)
ZIP Code 78573

**2** Residence Address: See back of this application for instructions
1616 N 26

City McAllen   State TX   ZIP Code

**3** Mail my ballot to: If mailing address differs from residence address, please complete Box # 7.

City   State   ZIP Code

**4** Date of Birth (mm/dd/yyyy) (Optional)
1 2 / 0 1 / 1 9 4 6

**5** Reason for Voting by Mail:
☒ 65 years of age or older. (Complete Box 6a)
☐ Disability. (Complete Box 6b)
☐ Expected absence from the county. (Complete Box 6b and Box 8#)
   You will receive a ballot for the upcoming election only.
☐ Confined in jail. (Complete Box 6b)
   You will receive a ballot for the upcoming election only.

**6a** ONLY Voters 65 Years of Age or Older or Voters with a Disability:
If applying for one election, select appropriate election only.
If applying once for elections in this calendar year, select "Annual Application."
☐ Annual Application

Uniform and Other Elections:
☐ May Election
☐ November Election
☐ Other

**6b** ONLY Voters Absent from County or Voters Confined in Jail:
You may only apply for a ballot by mail for one election, and any resulting runoff.
Please select the appropriate box.

Uniform and Other Elections:
☐ May Election
☐ November Election
☐ Other

Primary Elections:
You must declare your political party (a vote in a primary.
☐ Democratic Primary
☐ Republican Primary
☒ Any Resulting Runoff

Primary Elections:
You must declare your political party to vote in a primary.
☐ Democratic Primary
☐ Republican Primary
☐ Any Resulting Runoff

Contact Information (Optional)*
Please list phone number and/or email address.
* Used in case our office has questions.

FEB 21 2018

**7** If you are requesting this ballot be mailed to a different address (other than residence), indicate where this ballot will be mailed. See reverse for instructions.
☐ Mailing Address as listed on my voter registration certificate
☐ Nursing home, assisted living facility, or long term care facility
☐ Hospital
☐ Retirement Center

☐ Address of the jail
☐ Relative; relationship
☐ Address outside the county (see Box #8)

**8** If you selected "expected absence from the county," see reverse for instructions

Date you can begin to receive mail at this address    Date of return to residence address

**9** Voters may submit a completed, signed, and scanned application to the Early Voting Clerk at:
(only voting clerk's e-mail address)
NOTE: If you fax or e-mail this form, please be aware that you meet and also mail the form to the early voting clerk within four business days. See "Submitting Application" on the back of this form for additional information.

**10** "I certify that the information given in this application is true, and I understand that giving false information is a crime."

X _Felicitas Salinas_
SIGN HERE
If applicant is unable to sign or make a mark in the presence of a witness, the witness shall complete Box #11.

Date

**11** See back for Witness and Assistant definitions.

(If someone helped you to complete this form, you must complete the sections below.)

If someone helped you complete this form and you are acting as a Witness to that fact, please check this box and sign below.

*If you are acting as Witness and Assistant, please check both boxes. Failure to complete this information is a Class A misdemeanor if signature was witnessed or applicant was assisted in completing the application.

X
Signature of Witness/Assistant

X
Printed Name of Witness/Assistant

Street Address                    City

State          Apt Number (if applicable)          ZIP Code

☐ If applicant is unable to mark Box #10 and you are acting as a Witness to that fact, please check this box and sign below.

Witness' Relationship to Applicant
(Refer to instructions on back for clarification)

Este formulario está disponible en Español.  Para conseguir la versión en Español favor de llamar sin cargo al 1.800.252.8683 a la oficina del Secretario de Estado o la Secretaría de Votación por Adelantado.

WARNING: (1) Knowingly possessing another person's ballot or carrier envelope may be a crime unless you provide your signature, printed name and address. (2) A person commits an offense if the person compensates another person or receives compensation for depositing a carrier envelope in the mail as part of a scheme in which the person is compensated based on the number of carrier envelopes deposited. For additional information on offenses related to carrier envelopes, please see the "Information About Returning your Carrier Envelope," included with the materials sent to you with your ballot.

ADVERTENCIA: (1) El acto de poseer conscientemente la boleta o el sobre de envío de otra persona puede ser un delito a menos de que usted proporcione su firma, nombre impreso, y su dirección. (2) Una persona comete un delito si recompensa o recibe compensación a cambio de depositar el sobre de envío en el correo como parte de un plan en el cual la persona es recompensada en base al número de sobres de envío depositados. Para obtener información adicional sobre los delitos relacionados con los sobres de envío, por favor vea la "Información Sobre Cómo Devolver su Sobre de Envío," incluido con los materiales enviados a usted con su boleta.

5-22 – Prescribed by Secretary of State – 12/17
Section 86.013, Texas Election Code 173704

SALINAS, FELICITAS
VUID# 1055056537
DISTRICT #4
BOND ELECTION 05/05/18



CARRIER ENVELOPE FOR EARLY VOTING BALLOT
(SOBRE DE ENVÍO PARA LA BOLETA DE VOTACIÓN ANTICIPADA)

Perla Lara, City Secretary

Early-Voting Clerk (Secretario de Votación Anticipada)

P.O. Box 220/1300 Houston Ave
Mailing Address (Dirección Postal)

McAllen                                          Texas
City (Ciudad)                                    Zip (Código Postal)

78505-0220

Case 5:19-cv-00963-OLG   Document 84   Filed 07/30/20   Page 1072 of 2561

**Instructions:** This envelope must be sealed and signed by the voter before it leaves the voter's hands. Do not sign this envelope unless the ballot has been marked by you or, at your direction. This carrier envelope may not be used to return more than one voter's ballot. For instructions on the methods and deadlines to deliver this carrier envelope, see the "Information About Returning your Carrier Envelope," included with the materials sent to you with your ballot. (Instrucciones al Votante: Selle este sobre y después firme su nombre en el espacio proporcionado abajo. Este sobre debe de ser sellado y firmado por el votante antes de que el votante lo entregue. No firme este sobre a menos de que la boleta haya sido llenada por usted o bajo su dirección. Este sobre de envío no debe ser utilizado para entregar la boleta de más de un solo votante. Para obtener instrucciones sobre los métodos y plazos para entregar este sobre de envío, vea la "Información Sobre Cómo Devolver su Sobre de Envío," incluido con los materiales enviados a usted con su...)

I certify that the enclosed ballot expresses my wishes independent of any dictation or undue persuasion by any person. (Certifico que la boleta adjunta expresa mis deseos independientemente de ningún dictado o persuasión indebida por parte de cualquier persona.)

**(SEAL ENVELOPE AND SIGN OVER SEALED FLAP)**
**(SELLE EL SOBRE Y FIRME ENCIMA DE SOLAPA DEL SOBRE)**

X _Felicita Salinas_

**SIGNATURE OR MARK OF VOTER (FIRMA O MARCA DEL VOTANTE)**

**Oath of Person Assisting Voter:** I swear (or affirm) that I will not suggest, by word, sign, or gesture, how the voter should vote; I will confine my assistance to answering the voter's questions, to stating propositions on the ballot, and to naming candidates and, if listed, their political parties; I will prepare the voter's ballot as the voter directs; and I am not the voter's employer, an agent of the voter's employer, or an officer or agent of a labor union to which the voter belongs. (Juramento de la Persona Asistente al Votante: Juro (o afirmo) que no sugeriré con palabras, señales, o gestos, la manera en la cual el votante debe votar; limitaré mi asistencia a responder las preguntas del votante, leo al Votante, leer proposiciones en la boleta, nombrar los candidatos, y si es mencionado, su partido político; preparare la boleta del votante de acuerdo a sus instrucciones; y yo no soy el empleador del votante, un agente del empleador...)

**Instructions to Witness:** You are serving as a witness for _____ (name of voter). You must complete the section below if you witness the mark of the voter, or if the voter cannot make a mark. If the voter cannot make a mark, check here _____ (Instrucciones al Testigo: Usted está fungiendo como testigo para _____ (nombre del votante). Usted debe llenar la siguiente sección abajo si usted fue testigo de que el votante firmo, o de que el votante no puede firmar, si el votante no puede firmar, marque sus iniciales aquí _____)

**Instructions to Person Depositing Carrier Envelope in Mail or to Common or Contract Carrier:** If you are assisting a voter by depositing the carrier envelope in the mail or with a common or contract carrier, you must complete the section below. (Instrucciones a la Persona Quien Deposita el Sobre de Envío en el Correo o Entrega al Transportista Público o Comercial: Si usted asistirá al votante a depositar el sobre de envío en el correo o con un transportista público o comercial, usted debe llenar la sección que aparece abajo.)

**Instructions to Assistant:** A voter may only be assisted with reading or marking the ballot if they have a physical disability that renders them unable to write or see, or have an inability to read the language in which the ballot is written. If you are assisting the voter, you must read the oath and complete the section below, before assisting the voter. (Instrucciones al Asistente: Un votante puede recibir ayuda para leer o llenar la boleta solamente si el votante tiene una discapacidad física la cual le impide escribir o ver, o si no tiene la habilidad de leer el lenguaje en el cual la boleta está escrita. Si usted le proporcionará ayuda a un votante, usted debe leer el juramento y llenar la siguiente sección abajo, antes de asistir al votante.)

If you are an assistant or witness, check the appropriate box below and provide information. (Si usted es un asistente o testigo, marque la casilla correcta y proporcione su información):

☐ Witness/Testigo
☐ Assistant/Asistente

Signature (Firma) _____

Printed Name (Nombre impreso) _____

Street Address (Domicilio residencial) _____

☐ Witness/Testigo
☐ Assistant/Asistente

Signature (Firma) _____

Printed Name (Nombre impreso) _____

Street Address (Domicilio residencial) _____

**Bond Election**

Name of Voter (Nombre del votante): _____

Completed by Early Voting Clerk: Name of Election (Nombre de Elección): _____

Date of Election (Fecha de Elección): **5-5-2018**

AWS-42
Prescribed by Secretary of State
Sec. 87.0431, Texas Election Code
3/07

## NOTICE OF REJECTED BALLOT

This is to serve as notice that your ballot for the __05/05/2018 - BOND__ Election was rejected by the early voting ballot board and was not counted.

Name of Voter _Guadalupe Trevino Garza_

VUID Number_____

Reason for Rejection: (Check As Appropriate)

_____   1)   Certificate on carrier envelope was not properly executed.
              _____ You failed to sign your signature or make your mark.
              _____ The witness failed to indicate on the envelope that you could not make a mark.
              _____ The assistant or witness failed to print their name.
              _____ The assistant or witness failed to sign their name.
              _____ The residence address of the assistant or witness was not given.

___✓_____   2)   It was determined that the signature on the application for ballot by mail and carrier envelope was not signed by the same person.

_____   3)   Application for ballot by mail did not state a legal ground for voting by mail.

_____   4)   Voter registration records indicated you did not have an effective registration for this election.

_____   5)   Address to which ballot was mailed was not outside the county.  Voting early by mail due to expected absence from the county requires balloting materials be mailed to an address outside the county.

_____   6)   The residence address on the statement of residence is not located in the political subdivision conducting the election.

_____   7)   The mailing address on the application for ballot by mail did not match your voter registration address nor did the mailing address match any addresses provided on your statement of residence.  Since you did not indicate on your application for a ballot by mail that you were having your ballot mailed to a hospital, retirement center, long term care facility, nursing home, jail, or a relative, your ballot was rejected.

_____   8)   The statement of residence was not included in the carrier envelope.

_____   9)   No identification was included with your mail ballot.

_____   10)  Other:

_____   _____

Signature of Early Voting Ballot Board Judge

__5 - 7 - 2018__
Date

**GUADALUPE TREVINO GARZA
2412 DAYTONA AVE
MCALLEN, TX  78503**

105405S 218

DO NOT REMOVE PERFORATED TABS. Moisten here and fold bottom to top to seal.   DO NOT REMOVE PERFORATED TABS. Moisten here and fold bottom to top to seal.

## Application for Ballot by Mail

Prescribed by the Office of the Secretary of State of Texas   AB-15 7/2017

For Official Use Only
VUID #, County Election Precinct #,
Statement of Residence, etc.

**1** Last Name (Please print information)   Suffix (Jr., Sr., III, etc)   First Name   Middle Initial

TREVINO GARZA   GUADALUPE

**2** Residence Address: See back of this application for instructions
2212 Daytona Ave

City   McAllen   ,TX   ZIP Code   78503
           State   ZIP Code

**3** Mail my ballot to: If mailing address differs from residence address, please complete Box #7.

Contact Information (Optional)*
Please list phone number and/or email address:
* Used in case our office has questions.

(95) 01 - 11205

FEB 24 2018

**4** Date of Birth (mm/dd/yyyy) (Optional)

03 11 1918

**5** Reason for Voting by Mail:
☐ 65 years of age or older. (Complete Box #6a)
☐ Disability. (Complete Box #6a)
☐ Expected absence from the county. (Complete Box #6b and Box #8)
☐ You will receive a ballot for the upcoming election only
☐ Confinement in jail. (Complete Box #6b)
☐ You will receive a ballot for the upcoming election only

**6a** ONLY Voters 65 Years of Age or Older or Voters with a Disability:
If applying for one election, select appropriate box.
If applying once for elections in this calendar year, select "Annual Application."
☑ Annual Application

Uniform and Other Elections:
☐ May Election
☐ November Election
☐ Other _____

Primary Elections:
You must declare one political party to vote in a primary:
☑ Democratic Primary
☐ Republican Primary
☐ Any Resulting Runoff

**6b** ONLY Voters Absent from County or Voters Confined in Jail:
You may only apply for a ballot by mail for one election, and any resulting runoff.
Please select the appropriate box.

Uniform and Other Elections:
☐ May Election
☐ November Election
☐ Other _____

Primary Elections:
You must declare one political party to vote in a primary:
☐ Democratic Primary
☐ Republican Primary
☐ Any Resulting Runoff

**7** If you are requesting this ballot be mailed to a different address (other than residence), indicate where the ballot will be mailed. See reverse for instructions.
☐ Mailing Address as listed on my voter registration certificate
☐ Nursing home, assisted living facility, or long term care facility
☐ Hospital
☐ Retirement Center
☐ Address of the jail
☐ Relative; relationship _____
☐ Address outside the county (see Box #9)

**8** If you selected "expected absence from the county," see reverse for instructions

Date you can begin to receive mail at this address   Date of return to residence address

**9** Voters may submit a completed, signed, and scanned application to the Early Voting Clerk at:

_____ (early voting clerk's e-mail address)   _____ (early voting clerk's fax)

NOTE: If you fax or e-mail this form, please be aware that you must also mail this form to the early voting clerk within four business days. See "Submitting Application" on the back of this form for additional information.

**10** "I certify that the information given in this application is true, and I understand that giving false information in this application is a crime."

SIGN HERE
If applicant is unable to sign or make a mark in the presence of a witness, the witness shall complete Box #11.

X _____

Date  2-20-18

X _____
Printed Name of Witness/Assistant

City _____

ZIP Code _____

Witness' Relationship to Applicant
(Refer to instructions on back for clarification)
ESPOSA

**11** See back for Witness and Assistant definitions.
If applicant is unable to mark Box #10 and you are acting as a Witness to that fact, please check this box and sign below. ☐

If someone helped you to complete this form or mails the form for you, then that person must complete the sections below.

If you assisted the applicant in completing this application in the applicant's presence or e-mailed/mailed or faxed the application on behalf of the applicant, please check this box as an Assistant and sign below. ☐
If applicant is unable to sign and you are signing as a Witness in the applicant's presence, please complete this information is a Class A misdemeanor if signature was witnessed or applicant was assisted in completing the application.

**If you are acting as Witness and Assistant, please check both boxes. Failure to complete this information is a Class A misdemeanor if signature was witnessed or applicant was assisted in completing the application.

X _____
Signature of Witness / Assistant
Asha M Garza

Street Address   2412 Daytona Ave
McAllen TX 78501
State

Este formulario está disponible en Español. Para conseguir la versión en Español favor de llamar sin cargo al 1.800.252.8683 a la oficina del Secretario de Estado o la Secretaría de Votación por Adelantado.

GARZA, TREVINO GUADALUPE TX 785
VUID# 105405518   26 APR 2018 PM 2 T
DISTRICT #4
BOND ELECTION 05/05/18

Date 4/27/18

TO (A):

CARRIER ENVELOPE FOR EARLY VOTING BALLOT
(SOBRE DE ENVÍO PARA LA BOLETA DE VOTACIÓN ANTICIPADA)

Early Voting Clerk (Secretario de Votación Anticipada)
Perla Lara, City Secretary
P.O. Box 220/1300 Houston Ave
Mailing Address (Dirección Postal)

McAllen
City (Ciudad)                                    Texas

78505-0220

Zip (Código Postal)



OFFICIAL ELECTION MAIL
Authorized by the U.S. Postal Service ®

**WARNING:** (1) Knowingly possessing another person's ballot or carrier envelope may be a crime unless you provide your signature, printed name and address (2) A person commits an offense if the person receives compensation for depositing a carrier envelope in the mail as part of a scheme in which the person is compensated based on the number of carrier envelopes deposited. For additional information on offenses related to carrier envelopes, please see the "Information About Returning your Carrier Envelope," included with the materials sent to you with your ballot.

**ADVERTENCIA:** (1) El acto de poseer consientemente la boleta o el sobre de envío de otra persona puede ser un delito a menos de que usted proporcione su firma, nombre impreso, y su dirección. (2) Una persona comete un delito si el correo como parte de un plan en el cual la persona es recompensada en base al número de sobres de envío depositados. Para obtener información adicional sobre los delitos relacionados con los sobres de envío, por favor vea la "Información Sobre Cómo Devolver su Sobre de Envío," incluido con los materiales enviados a usted con su boleta.

22 — Prescribed by Secretary of State – 12/17
Section 86.013, Texas Election Code 173704

**Instructions:** This envelope must be sealed and signed by the voter before it leaves the voter's hands. Do not sign this envelope unless the ballot has been marked by you or at your direction. This carrier envelope may not be used to return more than one voter's ballot. For instructions on the methods and deadlines to deliver this carrier envelope, see the "Information About Returning your Carrier Envelope," included with the materials sent to you with your ballot. (Instrucciones al Votante: Selle este sobre y después firme su nombre en el espacio proporcionado abajo. Este sobre debe de ser sellado y firmado por el votante antes de que el votante lo entregue. No firme este sobre a menos de que la boleta haya sido llenada por usted o bajo su dirección. Este sobre de envío no debe ser utilizado para entregar la boleta de más de un sólo votante. Para obtener instrucciones sobre los métodos y plazos para entregar este sobre de envío, vea la "Información Sobre Cómo Devolver su Sobre de Envío," incluido con los materiales enviados a usted con su boleta.

I certify that the enclosed ballot expresses my wishes independent of any dictation, or undue persuasion by any person. (Certifico que la boleta adjunta expresa mis deseos independientemente de ningún dictado o persuasión indebida por parte de cualquier persona.)

SEAL ENVELOPE AND SIGN OVER SEALED FLAP
(SELLE EL SOBRE Y FIRME ENCIMA DE SOLAPA DEL SOBRE)

SIGNATURE OR MARK OF VOTER (FIRMA O MARCA DEL VOTANTE)

X _____

**Instructions to Assistant:** A voter may only be assisted with reading or marking the ballot if they have a physical disability that renders them unable to write or see, or have an inability to read the language in which the ballot is written. If you are assisting the voter, you must read the oath and complete the section below, before assisting the voter. (Instrucciones al Asistente: Un votante puede recibir ayuda para leer o llenar la boleta solamente si el votante tiene una discapacidad física la cual le impide escribir o ver, o si no tiene la habilidad de leer el lenguaje en el cual la boleta está escrita. Si usted le proporciona ayuda a un votante, usted debe leer el juramento y llenar la siguiente sección abajo, antes de asistir al votante.

**Oath of Person Assisting Voter:** I swear (or affirm) that I will not suggest, by word, sign, or gesture, how the voter should vote; I will confine my assistance to answering the voter's questions, to stating propositions on the ballot, and to naming candidates and, if listed, their political parties; I will prepare the voter's ballot as the voter directs; and I am not the voter's employer, an agent of the voter's employer, or an officer or agent of a labor union to which the voter belongs. (Juramento de la Persona Asistiendo al Votante: Juro (o afirmo) que no sugeriré con palabras, señales, o gestos, la manera en la cual el votante debe votar; limitaré mi asistencia a responder las preguntas del votante, leer propuestas en la boleta, nombrar a los candidatos, y si es mencionado, su partido político; preparé la boleta del votante de acuerdo a sus instrucciones; y yo no soy el empleador del votante, un agente del empleador del votante, o un oficial o agente de un sindicato al cual el votante pertenece.)

**Instructions to Witness:** You are serving as a witness for _____ (name of voter). You must complete the section below if you witness the mark of the voter, or if the voter cannot make a mark. If the voter cannot make a mark, check here _____ (instrucciones al Testigo: Usted está fungiendo como testigo para _____ (nombre del votante), Usted debe llenar la siguiente sección abajo si testigo de que el votante firma, o de que el votante no puede firmar. Si el votante no puede firmar, marque sus iniciales aquí _____)

**Instructions to Person Depositing Carrier Envelope in Mail or to Common or Contract Carrier:** If you are assisting a voter by depositing the carrier envelope in the mail or with a common or contract carrier, you must complete the section below. (Instrucciones a la Persona Quien Deposito el Sobre de Envío en el Correo o Entregue al Transportista Público o Comercial: Si usted asistirá al votante a depositar el sobre de envío en el correo o con un transportista público o comercial, usted debe llenar la sección que aparece abajo.)

If you are an assistant or witness, check the appropriate box below and provide information: (Si usted es un asistente o testigo, marque la casilla correcta y proporcione su información):

☐ Assistant/
  Asistente
☐ Witness/
  Testigo                    Signature (Firma)                    Printed Name (Nombre impreso)                    Street Address (Domicilio residencial)

☐ Assistant/
  Asistente
☐ Witness/
  Testigo

**Bond Election**

Completed by Early Voting Clerk:  Name of Election (Nombre de Elección): _____    Date of Election (Fecha de Elección): 5/5/18

Name of Voter (Nombre del votante): _____

1076

AW5-42
Prescribed by Secretary of State
Sec. 87.0431, Texas Election Code
3/07

## NOTICE OF REJECTED BALLOT

This is to serve as notice that your ballot for the __05/05/2018 - BOND__ Election was rejected by the early voting ballot board and was not counted.

Name of Voter _Adela Zapata_

VUID Number _1053744584_

Reason for Rejection: (Check As Appropriate)

_____ 1) Certificate on carrier envelope was not properly executed.
      _____ You failed to sign your signature or make your mark.
      _____ The witness failed to indicate on the envelope that you could not make a mark.
      _____ The assistant or witness failed to print their name.
      _____ The assistant or witness failed to sign their name.
      _____ The residence address of the assistant or witness was not given.

_____ 2) It was determined that the signature on the application for ballot by mail and carrier envelope was not signed by the same person.

_____ 3) Application for ballot by mail did not state a legal ground for voting by mail.

_____ 4) Voter registration records indicated you did not have an effective registration for this election.

_____ 5) Address to which ballot was mailed was not outside the county. Voting early by mail due to expected absence from the county requires balloting materials be mailed to an address outside the county.

_____ 6) The residence address on the statement of residence is not located in the political subdivision conducting the election.

_____ 7) The mailing address on the application for ballot by mail did not match your voter registration address nor did the mailing address match any addresses provided on your statement of residence. Since you did not indicate on your application for a ballot by mail that you were having your ballot mailed to a hospital, retirement center, long term care facility, nursing home, jail, or a relative, your ballot was rejected.

_____ 8) The statement of residence was not included in the carrier envelope.

_____ 9) No identification was included with your mail ballot.

___✓___ 10) Other: _Signature on application and Carrier envelope do not match._

_____
Signature of Early Voting Ballot Board Judge

_5/7/2018_
Date

**ADELA ZAPATA**
**2010 GALVESTON AVE**
**MCALLEN, TX  78501**

MC5

1053744584-A

# Solicitud de Boleta Postal

AB-15s 12/73

V/U© H. County Elections Precinct #, Statement of Residence, etc.

| | | | | | Inicial de segundo nombre |
|---|---|---|---|---|---|

1. Apellido (Escriba a Máquina o con Letra de Molde) | Primer nombre Adela | Sufijo (Jr., Sr., III, etc)

2. Domicilio residencial - Véase el dorso de esta solicitud para aclaración.
2010 Galveston Air | Ciudad McAllen | Estado TX | Código postal 78501

3. Enviar la boleta a: Si dirección postal es diferente de la de su domicilio residencial, favor de completar el Cuadro #7. | Ciudad | Estado | Código postal

4. Fecha de nacimiento: (mm/dd/áaaa) (Opcativa)
0 4 / 2 3 / 1 9 4 0

5. Motivo para votar por correo:
☑ 65 o más años de edad. (Completar Cuadro #6a)
☑ Minusválidez. (Completar Cuadro #6a)
☐ Expectativa de estar fuera del condado. (Completar Cuadro #6 No deje de completar Cuadro #8
☐ Reclusión carcelaria. (Completar Cuadro #6b)

6a. SÓLO los Votantes de 65 años de Edad o Mayores o los Votantes con Minusvalídez:
Si solicita una elección, seleccione la casilla apropiada. Si usted está solicitando una vez para todas las elecciones del condado en el año calendario, seleccione "Aplicación Anual."

☑ Aplicación Anual

Uniforme y otra Elecciones:
☐ Elección en mayo
☐ Elección de noviembre
☐ Otra

Elecciones Primarias:
Deberá declarar un solo partido político para votar en una elección primaria:
☐ Demócrata
☐ Republicano
☑ Cualquier votación secundaria resultante

6b. SÓLO los Votantes Ausentes del Condado o Votantes Confinados en la Cárcel:
Usted no puede solicitar una boleta por correo para una elección, y cualquier votación secundaria resultante. Por favor, seleccione la casilla correspondiente.

Uniforme y otra Elecciones:
☐ Elección en mayo
☐ Elección de noviembre
☐ Otra _____

Elecciones Primarias:
Deberá declarar un solo partido político para votar en una elección primaria:
☐ Demócrata
☐ Republicano
☐ Cualquier votación secundaria resultante

7. Si pidió que se envíe su boleta a otra dirección (distinta a la de su residencia), indique adónde hay que enviarla. Véase el reverso para instrucciones.
☐ La dirección postal que aparece en mi certificado de inscripción electoral
☐ Asilo de ancianos o centro de cuidado a largo plazo
☐ Hospital
☐ Centro de Jubilados
☐ Dirección de la cárcel
☐ Pariente, indique el parentesco _____
☐ Dirección fuera del condado (véase Cuadro #9)

8. Si escogió "Expectativa de estar fuera del condado" Véase al dorso para instrucciones.
Fecha en que podrá recibir su correspondencia en la dirección. | Fecha de regreso a la dirección residencial.

9. Información de contacto (opcativa)
Deberá declarar un número telefónico y/o correo electrónico:
Favor de dar su número telefónico y/o correo electrónico.
*Utilizado en caso de que la oficina tenga preguntas.

10. "Certifico que la información que se proporciona mediante esta solicitud es cierta y entiendo que es delito dar información falsa."

FIRME AQUÍ
Si el solicitante no puede firmar o hacer una marca en la presencia de un testigo, el testigo deberá completar Cuadros #11a-b.

11a. Si el solicitante no puede marcar Cuadro #10, el testigo deberá marcar esta casilla.
X _____
Firma del Testigo/Asistente.
Dirección _____
Estado _____
Número de apartamento (si aplica) _____

Si alguien le ayudó a completar esta solicitud o se la envió para usted, entonces esa persona debe de completar la sección a continuación.
X _____
Nombre completo del Testigo/Asistente en letra de molde.
Ciudad _____
Código postal _____

11b. Véase al dorso para definiciones de Testigo y Asistencia.
☐ Si usted actúa como Testigo, favor de marcar este cuadro.
☐ Si usted actúa como Asistente, favor de marcar este cuadro.
★ Si usted actúa como Testigo y Asistente, favor de marcar ambos cuadros.
Parentesco entre el/la Solicitante y su Testigo (Véase al dorso para instrucciones o aclaraciones) _____

This form is available in English. To obtain the English version, please call your early voting clerk or the Secretary of State's Office toll-free at 1.800.252.8683.

1078

Doc ID: 21641538   Page: 1 of 1.

**WARNING:** (1) Knowingly possessing another person's ballot or carrier envelope may be a crime unless you provide your signature, printed name and address (2) A person commits an offense if the person compensates another person or receives compensation for depositing a carrier envelope in the mail as part of a scheme in which the person is compensated based on the number of carrier envelopes deposited. For additional information on offenses related to carrier envelopes, please see the "**Information About Returning your Carrier Envelope,**" included with the materials sent to you with your ballot.

**ADVERTENCIA:** (1) El acto de poseer conscientemente la boleta o el sobre de envío de otra persona puede ser un delito a menos de que usted proporcione su firma, nombre impreso, y su dirección. (2) Una persona comete un delito si recompensa o recibe compensación a cambio de depositar el sobre de envío en el correo como parte de un plan, en el cual la persona es recompensada en base al número de sobres de envío depositados. Para obtener información adicional sobre los delitos relacionados con los sobres de envío, por favor vea la "**Información Sobre Cómo Devolver su Sobre de Envío,**" incluido con los materiales enviados a usted con su boleta.

22 – Prescribed by Secretary of State – 12/17
Section 86.013, Texas Election Code 173704

ZAPATA, ADELA
VUID# 1053744584
DISTRICT #5
BOND ELECTION 05/05/18

*City Secretary's Office*
*Received*
A: ___
Date 5/1/18

**CARRIER ENVELOPE FOR EARLY VOTING BALLOT**
*(SOBRE DE ENVÍO PARA LA BOLETA DE VOTACIÓN ANTICIPADA)*

Perla Lara, City Secretary
Early Voting Clerk *(Secretario de Votación Anticipada)*

P.O. Box 220/1300 Houston Ave
Mailing Address *(Dirección Postal)*

McAllen                    Texas        78505-0220
City *(Ciudad)*                         Zip *(Código Postal)*



MCALLEN TX 785--
30 APR 2018 PM 2 T

OFFICIAL ELECTION MAIL
Authorized by the U.S. Postal Service ®

**Instructions:** This envelope must be sealed and signed by the voter before it leaves the voter's hands. Do not sign this envelope unless the ballot has been marked by you or at your direction. This carrier envelope may not be used to return more than one voter's ballot. For instructions on the methods and deadlines to deliver this carrier envelope, see the "Information About Returning your Carrier Envelope," included with the materials sent to you with your ballot. (Instrucciones al Votante: Selle este sobre y después firme su nombre en el espacio proporcionado abajo. Este sobre debe de ser sellado y firmado por el votante antes de que el votante lo entregue. No firme este sobre a menos de que la boleta haya sido llenada por usted o bajo su dirección. Este sobre de envío no debe ser utilizado para entregar la boleta de más de un solo votante. Para obtener instrucciones sobre los métodos y plazos para entregar este sobre de envío, vea la "Información Sobre Cómo Devolver su Sobre de Envío," incluido con los materiales enviados a usted con su boleta.

**Oath of Person Assisting Voter:** I swear (or affirm) that I will not suggest, by word, sign, or gesture, how the voter should vote; I will confine my assistance to answering the voter's questions, to stating propositions on the ballot, and to naming candidates and, if listed, their political parties; I will prepare the voter's ballot as the voter directs; and I am not the voter's employer, an agent of the voter's employer, or an officer or agent of a labor union to which the voter belongs. (Juramento de la Persona Asistiendo al Votante: Juro (o afirmo) que no sugeriré con palabras, señales, o gestos, la manera en la cual el votante debe votar; limitaré mi asistencia a responder las preguntas del votante, leer propuestas en la boleta, nombrar a los candidatos, y si es mencionado, su partido político; prepararé la boleta del votante de acuerdo a sus instrucciones; y yo no soy el empleador del votante, un agente del empleador del votante, o un oficial o agente de un sindicato al cual el votante pertenece.)

**Instructions to Assistant:** A voter may only be assisted with reading or marking the ballot if they have a physical disability that renders them unable to write or see, or have an inability to read the language in which the ballot is written. If you are assisting the voter, you must read the oath and complete the section below, before assisting the voter. (Instrucciones al Asistente: Un votante puede recibir ayuda para leer o llenar la boleta solamente si el votante tiene una discapacidad física la cual le impide escribir o ver, o si no tiene la habilidad de leer el lenguaje en el cual la boleta está escrita. Si usted le proporciona ayuda a un votante, usted debe leer el juramento y llenar la siguiente sección abajo, antes de asistir al votante.)

**Instructions to Witness:** You are serving as a witness for _____ (name of voter). You must complete the section below if you witness the mark of the voter, or if the voter cannot make a mark, check here ☐. (Instrucciones al Testigo: Usted está fungiendo como testigo para _____ (nombre del votante). Usted debe llenar la siguiente sección abajo si usted fue testigo de que el votante firmó, o de que el votante no puede firmar. Si el votante no puede firmar, marque sus iniciales aquí ☐.)

**Instructions to Person Depositing Carrier Envelope in Mail or to Common or Contract Carrier:** If you are assisting a voter by depositing the carrier envelope in the mail or with a common or contract carrier, you must complete the section below. (Instrucciones a la Persona Quien Deposita el Sobre de Envío en el Correo o Entregue al Transportista Público o Comercial: Si usted asistirá a votante a depositar el sobre de envío en el correo o con un transportista público o comercial, usted debe llenar la sección que aparece abajo.)

If you are an assistant or witness, check the appropriate box below and provide information: (Si usted es un asistente o testigo, marque la casilla correcta y proporcione su información):

| | Signature (Firma) | Printed Name (Nombre impreso) | Street Address (Domicilio residencial) |
|---|---|---|---|
| ☐ Assistant/ Asistente ☐ Witness/ Testigo | | | |
| ☐ Assistant/ Asistente ☐ Witness/ Testigo | | | |

Completed by Early Voting Clerk: Name of Voter (Nombre del votante): _____

Name of Election (Nombre de Elección): _____

Date of Election (Fecha de Elección): 5-5-2018

**I certify that the enclosed ballot expresses my wishes, independent of any dictation or undue persuasion by any person. (Certifico que la boleta adjunta expresa mis deseos, independientemente de ningún dictado o persuasión indebida por parte de cualquier persona.)**

SEAL ENVELOPE AND SIGN OVER SEALED FLAP
(SELLE EL SOBRE Y FIRME ENCIMA DE SOLAPA DEL SOBRE)

✗ SIGNATURE OR MARK OF VOTER (FIRMA O MARCA DEL VOTANTE)

Bond Election

AW5-42
Prescribed by Secretary of State
Sec. 87.0431, Texas Election Code
3/07

## NOTICE OF REJECTED BALLOT

This is to serve as notice that your ballot for the __05/05/2018 - BOND__ Election was rejected by the early voting ballot board and was not counted.

Name of Voter _MARIA Salas_

VUID Number _705360 9960_

Reason for Rejection: (Check As Appropriate)

_____ 1) Certificate on carrier envelope was not properly executed.

    _____ You failed to sign your signature or make your mark.

    _____ The witness failed to indicate on the envelope that you could not make a mark.

    _____ The assistant or witness failed to print their name.

    _____ The assistant or witness failed to sign their name.

    _____ The residence address of the assistant or witness was not given.

_____ 2) It was determined that the signature on the application for ballot by mail and carrier envelope was not signed by the same person.

_____ 3) Application for ballot by mail did not state a legal ground for voting by mail.

_____ 4) Voter registration records indicated you did not have an effective registration for this election.

_____ 5) Address to which ballot was mailed was not outside the county. Voting early by mail due to expected absence from the county requires balloting materials be mailed to an address outside the county.

_____ 6) The residence address on the statement of residence is not located in the political subdivision conducting the election.

_____ 7) The mailing address on the application for ballot by mail did not match your voter registration address nor did the mailing address match any addresses provided on your statement of residence. Since you did not indicate on your application for a ballot by mail that you were having your ballot mailed to a hospital, retirement center, long term care facility, nursing home, jail, or a relative, your ballot was rejected.

_____ 8) The statement of residence was not included in the carrier envelope.

_____ 9) No identification was included with your mail ballot.

____✓____ 10) Other: _Signature on application and Carrier envelope did not match._

_____
Signature of Early Voting Ballot Board Judge

_5-7-2018_
Date

**MARIA SALAS**
**612 S 11TH ST APT 1**
**MCALLEN, TX 78501**

10536094604   mc 5

# Ballot By Mail Request Form

Registration Address

Maria Salas
612 S 11th St Apt 1
McAllen, TX 78501

I am over 65 years of age and requesting an **Annual Ballot By Mail** to receive a ballot for all elections in 2018, including any **Democratic Party** elections, local elections, and the November 2018 General Election. Mail my ballots to the address indicated above (unless noted otherwise below).

**SIGNATURE(FIRMA)**
*Must be signed. Do not print. If you cannot sign, make a mark and have witness fill out the box to the right.*

X _____

I certify that the information given in this application is true, and I understand that giving false information in this application is a crime.

☐ If you are not able to receive ballots at the address where you are registered to vote, the ballot may be mailed to an alternate address. This address may only be one of the following. Check which address you are using:

☐ A hospital, nursing home, retirement center or other long-term care facility.
☐ The address of a person related to applicant. Relationship:
☐ Mailing Address listed on applicant's voter registration card.

Mailing Address

Maria Salas
612 S 11th St Apt 1
McAllen, TX 78501

Address where ballot
should be sent, if different:

_____
_____
_____
_____

**FOR WITNESS (Only if Applicant Cannot Sign):**
If applicant is unable to make a mark,
Witness shall check here:☐
Witness Name _Dahlia Montez_
Witness Address _McAllen, TX 78501_
Relationship to Applicant (Check One)
☐ spouse ☑ child ☐ reside at same address as applicant
☐ other:
Witness Signature _____
Date _2/13/18_

If you are unable to sign your name (due to a physical disability or illiteracy), the application may be signed for you by a Witness. You must affix your mark to the application, or if you are unable to make a mark, then the Witness must sign and provide his or her printed name and residence address. Unless the Witness is a close relative of the voter (parent, grandparent, spouse, child or sibling) it is a Class B misdemeanor for a person to witness more than one application in a calendar year.

OFFICE USE ONLY
Voter ID 1053609460
Precinct 01

FEB 21 2018

977

WARNING: (1) Knowingly possessing another person's ballot or ballot envelope may be a crime unless you provide your signature, printed name and address (2) A person commits an offense if the person compensates another person or receives compensation for depositing a carrier envelope in the mail as part of a scheme in which the person is compensated based on the number of carrier envelopes deposited. For additional information on offenses related to carrier envelopes, please see the "Information About Returning your Carrier Envelope," included with the materials sent to you with your ballot.

ADVERTENCIA: (1) El acto de poseer conscientemente la boleta o el sobre de envío de otra persona puede ser un crimen, a menos de que usted proporcione su firma, nombre impreso, y su dirección. (2) Una persona comete un delito si recompensa o recibe compensación a cambio de depositar el sobre de envío en el correo como parte de un plan en el cual la persona es recompensada en base al número de sobres de envío depositados. Para obtener información adicional sobre los delitos relacionados con los sobres de envío, por favor vea la "Información Sobre Cómo Devolver su Sobre de Envío," incluido con los materiales enviados a usted con su boleta.

22 – Prescribed by Secretary of State – 12/17
Section 86.013, Texas Election Code 1737/04

SALAS, MARIA
VUID# 1053609460
DISTRICT #5
BOND ELECTION 05/05/18

McALLEN TX 785
27 APR 2018 PM 2 T

Date 4/30/18

City Secretary's Office
Received

TO (A):

CARRIER ENVELOPE FOR EARLY VOTING BALLOT
(SOBRE DE ENVÍO PARA LA BOLETA DE VOTACIÓN ANTICIPADA)

Perla Lara, City Secretary
Early Voting Clerk (Secretario de Votación Anticipada)

P.O. Box 220/1300 Houston Ave
Mailing Address (Dirección Postal)

McAllen                          Texas 78505-0220
City (Ciudad)                    Zip (Código Postal)

★ OFFICIAL ★
ELECTION MAIL
Authorized by the U.S. Postal Service

RECEIVED
APR 30 2018
CITY OF McALLEN
MAIL CENTER



**Instructions:** This envelope must be sealed and signed by the voter before it leaves the voter's hands. Do not sign this envelope unless the ballot has been marked by you or at your direction. This carrier envelope may not be used to return more than one voter's ballot. For instructions on the methods and deadlines to deliver this carrier envelope, see the "Information About Returning your Carrier Envelope," included with the materials sent to you with your ballot. (Instrucciones al Votante: Selle este sobre y después firme su nombre en el espacio proporcionado abajo. Este sobre debe de ser sellado y firmado por el votante antes de que el votante lo entregue. No firme este sobre a menos de que la boleta haya sido llenada por usted o bajo su dirección. Este sobre de envío no debe ser utilizado para entregar la boleta de más de un solo votante. Para obtener instrucciones sobre los métodos y plazos para entregar este sobre de envío, vea la "Información Sobre Cómo Devolver su Sobre de Envío," incluido con los materiales enviados a usted con su boleta.)

I certify that the enclosed ballot expresses my wishes independent of any dictation or undue persuasion by any person. (Certifico que la boleta adjunta expresa mis deseos independientemente de ningún dictado o persuasión indebida por parte de cualquier persona.)

SEAL ENVELOPE AND SIGN OVER SEALED FLAP
(SELLE EL SOBRE Y FIRME ENCIMA DE SOLAPA DEL SOBRE)

➡

X _Maria Salas_

**SIGNATURE OR MARK OF VOTER (FIRMA O MARCA DEL VOTANTE)**

**Oath of Person Assisting Voter:** I swear (or affirm) that I will not suggest, by word, sign, or gesture, how the voter should vote; I will confine my assistance to answering the voter's questions, to stating propositions on the ballot, and to naming candidates and, if listed, their political parties; I will prepare the voter's ballot as the voter directs; and I am not the voter's employer, an agent of the voter's employer or an officer or agent of a labor union to which the voter belongs. (Juramento de la Persona Asistiendo al Votante: Juro (o afirmo) que no sugeriré con palabras, señales, o gestos, la manera en la cual el votante debe votar; limitaré mi asistencia a responder las preguntas del votante, leer proposiciones en la boleta, nombrar a los candidatos, y si es mencionado, su partido político; prepararé la boleta del votante de acuerdo a sus instrucciones; y yo no soy el empleador del votante, un agente del empleador del votante, o un oficial o agente de un sindicato al cual el votante pertenece.)

_____  (name of voter). You must complete the section below if you witness the mark of the voter, or if the voter cannot make a mark. (nombre del votante). Usted debe llenar la siguiente sección abajo si usted fue testigo de que el votante firmó, o de que el votante no puede firmar. Si el votante no puede firmar, marque sus iniciales aquí _____.)

**Instructions to Assistant:** A voter may only be assisted with reading or marking the ballot if they have a physical disability that renders them unable to write or see, or have an inability to read the language in which the ballot is written. If you are assisting the voter, you must read the oath and complete the section below, before assisting the voter. (Instrucciones al Asistente: Un votante puede recibir ayuda para leer o llenar la boleta solamente si el votante tiene una discapacidad física la cual le impide escribir o ver, o si no tiene la habilidad de leer el lenguaje en el cual la boleta está escrita. Si usted le proporcionará ayuda a un votante, usted debe leer el juramento y llenar la siguiente sección abajo, antes de asistir al votante.)

**Instructions to Witness:** You are serving as a witness for _____

☐ Assistant/
☐ Assistente
☐ Witness/
☐ Testigo

Signature (Firma)

Printed Name (Nombre impreso)

Street Address (Domicilio residencial)

☐ Assistant/
☐ Assistente
☐ Witness/
☐ Testigo

Signature (Firma)

Printed Name (Nombre impreso)

Street Address, (Domicilio residencial)

**Instructions to Person Depositing Carrier Envelope in Mail or to Common or Contract Carrier:** If you are assisting a voter by depositing the carrier envelope in the mail or with a common or contract carrier, you must complete the section below. (Instrucciones a la Persona Quien Deposite el Sobre de Envío en el Correo o Entregue al Transportista Público o Comercial: Si usted asistirá a votante a depositar el sobre de envío en el correo o con un transportista público o comercial, usted debe llenar la sección que aparece abajo.)

If you are an assistant or witness, check the appropriate box below and provide information: (Si usted es un asistente o testigo, marque la casilla correcta y proporcione su información):

Completed by Early Voting Clerk: Name of Voter (Nombre del votante):

Name of Election (Nombre de Elección):

**Bond Election**

Date of Election (Fecha de Elección): 5-5-2018

AW5-42
Prescribed by Secretary of State
Sec. 87.0431, Texas Election Code
3/07

## NOTICE OF REJECTED BALLOT

This is to serve as notice that your ballot for the __05/05/2018 - BOND__ Election was rejected by the early voting ballot board and was not counted.

Name of Voter __Leona Diener__

VUID Number __10535422 43__

Reason for Rejection: (Check As Appropriate)

_____ 1) Certificate on carrier envelope was not properly executed.
  _____ You failed to sign your signature or make your mark.
  _____ The witness failed to indicate on the envelope that you could not make a mark.
  _____ The assistant or witness failed to print their name.
  _____ The assistant or witness failed to sign their name.
  _____ The residence address of the assistant or witness was not given.

_____ 2) It was determined that the signature on the application for ballot by mail and carrier envelope was not signed by the same person.

_____ 3) Application for ballot by mail did not state a legal ground for voting by mail.

_____ 4) Voter registration records indicated you did not have an effective registration for this election.

_____ 5) Address to which ballot was mailed was not outside the county. Voting early by mail due to expected absence from the county requires balloting materials be mailed to an address outside the county.

_____ 6) The residence address on the statement of residence is not located in the political subdivision conducting the election.

_____ 7) The mailing address on the application for ballot by mail did not match your voter registration address nor did the mailing address match any addresses provided on your statement of residence. Since you did not indicate on your application for a ballot by mail that you were having your ballot mailed to a hospital, retirement center, long term care facility, nursing home, jail, or a relative, your ballot was rejected.

_____ 8) The statement of residence was not included in the carrier envelope.

_____ 9) No identification was included with your mail ballot.

__✓__ 10) Other: __Signatures on application and Carrier envelope did not match.__

_____
Signature of Early Voting Ballot Board Judge

__5-7-2018__
Date

**LEONA DIENER
2105 S CYNTHIA ST APT B323
MCALLEN, TX  78503**

1085

AW5-42
Requerido por el Secretario de Estado
Frac. 87.0431, Código Electoral
3/07

## AVISO DEL RECHAZO DE UNA PAPELETA ELECTORAL

Por medio de éste se le notifica que la papeleta electoral que usted entregó en las elecciones **05/05/2018 BOND** fue rechazada por el Consejo de Votación por Adelantado y no fue incluido en el conteo final.

Nombre del elector _____
VUID de inscripción electoral número _____

La razón del rechazo fue (a continuación indique las razones):

_____  1) La constancia que aparece en el sobre de entrega no se firmó en forma apropiada.
    \_\_\_\_\_ Le falta su firma o marca.
    \_\_\_\_\_ El testigo no anotó en el sobre que Ud. no puede hacer su marca.
    \_\_\_\_\_ Falta el nombre del testigo o la persona quien le ayudó en letras de molde.
    \_\_\_\_\_ Falta la firma del testigo o de la persona quien le ayudó votar.
    \_\_\_\_\_ Falta el domicilio del testigo o el de la persona quien le ayudó votar.

_____  2) Un análisis de las firmas que aparecen en la solicitud de una papeleta postal y el sobre de entrega indica que éstas no son la letra de la misma persona.

_____  3) De acuerdo a la ley, la razón dada en la solicitud de una papeleta postal no lo califica para poder votar por correo.

_____  4) Las actas del registro electoral indican que en la fecha en que celebraron estas elecciones, usted no estaba inscrito como votante.

_____  5) El domicilio al cual se envió la papeleta está ubicado dentro de este condado. Sólo aquellas personas que anticipan estar fuera del condado pueden votar por anticipado y por correo, por esta razón la papeleta electorales se tiene que enviar a un domicilio ubicado fuera del condado.

_____  6) El domicilio indicado en la solicitud de una papeleta postal no queda dentro del área geográfica de la entidad política que efectúa estas elecciones.

_____  7) El domicilio indicado en la solicitud de una papeleta postal no es igual al indicado en: la constancia de domicilio permanente ni su inscripción electoral ni es la dirección postal indicada en su solicitud de inscripción. Además, usted no indicó que su papeleta debería enviarse a un hospital, centro de jubilación, centro de cuidados médicos a largo plazo, centro de enfermería o el hogar de algún familiar.

_____  8) La constancia de domicilio permanente no vino incluida en el sobre de entrega.

_____  9) No incluyó ninguna identificación con su boleta por correo.

_____  10) Otra: _____

_____
Firma del Juez del Consejo Administrativo de
las Papeletas de Votación por Adelantado

_____
Fecha

1053542243 -A          MC-6

# Ballot By Mail Request Form

OFFICE USE ONLY
Voter ID 1053542243
Precinct 150
01        300156



Registration Address
Leona Diener
2105 S Cynthia St Apt B323
McAllen, TX 78503

I am over 65 years of age and requesting an **Annual Ballot By Mail** to receive a ballot for all elections in 2018, including any **Democratic Party** elections, local elections, and the November 2018 General Election. Mail my ballots to the address indicated above (unless noted otherwise below).

SIGNATURE(FIRMA) _____

*Must be signed. Do not print. If you cannot sign, make a mark and have witness fill out the box to the right.*

I certify that the information given in this application is true, and I understand that giving false information in this application is a crime.

If you are not able to receive ballots at the address where you are registered to vote, the ballot may be mailed to an alternate address. This address may only be one of the following. Check which address you are using:

☐ A hospital, nursing home, retirement center or other long-term care facility.
☐ The address of a person related to applicant. Relationship: _____
☑ Mailing Address listed on applicant's voter registration card.

Mailing Address
Leona Diener
2105 S Cynthia St Apt B323
McAllen, TX 78503

Address where ballot should be sent, if different:
_____
_____
_____

**FOR WITNESS (Only if Applicant Cannot Sign):**
If applicant is unable to make mark,
Witness shall check here: ☐
Witness Name _____
Witness Address _____
_____

Relationship to Applicant *(Check One)*
☐ spouse ☐ child ☐ reside at same address as applicant
☐ other: _____
Witness Signature _____
Date _____

If you are unable to sign your name (due to a physical disability or illiteracy), the application may be signed for you by a Witness. You must affix your mark to the application or, if you are unable to make a mark, then the Witness must sign and provide his or her printed name and residence address. Unless the Witness is a close relative of the voter (parent, grandparent, spouse, child or sibling), it is a Class B misdemeanor for a person to witness more than one application in a calendar year.

**WARNING:** (1) Knowingly possessing another person's ballot or carrier envelope may be a crime unless you provide your signature, printed name and address (2) A person commits an offense if the person compensates another person or receives compensation for depositing a carrier envelope in the mail as part of a scheme in which the person is compensated based on the number of carrier envelopes deposited. For additional information on offenses related to carrier envelopes, please see the "Information About Returning your Carrier Envelope," included with the materials sent to you with your ballot.

**ADVERTENCIA:** (1) El acto de poseer conscientemente la boleta o el sobre de envío de otra persona puede ser un delito a menos que usted proporcione su firma, nombre impreso, y su dirección. (2) Una persona comete un delito si recompensa o recibe compensación a cambio de depositar el sobre de envío en el correo como parte de un plan en el cual la persona es recompensada en base al número de sobres de envío depositados. Para obtener información adicional sobre los delitos relacionados con los sobres de envío, por favor vea la "Información Sobre Cómo Devolver su Sobre de Envío," incluido con los materiales enviados a usted con su boleta.

7-22 – Prescribed by Secretary of State – 12/17
Section 86.013, Texas Election Code 173704

DIENER, LEONA
VUID# 1053542243
DISTRICT #6
BOND ELECTION 05/05/18

TO: *City Secretary's Off*
Received

Date 5-3-18

OFFICIAL ELECTION MAIL
Authorized by the U.S. Postal Service ®

RECEIVED
CITY OF MCALLEN MAIL CENTER
MAY 03 2018

**CARRIER ENVELOPE FOR EARLY VOTING BALLOT**
(SOBRE DE ENVÍO PARA LA BOLETA DE VOTACIÓN ANTICIPADA)

**Perla Lara, City Secretary**
Early Voting Clerk (Secretario de Votación Anticipada)

**P.O. Box 220/1300 Houston Ave**
Mailing Address (Dirección Postal)

**McAllen**                    **Texas**
City (Ciudad)                  Zip (Código Postal)

**78505-0220**

**Instructions:** This envelope must be sealed and signed by the voter before it leaves the voter's hands. Do not sign this envelope unless the ballot it has been marked by you or at your direction. This carrier envelope may not be used to return more than one voter's ballot. For instructions on the methods and deadlines to deliver this carrier envelope, see the "Information About Returning your Carrier Envelope," included with the materials sent to you with your ballot. (Instrucciones al Votante: Selle este sobre y después firme su nombre en el espacio proporcionado abajo. Este sobre debe de ser sellado y firmado por el votante antes de que el votante lo entregue. No firme este sobre a menos de que la boleta haya sido llenada por usted o bajo su dirección. Este sobre de envío no debe ser utilizado para entregar la boleta de más de un solo votante. Para obtener instrucciones sobre los métodos y plazos para entregar este sobre de envío, vea la "Información Sobre Cómo Devolver su Sobre de Envío," incluido con los materiales enviados a usted con su boleta.)

I certify that the enclosed ballot expresses my wishes independent of any dictation or undue persuasion by any person. (Certifico que la boleta adjunta expresa mis deseos independientemente de ningún dictado o persuasión indebida por parte de cualquier persona.)

---

SEAL ENVELOPE AND SIGN OVER SEALED FLAP

(SELLE EL SOBRE Y FIRME ENCIMA DE SOLAPA DEL SOBRE)

↓

X _____

SIGNATURE OR MARK OF VOTER (FIRMA O MARCA DEL VOTANTE)

---

**Oath of Person Assisting Voter:** I swear (or affirm) that I will not suggest, by word, sign, or gesture, how the voter should vote; I will confine my assistance to answering the voter's questions, to stating propositions on the ballot, and to naming candidates and, if listed, their political parties; I will prepare the voter's ballot as the voter directs; and I am not the voter's employer, an agent of the voter's employer, or an officer or agent of a labor union to which the voter belongs. (Juramento de la Persona Asistiendo al Votante: Juro (o afirmo) que no sugeriré con palabras, señales, o gestos, la manera en la cual el votante debe votar; limitaré mi asistencia a responder las preguntas del votante, leer proposiciones en la boleta, nombrar a los candidatos, y si es mencionado, su partido político; prepararé la boleta del votante de acuerdo a sus instrucciones; y yo no soy el empleador del votante, un agente del empleador del votante, o un oficial o agente de un sindicato al cual el votante pertenece.)

**Instructions to Witness:** You are serving as a witness for _____ (name of voter). You must complete the section below if you witness the mark of the voter, or if the voter cannot make a mark. If the voter cannot make a mark, check here _____ (Instrucciones al Testigo: Usted está fungiendo como testigo para _____ (nombre del votante). Usted debe llenar la siguiente sección abajo si usted fue testigo de que el votante firmó, o de que el votante no puede firmar. Si el votante no puede firmar, marque sus iniciales aquí _____.)

**Instructions to Assistant:** A voter may only be assisted with reading or marking the ballot if they have a physical disability that renders them unable to write or see, or have an inability to read the language in which the ballot is written. If you are assisting the voter, you must read the oath and complete the section below, before assisting the voter. (Instrucciones al Asistente: Un votante puede recibir ayuda para leer o llenar la boleta solamente si el votante tiene una discapacidad física la cual le impide escribir o ver, o si no tiene la habilidad de leer el lenguaje en el cual la boleta está escrita. Si usted le proporcionará ayuda a un votante, usted debe leer el juramento y llenar la siguiente sección abajo, antes de asistir al votante.)

If you are an assistant or witness, check the appropriate box below and provide information: (Si usted es un asistente o testigo, marque la casilla correcta y proporcione su información):

☐ Assistant/ Asistente

☐ Witness/ Testigo

Signature (Firma)

Printed Name (Nombre impreso)

Street Address (Domicilio residencial)

**Instructions to Person Depositing Carrier Envelope in Mail or to Common or Contract Carrier:** If you are assisting a voter by depositing the carrier envelope in the mail or with a common or contract carrier, you must complete the section below. (Instrucciones a la Persona Quien Deposite el Sobre de Envío en el Correo o Entregue al Transportista Público o Comercial: Si usted asistirá al votante a depositar el sobre de envío en el correo o con un transportista público o comercial, usted debe llenar la sección que aparece abajo.)

☐ Assistant/ Asistente

☐ Witness/ Testigo

Signature (Firma)

Printed Name (Nombre impreso)

Street Address (Domicilio residencial)

Completed by Early Voting Clerk: Name of Election (Nombre de Elección):

**Bond Election**

Date of Election (Fecha de Elección): 5-5-2018

Name of Voter (Nombre del votante):

AWS-42
Prescribed by Secretary of State
Sec. 87.0431, Texas Election Code
3/07

## NOTICE OF REJECTED BALLOT

This is to serve as notice that your ballot for the __05/05/2018 - BOND__ Election was rejected by the early voting ballot board and was not counted.

Name of Voter _Donna Jo Nye-Sparks._
VUID Number _10535 64311 8_

Reason for Rejection: (Check As Appropriate)

_____ 1) Certificate on carrier envelope was not properly executed.
_____ You failed to sign your signature or make your mark.
_____ The witness failed to indicate on the envelope that you could not make a mark.
_____ The assistant or witness failed to print their name.
_____ The assistant or witness failed to sign their name.
_____ The residence address of the assistant or witness was not given.

_____ 2) It was determined that the signature on the application for ballot by mail and carrier envelope was not signed by the same person.

_____ 3) Application for ballot by mail did not state a legal ground for voting by mail.

_____ 4) Voter registration records indicated you did not have an effective registration for this election.

_____ 5) Address to which ballot was mailed was not outside the county. Voting early by mail due to expected absence from the county requires balloting materials be mailed to an address outside the county.

_____ 6) The residence address on the statement of residence is not located in the political subdivision conducting the election.

_____ 7) The mailing address on the application for ballot by mail did not match your voter registration address nor did the mailing address match any addresses provided on your statement of residence. Since you did not indicate on your application for a ballot by mail that you were having your ballot mailed to a hospital, retirement center, long term care facility, nursing home, jail, or a relative, your ballot was rejected.

_____ 8) The statement of residence was not included in the carrier envelope.

_____ 9) No identification was included with your mail ballot.

___✓___ 10) Other: _Signature on application and Carrier envelope did not match._

_____
Signature of Early Voting Ballot Board Judge

_5-7-2018_
Date

**DONNA JO NYE-SPARKS
329 S MCCOLL RD
MCALLEN, TX  78501**

AW5-42
Requerido por el Secretario de Estado
Frac. 87.0431, Código Electoral
3/07

## AVISO DEL RECHAZO DE UNA PAPELETA ELECTORAL

Por medio de éste se le notifica que la papeleta electoral que usted entregó en las elecciones **05/05/2018 BOND** fue rechazada por el Consejo de Votación por Adelantado y no fue incluido en el conteo final.

Nombre del elector          _____

VUID de inscripción electoral número _____

La razón del rechazo fue (a continuación indique las razones):

_____    1)    La constancia que aparece en el sobre de entrega no se firmó en forma apropiada.
                    _____ Le falta su firma o marca.
                    _____ El testigo no anotó en el sobre que Ud. no puede hacer su marca.
                    _____ Falta el nombre del testigo o la persona quien le ayudó en letras de molde.
                    _____ Falta la firma del testigo o de la persona quien le ayudó votar.
                    _____ Falta el domicilio del testigo o el de la persona quien le ayudó votar.

_____    2)    Un análisis de las firmas que aparecen en la solicitud de una papeleta postal y el sobre de entrega indica que éstas no son la letra de la misma persona.

_____    3)    De acuerdo a la ley, la razón dada en la solicitud de una papeleta postal no lo califica para poder votar por correo.

_____    4)    Las actas del registro electoral indican que en la fecha en que celebraron estas elecciones, usted no estaba inscrito como votante.

_____    5)    El domicilio al cual se envió la papeleta está ubicado dentro de este condado. Sólo aquellas personas que anticipan estar fuera del condado pueden votar por anticipado y por correo, por esta razón la papeleta electorales se tiene que enviar a un domicilio ubicado fuera del condado.

_____    6)    El domicilio indicado en la solicitud de una papeleta postal no queda dentro del área geográfica de la entidad política que efectúa estas elecciones.

_____    7)    El domicilio indicado en la solicitud de una papeleta postal no es igual al indicado en: la constancia de domicilio permanente ni su inscripción electoral ni es la dirección postal indicada en su solicitud de inscripción. Además, usted no indicó que su papeleta debería enviarse a un hospital, centro de jubilación, centro de cuidados médicos a largo plazo, centro de enfermería o el hogar de algún familiar.

_____    8)    La constancia de domicilio permanente no vino incluida en el sobre de entrega.

_____    9)    No incluyó ninguna identificación con su boleta por correo.

_____    10)    Otra: _____

_____
Firma del Juez del Consejo Administrativo de
las Papeletas de Votación por Adelantado

_____
Fecha _____

1053564311 - A        mc-6

# Ballot By Mail Request Form

Registration Address
Donna Jo Nye-Sparks
329 S McColl Rd
McAllen, TX 78501

**OFFICE USE ONLY**
Voter ID 1053564311.
Precinct 7       230211
(01)

1053564311

I am over 65 years of age and requesting an **Annual Ballot By Mail** to receive a ballot for all elections in 2018, including any **Democratic Party** elections, local elections, and the November 2018 General Election. Mail my ballots to the address indicated above (unless noted otherwise below).

**SIGNATURE (FIRMA)**

*Must be signed. Do not print. If you cannot sign, make a mark and have witness fill out the box to the right.*

I certify that the information given in this application is true, and I understand that giving false information in this application is a crime.

If you are not able to receive ballots at the address where you are registered to vote, the ballot may be mailed to an alternate address. This address may only be one of the following. Check which address you are using:

☐ A hospital, nursing home, retirement center or other long-term care facility.
☐ The address of a person related to applicant. Relationship: _____
☐ Mailing Address listed on applicant's voter registration card.

**FOR WITNESS (Only if Applicant Cannot Sign):**
If applicant is unable to make mark,
Witness shall check here: ☐
Witness Name _____
Witness Address _____
_____

Relationship to Applicant *(Check One)*
☐ spouse ☐ child ☐ reside at same address as applicant
☐ other: _____
Witness Signature _____
Date _____

If you are unable to sign your name (due to a physical disability or illiteracy), the application may be signed for you by a Witness. You must affix your mark to the application or, if you are unable to make a mark, then the Witness must sign and provide his or her printed name and residence address. Unless the Witness is a close relative of the voter (parent, grandparent, spouse, child or sibling), it is a Class B misdemeanor for a person to witness more than one application in a calendar year.

Mailing Address
Donna Nye-Sparks
329 S McColl Rd
McAllen, TX 78501

Address where ballot
should be sent, if different:

_____
_____
_____

**NYE-SPARKS, DONNA JO** MCALLEN TX 785
VUID#: 1053564311
DISTRICT #6
BOND ELECTION 05/05/18

26 APR 2018 PM 2:1

**WARNING.** (1) Knowingly possessing another person's ballot or carrier envelope may be a crime unless you provide your signature, printed name and address (2) A person commits an offense if the person compensates another person or receives compensation for depositing a carrier envelope in the mail as part of a scheme in which the person is compensated based on the number of carrier envelopes deposited. For additional information on offenses read "Information About Returning your Carrier Envelope," included with the materials sent to you with your ballot.

**ADVERTENCIA:** (1) El acto de poseer consentemente la boleta o el sobre de envío de otra persona puede ser un delito a menos de que usted proporcione su firma, nombre impreso, y su dirección. (2) Una persona comete un delito si recompensa o recibe compensación a cambio de depositar el sobre de envío en el correo como parte de un plan en el cual la persona es recompensada en base al número de sobres de envío depositados. Para obtener información adicional sobre los delitos relacionados con los sobres de envío, por favor vea la "Información Sobre Cómo Devolver su Sobre de Envío," incluido con los materiales enviados a usted con su boleta.

5-22 – Prescribed by Secretary of State – 12/17
Section 86.013, Texas Election Code 173704

**CARRIER ENVELOPE FOR EARLY VOTING BALLOT**
*(SOBRE DE ENVÍO PARA LA BOLETA DE VOTACIÓN ANTICIPADA)*

Early Voting Clerk *(Secretario de Votación Anticipada)*

**Perla Lara, City Secretary**

Mailing Address *(Dirección Postal)*

**P.O. Box 220/1300 Houston Ave**

City *(Ciudad)*

**McAllen**          **Texas**          **78505-0220**

Zip *(Código Postal)*




OFFICIAL ELECTION MAIL
Authorized by the U.S. Postal Service

APR 27 2018
MCALLEN

City Secretary
Date: 4/27/18

**Instructions:** This envelope must be sealed and signed by the voter before it leaves the voter's hands. Do not sign this envelope unless the ballot has been marked by you or at your direction. This carrier envelope may not be used to return more than one voter's ballot. For instructions on the methods and deadlines to deliver this carrier envelope, see the "Information About Returning your Carrier Envelope," included with the materials sent to you with your ballot. (Instrucciones al Votante: Selle este sobre y después firme su nombre en el espacio proporcionado abajo. Este sobre debe de ser sellado y firmado por el votante antes de que el votante lo entregue. No firme este sobre a menos de que la boleta haya sido llenada por usted-o bajo su dirección. Este sobre de envío no debe ser utilizado para entregar la boleta de más de un solo votante. Para obtener instrucciones sobre los métodos y plazos para entregar este sobre de envío, vea la "Información Sobre Cómo Devolver su Sobre de Envío," incluido con los materiales enviados a usted con su boleta.)

I certify that the enclosed ballot expresses my wishes independent of any dictation or undue persuasion by any person. (Certifico que la boleta adjunta expresa mis deseos independientemente de ningún dictado o persuasión indebida por parte de cualquier persona.)

SEAL ENVELOPE AND SIGN OVER SEALED FLAP
(SELLE EL SOBRE Y FIRME ENCIMA DE SOLAPA DEL SOBRE)

X _Nonne Joe Vega-Sch_
SIGNATURE OR MARK OF VOTER (FIRMA O MARCA DEL VOTANTE)

**Oath of Person Assisting Voter:** I swear (or affirm) that I will not suggest, by word, sign, or gesture, how the voter should vote; I will confine my assistance to answering the voter's questions, to stating propositions on the ballot, and to naming candidates and, if listed, their political parties; I will prepare the voter's ballot as the voter directs; and I am not the voter's employer, an agent of the voter's employer, or an officer or agent of a labor union to which the voter belongs. (Juramento de la Persona Asistiendo al Votante: Juro (o afirmo) que no sugeriré con palabras, señales, o gestos, la manera en la cual el votante debe votar; limitaré mi asistencia a responder las preguntas del votante, leer proposiciones en la boleta, nombrar a los candidatos, y si es mencionados, su partido político; prepararé la boleta de acuerdo a sus instrucciones; y yo no soy el empleador del votante, un agente del empleador del votante, o un oficial o agente de un sindicato al cual el votante pertenece.)

**Instructions to Assistant:** A voter may only be assisted with reading or marking the ballot if they have a physical disability that renders them unable to write or see, or have an inability to read the language in which the ballot is written. If you are assisting the voter, you must read the oath and complete the section below, before assisting the voter. (Instrucciones al Asistente: Un votante puede recibir ayuda para leer o llenar la boleta solamente si el votante tiene una discapacidad física la cual le impide escribir o ver, o si no tiene la habilidad de leer el lenguaje en el cual la boleta está escrita. Si usted le proporcionará ayuda a un votante, usted debe leer el juramento y llenar la siguiente sección abajo, antes de asistir al votante.)

☐ Assistant/
☐ Asistente  _____
☐ Witness/
☐ Testigo      Signature (Firma)            Printed Name (Nombre impreso)

**Instructions to Witness:** You are serving as a witness for _____ (name of voter). You must complete the section below if you witness the mark of the voter, or if the voter cannot make a mark, check here ___. If the voter cannot make a mark, check here ___. (Instrucciones al Testigo: Usted está fungiendo como testigo para _____ (nombre del votante). Usted debe llenar la siguiente sección abajo si usted fue testigo de que el votante firmó, o de que el votante no puede firmar. Si el votante no puede firmar, marque sus iniciales aquí ___.)

☐ Assistant/
☐ Asistente  _____
☐ Witness/
☐ Testigo      Signature (Firma)            Printed Name (Nombre impreso)

**Instructions to Person Depositing Carrier Envelope in Mail or to Common or Contract Carrier:** If you are assisting the voter by depositing the carrier envelope in the mail or with a common or contract carrier, you must complete the section below. (Instrucciones a la Persona Quien Deposite el Sobre de Envío en el Correo o Entregue al Transportista Público o Comercial: Si usted asistirá al votante a depositar el sobre de envío en el correo o con un transportista público o comercial, usted debe llenar la sección que aparece abajo.)

If you are an assistant or witness, check the appropriate box below and provide information: (Si usted es un asistente o testigo, marque la casilla correcta y proporcione su información):

☐ Assistant/
☐ Asistente  _____
☐ Witness/
☐ Testigo      Signature (Firma)            Printed Name (Nombre impreso)            Street Address (Domicilio residencial)

Completed by Early Voting Clerk: Name of Election (Nombre de Elección): __Bond Election__            Date of Election (Fecha de Elección): __5-5-2018__

Name of Voter (Nombre del votante): _____

AW5-42
Prescribed by Secretary of State
Sec. 87.0431, Texas Election Code
3/07

# NOTICE OF REJECTED BALLOT

This is to serve as notice that your ballot for the __05/05/2018 - BOND__ Election was rejected by the early voting ballot board and was not counted.

Name of Voter *Martina Maldonado*

VUID Number *1055262313*

Reason for Rejection: (Check As Appropriate)

_____   1)   Certificate on carrier envelope was not properly executed.
     _____ You failed to sign your signature or make your mark.
     _____ The witness failed to indicate on the envelope that you could not make a mark.
     _____ The assistant or witness failed to print their name.
     _____ The assistant or witness failed to sign their name.
     _____ The residence address of the assistant or witness was not given.

_____   2)   It was determined that the signature on the application for ballot by mail and carrier envelope was not signed by the same person.

_____   3)   Application for ballot by mail did not state a legal ground for voting by mail.

_____   4)   Voter registration records indicated you did not have an effective registration for this election.

_____   5)   Address to which ballot was mailed was not outside the county. Voting early by mail due to expected absence from the county requires balloting materials be mailed to an address outside the county.

_____   6)   The residence address on the statement of residence is not located in the political subdivision conducting the election.

_____   7)   The mailing address on the application for ballot by mail did not match your voter registration address nor did the mailing address match any addresses provided on your statement of residence. Since you did not indicate on your application for a ballot by mail that you were having your ballot mailed to a hospital, retirement center, long term care facility, nursing home, jail, or a relative, your ballot was rejected.

_____   8)   The statement of residence was not included in the carrier envelope.

_____   9)   No identification was included with your mail ballot.

__✓__   10)   Other:

*Signature on application and carrier envelope did not match.*

_____
Signature of Early Voting Ballot Board Judge

__5-7-2018__
Date

**MARTINA MALDONADO**
**909 N 9TH ST**
**MCALLEN, TX  78501**

AWS-42
Requerido por el Secretario de Estado
Frac. 87.0431, Código Electoral
3/07

## AVISO DEL RECHAZO DE UNA PAPELETA ELECTORAL

Por medio de éste se le notifica que la papeleta electoral que usted entregó en las elecciones **05/05/2018 BOND** fue rechazada por el Consejo de Votación por Adelantado y no fue incluido en el conteo final.

Nombre del elector _____
VUID de inscripción electoral número _____

La razón del rechazo fue (a continuación indique las razones):

_____  1)  La constancia que aparece en el sobre de entrega no se firmó en forma apropiada.
   _____ Le falta su firma o marca.
   _____ El testigo no anotó en el sobre que Ud. no puede hacer su marca.
   _____ Falta el nombre del testigo o la persona quien le ayudó en letras de molde.
   _____ Falta la firma del testigo o de la persona quien le ayudó votar.
   _____ Falta el domicilio del testigo o el de la persona quien le ayudó votar.

_____  2)  Un análisis de las firmas que aparecen en la solicitud de una papeleta postal y el sobre de entrega indica que éstas no son la letra de la misma persona.

_____  3)  De acuerdo a la ley, la razón dada en la solicitud de una papeleta postal no lo califica para poder votar por correo.

_____  4)  Las actas del registro electoral indican que en la fecha en que celebraron estas elecciones, usted no estaba inscrito como votante.

_____  5)  El domicilio al cual se envió la papeleta está ubicado dentro de este condado.  Sólo aquellas personas que anticipan estar fuera del condado pueden votar por anticipado y por correo, por esta razón la papeleta electorales se tiene que enviar a un domicilio ubicado fuera del condado.

_____  6)  El domicilio indicado en la solicitud de una papeleta postal no queda dentro del área geográfica de la entidad política que efectúa estas elecciones.

_____  7)  El domicilio indicado en la solicitud de una papeleta postal no es igual al indicado en: la constancia de domicilio permanente ni su inscripción electoral ni es la dirección postal indicada en su solicitud de inscripción. Además, usted no indicó que su papeleta debería enviarse a un hospital, centro de jubilación, centro de cuidados médicos a largo plazo, centro de enfermería o el hogar de algún familiar.

_____  8)  La constancia de domicilio permanente no vino incluida en el sobre de entrega.

_____  9)  No incluyó ninguna identificación con su boleta por correo.

_____  10) Otra: _____

_____
Firma del Juez del Consejo Administrativo de
las Papeletas de Votación por Adelantado

_____
Fecha

10552623LS - A   MC-6

DO NOT REMOVE PERFORATED TABS. Moisten here and fold bottom to top to seal.   DO NOT REMOVE PERFORATED TABS. Moisten here and fold bottom to top to seal.

Prescribed by the Office of the Secretary of State   Sections 84.001-84.016

## Application for Ballot by Mail

**1** Last Name (Please print information)   Suffix (Jr., Sr., III, etc.)   First Name   *Middle initial*

Maldonado

**2** Residence Address; See back of this application for instructions.   City   State   Zip Code

**3** Mail my ballot to: If mailing address differs from residence address, please complete Box #7.   City   State   Zip Code

909 N 4th St

**4** Date of Birth (mandatory)(mmddyyyy) (Optional)

RECD FEB 05 2018

**5** Reason for Voting by Mail:
☐ 65 years of age or older. (Complete Box #6a)
☐ Disability. (Complete Box #6a)
☐ Expected absence from the county. (Complete Box #8b and Box #9)
   You will receive a ballot for the upcoming election only.
☐ Confinement in jail. (Complete Box #6b)
   You will receive a ballot for the upcoming election only.

**6a** ONLY Voters 65 Years of Age or Older or Voters with a Disability:
If applying for one election, select appropriate box.
If applying once for elections in the calendar year, select "Annual Application."
☑ Annual Application

Uniform and Other Elections:
☐ May Election
☐ November Election
☑ Other

Primary Elections:
You must declare one political party to vote in a primary.
☐ Democratic Primary
☐ Republican Primary
☑ Any Resulting Runoff

**6b** ONLY Voters Absent from County or Voters Confined in Jail:
You may only apply for a ballot by mail for one election, and any resulting runoff.
Please select the appropriate box.

Uniform and Other Elections:
☐ May Election
☐ November Election
☐ Other

Primary Elections:
You must declare one political party to vote in a primary.
☐ Democratic Primary
☐ Republican Primary
☐ Any Resulting Runoff

**7** If you are requesting this ballot be mailed to a different address (other than residence), indicate where the ballot will be mailed. See reverse for instructions.
☐ Mailing Address as listed on my voter registration certificate
☐ Nursing home, assisted living facility, or long term care facility
☐ Hospital
☐ Retirement Center

**8** If you selected "expected absence from the county," see reverse for instructions.

Date you can begin to receive mail at this address _____   Date of return to residence address _____

**9** Contact Information (Optional)*
Please list phone number and/or email address:
* Used in case our office has questions.

Notice to Voter: Effective September 1, 2015, you may submit a completed, signed and scanned application to the early voting clerk at (early voting clerk's e-mail address)

**10** "I certify that the information given in this application is true, and I understand that giving false information in this application is a crime."

X _____

SIGN HERE
If applicant is unable to sign or make a mark in the presence of a witness, the witness shall complete Box #11.

If someone helped you to complete this form or mails this form for you, then that person must complete the sections below.

**11** See back for Witness and Assistant definitions.
If applicant is unable to mark Box #10 and you are acting as a Witness to that fact, please check this box and sign below. ☐

If you assisted the applicant in completing this application in the applicant's presence or e-mailed/mailed or faxed the application on behalf of the applicant, please check this box as an Assistant and sign below. ☐

*If you are acting as a Witness and Assistant, please check both boxes. Failure to complete this information is a Class A misdemeanor if signature was witnessed or applicant was assisted in completing the application.

X _____   X _____
Signature of Witness /Assistant   Printed Name of Witness/Assistant

Street Address   City   Witness' Relationship to Applicant
(Refer to instructions on back for clarification)

State   Apt Number (if applicable)   Zip

Este formulario está disponible en Español. Para conseguir la versión en Español favor de llamar sin cargo al 1.800.252.8683 a la oficina del Secretario de Estado o la Secretaría de Votación por Adelantado.

2.90858

MALDONADO, MARTINA
VUID# 1055262313
DISTRICT #6
BOND ELECTION 05/05/18

**WARNING:** (1). Knowingly possessing another person's ballot or carrier envelope may be a crime unless you provide your signature, printed name and address (2) A person commits an offense if the person compensates another person or receives compensation for depositing a carrier envelope in the mail as part of a scheme in which the person is compensated based on the number of carrier envelopes deposited. For additional information on offenses related to carrier envelopes, please see the "Information About Returning your Carrier Envelope," included with the materials sent to you with your ballot.

**ADVERTENCIA:** (1) El acto de poseer conscientemente la boleta o el sobre de envío de otra persona puede ser un delito a menos de que usted proporcione su firma, nombre impreso, y su dirección. (2) Una persona comete un delito si recompensa o recibe compensación a cambio de depositar el sobre de envío en el correo como parte de un plan en el cual la persona es recompensada en base al número de sobres de envío depositados. Para obtener información adicional sobre los delitos relacionados con los sobres de envío, por favor vea la "Información Sobre Cómo Devolver su Sobre de Envío," incluido con los materiales enviados a usted con su boleta.

Prescribed by Secretary of State – 12/17
Section 86.013, Texas Election Code 1737.04

*City Secretary's Office*
*Received*
Date 5-1-18

CARRIER ENVELOPE FOR EARLY VOTING BALLOT
(SOBRE DE ENVÍO PARA SOBRE DE VOTACIÓN ANTICIPADA)

Early Voting Clerk (Secretario de Votación Anticipada)
Perla Lara, City Secretary

Mailing Address (Dirección Postal)
P.O. Box 220 1300 Houston Ave

City (Ciudad)
McAllen                          Texas

Zip (Código Postal)
78505-0220

OFFICIAL ELECTION MAIL
RECEIVED
MAY 0 1 2018

**Instructions:** This envelope must be sealed and signed by the voter before it leaves the voter's hands. Do not sign this envelope unless the ballot has been marked by you or at your direction. This carrier envelope may not be used to return more than one voter's ballot. For instructions on the methods and deadlines to deliver this carrier envelope, see the "Information About Returning your Carrier Envelope," included with the materials sent to you with your ballot. (Instrucciones al Votante: Selle este sobre y despues firme su nombre en el espacio proporcionado abajo. Este sobre debe de ser sellado y firmado por el votante antes de que el votante lo entregue. No firme este sobre a menos de que la boleta haya sido llenada por usted o bajo su direccion. Este sobre de envio no debe ser utilizado para entregar la boleta de mas de un solo votante. Para obtener instrucciones sobre los metodos y plazos para entregar este sobre de envio, vea la "Informacion Sobre Como Devolver su Sobre de Envio," incluido con los materiales enviados a usted con su boleta.)

I certify that the enclosed ballot expresses my wishes independent of any dictation or undue persuasion by any person. (Certifico que la boleta adjunta expresa mis deseos independientemente de ningun dictado o persuasion indebida por parte de cualquier persona.)

**SEAL ENVELOPE AND SIGN OVER SEALED FLAP**
(SELLE EL SOBRE Y FIRME ENCIMA DE SOLAPA DEL SOBRE)

X ___[signature]___

**SIGNATURE OR MARK OF VOTER (FIRMA O MARCA DEL VOTANTE)**

**Oath of Person Assisting Voter:** I swear (or affirm) that I will not suggest, by word, sign, or gesture, how the voter should vote; I will confine my assistance to answering the voter's questions, to stating propositions on the ballot, and to naming candidates and, if listed, their political parties; I will prepare the voter's ballot as the voter directs; and I am not the voter's employer, an agent of the voter's employer, or an officer or agent of a labor union to which the voter belongs. (Juramento de la Persona Asistiendo al Votante: Juro (o afirmo) que no sugerire con palabras, senales, o gestos, la manera en la cual el votante debe votar; limitare mi asistencia a responder las preguntas del votante, leer propuestas en la boleta, nombrar a los candidatos, y si es mencionado, su partido politico; preparare la boleta del votante de acuerdo a sus instrucciones; y yo no soy el empleador del votante, un agente del empleador del votante, o un oficial o agente de un sindicato al cual el votante pertenece.)

**Instructions to Witness:** You are serving as a witness for _____ (name of voter). You must complete the section below if you witness the mark of the voter, or if the voter cannot make a mark. If the voter cannot make a mark, check here _____ (Instrucciones al Testigo: Usted esta fungiendo como testigo para _____ (nombre del votante). Usted debe llenar la siguiente seccion abajo si usted fue testigo de que el votante firmo, o de que el votante no puede firmar. Si el votante no puede firmar, marque sus iniciales aqui _____.)

**Instructions to Person Depositing Carrier Envelope in Mail or to Common or Contract Carrier:** If you are assisting a voter by depositing the carrier envelope in the mail or with a common or contract carrier, you must complete the section below. (Instrucciones a la Persona Quien Deposita el Sobre de Envio en el Correo o Entrega a un Transportista Publico o Comercial: Si usted asistira a votante a depositar el sobre de envio en el correo o con un transportista publico o comercial, usted debe llenar la seccion que aparece abajo.)

If you are an assistant or witness, check the appropriate box below and provide information: (Si usted es un asistente o testigo, marque la casilla correcta y proporcione su informacion):

☐ Assistant/
   Asistente

☐ Witness/
   Testigo

Signature (Firma) _____

Printed Name (Nombre impreso) _____

Street Address (Domicilio residencial) _____

☐ Assistant/
   Asistente

☐ Witness/
   Testigo

Signature (Firma) _____

Printed Name (Nombre impreso) _____

Street Address (Domicilio residencial) _____

Completed by Early Voting Clerk:  Name of Election (Nombre de Eleccion):  **Bond Election**

Name of Voter (Nombre del votante): _____

Date of Election (Fecha de Eleccion): **5-5-2018**

# EXHIBIT M

**Color Key:**
- Green: Received
- Orange: Returned Mail
- Yellow: Duplicate

## ROSTER FOR EARLY VOTING BY MAIL - JUNE 22, 2019 RUN-OFF ELECTION DISTRICT 5

| DATE ABBM REC.D | DATE BALLOT MAILED | NAME | DIST.# | VUID# | ADDRESS | CITY | STATE | ZIP | MAIL TO ADDRESS | DATE BALLOT REC'D |
|---|---|---|---|---|---|---|---|---|---|---|
| 5/21/19 | 5/24/19 | Johnson, Laurie A. | 5 | 1053350003 | 7321-J St. | McAllen | TX | 78501 | Box 306, Exira, IA 50076 | 6/27/19 |
| 5/22/19 | 5/24/19 | Mittelstaedt, Gerard E. | 5 | 1053853648 | 2011 Daffodil | McAllen | TX | 78501 | 832 Leland Ave., Sheyboygan, WI 53081 | 6/4/19 |
| 5/22/19 | 5/24/19 | Mittelstaedt, Mona S. | 5 | 1053601404 | 2011 Daffodil | McAllen | TX | 78501 | 832 Leland Ave., Sheyboygan, WI 53081 | 6/4/19 |
| 5/22/19 | 5/24/19 | Ingram, Denise | 5 | 1053170016 | 721 N. 15th St. | McAllen | TX | 78501 | 2150 Treewood Dr. Ste. A160, El Paso, TX 79935 | 6/10/19 |
| 5/22/19 | 5/24/19 | Ingram, John J. | 5 | 1054277136 | 721 N. 15th St. | McAllen | TX | 78501 | 2150 Treewood Dr. Ste. A160, El Paso, TX 79935 | 6/11/19 |
| 5/16/19 | 5/24/19 | Garcia, Rolando L. | 5 | 1053712627 | 1101 W. Maple Ave. | McAllen | TX | 78501 | same | 6/19/19 |
| 3/6/19 | 5/24/19 | Alaniz, Ana Maria | 5 | 1055312987 | 412 N. 16th St. | McAllen | TX | 78501 | same | 5/30/19 |
| 3/6/19 | 5/24/19 | Cantu, Olga N. | 5 | 1053168406 | 417 N. 16th St. | McAllen | TX | 78501 | same | 5/29/19 |
| 3/29/19 | 5/24/19 | Goolsby, Julia B. | 5 | 1206430689 | 1600 Hibiscus Ave. | McAllen | TX | 78501 | Calle del Doctor Esquerdo, 128 6H, Madrid Spain 28007 | 6/28/19 |
| 4/8/19 | 5/24/19 | Weisfeld-Hinojosa, Johnathan S. | 5 | 1173765404 | 4801 N. 16th St. | McAllen | TX | 78504 | 11539 Hubener Rd. Apt. 3236, San Antonio, TX 78230 | 6/3/19 |
| 4/3/19 | 5/24/19 | Weisfeld, Rosalie | 5 | 1054673350 | 4901 N. 16th St. | McAllen | TX | 78504 | 9206 Cliffwood Drive, Houston, TX 77096 | 6/3/19 |
| 4/22/19 | 5/24/19 | Moffitt, Mary K. | 5 | 1053267582 | 1601 Marigold | McAllen | TX | 78501 | same | 6/24/19 |
| 5/20/19 | 5/24/19 | Sansing, Frances Denise | 5 | 1053791558 | 601 N. 15th St. | McAllen | TX | 78501 | same | 5/29/19 |
| 5/20/19 | 5/24/19 | Beard, Scott Robert | 5 | 1053403020 | 601 N. 15th St. | McAllen | TX | 78501 | same | 5/29/19 |
| 5/22/19 | 5/24/19 | Perez Garcia, M. Carmen | 5 | 1055547722 | 1101 W. Maple Ave. | McAllen | TX | 78501 | same | 6/19/19 |
| 5/28/19 | 5/29/29 | Brown, Philip K. | 5 | 1054935676 | 1216 Yucca Ave. | McAllen | TX | 78504 | 93 Patten Road, North Haven CT 06473 | 7/18/19 |
| 5/28/19 | 5/29/19 | Brown, Lisbeth L. | 5 | 1038626232 | 1216 Yucca Ave. | McAllen | TX | 78504 | 93 Patten Road, North Haven CT 06473 | 6/19/19 |
| 5/31/19 | 5/31/19 | Fox, Danielle D. | 5 | 1054117922 | 1701 W. Esperanza Ave. | McAllen | TX | 78501 | P O Box 6326, Carmel by the Sea, CA 93921 | 6/13/19 |
| 5/31/19 | 5/31/19 | Fox, Aaron D. | 5 | 1055432785 | 1701 W. Esperanza Ave. | McAllen | TX | 78501 | P O Box 6326, Carmel by the Sea, CA 93921 | 6/13/19 |
| 5/31/19 | 5/31/19 | Perez-Trevino, Enrique | 5 | 1054207368 | 1606 Redbud Ave. | McAllen | TX | 78501-4420 | same | |
| 5/31/19 | 5/31/19 | Ayala, Raul | 5 | 1196731670 | 1312 Beech Ave. Apt. 4 | McAllen | TX | 78501-4631 | same | 1/8/19 |
| 6/4/19 | 5/31/19 | Luna, Mariana | 5 | 1053314843 | 2064 Lindberg Cir. | McAllen | TX | 78501-7267 | same | 6/11/19 |
| 6/3/19 | 6/4/19 | Emry, Verlee E. | 5 | 1053303961 | 3816 N. 9th Ct. Apt. 1 | McAllen | TX | 78501-1727 | same | 6/7/19 |
| 6/4/19 | 6/4/19 | Reyna, Maria | 5 | 1053094263 | 1916 Fir Ave. | McAllen | TX | 78501-6978 | same | 6/10/19 |
| 6/3/19 | 6/4/19 | Viada, Luis | 5 | 1055482301 | 1237 Wisteria Ave. | McAllen | TX | 78501-3510 | same | 6/20/19 |
| 6/3/19 | 6/4/19 | Rosas, Jesus | 5 | 1053907380 | 315 N. 22nd St. | McAllen | TX | 78501-6880 | same | 6/10/19 |
| 6/3/19 | 6/4/19 | Perez, Blanca G. | 5 | 1054002163 | 1512 Redbud Ave. | McAllen | TX | 78504-4409 | same | 6/13/19 |
| 6/3/19 | 6/4/19 | Perez, Richard H. | 5 | 1053981254 | 1512 Redbud Ave. | McAllen | TX | 78504-4409 | same | 6/11/19 |
| 6/3/19 | 6/4/19 | Gaitan, Socorro | 5 | 1053866729 | 2117 Ithaca Ave. | McAllen | TX | 78501-7238 | same | 6/13/19 |
| 6/3/19 | 6/4/19 | Gaitan, Atanacio | 5 | 1053866653 | 2117 Ithaca Ave. | McAllen | TX | 78501-7238 | same | 6/13/19 |

| # | | | | | Name | Address | City | State | | Mailing | Date |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 31 | 6/3/19 | 6/4/19 | 1054046538 | S | Flores, Leonor G. | 2136 Lindberg Cir. | McAllen | TX | 78501-7247 | same | 6/7/19 |
| 32 | 6/3/19 | 6/4/19 | 1054193310 | S | Guerrero, Jose | 2223 Date Palm Ave. | McAllen | TX | 78501-6967 | same | 6/7/19 |
| 33 | 6/3/19 | 6/4/19 | 1053654061 | S | Ramirez, Andres | 2021 Gumwood Ave. | McAllen | TX | 78501-6882 | same | 6/11/19 |
| 34 | 6/3/19 | 6/4/19 | 1052924367 | S | Guerrero, Ofelia | 2223 Date Palm Ave. | McAllen | TX | 78501-6967 | same | 6/10/19 |
| 35 | 6/3/19 | 6/4/19 | 1053549519 | S | Borrego, Adalia | 2116 Ebony Ave. | McAllen | TX | 78501-6974 | same | 6/10/19 |
| 36 | 6/3/19 | 6/4/19 | 1054018583 | S | De Leon, Margarita Villarreal | 2016 Japonica Ave. | McAllen | TX | 78501-6040 | same | 6/10/19 |
| 37 | 6/4/19 | 6/5/19 | 1053303942 | S | Emry, Arthur | 3816 N. 9th Ct. Apt. 1 | McAllen | TX | 78501-1727 | same | 6/10/19 |
| 38 | 6/4/19 | 6/5/19 | 1053430558 | S | Guzman, Eufremia | 2200 W. Jackson Ave. | McAllen | TX | 78501-7245 | same | 6/10/19 |
| 39 | 6/4/19 | 6/5/19 | 1053945321 | S | Perez, Yolanda L. | 604 S. 21st St. | McAllen | TX | 78501-7247 | same | 6/10/19 |
| 40 | 6/4/19 | 6/5/19 | 1053536581 | S | Smith, Doris | 1517 Whitewing Ave. | McAllen | TX | 78501-3536 | same | 6/13/19 |
| 41 | 6/4/19 | 6/5/19 | 1055270874 | S | Guzman, Leobardo | 2200 W. Jackson Ave. | McAllen | TX | 78501-7245 | same | 6/10/19 |
| 42 | 6/4/19 | 6/5/19 | 2138036789 | S | Pardue, John O. W. | 1612 Hibiscus Ave. | McAllen | TX | 78501 | same | 6/12/19 |
| 43 | 6/5/19 | 6/6/19 | 1054474918 | S | Freeland, Diane Fowler | 1213 Nandlewood | McAllen | TX | 78501 | 3003 S. Congress Ave., Austin TX 78704 | 6/19/19 |
| 44 | 6/5/19 | 6/6/19 | 1053744584 | S | Zapata, Adela | 2010 Galveston Ave. | McAllen | TX | 78501-7121 | 1840 Candlewood Court #207, Charlottesville VA 22903 | 6/10/19 |
| 45 | 6/6/19 | 6/6/19 | 1055507764 | S | Perez, Lydia | 1314 S. 19 1/2 St. | McAllen | TX | 78501-5387 | same | 6/10/19 |
| 46 | 6/6/19 | 6/6/19 | 1053524208 | S | Perez, Maria | 2123 Fresno Ave. | McAllen | TX | 78501-7216 | same | 6/11/19 |
| 47 | 6/6/19 | 6/6/19 | 1053233673 | S | Valdez, Maria D. | 2217 Camellia Ave. | McAllen | TX | 78501-6153 | same | |
| 50 | 6/5/19 | 6/6/19 | 1054280254 | S | Gonzalez, Maria O. | 1437 S. 19 1/2 | McAllen | TX | 78501-5301 | same | 6/11/19 |
| 53 | 6/6/19 | 6/6/19 | 1053164477 | S | Sandoval, Herminia | 2119 Date Palm Ave. | McAllen | TX | 78504-6965 | same | 6/11/19 |
| 50 | 6/6/19 | 6/6/19 | 1053960946 | S | Moxley, Karen | 1111 Xanthisma Ave. | McAllen | TX | 78504-5519 | same | 6/18/19 |
| 51 | 6/6/19 | 6/6/19 | 1054248515 | S | Garza, Jesus | 1400 W. Gardenia Ave. | McAllen | TX | 78501-3443 | same | 6/15/19 |
| 52 | 6/5/19 | 6/6/19 | 1059835610 | S | Moritz, Leo | 1712 Quamasia Ave. | McAllen | TX | 78504-3714 | same | 6/19/19 |
| 53 | 6/5/19 | 6/6/19 | 1052927612 | S | De la Garza, Benito | 2213 Gumwood Ave. | McAllen | TX | 78505-6885 | same | 6/11/19 |
| 54 | 6/6/19 | 6/6/19 | 1053774655 | S | Chavez, Lydia | 1308 S. 20th St. | McAllen | TX | 78501-7253 | same | 6/11/19 |
| 55 | 6/5/19 | 6/6/19 | 1054297743 | S | Guerrero, Maria G. | 2223 Date Palm Ave. | McAllen | TX | 78501 | same | 6/11/19 |
| 56 | 6/5/19 | 6/6/19 | 1186172454 | S | Avila, Joseph J. | 1600 Wisteria Ave. | McAllen | TX | 78504 | 1161 Mary Jane Way, Fort Collins CO 80524 | 6/19/19 |
| 57 | 6/6/19 | 6/6/19 | 1166968912 | S | De la Garza Barron, Juanita | 711 S. 11th St. Apt. 9 | McAllen | TX | 78501-5038 | same | 6/13/19 |
| 58 | 6/6/19 | 6/6/19 | 1053882373 | S | Rivera, San (Juanita) | 716 N. Broadway St. | McAllen | TX | 78501-4620 | same | 6/22/19 |
| 59 | 6/7/19 | 6/7/19 | 1054591082 | S | Millin, Gina K. | 1408 Yucca Ave. | McAllen | TX | 78504 | Hilton Garden Inn Seattle Downtown, 1821Boren Ave., Seattle WA 98101 | 6/13/19 |
| 60 | 6/7/19 | 6/7/19 | 1055324043 | S | Millin, John A. IV | 1408 Yucca Ave. | McAllen | TX | 78504 | Hilton Garden Inn Seattle Downtown, 1821Boren Ave., Seattle WA 98101 | 6/13/19 |

REJECTED

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 61 | 6/10/19 | 6/12/19 | 1054231788 | Barrera, Luzdivina | 5 | 2220 Date Palm Ave. | McAllen | TX | 78501 | same | 6/19/19 |
| 62 | 6/10/19 | 6/12/19 | 1000082169 | Barrera, Omar | 5 | 2220 Date Palm Ave. | McAllen | TX | 78501 | same | 6/19/19 |
| 63 | 6/10/19 | 6/12/19 | 1053597946 | Hargrove, Diane Hale | 5 | 1305 Y-2 Ave. | McAllen | TX | 78504 | same | |
| 64 | 6/10/19 | 6/12/19 | 1053316957 | Jackson, Aurora | 5 | 2201 Orange Ave. | McAllen | TX | 78501 | same | |
| 65 | 6/10/19 | 6/12/19 | 1054156341 | Lanham, Minnie F. | 5 | 718 N. 16th St. | McAllen | TX | 78501-4722 | same | 6/18/19 |
| 66 | 6/10/19 | 6/12/19 | 1198536949 | Lara, Tomasa | 5 | 2109 Fir Ave. | McAllen | TX | 78501 | same | 6/15/19 |
| 67 | 6/10/19 | 6/12/19 | 1054010369 | Lopez, Elia G. | 5 | 2009 Japonica Ave. | McAllen | TX | 78501-6089 | same | 6/18/19 |
| 68 | 6/10/19 | 6/12/19 | 1200227012 | Marcuf, Alexander | 5 | 4120 N. 12th St. Apt. 12 | McAllen | TX | 78504-4632 | same | 6/25/19 |
| 69 | 6/10/19 | 6/12/19 | 1054632339 | Ruiz, Dolores D. | 5 | 1101 S. 19 1/2 St. | McAllen | TX | 78501 | same | 6/15/19 |
| 70 | 6/10/19 | 6/12/19 | 1219425971 | Ruiz, Maria A. | 5 | 711 S. 11th St. | McAllen | TX | 78501 | same | 6/15/19 |
| 71 | 6/10/19 | 6/12/19 | 1054073394 | Sutton, Martha | 5 | 1405 Yucca Ave. | McAllen | TX | 78504 | 1616 Birchmont Beach Rd. NE, Bemidji MN 56601 | 6/22/19 |
| 72 | 6/11/19 | 6/12/19 | 1053808434 | Cowgill, Maria Luisa | 5 | 1106 Walnut Ave. | McAllen | TX | 78501-4694 | same | |
| 73 | 6/11/19 | 6/12/19 | 1053209928 | Carranza, Otilia | 5 | 520 N. 20th | McAllen | TX | 78501 | same | 6/15/19 |
| 74 | 6/11/19 | 6/12/19 | 1053984717 | Garcia, Maria Guadalupe | 5 | 1613 New Port | McAllen | TX | 78501 | same | 6/18/19 |
| 75 | 6/11/19 | 6/12/19 | 1102669334 | Hernandez, Ventura | 5 | 2245 Orange | McAllen | TX | 78501 | same | 6/17/19 |
| 76 | 6/11/19 | 6/12/19 | 1102678506 | Rodriguez, Maria C. | 5 | 2245 Orange | McAllen | TX | 78501 | same | 6/17/19 |
| 77 | 6/11/19 | 6/12/19 | 1054274410 | Villalpando, Paula | 5 | 516 S. 15th St. Apt. 2 | McAllen | TX | 78505-5280 | same | 6/20/19 |
| | 6/11/19 | 6/12/19 | 1053237601 | Zinsmeister, Edward J. | 5 | 1500 Marigold Ave. | McAllen | TX | 78501 | same | 6/15/19 |

## REJECTED APPLICATIONS ROSTER FOR EARLY VOTING BY MAIL FOR - JUNE 22, 2019 RUN-OFF ELECTION DISTRICT 5

| | DATE ABBM REC.D | DATE LETTER MAILED | VUID# | DIST.# | NAME | ADDRESS | CITY | STATE | ZIP | REASON FOR REJECTION |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 6/3/2019 | 6/4/2019 | 2120174622 | 5 | Pena, Michelle | 2213 17th St. | McAllen | TX | 78501 | Not signed / residence address of registration was not provided |
| 2 | 6/3/2019 | 6/4/2019 | 1162963827 | 5 | Ramirez, Maria | 2021 Gumwood Ave. | McAllen | TX | 78501 | Not over 65 years of age. |
| 3 | 6/4/2019 | 6/4/2019 | 1054678920 | 6 | Roberson, Robert L. | 1616 N. 8th St. | McAllen | TX | 78501 | District 6 |
| 4 | 6/5/2019 | 6/5/2019 | 1052963704 | 5 | Salinas, Estela | 4717 N 11th St. #34 | McAllen | TX | 78504 | Residence address of registration was not provided |
| 5 | 6/6/2019 | 6/6/2019 | 1055307226 | 3 | Liscano, Jose H. | 2741 Gumwood Ave. | McAllen | TX | 78501 | District 3 |
| 6 | 6/10/2019 | 6/12/2019 | 2125079954 | 5 | Sandoval, Jorge A. | 2120 Date Palm Ave. | McAllen | TX | 78501 | 56 years old (12/25/1962) |
| 7 | 6/10/2019 | 6/12/2019 | 2127882447 | 5 | Mueller, Shirley M. | 810 S. 16 1/2 St. | McAllen | TX | 78501 | Not signed |
| 8 | 6/11/2019 | 6/12/2019 | 1053701761 | 5 | Delgado, Pablo | 2012 Oakland Ave. | McAllen | TX | 78501 | Residence address not on file. |
| 9 | 6/13/2019 | 6/13/2016 | 1153464461 | 5 | Reyes, Hiliberta | 417 S. 20 1/2 St. | McAllen | TX | 78505 | ABBM received after the deadline (6/13/19). |
| 10 | 6/13/2019 | 6/13/2019 | 1053167441 | 5 | Cepeda, Juanita | 1720 Oakland Ave. | McAllen | TX | 78501 | ABBM received after the deadline (6/13/19). |
| 11 | 6/22/2019 | 6/22/2019 | 1160550592 | 6 | Molina, Erica Nicole | 2708 N. 8th Street | McAllen | TX | 78501 | District 6 |
| 12 | | | | | | | | | | |
| 13 | | | | | | | | | | |
| 14 | | | | | | | | | | |
| 15 | | | | | | | | | | |
| 16 | | | | | | | | | | |

DO NOT REMOVE PERFORATED TABS. Moisten here and fold bottom to top to seal.     DO NOT REMOVE PERFORATED TABS. Moisten here and fold bottom to top to seal.

## Application for Ballot by Mail

*Prescribed by the Office of the Secretary of State of Texas   A5-15 12/17*

| For Official Use Only |
| VUID #, County Election Precinct #, Statement of Residence, etc. |

100308316

**1** Last Name (Please print information)
Barrera

First Name
Omar

Suffix (Jr., Sr., III, etc)

Middle Initial

**2** Residence Address: See back of this application for instructions.
2220 Date Palm Ave

City
McAllen

State
,TX

ZIP Code
78501

**3** Mail my ballot to: If mailing address differs from residence address, please complete Box # 7.

City

State

ZIP Code

**4** Date of Birth (mm/dd/yyyy) (Optional)
04 / 15 / 19 5 0

Contact Information (Optional)*
Please list phone number and/or email address:
*Used in case our office has questions.

**5** Reason for Voting by Mail:
☑ 65 years of age or older. (Complete Box #6a)
☐ Disability. (Complete Box #6a)
☐ Expected absence from the county. (Complete Box #6b and Box #8)
    You will receive a ballot for the upcoming election only.
☐ Confinement in jail. (Complete Box #6b)
    You will receive a ballot for the upcoming election only.

**6a** ONLY Voters 65 Years of Age or Older or Voters with a Disability:
If applying for only one election, select the appropriate box only.
If applying once for elections in the calendar year, select "Annual Application."
☐ Annual Application.

Uniform and Other Elections:        Primary Elections:
                                    You must declare one political party to vote in
                                    a primary.
☐ May Election                      ☐ Democratic Primary
☐ November Election                 ☐ Republican Primary
☐ Other Runoff              ☑ Any Resulting Runoff

**6b** ONLY Voters Absent from County or Voters Confined in Jail:
You may only apply for a ballot by mail for one election, and any resulting runoff.
Please select the appropriate box.

Uniform and Other Elections:        Primary Elections:
                                    You must declare one political party to vote in
                                    a primary.
☐ May Election                      ☐ Democratic Primary
☐ November Election                 ☐ Republican Primary
☐ Other _____            ☐ Any Resulting Runoff

**7** If you are requesting this ballot be mailed to a different address (other than residence), indicate where the ballot will be mailed. See reverse for instructions.
☐ Mailing Address as listed on my voter registration certificate     ☐ Address of the jail
☐ Nursing home, assisted living facility, or long term care facility  ☐ Relative; relationship _____
☐ Hospital                                                            ☐ Address outside the county (see Box #8)
☐ Retirement Center

**8** If you selected "expected absence from the county," see reverse for instructions

_ _ / _ _ _ _ – _ _ _ _            Date of return to residence address

Date you can begin to receive mail at this address     Date of return to residence address

**9** Voters may submit a completed, signed, and scanned application to the Early Voting Clerk at:
plara@mcallen.net                    (956) 681-1029
(early voting clerk's e-mail address)     (early voting clerk's fax)

NOTE: If you fax or e-mail this form, please be aware that you must also mail this form to the early voting clerk within four
business days. See "Submitting Application" on the back of this form for additional information.

**10** "I certify that the information given in this application is true, and I understand that giving false information
in this application is a crime."

X Omar Barrera                    07/30/20
                                   Date
SIGN HERE
If applicant is unable to sign or make a
mark in the presence of a witness, the
witness shall complete Box #11.

X
Printed Name of Witness/Assistant

City

ZIP Code

Witness' Relationship to Applicant
(Refer to instructions on back for clarification)

If someone helped you to complete this form or mails the form for you, then that person must complete the sections below.

**11** See back for Witness and Assistant definitions.

If applicant is unable to mark Box #10 and you are acting as a Witness to that fact, please check this box and sign below. ☐

If you assisted the applicant in completing the application in the applicant's presence or e-mailed/mailed or faxed the application on behalf of the applicant, please check this box as an Assistant and sign below. ☐

*If you are acting as Witness and Assistant, please check both boxes. Failure to complete this information is a Class A misdemeanor if signature was witnessed or applicant was assisted in completing the application.

X
Signature of Witness / Assistant

X
Printed Name of Witness/Assistant

Street Address                    Apt Number (if applicable)     City

State                             ZIP Code

▼ FOLD OVER HERE AND SEAL ▼

## APPLICATION FOR BALLOT BY MAIL
(Solicitud Para Recibir Una Boleta Por Correo)

| Last Name | Suffix | First Name | Middle Initial |
|---|---|---|---|
| Gaitan | | Socorro | |

**For Official Use Only**
1053866719
VUID: _____  PCT: _____

### ADDRESS AT WHICH VOTER IS REGISTERED (DIRECCION DE RESIDENCIADE INSCRIPCION COMO VOTANTE)

**Street Address**
2117 Ithaca Ave

| City | State | ZIP |
|---|---|---|
| McAllen | TX | 78501-7238 |

1105/1938

◯ I am over 65 years of age and requesting an Annual Ballot By Mail to recieve a ballot or all elections in 2019, including local elections and the November 2019 General Election.
Mail my ballot to the address indicated above (unless noted otherwise below.)

X _____
Signature of applicant. I certify that the information given in this application is true and I understand that giving false information in this application is a crim. Certifico que la información que se proporciona mediante esta solicitud es cierta y entiendo que es delito dar información falsa

**OPTIONAL: IF YOU ARE NOT ABLE TO RECEIVE YOUR BALLOT AT YOUR REGISTRATION ADDRESS (ABOVE), YOU MAY HAVE YOUR  BALLOT MAILED TO AN ALTERNATE ADDRESS**

| Check One of these 4 choices: | ☐ NURSING HOME, ASSISTED LIVING OR LONG TERM CARE FACILITY | STREET ADDRESS |
|---|---|---|
| | ☐ HOSPITAL | |
| | ☐ RETIREMENT CENTER | CITY     STATE     ZIP |
| | ☐ RELATIVE, RELATIONSHIP | |

▼ DO NOT TEAR PERFORATED TAB. FOLD OVER BOTTOM TO TOP AND SEAL WITH TAPE ▼

▼ FOLD OVER HERE AND SEAL ▼

MaS

D.D. 8/25/1947

**APPLICATION FOR BALLOT BY MAIL.**
**(Solicitud Para Recibir Una Boleta Por Correo)**

For Official Use Only
VUID: 1196781670   PCT: ____

**Last Name**
Ayala

**Suffix**

**First Name**
Raul

**Middle Initial**

**ADDRESS AT WHICH VOTER IS REGISTERED (DIRECCION DE RESIDENCIA DE INSCRIPCION COMO VOTANTE)**

**Street Address**
1312 Beech Ave Apt 4

**City**
McAllen

**State**
TX

**ZIP**
78501-4651

I am over 65 years of age and requesting an Annual Ballot By Mail to receive a ballot or all elections in 2019, including local elections and the November 2019 General Election. Mail my ballot to the address indicated above (unless noted otherwise below.)

X Raul Ayala

Signature of applicant. I certify that the information given in this application is true and I understand that giving false information in this application is a crim. Certifico que la información que se proporciona mediante esta solicitud es cierta y entiendo que es delito dar información falsa

OPTIONAL: IF YOU ARE NOT ABLE TO RECEIVE YOUR BALLOT AT YOUR REGISTRATION ADDRESS (ABOVE), YOU MAY HAVE YOUR  BALLOT MAILED TO AN ALTERNATE ADDRESS

**STREET ADDRESS** 1312 Beech Ave. Apt. 4
**CITY** McAllen  **STATE** Texas  **ZIP** 78501-4165

**Check One of these 4 choices:**
☐ NURSING HOME, ASSISTED LIVING OR LONG TERM CARE FACILITY
☐ HOSPITAL
☑ RETIREMENT CENTER
☐ RELATIVE, RELATIONSHIP

▼ DO NOT TEAR PERFORATED TAB. FOLD OVER BOTTOM TO TOP AND SEAL WITH TAPE ▼

1107

▼ FOLD OVER HERE AND SEAL ▼

## APPLICATION FOR BALLOT BY MAIL
### (Solicitud Para Recibir Una Boleta Por Correo)

**For Official Use Only**
VUID: 1053 2066653
PCT: _____

| Last Name | Suffix | First Name | Middle Initial |
|-----------|--------|------------|----------------|
| Gaitan | | Atanacio | |

### ADDRESS AT WHICH VOTER IS REGISTERED (DIRECCION DE RESIDENCIA DE INSCRIPCION COMO VOTANTE)

**Street Address**
2117 Ithaca Ave

| City | State | ZIP |
|------|-------|-----|
| McAllen | TX | 78501-7238 |

I am over 65 years of age and requesting an Annual Ballot By Mail to receive a ballot or all elections in 2019, including local elections and the November 2019 General Election. Mail my ballot to the address indicated above (unless noted otherwise below.)

X _____
Signature of applicant. I certify that the information given in this application is true, and that giving false information in this application is a crim. Certifico que la información que se proporciona mediante esta solicitud es cierta y entiendo que es delito dar información falsa

11/8/1930

OPTIONAL: IF YOU ARE NOT ABLE TO RECEIVE YOUR BALLOT AT YOUR REGISTRATION ADDRESS (ABOVE), YOU MAY HAVE YOUR BALLOT MAILED TO AN ALTERNATE ADDRESS

**STREET ADDRESS**

Check One
of these
4 choices:
☐ NURSING HOME, ASSISTED LIVING OR LONG TERM CARE FACILITY
☐ HOSPITAL
☐ RETIREMENT CENTER
☐ RELATIVE, RELATIONSHIP

| CITY | STATE | ZIP |
|------|-------|-----|
| | | |

▼ DO NOT TEAR PERFORATED TAB. FOLD OVER BOTTOM TO TOP AND SEAL WITH TAPE ▼

1108

**1** Last Name (Please print information)
Freeland

First Name
DIANE

Suffix (Jr., Sr., III, etc)

Middle Initial
Fowler

**2** Residence Address: See back of this application for instructions.
1313 Kendlewood

City
McAllen

State
, TX

ZIP Code
78501

**3** Mail my ballot to: 1840 Canslewood Court #207, please complete Box #7.
1840 Canslewood Court #207 22903

City
CHARLOTTESVILLE

State
VA

ZIP Code

Contact Information (Optional)*
Please list phone number and/or email address:
• Used in case our office has questions.

**4** Date of Birth (mm/dd/yyyy) (Optional)
04 / 23 / 1954

**5** Reason for Voting by Mail:
☐ 65 years of age or older. (Complete Box #6a)
☐ Disability. (Complete Box #6a)
☒ Expected absence from the county. (Complete Box #9b and Box #9)
   You will receive a ballot for the upcoming election only
☐ Confinement in jail. (Complete Box #6b)
   You will receive a ballot for the upcoming election only

**7** If you are requesting this ballot to be mailed to a different address (other than residence), indicate where the ballot will be mailed. See reverse for instructions.
☐ Mailing Address as listed on my voter registration certificate
☐ Nursing home, assisted living facility, or long term care facility
☐ Hospital
☐ Retirement Center.
☐ Address of the jail
☒ Relative; relationship son
☐ Address outside the county (see Box #8)

**6a** ONLY Voters 65 Years of Age or Older or Voters with a Disability:
If applying for one election, select appropriate box.
If applying once for elections in the calendar year, select "Annual Application."
☐ Annual Application

Uniform and Other Elections:
☐ May Election
☐ November Election
☐ Other _____
Primary Elections:
You must declare one political party to vote in a primary.
☐ Democratic Primary
☐ Republican Primary
☐ Any Resulting Runoff

**8** If you selected "expected absence from the county," see reverse for instructions
06 / 08 / 2019 — 06 / 24 / 2019
Date you can begin to receive mail at this address    Date of return to residence address

**9** Voters may provide an email address.
para@mcallen.net
(early voting clerk's e-mail address)
(early voting clerk's fax)
(956)681-1029
NOTE: If you fax or e-mail this form, please be aware that you must also mail the form to the early voting clerk within four business days. See "Submitting Application" on the back of this form for additional information.

**10** "I certify that the information given in this application is true, and I understand that giving false information in this application is a crime."

X Diane Freeland    Date 6-5-19

SIGN HERE
If applicant is unable to sign or make a mark in the presence of a witness, the witness shall complete Box #11.

**6b** ONLY Voters Absent from County or Voters Confined in Jail:
You may only apply for a ballot by mail for one election, and any resulting runoff.
Please select the appropriate box.

Uniform and Other Elections:
☐ May Election
☐ November Election
☐ Other _____
Primary Elections:
You must declare one political party to vote in a primary.
☐ Democratic Primary
☐ Republican Primary
☒ Any Resulting Runoff

**11** See back for Witness and Assistant definitions.
If someone helped you to complete this form or mails the form for you, then that person must complete the sections below.
If applicant is unable to mark Box #10 and you are acting as a Witness to that fact, please check this box and sign below. ☐
If you assisted the applicant in completing this application in the applicant's presence or e-mailed/mailed or faxed the application on behalf of the applicant, please check this box as an Assistant and sign below.
☒ If you are acting as Witness and Assistant, please check both boxes. Failure to complete this information is a Class A misdemeanor or applicant was assisted in completing the application.

X _____
Signature of Witness/Assistant

X _____
Printed Name of Witness/Assistant

Street Address            Apt Number (if applicable)

City

State                     ZIP Code

Witness' Relationship to Applicant
(Refer to instructions on back for clarification)

1109

Este formulario está disponible en Español. Para conseguir la version en Español favor de llamar sin cargo al 1.800.252.8683 a la oficina del Secretario de Estado o la Secretaría de Votación por Adelantado.

# Application for Ballot by Mail

| | For Office Use Only. VUID #, County Election Precinct #, VOID #, County Election Precinct #, Statement of Residence, etc. | | | Middle Initial D/David |
|---|---|---|---|---|

105543a 785

**1** Last Name (Please print information): Fox

Suffix (Jr., Sr., III, etc)

First Name: Aaron

**2** Residence Address: See back of this application for instructions.
1701 W. Esperanza Ave

City: McAllen , TX

ZIP Code: 78501

**3** Mail my ballot to: If mailing address differs from residence address, please complete Box # 7.
P.O. Box 6312

City: Laredo by the Sea

State: CA

ZIP Code: 93921

**4** Date of Birth (mm/dd/yyyy): 1 1 / 1 5 / 1 9 4 6

**5** Reason for Voting by Mail:
- ☐ 65 years of age or older. (Complete Box #6a)
- ☐ Disability. (Complete Box #6a)
- ☒ Expected absence from the county. (Complete Box #6b and Box #8)
  - ☒ You will receive a ballot for the upcoming election only
- ☐ Confinement in jail. (Complete Box #6b)
  - ☐ You will receive a ballot for the upcoming election only

**6a** ONLY Voters 65 Years of Age or Older or Voters with a Disability:
If applying for one election, select appropriate box. If applying once for elections in the calendar year, select "Annual Application."
- ☐ Annual Application

**Uniform and Other Elections:**
- ☐ May Election
- ☐ November Election
- ☐ Other _____

**Primary Elections:**
You must declare one political party to vote in a primary:
- ☐ Democratic Primary
- ☐ Republican Primary
- ☐ Any Resulting Runoff

**6b** ONLY Voters Absent from County or Voters Confined in Jail:
You may only apply for a ballot by mail for one election, and any resulting runoff. Please select the appropriate box.

**Uniform and Other Elections:**
- ☐ May Election
- ☐ November Election
- ☐ Other _____

**Primary Elections:**
You must declare one political party to vote in a primary:
- ☐ Democratic Primary
- ☐ Republican Primary
- ☐ Any Resulting Runoff

**Contact Information (Optional)***
Please list phone number and/or email address:
* Used in case our office has questions.

**7** If you are requesting this ballot be mailed to a different address (other than residence), indicate where the ballot will be mailed. See reverse for instructions.
- ☐ Mailing Address as listed on my voter registration certificate
- ☐ Nursing home, assisted living facility, or long term care facility
- ☐ Hospital
- ☐ Retirement Center
- ☐ Address of the jail
- ☐ Relative, relationship _____
- ☒ Address outside the county (see Box #8)

**8** If you selected "expected absence from the county," see reverse for instructions
0 6 / 0 5 / 2 0 1 9   1 0 / 0 1 / 2 0 1 9
Date you can begin to receive mail at this address   Date of return to residence address

**9** Voters may submit a completed, signed, and scanned application to the Early Voting Clerk at:
plara@mcallen.net
(early voting clerk's e-mail address)
(956) 681-1029
(early voting clerk's fax)

NOTE: If you fax or e-mail this form, please be aware that you must also mail the form to the early voting clerk within four business days. See "Submitting Application" on the back of this form for additional information.

**10** "I certify that the information given in this application is true, and I understand that giving false information in this application is a crime."

**SIGN HERE**
If applicant is unable to sign or make a mark in the presence of a witness, the witness shall complete Box #11.

X [signature]   Date 05/30/19

**11** See back for Witness and Assistant definitions.

If applicant is unable to mark Box #10 and you are acting as a Witness to that fact, please check this box and sign below. ☐

If you assisted the applicant in completing this application in the applicant's presence or e-mailed/mailed or faxed the application on behalf of the applicant, please check this box as an Assistant and sign below. ☐

★ If you are acting as Witness and Assistant, please check both boxes. Failure to complete this information is a Class A misdemeanor if signature was witnessed or applicant was assisted in completing the application.

X _____
Signature of Witness/Assistant

_____
Printed Name of Witness/Assistant

Street Address _____   Apt Number (if applicable) _____

City _____

State _____   ZIP Code _____

**Witness' Relationship to Applicant**
(Refer to Instructions on back for clarification)
☐ _____

Este formulario está disponible en Español. Para conseguir la version en Español favor de llamar sin cargo al 1.800.252.8683 a la oficina del Secretario de Estado o la Secretaria de Votación por Adelantado.

▼ FOLD OVER HERE AND SEAL ▼

# APPLICATION FOR BALLOT BY MAIL
(Solicitud Para Recibir Una Boleta Por Correo)

**For Official Use Only**
VUID: 1054018583

PCT:

| Last Name | Suffix | First Name | Middle Initial |
|-----------|--------|------------|----------------|
| De Leon | | Margarita V. Villarreal | |

**ADDRESS AT WHICH VOTER IS REGISTERED (DIRECCION DE RESIDENCIADE INSCRIPCION COMO VOTANTE)**

**Street Address**

2016 Japonica Ave

| City | State | ZIP |
|------|-------|-----|
| McAllen | TX | 78501-6040 |

12/24/1948

I am over 65 years of age and requesting an Annual Ballot By Mail to recieve a ballot or all elections in 2019, including local elections and the November 2019 General Election. Mail my ballot to the address indicated above (unless noted otherwise below.)

X _Margarita DeLeon_

Signature of applicant. I certify that the information given in this application is true and I understand that giving false information in this application is a crim. Certifico que la información que se proporciona mediante esta solicitud es cierta y entiendo que es delito dar información falsa

**OPTIONAL: IF YOU ARE NOT ABLE TO RECEIVE YOUR BALLOT AT YOUR REGISTRATION ADDRESS (ABOVE), YOU MAY HAVE YOUR  BALLOT MAILED TO AN ALTERNATE ADDRESS**

**STREET ADDRESS**

| Check One of these 4 choices: | | |
|---|---|---|
| ☐ NURSING HOME, ASSISTED LIVING OR LONG TERM CARE FACILITY | | |
| ☐ HOSPITAL | | |
| ☐ RETIREMENT CENTER | | |
| ☐ RELATIVE, RELATIONSHIP | | |

| CITY | STATE | ZIP |
|------|-------|-----|
| | | |

▼DO NOT TEAR PERFORATED TAB. FOLD OVER BOTTOM TO TOP AND SEAL WITH TAPE ▼

1111

▼ FOLD OVER HERE AND SEAL ▼

## APPLICATION FOR BALLOT BY MAIL
### (Solicitud Para Recibir Una Boleta Por Correo)

**For Official Use Only**

VUID: 1057427612   PCT: _____

| Last Name | Suffix | First Name | Middle Initial |
|---|---|---|---|
| De La Garza | | Benito | |

**ADDRESS AT WHICH VOTER IS REGISTERED (DIRECCION DE RESIDENCIADE INSCRIPCION COMO VOTANTE)**

**Street Address**
2213 Gumwood Ave

| City | State | ZIP |
|---|---|---|
| McAllen | TX | 78501-6885 |

☐ I am over 65 years of age and requesting an Annual Ballot By Mail to recieve a ballot or all elections in 2019, including local elections and the November 2019 General Election.
Mail my ballot to the address indicated above (unless noted otherwise below.)

X _____   3/31/1930
Signature of applicant. I certify that the information given in this application is true and I understand that giving false information in this application is a crim. Certifico que la informacion que se proporciona mediante esta solicitud es cierta y entiendo que es delito dar informacio falsa

**OPTIONAL: IF YOU ARE NOT ABLE TO RECEIVE YOUR BALLOT AT YOUR REGISTRATION ADDRESS (ABOVE), YOU MAY HAVE YOUR BALLOT MAILED TO AN ALTERNATE ADDRESS**

**STREET ADDRESS**

| Check One of these 4 choices: | | CITY | STATE | ZIP |
|---|---|---|---|---|
| ☐ NURSING HOME, ASSISTED LIVING OR LONG TERM CARE FACILITY | | | | |
| ☐ HOSPITAL | | | | |
| ☐ RETIREMENT CENTER | | | | |
| ☐ RELATIVE, RELATIONSHIP | | | | |

▼ DO NOT TEAR PERFORATED TAB. FOLD OVER BOTTOM TO TOP AND SEAL WITH TAPE ▼



# Application for Ballot by Mail

**1.** Last Name (Please print information) / Suffix (Jr., Sr., III, etc) / First Name: **Martha** / Middle Initial

Sutton

VUID #, County Election Precinct # / *105401*/3547 (A)

Statement of Residence, etc.

**2.** Residence Address: See back of this application for instructions.
1405 Yucca Ave
City: Mc Allen   State: TX, Tx.   ZIP Code: 78504

**3.** Mail my ballot to (if mailing address differs from residence address, please complete Box #7.
1616 Birchmont Beach Rd NE
City: Bemidji   State: Mn   ZIP Code: 56601

**4.** Date of Birth (mm/dd/yyyy) (Optional)
11 / 19 / 1943

Contact Information (Optional)*
Please list phone number and/or email address: 956. 648.3433
* Used in case our office has questions.

**5.** Reason for Voting by Mail:

☐ 65 years of age or older. (**Complete Box #6a**)

☐ Disability. (**Complete Box #6a**)

☐ Expected absence from the county. (**Complete Box #6b and Box #8**)
You will receive a ballot for the upcoming election only.

☐ Confinement in jail. (**Complete Box #8b**)
You will receive a ballot for the upcoming election only.

**6a.** ONLY Voters 65 Years of Age or Older or Voters with a Disability:
If applying for one election, select appropriate box.
If applying once for elections in the calendar year, select "Annual Application."

☐ Annual Application

**Uniform and Other Elections:**   **Primary Elections:**

☐ May Election        ☐ Democratic Primary
☐ November Election    ☐ Republican Primary
☐ Other _____        ☑ Any Resulting Runoff

**6b.** ONLY Voters Absent from County or Voters Confined in Jail:
You may only apply for a ballot by mail for one election, and any resulting runoff.
Please select the appropriate box.

**Uniform and Other Elections:**   **Primary Elections:**
You must declare one political party to vote in a primary.

☐ May Election        ☐ Democratic Primary
☐ November Election    ☐ Republican Primary
☐ Other _____        ☑ Any Resulting Runoff

**7.** If you are requesting this ballot be mailed to a different address (other than residence), indicate where the ballot will be mailed. See reverse for instructions.

☐ Mailing Address as listed on my voter registration certificate
☐ Nursing home, assisted living facility, or long term care facility
☐ Hospital
☐ Retirement Center

☐ Address of the jail
☐ Relative; relationship _____
☑ Address outside the county (see Box #8)

**8.** If you selected "expected absence from the county," see reverse for instructions

05 / 29 / 20 19   —   10 / 01 / 20 19

Date you can begin to receive mail at this address   Date of return to residence address

**9.** plus@mcallen.net

(early voting clerk's e-mail address)

NOTE: If you fax or e-mail this form, please be aware that you must also mail the form to the early voting clerk within four business days. See "Submitting Application" on the back of this form for additional information.

and scanned application to the Early Voting (956) 681-1025

(early voting clerk's fax)

**10.** "I certify that the information given in this application is true, and I understand that giving false information in this application is a crime."

X   *Martha Sutton*   Date 5-28-19

**SIGN HERE**
If applicant is unable to sign or make a mark in the presence of a witness, the witness shall complete Box #11.

**11.** See back for Witness and Assistant definitions.

If applicant is unable to mark Box #10 and you are acting as a Witness to that fact, please check this box and sign below. ☐

If you assisted the applicant in completing this application in the applicant's presence or e-mailed/mailed or faxed the application on behalf of the applicant, please check this box as an Assistant and sign below. ☐

**☑** If you are acting as Witness and Assistant, please check **both boxes**. Failure to complete this information is a Class A misdemeanor if signature was witnessed or applicant was assisted in completing the application.

X _____
Signature of Witness/Assistant

X _____
Printed Name of Witness/Assistant

Street Address _____   City _____

State _____   Apt Number (if applicable) _____   ZIP Code _____

**Witness' Relationship to Applicant**
(Refer to Instructions on back for clarification)

AS-15 12/17

*Éste formulario está disponible en Español. Para conseguir la versión en Español favor de llamar sin cargo al 1.800.252.8683 a la oficina del Secretario de Estado o la Secretaría de Votación por Adelantado.*

If someone helped you to complete this form or mails this form for you, then that person must complete the sections below.

▼ FOLD OVER HERE AND SEAL ▼

## APPLICATION FOR BALLOT BY MAIL
(Solicitud Para Recibir Una Boleta Por Correo)

For Official Use Only
VUID: 1053774655   PCT: ___

| Last Name | Suffix | First Name | Middle Initial |
|---|---|---|---|
| Chavez | | Lydia | |

**ADDRESS AT WHICH VOTER IS REGISTERED (DIRECCION DE RESIDENCIADE INSCRIPCION COMO VOTANTE)**

Street Address
1308 S 20th St

| City | State | ZIP |
|---|---|---|
| McAllen | TX | 78501-7253 |

I am over 65 years of age and requesting an Annual Ballot By Mail to receive a ballot or all elections in 2019, including local elections and the November 2019 General Election. Mail my ballot to the address indicated above (unless noted otherwise below).

X _____   8/8/1935
Signature of applicant. I certify that the information given in this application is true and I understand that giving false information in this application is a crime. Certifico que la información que se proporciona mediante esta solicitud es cierta y entiendo que es delito dar información falsa

**OPTIONAL: IF YOU ARE NOT ABLE TO RECEIVE YOUR BALLOT AT YOUR REGISTRATION ADDRESS (ABOVE), YOU MAY HAVE YOUR BALLOT MAILED TO AN ALTERNATE ADDRESS**

Check One
of these
4 choices:
☐ NURSING HOME, ASSISTED LIVING OR LONG TERM CARE FACILITY
☐ HOSPITAL
☐ RETIREMENT CENTER
☐ RELATIVE, RELATIONSHIP _____

STREET ADDRESS

| CITY | STATE | ZIP |
|---|---|---|
| | | |

▼ DO NOT TEAR PERFORATED TAB. FOLD OVER BOTTOM TO TOP AND SEAL WITH TAPE ▼

▼ FOLD OVER HERE AND SEAL ▼



(A) MC5

**For Official Use Only**
VUID: 1057046328
PCT: _____

**APPLICATION FOR BALLOT BY MAIL**
(Solicitud Para Recibir Una Boleta Por Correo)

| Last Name | Suffix | First Name | Middle Initial |
|---|---|---|---|
| Flores | | Leonor | G |

**ADDRESS AT WHICH VOTER IS REGISTERED (DIRECCION DE RESIDENCIADE INSCRIPCION COMO VOTANTE)**

**Street Address**
2136 Lindberg Cir

| City | State | ZIP |
|---|---|---|
| McAllen | TX | 78501-7247 |

I am over 65 years of age and requesting an Annual Ballot By Mail to recieve a ballot or all elections in 2019, including local elections and the November 2019 General Election. Mail my ballot to the address indicated above (unless noted otherwise below.)

3/8/1939

X _____

Signature of applicant. I certify that the information given in this application is true and I understand that giving false information in this application is a crim. Certifico que la informacion que se proporciona mediante esta solicitud es cierta y entiendo que es delito dar informacio falsa

**OPTIONAL: IF YOU ARE NOT ABLE TO RECEIVE YOUR BALLOT AT YOUR REGISTRATION ADDRESS (ABOVE), YOU MAY HAVE YOUR  BALLOT MAILED TO AN ALTERNATE ADDRESS**

Check One
of these
4 choices:
- [ ] NURSING HOME, ASSISTED LIVING OR LONG TERM CARE FACILITY
- [ ] HOSPITAL
- [ ] RETIREMENT CENTER
- [ ] RELATIVE, RELATIONSHIP _____

| STREET ADDRESS |
|---|
| CITY | STATE | ZIP |

▼DO NOT TEAR PERFORATED TAB. FOLD OVER BOTTOM TO TOP AND SEAL WITH TAPE ▼

▼ FOLD OVER HERE AND SEAL ▼

# APPLICATION FOR BALLOT BY MAIL
## (Solicitud Para Recibir Una Boleta Por Correo)

**For Official Use Only**
VUID: 1054156341

PCT: _____

| Last Name | Suffix | First Name | Middle Initial |
|-----------|--------|------------|----------------|
| Lanham | | Minnie | F. Faldon |

**ADDRESS AT WHICH VOTER IS REGISTERED (DIRECCION DE RESIDENCIA/DE INSCRIPCION COMO VOTANTE)**

**Street Address**
718 N 16th St

11/28/1928

| City | State | ZIP |
|------|-------|-----|
| McAllen | TX | 78501-4722 |

☑ I am over 65 years of age and requesting an Annual Ballot By Mail to receive a ballot or all elections in 2019, including local elections and the November 2019 General Election. Mail my ballot to the address indicated above (unless noted otherwise below.)

✗ _Minnie F. Faldon_

Signature of applicant. I certify that the information given in this application is true and I understand that giving false information in this application is a crim. Certifico que la informacion que se proporciona mediante esta solicitud es cierta y entiendo que es delito dar informacio falsa

**OPTIONAL: IF YOU ARE NOT ABLE TO RECEIVE YOUR BALLOT AT YOUR REGISTRATION ADDRESS (ABOVE), YOU MAY HAVE YOUR BALLOT MAILED TO AN ALTERNATE ADDRESS**

Check One:  ☐ NURSING HOME, ASSISTED LIVING OR LONG TERM CARE FACILITY  ☐ STREET ADDRESS

# Application for Ballot by Mail

AS-15 12/17

**1. Last Name** (Please print information.): BEARD

**Suffix** (Jr., Sr., III, etc): 

**First Name**: SCOTT / ROBERT

**Middle Initial**: 

VUID #, County Election Precinct #, Statement of Residence, etc: 105.540.30.20

**2. Residence Address:** See back of this application for instructions.
601 N. 15th ST.

**City**: MCALLEN   **State**: TX   **ZIP Code**: 78501

**3. Mail my ballot to:** If mailing address differs from residence address, please complete Box # 7.
601 N 15th St.

**City**: McAllen   **State**: , TX   **ZIP Code**: 78501

**4. Date of Birth** (mm/dd/yyyy) (Optional): 0 4 / 0 4 / 1 9 5 2

**Contact Information (Optional)**
Please list phone number and/or email address:
* Used in case our office has questions.
956-498-5824
sbeard444@gmail.com

**5. Reason for Voting by Mail:**
☑ 65 years of age or older. **(Complete Box #6a)**
☐ Disability. **(Complete Box #6a)**
☑ Expected absence from the county. **(Complete Box #6b and Box #8)**
   You will receive a ballot for the upcoming election only
☐ Confinement in jail. **(Complete Box #6b)**
   You will receive a ballot for the upcoming election only

**6a. ONLY Voters 65 Years of Age or Older or Voters with a Disability:**
If applying for one election, select appropriate box.
If applying once for elections in the calendar year, select "Annual Application."
☐ Annual Application

**Uniform and Other Elections:**
☐ May Election
☐ November Election
☐ Other _____

**Primary Elections:**
You must declare one political party to vote in a primary:
☐ Democratic Primary
☐ Republican Primary
☐ Any Resulting Runoff

**6b. ONLY Voters Absent from County or Voters Confined in Jail:**
You may only apply for a ballot by mail for one election, and any resulting runoff.
Please select the appropriate box.

**Uniform and Other Elections:**
☑ May Election
☐ November Election
☑ Other _____
MCALLEN CITY COMMISSION

**Primary Elections:**
You must declare one political party to vote in a primary:
☐ Democratic Primary
☐ Republican Primary
☑ Any Resulting Runoff

**7.** If you are requesting this ballot be mailed to a different address (other than residence), indicate where the ballot will be mailed. **See reverse for instructions.**
☐ Mailing Address as listed on my voter registration certificate
☐ Address of the jail
☐ Nursing home, assisted living facility, or long term care facility
☐ Relative; relationship _____
☐ Hospital
☐ Address outside the county (see Box #8)
☐ Retirement Center

**8.** If you selected "expected absence from the county," see reverse for instructions
Date you can begin to receive mail at this address: 0 5 / 1 7 / 2 0 1 9 — 0 7 / 0 3 / 2 0 1 9
Date of return to residence address

**9.** Voters may submit a completed, signed, and scanned application to the Early Voting Clerk at:
para@mcallen.net   (956)681-1029
(early voting clerk's e-mail address)   (early voting clerk's fax)
**NOTE:** If you fax or e-mail this form, please be aware that you must also mail this form to the early voting clerk within four business days. See "Submitting Application" on the back of this form for additional information.

**10.** "I certify that the information given in this application is true, and I understand that giving false information in this application is a crime."

**SIGN HERE**
If applicant is unable to sign or make a mark in the presence of a witness, the witness shall complete Box #11.

X _Scott Beard_    Date 5-16-2019

**11.** See back for Witness and Assistant definitions.
If applicant is unable to mark Box #10 and you are acting as a Witness to that fact, please check this box and sign below. ☐

If you assisted the applicant in completing this application in the applicant's presence or e-mailed/mailed or faxed the application on behalf of the applicant, please check this box as an Assistant and sign below. ☐

★ If you are acting as Witness and Assistant, please check both boxes. Failure to complete this information is a Class A misdemeanor if signature was witnessed or applicant was assisted in completing the application.

X _____
Signature of Witness /Assistant

_____
Printed Name of Witness/Assistant

Street Address _____   Apt Number (if applicable) _____

City _____

State _____   ZIP Code _____

**Witness Relationship to Applicant**
(Refer to instructions on back for clarification)

If someone helped you to complete this form or mails the form for you, then that person must complete the sections below.

*Este formulario está disponible en Español. Para conseguir la versión en Español favor de llamar sin cargo al 1.800.252.8683 a la oficina del Secretario de Estado o la Secretaría de Votación por Adelantado*

▼ FOLD OVER HERE AND SEAL ▼

## APPLICATION FOR BALLOT BY MAIL
### (Solicitud Para Recibir Una Boleta Por Correo)

**For Official Use Only**

VUID: 10555 077164   PCT: _____

| Last Name | Suffix | First Name | Middle Initial |
|---|---|---|---|
| Perez | | Lydia | |

**ADDRESS AT WHICH VOTER IS REGISTERED (DIRECCION DE RESIDENCIA DE INSCRIPCION COMO VOTANTE)**

10/8/1922

Street Address

1314 S 19 1/2 St

| City | State | ZIP |
|---|---|---|
| McAllen | TX | 78501-5387 |

I am over 65 years of age and requesting an Annual Ballot By Mail to recieve a ballot or all elections in 2019, including local elections and the November 2019 General Election. Mail my ballot to the address indicated above (unless noted otherwise below.)

X Lydia Perez

Signature of applicant. I certify that the information given in this application is true and I understand that giving false information in this application is a crim. Certifico que la información que se proporciona mediante esta solicitud es cierta y entiendo que es delito dar información falsa

**OPTIONAL: IF YOU ARE NOT ABLE TO RECEIVE YOUR BALLOT AT YOUR REGISTRATION ADDRESS (ABOVE), YOU MAY HAVE YOUR BALLOT MAILED TO AN ALTERNATE ADDRESS**

STREET ADDRESS

| CITY | STATE | ZIP |
|---|---|---|
| | | |

Check One
of these
4 choices:

☐ NURSING HOME, ASSISTED LIVING or LONG TERM CARE FACILITY
☐ HOSPITAL
☐ RETIREMENT CENTER
☐ RELATIVE, RELATIONSHIP

▼DO NOT TEAR PERFORATED TAB. FOLD OVER BOTTOM TO TOP AND SEAL WITH TAPE ▼

AS-15 12/17

**APPLICATION FOR BALLOT BY MAIL**

| 1 | Last Name (Please print information) | Suffix (Jr., Sr., III, etc) | First Name | Middle Initial |
|---|---|---|---|---|
| | FOX | | DANIELLE | DDenise |

V.U.D #, County, Election Precinct #, Statement of Residence, etc. — 100411774

2. Residence Address: See back of this application for instructions.
1701 N. ESPLANADA AVE
City: McAllen  ,TX  ZIP Code: 78501

3. Mail my ballot to: If mailing address differs from residence address, please complete Box # 7.
P.O. BOX 6326
City: Carmel by the Sea  State: CA  ZIP Code: 93921

Contact Information (Optional)*
Please list phone number and/or email address: (650)(358) 4447
* Used in case our office has questions.

4. Date of Birth (mm/dd/yyyy) (Optional)
0 6 0 4 1 9 7 7

5. **Reason for Voting by Mail:**
- ☐ 65 years of age or older. (Complete Box #6a)
- ☐ Disability. (Complete Box #6a)
- ☒ Expected absence from the county. (Complete Box #6b and Box #8)
  You will receive a ballot for the upcoming election only
- ☐ Confinement in jail. (Complete #6b)
  You will receive a ballot for the upcoming election only

6a. **ONLY Voters 65 Years of Age or Older or Voters with a Disability:**
If applying for one election, select appropriate box.
If applying once for elections in the calendar year, select "Annual Application."
- ☐ Annual Application

Uniform and Other Elections:
- ☐ May Election
- ☐ November Election
- ☐ Other _____

Primary Elections:
You must declare one political party to vote in a primary:
- ☐ Democratic Primary
- ☐ Republican Primary
- ☐ Any Resulting Runoff

6b. **ONLY Voters Absent from County or Voters Confined in Jail:**
You may only apply for a ballot by mail for one election, and any resulting runoff.
Please select the appropriate box.

Uniform and Other Elections:
- ☐ May Election
- ☐ November Election
- ☐ Other _____

Primary Elections:
You must declare one political party to vote in a primary:
- ☐ Democratic Primary
- ☐ Republican Primary
- ☐ Any Resulting Runoff

7. If you are requesting this ballot be mailed to a different address (other than residence), indicate where the ballot will be mailed. See reverse for instructions.
- ☐ Mailing Address as listed on my voter registration certificate
- ☐ Nursing home, assisted living facility, or long term care facility
- ☐ Hospital
- ☐ Retirement Center
- ☐ Address of the jail
- ☐ Relative; relationship _____
- ☒ Address outside the county (see Box #8)

8. If you selected "expected absence from the county," see reverse for instructions
0 6 0 5 2 0 1 9 — 1 0 0 1 2 0 1 9
Date you can begin to receive mail at this address    Date of return to residence address

9. Voters may submit completed, signed, and scanned application to the Early Voting Clerk at:
para@mcallen.net (early voting clerk's e-mail address)
(956) 681-1029 (early voting clerk's fax)
NOTE: If you fax or e-mail this form, please be aware that you must also mail this form to the early voting clerk within four business days. See "Submitting Application" on the back of this form for additional information.

10. "I certify that the information given in this application is true, and I understand that giving false information in this application is a crime."

SIGN HERE
If applicant is unable to sign or make a mark in the presence of a witness, the witness shall complete Box #11.

X _____    Date 05/30/19

11. See back for Witness and Assistant definitions.
If applicant is unable to mark Box #10 and you are acting as a Witness to that fact, please check this box and sign below. ☐

If you assisted the applicant in completing this application in the applicant's presence or e-mailed/mailed or faxed the application on behalf of the applicant, please check this box as an Assistant and sign below. ☐

*If you are acting as Witness and Assistant, please check both boxes. Failure to complete this information is a Class A misdemeanor if signature was witnessed or applicant was assisted in completing the application.

X _____
Signature of Witness /Assistant

Street Address _____    Apt Number (if applicable) _____

State _____

Witness' Relationship to Applicant
(Refer to instructions on back for clarification)

X _____
Printed Name of Witness/Assistant

City _____

ZIP Code _____

Este formulario está disponible en Español. Para conseguir la versión en Español favor de llamar sin cargo al 1.800.252.8683 a la oficina del Secretario de Estado o la Secretaría de Votación por Adelantado.

▼ FOLD OVER HERE AND SEAL ▼

# APPLICATION FOR BALLOT BY MAIL
## (Solicitud Para Recibir Una Boleta Por Correo)

**For Official Use Only**

VUID: 1053981254

PCT:

**Last Name**
Perez

**Suffix**

**First Name**
Richard

**Middle Initial**
Hr.

11/7/1936

## ADDRESS AT WHICH VOTER IS REGISTERED (DIRECCION DE RESIDENCIA DE INSCRIPCION COMO VOTANTE)

**Street Address**
1512 Redbud Ave

**City**
McAllen

**State**
TX

**ZIP**
78504-4609

I am over 65 years of age and requesting an Annual Ballot By Mail to recieve a ballot or all elections in 2019, including local elections and the November 2019 General Election. Mail my ballot to the address indicated above (unless noted otherwise below.)

X _____

Signature of applicant. I certify that the information given in this application is true and I understand that giving false information in this application is a crime. Certifico que la información que se proporciona mediante esta solicitud es cierta y entiendo que es delito dar información falsa.

**OPTIONAL: IF YOU ARE NOT ABLE TO RECEIVE YOUR BALLOT AT YOUR REGISTRATION ADDRESS (ABOVE), YOU MAY HAVE YOUR BALLOT MAILED TO AN ALTERNATE ADDRESS**

| Check One of these 4 choices: | STREET ADDRESS |
| --- | --- |
| ☐ NURSING HOME, ASSISTED LIVING OR LONG TERM CARE FACILITY | |
| ☐ HOSPITAL | CITY · STATE · ZIP |
| ☐ RETIREMENT CENTER | |
| ☐ RELATIVE, RELATIONSHIP _____ | |

▼ DO NOT TEAR PERFORATED TAB. FOLD OVER BOTTOM TO TOP AND SEAL WITH TAPE ▼

# Application for Ballot by Mail

DO NOT REMOVE PERFORATED TABS. Moisten here and fold bottom to top to seal.

Prescribed by the Office of the Secretary of State of Texas A5-16 12/17

For Official Use Only
VUID #, County Election Precinct #, Statement of Residence, etc.

( 985 36 949

**1. Last Name** (Please print information)
Lara

**First Name**
Tomasa

**Suffix** (Jr., Sr., III, etc)

**Middle Initial**

**2. Residence Address:** See back of the application for instructions.
2109 Flr Ave.

**City**
McAllen

**State**
, TX

**ZIP Code**
78501

**3. Mail my ballot to:** If mailing address differs from residence address, please complete Box #7.

**City**

**State**

**ZIP Code**

**4. Date of Birth** (mm/dd/yyyy) (Optional)
1 2 / 2 0 / 1 9 3 3

**Contact Information** (Optional)*
Please list phone number and/or email address:
* Used in case our office has questions.

**5. Reason for Voting by Mail:**
☑ 65 years of age or older. **(Complete Box #6a)**
☐ Disability. **(Complete Box #6a)**
☐ Expected absence from the county. **(Complete Box #6b and Box #8)**
   You will receive a ballot for the upcoming election only
☐ Confinement in Jail. **(Complete Box #6b)**
   You will receive a ballot for the upcoming election only

**7.** If you are requesting this ballot be mailed to a different address (other than residence), indicate where the ballot will be mailed. See reverse for instructions.
☐ Mailing Address as listed on my voter registration certificate
☐ Nursing home, assisted living facility, or long term care facility
☐ Hospital
☐ Retirement Center

☐ Address of the jail
☐ Relative; relationship _____
☐ Address outside the county (see Box #8)

**6a. ONLY Voters 65 Years of Age or Older or Voters with a Disability:**
If applying for one election, select appropriate box.
If applying once for elections in the calendar year, select "Annual Application."
☐ Annual Application

**Primary Elections:** You must declare one political party to vote in a primary
☐ May Election        ☐ Democratic Primary
☐ November Election   ☐ Republican Primary
☐ Other ____          ☑ Any Resulting Runoff

**8.** If you selected "expected absence from the county," see reverse for instructions

Date of return to residence address

Date you can begin to receive mail at this address

**9.** Voters may submit a completed, signed, and scanned application to the Early Voting Clerk at:
plara@mcallen.net
(early voting clerk's e-mail address)
(956) 681-1029
(early voting clerk's fax)

NOTE: If you fax or e-mail this form, please be aware that you must also mail the form to the early voting clerk within four business days. See "Submitting Application" on the back of this form for additional information.

**10.** "I certify that the information given in this application is true, and I understand that giving false information in this application is a crime."

**SIGN HERE**
If applicant is unable to sign or make a mark in the presence of a witness, the witness shall complete Box #11.

X _Tomasa Lara_

**6b. ONLY Voters Absent from County or Voters Confined in Jail:**
You may only apply for a ballot by mail for one election, and any resulting runoff.
Please select the appropriate box.

**Primary Elections:** You must declare one political party to vote in a primary
☐ May Election        ☐ Democratic Primary
☐ November Election   ☐ Republican Primary
☐ Other ____          ☐ Any Resulting Runoff

If someone helped you to complete this form or mails this form for you, then that person must complete the sections below.

X _____
Printed Name of Witness/Assistant

**11.** See back for Witness and Assistant definitions.
If applicant is unable to mark Box #10 and you are acting as a Witness to that fact, please check this box and sign below. ☐

If you assisted the applicant in completing the application in the applicant's presence or e-mailed/mailed or faxed the application on behalf of the applicant, please check this box as an Assistant and sign below.
*If you are acting as Witness and Assistant, please check both boxes. Failure to complete this information is a Class A misdemeanor if signature was witnessed or applicant was assisted in completing the application.

X _____
Signature of Witness/Assistant

**Street Address**                **Apt Number** (if applicable)

**State**

**City**

**ZIP Code**

**Witness Relationship to Applicant**
(Refer to instructions on back for clarification)

**Date**

Este formulario está disponible en Español. Para conseguir la versión en Español favor de llamar sin cargo al 1.800.252.8683 a la oficina del Secretario de Estado o la Secretaría de Votación por Adelantado.

▼ FOLD OVER HERE AND SEAL ▼

# APPLICATION FOR BALLOT BY MAIL
(Solicitud Para Recibir Una Boleta Por Correo)

**For Official Use Only**
VUID: 10542 744/0 PCT: ____

| Last Name | Suffix | First Name | Middle Initial |
|---|---|---|---|
| Villalpando | | Paula | |

**ADDRESS AT WHICH VOTER IS REGISTERED (DIRECCION DE RESIDENCIA/DE INSCRIPCION COMO VOTANTE)**

Street Address

516 S 15th St Apt 2

| | State | ZIP |
|---|---|---|
| McAllen | TX | 78501-5280 |

I am over 65 years of age and requesting an Annual Ballot By Mail to recieve a ballot or all elections in 2019, including local elections and the November 2019 General Election. Mail my ballot to the address indicated above (unless noted otherwise below.)

12/30/1938

X _Paula Villalpando_
Signature of applicant. I certify that the information given in this application is true and I understand that giving false information in this application is a crim. Certifico que la información que se proporciona mediante esta solicitud es cierta y entiendo que es delito dar información falsa

**OPTIONAL: IF YOU ARE NOT ABLE TO RECEIVE YOUR BALLOT AT YOUR REGISTRATION ADDRESS (ABOVE), YOU MAY HAVE YOUR BALLOT MAILED TO AN ALTERNATE ADDRESS**

Check One
of these
4 choices:

☐ NURSING HOME, ASSISTED LIVING OR LONG TERM CARE FACILITY
☐ HOSPITAL
☐ RETIREMENT CENTER
☐ RELATIVE, RELATIONSHIP

STREET ADDRESS

| CITY | STATE | ZIP |
|---|---|---|

▼ DO NOT TEAR PERFORATED TAB. FOLD OVER BOTTOM TO TOP AND SEAL WITH TAPE ▼

1123

# Application for Ballot by Mail

Prescribed by the Office of the Secretary of State of Texas
AS-15 12/17

1173ﬞ165404

**1** Last Name (Please print information)
Weisfeld-Hinojosa

Suffix (Jr., Sr., III, etc)

First Name
Johnathan

For Official Use Only
VUID #, County Election Precinct #,
Statement of Residence, etc.

Middle Initial
S

**2** Residence Address: See back of this application for instructions.
4801 N. 16th St.

City
McAllen

State
TX

ZIP Code
78504

**3** Mail my ballot to: If mailing address differs from residence address, please complete Box #7
11539 Hubener Rd. Apt. 3236

City
San Antonio

State
TX

ZIP Code
78230

Contact Information (Optional)*
Please list phone number and/or email address:
* Used in case our office has questions.

**4** Date of Birth (mm/dd/yyyy) (Optional)
| 1 | 0 | / | 0 | 6 | / | 1 | 9 | 9 | 2 |

**5** Reason for Voting by Mail:
- ☐ 65 years of age or older. (Complete Box #6a)
- ☐ Disability. (Complete Box #6a)
- ☒ Expected absence from the county. (Complete Box #6b and Box #8)
  You will receive a ballot for the upcoming election only.
- ☐ Confinement in jail. (Complete Box #6b)
  You will receive a ballot for the upcoming election only.

**6a** ONLY Voters 65 Years of Age or Older or Voters with a Disability:
If applying for one election, select appropriate box.
If applying once for elections in the calendar year, select "Annual Application."

- ☐ Annual Application

**Uniform and Other Elections:**
- ☐ May Election
- ☐ November Election
- ☐ Other _____

Primary Elections:
You must declare one political party to vote in a primary.
- ☐ Democratic Primary
- ☐ Republican Primary
- ☐ Any Resulting Runoff

**6b** ONLY Voters Absent from County or Voters Confined in Jail:
You may only apply for a ballot by mail for one election, and any resulting runoff.
Please select the appropriate box.

**Uniform and Other Elections:**
- ☒ May Election
- ☐ November Election
- ☐ Other _____

Primary Elections:
You must declare one political party to vote in a primary.
- ☐ Democratic Primary
- ☐ Republican Primary
- ☒ Any Resulting Runoff

**7** If you are requesting this ballot be mailed to a different address (other than residence), indicate where the ballot will be mailed. See reverse for instructions.
- ☐ Mailing Address as listed on my voter registration certificate
- ☐ Nursing home, assisted living facility, or long term care facility
- ☐ Hospital
- ☐ Retirement Center
- ☐ Address of the jail
- ☐ Relative; relationship _____
- ☒ Address outside the county (see Box #8)

**8** If you selected "expected absence from the county," see reverse for instructions.

| 0 | 4 | / | 0 | 3 | / | 2 | 0 | 1 | 9 |   —   | 0 | 8 | / | 0 | 1 | / | 2 | 0 | 1 | 9 |

Date you can begin to receive mail at this address          Date of return to residence address

Voters may submit a completed, signed, and scanned application to the Early Voting Clerk at:

_____ (early voting clerk's e-mail address)          _____ (early voting clerk's fax)

NOTE: If you fax or e-mail this form, please be aware that you must also mail the form to the early voting clerk within four business days. See "Submitting Application" on the back of this form for additional information.

**11** "I certify that the information given in this application is true, and I understand that giving false information in this application is a crime."

X _____ [signature]          4/3/19

SIGN HERE
If applicant is unable to sign or make a mark in the presence of a witness, the witness shall complete Box #11.

Date

If someone helped you to complete this form or helped you to return this form for you, then that person must complete the sections below.

See back for Witness and Assistant definitions.

If applicant is unable to mark Box #10 and you are acting as a Witness to that fact, please check this box and sign below. ☐

If you assisted the applicant in completing this application in the applicant's presence or e-mailed/mailed or faxed the application on behalf of the applicant, please check this box as an Assistant and sign below.

★ If you are acting as Witness and Assistant, please check both boxes. Failure to complete this information is a Class A misdemeanor if signature was witnessed or applicant was assisted in completing the application.

X _____
Signature of Witness/Assistant

Printed Name of Witness/Assistant

Street Address          Apt Number (if applicable)

City

State          ZIP Code

Witness' Relationship to Applicant
(Refer to instructions on back for clarification)

# Application for Ballot by Mail

Prescribed by the Office of the Secretary of State of Texas
A5-15e 08/15

**1** Last Name (Please print information): PEREZ GARCIA

Suffix (Jr., Sr., III, etc.)

First Name: M. CARMEN   Middle Initial

For Official Use Only
V.U.I.D. #, County Election, Precinct #, Statement of Residence, etc.
M Maria del

**2** Residence Address: See back of this application for instructions.
101 W MARLEAVE

City: McALLEN   ,TX   State
Zip Code: 78501

**3** Mail my ballot to: If mailing address differs from residence address, please complete Box # 7.

City   State   Zip Code

**4** Date of Birth (mm/dd/yyyy) (Optional)
0 2 / 1 5 / 1 9 4 7

**5** Reason for Voting by Mail:
☒ 65 years of age or older. (Complete Box #6a)
☐ Disability. (Complete Box #6a)
☐ Expected absence from the county. (Complete Box #6b and Box #8)
    You will receive a ballot for the upcoming election only.
☐ Confinement in Jail. (Complete Box #6b)
    You will receive a ballot for the upcoming election only.

**6a** ONLY Voters 65 Years of Age or Older or Voters with a Disability:
If applying for one election, select appropriate box.
If applying once for elections in the calendar year, select "Annual Application."
☐ Annual Application

Primary Elections:
You must declare one political party to vote in a primary:
☐ Democratic Primary
☐ Republican Primary
☐ Any Resulting Runoff

Uniform and Other Elections:
☐ May Election
☐ November Election
☐ Other

**6b** ONLY Voters Absent from County or Voters Confined in Jail:
You may only apply for a ballot by mail for one election, and any resulting runoff.
Please select the appropriate box.

Primary Elections:
You must declare one political party to vote in a primary:
☐ Democratic Primary
☐ Republican Primary
☐ Any Resulting Runoff

Uniform and Other Elections:
☐ May Election
☐ November Election
☐ Other

**7** If you are requesting this ballot be mailed to a different address (other than residence), indicate where the ballot will be mailed. See reverse for instructions.
☐ Mailing Address as listed on my voter registration certificate
☐ Nursing home, assisted living facility, or long term care facility
☐ Hospital
☐ Retirement Center
☐ Address of the jail
☐ Relative; relationship ____
☐ Address outside the county (see Box #8)

**8** If you selected "expected absence from the county," see reverse for instructions

Date of return to residence address

**9** Date you can begin to receive mail at this address

Contact Information (Optional)*
Please list phone number and/or email address:
* Used in case our office has questions.

Notice to Voter: Effective September 1, 2015, you may submit a completed, signed and scanned application to the early voting clerk at

(early voting clerk's e-mail address)

**10** "I certify that the information given in this application is true, and I understand that giving false information in this application is a crime."

SIGN HERE
If applicant is unable to sign or make a mark in the presence of a witness, the witness shall complete Box #11.

X [signature]   Date 5/7/17

Witness' Relationship to Applicant
(Refer to Instructions on back for clarification)

**11** See back for Witness and Assistant definitions.

If someone helped you to complete this form or mails the form for you, then that person must complete the sections below.

If applicant is unable to mark Box #10 and you are acting as a Witness to that fact, please check this box and sign below. ☐

If you assisted the applicant in completing this application in the applicant's presence or e-mailed/mailed or faxed the application on behalf of the applicant, please check this box as an Assistant and sign below.
★If you are acting as Witness and Assistant, please check both boxes. Failure to complete this information is a Class A misdemeanor if your signature was witnessed or applicant was assisted in completing the application.

X ____
Printed Name of Witness/Assistant

City   Zip

X ____
Signature of Witness/Assistant

Street Address   Apt Number (if applicable)

State   Zip

1125

▼ FOLD OVER HERE AND SEAL ▼

## APPLICATION FOR BALLOT BY MAIL
### (Solicitud Para Recibir Una Boleta Por Correo)

**For Official Use Only**
VUID: 1057010369
PCT: ____

**Last Name**
Lopez

**Suffix**

**First Name**
Elia

**Middle Initial**
G Guadalupe

**ADDRESS AT WHICH VOTER IS REGISTERED (DIRECCION DE RESIDENCIADE INSCRIPCION COMO VOTANTE)**

**Street Address**
2009 Japonica Ave

**City**
McAllen

**State**
TX

**ZIP**
78501-6039

10/23/1939

☐ I am over 65 years of age and requesting an Annual Ballot By Mail to recieve a ballot or all elections in 2019, including local elections and the November 2019 General Election. Mail my ballot to the address indicated above (unless noted otherwise below.)

X _____
Signature of applicant. I certify that the information given in this application is true and I understand that giving false information in this application is a crim. Certifico que la información que se proporciona mediante esta solicitud es cierta y entiendo que es delito dar información falsa

**OPTIONAL: IF YOU ARE NOT ABLE TO RECEIVE YOUR BALLOT AT YOUR REGISTRATION ADDRESS (ABOVE), YOU MAY HAVE YOUR BALLOT MAILED TO AN ALTERNATE ADDRESS**

**Check One of these 4 choices:**
☐ NURSING HOME, ASSISTED LIVING OR LONG TERM CARE FACILITY
☐ HOSPITAL
☐ RETIREMENT CENTER
☐ RELATIVE, RELATIONSHIP

**STREET ADDRESS**

**CITY**

**STATE**

**ZIP**

▼DO NOT TEAR PERFORATED TAB. FOLD OVER BOTTOM TO TOP AND SEAL WITH TAPE ▼

1126

**1** Last Name (Please print information)
MILLS

First Name
JOHN

Middle Initial
A Andrew

Suffix (Jr., Sr., III, etc)
IV

**2** Residence Address: See back of this application for instructions.
1408 WACK AVE.   City SEATTLE   ,TX   ZIP Code 78504

**3** Mail my ballot to: If mailing address differs from residence address, please complete Box # 7.
HILTON GARDEN NW, 1821 BOREN AVE.   City SEATTLE   State WA   ZIP Code 78101

**4** Date of Birth (mm/dd/yyyy) (Optional)
0 6 / 0 6 / 1 9 7 3

**5** Reason for Voting by Mail:
☐ 65 years of age or older. (Complete Box #6a)
☐ Disability. (Complete Box #6a)
☑ Expected absence from the county. (Complete Box #6b and Box #8)
You will receive a ballot for the upcoming election only.
☐ Confinement in jail. (Complete Box #6b)
You will receive a ballot for the upcoming election only.

**6a** ONLY Voters 65 Years of Age or Older or Voters with a Disability:
If applying for one election, select appropriate box.
If applying once for elections in the calendar year, select "Annual Application."
☐ Annual Application

Uniform and Other Elections:       Primary Elections:
You must declare one political party to vote in a primary.
☐ May Election       ☐ Democratic Primary
☐ November Election   ☐ Republican Primary
☐ Other _____      ☐ Any Resulting Runoff

**6b** ONLY Voters Absent from County or Voters Confined in Jail:
You may only apply for a ballot by mail for one election, and any resulting runoff.
Please select the appropriate box.

Uniform and Other Elections:       Primary Elections:
You must declare one political party to vote in a primary.
☐ May Election       ☐ Democratic Primary
☐ November Election   ☐ Republican Primary
☐ Other _____      ☑ Any Resulting Runoff

Contact Information (Optional)*
Please list phone number and/or email address:
* Used in case our office has questions.
(450) 451-0766

**7** If you are requesting this ballot be mailed to a different address (other than residence), indicate where the ballot will be mailed. See reverse for instructions.
☐ Mailing Address as listed on my voter registration certificate
☐ Nursing home, assisted living facility, or long term care facility
☐ Hospital
☐ Retirement Center
☐ Address of the jail
☐ Relative; relationship _____
☑ Address outside the county (see Box #8)

**8** If you selected "expected absence from the county," see reverse for instructions.
0 6 / 0 8 / 2 0 1 9   —   0 6 / 2 3 / 2 0 1 9
Date you can begin to receive mail at this address       Date of return to residence address

**9** Voters may submit a completed, signed, and scanned application to the Early Voting Clerk by e-mail.
para@mcallen.net
(early voting clerk's e-mail address)       (956) 681-1029
(early voting clerk's fax)

NOTE: If you fax or e-mail this form, please be aware that you must also mail the form to the early voting clerk within four business days. See "Submitting Application" on the back of this form for additional information.

**10** "I certify that the information given in this application is true, and I understand that giving false information in this application is a crime."

X _____ (signature)   Date 6/7/19

SIGN HERE
If applicant is unable to sign or make a mark in the presence of a witness, the witness shall complete Box #11.

Printed Name of Witness/Assistant

X _____
City _____   ZIP Code _____

Witness' Relationship to Applicant
(Refer to instructions on back for clarification)
_____

**11** See back for Witness and Assistant definitions.

If applicant is unable to mark Box #10 and you are acting as a Witness to that fact, please check this box and sign below. ☐

If you assisted the applicant in completing this application in the applicant's presence or e-mailed/mailed or faxed the application on behalf of the applicant, please check this box as an Assistant and sign below.

*If you are acting as Witness and Assistant, please check both boxes. Failure to complete this information is a Class A misdemeanor if signature was witnessed or applicant was assisted in completing the application.

X _____
Signature of Witness /Assistant

Street Address _____   Apt Number (if applicable) _____

State _____

If someone helped you to complete this form or mails this form for you, then that person must complete the sections below.

1127

Este formulario está disponible en Español. Para conseguir la versión en Español favor de llamar sin cargo al 1.800.252.8683 a la oficina del Secretario de Estado o la Secretaría de Votación por Adelantado.

**1** Last Name (Please print information) See back of this application for instructions.

BROWN

Voter #, County Election Precinct #, Statement of Residence, etc.

1007 123 018

First Name: PHILIP

Suffix (Jr., Sr., III, etc):

Middle Initial: K P

**2** Residence Address: See back of this application for instructions.

1210 YUCCA AVENUE

City: MCALLEN

, TX

ZIP Code: 78501

**3** Mail my ballot to: If mailing address differs from residence address, please complete Box # 7.

93 PATTEN ROAD

City: NORTH HAVEN

State: CT

ZIP Code: 06473

**4** Date of Birth (mm/dd/yyyy) (Optional)

0 1 2 9 1 9 4 7

**5** Reason for Voting by Mail:
☐ 65 years of age or older. (Complete Box #6a)
☐ Disability. (Complete Box #6a)
☒ Expected absence from the county. (Complete Box #6b and Box #8)
  ☐ You will receive a ballot for the upcoming election only
☐ Confinement in jail. (Complete Box #6b)
  ☐ You will receive a ballot for the upcoming election only

Contact Information (Optional)
Please list phone number and/or email address:
* Used in case our office has questions.

**7** If you are requesting this ballot be mailed to a different address (other than residence), indicate where the ballot
will be mailed. See reverse for instructions.
☐ Mailing Address as listed on my voter registration certificate
☐ Nursing home, assisted living facility, or long term care facility
☐ Hospital
☐ Retirement Center

☐ Address of the jail
☒ Relative; relationship NEPHEW
☐ Address outside the county (see Box #8)

**8** If you selected "expected absence from the county," see reverse for instructions

0 6 0 9 2 0 1 9  —  0 6 2 3 2 0 1 9

Date you can begin to receive mail at this address    Date of return to residence address

**9** You may submit a completed, signed, and scanned application to the Early Voting Clerk.
plara@mcallen.net
(early voting clerk's e-mail address)

(956)681-1029
(early voting clerk's fax)

NOTE: If you fax or e-mail this form, please be aware that you must also mail the form to the early voting clerk within four
business days. See "Submitting Application" on the back of this form for additional information.

**10** "I certify that the information given in this application is true, and I understand that giving false information
in this application is a crime."

X [signature]                    Date 5/23/19

SIGN HERE
If applicant is unable to sign or make a
mark in the presence of a witness, the
witness shall complete Box #11.

X
Printed Name of Witness/Assistant

City

ZIP Code

Witness' Relationship to Applicant
(Refer to instructions on back for clarification)

**6a** ONLY Voters 65 Years of Age or Older or Voters with a Disability:
If applying for one election, select appropriate box.
If applying once for elections in the calendar year, select "Annual Application."
☐ Annual Application

Uniform and Other Elections:
☐ May Election
☐ November Election
☐ Other

Primary Elections:
You must declare one political party to vote in
a primary:
☐ Democratic Primary
☐ Republican Primary
☒ Any Resulting Runoff

**6b** ONLY Voters Absent from County or Voters Confined in Jail:
You may only apply for a ballot by mail for one election, and any resulting runoff.
Please select the appropriate box.

Uniform and Other Elections:
☐ May Election
☐ November Election
☐ Other _____

Primary Elections:
You must declare one political party to vote in
a primary:
☐ Democratic Primary
☐ Republican Primary
☒ Any Resulting Runoff

**11** See back for Witness and Assistant definitions.
If applicant is unable to mark Box #10 and you are acting as a Witness to that fact, please check this box and sign below. ☐

If you assisted the applicant in completing this application in the applicant's presence or e-mailed/mailed or faxed the application on behalf of the applicant, please check this box as an Assistant and sign below. ☐
✱ If you are acting as Witness and Assistant, please check both boxes. Failure to complete this information is a Class A misdemeanor if signature was witnessed or applicant was assisted in completing the application.

X
Signature of Witness/Assistant

Street/Address                    Apt Number (if applicable)

State

If someone helped you to complete this form or mails this form for you, then that person must complete the sections below.

1128

Este formulario está disponible en Español. Para conseguir la version en Español favor de llamar sin cargo al 1.800.252.8683 a la oficina del Secretario de Estado o la Secretaria de Votación por Adelantado.

▼ FOLD OVER HERE AND SEAL ▼

## APPLICATION FOR BALLOT BY MAIL
### (Solicitud Para Recibir Una Boleta Por Correo)

**For Official Use Only**
VUID: 1053945 32
PCT: _____

| Last Name | Suffix | First Name | Middle Initial |
|-----------|--------|-----------|----------------|
| Perez | | Yolanda | L. Leathya |

**ADDRESS AT WHICH VOTER IS REGISTERED (DIRECCION DE RESIDENCIA/DE INSCRIPCION COMO VOTANTE)**

**Street Address**
604 S 21st St

3/7/1933

| City | State | ZIP |
|------|-------|-----|
| McAllen | TX | 78501-7147 |

I am over 65 years of age and requesting an Annual Ballot By Mail to recieve a ballot or all elections in 2019, including local elections and the November 2019 General Election. Mail my ballot to the address indicated above (unless noted otherwise below.)

Signature of applicant: X _____ I certify that the information given in this application is true and I understand that giving false information in this application is a crim. Certifico que la información que se proporciona mediante esta solicitud es cierta y entiendo que es delito dar información falsa

**OPTIONAL: IF YOU ARE NOT ABLE TO RECEIVE YOUR BALLOT AT YOUR REGISTRATION ADDRESS (ABOVE), YOU MAY HAVE YOUR BALLOT MAILED TO AN ALTERNATE ADDRESS**

Check One
of these
4 choices:
- ☐ NURSING HOME, ASSISTED LIVING OR LONG TERM CARE FACILITY
- ☐ HOSPITAL
- ☐ RETIREMENT CENTER
- ☐ RELATIVE, RELATIONSHIP

STREET ADDRESS

| CITY | STATE | ZIP |
|------|-------|-----|

▼ DO NOT TEAR PERFORATED TAB. FOLD OVER BOTTOM TO TOP AND SEAL WITH TAPE ▼

1129



**Application for a Ballot by Mail**

1. Last Name (Please print information): Carranza
   First Name: Otila
   Suffix (Jr., Sr., III, etc.):
   Middle Initial:

2. Residence Address: See back of this application for instructions.
   520 520 N. 20th
   City: McAllen
   State: TX
   ZIP Code: 78507

3. Mail my ballot to: If mailing address differs from residence address, please complete Box # 7.
   City:
   State:
   ZIP Code:

4. Date of Birth (mm/dd/yyyy) (Optional): 12/13/1916

Contact Information (Optional)
Please list phone number and/or email address:
* Used in case our office has questions.

5. Reason for Voting By Mail:
   ☐ 65 years of age or older. (Complete Box #5a)
   ☐ Disability. (Complete Box #5a)
   ☐ Expected absence from the county. (Complete Box #5b and Box #8)
      You will receive a ballot for the upcoming election only.
   ☐ Confinement in jail. (Complete Box #5b)
      You will receive a ballot for the upcoming election only.

5a. ONLY Voters 65 Years of Age or Older or Voters with a Disability:
   If applying for one election, select appropriate box.
   If applying once for elections in the calendar year, select "Annual Application."
   ☑ Annual Application

   Uniform and Other Elections:
   ☐ May Election
   ☐ November Election
   ☐ Other _____

   Primary Elections:
   You must declare one political party to vote in a primary:
   ☐ Democratic Primary
   ☐ Republican Primary
   ☐ Any Resulting Runoff

5b. ONLY Voters Absent from County or Voters Confined in Jail:
   You may only apply for a ballot by mail for one election, and any resulting runoff.
   Please select the appropriate box.

   Uniform and Other Elections:
   ☐ May Election
   ☐ November Election
   ☐ Other _____

   Primary Elections:
   You must declare one political party to vote in a primary:
   ☐ Democratic Primary
   ☐ Republican Primary
   ☐ Any Resulting Runoff

7. If you are requesting this ballot to be mailed to a different address (other than residence), indicate where the ballot will be mailed. See reverse for instructions.
   ☐ Mailing Address as listed on my voter registration certificate
   ☐ Nursing home, assisted living facility, or long term care facility
   ☐ Hospital
   ☐ Retirement Center
   ☐ Address of the jail
   ☐ Relative; relationship _____
   ☐ Address outside the county (see Box #8)

8. If you selected "expected absence from the county," see reverse for instructions
   Date of return to residence address
   Date you can begin to receive mail at this address

9. Voters may submit a completed, signed, and scanned application to the Early Voting Clerk at:
   plara@mcallen.net
   (early voting clerk's e-mail address)
   (956) 681-1029
   (early voting clerk's fax)
   NOTE: If you fax or e-mail this form, please be aware that you must also mail the form to the early voting clerk within four business days. See "Submitting Application" on the back of this form for additional information.

10. "I certify that the information given in this application is true, and I understand that giving false information in this application is a crime."

   SIGN HERE
   If applicant is unable to sign or make a mark in the presence of a witness, the witness shall complete Box #11.
   X  Otila Carranza  Date

11. See back for Witness and Assistant definitions.
   If applicant is unable to mark as a Witness to that fact, please check this box and sign below. ☐
   If you assisted the applicant in completing this application in the applicant's presence or e-mailed/mailed or faxed this application on behalf of the applicant, please check this box as an Assistant and sign below.
   If you are acting as Witness and Assistant, please check both boxes. Failure to complete this information is a Class A misdemeanor if signature was witnessed or applicant was assisted in completing the application.

   X _____
   Signature of Witness/Assistant
   X _____
   Printed Name of Witness/Assistant

   Street Address      Apt Number (if applicable)
   City

   State      ZIP Code
   Witness' Relationship to Applicant
   (Refer to instructions on back for clarification)

If someone helped you to complete this form or mails the form for you, then that person must complete the sections below.

Este formulario está disponible en Español. Para conseguir la versión en Español favor de llamar sin cargo al 1.800.252.8683 a la oficina del Secretario de Estado o la Secretaría de Votación por Adelantado.

1130

Official Ballot Application
Statement of Residence, etc.

105 360 9 9 9 9

**1** Last Name (Please print information)
MITTELSTAEDT

First Name
MONA

Middle Initial
S WISE

Suffix (Jr., Sr., III, etc)

**2** Residence Address: See back of this application for instructions.
2011 DAFFODIL AVE

City
MC ALLEN

, TX

ZIP Code
78501

**3** Mail my ballot to: If mailing address differs from residence address, please complete Box #7.
832 LELAND AVE

City
SHEBOYGAN

State
WI

ZIP Code
53081

**4** Date of Birth (mm/dd/yyyy) (Optional)
0 3 / 2 7 / 1 9 5 2

Contact Information (Optional)
Please list phone number and/or email address:
* Used in case our office has questions.

**5** Reason for Voting by Mail:
☑ 65 years of age or older. (Complete Box #6a)
☐ Disability. (Complete Box #6a)
☑ Expected absence from the county. (Complete Box #6b and Box #8)
You will receive a ballot for the upcoming election only
☐ Confinement in jail. (Complete Box #6b)
You will receive a ballot for the upcoming election only

**7** If you are requesting this ballot to be mailed to a different address (other than residence), indicate where the ballot will be mailed. See reverse for instructions.
☐ Mailing Address as listed on my voter registration certificate
☐ Nursing home, assisted living facility, or long term care facility
☐ Hospital
☐ Retirement Center
☐ Address of the jail
☑ Relative; relationship _____
☐ Address outside the county (see Box #8)

**6a** ONLY Voters 65 Years of Age or Older or Voters with a Disability:
If applying for one election, select appropriate box.
If applying once for elections in the calendar year, select "Annual Application."
☐ Annual Application

Uniform and Other Elections:
☐ May Election
☐ November Election
☐ Other _____

Primary Elections:
You must declare one political party to vote in a primary:
☐ Democratic Primary
☐ Republican Primary
☐ Any Resulting Runoff

**8** If you selected "expected absence from the county," see reverse for instructions

0 5 / 2 7 / 2 0 1 9 — 0 6 / 3 0 / 2 0 1 9
Date you can begin to receive mail at this address          Date of return to residence address

**9** Voters may submit a completed, signed, and scanned application to the Early Voting Clerk at:

_____
(early voting clerk's e-mail address)

_____
(early voting clerk's fax)

NOTE: If you fax or e-mail this form, please be aware that you must also mail the form to the early voting clerk within four business days. See "Submitting Application" on the back of this form for additional information.

**10** "I certify that the information given in this application is true, and I understand that giving false information in this application is a crime."

SIGN HERE
If applicant is unable to sign or make a mark in the presence of a witness, the witness shall complete Box #11.

X Mona Mittelstaedt          Date 5-22-2019

**6b** ONLY Voters Absent from County or Voters Confined in Jail:
You may only apply for a ballot by mail for one election, and any resulting runoff.
Please select the appropriate box.

Uniform and Other Elections:
☐ May Election
☐ November Election
☐ Other _____

Primary Elections:
You must declare one political party to vote in a primary:
☐ Democratic Primary
☐ Republican Primary
☑ Any Resulting Runoff

**11** If someone helped you to complete this form or mails the form for you, then that person must complete the sections below.

See back for Witness and Assistant definitions.

If applicant is unable to mark Box #10 and you are acting as a Witness to that fact, please check this box and sign below. ☐

If you assisted the applicant in completing this application in the applicant's presence or e-mailed/mailed or faxed the application on behalf of the applicant, please check this box as an Assistant and sign below. ☐

*If you are acting as Witness and Assistant, please check both boxes. Failure to complete this information is a Class A misdemeanor if signature was witnessed or applicant was assisted in completing the application.

X _____
Signature of Witness /Assistant

X _____
Printed Name of Witness/Assistant

_____                    _____
Street Address            Apt Number (if applicable)

_____
City

_____
State

_____
ZIP Code

Witness' Relationship to Applicant
(Refer to instructions on back for clarification)

1131

Este formulario está disponible en Español.  Para conseguir la versión en Español favor de llamar sin cargo al 1.800.252.8683 a la oficina del Secretario de Estado o la Secretaría de Votación por Adelantado.

▼ FOLD OVER HERE AND SEAL ▼

**APPLICATION FOR BALLOT BY MAIL**
(Solicitud Para Recibir Una Boleta Por Correo)

For Official Use Only
VUID: 10.535-24208
PCT:

| Last Name | Suffix | First Name | Middle Initial |
|---|---|---|---|
| Pérez | | Maria | Del Socorro |

**ADDRESS AT WHICH VOTER IS REGISTERED (DIRECCION DE RESIDENCIA DE INSCRIPCIÓN COMO VOTANTE)**

Street Address
2123 Fresno Ave

| City | State | ZIP |
|---|---|---|
| McAllen | TX | 78501-7116 |

I am over 65 years of age and requesting an Annual Ballot By Mail to recieve a ballot or all elections in 2019, including local elections and the November 2019 General Election.
Mail my ballot to the address indicated above (unless noted otherwise below.)

X _Maria Pérez_

6/14/1993

Signature of applicant. I certify that the information given in this application is true and I understand that giving false information in this application is a crim. Certifico que la información que se proporciona mediante esta solicitud es cierta y entiendo que es delito dar información falsa

**OPTIONAL: IF YOU ARE NOT ABLE TO RECEIVE YOUR BALLOT AT YOUR REGISTRATION ADDRESS (ABOVE), YOU MAY HAVE YOUR  BALLOT MAILED TO AN ALTERNATE ADDRESS**

STREET ADDRESS

| CITY | STATE | ZIP |
|---|---|---|

Check One
of these
4 choices:
☐ NURSING HOME, ASSISTED LIVING OR LONG TERM CARE FACILITY
☐ HOSPITAL
☐ RETIREMENT CENTER
☐ RELATIVE, RELATIONSHIP _____

▼ DO NOT TEAR PERFORATED TAB. FOLD OVER BOTTOM TO TOP AND SEAL WITH TAPE ▼

1132

▼ FOLD OVER HERE AND SEAL ▼

## APPLICATION FOR BALLOT BY MAIL
### (Solicitud Para Recibir Una Boleta Por Correo)

**For Official Use Only**

VUID: 1053549517  PCT: _____

| Last Name | Suffix | First Name | Middle Initial |
|-----------|--------|-----------|----------------|
| Borrego | | Adalia | Esther |

**ADDRESS AT WHICH VOTER IS REGISTERED (DIRECCION DE RESIDENCIA/DE INSCRIPCION COMO VOTANTE)**

**Street Address**

2116 Ebony Ave

| City | State | ZIP |
|------|-------|-----|
| McAllen | TX | 78501-6974 |

8/28/1941

I am over 65 years of age and requesting an Annual Ballot By Mail to recieve a ballot at all elections in 2019, including local elections and the November 2019 General Election. Mail my ballot to the address indicated above (unless noted otherwise below.)

X __Adalia E. Borrego__

Signature of applicant. I certify that the information given in this application is true and I understand that giving false information in this application is a crim. Certifico que la información que se proporciona mediante esta solicitud es cierta y entiendo que es delito dar información falsa

**OPTIONAL: IF YOU ARE NOT ABLE TO RECEIVE YOUR BALLOT AT YOUR REGISTRATION ADDRESS (ABOVE), YOU MAY HAVE YOUR  BALLOT MAILED TO AN ALTERNATE ADDRESS**

| Check One of these 4 choices: | STREET ADDRESS | | |
|---|---|---|---|
| ☐ NURSING HOME, ASSISTED LIVING OR LONG TERM CARE FACILITY | | | |
| ☐ HOSPITAL | CITY | STATE | ZIP |
| ☐ RETIREMENT CENTER | | | |
| ☐ RELATIVE, RELATIONSHIP | | | |

▼ DO NOT TEAR PERFORATED TAB. FOLD OVER BOTTOM TO TOP AND SEAL WITH TAPE ▼

1133

▼ FOLD OVER HERE AND SEAL ▼

# APPLICATION FOR BALLOT BY MAIL
## (Solicitud Para Recibir Una Boleta Por Correo)

**For Official Use Only**

VUID: 1059835610

PCT:

**Last Name**
Moritz

**Suffix**

**First Name**
Leo

**Middle Initial**

**ADDRESS AT WHICH VOTER IS REGISTERED (DIRECCIÓN DE RESIDENCIA DE INSCRIPCIÓN COMO VOTANTE)**

**Street Address**
1712 Quamasia Ave

**City**
McAllen

**State**
TX

**ZIP**
78504-3714

12/06/1927

I am over 65 years of age and requesting an Annual Ballot By Mail to recieve a ballot or all elections in 2019, including local elections and the November 2019 General Election. Mail my ballot to the address indicated above (unless noted otherwise below).

X _____

Signature of applicant. I certify that the information given in this application is true and I understand that giving false information in this application is a crim. Certifico que la información que se proporciona mediante esta solicitud es cierta y entiendo que es delito dar información falsa

**OPTIONAL: IF YOU ARE NOT ABLE TO RECEIVE YOUR BALLOT AT YOUR REGISTRATION ADDRESS (ABOVE), YOU MAY HAVE YOUR BALLOT MAILED TO AN ALTERNATE ADDRESS**

**Check One of these 4 choices:**
- [ ] NURSING HOME, ASSISTED LIVING OR LONG TERM CARE FACILITY
- [ ] HOSPITAL
- [ ] RETIREMENT CENTER
- [ ] RELATIVE, RELATIONSHIP _____

**STREET ADDRESS**

**CITY**

**STATE**

**ZIP**

▼ DO NOT TEAR PERFORATED TAB. FOLD OVER BOTTOM TO TOP AND SEAL WITH TAPE ▼

1134

▼ FOLD OVER HERE AND SEAL ▼

## APPLICATION FOR BALLOT BY MAIL
### (Solicitud Para Recibir Una Boleta Por Correo)

For Official Use Only

VUID: 1053960946 PCT: _____

**Last Name**
Moxley

**Suffix**

**First Name**
Karen

**Middle Initial**

**ADDRESS AT WHICH VOTER IS REGISTERED (DIRECCION DE RESIDENCIA DE RESIDENCIADE INSCRIPCION COMO VOTANTE)**

**Street Address**
1111 Xanthisma Ave

**City**
McAllen

**State**
TX

**ZIP**
78504-3519

8/29/1948

I am over 65 years of age and requesting an Annual Ballot By Mail to recieve a ballot or all elections in 2019, including local elections and the November 2019 General Election. Mail my ballot to the address indicated above (unless noted otherwise below).

X _Karen Moxley_

Signature of applicant. I certify that the information given in this application is true and I understand that giving false information in this application is a crim. Certifico que la información que se proporciona mediante esta solicitud es cierta y entiendo que es delito dar información falsa

**OPTIONAL: IF YOU ARE NOT ABLE TO RECEIVE YOUR BALLOT AT YOUR REGISTRATION ADDRESS (ABOVE), YOU MAY HAVE YOUR  BALLOT MAILED TO AN ALTERNATE ADDRESS**

| Check One of these 4 choices: | | STREET ADDRESS |
|---|---|---|
| ☐ NURSING HOME, ASSISTED LIVING OR LONG TERM CARE FACILITY | | |
| ☐ HOSPITAL | CITY | STATE | ZIP |
| ☐ RETIREMENT CENTER | | |
| ☐ RELATIVE, RELATIONSHIP | | |

▼ DO NOT TEAR PERFORATED TAB. FOLD OVER BOTTOM TO TOP AND SEAL WITH TAPE ▼

▼ FOLD OVER HERE AND SEAL ▼

(A) mois

## APPLICATION FOR BALLOT BY MAIL.
(Solicitud Para Recibir Una Boleta Por Correo)

**For Official Use Only**
105 4002 63
VUID: _____ PCT. _____

**Last Name**
Perez

**Suffix**

**First Name**
Blanca

**Middle Initial**
G

### ADDRESS AT WHICH VOTER IS REGISTERED (DIRECCION DE RESIDENCIA/DE INSCRIPCION COMO VOTANTE)

**Street Address**
1512 Redbud Ave

**City**
McAllen

**State**
TX

**ZIP**
78504-4609

8/24/1938

I am over 65 years of age and requesting an Annual Ballot By Mail to receive a ballot or all elections in 2019, including local elections and the November 2019 General Election. Mail my ballot to the address indicated above (unless noted otherwise below).

X _Blanca G Perez_
Signature of applicant. I certify that the information given in this application is true and I understand that giving false information in this application is a crim. Certifico que la información que se proporciona mediante esta solicitud es cierta y entiendo que es delito dar información falsa.

**OPTIONAL: IF YOU ARE NOT ABLE TO RECEIVE YOUR BALLOT AT YOUR REGISTRATION ADDRESS (ABOVE), YOU MAY HAVE YOUR BALLOT MAILED TO AN ALTERNATE ADDRESS**

**STREET ADDRESS**

| Check One of these. 4 choices: | ☐ NURSING HOME, ASSISTED LIVING OR LONG TERM CARE FACILITY |
| | ☐ HOSPITAL |
| | ☐ RETIREMENT CENTER. |
| | ☐ RELATIVE, RELATIONSHIP _____ |

**CITY** | **STATE** | **ZIP**

▼ DO NOT TEAR PERFORATED TAB. FOLD OVER BOTTOM TO TOP AND SEAL WITH TAPE ▼

1136

1. Last Name (Please print information): **Galvis**
   First Name: **Maria Guadalupe**
   Suffix (Jr., Sr., III, etc):
   Middle Initial:

2. Residence Address: See page of this application for instructions.
   **1613 New York**
   City:
   State: ,TX
   ZIP Code: **78572**

3. Mail my ballot to: If mailing address differs from residence address, please complete Box 7.
   City:
   State:
   ZIP Code:

4. Date of Birth (mm/dd/yyyy) (Optional): **10 / 27 / 1942**

   Contact Information (Optional)*
   Please list phone number and/or email address:
   * Used in case our office has questions.

5. Reason for Voting by Mail:
   - ☐ 65 years of age or older - (Complete Box #6a)
   - ☐ Disability- (Complete Box #6a)
   - ☐ Expected absence from the county- (Complete Box #6b and Box #8)
     You will receive a ballot for the upcoming election only.
   - ☐ Confinement in jail- (Complete Box #6b)
     You will receive a ballot for the upcoming election only.

6a. ONLY Voters 65 Years of Age or Older or Voters with a Disability:
   If applying for one election, select appropriate box.
   If applying once for elections in the calendar year, select "Annual Application."
   - ☑ Annual Application

   Uniform and Other Elections:
   - ☐ May Election
   - ☐ November Election
   - ☐ Other ____

   Primary Elections:
   You must declare one political party to vote in a primary.
   - ☐ Democratic Primary
   - ☐ Republican Primary
   - ☑ Any Resulting Runoff

6b. ONLY Voters Absent from County or Voters Confined in Jail:
   You may only apply for a ballot by mail for one election, and any resulting runoff.
   Please select the appropriate box.

   Uniform and Other Elections:
   - ☐ May Election
   - ☐ November Election
   - ☐ Other ____

   Primary Elections:
   You must declare one political party to vote in a primary.
   - ☐ Democratic Primary
   - ☐ Republican Primary
   - ☐ Any Resulting Runoff

7. If you are requesting this ballot be mailed to a different address (other than residence), indicate where the ballot will be mailed. See reverse for instructions.
   - ☐ Mailing Address as listed on my voter registration certificate
   - ☐ Nursing home, assisted living facility, or long term care facility
   - ☐ Hospital
   - ☐ Retirement Center
   - ☐ Address of the jail
   - ☐ Relative; relationship ____
   - ☐ Address outside the county (see Box #8)

8. If you selected "expected absence from the county," see reverse for instructions.

   Date you can begin to receive mail at this address — Date of return to residence address

9. Voters may submit a completed, signed, and scanned application to the Early Voting Clerk at:
   **plara@mcallen.net**
   (early voting clerk's e-mail address)
   **(956) 681-1029** (early voting clerk's fax)

   NOTE: If you fax or e-mail this form, please be aware that you must also mail the form to the early voting clerk within four business days. See "Submitting Application" on the back of this form for additional information.

10. "I certify that the information given in this application is true, and I understand that giving false information in this application is a crime."

   ➡ X **Maria G. Garcia**
   Signature / Date

   SIGN HERE
   If applicant is unable to sign or make a mark in the presence of a witness, the witness shall complete Box #11.

   If someone helped you to complete this form or mails the form for you, then that person must complete the sections below.

11. See back for Witness and Assistant definitions.
   If applicant is unable to mark Box #10 and you are acting as a Witness to that fact, please check this box and sign below. ☐

   If you assisted the applicant in completing this application in the applicant's presence or e-mailed/mailed or faxed this application on behalf of the applicant, please check this box on as an Assistant and sign below. ☐
   *If you are acting as Witness and Assistant, please check both boxes. Failure to complete this information is a Class A misdemeanor if signature was witnessed or applicant was assisted in completing the application.

   X ____
   Signature of Witness/Assistant

   X ____
   Printed Name of Witness/Assistant

   Street Address      Apt Number (if applicable)
   City

   State              ZIP Code

   Witness' Relationship to Applicant
   (Refer to instructions on back for clarification)

Este formulario está disponible en Español. Para conseguir la versión en Español favor de llamar sin cargo al 1.800.252.8683 a la oficina del Secretario de Estado o la Secretaría de Votación por Adelantado.

1137

▼ FOLD OVER HERE AND SEAL ▼

**APPLICATION FOR BALLOT BY MAIL.**
(Solicitud Para Recibir Una Boleta Por Correo)

**For Official Use Only**
VUID: 1053654061   PCT: ____

**Last Name**
Ramirez

**Suffix**

**First Name**
Andres

**Middle Initial**

**ADDRESS AT WHICH VOTER IS REGISTERED (DIRECCION DE RESIDENCIA)** **DE INSCRIPCION COMO VOTANTE)**

**Street Address**
2021 Gumwood Ave

**City**
McAllen

**State**
TX

**ZIP**
78501-6882

2/4/1925

I am over 65 years of age and requesting an Annual Ballot By Mail to recieve a ballot or all elections in 2019, including local elections and the November 2019 General Election.
Mail my ballot to the address indicated above (unless noted otherwise below.)

X _____
Signature of applicant. I certify that the information given in this application is true and I understand that giving false information in this application is a crim. Certifico que la Informacion que se proporciona mediante esta solicitud es cierta y enfiendo que es delito dar Informacio falsa

**OPTIONAL:** IF YOU ARE NOT ABLE TO RECEIVE YOUR BALLOT AT YOUR REGISTRATION ADDRESS (ABOVE). YOU MAY HAVE YOUR BALLOT MAILED TO AN ALTERNATE ADDRESS

**STREET ADDRESS**

**Check One**
**of these**
**4 choices:**
☐ NURSING HOME, ASSISTED LIVING OR LONG TERM CARE FACILITY
☐ HOSPITAL
☐ RETIREMENT CENTER
☐ RELATIVE, RELATIONSHIP

**CITY**

**STATE**

**ZIP**

▼ DO NOT TEAR PERFORATED TAB. FOLD OVER BOTTOM TO TOP AND SEAL WITH TAPE ▼

1138

APPLICATION FOR BALLOT BY MAIL

**1.** Last Name (Please print information)
Mullin

First Name
Gina

Suffix (Jr., Sr., III, etc)

Middle Initial
10375/128 (handwritten)

**2.** Residence Address: See back of this application for instructions.
1408 W. Yucca Ave.

City
McAllen

,TX

ZIP Code
78504

**3.** Mail my ballot to: If mailing address differs from residence address, please complete Box #3
Huntington Inn Seattle Downtown 1821 Boren Ave.

City
Seattle

State
WA

ZIP Code
98101

Contact Information (Optional)*
Please list phone number and/or email address:
* Used in case our office has questions.
(954) 451-6635

**4.** Date of Birth (mm/dd/yyyy) (Optional)
0 7 / 2 9 / 1 9 7 1

**5.** Reason for Voting by Mail:
- [ ] 65 years of age or older. (Complete Box #6a)
- [ ] Disability. (Complete Box #6a)
- [x] Expected absence from the county. (Complete Box #6b and Box #8)
  You will receive a ballot for the upcoming election only
- [ ] Confinement in jail. (Complete Box #6b)
  You will receive a ballot for the upcoming election only

**6a.** ONLY Voters 65 Years of Age or Older or Voters with a Disability:
If applying for one election, select appropriate box.
If applying once for elections in the calendar year, select "Annual Application."
- [ ] Annual Application

Primary Elections:
You must declare one political party to vote in a primary.
- [ ] Democratic Primary
- [ ] Republican Primary
- [ ] Any Resulting Runoff

Uniform and Other Elections:
- [ ] May Election
- [ ] November Election
- [ ] Other ____

**6b.** ONLY Voters Absent from County or Voters Confined in Jail:
You may only apply for a ballot by mail for one election, and any resulting runoff.
Please select the appropriate box.

Primary Elections:
You must declare one political party to vote in a primary.
- [ ] Democratic Primary
- [ ] Republican Primary
- [x] Any Resulting Runoff

Uniform and Other Elections:
- [ ] May Election
- [ ] November Election
- [ ] Other ____

**7.** VOTER ID, County, school district, district #, etc.
Statement of Residence, etc.

**8.** If you are requesting this ballot be mailed to a different address (other than residence), indicate where the ballot will be mailed. See reverse for instructions.
- [ ] Mailing Address as listed on my voter registration certificate
- [ ] Nursing home, assisted living facility, or long term care facility
- [ ] Hospital
- [ ] Retirement Center
- [ ] Address of the jail
- [ ] Relative; relationship ____
- [x] Address outside the county (see Box #8)

If you selected "expected absence from the county," see reverse for instructions
Date you can begin to receive mail at this address
0 6 / 0 8 / 2 0 1 9

Date of return to residence address
0 6 / 2 3 / 2 0 1 9

**9.** Voters may submit a completed, signed, and scanned application to the Early Voting Clerk by mail or email. para@mcallen.net
(early voting clerk's e-mail address)
(956) 681-1029
(early voting clerk's fax)

NOTE: If you fax or e-mail this form, please be aware that you must also mail the form to the early voting clerk within four business days. See "Submitting Application" on the back of this form for additional information.

**10.** "I certify that the information given in this application is true, and I understand that giving false information in this application is a crime."

SIGN HERE
If applicant is unable to sign or make a mark in the presence of a witness, the witness shall complete Box #11.
X _(signature)_

Date 6/7/19

If someone helped you to complete this form or mails the form for you, then that person must complete the sections below.

**11.** See back for Witness and Assistant definitions.
If applicant is unable to mark Box #10 and you are acting as a Witness to that fact, please check this box and sign below. [ ]

If you assisted the applicant in completing this application in the applicant's presence or e-mailed/mailed or faxed the application on behalf of the applicant, please check this box as an Assistant and sign below. [ ]

*If you are acting as Witness and Assistant, please check both boxes. Failure to complete this information was witnessed or applicant was assisted in completing the application.

X _____
Signature of Witness /Assistant

Street Address _____ Apt Number (if applicable)

State _____

X _____
Printed Name of Witness/Assistant

City _____

ZIP Code _____

Witness' Relationship to Applicant
(Refer to Instructions on back for clarification)

Este formulario está disponible en Español. Para conseguir la versión en Español favor de llamar sin cargo al 1.800.252.8683 a la oficina del Secretario de Estado o la Secretaria de Votación por Adelantado.

1139



▼ FOLD OVER HERE AND SEAL ▼

# APPLICATION FOR BALLOT BY MAIL
## (Solicitud Para Recibir Una Boleta Por Correo)

**For Official Use Only**
VUID: 1053883373   PCT: _____

| Last Name | Suffix | First Name | Middle Initial |
|---|---|---|---|
| Rivera | | San | Juanita |

**ADDRESS AT WHICH VOTER IS REGISTERED (DIRECCION DE RESIDENCIA DE INSECRIPCION COMO VOTANTE)**

**Street Address**
716 N Broadway St

| City | State | ZIP |
|---|---|---|
| McAllen | TX | 78501-4620 |

1/21/1948

I am over 65 years of age and requesting an Annual Ballot By Mail to recieve a ballot or all elections in 2019, including local elections and the November 2019 General Election. Mail my ballot to the address indicated above (unless noted otherwise below)

X _San J Rivera_

Signature of applicant. I certify that the information given in this application is true and I understand that giving false information in this application is a crim. Certifico que la información que se proporciona mediante esta solicitud es cierta y entiendo que es delito dar información falsa

**OPTIONAL: IF YOU ARE NOT ABLE TO RECEIVE YOUR BALLOT AT YOUR REGISTRATION ADDRESS (ABOVE), YOU MAY HAVE YOUR  BALLOT MAILED TO AN ALTERNATE ADDRESS**

**STREET ADDRESS**

| Check One of these 4 choices: | ☐ NURSING HOME, ASSISTED LIVING OR LONG TERM CARE FACILITY |
|---|---|
| | ☐ HOSPITAL |
| | ☐ RETIREMENT CENTER |
| | ☐ RELATIVE, RELATIONSHIP _____ |

| CITY | STATE | ZIP |
|---|---|---|

▼ DO NOT TEAR PERFORATED TAB. FOLD OVER BOTTOM TO TOP AND SEAL WITH TAPE ▼

1140

# Application for Ballot by Mail

**1. Last Name** (Please print information): MITTELSTAEDT
**First Name:** GERARD
**Suffix** (Jr., Sr., III, etc):
**Middle Initial:** E

**2. Residence Address:** See back of this application for instructions.
2011 DAFFODIL AVE
**City:** McALLEN **,TX** **ZIP Code** 78501

**3. Mail my ballot to:** If mailing address differs from residence address, please complete Box #7.
832 LELAND AVE
**City:** SHEYBOYGAN **State** WI **ZIP Code** 53081

**4. Date of Birth** (mm/dd/yyyy) (Optional): 0 1 / 2 7 / 1 9 4 8

**Contact Information** (Optional)
Please list phone number and/or email address:
*Used in case our office has questions.

**5. Reason for Voting by Mail:**
- [X] 65 years of age or older. **(Complete Box #6a)**
- [ ] Disability. **(Complete Box #6a)**
- [X] Expected absence from the county. **(Complete Box #6b and Box #8)**
  You will receive a ballot for the upcoming election only
- [ ] Confinement in jail. **(Complete Box #6b)**
  You will receive a ballot for the upcoming election only

**6a. ONLY Voters 65 Years of Age or Older or Voters with a Disability:**
If applying for one election, select appropriate box.
If applying once for elections in the calendar year, select "Annual Application."
- [ ] Annual Application

**Uniform and Other Elections:**
- [ ] May Election
- [ ] November Election
- [ ] Other

**Primary Elections:**
You must declare one political party to vote in a primary:
- [ ] Democratic Primary
- [ ] Republican Primary
- [ ] Any Resulting Runoff

**6b. ONLY Voters Absent from County or Voters Confined in Jail:**
You may only apply for a ballot by mail for one election, and any resulting runoff.
Please select the appropriate box.

**Uniform and Other Elections:**
- [ ] May Election
- [ ] November Election
- [ ] Other

**Primary Elections:**
You must declare one political party to vote in a primary:
- [ ] Democratic Primary
- [ ] Republican Primary
- [X] Any Resulting Runoff

**7.** If you are requesting this ballot be mailed to a different address (other than residence), indicate where the ballot will be mailed. See reverse for instructions.
- [ ] Mailing Address as listed on my voter registration certificate
- [ ] Nursing home, assisted living facility, or long term care facility
- [ ] Hospital
- [ ] Retirement Center
- [ ] Address of the jail
- [X] Relative; relationship
- [ ] Address outside the county (see Box #8)

**8.** If you selected "expected absence from the county," see reverse for instructions
0 5 / 2 7 / 2 0 1 9  —  0 6 / 3 0 / 2 0 1 9
Date you can begin to receive mail at this address   Date of return to residence address

**9.** Voters may submit a completed, signed, and scanned application to the Early Voting Clerk at:
(early voting clerk's e-mail address)
(early voting clerk's fax)
NOTE: If you fax or e-mail this form, please be aware that you must also mail the form to the early voting clerk within four business days. See "Submitting Application" on the back of this form for additional information.

**10.** "I certify that the information given in this application is true, and I understand that giving false information in this application is a crime."

X _Gerard E Mittelstaedt_   **Date** 5-22-2019

**SIGN HERE**
If applicant is unable to sign or make a mark in the presence of a witness, the witness shall complete Box #11.

**If someone helped you to complete this form or mails the form for you, then that person must complete the sections below.**

X _____
Printed Name of Witness/Assistant

City _____

ZIP Code _____

**Witness' Relationship to Applicant**
(Refer to instructions on back for clarification)

**11.** See back for Witness and Assistant definitions.
If applicant is unable to mark X and you are acting as a **Witness** to that fact, please check this box and sign below. [ ]
If you assisted the applicant in completing this application in the applicant's presence or e-mailed/mailed or faxed the application on behalf of the applicant, please check this box as an **Assistant** and sign below.
**If you are acting as Witness and Assistant, please check both boxes.** Failure to complete this information is a Class A misdemeanor if signature was witnessed or applicant was assisted in completing the application.

X _____
Signature of Witness/Assistant

Street Address _____   Apt Number (if applicable) _____

State _____

*Este formulario está disponible en Español. Para conseguir la versión en Español favor de llamar sin cargo al 1.800.252.8683 a la oficina del Secretario de Estado o la Secretaría de Votación por Adelantado.*

1141



▼ FOLD OVER HERE AND SEAL ▼

## APPLICATION FOR BALLOT BY MAIL
## (Solicitud Para Recibir Una Boleta Por Correo)

For Official Use Only

Vuid: UV006891 2    PCT:

| Last Name | Suffix | First Name | Middle Initial |
|-----------|--------|------------|----------------|
| De La Cruz Barron | | Juanita | |

**ADDRESS AT WHICH VOTER IS REGISTERED (DIRECCION DE RESIDENCIADE INSCRIPCION COMO VOTANTE)**

**Street Address**

711 S 11th St Apt 9

| City | State | ZIP |
|------|-------|-----|
| McAllen | TX | 78501-5038 |

I am over 65 years of age and requesting an Annual Ballot By Mail to recieve a ballot or all elections in 2019, including local elections and the November 2019 General Election. Mail my ballot to the address indicated above (unless noted otherwise below.)

X  Juanita de la Cruz Barron

Signature of applicant. I certify that the information given in this application is true and I understand that giving false information in this application is a crim. Certifico que la información que se proporciona mediante esta solicitud es cierta y entiendo que es delito dar información falsa

2/9/1941

**OPTIONAL: IF YOU ARE NOT ABLE TO RECEIVE YOUR BALLOT AT YOUR REGISTRATION ADDRESS (ABOVE). YOU MAY HAVE YOUR  BALLOT MAILED TO AN ALTERNATE ADDRESS**

**STREET ADDRESS**

| Check One of these 4 choices: | NURSING HOME, ASSISTED LIVING OR LONG TERM CARE FACILITY |
|---|---|
| ☐ | HOSPITAL |
| ☐ | RETIREMENT CENTER |
| ☐ | RELATIVE, RELATIONSHIP |

| CITY | STATE | ZIP |
|------|-------|-----|
| | | |

▼ DO NOT TEAR PERFORATED TAB. FOLD OVER BOTTOM TO TOP AND SEAL WITH TAPE ▼

1142

# Application for Ballot by Mail

**1** Last Name (Please print information) — Hernandez  
First Name — Ventura  
Suffix (Jr., Sr., III, etc) — AS-15 12/17  
Middle Initial

**2** Residence Address: See back of this application for instructions. — 2215 S. Cage St.  
City — McAllen  
State — TX  
ZIP Code — 78501

**3** Mail my ballot to: If mailing address differs from residence address, please complete Box #7.  
City — State — ZIP Code

**4** Date of Birth (mm/dd/yyyy) (Optional) — 1/03/1945

**5** Reason for Voting by Mail:
- ☐ 65 years of age or older. (Complete Box #4a)
- ☑ Disability. (Complete Box #4a)
- ☐ Expected absence from the county. (Complete Box #8b and Box #9) You will receive a ballot for the upcoming election only.
- ☐ Confinement in jail. (Complete Box #6b) You will receive a ballot for the upcoming election only

**6a** ONLY Voters 65 Years of Age or Older (or Voters with a Disability:
If applying for one election, select appropriate box.
If applying once for elections in the calendar year, select "Annual Application."
☑ Annual Application

Uniform and Other Elections:  Primary Elections:
You must declare one political party to vote in a primary.
- ☐ May Election   ☐ Democratic Primary
- ☐ November Election   ☐ Republican Primary
- ☐ Other ____   ☑ Any Resulting Runoff

**6b** ONLY Voters Absent from County or Confined in Jail:
You may only apply for a ballot by mail for one election, and any resulting runoff.
Please select the appropriate box.

Uniform and Other Elections:  Primary Elections:
You must declare one political party to vote in a primary.
- ☐ May Election   ☐ Democratic Primary
- ☐ November Election   ☐ Republican Primary
- ☐ Other ____   ☐ Any Resulting Runoff

**7** If you are requesting this ballot be mailed to a different address (other than residence), indicate where the ballot will be mailed. See reverse for instructions.
- ☐ Mailing Address as listed on my voter registration certificate
- ☐ Nursing home, assisted living facility, or long term care facility
- ☐ Hospital
- ☐ Retirement Center
- ☐ Address of the jail
- ☐ Relative; relationship ____
- ☐ Address outside the county (see Box #8)

Contact Information (Optional)*
Please list phone number and/or e-mail address:
* Used to have our office has questions.

**8** If you selected "expected absence from the county," see reverse for instructions

Date you can begin to receive mail at this address ____   Date of return to residence address ____

**9** Voters may submit a completed, signed, and scanned application to the Early Voting Clerk at:
plara@mcallen.net (early voting clerk's e-mail address)
(956) 681-1029 (early voting clerk's fax)
NOTE: If you fax or e-mail this form, please be aware that you must also mail this form to the early voting clerk within four business days. See "Submitting Application" on the back of this form for additional information.

**10** "I certify that the information given in this application is true, and I understand that giving false information in this application is a crime."

X [signature] Ventura Hernandez [Date]

SIGN HERE
If applicant is unable to sign or make a mark in the presence of a witness, the witness shall complete Box #11.

If someone helped you to complete this form or mails the form for you, then that person must complete the sections below.

**11** See back for Witness and Assistant definitions.
If applicant is unable to mark Box #10 and you are acting as a Witness to that fact, please check this box and sign below. ☐

If you assisted the applicant in completing this application in the applicant's presence or e-mailed/mailed or faxed the application on behalf of the applicant, please check this box as an Assistant and sign below. ☐
* If you are acting as Witness and Assistant, please check both boxes. Failure to complete this information is a Class A misdemeanor if signature was witnessed or applicant was assisted in completing the application.

X ____
Signature of Witness /Assistant

X ____
Printed Name of Witness/Assistant

Street Address ____   Apt Number (if applicable) ____

City ____

State ____   ZIP Code ____

Witness' Relationship to Applicant
(Refer to instructions on back for clarification)

Este formulario está disponible en Español. Para conseguir la versión en Español favor de llamar sin cargo al 1.800.252.8683 a la oficina del Secretario de Estado o a la Secretaría de Votación por Adelantado.

▼ FOLD OVER HERE AND SEAL ▼

## APPLICATION FOR BALLOT BY MAIL
(Solicitud Para Recibir Una Boleta Por Correo)

**For Official Use Only**

VUID: 1055482301

PCT:

**Last Name**
Viada

**Suffix**

**First Name**
Luis

**Middle Initial**
Antonio

12/24/1934

**ADDRESS AT WHICH VOTER IS REGISTERED (DIRECCION DE RESIDENCIA/DE INSCRIPCION COMO VOTANTE)**

**Street Address**
1217 Wisteria Ave

**City**
McAllen

**State**
TX

**ZIP**
78504-3510

I am over 65 years of age and requesting an Annual Ballot By Mail to receive a ballot or all elections in 2019, including local elections and the November 2019 General Election. Mail my ballot to the address indicated above (unless noted otherwise below.)

X _Luis Viada_

Signature of applicant. I certify that the information given in this application is true and I understand that giving false information in this application is a crime. Certifico que la información que se proporciona mediante esta solicitud es cierta y entiendo que es delito dar información falsa

**OPTIONAL: IF YOU ARE NOT ABLE TO RECEIVE YOUR BALLOT AT YOUR REGISTRATION ADDRESS (ABOVE), YOU MAY HAVE YOUR BALLOT MAILED TO AN ALTERNATE ADDRESS**

**STREET ADDRESS**

**CITY**

**STATE**

**ZIP**

**Check One of these 4 choices:**
☐ NURSING HOME, ASSISTED LIVING OR LONG TERM CARE FACILITY
☐ HOSPITAL
☐ RETIREMENT CENTER
☐ RELATIVE, RELATIONSHIP _____

▼ DO NOT TEAR PERFORATED TAB. FOLD OVER BOTTOM TO TOP AND SEAL WITH TAPE ▼

(A) mes

1144

DO NOT REMOVE PERFORATED TABS. Moisten here and fold bottom to top to seal.    DO NOT REMOVE PERFORATED TABS. Moisten here and fold bottom to top to seal.

Prescribed by the Office of the Secretary of State of Texas
A8-15 12/17

## Application for Ballot by Mail

For Official Use Only
VUD #, County Election Precinct #, Statement of Residence, etc.

**1** Last Name (Please print) | First Name | Suffix (Jr., Sr., III, etc) | Middle Initial
Barrera | Luzdivina |

105 4 231 788

**2** Residence Address: See back of this application for instructions.
2220 Date Palm Ave | City McAllen | State TX | ZIP Code 78501

**3** Mail my ballot to: If mailing address differs from residence address, please complete Box # 7.
| City | State | ZIP Code

**4** Date of Birth (mm/dd/yyyy) (Optional)
0 9 / 1 0 / 1 9 5 1

Contact Information (Optional)*
Please list phone number and/or email address;
* Used in case our office has questions.

**5** Reason for Voting by Mail:
☒ 65 years of age or older. (Complete Box #6a)
☐ Disability. (Complete Box #6a)
☐ Expected absence from the county. (Complete Box #6b and Box #8)
  You will receive a ballot for the upcoming election only.
☐ Confinement in jail. (Complete Box #6b)
  You will receive a ballot for the upcoming election only.

**6a** ONLY Voters 65 Years of Age or Older or Voters with a Disability:
If applying for one election, select appropriate box.
If applying once for elections in this calendar year, select "Annual Application."
  ☐ Annual Application

Uniform and Other Elections:
☐ May Election
☐ November Election
☒ Other Runoff

Primary Elections:
You must declare one political party to vote in a primary.
☐ Democratic Primary
☐ Republican Primary
☒ Any Resulting Runoff

**6b** ONLY Voters Absent from County or Voters Confined in Jail:
You may only apply for a ballot by mail for one election, and any resulting runoff.
Please select the appropriate box.

Uniform and Other Elections:
☐ May Election
☐ November Election
☐ Other:

Primary Elections:
You must declare one political party to vote in a primary.
☐ Democratic Primary
☐ Republican Primary
☐ Any Resulting Runoff

**7** If you are requesting this ballot be mailed to a different address (other than residence), indicate where the ballot will be mailed. See reverse for instructions.
☐ Mailing Address as listed on my voter registration certificate
☐ Nursing home, assisted living facility, or long term care facility
☐ Hospital
☐ Retirement Center
☐ Address of the Jail
☐ Relative: relationship ____
☐ Address outside the county (see Box #3)

**8** If you selected "expected absence from the county," see reverse for instructions

| | | | | | — | |
Date you can begin to receive mail at this address | Date of return to residence address

**9** Voters may submit a completed, signed, and scanned application to the Early Voting Clerk at:
plara@mcallen.net
(early voting clerk's e-mail address)
(956) 681-1029
(early voting clerk's fax)

NOTE: If you fax or e-mail this form, please be aware that you must also mail the form to the early voting clerk within four business days. See "Submitting Application" on the back of this form for additional information.

**10** "I certify that the information given in this application is true, and I understand that giving false information in this application is a crime."

X _Luzdivina Barrera_  Date

SIGN HERE
If applicant is unable to sign or make a mark in the presence of a witness, the witness shall complete Box #11.

If someone helped you to complete this form, or mails this form for you, then that person must complete the sections below.

**11** See back for Witness and Assistant definitions.
If applicant is unable to mark Box #10 and you are acting as a Witness to that fact, please check this box and sign below. ☐

If you assisted the applicant in completing this application in the applicant's presence or e-mailed/mailed or faxed the application on behalf of the applicant, please check this box as an Assistant and sign below. ☐
*If you are acting as Witness and Assistant, please check both boxes. Failure to complete this information is a Class A misdemeanor if signature was witnessed or applicant was assisted in completing the application.

X ____
Signature of Witness /Assistant

X ____
Printed Name of Witness/Assistant

Street Address | Apt Number (if applicable) | City

Witness Relationship to Applicant:
(Refer to instructions on back for clarification) ☐

1145

▼ FOLD OVER HERE AND SEAL ▼

## APPLICATION FOR BALLOT BY MAIL
### (Solicitud Para Recibir Una Boleta Por Correo)

For Official Use Only

VUID: 10542 80254

PCT:

| Last Name | Suffix | First Name | Middle Initial |
|---|---|---|---|
| Gonzalez | | maria O | |

**ADDRESS AT WHICH VOTER IS REGISTERED (DIRECCION DE RESIDENCIA DE INSCRIPCION COMO VOTANTE)**

Street Address

1417 S 19 1/2 St

| City | State | ZIP |
|---|---|---|
| McAllen | TX | 78501-5301 |

10/20/1943

I am over 65 years of age and requesting an Annual Ballot By Mail to receive a ballot for all elections in 2019, including local elections and the November 2019 General Election. Mail my ballot to the address indicated above (unless noted otherwise below).

X _____

Signature of applicant. I certify that the information given in this application is true and I understand that giving false information in this application is a crim. Certifico que la información que se proporciona mediante esta solicitud es cierta y entiendo que es delito dar información falsa

**OPTIONAL: IF YOU ARE NOT ABLE TO RECEIVE YOUR BALLOT AT YOUR REGISTRATION ADDRESS (ABOVE), YOU MAY HAVE YOUR BALLOT MAILED TO AN ALTERNATE ADDRESS**

STREET ADDRESS

| Check One of these 4 choices: | ☐ NURSING HOME, ASSISTED LIVING OR LONG TERM CARE FACILITY | | |
|---|---|---|---|
| | ☐ HOSPITAL | CITY | STATE | ZIP |
| | ☐ RETIREMENT CENTER | | | |
| | ☐ RELATIVE, RELATIONSHIP _____ | | | |

▼ DO NOT TEAR PERFORATED TAB. FOLD OVER BOTTOM TO TOP AND SEAL WITH TAPE ▼

1146

▼ FOLD OVER HERE AND SEAL ▼

mes

**APPLICATION FOR BALLOT BY MAIL**
**(Solicitud Para Recibir Una Boleta Por Correo)**

For Official Use Only
(0534 30558
VUID: _____ PCT: _____

Last Name
Guzman

Suffix

First Name
Eufemia

Middle Initial
N/A

**ADDRESS AT WHICH VOTER IS REGISTERED (DIRECCION DE RESIDENCIADE INSECRIPCION COMO VOTANTE)**

Street Address
2200 W Jackson Ave

City
McAllen

State
TX

ZIP
78501-7245

7/3/1936

I am over 65 years of age and requesting an Annual Ballot By Mail to recieve a ballot or all elections in 2019, including local elections and the November 2019 General Election.
Mail my ballot to the address indicated above (unless noted otherwise below.)

X _Eufemia Gonzalez Guzman_

Signature of applicant. I certify that the information given in this application is true and I understand that giving false information in this application is a crim.Certifico que la información que proporciona mediante esta solicitud es cierta y entiendo que es delito dar información falsa

**OPTIONAL:** IF YOU ARE NOT ABLE TO RECEIVE YOUR BALLOT AT YOUR REGISTRATION ADDRESS (ABOVE), YOU MAY HAVE YOUR BALLOT MAILED TO AN ALTERNATE ADDRESS

Check One
of these
4 choices:

☐ NURSING HOME, ASSISTED LIVING OR LONG TERM CARE FACILITY
☐ HOSPITAL
☐ RETIREMENT CENTER
☐ RELATIVE, RELATIONSHIP _____

STREET ADDRESS

CITY          STATE          ZIP

▼ DO NOT TEAR PERFORATED TAB. FOLD OVER BOTTOM TO TOP AND SEAL WITH TAPE ▼

1147

DO NOT REMOVE PERFORATED TABS. Moisten here and fold bottom to top to seal.   DO NOT REMOVE PERFORATED TABS. Moisten here and fold bottom to top to seal.

Prescribed by the Office of the Secretary of State of Texas
AB-15 12/17

## Application for Ballot by Mail

For Official Use Only
VUID # County Election Precinct #
Statement of Residence, etc.

**1** Last Name (Please print information)
Ruiz

First Name
Maria A.

Suffix (Jr., Sr., III, etc)

Middle Initial
Anita

**2** Residence Address: See back of this application for instructions.
1711 South 12 st., Apt. 5

City
McAllen

State
TX

ZIP Code
78501

**3** Mail my ballot to: If mailing address differs from residence address, please complete Box #7.

Contact Information (Optional)*
Please list phone number and/or email address.
* Used in case our office has questions.

City

State

ZIP Code

**4** Date of Birth (mm/dd/yyyy) (Optional)
05/05/1937

**5** Reason for Voting by Mail:
☐ 65 years of age or older. (Complete Box #6a)
☐ Disability. (Complete Box #6a)
☐ Expected absence from the county. (Complete Box #8b and Box #8)
  You will receive a ballot for the upcoming election only.
☐ Confinement in jail. (Complete Box #6b)
  You will receive a ballot for the upcoming election only.

**6a** ONLY Voters 65 Years of Age or Older or Voters with a Disability:
If applying for one election, select appropriate box.
If applying once for elections in the calendar year, select "Annual Application."
☐ Annual Application

Uniform and Other Elections:
☐ May Election
☐ November Election
☐ Other ____

Primary Elections:
You must declare one political party to vote in a primary:
☐ Democratic Primary
☐ Republican Primary
☐ Any Resulting Runoff

**6b** ONLY Voters Absent from County or Voters Confined in Jail:
You may only apply for a ballot by mail for one election, and any resulting runoff.
Please select the appropriate box.

Uniform and Other Elections:
☐ May Election
☐ November Election
☐ Other ____
☐ Any Resulting Runoff

Primary Elections:
You must declare one political party to vote in a primary:
☐ Democratic Primary
☐ Republican Primary
☐ Any Resulting Runoff

**7** If you are requesting this ballot be mailed to a different address (other than residence), indicate where the ballot will be mailed. See reverse for instructions.
☐ Mailing Address as listed on my voter registration certificate
☐ Nursing home, assisted living facility, or long term care facility
☐ Hospital
☐ Retirement Center
☐ Address of the jail
☐ Relative; relationship ____
☐ Address outside the county (see Box #8)

**8** If you selected "expected absence from the county," see reverse for instructions
☐ ☐ ☐ — ☐ ☐ ☐ — ☐ ☐ ☐ ☐
Date of return to residence address

Date you can begin to receive mail at this address

**9** Voters may submit a completed, signed, and scanned application to the Early Voting Clerk at:
plara@mcallen.net
(early voting clerk's e-mail address)

(956) 681-1029
(early voting clerk's fax)

NOTE: If you fax or e-mail this form, please be aware that you must also mail the form to the early voting clerk within four business days. See "Submitting Application" on the back of this form for additional information.

**10** "I certify that the information given in this application is true, and I understand that giving false information in this application is a crime."

X Maria A Ruiz
                    Date

**SIGN HERE**
If applicant is unable to sign or make a mark in the presence of a witness, the witness shall complete Box #11.   ☐

X _____
Printed Name of Witness/Assistant

City

ZIP Code

Witness' Relationship to Applicant
(Refer to instructions on back for clarification)

**11** See back for Witness and Assistant definitions.
If applicant is unable to mark Box #10 and you are acting as a Witness to that fact, please check this box and sign below.   ☐

If you assisted the applicant in completing this application in the applicant's presence or e-mailed/mailed or faxed the application on behalf of the applicant, please check this box as an Assistant and sign below.   ☐

*If you are acting as Witness and Assistant, please check both boxes. Failure to complete this information is a Class A misdemeanor if signature was witnessed or applicant was assisted in completing the application.

X _____
Signature of Witness/Assistant

Street Address ____         Apt Number (if applicable) ____

State ____

If someone helped you to complete this form or mails the form for you, then that person must complete the sections below.

Printed Name of Witness/Assistant

Este formulario está disponible en Español. Para conseguir la versión en Español favor de llamar sin cargo al 1.800.252.8683 a la oficina del Secretario de Estado o la Secretaría de Votación por Adelantado.

# Application for Ballot by Mail

VUID# 105 377 1627   Prescribed by the Office of the Secretary of State

**1. Last Name** (Please print information): GARCIA

**Suffix** (Jr., Sr., III, etc)

**First Name:** ROLANDO

**Middle Initial:** L.

VUID #, County Election Precinct #, Statement of Residence, etc.

**2. Residence Address:** See back of this application for instructions.
1101 N. MAPLE AVE

**City:** McALLEN   **State:** ,TX   **Zip Code:** 78501

**3. Mail my ballot to:** If mailing address differs from residence address, please complete Box #7.

**City:** _____  **State:** _____  **Zip Code:** _____

**4. Date of Birth** (mm/dd/yyyy) (Optional): 01/01/1949

**5. Reason for Voting by Mail:**
- ☑ 65 years of age or older. **(Complete Box #6a)**
- ☐ Disability. **(Complete Box #6a)**
- ☐ Expected absence from the county. **(Complete Box #6b and Box #8)** You will receive a ballot for the upcoming election only
- ☐ Confinement in jail. **(Complete Box #6b)** You will receive a ballot for the upcoming election only

**6a. ONLY Voters 65 Years of Age or Older or Voters with a Disability:**
If applying for one election, select appropriate box.
If applying once for elections in the calendar year, select "Annual Application."
- ☑ Annual Application

**Uniform and Other Elections:**
- ☐ May Election
- ☐ November Election
- ☐ Other _____

**Primary Elections:** You must declare one political party to vote in a primary:
- ☑ Democratic Primary
- ☐ Republican Primary
- ☑ Any Resulting Runoff

**6b. ONLY Voters Absent from County or Voters Confined in Jail:**
You may only apply for a ballot by mail for one election, and any resulting runoff. Please select the appropriate box.

**Uniform and Other Elections:**
- ☐ May Election
- ☐ November Election
- ☐ Other _____

**Primary Elections:** You must declare one political party to vote in a primary:
- ☐ Democratic Primary
- ☐ Republican Primary
- ☐ Any Resulting Runoff

**7.** If you are requesting this ballot be mailed to a different address (other than residence), indicate where the ballot will be mailed. See reverse for instructions.
- ☐ Mailing Address as listed on my voter registration certificate
- ☐ Nursing home, assisted living facility, or long term care facility
- ☐ Hospital
- ☐ Retirement Center
- ☐ Address of the jail
- ☐ Relative; relationship _____
- ☐ Address outside the county (see Box #8)

**8.** If you selected "expected absence from the county," see reverse for instructions
Date of return to residence address _____
Date you can begin to receive mail at this address _____

**9. Contact Information** (Optional)*
Please list phone number and/or email address:
* Used in case our office has questions.
956-212-0686
rgarcia14@gmail

**Notice to Voter:** Effective September 1, 2015, you may submit a completed, signed and scanned application to the early voting clerk at _____ (early voting clerk's e-mail address)

**10.** "I certify that the information given in this application is true, and I understand that giving false information in this application is a crime."

X (signature)   **Date** 5/8/19

REC'D MAY 16 2019

**SIGN HERE**
If applicant is unable to sign or make a mark in the presence of a witness, the witness shall complete Box #11.

X _____
Printed Name of Witness/Assistant

**11.** See back for Witness and Assistant definitions.
If applicant is unable to mark Box #10 and you are acting as a Witness to that fact, please check this box and sign below. ☐
If you assisted the applicant in completing this application in the applicant's presence or e-mailed/mailed or faxed the application on behalf of the applicant, please check this box as an Assistant and sign below. ☐
*If you are acting as Witness and Assistant, please check both boxes. Failure to complete this information is a Class A misdemeanor if signature was witnessed or applicant was assisted in completing the application.

X _____
Signature of Witness/Assistant

**Witness/ Relationship to Applicant** _____

If someone helped you to complete this form or mails the form for you, then that person must complete the sections below.

1149

DO NOT REMOVE PERFORATED TABS. Moisten here and fold bottom to top to seal.    DO NOT REMOVE PERFORATED TABS. Moisten here and fold bottom to top to se—

Prescribed by the Office of the Secretary of State of Texas
AS-15 12/17

For Official Use Only
VUID # County Election Precinct #,
Statement of Residence, etc.

105746 32 332

## Application for Ballot by Mail

**1** Last Name (Please print information)    Suffix (Jr., Sr., III, etc)    First Name    Middle Initial
Ruiz    Dolores    D    Delgado

**2** Residence Address: See back of this application for instructions.
1101 S 19 1/2 St    City: McAllen    State: TX    ZIP Code: 78501

**3** Mail my ballot to: If mailing address differs from residence address, please complete Box #7.
City    State    ZIP Code

**4** Date of Birth (mm/dd/yyyy) (Optional)    5/3/1934

Contact Information (Optional)*
Please list phone number and/or email address:
* Used in case our office has questions.

**5** Reason for Voting by Mail:
☒ 65 years of age or older. (Complete Box #6a)
☐ Disability. (Complete Box #6a)
☐ Expected absence from the county. (Complete Box #6b and Box #8)
   You will receive a ballot for the upcoming election only.
☐ Confinement in Jail. (Complete Box #6b)
   You will receive a ballot for the upcoming election only.

**6a** ONLY Voters 65 Years of Age or Older or Voters with a Disability:
If applying for one election, select appropriate box.
If applying once for elections in the calendar year, select "Annual Application."
☐ Annual Application

Primary Elections:
You must declare one political party to vote in a primary.
☐ May Election
☐ November Election    ☐ Democratic Primary
☐ Other _____    ☐ Republican Primary
☒ Any Resulting Runoff

**6b** ONLY Voters Absent from County or Voters Confined in Jail:
You may only apply for a ballot by mail for one election, and any resulting runoff.
Please select the appropriate box.

Primary Elections:
You must declare one political party to vote in a primary.
☐ May Election
☐ November Election    ☐ Democratic Primary
☐ Other _____    ☐ Republican Primary
☐ Any Resulting Runoff

**7** If you are requesting this ballot be mailed to a different address (other than residence), indicate where the ballot will be mailed. See reverse for instructions.
☐ Mailing Address as listed on my voter registration certificate
☐ Nursing home, assisted living facility, or long term care facility    ☐ Address of the jail
☐ Hospital    ☐ Relative; relationship _____
☐ Retirement Center    ☐ Address outside the county (see Box #8)

**8** If you selected "expected absence from the county," see reverse for instructions
Date of return to residence address _____

Date you can begin to receive mail at this address _____

**9** Voters may submit a completed, signed, and scanned application to the Early Voting Clerk at:
plara@mcallen.net    (956) 681 - 1029
(early voting clerk's e-mail address)    (early voting clerk's fax)
NOTE: If you fax or e-mail this form, please be aware that you must also mail this form to the early voting clerk within four business days. See "Submitting Application" on the back of this form for additional information.

**10** "I certify that the information given in this application is true, and I understand that giving false information in this application is a crime."

SIGN HERE
If applicant is unable to sign or make a mark in the presence of a witness, the witness shall complete Box #11.

X _Dolores D. Ruiz_    Date _____

If someone helped you to complete this form or mails this form for you, then that person must complete the sections below.

**11** See back for Witness and Assistant definitions.
If applicant is unable to mark Box #10 and you are acting as a Witness to that fact, please check this box and sign below. ☐

If you assisted the applicant in completing this application in the applicant's presence or e-mailed/mailed or faxed the application on behalf of the applicant, please check this box as an Assistant and sign below. ☐
*If you are acting as Witness and Assistant, please check both boxes. Failure to complete this information is a Class A misdemeanor if signature was witnessed or applicant was assisted in completing the application.

X _____
Signature of Witness /Assistant

X _____
Printed Name of Witness/Assistant

Street Address _____    City _____

State _____    Apt Number (if applicable) _____    ZIP Code _____

Witness' Relationship to Applicant
(Refer to instructions on back for clarification)

Este formulario está disponible en Español. Para conseguir la versión en Español favor de llamar sin cargo al 1.800.252.8683 a la oficina del Secretario de Estado o la Secretaría de Votación por Adelantado.

APPLICATION FOR A BALLOT BY MAIL

Voter Registrar, County Election Office, etc. — Statement of Residence, etc. | AB-13 12/11 | 105.31 10010

**1. Last Name** (Please print information)
Johnson

**First Name**
Denise

**Suffix** (Jr., Sr., III, etc)

**Middle Initial**

**2. Residence Address:** See back of this application for instructions.
421 N. 15th St
**City** McAllen
**State** TX
**ZIP Code** 78501

**3. Mail my ballot to:** If mailing address differs from residence address, please complete Box # 7.
1015 Cheyenne 2150 Trenwood Dr. So Dallas

**City** El Paso
**State** TX
**ZIP Code** 79935

**4. Date of Birth** (mm/dd/yyyy) (Optional)
0 9 / 2 7 / 1 9 6 0

**Contact Information** (Optional)
Please list phone number and/or email address:
* Used in case our office has questions.
(956) 222-8676
denisejohnson@hotmail.com

**5. Reason for Voting by Mail:**
- ☐ 65 years of age or older. **(Complete Box #6a)**
- ☐ Disability. **(Complete Box #6a)**
- ☑ Expected absence from the county. **(Complete Box #6b and Box #8)**
  You will receive a ballot for the upcoming election **only**.
- ☐ Confinement in jail. **(Complete Box #6b)**
  You will receive a ballot for the upcoming election **only**.

**6a. ONLY Voters 65 Years of Age or Older or Voters with a Disability:**
If applying for one election, select appropriate box.
If applying once for elections in the calendar year, select "Annual Application."
- ☐ Annual Application

Uniform and Other Elections:
- ☐ May Election
- ☐ November Election
- ☐ Other _____

Primary Elections:
You must declare **one** political party to vote in a primary.
- ☐ Democratic Primary
- ☐ Republican Primary
- ☐ Any Resulting Runoff

**6b. ONLY Voters Absent from County or Ballot Confined in Jail:**
You may only apply for a ballot by mail for one election, and any resulting runoff.
Please select the appropriate box.

Uniform and Other Elections:
- ☑ May Election
- ☐ November Election
- ☐ Other _____

Primary Elections:
You must declare **one** political party to vote in a primary.
- ☐ Democratic Primary
- ☐ Republican Primary
- ☑ Any Resulting Runoff

**7.** If you are requesting this ballot to be mailed to a different address (other than residence), indicate where the ballot will be mailed. See reverse for instructions.
- ☐ Mailing Address as listed on my voter registration certificate
- ☐ Nursing home, assisted living facility, or long term care facility
- ☐ Hospital
- ☐ Retirement Center
- ☐ Address of the jail
- ☐ Relative; relationship _____
- ☐ Address outside the county (see Box #8)

**8.** If you selected "expected absence from the county," see reverse for instructions
0 5 / 3 0 / 2 0 1 9  —  0 7 / 0 1 / 2 0 1 9
Date you can begin to receive mail at this address | Date of return to residence address

**9.** Voters may submit completed, signed, and scanned application to the Early Voting Clerk within four business days.
clara@mcallen.net
(early voting clerk's email address)    (956) 681-1029 (early voting clerk's fax)

NOTE: If you fax or e-mail this form, please be aware that you must also **mail** the form to the early voting clerk within four business days. See "Submitting Application" on the back of this form for additional information.

**10.** "I certify that the information given in this application is true, and I understand that giving false information in this application is a crime."

SIGN HERE
If applicant is unable to sign or make a mark in the presence of a witness, the witness shall complete Box #11.

X _____   Date May 10, 2019

**11.** See back for Witness and Assistant definitions.
If applicant is unable to mark Box #10 and you are acting as a **Witness** to that fact, please check this box and sign below. ☐

If you assisted the applicant in completing this application in the applicant's presence or e-mailed/mailed or faxed the application on behalf of the applicant, please check this box as an **Assistant** and sign below. ☐
If you are acting as **Witness and Assistant**, please check **both boxes**. Failure to complete this information is a Class A misdemeanor if signature was witnessed or applicant was assisted in completing the application.

X _____
Signature of Witness /Assistant

X _____
Printed Name of Witness/Assistant

Street Address _____   Apt Number (if applicable) _____

City _____

State _____   ZIP Code _____

Witness' Relationship to Applicant
(Refer to Instructions on back for clarification)

*If someone helped you to complete this form or mails this form for you, then that person must complete the sections below.*

*Este formulario está disponible en Español. Para conseguir la versión en Español favor de llamar sin cargo al 1.800.252.8683 a la oficina del Secretario de Estado o la Secretaría de Votación por Adelantado.*

1151

▼ FOLD OVER HERE AND SEAL ▼

## APPLICATION FOR BALLOT BY MAIL
(Solicitud Para Recibir Una Boleta Por Correo)

**For Official Use Only**
VUID: 1053104477 PCT:____

| Last Name | Suffix | First Name | Middle Initial |
|---|---|---|---|
| Sandoval | | Herminia | |

**ADDRESS AT WHICH VOTER IS REGISTERED (DIRECCION DE RESIDENCIA DE INSCRIPCION COMO VOTANTE)**

**Street Address**
2119 Date Palm Ave

4/6/1927

| City | State | ZIP |
|---|---|---|
| McAllen | TX | 78501-6965 |

I am over 65 years of age and requesting an Annual Ballot By Mail to recieve a ballot or all elections in 2019, including local elections and the November 2019 General Election. Mail my ballot to the address indicated above (unless noted otherwise below.)

X _Herminia Sandoval_

Signature of applicant. I certify that the information given in this application is true and I understand that giving false information in this application is a crim. Certifico que la información que se proporciona mediante esta solicitud es cierta y entiendo que es delito dar información falsa

**OPTIONAL: IF YOU ARE NOT ABLE TO RECEIVE YOUR BALLOT AT YOUR REGISTRATION ADDRESS (ABOVE), YOU MAY HAVE YOUR BALLOT MAILED TO AN ALTERNATE ADDRESS**

STREET ADDRESS

| Check One of these 4 choices: | | |
|---|---|---|
| ☐ NURSING HOME, ASSISTED LIVING OR LONG TERM CARE FACILITY | | |
| ☐ HOSPITAL | | |
| ☐ RETIREMENT CENTER | | |
| ☐ RELATIVE, RELATIONSHIP | | |

| CITY | STATE | ZIP |
|---|---|---|

▼ DO NOT TEAR PERFORATED TAB. FOLD OVER BOTTOM TO TOP AND SEAL WITH TAPE ▼

1152

**AB-BM (Application for Ballot by Mail)**

Voter's County Election Precinct, etc. / Statement of Residence, etc. — 105330005

**1. Last Name (Please print information)**: JOHNSON
**Suffix (Jr., Sr., III, etc)**: Ms.
**First Name**: Laurie
**Middle Initial**: A ANN
ZIP Code: 78501

**2. Residence Address; See back of this application for instructions.**: 732 IST ST.
**City**: McAllen
**State**: TX

**3. Mail my ballot to: If mailing address differs from residence address, please complete Box #7.**: Box 306,
**City**: Exira
**State**: IA
**ZIP Code**: 50076

**4. Date of Birth (mm/dd/yyyy) (Optional)**: 04/14/1962
956-212-0425

**Contact Information (Optional)** Please list phone number and/or email address: LJrockcol@aol.com
* Used in case our office has questions.

**5. Reason for Voting by Mail:**
- [ ] 65 years of age or older. **(Complete Box #5a)**
- [ ] Disability. **(Complete Box #5a)**
- [x] Expected absence from the county. **(Complete Box #5b and Box #8)** You will receive a ballot for the upcoming election only.
- [ ] Confinement in jail. **(Complete Box #5b)** You will receive a ballot for the upcoming election only.

**6a. ONLY Voters 65 Years of Age or Older or Voters with a Disability:**
If applying for one election, select appropriate box.
If applying for all elections in the calendar year, select "Annual Application."
NA
- [ ] Annual Application

**Uniform and Other Elections:**
- [ ] May Election
- [ ] November Election
- [x] Other: June 2019 election

**Primary Elections:**
You must declare one political party to vote in a primary:
- [ ] Democratic Primary
- [ ] Republican Primary
- [ ] Any Resulting Runoff

**6b. ONLY Voters Absent from County or Voters Confined in Jail:**
You may only apply for a ballot by mail for one election, and any resulting runoff. Please select the appropriate box.
- [ ] May Election
- [ ] November Election
- [x] Other: June 2019

**Primary Elections:**
You must declare one political party to vote in a primary:
- [ ] Democratic Primary
- [ ] Republican Primary
- [ ] Any Resulting Runoff

**7. If you are requesting this ballot be mailed to a different address (other than residence), indicate where the ballot will be mailed. See reverse for instructions.**
- [ ] Mailing Address as listed on my voter registration certificate
- [ ] Nursing home, assisted living facility, or long term care facility
- [ ] Hospital
- [ ] Retirement Center
- [ ] Address of the jail
- [ ] Relative; relationship _____
- [x] Address outside the county (see Box #8)

**8. If you selected "expected absence from the county," see reverse for instructions**

06/02/2019 — 07/24/2019
Date you can begin to receive mail at this address     Date of return to residence address

**9.** Voters may submit a completed, signed, and scanned application to the Early Voting Clerk:
para@mcallen.net
(early voting clerk's e-mail address)
(956) 681-1029
(early voting clerk's fax)

NOTE: If you fax or e-mail this form, please be aware that you must also mail the form to the early voting clerk within four business days. See "Submitting Application" on the back of this form for additional information.

**10.** "I certify that the information given in this application is true, and I understand that giving false information in this application is a crime."

SIGN HERE
X Lauren A Johnson    05/19/2019
                              Date

If applicant is unable to sign or make a mark in the presence of a witness, the witness shall complete Box #11.

**If someone helped you to complete this form or mails the form for you, then that person must complete the sections below.**

**11.** See back for Witness and Assistant definitions.

If applicant is unable to mark Box #10 and you are acting as a Witness to that fact, please check this box and sign below. [ ]

If you assisted the applicant in completing this application in the applicant's presence or e-mailed/mailed or faxed the application on behalf of the applicant, please check this box as an Assistant and sign below. [ ]

*If you are acting as Witness and Assistant, please check both boxes. Failure to complete this information is a Class A misdemeanor if signature was witnessed or applicant was assisted in completing the application.

X _____
Signature of Witness/Assistant

X _____
Printed Name of Witness/Assistant

Street Address          Apt Number (if applicable)

City

State                   ZIP Code

Witness' Relationship to Applicant
(Refer to instructions on back for clarification)

Este formulario está disponible en Español. Para consequir la versión en Español favor de llamar sin cargo al 1.800.252.8683 a la oficina del Secretario de Estado o la Secretaria de Votación por Adelantado.

DO NOT REMOVE PERFORATED TABS. Moisten here and fold bottom to top to seal.   DO NOT REMOVE PERFORATED TABS. Moisten here and fold bottom to top to seal.

Prescribed by the Office of the Secretary of State of Texas
AS-15 12/17

## Application for Ballot by Mail

**1** Last Name (Please print information) Parker
Suffix (Jr., Sr., III, etc) | For Official Use Only VUID #, County Election Precinct #, Statement of Residence, etc.
First Name John
Middle Initial O. W.

**2** Residence Address: See back of this application for instructions.
1612 Pillsbury Ave
City Mc Allen , TX
ZIP Code 78501

**3** Mail my ballot to: If mailing address differs from residence address, please complete Box # 7.
3001 S. Congress Ave
City Austin
State TX
ZIP Code 78704

**4** Date of Birth (mm/dd/yyyy) (Optional)

Contact Information (Optional)*
Please list phone number and/or email address:
_____
* Used in case our office has questions.

**5** Reason for Voting by Mail:
☐ 65 years of age or older. **(Complete Box #5a)**
☐ Disability. **(Complete Box #5a)**
☑ Expected absence from the county. **(Complete Box #6b and Box #8)**
   You will receive a ballot for the upcoming election *only*
☐ Confinement in jail. **(Complete Box #6a)**
   You will receive a ballot for the upcoming election *only*.

**6a** ONLY Voters 65 Years of Age or Older or Voters with a Disability:
If applying for one election, select appropriate box.
If applying once for elections in the calendar year, select "Annual Application."
☐ Annual Application

Primary Elections:
You must declare one political party to vote in a primary:
☐ Democratic Primary
☐ Republican Primary

**Uniform and Other Elections:**
☐ May Election
☐ November Election
☐ Other ____   ☐ Any Resulting Runoff

**6b** ONLY Voters Absent from County or Voters Confined in Jail:
You may only apply for a ballot by mail for one election, and any resulting runoff.
Please select the appropriate box.

Primary Elections:
You must declare one political party to vote in a primary:
☐ Democratic Primary
☐ Republican Primary

**Uniform and Other Elections:**
☑ May Election
☐ November Election
☐ Other ____   ☑ Any Resulting Runoff   District S Runoff

**7** If you are requesting this ballot be mailed to a different address (other than residence), indicate where the ballot will be mailed. See reverse for instructions.
☐ Mailing Address as listed on my voter registration certificate
☐ Nursing home, assisted living facility, or long term care facility
☐ Hospital
☐ Retirement Center

☐ Address of the jail
☐ Relative; relationship _____
☐ Address outside the county (see Box #8)

**8** If you selected "expected absence from the county," see reverse for instructions

0 5 / 2 5 / 2 0 1 9  —  0 8 / 2 4 / 2 0 1 9

Date you can begin to receive mail at this address    Date of return to residence address

**9** Voters may submit a completed, signed, and scanned application to the Early Voting Clerk at:
_____
(early voting clerk's e-mail address)            (early voting clerk's fax)
NOTE: If you fax or e-mail this form, please be aware that you must also mail the form to the early voting clerk within four business days. See "Submitting Application" on the back of this form for additional information.

**10** "I certify that the information given in this application is true, and I understand that giving false information in this application is a crime."

X _John Parker_

Date 5/26/19

**SIGN HERE**
If applicant is unable to sign or make a mark in the presence of a witness, the witness shall complete Box #11.

X _____
Printed Name of Witness/Assistant

Witness' Relationship to Applicant
(Refer to instructions on back for clarification)

City _____

ZIP Code _____

**If someone helped you to complete this form or mails this form for you, then that person must complete the sections below.**

**11** See back for Witness and Assistant definitions.
If applicant is unable to mark Box #10 and you are acting as a Witness to that fact, please check this box and sign below. ☐
If you assisted the applicant in completing this application in the applicant's presence or e-mailed/mailed or faxed the application on behalf of the applicant, please check this box as an Assistant and sign below. ☐
★If you are acting as a Witness and Assistant, please check both boxes. Failure to complete this information is a Class A misdemeanor / signature was witnessed or applicant was assisted in completing the application.

X _____
Signature of Witness / Assistant

Street Address _____   Apt Number (if applicable) _____

State _____   ZIP Code _____

Este formulario está disponible en Español. Para conseguir la versión en Español favor de llamar sin cargo al 1.800.252.8683 a la oficina del Secretario de Estado o la Secretaría de Votación por Adelantado.

DO NOT REMOVE PERFORATED TABS. Moisten here and fold bottom to top to seal.      DO NOT REMOVE PERFORATED TABS. Moisten here and fold bottom to top to seal.

## Application for Ballot by Mail

Prescribed by the Office of the Secretary of State of Texas
A5-15 12/17

For Official Use Only
VUID #, County Election Precinct #,
Statement of Residence, etc.

2138036789

**1. Last Name** (Please print information)  Pardue
**First Name**  John
**Suffix** (Jr., Sr., III, etc)
**Middle Initial**  W
Drive William

**2. Residence Address:** See back of this application for instructions.
1612 Hibiscus Ave
**City**  McAllen
**State**  TX
**ZIP Code**  78501

**3. Mail my ballot to:** If mailing address differs from residence address, please complete Box #7.
3001 S. Congress Ave
**City**  Austin
**State**  TX
**ZIP Code**  78704

**4. Date of Birth** (mm/dd/yyyy) (Optional)  06/04/1999

**Contact Information** (Optional)
Please list phone number and/or email address:
* Used in case our office has questions.

**5. Reason for Voting by Mail:**
☐ 65 years of age or older. **(Complete Box #6a)**
☐ Disability. **(Complete Box #6a)**
☑ Expected absence from the county. **(Complete Box #6b and Box #8)**
You will receive a ballot for the upcoming election *only*
☐ Confinement in jail. **(Complete Box #6b)**
You will receive a ballot for the upcoming election *only*

**6a. ONLY Voters 65 Years of Age or Older or Voters with a Disability:**
If applying for one election, select appropriate box.
If applying once for elections in the calendar year, select "Annual Application."
☐ Annual Application

**Uniform and Other Elections:**
☐ May Election
☐ November Election
☐ Other _____

**Primary Elections:**
You must declare one political party to vote in a primary.
☐ Democratic Primary
☐ Republican Primary
☐ Any Resulting Runoff

**6b. ONLY Voters Absent from County or Voters Confined in Jail:**
You may only apply for a ballot by mail for one election, and any resulting runoff.
Please select the appropriate box.

**Uniform and Other Elections:**
☑ May Election
☐ November Election
☐ Other _____

**Primary Elections:**
You must declare one political party to vote in a primary.
☐ Democratic Primary
☐ Republican Primary
☑ Any Resulting Runoff   District 5 Runoff

**7.** If you are requesting this ballot to be mailed to a different address (other than residence), indicate where the ballot will be mailed. See reverse for instructions.
☐ Mailing Address as listed on my voter registration certificate
☐ Nursing home, assisted living facility, or long term care facility
☐ Hospital
☐ Retirement Center
☐ Address of the jail
☐ Relative; relationship _____
☐ Address outside the county (see Box #9)

**8.** If you selected "expected absence from the county," see reverse for instructions
05/25/2019  —  09/24/2019
**Date you can begin to receive mail at this address**  **Date of return to residence address**

**9.** Voters may submit a completed, signed, and scanned application to the Early Voting Clerk at:
_____ (early voting clerk's e-mail address)
_____ (early voting clerk's fax)
NOTE: If you fax or e-mail this form, please be aware that you must also mail this form to the early voting clerk within four business days. See "Submitting Application" on the back of this form for additional information.

**10.** "I certify that the information given in this application is true, and I understand that giving false information in this application is a crime."

**SIGN HERE**
If applicant is unable to sign or make a mark in the presence of a witness, the witness shall complete Box #11.
X  John Pardue   **Date** 5/26/19

**11.** See back for Witness and Assistant definitions.
If applicant is unable to mark Box #10 and you are acting as a Witness to that fact, please check this box and sign below. ☐
If you assisted the applicant in completing this application in the applicant's presence or e-mailed/mailed or faxed the application on behalf of the applicant, please check this box as an Assistant and sign below. ☐
*If you are acting as Witness and Assistant, please check both boxes. Failure to complete this information is a Class A misdemeanor if signature was witnessed or applicant was assisted in completing the application.

X _____
**Signature of Witness / Assistant**

X _____
**Printed Name of Witness / Assistant**

**Street Address** _____
**City** _____

**State** _____
**ZIP Code** _____

**Witness' Relationship to Applicant**
(Refer to instructions on back for clarification)

If someone helped you to complete this form or mails the form for you, then that person must complete the sections below.

Este formulario está disponible en Español. Para conseguir la versión en Español favor de llamar sin cargo al 1.800.252.8683 a la oficina del Secretario de Estado o la Secretaría de Votación por Adelantado.

(A)

**AB-13 12/17    VUID #, County Election Precinct #, Statement of Residence, etc.** 1 0 5 3 2 5 1 6 0 1

| Last Name (Please print information) | First Name | Suffix (Jr., Sr., III, etc) | Middle Initial |
|---|---|---|---|
| Zinsmeister | Edward | | J John |

**1. Residence Address:** See back of this application for instructions

1500 Marigold Ave.

City: Mc Allen    State: TX    ZIP Code: 78501

**3. Mail my ballot to:** If mailing address differs from residence address, please complete Box 7.

1500 Marigold Ave

City: Mc Allen    State: TX    ZIP Code

**Contact Information (Optional)***
Please list phone number and/or email address:
* Used in case our office has questions.

**4. Date of Birth** (mm/dd/yyyy) (Optional)

0 2 / 0 3 / 1 9 4 0

**5. Reason for Voting by Mail:**

☑ 65 years of age or older. (Complete Box #6a)

☐ Disability. (Complete Box #6a)

☐ Expected absence from the county. (Complete Box #6b and Box #8)
You will receive a ballot for the upcoming election only.

☐ Confinement in Jail. (Complete Box #6b)
You will receive a ballot for the upcoming election only.

**6a. ONLY Voters 65 Years of Age or Older or Voters with a Disability:**
If applying for one election, use and complete the appropriate box.
If applying once for elections in the calendar year, select "Annual Application."

☐ Annual Application

**Uniform and Other Elections:**
☐ May Election
☐ November Election
☑ Other ____

**Primary Elections:**
You must declare one political party to vote in a primary.
☐ Democratic Primary
☐ Republican Primary

☑ Any Resulting Runoff

**6b. ONLY Voters Absent from County or Voters Confined in Jail:**
You may only apply for a ballot by mail for one election, and any resulting runoff. Please select the appropriate box.

**Uniform and Other Elections:**
☐ May Election
☐ November Election
☐ Other ____

**Primary Elections:**
You must declare one political party to vote in a primary.
☐ Democratic Primary
☐ Republican Primary

☐ Any Resulting Runoff

**7.** If you are requesting this ballot be mailed to a different address (other than residence), indicate where the ballot will be mailed. See reverse for instructions.

☐ Mailing Address as listed on my voter registration certificate
☐ Nursing home, assisted living facility, or long term care facility
☐ Hospital
☐ Retirement Center

☐ Address of the jail
☐ Relative; relationship ____
☐ Address outside the county (see Box #8)

**8.** If you selected "expected absence from the county," see reverse for instructions.

Date you can begin to receive mail at this address ____    Date of return to residence address ____

**9.** Voters may submit a completed, signed, and scanned application to the Early Voting Clerk at:

plara@mcallen.net
(early voting clerk's e-mail address)

(956) 681-1029
(early voting clerk's fax)

NOTE: If you fax or e-mail this form, please be aware that you must also mail the form to the early voting clerk within four business days. See "Submitting Application" on the back of this form for additional information.

**10.** "I certify that the information given in this application is true, and I understand that giving false information in this application is a crime."

X Edward Zinsmeister    Date 06/10/2019

**SIGN HERE**
If applicant is unable to sign or make a mark in the presence of a witness, the witness shall complete Box #11.

**If someone helped you to complete this form or mails this form for you, then that person must complete the sections below.**

**11.** See back for Witness and Assistant definitions.

If you are acting as a Witness to and you are acting as a Witness to that fact, please check this box and sign below. ☐

If you assisted the applicant in completing the application in the applicant's presence or e-mailed/mailed or faxed the application on behalf of the applicant, please check this box as an Assistant and sign below.

☑ If you are acting as a Witness and Assistant, please check both boxes. Failure to complete this information is a Class A misdemeanor if applicant's signature was witnessed or applicant was assisted in completing the application.

X Sandra Zinsmeister
Signature of Witness/Assistant

1500 Marigold Ave
Street Address

Mc Allen TX 78501    Apt Number (if applicable)
State

Printed Name of Witness/Assistant: X Sandra Zinsmeister

Mc Allen, TX
City

78501
ZIP Code

**Witness' Relationship to Applicant**
(Refer to Instructions on back for clarification)

wife

Este formulario está disponible en Español. Para conseguir la versión en Español favor de llamar sin cargo al 1.800.252.8683 a la oficina del Secretario de Estado o la Secretaría de Votación por Adelantado.

**1** Last Name (Please print information)
Ingram

Suffix (Jr., Sr., III, etc)

**VUID #, County Election Precinct #, Statement of Residence, etc.** 105781/156

First Name
John

Middle Initial
J Joseph

**2** Residence Address: See back of this application for instructions.
721 N. 15th Street

City
McAllen

State
, TX

ZIP Code
78501

**3** Mail my ballot to: If mailing address differs from residence address, please complete Box #7.
8150 Knights Drive Ste. A110

City
El Paso

State
TX

ZIP Code
79935

**4** Date of Birth (mm/dd/yyyy)
1 0 / 0 7 / 1 9 6 0

Contact Information (Optional)*
Please list phone number and/or email address:
* Used in case our office has questions.

**5** Reason for Voting by Mail:
☐ 65 years of age or older. **(Complete Box #6a)**
☐ Disability. **(Complete Box #6a)**
☑ Expected absence from the county. **(Complete Box #6b and Box #8)**
You will receive a ballot for the upcoming election only
☐ Confinement in Jail. **(Complete Box #6b)**
You will receive a ballot for the upcoming election only

**6a** ONLY Voters 65 Years of Age or Older or Voters with a Disability:
If applying for one election, select appropriate box.
If applying once for elections in the calendar year, select "Annual Application."

☐ Annual Application

Uniform and Other Elections:
You must declare one political party to vote in a primary.
Primary Elections:
☐ May Election
☐ November Election
☐ Other _____
☐ Democratic Primary
☐ Republican Primary
☐ Any Resulting Runoff

**6b** ONLY Voters Absent from County or Confined in Jail:
You may only apply for a ballot by mail for one election, and any resulting runoff.
Please select the appropriate box.

Uniform and Other Elections:
You must declare one political party to vote in a primary.
Primary Elections:
☑ May Election
☐ November Election
☐ Other _____
☐ Democratic Primary
☐ Republican Primary
☑ Any Resulting Runoff

**7** If you are requesting this ballot be mailed to a different address (other than residence), indicate where the ballot will be mailed. See reverse for instructions.
☐ Mailing Address as listed on my voter registration certificate
☐ Nursing home, assisted living facility, or long term care facility
☐ Hospital
☐ Retirement Center
☐ Address of the jail
☐ Relative; relationship _____
☑ Address outside the county (see Box #9)

**8** "If you selected "expected absence from the county," see reverse for instructions
0 5 / 2 0 / 2 0 1 9 — 0 7 / 0 1 / 2 0 1 9
Date you can begin to receive mail at this address    Date of return to residence address

**9** Voters may submit a completed, signed, and scanned application to the Early Voting Clerk:
para@mcallen.net
(early voting clerk's email address)
(956)681-1029
(early voting clerk's fax)

NOTE: If you fax or e-mail this form, please be aware that you must also mail this form to the early voting clerk within four business days. See "Submitting Application" on the back of this form for additional information.

**10** "I certify that the information given in this application is true, and I understand that giving false information in this application is a crime."

SIGN HERE
If applicant is unable to sign or make a mark in the presence of a witness, the witness shall complete Box #11.

Date 5/20/19

If someone helped you to complete this form or mails this form for you, then that person must complete the sections below.

**11** See back for Witness and Assistant definitions.
If applicant is unable to mark Box #10 and you are acting as a Witness to that fact, please check this box and sign below. ☐

If you assisted the applicant in completing this application in the applicant's presence or e-mailed/mailed or faxed the application on behalf of the applicant, please check this box as an Assistant and sign below. ☐
*If you are acting as Witness and Assistant, please check both boxes. Failure to complete this information is a Class A misdemeanor if signature was witnessed or applicant was assisted in completing the application.

X _____
Signature of Witness/Assistant

X _____
Printed Name of Witness/Assistant

Street Address

Apt Number (if applicable)

City

State

ZIP Code

Witness' Relationship to Applicant
(Refer to instructions on back for clarification)

*Este formulario está disponible en Español. Para conseguir la versión en Español favor de llamar sin cargo al 1.800.252.8683 a la oficina del Secretario de Estado o la Secretaría de Votación por Adelantado.*

1157

**Application for Ballot by Mail**

V/UID #, County Election Precinct #, Statement of Residence, etc. **105379655B**

| | | | |
|---|---|---|---|
| **1** Last Name (Please print information) | **SANSING** | First Name **FRANCES** Middle Initial **DENISE** | |

**2** Residence Address: See back of this application for instructions.
**601 N. 15th St.**
City **McALLEN** State **TX** ZIP Code **78501**

**3** Mail my ballot to: If mailing address differs from residence address, please complete Box # 7.
**601 N. 15th St.**
City State ZIP Code

**4** Date of Birth (mm/dd/yyyy) (Optional)
**0 4 / 2 5 / 1 9 5 1**

Contact Information (Optional)*
Please list phone number and/or email address:
* Used in case our office has questions.
**956-499-5824**
**sdsansing444@gmail.com**
sdsansing @ gmail.com

**5** Reason for Voting by Mail:
☑ 65 years of age or older. (Complete Box #6a)
☐ Disability. (Complete Box #6a)
☑ Expected absence from the county. (Complete Box #6b and Box #8)
You will receive a ballot for the upcoming election only
☐ Confinement in jail. (Complete Box #6b)
You will receive a ballot for the upcoming election only

**7** If you are requesting this ballot be mailed to a different address (other than residence), indicate where the ballot will be mailed. See reverse for instructions.
☐ Mailing Address as listed on my voter registration certificate
☐ Nursing home, assisted living facility, or long term care facility
☐ Hospital
☐ Retirement Center
☐ Address of the jail
☐ Relative; relationship _____
☐ Address outside the county (see Box #8)

**6a** ONLY Voters 65 Years of Age or Older or Voters with a Disability:
If applying for one election, select appropriate box.
If applying once for elections in the calendar year, select "Annual Application."
☐ Annual Application

Primary Elections:
You must declare one political party to vote in a primary:
Uniform and Other Elections:
☐ May Election
☐ November Election
☐ Other: _____
☐ Democratic Primary
☐ Republican Primary
☐ Any Resulting Runoff

**6b** ONLY Voters Absent from County or Voters Confined in Jail:
You may only apply for a ballot by mail for one election, and any resulting runoff. Please select the appropriate box.

Primary Elections:
You must declare one political party to vote in a primary:
Uniform and Other Elections:
☑ May Election
☐ November Election
☐ Other: _____
☐ Democratic Primary
☐ Republican Primary
☑ Any Resulting Runoff

**8** If you selected "expected absence from the county," see reverse for instructions
**0 5 / 1 7 / 2 0 1 9** — **0 7 / 0 3 / 2 0 1 9**
Date you can begin to receive mail at this address / Date of return to residence address

**9** Voters may submit a completed, signed, and scanned application to the Early Voting Clerk at
**para@mcallen.net**
**(956) 681-1029**
(early voting clerk's e-mail address) (early voting clerk's fax)
NOTE: If you fax or e-mail this form, please be aware that you must also mail the form to the early voting clerk within four business days. See "Submitting Application" on the back of this form for additional information.

**10** "I certify that the information given in this application is true, and I understand that giving false information in this application is a crime."

X **F. Denise Sansing** Date **5.16.19**

SIGN HERE
If applicant is unable to sign or make a mark in the presence of a witness, the witness shall complete Box #11.

**If someone helped you to complete this form or mails this form for you, then that person must complete the sections below.**

X _____
Printed Name of Witness/Assistant

City _____ ZIP Code _____

**11** See back for Witness and Assistant definitions.
If applicant is unable to mark Box #10 and you are acting as a Witness to that fact, please check this box and sign below. ☐

If you assisted the applicant in completing this application in the applicant's presence or e-mailed/mailed or faxed the application on behalf of the applicant, please check this box as an Assistant and sign below. ☐

* If you are acting as Witness and Assistant, please check both boxes. Failure to complete this information is a Class A misdemeanor if signature was witnessed or applicant was assisted in completing the application.

X _____
Signature of Witness/Assistant

Street Address _____ Apt Number (if applicable) _____

State _____

Witness' Relationship to Applicant
(Refer to instructions on back for clarification)

Esta forma también está disponible en Español. Para conseguir la versión en Español favor de llamar sin cargo al 1.800.252.8683 a la oficina del Secretario de Estado o la Secretaría de Votación por Adelantado.

VUID # County Election Precinct #, etc.  1608-01-160 89312

1. **Last Name** (Please print information) — Avila
   **Suffix** (Jr., Sr., III, etc)
   **First Name** — JOSEPH
   **Middle Initial** — John

2. **Residence Address:** See back of this application for instructions. — 1600 WISTERIA AVE
   **City** — McAllen
   **State** — TX
   **Zip Code** — 78504

3. **Mail my ballot to:** If mailing address differs from residence address, please complete Box #7. — 1161 MARY JANE WAY
   **City** — FORT COLLINS
   **State** — CO
   **Zip Code** — 80524

4. **Date of Birth** (mm/dd/yyyy) (Optional) — 10/11/1911

5. **Reason for Voting by Mail:**
   ☐ 65 years of age or older. (**Complete Box #6a**)
   ☐ Disability. (**Complete Box #6a**)
   ☒ Expected absence from the county. (**Complete Box #6b and Box #8**)
   You will receive a ballot for the upcoming election only
   ☐ Confinement in jail. (**Complete Box #6b**)
   You will receive a ballot for the upcoming election only

6a. **ONLY Voters 65 Years of Age or Older or Voters with a Disability:**
   If applying for one election, select appropriate box.
   If applying once for elections in the calendar year, select "Annual Application."
   ☐ Annual Application

   **Uniform and Other Elections:**
   ☐ May Election
   ☐ November Election
   ☐ Other _____

   **Primary Elections:**
   You must declare one political party to vote in a primary.
   ☐ Democratic Primary
   ☐ Republican Primary
   ☐ Any Resulting Runoff

6b. **ONLY Voters Absent from County or Voters Confined in Jail:**
   You may only apply for a ballot by mail for one election, and any resulting runoff.
   Please select the appropriate box.

   **Uniform and Other Elections:**
   ☐ May Election
   ☐ November Election
   ☐ Other _____

   **Primary Elections:**
   You must declare one political party to vote in a primary.
   ☐ Democratic Primary
   ☐ Republican Primary
   ☒ Any Resulting Runoff

7. If you are requesting this ballot be mailed to a different address (other than residence), indicate where the ballot will be mailed. See reverse for instructions.
   ☐ Mailing Address as listed on my voter registration certificate
   ☐ Nursing home, assisted living facility, or long term care facility
   ☐ Hospital
   ☐ Retirement Center
   ☐ Address of the jail
   ☐ Relative; relationship _____
   ☒ Address outside the county (see Box #8)

8. If you selected "expected absence from the county," see reverse for instructions
   05/31/2019 — 05/10/2019
   Date you can begin to receive mail at this address      Date of return to residence address

9. **Contact Information** (Optional)*
   Please list phone number and/or email address:
   * Used in case our office has questions.
   _____
   (early voting clerk's e-mail address)

   **Notice to Voter:** Effective September 1, 2015, you may submit a completed, signed and scanned application to the early voting clerk at the early voting clerk's e-mail address.

10. "I certify that the information given in this application is true, and I understand that giving false information in this application is a crime."

   **SIGN HERE** X [signature]
   If applicant is unable to sign or make a mark in the presence of a witness, the witness shall complete Box #11.

   Date 5/26/19
   RECD MAY 30 2019

If someone helped you to complete this form or mails the form for you, then that person must complete the sections below.

11. See back for Witness and Assistant definitions.
   If applicant is unable to mark Box #10 and you are acting as a Witness to that fact, please check this box and sign below. ☐

   If you assisted the applicant in completing this application in the applicant's presence or e-mailed/mailed or faxed the application on behalf of the applicant, please check this box as an **Assistant** and sign below.
   **If you are acting as Witness and Assistant, please check both boxes.** Failure to complete this information is a Class A misdemeanor if signature was witnessed or applicant was assisted in completing the application.

   X _____
   Signature of Witness/Assistant

   _____
   Printed Name of Witness/Assistant

   Street Address _____   Apt Number (if applicable) _____

   City _____

   State _____   Zip _____

   **Witness' Relationship to Applicant**
   (Refer to Instructions on back for clarification)
   _____

*Este formulario está disponible en Español. Para conseguir la versión en Español favor de llamar sin cargo al 1.800.252.8683 a la oficina del Secretario de Estado o la Secretaría de Votación por Adelantado.*

1159

DO NOT REMOVE PERFORATED TABS. Moisten here and fold bottom to top to seal.   Prescribed by the Office of the Secretary of State of Texas   DO NOT REMOVE PERFORATED TABS. Moisten here and fold bottom to top to seal.

# Application for Ballot by Mail

For Official Use Only
V.U.I.D. #, County Election Precinct #, Statement of Residence, etc.

**1** Last Name (Please print information)   Jackson   Suffix (Jr., Sr., III, etc.)

First Name   Orange Aurora   Middle Initial

10533 6957

**2** Residence Address   2201 Evans Rd. Apt.   See back of this application for instructions.
City   McAllen   State TX   ZIP Code 78501-

**3** Mail my ballot to: If mailing address differs from residence address, please complete Box # 7.

**4** Date of Birth (mm/dd/yyyy) (Optional)   04/24/1924

Contact Information (Optional)*
Please list phone number and/or email address:
* Used in case our office has questions.

**5** Reason for Voting by Mail:
- ☐ 65 years of age or older. (Complete Box #6a)
- ☐ Disability. (Complete Box #6a)
- ☐ Expected absence from the county. (Complete Box #6a and Box #8)
  You will receive a ballot for the upcoming election only.
- ☐ Confinement in jail. (Complete Box #6b)
  You will receive a ballot for the upcoming election only.

**6a** ONLY Voters 65 Years of Age or Older or Voters with a Disability:
If applying for one election, select appropriate box.
If applying once for elections in the calendar year, select "Annual Application."

☐ Annual Application

Uniform and Other Elections:
- ☐ May Election
- ☐ November Election
- ☐ Other _____

Primary Elections:
You must declare one political party to vote in a primary.
- ☐ Democratic Primary
- ☐ Republican Primary

☐ Any Resulting Runoff

**6b** ONLY Voters Absent from County or Voters Confined in Jail:
You may only apply for a ballot by mail for one election, and any resulting runoff.
Please select the appropriate box.

Uniform and Other Elections:
- ☐ May Election
- ☐ November Election
- ☐ Other _____

Primary Elections:
You must declare one political party to vote in a primary.
- ☐ Democratic Primary
- ☐ Republican Primary

☐ Any Resulting Runoff

**7** If you are requesting this ballot be mailed to a different address (other than residence), indicate where the ballot will be mailed. See reverse for instructions.
- ☐ Mailing Address as listed on my voter registration certificate
- ☐ Nursing home, assisted living facility, or long term care facility
- ☐ Hospital
- ☐ Retirement Center
- ☐ Address of the jail
- ☐ Relative; relationship _____
- ☐ Address outside the county (see Box #8)

**8** If you selected "expected absence from the county," see reverse for instructions.

_____ — _____   Date of return to residence address

Date you can begin to receive mail at this address

**9** Voters may submit a completed, signed, and scanned application to the Early Voting Clerk at:

plara@mcallen.net (early voting clerk's e-mail address)

(956) 681-1029 (early voting clerk's fax)

NOTE: If you fax or e-mail this form, please be aware that you must also mail the form to the early voting clerk within four business days. See "Submitting Application" on the back of this form for additional information.

**10** "I certify that the information given in this application is true, and I understand that giving false information in this application is a crime."

SIGN HERE   X Aurora Jackson   Date

If applicant is unable to sign or make a mark in the presence of a witness, the witness shall complete Box #11.

Printed Name of Witness/Assistant

X _____

City _____

ZIP Code _____

Witness' Relationship to Applicant
(Refer to instructions on back for clarification)

If someone helped you to complete this form or mails the form for you, then that person must complete the sections below.

**11** See back for Witness and Assistant definitions.

If applicant is unable to mark Box #10 and you are acting as a Witness to that fact, please check this box and sign below.

If you assisted the applicant in completing this application in the applicant's presence or e-mailed/mailed the application on behalf of the applicant, please check this box as an Assistant and sign below.

★If you are acting as Witness and Assistant, please check both boxes. Failure to complete this information is a Class A misdemeanor if signature was witnessed or applicant was assisted in completing the application.

X _____
Signature of Witness/Assistant

Street Address _____   Apt Number (if applicable) _____

State _____

Este formulario está disponible en Español. Para conseguir la versión en Español favor de llamar sin cargo al 1.800.252.8683 a la oficina del Secretario de Estado o la Secretaría de Votación por Adelantado.

1160

▼ FOLD OVER HERE AND SEAL ▼

B.D. 11/21/1928

N.A.5

## APPLICATION FOR BALLOT BY MAIL
### (Solicitud Para Recibir Una Boleta Por Correo)

**For Official Use Only**
VUID: 1054207368
PCT: _____

**Last Name**
Perez-Trevino

**Suffix**

**First Name**
Enrique

**Middle Initial**
G.

**ADDRESS AT WHICH VOTER IS REGISTERED (DIRECCION DE RESIDENCIA DE INSCRIPCION COMO VOTANTE)**

**Street Address**
1606 Redbud Ave

**City**
McAllen

**State**
TX

**ZIP**
78504-4620

☐ I am over 65 years of age and requesting an Annual Ballot By Mail to recieve a ballot or all elections in 2019, including local elections and the November 2019 General Election.
Mail my ballot to the address indicated above (unless noted otherwise below.)

X _____
Signature of applicant. I certify that the information given in this application is true and I understand that giving false information in this application is a crim. Certifico que la informacion que se proporciona mediante esta solicitud es cierta y entiendo que es delito dar informacion falsa

**OPTIONAL: IF YOU ARE NOT ABLE TO RECEIVE YOUR BALLOT AT YOUR REGISTRATION ADDRESS (ABOVE), YOU MAY HAVE YOUR BALLOT MAILED TO AN ALTERNATE ADDRESS**

**Check One of these 4 choices:**
☐ NURSING HOME, ASSISTED LIVING OR LONG TERM CARE FACILITY
☐ HOSPITAL
☐ RETIREMENT CENTER
☐ RELATIVE, RELATIONSHIP _____

**STREET ADDRESS**

**CITY**       **STATE**       **ZIP**

▼ DO NOT TEAR PERFORATED TAB. FOLD OVER BOTTOM TO TOP AND SEAL WITH TAPE ▼

▼ FOLD OVER HERE AND SEAL ▼

# APPLICATION FOR BALLOT BY MAIL
(Solicitud Para Recibir Una Boleta Por Correo)

For Official Use Only
VUID: 1053233273   PCT: ____

**Last Name**
Valdez

**Suffix**

**First Name**
Maria

**Middle Initial**
D DelRoble

**ADDRESS AT WHICH VOTER IS REGISTERED (DIRECCION DE RESIDENCIADE INSCRIPCION COMO VOTANTE)**

**Street Address**
2217 Camellia Ave

**City**
McAllen

**State**
TX

**ZIP**
78501-6153

I am over 65 years of age and requesting an Annual Ballot By Mail to recieve a ballot or all elections in 2019, including local elections and the November 2019 General Election. Mail my ballot to the address indicated above (unless noted otherwise below.)

10/24/1949

X _Maria D Valdez_
Signature of applicant. I certify that the information given in this application is true and I understand that giving false information in this application is a crim. Certifico que la informacion que se proporciona mediante esta solicitud es cierta y entiendo que es delito dar informacio falsa

**OPTIONAL: IF YOU ARE NOT ABLE TO RECEIVE YOUR BALLOT AT YOUR REGISTRATION ADDRESS (ABOVE), YOU MAY HAVE YOUR  BALLOT MAILED TO AN ALTERNATE ADDRESS**

**STREET ADDRESS**

**Check One of these 4 choices:**
☐ NURSING HOME, ASSISTED LIVING OR LONG TERM CARE FACILITY
☐ HOSPITAL
☐ RETIREMENT CENTER
☐ RELATIVE, RELATIONSHIP

**CITY**

**STATE**

**ZIP**

▼ DO NOT TEAR PERFORATED TAB. FOLD OVER BOTTOM TO TOP AND SEAL WITH TAPE ▼

# Application for Ballot by Mail

Prescribed by Office of the Secretary of State of Texas 5-15 11/17

10535-19712

For Official Use Only
VUID #, County Election Precinct #,
Statement of Residence, etc.

108 - 01 - 2017185

**1. Last Name** (Please print information)
VANHEMELRIJK

**First Name**
DIANE

**Suffix** (Jr., Sr., III, etc)

**Middle Initial**
MARIE

**2. Residence Address:** See back of this application for instructions.
305 42 AVE

**City**
MCALLEN

**State**
TX

**ZIP Code**
78504

**3. Mail my ballot to:** If mailing address differs from residence address, please complete Box #7.

**City**

**State**
, TX

**ZIP Code**
78504

**4. Date of Birth** (mm/dd/yyyy) (Optional)
08 | 18 | 1947

**Contact Information (Optional)***
Please list phone number and/or e-mail address:
*Used in case our office has questions.
956 683 9053
bluemoon2014bdh@gmail.com

**5. Reason for Voting by Mail:**
☐ 65 years of age or older. (Complete Box #6a)
☑ Disability. (Complete Box #6a) Legally Blind
☐ Expected absence from the county. (Complete Box #6b and Box #8)
   You will receive a ballot for the upcoming election only
☐ Confinement in Jail. (Complete Box #6b)
   You will receive a ballot for the upcoming election only

**7.** If you are requesting this ballot be mailed to a different address (other than residence), indicate where the ballot will be mailed. See reverse for instructions.
☐ Mailing Address as listed on my voter registration certificate
☐ Nursing home, assisted living facility, or long term care facility
☐ Hospital
☐ Retirement Center

☐ Address of the jail
☐ Relative; relationship _____
☐ Address outside the county (see Box #8)

**6a. ONLY Voters 65 Years of Age or Older or Voters with a Disability**
If applying for one election, select appropriate box.
If applying once for elections in the calendar year, select "Annual Application."
☑ Annual Application.

**Primary Elections:**
You must declare one political party to vote in a primary.
☐ Democratic Primary
☐ Republican Primary
☐ Any Resulting Runoff

**Uniform and Other Elections:**
☐ May Election
☐ November Election
☐ Other _____

**8.** If you selected "expected absence from the county," see reverse for instructions

Date of return to residence address

Date you can begin to receive mail at this address

**9.** Voters may submit a completed, signed, and scanned application to the Early Voting Clerk at:

_____ (early voting clerk's e-mail address)

_____ (early voting clerk's fax)

NOTE: If you fax or e-mail this form, please be aware that you must also mail the form to the early voting clerk within four business days. See "Submitting Application" on the back of this form for additional information.

**6b. ONLY Voters Absent from County or Voters Confined in Jail:**
You may only apply for a ballot by mail for one election, and any resulting runoff.
Please select the appropriate box.

**Primary Elections:**
You must declare one political party to vote in a primary.
☐ Democratic Primary
☐ Republican Primary
☐ Any Resulting Runoff

**Uniform and Other Elections:**
☐ May Election
☐ November Election
☐ Other _____

**10.** "I certify that the information given in this application is true, and I understand that giving false information in this application is a crime."

SIGN HERE
If applicant is unable to sign or make a mark in the presence of a witness, the witness shall complete Box #11.

X _____ Dianne Roth _____   Date 6/7/2019

**11.** See back for Witness and Assistant definitions.

If applicant is unable to mark Box #10 and you are acting as a Witness to that fact, please check this box and sign below. ☐

If you assisted the applicant in completing this application in the applicant's presence or e-mailed/mailed or faxed the application on behalf of the applicant, please check this box as an Assistant and sign below. ☑

*If you are acting as a Witness and Assistant, please check both boxes. Failure to complete this application. Furnishing this information is a Class A misdemeanor if signature was witnessed or applicant was assisted in completing the application.

X _____ Monica Lozano
Signature of Witness/Assistant

Printed Name of Witness/Assistant
Monica Lozano

**Street Address**
1814 edunner 78550
Harlingen

**City**
78550
ZIP Code

**State**
TX

**Witness' Relationship to Applicant**
(Refer to instructions on back for clarification)
Daughter

If someone helped you to complete this form or mails the form for you, then that person must complete the sections below.

Este formulario está disponible en Español. Para conseguir la versión en Español favor de llamar sin cargo al 1-800-252-8683 a la oficina del Secretario de Estado o la Secretaría de Estado o la Secretaría de Estado

# APPLICATION FOR BALLOT BY MAIL
## (Solicitud Para Recibir Una Boleta Por Correo)

**For Official Use Only**

VUID: 1054948515   PCT:

| Last Name | Suffix | First Name | Middle Initial |
|---|---|---|---|
| Garza | | Jesus | Miguel |

9/29/1953

### ADDRESS AT WHICH VOTER IS REGISTERED (DIRECCION DE RESIDENCIADE INSCRIPCION COMO VOTANTE)

**Street Address**

1400 W Gardenia Ave

| City | State | ZIP |
|---|---|---|
| McAllen | TX | 78501-3943 |

I am over 65 years of age and requesting an Annual Ballot By Mail to recieve a ballot or all elections in 2019, including local elections and the November 2019 General Election. Mail my ballot to the address indicated above (unless noted otherwise below.)

X

Signature of applicant. I certify that the information given in this application is true and I understand that giving false information in this application is a crim. Certifico que la informacion que se proporciona mediante esta solicitud es cierta y entiendo que es delito dar informacio falsa

**OPTIONAL: IF YOU ARE NOT ABLE TO RECEIVE YOUR BALLOT AT YOUR REGISTRATION ADDRESS (ABOVE), YOU MAY HAVE YOUR BALLOT MAILED TO AN ALTERNATE ADDRESS**

| Check One of these 4 choices: | STREET ADDRESS | | |
|---|---|---|---|
| ☐ NURSING HOME, ASSISTED LIVING OR LONG TERM CARE FACILITY | | | |
| ☐ HOSPITAL | CITY | STATE | ZIP |
| ☐ RETIREMENT CENTER | | | |
| ☐ RELATIVE, RELATIONSHIP | | | |

▼ DO NOT TEAR PERFORATED TAB. FOLD OVER BOTTOM TO TOP AND SEAL WITH TAPE ▼

FOLD OVER HERE AND SEAL ▼

▼ FOLD OVER HERE AND SEAL ▼

## APPLICATION FOR BALLOT BY MAIL
(Solicitud Para Recibir Una Boleta Por Correo)

For Official Use Only
VUID: 1053 808 434
PCT: ____

| Last Name | Suffix | First Name | | Middle Initial |
|---|---|---|---|---|
| Cowgill | | Maria ✓ | | LUISA |

**ADDRESS AT WHICH VOTER IS REGISTERED (DIRECCION DE RESIDENCIA DE INSCRIPCION COMO VOTANTE)**

Street Address

1106 Walnut Ave ✓

| City | State | ZIP |
|---|---|---|
| McAllen | TX | 78501-4034 |

Date of Birth: 10/06/1933

I am over 65 years of age and requesting an Annual Ballot By Mail to recieve a ballot or all elections in 2019, including local elections and the November 2019 General Election. Mail my ballot to the address indicated above (unless noted otherwise below.)

X _Maria S Cowgill_

Signature of applicant. I certify that the information given in this application is true and I understand that giving false information in this application is a crim. Certifico que la información que se proporciona mediante esta solicitud es cierta y entiendo que es delito dar información falsa

**OPTIONAL: IF YOU ARE NOT ABLE TO RECEIVE YOUR BALLOT AT YOUR REGISTRATION ADDRESS (ABOVE), YOU MAY HAVE YOUR  BALLOT MAILED TO AN ALTERNATE ADDRESS**

| Check One of these 4 choices: | ☐ NURSING HOME, ASSISTED LIVING OR LONG TERM CARE FACILITY | STREET ADDRESS |
|---|---|---|
| | ☐ HOSPITAL | |
| | ☐ RETIREMENT CENTER | CITY | STATE | ZIP |
| | ☐ RELATIVE, RELATIONSHIP _____ | |

1165

▼ DO NOT TEAR PERFORATED TAB. FOLD OVER BOTTOM TO TOP AND SEAL WITH TAPE ▼

AP-13 12/11     Voters, County Election Presence, #, Statement of Residence, etc.

**1** Last Name (Please print information)
CANTU
First Name
Olga
Suffix (Jr., Sr., III, etc)
Middle Initial
N/S

**2** Residence Address: See back of this application for instructions.
#17 North 16th St.
City
McAllen
,TX
ZIP Code
78501

**3** Mail my ballot to: If mailing address differs from residence address, please complete Box # 7.
City
State
ZIP Code

**4** Date of Birth (mm/dd/yyyy) (Optional)
1 1 3 0 1 9 5 0

Contact Information (Optional)*
Please list phone number and/or email address:
* Used in case our office has questions.

**5** Reason for Voting by Mail:
☑ 65 years of age or older: (Complete Box #6a)
☐ Disability: (Complete Box #6a)
☐ Expected absence from the county: (Complete Box #6b and Box #8)
  You will receive a ballot for the upcoming election only.
☐ Confinement in jail: (Complete Box #6b)
  You will receive a ballot for the upcoming election only.

**6a** ONLY Voters 65 Years of Age or Older or Voters with a Disability:
If applying for one election, select appropriate box.
If applying once for elections in the calendar year, select "Annual Application."
☑ Annual Application
☐ Primary Elections:
  You must declare one political party to vote in a primary:
  ☐ Democratic Primary
  ☐ Republican Primary
Uniform and Other Elections:
☐ May Election
☐ November Election
☐ Other _____
☐ Any Resulting Runoff

**6b** ONLY Voters Absent from County or Voters Confined in Jail:
You may only apply for a ballot by mail for one election, and any resulting runoff.
Please select the appropriate box.
☐ Primary Elections:
  You must declare one political party to vote in a primary:
  ☐ Democratic Primary
  ☐ Republican Primary
Uniform and Other Elections:
☐ May Election
☐ November Election
☐ Other _____
☐ Any Resulting Runoff

**7** If you are requesting this ballot be mailed to a different address (other than residence), indicate where the ballot will be mailed. See reverse for instructions.
☐ Mailing Address as listed on my voter registration certificate
☐ Nursing home, assisted living facility, or long term care facility
☐ Hospital
☐ Retirement Center
☐ Address of the jail
☐ Relative; relationship _____
☐ Address outside the county (see Box #8)

**8** If you selected "expected absence from the county," see reverse for instructions
City
Date can begin to receive mail at this address
Date of return to residence address

**9** Voters may e-mail a completed, signed, and scanned application to the Early Voting Clerk at:
plara@mcallen.net
(early voting clerk's e-mail address)
(956) 681-1029
(early voting clerk's fax)
NOTE: If you fax or e-mail this form, please be aware that you must also mail this form to the early voting clerk within four business days. See "Submitting Application" on the back of this form for additional information.

**10** "I certify that the information given in this application is true, and I understand that giving false information in this application is a crime."
X  Olga Norma Cantu
Date 03-06-2019

SIGN HERE
If applicant is unable to sign or make a mark in the presence of a witness, the witness shall complete Box #11.

If someone helped you to complete this form or mails the form for you, then that person must complete the sections below.

X
Printed Name of Witness/Assistant
City
ZIP Code

Witness' Relationship to Applicant
(Refer to instructions on back for clarification)

**11** See back for Witness and Assistant definitions.
If applicant is unable to mark Box #10 and you are acting as a Witness to that fact, please check this box and sign below. ☐
If you assisted the applicant in completing this application in the applicant's presence or e-mailed/mailed or faxed the application on behalf of the applicant, please check this box as an Assistant and sign below. ☐
*If you are acting as Witness and Assistant, please check both boxes. Failure to complete this information is a Class A misdemeanor if signature was witnessed or applicant was assisted in completing the application.

X
Signature of Witness/Assistant
Street Address
Apt Number (if applicable)
State

Este formulario está disponible en Español.  Para conseguir la versión en Español favor de llamar sin cargo al 1.800.252.8683 a la oficina del Secretario de Estado o la Secretaría de Votación por Adelantado.

1166

DO NOT REMOVE PERFORATED TABS. Moisten here and fold bottom to top to seal.   DO NOT REMOVE PERFORATED TABS. Moisten here and fold bottom to top to seal.

1053407582

## Application for Ballot by Mail

Prescribed by the Office of the Secretary of State of Texas
A5-15e 09/15

For Official Use Only /
VUID #, County Election Precinct #,
Statement of Assistance, etc.

1. Last Name (Please print information)  MOFFITT
   First Name  Mary   Suffix (Jr., Sr., III, etc.)   Middle Initial

2. Residence Address: See back of this application for instructions.  1601 MARIGOLD   City  McAllen   ,TX   Zip Code  78501

3. Mail my ballot to: (if mailing address differs from residence address, please complete Box #7.)   City   State   Zip Code

4. Date of Birth (mm/dd/yyyy) (Optional)  01 / 22 / 1935

5. **Reason for Voting by Mail:**
   ☒ 65 years of age or older. (Complete Box #6a)
   ☒ Disability. (Complete Box #6a)
   ☐ Expected absence from the county. (Complete Box #6b and Box #8)
      You will receive a ballot for the upcoming election only.
   ☐ Confinement in jail. (Complete Box #6a)
      You will receive a ballot for the upcoming election only.
   ☐ ONLY Voters 65 Years of Age or Older or Voters with a Disability:
      If applying for one election, select the appropriate box.
      If applying once for elections in this calendar year, select "Annual Application."
      ☒ Annual Application

6a. **Uniform and Other Elections:**
    ☐ May Election
    ☐ November Election
    ☐ Other _____

    **Primary Elections:**
    You must declare one political party to vote in a primary.
    ☐ Democratic Primary
    ☐ Republican Primary
    ☐ Any Resulting Runoff

6b. ONLY Voters Absent from County or Voters Confined in Jail:
    You may only apply for a ballot by mail for one election, and any resulting runoff.
    Please select the appropriate box.

    **Uniform and Other Elections:**
    ☐ May Election
    ☐ November Election
    ☐ Other _____

    **Primary Elections:**
    You must declare one political party to vote in a primary.
    ☐ Democratic Primary
    ☐ Republican Primary
    ☐ Any Resulting Runoff

7. If you are requesting this ballot be mailed to a different address (other than residence), indicate where the ballot will be mailed. See reverse for instructions.
   ☐ Mailing Address as listed on my voter registration certificate
   ☐ Nursing home, assisted living facility, or long term care facility
   ☐ Hospital
   ☐ Retirement Center
   ☐ Address of the jail
   ☐ Relative, relationship _____
   ☐ Address outside the county (see Box #8)

8. If you selected "expected absence from the county," see reverse for instructions.
   Date you can begin to receive mail at this address _____
   Date of return to residence address _____

9. **Contact Information (Optional)*.**
   Please list phone number and/or email address:
   * Used in case our office has questions.   956 287 5814
   Notice to Voter: Effective September 1, 2015, you may submit a completed, signed and scanned application to the early voting clerk at
   _____ (early voting clerk's e-mail address)

10. "I certify that the information given in this application is true, and I understand that giving false information in this application is a crime."

    SIGN HERE  X Mary K Moffitt   Date  4/17/19
    If applicant is unable to sign or make a mark in the presence of a witness, the witness shall complete Box #11.

    Printed Name of Witness/Assistant  Melissa Williams
    City  McAllen   Zip  78501

    Witness' Relationship to Applicant  DAUGHTER
    (Refer to instructions on back for clarification)

11. See back for Witness and Assistant definitions.

    If someone helped you to complete this form or mails the form for you, then that person must complete the sections below.

    If you are acting as a Witness or you are acting as an Assistant, you are completing this application in the applicant's presence and sign below.
    ☐ If you assisted the applicant in completing this application in the applicant's presence or e-mailed/mailed or faxed the application on behalf of the applicant, please check this box as an Assistant and sign below.
    *If you are acting as a Witness and Assistant, please check both boxes. Failure to complete this information is a Class A misdemeanor if signature was witnessed or applicant was assisted in completing the application.

    Signature of Witness/Assistant  X Melissa Williams
    Street Address  1512 Marigold
    City  McAllen, TX. 78501
    State _____   Zip Code (if applicable)

Este formulario está disponible en Español. Para conseguir la versión en Español favor de llamar sin cargo al 1.800.252.8683 a la oficina del Secretario de Estado o la Secretaría de Votación por Adelantado.

AW5-42
Prescribed by Secretary of State
Sec. 87.0431, Texas Election Code
3/07

## NOTICE OF REJECTED BALLOT

This is to serve as notice that your ballot for the __**June 22, 2019**__ Election was rejected by the early voting ballot board and was not counted.

Name of Voter _Guerrero, Ofelia_

VUID Number _105 292 4367_

Reason for Rejection: (Check As Appropriate)

_____ 1)    Certificate on carrier envelope was not properly executed.
_____ You failed to sign your signature or make your mark.
_____ The witness failed to indicate on the envelope that you could not make a mark.
_____ The assistant or witness failed to print their name.
_____ The assistant or witness failed to sign their name.
_____ The residence address of the assistant or witness was not given.

_✓_ 2)    It was determined that the signature on the application for ballot by mail and carrier envelope was not signed by the same person.

_____ 3)    Application for ballot by mail did not state a legal ground for voting by mail.

_____ 4)    Voter registration records indicated you did not have an effective registration for this election.

_____ 5)    Address to which ballot was mailed was not outside the county.  Voting early by mail due to expected absence from the county requires balloting materials be mailed to an address outside the county.

_____ 6)    The residence address on the statement of residence is not located in the political subdivision conducting the election.

_____ 7)    The mailing address on the application for ballot by mail did not match your voter registration address nor did the mailing address match any addresses provided on your statement of residence.  Since you did not indicate on your application for a ballot by mail that you were having your ballot mailed to a hospital, retirement center, long term care facility, nursing home, jail, or a relative, your ballot was rejected.

_____ 8)    The statement of residence was not included in the carrier envelope.

_____ 9)    No identification was included with your mail ballot.

_____ 10)   Other: _____

_____
Signature of Early Voting Ballot Board Judge

__**June 22, 2019**__
Date

**Guerrero, Ofelia
2223 Date Palm Ave.
McAllen  TX  78501-6967**

AW5-42
Requerido por el Secretario de Estado
Frac. 87.0431, Código Electoral
3/07

## AVISO DEL RECHAZO DE UNA PAPELETA ELECTORAL

Por medio de éste se le notifica que la papeleta electoral que usted entregó en las elecciones **22 de Junio, 2019** fue rechazada por el Consejo de Votación por Adelantado y no fue incluido en el conteo final.

Nombre del elector _____

VUID de inscripción electoral número _____

La razón del rechazo fue (a continuación indique las razones):

_____     1)    La constancia que aparece en el sobre de entrega no se firmó en forma apropiada.

          _____ Le falta su firma o marca.

          _____ El testigo no anotó en el sobre que Ud. no puede hacer su marca.

          _____ Falta el nombre del testigo o la persona quien le ayudó en letras de molde.

          _____ Falta la firma del testigo o de la persona quien le ayudó votar.

          _____ Falta el domicilio del testigo o el de la persona quien le ayudó votar.

✓     2)    Un análisis de las firmas que aparecen en la solicitud de una papeleta postal y el sobre de entrega indica que éstas no son la letra de la misma persona.

_____     3)    De acuerdo a la ley, la razón dada en la solicitud de una papeleta postal no lo califica para poder votar por correo.

_____     4)    Las actas del registro electoral indican que en la fecha en que celebraron estas elecciones, usted no estaba inscrito como votante.

_____     5)    El domicilio al cual se envió la papeleta está ubicado dentro de este condado. Sólo aquellas personas que anticipan estar fuera del condado pueden votar por anticipado y por correo, por esta razón la papeleta electorales se tiene que enviar a un domicilio ubicado fuera del condado.

_____     6)    El domicilio indicado en la solicitud de una papeleta postal no queda dentro del área geográfica de la entidad política que efectúa estas elecciones.

_____     7)    El domicilio indicado en la solicitud de una papeleta postal no es igual al indicado en: la constancia de domicilio permanente ni su inscripción electoral ni es la dirección postal indicada en su solicitud de inscripción. Además, usted no indicó que su papeleta debería enviarse a un hospital, centro de jubilación, centro de cuidados médicos a largo plazo, centro de enfermería o el hogar de algún familiar.

_____     8)    La constancia de domicilio permanente no vino incluida en el sobre de entrega.

_____     9)    No incluyó ninguna identificación con su boleta por correo.

_____     10)    Otra: _____

_____
Firma del Juez del Consejo Administrativo de
las Papeletas de Votación por Adelantado

**22 de Junio, 2019**
Fecha

▼ FOLD OVER HERE AND SEAL ▼

**APPLICATION FOR BALLOT BY MAIL**
(Solicitud Para Recibir Una Boleta Por Correo)

For Official Use Only
VUID: 1052924367  PCT: _____

**Last Name**
Guerrero ✓

**Suffix**

**First Name**
Ofelia ✓

**Middle Initial**
G.

**ADDRESS AT WHICH VOTER IS REGISTERED** (DIRECCION DE RESIDENCIADE INSCRIPCION COMO VOTANTE)

**Street Address**
2223 Date Palm Ave ✓

7/31/1935

**City**
McAllen

**State**
TX

**ZIP**
78501-6967

I am over 65 years of age and requesting an Annual Ballot By Mail to recieve a ballot or all elections in 2019, including local elections and the November 2019 General Election. Mail my ballot to the address indicated above (unless noted otherwise below.)

X _Ofelia Guerrero_
Signature of applicant: I certify the information given in this application is true and I understand that giving false information in this application is a crim. Certifico que la información que se proporciona mediante esta solicitud es cierta y entiendo que es delito dar información falsa

OPTIONAL: IF YOU ARE NOT ABLE TO RECEIVE YOUR BALLOT AT YOUR REGISTRATION ADDRESS (ABOVE), YOU MAY HAVE YOUR  BALLOT MAILED TO AN ALTERNATE ADDRESS

| Check One of these 4 choices: | **STREET ADDRESS** | | |
| --- | --- | --- | --- |
| ☐ NURSING HOME, ASSISTED LIVING OR LONG TERM CARE FACILITY | | | |
| ☐ HOSPITAL | **CITY** | **STATE** | **ZIP** |
| ☐ RETIREMENT CENTER | | | |
| ☐ RELATIVE, RELATIONSHIP | | | |

▼ DO NOT TEAR PERFORATED TAB. FOLD OVER BOTTOM TO TOP AND SEAL WITH TAPE ▼

1170

Odelia Guerrero

2223 Date Palm

McAllen Tex

City Secretary's Office
Received
Date 6/3/19

## RETURN YOUR OFFICIAL BALLOT REQUEST TODAY.

**To Early Voting Clerk**
**Perla Lara**
**PO Box 220/1300 Houston Ave.**
**McAllen, TX 78505-0220**

OFFICIAL
ELECTION MAIL
Authorized by the U.S. Postal Service™

RECEIVED
JUN 0 3 2019
CITY OF MCALLEN
MAIL CENTER

FOREVER / USA

**1**
**Sign this personalized**
**vote-by-mail ballot request**
Firma tu boleta personalizada
De votacio por correo

**2**
**Detach, fold and seal**
**your ballot request**
Despega, dobla y sella tu boleta

**3**
**Place a 49 cent stamp on**
**your ballot request and**
**drop it in the mail today**
Pon un timbre postal de
49 centavos en tu boleta y envia hoy.

If you have questions or need additional assistance please contact 956-221-0084

AW5-42
Prescribed by Secretary of State
Sec. 87.0431, Texas Election Code
3/07

## NOTICE OF REJECTED BALLOT

This is to serve as notice that your ballot for the **June 22, 2019** Election was rejected by the early voting ballot board and was not counted.

Name of Voter **Alaniz, Ana Maria**
VUID Number **1055312987**

Reason for Rejection: (Check As Appropriate)

1) Certificate on carrier envelope was not properly executed.
   _____ You failed to sign your signature or make your mark.
   _____ The witness failed to indicate on the envelope that you could not make a mark.
   _____ The assistant or witness failed to print their name.
   _____ The assistant or witness failed to sign their name.
   _____ The residence address of the assistant or witness was not given.

✓ 2) It was determined that the signature on the application for ballot by mail and carrier envelope was not signed by the same person.

3) Application for ballot by mail did not state a legal ground for voting by mail.

4) Voter registration records indicated you did not have an effective registration for this election.

5) Address to which ballot was mailed was not outside the county. Voting early by mail due to expected absence from the county requires balloting materials be mailed to an address outside the county.

6) The residence address on the statement of residence is not located in the political subdivision conducting the election.

7) The mailing address on the application for ballot by mail did not match your voter registration address nor did the mailing address match any addresses provided on your statement of residence. Since you did not indicate on your application for a ballot by mail that you were having your ballot mailed to a hospital, retirement center, long term care facility, nursing home, jail, or a relative, your ballot was rejected.

8) The statement of residence was not included in the carrier envelope.

9) No identification was included with your mail ballot.

10) Other:

_____
Signature of Early Voting Ballot Board Judge

**June 22, 2019**
Date

**Alaniz, Ana Maria
412 N. 16th Street
McAllen TX 78501**

1172

AW5-42
Requerido por el Secretario de Estado
Frac. 87.0431, Código Electoral
3/07

## AVISO DEL RECHAZO DE UNA PAPELETA ELECTORAL

Por medio de éste se le notifica que la papeleta electoral que usted entregó en las elecciones **22 de Junio, 2019** fue rechazada por el Consejo de Votación por Adelantado y no fue incluido en el conteo final.

Nombre del elector _Alaniz, Ana Maria_
VUID de inscripción electoral número _1055212987_

La razón del rechazo fue (a continuación indique las razones):

_____    1)    La constancia que aparece en el sobre de entrega no se firmó en forma apropiada.
                     _____ Le falta su firma o marca.
                     _____ El testigo no anotó en el sobre que Ud. no puede hacer su marca.
                     _____ Falta el nombre del testigo o la persona quien le ayudó en letras de molde.
                     _____ Falta la firma del testigo o de la persona quien le ayudó votar.
                     _____ Falta el domicilio del testigo o el de la persona quien le ayudó votar.

_✓_    2)    Un análisis de las firmas que aparecen en la solicitud de una papeleta postal y el sobre de entrega indica que éstas no son la letra de la misma persona.

_____    3)    De acuerdo a la ley, la razón dada en la solicitud de una papeleta postal no lo califica para poder votar por correo.

_____    4)    Las actas del registro electoral indican que en la fecha en que celebraron estas elecciones, usted no estaba inscrito como vótante.

_____    5)    El domicilio al cual se envió la papeleta está ubicado dentro de este condado. Sólo aquellas personas que anticipan estar fuera del condado pueden votar por anticipado y por correo, por esta razón la papeleta electorales se tiene que enviar a un domicilio ubicado fuera del condado.

_____    6)    El domicilio indicado en la solicitud de una papeleta postal no queda dentro del área geográfica de la entidad política que efectúa estas elecciones.

_____    7)    El domicilio indicado en la solicitud de una papeleta postal no es igual al indicado en: la constancia de domicilio permanente ni su inscripción electoral ni es la dirección postal indicada en su solicitud de inscripción. Además, usted no indicó que su papeleta debería enviarse a un hospital, centro de jubilación, centro de cuidados médicos a largo plazo, centro de enfermería o el hogar de algún familiar.

_____    8)    La constancia de domicilio permanente no vino incluida en el sobre de entrega.

_____    9)    No incluyó ninguna identificación con su boleta por correo.

_____    10)    Otra: _____

_____
Firma del Juez del Consejo Administrativo de
las Papeletas de Votación por Adelantado

**22 de Junio, 2019**
Fecha

1173

| | Statement of Residence, etc. | | |
|---|---|---|---|

**Apellido** (Escriba con Letra de Molde)
*ELANIZ*

**Nombre de pila**
*ENA MARIA*

**Sufijo** (Jr., Sr., III, etc)

**Inicial del segundo nombre**

**Código postal**
*78201*

**Domicilio residencial** - Véase el dorso de esta solicitud para aclaración.
*118 Mayfield #116th ST*

**Ciudad**
*TX*
Estado

**Código postal**

Enviar mi boleta a: Si la dirección postal es diferente de la de su domicilio residencial, favor de completar el Cuadro #7.

**Ciudad**
*MCALLEN,TX*
Estado

**Código postal**

**Fecha de nacimiento:** (mm/dd/aaaa) (Opcional)
`0 7 / 2 7 / 1 9 4`

**Motivo para votar por correo:**
- [x] 65 o más años de edad. (**Completar Cuadro #6a**)
- [ ] Minusvalidez. (**Completar Cuadro #6a**)
- [ ] Expectativa de estar fuera del condado. (**Completar Cuadro #6b y Cuadro#8**)
  - [ ] Usted recibirá una boleta solo para la próxima elección
  - [ ] Usted recibirá una boleta solo para la próxima elección
- [ ] Reclusión carcelaria. (**Completar Cuadro #6b**)

**Información de Contacto** (Opcional)*
Por favor, indique el número de teléfono y/o dirección de correo electrónico:
* Utilizado en caso de que nuestra oficina tenga preguntas

**7.** Si pide que se envíe su boleta a otra dirección (distinta a la de su residencia), indique dónde hay que enviarla. Vea el reverso para instrucciones.
- [ ] La dirección postal que aparece en mi certificado de inscripción electoral
- [ ] Asilo de ancianos, centro de vida asistida o centro de cuidado a largo plazo
- [ ] Hospital
- [ ] Centro de jubilación
- [ ] Dirección de la cárcel
- [ ] Pariente; indique el parentesco
- [ ] Dirección fuera del condado (véase Cuadro #8)

**SÓLO los Votantes de 65 años de Edad o Mayores o los Votantes con Minusvalidez:** Si solicita una elección, seleccione la casilla apropiada. Si usted está solicitando para todas las elecciones en el año calendario, seleccione "Aplicación Anual."
- [x] Aplicación Anual

**Uniforme y otra Elecciones:**
- [ ] Elección en mayo
- [ ] Elección en noviembre
- [ ] Otra

**Elecciones Primaria:**
Deberá declarar sólo un partido político para votar en una elección primaria.
- [ ] Demócrata
- [ ] Republicano
- [ ] Cualquier elección de desempate

**8.** Si escogió "Expectativa de estar fuera del condado" vea la parte de atrás para instrucciones.

**Fecha en que se podrá recibir su correspondencia en la dirección.** _____ **Fecha de regreso a la dirección residencial**

**9.** Los votantes pueden enviar una solicitud completa, firmada y escaneada al Secretario de Votación Anticipada ~~diana@mcallen.may~~

Dirección de correo electrónico del Secretario de Votación Anticipada   Fax del Secretario de Votación Anticipada

NOTA: Si usted envía este formulario por fax o correo electrónico, por favor tenga en cuenta que también debe enviar el formulario por correo postal al secretario de votación anticipada dentro de los cuatro días hábiles. Consulte "Someter su Solicitud" en el reverso de este formulario para obtener información adicional.

**SÓLO los Votantes Ausente del Condado o Votantes Encarcelados:** Usted sólo puede solicitar una boleta por correo para una elección, y cualquier elección de desempate resultante. Por favor, seleccione la casilla correspondiente.

**Uniforme y otra Elecciones:**
- [ ] Elección en mayo
- [ ] Elección en noviembre
- [ ] Otra

**Elecciones Primaria:**
Deberá declarar sólo un partido político para votar en una elección primaria.
- [ ] Demócrata
- [ ] Republicano
- [ ] Cualquier elección de desempate

**10.** "Certifico que la información que se proporciona en esta solicitud es cierta y entiendo que dar información falsa en esta solicitud es un delito."

**FIRME AQUÍ**
Si el solicitante no puede firmar o hacer una marca en la presencia de un testigo, el testigo deberá completar Cuadros #11.

X *ENA MARIA ELANIZ*    Fecha *3/6/19*

Los votantes pueden hacer una marca. Clase A si acaso la firma se atestiguó o si el solicitante recibió ayuda para llenar esta solicitud.

**Parentesco entre el/la Solicitante y su Testigo**
(Vea las instrucciones atrás para una aclaración).

Si algún testigo ayudó a completar esta solicitud o si el individuo firmó para usted, a continuación el testigo o persona deberá de completar la sección a continuación.

Véase al dorso para definiciones de Testigo y Asistente.
Si el solicitante no puede marcar el Cuadro #10 y actúa como Testigo, favor de marcar este cuadro y firme abajo. [ ]

X _____
Firma del Testigo/Asistente.

**Nombre completo del Testigo/Asistente en letra de molde.**

Si usted actúa como **Testigo y Asistente**, por favor marque ambas casillas. El omitir esta información es un delito menor Clase A si acaso esta información es un delito. [ ]

X _____
Nombre completo del Testigo/Asistente en letra de molde.

**Ciudad**

**Dirección**   **Número de apartamento (si aplica)**

**Código postal**

**Estado**

*This form is available in English. To obtain the English version, please call your early voting clerk or the Secretary of State's Office toll free at 1.800.252.8683.*

1174

## Instrucciones Para Solicitar la Boleta Postal

**Dirección residencial (Domicilio)** - Indique la dirección completa que aparece en su certificado de inscripción electoral. Si se ha mudado dentro del mismo condado sin haber avisado todavía al/a la registrador(a) de votantes de su nueva dirección, indique su nueva dirección residencial.

**Enviar boleta a** - Dé la dirección completa donde usted desea tener la boleta enviada, si la dirección es diferente a la de su domicilio.

**Enviar boleta a una dirección distinta** - Su boleta deberá enviarse a la casa donde vive o a la dirección postal que aparece en su certificado de inscripción electoral. Existen algunas excepciones que permiten enviar su boleta a una ubicación diferente, tal como se especifica a continuación.

| Motivo para votar por correo | Lugar a donde enviar boleta |
|---|---|
| 65 ó minusválido | Asilo de ancianos, centro de cuidado de largo plazo, centro de jubilación, pariente, hospital |
| Encarcelado/a | Dirección de cárcel o pariente |
| Ausencia del condado | Dirección fuera del condado |

**Expectativa de estar fuera del condado** - Si escogió "expectativa de estar fuera del condado", deberá anticipar estar ausente del condado el día de elección y durante las horas de votación anticipada en persona o para el resto del período de votación anticipada después de entregar su solicitud. Su boleta deberá enviarse a una dirección fuera del condado. Importante: Favor de dar la fecha en que puede recibir correspondencia en la dirección indicada.

**Aplicación Anual** - Si usted tiene 65 años de edad o más, o está discapacitado, puede solicitar para recibir todas las boletas por correo durante un año calendario. Si no selecciona ninguna elección en el cuadro 6ª, su solicitud se considerará una Aplicación Anual.

Si usted entrega una aplicación anual para boletas por correo, podremos enviar su solicitud a otras entidades que celebran elecciones en las que usted califica como votante. Esto significa que usted podrá recibir una boleta para esas elecciones además de recibir la(s) boleta(s) que solicitó con esta aplicación.

## Someter su Solicitud

**Firmar y fechar su solicitud** - Si no puede firmar, por favor vaya a Cuadro de Testigo/Dirección (11 al reverso) y tenga una persona ser testigo de su firma. Instrucciones de Testigo/Asistente siguen más abajo.

**Entregar al Secretario(a) de Votación Anticipada** - Usted puede enviar su solicitud a través de estos métodos:

**· Persona:** Solo el solicitante puede presentar su solicitud en persona al Secretario(a) de Votación Anticipada hasta que comience el período de votación anticipada. Sin embargo, después que el período de votación anticipada comience para una elección, el solicitante solo podrá presentar su solicitud por correo, por transportista contratado común, o por correo electrónico.

**· Correo:** Usted puede enviar su solicitud por medio del Servicio Postal de los EE.UU.

**· Transportista Contratado Común:** Usted puede enviar su solicitud a través de un transportista común contratado, que es de buena fe, con fines de lucro.

**· Fax:** Usted puede enviar su solicitud por fax al Secretario(a) de Votación Anticipada. Por favor, póngase en contacto con su Secretario(a) de Votación Anticipada o la oficina del Secretario de Estado para los números de fax.

**· Correo Electrónico:** Usted puede enviar una imagen escaneada de su aplicación por correo electrónico a la) Secretario(a) de Votación Anticipada. Por favor comuníquese con su Secretario(a) de Votación Anticipada o la Oficina de el Secretario de Estado para las direcciones de correo electrónico.

**SI USTED ENVÍA POR FAX O POR CORREO ELECTRÓNICO SU SOLICITUD AL SECRETARIO(A) DE VOTACIÓN ANTICIPADA, USTED DEBE TAMBIÉN ENVIAR LA SOLICITUD POR CORREO PARA QUE EL SECRETARIO(A) LO RECIBA NO MÁS TARDE DE EL CUARTO DÍA HÁBIL DESPUÉS DEL DÍA EN QUE EL SECRETARIO(A) RECIBAO SU SOLICITUD POR FAX O POR CORREO ELECTRÓNICO. Si usted envía su solicitud por fax o por correo electrónico por la fecha límite indicada a continuación, su solicitud será considerada completa y oportuna siempre y cuando el original sea recibido por el secretario de votación anticipada por el cuarto día hábil después de que enviado por fax o correo electrónico.**

## Fecha Límite:
Su solicitud debe ser recibida por el Secretario(a) de Votación Anticipada de la ciudad local que celebra una elección a más tardar el 11ª día antes de elección. Si el 11ª día es un día de semana o día festivo, es el primer día hábil anterior. Usted puede presentar una solicitud a través del calendario, a partir del 1 de enero. Por favor, recuerde que la solicitud debe ser recibida a más tardar 11ª día antes de la primera elección en la que desea votar por correo.

Si entrega una Aplicación Anual para Boleta por Correo dentro de los 60 días antes de una elección que se celebre en el año calendario entrante, su solicitud será válida para cualquier elección que se lleva a cabo en el siguiente año calendario. Esto se aplica sólo a las Aplicaciones Anuales y no a una solicitud regular para boletas por correo.

## Instrucciones para Testigos y Asistentes

**Testigo:** Si no puede firmar su nombre (debido a su minusvalidez física o analfabetismo), entonces el/la testigo deberá firmar la solicitud de parte de usted en el cuadro 11. Usted deberá poner su marca en la solicitud en la cuadro 10 o, si no puede hacerlo, entonces el Testigo deberá marcar el cuadro correspondiente de el cuadro 11 indicando que el votante no puede poner su marca. El Testigo deberá declarar su nombre en letra de molde e indicar su parentesco con usted, o si no es pariente suyo/a, que decir que no lo es. El Testigo deberá firmar y dar su nombre y dirección residencial en letra de molde. A menos que el Testigo sea pariente próximo/a del/de la votante (padre/madre, abuelo/a, esposo/a, hijo/a, hermano/a), es un delito menor de Clase B el que una persona atestigüe más de una sola solicitud de boleta postal.

**Asistente:** Si una persona (aparte de ser pariente próximo/a o persona inscrita para votar con la misma dirección del votante) le ayuda a completar esta solicitud en su presencia o la envía o manda por fax o correo electrónico de parte usted, tal persona deberá marcar el cuadro 11. El Asistente deberá declarar y dar su nombre y dirección residencial en letra de molde. Es un delito menor de Clase A el que un Asistente deje de proporcionar la información descrita arriba a menos que sea un pariente cercano o está inscrito para votar con la misma residencia del votante.

Si tiene otras preguntas o necesita más asistencia, por favor comuníquese con su Secretario(a) de Votación Anticipada o la oficina del Secretario del Estado al 1-800-252-8683 o www.sos.state.tx.us



AW5-42
Prescribed by Secretary of State
Sec. 87.0431, Texas Election Code
3/07

## NOTICE OF REJECTED BALLOT

This is to serve as notice that your ballot for the **June 22, 2019** Election was rejected by the early voting ballot board and was not counted.

Name of Voter ____Zapata, Adela_____

VUID Number _____1053744584_____

Reason for Rejection: (Check As Appropriate)

_____ 1) Certificate on carrier envelope was not properly executed.
        _____ You failed to sign your signature or make your mark.
        _____ The witness failed to indicate on the envelope that you could not make a mark.
        _____ The assistant or witness failed to print their name.
        _____ The assistant or witness failed to sign their name.
        _____ The residence address of the assistant or witness was not given.

___✓___ 2) It was determined that the signature on the application for ballot by mail and carrier envelope was not signed by the same person.

_____ 3) Application for ballot by mail did not state a legal ground for voting by mail.

_____ 4) Voter registration records indicated you did not have an effective registration for this election.

_____ 5) Address to which ballot was mailed was not outside the county. Voting early by mail due to expected absence from the county requires balloting materials be mailed to an address outside the county.

_____ 6) The residence address on the statement of residence is not located in the political subdivision conducting the election.

_____ 7) The mailing address on the application for ballot by mail did not match your voter registration address nor did the mailing address match any addresses provided on your statement of residence. Since you did not indicate on your application for a ballot by mail that you were having your ballot mailed to a hospital, retirement center, long term care facility, nursing home, jail, or a relative, your ballot was rejected.

_____ 8) The statement of residence was not included in the carrier envelope.

_____ 9) No identification was included with your mail ballot.

_____ 10) Other: _____

_____
Signature of Early Voting Ballot Board Judge

**June 22, 2019**
Date

**Zapata, Adela
2010 Galveston Ave.
McAllen TX 78501-7121**

1176

AW5-42
Requerido por el Secretario de Estado
Frac. 87.0431, Código Electoral
3/07

## AVISO DEL RECHAZO DE UNA PAPELETA ELECTORAL

Por medio de éste se le notifica que la papeleta electoral que usted entregó en las elecciones **22 de Junio, 2019** fue rechazada por el Consejo de Votación por Adelantado y no fue incluido en el conteo final.

Nombre del elector _Zapata, Adela_
VUID de inscripción electoral número _1053744584_

La razón del rechazo fue (a continuación indique las razones):

| | | |
|---|---|---|
| _____ | 1) | La constancia que aparece en el sobre de entrega no se firmó en forma apropiada. |
| | | _____ Le falta su firma o marca. |
| | | _____ El testigo no anotó en el sobre que Ud. no puede hacer su marca. |
| | | _____ Falta el nombre del testigo o la persona quien le ayudó en letras de molde. |
| | | _____ Falta la firma del testigo o de la persona quien le ayudó votar. |
| | | _____ Falta el domicilio del testigo o el de la persona quien le ayudó votar. |
| ✓ | 2) | Un análisis de las firmas que aparecen en la solicitud de una papeleta postal y el sobre de entrega indica que éstas no son la letra de la misma persona. |
| _____ | 3) | De acuerdo a la ley, la razón dada en la solicitud de una papeleta postal no lo califica para poder votar por correo. |
| _____ | 4) | Las actas del registro electoral indican que en la fecha en que celebraron estas elecciones, usted no estaba inscrito como votante. |
| _____ | 5) | El domicilio al cual se envió la papeleta está ubicado dentro de este condado. Sólo aquellas personas que anticipan estar fuera del condado pueden votar por anticipado y por correo, por esta razón la papeleta electorales se tiene que enviar a un domicilio ubicado fuera del condado. |
| _____ | 6) | El domicilio indicado en la solicitud de una papeleta postal no queda dentro del área geográfica de la entidad política que efectúa estas elecciones. |
| _____ | 7) | El domicilio indicado en la solicitud de una papeleta postal no es igual al indicado en: la constancia de domicilio permanente ni su inscripción electoral ni es la dirección postal indicada en su solicitud de inscripción. Además, usted no indicó que su papeleta debería enviarse a un hospital, centro de jubilación, centro de cuidados médicos a largo plazo, centro de enfermería o el hogar de algún familiar. |
| _____ | 8) | La constancia de domicilio permanente no vino incluida en el sobre de entrega. |
| _____ | 9) | No incluyó ninguna identificación con su boleta por correo. |
| _____ | 10) | Otra: _____ |

_Firma del Juez del Consejo Administrativo de_
las Papeletas de Votación por Adelantado

**22 de Junio, 2019**
Fecha

▼ FOLD OVER HERE AND SEAL ▼



# APPLICATION FOR BALLOT BY MAIL
## (Solicitud Para Recibir Una Boleta Por Correo)

**For Official Use Only**
VUID: 1053744584
PCT: _____

| Last Name | Suffix | First Name | Middle Initial |
|---|---|---|---|
| Zapata | | Adela | |

## ADDRESS AT WHICH VOTER IS REGISTERED (DIRECCION DE RESIDENCIADE INSCRIPCION COMO VOTANTE)

**Street Address**
2010 Galveston Ave

4/28/1940

| City | State | ZIP |
|---|---|---|
| McAllen | TX | 78501-7121 |

☑ I am over 65 years of age and requesting an Annual Ballot By Mail to receive a ballot or all elections in 2019, including local elections and the November 2019 General Election. Mail my ballot to the address indicated above (unless noted otherwise below.)

X ~~Adela Zapata~~

Signature of applicant. I certify that the information given in this application is true and I understand that giving false information in this application is a crim. Certifico que la información que se proporciona mediante esta solicitud es cierta y entiendo que es delito dar información falsa

## OPTIONAL: IF YOU ARE NOT ABLE TO RECEIVE YOUR BALLOT AT YOUR REGISTRATION ADDRESS (ABOVE), YOU MAY HAVE YOUR BALLOT MAILED TO AN ALTERNATE ADDRESS

| Check One of these 4 choices: | ☐ NURSING HOME, ASSISTED LIVING OR LONG TERM CARE FACILITY<br>☐ HOSPITAL<br>☐ RETIREMENT CENTER<br>☐ RELATIVE, RELATIONSHIP _____ | STREET ADDRESS |  |  |
|---|---|---|---|---|
| | | CITY | STATE | ZIP |

▼DO NOT TEAR PERFORATED TAB. FOLD OVER BOTTOM TO TOP AND SEAL WITH TAPE ▼

1178

RETURN YOUR OFFICIAL BALLOT REQUEST TODAY.

**1**
Sign this personalized
vote-by-mail ballot request
Firma tu boleta personalizada
De votación por correo

**2**
Detach, fold and seal
your ballot request
Despega, dobla y sella tu boleta

**3**
Place a 49 cent stamp on
your ballot request and
drop it in the mail today
Pon un timbre postal de
49 centavos en tu boleta y envía hoy.

If you have questions or need additional assistance please contact 956-221-0084

RECEIVED
CITY OF MCALLEN
MAIL CENTER
JUN 05 2019

**To Early Voting Clerk**
Perla Lara
PO Box 220/1300 Houston Ave.
McAllen, TX 78505-0220

OFFICIAL
ELECTION MAIL
Authorized by the U.S. Postal Service

City Secretary's Office
Received
Date 6/5/19

PLACE
FOREVER USA

1179

AWS-42
Prescribed by Secretary of State
Sec. 87.0431, Texas Election Code
3/07

## NOTICE OF REJECTED BALLOT

This is to serve as notice that your ballot for the ___**June 22, 2019**___ Election was rejected by the early voting ballot board and was not counted.

Name of Voter _Goolsby, Julia B._
VUID Number _1206430689_

Reason for Rejection: (Check As Appropriate)

_____   1)   Certificate on carrier envelope was not properly executed.
             _____   You failed to sign your signature or make your mark.
             _____   The witness failed to indicate on the envelope that you could not make a mark.
             _____   The assistant or witness failed to print their name.
             _____   The assistant or witness failed to sign their name.
             _____   The residence address of the assistant or witness was not given.

___✓___   2)   It was determined that the signature on the application for ballot by mail and carrier envelope was not signed by the same person.

_____   3)   Application for ballot by mail did not state a legal ground for voting by mail.

_____   4)   Voter registration records indicated you did not have an effective registration for this election.

_____   5)   Address to which ballot was mailed was not outside the county.  Voting early by mail due to expected absence from the county requires balloting materials be mailed to an address outside the county.

_____   6)   The residence address on the statement of residence is not located in the political subdivision conducting the election.

_____   7)   The mailing address on the application for ballot by mail did not match your voter registration address nor did the mailing address match any addresses provided on your statement of residence.  Since you did not indicate on your application for a ballot by mail that you were having your ballot mailed to a hospital, retirement center, long term care facility, nursing home, jail, or a relative, your ballot was rejected.

_____   8)   The statement of residence was not included in the carrier envelope.

_____   9)   No identification was included with your mail ballot.

_____   10)  Other: _____

_____
Signature of Early Voting Ballot Board Judge

__June 22, 2019__
Date

Goolsby, Julia B.
Calle del Doctor Esquerdo, 128 6H
Madrid  Spain  28007

AW5-42
Requerido por el Secretario de Estado
Frac. 87.0431, Código Electoral
3/07

## AVISO DEL RECHAZO DE UNA PAPELETA ELECTORAL

Por medio de éste se le notifica que la papeleta electoral que usted entregó en las elecciones **22 de Junio, 2019** fue rechazada por el Consejo de Votación por Adelantado y no fue incluido en el conteo final.

Nombre del elector _Goolsby, Julia B._
VUID de inscripción electoral número _1206430689_

La razón del rechazo fue (a continuación indique las razones):

_____   1)   La constancia que aparece en el sobre de entrega no se firmó en forma apropiada.
            _____   Le falta su firma o marca.
            _____   El testigo no anotó en el sobre que Ud. no puede hacer su marca.
            _____   Falta el nombre del testigo o la persona quien le ayudó en letras de molde.
            _____   Falta la firma del testigo o de la persona quien le ayudó votar.
            _____   Falta el domicilio del testigo o el de la persona quien le ayudó votar.

✓   2)   Un análisis de las firmas que aparecen en la solicitud de una papeleta postal y el sobre de entrega indica que éstas no son la letra de la misma persona.

_____   3)   De acuerdo a la ley, la razón dada en la solicitud de una papeleta postal no lo califica para poder votar por correo.

_____   4)   Las actas del registro electoral indican que en la fecha en que celebraron estas elecciones, usted no estaba inscrito como votante.

_____   5)   El domicilio al cual se envió la papeleta está ubicado dentro de este condado.  Sólo aquellas personas que anticipan estar fuera del condado pueden votar por anticipado y por correo, por esta razón la papeleta electorales se tiene que enviar a un domicilio ubicado fuera del condado.

_____   6)   El domicilio indicado en la solicitud de una papeleta postal no queda dentro del área geográfica de la entidad política que efectúa estas elecciones.

_____   7)   El domicilio indicado en la solicitud de una papeleta postal no es igual al indicado en: la constancia de domicilio permanente ni su inscripción electoral ni es la dirección postal indicada en su solicitud de inscripción. Además, usted no indicó que su papeleta debería enviarse a un hospital, centro de jubilación, centro de cuidados médicos a largo plazo, centro de enfermería o el hogar de algún familiar.

_____   8)   La constancia de domicilio permanente no vino incluida en el sobre de entrega.

_____   9)   No incluyó ninguna identificación con su boleta por correo.

_____   10)   Otra: _____

Firma del Juez del Consejo Administrativo de
las Papeletas de Votación por Adelantado

**22 de Junio, 2019**
Fecha

# Application for Ballot by Mail

Prescribed by the Office of the Secretary of State of Texas. AS-15 12/17

FOR OFFICIAL USE ONLY. VUID #, County Election Precinct #, Statement of Residence, etc.

120430089

**1. Last Name** (Please print information): GOOLSBY
**First Name:** JULIA
**Suffix** (Jr., Sr., III, etc):
**Middle Initial:** B

**2. Residence Address:** See back of this application for instructions.
1600 HIBISCUS AVE
**City:** MCALLEN
**State:** TX
**ZIP Code:** 78501

**3.** Mail my ballot to: If mailing address differs from residence address, please complete Box #7.
JULIA GOOLSBY, CALLE DEL DOCTOR ESGUERRO, 128 6A
**City:** MADRID
**State:** SPAIN
**ZIP Code:** 28007

**4. Date of Birth** (mm/dd/yyyy) (Optional): 01/31/1996

**5. Reason for Voting by Mail:**
- ☐ 65 years of age or older. (Complete Box #6a)
- ☐ Disability. (Complete Box #6a)
- ☒ Expected absence from the county. (Complete Box #6b and Box #8) You will receive a ballot for the upcoming election only.
- ☐ Confinement in Jail. (Complete Box #6b) You will receive a ballot for the upcoming election only.

**6a. ONLY Voters 65 Years of Age or Older or Voters with a Disability:**
If applying for one election, select appropriate box.
If applying once for elections in the calendar year, select "Annual Application."
☐ Annual Application

Uniform and Other Elections:
- ☒ May Election
- ☐ November Election
- ☐ Other _____

Primary Elections: You must declare one political party to vote in a primary.
- ☐ Democratic Primary
- ☐ Republican Primary
- ☒ Any Resulting Runoff

**6b. ONLY Voters Absent from County or Voters Confined in Jail:**
You may only apply for a ballot by mail for one election, and any resulting runoff. Please select the appropriate box.

Uniform and Other Elections:
- ☒ May Election
- ☐ November Election
- ☐ Other _____

Primary Elections: You must declare one political party to vote in a primary.
- ☐ Democratic Primary
- ☐ Republican Primary
- ☒ Any Resulting Runoff

**Contact Information (Optional)***
Please list phone number and/or email address:
* Used in case our office has questions.

**7.** If you are requesting this ballot be mailed to a different address (other than residence), indicate where the ballot will be mailed. See reverse for instructions.
- ☐ Mailing Address as listed on my voter registration certificate
- ☐ Nursing home, assisted living facility, or long term care facility
- ☐ Hospital
- ☐ Retirement Center
- ☐ Address of the jail
- ☐ Relative; relationship _____
- ☒ Address outside the county (see Box #6)

**8.** If you selected "expected absence from the county," see reverse for instructions
03/01/2019 — 08/05/2019
Date you can begin to receive mail at this address | Date of return to residence address

**9.** Voters may submit a completed, signed, and scanned application to the Early Voting Clerk at:
_____ (early voting clerk's fax)
_____ (early voting clerk's e-mail address)
NOTE: If you fax or e-mail this form, please be aware that you must also mail the form to the early voting clerk within four business days. See "Submitting Application" on the back of this form for additional information.

**10.** "I certify that the information given in this application is true, and I understand that giving false information in this application is a crime."

**SIGN HERE**
If applicant is unable to sign or make a mark in the presence of a witness, the witness shall complete Box #11.
X _Julia Goolsby_    Date: MAR 22 2019

**Witness' Relationship to Applicant**
(Refer to instructions on back for clarification)

**11.** See back for Witness and Assistant definitions.
If applicant is unable to mark Box #10 and you are acting as a Witness to that fact, please check this box and sign below. ☐
If you assisted the applicant in completing this application in the applicant's presence or e-mailed/mailed or faxed the application on behalf of the applicant, please check this box as an Assistant and sign below. ☐
*If you are acting as Witness and Assistant, please check both boxes. Failure to complete this information is a Class A misdemeanor if signature was witnessed or applicant was assisted in completing the application.

X _____
Signature of Witness /Assistant

Street Address _____    Apt Number (if applicable) _____

State _____

X _____
Printed Name of Witness/Assistant

City _____

ZIP Code _____

If someone helped you to complete this form or mails the form for you, then that person must complete the sections below.

1182

Este formulario está disponible en Español. Para conseguir la version en Español favor de llamar sin cargo al 1.800.252.8683 a la oficina del Secretario de Estado o la Secretaría de Votación por Adelantado.

## Instructions for Application for Ballot by Mail

**Residence Address** – Give full address as shown on your voter registration certificate. If you have moved within the county but not yet changed your voter registration address with the voter registrar, indicate your new residence address.

**Mail Ballot To** - Give full address where you wish to have ballot mailed, if the address is different from your residence address.

**Mailing Ballot to a Different Address** - Your ballot must be mailed to your home where you live or to your mailing address on your voter registration certificate. There are some exceptions that allow you to have your ballot mailed to a different location as specified below.

| Reason for voting by mail | Location to mail ballot |
|---|---|
| 65 or disabled | Nursing home, assisted living/retirement center, relative, hospital |
| In jail | Address of jail or relative |
| Absent from county | Address located outside of county |

**Expected Absence from County** - If you chose expected absence from county, you must expect to be absent from the county on election day and during the hours of early voting in person or for the remainder of the early voting period after you submit your application. **Your ballot must be mailed to an address outside the county.** Important: Give date you can begin to receive mail at the address given.

**Annual Application** - If you are 65 years of age or older, or disabled you may apply to receive all ballots by mail for a calendar year. If you do not select any elections in Box 6a, your application will be considered an Annual Application. If you submit an annual application for a ballot by mail, your application may be forwarded to other entities holding elections where you are a qualified voter. This means that you may receive a ballot for those elections in addition to the ballot(s) you requested with this application.

### Submitting Application

1. **Sign and date your application** - If unable to sign, please go to Witness/Address boxes (11 on reverse) and have a person witness your mark. Witness/Assistant instructions follow below.

2. **Deliver to Early Voting Clerk** - You may submit your application via these methods:

**In Person:** Only the applicant may submit their application in person to the Early Voting Clerk until the early voting period begins. However, after the early voting period begins for an election, the applicant may only submit their application via mail, common contract carrier, fax, or e-mail.

**By Mail:** You may mail your application via the U.S. Postal Service.

**By Common Contract Carrier:** You may submit via a common or contract carrier which is a bona fide, for profit carrier.

**By Fax:** You may fax your application to the Early Voting Clerk. Please contact your Early Voting Clerk or the Secretary of State's Office for fax numbers.

**By E-Mail:** You may e-mail a signed, scanned image of your application to the Early Voting Clerk. Please contact your Early Voting Clerk or the Secretary of State's Office for e-mail addresses.

IF YOU FAX OR E-MAIL YOUR APPLICATION TO THE EARLY VOTING CLERK, YOU MUST ALSO MAIL THE APPLICATION SO THAT THE CLERK RECEIVES IT NO LATER THAN THE FOURTH BUSINESS DAY AFTER THE DAY THE CLERK RECEIVED YOUR FAXED OR EMAILED APPLICATION. If you fax or e-mail your application by the deadline noted below, your application will be considered complete and timely as long as the original is received by the early voting clerk by the fourth business day after it was submitted by fax or e-mail.

### Deadline

Your application must be received by the early voting clerk of the local entity conducting the election not later than the 11th day before election day. If the 11th day is a weekend or holiday, the deadline is the first preceding business day. You may submit an application throughout the calendar year, beginning January 1. Please remember that the application must be received not later than the 11th day before the first election in which you seek to vote by mail.

If you submit an Annual Application for Ballot by Mail within 60 days before an election that takes place in the following calendar year, your application will be valid for any election that takes place in the following calendar year, regardless of the fact that your application was submitted prior to the end of the preceding calendar year. This applies to Annual Applications only and not to a regular application for ballot by mail.

### Witness/Assistant Section

**Witness:** If you are unable to sign your name (due to a physical disability or illiteracy), the application may be signed at Box #11 for you by a Witness. You must affix your mark to the application in Box #10 or, if you are unable to make a mark, then the Witness must check the appropriate box in 11 indicating the inability to make a mark. The Witness must state his/her name in printed form and indicate his/her relationship to you or, if unrelated, state that fact. The Witness must sign and provide his or her printed name and residence address. Unless the Witness is a close relative of the voter (parent, grandparent, spouse, child or sibling), it is a Class B misdemeanor for a person to witness more than one application for ballot by mail.

**Assistant:** If a person (other than a close relative or person registered to vote at the same address) assists you in completing this application in your presence or mails/faxes/e-mails this application on your behalf, then that person must complete Box #11. The Assistant must sign, provide his or her printed name, and his or her residence address. A person commits a Class A misdemeanor if the person provides assistance without providing the information described above unless a close relative or registered at your address.

If you have further questions or need additional assistance, please contact your Early Voting Clerk or The Secretary of State's office at 1-800-252-8683 (www.sos.state.tx.us)

FROM: GOOLSBY
1600 HIBISCUS AVE
MCALLEN, TX 78501

AFFIX LABEL HERE OR ADDRESS
TO: EARLY VOTING CLERK   PERLA LARA
P.O. BOX 220
MCALLEN, TX 78505

City Secretary's Office
Received
Due 3/29/19

AW5-42
Prescribed by Secretary of State
Sec. 87.0431, Texas Election Code
3/07

## NOTICE OF REJECTED BALLOT

This is to serve as notice that your ballot for the ___**June 22, 2019**___ Election was rejected by the early voting ballot board and was not counted.

Name of Voter _MARIA C. RODRIGUEZ_

VUID Number _1102678506_

Reason for Rejection: (Check As Appropriate)

_____ 1) Certificate on carrier envelope was not properly executed.

        _____ You failed to sign your signature or make your mark.

        _____ The witness failed to indicate on the envelope that you could not make a mark.

        _____ The assistant or witness failed to print their name.

        _____ The assistant or witness failed to sign their name.

        _____ The residence address of the assistant or witness was not given.

✓ 2) It was determined that the signature on the application for ballot by mail and carrier envelope was not signed by the same person.

_____ 3) Application for ballot by mail did not state a legal ground for voting by mail.

_____ 4) Voter registration records indicated you did not have an effective registration for this election.

_____ 5) Address to which ballot was mailed was not outside the county. Voting early by mail due to expected absence from the county requires balloting materials be mailed to an address outside the county.

_____ 6) The residence address on the statement of residence is not located in the political subdivision conducting the election.

_____ 7) The mailing address on the application for ballot by mail did not match your voter registration address nor did the mailing address match any addresses provided on your statement of residence. Since you did not indicate on your application for a ballot by mail that you were having your ballot mailed to a hospital, retirement center, long term care facility, nursing home, jail, or a relative, your ballot was rejected.

_____ 8) The statement of residence was not included in the carrier envelope.

_____ 9) No identification was included with your mail ballot.

_____ 10) Other:

_____

Signature of Early Voting Ballot Board Judge

___**June 22, 2019**___

Date

**Rodriguez, Maria C.**
**2245 Orange**
**McAllen  TX 78501**

1184

AWS-42
Requerido por el Secretario de Estado
Frac. 87.0431, Código Electoral
3/07

## AVISO DEL RECHAZO DE UNA PAPELETA ELECTORAL

Por medio de éste se le notifica que la papeleta electoral que usted entregó en las elecciones **22 de Junio, 2019** fue rechazada por el Consejo de Votación por Adelantado y no fue incluido en el conteo final.

Nombre del elector *MARIA C. RODRIGUEZ*
VUID de inscripción electoral número *1102678506*

La razón del rechazo fue (a continuación indique las razones):

_____ 1) La constancia que aparece en el sobre de entrega no se firmó en forma apropiada.
　　　　_____ Le falta su firma o marca.
　　　　_____ El testigo no anotó en el sobre que Ud. no puede hacer su marca.
　　　　_____ Falta el nombre del testigo o la persona quien le ayudó en letras de molde.
　　　　_____ Falta la firma del testigo o de la persona quien le ayudó votar.
　　　　_____ Falta el domicilio del testigo o el de la persona quien le ayudó votar.

✓ 2) Un análisis de las firmas que aparecen en la solicitud de una papeleta postal y el sobre de entrega indica que éstas no son la letra de la misma persona.

_____ 3) De acuerdo a la ley, la razón dada en la solicitud de una papeleta postal no lo califica para poder votar por correo.

_____ 4) Las actas del registro electoral indican que en la fecha en que celebraron estas elecciones, usted no estaba inscrito como votante.

_____ 5) El domicilio al cual se envió la papeleta está ubicado dentro de este condado. Sólo aquellas personas que anticipan estar fuera del condado pueden votar por anticipado y por correo, por esta razón la papeleta electorales se tiene que enviar a un domicilio ubicado fuera del condado.

_____ 6) El domicilio indicado en la solicitud de una papeleta postal no queda dentro del área geográfica de la entidad política que efectúa estas elecciones.

_____ 7) El domicilio indicado en la solicitud de una papeleta postal no es igual al indicado en: la constancia de domicilio permanente ni su inscripción electoral ni es la dirección postal indicada en su solicitud de inscripción. Además, usted no indicó que su papeleta debería enviarse a un hospital, centro de jubilación, centro de cuidados médicos a largo plazo, centro de enfermería o el hogar de algún familiar.

_____ 8) La constancia de domicilio permanente no vino incluida en el sobre de entrega.

_____ 9) No incluyó ninguna identificación con su boleta por correo.

_____ 10) Otra: _____

_____
Firma del Juez del Consejo Administrativo de
las Papeletas de Votación por Adelantado

**22 de Junio, 2019**
Fecha

1185

**Application for Ballot by Mail**

Voter Unit Group Number, etc.
Statement of Residence, etc.

**1** Last Name (Please print information) Rodriguez   First Name Maria   Suffix (Jr., Sr., III, etc.)   Middle Initial: E
Maria E. Mary

**2** Residence Address: See back of this application for instructions.
2245 Orange   City McAllen   , TX   ZIP Code 78301

**3** Mail my ballot to: If mailing address differs from residence address, please complete Box #7.
City   State   ZIP Code

**4** Date of Birth (mm/dd/yyyy) (Optional)
[4] [9] [1] [9] [4] [5]

**5** Reason for Voting by Mail:
☐ 65 years of age or older. (Complete Box #6a)
☑ Disability. (Complete Box #6a)
☐ Expected absence from the county. (Complete Box #6b and Box#8)
 You will receive a ballot for the upcoming election only
☐ Confinement in jail. (Complete Box #6b)
 You will receive a ballot for the upcoming election only

**6a** ONLY Voters 65 Years of Age or Older or Voters with a Disability:
If applying for one election, select appropriate box.
If applying once for elections in the calendar year, select "Annual Application."
☐ Annual Application

Uniform and Other Elections:
☐ May Election
☐ November Election
☐ Other ____
☑ Any Resulting Runoff

Primary Elections:
You must declare one political party to vote in a primary.
☐ Democratic Primary
☐ Republican Primary

**6b** ONLY Voters Absent from County or Voters Confined in Jail:
You may only apply for a ballot by mail for one election, and any resulting runoff.
Please select the appropriate box.

Uniform and Other Elections:
☐ May Election
☐ November Election
☐ Other ____
☐ Any Resulting Runoff

Primary Elections:
You must declare one political party to vote in a primary.
☐ Democratic Primary
☐ Republican Primary

**Contact Information (Optional)***
Please list phone number and/or email address:
* Used in case our office has questions.

**7** If you are requesting this ballot be mailed to a different address (other than residence), indicate where the ballot will be mailed. See reverse for instructions.
☐ Mailing Address as listed on my voter registration certificate
☐ Nursing home, assisted living facility, or long term care facility
☐ Hospital
☐ Retirement Center
☐ Address of the jail
☐ Relative; relationship ____
☐ Address outside the county (see Box #8)

City

**8** If you selected "expected absence from the county," see reverse for instructions
[    ] [    ] [    ] [    ]   —   [    ] [    ] [    ] [    ]

Date you can begin to receive mail at this address   Date of return to residence address

**9** Voters may submit a completed, signed, and scanned application to the Early Voting Clerk at:
plaza@mcallen.net
(early voting clerk's e-mail address)
(956) 681-1029
(early voting clerk's fax)
NOTE: If you fax or e-mail this form, please be aware that you must also mail this form to the early voting clerk within four business days. See "Submitting Application" on the back of this form for additional information.

**10** "I certify that the information given in this application is true, and I understand that giving false information in this application is a crime."

X Maria E. Rodriguez   Date

**SIGN HERE**
If applicant is unable to sign or make a mark in the presence of a witness, the witness shall complete Box #11.

X
Signature of Witness/Assistant

X
Printed Name of Witness/Assistant

City

ZIP Code

Witness' Relationship to Applicant
(Refer to instructions on back for clarification)

**11** See back for Witness and Assistant definitions.
If applicant is unable to mark Box #10 and you are acting as a Witness to that fact, please check this box and sign below.  ☐

If you assisted the applicant in completing the application in the applicant's presence or e-mailed or mailed or faxed the application on behalf of the applicant, please check this box as an Assistant and sign below.
*If you are acting as Witness and Assistant, please check both boxes. Failure to complete this information is a Class A misdemeanor if signature was witnessed or applicant was assisted in completing the application.

X
Signature of Witness / Assistant

Street Address   Apt Number (if applicable)

State

*Este formulario está disponible en Español. Para conseguir la versión en Español favor de llamar sin cargo al 1.800.252.8683 a la oficina del Secretario de Estado o la Secretaría de Estado o la Secretaría de Votación por Adelantado.*

DO NOT REMOVE PERFORATED TABS. Moisten tab and fold top to bottom to seal.

FROM: *Maria Chad(sue City Secretary's Office*
*Received 6/14/19*
*2245 Orange*
*McAllen TX 78501*

FOREVER / USA

PURPLE HEART

RECEIVED
JUN 1 1 2019
CITY OF McALLEN
MAIL CENTER

AFFIX LABEL HERE OR ADDRESS

TO:  EARLY VOTING CLERK

PERLA LARA

P.O. BOX 220/1300 Houston Ave.

McAllen Texas 78505-0220

---

## Instructions for Application for Ballot by Mail

**Residence Address** – Give full address as shown on your voter registration certificate. If you have moved within the county but not yet changed your voter registration address with the voter registrar, indicate your new residence address.

**Mail Ballot To** – Give the full address where you wish to have ballot mailed, if this address is different from your residence address.

**Mailing Ballot to a Different Address** – Your ballot must be mailed to the address from your home where you live or to your mailing address on your voter registration certificate. There are some exceptions that allow you to have your ballot mailed to a different location as specified below.

| Reason for Mail Ballot | Location for Mail Ballot | | |
|---|---|---|---|
| 65 or disabled | Nursing home, assisted living/retirement center, relative, hospital | Address of jail or relative | Address located outside of county |
| In jail | | | |
| Absent from county | | | |

**Expected Absence from County** – If you chose expected absence from county, you must expect to be absent from the county on election day and during the hours of early voting in person or to be out of the early voting period after you submit your application. Your ballot must be mailed to an address outside the county. Important: Give the date you can begin to receive mail at this address given.

**Annual Application** – If you are 65 years of age or older, or disabled you may apply to receive all ballots by mail for a calendar year. If you do not select any elections in Box #2, your application will be considered an Annual Application. If you submit an annual application for a ballot by mail, your application may be forwarded to other entities holding elections where you are a qualified voter. This means that you may receive a ballot for those elections in addition to the ballot(s) you requested with this application.

### Submitting Application

**1. Sign and date your application** – If unable to sign, please go to Witness/Address boxes (11 on reverse) and have a person witness your mark. Witness/Assistant instructions follow below.

**2. Deliver to Early Voting Clerk** - You may submit your application in these methods:

**In Person.** Only the applicant may submit their application in person to the Early Voting Clerk until the early voting period begins. However, after the early voting period begins for an election, the applicant may only submit their application via mail, common contract carrier, fax, or e-mail.

**By Mail.** You may mail your application to the U.S. Postal Service.

**By Common Contract Carrier.** You may submit via a common or contract carrier which is a bona fide, for profit carrier.

**By Fax.** You may fax your application to the Early Voting Clerk. Please contact your Early Voting Clerk or the Secretary of State's Office for fax numbers.

**By E-Mail.** You may e-mail a signed, scanned image of your application to the Early Voting Clerk. Please contact your Early Voting Clerk or the Secretary of State's Office for e-mail address.

**IF YOU FAX OR E-MAIL YOUR APPLICATION TO THE EARLY VOTING CLERK, YOU MUST ALSO MAIL THE APPLICATION SO THAT THE CLERK RECEIVES IT NO LATER THAN THE FOURTH BUSINESS DAY AFTER THE DAY THE CLERK RECEIVED THE FAXED OR EMAILED APPLICATION.** If you fax or e-mail your application the original is received by the early voting clerk by the fourth business day after it was submitted by fax or e-mail.

**Deadline**

Your application must be received by the early voting clerk of the local entity conducting the election not later than the 11th day before election day. If the 11th day is a weekend or holiday, the deadline is the first preceding business day. You may submit an application throughout the calendar year, beginning January 1. [ Please remember that the application must be received not later than the 11th day before the first election in which you seek to vote by mail.

If you submit an Annual Application for Ballot by Mail within 60 days before an election that takes place in the following calendar year, your application will be valid for any election that takes place in the following calendar year, regardless of the fact that your application was submitted prior to the end of the preceding calendar year. This applies to Annual Applications only and not to a regular application for ballot by mail.

**Witness/Assistant Section**

**Witness:** If you are unable to sign your name (due to a physical disability or illiteracy), the application may be signed at Box #11 for. If you are unable to make a mark, then the Witness must check the appropriate box in Box #10 of. If you are unable to make a mark, the Witness must label their name in printed then and initials leather relationship to you or, if unrelated, state that fact. The Witness must sign and provide his or her printed name and residence address. Unless the name is printed then and initials leather relationship to you or, if unrelated, state that fact. The Witness must sign and provide his or her printed name and residence address. Unless the Witness is a close relative of the voter (parent, grandparent, spouse, child or sibling), it is a Class B misdemeanor for a person to witness more than one application for ballot by mail.

**Assistant:** If a person (other than a close relative or person witnessing your presence on mark/assistance—make this address) assists you in completing this application in your presence or on mark/assistance, a person commits a class A misdemeanor if the person provides assistance without providing the information described above unless a close relative of registered or of your address.

A person who provides his or her printed name, and his or her residence address, a person commits a class misdemeanor on your behalf, then that person must complete Box #11. The Assistant must sign.

If you have further questions or need additional assistance, please contact your Early Voting Clerk or The Secretary of State's office at 1-800-252-8683.

or www.sos.state.tx.us.

AW5-42
Prescribed by Secretary of State
Sec. 87.0431, Texas Election Code
3/07

## NOTICE OF REJECTED BALLOT

This is to serve as notice that your ballot for the ___**June 22, 2019**___ Election was rejected by the early voting ballot board and was not counted.

Name of Voter ___Emvy, Verles E.___
VUID Number ___105330 3961___

Reason for Rejection: (Check As Appropriate)

1)   Certificate on carrier envelope was not properly executed.
       ___ You failed to sign your signature or make your mark.
       ___ The witness failed to indicate on the envelope that you could not make a mark.
       ___ The assistant or witness failed to print their name.
       ___ The assistant or witness failed to sign their name.
       ___ The residence address of the assistant or witness was not given.

✓   2)   It was determined that the signature on the application for ballot by mail and carrier envelope was not signed by the same person.

3)   Application for ballot by mail did not state a legal ground for voting by mail.

4)   Voter registration records indicated you did not have an effective registration for this election.

5)   Address to which ballot was mailed was not outside the county.  Voting early by mail due to expected absence from the county requires balloting materials be mailed to an address outside the county.

6)   The residence address on the statement of residence is not located in the political subdivision conducting the election.

7)   The mailing address on the application for ballot by mail did not match your voter registration address nor did the mailing address match any addresses provided on your statement of residence.  Since you did not indicate on your application for a ballot by mail that you were having your ballot mailed to a hospital, retirement center, long term care facility, nursing home, jail, or a relative, your ballot was rejected.

8)   The statement of residence was not included in the carrier envelope.

9)   No identification was included with your mail ballot.

10)   Other: _____

_____
Signature of Early Voting Ballot Board Judge

___**June 22, 2019**___
Date

Emry, Verles E.
3816 N. 9th Ct. Apt. 1
McAllen TX  78501-1727

1188

AW5-42
Requerido por el Secretario de Estado
Frac. 87.0431, Código Electoral
3/07

## AVISO DEL RECHAZO DE UNA PAPELETA ELECTORAL

Por medio de éste se le notifica que la papeleta electoral que usted entregó en las elecciones **22 de Junio, 2019** fue rechazada por el Consejo de Votación por Adelantado y no fue incluido en el conteo final.

Nombre del elector **Emry, Verles E.**

VUID de inscripción electoral número **1053303961**

La razón del rechazo fue (a continuación indique las razones):

1) La constancia que aparece en el sobre de entrega no se firmó en forma apropiada.
_____ Le falta su firma o marca.
_____ El testigo no anotó en el sobre que Ud. no puede hacer su marca.
_____ Falta el nombre del testigo o la persona quien le ayudó en letras de molde.
_____ Falta la firma del testigo o de la persona quien le ayudó votar.
_____ Falta el domicilio del testigo o el de la persona quien le ayudó votar.

✓ 2) Un análisis de las firmas que aparecen en la solicitud de una papeleta postal y el sobre de entrega indica que éstas no son la letra de la misma persona.

_____ 3) De acuerdo á la ley, la razón dada en la solicitud de una papeleta postal no lo califica para poder votar por correo.

_____ 4) Las actas del registro electoral indican que en la fecha en que celebraron estas elecciones, usted no estaba inscrito como votante.

_____ 5) El domicilio al cual se envió la papeleta está ubicado dentro de este condado. Sólo aquéllas personas que anticipan estar fuera del condado pueden votar por anticipado y por correo, por esta razón la papeleta electorales se tiene que enviar a un domicilio ubicado fuera del condado.

_____ 6) El domicilio indicado en la solicitud de una papeleta postal no queda dentro del área geográfica de la entidad política que efectúa estas elecciones.

_____ 7) El domicilio indicado en la solicitud de una papeleta postal no es igual al indicado en: la constancia de domicilio permanente ni su inscripción electoral ni es la dirección postal indicada en su solicitud de inscripción. Además, usted no indicó que su papeleta debería enviarse a un hospital, centro de jubilación, centro de cuidados médicos a largo plazo, centro de enfermería o el hogar de algún familiar.

_____ 8) La constancia de domicilio permanente no vino incluida en el sobre de entrega.

_____ 9) No incluyó ninguna identificación con su boleta por correo.

_____ 10) Otra: _____

Firma del Juez del Consejo Administrativo de
las Papeletas de Votación por Adelantado

**22 de Junio, 2019**
Fecha

▼ FOLD OVER HERE AND SEAL ▼

M45

**APPLICATION FOR BALLOT BY MAIL**
(Solicitud Para Recibir Una Boleta Por Correo)

For Official Use Only
VUID: 1053303961   PCT:

| Last Name | Suffix | First Name | Middle Initial |
|---|---|---|---|
| Emry | | Verles | E |

**ADDRESS AT WHICH VOTER IS REGISTERED (DIRECCION DE RESIDENCIADE INSCRIPCION COMO VOTANTE)**

Street Address
3816 N 9th Ct Apt 1

| City | State | ZIP |
|---|---|---|
| McAllen | TX | 78501-1727 |

I am over 65 years of age and requesting an Annual Ballot By Mail to recieve a ballot or all elections in 2019, including local elections and the November 2019 General Election. Mail my ballot to the address indicated above (unless noted otherwise below.)

Signature of applicant. I certify that the information given in this application is true and I understand that giving false information in this application is a crim. Certifico que la informacion que se proporciona mediante esta solicitud es cierta y entiendo que es delito dar informacion falsa

X                                                    7/8/1936

**OPTIONAL: IF YOU ARE NOT ABLE TO RECEIVE YOUR BALLOT AT YOUR REGISTRATION ADDRESS (ABOVE), YOU MAY HAVE YOUR BALLOT MAILED TO AN ALTERNATE ADDRESS**

STREET ADDRESS

| Check One of these 4 choices: | ☐ NURSING HOME, ASSISTED LIVING OR LONG TERM CARE FACILITY<br>☐ HOSPITAL<br>☐ RETIREMENT CENTER<br>☐ RELATIVE, RELATIONSHIP | | |
|---|---|---|---|
| | CITY | STATE | ZIP |

▼DO NOT TEAR PERFORATED TAB. FOLD OVER BOTTOM TO TOP AND SEAL WITH TAPE▼

1190



Veríes Emry
3816 N 9th Apt. 1
McAllen, TX 78501-1727

City Secretary's Office
Returned

Date 6/3/19

# RETURN YOUR OFFICIAL BALLOT REQUEST TODAY.

## 1
**Sign this personalized
vote-by-mail ballot request**
Firma tu boleta personalizada
De votacio por correo

## 2
**Detach, fold and seal
your ballot request**
Despega, dobla y sella tu boleta

## 3
**Place a 49 cent stamp on
your ballot request and
drop it in the mail today**
Pon un timbre postal de
49 centavos en tu boleta y envia hoy.

If you have questions or need additional assistance please contact 956-221-0084

**To Early Voting Clerk**
Perla Lara
PO Box 220/1300 Houston Ave.
McAllen, TX 78505-0220

OFFICIAL
ELECTION MAIL
Authorized by the U.S. Postal Service ™



PLACE
49¢

RECEIVED
JUN 03 2019
CITY OF McALLEN

AW5-42
Requerido por el Secretario de Estado
Frac. 87.0431, Código Electoral
3/07

## AVISO DEL RECHAZO DE UNA PAPELETA ELECTORAL

Por medio de éste se le notifica que la papeleta electoral que usted entregó en las elecciones **22 de Junio, 2019** fue rechazada por el Consejo de Votación por Adelantado y no fue incluido en el conteo final.

Nombre del elector  *Weisfeld, Rosalie*
VUID de inscripción electoral número  *1054678350*

La razón del rechazo fue (a continuación indique las razones):

_____ 1)   La constancia que aparece en el sobre de entrega no se firmó en forma apropiada.

_____ Le falta su firma o marca.

_____ El testigo no anotó en el sobre que Ud. no puede hacer su marca.

_____ Falta el nombre del testigo o la persona quien le ayudó en letras de molde.

_____ Falta la firma del testigo o de la persona quien le ayudó votar.

_____ Falta el domicilio del testigo o el de la persona quien le ayudó votar.

✓ 2)   Un análisis de las firmas que aparecen en la solicitud de una papeleta postal y el sobre de entrega indica que éstas no son la letra de la misma persona.

_____ 3)   De acuerdo a la ley, la razón dada en la solicitud de una papeleta postal no lo califica para poder votar por correo.

_____ 4)   Las actas del registro electoral indican que en la fecha en que celebraron estas elecciones, usted no estaba inscrito como votante.

_____ 5)   El domicilio al cual se envió la papeleta está ubicado dentro de este condado. Sólo aquéllas personas que anticipan estar fuera del condado pueden votar por anticipado y por correo, por esta razón la papeleta electorales se tiene que enviar a un domicilio ubicado fuera del condado.

_____ 6)   El domicilio indicado en la solicitud de una papeleta postal no queda dentro del área geográfica de la entidad política que efectúa estas elecciones.

_____ 7)   El domicilio indicado en la solicitud de una papeleta postal no es igual al indicado en: la constancia de domicilio permanente ni su inscripción electoral ni es la dirección postal indicada en su solicitud de inscripción. Además, usted no indicó que su papeleta debería enviarse a un hospital, centro de jubilación, centro de cuidados médicos a largo plazo, centro de enfermería o el hogar de algún familiar.

_____ 8)   La constancia de domicilio permanente no vino incluida en el sobre de entrega.

_____ 9)   No incluyó ninguna identificación con su boleta por correo.

_____ 10)   Otra: _____

_____
Firma del Juez del Consejo Administrativo de
las Papeletas de Votación por Adelantado

**22 de Junio, 2019**
Fecha

1192

AWS-42
Prescribed by Secretary of State
Sec. 87.0431, Texas Election Code
3/07

## NOTICE OF REJECTED BALLOT

This is to serve as notice that your ballot for the _____**June 22, 2019**_____ Election was rejected by the early voting ballot board and was not counted.

Name of Voter  _Weisfeld, Rosalie_

VUID Number _1054678350_

Reason for Rejection: (Check As Appropriate)

_____ 1)   Certificate on carrier envelope was not properly executed.
  _____ You failed to sign your signature or make your mark.
  _____ The witness failed to indicate on the envelope that you could not make a mark.
  _____ The assistant or witness failed to print their name.
  _____ The assistant or witness failed to sign their name.
  _____ The residence address of the assistant or witness was not given.

__✓__ 2)   It was determined that the signature on the application for ballot by mail and carrier envelope was not signed by the same person.

_____ 3)   Application for ballot by mail did not state a legal ground for voting by mail.

_____ 4)   Voter registration records indicated you did not have an effective registration for this election.

_____ 5)   Address to which ballot was mailed was not outside the county.  Voting early by mail due to expected absence from the county requires balloting materials be mailed to an address outside the county.

_____ 6)   The residence address on the statement of residence is not located in the political subdivision conducting the election.

_____ 7)   The mailing address on the application for ballot by mail did not match your voter registration address nor did the mailing address match any addresses provided on your statement of residence.  Since you did not indicate on your application for a ballot by mail that you were having your ballot mailed to a hospital, retirement center, long term care facility, nursing home, jail, or a relative, your ballot was rejected.

_____ 8)   The statement of residence was not included in the carrier envelope.

_____ 9)   No identification was included with your mail ballot.

_____ 10)   Other: _____

Signature of Early Voting Ballot Board Judge

__June 22, 2019__
Date

**Weisfeld, Rosalie
9206 Cliffwood Drive
Houston TX  77096**

1193

DO NOT REMOVE PERFORATED TABS. Moisten here and fold bottom to top to seal.

Prescribed by the Office of the Secretary of State of Texas
A6-15 12/17

**Application for Ballot by Mail**

1. Last Name (Please print information)
Weisfeld
First Name: Rosalie
Suffix (Jr., Sr., III, etc)
Middle Initial

2. Residence Address: See back of this application for instructions.
4801 North Street
City: McAllen   State: TX   ZIP Code: 78504

3. Mail my ballot to: if mailing address differs from residence address, please complete Box #7.
2516 Cliffwood Drive
City: Houston   State: TX   ZIP Code: 77096

4. Date of Birth (mm/dd/yyyy) (Optional)
1 0 1 0 1 9 5 6

Contact Information (Optional)*
Please list phone number and/or email address:
*Used in case our office has questions.
rosalie.weisfeld@gmail.com   956-793-5814

5. Reason for Voting by Mail:
☐ 65 years of age or older. (Complete Box #5a)
☐ Disability. (Complete Box #5a)
☑ Expected absence from the county. (Complete Box #6b and Box #8)
   You will not receive a ballot for the upcoming election only.
☐ Confinement in jail. (Complete Box #6a)
   You will receive a ballot for the upcoming election only.

5a. ONLY Voters, 65 Years of Age or Older or Voters with a Disability:
If applying for this election, select appropriate box.
If applying once for all elections in the calendar year, select "Annual Application."
   ☐ Annual Application

6a. ONLY Voters Absent from County or Voters Confined in Jail:
   **Primary Elections:**
   You must declare one political party to vote in a primary.
   ☐ Democratic Primary
   ☐ Republican Primary
   ☐ Any Resulting Runoff

   **Uniform and Other Elections:**
   ☐ May Election
   ☐ November Election
   ☐ Other: _____

6b. ONLY Voters Absent from County or Voters Confined in Jail:
You may only apply for a ballot by mail for one election, and any resulting runoff.
Please select the appropriate box.

   **Uniform and Other Elections:**
   ☑ May Election
   ☐ November Election
   ☐ Other: _____

   **Primary Elections:**
   You must declare one political party to vote in a primary.
   ☐ Democratic Primary
   ☐ Republican Primary
   ☑ Any Resulting Runoff

For Official Use Only
V.U.I. #, County Election Precinct #,
Statement of Residence etc.
105478350

7. If you are requesting that this ballot be mailed to a different address (other than residence), indicate where the ballot will be mailed. See reverse for instructions.
   ☐ Mailing Address as listed on my voter registration certificate
   ☐ Address of the jail
   ☐ Nursing home, assisted living facility, or long term care facility
   ☐ Relative, relationship _____
   ☐ Hospital
   ☑ Address outside the county (see Box #8)
   ☐ Retirement Center

8. If you selected "expected absence from the county," see reverse for instructions
   0 4 / 0 1 / 2 0 1 9  —  0 5 / 3 1 / 2 0 1 9
   Date you can begin to receive mail at this address    Date of return to residence address

9. Voters may submit a completed, signed, and scanned application to the Early Voting Clerk at
   _____  _____
   (early voting clerk's e-mail address)           (early voting clerk's fax)
   NOTE: If you fax or e-mail this form, please be aware that you must also mail this form to the early voting clerk within four business days. See "Submitting Application" on the back of this form for additional information.

10. "I certify that the information given in this application is true, and I understand that giving false information in this application is a crime."

   X Rosalie Weisfeld   Date: 3/07/2019

   SIGN HERE
   If applicant is unable to sign or make a mark in the presence of a witness, the witness shall complete Box #11.

   ☐ Printed Name of Witness/Assistant
   X _____
   City
   ZIP Code

11. See back for Witness and Assistant definitions.
   If applicant is unable to mark Box #10 and you are acting as a Witness to that fact, please check this box and sign below.   ☐
   If you assisted the applicant in completing this application in the applicant's presence or e-mailed/mailed or faxed the application on behalf of the applicant, please check this box as an Assistant and sign below.   ☐
   *If you are acting as Witness and Assistant, please check both boxes. Failure to complete this information is a Class A misdemeanor. If signature was witnessed or applicant was assisted in completing the application.

   X _____
   Signature of Witness/Assistant

   Street Address                Apt Number (if applicable)

   State

   ☐ Printed Name of Witness/Assistant

   Witness' Relationship to Applicant
   (Refer to instructions on back for clarification).

If someone helped you to complete this form or mails this form for you, then that person must complete the sections below.

Este formulario está disponible en Español. Para conseguir la versión en Español favor de llamar sin cargo al 1.800.252.8683 a la oficina del Secretario de Estado o la Secretaría de Votación por Adelantado.

DO NOT REMOVE PERFORATED TABS. Moisten here and fold bottom to top to seal.

1194

DO NOT REMOVE PERFORATED TABS. Moisten tab and fold top to bottom to seal.

FROM: Rosalie Weisfeld
c/o 9206 Cliffwood Drive
Houston, Texas 77096

AFFIX FIRST CLASS POSTAGE

OFFICIAL ELECTION MAIL
Authorized by the U.S. Postal Service

AFFIX LABEL HERE OR ADDRESS

TO: EARLY VOTING CLERK, Perla Lara
P.O. Box 220
McAllen, Texas 78505-0220

City Secretary's Office
Received
Date 4/3/[illegible]

## Instructions for Application for Ballot by Mail

**Residence Address** - Give full address as shown on your voter registration certificate. If you have moved within the county but not yet changed your voter registration address with the voter registrar, indicate your new residence address.

**Mail Ballot To** - Give full address where you wish to have ballot mailed, if the address is different from your residence address.

**Mailing Ballot to a Different Address** - Your ballot must be mailed to your home where you live or to your mailing address on your voter registration certificate. There are some exceptions that allow you to have your ballot mailed to a different location as specified below.

| Reason for voting by mail | Location to mail ballot |
|---|---|
| 65 or disabled | Nursing home, assisted living/retirement center, relative, hospital |
| In jail | Address of jail or relative |
| Absent from county | Address located outside of county |

**Expected Absence from County** - If you chose expected absence from county, you must expect to be absent from the county on election day and during the hours of early voting in person or for the remainder of the early voting period after you submit your application. Your ballot must be mailed to an address outside the county. Important: Give date you can begin to receive mail at the address given.

**Annual Application** - If you are 65 years of age or older, or disabled you may apply to receive all ballots by mail for a calendar year. If you do not select any elections in Box 6a, your application will be considered an Annual Application. If you submit an annual application for a ballot by mail, your application may be forwarded to other entities holding elections where you are a qualified voter. This means that you may receive a ballot for those elections in addition to the ballot(s) you requested with this application.

### Submitting Application

**1. Sign and date your application** - If unable to sign, please go to Witness/Address boxes (11 on reverse) and have a person witness your mark. Witness/Assistant instructions follow below.

**2. Deliver to Early Voting Clerk** - You may submit your application via these methods:

In Person: Only the applicant may submit their application in person to the Early Voting Clerk until the early voting period begins. However, after the early voting period begins for an election, the applicant may only submit their application via mail, common contract carrier, fax, or e-mail.

By Mail: You may mail your application via the U.S. Postal Service.

By Common Contract Carrier: You may submit via a common or contract carrier which is a bona fide, for profit carrier.

By Fax: You may fax your application to the Early Voting Clerk. Please contact your Early Voting Clerk or the Secretary of State's Office for fax numbers.

By E-Mail: You may e-mail a signed, scanned image of your application to the Early Voting Clerk. Please contact your Early Voting Clerk or the Secretary of State's Office for e-mail addresses.

**IF YOU FAX OR E-MAIL YOUR APPLICATION TO THE EARLY VOTING CLERK, YOU MUST ALSO MAIL THE APPLICATION SO THAT THE CLERK RECEIVES IT NO LATER THAN THE FOURTH BUSINESS DAY AFTER THE DAY THE CLERK RECEIVED YOUR FAXED OR EMAILED APPLICATION. If you fax or e-mail your application by the deadline noted below, your application will be considered complete and timely as long as the original is received by the early voting clerk by the fourth business day after it was submitted by fax or e-mail.**

### Deadline

Your application must be received by the early voting clerk of the local entity conducting the election not later than the 11th day before election day. If the 11th day is a weekend or holiday, the deadline is the first preceding business day. You may submit an application throughout the calendar year, beginning January 1. Please remember that the application must be received not later than the 11th day before the first election in which you seek to vote by mail.

If you submit an Annual Application for Ballot by Mail within 60 days before an election that takes place in the following calendar year, your application will be valid for any election that takes place in the following calendar year, regardless of the fact that your application was submitted prior to the end of the preceding calendar year. This applies to Annual Applications only and not to a regular application for ballot by mail.

### Witness/Assistant Section

**Witness:** If you are unable to sign your name (due to a physical disability or illiteracy), the application may be signed at Box #11 for you by a Witness. You must affix your mark to the application in Box #10 or, if you are unable to make a mark, then the Witness must check the appropriate box in 11 indicating the inability to make a mark. The Witness must state his/her name in printed form and indicate his/her relationship to you or, if unrelated, state that fact. The Witness must sign and provide his or her printed name and residence address. Unless the Witness is a close relative of the voter (parent, grandparent, spouse, child or sibling), it is a Class B misdemeanor for a person to witness more than one application for ballot by mail.

**Assistant:** If a person (other than a close relative or person registered to vote at the same address) assists you in completing this application in your presence or mails/faxes/e-mails this application on your behalf, then that person must complete Box #11. The Assistant must sign, provide his or her printed name, and his or her residence address. A person commits a Class A misdemeanor if the person provides assistance without providing the information described above unless a close relative or registered at your address.

If you have further questions or need additional assistance, please contact your Early Voting Clerk or The Secretary of State's office at 1-800-252-8683 or www.sos.state.tx.us.

Print

Reset

2

AWS-42
Requerido por el Secretario de Estado
Frac. 87.0431, Código Electoral
3/07

## AVISO DEL RECHAZO DE UNA PAPELETA ELECTORAL

Por medio de éste se le notifica que la papeleta electoral que usted entregó en las elecciones **22 de Junio, 2019** fue rechazada por el Consejo de Votación por Adelantado y no fue incluido en el conteo final.

Nombre del elector _Rosas, Jesus_
VUID de inscripción electoral número _105390 7380_

La razón del rechazo fue (a continuación indique las razones):

_____ 1) La constancia que aparece en el sobre de entrega no se firmó en forma apropiada.
   _____ Le falta su firma o marca.
   _____ El testigo no anotó en el sobre que Ud. no puede hacer su marca.
   _____ Falta el nombre del testigo o la persona quien le ayudó en letras de molde.
   _____ Falta la firma del testigo o de la persona quien le ayudó votar.
   _____ Falta el domicilio del testigo o el de la persona quien le ayudó votar.

✓ 2) Un análisis de las firmas que aparecen en la solicitud de una papeleta postal y el sobre de entrega indica que éstas no son la letra de la misma persona.

_____ 3) De acuerdo a la ley, la razón dada en la solicitud de una papeleta postal no lo califica para poder votar por correo.

_____ 4) Las actas del registro electoral indican que en la fecha en que celebraron estas elecciones, usted no estaba inscrito como votante.

_____ 5) El domicilio al cual se envió la papeleta está ubicado dentro de este condado. Sólo aquellas personas que anticipan estar fuera del condado pueden votar por anticipado y por correo, por esta razón la papeleta electorales se tiene que enviar a un domicilio ubicado fuera del condado.

_____ 6) El domicilio indicado en la solicitud de una papeleta postal no queda dentro del área geográfica de la entidad política que efectúa estas elecciones.

_____ 7) El domicilio indicado en la solicitud de una papeleta postal no es igual al indicado en: la constancia de domicilio permanente ni su inscripción electoral ni es la dirección postal indicada en su solicitud de inscripción. Además, usted no indicó que su papeleta debería enviarse a un hospital, centro de jubilación, centro de cuidados médicos a largo plazo, centro de enfermería o el hogar de algún familiar.

_____ 8) La constancia de domicilio permanente no vino incluida en el sobre de entrega.

_____ 9) No incluyó ninguna identificación con su boleta por correo.

_____ 10) Otra: _____

Firma del Juez del Consejo Administrativo de
las Papeletas de Votación por Adelantado

**22 de Junio, 2019**
Fecha

**Rosas, Jesus Lucio**
**315 N. 22nd Street**
**McAllen TX  78501-6930**

AW5-42
Prescribed by Secretary of State
Sec. 87.0431, Texas Election Code
3/07

## NOTICE OF REJECTED BALLOT

This is to serve as notice that your ballot for the **June 22, 2019** Election was rejected by the early voting ballot board and was not counted.

Name of Voter  Rosas, Jesus

VUID Number  10539073380

Reason for Rejection: (Check As Appropriate)

1)    Certificate on carrier envelope was not properly executed.
      _____ You failed to sign your signature or make your mark.
      _____ The witness failed to indicate on the envelope that you could not make a mark.
      _____ The assistant or witness failed to print their name.
      _____ The assistant or witness failed to sign their name.
      _____ The residence address of the assistant or witness was not given.

✓    2)    It was determined that the signature on the application for ballot by mail and carrier envelope was not signed by the same person.

3)    Application for ballot by mail did not state a legal ground for voting by mail.

4)    Voter registration records indicated you did not have an effective registration for this election.

5)    Address to which ballot was mailed was not outside the county. Voting early by mail due to expected absence from the county requires balloting materials be mailed to an address outside the county.

6)    The residence address on the statement of residence is not located in the political subdivision conducting the election.

7)    The mailing address on the application for ballot by mail did not match your voter registration address nor did the mailing address match any addresses provided on your statement of residence. Since you did not indicate on your application for a ballot by mail that you were having your ballot mailed to a hospital, retirement center, long term care facility, nursing home, jail, or a relative, your ballot was rejected.

8)    The statement of residence was not included in the carrier envelope.

9)    No identification was included with your mail ballot.

10)    Other:

Signature of Early Voting Ballot Board Judge

**June 22, 2019**

Date

▼ FOLD OVER HERE AND SEAL ▼

# APPLICATION FOR BALLOT BY MAIL
(Solicitud Para Recibir Una Boleta Por Correo)

For Official Use Only
VUID: 1053907380  PCT: ____

**Last Name**
Rosas

**Suffix**

**First Name**
Jesus

**Middle Initial**
Lucio

3/9/1950

## ADDRESS AT WHICH VOTER IS REGISTERED (DIRECCION DE RESIDENCIADE INSCRIPCION COMO VOTANTE)

**Street Address**
315 N 22nd St

**City**
McAllen

**State**
TX

**ZIP**
78501-6930

I am over 65 years of age and requesting an Annual Ballot By Mail to recieve a ballot or all elections in 2019, including local elections and the November 2019 General Election. Mail my ballot to the address indicated above (unless noted otherwise below.)

Signature of applicant. I certify that the information given in this application is true and I understand that giving false information in this application is a crim. Certifico que la información que se proporciona mediante esta solicitud es cierta y entiendo que es delito dar información falsa

**OPTIONAL: IF YOU ARE NOT ABLE TO RECEIVE YOUR BALLOT AT YOUR REGISTRATION ADDRESS (ABOVE), YOU MAY HAVE YOUR BALLOT MAILED TO AN ALTERNATE ADDRESS**

**STREET ADDRESS**

**Check One of these 4 choices:**
☐ NURSING HOME, ASSISTED LIVING OR LONG TERM CARE FACILITY
☐ HOSPITAL
☐ RETIREMENT CENTER
☐ RELATIVE, RELATIONSHIP

**CITY**

**STATE**

**ZIP**

▼ DO NOT TEAR PERFORATED TAB. FOLD OVER BOTTOM TO TOP AND SEAL WITH TAPE ▼

198

# RETURN YOUR OFFICIAL BALLOT REQUEST TODAY.

## 1
### Sign this personalized vote-by-mail ballot request
Firma tu boleta personalizada
De votacío por correo

## 2
### Detach, fold and seal your ballot request
Despega, dobla y sella tu boleta

## 3
### Place a 49 cent stamp on your ballot request and drop it in the mail today
Pon un timbre postal de
49 centavos en tu boleta y envia hoy.

If you have questions or need additional assistance please contact 956-221-0084

**To Early Voting Clerk**
**Perla Lara**
**PO Box 220/1300 Houston Ave.**
**McAllen, TX 78505-0220**

OFFICIAL
ELECTION MAIL™
Authorized by the U.S. Postal Service

FOREVER / USA

City Secretary's Office
Received

Date 6/3/19

RECEIVED
JUN 03 2019
CITY OF McALLEN
SECRETARY'S CENTER

1199

AWS-42
Requerido por el Secretario de Estado
Frac. 87.0431, Código Electoral
3/07

## AVISO DEL RECHAZO DE UNA PAPELETA ELECTORAL

Por medio de éste se le notifica que la papeleta electoral que usted entregó en las elecciones **22 de Junio, 2019** fue rechazada por el Consejo de Votación por Adelantado y no fue incluido en el conteo final.

Nombre del elector _Rosas, Jesus_
VUID de inscripción electoral número _105390 7380_

La razón del rechazo fue (a continuación indique las razones):

____ 1) La constancia que aparece en el sobre de entrega no se firmó en forma apropiada.
     ____ Le falta su firma o marca.
     ____ El testigo no anotó en el sobre que Ud. no puede hacer su marca.
     ____ Falta el nombre del testigo o la persona quien le ayudó en letras de molde.
     ____ Falta la firma del testigo o de la persona quien le ayudó votar.
     ____ Falta el domicilio del testigo o el de la persona quien le ayudó votar.

✓ 2) Un análisis de las firmas que aparecen en la solicitud de una papeleta postal y el sobre de entrega indica que éstas no son la letra de la misma persona.

____ 3) De acuerdo a la ley, la razón dada en la solicitud de una papeleta postal no lo califica para poder votar por correo.

____ 4) Las actas del registro electoral indican que en la fecha en que celebraron estas elecciones, usted no estaba inscrito como votante.

____ 5) El domicilio al cual se envió la papeleta está ubicado dentro de este condado. Sólo aquellas personas que anticipan estar fuera del condado pueden votar por anticipado y por correo, por esta razón la papeleta electorales se tiene que enviar a un domicilio ubicado fuera del condado.

____ 6) El domicilio indicado en la solicitud de una papeleta postal no queda dentro del área geográfica de la entidad política que efectúa estas elecciones.

____ 7) El domicilio indicado en la solicitud de una papeleta postal no es igual al indicado en: la constancia de domicilio permanente ni su inscripción electoral ni es la dirección postal indicada en su solicitud de inscripción. Además, usted no indicó que su papeleta debería enviarse a un hospital, centro de jubilación, centro de cuidados médicos a largo plazo, centro de enfermería o el hogar de algún familiar.

____ 8) La constancia de domicilio permanente no vino incluida en el sobre de entrega.

____ 9) No incluyó ninguna identificación con su boleta por correo.

____ 10) Otra: _____

Firma del Juez del Consejo Administrativo de
las Papeletas de Votación por Adelantado

**22 de Junio, 2019**
Fecha

**Rosas, Jesus Lucio
315 N. 22nd Street
McAllen TX  78501-6930**

AWS-42
Prescribed by Secretary of State
Sec. 87.0431, Texas Election Code
3/07

## NOTICE OF REJECTED BALLOT

This is to serve as notice that your ballot for the ___**June 22, 2019**___ Election was rejected by the early voting ballot board and was not counted.

Name of Voter _Rosas   Jesus_____

VUID Number _1053902380_ ⊕_____

Reason for Rejection: (Check As Appropriate)

_____    1)    Certificate on carrier envelope was not properly executed.

 _____ You failed to sign your signature or make your mark.

 _____ The witness failed to indicate on the envelope that you could not make a mark.

 _____ The assistant or witness failed to print their name.

 _____ The assistant or witness failed to sign their name.

 _____ The residence address of the assistant or witness was not given.

✓    2)    It was determined that the signature on the application for ballot by mail and carrier envelope was not signed by the same person.

_____    3)    Application for ballot by mail did not state a legal ground for voting by mail.

_____    4)    Voter registration records indicated you did not have an effective registration for this election.

_____    5)    Address to which ballot was mailed was not outside the county. Voting early by mail due to expected absence from the county requires balloting materials be mailed to an address outside the county.

_____    6)    The residence address on the statement of residence is not located in the political subdivision conducting the election.

_____    7)    The mailing address on the application for ballot by mail did not match your voter registration address nor did the mailing address match any addresses provided on your statement of residence. Since you did not indicate on your application for a ballot by mail that you were having your ballot mailed to a hospital, retirement center, long term care facility, nursing home, jail, or a relative, your ballot was rejected.

_____    8)    The statement of residence was not included in the carrier envelope.

_____    9)    No identification was included with your mail ballot.

_____    10)    Other:

_____

Signature of Early Voting Ballot Board Judge

**June 22, 2019**
_____
Date

▼ FOLD OVER HERE AND SEAL ▼

# APPLICATION FOR BALLOT BY MAIL
## (Solicitud Para Recibir Una Boleta Por Correo)

For Official Use Only

VUID: 1053907380

PCT:

**Last Name**
Rosas

**Suffix**

**First Name**
Jesus

**Middle Initial**
Lucio

### ADDRESS AT WHICH VOTER IS REGISTERED (DIRECCION DE RESIDENCIA DE INSCRIPCION COMO VOTANTE)

**Street Address**
315 N 22nd St

**City**
McAllen

**State**
TX

**ZIP**
78501-6930

3/9/1950

☐ I am over 65 years of age and requesting an Annual Ballot By Mail to recieve a ballot or all elections in 2019, including local elections and the November 2019 General Election. Mail my ballot to the address indicated above (unless noted otherwise below.)

X _____
Signature of applicant. I certify that the information given in this application is true and I understand that giving false information in this application is a crim. Certifico que la información que se proporciona mediante esta solicitud es cierta y entiendo que es delito dar información falsa

**OPTIONAL: IF YOU ARE NOT ABLE TO RECEIVE YOUR BALLOT AT YOUR REGISTRATION ADDRESS (ABOVE), YOU MAY HAVE YOUR BALLOT MAILED TO AN ALTERNATE ADDRESS**

| Check One of these 4 choices: | STREET ADDRESS | | |
|---|---|---|---|
| ☐ NURSING HOME, ASSISTED LIVING OR LONG TERM CARE FACILITY | | | |
| ☐ HOSPITAL | CITY | STATE | ZIP |
| ☐ RETIREMENT CENTER | | | |
| ☐ RELATIVE, RELATIONSHIP _____ | | | |

▼ DO NOT TEAR PERFORATED TAB. FOLD OVER BOTTOM TO TOP AND SEAL WITH TAPE ▼

RETURN YOUR OFFICIAL BALLOT REQUEST TODAY.

**1**

Sign this personalized
vote-by-mail ballot request

Firma tu boleta personalizada
De votacío por correo

**2**

Detach, fold and seal
your ballot request

Despega, dobla y sella tu boleta

**3**

Place a 49 cent stamp on
your ballot request and
drop it in the mail today

Pon un timbre postal de
49 centavos en tu boleta y envía hoy.

If you have questions or need additional assistance please contact 956-221-0084

To Early Voting Clerk
Perla Lara
PO Box 220/1300 Houston Ave.
McAllen, TX 78505-0220

City Secretary's Office
Received

Date 6/3/19

RECEIVED
JUN 03 2019
CITY OF McALLEN
CITY SECRETARY CENTER

OFFICIAL
ELECTION MAIL
Authorized by the U.S. Postal Service



FOREVER / USA

1203

AW5-42
Prescribed by Secretary of State
Sec. 87.0431, Texas Election Code
3/07

## NOTICE OF REJECTED BALLOT

This is to serve as notice that your ballot for the __**June 22, 2019**__ Election was rejected by the early voting ballot board and was not counted.

Name of Voter _Guerrero, Maria G._
VUID Number _1054297743_

Reason for Rejection: (Check As Appropriate)

_____ 1) Certificate on carrier envelope was not properly executed.
_____ You failed to sign your signature or make your mark.
_____ The witness failed to indicate on the envelope that you could not make a mark.
_____ The assistant or witness failed to print their name.
_____ The assistant or witness failed to sign their name.
_____ The residence address of the assistant or witness was not given.

___✓___ 2) It was determined that the signature on the application for ballot by mail and carrier envelope was not signed by the same person.

_____ 3) Application for ballot by mail did not state a legal ground for voting by mail.

_____ 4) Voter registration records indicated you did not have an effective registration for this election.

_____ 5) Address to which ballot was mailed was not outside the county.  Voting early by mail due to expected absence from the county requires balloting materials be mailed to an address outside the county.

_____ 6) The residence address on the statement of residence is not located in the political subdivision conducting the election.

_____ 7) The mailing address on the application for ballot by mail did not match your voter registration address nor did the mailing address match any addresses provided on your statement of residence.  Since you did not indicate on your application for a ballot by mail that you were having your ballot mailed to a hospital, retirement center, long term care facility, nursing home, jail, or a relative, your ballot was rejected.

_____ 8) The statement of residence was not included in the carrier envelope.

_____ 9) No identification was included with your mail ballot.

_____ 10) Other:

_____
Signature of Early Voting Ballot Board Judge

__**June 22, 2019**__
Date

**Guerrero, Maria G.**
**2223 Date Palm Ave.**
**McAllen TX  78501**

1204

AWS-42
Requerido por el Secretario de Estado
Frac. 87.0431, Código Electoral
3/07

## AVISO DEL RECHAZO DE UNA PAPELETA ELECTORAL

Por medio de éste se le notifica que la papeleta electoral que usted entregó en las elecciones **22 de Junio, 2019** fue rechazada por el Consejo de Votación por Adelantado y no fue incluido en el conteo final.

Nombre del elector _Guerrero, Maria G._
VUID de inscripción electoral número _1054297743_

La razón del rechazo fue (a continuación indique las razones):

1) La constancia que aparece en el sobre de entrega no se firmó en forma apropiada.
   _____ Le falta su firma o marca.
   _____ El testigo no anotó en el sobre que Ud. no puede hacer su marca.
   _____ Falta el nombre del testigo o la persona quien le ayudó en letras de molde.
   _____ Falta la firma del testigo o de la persona quien le ayudó votar.
   _____ Falta el domicilio del testigo o el de la persona quien le ayudó votar.

✓ 2) Un análisis de las firmas que aparecen en la solicitud de una papeleta postal y el sobre de entrega indica que éstas no son la letra de la misma persona.

3) De acuerdo a la ley, la razón dada en la solicitud de una papeleta postal no lo califica para poder votar por correo.

4) Las actas del registro electoral indican que en la fecha en que celebraron estas elecciones, usted no estaba inscrito como votante.

5) El domicilio al cual se envió la papeleta está ubicado dentro de este condado. Sólo aquellas personas que anticipan estar fuera del condado pueden votar por anticipado y por correo, por esta razón la papeleta electorales se tiene que enviar a un domicilio ubicado fuera del condado.

6) El domicilio indicado en la solicitud de una papeleta postal no queda dentro del área geográfica de la entidad política que efectúa estas elecciones.

7) El domicilio indicado en la solicitud de una papeleta postal no es igual al indicado en: la constancia de domicilio permanente ni su inscripción electoral ni es la dirección postal indicada en su solicitud de inscripción. Además, usted no indicó que su papeleta debería enviarse a un hospital, centro de jubilación, centro de cuidados médicos a largo plazo, centro de enfermería o el hogar de algún familiar.

8) La constancia de domicilio permanente no vino incluida en el sobre de entrega.

9) No incluyó ninguna identificación con su boleta por correo.

10) Otra: _____

_____
Firma del Juez del Consejo Administrativo de
las Papeletas de Votación por Adelantado

**22 de Junio, 2019**
Fecha

1205

DO NOT REMOVE PERFORATED TABS. Moisten here and fold bottom to top to seal.

DO NOT REMOVE PERFORATED TABS. Moisten here and fold bottom to top to seal.

Prescribed by the Office of the Secretary of State of Texas
AG-15 12/17

For Official Use Only
VUID #, County Election Precinct #,
Statement of Residence, etc.

## Application for Ballot by Mail

**1.** Last Name (Please print information): Guerrero
Suffix (Jr., Sr., III, etc.)
First Name: Maria
Middle Initial: G

**2.** Residence Address: See back of this application for instructions.
2223 Date Palm Ave
City: McAllen
State: TX
ZIP Code: 78501

**3.** Mail my ballot to: If mailing address differs from residence address, please complete Box # 7.
City
State
ZIP Code

**4.** Date of Birth (mm/dd/yyyy) (Optional): 0 4 / 1 7 / 1 9 5 4

**5.** Reason for Voting by Mail:
- ☒ 65 years of age or older. (Complete Box #6a)
- ☐ Disability. (Complete Box #6a)
- ☐ Expected absence from the county. (Complete Box #6b and Box #8) You will receive a ballot for the upcoming election only.
- ☐ Confinement in Jail. (Complete Box #6b) You will receive a ballot for the upcoming election only.

**6a.** ONLY Voters 65 Years of Age or Older or Voters with a Disability:
If applying for one election, select appropriate box.
"If applying once for elections in the calendar year, select "Annual Application."
☒ Annual Application

Uniform and Other Elections:
Primary Elections: You must declare one political party to vote in a primary.
- ☐ May Election — ☒ Democratic Primary
- ☐ November Election — ☐ Republican Primary
- ☒ Other _Runoff_
- ☐ Any Resulting Runoff

**6b.** ONLY Voters Absent from County or Voters Confined in Jail:
You may only apply for a ballot by mail for one election, and any resulting runoff. Please select the appropriate box.

Uniform and Other Elections:
Primary Elections: You must declare one political party to vote in a primary.
- ☐ May Election — ☐ Democratic Primary
- ☐ November Election — ☐ Republican Primary
- ☐ Other _____
- ☐ Any Resulting Runoff

**7.** Contact Information (Optional)
Please list phone number and/or email address:
* Used in case our office has questions.

If you are requesting this ballot be mailed to a different address (other than residence), indicate where the ballot will be mailed. See reverse for instructions.
- ☐ Mailing Address as listed on my voter registration certificate
- ☐ Nursing home, assisted living facility, or long term care facility
- ☐ Hospital
- ☐ Retirement Center
- ☐ Address of the Jail
- ☐ Relative; relationship _____
- ☐ Address outside the county (see Box #8)

**8.** If you selected "expected absence from the county," see reverse for instructions
Date of return to residence address
Date you can begin to receive mail at this address

**9.** Voters may submit a completed, signed, and scanned application to the Early Voting Clerk at:
plara@mcallen.net
(early voting clerk's e-mail address)
(956) 681-1029
(early voting clerk's fax)
NOTE: If you fax or e-mail this form, please be aware that you must also mail the form to the early voting clerk within four business days. See "Submitting Application" on the back of this form for additional information.

**10.** I certify that the information given in this application is true, and I understand that giving false information in this application is a crime.

X _Maria G. Guerrero_    Date _06-01-19_

SIGN HERE
If applicant is unable to sign or make a mark in the presence of a witness, the witness shall complete Box #11.

If someone helped you to complete this form for you, then that person must complete the sections below.

X _Elva Guerrero_
Printed Name of Witness/Assistant
MISSION
City _78573_
ZIP Code

Witness' Relationship to Applicant
(Refer to Instructions on back for clarification)
_AUNT_

**11.** See back for Witness and Assistant definitions.
If applicant is unable to mark Box #10 and you are acting as a Witness to that fact, please check this box and sign below. ☐

If you assisted the applicant in completing the application in the applicant's presence or e-mailed/mailed or faxed the application on behalf of the applicant, please check this box as an Assistant and sign below. ☒
Failure to complete this application is a Class A misdemeanor if signature was witnessed or applicant was assisted in completing the application.

X _Elva Guerrero_
Signature of Witness/Assistant
7012 Campbell Drive Mission TX
Street Address
TX   78573
State   Apt Number (if applicable)

Este formulario está disponible en Español. Para conseguir la versión en Español favor de llamar sin cargo al 1.800.252.8683 a la oficina del Secretario de Estado o la Secretaría de Votación por Adelantado.

1054297743

41754

1206

## Instructions for Application for Ballot by Mail

**Residence Address** - Give full address as shown on your voter registration certificate. If you have moved within the county but not yet changed your voter registration address with the voter registrar, indicate your new residence address.

**Mail Ballot To** - Give full address where you wish to have ballot mailed, if the address is different from your residence address.

**Mailing Ballot to a Different Address** - Your ballot must be mailed to your home where you live or to your mailing address on your voter registration certificate. There are some exceptions that allow you to have your ballot mailed to a different location as specified below.

| Reason for voting by mail | Location to mail ballot |
|---|---|
| 65 or disabled | Nursing home, assisted living/retirement center, relative, hospital |
| In jail | Address of jail or relative |
| Absent from county | Address located outside of county |

**Expected Absence from County** - If you chose expected absence from county, you must expect to be absent from the county on election day and during the hours of early voting in person or for the remainder of the early voting period after you submit your application. **Your ballot must be mailed to an address outside the county.** Important: Give date you can begin to receive mail at the address given.

**Annual Application** - If you are 65 years of age or older, or disabled you may apply to receive all ballots by mail for a calendar year. If you do not select any elections in Box 6a, your application will be considered an Annual Application. If you submit an annual application for a ballot by mail, your application may be forwarded to other entities holding elections where you are a qualified voter. This means that you may receive a ballot for those elections in addition to the ballot(s) you requested with this application.

### Submitting Application

**1. Sign and date your application** - If unable to sign, please go to Witness/Address boxes (11 on reverse) and have a person witness your mark. Witness/Assistant instructions follow below.

**2. Deliver to Early Voting Clerk** - You may submit your application via these methods:

In Person: Only the applicant may submit their application in person to the Early Voting Clerk **until** the early voting period begins. However, after the early voting period begins for an election, the applicant may only submit their application via mail, common contract carrier, fax, or e-mail.

By Mail: You may mail your application via the U.S. Postal Service.

By Common Contract Carrier: You may submit via a common or contract carrier which is a bona fide, for profit carrier.

By Fax: You may fax your application to the Early Voting Clerk. Please contact your Early Voting Clerk or the Secretary of State's Office for fax numbers.

By E-Mail: You may e-mail a signed, scanned image of your application to the Early Voting Clerk. Please contact your Early Voting Clerk or the Secretary of State's Office for e-mail addresses.

**IF YOU FAX OR E-MAIL YOUR APPLICATION TO THE EARLY VOTING CLERK, YOU MUST ALSO MAIL THE APPLICATION SO THAT THE CLERK RECEIVES IT NO LATER THAN THE FOURTH BUSINESS DAY AFTER THE DAY THE CLERK RECEIVED YOUR FAXED OR EMAILED APPLICATION. If you fax or e-mail your application by the deadline noted below, your application will be considered complete and timely as long as the original is received by the early voting clerk by the fourth business day after it was submitted by fax or e-mail.**

### Deadline

Your application must be received by the early voting clerk of the local entity conducting the election not later than the 11th day before election day. If the 11th day is a weekend or holiday, the deadline is the first preceding business day. You may submit an application throughout the calendar year, beginning January 1. Please remember that the application must be received not later than the 11th day before the first election in which you seek to vote by mail.

If you submit an Annual Application for Ballot by Mail within 60 days before an election that takes place in the following calendar year, your application will be valid for any election that takes place in the following calendar year, regardless of the fact that your application was submitted prior to the end of the preceding calendar year. This applies to Annual Applications only and not to a regular application for ballot by mail.

### Witness/Assistant Section

**Witness:** If you are unable to sign your name (due to a physical disability or illiteracy), the application may be signed at Box #11 for you by a Witness. You must affix your mark to the application in Box #10 or, if you are unable to make a mark, then the Witness must check the appropriate box in 11 indicating the inability to make a mark. The Witness must state his/her name in printed form and indicate his/her relationship to you or, if unrelated, state that fact. The Witness must sign and provide his or her printed name and residence address. Unless the Witness is a close relative of the voter (parent, grandparent, spouse, child or sibling), it is a Class B misdemeanor for a person to witness more than one application for ballot by mail.

**Assistant:** If a person (other than a close relative or person registered to vote at the same address) assists you in completing this application in your presence or mails/faxes/e-mails this application on your behalf, then that person must complete Box #11. The Assistant must sign, provide his or her printed name, and his or her residence address. A person commits a Class A misdemeanor if the person provides assistance without providing the information described above unless a close relative or registered at your address.

**If you have further questions or need additional assistance, please contact your Early Voting Clerk or The Secretary of State's office at 1-800-252-8683 or www.sos.state.tx.us.**

Reset

DO NOT REMOVE PERFORATED TABS. Moisten tab and fold top to bottom to seal.

FROM: 2223 Date Palm
Mcallen TX
78501

FOREVER / USA

City Secretary's Office
Received
Date 6/5/19

OFFICIAL ELECTION MAIL — Authorized by the U.S. Postal Service

RECEIVED
JUN 05 2019
CITY OF McALLEN
MAIL CENTER

AFFIX LABEL HERE OR ADDRESS

TO: EARLY VOTING CLERK

PERLA LARA
P.O. BOX 220/1300 Houston Ave.
McAllen Texas 78505-0220

AW5-42
Prescribed by Secretary of State
Sec. 87.0431, Texas Election Code
3/07

## NOTICE OF REJECTED BALLOT

This is to serve as notice that your ballot for the _____ **June 22, 2019** _____ Election was rejected by the early voting ballot board and was not counted.

Name of Voter _MARIA REYNA_

VUID Number _105 3084263_

Reason for Rejection: (Check As Appropriate)

_____ 1) Certificate on carrier envelope was not properly executed.
   _____ You failed to sign your signature or make your mark.
   _____ The witness failed to indicate on the envelope that you could not make a mark.
   _____ The assistant or witness failed to print their name.
   _____ The assistant or witness failed to sign their name.
   _____ The residence address of the assistant or witness was not given.

✓ 2) It was determined that the signature on the application for ballot by mail and carrier envelope was not signed by the same person.

_____ 3) Application for ballot by mail did not state a legal ground for voting by mail.

_____ 4) Voter registration records indicated you did not have an effective registration for this election.

_____ 5) Address to which ballot was mailed was not outside the county. Voting early by mail due to expected absence from the county requires balloting materials be mailed to an address outside the county.

_____ 6) The residence address on the statement of residence is not located in the political subdivision conducting the election.

_____ 7) The mailing address on the application for ballot by mail did not match your voter registration address nor did the mailing address match any addresses provided on your statement of residence. Since you did not indicate on your application for a ballot by mail that you were having your ballot mailed to a hospital, retirement center, long term care facility, nursing home, jail, or a relative, your ballot was rejected.

_____ 8) The statement of residence was not included in the carrier envelope.

_____ 9) No identification was included with your mail ballot.

✓ 10) Other:

_Signature did not match._

_____
Signature of Early Voting Ballot Board Judge

**June 22, 2019**
Date

**Reyna, Maria
1916 Fir Ave.
McAllen  TX  78501-6978**

AW5-42
Requerido por el Secretario de Estado
Prac. 87.0431, Código Electoral
3/07

## AVISO DEL RECHAZO DE UNA PAPELETA ELECTORAL

Por medio de éste se le notifica que la papeleta electoral que usted entregó en las elecciones **22 de Junio, 2019** fue rechazada por el Consejo de Votación por Adelantado y no fue incluido en el conteo final.

Nombre del elector _____

VUID de inscripción electoral número _____

La razón del rechazo fue (a continuación indique las razones):

_____ 1) La constancia que aparece en el sobre de entrega no se firmó en forma apropiada.

          _____ Le falta su firma o marca.

          _____ El testigo no anotó en el sobre que Ud. no puede hacer su marca.

          _____ Falta el nombre del testigo o la persona quien le ayudó en letras de molde.

          _____ Falta la firma del testigo o de la persona quien le ayudó votar.

          _____ Falta el domicilio del testigo o el de la persona quien le ayudó votar.

_✓_ 2) Un análisis de las firmas que aparecen en la solicitud de una papeleta postal y el sobre de entrega indica que éstas no son la letra de la misma persona.

_____ 3) De acuerdo a la ley, la razón dada en la solicitud de una papeleta postal no lo califica para poder votar por correo.

_____ 4) Las actas del registro electoral indican que en la fecha en que celebraron estas elecciones, usted no estaba inscrito como votante.

_____ 5) El domicilio al cual se envió la papeleta está ubicado dentro de este condado. Sólo aquellas personas que anticipan estar fuera del condado pueden votar por anticipado y por correo, por esta razón la papeleta electorales se tiene que enviar a un domicilio ubicado fuera del condado.

_____ 6) El domicilio indicado en la solicitud de una papeleta postal no queda dentro del área geográfica de la entidad política que efectúa estas elecciones.

_____ 7) El domicilio indicado en la solicitud de una papeleta postal no es igual al indicado en: la constancia de domicilio permanente ni su inscripción electoral ni es la dirección postal indicada en su solicitud de inscripción. Además, usted no indicó que su papeleta deberá enviarse a un hospital, centro de jubilación, centro de cuidados médicos a largo plazo, centro de enfermería o el hogar de algún familiar.

_____ 8) La constancia de domicilio permanente no vino incluida en el sobre de entrega.

_____ 9) No incluyó ninguna identificación con su boleta por correo.

_____ 10) Otra: _____

_____
Firma del Juez del Consejo Administrativo de
las Papeletas de Votación por Adelantado

**22 de Junio, 2019**
Fecha

# APPLICATION FOR BALLOT BY MAIL
## (Solicitud Para Recibir Una Boleta Por Correo)

**For Official Use Only** 3601713

05308263 PCT: _____

VUID:

| Last Name | Suffix | First Name | Middle Initial |
|-----------|--------|-----------|----------------|
| Reyna | | Maria | de Jesus |

**ADDRESS AT WHICH VOTER IS REGISTERED (DIRECCION DE RESIDENCIA DE INSCRIPCIÓN COMO VOTANTE)**

**Street Address**
1916 Fir Ave

11/8/1942

| City | State | ZIP |
|------|-------|-----|
| McAllen | TX | 78501-6978 |

I am over 65 years of age and requesting an Annual Ballot By Mail to recieve a ballot or all elections in 2019, including local elections and the November 2019 General Election.
Mail my ballot to the address indicated above (unless otherwise below.)

X _Maria de Reyna_

Signature of applicant. I certify that the information given in this application is true and I understand that giving false information in this application is a crim. Certifico que la información que se proporciona mediante esta solicitud es cierta y entiendo que es delito dar información falsa

**OPTIONAL: IF YOU ARE NOT ABLE TO RECEIVE YOUR BALLOT AT YOUR REGISTRATION ADDRESS (ABOVE), YOU MAY HAVE YOUR BALLOT MAILED TO AN ALTERNATE ADDRESS**

| Check One of these 4 choices: | | STREET ADDRESS |
|---|---|---|
| ☐ NURSING HOME, ASSISTED LIVING OR LONG TERM CARE FACILITY | | 1916 Fir Ave |
| ☐ HOSPITAL | | |
| ☐ RETIREMENT CENTER | CITY McAllen | STATE Texas | ZIP 78501 |
| ☐ RELATIVE, RELATIONSHIP _____ | | |

▼ **DO NOT TEAR PERFORATED TAB. FOLD OVER BOTTOM TO TOP AND SEAL WITH TAPE** ▼

**RETURN YOUR OFFICIAL BALLOT REQUEST TODAY.**

**1**

Sign this personalized
vote-by-mail ballot request
Firma tu boleta personalizada
De votacio por correo

**2**

Detach, fold and seal
your ballot request
Despega, dobla y sella tu boleta

**3**

Place a 49 cent stamp on
your ballot request and
drop it in the mail today
Pon un timbre postal de
49 centavos en tu boleta y envia hoy.

If you have questions or need additional assistance please contact 956-221-0084

To Early Voting Clerk
Perla Lara
PO Box 220/1300 Houston Ave.
McAllen, TX 78505-0220

ELECTION MAIL
Authorized by the U.S. Postal Service™

78501

RECEIVED
JUN 03 2019
CITY OF McALLEN
MAIL CENTER

1211

AW5-42
Prescribed by Secretary of State
Sec. 87.0431, Texas Election Code
3/07

## NOTICE OF REJECTED BALLOT

This is to serve as notice that your ballot for the _____**June 22, 2019**_____ Election was rejected by the early voting ballot board and was not counted.

Name of Voter  Doris Smith

VUID Number  105353658

Reason for Rejection: (Check As Appropriate)

| | | |
|---|---|---|
| _____ | 1) | Certificate on carrier envelope was not properly executed. |
| | | _____ You failed to sign your signature or make your mark. |
| | | _____ The witness failed to indicate on the envelope that you could not make a mark. |
| | | _____ The assistant or witness failed to print their name. |
| | | _____ The assistant or witness failed to sign their name. |
| | | _____ The residence address of the assistant or witness was not given. |
| ✓ | 2) | It was determined that the signature on the application for ballot by mail and carrier envelope was not signed by the same person. |
| _____ | 3) | Application for ballot by mail did not state a legal ground for voting by mail. |
| _____ | 4) | Voter registration records indicated you did not have an effective registration for this election. |
| _____ | 5) | Address to which ballot was mailed was not outside the county. Voting early by mail due to expected absence from the county requires balloting materials be mailed to an address outside the county. |
| _____ | 6) | The residence address on the statement of residence is not located in the political subdivision conducting the election. |
| _____ | 7) | The mailing address on the application for ballot by mail did not match your voter registration address nor did the mailing address match any addresses provided on your statement of residence. Since you did not indicate on your application for a ballot by mail that you were having your ballot mailed to a hospital, retirement center, long term care facility, nursing home, jail, or a relative, your ballot was rejected. |
| _____ | 8) | The statement of residence was not included in the carrier envelope. |
| _____ | 9) | No identification was included with your mail ballot. |
| _____ | 10) | Other: |

_____

_____
Signature of Early Voting Ballot Board Judge

**June 22, 2019**
Date

**Smith, Doris
1517 Whitewin Ave.
McAllen TX  78501-3136**

AWS-42
Requerido por el Secretario de Estado
Frac. 87.0431, Código Electoral
3/07

## AVISO DEL RECHAZO DE UNA PAPELETA ELECTORAL

Por medio de éste se le notifica que la papeleta electoral que usted entregó en las elecciones **22 de Junio, 2019** fue rechazada por el Consejo de Votación por Adelantado y no fue incluido en el conteo final.

Nombre del elector _____

VUID de inscripción electoral número _____

La razón del rechazo fue (a continuación indique las razones):

_____    1)    La constancia que aparece en el sobre de entrega no se firmó en forma apropiada.
_____    Le falta su firma o marca.
_____    El testigo no anotó en el sobre que Ud. no puede hacer su marca.
_____    Falta el nombre del testigo o la persona quien le ayudó en letras de molde.
_____    Falta la firma del testigo o de la persona quien le ayudó votar.
_____    Falta el domicilio del testigo o el de la persona quien le ayudó votar.

✓    2)    Un análisis de las firmas que aparecen en la solicitud de una papeleta postal y el sobre de entrega indica que éstas no son la letra de la misma persona.

_____    3)    De acuerdo a la ley, la razón dada en la solicitud de una papeleta postal no lo califica para poder votar por correo.

_____    4)    Las actas del registro electoral indican que en la fecha en que celebraron estas elecciones, usted no estaba inscrito como votante.

_____    5)    El domicilio al cual se envió la papeleta está ubicado dentro de este condado.  Sólo aquellas personas que anticipan estar fuera del condado pueden votar por anticipado y por correo, por esta razón la papeleta electorales se tiene que enviar a un domicilio ubicado fuera del condado.

_____    6)    El domicilio indicado en la solicitud de una papeleta postal no queda dentro del área geográfica de la entidad política que efectúa estas elecciones.

_____    7)    El domicilio indicado en la solicitud de una papeleta postal no es igual al indicado en: la constancia de domicilio permanente ni su inscripción electoral ni es la dirección postal indicada en su solicitud de inscripción. Además, usted no indicó que su papeleta debería enviarse a un hospital, centro de jubilación, centro de cuidados médicos a largo plazo, centro de enfermería o el hogar de algún familiar.

_____    8)    La constancia de domicilio permanente no vino incluida en el sobre de entrega.

_____    9)    No incluyó ninguna identificación con su boleta por correo.

_____    10)    Otra: _____

Firma del Juez del Consejo Administrativo de .
las Papeletas de Votación por Adelantado

**22 de Junio, 2019**
Fecha

▼ FOLD OVER HERE AND SEAL ▼



mis

**APPLICATION FOR BALLOT BY MAIL.**
**(Solicitud Para Recibir Una Boleta Por Correo)**

For Official Use Only

VUID: 10535 36581 PCT: ___

**Last Name**
Smith

**Suffix**

**First Name**
Doris

**Middle Initial**
M.

**ADDRESS AT WHICH VOTER IS REGISTERED (DIRECCION DE RESIDENCIA DE INSCRIPCION COMO VOTANTE)**

**Street Address**
1517 Whitewing Ave

**City**
McAllen

**State**
TX

**ZIP**
78501-3136

12/00/1920

I am over 65 years of age and requesting an Annual Ballot By Mail to recieve a ballot or all elections in 2019, including local elections and the November 2019 General Election. Mail my ballot to the address indicated above (unless noted otherwise below.)

X _Doris M Smith_

Signature of applicant. I certify that the information given in this application is true and I understand that giving false information in this application is a crime. Certifico que la información que se proporciona mediante esta solicitud es cierta y entiendo que es delito dar información falsa

**OPTIONAL: IF YOU ARE NOT ABLE TO RECEIVE YOUR BALLOT AT YOUR REGISTRATION ADDRESS (ABOVE), YOU MAY HAVE YOUR BALLOT MAILED TO AN ALTERNATE ADDRESS**

**STREET ADDRESS**

**Check One**
**of these**
**4 choices:**

☐ NURSING HOME, ASSISTED LIVING OR LONG TERM CARE FACILITY
☐ HOSPITAL
☐ RETIREMENT CENTER
☐ RELATIVE, RELATIONSHIP

**CITY**

**STATE**

**ZIP**

▼ DO NOT TEAR PERFORATED TAB. FOLD OVER BOTTOM TO TOP AND SEAL WITH TAPE ▼

1214

RETURN YOUR OFFICIAL BALLOT REQUEST TODAY.

**1**
Sign this personalized
vote-by-mail ballot request
Firma tu boleta personalizada
De votacio por correo

**2**
Detach, fold and seal
your ballot request
Despega, dobla y sella tu boleta

**3**
Place a 49 cent stamp on
your ballot request and
drop it in the mail today
Pon un timbre postal de
49 centavos en tu boleta y envia hoy.

If you have questions or need additional assistance please contact 956-221-0084

Doris M. Smith
1517 Whitewing Ave.
McAllen, TX 78501-3136

City Secretary's Office
Received
Date 6/4/19

To Early Voting Clerk
Perla Lara
PO Box 220/1300 Houston Ave.
McAllen, TX 78505-0220



OFFICIAL ELECTION MAIL
Authorized by the U.S. Postal Service

RECEIVED
JUN 04 2019
CITY OF McALLEN
MAIL CENTER



PLACE 49¢ STAMP

1215

AW5-42
Requerido por el Secretario de Estado
Frac. 87.0431, Código Electoral
3/07

## AVISO DEL RECHAZO DE UNA PAPELETA ELECTORAL

Por medio de éste se le notifica que la papeleta electoral que usted entregó en las elecciones **22 de Junio, 2019** fue rechazada por el Consejo de Votación por Adelantado y no fue incluido en el conteo final.

Nombre del elector _____

VUID de inscripción electoral número _____

La razón del rechazo fue (a continuación indique las razones):

_____ 1) La constancia que aparece en el sobre de entrega no se firmó en forma apropiada.
          _____ Le falta su firma o marca.
          _____ El testigo no anotó en el sobre que Ud. no puede hacer su marca.
          _____ Falta el nombre del testigo o la persona quién le ayudó en letras de molde.
          _____ Falta la firma del testigo o de la persona quién le ayudó votar.
          _____ Falta el domicilio del testigo o el de la persona quien le ayudó votar.

✓ 2) Un análisis de las firmas que aparecen en la solicitud de una papeleta postal y el sobre de entrega indica que éstas no son la letra de la misma persona.

_____ 3) De acuerdo a la ley, la razón dada en la solicitud de una papeleta postal no lo califica para poder votar por correo.

_____ 4) Las actas del registro electoral indican que en la fecha en que celebraron estas elecciones, usted no estaba inscrito como votante.

_____ 5) El domicilio al cual se envió la papeleta está ubicado dentro de este condado. Sólo aquellas personas que anticipan estar fuera del condado pueden votar por anticipado y por correo, por esta razón la papeleta electorales se tiene que enviar a un domicilio ubicado fuera del condado.

_____ 6) El domicilio indicado en la solicitud de una papeleta postal no queda dentro del área geográfica de la entidad política que efectúa estas elecciones.

_____ 7) El domicilio indicado en la solicitud de una papeleta postal no es igual al indicado en: la constancia de domicilio permanente ni su inscripción electoral ni es la dirección postal indicada en su solicitud de inscripción. Además, usted no indicó que su papeleta debería enviarse a un hospital, centro de jubilación, centro de cuidados médicos a largo plazo, centro de enfermería o el hogar de algún familiar.

_____ 8) La constancia de domicilio permanente no vino incluida en el sobre de entrega.

_____ 9) No incluyó ninguna identificación con su boleta por correo.

_____ 10) Otra: _____

Firma del Juez del Consejo Administrativo de
las Papeletas de Votación por Adelantado

**22 de Junio, 2019**
Fecha

**Guzman, Leobardo
2200 W. Jackson Ave.
McAllen TX  78501-7245**

AW5-42
Prescribed by Secretary of State
Sec. 87.0431, Texas Election Code
3/07

## NOTICE OF REJECTED BALLOT

This is to serve as notice that your ballot for the ___**June 22, 2019**___ Election was rejected
by the early voting ballot board and was not counted.

Name of Voter _Leobardo Guzman_

VUID Number _1055270874_

Reason for Rejection: (Check As Appropriate)

|  |  |  |
|---|---|---|
| _____ | 1) | Certificate on carrier envelope was not properly executed. |
|  |  | _____ You failed to sign your signature or make your mark. |
|  |  | _____ The witness failed to indicate on the envelope that you could not make a mark. |
|  |  | _____ The assistant or witness failed to print their name. |
|  |  | _____ The assistant or witness failed to sign their name. |
|  |  | _____ The residence address of the assistant or witness was not given. |
| ✓ | 2) | It was determined that the signature on the application for ballot by mail and carrier envelope was not signed by the same person. |
| _____ | 3) | Application for ballot by mail did not state a legal ground for voting by mail. |
| _____ | 4) | Voter registration records indicated you did not have an effective registration for this election. |
| _____ | 5) | Address to which ballot was mailed was not outside the county.  Voting early by mail due to expected absence from the county requires balloting materials be mailed to an address outside the county. |
| _____ | 6) | The residence address on the statement of residence is not located in the political subdivision conducting the election. |
| _____ | 7) | The mailing address on the application for ballot by mail did not match your voter registration address nor did the mailing address match any addresses provided on your statement of residence.  Since you did not indicate on your application for a ballot by mail that you were having your ballot mailed to a hospital, retirement center, long term care facility, nursing home, jail, or a relative, your ballot was rejected. |
| _____ | 8) | The statement of residence was not included in the carrier envelope. |
| _____ | 9) | No identification was included with your mail ballot. |
| _____ | 10) | Other: |

_____
Signature of Early Voting Ballot Board Judge

**June 22, 2019**
Date

Guzman, Leobardo
2200 W. Jackson Ave.
McAllen TX  78501-7245

1217

▼ FOLD OVER HERE AND SEAL ▼

## APPLICATION FOR BALLOT BY MAIL
(Solicitud Para Recibir Una Boleta Por Correo)

**For Official Use Only**

VUID: 0552 70874

PCT:

| Last Name | Suffix | First Name | | Middle Initial |
|---|---|---|---|---|
| Guzman | | Leobardo | | Solano |

**ADDRESS AT WHICH VOTER IS REGISTERED (DIRECCION DE RESIDENCIADE INSCRIPCION COMO VOTANTE)**

**Street Address**

2200 W Jackson Ave

| City | State | ZIP |
|---|---|---|
| McAllen | TX | 78501-7245 |

I am over 65 years of age and requesting an Annual Ballot By Mail to recieve a ballot or all elections in 2019, including local elections and the November 2019 General Election. Mail my ballot to the address indicated above (unless noted otherwise below.)

1/18/1941

X _Leobardo Solano_

Signature of applicant. I certify that the information given in this application is true and I understand that giving false information in this application is a crim. Certifico que la información que se proporciona mediante esta solicitud es cierta y entiendo que es delito dar información falsa

**OPTIONAL: IF YOU ARE NOT ABLE TO RECEIVE YOUR BALLOT AT YOUR REGISTRATION ADDRESS (ABOVE), YOU MAY HAVE YOUR BALLOT MAILED TO AN ALTERNATE ADDRESS**

**STREET ADDRESS**

| Check One of these 4 choices: | ☐ NURSING HOME, ASSISTED LIVING OR LONG TERM CARE FACILITY |
|---|---|
| | ☐ HOSPITAL |
| | ☐ RETIREMENT CENTER |
| | ☐ RELATIVE, RELATIONSHIP _____ |

| CITY | STATE | ZIP |
|---|---|---|

1218

▼ DO NOT TEAR PERFORATED TAB. FOLD OVER BOTTOM TO TOP AND SEAL WITH TAPE ▼

# RETURN YOUR OFFICIAL BALLOT REQUEST TODAY.

## 1
### Sign this personalized vote-by-mail ballot request
Firma tu boleta personalizada de votacio por correo

## 2
### Detach, fold and seal your ballot request
Despega, dobla y sella tu boleta

## 3
### Place a 49 cent stamp on your ballot request and drop it in the mail today
Pon un timbre postal de 49 centavos en tu boleta y envia hoy.

If you have questions or need additional assistance please contact 956-221-0084



Leobardo Guzman
2220 U. Jackson Ave.
McAllen, TX 78501

City Secretary's Office
Received

Date 6/4/19

**To Early Voting Clerk**
**Perla Lara**
**PO Box 220/1300 Houston Ave.**
**McAllen, TX 78505-0220**





OFFICIAL ELECTION MAIL
Authorized by the U.S. Postal Service

RECEIVED
JUN 04 2019
CITY OF McALLEN
MAIL CENTER



PLACE 49¢ STAMP



1219

AW5-42
Reguerido por el Secretario de Estado
Frac. 87.0431, Código Electoral
3/07

## AVISO DEL RECHAZO DE UNA PAPELETA ELECTORAL

Por medio de éste se le notifica que la papeleta electoral que usted entregó en las elecciones **22 de Junio, 2019** fue rechazada por el Consejo de Votación por Adelantado y no fue incluido en el conteo final.

Nombre del elector *MARIANA LUNA*
VUID de inscripción electoral número *10533 148 43*

La razón del rechazo fue (a continuación indique las razones):

     1)   La constancia que aparece en el sobre de entrega no se firmó en forma apropiada.

        _____ Le falta su firma o marca.

        _____ El testigo no anotó en el sobre que Ud. no puede hacer su marca.

        _____ Falta el nombre del testigo o la persona quien le ayudó en letras de molde.

        _____ Falta la firma del testigo o de la persona quien le ayudó votar.

        _____ Falta el domicilio del testigo o el de la persona quien le ayudó votar.

✓    2)   Un análisis de las firmas que aparecen en la solicitud de una papeleta postal y el sobre de entrega indica que éstas no son la letra de la misma persona.

_____   3)   De acuerdo a la ley, la razón dada en la solicitud de una papeleta postal no lo califica para poder votar por correo.

_____   4)   Las actas del registro electoral indican que en la fecha en que celebraron estas elecciones, usted no estaba inscrito como votante.

_____   5)   El domicilio al cual se envió la papeleta está ubicado dentro de este condado. Sólo aquellas personas que anticipan estar fuera del condado pueden votar por anticipado y por correo, por esta razón la papeleta electorales se tiene que enviar a un domicilio ubicado fuera del condado.

      6)   El domicilio indicado en la solicitud de una papeleta postal no queda dentro del área geográfica de la entidad política que efectúa estas elecciones.

_____   7)   El domicilio indicado en la solicitud de una papeleta postal no es igual al indicado en: la constancia de domicilio permanente ni su inscripción electoral ni es la dirección postal indicada en su solicitud de inscripción. Además, usted no indicó que su papeleta debería enviarse a un hospital, centro de jubilación, centro de cuidados médicos a largo plazo, centro de enfermería o el hogar de algún familiar.

_____   8)   La constancia de domicilio permanente no vino incluida en el sobre de entrega.

_____   9)   No incluyó ninguna identificación con su boleta por correo.

_____   10)   Otra: _____

_____
Firma del Juez del Consejo Administrativo de
las Papeletas de Votación por Adelantado

**22 de Junio, 2019**
Fecha

AW5-42
Prescribed by Secretary of State
Sec. 87.0431, Texas Election Code
3/07

## NOTICE OF REJECTED BALLOT

This is to serve as notice that your ballot for the _____**June 22, 2019**_____ Election was rejected by the early voting ballot board and was not counted.

Name of Voter _*MARIANA LUNA*_

VUID Number _*1053314843*_

Reason for Rejection: (Check As Appropriate)

_____  1)   Certificate on carrier envelope was not properly executed.
  _____ You failed to sign your signature or make your mark.
  _____ The witness failed to indicate on the envelope that you could not make a mark.
  _____ The assistant or witness failed to print their name.
  _____ The assistant or witness failed to sign their name.
  _____ The residence address of the assistant or witness was not given.

__✓_____  2)   It was determined that the signature on the application for ballot by mail and carrier envelope was not signed by the same person.

_____  3)   Application for ballot by mail did not state a legal ground for voting by mail.

_____  4)   Voter registration records indicated you did not have an effective registration for this election.

_____  5)   Address to which ballot was mailed was not outside the county.  Voting early by mail due to expected absence from the county requires balloting materials be mailed to an address outside the county.

_____  6)   The residence address on the statement of residence is not located in the political subdivision conducting the election.

_____  7)   The mailing address on the application for ballot by mail did not match your voter registration address nor did the mailing address match any addresses provided on your statement of residence. Since you did not indicate on your application for a ballot by mail that you were having your ballot mailed to a hospital, retirement center, long term care facility, nursing home, jail, or a relative, your ballot was rejected.

_____  8)   The statement of residence was not included in the carrier envelope.

_____  9)   No identification was included with your mail ballot.

_____  10)  Other:

_____

Signature of Early Voting Ballot Board Judge

**June 22, 2019**
Date

Luna, Mariana
2064 Lindberg Cir
McAllen TX  78501-7267

1221

# APPLICATION FOR BALLOT BY MAIL
## (Solicitud Para Recibir Una Boleta Por Correo)

**For Official Use Only**

VuID: 0533148242 (A)

PCT: 3

| Last Name | Suffix | First Name | Middle Initial |
|---|---|---|---|
| Luna | | Mariana | 3 |

## ADDRESS AT WHICH VOTER IS REGISTERED (DIRECCION DE RESIDENCIA/DE INSCRIPCION COMO VOTANTE)

**Street Address**
2064 Lindberg Cir

| City | State | ZIP |
|---|---|---|
| McAllen | TX | 78501-7267 |

I am over 65 years of age and requesting an Annual Ballot By Mail to recieve a ballot or all elections in 2019, including local elections and the November 2019 General Election. Mail my ballot to the address indicated above (unless noted otherwise below).

X _Mariana Luna_

Signature of applicant. I certify that the information given in this application is true and I understand that giving false information in this application is a crime. Certifico que la información que se proporciona mediante esta solicitud es cierta y entiendo que es delito dar información falsa

**OPTIONAL: IF YOU ARE NOT ABLE TO RECEIVE YOUR BALLOT AT YOUR REGISTRATION ADDRESS (ABOVE), YOU MAY HAVE YOUR  BALLOT MAILED TO AN ALTERNATE ADDRESS**

| Check One of these 4 choices: | | STREET ADDRESS |
|---|---|---|
| ☐ NURSING HOME, ASSISTED LIVING OR LONG TERM CARE FACILITY | | |
| ☐ HOSPITAL | | |
| ☐ RETIREMENT CENTER | CITY | STATE | ZIP |
| ☐ RELATIVE, RELATIONSHIP | | |

7/25/1930

▼ DO NOT TEAR PERFORATED TAB. FOLD OVER BOTTOM TO TOP AND SEAL WITH TAPE ▼

1222

RETURN YOUR OFFICIAL BALLOT REQUEST TODAY.

**1**
Sign this personalized
vote-by-mail ballot request
Firma tu boleta personalizada
De votacio por correo

**2**
Detach, fold and seal
your ballot request
Despega, dobla y sella tu boleta

**3**
Place a 49 cent stamp on
your ballot request and
drop it in the mail today

To Early Voting Clerk
Perla Lara
PO Box 220/1300 Houston Ave.
McAllen, TX 78505-0220

City Secretary's Office
Received

Date 6/3/19

ELECTION MAIL
Authorized by the U.S. Postal Service

STAMP
HERE

1223

AW5-42
Requerido por el Secretario de Estado
Frac. 37.0431, Código Electoral
3/07

## AVISO DEL RECHAZO DE UNA PAPELETA ELECTORAL

Por medio de éste se le notifica que la papeleta electoral que usted entregó en las elecciones **22 de Junio, 2019** fue rechazada por el Consejo de Votación por Adelantado y no fue incluido en el conteo final.

Nombre del elector _ARTHUR EMRY_

VUID de inscripción electoral número _105 3303 942_

La razón del rechazo fue (a continuación indique las razones):

_____ 1) La constancia que aparece en el sobre de entrega no se firmó en forma apropiada.

　　　 _____ Le falta su firma o marca.

　　　 _____ El testigo no anotó en el sobre que Ud. no puede hacer su marca.

　　　 _____ Falta el nombre del testigo o la persona quien le ayudó en letras de molde.

　　　 _____ Falta la firma del testigo o de la persona quien le ayudó votar.

　　　 _____ Falta el domicilio del testigo o el de la persona quien le ayudó votar.

_✓_ 2) Un análisis de las firmas que aparecen en la solicitud de una papeleta postal y el sobre de entrega indica que éstas no son la letra de la misma persona.

_____ 3) De acuerdo a la ley, la razón dada en la solicitud de una papeleta postal no lo califica para poder votar por correo.

_____ 4) Las actas del registro electoral indican que en la fecha en que celebraron estas elecciones, usted no estaba inscrito como votante.

_____ 5) El domicilio al cual se envió la papeleta está ubicado dentro de este condado. Sólo aquellas personas que anticipan estar fuera del condado pueden votar por anticipado y por correo, por esta razón la papeleta electorales se tiene que enviar a un domicilio ubicado fuera del condado.

_____ 6) El domicilio indicado en la solicitud de una papeleta postal no queda dentro del área geográfica de la entidad política que efectúa estas elecciones.

_____ 7) El domicilio indicado en la solicitud de una papeleta postal no es igual al indicado en: la constancia de domicilio permanente ni su inscripción electoral ni es la dirección postal indicada en su solicitud de inscripción. Además, usted no indicó que su papeleta debería enviarse a un hospital, centro de jubilación, centro de cuidados médicos a largo plazo, centro de enfermería o el hogar de algún familiar.

_____ 8) La constancia de domicilio permanente no vino incluida en el sobre de entrega.

_____ 9) No incluyó ninguna identificación con su boleta por correo.

_____ 10) Otra: _____

Firma del Juez del Consejo Administrativo de
las Papeletas de Votación por Adelantado

**22 de Junio, 2019**
Fecha

AW5-42
Prescribed by Secretary of State
Sec. 87.0431, Texas Election Code
3/07

## NOTICE OF REJECTED BALLOT

This is to serve as notice that your ballot for the ____**June 22, 2019**____ Election was rejected
by the early voting ballot board and was not counted.

Name of Voter _*ARTHUR  EMRY*_

VUID Number _*1053303942*_

Reason for Rejection: (Check As Appropriate)

_____  1)   Certificate on carrier envelope was not properly executed.
                 ____ You failed to sign your signature or make your mark.
                 ____ The witness failed to indicate on the envelope that you could not
                       make a mark.
                 ____ The assistant or witness failed to print their name.
                 ____ The assistant or witness failed to sign their name.
                 ____ The residence address of the assistant or witness was not given.

___✓___  2)   It was determined that the signature on the application for ballot by mail and
                 carrier envelope was not signed by the same person.

_____  3)   Application for ballot by mail did not state a legal ground for voting by mail.

_____  4)   Voter registration records indicated you did not have an effective registration
                 for this election.

_____  5)   Address to which ballot was mailed was not outside the county.  Voting
                 early by mail due to expected absence from the county requires balloting
                 materials be mailed to an address outside the county.

_____  6)   The residence address on the statement of residence is not located in the
                 political subdivision conducting the election.

_____  7)   The mailing address on the application for ballot by mail did not match your
                 voter registration address nor did the mailing address match any addresses
                 provided on your statement of residence.  Since you did not indicate on your
                 application for a ballot by mail that you were having your ballot mailed to a
                 hospital, retirement center, long term care facility, nursing home, jail, or a
                 relative, your ballot was rejected.

_____  8)   The statement of residence was not included in the carrier envelope.

_____  9)   No identification was included with your mail ballot.

_____  10)  Other: _____

_____
Signature of Early Voting Ballot Board Judge

__**June 22, 2019**__
Date

**Emry, Arthur**
**3816 N. 9th Ct.  Apt. 1**
**McAllen  TX  78501-1727**

1225

▼ FOLD OVER HERE AND SEAL ▼

# APPLICATION FOR BALLOT BY MAIL
(Solicitud Para Recibir Una Boleta Por Correo)

**For Official Use Only**
VUID: 1053303947    PCT: _____

| Last Name | Suffix | First Name | Middle Initial |
|---|---|---|---|
| Emry | | Arthur | William |

**Street Address**
3816 N 9th Ct Apt 1

ADDRESS AT WHICH VOTER IS REGISTERED (DIRECCION DE RESIDENCIADE INSCRIPCION COMO VOTANTE)

10/9/1936

| City | State | ZIP |
|---|---|---|
| McAllen | TX | 78501-1727 |

I am over 65 years of age and requesting an Annual Ballot By Mail to recieve a ballot or all elections in 2019, including local elections and the November 2019 General Election.

Mail my ballot to the address indicated above (unless noted otherwise below.)

X _Arthur W. Emry_

Signature of applicant. I certify that the information given in this application is true and I understand that giving false information in this application is a crim. Certifico que la información que se proporciona mediante esta solicitud es cierta y entiendo que es delito dar información falsa

**OPTIONAL: IF YOU ARE NOT ABLE TO RECEIVE YOUR BALLOT AT YOUR REGISTRATION ADDRESS (ABOVE), YOU MAY HAVE YOUR BALLOT MAILED TO AN ALTERNATE ADDRESS**

| Check One of these 4 choices: | STREET ADDRESS | | |
|---|---|---|---|
| ☐ NURSING HOME, ASSISTED LIVING OR LONG TERM CARE FACILITY | | | |
| ☐ HOSPITAL | CITY | STATE | ZIP |
| ☐ RETIREMENT CENTER | | | |
| ☐ RELATIVE, RELATIONSHIP | | | |

▼DO NOT TEAR PERFORATED TAB. FOLD OVER BOTTOM TO TOP AND SEAL WITH TAPE ▼

1226

Bill Emry
3816 N 9th Ct Apt 1
McAllen, TX 78501-1727

**RETURN YOUR OFFICIAL BALLOT REQUEST TODAY.**

**1**

**Sign this personalized vote-by-mail ballot request**

Firma tu boleta personalizada
De votacio por correo

**2**

**Detach, fold and seal your ballot request**

Despega, dobla y sella tu boleta

**3**

**Place a 49 cent stamp on your ballot request and drop it in the mail today**

Pon un timbre postal de
49 centavos en tu boleta y envia hoy.

If you have questions or need additional assistance please contact 956-221-0084

To Early Voting Clerk
Perla Lara
PO Box 220/1300 Houston Ave.
McAllen, TX 78505-0220

City Secretary's Office
Received
Date 6/4/19

OFFICIAL
ELECTION MAIL
Authorized by the U.S. Postal Service™

RECEIVED
JUN 04 2019
CITY OF McALLEN
MAIL CENTER

78505-0220  B002

PLACE
49¢

PROCLAIM LIBERTY
THROUGHOUT ALL THE LAND
USA 13¢

1227

AW5-42
Prescribed by Secretary of State
Sec. 87.0431, Texas Election Code
3/07

## NOTICE OF REJECTED BALLOT

This is to serve as notice that your ballot for the ___**June 22, 2019**___ Election was rejected by the early voting ballot board and was not counted.

Name of Voter *JOSE GUERRERO*

VUID Number *1054193310*

Reason for Rejection: (Check As Appropriate)

_____ 1) Certificate on carrier envelope was not properly executed.
_____ You failed to sign your signature or make your mark.
_____ The witness failed to indicate on the envelope that you could not make a mark.
_____ The assistant or witness failed to print their name.
_____ The assistant or witness failed to sign their name.
_____ The residence address of the assistant or witness was not given.

✓ 2) It was determined that the signature on the application for ballot by mail and carrier envelope was not signed by the same person.

_____ 3) Application for ballot by mail did not state a legal ground for voting by mail.

_____ 4) Voter registration records indicated you did not have an effective registration for this election.

_____ 5) Address to which ballot was mailed was not outside the county. Voting early by mail due to expected absence from the county requires balloting materials be mailed to an address outside the county.

_____ 6) The residence address on the statement of residence is not located in the political subdivision conducting the election.

_____ 7) The mailing address on the application for ballot by mail did not match your voter registration address nor did the mailing address match any addresses provided on your statement of residence. Since you did not indicate on your application for a ballot by mail that you were having your ballot mailed to a hospital, retirement center, long term care facility, nursing home, jail, or a relative, your ballot was rejected.

_____ 8) The statement of residence was not included in the carrier envelope.

_____ 9) No identification was included with your mail ballot.

_____ 10) Other:

_____

Signature of Early Voting Ballot Board Judge

___**June 22, 2019**___
Date

**Guerrero, Jose
2223 Date Palm Ave.
McAllen TX 78501-6967**

1228

AW5-42
Requerido por el Secretario de Estado
Frac. 87.0431, Código Electoral
3/07

## AVISO DEL RECHAZO DE UNA PAPELETA ELECTORAL

Por medio de éste se le notifica que la papeleta electoral que usted entregó en las elecciones **22 de Junio, 2019** fue rechazada por el Consejo de Votación por Adelantado y no fue incluido en el conteo final.

Nombre del elector _JOSE GUERRERO_

VUID de inscripción electoral número _10 54193310_

La razón del rechazo fue (a continuación indique las razones):

_____ 1) La constancia que aparece en el sobre de entrega no se firmó en forma apropiada.
   _____ Le falta su firma o marca.
   _____ El testigo no anotó en el sobre que Ud. no puede hacer su marca.
   _____ Falta el nombre del testigo o la persona quien le ayudó en letras de molde.
   _____ Falta la firma del testigo o de la persona quien le ayudó votar.
   _____ Falta el domicilio del testigo o el de la persona quien le ayudó votar.

✓ 2) Un análisis de las firmas que aparecen en la solicitud de una papeleta postal y el sobre de entrega indica que éstas no son la letra de la misma persona.

_____ 3) De acuerdo a la ley, la razón dada en la solicitud de una papeleta postal no lo califica para poder votar por correo.

_____ 4) Las actas del registro electoral indican que en la fecha en que celebraron estas elecciones, usted no estaba inscrito como votante.

_____ 5) El domicilio al cual se envió la papeleta está ubicado dentro de este condado. Sólo aquellas personas que anticipan estar fuera del condado pueden votar por anticipado y por correo, por esta razón la papeleta electorales se tiene que enviar a un domicilio ubicado fuera del condado.

_____ 6) El domicilio indicado en la solicitud de una papeleta postal no queda dentro del área geográfica de la entidad política que efectúa estas elecciones.

_____ 7) El domicilio indicado en la solicitud de una papeleta postal no es igual al indicado en: la constancia de domicilio permanente ni su inscripción electoral ni es la dirección postal indicada en su solicitud de inscripción. Además, usted no indicó que su papeleta debería enviarse a un hospital, centro de jubilación, centro de cuidados médicos a largo plazo, centro de enfermería o el hogar de algún familiar.

_____ 8) La constancia de domicilio permanente no vino incluida en el sobre de entrega.

_____ 9) No incluyó ninguna identificación con su boleta por correo.

_____ 10) Otra: _____

Firma del Juez del Consejo Administrativo de
las Papeletas de Votación por Adelantado

**22 de Junio, 2019**
Fecha

▼ FOLD OVER HERE AND SEAL ▼

# APPLICATION FOR BALLOT BY MAIL
## (Solicitud Para Recibir Una Boleta Por Correo)

For Official Use Only

VUID: 105119310    PCT: ____

| Last Name | Suffix | First Name | Middle Initial |
|---|---|---|---|
| Guerrero | | Jose | |

### ADDRESS AT WHICH VOTER IS REGISTERED (DIRECCION DE RESIDENCIADE INSECRIPCION COMO VOTANTE)

Street Address

2223 Date Palm Ave

| City | State | ZIP |
|---|---|---|
| McAllen | TX | 78501-6967 |

I am over 65 years of age and requesting an Annual Ballot By Mail to recieve a ballot or all elections in 2019, including local elections and the November 2019 General Election. Mail my ballot to the address indicated above (unless noted otherwise below.)

3/16/1929

X Jose F. Guerrero

Signature of applicant. I certify that the information given in this application is true and I understand that giving false information in this application is a crim. Certifico que la informacion que se proporciona mediante esta solicitud es cierta y entiendo que es delito dar informacio falsa

1230

OPTIONAL: IF YOU ARE NOT ABLE TO RECEIVE YOUR BALLOT AT YOUR REGISTRATION ADDRESS (ABOVE), YOU MAY HAVE YOUR BALLOT MAILED TO AN ALTERNATE ADDRESS

STREET ADDRESS

| Check One of these 4 choices: | ☐ NURSING HOME, ASSISTED LIVING OR LONG TERM CARE FACILITY |
|---|---|
| | ☐ HOSPITAL |
| | ☐ RETIREMENT CENTER |
| | ☐ RELATIVE, RELATIONSHIP |

| CITY | STATE | ZIP |
|---|---|---|
| | | |

▼ DO NOT TEAR PERFORATED TAB. FOLD OVER BOTTOM TO TOP AND SEAL WITH TAPE ▼

Jose F. Guerra

2223 Date Palm

McAllen tex —

City Secretary's Office
Received
Date 6/3/19

**RETURN YOUR OFFICIAL BALLOT REQUEST TODAY.**

**1**
Sign this personalized
vote-by-mail ballot request
Firma tu boleta personalizada
De votacio por correo

**2**
Detach, fold and seal
your ballot request
Despega, dobla y sella tu boleta

**3**
Place a 49 cent stamp on
your ballot request and
drop it in the mail today
Pon un timbre postal de
49 centavos en tu boleta y envía hoy.

If you have questions or need additional assistance please contact 956-221-0084

To Early Voting Clerk
Perla Lara
PO Box 220/1300 Houston Ave.
McAllen, TX 78505-0220

OFFICIAL
ELECTION MAIL
Authorized by the U.S. Postal Service™

FOREVER / USA

1231

AWS-42
Prescribed by Secretary of State
Sec. 87.0431, Texas Election Code
3/07

## NOTICE OF REJECTED BALLOT

This is to serve as notice that your ballot for the ___**June 22, 2019**___ Election was rejected
by the early voting ballot board and was not counted.

Name of Voter **Marcut, Alexander**
VUID Number **1209227012**

Reason for Rejection: (Check As Appropriate)

_____ 1) Certificate on carrier envelope was not properly executed.
_____ You failed to sign your signature or make your mark.
_____ The witness failed to indicate on the envelope that you could not
make a mark.
_____ The assistant or witness failed to print their name.
_____ The assistant or witness failed to sign their name.
_____ The residence address of the assistant or witness was not given.

_____ 2) It was determined that the signature on the application for ballot by mail and
carrier envelope was not signed by the same person.

_____ 3) Application for ballot by mail did not state a legal ground for voting by mail.

_____ 4) Voter registration records indicated you did not have an effective registration
for this election.

_____ 5) Address to which ballot was mailed was not outside the county.  Voting
early by mail due to expected absence from the county requires balloting
materials be mailed to an address outside the county.

_____ 6) The residence address on the statement of residence is not located in the
political subdivision conducting the election.

_____ 7) The mailing address on the application for ballot by mail did not match your
voter registration address nor did the mailing address match any addresses
provided on your statement of residence.  Since you did not indicate on your
application for a ballot by mail that you were having your ballot mailed to a
hospital, retirement center, long term care facility, nursing home, jail, or a
relative, your ballot was rejected.

_____ 8) The statement of residence was not included in the carrier envelope.

_____ 9) No identification was included with your mail ballot.

___**X**___ 10) Other:

**Ballot was received after the election day.**

Signature of Early Voting Ballot Board Judge

**6/25/19**
Date

**Marcut, Alexander
4120 N. 12th St. Apt. 12
McAllen TX 78504-4632**

AWS-42
Requerido por el Secretario de Estado
Frac. 87.0431, Código Electoral
3/07

## AVISO DEL RECHAZO DE UNA PAPELETA ELECTORAL

Por medio de éste se le notifica que la papeleta electoral que usted entregó en las elecciones **22 de Junio, 2019** fue rechazada por el Consejo de Votación por Adelantado y no fue incluido en el conteo final.

Nombre del elector **Marcut, Alexander**
VUID de inscripción electoral número **1209227012**

La razón del rechazo fue (a continuación indique las razones):

_____ 1) La constancia que aparece en el sobre de entrega no se firmó en forma apropiada.
_____ Le falta su firma o marca.
_____ El testigo no anotó en el sobre que Ud. no puede hacer su marca.
_____ Falta el nombre del testigo o la persona quien le ayudó en letras de molde.
_____ Falta la firma del testigo o de la persona quien le ayudó votar.
_____ Falta el domicilio del testigo o el de la persona quien le ayudó votar.

_____ 2) Un análisis de las firmas que aparecen en la solicitud de una papeleta postal y el sobre de entrega indica que éstas no son la letra de la misma persona.

_____ 3) De acuerdo a la ley, la razón dada en la solicitud de una papeleta postal no lo califica para poder votar por correo.

_____ 4) Las actas del registro electoral indican que en la fecha en que celebraron estas elecciones, usted no estaba inscrito como votante.

_____ 5) El domicilio al cual se envió la papeleta está ubicado dentro de este condado. Sólo aquellas personas que anticipan estar fuera del condado pueden votar por anticipado y por correo, por esta razón la papeleta electorales se tiene que enviar a un domicilio ubicado fuera del condado.

_____ 6) El domicilio indicado en la solicitud de una papeleta postal no queda dentro del área geográfica de la entidad política que efectúa estas elecciones.

_____ 7) El domicilio indicado en la solicitud de una papeleta postal no es igual al indicado en: la constancia de domicilio permanente ni su inscripción electoral ni es la dirección postal indicada en su solicitud de inscripción. Además, usted no indicó que su papeleta debería enviarse a un hospital, centro de jubilación, centro de cuidados médicos a largo plazo, centro de enfermería o el hogar de algún familiar.

_____ 8) La constancia de domicilio permanente no vino incluida en el sobre de entrega.

_____ 9) No incluyó ninguna identificación con su boleta por correo.

___**X**___ 10) Otra: **La boleta fue recibida despues del dia de la elecc**ion.

Firma del Juez del Consejo Administrativo de
las Papeletas de Votación por Adelantado

**25 de Junio, 2019**
Fecha

Marcut, Alexander
4120 N. 12th St. Apt. 12
McAllen TX 78504-4632

1233

▼ FOLD OVER HERE AND SEAL ▼

## APPLICATION FOR BALLOT BY MAIL.
### (Solicitud Para Recibir Una Boleta Por Correo)

| Last Name | Suffix | First Name | Middle Initial |
|---|---|---|---|
| Marcut | | Alexander | |

**For Official Use Only**

VUID: 12092277012   PCT:

### ADDRESS AT WHICH VOTER IS REGISTERED (DIRECCION DE RESIDENCIADE INSCRIPCION COMO VOTANTE)

**Street Address**

4120 N 12th St Apt 12

| City | State | ZIP |
|---|---|---|
| McAllen | TX | 78504-4632 |

8/5/1938

I am over 65 years of age and requesting an Annual Ballot By Mail to recieve a ballot or all elections in 2019, including local elections and the November 2019 General Election. Mail my ballot to the address indicated above (unless noted otherwise below.)

X

Signature of applicant. I certify that the information given in this application is true and I understand that giving false information in this application is a crim. Certifico que la informacion que se proporciona mediante esta solicitud es cierta y entiendo que se delito dar informacio falsa

OPTIONAL: IF YOU ARE NOT ABLE TO RECEIVE YOUR BALLOT AT YOUR REGISTRATION ADDRESS (ABOVE), YOU MAY HAVE YOUR  BALLOT MAILED TO AN ALTERNATE ADDRESS

**STREET ADDRESS**

| Check One of these 4 choices: | ☐ NURSING HOME, ASSISTED LIVING OR LONG TERM CARE FACILITY |
|---|---|
| | ☐ HOSPITAL |
| | ☐ RETIREMENT CENTER |
| | ☐ RELATIVE, RELATIONSHIP |

| CITY | STATE | ZIP |
|---|---|---|
| | | |

▼DO NOT TEAR PERFORATED TAB. FOLD OVER BOTTOM TO TOP AND SEAL WITH TAPE ▼

1234

Alexander [illegible]

420 N. 12st. Ap. 12

Mcc Allen Tx 78504

my Secretary's Office
Resolved

Date 6/6/17

# RETURN YOUR OFFICIAL BALLOT REQUEST TODAY.

**1**

**Sign this personalized
vote-by-mail ballot request**

Firma tu boleta personalizada
De votación por correo

**2**

**Detach, fold and seal
your ballot request**

Despega, dobla y sella tu boleta

**3**

**Place a 49 cent stamp on
your ballot request and
drop it in the mail today**

Pon un timbre postal de
49 centavos en tu boleta y envía hoy.

If you have questions or need additional assistance please contact 956-221-0084

**To Early Voting Clerk
Perla Lara
PO Box 220/1300 Houston Ave.
McAllen, TX 78505-0220**

78505•0220   BC02

OFFICIAL ELECTION MAIL
Authorized by the U.S. Postal Service™

RECEIVED
JUN 10 2019
CITY OF McALLEN
Mail Centralle

USA Forever

1235

AW5-16
Prescribed by Secretary of State
Section 86.008(b), 86.0015 Texas Election Code
12/17

## NOTICE OF REJECTED APPLICATION FOR BALLOT BY MAIL

I have received and reviewed your application for a ballot by mail. I have determined that your application must be rejected for the following reason(s):

(Check as applicable)

_____ 1.    Your application was received earlier than the 60th day before an election held in January or February of the year following the year the ABBM was submitted.

_____ 2.    Your application was not properly delivered.

_____ 3.    Your application was received after the deadline to apply for a ballot by mail for the upcoming election.
(Check if appropriate:)
_____ However, since you indicated on the application that it was to be an Annual application for a ballot by mail, the application will be considered valid for other elections held this year and for which the application was submitted before the deadline.

_____ 4.    You indicate you are voting due to expected absence from the county, but the address to which your ballot is to be sent is not an address outside the county. When voting by mail on the grounds of expected absence from the county, the address to which your ballot is to be mailed <u>must</u> be outside the county.

_____ 5.    When voting by mail due to confinement in jail, the address to which your ballot is to be mailed must be that of the jail or a relative. Your application did not indicate either address.

_____ 6.    Your application was not signed.

_____ 7.    The witness who signed your application did not:
_____ (a)    indicate a relationship on your application;
_____ (b)    indicate that you were unable to make your mark in lieu of your signature; or
_____ (c)    provide his or her printed name or residence address.

_____ 8.    Your application did not indicate the reason you are entitled to vote by mail.

_____ 9.    For a primary election, you must indicate your party preference.
(Check if appropriate:)
_____ However, if you have submitted an Annual ABBM, you will receive ballots for other elections held this year <u>other</u> than the Primary or Runoff Election.

_____ 10.   Your residence address of registration was not provided on your application.

_____ 11.   Your application was received after the deadline for receiving an application for a ballot by mail.
The deadline for receiving the application was _____.
                                                                                    (Date)
(Check if appropriate:)
_____ However, since you have requested a ballot for the run-off election, if one is to be held, your application is valid for that election.

_____ 12.   According to the records of the voter registrar, you are not currently registered to vote or your registration, if you have applied, will not be effective on or before election day.

_____ 13.   I could not determine the election for which you were applying for a ballot.

_____ 14.   Your application was initially submitted via fax or email, but an original hardcopy of the application was not received within four business days.

__X__ 15.   Other:  __**Not over 65 years of age**_____

If you wish to vote, it will be necessary for you to submit another application to me, and that application must be received by __**6/11/19**_____ *If new application is faxed or emailed, the original hardcopy must be received within four
      (*Date)                           business days.

If you have any questions regarding your application, please contact me at __**(956) 681-1020**_____
                                                                                          (Phone Number)

_____
Early Voting Clerk

1236

▼ FOLD OVER HERE AND SEAL ▼

## APPLICATION FOR BALLOT BY MAIL
(Solicitud Para Recibir Una Boleta Por Correo)

**For Official Use Only**

VUID: 1162963827

PCT: ___

| Last Name | Suffix | First Name | Middle Initial |
|---|---|---|---|
| Ramirez ✓ | | Maria ✓ | Hilda |

**ADDRESS AT WHICH VOTER IS REGISTERED (DIRECCION DE RESIDENCIA DE INSCRIPCION COMO VOTANTE)**

**Street Address**

2021 Gumwood Ave ✓

| City | State | ZIP |
|---|---|---|
| McAllen | TX | 78501-6882 |

I am over 65 years of age and requesting an Annual Ballot By Mail to recieve a ballot or all elections in 2019, including local elections and the November 2019 General Election.
Mail my ballot to the address indicated above (unless noted otherwise below.)

X _Maria Hilda Ramirez_

Signature of applicant. I certify that the information given in this application is true and I understand that giving false information in this application is a crim. Certifico que la informacion que se proporciona mediante esta solicitud es cierta y entiendo que es delito dar informacio false

**OPTIONAL: IF YOU ARE NOT ABLE TO RECEIVE YOUR BALLOT AT YOUR REGISTRATION ADDRESS (ABOVE), YOU MAY HAVE YOUR BALLOT MAILED TO AN ALTERNATE ADDRESS**

| Check One of these | STREET ADDRESS |
|---|---|
| ☐ NURSING HOME, ASSISTED LIVING OR LONG TERM CARE FACILITY | |
| ☐ HOSPITAL | |
| ☐ RETIREMENT CENTER | CITY / STATE / ZIP |
| 4 choices: ☐ RELATIVE, RELATIONSHIP | |

▼ DO NOT TEAR PERFORATED TAB. FOLD OVER BOTTOM TO TOP AND SEAL WITH TAPE ▼

1237

AW5-16
Prescribed by Secretary of State
Section 86.008(b), 86.0015 Texas Election Code
12/17

## NOTICE OF REJECTED APPLICATION FOR BALLOT BY MAIL

I have received and reviewed your application for a ballot by mail. I have determined that your application must be rejected for the following reason(s):

(Check as applicable)

_____ 1.   Your application was received earlier than the 60th day before an election held in January or February of the year following the year the ABBM was submitted.

_____ 2.   Your application was not properly delivered.

_____ 3.   Your application was received after the deadline to apply for a ballot by mail for the upcoming election.

  (Check if appropriate:)

  _____ However, since you indicated on the application that it was to be an Annual application for a ballot by mail, the application will be considered valid for other elections held this year and for which the application was submitted before the deadline.

_____ 4.   You indicate you are voting due to expected absence from the county, but the address to which your ballot is to be sent is not an address outside the county. When voting by mail on the grounds of expected absence from the county, the address to which your ballot is to be mailed must be outside the county.

_____ 5.   When voting by mail due to confinement in jail, the address to which your ballot is to be mailed must be that of the jail or a relative. Your application did not indicate either address.

_____ 6.   Your application was not signed.

_____ 7.   The witness who signed your application did not:

  _____ (a)   indicate a relationship on your application;

  _____ (b)   indicate that you were unable to make your mark in lieu of your signature; or

  _____ (c)   provide his or her printed name or residence address.

_____ 8.   Your application did not indicate the reason you are entitled to vote by mail.

_____ 9.   For a primary election, you must indicate your party preference.

  (Check if appropriate:)

  _____ However, if you have submitted an Annual ABBM, you will receive ballots for other elections held this year other than the Primary or Runoff Election.

_____ 10.   Your residence address of registration was not provided on your application.

_____ 11.   Your application was received after the deadline for receiving an application for a ballot by mail. The deadline for receiving the application was _____.
  (Date)

  (Check if appropriate)

  _____ However, since you have requested a ballot for the run-off election, if one is to be held, your application is valid for that election.

_____ 12.   According to the records of the voter registrar, you are not currently registered to vote or your registration, if you have applied, will not be effective on or before election day.

_____ 13.   I could not determine the election for which you were applying for a ballot.

_____ 14.   Your application was initially submitted via fax or email, but an original hardcopy of the application was not received within four business days.

  __X__ 15.   Other: **District you reside in (#3) is currently not having an election.**

If you wish to vote, it will be necessary for you to submit another application to me, and that application must be received by **6/11/19**   *If new application is faxed or emailed, the original hardcopy must be received within four
  (*Date)          business days.

If you have any questions regarding your application, please contact me at **(956) 681-1020**   .
  (Phone Number)

_____
Early Voting Clerk

Liscano, Jose H.
2741 Gumwood Ave.
McAllen TX  78501

1238

DO NOT REMOVE PERFORATED TABS. Moisten here and fold bottom to top to seal.     DO NOT REMOVE PERFORATED TABS. Moisten here and fold bottom to top to seal.

Prescribed by the Office of the Secretary of State of Texas
AB-15 12/17

**Application for Ballot by Mail**

**For Official Use Only**
VUID #, County Election Precinct #, Statement of Residence, etc.

1055307226

**1. Last Name** (Please print information)
Liscano

**Suffix** (Jr., Sr., III, etc)

**First Name**
Jose

**Middle Initial**
H

**2. Residence Address:** See back of this application for instructions.
2741 Gumwood Ave

**City**
McAllen

**, TX**

**ZIP Code**
78501

**3. Mail my ballot to:** If mailing address differs from residence address, please complete Box # 7.

**City**

**State**

**ZIP Code**

**4. Date of Birth** (mm/dd/yyyy) (Optional)
0 7 / 1 4 / 1 9 5 3

**Contact Information (Optional)***
Please list phone number and/or email address:
* Used in case our office has questions.

**5. Reason for Voting by Mail:**
☒ 65 years of age or older. (Complete Box #6a)
☐ Disability. (Complete Box #6a)
☐ Expected absence from the county. (Complete Box #6b and Box #8)
You will receive a ballot for the upcoming election only.
☐ Confinement in jail. (Complete Box #6b)
You will receive a ballot for the upcoming election only.

**6a.** ONLY Voters 65 Years of Age or Older or Voters with a Disability:
If applying for one election, select appropriate box.
If applying once for elections in the calendar year, select "Annual Application."
☐ Annual Application

**Uniform and Other Elections:**
☐ May Election
☐ November Election
☒ Other Runoff

**Primary Elections:**
You must declare one political party to vote in a primary:
☐ Democratic Primary
☐ Republican Primary
☐ Any Resulting Runoff

**6b.** ONLY Voters Absent from County or Voters Confined in Jail:
You may only apply for a ballot by mail for one election, and any resulting runoff.
Please select the appropriate box.

**Uniform and Other Elections:**
☐ May Election
☐ November Election
☐ Other ____

**Primary Elections:**
You must declare one political party to vote in a primary:
☐ Democratic Primary
☐ Republican Primary
☐ Any Resulting Runoff

**7.** If you are requesting this ballot be mailed to a different address (other than residence), indicate where the ballot will be mailed. See reverse for instructions.
☐ Mailing Address as listed on my voter registration certificate
☐ Nursing home, assisted living facility, or long term care facility
☐ Hospital
☐ Retirement Center
☐ Address of the jail
☐ Relative; relationship ____
☐ Address outside the county (see Box #8)

**8.** If you selected "expected absence from the county," see reverse for instructions

Date of return to residence address

Date you can begin to receive mail at this address

**9.** Voters may submit a completed, signed, and scanned application to the Early Voting Clerk at:
plara@mcallen.net (early voting clerk's e-mail address)
(956) 681-1029 (early voting clerk's fax)

NOTE: If you fax or e-mail this form, please be aware that you must also mail the form to the early voting clerk within four business days. See "Submitting Application" on the back of this form for additional information.

**10.** "I certify that the information given in this application is true, and I understand that giving false information in this application is a crime."

X _____
**SIGN HERE**
If applicant is unable to sign or make a mark in the presence of a witness, the witness shall complete Box #11.

Date 6-4-2019

**11.** If someone helped you to complete this form or mails the form for you, then that person must complete the sections below.

See back for Witness and Assistant definitions.

If applicant is unable to mark Box #10 and you are acting as a Witness to that fact, please check this box and sign below. ☐

If you assisted the applicant in completing the application in the applicant's presence or e-mailed/mailed or faxed the application on behalf of the applicant, please check this box as an Assistant and sign below.

★If you are acting as Witness and Assistant, please check both boxes. Failure to complete this information is a Class A misdemeanor if assistance was witnessed or applicant was assisted in completing the application.

X _____
Signature of Witness/Assistant

X _____
Printed Name of Witness/Assistant

Street Address

City

State

Apt Number (if applicable)

ZIP Code

**Witness' Relationship to Applicant**
(Refer to instructions on back for clarification)

Este formulario está disponible en Español. Para conseguir la versión en Español favor de llamar sin cargo al 1.800.252.8683 a la oficina del Secretario de Estado o la Secretaria de Votación por Adelantado.

AW5-16
Presented by Secretary of State
Section 86.008(b), 86.0015 Texas Election Code
12/17

## NOTICE OF REJECTED APPLICATION FOR BALLOT BY MAIL

I have received and reviewed your application for a ballot by mail. I have determined that your application must be rejected for the following reason(s):

(Check as applicable)

_____ 1.   Your application was received earlier than the 60th day before an election held in January or February of the year following the year the ABBM was submitted.

_____ 2.   Your application was not properly delivered.

_____ 3.   Your application was received after the deadline to apply for a ballot by mail for the upcoming election.

(Check if appropriate:)

_____ However, since you indicated on the application that it was to be an Annual application for a ballot by mail, the application will be considered valid for other elections held this year and for which the application was submitted before the deadline.

_____ 4.   You indicate you are voting due to expected absence from the county, but the address to which your ballot is to be sent is not an address outside the county. When voting by mail on the grounds of expected absence from the county, the address to which your ballot is to be mailed <u>must</u> be outside the county.

_____ 5.   When voting by mail due to confinement in jail, the address to which your ballot is to be mailed must be that of the jail or a relative. Your application did not indicate either address.

_____ 6.   Your application was not signed.

_____ 7.   The witness who signed your application did not:

_____ (a)   indicate a relationship on your application;

_____ (b)   indicate that you were unable to make your mark in lieu of your signature; or

_____ (c)   provide his or her printed name or residence address.

_____ 8.   Your application did not indicate the reason you are entitled to vote by mail.

_____ 9.   For a primary election, you must indicate your party preference.

(Check if appropriate:)

_____ However, if you have submitted an Annual ABBM, you will receive ballots for other elections held this year <u>other</u> than the Primary or Runoff Election.

__X__ 10.   Your residence address of registration was not provided on your application.

_____ 11.   Your application was received after the deadline for receiving an application for a ballot by mail.

The deadline for receiving the application was _____.
                                                          (Date)

(Check if appropriate:)

_____ However, since you have requested a ballot for the run-off election, if one is to be held, your application is valid for that election.

_____ 12.   According to the records of the voter registrar, you are not currently registered to vote or your registration, if you have applied, will not be effective on or before election day.

_____ 13.   I could not determine the election for which you were applying for a ballot.

_____ 14.   Your application was initially submitted via fax or email, but an original hardcopy of the application was not received within four business days.

_____ 15.   Other:_____

If you wish to vote, it will be necessary for you to submit another application to me, and that application must be received by __**6/11/19**__   *If new application is faxed or emailed, the original hardcopy must be received within four
         (*Date)                              business days.

If you have any questions regarding your application, please contact me at   **(956) 681-1020**
                                                                     (Phone Number)

_____
Early Voting Clerk

Salinas, Estela
P O Box 720626
McAllen TX  78504-0626

▼ FOLD OVER HERE AND SEAL ▼

**APPLICATION FOR BALLOT BY MAIL**
(Solicitud Para Recibir Una Boleta Por Correo)

For Official Use Only
1052 9637 04
VUID:_____  PCT:____

| Last Name | Suffix | First Name | Middle Initial |
|-----------|--------|-----------|----------------|
| Salinas | | Estela | |

**ADDRESS AT WHICH VOTER IS REGISTERED (DIRECCION DE RESIDENCIADE INSCRIPCION COMO VOTANTE)**

Street Address
4717 N. 14th St. #34

| City | State | ZIP |
|------|-------|-----|
| McAllen | TX | 78504-0626 |

I am over 65 years of age and requesting an Annual Ballot By Mail to recieve a ballot or all elections in 2019, including local elections and the November 2019 General Election. Mail my ballot to the address indicated above (unless noted otherwise below.)

X _Estela Salinas_    12/10/1939

Signature of applicant. I certify that the information given in this application is true and I understand that giving false information in this application is a crim. Certifico que la información que se proporciona mediante esta solicitud es cierta y entiendo que es delito dar información falsa

**OPTIONAL: IF YOU ARE NOT ABLE TO RECEIVE YOUR BALLOT AT YOUR REGISTRATION ADDRESS (ABOVE), YOU MAY HAVE YOUR BALLOT MAILED TO AN ALTERNATE ADDRESS**

STREET ADDRESS

| CITY | STATE | ZIP |
|------|-------|-----|
| | | |

Check One of these 4 choices:
- ☐ NURSING HOME, ASSISTED LIVING OR LONG TERM CARE FACILITY
- ☐ HOSPITAL
- ☐ RETIREMENT CENTER
- ☐ RELATIVE, RELATIONSHIP _____

▼DO NOT TEAR PERFORATED TAB. FOLD OVER BOTTOM TO TOP AND SEAL WITH TAPE ▼

1241

AW5-16
Prescrito por el Secretario de Estado
Código Electoral de Texas Secs. 86.008(b), 86.0015
12/17

## AVISO DE SOLICITUD RECHAZADA PARA RECIBIR UNA BOLETA POR CORREO

Su solicitud para recibir una boleta por correo postal fue recibida y analizada.  Hemos determinado que su solicitud debe ser rechazada por la siguiente razón:

(Marcar las que apliquen)

_____ 1.    Su solicitud fue recibida antes del 60º día antes de una elección celebrada en enero o febrero del año siguiente al año en que se presentó el ABBM ("ABBM" por sus siglas en Ingles).

_____ 2.    La solicitud no fue entregada de manera apropiada.

_____ 3.    Su solicitud fue recibida después de la fecha límite para aplicar para recibir una boleta por correo para esta elección. (Marque abajo si es apropiado).

_____ Sin embargo, ya que usted indico en la solicitud que su solicitud es una solicitud anual para votar por correo, la solicitud se considerará válida para las otras elecciones que sucedan este año y para las cuales su solicitud fue enviada antes de la fecha límite.

_____ 4.    Usted indico que desea votar por correo por que planea estar ausente del condado pero la dirección que usted proporciono para recibir su boleta no es una dirección fuera del condado.  Cuando usted aplica para votar por correo en base a que estará ausente del condado, la dirección a la cual usted recibirá su boleta debe estar ubicada fuera del condado.

_____ 5.    Si usted está encarcelado, para que pueda votar por correo es necesario que su boleta sea enviada directamente a la cárcel o al domicilio de algún familiar.  Su solicitud no indicó ninguna de estas direcciones.

__X__ 6.    No firmó su solicitud.

_____ 7.    El testigo que firmó su solicitud no:
_____(a)    indicó, en la solicitud, qué parentesco o tipo relación existe entre ustedes;
_____(b)    indicó que además de no poder firmar, usted no puede poner su marca en la solicitud; o
_____(c)    proporciono su nombre completo en letra de molde y su dirección residencial.

_____ 8.    No indicó la base de elegibilidad por la cual usted tiene derecho a votar por correo.

_____ 9.    Para las elecciones primarias, usted debe indicar su preferencia de partido político. (Marque abajo si es apropiado).

_____ Sin embargo, si usted envió una solicitud anual para votar por correo postal (Annual ABBM, por sus siglas en Ingles) usted recibirá las boletas para todas las demás elecciones oficiadas este año que no sean elecciones primarias o elecciones primarias de desempate.

_____ 10.   No proporciono la dirección residencial bajo la cual usted está registrado/a.

_____ 11.   Su solicitud fue recibida después de la fecha límite para recibir solicitudes para votar por correo postal. La fecha límite fue el _____ de _____, _____.
                    (día)      (mes)      (año)

(Marque abajo si es apropiado)
_____ Sin embargo, ya que usted solicito una boleta para la elección de desempate, si una sucede, su solicitud es válida para esa elección.

_____ 12.   Los documentos del registro electoral indican que usted no está inscrito como votante y si ha solicitado dicha inscripción, ésta no entrará en vigor en o antes del Día de la Elección.

_____ 13.   No se pudo determinar las elecciones en las cuales usted desea votar por correo.

_____ 14.   Su solicitud fue inicialmente enviada por fax o correo electrónico, pero una copia impresa original de la solicitud no fue recibida dentro de los cuatro días hábiles.

_____ 15.   Otro:_____

Si usted desea votar por correo, es necesario que envíe otra solicitud a esta oficina y su solicitud debe ser recibida por **6/11/19** (Fecha). *Si la nueva solicitud es enviada por fax o por correo electrónico, la copia impresa original debe ser recibida dentro de cuatro días hábiles.

Si tiene una pregunta en cuanto a su solicitud, por favor comuníquese conmigo llamando al **(956) 681-1020**
                                                                                                    (Número de teléfono)

Mueller, Shirley M.
810 S. 16th 1/2 St.
McAllen, TX 78501-5263

Secretario/a de Votación Anticipada

▼ FOLD OVER HERE AND SEAL ▼

# APPLICATION FOR BALLOT BY MAIL
(Solicitud Para Recibir Una Boleta Por Correo)

For Official Use Only
VUID: 2178824 47  PCT:

| Last Name | Suffix | First Name | Middle Initial |
|---|---|---|---|
| Mueller | | Shirley | M Marie |

## ADDRESS AT WHICH VOTER IS REGISTERED (DIRECCION DE RESIDENCIADE INSCRIPCION COMO VOTANTE)

**Street Address**
810 S 16th 1/2 St

7/17/1942

| City | State | ZIP |
|---|---|---|
| McAllen | TX | 78501-5263 |

I am over 65 years of age and requesting an Annual Ballot By Mail to recieve a ballot or all elections in 2019, including local elections and the November 2019 General Election.
Mail my ballot to the address indicated above (unless noted otherwise below.)

✗

Signature of applicant. I certify that the information given in this application is true and I understand that giving false information in this application is a crim. Certifico que la información que se proporciona mediante esta solicitud es cierta y entiendo que es delito dar información falsa

**OPTIONAL: IF YOU ARE NOT ABLE TO RECEIVE YOUR BALLOT AT YOUR REGISTRATION ADDRESS (ABOVE), YOU MAY HAVE YOUR BALLOT MAILED TO AN ALTERNATE ADDRESS**

STREET ADDRESS

| Check One of these 4 choices: | ☐ NURSING HOME, ASSISTED LIVING OR LONG TERM CARE FACILITY |
|---|---|
| | ☐ HOSPITAL |
| | ☐ RETIREMENT CENTER |
| | ☐ RELATIVE, RELATIONSHIP |

| CITY | STATE | ZIP |
|---|---|---|

▼DO NOT TEAR PERFORATED TAB. FOLD OVER BOTTOM TO TOP AND SEAL WITH TAPE ▼

1243

AW5-16
Prescrito por el Secretario de Estado
Código Electoral de Texas Secs. 86.008(b), 86.0015
12/17

### AVISO DE SOLICITUD RECHAZADA PARA RECIBIR UNA BOLETA POR CORREO

Su solicitud para recibir una boleta por correo postal fue recibida y analizada.  Hemos determinado que su solicitud debe ser rechazada por la siguiente razón:

(Marcar las que apliquen)

_____1.   Su solicitud fue recibida antes del 60° día antes de una elección celebrada en enero o febrero del año siguiente al año en que se presentó el ABBM ("ABBM" por sus siglas en Ingles).

_____2.   La solicitud no fue entregada de manera apropiada.

_____3.   Su solicitud fue recibida después de la fecha límite para aplicar para recibir una boleta por correo para esta elección. (Marque abajo si es apropiado).

_____Sin embargo, ya que usted indico en la solicitud que su solicitud es una solicitud anual para votar por correo, la solicitud se considerará válida para las otras elecciones que sucedan este año y para las cuales su solicitud fue enviada antes de la fecha límite.

_____4.   Usted indico que desea votar por correo por que planea estar ausente del condado pero la dirección que usted proporciono para recibir su boleta no es una dirección fuera del condado.  Cuando usted aplica para votar por correo en base a que estará ausente del condado, la dirección a la cual usted recibirá su boleta _debe_ estar ubicada fuera del condado.

_____5.   Si usted está encarcelado, para que pueda votar por correo es necesario que su boleta sea enviada directamente a la cárcel o al domicilio de algún familiar.  Su solicitud no indicó ninguna de estas direcciones.

_____6.   No firmó su solicitud.

_____7.   El testigo que firmó su solicitud no:
_____(a)      indicó, en la solicitud, qué parentesco o tipo relación existe entre ustedes;
_____(b)      indicó que además de no poder firmar, usted no puede poner su marca en la solicitud; o
_____(c)      proporciono su nombre completo en letra de molde y su dirección residencial.

_____8.   No indicó la base de elegibilidad por la cual usted tiene derecho a votar por correo.

_____9.   Para las elecciones primarias, usted debe indicar su preferencia de partido político. (Marque abajo si es apropiado).

_____Sin embargo, si usted envió una solicitud anual para votar por correo postal (Annual ABBM, por sus siglas en Ingles), usted recibirá las boletas para todas las demás elecciones oficiadas este año _que no sean_ elecciones primarias o elecciones primarias de desempate.

_____10.   No proporciono la dirección residencial bajo la cual usted está registrado/a.

_____11.   Su solicitud fue recibida después de la fecha límite para recibir solicitudes para votar por correo postal. La fecha límite fue el ____ de _____, _____.
(día)     (mes)     (año)

(Marque abajo si es apropiado)
_____ Sin embargo, ya que usted solicito una boleta para la elección de desempate, si una sucede, su solicitud es válida para esa elección.

_____12.   Los documentos del registro electoral indican que usted no está inscrito como votante y si ha solicitado dicha inscripción, ésta no entrará en vigor en o antes del Día de la Elección.

_____13.   No se pudo determinar las elecciones en las cuales usted desea votar por correo.

_____14.   Su solicitud fue inicialmente enviada por fax o correo electrónico, pero una copia impresa original de la solicitud no fue recibida dentro de los cuatro días hábiles.

**X** 15.   Otro: **No tiene 65 anos de edad como razon para votar por correo.**

Si usted desea votar por correo, es necesario que envíe otra solicitud a esta oficina y su solicitud debe ser recibida por_____(Fecha).  *Si la nueva solicitud es enviada por fax o por correo electrónico, la copia impresa original debe ser recibida dentro de cuatro días hábiles.

Si tiene una pregunta en cuanto a su solicitud, por favor comuníquese conmigo llamando al **(956) 681-1020**
(Número de Teléfono)

Sandoval, Jorge A.
2120 Date Palm Ave.
McAllen, TX  78501

Secretario/a de Votación Anticipada

DO NOT REMOVE PERFORATED TABS. Moisten here and fold bottom to top to seal.     DO NOT REMOVE PERFORATED TABS. Moisten here and fold bottom to top to seal.

## Application for Ballot by Mail

Prescribed by the Office of the Secretary of State of Texas
A5-15 12/17

**1** Last Name (Please print information)
Sandoval

First Name
Jorge

Suffix (Jr., Sr., III, etc)

For Official Use Only
VUID #, County Election Precinct #,
Statement of Residence, etc.
2125679954

Middle Initial
A Antonio

**2** Residence Address: See back of this application for instructions.
2120 Date Palm Ave

City
McAllen

State
,TX

ZIP Code
78501

**3** Mail my ballot to: If mailing address differs from residence address, please complete Box #7.

City

State

ZIP Code

**4** Date of Birth (mm/dd/yyyy) (Optional)
12/25/1962

**5** Reason for Voting by Mail:
☑ 65 years of age or older. (Complete Box #4a)
☐ Disability. (Complete Box #4a)
☐ Expected absence from the county. (Complete Box #6b and Box #9)
  You will receive a ballot for the upcoming election only.
☐ Confinement in Jail. (Complete Box #5)
  You will receive a ballot for the upcoming election only.

56 yrs old

**6a** ONLY Voters 65 Years of Age or Older or Voters with a Disability:
If applying for one election, select appropriate box.
If applying once for elections in the calendar year, select "Annual Application."
☑ Annual Application

Uniform and Other Elections:
☐ May Election
☐ November Election
☐ Other _____

Primary Elections:
You must declare one political party to vote in a primary:
☐ Democratic Primary
☐ Republican Primary
☑ Any Resulting Runoff

**6b** ONLY Voters Absent from County or Voters Confined in Jail:
You may only apply for a ballot by mail for one election, and any resulting runoff.
Please select the appropriate box.

Uniform and Other Elections:
☐ May Election
☐ November Election
☐ Other _____

Primary Elections:
You must declare one political party to vote in a primary:
☐ Democratic Primary
☐ Republican Primary
☐ Any Resulting Runoff

**7** Contact Information (Optional)*
*Please list phone number and/or email address:
* Used in case your office has questions.

**8** If you are requesting this ballot be mailed to a different address (other than residence), indicate where the ballot will be mailed. See reverse for instructions.
☐ Mailing Address as listed on my voter registration certificate
☐ Nursing home, assisted living facility, or long term care facility
☐ Retirement Center

☐ Address of the Jail
☐ Relative; relationship: _____
☐ Address outside the county (see Box #6)

If you selected "expected absence from the county," see reverse for instructions

Date you can begin to receive mail at this address _____    Date of return to residence address _____

**9** Voters may submit a completed, signed, and scanned application to the Early Voting Clerk at:
plaza@mcallen.net     (956) 681-1029
(early voting clerk's e-mail address)     (early voting clerk's fax)

NOTE: If you fax or e-mail this form, please be aware that you must also mail this form to the early voting clerk within four business days. See "Submitting Application" on the back of this form for additional information.

**10** "I certify that the information given in this application is true, and I understand that giving false information in this application is a crime."

X George A Sandoval   Date

SIGN HERE
If applicant is unable to sign or make a
mark in the presence of a witness, the
witness shall complete Box #11.

If someone helped you to complete this form or mails this form for you, then that person must complete the sections below.

**11** See back for Witness and Assistant definitions.

If applicant is unable to mark Box #10 and you are acting as a Witness to that fact, please check this box and sign below. ☐

If you assisted the applicant in completing this application in the applicant's presence or e-mailed/mailed or faxed the application on behalf of the applicant, please check this box as an Assistant and sign below. ☐

*If you are acting as Witness and Assistant, please check both boxes. Failure to complete this information is a Class A misdemeanor if signature was witnessed or applicant was assisted in completing the application.

X _____
Signature of Witness / Assistant

X _____
Printed Name of Witness/Assistant

Street Address

Apt Number (if applicable)

City

Witness' Relationship to Applicant
(Refer to instructions on back for clarification)

State

ZIP Code

Este formulario está disponible en Español. Para conseguir la versión en Español favor de llamar sin cargo al 1.800.252.8683 a la oficina del Secretario de Estado o la Secretaría de Votación por Adelantado.

AW5-16
Prescribed by Secretary of State
Section 86.008(b), 86.0015 Texas Election Code
12/17

NOTICE OF REJECTED APPLICATION FOR BALLOT BY MAIL

I have received and reviewed your application for a ballot by mail. I have determined that your application must be rejected for the following reason(s):

(Check as applicable)

_____ 1.  Your application was received earlier than the 60th day before an election held in January or February of the year following the year the ABBM was submitted.

_____ 2.  Your application was not properly delivered.

_____ 3.  Your application was received after the deadline to apply for a ballot by mail for the upcoming election.
(Check if appropriate:)
_____ However, since you indicated on the application that it was to be an Annual application for a ballot by mail, the application will be considered valid for other elections held this year and for which the application was submitted before the deadline.

_____ 4.  You indicate you are voting due to expected absence from the county, but the address to which your ballot is to be sent is not an address outside the county. When voting by mail on the grounds of expected absence from the county, the address to which your ballot is to be mailed <u>must</u> be outside the county.

_____ 5.  When voting by mail due to confinement in jail, the address to which your ballot is to be mailed must be that of the jail or a relative. Your application did not indicate either address.

_____ 6.  Your application was not signed.

_____ 7.  The witness who signed your application did not:
_____ (a)  indicate a relationship on your application;
_____ (b)  indicate that you were unable to make your mark in lieu of your signature; or
_____ (c)  provide his or her printed name or residence address.

_____ 8.  Your application did not indicate the reason you are entitled to vote by mail.

_____ 9.  For a primary election, you must indicate your party preference.
(Check if appropriate:)
_____ However, if you have submitted an Annual ABBM, you will receive ballots for other elections held this year <u>other</u> than the Primary or Runoff Election.

_____ 10.  Your residence address of registration was not provided on your application.

_____ 11.  Your application was received after the deadline for receiving an application for a ballot by mail.
The deadline for receiving the application was _____.
(Date)
(Check if appropriate)
_____ However, since you have requested a ballot for the run-off election, if one is to be held, your application is valid for that election.

_____ 12.  According to the records of the voter registrar, you are not currently registered to vote or your registration, if you have applied, will not be effective on or before election day.

_____ 13.  I could not determine the election for which you were applying for a ballot.

_____ 14.  Your application was initially submitted via fax or email, but an original hardcopy of the application was not received within four business days.

__X__ 15.  Other: **Residence address not on file.** _____

If you wish to vote, it will be necessary for you to submit another application to me, and that application must be received by _____ *If new application is faxed or emailed, the original hardcopy must be received within four
(*Date)                business days.

If you have any questions regarding your application, please contact me at **(956) 681-1020**
(Phone Number)

_Early Voting Clerk_

Delgado, Pablo
2012 Oakland Ave.
McAllen, TX 78501

1246

1. Last Name (Please print information): Delgado
First Name: Pablo
Suffix (Jr., Sr., III, etc):
Statement of Residence, etc.:
Middle Initial:

2. Residence Address: See back of this application for instructions.
8012 Oakland Ave 4th 9th St.
City: ,TX
ZIP Code:

3. Mail my ballot to: If mailing address differs from residence address, please complete Box #7.
2109 Kevin Ave. apt. 7
City:
State:
ZIP Code: 96559

4. Date of Birth (mm/dd/yyyy) (Optional): 12/05/1933

5. Reason for Voting by Mail:
☐ 65 years of age or older. (Complete Box #6a)
☐ Disability. (Complete Box #6a)
☐ Expected absence from the county. (Complete Box #6b and Box #8)
   You will receive a ballot for the upcoming election only.
☐ Confinement in jail. (Complete Box #6b)
   You will receive a ballot for the upcoming election only.

**Contact Information (Optional)**
Please list phone number and/or email address:
* Used in case our office has questions.

7. If you are requesting this ballot to be mailed to a different address (other than residence), indicate where the ballot will be mailed. See reverse for instructions.
☐ Mailing Address as listed on my voter registration certificate
☐ Nursing home, assisted living facility, or long term care facility
☐ Hospital
☐ Retirement Center
☐ Address of the jail
☐ Relative; relationship _____
☐ Address outside the county (see Box #8)

6a. ONLY Voters 65 Years of Age or Older or Voters with a Disability:
If applying for one election, select appropriate box.
If applying once for elections in the calendar year, select "Annual Application."
☒ Annual Application

Uniform and Other Elections:
You must declare one political party to vote in a primary.
☐ May Election
☐ November Election
☐ Other _____
☐ Democratic Primary
☐ Republican Primary
☐ Any Resulting Runoff

8. If you selected "expected absence from the county," see reverse for instructions.
_____
Date you can begin to receive mail at this address    Date of return to residence address

9. Voters may submit a completed, signed, and scanned application to the Early Voting Clerk at:
plara@mcallen.net
(early voting clerk's e-mail address)
(956) 681-1029
(early voting clerk's fax)
NOTE: If you fax or e-mail this form, please be aware that you must also mail this form to the early voting clerk within four business days. See "Submitting Application" on the back of this form for additional information.

6b. ONLY Voters Absent from County or Voters Confined in Jail:
You may only apply for a ballot by mail for one election, and any resulting runoff.
Please select the appropriate box.

Uniform and Other Elections:
You must declare one political party to vote in a primary.
☐ May Election
☐ November Election
☐ Other _____
☐ Democratic Primary
☐ Republican Primary
☐ Any Resulting Runoff

10. "I certify that the information given in this application is true, and I understand that giving false information in this application is a crime."

X _Pablo Delgado por_

SIGN HERE
If applicant is unable to sign or make a mark in the presence of a witness, the witness shall complete Box #11.

If someone helped you to complete this form or mails this form for you, then that person must complete the sections below.

Witness' Relationship to Applicant
(Refer to instructions on back for clarification)

Date: _____

X _____
Printed Name of Witness/Assistant

City: _____
ZIP Code: _____

11. See back for Witness and Assistant definitions.
If applicant is unable to mark Box #10 and you are acting as a Witness to that fact, please check this box and sign below. ☐

If you assisted the applicant in completing this application in the applicant's presence or e-mailed/mailed or faxed the application on behalf of the applicant, please check this box as an Assistant and sign below. ☐

*If you are acting as Witness and Assistant, please check both boxes. Failure to complete this information is a Class A misdemeanor if signature was witnessed or applicant was assisted in completing the application.

X _____
Signature of Witness/Assistant

Street Address: _____
Apt Number (if applicable): _____

State: _____

*Este formulario está disponible en Español. Para conseguir la versión en Español favor de llamar sin cargo al 1.800.252.8683 a la oficina del Secretario de Estado o la Secretaría de Estado o la Secretaría de Votación por Adelantado.*

AW5-16
Prescrito por el Secretario de Estado
Código Electoral de Texas Secs. 86.008(b), 86.0015
12/17

## AVISO DE SOLICITUD RECHAZADA PARA RECIBIR UNA BOLETA POR CORREO

Su solicitud para recibir una boleta por correo postal fue recibida y analizada.  Hemos determinado que su solicitud debe ser rechazada por la siguiente razón:

(Marcar las que apliquen)

_____ 1.   Su solicitud fue recibida antes del 60° día antes de una elección celebrada en enero o febrero del año siguiente al año en que se presentó el ABBM ("ABBM" por sus siglas en Ingles).

_____ 2.   La solicitud no fue entregada de manera apropiada.

__X__ 3.   Su solicitud fue recibida después de la fecha límite para aplicar para recibir una boleta por correo para esta elección. (Marque abajo si es apropiado).

_____Sin embargo, ya que usted indico en la solicitud que su solicitud es una solicitud anual para votar por correo, la solicitud se considerará válida para las otras elecciones que sucedan este año y para las cuales su solicitud fue enviada antes de la fecha límite.

_____ 4.   Usted indico que desea votar por correo por que planea estar ausente del condado pero la dirección que usted proporciono para recibir su boleta no es una dirección fuera del condado.  Cuando usted aplica para votar por correo en base a que estará ausente del condado, la dirección a la cual usted recibirá su boleta debe estar ubicada fuera del condado.

_____ 5.   Si usted está encarcelado, para que pueda votar por correo es necesario que su boleta sea enviada directamente a la cárcel o al domicilio de algún familiar.  Su solicitud no indicó ninguna de estas direcciones.

_____ 6.   No firmó su solicitud.

_____ 7.   El testigo que firmó su solicitud no:
_____(a)   indicó, en la solicitud, qué parentesco o tipo relación existe entre ustedes;
_____(b)   indicó que además de no poder firmar, usted no puede poner su marca en la solicitud; o
_____(c)   proporciono su nombre completo en letra de molde y su dirección residencial.

_____ 8.   No indicó la base de elegibilidad por la cual usted tiene derecho a votar por correo.

_____ 9.   Para las elecciones primarias, usted debe indicar su preferencia de partido político. (Marque abajo si es apropiado).

_____Sin embargo, si usted envió una solicitud anual para votar por correo postal (Annual ABBM, por sus siglas en Ingles), usted recibirá las boletas para todas las demás elecciones oficiadas este año que no sean elecciones primarias o elecciones primarias de desempate.

_____ 10.   No proporciono la dirección residencial bajo la cual usted está registrado/a.

_____ 11.   Su solicitud fue recibida después de la fecha límite para recibir solicitudes para votar por correo postal. La fecha límite fue el _____ de _____, _____.
                                          (día)            (mes)              (año)

(Marque abajo si es apropiado)
_____ Sin embargo, ya que usted solicito una boleta para la elección de desempate, si una sucede, su solicitud es válida para esa elección.

_____ 12.   Los documentos del registro electoral indican que usted no está inscrito como votante y si ha solicitado dicha inscripción, ésta no entrará en vigor en o antes del Día de la Elección.

_____ 13.   No se pudo determinar las elecciones en las cuales usted desea votar por correo.

_____ 14.   Su solicitud fue inicialmente enviada por fax o correo electrónico, pero una copia impresa original de la solicitud no fue recibida dentro de los cuatro días hábiles.

_____ 15.   Otro:_____

Si usted desea votar por correo, es necesario que envíe otra solicitud a esta oficina y su solicitud debe ser recibida por_____ (Fecha). *Si la nueva solicitud es enviada por fax o por correo electrónico, la copia impresa original debe ser recibida dentro de cuatro días hábiles.

Si tiene una pregunta en cuanto a su solicitud, por favor comuníquese conmigo llamando al **(956) 681-1020**
                                                                                          (Número de Teléfono)

Reyes, Hiliberta
P O Box 52762
McAllen, TX  78505-2762

Secretario/a de Votación Anticipada

▼ FOLD OVER HERE AND SEAL ▼

## APPLICATION FOR BALLOT BY MAIL
(Solicitud Para Recibir Una Boleta Por Correo)

**For Official Use Only**
VUID: 1153 4644 01
PCT:

| Last Name | Suffix | First Name | Middle Initial |
|---|---|---|---|
| Reyes | | Hiliberta | |

**ADDRESS AT WHICH VOTER IS REGISTERED (DIRECCION DE RESIDENCIADE INSECRIPCION COMO VOTANTE)**

**Street Address**
417 S. 20½ St.                                    12/18/1937

| City | State | ZIP |
|---|---|---|
| McAllen | TX | 78505-2762 |

I am over 65 years of age and requesting an Annual Ballot By Mail to recieve a ballot or all elections in 2019, including local elections and the November 2019 General Election. Mail my ballot to the address indicated above (unless noted otherwise below.)

X _Hiliberta Reyes_

Signature of applicant. I certify that the information given in this application is true and I understand that giving false information in this application is a crim. Certifico que la información que se proporciona mediante esta solicitud es cierta y entiendo que es delito dar información falsa

**OPTIONAL: IF YOU ARE NOT ABLE TO RECEIVE YOUR BALLOT AT YOUR REGISTRATION ADDRESS (ABOVE), YOU MAY HAVE YOUR BALLOT MAILED TO AN ALTERNATE ADDRESS**

**STREET ADDRESS**
417 South 20½ Street

| CITY | STATE | ZIP |
|---|---|---|
| McAllen | Texas | 78501 |

| Check One of these 4 choices: | ☐ NURSING HOME, ASSISTED LIVING OR LONG TERM CARE FACILITY |
|---|---|
| | ☐ HOSPITAL |
| | ☐ RETIREMENT CENTER |
| | ☐ RELATIVE, RELATIONSHIP |

▼DO NOT TEAR PERFORATED TAB. FOLD OVER BOTTOM TO TOP AND SEAL WITH TAPE ▼

Street Address
PO Box 52762

City
McAllen

249

AW5-16
Prescrito por el Secretario de Estado
Código Electoral de Texas Secs. 86.008(b), 86.0015
12/17

## AVISO DE SOLICITUD RECHAZADA PARA RECIBIR UNA BOLETA POR CORREO

Su solicitud para recibir una boleta por correo postal fue recibida y analizada.  Hemos determinado que su solicitud debe ser rechazada por la siguiente razón:

(Marcar las que apliquen)

_____ 1.  Su solicitud fue recibida antes del 60° día antes de una elección celebrada en enero o febrero del año siguiente al año en que se presentó el ABBM ("ABBM" por sus siglas en Ingles).

_____ 2.  La solicitud no fue entregada de manera apropiada.

_____ 3.  Su solicitud fue recibida después de la fecha límite para aplicar para recibir una boleta por correo para esta elección. (Marque abajo si es apropiado).

　　　　　　_____ Sin embargo, ya que usted indico en la solicitud que su solicitud es una solicitud anual para votar por correo, la solicitud se considerará válida para las otras elecciones que sucedan este año y para las cuales su solicitud fue enviada antes de la fecha límite.

_____ 4.  Usted indico que desea votar por correo por que planea estar ausente del condado pero la dirección que usted proporciono para recibir su boleta no es una dirección fuera del condado.  Cuando usted aplica para votar por correo en base a que estará ausente del condado, la dirección a la cual usted recibirá su boleta debe estar ubicada fuera del condado.

_____ 5.  Si usted está encarcelado, para que pueda votar por correo es necesario que su boleta sea enviada directamente a la cárcel o al domicilio de algún familiar.  Su solicitud no indicó ninguna de estas direcciones.

__X__ 6.  No firmó su solicitud.

_____ 7.  El testigo que firmó su solicitud no:
　　　_____ (a)  indicó, en la solicitud, qué parentesco o tipo relación existe entre ustedes;
　　　_____ (b)  indicó que además de no poder firmar, usted no puede poner su marca en la solicitud; o
　　　_____ (c)  proporciono su nombre completo en letra de molde y su dirección residencial.

__X__ 8.  No indicó la base de elegibilidad por la cual usted tiene derecho a votar por correo.

_____ 9.  Para las elecciones primarias, usted debe indicar su preferencia de partido político. (Marque abajo si es apropiado).

　　　　　　_____ Sin embargo, si usted envió una solicitud anual para votar por correo postal (Annual ABBM, por sus siglas en Ingles) usted recibirá las boletas para todas las demás elecciones oficiadas este año que no sean elecciones primarias o elecciones primarias de desempate.

__X__ 10.  No proporciono la dirección residencial bajo la cual usted está registrado/a.

_____ 11.  Su solicitud fue recibida después de la fecha límite para recibir solicitudes para votar por correo postal. La fecha límite fue el _____ de _____, _____.
　　　　　　　　　　　　　(día)　　　　(mes)　　　　(año)

　　　　　　(Marque abajo si es apropiado)
　　　　　　_____ Sin embargo, ya que usted solicito una boleta para la elección de desempate, si una sucede, su solicitud es válida para esa elección.

_____ 12.  Los documentos del registro electoral indican que usted no está inscrito como votante y si ha solicitado dicha inscripción, ésta no entrará en vigor en o antes del Día de la Elección.

_____ 13.  No se pudo determinar las elecciones en las cuales usted desea votar por correo.

_____ 14.  Su solicitud fue inicialmente enviada por fax o correo electrónico, pero una copia impresa original de la solicitud no fue recibida dentro de los cuatro días hábiles.

_____ 15.  Otro: _____

Si usted desea votar por correo, es necesario que envíe otra solicitud a esta oficina y su solicitud debe ser recibida por_____(Fecha). *Si la nueva solicitud es enviada por fax o por correo electrónico, la copia impresa original debe ser recibida dentro de cuatro días hábiles.

Si tiene una pregunta en cuanto a su solicitud, por favor comuníquese conmigo llamando al **(956) 681-1020**
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　(Número de Teléfono)

Pena, Michelle
2630 Lucille Ave.
Saint Joseph MO  64506-1954

Secretario/a de Votación Anticipada

▼ FOLD OVER HERE AND SEAL ▼

# APPLICATION FOR BALLOT BY MAIL
## (Solicitud Para Recibir Una Boleta Por Correo)

**For Official Use Only**

VUID: 2120174622

PCT: _____

| Last Name | Suffix | First Name | Middle Initial |
|-----------|--------|------------|----------------|
| Pena | | Michelle | |

**ADDRESS AT WHICH VOTER IS REGISTERED (DIRECCION DE RESIDENCIADE INSCRIPCION COMO VOTANTE)**

**Street Address**

2630 Lucille Ave

| City | State | ZIP |
|------|-------|-----|
| Saint Joseph | MO | 64506-1954 |

10/23/1974

I am over 65 years of age and requesting an Annual Ballot By Mail to recieve a ballot or all elections in 2019, including local elections and the November 2019 General Election. Mail my ballot to the address indicated above. (unless noted otherwise below.)

Signature of applicant. I certify that the information given in this application is true and I understand that giving false information in this application is a crim. Certifico que la información que se proporciona mediante esta solicitud es cierta y entiendo que se delito dar información falsa

**OPTIONAL : IF YOU ARE NOT ABLE TO RECEIVE YOUR BALLOT AT YOUR REGISTRATION ADDRESS (ABOVE), YOU MAY HAVE YOUR BALLOT MAILED TO AN ALTERNATE ADDRESS**

**STREET ADDRESS**

| Check One of these 4 choices: | ☐ NURSING HOME, ASSISTED LIVING OR LONG TERM CARE FACILITY |
|---|---|
| | ☐ HOSPITAL |
| | ☐ RETIREMENT CENTER |
| | ☐ RELATIVE, RELATIONSHIP _____ |

| CITY | STATE | ZIP |
|------|-------|-----|
| | | |

▼ DO NOT TEAR PERFORATED TAB. FOLD OVER BOTTOM TO TOP AND SEAL WITH TAPE ▼

1251

AW5-16
Presorío por el Secretario de Estado
Código Electoral de Texas Secs. 86.008(b), 86.0015
12/17

## AVISO DE SOLICITUD RECHAZADA PARA RECIBIR UNA BOLETA POR CORREO

Su solicitud para recibir una boleta por correo postal fue recibida y analizada.  Hemos determinado que su solicitud debe ser rechazada por la siguiente razón:

(Marcar las que apliquen)

_____ 1.  Su solicitud fue recibida antes del 60º día antes de una elección celebrada en enero o febrero del año siguiente al año en que se presentó el ABBM ("ABBM" por sus siglas en Ingles).

_____ 2.  La solicitud no fue entregada de manera apropiada.

__X__ 3.  Su solicitud fue recibida después de la fecha límite para aplicar para recibir una boleta por correo para esta elección. (Marque abajo si es apropiado).

_____ Sin embargo, ya que usted indico en la solicitud que su solicitud es una solicitud anual para votar por correo, la solicitud se considerará válida para las otras elecciones que sucedan este año y para las cuales su solicitud fue enviada antes de la fecha límite.

_____ 4.  Usted indico que desea votar por correo por que planea estar ausente del condado pero la dirección que usted proporciono para recibir su boleta no es una dirección fuera del condado.  Cuando usted aplica para votar por correo en base a que estará ausente del condado, la dirección a la cual usted recibirá su boleta <u>debe</u> estar ubicada fuera del condado.

_____ 5.  Si usted está encarcelado, para que pueda votar por correo es necesario que su boleta sea enviada directamente a la cárcel o al domicilio de algún familiar.  Su solicitud no indicó ninguna de estas direcciones.

_____ 6.  No firmó su solicitud.

_____ 7.  El testigo que firmó su solicitud no:
  _____ (a)  indicó, en la solicitud, qué parentesco o tipo relación existe entre ustedes;
  _____ (b)  indicó que además de no poder firmar, usted no puede poner su marca en la solicitud; o
  _____ (c)  proporciono su nombre completo en letra de molde y su dirección residencial.

_____ 8.  No indicó la base de elegibilidad por la cual usted tiene derecho a votar por correo.

_____ 9.  Para las elecciones primarias, usted debe indicar su preferencia de partido político. (Marque abajo si es apropiado).

_____ Sin embargo, si usted envió una solicitud anual para votar por correo postal (Annual ABBM, por sus siglas en Ingles), usted recibirá las boletas para todas las demás elecciones oficiadas este año <u>que no sean</u> elecciones primarias o elecciones primarias de desempate.

_____ 10.  No proporciono la dirección residencial bajo la cual usted está registrado/a.

_____ 11.  Su solicitud fue recibida después de la fecha límite para recibir solicitudes para votar por correo postal.  La fecha límite fue el _____ de _____, _____.
  <u>(día)        (mes)        (año)</u>

(Marque abajo si es apropiado)
_____ Sin embargo, ya que usted solicito una boleta para la elección de desempate, si una sucede, su solicitud es válida para esa elección.

_____ 12.  Los documentos del registro electoral indican que usted no está inscrito como votante y si ha solicitado dicha inscripción, ésta no entrará en vigor en o antes del Día de la Elección.

_____ 13.  No se pudo determinar las elecciones en las cuales usted desea votar por correo.

_____ 14.  Su solicitud fue inicialmente enviada por fax o correo electrónico, pero una copia impresa original de la solicitud no fue recibida dentro de los cuatro días hábiles.

_____ 15.  Otro: _____

Si usted desea votar por correo, es necesario que envíe otra solicitud a esta oficina y su solicitud debe ser recibida por_____ (Fecha).  *Si la nueva solicitud es enviada por fax o por correo electrónico, la copia impresa original debe ser recibida dentro de cuatro días hábiles.

Si tiene una pregunta en cuanto a su solicitud, por favor comuníquese conmigo llamando al **(956) 681-1020**
(Número de Teléfono)

_____
Secretario/a de Votación Anticipada

Cepeda, Juanita
1120 Oakland Ave.
McAllen, TX 78501

DO NOT REMOVE PERFORATED TABS. Moisten here and fold bottom to top to seal.        DO NOT REMOVE PERFORATED TABS. Moisten here and fold bottom to top to seal.

Prescribed by the Office of the Secretary of State of Texas
AS-15 12/17

For Official Use Only
VUID #, County Election Precinct #,
Statement of Residence, etc.

## Application for Ballot by Mail

**1** Last Name (Please print information)
Cepeda

Suffix (Jr., Sr., III, etc)

First Name
Juanita

Middle Initial

**2** Residence Address: See back of this application for instructions.
170 Oakland Ave

City
McAllen

State
TX

Zip Code
78501

**3** Mail my ballot to: Mailing address differs from residence address, please complete Box #7.
170 Oakland Ave

City
McAllen

State
TX

Zip Code
78501

**4** Date of Birth (mm/dd/yyyy) (Optional)
01/08/1935

**Contact Information (Optional)**
Please list phone number and/or email address:
* Used in case our office has questions.

**5** Reason for Voting by Mail:
☐ 65 years of age or older. (Complete Box #6a)
☐ Disability. (Complete Box #6a)
☐ Expected absence from the county. (Complete Box #6b and Box #8)
   You will receive a ballot for the upcoming election only.
☐ Confinement in jail. (Complete Box #6b)
   You will receive a ballot for the upcoming election only.

**6a** ONLY Voters 65 Years of Age or Older or Voters with a Disability:
If applying for one election, select appropriate box.
If applying once for elections in the calendar year, select "Annual Application."
☐ Annual Application

Primary Elections:
You must declare one political party to vote in a primary.
☐ May Election
☐ November Election      ☐ Democratic Primary
☐ Other ____              ☐ Republican Primary
                          ☐ Any Resulting Runoff

**6b** ONLY Voters Absent from County or Voters Confined in Jail:
You may only apply for a ballot by mail for one election, and any resulting runoff.
Please select the appropriate box.

Uniform and Other Elections:
Primary Elections:
You must declare one political party to vote in a primary.
☐ May Election
☐ November Election      ☐ Democratic Primary
☐ Other ____              ☐ Republican Primary
                          ☐ Any Resulting Runoff

**7** If you are requesting this ballot be mailed to a different address (other than residence), indicate where the ballot will be mailed. See reverse for instructions.
☐ Mailing Address as listed on my voter registration certificate       ☐ Address of the Jail
☐ Nursing home, assisted living facility, or long term care facility    ☐ Relative; relationship ____
☐ Hospital                                                              ☐ Address outside the county (see Box #8)
☐ Retirement Center

**8** If you selected "expected absence from the county," see reverse for instructions
Date of return to residence address
Date you can begin to receive mail at this address

**9** Voters may submit a completed, signed, and scanned application to the Early Voting Clerk at:
plara@mcallen.net
(early voting clerk's e-mail address)

(956) 681-1029
(early voting clerk's fax)

NOTE: If you fax or e-mail this form, please be aware that you must also mail this form to the early voting clerk within four business days. See "Submitting Application" on the back of this form for additional information.

**10** "I certify that the information given in this application is true, and I understand that giving false information in this application is a crime."

X _____
SIGN HERE
If applicant is unable to sign or make a mark in the presence of a witness, the witness shall complete Box #11.

Date

**11** If someone helped you to complete this form or mails the form for you, then that person must complete the sections below.

See back for Witness and Assistant definitions.

If applicant is unable to mark Box #10 and you are acting as a Witness to that fact, please check this box and sign below. ☐

If you assisted the applicant in completing this application in the applicant's presence or e-mailed/mailed or faxed the application on behalf of the applicant, please check this box as an Assistant and sign below.
★ If you are acting as Witness and Assistant, please check both boxes. Failure to complete this information in signature was not witnessed or applicant was assisted in completing the application.

X _____
Signature of Witness /Assistant

Street Address

State

X _____
Printed Name of Witness/Assistant

City

Apt Number (if applicable)

ZIP Code

Witness' Relationship to Applicant
(Refer to Instructions on back for clarification)

AW5-16
Prescribed by Secretary of State
Section 86.008(b), 86.0015 Texas Election Code
12/17

## NOTICE OF REJECTED APPLICATION FOR BALLOT BY MAIL

I have received and reviewed your application for a ballot by mail. I have determined that your application must be rejected for the following reason(s):

(Check as applicable)

_____ 1. Your application was received earlier than the 60th day before an election held in January or February of the year following the year the ABBM was submitted.

_____ 2. Your application was not properly delivered.

_____ 3. Your application was received after the deadline to apply for a ballot by mail for the upcoming election. (Check if appropriate:)

_____ However, since you indicated on the application that it was to be an Annual application for a ballot by mail, the application will be considered valid for other elections held this year and for which the application was submitted before the deadline.

_____ 4. You indicate you are voting due to expected absence from the county, but the address to which your ballot is to be sent is not an address outside the county. When voting by mail on the grounds of expected absence from the county, the address to which your ballot is to be mailed must be outside the county.

_____ 5. When voting by mail due to confinement in jail, the address to which your ballot is to be mailed must be that of the jail or a relative. Your application did not indicate either address.

_____ 6. Your application was not signed.

_____ 7. The witness who signed your application did not:

_____ (a) indicate a relationship on your application;

_____ (b) indicate that you were unable to make your mark in lieu of your signature; or

_____ (c) provide his or her printed name or residence address.

_____ 8. Your application did not indicate the reason you are entitled to vote by mail.

_____ 9. For a primary election, you must indicate your party preference. (Check if appropriate:)

_____ However, if you have submitted an Annual ABBM, you will receive ballots for other elections held this year other than the Primary or Runoff Election.

_____ 10. Your residence address of registration was not provided on your application.

_____ 11. Your application was received after the deadline for receiving an application for a ballot by mail. The deadline for receiving the application was _____.
(Date)

(Check if appropriate)

_____ However, since you have requested a ballot for the run-off election, if one is to be held, your application is valid for that election.

_____ 12. According to the records of the voter registrar, you are not currently registered to vote or your registration, if you have applied, will not be effective on or before election day.

_____ 13. I could not determine the election for which you were applying for a ballot.

_____ 14. Your application was initially submitted via fax or email, but an original hardcopy of the application was not received within four business days.

__X__ 15. Other: **District you reside in (#6) is currently not having an election.**

If you wish to vote, it will be necessary for you to submit another application to me, and that application must be received by _____ *If new application is faxed or emailed, the original hardcopy must be received within four
(*Date)                                          business days.

If you have any questions regarding your application, please contact me at **(956) 681-1020**
(Phone Number)

_____
Early Voting Clerk

**Robeson, Robert L.**
**1616 N. 8th Street**
**McAllen  TX 78501**

1254

Last Name (Please print information): **RODESON** **Robeson**
First Name: **Robert**
Suffix (Jr., Sr., III, etc): **SR.**
Middle Initial: **Leslie** (A)

Residence Address: **1612 N. 9TH STREET**
City: **McAllen**
State: **TX**
ZIP Code: **78501**

Mail my ballot to: If mailing address differs from residence address, please complete Box #7.

**Contact Information (Optional)**
Please list phone number and/or email address:
* Used in case our office has questions.
**956-686-3148**
**para@mcallen.net**

Date of Birth (mm/dd/yyyy) (Optional): **01/01/1935**

**5. Reason for Voting by Mail:**
☐ 65 years of age or older. (Complete Box #6a)
☐ Disability. (Complete Box #6a)
☐ Expected absence from the county (Complete Box #6b and Box #8)
☐ Confinement in Jail. (Complete Box #6b)

**If you are requesting this ballot to be mailed to a different address (other than residence), indicate where the ballot will be mailed. See reverse for instructions.**
☐ Mailing Address as listed on my voter registration certificate
☐ Nursing home, assisted living facility, or long term care facility
☐ Hospital
☐ Retirement Center
☐ Address of the Jail
☐ Relative; relationship ____
☐ Address outside the county (See Box #8)

**6a. ONLY Voters 65 Years of Age or Older or Voters with a Disability:**
☑ Annual Application

**6b. ONLY Voters Absent from County or Voters Confined in Jail:**

**Primary Elections** (May Election / November Election / Other)

**8. If you selected "expected absence from the county," see reverse for instructions**

Date you can begin to receive mail at this address
Date of return to residence address
Early Voting Clerk at: **(956)681-1029** (early voting clerk's fax)

**10. "I certify that the information given in this application is true, and I understand that giving false information in this application is a crime."**

X **Robert L. Robeson**

SIGN HERE

Witness' Relationship to Applicant

Este formulario está disponible en Español. Para conseguir la versión en Español favor de llamar sin cargo al 1.800.252.8683 a la oficina del Secretario de Estado o la Secretaría de Votación por Adelantado.

AW5-16
Prescribed by Secretary of State
Section 86.008(b), 86.0015 Texas Election Code
12/17

## NOTICE OF REJECTED APPLICATION FOR BALLOT BY MAIL

I have received and reviewed your application for a ballot by mail. I have determined that your application must be rejected for the following reason(s):

(Check as applicable)

_____ 1.  Your application was received earlier than the 60th day before an election held in January or February of the year following the year the ABBM was submitted.

_____ 2.  Your application was not properly delivered.

_____ 3.  Your application was received after the deadline to apply for a ballot by mail for the upcoming election.
(Check if appropriate:)
_____ However, since you indicated on the application that it was to be an Annual application for a ballot by mail, the application will be considered valid for other elections held this year and for which the application was submitted before the deadline.

_____ 4.  You indicate you are voting due to expected absence from the county, but the address to which your ballot is to be sent is not an address outside the county. When voting by mail on the grounds of expected absence from the county, the address to which your ballot is to be mailed <u>must</u> be outside the county.

_____ 5.  When voting by mail due to confinement in jail, the address to which your ballot is to be mailed must be that of the jail or a relative. Your application did not indicate either address.

_____ 6.  Your application was not signed.

_____ 7.  The witness who signed your application did not:
_____ (a)  indicate a relationship on your application;
_____ (b)  indicate that you were unable to make your mark in lieu of your signature; or
_____ (c)  provide his or her printed name or residence address.

_____ 8.  Your application did not indicate the reason you are entitled to vote by mail.

_____ 9.  For a primary election, you must indicate your party preference.
(Check if appropriate:)
_____ However, if you have submitted an Annual ABBM, you will receive ballots for other elections held this year <u>other</u> than the Primary or Runoff Election.

_____ 10.  Your residence address of registration was not provided on your application.

_____ 11.  Your application was received after the deadline for receiving an application for a ballot by mail. The deadline for receiving the application was _____
                                                                                                                      (Date)

(Check if appropriate)
_____ However, since you have requested a ballot for the run-off election, if one is to be held, your application is valid for that election.

_____ 12.  According to the records of the voter registrar, you are not currently registered to vote or your registration, if you have applied, will not be effective on or before election day.

_____ 13.  I could not determine the election for which you were applying for a ballot.

_____ 14.  Your application was initially submitted via fax or email, but an original hardcopy of the application was not received within four business days.

__X__ 15.  Other: **District you reside in (#6) is currently not having an election.**

If you wish to vote, it will be necessary for you to submit another application to me, and that application must be received by _____ *If new application is faxed or emailed, the original hardcopy must be received within four
       (*Date)                                                business days.

If you have any questions regarding your application, please contact me at **(956) 681-1020**
                                                                                                                  (Phone Number)

                                                                                    _____
                                                                                              Early Voting Clerk

**Molina, Erica Nicole**
**5 Alexander St.**
**Brighton East VIC, 3187**
**Australia**

U60550592   (A)   Ma6

136-01-10038896

# Voter Registration and Absentee Ballot Request

Federal Post Card Application (FPCA)

**This form is for absent Uniformed Service members, their families, and citizens residing outside the United States. It is used to register to vote, request an absentee ballot, and update your contact information. See your State's instructions at FVAP.gov.**

Print clearly in blue or black ink.

## 1. Who are you? Pick one.

I request an absentee ballot for all elections in which I am eligible to vote AND:

- ☐ I am on active duty in the Uniformed Services or Merchant Marine -OR- ☐ I am an eligible spouse or dependent.
- ☐ I am an activated National Guard member on State orders.
- ☒ I am a U.S. citizen living outside the country, and I intend to return.
- ☐ I am a U.S. citizen living outside the country, and my return is uncertain.
- ☐ I am a U.S. citizen living outside the country, and I have never lived in the United States.

Sex ☒ Female  ☐ Male

| | |
|---|---|
| Last name | Molina |
| First name | Erica |
| Middle name | Nicole |
| Social Security Number | 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 |

Suffix (Jr., II)

Previous names (if applicable)

Birth date (MM/DD/YYYY)  10 / 25 / 1989

Driver's license or State ID #  24596201

## 2. What is your address in the U.S. State or territory where you are registering to vote and requesting an absentee ballot?

Your voting materials will not be sent to this address. See instructions on other side of form.

| | |
|---|---|
| Street address | 2708 N 8TH ST |
| City, town, village | MCALLEN |
| County | Hidalgo |

Apt #

State TX   ZIP 78501

## 3. Where are you now? You must give your CURRENT address to receive your voting materials.

Your mailing address. (Different from above)

Your mail forwarding address. (If applicable)

5 Alexander St Brighton East VIC, 3187, Australia

## 4. What is your contact information? This is so election officials can reach you about your request.

Provide the country code and area code with your phone and fax number. Do not use a Defense Switched Network (DSN) number.

Email:  ericanmolina@gmail.com

Alternate email: erica@finlaysoncommunications.com.au

Phone: 011 61 041 4086262

Fax:

## 5. What is your voting preference? Select One.

How do you want to receive voting materials from your election office?
- ☐ Mail
- ☒ Email or online
- ☐ Fax

What is your political party for primary elections?  Democratic

## 6. What additional information must you provide?

The following need more information: Alaska, Arizona, Puerto Rico, Vermont, and Virginia. (Ex. Proof of residency, employer, etc.)
You may also use this space to clarify your voter information. See the *Voting Assistance Guide* at FVAP.gov.

Receive Ballot For: All Federal elections for which I am eligible.

## 7. You must read and sign this statement.

**I swear or affirm, under penalty of perjury, that:**
- The information on this form is true, accurate, and complete to the best of my knowledge. I understand that a material misstatement of fact in completion of this document may constitute grounds for conviction of perjury.
- I am a U.S. citizen, at least 18 years of age (or will be by the day of the election), eligible to vote in the requested jurisdiction, and I am not disqualified to vote due to having been convicted of a felony or other disqualifying offense, nor have I been adjudicated mentally incompetent; or if so, my voting rights have been reinstated; and
- I am not registering, requesting a ballot, or voting in any other jurisdiction in the United States, except the jurisdiction cited in this voting form.

Today's date (MM/DD/YYYY)  19/6/2019

Sign here  X  E-M

This information is for official use only. Any unauthorized release may be punishable by law.

Previous editions are obsolete.

Standard Form 76 (Rev.09-2017), OMB No. 0704-0503

# EXHIBIT O



TEXAS SECRETARY OF STATE

# TOPICS COVERED

1. Eligibility to Vote by Mail
2. Submitting an ABBM
3. Reviewing, Rejecting, & Accepting ABBMs
4. Mailing balloting materials to voter.
5. Receiving and Securing the ballots by mail.
6. NEW Ballot by Mail Deadlines
7. Early Voting Records

Plus **NEW LAW** throughout.

10/23/2018        Texas Secretary of State Elections Division        2



TEXAS SECRETARY OF STATE

# ELIGIBILITY TO VOTE BY MAIL

3

Texas Secretary of State Elections Division

10/23/2018

TEXAS SECRETARY OF STATE



# Eligibility to Vote by Mail

- Any qualified voter may vote by mail if Voter:
  - Will be 65 or older on Election Day (Annual or Regular ABBM)
  - Has a Disability (Annual or Regular ABBM)
  - Expects to be absent from County during Early Voting and on Election Day
  - Is Confined in Jail
  - In Address Confidentiality Program
  - Is Military or Dependent of Military & Outside of Home Texas County (FPCA)

10/23/2018          Texas Secretary of State Elections Division          4



TEXAS SECRETARY OF STATE

# SUBMITTING ABBM

**Texas Secretary of State Elections Division**

5

10/23/2018

TEXAS SECRETARY OF STATE

# Ways to Vote by Mail



- Three different ways:

  – Application for Ballot by Mail (**ABBM**)

  – Annual Application for Ballot by Mail (**Annual ABBM**)

  – Federal Postcard Application (**FPCA**)

| Type | Who Can Use? | Application Delivery | Filing Period | Expiration Date | Ballots Received |
|---|---|---|---|---|---|
| Regular ABBM | • 65+ on Eday<br>• Disability<br>• Absent from County<br>• Confined in Jail<br>• Address Confidentiality | • In person by voter, before EV in person begins<br>• Regular Mail<br>• Common or Contract Carrier<br>• Fax<br>• Email (signed, scanned attachment) | January 1 of calendar year through 11th election day for which ballot is requested. | Good for one election only (plus runoff if requested). Expires after the election for which ballot was requested.<br>OR<br>Voter cancels ABBM. | Ballot(s) for election(s) held by early voting clerk to whom application submitted (and runoff ballot, if requested). |
| Annual ABBM | • 65+ on Eday<br>• Disability | • Same as Regular ABBM | January 1 of calendar year*+<br>*On or before 11th day before Eday, to receive ballot for that election<br>+Up to 60 days before election held in January or February. | December 31 OR Until:<br>• Voter cancels ABBM<br>• Registration cancelled<br>• Voter registers in a new county | All ballots for all elections held by all political subdivisions in the year in which submitted.+ |
| FPCA | • Military Voter<br>• Outside Home Texas County<br>• U.S. Citizen<br>• Overseas | • Regular Mail<br>• Common or Contract Carrier<br>• Fax<br>• Email (signed, scanned attachment) | January 1 of calendar year*+<br>*If registered, on or before 11th day before Eday, to receive ballot for that election. If not registered but eligible to register, not later than 20th day before Eday.<br>+Up to 60 days before election held in January or February. | Same as Annual ABBM | All ballots for all elections held by the county, city, or school district, in the year in which submitted (unless eligible for federal ballot only).+ |

TEXAS SECRETARY OF STATE

# Methods of Submitting an ABBM

- SOS's official (formal) application (84.011)

- Informal Application (84.002)

**Texas Secretary of State Elections Division**

10/23/2018

8

# TEXAS SECRETARY OF STATE

# Formal Application – Prescribed by SOS

DO NOT REMOVE PERFORATED TABS. Moisten here and fold bottom to top to seal.

Prescribed by the Office of the Secretary of State 8/2018

**Application for Ballot by Mail**

1. Last Name (Please Print Information)

2. Residence Address: See back of this application for instructions

3. Mail my ballot to: If mailing address differs from residence address, please complete Box # 7

4. Date of Birth (mm/dd/yyyy) (Optional)

5. Reason for Voting by Mail:
   - 65 years of age or older (Complete Box # 6a)
   - Disability (Complete Box # 6a)
   - Expected absence from the county (Complete Box #9b and Box #6)
   - Confinement in jail

6a. ONLY Voters 65 Years of Age or Older or Voters with a Disability
6b. ONLY Voters Absent from County or Voters Confined in Jail

**Texas Secretary of State Elections Division**

10/23/2018

9

TEXAS SECRETARY OF STATE



# Informal Application

☑ In writing (i.e., not verbal)

☑ Signed by applicant or witness

☑ Contain Applicant's Name

☑ State Registered Residence Address

☑ Contain Address that ballot will be mailed to

☑ State Grounds for voting by mail

☑ Indication of which election application is for and whether it is an annual application

10/23/2018

Texas Secretary of State Elections Division

10

TEXAS SECRETARY OF STATE

# When to submit an ABBM?



- ## First Day to Submit:
  - — All ABBMs: January 1
  - — **Annual ABBMs:** January 1, or 60 days before January or February Election, good for following year
- ## Deadline for Submission
  - — 11th day, unless weekend or holiday, in which case previous business day
  - — Deadline For May 4th, 2019 is Tuesday, April 23, 2019

10/23/2018          **Texas Secretary of State Elections Division**          11

TEXAS SECRETARY OF STATE

# Methods of Submission

- ABBMs can by submitted in the following ways:

  – In person by voter, before early voting in person begins

  – Regular Mail

  – Common or Contract Carrier

  – **Fax\*\***

  – **Email\*\***

**\*\*NEW LAW, SB 5 (2017).  All ABBMs submitted by fax or email can only be used if the original ABBM is received by the EV Clerk  no later than the fourth business day after the transmission. (NEW LAW, SB 5, (1 C.S. 2017).**

10/23/2018                    Texas Secretary of State Elections Division                    12

TEXAS SECRETARY OF STATE



# Email Delivery of ABBM

- Voter may send **COMPLETED, SIGNED, SCANNED** ABBM via email to address designated by EV Clerk

- EV Clerk designates email address to be used

- **Reminder** – Submitting via email only holds the date. Emailed ABBM is not sufficient unless the original is also submitted by mail!

# Annual ABBM

- Certain Voters may submit a single Annual ABBM and receive ballots for all elections held by all entities in which the voter is eligible to vote in that calendar year.

- **Eligible Voters:**

  - **ONLY** for Voters 65+ or with Disability

  - Applicant must **indicate** they want the ABBM to be an Annual ABBM (not automatic)

  - Voters applying for reason of absence from county do not qualify for Annual ABBM.

- Submitted to the early voting clerk of **ANY** political subdivision, not just to the county early voting clerk. Sec. 86.0015.

10/23/2018                    Texas Secretary of State                    14

TEXAS SECRETARY OF STATE

# Forwarding Annual ABBMs

- County EV Clerk required to create and maintain a **searchable** list of all the voters who have submitted Annual ABBMs with the County.

  - **"List of Annual ABBM Voters"**

- County must forward List and scans of Annual ABBMs to all Political Subdivisions in the County that:

  - Are having an election
  - For whom the county is NOT serving as the early voting clerk by law, by contract, or through a joint election agreement.

- NOTE - List and Forwarding procedure only apply to Annual ABBMs, not "single use" ABBMs.

TEXAS SECRETARY OF STATE



# Pertinent Dates for List & Scans

**Tuesday, March 5, 2019 (60th day before May 4, 2019 election day)** - *Recommended* date for county to send initial List of Annual ABBM Voters **(and scans** of Annual ABBMs) to Political Subdivisions

We recommend that the List be accompanied by the scanned ABBMs or that the scans follow shortly thereafter, so that entities can check the accuracy of the List.

**Tuesday, April 23, 2019 (11th day before May 4, 2019 election day)** - Last day for county to deliver final List of Annual ABBM Voters and scans of Annual ABBMs

— *Before* meeting of local EVBB



TEXAS SECRETARY OF STATE

# **Contents of List**

- Searchable document from County should contain:

- Voter's name, VUID, Precinct, Residence Address, Mailing Address (if different), date name added to List or changes made, & political subdivisions in which voter eligible to vote.

10/23/2018

**Texas Secretary of State**

17

TEXAS SECRETARY OF STATE

# Things to Check for on List of Annual ABBMS

- Includes ONLY ANNUALS, not all ABBMS

- No incorrect "Annual" ABBMs - e.g., voting for being out of county, but voter still selected annual

- Only those Annual ABBMS that are for that political subdivisions should be sent to the political subdivision, not all of the Annual ABBMS you have

- Be sure your VR lists are accurate and have the most recent boundaries of the political subdivision

  - NOTE: Political Subdivision still must ensure that each voter on the List is indeed eligible to vote in the political subdivision's election and to determine which ballot that individual should be sent.

10/23/2018                     **Texas Secretary of State Elections Division**                     18

TEXAS SECRETARY OF STATE

# REVIEWING, REJECTING, & ACCEPTING ABBMS

19

**Texas Secretary of State Elections Division**

**10/23/2018**

EXHIBIT 204

TEXAS SECRETARY OF STATE

# Reviewing ABBMs



- The EV Clerk should review the following items on an ABBM:
  - Timeliness
  - Proper Delivery (mail, common/contract carrier, fax, in person by voter, email)
  - Correct Clerk (if not, forward)
  - **Registration Status**
  - **Residence and Mailing Address**
  - Additional Considerations
    - outside county, disability, 65 or older

10/23/2018          Texas Secretary of State Elections Division          20

1277

TEXAS SECRETARY OF STATE



# Registration Status/Mailing Address

- Send balloting materials if:
  - Registered Residence is SAME as OLRV
  - Registered residence is SAME as OLRV but the MAILING ADDRESS is different from registered MAILING address only due to:
    - Voter located out of the county (must include out of county address)
    - Voter in Jail (address must be of jail or relative)
    - Voter in hospital, assisted living facility, nursing home, or living with a relative (then address has to be facility or relative address)

- Send ballot materials + **Statement of Residence** if:
  - Registered residence is Same as OLRV but voter is marked "S" or suspense.
  - Registered residence on ABBM is DIFFERENT from the OLRV but still within county/political subdivision.
    - If residence address on ABBM is not within the county/political subdivision, then EV Clerk should reject ABBM.

1278



# NEW LAW – HB 4034

(85th Legislature, R.S., 2017)

- If DOB, DL#, or SSN on ABBM or FPCA is different from what is in VR records, EV Clerk must notify the VR. VR updates VR records accordingly.

  – Recommend Procedure: EV Clerk sends copies of such ABBMs/FPCAs to VR, with a cover letter explaining why the ABBMS are being sent and if possible, with new/changed material highlighted.

  – This should already be happening with FPCAs

TEXAS SECRETARY OF STATE

EXHIBIT 20A

TEXAS SECRETARY OF STATE

# Rejecting Application



- Mail/otherwise deliver "Notice of Rejected Application for Ballot By Mail" (AW5-16)
  - Include new ABBM if original received on or before 18th day before election day
    - Tuesday, April 16, 2019, for May 4, 2019 election
- Keep rejected application in file & attach copy of rejection notice
- This notice may be emailed

1280



TEXAS SECRETARY OF STATE

# Accepting Application

- Place in Jacket Envelope

- Mail balloting materials to voter

- Place Voter's name on **Roster for Early Voting by Mail**

- Add Voter's name to **Precinct List of Early Voters**

- Make notation on list of registered voters that voter was mailed a ballot

- Enter information into TEAM, if applicable

# Texas Secretary of State



# MAILING BALLOTING MATERIALS

25

Texas Secretary of State Elections Division

10/23/2018

TEXAS SECRETARY OF STATE



# Mail Balloting Materials to Voter

- Mail to the Voter:
  - Ballot
  - Ballot (Secrecy) envelope
  - Carrier Envelope
    - Be sure that **Voter's Name** and the Name and Date of the Election are entered on the Carrier Envelope prior to mailing to voter)
  - Dear Voter Letter or other special Instructions
  - List of declared write-in candidates, if applicable
  - Statement of Residence, if applicable
  - Notice to Voter who must Provide ID & Reasonable Impediment Declaration Form, if applicable
  - Notice regarding postage, if applicable

10/23/2018

Texas Secretary of State Elections Division

26



TEXAS SECRETARY OF STATE

# Update "Roster for Early Voting by Mail"

- To show ballot mailed to voter (and later, received back from voter). (87.121)

- **NOTE:** We recommend that you create two rosters for your mail ballots—one for ballots that have been mailed but not returned and a separate list of ballots by mail that have been received. Neither roster should explicitly state that a voter on the list has submitted an Annual ABBM.

  - The name of a voter who has applied for a ballot by mail is not open record until:

    » the voter has returned their marked ballot by mail to the Early Voting Clerk, OR

    » The next business day after election day.

1284

TEXAS SECRETARY OF STATE



# Deadline to Mail Ballots

For Military or Overseas Voters (using FPCA <u>or</u> State ABBM):

- Mail ballots no later than the 45th day before election day:

  – Ballots must be mailed by this date or the 7th day after the clerk receives the application. If the early voting clerk cannot meet this 45th-day deadline, the clerk must notify the Secretary of State within 24 hours. (Secs. 86.004(b), 101.104).

- 45 day Deadline to mail ballots for May 4, 2019: <u>Wednesday, March 20, 2019</u>

10/23/2018                    Texas Secretary of State Elections Division                    28

TEXAS SECRETARY OF STATE

# Deadline to Mail Ballots

- For all Other Voters (not Military or Overseas):

  – EV Clerk must mail the balloting materials not later than the 7th day after the later of:

    • the date the EV Clerk has accepted a voter's application for a ballot by mail; OR

    • the date the ballots become available for mailing.

  – Mailing the ballots continues on a rolling basis as ABBMs come in and are processed

- If the 7th day after either of these dates is earlier than the 45th day before election day, the voter's ballot must be mailed no later than the 30th day before election day. (Sec. 86.004(a), as amended by SB 5, 85th Legislature, 1st C.S., 2017).

10/23/2018                    **Texas Secretary of State Elections Division**                    29



# Voting at Residential Care Facilities

- NOTE that Chapter 107 and other pertinent sections of the Election Code pertaining to voting at Residential Care Facilities, enacted by HB 658 (85th Legislature, R.S., 2017) were **Repealed** by S.B. 5 (85th Legislature, 1st C.S., 2017), effective December 1, 2017.

  – Therefore, voters who submit ABBMs requesting that their ballot be sent to a given RCF will have their ballots mailed to them in the normal manner, rather than delivered by RCF Judges.

TEXAS SECRETARY OF STATE



# Assisting Voter

- A voter may receive assistance with marking/reading ballot if voter has a physical disability/inability to read/mark ballot on their own.

- A voter may also receive assistance in **mailing** their ballot, if the voter is otherwise eligible to receive assistance on voting by mail.

- Assistant **MUST**:

  – Sign written oath, state name/address

- # of individual a person may assist is unlimited if assistant complies with requirements.

TEXAS SECRETARY OF STATE

# Assisting Voter – Criminal Penalties

- It is a criminal offense if:
  - Assistant does not provide name/address
  - Compensation based on number of voters assisted
  - Unlawful assistance
    - To voter not eligible for assistance
    - Prepares ballot other than voter directs
    - Suggests how voter should vote
    - Voter did not request assistance



10/23/2018        Texas Secretary of State Elections Division        32



33

# TEXAS SECRETARY OF STATE

# RECEIVING AND SECURING THE BALLOTS BY MAIL

**Texas Secretary of State Elections Division**

10/23/2018



# Receiving Early Voting Ballot By Mail

TEXAS SECRETARY OF STATE

- Submission/Delivery of Carrier Envelope

  – Mail or Common or Contract Carrier

    • EV Clerk must check mail box before end of election day; ballots delivered by 7:00 pm on election night must be counted that night

    • EV Clerk must also check mail box at 5:00 pm, first business day after election day

1291

TEXAS SECRETARY OF STATE

# Receiving Early Voting Ballot By Mail

- Hand-Delivery By Voter
  - Delivered directly to EV Clerk's Office (**not to a polling place**)
  - By the Voter whose Ballot it is - Cannot be done by Agent or Assistant
  - During the Hours Polls are Open **on Election Day only**
  - Voter Must Show Acceptable ID or complete RID and present Alternate ID
  - Voter signs Roster of Voters Hand-Delivering Carrier Envelope
  - May be done Curbside
  - Secure ballot just as a ballot delivered by any other method



35

**Texas Secretary of State Elections Division**

**10/23/2018**



# Receiving Early Voting Ballot By Mail

- Action on timely/properly returned ballots
  - Open delivery envelope, if any (Fed Ex, etc)
  - Place Carrier envelope in jacket envelope
    - Include delivery envelope in jacket, if applicable
  - More than one carrier in delivery envelope
    - Registered at same address?
  - Seal Jacket Envelope, keep in safe place, deliver to EVBB when required
  - Update "Roster for Early Voting by Mail" (and TEAM) to indicate ballot returned by voter.

TEXAS SECRETARY OF STATE



# Receiving Early Voting Ballot By Mail

- Ballots not timely-returned - or treated as such
  - Ballots received after applicable deadline
    - NEW LAW - Ballots that do not meet receipt requirements of HB 1151 or HB 929 (85th Legislature, R.S., 2017)
  - Improperly delivered ballots
    - Deliver Notice of Improper Delivery to voter; voter may present notice and vote on election day
  - Ballots/Carriers illegally possessed by unauthorized individual
- Enter time of receipt on carrier, retain carrier, preserve unopened carrier for retention period.

## NOTE: The above ballots DO NOT GO TO THE EVBB

- Option for Defective Carrier timely returned
  - E.g., voter fails to sign – 86.011(d)



TEXAS SECRETARY OF STATE

# NEW BALLOT BY MAIL DEADLINES

38

Texas Secretary of State Elections Division

10/23/2018

TEXAS SECRETARY OF STATE



# NEW LAW – HB 1151 and HB 929

(85th Legislature, R.S., 2017)

Together, these bills provide for 3 new time frames to receive ballots from:

1. Non-military or military voters using an **ABBM** voting **domestically,**

2. Non-military or military voters voting from **overseas** using an **ABBM**

3. **Non-military** voters voting from **overseas** using an **FPCA;** and

4. **Military** voters voting domestically or from overseas, using an **FPCA**

NOTE: Military voters will <u>rarely</u> use an ABBM under the circumstances 1 & 2, but *could* do so.

For Time Frames, see our **Fabulous Chart**

1296

| Type | Deadline to Receive Voted Ballot For Delivery | Cancellation or Receipt Mark Needed? | Election Code Section amended |
|---|---|---|---|
| **Regular ABBM/Domestic** - Military or U.S. citizen voting <u>domestically</u> (within U.S.) using ABBM (not FPCA) | - By close of election day (7:00 p.m.) **or** <br> - By 5:00 p.m. the day after election, or next business day (NBD), if day after election is a Saturday, Sunday, or legal state or national holiday <br> ➤ "Late Domestic Ballot" | • No <br><br> • Yes – by 7:00 p.m. at the location of the election on election day | HB 1151 - 86.007(a)(1) <br><br> HB 1151 - 86.007(a)(2) & (e) |
| **Annual ABBM** (age or disability, unlikely to submit Annual ABBM instead of FPCA is living overseas) | - By close of election day (7:00 p.m.) **or** <br> - By 5:00 p.m. the day after election, or NBD, if applicable. <br> ➤ "Late Domestic Ballot" | • No <br><br> • Yes – by 7:00 p.m. at the location of the election on election day | HB 1151 - 86.007(a)(1) <br><br> HB 1151 - 86.007(a)(2) & (e) |
| **Regular ABBM/Overseas** - Military or U.S. citizen voting <u>from overseas</u>, using ABBM (not FPCA) | 5th day after election day, or NBD, if applicable | Yes-by 7:00 p.m. at the location of the election on election day | HB 1151 - 86.007(d) & (e) |
| **FPCA/Non Military** - non-military U.S. Citizen voting <u>from overseas</u>, using FPCA | 5th day after election day, or NBD, if applicable | Yes-by 7:00 p.m. at the location of the election on election day | HB 1151 - 86.007(d) & (e) |
| **FPCA/Military** – military voter, voting either <u>domestically or from overseas</u>, using FPCA | 6th day after election, or NBD, if applicable | <u>No</u> | HB 929 - 101.057(b)- applies **only** to members of armed forces & merchant marine of the U.S., their spouse or a dependent |

TEXAS SECRETARY OF STATE

# When to Count Ballots By Mail

## NEW LAW – HB 1151 and HB 929

- IF received by 7:00 pm on election day – MUST count on **election night.**

- Domestic late ballots received by **5:00 pm on the day after election day** (or the next business day)* – count when EVBB reconvenes after election day to count overseas ballots(no later than 9th day after Election Day for election other than General Election for State and County officers)

- Ballots from Overseas mailed by **Non-Military Voters** who submitted ABBM or FPCA or **Military voters who submitted ABBM** (rare) received by **5th day after election day** (or next business day)* – count when EVBB reconvenes after election day to count overseas ballots (no later then 9th day after Election Day for election other than General Election for State and County officers)

- Ballots from **Military voters – Domestic OR Overseas who submitted FPCA received by 6th day after election day** (or next business day) – count when EVBB reconvenes after election day to count overseas ballots(no later then 9th day after Election Day for election other than General Election for State and County officers)

*Must be postmarked or receipt marked by 7 pm on election day.

EXHIBIT 40-A

TEXAS SECRETARY OF STATE

# Organization & Security of By Mail Ballots Before Transport to EVBB



- Election Code is silent

- *Recommended* - Store Jacket envelopes (containing carrier envelopes, ABBMs, other documents relevant to the voter's by-mail ballot) in containers in alphabetical order
  - Includes FPCA, signature sheet, etc.

- Store Containers with jacket envelopes in secure location, such as lockable closet

- Do NOT put by-mail ballots and materials in ballot box containing ballots cast in person

- Task key personnel with security of by mail materials; not common access

10/23/2018        Texas Secretary of State Elections Division        42

TEXAS SECRETARY OF STATE

# Transport of By-Mail Ballots to EVBB



- EV Clerk Posts Notice of Delivery each time ballots are provided to EVBB or SVC

- Communicate with PJ of EVBB or SVC for when delivery should occur

- EV Clerk is responsible for secure transfer of by-mail ballots and materials to PJ of EVBB or Chair of SVC at time designated by PJ or Chair

10/23/2018

**Texas Secretary of State Elections Division**

43



44

Texas Secretary of State Elections Division

# EARLY VOTING RECORDS

10/23/2018

TEXAS SECRETARY OF STATE

# Early Voting Rosters

- EV Clerks shall maintain roster for each election listing who votes early in person, and who is <u>mailed a ballot by mail.</u>

- Roster must be updated daily.

- **Roster MUST include:**
  - Name, address, VUID
  - Voter's county election precinct of registration
  - Date of voting or **date ballot was mailed to the person.**
  - For mail voters, date

- **Recommendation:** We recommend that you create two rosters for your mail ballots—one for ballots that have been mailed but not returned and a separate list of ballots by mail that have been received.



**10/23/2018**        **Texas Secretary of State Elections Division**    45

# Availability of EVBM Records



- Early Voting Rosters

  – Information on the early voting roster for a person to whom a ballot has been mailed is not available until the 1st business day after election day. [Sec. 87.121(f)]

  - Except to a voter seeking to verify the accuracy of his or her own ballot by mail. [Sec. 87.121(f)]

  - Except - name of a voter who voted by mail is available no later than the day following the day the early voting clerk receives the ballot. [Sec. 87.121(h)]

TEXAS SECRETARY OF STATE

# Availability of EVBM Records

ABBM & Carrier Envelope

- **NEW LAW – HB 2559** (85th Legislature, R.S., 2017): A copy of an ABBM including the Annual ABBM is not available for public inspection (except to the voter whose application it is) until the first business day after the election day of the **EARLIEST** occurring election (rather than latest) for which the application is submitted. (Sec. 86.014(a), as amended).

  – So it's available after the <u>first</u> election, rather than the last.

- Originals of any ABBMs and Carrier Envelopes are not available for public inspection until those materials are delivered to the custodian after the election. (Sec. 86.014(b)).



1304



# Questions?

## elections@sos.texas.gov

TEXAS SECRETARY OF STATE

TEXAS SECRETARY OF STATE

# Voting by Federal Postcard Application (FPCA)







Alli Fick – Staff Attorney

Texas Secretary of State

November 2018 Election Law Seminar



10/23/2018

Texas Secretary of State Elections Division

1

# What does the FPCA form do?

TEXAS SECRETARY OF STATE



- Dual function:

  — Registers the individual onto the permanent voter rolls 30 days after receipt by the county

  — Functions as an application for ballot by mail

1307

TEXAS SECRETARY OF STATE



# Who can use the FPCA to request a ballot by mail?

- Must be a qualified voter or, if not a registered voter, would be qualified if registered

- The person is:

  – Member of the U.S. armed forces, spouses, and dependents (outside their home Texas county)

  – Member of the U.S. merchant marines, spouses and dependents (outside their home Texas county)

  – U. S. Citizens (nonmilitary) temporarily overseas

10/23/2018          **Texas Secretary of State Elections Division**          3



# Form and Contents of Application

- Application must:

  - Be submitted on official federal postcard application form

    - Prescribed by the Federal Voting Assistance Program

  - Include information indicating the applicant is eligible to vote in the election for which ballot is requested

TEXAS SECRETARY OF STATE



# Official Application – FVAP.gov

**TEXAS SECRETARY OF STATE**

## Voter Registration and Absentee Ballot Request
Federal Post Card Application (FPCA)

Print clearly in blue or black ink.

This form is for absent Uniformed Service members, their families, and citizens residing outside the United States. It is used to register to vote, request an absentee ballot, and update your contact information. See your State's instructions at FVAP.gov.

**1. Who are you? Pick one.**

I request an absentee ballot for all elections in which I am eligible to vote; AND:
- ☐ I am on active duty in the Uniformed Services or Merchant Marine –OR– ☐ I am an eligible spouse or dependent.
- ☐ I am a U.S. citizen living outside the country, and I intend to return.
- ☐ I am a U.S. citizen living outside the country, and my return is uncertain.
- ☐ I am a U.S. citizen living outside the country, and I have never lived in the United States.

Last name _____ Suffix (Jr., II) _____
First name _____ Previous name(s) (if applicable) _____
Middle name _____ Birth date (MM/DD/YYYY) _____
Social Security Number _____ Driver's license or State ID # _____
Sex ☐ Female ☐ Male

**2. What is your address in the U.S. State or territory where you are registering to vote and requesting an absentee ballot?**
Your voting materials will not be sent to this address. See instructions on other side of form.

Street address _____ Apt # ____
City, town, Village _____ State ____
County _____ ZIP ____

**3. Where do you want your voting materials sent? You must give us your CURRENT address to receive your voting materials.**

Your mailing address. (Different from above) _____
Your mail forwarding address. (If applicable) _____

**4. What is your contact information? This is so election officials can reach you about your request.**
Provide the country code and area code with your phone and fax number. Do not use a Defense Switched Network (DSN) number.

Email: _____ Phone: ____
Alternate email: _____ Fax: ____
What is your political party for primary elections? ____

**5. What is your voting residence? Select one.**
How do you want to receive voting materials from your election official?
☐ Mail
☐ Email or online
☐ Fax

**6. What additional information must you provide?**
The following need more information: Alaska, Arizona, Puerto Rico, Vermont, and Virginia, etc. Proof of residency, employee, etc.
You may also use this space to clarify your voter information. See the Voting Assistance Guide at FVAP.gov.

**7. You must read and sign this statement.**

I swear or affirm, under penalty of perjury, that:
- The information on this form is true, accurate, and complete to the best of my knowledge. I understand that a material misstatement of fact in completion of this document may constitute grounds for conviction of perjury.
- I am a U.S. citizen, at least 18 years of age (or will be by the day of the election), eligible to vote in the requested jurisdiction, and
- I am not disqualified to vote due to having been convicted of a felony or other disqualifying offense, nor have I been adjudicated mentally incompetent; or if so, my voting rights have been reinstated; and
- I am not registering, requesting a ballot, or voting in any other jurisdiction in the United States, except the jurisdiction cited in this voting form.

Sign here ► X _____ Today's date (MM/DD/YYYY) __/__/__

---

**Texas Secretary of State Elections Division**

10/23/2018

5

1310

EXHIBIT 40

TEXAS SECRETARY OF STATE



# FPCA and Voter Registration

EV clerk should make a copy of the FPCA (for mailing ballots, keeping records, etc.) and then must forward the original FPCA to the county voter registrar so that it may be processed for registration.

— Voter Registrar determines whether to add the voter to the registration list.

10/23/2018

Texas Secretary of State Elections Division

6

# Texas Secretary of State

## FPCA Affirmation Reasons as they Relate to Voter Registration and Ballot by Mail

| | |
|---|---|
| "I am on active duty in the Uniformed Services or Merchant Marine." | • Ballot is issued by the EV clerk.<br>• VR registers the individual or updates a permanent voter record. |
| "I am an activated National Guard member on State orders." | • **NOT** eligible to receive ballots via FPCA<br>• VR registers the individual or updates a permanent voter record. |
| "I am a U.S. citizen living outside the country, and I intend to return." | • Ballot is issued by the EV clerk.<br>• VR registers the individual or updates a permanent voter record. |
| "I am a U.S. citizen living outside the country, and my return is uncertain." | • **FEDERAL BALLOT** only is issued by EV clerk<br>• **NOT** eligible for voter registration<br>• **CANCELS** an existing registration |
| "I am a U.S. citizen living outside the country, and I have never lived in the United States." | • **NOT** eligible to receive ballots<br>• **NOT** eligible for voter registration<br>• **CANCELS** an existing registration |

TEXAS SECRETARY OF STATE

# Submitting the Application



- Application must be submitted by mail, fax, or email (signed, scanned copy) to the EV clerk

  – If FAXED, the original application must be received by the EV clerk no later than the 4th business day after receiving the faxed FPCA

  – Emailed FPCAs do not have to be followed up with the original application

- FPCAs may not be hand-delivered



1313

TEXAS SECRETARY OF STATE



# Submitting the Application

- If not received by the deadline, the FPCA must be rejected for ballot purposes but would still serve to register the voter

10/23/2018

**Texas Secretary of State Elections Division**

9

TEXAS SECRETARY OF STATE

# Contact Information



Please ensure that the contact information for your county election official is accurate on FVAP.gov and the Secretary of State's website!

- **Texas Secretary of State:**
  - https://www.sos.state.tx.us/elections/voter/county.shtml

- **FVAP:**
  - https://www.fvap.gov/search-offices?state=43

10/23/2018                    Texas Secretary of State Elections Division                    10

TEXAS SECRETARY OF STATE



# Timeframes for Submitting the FPCA

- General rule: deadline is the 11th day before Election Day

- FPCAs may be submitted any time during the calendar year

  - Note: An FPCA for a January or February election may not be filed earlier than the 60th day before the date of the January or February election.

- FPCA is considered submitted when received by the EV clerk

FPCA is valid for mail ballot purposes for one calendar year

10/23/2018                    Texas Secretary of State Elections Division                    11

# Intent to Return / Timeliness



- Applicant is entitled to receive a full ballot (federal and nonfederal offices) if the FPCA is submitted on or before the 20th day before Election Day and application contains information for registering to vote

- Applicant also receives a full ballot if FPCA is submitted after the 20th day and by the 11th day deadline and the applicant is already registered to vote

- If the FPCA does not have a postmark, it is timely if received by the EV clerk by the 15th day before the election

10/23/2018          **Texas Secretary of State Elections Division**          12

TEXAS SECRETARY OF STATE

# Applying for More than One Election with the Same Application



- A person may apply with an FPCA for a ballot for one or more elections with the same application

- The EV clerk must forward a copy of the FPCA to the city and school EV clerks in the calendar year in which the application is received and the person is eligible to vote

  – Note: County EV clerk does not forward FPCAs to the city or school EV clerks from voters who indicated they are indefinitely away

TEXAS SECRETARY OF STATE





# Method of Providing Ballot

- Hard copy by mail (default method)
  - Voter must provide a mailing address to show voter's location outside the county (military) or outside the U.S. (nonmilitary)
  - Inside the U.S. for forwarding to location outside the U.S. (can be address in the county)
- E-mail
  - Voter must still provide a mailing address to show voter's location outside the county (military) or outside the U.S. (nonmilitary)
- Common or contract carrier (if paid for by voter)
- Unmarked ballots may **not** be faxed

10/23/2018          Texas Secretary of State Elections Division          14

TEXAS SECRETARY OF STATE



# Return of Voted Ballot

- Regular deadline
  - Receipt by 7:00 p.m. on Election Day

- Method of returning voted ballot
  - Voted ballot may be returned by mail, common carrier, or courier
  - Ballot may be faxed if a military voter is voting from a combat zone or hostile fire pay area
    - We will issue an advisory on what areas are officially designated as combat zones or hostile fire pay areas.

**10/23/2018**      **Texas Secretary of State Elections Division**      15



TEXAS SECRETARY OF STATE

# FPCA Ballot Tracker

- The MOVE Act requires the State to provide FPCA voters a method to track the status of their ballot

- The Secretary of State has created the FPCA Ballot Tracker website: https://webservices.sos.state.tx.us/FPCA/index.aspx

10/23/2018                    Texas Secretary of State Elections Division                    16

TEXAS SECRETARY OF STATE

# Submission of Voted Ballot Status



- Deadline to submit ballot status data

  – **EV clerk** must submit the ballot status information within 3 business days of the status change

  – Entering the FPCA into TEAM and reporting ballot activity either through manual data entry or Voting History File Import

    • Date ballot mailed, emailed or both

    • Date ballot received by EV clerk (if applicable)

    • Date ballot returned as undeliverable by post office (if applicable)

    • Whether ballot was accepted or rejected

10/23/2018          **Texas Secretary of State Elections Division**          17

TEXAS SECRETARY OF STATE

# Additional Action by Early Voting Clerk

- Entry on EV roster must include a notation indicating the voter is an FPCA registrant

TEXAS SECRETARY OF STATE

# Counting of Late Ballots



- <u>Non-military FPCA voters (U.S. citizens overseas)</u>

  – Voted ballot that arrives late may be counted if:

    - Cast outside the United States
    - Properly addressed
    - Postmarked by 7:00 pm on Election Day
    - Arrives not later than the 5th day after Election Day or next regular business day

# Counting of Late Ballots



- **Military FPCA voters (domestic or overseas)**

  – Voted ballot that arrives late shall be counted if:

  - Arrives not later than the 6th day after the election or next regular business day

  – Applies to members of the armed forces, merchant marines, spouses, dependents

- The carrier envelope does NOT need to be postmarked in order to be counted

1325



Texas Secretary of State

# Questions?

# elections@sos.texas.gov

10/23/2018

Texas Secretary of State Elections Division

21

# EXHIBIT S


**CITY OF McALLEN**

<u>**ITEM SUMMARY**</u>

BOARD: City Commission

| | | |
|---|---|---|
| AGENDA ITEM | 3.H. |
| DATE SUBMITTED | |
| MEETING DATE | 04/24/2017 |

1. Agenda Item: <u>Order for Signature Verification Committee for McAllen General City Election.</u>

2. Party Making Request: Perla Lara

3. Applicant:

4. Nature of Request:

5. Fiscal Impact Summary:

6. Budgeted:

    Bid Amount: _____     Budgeted Amount: _____
    Under Budget: _____   Over Budget: _____
                                Amount Remaining: _____

7. Routing:

    Cindy Gonzalez                          Created -
    Perla Lara
    Kevin Pagan

8. Staff Recommendation:

9. Advisory Board:

10. City Attorney:

11. Manager's Recommendation:

 **CITY OF McALLEN**

Mayor James "Jim" Darling
Mayor Pro-Tem/Commissioner Hilda Salinas
Mayor Pro-Tem/Commissioner Aida Ramirez
City Manager Roel "Roy" Rodriguez, P.E.



Commissioner Richard F. Cortez
Commissioner Trey Pebley
Commissioner John J. Ingram
Commissioner Veronica Vela Whitacre

# AGENDA
## CITY COMMISSION REGULAR MEETING
## MONDAY, APRIL 24, 2017 – 5:00 PM
## MCALLEN CITY HALL
## CITY COMMISSION CHAMBERS; 3RD FLOOR
## 1300 HOUSTON AVENUE
## MCALLEN, TEXAS 78501



"At any time during the course of this meeting, the City Commission may retire to Executive Session under Texas Government Code 551.071(2) to confer with its legal counsel on any subject matter on this agenda in which the duty of the attorney to the City Commission under the Texas Disciplinary Rules of Professional Conduct of the State Bar of Texas clearly conflicts with Chapter 551 of the Texas Government Code. Further, at any time during the course of this meeting, the City Commission may retire to Executive Session to deliberate on any subject slated for discussion at this meeting, as may be permitted under one or more of the exceptions to the Open Meetings Act set forth in Title 5, Subtitle A, Chapter 551, Subchapter D of the Texas Government Code."

**CALL TO ORDER** - Mayor Jim Darling
**PLEDGE OF ALLEGIANCE** - Mayor Jim Darling
**INVOCATION** - Mayor Pro Tem Aida Ramirez
**PROCLAMATIONS** - *Medical Laboratory Professional's Week - Dave Almquist*
*McAllen Memorial High School Student Council Day - Vivian Tamez*
*Misty Prado Day - Misty Prado*

1.   **PUBLIC HEARING:**

   A)   **REZONINGS:**

   1. Rezone from C-3 (general business) District to C-4 (commercial-industrial) District for Lots 2 & 3, North Bryan Estates Subdivision, Hidalgo County, Texas; 8509 & 8501 SH 107. **WITHDRAWN**

   2. Rezone from C-3 (general business) District to R-1 (single family residential) District for 2.691 acres out of Lots 3 and 4, J. H. Beatty's Subdivision, Hidalgo County, Texas; 5001 North Ware Road. **WITHDRAWN**

   3. Rezone from C-4 (commercial industrial) District to R-1 (single family residential) District for 18.00 acres out of Lots 3 and 4, J. H. Beatty's Subdivision, Hidalgo County, Texas; 5001 North Ware Road. **WITHDRAWN**

   4. Rezone from I-1 (Light Industrial) District to R-3A (multifamily residential apartments) District for Lot 8, McAllen Northwest Industrial Subdivision, Hidalgo

1

County, Texas; 1801 Industrial Drive. **WITHDRAWN**

5. Rezone from C-3 (general business) District to R-3A (multifamily residential apartments) District: 5.031 acres out of Lot 15, Block 1, C.E. Hammonds Subdivision, Hidalgo County, Texas; 5609 North Bicentennial Boulevard. **(TABLED)**

**B)   CONDITIONAL USE PERMITS:**

1. Request of Dagoberto Quintanilla, for a Conditional Use Permit, for one year, for a nightclub at the 0.66 acres out of Lot 16, Block 3, C.E. Hammond Subdivision, Hidalgo County, Texas; 2203 South 23rd Street. **WITHDRAWN**

2. Request of Rolando Garza for a Conditional Use Permit, for life of the use, for automotive service and repair at the north 100.02 ft. of Lot 1, and the west 16.51 ft. of the north 100.02 ft. of Lot 2 out of Best Courts Subdivision & 7.30 inches of the north 100.02 of Lot 9 of East McAllen Business District Subdivision, Hidalgo County, Texas; 411 U.S. Business 83. **WITHDRAWN**

**C)**   Amending the Zoning Ordinance of the City of McAllen as enacted May 29, 1979.

**END OF PUBLIC HEARING**

**2.   CONSENT AGENDA:** *(All matters listed under Consent Agenda are considered to be routine by the Governing Body and will be enacted by one motion. There will be no separate discussion of these items; however, if discussion is desired, that item(s) will be removed from the Consent Agenda and will be considered separately.)*

**A)**   Approval of Minutes of Workshop and Regular Meeting held April 10, 2017.

**B)**   Consideration and approval of Change Order No. 1 and Final Reconciliation of Quantities for Hangar Lane Reconstruction Improvements at McAllen International Airport.

**C)**   Amending Resolution No. 2017-19 authorizing acceptance of grant funds in the amount of $25,000 from the National Recreation and Park Association and the Walmart Foundation under the Fiscal Year 2017 Healthy Out-of-School Time Grant Program.

**3.   BIDS/CONTRACTS:**

**A)**   Consideration and Approval of Award of Purchase for Installation of Office Furniture for the Texas Transnational Intel Center/Texas Anti-Gang Rehabilitation Project.

**B)**   Award of Contract for Trimming & Peeling of Palm Trees.

**C)**   Consideration and Approval of Change Order No. 1 and Change Order No. 2 for the McAllen Youth Baseball Complex.

2

**D)** Consideration and Approval of Order for Signature Verification Committee for May 6, 2017 McAllen General City Election.

*Consideración y aprobación de la orden para el Comité de Verificación de Firmas para la Elección General de la Ciudad de McAllen que se efectuara el 6 de mayo de 2017.*

**E)** Consideration and Possible Action to amend County Interlocal Agreement regarding TIRZ #2A.

## 4.   ORDINANCES:

**A)** Consideration and Possible Action to amend Ordinance #2016-88 which created TIRZ #2A.

**B)** Consideration and Possible Action to amend Ordinance #2016-89 regarding the Project and Finance Plan for TIRZ #2A.

## 5.   RESOLUTIONS:

**A)** Authorizing the denial of AEP Application to amend its Distribution Cost Recovery Factors (DCRF) to increase distribution rates.

**B)** Authorizing the Submittal of an application for a Bureau of Reclamation Water Marketing Grant Application.

## 6.   VARIANCES:

**A)** Consideration of variance request to not require the subdivision process at the East .80 acres of the East 2.03 acres out of the West 3.90 of the North 10 acres of the East 40.37 acres of Lot 254, John H. Shary Subdivision; 6239 West 8 Mile.

**B)** Consideration of a variance to the Parkland Dedication Ordinance for fees in lieu of land for The Reserve at Lark Avenue.

## 7.   MANAGER'S REPORT:

**A)** Project Status Report through March 31, 2017.

**B)** Subdivision Report ending March 31, 2017.

**C)** Status Report on Parks & Recreation Projects.

**D)** Report on Convention Activities by McAllen Convention and Visitors Bureau.

**E)** Discussion and Possible Action of Performing Arts Center Membership Program.

**F)** Traffic Operations Department presentation on Traffic Management.

**G)** Future Agenda Items.

## 8.   MAYOR'S REPORT:

3

**A)**  Report on Border Fence.

**B)**  Report on Raymondville Drain.

9.  **TABLED ITEM(S):**

**A)**  Consideration for a variance request to allow lots to be subdivided without frontage on a street; 214 Main Street Subdivision; 106 & 108 East Toronto Avenue.

**B)**  Consideration of a variance request to the Right-of-Way dedication on Trenton Road; 1521 Trenton Road.

10.  **EXECUTIVE SESSION, CHAPTER 551, TEXAS GOVERNMENT CODE, SECTION 551.071 (CONSULTATION WITH ATTORNEY), SECTION 551.072 (DELIBERATION REGARDING REAL PROPERTY) AND SECTION 551.087 (ECONOMIC DEVELOPMENT).**

**A)**  Consultation with City Attorney regarding legal issues related to Cause No. C-1379-17-F; Yolanda Hernandez, Urbano Limon and Ignacia Limon vs.City of McAllen. (Section 551.071, T.G.C.)

**B)**  Consideration of Economic Development Matters. (Section 551.087, T.G.C.)

**C)**  Discussion and Possible Lease, Sale or Purchase of Real Property; Tract 1, Tract 2, and Tract 3. (Section 551.072, T.G.C.)

**ADJOURNMENT**

**IF ANY ACCOMMODATION FOR A DISABILITY IS REQUIRED (OR INTERPRETERS FOR THE DEAF), NOTIFY THE CITY SECRETARY'S DEPARTMENT AT 681-1020 FORTY-EIGHT (48) HOURS PRIOR TO THE MEETING DATE. WITH REGARD TO ANY ITEM, THE BOARD OF COMMISSIONERS MAY TAKE VARIOUS ACTIONS INCLUDING BUT NOT LIMITED TO RESCHEDULING AN ITEM IN ITS ENTIRETY FOR A FUTURE DATE OR TIME.**

---

## C E R T I F I C A T I O N

I, the Undersigned Authority, do hereby certify that the attached agenda of the meeting of the McAllen Board of Commissioners is a true and correct copy and that I posted a true and correct copy of said notice on the bulletin board in the Municipal Building, a place convenient and readily accessible to the general public at all times, and said Notice was posted on April 21, 2017 at 2:00 PM and will remain so posted continuously for at least 72 hours preceding the scheduled time of said meeting in accordance with Chapter 551 of the Texas Government Code.

Perla Lara, TRMC/CMC, CPM
City Secretary

---

STATE OF TEXAS
COUNTY OF HIDALGO
CITY OF MCALLEN

The McAllen Board of Commissioners convened in a Regular Meeting on **Monday, April 24, 2017**, at 5:00 pm, at McAllen City Hall Third Floor **(3rd)** Commission Chambers, with the following present.

Mayor Jim Darling, Commissioner Richard F. Cortez, Commissioner Trey Pebley, Mayor Pro Tem Hilda Escochea Salinas, Commissioner John Ingram, and Commissioner Veronica Whitacre

Absent: Mayor Pro Tem Aida Ramirez

Staff: City Manager Roy Rodriguez, City Attorney Kevin Pagan, Assistant City Manager Michelle Leftwich, Assistant City Manager Jeff Johnston, Assistant City Manager Joe Vera, City Secretary Perla Lara, City Engineer Yvette Barrera, Planning Director Juli Rankin, Deputy City Attorney Gary Henrichson, Director of Parks and Recreation Department Mike Hernandez, Finance Director Susan Lozano.

**CALL TO ORDER**

Mayor Darling called the meeting to order.

**PROCLAMATIONS**

**MEDICAL LABORATORY PROFESSIONAL'S WEEK**

Commissioner John Ingram read and presented a proclamation for *Medical Laboratory Professional's Week.*

**MCALLEN MEMORIAL HIGH SCHOOL STUDENT COUNCIL DAY**

Mayor Pro Tem Hilda Escochea Salinas read and presented a proclamation for *McAllen Memorial High School Student Council Day.*

**MISTY PRADO DAY**

Commissioner Richard Cortez read and presented a proclamation for *Misty Prado Day.*

**1.    PUBLIC HEARING**

Mayor Darling called the Public Hearing to order.

**A)    REZONINGS:**

**1. REZONE FROM C-3 (GENERAL BUSINESS) DISTRICT TO C-4 (COMMERCIAL INDUSTRIAL) DISTRICT FOR LOTS 2 & 3, NORTH BRYAN ESTATES SUBDIVISION, HIDALGO COUNTY, TEXAS; 8509 & 8501 SH 107. WITHDRAWN**

Said item was withdrawn.

**2. REZONE FROM C-3 (GENERAL BUSINESS) DISTRICT TO R-1 (SINGLE FAMILY RESIDENTIAL) DISTRICT FOR 2.691 ACRES OUT OF LOTS 3 AND 4, J. H. BEATTY'S SUBDIVISION, HIDALGO COUNTY, TEXAS; 5001 NORTH WARE ROAD. WITHDRAWN**

Said item was withdrawn.

**3. REZONE FROM C-4 (COMMERCIAL INDUSTRIAL) DISTRICT TO R-1 (SINGLE FAMILY RESIDENTIAL) DISTRICT FOR 18.00 ACRES OUT OF LOTS 3 AND 4, J. H. BEATTY'S SUBDIVISION, HIDALGO COUNTY, TEXAS; 5001 NORTH WARE ROAD. WITHDRAWN**

Said item was withdrawn.

1

4. REZONE FROM I-1 (LIGHT INDUSTRIAL) DISTRICT TO R-3A (MULTIFAMILY RESIDENTIAL APARTMENTS) DISTRICT FOR LOT 8, MCALLEN NORTHWEST INDUSTRIAL SUBDIVISION, HIDALGO COUNTY, TEXAS; 1801 INDUSTRIAL DRIVE. WITHDRAWN

Said item was withdrawn.

5. REZONE FROM C-3 (GENERAL BUSINESS) DISTRICT TO R-3A (MULTIFAMILY RESIDENTIAL APARTMENTS) DISTRICT: 5.031 ACRES OUT OF LOT 15, BLOCK 1, C.E. HAMMONDS SUBDIVISION, HIDALGO COUNTY, TEXAS; 5609 NORTH BICENTENNIAL BOULEVARD. (TABLED)

Said item was tabled.

B) CONDITIONAL USE PERMITS:

1. REQUEST OF DAGOBERTO QUINTANILLA, FOR A CONDITIONAL USE PERMIT, FOR ONE YEAR, FOR A NIGHTCLUB AT THE 0.66 ACRES OUT OF LOT 16, BLOCK 3, C.E. HAMMOND SUBDIVISION, HIDALGO COUNTY, TEXAS; 2203 SOUTH 23RD STREET. WITHDRAWN

Said item was withdrawn.

2. REQUEST OF ROLANDO GARZA FOR A CONDITIONAL USE PERMIT, FOR LIFE OF THE USE, FOR AUTOMOTIVE SERVICE AND REPAIR AT THE NORTH 100.02 FT. OF LOT 1, AND THE WEST 16.51 FT. OF THE NORTH 100.02 FT. OF LOT 2 OUT OF BEST COURTS SUBDIVISION & 7.30 INCHES OF THE NORTH 100.02 OF LOT 9 OF EAST MCALLEN
BUSINESS DISTRICT SUBDIVISION, HIDALGO COUNTY, TEXAS; 411 U.S. BUSINESS 83. WITHDRAWN

Said item was withdrawn.

C) AMENDING THE ZONING ORDINANCE OF THE CITY OF MCALLEN AS ENACTED MAY 29, 1979.

No action required.

**END OF PUBLIC HEARING**

Mayor Darling declared the Public Hearing closed.

2. CONSENT AGENDA (ALL MATTERS LISTED UNDER CONSENT AGENDA ARE CONSIDERED TO BE ROUTINE BY THE GOVERNING BODY AND WILL BE ENACTED BY ONE MOTION. THERE WILL BE NO SEPARATE DISCUSSION OF THESE ITEMS; HOWEVER, IF DISCUSSION IS DESIRED, THAT ITEM(S) WILL BE REMOVED FROM THE CONSENT AGENDA AND WILL BE CONSIDERED SEPARATELY.)

Commissioner Trey Pebley moved to approve the items listed on the Consent Agenda. Commissioner Veronica Whitacre seconded the motion. The motion carried unanimously by those present.

A) APPROVAL OF MINUTES OF WORKSHOP AND REGULAR MEETING HELD APRIL 10, 2017.

Approved the Minutes of Workshop and Regular Meeting held April 10, 2017, as submitted.

B) CONSIDERATION AND APPROVAL OF CHANGE ORDER NO. 1 AND FINAL RECONCILIATION OF QUANTITIES FOR HANGAR LANE RECONSTRUCTION IMPROVEMENTS AT MCALLEN INTERNATIONAL AIRPORT.

Approved Change Order No. 1 and Final Reconciliation of Quantities in the addition of $3,390.80 for a revised total amount of $219,017.80 for Hangar Lane Reconstruction Improvements at McAllen International Airport.

2

C)   AMENDING RESOLUTION NO. 2017-19 AUTHORIZING ACCEPTANCE OF GRANT FUNDS IN THE AMOUNT OF $25,000 FROM THE NATIONAL RECREATION AND PARK ASSOCIATION AND THE WALMART FOUNDATION UNDER THE FISCAL YEAR 2017 HEALTHY OUT-OF-SCHOOL TIME GRANT PROGRAM.

Approved to amend Resolution No. 2017-19 authorizing acceptance of grant funds in the amount of $25,000 from the National Recreation and Park Association and the Walmart Foundation under the Fiscal Year 2017 Healthy Out-of-School Time Grant Program.

At this time the meeting was recessed to convene the Tax Increment Reinvestment Zone Number Two A Board Meeting.

Tax Increment Reinvestment Zone Number Two A board meeting was adjourned at 5:30 pm and Mayor Darling reconvened the Regular City Commission Meeting and addressed items 3E, 4A and 4B at this time.

3.   BIDS/CONTRACTS

A)   CONSIDERATION AND APPROVAL OF AWARD OF PURCHASE FOR INSTALLATION OF OFFICE FURNITURE FOR THE TEXAS TRANSNATIONAL INTEL CENTER/TEXAS ANTI-GANG REHABILITATION PROJECT.

Staff recommended approval of Award of Purchase in the amount of $313,636.15 to the HON Company c/o Gateway Printing Office Supply for Installation of Office Furniture for the Texas Transnational Intel Center/Texas Anti-Gang Rehabilitation Project.

Commissioner Richard Cortez moved to approve Award of Purchase as recommended. Mayor Pro Tem Hilda Escochea Salinas seconded the motion. The motion carried unanimously by those present.

B)   AWARD OF CONTRACT FOR TRIMMING & PEELING OF PALM TREES.

Staff recommended award of contract in the amount of $78,175.00 to ROD'Z Lawn Care & Landscaping for Trimming & Peeling of Palm Trees. If awarded, staff is requesting City Manager authorization, to extend the Service Contract for two (2) additional years, in one year increments.

Commissioner Richard Cortez moved to award the contract as recommended. Commissioner Trey Pebley seconded the motion. The motion carried unanimously by those present.

C)   CONSIDERATION AND APPROVAL OF CHANGE ORDER NO. 1 AND CHANGE ORDER NO. 2 FOR THE MCALLEN YOUTH BASEBALL COMPLEX.

Staff recommended Approval of Change Order No. 1 in the amount of $11,318.01 to Hellas Construction for the McAllen Youth Baseball Complex. This will result in a net change in the overall contract amount of $9,128,318.01. No change to the current contract period of this project, 190 working days.

Staff recommended Approval of Change Order No. 2 in the amount of $11,318.01 to Hellas Construction for the McAllen Youth Baseball Complex. This will result in a net change in the overall contract amount of $9,157,096.21. No change to the current period of this project, 190 working days.

Mayor Pro Tem Hilda Escochea Salinas moved to approve Change Order No. 1 and Change Order No. 2 as recommended. Commissioner Veronica Whitacre seconded the motion. The motion carried unanimously by those present.

D)   CONSIDERATION AND APPROVAL OF ORDER FOR SIGNATURE VERIFICATION COMMITTEE FOR MAY 6, 2017 MCALLEN GENERAL CITY ELECTION. *CONSIDERACIÓN Y APROBACIÓN DE LA ORDEN PARA EL COMITÉ DE VERIFICACIÓN DE FIRMAS PARA LA ELECCIÓN GENERAL DE LA CIUDAD DE MCALLEN QUE SE EFECTUARA EL 6 DE MAYO DE 2017.*

Staff recommended Approval of Order for Signature Verification Committee for May 6, 2017 McAllen General City Election.

3

Discussion ensued and staff answered questions posed by the Mayor and City Commission.

After due consideration, Commissioner Richard Cortez moved to approve Order for Signature Verification Committee as recommended. Mayor Pro Tem Hilda Escochea Salinas seconded the motion. The motion carried unanimously by those present.

E)   **CONSIDERATION AND POSSIBLE ACTION TO AMEND COUNTY INTERLOCAL AGREEMENT REGARDING TIRZ #2A.**

Staff recommended approval of amendment to the County Interlocal Agreement regarding TIRZ #2A.

Commissioner Richard Cortez moved to amend the agreement as recommended. Commissioner Veronica Whitacre seconded the motion. The motion carried unanimously by those present.

4.   **ORDINANCES**

A)   **CONSIDERATION AND POSSIBLE ACTION TO AMEND ORDINANCE #2016-88 WHICH CREATED TIRZ #2A.**

Staff recommended adoption of amendment to Ordinance #2016-88 which created TIRZ #2A.

Commissioner Richard Cortez moved to adopt the ordinance as recommended. Mayor Pro Tem Hilda Escochea Salinas seconded the motion. The motion carried unanimously by those present.

B)   **CONSIDERATION AND POSSIBLE ACTION TO AMEND ORDINANCE #2016-89 REGARDING THE PROJECT AND FINANCE PLAN FOR TIRZ #2A.**

Staff recommended adoption of amendment to Ordinance #2016-89 regarding the Project and Finance Plan for TIRZ #2A.

Commissioner Richard Cortez moved to adopt the ordinance as recommended. Mayor Pro Tem Hilda Escochea Salinas seconded the motion. The motion carried unanimously by those present.

5.   **RESOLUTIONS**

A)   **AUTHORIZING THE DENIAL OF AEP APPLICATION TO AMEND ITS DISTRIBUTION COST RECOVERY FACTORS (DCRF) TO INCREASE DISTRIBUTION RATES.**

Staff recommended approval of resolution denying the AEP application to amend its Distribution Cost Recovery Factors (DCRF) to increase distribution rates. Staff also recommended motion to authorize Lloyd Gosselink to represent the City with the rate case.

Mayor Pro Tem Hilda Escochea Salinas moved to approve the resolution as recommended. Commissioner Veronica Whitacre seconded the motion. The motion carried unanimously by those present.

B)   **AUTHORIZING THE SUBMITTAL OF AN APPLICATION FOR A BUREAU OF RECLAMATION WATER MARKETING GRANT APPLICATION.**

Staff recommended approval of the resolution authorizing the submittal of an application for a Bureau of Reclamation Water Marketing Grant Application.

Mayor Pro Tem Hilda Escochea Salinas moved to approve the resolution as recommended. Commissioner Veronica Whitacre seconded the motion. The motion carried unanimously by those present.

6.   **VARIANCES**

A)   **CONSIDERATION OF VARIANCE REQUEST TO NOT REQUIRE THE SUBDIVISION PROCESS AT THE EAST .80 ACRES OF THE EAST 2.03 ACRES OUT OF THE WEST 3.90 OF THE NORTH 10 ACRES OF THE EAST 40.37 ACRES OF LOT 254, JOHN H. SHARY SUBDIVISION; 6239 WEST 8 MILE.**

4

Staff recommended approval of the variance at 6239 West 8 Mile, subject to the 20 ft. ROW dedication along 8 Mile Line.

Commissioner Trey Pebley moved to approve the variance as recommended. Commissioner Veronica Whitacre seconded the motion. The motion carried unanimously by those present.

B) **CONSIDERATION OF A VARIANCE TO THE PARKLAND DEDICATION ORDINANCE FOR FEES IN LIEU OF LAND FOR THE RESERVE AT LARK AVENUE.**

Staff recommended approval of the variance of $44,800 in a lieu of land for The Reserve at Lark Avenue. Staff noted that the d proposed to pay seventy-five (75%) percent, $33,600.00 up front prior to plat recording and the remaining twenty-five (25%) percent $11,200.00 is to be paid through the permit application process. The subdivision is 1.0176 acres.

Mayor Pro Tem Hilda Escochea Salinas moved to approve the variance as recommended. Commissioner Trey Pebley seconded the motion. The motion carried unanimously by those present.

7. **MANAGER'S REPORT**

A) **PROJECT STATUS REPORT THROUGH MARCH 31, 2017.**

Report was given. No action required.

B) **SUBDIVISION REPORT ENDING MARCH 31, 2017.**

Report was given. No action required.

C) **STATUS REPORT ON PARKS & RECREATION PROJECTS.**

Report was given. No action required.

D) **REPORT ON CONVENTION ACTIVITIES BY MCALLEN CONVENTION AND VISITORS BUREAU.**

Report was given. No action required.

E) **DISCUSSION AND POSSIBLE ACTION OF PERFORMING ARTS CENTER MEMBERSHIP PROGRAM.**

Staff mentioned that this item was for formal adoption of the Performing Arts Center Membership Program previously discussed and reviewed September 26, 2016. This program was implemented in October of last year leading to the opening and announcement of events being programmed at the Performing Arts Center. It was noted that to date they have a total of fifty-six (56) members, which have a potential to purchase up to 284 tickets per show.

Staff recommended adoption of the Performing Arts Center Membership Program.

Mr. Asher spoke in opposition of said item noting that he was not in favor of selling memberships.

A lengthy discussion ensued. Staff answered questions posed by the Mayor and City Commission. After due consideration, Commissioner John Ingram moved to approve the membership program subject to an annual review on an appropriate basis. Commissioner Richard Cortez seconded the motion. The motion carried unanimously by those present.

F) **TRAFFIC OPERATIONS DEPARTMENT PRESENTATION ON TRAFFIC MANAGEMENT.**

A presentation on Traffic Management Center, signal timing and communications was given.

G) **FUTURE AGENDA ITEMS.**

Items of upcoming workshops were reviewed: Mayor Pro Tem Hilda Escochea Salinas reception, B&B Hotel Revenue, Traffic, Drainage, Sidewalks

5

8.    **MAYOR'S REPORT**

A)    **REPORT ON BORDER FENCE.**

Mayor Darling gave a report on Border Fence.

B)    **REPORT ON RAYMONDVILLE DRAIN.**

Mayor Darling gave a report on Raymondville Drain.

9.    **TABLED ITEM(S)**

A)    **CONSIDERATION FOR A VARIANCE REQUEST TO ALLOW LOTS TO BE SUBDIVIDED WITHOUT FRONTAGE ON A STREET; 214 MAIN STREET SUBDIVISION; 106 & 108 EAST TORONTO AVENUE.**

Commissioner Trey Pebley moved to remove said item from the table. Commissioner Richard Cortez seconded the motion.

Staff recommended approval of the variance request at 214 Main Street Subdivision; 106 & 108 East Toronto Avenue, with a favorable recommendation to allow the lots to develop without frontage on a street and require public access with the condition that the applicant comply with entity requirement to file and resolve the ownership question with the Legal Department.

Mayor Pro Tem Hilda Escochea Salinas moved to disapprove the variance as recommended by City Attorney. Commissioner Richard Cortez seconded the motion. The motion carried unanimously by those present.

B)    **CONSIDERATION OF A VARIANCE REQUEST TO THE RIGHT-OF-WAY DEDICATION ON TRENTON ROAD; 1521 TRENTON ROAD.**

Mayor Pro Tem Hilda Escochea Salinas moved to remove said item from the table. Commissioner John Ingram seconded the motion. The motion carried unanimously by those present.

Staff recommended disapproval of the of the variance request at 1521 Trenton Road.

Mayor Pro Tem Hilda Escochea Salinas moved to disapprove the variance as recommended. Commissioner John Ingram seconded the motion. The motion carried unanimously by those present.

10.    **EXECUTIVE SESSION, CHAPTER 551, TEXAS GOVERNMENT CODE, SECTION 551.071 (CONSULTATION WITH ATTORNEY), SECTION 551.072 (DELIBERATION REGARDING REAL PROPERTY) AND SECTION 551.087 (ECONOMIC DEVELOPMENT).**

On behalf of the Presiding Officer, the City Attorney recommended recessing into Executive Session pursuant to Chapter 551, Texas Government Code, Section 551.071 Consultation with Attorney on Items 10A; Section 551.087 Economic Development for Item 10B; Section 551.072 Deliberation Regarding Property for Item 10C.

Commissioner Veronica Whitacre moved to accept the recommendation for the basis of the discussion in Executive Session under the sections cited by the City Attorney. Commissioner John Ingram seconded the motion. The motion carried unanimously by those present.

Mayor Darling recessed the meeting at 6:47 pm to go into Executive Session. Mayor Darling reconvened the meeting at 7:38 pm and announced the action to be taken.

A)    **CONSULTATION WITH CITY ATTORNEY REGARDING LEGAL ISSUES RELATED TO CAUSE NO. C-1379-17-F; YOLANDA HERNANDEZ, URBANO LIMON AND IGNACIA LIMON VS.CITY OF MCALLEN. (SECTION 551.071, T.G.C.)**

Commissioner John Ingram moved to authorize the City Attorney's office to defend the City of McAllen in that case as discussed in executive session.  Mayor Pro Tem Hilda Escochea Salinas seconded the motion.  The motion carried unanimously by those present.

6

B)    CONSIDERATION OF ECONOMIC DEVELOPMENT MATTERS. (SECTION 551.087,T.G.C.)

**Auburn Avenue** – Commissioner John Ingram moved to authorize the City Manager and City Attorney's Office to put that agreement in file form and execute same as discussed in executive session.  Mayor Pro Tem Hilda Escochea Salinas seconded the motion.  The motion carried unanimously by those present.

C)    DISCUSSION AND POSSIBLE LEASE, SALE OR PURCHASE OF REAL PROPERTY; TRACT 1, TRACT 2, AND TRACT 3. (SECTION 551.072, T.G.C.)

Commissioner Veronica Whitacre moved to authorize the City Attorney's Office to attempt to negotiate an extension of the lease and if the lease can be reached to executive the lease to extend the current tenant as discussed in executive session.    Commissioner Trey Pebley seconded the motion. The motion carried unanimously by those present.

**ADJOURNMENT**

There being no other business to come before the Commission, the meeting was adjourned at 7:39 p.m.

Jim Darling, Mayor

Attest:

Perla Lara, TRMC/CMC, CPM
City Secretary

7

AW5-52
Prescribed by Secretary of State
Sec. 87.027, Texas Election Code
3/07

## ORDER CALLING FOR SIGNATURE VERIFICATION COMMITTEE

I, the early voting clerk for the _____McAllen General City_____ election, do

hereby order the appointment of a signature verification committee for said election to be held

on _____May 6, 2017_____. The committee shall consist of ____5____

             (date of election)

members. The signature verification committee shall meet as follows:

| Day(s) | Place | Hours |
|---|---|---|
| May 5, 2017 | McAllen City Hall | 9:00 a.m. - 5:00 p.m. |
| | 1300 Houston Ave. | |
| | McAllen, Texas 78501 | |
| | 2nd Floor - City Manager Conference Rm. | |

I, the early voting clerk, shall immediately notify the county election board/county chair/

governing body of their (his/her) duty to appoint the members of the committee.

Issued this the ___24th___ day of _____April_____, 20 _17_.

_____

**Signature of Early Voting Clerk - Perla Lara**

AWS-53
Prescribed by Secretary of State
Sec. 87.027(c), Texas Election Code
5/07

## NOTIFICATION OF APPOINTED MEMBERS TO
## SIGNATURE VERIFICATION COMMITTEE

To the Early Voting Clerk:

The appointing authority met on ___April 24, 2017___ for the purpose of appointing the

members of the signature verification committee for the McAllen General election to be held

on _May 6, 2017_ .

**Name and Residence Address:**

Daniel  Codina - 413 N. 6th Street, McAllen, Texas 78501 (Chair)

Luis Longoria  - 5517 N. 31st Street, McAllen, Texas 78504 (Co-Chair)

Ruth Bostick  - 4221 Harvey Ave., McAllen Texas 78501

Virginia Brenneman - 100 E. Hackberry #95, McAllen Texas 78501

Henrietta Guzman - 207  E. Jackson Ave., McAllen Texas 78501

_____

_____

_____

_____

_____

_____

**Signature of Appointing Authority**

NOTE:  Designate next to the appropriate name, the person who is to be Chair of the
verification committee.

AW5-54
Prescribed by Secretary of State
Sec. 87.027(c), Texas Election Code
3/07

## NOTICE OF APPOINTMENT OF SIGNATURE
## VERIFICATION COMMITTEE

Notice is hereby given to the registered voters of _____Hidalgo_____ County that the

following persons have been appointed to serve on the signature verification committee for the

____McAllen General____ Election to be held on ____May 6, 2017____ .

**Name and Residence Address:**

Daniel Codina - 413 N. 6th Street, McAllen, Texas 78501 (Chair)

Luis Longoria  - 5517 N. 31st Street, McAllen, Texas 78504 (Co-Chair)

Ruth Bostick  - 4221 Harvey Ave., McAllen Texas 78501

Virginia Brenneman - 100 E. Hackberry #95, McAllen Texas 78501

Henrietta Guzman - 207  E. Jackson Ave., McAllen Texas 78501

_____

**Signature of Early Voting Clerk**

_____

**Date**

1342

AW5-54
*Por orden del Secretario de Estado*
*Frac. 87.027(c) del Código Electoral de Tejas*
*3/07*

## *AVISO DE NOMBRAMIENTO*
## *DEL COMITE DE VERIFICACION DE FIRMAS*

*Por la presente se avisa a los votantes inscritos del Condado de* ___Hidalgo___ *, de que las personas citadas a continuación han sido nombradas para integrar el Comité de Verificación de Firmas para la Elección* General de la Ciudad de McAllen *a celebrarse el día* 6 de Mayo, 2017 *.*

*Nombre y domicilio:*

Daniel Codina - 413 Calle 6 Norte, McAllen Texas 78501   (Presidente)

Luis Longoria - Calle 31 Norte, McAllen Texas 78504 (Vicepresidente)

Ruth Bostick - 4221 Avenida Harvey, McAllen  Texas 78501

Virginia Brenneman - 100 Hackberry Este #95, McAllen Texas 78501

Henrietta Guzman - 207 Avenida Jackson Este, McAllen Texas 78501

_____

*Firma del/de la Secretario/a de Votación Adelantada*

_____

*Fecha*

AW5-55
Prescribed by Secretary of State
Sec. 87.027(h), Texas Election Code
3/07

## NOTICE OF DELIVERY OF BALLOTING
## MATERIALS TO THE SIGNATURE
## VERIFICATION COMMITTEE

Notice is hereby given to the registered voters of _____Hidalgo_____ County

that the early voting materials for voters voting by mail will be delivered to the signature

verification committee at the following time(s):

| Date | Time |
|------|------|
| May 5, 2017 | 9:00 A.M. |

_____
Signature of Early Voting Clerk

_____
Date

*AW5-54*
*Por orden del Secretario de Estado*
*Frac. 87.027(h) del Código Electoral de Tejas*
*3/07*

## *AVISO DE ENTREGA DE DOCUMENTOS ELECTORALES*
## *AL COMITE DE VERIFICACION DE FIRMAS*

*Por la presente se avisa a los votantes inscritos del Condado de* _____Hidalgo_____ *, de que los*

*documentos para votación adelantada destinados a personas que voten por correo serán*

*entregados al Comité de Verificación de Firmas en la(s) fecha(s) y a la(s) hora(s) a continuación:*

| *Fecha* | *Hora* |
|---------|--------|
| 5 de mayo del 2017 | 9:00 A.M. |

_____
*Firma del/de la Secretario/a de Votación Adelantada*

_____
*Fecha*



### CITY OF McALLEN
## APPLICATION FOR CONTRACT EMPLOYMENT
#### POSITION: ELECTION WORKER

Please print or type answers to all questions. Write N/A if not applicable.

* Appointments are made by the Board of Commissioners and are for a Single Election and possibly a Runoff Election.

1  Applicant Name: _Daniel_____ _V.___ _Codina_____
                          First                        M.I.               Last

2  Home Address: _413 N. 6th St., McAllen, TX 78501-2521_
                        Street        City      State      Zip

   Mailing Address: _(same as above)_____
   (If different from home)         Street        City       State      Zip

   I Live in Single Member District (SMD): _6_

3  Telephone Number: (Home) _956) 537-7924_          (Work) _____

4  How long have you been a resident of McAllen? _53 yrs._ Of this single member district: _____

5  Are you eligible to vote in McAllen? _✓_ Yes ____ No

6  Are you related to any City of McAllen Elected Official (City Commission or Public Utility Board) or City of McAllen
   Employee? ____ Yes _✓_ No

   If Yes, Name and Relationship: _N/A_____

7  Have you previously worked other Elections inside the polls?  Yes _✓_  No ____

   If yes, list last two (2) elections worked and specify task performed.
   _Special Election (2015) City Commissioners - Early Voting Judge & Ballot Board_
   _General Election (2015) City Commissioners - Early Voting & Ballot Board, Judge_

8  List any special skills, expertise or trainings related to elections. _Almost 20 yrs. experience w/_
   _County: Hidalgo & City of McAllen; County-sponsored trainings._

9  Specify if available to work Early Voting and Election Day or either.
   _✓_ Yes/Both      ____ Election Day Only      ____ Early Voting Only

10  Please use the space below for any additional information about yourself.

_____

Applicant Signature: _Daniel V. Codina_____     Date _1/1/2016_____

**\*\* *Please return to:***   Office of the City Secretary
    1300 Houston Avenue / P O Box 220 (78505-0220)
    McAllen, TX 78501
    Fax: (965) 681-1029



**CITY OF MCALLEN**
## APPLICATION FOR CONTRACT EMPLOYMENT
### POSITION: ELECTION WORKER

Please print or type answers to all questions. Write N/A if not applicable.

\* Appointments are made by the Board of Commissioners and are for a Single Election and possibly a Runoff Election.

1  Applicant Name: _Luis_ _C._ _Longoria_
First         MI         Last

2  Home Address: _5517 N. 31st Street - McAllen, Tex 78504_
Street     City     State     Zip

Mailing Address: _Same As Above_
(If different from home)     Street     City     State     Zip

I Live in Single Member District (SMD): ✓

3  Telephone Number: (Home) _956-874-7267_          (Work) _____

4  How long have you been a resident of McAllen? _44_     Of this single member district: _____

5  Are you eligible to vote in McAllen? ✓ Yes _____ No

6  Are you related to any City of McAllen Elected Official (City Commission or Public Utility Board) or City of McAllen Employee? _____ Yes ✓ No

If Yes, Name and Relationship: _____

7  Have you previously worked other Elections inside the polls?  Yes ✓  No ____

If yes, list last two (2) elections worked and specify task performed.
_① Primary Elections_
_② General Election & Early Voting_

8  List any special skills, expertise or trainings related to elections. _Elections Training at Hidalgo County Elections Department._

9  Specify if available to work Early Voting and Election Day or either
✓ Yes/Both  _____ Election Day Only  _____ Early Voting Only

10  Please use the space below for any additional information about yourself.
_Retired from Public Education, St. Vincent de Paul Food Pantry Volunteer, South Texas Fed. Credit Union Volunteer_

Applicant Signature: _Longoria_     Date _11-16-2016_

**\*\* Please return to:**  Office of the City Secretary
1300 Houston Avenue / P O Box 220 (78505-0220)
McAllen, TX 78501
Fax: (965) 681-1010



**CITY OF**
**McALLEN**
## APPLICATION FOR CONTRACT EMPLOYMENT
### POSITION: ELECTION WORKER

Please print or type answers to all questions. Write N/A if not applicable.

\* Appointments are made by the Board of Commissioners and are for a Single Election and possibly a Runoff Election.

1   Applicant Name: _RuTH_ _P._ _BOSTICK_
    First             M.I.           Last

2   Home Address: _4221 HARVEY AVe., McALLEN, TX 78501_
    Street        City       State      Zip
    Mailing Address: _SAME_
    (If different from home)      Street        City        State        Zip

    I Live in Single Member District (SMD): _3_

3   Telephone Number: (Home) _(CELL) 956-498-5705_          (Work) _____

4   How long have you been a resident of McAllen? _41 yrs_ Of this single member district: _14_

5   Are you eligible to vote in McAllen? _✓_ Yes _____ No

6   Are you related to any City of McAllen Elected Official (City Commission or Public Utility Board) or City of McAllen
    Employee? _____ Yes _✓_ No

    If Yes, Name and Relationship: _____

7   Have you previously worked other Elections inside the polls? Yes _✓_ No _____

    If yes, list last two (2) elections worked and specify task performed.
    _PRESIDENTIAL 11/2016_
    _PRIMARY 2016_

8   List any special skills, expertise or trainings related to elections. _ALL TRAINING given by County,_
    _Computer, IVO machines_

9   Specify if available to work Early Voting and Election Day or either.
    _✓_ Yes/Both          _____ Election Day Only          _____ Early Voting Only

10  Please use the space below for any additional information about yourself.

Applicant Signature: _Ruth P. Bostick_          Date _Mar. 20, 2017_

\*\* *Please return to:*     Office of the City Secretary
    1300 Houston Avenue / P O Box 220 (78505-0220)
    McAllen, TX 78501
    Fax: (965) 681-1029



# CITY OF McALLEN

## APPLICATION FOR CONTRACT EMPLOYMENT
### POSITION: ELECTION WORKER

Please print or type answers to all questions. Write N/A if not applicable.

\* Appointments are made by the Board of Commissioners and are for a Single Election and possibly a Runoff Election.

1  Applicant Name: _Virginia_ _Brenneman_
   First                              M.I.                        Last

2  Home Address: _100 E. Hackberry #95, McAllen, TX 78501_
   Street        City        State        Zip

   Mailing Address: _Same As Above_
   (If different from home)   Street        City        State        Zip

   I Live in Single Member District (SMD): _6_

3  Telephone Number: (Home) _(956) 566-5204_        (Work) _____

4  How long have you been a resident of McAllen? _50 yrs_  Of this single member district: _6_

5  Are you eligible to vote in McAllen? _✓_ Yes ____ No

6  Are you related to any City of McAllen Elected Official (City Commission or Public Utility Board) or City of McAllen Employee? ____ Yes _✓_ No

   If Yes, Name and Relationship: _____

7  Have you previously worked other Elections inside the polls? Yes _✓_ No ____

   If yes, list last two (2) elections worked and specify task performed.
   _Presidential - '16_
   _Early Voting + Election Day_

8  List any special skills, expertise or trainings related to elections. _Worked City Secretary's_
   _Office from May 2000 to May 2008_

9  Specify if available to work Early Voting and Election Day or either.
   ____ Yes/Both  _✓_ Election Day Only ____ Early Voting Only

10  Please use the space below for any additional information about yourself.
   _____

Applicant Signature: _Virginia Brenneman_        Date _3/30/17_

**\*\* Please return to:**  Office of the City Secretary
1300 Houston Avenue / P O Box 220 (78505-0220)
McAllen, TX 78501
Fax: (965) 681-1029



**CITY OF McALLEN**

## APPLICATION FOR CONTRACT EMPLOYMENT
### POSITION: ELECTION WORKER

Please print or type answers to all questions. Write N/A if not applicable.

\* Appointments are made by the Board of Commissioners and are for a Single Election and possibly a Runoff Election.

1   Applicant Name: _Henrietta_____ _Gozman_____
    First                                M.I.                        Last

2   Home Address: _201 E Jackson Ave    McAllen    TX    78501_
                   Street            City      State    Zip

    Mailing Address: _____
    (If different from home)        Street      City      State      Zip

    I Live in Single Member District (SMD): _6___

3   Telephone Number: (Home) _-956-378-3482_          (Work) _—___

4   How long have you been a resident of McAllen? _70___   Of this single member district: _46___

5   Are you eligible to vote in McAllen? _✓_ Yes ____ No

6   Are you related to any City of McAllen Elected Official (City Commission or Public Utility Board) or City of McAllen
    Employee? ____ Yes _✓_ No

    If Yes, Name and Relationship: _____

7   Have you previously worked other Elections inside the polls?   Yes _✓_ No ____

    If yes, list last two (2) elections worked and specify task performed.
    _S.T.C. , Palmer Pavillions  Victor Fields_

8   List any special skills, expertise or trainings related to elections. _Careful not to have ads-_
    _etc. on my Lawn pertaining to people running for office._

9   Specify if available to work Early Voting and Election Day or either.
    _✓_ Yes/Both   _✓_ Election Day ~~Only~~   _✓_ Early Voting ~~Only~~

10  Please use the space below for any additional information about yourself.
    _I feel I am a people ~~purpose~~ person, friendly -_
    _giving._

Applicant Signature: _Henrietta Gozman_          Date _3-2-17_

\*\* *Please return to:*   Office of the City Secretary
    1300 Houston Avenue / P O Box 220 (78505-0220)
    McAllen, TX 78501
    Fax: (965) 681-1029

# EXHIBIT V



# The State of Texas

**Secretary of State**

Elections Division
P.O. Box 12060
Austin, Texas 78711-2060
www.sos.state.tx.us

Phone: 512-463-5650
Fax: 512-475-2811
Dial 7-1-1 For Relay Services
(800) 252-VOTE (8683)

July 1, 2019

Perla Lara
City Secretary of McAllen
1300 Houston Avenue
McAllen, Texas 78505

Dear Ms. Lara,

An election inspector was assigned to observe the conduct of the June 22, 2019 Runoff Election for the City of McAllen.  A copy of the inspector's report is included for your review.

We hope you find this information helpful as you evaluate the election in your city and that it may be useful to you as you plan for the training of future election judges and clerks.  We appreciate the challenges you face in administering an election, and we thank you for your service to the voters of Texas.  If you have any questions regarding this report, please feel free to contact us toll-free at 1-800-252-8683.

Sincerely,

Keith Ingram
Director of Elections

Enclosures

KI:TO

# INSPECTOR REPORT

**Political Subdivision Inspected:** McAllen, TX

*(Name of City, School, County, or other)*

**Date of Election:** 06/22/2019     **Inspector:** Maria Rodriguez

**Instructions:** Fill in Precinct No. and Location for each polling place observed.
Answer all questions Y = Yes, N = No, N/O = Not Observed, or N/A = Not Applicable,
unless otherwise indicated.

## POLLING PLACE ACCESSIBILITY

| | | Pct. No. | Location | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | 5 | McAllen High School- | | | | | | | | | |
| 1. | Do all doorways allowing entrance to and exit from the polling place appear to be wide enough (32-inches wide) to accommodate a wheelchair or walker? *(Y or N)* | | | Y | | | | | | | | | |
| 2. | Is the polling place free of any barrier (uneven surfaces, steps, obstacles, etc.) that would impede the path of a person using a wheelchair or walker to the voting area? *(Y or N) (If N, describe the nature of the barrier in the comment section.)* | | | Y | | | | | | | | | |
| 3. | Is there at least one accessible parking space large enough for a van designated for individuals with disabilities near the entrance? *(Y, N or N/A if there is not a parking area.)* | | | Y | | | | | | | | | |
| 4. | Does the pathway leading from the parking area to the polling place appear to be at least 36 inches wide? *(Y, N or N/A if there is not a parking area.)* | | | Y | | | | | | | | | |
| 5. | Does the pathway leading from the parking area to the polling place appear to be free of obstructions? *(Y, N or N/A if there is not a parking area) (If N, describe the obstructions in comment section.)* | | | Y | | | | | | | | | |
| 6. | Does the pathway leading from the parking area to the polling place appear to be paved and/or slip resistant? *(Y, N or N/A if there is not a parking area) (If N, describe in the comment section.)* | | | Y | | | | | | | | | |
| 7. | If there are stairs necessary for entering or leaving the polling place, is there a non-slip ramp with handrails on both sides that appears to be 36" wide and not too steep? *(Y, N or N/A if there are no stairs.)* | | | N/A | | | | | | | | | |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 8. | Do all sidewalk curbs adjacent to the accessible entrance of the polling place have curb cuts or non-slip ramps? *(Y, N or N/A if there are no curbs.)* | Y | | | | | | |
| 9. | If the polling place is not on ground level, is it accessible by an elevator with doors wide enough to accommodate a wheelchair/walker (32 inches wide)? *(Y, N or N/A if polling place is on ground level.)* | N/A | | | | | | |
| 10. | What type of accessible voting device is in use at the polling place? *(See list below, and indicate letter, or N/A is there if not an accessible voting device.)*<br>a.   HART eSlate<br>b.   HART Verity Touch w/Access<br>c.   ES&S iVotronic<br>d.   ES&S ExpressVote<br>e.   ES&S AutoMARK<br>f.   Diebold AccuVote TS R6 or TSX | d | | | | | | |
| 11. | If a disabled voter used the accessible voting device, was the voter able to cast his or her ballot on the device without assistance (beyond setting the machine up for the voter)? *(Y or N-A if no disabled voter voted on the device.)* | N/A | | | | | | |

### ELECTIONEERING AND LOITERING

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 12. | Are 100-foot distance markers established? *(Y or N)* | Y | | | | | | |
| 13. | Did you observe electioneering inside distance markers by:<br>*(Y, N or N/O if electioneering was not observed) (If Y, indicate letter.)*<br>a.   Candidates?<br>b.   News / Media?<br>c.   Campaign Workers?<br>d.   Voters after Voting?<br>e.   Other? (Describe in comment section.) | N/O | | | | | | |
| 14. | Did you observe loitering inside distance markers by:<br>*(Y, N or N/O if loitering was not observed) (If Y, indicate letter.)*<br>a.   Candidates?<br>b.   News / Media?<br>c.   Campaign Workers?<br>d.   Voters after Voting?<br>e.   Other? (Describe in comment section.) | N/O | | | | | | |

# PAPERWORK

15. Is the official list of registered voters maintained on paper or electronically (such as an e-pollbook)? *("P" for paper or "E" for electronic.)*

16. Is the poll list used by the election official (either the physical list of registered voters or an e-pollbook) notated to show which voters voted early by personal appearance or by applying to vote by mail? *(Y or N)*

17. Is there a Combination Form or Poll List used by the election workers to add the names of the voters after they checked-in to vote? *(The Combination Form/Poll List may be maintained in electronic format.)*

18. Is there a Combination Form or Signature Roster for the voter to sign after being qualified by the election worker? *(The Combination Form/Signature Roster may be maintained in electronic format, and voter will sign electronically.) (Y or N)*

19. Are the Voter Information Poster and the Sample Ballot posted in prominent locations in the voting area? *(Y or N)*

20. Is the List of Declared Write-In Candidates (if applicable) posted in each voting booth? *(Y: N or N-A if no list of write-in candidates required.)*

# POLLING PLACE PROCEDURES

21. Did the presiding judge print or produce a report (such as a "zero tape") to indicate that zero votes has been case before opening the polling place? *(Y, N or N/O)*

22. Are the voting booths positioned in a manner that preserves voters' privacy? *(Y or N)*

23. Are all election officials wearing a nametag or badge showing their name and position?

24. Is each voter asked if he/she has moved from the address shown on the official list of registered voters? *(Note: The exact form of the question is not important; some workers ask if the address shown is a good address, etc.) (Y or N)*

| Item | Answer |
|---|---|
| 15 | E |
| 16 | N |
| 17 | Y |
| 18 | Y |
| 19 | Y |
| 20 | N |
| 21 | Y |
| 22 | Y |
| 23 | Y |
| 24 | Y |

| # | Question | | | | | | | | | |
|---|----------|---|---|---|---|---|---|---|---|---|
| 25. | If a voter indicated that their residence address was different than their address on the list of registered voters and/or the voter was in "suspense" status, did the election official ask the voter to complete a Statement of Residence? (Y, N or N/A if the situation did not occur.) | N | | | | | | | | |
| 26. | Were the completed Statements of Residence placed in envelope designated for the county voter registrar? (Y, N or N/A if situation did not occur.) | N/A | | | | | | | | |
| 27. | Are voters required to provide an acceptable form of identification? (Y or N) | Y | | | | | | | | |
| 28. | If a voter's name is not an exact match but is substantially similar, is the voter asked to acknowledge the similar name affidavit? (Y, N or N/A if situation did not occur.) | N/A | | | | | | | | |
| 29. | If a voter did not appear on the official list of registered voters, but presented an acceptable form of identification and a current voter registration certificate indicating the voter is registered in this precinct, was the voter allowed to cast a regular ballot? (Y, N or N/A if situation did not occur.) | N/A | | | | | | | | |
| 30. | If a voter did not appear on the official list of registered voters, but presented an acceptable form of ID and a current voter registration certificate indicating the voter is registered in another precinct, was the voter required to verify that they are a resident of the precinct at which they are voting by acknowledging the voter's affidavit? (Y, N or N/A if situation did not occur) (If N/A, proceed to question 32.) | N/A | | | | | | | | |
| 31. | If a voter cast a ballot under the situation described in Question 30, were they allowed to vote a regular ballot? (Y or N) | N/A | | | | | | | | |
| 32. | Did election workers leave ballots and/or voting equipment unattended while the polls were open? (Y or N) (If Y, please describe in comment section.) | N | | | | | | | | |
| 33. | Did the election judge periodically check for discarded election related materials left by previous voters in the polling place properly discard it? (Y or N) | Y | | | | | | | | |
| 34. | In a primary election, are the clerks stamping party affiliation on the voter registration certificate or giving the voter a Certificate of Affiliation? (Y, N or N/A if this is not a primary election.) | N/A | | | | | | | | |
| 35. | Were people in line at the time the closing of polls (by 7 p.m.)? (Y, N or N/A if you were not at the polling place at the time the polls closed) (If N, please proceed to question 37.) | Y | | | | | | | | |

36. If yes to Question 35, were they allowed to vote? *(Y or N)*

37. Did the judge print out and sign the precinct totals after the polls closed?
*(Y, N or N/O if you were not at the polling place for the closing of the polls) (Note: You are required to be at one of the polling locations at closing time.)*

**ELECTRONIC VOTING SYSTEMS** *(If the polling place is using Optical or hand counted paper ballots, proceed to Question 42.)*

38. Was the flash memory card secured with a lock and numbered seal? *(Y, N or N/O)*

39. Did you witness any illegal tampering of the electronic voting devices? *(Y or N)*

40. Did the equipment operate properly?
*(Y or N) (If N, detail problem and actions taken by the election officials in the comment area.)*

41. If a voter walked away from a DRE without pressing the "CAST" button, did the poll workers CANCEL the ballot? *(Y, N or N/A if DREs were not used or no voter walked away.)*

**ASSISTANCE TO VOTER** *(If you did not observe voter assistance move to the Bilingual Assistance, proceed to Question 46)*

42. When assisted by election officials, did two officials perform assistance to the voter?
*(Y or N)*

43. Were poll watchers allowed to observe assistance if being assisted by two election officials? *(Y, N or N/A if no poll watchers were present.)*

44. When a voter brought in their own assistant, did the person assisting take the Oath of Assistance? *(Y, N or N/A, if voter did not bring their own assistant.)*

45. When a voter brought in their own assistant, was the name and address of the assistant recorded next to the voter's name on the poll list?
*(Y, N or N/A, if voter did not bring their own assistant.)*

**BILINGUAL ASSISTANCE**

46. Are there bilingual written instructions for voters? *(Y or N)*

| Question | Value | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 36 | Y | | | | | | | |
| 37 | Y | | | | | | | |
| 38 | Y | | | | | | | |
| 39 | N | | | | | | | |
| 40 | Y | | | | | | | |
| 41 | N/A | | | | | | | |
| 42 | N/A | | | | | | | |
| 43 | N/A | | | | | | | |
| 44 | N/A | | | | | | | |
| 45 | N/A | | | | | | | |
| 46 | Y | | | | | | | |

| | | |
|---|---|---|
| 47. Are the ballots bilingual? *(Y or N)* | N/A | |
| 48. Are bilingual election clerks available on site? *(Y or N)* | Y | |
| 49. Were interpreters requested or needed by voters? *(Y or N) (If N go to question 52.)* | N | |
| 50. Were voters told they could select an interpreter of their choice if needed? *(Y or N)* | N/A | |
| 51. Did you see the interpreters when given the oath of interpreter? *(Y or N)* | N/A | |
| **PROVISIONAL VOTING** *(If you did not observe any persons voting provisionally, please proceed to Question 62.)* | | |
| 52. If a voter did not have an acceptable form of identification, were they notified that they could cast a provisional ballot? *(Y or N or N/A if there were not any voters that appeared without an acceptable ID.)* | N/A | |
| 53. If a voter's name on their ID did not match or was not substantially similar to the name on the list of registered voters, were they notified that they can cast a provisional ballot? *(Y, N or N/A if no voter's name was found to be not identical or substantially similar.)* | N/A | |
| 54. Does the polling place have provisional ballots and provisional ballot affidavit envelopes (the envelopes are usually green in color)? *(Note: If the polling place uses DREs, a provisional ballot may be cast on the electronic voting system.) (Y or N)* | Y | |
| 55. If optical scan paper ballots are used, is "Provisional Ballot" stamped or written on the back of the ballot, along with the judge's name? *(Y, N, or N/A if provisional optical scan paper ballots are not used.)* | N/A | |
| 56. If optical scan paper ballots are used, are secret ballot envelopes (the envelopes are usually white in color) provided to the provisional voter? *(Y, N, or N/A if provisional optical scan paper ballots are not used.)* | N/A | |
| 57. Were all provisional voters given a "Notice to Provisional Voter")? *(Y or N)* | N/A | |
| 58. Were voters required to complete the provisional voter affidavit prior to casting their provisional ballot? *(Y or N)* | N/A | |

| # | Question | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 59. | After marking their provisional ballot, did the voter place their sealed provisional ballot affidavit envelope in a secure ballot box or other container? (Y or N) | N/A | | | | | | | | | |
| 60. | Were the names of voters who voted a provisional ballot recorded on the "List of Provisional Voters" and noted on the Combination Form? (Y or N) | N/A | | | | | | | | | |
| 61. | After the polls were closed, was the "List of Provisional Voters" placed in the designated envelope? (Y, N or N-A if not at the polling place for closing of the polls.) | N/A | | | | | | | | | |

## GENERAL QUESTIONS

| # | Question | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 62. | Were poll watchers in the polling place? (Note: poll watchers are no longer required to be at the polling place prior to 7:00 a.m.). (Y or N) (If N, please proceed to question 66.) | Y | | | | | | | | | |
| 63. | Did the poll watcher(s) wear a badge identifying them as a poll watcher? (Y or N) | Y | | | | | | | | | |
| 64. | Did you observe any problems/issues with poll watchers? (Y or N) (If Y, explain in the comments section of this report or attach another page.) | N | | | | | | | | | |
| 65. | Did any problems/issues develop between the judge(s) and the clerks? (Y or N) (If Y, explain in the comments section of this report or attach another page while at the polling location.) | N/A | | | | | | | | | |

## PAPER BALLOTS (ONLY answer these questions if you are at a polling using hand counted paper ballots.)

| # | Question | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 66. | Were there two rotating ballot boxes for receiving voted ballots and one ballot box for depositing counted ballots? (Y or N) | N/A | | | | | | | | | |
| 67. | Were ballots counted while the polls were open on Election Day? (Y or N) | N/A | | | | | | | | | |
| 68. | If ballots were counted during the day, was the count begun only after the polls had been open for one hour and there were at least 10 ballots in the ballot box? (Y or N) | N/A | | | | | | | | | |
| 69. | Were ballots counted by a set of counting officers consisting of at least one officer who removed the ballots from the box and read them aloud, and one or more officers who entered the votes cast on three original tally sheets? (Y or N) | N/A | | | | | | | | | |

## COMMENT SECTION

Use this section to describe any noteworthy occurrence you observed while you were present at any of the polling places. Identify polling place by precinct number.

Provide County Central Counting Station irregularities if you were there at the end of election night for ballot delivery and counting.

This report is true and correct to the best of my knowledge and is an accurate report as observed.

Date: 06/26/2019

Signature of Inspector: MARIA Rodriguez



**Inspector Report for Early Voting Ballot Board Meeting**

---

**Political Subdivision Inspected:** McAllen, TX
*(Name of City, School, County, or other)*

**Date of Election:** 6/22/2019     **Inspector:** Maria Rodriguez

**Type of Voting:** ☐ Paper  ☑ Optical Scan

**Instructions:** Answer all questions Y, N, Not/Observed, or Not/Applicable, unless otherwise indicated.

| PAPERWORK: Did officials have... | |
|---|---|
| 1.  Early voting poll list?  *(Y or N)* | Y |
| 2.  Jacket Envelopes containing applications, carrier envelopes, and other accompanying information?  *(Y or N)* | Y |
| 3.  List of Declared Write-In Candidates, if any.  *(Y, N or N/A)* | N/A |
| 4a. Envelope #1?  *(Y or N)* | Y |
| 4b. Envelope #2?  *(Y or N)* | Y |
| 4c. Envelope #3?  *(Y or N)* | Y |
| 4d. Envelope #4?  *(Y or N)* | Y |
| **MISCELLANEOUS:** | |
| 5.  How many members did the early voting ballot board consist of?  *(Provide number)* | 5 |
| 6.  When were the early voting ballot materials delivered to the early voting ballot board?  *(Provide time/estimation)* | 2:30 PM |
| 7.  Did the early voting ballot board/signature verification committee meet prior to election day to qualify the early voting ballots?  *(i.e., to compare the signature on the application for a ballot by mail with the signature on the carrier envelope.)*  *(Y or N)* | N |
| 8.  In counties with over 100,000 population using electronic voting- did the EVBB begin counting ballots <u>before</u> election day?  *(Y, N or N/A)* | N |
| **PROCEDURES:** | |
| 9.  Were the early voting ballot boxes delivered with two locks and a numbered wire seal?  *(Y, N or N/A, if ballot boxes were not used)* | N* |
| 10. If the ballots were not pre-qualified the day/night before meeting, did the ballot board members compare signatures properly?  *(Y, N or N/A)* | Y |
| 11. Did the ballot board review each application to ensure it was a valid application?  *(Y or N)* | Y |
| 12. If you answered no to #10 or #11, what were the procedures?  *(Provide explanation below.)* | |
| 13. Once the ballots were qualified, did the ballot board open the carrier envelopes, remove the ballot envelopes, and then deposit the unopened ballot envelopes into a ballot box?  *(Y or N)* | Y |
| 14. If you answered no to #13, what procedure were used?  *(Provide explanation below.)* | |
| 15. Once qualified, was the voter's name entered on the early voting poll list?  *(Y or N)* | Y |
| 16. Were the applications, carrier envelopes, and accompanying papers put back in the voter's jacket envelope?  *(Y or N)* | Y |

| | |
|---|---|
| 17. Did the ballot board make sure there were at least 10 ballots in the ballot box before removing ballots from the ballot envelope and COUNTING the ballots? If not, please explain below. *(Y or N)* | Y |
| 18. Were the completed Affidavits and Statements of Residence placed in Envelope Number 4 or another container designated for the county voter registrar? *(Y, N or N/A)* | N/A |
| 19. Were ballots rejected if the carrier envelopes were marked "Statement Enclosed" and did not contain the "Statement of Residence"? *(Y, N or N/A)* | N/A |
| 20. If the statement of residence was not found in the carrier envelope, did the board open the ballot envelope at that time to confirm it was not enclosed with the ballot? *(Y or N)* | N/A |
| 21. Were ballots rejected if the list of registered voters had "ID" marked next to the voter's name and no copy of ID (or no completed Notice to Voter Who Must Provide ID) was enclosed? *(Y or N)* | N/A |
| 22. If no ID was enclosed in the carrier envelope, did the board open the ballot envelope at that time to confirm a copy of ID or completed Notice was not enclosed with the ballot? *(Y or N)* | N/A |
| 23. Were poll watchers present? *(Y or N) ) If not wearing a nametag please write in comment section number 25.* | N |
| 24. Were there any problems with poll watchers? *If yes, explain in the comments section of this report or attach another page.* | N/A |

25. Explanations:

#12 _____

_____

#14 _____

_____

#23 _____

_____

#24 _____

_____

_____

26. Provide specific information concerning any unusual activity personally observed by you.
In my opinion, board members were having a hard time agreeing on signatures and had a little trouble on other issues.
When ballots were delivered to the EVBB it was not locked or sealed. _____

_____

**This report is true and correct to the best of my knowledge and is an accurate report as observed.**

**Date:** 6/22/2019 _____  **Signature of Inspector:** *Maria Rodriguez* _____

Page 1

1                    UNITED STATES DISTRICT COURT
                      WESTERN DISTRICT OF TEXAS
2                       SAN ANTONIO DIVISION

3    DR. GEORGE RICHARDSON;          )
     ROSALIE WEISFELD; AUSTIN JUSTICE )
4    COALITION; COALITION OF TEXANS  )
     WITH DISABILITIES; MOVE TEXAS   )
5    CIVIC FUND; LEAGUE OF WOMEN      )
     VOTERS OF TEXAS; and AMERICAN GI )
6    FORUM OF TEXAS, INC.,           )
                                     )
7            Plaintiffs,             )
     v.                              )Civil Case No.
8                                    )5:19-cv-00963-OLG
     TEXAS SECRETARY OF STATE; TRUDY )
9    HANCOCK, in her official        )
     capacity as BRAZOS COUNTY       )
10   ELECTIONS ADMINISTRATOR; and    )
     PERLA LARA, in her official     )
11   capacity as CITY OF McALLEN,    )
     TEXAS, SECRETARY,               )
12                                   )
             Defendants.             )
13

14      **************************************
         REMOTE VIDEOTAPED 30(b)(6) DEPOSITION OF
                          PERLA LARA
15                      May 14, 2020
        **************************************
16         REMOTE VIDEOTAPED 30(b)(6) DEPOSITION OF

17   PERLA LARA, produced as a witness at the instance

18   of the Plaintiffs, and duly sworn, was taken in

19   the above-styled and numbered cause on

20   May 14, 2020, from 1:41 p.m. to 3:15 p.m.,

21   remotely before Rebecca A. Graziano, CSR, RPR,

22   CRR, in and for the State of Texas, reported by

23   machine shorthand, pursuant to the Federal Rules

24   of Civil Procedure and the provisions stated on

25   the record.

**CERTIFIED TRANSCRIPT**

RICHARDSON: PERLA LARA - 30(B)(6)

Page 2

1                    A P P E A R A N C E S

2

3    REPRESENTING THE PLAINTIFFS:

4    Mr. Hani Mirza (via videoconference)
     Mr. Ryan Cox (via videoconference)
5    Mr. Zachary D. Dolling (via videoconference)
     TEXAS CIVIL RIGHTS PROJECT
6    1405 Montopolis Drive
     Austin, Texas  78741
7    (512) 474-5073
     hani@texascivilrightsproject.org
8    ryan@texascivilrightsproject.org
     zachary@texascivilrightsproject.org
9
          and
10
     Mr. Samuel Kalar (via videoconference)
11   Ms. Joanna Suriani (via videoconference)
     WILLKIE FARR & GALLAGHER, LLP
12   787 Seventh Avenue
     New York City, New York  10019
13   (212) 728-8000
     skalar@willkie.com
14   jsuriani@willkie.com

15
     REPRESENTING THE DEFENDANT, TEXAS SECRETARY OF
16   STATE:

17   Ms. Anna Mackin (via videoconference)
     OFFICE OF THE ATTORNEY GENERAL
18   300 West 15th Street
     Austin, Texas  78701
19   (512) 463-2100
     anna.mackin@texasattorneygeneral.gov
20
     REPRESENTING THE DEFENDANT, TRUDY HANCOCK, in her
21   official capacity as BRAZOS COUNTY ELECTIONS
     ADMINISTRATOR:
22
     Mr. J. Eric Magee (via videoconference)
23   ALLISON, BASS & MAGEE, LLP
     402 West 12th Street
24   Austin, Texas  78701
     (512) 482-0701
25   e.magee@allison-bass.com



RICHARDSON: PERLA LARA - 30(B)(6)

```
 1              A P P E A R A N C E S

 2

 3   REPRESENTING THE DEFENDANT, PERLA LARA, in her
     official capacity as CITY OF McALLEN, TEXAS,
 4   SECRETARY:

 5    Mr. Isaac J. Tawil (via videoconference)
      Mr. Austin W. Stevenson (via videoconference)
 6    CITY OF McALLEN CITY ATTORNEY'S OFFICE
      1300 Houston Avenue, Second Floor
 7    McAllen, Texas  78501
      (956) 681-3111
 8    itawil@mcallen.net
      astevenson@mcallen.net
 9

10   ALSO PRESENT:

11    Mr. Bruce Erratt (via videoconference)

12
     VIDEOCONFERENCE TECHNICIAN:
13
      Ms. Maygun Flanagan
14

15

16

17

18

19

20

21

22

23

24

25
```

**hg**

RICHARDSON: PERLA LARA - 30(B)(6)

```
                                                        Page 4
1                            INDEX
                                                        PAGE
2

3     EXAMINATION BY MR. COX........................... 6

4

5                           EXHIBITS

6    NUMBER          DESCRIPTION                        PAGE

7    Exhibit 1       Notice of Deposition................ 9

8    Exhibit 2       Early Voting Ballot Board &

9                    Signature Verification Committee

10                   Handbook for Election Judges and

11                   Clerks, 2020; Bates SOS_000428

12                   through 000477..................... 18

13   Exhibit 3       February 2020 Election Advisory

14                   Email; Bates SOS_000737 through

15                   000741............................. 46

16

17

18

19

20

21

22

23

24

25
```

hglitigation.com

**hg**

Page 5

```
 1                   PROCEEDINGS
 2         (On the record at 1:41 p.m.)
 3         THE VIDEOGRAPHER:  We are going on
 4   the video record.  Today is May 14th,
 5   2020.  The time is 1:41 p.m.
 6         The civil action number is
 7   5:19-cv-00963-OLG in the matter of
 8   Dr. George Richardson, et al., versus
 9   Texas Secretary of State.  The deponent is
10   City of McAllen, Texas, secretary, Perla
11   Lara.  The video deposition is requested
12   by plaintiffs' counsel, Texas Civil Rights
13   Project, Austin.
14         My name is Maygun Flanagan.  I am
15   the videographer.  The court reporter
16   today is Becky Graziano.  We are both
17   representing HG Litigation Services.
18         Will counsel please identify
19   themselves for the record?
20         MR. COX:  My name is Ryan Cox,
21   C-o-x, with the Texas Civil Rights Project
22   on behalf of the plaintiffs.
23         MR. MIRZA:  My name is Hani Mirza
24   with the Texas Civil Rights Project, also
25   on behalf of the plaintiffs.
```

**hg**

RICHARDSON: PERLA LARA - 30(B)(6)

Page 6

```
 1          MR. KALAR:  Also on behalf of
 2     plaintiffs, my name is Samuel Kalar of the
 3     law firm Willkie Farr & Gallagher.
 4          MS. SURIANI:  And also on behalf of
 5     plaintiffs, my name is Joanna Suriani of
 6     the law firm Willkie Farr & Gallagher.
 7          MR. STEVENSON:  Austin Stevenson on
 8     behalf of defendant Perla Lara in her
 9     official capacity, McAllen city secretary.
10          MR. TAWIL:  And Isaac Tawil on
11     behalf of Ms. Lara as well.
12          MR. MAGEE:  This is Eric Magee on
13     behalf of Trudy Hancock, the Brazos County
14     elections administrator, in her official
15     capacity.
16          MS. MACKIN:  This is Anna Mackin
17     with the Texas Attorney General's office
18     on behalf of the Secretary of State in her
19     official capacity.
20          (Witness duly sworn.)
21                PERLA LARA,
22  being first duly sworn, testified as follows:
23                EXAMINATION
24  BY MR. COX:
25  Q     Thank you, Ms. Lara.  I appreciate being
```

Page 7

1   back on the record here.  I apologize a little

2   bit, but this is a little bit confusing having,

3   like, two separate depositions and kind of

4   repeating some of the same things.  So I apologize

5   for that.  We just wanted to make sure we were

6   going to get a chance to talk to you.  So we had

7   to, you know, send a separate notice directly to

8   you.

9            So we've already kind of discussed

10   this morning a lot of things related to how

11   McAllen operates elections.  I'd like to start by

12   kind of just reiterating for the record the

13   guidelines we discussed from this morning.

14            Do you remember all the things we

15   discussed from this morning?

16    A     Yes, sir.

17    Q     Okay.  And you can -- still agree that

18   we're going to follow all those ground rules?

19    A     Yes.

20    Q     Okay.  And so can you just go ahead for

21   the record again and please state your full name

22   and spell your last name, please?

23    A     Yes.  It's Perla Lara, L-a-r-a.

24    Q     Thank you.

25            And can you tell us again what your

RICHARDSON: PERLA LARA - 30(B)(6)

Page 8

```
 1    current position is with the City of McAllen?

 2    A      I'm the City of McAllen city secretary.

 3    Q      Okay.  And did you do anything to prepare

 4    for this deposition before today?

 5    A      No, sir.

 6    Q      Okay.  And did you review any documents at

 7    all to pre- -- to make sure you're prepared to

 8    testify today?

 9    A      Just the brief meeting I had with my two

10    attorneys yesterday.

11    Q      Okay.  And without telling me anything you

12    talked to your attorneys about, can you tell me

13    which documents you specifically looked at?

14    A      No documents.  Just time and where to

15    meet.

16    Q      Okay.  Like logistics?

17    A      Yes.

18    Q      Okay.  And so this deposition is a little

19    bit different than the last one.  Do you

20    understand that you've been designated here by the

21    City of McAllen to testify on certain topics on

22    the city's behalf and not on your personal behalf?

23    Do you understand that?

24    A      Yes.

25    Q      Okay.  I'm going to go ahead and put an
```

hg

Page 9

1    exhibit.

2              Okay.  I sent a link to what we'll

3    call Exhibit 1.

4              (Exhibit 1 marked.)

5    BY MR. COX:

6    Q      Please let me know when you're able to

7    open that.

8    A      Opened.

9    Q      Okay.  And do you recognize this document?

10   The title of it is about halfway down the page.

11   A      Yes.

12   Q      Okay.  And what do you recognize this to

13   be?

14   A      It's a notice of deposition.

15   Q      Okay.  And have you seen this document

16   before today?

17   A      Yes.

18   Q      And if you scroll down --

19   A      Okay.

20   Q      -- to Page 7, towards the bottom --

21   A      Okay.

22   Q      -- of the page, there's a header that says

23   "Deposition Topics."  Do you see that?

24   A      Yes.

25   Q      And did you read through this prior to

RICHARDSON: PERLA LARA - 30(B)(6)

Page 10

1    today to see what the topics of discussion were

2    going to be for this deposition?

3    A      Yes.

4    Q      You did.

5           And are you prepared to testify as to

6    all of the topics listed in this document?  I'm

7    happy to -- let you review it again if you'd like,

8    rather than going one by one.

9    A      Right.  Yes, I would need to review it

10   again.

11   Q      Okay.  Can you take a minute and just read

12   through Topics 1 through 5 and their subparts?

13   A      Okay.

14          Okay.

15   Q      Okay.  Are you prepared today to testify

16   about every single last one of these topics listed

17   here?

18   A      Yes.

19   Q      Is there -- did you identify any topic

20   that you feel you're not prepared to testify about

21   today?

22   A      No.

23   Q      Okay.  Good.

24          Now, if you scroll down to the

25   last -- Page 11, it says "Schedule B" at the top.

hg

Page 11

1   Do you see that?

2   A      Okay.

3   Q      It asked you to bring with you to this

4   deposition any documents you reviewed in

5   preparation for your deposition.  You testified a

6   moment ago that you didn't review any documents.

7   Is -- so is it the case that you did not bring any

8   documents with you to the deposition?

9   A      Correct.

10  Q      Okay.

11  A      Correct, I don't have anything with me.

12  Q      All right.  And so when you're testifying

13  about these topics, you understand that you're

14  testifying not just from your personal knowledge

15  but as a representative of the City of McAllen.

16  So that could include even things that you don't

17  have personal knowledge about, but also things

18  that, you know, the city has knowledge about

19  through its various employees.

20  A      Yes.

21  Q      Okay.  Now -- okay.  I'm going to try to

22  get through I -- all of the material fairly

23  quickly so we can all go home early.  I'm hoping

24  we can get home by, like, 3:00 -- head home by,

25  like, 3:00.  So I'm going to just ask you to, you

Page 12

1   know, not -- I'm going to try to skip a lot of

2   things about the early voting ballot board that

3   we've already discussed this morning.  There's no

4   reason to rehash them over again, but there is

5   kind of a few missing pieces that I was thinking

6   about and would like to get some responses from

7   you about.

8              Can you -- so to kind of start that

9   off, can you just generally again -- I know you've

10  done this already with us -- please just generally

11  describe the role the McAllen city secretary plays

12  in the mail-in ballot process, including the early

13  voting ballot board and how that operates,

14  generally?

15  A      Okay.  Well, it's basically the same thing

16  as I stated before.  It's the -- training our

17  judges, alternate judges, and clerks, going over

18  the information that we provide to them.  We get

19  that information from the Secretary of State's

20  website.  We order the handbooks and give them the

21  judge's handbooks with all the information.  We

22  download PowerPoint presentations.  We give them

23  the Texas Election Code books.  We order several

24  books and give each one of them a copy of it.

25             And then additionally, we do

1  individual trainings, and we're here to give them

2  guidance and answer any questions and point them

3  out to all the resources that our SOS makes

4  available to us on the internet.  We let them know

5  of all the advisories.  They -- they're -- they

6  equip us with a lot of advisories for every year,

7  and that's where we refer them to, to all those

8  sources.

9  Q      Okay.  And when you're saying "they,"

10  you're talking about early voting ballot board

11  members or SVC committee members?

12  A      Right, our board members, our -- right,

13  our judge and alternate judge and our -- our

14  clerks.

15  Q      Great.

16          And one thing that I was thinking

17  about at lunch, where -- where does the early

18  voting ballot board or election -- or EVC actually

19  physically meet?

20  A      Here at city hall.

21  Q      Okay.  Is that in your offices in

22  election -- or in the city secretary's office?

23  A      No.  We designate a conference room for

24  them.

25  Q      Okay.  And what is -- it's just a random

RICHARDSON: PERLA LARA - 30(B)(6)

Page 14

1   conference room somewhere at city hall?  Or it's
2   always the same one?
3   A     It's -- most of the time, it's the same
4   one.  I think there was one year that it was a
5   different one that we used.  Because we've got
6   several.  But for the most part, it's the -- it's
7   one on the second floor.
8   Q     Okay.  And so they -- so they -- when they
9   arrive to convene the early voting ballot board,
10  do they -- they come to your office first to pick
11  up the ballots, or you hand deliver the ballots to
12  that room that they're already working in?
13  A     Right.  No, they -- they report to us to
14  pick up their supplies, materials, and take their
15  oath of office.  And then after that, I've got
16  staff that will go unlock the cabinets and get the
17  ballots and give that information to them, and
18  then we walk them over to the conference room.
19  Q     So those ballots and information are kind
20  of handed to the judge, the --
21  A     At that point.
22  Q     -- the judge of the EVBB at that time?
23  A     Yes.
24  Q     Okay.  And can you please describe what
25  the duties of an EVB- -- EVBB member are?

**hg**

Page 15

1   A       To -- basically, what I stated before.

2   They just -- they qualify and process the

3   applications, or the ballots -- the

4   applic- -- ballots by mail.

5   **Q       Okay.  And they have other obligations as**

6   **well; right?**

7   A       Yes.  They also do the early vote.  They

8   visit the early voting sites.  We have three early

9   voting sites that they have to go visit and bring

10  the information.  Also they go print out the

11  results, put them in their bags, lock them up with

12  results in there, and then they bring that back

13  along with the USBs.

14  **Q       Got it.**

15  A       And the provisional ballots also.  They

16  review any provisional ballots also, so they do

17  come back a second time, if we have any.

18  **Q       Got it.**

19  **         And so while the early voting ballot**

20  **board is meeting, they're actually -- while**

21  **they're actually in the conference room,**

22  **considering what to do, whether to qualify certain**

23  **ballots, if questions arise at that time, what is**

24  **the instruction to those board members about where**

25  **they can go for outside assistance or questions to**

RICHARDSON: PERLA LARA - 30(B)(6)

Page 16

1   be answered?  Or are they told just to figure it

2   out with the materials they have in the room?

3    A      No, they -- they have to figure that out

4   on their own, really.  I don't give them any

5   advice.  They do have the information.  They've

6   got the number to the SOS in the event that they

7   need to call.  I know that in all the years that

8   I've done that, they've -- they've never -- have

9   had to make any phone calls.  If anything, it's

10  my -- not the ballot board but my actual judges on

11  election day that sometimes have to call the

12  county or what have you.  But it's the -- the

13  ballot board hasn't done that.

14   Q      Okay.  And so from that -- tell me if this

15  is a mischaracterization of what you're saying.

16  If they -- if such a question did arise, you would

17  advise them to call the Secretary of State as

18  opposed to trying to answer a question for them;

19  is that right?

20   A      Correct.

21   Q      Okay.

22   A      I mean, most of the information is in

23  those sources that we give them.

24   Q      Okay.  And you mentioned that the members

25  of the early voting ballot board take an oath when

**hg**

Page 17

1  they get to your office.  Do you administer that

2  oath?

3   A     No.  The judge will administer to the

4  alternate judge and to the clerk.

5            And can I go back to the previous

6  question as far as --

7   Q     Sure.

8   A     -- what you said about if they have any

9  questions?

10            The only part that I do help them out

11  with is with the equipment, because sometimes they

12  do have mishaps or they can open up the machine

13  for -- what have you.  Then they'll call, and of

14  course, I'll guide them through in the event that

15  they forget.  Like I said, sometimes with the

16  county, they use one machine; with us, they use

17  another.  So I'll help them out as far as the

18  step-by-step, or my deputy will.  But on that end,

19  we do assist them because they tend to forget.

20   Q     Got it.  Understood.

21            And so you were saying that the judge

22  gives an oath to the associate judge and the other

23  members of the board; is that correct?

24   A     Right.  Uh-huh.

25   Q     And so who gives the oath to the judge?

hg

RICHARDSON: PERLA LARA - 30(B)(6)

Page 18

1    A       I do.  But just to the judge, and then the

2    judge takes over.

3    Q       Okay.  So I would like to send another

4    exhibit, if I can.  And we'll mark this Exhibit 2.

5            (Exhibit 2 marked.)

6    BY MR. COX:

7    Q       If I wasn't clear earlier, the deposition

8    notice is marked Exhibit 1.

9    A       Okay.

10   Q       Please let me know when you're able to

11   open this document, Exhibit 2.

12   A       Okay.

13   Q       Okay.  Do you recognize this document?

14   A       Yes, that's the 2020 handbook.

15   Q       Okay.  And so this is the --

16   A       The primary.

17   Q       -- handbook that -- that we've spent quite

18   a bit of time talking about earlier this morning

19   in the previous deposition; correct?

20   A       Correct.

21   Q       Okay.  And this one is -- was produced to

22   us from the Secretary of State and is marked

23   SOS_000428, starting.

24   A       Yes.

25   Q       Did you get a copy of this updated 2020

RICHARDSON: PERLA LARA - 30(B)(6)

Page 19

1    version at some point in time?

2    A     No, I don't have that one.  Not yet.  I

3    don't have an election this year.  The one I've

4    got is the 2019.

5    Q     Got it.  Okay.

6              So I'd like you to scroll down to

7    Page 2 of the document.  It's -- so that's

8    SOS_433.  And under Number 5, it quotes the oath

9    that is supposed to be used.

10   A     Right.  That's a new one.

11   Q     Okay.  Is this different than the last one

12   you've seen?

13   A     Yeah.  That's -- yeah.  That's a new

14   section.  I've seen that one, though, yes.  It's a

15   little bit different.  But yes.

16   Q     Okay.  Is this the oath that you're used

17   to giving to the EVBB judge?

18   A     Well, the one that they -- that we do is

19   the one that's already on the form that they give

20   to us.  I don't have one in front of me, but --

21   Q     Okay.

22   A     -- I think it should be the same one.

23   Q     Okay.

24   A     But it's a -- it's an actual oath of

25   office that they take.

**hg**

RICHARDSON: PERLA LARA - 30(B)(6)

Page 20

```
 1    Q      Okay.  So this one says:  "I swear (or
 2   affirm) that I will objectively work to be sure
 3   every eligible voter's vote is accepted and
 4   counted, and that only the ballots of those voters
 5   who violated the Texas Election Code will be
 6   rejected."
 7              Did I read that correctly?
 8    A      Yes.
 9    Q      And that's not the whole oath.  I just
10   read the first sentence; right?
11    A      Right.
12    Q      And is that the oath that you recognized
13   from having given it to ballot board judges in the
14   past?
15    A      It's similar; yes.  It's just that it
16   looks different because I've got -- our form
17   looks -- looks different because that's the one on
18   the -- on the actual booklet.
19    Q      Okay.  And so --
20    A      Because prior to that, they used to do the
21   one -- I'm sorry.
22              Prior to that, they would do the oath
23   that was on the compensation form.
24    Q      Uh-huh.
25    A      That's what I'm saying.  That one changed
```

RICHARDSON: PERLA LARA - 30(B)(6)

```
 1   a little.
 2     Q      Does the City of McAllen have partisan
 3   city elections?
 4     A      Can you elaborate on that?  I'm sorry.
 5   I'm not quite understanding.
 6     Q      Yeah.  So -- so for city elections -- say
 7   for, like, the mayor or city commissioners -- do
 8   they run as a political party, or do they run, you
 9   know, without a political party?  Some cities do
10   it both ways, so I'm just trying to find out
11   what -- which way McAllen does it.
12     A      No, without.  It's a --
13     Q      Like is the --
14     A      -- single-member -- yes.
15     Q      Is the mayor -- like is the -- on the
16   ballot, does it say, like, you know, this
17   candidate is a Democrat and this candidate is a
18   Republican and things like that?
19     A      Right, no.  No, they don't.
20     Q      Okay.  Okay.  So then I don't know if you
21   can see right under the thing I just read, there's
22   a separate oath here that says that this one's
23   for -- to be used in "elections that do not
24   contain party affiliation."
25            So would this be the oath that you
```

hg

Page 22

1   would administer?

2   A      Yeah, that's why the other one looked a

3   little different.

4   Q      Okay.

5   A      Yeah.

6   Q      And the sentence -- the first sentence,

7   that's the one that -- the sentence that I read is

8   the same, though; isn't that right?

9   A      That I swear or affirm, yes.

10  Q      Okay.  I think that's all I have on that,

11  actually.  Let me -- can you scroll down in the

12  same document to Page 7 of the handbook, which is

13  SOS_438?

14         Does this look familiar to you?

15  A      Number 3?

16  Q      Or just this whole page.  I guess I'm

17  getting at -- I know you said you haven't seen the

18  2020 handbook, so I'm curious, like, what of, you

19  know, it --

20  A      Yeah.

21  Q      I'm wondering if there's updates to this

22  version from the version you've seen --

23  A      Yeah.

24  Q      -- and so I'm asking specifics --

25  A      Yeah.  No, it does -- if it's changed --

RICHARDSON: PERLA LARA - 30(B)(6)

Page 23

1   right.  If it has changed, maybe it's very little.

2   Part -- Number 1 looks basically the same.

3   The -- Number 2, qualifying by mail, late ballots,

4   provisional, that looks like it has been changed.

5      Q      Okay.

6      A      It's pretty similar.  It hasn't changed a

7   lot.

8      Q      Okay.  So I'd like to point your attention

9   to the paragraph that's right under Number 3.  It

10  starts with "except."

11     A      Okay.

12     Q      Now, this says:  "Except as provided

13  below, the board may" -- this is -- the

14  board -- I'm sorry.  Let me -- let me ask a

15  different question.

16            This page we're looking at discusses

17  convening the early voting ballot board; is that

18  right?

19     A      Right.

20     Q      And we discussed earlier this morning that

21  you are in charge of determining when the early

22  voting ballot board meets; is that correct?

23     A      Correct.

24     Q      And you testified earlier this morning

25  that in -- since you've been city secretary, the

hg

RICHARDSON: PERLA LARA - 30(B)(6)

Page 24

1   early voting ballot board has never met before

2   election day; is that correct?

3    A      Correct.

4    Q      Okay.  I just wanted to get that...

5           This paragraph says:  "Except as

6   provided below, the board may meet to qualify and

7   accept ballots any time after the end of early

8   voting by personal appearance," and it goes on

9   from there.

10          How early -- how much time is there

11  between the end of the early voting by personal

12  appearance period and election day in McAllen city

13  elections?

14   A      Three to four days.

15   Q      Okay.

16   A      They usually end on a -- on a Wednes- --

17  Tuesday or Wednesday, and then we'll have election

18  day on Saturday.

19   Q      It's your understanding that based on this

20  provision, the City of McAllen could have the

21  early voting ballot board meet in those -- in

22  those three or four days; is that right?

23   A      I'm sorry.  You --

24          MR. TAWIL:  Objection; form.

25          THE WITNESS:  You were breaking

RICHARDSON: PERLA LARA - 30(B)(6)

Page 25

```
 1        out.
 2   BY MR. COX:
 3     Q      Can you hear me?
 4     A      No.  You were breaking out.  I'm sorry.
 5   Can you repeat the question?
 6     Q      Sure.  Yeah.  I think I was having a
 7   microphone problem.
 8              Is it your understanding that the City
 9   of McAllen, or you specifically, could -- are
10   permitted to have the early voting ballot board
11   meet within that three- or four-day period before
12   election day?
13              MR. TAWIL:  Objection; form.
14              THE WITNESS:  Yes.
15   BY MR. COX:
16     Q      Okay.  And if they met within that period,
17   would they be permitted to review ballots that had
18   been received, to qualify them?
19     A      They could, but we haven't -- we haven't
20   done that.  I would have to take it to management
21   and my commission.  They could.
22     Q      Okay.  And if -- if the board did meet in
23   that time period between -- well, I'll
24   just -- I'll just leave that there, frankly.
25   Thank you for that.
```

**hg**

RICHARDSON: PERLA LARA - 30(B)(6)

1    If you could scroll down on the same

2   page, there's a bullet point under "Notes" that

3   starts with "the board, like the committee."

4    Do you see that?

5   A    Yes.

6   Q    It says:  "The board, like the committee,

7   may also compare signatures with any two or more

8   signatures of the voter made within the preceding

9   six years and on file with the voter registrar."

10    What is -- what is your understanding

11   of this role as it applies to McAllen's early

12   voting ballot board?

13   A    That the board could request to look --

14   compare signatures from previous elections if I

15   had them and they hadn't met retention.  They may

16   or may not, but they -- they've never asked or

17   inquired about it.  But that's my understanding.

18   Q    Okay.

19   A    If I have them and they asked, we could do

20   that.

21    MR. TAWIL:  Mr. Cox, this line of

22    questioning is going to Ms. Lara's -- in

23    her capacities as secretary's beliefs.  If

24    you have questions related to the

25    deposition topics as to the City of

**hg**

RICHARDSON: PERLA LARA - 30(B)(6)

Page 27

1        McAllen, I would ask that you please stick

2        to your topics and the entity that you're

3        deposing.

4                MR. COX:  I'm asking -- yeah.  I'm

5        asking what the City of McAllen's

6        understanding is about what this role

7        means, and I'm sorry if I'm unclear about

8        that.

9  BY MR. COX:

10  Q      Ms. Lara, for -- for the rest of today, if

11  I ask you anything about "your understanding" or

12  "you," I'm talking about you in your capacity

13  representing the City of McAllen.  So I'm -- I

14  want to know what McAllen's understanding of this

15  role means.

16          Does that make sense?

17  A      Noted.

18  Q      Okay.

19  A      Yes.

20  Q      Okay.  And so I -- tell me if I got this

21  wrong, but I think you just said that the early

22  voting ballot board has never asked for those

23  additional signatures; is that right?

24  A      Right.

25  Q      And who would they ask or how would they

**hg**

RICHARDSON: PERLA LARA - 30(B)(6)

1   go about getting those signatures if they wanted

2   them?

3    A      They could ask us, and I've got --

4              MR. TAWIL:  Objection; form.

5              THE WITNESS:  Yes, again, they

6         could ask, and if they've -- we have them,

7         if they haven't met retention, we could go

8         through them.

9   BY MR. COX:

10   Q      Okay.  And would you -- would you

11   coordinate with other entities at all to provide

12   those signatures?  For example, Hidalgo County

13   provides you their voting rolls and things like

14   that.  Would they also provide you copies of

15   signatures if you asked them to?

16   A      I've never requested that other than the

17   voter registration rolls.

18   Q      Okay.  Have you ever discussed with anyone

19   at Hidalgo County whether that's an option for

20   you, whether that's an option --

21   A      No.

22   Q      -- for the city?  Okay.

23   A      No.

24   Q      Okay.  Let's scroll down to Page 16 of

25   this same document, which is SOS_000447.

**hg**

Page 29

1    A      Okay.

2    Q      So does this look familiar to you?

3    A      Yes.  The "Exceptions"?

4    Q      Okay.  Well, actually, let's scroll up to

5    the page right before that, Page 15.  It starts at

6    "Section D:  Qualifying Signatures for This -- for

7    the Signature Verification Committee."

8    A      Okay.

9    Q      Does this look familiar to you?

10    A      Yes.

11    Q      And so what -- and this is a section that

12    you train EVBB and SVC committee members on; is

13    that correct?

14    A      Correct.

15    Q      And what is your understanding of what

16    this section talks about generally?  Just what is

17    the general topic for this?

18    A      It's basically just ascertaining that the

19    signatures are that of the voters; that you look

20    at the application and you look at the -- at the

21    carrier envelope, and you just compare the

22    documents to make sure that it was -- that the

23    documents were signed by the -- by the voter.

24    Q      Okay.  And so in Number 2, underneath

25    Section D, which is -- Number 2 is on Page 16 --

RICHARDSON: PERLA LARA - 30(B)(6)

```
 1   it says --
 2   A       Right.
 3   Q       -- "Check the sig-" -- it gives this
 4   instruction:  "Check the signatures" --
 5   A       Right.
 6   Q       -- "of the applicant on the application
 7   and on the carrier envelope to confirm that both
 8   signatures have been executed by the voter, unless
 9   either document was signed by a witness."
10   A       Yes.
11   Q       Besides this particular provision,
12   is -- are you aware of anything else in this
13   section or anywhere else in this handbook that
14   explains to members of the EVBB or signature
15   verification committee on how they are supposed to
16   compare signatures?
17   A       No.
18           MR. TAWIL:  Objection; form.
19   BY MR. COX:
20   Q       And are you aware of anything in this
21   handbook that gives instructions about writing
22   styles or variances in signatures that can occur?
23           MR. TAWIL:  Objection; form.
24           THE WITNESS:  No.
25   BY MR. COX:
```

**hg**

RICHARDSON: PERLA LARA - 30(B)(6)

Page 31

1    Q       And since you're not aware of it, those

2    are things you don't train your EVBB board members

3    or SVC committee members on using this document;

4    is that right?

5                   MR. TAWIL:  Objection; form.

6                   THE WITNESS:  Correct.

7    BY MR. COX:

8    Q       Okay.  Now, in the same document, can you

9    scroll down to Page 18.  That's SOS_000449.

10   A       Okay.

11   Q       And do you see where it says -- at the

12   bottom of the page, it says "Note" and there's a

13   paragraph there?

14   A       Yes.

15   Q       Can you read the first sentence of that

16   for me, please?

17   A       "The early voting ballot board judge must

18   deliver written notice to the voter of the reason

19   for rejection of his or her ballot no later than

20   the 10th day after election day."

21   Q       Okay.  Thank you.

22               So is it the policy of your office to

23   comply with this rule?

24                   MR. TAWIL:  Objection; form.

25                   THE WITNESS:  Yes.

RICHARDSON: PERLA LARA - 30(B)(6)

Page 32

```
1   BY MR. COX:

2     Q      And do you -- does your office make

3   attempts to send rejection letters earlier than

4   this deadline?

5     A      Except for the provisional ballots,

6   because those, we wait a little bit longer than we

7   do for election night.

8     Q      Okay.  So for any ballot that was

9   qualified or rejected -- any ballot that was

10  rejected when the early voting ballot board meets

11  on an election day, when do those letters usually

12  go out?

13            MR. TAWIL:  Objection; form.

14            THE WITNESS:  They work -- they

15        work on them on that night, and we finish

16        up the -- on Monday morning, because

17        sometimes they -- we end -- we finish

18        late.  So if they don't go out that

19        same -- that same night, we do it on

20        Monday morning, the Saturday after the

21        election.

22  BY MR. COX:

23    Q      Wait, so what day of the week do city

24  elections in McAllen happen?

25    A      Saturdays.
```



Page 33

1    Q      Okay.  And then the Monday, two days after

2    election day, would be when the rejection letters

3    are usually mailed out by your office?

4    A      Correct, yes.  They start -- they start

5    them up on that night and try to get ahead as much

6    as they can, but they come back and finish on

7    Monday.

8    Q      Okay.  And in sending written -- I'm

9    sorry.  In sending written notice to the voter of

10   the reason for rejection, does your office have a

11   policy of sending this notice by any other means

12   besides a letter?

13   A      No.  That's it.  We just download the

14   form, and we just send out that notice.  Just

15   mail.

16   Q      Okay.  And does your office have the -- I

17   guess the ability to notify voters by other means?

18              MR. TAWIL:  Objection; form.

19              THE WITNESS:  No.  We only do it by

20        mail.

21   BY MR. COX:

22   Q      Right.  I understand that you're -- that

23   right now you only do it by mail.

24              What I'm asking is -- say

25   hypothetically a court ordered you to also provide

RICHARDSON: PERLA LARA - 30(B)(6)

Page 34

1    that notice by email and phone number if you

2    happen to have that information.  Is that

3    something your office would be able to do?

4              MR. TAWIL:  Objection; form.

5              THE WITNESS:  Yes.  Yes.

6    BY MR. COX:

7    Q     And I'm trying -- in trying to understand

8    that a little bit, what would -- what kind of

9    resources would you have to have to implement

10   something like that, where you gave notice by

11   other means as well?

12             MR. TAWIL:  Objection; form.

13             THE WITNESS:  Well, we've got them.

14        We -- if we were asked to, we could

15        send -- send it electronically.  We can

16        fax as well.  I mean, we don't do a lot of

17        that anymore, but we can do it

18        electronically or fax.

19   BY MR. COX:

20   Q     Okay.  And in the last election, do you

21   know -- in the last general election, I'm

22   sorry -- do you know how many ballots were

23   rejected in that election?

24   A     I don't recall, looking at this document.

25   Q     If you -- were -- are you able to provide

Page 35

1    even just, like, a rough estimate?

2    A       It's like a handful.

3    Q       Okay.  And so in the hypothetical

4    situation I was discussing where you had to send

5    an email or give a phone call if you had that

6    information for voters that had their ballots

7    rejected, how long do you think that would take?

8                    MR. TAWIL:  Objection; form.

9                    THE WITNESS:  It wouldn't take

10        long.  Electronically, you can do it

11        within that day.  It wouldn't take long.

12   BY MR. COX:

13   Q       Okay.  And would there be any additional

14   costs to your office for implementing something

15   like that?

16                    MR. TAWIL:  Objection; form.

17                    THE WITNESS:  No.  No.

18   BY MR. COX:

19   Q       Okay.  I think I'm done with this handbook

20   for now, and if we need to, we'll come back to it.

21                    But I kind of want to quickly change

22   the topic a little bit and talk about your kind

23   of -- the work you do with the Secretary of State,

24   or the relationship between the City of McAllen

25   and the Secretary of State.

RICHARDSON: PERLA LARA - 30(B)(6)

Page 36

```
 1              So I was hoping you -- could you
 2   please just tell me kind of what interactions that
 3   you or your office have with the office of the
 4   Texas -- the Texas Secretary of State related to
 5   elections on a -- what kind of interactions do you
 6   have generally?
 7              MR. TAWIL:  Objection; form.
 8              THE WITNESS:  Basically what all of
 9         the other -- yeah, what the other -- the
10         rest of the city clerks have.  It's -- we
11         go to them for guidance, for direction.
12         Like I said before, usually they'll direct
13         us back to our legal counsel.
14              But I do send emails to them asking
15         them, you know, "Is this what we need to
16         do" or "Is this the notice, the form that
17         I have to go by, or is this just an
18         example that you're giving us?"  And then
19         of course, you know, they'll tell us that
20         that's the suggestion; we're welcome to
21         use it or check with legal counsel, which
22         I turn around and do that afterwards.
23              They're very good at answering, you
24         know, emails, answering questions.
25         Whatever questions we have, they'll
```



Page 37

1        answer, but they also tell us to go back

2        to our -- to our counsel also and seek

3        direction from them as well.  But they're

4        very proactive and they're excellent.  I

5        get answers from them a lot quicker than I

6        do from our -- from our county.

7   BY MR. COX:

8    Q     Okay.  Great.

9            If you had to, like, give a rough

10  estimate about how often you have those kind of

11  communications or questions with the Secretary of

12  State -- you know, once a year or something like

13  that -- how -- would you be able to give an

14  estimate of that?

15   A     Well, it's more at election time.  I mean,

16  other than -- if I'm not having elections, I'm not

17  calling.  They've -- they're less -- at the

18  beginning, I think I was calling Christina and

19  everybody else a lot more.  When we were

20  purchasing our equipment, of course I needed

21  guidance of -- to what to do, how to get our

22  equipment validated and what have you.

23            But as the years have gone by,

24  it's -- certainly it's been less.  But, you know,

25  it's a handful of questions and it's pretty much,

```
 1   you know, technicalities.  They're things that you
 2   might -- since I don't do it all the time, you
 3   tend to forget or you want to -- not forget, but
 4   you want to know if there's some more updated
 5   form, has anything changed, you know, is there
 6   any -- anything that I've missed.
 7              And, again, they always defer us back
 8   to our city -- assistant city attorneys and city
 9   attorney as well.
10   Q      Okay.  Great.
11              And have any of the questions or
12   conversations you've had with the Secretary of
13   State involved qualifying mail-in ballots or
14   mail -- signatures on mail-in ballots?
15   A      No.
16   Q      Okay.  And by -- and by "you," I -- again,
17   I mean your office.  So are you aware of anyone
18   else in your office having those kind of
19   discussions?
20   A      Right.  No, not that I'm aware of.
21   Q      Okay.  So you mentioned a couple times the
22   elections advisories that are issued by the
23   Secretary of State.  What is your understanding of
24   what an election advisory is?
25   A      Updates.  Memos and updates, changes.
```

Page 39

1   Q       And how do those come to you?  How do you

2   get them?

3   A       I've got electronic -- I'm set up on their

4   system to get electronic email.  So any time

5   something comes up -- we just got one where

6   they're extending the early voting period.  Even

7   though I'm not running an election -- having an

8   election this year, I keep up with those just to

9   be in the know.  I just found out that they

10  extended early voting --

11  Q       Okay.

12  A       -- for the primary, or the runoff.

13  Q       Okay.  And as an elections administrator,

14  are you obligated to act in accordance with those

15  election advisories, or are they -- you know, does

16  the title really speak to it that -- that it's

17  just an advisory and you can not follow it if you

18  don't want to?

19                  MR. TAWIL:  Objection; form.

20                  THE WITNESS:  Correct.  Correct.

21  BY MR. COX:

22  Q       I'm sorry.  Which one of those two things

23  is correct?

24  A       Advisories.  They're just advisories, but,

25  I mean, that's -- that's what we -- that's what we

RICHARDSON: PERLA LARA - 30(B)(6)

Page 40

```
 1   use to go by.  That's our guidance.
 2   Q      Okay.  So have you ever received an
 3   election advisory from the Secretary of State's
 4   office that you disagreed with or thought was
 5   incorrect?
 6   A      No.
 7                MR. TAWIL:  Objection; form.
 8   BY MR. COX:
 9   Q      Okay.  So in that respect, you, I
10   assume -- and tell me -- please tell me if this is
11   wrong -- that you have never made the conscious
12   decision to ignore an election advisory from the
13   Secretary of State's office?
14   A      Right.  No.  No, it's -- that's what they
15   send and that's what we follow.  If something
16   changes, we change it.  If it doesn't change,
17   that's what we continue to follow until they tell
18   us otherwise.
19                Normally, they're just advisories
20   unless I get an email.  There was a -- there was a
21   time that -- I think it was Christina Adkins sent
22   us an email saying, you know, the forms have
23   changed, and it was after the fact that we had
24   already had our trainings for judges and alternate
25   judges, and -- I tell you, they're very proactive.
```

**hg**

Page 41

1   She turned around and sent the emails.  We printed

2   out the forms and told them disregard what we had,

3   the forms have been revised.

4            And, you know, I do what they say.

5   You know, if they change it, we change it.

6   **Q        And has the -- does the Secretary of State**

7   **or have they ever reached out to consult with you**

8   **about the content of an elections advisory before**

9   **it issues?  Like, for example, asking if some**

10  **particular advice would be feasible or anything**

11  **like that?**

12            MR. TAWIL:  Objection; form.

13            THE WITNESS:  No.  The only -- yes.

14       No, the only time they reached out to me

15       was when we were in the process of getting

16       our election equipment, and that was the

17       only time.  And they -- yes, I got a

18       direct phone call from them, and we

19       proceeded --

20  BY MR. COX:

21  **Q        Okay.**

22  A        -- as they instructed us to and we got our

23  equipment certified.

24  **Q        Okay.  Great.**

25            **And so you mentioned kind of a**

**hg**

Page 42

1    specific example of this, but can you describe,

2    when you get a new elections advisory from the

3    Secretary of State's office, how that is handled

4    in your office, what you do with it and how you

5    implement any changes?

6      A      Right.  Well, I'll get the -- I get

7    the -- it's through an email.  It's from -- I

8    believe it's election -- something election.net or

9    elections -- it's elections something.  I get it.

10   I review it.  I forward it to my deputy, to my

11   record staff, and then I turn around and forward

12   it to my team and my -- our city attorney, and

13   then he either disseminates to the rest of the

14   attorneys or -- or not.  But I always send it

15   to -- I forward it to them and let them know.

16     Q      Okay.  And if that election advisory,

17   like, advised you to do some -- make some

18   specific -- excuse me -- make some specific

19   changes to the way you run elections in McAllen,

20   how would you go about implementing those changes?

21     A      I mean, we would --

22              MR. TAWIL:  Objection; form.

23              THE WITNESS:  We would -- what

24        we -- we would make the changes to fit our

25        local elections.

**hg**

RICHARDSON: PERLA LARA - 30(B)(6)

Page 43

```
 1   BY MR. COX:
 2    Q      And so would you convene, like, a
 3   team -- your team or involve the same manager, or
 4   who would be involved in deciding how you're going
 5   to implement it and, you know, make the
 6   lower-level decisions about, you know, what
 7   actually needs to change?
 8              MR. TAWIL:  Objection; form.
 9              THE WITNESS:  Yeah, I usually -- I
10        usually -- yes, I usually let my ACM know,
11        and then we meet with our -- with our
12        staff, and we make those changes.  Unless
13        it's the payroll or something where I need
14        to involve not only the management but the
15        city commission, you know, that's when --
16        when we do that.  If rates increase or if
17        it relates to compensation and that's, you
18        know, beyond what I can change, I'll take
19        it up to the management and the mayor or
20        city commission.
21              But if it's something just internal
22        and its processes, I review it with them,
23        they're okay with it, we change.
24   BY MR. COX:
25    Q      Okay.  And you mentioned that
```

Page 44

1    the -- your -- you think -- I'm sorry.  Let me

2    restart that.

3              You said that these are advisories.

4    Is it your understanding that there would be any

5    consequences or no consequences if you refused to

6    follow one of them?

7              MR. TAWIL:  Objection; form.  And

8        what topic does that relate to?

9              MR. COX:  I mean, Isaac, it's all

10       of them, man.

11             MR. TAWIL:  Which one?

12             MR. COX:  Duties and

13       responsibilities -- okay.  Number 1.

14             MR. TAWIL:  I mean, you're asking

15       her --

16         (Simultaneous crosstalk.)

17             MR. TAWIL:  You're asking her if

18       the Secretary of State is going to impose

19       penalties.  Which topic does that -- does

20       that pertain to?

21             MR. COX:  Easily in Number 1,

22       compliance with the election code; the

23       duties during the early voting period

24       under Number 3; policies, practices, and

25       procedures, including but not limited

RICHARDSON: PERLA LARA - 30(B)(6)

Page 45

```
 1       to --
 2               MR. TAWIL:  Well, that would
 3       be -- that would be a question for the
 4       Secretary of State, if they're going to
 5       impose penalties.  But not as -- in terms
 6       of our processes, if somebody else is
 7       going to impose penalties, that's not a
 8       question about our processes.  So, again,
 9       I don't see how your question relates to
10       the topic.
11               MR. COX:  My question relates to
12       the city's knowledge about how it
13       implements and administers its elections,
14       and --
15               MR. TAWIL:  And your question was
16       whether or not the Secretary of State
17       would impose penalties.
18               MR. COX:  My question is whether
19       the -- what the city's understanding.
20               MR. TAWIL:  Perla, if you know, I
21       guess answer the question.
22               MR. COX:  Thank you.
23   BY MR. COX:
24   Q       I can repeat the question if you'd like.
25   A       The Secretary of State has never imposed
```

RICHARDSON: PERLA LARA - 30(B)(6)

Page 46

 1   any that I'm aware of.

 2   **Q      Okay.  My question was:  If you refuse to**

 3   **follow one of these advisories, is it the**

 4   **understanding of your office -- or what is the**

 5   **understanding of your office about whether**

 6   **consequences would be -- would apply or not?**

 7   A      Right.  I've always thought --

 8            (Simultaneous crosstalk.)

 9            MR. TAWIL:  I'm going to make the

10       same objection.

11            And, Perla, if you can answer the

12       question, answer it.

13            THE WITNESS:  Right.  We have

14       always followed, so -- they're advisories,

15       but I take it as, you know, that's the

16       form to follow, because that's -- that's

17       all the guidance I have, is the Secretary

18       of State.

19   BY MR. COX:

20   **Q      Okay.  I think that is...**

21            **So I'm going to show you Exhibit 3.**

22          (Exhibit 3 tendered.)

23            THE WITNESS:  Okay.

24   BY MR. COX:

25   **Q      And please let me know when you're able to**

RICHARDSON: PERLA LARA - 30(B)(6)

Page 47

```
 1   pull that up.

 2    A      Okay.

 3    Q      Okay.  So this -- do you recognize this at

 4   all?

 5    A      Yes.

 6    Q      Okay.  This was produced to us by the

 7   Secretary of State's office, and it's

 8   Bates-stamped SOS_737 through 741.  On the first

 9   page, it looks like it's an email that goes out to

10   a lot of different people.

11           Is that what you recognize this to be?

12    A      Right, that's what -- "elections

13   internet."  I couldn't remember the second one.

14   But yes, that's the --

15    Q      Okay.

16    A      They're automatic.  They populate.

17    Q      Okay.  So you're on this list that gets

18   this email?

19    A      Yes.

20    Q      Okay.  And what is this email about, or do

21   you -- can you tell that from this?

22    A      Ballots by mail reminders and the notice

23   of rejected ballots.

24    Q      Okay.

25    A      This one looks like it has attachment.
```

**hg**

RICHARDSON: PERLA LARA - 30(B)(6)

Page 48

1   Q     So this is an election advisory; is that

2   right?

3   A     Yeah.

4   Q     Like the ones we were talking about a

5   minute ago?

6   A     Right.  They come, like, in memo form or

7   the -- they've got forms attached.  See, there's

8   the form.

9   Q     Okay.  And do you remember receiving this

10  specific one back in February?

11  A     So much has happened.  I'm sure I got it.

12  I mean, it's just two, three days ago I got the

13  one on the proclamation for extending the early

14  voting ballot period.  But, you know, I'm sure I

15  got it.  It's just February of -- a lot has

16  happened since then.

17  Q     Okay.

18  A     So yeah.

19  Q     So -- so a minute ago, you mentioned that

20  if you get an election advisory like this, you

21  would -- and please tell me -- please correct me

22  if I'm misstating any of this -- but you would

23  generally forward it to the, I guess, relevant

24  people in your office that needed to see it, and

25  then if it required any changes, you would maybe

Page 49

1   have a meeting with the people that needed to make

2   those changes; is that right?

3   A        Correct.   In an election year.

4   Q        Okay.

5   A        Like I said, right now --

6   Q        Okay.

7   A        -- I'm not having an election year.   The

8   only reason I paid close attention to the one that

9   I was telling you about, the -- extending the

10   early voting period, is because the county is

11   using some of our facilities, and so I wanted

12   my -- my management team and our city attorney to

13   know that it was getting extended and we're going

14   to be letting them use those buildings for a

15   little bit longer than what we had planned.

16   Q        Got it.   Okay.

17            Now, so you received this in a year

18   that you do not have an election, so would

19   you -- in that case, would you still have

20   forwarded it on to the appropriate people in your

21   office that needed to see it?

22            MR. TAWIL:   Objection; form.

23            THE WITNESS:   No.   Those, they just

24      keep there, because if we were to have an

25      election, then we go back to them.

RICHARDSON: PERLA LARA - 30(B)(6)

Page 50

```
 1         Because they save them under advisories
 2         and they're mostly in the city -- the SOS
 3         keeps them by years.  And so if I needed
 4         them, I just go back to their website, to
 5         the 2020 advisories, and it's got
 6         everything.  Like that one was 2020-07.
 7         I'll start from 01 and then just print
 8         everything and send it to my team.
 9  BY MR. COX:
10    Q     Okay.  So this is basically -- because you
11  got it in February 2020, this is probably an
12  advisory that you wouldn't read until next year
13  when you have an election?
14    A     Correct.
15    Q     Okay.
16    A     And, of course, by next year, they'll have
17  a 2021 because they -- they do update those forms.
18    Q     Yeah.  And there would probably be new
19  advisories as well.
20             Okay.  So then I guess is it safe to
21  say that you have not discussed the contents of
22  this election advisory with anyone in your office?
23             MR. TAWIL:  Objection; form.
24             THE WITNESS:  Correct.
25  BY MR. COX:
```

Page 51

1    Q      Okay.  Well, we're going to take a look at

2    it for maybe the first time, then.

3                If you could scroll down to -- I guess

4    it's the first page of the actual memo, so

5    SOS_738, and this -- in the middle of the

6    paragraph, it says in bold -- big bold text:  "Our

7    office recommends mailing notices of rejected

8    ballots to affected voters as soon as possible."

9                Did I read that right?

10   A      Correct.

11   Q      And is this already the policy of your

12   office?

13   A      Yes.  We do it as promptly as possible.

14   Q      Okay.  And do you -- I recognize from your

15   testimony earlier that, you know, depending on how

16   many of them there are, they generally would go

17   out the next day or the following Monday because

18   mail doesn't run on Sunday.

19   A      Correct.

20   Q      And to me, it doesn't seem like there's

21   any way to send mail notices faster than that.  Is

22   that your opinion?

23   A      Yes.

24   Q      However, would you be able to send out

25   notices -- if the early voting ballot board met

**hg**

RICHARDSON: PERLA LARA - 30(B)(6)

Page 52

1  sooner, would you then be able to send out

2  rejection letters sooner than the Monday after the

3  election?

4            MR. TAWIL:  Objection; form.  That

5        calls for facts not in evidence and asks

6        her to speculate about facts you-all

7        haven't testified about yet.

8  BY MR. COX:

9   Q     Ms. Lara, you can answer the question.

10  A     Yes.

11  Q     Okay.  Now, I want to turn your attention

12  to the second page of this advisory.  It's -- so

13  this is SOS_000739, and let me know when you're

14  there.

15  A     Okay.

16  Q     So can you -- if you haven't read this

17  before, can you please read this now and then let

18  me know when you're done.

19  A     Okay.

20  Q     Okay.  So this -- the first paragraph

21  cites to a section of the election code, 87.127.

22  Are -- off the top of your head, are you familiar

23  with that provision of the election code?

24            MR. TAWIL:  Objection; form.

25            THE WITNESS:  Yes.

Page 53

```
 1   BY MR. COX:
 2    Q      You are?
 3            MR. TAWIL:  Objection; form.
 4            THE WITNESS:  Yes.
 5   BY MR. COX:
 6    Q      Okay.  What does that provision of the
 7   election code talk about, then?
 8            MR. TAWIL:  Objection; form.
 9            THE WITNESS:  Right.  Well, I've
10       never had to do that.
11   BY MR. COX:
12    Q      I'm sorry.  You never had to do what?
13    A      I could -- the petitioning.
14    Q      So --
15    A      You mean if it -- as it relates to the
16   rejected ballots; right?
17    Q      Uh-huh.
18    A      If I had a question; right?  I've never
19   done that.
20    Q      Okay.  So in the first line of this, it
21   says:  "As a reminder, if a county election
22   officer determines that a ballot was incorrectly
23   rejected," and it goes on from there.
24            Are you a county election officer?
25    A      No.
```

hg

Page 54

1   Q      Okay.  So based on the guidance in

2   this -- and, you know, I don't know how familiar

3   you are with the section of the election code that

4   is cited there.  I'm not asking you to be -- you

5   know, know that by heart.

6   A      Okay.

7   Q      But do -- since this guidance applies to

8   county election officers, is it your understanding

9   that you're not able to use this type of -- seek

10  this type of injunctive relief that it talks about

11  in here?

12          MR. TAWIL:  I'm going to object,

13      and I'm going to insert that under

14      doctrine of optional completeness.  I'd

15      like you to read the entire phrase and not

16      omit that it could be rejected or accepted

17      improperly.

18          MR. COX:  Sure, sure.  Yeah.

19      Let's -- I didn't mean to do that.  I was

20      just trying to save time.

21          MR. TAWIL:  Well, I think it was an

22      intentional misrepresentation of the

23      advisory, but please complete it.

24          MR. COX:  Okay.  All right.

25

RICHARDSON: PERLA LARA - 30(B)(6)

Page 55

```
 1   BY MR. COX:
 2    Q      It says:  "As a reminder, if a county
 3   election officer determines that a ballot was
 4   incorrectly rejected or accepted by the early
 5   voting ballot board before the time set for
 6   canvass -- convening the canvassing authority, the
 7   county election officer may petition the district
 8   court for injunctive relief or other relief as the
 9   Court determines appropriate."
10             Now, you testified a second ago that
11   you're not a county election officer; is that
12   right?
13             MR. TAWIL:  Objection; form.
14             THE WITNESS:  Correct.
15   BY MR. COX:
16    Q      And so is it your understanding -- do you
17   have an understanding about whether you're allowed
18   to use this particular provision as an early
19   voting clerk and city election administrator?
20             MR. TAWIL:  Objection; form.
21             THE WITNESS:  Not that I'm allowed.
22        I mean, I'm just not -- I'm familiar with
23        it.  I'm familiar with a couple of
24        the -- several of the sections on the TEC,
25        the Texas Election Code book.  That's all
```

**hg**

RICHARDSON: PERLA LARA - 30(B)(6)

Page 56

1       I meant, that I'm familiar with it.

2       I've -- I've seen it.

3   BY MR. COX:

4    Q      I understand.  Okay.

5              I'm just trying to get at whether --

6   well, okay.  You said you've never tried to use

7   this kind of procedure before; is that right?

8    A      Correct.

9    Q      Have you -- not just this procedure, but

10  have you ever gone into court on behalf -- either

11  about a -- a ballot that was incorrectly rejected

12  or accepted?

13   A      No.

14   Q      And -- after ballots are rejected by an

15  early voting ballot board, and they come --

16   A      Correct.

17   Q      And the notice comes back -- a signed

18  rejection notice, signed by the EVBB judge, is

19  given back to you, do you -- does your office

20  perform any additional review or look at those

21  signatures that would allow you to determine if

22  you have -- even have an opinion about whether

23  something is incorrectly rejected or accepted?

24   A      No.

25   Q      Okay.  And then in the hypothetical

RICHARDSON: PERLA LARA - 30(B)(6)

Page 57

1    situation that this -- that this document

2    discusses, where you did determine that you

3    thought something was incorrectly rejected or

4    accepted -- say just, you know, for whatever

5    reason, you did make that determination on your

6    own as a city secretary -- what would you have to

7    do -- what process would you have to initiate to

8    be able to go into court on something like this?

9               MR. TAWIL:  Objection; form.

10              THE WITNESS:  Well, I really don't

11         have an opinion.  If my board -- the --

12         our EVBB board says that they're

13         rejecting, you know, all we do is provide

14         them with the form so that they can give

15         me the reason why they're rejecting, make

16         our copies for our files, and then we mail

17         them out.

18    BY MR. COX:

19    Q      Okay.  And say that, you know, it was your

20    ballot, so you knew for a fact that it was

21    improperly rejected.  I'm asking you if something

22    happened where you knew for an absolute fact that

23    a ballot was improperly rejected or accepted --

24    you knew that for a fact -- and you wanted to

25    implement some kind of policy like this to go

RICHARDSON: PERLA LARA - 30(B)(6)

Page 58

1   protect the integrity of the election, where would

2   you start?  Would you go talk to the --

3                 MR. TAWIL:  Perla -- Perla, you

4        don't need to answer any questions about

5        your personal voting.

6                 Mr. Cox, please stick to your

7        topics and questions relevant to the

8        deponent, not Ms. Perla's individual or

9        personal issues if she has any.

10                MR. COX:  Okay.

11  BY MR. COX:

12   Q     Ms. Lara, my question is:  If you had an

13  absolute certainty that some ballot that you had

14  gotten back was either accepted or rejected from

15  the EVBB, was in error, you had an absolute

16  certainty about that, and you just -- and the city

17  secretary's office decided to protect the

18  integrity of the election by going into court and

19  seeing that ballot either rejected or accepted,

20  depending on what should have been done, where in

21  your office would you start to implement that

22  process?

23   A     I would start with my legal department.

24   Q     The legal department for the City of

25  McAllen?

**hg**

RICHARDSON: PERLA LARA - 30(B)(6)

1    A      Correct.

2    Q      Okay.  And do you have people in the legal

3    department at the City of McAllen that are

4    specifically assigned to work with your office, or

5    is that done, like, ad hoc, kind of case-by-case

6    basis?

7              MR. TAWIL:  Objection; form.  How

8         we assign counsel to the various

9         department heads is a matter of

10        attorney-client privilege and she's not

11        going to answer that question.

12             MR. COX:  Okay.  That's fine.

13   BY MR. COX:

14   Q      Have you ever had to go to -- well...

15             So I'd like to ask you a couple

16   questions -- changing the topic a little bit --

17   about, you know, your relationship with Hidalgo

18   County.

19             We talked about this a little bit

20   before about how you get signatures -- I mean how

21   you -- Hidalgo County helps you check people if

22   they're on the voting rolls and things like that;

23   is that -- is that correct?

24   A      Correct.

25   Q      And what else in administering your

Page 60

1  elections does the -- does the county elections

2  office help you with?

3   A      That's about it, that and providing the

4  voter rolls.  Everything else, we do on our own,

5  or the city does on their own.

6   Q      Okay.  And do they --

7   A      The only other thing are the train- --

8  the -- the trainings for deputy volunteers.  They

9  do the trainings, and they -- they issue out the

10  certificates.

11  Q      Okay.  And so if a voter that lives in

12  McAllen had applied for an annual ballot by mail

13  with the county, would the county send that to you

14  to add to your roster of mail-in ballot voters?

15  A      Yes, they do.  They send them to us every

16  year, and if we get any by mistake, I -- same

17  thing.  I extend them the same courtesy.  I turn

18  around and send it to them.  But basically, we get

19  them from the -- from them every year.

20  Q      Okay.  And then in terms of whenever you

21  get election results, do you send those to the

22  county or do you publish them yourselves, or is

23  there any coordination in that respect?

24  A      No.  We publish it ourself.

25  Q      Okay.  And so would -- does Hidalgo County

**hg**

RICHARDSON: PERLA LARA - 30(B)(6)

Page 61

1   **elections administrator have any reason to have**
2   **any of the information about your city election**
3   **related to, like, the ballots that were rejected**
4   **in your city elections or ballots that were**
5   **accepted, the number of mail-in ballot voters?**
6   **Anything like that?  Would they have reason to**
7   **have anything like that because you provided it to**
8   **them?**
9    A      No, not unless they -- the only thing that
10  we send back to them are the provisionals, and of
11  course, I don't know their processes -- unless
12  they make copies of what they send back to us.
13  They shouldn't, but then -- I mean, I don't know.
14  They -- I send the provisionals.  They -- we go
15  through a curing period.  They send them back to
16  us, and unless they made a copy, they shouldn't
17  have anything.
18   **Q      Okay.  And so I'd like to ask you now, you**
19  **know, if a voter contacts your office and says**
20  **that they believe that their ballot was rejected**
21  **in error, do you have policies and procedures for**
22  **handling that type of complaint?  Or how would it**
23  **be handled, if not?**
24   A      Right.  I mean, if they do, they'll
25  contact our office.  Some have -- will come by the

hg

Page 62

```
 1   office and we'll talk to them.  They'll express
 2   their concerns.  We'll go over the notice, and
 3   I -- as a matter of fact, I had one that actually
 4   came by, and so I showed her -- we reviewed the
 5   notice, and she requested to look at the way she
 6   had signed.  And she saw that, and she's like,
 7   "Ma'am, definitely I signed differently.  I'll be
 8   more careful next time."
 9              But I do talk to them.  We review the
10   letters, and most of the time, they're happy
11   with -- they're okay with the outcome.  It doesn't
12   happen much.  I think maybe twice that I've had
13   two individuals come in.
14   Q      Okay.  And does McAllen -- the City of
15   McAllen provide any recourse for those individuals
16   to prove that it was them that signed it or
17   anything like that that would allow their ballot
18   to actually be counted?
19              MR. TAWIL:  Objection; form.
20              THE WITNESS:  No.  Like I said,
21       those -- and it was two.  They were okay.
22       So they didn't have to do anything.
23   BY MR. COX:
24   Q      Okay.  And did you ever get a complaint
25   from Rosalie Weisfeld about that issue?
```

**hg**

RICHARDSON: PERLA LARA - 30(B)(6)

Page 63

```
 1    A      I didn't.  Not personally.
 2    Q      Okay.  Someone in your office did?
 3    A      No.  I'm just saying I don't.  I don't
 4   know if somebody in my office did, but I know that
 5   I didn't.
 6    Q      Okay.  And you don't know whether or not
 7   anyone else in your office did?
 8                MR. TAWIL:  Objection.  Again, what
 9         topic is this?  Specifically who received
10         a specific complaint?
11                MR. COX:  It's about whether the
12         City of McAllen's city secretary office
13         received a complaint from the plaintiff in
14         this case.
15                MR. TAWIL:  Okay.  And that's not
16         on the list of topics that you wanted to
17         depose Ms. Lara on -- or the
18         representative on today.  That was a
19         question you could have asked Ms. Lara
20         this morning.
21                Perla, if you know the answer to
22         the question, you can answer it.
23                THE WITNESS:  No.
24                MR. TAWIL:  I think he wants to
25         know if you know if anybody in your office
```

hg

Page 64

1          ever received a complaint from Rosalie
2          Weisfeld, the plaintiff in this lawsuit.
3                    THE WITNESS:  No, not that I'm
4          aware.
5     BY MR. COX:
6      Q      Okay.  Thank you.
7                    So I've got just one more little
8      question, and then I think we'll -- we can take a
9      break and hopefully wrap up right after that.  But
10     let's...
11                   So many elections departments are
12     making accommodations for potential increase --
13     I'll just represent to you that this is
14     true -- potential increases in mail-in ballots
15     because of the current pandemic.
16                   My question is:  Since you don't have
17     an election this year, are -- is this something
18     that you -- that your office has considered in
19     relation to the City of McAllen elections, or is
20     it something that you're planning to wait and see
21     or consider at another time?
22      A      Correct.  I'm going to consider that at
23     another time.  I still don't know if we're -- if
24     the SOS is going to have a training this year, but
25     those are some of the questions that I'm sure

Page 65

1   myself and other city secretaries will be hosting

2   as well.

3   **Q      And just one more time, because I can't**

4   **remember if you actually told me, when is the next**

5   **City of McAllen election?**

6   A      May of 2021.

7   **Q      Okay.  Great.**

8              MR. COX:  All right.  You-all, if

9        we could just take, like, a -- like, a

10       ten-minute break, and then -- and then

11       we'll come back and see if we can wrap up.

12             MR. TAWIL:  Sounds good.

13             MR. COX:  Okay?

14             THE WITNESS:  Okay.

15             THE VIDEOGRAPHER:  We're going

16       off --

17             MR. COX:  We can go off the record.

18             THE VIDEOGRAPHER:  -- the record.

19       The time is 3:00 p.m.

20          (Recess from 3:00 p.m. to 3:11 p.m.)

21             THE VIDEOGRAPHER:  We are back on

22       the record.  The time is 3:11 p.m.

23   BY MR. COX:

24   **Q      Hi, Ms. Lara.  Thank you for your patience**

25   **all day today.  I just have one more thing that**

hg

RICHARDSON: PERLA LARA - 30(B)(6)

Page 66

1   I -- that I think I missed, and it has to do with

2   the forms that your office uses.

3              Do you -- does your office make any of

4   its own forms related to mail-in ballots, carrier

5   envelope, ballots, anything like that?

6   A       No.

7   Q       And so you use exclusively the forms

8   provided by the Secretary of State?

9   A       Most of them are the forms provided by the

10  Secretary of State.  When we order, like, the

11  envelopes that we mail out, that comes from either

12  Hart or -- I think it's Capital Graphics.  And

13  that's -- those are -- it's printed material, but

14  I believe that the -- you know, they're approved.

15  Q       Okay.

16  A       The forms.

17  Q       And you mentioned, I think, an example of

18  this earlier, but if the Secretary of State

19  updates a form, how do you go about switching to

20  new forms?

21  A       Once they update, we download and we

22  distribute, just like the previous example that I

23  mentioned that it was after the fact that early

24  voting had started.  We printed everything, sent a

25  runner out to the various polling places, took

**hg**

Page 67

1   everything out of the -- the old forms from their

2   accordions, and gave them the updated ones.  And

3   most of the time, it's just, you know, something

4   small, the changes or what have you, but we like

5   to have the most current forms at all times --

6   **Q     And in that specific example, do you**

7   **remember which form was updated?**

8   A     I don't remember.  It was a couple of

9   forms that changed, and it was right after a

10  training.  And so we came back, and those were the

11  forms that we had downloaded, and then they sent

12  out that email.  It was, like, I don't know, four

13  or five attachments.

14  **Q     Okay.  And then the last question is:  How**

15  **long did it take you to really notice that there**

16  **was a new updated form and then get everything**

17  **switched out?**

18  A     As soon as I got the email.

19  **Q     So how long until all the forms were**

20  **switched out at the polling places and everywhere**

21  **else?**

22  A     Oh, immediately, that same day.

23  **Q     Okay.**

24  A     I got a runner that goes from polling

25  place to polling place.  That's what he does.



RICHARDSON: PERLA LARA - 30(B)(6)

Page 68

1    Q     Great.  That is all I have.  I want to

2  thank you again for your patience with me.  I know

3  that this is not a super fun thing to do, so thank

4  you for that.

5              MR. COX:  And I'll pass the

6        witness.

7              MR. TAWIL:  This is Isaac Tawil

8        appearing as attorney for Perla Lara,

9        representative of the City of McAllen in

10       this deposition, and we'll reserve any

11       questions we have for the time of trial.

12             MR. MAGEE:  This is Eric Magee.

13       I'll reserve any questions.

14             MS. MACKIN:  This is Anna Mackin.

15       I'll reserve any questions.

16             MR. COX:  Okay.  Thanks, you-all.

17       I think we're ready to go off the record

18       then.  Thank you-all.

19             THE VIDEOGRAPHER:  Okay.  This

20       concludes the video deposition.  The time

21       is 3:15 p.m.  We are now off the record.

22          (The following proceedings were had off

23           the video record:)

24             MR. TAWIL:  I'm not sure anybody

25       asked earlier, but we'll read and sign on

Page 69

1    both.

2          (Off the record at 3:15 p.m.)

3                  *  *  *  *  *

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

RICHARDSON: PERLA LARA - 30(B)(6)

Page 70

|  | CHANGES AND SIGNATURE | |
|---|---|---|
| 1 | | |
| 2 PAGE/LINE | CHANGE | REASON |
| 3 60/19 | "--" to "county" | witness said county; zoom issue |
| 4 | | |
| 5 47/14 | "--" to "memo" | zoom issue |
| 6 | | |
| 7 42/7 | "the -- it's through" - "the advisories | |
| 8 | it's through email" | zoom |
| 9 | | |

RICHARDSON: PERLA LARA - 30(B)(6)

Page 71

1      I, PERLA LARA, have read the foregoing

2   deposition and hereby affix my signature that same

3   is true and correct, except as noted above.

4                            _____
                             PERLA LARA

5

6

7   THE STATE OF   Texas      )

8   COUNTY OF   Hidalgo       )

9      BEFORE ME,   Alma Villarreal      , on

10  this day personally appeared PERLA LARA, known to

11  me (or proved to me under oath of

12  _____ or through

13  _____) (description of

14  identity card or other document) to be the person

15  whose name is subscribed to the foregoing

16  instrument and acknowledged to me that they

17  executed the same for the purposes and

18  consideration therein expressed.

19      Given under my hand and seal of office this

20  11th day of   June      , 2020.

21

22

23   ALMA VILLARREAL          _____
     Notary Public            NOTARY PUBLIC IN AND FOR
24   STATE OF TEXAS           THE STATE OF   Texas
     Notary ID# 12474934-4    MY COMMISSION EXPIRES:
25   My Comm. Exp. 11-17-2023  ___11/17/2023_____



RICHARDSON: PERLA LARA - 30(B)(6)

Page 72

```
 1                    UNITED STATES DISTRICT COURT
                       WESTERN DISTRICT OF TEXAS
 2                        SAN ANTONIO DIVISION

 3   DR. GEORGE RICHARDSON;           )
     ROSALIE WEISFELD; AUSTIN JUSTICE )
 4   COALITION; COALITION OF TEXANS   )
     WITH DISABILITIES; MOVE TEXAS    )
 5   CIVIC FUND; LEAGUE OF WOMEN      )
     VOTERS OF TEXAS; and AMERICAN GI )
 6   FORUM OF TEXAS, INC.,            )
                                      )
 7             Plaintiffs,            )
     v.                               )Civil Case No.
 8                                    )5:19-cv-00963-OLG
     TEXAS SECRETARY OF STATE; TRUDY  )
 9   HANCOCK, in her official         )
     capacity as BRAZOS COUNTY        )
10   ELECTIONS ADMINISTRATOR; and     )
     PERLA LARA, in her official      )
11   capacity as CITY OF McALLEN,     )
     TEXAS, SECRETARY,                )
12                                    )
               Defendants.            )
13

14                   REPORTER'S CERTIFICATION
                REMOTE VIDEOTAPED DEPOSITION OF
15                         PERLA LARA
                         May 14, 2020
16

17           I, Rebecca A. Graziano, Certified Shorthand

18      Reporter in and for the State of Texas, hereby

19      certify to the following:

20             That the witness, PERLA LARA, was duly sworn

21      and that the transcript of the oral deposition is

22      a true record of the testimony given by the

23      witness;

24             I further certify that pursuant to FRCP Rule

25      30(f)(1) that the signature of the deponent:
```

**hg**

```
1          ____ was requested by the deponent or a

2     party before the completion of the deposition and

3     returned within 30 days from date of receipt of

4     the transcript.  If returned, the attached Changes

5     and Signature Page contains any changes and the

6     reasons therefor.

7          ____ was not requested by the deponent or a

8     party before the completion of the deposition.

9          I further certify that I am neither attorney

10    nor counsel for, related to, nor employed by any

11    of the parties to the action in which this

12    testimony was taken.

13         Further, I am not a relative or employee of

14    any attorney of record in this cause, nor do I

15    have a financial interest in the action.

16         Subscribed and sworn to on this ___ day of

17    _____, 2020.

18

19

20

21    _____
      Rebecca A. Graziano, CSR, RPR, CRR
22    Texas CSR No. 9306
      Expiration Date:  07/31/22
23

24

25
```

**0**

**000477** 4:12
**000741** 4:15
**01** 50:7

**1**

**1** 4:7 9:3,4 10:12 18:8 23:2 44:13, 21
**10019** 2:12
**10th** 31:20
**11** 10:25
**12th** 2:23
**14** 1:15,20
**1405** 2:6
**14th** 5:4
**15** 29:5
**15th** 2:18
**16** 28:24 29:25
**18** 4:12 31:9
**1:41** 1:20 5:2,5

**2**

**2** 4:8 18:4,5,11 19:7 23:3 29:24,25
**2019** 19:4
**2020** 1:15,20 4:11,13 5:5 18:14,25 22:18 50:5,11
**2020-07** 50:6
**2021** 50:17 65:6
**212 728-8000** 2:13

**3**

**3** 4:13 22:15 23:9 44:24 46:21,22
**30(b)(6)** 1:14,16
**300** 2:18
**3:00** 11:24,25 65:19,20

**3:11** 65:20,22
**3:15** 1:20 68:21 69:2

**4**

**46** 4:15

**5**

**5** 10:12 19:8
**512 463-2100** 2:19
**512 474-5073** 2:7
**512 482-0701** 2:24
**5:19-cv-00963-olg** 5:7

**6**

**6** 4:3

**7**

**7** 9:20 22:12
**741** 47:8
**78501** 3:7
**787** 2:12
**78701** 2:18,24
**78741** 2:6

**8**

**87.127** 52:21

**9**

**9** 4:7
**956 681-3111** 3:7

**A**

**ability** 33:17
**above-styled** 1:19
**absolute** 57:22 58:13,15

**accept** 24:7
**accepted** 20:3 54:16 55:4 56:12, 23 57:4,23 58:14,19 61:5
**accommodations** 64:12
**accordance** 39:14
**accordions** 67:2
**ACM** 43:10
**act** 39:14
**action** 5:6
**actual** 16:10 19:24 20:18 51:4
**ad** 59:5
**add** 60:14
**additional** 27:23 35:13 56:20
**additionally** 12:25
**Adkins** 40:21
**administer** 17:1,3 22:1
**administering** 59:25
**administers** 45:13
**administrator** 1:10 2:21 6:14 39:13 55:19 61:1
**advice** 16:5 41:10
**advise** 16:17
**advised** 42:17
**advisories** 13:5,6 38:22 39:15,24 40:19 44:3 46:3,14 50:1,5,19
**advisory** 4:13 38:24 39:17 40:3,12 41:8 42:2,16 48:1,20 50:12,22 52:12 54:23
**affected** 51:8
**affiliation** 21:24
**affirm** 20:2 22:9
**agree** 7:17
**ahead** 7:20 8:25 33:5
**ALLISON** 2:23
**allowed** 55:17,21
**alternate** 12:17 13:13 17:4 40:24
**AMERICAN** 1:5
**Anna** 2:17 6:16 68:14



**anna.mackin@texasattorneygeneral.gov** 2:19

**annual** 60:12

**answering** 36:23,24

**answers** 37:5

**ANTONIO** 1:2

**anymore** 34:17

**apologize** 7:1,4

**appearance** 24:8,12

**appearing** 68:8

**applic-** 15:4

**applicant** 30:6

**application** 29:20 30:6

**applications** 15:3

**applied** 60:12

**applies** 26:11 54:7

**apply** 46:6

**approved** 66:14

**arise** 15:23 16:16

**arrive** 14:9

**ascertaining** 29:18

**asks** 52:5

**assign** 59:8

**assigned** 59:4

**assist** 17:19

**assistance** 15:25

**assistant** 38:8

**associate** 17:22

**assume** 40:10

**astevenson@mcallen.net** 3:8

**attached** 48:7

**attachment** 47:25

**attachments** 67:13

**attempts** 32:3

**attention** 23:8 49:8 52:11

**attorney** 2:17 6:17 38:9 42:12 49:12 68:8

**ATTORNEY'S** 3:6

**attorney-client** 59:10

**attorneys** 8:10,12 38:8 42:14

**Austin** 1:3 2:6,18,24 3:5 5:13 6:7

**authority** 55:6

**automatic** 47:16

**Avenue** 2:12 3:6

**aware** 30:12,20 31:1 38:17,20 46:1 64:4

---

**B**

---

**back** 7:1 15:12,17 17:5 33:6 35:20 36:13 37:1 38:7 48:10 49:25 50:4 56:17,19 58:14 61:10,12,15 65:11, 21 67:10

**bags** 15:11

**ballot** 4:8 12:2,12,13 13:10,18 14:9 15:19 16:10,13,25 20:13 21:16 23:17,22 24:1,21 25:10 26:12 27:22 31:17,19 32:8,9,10 48:14 51:25 53:22 55:3,5 56:11,15 57:20, 23 58:13,19 60:12,14 61:5,20 62:17

**ballots** 14:11,17,19 15:3,4,15,16, 23 20:4 23:3 24:7 25:17 32:5 34:22 35:6 38:13,14 47:22,23 51:8 53:16 56:14 61:3,4 64:14 66:4,5

**based** 24:19 54:1

**basically** 12:15 15:1 23:2 29:18 36:8 50:10 60:18

**basis** 59:6

**BASS** 2:23

**Bates** 4:11,14

**Bates-stamped** 47:8

**Becky** 5:16

**beginning** 37:18

**behalf** 5:22,25 6:1,4,8,11,13,18 8:22 56:10

**beliefs** 26:23

**big** 51:6

**bit** 7:2 8:19 18:18 19:15 32:6 34:8 35:22 49:15 59:16,19

**board** 4:8 12:2,13 13:10,12,18 14:9 15:20,24 16:10,13,25 17:23 20:13 23:13,14,17,22 24:1,6,21 25:10,22 26:3,6,12,13 27:22 31:2, 17 32:10 51:25 55:5 56:15 57:11, 22

**bold** 51:6

**book** 55:25

**booklet** 20:18

**books** 12:23,24

**bottom** 9:20 31:12

**Brazos** 1:9 2:21 6:13

**break** 64:9 65:10

**breaking** 24:25 25:4

**bring** 11:3,7 15:9,12

**Bruce** 3:11

**buildings** 49:14

**bullet** 26:2

---

**C**

---

**C-O-X** 5:21

**cabinets** 14:16

**call** 9:3 16:7,11,17 17:13 35:5 41:18

**calling** 37:17,18

**calls** 16:9 52:5

**candidate** 21:17

**canvass** 55:6

**canvassing** 55:6

**capacities** 26:23

**capacity** 1:9,11 2:21 3:3 6:9,15,19 27:12

**Capital** 66:12

**careful** 62:8

**carrier** 29:21 30:7 66:4

**case** 1:7 11:7 49:19 63:14

**case-by-case** 59:5

**certainty** 58:13,16



**certificates** 60:10

**certified** 41:23

**chance** 7:6

**change** 35:21 40:16 41:5 43:7,18, 23

**changed** 20:25 22:25 23:1,4,6 38:5 40:23 67:9

**changing** 59:16

**charge** 23:21

**check** 30:3,4 36:21 59:21

**Christina** 37:18 40:21

**cited** 54:4

**cites** 52:21

**cities** 21:9

**city** 1:11 2:12 3:3,6 5:10 6:9 8:1,2, 21 11:15,18 12:11 13:20,22 14:1 21:2,3,6,7 23:25 24:12,20 25:8 26:25 27:5,13 28:22 32:23 35:24 36:10 38:8 42:12 43:15,20 49:12 50:2 55:19 57:6 58:16,24 59:3 60:5 61:2,4 62:14 63:12 64:19 65:1,5 68:9

**city's** 8:22 45:12,19

**CIVIC** 1:5

**civil** 1:24 2:5 5:6,12,21,24

**clear** 18:7

**clerk** 17:4 55:19

**clerks** 4:11 12:17 13:14 36:10

**close** 49:8

**COALITION** 1:4

**code** 12:23 20:5 44:22 52:21,23 53:7 54:3 55:25

**commission** 25:21 43:15,20

**commissioners** 21:7

**committee** 4:9 13:11 26:3,6 29:7, 12 30:15 31:3

**communications** 37:11

**compare** 26:7,14 29:21 30:16

**compensation** 20:23 43:17

**complaint** 61:22 62:24 63:10,13

64:1

**complete** 54:23

**completeness** 54:14

**compliance** 44:22

**comply** 31:23

**concerns** 62:2

**concludes** 68:20

**conference** 13:23 14:1,18 15:21

**confirm** 30:7

**confusing** 7:2

**conscious** 40:11

**consequences** 44:5 46:6

**considered** 64:18

**consult** 41:7

**contact** 61:25

**contacts** 61:19

**content** 41:8

**contents** 50:21

**continue** 40:17

**convene** 14:9 43:2

**convening** 23:17 55:6

**conversations** 38:12

**coordinate** 28:11

**coordination** 60:23

**copies** 28:14 57:16 61:12

**copy** 12:24 18:25 61:16

**correct** 11:9,11 16:20 17:23 18:19, 20 23:22,23 24:2,3 29:13,14 31:6 33:4 39:20,23 48:21 49:3 50:14,24 51:10,19 55:14 56:8,16 59:1,23,24 64:22

**correctly** 20:7

**costs** 35:14

**counsel** 5:12,18 36:13,21 37:2 59:8

**counted** 20:4 62:18

**county** 1:9 2:21 6:13 16:12 17:16 28:12,19 37:6 49:10 53:21,24 54:8 55:2,7,11 59:18,21 60:1,13,22,25

**couple** 38:21 55:23 59:15 67:8

**court** 1:1 5:15 33:25 55:8,9 56:10 57:8 58:18

**courtesy** 60:17

**Cox** 2:4 4:3 5:20 6:24 9:5 18:6 25:2,15 26:21 27:4,9 28:9 30:19,25 31:7 32:1,22 33:21 34:6,19 35:12, 18 37:7 39:21 40:8 41:20 43:1,24 44:9,12,21 45:11,18,22,23 46:19, 24 50:9,25 52:8 53:1,5,11 54:18,24 55:1,15 56:3 57:18 58:6,10,11 59:12,13 62:23 63:11 64:5 65:8,13, 17,23 68:5,16

**crosstalk** 44:16 46:8

**CRR** 1:22

**CSR** 1:21

**curing** 61:15

**curious** 22:18

**current** 8:1 64:15 67:5

---

**D**

**day** 16:11 24:2,12,18 25:12 31:20 32:11,23 33:2 35:11 51:17 65:25 67:22

**days** 24:14,22 33:1 48:12

**deadline** 32:4

**decided** 58:17

**deciding** 43:4

**decision** 40:12

**decisions** 43:6

**defendant** 2:15,20 3:3 6:8

**Defendants** 1:12

**defer** 38:7

**deliver** 14:11 31:18

**Democrat** 21:17

**department** 58:23,24 59:3,9

**departments** 64:11

**depending** 51:15 58:20

**deponent** 5:9 58:8

**depose** 63:17



**deposing** 27:3

**deposition** 1:14,16 4:7 5:11 8:4, 18 9:14,23 10:2 11:4,5,8 18:7,19 26:25 68:10,20

**depositions** 7:3

**deputy** 17:18 42:10 60:8

**describe** 12:11 14:24 42:1

**DESCRIPTION** 4:6

**designate** 13:23

**designated** 8:20

**determination** 57:5

**determine** 56:21 57:2

**determines** 53:22 55:3,9

**determining** 23:21

**differently** 62:7

**direct** 36:12 41:18

**direction** 36:11 37:3

**directly** 7:7

**DISABILITIES** 1:4

**disagreed** 40:4

**discussed** 7:9,13,15 12:3 23:20 28:18 50:21

**discusses** 23:16 57:2

**discussing** 35:4

**discussion** 10:1

**discussions** 38:19

**disregard** 41:2

**disseminates** 42:13

**distribute** 66:22

**district** 1:1 55:7

**DIVISION** 1:2

**doctrine** 54:14

**document** 9:9,15 10:6 18:11,13 19:7 22:12 28:25 30:9 31:3,8 34:24 57:1

**documents** 8:6,13,14 11:4,6,8 29:22,23

**Dolling** 2:5

**download** 12:22 33:13 66:21

**downloaded** 67:11

**Drive** 2:6

**duly** 1:18 6:20,22

**duties** 14:25 44:12,23

---

### E

**e.magee@allison-bass.com** 2:25

**earlier** 18:7,18 23:20,24 32:3 51:15 66:18 68:25

**early** 4:8 11:23 12:2,12 13:10,17 14:9 15:7,8,19 16:25 23:17,21 24:1,7,10,11,21 25:10 26:11 27:21 31:17 32:10 39:6,10 44:23 48:13 49:10 51:25 55:4,18 56:15 66:23

**Easily** 44:21

**elaborate** 21:4

**election** 4:10,13 12:23 13:18,22 16:11 19:3 20:5 24:2,12,17 25:12 31:20 32:7,11,21 33:2 34:20,21,23 37:15 38:24 39:7,8,15 40:3,12 41:16 42:8,16 44:22 48:1,20 49:3, 7,18,25 50:13,22 52:3,21,23 53:7, 21,24 54:3,8 55:3,7,11,19,25 58:1, 18 60:21 61:2 64:17 65:5

**election.net** 42:8

**elections** 1:10 2:21 6:14 7:11 21:3,6,23 24:13 26:14 32:24 36:5 37:16 38:22 39:13 41:8 42:2,9,19, 25 45:13 47:12 60:1 61:1,4 64:11, 19

**electronic** 39:3,4

**electronically** 34:15,18 35:10

**eligible** 20:3

**email** 4:14 34:1 35:5 39:4 40:20,22 42:7 47:9,18,20 67:12,18

**emails** 36:14,24 41:1

**employees** 11:19

**end** 17:18 24:7,11,16 32:17

**entire** 54:15

**entities** 28:11

**entity** 27:2

**envelope** 29:21 30:7 66:5

**envelopes** 66:11

**equip** 13:6

**equipment** 17:11 37:20,22 41:16, 23

**Eric** 2:22 6:12 68:12

**Erratt** 3:11

**error** 58:15 61:21

**estimate** 35:1 37:10,14

**et al** 5:8

**EVB-** 14:25

**EVBB** 14:22,25 19:17 29:12 30:14 31:2 56:18 57:12 58:15

**EVC** 13:18

**event** 16:6 17:14

**evidence** 52:5

**EXAMINATION** 4:3 6:23

**excellent** 37:4

**Exceptions** 29:3

**exclusively** 66:7

**excuse** 42:18

**executed** 30:8

**exhibit** 4:7,8,13 9:1,3,4 18:4,5,8, 11 46:21,22

**EXHIBITS** 4:5

**explains** 30:14

**express** 62:1

**extend** 60:17

**extended** 39:10 49:13

**extending** 39:6 48:13 49:9

---

### F

**facilities** 49:11

**fact** 40:23 57:20,22,24 62:3 66:23

**facts** 52:5,6

**fairly** 11:22



**familiar** 22:14 29:2,9 52:22 54:2 55:22,23 56:1

**Farr** 2:11 6:3,6

**faster** 51:21

**fax** 34:16,18

**feasible** 41:10

**February** 4:13 48:10,15 50:11

**Federal** 1:23

**feel** 10:20

**figure** 16:1,3

**file** 26:9

**files** 57:16

**find** 21:10

**fine** 59:12

**finish** 32:15,17 33:6

**firm** 6:3,6

**fit** 42:24

**Flanagan** 3:13 5:14

**floor** 3:6 14:7

**follow** 7:18 39:17 40:15,17 44:6 46:3,16

**forget** 17:15,19 38:3

**form** 19:19 20:16,23 24:24 25:13 28:4 30:18,23 31:5,24 32:13 33:14, 18 34:4,12 35:8,16 36:7,16 38:5 39:19 40:7 41:12 42:22 43:8 44:7 46:16 48:6,8 49:22 50:23 52:4,24 53:3,8 55:13,20 57:9,14 59:7 62:19 66:19 67:7,16

**forms** 40:22 41:2,3 48:7 50:17 66:2,4,7,9,16,20 67:1,5,9,11,19

**FORUM** 1:6

**forward** 42:10,11,15 48:23

**forwarded** 49:20

**found** 39:9

**four-day** 25:11

**frankly** 25:24

**front** 19:20

**full** 7:21

**fun** 68:3

**FUND** 1:5

## G

**Gallagher** 2:11 6:3,6

**gave** 34:10 67:2

**general** 2:17 29:17 34:21

**General's** 6:17

**generally** 12:9,10,14 29:16 36:6 48:23 51:16

**George** 1:3 5:8

**GI** 1:5

**give** 12:20,22,24 13:1 14:17 16:4, 23 19:19 35:5 37:9,13 57:14

**giving** 19:17 36:18

**good** 10:23 36:23 65:12

**Graphics** 66:12

**Graziano** 1:21 5:16

**Great** 13:15 37:8 38:10 41:24 65:7 68:1

**ground** 7:18

**guess** 22:16 33:17 45:21 48:23 50:20 51:3

**guidance** 13:2 36:11 37:21 40:1 46:17 54:1,7

**guide** 17:14

**guidelines** 7:13

## H

**halfway** 9:10

**hall** 13:20 14:1

**Hancock** 1:9 2:20 6:13

**hand** 14:11

**handbook** 4:10 18:14,17 22:12,18 30:13,21 35:19

**handbooks** 12:20,21

**handed** 14:20

**handful** 35:2 37:25

**handled** 42:3 61:23

**handling** 61:22

**Hani** 2:4 5:23

**hani@texascivilrightsproject. org** 2:7

**happen** 32:24 34:2 62:12

**happened** 48:11,16 57:22

**happy** 10:7 62:10

**Hart** 66:12

**head** 11:24 52:22

**header** 9:22

**heads** 59:9

**hear** 25:3

**heart** 54:5

**helps** 59:21

**HG** 5:17

**Hidalgo** 28:12,19 59:17,21 60:25

**hoc** 59:5

**home** 11:23,24

**hoping** 11:23 36:1

**hosting** 65:1

**Houston** 3:6

**hypothetical** 35:3 56:25

**hypothetically** 33:25

## I

**identify** 5:18 10:19

**ignore** 40:12

**immediately** 67:22

**implement** 34:9 42:5 43:5 57:25 58:21

**implementing** 35:14 42:20

**implements** 45:13

**impose** 44:18 45:5,7,17

**imposed** 45:25

**improperly** 54:17 57:21,23

**include** 11:16



**including** 12:12 44:25

**incorrect** 40:5

**incorrectly** 53:22 55:4 56:11,23 57:3

**increase** 43:16 64:12

**increases** 64:14

**INDEX** 4:1

**individual** 13:1 58:8

**individuals** 62:13,15

**information** 12:18,19,21 14:17,19 15:10 16:5,22 34:2 35:6 61:2

**initiate** 57:7

**injunctive** 54:10 55:8

**inquired** 26:17

**insert** 54:13

**instance** 1:17

**instructed** 41:22

**instruction** 15:24 30:4

**instructions** 30:21

**integrity** 58:1,18

**intentional** 54:22

**interactions** 36:2,5

**internal** 43:21

**internet** 13:4 47:13

**involve** 43:3,14

**involved** 38:13 43:4

**Isaac** 3:5 6:10 44:9 68:7

**issue** 60:9 62:25

**issued** 38:22

**issues** 41:9 58:9

**itawil@mcallen.net** 3:8

---

**J**

**Joanna** 2:11 6:5

**jsuriani@willkie.com** 2:14

**judge** 13:13 14:20,22 17:3,4,21,22, 25 18:1,2 19:17 31:17 56:18

**judge's** 12:21

**judges** 4:10 12:17 16:10 20:13 40:24,25

**JUSTICE** 1:3

---

**K**

**Kalar** 2:10 6:1,2

**kind** 7:3,9,12 12:5,8 14:19 34:8 35:21,22 36:2,5 37:10 38:18 41:25 56:7 57:25 59:5

**knew** 57:20,22,24

**knowledge** 11:14,17,18 45:12

---

**L**

**L-A-R-A** 7:23

**Lara** 1:10,14,17 3:3 5:11 6:8,11,21, 25 7:23 27:10 52:9 58:12 63:17,19 65:24 68:8

**Lara's** 26:22

**late** 23:3 32:18

**law** 6:3,6

**lawsuit** 64:2

**LEAGUE** 1:5

**leave** 25:24

**legal** 36:13,21 58:23,24 59:2

**letter** 33:12

**letters** 32:3,11 33:2 52:2 62:10

**letting** 49:14

**limited** 44:25

**link** 9:2

**list** 47:17 63:16

**listed** 10:6,16

**Litigation** 5:17

**lives** 60:11

**LLP** 2:11,23

**local** 42:25

**lock** 15:11

**logistics** 8:16

**long** 35:7,10,11 67:15,19

**longer** 32:6 49:15

**looked** 8:13 22:2

**lot** 7:10 12:1 13:6 23:7 34:16 37:5, 19 47:10 48:15

**lower-level** 43:6

**lunch** 13:17

---

**M**

**machine** 1:23 17:12,16

**Mackin** 2:17 6:16 68:14

**made** 26:8 40:11 61:16

**Magee** 2:22,23 6:12 68:12

**mail** 15:4 23:3 33:15,20,23 38:14 47:22 51:18,21 57:16 60:12 66:11

**mail-in** 12:12 38:13,14 60:14 61:5 64:14 66:4

**mailed** 33:3

**mailing** 51:7

**make** 7:5 8:7 16:9 27:16 29:22 32:2 42:17,18,24 43:5,12 46:9 49:1 57:5,15 61:12 66:3

**makes** 13:3

**making** 64:12

**man** 44:10

**management** 25:20 43:14,19 49:12

**manager** 43:3

**mark** 18:4

**marked** 9:4 18:5,8,22

**material** 11:22 66:13

**materials** 14:14 16:2

**matter** 5:7 59:9 62:3

**Maygun** 3:13 5:14

**mayor** 21:7,15 43:19

**Mcallen** 1:11 3:3,6,7 5:10 6:9 7:11 8:1,2,21 11:15 12:11 21:2,11 24:12,20 25:9 27:1,13 32:24 35:24



42:19 58:25 59:3 60:12 62:14,15
64:19 65:5 68:9

**Mcallen's** 26:11 27:5,14 63:12

**means** 27:7,15 33:11,17 34:11

**meant** 56:1

**meet** 8:15 13:19 24:6,21 25:11,22
43:11

**meeting** 8:9 15:20 49:1

**meets** 23:22 32:10

**member** 14:25

**members** 13:11,12 15:24 16:24
17:23 29:12 30:14 31:2,3

**memo** 48:6 51:4

**Memos** 38:25

**mentioned** 16:24 38:21 41:25
43:25 48:19 66:17,23

**met** 24:1 25:16 26:15 28:7 51:25

**microphone** 25:7

**middle** 51:5

**minute** 10:11 48:5,19

**Mirza** 2:4 5:23

**mischaracterization** 16:15

**mishaps** 17:12

**misrepresentation** 54:22

**missed** 38:6 66:1

**missing** 12:5

**misstating** 48:22

**mistake** 60:16

**moment** 11:6

**Monday** 32:16,20 33:1,7 51:17
52:2

**Montopolis** 2:6

**morning** 7:10,13,15 12:3 18:18
23:20,24 32:16,20 63:20

**MOVE** 1:4

---

### N

**needed** 37:20 48:24 49:1,21 50:3

---

**night** 32:7,15,19 33:5

**Note** 31:12

**Noted** 27:17

**Notes** 26:2

**notice** 4:7 7:7 9:14 18:8 31:18
33:9,11,14 34:1,10 36:16 47:22
56:17,18 62:2,5 67:15

**notices** 51:7,21,25

**notify** 33:17

**number** 4:6 5:6 16:6 19:8 22:15
23:2,3,9 29:24,25 34:1 44:13,21,24
61:5

**numbered** 1:19

---

### O

**oath** 14:15 16:25 17:2,22,25 19:8,
16,24 20:9,12,22 21:22,25

**object** 54:12

**objection** 24:24 25:13 28:4 30:18,
23 31:5,24 32:13 33:18 34:4,12
35:8,16 36:7 39:19 40:7 41:12
42:22 43:8 44:7 46:10 49:22 50:23
52:4,24 53:3,8 55:13,20 57:9 59:7
62:19 63:8

**objectively** 20:2

**obligated** 39:14

**obligations** 15:5

**occur** 30:22

**office** 2:17 3:6 6:17 13:22 14:10,15
17:1 19:25 31:22 32:2 33:3,10,16
34:3 35:14 36:3 38:17,18 40:4,13
42:3,4 46:4,5 47:7 48:24 49:21
50:22 51:7,12 56:19 58:17,21 59:4
60:2 61:19,25 62:1 63:2,4,7,12,25
64:18 66:2,3

**officer** 53:22,24 55:3,7,11

**officers** 54:8

**offices** 13:21

**official** 1:9,10 2:21 3:3 6:9,14,19

**omit** 54:16

**one's** 21:22

---

**open** 9:7 17:12 18:11

**Opened** 9:8

**operates** 7:11 12:13

**opinion** 51:22 56:22 57:11

**opposed** 16:18

**option** 28:19,20

**optional** 54:14

**order** 12:20,23 66:10

**ordered** 33:25

**ourself** 60:24

**outcome** 62:11

---

### P

**p.m.** 1:20 5:2,5 65:19,20,22 68:21
69:2

**paid** 49:8

**pandemic** 64:15

**paragraph** 23:9 24:5 31:13 51:6
52:20

**part** 14:6 17:10 23:2

**partisan** 21:2

**party** 21:8,9,24

**pass** 68:5

**past** 20:14

**patience** 65:24 68:2

**payroll** 43:13

**penalties** 44:19 45:5,7,17

**people** 47:10 48:24 49:1,20 59:2,
21

**perform** 56:20

**period** 24:12 25:11,16,23 39:6
44:23 48:14 49:10 61:15

**Perla** 1:10,14,17 3:3 5:10 6:8,21
7:23 45:20 46:11 58:3 63:21 68:8

**Perla's** 58:8

**permitted** 25:10,17

**personal** 8:22 11:14,17 24:8,11
58:5,9



**personally** 63:1

**pertain** 44:20

**petition** 55:7

**petitioning** 53:13

**phone** 16:9 34:1 35:5 41:18

**phrase** 54:15

**physically** 13:19

**pick** 14:10,14

**pieces** 12:5

**place** 67:25

**places** 66:25 67:20

**plaintiff** 63:13 64:2

**plaintiffs** 1:7,18 2:3 5:22,25 6:2,5

**plaintiffs'** 5:12

**planned** 49:15

**planning** 64:20

**plays** 12:11

**point** 13:2 14:21 19:1 23:8 26:2

**policies** 44:24 61:21

**policy** 31:22 33:11 51:11 57:25

**political** 21:8,9

**polling** 66:25 67:20,24,25

**populate** 47:16

**position** 8:1

**potential** 64:12,14

**Powerpoint** 12:22

**practices** 44:24

**pre-** 8:7

**preceding** 26:8

**preparation** 11:5

**prepare** 8:3

**prepared** 8:7 10:5,15,20

**PRESENT** 3:10

**presentations** 12:22

**pretty** 23:6 37:25

**previous** 17:5 18:19 26:14 66:22

**primary** 18:16 39:12

**print** 15:10 50:7

**printed** 41:1 66:13,24

**prior** 9:25 20:20,22

**privilege** 59:10

**proactive** 37:4 40:25

**problem** 25:7

**procedure** 1:24 56:7,9

**procedures** 44:25 61:21

**proceeded** 41:19

**proceedings** 5:1 68:22

**process** 12:12 15:2 41:15 57:7 58:22

**processes** 43:22 45:6,8 61:11

**proclamation** 48:13

**produced** 1:17 18:21 47:6

**Project** 2:5 5:13,21,24

**promptly** 51:13

**protect** 58:1,17

**prove** 62:16

**provide** 12:18 28:11,14 33:25 34:25 57:13 62:15

**provided** 23:12 24:6 61:7 66:8,9

**providing** 60:3

**provision** 24:20 30:11 52:23 53:6 55:18

**provisional** 15:15,16 23:4 32:5

**provisionals** 61:10,14

**provisions** 1:24

**publish** 60:22,24

**pull** 47:1

**purchasing** 37:20

**pursuant** 1:23

**put** 8:25 15:11

Q

**qualified** 32:9

**qualify** 15:2,22 24:6 25:18

**qualifying** 23:3 29:6 38:13

**question** 16:16,18 17:6 23:15 25:5 45:3,8,9,11,15,18,21,24 46:2,12 52:9 53:18 58:12 59:11 63:19,22 64:8,16 67:14

**questioning** 26:22

**questions** 13:2 15:23,25 17:9 26:24 36:24,25 37:11,25 38:11 58:4,7 59:16 64:25 68:11,13,15

**quicker** 37:5

**quickly** 11:23 35:21

**quotes** 19:8

R

**random** 13:25

**rates** 43:16

**reached** 41:7,14

**read** 9:25 10:11 20:7,10 21:21 22:7 31:15 50:12 51:9 52:16,17 54:15 68:25

**ready** 68:17

**reason** 12:4 31:18 33:10 49:8 57:5,15 61:1,6

**Rebecca** 1:21

**recall** 34:24

**received** 25:18 40:2 49:17 63:9,13 64:1

**receiving** 48:9

**recess** 65:20

**recognize** 9:9,12 18:13 47:3,11 51:14

**recognized** 20:12

**recommends** 51:7

**record** 1:25 5:2,4,19 7:1,12,21 42:11 65:17,18,22 68:17,21,23 69:2

**recourse** 62:15

**refer** 13:7

**refuse** 46:2



**refused** 44:5

**registrar** 26:9

**registration** 28:17

**rehash** 12:4

**reiterating** 7:12

**rejected** 20:6 32:9,10 34:23 35:7 47:23 51:7 53:16,23 54:16 55:4 56:11,14,23 57:3,21,23 58:14,19 61:3,20

**rejecting** 57:13,15

**rejection** 31:19 32:3 33:2,10 52:2 56:18

**relate** 44:8

**related** 7:10 26:24 36:4 61:3 66:4

**relates** 43:17 45:9,11 53:15

**relation** 64:19

**relationship** 35:24 59:17

**relevant** 48:23 58:7

**relief** 54:10 55:8

**remember** 7:14 47:13 48:9 65:4 67:7,8

**reminder** 53:21 55:2

**reminders** 47:22

**REMOTE** 1:14,16

**remotely** 1:21

**repeat** 25:5 45:24

**repeating** 7:4

**report** 14:13

**reported** 1:22

**reporter** 5:15

**represent** 64:13

**representative** 11:15 63:18 68:9

**representing** 2:3,15,20 3:3 5:17 27:13

**Republican** 21:18

**request** 26:13

**requested** 5:11 28:16 62:5

**required** 48:25

**reserve** 68:10,13,15

**resources** 13:3 34:9

**respect** 40:9 60:23

**responses** 12:6

**responsibilities** 44:13

**rest** 27:10 36:10 42:13

**restart** 44:2

**results** 15:11,12 60:21

**retention** 26:15 28:7

**review** 8:6 10:7,9 11:6 15:16 25:17 42:10 43:22 56:20 62:9

**reviewed** 11:4 62:4

**revised** 41:3

**Richardson** 1:3 5:8

**Rights** 2:5 5:12,21,24

**role** 12:11 26:11 27:6,15

**rolls** 28:13,17 59:22 60:4

**room** 13:23 14:1,12,18 15:21 16:2

**Rosalie** 1:3 62:25 64:1

**roster** 60:14

**rough** 35:1 37:9

**RPR** 1:21

**rule** 31:23

**rules** 1:23 7:18

**run** 21:8 42:19 51:18

**runner** 66:25 67:24

**running** 39:7

**runoff** 39:12

**Ryan** 2:4 5:20

**ryan@texascivilrightsproject. org** 2:8

---

**S**

**safe** 50:20

**Samuel** 2:10 6:2

**SAN** 1:2

**Saturday** 24:18 32:20

**Saturdays** 32:25

**save** 50:1 54:20

**Schedule** 10:25

**scroll** 9:18 10:24 19:6 22:11 26:1 28:24 29:4 31:9 51:3

**secretaries** 65:1

**secretary** 1:8,11 2:15 3:4 5:9,10 6:9,18 8:2 12:11,19 16:17 18:22 23:25 35:23,25 36:4 37:11 38:12, 23 40:3,13 41:6 42:3 44:18 45:4, 16,25 46:17 47:7 57:6 63:12 66:8, 10,18

**secretary's** 13:22 26:23 58:17

**section** 19:14 29:6,11,16,25 30:13 52:21 54:3

**sections** 55:24

**seek** 37:2 54:9

**send** 7:7 18:3 32:3 33:14 34:15 35:4 36:14 40:15 42:14 50:8 51:21, 24 52:1 60:13,15,18,21 61:10,12, 14,15

**sending** 33:8,9,11

**sense** 27:16

**sentence** 20:10 22:6,7 31:15

**separate** 7:3,7 21:22

**Services** 5:17

**set** 39:3 55:5

**Seventh** 2:12

**shorthand** 1:23

**show** 46:21

**showed** 62:4

**sig-** 30:3

**sign** 68:25

**signature** 4:9 29:7 30:14

**signatures** 26:7,8,14 27:23 28:1, 12,15 29:6,19 30:4,8,16,22 38:14 56:21 59:20

**signed** 29:23 30:9 56:17,18 62:6, 7,16

**similar** 20:15 23:6

simultaneous 44:16 46:8

single 10:16

single-member 21:14

sir 7:16 8:5

sites 15:8,9

situation 35:4 57:1

skalar@willkie.com 2:13

skip 12:1

small 67:4

sooner 52:1,2

SOS 13:3 16:6 50:2 64:24

SOS_000428 4:11 18:23

SOS_000447 28:25

SOS_000449 31:9

SOS_000737 4:14

SOS_000739 52:13

SOS_433 19:8

SOS_438 22:13

SOS_737 47:8

SOS_738 51:5

Sounds 65:12

sources 13:8 16:23

speak 39:16

specific 42:1,18 48:10 63:10 67:6

specifically 8:13 25:9 59:4 63:9

specifics 22:24

speculate 52:6

spell 7:22

spent 18:17

staff 14:16 42:11 43:12

start 7:11 12:8 33:4 50:7 58:2,21, 23

started 66:24

starting 18:23

starts 23:10 26:3 29:5

state 1:8,22 2:16 5:9 6:18 7:21 16:17 18:22 35:23,25 36:4 37:12

38:13,23 41:6 44:18 45:4,16,25 46:18 66:8,10,18

State's 12:19 40:3,13 42:3 47:7

stated 1:24 12:16 15:1

STATES 1:1

step-by-step 17:18

Stevenson 3:5 6:7

stick 27:1 58:6

Street 2:18,23

styles 30:22

subparts 10:12

suggestion 36:20

Sunday 51:18

super 68:3

supplies 14:14

supposed 19:9 30:15

Suriani 2:11 6:4,5

SVC 13:11 29:12 31:3

swear 20:1 22:9

switched 67:17,20

switching 66:19

sworn 1:18 6:20,22

system 39:4

---

**T**

takes 18:2

talk 7:6 35:22 53:7 58:2 62:1,9

talked 8:12 59:19

talking 13:10 18:18 27:12 48:4

talks 29:16 54:10

Tawil 3:5 6:10 24:24 25:13 26:21 28:4 30:18,23 31:5,24 32:13 33:18 34:4,12 35:8,16 36:7 39:19 40:7 41:12 42:22 43:8 44:7,11,14,17 45:2,15,20 46:9 49:22 50:23 52:4, 24 53:3,8 54:12,21 55:13,20 57:9 58:3 59:7 62:19 63:8,15,24 65:12 68:7,24

team 42:12 43:3 49:12 50:8

TEC 55:24

technicalities 38:1

TECHNICIAN 3:12

telling 8:11 49:9

ten-minute 65:10

tend 17:19 38:3

tendered 46:22

terms 45:5 60:20

testified 6:22 11:5 23:24 52:7 55:10

testify 8:8,21 10:5,15,20

testifying 11:12,14

testimony 51:15

TEXANS 1:4

Texas 1:1,4,5,6,8,11,22 2:5,6,15, 18,24 3:3,7 5:9,10,12,21,24 6:17 12:23 20:5 36:4 55:25

text 51:6

thing 12:15 13:16 21:21 60:7,17 61:9 65:25 68:3

things 7:4,10,14 11:16,17 12:2 21:18 28:13 31:2 38:1 39:22 59:22

thinking 12:5 13:16

thought 40:4 46:7 57:3

three- 25:11

time 5:5 8:14 14:3,22 15:17,23 18:18 19:1 24:7,10 25:23 37:15 38:2 39:4 40:21 41:14,17 51:2 54:20 55:5 62:8,10 64:21,23 65:3, 19,22 67:3 68:11,20

times 38:21 67:5

title 9:10 39:16

today 5:4,16 8:4,8 9:16 10:1,15,21 27:10 63:18 65:25

told 16:1 41:2 65:4

top 10:25 52:22

topic 10:19 29:17 35:22 44:8,19 45:10 59:16 63:9

topics 8:21 9:23 10:1,6,12,16 11:13 26:25 27:2 58:7 63:16



**train** 29:12 31:2

**train-** 60:7

**training** 12:16 64:24 67:10

**trainings** 13:1 40:24 60:8,9

**trial** 68:11

**Trudy** 1:8 2:20 6:13

**true** 64:14

**Tuesday** 24:17

**turn** 36:22 42:11 52:11 60:17

**turned** 41:1

**type** 54:9,10 61:22

---

### U

**Uh-huh** 17:24 20:24 53:17

**unclear** 27:7

**underneath** 29:24

**understand** 8:20,23 11:13 33:22 34:7 56:4

**understanding** 21:5 24:19 25:8 26:10,17 27:6,11,14 29:15 38:23 44:4 45:19 46:4,5 54:8 55:16,17

**Understood** 17:20

**UNITED** 1:1

**unlock** 14:16

**update** 50:17 66:21

**updated** 18:25 38:4 67:2,7,16

**updates** 22:21 38:25 66:19

**USBS** 15:13

---

### V

**validated** 37:22

**variances** 30:22

**verification** 4:9 29:7 30:15

**version** 19:1 22:22

**versus** 5:8

**video** 5:4,11 68:20,23

**videoconference** 2:4,5,10,11,17,

22 3:5,11,12

**violated** 20:5

**visit** 15:8,9

**volunteers** 60:8

**vote** 15:7 20:3

**voter** 26:8,9 28:17 29:23 30:8 31:18 33:9 60:4,11 61:19

**voter's** 20:3

**voters** 1:5 20:4 29:19 33:17 35:6 51:8 60:14 61:5

**voting** 4:8 12:2,13 13:10,18 14:9 15:8,9,19 16:25 23:17,22 24:1,8, 11,21 25:10 26:12 27:22 28:13 31:17 32:10 39:6,10 44:23 48:14 49:10 51:25 55:5,19 56:15 58:5 59:22 66:24

---

### W

**wait** 32:6,23 64:20

**walk** 14:18

**wanted** 7:5 24:4 28:1 49:11 57:24 63:16

**ways** 21:10

**website** 12:20 50:4

**Wednes-** 24:16

**Wednesday** 24:17

**week** 32:23

**Weisfeld** 1:3 62:25 64:2

**West** 2:18,23

**WESTERN** 1:1

**Willkie** 2:11 6:3,6

**WOMEN** 1:5

**wondering** 22:21

**work** 20:2 32:14,15 35:23 59:4

**working** 14:12

**wrap** 64:9 65:11

**writing** 30:21

**written** 31:18 33:8,9

**wrong** 27:21 40:11

---

### Y

**year** 13:6 14:4 19:3 37:12 39:8 49:3,7,17 50:12,16 60:16,19 64:17, 24

**years** 16:7 26:9 37:23 50:3

**yesterday** 8:10

**York** 2:12

**you-all** 52:6 65:8 68:16,18

---

### Z

**Zachary** 2:5

**zachary@ texascivilrightsproject.org** 2:8



UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| DR. GEORGE RICHARDSON, ROSALIE WEISFELD, AUSTIN JUSTICE COALITION, COALITION OF TEXANS WITH DISABILITIES, MOVE TEXAS CIVIC FUND, LEAGUE OF WOMEN VOTERS OF TEXAS, and AMERICAN GI FORUM OF TEXAS, INC., | § § § § § § § § | |
| *Plaintiffs* | § § | |
| v. | § § | Civil Case No. 5:19-cv-00963 |
| TEXAS SECRETARY OF STATE, TRUDY HANCOCK, in her official capacity as BRAZOS COUNTY ELECTIONS ADMINISTRATOR, and PERLA LARA in her official capacity as CITY OF MCALLEN, TEXAS SECRETARY, | § § § § § § § | |
| *Defendants*. | § § | |

## AMENDED NOTICE OF DEPOSITION OF DEFENDANT CITY OF MCALLEN, TEXAS SECRETARY PURSUANT TO FED. R. CIV. P. 30(b)(6) BY PLAINTIFFS

**TO:** Defendant City of McAllen, Texas City Secretary, by and through her attorneys of record, Isaac Tawil and Austin Stevenson, 1300 Houston Avenue, McAllen, Texas 78501, and C. Robert Heath and Gunnar P. Seaquist, 3711 South MoPac Expressway Building One, Suite 300 Austin, Texas 78746.

**PLEASE TAKE NOTICE** that, pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, Plaintiffs Dr. George Richardson, Rosalie Weisfeld, Austin Justice Coalition, Coalition of Texans with Disabilities, MOVE Texas Civic Fund, and League of Women Voters of Texas, through counsel, will take the deposition by oral examination of Defendant City of McAllen, Texas Secretary ("Defendant McAllen City Secretary") on May 14, 2020, at 1:30 p.m. Central Time, by video conference, or at such alternative date, time, and place as mutually agreed upon by counsel

1

for the parties. This deposition shall continue from day to day until completed. The oral deposition will be transcribed and recorded by a court reporter and videographer designated by Plaintiffs. Plaintiffs reserve the right to utilize this videotaped deposition at trial in lieu of live testimony, or in addition to live testimony, and/or for any purpose permitted under the Federal Rules of Civil Procedure and Federal Rules of Evidence.

**PLEASE TAKE FURTHER NOTICE** that in accordance with Rule 30(b)(6) of the Federal Rules of Civil Procedure, Defendant McAllen City Secretary is required to designate one or more officers, directors, managing agents or other persons who will testify on her behalf with respect to each of the topics set forth in the attached Schedule A. In addition, Plaintiffs request that Defendant McAllen City Secretary provide counsel for Plaintiffs with written notice, at least five days in advance of the deposition, of the name and title of each witness who will testify for Defendant McAllen City Secretary, and the topic(s) set forth in the attached Schedule A for as to which each such witness will testify. Defendant McAllen City Secretary is also commanded to produce at the deposition or before, all documents in response to the subpoena *duces tecum* on Schedule B.

Dated: April 17, 2020                    Respectfully submitted,


                                         /s/ *Hani Mirza*

                                         **TEXAS CIVIL RIGHTS PROJECT**

                                         Mimi M.D. Marziani
                                         Texas Bar No. 24091906
                                         mimi@texascivilrightsproject.org
                                         Rebecca Harrison Stevens
                                         Texas Bar No. 24065381
                                         beth@texascivilrightsproject.org
                                         Hani Mirza
                                         Texas Bar No. 24083512
                                         hani@texascivilrightsproject.org

2

Ryan V. Cox
Texas Bar No. 24074087
ryan@texascivilrightsproject.org
Zachary D. Dolling
Texas Bar No. 24105809
zachary@texascivilrightsproject.org

1405 Montopolis Drive
Austin, Texas 78741
512-474-5073 (Telephone)
512-474-0726 (Facsimile)

**WILLKIE FARR & GALLAGHER LLP**

Richard Mancino (NY Bar No. 1852797)
Samuel Kalar (NY Bar No. 5360995)
JoAnna Suriani (NY Bar No. 5706395)

787 Seventh Avenue
New York, New York 10019
Telephone: (212) 728-8000
Facsimile: (212) 728-8111
Email: rmancino@willkie.com
        skalar@willkie.com
        jsuriani@willkie.com

-AND-

Jennifer J. Hardy (TX Bar No. 24096068)
Denis A. Fallon (TX Bar No. 24059731)
Garrett Johnston (TX Bar No. 24087812)
Audra White (TX Bar No. 24098608)

600 Travis Street, Suite 2100
Houston, Texas 77002
Telephone: (713) 510-1700
Facsimile: (713) 510-1799
Email: jhardy2@willkie.com
        afallon@willkie.com
        gjohnston@willkie.com
        awhite@willkie.com

*ATTORNEYS FOR PLAINTIFFS*

3

**SCHEDULE A**

**DEFINITIONS**

1.  "Defendant," "McAllen City Secretary," or "you" (and the possessive forms of each) shall mean the City of McAllen, Texas Secretary, including Perla Lara, in her official capacity as the current City of McAllen, Texas Secretary; where applicable, her predecessors and successors in their official capacities as City of McAllen, Texas Secretary;  and the current and former attorneys, agents, trustees, investigators, representatives, employees, officers, contractors, and consultants of any of them.

2.  "Early Voting Clerk" means the local election official charged under the Texas Election Code with conducting the early voting in each election, holding the same duties and authority with respect to early voting as a presiding election judge has with respect to regular voting except as otherwise provided by Title 7 of the Texas Election Code.

3.  "Election Judge" means the local election official who is in charge of and responsible for the management and conduct of the election at the polling place of the election precinct that the judge serves pursuant to the Texas Election Code.

4.  "City of McAllen" shall refer to the City of McAllen, Texas, and all of its offices and agencies, including the offices or entities of the McAllen City Secretary, the Early Voting Clerk, the Early Voting Ballot Board, and any Signature Verification Committee.

4.  "Early Voting Ballot Board" or "EVBB" shall refer to the entity or entities created and operating in the City of McAllen pursuant to Tex. Elec. Code § 87.001.

5.  "Signature Verification Committee" or "SVC" shall refer to the entity or entities created and operating in the City of McAllen pursuant to Tex. Elec. Code § 87.027.

4

6.   "Local election officials" or "City of McAllen election officials" means any official responsible for the management or operation of any aspect of elections in the City of McAllen, including their offices, agents, employees, and representatives. For the avoidance of doubt, "local election officials" or "City of McAllen election officials" includes, without limitation, the McAllen City Secretary, the Early Voting Clerk, any Election Judges, and any officials serving on an Early Voting Ballot Board or Signature Verification Committee.

7.   "Texas Secretary of State" or "SOS" shall refer to the Texas Secretary of State, and all of its offices and agencies.

8.   "Texas Attorney General" or "AG" shall refer to the Texas Attorney General, and all of its offices and agencies.

9.   "Plaintiffs" shall refer to Dr. George Richardson, Rosalie Weisfeld, the Austin Justice Coalition, the Coalition of Texans with Disabilities, MOVE Texas Civic Fund, League of Women Voters of Texas, and American GI Forum, Inc.

10.  "Mail-in ballot" means a ballot cast by mail during an election.

11.  "Mail-in ballot application" or "application" means any type of application to vote by mail offered to a voter under the Texas Election Code.

12.  "Signature comparison procedure" shall refer to process of comparing signatures used by local election officials, including in the City of McAllen, pursuant to the Texas Election Code.

13.  "Notice of rejection" shall refer to any communication sent to a mail-in ballot voter pursuant to the Texas Election Code.

14.  "Mail-in ballot process" or "mail-in ballot procedure" means any aspect or step, individually or in the aggregate, of the process or procedure by which a voter in Texas

5

obtains and then utilizes a mail-in ballot to cast their vote in any election, including but not limited to any aspect or step of the process or procedure by which local election officials decide whether to accept or reject a mail-in ballot application or a mail-in ballot, any signature comparison procedure utilized in those determinations, or any notice of rejection or other communication sent to any mail-in ballot voter.

15. Use of the term "person" includes any individual, independent contractor, public or private corporation, partnership, unincorporated association, incorporated association, government agency or entity, or any other entity, its officers, directors, partners, employees, agents, and representatives.

16. The term "including" shall be construed broadly, and shall encompass "including but not limited to" and "including without limitation."

17. The terms "and," "or" and "and/or" shall be construed disjunctively or conjunctively as necessary in order to bring within the scope of the request all responses which otherwise might be construed to be outside its scope.

18. The terms "any" and "all" shall be read to give the broadest possible scope to the request as permitted under the Federal Rules of Civil Procedure.

19. A verb used in any tense shall encompass the verb in all other tenses.

20. A word in singular form shall encompass the plural form and vice versa.

21. Use of the terms "document," "documents," "documentation," "written materials" or "printed matter" mean any recorded form of writing or communication whether it be by paper, film, microfilm, microfiche, computer print-out, reports, records, lists, memoranda, e-mail, correspondence, communications, telegrams, schedules, photographs, drawings,

6

charts and other forms of tangible and electronic information preservation, including, but not limited to:

> correspondence, letter, memoranda, electronic mail, telefax, message, note, report, cable, telegram, photograph, film, tape, and all other written communications of every kind and character; note, recording disk, or any other record of oral communication; microfilm; worksheet; schedule; exhibit; demonstrative aid; letter; contract; agreement; diagrams; logs; summaries; printouts; graphs, charts; floppy disks, CDs or DVDs, compilations, tables; publications; manuals; minutes; minute books, diaries; calendars; bank statements; lists; data tapes, audio tapes, video tapes; spreadsheets and any other data compilations from which information can be obtained and translated.

22.    "Complaint" shall mean the Complaint filed by Plaintiffs in Civil Action 5:19-cv- 00963 on or about August 7, 2019.

## DEPOSITION TOPICS

1.    The duties and responsibilities of the City of McAllen and/or its representatives, employees or agents concerning the implementation, administration, coordination, oversight, and compliance with the Texas Election Code or any other state laws or regulations as they relate to the mail-in ballot process from January 1, 2012, to the present. This includes but is not limited to any training, monitoring, or oversight of any City of McAllen election official in their implementation of the mail-in ballot process, including their procedures for accepting or rejecting mail-in ballots.

7

2.      The organization and structure of any City of McAllen office or entity that in any way regulated the conduct of early voting during the period from January 1, 2012 to the present, including but not limited to:

a.      lines of authority to and from all City of McAllen personnel who have responsibility for any aspect of the oversight of the implementation of the mail-in ballot process; and

b.      lines of authority to and from all City of McAllen personnel who communicate with local election officials regarding the mail-in ballot process.

3.      The City of McAllen's responsibilities and duties during the early voting period and the actions that the City of McAllen takes to execute those responsibilities and duties.

4.      The City of McAllen's policies, practices, and procedures related to the mail-in ballot process, during the period from January 1, 2012 to the present, including but not limited to:

a.      the aspects of the mail-in ballot process that the City of McAllen is responsible for carrying out or implementing;

c.      the City of McAllen's role in appointing an EVBB or SVC;

d.      any oversight or control exercised by the City of McAllen over an EVBB's or SVC's activities, whether directly or indirectly;

e.      any communications with City of McAllen election officials, including the members of the EVBB or SVC, regarding the implementation of the mail-in ballot process;

f.      the training or guidance that the City of McAllen provides to the members of an EVBB or SVC regarding the signature matching procedure or on any other matter;

8

g.      whether the City of McAllen reviews or audits the actions taken by an EVBB or SVC, the remedial action that the City of McAllen takes if it determines that a decision of an EVBB or SVC is incorrect, and how the determination to take such action is made;

h.      the procedures for communicating with voters who vote by mail and the methods used and/or available for accomplishing those communications, including how a notice of rejection or other disposition of a vote by mail is communicated to voters;

i.      what information the City of McAllen possesses with respect to individual voters, including information it possesses or may reasonably obtain to facilitate communications with voters who vote by mail, such as phone numbers, addresses, or e-mail addresses;

j.      whether the City of McAllen sends documentation or information related to the mail-in ballot process and voters who vote by mail to the Secretary of State, the Texas Attorney General, and/or any other government officials or entities; and

j.      whether the City of McAllen has received any documentation, information, or training related to the mail-in ballot process from the Secretary of State or any other government official or entity.

5.      All policies, practices, and procedures related to any computer system utilized by the City of McAllen to track documentation, data, or information relating to the mail-in ballot process, including applications for and the use of mail-in ballots, including any communications or documentation from City of McAllen election officials relating to mail-in ballot applications, mail-in ballots, or the mail-in ballot process, including but not limited to:

a.    the system's role, function, and functionalities, including available data fields and report generating capabilities;

b.    the system's computer structures and operating program;

c.    the data recorded in the system and the system's ability to produce reports of particular data;

d.    the procedures for determining whether to modify the system;

e.    past and current modifications (including the substance of the modifications and cost);

f.    the system's capability for further modifications;

g.    modifications to the system currently planned for the next four years, including deadlines and any timelines of goals; and

h.    the system's ability to accept mail-in ballot related information from local election officials.

10

## **SCHEDULE B**

Definitions are incorporated by reference from Schedule A.

Documents to be produced:

1.      All documents reviewed in preparation for your deposition.

11

## **CERTIFICATE OF SERVICE**

By my signature below, I certify that a true and correct copy of the foregoing was served

on each Defendant's counsel of record on April 17, 2020 via email.

Dated: April 17, 2020

<div align="center"><em>/s/ Hani Mirza</em></div>

12

# EARLY VOTING BALLOT BOARD & SIGNATURE VERIFICATION COMMITEE

## Handbook for Election Judges and Clerks 2020

## FOR USE IN GENERAL, PRIMARY, AND
### OTHER POLITICAL SUBDIVISION ELECTIONS



**Issued by**

The Office of the Texas Secretary of State, Elections Division
1-800-252-VOTE(8683) or (512) 463-5650

SOS_000428

www.sos.state.tx.us
www.VoteTexas.gov

# TABLE OF CONTENTS

**INTRODUCTON**    i

**CHAPTER 1 – CREATION OF THE EARLY VOTING BALLOT BOARD & SIGNATURE VERIFICATION COMMITEE**    1

    SECTION A.  COMPOSITION OF THE EVBB    1
    SECTION B.  COMPOSITION OF A SIGNATURE VERIFICATION COMMITTEE    2

**CHAPTER 2 — SIGNATURE VERIFICATION COMMITTEE CONVENES**    1

    SECTION A.  Convening the Signature Verification Committee    4
    SECTION B.  Delivery Of Materials To The Committee    4
    SECTION C.  Receipt For Delivery    5
    SECTION D.  Security Of Early Voting Ballots    6

**CHAPTER 3  — THE EARLY VOTING BALLOT BOARD CONVENES**    7

    SECTION A.  Convening the Early Voting Ballot Board    7
    SECTION B.  Delivery of Materials to the Board    8
    SECTION C.  Receipt for Delivery    9
    SECTION D.  Security of Early Voting Ballots    10

**CHAPTER 4  — QUALIFYING BALLOTS VOTED BY MAIL OR VOTED USING MAIL PROCEDURES**    11

    SECTION A.  Types Of Early Voting Ballot Applications    11
    SECTION B.  Valid Reasons For Voting Early By Mail    11
    SECTION C.  Qualifying Early Voting Ballots Voted By Mail    12
    SECTION D.  Qualifying Signatures for the Signature Verification Committee    15
    SECTION E.  Accepted Ballots    16
    SECTION F.  Rejected Ballots    18

**CHAPTER 5 — COUNTING HAND-COUNTED PAPER BALLOTS**    19

    SECTION A.  Establishing The Counting Teams    19
    SECTION B.  Opening The Ballot Box Containing Hand-Counted Paper Ballots    19
    SECTION C.  Rules Governing The Counting Procedure    20
    SECTION D.  The Counting Procedure    20
    SECTION E.  Rules For Counting Manually-Cast Or Hand-Counted Optical Scan Ballots    21
    SECTION F.  Handling The Election Returns For Paper Ballots    24
    SECTION G.  Reporting Early Votes    27

**CHAPTER 6 — EXAMINING, PREPARING, AND COUNTING VOTED OPTICAL SCAN BALLOTS**    28

SOS_000429

SECTION A.   Processing Ballots Counted At Central Counting Station          28
SECTION B.   Delivery Of Ballot Box                                          28

**CHAPTER 7 — RECONVENING EARLY VOTING BALLOT BOARD**                        29

SECTION A.   Establishing The Early Voting Ballot Board To Review Provisional Ballots   29
SECTION B.   Reconvening For Qualifying Late Early Ballots By Mail           33

**APPENDIX A.  Signature Verification Committee**                            39
SECTION A.   Questions in Regards to Verifying Signatures                    39
SITUATIONS.                                                                  41

**APPENDIX B.  Early Voting Ballot Board**                                   44
SECTION A.   Questions in Regards to Board                                   44
SITUATIONS.                                                                  48

SOS_000430

# INTRODUCTION

The Elections Division of the Secretary of State's Office has prepared this handbook for an overview of the Early Voting Ballot Board and Signature Verification Committee.  This handbook contains a thorough outline of who is able to serve as part of the Early Voting Ballot Board, who is able to serve on the Signature Verification Committee, convening the board/committee, qualifying ballots and counting ballot procedures for the Early Voting Ballot Board and Signature Verification Committee.  It incorporates changes in election laws through the regular session of the 86th Texas Legislature (2019).

The handbook starts at the selection process of the Early Voting Ballot Board and Signature Verification Committee, whether it is for a Primary, General, or a Political Subdivisions Election. Throughout the handbook, references are made to the appropriate section in the Texas Election Code or the Texas Administrative Code, unless otherwise indicated.  Information in *italics* relates to primary elections.

The Elections Division of the Secretary of State's Office is open during the hours that the polls are open for voting on all uniform election dates.  Answers to questions on election law and procedures may be obtained by telephoning the Elections Division toll-free at 1-800-252-2216 or (512) 463-5650.

Please visit us at our Internet home page for additional election information at http://www.sos.state.tx.us.

The Office of the Secretary of State does not discriminate on the basis of race, color, national origin, sex, religion, age, or disability in employment or the provision of services.

i

SOS_000431

# CHAPTER 1

## CREATION OF THE EARLY VOTING BALLOT BOARD & SIGNATURE VERIFICATION COMMITEE

### SECTION A.  COMPOSITION OF THE EVBB

1. An early voting ballot board (EVBB) shall be created in each election to process early voting results from the territory served by the early voting clerk. [87.001] No matter what type of election an entity is having, they must have an early voting ballot board.

2. The EVBB consists of a presiding judge and at least two other members. The presiding judge of the EVBB is appointed in the same manner as a presiding election judge. Except in the general election for state and county officers, each county chair of a political party with nominees on the general election ballot shall submit to the county election board a list of names of persons eligible to serve on the early voting ballot board. The county election board shall appoint at least one person from each list to serve as a member of the early voting ballot board. The same number of members must be appointed from each list. The other members are appointed by the presiding judge in the same manner as the precinct election clerks. In addition to the members appointed under the general election, the county election board shall appoint the presiding judge from the list provided under that subsection by the political party whose nominee for governor received the most votes in the county in the most recent gubernatorial general election. [87.002]

   **NOTE:** If the county has an elections administrator, or if commissioner's court has transferred the election duties of the county clerk to the county tax assessor collector, he/she will serve as the county election board chair in place of the county clerk. (31.043, 31.072 & 31.073)

   **Recommend: We recommend that the county election board appoint the members of the early voting ballot board for the November 3, 2020 no later than October 1, 2020, to allow time for notice requirements.**

| Type of Election | Presiding Judge | EVBB Clerks |
|---|---|---|
| General Election for State and County Officers | County Election Board --from list provided by political party whose nominee for Gov received the most votes in the county | County Election Board -- from lists provided by political parties (same number from each list) |
| Primary Elections | County Chair of Political Party with approval of County Executive Committee | Presiding Judge of EVBB |
| All Other County ordered elections | Commissioner's Court if no County Election Board is established | Presiding Judge of EVBB |
| All other Elections | Authority ordering election | Presiding Judge of EVBB |

1

SOS_000432

3. To be eligible for appointment to the early voting ballot board, a person must meet the requirements for eligibility for service as a presiding election judge, [32.051] except that the appointee must be a qualified voter of the territory served by the early voting clerk and is not required to be a qualified voter of any other particular territory. [87.003]

4. An EVBB member would be ineligible if, they hold public elective office, opposed candidate in election on the same day, related to an opposed candidate within 2nd degree by blood or marriage, or serving as campaign treasurer/campaign manager for candidate in election.

5. <u>Required Oaths by Early Voting Ballot Board Members</u>: All EVBB members should recite this oath, prior to beginning service on the Board. [87.006]

   <u>For use in Joint Primary Elections, General Election for State and County Officers, Elections ordered by the Governor:</u>

   "I swear (or affirm) that I will objectively work to be sure every eligible voter's vote is accepted and counted, and that only the ballots of those voters who violated the Texas Election Code will be rejected. I will make every effort to correctly reflect the voter's intent when it can be clearly determined. I will not work alone when ballots are present and will work only in the presence of a member of a political party different from my own. I will faithfully perform my duty as an officer of the election and guard the purity of the election."

   <u>For use in all Separate Primary Elections and Other Elections that do not contain Party Affiliation:</u>

   "I swear (or affirm) that I will objectively work to be sure every eligible voter's vote is accepted and counted, and that only the ballots of those voters who violated the Texas Election Code will be rejected. I will make every effort to correctly reflect the voter's intent when it can be clearly determined. I will not work alone when ballots are present. I will faithfully perform my duty as an officer of the election and guard the purity of the election. "

## SECTION B.  COMPOSITION OF A SIGNATURE VERIFICATION COMMITTEE

1. Unlike an EVBB that is mandatory, a Signature Verification Committee (SVC) may be created. There are two ways for this committee to be created. The first way is through the early voting clerk. The early voting clerk has authority for determining whether a signature verification committee is needed. The second way is through a petition that is submitted to the early voting clerk. The petition must contain at least 15 registered voters in the territory in order for the committee to be created. The SVC must consist of not fewer than five members. If more than 12 members are appointed to serve on the signature verification committee, the early voting clerk may designate two or more subcommittees of not less than six members. [87.027]

2. In an election in which party alignment is indicated on the ballot, each county chair of a political party with a nominee or aligned candidate on the ballot shall submit to the appointing authority a list of names of persons eligible to serve on the signature verification committee. The authority shall appoint at least two persons from each list to serve as members of the committee. The same number of members must be appointed from each list. The authority shall appoint the chair of the committee from the list provided by the political party whose nominee for governor received the most votes in the county in the most recent gubernatorial general election. [87.027(d)]

SOS_000433

3.  The signature verification committee is a group that meets prior to election day to compare the signatures on the applications for ballot by mail to the corresponding carrier envelopes. (87.027) If the early voting clerk determines that a signature verification committee is desirable **or** if the clerk receives a petition signed by 15 registered voters, the clerk shall issue a written order creating the committee. The deadline to submit a petition requesting creation of a signature verification committee for the November 3, 2020 is October 1, 2020. (87.027, 1.006) A request submitted by mail is considered submitted at the time of its receipt by the early voting clerk. The early voting clerk determines the number of members on the committee, providing for a minimum of five (the committee chair and four members). The county election board appoints the members. The party chairs, including the county chairs of the Libertarian and Green Party of Texas, submit lists of eligible persons for appointment to the committee.

4.  In order to serve on the committee, a person must be a qualified voter of the entity. **IT is NOT RECOMMENDED that members that serve on the EVBB serve on the SVC. This creates a conflict because if a SVC has determined that the signatures are not those of the same person, the EVBB may make a determination that the signatures are those of the same person by a majority vote of the board's membership. [87.027(j)]**

    The county chairs' lists for the appointment of the signature verification committee members are not subject to the June 30th or the July 30th deadline. The county elections board shall appoint the members of the signature verification committee not later than the 5th day after the date the early voting clerk issues the order calling for the creation of the committee OR not later than October 15, 2020, if the committee is created after a valid petition was submitted requesting its creation. We recommend that the signature verification committee be appointed (if needed) by October 10, 2020, to allow time for all necessary notice requirements. Therefore, we recommend that the parties submit the lists to the chair of the county elections board (county clerk or elections administrator) by August 29, 2020, to allow for appointment during the month of September or no later than the October 10, 2020 recommended date. The chair of the signature verification committee is appointed from the list of the party whose candidate for governor received the highest vote in the 2018 gubernatorial election countywide. For the remaining members, the county election board must select at least two qualified individuals from each chair's list. If clerks beyond the minimum requirement are ordered, an equal number must be chosen from each list.

| Type of Election | Chair | SVC Clerks |
|---|---|---|
| General Election for State and County Officers | County Election Board appoints who is the chair, in an election for which the board is established -- from list provided by the county chairs | County Election Board appoints, in an election for which the board is established --from list provided by the county chairs |
| Primary Elections | County Chair of Political Party with approval of County Executive Committee | County Chair of Political Party with approval of County Executive Committee |
| All Other County ordered elections | Commissioner's Court | Commissioner's Court |
| All other Elections | Authority ordering election | Authority ordering election |

3

SOS_000434

# CHAPTER 2

## SIGNATURE VERIFICATION COMMITTEE CONVENES

### SECTION A.  CONVENING THE SIGNATURE VERIFICATION COMMITTEE

1. The early voting clerk shall determine the place, day or days, and hours of operation of the signature verification committee and shall state that information in the order calling for the committee's appointment. A committee may not begin operating before the 20th day before election day. [87.027(f)]

2. The early voting clerk shall post a copy of the order calling for the appointment of the signature verification committee. The copy must remain posted continuously for at least 10 days before the first day the committee meets. [ Sec. 87.027(g)]

3. The committee must complete the following tasks:
   (a) Compare the signature on each carrier envelope certificate (except those signed for a voter by a witness, with the signature on the voter's ballot application to determine whether the signatures are those of the voter). [87.027(i)] The signature verification committee may use electronic copies of the mail ballot application and carrier envelope certificate for comparing signatures.
   (b) The committee may also compare the signatures with any two or more signatures of the voter made within the preceding six years and on file with the county clerks or voter registrar to determine whether the signatures are those of the voter. If ballot materials or ballot applications are recorded electronically as provided by Section 87.126, the signature verification committee may use an electronic copy of a carrier envelope certificate or the voter's ballot application in making the comparison under Section 87.027(i).
   (c) Rejection of signatures must be made by a majority vote of the committee. [87.027(i)]
   (d) The only purpose of the SVC is to compare signatures the EVBB will count the ballot. **THE SVC SHOULD NOT BE COUNTING BALLOTS. [87.027(j)]**

### SECTION B.  DELIVERY OF MATERIALS TO THE COMMITTEE

1. If a signature verification committee is appointed for the election, the early voting clerk shall deliver the jacket envelopes containing the early voting ballots voted by mail to the committee instead of to the early voting ballot board. [Sec. 87.027(h)]

2. The following notices must be posted on an entity's website if available: (HB 933 86R)
   a. Copy of order calling for the appointment
   b. EV Clerk's notice of names and addresses of members
   c. Notice of delivery of ballots

3. Deliveries may be made only during the period of the committee's operation at times scheduled in advance of delivery by the early voting clerk. The clerk shall post notice of the time of each delivery. The notice must remain posted continuously for at least two days before the date of the delivery. [87.027(h)]

4. Postings shall be made on the bulletin board used for posting notice of meetings of the commissioners court, in an election for which the county election board is established or a primary election, or of the governing body of the political subdivision in other elections. [Sec. 87.027(k)]

SOS_000435

5. The committee chair or committee members may request from the voter registrar, county clerk, or election administrator ahead of time signatures that are on file from the past six years. This does not have to be done ahead of time, however our office recommends in order to give the voter registrar, county clerk or election administrator ample time. This may be provided electronically.

6. In 2017, SB 5 85 R removed the prohibition against the committee using the registration application signature to determine that the signatures are not those of the same person. The bill authorizes the early voting ballot board or signature verification committee to compare a voter's signature on a ballot application or carrier envelope certificate with two or more signatures of the voter made within the preceding six years and on file with the county clerk, in addition to the board's existing authority to make such a comparison with signatures on file with the voter registrar, to determine whether the signatures are those of the same person. The bill removes the prohibition against the board using such signatures on file to determine that the signatures are not those of the same person. The board or the committee may now use the signatures to determine if they are or if they are not that of the same person.

7. The committee compares signatures on applications and corresponding carrier envelopes only to determine that the signatures on these documents are of the same person or not.  [Sec. 87.027(i)]. The signature verification committee may use electronic copies of the mail ballot application and carrier envelope certificate for comparing signatures. The standard should be whether the two signatures could have been made by the same person. If using electronic signatures to compare, please have a plan in place and use that procedure throughout the duration.

8. The committee places carrier envelopes and applications that are the signatures of the same person in one container and those that are not the same person in another separate container.

9. Committee chair delivers sorted materials to the Board as directed by the presiding judge of the Board.

10. If the signature verification committee has decided that the signatures are from the same person, the Board may not override the committee's decision.  If the signature verification committee has decided that the signatures are not from the same person, the Board may override the committee's decision that the signatures are of the same person by a majority vote of the Board. [Sec. 87.027(j)]

11. A determination that signatures are not from the same person must be made by a majority vote of the committee or subcommittee as applicable.  If the early voting clerk has designated subcommittees within the signature verification committee, the subcommittee makes its signature determinations by a majority vote of the subcommittee members.  [Sec. 87.027(l)] There is nothing in the Election Code that states what constitutes a majority vote. This may be something that is discussed among the committee to determine what constitutes a majority vote. Please note that if the committee has determined what constitutes a majority vote, that the committee use that process throughout the entire process.

12. The Board makes a determination if the signature verification committee cannot determine whether the signatures are made by the same person.

13. **Convening the Committee after election day**. The early voting clerk may determine whether or not the committee will need to reconvene after election day to verify signatures or leave that authority with the early voting ballot board. We recommend that this decision be done prior to election day. If the authority is left with the committee we recommend that the committee coordinates with the board and the early voting clerk for delivery of the jacket envelope ballots by mail.

## SECTION C. RECEIPT FOR DELIVERY

1.  Upon delivery of a sealed early voting ballot box, the committee chair of the signature verification committee must inspect the box to determine whether the seals on the box are intact, and whether the numbers on the seals correspond to the numbers indicated on the record of serial numbers prepared by the early voting clerk.  [Secs. 87.062(b), 127.068]

2.  If the seals are intact and the numbers match, the committee chair should accept the ballot box and so indicate on the receipt.

3.  If the seals are not intact or the numbers do not match, the committee chair should accept the ballot box, but note any discrepancies on the receipt and in his or her records.

## SECTION D. SECURITY OF EARLY VOTING BALLOTS

1.  The voted early voting ballots must be secured from the last day of voting by personal appearance at a polling place until the day the ballots are counted.  [T.A.C. Sec. 81.34]

    a.  If the signature verification meets before election day, the committee chair shall, upon each adjournment of the board, lock and seal each ballot box prior to delivering the boxes back to the custodian of records.  The chair shall complete a ballot box security form indicating each serial number used to seal each box.  The form shall be signed by the chair and another committee member who has witnessed the procedure.  In a general election for state and county officers, the committee member must be from a different political party than the judge.  The custodian of records shall also sign the form.

    b.  The committee chair shall deliver the key(s) used to lock the ballot box(es) to the custodian.  The key shall be retained by the authority designated in accordance with Section 66.060(a) of the Code:

        (1)  the sheriff for an election ordered by the governor or county authority or *a primary election*, except that in a year when the office of sheriff is on the ballot, the key shall be delivered to the county judge.  When both these offices are on the ballot, the key shall be delivered to the county auditor or to a designated member of the commissioners court who is not on the ballot and who is appointed by the court, if the county does not have an auditor;

        (2)  the chief of police or city marshal for an election ordered by a city authority; or

        (3)  the constable of the justice precinct in which the office of the political subdivision is located, or if the office of constable is vacant, the sheriff of the county in which the political subdivision is located if the election is ordered by an authority of a political subdivision other than a city or county**.**

    c.  Upon reconvening the committee, the chair shall ensure that each ballot box is intact.  The chair shall follow these procedures each day except upon final delivery to the custodian of records or delivery to the central counting station.

    d.  If it is impracticable for the chair to deliver the ballot boxes each day upon adjournment, the authority conducting the election shall submit an alternate security procedure to the Secretary of State for approval.

SOS_000437

# CHAPTER 3

## THE EARLY VOTING BALLOT BOARD CONVENES

### SECTION A.  CONVENING THE EARLY VOTING BALLOT BOARD

1. The Early Voting Ballot Board (the "Board") generally meets twice during an election.  First, the Board meets to qualify ballots by mail on election day or after the last day to vote early by personal appearance.  Second, the Board meets after election day to review any provisional ballots and to qualify any mail-in ballots received by the 5th and 6th day after election day from voters casting a ballot from outside the U.S. or military voters who located outside the voter's home county and is on active duty or a spouse of a military person on active duty .

2. The board must convene to complete the following tasks:
   (a) Qualify and Process Regular Ballots by Mail
   (b) Qualify and Process Late Ballots (old and new categories)
   (c) Qualify and Process Provisional Ballots

3. Convening the Board on election day or after early voting by personal appearance ends.

Except as provided below, the Board may meet to qualify and accept ballots at any time after the end of the early voting by personal appearance, but <u>may not count</u> votes until the polls open on election day.  [Secs. 87.024-87.0241]

**NOTES**:

- General rule: May convene at the end of Early Voting by Personal Appearance (3rd day before) to <u>qualify</u> ballots.
- In elections conducted by a county with a population of 100,000 or more <u>and elections held jointly with such a county,</u> the Board may meet to <u>qualify and accept</u> voted mail ballots beginning the end of the 9th day before the last day of the period of early voting.

- If there is a central counting station that has been established, then the ballots will not be sent to the ballot board, but rather to central count.

- The Board like the Committee may also compare signatures with any two or more signatures of the voter made within the preceding six years and on file with the voter registrar.

   In 2017, SB 5 85 R removed the prohibition against the board using the registration application signature to determine that the signatures are not those of the same person. The bill authorizes the early voting ballot board or signature verification committee to compare a voter's signature on a ballot application or carrier envelope certificate with two or more signatures of the voter made within the preceding six years and on file with the county clerk, in addition to the board's existing authority to make such a comparison with signatures on file with the voter registrar, to determine whether the signatures are those of the same person. The bill removes the prohibition against the board using such signatures on file to determine that the signatures are not those of the same person. The board or the committee may now use the signatures to determine if they are or if they are not that of the same person.

4. Convening the Board after election day.

SOS_000438

a. The Board cannot convene until the 6th day after an election because voters that did not have a valid form of identification when voting have 6 days to: (1) present to the voter registrar a valid photo identification, (2) complete one of the two curing affidavits set out in Section 65.054(b)(2)(B) (consistent religious objection to photographs) or Section 65.054(b)(2)(C) (identification unavailable due to declared natural disaster), or (3) apply for and receive a disability exemption. A board may convene earlier but continue on a rolling basis until the 6th day.

b. In an election held on the date of the general election for state and county officers, the Board must convene <u>no later than the 13th day after the date of the election</u> to count provisional ballots.

c. In all other elections held on dates other than the date of the general election for state and county officers, the Board must convene no later than the 9th day to complete the review of provisional ballots.

d. The Board shall convene on the 9th day after election day or earlier if the early voting clerk certifies that all ballots from outside of the U.S. have been received and all provisional ballots have been processed by the voter registrar. [Sec. 87.125]  If this date falls on a Saturday, Sunday, or legal state or national holiday, the Board convenes on the next regular business day. [Sec. 87.125(c)].

e. *For Primary and Primary Runoff Elections-not earlier than 6 p.m. on the second Tuesday or later than 1 p.m. on the second Friday after election day at the hour specified by the county chair.*

**NOTE**: From time to time, the office of the Secretary of State will amend this time period by administrative rule.  *See* T.A.C. Sec. 81.33.

SEE CHAPTER 7 FOR RECONVENING OF BALLOT BOARD FOR THE PROCESSING AND COUNTING OF PROVISIONAL AND OVERSEAS LATE BALLOTS.

## SECTION B. DELIVERY OF MATERIALS TO THE BOARD

1. The board should obtain from the authority conducting the election a package of supplies, including the following forms:

   a. Oath of Election Judges and Clerks; [Sec. 62.003]

      "I swear (or affirm) that I will not in any manner request or seek to persuade or induce any voter to vote for or against any candidate or measure to be voted on, and that I will faithfully perform my duty as an officer of the election and guard the purity of the election."

   b. Poll List of Early Voting by Mail Voters or Voters Voting by Mail Procedure; [Sec. 87.021]

   c. List of Early Voting Provisional Voters; [T.A.C. Sec. 81.172 – 81.174]

   d. List of Provisional Voters Who Presented Proper Identification to Voter Registrar; [Sec. 65.0541]

   e. Envelope for Rejected Early Voting Ballots; [Sec. 87.043]

   f. Tally Sheets; [Sec. 65.004]

   g. Return Sheets; [Sec. 65.014]

   h. Envelopes for distribution of returns and election records; [Sec. 66.003]

   i. Statement of Compensation; [Sec. 32.094]

   j. List of "ID" Voters; and

   k. Notice of Delivery of Ballots Voted by Mail (if delivered prior to the opening of the polls.

2. The early voting clerk delivers to the board:

8

SOS_000439

a. Each ballot box containing ballots voted by personal appearance;

b. List of Declared Write-In Candidates (if applicable);

c. The early voting clerk's key to each ballot box;

d. The jacket envelopes containing ballots voted by mail and the corresponding applications;

e. The list of registered voters, containing voters' permanent and mailing addresses of record, used in conducting early voting;

f. Notice of Rejection of Early Voted Ballots (to be completed by Judge of Ballot Board);

g. The ballot transmittal form for early voted ballots; and

h. Receipt for each ballot box, to be completed when box received.

3. The custodian of the key to the second lock on the ballot boxes containing ballots voted by personal appearance must deliver his or her key to the presiding officer of the early voting ballot board at his or her request if the Board will be hand counting personal appearance ballots.  [Sec. 87.025]

4. If ballots will be counted electronically at the central counting station, then:

- The key and the unopened ballot box should be delivered to the central counting station at the direction of the presiding judge of the central counting station and not to the ballot board, since the law prohibits the ballot board judge from opening the early voting by personal appearance ballot boxes containing ballots that are to be counted by automatic tabulating equipment at a central counting station.  [Sec. 87.101]

- If accessible voting equipment (such as direct record electronic equipment ("DREs")) or precinct count optical scan equipment was used for early voting, the ballot board should not process the early voting by personal appearance ballot boxes or voting machines.

5. The custodian of the key is:

-- for county elections, the county sheriff, unless the sheriff is on the ballot, in which case the key is kept by the county judge.  If both the sheriff and the county judge are on the ballot, the key is kept by the county auditor, or if there is no county auditor, by a member of the commissioners court, named by the court, who is not on the ballot.

-- for city elections, the chief of police or city marshal.

-- for elections of other political subdivisions, the constable of the justice precinct in which the office of the political subdivision's governing body is located, or if there is no constable in that precinct, the sheriff.  [Sec. 66.060(a)]

6. Notice of each delivery to be made prior to the time the polls open on election day must be posted at the main early voting polling place for at least 24 hours immediately preceding the delivery.  [Secs. 87.023(b), 87.024(b)]

7. In the general election for state and county officers, if ballots are to be delivered before election day, the early voting clerk must notify the county chair of each political party with a nominee on the ballot at least 24 hours before the first delivery is made.  [Secs. 87.023(c), 87.024(c)]

**SECTION C. RECEIPT FOR DELIVERY**

1. Upon delivery of a sealed early voting ballot box, the presiding judge of the early voting ballot board must inspect the box to determine whether the seals on the box are intact, and whether the numbers on the seals

9

SOS_000440

correspond to the numbers indicated on the record of serial numbers prepared by the early voting clerk. [Secs. 87.062(b), 127.068]

2. If the seals are intact and the numbers match, the presiding judge should accept the ballot box and so indicate on the receipt.

3. If the seals are not intact or the numbers do not match, the presiding judge should accept the ballot box, but note any discrepancies on the receipt and in his or her records.

## SECTION D. SECURITY OF EARLY VOTING BALLOTS

1. The voted early voting ballots must be secured from the last day of voting by personal appearance at a polling place until the day the ballots are counted.  [T.A.C. Sec. 81.34]

   a. If the early voting ballot board convenes before election day, the presiding judge shall, upon each adjournment of the board, lock and seal each ballot box prior to delivering the boxes back to the custodian of records.  The judge shall complete a ballot box security form indicating each serial number used to seal each box.  The form shall be signed by the judge and another early voting ballot board member who has witnessed the procedure.  In a general election for state and county officers, the early voting ballot board member must be from a different political party than the judge.  The custodian of records shall also sign the form.

   c. The presiding judge shall deliver the key(s) used to lock the ballot box(es) to the custodian.  The key shall be retained by the authority designated in accordance with Section 66.060(a) of the Code:

      (1) the sheriff for an election ordered by the governor or county authority or *a primary election*, except that in a year when the office of sheriff is on the ballot, the key shall be delivered to the county judge. When both these offices are on the ballot, the key shall be delivered to the county auditor or to a designated member of the commissioners court who is not on the ballot and who is appointed by the court, if the county does not have an auditor;

      (2) the chief of police or city marshal for an election ordered by a city authority; or

      (3) the constable of the justice precinct in which the office of the political subdivision is located, or if the office of constable is vacant, the sheriff of the county in which the political subdivision is located if the election is ordered by an authority of a political subdivision other than a city or county**.**

   c. Upon reconvening the ballot board, the presiding judge shall ensure that each ballot box is intact.  The presiding judge shall follow these procedures each day except upon final delivery to the custodian of records.

   e. If it is impracticable for the ballot board judge to deliver the ballot boxes each day upon adjournment, the authority conducting the election shall submit an alternate security procedure to the Secretary of State for approval.

SOS_000441

# CHAPTER 4

## QUALIFYING BALLOTS VOTED BY MAIL OR VOTED USING MAIL PROCEDURES

### SECTION A. TYPES OF EARLY VOTING BALLOT APPLICATIONS

The early voting ballot board may encounter several types of applications for early voting ballots. There is not only one form that may be used. They include:

1. The "Application for Ballot by Mail" prescribed by the Secretary of State. [Secs. 84.001(a), 84.011]

2. An informal application for a ballot by mail, which is a written request by the applicant that is not made on the official application form prescribed by the Secretary of State. This application must comply with the statutory requirements for applying for a ballot by mail. [Sec. 84.001(c)]

3. The "Application for Limited Ballot" prescribed by the Secretary of State. [Sec. 112.005]

4. The "Federal Post Card Application" (FPCA) used by military and overseas citizen voters. [Sec. 101.003]

5. The "Application for Presidential Ballot" prescribed by the Secretary of State (only applicable in elections held in November of the presidential election year). [Sec. 113.003]

6. The "Application for Emergency Late Ballot Due to Sickness or Physical Disability" prescribed by the Secretary of State. [Sec. 102.002]

7. The "Application for Emergency Late Ballot Due to Death" prescribed by the Secretary of State. [Sec. 103.002]

8. The "Affidavit for Voting at Main Early Voting Place on Election Day" prescribed by the Secretary of State for voting by disabled voters when electronic voting equipment is being used at the precinct polling place. [Sec. 104.002]

### SECTION B. VALID REASONS FOR VOTING EARLY BY MAIL

Only the following persons may vote early by mail:

1. Persons who are 65 years of age or older on election day. [Sec. 82.003]

2. Persons who have a sickness or physical condition that prevents them from appearing at the polling place on election day without a likelihood of needing personal assistance or injuring their health. Expected or likely confinement for childbirth on election day is sufficient cause to entitle a voter to vote early by mail on the ground of disability. [Sec. 82.002]

3. Persons who are confined in jail at the time the application is submitted must be either:

   a. serving a misdemeanor sentence that ends on or after election day; or

   b. pending trial or appeal after denial of bail or if release on bail is unlikely until after election day. [Sec. 82.004]

4. Persons who expect to be absent from the county on election day and during regular early voting hours for that part of the period for early voting remaining after the application is made. [Sec. 82.001] If this reason for voting early is checked, the address to which the ballot was mailed must be an address outside the county. [Sec. 86.003(c)(1)]

5. Persons who are certified for participation in the address confidentiality program.

   a. An application for ballot by mail submitted by a person eligible under Section 82.007 must include:

11

SOS_000442

i. the name and address at which the person is registered to vote;

ii.   the substitute post office box designated by the attorney general for the person's use in place of the true residential address; and

iii.   an indication for each election for which the person is applying for a ballot.

b.  The information on an application for ballot by mail submitted by a voter related to the **address at which the voter is registered is confidential**, except that it must be disclosed if requested by a law enforcement agency or required under a court order. This application is good for 3 years.

## SECTION C. QUALIFYING EARLY VOTING BALLOTS VOTED BY MAIL

1.  Each jacket envelope will contain:

a.  an application for an early ballot to be voted by mail (or one of the other application procedures in Section A above that uses mail procedures) [Secs. 86.011(b), (c)];  If FPCA was submitted, jacket envelope must include a copy of the FPCA and the signature cover sheet.

b.  the envelope in which the application was delivered to the early voting clerk, if applicable; and

c.  the carrier envelope, which will contain:

-- a ballot envelope with the ballot inside; and

-- statements of residence, copy of identification, or other requested items, if applicable. [Sec. 86.002]

2.  Remove the application and carrier envelope from the jacket envelope.

3.  Check the voter's application to be sure that it states a legal ground for voting early by mail (See Section B above).  [Sec. 87.041(b)(3)]

4.  If the reason for voting early by mail is absence from the county, the application must show an address outside the county to which the ballot was mailed.  [Sec. 87.041(b)(5)]

NOTE:  If the application was submitted after the period for early voting by personal appearance began, the application must show that the voter was absent from the county when the application was submitted.  A voter checking expected absence from county and providing an out of county address on the official application is sufficient.

5.  If the grounds for voting by mail is either being 65 or over, or disability, and the applicant has not provided his or her official mailing address as shown on the list of registered voters as the address for mailing his or her ballot, the address provided must be that of a hospital, nursing home, other long term care facility, retirement center, or the address of a relative within the second degree of affinity or third degree of consanguinity with whom the applicant is living.  [Sec. 86.003(c)(3)]

6.  If the reason for voting early by mail is confinement in jail, the address to which the balloting materials must be addressed is that of the jail facility or a relative within the second degree of affinity or third degree of consanguinity.  [Sec. 86.003(c)(2)]

7.  Check to make sure that the address to which the ballot was mailed is one of the following:

a.  the voter's residence or mailing address indicated on the voter's registration record;

b.  the facility that the voter is residing at if the voter has indicated on his or her application to vote by mail that the reason for voting is 65 years of age or older or disability and has provided a mailing address that does <u>not</u> match the voter's official residence or mailing address; the facility must be one of the following:

(1) hospital;

SOS_000443

(2) nursing home or long-term care facility;

(3) retirement center; or

(4) relative that is related to the voter by 2nd degree of affinity (by marriage) or the 3rd degree of consanguinity.  Relatives include: parent, child, brother, sister, grandparent, grandchild, great-grandchild, great-grandparent, uncle, aunt, nephew, niece, spouse, spouse's parent, son-in-law, daughter-in-law, brother's spouse, sister's spouse, spouse's brother, spouse's sister and spouse's grandparent.

c.  the jail facility, if the reason for voting by mail is confinement in jail, or the address of a relative listed in Section C. 7. b. above.

d.  an address outside of the county, if the reason for voting by mail is expected absence from the county.

e.  the voter's new address as provided on the enclosed statement of residence if the voter has moved within the county but has failed to update his address with the county voter registrar and is having a ballot mailed to a new residence address. [Secs. 84.002, 86.002, 86.003, 87.041

**NOTE**: Please note that all though you will be looking to ensure that the ballot was mailed to an address, you will not be determining where the voter mails back their ballot. You should not be looking at the delivery postmark.

8.  Check the list of registered voters to ensure applicant is a registered voter. [Sec. 87.041(b)(4)]

**Note:** Due to various address confidentiality laws, some voters will not have a residential address next to their name on the list of registered voters.

a.  If an "S" notation appears next to a voter's name on the list of registered voters, or if the residence address on the application for ballot by mail does not match the residence address on the list of registered voters, the carrier envelope will be stamped "STATEMENT ENCLOSED."  The voter's ballot may NOT be accepted UNLESS a completed, signed Statement of Residence is included in the carrier envelope.  If a completed Statement of Residence is not enclosed, the ballot must be rejected. [Sec. 87.041(b)(6)]

b.  If an "ID" notation appears next to a voter's name on the list of registered voters, the voter's ballot may NOT be accepted unless the voter encloses a copy of one of the documents listed below that establishes the voter's identity:

(1) Texas Driver's License issued by the Department of Public Safety ("DPS");

(2) Texas Election Certificate issued by DPS;

(3) Texas Personal Identification Card issued by DPS;

(4) Texas Handgun License issued by DPS;

(5) United States Military Identification Card containing the person's photograph;

(6) United States Citizenship Certificate containing the person's photograph; or

(7) United States Passport.

**NOTE:** For voter's who are between 18-60 the above ID's may be expired for up to 4 years. For a voter who is 70 years of age or older the above ID may be more 4 years old. Please note some ID's do not have expiration dates such as a Texas Identification Cards for persons aged 60 or older may be permanent and marked "INDEF;"Texas Election Identification Certificates (EIC) for persons aged 70 or older are permanent cards; Some military ID cards are permanent, including Uniformed Services ID cards and Veterans Affairs ID cards.  These

SOS_000444

are usually marked "INDEF;" and Certificates of Naturalization and Certificates of Citizenship do not expire.

**If a voter does not possess, and cannot reasonably obtain one of the above acceptable forms of photo identification, the voter may also enclose a copy of one of the supporting forms of identification listed below that establishes the voter's identity along with a signed  Reasonable Impediment Declaration:**
- • copy or original of a government document that shows the voter's name and an address, including the voter's voter registration certificate (other examples of government documents include, but are not limited to: driver's licenses from other states, ID cards issued by federally recognized Native American tribes (if the ID card contains an address), DPS Receipts (without a photo), expired voter registration certificates, and, for voters aged 18-69, expired Texas DPS-issued driver licenses or personal ID cards);
- • copy of or original current utility bill;
- • copy of or original bank statement;
- • copy of or original government check;
- • copy of or original paycheck; or
- • copy of or original of (a) a certified domestic (from a U.S. state or territory) birth certificate or (b) a document confirming birth admissible in a court of law which establishes the voter's identity (which may include a foreign birth document).

**NOTE: The address on either a supporting form of ID or an acceptable photo identification does not need to match the address on the list of registered voters.**

**\*If a voter does not have a valid form of photo identification, they may apply for a free election identification certificate at their local Texas Department of Public Safety office. Reminder: (a) if a voter does not possess one of the seven (7) acceptable forms of photo identification, which, for voters aged 18-69, is not expired for more than four years, or, for voters aged 70 and older, may be expired for any length of time but is otherwise valid, and the voter can reasonably obtain one of these forms of identification or (b) if the voter possesses, but did not bring to the polling place, one of the seven forms of acceptable photo identification, which, for voters aged 18-69, is not expired for more than four years, or, for voters aged 70 and older, may be expired for any length of time but is otherwise valid, or (c) if the voter does not possess one of the seven forms of acceptable photo identification, which, for voters aged 18-69, is not expired for more than four years, or, for voters aged 70 and older, may be expired for any length of time but is otherwise valid, could otherwise not reasonably obtain one, but did not bring a supporting form of identification to the polling place; and the voter does not have a permanent disability exemption indicated on their voter registration certificates, the voter may cast a provisional ballot at the polls.**

**Exemption**:  Voters with a disability may apply with the county voter registrar for a permanent exemption. The application must contain written documentation from either the U.S. Social Security Administration evidencing the applicant's disability, or from the U.S. Department of Veterans Affairs evidencing a disability rating of at least 50 percent. In addition, the applicant must state that he or she has no valid form of photo identification. Those who obtain a disability exemption will be allowed to vote by presenting a voter registration certificate reflecting the exemption.

**Provisional Voting:** If a voter (a) does not possess one of the seven (7) acceptable forms of photo

SOS_000445

identification, which, for voters aged 18-69, is not expired for more than four years, or, for voters aged 70 and older, may be expired for any length of time but is otherwise valid, and the voter can reasonably obtain one of these forms of identification or (b) possesses, but did not bring to the polling place, one of the seven forms of acceptable photo identification, which, for voters aged 18-69, is not expired for more than four years, or, for voters aged 70 and older, may be expired for any length of time but is otherwise valid, or (c) if the voter does not possess one of the seven forms of acceptable photo identification, which, for voters aged 18-69, is not expired for more than four years, or, for voters aged 70 and older, may be expired for any length of time but is otherwise valid, could otherwise not reasonably obtain one, but did not bring a supporting form of identification to the polling place; and the voter did not present a voter registration certificate with a permanent disability exemption indicated on their voter registration certificate, the voter may cast a provisional ballot at the polls.

The voter will have six (6) calendar days after election day (1) present to the voter registrar an acceptable form of photo identification; (2) if the voter does not possess and cannot reasonably obtain one of the acceptable forms of photo identification, execute a Reasonable Impediment Declaration and present to the voter registrar an acceptable form of supporting identification; (3) complete one of the curing affidavits (consistent religious objection to being photographed or natural disaster exception), if applicable or (4) qualify for a permanent disability exemption, if applicable.

c. An application from a voter who is accepted into the Address Confidentiality Program must also include their substitute P.O. Box designated by the Attorney General and an indication for each election for which the person is applying for a ballot.  This application is good for 3 years, unlike a regular ABBM application.

d. Certain persons may vote even though they are not registered to vote in your county and their names do not appear on your list of registered voters.  They are:

(1) Persons applying on Federal Post Card Applications.  The FPCA may be used by persons who are registered voters of your county or who are not registered voters of your county since the federal post card application acts as a temporary registration pending permanent voter registration status (see note below).  [Sec. 101.001]

(2) Persons applying for limited ballots.  A person who moves from one county to another, and the person is either still registered in the former county of residence or was registered in the former county of residence when the person applied to register in the new county of residence.  He or she may vote in their new county of residence, on offices or propositions that are on the ballot in both their new county and the county of his or her former residence.  [Sec. 112.002]

f. If the voter's name does not appear on the list of registered voters and he or she is not categorized in the group of voters listed in "d" above, the presiding judge must refer to the registration correction list, if provided, to see if the voter's name appears on that form.

## SECTION D: QUALIFYING SIGNATURES FOR THE SIGNATURE VERIFICATION COMMITTEE

1. Check to see that the certificate on the carrier envelope was properly executed.  The certificate is the statement the voter signs and may include portions filled out by assistants or witnesses.  [Sec. 87.041(b)(1)

SOS_000446

2.  Check the signatures of the applicant on the application and on the carrier envelope to confirm that both signatures have been executed by the voter, unless either document was signed by a witness.  [Sec. 87.041(b)(2)]

3.  A voter may use different witnesses/assistants on their application for ballot by mail and on their certificate. If a voter uses a witness, you would not compare signatures and the ballot should be accepted pending all other qualifications.

4.  Section 87.041(e) provides that the Board/Committee may compare signatures with any two or more signatures of the voter made within the preceding six years and on file with the voter registrar, county clerk or elections administrator.  These additional signatures may be used to confirm that the signatures are either those are not those of the same person.  SB 5 (85th Legislature, 1, 2017) This bill removed the prohibition against the committee using the registration application signature to determine that the signatures are not those of the same person. The bill authorizes the early voting ballot board or signature verification committee to compare a voter's signature on a ballot application or carrier envelope certificate with two or more signatures of the voter made within the preceding six years and on file with the county clerk, in addition to the board's existing authority to make such a comparison with signatures on file with the voter registrar, to determine whether the signatures are those of the same person. The bill removes the prohibition against the board using such signatures on file to determine that the signatures are not those of the same person. The board or the committee may now use the signatures to determine if they are or if they are not that of the same person.

5.  If there is no signature on the carrier envelope (by voter or witness), the ballot must be rejected (see Section F of this chapter for disposition of rejected ballots).  [Sec. 87.041(d)] If the signature is not on the certificate but elsewhere on envelope, our office has said the signature is valid.

**-- EXCEPTIONS**:

a.  If the voter was unable to sign his or her name, the application and/or carrier envelope must each be signed by a witness.  Different people may have witnessed the voter's mark on the application and on the carrier envelope.  If the voter was unable to sign the application and/or carrier envelope himself or herself and one or both were signed by witnesses, then the signature will not be compared.  [Sec. 87.041(b)(2)]

b.  If the voter applied for an early voting ballot on the Application for Late Emergency Ballot Due to Death or the Affidavit for Voting at Early Voting Place on Election Day, the certificate on the carrier envelope does not need to be signed by the applicant.  The carrier envelope will have a notation "103" or "104" written on it by the early voting clerk when the voter applies under these procedures.  [Secs. 103.004(c), 104.004(c)]

> **NOTE:**   A voter's witnessed application or witnessed carrier envelope are not invalid merely because there is no explanation of the voter's inability to make his or her mark. A ballot may not be rejected merely because the voter signed either the application or the carrier envelope and the other document was witnessed.

c.  If the voter applied for a ballot on the Application for Late Emergency Ballot Due to Sickness or Disability, the name, address, and signature of the representative who delivered the application to the early voting clerk must appear on the application and on the carrier envelope containing the voted ballot.  The same representative who submitted the voter's application must deliver the voter's ballot back to the early voting clerk, and the same representative's name must appear on both the application and the carrier envelope.  [Secs. 102.002, 102.004(b), 102.006(a), (b)]

d.  Applicants applying for a limited ballot or a presidential ballot also known as a restricted ballot must have two applications if voting this procedure by mail (i.e., the application for early ballot by

16

SOS_000447

mail and the application for the "restricted" ballot) enclosed in the jacket envelope.   [Secs. 111.004, 112.005, 113.003]

6.   **Signatures that have been either accepted or rejected need to be separated. If the committee has determined that the signatures are not those of the same person, the board may make a determination that the signatures are those of the same person by a majority vote of the board's membership.**

## SECTION E. ACCEPTED BALLOTS

1. If the applicant has met all the requirements discussed above, the ballot must be accepted for voting.

2. Open the carrier envelope without defacing the certificate on the carrier envelope and remove the ballot envelope.  [Sec. 87.042(a)]

   a.  A ballot is considered valid even if it is not enclosed in a ballot secrecy envelope; the voter simply loses his/her secrecy of the votes cast.  [Secs. 86.005(d), 87.042(d)]

   b.  If the front of the carrier envelope has "Statement Enclosed" stamped on it, check to see that the statement of residence form is enclosed.  If the applicant's name appears on the list of registered voters with an "S" notation beside it, the applicant is required to complete the statement of residence prior to voting.  If the completed, signed statement is not enclosed, the ballot must be rejected.  (See Section E of this chapter for disposition of rejected early voting ballots.)  [Sec. 87.041(d)]

   NOTE: It is the position of the Office of the Secretary of State that the lack of a statement of residence form included in the envelope of an FPCA voter does not result in a rejected ballot since the FPCA would act as a temporary registration that would prevail the residence address provided on any previous registration applications already on file.

   c.  If the applicant's name appears on the list of registered voters with an "ID" notation beside it, an applicant who possesses an acceptable form of photo identification is required to submit a copy of acceptable photo identification (or, if the voter does not possess, and cannot reasonably obtain an acceptable form of photo ID, a signed Declaration of Reasonable Impediment (see Form 5-22a) and an acceptable form of supporting documentation, or, if the voter has a voter registration certificate with an "E" notation on it, that), along with their mail ballot, unless the voter checks one of the "Exemptions (If Applicable" boxes on Form 5-22a.

3. Place the unopened ballot envelope in a ballot box or other safe container.  [Sec. 87.042(b)]

4. Enter the voter's name on the poll list for early voters voting by mail or list for voters using other mail procedures such as limited ballot.  [Secs. 87.041(c); 102.008; 103.005, 104.006]

   a.  If the voter is an FPCA voter, place a check in the "FPCA" column on the poll list next to the voter's name.  [Sec. 101.004]

   b.  If the voter applied for a limited ballot, place a check in the column marked "Limited Ballot" on the poll list next to the voter's name.  [Sec. 111.008]

   c.  In presidential general elections, if the voter applied for a presidential ballot only, place a check in the column marked "Pres. Ballot" on the poll list next to the voter's name.  [Sec. 111.008]

   d.  If the voter is an overseas citizen voter eligible only for a federal ballot, place a check in the column "Overseas Citizen" on the poll list next to the voter's name.  (Only applicable in *primary* and general elections for state and county officers since these voters are limited to federal offices only.)  [Sec. 111.008]

5. Place the application for the early voting ballot and the envelope that was used to mail the application (if applicable), the carrier envelope, and any accompanying papers back into the jacket envelope.  (If the jacket envelope is to be used in a subsequent election, the early voting clerk may provide another envelope to be used in lieu of the jacket envelope.)   Place any affidavits, statements of residence, and copies of identification in Envelope No. 4 to be delivered to the Voter Registrar.  [Sec. 87.044(a)]

6. At least 10 early voting ballots voted by mail must be qualified before the ballots may be counted.  Ballots may be removed for manual, hand counting at any time when there are at least 10 ballot envelopes containing ballots that have been qualified in the ballot box (or other safe container).  If ballots are to be counted by electronic equipment, the general custodian of election must transmit the accepted by mail ballots to the presiding judge of the central counting station in a locked and sealed ballot box or other container approved by the Secretary of State.

## SECTION F. REJECTED BALLOTS

1. If the application and carrier envelope do not meet the requirements discussed above, the ballot must be rejected and may not be counted.  [Sec. 87.041(d)]

2. Write the word "rejected" on the carrier envelope.  [Sec. 87.041(d)]

3. Write the word "rejected" on the corresponding jacket envelope.  [Sec. 87.041(d)]

4. Place the unopened carrier envelopes containing rejected ballots in the large envelope or container marked "Rejected Early Voting Ballots." [Sec. 87.043(b)]

5. The "Rejected Early Voting Ballot" envelope must be sealed and signed by the presiding judge, and the date and nature of the election must be written on the envelope.  More than one envelope may be used if necessary.  Record the number of rejected ballots, which are placed in the envelope for rejected ballots. [Secs. 87.043(a), (b)]

6. If the ballot was rejected after the carrier envelope was opened, the presiding judge should make a note on the carrier envelope of the reason the carrier envelope was opened and then rejected.

7. Place the application, the envelope used to mail the application to the early voting clerk (if applicable), and any accompanying papers or affidavits in the corresponding jacket envelope.  (If the jacket envelope is to be used in a subsequent election, the early voting clerk may provide another envelope to be used in lieu of the jacket envelope.)  [Sec. 87.044(a)]

   **NOTE**:  The Early Voting Ballot Board judge must deliver written notice to the voter of the reason for the rejection of his or her ballot no later than the 10th day after election day.  [Sec. 87.0431]  If this is not done within 10 days and the ballots have been sent back and placed in a ballot box, a court order will be needed to reopen the ballot box. Please contact our office for sample court orders if needed.

SOS_000449

# CHAPTER 5

## COUNTING HAND-COUNTED PAPER BALLOTS

### SECTION A. ESTABLISHING THE COUNTING TEAMS

1.  There may be more than one counting team to tally the early voting ballots.  [Secs. 81.002, 65.001]

2.  Each counting team must consist of two or more early voting ballot board members.  [Secs. 81.002, 65.001]

    a.  One member will be designated the reader.

    b.  The reader may also keep a tally list.

    c.  If there are only two members on a team, one member will keep two tally lists, and the reader will keep one tally list in addition to reading the ballots.

3.  If there is more than one counting team, after all ballots have been counted, the votes for each candidate and/or proposition must be added together with the tallies of the other counting teams, and the totals must be placed on the return sheet.

4.  A member of a counting team may not be replaced after the vote tallying is begun unless each existing discrepancy among the three tally lists is corrected before the replacement is made.  [Secs. 81.002, 65.006(a)]

5.  If a counting member is replaced, he or she must certify the accuracy of the tally list as of the time he or she was replaced.  [Secs. 81.002, 65.006(b)]

### SECTION B. OPENING THE BALLOT BOX CONTAINING HAND-COUNTED PAPER BALLOTS

> **NOTE**: ELECTRONIC BALLOTS CAST IN PERSON ARE NOT TABULATED BY THE EARLY VOTING BALLOT BOARD, BUT RATHER AT A CENTRAL COUNTING STATION.

1.  Open the double-locked ballot box containing the ballots voted by personal appearance.  [Sec. 87.062]

    > **NOTE**:    The early voting clerk will deliver one key to the ballot box when he or she delivers the ballots. The custodian of the second key will deliver the second key at the time specified by the early voting ballot board's presiding judge.  [Secs. 87.021(1), 87.025]

2.  After the presiding judge opens the ballot box, the judge shall remove any provisional ballots and verify the number of provisional ballots in the ballot box, which is reflected on the Early Voting List of Provisional Voters.

3.  The provisional ballots shall be prepared for delivery to the voter registrar and placed in a closed and sealed box for delivery by the general custodian of election records to the voter registrar.  [T.A.C. Sec. 81.174]

4.  All early voting ballots must be sorted by precinct before they are counted so that a separate total of early voting votes cast in each precinct may be obtained.  [Sec. 87.1231]

5.  For political subdivisions using hand-counted paper ballots, early voting ballots cast by personal appearance may be counted while the ballots cast by mail are being qualified if the early voting ballot board consists of enough members.

6.  When at least 10 early voting ballots cast by mail have been qualified and placed in the ballot box or other container, the ballot envelopes may be removed from the box or container, opened, the ballots removed, the ballot envelopes discarded, and the ballots counted.  This process may be repeated any time there are at least 10 ballot envelopes in the box or container.  [Sec. 87.062(a)]

19

**NOTE**:  If there is more than one ballot in a ballot envelope, neither ballot may be counted.  The presiding judge must make notation on the back of each ballot of the reason the ballot was not counted.  These ballots are then placed with the voted ballots in the early voting ballot box.  [Sec. 65.010(a)(2)]

## SECTION C. RULES GOVERNING THE COUNTING PROCEDURE

1.  The ballots must be counted separately by precinct.  [Sec. 87.1231]

2.  Three original tally lists are required for each precinct.  [Secs. 65.004, 87.1231]  A separate page of the same tally book may be used for each precinct's tally list.  These tally lists should be completely filled out, and include the following:

    --   Names and offices of candidates; and/or

    --   Propositions;

    --   Date;

    --   Precinct number;

    --   Type of election;

    --   Name of presiding judge; and

    --   Signature of the person keeping the tally list.

3.  Before the counting begins, the early voting Ballot Box should be inspected to ensure that it is empty.  It should then be locked and remain locked (except as authorized by the presiding judge), and within view of the counting officials.  [Sec. 65.003(c)]

4.  No marks should be made on any ballot by an election official, except that if a ballot is not counted because the judge determines it was not provided by the early voting clerk or because two or more ballots were folded together, an election official must indicate on the back of the ballot the reason for not counting it.  [Sec. 65.010(c)]

## SECTION D. THE COUNTING PROCEDURE

1.  The reader must read and distinctly announce to the officials keeping the tally lists each name of a candidate or proposition for which there is a vote.  [Sec. 65.005(a)]

2.  The intent of the voter in marking the ballot may be determined by:

    a.  a distinguishing mark adjacent to the name of a candidate or voting choice associated with a proposition;

    b.  an oval, box, or similar marking clearly drawn around the name of a candidate or a voting choice associated with a proposition;

    c.  a line drawn through;

       (1) the names of all candidates in a manner that indicates a preference for the candidate not marked if the names of the candidates not marked do not exceed the number of persons that may be elected to that office;

       (2) a voting choice associated with a proposition in a manner that clearly indicates a preference for the other voting choice associated with the proposition; or

    d.  any other evidence that clearly indicates the intent of the voter in choosing a candidate or deciding on a proposition.  [Sec. 65.009]

SOS_000451

3.  As each vote is read, a tally mark is made by the corresponding name or number on the tally lists.  [Sec. 65.005(a)]

4.  The tally lists should be compared periodically and any errors or discrepancies corrected.  [Sec. 65.005(b)]

5.  When the reader has completely read and announced all the votes on the ballot, he or she deposits the ballot in the locked early voting ballot box.

6.  Any voted ballot that is not counted is also deposited in the box containing the counted ballots.  [Sec. 65.012(b)]

    **NOTE**: A ballot that was not counted should contain a clear notation on the back that it was not counted to avoid an accidental counting during a recount, etc.  [Sec. 65.010(c)]

## SECTION E. RULES FOR COUNTING MANUALLY-CAST OR HAND-COUNTED OPTICAL SCAN BALLOTS

(See generally, Chapter 65 and Secs. 64.003-64.006)

1.  The voter should mark his or her ballot by placing an "X" or other mark in the square beside each candidate, proposition, or party column for which he or she wishes to vote (See Figure 1).  [Sec. 64.003]

| *(Primary Election Ballot)* |
| :---: |
| For Governor |
| □ Candidate A |
| □ Candidate B |
| *☒ Candidate C |

| (General Election Ballot) | | | | |
| :--- | :---: | :---: | :---: | :---: |
| Candidates for | □ PARTY A | □ PARTY B | □ PARTY C | □ Independent □ Write-In |
| Governor | □ Candidate A | □ Candidate B | *☒ Candidate C | |

**Figure 1.  Illustrations of marked ballots.**
**(The asterisks indicate the candidates for whom the ballot is counted.)**

2.  Election officials shall not refuse to count a ballot because the voter marked his or her ballot by scratching out the names of candidates for whom, or the statement of propositions for which, he or she did not want to vote (See Figure 2). [Sec. 65.009(b)]

| Candidates for | □□ PARTY A | □ PARTY B | □□ ~~PARTY C~~ | □□ INDEPENDENT | □WRITE-IN |
| :--- | :--- | :--- | :--- | :--- | :--- |
| First Office | □~~Candidate~~ | □~~Candidate~~ | □~~Candidate~~ | □~~Candidate~~ | □_____ |
| Second Office | * □Candidate | □~~Candidate~~ | | □~~Candidate~~ | □_____ |
| Third Office | * □Candidate | □~~Candidate~~ | | □~~Candidate~~ | □_____ |
| Fourth Office | * □Candidate | □~~Candidate~~ | | | |
| Fifth Office | * □Candidate | | | | |
| Sixth Office | * □Candidate | | | | |
| Seventh Office | * □Candidate | □~~Candidate~~ | | | |

21

SOS_000452

| | | | | | |
|---|---|---|---|---|---|
| Eighth Office | * ☐ Candidate | ☐ ~~Candidate~~ | | ☐ ~~Candidate~~ | |
| Etc. | | | | | |

**Figure 2.  Illustration of the scratch method.**
**(The asterisks indicate the candidates for whom the ballot is counted.)**

3.  **Figure 2.  Illustration of Guideline No. 1.**
**Two party squares marked and individual candidates also marked in one or more columns.**
**(The asterisks indicate the candidates for whom the ballot is counted.)**

| Candidates for | ☐ PARTY A | ☐ PARTY B | ☐ PARTY C | ☐ INDEPENDENT | ☐ WRITE-IN |
|---|---|---|---|---|---|
| First Office | *☒ Candidate | *☒ Candidate | ☐ Candidate | ☐ Candidate | ☐ _____ |
| Second Office | ☐ Candidate | *☒ Candidate | | ☐ Candidate | ☐ _____ |
| Third Office | *☒ Candidate | Candidate | | ☐ Candidate | ☐ _____ |
| Fourth Office | ☐ Candidate | ☐ Candidate | | | |
| Fifth Office | ☐ Candidate | | | | |
| Sixth Office | *☒ Candidate | | | | |
| Seventh Office | ☐ Candidate | ☐ Candidate | | | |
| Eighth Office | ☐ Candidate | *☒ Candidate | | ☐ Candidate | |
| Etc. | | | | | |

Guideline No. 1.  Where more than one candidate square is marked, those votes may not be tallied, and the ballot may be counted only for candidates individually marked, if any. (If there are no candidates individually marked, no portion of the ballot is counted.) [Sec. 65.007(d)]

b.  An entire ballot cannot be voided if the intent of the voter can be determined for any one race or proposition on the ballot. [Sec. 65.009(c)]

c.  <u>An individual vote</u> is not counted in the following situations:

(1)  <u>An individual vote</u> is not counted if the intent of the voter cannot be determined. [Sec. 65.009(c)]

(2)  <u>An individual vote</u> is not counted if the voter marked more than one candidate for one race ("overvote").

In municipal, school board, or other political subdivision elections where it is possible to vote for more than one candidate in the same race, a ballot may not be counted if a voter has marked more candidates than are to be elected. [Sec. 65.011]   A ballot is not invalid if the voter has marked fewer candidates than the number to be elected ("undervote"). [Sec. 65.009]

VOTE FOR NONE, ONE, TWO, OR THREE
☒ Candidate
☒ Candidate

22

☐ Candidate

☐ Candidate

☒ Candidate

☒ Candidate

**Figure 3.  Illustration of overvoting; voter has voted for more candidates than are to be elected.  (No portion of this ballot is counted.)**

VOTE FOR NONE, ONE, TWO, OR THREE

\*☒ Candidate

☐ Candidate

\*☒ Candidate

☐ Candidate

☐ Candidate

☐ Candidate

**Figure 4.  Illustration of undervoting; voter has voted for fewer candidates than are to be elected.  (A vote is counted for each candidate receiving a vote.)**

(3)  <u>An individual vote</u> is not counted in the following write-in voting situations:

    (a)  The voter used a sticker or rubber stamp with the name of a write-in candidate printed or written on it. [Sec. 65.008(b)]

    (b)  *The election is the primary election for the office of precinct chair or county chair*, a November general election, city council officer elections, an independent or common school district trustee election, special elections for state representative and state senator, or other elections where declaration of write-in is required and the voter writes in the name of a person whose name is not on the list of declared write-in candidates.  [Secs. 144.006, 146.031(d), 146.054, 146.055, 146.082, 171.0231 Election Code; Secs. 11.056(c), 11.304, 130.081, 130.0825, Education Code; Sec. 285.131, Health and Safety Code; Secs. 326.0431 & 326.0432, Local Government Code; Secs. 36.059, 49.101, 63.0945, Water Code]

    (c)  *The election is a primary and the voter writes in a vote for a candidate for public office; only write-in votes for declared candidates for party officer of county chair and precinct chair may be counted. [Sec. 172.112]*

    (d)  The election is a runoff election and a voter writes in any candidate's name; no write-in votes may be counted at a runoff election. [Sec. 146.002]

    (e)  The voter voted for the presidential candidate of one party and the vice-presidential candidate of another party or voted for the presidential or vice-presidential candidate of one party and wrote in the name of a candidate he or she desires to vote for instead of that candidate's running mate. [Sec. 192.037]

d.  A <u>ballot</u> is not counted in the following situations:

    (1)  A <u>ballot</u> is not counted if the intent of the voter cannot be determined. [Sec. 65.009] (See Figure 8).

| Candidates for | ☐ PARTY A | ☐ PARTY B | ☐ PARTY C | ☐ INDEPENDENT | ☐ WRITE-IN |
|---|---|---|---|---|---|

SOS_000454

| First Office | ☒ Candidate | ☐ Candidate | ☒ Candidate | ☐ Candidate | ☐ _____ |
| Second Office | ☒ Candidate | ☒ Candidate | | ☐ Candidate | ☐ _____ |
| Third Office | ☐ Candidate | ☒ Candidate | | ☒ Candidate | ☒ *John Smith* |
| Fourth Office | ☒ Candidate | ☒ Candidate | | | |
| Fifth Office | ☒ Candidate | | ☒ Candidate | | |
| Sixth Office | ☐ Candidate | ☒ Candidate | ☒ Candidate | | |
| Seventh Office | ☒ Candidate | ☒ Candidate | | | |
| Eighth Office | ☒ Candidate | ☒ Candidate | | ☐ Candidate | |
| Etc. | | | | | |

**Figure 5.  Illustration of lack of knowledge of intent of voter.**
**(No portion of this ballot is counted.)**

(2) A <u>ballot</u> is not counted if two or more ballots are folded together in a manner that indicates they were folded together when deposited in the ballot box by the voter.  [Sec. 65.010(a)(2)]

(3) A <u>ballot</u> is not counted if the ballot is not numbered or not signed by the judge and the judge determines that this ballot was not provided at the polling place.  However, this ballot may be counted if the judge determines that it was provided at the polling place.  [Secs. 65.010(a)(1), (b)]

(4) A provisional ballot found by an election worker not contained within the provisional voter affidavit envelope.  [T.A.C. §§ 81.172-81.174]

Guideline No. 6.  Where the voter marks a candidate but writes in a declared write-in, the write-in vote is counted.

| Candidates for | ☐  PARTY A | ☐  PARTY B | ☐ PARTY C | ☐ INDEPENDENT | ☐ WRITE-IN |
| First Office | ☐ Candidate | *☒ Candidate | ☐ Candidate | | *  ☐ *John Smith* |
| Second Office | ☐ Candidate | *☒ Candidate | | | ☐ _____ |
| Third Office | ☐ Candidate | * ☐ Candidate | | | ☐ _____ |
| Fourth Office | ☒ Candidate | ☒ Candidate | | | |
| Fifth Office | ☐ Candidate | | | | |
| Sixth Office | ☐ Candidate | | | | |
| Seventh Office | ☐ Candidate | * ☐ Candidate | | | |
| Eighth Office | ☐ Candidate | * ☐ Candidate | | | |
| Etc. | | | | | |

**Figure 6.  Casting a write-in vote.  Illustration of Guideline No. 6.**
**(The asterisks indicate the candidates for whom the ballot is counted.)**

Guideline No. 6.  Where voter fails to properly mark an "X" in the write-in box, the write-in vote may be counted if the presiding judge can determine the intent of the voter. [Secs. 52.070(e), 65.009]

## SECTION F. HANDLING THE ELECTION RETURNS FOR PAPER BALLOTS

1. Making out the returns.

24

SOS_000455

a. After all ballots are counted, the tally list, including separate totals for precincts, must be totaled and signed by the counting officer keeping it.  If more than one officer has kept one particular list, each officer signs the list upon finishing. [Sec. 65.005(c)]

b. Total each tally list to obtain the total number of votes cast for each candidate and/or for or against each proposition. [Sec. 65.005(c)]

c. The presiding judge must make out and sign all copies of the returns. [Sec. 65.014(c)]

d. A separate return sheet must be made for each precinct. [Sec. 87.1231]

e. Election officials should also prepare a summary return sheet to show complete early voting returns for all precincts.

2. Distribution of election returns, poll lists, and tally lists.

a. There must be four copies of the returns for each precinct. [Secs. 65.014(c), 87.1231]

b. There must be three copies of the poll list (or four copies of the combination form). [Sec. 63.003(b)]

c. There must be three originals of the tally list for each precinct. [Secs. 65.004, 87.1231]

3. Five envelopes for distribution of election records are furnished with the supplies.

a. Envelope No. 1 is addressed to the presiding officer of the local canvassing authority. [Sec. 66.003(b)(1)]

-- County judge (general election for state and county officers or election held by the county).

-- *County chair (primary election).*

-- Mayor (municipal election).

-- Presiding officer of the governing board (other elections).

b. Envelope No. 2 is addressed to the general custodian of election records. [Secs. 66.001, 66.003(b)(2)]

-- County clerk or county elections administrator (general election for state and county officers, election held by the county, *primary election*).

-- City clerk or secretary (municipal election).

-- Secretary of the governing board, or if none, the presiding officer of the governing board (other elections).

c. Envelope No. 3 is addressed to the early voting ballot board judge. [Sec. 66.003(b)(3)]

d. Envelope No. 4 is addressed to the Voter Registrar. [Sec. 66.003(b)(4)]

e. *Envelope No. 5 is addressed to the County Chair.*

4. The records of the election must be distributed as follows:

a. Contents of Envelope No. 1. [Sec. 66.022]

(1) The original of the election returns of early voting ballots for each precinct.

(2) One copy of the tally list for each precinct (from each counting team, if applicable).

b. Contents of Envelope No. 2. [Sec. 66.023]

(1) A copy of the returns of the early voting ballots for each precinct and the summary return.

(2) A copy of the tally list for each precinct (from each counting team, if applicable).

25

SOS_000456

(3) The original of the poll list of early voting voters voting by personal appearance and by mail.

(4) The signature roster.

(5) The precinct early voting list

(6) An affidavits completed at the polling place.

(7) Any certificates of appointment of poll watchers.

c. Contents of Envelope No. 3. [Sec. 66.024]

(1) A copy of the returns of early voting ballots for each precinct and the summary return.

(2) A copy of the poll list of early voters voting by personal appearance and by mail.

(3) A copy of the ballot register.

d. Contents of Envelope No. 4. [Sec. 66.0241]

(l) The precinct list of registered voters.

(2) The registration correction list, if any.

(3) Any Statements of Residence completed at the polling place or by mail or copies of identification submitted by mail.

(4) List of "ID" Voters.

(5) Copy of Combination Form, if used instead of individual affidavits.

e. *Contents of Envelope No. 5.*

-- *Original of the Statement of Compensation, in a primary election.*

f. Contents of early voting ballot box. [Sec. 66.025]

(1) The voted ballots.

(2) A copy of the early voting returns for each precinct and the summary return.

(3) A copy of the tally list for each precinct.

(4) A copy of the poll list of early voters voting by personal appearance and by mail.

5. Manner and time of delivery of records.

a. The presiding judge must deliver Envelope No. 1 in person to the presiding officer of the local canvassing authority, or if that officer is unavailable, to the general custodian of election records. [Sec. 66.051(a)]

b. The presiding judge must deliver Envelope No. 2 and Ballot Box No. 3, the rejected ballot envelope, the jacket envelopes containing the carrier envelopes and applications, and all unused supplies in person to the general custodian of election records. [Sec. 66.051(b)]

c. The presiding judge retains Envelope No. 3. [Sec. 66.051(c)]

d. The presiding judge must deliver Envelope No. 4 in person to the voter registrar, or if that officer is unavailable, to the general custodian of election records for later delivery to the voter registrar. [Sec. 66.051(d)]

e. The judge delivers the keys to the Ballot Box to:

SOS_000457

(1) The sheriff for an election ordered by the governor or a county authority or *for a primary election*, unless the sheriff is on the ballot, in which case the keys are delivered to the county judge. If both the sheriff and the county judge are on the ballot, the keys are delivered to the county auditor, or, if there is no county auditor, to a member of the commissioners court, named by the court, who is not on the ballot. [Sec. 66.060(a)(1)]

(2) The chief of police or city marshal for an election ordered by a city authority. [Sec. 66.060(a)(2)]

(3) The constable of the justice precinct in which the governing body's office is located, or if the constable's office is vacant, to the sheriff of the county, for an election ordered by a political subdivision other than a county or city. [Sec. 66.060(a)(3)]

f.   *Envelope No. 5 is delivered to the County Chair.*

g.   Time.

(1) Records must be delivered to the appropriate authority immediately after the returns are completed. [Secs. 66.053(a), 87.063]

(2) If the judge determines that the ballots will not be counted in time to permit delivery of the records by 2:00 a.m. of the day following the election, he or she must notify the general custodian of election records by telephone between midnight of election day and 1:00 a.m. of the following day of:

-- The vote totals tallied for each candidate and for and against each measure at the time of notification.

-- The expected time of finishing the count. [Secs. 66.053(b), 87.063]

(3) In every election, the early voting ballot board records must be delivered to the appropriate authorities not later than 24 hours after the polls close. [Secs. 66.053(c), 87.063]

6. At the time the early voting ballot board records are delivered, supplies shall be returned to the authority responsible for providing such supplies. The presiding judge shall follow the instructions of such authority regarding the storage or return of empty ballot boxes and their keys and other equipment. [Sec. 87.123]

## SECTION G. REPORTING EARLY VOTES

1. The presiding judge of the Board must deliver the counted ballots, the early voting election returns, other early voting election records, and ballot box keys to the appropriate authorities. [Sec. 87.063]

2. The early voting totals must reflect the number of early votes for each candidate or measure by election precinct. [Secs. 67.004(c), 87.1231]

SOS_000458

# CHAPTER 6

## EXAMINING, PREPARING, AND COUNTING VOTED OPTICAL SCAN BALLOTS

### SECTION A. PROCESSING BALLOTS COUNTED AT CENTRAL COUNTING STATION

**NOTE**:    If the ballots are to be delivered to the central counting station before the time the polls are closed on election day, the intervals during the day at which the ballots are to be delivered must be stated in the resolution, order, or other official action authorizing the early deliveries. [Sec. 127.124]

1. The early voting clerk shall deliver the early voting ballots to the central counting station. This should include the container for the early voting electronic system ballots that are to be counted by automatic tabulating equipment at a central counting station.  This shall be done without opening the container.

2. The early voting electronic system ballots counted at a central counting station shall be tabulated separately from the ballots cast at precinct polling places and shall be separately reported on returns. [Sec. 87.103]

3. The general custodian of records shall post a guard to ensure the security of ballot boxes containing voted ballots throughout the period of tabulation at the central counting station. [Sec. 127.1232]

### SECTION B. DELIVERY OF BALLOT BOX.

1. Poll watchers may accompany election officials delivering ballot container after optical scan mail ballots are qualified. [Sec. 33.060]

    If delivery is made in a vehicle, it is sufficient to allow the watchers to follow in a different vehicle and to drive in such a manner that the watchers are able to keep the delivery vehicle in sight.

2. The officers must present the ballot box to the presiding judge of the counting station or his or her designee.

3. The delivering officers must then exchange the ballot box for a signed receipt. [Sec. 127.068(a)]

4. The rejected ballot envelopes, jacket envelopes containing the carrier envelopes, and any unused supplies are returned to the general custodian of election records.

28

SOS_000459

# CHAPTER 7

## RECONVENING EARLY VOTING BALLOT BOARD

The early voting ballot board must reconvene after the election to review and qualify provisional ballots and to qualify ballots that were cast from outside the United States on or before election day and that are received by the sixth day after election day.  The early voting clerk may determine whether or not the committee will need to reconvene after election day to verify signatures or leave that authority with the early voting ballot board. We recommend that this decision be done prior to the election day. If the authority is left with the committee we recommend that the committee coordinates with the board and the early voting clerk for delivery of the jacket envelope ballots by mail. If there is a SVC, the SVC must verify the signatures before the EVBB meets. The SVC would follow the same procedures of when they first convene.

## SECTION A. ESTABLISHING THE EARLY VOTING BALLOT BOARD TO REVIEW PROVISIONAL BALLOTS

The authority appointing the early voting ballot board may determine which members of the board will review and count the provisional ballots.  The entire ballot board is not required to be present.  A minimum of three members of the board is required to conduct the review.

1. Convening Early Voting Ballot Board.

   a. The presiding judge of the early voting ballot board may convene the board as soon as practicable after the voter registrar has completed the review of the provisional ballots, **or if the voter registrar reviews the provisional ballots in "batches" and releases completed "batches" sequentially, the presiding judge may convene the board as soon as practicable after the voter registrar has completed one or more "batches."** The judge must post a notice on the bulletin board used for posting notices of meetings of the governing body ordering the election no later than 24 hours before each time the board is scheduled to meet. The board may also convene while the voter registrar continues the review.

   b. The early voting ballot board cannot convene a final time until after the 6th day after the election due to Voter ID verification. We recommend to review provisional ballots on a rolling basis.

2. Delivery of Materials To Early Voting Ballot Board.

   a. The board should obtain from the authority conducting the election a package of supplies, including the:

      (1) Return sheets;

      (2) Tally sheets; and

      (3) Envelopes for Accepted and Rejected Ballots.

   b. The general custodian will deliver to the early voting ballot board the Lists of Provisional Voters from each precinct.

3. Delivery of Provisional Ballots.

   a. The early voting ballot board presiding judge shall take receipt of (1) the provisional ballots directly from the voter registrar or the custodian of election records and (2) List of List of Provisional Voters Who Presented Proper Identification to Voter Registrar at a time and place to be determined by the presiding judge and; [Sec. 65.0541]

   b. The presiding judge completes the Verification of Provisional Ballots and Serial Numbers Form by signing at the time of receipt that the seal(s) were intact, the serial numbers of the seal(s) were accurately reflected, and the number of provisional ballots received.

29

SOS_000460

4. Review of Provisional Ballots.

The early voting ballot board shall review both the election judge's and the voter registrar's notation on each Provisional Ballot Affidavit Envelope to determine whether or not the ballot should be counted as indicated below.

a. Provisional ballots to be counted:

(1) The ballot shall be counted if the voter failed to submit identification at the polling place, but the voter registrar indicated the voter presented an acceptable form of identification in person at the registrar's office within six calendar days after the date of the election and the voter was otherwise eligible to vote in the election.

(2) The ballot shall be counted if the voter failed to submit identification at the polling place, but the voter registrar indicated on the Provisional Ballot Affidavit Envelope that the voter applied for and received the disability exemption under Section 13.002(i) of the Election Code by the sixth day after election day and the voter was otherwise eligible to vote in the election.

(3) The ballot shall be counted if the voter failed to submit identification at the polling place, but the voter registrar indicated the voter completed one of the two curing affidavits set out in Section 65.054(b)(2)(B) (consistent religious objection to photographs) or 65.054(b)(2)(C) (identification unavailable due to declared natural disaster) no later than the sixth day after election day.

(4) If the election judge indicated that the reason for casting a provisional ballot was that the voter appeared on the list of registered voters as having cast a ballot by mail, and the voter claimed that he never received the mail ballot, or would like to cancel his or her mail ballot, the provisional ballot shall be counted if the voter's mail ballot has not already been received.

(5) If the voter registrar indicated that the provisional voter is registered to vote in the territory holding the election, the ballot shall be counted.

(6) If the voter registrar indicated that the provisional voter is registered to vote, but was erroneously listed in the wrong precinct, the ballot shall be counted.

(7) If the voter was erroneously removed from the voter registration list and is otherwise qualified to vote, the ballot shall be counted.

(8) The voter registrar has information in the office that the voter did complete an application, and the voter is otherwise qualified, the ballot shall be counted.  (For example, evidence that the voter submitted and application at a DPS office or via a volunteer deputy registrar.)

b. Provisional ballots not to be counted:

(1) If the election judge indicated that the voter did not provide an acceptable form of identification and the voter registrar noted that the voter did not (1) present an acceptable form of identification to the voter registrar, (2) complete one of the curing affidavits set out in Section 65.054(b)(2)(B), or (3) apply for and receive a disability exemption by the sixth day after election day, then the ballot shall not be counted.

(2) If the election judge indicated that a voter with a permanent disability exemption to the identification requirements did not submit the registration certificate at the polling place, and the voter registrar notes that the voter failed to (1) present their registration certificate with exemption, (2) present another form of acceptable identification, or (3) apply for and receive a permanent disability exemption by the sixth day after election day, the ballot shall not be counted.

SOS_000461

(3)  If a voter voted provisionally due to having an outstanding mail ballot that has not yet been cancelled, the provisional ballot shall not be counted <u>if the provisional voter has already voted</u>.

(4)  If the voter registrar indicated that the provisional voter is not registered to vote in the territory holding the election or the registration was not effective in time for the election, the ballot shall not be counted.

(5)  If the voter registrar indicated that the provisional voter is registered to vote at a different precinct other than the one the voter voted in, the ballot shall not be counted. This is not the case if the county that is part of the countywide polling place program.

(6)  If the election judge indicated that the voter was on the list of registered voters, but the voter's registered residence address is outside the political subdivision, the ballot shall not be counted.

(7)  If the voter registrar indicated that an incomplete application was received from the provisional voter but the required additional information was not returned, the ballot shall not be counted.

5.  Disposition of Accepted or Rejected Ballots.

   a.  The presiding judge shall indicate the disposition of each ballot on the provisional voter affidavit envelope.

   b.  The presiding judge shall also indicate the disposition of each ballot on the List of Provisional Voters for that precinct.

   c.  The ballots to be counted shall be removed from their provisional ballot envelopes (which are sealed in a secrecy envelope).  After at least 10 secrecy envelopes have been removed from the provisional ballot envelopes and placed in a separate container, the secrecy envelopes are opened, and the ballots are counted under the normal procedure for counting ballots by mail in an election either by hand counting or by central counting station [See Chapters 5 and 6].  The presiding judge of the early voting ballot board or central counting station shall complete a return sheet of the votes and record them by precinct. The Provisional Voter Affidavit Envelopes are placed in the Envelope for Accepted Voters and delivered to the general custodian of election records.

   d.  The Provisional Voter Affidavits Envelopes that are not counted are placed in the Envelope for Rejected Provisional Ballots and delivered to the general custodian of election records.

   e.  Rejected Provisional Ballot Affidavit Envelopes may not be opened except by court order. [T.A.C. Sec.81.176 (14)]

6.  Counting Paper Ballot Provisional Ballots.

   a.  See Chapters 5 and 6 for counting rules.

   b.  Once counted, the provisional ballots shall be re-locked and returned to the custodian of election records. The key shall be delivered to the custodian of the key.

   c.  If a DRE system is used for provisional voting, the entity conducting the election will direct how provisional ballots are processed.

7.  Counting of Provisional Ballots Electronically (optical scan).

   a.  The manager of the central counting station shall decide whether the ballot board shall manually count the ballots with the totals manually added to the computer count for a canvass total or whether the central counting station shall reconvene.

31

SOS_000462

b.  The manager shall send notice to the presiding judge of the ballot board prior to reconvening the board as to whether the ballots are to be counted manually by the board or whether the ballots are to be prepared for delivery to the central counting station.

c.  If the ballots are to be counted by the central counting station, the manager must post notice at least 24 hours prior to reconvening the central counting station.  Section 1.006 does not apply.

d.  A ballot transmittal form must be completed by the presiding judge of the ballot board.  The transmittal form will accompany the accepted provisional ballots.

e.  Prior to the beginning of the count at a central counting station, the manager shall run the required second logic and accuracy test using the same test deck as on Election Day. After the count is complete, the manager shall run the required third logic and accuracy test. If the test is not successful, the count is void.

f.  The central counting manager may add the provisional ballots to the original returns by hand in order to provide one complete return sheet, may enter the provisional ballots directly on the electronic voting system to have one final electronic return sheet or may provide a separate return sheet with just provisional ballot vote totals. The return sheets are placed in Envelope No. 2 and delivered to the custodian of election records.

g.  The counted provisional ballots and other election materials are returned to the custodian of election records and retained for the appropriate preservation period.

   **NOTE**:    Since provisional ballots will probably be processed and counted at the same time as the late early voting by mail ballots, additional procedures relating to late ballots pursuant to T.A.C. Sec. 81.37 may also apply.

8.  Notice to Provisional Voters.

   Not later than the 10th day after the local canvass, the early voting ballot board's presiding judge shall deliver written notice regarding whether the provisional ballot was counted to the provisional voter, and if the ballot was not counted, the reason the ballot was not counted. The presiding judge shall use the information provided on the affidavit to obtain the proper mailing address for the voter and the final resolution of the provisional ballot.

9.  Distribution of Provisional Voting Records.

   a.  Custodian of election records receives:

      (1) Lists of Provisional Voters;

      (2) Return sheets;

      (3) Tally Sheets;

      (4) Envelopes for Accepted and Rejected Provisional Ballot Affidavit Envelopes;

      (5) Counted Ballots; and

      (6) Verification of Provisional Ballots and Serial Numbers.

   b.  Custodian of the key receives the key to the ballot box after it has been locked.

   c.  Presiding officer of the canvassing authority receives:

      (1) Return sheets; and

      (2) Tally Sheets.

SOS_000463

## SECTION B. RECONVENING FOR QUALIFYING LATE EARLY BALLOTS BY MAIL

1. Requirements for ballots to be counted late.

   The Board must reconvene to count mail ballots which were:

   a. arrived by 5pm on the day after election and bears a cancellation mark of a common or contract carrier or courier indicting a time not later than 7pm at the location of the election on election day.

   b. cast from outside the United States;

   c. placed in delivery before the polls closed; and

   d. which arrived not later than the 5th day (non military overseas) and 6th day (military) after election day. [Sec. 86.007(d)]

   > **NOTE**:  If the 5th of 6th day falls on a weekend day, federal or state holiday, this deadline is extended to the next regular business day.

2. When should the board reconvene?

   a. The general rule is on the 9th day after election day or earlier, if the early voting clerk can determine that all ballots cast from outside the United States have been received.  [Sec. 87.125(a)].

   b. For a general election for state and county officers the date moves to the 13th day after election day, or earlier if the early voting clerk can determine that all ballots cast from outside the United States have been received.  [Sec. 87.125(a-1)].

3. The Carrier Envelope must be:

   a. timely submitted;

   b. properly addressed with postage (no postage is required for FPCA carrier envelopes); and

   c. bear a cancellation mark from a postal service before the polls close or a receipt mark from a common or contract carrier indicating the ballot was received before the polls closed.

4. Additional general provisions.

   a. The presiding judge shall notify the early voting clerk as to the time and place where the board will reconvene.  The notice must be made in time so the early voting clerk may give proper notice of the delivery.  The early voting clerk must post notice of delivery of jacket envelopes and any other accompanying papers to the early voting ballot board at least 24 hours prior to the delivery.  The notice shall be posted at the main early voting polling place.  Section 1.006 does not apply.

   b. The presiding judge shall send notice to the custodian of the key and the custodian of election records to redeliver the ballot box containing the counted ballots and the key to the box.  After the late ballots have been counted, the presiding judge shall lock the late counted ballots in the ballot box.  The presiding judge shall deliver the ballot box to the general custodian of election records and the key to the ballot box to the custodian of the key.

   c. Poll watchers are entitled to be present.

   d. If all mail ballots were received by the close of voting on election day or no ballots were received by the appropriate deadline for the election, the early voting clerk shall certify that fact and deliver the certification to the canvassing board before they convene to canvass the votes. [Sec. 87.125(a)]

5. Special provisions for paper ballots.

SOS_000464

a. Once the ballots have been qualified, the presiding judge shall use the regular method of counting ballots by keeping three new tally sheets, counting by precinct, and having at least two members per tally team.  [Ch. 65, Secs. 87.062, 87.103; T.A.C. § 81.37(b)]

b. Once the board has counted all the ballots, an original and three copies of the return sheet shall be prepared.

c. The distribution of the tally sheets and return sheets shall be made in accordance with the Texas Election Code, Subchapter B, Chapter 66.

d. The canvassing board shall add the returns from both early voting return sheets when canvassing the vote.

6. Provisions for Electronic Voting Systems. [T.A.C. §§ 81.37(c), 87.103]

a. The manager of the central counting station shall decide whether the ballot board shall manually count the ballots with the totals manually added to the computer count for a canvass total or whether the central counting station shall reconvene.

b. The manager shall send notice to the presiding judge of the ballot board prior to reconvening the board as to whether the ballots are to be counted manually by the board or whether the ballots are to be prepared for delivery to the central counting station.

c. If the ballots are to be counted by the central counting station, the manager must post notice at least 24 hours prior to reconvening the central counting station.  Section 1.006 does not apply.

d. A ballot transmittal form must be completed by the presiding judge of the ballot board.  The transmittal form will accompany the ballots qualified.

e. The manager must order a 2nd test to be conducted prior to the count.  The test must be successful.

f. Poll watchers are entitled to be present.

g. After the 2nd test is successful, the unofficial election results preserved by electronic means shall be loaded in the tabulating equipment.

h. The tabulation supervisor shall print a status report before the count is to begin.  This status report shall be compared with the report run on election night.  If the two status reports do not match, the electronic ballots must be counted by hand and the total manually added to the returns printed on election night.

i. If the status reports match, the tabulation supervisor may order the count to begin.  The precinct returns from these counts may be included with the original precinct counts.  The tabulation supervisor does not need to keep the precinct-by-precinct results of the late ballots separate from other early voted ballots.

j. Once the ballots have been counted, results shall be prepared in the regular manner.  The manager shall prepare a certification and attach it to the returns, then place both in envelope #1 to be delivered to the presiding officer of the canvassing board indicating that the results supersede any returns printed prior to the reconvening of the central counting station after election day.

k. After the results have been prepared, a successful 3rd test must be performed.

l. The results, ballots, and distribution of ballots and all records shall be made in the regular manner.

SOS_000465

# APPENDIX A

**This chapter will have examples of questions we see arise for a Signature Verification Committee and examples of situations.**

**A. Questions in regards to verifying signatures:**

1. Do signatures have to be identical?

   As part of the Signature Verification Committee their duty is to compare signatures, however we understand that the SVC are not handwriting experts. With that said it is at the discretion of the committee members to use their best judgment and to verify if these signatures are the same. The committee chair or committee members may request from the county clerk, election administrator, or voter registrar ahead of time signatures that are on file from the past six years. This may be provided electronically. The committee members must use their best judgement if the signatures match. The committee must decide by a majority vote that the signatures are of the same person, or not of the same person. The standard should be whether the two signatures could have been made by the same person.

2. When does the committee need to ask for copies of signatures within the past 6 years from the county clerk?

   There is nothing in the Election code that states when this may be done. The committee members may ask for these documents of voters signatures in advance as long as it is reasonable. We recommend that this may be done within ample time to allow for the clerk to prepare all these documents. Electronic copies of these documents may be sent to the committee. Only committee members can request this.

3. What is a majority vote?

   The Election Code does not state what constitutes as a majority of the SVC. Some counties will determine by the full committee, committee members present, or members of the subcommittees. Our recommendation is that the board comes to an agreement of what constitutes as a majority and that the committeee use that throughout the process.

4. May the SVC keep notes?

   The SVC may not disclose the results of the accepted and rejected ballots. With that, the committee may keep notes. Please keep in mind that these notes are subject to public information requests.

5. Are the carrier envelopes and applications public information?

   Yes. A copy of an application for a ballot to be voted by mail is not available for public inspection, except to the voter seeking to verify that the information pertaining to the voter is accurate, until the first business day after the election day of the earliest occurring election for which the application is submitted. Originals of the applications and carrier envelopes are not available for public inspection until those materials are delivered to the general custodian of election records after the election. [86.014]

SOS_000466

6.  Does the SVC separate rejected and accepted ballots?

Yes. The SVC needs to separate the rejected and accepted ballots, because if the SVC has determined that the signatures are not those of the same person, the board may make a determination that the signatures are those of the same person by a majority vote of the board's membership. The EVBB **may not** determine whether a voter's signatures on the carrier envelope certificate and ballot application are those of the same person if the committee has determined that the signatures are those of the same person by the SVC.  [87.027(j)]

7.  When is the earliest the SVC can meet?

The first day the SVC can meet is 20 days before the Election. For November 3 of 2020, the earliest the SVC may meet is October 14, 2020. There is no county population requirement for meeting 20 days before Election Day.

8.  Is there a limit on how many times the SVC may meet?

No. There is no limit on the times the SVC may meet. The clerk shall post notice of the time of each delivery. The notice must remain posted continuously for at least two days before the date of the delivery. [87.027(h)] Postings required by this section shall be made on the bulletin board used for posting notice of meetings of the commissioners court, in an election for which the county election board is established or a primary election, or of the governing body of the political subdivision in other elections. [87.027(k)] The SVC may meet after Election Day to verify signatures of late ballots, however that is to the discretion of the Early Voting Clerk.

9.  May a vacancy be filled if the SVC has conveyed?

Yes. A vacancy on the committee shall be filled by appointment from the original list or from a new list submitted by the appropriate county chair. [87.027(d)]

SOS_000467

---

**SITUATION 1:**
**Voter's Signature does not Match**

---

1. As part of the Signature Verification Committee their duty is to compare signatures, however we understand that the SVC are not handwriting experts. With that said it is at the discretion of the committee members to use their best judgment and to verify if these signatures are the same. The committee chair or committee members may request from the county clerk, election administrator,  or voter registrar ahead of time signatures that are on file from the past six years. This may be provided electronically. The committee members must use their best judgement if the signatures match. The committee must decide by a majority vote that the signatures are of the same person, or not of the same person. The standard should be whether the two signatures could have been made by the same person.

2. A majority vote must be decided by the committee members. For example if there are 5 members you may decide 3 out 5 is a majority, or 4 out of 5. Once decided, the committee needs to be consist with that process. If you have subcommittees they must consist of at least two members each with the chair as the deciding vote.

3. If committee members are unsure whether a signature is that of the voter or not, they should put those aside. The committee may decide if all members will need to look at it as a whole or let the subcommittee's decide amongst themselves. If the committee is unsure of certain signatures, they may request from the county clerk, election administrator or voter registrar copies of signatures that are on file from the past six years.

4. A rejected signature must be decided by a majority vote. If there are subcommittees, the committee needs to decide whether the subcommittees may make a majority vote with the chair as the tie breaker if needed, or if they must put those potential rejected ballots aside and decide as whole which ones should be rejected by a majority.

5. Even if unsure the committee must make a decision whether to accept or reject a signature.

6. If the signature is rejected, the committee must place and separate the rejected and accepted carrier envelopes.

7. Once the committee has accepted and rejected all carrier envelopes, the committee has no authority to review the signatures again once delivered to the general custodian of the election.

---

**SITUATION 2:**
**Voter's Signature is not on the Signature Line for the Carrier Envelope**

---

1. If a voter's signature does not appear on the signature line also known as the certificate of the carrier envelope, but is located elsewhere on the envelope, then the signature is valid. As long as the signature is somewhere on the envelope, then the signature would be valid.

2. What if the carrier envelope is signed by a witness? If the carrier envelope is witnessed, then there would be no signature the committee would compare to. However, that does not invalidate the signature. A carrier envelope may be witnessed, as long as the portion is completed correctly.

37

SOS_000468

3. What if the ABBM is signed by the voter, but their carrier envelope is witnessed? A voter may complete their ABBM and then have their carrier envelope witnessed. An example of this would be if a person breaks their hand (or an injury that would prevent them from signing) after they submit their ABBM, the voter may have a person witness their carrier envelope. The answer would be the same if a person has someone witness their ABBM, however they signed their carrier envelope. This does not invalidate the signature, as long as the witness portion is completed correctly.

4. What if the signature that is signed by the witness on the carrier envelope and the application for ballot by mail do not match? A voter may have someone witness their application for ballot by mail and their carrier envelope. The voter does not have to use the same witness. As long as the witness has included the print of the person that cannot sign, affix their own signature to the document, print their own name, state their residence address or official title, if election officer. The only time a witness may not fill out their information would be if the witness is a relative within the 2nd degree by affinity or 3rd degree by consanguinity OR witness was physically living in the same dwelling as the voter at the time of witnessing the carrier, Sec. 85.0051(a),(e). If the witness fits under one of these categories, then they would need to include that on the carrier.

---

**SITUATION 3:**
**Committee did not Separate Rejected and Accepted Ballots**

---

1. If the committee does not separate the rejected and accepted carrier envelopes, do they have to start all over? No. If the committee cannot determine what carrier envelopes were accepted and rejected, then they would pass all carrier envelopes to the EVBB. There is nothing in the election code that states the SVC may review all carrier envelopes again. However, the EVBB has authority to review rejected signatures and overturn rejected decisions made by the SVC. [87.027(j)] Therefore, our office recommends that since the EVBB has the authority to review rejected signatures by the SVC that the carrier envelopes be forwarded to the EVBB to review. The SVC may still continue to verify signatures after this.

2. Our office recommends that the SVC comes up with a checklist of (1) what a majority is (2) how the committee will accept and reject signatures (3) how the committee will separate rejected and accepted signatures (4) whether the committee will choose to verify signatures electronically or paper, (5) how the committee will verify signatures if they choose to verify by electronic or paper (6) if using electronic verification, then have a number to call if a technical error occurs (7) if there are any signatures that are questionable, know where to separate them (8) know who is going to sign off on the ballot box for delivery to the general custodian of election and (9) set up a time to deliver the box to the custodian of election.

---

**SITUATION 4:**
**Creating a Subcommittee**

---

1. If more than 12 members are appointed to serve on the signature verification committee, the early voting clerk may designate two or more subcommittees of not less than six members. If subcommittees have been designated, a determination under Subsection (i) of TEC is made by a majority of the subcommittee. [87.027(l)]

2. If the SVC has less than 12 members you still may have a subcommittee. Please keep in mind that the subcommittees need to be even. If there is an election where party alignment is indicated on the ballot, you should take that into consideration when making subcommittees. If possible, try to have different party alignment in each subcommittee. This should be done amongst the committee and before the committee begins verifying signatures. Whatever process is decided should be used throughout the whole verification process.

3. If a subcommittee is created the chair should be the tie breaker, therefore the chair should not be part of a subcommittee.

4. If there are subcommittees, the full signature verification committee needs to decide whether the subcommittees have authority to accept or reject ballots using a majority vote of the subcommittee members. Alternative, the whole committee could decide to give the subcommittee only authority to accept ballots and set aside rejected ballots and decide as whole which ones should be rejected by a majority.

SOS_000470

## APPENDIX B

**This appendix will have examples of questions we see arise for an Early Voting Ballot Board and examples of common situations.**

1. **Our entity doesn't have any ballots by mail, do we have to have a ballot board?**

   Yes. All entities must have a ballot board. An early voting ballot board shall be created in each election to process early voting results and provisional ballots from the territory served by the early voting clerk. [87.001] You must always appoint a ballot board because you will not know until Election Day whether there will be provisional ballots that need to be reviewed by the EVBB

2. **May the deputy early voting clerks or election day workers serve on the ballot board?**

   This depends. Our office advises that a deputy early voting clerk may not serve on the EVBB. Duties conflict in scope and time for performance. An election day officer may serve on the EVBB. Please keep in mind that both duties may not be done at the same time.

3. **May the early ballot board members serve on the signature verification committee?**

   Not recommended. Since the ballot board members may override a rejected signature decision by the committee, a ballot board member should not serve on the signature verification committee. [87.027]

4. **Do members from the ballot board have to be from different parties?**

   Yes. The same number of members must be appointed from each list provided by political parties with party affiliation on the ballot. This includes all parties that have nominees on the general election ballot including the Libertarians and Green Party.

5. **What if our county does not have a chair from one of the political parties, what do we do?**

   The party first needs to fill the vacancy of the party chair. Then the chair would be able to provide a list of names. If there is no vacancy filed then the Presiding Judge or County Election Board whichever is applicable should appoint members.

6. **If the EVBB is verifying signatures and not the SVC, when does the board need to ask for copies of signatures within the past 6 years from the county clerk?**

   There is nothing in the Election code that states when this may be done. The board members may ask for these documents of voters signatures in advance as long as it is reasonable. We recommend that this may be done within ample time to allow for the clerk to prepare all these documents. Electronic copies of these documents may be sent to the board.

7. **What is a majority vote?**

40

SOS_000471

The Election Code does not state what constitutes as a majority of the EVBB. Some counties will determine by the full board membership, board members present, or members of the subcommittees. Our recommendation is that the board comes to an agreement of what constitutes as a majority and that the board use that throughout the process.

**8. May the EVBB keep notes?**

The EVBB may not disclose the results of the accepted and rejected ballots. With that, the board may keep notes. Please keep in mind that these notes are subject to public information requests.

**9. Are the carrier envelopes and applications public information?**

Yes. A copy of an application for a ballot to be voted by mail is not available for public inspection, except to the voter seeking to verify that the information pertaining to the voter is accurate, until the first business day after the election day of the earliest occurring election for which the application is submitted. Originals of the applications and carrier envelopes are not available for public inspection until those materials are delivered to the general custodian of election records after the election. [86.014]

**10. Does the EVBB separate rejected and accepted ballots?**

Yes. The EVBB needs to separate the rejected and accepted ballots. If the board did not separate rejected and accepted ballots and cannot determine which ones were accepted or rejected, the board will need to start the process over as they have the authority to do so.

**11. When is the earliest the EVBB can meet?**

This depends on the population of the county. This is the same rule if your entity is in a county with this population and conducting an election jointly. Counties with a population of less than 100,000 may convene at the end of Early Voting by Personal Appearance (3rd day before). Ballots may not be counted until after the polls open on election day. Counties with a population of 100,000 or more may convene on the 8th day before the last day of the period of early voting (12th day before). EVBB may deliver ballots to the central counting station for early counting after the end of the early voting period. Results may not be released until the close of polls on election day.

| | Regular Ballots by Mail | Late Ballots from Outside the US | Provisional Ballots *All Late Ballots* |
|---|---|---|---|
| **Counties** with a population of <u>less</u> than 100,000 | After the end of Early Voting by Personal Appearance (3rd day before) | *Final meeting no earlier than 6th day after election day | **Final meeting no later than the 9th day after election (13th in Nov. 2020). |
| **Counties** with a population of 100,000 or <u>more</u> | The 8th day before the end of early voting (12th day before) | *Final meeting no earlier than 6th day after election day | **Final meeting no later than the 9th day after election (13th in Nov. 2020). |

41

SOS_000472

**12. Is there a limit on how many times the EVBB may meet?**

No. There is no limit on the times the EVBB may meet. The clerk shall post notice each time the ballot board convenes. The clerk shall also post notice of delivery of ballots each time. The notice must remain posted 24 hours before delivery. The prescribed SOS form is AW6-6 (Mail ballots only) & AW6-7 (Mail and paper balloting materials). This notice must be posted at the main early voting polling place at least 24 hours prior to first delivery of ballots. [87.0222] In general elections for state and county officers, the county clerk/elections administrator must notify each county chair at least 24 hours of each delivery.

**13. May a vacancy be filled if EVBB has conveyed?**

Yes. A vacancy on the board shall be filled by appointment such as a vacancy for a presiding judge/alternate judge on Election Day. [32.007]

42

SOS_000473

---

**SITUATION 1:**
**Two Ballots in One Carrier Envelope**

---

**1. If you receive an envelope or package with two or more carrier envelopes from individuals registered at the same address inside may you accept the ballots?**

This depends. If you receive an envelope or package with two carrier envelopes from individuals registered at the same address inside and the carrier envelopes are separated (meaning two different carrier envelopes with two different ballots), then you may accept the ballots pending any other qualifications. If you receive an envelope or package with two or more carrier envelopes from individuals registered at the same address inside and the carrier envelopes are not separated (meaning two or more ballots are in one carrier), then you may not accept both ballots and they would be rejected. This scenario is often found when a couple mails both their ballots in the same carrier envelope.

---

**SITUTATION 2:**
**Carrier Envelope Witness/Assistant Portion Filled out Incorrectly**

---

**1.  If you receive a carrier envelope with the witness/assistant portion filled out incorrectly, do you accept it?**

No. The Witness/Assistance portion must be filled out correctly.

3.  If the Early Voting Clerk receives a timely carrier envelope that does not fully comply with the applicable requirements prescribed by this title, the clerk may deliver the carrier envelope in person or by mail to the voter and may receive, before the deadline, the corrected carrier envelope from the voter, or the clerk may notify the voter of the defect by telephone and advise the voter that the voter may come to the clerk's office in person to correct the defect or cancel the voter's application to vote by mail and vote on election day. If the early voting clerk chooses to do this with one voter, this must be applied uniformly to all carrier envelopes. A poll watcher is entitled to observe the procedures if this is done. This procedure may be used if the early voting clerk can determine that two carrier envelopes are in one

43

SOS_000474

---

**SITUATION 3:**
**Wrong Ballot in Wrong Carrier Envelope Delivered to Board**

---

These different scenarios are for a Primary/May Uniform Date Election. In the situations below this is where the county has contracted with local entities to serve as the local entities' early voting clerk, there is a concern that voters will return both ballots in a single carrier envelope.

**Scenario 1:**

The early voting ballot board ("EVBB") for the May 2, 2020 election is meeting to count ballots. They open a ballot secrecy envelope and there is a primary runoff ballot inside. As the ballot secrecy envelope would have been separated from the carrier envelope, there would be no way to determine which voter's ballot this is.

**Procedure for 1:**

This ballot cannot be counted nor retained in a carrier envelope to be forwarded to the EVBB for the runoff primary election. We suggest that the EVBB presiding judge make a notation on the ballot to explain the situation and why the ballot was not counted. The ballot should be stored in the envelope that contains the other rejected ballots (which will still be in their carrier envelopes). See Texas Election Code Section 87.043. Unfortunately, as there is no way to know which voter submitted this ballot, no notice of rejection can be sent to the voter. We note that there is no authority in the Texas Election Code ("the Code") to store a voted ballot outside of the jacket or carrier envelope. Additionally, while the EVBB qualified the voter's ballot with respect to the May 2, 2020 election, the EVBB did not qualify the ballot with respect to the runoff primary. The May 2, 2020 EVBB board does not have the authority to qualify a ballot for the runoff primary.

**Scenario 2a:**

The EVBB for the May 2, 2020 election reviews a carrier envelope (that is marked to show it is a carrier for the May 2, 2020 election) and determines it will accept the ballot. The EVBB proceeds to open the carrier envelope to remove the ballot secrecy envelope, but the ballot is not in a secrecy envelope. The EVBB is able to immediately determine that the ballot inside the carrier is a primary runoff ballot. In this scenario, the ballot is tied to a particular voter as the carrier envelope is still effectively with the ballot.

**Procedure for 2a:**

We recommend that the EVBB immediately put the ballot back in the carrier envelope and seal the envelope. The EVBB should deliver the carrier envelope to the early voting clerk, who should then place the carrier envelope in the jacket envelope for that voter for the primary runoff, ready to be forwarded to the EVBB for that election at the appropriate time. We also suggest that the presiding judge of the EVBB write a memo to detail what occurred, what actions were taken, and the date those actions were taken. The presiding judge and at least one other member of the EVBB should sign off on the memo. A copy of the memo should be placed in the voter's May 2, 2020 jacket envelope and a copy provided to the early voting clerk for placement in the voter's primary runoff jacket envelope. When the EVBB for the primary runoff election convenes and sees a carrier envelope for the May 2, 2020 election in the jacket envelope for the primary runoff, the memo will serve to inform that EVBB of what has occurred.

44

SOS_000475

**Scenario 2b:**

As a corollary to scenario 2a, as the voter's May 2, 2020 carrier envelope contained the primary runoff ballot, it is possible that the primary runoff carrier contains the May 2, 2020 ballot. Can the early voting clerk take the runoff primary carrier and provide it to the May 2, 2020 EVBB for processing?

**Procedure for Scenario 2b**:

As we can identify the voter under these scenarios, and hopefully contact the voter, the chain of custody can be well established. Regarding the carrier envelope for the runoff, which presumably contains the May 2, 2020 entity ballot, we suggest that the early voting clerk call the voter (if possible) to see if voter can confirm that the May 2, 2020 ballot is probably in the runoff carrier envelope. If the voter confirms that s/he believes the ballot in the primary runoff carrier envelope is in fact the May 2, 2020 ballot (or if the early voting clerk is unable to reach voter), the early voting clerk may forward that carrier envelope to the May 2, 2020 election EVBB to process as normal, if able to do so in a timely manner. We do not recommend that the early voting clerk open the carrier envelope, with or without the voter's permission, to determine whether the carrier actually contains the May 2, 2020 ballot. Only the EVBB should be opening this carrier envelope, once the EVBB has determined that the carrier envelope was properly processed (signature comparison completed, voter eligibility determined, etc.). We do suggest that the early voting clerk write a memo to detail what occurred, what actions were taken, and the date those actions were taken, and place a copy of the memo in the voter's May 2, 2020 jacket envelope. Another copy should be placed in the voter's primary runoff jacket envelope.

**Scenario 3a:**

The EVBB for the May 2, 2020 election qualifies the carrier envelope and finds two ballots, each inside a separate ballot secrecy envelope or neither ballot in a ballot secrecy envelope.

**Procedure for Scenario 3a:**

We feel that under this limited circumstance, the EVBB may open the ballot secrecy envelopes, if used by the voter. (The EVBB has the discretion to open a ballot secrecy envelope in limited circumstances. For example, to see if there is a statement of residence included in the secrecy envelope rather than the carrier envelope. It is also not a requirement for a ballot to be in the secrecy envelope.) If one of the ballots is for the May 2, 2020 election and one is for the primary runoff election, the May 2, 2020 ballot may be counted. The primary runoff ballot cannot be counted. There is no authority for the EVBB to, for example, copy the carrier envelope for the May 2, 2020 election and place the runoff ballot back in the carrier envelope for forwarding to the primary runoff EVBB (as in scenario 2b, above). We suggest that the presiding judge of the EVBB makes a notation on the primary runoff ballot to explain the situation and why the ballot was not counted. The primary runoff ballot should be stored in the envelope that contains the rejected ballots (which will still be in their carrier envelopes). See Section 87.043. We recommend sending this voter a rejection letter, even though this EVBB is not the proper ballot board for the May 26, 2020 primary runoff ballot. As above, we recommend that a memo be written and signed by the EVBB presiding judge to detail actions taken. A copy of the memo should be placed in the voter's May 2, 2020 jacket envelope and a copy provided to the early voting clerk for placement in the voter's primary runoff jacket envelope.

SOS_000476

**Scenario 3b:**

The EVBB for the May 2, 2020 election qualifies the carrier envelope, later discovers that the ballot secrecy envelope contains both a May 2, 2020 ballot and a primary runoff ballot.

**Procedure for 3b:**

As in 3a, the May 2, 2020 ballot may be counted, but the May 26, 2020 primary runoff ballot cannot. No notice can be sent to the voter as the identity of the voter cannot be determined by the time the error (2 ballots in one secrecy envelope) is discovered. Again, we suggest that the presiding judge of the EVBB make a notation on the rejected primary runoff ballot and store it with the rejected May 2, 2020 ballots.

---

**SITUATION 4:**
**Voters Mailing Address on ABBM is Different than Voter Registration Address on File**

---

1. If the grounds for voting by mail is either being 65 or over, or disability, and the applicant has not provided his or her official mailing address as shown on the list of registered voters as the address for mailing his or her ballot, the address provided must be that of a hospital, nursing home, other long term care facility, retirement center, or the address of a relative within the second degree of affinity or third degree of consanguinity with whom the applicant is living. If this information was not provided on the Application for Ballot by Mail, the ballot should be rejected per Section 87.041 of the Code.

| From: | Elections Internet |
|---|---|
| To: | Elections Internet |
| Subject: | MASS EMAIL ADVISORY (CC/EA- 660)- 2020-07 - Ballot By Mail Reminders |
| Date: | Wednesday, February 12, 2020 8:11:22 AM |
| Attachments: | image001.png |
| | ADV2020-07 - Ballot by Mail Reminders.pdf |
| | 5-42 - Notice of Rejected Ballot (rev02.2020).pdf |
| Sensitivity: | Personal |

Dear Election Officials,

Our office has issued Advisory 2020-07 – Ballot by Mail Reminders. In addition to this advisory, we have also released a revised version of our Notice of Rejected Ballot. Both the advisory and the revised form have been posted to our website. I've also attached them to this email for your convenience.

This advisory and other resources are located on our Conducting Elections pages.

**Christina Worrell Adkins**

Legal Director – Elections Division

Office of the Texas Secretary of State

1019 Brazos Street | Rudder Building, 2nd Floor | Austin, Texas 78701

1.800.252.VOTE (8683)

elections@sos.texas.gov | www.sos.texas.gov

**For Voter Related Information, please visit:**



*The information contained in this email is intended to provide advice and assistance in election matters per §31.004 of the Texas Election Code. It is not intended to serve as a legal opinion for any matter. Please review the law yourself, and consult with an attorney when your legal rights are involved.*

SOS_000737

# The State of Texas



Elections Division
P.O. Box 12060
Austin, Texas 78711-2060
www.sos.texas.gov

Phone: 512-463-5650
Fax: 512-475-2811
Dial 7-1-1 For Relay Services
(800) 252-VOTE (8683)

### Ruth R. Hughs
### Secretary of State

### ELECTION ADVISORY
### No. 2020-07

**TO:**       County Clerks/Elections Administrators

**FROM:**    Keith Ingram, Director of Elections

**DATE:**    February 11, 2020

**RE:**       Ballot by Mail Reminders

---

The purpose of this advisory is to remind county election officials of certain steps that must be taken with respect to the processing and rejection of mail ballots.

**Timing of Processing Mail Ballots**

Pursuant to Section 87.0241 of the Texas Election Code, the early voting ballot board may determine whether to accept early voting ballots voted by mail at any time after the ballots are delivered to the board.  (Sec. 87.0241(a)).  The early voting ballot board may begin to count early voting ballots (1) when the polls open on election day; or (2) at the end of the early voting period, in the case of an election conducted by an authority of a county with a population of 100,000 or more or an election conducted jointly with such a county.  (Sec. 87.0241(b)).

**Notice of Rejected Ballot**

Section 87.0431 of the Texas Election Code outlines certain requirements for providing a voter with notice of a rejected mail ballot.  If the early voting ballot board rejects a voter's ballot, the presiding judge of the early voting ballot board must notify the voter in writing of the reason for the rejection.  This notice must be sent to the voter, at the residence address listed on the ballot by mail application, no later than the 10th day after election day.  However, **our office recommends mailing notices of rejected ballots to affected voters as soon as possible**.  For voters who requested a mail ballot with a Federal Postcard Application (FPCA), and receive their balloting materials via e-mail, the presiding judge shall also provide notice of the rejected ballot to the e-mail address to which the ballot was sent.

In accordance with Section 87.0431, the Secretary of State has prescribed a form for this purpose (Notice of Rejected Ballot, AW5-42).  We are issuing a revised version of the Notice of Rejected Ballot along with this advisory. The revised notice includes an additional sentence advising the voter: "If you believe that your mail ballot was rejected in error, please contact your early voting clerk to determine what remedies may be available to you."

SOS_000738

Page 2

**Resolution of Incorrect Determination by Early Voting Ballot Board**

As a reminder, if a county election officer determines that a ballot was incorrectly rejected or accepted by the early voting ballot board before the time set for convening the canvassing authority, the county election officer may petition a district court for injunctive or other relief as the court determines appropriate.  (Sec. 87.127(a)).

In an election ordered by the governor or the county judge, the county election officer must confer with and establish the agreement of the county chair of each political party before petitioning the district court. (Sec. 87.127(b)).

Please contact us at 1-800-252-VOTE (8683) or at elections@sos.texas.gov if you have any questions.

KI:CA

SOS_000739

AW5-42
Prescribed by Secretary of State
Sec. 87.0431, Texas Election Code
2/2020

# NOTICE OF REJECTED BALLOT

This is to serve as notice that your ballot for the _____Election was rejected by the early voting ballot board and was not counted.  If you believe that your mail ballot was rejected in error, please contact your early voting clerk to determine what remedies may be available to you.

Name of Voter _____

VUID Number_____

Reason for Rejection: (Check As Appropriate)

_____ 1) Certificate on carrier envelope was not properly executed.
_____ You failed to sign your signature or make your mark.
_____ The witness failed to indicate on the envelope that you could not make a mark.
_____ The assistant or witness failed to print their name.
_____ The assistant or witness failed to sign their name.
_____ The residence address of the assistant or witness was not given.

_____ 2) It was determined that the signature on the application for ballot by mail and carrier envelope was not signed by the same person.

_____ 3) Application for ballot by mail did not state a legal ground for voting by mail.

_____ 4) Voter registration records indicated you did not have an effective registration for this election.

_____ 5) Address to which ballot was mailed was not outside the county.  Voting early by mail due to expected absence from the county requires balloting materials be mailed to an address outside the county.

_____ 6) The residence address on the statement of residence is not located in the political subdivision conducting the election.

_____ 7) The mailing address on the application for ballot by mail did not match your voter registration address nor did the mailing address match any addresses provided on your statement of residence.  Since you did not indicate on your application for a ballot by mail that you were having your ballot mailed to a hospital, retirement center, long term care facility, nursing home, jail, or a relative, your ballot was rejected.

_____ 8) The statement of residence was not included in the carrier envelope.

_____ 9) No identification was included with your mail ballot.

_____ 10) Other:_____

_____
Signature of Early Voting Ballot Board Judge


_____
Date

SOS_000740

AW5-42
Requerido por la Secretaría de Estado
Sección 87.0431, Código Electoral de Texas
2/2020

## AVISO DE BOLETA RECHAZADA

Esto sirve como aviso de que su boleta para la Elección _____ fue rechazada por la Junta de Votación Anticipada y no fue contada. Si cree que su boleta por correo fue rechazada por error, comuníquese con su secretario de votación anticipada para determinar qué remedios pueden estar disponibles para usted.

Nombre del votante _____

VUID (número único de identificación de votante) _____

La razón del rechazo fue (a continuación indique las razones):

_____  1)  La constancia que aparece en el sobre de envío no se ejecutó en forma apropiada.
          _____ Le falta su firma o marca.
          _____ El testigo no anotó en el sobre que Ud. no podía hacer su marca.
          _____ El asistente o testigo no imprimió su nombre.
          _____ El asistente o testigo no firmó su nombre.
          _____ No se dio la dirección de residencia del asistente o testigo.

_____  2)  Se determinó que la firma en la solicitud de boleta postal y el sobre de envío no estaba firmada por la misma persona.

_____  3)  La solicitud de boleta postal no estableció un fundamento legal para votar por correo.

_____  4)  Las actas del registro electoral indican que en la fecha en que celebraron estas elecciones, usted no estaba inscrito como votante.

_____  5)  La dirección a la cual se envió la boleta no está ubicada fuera de este condado. Votar por anticipado por correo debido a la ausencia esperada del condado requiere que los materiales de votación sean enviados por correo a una dirección fuera del condado.

_____  6)  La dirección de residencia indicada en la declaración de residencia no se encuentra en la subdivisión política que lleva a cabo la elección.

_____  7)  La dirección postal indicada en la solicitud de boleta postal no coincidía con su dirección de registro de votante ni con la dirección postal incluida en su declaración de residencia. Dado que no indicó en su solicitud de boleta postal que estaba teniendo su boleta enviada por correo a un hospital, centro de jubilación, centro de cuidado a largo plazo, hogar de ancianos, cárcel o un pariente, su boleta fue rechazada.

_____  8)  La declaración de residencia no vino incluida en el sobre de envío.

_____  9)  No incluyó ninguna identificación con su boleta por correo.

_____  10)  Otra: _____

_____
Firma del Juez de la Junta de Votación Anticipada


_____
Fecha

SOS_000741

1512

UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF TEXAS

SAN ANTONIO DIVISION

---oOo---

DR. GEORGE RICHARDSON, ROSALIE  )
WEISFELD, AUSTIN JUSTICE        )
COALITION, COALITION OF TEXANS  )
WITH DISABILITIES, MOVE TEXAS   )
CIVIC FUND, LEAGUE OF WOMEN     )
VOTERS OF TEXAS, AND AMERICAN   )
GI FORUM OF TEXAS, INC.,        )
                                )
          Plaintiffs,           )
vs.                             ) No. 5:19-cv-00963
                                )
TEXAS SECRETARY OF STATE,       )
TRUDY HANCOCK, IN HER OFFICIAL  )
CAPACITY AS BRAZOS COUNTY       )
ELECTIONS ADMINISTRATOR AND     )
PERLA LARA IN HER OFFICIAL      )
CAPACITY AS CITY OF MCALLEN,    )
TEXAS SECRETARY,                )
                                )
          Defendants.           )
_____ )


Remote Videotaped Oral Deposition of

LINTON A. MOHAMMED, PhD

30(b)(6)

Monday, May 4th, 2020




Reported by:
KIMBERLEE SCHROEDER, CSR, RPR, CCRR
TX CSR 10925 - CA CSR 11414

```
 1                    APPEARANCES

 2          (All Appearances Via Remote Videoconference)

 3   For the Plaintiffs:

 4      TEXAS CIVIL RIGHTS PROJECT
        By:  HANI MIRZA
 5           RYAN COX
             ZACHARY DOLLING
 6           Attorneys at Law
        1405 Montopolis Drive
 7      Austin, Texas 78741
        Ph:  512-474-5073
 8      E-mail:  hani@texascivilrightsproject.org
                 ryan@texascivilrightsproject.org
 9               zachary@texascivilrightsproject.org

10   - and -

11      WILLKIE, FARR & GALLAGHER, LLP
        By:  JOANNA SURIANI
12           Attorney at Law
        1875 K Street NW
13      Washington, D.C. 20006
        Ph:  202-303-1193
14      E-mail:  jsuriani@willkie.com

15      By:  SAMUEL KALAR
             Attorney at Law
16      787 Seventh Avenue
        New York, New York 10019
17      Ph:  212-728-8724
        E-mail:  skalar@willkie.com

18

19   For the Defendant Texas Secretary of State:

20      OFFICE OF THE ATTORNEY GENERAL OF TEXAS
        By:  ANNE MARIE MACKIN
21           Assistant Attorney General
        General Litigation Division
22      P.O. Box 12548, Capitol Station
        Austin, Texas 78711
23      Ph:  512-463-2798
        E-mail:  anna.mackin@oag.texas.gov

24
     (Continued)
25
```

Linton Mohammed - 5/4/2020

3

1                    APPEARANCES (Continued)

2  For the Defendant Perla Lara in Her Official Capacity as
   City of McAllen, Texas Secretary:
3
       CITY OF MCALLEN
4      By:  ISAAC JOEL TAWIL
            AUSTIN STEVENSON
5           Attorneys at Law
       1300 W Houston Ave
6      McAllen, Texas 78501-5002
       Ph:  956-681-1090
7      E-mail:  itawil@mcallen.net
                astevenson@mcallen.net
8

9  Also Present:

10     AMELIA CHRISTOPHER, Videographer

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    I N D E X

2   DEPOSITION OF LINTON A. MOHAMMED, PhD

3   EXAMINATION                                    PAGE

4   BY MS. MACKIN                                    8
    BY MR. MIRZA                                    91
5
    ERRATA AND SIGNATURE                            94
6   REPORTER'S CERTIFICATION                        96
                       ---oOo---
7
                      EXHIBITS
8
    DEFENDANTS'                                    PAGE
9
    Exhibit 1   Defendant Secretary of State's     10
10              Notice of Oral Deposition of Dr.
                Linton A. Mohammed
11
    Exhibit 2   Declaration of Dr. Linton A.        11
12              Mohammed

13  Exhibit 3   Honors Theses, "Form-Blindness and  79
                Its Implications:  A Verification
14              Study," Meredith G. Moody

15                     ---oOo---

16

17

18

19

20

21

22

23

24

25

1            BE IT REMEMBERED that on Monday, May 4, 2020,

2  commencing at the hour of 11:17 a.m., via remote

3  videoconferencing, before me, KIMBERLEE SCHROEDER, a

4  Certified Shorthand Reporter in and for the State of

5  Texas and the State of California, duly authorized to

6  administer oaths pursuant to Section 30(c) of the

7  Federal Rules of Civil Procedure and the Texas Rules of

8  Civil Procedure, personally appeared.

9                 LINTON A. MOHAMMED, PhD,

10  called as a witness herein by the Defendants, who,

11  having been duly sworn, was thereupon examined as

12  hereinafter set forth.

13

14

15

16

17

18

19

20

21

22

23

24

25

1          P R O C E E D I N G S

2  Monday, May 4th, 2020                    11:17 a.m.

3                    ---oOo---

4          THE REPORTER:  This is the deposition of

5  Linton Mohammed in the matter of Dr. George Richardson,

6  Rosalie Weisfeld, Austin Justice Coalition, Coalition of

7  Texans with Disabilities, Move Texas Civic Fund, League

8  of Women Voters of Texas, and American GI Forum of

9  Texas, Inc. v. Texas Secretary of State, Trudy Hancock,

10 in her official capacity as Brazos County Elections

11 Administrator and Perla Lara in her official capacity as

12 City of McAllen, Texas Secretary.

13         We are appearing via remote videoconferencing

14 due to the COVID-19 Pandemic.  We are on the record at

15 11:17 a.m.  My name is Kimberlee Schroeder, and I am the

16 Certified Shorthand Reporter, reporting for Integrity

17 Legal Support Solutions, P.O. Box 245, Manchaca, Texas

18 78652.

19         Would all persons present please introduce

20 themselves for the record?

21         MS. MACKIN:  This is Anna Mackin with the

22 Texas Attorney General's Office, and I represent the

23 defendant Texas Secretary of State.

24         MR. MIRZA:  This is Hani Mirza with the Texas

25 Civil Rights Project, and I represent the plaintiffs in

1    in this case.

2              MR. COX:  Ryan Cox, also on behalf of

3    plaintiffs.

4              MR. KALAR:  This is Samuel Kalar of the law

5    firm Willkie, Farr & Gallagher, also on behalf of the

6    plaintiffs.

7              MS. SURIANI:  This is JoAnna Suriani, also of

8    the law firm Willkie, Farr & Gallagher, on behalf of

9    plaintiffs.

10             MR. TAWIL:  This is Isaac Tawil representing

11   Perla Lara in her individual capacity as Secretary of

12   the City of McAllen.

13             MR. MIRZA:  I don't think there's anybody else

14   on plaintiffs' side.

15             THE REPORTER:  Mr. Dolling or...

16             Should I just swear in the witness if they're

17   shy?

18             MR. MIRZA:  Yes.

19             THE REPORTER:  Okay.  Sir, would you raise

20   your right hand to be sworn?

21             THE WITNESS:  Yes.

22                  LINTON A. MOHAMMED, PhD,

23   after being first duly sworn remotely by the Certified

24   Shorthand Reporter, was examined and testified as

25   follows:

Linton Mohammed - 5/4/2020

```
 1                    EXAMINATION
 2   BY MS. MACKIN:
 3        Q.   Good morning.
 4             Will you please speak and spell your name one
 5   more time for the record?
 6        A.   Yes.  My name is Linton Mohammed, L-i-n-t-o-n,
 7   M-o-h-a-m-m-e-d.
 8        Q.   Thank you for that.
 9             My name is Anna Mackin.  I represent the Texas
10   Secretary of State in her official capacity, a defendant
11   in this lawsuit.  I'm going to be asking you some
12   questions today.
13        A.   Sure.
14        Q.   I understand that you have been deposed
15   several times before; is that right?
16        A.   That's correct.
17        Q.   Okay.  So have you been deposed by video
18   conference before?
19        A.   Yes, I have.
20        Q.   Oh, okay.  Then these ground rules should be
21   very quick.  Just a couple of reminders.  Try to give a
22   yes/no answer to my question so that it comes across
23   clearly in the transcript, and I will endeavor to allow
24   you to finish an answer before I ask you another
25   question.  And if you'll please also try to let me
```

1    finish my question before you answer.

2            Is that fair?

3        A.    Yes.   Thank you.

4        Q.    And if you don't understand one of my

5    questions, will you tell me so that I can rephrase it?

6        A.    Yes.

7        Q.    Thank you for that.

8            And is there any reason you might not be able

9    to answer my questions honestly, completely and

10   accurately today?

11       A.    No.

12       Q.    Now that the deposition is underway, please

13   tell me if you communicate with anyone, including your

14   counsel, about the substance of your testimony in this

15   case before I conclude the deposition.   Okay?

16       A.    Okay.

17       Q.    And do you have any documents in front of you?

18       A.    No.

19       Q.    I'll be showing you some documents today.

20   Since we are situated remotely, please do let me know if

21   you are referring to any document, website, text message

22   or other source of information to answer my question.

23   Okay?

24       A.    Okay.

25       Q.    So to show you documents, I propose that I

 1  share them in the chat box in this Zoom platform, if

 2  that is okay with you and your counsel.  That way, you

 3  can scroll through as-needed, zoom in, zoom out,

 4  et cetera.

 5          I will go ahead and practice by showing you

 6  Exhibit 1 just to make sure that you are able to access

 7  it.

 8          (Exhibit No. 1 was marked for identification.)

 9          MS. MACKIN:  Q.  Please let me know if that

10  document came up, and you are able to open it up.

11      A.  Yes, it's open.

12      Q.  Thank you.

13          Have you seen that document before?

14      A.  Yes.

15      Q.  What is it?

16      A.  It is a notice of my deposition in this

17  matter.

18      Q.  Okay.  So you understand that you are here

19  today pursuant to this notice?

20      A.  Yes.

21      Q.  What did you do to prepare for today's

22  deposition, Dr. Mohammed?

23      A.  I reviewed my declaration, and I had a

24  pre-deposition meeting with some attorneys from the

25  plaintiffs two days ago -- two days ago.

1      Q.   And how long did you meet with the plaintiffs'

2  attorneys?

3      A.   About 15 minutes.

4      Q.   Did you review any documents with them?

5      A.   No.

6      Q.   All right.  I'm going to share what will be

7  Exhibit 2 to this deposition, which is your expert

8  witness report in this case.

9           (Exhibit No. 2 was marked for identification.)

10           MS. MACKIN:  Q.  Please let me know if you're

11  able to access that document.

12      A.   Yes, I have it.

13      Q.   All right.  Thank you.

14           And do you recognize this document?

15      A.   Yes.  This is the declaration I prepared in

16  this case.

17      Q.   Okay.  And that is your signature down on

18  page 30, it looks like?

19      A.   Yes.

20      Q.   Okay.  And does that signature indicate that

21  you reviewed this report and that its contents reflect

22  the expert opinion that the plaintiffs have retained you

23  to provide in this case?

24      A.   Yes.

25      Q.   Okay.  And there are three exhibits to your

1    report; correct?

2        A.   Yes.  There should be a copy of my CV, a

3    testimony listing, and documents in Dr. Richardson's

4    ballots.

5        Q.   Okay.  So Exhibit A, your CV, is that a

6    complete and accurate statement of your qualifications

7    and experience?

8        A.   Yes.

9        Q.   And Exhibit B, your "Trial and Deposition

10   Record from 2013 to the present," is that a complete and

11   accurate statement of the testimony you have given in

12   court since 2013?

13       A.   Yes.

14       Q.   May I ask, what is the significance of 2013?

15   Why does this report begin in 2013?  I think I have an

16   idea based on your history, but I'll let you tell me.

17       A.   Right.  The Rule 26 listing says five years,

18   yeah.

19       Q.   Okay.  On Exhibit C, why is Exhibit C included

20   in your report?

21       A.   Two signatures from Exhibit C, there are two

22   images of two documents in Exhibit C, and images from

23   two of those documents are included as part of the

24   declaration.

25       Q.   Okay.  And did you -- okay.  That's all I have

13

```
 1    for now.  All right.  And so I'm just going to walk
 2    through your report.
 3         A.   Okay.
 4         Q.   And ask you a couple of questions about it.
 5              Starting in the first paragraph on the second
 6    page, it says that you've been retained to "...opine on
 7    the reliability of the procedures and techniques of the
 8    Texas signature verification process for mail-in ballot
 9    applications and mail-in ballot return envelopes as set
10    forth in Texas elections laws and guidance."
11              Did I read that correctly?
12         A.   That's correct, yes.
13         Q.   And that is the subject on which you were
14    retained to opine in this case?
15         A.   Yes.
16         Q.   Were you retained to provide any other type of
17    expert opinion in this case?
18         A.   No.
19         Q.   You were not retained to give the Court any
20    legal opinions; were you?
21         A.   No.
22         Q.   Okay.  I would like to direct you now to
23    section I of your report titled "Qualifications."
24    Paragraphs 2 through 12 list your qualifications as a
25    forensic document examiner; is that correct?
```

1    A.   That's correct, yes.

2    Q.   And so during this deposition, I may use the

3  abbreviation "FDE."  When I'm doing that, I mean

4  forensic document examiner, unless I tell you otherwise.

5  If you use that acronym, I will understand you to mean

6  forensic document examiner unless you tell me otherwise.

7  Okay?

8    A.   Okay.

9    Q.   You have quite a few qualifications and lots

10  of experience.  Other than the qualifications and

11  experience listed in section I of your report, are there

12  any other qualifications, education or experience on

13  which you based the expert opinions in this report?

14    A.   No.

15    Q.   Moving on to paragraph 7 -- I'm sorry, yes,

16  paragraph 7.  You mention you published 16 articles --

17    A.   Yes.

18    Q.   -- on signature and handwriting examination.

19    A.   Yes.

20    Q.   Did any of those articles involve election

21  administration?

22    A.   No.

23    Q.   Did any of those articles consider the ability

24  of laypeople to determine that signatures were not made

25  by the same person?

```
 1        A.    No.

 2        Q.    Then moving on to the next page, paragraph 8,

 3   mentions two books, one that you authored and one that

 4   you coauthored.  And they are cited down in footnotes 1

 5   and 2; correct?

 6        A.    That's correct.

 7        Q.    Do either of those books discuss election

 8   administration?

 9        A.    No.

10        Q.    Do either of these books discuss the ability

11   of laypeople to determine that signatures were not made

12   by the same person?

13        A.    Yes.  In the Forensic Examination of

14   Signatures, that would have been discussed in that book.

15        Q.    Okay.  At a high level --

16        A.    I'm sorry, I didn't get that.

17        Q.    I didn't finish my question.  My fault, not

18   yours.

19        A.    Oh, okay.

20        Q.    At a high level, what did Forensic Examination

21   of Signatures say about the ability of laypeople to

22   determine that signatures were not made by the same

23   person?

24        A.    It would have summarized research done by

25   other researchers into the -- into comparing the ability
```

 1   of laypersons and FDEs, and those research that was

 2   discussed is actually referenced in this declaration in

 3   other chapter (technical difficulties) --

 4           THE REPORTER:  Ms. Mackin, do you want me to

 5   go off the record?

 6           MS. MACKIN:  Sure.  We might as well just for

 7   a second until he comes back.

 8           (Off the record 11:30 a.m. - 11:37 a.m.)

 9           MS. MACKIN:  Back on.

10           (Record read.)

11           THE WITNESS:  That's fine.  I will start over.

12           Yeah, the book Forensic Examination of

13   Signatures discusses briefly the comparability of

14   laypersons and FDEs and signature comparisons.  That

15   research is actually detailed later on in this

16   declaration researched by Dr. Kam and his group,

17   Dr. Found and his group, and Dr. Merlino and her group.

18           MS. MACKIN:  Q.  All right.  Thank you for

19   that.

20           Moving down to paragraph 9, you mentioned that

21   you received the Ordway Hilton award "In Recognition of

22   Outstanding Forensic Contributions to Forensic Document

23   Examination."

24       A.  Yes.

25       Q.  I noticed the name Ordway Hilton in some of

1  the sources that you cited.  Can you briefly tell me

2  who, who is Mr. Hilton?

3      A.   Yes.  Ordway Hilton was one of the foremost

4  document examiners or FDEs of his time.  He wrote at

5  least two books on document examination.  One of the

6  texts, Scientific Examination of Questioned Documents,

7  is considered to be one of the major texts.

8          Mr. Hilton was also a founding member of the

9  American Academy of Forensic Sciences, and he's also a

10  past president of the American Academy of Forensic

11  Sciences.  So the Questioned Documents Section award was

12  named in his honor.

13      Q.   When was he active?

14      A.   Probably from the '50s until maybe the early

15  '70s.

16      Q.   Would it be fair to say that the field of

17  forensic document examination has developed in some

18  respects since Mr. Hilton's time?

19      A.   Yes.  It certainly has, but the principles in

20  his book remain the same.

21      Q.   I would like to move down to paragraph 10

22  where you mentioned that you testified as an expert

23  witness in depositions.

24      A.   Yes.

25      Q.   Have you testified in any case involving

```
 1   election administration?

 2        A.   Yes, I have.

 3        Q.   On how many times?

 4        A.   I've testified in one trial in Missouri last

 5   year and maybe four or five depositions.

 6        Q.   And then paragraph 11, you talk about your PhD

 7   and your thesis.

 8        A.   Yes.

 9        Q.   Your thesis involves signature examination; is

10   that right?

11        A.   That's correct.

12        Q.   Did it study the ability of laypeople to

13   determine that signatures were not made by the same

14   person?

15        A.   No.  It basically explored the -- what was

16   happening was people actually wrote disguised signatures

17   and forged signatures and genuine signatures.  It didn't

18   talk -- there was no testing between laypeople and

19   experts.

20        Q.   Turning away from the report for just a

21   moment, have you had any prior dealings with the counsel

22   in this case?

23        A.   No.

24        Q.   Have you had any prior dealings with any of

25   the plaintiffs in this case?
```

Linton Mohammed - 5/4/2020

```
 1        A.    No.

 2        Q.    And has your expert opinion ever been excluded

 3   from any court case?

 4        A.    No.

 5        Q.    Are your fees in this case contingent in any

 6   respects?

 7        A.    No.

 8        Q.    Have you ever, to your knowledge, assisted in

 9   the preparation of an amicus brief?

10        A.    No.

11        Q.    Are you prepared to give your final expert

12   opinions on the topics in your report?

13        A.    Yes.

14        Q.    Do you plan to do any additional work before

15   providing testimony in court about your expert opinions

16   in this case?

17        A.    Only if I'm asked to by counsel.

18        Q.    Okay.  Have you been promised any additional

19   information about this case that has not yet been

20   provided?

21        A.    No.

22        Q.    Have you been asked to make any assumptions in

23   preparing your report?

24        A.    No.

25        Q.    Have you done all the work necessary to reach
```

1   the conclusions in your report?

2        A.   Yes.

3        Q.   And does your written report, the declaration

4   that is Exhibit 2, contain all the opinions that you

5   plan to give at trial?

6        A.   Yes.

7        Q.   Have you provided all the reasons for those

8   opinions in your report?

9        A.   Yes.

10       Q.   Were there any limitations placed on your work

11  in this case?

12       A.   No.

13       Q.   How much time have you spent on this matter?

14       A.   Can I check my case files?

15       Q.   Oh, sure.

16       A.   Thank you.

17            About 45 hours.

18       Q.   Okay.  Thank you for tracking down that

19  information for me.

20            How was your report prepared in this matter?

21       A.   I was provided -- I was provided information

22  on the voting statutes in Texas, and I reviewed those

23  statutes and then applied principles of signature

24  examination to those statutes to see whether the people

25  who conducted the signature verifications, how they

1  matched up against the training that the FDE receives.

2      Q.   And did you draft your report?  Were you the

3  primary writer, or did someone else assist you in

4  writing it?

5      A.   No, I was the primary -- I'm sorry, was there

6  an objection?

7           MR. MIRZA:  No.

8           THE WITNESS:  No, okay.

9           Yes, I was the primary drafter.  I did receive

10 some assistance from some of the plaintiffs' attorneys

11 in terms of the way -- the way the statutes should

12 actually be written in the report.

13          MS. MACKIN:  Q.  Okay.  So the discussions of

14 the Texas election laws at issue, you received some

15 assistance from counsel in drafting that portion of the

16 report; is that right?

17     A.   Yes, yes.  More -- I guess I would say more of

18 the legal terminology and those statutes.

19     Q.   Okay.  And did you receive any other

20 assistance in drafting your expert report in this

21 matter?

22     A.   No, no.

23     Q.   All right.  So moving ahead to paragraph 13

24 under section II, "Background," you note that in

25 preparing your report, you reviewed the plaintiffs'

 1  **original complaint in this case, the State of Texas**

 2  **Early Voting Ballot Board Handbook for Election Judges**

 3  **and Clerks, Updated January 2018, and relevant academic**

 4  **literature; is that right?**

 5      A.   That's correct.

 6      **Q.   Is that a complete list of what you reviewed**

 7  **in preparing your report?**

 8      A.   Yes.

 9      **Q.   What relevant academic literature did you**

10  **review?**

11      A.   The research with regard to the ability of

12  laypersons and experts to examine and compare

13  signatures, and error rates that was found in those

14  studies.  I reviewed others' material on form-blindness

15  and lay individuals and experts and testing for

16  form-blindness.  And I reviewed some of the major texts

17  and document examination that discussed natural

18  variations in signature -- in signatures and possible

19  causes of dissimilarities and signatures that have to be

20  assessed by the FDE.

21      **Q.   Is all of the academic literature that you**

22  **reviewed cited in your report?**

23      A.   Yes.

24      **Q.   How did you determine what academic literature**

25  **was relevant to prepare your report?**

1      A.   As I said, my PhD thesis was on examination of

2  signatures, so I had fairly comprehensive knowledge of

3  the research material on signatures that has been

4  published and presented.  So I used that to base my --

5  to support my opinions.

6      Q.   **Did you review all of the academic literature**

7  **that's relevant to the topics in your report?**

8      A.   I think so, yes.

9      Q.   **Okay.  And how did you obtain the Early Voting**

10  **Ballot Board Handbook For Election Judges and Clerks,**

11  **Updated 2018?**

12      A.   That would have been sent to me by plaintiffs'

13  counsel.

14      Q.   **Are you aware that the Texas Secretary of**

15  **State updated the Early Voting Ballot Board Handbook for**

16  **Election Judges and Clerks in January of 2020 --**

17      A.   I think you dropped off just at the end there.

18      Q.   **Sure.**

19           **Are you aware that the Texas Secretary of**

20  **State updated the Early Voting Ballot Board Handbook for**

21  **Election Judges and Clerks in January of 2020?**

22      A.   No.

23      Q.   **In preparing your report, did you study the**

24  **process for reviewing signatures on mail-in ballots in**

25  **any particular Texas county?**

1      A.    Just the ones that were listed in the Early

2  Voting -- in the EVBB Handbook.  And also I had

3  testified -- in fact, I was deposed last year in another

4  case in Austin, Texas, for a county.  I don't recall the

5  name of the county, though.

6      **Q.    Okay.  I just want to make sure that I**

7  **understand your answer.  You talked about the Early**

8  **Voting Ballot Board Handbook.**

9      A.    Yes.

10      **Q.    And I'm wondering, when you say that -- did**

11  **that handbook discuss the process for reviewing**

12  **signatures on mail-in ballots in any particular Texas**

13  **county, or did it discuss the process just generally?**

14      A.    It discussed the process -- in some counties,

15  the -- the -- there is an Early Voting Ballot Board, and

16  some of the counties, there's a Signature Verification

17  Committee.  That is one of the differences in the -- in

18  the Election Handbook.

19          But the process for signature comparison or

20  verification that were described was the same for both,

21  both entities.

22      **Q.    Did you visit any Texas county and observe the**

23  **signature verification process?**

24      A.    No, I have not.

25      **Q.    Have you had any communications with any local**

1  election officials to assist you in preparing your

2  report?

3      A.   No.

4      Q.   Other than the items that we've already

5  discussed, did the plaintiffs' counsel provide you with

6  any additional information that you considered in

7  preparing your report?

8      A.   No.

9      Q.   Is there any other way that we haven't talked

10  about that you learned about the process for verifying

11  signatures on mail-in ballots in Texas?

12      A.   No.  I just went -- went by -- by the -- the

13  matters described in the -- in the documents we've

14  spoken about.

15      Q.   Okay.  Have you ever been to Texas?

16      A.   Yes.

17      Q.   How recently?

18      A.   Last year.  I was in Austin for a deposition.

19      Q.   Oh.  Well, we hope to have you back sometime

20  after the pandemic is over.

21      A.   Yes.  I look forward to that.

22      Q.   Okay.  And so just to be clear, you have never

23  observed any Early Voting Ballot Board in Texas

24  conducting signature verification?

25      A.   That is correct.

Linton Mohammed - 5/4/2020

26

1    Q.    And you have never observed any signature

2  verification county in Texas conducting signature

3  verification?

4    A.    That is correct.

5    Q.    So it appears from your report that you

6  reviewed Dr. George Richardson's mail-in ballot

7  application and carrier envelope; is that right?

8    A.    Yes, images of them.

9    Q.    Images, sure.

10        And when did you review those images?

11    A.    That would have been about the time that the

12  report -- the declaration was written.  Maybe a week

13  before.

14    Q.    So January or February of 2020?

15    A.    Yes.

16    Q.    And how long did you spend reviewing the

17  images of Dr. George Richardson's mail-in ballot

18  application and carrier envelope?

19    A.    Probably about five minutes.

20    Q.    What did you examine?

21    A.    I looked at the images on the -- on both

22  documents and just did a quick comparison.

23    Q.    Did you use any particular tools in doing

24  that?

25    A.    No.  If you're looking at images, if you use a

 1  microscope on -- on an image printed with toner, all you

 2  see are pretty much bigger toner particles.  It doesn't

 3  really help very much.  It's called MT magnification.

 4  So --

 5            THE REPORTER:  I'm sorry, I'm sorry.

 6  Doctor --

 7            THE WITNESS:  It's called MT magnification.

 8  Okay, I'll slow down.

 9            (Discussion off the record for Reporter

10  clarification.)

11            THE WITNESS:  No, I did not -- if you are

12  looking at printed images, if you use a microscope, all

13  you see are pretty much bigger toner particles, and it's

14  a method called MT -- MT magnification.  So I just

15  enlarged the images on my screen, and that was it.

16            MS. MACKIN:  Q.  So other than Dr. Richardson,

17  did you review the signatures on any other Texas mail-in

18  ballots or carrier envelopes in preparing your report?

19       A.   I don't believe so.

20       **Q.   Did you consider any information about the**

21  **plaintiffs that we haven't already discussed in reaching**

22  **the conclusions in your report?**

23       A.   I think I would ask you to explain that

24  question in some more detail.

25       **Q.   Okay.  I guess I'm trying to understand kind**

28

1   **of everything that went into the pot when you prepared**

2   **your report.  So if there is any other information about**

3   **the plaintiffs that we haven't already talked about that**

4   **you considered.**

5        A.   No.  The only thing I had asked plaintiffs'

6   counsel was whether Dr. Richardson was a medical doctor.

7        Q.   **And why did you want to know that?**

8        A.   When I looked at both signatures, the first

9   signature, I guess on the mail-in ballot or the

10  application, was a very quickly written, what I call a

11  mixed-style signature.

12            The second signature on the ballot itself was

13  a more, what I call a more readable text-based styled

14  signature.  So I inquired if Dr. Richardson was a

15  medical doctor because the first signature would have

16  been more what I'm used to seeing from medical doctors

17  on prescriptions:  a very hastily written, scribbled

18  signature.  Whereas, the second signature was more --

19  was a signature of what I would term better quality.

20       Q.   **And why was that relevant?**

21       A.   Because it would give an explanation as to why

22  Dr. Richardson had two different signature styles.  One

23  was his, what I would call his prescription-style

24  signature.  And the other one was a more formal

25  signature.

1    Q.   In your expert opinion as a forensic document

2 examiner, were the two signatures made by Dr. Richardson

3 a match?

4    A.   No.  I would say they were pictorially

5 dissimilar.

6    Q.   Okay.

7         MR. MIRZA:  I just want to note for the record

8 I put in an objection.

9         Mr. Mohammed, just wait a couple of seconds so

10 I can add my objections in.

11        THE WITNESS:  Okay.  Sure.

12        MS. MACKIN:  Q.  On your report, Dr. Mohammed,

13 it mentions that you reviewed the plaintiffs' complaint

14 in this case; correct?

15   A.   Yeah.

16   Q.   Have you reviewed any other pleadings in this

17 case?

18   A.   No.

19   Q.   What is your understanding -- and I'm not

20 asking for a legal conclusion.  I know you're not here

21 to offer that.  But what is your understanding of the

22 complaints that the plaintiffs are making in this case?

23   A.   That they -- they signed -- they signed the

24 mail-in ballot application, and they signed the ballots,

25 and the signatures on the ballots were rejected, and

1  they were not happy about that.

2      Q.   Were you asked to consider the specific

3  activities taking place in any particular Texas city or

4  county in preparing your report?

5      A.   No.

6      Q.   And I think we're clear on this, but I just

7  want to be overly thorough.  Paragraphs 13 through 21 of

8  your report cite a few provisions of the Texas Election

9  Code.  Just to be clear, you're not offering an expert

10  opinion on what those provisions mean; are you?

11      A.   No, no, certainly not.  I have no expertise in

12  the way elections are conducted.

13      Q.   All right.  When evaluating signatures, what

14  conclusions might a forensic document examiner draw?

15          MR. MIRZA:  Objection.  Form.

16          MS. MACKIN:  Q.  And I'm sorry.  If that

17  question is a little unclear, maybe I can unpack it.

18  But if you understand it, you can go ahead and answer.

19      A.   Yeah, I think -- I think it's okay.

20          In my practice and practice of any FDE, a

21  signature it's called a questioned signature or a

22  signature that's been disputed.  Someone says that's a

23  genuine signature; someone else says that's a forged

24  signature.  And I'm asked -- I'm asked to make a

25  determination as to which one it is on balance of

1  probabilities.

2          So I also have to consider the possibility of

3  a signature that has been disguised.  It is a genuine

4  signature, but the person deliberately changed the

5  signature so as to deny it afterwards.

6          So genuine, disguised, forged.

7          So to come to a conclusion, we have a -- we

8  use a 9-point scale where 1 is identification, it's a

9  genuine a signature; 2, it's highly probable; 3,

10  probable; 4 is indications it's genuine; 5 is

11  inconclusive, which is where we start from -- excuse me

12  -- 6, indications did not write; 7, probably did not

13  write; 8, highly probable did not write; and 9, did not

14  write.

15      Q.   So in addition to replacing the questioned

16  signature somewhere on that continuum from did write to

17  did not write -- and did I state that correctly?  Those

18  are the --

19      A.   Yes, that's fine.

20      Q.   Okay.  In addition to kind of reaching that

21  determination, does a forensic document examiner

22  comparing signatures typically also offer a degree of

23  certitude?  Or do they say, "I'm very confident," "I'm

24  somewhat confident," "I'm not confident at all"?  Is

25  that standardized?

1      A.   Well, that's the 9-point scale I just referred

2  to.  So 1, identification, means yes, I'm certain that

3  that person wrote the signature.  If I'm asked how

4  certain are you, I would say the only way I can be more

5  certain is to actually witness the person writing the

6  signature.  So yes -- I'm sorry, go ahead.

7      Q.   No, no, please.  I'm sorry.

8      A.   As we go down the scale, so 1 is where we are

9  most certain; 2, highly probable; 3, probable; 4,

10 indications.  So you go down.  And then 5 is

11 inconclusive.  And then you go the other way.  So from 6

12 to 9, it increases in the strength of different writers.

13     Q.   So the level of confidence that the forensic

14 document examiner has is reflected in where it places

15 the questioned signature on that 9-point scale?

16     A.   Yes.

17     Q.   So they're very confident if it's a 1 or a 9,

18 and then as you approach the middle, it gets less

19 confident?

20     A.   Right.  So with a 1, is very confident, same

21 writer.  With 9, very confident it's a different writer.

22 Then as you quite correctly said, as you go to the

23 middle, it gets weaker.

24     Q.   Thank you for that explanation.  I appreciate

25 that.  In your experience, are -- I don't know if you

 1 | **know this, but are individuals more likely to produce**

 2 | **consistent signatures if they are trying?**

 3 | MR. MIRZA:  Objection.  Form.

 4 | THE WITNESS:  Did you say -- did you say

 5 | assisted?

 6 | MS. MACKIN:  Q.  I'm sorry, consistent.

 7 | A.   Consistent.  If they are trying?  So when

 8 | people -- I would say when healthy people write their

 9 | signatures, natural signatures, they don't really try.

10 | A signature is a part of a motor program that's built

11 | into -- into your brain.  And when you sign your name,

12 | you don't even think about what you're writing.

13 | For someone who has -- may have problems

14 | writing, they may concentrate more on the signature to

15 | try to get it right.  And again, it depends on the

16 | individual, the amount of consistency that individual

17 | has.  For example, if an individual is on a medication,

18 | let's say they have Parkinson's, they're shaking,

19 | whether they sign before the medication or on the

20 | medication or as the medication is wearing off, that may

21 | produce inconsistencies into their signature style.

22 | **Q.   Is there a name for that 9-point scale that we**

23 | **talked about?**

24 | A.   Yeah.  It's called the standard for expressing

25 | conclusions of forensic document examiners.  And you can

1  download it at www.SWGDOC.org.  SWGDOC.org.

2       Q.   Okay.  So for a shorthand going forward, I am

3  going to try to refer to it as the standard for

4  expressing conclusions.

5       A.   Yes.

6       Q.   So that I don't -- when I say 9-point scale,

7  it sounds kind of random and imprecise, but so you'll

8  know what I'm referring to.

9       A.   Okay.  Yes.

10      Q.   Okay.  Has the standard for expressing

11  conclusions of forensic document examiners, how -- how

12  long has that standard been used in evaluating

13  signatures?

14      A.   I would say at least 20 years.  It used to be

15  an ASTM standard.  But then it was moved from ASTM

16  because the Questioned Document subcommittee was kicked

17  out from the ASTM for reasons we don't have to go

18  through in this deposition.

19           Let me step back.

20           So SWGDOC was one of, I think, 20 scientific

21  working groups that was developed and run to develop

22  standards in forensic sciences.  For example, the DNA

23  people are SWGDNA, and there's SWGGUN, things like that.

24  So we are SWGDOC.  So we developed standards of SWGDOC,

25  and then take it to ASTM, who is the standards

1   development organization, who would publish the

2   standard.

3           After -- and through ASTM, we published about

4   I think, 20 standards in questioned documents, one of

5   which was the conclusion standard.  After ASTM, E30.02,

6   which is the Questioned Document subcommittee, was

7   disbanded and went back to SWGDOC.

8           And now again, it's going through the OSAC,

9   the Organization of Scientific Area Committees.  They

10  have a consensus body working on the conclusions.  And

11  then hoping that will go through the Academy Standards

12  Board and again be republished as a forensic science

13  standard, the conclusions for document examiners.

14       **Q.   Okay.  So what was the standard before the**

15  **standard for expressing conclusions of forensic document**

16  **examiners was adopted?**

17       A.   That's a great question.  The short answer is

18  there was no -- no -- no standard.  Some people would

19  use a 5-point scale.  When I was trained, we said wrote;

20  evidence indicates wrote; inconclusive; evidence

21  indicates did not write; did not write.  So it's five

22  points.

23          I know of some labs, this would have been

24  many, many years ago, who use three:  match; no match;

25  inconclusive.  So that's one reason the standard was

1  developed, to sort of bring everyone to the same page.

2      Q.   Do you know -- and it's okay if the answer is

3  no, but do you happen to know what year the standard for

4  expressing conclusions of forensic document examiners

5  was adopted?

6      A.   No.  I don't recall offhand.

7      Q.   That's fine.  I would like to go back to your

8  report.

9      A.   Okay.

10      Q.   In paragraph 16, you state that, "The SVC,"

11  Signature Verification Committee, "may use electronic

12  copies of the mail ballot application and carrier

13  envelope for comparing signatures."

14      A.   Yes.

15      Q.   Is the basis for that understanding

16  communications with your counsel and looking at the

17  statutes?

18      A.   No.  I would have found that in the Elections

19  Handbook.

20      Q.   Okay.  What's your understanding of the phrase

21  "electronic copies" as you use it in this sentence?

22      A.   So an electronic copy could be, for example, a

23  pdf image or a jpeg image that someone is looking at on

24  the screen.  It could be a printed, paper-printed

25  version of those signatures.  It could be a signature

Linton Mohammed - 5/4/2020

1   collected on a signature tablet.  So no paper

2   signatures, just an image of the signature.  So that's

3   what I would understand by "electronic signatures."

4        **Q.   And just to be clear, the phrase in the**

5   **sentence I believe was "electronic copies."**

6        A.   Yes.

7        **Q.   Okay.**

8        A.   Yes, electronic copies, yeah.  So -- go ahead.

9        **Q.   No, no, please.**

10       A.   An electronic copy will be some sort of

11  image -- an image of the signature that's maintained on

12  the file or imprinted from a file.  But if you think of

13  an electronic copy, an electronic image is something

14  that someone is looking at on a monitor.

15       **Q.   And that would be as distinct from a wet-ink**

16  **signature?**

17       A.   Yes.  A wet-ink signature, the term "wet ink"

18  is a term that attorneys seem to like.  It's a signature

19  written with a ballpoint pen or a fountain pen, gel pen,

20  but really ink on paper.

21           So, for example, if you -- if you have an

22  electronic signature that's written on a -- on a

23  signature tablet, it can be someone signing with a

24  stylus on a -- on a plastic surface.

25       **Q.   Okay.**

 1      A.    That would be different from a wet-ink

 2 signature, yeah.

 3      **Q.    Down in paragraph 17, the last sentence says,**

 4 **"The EVBB," or Early Voting Ballot Board, "can overturn,**

 5 **by majority vote, a decision of the SVC that the**

 6 **signatures were completed by different writers."**

 7           **Did I read that correctly?**

 8      A.    Yes.

 9      **Q.    Do you have an opinion on whether that makes**

10 **the process more or less reliable?**

11           MR. MIRZA:  Objection.  Form.

12           THE WITNESS:  Well, I don't think it really

13 adds anything, because what you basically have is still

14 a lay -- laypersons on the EVBB or the SVC comparing

15 signatures, and then you have the laypersons on the EVBB

16 overturning the decisions of the laypersons on the SVC.

17 So it really doesn't add anything -- anything to the

18 process.

19           MS. MACKIN:  Q.  So the EVBB, though, can only

20 overturn a decision if the signatures were made by

21 different writers; right?

22      A.    That's correct.

23      **Q.    So I hear what you're saying that that doesn't**

24 **necessarily make the process any more reliable.**

25           **Does that make the process more likely to**

 1  **result in either, to use a term you use later in your**

 2  **report, Type I versus Type II errors?**

 3          MR. MIRZA:  Objection.  Form.

 4          THE WITNESS:  Yeah, that would be difficult to

 5  know without testing.  I mean, it depends on who -- who

 6  are the better assessors.  The SVC?  The SVC could make

 7  a correct decision, and the EVBB could make an incorrect

 8  decision.  So it's difficult to know.

 9          MS. MACKIN:  Q.  Moving on to section III of

10  your report, "Summary of Conclusions," the first

11  paragraph, paragraph 22, the first paragraph of this

12  section rather, says that, "The Texas signature match

13  procedures do not set forth sufficient standards for

14  determining whether a signature on a mail-in ballot

15  application or return envelope match each other or match

16  a voter signature displayed in the qualified voter file

17  or on the voter's registration card, which results in

18  error-prone determinations."

19          Did I read that correctly?

20      A.   Yes, you did.

21      **Q.   What did you mean by the phrase "sufficient**

22  **standards"?**

23      A.   Well, in fact, they don't give any standards

24  at all.  What should the members of the EVBB and the

25  SVC, what should they look at?  What are they -- what

1   features are they going to use to determine whether a

2   signature is authentic or inauthentic.

3           From what I read in the procedures, there was

4   no guidance given -- given to the election officials.

5       **Q.   And so what would be sufficient guidance, in**

6   **your opinion?**

7       A.   In these cases, not much is going to help,

8   because you have -- the officials are comparing one

9   signature with one or maybe two or three other

10  signatures.  They have a very limited amount of time and

11  even -- I have a number of years of experience in

12  document -- as an FDE, and I wouldn't do it.  It's just

13  not enough comparison material.

14          You have to remember, a signature is a very

15  small amount of handwriting, as you can see.  You have

16  many factors that can affect the way signatures are

17  executed.  And given what the Texas officials have to

18  work with, I think no amount of guidance will help them.

19          For example -- if you use the example in the

20  declaration of Dr. Richardson's signature, yes, those

21  signatures are dissimilar, pictorially dissimilar.  What

22  could possibly cause those dissimilarities?  And I think

23  the only way to do it is to contact the applicant or the

24  voter.

25      **Q.   Moving down to paragraph 25, you mention --**

1   the second sentence says, "An individual's signatures

2   may vary for a myriad of reasons, including age, health,

3   native language, and writing conditions."

4           Did I read that correctly?

5       A.   Yes.  That's correct.

6       Q.   What are -- so are all of the authorities you

7   relied on to support this statement cited in your

8   report?

9       A.   Yes.

10      Q.   And then paragraph 26 talks about diminished

11  eyesight or form-blindness.

12      A.   Yes.

13      Q.   Something I meant to clarify earlier, are you

14  a medical doctor, Dr. Mohammed?

15      A.   No, I am not.

16      Q.   So, you don't have one of those fast

17  prescription signatures?  I'm just kidding.  That wasn't

18  a real question.

19          So are you aware of how prevalent

20  form-blindness is in the United States or in Texas?

21      A.   No.  And no one knows because it's not

22  generally tested for people.  Certainly for people

23  coming in to patent evidence, scientists like

24  fingerprint examination and certainly handwriting

25  document examination, all trainees for handwriting

1  examination are tested for form-blindness.  And if you

2  -- if they don't pass, then they don't go any further.

3          But to answer your question, no one knows.

4      Q.   All right.  Jumping ahead to paragraph 28.

5  **This is where the bulk of your citations begin.  At**

6  **footnote 3, Mr. Hilton's 1965 article in The Journal of**

7  **Criminal Law, Criminology and Political [sic] Science**

8  **called "A further look at writing standards."**

9          **You cited that authority for the proposition**

10 **that, at a minimum, 10 sample signatures are usually**

11 **required for an accurate signature determination.**

12     A.   Yes.

13     Q.   **Is 10 signatures still the standard in the FDE**

14 **community for determining whether signatures were**

15 **executed by the same person?**

16     A.   Generally, people tend to ask for 15 to 20.

17          When Mr. Hilton wrote this, you had more

18 people in the community who were trained to write, and

19 they had better-quality signatures.  In today's world

20 where people are not taught to write, you're going to

21 get more variation in signatures.  So you tend to

22 require more specimen signatures.

23          For example, people back to Dr. Richardson's

24 case, if I got a case like that, if one of the

25 signatures are questioned, I would ask for specimen

1   signatures.  Depending if he was a medical doctor

2   signing prescriptions, I would ask for specimen

3   signatures of him writing more formal documents because

4   of what's called, it's called a range of variation.

5          And I can give you an example of a range of

6   variation.  Let's say, you know, you are in a garden or

7   if you're in the house doing something and someone comes

8   to the door with a FedEx package, especially in these

9   times, you know.

10     **Q.   I was going to say, that happens a lot lately.**

11     A.   Right.  Exactly.  You probably give them a

12   very scribbled signature using a stylus on a substrate.

13          Let's say times have improved, and afterwards,

14   you go down to your attorney's office to sign your last

15   will and testament.  The signature on the FedEx -- the

16   FedEx courier got and the signature on your last will

17   and testament, they may represent your range of

18   variation.  Generally, you sign something somewhere

19   between those each time you sign.

20          So that's why you need to get not just ten

21   signatures, but ten contemporaneous signatures, and ten

22   signatures that are on like documents.

23          MR. MIRZA:  I just want to note for the record

24   the citations name is The Journal of Criminal Law,

25   Criminology, and Police Science.

1          MS. MACKIN:  Oh, I'm sorry.  Thank you for

2    that.  That's a strange Freudian slip.  I didn't study

3    government, nothing like that.

4          Q.   Okay.  Moving down to paragraph 30,

5    Dr. Mohammed, you note that a signature comparison may

6    normally take a minimum of two hours.

7          A.   Yes.

8          Q.   A comparison for what purpose?

9          A.   In my field, I have to talk about a forensic

10   examination of signatures.

11         Q.   Okay.

12         A.   So I have to compare the signatures.  I have

13   to sketch the signatures out, go through my checklists

14   and look for the various species to see what's similar,

15   what's dissimilar, look at the line quality.  Several

16   things like that.  So a minimum two hours, normally

17   about four hours.

18         Q.   In this case, in looking at Dr. Richardson's

19   signature, you mentioned a moment ago that it only took

20   you a few minutes to look at those two signatures; is

21   that right?

22         A.   That's correct.

23         Q.   And how are you able to make your

24   determination so quickly?

25         A.   Well, they were -- they were pictorially dis-

 1  -- dissimilar.  If you look at the sig- -- I'm sorry, go

 2  ahead.

 3       Q.   No, no, please.  I'm sorry.

 4       A.   No, I -- I -- I was done.

 5       Q.   So not -- not every signature comparison takes

 6  a minimum of two hours; does it?

 7       A.   Well, if I was doing that comparison, it

 8  wouldn't have stopped there.  I would have requested

 9  additional specimen signatures and then do a full

10  comparison.

11       Q.   So a comparison for, to meet the industry

12  standards in the forensic document examiner context,

13  could take a minimum of two hours; is that right?

14       A.   Yes.  That's correct.

15       Q.   Just one last thing on the study cited in note

16  3, did that study compare laypersons to trained forensic

17  document examiners?

18       A.   No.  That just simply looked at the types of

19  the model standards that should be used in signature and

20  handwriting comparison.

21       Q.   Moving on to, it starts on page 12, the

22  sentence that begins -- it's the last sentence on

23  page 12.  It begins, "Third, untrained elections

24  officials also failed to account for the different

25  signature styles and features, leading to erroneous

 1  rejections."

 2           What did you mean by the phrase "different

 3  signature styles and features"?

 4       A.   Okay.  So signatures can be classified into

 5  three types.  First one is called a text-based signature

 6  where you can look at the signature and know the

 7  person's name, and in Dr. Richardson's example which is

 8  in front of us, the second signature on the ballot would

 9  be a text-based signature.  You can look at that

10  signature and read the name "George A." -- excuse me --

11  "George A. Richardson."

12           The top signature, or the first signature on

13  the application, is what I would call a mixed-style

14  signature.  There's a second classification where you

15  can look at the signature, and you can read about two or

16  three legible features in the signature, and the rest

17  you can't see what it means.

18           And then the third type is called a stylized

19  signature, which can read anything, any characters in

20  the signature.  That is basically a pattern.  For

21  example, you find that people who write stylized

22  signatures have more variations in their signatures than

23  people who write text-based signatures.

24           So someone looking at signatures who is

25  unaware of this may not be able to assess the variation

1  in the stylized signatures as much as they should.

2      **Q.   Is it more difficult to compare signatures of**

3  **different styles than it is to compare signatures of the**

4  **same style?**

5      A.   You basically cannot -- cannot compare

6  signatures of different styles.  It has to be like with

7  like, apples with apples, oranges with oranges.  So

8  that's why with Dr. Richardson's case where the first

9  signature was a mixed-style, the second signature was a

10  text-based style, there's not much to compare with those

11  signatures.

12      **Q.   Then moving to paragraph 33, so there you**

13  **describe Type I errors, which the report indicates occur**

14  **when a non-genuine signature is deemed genuine.  Type II**

15  **errors occur when a genuine signature is deemed**

16  **non-genuine.**

17          **Then you say, "Type II errors are considered**

18  **more egregious than Type I."  By whom?**

19      A.   By FDEs because, as an FDE who spent most of

20  my career in crime labs, if I'm -- let's say a check was

21  written, and someone said, "Oh, this signature has been

22  forged," and I opine incorrectly that it's genuine, then

23  the person gets away with it.

24          If, on the other hand, they bring the

25  signature and said it is forged and I opine it is

1 forged, in fact it is a genuine signature, then that

2 person may be charged with a crime.

3          So in cases of election, election officials,

4 for example, election cases, if a genuine signature is

5 deemed to be non-genuine, then a person can be

6 disenfranchised.  We consider that Type II to be more

7 egregious than Type I.

8     **Q.  All right.  So the next authority that you**

9 **cite is in paragraph 5, an article from The Journal of**

10 **Forensic Science.**

11     A.   Yes.

12     **Q.  And that article is from 2001; correct?**

13     A.   That's correct.

14     **Q.  Was the study cited in note 5 of your report,**

15 **was it the first controlled study comparing the**

16 **abilities of FDEs and laypersons in the area of**

17 **signature examination?**

18     A.   I would say it was the first properly

19 controlled studies.  There was another study that was

20 done several years ago that only used, I think, three

21 FDEs.  Statistically, it was not significant.  But this

22 is the first one that I would say was a controlled

23 study, academically controlled study of FDEs and lay --

24 lay -- laypersons.

25     **Q.  The study that you mentioned that occurred**

1    earlier that in your opinion was not statistically

2    significant, do you recall --

3         A.   That's correct.

4         Q.   -- do you recall anything else about that

5    study, like the year or who conducted it or where it was

6    published?  And it's not in your report, so it's okay if

7    you don't.

8         A.   Yes, it would have been published -- it would

9    have been done in the '60s, I would think.  It was a

10   very old study.

11        Q.   And do you know what question or questions the

12   participants in the 2001 study in The Journal of

13   Forensic Science were asked?

14        A.   Yes.  As far as I know, they were given what's

15   called questioned signatures, which are disputed, and

16   specimen signatures of the writers, and simulations of

17   those -- some of those writers' signatures.  And then

18   they were asked to determine whether the questioned

19   signatures, were they genuine signatures or were they

20   non-genuine.

21             So they were comparing them, some of the

22   similar signatures were mixed in with the genuine

23   signatures.  So they were asked to determine whether

24   they were genuine or non-genuine.  That was the basic

25   task.

1      Q.   Do you know if they had any other options, or

2 was it just the two choices:  genuine and non-genuine?

3      A.   Offhand, I don't know.  They may have been

4 given an inconclusive option, but they may have had to

5 make what's called a forced call for the purposes of the

6 study.

7      Q.   So the participants in this study did not

8 evaluate signatures using the standard for expressing

9 conclusions of forensic document examiners?

10     A.   I don't recall offhand.  2001, there probably

11 would have.  I know this study was conducted using FBI

12 examiners, and they use a 7-point scale.  They don't use

13 indications.  So they may have used 7.

14          But what I suspect they did was anything from

15 probable to wrote, that was taken as a positive opinion.

16 Probably not to did not write was taken as a negative

17 opinion.

18     Q.   Do you know if they were asked whether the

19 signatures could have been made by the same person?

20     A.   Yes.  Yes.  The thing is, as I said, the

21 questioned signatures were a mixture of genuine

22 signatures and non-genuine signatures, and they were

23 compared against specimen signatures against the -- the

24 real individuals.

25          But the question was:  Were these questioned

1  signatures, are they genuine, or are they non-genuine?

2      Q.   And this study, it looks like, used six

3  specimen signatures; is that right?

4      A.   Six genuine signatures, yes.

5      Q.   And do you know why it wouldn't have used the

6  ten signatures that you mentioned was the industry

7  standard?

8      A.   I think one might have been cost in collecting

9  the specimen signatures, but the specimen signatures

10 were collected from laypeople.  So there was some cost

11 to researchers in getting those signatures.  I think

12 that was -- that was a criticism of the study as well

13 was that, you know, they use more specimen signatures,

14 which I agree with.

15     Q.   Are you aware of any other criticisms of this

16 study.

17     A.   Yes.  There were some criticisms about the

18 FDEs had more often an interest in getting the right

19 answer; whereas, the laypersons didn't matter that much.

20          In a subsequent study by the same researchers,

21 at least by Professor Kam, Moshe Kam, as well as his

22 other students, the laypersons were actually paid for

23 providing correct answers.  And it made no difference to

24 the results.

25     Q.   Any other criticisms you're aware of of this

1  **2001 Kam study?**

2       A.   Yes.   There were criticisms I'm aware of by

3  some other academics and law professors.   They basically

4  criticized the methodology of the study.

5       **Q.   What about the methodology did they criticize?**

6       A.   Again, using only six -- six -- six specimen

7  signatures.   That's going to be an issue.   I think --

8  these -- these academics are critics or were critics of

9  forensic document examination.   So they basically try to

10 throw as much mud as possible at that study.

11          The main one they had were the laypersons were

12 not as involved in the results as the FDEs would have

13 been.   That was -- that was why the -- the subsequent

14 study, the laypersons were paid.   So that took care of

15 that critique.

16      **Q.   Okay.   Any other critiques of this 2001 study**

17 **that you're aware of?**

18      A.   Yeah, not that -- not that I can recall

19 offhand.

20      **Q.   All right.   And then moving down to paragraph**

21 **35, you mention that this 2001 study also considered**

22 **whether the participants were making Type II errors or**

23 **Type I errors.**

24      A.   That is correct.

25      **Q.   Did you look at any other studies that**

1    considered whether laypeople and forensic document

2    examiners were -- strike that.  Sorry, I did not ask

3    that very well.

4            Do any other studies separate these types of

5    signature-matching errors into Type I and Type II in the

6    same way that this 2001 Kam study did?

7       A.   The only other study might have been

8    Dr. Merlino's study, which was further on this -- in

9    this document.

10      Q.   Okay.

11      A.   The study mentioned in chapter 36 looked at

12   the error rates between laypersons and the FDEs, but

13   didn't specify further about Type II or Type I errors.

14      Q.   And just to be clear, you mentioned the --

15   actually, that's fine.  We'll cover that.  All right.

16           In paragraph 36, second to the last sentence

17   says, "It must be noted that these error rates occurred

18   when adequate signature samples and examination time

19   were available."

20           What do you mean by "adequate signature

21   samples" in this paragraph?

22      A.   I'm sorry, is that the second to the last

23   paragraph?

24      Q.   The last --

25      A.   The second to the last sentence?

1     Q.   Yes.   Yes, sir.

2     A.   Okay.   Right.   So in the Australian case, they

3  had the adequate amount of signature samples, at least

4  10 I would think, and they had enough time to do the

5  comparisons.   In fact, they had as much time as they

6  required.

7         So if -- if these are the error rates when you

8  have optimum conditions, considering they're using

9  copies and so on, if you reduce the amount of standard

10 specimens and you reduce the amount of time available,

11 then this, presumably, the error rates will be bigger.

12    Q.   Do you know what question the participants in

13 the study cited in footnote 7 were asked?

14    A.   Similarly -- again, similar to the study

15 above, they were given genuine signatures and simulated

16 signatures, and they were asked to compare them with

17 specimen signatures of the individuals concerned.   And

18 just simply asked if they were genuine or non-genuine to

19 some degree of confidence.

20    Q.   And so did it ask the participants to evaluate

21 the signatures using the standard for expressing

22 conclusions of forensic document examiners?

23    A.   It would have been a conclusion of that.   I

24 would think it probably used maybe a 5-point scale with

25 wrote, probably wrote, inconclusive, probably did not

1  write, did not write.  That, again, that would be for

2  the purposes of making the data crunching easier.

3      **Q.  So are you aware of whether the Sita study**

4  **from 2002 cited in note 7, are you aware of whether the**

5  **participants in that study had to make a forced call?**

6      A.  Yes.  I think they would have had to make a

7  forced called.  I know that Dr. Found and Dr. Rogers,

8  who are two of my PhD supervisors, they pretty much had

9  forced calls in all of their studies like this.

10     **Q.  So I just want to make sure I understand.**

11         **When you say "forced call," what do you mean?**

12     A.  So if you have -- if you have -- if you're

13  comparing two signatures, one questioned against

14  specimen signatures, and let's say it's a very simple

15  signature and anyone could write that, it would probably

16  be inconclusive.  That would be -- that would be where

17  you are on the conclusion scale.

18         The forced call will make you go up one level

19  or go down one level or two levels.  So you have to make

20  a call.  Otherwise, what may happen is if you have too

21  many inconclusive results, which doesn't help, help the

22  study in any way.

23     **Q.  So like, for example, based on your**

24  **understanding of Texas election law, does the Signature**

25  **Verification Committee or Early Voting Ballot Board have**

Linton Mohammed - 5/4/2020

56

1   to make a forced call when they're comparing the

2   signature on a carrier envelope and a mail-in ballot

3   application?

4         A.   Yes.  I think they -- they do have to because

5   any other conclusion, based upon what they're comparing

6   and the time that they have to compare them, I don't

7   think it can be the result of anything but a forced

8   call.

9         Q.   And so wouldn't the study cited in note 7 be

10  slightly different insofar as it allows for evaluation

11  of signatures on that 5-point scale?

12        A.   Well, do you mean if there were no forced

13  calls?

14        Q.   Right.  And as I understood your testimony,

15  the study cited in note 7 asked participants to evaluate

16  signatures on a 5-point scale from -- based on their

17  level of confidence.

18        A.   Yes.

19        Q.   If I misunderstood that, please correct me.

20        A.   Yes.  I think that's my -- that's my recall of

21  how the study was conducted.  So, in other words, to

22  prevent too many inconclusive answers.

23             For example, if you go back into

24  Dr. Richardson's signatures, my answer for there would

25  be inconclusive until I get additional specimens;

1  whereas, the election officials apparently have to make

2  a call.  So I would call that a forced call.  And that

3  would increase the error rate.

4       **Q.   Also, just so that I understand, if we can**

5  **jump back to the Kam study from 2001 --**

6       A.   Sure.

7       **Q.   -- cited in note 5, do you know whether those**

8  **participants were asked to answer just yes or no, or**

9  **whether they could give some type of inconclusive**

10  **result?**

11       A.   I don't recall offhand.  I suspect that that

12  would have had forced calls as well.  But I would have

13  to actually go back to the data to review what was --

14  what was produced.

15       **Q.   Are you aware of any criticisms of the study**

16  **cited in note 7?**

17       A.   No.  That was a study in Australia.  So I'm

18  not aware of what critics in the U.S. knew about it.

19  Basically, what these professors were trying to do was

20  to exclude testimony of document examiners and say they

21  know better than laypersons in comparing signatures.  So

22  the Kam test and the Sita/Found/Rogers tests provided

23  data to show that the FDEs had more expertise than the

24  laypersons.

25       **Q.   And the Sita study, it did not classify errors**

Linton Mohammed - 5/4/2020

58

1   as Type I or Type II; is that right?

2       A.    That's correct.  I just gave basic error rates

3   between the FDEs and the laypersons.  They did not give

4   a further breakdown into Type I and Type II.  That is

5   correct.

6       Q.    Moving on to the next page, page 15, paragraph

7   39 begins, "To make such a judgment reliably requires,

8   at a minimum," then it lists a few items below that.

9           What do you mean by "such a judgment" in this

10  context?

11      A.    The such a judgment would be did someone write

12  the signature or did they not write the signature.

13      Q.    Okay.

14      A.    That's -- that's the judgment I think the

15  election officials are being asked to make.

16      Q.    Okay.

17      A.    The FDEs are being asked to make as well.

18      Q.    So when you're thinking about a judgment on a

19  signature comparison, are you thinking of it in terms of

20  a forensic judgment with the requisite degree of

21  certainty that you would want to have as a forensic

22  document examiner?

23      A.    Yes.  If I'm going to say that something is

24  genuine or non-genuine, I would need to have all of the

25  factors considered -- all the factors and all the

59

1  materials that I need to make that sort of call.

2      **Q.  Moving on to footnote 9, this is the third**

3  **study that you've cited as comparing laypersons to FDEs**

4  **in evaluating the genuineness of signatures; is that**

5  **right?**

6      A.  That's correct, yes.

7      **Q.  This study was funded by a Department of**

8  **Justice grant; correct?**

9      A.  Yes.

10      **Q.  I was able to find this study online, and this**

11  **isn't to try to cast doubt on it, I'm just curious.  It**

12  **said this study was not published by the Department of**

13  **Justice.  What is -- do you know what the significance**

14  **of that is?**

15          MR. MIRZA:  Objection.  Form.

16          THE WITNESS:  I don't -- I thought it was

17  published, but I haven't checked -- I haven't checked

18  recently.  If it's not published, I don't know what that

19  means.

20          MS. MACKIN:  Q.  Okay.  That's fine.

21      A.  There's also -- the main study, like almost

22  40, 50 pages, you can also look for like a 10-page

23  synopsis of the study as well on the NIJ website.

24      **Q.  I did find it there.  But what I found was**

25  **like 1,400 pages.  It was huge.**

1    A.   Exactly.

2    Q.   **Do you know if the participants in this study**

3 **were required to say that signatures were either genuine**

4 **or non-genuine, or do they have other options in**

5 **between?**

6    A.   Yes.  I think this was genuine, disguised, and

7 forged or simulated.

8    Q.   **So the participants in the Merlino study were**

9 **not asked to evaluate the genuineness of signatures**

10 **using the standard for expressing conclusions of**

11 **forensic document examiners?**

12    A.   No.  Again, I was a participant in this study.

13 As I recall, you have to give -- it was, again, maybe a

14 5-point scale:  wrote, probably wrote, inconclusive,

15 probably did not write, and did not write.  And as I

16 recall, there was also a forced call.

17         So you can say inconclusive as your opinion,

18 but then you have to make a call one way or the other.

19    Q.   **And do you know if this study classified**

20 **errors as Type I or Type II as described in this study**

21 **cited in note 5?**

22    A.   You know, I don't -- I don't recall offhand if

23 it did.  I don't think so.

24    Q.   **Are there any other studies comparing the**

25 **abilities of FDEs and laypersons in assessing the**

1  genuineness of signatures other than the three cited in

2  this report and the one you mentioned earlier from like

3  the '60s?

4      A.   Not that I'm aware of.  There was once another

5  study in Australia that used calligraphers as the

6  forgers.  But I don't recall if there were laypeople who

7  were involved in that.  I think that was just FDEs.

8      Q.   All right.

9           Can we go off the record for a moment?

10          MR. MIRZA:  Sure.

11          THE REPORTER:  Yes.  We're off the record.

12          (The lunch recess was taken at 12:56 p.m.)

13                     ---oOo---

14               AFTERNOON SESSION

15          (Time noted: 1:34 p.m.)

16          MS. MACKIN:  Q.  All right, Dr. Mohammed.

17      A.   I'm here.

18      Q.   All right.  Just to be clear, picking back up

19  on page 17 of your report, did you observe the Early

20  Voting Ballot Board that determined Dr. Richardson's

21  signature on the mail-in ballot application and carrier

22  envelope were not made by the same person?

23          MR. MIRZA:  Objection.  Form.

24          THE WITNESS:  I don't recall.  Go ahead.

25          MR. MIRZA:  I was just making an objection.

Linton Mohammed - 5/4/2020

62

1 Objection, form. You can answer the question.

2           THE WITNESS: Yeah. I'm not sure --

3           Are you guys still hearing me?

4           MS. MACKIN: Q. Yes. Can you hear me all

5 right?

6     A. Yeah, I'm hearing, yeah.

7           I'm not sure if I saw the actual decision by

8 the EVBB or the SVC, but I did review it in the

9 complaint.

10     **Q. Do you know what the election officials who**

11 **evaluated Dr. Richardson's signatures considered?**

12     A. No.

13     **Q. Moving right along to page 18, paragraph 41,**

14 **you discuss a textbook on handwriting examination by Roy**

15 **Huber and A.M. Headrick?**

16     A. Headrick. Headrick, yeah.

17     **Q. Have you provided a citation to that textbook**

18 **in your report?**

19     A. I should have.

20     **Q. Is that the same -- well, let me just ask it**

21 **in a way that might be easier.**

22     **Is that the same textbook that you cite in**

23 **note 16 of your report?**

24     A. 16. Yes, footnote 16, that's correct, yes.

25     **Q. Okay. Just because there might be variation**

1  **between two signatures, that doesn't necessarily mean**

2  **that someone comparing the two will determine that**

3  **they're not a match; does it?**

4          MR. MIRZA:  Objection.  Form.

5          THE WITNESS:  No.  In fact -- in fact, that's

6  why you need multiple specimen signatures because you

7  have to determine the writer's range of variation, and

8  then when you examine with it the questioned signature,

9  you have to determine if any feature in that signature,

10 let's call it the questioned signature, falls outside of

11 the range of variation you observe in the specimen

12 signatures.

13          And then you have to determine is that

14 variation, extra variation, can it be reasonably

15 explained, or is there no reasonable explanation for it.

16 And if it's the latter, then it becomes a difference,

17 and you're talking about two different writers.

18          MS. MACKIN:  Q.  All right.  Thank you.

19          Let's move now to page 20.  You talk in

20 paragraph 41, which begins on page 18, about a

21 distinction between difference and variation.  And then

22 you say at the end of paragraph 41, you say, "It is very

23 unlikely that a Texas election official will have the

24 knowledge, training and experience to properly account

25 for these factors."

1              Did I read that right?

2      A.    That is -- that is correct.

3      **Q.    And what is your basis for that statement?**

4      A.    The basis is my own training as a forensic

5  document examiner.  When I was trained -- excuse me --

6  my continuing education, when I have trained examiners

7  and what the examiner needs to be trained in, they need

8  to see multiple signatures of all different types over

9  at least 18 months to two years.  They have to

10  understand and appreciate causes of variation.  Huber

11  and Headrick mentioned 20 possible causes in their book.

12              So I doubt it very much, and please correct me

13  if I'm wrong, that a Texas election official or any

14  layperson will have the sort of training and experience.

15  Even people who work in banks and see many, many

16  signatures, even some of them don't have the proper

17  experience to look for and assess whether there is a

18  difference or a variation.

19              And that's -- that's the key point.  Variation

20  is one writer; difference, two writers.

21      **Q.    Okay.  Did you independently verify whether**

22  **Texas election officials receive any training other than**

23  **the 2018 handbook that you considered?**

24      A.    I look at the handbook, and also -- I think I

25  also did a Google search to see if there was anything

1   else on Texas instructions.  Only one state it is done.

2   But Colorado actually has a training manual, which is

3   not bad at all.  Still not good enough.  But I cannot

4   find anything in Texas that would talk about how the

5   officials are trained.

6          **Q.   Other than the Google search, did you**

7   **investigate that any further?**

8          A.   No.

9          **Q.   All right.  Paragraph 42 states that,**

10  **"Laypersons are significantly more likely than FDEs to**

11  **incorrectly reject authentic signatures of illiterate**

12  **writers."  And for that proposition, you cite a 1965**

13  **article by O. Hilton.**

14          **Is that the same article cited in note 3 of**

15  **your report?**

16         A.   Yes.  That would have been the same -- the

17  same article.

18         **Q.   Did that article discuss the ability of**

19  **laypersons to evaluate signatures?**

20         A.   It actually discusses the ability of FDEs to

21  evaluate signatures of people who have problems --

22  problems signing for various reasons.  And it discusses

23  the need for even more standards, specimen signatures,

24  when writers like these are involved.

25          So the FDE would tend to know what to ask for,

1  what to look for, and then if they don't have enough

2  material, then they would go inconclusive.  A layperson

3  may not have this knowledge, and probably will make a

4  call -- make a call on what they see -- what they have

5  in front of them, and they incorrectly interpret a

6  variation as a difference.

7      Q.   But I just want to make sure I'm clear.

8           This 1965 article by Hilton, it didn't

9  specifically discuss the ability of laypersons to

10 evaluate signatures; did it?

11     A.   No.  It discussed the ability -- the ability

12 of trained examiners to examine the signatures of

13 illiterate writers and people like that.

14     Q.   All right.  And then you continue that,

15 "...writers for whom English is a second language,

16 elderly writers, disabled writers, and writers with

17 health conditions."

18     A.   Yes.

19     Q.   And for that, for all of those propositions,

20 you have two citations.  Notes 13 and 14, which are both

21 additional articles by Hilton.

22     A.   Yes.

23     Q.   Okay.  Did you look at anything more recent to

24 support the assertion that laypersons are more likely

25 than FDEs to incorrectly reject authentic signatures

1  **from these groups of people?**

2      A.  No.  What I based that on is that FDE -- I'm

3  sorry.  Was there an -- an objection?

4          MR. MIRZA:  No.

5          THE WITNESS:  Okay.  Sorry.  Okay.

6          What I based that sentence on was that FDEs

7  have problems with signatures of these types of people,

8  elderly writers, disabled writers with health

9  conditions, and trained FDEs who know what to look for

10  and how to assess features, and they make errors with

11  these types of signatures, especially if they have

12  inadequate specimens.

13          So from that, I'm extrapolating to say that if

14  the trained FDE has made errors, then the layperson will

15  probably make more errors based on the previous research

16  where they used signatures of healthy signers.

17          MS. MACKIN:  Q.  Okay.  So the article cited

18  in notes 13 -- in notes 13 and 14 addressed the ability

19  of FDEs to evaluate the authenticity of signatures, but

20  not the ability of laypersons to do so; is that right.

21      A.  That's correct, yes.

22      **Q.  Have you done any research or published any**

23  **studies about the ability of persons with certain health**

24  **conditions to provide consistent signatures over time?**

25      A.  The most recent, I was a co-author, was

1  signatures of people with both Alzheimer's and dementia.

2  That was published, I think, earlier this year.

3          And the result from that was that dementia

4  doesn't make much of a difference to the execution of

5  signatures.

6      **Q.  Have you done any other studies in a**

7  **similar --**

8      A.  No.

9      **Q.  Okay.  At the end of paragraph 42, you mention**

10  **laypersons, and you reference "...laypersons' tendencies**

11  **to err on the side of incorrectly finding authentic**

12  **signatures to be non-genuine."**

13      A.  Yes.

14      **Q.  What is the basis for your statement that**

15  **laypersons tend to err on the side of incorrectly**

16  **finding authentic signatures to be non-genuine?**

17      A.  Those are the Type II errors that we discussed

18  earlier where the -- the person would say a genuine

19  signature is non-genuine.  The Kam study that talked

20  about the Type II errors used, again, signatures of

21  healthy people, but there's no issues with the

22  handwriting or the signatures.

23          So the variation would have been more

24  consistent on like people who are ill, elderly.  The

25  derivation would be even expanded, much greater than the

1  healthy people.  So since laypersons had more issues

2  than FDEs with healthy people, it stands to reason that

3  they would have more issues with unhealthy people, since

4  there's much greater variation in the signatures of

5  unhealthy individuals.

6       **Q.   Now, I just want to make sure that I**

7  **understand something.  The three studies that you cited**

8  **for that proposition -- let's see -- the Kam study from**

9  **2001, the Sita study from 2002, and then the Merlino**

10 **study from January of 2015.**

11           **For the Kam study, how -- were the**

12 **participants asked to use the standard for expressing**

13 **conclusions of forensic document examiners in providing**

14 **their responses?**

15      A.   I think they would have been asked to use a

16 condensed version, maybe nine levels, or they would have

17 been asked to use five.

18      **Q.   Okay.  And then the Sita study, were the**

19 **participants in that study asked to use the standard for**

20 **expressing conclusions of forensic document examiners in**

21 **providing their responses?**

22      A.   Again, I don't recall offhand what they used.

23 It would have been a similar scale.  That's what they

24 used in Australia at that time.

25      **Q.   All right.  Then how about the Merlino study?**

1      A.   The Merlino study -- sorry, go ahead.

2      Q.   **Were the participants in that study asked to**

3   **use the standard for expressing conclusions of forensic**

4   **document examiners in providing their responses?**

5      A.   Yes.  Again, it would have been a condensed

6   level.  If I recall, it was five -- it was five levels:

7   wrote, probably wrote, inconclusive, probably did not

8   write, and did not write.

9      Q.   **In forming the opinions of your report, how**

10  **did you factor in the probably wrote or probably did not**

11  **write answers?**

12     A.   I'm not sure if I understand that question.

13     Q.   **Okay.  So what did these studies to form the**

14  **opinion that laypersons tend to err on the side of**

15  **incorrectly finding authentic signatures to be**

16  **non-genuine, and so I'm curious as to how -- I mean, I**

17  **think it's pretty clear that, you know, the very -- the**

18  **ones on the very end, whether it's 1 or 5, how that**

19  **would factor into that analysis.  But I'm wondering how**

20  **the 2s and 4s played into your thinking.**

21     A.   Right. I think what they did is, if there was

22  a 2, 2s and 1s would have been grouped together.  Not

23  only 1 and 2.  1 and 3 would have been grouped together,

24  probably wrote.  And 7 and 9 would have been grouped

25  together, probably did not write and did not write, for

1  the difference of the study.

2          So if you went -- starting at inconclusive.

3  So if the signature is genuine and you went on the side

4  of did not write, either probable or did not write, that

5  would be grouped as did not write as an error.

6      **Q.   Okay.  And for inconclusive, did those, how**

7  **did you factor those into your --**

8          MR. MIRZA:  Objection.  Form.

9          THE WITNESS:  The inconclusive results were

10 stated, but again, I think the -- the participants had

11 to make a forced call.

12         MS. MACKIN:  Q.  Okay.  So if they had to make

13 a forced call, does that mean they weren't allowed to

14 select inconclusive?

15     A.   No.  I think they could select inconclusive,

16 but they had to make a forced call so that the

17 researchers had some -- some numbers to work with.

18     **Q.   I see.  They had to give an answer?**

19     A.   Yeah.  They had to give an answer, yes.  But

20 the number of inconclusive were given as well.

21     **Q.   And in determining that laypeople tend to err**

22 **on the side of incorrectly finding authentic signatures**

23 **to be non-genuine, did you consider an inconclusive**

24 **answer as a finding of non-genuineness?**

25         MR. MIRZA:  Objection.  Form.

1          THE WITNESS:  No.  The inconclusives would not

2     have counted in the data -- in the stats.

3          MS. MACKIN:  Q.  Okay.

4     A.    Just in the forced calls, yeah.

5     **Q.    Thank you.  I appreciate that.  Thank you for**

6     **bearing with me on that.**

7     A.    No, no.  Not at all.  Not at all.

8     **Q.    Okay.  Moving on to paragraph 43, you are**

9     **discussing writers for whom English is a second language**

10    **and stating that they're more likely to have wide ranges**

11    **of variation in their signatures.**

12          **What is your basis for that statement?**

13    A.    If you look at the first line, "Since

14    signatures are developed as a motor program in the

15    brain," as I mentioned before, once the signature is

16    developed when you sign, you don't even think about it.

17    What you're doing is done unconsciously.

18          If, for example, you write in a different

19    language or you speak a different language, the examples

20    I give here, for example, Chinese, where you use

21    ideograms, or in Arabic, where they go from right to

22    left.  Now they have to go from right -- from left to

23    right in our script.

24          So that is going to make a difference in the

25    motor program.  They have to relive the motor program

1   for the new signature.  Because of that, you may find

2   that -- you're going to find that you're going to have

3   more variation in a signature until they learn to write

4   this new signature properly, and that might take a few

5   years.

6       Q.   Moving on to page 23.  About halfway down the

7   page, "Young writers will presumably need to sign less

8   often due to the increased use of personal

9   identification numbers and other non-handwritten forms

10  of identification."

11       What is your basis for that statement?

12       A.   That's just based on my -- on my experience

13  in -- in casework.  I did look for a published piece.  I

14  couldn't find any.  I don't think any research has been

15  done.  If you think, people of my age would be used to

16  signing lots of checks and so on.  So their signatures

17  would develop more experience writing their signatures.

18       Younger people who tend to use, like,

19  chip-and-PIN cards, things like that, don't even use

20  checks.  You find that they have less practice writing

21  their signature.  So they tend to have a less-developed

22  signature than a person maybe 20, 30 years ago.

23       Q.   All right.  Then towards the end of the

24  paragraph, you state that, "This will lead to an

25  increased range of variation in a young writer's

1  signature."

2        So is it the case that the less experienced

3  someone is in writing their signature, the more

4  variation there will be in their signature?

5        MR. MIRZA:  Objection.  Form.

6        THE WITNESS:  Yes.  I think the less

7  experienced they are, it will be a less -- or a more

8  conscious effect -- effort to execute the signature.  So

9  you're going to get more variation than a person who was

10 used to writing their signature.

11       MS. MACKIN:  Q.  So just to make sure I'm

12 understanding your testimony, correct me if I'm wrong,

13 are you saying that there's less variation in a

14 signature once it becomes memorized to the point that

15 the person doesn't have to think about it?

16     A.  Again -- again, it depends on the -- on the

17 individual writer.  Some people have a very narrow range

18 of variation.  Some people have a very wide range of

19 variation.  So it really depends on the individual.

20     Q.  Then the next sentence says, "The handwriting

21 of adolescents can cause difficulties even for trained

22 FDEs."  What do you mean by "adolescents" in this

23 sentence?

24     A.  In this case, it will be someone between 18

25 and 19, because, I mean, those are people who can vote.

1  I actually talk about people who are much younger, 13,

2  14.  In this context, it wouldn't have mattered that

3  much.  I can tell you from a document examiner point of

4  view, if I'm asked to look at writing -- handwritings of

5  people who are 12, 13, 14, my answer is no because their

6  writing is not developed, and there's also lots of

7  variation in there.

8      **Q.  Okay.  Moving to page 24, at the very end of**

9  **what would be paragraph 45, it states, "Unfamiliarity**

10 **with the different signature styles may impact a**

11 **reviewer's ability to determine whether two signatures**

12 **come from the same person and would likely cause a**

13 **layperson to decide that the compared signatures exhibit**

14 **differences when the changes in features are simply**

15 **variations."**

16      **What is your basis for that statement?**

17     A.  Well, let's go back up to page 23, paragraph

18 45.  So you can see there the three images of three

19 different styles of signatures.

20     **Q.  Yes.**

21     A.  So for the first style where it's text-based,

22 people can read that.  The second part, partially

23 text-based, partially stylized.  And then the third one

24 is totally stylized.  But a totally stylized signature

25 is purely a pattern.  The mixed style signature is

1  partly a pattern.

2          So if the reviewer or the election official is

3  unfamiliar with these different styles of signatures,

4  they may tend to evaluate them differently.  And for

5  example, so in the -- in the Dr. Richardson case, one

6  signature was mixed style, one signature was text-based.

7  They shouldn't really be comparing those signatures, but

8  they did.

9          And they evaluated differences of variations.

10  I'm sorry.  That's the wrong way.  They evaluated

11  variations as differences.

12     **Q.   Okay.  Is there any other basis for your**

13  **statement in the last paragraph -- in the last sentence**

14  **of paragraph 45?**

15     A.   From my own research, I looked at different

16  signature styles for my pdf thesis.  I know the

17  kinematic factors on the lines from these signatures,

18  for example, stylized signatures.

19          By "kinematics," I mean things like speed, pen

20  pressure, smoothness tend to vary more in stylized

21  signatures than in text-based signatures.  So you expect

22  to get more variation in a stylized signature.  And as

23  an examiner or someone reviewing signatures, you need to

24  appreciate that and understand it.

25     **Q.   Fair enough.  Moving on to the study that you**

1  cite at note 23.

2      A.   Okay.

3      Q.   **That study considered fingerprint**

4  **identification, not signature comparison; correct?**

5      A.   That's correct, yes.

6      Q.   **Moving on to page 26, in further discussing**

7  **form-blindness, you cite in note 24 an Honors Theses by**

8  **Meredith G. Moody; is that right?**

9      A.   Are you still hearing me?

10     Q.   **Yes.  I don't see you anymore, though.**

11     A.   Yeah.  My Zoom is connecting.

12          Okay.  Yes, that was a master's thesis.

13     Q.   **Okay.  And that thesis also involved**

14  **fingerprint comparison, not signature comparison; is**

15  **that right?**

16     A.   Right.  Yes.  If you think of it, a

17  fingerprint comparison is a comparison of different

18  persons.  Stylized signature is a comparison of

19  different patterns.  So the underlying principle is the

20  same.  Can you differentiate between curvatures,

21  thickness of lines, angles, things like that.  That's as

22  to both fingerprints and signatures.

23     Q.   **But it doesn't specifically talk about**

24  **comparing signatures; does it?**

25     A.   No, no.  It's about fingerprints.

1    Q.    Then in a note 25, that's another citation to

2    the Moody thesis.  And note 26 is a study from 1946,

3    which you cite for the proposition that forensic

4    document examiners must pass a form-blindness test.

5    A.    Yes.

6    Q.    Is there anything more current?

7    A.    No.  In fact, the tests that Albert Osborn

8    designed and is in this book, Questioned Document

9    Problems, is still used by document examiners when

10   they're tested for form-blindness before beginning

11   training.

12   Q.    And are you aware of any specific Texas

13   election officials who are afflicted with

14   form-blindness?

15   A.    No.

16         MR. MIRZA:  Objection, form.

17         THE WITNESS:  I don't know if anyone has been

18   tested, but I don't know if anyone has form-blindness.

19         MS. MACKIN:  Q.  I would like to show you a

20   document on Zoom, but I'm not sure it's going to come

21   through if your video is not working.

22   A.    My video is not working.

23         MR. MIRZA:  Is it still saying "connecting"?

24         THE WITNESS:  I keep losing my internet

25   connection.  I'm not sure why.

1          MS. MACKIN:  I'm sorry, that's really

2    frustrating.  It's terrible at my house.  I'm in my

3    office right now, and it's maddening, so I empathize.

4          THE WITNESS:  That's okay.  Let's see if I can

5    connect again.  I think I may need to rejoin the

6    meeting.

7          MS. MACKIN:  Can we go off the record?

8          THE REPORTER:  Sure.

9          (Brief recess taken:  2:07 p.m. to 2:09 p.m.)

10         MS. MACKIN:  Back on the record.

11         MR. MIRZA:  Yep.

12         MS. MACKIN:  Q.  All right.  I am sharing a

13   document in the chat box.  Please let me know when you

14   are able to access it.

15         (Exhibit No. 3 was marked for identification.)

16         THE WITNESS:  Yes, I have it.

17         MS. MACKIN:  Q.  Is that the thesis you are

18   citing in notes 24 and 25 of your report?

19    A.   Yes, it is.

20    **Q.   And I would like you to scroll down to page --**

21         MR. MIRZA:  Real quick.  Dr. Mohammed, if you

22   could give me a couple of seconds to object.  Just

23   answer the questions after like a two- or three-second

24   pause.

25         THE WITNESS:  Okay.

1              MS. MACKIN:   Q.   So it's labeled page 1 on the

2      report, but it's actually page 9 of the pdf file.

3         A.   Oh, just one correction.   I think this was for

4      a bachelor's degree, not for a master's degree.

5         **Q.   Okay.   Thank you for that clarification.**

6         A.   Yeah, page 9.   I have it.

7         **Q.   The first sentence on the "Problem Statement,"**

8      **says, "Form-blindness is a problem that affects a very**

9      **small percentage of the population."**

10             **Did I read that correctly?**

11        A.   Yes.

12        **Q.   That's all that I have on that.**

13             **Returning to your report, note 27 cites a**

14     **study from 1910 for the proposition that "...no complex,**

15     **skillfully written, genuine signatures of one writer**

16     **have ever been found to be exactly alike, but such a**

17     **statement should be understood to be true speaking**

18     **microscopically and not as the carpenter measures."**

19             **Did I read that write?**

20        A.   Yeah.   That's not actually a study.   This is a

21     quote from Osborn's book.

22        **Q.   Whole book, okay, thank you.**

23        A.   Yeah.

24        **Q.   What do you mean by -- it seems you're drawing**

25     **a distinction between speaking microscopically and as**

1  the carpenter measures.  Can you explain that to me a

2  little bit more, please?

3       A.   I'm sorry.  Okay.  Yes, any -- if you look at

4  the signature, we talk about the wet-ink signature under

5  a microscope, then you tend to see more really fine and

6  subtle details.  You can look at very small features

7  such as what's called the -- the area within a circle,

8  for example, in an uppercase "b" or in an "o," and look

9  at them microscopically and see and compare them.

10           If you measure with a carpenter's rule, you

11  probably would not have any statistical difference

12  between them or measurable difference between them.  I

13  shouldn't say "statistical."  Measurable.

14           So basically looking through the microscope

15  adds a lot more to the signature.  So you may have two

16  signatures that look alike when you look at them with

17  your naked eye.  But under a microscope, you can see --

18  you will see the very small variations between those

19  signatures.

20       Q.   Okay.  Thank you for that, Doctor.

21           The last sentence of paragraph 49 talks about

22  how, "Inadequate standards or failure to use adequate

23  specimens fully representing the range of variation in a

24  writer's signature is a well-known source of error."

25           Is that in the context of forensic document

1  examination?

2      A.   Yes.

3      Q.   **All right.  Moving forward to page 29.  You**

4  **state in the second to the last sentence of your**

5  **conclusion on paragraph 55, "The use of digitized**

6  **signatures as a reference sample for comparison with an**

7  **original wet-ink signature will most likely exacerbate**

8  **the error rate."**

9          **What is the basis for that statement?**

10     A.   Again, that comes from experience.  In fact,

11  we now are planning a study just to look at that, the

12  electronic signatures and the differences between

13  signing with a stylus on a plastic substrate and signing

14  with an ink pen.

15         People, for example, for driver's licenses,

16  especially here in California, you sign on an electronic

17  tablet with the stylus and on the plastic surface and

18  create an image.  Sometimes those signatures -- not

19  sometimes.  Quite often, those signatures are submitted

20  for specimens.  And they're pretty much useless as a

21  specimen signature because they're just -- to use a

22  baseball term, it's out in left field because of the

23  writing conditions.

24     Q.   **Did you consider any studies on the**

25  **suitability of digitized signatures for identity**

1    verification?

2        A.    Those -- those studies are underway now.

3    Nothing has been published so far as far as I'm aware.

4        Q.    Did you attempt to find such studies?

5        A.    Yes.

6        Q.    Are you familiar with a 2017 study published

7    in Forensic International that found no indications that

8    digitized signatures are less well-suited than

9    conventional signatures for examining authenticity?

10            MR. MIRZA:  Objection, form.  Objection, form.

11    You can answer the question.

12            THE WITNESS:  Is that Forensic Science

13    International?

14            MS. MACKIN:  Q.  Yes.

15        A.    Okay.  What was the name of the article?

16        Q.    "Examining authenticity:  An initial

17    exploration of the suitability of handwritten electronic

18    signatures."

19        A.    No, I don't think so.

20        Q.    Okay.  Are -- do you have an opinion on

21    whether laypeople are more likely to mistakenly evaluate

22    the same signatures as opposed to being more likely to

23    mistakenly evaluate different signatures?

24            MR. MIRZA:  Objection.  Form.

25            THE WITNESS:  If I understand your question,

1  is it more likely that laypersons would associate

2  signatures written by the same person and have a high

3  error rate in associating signatures by different

4  writers?

5       MS. MACKIN:  Q.  No I'm sorry.  I asked that

6  question very poorly.  So let me try.  It's not your

7  fault that it did not make sense.

8       A.   Okay.

9       Q.   **The error is on this end.**

10          **So let's say if -- maybe you don't have an**

11  **opinion on this, which is fine.  If six people are**

12  **evaluating the same six signatures, do you think that**

13  **it's more likely that one of those signatures is going**

14  **to be misidentified by all six of the people?**

15       A.   Yeah, I really -- I really have no opinion on

16  that.  Again, from the testing done, between laypersons

17  and an experts, the laypersons have a high error rate.

18  But laypersons, they are not -- they are good at

19  identifying genuine signatures.  But when it comes to

20  signatures that have issues, then they have more

21  problems.  So you may have one or two or three persons

22  of six who have -- who have good eyesight, good eyes and

23  some experience, and they may get all six right.  I

24  don't know.

25       Q.   **Okay.  Do you have an opinion about whether**

1    **people tend to sign more consistently when they know**

2    **that their signature is going to be used to verify their**

3    **identity, for example, the last will and testament --**

4              MR. MIRZA:  Objection, form.

5              MS. MACKIN:  Q.  -- the example you gave

6    earlier today?

7              MR. MIRZA:  Sorry.  Objection, form.

8              THE WITNESS:  Yes.  In general -- in general,

9    you find that people who write or cancel documents, last

10   will and testament, sometimes healthcare directives and

11   DNR documents, do not resuscitate, there tends to

12   concentrate of mind and is a more formal signature.

13   That's another reason why when we -- when we have

14   questionables and so on, we request similar types of

15   documents.

16             If you are looking at a contract, I would want

17   to see specimen contracts.  If we are looking at checks,

18   I would want to see specimen checks.  If you get all of

19   them, that would be fine.  You can determine what the

20   person writes like on different documents.

21             To answer your question, in general, yes, they

22   tend to write more carefully.

23             MS. MACKIN:  Q.  All right.  Those are all the

24   questions that I have on your report.  But I would like

25   to just ask you a few questions on Exhibit B.  I'm

```
 1  almost -- I'm almost done.

 2       A.   That's okay.  What's Exhibit B?

 3       Q.   Exhibit B to --

 4       A.   My CV.

 5       Q.   It is your listing of trial and deposition

 6  record.

 7       A.   Okay, "Testimony Listing," okay.

 8       Q.   Do you have that in front of you?

 9       A.   I don't.  I can pull it up on my laptop,

10  unless you want to -- to --

11       Q.   I can send it as well.

12       A.   Yeah, that would -- that would be easier.

13       Q.   Be a little easier, okay.

14       A.   Yeah.

15       Q.   And I don't have Exhibit B separated out, so I

16  had to resend the whole file.

17       A.   That's fine.  (Reviewing document.)

18       Q.   Are you there?  I'm sorry.  I'm not trying to

19  rush you.

20       A.   I have it.

21       Q.   I wanted to make sure you aren't waiting on

22  me.

23            Dr. Mohammed, can you please identify which of

24  these cases related to election administration?

25       A.   Okay.  Okay.  If we start on page 5 of 7.
```

1      Q.   Yes, sir.

2      A.   The date 09/18/18, deposition St. Louis,

3  Missouri, that was an election case.

4      Q.   Okay.  At a very high level, what was the

5  nature of your testimony?

6      A.   Pretty much what I testified to here today.

7      Q.   Was your -- did you prepare an expert report

8  in that case?

9      A.   Yes, I did.  Yes.

10      Q.   Was it --

11      A.   Go ahead.

12      Q.   I'm sorry.

13           Was that report different from the report that

14  you prepared in this case?

15      A.   Most of the report would have been the same

16  except for the differences in the election statutes and

17  how the signature verifications are treated in Missouri

18  as compared with Austin.

19      Q.   Okay.

20      A.   That would have been the only difference,

21  yeah.

22           Go down to second to the last entry on page 5,

23  11/20/18, deposition, Austin, Texas, that was an

24  election case.

25      Q.   Did you prepare an expert report in that case?

88

1    A.    Yes.

2    **Q.    This is the Galvan vs. Pablos case?**

3    A.    Right.  That's correct.

4    **Q.    And was the expert report you prepared in that**

5    **case different from the one that you prepared in this**

6    **matter?**

7    A.    Yeah.  Again, I've done maybe ten states or

8    ten of these before, and the reports are very -- very

9    much the same except that the way the different statutes

10   are written, different guidance is given to officials in

11   respective states and counties.  That's the only

12   changes, really.

13   **Q.    All right.  And my colleague Michael Abrams, I**

14   **believe, took your deposition in that case.  I mentioned**

15   **to him yesterday that -- oh, his feelings are going to**

16   **be so hurt if you don't remember him.**

17   A.    Was that the one in Austin?

18   **Q.    Yes, yes.**

19   A.    Yeah, okay.

20   **Q.    I mentioned to him yesterday that I was taking**

21   **your deposition today, and he said that it would be a**

22   **pleasant deposition, and that you were very, very nice**

23   **to deal with.  So...**

24   A.    Yeah.  I think there were three or four

25   attorneys.  I don't recall the names.  But it was a good

1    deposition.  Everyone was fine.

2           Let's go back down.  Page 6, 6/29/19 [sic],

3    Polk County District Court, Des Moines, Iowa.  And that

4    was an election case again.  Again, very similar to the

5    one we're discussing here today.

6           Q.   You prepared an expert report in that case as

7    well?

8           A.   Yes and testified.

9           Q.   Okay.  And it was of a similar nature to

10   your --

11          A.   Very similar, yes.

12          Q.   -- testimony in this case?

13          A.   Oh.  Yeah, before that, I think I missed the

14   one on page -- page 5, 9/24/18.  Again, there was a

15   deposition on the 18th, and I testified on the 24th in

16   Missouri.

17          Q.   Okay.

18          A.   Again, that was an election case, yeah.

19          Q.   All right.  Any others?

20          A.   There would have been one -- what day was

21   that?  I knew there was one out of New Hampshire, which

22   I did by video.  Oh, there you go.  Page 4 of 7,

23   2/28/18, a deposition, Burlingame, California, via

24   video, Saucedo vs. State of New Hampshire.

25          Q.   And you prepared an expert report in that case

1  as well?

2      A.   Yes.  Yes.  I think those are the ones that I

3  testified in.

4      **Q.   Okay.  Dr. Mohammed, have I treated you**

5  **courteously today?**

6      A.   Oh, very much so.  I apologize for my

7  difficulties with Zoom.  Sorry for the delays.

8      **Q.   Happens to the best of us.**

9      A.   Yeah.  I need to make one correction.

10     **Q.   Okay.**

11     A.   You had asked me earlier about the amount of

12  time I've spent on this case.  I think I said 45 hours.

13  I got my math totally wrong.

14          So far, I've billed for 10.5 hours, which has

15  been paid, and another maybe two hours outstanding from

16  preparation for this deposition.

17     **Q.   All right.**

18     A.   For a total of about maybe 12, 12 and a half

19  hours.

20     **Q.   At $400 per hour?**

21     A.   Yes, yes.

22     **Q.   Thank you for that clarification, and I'll**

23  **pass the witness.  I've enjoyed speaking with you today,**

24  **Dr. Mohammed.**

25     A.   Same here.  Thank you.

1           MR. MIRZA:  Can we take a -- I think I will

2  only need maybe five -- maybe a ten-minute break, if

3  that's okay with everybody.

4           MS. MACKIN:  It would be.

5           THE WITNESS:  Sure.

6           THE REPORTER:  Off the record.

7           (Recess taken:  2:30 p.m. - 2:40 p.m.)

8           THE REPORTER:  Back on the record.

9                    EXAMINATION

10 BY MR. MIRZA:

11     Q.  Dr. Mohammed, if you could go to -- I think it

12 was State's Exhibit B, the expert report, paragraph 40,

13 it's on page 17.  Just let me know when you're there

14 yet.

15     A.  Yes, I have it.

16     Q.  Okay.  Great.

17          And so the image on paragraph 40 are the two

18 images of George Richardson's signatures that you

19 reviewed for five minutes; correct?

20     A.  Right.  That's correct.

21     Q.  Okay.  And when you were reviewing these

22 signatures, were you performing an FDE examination about

23 whether the signatures were signed by the same person?

24     A.  No, I could not, because they're two different

25 styles of signatures.  So there's very little

92

1  comparability between the two of them.

2       Q.   Okay.  And what was -- sorry.

3            And so your report cites various studies to

4  support your opinions; correct?

5       A.   That's correct.

6       Q.   And in addition to these studies, are all of

7  your opinions based on your own personal knowledge,

8  experience, expertise and research?

9       A.   Yes.

10           MS. MACKIN:  Objection, form.

11           MR. MIRZA:  Q.  You can answer the question.

12      A.   Yes.

13           MR. MIRZA:  Okay.  I think those were all the

14  questions I had.  I'll pass the witness.

15           Anna, are you still there?

16           MS. MACKIN:  I'm still here.  I do not have

17  anything else.  Isaac?

18           MR. TAWIL:  I'll reserve any questions I have

19  for later testimony, if there is any.  I have nothing

20  today.

21           THE REPORTER:  Mr. Mirza, did you need first a

22  read and sign?

23           MR. MIRZA:  We would like to read and sign.

24           THE REPORTER:  And did you need a copy of the

25  transcript?

1          MR. MIRZA:  Yes.  Yeah.

2          THE REPORTER:  And then Isaac?

3          MR. TAWIL:  Yes.  I'll take a copy, please.  I

4    don't like paper, so digital only, if that's possible.

5          THE REPORTER:  That is possible.

6          All right.  Going off the record.

7          (Deposition adjourned at 2:44 p.m.)

8                      --oOo--

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

94



1    ERRATA AND SIGNATURE

2    WITNESS NAME:              DATE OF DEPOSITION:

3    LINTON A. MOHAMMED, PhD    MONDAY, MAY 4, 2020

4    PAGE/LINE    CHANGE              REASON

5    16/3    other → another

6    18/16   was → as

7    27/3    MT → empty

8    27/7    MT → empty

9    27/14   MT → empty

10   41/23   patent → pattern

11   55/7    Called → call

12   72/25   relive → relearn    [Amended from 05/14/20]

13   76/16   pdf → PhD

14

15

16

17

18

19

20

21

22

23

24

25

95



1    I, LINTON A. MOHAMMED, PhD, have read the

2  foregoing deposition and hereby affix my signature that

3  same is true and correct, except as noted herein.

4

5

6    LINTON A. MOHAMMED, PhD

7

8  THE STATE OF CALIFORNIA

9    Before me, PERVEZ DINSHAW ZACK, NOTARY PUBLIC, on

10  this day personally appeared LINTON A. MOHAMMED, PhD,

11  known to me (or proved to me under oath or through

12  DRIVEN LICENSE (description of identity card or other

13  document) to be the person whose name is subscribed to

14  the foregoing instrument and acknowledged to me that

15  they executed same for the purposes and consideration

16  therein expressed.

17    Given under my hand and seal of office on

18  this 18 day of JUNE , 2020 .

19

20

21    SEE
       ATTACHED
22  NOTARY PUBLIC IN AND FOR    PAGE

23  THE STATE OF CALIFORNIA.

24  My Commission Expires: NOV. 28 2022

25

# ACKNOWLEDGMENT

A notary public or other officer completing this
certificate verifies only the identity of the individual
who signed the document to which this certificate is
attached, and not the truthfulness, accuracy, or
validity of that document.

State of California
County of _____ San Mateo _____ )

On 18 TH · JUNE 20 _____ before me, PERVEZ DINSHAW ZACK *(NOTARY PUBLIC)*
(insert name and title of the officer)

personally appeared CLINTON A. MOHAMMED ,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the
person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____   (Seal)

PERVEZ DINSHAW ZACK
Notary Public - California
San Mateo County
Commission # 2265291
My Comm. Expires Nov 28, 2022

96

```
1   STATE OF TEXAS      )

2                    REPORTER'S CERTIFICATION

3          I, KIMBERLEE SCHROEDER, CSR, RPR, CCRR,

4   Certified Shorthand Reporter for the State of Texas,

5   License No. 10925 and the State of California, License

6   No. 11414, hereby certify that the witness was duly

7   sworn and that this transcript is a true record of the

8   testimony given by the witness.

9          I further certify that I am neither counsel

10  for, related to, nor employed by any of the parties or

11  attorneys in the action in which this proceeding was

12  taken.  Further, I am not a relative or employee of any

13  attorney of record in this cause, nor am I financially

14  or otherwise interested in the outcome of the action.

15         Subscribed and sworn to by me this day, the

16  21st day of May, 2020.

17

18

19

20         _____

21         KIMBERLEE SCHROEDER, CSR, RPR, CCRR
           TX CSR No. 10925 - CA CSR No. 11414
22

23

24

25
```

### IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

| | | |
|---|---|---|
| DR. GEORGE RICHARDSON, ROSALIE WEISFELD, AUSTIN JUSTICE COALITION, COALITION OF TEXANS WITH DISABILITIES, MOVE TEXAS CIVIC FUND, LEAGUE OF WOMEN VOTERS OF TEXAS, and AMERICAN GI FORUM OF TEXAS, INC., | § § § § § § § § | |
| *Plaintiffs*, | § § § | |
| v. | § § | No. 5:19-cv-00963 |
| TEXAS SECRETARY OF STATE, TRUDY HANCOCK, IN HER OFFICIAL CAPACITY AS BRAZOS COUNTY ELECTIONS ADMINISTRATOR, AND PERLA LARA IN HER OFFICIAL CAPACITY AS CITY OF MCALLEN, TEXAS SECRETARY, | § § § § § § § | |
| *Defendants*. | § | |

### DEFENDANT SECRETARY OF STATE'S NOTICE OF ORAL DEPOSITION
### OF DR. LINTON A. MOHAMMED

TO:    Dr. Linton A. Mohammed, by and through Plaintiffs' attorneys of record, Hani Mirza, Zachary D. Dolling, Beth Stevens, Ryan Cox, and Chris Rainbolt, Texas Civil Rights Project, 1405 Montopolis Drive, Austin, Texas 78741; and Joanna Suriani, Willkie Farr & Gallagher LLP, 1875 K Street, N.W., Washington, DC 20006.

Defendant Texas Secretary of State will take the videoconference deposition of Dr. Linton Mohammed pursuant to Federal Rule of Civil Procedure 30. The deposition will commence on May 4, 2020 at 10:30 AM and be held virtually via Zoom videoconference and will continue from day to day until completed. The deposition will be transcribed by a certified court reporter designated by the Defendant Texas

1



Exhibit
Dr. Lonton Mohammed
1
5/04/20  KS

Secretary of State, who reserves the right to use the deposition for any purpose permitted under the Federal Rules of Civil Procedure or Federal Rules of Evidence.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

RYAN L. BANGERT
Deputy First Assistant Attorney General

DARREN L. MCCARTY
Deputy Attorney General for Civil Litigation

THOMAS A. ALBRIGHT
Chief for General Litigation Division

*/s/ Anne Marie Mackin*
ANNE MARIE MACKIN
Texas Bar No. 24078898
Assistant Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2798 | FAX: (512) 320-0667
anna.mackin@oag.texas.gov

**ATTORNEY FOR DEFENDANT
TEXAS SECRETARY OF STATE**

2

## CERTIFICATE OF SERVICE

I certify that that on April 29, 2020 this notice was served upon counsel listed below via email.

**Hani Mirza**
hani@texascivilrightsproject.org

**Zachary D. Dolling**
zachary@texascivilrightsproject.org

**Rebecca Harrison Stevens**
beth@texascivilrightsproject.org

**Ryan V. Cox**
ryan@texascivilrightsproject.org

**Chris Rainbolt**
chris@texascivilrightsproject.org

**Joanna Suriani**
jsuriani@willkie.com

**Eric Magee**
e.magee@allison-bass.com

**Isaac J. Tawil**
itawil@mcallen.net

**Austin Stevenson**
astevenson@mcallen.net

**C. Robert Heath**
bheath@bickerstaff.com

**Gunnar P. Seaquist**
gseaquist@bickerstaff.com

*/s/ Anne Marie Mackin*
ANNE MARIE MACKIN
Assistant Attorney General

3

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

|  |  |
|---|---|
| DR. GEORGE RICHARDSON, ROSALIE WEISFELD, AUSTIN JUSTICE COALITION, COALITION OF TEXANS WITH DISABILITIES, MOVE TEXAS CIVIC FUND, LEAGUE OF WOMEN VOTERS OF TEXAS, and AMERICAN GI FORUM OF TEXAS, INC., | Civil Case No. 5:19-cv-00963 |
| Plaintiffs, |  |
| v. |  |
| TEXAS SECRETARY OF STATE, TRUDY HANCOCK, in her official capacity as BRAZOS COUNTY ELECTIONS ADMINISTRATOR, and PERLA LARA in her official capacity as CITY OF MCALLEN, TEXAS SECRETARY, Defendants. |  |

## DECLARATION OF DR. LINTON A. MOHAMMED

LINTON A. MOHAMMED, acting in accordance with 28 U.S.C. § 1746, Federal Rule of Civil Procedure 26(a)(2)(B), and Federal Rules of Evidence 702 and 703, does hereby declare and say:

1.      I am a Forensic Document Examiner ("FDE"), certified by the American Board of Forensic Document Examiners. I have been engaged in this matter on behalf of Plaintiffs Dr. George Richardson, Rosalie Weisfeld, Austin Justice Coalition, Coalition of Texans With Disabilities, Move Texas Civic Fund, League

**Page 1 of 30**

**Exhibit**
**Dr. Lonton Mohammed**

**2**

5/04/20  KS

1613

of Women Voters of Texas, and American GI Forum of Texas, Inc.,  to opine on the reliability of the procedures and techniques of the Texas signature verification process for mail-in ballot applications and mail-in ballot return envelopes as set forth in Texas elections laws and guidance.

## I.    QUALIFICATIONS

2.      I am a U.S.-certified and internationally recognized FDE, and the focus of my research and professional experience is on handwriting and signature identification and the scientific approach to analyzing questioned signatures. I am, and since 1998 continuously have been, certified by the American Board of Forensic Document Examiners (ABFDE), a certifying board for FDEs in North America. I am also certified in document examination by the Chartered Society of Forensic Sciences (United Kingdom). I specialize in the forensic science of analyzing genuine, disguised, and simulated signatures.

3.      I co-founded and I am currently the principal at Forensic Science Consultants, Inc., where I conduct forensic document examination casework and research on handwriting and signature examination as well as other forensic document examination (e.g., document alterations, obliterations, indented impressions, or pages added or removed). I am also an adjunct professor at Oklahoma State University, where I teach graduate courses on the scientific examination of questioned documents.

4.      During and prior to my time with Forensic Science Consultants, Inc., and for nearly fourteen years, I worked as Forensic Document Examiner and Senior Document Examiner for the San Diego Sherriff's Department Regional Crime Laboratory. There, I conducted examinations of signatures and handwriting for cases investigated by San Diego County agencies as well as by local police, state, and federal agencies. I also served as Technical Lead of the Questioned Documents Section of the Regional Crime Laboratory, trained investigators and attorneys, provided expert testimony, conducted research, and produced the Questioned Documents Section Quality Manuals. Prior to that, I worked internationally as an FDE at the Laboratory of the Government Chemist (England), the Caribbean Institute of Forensic Investigations Ltd. (West Indies), and the Trinidad and Tobago Forensic Science Center (West Indies). In those roles, I conducted forensic document examinations and testified in criminal and civil cases for multiple police forces and other government agencies.

5.      I am a Fellow of the Questioned Documents Section of the American Academy of Forensic Sciences (AAFS), a member and diplomate of the Chartered Society of Forensic Sciences, and a member of the Canadian Society of Forensic Science. I served as the Chair of the AAFS Questioned Documents Section from 2016 to 2018. I am an appointed member and Vice Chair of the Academy Standards Board, which was formed by the AAFS to develop documentary standards for the

forensic sciences. I served as a member of the National Institute of Standards and Technology's Expert Working Group on Human Facts in Handwriting Examination, the National Institute of Standards and Technology Organization of Scientific Area Committees' Physics/Pattern Interpretation Scientific Area Committee, and the Scientific Working Group on Documents. I have previously served as President, Vice President, Treasurer, and Director of the American Society of Questioned Document Examiners (ASQDE).

6.     I am the editor of the Journal of the American Society of Questioned Document Examiners. I am an editorial review board member of Forensic Science and Technology and I have served on the editorial review board of the Journal of Forensic Sciences. I am also a guest reviewer for the following journals: Forensic Science International, Science & Justice, Australian Journal of Forensic Science, Egyptian Journal of Forensic Sciences, and IEEE Transactions on Cybernetics.

7.     I have published sixteen articles on signature and handwriting examination, and forensic document examination. Many of my articles focus on the analysis of genuine and forged signatures and handwriting examination. I have also given numerous presentations and workshops on signature and document examination worldwide, including the United States, Australia, Brazil, Canada, China, Latvia, Poland, Portugal, Saudi Arabia, Scotland, and Turkey.

8.     In 2019, I authored a book titled, *Forensic Examination of Signatures* which describes and discusses state of the art techniques and research in signature examination.[1] I co-authored a book in 2012 titled *The Neuroscience of Handwriting: Applications for Forensic Document Examination*, which integrates research in the fields of motor control, neuroscience, kinematics, and robotics to evaluate questioned signatures and handwriting.[2] The book sets forth, among other things, the scientific fundamentals of motor control as relevant to handwriting; the impact of age, disease, and medication on handwriting; and a quantitative approach to signature authentication, including kinematic and laboratory analyses of genuine versus disguised versus forged signatures.

9.     In 2012, I received the American Board of Forensic Document Examiners' New Horizon Award "In Recognition of His Exceptional Contributions in Scientific Research for the Advancement of Forensic Document Examination." In 2019, I received the American Academy of Forensic Sciences Questioned Documents Section Ordway Hilton Award "In Recognition of Outstanding Contributions to Forensic Document Examination."

---

[1] Mohammed, L. (2019). *Forensic Examination of Signatures*. San Diego: Elsevier.

[2] Caligiuri, M.P., & Mohammed, L.A. (2012). *The Neuroscience of Handwriting: Applications for Forensic Document Examination.* Boca Raton: CRC Press/Taylor & Francis Group.

10.     I have testified as an expert witness in court and depositions more than 150 times on issues of signature, handwriting, and document examination in both civil and criminal cases, including cases in the United States, England, Trinidad & Tobago, and St. Vincent.

11.     I received a Ph.D. from La Trobe University in Melbourne, Australia in human biosciences, where I wrote my thesis on signature examination: "*Elucidating static and dynamic features to discriminate between signature disguise and signature forgery behavior.*" Prior to that, I received my undergraduate degree in science at the University of West Indies; underwent a two-year training program in document examination at the Trinidad and Tobago Forensic Science Center; and received a master's degree in forensic sciences at National University in San Diego, California.

12.     My *curriculum vitae* is attached as Exhibit A, and a Testimony Listing for the past five years is attached as Exhibit B. I am being compensated at a rate of $400.00 per hour. My compensation in this matter is not in any way contingent on the content of my opinion or the outcome of this matter.

## II.     BACKGROUND

13.     For this Declaration, I reviewed the Plaintiff's Original Complaint filed in this matter; the State of Texas Early Voting Ballot Board Handbook for Election Judges and Clerks 2018 (Updated January 2018); and relevant academic literature.

14.    Based on my review of the Complaint in this lawsuit, the laws challenged therein, Chapter 87 of the Texas Election Code, and the State of Texas Early Voting Ballot Board Handbook for Election Judges and Clerks 2018 (Updated January 2018), I understand that a group of election officials known as the Early Voting Ballot Board (EVBB) and/or the Signature Verification Committee (SVC) is required to compare the signatures on mail-in ballot applications and mail-in ballot return envelopes. § Senate Bill 5, 85th Legislature, First Called Session, (2017) [Sec. 87.041(c)].

15.    Signature verifications are conducted by the EVBB. The voter's signature may be accepted if, "neither the voter's signature on the ballot application nor the signature on the carrier envelope certificate is determined to have been executed by a person other than the voter, unless signed by a witness" Texas Election Code 87.041 (b) (2). In making this determination, the EVBB is guided by Texas Election Code 87.041 (e) and (f).

16.    In some jurisdictions, verifications of voter's signatures may also be conducted by a Signature Verification Committee ( SVC) that is appointed by the Early Voting Clerk. The SVC "compares signatures on applications and corresponding carrier envelopes only to determine that the signatures on these documents are of the same person." [Sec. 87.027(i)]. The SVC may use electronic

copies of the mail ballot application and carrier envelope certificate for comparing signatures.

17.   The EVBB makes a determination if the SVC cannot determine whether the signatures are made by the same person. The EVBB cannot overturn a decision of the SVC that determines the signatures are by one writer. However, the EVBB can overturn, by majority vote, a decision of the SVC that the signatures were completed by different writers.

18.   The signatures may be original "wet-ink" or electronic copies.

19.   Neither the statutes governing the signature matching process nor the State of Texas Early Voting Ballot Board Handbook for Election Judges and Clerks 2018 (Updated January 2018) provide any guidance to elections officials on how to compare signatures.

20.   Based on my understanding, Texas election officials are lay individuals, meaning they are not required to have any training, certification, or experience in document examination or signature comparison.

21.   Based on my understanding, there are no further written statewide standards or procedures for election officials to evaluate whether a signature on a mail-in ballot application or ballot return envelope match each other, or match a signature in the qualified voter file or voter registration card.

### III.   SUMMARY OF CONCLUSIONS

22.    The Texas signature match procedures do not set forth sufficient standards for determining whether a signature on a mail-in ballot application or return envelope match each other or match a voter signature displayed in the qualified voter file or on the voter's registration card, which results in error-prone determinations. Based on my review of the election statutes and Texas Early Voting Ballot Board Handbook, Texas also does not require election officials to have any training in signature examination and does not require that election officials be provided examination equipment, such as proper light sources and microscopes.

23.    Based on my experience and my review of the academic literature, it is my opinion that in these circumstances, Texas election officials are likely to make erroneous signature comparison determinations.

24.    Determining whether a signature is genuine is a difficult task for even a trained FDE, as signatures are written in different styles with varying levels of readability and variability. Laypersons, such as Texas election officials, have a significantly higher rate of error in determining whether signatures are genuine. Laypersons are also more likely to wrongly determine that authentic signatures are *not* genuine than to make the opposite error. In other words, Texas election officials are significantly more likely than trained examiners to make an incorrect signature-

comparison determination and are particularly likely to incorrectly decide that the signatures are *not* signed by the same person.

25.     The high rate of error among laypersons generally results from the inability to distinguish between normal "variations" in one individual's signatures as opposed to "differences" resulting from multiple signers. An individual's signatures may vary for myriad reasons, including age, health, native language, and writing conditions. Laypersons lack the tools and training to properly account for signature variation, which leads to erroneous mismatch determinations that are particularly pronounced in populations with greater signature variability, such as the elderly, disabled, individuals suffering from poor health, young voters (18-21), and non-native English speakers.

26.     These signature-determination errors are further compounded for Texas election officials with diminished eyesight or "form blindness" (a type of impairment in visual perception defined below)—both of which impact an individual's ability to make accurate handwriting authenticity determinations. While FDEs are screened for these traits,  Texas law and guidance regarding signature comparison do not require election officials to undergo such screening.

27.     According to Senate Bill 5, 85th Legislature, First Called Session, (2017), the EVBB/SVC may compare signatures with two or more signatures the voter made within the preceding six years and on file with the voter registrar or county clerk to

determine whether signatures are those of the voter. Under current law, the comparison can be used to determine whether the signatures are those of the same voter (i.e. to accept or reject.)

28.    At a minimum, ten signature samples are usually required for an accurate signature determination to account for an individual's signature variability, given proper examination conditions.[3] However, this minimum amount can increase exponentially in cases where the writer is ill, disabled, elderly, or has other handwriting issues.

29.    The Texas Early Voting Ballot Board Handbook includes the following categories of voters as having valid reasons for early voting. 1. Persons who are 65 years of age or older on election day. [Sec. 82.003] and, 2. Persons who have a sickness or physical condition that prevents them from appearing at the polling place on election day without a likelihood of needing personal assistance or injuring their health. Expected or likely confinement for childbirth on election day is sufficient cause to entitle a voter to vote early by mail on the ground of disability. [Sec. 82.002]

30.    Further, if election officials have insufficient time to compare signatures, that would likely lead to additional erroneous determinations. A signature comparison may normally take a minimum of two hours.

---

[3] Hilton, O. (1965). A further look at writing standards. *The Journal of Criminal Law, Criminology and Police Science*, Vol. 56, No. 3, p. 383.

31.    In sum, it is my opinion that Texas's current signature matching rules and procedures, which allow individuals without adequate training—and without guidance—to reject mail-in ballots and ballot applications for signatures they deem to be non-matching, will result in a significant number of erroneous rejections.

## IV.    ANALYSIS AND OPINIONS

### A. Texas Election Officials are likely to make erroneous signature Comparison Determinations.

32.    Individuals untrained in signature examination, like Texas election officials, are very likely to make mistakes when comparing signatures and are particularly likely to reject signatures erroneously as inauthentic or non-matching when they are in fact written by the same individual. These rejections are considered "Type II"[4] errors, and laypersons are more likely than FDEs to make such errors for several reasons. First, untrained election officials cannot reliably determine whether signatures are written by different individuals or whether the signatures are written by one person but exhibit natural variations. Second, untrained reviewers do not account for the many reasons for naturally varying signatures, causing them to erroneously reject authentic signatures. This is particularly true for writers who are poorly educated, learned English as a second language, elderly, disabled, young, or have health conditions. Third, untrained elections officials also fail to account for

---

[4] *Infra* paragraph 33.

the different signature styles and features, leading to erroneous rejections. Lastly, Texas election officials are not tested for form blindness like FDEs, a condition that impacts their ability to accurately review signatures.

### i. Untrained laypersons are more likely than FDEs to erroneously determine authentic signatures are inauthentic.

33. There are two types of errors in signature examination. Type I errors occur when a non-genuine signature is deemed to be genuine, and a Type II error occurs when a genuine signature is concluded to be non-genuine. Type II errors are considered to more egregious than Type I as, in criminal cases an innocent writer may be charged based on an FDEs Type II error.

34. Compared to FDEs, laypersons have higher so-called Type II error rates. In a 2001 study reviewing the error rates of FDEs and laypersons in comparing six genuine signatures with six non-genuine signatures, laypersons made Type II errors in 26.1% of cases while trained signature FDEs made such errors in 7.05% of cases.[5] That means that laypersons are more than 3 ½ times more likely to declare an authentic signature non-genuine—which, in the case of signatures on mail-in ballots and ballot applications, would mean that election officials would reject more than 3 ½ times the number of ballots and applications than FDEs. It should be noted that

---

[5] Kam M., Gummadidala K., Fielding G., Conn R. (2001). Signature Authentication by Forensic Document Examiners. *Journal of Forensic Science*, 46(4):884-888.

for this study, six specimen signatures were used. If, as in Texas elections, only one genuine signature is used for comparison, it is highly likely that the error rate for both experts and laypersons would increase significantly.

35.     This study also found that laypersons are much more likely to make Type II errors than Type I errors, although laypersons are still substantially more likely to make Type I errors than trained FDEs (laypersons made Type I errors in 6.47% of cases while trained FDEs made such errors in 0.49% of cases).[6] A Type II error is considered among FDEs as being more egregious than a Type I error for signature verification.

36.     Similarly, a study conducted in Australia found that FDEs were statistically better than laypersons in determining genuineness or non-genuineness. The FDE group had a 3.4% error rate while the laypersons had a 19.3% error rate.[7] It must be noted that these error rates occurred when adequate signature samples and examination time were available.  It can safely be assumed that the error rate will rise when inadequate comparison samples and time are available to the screener.

---

[6] *Id*.

[7] Sita, J., Found, B., & Rogers, D. (2002). *Forensic handwriting examiners expertise for signature comparison*. J. Forensic Sci. 47(5).

ii.    **Texas election officials cannot reliably determine whether signatures are written by different individuals or by one individual and exhibit natural variations.**

37.    Determining whether signatures are made by the same or different individuals requires a reviewer to discern whether a feature or combination of features in signatures are "differences" or "variations." Variations are deviations among repetitions of the same handwriting characteristic(s) that are normally demonstrated in the habits of each writer. A significant difference is an individualizing characteristic that is structurally divergent between handwritten items, that is outside the range of variation of the writer, and that cannot be reasonably explained.[8]

38.    In the field of signature examination, unexplainable "*differences*" between signatures suggest that different individuals wrote the signatures, whereas "*variations*" between signatures mean that one individual wrote the signatures. Determining whether signature features are "differences" or "variations" is one of the most difficult determinations in signature examinations, even for experienced FDEs.

39.    To make such a judgment reliably requires, at a minimum:

---

[8] Scientific Working Group for Documents Standard for the Examination of Handwritten Items (www.swgdoc.org).

- Extensive training with different types of signatures: Becoming an FDE requires at least two, and typically three, years of full-time training with an experienced examiner, with at least eighteen months of training in the examination of signatures and handwriting. FDEs learn the science of signature examination, gain experience in casework, and are tested for proficiency.

- Adequate magnification and lighting equipment.

- Excellent eyesight.

- Adequate time: Insufficient time examining signatures is conducive to making errors. For example, one study found that FDEs spent more time looking at the questioned and known signatures than laypersons, and their evaluations were more accurate.[9]

Without these elements, Texas election officials are likely to misconstrue legitimate and expected "variations" between one individual's signatures for "differences" in signatures between two individuals, and conclude incorrectly that someone other than the registered voter signed the mail-in ballot or ballot application.

---

[9] Merlino, M., Freeman, T., Dahis, V., Springer, V., et al. (Jan. 2015). *Validity, Reliability, Accuracy, and Bias in Forensic Signature Identification*. Department of Justice Grant 2010-DN-BX-K271, Document 248565, https://www.ncjrs.gov/ pdffiles1/nij/grants/248565.pdf.

40. This is illustrated by the case of voter Dr. George Richardson whose signature was incorrectly rejected. While there are pictorial dissimilarities between the two signatures, the EVBB may not have considered the possible reasons[10] for these apparent differences. Dr. Richardson's compared signatures are illustrated below. Copies of the submitted documents bearing Dr. Richardson's signatures are attached as Exhibit C.

| | |
|---|---|
| BALLOT BY MAIL REQUEST FORM | |
| MAIL-IN BALLOT SIGNATURE | |

---

[10] *Infra* paragraph 41.

### iii. Untrained reviewers erroneously reject authentic signatures because they do not account for the many reasons for naturally varying signatures.

41.    Further, an individual's signatures may vary for myriad reasons, and to properly determine whether signatures are written by the same individual, one must consider the various reasons why features of the same individual's signatures may visually appear different. In one of the leading textbooks on handwriting examination, authors Roy Huber & A.M. Headrick identified twenty common reasons why individuals' signatures may appear to show variations:

- Adequacy of standards (or samples)—inadequate standards in terms of quantity and contemporaneousness will not be representative of the writer's range of variation. Variations may therefore be interpreted as differences.

- Accidental occurrences—i.e., these are one-off variations that will not appear in the specimen signatures.[11] Misinterpretation may lead to a decision of difference versus variation.

- Alternative styles—i.e., some writers have alternate signature styles. This may not be represented in the specimens.

- Ambidexterity.

---

[11] A specimen signature is a signature that is known to have been written by a person. It is not disputed. Typical specimens are Driver's Licenses and Identification Cards.

- Carelessness or negligence.

- Changes in the health condition of writer.

- Changes in the physical condition of writer—e.g., fractures, fatigue, or weakness may alter features of an individual's signature.

- Changes in the mental condition or state of the writer.

- Concentration on the act of writing.

- Disguise or deliberate change.

- Drugs or alcohol.

- Influence of medications.

- Intentional change for later denial.

- Nervous tension.

- Natural variations—i.e., inherent variation as a result of differences in neuro-muscular coordination.

- Writing conditions—e.g., the individual's place or circumstances, such as in a moving vehicle or at a stationary table.

- Writing instrument—e.g., a pen versus a stylus.

- Writing position—e.g., the individual's stance.

- Writing surface—e.g., paper versus electronic screen.

- Writing under stress.

Examiners must consider each of these reasons in determining whether a feature is a "difference" created by different writers or whether the feature is simply a "variation" from the same writer. It is very unlikely that a Texas election official will have the knowledge, training, and experience to properly account for these factors.

42.    Laypersons are significantly more likely than FDEs to incorrectly reject authentic signatures of illiterate writers[12], writers for whom English is a second language, elderly writers, disabled writers, and writers with health conditions[13,14] to be non-genuine. Studies have shown that these types of writers tend to have less pen control than most other writers, and therefore would have a greater range of variation in their signatures. And the increased variation in the signatures of these groups only compounds laypersons' tendencies to err on the side of incorrectly finding authentic signatures to be non-genuine.

---

[12] Hilton, O. (1965). A further look at writing standards. Journal of Criminal Law, Criminology, and Police Science, Vol. 56, No. 3, pp.383.

[13] Hilton, O. (1956). Influence of serious illness on handwriting identification. Postgraduate Medicine, Vol. 19, No. 2.

[14] Hilton, O. (1969). Consideration of the writer's health in identifying signatures and detecting forgery. Journal of Forensic Sciences, Vol. 14, No. 2, pp. 157-166.

43.     Since signatures are developed as a motor program in the brain[15], the signatures of writers for whom English is a second language are more likely to exhibit wide ranges of variation, as these writers will have to discard their former learned motor program and develop a new one for their new signature style. For instance, a writer who first learned to write in a non-Latin-based script, such as Chinese, will naturally show more variation when signing a document in English than a native writer. Likewise, where the writer's native language is written right to left, such as Urdu, the writer's signature may also be more likely to show variations in letter slanting. Qualified, experienced experts in the area of signature verification would know and account for these factors in evaluating signatures; Texas election officials, even if put through a short training session, are unlikely to be able to accurately account for these differences, particularly in an expedient time frame or when only one or a few specimen signatures are available for comparison.

44.     Furthermore, young voters (ages 18 to 25) are not likely to have fully developed signatures. According to Huber & Headrick (1999), "the development and progress of one's handwriting passes through four stages in the course of a lifetime: (1) the formative stage, (2) the impressionable or adolescent stage, (3) the

---

[15] Mohammed, L. (2019). Forensic Examination of Signatures. Elsevier: San Diego, pp. 5-16.

mature stage, and (4) the stage of degeneration."[16] The signatures of young voters will fall between stages 2 and 3.   The U.S. Postal Service has reported that "writer[s] achieve graphic maturity by the 20th birthday."[17] Handwriting was developed as a means of communication[18], whereas signatures are developed as a means of identification[19]. Signatures tend to be more personalized and can therefore be considered as an over-developed form of handwriting. It follows that young writers today will not have developed signatures until later in life. This is exacerbated as young writers will presumably need to sign less often due to the increased use of personal identification numbers ("PINs") and other non-handwritten forms of identification. Their signature development can reasonably be expected to take longer than for previous generations. This will lead to an increased range of variation in a young writer's signature. The handwriting of adolescents can cause difficulties even for trained FDEs. Comparisons by untrained individuals of young voters'

---

[16] Huber, R.A. & Headrick, A.M. (1999). *Handwriting Identification: Facts and Fundamentals*. Boca Raton, FL: CRC Press.

[17] Bureau of the Chief Postal Inspector (1966), *20th Century Handwriting Systems and Their Importance to the Document Analyst*.

[18] Plamondon, R., Srihari, S. (2000). Online and off-line handwriting recognition: a comprehensive survey. *IEEE Transactions on Pattern Analysis and Machine Intelligence*, Volume: 22, Issue:1, Jan.

[19] Srihari S.N., Srinivasan H., Chen S., Beal M.J. (2008). Machine Learning for Signature Verification. In: Marinai S., Fujisawa H. (eds) Machine Learning in Document Analysis and Recognition. *Studies in Computational Intelligence*, Vol 90. Springer, Berlin, Heidelberg, p. 389.

signatures on mail-in ballot applications and return envelopes will exacerbate the potential for error in rejecting their ballots.[20]

### iv. Texas elections officials also fail to account for the different signature styles and features, leading to erroneous rejections.

45.    One of the reasons that accurate signature comparison determinations prove difficult, even for a trained FDE, is that signatures are written in three different styles[21]:

- Text-based: Nearly all the letters can be interpreted.

- Mixed: More than two, but not all, letters can be interpreted.

- Stylized: No letters can be interpreted.

---

[20] Cusack, C.T & Hargett, J.W. (1989). A Comparison Study of the Handwriting of Adolescents. *Forensic Science International*, 42(3):239-248.

[21] Mohammed, L., Found, B., Rogers, D. (2008). Frequency of signature styles in San Diego County. *Journal of the American Society of Questioned Document Examiners*, Vol. 11, No. 1.

These signature styles exhibit significantly different characteristics that impact the signature-matching analysis, and by extension, the determination of whether signatures are genuine. For example, kinematic features of signatures, such as size, velocity, changes of acceleration, and pen pressure are important in determining whether a signature is genuine. Yet these kinematic features vary between the same individual's signatures, with the degree of variations often dependent on the signature style. The kinematic features of stylized signatures, for example, vary more significantly than the kinematic features of text-based signatures. And the less legible a signature becomes, the more the election official depends on their pattern recognition ability. Thus, signature styles can have an impact on the determination of genuineness or non-genuineness. Unfamiliarity with the different signature styles may impact a reviewer's ability to determine whether two signatures come from the same person, and would likely cause a lay person to decide that the compared signatures exhibit "differences" when the changes in features are simply "variations."

46.    To determine whether signatures are made by the same individual, a reviewer should focus on holistic features of signatures, such as alignment, slant, pen lifts, rhythm, the size of writing, the slope or slant of the letters, or other characteristics that are diagnostic of the process used to create signatures. These features are subtle, and a writer is usually unaware of the features, as they are excited

by the writer's subconscious motor program. These subtle features provide significant evidence of genuineness because they occur in natural handwriting. Lay persons, however, often focus instead on more eye-catching features in evaluating signatures. For example, an eye-tracking study on signature examination found that "lay participants focused to a greater extent on individual features such as arches, eyelets, hooks, shoulders, connections, troughs, or other individual features" that catch the eye, and "appear[ed] less likely to use holistic features."[22] But focusing on these eye-catching features is problematic because these are the types of features that a simulator will try to capture. Properly utilizing the subtle, holistic features of signatures to determine genuineness, however, requires both training and adequate time for review.

### v. Texas election officials are not tested for form blindness, increasing the risk of erroneous signature match determinations.

47.    A laypersons' ability to make consistently correct determinations as to the genuineness of a signature may also be impacted by a condition known as "form blindness," which impairs "the ability to see minute differences in angles, forms, and sizes."[23] Most ophthalmologists agree that form perception is not an eye problem but

---

[22] Merlino, *supra* note 9.

[23] Bertram, D. (2009). Univ. of S. Miss. *Form Blindness Testing: Assessing the Ability to Perform Latent Print Examination by Traditional Versus Nontraditional* Students Dissertations. 996, p. 33; Byrd, J. & Bertram, D. (2003). Form-Blindness. *Journal of Forensic Identification*, 53(3):315-341.

rather a translational problem. That is, "it is a perceptual inability to distinguish the small differences between shapes, colors, and patterns."[24] Therefore, in most cases, form blindness goes undetected, but diminishes a reviewer's ability to make accurate determinations of a signature's genuineness.[25] And while FDEs must pass a form blindness test[26] before being trained in handwriting identification, Texas requires no such test for election officials. There is thus a risk that some election officials have form blindness and are particularly prone to making erroneous signature determinations.

### B. Even trained FDEs are likely to make erroneous signature comparison determinations under Texas's signature matching procedures.

48.     Even for trained FDEs, Texas's signature matching process would be prone to erroneous determinations due to the limited number of comparison signatures and the lack of proper equipment.

49.     Normally, FDEs require multiple specimen signatures for comparison with a questioned signature, and often more if issues such as age or illness are involved. These specimens are required to adequately determine the range of variation of the writer and properly account for the reasons for variation within an

---

[24] Moody, Meredith G., "*Form-Blindness and Its Implications: A Verification Study*" (2016); Honors Theses; Paper 388.

[25] *Id.*, p. 32.

[26] Osborn, A.S.(1946). Questioned Document Problems 2nd. Ed., Boyd Printing Company, pp. 231-250.

individual's signatures discussed above. Indeed,  no two complex, skillfully written, genuine signatures of one writer have ever been found to be exactly alike, but such a statement should be understood to be true speaking microscopically, and not as the carpenter measures[27]. This is so because signatures are the product of a motor program developed in the brain after practice and then executed with neuro-muscular coordination, and many factors can influence an individual's motor program and neuro-muscular coordination, including the factors discussed above. Inadequate standards, or failure to use adequate specimens fully representing the range of variation in a writer's signature, is well-known source of error.[28]

50.    Features observed in the questioned signature(s) may not be observed in the inadequate specimens. This may lead to an erroneous interpretation of a feature as a difference (two writers) or variation (one writer). Because Texas election officials are only required to compare the signature on the mail-in ballot application or ballot return envelope with one reference signature, they cannot distinguish accurately between features, variations, or differences.

51.    Furthermore, in many instances, Texas election officials may compare a voter's original "wet-ink" signature on the mail-in ballot application or ballot return

---

[27] Osborn, A. (1910). Questioned Documents. The Lawyers' Publishing Co.,: Rochester, NY, p. 281.

[28] Huber, R.A. & Headrick, A.M. (1999). *Handwriting Identification: Facts and Fundamentals*. Boca Raton, FL: CRC Press.

Page **27** of **30**

envelope with electronic copies of the signature on the mail-in ballot application or ballot return envelope.

52.     Comparing a digitized signature with an original "wet-ink" signature has many inherent limitations, some of which are caused by the resolution of the digitized signature, whether the digitized signature is being viewed on a monitor or as a printed item, and the writing instruments used for each signature. If the resolution on monitor is low, or if the digitized signature is a poor copy of the original signature to begin with, this would make it very difficult for an untrained examiner to assess the line quality of the signature.

53.     Finally, as discussed above, Texas does not require election officials to use or be provided with proper equipment, such as magnification and lighting equipment. "[T]the  microscope is the instrument which makes it possible to see physical evidence directly that otherwise may be invisible. . . ."[29]  Without this type of equipment, even a well-trained eye may make errors in a signature authenticity determination.

---

[29] Osborn, A. S. (1929). *Questioned Documents. 2nd. Ed.* Boyd Printing Company, Albany, N.Y., USA.

## V.   CONCLUSION

54.    Based on the studies cited above[30] laypersons had significantly higher error rates than experts in determining signature authenticity. These tests were conducted under conditions where the participants had adequate specimens, lighting, time, and examination equipment. For the reasons stated herein, it is my professional opinion that there is a high likelihood that Texas election officials will make erroneous signature match determinations given the limited specimens, time, and equipment that they will have to conduct the signature verifications.

55.    In particular, Texas election officials are significantly more likely to erroneously conclude that authentic signatures are *not* genuine than they are to make the opposite error—to accept inauthentic signatures as genuine. These erroneous determinations result from the inherent difficulty in making reliable signature authenticity determinations, particularly where, as here, the reviewer lacks training, is provided with an insufficient number of comparison signatures, and does not have access to proper equipment. The use of digitized signatures as a reference sample for comparison with an original "wet-ink" signature will most likely exacerbate the error rate. In this context, Texas's signature matching procedures are all but guaranteed to result in the erroneous rejection of mail-in ballots.

*        *        *

---

[30] *Supra* notes 4, 5, 6, 8.

I declare under penalty of perjury that the forgoing is true and correct.

Dated: February 3, 2020 at _Burlingame_ , CA.

_Linton Mohammed_
Linton Mohammed, Ph.D., D-ABFDE

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | |
|---|---|
| DR. GEORGE RICHARDSON, ROSALIE WEISFELD, AUSTIN JUSTICE COALITION, COALITION OF TEXANS WITH DISABILITIES, MOVE TEXAS CIVIC FUND, LEAGUE OF WOMEN VOTERS OF TEXAS, and AMERICAN GI FORUM OF TEXAS, INC., | Civil Case No. 5:19-cv-00963 |
| Plaintiffs, | |
| v. | |
| TEXAS SECRETARY OF STATE, TRUDY HANCOCK, in her official capacity as BRAZOS COUNTY ELECTIONS ADMINISTRATOR, and PERLA LARA in her official capacity as CITY OF MCALLEN, TEXAS SECRETARY, Defendants. | |

## DECLARATION OF DR. LINTON A. MOHAMMED

# EXHIBIT A

# Forensic Science Consultants, Inc.

433 Airport Boulevard, Suite 406
Burlingame, CA  94010-2017

Tel: 650-548-1652
lamqde@gmail.com
www.qdexams.com

Linton A. Mohammed, Ph.D.
Forensic Document Examiner

Diplomate: American Board of Forensic Document Examiners
Diploma in Document Examination - Forensic Science Society (England)
American Society of Questioned Document Examiners
(Member & Past-President)
American Academy of Forensic Sciences (Fellow)

## Linton A. Mohammed
### CURRICULUM VITAE

## WORK EXPERIENCE

**Forensic Science Consultants, Inc., 01/2012 - present**
San Francisco, CA
Duties: Forensic Document Examination, expert testimony; research; management.

**dba Rile, Hicks, & Mohammed, Forensic Document Examiners, 10/2010 – 01/2012**
Long Beach, CA; San Francisco, CA
Duties: Forensic Document Examination, expert testimony; research; management.

**dba Associated Document Examiners, 10/1997 – 09/2010**
[with approval of San Diego County Sheriff's Department]
San Diego, CA
Duties: Forensic Document Examination, expert testimony; research; management.

**San Diego County Sheriff's Department Regional Crime Laboratory, 08/1996 – 10/2010**
San Diego, CA
Senior Forensic Document Examiner, (2002 – 2010)
Forensic Document Examiner, (1996 – 2002)
Duties:
Conducted examinations in the most complex cases involving: signatures, handwriting, typewriting, machine printing, commercial printing, photocopies, hand stamps, ink, paper, indented impressions, binding materials; restoration and decipherment of alterations, erasures, and obliterations.
Technical Lead - Questioned Documents Section.
Provided training and mentorship for junior examiners. Principal trainer in Forensic Document Examination for Marie Durina (07/2003- 08/2006) and Brenda Lanners (10/2009- 09/2010).
Provided training for investigators and attorneys.
Provided expert testimony in courts of law.

CURRICULUM VITAE – LINTON A. MOHAMMED

Conducted research, presented results at forensic science conferences, and published in peer-reviewed journals.
Produced and maintained the Questioned Documents Section Quality Manuals.
Oversaw the Questioned Documents Section's ASCLD-LAB accreditation status.
Acted as an Audit Team Captain or part of audit teams as per the Laboratory's ASCLD-LAB accreditation protocols.
Participated in proficiency testing.

**Laboratory of the Government Chemist, 07/1993 – 07/1996**
Teddington, Middlesex, England
Forensic Document Examiner

**Caribbean Institute of Forensic Investigations Ltd., 06/1992 – 07/1993**
Forensic Document Examiner
Trinidad, West Indies

**Trinidad and Tobago Forensic Science Center, 01/1989 – 06/1992**
Forensic Document Examiner; Safety Officer
Trinidad, West Indies

**Trinidad and Tobago Forensic Science Center, 12/1986 – 12/1988**
Chemist 1
Two-year full-time training program in Document Examination. (December 1986-December 1988) at the Trinidad and Tobago Forensic Science Center, Port of Spain, Trinidad. Mr. Robert Fawcett (Staff Sergeant [retired], Royal Canadian Mounted Police) conducted the training, which included the examination of: signatures, handwriting, typewriting, machine printing, commercial printing, photocopies, hand stamps, ink, paper, indented impressions, binding materials; restoration of alterations, erasures, and obliterations, photography, and court testimony.

**EDUCATION**

**Ph.D. (Human Biosciences)**
La Trobe University, Melbourne, Australia, 2012 Thesis: "*Elucidating spatial and dynamic features to discriminate between signature disguise and signature forgery behavior*"
Supervisors: Assoc. Prof. Doug Rogers and Dr. Bryan Found

**Master of Forensic Sciences**
National University, San Diego, CA, 2005

**Bachelor of Science (General) [Honors]**
University of the West Indies, St. Augustine, Trinidad & Tobago, 1984

CURRICULUM VITAE – LINTON A. MOHAMMED

## TEACHING EXPERIENCE

**Oklahoma State University, 2006 – present:**
**Adjunct Assistant Professor**
Master of Forensic Sciences Administration and Graduate Certificate in Questioned Documents (online programs)

o   Graduate course: Historical Aspects of Questioned Documents (4 hours per week during a semester)

o   Graduate course: Technical Aspects of Questioned Documents (4 hours per week during a semester).

## PROFESSIONAL CERTIFICATIONS

▪   Certificate of Qualification in Forensic Document Examination (No. 298) *American Board of Forensic Document Examiners, Inc.,* 1998 (re-certified every 5 years since 1998 to present).

▪   Diploma in Document Examination
*Chartered Society of Forensic Sciences*, 1996
(re-certified every 5 years since 1996 to present).

## TESTIMONY EXPERIENCE

Testified over 100 times as an expert witness in Forensic Document Examination in USA (Federal & State courts, depositions), England (High Court & Magistrates' Court), and the Caribbean (High Court & Magistrates' Court).

## AWARDS

2019: **Ordway Hilton Award** – American Academy of Forensic Sciences Questioned Documents Section (In Recognition of Outstanding Contributions to Forensic Document Examination).

2012: **New Horizon Award** – American Board of Forensic Document Examiners, Inc. (In Recognition of Exceptional Contributions in Scientific Research for the Advancement of Forensic Document Examination).

## PUBLICATIONS

## Books

Mohammed, L. *Forensic Examination of Signatures*. Elsevier, 2019.

Caligiuri, M. & Mohammed, L. *The Neuroscience of Handwriting: Applications for Forensic Document Examination.* Taylor & Francis: Boca Raton, 2012.

CURRICULUM VITAE – LINTON A. MOHAMMED

## Papers

1. Caligiuri, M., & Mohammed, L. (2019). *Signature Dynamics in Alzheimer's Disease*. Forensic Science International 302 (2019)109880.

2. Ascicioglu, F., Tekin, T., Ozbek, N., Cevik, F., Ozcan, F., Mohammed, L. (2019). *Prepared Disappearing Ink and Decipherment of Documents*. J. Forens. Sci. doi: 10.1111/1556-4029.14084

3. Caligiuri, M., Mohammed, L., Lanners, B., Hunter. G. (2018). *Kinematic Validation of FDE Determinations about Writership in Handwriting Examination: A preliminary study*. Journal of the American Society of Questioned Document Examiners, Vol, 21, No. 1.

4. Mohammed, L., Found, B., Caligiuri, M., Rogers, D. (2015). *Dynamic Characteristics of Signatures: Effects of Writer Style on Genuine and Simulated Signatures*. Journal of Forensic Sciences, January 2015, Vol. 60, No.1.

5. Mohammed L.A. (2013). *History of the Forensic Examination of Documents*. In: Siegel JA and Saukko PJ (eds.) Encyclopedia of Forensic Sciences, Second Edition, pp. 386-390. Waltham: Academic Press.

6. Caligiuri, M., Mohammed, L., Found, B., & Rogers, D. (2012). *Nonadherence to the Isochrony Principle in Forged Signatures*. Forensic Science International 223 (2012) 228–232.

7. Mohammed, L., Found, B., Caligiuri, M., Rogers, D. (2011). *The Dynamic Character of Disguise Behavior for Text-Based, Mixed, and Stylized Signatures.* J Forensic Sci, January 2011, Vol. 56, No. S1 pp. S136-141).

8. Mohammed, L., Ostrum, B. (2010). *Using Adobe Photomerge™ for Demonstrative Evidence*, Journal of the American Society of Questioned Document Examiners, Vol. 13, No. 1.

9. Mohammed, L.A. (2009). *Alterations, Erasures, and Obliterations of Documents,* in Wiley Encyclopedia of Forensic Science, Jamieson, A., Moenssens, A. (eds). John Wiley & Sons Ltd., Chichester, UK, pp. 128-134.

10. Mohammed, L., Found, B., Rogers, D. (2008). *Frequency of Signature Styles in San Diego County* – Journal of the American Society of Questioned Document Examiners, Vol. 11 (1).

11. Mohammed, L., Richards, G. (2006). *Thinking Outside the Box* – Journal of the American Society of Questioned Document Examiners, Vol. 9 (2).

CURRICULUM VITAE – LINTON A. MOHAMMED

12. Mohammed, L., Jenkinson, G. (2002). *Association of counterfeit documents to a printing plate by means of half tone dots* – Journal of the American Society of Questioned Document Examiners, Vol. 5 (1).

13. Mohammed, L. (1999). *Write-On™: A new tool for handwriting comparison* - Journal of the American Society of Questioned Document Examiners, Vol. 2 (2).

14. Mohammed, L. (1999). *An evaluation of documents produced by a high-speed, high-volume scanning process* - Forensic Science Communications, Vol. 1 (3).

15. Mohammed, L. (1998). *Sequencing writing impressions and laser printing or ink- jet printing using the ESDA* - Journal of the American Society of Questioned Document Examiners, Vol. 1 (1).

16. Mohammed, L. (1993). *Signature disguise in Trinidad and Tobago* - Journal of the Forensic Science Society, Vol. 33 (1).

## PRESENTATIONS

### Workshops

- *Non-Destructive Examination of Inks (4 hours).*
  - Co-presented with Peter V. Tytell and Derek J. Hammond at the 77th Annual General Meeting of the American Society of Questioned Document Examiners, Cary, NC.

- *The Forensic Examination of Genuine, Disguised, and Simulated Signatures with an Introduction to the Neuroscience and Kinematics of Handwriting (2 days)*
  - Presented at the Scottish Police Authority, Glasgow, Scotland  2018.

- *The Forensic Examination of Original and Copied Signatures*
  - Presented at The Midwestern Association of Forensic Sciences Conference, Cincinnati, OH  2017.

- *Likelihood Approach and Document Examination: What For?*
  - Co-presented with Liv Cadola and Tobin Tanaka at the 21st Triennial Meeting of the International Association of Forensic Sciences, Toronto, Canada  2017.

- *The Examination of Skillfully Simulated Arabic Signatures*
  - Presented at the 2nd Saudi International Conference on Forensic Medicine and Sciences, Riyadh, Kingdom of Saudi Arabia  2017.

CURRICULUM VITAE – LINTON A. MOHAMMED

- *The Forensic Examination of Genuine, Disguised, and Simulated Signatures with an Introduction to Kinematics of Handwriting*
  - Presented at the Midwestern Association of Forensic Sciences Conference, Branson, MO  2016.

- *Genuine, Disguised, and Simulated Signatures; Kinematics of Handwriting; Formal and Informal Signatures*
  - Co-presented with Lloyd Cunningham at the Australasian Society of Forensic Document Examiners, Inc., Sydney, Australia  2016.

- *Document Examination in the USA*
  - 2-day seminar presented at the Institute of Forensic Science Seminar, Beijing, China  2015.

- *Are Fountain Pens Back in Vogue? Characteristics of Fountain Pen Writing and Aqueous Ink Analysis*
  - Co-presented with Lloyd Cunningham, Dr. Valery Aginsky, & William J. Flynn at the 73rd Annual Meeting of the American Society of Questioned Document Examiners, Toronto, Canada  2015.

- *The Forensic Examination of Genuine, Disguised, and Simulated Signatures – with an introduction to the Neuroscience and Kinematics of Handwriting* (2 days)
  - 2-day workshop conducted at the II Brazilian Symposium on Forensic Science, Brazilia, Brazil  2015.

- *The Examination of Skillfully Simulated Signatures*
  - Presented at the 67th Annual Meeting of the American Academy of Forensic Sciences, Orlando, FL  2015.
  - Presented at Canada Border Services Forensic Laboratory, Ottawa, Canada,  2015.

- *Skillful Freehand Signature Simulation -* co-presented with Lloyd Cunningham at the Joint Meeting of the American Society of Questioned Documents Examiners, Inc. & the Australasian Society of Forensic Document Examiners, Inc., Honolulu, HI 2014.

- *Skillfully Simulated Signatures* (1/2 day) – presented at the European Network of Forensic Handwriting Examiners (ENFHEX) meeting, Riga, Latvia, 2013.

- *Signature Examination of Healthy and Impaired Writers* (1 day) - co-presented with Prof. Michael Caligiuri, UCSD, at the American Academy of Forensic Sciences Annual Conference, Washington DC, 2013.

CURRICULUM VITAE – LINTON A. MOHAMMED

- *Neural Bases and Characteristics of Signature Formation in Writers with Dementia* (1/2 day)
  - Co-presented with Prof. Michael Caligiuri, UCSD, at the 70th Annual General Meeting of the American Society of Questioned Document Examiners, Charleston, SC  2012.

- *Signature Examination - Translating Basic Science into Practice* (1 day)
  - Co-presented with Prof. Michael Caligiuri, UCSD at the American Academy of Forensic Sciences Annual Conference, Seattle, WA  2010.

  - Co-presented with Prof. Michael Caligiuri, UCSD at the American Society of Questioned Document Examiners 68th Annual General Meeting, Victoria, BC, Canada, 2010.

- *Genuine, Disguised, and Forged Signatures (*1/2 day)
  - Presented at the 1st Eurasian Congress on Forensic Sciences, Istanbul, Turkey, 2008.

  - Presented at the Victoria Forensic Science Centre, Melbourne, Australia, 2008.

  - Presented at the European Network of Forensic Handwriting Experts (ENFHEX) Meeting, Krakow, Poland, 2009.

**Papers**

1. Do, D., & Mohammed, L. (2019). *An Evaluation of the Efficacy of an Electrostatic Detection Device as a Screening Tool for Latent Prints*. Presented at the 1st Joint Meeting of the European Network of Forensic Handwriting Experts (ENFHEX) and the European Fingerprint Working Group (EFP-WG), Porto Portugal; the 77th Annual General Meeting of the American Society of Questioned Document Examiners, Cary, NC, and the California State Division of the International Association for Identification Meeting, Burlingame, CA.

2. Caligiuri, M., Ommen, D., Fuglsby, C., Saunders, C., Mohammed, L., Morris, J., Bird, C. (2019). *The Kinematic Modeling of FDE Writership Opinion*. Presented at the 1st Joint Meeting of the European Network of Forensic Handwriting Experts (ENFHEX) and the European Fingerprint Working Group (EFP-WG), Porto Portugal; and the 77th Annual General Meeting of the American Society of Questioned Document Examiners, Cary, NC.

3. Ommen, D., Fuglsby, C., Saunders, C., Caligiuri, M., Mohammed, L., Buscaglia, J. (2019). *Pairwise Comparison Scores for Handwritten Questioned Documents*. Presented at the American Academy of Forensic Sciences 71st Annual Scientific Meeting. Baltimore, MD.

CURRICULUM VITAE – LINTON A. MOHAMMED

4. Fuglsby C, Mohammed L, Saunders C, Ommen D, Buscaglia J, Caligiuri M. (2018). *FDE Conclusion Scales Parts 1 & 2: Reverend Bayes or Professor Kirk?* Presented at the 76th Annual Conference of the American Society of Questioned Document Examiners,  Park City, UT.

5. Ommen, D., Fuglsby, C., Saunders, C.,  Caligiuri, M., Mohammed, L., Buscaglia, J. (2018). *Pairwise Scores for Designing Handwritten Document Comparisons*. Poster presented at Forensics @NIST, Gaithersburg, MD.

6. McClary, C., Mohammed, L., Caligiuri, M. (2018). *An Analysis of Forensic Document Examiner (FDE) Aptitude in Determining Velocity Rates of Strokes*. Presented at the American Academy of Forensic Sciences Conference, Seattle, WA.

7. Fuglsby, C., Mohammed, L., Buscaglia, J., Saunders, C. (2018). *Sufficiency and Complexity Factors in Handwriting Examination*. Presented at the Impression, Pattern, & Trace Evidence Symposium, Washington, DC.

8. Caliguiri, M., Mohammed, L. (2018). *Error Rates in Handwriting Examination*. Presented at the CSAFE Error Rates Symposium, Arlington, VA.

9. Caligiuri, M., Mohammed, L., Lanners, B. & Hunter G. (2017). *Kinematic Validation of FDE Determinations About Authorship in Handwriting Examination*. Presented at the 75th Annual Conference of the American Society of Questioned Document Examiners, San Diego, CA.

10. Mohammed, L. (2017). *The Kinematics of Signatures and Handwriting*. Presented at the 2nd Saudi International Conference on Forensic Medicine and Sciences, Riyadh, Kingdom of Saudi Arabia.

11. Domitrovich, S. Judge, Seaman Kelly, J., Mohammed, L. (2017). *A Review of the Almeciga V. Center for Investigative Reporting, Inc. Decision: Analysis and Counter-Analysis*. Presented at the American Academy of Forensic Science Conference, New Orleans, LA.

12. Mohammed, L. (2016). *Document Examination – not just handwriting*. Presented to the Young Forensic Scientists Forum, American Academy of Forensic Science Conference, Las Vegas, NV.

13. Mohammed, L. (2014). *Kinematic approach to signature analysis*. Presented at the 3rd. International Workshop on Automated Forensic Handwriting Analysis, Honolulu, HI.

14. Mohammed, L. (2013). *Handwriting stroke kinematics*. Presented at the Measurement Science and Standards in Forensic Handwriting Analysis conference, NIST, Gaithersburg, MD.

CURRICULUM VITAE – LINTON A. MOHAMMED

15. Mohammed, L., Found, B., Caligiuri, M., Rogers, D. (2012). *Dynamics of stroke direction in genuine and forged signatures.* Presented at the American Academy of Forensic Sciences Conference, Atlanta, GA.

16. Mohammed, L., Found, B., Caligiuri, M., Rogers, D. (2009). *Pen pressure as a discriminating feature between genuine and forged signatures* – Presented at the International Graphonomics Society Conference, Dijon, France.

17. Mohammed, L., Found, B., Caligiuri, M, Rogers, D. (2009). *Can dynamic features be used to discriminate between genuine, auto-Simulated, and simulated signatures?* - Presented at the 61st Annual Conference of the American Academy of Forensic Sciences, Denver, CO.

18. Mohammed, L. (2008). *Judicial challenges to expert witness testimony in the USA: The Daubert Trilogy* -Presented at the 1st. Eurasian Congress on Forensic Sciences, Istanbul, Turkey.

19. Mohammed, L., Found, B., Rogers, D. (2008). *Genuine and disguised signatures – An empirical approach* - Presented at the 60th Annual Conference of the American Academy of Forensic Sciences, Washington, DC.

20. Mohammed, L., Williams, D. (2006). *Preparing demonstrative charts with the use of Adobe Photomerge®* - Poster presentation, American Academy of Forensic Sciences, Seattle, WA.

21. Mohammed, L. (2005). *The Edge of Light™ Scanner* - Presented at the American Academy of Forensic Sciences Conference, New Orleans, LA.

22. Mohammed, L. (2003). *Daubert and documents* – Presented at the California Association of Criminalists Fall Conference, San Diego, CA.

23. Mohammed, L. (2003). *A standardized training program for Forensic Document Examiners – A proposal*- Presented at the 61st Annual Conference of the American Society of Questioned Document Examiners, Baltimore, MD.

24. Mohammed, L. (2001). *Demonstrative evidence and multi-media technology* - Presented at the 59th Annual Conference of the American Society of Questioned Document Examiners, Des Moines, IA.

25. Mohammed, L., Buglio, J., Shafer, A. (2000). *The influence of paper on the performance of the VSC-2000 spectrometer* - Presented at the 58th Annual Conference of the American Society of Questioned Document Examiners, Ottawa, Ontario, Canada.

26. Mohammed, L., Buglio, J. (2000). *The Association of Forensic Document Examiners* - Prepared for the 58th Annual Conference of the American Society of Questioned Document Examiners, Ottawa, Ontario, Canada.

CURRICULUM VITAE – LINTON A. MOHAMMED

27. Mohammed, L. (1992). *Cocaine and handwriting* - presented at the 50th Annual Conference of the American Society of Questioned Document Examiners, Milwaukee, WI.

28. Mohammed, L. (1991). *Signature disguise in Trinidad and Tobago* - presented at the 49th Annual Conference of the American Society of Questioned Document Examiners, Orlando, FL.

## PROFESSIONAL AFFILIATIONS

- American Society of Questioned Document Examiners
  - President, 2010 – 2012
  - Vice-President, 2008 – 2010
  - Treasurer, 2006 – 2008
  - Director, 2004 – 2006;
  - Annual Conference Program Chair, 2006 & 2017
  - Chair, Evaluation and Examination Committee, 2002 – 2006
  - Annual Conference Site Chair, 2002

- American Academy of Forensic Sciences
  - Fellow – Questioned Documents Section
  - Chair – Questioned Documents Section, 2016 – 2018
  - Chair – Inter-Disciplinary Symposium 2018
  - Co-Chair – Inter-Disciplinary Symposium 2017
  - Secretary – Questioned Documents Section, 2014 – 2016

- Canadian Society of Forensic Science

- Chartered Society of Forensic Sciences

## PROFESSIONAL ACTIVITIES

- Member – Academy Standards Board, 2017 –

- Member – Expert Working Group on Human Factors in Handwriting Examination, National Institute of Standards and Technology, 2015 – 2017.

- Member – Physics/Pattern Scientific Area Committee within the National Institute of Standards and Technology Organization of Scientific Area Committees (NIST/OSAC), 2014 –2016.

- Participant in the General Forensics Technology Working Group, National Institute of Justice, 2011

- Participant in Scientific Working Group on Documents (SWGDOC), 2009 – present

- Grant reviewer for the National Institute of Justice and affiliated agencies, 2009 – present

CURRICULUM VITAE – LINTON A. MOHAMMED

- Editor - Journal of the American Society of Questioned Document Examiners

- Editorial Review Board Member:
  o Journal of Forensic Sciences
  o Forensic Science and Technology (China)

- Guest reviewer:
  o Forensic Science International
  o Science & Justice
  o Australian Journal of Forensic Science
  o Egyptian Journal of Forensic Sciences
  o Arab Journal of Forensic Sciences & Forensic Medicine
  o IEEE Transactions on Cybernetics

## CONTINUING EDUCATION

- American Society of Questioned Document Examiners, Park City, UT 2018
  o Write-On 3.0 Workshop
  o The Greatest Forger to Ever Get Caught

- American Society of Questioned Document Examiners, San Diego, CA  2017
  o Forensic Science Research: Your Mission to Propose, Innovate, and Collaborate
  o Preparing a Digital Signature File for Forensic Analysis
  o Chinese Handwriting and Signatures Workshop: Hanzi Through the Eyes of the Forensic Document Examiner
  o Write or Wrong? Bias, Decision-Making, and the Use of Contextual Information in Forensic Document Examination

- American Society of Questioned Document Examiners, Pensacola, FL 2016
  o Measuring Frequency Occurrence in Handwriting and Hand Printing Characteristics
  o Sequence of Entries Determination – New Approach to Additional Print

- American Society of Questioned Document Examiners, Toronto, Canada 2016
  o Principles of Forensic Examination of Arabic Signatures

- American Society of Questioned Document Examiners, Honolulu, HI 2014
  o Adobe - Digital Media & Evidence

- American Academy of Forensic Sciences, Seattle, WA 2014
  o Science, Law, and the Inferential Process: The Epistemology of Scientific Conclusions

- National Institute of Standards and Technology (NIST), Gaithersburg, MD 2013.
  o Measurement Science and Standards in Forensic Handwriting Analysis

- American Academy of Forensic Sciences, Atlanta, GA, 2012
  o Paper Fundamentals for Forensic Document Examiners
  o Digital Photography for Forensic Document Examiners

CURRICULUM VITAE – LINTON A. MOHAMMED

- American Society of Questioned Document Examiners, Philadelphia, PA, 2011
  - Printing Process Identification for Forensic Document Examiners
  - Using Adobe Photoshop in a QD Workflow

- American Society of Questioned Document Examiners, Victoria, BC, Canada, 2010
  - Electronic Recording and Analysis of Handwritten Signatures & Writing

- Cedar Crest College, Allentown, PA, 2010
  - Multivariate Analysis for Forensic Scientists: Statistical Pattern Recognition for Physical Evidence Analysis and Chemometrics

- American Academy of Forensic Sciences, Denver, CO, 2009
  - Estimation of Uncertainty – Is Anyone Certain What This Means?
  - Security Documents before and After the Crime: REAL ID, Physical and Electronic Security Features, Developments in Commercial Printing Technology, and an Introduction to Counterfeit Link Analysis

- American Academy of Forensic Sciences, Washington DC, 2008
  - The Applications of Color Analysis and Light Theory in the Forensic Examination of Documents Workshop

- American Society of Questioned Document Examiners, Portland, OR 2006
  - Fine and Subtle Features of Handwriting Workshop
  - Signature Workshop

- Southeastern Association of Forensic Document Examiners, Atlanta, GA, 2006
  - Disguised and Forged Signatures Workshop

- American Academy of Forensic Sciences, New Orleans, LA, 2005
  - State of the Art Infrared and Ultraviolet Examinations of Documents by the Video Spectral Comparator

- California Criminalistics Institute, Sacramento, CA, 2005
  - Technical Writing for Criminalists

- American Board of Forensic Document Examiners, Las Vegas, NV, 2004
  - Daubert Seminar

- American Academy of Forensic Sciences, Chicago, IL, 2002
  - Note Taking for Forensic Document Examiners Workshop

- Rochester Institute of Technology, Rochester, NY, 2002:
  - Printing Process Identification and Image Analysis for Forensic Document Examiners

- Limbic Systems, Inc., Bellingham, WA, 2001:
  - Measurement of Internal Consistencies Software (MICS)

CURRICULUM VITAE – LINTON A. MOHAMMED

- American Board of Forensic Document Examiners, Norcross, GA, 2000:
  - Canon Photocopier and Facsimile Training Workshop

- California Criminalistics Institute, Sacramento, CA, 2000:
  - Special Topics in Questioned Documents

- Southwestern Association of Forensic Document Examiners, Las Vegas, NV, 1999:
  - Typewriter Examination & Classification Workshop

- American Board of Forensic Document Examiners, Las Vegas, NV, 1998:
  - Examination Techniques in Handwriting & Rubber Stamp Cases Seminar

- Canadian Society of Forensic Science 44th Annual Conference, Regina, Saskatchewan, Canada, 1997:
  - Digital Image Processing Workshop

- California Criminalistics Institute, Sacramento, CA, 1997:
  - Courtroom Presentation of Evidence

- American Society of Questioned Document Examiners 55th Annual Conference, Scottsdale, AZ, 1997:
  - Handwriting Workshop

- American Society of Questioned Document Examiners 51st Annual Conference, Ottawa, Canada, 1993:
  - Laser Printer Workshop
  - Miscellaneous Document Examination Workshop

- American Society of Questioned Document Examiners 50th Annual Conference, Milwaukee, WI, 1992:
  - Signature Workshop

- American Society of Questioned Document Examiners 49th Annual Conference, Orlando, FL, 1991:
  - Canon Fax Workshop
  - Deposition Testimony Workshop
  - Expert Witness Workshop
  - Signature Comparison Workshop

October 1, 2019

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

DR. GEORGE RICHARDSON, ROSALIE
WEISFELD, AUSTIN JUSTICE
COALITION, COALITION OF TEXANS
WITH DISABILITIES, MOVE TEXAS
CIVIC FUND, LEAGUE OF WOMEN
VOTERS OF TEXAS, and AMERICAN GI
FORUM OF TEXAS, INC.,

     Plaintiffs,

     v.

TEXAS SECRETARY OF STATE,
TRUDY HANCOCK, in her official
capacity as BRAZOS COUNTY
ELECTIONS ADMINISTRATOR, and
PERLA LARA in her official capacity as
CITY OF MCALLEN, TEXAS
SECRETARY, Defendants.

Civil Case No. 5:19-cv-00963

## DECLARATION OF DR. LINTON A. MOHAMMED

# EXHIBIT B

# Forensic Science Consultants, Inc.

433 Airport Boulevard, Suite 406
Burlingame, CA  94010-2017

Linton A. Mohammed, Ph.D.
Forensic Document Examiner

Tel: 650-548-1652
lamqde@gmail.com
www.qdexams.com

Diplomate: American Board of Forensic Document Examiners
Diploma in Document Examination - Forensic Science Society (England)
American Society of Questioned Document Examiners (Member & Past-President)
American Academy of Forensic Sciences (Fellow)

## Linton A. Mohammed
### Forensic Document Examiner

### TRIAL AND DEPOSITION RECORD (from 2013 to present)

| Date | Court [1] | Case | Attorney | P/D [2] |
|------|-----------|------|----------|---------|
| 05/14/13 | Deposition (LA) | Isakulyan v. Union Bank | Schufreider | D |
| 05/24/13 | Arbitration (LA) | Isakulyan v. Union Bank | Schufreider | D |
| 07/16/13 | Trial (LA) | Giedd v. Cornell | Roberson | D |
| 08/26/13 | Deposition (SF) | Tan v. Tran et al. | Kunnes; Jones | D |
| 08/28/13 | Deposition (LA) | SA Challenger v. Kamen et al | Coyner | D |
| 09/26/13 | Arbitration (LA) | SA Challenger v. Kamen et al | Coyner | D |
| 12/02/13 | Trial (SJ) | Cain Family Trust | Clayton | P |
| 01/15/14 | Hearing (Sonoma County) | Larch v. Cream | Kim | D |
| 03/24/14 | Trial (SJ) | Torres v. Torres | Acosta | P |
| 04/02/14 | Deposition (SF) | Cybersearch v. Sherwood | Gantz | P |
| 05/15/14 | Trial (SM) | Tan et al. v. Tran et al. | Veiluva; Jones | D |
| 07/08/14 | Grand Jury (SF) | People v. Bell et al. | Garcia | P |
| 07/09/14 | Trial (SJ) | Rodriguez v. Sanchez | Low | P |
| 08/05/14 | Trial (LA) | Stevens v. Stevens | Grot; LaMolinara | P |
| 09/08/14 | Deposition (SF) | Hill et al. v. Wilke Fleury et al. | Evans | D |

[1] SD – San Diego; LA – Los Angeles; LV – Las Vegas; SF – San Francisco; SJ – San Jose
[2] P – Plaintiff/Prosecution; D – Defense

**TRIAL AND DEPOSITION RECORD (from 2011 to present):**
**Linton A. Mohammed, Forensic Document Examiner**

| Date | Court [3] | Case | Attorney | P/D [4] |
|---|---|---|---|---|
| 09/23/14 | Trial (SJ) | People v. Wantland | Kirchick | D |
| 01/08-09/15 | Hearing | BART | | P |
| 02/09/15 | Deposition | Yaqub v. Citimortgage | Paganelli | D |
| 11/05/15 | Deposition San Mateo, CA | Geiger v. Farmers Ins. et al | Halvorson | D |
| 12/11/15 | Trial Dept. 67, Los Angeles, CA | Estate of S. Sengupta | Mansell | D |
| 05/10/16 | Deposition (SF) | Duong v. ITT et al. | Schwin | P |
| 05/13/16 | Trial Yuba City, CA | Zenda v. Shoker | Guth | D |
| 07/12/16 | Deposition Utah (Telephonic) | Matter of Dante Ketchens | Noel | P |
| 08/04/16 | Deposition (CA) | Spight v. Gray | Norris | P |
| 08/30/16 | Deposition (CA) | Estate of Mary Ellen Cunha San Rafael, CA | Kelley | D |
| 08/31/16 | Deposition (CA) | Matter of Lili Tu | Riley | D |
| 09/20-21/16 | Trial San Mateo, CA | Spight v. Gray | Norris | P |
| 01/20/17 | Trial Dept. 37, Santa Clara, CA Judge Andrea Flint | People v. Melendez | McComas | D |
| 02/22/17 | Trial Dept. 4, Santa Cruz, CA Judge John Gallagher | Estate of Daren Drakes | Nelson | P |

[3] SD – San Diego; LA – Los Angeles; LV – Las Vegas; SF – San Francisco; SJ – San Jose; SM – San Mateo
[4] P – Plaintiff/Petitioner/Prosecution; D – Defense

**TRIAL AND DEPOSITION RECORD (from 2011 to present):**
**Linton A. Mohammed, Forensic Document Examiner**

| Date | | Court [5] | Case/Attorney | P/D[6] |
|------|--|-----------|---------------|--------|
| 03/13/17 | Deposition<br>Redwood City, CA | Goldstein v.<br>Macalik | Kallis | D |
| 04/03/17 | Deposition<br>Los Angeles, CA | Galstian et. al v.<br>Minassian et. al | Swift | P |
| 04/04/17 | FINRA Arbitration<br>San Diego, CA | Peters v.<br>RBC Wealth Management<br>et. al. | Caietti | P |
| 06/29/17 | Trial<br>Dept. 23,<br>San Mateo, CA<br>Judge W. Raymond Swope | Goldstein v.<br>Macalik | Kallis | D |
| 07/13/17 | Deposition<br>San Jose, CA | Nguyen v. Diep | Goldstein | D |
| 07/26/17 | Deposition<br>Burlingame, CA | New v. Langit | Rodriguez | P |
| 07/27/17 | Deposition<br>San Mateo, CA | Estate of Beverly Foster | Baer | P |
| 08/24/17 | Deposition<br>Los Angeles, CA | Shahryar v. Kamrany | Lichter/<br>Salissian | P |
| 09/07/17 | Arbitration<br>Los Angeles, CA | Schwartz v. Piccone | Russell | P |
| 09/26/17 | Trial<br>Dept. 5,<br>Santa Barbara, CA<br>Judge Colleen Sterne | Estate of John Smith Clark | Hellman | P |
| 10/31/17 | Trial<br>Dept. 22<br>Santa Clara, CA<br>Judge Aaron Persky | Estate of William W. Parker | Dames | P |

---

[5] SD – San Diego; LA – Los Angeles; LV – Las Vegas; SF – San Francisco; SJ – San Jose; SM – San Mateo
[6] P – Plaintiff/Petitioner/Prosecution; D – Defense

**TRIAL AND DEPOSITION RECORD (from 2011 to present):**
**Linton A. Mohammed, Forensic Document Examiner**

| <u>Date</u> | <u>Court</u> [7] | Case | <u>Attorney</u> | P/D[8] |
|---|---|---|---|---|
| 01/04/18 | Deposition<br>San Mateo, CA | Doe v. County of San Mateo | Levy | D |
| 02/23/18 | Hearing<br>Probate Hearings Division<br>U.S. Dept. of the Interior<br>Albuquerque, NM<br>Judge Earl J. Waits | Estate of Earl A. Williams | Artus | P |
| 02/26/18 | Deposition<br>Fairfield, CA | Goss v. Folan | Seto/Burnside | D |
| 02/28/18 | Deposition<br>Burlingame, CA (via video) | Saucedo v.<br>State of New Hampshire | ACLU | P |
| 03/01/18 | Deposition<br>San Jose, CA | Katz et al. v. Kwan et al. | Hsueh | D |
| 03/14/18 | Trial<br>Department K<br>Los Angeles Superior Court<br>Pasadena, CA<br>Judge Theresa Traber | Marriage of Hidalgo | Mendell | R |
| 04/20/18 | Deposition<br>Danville, CA | Marta v. Applebees | May | P |
| 04/23/18 | Trial<br>Department 16<br>San Mateo Superior Court<br>San Mateo, CA<br>Judge Richard H. Dubois | Matter of<br>The Beverly Foster Trust | Baer | P |
| 05/10/18 | Deposition<br>San Francisco, CA | Mahan et al. v. Chan et al. | Zeff | D |
| 06/15/18 | Trial<br>Department 504<br>Probate<br>San Diego Superior Court<br>San Diego, CA<br>Judge Jeffrey S. Bostwick | Estate of George R. Walls, Jr. | McDonald | P |

---

[7] SD – San Diego; LA – Los Angeles; LV – Las Vegas; SF – San Francisco; SJ – San Jose; SM – San Mateo
[8] P – Plaintiff/Petitioner/Prosecution; D – Defense

**TRIAL AND DEPOSITION RECORD (from 2011 to present):**
**Linton A. Mohammed, Forensic Document Examiner**

| Date | Court [9] | Case | Attorney | P/D[10] |
|------|-----------|------|----------|---------|
| 08/06/18 | Trial<br>Dept. 5A<br>U.S. District Court<br>Los Angeles, CA<br>Judge Michael W. Fitzgerald | Lincoln Benefit Life Company v. Dallal | Cowan/ Kojima | P |
| 08/29/18 | Deposition<br>Alameda, CA | Neth v. Byrne | Perruzzi | D |
| 09/18/18 | Deposition<br>St. Louis, MO | Priorities USA et al v. State of Missouri et al. | Geise | P |
| 09/24/18 | Trial<br>Room 203<br>Cole County District Court<br>Jefferson City, MO<br>Hon. Richard Callahan | Priorities USA et al v. State of Missouri et al. | Geise | P |
| 10/04/18 | Deposition<br>Los Angeles, CA | Baral v. Schnitt | Kushner | D |
| 10/12/18 | Deposition<br>Sunnyvale, CA | Chen v. Murad | Garsson | D |
| 10/16/18 | Deposition<br>Los Angeles, CA | Rostack v. Sabella | Chang | P |
| 11/01/18 | Deposition<br>Santa Rosa, CA | Ramos, Creedon v. Wallahan | Terreri | P |
| 11/05/18 | Trial<br>Dept. 57<br>Los Angeles Superior Court<br>Los Angeles, CA<br>Judge Randolph M. Hammock | Baral v. Schnitt | Kushner | D |
| 11/20/18 | Deposition<br>Austin, TX | Galvan, et al v. Pablos, et al | Najvar | P |
| 12/03/18 | Hearing<br>Sacramento, CA | CDCR v Pratt | Tanner | P |

---

[9] SD – San Diego; LA – Los Angeles; LV – Las Vegas; SF – San Francisco; SJ – San Jose; SM – San Mateo
[10] P – Plaintiff/Petitioner/Prosecution; D – Defense

**TRIAL AND DEPOSITION RECORD (from 2011 to present):**
**Linton A. Mohammed, Forensic Document Examiner**

| Date | Court [11] | Case | Attorney | P/D[12] |
|------|-----------|------|----------|---------|
| 12/04/18 | Trial<br>Dept. 18<br>Sonoma County Superior Court<br>Judge Rene Auguste Chouteau | Ramos, Creedon v.<br>Wallahan | Terreri | P |
| 03/05/19 | Trial<br>Probate Court<br>Anchorage, AK<br>(By telephone) | Estate of Earl A. Williams | Artus | P |
| 04/02/19 | Trial<br>U.S. District Court<br>Los Angeles, CA<br>Dept. 10C<br>Judge Christina A. Snyder | United States v.<br>L. Vega | Windsor | D |
| 04/04/19 | Trial<br>Alameda County<br>Superior Court<br>Hayward, CA<br>Dept. 514<br>Judge Patrick McKinney | Eden Housing Management, Inc.<br>v. H. Gamer | Galvin | P |
| 06/26/19 | Trial<br>Polk County District Court<br>Des Moines, IA<br>Dept. 208<br>Judge Joseph Seidlin | League of United Latin<br>American Citizens of Iowa, et al<br>v.<br>Iowa Secretary of State Paul Pate,<br>in his official capacity | | P |
| 07/17/19 | Trial<br>Santa Clara Superior Court<br>San Jose, CA<br>Dept. 12<br>Judge Cynthia C. Lie | Jacobs v. Ramachandran | Marks | P |
| 10/24/19 | Trial<br>Santa Clara Superior Court<br>San Jose, CA<br>Dept. 3<br>Judge Patricia Lucas | Pesic v. Zouves | Goodman | D |

---

[11] SD – San Diego; LA – Los Angeles; LV – Las Vegas; SF – San Francisco; SJ – San Jose; SM – San Mateo
[12] P – Plaintiff/Petitioner/Prosecution; D – Defense

**TRIAL AND DEPOSITION RECORD (from 2011 to present):**
**Linton A. Mohammed, Forensic Document Examiner**

| Date | Court [13] | Case | Attorney | P/D [14] |
|------|-----------|------|----------|------|
| 12/19/19 | Deposition<br>Los Angeles, CA | Shenon v. New York Life | Shea | D |
| 12/19/19 | Hearing (by telephone)<br>Judge Garcia<br>JAMS<br>San Francisco, CA | Eden Housing Management<br>v.<br>Richardson | Gavin | P |

---

[13] SD – San Diego; LA – Los Angeles; LV – Las Vegas; SF – San Francisco; SJ – San Jose; SM – San Mateo
[14] P – Plaintiff/Petitioner/Prosecution; D – Defense

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

|  |  |
|---|---|
| DR. GEORGE RICHARDSON, ROSALIE WEISFELD, AUSTIN JUSTICE COALITION, COALITION OF TEXANS WITH DISABILITIES, MOVE TEXAS CIVIC FUND, LEAGUE OF WOMEN VOTERS OF TEXAS, and AMERICAN GI FORUM OF TEXAS, INC., | Civil Case No. 5:19-cv-00963 |
| Plaintiffs, | |
| v. | |
| TEXAS SECRETARY OF STATE, TRUDY HANCOCK, in her official capacity as BRAZOS COUNTY ELECTIONS ADMINISTRATOR, and PERLA LARA in her official capacity as CITY OF MCALLEN, TEXAS SECRETARY, Defendants. | |

## DECLARATION OF DR. LINTON A. MOHAMMED

# EXHIBIT C

AWS-42
Prescribed by Secretary of State
Sec. 87.0431, Texas Election Code
3/07

# NOTICE OF REJECTED BALLOT

This is to serve as notice that your ballot for the _General 2018_ Election was rejected
by the early voting ballot board and was not counted.

Name of Voter _Bonnie Adams Richardson_

VUID Number _1040885496_

Reason for Rejection: (Check As Appropriate)

1)   Certificate on carrier envelope was not properly executed.
     _____ You failed to sign your signature or make your mark.
     _____ The witness failed to indicate on the envelope that you could not
            make a mark.
     _____ The assistant or witness failed to print their name.
     _____ The assistant or witness failed to sign their name.
     _____ The residence address of the assistant or witness was not given.

✓  2)   It was determined that the signature on the application for ballot by mail and
        carrier envelope was not signed by the same person.

3)   Application for ballot by mail did not state a legal ground for voting by mail.

4)   Voter registration records indicated you did not have an effective registration
     for this election.

5)   Address to which ballot was mailed was not outside the county.  Voting
     early by mail due to expected absence from the county requires balloting
     materials be mailed to an address outside the county.

6)   The residence address on the statement of residence is not located in the
     political subdivision conducting the election.

7)   The mailing address on the application for ballot by mail did not match your
     voter registration address nor did the mailing address match any addresses
     provided on your statement of residence.  Since you did not indicate on your
     application for a ballot by mail that you were having your ballot mailed to a
     hospital, retirement center, long term care facility, nursing home, jail, or a
     relative, your ballot was rejected.

8)   The statement of residence was not included in the carrier envelope.

9)   No identification was included with your mail ballot.

10)  Other:

     _____

_Ru Davis_
Signature of Early Voting Ballot Board Judge

_11/3/2018_
Date

1666

# Ballot By Mail Request Form

**Registration Address**
George Adams Richardson
4070 Sweetwater Dr
College Station, TX 77845

**OFFICE USE ONLY**
Voter ID 1040885456
Precinct


1040865456

I am over 65 years of age and requesting an **Annual Ballot By Mail** to receive a ballot for all elections in 2018, including any **Democratic Party** elections, local elections, and the November 2018 General Election. Mail my ballots to the address indicated above (unless noted otherwise below).

**SIGNATURE(FIRMA)**

*Must be signed. Do not print. If you cannot sign, make a mark and have witness fill out the box to the right.*

I certify that the information given in this application is true, and I understand that giving false information in this application is a crime.

If you are not able to receive ballots at the address where you are registered to vote, the ballot may be mailed to an alternate address. This address may only be one of the following. Check which address you are using:

☐ A hospital, nursing home, retirement center or other long-term care facility.

☐ The address of a person related to applicant. Relationship: _____

☐ Mailing Address listed on applicant's voter registration card.

**Mailing Address**
George Richardson
4070 Sweetwater Dr
College Station, TX 77845

Address where ballot
should be sent, if different:
_____
_____
_____

**FOR WITNESS (Only if Applicant Cannot Sign):**
If applicant is unable to make mark,
Witness shall check here: ☐
Witness Name _____
Witness Address _____

Relationship to Applicant *(Check One)*
☐ spouse ☐ child ☐ reside at same address as applicant
☐ other: _____
Witness Signature _____
Date _____

If you are unable to sign your name (due to a physical disability or illiteracy), the application may be signed for you by a Witness. You must affix your mark to the application or, if you are unable to make a mark, then the Witness must sign and provide his or her printed name and residence address. Unless the Witness is a close relative of the voter (parent, grandparent, spouse, child or sibling), it is a Class B misdemeanor for a person to witness more than one application in a calendar year.

1667



**TRUDY HANCOCK**, REO, CERA
ELECTIONS ADMINISTRATOR
300 E WM J BRYAN PRKWY,
SUITE 100
BRYAN TX 77803
(979) 361-5770
(979) 361-5779 (Fax)

# BRAZOS COUNTY

November 26, 2018

Mr. George Richardson
4070 Sweetwater Drive
College Station, Texas 77845

RE:   Ballot By Mail

Dear Mr. Richardson:

I saw in The Eagle that you had some concerns of how your ballot by mail was qualified for the November 6 General Election. I understand that you were upset but I want to assure you that we follow the Texas Election Code in the processes of qualifying a ballot that is received in the mail.

The early voting ballot board is comprised of individuals appointed by both parties. A team of two volunteers from opposite parties work together. The team compares the signature on the courier envelope to the signature on the application for ballot by mail to determine if the person that voted and returned the ballot is the same person who requested it. It is up to that team to make the determination if the signatures are similar enough to accept the ballot. This is the procedure that is set up in the Texas Election Code.

I hope this explanation helps ease your confusion and frustration with voting by mail. I have enclosed a copy of your application for ballot by mail and your courier envelope.

If you should have any questions, please feel free to contact me at any time.

Sincerely,

Trudy R. Hancock, REO, CERA
Elections Administrator

Enc.

1668

**Instructions:** This envelope must be sealed and signed by the voter before it leaves the voter's hands. Do not sign this envelope unless the ballot has been marked by you or at your direction. This carrier envelope may not be used to return more than one voter's ballot. For instructions on the methods and deadlines to deliver this carrier envelope, see the "Information About Returning your Carrier Envelope," included with the materials sent to you with your ballot. (Instrucciones al Votante: Selle este sobre y después firme su nombre en el espacio proporcionado abajo. Este sobre debe de ser sellado y firmado por el votante antes de que el votante lo entregue. No firme este sobre a menos de que la boleta haya sido llenada por usted o bajo su dirección. Este sobre de envío no debe ser utilizado para entregar la boleta de más de un solo votante. Para obtener instrucciones sobre los métodos y plazos para entregar este sobre de envío, vea la "Información Sobre Cómo Devolver su Sobre de Envío," incluido con los materiales enviados a usted con su boleta.)

certify that the enclosed ballot expresses my wishes independent of any dictation or undue persuasion by any person. (Certifico que la boleta adjunta expresa mis deseos dependientemente de ningún dictado o persuasión indebida por parte de cualquier persona.)

---

**SEAL ENVELOPE AND SIGN OVER SEALED FLAP**
**(SELLE EL SOBRE Y FIRME ENCIMA DE SOLAPA DEL SOBRE)**

X _George A. Richardson_

**SIGNATURE OR MARK OF VOTER (FIRMA O MARCA DEL VOTANTE)**

---

**Instructions to Assistant:** A voter may only be assisted with reading or marking the ballot if they have a physical disability that renders them unable to write or see, or have an inability to read the language in which the ballot is written. If you are assisting the voter, you must read the oath and complete the section below, before assisting the voter. (Instrucciones al Asistente: Un votante puede recibir ayuda para leer o llenar la boleta solamente si el votante tiene una discapacidad física la cual le impide escribir o ver, o si no tiene la habilidad de leer el lenguaje en el cual la boleta está escrita. Si usted le proporcionará ayuda a un votante, usted debe leer el juramento y llenar la siguiente sección abajo, antes de asistir al votante).

**Oath of Person Assisting Voter:** I swear (or affirm) that I will not suggest, by word, sign, or gesture, how the voter should vote; I will confine my assistance to answering the voter's questions, to stating propositions on the ballot, and to naming candidates and, if listed, their political parties; I will prepare the voter's ballot as the voter directs; and I am not the voter's employer, an agent of the voter's employer, or an officer or agent of a labor union to which the voter belongs. (Juramento de la Persona Asistiendo al Votante: Juro (o afirmo) que no sugeriré con palabras, señales, o gestos, la manera en la cual el votante debe votar; limitare mi asistencia a responder las preguntas del votante, leer propuestas en la boleta, nombrar los candidatos, y si es mencionado, su partido político; preparaé la boleta del votante de acuerdo a sus instrucciones; y yo no soy el empleador del votante, un agente del empleador el votante, o un oficial o agente de un sindicato al cual el votante pertenece.)

**Instructions to Witness:** You are serving as a witness for _____ (name of voter). You must complete the section below if you witness the mark of the voter, or if the voter cannot make a mark. If the voter cannot make a mark, check here _____ (Instrucciones al Testigo: Usted esta fungiendo como testigo para _____ (nombre del votante). Usted debe llenar la siguiente sección abajo si usted fue testigo de que el votante firmo, o de que el votante no puede firmar. Si el votante no puede firmar, marque sus iniciales aquí _____).

**Instructions to Person Depositing Carrier Envelope in Mail or to Common or Contract Carrier:** If you are assisting a voter by depositing the carrier envelope in the mail or with a common or contract carrier, you must complete the section below. (Instrucciones a la Persona Quien Deposita el Sobre de Envío en el Correo o Entrega al Transportista Público o Comercial: Si usted asistirá al votante a depositar el sobre de envío en el correo o con un transportista público o comercial, usted debe llenar la sección que aparece abajo.)

If you are an assistant or witness, check the appropriate box below and provide information: (Si usted es un asistente o testigo, marque la casilla correcta y proporcione su información):

| ☐ Assistant/ Asistente | | | |
|---|---|---|---|
| ☐ Witness/ Testigo | Signature (Firma) | Printed Name (Nombre Impreso) | Street Address (Domicilio residencial) |
| ☐ Assistant/ | | | |

|||||||||||| |||| ||||||||||| ||||||||||||||||||||||||||
L040885456 (BS11)
30S33.73120 2
RICHARDSON, GEORGE ADAMS
1070 SWEETWATER DR
COLLEGE STATION, TX 77845

Printed Name (Nombre Impreso)

Street Address (Domicilio residencial)

**Nombre de Elección:** _____

**Date of Election (Fecha de Elección):** ___/___/___

The University of Southern Mississippi

## The Aquila Digital Community

Honors Theses                                                    Honors College

Spring 5-2016

# Form-Blindness and Its Implications: A Verification Study

Meredith G. Moody
*University of Southern Mississippi*

Follow this and additional works at: https://aquila.usm.edu/honors_theses

 Part of the Forensic Science and Technology Commons

Recommended Citation
Moody, Meredith G., "Form-Blindness and Its Implications: A Verification Study" (2016). *Honors Theses*. 388.
https://aquila.usm.edu/honors_theses/388

This Honors College Thesis is brought to you for free and open access by the Honors College at The Aquila Digital Community. It has been accepted for inclusion in Honors Theses by an authorized administrator of The Aquila Digital Community. For more information, please contact Joshua.Cromwell@usm.edu.

**Exhibit**
**Dr. Lonton Mohammed**
**3**
5/04/20  KS

The University of Southern Mississippi

FORM-BLINDNESS AND ITS IMPLICATIONS: A VERIFICATION STUDY

by

Meredith G. Moody

A Thesis
Submitted to the Honors College of
The University of Southern Mississippi
In Partial Fulfillment
of the Requirements for the Degree of
Bachelor of Science
in the School of Criminal Justice

May 2016

ii

Approved by

_____
Dean Bertram, Ph.D., Thesis Adviser
Professor of Forensic Science
School of Criminal Justice

_____
Lisa Nored, Ph.D., Director
School of Criminal Justice

_____
Ellen Weinauer, Ph.D., Dean
Honors College

iii

Abstract

Form-blindness is not an eye problem. It is a perceptual inability to distinguish the small differences between shapes, colors, and patterns. This research examines this phenomenon by using a previously-established exam to study form-blindness and its implications. Demographic variables such as age, major, GPA, and sex are also looked at to see what potential impact they might have on a person's performance on the exam. The form-blindness tests administered during this study were graded and then analyzed using descriptive statistics and multiple linear regression. In the end, no statistical significance was found for the demographic variables of age, GPA, major, 20/20 vision, LASIK eye surgery, and dyslexia. However, the demographic variables of sex, fingerprint training, and use of medication were found to have statistical significance in the study, meaning that a potential administrator of the test might want to more heavily consider these variables than the other demographic variables when determining whether or not to hire a potential fingerprint examiner.

Keywords: Form-blindness, Latent fingerprints, Perception, Vision, Aptitude

Acknowledgements

I would like to thank my thesis advisor and mentor, Dr. Dean Bertram, for introducing me to this fascinating topic and for guiding me through this process. A big thank you to Ron Smith & Associates for so graciously allowing me to use their form-blindness exam in the pursuit of my research. Thank you to Dr. Joshua Hill for his tremendous help with my statistics and also to Dr. Thomas Panko for his help during the data-collecting process. Thank you to Dr. Lisa Nored and the School of Criminal Justice for their gracious support. Thank you to my family and friends for supporting me and encouraging me in this endeavor. Lastly, thank you God for giving me the grace and strength to do this thesis and to do it well.

v

TABLE OF CONTENTS

LIST OF TABLES ................................................................................................ vii

CHAPTER 1—PROBLEM STATEMENT.......................................................................1

CHAPTER 2—LITERATURE REVIEW ........................................................................3

CHAPTER 3—METHODOLOGY ...............................................................................10

CHAPTER 4—RESULTS...........................................................................................14

CHAPTER 5—DISCUSSION/CONCLUSION..............................................................18

REFERENCES ........................................................................................................21

APPENDICES

       Appendix A: Approval Letter from Institutional Review Board (IRB)................23

       Appendix B: Approval Letter from Ron Smith and Associates ...........................24

       Appendix C: Consent Form .................................................................................25

       Appendix D: Glossary..........................................................................................27

List of Tables

Table I—Descriptive Statistics ........................................................................................16

Table II—Regression Results .........................................................................................17

Chapter 1—Problem Statement

Form-blindness is a problem that affects a very small percentage of the population. It is not a sight issue or an eye problem, rather it is a misfiring in the way that a person's brain perceives images and information. Perception is the issue, not sight. Since form-blindness is so rare, the people who have it are often unaware of it because this defect does not hamper day-to-day life. However, if a person has never undergone form-blindness testing or does not realize he or she has a perception problem when applying for latent fingerprint certification, this brain irregularity could pose a problem for both the person and the forensic science laboratory hiring them.

The average person has probably never heard of form-blindness, but he or she would most likely be familiar with perception issues. One example of this is when a car collides with a motorcycle, and the driver of the car claims that they never saw the motorcycle coming before they pulled out onto the road. Another example of a perception issue is a photo of a blue-and-black dress that went viral on the Internet about a year ago, sparking social media hashtags such as #TheDress, #Dressgate, #teamblueandblack, #teamwhiteandgold, and so on and so forth. When presented with the image, many people saw either a blue-and-black dress or a white-and-gold dress. Even though the designer of the much debated frock has released a statement saying that the dress is blue-and-black, there is still much sparring over the dress' actual color. This is not to say that those who see white and gold are wrong in what they see; their brain simply perceived the dress differently than those who see the dress as black and blue.

1

Take this concept, make it extremely rare, and apply it to the world of forensic science and fingerprint analysis, and one can appreciate the problem. For a person with form-blindness, his or her brain cannot tell the minute differences between shapes, color, and patterns but perceives them all as being the same because the person's brain is trying to make the image make sense. It is not that the person knows that they are viewing the image incorrectly; they genuinely believe that what they are seeing is actually correct. So if a latent fingerprint examiner with form-blindness is looking at two fingerprints for comparison, the fingerprints will look uniform. When a person's exoneration or incarceration hangs in the balance, mistakes in identification and comparison cannot be afforded, or there could be very grave consequences.

The purpose of this study is to demonstrate the applicability of form-blindness testing in forensic laboratory arenas by validating a form-blindness exam already being administered. Different variables such as eyesight, training, and age were studied to examine whether or not they have an impact on form-blindness. These variables were also looked at to determine their possible impact on aptitude and how capable of a fingerprint examiner a potential test-taker would be.

2

Chapter 2—Literature Review

Perception is something that has fascinated philosophers, doctors, and scholars for thousands of years. Plato theorized and reasoned about it, Aristotle observed it through experiments and analysis of the senses, and Galen studied it through dissections of the human body.[1] These men and others sought to understand perception and how it works because it gives an insight into the realm of the human mind, a feat of nature that many scientists seek to understand to this day.  Discerning how perception works is vital [2] because of how it impacts day-to-day life. Without it, trying to make sense of a constantly changing world would result in chaos. [3] In order to adapt and respond to the changes in our environment, we must have something to interpret the information given us and to help guide us.

Perception is a process that all humans possess and make use of. It is "not only a basic psychological process, but also a very powerful one" and allows us to interact with our world. [1] For example, discriminating between colors is a form of perception. This ability may have developed from the need for organisms to be able to tell ripened fruit from unripe fruit, allowing humans to have better-tasting food and the potential capability of applying this skill to other areas for survival.[4] Perception also influences behavior. [1] If a person perceives a change in his or her environment, such as the presence of a possible predator, they will respond accordingly in order to resolve the situation. Perception involves the use of all five senses in order to make sense of the world so that humans can live comfortably in it.

3

One of the senses involved in perception—and arguably one of the most important—is vision. Visual perception is how "the brain interprets visual information sent to it by the eye."[5] The human eye is the pathway through which brightness, color, details, shapes, and textures can be seen and then perceived.[5] The Greeks and Egyptians believed that "the eyes were not only windows to the world, they were also through which the world was thought to be illuminated!"[1] They recognized the importance of eye sight and the role that it plays in defining the constancy of shapes, colors, etc. in our environment so that our perception of the world is stabilized.[3]

Since science has evolved, the path of an image from the eye to the brain can now be traced. When an image enters the eye, it must go through several orifices to make it to the brain. The iris determines how much light can enter the eye, which can influence how well the image is seen and retained. After this, the cornea, the ocular media, and an elastic lens focus the light coming from the iris and the image coming from the outside world onto the retina.[5] The retina, which is also a part of the brain, acts as the catalyst that starts the analysis of the image focused upon it and sends this information to the higher levels of the brain. It is also the site in which visual perception actually begins.[4] It is at the retina that information about the image—such as color, texture, and size—begins to be extricated by "electrical and chemical synthesizers" to be combined with other sensory information in order to create a visual perception.[5]

Most of the time this process works harmoniously and without issue. However, there are instances where something misfires and causes a problem in perception.  This is where form-blindness presents an issue. It is a disturbance of the pathways from the eyes to the brain that renders a person unable to determine the small differences between

shapes, colors, and patterns. Most of the time, a person with form-blindness does not know that he or she has it because it does not impact day-to-day life. It is similar to color blindness in that the person with it becomes so used perceiving the world through such a lens that they adapt and take no notice of it. But this can also make such a problem extremely difficult to uncover. When there is an interruption or derailment in these visual pathways, perception *will* be affected.[6]

In 1885, the author of an article in the Christian Union noted an odd visual phenomenon—there were people who could not tell the difference between shapes, colors, and patterns. The author was amazed at this, for he knew that this anomaly was similar to color blindness yet completely different.[7] Several years later, A.S. Osborn observed a judge who could not tell the difference between pieces of evidence in a forged documents trial. [8] More recently, the case of a student studying to obtain her Ph.D. failing a latent fingerprint course due to having this same problem. [9] The phenomenon occurring in all three cases was later determined to be form-blindness, a problem that had nothing to do with a person's eyesight but with how his or her brain perceived incoming images. It was an interruption of visual pathways that affected perception.

The words *sight* and *vision* are used synonymously yet have two different meanings. Sight can be simply described as an image being viewed by the eye and made as clear as possible.  The term *vision*, however, can be described as the way an individual senses changes in his or her environment via their eyes and responds to these changes accordingly. [10] For example, sight would be when a hiker is walking along a trail and sees a flash of brown movement out of the corner of his eye. Vision would be the hiker's eyes taking this movement in along with remembering the posted warning about grizzly

5

bears and responding to this change in his environment by either preparing to fight the possible threat or flee from it.  When it comes to form-blindness, a person can have perfect eyesight yet still be affected by a vision problem. In the cases of form-blindness described above, the problem did not lie in whether or not any of these people were near-sighted, far-sighted, had perfect eyesight, or were blind. It lay in the fact that their brains were physically not able to process the information being visually presented to them and interpret it correctly.

In the case of an analyst who was examining two latent fingerprints for a possible match, their eyes would see the images and try to clarify them. Then, they would make a judgment about whether or not the two prints were a match based upon what they were seeing. If the analyst had form-blindness, any minute differences would be obscured by his or her brain due to their being unable to respond to a change in the images because the images look identical. These obscurities would make it extremely difficult for the examiner to conduct a proper comparison analysis and would contribute to the analyst ultimately making a decision that could negatively impact his or her career and reflect poorly on the agency that employed them. And it would also make it extremely difficult to meet the certification standards set forth by the International Association for Identification.

In their guidelines for certification as a latent fingerprint examiner, the International Association for Identification lays out several requirements. Before even being eligible to take the certification exam, the hopeful examiner must have a bachelor's degree with two years latent fingerprint analysis experience, an associate's degree with three years latent fingerprint analysis experience, or four years latent fingerprint analysis

experience. After this requirement has been met, the certification requires the successful completion of an exam comprised of three parts: (1) 12 out of 15 prints compared or eliminated, (2) 32 out of 35 prints identified, and (3) 85% true/false, multiple choice, etc. answered correctly. The applicant must also submit to an oral exam or present a case for review in order to qualify as an identification expert. [11]

The applicant must also be able to competently fulfill the duties of a latent fingerprint examiner. One part of being a latent print examiner is being able to analyze fingerprints and determine if the prints are a probable match, not a probable match, or inconclusive. In addition to comparing prints, a latent print examiner must be able to process crime scenes as well as gather and document inked prints.[12] A latent print examiner must also be able to testify in court and explain the analysis of the evidence to a jury in an easy-to-understand manner.

Due to these stringent requirements and standards, one could see how it would be problematic for a forensic laboratory who had invested a great deal of time, money, and resources into someone who would never be able to successfully and aptly complete their job, even if the person was willing and invested in becoming a latent fingerprint examiner. Case in point: a student who was studying to obtain her doctorate in criminal justice was unable to successfully pass a latent fingerprint examination training course due to having form blindness. She was a dedicated student who was diligent in her studies and always present in class but was unable to fully understand and grasp the material.[9] This student would never have been able to fulfill the International Association for Identification certification requirements and, if hired by a forensic laboratory to be a latent fingerprint analyst, would have failed. This scenario, along with

7

others, supports the argument set forth by Dean Bertram et al. that tests such as a form-blindness examination would help to prevent bad investments by law enforcement agencies and also keep potential examiners from feeling as if they have wasted two-plus years of their time, energy, and abilities. [13]

Even though the idea of perception can seem to be only theoretical, it is actually possible to measure it empirically. Noted scholars such as Hermann von Helmholtz developed ways of measuring "color, motion, and depth…experimentally…"[1] Leonard Zusne notes that "humans already seem to use curves, angles, and slopes of lines to identify patterns," an ability which can be tested.[14] There are already assessments in place that test a person's perception of form, tests such as Koh's blocks, perceptual speed, and picture completion. These assessments can be used to "imply or predict form perception as one aspect of intellectual functioning." [14] So it is neither impossible nor impractical to use something such as a form-blindness exam to test a person's perceptual capabilities and potential aptitude (or possible lack thereof) for something like latent fingerprint examination, especially since the stakes can be so high.

While there are those who argue that different forms of therapy can help a person to somewhat overcome form-blindness, more experts are claiming that the chances of overcoming form-blindness in order to successfully complete the job of a latent fingerprint examiner are next to none. When asked about the possibility of perception rehabilitation, ophthalmologist and retired military surgeon Dr. Woody Davis responded, "Either you have it or you don't." [15] Dr. R. Pharr and Dr. W.C. Ashford second this statement by agreeing that perception is not something that can be so easily fixed. [16] Since form-blindness is a perception issue rather than a physical eye problem, it cannot

be remedied simply by prescribing new glasses or contacts or by training the eye to make up for what it lacks. It is physically impossible. Due to this defect being permanent in those who possess it, it is vital to test for form-blindness in individuals desiring to be latent fingerprint examiners so that potential employers and employees both do not squander valuable time, efforts, and resources in a wasted endeavor.

9

Chapter 3—Methodology

*Section 3.1—Overview*

The question being asked in this study is, "Are there any demographic variables such as age, major, and sex that indicate how well a person performs on a form-blindness examination?" The purpose of this inquiry is to investigate whether or not form-blindness testing is a viable and helpful tool for forensic science laboratories to employ. It is the hope of this research to demonstrate that using a form-blindness test, such as the one used in this study, as a predictor of performance and aptitude in latent fingerprint analysis would be useful in determining if an applicant should be hired or not.

Permission to use this form-blindness test was granted by its creator, Ron Smith and Associates, and the test is broken into two parts. The first part is generally testing the test taker's ability to distinguish the minute details between shapes, colors, and patterns. It involves exercises such as a curved line test, ranking colors in the same color family from darkest to brightest, and matching images together. The second part is more tailored to latent fingerprint analysis. It involves tasks such as canceling out background noise in order to match one fingerprint to another, matching two fingerprints in the same row, and analyzing a palm print. In addition to the form-blindness test, a piece of paper asking questions about the demographic variables being studied in this research were given to each of the participants; these answers were used to analyze the demographic information.  These demographic variables are age, sex, grade point average (GPA), science or non-science major, eyesight, type of corrective vision, possible fingerprint training, color-blindness, and use of medication. Care will be taken to ensure the privacy

10

of each of the participants by having them put their respective USM identifier instead of their name on the exam.

*Section 3.2—Test Administration and Sample Collection*

Adults ages 18 and over at the University of Southern Mississippi were sought to take part in this study, with there being 79 participants. The participants in this research were part of a convenience sample. In order to get as many participants as possible, the test was administered several times. The form-blindness test was administered on campus and the data collected from the test-taker by the researcher once he or she completed the exam. Consent forms were given to each of the participants and collected by the researcher as well. In addition to the actual test, the demographic variables being studied were collected on a separate sheet of paper attached to the exam. After the test was administered, it was collected—along with the demographic information and consent forms—and everything was stored in a locked cabinet in a secure office until needed for analysis. Once analysis was completed, the paper copies of the exam were destroyed while the electronic data will be kept on file for two years.

Section 3.3—Sample Analysis

Once the test were completely administered and collected, the results were graded and analyzed. They were graded using an answer key provided by the private company that created the form-blindness exam. Each score fell numerically in one of four categories—Poor, Below Average, Average, and Excellent. Poor was 0-69, Below Average was 70-79, Average was 80-89, and Excellent was 90-100. After being graded, the results were analyzed using multiple linear regression.

Linear regression is a type of analysis that can be used to predict the impact that one variable (the independent variable) will have on another (the dependent variable), an example of this being how a person's age might impact their score on the form-blindness exam. It is based off of slope of a line—y=mx+b—and uses something similar to a best-fit line. However, with regression, the equation is:

$$y = \alpha + \beta x.$$

Y represents the "predicted score", $\alpha$ represents the "Y intercept or place where the regression line crosses the Y axis," and $\beta$ represents "the slope of the line (slope coefficient)." [17] In the case of multiple variables being analyzed, which is the case in this study, an analysis technique called multiple regression is used.

Multiple linear regression involves predicting the impact of multiple variables (the independent variables) onto another variable (the dependent variable). In this study, the independent variables are the different demographic variables, and the score on the form-blindness exam is the dependent variable. The formula used for multiple linear regression is:

$$Y = \alpha + \beta_1 X_1 + \beta_2 X_2 \ldots \beta_K X_K + e$$

In this instance, y represents the "estimated value of Y," $\alpha$ represents the "y intercept…where the regression line crosses the Y axis," $\beta$ represents the "partial slope coefficient,", and e represents the "residual error term." The subscripts represent the number of variables that are studied in the analysis. [17] The line with the smallest number of residuals (or e) acts as the best-fit line. In addition to analyzing this data using multiple linear regression, descriptive statistics were also used to analyze this data. This type of

12

statistics show the frequency at which variables occur and show other statistical

variables, such as standard deviation, mean, and range.

13

Chapter 4—Results

Multiple linear regression was used to analyze this data. The dependent variable was the score on the form-blindness exam. The independent variables were the different demographic values such as age, sex, major, etc. Before the linear regression was started, descriptive statistics were run on the data, as shown in Table I. The highest percentage of test-takers (91.1%) were between 18-22 years old. More women than men took this test. Most test-takers had a GPA between 3.0-4.0 (57%), and there was a higher percentage of science majors that took the test than non-science majors (51.9% and 46.8%, respectively). Most of the people who took this form-blindness exam used some form of corrective vision and did not have perfect eyesight (75%). Most of the people who took this exam also did not have any type of fingerprint training (68.4%). The majority of test-takers did not have dyslexia (94.8%) nor were on any medication (53.2%), and no one reported being color-blind. The highest percentage of test-takers also scored a 79 or below out of 100 (53.2%).

After the descriptive statistics were completed, linear regression was run on the data. The model was statistically significant, as shown in Table II. Age, GPA, major, 20/20 vision, LASIK eye surgery, and dyslexia were not found to have any statistical significance. Sex, fingerprint training, and use of medication, however, were found to have statistical significance. Sex had a statistical significance of p=0.030. A man taking the test did statistically 7.265 points better than a woman taking the form-blindness exam. Fingerprint training had a statistical significance of p=0.002. A person with fingerprint training did statistically 13.356 points better than a person with no fingerprint training on

14

the exam. Use of medication had a statistical significance of p=0.035. A person on medication did statistically 9.296 points better than a person not on medication while taking the test.

The Beta values in this model are standardized coefficients and can be interpreted to indicate which predictors contribute most to the overall model. They are interpreted in terms of their size, relative to one another. The beta values for sex of participant, fingerprint training, and use of medication were 0.263, 0.455, and 0.236, respectively. Fingerprint training was found to have the highest beta value, meaning it was the strongest predictor of scores in the model.

The $R^2$ value for this model was 0.270, and the adjusted $R^2$ value was 0.169. This study provided only a very weak model, meaning that there were things that would explain the variation yet were not being captured in the model.

15

Table I

*Descriptive Statistics*

| Variable | N | Percent | Average | Minimum | Maximum |
|---|---|---|---|---|---|
| Score on Form-Blindness Exam | | | 76.759 | 41 | 99 |
| 0-69 | 21 | 26.6 | | | |
| 70-79 | 21 | 26.6 | | | |
| 80-89 | 16 | 24 | | | |
| 90-100 | 18 | 22.8 | | | |
| Age | 79 | | 20.722 | 18 | 46 |
| GPA | 79 | | 3.1633 | 2.00 | 4.00 |
| Sex | | | | | |
| Female | 51 | 64.6 | | | |
| Male | 28 | 35.4 | | | |
| Major | | | | | |
| Non-Science | 37 | 46.8 | | | |
| Science | 41 | 51.9 | | | |
| Eyesight | | | | | |
| Near-Sighted | 42 | 46.2 | | | |
| Far-Sighted | 9 | 11.5 | | | |
| 20/20 | 28 | 35.9 | | | |
| Corrective Vision | | | | | |
| None | 49 | 62 | | | |
| Contacts | 25 | 31.6 | | | |
| Glasses | 33 | 41.8 | | | |
| LASIK | 1 | 1.3 | | | |
| Other | 0 | 0 | | | |
| Any Fingerprint Training | | | | | |
| No | 54 | 68.4 | | | |
| Yes | 25 | 31.6 | | | |
| Dyslexic | | | | | |
| No | 73 | 94.8 | | | |
| Yes | 4 | 5.2 | | | |
| Color-Blind | | | | | |
| No | 79 | 100 | | | |
| Yes | 0 | 0 | | | |
| On Any Medication | | | | | |
| No | 67 | 87 | | | |
| Yes | 10 | 13 | | | |

16

Table II

*Regression Results*

|  | **B** | **SE** | **Beta** | **t** |
|---|---|---|---|---|
| Age of Respondent | -0.684 | 14.408 | -0.177 | -1.541 |
| Sex of Respondent | 7.265* | 0.444 | 0.263 | 2.218 |
| GPA of Respondent | 1.989 | 3.275 | 0.084 | 0.71 |
| Major of Respondent | -2.699 | 2.802 | -0.101 | -0.688 |
| 20/20 | -3.455 | 3.922 | -0.123 | -1.072 |
| LASIK | 1.434 | 3.222 | 0.012 | 0.112 |
| Any Type of Fingerprint Training | 13.356** | 4.122 | 0.455 | 3.24 |
| Dyslexic | 2.514 | 6.508 | 0.042 | 0.386 |
| Medication | 9.296* | 4.308 | 0.236 | 2.158 |

n=79, $R^2$=0.270, adj. $R^2$=0.169

*p<.05; **p<.01; ***p<.001

17

Chapter 5—Discussion/Conclusion

The central question being examined in this study was whether or not any of these demographic variables influence how well a person performed on this form-blindness exam. During the course of this research, there was no statistical significance found for the variables of age, GPA, major, 20/20 vision, LASIK corrective eye surgery, and dyslexia. The variables of sex, fingerprint training and use of medication were, however, found to have statistical significance. Sex of participant was found to have a statistical significance of $p=0.030$. Fingerprint training was found to have a statistical significance of $p=0.002$. Use of medication was found to have a statistical significance of $p=0.035$. When looking at the overall performance on the form-blindness exam, there were scores low enough (69 and below) that could indicate either a person was form-blind or that he or she simply would not do well as a latent fingerprint examiner, something that should be kept in mind when screening potential latent print examiners.

The results of the study were interesting. It was not surprising to the researcher that the variables of age, GPA, major, 20/20 vision, LASIK eye surgery, and dyslexia were found to have no statistical significance regarding performance on the form-blindness exam. It, too, was no surprise to the researcher that fingerprint training was statistically significant and contributed the most to performance on the exam. It is logical to presume that a person who has had some sort of fingerprint training would perform better than someone without given that the trained person's brain is wired to analyze details, patterns, and small differences. It was unexpected, however, that the demographic variables of sex and use of medication were statistically significant predictors. While

unusual, one could reason that there might be something logical to account for this outcome. Functional processing in men and women, for example, might differ enough to account for this paradox. Concerning the use of medication, it is possible that drugs could cause a person's brain to work faster or focus better, helping them to score better on the form-blindness exam.

There were some limitations to this research. One was that there was a lower number of test-takers and thus a narrower data pool. Only 79 people participated in this research. Another limitation was that some of the variables were very disproportionate. For example, nearly two-thirds (64.6%) of the test-takers were women while an even higher proportion (87%) of people reported no present use of medication. Three, collinearity concerns necessitated the removal of the data concerning contact lens and glasses before producing the final multiple linear regression. Specifically, collinearity is when two variables are perfectly correlated and are not uniquely determined. [180p'] This statistical condition presents a problem in multiple linear regression because the analysis cannot reasonably differentiate between two variables. It is akin to trying to measure the same thing twice. Since the variables are so tightly intertwined, the regression cannot separate the two in order determine if there one variable has statistical significance over another, which is what happened in this case with contact lens and glasses.

Future research could further shed a light on form-blindness and its implications. One possibility could be replicating this study but on a much larger scale. It could also include administering this test again but with more proportionate variables, such as having a more equal ratio of men to women and science majors to non-science majors. Another future study could look at one demographic variable and its impact on

performance instead of several. Medication, for example, was shown to have some statistical significance on how high a person scored. Specifically looking at different kinds of medication (such as focus-enhancing drugs or allergy medication) and how they impact a person's score on the form-blindness exam could be helpful in determining why medication plays a possible role in aptitude on the form-blindness examination.

20

References

1. Swade, N. *Perception and Illusion: Historical Perspectives*. 2005. New York, NY: Springer Science+ Business Media, Inc.

2. Schwab, E., Nusbaum, H. *Pattern Recognition by Humans and Machines* (Volume 2: Visual Perception). 1986. Orlando, FL: Academic Press, Inc.

3. Leibowitz, H. *Visual Perception*. 1965. New York: The MacMillan Company.

4. Schwartz, S. *Visual Perception: A Clinical Orientation* (4th ed.) 2010. China: McGraw-Hill.

5. Padgham, C. A., Saunders, J. E. *The Perception of Light and Colour*. 1975. New York, NY: Academic Press, Inc.

6. Davidoff, J. *Differences in Visual Perception*. 1975. New York, NY: Academic Press, Inc.

7. http://query.nytimes.com/mem/archive-free/pdf?res=990DEFDA1F3BE033A25751C2A9679C94649FD7CF

8. Personal Communication cited in Form-Blindness. Byrd, J., Bertram, D. *J. For. Identification*. 2003, *53* (3), 315-341.

9. Form-Blindness. Byrd, J., Bertram, D. *J. For. Identification*. 2003, *53* (3), 315-341.

10. Leisman, G. *Basic Visual Processes and Learning Disabilities*; Charles C. Thomas: Springfield, IL, 1976.

21

11. International Association for Identification (IAI) (n.d.) New Latent Print Certification Requirements. Retrieved March 8, 2015, from

    https://www.theiai.org/certifications/certification_manual_20141217.pdf

12. International Association for Identification (IAI) (n.d.) Latent Print Certification: An Introduction. Retrieved April 8, 2016, from

    https://www.theiai.org/certifications/latent_print/intro.php

13. Screening Potential Latent Fingerprint Examiner Trainees: The Viability of Form Blindness Testing. Bertram, D., Carlan, P., Byrd, J., and White, J. *J. For. Identification*. 2010, *60* (4), 460-476.

14. Zusne, L. *Visual Perception of Form*. 1970. New York, NY: Academic Press, Inc.

15. Personal Communication cited in Form-Blindness. Byrd, J., Bertram, D. *J. For. Identification*. 2003, *53* (3), 315-341.

16. Personal Communication cited in Chapter III: Review of Related Literature. *Form Blindness Testing: Assessing the Ability to Perform Latent Print Examination by Traditional versus Nontraditional Students* (Doctoral Dissertation). Bertram, D.J. (2009)

17. Hagan, F. *Research Methods in Criminal Justice.* 2006. Boston, MS: Allyn and Bacon.

18. Fox, J. *Applied Regression Analysis and Generalized Linear Models*. 2008. CA: SAGE Publications, Inc.

Appendices

Appendix A: Institutional Review Board (IRB) Approval Letter



**INSTITUTIONAL REVIEW BOARD**
118 College Drive #5147 | Hattiesburg, MS  39406-0001
Phone:  601.266.5997 | Fax:  601.266.4377 | www.usm.edu/research/institutional.review.board

### NOTICE OF COMMITTEE ACTION

The project has been reviewed by The University of Southern Mississippi Institutional Review Board in accordance with Federal Drug Administration regulations (21 CFR 26, 111), Department of Health and Human Services (45 CFR Part 46), and university guidelines to ensure adherence to the following criteria:

- The risks to subjects are minimized.
- The risks to subjects are reasonable in relation to the anticipated benefits.
- The selection of subjects is equitable.
- Informed consent is adequate and appropriately documented.
- Where appropriate, the research plan makes adequate provisions for monitoring the data collected to ensure the safety of the subjects.
- Where appropriate, there are adequate provisions to protect the privacy of subjects and to maintain the confidentiality of all data.
- Appropriate additional safeguards have been included to protect vulnerable subjects.
- Any unanticipated, serious, or continuing problems encountered regarding risks to subjects must be reported immediately, but not later than 10 days following the event.  This should be reported to the IRB Office via the "Adverse Effect Report Form".
- If approved, the maximum period of approval is limited to twelve months.
  Projects that exceed this period must submit an application for renewal or continuation.

PROTOCOL NUMBER: 15091001
PROJECT TITLE:  Form-Blindness and Its Implications: A Verification Study
PROJECT TYPE: New Project
RESEARCHER(S):  Meredith Moody
COLLEGE/DIVISION:  College of Science and Technology
DEPARTMENT: Forensic Science
FUNDING AGENCY/SPONSOR: N/A
IRB COMMITTEE ACTION:  Expedited Review Approval
PERIOD OF APPROVAL: 10/30/2015 to 10/29/2016
**Lawrence A. Hosman, Ph.D.**
**Institutional Review Board**

23

Appendix B: Approval Letter from Ron Smith and Associates



**Headquarters Laboratory**
P.O. Box 670
Collinsville, MS 39325

Office (601) 626-1100
Fax (601) 626-1122

**Ron Smith & Associates, Inc.**
Toll Free: 1-866-832-6772
www.ronsmithandassociates.com

**Florida Laboratory**
8118 118th Avenue North
Largo, FL 33773

Office (727) 544-1816
Fax (727) 546-4086

To Whom It May Concern:

We at Ron Smith & Associates give Meredith Moody the express and official permission for the use of our form-blindness examination to be used in the pursuit of her research for her Honors Thesis.

Sincerely,

Brian Dew, CLPE
Testing Coordinator / Senior Consultant

24

Appendix C: Consent Form



INSTITUTIONAL REVIEW BOARD

## SHORT FORM CONSENT

| SHORT FORM CONSENT PROCEDURES |
|---|
| This document must be completed and signed by each potential research participant before consent is obtained.<br><br>• All potential research participants must be presented with the information detailed in the Oral Procedures before signing the short form consent.<br>• The Project Information section should be completed by the Principal Investigator before submitting this form for IRB approval.<br>• Copies of the signed short form consent should be provided to all participants.<br>• The witness to consent must be someone other than the Principal Investigator or anyone else on the research team.<br><br>**Last Edited**<br>July 22nd, 2014 |

| | | |
|---|---|---|
| Today's date: | | |
| **PROJECT INFORMATION** | | |
| Project Title: Form-Blindness and Its Implications: A Verification Study | | |
| Principal Investigator: Meredith Moody | Phone: 601-508-2502 | Email: meredith.moody@eagles.usm.edu |
| College: Science and Technology, Honors College | Department: Forensic Science | |
| **CONSENT TO PARTICIPATE IN RESEARCH** | | |

25

Participant's Name:  _____

Consent is hereby given to participate in this research project. All procedures and/or investigations to be followed and their purpose, including any experimental procedures, were explained. Information was given about all benefits, risks, inconveniences, or discomforts that might be expected.

The opportunity to ask questions regarding the research and procedures was given. Participation in the project is completely voluntary, and participants may withdraw at any time without penalty, prejudice, or loss of benefits. All personal information is strictly confidential, and no names will be disclosed. Any new information that develops during the project will be provided if that information may affect the willingness to continue participation in the project.

Questions concerning the research, at any time during or after the project, should be directed to the Principal Investigator using the contact information provided above. This project and this consent form have been reviewed by the Institutional Review Board, which ensures that research projects involving human subjects follow federal regulations. Any questions or concerns about rights as a research participant should be directed to the Chair of the Institutional Review Board, The University of Southern Mississippi, 118 College Drive #5147, Hattiesburg, MS 39406-0001, (601) 266-5997.

_____          _____

**Research Participant**                          **Witness to Consent**

_____          _____

**Date**                                         **Date**

26

Appendix D: Glossary

❖ <u>Age</u>—how old a person is in years as reported by the test taker

❖ <u>Form-blindness</u>—the inability to determine the small differences between shapes, colors, and patterns.

❖ <u>Grade Point Average (GPA)</u>—grade based on a 4.0 scale as reported by the test-taker

❖ <u>Institutional Review Board</u>—ethical research board that reviews proposed methods in research in order to ensure that no humans are harmed during course of gathering data

❖ <u>Latent fingerprint</u>—a fingerprint that was not visible to the naked eye and has been developed and enhanced in order to be seen better

❖ <u>Medication</u>—over-the-counter or prescription drugs that were taken for long periods of time; excludes drugs such as Tylenol or Aleve

❖ <u>Science</u>—student enrolled in the College of Science and Technology at the University of Southern Mississippi with the exception of the majors of criminal justice, interior design, construction engineering, geography, and geology

❖ <u>Training</u>—having taken any form of latent fingerprint examination instruction, such as the course offered in the Department of Forensic Science at the University of Southern Mississippi

❖ <u>Vision acuity</u>—how well a person can see as reported by the test taker

27

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

DR. GEORGE RICHARDSON,       )
ROSALIE WEISFELD, AUSTIN     )
JUSTICE COALITION,           )
COALITION OF TEXANS WITH     )
DISABILITIES, MOVE TEXAS     )
CIVIC FUND, LEAGUE OF        )
WOMEN VOTERS OF TEXAS, and)
AMERICAN GI FORUM OF         )
TEXAS, INC.,                 )
     Plaintiffs,             )
                     )
vs.                          )   CASE NO. 5:19-cv-00963
                     )
TEXAS SECRETARY OF STATE, )
TRUDY HANCOCK, IN HER        )
OFFICIAL CAPACITY AS         )
BRAZOS COUNTY ELECTIONS      )
ADMINISTRATOR, AND PERLA     )
LARA IN HER OFFICIAL         )
CAPACITY AS CITY OF          )
MCALLEN, TEXAS SECRETARY, )
     Defendants.             )

ORAL AND VIDEO DEPOSITION

DR. GEORGE RICHARDSON

MAY 13, 2020

(REPORTED REMOTELY)

1        ORAL AND VIDEO DEPOSITION OF DR. GEORGE RICHARDSON,

2   produced as a witness at the instance of Defendant Texas

3   Secretary of State and duly sworn, was taken in the

4   above-styled and numbered cause on the 13th day of May,

5   2020, from 9:59 a.m. to 11:32 a.m., before Dana

6   Richardson, Certified Shorthand Reporter in and for the

7   State of Texas, reported remotely by computerized

8   stenotype machine, the witness located at the residence

9   of Dr. George Richardson, 4070 Sweetwater Drive, College

10  Station, Texas 77845, pursuant to the Federal Rules of

11  Civil Procedure and the provisions stated on the record

12  or attached hereto.

13

14

15

16

17

18

19

20

21

22

23

24

25

George Richardson - 5/13/2020

3

```
 1                    APPEARANCES

 2   FOR PLAINTIFFS:

 3        Mr. Hani Mirza - (via webconference)
          TEXAS CIVIL RIGHTS PROJECT
 4        1412 Main Street, Suite 330
          Dallas, Texas 75202
 5        Telephone: (972) 333-9200
          E-mail: hani@texascivilrightsproject.org
 6
              - and -
 7
          Mr. Zachary D. Dolling - (via webconference)
 8        TEXAS CIVIL RIGHTS PROJECT
          2202 Alabama Street
 9        Houston, Texas 77004
          Telephone: (832) 767-3650
10        E-mail: zachary@texascivilrightsproject.org

11            - and -

12        Mr. Samuel Kalar - (via webconference)
          WILLKIE, FARR & GALLAGHER
13        787 Seventh Avenue
          New York, New York 10019-6099
14        Telephone: (212) 728-8000
          Fax:  (212) 728-8111
15        E-mail: skalar@willkie.com

16            - and -

17        Ms. JoAnna Suriani - (via webconference)
          WILLKIE, FARR & GALLAGHER
18        1875 K Street, N.W.
          Washington, DC 20006-1238
19        Telephone: (202) 303-1193
          Fax:  (202) 303-2193
20        E-mail: jsuriani@willkie.com

21   FOR DEFENDANT TEXAS SECRETARY OF STATE:

22        Ms. Anne Marie Mackin - (via webconference)
          ASSISTANT ATTORNEY GENERAL
23        P.O. Box 12548, Capitol Station
          Austin, Texas 78711-2548
24        Telephone: (512) 463-2798
          Fax:  (512) 320-0667
25        E-mail: anna.mackin@oag.texas.gov
```

George Richardson - 5/13/2020

4

```
 1                    APPEARANCES - (CONT'D)

 2   FOR DEFENDANT PERLA LARA IN HER OFFICIAL CAPACITY AS
     CITY OF MCALLEN, TEXAS SECRETARY:
 3
          Mr. Isaac J. Tawil - (via webconference)
 4           - and -
          Mr. Austin Stevenson - (via webconference)
 5        CITY OF MCALLEN
          1300 West Houston Avenue
 6        McAllen, Texas 78501-5002
          Telephone: (956) 681-1090
 7        E-mail: itawil@mcallen.net; astevenson@mcallen.net

 8
     FOR DEFENDANT TRUDY HANCOCK IN HER OFFICIAL CAPACITY AS
 9   BRAZOS COUNTY ELECTIONS ADMINISTRATOR:

10        Mr. J. Eric Magee - (via webconference)
          ALLISON, BASS & MAGEE, LLP
11        402 West 12th Street
          Austin, Texas 78701
12        Telephone: (512) 482-0701
          Fax:  (512) 480-0902
13        E-mail: e.magee@allison-bass.com

14   ALSO PRESENT:

15        Mr. Bruce Erratt, Brazos County - (via web)
          Ms. Trudy Hancock - (via web)
16        Ms. Amelia Christopher, Video Technician - (via web)

17

18

19

20

21

22

23

24

25
```

```
 1                         INDEX

 2                                              PAGE

 3   DR. GEORGE RICHARDSON
```

```
 4   Examination by Ms. Mackin ........................8
     Examination by Mr. Mirza ........................43
 5   Examination by Mr. Magee ........................44
     Examination by Mr. Tawil ........................51
 6   Signature Page  .................................54
     Court Reporter's Certificate ....................55
```

```
 7

 8                        EXHIBITS

 9

10   EXHIBIT              DESCRIPTION              PAGE

11
     Exhibit 1     Defendant Secretary of State's   11
12                 First Amended Notice of Oral
                   Deposition of Dr. George
13                 Richardson

14   Exhibit 2     Ballot By Mail Request Form      24

15   Exhibit 3     Carrier Envelope For Early       26
                   Voting Ballot
16
     Exhibit 4     Notice of Rejected Ballot        28
17
     Exhibit 5     Information About Returning       32
18                 Your Carrier Envelope

19   Exhibit 6     "Opinions" page from The Eagle,   36
                   November 19, 2018
20
     Exhibit 7     Statement of Compensation and     38
21                 Oaths

22   Exhibit 8     Plaintiff Dr. George             40
                   Richardson's Objections and
23                 Responses to Defendant
                   Secretary of State's First
24                 Requests For Admission,
                   Interrogatories, and Requests
25                 For Production
```

1          THE REPORTER:  We're on the record.

2  Today's date is May 13, 2020.  The time is 9:59 a.m.

3  This is the deposition of Dr. George Richardson taken in

4  the matter of Dr. George Richardson, Rosalie Weisfeld,

5  Austin Justin (sic) Coalition, Coalition of Texans With

6  Disabilities, Move Texas Civic Fund, League of Women

7  Voters of Texas and American GI Forum of Texas, Inc.,

8  Plaintiffs, v. Texas Secretary of State, Trudy Hancock,

9  In Her Official Capacity as Brazos County Elections

10 Administrator, and Perla Lara In her Official Capacity

11 as City of McAllen, Texas Secretary, Defendants.  This

12 is pending in the United States District Court for the

13 Western District of Texas, San Antonio Division in Civil

14 Action No. 5:19-cv-00963, and it is being conducted by

15 the Federal Rules and agreement of the parties to the

16 remote swearing of the witness.

17          The witness is -- is located at

18 4070 Sweetwater Drive, College Station, Texas 77845.

19          My name is Dana Richardson, Texas

20 Certified Shorthand Reporter No. 5386.  I'm

21 administering the oath and reporting the deposition

22 remotely by stenographic means from my residence within

23 the state of Texas.  My business address is care of

24 Integrity Legal Solutions, P.O. Box 245, Manchaca, Texas

25 78652.

1                 Dr. Richardson, please raise your right

2      hand to be sworn.

3                 (Witness sworn)

4                 THE REPORTER:  Would counsel please state

5      your -- state your appearance and location for the

6      record, beginning with Plaintiff counsel.

7                 MR. MIRZA:  My name is Hani Mirza with the

8      Texas Civil Rights Project.  I am representing

9      plaintiffs in this case; and I am located in Dallas,

10     Texas.

11                THE REPORTER:  Ms. Mackin --

12                MR. KALAR:  I'm Samuel Kalar -- I'm Samuel

13     Kalar, also with the plaintiffs in this case, with the

14     law firm Willkie, Farr & Gallagher; and I'm located in

15     New York, New York.

16                THE REPORTER:  Thank you.

17                MS. SURIANI:  I'm JoAnna Suriani of the

18     law firm Willkie, Farr & Gallagher, also on behalf of

19     Plaintiffs.  I'm located in Washington, DC.

20                MS. MACKIN:  This is Anna Mackin with the

21     Texas Attorney General's Office.  I represent the

22     Defendant Texas Secretary of State in her official

23     capacity; and I am located in Austin, Texas.

24                MR. TAWIL:  My name is Isaac Tawil.  I

25     represent Perla Lara in her official capacity as

George Richardson - 5/13/2020

8

1  secretary of the City of McAllen.  I'm located in

2  McAllen, Texas.

3            MR. MAGEE:  I'm Eric Magee.  I am with the

4  law firm in Austin, Texas, Allison, Bass & Magee.  I

5  represent Trudy Hancock, the Brazos County elections

6  administrator, in her official capacity; and I'm located

7  in Austin, Texas.

8            DR. GEORGE RICHARDSON,

9  having been first duly sworn, testified as follows:

10            EXAMINATION

11      Q.   (BY MS. MACKIN)  All right.  Good morning,

12  Dr. Richardson.  If I could please ask you to speak and

13  spell your name for the record.

14      A.   George Richardson.  G-e-o-r-g-e,

15  R-i-c-h-a-r-d-s-o-n.

16      Q.   Thank you for that, Dr. Richardson.  My name is

17  Anna Mackin.  I am an attorney with the Texas Attorney

18  General's Office, and I'm going to be taking your

19  deposition today.  Have you ever given a deposition

20  before?

21      A.   Yes.

22      Q.   How many times?

23      A.   More than one.

24      Q.   More than one?  Would you say more than ten?

25      A.   Probably.

George Richardson - 5/13/2020

1    Q.   Okay.  So this probably won't be terribly

2    foreign to you; but especially because we are situated

3    remotely, I'd like to go over a couple of ground rules

4    to make sure that everything that Ms. Dana Richardson,

5    our court reporter, is taking down is clear on the

6    record.

7    A.   Okay.

8    Q.   Please try to give -- please try to give a

9    verbal answer to my questions -- so a yes or a no as

10   opposed to "huh-uh" or "uh-huh" -- so that it's clear

11   when reading it back what your answer was.  Okay?

12   A.   Okay.

13   Q.   And if you could please try to let me finish my

14   question before you start your answer, I would also do

15   my best to let you finish your answer before I ask the

16   next question.  Okay?

17   A.   Okay.

18   Q.   And if you don't understand one of my

19   questions, will you please tell me so that I can

20   rephrase it?

21   A.   Yes.

22   Q.   Okay.  If you need a break or any -- to use the

23   restroom at any time, just let me know.  The only thing

24   I'll ask is if I've asked a question that you answer

25   that question, and then we can go ahead and take any

George Richardson - 5/13/2020

10

1  breaks that you need.  Okay?

2      A.   Okay.

3      Q.   All right.  Is there any reason that you might

4  be unable to answer my questions completely and

5  accurately today?

6      A.   No.

7      Q.   Okay.  And so now that the deposition is

8  underway -- again, this is somewhat unique because we

9  are doing this by virtual means; but please tell me if

10 you communicate with anyone, including your counsel,

11 about the substance of your testimony between now and

12 when we conclude the deposition.  Okay?

13     A.   Say that again.

14     Q.   Sure.  So since the deposition has begun, I'm

15 going to ask that you please tell me if you communicate

16 with anybody about the substance of your testimony

17 between now --

18     A.   During the deposition?

19     Q.   Yes.

20     A.   Okay.  Okay.

21     Q.   Now, once the deposition is over, I don't

22 expect you to tell me about that stuff, but just for

23 purposes of the deposition.

24          And in a similar vein, do you have any

25 documents in front of you?

1    A.   No.

2    Q.   So I will be sharing some documents with you

3 using the Zoom Chat function during today's deposition;

4 but, again, since we're situated remotely, please let me

5 know if you're referring to any other document or text

6 message or website or other source of information to

7 answer my questions during this deposition.  Okay?

8    A.   Okay.

9    Q.   And so to kind of practice our document

10 sharing, I am going to send a file around in the group

11 chat box.  And I want you to let me know when you

12 receive it.

13    A.   It says, "Anna Mackin shared a file," and

14 then -- oh, it just went away.

15    Q.   Let's see.  There --

16         MR. MIRZA:  I think you have to click the

17 chat box, George, Dr. Richardson.

18         THE WITNESS:  Oh.

19    Q.   (BY MS. MACKIN)  And are you able to

20 double-click on that icon and view the -- the PDF

21 document?

22    A.   Yeah.  Okay.

23    Q.   Okay.  Great.  And have you -- I'm going to

24 mark this Exhibit 1 to this deposition.

25         (Exhibit 1 marked)

George Richardson - 5/13/2020

12

1      Q.   (BY MS. MACKIN)  Have you seen this document

2  before, Dr. Richardson?

3      A.   Well -- okay.  I gotcha.  Let's see.  It --

4  First Amended Richardson Deposition Notice Final.  How

5  do I bring it up?

6      Q.   Just -- you'll see the -- well, I'm not exactly

7  sure what you're looking at.  From the chat box --

8      A.   I'm looking at a file, and the first one is

9  default apps and then extensions and then installer.

10 And then the -- under it, it says:  File name.  It says:

11 First Amended Richardson Depo Notice Final.  And it

12 says:  Save or cancel.

13     Q.   Okay.  So if -- if you would, save that

14 somewhere, whether on your desktop or anywhere else so

15 that you're able to open it up.

16     A.   It says I don't have permission to save this in

17 this location.  Contact the administrator to obtain

18 permission.

19     Q.   All right.

20     A.   Oh, wait a minute.  It says:  Would you like to

21 save in the George folder instead?

22               You want me to do that?

23     Q.   Sure.  Yeah, that's fine.

24     A.   All right.  Okay.  Got it.

25     Q.   Okay.  And then are you able to open that

1  **document?**

2      A.   Pull it up?  I don't think it's --

3  certification of beneficial owners.  That's not it, is

4  it?

5      **Q.   No.**

6      A.   Man, this is a royal pain.  Let's see.

7               MR. MIRZA:  George, can you try to

8  download --

9               THE WITNESS:  Yeah.

10              MR. MIRZA:  -- saving the file again but

11  this time saving it on your desktop instead?  That way,

12  it will show up on your screen easier.

13              THE WITNESS:  I don't think it will let me

14  do that.

15      **Q.   (BY MS. MACKIN)  Okay.  Well, if that's not**

16  **going to work --**

17      A.   Oh, here it is.  Okay.  It just didn't -- it

18  didn't work the -- okay.  I got it.  United States

19  District Court for the Western District of Texas, San

20  Antonio Division?

21      **Q.   That's right.**

22      A.   Okay.  I've got it.

23      **Q.   Okay.  And have you seen that document before?**

24      A.   I don't -- I don't recall.  I don't think so.

25      **Q.   Okay.  That's fine.  That's not a problem.  It**

George Richardson - 5/13/2020

14

1   was a document that I sent to your attorneys to schedule

2   this deposition that we're having today.  Don't have any

3   questions for you about it, but it was just to give us

4   our trial run on handling these exhibits.

5       A.   Okay.

6       Q.   Dr. Richardson, you mentioned that you had

7   given some prior depositions.

8       A.   Can -- can I get out of this now, this

9   document?

10      Q.   Oh, sure.  Yes.

11      A.   All right.  Okay.  Go ahead.

12      Q.   What were the circumstances of the prior

13  depositions that you gave?

14      A.   Expert witness.  Lawsuit.  Divorce.  I think

15  that's all I can remember.

16      Q.   Okay.  And how many times have you served as an

17  expert witness?

18      A.   Not very many times.  Maybe three or four.

19      Q.   Okay.  And were they all in the same types of

20  cases, or were they in different types of cases?

21      A.   Well, they were -- they were all upper

22  extremity cases.  I'm pretty sure of that.

23      Q.   Okay.  Other than this lawsuit, have you ever

24  sued anyone?

25      A.   My ex-wife.

1    Q.    Anyone else?

2    A.    No, I don't think so.

3    Q.    Okay.  Have you ever been sued?

4    A.    Yes.

5    Q.    How many times?

6    A.    Probably four or five.

7    Q.    Okay.  And what were the circumstances of those

8  lawsuits?

9    A.    One guy got a infection in his -- in his

10  finger.  Well, that lawsuit was dropped because it was

11  determined to be caused by the hospital.  Trauma patient

12  died of postoperative pulmonary embolus.

13    Q.    So I guess I can probably make this a little

14  easier for you.  Were all of the lawsuits related to the

15  practice of -- your practice of medicine?

16    A.    Well, my ex-wife sued me once.

17    Q.    Okay.  Other than that?

18    A.    No.

19    Q.    Okay.  Thank you for that.

20              And you are a medical doctor.  Is that

21  right?

22    A.    Correct.  Yes.

23    Q.    And where did you obtain your medical degree?

24    A.    At the McGovern Medical School in Houston.

25    Q.    And what year was that?

George Richardson - 5/13/2020

16

1    A.    1978.

2    Q.    And I presume that you also have an

3  undergraduate degree?

4    A.    Yes.

5    Q.    And where did you obtain that degree?

6    A.    UT Austin.

7    Q.    Okay.  What did you study?

8    A.    Microbiology.

9    Q.    All right.  And are you currently employed in

10 the practice of medicine?

11   A.    Yes.

12   Q.    And what is your specialty?

13   A.    Hand surgery.

14   Q.    And how long have you specialized in that

15 field?

16   A.    35 years.

17   Q.    Would it be fair to say that you've been in the

18 medical field for your entire career?

19   A.    Yes.

20   Q.    Okay.  And have you always lived in Texas,

21 Dr. Richardson?

22   A.    No.

23   Q.    Where else have you lived outside of Texas?

24   A.    Well, I lived in Kansas City for six years

25 before I moved back to Texas.

1    Q.    And when was that?

2    A.    That was '85 to '90.

3    Q.    **Kansas City, Kansas, or Kansas City, Missouri?**

4    A.    Kansas City, Kansas.

5    Q.    **And anywhere else outside of Texas?**

6    A.    Since I graduated from medical school?

7    Q.    **Yes.**

8    A.    Yeah.  I lived in West Virginia for two years.

9    Q.    **And where in West Virginia?**

10   A.    Huntington.

11   Q.    **And when was that?**

12   A.    '79 to '81.

13   Q.    **All right.  Other than Kansas and West**

14   **Virginia, have you lived anywhere else outside of Texas**

15   **since you graduated from medical school?**

16   A.    No.

17   Q.    **Okay.  All right.  Dr. Richardson, what is your**

18   **understanding of what this lawsuit is about?**

19   A.    Well, my understanding is that the -- the

20   lawsuit is about a ballot, a mail-in ballot, which I

21   cast in 2018; and it was rejected after the fact, after

22   the election.  And I had no recourse to remedy the

23   solution -- or remedy the problem in the -- in the

24   rejection, and so my vote was basically thrown in the

25   trash.

1      Q.   What are your expectations from this lawsuit?

2  What do you hope to get out of it?

3      A.   Well, I think the -- the -- the legal process

4  by which my ballot was rejected is -- is somewhat

5  capricious; and I -- I think it ought to be changed or

6  done away with.

7      Q.   And without revealing any legal advice that you

8  have received, how did you meet your attorneys in this

9  case?

10     A.   I called them on the phone.

11     Q.   Who did you call?

12     A.   The Texas Civil Rights Project.

13     Q.   And what prompted you to call the Texas Civil

14  Rights Project?

15     A.   My daughter told me to get in touch with them.

16     Q.   What's your daughter's name?

17     A.   Emily Richardson.

18     Q.   And do you know how your daughter Emily became

19  familiar with the Texas Civil Rights Project?

20     A.   Well, she's worked in government ever since she

21  graduated from college, both at the state level and the

22  national level.  So I imagine she accessed -- or heard

23  about them somewhere along the way during her work.

24     Q.   Fair enough.

25           All right.  So, Dr. Richardson, this

George Richardson - 5/13/2020

19

 1  lawsuit is about voting by mail.  Other than voting by

 2  mail, are you aware of any other options that are

 3  available for casting a ballot in the state of Texas?

 4       A.   Yes.

 5       Q.   What are those?

 6       A.   You can -- you can vote in person.

 7       Q.   Anything else?

 8       A.   I -- I guess I -- as an -- I'm not sure if an

 9  absentee ballot is considered a ballot by mail or not,

10  but you can cast an absentee ballot.

11       Q.   Okay.  And are you aware of any other methods

12  for casting a ballot in Texas?

13       A.   No.

14       Q.   Okay.  And have you voted in person before?

15       A.   Yes.

16       Q.   This might be difficult; so if you can't give

17  me a firm answer, that's fine.  But do you have an

18  estimate of how many times you've done that in the state

19  of Texas?

20       A.   Well, I mean, I guess there's an election at

21  least every two years of some sort.  So -- and I -- I

22  don't think I've missed any.  And I started voting in

23  college.  Let's see, I'm 70 now.  And I think the legal

24  age -- was the legal age 18 back in the Sixties or

25  Seventies?

1    Q.   I believe so.

2    A.   I can't remember.  Yeah.  So that would be

3  52 -- I guess at least 26 times.  Well, no, because I

4  lived out of state for eight years.  22 times, maybe,

5  20 times, something like that.

6    **Q.   Okay.  I appreciate -- I appreciate that.  I**

7  **appreciate the mathematical approach you took to get me**

8  **that estimate.  Not everyone, including some of us**

9  **lawyers, like me, would have been that diligent about**

10 **it.  So I appreciate that.**

11          **So in all those times you voted, did you**

12 **always vote in person or have you -- have you voted by**

13 **mail before 2018?**

14   A.   I -- well, I'd say, for the most part, I voted

15 in person because when I lived in Austin, I -- I

16 registered to vote there; and when I lived in Houston, I

17 registered to vote there.  And then when I turned 65, I

18 think my wife told me that I could vote by mail.  So

19 somewhere between 65 and now, I -- I applied for a

20 mail-in ballot.

21   **Q.   And why have you historically voted in person?**

22   A.   Well, I think I was required to.

23   **Q.   So --**

24   A.   I mean, you -- you have to -- I think you have

25 to have a reason to vote by mail.

George Richardson - 5/13/2020

1    Q.   Okay.  And the last time -- do you remember the

2 last time you voted in person in the state of Texas?

3    A.   Yes.

4    Q.   When was that?

5    A.   It was in the primary -- let's see.  It's

6 been -- it's been in the past year.

7    Q.   Okay.  Do you remember the last time you voted

8 whether you had to do anything to verify that you were

9 Dr. George Richardson?

10   A.   You mean voting in person?

11   Q.   Yes.

12   A.   Yeah.  I had to show a -- a valid picture ID.

13   Q.   Do you recall a time when you voted in person

14 when you didn't have to provide a form of photo

15 identification?

16   A.   Yes.

17   Q.   And I'm talking specifically about in the state

18 of Texas.

19   A.   Yes.

20   Q.   And when was that?

21   A.   Well, I don't think I was required to show a --

22 a picture ID, a valid picture ID, until pretty recently.

23 I guess within the last three or four years.

24   Q.   Well, let me -- let me -- let me ask a slightly

25 different question, then.  Do you recall a time that you

George Richardson - 5/13/2020

22

1   **voted in person when you didn't have to provide some**

2   **form of identification?**

3      A.   Well, I'm not sure.  I mean, it -- for our

4   local election -- I mean, for our election here in

5   College Station, I just go down -- I used to just go

6   down there and they'd look up my address and I'd sign

7   the -- the form and vote.  I can't -- I don't -- I'm not

8   sure whether I showed them an ID or not.

9      Q.   **Okay.  But you do recall signing a poll book?**

10     A.   Yes.

11     Q.   **Do you recall an occasion when you voted in**

12  **person in Texas when you didn't either have to show a**

13  **form of identification or provide a signature?**

14     A.   No.

15     Q.   **To your knowledge, have you ever had a ballot**

16  **that you cast rejected other than the 2018 general**

17  **election that's at issue in this case?**

18     A.   No.

19     Q.   **All right.  And so I think we already covered**

20  **this, but I just want to make sure I'm -- I'm crystal**

21  **clear.  Before the 2018 general election, had you ever**

22  **voted by mail before?**

23     A.   I'm not sure.  I -- I may have -- I don't know.

24  I may have requested an absentee ballot when I lived out

25  of state and wasn't -- I don't think so.  I think I

23

 1 | always voted in person.

 2 |     Q.   Okay.  Do you recall when you applied for your

 3 | ballot by mail for the 2018 general election?

 4 |     A.   No.

 5 |     Q.   Do you remember what you did to apply for your

 6 | ballot by mail for the 2018 general election?

 7 |     A.   No.

 8 |     Q.   How did you become familiar with the

 9 | requirements for voting a ballot by mail?

10 |     A.   I think I had a discussion with my wife about

11 | it.

12 |     Q.   Okay.  Did anyone assist you in applying for

13 | your ballot by mail for the 2018 general election?

14 |     A.   No.

15 |     Q.   And did anyone assist you in submitting your

16 | application for a ballot by mail in the 2018 general

17 | election?

18 |     A.   No.

19 |     Q.   Do you recall signing your application for a

20 | ballot by mail for the 2018 general election?

21 |     A.   Yes.

22 |     Q.   And what do you recall about that?

23 |     A.   Well, I recall that my signature had to -- it

24 | had to go across the seal on an envelope, half of it

25 | above the -- or on the -- on the flap and then half of

George Richardson - 5/13/2020

24

1    it below the flap.  That's the only reason I recall it,

2    actually.

3        **Q.   Why did that stick out in your memory?**

4        A.   Well, I don't think I've ever signed anything

5    that way before.

6                    (Exhibit 2 marked)

7        **Q.   (BY MS. MACKIN)  All right.  I'm sharing a**

8    **document with you that will be Exhibit 2 to this**

9    **deposition.  Please let me know if you're able to access**

10   **that file.**

11                   MS. MACKIN:  And I'm noting that Eric

12   Magee mentions that the first exhibit did not come

13   through for him.

14                   Eric, I'll be sure to get you a copy;

15   and -- and let me know if you have any trouble with this

16   exhibit that I've just shared.

17       A.   So this is Brazos 74 PDF?

18       **Q.   Yes.**

19       A.   Okay.  Okay.  Got it.

20       **Q.   All right.  Do you recognize this document,**

21   **Dr. Richardson?**

22       A.   I recognize my signature.

23       **Q.   Does this appear to be the ballot-by-mail**

24   **application that you submitted to Brazos county for**

25   **the --**

1    A.    Yes.

2    Q.    -- 2018 elections?

3    A.    Yes.

4    Q.    Okay.  And that is your signature on the line

5    that says "Signature"?

6    A.    Looks like it, yep.

7    Q.    Okay.  Underneath your signature, there's a

8    line of text.  Will you please read that into the

9    record.

10    A.    "Must be signed.  Do not print.  If you cannot

11    sign, make a mark and have witness fill out the box to

12    the right.  I certify the information given in this

13    application is true, and I understand that giving false

14    information in this application is a crime."

15    Q.    Thank you.

16          What was your understanding of what your

17    signature on this ballot-by-mail application would be

18    used for?

19    A.    Well, it -- it would attest that -- that I,

20    George Richardson, was requesting a mail-in ballot.

21    Q.    And do you --

22    A.    That was my understanding.

23    Q.    Do you recall when you received your mail-in

24    ballot?

25    A.    No.

George Richardson - 5/13/2020

26

1      Q.   Did it come from Brazos County?

2      A.   Yes.

3      Q.   And do you recall if anything was included

4  besides the ballot itself?

5      A.   Well, there's two -- there's two envelopes that

6  go with the mail-in ballot.  I recall that.

7      Q.   Okay.  A carrier envelope and a secrecy

8  envelope?  Does that sound right?

9      A.   Yeah.

10     Q.   Do you recall if there was anything else

11 included besides the ballot and those two envelopes?

12     A.   No.

13     Q.   Okay.  And we are done with Exhibit 2.

14              (Exhibit 3 marked)

15     Q.   (BY MS. MACKIN)  I'm going to share another

16 file which will be Exhibit 3.  Please let me know if

17 you're able to access that document.

18              MR. MIRZA:  I -- Anna, I don't think we --

19 I got the link.

20              MS. MACKIN:  Oh, I'm sorry.

21              MR. MIRZA:  Okay.

22              MS. MACKIN:  I don't know what is going on

23 with this today.  This has been working so well up until

24 now.

25              MR. MIRZA:  Yeah.

1          MS. MACKIN:  Let me try again.

2          Oh, shoot, I'm -- I know what the problem

3  is.  I only sent it to Integrity.

4          MR. MIRZA:  Oh, I see.

5          MS. MACKIN:  That will do it.  They sent

6  me a note to say they were e-mailing them to counsel who

7  weren't able to access them, and then it was just

8  automatically replying to Integrity.  So hopefully that

9  should work.

10          MR. MIRZA:  Okay.  I received it.

11     A.   Okay.  Yeah, I've got it.

12     Q.   (BY MS. MACKIN)  Thank you.

13          Dr. Richardson, do you recognize the page

14  labeled "Brazos 72"?

15     A.   Yes.

16     Q.   And does that appear to be the carrier envelope

17  that you used to return your ballot to Brazos County for

18  the 2018 general election?

19     A.   Yes.

20     Q.   And is that your signature on the line that

21  says "Signature or Mark of Voter"?

22     A.   Yes.

23     Q.   And is that the signature that you were

24  speaking about that you recalled having to sign over the

25  flap?

1    A.    Yes, I think so.

2    Q.    And did you have an understanding of what that

3    signature would be used for?

4    A.    My understanding was that it -- it would be

5    used to attest -- I mean, it'd be like a sworn statement

6    that -- that this vote -- that this ballot belonged to

7    me or was coming from me.  That was my understanding.

8    Q.    Okay.  And moving on to the next page,

9    Brazos 73, there's a stamp on the carrier envelope that

10   says October 17th, 2018.  Now, I don't expect you to

11   necessarily remember exactly the date that you mailed in

12   your ballot; but does it seem reasonable that Brazos

13   County would have received your ballot on October 17th,

14   2018?

15   A.    Yes.

16   Q.    Okay.  That's all I have on that document.

17   Thank you, Dr. Richardson.

18              (Exhibit 4 marked)

19   Q.    (BY MS. MACKIN)  I'm sending what will be

20   Exhibit 4 around in the chat box.  Please let me know

21   when you're able to pull up that document.

22   A.    Okay.  I've got it.

23   Q.    Okay.  And do you recognize this document?

24   A.    Yes.

25   Q.    What is it?

1      A.   It's a -- it's a notice of a rejected ballot.

2      Q.   And is this the Notice of Rejected Ballot that

3  you received from Brazos County related to the 2018

4  general election?

5      A.   Well, it's got my name on it; so I would assume

6  that it is.

7      Q.   So down at the bottom, there's a date on this

8  notice.  It was signed by an RW Davis on November 3rd,

9  2018.  Do you know --

10      A.   I see it.

11      Q.   Do you recall when you received this notice?

12      A.   Yeah.  It was after the election.

13      Q.   Do you know the date?

14      A.   No.

15      Q.   Other than this Notice of Rejected Ballot,

16  Exhibit 4, did you receive notice that your ballot had

17  been rejected in any other way?

18      A.   No.

19      Q.   And what did you do when you received

20  Exhibit 4?

21      A.   I wrote a letter to the -- to the local

22  newspaper.

23      Q.   And that would be The Eagle.  Is that right?

24      A.   That's right.

25      Q.   And when did you write that letter?  Do you

1   recall?

2       A.   I think it was probably the same day that I got

3   this rejection.

4       Q.   **And other than writing to the -- The Eagle, did**

5   **you do anything else when you received this notice?**

6       A.   I may have called my daughter.

7       Q.   **Anything else?**

8       A.   Said some curse words.

9       Q.   **Did you contact any Brazos County election**

10  **officials?**

11      A.   Yeah.  Actually, I went down there; but I can't

12  remember when.

13      Q.   **Okay.  What did you -- and when you say you**

14  **went down there, where did you go?**

15      A.   I went to the -- the Brazos County election

16  office or voting office across the street from the

17  courthouse on William J. Bryan.

18      Q.   **And were you able to speak with anyone there?**

19      A.   Yes.

20      Q.   **Who did you speak with?**

21      A.   I can't remember her name, but she was -- she

22  was at the front desk.

23      Q.   **Did you speak with anyone else at the Brazos**

24  **County election office?**

25      A.   No.

1       Q.   Do you know the identities of the individual or

2  individuals who rejected your ballot?

3       A.   No.

4       Q.   Do you know why the decision was made to reject

5  your ballot?

6       A.   The -- the process was explained to me, but

7  that's -- that's all I know.

8       Q.   Okay.  So you know what was considered in

9  making the determination to reject your ballot?

10      A.   Well, yeah, I guess I had a discussion with the

11  person down at the voting office about that; and it

12  was -- it was a little bit opaque, actually.  I mean,

13  she looked at the two signatures and just kind of

14  shrugged and said, "Well, I wouldn't have rejected

15  them."  And then -- and then she explained to me the

16  process by -- whereby -- I think -- I think there's

17  three people that look at the signatures, and -- and

18  they vote either to accept the ballot or reject it,

19  three people that are not experts in anything regarding

20  signatures.

21      Q.   Just to be clear, this conversation you're

22  talking about at the election office, this is the

23  conversation you had when you received the Notice of

24  Rejected Ballot, went down and talked to the woman at

25  the front desk?

George Richardson - 5/13/2020

32

1      A.    That's right.

2      Q.    Do you know whether the Texas Secretary of

3  State's Office was involved in the decision to reject

4  your ballot?

5      A.    No.

6      Q.    Do you know how the individuals who evaluated

7  your ballot were selected?

8      A.    No.

9      Q.    Okay.  And that's all I have on that exhibit.

10            (Exhibit 5 marked)

11      Q.    (BY MS. MACKIN)  I'm going to share what will

12  be Exhibit 5 to this deposition.  Please let me know

13  when you're able to pull up that document.

14      A.    Yeah, I'm getting better at it.  Okay.  I got

15  it.

16      Q.    All right.  Do you recognize this document?

17      A.    No.

18      Q.    Okay.  So do you know if -- so across the top,

19  it says "Information About Returning Your Carrier

20  Envelope."

21      A.    Yes.

22      Q.    Do you -- do you recall whether or not this was

23  provided to you in any of the ballot-by-mail materials

24  that you received?

25      A.    No.

George Richardson - 5/13/2020

33

1    Q.   Okay.  Then I don't have anything else on

2  Exhibit 5.

3              Did you ever contact the Texas Secretary

4  of State's Office about the rejection of your ballot in

5  the 2018 general election?

6    A.   No.

7    Q.   And you mentioned that you voted recently in a

8  primary election, I believe this year.

9    A.   Well, yeah, I think it was this year.

10   Q.   Okay.  Did you review the complaint in this

11 lawsuit before it was filed?  And if -- if it's not

12 clear what I mean by "complaint," I'm happy to pull it

13 up and -- and show it to you and make it an exhibit, but

14 if you know --

15   A.   Yes, I did.

16   Q.   Okay.  How much time would you say you spent

17 reviewing the complaint before it was filed?

18   A.   I don't know.  I read the whole thing, though.

19   Q.   Rough estimate, how much time have you spent on

20 this lawsuit?

21   A.   Counting all the times this deposition has been

22 postponed?

23   Q.   Total time that you've spent on this lawsuit.

24   A.   Three or four hours.

25   Q.   Okay.  Do you know Rosalie Weisfeld?

George Richardson - 5/13/2020

34

1      A.   No.

2      Q.   Are you familiar with an organization called

3  the Austin Justice Coalition?

4      A.   Well, yeah, I am now.

5      Q.   And how did you become familiar with the Austin

6  Justice Coalition?

7      A.   I was familiarized by the Texas Civil Rights

8  Project.

9      Q.   And are you familiar with the Coalition of

10 Texas With Disabilities?

11     A.   Well, I know who they are.

12     Q.   And is that because of this lawsuit?

13     A.   Well, yeah -- well, I think -- I may have known

14 about them before just because of the line of work I'm

15 in.

16     Q.   Sure.  Have you had any prior dealings with the

17 Coalition of Texans With Disabilities before this

18 lawsuit that you can recall?

19     A.   No.  No.  I was asked to serve on a board once,

20 but I -- I just didn't have time, for disabled

21 individuals.  But besides that, no.

22     Q.   And if you're -- I'm sure you're picking up on

23 the theme.  I'm asking about the other parties to this

24 lawsuit.  So I'll ask it a little differently.

25          Prior to this lawsuit, were you familiar

George Richardson - 5/13/2020

35

1  with Move Texas Civic Fund?

2      A.    With who?

3      Q.    Move Texas Civic Fund.

4      A.    I'm not sure I'm familiar with them now.

5      Q.    Okay.  Fair enough.

6             How about the League of Women Voters of

7  Texas?  Are you familiar with that organization?

8      A.    Yeah.  My mom belonged to it.

9      Q.    Have you had any other dealings with the League

10 of Women Voters of Texas?

11     A.    Yeah.  I've sent them money in the past.

12     Q.    Okay.  Anything else?

13     A.    No.

14     Q.    And how about the American GI Forum of Texas?

15 Are you familiar with them?

16     A.    No.

17     Q.    Have you had any prior dealings with the Texas

18 Secretary of State's Office?

19     A.    No.  I don't think so.

20     Q.    And how about Ruth Hughs?  She's the woman who

21 currently serves as Texas Secretary of State.

22     A.    No.  I wouldn't recognize her if I saw her.

23     Q.    Have you had any prior dealings with Perla Lara

24 or the McAllen city secretary?

25     A.    City of Bryan or College Station?

George Richardson - 5/13/2020

36

1    Q.   So I was going to ask that one next, but I'm

2    just -- I just want to cover all the defendants in this

3    lawsuit.  So Perla Lara is the City of McAllen, Texas,

4    secretary.  And so --

5    A.   Oh.

6    Q.   -- I was wondering if you had familiarity with

7    her or with that office.

8    A.   Okay.  No.  No.

9    Q.   Okay.  And how about the Brazos County Election

10   Administrator's Office?  Have you had any prior dealings

11   with them?

12   A.   Before this lawsuit?

13   Q.   Yes, sir.

14   A.   No.

15   Q.   How about Trudy Hancock?

16   A.   I don't think I've ever met her.

17   Q.   Okay.  All right.

18            (Exhibit 6 marked)

19   Q.   (BY MS. MACKIN)  I'm going to share a document

20   which will be Exhibit 6.  Please let me know if you are

21   able to access that document.

22   A.   Okay.  I've got it.

23   Q.   All right.  And do you recognize this document,

24   Dr. Richardson?

25   A.   Yes.

George Richardson - 5/13/2020

37

1    Q.   And what is it?

2    A.   It's the -- it's the -- it's the editorial page

3 of the Bryan-College Station Eagle, or a copy of it.

4    Q.   And it is dated Monday, November 19th, 2018,

5 correct?

6    A.   Yes.  That's right.

7    Q.   And the letter in the top right corner --

8 pardon me.  The letter in the top left corner under

9 "Letters to the Editor," under the headline "Feeling

10 cheated out of his vote after ballot was rejected," is

11 that the editorial that you wrote after receiving your

12 Notice of Rejected Ballot?

13   A.   That's the letter that I wrote.

14   Q.   Okay.  And do you still agree with everything

15 that you stated in this letter?

16   A.   No, I don't.

17   Q.   What do you no -- no longer agree with?

18   A.   I'm sorry?

19   Q.   What do you no longer agree with?

20   A.   Well, I was mad at the time and said I'd never

21 vote by mail again; but I probably will.  I will.

22   Q.   And when do you plan to do that?

23   A.   I guess the next opportunity I have to vote.

24   Q.   Okay.  And why do you plan to vote by mail in

25 the future?

George Richardson - 5/13/2020

38

1     A.   It's easy.  It's convenient.

2     **Q.   Will you take any steps to try to ensure that**

3  **your ballot is not rejected if you vote by mail in the**

4  **future?**

5               MR. MIRZA:  Objection, form.

6     A.   I don't think my ballot will be rejected in the

7  future.

8     **Q.   (BY MS. MACKIN)  Why not?**

9     A.   Because they'd recognize the name on the

10 ballot.

11    **Q.   Who is "they"?**

12    A.   The people that -- the election judges.

13    **Q.   And why is that significant?**

14    A.   Because I'm suing the Secretary of State now.

15    **Q.   And so why do you think that suing the**

16 **Secretary of State will prevent Brazos County from**

17 **rejecting your ballot in the future?**

18    A.   Well, they've rejected it in the past; and I

19 think that if they could take it back, they would.  But

20 I don't think they'll reject it again.

21    **Q.   All right.  Fair enough.**

22               (Exhibit 7 marked)

23    **Q.   (BY MS. MACKIN)  One more document for you.**

24 **Please let me know when you're able to access the**

25 **document I've just shared, which will be Exhibit 7 to**

George Richardson - 5/13/2020

39

1   this deposition.

2       A.   Okay.  I've got it.

3       Q.   All right.  Dr. Richardson, I'm going to

4   represent to you that these are the records from the

5   Brazos County Ballot Board during the 2018 general

6   election.  And I'd like you to take the time you need

7   and review all six pages of these documents -- of this

8   document and let me know if you know any of the

9   individuals who are listed in the column on the far left

10  that says "Name of Election Official."

11      A.   Okay.  I've reviewed it.

12      Q.   Do you know any of the individuals listed on

13  Exhibit 7?

14      A.   Yes.

15      Q.   How many?

16      A.   One.

17      Q.   Okay.  And who is that?

18      A.   Barry Clar.

19      Q.   And that appears on the page marked Brazos 63?

20  Is that right?

21      A.   Correct.  Yes.

22      Q.   Okay.  And how do you know Mr. Clar?

23      A.   He's -- he's active in the -- in the local

24  Democratic Party.

25      Q.   And what's your impression of Mr. Clar?

George Richardson - 5/13/2020

40

1      A.   He's a nice guy.

2      Q.   Would you generally say that he is trustworthy?

3           MR. MIRZA:  Objection, form.

4      A.   Beats me.

5      Q.   (BY MS. MACKIN)  Based on your experience with

6  Mr. Clar, do you have any reason to question his

7  integrity?

8           MR. MIRZA:  Objection, form.

9      A.   No.

10     Q.   (BY MS. MACKIN)  And I just want to be extra

11 clear because the name isn't written out; but at the

12 bottom of these pages, it lists the presiding judge as

13 RW Davis.  Do you know Mr. Davis?

14     A.   No.

15     Q.   Okay.  All right.  That's all I have on that

16 exhibit.  Thank you.

17           (Exhibit 8 marked)

18     Q.   (BY MS. MACKIN)  One more document.  This will

19 be relatively quick, and I'm almost through.

20           Please let me know when you're able to

21 access the document I've just shared, which will be

22 Exhibit 8 to this deposition.

23     A.   Okay.  I've got it.

24     Q.   Do you recognize Exhibit 8?

25     A.   Yes.

1      Q.   And what is it?

2      A.   It's responses to the defendants'

3  interrogatories in this lawsuit prior to the deposition.

4      Q.   And who wrote these responses?

5      A.   I did.

6      Q.   And are they true and correct to the best of

7  your knowledge?

8      A.   Yes.

9      Q.   Dr. Richardson, your -- your complaint

10  mentions -- and it's logical -- that you have signed

11  many prescriptions in your time as a medical doctor.  Do

12  you know what, if anything, that signature is used for

13  when -- when a medical doctor signs a prescription?

14     A.   Well, it -- it attests to the fact that I was

15  either aware or I wrote out the -- the prescribed

16  medication and that it was indicated for the individual

17  I was writing it out for.

18     Q.   And you've mentioned that you have never had a

19  prescription questioned because of the signature on it.

20  Are you aware of circumstances when any other physician

21  has had a prescription questioned or rejected because of

22  the signature on it?

23     A.   Yes.

24     Q.   Okay.  Tell me about that.

25     A.   It -- it was my own prescription.  Many years

George Richardson - 5/13/2020

42

1  ago, a patient of mine who had become addicted to

2  narcotics stole a prescription pad from my office and --

3  and tried to write himself a prescription in another

4  state for a controlled substance.

5      Q.    And who flagged that prescription as fraudulent

6  or invalid or whatever the proper term is?

7      A.    Well, I think it was the State of Colorado.

8      Q.    And is that where the patient attempted to

9  write themself a prescription, in Colorado?

10     A.    That -- that's what I recall, yeah.  It's been

11 at least 20 years ago.

12     Q.    At that time, were you licensed to practice

13 medicine in Colorado?

14     A.    No.

15     Q.    Do you know how the State of Colorado was able

16 to identify that prescription as invalid?

17             MR. MIRZA:  Objection, form.

18     A.    I -- I don't understand the question.

19     Q.    (BY MS. MACKIN)  Okay.  So you were talking

20 about the instance of the State of Colorado identifying

21 a prescription as not legitimate.  Do you know how the

22 State of Colorado identified that prescription as not

23 legitimate?

24             MR. MIRZA:  Objection, form.

25     A.    Yeah, I -- I -- that's a good question.

1     Q.   (BY MS. MACKIN)  It's okay if you don't know.

2     A.   I'm not sure.  I mean, I -- I assumed it was

3  the patient that signed -- tried to sign my name, but

4  I -- I don't see how that would have -- I don't know

5  what tipped them off, to tell you the truth.

6     Q.   Are you aware of any other circumstances in

7  which a prescription has been rejected because of the

8  signature on it?

9     A.   No.  I mean, I can't recall any.  It doesn't

10  mean it didn't happen, but...

11          MS. MACKIN:  All right, Dr. Richardson, I

12  don't have any other questions for you; and I appreciate

13  your time.  And I'll pass the witness.

14          MR. MIRZA:  I have a few questions,

15  Dr. Richardson.

16                    EXAMINATION

17     Q.   (BY MR. MIRZA)  You were not asked to serve on

18  the board of the Coalition of Texans With Disabilities

19  specifically, correct?

20     A.   That's correct.

21     Q.   Okay.  Do you know who will review your

22  signatures the next time you submit a mail-in ballot and

23  the times afterwards when you submit a mail-in ballot?

24     A.   No.

25     Q.   Do you know if the individuals who review your

44

1  future mail-in ballots will know who you are?

2      A.   No.

3      Q.   Okay.  Do you know, then, whether those

4  individuals will reject your mail-in ballot for a

5  signature mismatch in the future?

6      A.   No.

7              MR. MIRZA:  Thank you.  Pass the witness.

8              MS. MACKIN:  Anything further?

9              MR. MAGEE:  Yeah.  This is Eric Magee.

10  Can we have about a 10-minute break for me to go through

11  my notes?  And then I can probably make it really short.

12              THE REPORTER:  Okay.  We're off the record

13  at 11:06 a.m.

14              (Recess taken)

15              THE REPORTER:  We're back on the record at

16  11:20 a.m.

17                    EXAMINATION

18      Q.   (BY MR. MAGEE)  Dr. Richardson, my name is Eric

19  Magee; and I represent Brazos County, Trudy Hancock, the

20  elections administrator, in her official capacity.  Do

21  you understand that?

22      A.   Yes.

23      Q.   I just want to follow up on a few things

24  Ms. Mackin asked you about to make sure I had a full

25  understanding.  Earlier in the deposition, she asked you

George Richardson - 5/13/2020

45

 1  what your expectations were from this lawsuit.  And

 2  later on, you mentioned that you were suing the

 3  Secretary of State's Office.  You also recognize that

 4  you're suing Brazos County in this matter, correct?

 5      A.   Yes.

 6      Q.   One of the -- what I understood you to say that

 7  your expectations in this process is that you would like

 8  to see the -- that the legal process is somewhat

 9  capricious and should be changed.  Did I understand that

10  correctly?

11      A.   Yes.

12      Q.   Would you agree with me that the legal process

13  that you're talking about is referenced in the Texas

14  Elections Code?

15             MR. MIRZA:  Objection, form.

16      A.   I don't know.

17      Q.   (BY MR. MAGEE)  What legal process were you

18  referring to?

19      A.   Legal process for what?

20      Q.   One of the expectations that you said that you

21  had from this lawsuit was to see a change in the legal

22  process, and I wanted to make sure I understood what

23  legal process you were referring to.

24      A.   The process for accepting a -- a mail-in

25  ballot.

1       Q.   Would you agree with me that in order for there

2  to be a change in the legal process that you believe is

3  capricious, that change would be required by the Texas

4  Legislature?

5              MR. MIRZA:  Objection, form.

6       A.   No, I'm not aware of that.

7       Q.   (BY MR. MAGEE)  Okay.  What duties and

8  responsibilities do you believe Brazos County has in

9  changing the legal process?

10             MR. MIRZA:  Objection, form.

11      A.   Well, I -- well, I think that the -- the

12 responsibility of Brazos County is to implement whatever

13 method is provided to them by the State in a way that is

14 fair and objective to all voters, including myself.

15      Q.   (BY MR. MAGEE)  Okay.  So then you would agree

16 with me that Brazos County has a responsibility to

17 follow the Texas Election Code and the process that is

18 prescribed by the State of Texas?

19             MR. MIRZA:  Objection, form.

20      A.   Yeah.  As long as they follow it in a fair and

21 objective manner.

22      Q.   (BY MR. MAGEE)  Is it your understanding that

23 Brazos County has some authority to not follow the Texas

24 Election Code or any responsibilities or process

25 prescribed by the State of Texas?

George Richardson - 5/13/2020

1          MR. MIRZA:  Objection, form.

2     A.   No, I don't understand that.

3     Q.   (BY MR. MAGEE)  Okay.  You mentioned earlier

4  that you've spoken with your daughter Emily Richardson

5  about your rejected ballot, potentially your brother,

6  your wife and then someone at the Brazos County

7  elections office.  Besides those four individuals and

8  your attorney, have you talked to anybody else?

9     A.   I never talked to my brother about it.

10     Q.   Okay.  I may have misunderstood you.  Anybody

11  else?

12     A.   The -- about -- about this lawsuit or --

13  what -- I'm sorry.

14     Q.   Yes.  About this lawsuit and the rejection of

15  your ballot.

16     A.   Yeah.

17     Q.   Who else have you spoken with?

18     A.   Anybody that will listen.

19     Q.   Okay.  Any other elected officials or county

20  officials of Brazos County?

21     A.   Yes.

22     Q.   And who were those individuals?

23     A.   Jim Locke.  John Crompton.  I can't recall

24  anybody else.

25     Q.   Do you know what position Jim Locke holds?

48

1          MR. MIRZA:  Objection.

2     A.   He's a -- he's a judge.

3     Q.   (BY MR. MAGEE)  Do you know if he's a district

4  court judge, a county court at law judge?  Is he the

5  county judge of Brazos County?  Do you know what --

6     A.   I think he's a county court of law judge,

7  but --

8     Q.   I -- okay.

9     A.   For me, he's a golf buddy.

10    Q.   Okay.  How about John Crompton?

11    A.   He is -- serves on the College Station City

12 Council.

13    Q.   You mentioned about your daughter Emily

14 suggested that you call the Texas Civil Rights Project

15 because she had worked for and around the state and

16 federal governments.  What state agencies has she worked

17 for?

18    A.   She -- she worked for the legislative clerk for

19 the state House of Representatives.

20    Q.   She work for a specific member?

21    A.   No.  She worked for the clerk.

22    Q.   Okay.  Any other jobs with the State of Texas?

23    A.   No.

24    Q.   Has she worked for the Texas Civil Rights

25 Project?

George Richardson - 5/13/2020

49

1    A.    No.  Not to my knowledge.

2    Q.    Okay.  Is she an attorney?

3    A.    No.

4    Q.    Would you agree with me that the individuals

5    that reviewed your signature are not Brazos County

6    employees?

7              MR. MIRZA:  Objection, form.

8    A.    I don't have any idea.

9    Q.    (BY MR. MAGEE)  Okay.  Do you know if the

10   individuals that reviewed your signature and serve on

11   the Early -- Early Voting Ballot Board, if those

12   individuals are appointed by the Republican and

13   Democratic parties?

14             MR. MIRZA:  Objection, form.

15             MR. MAGEE:  What's your -- what's the

16   basis of your objection?

17             MR. MIRZA:  You're getting at a legal

18   conclusion.

19             MR. MAGEE:  I asked if he knew.

20             MR. MIRZA:  I understand.  But you're

21   asking about specifically legal issues.

22             MR. MAGEE:  Okay.

23   Q.    (BY MR. MAGEE)  I think you can answer it,

24   Dr. Richardson.  Do you know if the individuals that

25   reviewed your signature and serve on the Early Voting

George Richardson - 5/13/2020

50

1  Ballot Board, if they are appointed by the Republican

2  and Democratic Party?

3          MR. MIRZA:  Objection, form.

4      A.   I think -- I think they've told me down at the

5  election office that one is appointed by the Democratic

6  Party, one's appointed by the Republican Party and one

7  is -- not sure.  The third one is supposed to be, like,

8  a tiebreaker or something.

9      Q.   (BY MR. MAGEE)  Okay.  If you would look at

10  Exhibit 8 that Ms. Mackin -- Mackin showed you.

11          MR. MAGEE:  Sorry, Anna.

12          MS. MACKIN:  That's okay.  It happens all

13  the time.

14          MR. MAGEE:  Everybody mispronounces my

15  last name.

16          MR. MIRZA:  Which -- was that that last

17  one that was -- or --

18          MR. MAGEE:  Yes.  It was the responses to

19  requests for admissions and interrogatories.

20          MR. MIRZA:  Great.  Thank you.

21      A.   Okay.  I've got it.

22      Q.   (BY MR. MAGEE)  If you would look at No. 5 on

23  page 6.  Do you see that one?

24      A.   Yep.

25      Q.   It says:  Admit that the SOS does not select

George Richardson - 5/13/2020

51

```
 1  the members of SVC.

 2              Do you know what the SVC is?

 3      A.   I think I did know, but I've forgotten.

 4      Q.   (BY MR. MAGEE)  It stands for Signature

 5  Verification Committee.  Would that sound right?

 6              MR. MIRZA:  Objection.

 7      A.   Yeah.

 8      Q.   (BY MR. MAGEE)  When you gave your response to

 9  No. 5, did you do anything to review whether Brazos

10  County even has a SVC?

11              MR. MIRZA:  Objection, form.

12      A.   No.

13      Q.   (BY MR. MAGEE)  Besides being told by someone

14  about the process used for reviewing signatures on

15  mail-in ballots, have you done anything else to

16  familiarize yourself with the process to review those

17  ballots?

18      A.   No.

19              MR. MAGEE:  I don't think I have any other

20  questions.  I will pass the witness at this time.

21                      EXAMINATION

22      Q.   (BY MR. TAWIL)  Dr. Richardson, my name is

23  Isaac Tawil.  I'm an attorney representing Perla Lara in

24  this lawsuit.  You don't have any complaints about Perla

25  Lara or the City of McAllen, do you?
```

1     A.    Who are you?

2     **Q.    I'm an attorney representing the City of**

3  **McAllen --**

4     A.    Okay.

5     **Q.    -- and Perla Lara, who is a defendant in this**

6  **lawsuit.  You don't have any complains about Perla Lara,**

7  **do you --**

8                MR. MIRZA:  Objection.

9     A.    No.

10    **Q.   (BY MR. TAWIL)  -- as it relates to your --**

11 **your ballot?**

12               MR. MIRZA:  Objection.

13               Go ahead.  You can answer.

14    A.    I don't think so.  No.

15               MR. TAWIL:  I have no further questions.

16 I'll pass the witness.

17               MS. MACKIN:  I don't have anything else.

18               MR. MIRZA:  Same here.

19               THE REPORTER:  Is there any stipulation

20 for the record about signature?

21               MR. MIRZA:  We'd like to read and sign.

22               THE REPORTER:  And we'll go off the record

23 at 11:32 a.m.

24               (Deposition concluded at 11:32 a.m.)

25

George Richardson - 5/13/2020

53

1                          CHANGES AND SIGNATURE

2    PAGE LINE  CHANGE                    REASON

3    _____

4    _____

5    _____

6    _____

7    _____

8    _____

9    _____

10   _____

11   _____

12   _____

13   _____

14   _____

15   _____

16   _____

17   _____

18   _____

19   _____

20   _____

21   _____

22   _____

23   _____

24   _____

25   _____

George Richardson - 5/13/2020

54

8      I declare under penalty of perjury that the

9  foregoing is true and correct.

11                          _____

12                          DR. GEORGE RICHARDSON

15      SUBSCRIBED AND SWORN TO BEFORE ME, the undersigned

16  authority, by the witness, DR. GEORGE RICHARDSON, on

17  this the _____ day of _____, _____.

19                          _____

20                          NOTARY PUBLIC IN AND FOR

21                          THE STATE OF _____

23  My Commission Expires: _____

George Richardson - 5/13/2020

55

1  STATE OF TEXAS
   COUNTY OF MONTGOMERY
2                    REPORTER'S CERTIFICATE

3      I, Dana Richardson, a Certified Shorthand Reporter

4  in and for the State of Texas, do certify that this

5  deposition transcript is a true record of the testimony

6  given by the witness named herein, after said witness

7  was duly sworn by me.  The witness was requested to

8  review the deposition.

9      I further certify that I am neither attorney or

10 counsel for, related to, nor employed by any parties to

11 the action in which this testimony is taken and,

12 further, that I am not a relative or employee of any

13 counsel employed by the parties hereto or financially

14 interested in the action.

15     I further certify that the amount of time used by
   each party at the deposition is as follows:
16
           Ms. Anne Marie Mackin - 01:03
17         Mr. Hani Mirza - 00:01
           Mr. Eric Magee - 00:11
18         Mr. Isaac J. Tawil - 00:01

19     SUBSCRIBED AND SWORN TO under my hand and seal of
   office on this the 26th day of May, 2020.
20

21     _____

22         Dana Richardson, RPR, TX CSR 5386
           Expiration:  01/31/22
23         Integrity Legal Support Solutions, CFR 528
           PO Box 245
24         Manchaca, Texas 78652
           (512) 320-8690
25         (512) 320-8692 (fax)

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| DR. GEORGE RICHARDSON, ROSALIE | § | |
| WEISFELD, AUSTIN JUSTICE COALITION, | § | |
| COALITION OF TEXANS WITH | § | |
| DISABILITIES, MOVE TEXAS CIVIC FUND, | § | |
| LEAGUE OF WOMEN VOTERS OF TEXAS, | § | |
| and AMERICAN GI FORUM OF TEXAS, | § | |
| INC., | § | |
|   *Plaintiffs*, | § | |
| | § | |
| | § | |
| v. | § | No. 5:19-cv-00963 |
| | § | |
| TEXAS SECRETARY OF STATE, TRUDY | § | |
| HANCOCK, IN HER OFFICIAL CAPACITY | § | |
| AS BRAZOS COUNTY ELECTIONS | § | |
| ADMINISTRATOR, AND PERLA LARA IN | § | |
| HER OFFICIAL CAPACITY AS CITY OF | § | |
| MCALLEN, TEXAS SECRETARY, | § | |
|   *Defendants*. | § | |

**DEFENDANT SECRETARY OF STATE'S FIRST AMENDED NOTICE OF ORAL
DEPOSITION OF DR. GEORGE RICHARDSON**

TO: Dr. George Richardson, by and through his attorneys of record, Hani
   Mirza, Zachary D. Dolling, Beth Stevens and Ryan Cox, Texas Civil
   Rights Project, 1405 Montopolis Drive, Austin, Texas 78741; and Joanna
   Suriani, Willkie Farr & Gallagher LLP, 1875 K Street, N.W.,
   Washington, DC 20006.

Defendant Texas Secretary of State hereby notices the deposition upon oral

examination of Dr. George Richardson beginning at **10:00 AM** on **May 13, 2020** and

continuing from day to day until complete. The deposition will be held virtually via

Zoom videoconference and will be transcribed and videotaped by a certified court

reporter designated by Defendant. Defendant reserves the right to use the deposition



Exhibit
Dr. George Richardson
**1**
5/13/20  DR

for any purpose permitted under the Federal Rules of Civil Procedure or Federal Rules of Evidence.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

RYAN L. BANGERT
Deputy First Assistant Attorney General

DARREN L. MCCARTY
Deputy Attorney General for Civil Litigation

THOMAS A. ALBRIGHT
Chief for General Litigation Division

*/s/ Anne Marie Mackin*
ANNE MARIE MACKIN
Texas Bar No. 24078898
Assistant Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2798 | FAX: (512) 320-0667
anna.mackin@oag.texas.gov

**ATTORNEYS FOR DEFENDANT
TEXAS SECRETARY OF STATE**

2

## CERTIFICATE OF SERVICE

I certify that that on May 6, 2020 this notice was served upon counsel listed below via email.

**Hani Mirza**
hani@texascivilrightsproject.org

**Zachary D. Dolling**
zachary@texascivilrightsproject.org

**Rebecca Harrison Stevens**
beth@texascivilrightsproject.org

**Ryan V. Cox**
ryan@texascivilrightsproject.org

**Samuel Kalar**
skalar@willkie.com

**Joanna Suriani**
jsuriani@willkie.com

**Eric Magee**
e.magee@allison-bass.com

**Isaac J. Tawil**
itawil@mcallen.net

**Austin Stevenson**
astevenson@mcallen.net

**C. Robert Heath**
bheath@bickerstaff.com

**Gunnar P. Seaquist**
gseaquist@bickerstaff.com

*/s/ Anne Marie Mackin*
ANNE MARIE MACKIN
Assistant Attorney General

3

# Ballot By Mail Request Form

Registration Address
George Adams Richardson
4070 Sweetwater Dr
College Station, TX 77845

**OFFICE USE ONLY**
Voter ID 1040885456
Precinct 2



I am over 65 years of age and requesting an **Annual Ballot By Mail** to receive a ballot for all elections in 2018, including any **Democratic Party** elections, local elections, and the November 2018 General Election. Mail my ballots to the address indicated above (unless noted otherwise below).

**SIGNATURE(FIRMA)**

*Must be signed. Do not print. If you cannot sign, make a mark and have witness fill out the box to the right.*

I certify that the information given in this application is true, and I understand that giving false information in this application is a crime.

If you are not able to receive ballots at the address where you are registered to vote, the ballot may be mailed to an alternate address. This address may only be one of the following. Check which address you are using:

☐ A hospital, nursing home, retirement center or other long-term care facility.
☐ The address of a person related to applicant. Relationship: _____
☐ Mailing Address listed on applicant's voter registration card.

Mailing Address
George Richardson
4070 Sweetwater Dr
College Station, TX 77845

Address where ballot
should be sent, if different:

_____
_____
_____

**FOR WITNESS (Only if Applicant Cannot Sign):**
If applicant is unable to make mark,
Witness shall check here: ☐
Witness Name _____
Witness Address _____
_____

Relationship to Applicant *(Check One)*
☐ spouse ☐ child ☐ reside at same address as applicant
☐ other: _____
Witness Signature _____
Date _____

If you are unable to sign your name (due to a physical disability or illiteracy), the application may be signed for you by a Witness. You must affix your mark to the application or, if you are unable to make a mark, then the Witness must sign and provide his or her printed name and residence address. Unless the Witness is a close relative of the voter (parent, grandparent, spouse, child or sibling), it is a Class B misdemeanor for a person to witness more than one application in a calendar year.

**Exhibit
Dr. George Richardson**

**2**

5/13/20 DR

exhibitsticker.com

BRAZOS - 000074

**Instructions:** This envelope is to seal and contain the voter before being returned. This carrier envelope must be marked by you or at your direction. This carrier envelope may not be used to return more than one voter's ballot. **For instructions on the methods and deadlines to deliver this carrier envelope, see the "Information About Returning your Carrier Envelope," included with the materials sent to you with your ballot. (Instrucciones al Votante:** Selle este sobre y después firme su nombre en el espacio proporcionado abajo. Este sobre debe de ser sellado y firmado por el votante antes de que el votante lo entregue. No firme este sobre a menos de que la boleta haya sido llenada por usted o bajo su dirección. Este sobre de envío no debe ser utilizado para entregar la boleta de más de un solo votante. **Para obtener instrucciones sobre los métodos y plazos para entregar este sobre de envío, vea la "Información Sobre Cómo Devolver su Sobre de Envío," incluido con los materiales enviados a usted con su boleta.**

I certify that the enclosed ballot expresses my wishes independent of any dictation or undue persuasion by any person. (Certifico que la boleta adjunta expresa mis deseos independientemente de ningún dictado o persuasión indebida por parte de cualquier persona.)

**SEAL ENVELOPE AND SIGN OVER SEALED FLAP**
**(SELLE EL SOBRE Y FIRME ENCIMA DE SOLAPA DEL SOBRE)**

X _George H. Richardson_
**SIGNATURE OR MARK OF VOTER (FIRMA O MARCA DEL VOTANTE)**

**Instructions to Assistant:** A voter may only be assisted with reading or marking the ballot if they have a physical disability that renders them unable to write or see, or have an inability to read the language in which the ballot is written. If you are assisting the voter, you must read the oath and complete the section below, before assisting the voter. (**Instrucciones al Asistente:** Un votante puede recibir ayuda para leer o llenar la boleta solamente si el votante tiene una discapacidad física la cual le impide escribir o ver, o si no tiene la habilidad de leer el lenguaje en el cual la boleta está escrita. Si usted le proporcionará ayuda a un votante, usted debe leer el juramento y llenar la siguiente sección abajo, antes de asistir al votante.)

**Oath of Person Assisting Voter:** I swear (or affirm) that I will not suggest, by word, sign, or gesture, how the voter should vote; I will confine my assistance to answering the voter's questions, to stating propositions on the ballot, and to naming candidates and, if listed, their political parties; I will prepare the voter's ballot as the voter directs; and I am not the voter's employer, an agent of the voter's employer, or an officer or agent of a labor union to which the voter belongs. (**Juramento de la Persona Asistiendo al Votante:** Juro (o afirmo) que no sugeriré con palabras, señales, o gestos, la manera en la cual el votante debe votar; limitare mi asistencia a responder las preguntas del votante, leer propuestas en la boleta, nombrar a los candidatos, y si es mencionado, su partido político; preparé la boleta del votante de acuerdo a sus instrucciones; y yo no soy el empleador del votante, un agente del empleador del votante, o un oficial o agente de un sindicato al cual el votante pertenece.)

**Instructions to Witness:** You are serving as a witness for _____(name of voter). You must complete the section below if you witness the mark of the voter, or if the voter cannot make a mark. If the voter cannot make a mark, check here ____. (**Instrucciones al Testigo:** Usted está fungiendo como testigo para _____ (nombre del votante). Usted debe llenar la siguiente sección abajo si usted fue testigo de que el votante firmo, o de que el votante no puede firmar. Si el votante no puede firmar, marque sus iniciales aquí ____.)

**Instructions to Person Depositing Carrier Envelope in Mail or to Common or Contract Carrier:** If you are assisting a voter by depositing the carrier envelope in the mail or with a common or contract carrier, you must complete the section below. (**Instrucciones a la Persona Quien Deposite el Sobre de Envío en el Correo o Entregue al Transportista Público o Comercial:** Si usted asistirá al votante a depositar el sobre de envío en el correo o con un transportista público o comercial, usted debe llenar la sección que aparece abajo.)

If you are an assistant or witness, check the appropriate box below and provide information: (Si usted es un asistente o testigo, marque la casilla correcta y proporcione su información):

☐ Assistant/ Asistente
☐ Witness/ Testigo

| Signature (Firma) | Printed Name (Nombre impreso) | Street Address (Domicilio residencial) |
|---|---|---|

☐ Assistant/ Asistente

| | Printed Name (Nombre impreso) | Street Address (Domicilio residencial) |
|---|---|---|

1040885456 (BS11)

SOS3373120    2    Nombre de Elección: _____

RICHARDSON, GEORGE ADAMS
4070 SWEETWATER DR
COLLEGE STATION, TX 77845

Date of Election (Fecha de Elección): ____/____/____

**Exhibit**
**Dr. George Richardson**
**3**
5/13/20 DR

BRAZOS - 000072

1764



15 OCT 2018 PM 9 1



**WARNING:** (1) Knowingly possessing another person's ballot or carrier envelope may be a crime unless you provide your signature, printed name and address. (2) A person commits an offense if the person compensates another person or receives compensation for depositing a carrier envelope in the mail as part of a scheme in which the person is compensated based on the number of carrier envelopes deposited.

**ADVERTENCIA:** (1) El acto de poseer conscientemente la boleta electoral o el sobre oficial de otra persona puede ser un delito a menos de que usted proporcione su firma, nombre impreso, y su dirección. (2) Una persona comete un delito si recompensa o recibe compensación a cambio de depositar el sobre oficial en el correo como parte de un plan en el cual la persona es recompensada en base al número de sobres oficiales depositados.

5-22 – Prescribed by Secretary of State – 12/15
Section 86.013, Texas Election Code

**CARRIER ENVELOPE FOR EARLY VOTING BALLOT**
*(SOBRE OFICIAL PARA ENVIO DE BOLETA DE VOTACIÓN TEMPRANA)*

**TO (A):**   Early Voting Clerk

300 E. Wm J Bryan Pkwy, Suite 100

Bryan, TX 77803



RECEIVED
OCT 17 2018
BY

77803-537125

BRAZOS 000073

AW5-12
Prescribed by Secretary of State
Sec. 87.0431, Texas Election Code
3/07

## NOTICE OF REJECTED BALLOT

This is to serve as notice that your ballot for the *General 2018* Election was rejected
by the early voting ballot board and was not counted.

Name of Voter *George Adams Richardson*

VUID Number *1040885456*

Reason for Rejection: (Check As Appropriate)

1) Certificate on carrier envelope was not properly executed.
   _____ You failed to sign your signature or make your mark.
   _____ The witness failed to indicate on the envelope that you could not make a mark.
   _____ The assistant or witness failed to print their name.
   _____ The assistant or witness failed to sign their name.
   _____ The residence address of the assistant or witness was not given.

✓ 2) It was determined that the signature on the application for ballot by mail and carrier envelope was not signed by the same person.

3) Application for ballot by mail did not state a legal ground for voting by mail.

4) Voter registration records indicated you did not have an effective registration for this election.

5) Address to which ballot was mailed was not outside the county. Voting early by mail due to expected absence from the county requires balloting materials be mailed to an address outside the county.

6) The residence address on the statement of residence is not located in the political subdivision conducting the election.

7) The mailing address on the application for ballot by mail did not match your voter registration address nor did the mailing address match any addresses provided on your statement of residence. Since you did not indicate on your application for a ballot by mail that you were having your ballot mailed to a hospital, retirement center, long term care facility, nursing home, jail, or a relative, your ballot was rejected.

8) The statement of residence was not included in the carrier envelope.

9) No identification was included with your mail ballot.

10) Other: _____

_____
Signature of Early Voting Ballot Board Judge

*11/3/2018*
Date

Exhibit
Dr. George Richardson
**4**
5/13/20 DR

BRAZOS - 000075

1766

5-22b
Prescribed by Secretary of State
Section 86.013, Texas Election
Code 01/18

173701



INFORMATION ABOUT RETURNING YOUR CARRIER ENVELOPE
(For voters voting by mail due to submitting an ABBM)

**Signing and Sealing the Carrier Envelope**

After placing your marked ballot (sealed inside the ballot envelope), you must seal your carrier envelope before signing your name **across the flap of the sealed envelope**, next to the large "X" on the carrier envelope. If you cannot sign your name, you must have a person witness your mark. If you cannot make a mark, the witness must indicate this in the witness section. **If a person (assistant) helps you in marking your ballot or deposits your carrier envelope in the mail or delivers it to a common or contract carrier, that person must sign your carrier envelope, including the written oath that is part of the certificate on your carrier envelope, and include their printed name and r e s i d e n c e address.** Failure of the assistant to provide this information is a crime unless the person is one of certain close relatives of the voter or physically living in the same dwelling, and may result in your ballot being rejected. For additional information on assistance procedures, please see the "Dear Voter" letter included with your balloting materials.

**How Do I deliver my Signed and sealed Carrier Envelope containing my marked ballot to the Early Voting Clerk?**

By Mail through the United States Postal Service;

By Common or Contract Carrier (e.g., a mail or courier service provided by a private business, not the U.S. Postal Service). For more information on this delivery method, see "Special Rules for Delivery by Common and Contract Carriers," below.); OR

In person by the voter on Election Day, at the early voting clerk's office. Note that a voter may only hand-deliver his or her **own** carrier envelope and not the carrier envelope for another individual, can only make such a hand delivery on Election Day, and must deliver the carrier envelope to the early voting clerk's office. The voter will be asked to present an acceptable form of photo ID listed in Section 63.0101(a) of the Texas Election Code. If the voter does not possess and cannot reasonably obtain an acceptable form of photo ID, the voter can execute a Reasonable Impediment Declaration and provide a supporting form of identification listed in Section 63.0101(b) of the Texas Election Code. Also, if the voter has a Voter Registration Certificate containing the Disability Exemption (E) notation, the voter may present it. The voter will also be asked to sign a signature roster.

**The carrier envelope may not be used to return more than one voter's ballot. However, more than one carrier envelope may be placed together in another envelope if the additional carrier envelope(s) belong to a person registered to vote at the same address. (§ 86.006(b), Texas Election Code). A carrier envelope may not be collected and stored at another location for subsequent delivery to the early voting clerk. It is a criminal offense for someone to knowingly possesses an official ballot or official carrier envelope provided under this code of another individual without completing the assistant portion of the carrier envelope, unless the person is one of certain close relatives of the voter, physically living in the same dwelling, an early voting or deputy early voting clerk, or a U.S. Postal service or other delivery service employee working in the normal course of their job. It is also a criminal offense to be compensated for depositing carrier envelopes containing ballots voted by other persons (§ 86.0052, Texas Election Code). IF YOUR BALLOT IS RETURNED BY AN UNAUTHORIZED METHOD, IT WILL NOT BE COUNTED.**

**What is the Deadline for me to return my Ballot by Mail?**

A ballot that is mailed or delivered by common or contract carrier but does not have a postmark or delivery receipt must be received by the early voting clerk **by 7:00 pm on Election Day**.

A ballot that is mailed or delivered by mail or common or contract carrier from within the United States and is postmarked or accompanied by a delivery receipt showing the voter submitted the ballot for delivery by 7:00 pm on Election Day must arrive by **5:00 pm on the next business day after Election Day**.

A ballot that is hand delivered must be received by the early voting clerk **by 7:00 pm on Election Day**.

A ballot that is mailed from overseas and is postmarked or accompanied by a delivery receipt showing the voter submitted the ballot for delivery by 7:00 pm on Election Day must arrive by **5:00 pm on the 5th day after Election Day** (or the next business day after the 5th day after Election Day, if the 5th day falls on a weekend or holiday).

**SPECIAL RULES for Delivery by COMMON AND CONTRACT CARRIERS (§§ 81.005 and 86.006, Texas Election Code)**

1.      If you use a common or contract carrier to return your ballot, the carrier must b e  a  business whose primary service is transporting or delivering items.
2.      If you return your carrier envelope by common or contract carrier, your carrier envelope must be accompanied by a delivery receipt when delivered to the early voting clerk. The receipt must indicate the name and address of the person who delivered the carrier envelope to the common or contract carrier, and the date, hour, and address where the carrier envelope was received by the common or contract carrier.
3.      Your ballot will not be counted if it is picked up by a common or contract carrier at an office of a political party or candidate in the election, office for a specific-purpose or general purpose political committee involved in the election, an entity that requested the election be held (unless the delivery is a forwarding to the early voting clerk), or a candidate's house unless the address of the candidate is your address.

If you have any questions about returning your carrier envelope, please contact the early voting clerk's office at
(_____)_____.

If you feel that your voting rights have been violated or abused, you may report these incidents to the Secretary of State toll-free at 1-800-252-VOTE(8683) or elections@sos.texas.gov.

BRAZOS - 000076

The Eagle • theeagle.com — Monday, November 19, 2018

# Opinions







## Which voters should be the GOP priority?

1768

RICHARDSON-00000002

AW8-3
"Prescribed by Secretary of State
Section 32.094, Texas Election
Code     3/07

**For primary only:** Check next to judge/clerk's name if they attended a training program as prescribed by the Secretary of State.

"I swear (or affirm) that I will not in any manner request or seek to persuade or induce any voter to vote for or against any candidate or measure to be voted on, and that I will faithfully perform my duty as an officer of the election and guard the purity of the election; I swear (or affirm) that I will not suggest by word, sign or gesture, how the voter should vote; I will confine my assistance to answering the voter's questions, to stating the propositions on the ballot, and to naming candidates and, if listed, their political parties; and I will prepare the voter's ballot as the voter directs."

## STATEMENT OF COMPENSATION And OATHS

| Pct. No. | Authority Conducting Election | Date | Type of Election |
|---|---|---|---|
| MBB | Brazos County | 11-3-18 | General |

| √ | Name of Election Official (Please Print Legibly) | Complete Address (Include City, Zip) | Social Security Number | Signature | Hours Worked From | To | Total Hours X | Rate of Pay = | Amount |
|---|---|---|---|---|---|---|---|---|---|
| | Shirley Dupriest | 400 Fairview | ■ | Sidepriest | 8 | 2 | | | $8.50 |
| | Fred E. Dupriest | CS  TX 7784 | ■ | Fred Dupt | 7:30 | 7:30 | | | |
| | Fred E Dupriest | 400 Fairview | ■ | | | | | | |
| | | CS  TX 7786 | ■ | Fred Dupt | 6 | 2 | | | |
| | Susan Stevenson | 3506 Wakefield | ■ | Susan Steven | 8 | 3 | | | |
| | | Bryan  TX 77808 | ■ | | | | | | |
| | Doris Milam | 1317 Wilshire Ct  CS  77845 | ■ | Doris Milam | 8:00 | 3:00 | | | |
| | | College Stat  TX 77845 | ■ | | | | | | |
| | Steve Milam | " | ■ | Steve Milam | 8:00 | 3:00 | | | |
| | | "  TX | ■ | | | | | | |

**Name of Person/Persons who Delivered Election Supplies (Do Not Include Above)**

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | TX | - | | | | | | |
| | | TX | - | | | | | | |

I state that the above is a true and correct statement of the names, addresses and hours served of all the election officials conducting the above named election and of the other expenses incurred in this election.

_R W Davis_
Presiding Judge

Amount of Compensation to be allocated to each person who delivered supplies ...............

Other Expenses (describe)..................................................................................................

Total

Exhibit
Dr. George Richardson
7
5/13/20  DR

BRAZOS - 000059

AW8-3
Prescribed by Secretary of State
Section 32.094, Texas Election
Code        3/07

**For primary only:** √ Check next to judge/clerk's name if they attended a training program as prescribed by the Secretary of State.

"I swear (or affirm) that I will not in any manner request or seek to persuade or induce any voter to vote for or against any candidate or measure to be voted on, and that I will faithfully perform my duty as an officer of the election and guard the purity of the election; I swear (or affirm) that I will not suggest by word, sign or gesture, how the voter should vote; I will confine my assistance to answering the voter's questions, to stating the propositions on the ballot, and to naming candidates and, if listed, their political parties; and I will prepare the voter's ballot as the voter directs."

## STATEMENT OF COMPENSATION And OATHS

| Pct. No. | Authority Conducting Election | Date | Type of Election |
|---|---|---|---|
| MBB | Brazos Co | 11/3/2018 | General 2018 |

| √ | Name of Election Official (Please Print Legibly) | Complete Address (Include City, Zip) | Social Security Number | Signature | Hours Worked From | To | Total Hours X | Rate of Pay = | Amount |
|---|---|---|---|---|---|---|---|---|---|
| | Cathy Cordova | 2106 Wilkes St Bryan 77803 TX | | C. Cordova | 8:00 | 11:08 | | | $8.50 |
| | Erin Hill | 4002 Tanglewood Dr Bryan TX 77802 | | Erin Hill | 8:00 | 12:00 | | | |
| | Sherry Garland | 3100 Rolling Glen Bryan TX 77807 | | Sherry Garland | 8:00 | 1:20 | | | |
| | Clyde Garland | 3100 Rolling Glen Bryan TX 77807 | | Clyde L Garland | 8:00 | 1:20 | | | |
| | RHYS M. BLAVIER | 1205 ASHBURN AVE Coll. Sta. TX 77840 | | Rhys Blavier | 8:00 | 1:20 | | | |

Name of Person/Persons who Delivered Election Supplies (Do Not Include Above)

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | TX | - | | | | | | |
| | | TX | - | | | | | | |

I state that the above is a true and correct statement of the names, addresses and hours served of all the election officials conducting the above named election and of the other expenses incurred in this election.

_Rhys Davis_
Presiding Judge

Amount of Compensation to be allocated to each person who delivered supplies .................

Other Expenses (describe)...............................................................................................

Total

BRAZOS - 000060

AW8-3
Prescribed by Secretary of State
Section 32.094, Texas Election
Code          3/07

**For primary only:** Check next to judge/clerk's name if they attended a training program as prescribed by the Secretary of State.

"I swear (or affirm) that I will not in any manner request or seek to persuade or induce any voter to vote for or against any candidate or measure to be voted on, and that I will faithfully perform my duty as an officer of the election and guard the purity of the election; I swear (or affirm) that I will not suggest by word, sign or gesture, how the voter should vote; I will confine my assistance to answering the voter's questions, to stating the propositions on the ballot, and to naming candidates and, if listed, their political parties; and I will prepare the voter's ballot as the voter directs."

## STATEMENT OF COMPENSATION And OATHS

| Pct. No. | Authority Conducting Election | Date | Type of Election |
|---|---|---|---|
| MBB | Brazos City | 11/3/2018 | General 2018 |

| √ | Name of Election Official (Please Print Legibly) | Complete Address (Include City, Zip) | Social Security Number | Signature | Hours Worked From | To | Total Hours X | Rate of Pay = | Amount |
|---|---|---|---|---|---|---|---|---|---|
| | TC Langford | 4313 Milam Bryan Tx TX 77802 | ▉ | ML | 8am | 1:20 | | $8.50 | |
| | Oleta E. Shaw | 2805 Brothers Blvd College Station TX 77845 | ▉ | Ol Shaw | 8AM | 1:20 | | | |
| | Susan Spears | 4216 Maywood Bryan TX 77801 | | Susan Spears | 8 AM | 1:30 | | | |
| | Mary Stasiowski | 2610 Sandlewood Ct College Sta. TX 77845 | - - | Mary Stasiuwke | 8:AM | 3:00pm | | | |
| | Marla Calvin | 1833 Fountain Ave Bryan TX 77801 | - - | Marla Calvin | 8:00 | 1:30 | | | |
| Name of Person/Persons who Delivered Election Supplies (Do Not Include Above) | | | | | | | | | |
| | | | - - | | | | | | |
| | | TX | | | | | | | |
| | | | - - | | | | | | |
| | | TX | | | | | | | |

I state that the above is a true and correct statement of the names, addresses and hours served of all the election officials conducting the above named election and of the other expenses incurred in this election.

Amount of Compensation to be allocated to each person who delivered supplies .................

Other Expenses (describe).........................................................................

Total

_Ra Davis_
Presiding Judge

BRAZOS - 000061

AW8-3
Prescribed by Secretary of State
Section 32.094, Texas Election
Code    3/07

**For primary only:** ✓ Check next to judge/clerk's name if they attended a training program as prescribed by the Secretary of State.

"I swear (or affirm) that I will not in any manner request or seek to persuade or induce any voter to vote for or against any candidate or measure to be voted on, and that I will faithfully perform my duty as an officer of the election and guard the purity of the election; I swear (or affirm) that I will not suggest by word, sign or gesture, how the voter should vote; I will confine my assistance to answering the voter's questions, to stating the propositions on the ballot, and to naming candidates and, if listed, their political parties; and I will prepare the voter's ballot as the voter directs."

## STATEMENT OF COMPENSATION And OATHS

| Pct. No. | Authority Conducting Election | Date | Type of Election |
|---|---|---|---|
| MB13 | Brazos Canty | 11/8/2018 | General 2018 |

| √ | Name of Election Official (Please Print Legibly) | Complete Address (Include City, Zip) | Social Security Number | Signature | Hours Worked From | To | Total Hours | X Rate of Pay | = Amount |
|---|---|---|---|---|---|---|---|---|---|
| | Richard Seim | 17647 Indian Lakesr C.S. TX 77845 CS TX 77845 | ▮ | Richard Seim | 8:00 | 2:30 | 6.5 | $8.00 | |
| | BARBARA Seim | 17647 Indian Lakes D CS TX 77845 | ▮ | Barbara Seim | 8 AM | 2:30 | 65 | | |
| | Cameron Gallucci | 778 Bryan TX 77780 | ▮ | CG | 8 A | 3 P | 7 | | |
| | Audrey PATTON | 306 Columbia CT College Station TX 77840 | | Audrey Patton | 8 A | 3 P | | | |
| | Diana Davis | 2321 Carter Creek Bryan TX 77802 | | Diana Davis | 8:00 | 3:30 | 8.5 | | |

Name of Person/Persons who Delivered Election Supplies (Do Not Include Above)

| √ | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | Bob Davis | 2321 Carter Creek Pkwy Bryan TX 77802 | ▮ | RW Davis | 7:45 | 3:30 | 7.75 | | |
| | | | | | | | | | |
| | | TX | | | | | | | |

I state that the above is a true and correct statement of the names, addresses and hours served of all the election officials conducting the above named election and of the other expenses incurred in this election.

Amount of Compensation to be allocated to each person who delivered supplies ...............

Other Expenses (describe)...........................................................................

Total

_RW Davis_
Presiding Judge

BRAZOS - 000062

AW8-3
Prescribed by Secretary of State
Section 32.094, Texas Election
Code        3/07

**For primary only:** "✓" Check next to judge/clerk's name if they attended a training program as prescribed by the Secretary of State.

"I swear (or affirm) that I will not in any manner request or seek to persuade or induce any voter to vote for or against any candidate or measure to be voted on, and that I will faithfully perform my duty as an officer of the election and guard the purity of the election; I swear (or affirm) that I will not suggest by word, sign or gesture, how the voter should vote; I will confine my assistance to answering the voter's questions, to stating the propositions on the ballot, and to naming candidates and, if listed, their political parties; and I will prepare the voter's ballot as the voter directs."

## STATEMENT OF COMPENSATION And OATHS

| Pct. No. | Authority Conducting Election | Date | Type of Election |
|---|---|---|---|
| MBB Mail Ballot B | Brazos County | 11-3-18 | General |

| √ | Name of Election Official (Please Print Legibly) | Complete Address (Include City, Zip) | Social Security Number | Signature | Hours Worked From | To | Total Hours | X Rate of Pay | = Amount |
|---|---|---|---|---|---|---|---|---|---|
| | Carol Nichols | 6250 Zweifel Road 77808 Bryan TX | ▓ | Carol A Nichols | 8:00 | 3:15 | | $6.5? | |
| | BARRY D. CLAR | 1107 W. 26th St BRYAN TX 77803 | ▓ | | 8:00 | 3:15 | | | |
| | Patric Morsm | 711 University Dr APT 717 College Station TX | ▓ | Patrik Morgan | 8:00 | 3:15 | | | |
| | Tim Byrd | 549 Marino Rd #17 TX | ▓ | Tim Byrd | 8:00 | 3:15 | | | |
| ✓ | Cari Bullington | 3238 Innsbruck CS TX | ▓ | Cari Bullington | 8:30 | 3:15 | | | |

| Name of Person/Persons who Delivered Election Supplies (Do Not Include Above) | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | TX | - - | | | | | | |
| | | TX | | | | | | | |

I state that the above is a true and correct statement of the names, addresses and hours served of all the election officials conducting the above named election and of the other expenses incurred in this election.

_R W Davis_
Presiding Judge

Amount of Compensation to be allocated to each person who delivered supplies .................

Other Expenses (describe)...........................................................................

Total

BRAZOS - 000063

1773

AW8-3
*Prescribed by Secretary of State
Section 32.094, Texas Election
Code        3/07

**For primary only:** ** Check next to judge/clerk's name if they attended a training program as prescribed by the Secretary of State.**

"I swear (or affirm) that I will not in any manner request or seek to persuade or induce any voter to vote for or against any candidate or measure to be voted on, and that I will faithfully perform my duty as an officer of the election and guard the purity of the election; I swear (or affirm) that I will not suggest by word, sign or gesture, how the voter should vote; I will confine my assistance to answering the voter's questions, to stating the propositions on the ballot, and to naming candidates and, if listed, their political parties; and I will prepare the voter's ballot as the voter directs."

## STATEMENT OF COMPENSATION And OATHS

| | Pct. No. | Authority Conducting Election | Date | Type of Election |
|---|---|---|---|---|
| | Mail Ballot Board. | Brazos County | 11·6·18 | General. |

| √ | Name of Election Official (Please Print Legibly) | Complete Address (Include City, Zip) | Social Security Number | Signature | Hours Worked From | To | Total Hours X | Rate of Pay = | Amount |
|---|---|---|---|---|---|---|---|---|---|
| | Audrey L Patton | 306 Columbia Ct College Station TX 77840 | ▮ | Audrey Patton | 10 A | 12:30 | $ 8⁵⁰ | | |
| | William G Stacy | 2703 Colony Village Bryan TX 77808 | ▮ | Stacy | 10 Am | 12:30 | | | |
| | TC Langford | 4313 Milam Bryan TX 77801 | ▮ | DL | 10 | 12:30 | | | |
| | | TX | - - | | | | | | |
| | | TX | - - | | | | | | |

~~Name of Person/Persons who Delivered Election Supplies (Do Not Include Above)~~

| | Bob Davis | 2321 Carter Creek TX | ▮ | | 10 Am | 1 pm | $ 8⁵⁰ | | |
|---|---|---|---|---|---|---|---|---|---|
| | | TX | | | | | | | |

I state that the above is a true and correct statement of the names, addresses and hours served of all the election officials conducting the above named election and of the other expenses incurred in this election.

_RW Davis_
Presiding Judge

| Amount of Compensation to be allocated to each person who delivered supplies ............... | |
|---|---|
| Other Expenses (describe)................................................................................. | |
| Total | |

BRAZOS - 000064

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| DR. GEORGE RICHARDSON, ROSALIE WEISFELD, AUSTIN JUSTICE COALITION, COALITION OF TEXANS WITH DISABILITIES, MOVE TEXAS CIVIC FUND, LEAGUE OF WOMEN VOTERS OF TEXAS, and AMERICAN GI FORUM OF TEXAS, INC., | § § § § § § § § | |
| *Plaintiffs* | § § § | |
| v. | § § | Civil Case No. 5:19-cv-00963 |
| TEXAS SECRETARY OF STATE, TRUDY HANCOCK, in her official capacity as BRAZOS COUNTY ELECTIONS ADMINISTRATOR, and PERLA LARA in her official capacity as CITY OF MCALLEN, TEXAS SECRETARY, | § § § § § § § | |
| *Defendants.* | § § | |

**PLAINTIFF DR. GEORGE RICHARDSON'S OBJECTIONS AND RESPONSES TO DEFENDANT SECRETARY OF STATE'S FIRST REQUESTS FOR ADMISSION, INTERROGATORIES, AND REQUESTS FOR PRODUCTION**

TO:   Defendant Texas Secretary of State, by and through her attorneys of record Ken Paxton, Jeffrey C. Mateer, Darren L. McCarty, Thomas A. Albright, and Anne Marie Mackin, via e-mail at anna.mackin@oag.texas.gov.

Pursuant to Federal Rules of Civil Procedure 33, 34, and 36, Plaintiff Dr. George

Richardson hereby serves the following Objections and Responses to Defendants' First Requests

for Admissions, Requests for Production, and Interrogatories.

Dated: April 16, 2020

Respectfully Submitted,

/s/      *Hani Mirza*

**TEXAS CIVIL RIGHTS PROJECT**
Mimi M.D. Marziani

1

**Exhibit**
**Dr. George Richardson**
**8**
5/13/20  DR

Texas Bar No. 24091906
mimi@texascivilrightsproject.org
Rebecca Harrison Stevens
Texas Bar No. 24065381
beth@texascivilrightsproject.org
Hani Mirza
Texas Bar No. 24083512
hani@texascivilrightsproject.org
Ryan V. Cox
Texas Bar No. 24074087
ryan@texascivilrightsproject.org
Zachary D. Dolling
Texas Bar No. 24105809
zachary@texascivilrightsproject.org

1405 Montopolis Drive
Austin, Texas 78741
512-474-5073 (Telephone)
512-474-0726 (Facsimile)

**WILLKIE FARR & GALLAGHER LLP**

Richard Mancino (NY Bar No. 1852797)
Samuel Kalar (NY Bar No. 5360995)
JoAnna Suriani (NY Bar No. 5706395)

787 Seventh Avenue
New York, New York 10019
Telephone: (212) 728-8000
Facsimile: (212) 728-8111
Email: rmancino@willkie.com
        skalar@willkie.com
        jsuriani@willkie.com

-AND-

Jennifer J. Hardy (TX Bar No. 24096068)
Denis A. Fallon (TX Bar No. 24059731)
Garrett Johnston (TX Bar No. 24087812)
Audra White (TX Bar No. 24098608)

600 Travis Street, Suite 2100
Houston, Texas 77002
Telephone: (713) 510-1700
Facsimile: (713) 510-1799
Email: jhardy2@willkie.com

2

afallon@willkie.com
gjohnston@willkie.com
awhite@willkie.com

***COUNSEL FOR PLAINTIFFS***

### CERTIFICATE OF SERVICE

I hereby certify that on the 16th day of April, 2020, a true and correct copy of the foregoing *Plaintiff Dr. George Richardson's Objections and Responses to Defendant Secretary of State's First Requests for Admission, Request for Production, and Interrogatories* was served upon counsel of record via email.

/s/ Hani Mirza_____

### RESERVATION OF RIGHTS

Dr. Richardson has responded to these requests for admission, requests for production, and interrogatories based on the information currently available to him. Discovery, however, is not yet complete. Additional discovery and investigation may lead to additions to, changes in, or modification of these responses. Dr. Richardson therefore reserves his right to supplement, amend, revise, correct, modify, or clarify these responses as additional information becomes available.

Dr. Richardson makes his objections and responses in accordance with his interpretation and understanding of *Defendant Secretary of State's First Requests for Admission, Request for Production, and Interrogatories* ("Requests") and in accordance with his current knowledge, understanding, and belief as to the facts and information available to him at the time of serving these responses. If Defendant subsequently provides an interpretation of any of its Requests that differs from Dr. Richardson's understanding of the same, Dr. Richardson reserves his right to complete the discovery of facts in this case and rely at trial or in any other proceeding on documents and information in addition to the information provided herein, regardless of whether

3

such information is newly discovered or newly in existence. He also reserves the right to amend, revise, correct, modify, or clarify his responses to properly respond to any interpretation Defendant may give these Requests.

Dr. Richardson reserves his right to object on any grounds, at any time, to the admission or use of any response on any ground. Dr. Richardson is also willing to meet and confer about any of his objections or responses.

## GENERAL OBJECTIONS

1.      Dr. Richardson objects to these Requests, including the definitions and instructions, to the extent that they seek information or documents: (i) protected by attorney client privilege, the work product doctrine, or any other applicable privilege or immunity; (ii) not in Dr. Richardson's possession, custody, or control; and (iii) that are publicly available or already within Defendants' possession.

2.      Dr. Richardson objects to these Requests to the extent they are duplicative of a request that Defendants have propounded to another Plaintiff in this Lawsuit. To the extent that Plaintiffs agree to produce a document that is responsive to multiple Requests duplicated across multiple Plaintiffs, Plaintiffs will only produce such documents once.

3.      Dr. Richardson objects to the definitions of "Coalition of Texans with Disabilities," "CTD," "Austin Justice Coalition," "AJC," "MOVE Texas Civic Fund," "MOVE Texas," "MOVE," "League of Women Voters of Texas," "LWVTX," "LWV," "Individual Plaintiffs," and "Organizational Plaintiffs," (together, "Plaintiffs Definitions") as overly broad and unduly burdensome to the extent that they define each party as including "anyone acting or purporting to act on their behalf with respect to any matter inquired about herein, including without limitation representatives, employees, or agents." For the purposes of these responses, each Plaintiff will

4

construe the Plaintiffs Definitions in accordance with the definition of "Plaintiffs" as found in Plaintiffs' First Set of Discovery Requests served on February 5, 2020.

4.      Dr. Richardson objects to the definitions of "EVBB" and "SVC" as vague and ambiguous. For the purposes of these responses, Dr. Richardson will construe the terms "EVBB" and "SVC" in accordance with the definitions of "EVBB" and "SVC" found in Plaintiffs' First Set of Discovery Requests served on February 5, 2020.

5.      These General Objections are incorporated into each of the specific responses and objections set forth below. No specific response or objection herein shall constitute a waiver, in whole or in part, of any of the foregoing General Objections. Dr. Richardson reserves the right at any time to revise, correct, supplement, or clarify the objections or responses set forth herein and any production made pursuant thereto.

5

## DR. RICHARDSON'S OBJECTIONS AND RESPONSES TO REQUESTS FOR ADMISSION

1.      Admit that SOS did not, "during the 2018 General Election . . . reject[] the mail in ballot of Plaintiff Dr. George Richardson," as stated in Paragraph 3 of your Complaint.

**RESPONSE:** Dr. Richardson objects to this request for admission on the ground that it calls for a legal conclusion. Dr. Richardson has no particular knowledge of this legal issue. Subject to and without waiving the foregoing, Dr. Richardson has no particular knowledge of the actions that Defendant SOS takes. Defendant SOS is the appropriate party with information responsive to this request.

2.      Admit that if a county election officer determines that a ballot was incorrectly rejected by the EVBB before the time set for convening the canvassing authority, the county election officer may petition a district court for injunctive or other relief as the court determines appropriate.

**RESPONSE**: Dr. Richardson objects to this request for admission on the ground that it calls for a legal conclusion. Dr. Richardson has no particular knowledge of this legal issue. The provisions of the Texas Election Code speak for themselves.

3.      Admit that SOS does not select the members of any EVBB.

**RESPONSE**: Dr. Richardson can neither admit nor deny because he has no particular knowledge of the actions Defendant SOS takes. Defendant SOS is the appropriate party with information responsive to this request.

4.      Admit that SOS did not select the members of any EVBB responsible for reviewing your mail-in ballot in the 2018 General Election.

**RESPONSE:** Dr. Richardson objects to this request for admission on the ground that it calls for a legal conclusion. Dr. Richardson has no particular knowledge of this legal issue. Subject to and without waiving the foregoing, Dr. Richardson has no particular knowledge of the actions that Defendant SOS takes. Defendant SOS is the appropriate party with information responsive to this request.

5.      Admit that SOS does not select the members of any SVC.

**RESPONSE**: Dr. Richardson can neither admit nor deny because he has no particular knowledge of the actions Defendant SOS takes. Defendant SOS is the appropriate party with information responsive to this request.

6.      Admit that SOS did not select the members of any SVC responsible for reviewing your mail-in ballot in the 2018 General Election.

**RESPONSE:** Dr. Richardson objects to this request for admission on the ground that it

calls for a legal conclusion. Dr. Richardson has no particular knowledge of this legal issue. Subject to and without waiving the foregoing, Dr. Richardson can neither admit nor deny because he has no particular knowledge of the actions that Defendant SOS takes. Defendant SOS is the appropriate party with information responsive to this request.

7.    Admit that local election authorities, and not SOS, are responsible for receiving completed mail-in ballots.

**RESPONSE**: Dr. Richardson objects to this request for admission on the ground that it calls for a legal conclusion. Dr. Richardson has no particular knowledge of this legal issue. The provisions of the Texas Election Code speak for themselves.

8.    Admit that local election authorities, and not SOS, were responsible for receiving your completed mail-in ballot in the 2018 General Election.

**RESPONSE:** Dr. Richardson objects to this request for admission on the ground that it calls for a legal conclusion. Dr. Richardson has no particular knowledge of this legal issue. Subject to and without waiving the foregoing, Dr. Richardson can neither admit nor deny because he has no particular knowledge of the actions that Defendant SOS and local election authorities take. Defendants SOS and/or local elections authorities are the appropriate parties with information responsive to this request.

9.    Admit that local election authorities, and not SOS, are responsible for delivering completed mail-in ballots to the appropriate EVBB or SVC.

**RESPONSE**: Dr. Richardson objects to this request for admission on the ground that it calls for a legal conclusion. Dr. Richardson has no particular knowledge of this legal issue. The provisions of the Texas Election Code speak for themselves.

10.    Admit that local election authorities, and not SOS, were responsible for delivering your completed mail-in ballot in the 2018 General Election to the appropriate EVBB or SVC.

**RESPONSE:** Dr. Richardson objects to this request for admission on the ground that it calls for a legal conclusion. Dr. Richardson has no particular knowledge of this legal issue. Subject to and without waiving the foregoing, Dr. Richardson can neither admit nor deny because he has no particular knowledge of the actions that Defendant SOS and local election authorities take. Defendants SOS and/or local elections authorities are the appropriate parties with information responsive to this request.

11.    Admit that SOS lacks authority to reject any mail-in ballot for signature mismatch.

**RESPONSE**: Dr. Richardson objects to this request for admission on the ground that it calls for a legal conclusion. Dr. Richardson has no particular knowledge of this legal issue. The provisions of the Texas Election Code speak for themselves.

12.    Admit that SOS lacked authority to reject your mail-in ballot in the 2018 General

Election for signature mismatch.

**RESPONSE**: Dr. Richardson objects to this request for admission on the ground that it calls for a legal conclusion. Dr. Richardson has no particular knowledge of this legal issue. The provisions of the Texas Election Code speak for themselves.

13. Admit that mail-in ballot applications and carrier envelopes need not be signed by the voter if they are signed by a witness.

**RESPONSE**: Dr. Richardson objects to this request for admission on the grounds that it calls for a legal conclusion and is vague. It is vague because there are specific requirements that must be met for a voter to be eligible to use a witness, and specific requirements that must be met for a voter to not need to sign their mail-in ballot application and carrier envelope. The provisions of the Texas Election Code speak for themselves.

14. Admit that mail-in ballots signed by a witness cannot be rejected for signature mismatch.

**RESPONSE**: Dr. Richardson objects to this request for admission on the grounds that it calls for a legal conclusion and is vague. It is vague because there are specific requirements that must be met for a voter to be eligible to use a witness, and specific requirements that must be met for a voter to not need to sign their mail-in ballot application and carrier envelope. The provisions of the Texas Election Code speak for themselves.

15. Admit that you were eligible to vote in person in the 2018 General Election.

**RESPONSE:** Dr. Richardson objects to this request for admission on the ground that it calls for a legal conclusion. Dr. Richardson has no particular knowledge of this legal issue. Subject to and without waiving the foregoing, admit only to the extent that Dr. Richardson submitted a mail-in ballot and that he believes he was eligible to vote in person.

16. Admit that voting by mail is a different process from in-person voting.

**RESPONSE**: Dr. Richardson objects to this request for admission on the ground that it calls for a legal conclusion and is vague. Subject to and without waiving the foregoing, admit only to the extent that, as a practical matter, voting by mail involves some different procedures than voting in-person.

17. Admit that Texas has an interest in ensuring that only eligible voters cast ballots.

**RESPONSE**: Dr. Richardson objects to this request for admission on the ground that it calls for a legal conclusion and is vague. Subject to and without waiving the foregoing, Dr. Richardson can neither admit nor deny because he has no particular knowledge of the current interests of the State of Texas. Texas, including Defendant SOS, is the appropriate party with information responsive to this request.

## DR. RICHARDSON'S OBJECTIONS AND RESPONSES TO REQUESTS FOR PRODUCTION

1.     All documents and communications supporting your contention that "Texas unlawfully rejects the duly signed mail-in ballots of thousands of eligible voters every major election," as alleged in Paragraph 1 of your Complaint.

**RESPONSE**: Please see attached BATES GENERAL-00000001-2030.

2.     All documents and communications supporting your contention that "Texas counties rejected at least 1,873 mail-in ballots during the 2018 General Election and at least 1,567 mail-in ballots during the 2016 General Election solely on the basis of mismatching signatures," as alleged in Paragraph 1 of your Complaint.

**RESPONSE**: Please see attached BATES GENERAL-00000001-2030.

3.     All documents and communications supporting your contention that you are "a physician who has signed hundreds of prescriptions every year for 41 years and ha[ve] never had [your] signature questioned by a pharmacist," as alleged in Paragraph 10 of your Complaint.

**RESPONSE:** Dr. Richardson objects to this request for production as unduly burdensome to the extent that he has worked in numerous hospitals and other healthcare facilities during his career and it is impractical for him to produce documentation of his decades of successfully filled prescriptions. Subject to and without waiving the foregoing, please see attached BATES RICHARDSON-00000001, RICHARDSON-00000003-4.

4.     All documents and communications supporting your contention that "[t]he groups that are eligible to vote by mail are also the same groups, in many cases, that are most likely to have signature variations that could cause an improper rejection—especially the elderly, disabled, and persons who speak English as a second language," as alleged in Paragraph 46 of your Complaint.

**RESPONSE**: Dr. Richardson objects to this request for production on the ground that it calls for expert witness testimony. Plaintiffs' expert witness report was served on Defendants on February 3, 2020. Subject to and without waiving the foregoing, Dr. Richardson has no responsive documents.

5.     All documents and communications supporting your contention that "growing old, illness, injury, symptoms from taking certain medicine, change in eyesight, and consuming alcohol and/or drugs; mechanical factors such as pen type, ink, signing surface, signing position, and paper quality; and psychological factors such as distress, anger, fear, depression, happiness, [or] nervousness" can affect an individual's handwriting to the extent that their ballot would be erroneously rejected for signature mismatch, as referenced in Paragraph 48 of your Complaint.

**RESPONSE**: Dr. Richardson objects to this request for production on the ground that it calls for expert witness testimony. Plaintiffs' expert witness report was served on Defendants on February 3, 2020. Subject to and without waiving the foregoing, Dr. Richardson has no responsive

9

documents.

6.    All documents and communications supporting your contention that "a person's handwriting naturally changes over time" to the extent that their ballot would be erroneously rejected for signature mismatch, as referenced in Paragraph 48 of your Complaint.

**RESPONSE**: Dr. Richardson objects to this request for production on the ground that it calls for expert witness testimony. Plaintiffs' expert witness report was served on Defendants on February 3, 2020. Subject to and without waiving the foregoing, Dr. Richardson has no responsive documents.

7.    All documents and communications supporting your contention that "[v]ariances between signatures" significant enough to result in a ballot being erroneously rejected for signature mismatch "are more prevalent in people who are elderly, disabled, under extreme stress, or who speak English as a second language," as referenced in Paragraph 48 of your Complaint.

**RESPONSE**: Dr. Richardson objects to this request for production on the ground that it calls for expert witness testimony. Plaintiffs' expert witness report was served on Defendants on February 3, 2020. Subject to and without waiving the foregoing, Dr. Richardson has no responsive documents.

8.    All documents and communications supporting your contention that "the cost of remedial procedures" you seek in this Lawsuit "would likely be low," as alleged at Dkt. 32, p. 40.

**RESPONSE**: Dr. Richardson objects to this request for production on the ground that the contention requires legal analysis. Subject to and without waiving the foregoing, please see BATES RICHARDSON-00000002, RICHARDSON-00000005-8, and RICHARDSON-00000011.

9.    All documents and communications supporting your contention that Texas's signature matching procedure is "error-prone," as alleged in Paragraph 70 of your Complaint.

**RESPONSE**: Dr. Richardson objects to this request for production on the ground that it calls for expert witness testimony. Plaintiffs' expert witness report was served on Defendants on February 3, 2020. Subject to and without waiving the foregoing, please see BATES RICHARDSON-00000001-12.

10.    Documents sufficient to show each "erroneous deprivation of the right to vote" you contend was caused by "an error-prone and flawed signature comparison," as alleged in Paragraph 55 of your Complaint.

**RESPONSE**: Dr. Richardson objects to this request for production on the ground that it calls for expert witness testimony and the contention requires legal analysis. Plaintiffs' expert witness report was served on Defendants on February 3, 2020. Subject to and without waiving the foregoing, please see BATES RICHARDSON-00000001-12.

10

11.    All documents and communications supporting your contention that "each county (and even each committee if multiple SVC panels are created) necessarily develops its own idiosyncratic, arbitrary, and ad hoc procedure to determine that a ballot should be rejected," and that "[t]hese standards will necessarily vary from county to county, panel to panel, and even from meeting to meeting or ballot to ballot within the same committee panel," as alleged in Paragraph 41 of your Complaint.

**RESPONSE**: Dr. Richardson objects to this request for production on the ground that it calls for expert witness testimony. Plaintiffs' expert witness report was served on Defendants on February 3, 2020. Subject to and without waiving the foregoing, Dr. Richardson has no responsive documents.

12.    To the extent not already produced in response to the requests above, all documents you may rely upon to support your claims in this Lawsuit.

**RESPONSE**: Dr. Richardson objects to this request as broad and vague and because it demands that he marshal all of his evidence that may be presented at trial, regardless of whether that evidence is within his care, custody, or control or whether Defendants have superior access of right to such documents. Dr. Richardson will produce all documents he relies upon to support his claims in this lawsuit according to the Amended Scheduling Order, the Federal Rules of Civil Procedure, and the Federal Rules of Evidence.

11

## DR. RICHARDSON'S OBJECTIONS AND RESPONSES TO INTERROGATORIES

1.    Describe any relief that Plaintiffs contend would "provide voters meaningful notice prior to the rejection of a mail-in ballot and [] offer voters the ability to cure a mail-in ballot questioned for an alleged signature mismatch," as referenced in Paragraph 7 of your Complaint.

**RESPONSE**: Dr. Richardson objects to this interrogatory on the ground that it calls for a legal conclusion. Subject to and without waiving the foregoing, there are multiple forms of prospective relief that would provide voters meaningful notice prior to the rejection of a mail-in ballot and offer voters the ability to cure a mail-in ballot questioned for an alleged signature mismatch. Plaintiffs' counsel discuss such forms to relief in their pleadings as well as in communications with opposing counsel. To be meaningful, notice prior to final rejection must clearly explain the reason why the voter's ballot was questioned, be received by the voter through a method of delivery the voter has quick and easy access to, and be received with enough time for the voter to attempt to effectively cure the questioned ballot. A cure process must provide voters simple methods and ample time to correct a ballot wrongly questioned for signature mismatch.

2.    If you contend that the Secretary has "rule making authority" to "establish any standards or guidance that must be used for actually determining if a signature is that of the voter," as referenced in Paragraph 41 of your Complaint, please state the basis for that contention.

**RESPONSE**: Dr. Richardson objects to this interrogatory on the ground that it calls for a legal conclusion.

3.    State the basis for your contention that "each county (and even each committee if multiple SVC panels are created) necessarily develops its own idiosyncratic, arbitrary, and ad hoc procedure to determine that a ballot should be rejected," and that "[t]hese standards will necessarily vary from county to county, panel to panel, and even from meeting to meeting or ballot to ballot within the same committee panel," as alleged in Paragraph 41 of your Complaint.

**RESPONSE:** Dr. Richardson objects to this interrogatory on the ground that it calls for expert witness testimony. Plaintiffs' expert witness report was served on Defendants on February 3, 2020. Subject to and without waiving the foregoing, as alleged in paragraph 2 of the Complaint, "current rules authorize untrained local election officials to arbitrarily and subjectively reject mail-in ballots if officials believe, based on their own layman analysis, that the signature on a ballot is not in fact the voter's signature." Please also see responses to Open Records Requests from local election officials produced for Requests for Production above.

4.    State the basis for your contention that the "signature verification procedure is not and cannot be performed anonymously," as alleged in Paragraph 42 of your Complaint.

**RESPONSE**: Dr. Richardson objects to this interrogatory on the ground that Defendants are better equipped to answer it. Subject to and without waiving the foregoing, Dr. Richardson's understanding is that signature verification requires reviewing the written name of the voter. As a result, it essentially cannot be performed anonymously.

12

5.    If you contend that SOS is responsible for delivering, receiving, or accepting completed mail-in ballots, please state the basis for that contention.

**RESPONSE**: Dr. Richardson objects to this interrogatory on the ground that it calls for a legal conclusion. The provisions of the Texas Election Code speak for themselves.

6.    If you contend that SOS has the authority to seek judicial relief in connection with a local election official's decision to reject a mail-in ballot, please state the basis for that contention.

**RESPONSE**: Dr. Richardson objects to this interrogatory on the ground that it calls for a legal conclusion. The provisions of the Texas Election Code speak for themselves.

7.    If you contend that you had a constitutionally protected right to pre-rejection notice and opportunity to cure before your mail-in ballot in the 2018 General Election was allegedly rejected for signature mismatch, please state the basis for that contention.

**RESPONSE**: Dr. Richardson objects to this interrogatory on the ground that it calls for a legal conclusion.

8.    If you contend that you have a protected liberty interest in casting a ballot by mail, please state the basis for that contention.

**RESPONSE**: Dr. Richardson objects to this interrogatory on the ground that it calls for a legal conclusion.

9.    If you contend that you have a protected property interest in casting a ballot by mail, please state the basis for that contention.

**RESPONSE**: Dr. Richardson objects to this interrogatory on the ground that it calls for a legal conclusion.

10.    If you contend that SOS has the authority to reject any mail-in ballot for signature mismatch, please state the basis for that contention.

**RESPONSE**: Dr. Richardson objects to this interrogatory on the ground that it calls for a legal conclusion. The provisions of the Texas Election Code speak for themselves.

11.    Describe what "specific standards" you contend are required for the signature comparison process to "ensure its equal application," as alleged in Paragraph 74 of your Complaint.

**RESPONSE**: Dr. Richardson objects to this interrogatory on the ground that it calls for a legal conclusion. Subject to and without waiving the foregoing, there are multiple types of specific standards that could be put in place to resolve the issues in this lawsuit. Plaintiffs' counsel discuss such forms to relief in their pleadings and in communications with opposing counsel, and their

13

expert witness' report served on Defendants on February 3, 2020 also discusses such issues.

12.    Describe any guidelines or trainings you contend SOS must provide to local election officials, EVBBs, or SVCs, including how you contend any such guidelines or trainings should be provided.

**RESPONSE**: Dr. Richardson objects to this interrogatory on the ground that it calls for a legal conclusion. Subject to and without waiving the foregoing, there are multiple types of guidelines and trainings Defendant SOS could provide to resolve at least some of the issues in this lawsuit. Plaintiffs' counsel discuss such forms to relief in their pleadings as well as communications with opposing counsel.

14

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

DR. GEORGE RICHARDSON,      )
ROSALIE WEISFELD, AUSTIN    )
JUSTICE COALITION,          )
COALITION OF TEXANS WITH    )
DISABILITIES, MOVE TEXAS    )
CIVIC FUND, LEAGUE OF       )
WOMEN VOTERS OF TEXAS, and)
AMERICAN GI FORUM OF        )
TEXAS, INC.,                )
     Plaintiffs,           )
                    )
vs.                         )   CASE NO. 5:19-cv-00963
                    )
TEXAS SECRETARY OF STATE,   )
TRUDY HANCOCK, IN HER       )
OFFICIAL CAPACITY AS        )
BRAZOS COUNTY ELECTIONS     )
ADMINISTRATOR, AND PERLA    )
LARA IN HER OFFICIAL        )
CAPACITY AS CITY OF         )
MCALLEN, TEXAS SECRETARY,   )
     Defendants.           )

ORAL AND VIDEO DEPOSITION

ROSALIE WEISFELD

MAY 13, 2020

(REPORTED REMOTELY)

1      ORAL AND VIDEO DEPOSITION OF ROSALIE WEISFELD,

2  produced as a witness at the instance of Defendant Texas

3  Secretary of State and duly sworn, was taken in the

4  above-styled and numbered cause on the 13th day of May,

5  2020, from 2:04 p.m. to 4:40 p.m., before Dana

6  Richardson, Certified Shorthand Reporter in and for the

7  State of Texas, reported remotely by computerized

8  stenotype machine, witness located at the residence of

9  Rosalie Weisfeld, 9206 Cliffwood Drive, Houston, Texas

10  77096, pursuant to the Federal Rules of Civil Procedure

11  and the provisions stated on the record or attached

12  hereto.

13

14

15

16

17

18

19

20

21

22

23

24

25

3

1                      APPEARANCES

2  FOR PLAINTIFFS:

3       Mr. Hani Mirza - (via webconference)
        TEXAS CIVIL RIGHTS PROJECT
4       1412 Main Street, Suite 330
        Dallas, Texas 75202
5       Telephone: (972) 333-9200
        E-mail: hani@texascivilrightsproject.org

6
            - and -
7
        Mr. Zachary D. Dolling - (via webconference)
8       TEXAS CIVIL RIGHTS PROJECT
        2202 Alabama Street
9       Houston, Texas 77004
        Telephone: (832) 767-3650
10      E-mail: zachary@texascivilrightsproject.org

11          - and -

12      Mr. Samuel Kalar - (via webconference)
        WILLKIE, FARR & GALLAGHER
13      787 Seventh Avenue
        New York, New York 10019-6099
14      Telephone: (212) 728-8000
        Fax:  (212) 728-8111
15      E-mail: skalar@willkie.com

16          - and -

17      Ms. JoAnna Suriani - (via webconference)
        WILLKIE, FARR & GALLAGHER
18      1875 K Street, N.W.
        Washington, DC 20006-1238
19      Telephone: (202) 303-1193
        Fax:  (202) 303-2193
20      E-mail: jsuriani@willkie.com

21  FOR DEFENDANT TEXAS SECRETARY OF STATE:

22      Ms. Anne Marie Mackin - (via webconference)
        ASSISTANT ATTORNEY GENERAL
23      P.O. Box 12548, Capitol Station
        Austin, Texas 78711-2548
24      Telephone: (512) 463-2798
        Fax:  (512) 320-0667
25      E-mail: anna.mackin@oag.texas.gov

1                  APPEARANCES - (CONT'D)

2  FOR DEFENDANT PERLA LARA IN HER OFFICIAL CAPACITY AS
   CITY OF MCALLEN, TEXAS SECRETARY:
3
        Mr. Isaac J. Tawil - (via webconference)
4          - and -
        Mr. Austin Stevenson - (via webconference)
5       CITY OF MCALLEN
        1300 West Houston Avenue
6       McAllen, Texas 78501-5002
        Telephone: (956) 681-1090
7       E-mail: itawil@mcallen.net; astevenson@mcallen.net

8
   FOR DEFENDANT TRUDY HANCOCK IN HER OFFICIAL CAPACITY AS
9  BRAZOS COUNTY ELECTIONS ADMINISTRATOR:

10      Mr. J. Eric Magee - (via webconference)
        ALLISON, BASS & MAGEE, LLP
11      402 West 12th Street
        Austin, Texas 78701
12      Telephone: (512) 482-0701
        Fax:  (512) 480-0902
13      E-mail: e.magee@allison-bass.com

14  ALSO PRESENT:

15      Mr. Bruce Erratt, Brazos County - (via web)
        Ms. Trudy Hancock - (via web)
16      Ms. Amelia Christopher, Video Technician - (via web)

17

18

19

20

21

22

23

24

25

1                          INDEX

2                                                    PAGE

3    Examination by Ms. Mackin ........................9
     Examination by Mr. Tawil ........................67
4    Examination by Mr. Dolling ......................81
     Signature Page  .................................84
5    Court Reporter's Certificate ....................85

6

7                         EXHIBITS

8    EXHIBIT              DESCRIPTION              PAGE

9

10   Exhibit 1    Defendant Secretary of State's    12
                  First Amended Notice of Oral
11                Deposition of Rosalie Weisfeld

12   Exhibit 2    Application for Ballot by Mail    29

13   Exhibit 3    Carrier Envelope For Early        36
                  Voting Ballot

14   Exhibit 4    Notice of Rejected Ballot         40

15   Exhibit 5    Plaintiffs' Original Complaint    47

16   Exhibit 6    Plaintiff Rosalie Weisfeld's      55
                  Objections and Responses to
17                Defendant Secretary of State's
                  First Requests For Admission,
18                Interrogatories, and Requests
                  For Production
19
     Exhibit 7    Printout of a July 4, 2019,       55
20                post from the Facebook page of
                  Rosalie Weisfeld
21
     Exhibit 8    April 11, 2019, e-mail from       57
22                Rosalie Weisfeld to Yesenia
                  Rodriguez
23
     Exhibit 9    July 5, 2019, e-mail from         61
24                Rosalie Weisfeld to Justin
                  Perez

25

1                    EXHIBITS (cont.)

2    EXHIBIT                DESCRIPTION                PAGE

3

4    Exhibit 10      July 5, 2019, e-mail from          62
                     Rosalie Weisfeld to Charlie
5                    Bonner

6    Exhibit 11      Early Voting Ballot Board &         81
                     Signature Verification
7                    Committee, Handbook for
                     Election Judges and Clerks 2020
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    THE REPORTER:  We're on the record.

2  Today's date is May 13, 2020.  The time is 2:04 p.m.

3  This is the deposition of Rosalie Weisfeld in the matter

4  of Dr. George Richardson, Rosalie Weisfeld, Austin

5  Justin (sic) Coalition, Coalition of Texans With

6  Disabilities, Move Texas Civic Fund, League of Women

7  Voters of Texas and American GI Forum of Texas, Inc.,

8  Plaintiffs, v. Texas Secretary of State, Trudy Hancock,

9  In Her Official Capacity at Brazos County Elections

10  Administrator, and Perla Lara In her Official Capacity

11  as City of McAllen, Texas Secretary, Defendants, pending

12  in the United States District Court for the Western

13  District of Texas, San Antonio Division in Civil Action

14  No. 5:19-cv-00963, and is being conducted by the Federal

15  Rules and agreement of the parties to the remote

16  swearing of the witness.

17                    The witness located at 9206 Cliffwood

18  Drive, Houston, Texas 77096.

19                    My name is Dana Richardson, Texas

20  Certified Shorthand Reporter No. 5386.  I am

21  administering the oath and reporting the deposition

22  remotely by stenographic means from my residence within

23  the state of Texas.  My business address is care of

24  Integrity Legal Support Solutions, P.O. Box 245,

25  Manchaca, Texas 78652.

1              Ms. Weisfeld, please raise your right hand

2   to be sworn.

3              (Witness sworn)

4              THE REPORTER:  And, Counsel, would you

5   please state your appearance and location for the

6   record, beginning with Plaintiff counsel.

7              MR. DOLLING:  Hi.  This is Zachary Dolling

8   for the plaintiffs.  I'm in Houston, Texas.

9              MR. MIRZA:  My name is Hani Mirza with the

10  Texas Civil Rights Project.  I'm also representing

11  Plaintiffs.  And I'm in Dallas, Texas.

12             MR. KALAR:  Also for the plaintiffs, I'm

13  Samuel Kalar of the law firm Willkie, Farr & Gallagher.

14  And I am dialing in from New York, New York.

15             MS. SURIANI:  And also for the plaintiffs,

16  I am JoAnna Suriani with the law firm Willkie, Farr &

17  Gallagher.  I'm in Washington, DC.

18             MR. TAWIL:  My name is Isaac Tawil,

19  attorney for Perla Lara in her official capacity of

20  Secretary of City of McAllen.  I'm in McAllen, Texas.

21             MR. MAGEE:  I'm Eric Magee.  I represent

22  Trudy Hancock in her official capacity as the Brazos

23  County Elections Administrator.  And I'm in Austin,

24  Texas.

25             MS. MACKIN:  My name is Anna Mackin with

1    the Texas Office of the Attorney General.  I represent

2    the Defendant Texas Secretary of State in her official

3    capacity.  I am situated in Austin, Texas.

4                          EXAMINATION

5        Q.   (BY MS. MACKIN)  Good afternoon, Ms. Weisfeld.

6    Would you please speak and spell your name for the

7    record.

8        A.   Me?

9        Q.   Yes, ma'am.

10       A.   Rosalie Weisfeld.  R-o-s-a-l-i-e,

11   W-e-i-s-f-e-l-d.

12       Q.   Okay.  Thank you for that.

13               I am going to be asking you some questions

14   today.  I represent the Texas Secretary of State, a

15   defendant in this case.  Have you ever been deposed

16   before?

17       A.   No.

18       Q.   Okay.  So I'm going to go over a couple of

19   ground rules just to help things go as smoothly as

20   possible so that the court reporter can get a clear

21   record of what we're saying.  Ms. Richardson is writing

22   everything down.  So I would ask that you try to give a

23   verbal answer to my questions, specifically "yes" or

24   "no" as opposed to "huh-uh" or "uh-huh" or a shake of

25   the head because that's not always clear on the

1    transcript.  Okay?

2         A.   Yes.

3         Q.   And I will -- this is especially, I think, a

4    challenge since we are situated over Zoom and not in

5    person; but I will do my best to allow you to finish

6    your answer before I follow up or ask another question.

7    And I would ask that you please, also, try to -- let me

8    finish my question before you begin your answer.  Okay?

9         A.   Yes.

10        Q.   Thank you.

11             And if you don't understand one of my

12   questions, will you please agree to tell me so that I

13   can rephrase it?

14        A.   Yes.

15        Q.   Okay.  And you are under oath, sworn to tell

16   the truth as if we were in front of a judge or a jury,

17   under penalty of perjury.  You understand that as well,

18   right?

19        A.   Yes, I understand that.

20        Q.   Okay.  If you need a break or need to use the

21   restroom at any time, I like to say you are the talent

22   here.  So that's perfectly fine.  I will ask that if I

23   have a question pending, I'd like you to answer any

24   pending question be we take a break, but other than

25   that, any time you need a break, just let me know and --

1    and we'll take -- take a few minutes.  Okay?

2        A.    Yes.  Is it okay to drink water?

3        Q.    Absolutely.  Yes.

4              Is there any reason that you might be

5    unable to answer my questions honestly, completely and

6    accurately today?

7        A.    No.

8        Q.    Okay.  And now that the deposition is underway,

9    I would ask that if you communicate with anyone about

10   the substance of your testimony, that you let me know

11   that.  You're, of course, welcome to communicate with

12   your counsel and that's, of course, privileged outside

13   of the deposition, but now that the deposition is

14   underway, please do let me know if you communicate with

15   anyone about the substance of your testimony.  Okay?

16       A.    Yes.

17       Q.    And that's just while the deposition is going

18   on.  Once it's over, you're free to do as you will.

19             Do you have any documents in front of you?

20       A.    No.

21       Q.    Okay.  So I'll be showing -- I'll be sharing

22   some documents with you today.  I think we'll start by

23   trying to use this chat feature on Zoom, and we'll

24   practice with a document in short order here just to

25   make sure that works smoothly.  But, again, since we're

Rosale Weisfeld - 5/13/2020

12

1   situated remotely, please do let me know if you refer to

2   anything else to answer any of my questions, if you

3   refer to a website or a text message or anything like

4   that.  Okay?

5       A.   Yes.

6       Q.   Okay.  So going back to the document issue, I

7   am going to share a file in the chat box.  And I would

8   just like you to let me know if you are able to --

9       A.   Is it there now?

10      Q.   Not yet.  I'm sorry.  If you're able to access

11  it.  All right.  I just sent it.

12      A.   Oh, I see it.

13      Q.   Okay.  Were you able to open it up and see it

14  clearly on your screen?

15      A.   Yes.  It's two pages?

16      Q.   Yes.  Have you seen this document before?

17      A.   Not to my knowledge.

18      Q.   Okay.  That's fine.  It's just a communication

19  that I sent to your attorneys to schedule this

20  deposition today.  And I'm going to make it Exhibit 1 to

21  this deposition because you are here pursuant to that

22  notice, but I don't have any questions for you about it.

23              (Exhibit 1 marked)

24      A.   Okay.

25      Q.   (BY MS. MACKIN)  What did you do to prepare for

1  your deposition today?

2      A.   Do I need to close it?

3      Q.   Sure.  Yeah.  You can go ahead and close it,

4  yes, ma'am.

5      A.   What did I do to prepare?

6      Q.   Correct.

7      A.   I talked to my attorneys.  I had a chat with

8  them last week.

9      Q.   Anything else?

10     A.   Nope.

11     Q.   And how long did you visit with your attorneys

12  last week?

13     A.   I think for 45 minutes.

14     Q.   Okay.  Did you review any documents to prepare

15  for today's deposition?

16     A.   No.

17     Q.   Okay.

18     A.   I did not.

19     Q.   That's fine.

20     A.   Okay.

21     Q.   There isn't a wrong answer.

22     A.   Okay.

23     Q.   I'm just asking.

24              All right.  So I'm going to ask a couple

25  of questions about your background.  Other than this

1  lawsuit, have you ever sued anyone before?

2       A.    No.

3       Q.    And have you ever been sued?

4       A.    No.

5       Q.    Are you married?

6       A.    No.

7       Q.    And do you have any children?

8       A.    Yes.

9       Q.    How many?

10      A.    Three.

11      Q.    And what are their ages?

12      A.    Let's see.  27.  Is he 27?  Oh, wait, no.  He

13  hasn't had his birthday yet.  He's 26 -- no.  He's

14  already 27.  27, 36 and 45.

15      Q.    Okay.  And what is the highest level of

16  education that you have attained?

17      A.    I graduated from UT with my bachelor's.

18      Q.    And what did you study?

19      A.    Social work with a concentration in -- and

20  psychology.

21      Q.    And I'm sorry, it cut out just a little bit.

22  You said social work with a concentration in what?

23      A.    Psychology.

24      Q.    Oh.  Got it.  Okay.  Thank you.

25            And what year did you obtain that degree

1  from UT?

2      A.    I graduated in 1980.

3      Q.    Okay.  And where did you attend high school?

4      A.    McAllen High School.

5      Q.    Okay.  So are you a native McAllenite?  Is that

6  what -- is that a thing?

7      A.    Yes.  Yes, I was born and reared in McAllen.

8      Q.    And so have you ever -- have you ever lived

9  outside of Texas?

10     A.    Yes.

11     Q.    How many -- how many different places outside

12 of Texas have you lived?

13     A.    Only one.

14     Q.    Okay.  And where was that?

15     A.    California.

16     Q.    Where in California?

17     A.    Tarzana, California.

18     Q.    Anywhere else?

19     A.    No.

20     Q.    And --

21     A.    I mean --

22     Q.    I'm sorry.  Go ahead.

23     A.    No, not -- no, not out -- not outside of Texas.

24     Q.    Okay.  Approximately what years did you live in

25 Tarzana, California.

1     A.   That's a good question.  Let's see.

2          Q.   And it's okay if you don't remember exactly.

3     I'm -- I'm just trying to get a sense.

4     A.   Okay.  I think for two years in maybe 1980 --

5     '86 -- '86 and '87.

6          Q.   Okay.

7     A.   More or less.

8          Q.   Sure.  Understood.  I'm -- I can't remember my

9     last address.  So no judgment from this side about that.

10    A.   I'm thinking according to how long were my

11    children.  So I have to think about how old they were

12    and then what was -- you know.

13         Q.   Connect those dots, yes.

14              All right.  Are you currently employed?

15    A.   No.

16         Q.   And what is the last employment that you held?

17    A.   American Heart Association.

18         Q.   And what was your job?

19    A.   I was a consultant for the American Heart

20    Association.

21         Q.   And about how long did you serve as a

22    consultant for the American Heart Association?

23    A.   Maybe two years.

24         Q.   Okay.  What sort of consulting work did you do

25    for them?

1      A.   I assisted them in -- we were working on

2  comprehensive smoke-free ordinances and passing

3  comprehensive smoke-free ordinances so -- to protect

4  people in their workplaces from secondhand smoke.

5      **Q.   And was that at a local level, state level,**

6  **national level, all the above?**

7      A.   Local in Hidalgo, Cameron and -- Hidalgo,

8  Cameron and Starr County, primarily.  Oh, also Brooks

9  County.  South Texas, primarily.

10     **Q.   Okay.  And before your consulting work with the**

11 **American Heart Association, what job did you hold before**

12 **that?**

13     A.   I worked for various candidates and causes.

14     **Q.   What type of work did you do for the candidates**

15 **and causes you mentioned?**

16     A.   I -- I worked in the capacity as consultant

17 and -- or campaign manager for -- assisted them with the

18 design and messaging for their -- their campaigns.

19 Additionally, I worked for the Hidalgo County Democratic

20 Party under three different Democratic Party chairs.  I

21 served as the election -- the election administrator for

22 the primary elections and runoffs.

23     **Q.   In Hidalgo County?**

24     A.   In Hidalgo County.

25     **Q.   Okay.  And you mentioned working for**

1   candidates.  Were all the candidates that you worked

2   with -- I ask this because you mentioned the Democratic

3   Party.  Were all of the candidates you worked with

4   Democrat, or were any of them affiliated with another

5   political party?

6       A.   Some were Democrat; but, also, I worked for

7   candidates that were running for offices that were not

8   political --

9       Q.   Partisan.

10      A.   -- partisan.  Thank you.

11               So some city -- some candidates running

12  for city positions as well as school board positions.

13      Q.   Okay.  I was just wondering if maybe a

14  libertarian had wormed their way in there or something.

15      A.   I don't know.  I didn't ask my candidates who

16  were running for partisan positions what their party --

17  party affiliation was.

18      Q.   Fair enough.

19               All right.  Now I want to turn to this

20  lawsuit.  What is your understanding of what this case

21  is about?

22      A.   My understanding?

23      Q.   (Counsel nodding.)

24      A.   It's -- my -- my ballot, which I -- I voted by

25  mail; and my ballot was rejected due to someone else's

Rosale Weisfeld - 5/13/2020

19

1   determination that it wasn't my signature.  And it was

2   my signature.  And so I feel that my -- I know that my

3   right to vote was denied because my ballot was rejected.

4        **Q.   And to be clear, the ballot that we're talking**

5   **about, is that your ballot in the City of McAllen 2019**

6   **runoff election?**

7        A.   Correct.  Yes.

8        **Q.   I believe that was held June 22nd, 2019?**

9        A.   I believe that that is the correct date.

10  However, I voted by mail.  So my ballot was mailed --

11  was received and mailed the end of May.

12       **Q.   Okay.  And do you have any expectations for the**

13  **outcome of this lawsuit, like what you hope to get out**

14  **of it?**

15       A.   I hope that no one else's ballot is ever

16  rejected by someone that doesn't know them because they

17  think their signature is not their signature.

18       **Q.   Okay.  And how did you meet your lawyers in**

19  **this case?  And to be clear, I'm -- I don't -- I'm not**

20  **asking for the substance of their legal advice or**

21  **privileged communications, just how you became**

22  **acquainted with them.**

23       A.   I -- when my ballot was rejected, I was

24  actually at -- at home in McAllen.  And so I didn't

25  receive the letter because the letter was mailed to the

1  address in Houston.  And I opened the letter on

2  July 4th, when I was here in Houston; and when I saw

3  that my ballot had been rejected, I was horrified.  I

4  was sickened.  I was nauseated.  I had voted in every

5  single election there is and -- except for one -- and in

6  all the years that I've been registered to vote.  And I

7  posted on Facebook what happened.  And I don't recall

8  exactly how it happened, but I had a subsequent -- I

9  don't remember exactly what happened, but different

10  friends replied back to me about things that were going

11  on and -- and -- and horrified that it had happened to

12  me and sad.  And then -- oh, I -- I -- one of the -- I

13  don't remember what happened exactly.  So many different

14  people called me or sent me messages and -- none of the

15  attorneys did.  And somehow I, though, found out about

16  the Texas Civil Rights Project and I contacted -- I

17  contacted them and that's how I came to be with them.

18      Q.  Okay.  And so before your Facebook post and

19  kind of folks messaging you and somewhere in that

20  process getting linked up with the Texas Civil Rights

21  Project, had you had any prior dealings with the Texas

22  Civil Rights Project that you recall?

23      A.  Yes, but I don't remember exactly.

24      Q.  Okay.  Do you -- do you know anything -- do you

25  recall anything generally?  And it's okay if not.  I'm

 1  not -- not asking you to make it up if -- if you're not

 2  sure.  So just --

 3      A.   I'm not sure.

 4      Q.   Okay.  That's fine.  That's a perfectly fine

 5  answer.

 6                All right.  We've been talking a little

 7  bit about voting.  So this lawsuit is about your mail-in

 8  ballot.  Are you aware of any other options that are

 9  available for casting a ballot in Texas other than

10  voting by mail?

11      A.   Yes.

12      Q.   And what are those?

13      A.   Voting in person on election day and voting in

14  person during early voting.

15      Q.   And do you know if you were eligible to vote in

16  person in the 2019 City of McAllen runoff election?

17      A.   No, I was not.

18      Q.   And why not?

19      A.   I was not in McAllen.

20      Q.   Any other reason that you would not have been

21  able to vote in person in that election?

22      A.   No.

23      Q.   Okay.  So you mentioned in-person voting on

24  election day and in-person voting early.  Are you aware

25  of any other ways to cast a ballot in the state of

1  Texas?

2      A.   By mail.

3      Q.   Okay.  And anything besides that?

4      A.   Those are the only three ways I know that

5  people can vote.

6      Q.   Okay.  And have you voted in person on election

7  day in Texas before?

8      A.   Yes.

9      Q.   I know it may not be -- it may be difficult to

10  give a precise answer, but can you estimate about how

11  many times?

12      A.   No.

13      Q.   That's fine.  Have you voted in person early in

14  Texas before?

15      A.   Yes.

16      Q.   And do you -- are you able to give a rough

17  estimate of how many times?

18      A.   I don't recall.

19      Q.   Okay.  That's fine.

20          And this -- this lawsuit, we're talking

21  about the 2019 runoff election ballot by mail.  Other

22  than that election, have you voted by mail in Texas

23  before?

24      A.   Yes, I have.

25      Q.   And are you able to approximate about how many

 1  times you've done that?

 2      A.    No.

 3      Q.    That's fine.

 4            The last time you voted in person in

 5  Texas, did you have to do anything to verify that you

 6  were Rosalie Weisfeld?

 7      A.    Yes.

 8      Q.    Do you remember what you had to do?

 9      A.    I had to show a picture ID.  The voter

10  registration card that I received doesn't even --

11  doesn't work, which is kind of crazy, because it is the

12  voter registration card; but that's not necessary to

13  vote.  You have to show a picture ID.

14      Q.    Can you think of a time that you voted in

15  person in Texas when you didn't have to show a form of

16  identification?

17      A.    Yes.

18      Q.    How many times?

19      A.    For years, before the law was changed.

20      Q.    Okay.  Tell me about that.

21      A.    I don't understand the question.

22      Q.    Okay.  So you -- as I understood your

23  testimony -- and correct me if I'm wrong -- you

24  mentioned that a law changed and after that, you had to

25  start identifying yourself to vote in person, but before

24

1   that, you weren't required to provide a form of

2   identification to vote.  Did I understand your

3   testimony?

4        A.   No, no, no.  It's a difference between a

5   picture ID and then you had the voter registration card

6   that you could take in or you could take in any kind of

7   identification.

8        Q.   I see.  So the change was from a form of

9   identification to a form of photo identification?

10       A.   Yes.  And only a specific form of

11   identification.  So, like, a student ID card wouldn't

12   count now -- doesn't count now.

13       Q.   Okay.  So let me try to ask my question a

14   little bit better.  Do you remember a time that you

15   voted in Texas where you didn't have to provide any form

16   of identification at all in person?

17       A.   Not to my recollection.

18       Q.   And to your knowledge, have you ever had a

19   ballot rejected other than in the 2019 City of McAllen

20   runoff election?

21       A.   No, never.

22       Q.   So it sounds from your testimony like it would

23   be fair to say you vote regularly.  Is that right?

24       A.   Yes, that is correct.

25       Q.   Would you describe yourself as politically

1  active?

2      A.   Yes.

3      Q.   And in what ways?

4      A.   I do my best to prepare myself before I go to

5  vote.  I read about all the candidates.  If possible, I

6  meet them.  I go to their functions.  I listen to

7  televised debates.  I -- if it's an issue, I study it.

8  Now, with the computer, it's even easier.  Can go to the

9  candidates' websites or Facebook pages or other social

10 media.  Resources, outlets to -- to -- to get

11 information on the candidate themselves.  If I can't

12 meet them, sometimes I'll call them, talk to them on the

13 phone.

14     Q.   I think most people would agree that more of us

15 should be that engaged and be paying that much attention

16 to the -- to the political process.  So that is -- that

17 is appreciated.

18          You mentioned studying some issues.  Are

19 there any issues that are particularly important to you?

20     A.   It depends on the -- you mean in regards to the

21 candidates and how I decide to vote for them?

22     Q.   I mean regarding just sort of issues that are

23 frequently kind of debated and discussed in our current

24 political climate.  So maybe an issue that you might

25 think it was important enough to be active on

1  **independent -- like, apart from any candidate?**

2      A.   I study the candidates.  I have particular,

3  yes, issues that are a concern to me; and I choose the

4  candidate that I intend to vote for based on their

5  positions and how I feel they will best represent my --

6  represent me and the concerns I have.  Is that what

7  you're asking?

8      **Q.   Yeah.  Sure.  Can you give me a few examples of**

9  **those issues that are particularly important to you in**

10  **deciding which candidates to support?**

11      A.   Well, for example, I'll use the city election

12  without telling you my -- who I voted for because that's

13  not -- that's private and privileged information.  But I

14  talked to the candidates and observed them, listened to

15  them on issues pertaining to the City such as business,

16  parks, environment, the recycling program we have now in

17  place, economic issues, how they plan to work together

18  with the school district and made my decision based on

19  their -- their interests and where they stood on those

20  particular issues.

21      **Q.   Okay.  Thank you for that.**

22          **I want to now focus in on the 2019 City of**

23  **McAllen runoff election that is kind of at the center of**

24  **your claims in this case.  When we were discussing**

25  **voting by mail earlier, you mentioned that had you voted**

1   **by mail several times in the past.  Has that always been**

2   **because you were outside the county, or was there ever**

3   **another reason that you were eligible to vote by mail?**

4       A.   It was because I was outside the county during

5   the election period, both early voting and election day.

6       **Q.   And for this 2019 City of McAllen runoff**

7   **election, that was also the reason you were eligible,**

8   **because you were outside the county?**

9       A.   Yes.

10      **Q.   Okay.  Do you remember when you applied for the**

11  **ballot in the 2019 City of McAllen runoff election?  And**

12  **I mean the ballot by mail, just to be crystal clear.**

13      A.   For the runoff?

14      **Q.   Yes, ma'am.**

15      A.   It was either in April or May.  It was after

16  the election, and there was a requirement -- I mean, one

17  of the races was in -- there was a runoff.  And so when

18  the runoff was declared, I knew I would be out of town.

19      **Q.   How did you know that you would be out of town?**

20      A.   My niece was graduating from college, and I

21  knew that I would be out of the state and -- well, out

22  of the county because I was going to visit the family.

23      **Q.   And where were you visiting family for the**

24  **graduation?**

25      A.   In New York.  I was in New York.

1      Q.   That just sounds like such an exotic journey

2  under current circumstances.

3      A.   Yes, unfortunately.

4      Q.   Yeah.

5      A.   It was last year, not -- not now.

6      Q.   I understand.  No.  Absolutely.

7            And so what did you do to apply for your

8  ballot by mail?

9      A.   I think when I -- I think that I talked to

10  either Estella or Perla in the McAllen City office; and

11  I told them, yes, I would be out of town and to please

12  mail me the ballot by mail.

13      Q.   And Perla Lara is City of McAllen Secretary?

14      A.   Yes.  And Estella is -- is her assistant -- or

15  at the time, she was.

16      Q.   Do you know Estella's last name?

17      A.   I think it's -- I think it's Garza, but it

18  could have been someone else in Perla's office, also,

19  but I -- I think it was either that I spoke to Perla

20  directly or I talked to Estella.

21      Q.   Did anyone assist you in applying for your

22  ballot by mail for the 2019 --

23      A.   No.

24      Q.   Okay.  Did anyone assist you in completing your

25  ballot by mail for the 2019 --

1      A.    No.

2      Q.    -- City of McAllen runoff election?  Just to be

3  clear.

4      A.    No.

5      Q.    No, you're fine.  It's -- it's a total tendency

6  that we have in normal conversation.  So you're fine.

7            All right.  I'm going to show you a

8  document, and please let me know once you're able to

9  open and view that document.

10     A.    Okay.  I see it.

11     Q.    Do you recognize -- oh, and I will make this

12 document Exhibit 2 to this deposition.

13            (Exhibit 2 marked)

14     A.    Yeah.  It's sideways.  So just a minute.  Let

15 me kind of turn my head to -- oh, I see.  It's my

16 application.

17     Q.    (BY MS. MACKIN)  And, Ms. Weisfeld, I think if

18 you go up -- are you in Adobe?

19     A.    I can see it.

20     Q.    Are you --

21     A.    I can see it.  I can read it.

22     Q.    Okay.  Because if you click "View" and rotate

23 "View," you might be -- you can flip it around just so

24 you don't have to turn your head to the side.  But as

25 long as it's clear on your screen, that is -- that is

Rosale Weisfeld - 5/13/2020

1  **fine.**

2      A.   Okay.

3              MR. DOLLING:  I think that if you

4  right-click the document in -- in the menu that pops up,

5  you see about halfway down, it says "rotate clockwise"?

6  You do that one.

7      A.   Got it.  Yeah, I see it now.  Now I did it.

8  Yeah.  Got it.  Okay.

9      **Q.   (BY MS. MACKIN)  And so I just want to make**

10  **sure.  I'm going to back up a little bit.  Do you**

11  **recognize this document?**

12      A.   Yes.  That's my application.

13      **Q.   Application for what?**

14      A.   For the -- the City election in May.

15      **Q.   For the ballot by mail for the 2019 City of**

16  **McAllen election?**

17      A.   Correct.

18      **Q.   And then if you'll look down under 6b, like**

19  **"boy" --**

20      A.   Yes.

21      **Q.   -- there's a little check next to "Any**

22  **Resulting Runoff."**

23      A.   Correct.

24      **Q.   So was this application the application for**

25  **your ballot by mail in the 2019 City of McAllen runoff**

1  election?

2      A.   Yes.  I voted in the May election because I was

3  out of town.  And I had clicked off -- checked off any

4  resulting runoff, but then I don't -- someone from the

5  City called me to verify that I do -- did still want a

6  ballot for the runoff election.  It was either Perla or

7  somebody in the office.  And I said, "Yes, I do."

8      Q.   **And you mentioned -- you mentioned Perla and**

9  **referring to her on a first-name basis.  Would you say**

10 **that you-all have a -- a personal relationship?**

11     A.   We have a working relationship.

12     Q.   **Okay.  How long have you known Ms. Lara?**

13     A.   For many years.  She was the assistant -- she

14 was the assistant before she -- before she became the --

15 the secretary.

16     Q.   **Okay.  And is that how you became acquainted**

17 **with her?**

18     A.   Yes.

19     Q.   **All right.  And down under the number 10,**

20 **there's an "X."  And next to that is a signature.  Is**

21 **that your signature?**

22     A.   Yes, it is.

23     Q.   **Okay.  And when you completed this application,**

24 **what was your understanding of what that signature would**

25 **be used for?**

Rosale Weisfeld - 5/13/2020

32

1      A.   It was -- it -- it says that I certify that the

2  information given in this application is mine, and I

3  understand that giving false information is this -- in

4  this application is a crime.  So it was my signature to

5  confirm that I was telling the truth in completing

6  this -- completing this application.

7      Q.   Okay.  And jumping up a little bit to Box 8 --

8      A.   Uh-huh.

9      Q.   -- when you initially applied for this ballot

10  by mail in March of 2019 --

11      A.   Uh-huh.

12      Q.   -- it indicates that you anticipate being

13  absent from the county from April 1st, 2019, through

14  May 10th, 2019.  Did I read that right?

15      A.   Yes.

16      Q.   And where were you during that time?

17      A.   I don't recall, but I wasn't in -- I wasn't

18  in -- I wasn't in McAllen for the election.  So that's

19  why I requested a ballot by mail.

20      Q.   And maybe we can get some clues from the

21  document.  It might refresh your recollection.

22      A.   Uh-huh.

23      Q.   If you go to line 3, it says -- it lists an

24  address in Houston --

25      A.   Correct.

1      Q.    -- for your ballot by mail.

2      A.    Yes.

3      Q.    Is it possible that you were at that address

4 from April 1st to May 10th of 2019?

5      A.    I -- I could have been here for part of it, but

6 it was the address that I requested that the ballot be

7 mailed to.

8      Q.    And why did you choose that address if you were

9 only going to be there for part of the time?

10     A.    Because I'm engaged to be married and it is the

11 address of my fiancÏ¿‰.

12     Q.    Well, what cause for celebration.  I am, too,

13 actually.  We had to postpone our wedding because of the

14 pandemic.

15     A.    Congratulations.

16     Q.    Thank you.

17           And so you mentioned that you don't

18 specifically recall where you were for the entire period

19 of absence.  Do you remember any of the places you might

20 have been besides Houston?

21     A.    I really don't.  No.

22     Q.    Would it be fair to say that you travel quite a

23 bit?

24     A.    Yes, it is.  That is true.

25     Q.    And why do you have occasion to travel so

1  often?

2      A.   I'm very close to my family, and I travel to --

3  primarily to see my -- my family.

4      Q.   And I know you mentioned New York.  Where else

5  do you have family located?

6      A.   California.  And Mark has family in Colorado,

7  and so do I.  And I'm trying to think of where I might

8  have been during that time.  I kind of think I might

9  have been -- I might have gone skiing for the last

10  weekend in -- of ski season.

11      Q.   And just to be clear on the record, is -- is

12  Mark your fiancï ¿‰?

13      A.   Yes.

14      Q.   All right.  I'm done with Exhibit 2 for now.

15  You can close out of that document?

16      A.   Uh-huh.

17      Q.   And we may have already covered this, but I

18  just want to make sure that the record is clear.  Have

19  you ever voted in -- you have voted in person in the

20  City of McAllen in the past, right?

21      A.   Yes.  Yes.

22      Q.   And do you recall when you received your ballot

23  by mail for the 2019 City of McAllen runoff election?

24      A.   I don't recall the exact date, but it was

25  either the -- the end of March or first of April, I

1  think.  It was either in -- in the end of March or the

2  first couple weeks of April.

3      **Q.   And do you remember if anything was included in**

4  **the mailing besides your mail-in ballot?**

5      A.   Oh, yes.  The ballot came closed.  Whoever

6  processed it, they had sealed all the envelopes that

7  were inside the carrier envelope; and that should not

8  have been done.  And so I called the office, and I think

9  I spoke to Perla and explained to her what happened

10  because I was concerned because I didn't want my ballot

11  to be rejected because I was going to have to cut open

12  the envelope -- envelopes -- yeah, the two envelopes.  I

13  was going to have to cut them open to open them to -- to

14  take my ballot out and vote and then put them back in

15  and then seal them, and I didn't want anybody to think

16  that they had been tampered with.

17      **Q.   And, now, was that for the June runoff election**

18  **or was that for the May 2019 election that the ballot --**

19  **that the envelope had been sealed?**

20      A.   May.  In the May City election.  So,

21  subsequently, after the conversation and -- I sent an

22  e-mail and I also handwrote a letter and -- and I put

23  the letter inside with the ballot and I put the letter

24  to the -- I think it was to the ballot board, a long

25  handwritten letter, and said, "Please do not reject my

Rosale Weisfeld - 5/13/2020

36

 1  ballot," and told them why and what happened.

 2       Q.   And so as I'm understanding your testimony,

 3  that was in the May election?

 4       A.   Correct.

 5       Q.   Do you remember when you received your mail-in

 6  ballot for the June runoff election in 2019?

 7       A.   It was either the day before or the day that I

 8  flew to New York.

 9       Q.   Do you know when that was?

10       A.   It was the end of May.

11       Q.   Okay.  And your ballot in the runoff election,

12  did it also have the issue of having one of the

13  envelopes already sealed?

14       A.   No, it didn't.

15       Q.   Okay.  In that general election, the May

16  election, where you had the issue with the sealed

17  envelope, do you know if your ballot was counted for

18  that May election?

19       A.   I presume so because I did not receive a letter

20  of rejection.

21       Q.   I'm going to show you a document that I will

22  make Exhibit 3 to this deposition.

23                  (Exhibit 3 marked)

24       Q.   (BY MR. BAUER)  Please let me know when you are

25  able to open that document and take a look at it.

1    A.    Is that the carrier envelope PDF?

2    **Q.    Yes, ma'am.  That's the title of the -- of the**

3 **file.**

4    A.    Okay.

5    **Q.    Do you recognize this document?**

6    A.    Let me turn it again.  Just a second.  It'll

7 make it easier to look at.

8              Okay.  Yes.  That is the carrier envelope,

9 and you -- oh, see, it's dated the end of May, as I -- I

10 said, that -- yeah, the end of May.  And it's from New

11 York.

12    **Q.    And you're referring here to the -- the**

13 **postmark?**

14    A.    Correct.

15    **Q.    Looks like May 29th, 2019, from something I**

16 **can't quite read, NY.**

17    A.    It's New York.  It was from -- I think I --

18 I -- I don't -- I put it in the mailbox around the

19 corner from my niece and nephew's townhouse.

20    **Q.    And it looks, from the City Secretary's Office**

21 **stamp on the envelope, like this was received in the**

22 **McAllen City Secretary's Office on June 3rd, 2019.**

23 **Would you have any reason to -- to doubt that?**

24    A.    That -- that sounds accurate for the mail.

25    **Q.    Okay.  And then turning to -- this is a -- this**

 1  is a two-page document -- so the second page.

 2      A.   Oh.  Let me fix this one.  Okay.

 3      Q.   And is that your signature on the outside of

 4  this carrier envelope?

 5      A.   Yes, it is.

 6      Q.   And what was your understanding of what that

 7  signature would be used for?

 8      A.   They -- they use it -- it's used to -- it's

 9  used to -- to -- to -- they compare it to all the other

10  signatures that are on file.  It can go back and look in

11  the -- on the computer at a lot of different signatures.

12  But it also is -- you see -- you see it says there:  "I

13  certify that the enclosed ballot expresses my wishes

14  independent of any dictation or undue persuasion by any

15  person."  It just means that I filled it out and

16  completed it myself and mailed it myself.  I even told

17  them I was going be in New York; and you can see, it has

18  a New York postmark.

19      Q.   And do you see down below that where it says

20  that a voter may be -- actually, never mind.  That's all

21  that I have on that -- actually, sorry, one more thing.

22  Down at the bottom where it says "Name of Voter" --

23      A.   Uh-huh.

24      Q.   -- did you also -- is that also your

25  handwriting?

1    A.   Yes.

2       Q.   Okay.  And do you recall -- that's all I have

3   on Exhibit 3.  Thank you.  You can close out of that.

4              Do you recall --

5              MR. DOLLING:  Excuse me.  Anna, do you

6   mind?  I just wanted to check in on Rosalie and see if

7   maybe she wanted to take a break right now.

8              THE WITNESS:  Yeah, that -- that would be

9   really nice.  Thank you so much.  I'm starting to fade.

10             MS. MACKIN:  Would you mind if I ask just

11  one more question, and then we can take a break?

12             MR. DOLLING:  I think that's agreeable.

13  Is that okay, Rosalie?

14             THE WITNESS:  Can we just wait?

15             MS. MACKIN:  Sure.

16             THE REPORTER:  Okay.  We're off the record

17  at 2:59 p.m.

18             (Recess taken)

19             THE REPORTER:  We're back on the record at

20  3:13 p.m.

21      Q.   (BY MS. MACKIN)  Ms. Weisfeld, just one last

22  question about your New York trip in late May of 2019.

23  Do you remember when you returned?

24      A.   When -- when I returned to --

25      Q.   Well, when you returned -- when you returned

1  from that trip.

2      A.   I don't.

3      Q.   Okay.  And after that trip, did you immediately

4  come back to Texas?

5      A.   I don't recall.  I don't recall because several

6  of my family members were having graduations and I went

7  to California and -- I think I went to California.  I

8  don't recall all the places I went to for graduations.

9      Q.   Okay.

10     A.   And we had a -- we had other family -- thank

11  God they were celebrations, to attend during that time

12  period.

13     Q.   All right.  I'm going to share a document with

14  you, and this will be Exhibit 4 to this deposition.

15              (Exhibit 4 marked)

16     Q.   (BY MS. MACKIN)  And please let me know when

17  you are able to open up that document and take a look at

18  it.

19     A.   I see it.

20     Q.   Okay.  Do you recognize Exhibit 4?

21     A.   Yes.

22     Q.   What is it?

23     A.   It's the letter of rejection that I received.

24     Q.   And is this letter the first notice you

25  received that your ballot had been rejected?

1    A.   Yes, it was.

2        Q.   **And who provided this notice to you?**

3    A.   It came in the mail from the City of McAllen,

4    but I don't know whose signature that is at the bottom.

5    Do you know who the early voting ballot board judge was?

6        Q.   **I could probably find it in the documents, and**

7    **I actually -- we will touch on it later.  So if it's**

8    **okay with you, if we could just come back to that in a**

9    **little bit.**

10   A.   Okay.

11       Q.   **Do you remember -- well, strike that.**

12            **Exhibit 4 is dated June 22nd, 2019.  Is**

13   **that right?**

14   A.   Correct.

15       Q.   **And do you know if that was the date of the**

16   **runoff election?**

17   A.   I don't recall.

18       Q.   **And do you know when Exhibit 4 arrived in your**

19   **mailbox?**

20   A.   I saw it on the 4th of July.

21       Q.   **Could it have arrived before that?**

22   A.   I -- I don't know.

23       Q.   **Okay.  And do you remember which address**

24   **Exhibit 4 was sent to?**

25   A.   Yes.  It's stamped right there:  Rosalie

Rosale Weisfeld - 5/13/2020

42

1  Weisfeld, 9206 Cliffwood Drive, Houston, Texas 77096.

2      Q.   And you -- correct me if I'm wrong; but as I

3  understood your testimony, you did not -- you do not

4  recall when you returned to this address after your

5  travels in late May of 2019.  Is that right?

6      A.   I -- it wasn't just late May.  It was also in

7  June.

8      Q.   Okay.  And so is it correct --

9      A.   I know I came to this address on the 4th of

10  July because that's the day I got it.

11      Q.   Okay.  And so that would have been the first

12  time that you returned to this Houston address after

13  your travels to New York and potentially some other

14  places?

15      A.   No.  That -- no.  I was here at other times.

16      Q.   I'm not -- I'm not asking this very well, and I

17  apologize.  What I'm trying to understand is -- we

18  talked about how you were in New York in late May.

19      A.   Correct.

20      Q.   And you'd been possibly doing some other travel

21  before you returned to Texas.

22      A.   Correct.

23      Q.   And so --

24      A.   Oh.  Correct, but I'm not sure if I came back

25  here first or -- I didn't know you were going to ask me

1  these questions.  I could have prepared.

2      Q.   That's okay.

3      A.   But I -- I didn't know you were going to ask

4  anything about my travel schedule.  So I didn't study

5  it.

6      Q.   That's okay.  It's no big deal.  What -- what

7  I'm trying to understand is when Exhibit 4 arrived at

8  this Houston address because, from our conversation, it

9  sounds like you were not at that Houston address from

10 late May through July 4th of 2019.

11     A.   No, no, no.  I came back.  I -- I -- I was in

12 Texas, and I -- I don't remember exactly -- the exact

13 date of my flight -- you know, flights, my trips, my --

14 I -- I don't recall all of them.

15     Q.   That's fine.  And I don't expect you to.

16 That's not a problem.  What I'm trying to understand is

17 whether you have any recollection that might help me

18 figure out when Exhibit 4 arrived in the mailbox at

19 9206 Cliffwood Drive, Houston, Texas.  And if you don't

20 have any knowledge about that, that's -- or

21 recollection, that's fine.  I'm --

22     A.   I -- I don't -- I'm sure you could look at a

23 calendar and you could see maybe what day they mailed it

24 and then you could figure out if it was a Saturday or

25 Sunday or a holiday or what days the mail -- what days

44

1  the mail was delivered and then you could figure out

2  what day, but I don't know.

3      Q.   Okay.  That's fine.  Thank you for that.

4           And on Exhibit 4, what does it indicate is

5  the reason that your ballot in the 2019 City of McAllen

6  runoff election was rejected?

7      A.   It says -- there's a checkmark next to No. 2:

8  "It was determined that the signature on the application

9  for ballot by mail and carrier envelope was not signed

10 by the same person."  But that's not true.  And it --

11 they could have called me and asked me or sent me an

12 e-mail or sent me a letter, somehow communicated with me

13 and asked me and especially when I told them I was

14 mailing it from New York.  I said, "I'm going to be in

15 New York."  And they did not -- and it was mailed from

16 New York.

17           MS. MACKIN:  I'm just going to object to

18 that last answer as nonresponsive because all I'm trying

19 to explore here is the reason indicated on this notice.

20     A.   Oh, okay.

21     Q.   (BY MS. MACKIN)  I --

22     A.   Then it's the first part of my answer.  "It was

23 determined that the signature on the application for

24 ballot by mail and carrier envelope was not signed by

25 the same person."

Rosale Weisfeld - 5/13/2020

1     Q.   And what did you do when you received

2  Exhibit 4?

3     A.   I cried.

4     Q.   Did you do anything else?

5     A.   I was really sad, and I was really upset

6  because it was my ballot.  I signed it.  The signatures,

7  they -- they had plenty of my handwriting from the

8  letter that we discussed earlier and all of my

9  signatures.

10     Q.   What letter?

11     A.   The letter I included in the envelope.

12     Q.   In your -- in your May 2019 general election

13  ballot by mail?

14     A.   Correct.  And, also, they had access to other

15  signatures and they -- they -- it -- it was clearly

16  my -- my -- my -- it was clearly my signature.  It was

17  clearly my ballot.

18     Q.   Did you contact any -- anyone at the City of

19  McAllen when you received Exhibit 4?

20     A.   No.  I couldn't.  It was the 4th of July.

21     Q.   How about at any time after the 4th of July?

22     A.   I don't recall.  I was very upset.  I was very

23  hurt.

24     Q.   But do you know who determined that the

25  signature on the application for ballot by mail and

1  carrier envelope was not signed by the same person?

2      A.   No, I do not.

3      Q.   Do you know why that determination was made?

4      A.   No, I -- I do not.  It was this -- it's --

5  it -- I -- I signed it.

6      Q.   Do you know what was considered in making the

7  determination that the signature on the application for

8  ballot by mail and carrier envelope were not signed by

9  the same person?

10     A.   No, I do not.

11     Q.   Do you know how the people who evaluated the

12 signature on your ballot by mail for the 2019 City of

13 McAllen runoff election were selected?

14     A.   No, I do not.

15     Q.   Do you know whether the Texas Secretary of

16 State's Office was involved in the decision -- was

17 involved in the determination that the signature on the

18 application for ballot by mail and carrier envelope was

19 not signed by the same person?

20              MR. DOLLING:  Objection, form.

21              MS. MACKIN:  And, actually, let me -- let

22 me ask -- let me start over.

23     Q.   (BY MS. MACKIN)  Do you know whether the Texas

24 Secretary of State's Office was involved in the

25 determination that the signature on the application for

 1  ballot by mail and carrier envelope was not signed by

 2  the same person?

 3      A.   I do not.  No, I do not.

 4      Q.   Did you ever contact the Secretary of State's

 5  Office about the rejection of your ballot in the 2019

 6  City of McAllen runoff election?

 7      A.   No.

 8      Q.   I'm going to share a document.

 9      A.   Do I close this one?

10      Q.   Yes, ma'am.  I do not have any other questions

11  about that.

12              And I'll make that Exhibit 5 to this

13  deposition.  Please let me know when you are able to

14  access the document and take a look at it.

15              (Exhibit 5 marked)

16      A.   I see it.

17      Q.   (BY MS. MACKIN)  All right.  Do you recognize

18  Exhibit 5, Ms. Weisfeld?

19      A.   Yes, I have seen this.

20      Q.   And what is it?

21      A.   It is the -- it is the civil case that was

22  filed on my behalf and Dr. Richardson and the other

23  organizations.

24      Q.   Did you review Exhibit 5 before it was filed?

25      A.   Yes, I did have the opportunity.

Rosale Weisfeld - 5/13/2020

48

1      Q.    And how much time did you spend reviewing

2  Exhibit 5 before it was filed?

3      A.    I don't recall.

4      Q.    Approximately how much time have you spent on

5  this case?

6      A.    I -- it is on my mind quite a bit, and I think

7  about it because I was disenfranchised.

8      Q.    My question was:  How much time have you

9  dedicated to working on this case, whether that's

10 meeting with your attorneys or reviewing filings or

11 reviewing interrogatory responses, kind of concrete

12 tasks that you have dedicated your time to?

13     A.    Hours.

14     Q.    About how many hours would you say?

15     A.    I don't know because I had different amounts of

16 times for different components of the case.

17     Q.    Okay.  Do you know Dr. George Richardson, the

18 other individual plaintiff in this case?

19     A.    I do not, no.

20     Q.    Prior to this lawsuit, have you had any

21 dealings with the plaintiff Austin Justice Coalition?

22     A.    No.

23     Q.    How about the Coalition of Texans With

24 Disabilities?

25     A.    No.

49

1    Q.    What about Move Texas Civic Fund?

2    A.    No.

3    Q.    League of Women Voters of Texas?

4    A.    I was a -- I was the president of the League of

5    Women Voters and -- McAllen/Edinburg League of Women

6    Voters, many years ago.

7    Q.    Do you remember how long you served as

8    president of League of Women Voters, McAllen?

9    A.    The McAllen/Edinburg.  It was probably -- I

10   think I served -- I don't recall exactly.  I think it

11   was a two-year term.  I've been involved with lots of

12   organizations in a leadership role.

13   Q.    And other than serving as president of your

14   local League of Women Voters affiliate, did you have any

15   other dealings with the League of Women Voters of Texas?

16   For example, I presume you were a member --

17   A.    Yes.

18   Q.    -- before you became president?

19   A.    Yes.

20   Q.    And are you still a member of the League of

21   Women Voters?

22   A.    No.

23   Q.    Why not?

24   A.    We don't have a chapter any longer.  They -- we

25   don't have a chapter in -- in The Valley.

1     Q.   Okay.  Before this lawsuit, Ms. Weisfeld, have

2  you had any prior dealings with the Texas Secretary of

3  State?

4     A.   Yes.

5     Q.   And what was the nature of those dealings?

6     A.   I -- I would call for advice when I was the

7  election administrator.

8     Q.   Do you remember the name of --

9     A.   Democratic Party primary.

10               THE REPORTER:  Please repeat.

11     A.   For the Democratic Party primary election.  I

12  just wanted to clarify.

13     Q.   (BY MS. MACKIN)  Do you remember the names of

14  any of the individuals you spoke to when you would call

15  the Secretary of State's Office in your role as

16  administrator for the Democratic Party primary?

17     A.   No.

18     Q.   Do you remember how many times you called the

19  Secretary of State's Office --

20     A.   No.

21     Q.   -- for advice?

22     A.   No.

23     Q.   Other than calling the Texas Secretary of

24  State's Office in connection with administering the

25  Democratic Party primary, have you had any other

1  dealings with the Texas Secretary of State's Office?

2      A.   Yes.  I went to a training that the Secretary

3  of State's Office conducted.

4      Q.   When was that?

5      A.   I don't recall.

6      Q.   Was this also in connection with your role as

7  an election administrator for the Democratic Party?

8      A.   Yes.

9      Q.   Okay.  Any other dealings with the Secretary of

10 State's Office?

11     A.   That's all I can recall.

12     Q.   And have you had any prior dealings with Ruth

13 Hughs, the woman who currently serves as Texas's

14 Secretary of State?

15     A.   Not to my recollection.

16     Q.   Okay.  Have you had any prior dealings with the

17 Brazos County election administrator?

18     A.   No.

19     Q.   And how about Trudy Hancock, the woman who

20 currently serves as the Brazos County election

21 administrator?

22     A.   No, not to my knowledge.

23     Q.   And it sounds like you have had some prior

24 interactions with Perla Lara and the City of McAllen

25 Secretary.  Is that right?

Rosale Weisfeld - 5/13/2020

1    A.    Yes.

2    Q.    And what was the nature of your prior dealings

3  with Perla Lara?

4    A.    I would call her in regards to election matters

5  and matters of the City.

6    Q.    And about when did you begin calling Ms. Lara

7  about election matters and matters related to the City

8  of McAllen?

9    A.    I don't recall how long she's worked there.

10    Q.    Would you say it's more or less than five

11  years?

12    A.    I would say at least for five years, sure.

13    Q.    More or less than ten?

14    A.    I don't recall how long she's been working

15  there.  I've called the City quite a bit because I'm a

16  active citizen.

17    Q.    And before Ms. Lara served as secretary of the

18  City of McAllen, did you have any prior dealings with

19  her -- her predecessors?

20    A.    Yes.

21    Q.    Tell me about that.

22    A.    I served on the McAllen Mayor's Prayer Luncheon

23  Committee for many years, and different staff members

24  from the City would serve on the committee.  I can't

25  recall if one of them was from the City Secretary's

1   Office or not.  Also, one of the City's -- former City

2   secretaries is the city secretary of San Antonio now and

3   what -- I think she's still there.  And the first time I

4   ever called the City was when I was 13 years old and I

5   wanted to advocate for recycling and I walked down to

6   the City Hall and I had an appointment.  When I was in

7   junior high, I went down to talk to them about recycling

8   and how important it was to implement recycling.  So

9   I -- I've been involved for a long time with a lot of

10  many different city secretaries and staff members.

11       Q.   Okay.  So it would be fair to say that over the

12  course of your life you've had numerous dealings with

13  the City of McAllen Secretary?

14       A.   Yes.  Since I was 13, and I'm 63 now.  So

15  that's 50 years.

16       Q.   Okay.  And I just want to clarify one point.

17  You testified that you did not know when the City of

18  McAllen mailed you notice of the rejection of your

19  ballot in the 2019 runoff election.  Is that right?

20       A.   It would be on the envelope.  You can look on

21  the envelope and see the date that it was postmarked,

22  but I received it on July 4th.

23       Q.   Okay.  And do you know if you provided that

24  envelope to your attorneys in connection with this case?

25       A.   I don't recall.

1    Q.    Do you still have a copy of that envelope?

2    A.    I don't know.  I -- I can look for it.

3    Q.    I'm just trying to nail down when the notice

4    was actually sent out.  So, I mean, if you are able to

5    look for it -- obviously you don't have to do it now.

6    And I can follow up with your attorneys.  That would be

7    very much appreciated, to the extent we can identify

8    that date.

9    A.    Okay.  Also, you know what, I have an idea.

10   You can call Perla and ask her when it was mailed.  But,

11   also, I will look to see if I still have the envelope.

12   I have -- I had the letter because I provided the letter

13   to them.

14   Q.    All right.

15           MR. DOLLING:  Anna, we'll follow up with

16   an answer to that.

17           MS. MACKIN:  Thank you, Zach.  I

18   appreciate it.

19   Q.    (BY MS. MACKIN)  All right.  I am sharing an

20   exhibit with you.

21   A.    Oh, I have to close this one?  You're finished?

22   Q.    Yes.  No more questions about that one.

23   A.    Okay.

24   Q.    And I've just shared what will be Exhibit 6 to

25   this deposition.

```
 1                  (Exhibit 6 marked)

 2      A.   Okay.  What is this?

 3      Q.   (BY MS. MACKIN)  Do you recognize Exhibit 6?

 4      A.   Yes, I see it.

 5      Q.   And have you seen it before?

 6      A.   I don't -- I don't recall.

 7      Q.   Okay.  Do you recall providing answers to

 8  written discovery questions about this case?

 9      A.   Yes.

10      Q.   And did you do that in consultation with your

11  attorneys?

12      A.   Yes.

13      Q.   And did you review those written answers before

14  your attorneys provided them to me?

15      A.   Yes.

16      Q.   And were those answers true and correct to the

17  best of your knowledge?

18      A.   Yes.

19      Q.   Okay.  That's all I have on that exhibit.

20  Thank you.

21                  All right.  I'm sharing what will be

22  Exhibit 7 to this deposition.

23                  (Exhibit 7 marked)

24      A.   Okay.

25      Q.   (BY MS. MACKIN)  Please let me know when you
```

1    are able to access that document.

2         A.    I opened it.

3         Q.    Do you recognize Exhibit 7?

4         A.    I -- I don't remember.

5         Q.    Does it appear to be a Facebook post that you

6    made on July 4th, 2019?

7         A.    This is about interrogatories, not Facebook.

8         Q.    So Exhibit 7 is not a Facebook post that you

9    made?

10        A.    Let me look and see.  Maybe I clicked on the

11   wrong one.

12        Q.    The file name of the file that I'm looking at

13   is Weisfeld 15.

14        A.    Oh.  Here it is.  Yes, that was me.

15        Q.    Okay.  And do you recall making this Facebook

16   post?

17        A.    Yes, I did.

18        Q.    And here towards the bottom, you state that you

19   yourself have served on many signature verification

20   committees for ballots by mail.  Did I read that

21   correctly?

22        A.    Yes.  I have served on some.  Yes.

23        Q.    Do you remember how many?

24        A.    No.

25        Q.    Do you remember when?

1      A.    No.

2      Q.    And what do you recall about your service on

3  signature verification committees for ballots by mail?

4      A.    That I would do my best to advocate for every

5  ballot to be accepted.

6      Q.    Anything else?

7      A.    No.  We -- we are not specialists.

8      Q.    Do you recall a time when you were serving on a

9  signature verification committee and it appeared to you

10  that two signatures were not executed by the same

11  person?

12      A.    No, not to my recollection.

13      Q.    Okay.  That is all I have on Exhibit 7.

14            I'm going to share with you a document

15  that will be Exhibit 8 to this deposition, and it is

16  Bates numbered Weisfeld 20.

17            (Exhibit 8 marked)

18      A.    Oh, I see what happened.  You see the numbers

19  fall off on the end.  You can't see all of them, but now

20  I see.  Okay.

21      Q.    (BY MS. MACKIN)  On the end of the --

22      A.    Here it is.  It's the -- yes, I see it.

23      Q.    Okay.  And I just want to be clear on the

24  record that what was not clear to you was the name of

25  the PDF file?

1    A.    The number.  The number.

2    **Q.    Which number?**

3    A.    Well, you said 20.  You said 20, and I

4  couldn't -- couldn't see the -- the -- the whole number.

5    **Q.    I see.**

6    A.    Okay.

7    **Q.    So you saw "Weisfeld" and then maybe some zeros**

8  **but not --**

9    A.    Yes, correct.

10    **Q.    Okay.  All right.  Do you recognize Exhibit 8?**

11    A.    Yes.

12    **Q.    And this is a five-page document?**

13    A.    It was the e-mail I sent with the photographs.

14  Okay.

15    **Q.    Does it appear to be five pages long?**

16    A.    Yes, it does.

17    **Q.    And what is -- please describe Exhibit 8.**

18    A.    It is an e-mail that I sent on April 11th to

19  Yesenia Rodriguez.  Oh, it was Yesenia, not Estella.

20  Okay.  And it was -- maybe I talked to Estella another

21  time.  Okay.  So Yesenia.  I said -- it's an e-mail I

22  sent about the packet that arrived -- that I described

23  to you earlier for the City election where the -- the

24  envelopes came sealed and I had to open them.

25    **Q.    And so this was in regards to the City of**

1  McAllen May 2019 general election?

2      A.   Yes.

3      Q.   Okay.

4      A.   And -- and I also provided a photograph of the

5  correct way.  The envelope should have all been open,

6  not closed.

7      Q.   And who is Yesenia Rodriguez?

8      A.   Let me see.  She works for the McAllen City

9  Secretary.

10     Q.   Okay.

11     A.   She's one of the assistants.

12     Q.   And then I see that there are two folks on

13  the --

14     A.   (Reading to self).

15     Q.   I see that there are two folks on the carbon

16  copy line, jswhinojosa@gmail.com.

17     A.   Yes.

18     Q.   Who is -- who is that?

19     A.   My son.  My youngest son.

20     Q.   And why did you copy your youngest son on this

21  e-mail?

22     A.   Because he also applied for a -- for ballots by

23  mail and so I -- I copied him so that he could see what

24  I had submitted.

25     Q.   Gotcha.  And then you've also copied Perla

 1 | Lara.  Is that right?

 2 |     A.    Correct.  Yes.

 3 |     Q.    Okay.  And so you sent this e-mail, it appears,

 4 | on April 11th, 2019, correct?

 5 |     A.    Correct.

 6 |     Q.    Okay.  And why didn't you reach out to Yesenia

 7 | or Perla when you received your notice of rejected

 8 | ballot in June -- well --

 9 |     A.    No.  I received it on July 4th.

10 |     Q.    The notice of rejected ballot dated June 22nd,

11 | 2019, why -- why didn't you reach out to Yesenia or

12 | Perla when you received that notice?

13 |     A.    It was July 4th, and the offices were closed.

14 |     Q.    And why didn't you reach out to anyone at the

15 | City of McAllen Secretary's Office after that?

16 |     A.    I don't know if I -- I don't -- I don't --

17 | well, I don't recall whether I did or I didn't

18 | afterwards, but I -- it -- it was -- it was already

19 | over.  The decision had been made.  The letter had been

20 | received.  The election was over.

21 |     Q.    And so are there any circumstances under which

22 | you would have reached out to Perla or Yesenia or

23 | someone in the City of McAllen Secretary's Office about

24 | the notice of rejected ballot?

25 |     A.    Honestly, I thought I had; but maybe I didn't.

Rosale Weisfeld - 5/13/2020

61

1  I don't recall.  After I -- after I -- after I -- I -- I

2  don't recall.  I don't know.

3      Q.   I just have two more documents, Ms. Weisfeld.

4  I'm going to try to wrap up.

5      A.   Do I close this one?

6      Q.   Yes, ma'am.  We're done with that one.

7           And I am sharing with you what will be

8  Exhibit 9 to this deposition, and it is Bates numbered

9  Weisfeld 25.

10          (Exhibit 9 marked)

11     A.   Okay.

12     Q.   (BY MS. MACKIN)  Please let me know when you

13  are able to pull up that document.

14     A.   Yeah.  The numbers are not coming out.  Let me

15  see.  I think it must be this one because this is the

16  last one you sent.  Okay.  Here it is.

17     Q.   And what does that document appear to be?

18     A.   It's an e-mail that I sent to Justin.

19     Q.   Justin Perez?

20     A.   Yes.

21     Q.   And who is Mr. Perez?

22     A.   He's somebody -- he's someone I know -- he -- I

23  think he works -- hm, I think he works for Celia Israel,

24  State Representative Celia Israel.  She's the chair of

25  the -- of the elections committee.

1      Q.    And why did you reach out to Mr. Perez?

2      A.    He sent me a -- he left me a message, and I --

3  I -- he left me a message.  I think he left me a

4  message, and I replied back to him.

5      Q.    What kind of a message?

6      A.    Just that he was sorry that my ballot was

7  rejected.  That's what I recall.

8      Q.    Was this voicemail, e-mail, Facebook?

9      A.    It was either on Facebook or Messenger, I

10  think.

11     Q.    Okay.

12     A.    I don't recall.  But he saw my -- he -- he read

13  what I wrote and then he communicated with me that --

14  and then I said -- I provided him with the infor --

15  that -- this e-mail and a copy of the notice which was

16  posted on Facebook.

17     Q.    And what -- strike that.

18           I am going to move on to the next

19  document.  You can close out of that one.

20     A.    Okay.

21     Q.    I am sharing with you what will be Exhibit 10

22  to this deposition and is Bates numbered Weisfeld 27.

23           (Exhibit 10 marked)

24     A.    Okay.

25     Q.    (BY MS. MACKIN)  Do you recognize Exhibit 10?

Rosale Weisfeld - 5/13/2020

63

```
1        A.    It's an e-mail I sent to Charlie Bonner.

2        Q.    Who is Charlie Bonner?

3        A.    I knew Charlie from -- I knew Charlie from --

4   from when we were both delegates at the National

5   Convention.

6        Q.    And by National Convention, what do you mean?

7        A.    The National Democratic Convention.

8        Q.    And what does Charlie Bonner do now?

9        A.    I don't remember.

10       Q.    Why was he someone who you chose to reach out

11   to about the rejection of your ballot in this

12   July 5th e-mail?

13       A.    I think because he replied back to me, too.

14       Q.    On Facebook?

15       A.    I think so.  I don't remember exactly, but I

16   think it was Facebook or Messenger.

17       Q.    And is this e-mail -- and this appears to be

18   substantively the same as the e-mail that you sent to

19   Justin Perez.  Is that right?

20       A.    Correct.  Yes, it is.

21       Q.    And why didn't you send a copy of this e-mail

22   to anyone at the City of McAllen Secretary's Office?

23       A.    The only thing I can remember is that after I

24   became a client of the Texas Civil Rights Project they

25   said they would take care of -- they -- they would --
```

64

1  they would represent me and communicate with those --

2  they would communicate as necessary with -- regarding

3  the case, regarding what happened to me.

4      Q.   And when did you become a client of the Texas

5  Civil Rights Project?  I'm just asking you for a date.

6  I'm not asking for the substance of any advice they gave

7  you.

8      A.   It was a few days after this.  It was only a

9  few days later.  I don't recall the exact date.

10     Q.   So it would have been sometime in early July,

11  but you're not sure exactly when?

12     A.   Yes, that is correct.  It was shortly after it

13  was on Facebook.

14     Q.   Okay.  I just have a couple more questions.

15          Do you know Louise Longoria?

16     A.   I don't think so.  Who is that?

17     Q.   These are the individuals who, at least it's my

18  understanding, were on the early voting ballot board

19  that reviewed the ballot -- the mail-in ballots for the

20  City of McAllen 2019 runoff election.

21          What about Ricardo Hinojosa?  Do you

22  know -- do you know that individual?

23     A.   Ricardo Hinojosa -- couldn't have been.

24  Ricardo Hinojosa is a federal judge.  Would he have been

25  on there?

Rosalie Weisfeld - 5/13/2020

65

1    Q.    Other than the federal judge, do you know any

2    other Ricardo Hinojosas?

3    A.    That's such a common, familiar name.

4    Q.    Sure.

5    A.    I'm trying to remember.  I'm -- I'm not sure

6    because I do know another Ricardo Hinojosa, I think, but

7    not someone I know well.

8    Q.    And does he reside in the city of McAllen?

9    A.    I don't know.  I can't remember.  It's just

10   like a common name.

11   Q.    Fair enough.

12         Do you know a woman by the name of Ruth

13   Bostic?

14   A.    I'm sorry, what is the last name?

15   Q.    Bostic, B like boy, o-s-t-i-c.

16   A.    No, not to my recollection.

17   Q.    Do you know a woman by the name of Fran

18   Hartfield?

19   A.    Not to my recollection, no.

20   Q.    Do you know a gentleman by the name of Ron

21   Tomlinson?

22   A.    Tomlison, T-o-m-i-l-s-o-n?

23   Q.    T-o-m-l-i-n-s-o-n.

24   A.    Hm.  That name sounds familiar, but I can't

25   place him.

1  Q.  Okay.  We spoke about two Ricardo Hinojosas you

2  know.  One is a federal judge, and the other is not.  Do

3  you have an opinion of Judge Hinojosa?

4  A.  He's a wonderful person.  He's a good friend.

5  I have the highest respect for him.  He's served our

6  community, and he's just -- I can only say good things

7  about him because there are only good things to say

8  about him.

9  Q.  And how about the other Ricardo Hinojosa?  Do

10  you know that person well enough to have an opinion of

11  them?

12        MR. DOLLING:  Objection, form.

13  A.  No.  I only -- I can't even think of what he

14  looks like.  I only -- the name sounds familiar.

15  Q.  (BY MS. MACKIN)  Okay.

16  A.  Ricardo Hinojosa is a very good friend, a very

17  dear friend.

18  Q.  I have not --

19  A.  Judge Hinojosa.

20  Q.  I have not practiced in front of him, but my

21  colleagues who have have nothing but great things to say

22  as well.

23  A.  Yeah, he's -- as I said, there's only good

24  things to say about him.

25        MS. MACKIN:  All right, Ms. Weisfeld,

Rosale Weisfeld - 5/13/2020

67

1  those are all the questions that I have for you right

2  now.  I'd like to thank you very much for your time and

3  pass --

4                THE WITNESS:  Can I close this?

5                MS. MACKIN:  Yes, ma'am.  I am finished

6  with that exhibit.

7                THE WITNESS:  Okay.

8                MS. MACKIN:  And I -- and I will pass the

9  witness.  Thank you very much.

10                THE WITNESS:  Thank you.

11                MR. TAWIL:  Anna, this is Isaac.  Would it

12  be okay if we take about a ten-minute break and just let

13  me collect my notes?

14                MS. MACKIN:  That's fine by me.

15                THE REPORTER:  We're off the record at

16  4:01 p.m.

17                (Recess taken)

18                THE REPORTER:  We're on the record at

19  4:18 p.m.

20                        EXAMINATION

21      Q.   (BY MR. TAWIL)  Ms. Weisfeld, we're back from a

22  break.  Do you have everything you need to continue?

23      A.   I don't -- I don't have anything, just my --

24      Q.   Water?

25      A.   (Indicating).

1    Q.   Okay.  My name is Isaac Tawil.  I represent

2  Perla Lara in her official capacity as the Secretary of

3  the City of McAllen.  Ms. Weisfeld, we've met before.

4  Is that correct?

5    A.   Yes.

6    Q.   I've never represented you in any lawsuit, have

7  I?

8    A.   No.

9    Q.   We don't have any sort of professional

10  relationship?

11    A.   No.  Only personal.

12    Q.   Okay.  And that was through an affiliation with

13  the Temple Emanuel in McAllen.  Is that correct?

14    A.   Correct.

15    Q.   At one time we were both members there?

16    A.   Yes.

17    Q.   Okay.  Are you still a member of the Temple?

18    A.   No.

19    Q.   Do you know when your membership lapsed?

20    A.   It didn't lapse.  I -- I ended it two years

21  ago, I think.  I don't recall.

22    Q.   Okay.  You mentioned earlier in your

23  testimony -- and I'm sorry for looking down, away from

24  the camera; but I want to look at my notes here.  You

25  mentioned that you had previously served on an SVC, is

69

1  that correct, signature verification committee?

2       A.   Oh.  Yes.  Signature verification committee,

3  correct.

4       Q.   When did you do that?

5       A.   I don't recall exactly when but over a period

6  of the last few years.

7       Q.   And for what entity did you serve on that

8  committee?

9       A.   Democratic Party.

10      Q.   Was that with a county or a city or the state?

11  Who was conducting the election that you served on the

12  committee?

13      A.   It was either for the party for party primary

14  runoffs and general election.  And the -- the signature

15  verification committee met at the county election

16  administration offices.

17      Q.   In what county?

18      A.   Hidalgo County.

19      Q.   How did you get appointed to that committee?

20      A.   I volunteered.

21      Q.   And how did you go about volunteering?

22      A.   I said I was willing to -- I told the -- either

23  the election administrator or the party chair that I

24  would volunteer to serve on a committee.

25      Q.   And you were appointed to the Hidalgo County

1    signature verification committee?

2        A.   Yes.  But we called it the early voting ballot

3    board.

4        Q.   Okay.  So did you serve on an early voting

5    ballot board?

6        A.   Yes.  And the signature verification committee

7    was a component of the early voting ballot board.

8        Q.   Okay.  Did you have to fill out an application

9    to -- to volunteer to do that?

10       A.   No.

11       Q.   Did you -- did you have to receive some form of

12   appointment?

13       A.   Yes.

14       Q.   Do you know who made that appointment?

15       A.   Either the Democratic Party chair -- but it --

16   or the -- probably the Democratic Party chair, but the

17   confirmation came through the county commissioner's

18   court.  It -- so it could have been the county judge or

19   one of the county commissioners.

20       Q.   Okay.  So you -- did you receive some

21   notification from the county court?

22       A.   I received a notification either through the

23   party or the election administrator.

24       Q.   Okay.  And did you serve on the signature

25   verification committee component of the EBBB that you

1  served on, or did you serve on the EBBB?

2      A.   The -- I -- in Hidalgo County, they don't even

3  call it, really, the signature verification committee.

4  They just call it the early voting ballot board, and --

5  and it -- that's really what the early voting ballot

6  board did, was to process the -- the absentee ballots,

7  the ballots by mail, and verify signatures.

8      Q.   **Are you aware that there's a distinction**

9  **between an early voting ballot board and a signature**

10 **verification committee?**

11             MR. DOLLING:  Objection, form.

12     A.   I'm sorry.  I didn't hear what my attorney

13 said.

14             MR. DOLLING:  Oh, I just said -- I just

15 objected, but you can answer the question.

16             THE WITNESS:  Oh.

17     A.   I'm not sure.

18     Q.   **(BY MR. TAWIL)  Okay.  When you served, did you**

19 **receive any training as a volunteer on the committee?**

20     A.   No.

21     Q.   **I had -- and I'm -- I'm going to ask the court**

22 **reporter to help me here.  I'm not sure what exhibit**

23 **number we're on.  But we had shared in the dialogue**

24 **box -- it's a document styled Exhibit 7.  I know it's**

25 **not Exhibit 7 to this deposition, but can you take a**

1  look at that document?

2      A.  Sure.

3          MR. TAWIL:  And I'll ask Ms. Richardson,

4  the court reporter, if she can let us know what exhibit

5  number that will be on this deposition.

6          THE REPORTER:  Yes.  No. 10 [sic].

7          MR. TAWIL:  Thank you.

8      A.  Oh, yes, yes.  I have seen this before.

9      Q.  (BY MR. TAWIL)  Okay.

10     A.  I thought you meant, like, training, like

11 somebody explained things.  Yes.  No -- one --

12     Q.  But this -- this is -- this is a publication

13 that you're familiar with?

14     A.  I haven't seen this one from 2020, but I have

15 seen something similar.

16     Q.  And during the time you would have served on

17 the EBBB for Hidalgo County, is this something you would

18 have had -- the then-current version of this document,

19 is this something that you would have had to rely on

20 in -- in performing your duties as a volunteer on that

21 board?

22     A.  Sometimes.

23     Q.  Okay.  But you've seen it before, nevertheless?

24     A.  Yes, I have seen it before.  It depended on who

25 the -- was conducting the -- who was the judge of the

Rosale Weisfeld - 5/13/2020

73

1  early voting ballot board.  Sometimes they would say,

2  "Oh, here, look at this"; but sometimes they would just

3  have it for themselves.

4       Q.   So it was available to the committee, then?

5       A.   No.

6       Q.   Okay.

7       A.   I wouldn't say that.

8       Q.   But if the judge had it, the judge is a member

9  of the committee, right?

10      A.   Yes.  The judge -- the judge would have it.

11      Q.   Okay.  And the judge is -- is a person who

12 would be different from the election administrator.  Is

13 that correct?

14      A.   Yes.

15      Q.   Okay.  And you've served as an election

16 administrator?

17      A.   Oh, for the -- for the Democratic Party

18 primary, which is not the election administrator for the

19 county.

20      Q.   Okay.  Thank you.  That was a clarification I

21 wanted to make there.

22               In serving on EBBBs or SVCs, were you ever

23 a member of a committee that rejected a ballot?

24      A.   I was a member of the committee, but I didn't

25 necessarily vote to reject a ballot.  The -- they're not

Rosale Weisfeld - 5/13/2020

74

1  all conducted the same way.  Sometimes it's everybody

2  around a table, and everybody votes on that one ballot.

3  And sometimes it's just two people together with the --

4  the judge.

5       Q.   Okay.

6       A.   And my --

7       Q.   **Were you ever in a situation where two people**

8  **together with a judge rejected a ballot?**

9       A.   Not -- I don't recall that I ever rejected a

10 ballot, but I do recall trying to advocate for people

11 whose ballots were being considered for rejection.

12      Q.   **And were any of those ballots ultimately**

13 **rejected that you advocated for?**

14      A.   Yes.

15      Q.   **Do you know why?**

16      A.   One in particular I remember, it was because

17 the envelope -- the -- the back of the envelope was --

18 you know where you have to seal the envelope on the

19 back?  I -- you -- it -- it partially covered the

20 signature, but you could so very clearly see the first

21 name and the second name were exactly the same

22 signature, but they reflected it because they said that

23 the seal covered the -- part of the last name and they

24 rejected it because of that.  And I was very sad because

25 it was a -- a student -- I think -- I think a student

1  from -- from Texas A&M.  I remember that very clearly

2  because I was super sad because I said that -- this

3  person, probably the first time they ever voted because

4  we could see they were either 18 or 19 years old.  It

5  was very sad.

6      Q.   Do you know if anything came of that rejection

7  other than the vote not counting?

8      A.   No, I don't know.  I didn't know the person.  I

9  didn't know who it was.  It was just a -- you could tell

10 from the application that it was a -- someone -- you

11 could see the age and where it was being mailed to.

12     Q.   Okay.  Any other ballots you're aware of that

13 have been rejected on a committee that you served on?

14     A.   I remember ballots being rejected, but I -- I

15 don't remember how many.

16     Q.   More than 5?

17     A.   Yes.

18     Q.   More than 10?

19     A.   Yes.

20     Q.   More than 50?

21     A.   Yes.

22     Q.   Okay.  I don't necessarily need you to refer

23 back to the letters, but did you ever receive a response

24 from your letter of July -- or your e-mail of

25 July 5th to Charlie Bonner?

1      A.   I don't recall.  I don't recall.

2      Q.   **You don't recall?  Did you ever speak with him**

3  **about your e-mail?**

4      A.   I don't remember.  I -- I talked to a lot of

5  people, but I don't remember.  Why?

6      Q.   **Okay.  What about your e-mail to Justin Perez?**

7  **Did you ever receive a response from him?**

8      A.   Yeah, I talked to Justin.  I think I talked

9  to -- or I e-mailed with him.  I communicated with him.

10  I probably communicated with Charlie, too; but I don't

11  remember exactly what happened.

12     Q.   **Okay.  I don't know that I've seen responses to**

13  **your e-mails.  Is that something you could provide to us**

14  **through your lawyers --**

15     A.   I can --

16     Q.   **-- if you received a response in writing?**

17     A.   I can.  Is that okay to ask my attorney?  Is

18  that the right thing to do?  I've never had a deposition

19  before.

20          MR. DOLLING:  Yeah, we'll -- we'll talk

21  about it after; and we'll follow up with you, Isaac.

22          MR. TAWIL:  Thank you.

23     Q.   **(BY MR. TAWIL)  Rosalie, just out of curiosity,**

24  **what percentage of your time do you spend in McAllen**

25  **these days?**

1      A.   I haven't been able to go to McAllen because I

2  was in a serious car accident.  Both vehicles were

3  totaled, and I suffered from a concussion.  I have a

4  traumatic brain injury.  I go to TIRR here in Houston.

5  It's a very well-known hospital.  It's a clinic, and

6  it's for people with traumatic brain injuries.  And I go

7  to speech therapy, occupational therapy, physical

8  therapy.  And I go to Love Your Brain for -- also.

9      Q.   **Okay.**

10      A.   I have not been able to go home.  I have had to

11  cancel probably ten airplane tickets so far since the

12  accident because I have to go -- I have to go to -- to

13  therapy.

14      Q.   **And prior to the accident, how much time were**

15  **you spending in McAllen?**

16      A.   I would be home a lot.

17      Q.   **Can you quantify a lot?**

18      A.   A couple of -- a week or so every month or

19  sometimes two weeks, I would be at home.  All my clothes

20  are still hanging in my closet.  My shoes are there.

21  Everything is there.  All my plates and all my --

22  everything's there.  I -- I've been wanting to go home

23  so many times, and the doctor said I can't go home.

24  They -- now the doctor said I could go home, but now I

25  can't go home because of Corona Virus.

1      Q.    You've been in Houston?

2      A.    Yes.  I can't drive.

3      Q.    I see.  Have you ever been paid by a political

4  candidate?

5      A.    Yes.

6      Q.    And why were you paid by a political candidate?

7      A.    I worked as -- with him as a consultant or a

8  campaign manager.

9      Q.    And how many campaigns would you say you worked

10  on professionally where you were paid?

11     A.    I don't know exactly.

12     Q.    Could you estimate?  Has it been a hundred,

13  200, 50?

14     A.    No.  No.  Campaigns for candidates?

15     Q.    Yes.

16     A.    In my whole life?

17     Q.    Yes.

18     A.    Oh, I would say over the last 45 years, I

19  probably worked for maybe 20 candidates or so.

20     Q.    And who are the ten most recent?

21     A.    Oh, I don't know.  Paul Sadler and Gary

22  Gurwitz.  Gary -- I was Gary's campaign manager when he

23  ran for South Texas Independent School Board -- no, no.

24  That wasn't it.  It was for South Texas College?  Yeah,

25  South Texas College.  Paul Sadler when he ran for US

1  Senate.  Hillary Clinton.  Oh, dear.  Can I -- can I --

2  I can't remember right now.  I worked for Ann Richards.

3  I worked for Jim Mattox.  I worked for --

4      **Q.   Have you worked for anybody in Houston?**

5      A.   Ramon Garcia.

6            No, not anybody in Houston.

7      **Q.   San Antonio?**

8      A.   No.  When I worked for statewide candidates, I

9  work -- primarily focused on South Texas but, like,

10 sometimes for the whole state.  Oh, I worked for

11 Gilberto Hinojosa.  I worked for --

12     **Q.   And as -- as campaign managers for -- I'm**

13 **sorry --**

14            THE REPORTER:  Please repeat the answer.

15     A.   I was trying to remember.

16     **Q.   (BY MR. TAWIL)  That's okay.  Who -- who was**

17 **the last person you mentioned?  I don't think the court**

18 **reporter heard you because I interrupted.**

19     A.   Bobby Guerra.

20     **Q.   Was that for his most recent election?**

21     A.   No.

22     **Q.   Okay.  And when you say Bobby Guerra, you're**

23 **referring to the -- the senator -- state senator for --**

24 **for McAllen?**

25     A.   No.  He's a state representative, but it was

 1  when he was -- it was when he was Democratic Party

 2  chair.

 3      **Q.   Okay.  As campaign manager for these**

 4  **candidates, what were your duties and responsibilities?**

 5      A.   I wasn't always campaign manager.  Sometimes I

 6  was -- I was campaign manager for Gary.  For Paul, I --

 7  I -- I was -- I was the person that traveled with him

 8  and worked -- set his schedule and helped him to meet

 9  people and to -- made appointments for all the -- well,

10  the media outlets for him to have editorial board

11  meetings.  I -- for Gilberto, I also worked as his

12  scheduler and set appointments and helped them.

13            Primarily I'm a connector, and I'm the

14  person who helps the candidates to -- to meet people

15  they would need to -- to know to assist them with their

16  campaign.  Also, I would advise them on their campaign

17  logos and their messages and even colors for their

18  campaign literature.  I would -- does that help?

19      **Q.   Yes.  Thank you.**

20            MR. TAWIL:  Okay.  Rosalie, that's all the

21  questions I have right now.  So I'm going to pass you as

22  a witness.

23            THE REPORTER:  Mr. Tawil, I gave you the

24  wrong number.  We already had a 10.  So we'll call your

25  exhibit No. 11.

1              MR. TAWIL:  That's okay with me.  Thank

2  you.

3              (Exhibit 11 marked)

4              MR. MAGEE:  I will reserve my questions

5  until the time of trial.  This is Eric Magee on behalf

6  of Trudy Hancock.

7              THE REPORTER:  Anyone else?

8              MS. MACKIN:  Not for me.

9              MR. DOLLING:  I just have one follow-up

10 question, Rosalie.

11                     EXAMINATION

12      Q.   (BY MR. DOLLING)  If you could reopen -- I

13 believe it was Exhibit 11, which was the 2020 Handbook

14 for Election Judges and Clerks.

15      A.   Okay.

16      Q.   I just wanted to confirm with you that this is

17 not the handbook that you used whenever you were serving

18 on a EBBB and SVC.

19      A.   It is not the handbook that I used.  I've never

20 seen this one before.

21      Q.   And you don't know what differences there are

22 between the handbook that you used and this one?

23      A.   I do not know the differences.  That is

24 correct.

25              MR. DOLLING:  Okay.  That's all the

Rosale Weisfeld - 5/13/2020

82

1  follow-up questions we have.  Thank you.

2          THE REPORTER:  Okay.  Who will need orders

3  of the transcript?

4          MR. TAWIL:  I will.

5          THE REPORTER:  Okay.  And Ms. Mackin gets

6  original.

7          MR. DOLLING:  We will need one as well,

8  please.

9          THE REPORTER:  Okay.  Any other

10  stipulations for the record?

11          MS. MACKIN:  I don't think so.  And

12  e-trans is fine.

13          THE REPORTER:  Okay.

14          MR. MAGEE:  And I'll get back to you.  I'm

15  going to visit with my client.  I don't know if I

16  necessarily need one.  Thank you.

17          THE REPORTER:  All right.

18          MR. DOLLING:  We'll need to read and sign.

19          THE REPORTER:  Read and sign.  Okay.  Off

20  the record at 4:40 p.m.

21          (Deposition concluded at 4:40 p.m.)

22

23

24

25

1                     CHANGES AND SIGNATURE

2    PAGE LINE  CHANGE                    REASON

3    _____

4    _____

5    _____

6    _____

7    _____

8    _____

9    _____

10   _____

11   _____

12   _____

13   _____

14   _____

15   _____

16   _____

17   _____

18   _____

19   _____

20   _____

21   _____

22   _____

23   _____

24   _____

25   _____

      I declare under penalty of perjury that the
foregoing is true and correct.


                        _____

                        ROSALIE WEISFELD



      SUBSCRIBED AND SWORN TO BEFORE ME, the undersigned
authority, by the witness, ROSALIE WEISFELD, on this the
_____ day of _____, _____.


                        _____

                        NOTARY PUBLIC IN AND FOR

                        THE STATE OF _____


My Commission Expires: _____

```
 1  STATE OF TEXAS
    COUNTY OF MONTGOMERY
 2                  REPORTER'S CERTIFICATE

 3      I, Dana Richardson, a Certified Shorthand Reporter

 4  in and for the State of Texas, do certify that this

 5  deposition transcript is a true record of the testimony

 6  given by the witness named herein, after said witness

 7  was duly sworn by me.  The witness was requested to

 8  review the deposition.

 9      I further certify that I am neither attorney or

10  counsel for, related to, nor employed by any parties to

11  the action in which this testimony is taken and,

12  further, that I am not a relative or employee of any

13  counsel employed by the parties hereto or financially

14  interested in the action.

15      I further certify that the amount of time used by
    each party at the deposition is as follows:
16
            Ms. Anna Mackin - 01:41
17          Mr. Isaac Tawil - 00:20
            Mr. Zachary D. Dolling - 00:01
18
        SUBSCRIBED AND SWORN TO under my hand and seal of
19  office on this the 26th day of May, 2020.

20  _____
    Dana Richardson, RPR, TX CSR 5386
21  Expiration:  01/31/22
    Integrity Legal Support Solutions
22  Firm Registration No. 528
    PO Box 245
23  Manchaca, Texas 78652
    (512) 320-8690
24  (512) 320-8692 (fax)

25
```

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| DR. GEORGE RICHARDSON, ROSALIE WEISFELD, AUSTIN JUSTICE COALITION, COALITION OF TEXANS WITH DISABILITIES, MOVE TEXAS CIVIC FUND, LEAGUE OF WOMEN VOTERS OF TEXAS, and AMERICAN GI FORUM OF TEXAS, INC., | § § § § § § § § | |
| *Plaintiffs,* | § § § | |
| v. | § § | No. 5:19-cv-00963 |
| TEXAS SECRETARY OF STATE, TRUDY HANCOCK, IN HER OFFICIAL CAPACITY AS BRAZOS COUNTY ELECTIONS ADMINISTRATOR, AND PERLA LARA IN HER OFFICIAL CAPACITY AS CITY OF MCALLEN, TEXAS SECRETARY, | § § § § § § § | |
| *Defendants.* | § | |

**DEFENDANT SECRETARY OF STATE'S FIRST AMENDED NOTICE OF ORAL
DEPOSITION OF ROSALIE WEISFELD**

TO:   Rosalie Weisfeld, by and through her attorneys of record, Hani Mirza, Zachary D. Dolling, Beth Stevens and Ryan Cox, Texas Civil Rights Project, 1405 Montopolis Drive, Austin, Texas 78741; and Joanna Suriani, Willkie Farr & Gallagher LLP, 1875 K Street, N.W., Washington, DC 20006.

Defendant Texas Secretary of State hereby notices the deposition upon oral examination of Rosalie Weisfeld beginning at **2:00 PM** on **May 13, 2020** and continuing from day to day until complete. The deposition will be held virtually via Zoom videoconference and will be transcribed and videotaped by a certified court reporter designated by Defendant. Defendant reserves the right to use the deposition

1



Exhibit
Rosalie Weisfeld

1

5/13/20  DR

for any purpose permitted under the Federal Rules of Civil Procedure or Federal Rules of Evidence.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

RYAN L. BANGERT
Deputy First Assistant Attorney General

DARREN L. MCCARTY
Deputy Attorney General for Civil Litigation

THOMAS A. ALBRIGHT
Chief for General Litigation Division

*/s/ Anne Marie Mackin*
ANNE MARIE MACKIN
Texas Bar No. 24078898
Assistant Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2798 | FAX: (512) 320-0667
anna.mackin@oag.texas.gov

**ATTORNEYS FOR DEFENDANT
TEXAS SECRETARY OF STATE**

2

## CERTIFICATE OF SERVICE

I certify that that on May 6, 2020 this notice was served upon counsel listed below via email.

**Hani Mirza**
hani@texascivilrightsproject.org

**Zachary D. Dolling**
zachary@texascivilrightsproject.org

**Rebecca Harrison Stevens**
beth@texascivilrightsproject.org

**Ryan V. Cox**
ryan@texascivilrightsproject.org

**Samuel Kalar**
skalar@willkie.com

**Joanna Suriani**
jsuriani@willkie.com

**Eric Magee**
e.magee@allison-bass.com

**Isaac J. Tawil**
itawil@mcallen.net

**Austin Stevenson**
astevenson@mcallen.net

**C. Robert Heath**
bheath@bickerstaff.com

**Gunnar P. Seaquist**
gseaquist@bickerstaff.com

*/s/ Anne Marie Mackin*
ANNE MARIE MACKIN
Assistant Attorney General

3

DO NOT REMOVE PERFORATED TABS. Moisten here and fold bottom to top to seal.     DO NOT REMOVE PERFORATED TABS. Moisten here and fold bottom to top to seal.     **5**

J054678350

## Application for Ballot by Mail

Prescribed by the Office of the Secretary of State of Texas
A5-15 12/17

For Official Use Only
VUID #, County Election Precinct #,
Statement of Residence, etc.

**1. Last Name (Please print information)**
Weisfeld

**Suffix (Jr., Sr., III, etc)**

**First Name**
Rosalie

**Middle Initial**

**2. Residence Address:** See back of this application for instructions.
480 North 16 Street

**City**
McAllen

**,TX**

**ZIP Code**
78504

**3. Mail my ballot to:** If mailing address differs from residence address, please complete Box # 7.
9206 Cliftwood Drive

**City**
Houston

**State**
TX

**ZIP Code**
77096

**4. Date of Birth (mm/dd/yyyy) (Optional)**
06 16 1956

**Contact information (Optional)***
Please list phone number and/or email address:
* Used in case our office has questions.
956.793.5814
rosalie weisfeld @ gmail.com

**5. Reason for Voting by Mail:**
☐ 65 years of age or older. (Complete Box #5a)
☐ Disability. (Complete Box #5a)
☑ Expected absence from the county. (Complete Box #5b and Box #8)
  You will receive a ballot for the upcoming election only.
☐ Confinement in jail. (Complete Box #5b)
  You will receive a ballot for the upcoming election only.

**7.** If you are requesting this ballot be mailed to a different address (other than residence), indicate where the ballot will be mailed. See reverse for instructions.
☐ Mailing Address as listed on my voter registration certificate
☐ Nursing home, assisted living facility, or long term care facility
☐ Hospital
☐ Retirement Center
☐ Address of the jail
☐ Relative: relationship _____
☑ Address outside the county (see Box #8)

**6a. ONLY Voters 65 Years of Age or Older or Voters with a Disability:**
If applying for one election, select appropriate box.
If applying once for elections in the calendar year, select "Annual Application."
☐ Annual Application

**Uniform and Other Elections:**
☐ May Election
☐ November Election
☐ Other _____

**Primary Elections:**
You must declare one political party to vote in a primary.
☐ Democratic Primary
☐ Republican Primary
☐ Any Resulting Runoff

**8.** If you selected "expected absence from the county," see reverse for instructions.
04 01 2019 — 05 10 2019
Date you can begin to receive mail at this address   Date of return to residence address

**9.** Voters may submit a completed, signed, and scanned application to the Early Voting Clerk at:
_____ _____
(early voting clerk's e-mail address)   (early voting clerk's fax)
NOTE: If you fax or e-mail this form, please be aware that you must also mail the form to the early voting clerk within four business days. See "Submitting Application" on the back of this form for additional information.

**6b. ONLY Voters Absent from County or Voters Confined in Jail:**
You may only apply for a ballot by mail for one election, and any resulting runoff.
Please select the appropriate box.

**Uniform and Other Elections:**
☑ May Election
☐ November Election
☐ Other _____

**Primary Elections:**
You must declare one political party to vote in a primary.
☐ Democratic Primary
☐ Republican Primary
☑ Any Resulting Runoff

**10.** "I certify that the information given in this application is true, and I understand that giving false information in this application is a crime."

➡ X Rosalie Weisfeld     Date 3/27/2019

**SIGN HERE**
If applicant is unable to sign or make a mark in the presence of a witness, the witness shall complete Box #11.

If someone helped you to complete this form or mails the form for you, then that person must complete the sections below.

**11.** See back for Witness and Assistant definitions.
If applicant is unable to mark Box #10 and you are acting as a Witness to that fact, please check this box and sign below. ☐
If you assisted the applicant in completing this application in the applicant's presence or e-mailed/mailed or faxed the application on behalf of the applicant, please check this box as an Assistant and sign below. ☐
★ If you are acting as Witness and Assistant, please check both boxes. Failure to complete this information is a Class A misdemeanor if signature was witnessed or applicant was assisted in completing the application.

X _____
Signature of Witness/Assistant

X _____
Printed Name of Witness/Assistant

**Street Address**     **Apt Number (if applicable)**     **City**

**Witness' Relationship to Applicant**
(Refer to instructions on back for clarification)

**State**     **ZIP Code**

**Exhibit Rosalie Weisfeld 2**
5/13/20 DR

Este formulario está disponible en Español. Para conseguir la versión en Español favor de llamar sin cargo al 1.800.252.8683 a la oficina del Secretario de Estado o la Secretaria de Votación por Adelantado.

**Weisfeld, Rosalie**
**VUID# 1054678350 SMD 5**
**June 22, 2019**
**Run-Off Election**

City Secretary's Office
Received
Date 6/3/19

OFFICIAL ELECTION MAIL
Authorized by the U.S. Postal Service

**WARNING:** (1) Knowingly possessing another person's ballot or carrier envelope may be a crime unless you provide your signature, printed name and address (2) A person commits an offense if the person compensates another person or receives compensation for depositing a carrier envelope in the mail as part of a scheme in which the person is compensated based on the number of carrier envelopes deposited. For additional information on offenses related to carrier envelopes, please see the "Information About Returning your Carrier Envelope," included with the materials sent to you with your ballot.

**ADVERTENCIA:** (1) El acto de poseer conscientemente la boleta o el sobre de envío de otra persona puede ser un delito a menos de que usted proporcione su firma, nombre impreso, y su dirección. (2) Una persona comete un delito si recompensa o recibe compensación a cambio de depositar el sobre de envío en el correo como parte de un plan en el cual la persona es recompensada en base al número de sobres de envío depositados. Para obtener información adicional sobre los delitos relacionados con los sobres de envío, por favor vea la "Información Sobre Cómo Devolver su Sobre de Envío," incluido con los materiales enviados a usted con su boleta.

**CARRIER ENVELOPE FOR EARLY VOTING BALLOT**
*(SOBRE DE ENVÍO PARA LA BOLETA DE VOTACIÓN ANTICIPADA)*

**TO (A):**

**Perla Lara, City Secretary**
Early Voting Clerk *(Secretario de Votación Anticipada)*

**P.O. Box 220/1300 Houston Ave**
Mailing Address *(Dirección Postal)*

**McAllen** , Texas **78505-0220**
City *(Ciudad)*  Zip *(Código Postal)*

5-22 – Prescribed by Secretary of State – 12/17
Section 86.013, Texas Election Code 173704

78505$9999

Exhibit
Rosalie Weisfeld

3

5/13/20 DR

exhibitsticker.com

**Instructions:** This envelope must be sealed and signed by the voter before it leaves the voter's hands. Do not sign this envelope unless the ballot has been marked by you or at your direction. This envelope may not be used to return more than one voter's ballot. For instructions on the methods and deadlines to deliver this carrier envelope, see the "Information About Returning your Carrier Envelope," included with the materials sent to you with your ballot. (Instrucciones al Votante: Selle este sobre y después firme su nombre en el espacio proporcionado abajo. Este sobre debe de ser sellado y firmado por el votante antes de que el votante lo entregue. No firme este sobre a menos de que la boleta haya sido llenada por usted o bajo su dirección. Este sobre de envío no debe ser utilizado para entregar la boleta de más de un solo votante. Para obtener instrucciones sobre los métodos y plazos para entregar este sobre de envío, vea la "Información Sobre Cómo Devolver su Sobre de Envío," incluido con los materiales enviados a usted con su boleta.

I certify that the enclosed ballot expresses my wishes independent of any dictation or undue persuasion by any person. (Certifico que la boleta adjunta expresa mis deseos independientemente de ningún dictado o persuasión indebida por parte de cualquier persona.)

SEAL ENVELOPE AND SIGN OVER SEALED FLAP
(SELLE EL SOBRE Y FIRME ENCIMA DE SOLAPA DEL SOBRE)

X _Rosalie Weisfeld_

SIGNATURE OR MARK OF VOTER (FIRMA O MARCA DEL VOTANTE)

**Instructions to Assistant:** A voter may only be assisted with reading or marking the ballot if they have a physical disability that renders them unable to write or see, or have an inability to read the language in which the ballot is written. If you are assisting the voter, you must read the oath and complete the section below, before assisting the voter. (Instrucciones al Asistente: Un votante puede recibir ayuda para leer o marcar la boleta solamente si el votante tiene una discapacidad física la cual le impide escribir o ver, o si no tiene la habilidad de leer el lenguaje en el cual la boleta está escrita. Si usted le proporcionará ayuda a un votante, usted debe leer el juramento y llenar la siguiente sección abajo, antes de asistir al votante.)

**Oath of Person Assisting Voter:** I swear (or affirm) that I will not suggest, by word, sign, or gesture, how the voter should vote; I will confine my assistance to answering the voter's questions, to stating propositions on the ballot, and to naming candidates and, if listed, their political parties; I will prepare the voter's ballot as the voter directs; and I am not the voter's employer, an agent of the voter's employer, or an officer or agent of a labor union to which the voter belongs. (Juramento de la Persona Asistiendo al Votante: Juro (o afirmo) que no sugeriré con palabras, señales, o gestos, la manera en la cual el votante debe votar; limitaré mi asistencia a responder las preguntas del votante, leer propuestas en la boleta, nombrar a los candidatos, y si es mencionado, su partido político; preparará la boleta del votante de acuerdo a sus instrucciones; y yo no soy el empleador del votante, un agente del empleador del votante, o un oficial o agente de un sindicato al cual el votante pertenece.)

**Instructions to Witness:** You are serving as a witness for _____ (name of voter). You must complete the section below if you witness the mark of the voter, or if the voter cannot make a mark, check here _____. (Instrucciones al Testigo: Usted está fungiendo como testigo para el _____ (nombre del votante). Usted debe llenar la siguiente sección abajo si usted fue testigo de que el votante firmo, o de que el votante no puede firmar. Si el votante no puede firmar, marque sus iniciales aquí _____.)

**Instructions to Person Depositing Carrier Envelope in Mail or to Common or Contract Carrier:** If you are assisting a voter by depositing the carrier envelope in the mail or with a common or contract carrier, you must complete the section below. (Instrucciones a la Persona Quien Deposita el Sobre de Envío en el Correo o Entregue al Transportista Público o Comercial: Si usted asistirá al votante a depositar el sobre de envío en el correo o con un transportista público o comercial, usted debe llenar la sección que aparece abajo.)

If you are an assistant or witness, check the appropriate box below and provide information: (Si usted es un asistente o testigo, marque la casilla correcta y proporcione su información):

| | | | |
|---|---|---|---|
| ☐ Assistant/ Asistente | | | |
| ☐ Witness/ Testigo | Signature (Firma) | Printed Name (Nombre impreso) | Street Address (Domicilio residencial) |
| ☐ Assistant/ Asistente | | | |
| ☐ Witness/ Testigo | Signature (Firma) | Printed Name (Nombre impreso) | Street Address (Domicilio residencial) |

Completed by Early Voting Clerk: Name of Election (Nombre de Elección): **Run-Off Election)**

Name of Voter (Nombre del votante): _Rosalie Weisfeld_                Date of Election (Fecha de Elección): 5.22 2019

AWS-62
Prescribed by Secretary of State
Sec. 87.0431, Texas Election Code
3/07

## NOTICE OF REJECTED BALLOT

This is to serve as notice that your ballot for the ___**June 22, 2019**___ Election was rejected by the early voting ballot board and was not counted.

Name of Voter __Weisfeld, Rosalie__

VUID Number __1054678350__ .

Reason for Rejection: (Check As Appropriate)

1) Certificate on carrier envelope was not properly executed.
   ____ You failed to sign your signature or make your mark.
   ____ The witness failed to indicate on the envelope that you could not make a mark.
   ____ The assistant or witness failed to print their name.
   ____ The assistant or witness failed to sign their name.
   ____ The residence address of the assistant or witness was not given.

✓ 2) It was determined that the signature on the application for ballot by mail and carrier envelope was not signed by the same person.

3) Application for ballot by mail did not state a legal ground for voting by mail.

4) Voter registration records indicated you did not have an effective registration for this election.

5) Address to which ballot was mailed was not outside the county. Voting early by mail due to expected absence from the county requires balloting materials be mailed to an address outside the county.

6) The residence address on the statement of residence is not located in the political subdivision conducting the election.

7) The mailing address on the application for ballot by mail did not match your voter registration address nor did the mailing address match any addresses provided on your statement of residence. Since you did not indicate on your application for a ballot by mail that you were having your ballot mailed to a hospital, retirement center, long term care facility, nursing home, jail, or a relative, your ballot was rejected.

8) The statement of residence was not included in the carrier envelope.

9) No identification was included with your mail ballot.

10) Other:

Signature of Early Voting Ballot Board Judge

__June 22, 2019__
Date

**Weisfeld, Rosalie**
**9206 Cliffwood Drive**
**Houston TX 77096**

Exhibit
Rosalie Weisfeld
4
5/13/20 DR
exhibitsticker.com

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| DR. GEORGE RICHARDSON, ROSALIE WEISFELD, AUSTIN JUSTICE COALITION, COALITION OF TEXANS WITH DISABILITIES, MOVE TEXAS CIVIC FUND, LEAGUE OF WOMEN VOTERS OF TEXAS, and AMERICAN GI FORUM OF TEXAS, INC., | § § § § § § § § | |
| *Plaintiffs* | § § | |
| v. | § § | Civil Case No. 5:19-cv-00963 |
| TEXAS SECRETARY OF STATE, TRUDY HANCOCK, in her official capacity as BRAZOS COUNTY ELECTIONS ADMINISTRATOR, and PERLA LARA in her official capacity as CITY OF MCALLEN, TEXAS SECRETARY, | § § § § § § § | |
| *Defendants*. | § § | |

### PLAINTIFFS' ORIGINAL COMPLAINT

Plaintiffs, Dr. George Richardson, Rosalie Weisfeld, Austin Justice Coalition, Coalition of Texans with Disabilities, MOVE Texas Civic Fund, League of Women Voters of Texas, and American GI Forum of Texas, Inc., file this Original Complaint seeking declaratory and injunctive relief pursuant to 42 U.S.C. § 1983 and the United States Constitution. Plaintiff Coalition of Texans with Disabilities additionally seeks declaratory and injunctive relief pursuant to Title II of the Americans with Disabilities Act and the Rehabilitation Act of 1973.

### I.
### THE NATURE OF THE CASE

1.      The right to vote is a precious and fundamental political right that is preservative of all other rights. By definition, it includes the right of qualified voters within a state to cast their



Exhibit
Rosalie Weisfeld

**5**

5/13/20 DR

ballots and have them counted. But Texas unlawfully rejects the duly signed mail-in ballots of thousands of eligible voters every major election. Indeed, Texas counties rejected at least 1,873 mail-in ballots during the 2018 General Election and at least 1,567 mail-in ballots during the 2016 General Election solely on the basis of mismatching signatures. *See* Ex. A.

2.     Texas offers the opportunity to vote by mail to voters who are outside of their county during elections, voters with disabilities, voters 65 years-of-age or older, and voters confined in jail but otherwise eligible to vote.[1] Even though Texas' mail-in ballot process should make voting easier for voters from these underrepresented groups, the current flawed process leads to the unlawful disenfranchisement of these Texas voters. Specifically, current rules authorize untrained local election officials to arbitrarily and subjectively reject mail-in ballots if officials believe, based on their own layman analysis, that the signature on a ballot is not in fact the voter's signature. No advance notice is given to voters before their vote is rejected, and the decision to reject a mail-in ballot is final.

3.     For example, during the 2018 General Election, Brazos County rejected the mail-in ballot of Plaintiff Dr. George Richardson—a doctor whose signature has been used to prescribe countless medications—on the basis of a signature mismatch. The county gave him no notice of its decision until after the election, notwithstanding the fact that Dr. Richardson would have confirmed that it was his signature on the mail-in ballot if so asked. When Dr. Richardson confronted Brazos County officials, they told him that they had "eye-balled" his signature to determine it was not his.

---

[1] "A qualified voter is eligible for early voting by mail if, at the time the voter's early voting ballot application is submitted, the voter is confined in jail:
   (1) serving a misdemeanor sentence for a term that ends on or after election day;
   (2) pending trial after denial of bail;
   (3) without bail pending an appeal of a felony conviction;  or
   (4) pending trial or appeal on a bailable offense for which release on bail before election day is unlikely."
Tex. Elec. Code § 82.004(a)

4.     Similarly, during a city run-off election in 2019, the City of McAllen rejected Plaintiff Rosalie Weisfeld's mail-in ballot on the same basis. To her recollection, Ms. Weisfeld has voted in every primary, city, bond, constitutional, school district, county, runoff, water district, and general election for the last 30 years. Ms. Weisfeld would have confirmed that the signature was hers had she been asked. Yet, the City of McAllen gave her no notice of the rejection until after the election.

5.     Because Texas' mail-in ballot process fails to provide uniform standards for signature comparison, deprives voters of the ability to cure ballots questioned for an alleged signature mismatch, and fails to require meaningful pre-rejection notice to voters with ballots questioned for an alleged signature mismatch, the mail-in ballot process violates both the Equal Protection Clause and the Due Process Clause of the Fourteenth Amendment to the United States Constitution on its face and as applied to all Plaintiffs, including Dr. Richardson and Ms. Weisfeld. U.S. CONST. amend. XIV, § 1.

6.     For these same reasons, Texas' mail-in ballot process also violates Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12131, *et seq.*, and the Rehabilitation Act of 1973 (RA), 29 U.S.C. § 794.3, with respect to voters who cannot sign matching or sufficiently similar signatures due to a disability. Defendants' refusal to reasonably accommodate this group of mail-in ballot voters with disabilities—either by allowing them to contest and cure a ballot rejected for signature mismatch or by not applying the signature comparison requirements to their ballots—discriminates against said voters and excludes them from participation in and unfairly denies them the benefits of the mail-in ballot process.

7.     Plaintiffs, therefore, respectfully request this court enter a declaratory judgment invalidating Texas' signature comparison procedure, as laid out in Texas Election Code §§

87.041(b)(2), (e), and (f), for violating the United States Constitution, the ADA, and the RA. Plaintiffs further request a permanent injunction enjoining Defendants from implementing Texas Election Code §§ 87.041(b)(2), (e), and (f) or, in the alternative, requiring that Defendants (1) provide voters meaningful notice prior to the rejection of a mail-in ballot and (2) offer voters the ability to cure a mail-in ballot questioned for an alleged signature mismatch.

## II.
## JURISDICTION AND VENUE

8.     This is a civil and constitutional rights action arising under 42 U.S.C. § 1983, the Fourteenth Amendment to the United States Constitution, Title II of the ADA, and the RA. This Court has jurisdiction over these claims under 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

9.     Venue in this Court is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district, and because Defendant Secretary of State conducts business in this district.

## III.
## PARTIES

### Individual Plaintiffs

10.     Plaintiff Dr. George Richardson is an individual voter who was improperly and unconstitutionally disenfranchised in the 2018 General Election. Dr. Richardson applied for a mail-in ballot for the 2018 General Election in Brazos County due to his eligibility as a voter over 65 years-of-age. After applying for a mail-in ballot, Dr. Richardson properly signed and timely mailed his ballot in compliance with the Texas Election Code. After the election, he received a letter from Brazos County notifying him that his ballot was rejected because of a signature mismatch. Dr. Richardson confronted county election officials who explained that the panel "eye-balls" the signatures, had determined his signature was not actually his, and that their decision was

final. Dr. Richardson is a physician who has signed hundreds of prescriptions every year for 41 years and has never had his signature questioned by a pharmacist. Had Brazos County notified Dr. Richardson during the election that county election officials questioned the signature on his ballot, Dr. Richardson would have confirmed that the signature on his ballot was, in fact, his own. Dr. Richardson wishes, intends, and plans to continue casting a mail-in ballot but, in order to avoid future disenfranchisement, will only do so when the county either stops rejecting mail-in ballots based on an alleged signature mismatch or provides voters, at the very least, a pre-rejection notice and the ability to cure mail-in ballots questioned for an alleged signature mismatch.

11.     Plaintiff Rosalie Weisfeld is an individual voter who was improperly and unconstitutionally disenfranchised in the 2019 McAllen, Texas city run-off election. Ms. Weisfeld applied for a mail-in ballot for the June 22, 2019 McAllen, Texas city run-off election because she had to be out of the county during the early voting period and on Election Day. After applying for a mail-in ballot, Ms. Weisfeld properly signed and timely mailed her ballot in compliance with the Texas Election Code. About ten days after the election, she received a letter from the City of McAllen, mailed to her out-of-town address where she was no longer staying, notifying her that her ballot was rejected because of an alleged signature mismatch. Had the City of McAllen notified Ms. Weisfeld during the election that city election officials questioned the signature on her ballot envelope, Ms. Weisfeld would have confirmed that the signatures on the application and envelope were both, in fact, her own. Ms. Weisfeld votes regularly. To her recollection, Ms. Weisfeld has voted in every primary, city, bond, constitutional, school district, county, runoff, water district, and general election for at least the last 30 years, and she plans to vote in every single upcoming election for which she is eligible to vote. Ms. Weisfeld regularly has professional and family obligations that require her to be out of her county of residence, requiring her to vote by mail on

many occasions in the past, and she intends to vote by mail in the future when such obligations prevent her from voting in person.

<div align="center">Austin Justice Coalition</div>

12.     Plaintiff Austin Justice Coalition (AJC) sues Defendants on its own behalf. AJC is a non-partisan, non-profit organization dedicated to "providing the tools for people of color and people who are marginalized to improve their lives by being the driving force behind their own liberation." As part of this mission, AJC operates #ProjectOrange, a coordinated campaign to enter the Travis County Jail, register eligible voters, and provide support to them in requesting and submitting mail-in ballots. AJC's #ProjectOrange mission is to ensure that eligible voters—those who have not been finally convicted of a felony or, if they have been convicted of a felony in the past, are "off paper"—are able to vote, despite their present confinement in county jails.

13.     Among other services, AJC, through its staff and volunteers, helps inmate voters fill out the mail-in ballot application section by section and instructs each inmate voter to write out their signature neatly. AJC works with the Travis County Jail and the Travis County Elections Department to ensure applications are received on time by the Elections Department, mail-in ballots are received by the inmate voters, and completed mail-in ballots are received by the Elections Department on time. While inmate voters fill their mail-in ballots, AJC, through its staff and volunteers, instructs each inmate voter to neatly write out the signature across the flap of the carrier envelope.

14.     AJC's mission is significantly frustrated by the current state laws and policies that result in the improper rejection of incarcerated voters' mail-in ballots. Because of Defendants' unlawful signature comparison procedure, each signed ballot improperly and arbitrarily rejected for an alleged signature mismatch undermines the efficacy of AJC's #ProjectOrange campaign.

<div align="center">6</div>

Moreover, AJC must expend additional resources, such as staff and volunteer time and resources instructing inmate voters to write out signatures neatly, when providing support to inmate voters with mail-in ballot applications and mail-in ballots due to the risk of arbitrary and unconstitutional rejection based on an alleged signature mismatch. The resources diverted for these purposes are transferred away from AJC's other voting-related activities.

<u>Coalition of Texans with Disabilities</u>

15.    Plaintiff Coalition of Texans with Disabilities (CTD) sues Defendants on its own behalf and on behalf of its members who use the mail-in ballot process based on their eligibility due to disability. These members are qualified individuals with a disability for purposes of the ADA and the RA.

16.    The interests at stake in this lawsuit are germane to CTD's purpose. CTD is a non-partisan, non-profit membership organization that works to ensure that people with disabilities may "live, work, learn, play, and participate fully in the community of their choice." CTD organizes events on subjects such as accessible voting, civil rights, and new state level initiatives with the potential to affect the disability community.

17.    CTD expends resources by informing voters statewide about their ability to cast a mail-in ballot, explains the rules and deadlines related to mail-in ballots, and encourages voters who are eligible to utilize mail-in ballots if they cannot vote in-person.

18.    CTD's mission is significantly frustrated by the current state laws and policies that result in the improper rejection of disabled voters' mail-in ballots. Many of the people CTD serves are especially likely to have variations in their signatures from one writing to the next, due to a disability. Because of Defendants' unlawful signature comparison procedure, each signed ballot improperly and arbitrarily rejected for an alleged signature mismatch undermines the efficacy of

7

CTD's mail-in ballot work. Moreover, CTD must expend additional resources, such as staff and volunteer time and resources instructing voters to write out signatures neatly, when educating voters on completing mail-in ballot applications and mail-in ballots due to the risk of arbitrary and unconstitutional rejection based on an alleged signature mismatch. The resources diverted for these purposes are transferred away from CTD's other voting-related activities.

19.     Neither the claims asserted nor the relief requested by CTD require the participation of its individual members who regularly vote by mail. Plaintiffs seek only equitable relief which does not require any individualized inquiry into damages sustained by any member.

<u>MOVE Texas Civic Fund</u>

20.     Plaintiff MOVE Texas Civic Fund (MOVE) sues Defendants on its own behalf. MOVE's principal place of business is in San Antonio, Texas. MOVE is a non-partisan, non-profit, and grassroots organization "building power in underrepresented youth communities through civic education, leadership development, and issue advocacy." "MOVE" stands for "Mobilize. Organize. Vote. Empower." Since its inception, MOVE has worked to expand voter registration and equal access to voting. MOVE actively works to register eligible young people to vote and ensure that they cast a ballot that actually counts. In doing so, MOVE operates on 32 college campuses around the State of Texas, with 14 of those in the San Antonio area, and registers thousands of students to vote every year.

21.     Because college students are often absent from their counties of residence while attending school, MOVE provides support to students in applying for mail-in ballots when appropriate and follows up with them to ensure they have mailed their ballots in a timely manner. MOVE works with three distinct groups of students in relation to mail-in ballots: (1) eligible students who attend schools outside of Texas and away from their county of residence; (2) eligible

students who attend a Texas school outside of their county of residence; and (3) eligible students who attend a Texas school and consider their address at or nearby school as their residence, but are nevertheless away from school during an election for summer work, holidays, or another conflict.

22.     Depending on the election, MOVE expends resources to educate students about mail-in ballots, encourage eligible student voters to use mail-in ballots, and provide support to eligible student voters utilizing such ballots.

23.     MOVE's mission is significantly frustrated by the current state laws and policies that result in the improper rejection of youth voters' mail-in ballots. Because of Defendants' unlawful signature comparison procedure, each signed ballot improperly and arbitrarily rejected for an alleged signature mismatch undermines the efficacy of MOVE's mail-in ballot work. Moreover, MOVE must expend additional resources when providing support to voters with mail-in ballot applications and mail-in ballots due to the risk of arbitrary and unconstitutional rejection based on an alleged signature mismatch. MOVE sends messages through social media posts and paid texts to make sure that individual voters are following through with their mail-in ballot plans, and specifically warns voters, since the signature comparison procedure is strict and arbitrary, to sign mail-in ballots as clearly and legibly as possible to avoid improper rejection. The resources diverted for these purposes are transferred away from MOVE's in-person voting and voter registration activities.

<u>League of Women Voters of Texas</u>

24.     Plaintiff League of Women Voters of Texas (LWV) sues Defendants on its own behalf and on behalf of its members who use the mail-in ballot process. The interests at stake in this lawsuit are germane to LWV's purpose. LWV is a non-partisan, non-profit member

organization dedicated to empowering voters and defending democracy. LWV "strives for a democracy where every person has the desire, the right, the knowledge[,] and the confidence to participate in the democratic process." LWV actively works to register eligible people to vote and ensure that they actually cast a ballot that counts. In doing so, LWV operates across Texas, registering thousands every year.

25.     LWV expends resources to educate Texans about mail-in ballots, encourage eligible voters to use mail-in ballots, and provide support to eligible voters utilizing such ballots. LWV also prepares training materials for its members and local-area League of Women Voters organizations to use to educate and provide support to voters with the mail-in ballot process.

26.     LWV's mission is significantly frustrated by the current state laws and policies that result in the improper rejection of voters' mail-in ballots. Because of Defendants' unlawful signature comparison procedure, each signed ballot improperly and arbitrarily rejected for an alleged signature mismatch undermines the efficacy of LWV's work. Moreover, LWV must expend additional resources when providing support to voters with mail-in ballot applications and mail-in ballots due to the risk of arbitrary and unconstitutional rejection based on an alleged signature mismatch. Specifically, LWV must expend additional staff and volunteer time and resources instructing voters to write out signatures neatly through LWV's website, and LWV must expend additional staff and volunteer time and resources instructing voters to write out signatures neatly and have the signatures match each other as much as possible in PowerPoint presentations and scripts prepared for its members and local-area League of Women Voters organizations to use when educating and providing support to mail-in ballot voters. The resources diverted for these purposes are transferred away from LWV's other voting-related activities.

27.     Neither the claims asserted nor the relief requested by LWV require the participation of its individual members who regularly vote by mail. Plaintiffs seek only equitable relief which does not require any individualized inquiry into damages sustained by any member.

<u>American GI Forum of Texas, Inc.</u>

28.     Plaintiff American GI Forum of Texas, Inc. (AGIF) sues Defendants on its own behalf and on behalf of its members who use the mail-in ballot process. A significant portion of AGIF's members are eligible to vote by mail because they are: (1) classified as Disabled Veterans by the Department of Veterans Affairs; (2) military retirees 65 years-of-age or older; and/or (3) active duty service members and their families who are often stationed away from their county of residence in Texas.

29.     The interests at stake in this lawsuit are germane to AGIF's purpose. AGIF is a non-partisan, non-profit, Family Veterans, and member organization dedicated to addressing problems of discrimination and inequities endured by veterans and the communities in which they operate. AGIF requires at least 75% of its members be veterans. AGIF works to "enforce, defend, and protect the civil and human rights, [including voting rights,] of Hispanics, women, and other minorities, and to ensure equal opportunities as mandated by federal and state laws." AGIF and its constituent chapters across the state expend resources to register eligible Texas veterans, servicemembers, and their families to vote and to ensure that they actually cast a ballot that counts.

30.     The improper rejection of mail-in ballots frustrates AGIF and its chapters' mission of expanding voter registration and increasing voter turnout among AGIF's membership and the communities it serves, which is essential to advancing and leveraging its influence to advance policy change that benefits veterans, their families, and their communities. Texas' signature comparison procedure decreases overall confidence in the mail-in ballot process, and elections,

generally, which directly undermines the efforts AGIF and its chapters take to encourage eligible voters to use mail-in ballots and support those voters in making sure their mail-in ballots are counted.

31.    Neither the claims asserted nor the relief requested by AGIF require the participation of its individual members who regularly vote by mail. Plaintiffs seek only equitable relief which does not require any individualized inquiry into damages sustained by any member.

<div align="center">Defendants</div>

32.    Defendant is the Texas Secretary of State (SOS). The SOS is the Chief Election Officer of the State of Texas. Tex. Elec. Code § 31.001(a). In this role, the SOS is responsible for enforcing elections statutes and routinely issues guidance to the county registrars of all 254 Texas counties on various elections procedures. SOS is a public entity under Title II of the ADA and the RA.

33.    Defendant Trudy Hancock is the Brazos County Elections Administrator (Brazos EA). She is sued in her official capacity. She is sued for the manner in which she implements the policies, customs, or practices at issue in this action. The Brazos EA is a public entity under Title II of the ADA and the RA.

34.    Defendant Perla Lara is the City of McAllen, Texas Secretary (McAllen City Secretary). She is the Chief Elections Official for the City of McAllen. The McAllen City Secretary is responsible for the administration of elections conducted within the City of McAllen, including joint elections with Hidalgo County as well as elections independent of the Hidalgo County. The McAllen City Secretary is sued for the manner in which she implements the policies, customs, or practices at issue in this action. The McAllen City Secretary is a public entity under Title II of the ADA and the RA.

<div align="center">12</div>

# IV.
# FACTS

## Current Mail-in Ballot Procedures

35.     To vote a mail-in ballot, a voter must first send their county a mail-in ballot application via mail, fax (if available), or e-mail. *Application for a Ballot by Mail*, Texas Secretary of State, https://www.sos.state.tx.us/elections/voter/reqabbm.shtml (last visited June 25, 2019). A voter must submit the mail-in ballot application for a specific election 11 days before Election Day. *Id.* If a voter is voting by mail because the voter is disabled or is 65 years-of-age or older, the voter may use a single application to request mail-in ballots for all county elections in a calendar year. Tex. Elec. Code § 86.0015. While the voter can submit this annual application anytime during the calendar year, it still must be received at least 11 days before the first election in which the voter seeks to request a mail-in ballot. *Id.* § 86.0015(b-1).

36.     In order to successfully vote by mail, the voter must mark the ballot, place it in the official ballot envelope provided by the county, seal the official ballot envelope, place the official ballot envelope in the carrier envelope provided by the county, seal the carrier envelope, and sign the certificate on the carrier envelope. *Id.* § 86.005(a)-(c). Specifically, the carrier envelope certificate requires the voter to "certify that the enclosed ballot expresses [the voter's] wishes independent of any dictation or undue persuasion by any person," and includes a line for the voter's signature across the flap of the envelope. *Id.* § 86.013(c).

37.     Then, the carrier envelope must be returned to the county in a timely manner. *Id.* §§ 86.006(a), 86.013(c). Typically, counties must receive mail-in ballots that are not postmarked or do not have a delivery receipt by 7 p.m. on Election Day. Tex. Elec. Code § 86.007. At the latest, counties must receive mail-in ballots from voters inside the United States with a postmark

13

or delivery receipt dated on or before 7 p.m. on Election Day by 5 p.m. the next business day after Election Day. *Id*. § 86.007(a)(2).[2]

38.     The decision as to whether to reject a mail-in ballot is generally conducted by the Early Voting Ballot Board (EVBB), a statutorily required board established in each county that includes representatives from county parties. *See generally* Tex. Elec. Code § 87.001. The Early Voting Clerk, however, may determine that a Signature Verification Committee (SVC) should be established, in which case the SVC will perform the signature reviews rather than the EVBB. *See generally id*. § 87.027. SVCs are usually established in larger counties, but also appear in many smaller ones. An SVC is also mandatory if the Early Voting Clerk receives a timely petition of at least 15 registered voters requesting such a committee. *Id*. § 87.027(a-1).

39.     An SVC is composed of at least five members and, "[i]n an election in which party alignment is indicated on the ballot," must include at least two members designated by each county party on the ballot in equal numbers. *Id*. § 87.027(d). The chair of the SVC is appointed from a list provided by the party whose nominee for governor received the most votes in the county in the most recent gubernatorial general election. *Id*. The only qualification required to serve on an SVC is that the person be an eligible voter in the district or area for which the election is being held. Tex. Elec. Code § 87.027(e). Pursuant to these rules, SVC's are by law partisan committees of laypersons without any specific expertise or training.

40.     The only statutory guidance for an SVC to follow in performing reviews of mail-in ballots is stated in Tex. Elec. Code § 87.027(i), which provides:

---

[2] Counties must receive from non-military overseas voters mail-in ballots with a postmark or delivery receipt dated on or before 7 p.m. on Election Day no later than the 5th day after Election Day or, if the 5th day after Election Day falls on a Saturday, Sunday, or legal state or national holiday, then the deadline is extended to the next regular business day. *Id*. §§ 86.007(d), (d-1). Counties must receive from military overseas voters mail-in ballots no later than the 6th day after Election Day or, if the 6th day after Election Day falls on a Saturday, Sunday, or legal state or national holiday, then the deadline is extended to the next regular business day. *Carrier Envelope for FPCA Voter*, Texas Secretary of State, https://www.sos.state.tx.us/elections/forms/pol-sub/5-35.pdf (last visited June 25, 2019).

> The signature verification committee shall compare the signature on each carrier envelope certificate, except those signed for a voter by a witness, with the signature on the voter's ballot application to determine whether the signatures are those of the voter. The committee may also compare the signatures with any two or more signatures of the voter made within the preceding six years and on file with the county clerk or voter registrar to determine whether the signatures are those of the voter. Except [where more than one SVC is appointed in the same county], a determination under this subsection that the signatures are not those of the voter must be made by a majority vote of the committee's membership.

The same procedure is to be followed by the EVBB if an SVC is not appointed in a particular county. Tex. Elec. Code § 87.027(j).

41.     The Election Code does not establish any standards or guidance that must be used for actually determining if a signature is that of the voter, nor has SOS or any other entity used rule-making authority to create such standards. Accordingly, each county (and even each committee if multiple SVC panels are created) necessarily develops its own idiosyncratic, arbitrary, and ad hoc procedure to determine that a ballot should be rejected. *See* Tex. Elec. Code § 87.041(b)(2) (requiring rejection). These standards will necessarily vary from county to county, panel to panel, and even from meeting to meeting or ballot to ballot within the same committee panel.

42.     The above signature verification procedure is not and cannot be performed anonymously. In other words, members of the EVBB or SVC necessarily know which voter's ballot they are considering prior to determining if it should be accepted or rejected.

43.     All decisions of the committee are final; if a voter's ballot is rejected, that voter has no recourse or process to challenge the panel's determination that the voter's ballot was signed by someone other than the voter.

44.     Additionally, the board is not required to send notice of rejection to the voter until 10 days after an election, regardless of how early it makes the decision to reject the ballot. *Id*.

§ 87.0431(a). These voters are not provided any kind of notice of their ballot's rejection, nor sufficient time to seek judicial relief, such as that sought in this Complaint, prior to the final votes in the election-at-issue being counted.

45.     Mail-in ballot procedures exclusively affect groups of people who are explicitly eligible by statute to apply for a ballot by mail, including: (1) disabled persons, (2) persons 65 years-of-age or older, (3) persons detained in state jails but otherwise eligible to vote, and (4) persons who will be out of their county of residence during the entire early voting period and on Election Day (a group with significant representation from active-duty military members and college students attending school away from their county of residence). *See* Tex. Elec. Code §§ 82.001–82.004.

46.     The groups that are eligible to vote by mail are also the same groups, in many cases, that are most likely to have signature variations that could cause an improper rejection—especially the elderly, disabled, and persons who speak English as a second language.

47.     A voter whose ballot is rejected is not given any notice of their rejection prior to the rejection, any opportunity to cure their ballot, or any ability to contest the decision of the EVBB or SVC since counties have until 10 days after Election Day to notify the voter of a rejected mail-in ballot. Tex. Elec. Code § 87.0431(a).

<div align="center">Reasons Signatures Often Do Not Match</div>

48.     A person's signature may vary for a variety of reasons, both intentional and unintentional. Unintentional factors that can affect a person's handwriting include medical and/or physical factors such as growing old, illness, injury, symptoms from taking certain medicine, change in eyesight, and consuming alcohol and/or drugs; mechanical factors such as pen type, ink, signing surface, signing position, and paper quality; and psychological factors such as distress,

anger, fear, depression, happiness, and nervousness. *Democratic Executive Committee of Florida v. Lee*, 915 F.3d 1312, 1320 (11th Cir. 2019); *Saucedo v. Gardner*, 335 F. Supp. 3d 202, 212 (D.N.H. 2018). Moreover, a person's handwriting naturally changes over time. Variances between signatures are more prevalent in people who are elderly, disabled, under extreme stress, or who speak English as a second language. *Saucedo*, 335 F. Supp. 3d at 212.

49.     For the most part, signature variations are of little consequence in a person's life. But in the context of voting by mail, these variations become profoundly consequential under Texas' signature comparison procedure, as they may result in the improper disenfranchisement of eligible voters. Elderly and disabled voters, two groups of voters expressly permitted to use the mail-in ballot process, are especially likely to have signature variations.

<div align="center">Texas' Alleged Signature-Matching Process Is Severely Flawed</div>

50.     As a procedure to verify identity, signature comparison is extremely unreliable. Members of EVBBs and SVCs are not handwriting experts, nor do they receive any training to assist in determining if two signatures were made by the same person. On its face, the signature comparison procedure for mail-in ballots gives no guidance on the questions that inevitably arise during signature comparison evaluations, including what stylistic variations suggest that two signatures were made by different individuals, and what threshold number of variations is required to conclude that the signature on the mail-in ballot carrier envelope, the mail-in ballot application, or previous documents is executed by a person other than the voter.

51.     Moreover, EVBBs and SVCs are required by the Texas Election Code to consider signatures in a vacuum, without regard to any other pertinent information that may be available.

<div align="center">17</div>

**V.**

**CAUSES OF ACTION**

**COUNT ONE**

**Violation of the Due Process Clause of the Fourteenth Amendment for Failure to Provide Pre-Rejection Notice and Opportunity to Cure**

52.     Plaintiffs re-allege and incorporate by reference the allegations contained in the preceding paragraphs.

53.     Section 1 of the Fourteenth Amendment to the United States Constitution prohibits states from depriving "any person of . . . liberty . . . without due process of law." U.S. CONST. amend. XIV, § 1.

54.     Defendants may not deprive mail-in ballot voters of procedural due process because each voter's fundamental right to vote is implicated when using a mail-in ballot.

55.     Counties throughout Texas have rejected and continue to reject thousands of mail-in ballots solely based on an error-prone and flawed signature comparison exercise conducted by election officials who are not trained in signature verification, resulting in the erroneous deprivation of the right to vote.

56.     Defendants have not established a procedure for providing voters whose mail-in ballots are rejected because of an alleged signature mismatch pre-rejection notice, an opportunity to be heard, or the ability to cure.

57.     By mandating the unilateral and non-reviewable rejection of mail-in ballots due to an alleged signature mismatch without according pre-rejection notice, an opportunity to be heard, and an ability to cure, Texas' scheme as outlined in Texas Election Code §§ 87.041(b)(2) and (d), both on its face and as it is applied, violates the Due Process Clause of the Fourteenth Amendment. Defendants deprived and continue to deprive Texas voters, including Mr. Richardson and Ms. Rosalie, voters provided support by organizational Plaintiffs, and voters who are members of

18

associational Plaintiffs, of adequate procedural due process to protect their fundamental right to vote.

58.    Providing a voter whose mail-in ballot has been questioned for an alleged signature mismatch a pre-rejection notice, an opportunity to be heard, and the ability to cure their ballot would avoid disenfranchisement and, thereby, protect the voter from the outright denial of their fundamental right to vote.

59.    Notice, an opportunity to be heard, and the ability to cure a ballot are already provided to voters in comparable circumstances. In-person voters whose ballots cannot be counted on Election Day due to lack of identity verification can provide photo identification confirming their identity within six days of Election Day to have their ballot counted. Tex. Elec. Code § 65.0541. It would not be burdensome to apply similar procedures to mail-in ballot voters with allegedly mismatched signatures.

60.    The fundamental right to vote is at stake, and the risk that even one person will be denied the right to cast a mail-in ballot outweighs any justification Defendants may put forward for depriving all mail-in ballot voters the same notice, opportunity to be heard, and ability to cure that is already provided to voters in comparable circumstances.

61.    This challenge is both facial and as-applied to the Plaintiffs in this case.

## COUNT TWO
**Violations of the Equal Protection Clause of the Fourteenth Amendment Due to Severe Burden on Voters Not Justified by Legitimate Government Interest**

62.    Plaintiffs re-allege and incorporate by reference the allegations contained in the preceding paragraphs.

63. The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution prohibits states from "deny[ing] to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1.

64. Under the First Amendment and Equal Protection Clause of the Fourteenth Amendment, a state cannot utilize election practices that unduly burden the fundamental right to vote. *See Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983); *Burdick v. Takushi*, 504 U.S. 428, 434 (1992).

65. A court considering a challenge to a state election law must carefully balance the character and magnitude of the injury to the First and Fourteenth Amendment rights that Plaintiffs seek to vindicate against the justifications put forward by Defendants for the burdens imposed by the rule. *See Anderson*, 460 U.S. 780, 789 (1983); *Burdick*, 504 U.S. 428, 434 (1992). A challenged regulation that imposes a severe burden on the right to vote must be narrowly tailored to advance a compelling state interest. *See Burdick*, 504 U.S. at 434.

66. Defendants cannot burden the exercise of the right to vote by applying election law, policies, and practices in an arbitrary or inconsistent manner.

67. By implementing a signature matching procedure, Defendants treat mail-in ballot voters differently than in-person voters. Tex. Elec. Code § 87.041(b)(2), (d).

68. By implementing a signature matching procedure, Defendants treat differently than other mail-in ballot voters the members of CTD who are mail-in ballot voters and, due to their disability, cannot make their signatures match. Tex. Elec. Code § 87.041(b)(2), (d).

69. Texas Election Code Sections 87.041(b)(2) and (d), by mandating the unilateral, arbitrary, and ad hoc rejection of mail-in ballots due to an alleged signature mismatch, disenfranchise mail-in ballot voters, a burden that is undoubtedly severe, especially when such

20

voters are given no pre-rejection notice or opportunity to resolve the mismatch or otherwise confirm their identity.

70.     Rejecting thousands of mail-in ballots based solely on an error-prone signature comparison procedure conducted by election officials who are not trained in signature verification and failing to provide mail-in ballot voters any opportunity to contest or cure signature mismatch determinations is neither reasonable nor narrowly tailored to serve any compelling and legitimate state interest, particularly since Defendants already otherwise verify a mail-in ballot voter's eligibility to cast a ballot and especially because Defendants provide voters in comparable circumstances an opportunity to be heard and ability to cure ballots.

<div align="center">

**COUNT THREE**
**Violation of Equal Protection Clause of the Fourteenth Amendment Due to Failure to Provide any Uniform Guidelines or Principles for Counties to Compare Signatures**

</div>

71.     An electoral procedure becomes problematic "in the absence of specific standards to ensure its equal application." *Bush v. Gore*, 531 U.S. 98, 106 (2000). Such procedures are immediately suspect if "the standards for accepting or rejecting contested ballots might vary not only from county to county but [even] within a single county." *Id*. State and local governments have an "obligation to avoid arbitrary and disparate treatment of the members of [their] electorate." *Id.* at 105. Failure to establish procedures to ensure equal application of such rules renders them unconstitutional under the Fourteenth Amendment's Equal Protection Clause. *Id*. at 111.

72.     Texas has not promulgated any procedures to assist individual counties or the EVBB or SVCs within those counties in evaluating signatures on mail-in ballots, thereby creating an arbitrary system for evaluation in which committees of laypersons "eye-ball" signatures and evaluate them based on their own ad hoc standards.

<div align="center">

21

</div>

73. The procedures for evaluating signatures for mail-in ballots in Texas therefore vary from county to county, from SVC to SVC in counties with multiple committees, and even from meeting to meeting and ballot to ballot.

74. Accordingly, Texas' procedures for evaluating mail-in ballot signature matches violate the Equal Protection Clause for their failure to provide specific standards to ensure their equal application.

## COUNT FOUR
### Violation of Title II of the Americans with Disabilities Act and the Rehabilitation Act of 1973

75. In addition to the previous claims, Plaintiff CTD brings the following specific claims against Defendants under Title II of the ADA and the RA. The rights and remedies under the ADA and the RA are almost entirely duplicative.

76. "No qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132; 28 C.F.R. § 35.149.

77. "No [person] shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subject to discrimination under any program or activity receiving federal funding assistance." 29 U.S.C. § 794(a); 45 C.F.R. § 1232.4(a).

78. Defendant SOS, as a state agency, and Defendants Brazos EA and McAllen City Secretary, as other political subdivision agencies, are public entities pursuant to 42 U.S.C. § 12131(1)(a) and (b), 45 C.F.R. § 1232.3(d), and 29 U.S.C. § 794. The administration of elections and voting, including mail-in ballot voting and the counting of votes, is a service, program, or activity provided by Defendants SOS, Brazos EA, and McAllen City Secretary.

79.     Defendants are recipients of federal funds. 29 U.S.C. § 794.

80.     For purposes of the ADA and the RA, CTD has members who are qualified individuals with physical and/or mental impairments that substantially limit one or more of their major life activities, including but not limited to performing manual tasks such as seeing, lifting, bending, concentrating, communicating, and/or working. 42 U.S.C. § 12102(1), (2); 45 C.F.R. § 1232.3(h).

81.     CTD has members who are disabled and meet the essential eligibility requirements for the receipt of mail-in ballot services and to participate in the mail-in ballot process provided by Defendant SOS through existing statutes, regulations, and guidance and by the Defendants Brazos EA and McAllen City Secretary through their administration of the mail-in ballot process. Thus, CTD has members who are qualified individuals with a disability entitled to the protections of the ADA and the RA in accessing Texas' service, program, or activity of mail-in ballots.

82.     Members of CTD who use the mail-in ballot process and, due to their disability, cannot make their signatures match, risk disenfranchisement. By reason of such disability, the members at issue have suffered and/or risk future exclusion from participation in and denial of the benefits of the services, programs, or activities of Defendants, and are subjected to discrimination by Defendants. By failing to meet their obligation to provide voters who are disabled, cannot vote in person, and, due to their disability, cannot sign matching signatures an opportunity to vote that is equal and equally effective as that opportunity provided to others, Defendants are in violation of the ADA and the RA.

83.     The lack of reasonable accommodations—such as creating standards for comparing signatures on mail-in ballots and providing the opportunity to contest and cure a challenged mail-in ballot, or barring counties from rejecting mail-in ballots for signature mismatch or any mail-in

ballots submitted by persons with disabilities for signature mismatch—means that the CTD members at issue are excluded from participation in and denied the benefits of the services, programs, or activities of Defendants, and subjected to discrimination by Defendants. Requiring Defendants to provide these reasonable accommodations would not constitute an undue financial or administrative burden.

## PRAYER FOR RELIEF

WHEREFORE, considering the law and facts alleged herein, Plaintiffs pray the Court grant the following relief:

1. That the Court enter declaratory judgment that the State of Texas' statutory scheme requiring the rejection of mail-in ballots with alleged signature mismatches, specifically set out in Texas Election Code §§ 87.041(b)(2), (e), and (f), is unconstitutional and violates the ADA and the RA;

2. That the Court permanently enjoin the State of Texas, the Texas Secretary of State, the Brazos County Elections Administrator, the City of McAllen, Texas Secretary, the 254 county agencies administering elections, and all other political subdivisions administering elections from rejecting any mail-in ballot for signature mismatch reasons, or, in the alternative, require the State of Texas, the Texas Secretary of State, the Brazos County Elections Administrator, the City of McAllen, Texas Secretary, the 254 county agencies administering elections, and all other political subdivisions administering elections to (a) provide voters meaningful notice prior to the rejection of a mail-in ballot based on an alleged signature mismatch and (b) offer voters the ability to cure a mail-in ballot questioned for an alleged signature mismatch.

3. That Plaintiffs be awarded attorneys' fees under 42 U.S.C. § 1988 and 29 U.S.C. §
   794a;

4. That all costs of this action be taxed against Defendants; and

5. That the Court award any additional or alternative relief as may be deemed appropriate
   under the circumstances.

Respectfully submitted this 7th day of August, 2019.


By:   *Hani Mirza*
_____

**TEXAS CIVIL RIGHTS PROJECT**

Mimi M.D. Marziani
Texas Bar No. 24091906
mimi@texascivilrightsproject.org
Rebecca Harrison Stevens
Texas Bar No. 24065381
beth@texascivilrightsproject.org
Hani Mirza
Texas Bar No. 24083512
hani@texascivilrightsproject.org
Ryan V. Cox
Texas Bar No. 24074087
ryan@texascivilrightsproject.org
Zachary D. Dolling
Texas Bar No. 24105809
zachary@texascivilrightsproject.org

1405 Montopolis Drive
Austin, Texas 78741
512-474-5073 (Telephone)
512-474-0726 (Facsimile)

**WILLKIE FARR & GALLAGHER LLP**

Richard Mancino (NY Bar No. 1852797)
(*pro hac vice* forthcoming)
P. Maxwell Griffith (NY Bar No. 5323209)
(*pro hac vice* forthcoming)

25

787 Seventh Avenue
New York, New York 10019
Telephone:  (212) 728-8000
Facsimile:  (212) 728-8111
Email: rmancino@willkie.com
      mgriffith@willkie.com

-AND-

Jennifer J. Hardy (TX Bar No. 24096068)
(*pro hac vice* forthcoming)
Denis A. Fallon (TX Bar No. 24059731)
(*pro hac vice* forthcoming)
Garrett Johnston (TX Bar No. 24087812)
(*pro hac vice* forthcoming)
Audra White (TX Bar No. 24098608)
(*pro hac vice* forthcoming)

600 Travis Street, Suite 2100
Houston, Texas 77002
Telephone: (713) 510-1700
Facsimile: (713) 510-1799
Email: jhardy2@willkie.com
      afallon@willkie.com
      gjohnston@willkie.com
      awhite@willkie.com

***COUNSEL FOR PLAINTIFFS***

JS 44 (Rev 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

See Attached

**(b)** County of Residence of First Listed Plaintiff **Brazos**
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

See Attached

## DEFENDANTS

See Attached

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U S Government Plaintiff
- ☐ 2 U S Government Defendant
- ☒ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | | **PERSONAL PROPERTY** | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☒ 441 Voting | ☐ 463 Alien Detainee | | ☐ 870 Taxes (U S Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Fourteenth Amendment to U.S. Constitution, Title II of ADA, and RA of 1973

Brief description of cause:
Violation of voting rights

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____ DOCKET NUMBER _____

DATE
08/07/2019

SIGNATURE OF ATTORNEY OF RECORD
/s/ Hani Mirza

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG JUDGE _____

## I. (a) Plaintiffs

Richardson, George; Weisfeld, Rosalie; Austin Justice Coalition; Coalition of Texans with Disabilities; MOVE Texas Civic Fund; League of Women Voters of Texas; American GI Forum of Texas, Inc

## I. (c) Plaintiffs' Counsel

Mimi M.D. Marziani
Texas Bar No. 24091906
Rebecca Harrison Stevens
Texas Bar No. 24065381
Hani Mirza
Texas Bar No. 24083512
Ryan V. Cox
Texas Bar No. 24074087
Zachary D. Dolling
Texas Bar No. 24105809
Texas Civil Rights Project
1405 Montopolis Drive
Austin, Texas 78741
512-474-5073 (Telephone)
512-474-0726 (Facsimile)
mimi@texascivilrightsproject.org
beth@texascivilrightsproject.org
hani@texascivilrightsproject.org
ryan@texascivilrightsproject.org
zachary@texascivilrightsproject.org

Richard Mancino (NY Bar No. 1852797)**
P. Maxwell Griffith (NY Bar No. 5323209)**
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, New York 10019
Telephone:  (212) 728-8000
Facsimile:  (212) 728-8111
rmancino@willkie.com
mgriffith@willkie.com

-AND-

Jennifer J. Hardy (TX Bar No. 24096068)**
Denis A. Fallon (TX Bar No. 24059731)**
Garrett Johnston (TX Bar No. 24087812)**
Audra White (TX Bar No. 24098608)**
Willkie Farr & Gallagher LLP
600 Travis Street, Suite 2100

Houston, Texas 77002
Telephone: (713) 510-1700
Facsimile: (713) 510-1799
jhardy2@willkie.com
afallon@willkie.com
gjohnston@willkie.com
awhite@willkie.com

ATTORNEYS FOR PLAINTIFFS
** Pro hac vice application forthcoming

**I. (a) Defendants**

CURRENTLY VACANT, Texas Secretary of State;

TRUDY HANCOCK, Brazos County Elections Administrator,
in her official capacity;

PERLA LARA, City Secretary for City of McAllen,
in her official capacity.

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| DR. GEORGE RICHARDSON, ROSALIE WEISFELD, AUSTIN JUSTICE COALITION, COALITION OF TEXANS WITH DISABILITIES, MOVE TEXAS CIVIC FUND, LEAGUE OF WOMEN VOTERS OF TEXAS, and AMERICAN GI FORUM OF TEXAS, INC., | § § § § § § § § | |
| *Plaintiffs* | § § § | |
| v. | § § | Civil Case No. 5:19-cv-00963 |
| TEXAS SECRETARY OF STATE, TRUDY HANCOCK, in her official capacity as BRAZOS COUNTY ELECTIONS ADMINISTRATOR, and PERLA LARA in her official capacity as CITY OF MCALLEN, TEXAS SECRETARY, | § § § § § § § | |
| *Defendants.* | § § | |

### PLAINTIFF ROSALIE WEISFELD'S OBJECTIONS AND RESPONSES TO DEFENDANT SECRETARY OF STATE'S FIRST REQUESTS FOR ADMISSION, INTERROGATORIES, AND REQUESTS FOR PRODUCTION

TO:   Defendant Texas Secretary of State, by and through her attorneys of record Ken Paxton, Jeffrey C. Mateer, Darren L. McCarty, Thomas A. Albright, and Anne Marie Mackin, via e-mail to anna.mackin@oag.texas.gov.

Pursuant to Federal Rules of Civil Procedure 33, 34, and 36, Plaintiff Rosalie Weisfeld hereby serves the following Objections and Responses to Defendants' First Requests for Admissions, Requests for Production, and Interrogatories.

Dated: April 16, 2020

Respectfully Submitted,

/s/ _____*Hani Mirza*_____

**TEXAS CIVIL RIGHTS PROJECT**
Mimi M.D. Marziani

1

Exhibit
Rosalie Weisfeld
**6**
5/13/20  DR

Texas Bar No. 24091906
mimi@texascivilrightsproject.org
Rebecca Harrison Stevens
Texas Bar No. 24065381
beth@texascivilrightsproject.org
Hani Mirza
Texas Bar No. 24083512
hani@texascivilrightsproject.org
Ryan V. Cox
Texas Bar No. 24074087
ryan@texascivilrightsproject.org
Zachary D. Dolling
Texas Bar No. 24105809
zachary@texascivilrightsproject.org

1405 Montopolis Drive
Austin, Texas 78741
512-474-5073 (Telephone)
512-474-0726 (Facsimile)

**WILLKIE FARR & GALLAGHER LLP**

Richard Mancino (NY Bar No. 1852797)
Samuel Kalar (NY Bar No. 5360995)
JoAnna Suriani (NY Bar No. 5706395)

787 Seventh Avenue
New York, New York 10019
Telephone: (212) 728-8000
Facsimile: (212) 728-8111
Email: rmancino@willkie.com
        skalar@willkie.com
        jsuriani@willkie.com

-AND-

Jennifer J. Hardy (TX Bar No. 24096068)
Denis A. Fallon (TX Bar No. 24059731)
Garrett Johnston (TX Bar No. 24087812)
Audra White (TX Bar No. 24098608)

600 Travis Street, Suite 2100
Houston, Texas 77002
Telephone: (713) 510-1700
Facsimile: (713) 510-1799
Email: jhardy2@willkie.com

2

afallon@willkie.com
gjohnston@willkie.com
awhite@willkie.com

**COUNSEL FOR PLAINTIFFS**

**CERTIFICATE OF SERVICE**

I hereby certify that on the 16th day of April, 2020, a true and correct copy of the foregoing *Plaintiff Rosalie Weisfeld's Objections and Responses to Defendant Secretary of State's First Requests for Admission, Request for Production, and Interrogatories* was served upon counsel of record via email.

/s/ Hani Mirza_____

**RESERVATION OF RIGHTS**

Ms. Weisfeld has responded to these requests for admission, requests for production, and interrogatories based on the information currently available to her. Discovery, however, is not yet complete. Additional discovery and investigation may lead to additions to, changes in, or modification of these responses. Ms. Weisfeld therefore reserves her right to supplement, amend, revise, correct, modify, or clarify these responses as additional information becomes available.

Ms. Weisfeld makes her objections and responses in accordance with her interpretation and understanding of *Defendant Secretary of State's First Requests for Admission, Request for Production, and Interrogatories* ("Requests") and in accordance with her current knowledge, understanding, and belief as to the facts and information available to her at the time of serving these responses. If Defendant subsequently provides an interpretation of any of its Requests that differs from Ms. Weisfeld's understanding of the same, Ms. Weisfeld reserves her right to complete the discovery of facts in this case and rely at trial or in any other proceeding on documents and information in addition to the information provided herein, regardless of whether

3

such information is newly discovered or newly in existence. She also reserves the right to amend, revise, correct, modify, or clarify her responses to properly respond to any interpretation Defendant may give these Requests.

Ms. Weisfeld reserves her right to object on any grounds, at any time, to the admission or use of any response on any ground. Ms. Weisfeld is also willing to meet and confer about any of her objections or responses.

## **GENERAL OBJECTIONS**

1.       Ms. Weisfeld objects to these Requests, including the definitions and instructions, to the extent that they seek information or documents: (i) protected by attorney client privilege, the work product doctrine, or any other applicable privilege or immunity; (ii) not in Ms. Weisfeld's possession, custody, or control; and (iii) that are publicly available or already within Defendants' possession.

2.       Ms. Weisfeld objects to these Requests to the extent they are duplicative of a request that Defendants have propounded to another Plaintiff in this Lawsuit. To the extent that Plaintiffs agree to produce a document that is responsive to multiple Requests duplicated across multiple Plaintiffs, Plaintiffs will only produce such documents once.

3.       Ms. Weisfeld objects to the definitions of "Coalition of Texans with Disabilities," "CTD," "Austin Justice Coalition," "AJC," "MOVE Texas Civic Fund," "MOVE Texas," "MOVE," "League of Women Voters of Texas," "LWVTX," "LWV," "Individual Plaintiffs," and "Organizational Plaintiffs," (together, "Plaintiffs Definitions") as overly broad and unduly burdensome to the extent that they define each party as including "anyone acting or purporting to act on their behalf with respect to any matter inquired about herein, including without limitation representatives, employees, or agents." For the purposes of these responses, each Plaintiff will

4

construe the Plaintiffs Definitions in accordance with the definition of "Plaintiffs" as found in Plaintiffs' First Set of Discovery Requests served on February 5, 2020.

4.      Ms. Weisfeld objects to the definitions of "EVBB" and "SVC" as vague and ambiguous. For the purposes of these responses, Ms. Weisfeld will construe the terms "EVBB" and "SVC" in accordance with the definitions of "EVBB" and "SVC" found in Plaintiffs' First Set of Discovery Requests served on February 5, 2020.

5.      These General Objections are incorporated into each of the specific responses and objections set forth below. No specific response or objection herein shall constitute a waiver, in whole or in part, of any of the foregoing General Objections. Ms. Weisfeld reserves the right at any time to revise, correct, supplement, or clarify the objections or responses set forth herein and any production made pursuant thereto.

5

## MS. WEISFELD'S OBJECTIONS AND RESPONSES TO REQUESTS FOR ADMISSION

1.      Admit that SOS did not, "during a city run-off election in 2019 . . . reject[] Plaintiff Rosalie Weisfeld's mail-in ballot," as alleged in Paragraph 4 of your Complaint.

**RESPONSE:** Ms. Weisfeld objects to this request for admission on the ground that it calls for a legal conclusion. Ms. Weisfeld has no particular knowledge of this legal issue. Subject to and without waiving the foregoing, Ms. Weisfeld has no particular knowledge of the actions that Defendant SOS takes. Defendant SOS is the appropriate party with information responsive to this request.

2.      Admit that if a county election officer determines that a ballot was incorrectly rejected by the EVBB before the time set for convening the canvassing authority, the county election officer may petition a district court for injunctive or other relief as the court determines appropriate.

**RESPONSE**: Ms. Weisfeld objects to this request for admission on the ground that it calls for a legal conclusion. Ms. Weisfeld has no particular knowledge of this legal issue. The provisions of the Texas Election Code speak for themselves.

3.      Admit that SOS does not select the members of any EVBB.

**RESPONSE**: Ms. Weisfeld can neither admit nor deny because she has no particular knowledge of the actions Defendant SOS takes. Defendant SOS is the appropriate party with information responsive to this request.

4.      Admit that SOS did not select the members of any EVBB responsible for reviewing your mail-in ballot in the 2019 city runoff election referenced in Paragraph 4 of your Complaint.

**RESPONSE:** Ms. Weisfeld objects to this request for admission on the ground that it calls for a legal conclusion. Ms. Weisfeld has no particular knowledge of this legal issue. Subject to and without waiving the foregoing, Ms. Weisfeld has no particular knowledge of the actions that Defendant SOS takes. Defendant SOS is the appropriate party with information responsive to this request.

5.      Admit that SOS does not select the members of any SVC.

**RESPONSE**: Ms. Weisfeld can neither admit nor deny because she has no particular knowledge of the actions Defendant SOS takes. Defendant SOS is the appropriate party with information responsive to this request.

6.      Admit that SOS did not select the members of any SVC responsible for reviewing your mail-in ballot in the 2019 city runoff election referenced in Paragraph 4 of your Complaint.

**RESPONSE:** Ms. Weisfeld objects to this request for admission on the ground that it calls

6

for a legal conclusion. Ms. Weisfeld has no particular knowledge of this legal issue. Subject to and without waiving the foregoing, Ms. Weisfeld can neither admit nor deny because she has no particular knowledge of the actions that Defendant SOS takes. Defendant SOS is the appropriate party with information responsive to this request.

     7.    Admit that local election authorities, and not SOS, are responsible for receiving completed mail-in ballots.

     **<u>RESPONSE</u>**: Ms. Weisfeld objects to this request for admission on the ground that it calls for a legal conclusion. Ms. Weisfeld has no particular knowledge of this legal issue. The provisions of the Texas Election Code speak for themselves.

     8.    Admit that local election authorities, and not SOS, were responsible for receiving your completed mail-in ballot in the 2019 city runoff election referenced in Paragraph 4 of your Complaint.

     **<u>RESPONSE:</u>** Ms. Weisfeld objects to this request for admission on the ground that it calls for a legal conclusion. Ms. Weisfeld has no particular knowledge of this legal issue. Subject to and without waiving the foregoing, Ms. Weisfeld can neither admit nor deny because she has no particular knowledge of the actions that Defendant SOS and local election authorities take. Defendants SOS and/or local elections authorities are the appropriate parties with information responsive to this request.

     9.    Admit that local election authorities, and not SOS, are responsible for delivering completed mail-in ballots to the appropriate EVBB or SVC.

     **<u>RESPONSE</u>**: Ms. Weisfeld objects to this request for admission on the ground that it calls for a legal conclusion. Ms. Weisfeld has no particular knowledge of this legal issue. The provisions of the Texas Election Code speak for themselves.

     10.    Admit that local election authorities, and not SOS, were responsible for delivering your completed mail-in ballot in the 2018 General Election to the appropriate EVBB or SVC.

     **<u>RESPONSE:</u>** Ms. Weisfeld objects to this request for admission on the ground that it calls for a legal conclusion. Ms. Weisfeld has no particular knowledge of this legal issue. Subject to and without waiving the foregoing, Ms. Weisfeld can neither admit nor deny because she has no particular knowledge of the actions that Defendant SOS and local election authorities take. Defendants SOS and/or local elections authorities are the appropriate parties with information responsive to this request.

     11.    Admit that SOS lacks authority to reject any mail-in ballot for signature mismatch.

     **<u>RESPONSE</u>**: Ms. Weisfeld objects to this request for admission on the ground that it calls for a legal conclusion. Ms. Weisfeld has no particular knowledge of this legal issue. The provisions of the Texas Election Code speak for themselves.

12.     Admit that SOS lacked authority to reject your mail-in ballot in the 2019 city runoff election referenced in Paragraph 4 of your complaint for signature mismatch.

**RESPONSE**: Ms. Weisfeld objects to this request for admission on the ground that it calls for a legal conclusion. Ms. Weisfeld has no particular knowledge of this legal issue. The provisions of the Texas Election Code speak for themselves.

13.     Admit that mail in ballot applications and carrier envelopes need not be signed by the voter if they are signed by a witness.

**RESPONSE**: Ms. Weisfeld objects to this request for admission on the grounds that it calls for a legal conclusion and is vague. It is vague because there are specific requirements that must be met for a voter to be eligible to use a witness, and specific requirements that must be met for a voter to not need to sign their mail-in ballot application and carrier envelope. The provisions of the Texas Election Code speak for themselves.

14.     Admit that mail-in ballots signed by a witness cannot be rejected for signature mismatch.

**RESPONSE**: Ms. Weisfeld objects to this request for admission on the grounds that it calls for a legal conclusion and is vague. It is vague because there are specific requirements that must be met for a voter to be eligible to use a witness, and specific requirements that must be met for a voter to not need to sign their mail-in ballot application and carrier envelope. The provisions of the Texas Election Code speak for themselves.

15.     Admit that you were eligible to vote in person in the 2019 city runoff election referenced in Paragraph 4 of your Complaint.

**RESPONSE:** Ms. Weisfeld objects to this request for admission on the ground that it calls for a legal conclusion. Ms. Weisfeld has no particular knowledge of this legal issue. Subject to and without waiving the foregoing, admit only to the extent that Ms. Weisfeld submitted a mail-in ballot and that she believes she was eligible to vote in person.

16.     Admit that voting by mail is a different process from in-person voting.

**RESPONSE**: Ms. Weisfeld objects to this request for admission on the ground that it calls for a legal conclusion and is vague. Subject to and without waiving the foregoing, admit only to the extent that, as a practical matter, voting by mail involves some different procedures than voting in-person.

17.     Admit that Texas has an interest in ensuring that only eligible voters cast ballots.

**RESPONSE**: Ms. Weisfeld objects to this request for admission on the ground that it calls for a legal conclusion and is vague. Subject to and without waiving the foregoing, Ms. Weisfeld can neither admit nor deny because she has no particular knowledge of the current interests of the State of Texas. Texas, including Defendant SOS, is the appropriate party with information responsive to this request.

8

## MS. WEISFELD'S OBJECTIONS AND RESPONSES TO REQUESTS FOR PRODUCTION

1.     All documents and communications supporting your contention that "Texas unlawfully rejects the duly signed mail-in ballots of thousands of eligible voters every major election," as alleged in Paragraph 1 of your Complaint.

**RESPONSE**: Please see attached BATES GENERAL-00000001-2030.

2.     All documents and communications supporting your contention that "Texas counties rejected at least 1,873 mail-in ballots during the 2018 General Election and at least 1,567 mail-in ballots during the 2016 General Election solely on the basis of mismatching signatures," as alleged in Paragraph 1 of your Complaint.

**RESPONSE**: Please see attached BATES GENERAL-00000001-2030.

3.     All documents and communications supporting your contention that you "properly signed and timely mailed [your] ballot in compliance with the Texas Election Code," as alleged in Paragraph 11 of your Complaint.

**RESPONSE:** Ms. Weisfeld objects to this request for production on the ground that the contention requires a legal analysis. Subject to and without waiving the foregoing, please see attached BATES WEISFELD-00000001-28.

4.     All documents and communications supporting your contention that "[t]he groups that are eligible to vote by mail are also the same groups, in many cases, that are most likely to have signature variations that could cause an improper rejection—especially the elderly, disabled, and persons who speak English as a second language," as alleged in Paragraph 46 of your Complaint.

**RESPONSE**: Ms. Weisfeld objects to this request for production on the ground that it calls for expert witness testimony. Plaintiffs' expert witness report was served on Defendants on February 3, 2020. Subject to and without waiving the foregoing, Ms. Weisfeld has no responsive documents.

5.     All documents and communications supporting your contention that "growing old, illness, injury, symptoms from taking certain medicine, change in eyesight, and consuming alcohol and/or drugs; mechanical factors such as pen type, ink, signing surface, signing position, and paper quality; and psychological factors such as distress, anger, fear, depression, happiness, [or] nervousness" can affect an individual's handwriting to the extent that their ballot would be erroneously rejected for signature mismatch, as referenced in Paragraph 48 of your Complaint.

**RESPONSE**: Ms. Weisfeld objects to this request for production on the ground that it calls for expert witness testimony. Plaintiffs' expert witness report was served on Defendants on February 3, 2020. Subject to and without waiving the foregoing, Ms. Weisfeld has no responsive documents.

6.    All documents and communications supporting your contention that "a person's handwriting naturally changes over time" to the extent that their ballot would be erroneously rejected for signature mismatch, as referenced in Paragraph 48 of your Complaint.

**RESPONSE**: Ms. Weisfeld objects to this request for production on the ground that it calls for expert witness testimony. Plaintiffs' expert witness report was served on Defendants on February 3, 2020. Subject to and without waiving the foregoing, Ms. Weisfeld has no responsive documents.

7.    All documents and communications supporting your contention that "[v]ariances between signatures" significant enough to result in a ballot being erroneously rejected for signature mismatch "are more prevalent in people who are elderly, disabled, under extreme stress, or who speak English as a second language," as referenced in Paragraph 48 of your Complaint.

**RESPONSE**: Ms. Weisfeld objects to this request for production on the ground that it calls for expert witness testimony. Plaintiffs' expert witness report was served on Defendants on February 3, 2020. Subject to and without waiving the foregoing, Ms. Weisfeld has no responsive documents.

8.    All documents and communications supporting your contention that "the cost of remedial procedures" you seek in this Lawsuit "would likely be low," as alleged at Dkt. 32, p. 40.

**RESPONSE:** Ms. Weisfeld objects to this request for production on the ground that the contention requires legal analysis. Subject to and without waiving the foregoing, please see attached BATES WEISFELD-00000001, WEISFELD-00000003-4, WEISFELD-00000008-9, WEISFELD-00000015, WEISFELD-00000018-28.

9.    All documents and communications supporting your contention that Texas's signature matching procedure is "error-prone," as alleged in Paragraph 70 of your Complaint.

**RESPONSE**: Ms. Weisfeld objects to this request for production on the ground that it calls for expert witness testimony. Plaintiffs' expert witness report was served on Defendants on February 3, 2020. Subject to and without waiving the foregoing, please see attached BATES WEISFELD-00000001-2, WEISFELD-00000005-12, WEISFELD-00000015-28.

10.    Documents sufficient to show each "erroneous deprivation of the right to vote" you contend was caused by "an error-prone and flawed signature comparison," as alleged in Paragraph 55 of your Complaint.

**RESPONSE**: Ms. Weisfeld objects to this request for production on the ground that it calls for expert witness testimony and that the contention requires legal analysis. Plaintiffs' expert witness report was served on Defendants on February 3, 2020. Subject to and without waiving the foregoing, please see attached BATES WEISFELD-00000001-2, WEISFELD-00000005-12, WEISFELD-00000015-28.

11.    All documents and communications supporting your contention that "each county

10

(and even each committee if multiple SVC panels are created) necessarily develops its own idiosyncratic, arbitrary, and ad hoc procedure to determine that a ballot should be rejected," and that "[t]hese standards will necessarily vary from county to county, panel to panel, and even from meeting to meeting or ballot to ballot within the same committee panel," as alleged in Paragraph 41 of your Complaint.

**RESPONSE**: Ms. Weisfeld objects to this request for production on the ground that it calls for expert witness testimony. Plaintiffs' expert witness report was served on Defendants on February 3, 2020. Subject to and without waiving the foregoing, Ms. Weisfeld has no responsive documents.

12.   To the extent not already produced in response to the requests above, all documents you may rely upon to support your claims in this Lawsuit.

**RESPONSE**: Ms. Weisfeld objects to this request as broad and vague and because it demands that she marshal all of her evidence that may be presented at trial, regardless of whether that evidence is within her care, custody, or control or whether Defendants have superior access of right to such documents. Ms. Weisfeld will produce all documents she relies upon to support his claims in this lawsuit according to the Amended Scheduling Order, the Federal Rules of Civil Procedure, and the Federal Rules of Evidence.

11

## MS. WEISFELD'S OBJECTIONS AND RESPONSES TO INTERROGATORIES

1.      Describe any relief that Plaintiffs contend would "provide voters meaningful notice prior to the rejection of a mail-in ballot and [] offer voters the ability to cure a mail-in ballot questioned for an alleged signature mismatch," as referenced in Paragraph 7 of your Complaint.

**RESPONSE**: Ms. Weisfeld objects to this interrogatory on the ground that it calls for a legal conclusion. Subject to and without waiving the foregoing, there are multiple forms of prospective relief that would provide voters meaningful notice prior to the rejection of a mail-in ballot and offer voters the ability to cure a mail-in ballot questioned for an alleged signature mismatch. Plaintiffs' counsel discuss such forms to relief in their pleadings as well as in communications with opposing counsel. To be meaningful, notice prior to final rejection must clearly explain the reason why the voter's ballot was questioned, be received by the voter through a method of delivery the voter has quick and easy access to, and be received with enough time for the voter to attempt to effectively cure the questioned ballot. A cure process must provide voters simple methods and ample time to correct a ballot wrongly questioned for signature mismatch.

2.      If you contend that the Secretary has "rule making authority" to "establish any standards or guidance that must be used for actually determining if a signature is that of the voter," as referenced in Paragraph 41 of your Complaint, please state the basis for that contention.

**RESPONSE**: Ms. Weisfeld objects to this interrogatory on the ground that it calls for a legal conclusion.

3.      State the basis for your contention that "each county (and even each committee if multiple SVC panels are created) necessarily develops its own idiosyncratic, arbitrary, and ad hoc procedure to determine that a ballot should be rejected," and that "[t]hese standards will necessarily vary from county to county, panel to panel, and even from meeting to meeting or ballot to ballot within the same committee panel," as alleged in Paragraph 41 of your Complaint.

**RESPONSE:** Ms. Weisfeld objects to this interrogatory on the ground that it calls for expert witness testimony. Plaintiffs' expert witness report was served on Defendants on February 3, 2020. Subject to and without waiving the foregoing, as alleged in paragraph 2 of the Complaint, "current rules authorize untrained local election officials to arbitrarily and subjectively reject mail-in ballots if officials believe, based on their own layman analysis, that the signature on a ballot is not in fact the voter's signature." Please also see responses to Open Records Requests from local election officials produced for Requests for Production above.

4.      State the basis for your contention that the "signature verification procedure is not and cannot be performed anonymously," as alleged in Paragraph 42 of your Complaint.

**RESPONSE**: Ms. Weisfeld objects to this interrogatory on the ground that Defendants are better equipped to answer it. Subject to and without waiving the foregoing, Ms. Weisfeld's understanding is that signature verification requires reviewing the written name of the voter. As a result, it essentially cannot be performed anonymously.

12

5.     If you contend that SOS is responsible for delivering, receiving, or accepting completed mail-in ballots, please state the basis for that contention.

**RESPONSE**: Ms. Weisfeld objects to this interrogatory on the ground that it calls for a legal conclusion. The provisions of the Texas Election Code speak for themselves.

6.     If you contend that SOS has the authority to seek judicial relief in connection with a local election official's decision to reject a mail-in ballot, please state the basis for that contention.

**RESPONSE**: Ms. Weisfeld objects to this interrogatory on the ground that it calls for a legal conclusion. The provisions of the Texas Election Code speak for themselves.

7.     If you contend that you had a constitutionally protected right to pre-rejection notice and opportunity to cure before your mail-in ballot in the 2018 General Election was allegedly rejected for signature mismatch, please state the basis for that contention.

**RESPONSE**: Ms. Weisfeld objects to this interrogatory on the ground that it calls for a legal conclusion.

8.     If you contend that you have a protected liberty interest in casting a ballot by mail, please state the basis for that contention.

**RESPONSE**: Ms. Weisfeld objects to this interrogatory on the ground that it calls for a legal conclusion.

9.     If you contend that you have a protected property interest in casting a ballot by mail, please state the basis for that contention.

**RESPONSE**: Ms. Weisfeld objects to this interrogatory on the ground that it calls for a legal conclusion.

10.     If you contend that SOS has the authority to reject any mail-in ballot for signature mismatch, please state the basis for that contention.

**RESPONSE**: Ms. Weisfeld objects to this interrogatory on the ground that it calls for a legal conclusion. The provisions of the Texas Election Code speak for themselves.

11.     Describe what "specific standards" you contend are required for the signature comparison process to "ensure its equal application," as alleged in Paragraph 74 of your Complaint.

**RESPONSE**: Ms. Weisfeld objects to this interrogatory on the ground that it calls for a legal conclusion. Subject to and without waiving the foregoing, there are multiple types of specific standards that could be put in place to resolve the issues in this lawsuit. Plaintiffs' counsel discuss such forms to relief in their pleadings and in communications with opposing counsel, and their

13

expert witness' report served on Defendants on February 3, 2020 also discusses such issues.

12.    Describe any guidelines or trainings you contend SOS must provide to local election officials, EVBBs, or SVCs, including how you contend any such guidelines or trainings should be provided.

**RESPONSE**: Ms. Weisfeld objects to this interrogatory on the ground that it calls for a legal conclusion. Subject to and without waiving the foregoing, there are multiple types of guidelines and trainings Defendant SOS could provide to resolve at least some of the issues in this lawsuit. Plaintiffs' counsel discuss such forms to relief in their pleadings as well as communications with opposing counsel.

14

**Rosalie Weisfeld** is feeling angry with Ryan Guillen and 39 others.

July 4, 2019 ·

I am so angry on this 4th of July. I just received a letter from the City of McAllen that my ballot by mail was rejected so my vote was not counted! Welcome to the USA where your ballot gets rejected without anyone even calling you to verify!!!!

I voted by mail in the last election as I was in New York for my niece's college graduation. I just received this letter stating that my ballot was rejected because it was determined that the signature on the application for ballot by mail and the carrier envelope was not signed by the same person. NOT TRUE! I even took a photo of my signature on each application, cover letter and the carrier envelopes. None of them are exactly alike as the signatures are not copies. However they were very, very similar! I have voted in every election except for one since I was 18 years old. Every school board election, every city council election, every primary, every runoff, every constitutional election, every presidential election, every gubernatorial election, ... I am furious! This is a real example of why early voting ballot boards should not be making determinations on signature verifications. People who serve on signature verification committees are not experts! I myself have served on many signature verification committees for ballots by mail. What happened to me is just plain wrong! My right to vote was stolen by the McAllen City Election Committee members and the system that allowed them to steal my vote.



238                    121 Comments  41 Shares

**Exhibit**
**Rosalie Weisfeld**

**7**

5/13/20  DR

WEISFELD-00000015

From  Rosalie Weisfeld <rosalieweisfeld@gmail.com>
Date  April 11, 2019 at 2:04:22 AM CDT
To  Yesenia Rodriguez <yrodriguez@mcallen.net>
Cc  "jswhinojosa@gmail.com" <jswhinojosa@gmail.com>, Perla Lara <plara@mcallen.net>
Subject  Re   Application for Ballot by Mail

Dear Yeseina,

Yesterday I called and spoke to Perla, our McAllen City Secretary. I am in receipt of my early voting ballot.

Issue: The packet arrived with both the yellow carrier envelope and the white security envelope with the ballot inside sealed. I have attached three photos as illustration of the problem. I had to cut open both the yellow carrier envelope and the white security envelope to get to my ballot.

Problem: The sealed yellow and white envelopes create a problem because I had to cut the envelopes open and then reseal them with tape before I could mail my ballot back. The Early Voting Ballot Board could reject a ballot if they think a ballot has been tampered with. A sign of tampering is a cut and resealed envelope.

Solution: In my case, and potentially other ballots by mail that were processed for this city election the Ballot Board must be informed that an honest mistake was made by the city staff when the ballots were mailed out which causes the returned ballot envelopes to be sealed with tape or glue. All of these ballots should be accepted and counted!

A second solution, City staff could mail out a new packet to all voters who were sent sealed envelopes. I do not recommend this action as it will be more confusing for the voter, the staff and the Ballot Board. Voters may have already voted and mailed back their ballots and the new packet will cross in the mail. This could cause voter confusion.

Permanent Solution: See the fourth and last photo I attached to this email. It demonstrates the appropriate way to send a ballot by mail to a voter with all of the envelopes open along with the ballot and instructions sheet.

In closing please inform the Ballot Board of this situation and let them know I voted my own ballot and nobody tampered with my ballot.

Thank you for your assistance.

Sincerely,

Rosalie Weisfeld
956.793.5814
Rosalieweisfeld@gmail.com

  image1.jpeg

  image2.jpeg





WEISFELD-00000020

1/5



## EL SOBRE DE LA BOLETA

**INSTRUCCIONES PARA EL VOTANTE:**

1. Marque su boleta, meta la boleta en el sobre marcado "SOBRE DE LA BOLETA", y cierre el sobre de la boleta.
2. Meta el sobre de la boleta en el sobre portador, ciérrelo, fírmelo, y mándelo al secretario de votación adelantada por correo, por transporte común por contrato, o en persona por el votante en la oficina del secretario de votación adelantada el día de la elección. (Vea las instrucciones en el sobre port
3. el adjunto "Información Importante Sobre Devolver Su Boleta Marcada en el Sobre Portador" para información adicionales.)
   Su boleta debe ser recibida por el secretario de votación adelantada a más tardar a las 5:00 p.m. el siguiente día hábil después del día de la elección si el sobre portador está matasel
   Sin embargo, su boleta debe ser recibida a más tardar a las 7 p.m. el día de la elección si el sobre portador no está matasel
   mado a más tardar a las 7:00 p.m. en el lugar de la elección el día de la elección. Tenga en cuenta que si se entrega a mano su boleta a el secret
   delantada, debe entregar su boleta entre las 7:00 a.m. y las 7:00 p.m. el día de la elección. No puede entregar su boleta a mano a el secret
   delantada después de las 7:00 p.m. el día de la elección. Si esta votando fuera de los Estado Unidos las reglas de contar boletas pueden apl

**PARA LAS PERSONAS DANDO AYUDA:**

nte puede recibir ayuda solamente si es físicamente incapaz de escribir o ver o no puede leer la boleta.
a un votante incluye la siguiente conducta por una persona, no el votante, que ocurre durante la presencia de la boleta de votar ó sobre port
la boleta al votante; b) dirigiendo al votante a leer la boleta; c) marcando la boleta del votante; ó d) dirigiendo al votante que marque la bolet
tante puede escoger un ayudante con tal de que ese ayudante no sea la persona que lo(a) emplea, o un agente de la persona que lo(a) emplea.
al o agente de la unión de obreros de la cual el votante es socio.
un delito menor de la Clase A prestar asistencia a un votante que no está calificado para recibir ayuda, o preparar la boleta para el votante diferen
odo en que dirija el votante o sin la dirección del votante, o sugerir por palabra, seña o acción cómo debera de votar el votante, o proporcionar asis
na person que no ha solicitado asistencia o seleccionado a la persona para ayudar al votante. Es un delito menor de la Clase A ayudarle a un votante
tencionalmente en posesión de una boleta o sobre portador de otra persona puede ser un delito si no proporcione su firma, nombre en letra de m
a cumplido con las condiciones del #3 mencionado arriba.
rección de domicilio en el sobre portador.
el votante permite a alguna persona enviar su boleta o entregar la boleta por transporte común o bajo contrato, esa p
dor incluyendo su nombre en letra de molde y dirección. Falta de proporcionar esta informació
hacer lo inmediatamente. Es un delito que una persona colecte y guard
otación adelantada.
ntar ninguna boleta que fu

WEISFELD-00000022

3/5

Correct way of mailing all of the envelopes, instruction sheet and ballot. Bonus includes an "I Voted" sticker 🌎



WEISFELD-00000023

4/5



Sent from my iPhone

On Mar 22, 2019, at 11:41 AM, Yesenia Rodriguez <yrodriguez@mcallen.net> wrote:

Good afternoon Ms. Weisfeld,

Attached is the ABBM as requested although you can submit the application by email, the original must be mailed to: Perla Lara P.O. Box 220 McAllen Tx. 78505-0220.


Respectfully,

Yesenia Rodriguez, TRMC

Deputy City Secretary

City of McAllen | 1300 Houston Avenue (78501) or

PO Box 220 (78505-0220) | McAllen, TX

Office (956) 681-1020 | Cell (956) 566-1375 | Fax (956) 681-1029


Disclaimer: If you are not the intended recipient or have received this e-mail in error, please notify me via return e-mail and telephone at 956-681-1000, and permanently delete and purge the original and any copy thereof. This e-mail, with attachments hereto, if any, is intended only for receipt and use by the addressee(s) named herein, and may contain legally privileged and/or confidential information. Regardless of address or routing, if you are not the intended recipient, then you are hereby notified that any use, copying, reproduction, dissemination, distribution, or transmission of this e-mail, and any attachments hereto, is strictly prohibited. Whereas all reasonable steps have been taken to ensure the accuracy and confidentiality of the information and data submitted herein, the City of McAllen and its employees are not liable if information or data is corrupted or does not reach its intended destination.

<2019 ABBM Application.pdf>

WEISFELD-00000024

5/5

**From:** Rosalie Weisfeld <rosalieweisfeld@gmail.com>
**Date:** July 5, 2019 at 1:50:57 PM CDT
**To:** justin.perez@house.texas.gov
**Subject: My Ballot was Rejected by  the EV Ballot Board / Signature Verification Committee**

Attachment : Photo of the rejection letter is included below.

I have been saying it for years, "We need to do away with Early Voting Ballot Board Signature Verification Committees", and now it happened to me. As a life long active voter and a former executive director of the Hidalgo County Democratic Party I fought hard to ensure that every ballot by mail was counted and not rejected by the EV Ballot Board / Signature Verification Committee.

I am so angry on this 4th of July. I just received a letter from the City of McAllen that my ballot by mail was rejected so my vote was not counted in the McAllen City Council Run Off Election 6/22/2019.

Welcome to the USA where your ballot gets rejected without anyone even calling you to verify!!!! Many staff members at City Hall have my cell phone number including the City Secretary, City Attorney, as well as the Mayor, and probably all or at least some of the City Council members ... and no one even called to check with me.

I voted by mail in the last election as I was in New York for my niece's college graduation and traveling during early voting and on Election Day. I just received this letter stating that my ballot was rejected because it was determined that the signature on the application for ballot by mail and the carrier envelope was not signed by the same person. NOT TRUE! I even took a photo of my signature on each application, cover letter and the carrier envelopes. None of them are exactly alike as the signatures are not copies. However they were very, very similar!

I have voted in every election except for one since I registered to vote. Every school board election, every city council election, every primary, every runoff, every constitutional election, every presidential election, every gubernatorial election, ... I am furious! This is a real example of why early voting ballot boards should not be making determinations on signature verifications. People who serve on signature verification committees are not experts! I myself have served on many signature verification committees for ballots by mail. What happened to me is just plain wrong! My right to vote was stolen by the McAllen City Election Committee-members.

What can I do to ensure that no other citizen ever receives a letter rejecting their ballot to vote because some one else determined that - "It was determined that the signature on the application for ballot by mail and carrier envelope were not signed by the same person."

I am sick to my stomach, physically ill and emotionally distraught. It feels horr ble to know that my vote was not counted. I went through so much trouble to vote by mail. It is a tedious and somewhat complex process. It is hard to vote by mail. It was important for me to participate. The two candidates got into the Run Off Election by a difference of only 1 vote. If my ballot for the May election had been rejected (it wasn't) there would not have even been a Run Off Election!!!

At the very least someone on the Board should be required to call a voter to ask the voter themself if the Board thinks their is a discrepancy in signatures. Truly, Signature Verification should not even be allowed by people who are not specialists in handwriting analysis!

Anything you can do to help will be most appreciated!



**Exhibit**
**Rosalie Weisfeld**

**9**

5/13/20  DR

WEISFELD-00000025

AW3-42
Prescribed by Secretary of State
Sec. 87.0431, Texas Election Code
3/07

## NOTICE OF REJECTED BALLOT

This is to serve as notice that your ballot for the __June 22, 2019__ Election was rejected by the early voting ballot board and was not counted.

Name of Voter __Weisfeld, Rosalie__
VUID Number __1054678350__

Reason for Rejection: (Check As Appropriate)

| | | |
|---|---|---|
| _____ | 1) | Certificate on carrier envelope was not properly executed. |
| | | _____ You failed to sign your signature or make your mark. |
| | | _____ The witness failed to indicate on the envelope that you could not make a mark. |
| | | _____ The assistant or witness failed to print their name. |
| | | _____ The assistant or witness failed to sign their name. |
| | | _____ The residence address of the assistant or witness was not given. |
| ✓ | 2) | It was determined that the signature on the application for ballot by mail and carrier envelope was not signed by the same person. |
| _____ | 3) | Application for ballot by mail did not state a legal ground for voting by mail. |
| _____ | 4) | Voter registration records indicated you did not have an effective registration for this election. |
| _____ | 5) | Address to which ballot was mailed was not outside the county.  Voting early by mail due to expected absence from the county requires balloting materials be mailed to an address outside the county. |
| _____ | 6) | The residence address on the statement of residence is not located in the political subdivision conducting the election. |
| _____ | 7) | The mailing address on the application for ballot by mail did not match your voter registration address nor did the mailing address match any addresses provided on your statement of residence. Since you did not indicate on your application for a ballot by mail that you were having your ballot mailed to a hospital, retirement center, long term care facility, nursing home, jail, or a relative, your ballot was rejected. |
| _____ | 8) | The statement of residence was not included in the carrier envelope. |
| _____ | 9) | No identification was included with your mail ballot. |
| _____ | 10) | Other: _____ |

_____
Signature of Early Voting Ballot Board Judge

__June 22, 2019__
Date

**Weisfeld, Rosalie**

Rosalie Weisfeld
956.793.5814
Rosalieweisfeld@gmail.com
Sent from my iPhone

WEISFELD-00000026

**From:** Rosalie Weisfeld <rosalieweisfeld@gmail.com>
**Date:** July 5, 2019 at 1:48:12 AM CDT
**To:** Charlie Bonner <Charliekirk6@gmail.com>
**Subject: My Ballot was Rejected by  the EV Ballot Board / Signature Verification Committee**

Attachment : Photo of the rejection letter is included below.

I have been saying it for years, "We need to do away with Early Voting Ballot Board Signature Verification Committees", and now it happened to me. As a life long active voter and a former executive director of the Hidalgo County Democratic Party I fought hard to ensure that every ballot by mail was counted and not rejected by the EV Ballot Board / Signature Verification Committee.

I am so angry on this 4th of July. I just received a letter from the City of McAllen that my ballot by mail was rejected so my vote was not counted in the McAllen City Council Run Off Election 6/22/2019.

Welcome to the USA where your ballot gets rejected without anyone even calling you to verify!!!! Many staff members at City Hall have my cell phone number including the City Secretary, City Attorney, as well as the Mayor, and probably all or at least some of the City Council members ... and no one even called to check with me.

I voted by mail in the last election as I was in New York for my niece's college graduation and traveling during early voting and on Election Day. I just received this letter stating that my ballot was rejected because it was determined that the signature on the application for ballot by mail and the carrier envelope was not signed by the same person. NOT TRUE! I even took a photo of my signature on each application, cover letter and the carrier envelopes. None of them are exactly alike as the signatures are not copies. However they were very, very similar!

I have voted in every election except for one since I registered to vote. Every school board election, every city council election, every primary, every runoff, every constitutional election, every presidential election, every gubernatorial election, ... I am furious! This is a real example of why early voting ballot boards should not be making determinations on signature verifications. People who serve on signature verification committees are not experts! I myself have served on many signature verification committees for ballots by mail. What happened to me is just plain wrong! My right to vote was stolen by the McAllen City Election Committee-members.

What can I do to ensure that no other citizen ever receives a letter rejecting their ballot to vote because some one else determined that - "It was determined that the signature on the application for ballot by mail and carrier envelope were not signed by the same person."

I am sick to my stomach, physically ill and emotionally distraught. It feels horrible to know that my vote was not counted. I went through so much trouble to vote by mail. It is a tedious and somewhat complex process. It is hard to vote by mail. It was important for me to participate. The two candidates got into the Run Off Election by a difference of only 1 vote. If my ballot for the May election had been rejected (it wasn't) there would not have even been a Run Off Election!!!

At the very least someone on the Board should be required to call a voter to ask the voter themself if the Board thinks their is a discrepancy in signatures. Truly, Signature Verification should not even be allowed by people who are not specialists in handwriting analysis!

Anything you can do to help will be most appreciated!



Exhibit
Rosalie Weisfeld
**10**
5/13/20  DR

WEISFELD-00000027

AW3-42
Prescribed by Secretary of State
Sec. 87.0431, Texas Election Code
3/07

## NOTICE OF REJECTED BALLOT

This is to serve as notice that your ballot for the __**June 22, 2019**__ Election was rejected by the early voting ballot board and was not counted.

Name of Voter  Weisfeld, Rosalie

VUID Number  1054678350

Reason for Rejection: (Check As Appropriate)

_____  1)  Certificate on carrier envelope was not properly executed.
_____  You failed to sign your signature or make your mark.
_____  The witness failed to indicate on the envelope that you could not make a mark.
_____  The assistant or witness failed to print their name.
_____  The assistant or witness failed to sign their name.
_____  The residence address of the assistant or witness was not given.

\_✓\_  2)  It was determined that the signature on the application for ballot by mail and carrier envelope was not signed by the same person.

_____  3)  Application for ballot by mail did not state a legal ground for voting by mail.

_____  4)  Voter registration records indicated you did not have an effective registration for this election.

_____  5)  Address to which ballot was mailed was not outside the county.  Voting early by mail due to expected absence from the county requires balloting materials be mailed to an address outside the county.

_____  6)  The residence address on the statement of residence is not located in the political subdivision conducting the election.

_____  7)  The mailing address on the application for ballot by mail did not match your voter registration address nor did the mailing address match any addresses provided on your statement of residence.  Since you did not indicate on your application for a ballot by mail that you were having your ballot mailed to a hospital, retirement center, long term care facility, nursing home, jail, or a relative, your ballot was rejected.

_____  8)  The statement of residence was not included in the carrier envelope.

_____  9)  No identification was included with your mail ballot.

_____  10)  Other: _____

_____

Signature of Early Voting Ballot Board Judge

**June 22, 2019**
Date

**Weisfeld, Rosalie**

Rosalie Weisfeld
956.793.5814
Rosalieweisfeld@gmail.com
Sent from my iPhone

WEISFELD-00000028

# EARLY VOTING BALLOT BOARD & SIGNATURE VERIFICATION COMMITEE

## Handbook for Election Judges and Clerks 2020

### FOR USE IN GENERAL, PRIMARY, AND
OTHER POLITICAL SUBDIVISION ELECTIONS



**Issued by**

The Office of the Texas Secretary of State, Elections Division
1-800-252-VOTE(8683) or (512) 463-5650

Exhibit
Rosalie Weisfeld
**11**
5/13/20  DR

SOS_000428

www.sos.state.tx.us
www.VoteTexas.gov

# TABLE OF CONTENTS

**INTRODUCTON**                                                                        i

**CHAPTER 1 – CREATION OF THE EARLY VOTING BALLOT BOARD & SIGNATURE
         VERIFICATION COMMITEE**                                                        1

   SECTION A.  COMPOSITION OF THE EVBB                                                  1
   SECTION B.  COMPOSITION OF A SIGNATURE VERIFICATION COMMITTEE                        2

**CHAPTER 2 — SIGNATURE VERIFICATION COMMITTEE  CONVENES**                              1

   SECTION A.  Convening the Signature Verification Committee                           4
   SECTION B.  Delivery Of Materials To The Committee                                   4
   SECTION C.  Receipt For Delivery                                                     5
   SECTION D.  Security Of Early Voting Ballots                                         6

**CHAPTER 3  — THE EARLY VOTING BALLOT BOARD CONVENES**                                 7

   SECTION A.  Convening the Early Voting Ballot Board                                  7
   SECTION B.  Delivery of Materials to the Board                                       8
   SECTION C.  Receipt for Delivery                                                     9
   SECTION D.  Security of Early Voting Ballots                                        10

**CHAPTER 4  — QUALIFYING BALLOTS VOTED BY MAIL OR VOTED USING MAIL
         PROCEDURES**                                                                  11

   SECTION A.  Types Of Early Voting Ballot Applications                               11
   SECTION B.  Valid Reasons For Voting Early By Mail                                  11
   SECTION C.  Qualifying Early Voting Ballots Voted By Mail                           12
   SECTION D.  Qualifying Signatures for the Signature Verification Committee          15
   SECTION E.  Accepted Ballots                                                        16
   SECTION F.  Rejected Ballots                                                        18

**CHAPTER 5 — COUNTING HAND-COUNTED PAPER BALLOTS**                                     19

   SECTION A.  Establishing The Counting Teams                                         19
   SECTION B.  Opening The Ballot Box Containing Hand-Counted Paper Ballots            19
   SECTION C.  Rules Governing The Counting Procedure                                  20
   SECTION D.  The Counting Procedure                                                  20
   SECTION E.  Rules For Counting Manually-Cast Or Hand-Counted Optical Scan Ballots   21
   SECTION F.  Handling The Election Returns For Paper Ballots                         24
   SECTION G.  Reporting Early Votes                                                   27

**CHAPTER 6 — EXAMINING, PREPARING, AND COUNTING VOTED OPTICAL
         SCAN BALLOTS**                                                                28

SOS_000429

SECTION A.   Processing Ballots Counted At Central Counting Station     28
SECTION B.   Delivery Of Ballot Box     28

**CHAPTER 7 — RECONVENING EARLY VOTING BALLOT BOARD**     29

SECTION A.   Establishing The Early Voting Ballot Board To Review Provisional Ballots     29
SECTION B.   Reconvening For Qualifying Late Early Ballots By Mail     33

**APPENDIX A.   Signature Verification Committee**     39
SECTION A.   Questions in Regards to Verifying Signatures     39
SITUATIONS.     41

**APPENDIX B.   Early Voting Ballot Board**     44
SECTION A.   Questions in Regards to Board     44
SITUATIONS.     48

SOS_000430

# INTRODUCTION

The Elections Division of the Secretary of State's Office has prepared this handbook for an overview of the Early Voting Ballot Board and Signature Verification Committee. This handbook contains a thorough outline of who is able to serve as part of the Early Voting Ballot Board, who is able to serve on the Signature Verification Committee, convening the board/committee, qualifying ballots and counting ballot procedures for the Early Voting Ballot Board and Signature Verification Committee. It incorporates changes in election laws through the regular session of the 86th Texas Legislature (2019).

The handbook starts at the selection process of the Early Voting Ballot Board and Signature Verification Committee, whether it is for a Primary, General, or a Political Subdivisions Election. Throughout the handbook, references are made to the appropriate section in the Texas Election Code or the Texas Administrative Code, unless otherwise indicated. Information in *italics* relates to primary elections.

The Elections Division of the Secretary of State's Office is open during the hours that the polls are open for voting on all uniform election dates. Answers to questions on election law and procedures may be obtained by telephoning the Elections Division toll-free at 1-800-252-2216 or (512) 463-5650.

Please visit us at our Internet home page for additional election information at http://www.sos.state.tx.us.

The Office of the Secretary of State does not discriminate on the basis of race, color, national origin, sex, religion, age, or disability in employment or the provision of services.

# CHAPTER 1

## CREATION OF THE EARLY VOTING BALLOT BOARD & SIGNATURE VERIFICATION COMMITTEE

### SECTION A.  COMPOSITION OF THE EVBB

1. An early voting ballot board (EVBB) shall be created in each election to process early voting results from the territory served by the early voting clerk. [87.001] No matter what type of election an entity is having, they must have an early voting ballot board.

2. The EVBB consists of a presiding judge and at least two other members. The presiding judge of the EVBB is appointed in the same manner as a presiding election judge. Except in the general election for state and county officers, each county chair of a political party with nominees on the general election ballot shall submit to the county election board a list of names of persons eligible to serve on the early voting ballot board. The county election board shall appoint at least one person from each list to serve as a member of the early voting ballot board. The same number of members must be appointed from each list. The other members are appointed by the presiding judge in the same manner as the precinct election clerks. In addition to the members appointed under the general election, the county election board shall appoint the presiding judge from the list provided under that subsection by the political party whose nominee for governor received the most votes in the county in the most recent gubernatorial general election. [87.002]

    **NOTE:** If the county has an elections administrator, or if commissioner's court has transferred the election duties of the county clerk to the county tax assessor collector, he/she will serve as the county election board chair in place of the county clerk. (31.043, 31.072 & 31.073)

    **Recommend: We recommend that the county election board appoint the members of the early voting ballot board for the November 3, 2020 no later than October 1, 2020, to allow time for notice requirements.**

| Type of Election | Presiding Judge | EVBB Clerks |
|---|---|---|
| General Election for State and County Officers | County Election Board --from list provided by political party whose nominee for Gov received the most votes in the county | County Election Board -- from lists provided by political parties (same number from each list) |
| Primary Elections | County Chair of Political Party with approval of County Executive Committee | Presiding Judge of EVBB |
| All Other County ordered elections | Commissioner's Court if no County Election Board is established | Presiding Judge of EVBB |
| All other Elections | Authority ordering election | Presiding Judge of EVBB |

SOS_000432

3. To be eligible for appointment to the early voting ballot board, a person must meet the requirements for eligibility for service as a presiding election judge, [32.051] except that the appointee must be a qualified voter of the territory served by the early voting clerk and is not required to be a qualified voter of any other particular territory. [87.003]

4. An EVBB member would be ineligible if, they hold public elective office, opposed candidate in election on the same day, related to an opposed candidate within 2nd degree by blood or marriage, or serving as campaign treasurer/campaign manager for candidate in election.

5. <u>Required Oaths by Early Voting Ballot Board Members</u>: All EVBB members should recite this oath, prior to beginning service on the Board. [87.006]

   <u>For use in Joint Primary Elections, General Election for State and County Officers, Elections ordered by the Governor:</u>

   "I swear (or affirm) that I will objectively work to be sure every eligible voter's vote is accepted and counted, and that only the ballots of those voters who violated the Texas Election Code will be rejected. I will make every effort to correctly reflect the voter's intent when it can be clearly determined. I will not work alone when ballots are present and will work only in the presence of a member of a political party different from my own. I will faithfully perform my duty as an officer of the election and guard the purity of the election."

   <u>For use in all Separate Primary Elections and Other Elections that do not contain Party Affiliation:</u>

   "I swear (or affirm) that I will objectively work to be sure every eligible voter's vote is accepted and counted, and that only the ballots of those voters who violated the Texas Election Code will be rejected. I will make every effort to correctly reflect the voter's intent when it can be clearly determined. I will not work alone when ballots are present. I will faithfully perform my duty as an officer of the election and guard the purity of the election. "

## SECTION B.  COMPOSITION OF A SIGNATURE VERIFICATION COMMITTEE

1. Unlike an EVBB that is mandatory, a Signature Verification Committee (SVC) may be created. There are two ways for this committee to be created. The first way is through the early voting clerk. The early voting clerk has authority for determining whether a signature verification committee is needed. The second way is through a petition that is submitted to the early voting clerk. The petition must contain at least 15 registered voters in the territory in order for the committee to be created. The SVC must consist of not fewer than five members. If more than 12 members are appointed to serve on the signature verification committee, the early voting clerk may designate two or more subcommittees of not less than six members. [87.027]

2. In an election in which party alignment is indicated on the ballot, each county chair of a political party with a nominee or aligned candidate on the ballot shall submit to the appointing authority a list of names of persons eligible to serve on the signature verification committee. The authority shall appoint at least two persons from each list to serve as members of the committee. The same number of members must be appointed from each list. The authority shall appoint the chair of the committee from the list provided by the political party whose nominee for governor received the most votes in the county in the most recent gubernatorial general election. [87.027(d)]

2

SOS_000433

3. The signature verification committee is a group that meets prior to election day to compare the signatures on the applications for ballot by mail to the corresponding carrier envelopes. (87.027) If the early voting clerk determines that a signature verification committee is desirable **or** if the clerk receives a petition signed by 15 registered voters, the clerk shall issue a written order creating the committee. The deadline to submit a petition requesting creation of a signature verification committee for the November 3, 2020 is October 1, 2020. (87.027, 1.006) A request submitted by mail is considered submitted at the time of its receipt by the early voting clerk. The early voting clerk determines the number of members on the committee, providing for a minimum of five (the committee chair and four members). The county election board appoints the members. The party chairs, including the county chairs of the Libertarian and Green Party of Texas, submit lists of eligible persons for appointment to the committee.

4. In order to serve on the committee, a person must be a qualified voter of the entity. **IT is NOT RECOMMENDED that members that serve on the EVBB serve on the SVC. This creates a conflict because if a SVC has determined that the signatures are not those of the same person, the EVBB may make a determination that the signatures are those of the same person by a majority vote of the board's membership. [87.027(j)]**

The county chairs' lists for the appointment of the signature verification committee members are not subject to the June 30th or the July 30th deadline. The county elections board shall appoint the members of the signature verification committee not later than the 5th day after the date the early voting clerk issues the order calling for the creation of the committee OR not later than October 15, 2020, if the committee is created after a valid petition was submitted requesting its creation. We recommend that the signature verification committee be appointed (if needed) by October 10, 2020, to allow time for all necessary notice requirements. Therefore, we recommend that the parties submit the lists to the chair of the county elections board (county clerk or elections administrator) by August 29, 2020, to allow for appointment during the month of September or no later than the October 10, 2020 recommended date. The chair of the signature verification committee is appointed from the list of the party whose candidate for governor received the highest vote in the 2018 gubernatorial election countywide. For the remaining members, the county election board must select at least two qualified individuals from each chair's list. If clerks beyond the minimum requirement are ordered, an equal number must be chosen from each list.

| Type of Election | Chair | SVC Clerks |
|---|---|---|
| General Election for State and County Officers | County Election Board appoints who is the chair, in an election for which the board is established -- from list provided by the county chairs | County Election Board appoints, in an election for which the board is established --from list provided by the county chairs |
| Primary Elections | County Chair of Political Party with approval of County Executive Committee | County Chair of Political Party with approval of County Executive Committee |
| All Other County ordered elections | Commissioner's Court | Commissioner's Court |
| All other Elections | Authority ordering election | Authority ordering election |

3

SOS_000434

# CHAPTER 2

## SIGNATURE VERIFICATION COMMITTEE CONVENES

### SECTION A.  CONVENING THE SIGNATURE VERIFICATION COMMITTEE

1. The early voting clerk shall determine the place, day or days, and hours of operation of the signature verification committee and shall state that information in the order calling for the committee's appointment. A committee may not begin operating before the 20th day before election day. [87.027(f)]

2. The early voting clerk shall post a copy of the order calling for the appointment of the signature verification committee. The copy must remain posted continuously for at least 10 days before the first day the committee meets. [ Sec. 87.027(g)]

3. The committee must complete the following tasks:
   (a) Compare the signature on each carrier envelope certificate (except those signed for a voter by a witness, with the signature on the voter's ballot appliation to determine whether the signatures are those of the voter). [87.027(i)] The signature verification committee may use electronic copies of the mail ballot application and carrier envelope certificate for comparing signatures.
   (b) The committee may also compare the signatures with any two or more signatures of the voter made within the preceding six years and on file with the county clerks or voter registrar to determine whether the signatures are those of the voter. If ballot materials or ballot applications are recorded electronically as provided by Section 87.126, the signature verification committee may use an electronic copy of a carrier envelope certificate or the voter's ballot application in making the comparison under Section 87.027(i).
   (c) Rejection of signatures must be made by a majority vote of the committee. [87.027(i)]
   (d) The only purpose of the SVC is to compare signatures the EVBB will count the ballot. **THE SVC SHOULD NOT BE COUNTING BALLOTS. [87.027(j)]**

### SECTION B.  DELIVERY OF MATERIALS TO THE COMMITTEE

1. If a signature verification committee is appointed for the election, the early voting clerk shall deliver the jacket envelopes containing the early voting ballots voted by mail to the committee instead of to the early voting ballot board. [Sec. 87.027(h)]

2. The following notices must be posted on an entity's website if available: (HB 933 86R)
   a. Copy of order calling for the appointment
   b. EV Clerk's  notice of names and addresses of members
   c. Notice of delivery of ballots

3. Deliveries may be made only during the period of the committee's operation at times scheduled in advance of delivery by the early voting clerk. The clerk shall post notice of the time of each delivery. The notice must remain posted continuously for at least two days before the date of the delivery. [87.027(h)]

4. Postings shall be made on the bulletin board used for posting notice of meetings of the commissioners court, in an election for which the county election board is established or a primary election, or of the governing body of the political subdivision in other elections. [Sec. 87.027(k)]

4

SOS_000435

5. The committee chair or committee members may request from the voter registrar, county clerk, or election administrator ahead of time signatures that are on file from the past six years. This does not have to be done ahead of time, however our office recommends in order to give the voter registrar, county clerk or election administrator ample time. This may be provided electronically.

6. In 2017, SB 5 85 R removed the prohibition against the committee using the registration application signature to determine that the signatures are not those of the same person. The bill authorizes the early voting ballot board or signature verification committee to compare a voter's signature on a ballot application or carrier envelope certificate with two or more signatures of the voter made within the preceding six years and on file with the county clerk, in addition to the board's existing authority to make such a comparison with signatures on file with the voter registrar, to determine whether the signatures are those of the same person. The bill removes the prohibition against the board using such signatures on file to determine that the signatures are not those of the same person. The board or the committee may now use the signatures to determine if they are or if they are not that of the same person.

7. The committee compares signatures on applications and corresponding carrier envelopes only to determine that the signatures on these documents are of the same person or not.  [Sec. 87.027(i)]. The signature verification committee may use electronic copies of the mail ballot application and carrier envelope certificate for comparing signatures. The standard should be whether the two signatures could have been made by the same person. If using electronic signatures to compare, please have a plan in place and use that procedure throughout the duration.

8. The committee places carrier envelopes and applications that are the signatures of the same person in one container and those that are not the same person in another separate container.

9. Committee chair delivers sorted materials to the Board as directed by the presiding judge of the Board.

10. If the signature verification committee has decided that the signatures are from the same person, the Board may not override the committee's decision  If the signature verification committee has decided that the signatures are not from the same person, the Board may override the committee's decision that the signatures are of the same person by a majority vote of the Board. [Sec. 87.027(j)]

11. A determination that signatures are not from the same person must be made by a majority vote of the committee or subcommittee as applicable.  If the early voting clerk has designated subcommittees within the signature verification committee, the subcommittee makes its signature determinations by a majority vote of the subcommittee members.  [Sec. 87.027(l)] There is nothing in the Election Code that states what constitutes a majority vote. This may be something that is discussed among the committee to determine what constitutes a majority vote. Please note that if the committee has determined what constitutes a majority vote, that the committee use that process throughout the entire process.

12. The Board makes a determination if the signature verification committee cannot determine whether the signatures are made by the same person.

13. **Convening the Committee after election day**. The early voting clerk may determine whether or not the committee will need to reconvene after election day to verify signatures or leave that authority with the early voting ballot board. We recommend that this decision be done prior to election day. If the authority is left with the committee we recommend that the committee coordinates with the board and the early voting clerk for delivery of the jacket envelope ballots by mail.

## SECTION C. RECEIPT FOR DELIVERY

1.  Upon delivery of a sealed early voting ballot box, the committee chair of the signature verification committee must inspect the box to determine whether the seals on the box are intact, and whether the numbers on the seals correspond to the numbers indicated on the record of serial numbers prepared by the early voting clerk.  [Secs. 87.062(b), 127.068]

2.  If the seals are intact and the numbers match, the committee chair should accept the ballot box and so indicate on the receipt.

3.  If the seals are not intact or the numbers do not match, the committee chair should accept the ballot box, but note any discrepancies on the receipt and in his or her records.

## SECTION D. SECURITY OF EARLY VOTING BALLOTS

1.  The voted early voting ballots must be secured from the last day of voting by personal appearance at a polling place until the day the ballots are counted.  [T.A.C. Sec. 81.34]

   a.  If the signature verification meets before election day, the committee chair shall, upon each adjournment of the board, lock and seal each ballot box prior to delivering the boxes back to the custodian of records.  The chair shall complete a ballot box security form indicating each serial number used to seal each box.  The form shall be signed by the chair and another committee member who has witnessed the procedure.  In a general election for state and county officers, the committee member must be from a different political party than the judge.  The custodian of records shall also sign the form.

   b.  The committee chair shall deliver the key(s) used to lock the ballot box(es) to the custodian.  The key shall be retained by the authority designated in accordance with Section 66.060(a) of the Code:

      (1)  the sheriff for an election ordered by the governor or county authority or *a primary election*, except that in a year when the office of sheriff is on the ballot, the key shall be delivered to the county judge.  When both these offices are on the ballot, the key shall be delivered to the county auditor or to a designated member of the commissioners court who is not on the ballot and who is appointed by the court, if the county does not have an auditor;

      (2)  the chief of police or city marshal for an election ordered by a city authority; or

      (3)  the constable of the justice precinct in which the office of the political subdivision is located, or if the office of constable is vacant, the sheriff of the county in which the political subdivision is located if the election is ordered by an authority of a political subdivision other than a city or county.

   c.  Upon reconvening the committee, the chair shall ensure that each ballot box is intact.  The chair shall follow these procedures each day except upon final delivery to the custodian of records or delivery to the central counting station.

   d.  If it is impracticable for the chair to deliver the ballot boxes each day upon adjournment, the authority conducting the election shall submit an alternate security procedure to the Secretary of State for approval.

6

SOS_000437

# CHAPTER 3

## THE EARLY VOTING BALLOT BOARD CONVENES

### SECTION A.  CONVENING THE EARLY VOTING BALLOT BOARD

1. The Early Voting Ballot Board (the "Board") generally meets twice during an election.  First, the Board meets to qualify ballots by mail on election day or after the last day to vote early by personal appearance.  Second, the Board meets after election day to review any provisional ballots and to qualify any mail-in ballots received by the 5th and 6th day after election day from voters casting a ballot from outside the U.S. or military voters who located outside the voter's  home county and is on active duty or a spouse of a military person on active duty .

2. The board must convene to complete the following tasks:
   (a)  Qualify and Process Regular Ballots by Mail
   (b)  Qualify and Process Late Ballots (old and new categories)
   (c)  Qualify and Process Provisional Ballots

3. Convening the Board on election day or after early voting by personal appearance ends.

Except as provided below, the Board may meet to qualify and accept ballots at any time after the end of the early voting by personal appearance, but <u>may not count</u> votes until the polls open on election day.  [Secs. 87.024-87.0241]

**NOTES**:

*   General rule: May convene at the end of Early Voting by Personal Appearance (3rd day before) to <u>qualify</u> ballots.
*   In elections conducted by a county with a population of 100,000 or more <u>and elections held jointly with such a county</u>, the Board may meet to <u>qualify and accept</u> voted mail ballots beginning the end of the 9th day before the last day of the period of early voting.
*   If there is a central counting station that has been established, then the ballots will not be sent to the ballot board, but rather to central count.
*   The Board like the Committee may also compare signatures with any two or more signatures of the voter made within the preceding six years and on file with the voter registrar.

   In 2017, SB 5 85 R removed the prohibition against the board using the registration application signature to determine that the signatures are not those of the same person. The bill authorizes the early voting ballot board or signature verification committee to compare a voter's signature on a ballot application or carrier envelope certificate with two or more signatures of the voter made within the preceding six years and on file with the county clerk, in addition to the board's existing authority to make such a comparison with signatures on file with the voter registrar, to determine whether the signatures are those of the same person. The bill removes the prohibition against the board using such signatures on file to determine that the signatures are not those of the same person. The board or the committee may now use the signatures to determine if they are or if they are not that of the same person.

4. Convening the Board after election day.

SOS_000438

a. The Board cannot convene until the 6th day after an election because voters that did not have a valid form of identification when voting have 6 days to: (1) present to the voter registrar a valid photo identification, (2) complete one of the two curing affidavits set out in Section 65.054(b)(2)(B) (consistent religious objection to photographs) or Section 65.054(b)(2)(C) (identification unavailable due to declared natural disaster), or (3) apply for and receive a disability exemption. A board may convene earlier but continue on a rolling basis until the 6th day.

b. In an election held on the date of the general election for state and county officers, the Board must convene no later than the 13th day after the date of the election to count provisional ballots.

c. In all other elections held on dates other than the date of the general election for state and county officers, the Board must convene no later than the 9th day to complete the review of provisional ballots.

d. The Board shall convene on the 9th day after election day or earlier if the early voting clerk certifies that all ballots from outside of the U.S. have been received and all provisional ballots have been processed by the voter registrar. [Sec. 87.125]  If this date falls on a Saturday, Sunday, or legal state or national holiday, the Board convenes on the next regular business day. [Sec. 87.125(c)]

e. *For Primary and Primary Runoff Elections-not earlier than 6 p.m. on the second Tuesday or later than 1 p.m. on the second Friday after election day at the hour specified by the county chair.*

**NOTE**: From time to time, the office of the Secretary of State will amend this time period by administrative rule.  *See* T.A.C. Sec. 81.33.

SEE CHAPTER 7 FOR RECONVENING OF BALLOT BOARD FOR THE PROCESSING AND COUNTING OF PROVISIONAL AND OVERSEAS LATE BALLOTS.

## SECTION B. DELIVERY OF MATERIALS TO THE BOARD

1. The board should obtain from the authority conducting the election a package of supplies, including the following forms:

   a. Oath of Election Judges and Clerks; [Sec. 62.003]

   "I swear (or affirm) that I will not in any manner request or seek to persuade or induce any voter to vote for or against any candidate or measure to be voted on, and that I will faithfully perform my duty as an officer of the election and guard the purity of the election."

   b. Poll List of Early Voting by Mail Voters or Voters Voting by Mail Procedure; [Sec. 87.021]

   c. List of Early Voting Provisional Voters; [T.A.C. Sec. 81.172 – 81.174]

   d. List of Provisional Voters Who Presented Proper Identification to Voter Registrar; [Sec. 65.0541]

   e. Envelope for Rejected Early Voting Ballots; [Sec. 87.043]

   f. Tally Sheets; [Sec. 65.004]

   g. Return Sheets; [Sec. 65.014]

   h. Envelopes for distribution of returns and election records; [Sec. 66.003]

   i. Statement of Compensation; [Sec. 32.094]

   j. List of "ID" Voters; and

   k. Notice of Delivery of Ballots Voted by Mail (if delivered prior to the opening of the polls.

2. The early voting clerk delivers to the board:

8

SOS_000439

    a.   Each ballot box containing ballots voted by personal appearance;

    b.   List of Declared Write-In Candidates (if applicable);

    c.   The early voting clerk's key to each ballot box;

    d.   The jacket envelopes containing ballots voted by mail and the corresponding applications;

    e.   The list of registered voters, containing voters' permanent and mailing addresses of record, used in conducting early voting;

    f.   Notice of Rejection of Early Voted Ballots (to be completed by Judge of Ballot Board);

    g.   The ballot transmittal form for early voted ballots; and

    h.   Receipt for each ballot box, to be completed when box received.

3.   The custodian of the key to the second lock on the ballot boxes containing ballots voted by personal appearance must deliver his or her key to the presiding officer of the early voting ballot board at his or her request if the Board will be hand counting personal appearance ballots.  [Sec. 87.025]

4.   If ballots will be counted electronically at the central counting station, then:

    ∗   The key and the unopened ballot box should be delivered to the central counting station at the direction of the presiding judge of the central counting station and not to the ballot board, since the law prohibits the ballot board judge from opening the early voting by personal appearance ballot boxes containing ballots that are to be counted by automatic tabulating equipment at a central counting station.  [Sec. 87.101]

    ∗   If accessible voting equipment (such as direct record electronic equipment ("DREs")) or precinct count optical scan equipment was used for early voting, the ballot board should not process the early voting by personal appearance ballot boxes or voting machines.

5.   The custodian of the key is:

    --   for county elections, the county sheriff, unless the sheriff is on the ballot, in which case the key is kept by the county judge.  If both the sheriff and the county judge are on the ballot, the key is kept by the county auditor, or if there is no county auditor, by a member of the commissioners court, named by the court, who is not on the ballot.

    --   for city elections, the chief of police or city marshal.

    --   for elections of other political subdivisions, the constable of the justice precinct in which the office of the political subdivision's governing body is located, or if there is no constable in that precinct, the sheriff.  [Sec. 66.060(a)]

6.   Notice of each delivery to be made prior to the time the polls open on election day must be posted at the main early voting polling place for at least 24 hours immediately preceding the delivery.  [Secs. 87.023(b), 87.024(b)]

7.   In the general election for state and county officers, if ballots are to be delivered before election day, the early voting clerk must notify the county chair of each political party with a nominee on the ballot at least 24 hours before the first delivery is made.  [Secs. 87.023(c), 87.024(c)]

## SECTION C. RECEIPT FOR DELIVERY

1.   Upon delivery of a sealed early voting ballot box, the presiding judge of the early voting ballot board must inspect the box to determine whether the seals on the box are intact, and whether the numbers on the seals

SOS_000440

correspond to the numbers indicated on the record of serial numbers prepared by the early voting clerk. [Secs. 87.062(b), 127.068]

2. If the seals are intact and the numbers match, the presiding judge should accept the ballot box and so indicate on the receipt.

3. If the seals are not intact or the numbers do not match, the presiding judge should accept the ballot box, but note any discrepancies on the receipt and in his or her records.

## SECTION D. SECURITY OF EARLY VOTING BALLOTS

1. The voted early voting ballots must be secured from the last day of voting by personal appearance at a polling place until the day the ballots are counted.  [T.A.C. Sec. 81.34]

   a. If the early voting ballot board convenes before election day, the presiding judge shall, upon each adjournment of the board, lock and seal each ballot box prior to delivering the boxes back to the custodian of records.  The judge shall complete a ballot box security form indicating each serial number used to seal each box.  The form shall be signed by the judge and another early voting ballot board member who has witnessed the procedure.  In a general election for state and county officers, the early voting ballot board member must be from a different political party than the judge.  The custodian of records shall also sign the form.

   c. The presiding judge shall deliver the key(s) used to lock the ballot box(es) to the custodian.  The key shall be retained by the authority designated in accordance with Section 66.060(a) of the Code:

      (1) the sheriff for an election ordered by the governor or county authority or *a primary election*, except that in a year when the office of sheriff is on the ballot, the key shall be delivered to the county judge. When both these offices are on the ballot, the key shall be delivered to the county auditor or to a designated member of the commissioners court who is not on the ballot and who is appointed by the court, if the county does not have an auditor;

      (2) the chief of police or city marshal for an election ordered by a city authority; or

      (3) the constable of the justice precinct in which the office of the political subdivision is located, or if the office of constable is vacant, the sheriff of the county in which the political subdivision is located if the election is ordered by an authority of a political subdivision other than a city or county.

   c. Upon reconvening the ballot board, the presiding judge shall ensure that each ballot box is intact.  The presiding judge shall follow these procedures each day except upon final delivery to the custodian of records.

   e. If it is impracticable for the ballot board judge to deliver the ballot boxes each day upon adjournment, the authority conducting the election shall submit an alternate security procedure to the Secretary of State for approval.

10

SOS_000441

# CHAPTER 4

## QUALIFYING BALLOTS VOTED BY MAIL OR VOTED USING MAIL PROCEDURES

### SECTION A. TYPES OF EARLY VOTING BALLOT APPLICATIONS

The early voting ballot board may encounter several types of applications for early voting ballots. There is not only one form that may be used. They include:

1. The "Application for Ballot by Mail" prescribed by the Secretary of State.  [Secs. 84.001(a), 84.011]

2. An informal application for a ballot by mail, which is a written request by the applicant that is not made on the official application form prescribed by the Secretary of State.  This application must comply with the statutory requirements for applying for a ballot by mail.  [Sec. 84.001(c)]

3. The "Application for Limited Ballot" prescribed by the Secretary of State.  [Sec. 112.005]

4. The "Federal Post Card Application" (FPCA) used by military and overseas citizen voters.  [Sec. 101.003]

5. The "Application for Presidential Ballot" prescribed by the Secretary of State (only applicable in elections held in November of the presidential election year).  [Sec. 113.003]

6. The "Application for Emergency Late Ballot Due to Sickness or Physical Disability" prescribed by the Secretary of State.  [Sec. 102.002]

7. The "Application for Emergency Late Ballot Due to Death" prescribed by the Secretary of State.  [Sec. 103.002]

8. The "Affidavit for Voting at Main Early Voting Place on Election Day" prescribed by the Secretary of State for voting by disabled voters when electronic voting equipment is being used at the precinct polling place.  [Sec. 104.002]

### SECTION B. VALID REASONS FOR VOTING EARLY BY MAIL

Only the following persons may vote early by mail:

1. Persons who are 65 years of age or older on election day. [Sec. 82.003]

2. Persons who have a sickness or physical condition that prevents them from appearing at the polling place on election day without a likelihood of needing personal assistance or injuring their health.  Expected or likely confinement for childbirth on election day is sufficient cause to entitle a voter to vote early by mail on the ground of disability. [Sec. 82.002]

3. Persons who are confined in jail at the time the application is submitted must be either:

   a. serving a misdemeanor sentence that ends on or after election day; or

   b. pending trial or appeal after denial of bail or if release on bail is unlikely until after election day. [Sec. 82.004]

4. Persons who expect to be absent from the county on election day and during regular early voting hours for that part of the period for early voting remaining after the application is made. [Sec. 82.001]  If this reason for voting early is checked, the address to which the ballot was mailed must be an address outside the county. [Sec. 86.003(c)(1)]

5. Persons who are certified for participation in the address confidentiality program.

   a. An application for ballot by mail submitted by a person eligible under Section 82.007 must include:

11

SOS_000442

      i. the name and address at which the person is registered to vote;

     ii.    the substitute post office box designated by the attorney general for the person's use in place of the true residential address; and

    iii.    an indication for each election for which the person is applying for a ballot.

b. The information on an application for ballot by mail submitted by a voter related to the **address at which the voter is registered is confidential**, except that it must be disclosed if requested by a law enforcement agency or required under a court order. This application is good for 3 years.

## SECTION C. QUALIFYING EARLY VOTING BALLOTS VOTED BY MAIL

1. Each jacket envelope will contain:

    a. an application for an early ballot to be voted by mail (or one of the other application procedures in Section A above that uses mail procedures) [Secs. 86.011(b), (c)];  If FPCA was submitted, jacket envelope must include a copy of the FPCA and the signature cover sheet.

    b. the envelope in which the application was delivered to the early voting clerk, if applicable; and

    c. the carrier envelope, which will contain:

        -- a ballot envelope with the ballot inside; and

        -- statements of residence, copy of identification, or other requested items, if applicable. [Sec. 86.002]

2. Remove the application and carrier envelope from the jacket envelope.

3. Check the voter's application to be sure that it states a legal ground for voting early by mail (See Section B above).  [Sec. 87.041(b)(3)]

4. If the reason for voting early by mail is absence from the county, the application must show an address outside the county to which the ballot was mailed.  [Sec. 87.041(b)(5)]

    **NOTE**:  If the application was submitted after the period for early voting by personal appearance began, the application must show that the voter was absent from the county when the application was submitted.  A voter checking expected absence from county and providing an out of county address on the official application is sufficient.

5. If the grounds for voting by mail is either being 65 or over, or disability, and the applicant has not provided his or her official mailing address as shown on the list of registered voters as the address for mailing his or her ballot, the address provided must be that of a hospital, nursing home, other long term care facility, retirement center, or the address of a relative within the second degree of affinity or third degree of consanguinity with whom the applicant is living.  [Sec. 86.003(c)(3)]

6. If the reason for voting early by mail is confinement in jail, the address to which the balloting materials must be addressed is that of the jail facility or a relative within the second degree of affinity or third degree of consanguinity.  [Sec. 86.003(c)(2)]

7. Check to make sure that the address to which the ballot was mailed is one of the following:

    a. the voter's residence or mailing address indicated on the voter's registration record;

    b. the facility that the voter is residing at if the voter has indicated on his or her application to vote by mail that the reason for voting is 65 years of age or older or disability and has provided a mailing address that does <u>not</u> match the voter's  official residence or mailing address, the facility must be one of the following:

        (1) hospital;

SOS_000443

(2) nursing home or long-term care facility;

(3) retirement center; or

(4) relative that is related to the voter by 2nd degree of affinity (by marriage) or the 3rd degree of consanguinity.  Relatives include: parent, child, brother, sister, grandparent, grandchild, great-grandchild, great-grandparent, uncle, aunt, nephew, niece, spouse, spouse's parent, son-in-law, daughter-in-law, brother's spouse, sister's spouse, spouse's brother, spouse's sister and spouse's grandparent.

c.  the jail facility, if the reason for voting by mail is confinement in jail, or the address of a relative listed in Section C. 7. b. above.

d.  an address outside of the county, if the reason for voting by mail is expected absence from the county.

e.  the voter's new address as provided on the enclosed statement of residence if the voter has moved within the county but has failed to update his address with the county voter registrar and is having a ballot mailed to a new residence address. [Secs. 84.002, 86.002, 86.003, 87.041

**NOTE**: Please note that all though you will be looking to ensure that the ballot was mailed to an address, you will not be determining where the voter mails back their ballot. You should not be looking at the delivery postmark.

8.  Check the list of registered voters to ensure applicant is a registered voter. [Sec. 87.041(b)(4)]

**Note:** Due to various address confidentiality laws, some voters will not have a residential address next to their name on the list of registered voters.

a.  If an "S" notation appears next to a voter's name on the list of registered voters, or if the residence address on the application for ballot by mail does not match the residence address on the list of registered voters, the carrier envelope will be stamped "STATEMENT ENCLOSED."  The voter's ballot may NOT be accepted UNLESS a completed, signed Statement of Residence is included in the carrier envelope.  If a completed Statement of Residence is not enclosed, the ballot must be rejected. [Sec. 87.041(b)(6)]

b.  If an "ID" notation appears next to a voter's name on the list of registered voters, the voter's ballot may NOT be accepted unless the voter encloses a copy of one of the documents listed below that establishes the voter's identity:

(1) Texas Driver's License issued by the Department of Public Safety ("DPS");

(2) Texas Election Certificate issued by DPS;

(3) Texas Personal Identification Card issued by DPS;

(4) Texas Handgun License issued by DPS;

(5) United States Military Identification Card containing the person's photograph;

(6) United States Citizenship Certificate containing the person's photograph; or

(7) United States Passport.

NOTE: For voter's who are between 18-60 the above ID's may be expired for up to 4 years. For a voter who is 70 years of age or older the above ID may be more 4 years old. Please note some ID's do not have expiration dates such as a Texas Identification Cards for persons aged 60 or older may be permanent and marked "INDEF;"Texas Election Identification Certificates (EIC) for persons aged 70 or older are permanent cards; Some military ID cards are permanent, including Uniformed Services ID cards and Veterans Affairs ID cards.  These

SOS_000444

are usually marked "INDEF;" and Certificates of Naturalization and Certificates of Citizenship do not expire.

**If a voter does not possess, and cannot reasonably obtain one of the above acceptable forms of photo identification, the voter may also enclose a copy of one of the supporting forms of identification listed below that establishes the voter's identity along with a signed  Reasonable Impediment Declaration:**

　＊ copy or original of a government document that shows the voter's  name and an address, including the voter's  voter registration certificate (other examples of government documents include, but are not limited to: driver's  licenses from other states, ID cards issued by federally recognized Native American tribes (if the ID card contains an address), DPS Receipts (without a photo), expired voter registration certificates, and, for voters aged 18-69, expired Texas DPS-issued driver licenses or personal ID cards);

　＊ copyof or original current utility bill;

　＊ copy of or original bank statement;

　＊ copy of or original government check;

　＊ copy of or original paycheck; or

　＊ copy of or original of (a) a certified domestic (from a U.S. state or territory) birth certificate or (b) a document confirming birth admissible in a court of law which establishes the voter's  identity (which may include a foreign birth document).

**NOTE: The address on either a supporting form of ID or an acceptable photo identification does not need to match the address on the list of registered voters.**

**\*If a voter does not have a valid form of photo identification, they may apply for a free election identification certificate at their local Texas Department of Public Safety office. Reminder: (a) if a voter does not possess one of the seven (7) acceptable forms of photo identification, which, for voters aged 18-69, is not expired for more than four years, or, for voters aged 70 and older, may be expired for any length of time but is otherwise valid, and the voter can reasonably obtain one of these forms of identification or (b) if the voter possesses, but did not bring to the polling place, one of the seven forms of acceptable photo identification, which, for voters aged 18-69, is not expired for more than four years, or, for voters aged 70 and older, may be expired for any length of time but is otherwise valid, or (c) if the voter does not possess one of the seven forms of acceptable photo identification, which, for voters aged 18-69, is not expired for more than four years, or, for voters aged 70 and older, may be expired for any length of time but is otherwise valid, could otherwise not reasonably obtain one, but did not bring a supporting form of identification to the polling place; and the voter does not have a permanent disability exemption indicated on their voter registration certificates, the voter may cast a provisional ballot at the polls.**

**Exemption**:  Voters with a disability may apply with the county voter registrar for a <u>permanent</u> exemption. The application must contain written documentation from either the U.S. Social Security Administration evidencing the applicant's  disability, or from the U.S. Department of Veterans Affairs evidencing a disability rating of at least 50 percent. In addition, the applicant must state that he or she has no valid form of photo identification. Those who obtain a disability exemption will be allowed to vote by presenting a voter registration certificate reflecting the exemption.

**Provisional Voting:** If a voter (a) does not possess one of the seven (7) acceptable forms of photo

SOS_000445

identification, which, for voters aged 18-69, is not expired for more than four years, or, for voters aged 70 and older, may be expired for any length of time but is otherwise valid, and the voter can reasonably obtain one of these forms of identification or (b) possesses, but did not bring to the polling place, one of the seven forms of acceptable photo identification, which, for voters aged 18-69, is not expired for more than four years, or, for voters aged 70 and older, may be expired for any length of time but is otherwise valid, or (c) if the voter does not possess one of the seven forms of acceptable photo identification, which, for voters aged 18-69, is not expired for more than four years, or, for voters aged 70 and older, may be expired for any length of time but is otherwise valid, could otherwise not reasonably obtain one, but did not bring a supporting form of identification to the polling place; and the voter did not present a voter registration certificate with a permanent disability exemption indicated on their voter registration certificate, the voter may cast a provisional ballot at the polls.

The voter will have six (6) calendar days after election day (1) present to the voter registrar an acceptable form of photo identification; (2) if the voter does not possess and cannot reasonably obtain one of the acceptable forms of photo identification, execute a Reasonable Impediment Declaration and present to the voter registrar an acceptable form of supporting identification; (3) complete one of the curing affidavits (consistent religious objection to being photographed or natural disaster exception), if applicable or (4) qualify for a permanent disability exemption, if applicable.

c.  An application from a voter who is accepted into the Address Confidentiality Program must also include their substitute P.O. Box designated by the Attorney General and an indication for each election for which the person is applying for a ballot.  This application is good for 3 years, unlike a regular ABBM application.

d.  Certain persons may vote even though they are not registered to vote in your county and their names do not appear on your list of registered voters.  They are:

(1) Persons applying on Federal Post Card Applications.  The FPCA may be used by persons who are registered voters of your county or who are not registered voters of your county since the federal post card application acts as a temporary registration pending permanent voter registration status (see note below).  [Sec. 101.001]

(2) Persons applying for limited ballots.  A person who moves from one county to another, and the person is either still registered in the former county of residence or was registered in the former county of residence when the person applied to register in the new county of residence.  He or she may vote in their new county of residence, on offices or propositions that are on the ballot in both their new county and the county of his or her former residence.  [Sec. 112.002]

f.  If the voter's name does not appear on the list of registered voters and he or she is not categorized in the group of voters listed in "d" above, the presiding judge must refer to the registration correction list, if provided, to see if the voter's name appears on that form.

## SECTION D: QUALIFYING SIGNATURES FOR THE SIGNATURE VERIFICATION COMMITTEE

1.  Check to see that the certificate on the carrier envelope was properly executed.  The certificate is the statement the voter signs and may include portions filled out by assistants or witnesses.  [Sec. 87.041(b)(1)

SOS_000446

2.  Check the signatures of the applicant on the application and on the carrier envelope to confirm that both signatures have been executed by the voter, unless either document was signed by a witness.  [Sec. 87.041(b)(2)]

3.  A voter may use different witnesses/assistants on their application for ballot by mail and on their certificate. If a voter uses a witness, you would not compare signatures and the ballot should be accepted pending all other qualifications.

4.  Section 87.041(e) provides that the Board/Committee may compare signatures with any two or more signatures of the voter made within the preceding six years and on file with the voter registrar, county clerk or elections administrator.  These additional signatures may be used to confirm that the signatures are either those are not those of the same person.   SB 5 (85th Legislature, 1, 2017) This bill removed the prohibition against the committee using the registration application signature to determine that the signatures are not those of the same person. The bill authorizes the early voting ballot board or signature verification committee to compare a voter's signature on a ballot application or carrier envelope certificate with two or more signatures of the voter made within the preceding six years and on file with the county clerk, in addition to the board's existing authority to make such a comparison with signatures on file with the voter registrar, to determine whether the signatures are those of the same person. The bill removes the prohibition against the board using such signatures on file to determine that the signatures are not those of the same person. The board or the committee may now use the signatures to determine if they are or if they are not that of the same person.

5.  If there is <u>no</u> signature on the carrier envelope (by voter or witness), the ballot must be rejected (see Section F of this chapter for disposition of rejected ballots).  [Sec. 87.041(d)] If the signature is not on the certificate but elsewhere on envelope, our office has said the signature is valid.

-- **EXCEPTIONS**:

a.  If the voter was unable to sign his or her name, the application and/or carrier envelope must each be signed by a witness.  Different people may have witnessed the voter's mark on the application and on the carrier envelope.  If the voter was unable to sign the application and/or carrier envelope himself or herself and one or both were signed by witnesses, then the signature will not be compared.  [Sec. 87.041(b)(2)]

b.  If the voter applied for an early voting ballot on the Application for Late Emergency Ballot Due to Death or the Affidavit for Voting at Early Voting Place on Election Day, the certificate on the carrier envelope does not need to be signed by the applicant.  The carrier envelope will have a notation "103" or "104" written on it by the early voting clerk when the voter applies under these procedures.  [Secs. 103.004(c), 104.004(c)]

   **NOTE:**   A voter's witnessed application or witnessed carrier envelope are not invalid merely because there is no explanation of the voter's inability to make his or her mark. A ballot may not be rejected merely because the voter signed either the application or the carrier envelope and the other document was witnessed.

c.  If the voter applied for a ballot on the Application for Late Emergency Ballot Due to Sickness or Disability, the name, address, and signature of the representative who delivered the application to the early voting clerk must appear on the application and on the carrier envelope containing the voted ballot.  The same representative who submitted the voter's application must deliver the voter's ballot back to the early voting clerk, and the same representative's name must appear on both the application and the carrier envelope.  [Secs. 102.002, 102.004(b), 102.006(a), (b)]

d.  Applicants applying for a limited ballot or a presidential ballot also known as a restricted ballot must have two applications if voting this procedure by mail (i.e., the application for early ballot by

16

SOS_000447

mail and the application for the "restricted" ballot) enclosed in the jacket envelope.  [Secs. 111.004, 112.005, 113.003]

6.   **Signatures that have been either accepted or rejected need to be separated. If the committee has determined that the signatures are not those of the same person, the board may make a determination that the signatures are those of the same person by a majority vote of the board's membership.**

## SECTION E. ACCEPTED BALLOTS

1.   If the applicant has met all the requirements discussed above, the ballot must be accepted for voting.

2.   Open the carrier envelope without defacing the certificate on the carrier envelope and remove the ballot envelope.  [Sec. 87.042(a)]

   a.   A ballot is considered valid even if it is not enclosed in a ballot secrecy envelope; the voter simply loses his/her secrecy of the votes cast.  [Secs. 86.005(d), 87.042(d)]

   b.  If the front of the carrier envelope has "Statement Enclosed" stamped on it, check to see that the statement of residence form is enclosed.  If the applicant's name appears on the list of registered voters with an "S" notation beside it, the applicant is required to complete the statement of residence prior to voting.  If the completed, signed statement is not enclosed, the ballot must be rejected.  (See Section E of this chapter for disposition of rejected early voting ballots.)  [Sec. 87.041(d)]

   NOTE: It is the position of the Office of the Secretary of State that the lack of a statement of residence form included in the envelope of an FPCA voter does not result in a rejected ballot since the FPCA would act as a temporary registration that would prevail the residence address provided on any previous registration applications already on file.

   c.   If the applicant's name appears on the list of registered voters with an "ID" notation beside it, an applicant who possesses an acceptable form of photo identification is required to submit a copy of acceptable photo identification (or, if the voter does not possess, and cannot reasonably obtain an acceptable form of photo ID, a signed Declaration of Reasonable Impediment (see Form 5-22a) and an acceptable form of supporting documentation, or, if the voter has a voter registration certificate with an "E" notation on it, that), along with their mail ballot, unless the voter checks one of the "Exemptions (If Applicable" boxes on Form 5-22a.

3.   Place the unopened ballot envelope in a ballot box or other safe container.  [Sec. 87.042(b)]

4.   Enter the voter's name on the poll list for early voters voting by mail or list for voters using other mail procedures such as limited ballot.  [Secs. 87.041(c); 102.008; 103.005, 104.006]

   a.   If the voter is an FPCA voter, place a check in the "FPCA" column on the poll list next to the voter's name.  [Sec. 101.004]

   b.   If the voter applied for a limited ballot, place a check in the column marked "Limited Ballot" on the poll list next to the voter's name.  [Sec. 111.008]

   c.   In presidential general elections, if the voter applied for a presidential ballot only, place a check in the column marked "Pres. Ballot" on the poll list next to the voter's name.  [Sec. 111.008]

   d.   If the voter is an overseas citizen voter eligible only for a federal ballot, place a check in the column "Overseas Citizen" on the poll list next to the voter's name.  (Only applicable in *primary* and general elections for state and county officers since these voters are limited to federal offices only.)  [Sec. 111.008]

SOS_000448

5. Place the application for the early voting ballot and the envelope that was used to mail the application (if applicable), the carrier envelope, and any accompanying papers back into the jacket envelope. (If the jacket envelope is to be used in a subsequent election, the early voting clerk may provide another envelope to be used in lieu of the jacket envelope.)   Place any affidavits, statements of residence, and copies of identification in Envelope No. 4 to be delivered to the Voter Registrar. [Sec. 87.044(a)]

6. At least 10 early voting ballots voted by mail must be qualified before the ballots may be counted. Ballots may be removed for manual, hand counting at any time when there are at least 10 ballot envelopes containing ballots that have been qualified in the ballot box (or other safe container). If ballots are to be counted by electronic equipment, the general custodian of election must transmit the accepted by mail ballots to the presiding judge of the central counting station in a locked and sealed ballot box or other container approved by the Secretary of State.

## SECTION F. REJECTED BALLOTS

1. If the application and carrier envelope do not meet the requirements discussed above, the ballot must be rejected and may not be counted. [Sec. 87.041(d)]

2. Write the word "rejected" on the carrier envelope. [Sec. 87.041(d)]

3. Write the word "rejected" on the corresponding jacket envelope. [Sec. 87.041(d)]

4. Place the unopened carrier envelopes containing rejected ballots in the large envelope or container marked "Rejected Early Voting Ballots." [Sec. 87.043(b)]

5. The "Rejected Early Voting Ballot" envelope must be sealed and signed by the presiding judge, and the date and nature of the election must be written on the envelope. More than one envelope may be used if necessary. Record the number of rejected ballots, which are placed in the envelope for rejected ballots. [Secs. 87.043(a), (b)]

6. If the ballot was rejected after the carrier envelope was opened, the presiding judge should make a note on the carrier envelope of the reason the carrier envelope was opened and then rejected.

7. Place the application, the envelope used to mail the application to the early voting clerk (if applicable), and any accompanying papers or affidavits in the corresponding jacket envelope. (If the jacket envelope is to be used in a subsequent election, the early voting clerk may provide another envelope to be used in lieu of the jacket envelope.) [Sec. 87.044(a)]

NOTE:   The Early Voting Ballot Board judge must deliver written notice to the voter of the reason for the rejection of his or her ballot no later than the 10th day after election day. [Sec. 87.0431] If this is not done within 10 days and the ballots have been sent back and placed in a ballot box, a court order will be needed to reopen the ballot box. Please contact our office for sample court orders if needed.

SOS_000449

# CHAPTER 5

## COUNTING HAND-COUNTED PAPER BALLOTS

### SECTION A. ESTABLISHING THE COUNTING TEAMS

1.  There may be more than one counting team to tally the early voting ballots.  [Secs. 81.002, 65.001]

2.  Each counting team must consist of two or more early voting ballot board members.  [Secs. 81.002, 65.001]

    a.  One member will be designated the reader.

    b.  The reader may also keep a tally list.

    c.  If there are only two members on a team, one member will keep two tally lists, and the reader will keep one tally list in addition to reading the ballots.

3.  If there is more than one counting team, after all ballots have been counted, the votes for each candidate and/or proposition must be added together with the tallies of the other counting teams, and the totals must be placed on the return sheet.

4.  A member of a counting team may not be replaced after the vote tallying is begun unless each existing discrepancy among the three tally lists is corrected before the replacement is made.  [Secs. 81.002, 65.006(a)]

5.  If a counting member is replaced, he or she must certify the accuracy of the tally list as of the time he or she was replaced.  [Secs. 81.002, 65.006(b)]

### SECTION B. OPENING THE BALLOT BOX CONTAINING HAND-COUNTED PAPER BALLOTS

> **NOTE**: ELECTRONIC BALLOTS CAST IN PERSON ARE NOT TABULATED BY THE EARLY VOTING BALLOT BOARD, BUT RATHER AT A CENTRAL COUNTING STATION.

1.  Open the double-locked ballot box containing the ballots voted by personal appearance.  [Sec. 87.062]

    > **NOTE**:  The early voting clerk will deliver one key to the ballot box when he or she delivers the ballots. The custodian of the second key will deliver the second key at the time specified by the early voting ballot board's presiding judge.  [Secs. 87.021(1), 87.025]

2.  After the presiding judge opens the ballot box, the judge shall remove any provisional ballots and verify the number of provisional ballots in the ballot box, which is reflected on the Early Voting List of Provisional Voters.

3.  The provisional ballots shall be prepared for delivery to the voter registrar and placed in a closed and sealed box for delivery by the general custodian of election records to the voter registrar.  [T.A.C. Sec. 81.174]

4.  All early voting ballots must be sorted by precinct before they are counted so that a separate total of early voting votes cast in each precinct may be obtained.  [Sec. 87.1231]

5.  For political subdivisions using hand-counted paper ballots, early voting ballots cast by personal appearance may be counted while the ballots cast by mail are being qualified if the early voting ballot board consists of enough members.

6.  When at least 10 early voting ballots cast by mail have been qualified and placed in the ballot box or other container, the ballot envelopes may be removed from the box or container, opened, the ballots removed, the ballot envelopes discarded, and the ballots counted.  This process may be repeated any time there are at least 10 ballot envelopes in the box or container.  [Sec. 87.062(a)]

19

**NOTE**:   If there is more than one ballot in a ballot envelope, neither ballot may be counted.   The presiding judge must make notation on the back of each ballot of the reason the ballot was not counted.   These ballots are then placed with the voted ballots in the early voting ballot box. [Sec. 65.010(a)(2)]

## SECTION C. RULES GOVERNING THE COUNTING PROCEDURE

1.  The ballots must be counted separately by precinct.  [Sec. 87.1231]

2.  Three original tally lists are required for each precinct.   [Secs. 65.004, 87.1231]   A separate page of the same tally book may be used for each precinct's tally list.   These tally lists should be completely filled out, and include the following:

    --   Names and offices of candidates; and/or

    --   Propositions;

    --   Date;

    --   Precinct number;

    --   Type of election;

    --   Name of presiding judge; and

    --   Signature of the person keeping the tally list.

3.  Before the counting begins, the early voting Ballot Box should be inspected to ensure that it is empty.   It should then be locked and remain locked (except as authorized by the presiding judge), and within view of the counting officials.  [Sec. 65.003(c)]

4.  No marks should be made on any ballot by an election official, except that if a ballot is not counted because the judge determines it was not provided by the early voting clerk or because two or more ballots were folded together, an election official must indicate on the back of the ballot the reason for not counting it. [Sec. 65.010(c)]

## SECTION D. THE COUNTING PROCEDURE

1.  The reader must read and distinctly announce to the officials keeping the tally lists each name of a candidate or proposition for which there is a vote.  [Sec. 65.005(a)]

2.  The intent of the voter in marking the ballot may be determined by:

    a.  a distinguishing mark adjacent to the name of a candidate or voting choice associated with a proposition;

    b.  an oval, box, or similar marking clearly drawn around the name of a candidate or a voting choice associated with a proposition;

    c.  a line drawn through:

        (1) the names of all candidates in a manner that indicates a preference for the candidate not marked if the names of the candidates not marked do not exceed the number of persons that may be elected to that office;

        (2) a voting choice associated with a proposition in a manner that clearly indicates a preference for the other voting choice associated with the proposition; or

    d.  any other evidence that clearly indicates the intent of the voter in choosing a candidate or deciding on a proposition.  [Sec. 65.009]

20

SOS_000451

3.  As each vote is read, a tally mark is made by the corresponding name or number on the tally lists.  [Sec. 65.005(a)]

4.  The tally lists should be compared periodically and any errors or discrepancies corrected.  [Sec. 65.005(b)]

5.  When the reader has completely read and announced all the votes on the ballot, he or she deposits the ballot in the locked early voting ballot box.

6.  Any voted ballot that is not counted is also deposited in the box containing the counted ballots.  [Sec. 65.012(b)]

    **NOTE**: A ballot that was not counted should contain a clear notation on the back that it was not counted to avoid an accidental counting during a recount, etc.  [Sec. 65.010(c)]

### SECTION E. RULES FOR COUNTING MANUALLY-CAST OR HAND-COUNTED OPTICAL SCAN BALLOTS

(See generally, Chapter 65 and Secs. 64.003-64.006)

1.  The voter should mark his or her ballot by placing an "X" or other mark in the square beside each candidate, proposition, or party column for which he or she wishes to vote (See Figure 1).  [Sec. 64.003]

<div style="border:1px solid black">

(Primary Election Ballot)

For Governor

☐ Candidate A

☐ Candidate B

*☒ Candidate C

</div>

<div style="border:1px solid black">

(General Election Ballot)

| Candidates for | ☐ PARTY A | ☐ PARTY B | ☐ PARTY C | ☐ Independent | ☐ Write-In |
|---|---|---|---|---|---|
| Governor | ☐ Candidate A | ☐ Candidate B | *☒ Candidate C | | |

</div>

**Figure 1.  Illustrations of marked ballots.**
**(The asterisks indicate the candidates for whom the ballot is counted.)**

2.  Election officials shall not refuse to count a ballot because the voter marked his or her ballot by scratching out the names of candidates for whom, or the statement of propositions for which, he or she did not want to vote (See Figure 2). [Sec. 65.009(b)]

| Candidates for | ☐☐ PARTY A | ☐☐ PARTY B | ☐☐ ~~PARTY C~~ | ☐☐ INDEPENDENT | ☐WRITE-IN |
|---|---|---|---|---|---|
| First Office | ☐~~Candidate~~ | ☐~~Candidate~~ | ☐~~Candidate~~ | ☐~~Candidate~~ | ☐_____ |
| Second Office | * ☐Candidate | ☐~~Candidate~~ | | ☐~~Candidate~~ | ☐_____ |
| Third Office | * ☐Candidate | ☐~~Candidate~~ | | ☐~~Candidate~~ | ☐_____ |
| Fourth Office | * ☐Candidate | ☐~~Candidate~~ | | | |
| Fifth Office | * ☐Candidate | | | | |
| Sixth Office | * ☐Candidate | | | | |
| Seventh Office | * ☐Candidate | ☐~~Candidate~~ | | | |

21

SOS_000452

| | | | | |
|---|---|---|---|---|
| Eighth Office | * ☐ Candidate | ☐ ~~Candidate~~ | ☐ ~~Candidate~~ | |
| Etc. | | | | |

**Figure 2.  Illustration of the scratch method.**
**(The asterisks indicate the candidates for whom the ballot is counted.)**

3.  **Figure 2.  Illustration of Guideline No. 1.**
**Two party squares marked and individual candidates also marked in one or more columns.**
**(The asterisks indicate the candidates for whom the ballot is counted.)**

| Candidates for | ☐ PARTY A | ☐ PARTY B | ☐ PARTY C | ☐ INDEPENDENT | ☐ WRITE-IN |
|---|---|---|---|---|---|
| First Office | *☒ Candidate | *☒ Candidate | ☐ Candidate | ☐ Candidate | ☐ _____ |
| Second Office | ☐ Candidate | *☒ Candidate | | ☐ Candidate | ☐ _____ |
| Third Office | *☒ Candidate | Candidate | | ☐ Candidate | ☐ _____ |
| Fourth Office | ☐ Candidate | ☐ Candidate | | | |
| Fifth Office | ☐ Candidate | | | | |
| Sixth Office | *☒ Candidate | | | | |
| Seventh Office | ☐ Candidate | ☐ Candidate | | | |
| Eighth Office | ☐ Candidate | *☒ Candidate | | ☐ Candidate | |
| Etc. | | | | | |

Guideline No. 1.  Where more than one candidate square is marked, those votes may not be tallied, and the ballot may be counted only for candidates individually marked, if any. (If there are no candidates individually marked, no portion of the ballot is counted.) [Sec. 65.007(d)]

b.  An entire ballot cannot be voided if the intent of the voter can be determined for any one race or proposition on the ballot. [Sec. 65.009(c)]

c.  <u>An individual vote</u> is not counted in the following situations:

(1)  <u>An individual vote</u> is not counted if the intent of the voter cannot be determined. [Sec. 65.009(c)]

(2)  <u>An individual vote</u> is not counted if the voter marked more than one candidate for one race ("overvote").

In municipal, school board, or other political subdivision elections where it is possible to vote for more than one candidate in the same race, a ballot may not be counted if a voter has marked more candidates than are to be elected. [Sec. 65.011]   A ballot is not invalid if the voter has marked fewer candidates than the number to be elected ("undervote"). [Sec. 65.009]

VOTE FOR NONE, ONE, TWO, OR THREE

☒ Candidate

☒ Candidate

22

SOS_000453

☐ Candidate

☐ Candidate

☒ Candidate

☒ Candidate

**Figure 3.  Illustration of overvoting; voter has voted for more candidates than are to be elected.  (No portion of this ballot is counted.)**

VOTE FOR NONE, ONE, TWO, OR THREE

*☒ Candidate

☐ Candidate

*☒ Candidate

☐ Candidate

☐ Candidate

☐ Candidate

**Figure 4.  Illustration of undervoting; voter has voted for fewer candidates than are to be elected.  (A vote is counted for each candidate receiving a vote.)**

(3)  <u>An individual vote</u> is not counted in the following write-in voting situations:

    (a)  The voter used a sticker or rubber stamp with the name of a write-in candidate printed or written on it. [Sec. 65.008(b)]

    (b)  *The election is the primary election for the office of precinct chair or county chair*, a November general election, city council officer elections, an independent or common school district trustee election, special elections for state representative and state senator, or other elections where declaration of write-in is required and the voter writes in the name of a person whose name is not on the list of declared write-in candidates.  [Secs. 144.006, 146.031(d), 146.054, 146.055, 146.082, 171.0231 Election Code; Secs. 11.056(c), 11.304, 130.081, 130.0825, Education Code; Sec. 285.131, Health and Safety Code; Secs. 326.0431 & 326.0432, Local Government Code; Secs. 36.059, 49.101, 63.0945, Water Code]

    (c)  *The election is a primary and the voter writes in a vote for a candidate for public office; only write-in votes for declared candidates for party officer of county chair and precinct chair may be counted. [Sec. 172.112]*

    (d)  The election is a runoff election and a voter writes in any candidate's name; no write-in votes may be counted at a runoff election. [Sec. 146.002]

    (e)  The voter voted for the presidential candidate of one party and the vice-presidential candidate of another party or voted for the presidential or vice-presidential candidate of one party and wrote in the name of a candidate he or she desires to vote for instead of that candidate's running mate. [Sec. 192.037]

d.  A <u>ballot</u> is not counted in the following situations:

    (1)  A <u>ballot</u> is not counted if the intent of the voter cannot be determined. [Sec. 65.009] (See Figure 8).

| Candidates for | ☐ PARTY A | ☐PARTY B | ☐ PARTY C | ☐INDEPENDENT | ☐WRITE-IN |
|---|---|---|---|---|---|

SOS_000454

| First Office | ☒ Candidate | ☐ Candidate | ☒ Candidate | ☐ Candidate | ☐ _____ |
| Second Office | ☒ Candidate | ☒ Candidate | | ☐ Candidate | ☐ _____ |
| Third Office | ☐ Candidate | ☒ Candidate | | ☒ Candidate | ☒ _John Smith_ |
| Fourth Office | ☒ Candidate | ☒ Candidate | | | |
| Fifth Office | ☒ Candidate | | ☒ Candidate | | |
| Sixth Office | ☐ Candidate | ☒ Candidate | ☒ Candidate | | |
| Seventh Office | ☒ Candidate | ☒ Candidate | | | |
| Eighth Office | ☒ Candidate | ☒ Candidate | | ☐ Candidate | |
| Etc. | | | | | |

**Figure 5.  Illustration of lack of knowledge of intent of voter.**
**(No portion of this ballot is counted.)**

(2) A <u>ballot</u> is not counted if two or more ballots are folded together in a manner that indicates they were folded together when deposited in the ballot box by the voter.  [Sec. 65.010(a)(2)]

(3) A <u>ballot</u> is not counted if the ballot is not numbered or not signed by the judge and the judge determines that this ballot was not provided at the polling place.  However, this ballot may be counted if the judge determines that it was provided at the polling place.  [Secs. 65.010(a)(1), (b)]

(4) A provisional ballot found by an election worker not contained within the provisional voter affidavit envelope.  [T.A.C. §§ 81.172-81.174]

Guideline No. 6.  Where the voter marks a candidate but writes in a declared write-in, the write-in vote is counted.

| Candidates for | ☐  PARTY A | ☐  PARTY B | ☐PARTY C | ☐INDEPENDENT | ☐WRITE-IN |
|---|---|---|---|---|---|
| First Office | ☐Candidate | *☒ Candidate | ☐Candidate | | *  ☐ _John Smith_ |
| Second Office | ☐Candidate | *☒ Candidate | | | ☐_____ |
| Third Office | ☐Candidate | * ☐ Candidate | | | ☐_____ |
| Fourth Office | ☒ Candidate | ☒ Candidate | | | |
| Fifth Office | ☐Candidate | | | | |
| Sixth Office | ☐Candidate | | | | |
| Seventh Office | ☐Candidate | * ☐ Candidate | | | |
| Eighth Office | ☐Candidate | * ☐ Candidate | | | |
| Etc. | | | | | |

**Figure 6.  Casting a write-in vote.  Illustration of Guideline No. 6.**
**(The asterisks indicate the candidates for whom the ballot is counted.)**

Guideline No. 6.  Where voter fails to properly mark an "X" in the write-in box, the write-in vote may be counted if the presiding judge can determine the intent of the voter. [Secs. 52.070(e), 65.009]

## SECTION F. HANDLING THE ELECTION RETURNS FOR PAPER BALLOTS

1.   Making out the returns.

24

a. After all ballots are counted, the tally list, including separate totals for precincts, must be totaled and signed by the counting officer keeping it. If more than one officer has kept one particular list, each officer signs the list upon finishing. [Sec. 65.005(c)]

b. Total each tally list to obtain the total number of votes cast for each candidate and/or for or against each proposition. [Sec. 65.005(c)]

c. The presiding judge must make out and sign all copies of the returns. [Sec. 65.014(c)]

d. A separate return sheet must be made for each precinct. [Sec. 87.1231]

e. Election officials should also prepare a summary return sheet to show complete early voting returns for all precincts.

2. Distribution of election returns, poll lists, and tally lists.

a. There must be four copies of the returns for each precinct. [Secs. 65.014(c), 87.1231]

b. There must be three copies of the poll list (or four copies of the combination form). [Sec. 63.003(b)]

c. There must be three originals of the tally list for each precinct. [Secs. 65.004, 87.1231]

3. Five envelopes for distribution of election records are furnished with the supplies.

a. Envelope No. 1 is addressed to the presiding officer of the local canvassing authority. [Sec. 66.003(b)(1)]

   -- County judge (general election for state and county officers or election held by the county).

   -- *County chair (primary election).*

   -- Mayor (municipal election).

   -- Presiding officer of the governing board (other elections).

b. Envelope No. 2 is addressed to the general custodian of election records. [Secs. 66.001, 66.003(b)(2)]

   -- County clerk or county elections administrator (general election for state and county officers, election held by the county, *primary election*).

   -- City clerk or secretary (municipal election).

   -- Secretary of the governing board, or if none, the presiding officer of the governing board (other elections).

c. Envelope No. 3 is addressed to the early voting ballot board judge. [Sec. 66.003(b)(3)]

d. Envelope No. 4 is addressed to the Voter Registrar. [Sec. 66.003(b)(4)]

e. *Envelope No. 5 is addressed to the County Chair.*

4. The records of the election must be distributed as follows:

a. Contents of Envelope No. 1. [Sec. 66.022]

   (1) The original of the election returns of early voting ballots for each precinct.

   (2) One copy of the tally list for each precinct (from each counting team, if applicable).

b. Contents of Envelope No. 2. [Sec. 66.023]

   (1) A copy of the returns of the early voting ballots for each precinct and the summary return.

   (2) A copy of the tally list for each precinct (from each counting team, if applicable).

25

SOS_000456

(3) The original of the poll list of early voting voters voting by personal appearance and by mail.

(4) The signature roster.

(5) The precinct early voting list

(6) An affidavits completed at the polling place.

(7) Any certificates of appointment of poll watchers.

c.  Contents of Envelope No. 3. [Sec. 66.024]

(1) A copy of the returns of early voting ballots for each precinct and the summary return.

(2) A copy of the poll list of early voters voting by personal appearance and by mail.

(3) A copy of the ballot register.

d.  Contents of Envelope No. 4. [Sec. 66.0241]

(l) The precinct list of registered voters.

(2) The registration correction list, if any.

(3) Any Statements of Residence completed at the polling place or by mail or copies of identification submitted by mail.

(4) List of "ID" Voters.

(5) Copy of Combination Form, if used instead of individual affidavits.

e.  *Contents of Envelope No. 5.*

--  *Original of the Statement of Compensation, in a primary election.*

f.  Contents of early voting ballot box. [Sec. 66.025]

(1) The voted ballots.

(2) A copy of the early voting returns for each precinct and the summary return.

(3) A copy of the tally list for each precinct.

(4) A copy of the poll list of early voters voting by personal appearance and by mail.

5.  Manner and time of delivery of records.

a.  The presiding judge must deliver Envelope No. 1 in person to the presiding officer of the local canvassing authority, or if that officer is unavailable, to the general custodian of election records. [Sec. 66.051(a)]

b.  The presiding judge must deliver Envelope No. 2 and Ballot Box No. 3, the rejected ballot envelope, the jacket envelopes containing the carrier envelopes and applications, and all unused supplies in person to the general custodian of election records. [Sec. 66.051(b)]

c.  The presiding judge retains Envelope No. 3. [Sec. 66.051(c)]

d.  The presiding judge must deliver Envelope No. 4 in person to the voter registrar, or if that officer is unavailable, to the general custodian of election records for later delivery to the voter registrar. [Sec. 66.051(d)]

e.  The judge delivers the keys to the Ballot Box to:

26

SOS_000457

(1) The sheriff for an election ordered by the governor or a county authority or *for a primary election*, unless the sheriff is on the ballot, in which case the keys are delivered to the county judge.  If both the sheriff and the county judge are on the ballot, the keys are delivered to the county auditor, or, if there is no county auditor, to a member of the commissioners court, named by the court, who is not on the ballot. [Sec. 66.060(a)(1)]

(2) The chief of police or city marshal for an election ordered by a city authority. [Sec. 66.060(a)(2)]

(3) The constable of the justice precinct in which the governing body's office is located, or if the constable's office is vacant, to the sheriff of the county, for an election ordered by a political subdivision other than a county or city. [Sec. 66.060(a)(3)]

*f.   Envelope No. 5 is delivered to the County Chair.*

g.   Time.

(1) Records must be delivered to the appropriate authority immediately after the returns are completed. [Secs. 66.053(a), 87.063]

(2) If the judge determines that the ballots will not be counted in time to permit delivery of the records by 2:00 a.m. of the day following the election, he or she must notify the general custodian of election records by telephone between midnight of election day and 1:00 a.m. of the following day of:

-- The vote totals tallied for each candidate and for and against each measure at the time of notification.

-- The expected time of finishing the count. [Secs. 66.053(b), 87.063]

(3) In every election, the early voting ballot board records must be delivered to the appropriate authorities not later than 24 hours after the polls close. [Secs. 66.053(c), 87.063]

6.   At the time the early voting ballot board records are delivered, supplies shall be returned to the authority responsible for providing such supplies.  The presiding judge shall follow the instructions of such authority regarding the storage or return of empty ballot boxes and their keys and other equipment. [Sec. 87.123]

## SECTION G. REPORTING EARLY VOTES

1.   The presiding judge of the Board must deliver the counted ballots, the early voting election returns, other early voting election records, and ballot box keys to the appropriate authorities.  [Sec. 87.063]

2.   The early voting totals must reflect the number of early votes for each candidate or measure by election precinct.  [Secs. 67.004(c), 87.1231]

27

SOS_000458

# CHAPTER 6

## EXAMINING, PREPARING, AND COUNTING VOTED OPTICAL SCAN BALLOTS

### SECTION A. PROCESSING BALLOTS COUNTED AT CENTRAL COUNTING STATION

**NOTE**:    If the ballots are to be delivered to the central counting station before the time the polls are closed on election day, the intervals during the day at which the ballots are to be delivered must be stated in the resolution, order, or other official action authorizing the early deliveries. [Sec. 127.124]

1. The early voting clerk shall deliver the early voting ballots to the central counting station. This should include the container for the early voting electronic system ballots that are to be counted by automatic tabulating equipment at a central counting station.  This shall be done without opening the container.

2. The early voting electronic system ballots counted at a central counting station shall be tabulated separately from the ballots cast at precinct polling places and shall be separately reported on returns. [Sec. 87.103]

3. The general custodian of records shall post a guard to ensure the security of ballot boxes containing voted ballots throughout the period of tabulation at the central counting station. [Sec. 127.1232]

### SECTION B. DELIVERY OF BALLOT BOX.

1. Poll watchers may accompany election officials delivering ballot container after optical scan mail ballots are qualified. [Sec. 33.060]

    If delivery is made in a vehicle, it is sufficient to allow the watchers to follow in a different vehicle and to drive in such a manner that the watchers are able to keep the delivery vehicle in sight.

2. The officers must present the ballot box to the presiding judge of the counting station or his or her designee.

3. The delivering officers must then exchange the ballot box for a signed receipt. [Sec. 127.068(a)]

4. The rejected ballot envelopes, jacket envelopes containing the carrier envelopes, and any unused supplies are returned to the general custodian of election records.

SOS_000459

# CHAPTER 7

## RECONVENING EARLY VOTING BALLOT BOARD

The early voting ballot board must reconvene after the election to review and qualify provisional ballots and to qualify ballots that were cast from outside the United States on or before election day and that are received by the sixth day after election day.  The early voting clerk may determine whether or not the committee will need to reconvene after election day to verify signatures or leave that authority with the early voting ballot board. We recommend that this decision be done prior to the election day. If the authority is left with the committee we recommend that the committee coordinates with the board and the early voting clerk for delivery of the jacket envelope ballots by mail. If there is a SVC, the SVC must verify the signatures before the EVBB meets. The SVC would follow the same procedures of when they first convene.

## SECTION A. ESTABLISHING THE EARLY VOTING BALLOT BOARD TO REVIEW PROVISIONAL BALLOTS

The authority appointing the early voting ballot board may determine which members of the board will review and count the provisional ballots.  The entire ballot board is not required to be present.  A minimum of three members of the board is required to conduct the review.

1. Convening Early Voting Ballot Board.

    a. The presiding judge of the early voting ballot board may convene the board as soon as practicable after the voter registrar has completed the review of the provisional ballots**, or if the voter registrar reviews the provisional ballots in "batches" and releases completed "batches" sequentially, the presiding judge may convene the board as soon as practicable after the voter registrar has completed one or more "batches."** The judge must post a notice on the bulletin board used for posting notices of meetings of the governing body ordering the election no later than 24 hours before each time the board is scheduled to meet. The board may also convene while the voter registrar continues the review.

    b. The early voting ballot board cannot convene a final time until after the 6th day after the election due to Voter ID verification. We recommend to review provisional ballots on a rolling basis.

2. Delivery of Materials To Early Voting Ballot Board.

    a. The board should obtain from the authority conducting the election a package of supplies, including the:

        (1) Return sheets;

        (2) Tally sheets; and

        (3) Envelopes for Accepted and Rejected Ballots.

    b. The general custodian will deliver to the early voting ballot board the Lists of Provisional Voters from each precinct.

3. Delivery of Provisional Ballots.

    a. The early voting ballot board presiding judge shall take receipt of (1) the provisional ballots directly from the voter registrar or the custodian of election records and (2) List of List of Provisional Voters Who Presented Proper Identification to Voter Registrar at a time and place to be determined by the presiding judge and; [Sec. 65.0541]

    b. The presiding judge completes the Verification of Provisional Ballots and Serial Numbers Form by signing at the time of receipt that the seal(s) were intact, the serial numbers of the seal(s) were accurately reflected, and the number of provisional ballots received.

SOS_000460

4. Review of Provisional Ballots.

The early voting ballot board shall review both the election judge's and the voter registrar's notation on each Provisional Ballot Affidavit Envelope to determine whether or not the ballot should be counted as indicated below.

a. Provisional ballots to be counted:

(1) The ballot shall be counted if the voter failed to submit identification at the polling place, but the voter registrar indicated the voter presented an acceptable form of identification in person at the registrar's office within six calendar days after the date of the election and the voter was otherwise eligible to vote in the election.

(2) The ballot shall be counted if the voter failed to submit identification at the polling place, but the voter registrar indicated on the Provisional Ballot Affidavit Envelope that the voter applied for and received the disability exemption under Section 13.002(i) of the Election Code by the sixth day after election day and the voter was otherwise eligible to vote in the election.

(3) The ballot shall be counted if the voter failed to submit identification at the polling place, but the voter registrar indicated the voter completed one of the two curing affidavits set out in Section 65.054(b)(2)(B) (consistent religious objection to photographs) or 65.054(b)(2)(C) (identification unavailable due to declared natural disaster) no later than the sixth day after election day.

(4) If the election judge indicated that the reason for casting a provisional ballot was that the voter appeared on the list of registered voters as having cast a ballot by mail, and the voter claimed that he never received the mail ballot, or would like to cancel his or her mail ballot, the provisional ballot shall be counted if the voter's mail ballot <u>has not already been received</u>

(5) If the voter registrar indicated that the provisional voter is registered to vote in the territory holding the election, the ballot shall be counted.

(6) If the voter registrar indicated that the provisional voter is registered to vote, but was erroneously listed in the wrong precinct, the ballot shall be counted.

(7) If the voter was erroneously removed from the voter registration list and is otherwise qualified to vote, the ballot shall be counted.

(8) The voter registrar has information in the office that the voter did complete an application, and the voter is otherwise qualified, the ballot shall be counted.  (For example, evidence that the voter submitted and application at a DPS office or via a volunteer deputy registrar.)

b. Provisional ballots not to be counted:

(1) If the election judge indicated that the voter did not provide an acceptable form of identification and the voter registrar noted that the voter did not (1) present an acceptable form of identification to the voter registrar, (2) complete one of the curing affidavits set out in Section 65.054(b)(2)(B), or (3) apply for and receive a disability exemption by the sixth day after election day, then the ballot shall not be counted.

(2) If the election judge indicated that a voter with a permanent disability exemption to the identification requirements did not submit the registration certificate at the polling place, and the voter registrar notes that the voter failed to (1) present their registration certificate with exemption, (2) present another form of acceptable identification, or (3) apply for and receive a permanent disability exemption by the sixth day after election day, the ballot shall not be counted.

30

SOS_000461

(3)   If a voter voted provisionally due to having an outstanding mail ballot that has not yet been cancelled, the provisional ballot shall not be counted <u>if the provisional voter has already voted.</u>

(4)   If the voter registrar indicated that the provisional voter is not registered to vote in the territory holding the election or the registration was not effective in time for the election, the ballot shall not be counted.

(5)   If the voter registrar indicated that the provisional voter is registered to vote at a different precinct other than the one the voter voted in, the ballot shall not be counted. This is not the case if the county that is part of the countywide polling place program.

(6)   If the election judge indicated that the voter was on the list of registered voters, but the voter's registered residence address is outside the political subdivision, the ballots shall not be counted.

(7)   If the voter registrar indicated that an incomplete application was received from the provisional voter but the required additional information was not returned, the ballot shall not be counted.

5.   Disposition of Accepted or Rejected Ballots.

   a.   The presiding judge shall indicate the disposition of each ballot on the provisional voter affidavit envelope.

   b.   The presiding judge shall also indicate the disposition of each ballot on the List of Provisional Voters for that precinct.

   c.   The ballots to be counted shall be removed from their provisional ballot envelopes (which are sealed in a secrecy envelope).  After at least 10 secrecy envelopes have been removed from the provisional ballot envelopes and placed in a separate container, the secrecy envelopes are opened, and the ballots are counted under the normal procedure for counting ballots by mail in an election either by hand counting or by central counting station [See Chapters 5 and 6].  The presiding judge of the early voting ballot board or central counting station shall complete a return sheet of the votes and record them by precinct. The Provisional Voter Affidavit Envelopes are placed in the Envelope for Accepted Voters and delivered to the general custodian of election records.

   d.   The Provisional Voter Affidavits Envelopes that are not counted are placed in the Envelope for Rejected Provisional Ballots and delivered to the general custodian of election records.

   e.   Rejected Provisional Ballot Affidavit Envelopes may not be opened except by court order. [T.A.C. Sec.81.176 (14)]

6.   Counting Paper Ballot Provisional Ballots.

   a.   See Chapters 5 and 6 for counting rules.

   b.   Once counted, the provisional ballots shall be re-locked and returned to the custodian of election records. The key shall be delivered to the custodian of the key.

   c.   If a DRE system is used for provisional voting, the entity conducting the election will direct how provisional ballots are processed.

7.   Counting of Provisional Ballots Electronically (optical scan).

   a.   The manager of the central counting station shall decide whether the ballot board shall manually count the ballots with the totals manually added to the computer count for a canvass total or whether the central counting station shall reconvene.

31

SOS_000462

b.  The manager shall send notice to the presiding judge of the ballot board prior to reconvening the board as to whether the ballots are to be counted manually by the board or whether the ballots are to be prepared for delivery to the central counting station.

c.  If the ballots are to be counted by the central counting station, the manager must post notice at least 24 hours prior to reconvening the central counting station.  Section 1.006 does not apply.

d.  A ballot transmittal form must be completed by the presiding judge of the ballot board.  The transmittal form will accompany the accepted provisional ballots.

e.  Prior to the beginning of the count at a central counting station, the manager shall run the required second logic and accuracy test using the same test deck as on Election Day. After the count is complete, the manager shall run the required third logic and accuracy test. If the test is not successful, the count is void.

f.  The central counting manager may add the provisional ballots to the original returns by hand in order to provide one complete return sheet, may enter the provisional ballots directly on the electronic voting system to have one final electronic return sheet or may provide a separate return sheet with just provisional ballot vote totals. The return sheets are placed in Envelope No. 2 and delivered to the custodian of election records.

g.  The counted provisional ballots and other election materials are returned to the custodian of election records and retained for the appropriate preservation period.

NOTE:    Since provisional ballots will probably be processed and counted at the same time as the late early voting by mail ballots, additional procedures relating to late ballots pursuant to T.A.C. Sec. 81.37 may also apply.

8.  Notice to Provisional Voters.

Not later than the 10th day after the local canvass, the early voting ballot board's presiding judge shall deliver written notice regarding whether the provisional ballot was counted to the provisional voter, and if the ballot was not counted, the reason the ballot was not counted. The presiding judge shall use the information provided on the affidavit to obtain the proper mailing address for the voter and the final resolution of the provisional ballot.

9.  Distribution of Provisional Voting Records.

a.  Custodian of election records receives:

(1) Lists of Provisional Voters;

(2) Return sheets;

(3) Tally Sheets;

(4) Envelopes for Accepted and Rejected Provisional Ballot Affidavit Envelopes;

(5) Counted Ballots; and

(6) Verification of Provisional Ballots and Serial Numbers.

b.  Custodian of the key receives the key to the ballot box after it has been locked.

c.  Presiding officer of the canvassing authority receives:

(1) Return sheets; and

(2) Tally Sheets.

SOS_000463

## SECTION B. RECONVENING FOR QUALIFYING LATE EARLY BALLOTS BY MAIL

1. Requirements for ballots to be counted late.

   The Board must reconvene to count mail ballots which were:

   a. arrived by 5pm on the day after election and bears a cancellation mark of a common or contract carrier or courier indicting a time not later than 7pm at the location of the election on election day.

   b. cast from outside the United States;

   c. placed in delivery before the polls closed; and

   d. which arrived not later than the 5th day (non military overseas) and 6th day (military)  after election day. [Sec. 86.007(d)]

      **NOTE**:    If the 5th of 6th day falls on a weekend day, federal or state holiday, this deadline is extended to the next regular business day.

2. When should the board reconvene?

   a. The general rule is on the 9th day after election day or earlier, if the early voting clerk can determine that all ballots cast from outside the United States have been received.  [Sec. 87.125(a)].

   b. For a general election for state and county officers the date moves to the 13th day after election day, or earlier if the early voting clerk can determine that all ballots cast from outside the United States have been received.  [Sec. 87.125(a-1)].

3. The Carrier Envelope must be:

   a. timely submitted;

   b. properly addressed with postage (no postage is required for FPCA carrier envelopes); and

   c. bear a cancellation mark from a postal service before the polls close or a receipt mark from a common or contract carrier indicating the ballot was received before the polls closed.

4. Additional general provisions.

   a. The presiding judge shall notify the early voting clerk as to the time and place where the board will reconvene.  The notice must be made in time so the early voting clerk may give proper notice of the delivery.  The early voting clerk must post notice of delivery of jacket envelopes and any other accompanying papers to the early voting ballot board at least 24 hours prior to the delivery.  The notice shall be posted at the main early voting polling place.  Section 1.006 does not apply.

   b. The presiding judge shall send notice to the custodian of the key and the custodian of election records to redeliver the ballot box containing the counted ballots and the key to the box.  After the late ballots have been counted, the presiding judge shall lock the late counted ballots in the ballot box.  The presiding judge shall deliver the ballot box to the general custodian of election records and the key to the ballot box to the custodian of the key.

   c. Poll watchers are entitled to be present.

   d. If all mail ballots were received by the close of voting on election day or no ballots were received by the appropriate deadline for the election, the early voting clerk shall certify that fact and deliver the certification to the canvassing board before they convene to canvass the votes. [Sec. 87.125(a)]

5. Special provisions for paper ballots.

a.  Once the ballots have been qualified, the presiding judge shall use the regular method of counting ballots by keeping three new tally sheets, counting by precinct, and having at least two members per tally team.  [Ch. 65, Secs. 87.062, 87.103; T.A.C. § 81.37(b)]

b.  Once the board has counted all the ballots, an original and three copies of the return sheet shall be prepared.

c.  The distribution of the tally sheets and return sheets shall be made in accordance with the Texas Election Code, Subchapter B, Chapter 66.

d.  The canvassing board shall add the returns from both early voting return sheets when canvassing the vote.

6.  Provisions for Electronic Voting Systems. [T.A.C. §§ 81.37(c), 87.103]

a.  The manager of the central counting station shall decide whether the ballot board shall manually count the ballots with the totals manually added to the computer count for a canvass total or whether the central counting station shall reconvene.

b.  The manager shall send notice to the presiding judge of the ballot board prior to reconvening the board as to whether the ballots are to be counted manually by the board or whether the ballots are to be prepared for delivery to the central counting station.

c.  If the ballots are to be counted by the central counting station, the manager must post notice at least 24 hours prior to reconvening the central counting station.  Section 1.006 does not apply.

d.  A ballot transmittal form must be completed by the presiding judge of the ballot board.  The transmittal form will accompany the ballots qualified.

e.  The manager must order a 2nd test to be conducted prior to the count.  The test must be successful.

f.  Poll watchers are entitled to be present.

g.  After the 2nd test is successful, the unofficial election results preserved by electronic means shall be loaded in the tabulating equipment.

h.  The tabulation supervisor shall print a status report before the count is to begin.  This status report shall be compared with the report run on election night.  If the two status reports do not match, the electronic ballots must be counted by hand and the total manually added to the returns printed on election night.

i.  If the status reports match, the tabulation supervisor may order the count to begin.  The precinct returns from these counts may be included with the original precinct counts.  The tabulation supervisor does not need to keep the precinct-by-precinct results of the late ballots separate from other early voted ballots.

j.  Once the ballots have been counted, results shall be prepared in the regular manner.  The manager shall prepare a certification and attach it to the returns, then place both in envelope #1 to be delivered to the presiding officer of the canvassing board indicating that the results supersede any returns printed prior to the reconvening of the central counting station after election day.

k.  After the results have been prepared, a successful 3rd test must be performed.

l.  The results, ballots, and distribution of ballots and all records shall be made in the regular manner.

SOS_000465

# APPENDIX A

**This chapter will have examples of questions we see arise for a Signature Verification Committee and examples of situations.**

## A. Questions in regards to verifying signatures:

1. Do signatures have to be identical?

   As part of the Signature Verification Committee their duty is to compare signatures, however we understand that the SVC are not handwriting experts. With that said it is at the discretion of the committee members to use their best judgment and to verify if these signatures are the same. The committee chair or committee members may request from the county clerk, election administrator, or voter registrar ahead of time signatures that are on file from the past six years. This may be provided electronically. The committee members must use their best judgement if the signatures match. The committee must decide by a majority vote that the signatures are of the same person, or not of the same person. The standard should be whether the two signatures could have been made by the same person.

2. When does the committee need to ask for copies of signatures within the past 6 years from the county clerk?

   There is nothing in the Election code that states when this may be done. The committee members may ask for these documents of voters signatures in advance as long as it is reasonable. We recommend that this may be done within ample time to allow for the clerk to prepare all these documents. Electronic copies of these documents may be sent to the committee. Only committee members can request this.

3. What is a majority vote?

   The Election Code does not state what constitutes as a majority of the SVC. Some counties will determine by the full committee, committee members present, or members of the subcommittees. Our recommendation is that the board comes to an agreement of what constitutes as a majority and that the committeee use that throughout the process.

4. May the SVC keep notes?

   The SVC may not disclose the results of the accepted and rejected ballots. With that, the committee may keep notes. Please keep in mind that these notes are subject to public information requests.

5. Are the carrier envelopes and applications public information?

   Yes. A copy of an application for a ballot to be voted by mail is not available for public inspection, except to the voter seeking to verify that the information pertaining to the voter is accurate, until the first business day after the election day of the earliest occurring election for which the application is submitted. Originals of the applications and carrier envelopes are not available for public inspection until those materials are delivered to the general custodian of election records after the election. [86.014]

SOS_000466

6. Does the SVC separate rejected and accepted ballots?

Yes. The SVC needs to separate the rejected and accepted ballots, because if the SVC has determined that the signatures are not those of the same person, the board may make a determination that the signatures are those of the same person by a majority vote of the board's membership. The EVBB **may not** determine whether a voter's signatures on the carrier envelope certificate and ballot application are those of the same person if the committee has determined that the signatures are those of the same person by the SVC.  [87.027(j)]

7. When is the earliest the SVC can meet?

The first day the SVC can meet is 20 days before the Election. For November 3 of 2020, the earliest the SVC may meet is October 14, 2020. There is no county population requirement for meeting 20 days before Election Day.

8. Is there a limit on how many times the SVC may meet?

No. There is no limit on the times the SVC may meet. The clerk shall post notice of the time of each delivery. The notice must remain posted continuously for at least two days before the date of the delivery. [87.027(h)] Postings required by this section shall be made on the bulletin board used for posting notice of meetings of the commissioners court, in an election for which the county election board is established or a primary election, or of the governing body of the political subdivision in other elections. [87.027(k)] The SVC may meet after Election Day to verify signatures of late ballots, however that is to the discretion of the Early Voting Clerk.

9. May a vacancy be filled if the SVC has conveyed?

Yes. A vacancy on the committee shall be filled by appointment from the original list or from a new list submitted by the appropriate county chair. [87.027(d)]

SOS_000467

---

**SITUTATION 1:**
**Voter's  Signature does not Match**

---

1. As part of the Signature Verification Committee their duty is to compare signatures, however we understand that the SVC are not handwriting experts. With that said it is at the discretion of the committee members to use their best judgment and to verify if these signatures are the same. The committee chair or committee members may request from the county clerk, election administrator,  or voter registrar ahead of time signatures that are on file from the past six years. This may be provided electronically. The committee members must use their best judgement if the signatures match. The committee must decide by a majority vote that the signatures are of the same person, or not of the same person. The standard should be whether the two signatures could have been made by the same person.

2. A majority vote must be decided by the committee members. For example if there are 5 members you may decide 3 out 5 is a majority, or 4 out of 5. Once decided, the committee needs to be consist with that process. If you have subcommittees they must consist of at least two members each with the chair as the deciding vote.

3. If committee members are unsure whether a signature is that of the voter or not, they should put those aside. The committee may decide if all members will need to look at it as a whole or let the subcommittee's  decide amongst themselves. If the committee is unsure of certain signatures, they may request from the county clerk, election administrator or voter registrar copies of signatures that are on file from the past six years.

4. A rejected signature must be decided by a majority vote. If there are subcommittees, the committee needs to decide whether the subcommittees may make a majority vote with the chair as the tie breaker if needed, or if they must put those potential rejected ballots aside and decide as whole which ones should be rejected by a majority.

5. Even if unsure the committee must make a decision whether to accept or reject a signature.

6. If the signature is rejected, the committee must place and separate the rejected and accepted carrier envelopes.

7. Once the committee has accepted and rejected all carrier envelopes, the committee has no authority to review the signatures again once delivered to the general custodian of the election.

---

**SITUTATION 2:**
**Voter's  Signature is not on the Signature Line for the Carrier Envelope**

---

1. If a voter's signature does not appear on the signature line also known as the certificate of the carrier envelope, but is located elsewhere on the envelope, then the signature is valid. As long as the signature is somewhere on the envelope, then the signature would be valid.

2. What if the carrier envelope is signed by a witness? If the carrier envelope is witnessed, then there would be no signature the committee would compare to. However, that does not invalidate the signature. A carrier envelope may be witnessed, as long as the portion is completed correctly.

SOS_000468

3.  What if the ABBM is signed by the voter, but their carrier envelope is witnessed? A voter may complete their ABBM and then have their carrier envelope witnessed. An example of this would be if a person breaks their hand (or an injury that would prevent them from signing) after they submit their ABBM, the voter may have a person witness their carrier envelope. The answer would be the same if a person has someone witness their ABBM, however they signed their carrier envelope. This does not invalidate the signature, as long as the witness portion is completed correctly.

4.  What if the signature that is signed by the witness on the carrier envelope and the application for ballot by mail do not match? A voter may have someone witness their application for ballot by mail and their carrier envelope. The voter does not have to use the same witness. As long as the witness has included the print of the person that cannot sign, affix their own signature to the document, print their own name, state their residence address or official title, if election officer. The only time a witness may not fill out their information would be if the witness is a relative within the 2nd degree by affinity or 3rd degree by consanguinity OR witness was physically living in the same dwelling as the voter at the time of witnessing the carrier, Sec. 85.0051(a),(e). If the witness fits under one of these categories, then they would need to include that on the carrier.

---

**SITUATION 3:**
**Committee did not Separate Rejected and Accepted Ballots**

---

1.  If the committee does not separate the rejected and accepted carrier envelopes, do they have to start all over? No. If the committee cannot determine what carrier envelopes were accepted and rejected, then they would pass all carrier envelopes to the EVBB. There is nothing in the election code that states the SVC may review all carrier envelopes again. However, the EVBB has authority to review rejected signatures and overturn rejected decisions made by the SVC. [87.027(j)] Therefore, our office recommends that since the EVBB has the authority to review rejected signatures by the SVC that the carrier envelopes be forwarded to the EVBB to review. The SVC may still continue to verify signatures after this.

2.  Our office recommends that the SVC comes up with a checklist of (1) what a majority is (2) how the committee will accept and reject signatures (3) how the committee will separate rejected and accepted signatures (4) whether the committee will choose to verify signatures electronically or paper, (5) how the committee will verify signatures if they choose to verify by electronic or paper (6) if using electronic verification, then have a number to call if a technical error occurs (7) if there are any signatures that are questionable, know where to separate them (8) know who is going to sign off on the ballot box for delivery to the general custodian of election and (9) set up a time to deliver the box to the custodian of election.

SOS_000469

+------------------------------------------+
|            **SITUATION 4:**              |
|      **Creating a Subcommittee**         |
+------------------------------------------+

1.  If more than 12 members are appointed to serve on the signature verification committee, the early voting clerk may designate two or more subcommittees of not less than six members. If subcommittees have been designated, a determination under Subsection (i) of TEC is made by a majority of the subcommittee. [87.027(l)]

2.  If the SVC has less than 12 members you still may have a subcommittee. Please keep in mind that the subcommittees need to be even. If there is an election where party alignment is indicated on the ballot, you should take that into consideration when making subcommittees. If possible, try to have different party alignment in each subcommittee. This should be done amongst the committee and before the committee begins verifying signatures. Whatever process is decided should be used throughout the whole verification process.

3.  If a subcommittee is created the chair should be the tie breaker, therefore the chair should not be part of a subcommittee.

4.  If there are subcommittees, the full signature verification committee needs to decide whether the subcommittees have authority to accept or reject ballots using a majority vote of the subcommittee members. Alternative, the whole committee could decide to give the subcommittee only authority to accept ballots and set aside rejected ballots and decide as whole which ones should be rejected by a majority.

SOS_000470

## APPENDIX B

**This appendix will have examples of questions we see arise for an Early Voting Ballot Board and examples of common situations.**

1. **Our entity doesn't have any ballots by mail, do we have to have a ballot board?**

   Yes. All entities must have a ballot board. An early voting ballot board shall be created in each election to process early voting results and provisional ballots from the territory served by the early voting clerk. [87.001] You must always appoint a ballot board because you will not know until Election Day whether there will be provisional ballots that need to be reviewed by the EVBB

2. **May the deputy early voting clerks or election day workers serve on the ballot board?**

   This depends. Our office advises that a deputy early voting clerk may not serve on the EVBB. Duties conflict in scope and time for performance. An election day officer may serve on the EVBB. Please keep in mind that both duties may not be done at the same time.

3. **May the early ballot board members serve on the signature verification committee?**

   Not recommended. Since the ballot board members may override a rejected signature decision by the committee, a ballot board member should not serve on the signature verification committee. [87.027]

4. **Do members from the ballot board have to be from different parties?**

   Yes. The same number of members must be appointed from each list provided by political parties with party affiliation on the ballot. This includes all parties that have nominees on the general election ballot including the Libertarians and Green Party.

5. **What if our county does not have a chair from one of the political parties, what do we do?**

   The party first needs to fill the vacancy of the party chair. Then the chair would be able to provide a list of names. If there is no vacancy filed then the Presiding Judge or County Election Board whichever is applicable should appoint members.

6. **If the EVBB is verifying signatures and not the SVC, when does the board need to ask for copies of signatures within the past 6 years from the county clerk?**

   There is nothing in the Election code that states when this may be done. The board members may ask for these documents of voters signatures in advance as long as it is reasonable. We recommend that this may be done within ample time to allow for the clerk to prepare all these documents. Electronic copies of these documents may be sent to the board.

7. **What is a majority vote?**

SOS_000471

The Election Code does not state what constitutes as a majority of the EVBB. Some counties will determine by the full board membership, board members present, or members of the subcommittees. Our recommendation is that the board comes to an agreement of what constitutes as a majority and that the board use that throughout the process.

**8.  May the EVBB keep notes?**

The EVBB may not disclose the results of the accepted and rejected ballots. With that, the board may keep notes. Please keep in mind that these notes are subject to public information requests.

**9.  Are the carrier envelopes and applications public information?**

Yes. A copy of an application for a ballot to be voted by mail is not available for public inspection, except to the voter seeking to verify that the information pertaining to the voter is accurate, until the first business day after the election day of the earliest occurring election for which the application is submitted. Originals of the applications and carrier envelopes are not available for public inspection until those materials are delivered to the general custodian of election records after the election. [86.014]

**10. Does the EVBB separate rejected and accepted ballots?**

Yes. The EVBB needs to separate the rejected and accepted ballots. If the board did not separate rejected and accepted ballots and cannot determine which ones were accepted or rejected, the board will need to start the process over as they have the authority to do so.

**11. When is the earliest the EVBB can meet?**

This depends on the population of the county. This is the same rule if your entity is in a county with this population and conducting an election jointly. Counties with a population of less than 100,000 may convene at the end of Early Voting by Personal Appearance (3rd day before). Ballots may not be counted until after the polls open on election day. Counties with a population of 100,000 or more may convene on the 8th day before the last day of the period of early voting (12th day before). EVBB may deliver ballots to the central counting station for early counting after the end of the early voting period. Results may not be released until the close of polls on election day.

| | Regular Ballots by Mail | Late Ballots from Outside the US | Provisional Ballots *All Late Ballots* |
|---|---|---|---|
| **Counties** with a population of _less_ than 100,000 | After the end of Early Voting by Personal Appearance (3rd day before) | *Final meeting no earlier than 6th day after election day | **Final meeting no later than the 9th day after election (13th in Nov. 2020). |
| **Counties** with a population of 100,000 or more | The 8th day before the end of early voting (12th day before) | *Final meeting no earlier than 6th day after election day | **Final meeting no later than the 9th day after election (13th in Nov. 2020). |

SOS_000472

**12. Is there a limit on how many times the EVBB may meet?**

No. There is no limit on the times the EVBB may meet. The clerk shall post notice each time the ballot board convenes. The clerk shall also post notice of delivery of ballots each time. The notice must remain posted 24 hours before delivery. The prescribed SOS form is AW6-6 (Mail ballots only) & AW6-7 (Mail and paper balloting materials). This notice must be posted at the main early voting polling place at least 24 hours prior to first delivery of ballots. [87.0222] In general elections for state and county officers, the county clerk/elections administrator must notify each county chair at least 24 hours of each delivery.

**13. May a vacancy be filled if EVBB has conveyed?**

Yes. A vacancy on the board shall be filled by appointment such as a vacancy for a presiding judge/alternate judge on Election Day. [32.007]

SOS_000473

---

**SITUATION 1:**
**Two Ballots in One Carrier Envelope**

---

**1. If you receive an envelope or package with two or more carrier envelopes from individuals registered at the same address inside may you accept the ballots?**

This depends. If you receive an envelope or package with two carrier envelopes from individuals registered at the same address inside and the carrier envelopes are separated (meaning two different carrier envelopes with two different ballots), then you may accept the ballots pending any other qualifications. If you receive an envelope or package with two or more carrier envelopes from individuals registered at the same address inside and the carrier envelopes are not separated (meaning two or more ballots are in one carrier), then you may not accept both ballots and they would be rejected. This scenario is often found when a couple mails both their ballots in the same carrier envelope.

---

**SITUTATION 2:**
**Carrier Envelope Witness/Assistant Portion Filled out Incorrectly**

---

**1. If you receive a carrier envelope with the witness/assistant portion filled out incorrectly, do you accept it?**

No. The Witness/Assistance portion must be filled out correctly.

3. If the Early Voting Clerk receives a timely carrier envelope that does not fully comply with the applicable requirements prescribed by this title, the clerk may deliver the carrier envelope in person or by mail to the voter and may receive, before the deadline, the corrected carrier envelope from the voter, or the clerk may notify the voter of the defect by telephone and advise the voter that the voter may come to the clerk's office in person to correct the defect or cancel the voter's application to vote by mail and vote on election day. If the early voting clerk chooses to do this with one voter, this must be applied uniformly to all carrier envelopes. A poll watcher is entitled to observe the procedures if this is done. This procedure may be used if the early voting clerk can determine that two carrier envelopes are in one

SOS_000474

<table>
<tr><td><strong>SITUTATION 3:</strong><br><strong>Wrong Ballot in Wrong Carrier Envelope Delivered to Board</strong></td></tr>
</table>

These different scenarios are for a Primary/May Uniform Date Election. In the situations below this is where the county has contracted with local entities to serve as the local entities' early voting clerk, there is a concern that voters will return both ballots in a single carrier envelope.

**Scenario 1:**

The early voting ballot board ("EVBB") for the May 2, 2020 election is meeting to count ballots. They open a ballot secrecy envelope and there is a primary runoff ballot inside. As the ballot secrecy envelope would have been separated from the carrier envelope, there would be no way to determine which voter's ballot this is.

**Procedure for 1:**

This ballot cannot be counted nor retained in a carrier envelope to be forwarded to the EVBB for the runoff primary election. We suggest that the EVBB presiding judge make a notation on the ballot to explain the situation and why the ballot was not counted. The ballot should be stored in the envelope that contains the other rejected ballots (which will still be in their carrier envelopes). See Texas Election Code Section 87.043. Unfortunately, as there is no way to know which voter submitted this ballot, no notice of rejection can be sent to the voter. We note that there is no authority in the Texas Election Code ("the Code") to store a voted ballot outside of the jacket or carrier envelope. Additionally, while the EVBB qualified the voter's ballot with respect to the May 2, 2020 election, the EVBB did not qualify the ballot with respect to the runoff primary. The May 2, 2020 EVBB board does not have the authority to qualify a ballot for the runoff primary.

**Scenario 2a:**

The EVBB for the May 2, 2020 election reviews a carrier envelope (that is marked to show it is a carrier for the May 2, 2020 election) and determines it will accept the ballot. The EVBB proceeds to open the carrier envelope to remove the ballot secrecy envelope, but the ballot is not in a secrecy envelope. The EVBB is able to immediately determine that the ballot inside the carrier is a primary runoff ballot. In this scenario, the ballot is tied to a particular voter as the carrier envelope is still effectively with the ballot.

**Procedure for 2a:**

We recommend that the EVBB immediately put the ballot back in the carrier envelope and seal the envelope. The EVBB should deliver the carrier envelope to the early voting clerk, who should then place the carrier envelope in the jacket envelope for that voter for the primary runoff, ready to be forwarded to the EVBB for that election at the appropriate time. We also suggest that the presiding judge of the EVBB write a memo to detail what occurred, what actions were taken, and the date those actions were taken. The presiding judge and at least one other member of the EVBB should sign off on the memo. A copy of the memo should be placed in the voter's May 2, 2020 jacket envelope and a copy provided to the early voting clerk for placement in the voter's primary runoff jacket envelope. When the EVBB for the primary runoff election convenes and sees a carrier envelope for the May 2, 2020 election in the jacket envelope for the primary runoff, the memo will serve to inform that EVBB of what has occurred.

44

SOS_000475

**Scenario 2b:**

As a corollary to scenario 2a, as the voter's May 2, 2020 carrier envelope contained the primary runoff ballot, it is possible that the primary runoff carrier contains the May 2, 2020 ballot. Can the early voting clerk take the runoff primary carrier and provide it to the May 2, 2020 EVBB for processing?

**Procedure for Scenario 2b**:

As we can identify the voter under these scenarios, and hopefully contact the voter, the chain of custody can be well established. Regarding the carrier envelope for the runoff, which presumably contains the May 2, 2020 entity ballot, we suggest that the early voting clerk call the voter (if possible) to see if voter can confirm that the May 2, 2020 ballot is probably in the runoff carrier envelope. If the voter confirms that s/he believes the ballot in the primary runoff carrier envelope is in fact the May 2, 2020 ballot (or if the early voting clerk is unable to reach voter), the early voting clerk may forward that carrier envelope to the May 2, 2020 election EVBB to process as normal, if able to do so in a timely manner. We do not recommend that the early voting clerk open the carrier envelope, with or without the voter's permission, to determine whether the carrier actually contains the May 2, 2020 ballot. Only the EVBB should be opening this carrier envelope, once the EVBB has determined that the carrier envelope was properly processed (signature comparison completed, voter eligibility determined, etc.). We do suggest that the early voting clerk write a memo to detail what occurred, what actions were taken, and the date those actions were taken, and place a copy of the memo in the voter's May 2, 2020 jacket envelope. Another copy should be placed in the voter's primary runoff jacket envelope.

**Scenario 3a:**

The EVBB for the May 2, 2020 election qualifies the carrier envelope and finds two ballots, each inside a separate ballot secrecy envelope or neither ballot in a ballot secrecy envelope.

**Procedure for Scenario 3a:**

We feel that under this limited circumstance, the EVBB may open the ballot secrecy envelopes, if used by the voter. (The EVBB has the discretion to open a ballot secrecy envelope in limited circumstances. For example, to see if there is a statement of residence included in the secrecy envelope rather than the carrier envelope. It is also not a requirement for a ballot to be in the secrecy envelope.) If one of the ballots is for the May 2, 2020 election and one is for the primary runoff election, the May 2, 2020 ballot may be counted. The primary runoff ballot cannot be counted. There is no authority for the EVBB to, for example, copy the carrier envelope for the May 2, 2020 election and place the runoff ballot back in the carrier envelope for forwarding to the primary runoff EVBB (as in scenario 2b, above). We suggest that the presiding judge of the EVBB makes a notation on the primary runoff ballot to explain the situation and why the ballot was not counted. The primary runoff ballot should be stored in the envelope that contains the rejected ballots (which will still be in their carrier envelopes). See Section 87.043. We recommend sending this voter a rejection letter, even though this EVBB is not the proper ballot board for the May 26, 2020 primary runoff ballot. As above, we recommend that a memo be written and signed by the EVBB presiding judge to detail actions taken. A copy of the memo should be placed in the voter's May 2, 2020 jacket envelope and a copy provided to the early voting clerk for placement in the voter's primary runoff jacket envelope.

SOS_000476

**Scenario 3b:**

The EVBB for the May 2, 2020 election qualifies the carrier envelope, later discovers that the ballot secrecy envelope contains both a May 2, 2020 ballot and a primary runoff ballot.

**Procedure for 3b:**

As in 3a, the May 2, 2020 ballot may be counted, but the May 26, 2020 primary runoff ballot cannot. No notice can be sent to the voter as the identity of the voter cannot be determined by the time the error (2 ballots in one secrecy envelope) is discovered. Again, we suggest that the presiding judge of the EVBB make a notation on the rejected primary runoff ballot and store it with the rejected May 2, 2020 ballots.

---

**SITUATION 4:**
**Voters Mailing Address on ABBM is Different than Voter Registration Address on File**

---

1. If the grounds for voting by mail is either being 65 or over, or disability, and the applicant has not provided his or her official mailing address as shown on the list of registered voters as the address for mailing his or her ballot, the address provided must be that of a hospital, nursing home, other long term care facility, retirement center, or the address of a relative within the second degree of affinity or third degree of consanguinity with whom the applicant is living.  If this information was not provided on the Application for Ballot by Mail, the ballot should be rejected per Section 87.041 of the Code.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

DR. GEORGE RICHARDSON,      *
ROSALIE WEISFELD, AUSTIN    *
JUSTICE COALITION,          *
COALITION OF TEXANS WITH    *
DISABILITIES, MOVE TEXAS    *
CIVIC FUND, LEAGUE OF       *
WOMEN VOTERS OF TEXAS,      *
and AMERICAN GI FORUM OF    *
TEXAS, INC.,                *
                            *
        Plaintiffs,         *
                            *          CIVIL ACTION NUMBER
VS.                         *          5:19-cv-0963
                            *
TEXAS SECRETARY OF          *
STATE, TRUDY HANCOCK, IN    *
HER OFFICIAL CAPACITY AS    *
BRAZOS COUNTY ELECTIONS     *
ADMINISTRATOR, AND PERLA    *
LARA IN HER OFFICIAL        *
CAPACITY AS CITY OF         *
McALLEN, TEXAS              *
SECRETARY,                  *
                            *
        Defendants.         *


Remote Oral Deposition of

Austin Justice Coalition,

By and through their Designated Representative,

LARISSA RODIONOV

May 20, 2020

10:16 a.m.


Reported by:

Micheal A. Johnson, RDR, CRR

Austin Justice Coalition - 5/20/2020

2

1          REMOTE ORAL DEPOSITION OF AUSTIN JUSTICE

2    COALITION, BY AND THROUGH THEIR DESIGNATED

3    REPRESENTATIVE, LARISSA RODIONOV, produced at the

4    instance of the Defendant, Texas Secretary of State,

5    in the above-styled and numbered cause on the

6    20th day of May, 2020, at 10:16 a.m., before Micheal

7    A. Johnson, RDR, CRR, Notary Public in and for the

8    State of Texas, reported by realtime stenographic

9    means, at the location of the witness, Austin,

10   Texas, pursuant to Notice of Oral Deposition, and in

11   accordance with the Federal Rules of Civil

12   Procedure.

13

14

15

16

17

18

19

20

21

22

23

24

25

3

```
 1                    REMOTE APPEARANCES

 2    ON BEHALF OF THE PLAINTIFFS:

 3       JoAnna Suriani
         WILLKIE FARR & GALLAGHER LLP
 4       1875 K Street, N.W.
         Washington, D.C. 20006-1238
 5       (202) 303-1193
         jsuriani@willkie.com
 6
         Samuel Kalar
 7       WILLKIE FARR & GALLAGHER LLP
         787 Seventh Avenue
 8       New York, New York 10019-6099
         (212) 728-8724
 9       skalar@willkie.com

10       Zachary Dolling
         Hani Mirza
11       Ryan Cox
         TEXAS CIVIL RIGHTS PROJECT
12       1405 Montopolis Drive
         Austin, Texas 78741
13       (512) 474-5073
         zachary@texascivilrightsproject.org
14       hani@texascivilrightsproject.org
         ryan@texascivilrightsproject.org

15

16    ON BEHALF OF THE DEFENDANT
      TEXAS SECRETARY OF STATE:
17
         Anne Marie Mackin
18       ASSISTANT ATTORNEY GENERAL
         Post Office Box 12548
19       Austin, Texas 78711-2548
         (512) 463-2798
20       anna.mackin@oag.texas.gov

21

22

23

24

25
```

```
 1              REMOTE APPEARANCES (CONT.)

 2   ON BEHALF OF THE DEFENDANT
     TRUDY HANCOCK IN HER OFFICIAL CAPACITY AS BRAZOS
 3   COUNTY ELECTIONS ADMINISTRATOR:

 4     J. Eric Magee
       ALLISON, BASS & MAGEE, LLP
 5     402 West 12th Street
       Austin, Texas 78701
 6     (512) 482-0701
       e.magee@allison-bass.com
 7
       Bruce L. Erratt
 8     BRAZOS COUNTY ATTORNEY'S OFFICE
       300 East 26th Street, Suite 1300
 9     Bryan, Texas 77803
       (979) 775-7400
10     berratt@brazoscountytx.gov

11
     ON BEHALF OF THE DEFENDANT
12   PERLA LARA IN HER OFFICIAL CAPACITY AS CITY OF
     McALLEN, TEXAS SECRETARY:
13
       Isaac J. Tawil
14     Austin Stevenson
       CITY OF McALLEN
15     1300 West Houston Avenue
       McAllen, Texas 78501-5002
16     (956) 681-1090
       itawil@mcallen.net
17     astevenson@mcallen.net

18
     ALSO PRESENT:
19
       Amelia Christopher, Video Technician
20

21

22

23

24

25
```

Austin Justice Coalition - 5/20/2020

5

1                                    INDEX
                              LARISSA RODIONOV
2                                May 20, 2020

3
      REMOTE APPEARANCES                              3
4
       PROCEEDINGS                                    7
5


6     EXAMINATION OF LARISSA RODIONOV:
7
       BY MS. MACKIN                                  7
8
       BY MR. TAWIL                                  67
9
       BY MR. MAGEE                                  70
10

11
       CORRECTIONS AND SIGNATURE                     72
12
       REPORTER'S CERTIFICATION                      73
13

14

15

16

17

18

19

20

21

22

23

24

25

Austin Justice Coalition - 5/20/2020

6

```
 1                  DEPOSITION EXHIBITS
                      LARISSA RODIONOV
 2                     May 20, 2020


 3
     NUMBER              DESCRIPTION            MARKED
 4
     Exhibit 1      Defendant Secretary of        11
 5                  State's Notice of Oral
                    Deposition Pursuant to
 6                  Federal Rule of Civil
                    Procedure 30
 7
     Exhibit 2      Plaintiffs' Original          22
 8                  Complaint

 9   Exhibit 3      Fiscal Sponsorship            31
                    Agreement
10                  AJC-00000029 -
                    AJC-00000031
11
     Exhibit 4      Austin Justice Coalition      36
12                  PowerPoint Presentation
                    AJC-00000017 -
13                  AJC-00000028

14   Exhibit 5      Excel Spreadsheet,            51
                    LRO52020_EX05
15
     Exhibit 6      Excel Spreadsheet,            54
16                  LR052020_EX06

17   Exhibit 7      County Elections Division     61
                    Instructions and
18                  Addresses for Ballot by
                    Mail Application
19                  AJC-00000002 -
                    AJC-00000003
20

21

22

23

24

25
```

Austin Justice Coalition - 5/20/2020

7

```
 1                      PROCEEDINGS
 2                   LARISSA RODIONOV,
 3   called as a witness, having been duly sworn by a
 4   Notary Public, was examined and testified as
 5   follows:
 6                     EXAMINATION
 7   BY MS. MACKIN:
 8       Q.    Good morning.  May I please have you
 9   speak and spell your name for the record.
10       A.    Larissa Rodionov, L-a-r-i-s-s-a
11   R-o-d-i-o-n-o-v.
12       Q.    And I'm sorry, will you pronounce your
13   last name again since I'm going to be using it
14   throughout this deposition and I don't want to mess
15   it up?
16       A.    Okay.  Rodionov.
17       Q.    Rodionov.  Okay.
18       A.    You're welcome to use my first name if
19   that's better.
20       Q.    I appreciate that.  Thank you.
21             Good morning.  My name is Anna Mackin.  I
22   am an attorney and I represent the Secretary of
23   State in this lawsuit.  I'm going to be asking you
24   some questions today.  Have you ever been deposed
25   before?
```

Austin Justice Coalition - 5/20/2020

8

1      A.    No.

2      Q.    Okay.  So I'm going to go over some kind

3  of ground rules that will hopefully help things go

4  as smoothly and efficiently as possible, especially

5  since we are doing this through the virtual

6  platform.  The most important thing is to try to

7  give a verbal answer to my questions.  So a yes or a

8  no, as opposed to a nod of the head or an huh-uh or

9  uh-huh, because Mr. Johnson, the court reporter, is

10  writing down everything we say.  So that will just

11  make sure it's clear on the record.  Okay?

12      A.    Okay.

13      Q.    And actually, I said that was the most

14  important thing.  I think the real most important

15  thing is that we avoid talking over each other.  I

16  know that it can be difficult when we're having a

17  normal conversation, but especially since the audio

18  can cut out here over the Zoom, I will do my best to

19  let you finish your answers before I ask any

20  question and I would ask that you do your best to

21  let me finish my question before you begin your

22  answer.  Okay?

23      A.    Okay.

24      Q.    Thank you.  So you were just sworn in.

25  You're under oath, sworn to testify truthfully under

1  penalty of perjury.  You understand that, right?

2      A.    Yes.

3      Q.    And if at any time you need a break, need

4  to use the restroom, get a glass of water, anything

5  like that, please just let me know.  I will ask that

6  if I've asked a question and you haven't answered it

7  yet, that you answer that question that's pending,

8  but then we can go ahead and take any breaks that

9  you need.  Okay?

10      A.    Okay.

11      Q.    Is there any reason that you might not be

12  able to answer my questions honestly, completely and

13  accurately today?

14      A.    No.

15      Q.    Okay.  And is anyone in the room with

16  you?

17      A.    No.  Just the cat.

18      Q.    Just the cat.  Again, since we're

19  situated remotely, it's a little different than a

20  normal deposition where we'd all be together.  So I

21  would ask if you let me know if anybody joins you in

22  the room, just so that we're clear where your

23  testimony is coming from.  Okay?

24      A.    Yeah.  Yes.

25      Q.    I know.  It's harder than it sounds to

1   give a verbal answer.

2            And also, kind of in a similar vein, if

3   you refer to any document or text message or website

4   or anything other than the documents that I'll share

5   with you as exhibits, please let me know that too.

6   Okay?

7        A.   Yes.

8        Q.   Okay.  And now that the deposition is

9   underway, I would also ask that if you discuss the

10  substance of your testimony with anyone, including

11  your lawyers, on a break or something like that, you

12  need to let me know that too.  Obviously, once the

13  deposition is over, that no longer applies.  But

14  since we're underway, I would ask that you let me

15  know about that as well.  Okay?

16       A.   Okay.

17       Q.   All right.  So we're going to be working

18  with some documents today and in the few of these

19  depositions that your attorneys and I have done

20  before, it has worked pretty well to share the

21  document through the Zoom chat feature with

22  everyone.  So I'm going to practice here with

23  Exhibit 1 and just make sure that that will work all

24  right for you as well.  I can also share them on the

25  screen, but then if it's a multipage document, I

1    have to scroll down.  And so I think this will be

2    easier so we can give it a try, but you can let me

3    know if it doesn't work well for you.

4              All right.  I am sharing what will be

5    Exhibit 1 to this deposition.

6                   (Deposition Exhibit 1 marked for

7    identification.)

8    BY MS. MACKIN:

9        Q.    Ms. Rodionov, please let me know once

10   you're able to pull up that document and look it

11   over and are ready to discuss it.

12       A.    Okay.  It's open.

13       Q.    Okay.  Have you seen this document

14   before?

15       A.    Yes.

16       Q.    And what does it appear to be?

17       A.    It appears to be the deposition notice.

18       Q.    Okay.  And you understand that you are

19   here today pursuant to this notice?

20       A.    Yes.

21       Q.    Okay.  And you'll note that the notice

22   indicates that Austin Justice Coalition is directed

23   to designate one or more persons to testify on its

24   behalf and that it has designated you to testify on

25   its behalf.  You understand that, right?

1      A.    Yes.

2      Q.    Okay.  And I'd like you to please take

3  the time you need to scroll down to what I believe

4  is page 6 of the notice, and review the topics

5  listed there.  Yes, it's page 6.

6      A.    Yes.

7      Q.    And are you prepared to testify today on

8  all of these topics?

9      A.    Yes.

10      Q.    Okay.  And again, I'm sure you've

11  discussed this with your attorneys, that this is a

12  special type of deposition.  The federal rule of

13  civil procedure that is under a 30(b)(6).  So that

14  means that you are not testifying as yourself; you

15  are testifying as the Austin Justice Coalition and

16  your answers bind the Austin Justice Coalition.  Do

17  you understand that?

18      A.    Yes.

19      Q.    Okay.  Thank you.  All right.  You're

20  free to minimize out of that document.  I don't have

21  any questions about it right now.

22           How did you prepare for today's

23  deposition?

24      A.    I had a meeting with Sam and a couple

25  other lawyers, who went through basically logistical

1  issues as what to expect, sort of guidelines to

2  follow.  And then from looking at the document you

3  just shared with me, I spoke to a member of the

4  leadership team at AJC, who helped me with those

5  first three items on the list to make sure that I

6  was knowledgeable about, sort of the financial side

7  of AJC, the organizational side and more on the

8  history of how they got started.

9      Q.    Who did you speak --

10     A.    And I -- I spoke with Frances Jordan.

11     Q.    Okay.  And why did you speak with Frances

12  Jordan?

13     A.    I first became involved with AJC in 2016,

14  but then started grad school and so for two years I

15  really was not involved.  I tried to follow through

16  the news and things, but I was not that involved.

17  And then I got involved again in 2018.  So during

18  that two-year period when I was in grad school, I

19  was not that familiar with sort of the inner

20  workings and it had grown a lot in those two years.

21  So Frances helped me with kind of my missing

22  knowledge there.

23     Q.    Did you speak with anyone else to prepare

24  for the deposition today?

25     A.    Yes.

Austin Justice Coalition - 5/20/2020

14

1      Q.    Who else?

2      A.    Hope Doty.

3      Q.    What did you and Ms. Doty discuss?

4      A.    We discussed a few things relevant to

5  Project Orange.  I've been the co-coordinator of

6  Project Orange since December of 2019.  I took over

7  that job when Hope moved to Colorado.  And so I

8  clarified just a few of things with her about how

9  Project Orange got started originally and just the

10  procedures that happened before I became involved.

11      Q.    Did you speak with anyone else?

12      A.    No.

13      Q.    Well, it sounds like you really did your

14  homework to get prepared, so I very much appreciate

15  that.

16          And did you review any documents to

17  prepare for the deposition today?

18      A.    Yes.  Frances created a Google doc that

19  she shared with me, with some notes about the

20  early -- I think that was shared with you, through

21  the early stages of AJC and what they were involved

22  in.

23      Q.    Was it maybe like about two pages long?

24      A.    Yes.

25      Q.    Okay.  Yes.

```
 1        A.     And it followed the order of the
 2  deposition notice.
 3        Q.     Okay.  Any other documents?
 4        A.     The website, the AJC website, if that
 5  counts as a document, that was it.
 6        Q.     Sure.  Okay.  Thank you.
 7        A.     Oh, and the documents -- obviously, the
 8  documents that were produced by us during discovery.
 9        Q.     Okay.  And so are you adequately familiar
10  with the facts to testify on all the topics in the
11  deposition notice?
12        A.     Yes.
13        Q.     All right.  Ms. Rodionov, are you
14  currently employed?
15        A.     Yes.
16        Q.     And is that with AJC?
17        A.     No.
18        Q.     Okay.  Who is your current employer?
19        A.     The University of Texas at Austin.
20        Q.     And what is your position?
21        A.     I am a learning and education specialist
22  at the school of nursing.
23        Q.     And what are your duties and
24  responsibilities as a learning and education
25  specialist at the school of nursing?
```

Austin Justice Coalition - 5/20/2020

16

1       A.    I do instructional design for an

2  organization called the Center for Excellence in

3  Aging Services and Long Term Care.  We produce

4  courses -- online courses for existing nurses at all

5  different levels for their continuing education

6  credits.  And I also help with different

7  administrative tasks for the center.

8       Q.    Very nice.  This is really random, but

9  you don't happen to know Aline Zeringue?

10      A.    No.  Sorry, what was the last name?

11      Q.    V-e-r-i -- Zeringue.  Yeah, it's unique.

12 She's just my -- she's my nurse practitioner for

13 primary care and she's a professor there and I love

14 her.

15      A.    I've only been there since November.  So

16 there are a lot of people I still don't know.

17      Q.    And so before you moved into that role,

18 what was your job?

19      A.    I was working for the office of

20 admissions at UT Austin.

21      Q.    Very nice.  Well, as much as I would like

22 to do the typical walk back through all of your

23 personal history, I guess we'll keep it focused to

24 the Austin Justice Coalition.  What's the nature of

25 your involvement with AJC?

1      A.    I am a volunteer.  As I said, I am the

2  co-coordinator of AJC's Project Orange.  I also

3  volunteer on the policy team and other events and

4  things that they need volunteers for.

5      Q.    And what duties and responsibilities do

6  you have as the co-coordinator of Project Orange?

7      A.    I am the liaison between the Project

8  Orange team and AJC.  Some of our Project Orange

9  volunteers are not affiliated with AJC, so I make

10 sure that AJC is aware of what we're doing.  I am

11 responsible for the policy side of things.  So if

12 we're working -- one of our projects in the past has

13 been trying to get a polling place at the jail, so

14 that is something that I am responsible for.  I am

15 leading up an effort to expand Project Orange to

16 other counties in Texas.  And I volunteer at the --

17 I'm a team leader at the event at the jail.

18     Q.    Who is your primary contact at AJC for

19 your Project Orange-related duties?

20     A.    Chas Moore and Sukyi McMahon.

21     Q.    And Mr. Moore, is he executive director?

22     A.    Yes.

23     Q.    And then Ms. McMahon, what is her job

24 title?

25     A.    She is a director of some sort.  I don't

18

1  recall exactly what her title is.  But she's on the

2  leadership team.

3      Q.   And I apologize for looking down.  I have

4  some notes that I'm tracking.

5           All right.  And so how long have you been

6  the co-coordinator of Project Orange?

7      A.   Since December of 2019.

8      Q.   Oh, right.  I apologize.  You mentioned

9  that.

10           Before that, were you involved with AJC

11  or was that what you mentioned being in grad school?

12      A.   No, I became more involved in AJC again

13  in May of 2018, when I finished grad school.  I

14  started volunteering for Project Orange in January

15  of 2019 and then, yes, took over as co-coordinator

16  in December when Hope moved to Colorado.

17      Q.   And what motivated you to get involved

18  with AJC after you finished grad school?

19      A.   I first got involved with AJC in 2016 and

20  was very interested in the organization and the kind

21  of work they were trying to do.  I tried to follow

22  up with that during grad school, but it --

23      Q.   It's tough.

24      A.   -- I didn't have the time to commit.  So

25  as soon as I had the time again, I jumped back in

Austin Justice Coalition - 5/20/2020

1  because I'm still very impressed with the work that

2  they do and how they run their organization and the

3  things they focus on.

4       Q.    Before you went to grad school and had

5  less time to devote to AJC's work, what sort of

6  things did you do with the organization?

7       A.    Mostly at that time, I attended a couple

8  of their general body meetings and a couple of their

9  events, a protest at the capitol and another event,

10 I don't recall what the focus of that one was.

11      Q.    Do you remember what the protest was

12 about?

13      A.    The protest was -- so it's the summer

14 when Sterling Brown and a couple other black people

15 were shot by police, kind of in a succession and so

16 the protest was related to that.  So protesting

17 police violence and civil rights for people of

18 color.

19      Q.    And I'm sorry if you already mentioned

20 this, I just want to make sure I'm clear.  Before

21 you became the co-coordinator of Project Orange,

22 between May of 2018 and becoming the co-coordinator,

23 what sorts of things did you do with AJC?

24      A.    I joined their policy team --

25      Q.    That's right.  Okay.

1      A.      -- in that summer of 2018.  I attended

2    general body meetings and different events that they

3    put on, and I joined the Project Orange team in

4    January of 2019 as a volunteer.

5      Q.      Is the policy team, is that made up of

6    just volunteers or are there also permanent staff

7    that are on that team?

8      A.      The only permanent staff at AJC is Chas

9    Moore, and he is on that team, as well as Sukyi as

10   AJC's leadership member.  And then the rest are

11   volunteers.

12     Q.      And who is on the leadership team of AJC?

13     A.      That is Chas Moore, Sukyi McMahon and

14   Joao Paulo Connolly, Frances Jordan, Gabby whose

15   last name I cannot remember.  It's all on our

16   website.

17     Q.      Okay.

18     A.      Ishia Lynette, Warren Burkley, Kendra

19   Garrett, and I think that's it.  Amber Watts.

20     Q.      How did you become a member of the -- I'm

21   sorry, the -- strike that.

22             Do you know how the members of that

23   leadership team were identified for that role and

24   took on membership on the leadership team?

25     A.      So from what I understand, Chas Moore was

 1  cofounder and the leadership team started out

 2  volunteering for the organization and then took on

 3  greater and greater responsibility.  And so Chas

 4  kind of created a leadership team from those people.

 5  I know, like Warren and Kendra only recently joined

 6  the leadership team because they were taking on

 7  greater and greater roles as volunteers.

 8          Q.    Okay.  And just briefly going back to

 9  you, I want to get a brief overview of your

10  educational background.  You mentioned that you just

11  finished grad school at UT.

12          A.    Uh-huh.

13          Q.    Is that the highest level of education

14  that you've attained?

15          A.    Yes.  I got a master of education degree.

16          Q.    And what did you study in undergraduate?

17          A.    Russian.

18          Q.    Where did you -- where did you obtain

19  your degree in Russian?

20          A.    The University of Wisconsin in Madison.

21          Q.    And where did you attend high school?

22          A.    Rufus King High School in Milwaukee.

23          Q.    And are you originally from Wisconsin?

24          A.    Yes.

25          Q.    Well, happy to have you in Texas.  It's a

22

1  different -- different climate.

2      A.    Yes.

3      Q.    I went to law school in the Midwest and I

4  was -- I've got to be honest, I was glad to get back

5  to Texas.

6      A.    Yeah.  I don't like winter.

7      Q.    I'm going to share a document that will

8  be Exhibit 2 to this deposition.

9              (Deposition Exhibit 2 marked for

10 identification.)

11 BY MS. MACKIN:

12     Q.    Please let me know when you're able to

13 open up that document, and take the time you need to

14 review it and are ready to discuss it.

15     A.    Yes, I'm ready to review it.

16     Q.    All right.  Have you seen Exhibit 2

17 before?

18     A.    Yes.

19     Q.    And what is it?

20     A.    It is the original complaint filed by the

21 plaintiffs.

22     Q.    And is it your understanding that this is

23 the document that AJC joined onto in this lawsuit?

24     A.    Yes.

25     Q.    Did you review Exhibit 2 before it was

1 filed?

2       A.    No.

3       Q.    Did someone at AJC review it before it

4 was filed?

5       A.    Yes, I assume so.

6       Q.    Do you know who that may have been?

7       A.    Hope Doty.

8       Q.    When she was the co-coordinator of

9 Project Orange?

10       A.    Yes.

11       Q.    Okay.

12       A.    She was the full coordinator at that

13 point.

14       Q.    The full coordinator.  Okay.  Thank you

15 for that clarification.  And just -- she was also a

16 volunteer?

17       A.    Yes.

18       Q.    All right.  So some of this may seem a

19 little bit random, but since there are several

20 parties to this case, there's a handful of

21 plaintiffs, there's three defendants.  I just want

22 to talk through whether AJC has had any prior

23 dealings with the other plaintiffs and the

24 defendants in this lawsuit.  So if you will bear

25 with me while we get all of that done.  Because if I

 1   just asked you, do you know Dr. George Richardson,

 2   it's like, what.  But has AJC had any prior dealings

 3   with Dr. George Richardson, a plaintiff in this

 4   case?

 5        A.    No.

 6        Q.    How about Rosalie Weisfeld, the other

 7   individual plaintiff in this case?

 8        A.    No.

 9        Q.    Has AJC had any prior dealings with the

10   Coalition of Texans With Disabilities?

11        A.    No.

12        Q.    How about MOVE Texas Civic Fund?

13        A.    I don't believe so.

14        Q.    And what about the League of Women Voters

15   of Texas?

16        A.    We partner with them on some things.

17   Like they will print out guides for us to distribute

18   to the inmates at the jail.

19        Q.    Okay.

20        A.    And I think we've partnered together on

21   policy issues in the past.

22        Q.    Do you know what policy issues?

23        A.    Not specifically.

24        Q.    Safe to assume they were related to

25   voting, League of Women Voters?

25

1          A.     Yes.

2          Q.     Has AJC had any prior dealings with the

3    Texas Secretary of State's office?

4          A.     No.

5          Q.     How about Perla Lara, the McAllen city

6    secretary?

7          A.     No.

8          Q.     And how about Trudy Hancock, the Brazos

9    County election administrator?

10         A.     No.

11         Q.     All right.  Thank you for bearing with me

12   on that.  Now I'm going to turn back to AJC as an

13   organization.  Topic 1 in the notice is just your

14   mission.  So how would you describe AJC's mission?

15         A.     I believe it's in the -- in a response

16   document that we sent to you, but basically, AJC is

17   a black-led organization that serves the black and

18   brown populations of Austin, Texas, in helping them

19   liberate themselves from the systemic racism in our

20   society.

21         Q.     And do you know if -- I think you

22   testified that AJC was founded in 2016; is that

23   right?

24         A.     2015.

25         Q.     And do you know if its mission has

 1  changed since its founding?

 2      A.    I don't believe so, no.

 3      Q.    And I believe you also testified that

 4  Chas Moore, the current executive director, founded

 5  AJC?

 6      A.    Yes.

 7      Q.    Okay.  Do you know if anyone else was

 8  involved in founding the organization?

 9      A.    Yes.

10      Q.    Who was that?

11      A.    Fatima Mann.

12      Q.    And do you know if -- you said Mann, like

13  M-a-n-n?

14      A.    Yes.

15      Q.    Do you know if Ms. Mann is still involved

16  with AJC?

17      A.    She is not.

18      Q.    Do you know why?

19      A.    They had -- Fatima and Chas had different

20  ideas of how to reach certain goals.

21      Q.    Fair enough.  Do you know if she started

22  a different organization?

23      A.    She did.

24      Q.    And do you know what organization that

25  was?

27

1      A.    I don't remember the name.

2      Q.    Okay.  Do you know if it's still in

3 existence?

4      A.    I'm not sure.

5      Q.    Okay.  All right.  Other than Mr. Moore

6 and Ms. Mann, was anyone else involved in founding

7 AJC?

8      A.    Not that I'm aware of, no.

9      Q.    Do you know anything more about kind of

10 the, shall we say, creative differences between

11 Mr. Moore and Ms. Mann, like what they disagreed

12 about?

13     A.    Yes.

14     Q.    Tell me a little bit more about that.

15            MR. KALAR:  Objection to form.

16     A.    So they -- Chas wanted a nonprofit

17 organization and Fatima wanted a for-profit

18 organization.  That was one big disagreement.  The

19 other was the direction in which the organization

20 was going.  So Chas wanted to pursue more policy

21 issues and Fatima wanted to focus more on community

22 issues.  And I think -- well, no, that was basically

23 it.

24 BY MS. MACKIN:

25     Q.    Thank you for that.  And is Austin

 1   Justice Coalition incorporated?

 2        A.    They are a 501(c)(3) nonprofit

 3   organization.  I don't know the legal --

 4        Q.    Sure.

 5        A.    -- of becoming incorporated.

 6        Q.    Fair enough.  Tax law was my worst grade

 7   in law school, so I don't really either.

 8              Do you know if -- well, that's fine.

 9              So you mentioned that the only full-time

10   AJC employee is Chas Moore; is that right?

11        A.    Yes.

12        Q.    Does it have any other part-time

13   employees, or is it just volunteers?

14        A.    It's mostly volunteers.  They have one

15   sort of contract employee who's a contractor.

16        Q.    And who is that?

17        A.    Joao Paulo Connolly.

18        Q.    Okay.  And what are Mr. Connolly's duties

19   and responsibilities as a contract employee for AJC?

20        A.    He is a graphic designer.  So he has

21   designed the website and he designs print materials

22   that AJC uses, he creates videos and other digital

23   media for the organization.

24        Q.    Any other paid employees?

25        A.    No.

1     Q.    Do you know how many volunteers AJC has?

2   And that might be a little bit of a tricky question

3   because I presume, from my own like involvement with

4   nonprofits, that some volunteers are much more

5   engaged than others, but to the extent that you have

6   a sense.

7     A.    I can't really say.  I can guesstimate

8   how many people are on the policy team.

9     Q.    Okay.

10     A.    But there are other things that AJC does

11   and I'm not sure how many volunteers those -- those

12   organizations -- or those parts of the organization

13   have on a regular basis.

14     Q.    About how many people are on the policy

15   team at AJC?

16     A.    Regular people, who attend meetings

17   regularly, is about 15 to 20, which that number

18   varies depending on what we're working on.

19     Q.    And what are the duties and

20   responsibilities of the AJC policy team?

21     A.    We work on policy issues at a local level

22   and at a state level.  So when the Texas legislature

23   meets every two years, we are involved in different

24   policies happening there.  Locally, we are very

25   involved in criminal justice reform and policing

1  reform, housing, local housing policy.  What is our

2  other big policy area?  I feel like I'm forgetting

3  something.

4        Q.    That's okay.  We're going to go through a

5  document that I think sets it all out, so we should

6  be able to get the full scope.  As I understand it,

7  I'm not trying to put words in your mouth, but since

8  you focus on Project Orange, that's kind of your

9  focus.  I mean, there may be other areas, but you're

10 not as involved.

11       A.    Oh, educational policy.  Sorry.

12       Q.    Nice.  Great.  And so is it the policy

13 team that decides what policy issues AJC is going to

14 focus on?

15       A.    Yes, in conjunction with the leadership

16 team, mostly Chas and Sukyi.

17       Q.    And how frequently does the policy team

18 meet?

19       A.    Twice a month.

20       Q.    And how about the leadership team?  Do

21 you know how frequently they meet?

22       A.    Once a week.

23       Q.    Okay.  And --

24       A.    Wait, sorry, once a month.

25       Q.    And are there regular meetings between

1  the leadership team and the policy team, or how --

2  how are ideas communicated back and forth between

3  those two teams?

4      A.   So Chas and Sukyi are very involved in

5  the policy team meetings.

6      Q.   Got it.  All right.  I am going to share

7  a document that will be Exhibit 3.  It is Bates

8  numbered at the bottom, AJC 29 and it goes to

9  AJC 31.

10             (Deposition Exhibit 3 marked for

11  identification.)

12  BY MS. MACKIN:

13      Q.   Please pull up that document, look it

14  over and let me know when you're ready to discuss

15  it.

16      A.   Yes, I'm ready.

17      Q.   All right.  Do you recognize this

18  document?

19      A.   Yes.

20      Q.   And what is it?

21      A.   It is the fiscal sponsorship document

22  between AJC and the Texas Fair Defense Project.

23      Q.   What is the Texas Fair Defense Project?

24      A.   They are an organization, and I believe

25  they're based here in Austin, that works on criminal

1  justice reform.

2        Q.    And turning back to Exhibit 3, do you

3  know who prepared this document?

4        A.    No.

5        Q.    What does this document show?

6        A.    It shows the agreement between AJC and

7  Texas Fair Defense Project, what the Texas Fair

8  Defense Project will do for AJC as our fiscal

9  sponsor and what responsibilities AJC has in return.

10        Q.    And what is the Texas Fair Defense

11  Project's mission?

12        A.    I don't know.

13        Q.    The document might be able to help us a

14  little bit.

15        A.    Yeah.

16        Q.    If we scroll down to --

17        A.    It's on page 1, the sponsor -- it says,

18  the sponsor organization is formed to fulfill the

19  express mission to fight for a criminal justice

20  system that respects the rights of low-income

21  Texans.

22        Q.    And when did AJC first become familiar

23  with the Texas Fair Defense Project?

24              MR. KALAR:  Objection to form.

25              You can go ahead and answer.

Austin Justice Coalition - 5/20/2020

33

1             THE WITNESS:  Okay.

2        A.    I'm not sure exactly.  It was early on in

3   AJC's history.

4   BY MS. MACKIN:

5        Q.    So it says that AJC's mission -- it says

6   on Exhibit 3 -- is to address criminal justice

7   reform at the local level.  I'm curious as to what

8   prompted AJC to get a fiscal sponsor as opposed to

9   essentially, I guess, keeping its fundraising

10  in-house?

11             MR. KALAR:  Objection to form.

12             But you can answer.

13       A.    I think it was mostly a lack of knowledge

14  and understanding of how to go about getting funding

15  and -- yeah, how all that works.

16  BY MS. MACKIN:

17       Q.    Yeah.  It also says -- at paragraph 1 it

18  says, Receipt of Funds.  The sponsor agrees to

19  receive contributions and gifts including, but not

20  limited to grant funding, if awarded, to be used for

21  the project, which is AJC, and to distribute those

22  funds to the project.

23             So I just want to make sure I'm clear.

24  Does AJC do any of its fundraising or grant

25  applications in-house, or are they all done by the

1   Texas Fair Defense Project under this fiscal

2   sponsorship agreement?

3       A.    We are transitioning to doing more of

4   that work ourselves.  Frances Jordan is in charge of

5   grants.  And we've also -- since the original

6   agreement, we have employed our own accounting --

7   accountant.  So as we learn more about how to do all

8   of these things, we are relying less on the Texas

9   Fair Defense Project.

10      Q.    And does Texas Fair Defense Project

11   collect a fee from AJC --

12      A.    Yes.

13      Q.    -- for serving as its fiscal sponsor?

14      A.    Yes.

15      Q.    And what is that fee?

16      A.    They take 7 percent of any grants.  It

17   used to be 15, but since we've done more of the work

18   ourselves, it's gone down to 7.

19      Q.    And up at the top, under Fiscal

20   Sponsorship Agreement, it says, adopted from

21   template provided by NorthSky Nonprofit Network.

22            What is the NorthSky Nonprofit Network?

23      A.    I do not know.

24      Q.    Okay.  And then all the way down at the

25   bottom, on the page Bates-labeled AJC 31, there are

1  several signatures.  The first is Rebecca Bernhardt,

2  it looks like executive director of the Texas Fair

3  Defense Project.  Do you know if Ms. Bernhardt still

4  holds that position?

5      A.    I do not know.

6      Q.    Underneath Ms. Bernhardt there's a

7  signature, it looks like David Lin.  It's a little

8  unclear.  And then it just says something of

9  directors.  Do you know who that person is?

10     A.    No.

11     Q.    And then the last line it says, Governor

12 Sukyi McMahon.

13     A.    Yes.

14     Q.    And do you know what Ms. McMahon is

15 governor of?

16     A.    No.  I think her title is board chair at

17 AJC.

18     Q.    Okay.  Because it looks --

19     A.    I'm assuming governor refers to AJC in

20 some way.

21     Q.    And then Chas Moore also signed this

22 document it looks like, on June 17th, 2017.  Does

23 that look right?

24     A.    Yes.

25     Q.    Okay.  All right.  That's all I have on

36

1   that document.  I'm going to share a document with

2   you, which will be Exhibit 4.

3                (Deposition Exhibit 4 marked for

4   identification.)

5   BY MS. MACKIN:

6        Q.    And it is Bates-labeled AJC 17 through

7   28.  Please pull up that document and take the time

8   you need to look it over and let me know when you're

9   ready to discuss it.

10       A.    I'm ready.

11       Q.    Do you recognize this document?

12       A.    Yes.

13       Q.    And what is it?

14       A.    It is a slideshow presentation about the

15  Austin Justice Coalition.

16       Q.    Who prepared this document?

17       A.    Joao Paulo Connolly.

18       Q.    And do you know when it was prepared?

19       A.    In the past three months, four months,

20  maybe.

21       Q.    And why was this document prepared?

22       A.    So Joao Paulo designed a new logo for

23  Austin Justice Coalition and a new website, and this

24  was done as part of that project.  This is posted on

25  our website as a presskit.

1      Q.    So you mentioned it is posted on your

2   website as a presskit.  Do you know if this

3   PowerPoint presentation is used for anything else?

4      A.    Not for certain, no.

5      Q.    Okay.  All right.  I'd like to talk

6   through this document because the question that I'm

7   going to ask you at the end of it, after we talk

8   through it, is whether this provides an accurate

9   summary of AJC's activities, but, you know, I want

10   to talk through it first, to kind of get some of the

11   details.

12          Let's see.  If we're on page -- AJC 18

13   talks about -- I mean, that kind of looks like it

14   might be AJC's mission in a sense.  Would that be

15   fair to say?

16      A.    The mission is on the next page.

17      Q.    Okay.

18      A.    Our official mission.

19      Q.    Great.

20      A.    I think this is just a summary of what we

21   do.

22      Q.    Okay.  And then the history is on

23   page 20.  And the second paragraph talks about --

24   its big four areas of advocacy are education,

25   policing, civic engagement and community building.

1    Is that consistent with your understanding?

2        A.    Sorry?

3        Q.    Is that consistent with your

4    understanding?  Does that sound right to you?

5        A.    Yes.

6        Q.    And then moving down to page AJC 22 --

7    actually, let's go a little bit further.  Let's go

8    to 23.  Talks about mental health.

9        A.    Yes.

10       Q.    Does this look like an accurate summary

11   of AJC's mental health work?

12       A.    Yes.

13       Q.    Okay.  And then down on page AJC 24,

14   after the cite it says, Complete Communities.  What

15   sort of -- well, it looks like, "This initiative

16   will involve a sustained effort to listen to those

17   in our communities that have been most impacted by

18   segregation and displacement."

19            Has this complete communities initiative

20   begun?

21       A.    Yes.

22       Q.    Okay.  When did it begin?

23       A.    We started becoming more actively

24   involved in housing policy around the time that

25   Austin started this latest version of the land

Austin Justice Coalition - 5/20/2020

39

1  development code revision.  And it started sort of

2  small, but then as we got more into the nitty-gritty

3  of housing policy, it expanded and the complete

4  communities initiative was created, as a result of a

5  lot of research and things that the policy group was

6  working on.

7      Q.    And I'm sorry, I forgot to ask you a

8  question on the last page, on AJC 23.  When did AJC

9  begin working in the mental health space?

10     A.    That, I believe, started near the end of

11 the last legislative session in Texas.

12     Q.    So like --

13     A.    We were very -- sorry.  Yeah.  So summer

14 of 2019.

15     Q.    All right.  And then back to the complete

16 communities.  You mentioned that it was kind of in

17 the latest round of the City of Austin's land

18 development code changes.  Do you know what year?

19     A.    That was last year.

20     Q.    All right.  And then AJC 25 talks about

21 higher learning.  When did AJC begin its work in the

22 higher learning space?

23     A.    Hold on a moment.  I lost the video with

24 you guys.  Let me see what's going on here.

25              MR. KALAR:  Should we go off the

1  record?

2             MS. MACKIN:  We might as well.

3             THE WITNESS:  I'm back.

4             MR. KALAR:  We can go back on.

5             MS. MACKIN:  Back on the record.

6  BY MS. MACKIN:

7      Q.    When did --

8      A.    Sorry, what was the question?

9      Q.    I'll ask it again.  When did AJC begin

10 its work in the higher learning space?

11     A.    Higher learning -- planning for higher

12 learning started in 2016.  It was one of the first

13 efforts that AJC worked on.  If -- the program --

14 the planning for it started then.  The program did

15 not actually start until, I believe, late 2017 or

16 early 2018 and it's been going since then.

17     Q.    Okay.  And how does this work further

18 AJC's mission?

19     A.    It's part of our community engagement and

20 education.  It focuses on social justice education

21 and helping black and brown children learn more

22 about their history in the country, to bridge that

23 in our regular education system history curriculum

24 and that works to empower these children to work for

25 their own liberation and heal -- like it says, heal

1   from the racism and oppression that they deal with

2   in their daily lives.

3        Q.    And I'm sorry, I should have asked you

4   these questions about the last two initiatives we

5   talked about.  Talk a little bit about how the

6   complete communities initiative furthers AJC's

7   mission.

8        A.    So for complete communities and housing

9   policy, UT Austin published a report called

10  Uprooted, which focuses on gentrification in the

11  Austin area in which areas have suffered from

12  gentrification, which areas are most likely to be

13  gentrified in the future and we use that to target

14  specific neighborhoods.

15            I'm not sure how aware you are of what's

16  happening here in Austin, but the black and -- well,

17  the black population has been steadily decreasing in

18  Austin as gentrification took over the Eastside.

19  And so we are trying to work on housing policies

20  that will allow the black population -- the black

21  and brown populations to remain in Austin or to

22  return to Austin.  So there's a big focus on

23  affordable housing that these people can live in.

24            And we do go out to the community in

25  conjunction with Huston-Tillotson University and did

42

1  some canvassing in Southeast Austin, which was an

2  area that the Uprooted report study identified as a

3  neighborhood at risk of gentrification, and we took

4  housing surveys out there and went door to door and

5  tried to get community opinion on what they wanted

6  from their neighborhood and from Austin and how they

7  could remain in their homes.

8      Q.    Okay.  Sorry to jump back again, but tell

9  me a little bit about how the mental health work

10 that AJC does furthers its mission.

11     A.    So the mental health work came out of our

12 criminal justice reform work.  Here in Austin, the

13 police answer most mental health emergency calls and

14 there were several incidents of police actually

15 shooting people who were in mental distress.  And so

16 we are trying to prevent -- we're trying to change

17 how mental health emergencies are handled, in an

18 effort to keep those folks from being placed in

19 jail.  We don't have a lot of mental health

20 facilities left in Texas.  And so a lot of times

21 people with mental health issues end up being locked

22 up in jail, and then they are also predominantly --

23 or disproportionately black and brown people.  And

24 so that was born -- that sort of was born out of our

25 criminal justice effort to reduce the black and

Austin Justice Coalition - 5/20/2020

43

1 brown populations in Texas jails.

2      Q.    Thank you.  And then if we can

3 fast-forward now down to AJC 26.  So tell me about

4 Project Orange?

5      A.    One second.  I lost the document somehow.

6 Let me --

7      Q.    Want me to send it to you?  Oh, it's

8 still there.  Okay.

9      A.    I should have it on my computer.  It

10 should be here.  I'm not sure what I did.  Okay.

11 You said AJC 26?

12      Q.    Yes.

13      A.    Okay.  Project Orange.

14      Q.    Yes.  So tell me about Project Orange.

15      A.    What specifically would you like to know?

16      Q.    Well, when did AJC first launch Project

17 Orange?

18      A.    So our first voter registration drive at

19 the jail was in February 2018.  There was obviously

20 some planning that went into that, probably late

21 2017.

22      Q.    And how does Project Orange further AJC's

23 mission?

24      A.    So as I said earlier, the jail population

25 is disproportionately black and brown and there is

Austin Justice Coalition - 5/20/2020

44

1   no way for inmates in jail to vote -- to get

2   registered to vote, first.  That is our main mission

3   with Project Orange, is to register these folks to

4   vote.  Because in Texas it is not easy to register

5   to vote.  You need to fill out a form with a VDR,

6   who is trained and certified as a voter deputy

7   register.  Or you need to obtain a form that you can

8   fill out and mail in.  So these options are not

9   available to folks in jail.  So we go into the jails

10  and register eligible inmates to vote.

11          And then we also -- during the -- every

12  November election and during the presidential

13  primary elections, we help inmates to get a mail-in

14  ballot.

15      Q.   So this first bullet point here mentions

16  that Project Orange registered more than 550

17  incarcerated citizens, up from over 300 in 2018.  So

18  do I read that right as, Project Orange registered

19  over 300 incarcerated citizens in 2018 and it

20  registered more than 550 incarcerated citizens in

21  2019?

22      A.   So this actual bullet point has not been

23  updated.  I did give Joao Paulo the updated

24  information.  This was published -- I think the 550

25  was supposed to be in 2019 and the 320 '18 and we've

1   now hit over a thousand on -- total, from adding

2   those together with what we did in 2020 so far.

3       Q.   And so did Project Orange first start

4   registering voters in 2018?

5       A.   Yes.

6       Q.   And then I just -- just so I break it

7   out, the approximate numbers, over 320 '18 and then

8   in addition to that more than 550 in 2019?

9       A.   Yes.

10      Q.   And then you mentioned over a thousand in

11  2020, and I just want to make sure that I'm clear on

12  whether you mean since 2018 or in 2020 alone?

13      A.   Since 2018.  We've done almost 200 in --

14  well, we did almost 200 in the first couple months

15  of 2020.

16      Q.   And does that 500 include the 300 from

17  2018?

18      A.   No.

19      Q.   Sorry, the 550?

20      A.   No, it does not.

21      Q.   Okay.  But the over 1,000 from 2020 does

22  include the 550?

23      A.   Yes.  That's total since Project Orange

24  began.

25      Q.   Thank you.  And then the second bullet,

46

1    "Since October 2019 we've helped 159 inmates fill

2    out ballot by mail applications."

3         A.    Yes.

4         Q.    Did Project Orange help inmates with

5    ballot by mail applications -- well, let me ask that

6    better.

7              When did Project Orange start helping

8    inmates with ballot by mail applications?

9         A.    The election in November 2018.

10        Q.    So that would have been --

11        A.    We would have been there in October of

12   2018 to help them fill out their ballot by mail

13   applications.

14        Q.    Okay.  And then the 159 inmates since

15   October 2019 -- well, how many -- do you know how

16   many inmates AJC helped with a ballot by mail before

17   October 2019?

18        A.    No.  We did not keep a record of that,

19   unfortunately.  And I believe this number of 159

20   does not include the primary election held in March

21   this year.

22        Q.    All right.  And then who --

23        A.    We did about another 60.

24        Q.    The next bullet point talks about a

25   potential expansion in 2020.  Which counties are you

1  considering expanding to?

2      A.    I have a list -- one of the AJC

3  volunteers did research into different counties in

4  Texas, identifying which had been voting more

5  Democrat recently and looking at -- with all that

6  process in there, we have a short list of about ten

7  counties and I don't know them off the top of my

8  head.  I do have a document with them on it, though.

9      Q.    And what -- you mentioned some voting

10 trends were looked at in determining counties to

11 expand to.  Do you know what else is factoring in to

12 the decision?

13            MR. KALAR:  Objection to form.

14     A.    Yeah.

15            MR. KALAR:  But go ahead.

16            THE WITNESS:  Okay.  Sorry.

17     A.    Voting trends and we looked at who the

18 sheriff was, who the district attorney was.  We also

19 looked at how many polling places different counties

20 had and whether that had increased or decreased

21 recently.

22 BY MS. MACKIN:

23     Q.    And why did those factors matter?

24     A.    Because we were looking for a place that

25 would encourage -- or would be open to further voter

1  enfranchisement by registering inmates to vote.

2        Q.    Moving down to the next page --

3              MR. KALAR:  Anna, just a flag for

4  you.  We just got a message from the court reporter,

5  if there's a logical time for a break any time soon.

6              MS. MACKIN:  Yes, there definitely

7  is.  I have just a couple more quick things on this

8  document and then we can take a break.

9  BY MS. MACKIN:

10        Q.    All right.  So the next page, AJC 27,

11  talks about Book Club and General Body Meetings.

12  Can you talk just a little -- well, when did AJC

13  start hosting a book club?

14        A.    That, I don't know.  That was while I was

15  in grad school at some point.

16        Q.    How about general body meetings, when did

17  those begin?

18        A.    Those started almost immediately.  That

19  was a big focus of AJC in the beginning.

20        Q.    Okay.  So slide AJC 28 is contact

21  information.  Does this document, Exhibit 4,

22  accurately capture AJC's current activities?

23              MR. KALAR:  Objection to form.

24        A.    Yeah.

25              THE WITNESS:  Sorry.

49

```
 1  BY MS. MACKIN:

 2       Q.    Does AJC participate in any activities

 3  that are not reflected on Exhibit 4?

 4                MR. KALAR:  Objection to form.

 5                But go ahead.

 6       A.    So I don't believe that all of the

 7  different events that AJC hosts are included in this

 8  document.  There are probably some minor policy

 9  issues that are not elaborated on in this document.

10  BY MS. MACKIN:

11       Q.    Okay.  Anything else?

12       A.    No.

13       Q.    All right.  That's all that I have on

14  that document.

15                MS. MACKIN:  Why don't we go ahead

16  and take maybe a five-, ten-minute break.  Let's go

17  off the record.

18                THE REPORTER:  We're off the record.

19                (Recess taken from 11:27 a.m. to

20  11:40 a.m.)

21  BY MS. MACKIN:

22       Q.    All right.  Ms. Rodionov, I am sharing a

23  document with you that is Bates-labeled AJC 1 and it

24  is, in fact, a spreadsheet.  Sorry, I'm having a

25  little bit of document trouble.  Just one more
```

50

```
 1  moment.  There we go.  Okay.  Now it's --

 2                  MS. MACKIN:  Sorry, can we go off the

 3  record for a second?

 4                  (Recess taken from 11:42 a.m. to

 5  11:43 a.m.)

 6  BY MS. MACKIN:

 7      Q.    Please let me know -- hopefully you'll

 8  have a little bit less trouble than I did with that

 9  last document -- when you are able to pull it up and

10  are ready to discuss it.

11      A.    Okay.  Yes.

12      Q.    All right.  Do you recognize this

13  document?

14      A.    Yes.

15      Q.    What is it?

16      A.    It is the AJC budget document.

17      Q.    Okay.  And it appears to reflect fiscal

18  years '18, '19 and '20; is that right?

19      A.    Yes.

20      Q.    Okay.  Who prepared this document?

21      A.    Most recently, that is Frances Jordan.

22  I'm not sure if she prepared the 2018 one or not.

23      Q.    Okay.  Do you know who would have done

24  that?

25      A.    No.
```

51

1          Q.     And we will make this Exhibit 5 to this

2     deposition.

3                    (Deposition Exhibit 5 marked for

4     identification.)

5     BY MS. MACKIN:

6          Q.     Do you know why this document was

7     prepared?

8          A.     To keep an account of our finances.

9          Q.     Sure.  I was just -- I ask that because

10    sometimes folks might prepare something specifically

11    for a deposition.  So that was the reason for the

12    question.

13         A.     Okay.

14         Q.     And why is the first year that is listed

15    on this document fiscal year 2018?

16         A.     We did not have funding prior to that.

17    We got our first grant in August of 2017.

18         Q.     Okay.  So I'd like to start by looking at

19    the sheet that says Fiscal Year 2018.  Can you tell

20    me which of these categories includes AJC's voter

21    registration efforts?

22                    MR. KALAR:  Objection to form.

23                    But go ahead.

24                    THE WITNESS:  Sorry.

25         A.     None specific -- sorry?

Austin Justice Coalition - 5/20/2020

52

1  BY MS. MACKIN:

2       Q.    You can answer.  Go ahead.

3       A.    Okay.  None specifically.  Our -- AJC's

4  Project Orange expenses would be included in the

5  things like printing and copying, where AJC included

6  information about Project Orange in other materials

7  about the organization.  And also I don't think it's

8  on this one in 2018.  The website, which includes

9  information about Project Orange, would also be

10 included.  But there's no actual entry relating

11 specifically to Project Orange.

12      Q.    You did mention printing and copying and

13 the website?

14      A.    Yes.

15      Q.    Anything else?

16      A.    No.

17      Q.    Okay.  And you mentioned that the

18 printing and copying expenses related to Project

19 Orange were used to publicize Project Orange; is

20 that right?

21      A.    Yes.

22      Q.    Okay.  Were they used for anything else?

23      A.    No.

24      Q.    Okay.  And then the website, how is the

25 website used to --

53

1      A.     Project Orange has -- sorry.  Go ahead.

2      Q.     -- to further Project Orange?

3      A.     The website contains a page specifically

4   for Project Orange.  So we -- it has information

5   about what we do, it has a link to our Project

6   Orange e-mail to get in touch with us and it

7   outlines the steps of how to become a Project Orange

8   volunteer.

9      Q.     All right.  Let's move on to Fiscal

10  Year 2019.  Which of these categories reflects the

11  resources that AJC dedicated to Project Orange?

12             MR. KALAR:  Objection to form.

13             Go ahead.

14      A.     So under Color, there is website and

15  materials, that again would have included Project

16  Orange.  And also other expenses may have included

17  things for Project Orange to promote the project.

18  BY MS. MACKIN:

19      Q.     Okay.  And the other expenses, you mean

20  the $600 reflected on row 79?

21      A.     Yes.

22      Q.     And do you know how those expenses were

23  used to support Project Orange?

24      A.     Not exactly.  Frances mentioned to me

25  that any money spent on Project Orange would have

54

1   come out of line 78, 79 and then back up at 31.  As

2   far as I know, we have not had any direct expenses

3   for Project Orange in the past year.

4        Q.    Okay.  So your answer would be the same

5   if I asked you about the 2020 budget?

6        A.    Right.

7             MR. KALAR:  Objection to form.

8        A.    We don't have any -- we have not had any

9   expenses in 2020.

10  BY MS. MACKIN:

11       Q.    Okay.

12       A.    Aside from, again, the website and any

13  other printed material that included information

14  about Project Orange.

15       Q.    All right.  Thank you.  We are done with

16  that exhibit for now.  I am sharing with you a

17  document.  It's also a spreadsheet marked AJC 16.

18  And that will be Exhibit 6 to this deposition.

19             (Deposition Exhibit 6 marked for

20  identification.)

21  BY MS. MACKIN:

22       Q.    Please let me know when you're able to

23  pull it up and ready to discuss it.

24       A.    I'm ready.

25       Q.    Do you recognize Exhibit 6?

1      A.    Yes.

2      Q.    What is it?

3      A.    This is a spreadsheet documenting the

4  volunteer hours, the volunteers and how many hours

5  they spent on Project Orange.

6      Q.    Who created this document?

7      A.    Grace -- I'm struggling with her last

8  name -- Thomas.  She is the other co-coordinator of

9  Project Orange.

10     Q.    Okay.  And so I want -- if we could walk

11 through the columns and just let me know what each

12 one means.  Some of them seem pretty

13 self-explanatory, but I'd just like to hear it from

14 you to make sure there's no confusion.

15     A.    Okay.  So column A are the dates that we

16 went to the jails to register people to vote, the

17 activity VR is voter registration.

18           VE, in lines 23 and 24, are voter

19 engagement, which is -- I do a -- like a voter

20 education class at the jail for the inmates and Joao

21 assists me in that.

22           Recruitment was -- there were a couple of

23 events put on by the Travis County Voter Deputy

24 Registrars, where we could recruit volunteers.

25 Multiple organizations were represented and

Austin Justice Coalition - 5/20/2020

56

1  volunteers were invited and VDRs were invited and we

2  signed some people up there.

3          BBM is the ballot by mail application

4  drive.

5      Q.   Okay.

6      A.   Column C, non-PO volunteers are -- so for

7  the ballot by mail drive, we have our own Project

8  Orange volunteers and Tiffany at the jail, she also

9  reaches out to other jail volunteers, because it

10  takes more people than we can do on our own.  So

11  those volunteers next to the Ys there are not

12  Project Orange people regular volunteers.

13          Volunteer is whether or not they are

14  volunteers, and they all are.

15          Reasons for -- okay.  Reasons are not

16  showing up, but that's self-explanatory.

17          On BDR hours is how many hours we spent

18  doing -- the BDRs did voter registration.

19          Ballot by mail is how many hours were

20  spent on ballot by mail efforts, application

21  efforts.

22          Unique number, I believe is the number

23  assigned to all of the people in the spreadsheet,

24  where Grace is No. 1, I'm No. 2.

25      Q.   I see.

Austin Justice Coalition - 5/20/2020

57

1      A.     You can go down and see where we all are

2   on the spreadsheet.

3      Q.     So like I could easily pull all the

4   records with each volunteer's name by their unique

5   number?

6      A.     I'm not sure how easy that is, but yes.

7      Q.     Fair enough.

8      A.     Because the people are listed in more

9   than one instance.  It's organized by date, some

10   people come multiple times, obviously.  So like

11   Grace goes every single time and so you'll find her

12   name repeated for every different date, except for

13   the voter engagement talk.

14      Q.     And who reports the hours?  Do the

15   volunteers self-report, or does someone report it

16   for them?

17      A.     Grace keeps track of them.  We all enter

18   the jail together and stay together as a group and

19   we all leave at the same time.  So she just keeps

20   track of who was there on what date.  And that is

21   then reported to Tiffany Taylor at the jail.

22      Q.     And you mentioned doing a voter education

23   class?

24      A.     Yes.

25      Q.     What do you discuss in your voter

1   education class?

2        A.    We discuss different types of elections

3   and we talk about why it is important to vote.  We

4   go through some election basics, like the voter ID

5   law, you know, how to vote when you're in jail, how

6   to vote when you're not in jail.  We cover our

7   ballot by mail efforts at the jail also.  We'll

8   cover the upcoming election.  I usually schedule

9   them before an upcoming election so that we can talk

10  about who is on the ballot in that election.

11       Q.    Okay.  And this spreadsheet, Exhibit 6,

12  was the only one that we received in discovery.  Are

13  there any other records of the volunteer hours that

14  were dedicated to Project Orange?

15       A.    This -- sorry?  This document is one that

16  Grace started after we took over the coordinating

17  duties.  The other documents I believe you received

18  as e-mails.  And mostly those were Hope e-mailing

19  details to Tiffany at the jail, because we need to

20  report who showed up every week to Tiffany.

21       Q.    And I'm sorry, can you remind me who

22  Tiffany is?  The --

23       A.    She worked in programs at the Travis

24  County Correctional Complex.

25       Q.    Okay.  Got it.

59

1        A.    She's our contact at the jail.

2        Q.    And have all of these visits that you've

3   made for Project Orange, have they all been to the

4   Travis County Correctional Complex or have you gone

5   to any other places?

6        A.    All to the Travis County Correctional

7   Complex.

8        Q.    Do you track whether -- so you

9   register -- you assist people in registering to

10  vote.  Do you track how many of them ultimately cast

11  a ballot?

12       A.    No, not directly.

13       Q.    Do you track it indirectly?

14       A.    So we are not -- as jail volunteers, we

15  are not allowed to have any contact with inmates,

16  aside from doing our voter registration and ballot

17  by mail drive.  So we are unable to follow up

18  directly with the inmates to find out if they have

19  voted.

20            When we do the ballot by mail, Tiffany

21  tracks some information.  I'm not sure how she

22  gathers that information, but she -- when she

23  reports back to us how many ballots by mail

24  applications were filled out, she includes

25  information on whether or not those people

1  registered to vote while in jail.

2      Q.   Does Tiffany track any other information

3  about the people who you help apply for a ballot by

4  mail?

5               MR. KALAR:  Objection to form.

6      A.   I do not know for certain what all

7  information she tracks.  The information that she

8  sends to us is how many people filled out the

9  application, I believe she tells us how many people

10  return their ballots and then how many people -- of

11  those, how many people registered to vote from --

12  while they were in jail.

13  BY MS. MACKIN:

14      Q.   So do you learn anything about whether

15  anyone that you assist with a ballot by mail has

16  their ballot rejected?

17               MR. KALAR:  Objection to form.

18      A.   We are not -- as I said, we are not

19  allowed contact with the inmates outside of the

20  times that we come to help them with their

21  applications and their voter registration, so we

22  would have no way of knowing that.

23  BY MS. MACKIN:

24      Q.   And other than Exhibit 6, there are no

25  other records of the time spent on Project Orange;

1  is that right?

2            MR. KALAR:  Objection to form.

3      A.    Again, I don't know what information

4  Tiffany tracks.  This is what we track and the

5  e-mails before we started, Hope would send those

6  e-mails to Tiffany on -- in terms of the time spent,

7  I'm not sure if Hope mentioned in those e-mails how

8  much time was spent, but it is always approximately

9  two hours.  We're scheduled to go to the jail from

10  12:30 to 2:30 on Saturdays.  So if she didn't

11  specifically count hours in those e-mails, it was

12  generally about two hours.

13  BY MS. MACKIN:

14      Q.    That is all I have on that document.

15  Okay.  I am sharing a document with you marked AJC 2

16  through 3 and it will be Exhibit 7 to this

17  deposition.

18            (Deposition Exhibit 7 marked for

19  identification.)

20  BY MS. MACKIN:

21      Q.    Please let me know when you are able to

22  pull up that document and are ready to review it.

23      A.    Yes, I'm ready.

24      Q.    Do you recognize this document?

25      A.    Yes.

1    Q.    What is it?

2    A.    This is a document that we received from

3 Hope that she created.  It is sort of a reminder to

4 us on when we lead ballot by mail application drives

5 at the jail and there's the announcement -- the unit

6 announcement is what we say when we go into the

7 individual pods, what we announce to the inmates.

8 The volunteer group notes are -- so as I said, when

9 we go to the jail, we meet in the lobby as one big

10 group.  And so we -- any information that we need to

11 pass on to the volunteers is given at that time.

12 And these are our notes for what to remind the

13 volunteers of before we go in and start the ballot

14 by mail drive.

15    Q.    And do you know when this document was

16 developed?

17    A.    No.  I believe it was before the first

18 ballot by mail drive, but I am not certain.

19    Q.    Is there a similar document that relates

20 specifically to your voter registration drives?

21    A.    Yes.

22    Q.    Are there any other -- so there's that

23 voter registration document, which I don't think we

24 have.  There's the -- this document that we're

25 looking at here, Exhibit 7.  Are there any other

63

1 printed materials that you use when you go into the

2 jails for Project Orange?

3              MR. KALAR:  Objection to form.

4      A.    So this one has the addresses on the

5 second page.  When we do our voter registration

6 drives, we also take another list of addresses that

7 can be useful, specifically for people who are

8 experiencing homelessness.  So their addresses are

9 shelters, includes the jail address for folks that

10 want to use the jail as their address on their voter

11 registration.

12 BY MS. MACKIN:

13      Q.    Anything else?

14      A.    No.

15      Q.    Okay.

16      A.    Oh, well, and just the voter registration

17 applications and the ballot by mail applications, we

18 take those in with us.

19      Q.    Sure.  These questions just at the outset

20 just to let you know, aren't meant to suggest that

21 you should be doing certain things.  I'm just

22 curious as to whether you do.

23      A.    That's fine.

24      Q.    When you do Project Orange visits, do you

25 advise voters who are applying to vote by mail about

64

1  their option to have a witness sign for them if they

2  can't sign for themselves?

3              MR. KALAR:  Objection to form.

4              But go ahead.

5      A.    Not that I'm aware of.

6  BY MS. MACKIN:

7      Q.    Okay.  So I'm done with this document.

8  Thank you.

9              Other than the visits -- well, strike

10  that.

11             Does AJC currently plan to continue

12  providing assistance with voter registration through

13  Project Orange?

14     A.    Yes.

15     Q.    For how long?

16     A.    For as long as this is the only way to

17  get inmates registered to vote.  Indefinitely.

18     Q.    Has Austin Justice Coalition ever

19  assisted any voter whose mail-in ballot was rejected

20  for a signature mismatch?

21             MR. KALAR:  Objection to form.

22     A.    No, not that I'm aware of.

23  BY MS. MACKIN:

24     Q.    Okay.  When volunteers sign up to

25  volunteer with Austin Justice Coalition, do they

Austin Justice Coalition - 5/20/2020

65

1  sign up for a specific project, or do they just say

2  I'm here to work, put me to work wherever you need

3  me?

4       A.    For most things it is -- sorry.  It

5  depends on the project.  So for Project Orange, for

6  example, they have to specifically volunteer for

7  Project Orange if they want to participate because

8  of the need to fill out an application for jail

9  access and they need to be a volunteer deputy

10 registrar in order to participate.

11           For things like general body meetings and

12 policy meetings, anybody can come and participate,

13 and as you said, put me to work, I'm here to do

14 whatever.

15           Higher learning is, again, specific to

16 that program.  The mentors are all people of color

17 and they -- higher learning occurs on a specific day

18 at a specific time.  So they do have to specifically

19 volunteer for higher learning, if that's the case.

20      Q.    Okay.  Ms. Rodionov, I do not have any

21 more questions for you at this time.  I very much

22 appreciate you taking the time out of your day today

23 and I would just like to ask you on the record if I

24 have treated you courteously today?

25      A.    Yes, you have.

Austin Justice Coalition - 5/20/2020

1          MS. MACKIN:  Thank you very much.

2   I'll pass the witness.

3               THE WITNESS:  Thank you.

4               MR. TAWIL:  I just -- are we taking a

5   break?

6               MR. KALAR:  I think it would make

7   sense to take a quick break right now, if that's

8   okay.  I mean, both given that we're moving away

9   from Anna and we're having a little bit of technical

10  difficulties among some of the plaintiffs'

11  attorneys.  So if that would be all right, I think a

12  break right now would be appreciated.

13              MR. TAWIL:  Okay.  Just so y'all

14  know, I have about seven questions.  They're

15  primarily yes or no.  The shorter the break, the

16  better.

17              MR. KALAR:  Maybe just five minutes,

18  then?

19              MR. TAWIL:  Sure.

20              MR. KALAR:  Great.

21              THE REPORTER:  We're off the record.

22              (Recess taken from 12:12 p.m. to

23  12:19 p.m.)

24

25

1                     EXAMINATION

2    BY MR. TAWIL:

3        Q.    Good afternoon, ma'am.  I do not want to

4    mispronounce your name, with a last name like Tawil,

5    I'm sensitive to mispronunciation, so how do you say

6    your last name again?

7        A.    Rodionov.

8        Q.    Rodionov.  Okay.  Ms. Rodionov, I

9    appreciate you taking the time to testify for us

10   today.  I have just a short list of questions I'd

11   like to go over with you.  Does the Austin -- what's

12   the official name of your organization, the Austin

13   Justice Coalition?

14       A.    Yes.

15       Q.    Do you have any members from McAllen,

16   Texas?

17       A.    Not that I'm aware of.

18                   MR. KALAR:  Objection to form.

19                   But go ahead.

20   BY MR. TAWIL:

21       Q.    Do you know if the Austin Justice

22   Coalition has ever engaged any voter or potential

23   voter in McAllen, Texas?

24                   MR. KALAR:  Objection to form.

25                   But go ahead.

Austin Justice Coalition - 5/20/2020

68

1      A.    I can't say for certain either way.  We

2 do not keep -- so the jail population can include

3 people from all over Texas.  We don't have records

4 of where all the people we've registered voters, we

5 don't keep records of where they are all from or the

6 same thing with the ballot by mail population, so

7 it's possible, but I can't say for sure.

8 BY MR. TAWIL:

9      Q.    Do you know if you ever -- if the Austin

10 Justice Coalition ever assisted a voter to register

11 to vote in a McAllen election?

12            MR. KALAR:  Object to form.

13 BY MR. TAWIL:

14     Q.    Let me limit that in time.  Since 2017?

15            MR. KALAR:  Same objection.

16     A.    In McAllen, specifically for a McAllen

17 city election?

18 BY MR. TAWIL:

19     Q.    Any election in McAllen.

20     A.    Again, I can't say for certain.  I don't

21 know where all the people have come from.

22     Q.    Has anybody that voted by mail in an

23 election in McAllen ever reached out to the Austin

24 Justice Coalition for assistance as a result of any

25 issue related to the ballot by mail that they cast?

1          MR. KALAR:  Objection to form.

2     A.    No.

3          THE WITNESS:  Sorry.

4     A.    No.

5    BY MR. TAWIL:

6     Q.    Has the Austin Justice Coalition ever

7    visited a detention facility in McAllen, Texas?

8     A.    No.

9     Q.    Has the Austin Justice Coalition ever

10   visited a detention facility in Hidalgo County?

11    A.    No.

12    Q.    Do you know if the Austin Justice

13   Coalition has ever had any interaction with Perla

14   Lara, who is the city secretary of the City of

15   McAllen, since 2017?

16    A.    No.

17    Q.    Has the Austin Justice Coalition

18   communicated with the City of McAllen city

19   secretary's office since 2017 regarding mail-in

20   ballots?

21    A.    No.

22          MR. TAWIL:  I think those are all the

23   questions that I have for you this afternoon, ma'am.

24   So I again thank you for your time, and I'll pass

25   the witness.

1          THE WITNESS:  Thanks.

2                    EXAMINATION

3   BY MR. MAGEE:

4      Q.    Hi, my name is Eric Magee and I'm the

5   attorney that represents Brazos County elections

6   administrator Trudy Hancock in her official

7   capacity, and my questions are similar to

8   Mr. Tawil's.  Has the Austin Justice Coalition ever

9   done any work in Brazos County?

10                   MR. KALAR:  Objection to form.

11     A.    We have not gone to Brazos County and

12  done any work in Brazos County, no.

13  BY MR. MAGEE:

14     Q.    So you have not visited any of the Brazos

15  County detention centers, correct?

16     A.    Correct.

17     Q.    Have you had any communications since

18  2016 with the Brazos County elections office?

19     A.    No.

20     Q.    And do you know, have you ever assisted a

21  registered voter in Brazos County in obtaining a

22  mail-in ballot application?

23                   MR. KALAR:  Objection to form.

24     A.    Again, I can't say for certain yes or no.

25  We help anybody registering, no matter where they

Austin Justice Coalition - 5/20/2020

1  lived in Texas and we don't keep good records of

2  where all of those people are from.

3              MR. MAGEE:  I think I have no further

4  questions.

5              MR. KALAR:  No questions from me.  We

6  will reserve and pass the witness.

7              MS. MACKIN:  All right.  I think

8  we're finished.

9              THE REPORTER:  Transcript orders,

10  please.

11             MR. KALAR:  I'll put that on the

12  record.

13             MR. TAWIL:  Sorry, Samuel.  City

14  of -- Perla Lara would like E-Tran, please.

15             MR. MAGEE:  An E-Tran is fine with us

16  as well, Brazos County.

17             THE REPORTER:  Samuel, I did not get

18  what you said.

19             MR. KALAR:  Again, we would like

20  to -- we would like to read and sign, and sending

21  that to TCRP would be great.

22             THE REPORTER:  Anyone else?  We're

23  off the record.

24             (Deposition concluded at 12:26 p.m.)

25

Austin Justice Coalition - 5/20/2020

72

1               CORRECTIONS AND SIGNATURE

2    PAGE/LINE      CORRECTION          REASON FOR CHANGE

3    _____

4    _____

5    _____

6    _____

7    _____

8    _____

9    _____

10   _____

11   _____

12   _____

13   _____

14   _____

          I, LARISSA RODIONOV, have read the foregoing
15   deposition and hereby affix my signature that same
     is true and correct except as noted herein.

16

17        _____
          LARISSA RODIONOV
18
     STATE OF _____  )
19   COUNTY OF _____  )

20        Subscribed and sworn to before me by the
     said witness, LARISSA RODIONOV, on this the
21   _____ day of _____, 2020.

22
                         _____
23                       NOTARY PUBLIC IN AND FOR
                         THE STATE OF_____
24

25   My Commission Expires: _____

Austin Justice Coalition - 5/20/2020

73

1          REPORTER'S CERTIFICATION

2

3          I, Micheal A. Johnson, Registered Diplomate

4  Reporter, Certified Realtime Reporter and Notary

5  Public in and for the State of Texas, certify that

6  on the 20th day of May, 2020, I reported the Remote

7  Oral Deposition of LARISSA RODIONOV, after the

8  witness had first been duly cautioned and sworn to

9  testify under oath; said deposition was subsequently

10  transcribed by me and under my supervision and

11  contains a full, true and complete transcription of

12  the proceedings had at said time and place; and that

13  reading and signing was requested.

14          I further certify that I am neither counsel

15  for nor related to any party in this cause and am

16  not financially interested in its outcome.

17          GIVEN UNDER MY HAND AND SEAL of office on

18  this 29th day of May, 2020.

19

20

21  _____
    MICHEAL A. JOHNSON, RDR, CRR
22  NCRA Registered Diplomate Reporter
    NCRA Certified Realtime Reporter
23  Notary Public in and for the
    State of Texas
24  My Commission Expires:  8/8/2020

25

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

DR. GEORGE RICHARDSON, ROSALIE          §
WEISFELD, AUSTIN JUSTICE COALITION, §
COALITION OF TEXANS WITH                §
DISABILITIES, MOVE TEXAS CIVIC FUND, §
LEAGUE OF WOMEN VOTERS OF TEXAS,  §
and AMERICAN GI FORUM OF TEXAS,         §
INC.,                                   §
     *Plaintiffs,*                          §
                                        §
v.                                      §          No. 5:19-cv-00963
                                        §
TEXAS SECRETARY OF STATE, TRUDY         §
HANCOCK, IN HER OFFICIAL CAPACITY §
AS BRAZOS COUNTY ELECTIONS              §
ADMINISTRATOR, AND PERLA LARA IN  §
HER OFFICIAL CAPACITY AS CITY OF        §
MCALLEN, TEXAS SECRETARY,                §
     *Defendants.*                          §

### DEFENDANT SECRETARY OF STATE'S NOTICE OF ORAL DEPOSITION PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30

TO:    Austin Justice Coalition, by and through its attorneys of record, Hani Mirza, Zachary D. Dolling, Beth Stevens, and Ryan Cox, Texas Civil Rights Project, 1405 Montopolis Drive, Austin, Texas 78741; and Richard Mancino, Jennifer Hardy, Joanna Suriani, Willkie Farr & Gallagher LLP, 1875 K Street, N.W., Washington, DC 20006.

Defendant Texas Secretary of State hereby notices the deposition upon oral examination of Austin Justice Coalition "AJC," including all subsidiaries, DBAs, and aliases, beginning at **10:00 AM** on **Wednesday**, **May 20, 2020** and continuing from day to day until complete. The deposition will be held virtually via Zoom videoconference and will be transcribed and videotaped by a certified court reporter and videographer designated by Defendant. Defendant reserves the right to use the

1



deposition for any purpose permitted under the Federal Rules of Civil Procedure or Federal Rules of Evidence.

Pursuant to Federal Rule of Civil Procedure 30(b)(6), AJC is directed to designate one or more officers, directors, managing agents, or other persons who will testify on AJC's behalf regarding all information known or reasonably available to AJC with respect to the matters set forth in **Attachment A**.

Pursuant to Federal Rules of Civil Procedure 30(b)(2) and 45, AJC is also requested to produce at least 24 hours before the videoconference deposition, all documents in response to the subpoena duces tecum in **Attachment B**.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

RYAN L. BANGERT
Deputy First Assistant Attorney General

DARREN L. MCCARTY
Deputy Attorney General for Civil Litigation

THOMAS A. ALBRIGHT
Chief for General Litigation Division

*/s/ Anne Marie Mackin*
ANNE MARIE MACKIN
Texas Bar No. 24078898
Assistant Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2798 | FAX: (512) 320-0667
anna.mackin@oag.texas.gov

2

**ATTORNEYS FOR DEFENDANT**
**TEXAS SECRETARY OF STATE**

**CERTIFICATE OF SERVICE**

I certify that that on May 14, 2020 this notice was served upon counsel listed below via email.

**Hani Mirza**
hani@texascivilrightsproject.org
**Zachary D. Dolling**
zachary@texascivilrightsproject.org
**Rebecca Harrison Stevens**
beth@texascivilrightsproject.org
**Ryan V. Cox**
ryan@texascivilrightsproject.org
**Samuel Kalar**
skalar@willkie.com
**Joanna Suriani**
jsuriani@willkie.com
**Eric Magee**
e.magee@allison-bass.com
**Isaac J. Tawil**
itawil@mcallen.net
**Austin Stevenson**
astevenson@mcallen.net
**C. Robert Heath**
bheath@bickerstaff.com
**Gunnar P. Seaquist**
gseaquist@bickerstaff.com

*/s/ Anne Marie Mackin*
ANNE MARIE MACKIN
Assistant Attorney General

3

### DEFINITIONS

The terms below are used in this notice as follows:

1. "Austin Justice Coalition," "AJC," "you," "your," or "yours" means Austin Justice Coalition (a plaintiff in this Lawsuit) and anyone acting or purporting to act on their behalf with respect to any matter inquired about herein, including without limitation representatives, employees, or agents.

2. "League of Women Voters," "LWVTX" or "LWV" means the League of Women Voters of Texas (a plaintiff in this Lawsuit), and anyone acting or purporting to act on its behalf with respect to any matter inquired about herein, including without limitation representatives, employees, or agents.

3. "Coalition of Texans with Disabilities" or "CTD" means Coalition of Texans with Disabilities (a plaintiff in this Lawsuit), and anyone acting or purporting to act on its behalf with respect to any matter inquired about herein, including without limitation representatives, employees, or agents.

4. "MOVE Texas Civic Fund," "MOVE Texas," or "MOVE" means MOVE Texas Civic Fund (a plaintiff in this Lawsuit), and anyone acting or purporting to act on its behalf with respect to any matter inquired about herein, including without limitation representatives, employees, or agents.

5. "Individual Plaintiffs" means Dr. George Richardson and Ms. Rosalie Weisfeld, natural persons who are plaintiffs in this lawsuit, and anyone acting or purporting to act on their behalf with respect to any matter inquired about herein, including without limitation representatives, employees, or agents.

6. "Organizational Plaintiffs" means AJC, CTD, MOVE, and LWVTX, and anyone acting or purporting to act on their behalf with respect to any matter inquired about herein, including without limitation representatives, employees, or agents.

7. "Plaintiffs" means the Individual Plaintiffs and the Organizational Plaintiffs.

8. "Person" means the plural as well as the singular and includes: natural persons, corporations, firms, associations, partnerships, joint ventures, trusts, estates, or any other form of legal entity; and governmental agencies, departments, units, or subdivisions thereof.

9. "SOS" means the Defendant Texas Secretary of State, in her official capacity, including without limitation representatives, employees, agents, or officers acting on her behalf with respect to any matter inquired about herein.

4

10. "Defendants" means SOS; Trudy Hancock, in her official capacity as Brazos County Elections Administrator; and Perla Lara, in her official capacity as City of McAllen, Texas, Secretary.

11. "Lawsuit" means the case styled, *Dr. George Richardson, et. al. v. Texas Secretary of State, et al.*, civil action no. 5:19-cv-00963 in the United States District Court for the Western District of Texas, San Antonio Division.

12. "Complaint" means your live pleading in this case—as of service of these discovery requests, the document entitled "Plaintiff's Original Complaint," filed in this Lawsuit on August 7, 2019 (Dkt. 1).

13. "Communication" means any manner or means of disclosure, transfer, or exchange of information, whether oral, written, in-person, telephonic, electronic, digital, mailed, or otherwise.

14. "Document" includes all writings of every kind, source and authorship, both originals and all non-identical copies thereof including handwritten, typewritten, printed, photocopied, photographic, or electronically recorded matter. For purposes of illustration and not limitation, the term shall include: emails, Facebook postings, social media postings, letters, journals, diaries, bank statements, charts, Excel spreadsheets, handwritten notes, affidavits, schedules, workpapers, audio recordings, video recordings, transcriptions, contracts, agreements, and memoranda of any kind.

15. "Relating to" means in any way concerning, constituting, analyzing, discussing, describing, considering, modifying, amending, confirming, endorsing, evidencing, representing, supporting, substantiating, qualifying, negating or refuting, unless qualified by word of limitation.

16. The singular includes the plural and vice versa.

17. The masculine gender includes the feminine and vice versa.

18. All other terms are to be interpreted in accordance with their normal usage in the English language.

## Attachment A

**30(B)(6) CORPORATE REPRESENTATIVE DEPOSITION TOPICS**

1.  Your mission.

2.  Your organization, including your organizational structure, employees, physical assets, parent and sibling entities, tax status, and history; the services that you provide, and the activities you perform.

3.  The activities on which you have spent funds or to which you have dedicated resources in Texas between January 1, 2017 and the present.

4.  The allegations you make in your Complaint and the factual bases therefor.

5.  The relief that you contend would remedy the claims you make in this lawsuit.

6.  The documents produced in response to

    a.  the subpoena duces tecum described in Attachment B, and;

    b.  Defendants' Requests for Admission, Interrogatories, and Requests for Production in this cause.

6

## Attachment B

To the extent not already produced by you in response to the Secretary of State's discovery requests in this cause, produce the following:

1. Documents sufficient to substantiate the factual allegations you make in your Complaint.

2. All communications between you and any person to assist them in voting by mail in Texas.

3. Documents sufficient to show all information described and/or requested in 30(b)(6) deposition topic numbers 2, 3, and 4 in Attachment A to this notice.

4. To the extent not already provided in response to items 1-3 above, all documents reviewed in preparation for your deposition.

If documents responsive to these categories have already been produced in discovery, the witness is expected to be able to identify those documents by bates numbers.

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| DR. GEORGE RICHARDSON, ROSALIE WEISFELD, AUSTIN JUSTICE COALITION, COALITION OF TEXANS WITH DISABILITIES, MOVE TEXAS CIVIC FUND, LEAGUE OF WOMEN VOTERS OF TEXAS, and AMERICAN GI FORUM OF TEXAS, INC., | § § § § § § § § | |
| *Plaintiffs* | § § | |
| v. | § § | Civil Case No. 5:19-cv-00963 |
| TEXAS SECRETARY OF STATE, TRUDY HANCOCK, in her official capacity as BRAZOS COUNTY ELECTIONS ADMINISTRATOR, and PERLA LARA in her official capacity as CITY OF MCALLEN, TEXAS SECRETARY, | § § § § § § § § | |
| *Defendants*. | § § | |

### PLAINTIFFS' ORIGINAL COMPLAINT

Plaintiffs, Dr. George Richardson, Rosalie Weisfeld, Austin Justice Coalition, Coalition of Texans with Disabilities, MOVE Texas Civic Fund, League of Women Voters of Texas, and American GI Forum of Texas, Inc., file this Original Complaint seeking declaratory and injunctive relief pursuant to 42 U.S.C. § 1983 and the United States Constitution. Plaintiff Coalition of Texans with Disabilities additionally seeks declaratory and injunctive relief pursuant to Title II of the Americans with Disabilities Act and the Rehabilitation Act of 1973.

### I.
### THE NATURE OF THE CASE

1.      The right to vote is a precious and fundamental political right that is preservative of all other rights. By definition, it includes the right of qualified voters within a state to cast their



**Exhibit**
**Larissa Rodionov**
**2**
5/20/2020   MJ

ballots and have them counted. But Texas unlawfully rejects the duly signed mail-in ballots of thousands of eligible voters every major election. Indeed, Texas counties rejected at least 1,873 mail-in ballots during the 2018 General Election and at least 1,567 mail-in ballots during the 2016 General Election solely on the basis of mismatching signatures. *See* Ex. A.

2.     Texas offers the opportunity to vote by mail to voters who are outside of their county during elections, voters with disabilities, voters 65 years-of-age or older, and voters confined in jail but otherwise eligible to vote.[1] Even though Texas' mail-in ballot process should make voting easier for voters from these underrepresented groups, the current flawed process leads to the unlawful disenfranchisement of these Texas voters. Specifically, current rules authorize untrained local election officials to arbitrarily and subjectively reject mail-in ballots if officials believe, based on their own layman analysis, that the signature on a ballot is not in fact the voter's signature. No advance notice is given to voters before their vote is rejected, and the decision to reject a mail-in ballot is final.

3.     For example, during the 2018 General Election, Brazos County rejected the mail-in ballot of Plaintiff Dr. George Richardson—a doctor whose signature has been used to prescribe countless medications—on the basis of a signature mismatch. The county gave him no notice of its decision until after the election, notwithstanding the fact that Dr. Richardson would have confirmed that it was his signature on the mail-in ballot if so asked. When Dr. Richardson confronted Brazos County officials, they told him that they had "eye-balled" his signature to determine it was not his.

---

[1] "A qualified voter is eligible for early voting by mail if, at the time the voter's early voting ballot application is submitted, the voter is confined in jail:
    (1)  serving a misdemeanor sentence for a term that ends on or after election day;
    (2)  pending trial after denial of bail;
    (3)  without bail pending an appeal of a felony conviction;  or
    (4)  pending trial or appeal on a bailable offense for which release on bail before election day is unlikely."
Tex. Elec. Code § 82.004(a)

2

4.      Similarly, during a city run-off election in 2019, the City of McAllen rejected Plaintiff Rosalie Weisfeld's mail-in ballot on the same basis. To her recollection, Ms. Weisfeld has voted in every primary, city, bond, constitutional, school district, county, runoff, water district, and general election for the last 30 years. Ms. Weisfeld would have confirmed that the signature was hers had she been asked. Yet, the City of McAllen gave her no notice of the rejection until after the election.

5.      Because Texas' mail-in ballot process fails to provide uniform standards for signature comparison, deprives voters of the ability to cure ballots questioned for an alleged signature mismatch, and fails to require meaningful pre-rejection notice to voters with ballots questioned for an alleged signature mismatch, the mail-in ballot process violates both the Equal Protection Clause and the Due Process Clause of the Fourteenth Amendment to the United States Constitution on its face and as applied to all Plaintiffs, including Dr. Richardson and Ms. Weisfeld. U.S. CONST. amend. XIV, § 1.

6.      For these same reasons, Texas' mail-in ballot process also violates Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12131, *et seq*., and the Rehabilitation Act of 1973 (RA), 29 U.S.C. § 794.3, with respect to voters who cannot sign matching or sufficiently similar signatures due to a disability. Defendants' refusal to reasonably accommodate this group of mail-in ballot voters with disabilities—either by allowing them to contest and cure a ballot rejected for signature mismatch or by not applying the signature comparison requirements to their ballots—discriminates against said voters and excludes them from participation in and unfairly denies them the benefits of the mail-in ballot process.

7.      Plaintiffs, therefore, respectfully request this court enter a declaratory judgment invalidating Texas' signature comparison procedure, as laid out in Texas Election Code §§

3

87.041(b)(2), (e), and (f), for violating the United States Constitution, the ADA, and the RA. Plaintiffs further request a permanent injunction enjoining Defendants from implementing Texas Election Code §§ 87.041(b)(2), (e), and (f) or, in the alternative, requiring that Defendants (1) provide voters meaningful notice prior to the rejection of a mail-in ballot and (2) offer voters the ability to cure a mail-in ballot questioned for an alleged signature mismatch.

## II.
## JURISDICTION AND VENUE

8.      This is a civil and constitutional rights action arising under 42 U.S.C. § 1983, the Fourteenth Amendment to the United States Constitution, Title II of the ADA, and the RA. This Court has jurisdiction over these claims under 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

9.      Venue in this Court is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district, and because Defendant Secretary of State conducts business in this district.

## III.
## PARTIES

### Individual Plaintiffs

10.     Plaintiff Dr. George Richardson is an individual voter who was improperly and unconstitutionally disenfranchised in the 2018 General Election. Dr. Richardson applied for a mail-in ballot for the 2018 General Election in Brazos County due to his eligibility as a voter over 65 years-of-age. After applying for a mail-in ballot, Dr. Richardson properly signed and timely mailed his ballot in compliance with the Texas Election Code. After the election, he received a letter from Brazos County notifying him that his ballot was rejected because of a signature mismatch. Dr. Richardson confronted county election officials who explained that the panel "eye-balls" the signatures, had determined his signature was not actually his, and that their decision was

final. Dr. Richardson is a physician who has signed hundreds of prescriptions every year for 41 years and has never had his signature questioned by a pharmacist. Had Brazos County notified Dr. Richardson during the election that county election officials questioned the signature on his ballot, Dr. Richardson would have confirmed that the signature on his ballot was, in fact, his own. Dr. Richardson wishes, intends, and plans to continue casting a mail-in ballot but, in order to avoid future disenfranchisement, will only do so when the county either stops rejecting mail-in ballots based on an alleged signature mismatch or provides voters, at the very least, a pre-rejection notice and the ability to cure mail-in ballots questioned for an alleged signature mismatch.

11.     Plaintiff Rosalie Weisfeld is an individual voter who was improperly and unconstitutionally disenfranchised in the 2019 McAllen, Texas city run-off election. Ms. Weisfeld applied for a mail-in ballot for the June 22, 2019 McAllen, Texas city run-off election because she had to be out of the county during the early voting period and on Election Day. After applying for a mail-in ballot, Ms. Weisfeld properly signed and timely mailed her ballot in compliance with the Texas Election Code. About ten days after the election, she received a letter from the City of McAllen, mailed to her out-of-town address where she was no longer staying, notifying her that her ballot was rejected because of an alleged signature mismatch. Had the City of McAllen notified Ms. Weisfeld during the election that city election officials questioned the signature on her ballot envelope, Ms. Weisfeld would have confirmed that the signatures on the application and envelope were both, in fact, her own. Ms. Weisfeld votes regularly. To her recollection, Ms. Weisfeld has voted in every primary, city, bond, constitutional, school district, county, runoff, water district, and general election for at least the last 30 years, and she plans to vote in every single upcoming election for which she is eligible to vote. Ms. Weisfeld regularly has professional and family obligations that require her to be out of her county of residence, requiring her to vote by mail on

many occasions in the past, and she intends to vote by mail in the future when such obligations prevent her from voting in person.

<div align="center">Austin Justice Coalition</div>

12.    Plaintiff Austin Justice Coalition (AJC) sues Defendants on its own behalf. AJC is a non-partisan, non-profit organization dedicated to "providing the tools for people of color and people who are marginalized to improve their lives by being the driving force behind their own liberation." As part of this mission, AJC operates #ProjectOrange, a coordinated campaign to enter the Travis County Jail, register eligible voters, and provide support to them in requesting and submitting mail-in ballots. AJC's #ProjectOrange mission is to ensure that eligible voters—those who have not been finally convicted of a felony or, if they have been convicted of a felony in the past, are "off paper"—are able to vote, despite their present confinement in county jails.

13.    Among other services, AJC, through its staff and volunteers, helps inmate voters fill out the mail-in ballot application section by section and instructs each inmate voter to write out their signature neatly. AJC works with the Travis County Jail and the Travis County Elections Department to ensure applications are received on time by the Elections Department, mail-in ballots are received by the inmate voters, and completed mail-in ballots are received by the Elections Department on time. While inmate voters fill their mail-in ballots, AJC, through its staff and volunteers, instructs each inmate voter to neatly write out the signature across the flap of the carrier envelope.

14.    AJC's mission is significantly frustrated by the current state laws and policies that result in the improper rejection of incarcerated voters' mail-in ballots. Because of Defendants' unlawful signature comparison procedure, each signed ballot improperly and arbitrarily rejected for an alleged signature mismatch undermines the efficacy of AJC's #ProjectOrange campaign.

<div align="center">6</div>

Moreover, AJC must expend additional resources, such as staff and volunteer time and resources instructing inmate voters to write out signatures neatly, when providing support to inmate voters with mail-in ballot applications and mail-in ballots due to the risk of arbitrary and unconstitutional rejection based on an alleged signature mismatch. The resources diverted for these purposes are transferred away from AJC's other voting-related activities.

<p align="center">Coalition of Texans with Disabilities</p>

15.     Plaintiff Coalition of Texans with Disabilities (CTD) sues Defendants on its own behalf and on behalf of its members who use the mail-in ballot process based on their eligibility due to disability. These members are qualified individuals with a disability for purposes of the ADA and the RA.

16.     The interests at stake in this lawsuit are germane to CTD's purpose. CTD is a non-partisan, non-profit membership organization that works to ensure that people with disabilities may "live, work, learn, play, and participate fully in the community of their choice." CTD organizes events on subjects such as accessible voting, civil rights, and new state level initiatives with the potential to affect the disability community.

17.     CTD expends resources by informing voters statewide about their ability to cast a mail-in ballot, explains the rules and deadlines related to mail-in ballots, and encourages voters who are eligible to utilize mail-in ballots if they cannot vote in-person.

18.     CTD's mission is significantly frustrated by the current state laws and policies that result in the improper rejection of disabled voters' mail-in ballots. Many of the people CTD serves are especially likely to have variations in their signatures from one writing to the next, due to a disability. Because of Defendants' unlawful signature comparison procedure, each signed ballot improperly and arbitrarily rejected for an alleged signature mismatch undermines the efficacy of

<p align="center">7</p>

CTD's mail-in ballot work. Moreover, CTD must expend additional resources, such as staff and volunteer time and resources instructing voters to write out signatures neatly, when educating voters on completing mail-in ballot applications and mail-in ballots due to the risk of arbitrary and unconstitutional rejection based on an alleged signature mismatch. The resources diverted for these purposes are transferred away from CTD's other voting-related activities.

19.     Neither the claims asserted nor the relief requested by CTD require the participation of its individual members who regularly vote by mail. Plaintiffs seek only equitable relief which does not require any individualized inquiry into damages sustained by any member.

<u>MOVE Texas Civic Fund</u>

20.     Plaintiff MOVE Texas Civic Fund (MOVE) sues Defendants on its own behalf. MOVE's principal place of business is in San Antonio, Texas. MOVE is a non-partisan, non-profit, and grassroots organization "building power in underrepresented youth communities through civic education, leadership development, and issue advocacy." "MOVE" stands for "Mobilize. Organize. Vote. Empower." Since its inception, MOVE has worked to expand voter registration and equal access to voting. MOVE actively works to register eligible young people to vote and ensure that they cast a ballot that actually counts. In doing so, MOVE operates on 32 college campuses around the State of Texas, with 14 of those in the San Antonio area, and registers thousands of students to vote every year.

21.     Because college students are often absent from their counties of residence while attending school, MOVE provides support to students in applying for mail-in ballots when appropriate and follows up with them to ensure they have mailed their ballots in a timely manner. MOVE works with three distinct groups of students in relation to mail-in ballots: (1) eligible students who attend schools outside of Texas and away from their county of residence; (2) eligible

students who attend a Texas school outside of their county of residence; and (3) eligible students who attend a Texas school and consider their address at or nearby school as their residence, but are nevertheless away from school during an election for summer work, holidays, or another conflict.

22.     Depending on the election, MOVE expends resources to educate students about mail-in ballots, encourage eligible student voters to use mail-in ballots, and provide support to eligible student voters utilizing such ballots.

23.     MOVE's mission is significantly frustrated by the current state laws and policies that result in the improper rejection of youth voters' mail-in ballots. Because of Defendants' unlawful signature comparison procedure, each signed ballot improperly and arbitrarily rejected for an alleged signature mismatch undermines the efficacy of MOVE's mail-in ballot work. Moreover, MOVE must expend additional resources when providing support to voters with mail-in ballot applications and mail-in ballots due to the risk of arbitrary and unconstitutional rejection based on an alleged signature mismatch. MOVE sends messages through social media posts and paid texts to make sure that individual voters are following through with their mail-in ballot plans, and specifically warns voters, since the signature comparison procedure is strict and arbitrary, to sign mail-in ballots as clearly and legibly as possible to avoid improper rejection. The resources diverted for these purposes are transferred away from MOVE's in-person voting and voter registration activities.

<u>League of Women Voters of Texas</u>

24.     Plaintiff League of Women Voters of Texas (LWV) sues Defendants on its own behalf and on behalf of its members who use the mail-in ballot process. The interests at stake in this lawsuit are germane to LWV's purpose. LWV is a non-partisan, non-profit member

organization dedicated to empowering voters and defending democracy. LWV "strives for a democracy where every person has the desire, the right, the knowledge[,] and the confidence to participate in the democratic process." LWV actively works to register eligible people to vote and ensure that they actually cast a ballot that counts. In doing so, LWV operates across Texas, registering thousands every year.

25.     LWV expends resources to educate Texans about mail-in ballots, encourage eligible voters to use mail-in ballots, and provide support to eligible voters utilizing such ballots. LWV also prepares training materials for its members and local-area League of Women Voters organizations to use to educate and provide support to voters with the mail-in ballot process.

26.     LWV's mission is significantly frustrated by the current state laws and policies that result in the improper rejection of voters' mail-in ballots. Because of Defendants' unlawful signature comparison procedure, each signed ballot improperly and arbitrarily rejected for an alleged signature mismatch undermines the efficacy of LWV's work. Moreover, LWV must expend additional resources when providing support to voters with mail-in ballot applications and mail-in ballots due to the risk of arbitrary and unconstitutional rejection based on an alleged signature mismatch. Specifically, LWV must expend additional staff and volunteer time and resources instructing voters to write out signatures neatly through LWV's website, and LWV must expend additional staff and volunteer time and resources instructing voters to write out signatures neatly and have the signatures match each other as much as possible in PowerPoint presentations and scripts prepared for its members and local-area League of Women Voters organizations to use when educating and providing support to mail-in ballot voters. The resources diverted for these purposes are transferred away from LWV's other voting-related activities.

27.     Neither the claims asserted nor the relief requested by LWV require the participation of its individual members who regularly vote by mail. Plaintiffs seek only equitable relief which does not require any individualized inquiry into damages sustained by any member.

### American GI Forum of Texas, Inc.

28.     Plaintiff American GI Forum of Texas, Inc. (AGIF) sues Defendants on its own behalf and on behalf of its members who use the mail-in ballot process. A significant portion of AGIF's members are eligible to vote by mail because they are: (1) classified as Disabled Veterans by the Department of Veterans Affairs; (2) military retirees 65 years-of-age or older; and/or (3) active duty service members and their families who are often stationed away from their county of residence in Texas.

29.     The interests at stake in this lawsuit are germane to AGIF's purpose. AGIF is a non-partisan, non-profit, Family Veterans, and member organization dedicated to addressing problems of discrimination and inequities endured by veterans and the communities in which they operate. AGIF requires at least 75% of its members be veterans. AGIF works to "enforce, defend, and protect the civil and human rights, [including voting rights,] of Hispanics, women, and other minorities, and to ensure equal opportunities as mandated by federal and state laws." AGIF and its constituent chapters across the state expend resources to register eligible Texas veterans, servicemembers, and their families to vote and to ensure that they actually cast a ballot that counts.

30.     The improper rejection of mail-in ballots frustrates AGIF and its chapters' mission of expanding voter registration and increasing voter turnout among AGIF's membership and the communities it serves, which is essential to advancing and leveraging its influence to advance policy change that benefits veterans, their families, and their communities. Texas' signature comparison procedure decreases overall confidence in the mail-in ballot process, and elections,

generally, which directly undermines the efforts AGIF and its chapters take to encourage eligible voters to use mail-in ballots and support those voters in making sure their mail-in ballots are counted.

31.     Neither the claims asserted nor the relief requested by AGIF require the participation of its individual members who regularly vote by mail. Plaintiffs seek only equitable relief which does not require any individualized inquiry into damages sustained by any member.

<u>Defendants</u>

32.     Defendant is the Texas Secretary of State (SOS). The SOS is the Chief Election Officer of the State of Texas. Tex. Elec. Code § 31.001(a). In this role, the SOS is responsible for enforcing elections statutes and routinely issues guidance to the county registrars of all 254 Texas counties on various elections procedures. SOS is a public entity under Title II of the ADA and the RA.

33.     Defendant Trudy Hancock is the Brazos County Elections Administrator (Brazos EA). She is sued in her official capacity. She is sued for the manner in which she implements the policies, customs, or practices at issue in this action. The Brazos EA is a public entity under Title II of the ADA and the RA.

34.     Defendant Perla Lara is the City of McAllen, Texas Secretary (McAllen City Secretary). She is the Chief Elections Official for the City of McAllen. The McAllen City Secretary is responsible for the administration of elections conducted within the City of McAllen, including joint elections with Hidalgo County as well as elections independent of the Hidalgo County. The McAllen City Secretary is sued for the manner in which she implements the policies, customs, or practices at issue in this action. The McAllen City Secretary is a public entity under Title II of the ADA and the RA.

## IV.
## FACTS

### Current Mail-in Ballot Procedures

35.     To vote a mail-in ballot, a voter must first send their county a mail-in ballot application via mail, fax (if available), or e-mail. *Application for a Ballot by Mail*, Texas Secretary of State, https://www.sos.state.tx.us/elections/voter/reqabbm.shtml (last visited June 25, 2019). A voter must submit the mail-in ballot application for a specific election 11 days before Election Day. *Id.* If a voter is voting by mail because the voter is disabled or is 65 years-of-age or older, the voter may use a single application to request mail-in ballots for all county elections in a calendar year. Tex. Elec. Code § 86.0015. While the voter can submit this annual application anytime during the calendar year, it still must be received at least 11 days before the first election in which the voter seeks to request a mail-in ballot. *Id.* § 86.0015(b-1).

36.     In order to successfully vote by mail, the voter must mark the ballot, place it in the official ballot envelope provided by the county, seal the official ballot envelope, place the official ballot envelope in the carrier envelope provided by the county, seal the carrier envelope, and sign the certificate on the carrier envelope. *Id.* § 86.005(a)-(c). Specifically, the carrier envelope certificate requires the voter to "certify that the enclosed ballot expresses [the voter's] wishes independent of any dictation or undue persuasion by any person," and includes a line for the voter's signature across the flap of the envelope. *Id.* § 86.013(c).

37.     Then, the carrier envelope must be returned to the county in a timely manner. *Id.* §§ 86.006(a), 86.013(c). Typically, counties must receive mail-in ballots that are not postmarked or do not have a delivery receipt by 7 p.m. on Election Day. Tex. Elec. Code § 86.007. At the latest, counties must receive mail-in ballots from voters inside the United States with a postmark

13

or delivery receipt dated on or before 7 p.m. on Election Day by 5 p.m. the next business day after Election Day. *Id.* § 86.007(a)(2).[2]

38.     The decision as to whether to reject a mail-in ballot is generally conducted by the Early Voting Ballot Board (EVBB), a statutorily required board established in each county that includes representatives from county parties. *See generally* Tex. Elec. Code § 87.001. The Early Voting Clerk, however, may determine that a Signature Verification Committee (SVC) should be established, in which case the SVC will perform the signature reviews rather than the EVBB. *See generally id.* § 87.027. SVCs are usually established in larger counties, but also appear in many smaller ones. An SVC is also mandatory if the Early Voting Clerk receives a timely petition of at least 15 registered voters requesting such a committee. *Id.* § 87.027(a-1).

39.     An SVC is composed of at least five members and, "[i]n an election in which party alignment is indicated on the ballot," must include at least two members designated by each county party on the ballot in equal numbers. *Id.* § 87.027(d). The chair of the SVC is appointed from a list provided by the party whose nominee for governor received the most votes in the county in the most recent gubernatorial general election. *Id.* The only qualification required to serve on an SVC is that the person be an eligible voter in the district or area for which the election is being held. Tex. Elec. Code § 87.027(e). Pursuant to these rules, SVC's are by law partisan committees of laypersons without any specific expertise or training.

40.     The only statutory guidance for an SVC to follow in performing reviews of mail-in ballots is stated in Tex. Elec. Code § 87.027(i), which provides:

---

[2] Counties must receive from non-military overseas voters mail-in ballots with a postmark or delivery receipt dated on or before 7 p.m. on Election Day no later than the 5th day after Election Day or, if the 5th day after Election Day falls on a Saturday, Sunday, or legal state or national holiday, then the deadline is extended to the next regular business day. *Id.* §§ 86.007(d), (d-1). Counties must receive from military overseas voters mail-in ballots no later than the 6th day after Election Day or, if the 6th day after Election Day falls on a Saturday, Sunday, or legal state or national holiday, then the deadline is extended to the next regular business day. *Carrier Envelope for FPCA Voter*, Texas Secretary of State, https://www.sos.state.tx.us/elections/forms/pol-sub/5-35.pdf (last visited June 25, 2019).

The signature verification committee shall compare the signature on each carrier envelope certificate, except those signed for a voter by a witness, with the signature on the voter's ballot application to determine whether the signatures are those of the voter. The committee may also compare the signatures with any two or more signatures of the voter made within the preceding six years and on file with the county clerk or voter registrar to determine whether the signatures are those of the voter. Except [where more than one SVC is appointed in the same county], a determination under this subsection that the signatures are not those of the voter must be made by a majority vote of the committee's membership.

The same procedure is to be followed by the EVBB if an SVC is not appointed in a particular county. Tex. Elec. Code § 87.027(j).

41. The Election Code does not establish any standards or guidance that must be used for actually determining if a signature is that of the voter, nor has SOS or any other entity used rule-making authority to create such standards. Accordingly, each county (and even each committee if multiple SVC panels are created) necessarily develops its own idiosyncratic, arbitrary, and ad hoc procedure to determine that a ballot should be rejected. *See* Tex. Elec. Code § 87.041(b)(2) (requiring rejection). These standards will necessarily vary from county to county, panel to panel, and even from meeting to meeting or ballot to ballot within the same committee panel.

42. The above signature verification procedure is not and cannot be performed anonymously. In other words, members of the EVBB or SVC necessarily know which voter's ballot they are considering prior to determining if it should be accepted or rejected.

43. All decisions of the committee are final; if a voter's ballot is rejected, that voter has no recourse or process to challenge the panel's determination that the voter's ballot was signed by someone other than the voter.

44. Additionally, the board is not required to send notice of rejection to the voter until 10 days after an election, regardless of how early it makes the decision to reject the ballot. *Id.*

15

§ 87.0431(a). These voters are not provided any kind of notice of their ballot's rejection, nor sufficient time to seek judicial relief, such as that sought in this Complaint, prior to the final votes in the election-at-issue being counted.

45.      Mail-in ballot procedures exclusively affect groups of people who are explicitly eligible by statute to apply for a ballot by mail, including: (1) disabled persons, (2) persons 65 years-of-age or older, (3) persons detained in state jails but otherwise eligible to vote, and (4) persons who will be out of their county of residence during the entire early voting period and on Election Day (a group with significant representation from active-duty military members and college students attending school away from their county of residence). *See* Tex. Elec. Code §§ 82.001–82.004.

46.      The groups that are eligible to vote by mail are also the same groups, in many cases, that are most likely to have signature variations that could cause an improper rejection—especially the elderly, disabled, and persons who speak English as a second language.

47.      A voter whose ballot is rejected is not given any notice of their rejection prior to the rejection, any opportunity to cure their ballot, or any ability to contest the decision of the EVBB or SVC since counties have until 10 days after Election Day to notify the voter of a rejected mail-in ballot. Tex. Elec. Code § 87.0431(a).

<u>Reasons Signatures Often Do Not Match</u>

48.      A person's signature may vary for a variety of reasons, both intentional and unintentional. Unintentional factors that can affect a person's handwriting include medical and/or physical factors such as growing old, illness, injury, symptoms from taking certain medicine, change in eyesight, and consuming alcohol and/or drugs; mechanical factors such as pen type, ink, signing surface, signing position, and paper quality; and psychological factors such as distress,

anger, fear, depression, happiness, and nervousness. *Democratic Executive Committee of Florida v. Lee*, 915 F.3d 1312, 1320 (11th Cir. 2019); *Saucedo v. Gardner*, 335 F. Supp. 3d 202, 212 (D.N.H. 2018). Moreover, a person's handwriting naturally changes over time. Variances between signatures are more prevalent in people who are elderly, disabled, under extreme stress, or who speak English as a second language. *Saucedo*, 335 F. Supp. 3d at 212.

49.     For the most part, signature variations are of little consequence in a person's life. But in the context of voting by mail, these variations become profoundly consequential under Texas' signature comparison procedure, as they may result in the improper disenfranchisement of eligible voters. Elderly and disabled voters, two groups of voters expressly permitted to use the mail-in ballot process, are especially likely to have signature variations.

<div align="center">Texas' Alleged Signature-Matching Process Is Severely Flawed</div>

50.     As a procedure to verify identity, signature comparison is extremely unreliable. Members of EVBBs and SVCs are not handwriting experts, nor do they receive any training to assist in determining if two signatures were made by the same person. On its face, the signature comparison procedure for mail-in ballots gives no guidance on the questions that inevitably arise during signature comparison evaluations, including what stylistic variations suggest that two signatures were made by different individuals, and what threshold number of variations is required to conclude that the signature on the mail-in ballot carrier envelope, the mail-in ballot application, or previous documents is executed by a person other than the voter.

51.     Moreover, EVBBs and SVCs are required by the Texas Election Code to consider signatures in a vacuum, without regard to any other pertinent information that may be available.

<div align="center">17</div>

**V.**
**CAUSES OF ACTION**
**COUNT ONE**
**Violation of the Due Process Clause of the Fourteenth Amendment for Failure to Provide Pre-Rejection Notice and Opportunity to Cure**

52.     Plaintiffs re-allege and incorporate by reference the allegations contained in the preceding paragraphs.

53.     Section 1 of the Fourteenth Amendment to the United States Constitution prohibits states from depriving "any person of . . . liberty . . . without due process of law." U.S. CONST. amend. XIV, § 1.

54.     Defendants may not deprive mail-in ballot voters of procedural due process because each voter's fundamental right to vote is implicated when using a mail-in ballot.

55.     Counties throughout Texas have rejected and continue to reject thousands of mail-in ballots solely based on an error-prone and flawed signature comparison exercise conducted by election officials who are not trained in signature verification, resulting in the erroneous deprivation of the right to vote.

56.     Defendants have not established a procedure for providing voters whose mail-in ballots are rejected because of an alleged signature mismatch pre-rejection notice, an opportunity to be heard, or the ability to cure.

57.     By mandating the unilateral and non-reviewable rejection of mail-in ballots due to an alleged signature mismatch without according pre-rejection notice, an opportunity to be heard, and an ability to cure, Texas' scheme as outlined in Texas Election Code §§ 87.041(b)(2) and (d), both on its face and as it is applied, violates the Due Process Clause of the Fourteenth Amendment. Defendants deprived and continue to deprive Texas voters, including Mr. Richardson and Ms. Rosalie, voters provided support by organizational Plaintiffs, and voters who are members of

18

associational Plaintiffs, of adequate procedural due process to protect their fundamental right to vote.

58.     Providing a voter whose mail-in ballot has been questioned for an alleged signature mismatch a pre-rejection notice, an opportunity to be heard, and the ability to cure their ballot would avoid disenfranchisement and, thereby, protect the voter from the outright denial of their fundamental right to vote.

59.     Notice, an opportunity to be heard, and the ability to cure a ballot are already provided to voters in comparable circumstances. In-person voters whose ballots cannot be counted on Election Day due to lack of identity verification can provide photo identification confirming their identity within six days of Election Day to have their ballot counted. Tex. Elec. Code § 65.0541. It would not be burdensome to apply similar procedures to mail-in ballot voters with allegedly mismatched signatures.

60.     The fundamental right to vote is at stake, and the risk that even one person will be denied the right to cast a mail-in ballot outweighs any justification Defendants may put forward for depriving all mail-in ballot voters the same notice, opportunity to be heard, and ability to cure that is already provided to voters in comparable circumstances.

61.     This challenge is both facial and as-applied to the Plaintiffs in this case.

## COUNT TWO
### Violations of the Equal Protection Clause of the Fourteenth Amendment Due to Severe Burden on Voters Not Justified by Legitimate Government Interest

62.     Plaintiffs re-allege and incorporate by reference the allegations contained in the preceding paragraphs.

63.     The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution prohibits states from "deny[ing] to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1.

64.     Under the First Amendment and Equal Protection Clause of the Fourteenth Amendment, a state cannot utilize election practices that unduly burden the fundamental right to vote. *See Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983); *Burdick v. Takushi*, 504 U.S. 428, 434 (1992).

65.     A court considering a challenge to a state election law must carefully balance the character and magnitude of the injury to the First and Fourteenth Amendment rights that Plaintiffs seek to vindicate against the justifications put forward by Defendants for the burdens imposed by the rule. *See Anderson*, 460 U.S. 780, 789 (1983); *Burdick*, 504 U.S. 428, 434 (1992). A challenged regulation that imposes a severe burden on the right to vote must be narrowly tailored to advance a compelling state interest. *See Burdick*, 504 U.S. at 434.

66.     Defendants cannot burden the exercise of the right to vote by applying election law, policies, and practices in an arbitrary or inconsistent manner.

67.     By implementing a signature matching procedure, Defendants treat mail-in ballot voters differently than in-person voters. Tex. Elec. Code § 87.041(b)(2), (d).

68.     By implementing a signature matching procedure, Defendants treat differently than other mail-in ballot voters the members of CTD who are mail-in ballot voters and, due to their disability, cannot make their signatures match. Tex. Elec. Code § 87.041(b)(2), (d).

69.     Texas Election Code Sections 87.041(b)(2) and (d), by mandating the unilateral, arbitrary, and ad hoc rejection of mail-in ballots due to an alleged signature mismatch, disenfranchise mail-in ballot voters, a burden that is undoubtedly severe, especially when such

voters are given no pre-rejection notice or opportunity to resolve the mismatch or otherwise confirm their identity.

70.     Rejecting thousands of mail-in ballots based solely on an error-prone signature comparison procedure conducted by election officials who are not trained in signature verification and failing to provide mail-in ballot voters any opportunity to contest or cure signature mismatch determinations is neither reasonable nor narrowly tailored to serve any compelling and legitimate state interest, particularly since Defendants already otherwise verify a mail-in ballot voter's eligibility to cast a ballot and especially because Defendants provide voters in comparable circumstances an opportunity to be heard and ability to cure ballots.

<div align="center">

**COUNT THREE**
**Violation of Equal Protection Clause of the Fourteenth Amendment Due to Failure to Provide any Uniform Guidelines or Principles for Counties to Compare Signatures**

</div>

71.     An electoral procedure becomes problematic "in the absence of specific standards to ensure its equal application." *Bush v. Gore*, 531 U.S. 98, 106 (2000). Such procedures are immediately suspect if "the standards for accepting or rejecting contested ballots might vary not only from county to county but [even] within a single county." *Id*. State and local governments have an "obligation to avoid arbitrary and disparate treatment of the members of [their] electorate." *Id.* at 105. Failure to establish procedures to ensure equal application of such rules renders them unconstitutional under the Fourteenth Amendment's Equal Protection Clause. *Id*. at 111.

72.     Texas has not promulgated any procedures to assist individual counties or the EVBB or SVCs within those counties in evaluating signatures on mail-in ballots, thereby creating an arbitrary system for evaluation in which committees of laypersons "eye-ball" signatures and evaluate them based on their own ad hoc standards.

<div align="center">21</div>

73. The procedures for evaluating signatures for mail-in ballots in Texas therefore vary from county to county, from SVC to SVC in counties with multiple committees, and even from meeting to meeting and ballot to ballot.

74. Accordingly, Texas' procedures for evaluating mail-in ballot signature matches violate the Equal Protection Clause for their failure to provide specific standards to ensure their equal application.

## COUNT FOUR
**Violation of Title II of the Americans with Disabilities Act and the Rehabilitation Act of 1973**

75. In addition to the previous claims, Plaintiff CTD brings the following specific claims against Defendants under Title II of the ADA and the RA. The rights and remedies under the ADA and the RA are almost entirely duplicative.

76. "No qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132; 28 C.F.R. § 35.149.

77. "No [person] shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subject to discrimination under any program or activity receiving federal funding assistance." 29 U.S.C. § 794(a); 45 C.F.R. § 1232.4(a).

78. Defendant SOS, as a state agency, and Defendants Brazos EA and McAllen City Secretary, as other political subdivision agencies, are public entities pursuant to 42 U.S.C. § 12131(1)(a) and (b), 45 C.F.R. § 1232.3(d), and 29 U.S.C. § 794. The administration of elections and voting, including mail-in ballot voting and the counting of votes, is a service, program, or activity provided by Defendants SOS, Brazos EA, and McAllen City Secretary.

22

79.     Defendants are recipients of federal funds. 29 U.S.C. § 794.

80.     For purposes of the ADA and the RA, CTD has members who are qualified individuals with physical and/or mental impairments that substantially limit one or more of their major life activities, including but not limited to performing manual tasks such as seeing, lifting, bending, concentrating, communicating, and/or working. 42 U.S.C. § 12102(1), (2); 45 C.F.R. § 1232.3(h).

81.     CTD has members who are disabled and meet the essential eligibility requirements for the receipt of mail-in ballot services and to participate in the mail-in ballot process provided by Defendant SOS through existing statutes, regulations, and guidance and by the Defendants Brazos EA and McAllen City Secretary through their administration of the mail-in ballot process. Thus, CTD has members who are qualified individuals with a disability entitled to the protections of the ADA and the RA in accessing Texas' service, program, or activity of mail-in ballots.

82.     Members of CTD who use the mail-in ballot process and, due to their disability, cannot make their signatures match, risk disenfranchisement. By reason of such disability, the members at issue have suffered and/or risk future exclusion from participation in and denial of the benefits of the services, programs, or activities of Defendants, and are subjected to discrimination by Defendants. By failing to meet their obligation to provide voters who are disabled, cannot vote in person, and, due to their disability, cannot sign matching signatures an opportunity to vote that is equal and equally effective as that opportunity provided to others, Defendants are in violation of the ADA and the RA.

83.     The lack of reasonable accommodations—such as creating standards for comparing signatures on mail-in ballots and providing the opportunity to contest and cure a challenged mail-in ballot, or barring counties from rejecting mail-in ballots for signature mismatch or any mail-in

23

ballots submitted by persons with disabilities for signature mismatch—means that the CTD members at issue are excluded from participation in and denied the benefits of the services, programs, or activities of Defendants, and subjected to discrimination by Defendants. Requiring Defendants to provide these reasonable accommodations would not constitute an undue financial or administrative burden.

## PRAYER FOR RELIEF

WHEREFORE, considering the law and facts alleged herein, Plaintiffs pray the Court grant the following relief:

1. That the Court enter declaratory judgment that the State of Texas' statutory scheme requiring the rejection of mail-in ballots with alleged signature mismatches, specifically set out in Texas Election Code §§ 87.041(b)(2), (e), and (f), is unconstitutional and violates the ADA and the RA;

2. That the Court permanently enjoin the State of Texas, the Texas Secretary of State, the Brazos County Elections Administrator, the City of McAllen, Texas Secretary, the 254 county agencies administering elections, and all other political subdivisions administering elections from rejecting any mail-in ballot for signature mismatch reasons, or, in the alternative, require the State of Texas, the Texas Secretary of State, the Brazos County Elections Administrator, the City of McAllen, Texas Secretary, the 254 county agencies administering elections, and all other political subdivisions administering elections to (a) provide voters meaningful notice prior to the rejection of a mail-in ballot based on an alleged signature mismatch and (b) offer voters the ability to cure a mail-in ballot questioned for an alleged signature mismatch.

24

3.  That Plaintiffs be awarded attorneys' fees under 42 U.S.C. § 1988 and 29 U.S.C. § 794a;

4.  That all costs of this action be taxed against Defendants; and

5.  That the Court award any additional or alternative relief as may be deemed appropriate under the circumstances.

Respectfully submitted this 7th day of August, 2019.


By: ___*Hani Mirza*_____

**TEXAS CIVIL RIGHTS PROJECT**

Mimi M.D. Marziani
Texas Bar No. 24091906
mimi@texascivilrightsproject.org
Rebecca Harrison Stevens
Texas Bar No. 24065381
beth@texascivilrightsproject.org
Hani Mirza
Texas Bar No. 24083512
hani@texascivilrightsproject.org
Ryan V. Cox
Texas Bar No. 24074087
ryan@texascivilrightsproject.org
Zachary D. Dolling
Texas Bar No. 24105809
zachary@texascivilrightsproject.org

1405 Montopolis Drive
Austin, Texas 78741
512-474-5073 (Telephone)
512-474-0726 (Facsimile)

**WILLKIE FARR & GALLAGHER LLP**

Richard Mancino (NY Bar No. 1852797)
(*pro hac vice* forthcoming)
P. Maxwell Griffith (NY Bar No. 5323209)
(*pro hac vice* forthcoming)

787 Seventh Avenue
New York, New York 10019
Telephone:  (212) 728-8000
Facsimile:  (212) 728-8111
Email: rmancino@willkie.com
   mgriffith@willkie.com

-AND-

Jennifer J. Hardy (TX Bar No. 24096068)
(*pro hac vice* forthcoming)
Denis A. Fallon (TX Bar No. 24059731)
(*pro hac vice* forthcoming)
Garrett Johnston (TX Bar No. 24087812)
(*pro hac vice* forthcoming)
Audra White (TX Bar No. 24098608)
(*pro hac vice* forthcoming)

600 Travis Street, Suite 2100
Houston, Texas 77002
Telephone: (713) 510-1700
Facsimile: (713) 510-1799
Email: jhardy2@willkie.com
   afallon@willkie.com
   gjohnston@willkie.com
   awhite@willkie.com

***COUNSEL FOR PLAINTIFFS***

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| See Attached | See Attached |

**(b)** County of Residence of First Listed Plaintiff **Brazos**
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

See Attached

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1 U S Government
　　Plaintiff

☒ 3 Federal Question
　　*(U.S. Government Not a Party)*

☐ 2 U S Government
　　Defendant

☐ 4 Diversity
　　*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | ☐ 362 Personal Injury - Medical Malpractice | | | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 870 Taxes (U S Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☒ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from Another District *(specify)*
☐ 6 Multidistrict Litigation - Transfer
☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Fourteenth Amendment to U.S. Constitution, Title II of ADA, and RA of 1973
Brief description of cause:
Violation of voting rights

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ _____

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____

DOCKET NUMBER _____

| DATE | SIGNATURE OF ATTORNEY OF RECORD |
|---|---|
| 08/07/2019 | /s/ Hani Mirza |

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG JUDGE _____

## I. (a) Plaintiffs

Richardson, George; Weisfeld, Rosalie; Austin Justice Coalition; Coalition of Texans with Disabilities; MOVE Texas Civic Fund; League of Women Voters of Texas; American GI Forum of Texas, Inc

## I. (c) Plaintiffs' Counsel

Mimi M.D. Marziani
Texas Bar No. 24091906
Rebecca Harrison Stevens
Texas Bar No. 24065381
Hani Mirza
Texas Bar No. 24083512
Ryan V. Cox
Texas Bar No. 24074087
Zachary D. Dolling
Texas Bar No. 24105809
Texas Civil Rights Project
1405 Montopolis Drive
Austin, Texas 78741
512-474-5073 (Telephone)
512-474-0726 (Facsimile)
mimi@texascivilrightsproject.org
beth@texascivilrightsproject.org
hani@texascivilrightsproject.org
ryan@texascivilrightsproject.org
zachary@texascivilrightsproject.org

Richard Mancino (NY Bar No. 1852797)**
P. Maxwell Griffith (NY Bar No. 5323209)**
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, New York 10019
Telephone:  (212) 728-8000
Facsimile:  (212) 728-8111
rmancino@willkie.com
mgriffith@willkie.com

-AND-

Jennifer J. Hardy (TX Bar No. 24096068)**
Denis A. Fallon (TX Bar No. 24059731)**
Garrett Johnston (TX Bar No. 24087812)**
Audra White (TX Bar No. 24098608)**
Willkie Farr & Gallagher LLP
600 Travis Street, Suite 2100

Houston, Texas 77002
Telephone: (713) 510-1700
Facsimile: (713) 510-1799
jhardy2@willkie.com
afallon@willkie.com
gjohnston@willkie.com
awhite@willkie.com

ATTORNEYS FOR PLAINTIFFS
** Pro hac vice application forthcoming

**I. (a) Defendants**

CURRENTLY VACANT, Texas Secretary of State;

TRUDY HANCOCK, Brazos County Elections Administrator,
in her official capacity;

PERLA LARA, City Secretary for City of McAllen,
in her official capacity.

Document Filed Under Seal



Exhibit
Larissa Rodionov

4

5/20/2020   MJ

AJC-00000017



# THE AUSTIN JUSTICE COALITION

is a Racial Justice Group that educates and builds community power for people of color who live in Austin, Texas that need support, community, and liberation during a time of systemic injustice in America.

AJC-00000018





## OUR VISION AND MISSION

The Austin Justice Coalition (AJC) serves people who are historically and systematically impacted by gentrification, segregation, over policing, a lack of educational and employment opportunities, and other institutional forms of racism in Austin.

AJC's mission is to improve the quality of life for people of color by helping them be the driving force behind their own liberation.

AJC strives to narrow the scope of the criminal justice system and to usher in transformative justice that no longer relies on criminalization and punitive excess, but instead has human dignity as its core organizing principle and defers to community-based initiatives to improve public safety.

AJC-00000019





## OUR HISTORY

Since 2015, AJC has served as a catalyst for positive change towards economic and racial equity for Austin's people of color by developing, organizing, and providing robust programs and events.

AJC's big four areas of advocacy are education, policing, civic engagement, and community building.

AJC's strategy continues to create direct and indirect impact in communities of color by influencing changes in local government and advocating for policy reform. This strategy builds on AJC's experience and knowledge from its work thus far.

AJC-00000020



# AJC IN THE PRESS...

## Patch.

Community Corner

### Austin Justice Coalition 'Black Boy Joy' Showcase This Saturday

April event to feature local talent from across Centr... narrative of boys and men of color, organizers said.

By Tony Cantu, Patch Staff
Mar 8, 2019 11:28 pm CT | Updated Apr 27, 2019 9:53 pm CT

LOCAL

### Austin Justice Coalition speaks out 'retaliation' for those who come forward during investigation into racism at APD



▶ RADIO                                Tuesday, February 18, 2020 by Austin Monitor

### Austin Monitor Radio: Austin Justice Coalition

Chas Moore, the founder and executive director of the Austin Justice Coalition, joins Austin Monitor reporter Jessi Devenyns and editor Elizabeth Pagano this week. Tune in below to listen to a conversation that spans AJC's focus of 2020, from the Austin Police Department to land use, and how the coalition is working to address continued inequity in our city.

▶ Austin Monitor
Austin Monitor Radio: Austin Justic...

# austin360
by Austin American-Statesman

Entertainment & Life
## Austin Justice Coalition's ATX Black Food Week starts Monday



Austin Justice Coalition, Huston-Tillotson University collect...

### Austin Justice Coalition, Huston-Tillotson University partner to survey neighborhoods vulnerable to gentrification

University of Texas Uproot Project released its findings in 2018. A year later, AJC and Huston-Tillotson University are asking residents about their neighborhoods.



KUT 90.5    Austin's NPR Station

News ▾   Features ▾   Life & Arts ▾   Podcasts   Events   Support ▾   About ▾

## Activist Urges Austin To Look At Land Development Code Through Lens Of Equity

By JENNIFER STAYTON | KUT • DEC 18, 2019

Share   Tweet   Email





## POLICY

Austin Justice Coalition has been involved in policy change in Austin since 2016. Most significantly, in working to improve policing policies that impact officer training, oversight, and accountability—areas which directly affect Black and Brown communities.

AJC's proven capabilities in fostering transformative justice through a strong lens of reckoning with racism and promoting equity has helped to embed the organization into new social policy areas, including housing, mental health, and education.

AJC-00000022



**MENTAL HEALTH**

The Austin Justice Coalition has been passionate for years about reducing police use of force incidents, as well as excessive and unnecessary arrests, which have a disproportionate impact on people of color. One of the ways in which AJC has pursued this goal is by demanding reform in how mental health crises are handed by Austin's 911 system.

We believe that mental health crises deserve a health response, not a police response, and that reform to the mental health first response system could have saved the lives of Mauris DeSilva (2019), Morgan Rankins (2017), David Joseph (2016), Micah Jester (2016), and many others.

Currently, AJC is working actively with Integral Care, EMS, and APD, as well as representatives from other community groups, to ensure that the reforms are implemented in line with community needs and priorities.

AJC-00000023





**COMPLETE COMMUNITIES**

1) How can we undo the legacy of segregation in Austin?

2) How can we heal as a community?

This initiative will involve a sustained effort to listen to those in our communities that have been most impacted by segregation and displacement, equipping them with the tools needed to engage in the ongoing housing conversation, make informed choices, and hold elected officials accountable.

Through this process, we work to provide the city with policy proposals that can move us closer to resolving the above stated questions.

AJC-00000024



# COMMUNITY POWER



A free educational Saturday program rooted in social justice, mentorship, and community building.

Our program is for youth of color from all socioeconomic backgrounds. Our curriculum is rooted in social justice, mentorship, and community building. All programs are geared towards participants healing from the racism and oppression embedded in the society in which they live, play, and learn. Our youth gain critical life skills, knowledge, and strategies necessary to become the next great change-makers in this world.

AJC-00000025



## COMMUNITY POWER



Project Orange registers eligible inmates to vote. This ambitious and successful partnership between Austin Justice Coalition, the Travis County Sheriff's Office, and the Travis County Tax Office serves as an example for future expansion across Texas.

 Registered more than 550 incarcerated citizens (up from over 300 in 2018).

 Since october 2019, we've helped 159 inmates fill out ballot by mail applications.

 Plans to expand to other counties across the state in 2020.

AJC-00000026



## COMMUNITY POWER

### BOOK CLUB

Everyone is welcome to join us each month, as we read and discuss books that inform our efforts, and deepen our understanding of the cultural and historical background of our struggles.

### GENERAL BODY MEETINGS

Our general body meetings offer an opportunity to meet AJC's team and hear about all that's in the works. Every meeting includes time for break-out sessions on policy, education, events, and housing, as well as other special project community initiatives.

AJC-00000027



## CONTACT AJC:
## AUSTINJUSTICE.ORG



For more information:
info@austinjustice.org

AJC-00000028

Document Filed Under Seal

| Date | Activity T Non PO V | Volunteers who committed | Volunteer | Reason f | VDR Hours | BBM Hours | Unique # |
|------|---------|--------------------------|-----------|----------|-----------|-----------|----------|
| 1/4/2020 | VR | Grace Thomas | X | | 2.25 | | 1 |
| 1/4/2020 | VR | Larissa Rodionov | X | | 2.25 | | 2 |
| 1/4/2020 | VR | Marion Morris | X | | 2.25 | | 4 |
| 1/4/2020 | VR | Websterlove | X | | 2.25 | | 5 |
| 1/4/2020 | VR | Sarah Wambold | X | | 2.25 | | 6 |
| 1/4/2020 | VR | Sarah Nugent | X | | 2.25 | | 7 |
| 1/4/2020 | VR | Lauren Oeretal | X | | 2.25 | | 8 |
| 1/4/2020 | VR | Felicia Miyakawa | X | | 2.25 | | 9 |
| 1/4/2020 | VR | Scott Butki | X | | 2.25 | | 10 |
| 1/4/2020 | VR | Pam Brubaker | X | | 2.25 | | 3 |
| 1/4/2020 | VR | Beverly Lazar | X | | 2.25 | | 11 |
| 1/11/2020 | VR | Grace Thomas | X | | 2.25 | | 1 |
| 1/11/2020 | VR | Larissa Rodionov | X | | 2.25 | | 2 |
| 1/11/2020 | VR | Marion Morris | X | | 2.25 | | 4 |
| 1/11/2020 | VR | Sarah Nugent | X | | 2.25 | | 7 |
| 1/11/2020 | VR | Websterlove | X | | 2.25 | | 5 |
| 1/11/2020 | VR | Charli Krause | X | | 2.25 | | 12 |
| 1/11/2020 | VR | Jessica Clinton | | Child was sick--let me know beforehand | | | |
| 1/11/2020 | VR | Joan Osleeb | X | | 2.25 | | 13 |
| 1/11/2020 | VR | Pam Brubaker | X | | 2.25 | | 9 |
| 1/11/2020 | VR | Beverly Lazar | X | | 2.25 | | 11 |
| 1/15/2020 | VE | Larissa Rodionov | X | | 3 | | 2 |
| 1/15/2020 | VE | Joan Osleeb | X | | 3 | | 13 |
| 1/18/2020 | VR | Pam Brubaker | X | | 2.25 | | 3 |
| 1/18/2020 | VR | Grace Thomas | X | | 2.25 | | 1 |
| 1/18/2020 | VR | Marion Morris | X | | 2.25 | | 4 |
| 1/18/2020 | VR | Websterlove | X | | 2.25 | | 5 |
| 1/22/2020 | VE | Larissa Rodionov | X | | 3 | | 2 |
| 1/22/2020 | VE | Joan Osleeb | X | | 3 | | 13 |
| 1/25/2020 | VR | Grace Thomas | X | | 2.25 | | 1 |
| 1/25/2020 | VR | Larissa Rodionov | X | | 2.25 | | 2 |
| 1/25/2020 | VR | Pam Brubaker | X | | 2.25 | | 3 |
| 1/28/2020 | Recruitment | Larissa Rodionov | X | | 3 | | 2 |
| 2/1/2020 | BBM | Grace Thomas | X | | | 3 | 1 |

| Date | Type | | Name | | | | |
|---|---|---|---|---|---|---|---|
| 2/1/2020 | BBM | | Marian Morris | X | | | 3 | 4 |
| 2/1/2020 | BBM | | Lauren Oeretal | X | | | 2.5 | 8 |
| 2/1/2020 | BBM | | Felicia Miyakawa | X | | | 2.5 | 9 |
| 2/1/2020 | BBM | | Joan Osleeb | X | | | 2.5 | 13 |
| 2/1/2020 | BBM | | Charli Krause | X | | | 2.5 | 12 |
| 2/1/2020 | BBM | | Sarah Wambold | X | | | 2.5 | 6 |
| 2/1/2020 | BBM | | Laura Gold | X | | | 2.5 | 14 |
| 2/1/2020 | BBM | Y | Tiffany Taylor | X | | | 3 | 0 |
| 2/1/2020 | BBM | Y | Clare Kane | X | | | 2.5 | 0 |
| 2/1/2020 | BBM | Y | Andrea Black | X | | | 2.5 | 0 |
| 2/1/2020 | BBM | Y | Maggie Beasley | X | | | 2.5 | 0 |
| 2/1/2020 | BBM | Y | Susan Meyer | X | | | 2.5 | 0 |
| 2/1/2020 | BBM | Y | Patt Jackson | X | | | 2.5 | 0 |
| 2/1/2020 | BBM | Y | Laura Acklen | X | | | 2.5 | 0 |
| 2/1/2020 | BBM | Y | Gaylon Robertson | X | | | 2.5 | 0 |
| 2/1/2020 | BBM | Y | Sandy Rice | X | | | 2.5 | 0 |
| 2/25/2020 | Recruitment | | Larissa Rodionov | X | 3 | | | 2 |
| 2/25/2020 | Recruitment | | Christel Collins | X | 3 | | | 0 |

County Elections Division Instructions and Addresses for Ballot by Mail Applications

### Unit announcement (Speak VERY LOUD):

"If you are a registered voter, we are here today to help you with your ballot by mail application so that you can vote in this year's election."

(Then tell the Unit CO that they can let folks out X numbers at a time, depending on how many volunteers are in a pod.)

### Volunteer group notes:

When speaking to folks, be sure to confirm that they have NOT been convicted of a felony since registering to vote.

Also, confirm that they have registered either at the jail or prior to incarceration.

Be sure to ask which county they are registered in, Travis County and Williamson County forms are pre-addressed. Use a blank form for other counties and use the mailing address for the county's Elections office.

**Be sure to have everyone write their last name AND inmate number on the Last Name line of the form as well as on the return address. Make sure you tell them to print and sign legibly. If we can't read it, neither can the county!**

See County Address sheet for further instructions.



AJC-00000002

County Elections Division Instructions and Addresses for Ballot by Mail Applications

Bastrop County Elections
804 Pecan St
Bastrop, TX 78602

Bell County Elections
PO Box 1629
Belton, TX 76513

Bexar County Elections
1103 S. Frio, Ste. 100
San Antonio, TX 78207

Burnet County Early Voting Clerk
220 S. Pierce St
Burnet, TX 78611

Caldwell County
Pamela Ohlendorf,
Elections Administrator
1403-C Blackjack St
Lockhardt, TX 78644

Guadalupe County
Early Voting Clerk
PO Box 1346
Seguin, TX 78155

Harris County Elections:
Harris County Clerk
Attn: Elections Division
PO Box 1148
Houston, TX 77251-1148

Hays County Elections
Elections Administrator
712 South Stagecoach Trail
Suite 1012
San Marcos, TX 78666-5999

Mason County Elections
201 F. McKavitt
Mason, TX 76856
Montgomery County
Elections Administrator
PO Box 2646
Conroe, TX 77305-2646

Kara Sands
Nueces County Clerk
ATTN: Elections Division
PO Box 2627
Corpus Christi, TX 78403

Tarrant County Elections
PO Box 961011
Fort Worth, TX 76161-0011

Williamson County Elections
PO Box 209
Georgetown, TX 78627

**Travis County Jail Address:**
**3614 Bill Price Rd**
**Del Valle, TX 78617**

**Application Instructions**

Section 1 - Full legal name including inmate number

Section 2 - Residence Address is voter registration address

Section 3 - Jail address

Section 5 - Confinement in jail

Section 6b - Check XXX Election AND Any Resulting Runoff

Section 7 - Check Address of the jail (or other as applicable)

Section 10 - MUST provide signature and date

Project Orange

AJC-00000003

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

DR. GEORGE RICHARDSON,      *
ROSALIE WEISFELD, AUSTIN *
JUSTICE COALITION,          *
COALITION OF TEXANS WITH *
DISABILITIES, MOVE TEXAS *
CIVIC FUND, LEAGUE OF       *
WOMEN VOTERS OF TEXAS,      *
and AMERICAN GI FORUM OF *
TEXAS, INC.,                *
                            *
        Plaintiffs,         *
                            *          CIVIL ACTION NUMBER
VS.                         *          5:19-cv-0963
                            *
TEXAS SECRETARY OF          *
STATE, TRUDY HANCOCK, IN *
HER OFFICIAL CAPACITY AS *
BRAZOS COUNTY ELECTIONS     *
ADMINISTRATOR, AND PERLA *
LARA IN HER OFFICIAL        *
CAPACITY AS CITY OF         *
McALLEN, TEXAS              *
SECRETARY,                  *
                            *
        Defendants.         *


Remote Oral Deposition of

Coalition of Texans with Disabilities,

By and through their Designated Representative,

CHASE BEARDEN

May 19, 2020

10:05 a.m.


Reported by:

Micheal A. Johnson, RDR, CRR

1          REMOTE ORAL DEPOSITION OF COALITION OF

2     TEXANS WITH DISABILITIES, BY AND THROUGH THEIR

3     DESIGNATED REPRESENTATIVE, CHASE BEARDEN, produced

4     at the instance of the Defendant, Texas Secretary of

5     State, in the above-styled and numbered cause on the

6     19th day of May, 2020, at 10:05 a.m., before Micheal

7     A. Johnson, RDR, CRR, Notary Public in and for the

8     State of Texas, reported by realtime stenographic

9     means, at the location of the witness, Austin,

10    Texas, pursuant to Notice of Oral Deposition, and in

11    accordance with the Federal Rules of Civil

12    Procedure.

13

14

15

16

17

18

19

20

21

22

23

24

25

Coalition of Texans with Disabilities - 5/19/2020

3

1                   REMOTE APPEARANCES

2  ON BEHALF OF THE PLAINTIFFS:

3    JoAnna Suriani
     WILLKIE FARR & GALLAGHER LLP
4    1875 K Street, N.W.
     Washington, D.C. 20006-1238
5    (202) 303-1193
     jsuriani@willkie.com
6
     Samuel Kalar
7    WILLKIE FARR & GALLAGHER LLP
     787 Seventh Avenue
8    New York, New York 10019-6099
     (212) 728-8724
9    skalar@willkie.com

10   Hani Mirza
     Ryan Cox
11   TEXAS CIVIL RIGHTS PROJECT
     1405 Montopolis Drive
12   Austin, Texa 78741
     (512) 474-5073
13   hani@texascivilrightsproject.org
     ryan@texascivilrightsproject.org
14

15  ON BEHALF OF THE DEFENDANT
    TEXAS SECRETARY OF STATE:
16
     Anne Marie Mackin
17   ASSISTANT ATTORNEY GENERAL
     Post Office Box 12548
18   Austin, Texas 78711-2548
     (512) 463-2798
19   anna.mackin@oag.texas.gov

20

21

22

23

24

25

4

1              REMOTE APPEARANCES (CONT.)

2  ON BEHALF OF THE DEFENDANT
   TRUDY HANCOCK IN HER OFFICIAL CAPACITY AS BRAZOS
3  COUNTY ELECTIONS ADMINISTRATOR:

4    J. Eric Magee
     ALLISON, BASS & MAGEE, LLP
5    402 West 12th Street
     Austin, Texas 78701
6    (512) 482-0701
     e.magee@allison-bass.com
7
     Bruce L. Erratt
8    BRAZOS COUNTY ATTORNEY'S OFFICE
     300 East 26th Street, Suite 1300
9    Bryan, Texas 77803
     (979) 775-7400
10   berratt@brazoscountytx.gov

11

   ON BEHALF OF THE DEFENDANT
12  PERLA LARA IN HER OFFICIAL CAPACITY AS CITY OF
   McALLEN, TEXAS SECRETARY:
13
     Isaac J. Tawil
14   Austin Stevenson
     CITY OF McALLEN
15   1300 West Houston Avenue
     McAllen, Texas 78501-5002
16   (956) 681-1090
     itawil@mcallen.net
17   astevenson@mcallen.net

18
   ALSO PRESENT:
19
     Amelia Christopher, Video Technician
20

21

22

23

24

25

5

INDEX
CHASE BEARDEN
May 19, 2020

REMOTE APPEARANCES                                3

PROCEEDINGS                                       7


EXAMINATION OF CHASE BEARDEN:

BY MS. MACKIN                                     7

BY MS. MACKIN                                    71

BY MR. MIRZA                                     75

BY MR. MAGEE                                     76

BY MR. TAWIL                                     78


CORRECTIONS AND SIGNATURE                        80

REPORTER'S CERTIFICATION                         81

6

```
 1                    DEPOSITION EXHIBITS
                        CHASE BEARDEN
 2                       May 19, 2020

 3
     NUMBER                DESCRIPTION              MARKED
 4
     Exhibit 1      Defendant Secretary of           10
 5                  State's Notice of Oral
                    Deposition Pursuant to
 6                  Federal Rule of Civil
                    Procedure 30
 7
     Exhibit 2      Plaintiffs' Original             20
 8                  Complaint

 9   Exhibit 3      CTD About Us                     28
                    CTD-00000080 -
10                  CTTD-00000083

11   Exhibit 4      CB051920_EX04                    52

12   Exhibit 5      CTD Newsletter                   61
                    CTD-00000026 -
13                  CTD-00000027

14

15

16

17

18

19

20

21

22

23

24

25
```

Coalition of Texans with Disabilities - 5/19/2020

```
 1                    PROCEEDINGS
 2                    CHASE BEARDEN,
 3   called as a witness, having been duly sworn by a
 4   Notary Public, was examined and testified as
 5   follows:
 6                    EXAMINATION
 7   BY MS. MACKIN:
 8        Q.    Good morning.  Will you please speak and
 9   spell your name for the record.
10        A.    Chase Bearden, C-h-a-s-e, last name
11   Bearden, B-e-a-r-d-e-n.
12        Q.    Okay.  Thank you, Mr. Bearden.  My name
13   is Anna Mackin.  I am an attorney with the Texas
14   Attorney General's office and I represent the
15   defendant, the Texas Secretary of State in this
16   lawsuit.  I'm going to be asking you some questions
17   today.
18              Have you ever been deposed before?
19        A.    No.
20        Q.    Okay.  Well, I'm going to go over some
21   ground rules that will kind of, hopefully, help
22   things go as smoothly and as efficiently as
23   possible, as this is obviously somewhat of a unique
24   situation, even beyond being in a deposition,
25   because we are situated remotely and we usually do
```

1  these in person.

2          So the most important thing is to give a

3  verbal answer to my questions.  So yes or no as

4  opposed to a shake of the head or huh-uh, uh-huh.

5  Mr. Johnson is recording this depo, so he's writing

6  down everything we say and that will make it clear

7  and make it easier for him to do his job.  Okay?

8      A.    Okay.

9      Q.    And for similar reasons, I will try to

10  let you finish the answer to your question -- the

11  answer to my question before I ask my next one, and

12  I would ask that you please endeavor to let me

13  finish my question before you start your answer.

14  Okay?

15      A.    Okay.

16      Q.    And if you don't understand one of my

17  questions, will you please tell me so that I can

18  rephrase it?

19      A.    Okay.

20      Q.    And if you need a break, if you need to

21  use the restroom at any time, I like to say you are

22  the talent here, so just let me know and we can take

23  a break.  I'll have you answer if I've asked a

24  question that's pending, but then we can go ahead

25  and take a break if you ever need to.

1       A.      Okay.

2       Q.      Is anyone in the room with you?

3       A.      No.

4       Q.      Okay.  Now that this deposition is

5   underway, I'm going to ask that if you communicate

6   with anybody about the substance of what you're

7   testifying to, that you please let me know that.

8   Once the deposition's over, obviously, no need to

9   follow up.  But during the deposition, please, no

10  communications about the substance of your testimony

11  unless you let me know.

12           Do you have any documents in front of

13  you?

14      A.      No.

15      Q.      Okay.  So again, since we're situated

16  remotely, if you could please let me know if you

17  refer to any document or text message or website or

18  anything like that in answering my question.  Okay?

19      A.      Okay.

20      Q.      And I'm going to be showing you some

21  documents today.  In these remote depositions that

22  we've had so far, it has worked pretty well for me

23  to place the document in the group chat box on Zoom.

24      A.      Okay.

25      Q.      So I will continue to do that if that

1  works for you.  I'm going to try one to practice.

2      A.    And for me, just for you to know, because

3  I don't have use of my hand, sometimes it takes a

4  little longer to get the mouse and everything to

5  work right.

6      Q.    Okay.  Take your time.

7      A.    Okay.

8      Q.    And if it's easier, another thing I can

9  do is share a document on the screen.  So we can

10 kind of see how we go.  But for multipage documents,

11 I think that, you know, having -- having the whole

12 document so you can kind of move through it as you

13 need to, we'll try it that way first and you can let

14 Me know if it's not working very well.

15     A.    Okay.  I was able to open that.

16     Q.    Okay.  Great.  And I'll make this

17 Exhibit 1.

18              (Deposition Exhibit 1 marked for

19 identification.)

20 BY MS. MACKIN:

21     Q.    Have you seen this document before,

22 Mr. Bearden?

23     A.    Hang on.  I've lost it.  Sorry, I pulled

24 up other screens.  There we go.

25     Q.    No problem.

 1     A.    Yes.

 2     Q.    What is it?

 3     A.    It's the deposition notice.

 4     Q.    And you understand that you are here

 5 today pursuant to this notice?

 6     A.    Yes.

 7     Q.    And you also understand that this

 8 document says that the Coalition of Texans With

 9 Disabilities is directed to designate someone to

10 testify on its behalf on the topics in this notice?

11     A.    Yes.

12     Q.    Okay.  Please take a moment to review the

13 topics and let me know when you're finished.

14               (Witness reviews document.)

15     A.    Okay.

16 BY MS. MACKIN:

17     Q.    Do you understand that the Coalition of

18 Texans With Disabilities has designated you to

19 testify on each topic listed in the notice?

20     A.    Yes.

21     Q.    And are you prepared to testify on all of

22 these topics?

23     A.    Yes.

24     Q.    And you understand that since this is a

25 type of deposition that we call a 30(b)(6)

12

 1  deposition, it means that you're testifying not as

 2  yourself but as the representative of Coalition of

 3  Texans With Disabilities --

 4      A.    Yes.

 5      Q.    -- is that -- and your answer -- no,

 6  you're fine.  And your answers bind the Coalition of

 7  Texans With Disabilities?

 8      A.    Yes.

 9      Q.    How did you prepare for today's

10  deposition?

11      A.    I talked with our counsel, I looked over

12  the information we submitted in discovery, our

13  deposition stuff, I spoke with my boss, Dennis

14  Borel, and I spoke with three of our members.

15      Q.    How long did you speak with your

16  attorneys, just approximately?

17      A.    I guess about 30 or 45 minutes, somewhere

18  in there.

19      Q.    And you mentioned that you met with your

20  boss, Mr. Borel?

21      A.    Uh-huh.

22      Q.    How long did you meet with him?

23      A.    We talked on the phone for about three or

24  four minutes.

25      Q.    And what did you discuss?

Coalition of Texans with Disabilities - 5/19/2020

13

1      A.    I was clarifying with him on our budget,

2   where the funds -- how we attach our advocacy to the

3   funding.

4      Q.    Anything else?

5      A.    With Dennis, no.

6      Q.    Okay.  And then you mentioned that you

7   spoke with three of your members?

8      A.    Yes.

9      Q.    What are their names?

10     A.    Juan Munoz, Gloria Angel, and Rene Lopez.

11     Q.    And Rene, is that person male or female?

12     A.    Female.

13     Q.    All right.  And what did you speak with

14  Mr. Munoz about?

15     A.    Originally, he and Gloria contacted me

16  about a week ago on mail-in ballots, wanting to fill

17  them out and asking for assistance on how they

18  should do it.  While we were talking about it, I

19  brought up what we were doing here because this

20  affects them specifically.  Both of them have

21  significant cerebral palsy.  Neither one of them can

22  write.  They use a stamp most of the time or the

23  computer and they were concerned that their ability

24  to sign it and have it done privately would be kind

25  of at risk.  So they have gotten some assistance to

Coalition of Texans with Disabilities - 5/19/2020

14

1  fill it out.  But at the same time, they were

2  wanting to make sure that in the future they were

3  able to vote.

4        Q.    Okay.  And I just want to clarify that

5  that was Mr. Munoz, and I believe you said it was

6  also one of the other individuals you spoke with?

7        A.    Gloria Angel, yes.

8        Q.    Okay.

9        A.    She also goes by Susie.

10       Q.    Okay.  And was there anything else that

11 you discussed with Mr. Munoz and Ms. Angel?

12       A.    No.

13       Q.    Okay.  And then you also mentioned

14 speaking with Rene Lopez?

15       A.    Yes.  And it was about --

16       Q.    What did you --

17       A.    Oh, sorry.

18       Q.    No, I'm sorry.  It's a total tendency in

19 normal human conversation, so it happens all the

20 time.

21       A.    We spoke about that I was going to be in

22 the deposition and I was wondering where she stood

23 on the mail-in ballot and if she was going to -- she

24 also has a significant disability like myself and I

25 wanted to make sure where she was at and if she was

1   going to be using a mail-in ballot, trying to

2   understand and make sure that all of our members,

3   the way they're looking right now, many of them are

4   confused about how COVID's going to affect many of

5   them, so we're seeing a greater number of people who

6   are talking about using mail-in ballots and these

7   are the people that a lot of them tend to have

8   signature issues.

9          So when I was talking to her, I asked her

10  if she was going to participate by going to the

11  polls or was she going to end up doing a mail-in

12  ballot, and she said she was actually thinking about

13  leaning towards mail-in ballot just because of all

14  her underlying health conditions, that she was more

15  comfortable that way.

16      Q.   Okay.  Thank you for that information.

17  And I'm probably going to circle back to talk about

18  those folks a little bit more in depth a little bit

19  later on.  But for now, is there anybody else that

20  you spoke with to prepare for the deposition that we

21  haven't already talked about?

22      A.   No.

23      Q.   Okay.  And you also mentioned that you

24  reviewed the Coalition of Texans With Disabilities's

25  discovery responses in this case, I think?

Coalition of Texans With Disabilities - 5/19/2020

16

1      A.    Uh-huh.  Just the stuff we submitted.

2      Q.    Okay.  Did you review any other documents

3  to prepare for today's deposition?

4      A.    No.

5      Q.    And just to be extra clear, everything

6  that you reviewed has been given to your attorneys

7  to be given to us, right?

8      A.    Yes.

9      Q.    Okay.  All right.  Mr. Bearden, are you

10  currently employed by the Coalition of Texans With

11  Disabilities?

12      A.    I am.

13      Q.    And what is your position?

14      A.    Deputy director.

15      Q.    What are your duties and responsibilities

16  as deputy director?

17      A.    The majority of the work I do is on the

18  advocacy side, ensuring that our members are being

19  represented, to help with the day-to-day business of

20  making sure we're getting our work done,

21  fundraising, trying to make sure we keep our lights

22  on.  At the same time educating.  We do a lot of

23  education.  And just trying to solve problems and

24  put out fires for members who -- those one-offs when

25  something goes wrong and they fall through the

 1  cracks.

 2           I work a lot with our staff on

 3  maintaining different projects we're trying to

 4  handle.  And then anything else that our executive

 5  director needs or doesn't have time for.  Tending

 6  state agency meetings, participating on boards, some

 7  appointments with -- governor appointments,

 8  different HHSC committees that we participate in.

 9  And then anything else our board ends up deciding,

10  direction they would like to go on something.

11       Q.    Is this the first position that you've

12  held with the Coalition of Texans With Disabilities?

13       A.    No.

14       Q.    What position did you hold before your

15  current position?

16       A.    I started off as an AmeriCorps Vista, as

17  a volunteer, I guess a little over 11 years ago.

18  Then I moved from there to the director of advocacy

19  after three years.  I spent my time -- most of my

20  time as the director of advocacy and about a year

21  ago was promoted up to deputy director.

22       Q.    And during your time as deputy director,

23  have your duties and responsibilities changed or

24  have they generally been the same mix of activities

25  that you just described?

1        A.      Pretty much the same mix of activities.

2        Q.      And I presume you report to the executive

3   director?

4        A.      Yes.

5        Q.      Do you report to anyone else in your

6   capacity as deputy director?

7        A.      No.

8        Q.      And does anyone report to you?

9        A.      Yes.

10       Q.      How many people?

11       A.      Directly in the chain there's one, but a

12  majority across them.  We have multiple directors.

13  If they need something, I can always present it to

14  the board for them or to Dennis.

15       Q.      And you mentioned one individual reports

16  to you.  Who is that?

17       A.      Jolene Sanders, our director of advocacy.

18       Q.      How many employees does the coalition

19  have?

20       A.      We currently have 12 full-time employees.

21       Q.      And before you came to the Coalition of

22  Texans With Disabilities, did you come straight out

23  of school, or did you have any other employment

24  before you started with the coalition?

25       A.      I had other employment.  I was working

19

1  for St. David's Medical Center rehab in their

2  adaptive sports programs, helping adults and kids to

3  get back out and do physical activities, like rugby

4  and camping and all of those fun things and then get

5  them back to work in that sense.

6       Q.    How did you get involved in that work?

7       A.    Let's see.  '94, I was a gymnast.  I

8  broke my neck in a morning workout and went from

9  being an elite athlete to being paralyzed from the

10 neck down.  Did my time -- my rehab work at

11 St. David's.  Started participating in their

12 programs and at that point was starting to go to

13 college and found myself finally working for them.

14 So that's kind of how I fell into that there.

15           At the time, years later, St. David's

16 became -- went from for profit -- or nonprofit to

17 for-profit and our program was squeezed down and

18 that's when I started looking for work and I ended

19 up over at CTD.  It was similar.  I mean, most of

20 the problems I heard from the kids and their parents

21 while we were doing things, I was able to then start

22 working on when I moved over to CTD.

23      Q.    Yeah.  Yeah.  Well, thank you for sharing

24 that personal story with me.

25           You mentioned college.  Where did you

20

1  attend college?

2      A.    A few.  I went to Concordia University at

3  one point.  ACC.  I went to Texas A&M for a few

4  years, and then I came back and I finished at

5  Concordia University going to night school while I

6  worked, put myself through it.

7      Q.    What did you study?

8      A.    Business.

9      Q.    And where did you attend high school?

10     A.    Round Rock High School.  When there was

11 only --

12     Q.    Were you -- were you born in the Austin

13 area?

14     A.    No, I grew up in the Rio Grande Valley,

15 actually.  We moved up here in 1993 when my dad went

16 to work as one of Governor Perry's assistant

17 commissioners when he was at the ag commission.

18     Q.    That's all that I have on your

19 background.  I appreciate you indulging me there.

20 I'm going to show you a document that will be

21 Exhibit 2 to this deposition.

22            (Deposition Exhibit 2 marked for

23 identification.)

24 BY MS. MACKIN:

25     Q.    Please let me know when you have that

1  document in front of you and you're ready to discuss

2  it.

3       A.    I have it in front of me.

4       Q.    Do you recognize that document?

5       A.    Yes.

6       Q.    And what is it?

7       A.    It is the original complaint.

8       Q.    And did you review this document before

9  it was filed?

10      A.    Yes.

11      Q.    About how long did you spend reviewing

12  it, if you recall?

13      A.    I think I reviewed probably at least

14  45 minutes.

15      Q.    And do you know if anyone else at the

16  Coalition of Texans With Disabilities reviewed this

17  document before it was filed?

18      A.    Yes.  Dennis Borel.

19      Q.    Okay.  Anyone else?

20      A.    I don't believe so.

21      Q.    Okay.  Now I'm going to ask you some

22  questions about the other plaintiffs in this

23  lawsuit.  Some of it might seem a little bit random

24  because there's a lot of -- you know, there's three

25  defendants and a handful of plaintiffs, but I just

1  want to cover all the bases.

2          So has the Coalition of Texans With

3  Disabilities had any prior dealings with Dr. George

4  Richardson, one of the individual plaintiffs in this

5  case?

6      A.    No.

7      Q.    Okay.  What about Rosalie Weisfeld?

8      A.    No.

9      Q.    Has the Coalition of Texans With

10  Disabilities had any prior dealings with the Austin

11  Justice Coalition?

12      A.    Yes, I believe so.

13      Q.    And what is your understanding of the

14  nature of those dealings?

15      A.    I am not sure right now.

16      Q.    Okay.  Who might know?

17      A.    Dennis Borel.

18      Q.    All right.  Has the Coalition of Texans

19  With Disabilities had any prior dealings with MOVE

20  Texas Civic Fund?

21      A.    No.

22      Q.    What about the League of Women Voters of

23  Texas?

24      A.    Yes.

25      Q.    Okay.  And what is the nature of those

23

1    dealings?

2         A.    We've worked a lot with them over the

3    years on education, voter education, different

4    events, trying to get people out to vote and get

5    them registered, conferences, that kind of thing.

6         Q.    All right.  Has the Coalition of Texans

7    With Disabilities had any prior dealings with the

8    Texas Secretary of State's office?

9         A.    Yes.

10        Q.    And tell me about those.

11        A.    We've actually worked closely with them

12   multiple times on HAVA, back in the day when HAVA

13   funds were expended to actually educate the

14   disability community.  We worked with some of their

15   subcontractors, like EnviroMedia.  We traveled

16   with -- with the Secretary of State's office.  We

17   worked a lot with past secretaries who attended

18   different events we hosted on voting.  We've worked

19   directly with some of their programs.  They asked me

20   to speak at their 2019 election law seminar in

21   December.  We've done other events at the election

22   law seminars on accessibility.  You know,

23   different -- trying to think of all the different

24   ways we have.  We've worked with them on making sure

25   that policies are sound, when we can.  Trying to get

24

1  them to adjust certain policies to make it more

2  effective.  So yeah, we've had a long history with

3  them.

4       Q.    And who specifically -- like if you

5  wanted to raise something with the Secretary of

6  State's office, who would you reach out to in that

7  office?

8       A.    We would start with the accessibility

9  department, division.  Things have also changed so

10 much lately.  We used to have better connections

11 when Roger Williams was there, to be able to get

12 faster access.  But typically we'd just try and go

13 through the accessibility side of it.

14      Q.    And you mentioned that you were asked to

15 speak at the 2019 election law conference.  Were

16 you -- did you -- did you end up speaking at that

17 conference?

18      A.    Yes.

19      Q.    And do you remember who it was that

20 reached out and extended that invitation to you?

21      A.    I'm not remembering the name off the top

22 of my head.

23      Q.    Okay.  That's fine.  All right.  Has the

24 Coalition of Texans With Disabilities had any prior

25 dealings with Perla Lara or the McAllen city

25

1   secretary?

2          A.     No.

3          Q.     What about Trudy Hancock or the Brazos

4   County election administrator?

5          A.     No.

6          Q.     Okay.  All right.  Moving right along to

7   deposition notice.  I'm going to start with the

8   first topic.

9                 What is CTD's mission?

10         A.     So CTD was started about 1978 by a group

11  of people with disabilities trying to advocate for

12  themselves.  It was kind of that moment in time when

13  disability rights were starting.  And our mission

14  has pretty much stayed the same since the beginning

15  and that was to advocate for people's rights to

16  access.  And that could be from school, to

17  employment, to work, to living in the community, to

18  ensuring that you have the same basic rights.  And

19  voting has been one of those key on that because it

20  is the basic one thing you can do to help adjust

21  your future.  But a big part of it has been access.

22  It always centers around access.  Access to

23  transportation, access to health care, access to

24  employment.  Pretty much that is the mission, is to

25  ensure people have access in the community of their

26

1   choice.

2        Q.    And has that mission changed over time?

3        A.    I think it has changed some, but that's

4   just because as we found we moved forward in certain

5   areas, we found areas where there were setbacks and

6   we kind of had to fall back and work on those areas.

7   There's always new things that are changing.  Where

8   we finally had some of the architectural barrier

9   sides of our world fixed, when scooters came along

10  and started parking on the curb cuts in the

11  accessible parking spaces, there was no way to stop

12  it and no way to enforce it.  So that became a new

13  barrier that we had to adjust to and figure out.  So

14  it's always changing in a sense, but it still always

15  comes back to maintaining access in the community of

16  your choice.

17       Q.    Always about access, even if some of the

18  barriers maybe shift --

19       A.    Yes.

20       Q.    -- as time goes on?

21       A.    Right.

22       Q.    That makes sense.  What is Disability

23  Rights Texas?

24       A.    They're a federally funded legal resource

25  for -- in every state.

1        Q.      Okay.

2        A.      Well, they're not, but for Texans they

3   are.  And we've worked with them over the years

4   greatly as a resource, but also they educate.  I

5   mean, they have one of the better accessibility and

6   voting education programs.  They are a resource to

7   every Texan with a disability.

8        Q.      I notice there is a document in y'all's

9   production that had disability rights -- it was on

10  Disability Rights Texas letterhead, or something

11  like that.  So I was wondering does CTD have, you

12  know, a working relationship with them or is

13  there -- is that what the nature of the relationship

14  is?

15       A.      Yeah.  We have a working relationship

16  with them, especially when it comes to voting.  We

17  put their materials out when we see things that they

18  have.  They create documents that are usable by any

19  organization.  We also send people to them that are

20  having different issues, but it could be from

21  housing to employment discrimination.  They're kind

22  of that one source where you can get help.  A

23  majority of the disability community is economically

24  the most disadvantaged.  To find legal help is very

25  difficult and they're that source for everyone.

Coalition of Texans with Disabilities - 5/19/2020

28

1      Q.    Do you know if CTD and Disability Rights

2  Texas have any of the same funding sources?

3      A.    No, we don't.

4      Q.    Okay.  I want to dive in a little bit

5  deeper to the different activities and sort of

6  initiatives.  And so I'm going to show you a

7  document that I think might capture it.  I'm sharing

8  a document with the Bates number CTD and a bunch of

9  zeros and then 80.  And that's going to be

10  Exhibit 3.

11              (Deposition Exhibit 3 marked for

12  identification.)

13      A.    Okay.

14  BY MS. MACKIN:

15      Q.    Let me know when you're able to pull up

16  that document and review it and are ready to talk

17  about it.

18      A.    I have it.

19      Q.    Great.  All right.  Do you recognize this

20  document?

21      A.    I do.

22      Q.    And what is it?

23      A.    Basically we were trying -- sitting down

24  trying to figure out how to explain CTD to people.

25  We've grown in so many years and we started figuring

1    out that we covered a lot of different areas with a

2    very small staff.  We were trying to explain to many

3    of the people what all -- the intricacies of what

4    all we were doing.

5        Q.    And so does this document accurately

6    reflect the activities of CTD?

7        A.    Yeah, I think it's a good snapshot of

8    what we do.

9        Q.    I want to talk about -- I just kind of

10   want to talk through the different categories and

11   I'd like to get an understanding of your main

12   activities in these categories and I'm not looking

13   for a gotcha, like if you did one little thing and

14   don't mention it, just to give me a sense.

15             So on Arts & Awareness, beneath that I

16   see kind of the biggest bubble, Annual Cinema

17   Touching Disability Film Festival.  Tell me about

18   that.

19       A.    So that was actually started, I think,

20   about 17 years ago by our director of advocacy -- or

21   director of film.  He was originally started at CTD

22   in -- as a part-time secretary answering phones and

23   taking care of stuff.  He's visually impaired.  He

24   runs marathons and he's a big film buff.  And

25   basically he sat down with our boss when they were

1    trying to figure out how they could raise funds at

2    that time.  And he said why don't we start a film

3    festival that's centered around disability because

4    there really are none out there.  And their goal was

5    to show a positive portrayal of disability that was

6    out there.  There's a lot of negative portrayal

7    still today in film.  So as it grew, it's hosted

8    every year at the Alamo Draft House for two nights.

9    It used to have a competition for students and

10   adults.  Now it's just an open competition where

11   people send in shorts, along with one longer

12   documentary one night and another, either regular, I

13   guess, nondocumentary the other night.  We usually

14   tie it to a theme of some sort.

15            In the past we actually -- we have people

16   vote on which film they like better.  We have judges

17   that already previously selected the winners.  We

18   receive now -- from every continent, we have

19   received movies, countries all over the world and we

20   continue to receive them.  But one of the years when

21   they were releasing one of the new voting machines

22   and we had worked with Hart InterCivic on actual

23   accessibility and design, we asked them if they

24   would bring up some of their machines and we allowed

25   people to be able to cast an accessible private

1 | ballot there in the studio -- or at Alamo, because a

2 | majority of the people can't grab onto the pens and

3 | write with those itty-bitty things they have there.

4 | And it also gave the people a chance to see the new

5 | machine before the next election.  So we use it as

6 | kind of a way to have the public see disability in a

7 | positive light.  We gain, every year, new people who

8 | came out the next year that were just there for a

9 | movie and asked what the event was, and we have to

10 | find a way to get that many people in chairs and

11 | family members and others into -- into the theater.

12 | It's pretty much sold out now every year.

13 |         So it's just one of our bigger events,

14 | and right now we're in the process, like everyone

15 | else, trying to figure out how to make it virtual.

16 | But accessibility is a big thing.  So we go -- we

17 | take it farther than the typical theater when we try

18 | to make this accessible to everyone.

19 |     Q.   I want to circle back to one of the

20 | things you mentioned.  Do you know if those -- those

21 | Hart voting machines are being used in polling

22 | places in Texas?

23 |     A.   Yes.

24 |     Q.   Okay.  Well, that sounds like a great

25 | event.  Is it -- is it a revenue generator for

32

1  y'all --

2       A.    Yeah.

3       Q.    -- or is it --

4       A.    Yes.

5       Q.    -- it's actually -- it's brilliant.  It

6  does so many things.

7       A.    Yeah.  Yeah.

8       Q.    Okay.  Now, there's this little bubble

9  next to the Cinema Touching Disability Film Festival

10  that I actually can't quite read on this document.

11  Do you happen to know what that said?

12       A.    It's on the website --

13       Q.    Okay.

14       A.    -- which is a lot clearer.  Let me see if

15  I can expand it.  It might be the writing

16  competition.  So one of our other employees -- well,

17  two of them.  And actually I spoke about one

18  earlier, Susie -- Gloria Angel is one of the ones

19  that's doing the mail-in ballot with significant CP.

20  She also has a very significant speech impairment.

21  She and Laura, our director of communications,

22  created the Pen2Paper, which was just an annual

23  writing competition for disability and it's grown,

24  and I believe recently they had a publisher pick up

25  and is going to publish a book full of all the

Coalition of Texas with Disabilities - 5/19/2020

33

1  entries over the last -- over how many years, but

2  it's all written by people with disabilities, family

3  members, gives them a way to write about their

4  issues and to share.

5           They also connect that into what they

6  call the Lion & Pirate, which is a monthly event at

7  Malvern Books here in Austin, where people get up

8  and read pieces they have written, can congregate

9  and talk about different issues.

10      Q.    Very cool.  All right.  I think that that

11  other bubble was the Lion & Pirate Open Mic.  The

12  one down at the bottom, Media Outreach, I mean,

13  that's pretty straightforward, I think, what it

14  means, but can you maybe tell me a little bit about

15  the types of media outreach that CTD does?

16      A.    Yeah.  Yes.  I think the film festival's

17  always a big media pull, one of those that gets more

18  attention than others, so we try and use it every

19  year.  Like this year, we had RJ Mitte from Breaking

20  Bad, who also has a disability, as our -- the host

21  of the night.  And we sat down with him and he has a

22  lot of different ideas and policy and disability,

23  and he presented and spoke to media about

24  disability.  So it's always just showing people that

25  there is the positive image of someone out doing it,

Coalition of Texans with Disabilities - 5/19/2020

34

1   if they can access it.

2        Q.    And so did we kind of touch on all the

3   arts and awareness activities?

4        A.    I think so.  Yes.

5        Q.    Let's hop on over to Community

6   Organizing.  It looks like there are conferences in

7   that first little bubble.  Tell me a little bit

8   about that.

9        A.    So we host -- we have, since the

10  beginning, hosted conferences almost every year.

11  There used to be annual, very large conferences.

12  During a legislative session, we always host them in

13  Austin, that way people can come and meet and speak

14  to their representatives here.

15           In the years that we're in that interim

16  year, typically we will choose what's outside of the

17  Austin area, to make sure we can get to our

18  membership and that might be one year in El Paso and

19  another year in Houston, one in Dallas.  We've done

20  them in McAllen.  We've done them, you know, all

21  over the state at different times.

22           We have scaled that down to doing smaller

23  ones, trying to target more areas but with less of a

24  production.  Mainly, trying to host very large

25  conferences took up a lot of our time and bandwidth.

1  So hosting smaller ones that are more intimate that

2  are going over the similar material each time kind

3  of makes it easier for us to actually hit more

4  people.

5           We're also spending more time trying to

6  train people to be good advocates for themselves and

7  to know what to expect when talking to legislators

8  or state agencies and how to stay to the point and

9  move forward.

10          But we are changing up the way we are

11 doing our conferences this year.  We're actually

12 going to do five of them.  We have always called it

13 Raise Your Voice, and we are going to do them mainly

14 virtually, unless things get better.  We'll hit our

15 top policy issues and we'll host them in short Zoom

16 meeting-style formats regionally and then probably

17 have a more in-depth version a week later.

18          We had planned on traveling for these

19 this year because there were so many big issues that

20 we really wanted to sit down and talk to people

21 about regionally, but for now, we're going take it

22 virtual and see how that goes.

23     Q.    Yeah.  Well, I never thought I would ever

24 be okay with like taking a deposition remotely, and

25 we've had to and it's been fine.

1      A.    Yeah.  One last thing on conferences,

2  just to make sure I get it all in there.  We also

3  get invited and asked to speak at a lot of different

4  conferences.  So they could be disability

5  conferences, pharmaceutical conferences, insurance

6  conferences.  We kind of run the gamut on that,

7  mainly because any chance we can speak about access,

8  we try to.

9      Q.    One quick follow-up that I realize I

10  hadn't asked.  About how many members does CTD have?

11      A.    So currently we have, as we tried to

12  migrate all our stuff over, 2200 active members

13  across the state.  There are many more.  We just

14  don't have -- we don't always include their e-mails.

15  As we shifted things, they've kind of dropped off.

16  But we also have member organizations somewhere over

17  the number of 50, I think, and basically those are

18  other types of disability organizations, some are

19  pharmaceutical companies that have the same beliefs,

20  insurance companies.  And basically, we share our

21  information where we send something out and then

22  they send it out to their members and it kind of

23  gives us a wider population number.

24          But as we've kind of gone digital, to try

25  and get our membership, we've started moving more

1  towards, actually, I guess, grabbing more

2  demographics and try and figure that out.

3      Q.   You mentioned in your answer, you talked

4  a couple times about migrating and shifting over.  I

5  just want to be clear what that -- what's that a

6  reference to?

7      A.   Just an old database system that's been

8  updated and moved to a new platform.

9      Q.   All right.  So let's talk about this

10  Voter Training bubble under Community Organizing.

11  Tell me about the voter training activities that CTD

12  engages in.

13      A.   So over the years, we've done voter

14  trainings at different conferences, and it can be

15  from talking about all the options, especially

16  around accessibility.  A lot of it stemmed after

17  HAVA, when we saw for the first time an accessible

18  voting machine.  So many people had already had bad

19  experiences, especially those who are visually

20  impaired, that after a bad experience or an

21  embarrassing experience at the polling center, be it

22  from a polling official or someone -- or just not

23  being able to do it, never went back to voting and

24  we started losing people voting just because they

25  couldn't do it independently.

1       When HAVA passed, we started spending a

2  lot of time doing training, trying to teach people

3  how to use the accessibility.  It's been hard

4  because there is a small section in the training for

5  poll workers, but the majority of them still don't

6  understand all the functions or the availability of

7  it.  They're also under a lot of pressure that day

8  trying to get through numbers.  So we spend a lot of

9  time trying to make sure people understand how to

10 cast their ballot ahead of time.  And it's really

11 important for those who are visually impaired to

12 know ahead of time.

13      We also work a lot with just different

14 groups on trying to educate newer voters, those who

15 have never voted.  And making sure those who want to

16 vote at home, who can't make it to the polls.

17 Because when you look at the disability community,

18 you have some that are die-hard that they believe

19 it's their civic duty, that they will -- they'll be

20 at a polling site no matter what.  But that also

21 comes down to, do they have transportation to get

22 there?  Are there any other underlying health issues

23 during that period?  And then there are many who

24 they just can't make it.  They don't have

25 transportation.  They don't have a family member

1  that can get them there and get off work.  So they

2  use mail-in ballots.

3          So we've spent time trying to help

4  educate people more on mail-in ballots and just

5  figuring out when do I send it in, when do I get it,

6  what do I do with it.  And a lot of times that comes

7  down to just people calling and asking questions.

8          But at every event that we have an

9  opportunity to talk about voting, we talk about

10  them.  Any chance -- here's all the different

11  options that are available to you right now.

12          We traveled with the Secretary of State's

13  office when they were doing HAVA for a couple years

14  each election cycle, doing voter trainings and

15  sitting at fairs and talking to people.  We're

16  working on putting the other big program within that

17  Raise Your Voice that will walk people through all

18  the steps of either mail-in ballot or using new

19  machines coming out and how that works.  How to

20  understand how to use curbside voting, all of those

21  issues.

22      Q.    When -- do you know when -- you mentioned

23  new machines coming out.  Do you know when that is

24  slated to happen?

25      A.    Well, in a sense it already has, with the

1  new ballots that print out.  Even that portion has

2  made it more difficult.  But I believe here in the

3  next year or so, there's opportunity of new

4  machines.  Also as counties buy new machines, they

5  may go with a different vendor.  So someone who

6  understands how to use one machine may show up and

7  not be able to use a new machine.  Because there are

8  differences and I think for someone with a

9  significant disability, a small change can sometimes

10  make it inaccessible.  And if they don't know ahead

11  of time, they don't have time to prepare on how to

12  adjust to that.

13      Q.    I have a question about something I saw

14  in some of the documents that you -- I'm sorry I'm

15  jumping all over the place a little bit.  But some

16  of the documents you produced talked about other

17  states and referred to, like a system that could be

18  done remotely that would allow for someone with a

19  disability to cast a ballot independently.  What --

20  can you tell me what those other states are doing?

21      A.    So currently, like our mail-in ballots

22  right now, if you have a visual impairment and it

23  gets mailed to you, you have to have assistance.  So

24  really that group is the one group who the only way

25  for them to cast a private ballot is to go to a

41

1   polling site, if they can get there, so that they

2   can use one of the electronic machines, plug in

3   their headphones and have it read it to them, part

4   of the new software on their computers that reads

5   what's on the screen to them.  That's how they work

6   on a daily basis.

7          Currently in other states, they are able

8   to send in an electronic copy of the ballot, where

9   you can basically use the accessible tools that you

10  already have to fill it out and then hit print and

11  then mail it in.  That gives them the option of a

12  private ballot.  Because no matter what, even if you

13  have a witness and you're visually impaired, you

14  don't always have -- you have to know that what they

15  filled out is what they filled out or what you

16  wanted filled out.

17         So we've always pushed that the

18  securest -- most secure ballot a person can have is

19  one where they're able to handle it themselves.  You

20  take other people out of the equation and you'll do

21  a better job and it will give them their privacy.

22  So yeah, there are options we can do to give people

23  more accessible ballots.

24         The other part of it, someone like Susie,

25  that I talked about earlier, with her CP, she uses

42

1   switches and types with her nose.  It would be much

2   easier for her to fill out the whole mail-in ballot

3   doing it that way and putting her stamp on it than

4   trying to have someone else fill it out for her.

5        Q.   Do you know off the top of your head, and

6   it's okay if you don't, but is there a state that

7   has a system -- a program that you think would be a

8   great choice for Texas to have to do this?  Like is

9   there a model state?

10       A.   I can't -- I don't know off the top of my

11  head what state --

12       Q.   Because I noticed there were like

13  12 states mentioned, but I just didn't --

14       A.   Yeah, it's in that document.  I just

15  can't remember what state --

16       Q.   Do you know if they're all doing the same

17  thing or using the same program or if there's some

18  variation?

19       A.   The vendor, I think, gives them a

20  variation of which states want to do it and how they

21  want to do it.  But it's similar, if you think about

22  it, our military, we send an electronic copy

23  overseas to allow them to vote.  Is there really a

24  difference between our military and those who want

25  to mail -- do a mail-in ballot securely at home?

Coalition of Texans with Disabilities - 5/19/2020

43

1   There are options.

2       Q.    Do you know who the vendor is?

3       A.    I cannot remember the name of it.  I

4   think it might have been on that document.

5       Q.    All right.  So moving right along to

6   issues, Rally Every Legislative Session.  I imagine

7   that this takes up a lot of your work from January

8   through May of every odd-numbered year?

9       A.    Yeah.

10      Q.    Can you tell me a little bit about those

11  activities?

12      A.    So the majority of our time during a

13  legislative session is spent being there and being a

14  visual participant of it.  If you're not at the

15  table in any way, then someone else is making your

16  decisions for you.  So we have always felt the more

17  people we can get up there with disabilities that

18  signified those who are being served and let them

19  testify and let them speak to their legislators and

20  help them navigate the building, it's the most

21  important thing we can do.

22          We spend a lot of time educating

23  legislators on different issues, on when we see a

24  problem or what could be a problem, on trying to

25  help them improve different issues.  So we spend --

Coalition of Texans with Disabilities - 5/19/2020

44

1  the majority of our bulk of our time during that

2  period, that's all we do.  We don't work on

3  fundraising, we don't work on other projects, we

4  slowly try to keep our focus on what's going on

5  during the legislature and representing all Texans

6  with disabilities.

7      Q.   It looks like -- I mean, that seems to

8  fall under -- correct me if I'm wrong.  I'm not

9  trying to put words in your mouth -- but it kind of

10  seems to fall under both community organizing issues

11  rally and then advocacy with legislative hearings

12  attending and testifying?

13      A.   Yeah.  And usually with the issues

14  rallies, we try and host a big day where we have a

15  bunch of people in.  Usually we'll join up with a

16  different disability organization and work together

17  to bring in as many people as we can, find funding

18  to help bring them in because that's one of the

19  biggest issues, is a majority of them can't afford

20  to come speak to their representatives.  So we help

21  find stipends and different things.

22          We also make sure there's interpreters

23  there, if they're deaf and need to have someone

24  interpret for them.  We make sure there's people

25  there that can go into all the offices and help them

1 move chairs and furniture.  Most people don't

2 realize that many of those offices, you can't get

3 past the front desk.  And in a sense if you're there

4 to talk about something that affects you, let's say

5 urologicals and the funding stream that helps you

6 with the most intimate care, you don't want to talk

7 about that in an office full of people.  You want to

8 have the same right as anyone else to some privacy.

9 So sometimes it takes moving bookcases and shelves

10 and we have to make that happen or they have to find

11 another room where we can all go to give them some

12 privacy.

13          But the rallies are meant to kind of

14 bring everyone together to have that discussion.

15 Also to train them on different issues.  We now do a

16 lot of smaller ones too, just to try and help manage

17 the overall labor of running those.  So if we can't

18 get another organization to work with us in a

19 certain year, then we tend to usually do a smaller

20 one.

21     Q.    All right.  And I'm going to ask you, I

22 think, some more detailed questions about the

23 advocacy efforts.  So just so that we're not on this

24 document for too long, can you tell me -- let's move

25 over to the social entrepreneurship piece --

1      A.     Okay.

2      Q.     -- and CTD's activities in that space.

3      A.     Uh-huh.  So basically our way -- after

4   the last financial crisis, our boss started trying

5   to find ways to keep us afloat, partly because a lot

6   of the organizations that were grant funded found

7   themselves in a position where they couldn't go any

8   farther and they closed up shop.

9          So we started looking at ways we could

10  help produce income that would allow us to do the

11  advocacy work we were doing, but at the same time

12  use it as a way to train other people about

13  disability and how it affects us.  So it stays all

14  within our mission.

15         One of the programs we actually have is

16  CDS, consumer directed services, which is policy

17  that we worked on long ago.  And we are an FMSA, so

18  we're the financial management of this.  But

19  basically, a person in Medicaid who gets any care,

20  they want the person who comes in to help them get

21  dressed, that intimate connection used to only have

22  one option and that was an agency sending whoever

23  they had that day to come to your house, get you up,

24  get you dressed, take care of you that day whatever

25  you needed.  With CDS, it gave the consumer more

47

1  control.  It's the same funds, but it allows them to

2  do the hiring and firing.  They become the employer

3  and they get a little more control of their own life

4  so they can actually find someone.

5        It also allows them to pay their

6  attendant slightly more.  Texas pays the lowest

7  rate; the lowest paid attendants are 8.25 an hour.

8  So it's not always easy to find good help, when you

9  look at you can work at Chick-fil-A for $15 an hour

10  and get paid time off.  So a big chunk of that is

11  helping to make sure people have as much money as

12  they can to pay their attendant and then make sure

13  they get the care they need.  So we handle --

14  between their employer and their employee, we handle

15  the finance side of it.  We front the money and then

16  the State reimburses us and we get paid a small

17  percentage of each hour.  It's way less than what an

18  agency gets because that money goes into the

19  attendant's pay scale.  So that's one of the things

20  we started.

21        Q.    Yeah.  That makes a ton of sense.  I like

22  that a lot.

23        A.    Yeah, and it allows us to -- it's almost

24  like having our in-house lab, because we get to see

25  how it's working, how the programs are, where the

Coalition of Texans with Disabilities - 5/19/2020

48

1   flaws are and we work a lot with HHSC and the

2   Medicaid managed care programs to make sure people

3   are staying healthy.  Because that's the most

4   cost-effective way in our state to run healthcare,

5   is to keep people healthy first.  I believe we have

6   about 400 Medicaid consumers who are employers that

7   we handle their paperwork for and they have -- they

8   employ about 500 attendants.  So that's --

9        Q.    Just to be clear, when you're -- when you

10  say attendant, I generally know what you mean and

11  have a sense of what you mean, but it seems like it

12  has a kind of specialized definition in the

13  disability context, so I'm wondering if you can give

14  me kind of that definition.

15       A.    A personal care attendant is the person

16  who's coming into your home to handle all of your

17  healthcare needs, that's helping -- it can be

18  helping you make your food in the morning or at

19  lunch, helping feed you, helping dress you, helping

20  bathe you, getting you some medications and so just

21  that general basic care that you may not be able to

22  perform for yourself.  It's used to keep you in the

23  community and not in a institution, like a nursing

24  home, where we end up saving more and people stay

25  healthier and happier at home.

49

1      Q.    And is there any legislation setting --

2   do attendants have a specific minimum wage that's

3   higher than the regular minimum wage in Texas, or is

4   it just the Texas Minimum Wage Act and that's it?

5      A.    Well, in ours, it's Medicaid --

6      Q.    Oh, right.

7      A.    -- funds.  Yes.

8      Q.    Right.

9      A.    So it's the legislature who then decides

10  how much they want to put in and then it gets

11  divided out, but the lowest is 8.25.

12     Q.    All right.  Anything else on social

13  entrepreneurship, just at a high level?

14     A.    A big part of that too is like trainings

15  when managed care started.  We saw that as a perfect

16  opportunity.  Here all of a sudden we're swapping

17  over to these insurance companies who are going to

18  have their case managers and their service

19  coordinators that are going to be working with all

20  these people.  Well, they had to hire thousands of

21  people, but none of them had training on effective

22  interactions with someone with a disability.  They

23  actually didn't know what to say when they talked to

24  someone with a speech impairment or someone who is

25  deaf or when they were meeting with them.  You know,

1  don't go put your foot up on someone's wheelchair,

2  those kind of things.  And so we spent a couple

3  years training all over the state of Texas and

4  getting paid to do that, on how to teach their

5  service coordinators to effectively work with their

6  members.  It ended up becoming a good win for all of

7  us.  I think it was better care for their members

8  and it helped our members and it helped us.

9         So things like that, anywhere we can work

10  to improve things.  It could be also consulting for

11  accessibility.  We've worked with high-speed rail to

12  make sure that the newest rail program would be

13  fully accessible from the ground up.  We've worked

14  with architects in different fields and areas in

15  making sure accessibility is right.  Web access,

16  those kind of things.

17     Q.    Would you say that the bubbles on this

18  diagram can roughly correspond to the amount of --

19  the amount that CTD kind of focuses on each of these

20  activities?

21             MR. MIRZA:  Objection, form.

22             You can answer, Chase.

23     A.    I think to a point, yes.  But at the same

24  time, things in our world change dramatically.  One

25  bad policy may make us have to spend a whole lot of

Coalition of Texans with Disabilities - 5/19/2020

51

1   time in one area.  Other times, you know, we may

2   shift some of our bandwidth to something else that's

3   more important at the time.  There's not many

4   disability organizations that do the work we do.  So

5   sometimes we get spread really thin and we have to

6   choose those really important areas.  But for the

7   most part, I think, you know, this is a good

8   representation of what we do.  I think a lot of

9   times, though, I'm kind of shocked that we're able

10  to accomplish as much as we do and sometimes it's

11  all -- an all in one effort as fast as we can to hit

12  an area, but then others we work on for years.

13  BY MS. MACKIN:

14       Q.    Makes sense.

15            THE REPORTER:  Hey, Anna, when you

16  get to a point, I need a break.

17  BY MS. MACKIN:

18       Q.    I'm going to share a document with you.

19            THE REPORTER:  Anna, did you hear me?

20            MS. MACKIN:  I did not, I'm sorry.

21            THE REPORTER:  I need a break when

22  you get a chance.

23            MS. MACKIN:  Actually, this is a good

24  time to take a break.  Do we want to maybe take

25  five minutes?  Ten minutes?

1             MR. MIRZA:  That works.

2             MS. MACKIN:  Let's go off the record.

3             THE REPORTER:  We're off the record.

4             (Recess taken from 11:11 a.m. to

5  11:22 a.m.)

6  BY MS. MACKIN:

7      Q.    All right, Mr. Bearden.  I'm sending you

8  a document.  It is a document that was produced to

9  us as an Excel file at -- with Bates number CTD 58.

10  Please take the time you need to pull up and review

11  that document and let me know when you are ready to

12  discuss it.  And I will make this document Exhibit 4

13  to this deposition.

14             (Deposition Exhibit 4 marked for

15  identification.)

16      A.    Okay.

17  BY MS. MACKIN:

18      Q.    All right.  Do you recognize this

19  document?

20      A.    Yes.

21      Q.    And what is it?

22      A.    It is our -- one of our budgets.  2018,

23  let's see, 2019 budget.

24      Q.    Okay.  And just to see if we can go

25  through things a little bit more quickly, it looks

53

1  like this document also has a column for 2018.

2       A.    Yes.

3       Q.    Does -- do you know if this document

4  accurately reflects CTD's 2018 budget?

5       A.    I believe so.

6       Q.    All right.  Who prepared this document?

7       A.    Dennis.

8       Q.    And do you know when it was prepared?

9       A.    I do not.

10      Q.    All right.  Does it appear to be a true

11 and correct reflection of CTD's revenue and support

12 and expenses for 2018 and 2019?

13      A.    I believe so.

14      Q.    Okay.  So I just want to talk quickly

15 through the categories on this spreadsheet.  I note

16 that there is a grant from St. David's Foundation?

17      A.    Yes.

18      Q.    And can you tell me a little bit about

19 that grant.  Do you have to apply for it?  Do you

20 get it every year?

21      A.    Yes, we applied through St. David's

22 Foundation.  We were originally in the Texas State

23 Teachers Association building, renting for probably

24 two decades.  I think three years back, we moved and

25 purchased a building off of San Antonio Street and

54

1    we needed renovations done to the upstairs for our

2    CDS department that was growing.  That was the other

3    department we were talking about earlier that does

4    the attendant care, and keeping them all in one

5    area.  So we approached St. David's Foundation for a

6    grant to help fund doing the remodeling and we were

7    awarded it and that was a portion of what went into

8    remodeling the upstairs for that group.

9        Q.    And then there's a line below that that

10   says grants -- well, Grant - Other, consumer

11   stipends, Policy Fellow.  What other grants did CTD

12   receive that are reflected on this spreadsheet?

13       A.    Okay.  That would be from TCDD, Texas

14   Council on Developmental Disabilities.  We received

15   a policy fellow grant and it's to -- basically was

16   to stop the graying of the disability leadership in

17   Texas, mainly a majority of the disability

18   communities' leaders that have stayed in those roles

19   since the early '70s are getting to that point where

20   they want to retire and there weren't a lot of

21   people being prepared to be brought up, not just to

22   be a leader on their advocacy side but also in

23   running the businesses and maintaining funds, that

24   kind of thing.  So the idea of it was to start

25   developing more leadership.

55

1          We applied for one of them and we

2   received it.  It was originally a two-year grant and

3   I believe this was the second year we did it.  And

4   our fellow from the previous one stayed on with us

5   and actually trained the new fellow in a cessation

6   and then he left us and became the new executive

7   director of the Texas Autism Society.  So the grant

8   worked in the sense of what it was supposed to do,

9   create someone to fill a leadership role.

10          Some of the other grants, the stipends,

11  we applied for stipend grants through TCDD to help

12  bring people in for different events.  A lot of it's

13  going up to the capitol, those kind of things.

14     Q.    What is the DentaQuest grant?

15     A.    DentaQuest we've been working with on

16  dental in Medicaid, the adult.  There is no dental

17  program in Medicaid for adults.  We have it for

18  children to allow them teeth cleanings, x-rays,

19  those kind of things.  For adults the day you hit 22

20  and a day, you're no longer covered for dental.

21  You're only coverage is if your mouth -- if your

22  tooth is decayed and it's so bad you have to have

23  dental surgery in the ER.  So we were working with

24  them on a grant on educating people about dental

25  hygiene, how it plays a true role and effect on

1   their long-term health, not just for their teeth,

2   but higher cholesterol, higher chance of heart

3   attack, diabetes, all those different areas.  And we

4   worked with trying to have the legislatures see the

5   benefit of where we could save funds in the long

6   run.  So a big part of that was to help us really

7   spend time working on dental health.

8           Many of our members, you know, their big

9   thing is they want to get employed somewhere and

10  they show up for their interview and they're missing

11  most of their teeth.  And you already have a strike

12  when you show up in a chair, no matter what.  Then

13  they look at your teeth and they go, wow, they're

14  not willing to take care of their teeth, why would I

15  hire them.  And we run into that a lot.

16          So a big part of that is trying to help

17  give people that basic dental care they need.  It's

18  attending different conferences with DentaQuest,

19  talking to other dentists about how to help work

20  with people with disabilities when they're in the

21  dental chair.  So a big part of it is public

22  outreach and getting people to understand the

23  benefits of it.

24      Q.   I'm sorry, I forgot to ask this when we

25  were talking about the grant -- the St. David's

57

1    Foundation grant.  Was all of that money used for

2    the CDS space renovation?

3        A.    Yes.

4        Q.    And then the next line, the consumer

5    stipends and policy fellow, was all of that grant

6    used for that -- those projects that we talked

7    about?

8        A.    Actually, let me back up.

9              MR. MIRZA:  Objection, form.

10             You can answer, Chase.

11             THE WITNESS:  Okay.

12       A.    On the St. David's grant, yes.  There was

13   also a second grant at one point from St. David's

14   that helped with software developing for CDS.  I

15   don't think it's built in -- I don't think it's in

16   that one.  I think that might have been in 2017.

17             On the other one, the policy fellow, that

18   was all from TCDD.  Let's see.  Yeah, I believe

19   that's correct.

20   BY MS. MACKIN:

21       Q.    Okay.  That it was all used to fund the

22   policy fellow and stipends?

23       A.    Yes.

24       Q.    And then the DentaQuest grant, was all

25   that money used to fulfill the grant or was there

58

1  any that you could kind of put to other uses?

2      A.    No.  It was used to fulfill the grant.

3      Q.    Okay.  And then CDS revenue, is that the

4  revenue that y'all make for administering that

5  attendant program that we talked about earlier?

6      A.    That's the net revenue, yes.

7      Q.    Or did I misunderstand -- I'm sorry, I'm

8  not trying to put words in your mouth.  What does

9  CDS stand for?

10     A.    Consumer directed services.  And so we

11 front the money to pay the attendants each month and

12 then we're reimbursed on the backside by the HMO.

13     Q.    Got it.

14     A.    And Medicaid.

15     Q.    Okay.  So this is like the total

16 reimbursements that y'all received?

17     A.    Yes.

18     Q.    And Conference Sponsors, is that kind of

19 the money that you generated -- it seems pretty

20 straightforward, but the folks who sponsor your

21 conferences and their -- might get their insignia in

22 the program or what have you?

23     A.    Yeah.  That's mainly when we're running

24 programs and we're needing more funds to be able to

25 host them or to -- yeah, that's the sponsors getting

59

1  their name on it.

2       Q.    Do you know if all of the conference

3  sponsorship funds were used to fund conferences?

4              MR. MIRZA:  Objection, form.

5              You can answer, Chase.

6              THE WITNESS:  Oh, okay.

7       A.    We use the -- when we have leftover funds

8  from conferences, those funds go in our general

9  funds to help with advocacy.

10 BY MS. MACKIN:

11      Q.    Okay.  So there might have been some left

12 over here that went to advocacy or something like

13 that?

14      A.    Yeah.

15      Q.    Okay.  All right.  I see the next line is

16 Contributions and Donations.  Do you know if any of

17 the contributions or donations reflected here were

18 restricted to certain uses?

19      A.    No.

20      Q.    And then Special Events, what -- what

21 does that reflect?

22      A.    That reflects the film festival.

23      Q.    Okay.  And what are the consultant fees

24 used for?

25      A.    That can be -- oh, that's when we're

60

1   doing consulting for different organizations and

2   groups.

3        Q.   I see.  Okay.

4        A.   Yeah.

5        Q.   And then I see Interest and Other Income.

6   What -- besides interest, do you know if there is

7   another income source?

8        A.   I believe -- sorry.

9        Q.   No, please.

10       A.   I believe we have -- we've had stock

11   donations in the back in the past.  I think other

12   sources.  Not sure of any others versus that.

13       Q.   That's fine.  And looking down here on

14   the Expenses, rather than kind of make you talk

15   through each of them, because I think these are

16   pretty self-explanatory, I'm wondering if you can

17   identify from this document how much money CTD spent

18   on its voting-related work.

19       A.   I actually can't break that down.  We

20   basically roll everything in.  When you look at the

21   way we do our work, we're covering so many areas.

22   We don't narrow it down to each individual issue

23   area or else we would have 40 or 50 different small

24   accounts.  If it falls under advocacy and that's the

25   work we're doing, that's where we place it.  More of

Coalition of Texans with Disabilities - 5/19/2020

61

1 a general fund for that.

2 Q. Would your answer be the same with

3 respect to the other budgets from other years?

4 A. Yes.

5 Q. Okay. I'm showing you a document that I

6 will make Exhibit 5 to this deposition.

7 (Deposition Exhibit 5 marked for

8 identification.)

9 BY MS. MACKIN:

10 Q. Please take the time you need to pull up

11 that document and review it and then let me know

12 when you're ready to discuss it.

13 (Witness reviews document.)

14 A. Okay.

15 BY MS. MACKIN:

16 Q. All right. This document is marked

17 CTD 26 through 27. Do you recognize this document?

18 A. Yes.

19 Q. And what is it?

20 A. This is one of our newsletters.

21 Q. Okay. How was this document distributed?

22 A. Electronically.

23 Q. Okay. And who is it sent to?

24 A. It goes out to our members and our member

25 organizations.

62

1     Q.    And do you know if it was distributed any

2  other way?

3     A.    I mean, it might have been put on

4  Facebook as a link to it.

5     Q.    Okay.

6     A.    I'm not sure.

7     Q.    Do you know -- do you know when this

8  document was distributed?  And it's okay if you

9  don't.  I'm just asking because I couldn't find a

10  date on it.

11     A.    It has a date at the top left, but that

12  might have been when it was pulled up.  I don't

13  actually know.  I mean, we have ways of logging onto

14  our system.  Our newsletters are all on the website.

15  We could go to that and get you the exact date it

16  went out.

17     Q.    That's all right.  No problem.  Do you

18  know how much -- do you know if it's possible to

19  break down how much it costs CTD to send out this

20  newsletter?

21     A.    We don't have a breakdown of that.

22  Usually we -- we have a communications director and

23  staff, we meet, we have to pull things together,

24  make sure we've researched it, reach out to others

25  when these are going out.  So staff time, salaries,

Coalition of Texans with Disabilities - 5/19/2020

63

1  paying for subscriptions to have this and maintain

2  the database, but no, we don't keep the cost per

3  item.

4        Q.    I want to talk through -- down at the

5  bottom, it looks like it talks at methods of

6  voting --

7        A.    Uh-huh.

8        Q.    -- in Texas.  And it lists kind of two

9  methods for voting at the polls, one being

10 independently, with an accessible voting machine;

11 and then the second one being, at an accessible

12 voting machine with assistance of a person's

13 choosing, as long as they're not an election worker

14 or their employer.

15              Is it your understanding that those two

16 methods of voting at the polls are still available

17 in Texas?

18       A.    I believe so, yes.

19       Q.    Okay.  And then moving down to -- under

20 the heading Alternative Methods of Voting, it

21 mentions curbside voting and also voting by mail for

22 voters over 65 or voters who have a disability.

23              Is it your understanding that those two

24 methods of voting are still available in Texas?

25                   MR. MIRZA:  Objection, form.

64

1          You can answer, Chase.  I think you

2  already did, but you can answer.

3      A.    Yes.

4  BY MS. MACKIN:

5      Q.    Okay.  I want to talk a little bit

6  more -- that's all the questions that I have on this

7  exhibit.

8          I want to talk a little bit more about --

9  we touched on this earlier, but I'm looking at

10  paragraph 82 of the complaint.  It says that CTD

11  wants the defendants to, you know, provide a way for

12  voters, who are disabled and cannot vote in person

13  and due to their disability cannot sign matching

14  signatures, an opportunity to vote that is equal and

15  equally effective as that opportunity provided to

16  others.

17          And so what would that -- what would that

18  look like?

19              MR. MIRZA:  Objection, form.

20      A.    At the end of the day --

21              MR. MIRZA:  Objection, form.

22              You can answer, Chase.

23      A.    At the end of the day, I think the State

24  of Texas and the counties, all giving the people the

25  right to cure a ballot, if the current program stays

1  in place and your ballot is thrown out because

2  you're unable to sign exactly the same each time by

3  people who are chosen to look at signatures and you

4  don't get a letter until ten days later, you don't

5  get the right to have your vote counted.  So finding

6  a way that's reasonable, that gives everyone that

7  opportunity to come in and fix their ballot or to

8  say yes, that was me who signed that, I think it's

9  not only the right thing to do, it's the

10  constitutional thing to do.  We shouldn't be

11  throwing out ballots that should be counted and we

12  should make an effort to consider those as being

13  true ballots and votes.  We've always said

14  everyone's vote matters.  When it's set aside

15  because someone has looked at it because of a

16  signature and in their opinion it doesn't fit and we

17  don't do anything about actually trying to confirm

18  that, it's independently being confirmed by other

19  people, but no one is actually reaching out to that

20  person, then that person's vote isn't being counted.

21  So finding a way to reasonably allow a person to be

22  notified and give them the chance to either cure it

23  or to stop using -- throwing out ballots in that

24  way.

25  BY MS. MACKIN:

1     Q.    Do you know if any CTD member has had a

2  mail-in ballot rejected because of a signature

3  mismatch?

4     A.    I do not.

5     Q.    Do you know if CTD has ever assisted any

6  voter after their ballot was rejected for a

7  signature mismatch?

8              MR. MIRZA:  Objection to form.

9              You can answer, Chase.

10     A.    No.

11  BY MS. MACKIN:

12     Q.    I want to talk a little bit about the

13  witness process.  We've discussed it a little bit,

14  but I want to understand more how it impacts CTD and

15  CTD's mission.  You know, is it your understanding

16  that if a voter is unable to mark their ballot or

17  sign their name, and I'm talking about a mail-in

18  ballot, that they can have a witness mark the ballot

19  and sign it for them?

20              MR. MIRZA:  Objection, form.

21              You can answer, Chase.

22     A.    Yes.  And if a witness signs it, at the

23  same time that takes away the person's ability to

24  have that private ballot.  Also people will have a

25  hard time finding witnesses who are willing to sign

Coalition of Texans with Disabilities - 5/19/2020

67

1  that.  Also if you have more than one person living

2  in a home and you find one witness, or in a nursing

3  facility, that person's only witness might be

4  someone who works there along with others.  That

5  person can only legally sign it for one person.  So

6  that creates an even harder burden on someone to

7  find a witness.  It also allows a person to look at

8  how you're voting.  A person's signature should

9  count no matter what, no matter what the mark is if

10  that's how they sign.

11        You're never -- when I was first injured

12  and I had no use of my arms and I could barely

13  wiggle a pen, changing a pen was enough.  Changing

14  the paper -- or the angle was enough to change my

15  signature.  At the last election that I went in and

16  I had to fill out my -- sign my name on the new

17  electronic poll book, they could -- had all the

18  wires tangled up so they couldn't get it close

19  enough for me to sign and they said just make a

20  mark.  Well, that goes into the system, that then

21  gets counted the next time I sign my ballot and mail

22  it in, that could be one of the signatures used to

23  compare and that was told to me by a poll worker,

24  that didn't matter.

25        So I made them move it all so I could

68

1    actually get to it and sign it as closely as I

2    could.  I think we have to make sure that people's

3    signatures count no matter how they do it and give

4    them the best reasonable way of doing it without

5    having to use a witness if they don't need it.  They

6    may need assistance.  That's the option that needs

7    to be there.  But it shouldn't be the go-to method

8    on a way to make it easier on the state to have to

9    deal with it.  If a person wants -- if their

10   signature doesn't look the same every time, that's

11   their signature.

12   BY MS. MACKIN:

13       Q.   You would agree with me, though, that if

14   an individual who is disabled gets transportation to

15   the polls, that they are able to vote using an

16   accessible machine that allows them to cast a

17   private ballot?

18             MR. MIRZA:  Objection, form.

19             You can answer, Chase.

20       A.   I would say most of the time.  Not

21   always.

22   BY MS. MACKIN:

23       Q.   Okay.  Under what circumstances would

24   somebody not be able to do that?

25       A.    If they get there and the poll workers

 1   don't know how to set up the accessibility, the

 2   parts are missing for it; it can be as simple as the

 3   new machines were placed too high.  At the last

 4   election, it was accessible if it was down lower,

 5   but they put them on all new tables.  So there's

 6   still things that can create inaccessibility.  A lot

 7   of times that can be corrected and fixed with

 8   training.  But a majority of people who can make it

 9   to the polls, yes, they can vote independently or

10   with the least amount of assistance as possible.

11           But let me add one thing.  That requires

12   the system doing what it was supposed to at the

13   beginning to make it accessible.  So I think when

14   you have those times when it doesn't work, it's

15   because there was a breakdown in the system at the

16   polling site.

17       Q.   Do you know if CTD intends to -- strike

18   that actually.

19           MS. MACKIN:  I actually do not think

20   that I have any more questions for you.  I may

21   follow up in a little bit after the other attorneys

22   have had a turn, but that is all I have for now and

23   I appreciate your time very much.  And I will pass

24   the witness.

25           THE WITNESS:  Thank you, Anna.

1        MR. MIRZA:  Isaac and Eric, do y'all

2   want -- if you have any questions, do y'all want to

3   go first?  Do y'all want to take a break now?  What

4   works for y'all?

5              THE REPORTER:  Can we take a short

6   break?

7              MR. MIRZA:  Sure.  Let's take a

8   ten-minute break.

9              MR. MAGEE:  This is Eric.  I don't

10  think I need that long, you know, for questioning.

11  I just want to review my notes real quick and then I

12  will let you know at the ten-minute break.

13             MR. MIRZA:  Okay.  Great.  Sounds

14  good.  We'll be back in ten minutes.

15             THE REPORTER:  We're off the record.

16             (Recess taken from 11:53 a.m. to

17  12:07 p.m.)

18             MR. MAGEE:  I'm going to pass the

19  witness at this time.

20             MR. TAWIL:  I too am going to pass

21  the witness at this time.  This is Isaac.

22             MR. MIRZA:  I'm going to pass the

23  witness as well.  And if there are no more questions

24  for today, reserve mine too.

25             MS. MACKIN:  Actually, I'd like to

1    just explore one more quick thing.

2              MR. MIRZA:   Okay.

3                    FURTHER EXAMINATION

4    BY MS. MACKIN:

5        Q.    I just want to talk a little bit more

6    about how the Coalition of Texans With Disabilities

7    trains voters on voting by mail.  How does the

8    Coalition of Texans With Disabilities train voters

9    on voting by mail, specifically?

10       A.    So if it -- we're at a conference and

11   we're talking about trainings or we're talking about

12   voting and we walk people through, you know, all the

13   different options out there, it's usually just

14   speaking to the people back and forth.  Also by just

15   trying to put out reminders and documents.  I know

16   now we do, but within our e-mails going out and

17   our -- like any kind of Facebook message about

18   mail-in ballots if you're going to do it and to make

19   sure to try your best to make sure your signature

20   matches as close as possible.  That way people

21   realize that's an issue.  Because for many of them,

22   it's someone holding a piece of paper for them.  I

23   use both hands to sign things, so I actually put my

24   iPhone on top of papers to hold it so I can write,

25   so many times my writing looks different.

1           But I -- you know, I try and make sure

2   every time I sign something, I sign it the correct

3   way, no matter what, or as close as possible.  But

4   for us in trainings, you know, it's just trying to

5   get in front of people and talking to them.  The

6   virtual Raise Your Voice programs that we're

7   planning for -- starting in July, around the ADA

8   30th anniversary, we'll have a voting segment in

9   there and we will actually talk about it, discuss

10  all the options of mail-in ballots, why their

11  signature really needs to have focus.  But also all

12  the ins and outs of what parts of the form to fill

13  out, when do they got to be there.  It's complex.

14  Especially someone being in a hospital like I had at

15  the last election.  I broke my leg and ended up in

16  the hospital for a month, thought I was going to be

17  voting ahead of time at a polling site and I tried

18  to do the mail-in ballots and ran into all kinds of

19  issues of trying to get it to them.  So it's not as

20  easy.

21       Q.    So does -- and I think I know the answer

22  based on what you just said, but does the Coalition

23  of Texans With Disabilities intend to continue

24  training voters on voting by mail?

25       A.    Yes.  Yes.

Coalition of Texans with Disabilities - 5/19/2020

73

1     Q.    And then one last thing.  The complaint

2   says that there are members on whose behalf the CTD

3   is suing.  How many members are you suing on behalf

4   of?

5               MR. MIRZA:  Objection, form.

6               You can answer, Chase.

7     A.    So I would say any and every one of our

8   members that this would affect.  And I think

9   something that gets forgotten is not just our

10  membership, we always represent all Texans with

11  disabilities, their family members.  It's -- our

12  sole purpose is to make sure they continue to have

13  access even if they don't know that issue is there.

14  So it's all Texans with disabilities is who we

15  really want to ensure have that access, along with

16  everyone else.

17               But at the end of the day, also to follow

18  up on -- sorry, that last question you said, we will

19  continue to do mail-in ballot training just to

20  remind people that that option's out there, because

21  not everyone uses it each time.  But at the same

22  time, if we do find a way to cure this and the

23  signature issue, that's one less thing I have to

24  work on making sure they understand in the midst of

25  a lot of information in one day they usually

1    receive.  That allows me to move on to the next

2    issue that we're dealing with; be it attendant

3    wages, transportation, education.  So every little

4    thing we fix, you know, we allow people access to,

5    moves us to the next step of something we need to

6    accomplish.

7    BY MS. MACKIN:

8        Q.    This is not a suggestion that you should

9    have done this, because I know that, you know,

10   you've expressed that there are -- you have some

11   concerns about the process, but I'm just curious as

12   to whether CTD has dedicated any resources to try

13   and help folks who can't get to the polling place in

14   person, get a witness for their mail-in ballot?

15               MR. MIRZA:  Objection, form.

16               You can answer.

17       A.    No.

18   BY MS. MACKIN:

19       Q.    That's fair.  That was all I --

20       A.    Actually, let me back up and say, with

21   Susie and Juan, they did ask me about a witness,

22   their witness that they had chosen.  So I did talk

23   them through it.  We have talked to people about --

24   we don't send witnesses out.  We don't do any of

25   that.  We try and help them understand it so that

1  they can ask people around them.

2            MS. MACKIN:  Well, that is all I have

3  and I actually hope to -- maybe I will see you

4  around the capitol next session.

5            THE WITNESS:  Definitely.

6            MS. MACKIN:  Nice visiting with you.

7            MR. MIRZA:  I have a few questions,

8  if that's okay.

9                    EXAMINATION

10  BY MR. MIRZA:

11      Q.    Chase, can you name some of the -- let me

12  scratch that.

13            So you named three members you spoke to

14  earlier in the deposition, correct?

15      A.    Yes.

16      Q.    Can you rename those individuals?

17      A.    Rene Lopez, Gloria Angel and Juan Munoz.

18      Q.    And Rene Lopez, is she a member of CTD?

19      A.    Yes.

20      Q.    Is she planning to vote by mail in the

21  future?

22      A.    Yes.  Yes.

23      Q.    In the next election?

24      A.    Yes.

25      Q.    And how is she eligible to vote by

76

```
 1  mail --

 2       A.    She has --

 3       Q.    -- to your understanding?  Can you say

 4  that again?

 5       A.    She has a significant disability, impairs

 6  part of her arms and her legs, similar to me.

 7       Q.    And, Chase, are you a member of CTD?

 8       A.    Yes.

 9       Q.    Are you planning to vote by mail in the

10  next election?

11       A.    Yes.

12       Q.    And based on what eligibility?

13       A.    Disability.

14             MR. MIRZA:  I think that's

15  everything.  Pass the witness.  And if there are no

16  other questions, I reserve my time.

17             MR. MAGEE:  I think I have a couple

18  of questions real quick just based on that.

19                    EXAMINATION

20  BY MR. MAGEE:

21       Q.    Mr. Bearden, my name is Eric Magee and I

22  represent the Brazos County Elections Administrator,

23  Trudy Hancock, in her official capacity.  You

24  understand that she's also being sued in this

25  lawsuit?
```

Coalition of Texans with Disabilities - 5/19/2020

77

```
1        A.    Yes.

2        Q.    Are you a registered voter in Brazos

3   County?

4        A.    No.

5        Q.    What about Rene Lopez?

6        A.    No.

7        Q.    And Gloria Angel, is she a registered --

8        A.    No.

9        Q.    And Juan Munoz, is he a registered voter

10  in Brazos County?

11       A.    No.

12       Q.    Okay.  So earlier when you testified that

13  you knew of no members of the coalition that had had

14  a ballot rejected for signature reasons, that

15  includes you know of no members in Brazos County; is

16  that correct?

17       A.    That's correct.

18             MR. MIRZA:  Objection, form.

19             You can answer, Chase.

20       A.    That's correct.

21             MR. MAGEE:  I don't think I have any

22  other questions.

23             THE REPORTER:  Transcript orders?

24             MR. TAWIL:  Good afternoon, sir.

25  Sorry, couldn't get the unmute button clicked.
```

78

1                    EXAMINATION

2  BY MR. TAWIL:

3       Q.    My name is Isaac Tawil.  I represent

4  Perla Lara in her capacity as the city secretary of

5  the City of McAllen.  You understand she's being

6  sued in this lawsuit?

7       A.    Yes.

8       Q.    Any of the individuals you mentioned in

9  response to Mr. Magee's questions, do any of them

10 vote in McAllen elections, McAllen city elections?

11      A.    No.

12            MR. TAWIL:  I have no further

13 questions.  I will pass the witness.

14            MR. MIRZA:  I have no further

15 questions.

16            MS. MACKIN:  All right.  We can go

17 off the record.

18            THE REPORTER:  Transcript orders,

19 please.

20            MR. MIRZA:  We'd like a copy, the

21 plaintiffs.  And we'd like to -- actually, I don't

22 know if we have to do this on the record or not, but

23 we'd like to read and sign as well.

24            MS. MACKIN:  You do have to do it on

25 the record, but I'm not going to object because the

Coalition of Texans with Disabilities - 5/19/2020

79

1  witness was so nice today.

2                 MR. MIRZA:  Is that okay with y'all,

3  Eric and Isaac?

4                 MR. MAGEE:  That's okay.

5                 MR. TAWIL:  That's okay with me.

6                 MR. MIRZA:  Okay.

7                 MR. TAWIL:  You have the right to

8  read and sign.

9                 MR. MIRZA:  Yeah.

10                 MR. TAWIL:  City of McAllen would

11 like a copy, please.  E-Transcript is great.

12                 MR. MAGEE:  Same thing with Brazos

13 County.

14                 MS. CHRISTOPHER:  Does anybody need a

15 video copy?

16                 MR. TAWIL:  I do not.

17                 MR. MAGEE:  Neither do I.

18                 MS. CHRISTOPHER:  That's good.  Thank

19 you.

20                 MS. MACKIN:  All right.

21                 THE WITNESS:  Thank you.

22                 THE REPORTER:  Off the record.

23                 (Deposition concluded at 12:19 p.m.)

24

25

1                    CORRECTIONS AND SIGNATURE

2     PAGE/LINE       CORRECTION              REASON FOR CHANGE

3     _____

4     _____

5     _____

6     _____

7     _____

8     _____

9     _____

10    _____

11    _____

12    _____

13    _____

14    _____

             I, CHASE BEARDEN, have read the foregoing
15    deposition and hereby affix my signature that same
      is true and correct except as noted herein.
16

17           _____
             CHASE BEARDEN
18
      STATE OF _____  )
19    COUNTY OF _____   )

20           Subscribed and sworn to before me by the
      said witness, CHASE BEARDEN, on this the _____
21    day of _____, 2020.

22
                       _____
23                     NOTARY PUBLIC IN AND FOR
                       THE STATE OF_____
24

25    My Commission Expires: _____

81

1                REPORTER'S CERTIFICATION

2

3        I, Micheal A. Johnson, Registered Diplomate

4    Reporter, Certified Realtime Reporter and Notary

5    Public in and for the State of Texas, certify that

6    on the 19th day of May, 2020, I reported the Remote

7    Oral Deposition of CHASE BEARDEN, after the witness

8    had first been duly cautioned and sworn to testify

9    under oath; said deposition was subsequently

10   transcribed by me and under my supervision and

11   contains a full, true and complete transcription of

12   the proceedings had at said time and place; and that

13   reading and signing was requested.

14        I further certify that I am neither counsel

15   for nor related to any party in this cause and am

16   not financially interested in its outcome.

17        GIVEN UNDER MY HAND AND SEAL of office on

18   this 29th day of May, 2020.

19

20

21   _____
     MICHEAL A. JOHNSON, RDR, CRR
22   NCRA Registered Diplomate Reporter
     NCRA Certified Realtime Reporter
23
     Notary Public in and for the
24   State of Texas
     My Commission Expires:  8/8/2020
25

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| DR. GEORGE RICHARDSON, ROSALIE WEISFELD, AUSTIN JUSTICE COALITION, COALITION OF TEXANS WITH DISABILITIES, MOVE TEXAS CIVIC FUND, LEAGUE OF WOMEN VOTERS OF TEXAS, and AMERICAN GI FORUM OF TEXAS, INC.,<br><br>     *Plaintiffs,*<br><br>v.<br><br>TEXAS SECRETARY OF STATE, TRUDY HANCOCK, IN HER OFFICIAL CAPACITY AS BRAZOS COUNTY ELECTIONS ADMINISTRATOR, AND PERLA LARA IN HER OFFICIAL CAPACITY AS CITY OF MCALLEN, TEXAS SECRETARY,<br>     *Defendants.* | § § § § § § § § § § § § § § § § § § § § | No. 5:19-cv-00963 |

**DEFENDANT SECRETARY OF STATE'S NOTICE OF ORAL DEPOSITION PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30**

TO:    Coalition of Texans with Disabilities, by and through its attorneys of record, Hani Mirza, Zachary D. Dolling, Beth Stevens, and Ryan Cox, Texas Civil Rights Project, 1405 Montopolis Drive, Austin, Texas 78741; and Richard Mancino, Jennifer Hardy, Joanna Suriani, Willkie Farr & Gallagher LLP, 1875 K Street, N.W., Washington, DC 20006.

Defendant Texas Secretary of State hereby notices the deposition upon oral examination of Coalition of Texans with Disabilities "CTD," including all subsidiaries, DBAs, and aliases, beginning at **10:00 AM** on, **Tuesday**, **May 19, 2020** and continuing from day to day until complete. The deposition will be held virtually via Zoom videoconference and will be transcribed and videotaped by a certified court reporter and videographer designated by Defendant. Defendant reserves the right to

1



Exhibit
Chase Bearden
1
5/19/2020   MJ

use the deposition for any purpose permitted under the Federal Rules of Civil Procedure or Federal Rules of Evidence.

Pursuant to Federal Rule of Civil Procedure 30(b)(6), CTD is directed to designate one or more officers, directors, managing agents, or other persons who will testify on CTD's behalf regarding all information known or reasonably available to CTD with respect to the matters set forth in **Attachment A**.

Pursuant to Federal Rules of Civil Procedure 30(b)(2) and 45, CTD is also requested to produce at least 24 hours before the videoconference deposition, all documents in response to the subpoena duces tecum in **Attachment B**.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

RYAN L. BANGERT
Deputy First Assistant Attorney General

DARREN L. MCCARTY
Deputy Attorney General for Civil Litigation

THOMAS A. ALBRIGHT
Chief for General Litigation Division

*/s/ Anne Marie Mackin*
ANNE MARIE MACKIN
Texas Bar No. 24078898
Assistant Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2798 | FAX: (512) 320-0667
anna.mackin@oag.texas.gov

2

**ATTORNEYS FOR DEFENDANT**
**TEXAS SECRETARY OF STATE**

**CERTIFICATE OF SERVICE**

I certify that that on May 14, 2020 this notice was served upon counsel listed below via email.

**Hani Mirza**
hani@texascivilrightsproject.org
**Zachary D. Dolling**
zachary@texascivilrightsproject.org
**Rebecca Harrison Stevens**
beth@texascivilrightsproject.org
**Ryan V. Cox**
ryan@texascivilrightsproject.org
**Samuel Kalar**
skalar@willkie.com
**Joanna Suriani**
jsuriani@willkie.com
**Eric Magee**
e.magee@allison-bass.com
**Isaac J. Tawil**
itawil@mcallen.net
**Austin Stevenson**
astevenson@mcallen.net
**C. Robert Heath**
bheath@bickerstaff.com
**Gunnar P. Seaquist**
gseaquist@bickerstaff.com

*/s/Anne Marie Mackin*
ANNE MARIE MACKIN
Assistant Attorney General

3

## DEFINITIONS

The terms below are used in this notice as follows:

1. "Coalition of Texans with Disabilities," "CTD," "you," "your," or "yours" mean League of Women Voters of Texas (a plaintiff in this Lawsuit) and anyone acting or purporting to act on their behalf with respect to any matter inquired about herein, including without limitation representatives, employees, or agents.

2. "Austin Justice Coalition," or "AJC," means Austin Justice Coalition (a plaintiff in this Lawsuit), and anyone acting or purporting to act on its behalf with respect to any matter inquired about herein, including without limitation representatives, employees, or agents.

3. "League of Women Voters," "LWV," or "LWVTX," means League of Women Voters of Texas (a plaintiff in this Lawsuit) and anyone acting or purporting to act on their behalf with respect to any matter inquired about herein, including without limitation representatives, employees, or agents.

4. "MOVE Texas Civic Fund," "MOVE Texas," or "MOVE" means MOVE Texas Civic Fund (a plaintiff in this Lawsuit), and anyone acting or purporting to act on its behalf with respect to any matter inquired about herein, including without limitation representatives, employees, or agents.

5. "Individual Plaintiffs" means Dr. George Richardson and Ms. Rosalie Weisfeld, natural persons who are plaintiffs in this lawsuit, and anyone acting or purporting to act on their behalf with respect to any matter inquired about herein, including without limitation representatives, employees, or agents.

6. "Organizational Plaintiffs" means AJC, CTD, MOVE, and LWVTX, and anyone acting or purporting to act on their behalf with respect to any matter inquired about herein, including without limitation representatives, employees, or agents.

7. "Plaintiffs" means the Individual Plaintiffs and the Organizational Plaintiffs.

8. "Person" means the plural as well as the singular and includes: natural persons, corporations, firms, associations, partnerships, joint ventures, trusts, estates, or any other form of legal entity; and governmental agencies, departments, units, or subdivisions thereof.

4

9. "SOS" means the Defendant Texas Secretary of State, in her official capacity, including without limitation representatives, employees, agents, or officers acting on her behalf with respect to any matter inquired about herein.

10. "Defendants" means SOS; Trudy Hancock, in her official capacity as Brazos County Elections Administrator; and Perla Lara, in her official capacity as City of McAllen, Texas, Secretary.

11. "Lawsuit" means the case styled, *Dr. George Richardson, et. al. v. Texas Secretary of State, et al.*, civil action no. 5:19-cv-00963 in the United States District Court for the Western District of Texas, San Antonio Division.

12. "Complaint" means your live pleading in this case—as of service of these discovery requests, the document entitled "Plaintiff's Original Complaint," filed in this Lawsuit on August 7, 2019 (Dkt. 1).

13. "Communication" means any manner or means of disclosure, transfer, or exchange of information, whether oral, written, in-person, telephonic, electronic, digital, mailed, or otherwise.

14. "Document" includes all writings of every kind, source and authorship, both originals and all non-identical copies thereof including handwritten, typewritten, printed, photocopied, photographic, or electronically recorded matter. For purposes of illustration and not limitation, the term shall include: emails, Facebook postings, social media postings, letters, journals, diaries, bank statements, charts, Excel spreadsheets, handwritten notes, affidavits, schedules, workpapers, audio recordings, video recordings, transcriptions, contracts, agreements, and memoranda of any kind.

15. "Relating to" means in any way concerning, constituting, analyzing, discussing, describing, considering, modifying, amending, confirming, endorsing, evidencing, representing, supporting, substantiating, qualifying, negating or refuting, unless qualified by word of limitation.

16. The singular includes the plural and vice versa.

17. The masculine gender includes the feminine and vice versa.

18. All other terms are to be interpreted in accordance with their normal usage in the English language.

5

## Attachment A

### 30(B)(6) CORPORATE REPRESENTATIVE DEPOSITION TOPICS

1. Your mission.

2. Your organization, including your organizational structure, employees, physical assets, parent and sibling entities, tax status, and history; the services that you provide, and the activities you perform.

3. The activities on which you have spent funds or to which you have dedicated resources in Texas between January 1, 2017 and the present.

4. Your members on whose behalf you seek to maintain this lawsuit.

5. The allegations you make in your Complaint and the factual bases therefor.

6. The relief that you contend would remedy the claims you make in this lawsuit.

7. The documents produced in response to

   a. the subpoena duces tecum described in Attachment B, and;

   b. Defendants' Requests for Admission, Interrogatories, and Requests for Production in this cause.

6

## **Attachment B**

To the extent not already produced by you in response to the Secretary of State's discovery requests in this cause, produce the following:

1. Documents sufficient to substantiate the factual allegations you make in your Complaint.

2. All communications between you and any person to assist them in voting by mail in Texas.

3. Documents sufficient to show all information described and/or requested in 30(b)(6) deposition topic numbers 2, 3, 4, and 5 in Attachment A to this notice.

4. To the extent not already provided in response to items 1-3 above, all documents reviewed in preparation for your deposition.

If documents responsive to these categories have already been produced in discovery, the witness is expected to be able to identify those documents by bates numbers.

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| DR. GEORGE RICHARDSON, ROSALIE WEISFELD, AUSTIN JUSTICE COALITION, COALITION OF TEXANS WITH DISABILITIES, MOVE TEXAS CIVIC FUND, LEAGUE OF WOMEN VOTERS OF TEXAS, and AMERICAN GI FORUM OF TEXAS, INC., | § § § § § § § § |
| *Plaintiffs* | § § |
| v. | § § |
| TEXAS SECRETARY OF STATE, TRUDY HANCOCK, in her official capacity as BRAZOS COUNTY ELECTIONS ADMINISTRATOR, and PERLA LARA in her official capacity as CITY OF MCALLEN, TEXAS SECRETARY, | § § § § § § § |
| *Defendants.* | § § § |

Civil Case No. 5:19-cv-00963

## PLAINTIFFS' ORIGINAL COMPLAINT

Plaintiffs, Dr. George Richardson, Rosalie Weisfeld, Austin Justice Coalition, Coalition of Texans with Disabilities, MOVE Texas Civic Fund, League of Women Voters of Texas, and American GI Forum of Texas, Inc., file this Original Complaint seeking declaratory and injunctive relief pursuant to 42 U.S.C. § 1983 and the United States Constitution. Plaintiff Coalition of Texans with Disabilities additionally seeks declaratory and injunctive relief pursuant to Title II of the Americans with Disabilities Act and the Rehabilitation Act of 1973.

**I.**
**THE NATURE OF THE CASE**

1.     The right to vote is a precious and fundamental political right that is preservative of all other rights. By definition, it includes the right of qualified voters within a state to cast their



Exhibit
Chase Bearden
2
5/19/2020   MJ

ballots and have them counted. But Texas unlawfully rejects the duly signed mail-in ballots of thousands of eligible voters every major election. Indeed, Texas counties rejected at least 1,873 mail-in ballots during the 2018 General Election and at least 1,567 mail-in ballots during the 2016 General Election solely on the basis of mismatching signatures. *See* Ex. A.

2.     Texas offers the opportunity to vote by mail to voters who are outside of their county during elections, voters with disabilities, voters 65 years-of-age or older, and voters confined in jail but otherwise eligible to vote.[1] Even though Texas' mail-in ballot process should make voting easier for voters from these underrepresented groups, the current flawed process leads to the unlawful disenfranchisement of these Texas voters. Specifically, current rules authorize untrained local election officials to arbitrarily and subjectively reject mail-in ballots if officials believe, based on their own layman analysis, that the signature on a ballot is not in fact the voter's signature. No advance notice is given to voters before their vote is rejected, and the decision to reject a mail-in ballot is final.

3.     For example, during the 2018 General Election, Brazos County rejected the mail-in ballot of Plaintiff Dr. George Richardson—a doctor whose signature has been used to prescribe countless medications—on the basis of a signature mismatch. The county gave him no notice of its decision until after the election, notwithstanding the fact that Dr. Richardson would have confirmed that it was his signature on the mail-in ballot if so asked. When Dr. Richardson confronted Brazos County officials, they told him that they had "eye-balled" his signature to determine it was not his.

---

[1] "A qualified voter is eligible for early voting by mail if, at the time the voter's early voting ballot application is submitted, the voter is confined in jail:
    (1) serving a misdemeanor sentence for a term that ends on or after election day;
    (2) pending trial after denial of bail;
    (3) without bail pending an appeal of a felony conviction;  or
    (4) pending trial or appeal on a bailable offense for which release on bail before election day is unlikely."
Tex. Elec. Code § 82.004(a)

4.      Similarly, during a city run-off election in 2019, the City of McAllen rejected Plaintiff Rosalie Weisfeld's mail-in ballot on the same basis. To her recollection, Ms. Weisfeld has voted in every primary, city, bond, constitutional, school district, county, runoff, water district, and general election for the last 30 years. Ms. Weisfeld would have confirmed that the signature was hers had she been asked. Yet, the City of McAllen gave her no notice of the rejection until after the election.

5.      Because Texas' mail-in ballot process fails to provide uniform standards for signature comparison, deprives voters of the ability to cure ballots questioned for an alleged signature mismatch, and fails to require meaningful pre-rejection notice to voters with ballots questioned for an alleged signature mismatch, the mail-in ballot process violates both the Equal Protection Clause and the Due Process Clause of the Fourteenth Amendment to the United States Constitution on its face and as applied to all Plaintiffs, including Dr. Richardson and Ms. Weisfeld. U.S. CONST. amend. XIV, § 1.

6.      For these same reasons, Texas' mail-in ballot process also violates Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12131, *et seq*., and the Rehabilitation Act of 1973 (RA), 29 U.S.C. § 794.3, with respect to voters who cannot sign matching or sufficiently similar signatures due to a disability. Defendants' refusal to reasonably accommodate this group of mail-in ballot voters with disabilities—either by allowing them to contest and cure a ballot rejected for signature mismatch or by not applying the signature comparison requirements to their ballots—discriminates against said voters and excludes them from participation in and unfairly denies them the benefits of the mail-in ballot process.

7.      Plaintiffs, therefore, respectfully request this court enter a declaratory judgment invalidating Texas' signature comparison procedure, as laid out in Texas Election Code §§

3

87.041(b)(2), (e), and (f), for violating the United States Constitution, the ADA, and the RA. Plaintiffs further request a permanent injunction enjoining Defendants from implementing Texas Election Code §§ 87.041(b)(2), (e), and (f) or, in the alternative, requiring that Defendants (1) provide voters meaningful notice prior to the rejection of a mail-in ballot and (2) offer voters the ability to cure a mail-in ballot questioned for an alleged signature mismatch.

## II.
## JURISDICTION AND VENUE

8.    This is a civil and constitutional rights action arising under 42 U.S.C. § 1983, the Fourteenth Amendment to the United States Constitution, Title II of the ADA, and the RA. This Court has jurisdiction over these claims under 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

9.    Venue in this Court is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district, and because Defendant Secretary of State conducts business in this district.

## III.
## PARTIES

### Individual Plaintiffs

10.    Plaintiff Dr. George Richardson is an individual voter who was improperly and unconstitutionally disenfranchised in the 2018 General Election. Dr. Richardson applied for a mail-in ballot for the 2018 General Election in Brazos County due to his eligibility as a voter over 65 years-of-age. After applying for a mail-in ballot, Dr. Richardson properly signed and timely mailed his ballot in compliance with the Texas Election Code. After the election, he received a letter from Brazos County notifying him that his ballot was rejected because of a signature mismatch. Dr. Richardson confronted county election officials who explained that the panel "eye-balls" the signatures, had determined his signature was not actually his, and that their decision was

final. Dr. Richardson is a physician who has signed hundreds of prescriptions every year for 41 years and has never had his signature questioned by a pharmacist. Had Brazos County notified Dr. Richardson during the election that county election officials questioned the signature on his ballot, Dr. Richardson would have confirmed that the signature on his ballot was, in fact, his own. Dr. Richardson wishes, intends, and plans to continue casting a mail-in ballot but, in order to avoid future disenfranchisement, will only do so when the county either stops rejecting mail-in ballots based on an alleged signature mismatch or provides voters, at the very least, a pre-rejection notice and the ability to cure mail-in ballots questioned for an alleged signature mismatch.

11.    Plaintiff Rosalie Weisfeld is an individual voter who was improperly and unconstitutionally disenfranchised in the 2019 McAllen, Texas city run-off election. Ms. Weisfeld applied for a mail-in ballot for the June 22, 2019 McAllen, Texas city run-off election because she had to be out of the county during the early voting period and on Election Day. After applying for a mail-in ballot, Ms. Weisfeld properly signed and timely mailed her ballot in compliance with the Texas Election Code. About ten days after the election, she received a letter from the City of McAllen, mailed to her out-of-town address where she was no longer staying, notifying her that her ballot was rejected because of an alleged signature mismatch. Had the City of McAllen notified Ms. Weisfeld during the election that city election officials questioned the signature on her ballot envelope, Ms. Weisfeld would have confirmed that the signatures on the application and envelope were both, in fact, her own. Ms. Weisfeld votes regularly. To her recollection, Ms. Weisfeld has voted in every primary, city, bond, constitutional, school district, county, runoff, water district, and general election for at least the last 30 years, and she plans to vote in every single upcoming election for which she is eligible to vote. Ms. Weisfeld regularly has professional and family obligations that require her to be out of her county of residence, requiring her to vote by mail on

5

many occasions in the past, and she intends to vote by mail in the future when such obligations prevent her from voting in person.

<div align="center">Austin Justice Coalition</div>

12. Plaintiff Austin Justice Coalition (AJC) sues Defendants on its own behalf. AJC is a non-partisan, non-profit organization dedicated to "providing the tools for people of color and people who are marginalized to improve their lives by being the driving force behind their own liberation." As part of this mission, AJC operates #ProjectOrange, a coordinated campaign to enter the Travis County Jail, register eligible voters, and provide support to them in requesting and submitting mail-in ballots. AJC's #ProjectOrange mission is to ensure that eligible voters—those who have not been finally convicted of a felony or, if they have been convicted of a felony in the past, are "off paper"—are able to vote, despite their present confinement in county jails.

13. Among other services, AJC, through its staff and volunteers, helps inmate voters fill out the mail-in ballot application section by section and instructs each inmate voter to write out their signature neatly. AJC works with the Travis County Jail and the Travis County Elections Department to ensure applications are received on time by the Elections Department, mail-in ballots are received by the inmate voters, and completed mail-in ballots are received by the Elections Department on time. While inmate voters fill their mail-in ballots, AJC, through its staff and volunteers, instructs each inmate voter to neatly write out the signature across the flap of the carrier envelope.

14. AJC's mission is significantly frustrated by the current state laws and policies that result in the improper rejection of incarcerated voters' mail-in ballots. Because of Defendants' unlawful signature comparison procedure, each signed ballot improperly and arbitrarily rejected for an alleged signature mismatch undermines the efficacy of AJC's #ProjectOrange campaign.

Moreover, AJC must expend additional resources, such as staff and volunteer time and resources instructing inmate voters to write out signatures neatly, when providing support to inmate voters with mail-in ballot applications and mail-in ballots due to the risk of arbitrary and unconstitutional rejection based on an alleged signature mismatch. The resources diverted for these purposes are transferred away from AJC's other voting-related activities.

<u>Coalition of Texans with Disabilities</u>

15.     Plaintiff Coalition of Texans with Disabilities (CTD) sues Defendants on its own behalf and on behalf of its members who use the mail-in ballot process based on their eligibility due to disability. These members are qualified individuals with a disability for purposes of the ADA and the RA.

16.     The interests at stake in this lawsuit are germane to CTD's purpose. CTD is a non-partisan, non-profit membership organization that works to ensure that people with disabilities may "live, work, learn, play, and participate fully in the community of their choice." CTD organizes events on subjects such as accessible voting, civil rights, and new state level initiatives with the potential to affect the disability community.

17.     CTD expends resources by informing voters statewide about their ability to cast a mail-in ballot, explains the rules and deadlines related to mail-in ballots, and encourages voters who are eligible to utilize mail-in ballots if they cannot vote in-person.

18.     CTD's mission is significantly frustrated by the current state laws and policies that result in the improper rejection of disabled voters' mail-in ballots. Many of the people CTD serves are especially likely to have variations in their signatures from one writing to the next, due to a disability. Because of Defendants' unlawful signature comparison procedure, each signed ballot improperly and arbitrarily rejected for an alleged signature mismatch undermines the efficacy of

CTD's mail-in ballot work. Moreover, CTD must expend additional resources, such as staff and volunteer time and resources instructing voters to write out signatures neatly, when educating voters on completing mail-in ballot applications and mail-in ballots due to the risk of arbitrary and unconstitutional rejection based on an alleged signature mismatch. The resources diverted for these purposes are transferred away from CTD's other voting-related activities.

19.     Neither the claims asserted nor the relief requested by CTD require the participation of its individual members who regularly vote by mail. Plaintiffs seek only equitable relief which does not require any individualized inquiry into damages sustained by any member.

<u>MOVE Texas Civic Fund</u>

20.     Plaintiff MOVE Texas Civic Fund (MOVE) sues Defendants on its own behalf. MOVE's principal place of business is in San Antonio, Texas. MOVE is a non-partisan, non-profit, and grassroots organization "building power in underrepresented youth communities through civic education, leadership development, and issue advocacy." "MOVE" stands for "Mobilize. Organize. Vote. Empower." Since its inception, MOVE has worked to expand voter registration and equal access to voting. MOVE actively works to register eligible young people to vote and ensure that they cast a ballot that actually counts. In doing so, MOVE operates on 32 college campuses around the State of Texas, with 14 of those in the San Antonio area, and registers thousands of students to vote every year.

21.     Because college students are often absent from their counties of residence while attending school, MOVE provides support to students in applying for mail-in ballots when appropriate and follows up with them to ensure they have mailed their ballots in a timely manner. MOVE works with three distinct groups of students in relation to mail-in ballots: (1) eligible students who attend schools outside of Texas and away from their county of residence; (2) eligible

students who attend a Texas school outside of their county of residence; and (3) eligible students who attend a Texas school and consider their address at or nearby school as their residence, but are nevertheless away from school during an election for summer work, holidays, or another conflict.

22.     Depending on the election, MOVE expends resources to educate students about mail-in ballots, encourage eligible student voters to use mail-in ballots, and provide support to eligible student voters utilizing such ballots.

23.     MOVE's mission is significantly frustrated by the current state laws and policies that result in the improper rejection of youth voters' mail-in ballots. Because of Defendants' unlawful signature comparison procedure, each signed ballot improperly and arbitrarily rejected for an alleged signature mismatch undermines the efficacy of MOVE's mail-in ballot work. Moreover, MOVE must expend additional resources when providing support to voters with mail-in ballot applications and mail-in ballots due to the risk of arbitrary and unconstitutional rejection based on an alleged signature mismatch. MOVE sends messages through social media posts and paid texts to make sure that individual voters are following through with their mail-in ballot plans, and specifically warns voters, since the signature comparison procedure is strict and arbitrary, to sign mail-in ballots as clearly and legibly as possible to avoid improper rejection. The resources diverted for these purposes are transferred away from MOVE's in-person voting and voter registration activities.

<u>League of Women Voters of Texas</u>

24.     Plaintiff League of Women Voters of Texas (LWV) sues Defendants on its own behalf and on behalf of its members who use the mail-in ballot process. The interests at stake in this lawsuit are germane to LWV's purpose. LWV is a non-partisan, non-profit member

organization dedicated to empowering voters and defending democracy. LWV "strives for a democracy where every person has the desire, the right, the knowledge[,] and the confidence to participate in the democratic process." LWV actively works to register eligible people to vote and ensure that they actually cast a ballot that counts. In doing so, LWV operates across Texas, registering thousands every year.

25.     LWV expends resources to educate Texans about mail-in ballots, encourage eligible voters to use mail-in ballots, and provide support to eligible voters utilizing such ballots. LWV also prepares training materials for its members and local-area League of Women Voters organizations to use to educate and provide support to voters with the mail-in ballot process.

26.     LWV's mission is significantly frustrated by the current state laws and policies that result in the improper rejection of voters' mail-in ballots. Because of Defendants' unlawful signature comparison procedure, each signed ballot improperly and arbitrarily rejected for an alleged signature mismatch undermines the efficacy of LWV's work. Moreover, LWV must expend additional resources when providing support to voters with mail-in ballot applications and mail-in ballots due to the risk of arbitrary and unconstitutional rejection based on an alleged signature mismatch. Specifically, LWV must expend additional staff and volunteer time and resources instructing voters to write out signatures neatly through LWV's website, and LWV must expend additional staff and volunteer time and resources instructing voters to write out signatures neatly and have the signatures match each other as much as possible in PowerPoint presentations and scripts prepared for its members and local-area League of Women Voters organizations to use when educating and providing support to mail-in ballot voters. The resources diverted for these purposes are transferred away from LWV's other voting-related activities.

27.     Neither the claims asserted nor the relief requested by LWV require the participation of its individual members who regularly vote by mail. Plaintiffs seek only equitable relief which does not require any individualized inquiry into damages sustained by any member.

<u>American GI Forum of Texas, Inc.</u>

28.     Plaintiff American GI Forum of Texas, Inc. (AGIF) sues Defendants on its own behalf and on behalf of its members who use the mail-in ballot process. A significant portion of AGIF's members are eligible to vote by mail because they are: (1) classified as Disabled Veterans by the Department of Veterans Affairs; (2) military retirees 65 years-of-age or older; and/or (3) active duty service members and their families who are often stationed away from their county of residence in Texas.

29.     The interests at stake in this lawsuit are germane to AGIF's purpose. AGIF is a non-partisan, non-profit, Family Veterans, and member organization dedicated to addressing problems of discrimination and inequities endured by veterans and the communities in which they operate. AGIF requires at least 75% of its members be veterans. AGIF works to "enforce, defend, and protect the civil and human rights, [including voting rights,] of Hispanics, women, and other minorities, and to ensure equal opportunities as mandated by federal and state laws." AGIF and its constituent chapters across the state expend resources to register eligible Texas veterans, servicemembers, and their families to vote and to ensure that they actually cast a ballot that counts.

30.     The improper rejection of mail-in ballots frustrates AGIF and its chapters' mission of expanding voter registration and increasing voter turnout among AGIF's membership and the communities it serves, which is essential to advancing and leveraging its influence to advance policy change that benefits veterans, their families, and their communities. Texas' signature comparison procedure decreases overall confidence in the mail-in ballot process, and elections,

generally, which directly undermines the efforts AGIF and its chapters take to encourage eligible voters to use mail-in ballots and support those voters in making sure their mail-in ballots are counted.

31.     Neither the claims asserted nor the relief requested by AGIF require the participation of its individual members who regularly vote by mail. Plaintiffs seek only equitable relief which does not require any individualized inquiry into damages sustained by any member.

<div align="center">Defendants</div>

32.     Defendant is the Texas Secretary of State (SOS). The SOS is the Chief Election Officer of the State of Texas. Tex. Elec. Code § 31.001(a). In this role, the SOS is responsible for enforcing elections statutes and routinely issues guidance to the county registrars of all 254 Texas counties on various elections procedures. SOS is a public entity under Title II of the ADA and the RA.

33.     Defendant Trudy Hancock is the Brazos County Elections Administrator (Brazos EA). She is sued in her official capacity. She is sued for the manner in which she implements the policies, customs, or practices at issue in this action. The Brazos EA is a public entity under Title II of the ADA and the RA.

34.     Defendant Perla Lara is the City of McAllen, Texas Secretary (McAllen City Secretary). She is the Chief Elections Official for the City of McAllen. The McAllen City Secretary is responsible for the administration of elections conducted within the City of McAllen, including joint elections with Hidalgo County as well as elections independent of the Hidalgo County. The McAllen City Secretary is sued for the manner in which she implements the policies, customs, or practices at issue in this action. The McAllen City Secretary is a public entity under Title II of the ADA and the RA.

# IV.
# FACTS

## Current Mail-in Ballot Procedures

35.     To vote a mail-in ballot, a voter must first send their county a mail-in ballot application via mail, fax (if available), or e-mail. *Application for a Ballot by Mail*, Texas Secretary of State, https://www.sos.state.tx.us/elections/voter/reqabbm.shtml (last visited June 25, 2019). A voter must submit the mail-in ballot application for a specific election 11 days before Election Day. *Id*. If a voter is voting by mail because the voter is disabled or is 65 years-of-age or older, the voter may use a single application to request mail-in ballots for all county elections in a calendar year. Tex. Elec. Code § 86.0015. While the voter can submit this annual application anytime during the calendar year, it still must be received at least 11 days before the first election in which the voter seeks to request a mail-in ballot. *Id*. § 86.0015(b-1).

36.     In order to successfully vote by mail, the voter must mark the ballot, place it in the official ballot envelope provided by the county, seal the official ballot envelope, place the official ballot envelope in the carrier envelope provided by the county, seal the carrier envelope, and sign the certificate on the carrier envelope. *Id*. § 86.005(a)-(c). Specifically, the carrier envelope certificate requires the voter to "certify that the enclosed ballot expresses [the voter's] wishes independent of any dictation or undue persuasion by any person," and includes a line for the voter's signature across the flap of the envelope. *Id*. § 86.013(c).

37.     Then, the carrier envelope must be returned to the county in a timely manner. *Id*. §§ 86.006(a), 86.013(c). Typically, counties must receive mail-in ballots that are not postmarked or do not have a delivery receipt by 7 p.m. on Election Day. Tex. Elec. Code § 86.007. At the latest, counties must receive mail-in ballots from voters inside the United States with a postmark

or delivery receipt dated on or before 7 p.m. on Election Day by 5 p.m. the next business day after Election Day. *Id.* § 86.007(a)(2).[2]

38.     The decision as to whether to reject a mail-in ballot is generally conducted by the Early Voting Ballot Board (EVBB), a statutorily required board established in each county that includes representatives from county parties. *See generally* Tex. Elec. Code § 87.001. The Early Voting Clerk, however, may determine that a Signature Verification Committee (SVC) should be established, in which case the SVC will perform the signature reviews rather than the EVBB. *See generally id.* § 87.027. SVCs are usually established in larger counties, but also appear in many smaller ones. An SVC is also mandatory if the Early Voting Clerk receives a timely petition of at least 15 registered voters requesting such a committee. *Id.* § 87.027(a-1).

39.     An SVC is composed of at least five members and, "[i]n an election in which party alignment is indicated on the ballot," must include at least two members designated by each county party on the ballot in equal numbers. *Id.* § 87.027(d). The chair of the SVC is appointed from a list provided by the party whose nominee for governor received the most votes in the county in the most recent gubernatorial general election. *Id.* The only qualification required to serve on an SVC is that the person be an eligible voter in the district or area for which the election is being held. Tex. Elec. Code § 87.027(e). Pursuant to these rules, SVC's are by law partisan committees of laypersons without any specific expertise or training.

40.     The only statutory guidance for an SVC to follow in performing reviews of mail-in ballots is stated in Tex. Elec. Code § 87.027(i), which provides:

---

[2] Counties must receive from non-military overseas voters mail-in ballots with a postmark or delivery receipt dated on or before 7 p.m. on Election Day no later than the 5th day after Election Day or, if the 5th day after Election Day falls on a Saturday, Sunday, or legal state or national holiday, then the deadline is extended to the next regular business day. *Id.* §§ 86.007(d), (d-1). Counties must receive from military overseas voters mail-in ballots no later than the 6th day after Election Day or, if the 6th day after Election Day falls on a Saturday, Sunday, or legal state or national holiday, then the deadline is extended to the next regular business day. *Carrier Envelope for FPCA Voter*, Texas Secretary of State, https://www.sos.state.tx.us/elections/forms/pol-sub/5-35.pdf (last visited June 25, 2019).

14

The signature verification committee shall compare the signature on each carrier envelope certificate, except those signed for a voter by a witness, with the signature on the voter's ballot application to determine whether the signatures are those of the voter. The committee may also compare the signatures with any two or more signatures of the voter made within the preceding six years and on file with the county clerk or voter registrar to determine whether the signatures are those of the voter. Except [where more than one SVC is appointed in the same county], a determination under this subsection that the signatures are not those of the voter must be made by a majority vote of the committee's membership.

The same procedure is to be followed by the EVBB if an SVC is not appointed in a particular county. Tex. Elec. Code § 87.027(j).

41.     The Election Code does not establish any standards or guidance that must be used for actually determining if a signature is that of the voter, nor has SOS or any other entity used rule-making authority to create such standards. Accordingly, each county (and even each committee if multiple SVC panels are created) necessarily develops its own idiosyncratic, arbitrary, and ad hoc procedure to determine that a ballot should be rejected. *See* Tex. Elec. Code § 87.041(b)(2) (requiring rejection). These standards will necessarily vary from county to county, panel to panel, and even from meeting to meeting or ballot to ballot within the same committee panel.

42.     The above signature verification procedure is not and cannot be performed anonymously. In other words, members of the EVBB or SVC necessarily know which voter's ballot they are considering prior to determining if it should be accepted or rejected.

43.     All decisions of the committee are final; if a voter's ballot is rejected, that voter has no recourse or process to challenge the panel's determination that the voter's ballot was signed by someone other than the voter.

44.     Additionally, the board is not required to send notice of rejection to the voter until 10 days after an election, regardless of how early it makes the decision to reject the ballot. *Id.*

§ 87.0431(a). These voters are not provided any kind of notice of their ballot's rejection, nor sufficient time to seek judicial relief, such as that sought in this Complaint, prior to the final votes in the election-at-issue being counted.

45.     Mail-in ballot procedures exclusively affect groups of people who are explicitly eligible by statute to apply for a ballot by mail, including: (1) disabled persons, (2) persons 65 years-of-age or older, (3) persons detained in state jails but otherwise eligible to vote, and (4) persons who will be out of their county of residence during the entire early voting period and on Election Day (a group with significant representation from active-duty military members and college students attending school away from their county of residence). *See* Tex. Elec. Code §§ 82.001–82.004.

46.     The groups that are eligible to vote by mail are also the same groups, in many cases, that are most likely to have signature variations that could cause an improper rejection—especially the elderly, disabled, and persons who speak English as a second language.

47.     A voter whose ballot is rejected is not given any notice of their rejection prior to the rejection, any opportunity to cure their ballot, or any ability to contest the decision of the EVBB or SVC since counties have until 10 days after Election Day to notify the voter of a rejected mail-in ballot. Tex. Elec. Code § 87.0431(a).

<u>Reasons Signatures Often Do Not Match</u>

48.     A person's signature may vary for a variety of reasons, both intentional and unintentional. Unintentional factors that can affect a person's handwriting include medical and/or physical factors such as growing old, illness, injury, symptoms from taking certain medicine, change in eyesight, and consuming alcohol and/or drugs; mechanical factors such as pen type, ink, signing surface, signing position, and paper quality; and psychological factors such as distress,

anger, fear, depression, happiness, and nervousness. *Democratic Executive Committee of Florida v. Lee*, 915 F.3d 1312, 1320 (11th Cir. 2019); *Saucedo v. Gardner*, 335 F. Supp. 3d 202, 212 (D.N.H. 2018). Moreover, a person's handwriting naturally changes over time. Variances between signatures are more prevalent in people who are elderly, disabled, under extreme stress, or who speak English as a second language. *Saucedo*, 335 F. Supp. 3d at 212.

49.      For the most part, signature variations are of little consequence in a person's life. But in the context of voting by mail, these variations become profoundly consequential under Texas' signature comparison procedure, as they may result in the improper disenfranchisement of eligible voters. Elderly and disabled voters, two groups of voters expressly permitted to use the mail-in ballot process, are especially likely to have signature variations.

<u>Texas' Alleged Signature-Matching Process Is Severely Flawed</u>

50.      As a procedure to verify identity, signature comparison is extremely unreliable. Members of EVBBs and SVCs are not handwriting experts, nor do they receive any training to assist in determining if two signatures were made by the same person. On its face, the signature comparison procedure for mail-in ballots gives no guidance on the questions that inevitably arise during signature comparison evaluations, including what stylistic variations suggest that two signatures were made by different individuals, and what threshold number of variations is required to conclude that the signature on the mail-in ballot carrier envelope, the mail-in ballot application, or previous documents is executed by a person other than the voter.

51.      Moreover, EVBBs and SVCs are required by the Texas Election Code to consider signatures in a vacuum, without regard to any other pertinent information that may be available.

# V.
## CAUSES OF ACTION
### COUNT ONE
**Violation of the Due Process Clause of the Fourteenth Amendment for Failure to Provide Pre-Rejection Notice and Opportunity to Cure**

52.     Plaintiffs re-allege and incorporate by reference the allegations contained in the preceding paragraphs.

53.     Section 1 of the Fourteenth Amendment to the United States Constitution prohibits states from depriving "any person of . . . liberty . . . without due process of law." U.S. CONST. amend. XIV, § 1.

54.     Defendants may not deprive mail-in ballot voters of procedural due process because each voter's fundamental right to vote is implicated when using a mail-in ballot.

55.     Counties throughout Texas have rejected and continue to reject thousands of mail-in ballots solely based on an error-prone and flawed signature comparison exercise conducted by election officials who are not trained in signature verification, resulting in the erroneous deprivation of the right to vote.

56.     Defendants have not established a procedure for providing voters whose mail-in ballots are rejected because of an alleged signature mismatch pre-rejection notice, an opportunity to be heard, or the ability to cure.

57.     By mandating the unilateral and non-reviewable rejection of mail-in ballots due to an alleged signature mismatch without according pre-rejection notice, an opportunity to be heard, and an ability to cure, Texas' scheme as outlined in Texas Election Code §§ 87.041(b)(2) and (d), both on its face and as it is applied, violates the Due Process Clause of the Fourteenth Amendment. Defendants deprived and continue to deprive Texas voters, including Mr. Richardson and Ms. Rosalie, voters provided support by organizational Plaintiffs, and voters who are members of

associational Plaintiffs, of adequate procedural due process to protect their fundamental right to vote.

58.     Providing a voter whose mail-in ballot has been questioned for an alleged signature mismatch a pre-rejection notice, an opportunity to be heard, and the ability to cure their ballot would avoid disenfranchisement and, thereby, protect the voter from the outright denial of their fundamental right to vote.

59.     Notice, an opportunity to be heard, and the ability to cure a ballot are already provided to voters in comparable circumstances. In-person voters whose ballots cannot be counted on Election Day due to lack of identity verification can provide photo identification confirming their identity within six days of Election Day to have their ballot counted. Tex. Elec. Code § 65.0541. It would not be burdensome to apply similar procedures to mail-in ballot voters with allegedly mismatched signatures.

60.     The fundamental right to vote is at stake, and the risk that even one person will be denied the right to cast a mail-in ballot outweighs any justification Defendants may put forward for depriving all mail-in ballot voters the same notice, opportunity to be heard, and ability to cure that is already provided to voters in comparable circumstances.

61.     This challenge is both facial and as-applied to the Plaintiffs in this case.

**COUNT TWO**
**Violations of the Equal Protection Clause of the Fourteenth Amendment Due to Severe Burden on Voters Not Justified by Legitimate Government Interest**

62.     Plaintiffs re-allege and incorporate by reference the allegations contained in the preceding paragraphs.

63. The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution prohibits states from "deny[ing] to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1.

64. Under the First Amendment and Equal Protection Clause of the Fourteenth Amendment, a state cannot utilize election practices that unduly burden the fundamental right to vote. *See Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983); *Burdick v. Takushi*, 504 U.S. 428, 434 (1992).

65. A court considering a challenge to a state election law must carefully balance the character and magnitude of the injury to the First and Fourteenth Amendment rights that Plaintiffs seek to vindicate against the justifications put forward by Defendants for the burdens imposed by the rule. *See Anderson*, 460 U.S. 780, 789 (1983); *Burdick*, 504 U.S. 428, 434 (1992). A challenged regulation that imposes a severe burden on the right to vote must be narrowly tailored to advance a compelling state interest. *See Burdick*, 504 U.S. at 434.

66. Defendants cannot burden the exercise of the right to vote by applying election law, policies, and practices in an arbitrary or inconsistent manner.

67. By implementing a signature matching procedure, Defendants treat mail-in ballot voters differently than in-person voters. Tex. Elec. Code § 87.041(b)(2), (d).

68. By implementing a signature matching procedure, Defendants treat differently than other mail-in ballot voters the members of CTD who are mail-in ballot voters and, due to their disability, cannot make their signatures match. Tex. Elec. Code § 87.041(b)(2), (d).

69. Texas Election Code Sections 87.041(b)(2) and (d), by mandating the unilateral, arbitrary, and ad hoc rejection of mail-in ballots due to an alleged signature mismatch, disenfranchise mail-in ballot voters, a burden that is undoubtedly severe, especially when such

20

voters are given no pre-rejection notice or opportunity to resolve the mismatch or otherwise confirm their identity.

70.     Rejecting thousands of mail-in ballots based solely on an error-prone signature comparison procedure conducted by election officials who are not trained in signature verification and failing to provide mail-in ballot voters any opportunity to contest or cure signature mismatch determinations is neither reasonable nor narrowly tailored to serve any compelling and legitimate state interest, particularly since Defendants already otherwise verify a mail-in ballot voter's eligibility to cast a ballot and especially because Defendants provide voters in comparable circumstances an opportunity to be heard and ability to cure ballots.

### COUNT THREE
### Violation of Equal Protection Clause of the Fourteenth Amendment Due to Failure to Provide any Uniform Guidelines or Principles for Counties to Compare Signatures

71.     An electoral procedure becomes problematic "in the absence of specific standards to ensure its equal application." *Bush v. Gore*, 531 U.S. 98, 106 (2000). Such procedures are immediately suspect if "the standards for accepting or rejecting contested ballots might vary not only from county to county but [even] within a single county." *Id*. State and local governments have an "obligation to avoid arbitrary and disparate treatment of the members of [their] electorate." *Id.* at 105. Failure to establish procedures to ensure equal application of such rules renders them unconstitutional under the Fourteenth Amendment's Equal Protection Clause. *Id*. at 111.

72.     Texas has not promulgated any procedures to assist individual counties or the EVBB or SVCs within those counties in evaluating signatures on mail-in ballots, thereby creating an arbitrary system for evaluation in which committees of laypersons "eye-ball" signatures and evaluate them based on their own ad hoc standards.

73. The procedures for evaluating signatures for mail-in ballots in Texas therefore vary from county to county, from SVC to SVC in counties with multiple committees, and even from meeting to meeting and ballot to ballot.

74. Accordingly, Texas' procedures for evaluating mail-in ballot signature matches violate the Equal Protection Clause for their failure to provide specific standards to ensure their equal application.

## COUNT FOUR
### Violation of Title II of the Americans with Disabilities Act and the Rehabilitation Act of 1973

75. In addition to the previous claims, Plaintiff CTD brings the following specific claims against Defendants under Title II of the ADA and the RA. The rights and remedies under the ADA and the RA are almost entirely duplicative.

76. "No qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132; 28 C.F.R. § 35.149.

77. "No [person] shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subject to discrimination under any program or activity receiving federal funding assistance." 29 U.S.C. § 794(a); 45 C.F.R. § 1232.4(a).

78. Defendant SOS, as a state agency, and Defendants Brazos EA and McAllen City Secretary, as other political subdivision agencies, are public entities pursuant to 42 U.S.C. § 12131(1)(a) and (b), 45 C.F.R. § 1232.3(d), and 29 U.S.C. § 794. The administration of elections and voting, including mail-in ballot voting and the counting of votes, is a service, program, or activity provided by Defendants SOS, Brazos EA, and McAllen City Secretary.

22

79.     Defendants are recipients of federal funds. 29 U.S.C. § 794.

80.     For purposes of the ADA and the RA, CTD has members who are qualified individuals with physical and/or mental impairments that substantially limit one or more of their major life activities, including but not limited to performing manual tasks such as seeing, lifting, bending, concentrating, communicating, and/or working. 42 U.S.C. § 12102(1), (2); 45 C.F.R. § 1232.3(h).

81.     CTD has members who are disabled and meet the essential eligibility requirements for the receipt of mail-in ballot services and to participate in the mail-in ballot process provided by Defendant SOS through existing statutes, regulations, and guidance and by the Defendants Brazos EA and McAllen City Secretary through their administration of the mail-in ballot process. Thus, CTD has members who are qualified individuals with a disability entitled to the protections of the ADA and the RA in accessing Texas' service, program, or activity of mail-in ballots.

82.     Members of CTD who use the mail-in ballot process and, due to their disability, cannot make their signatures match, risk disenfranchisement. By reason of such disability, the members at issue have suffered and/or risk future exclusion from participation in and denial of the benefits of the services, programs, or activities of Defendants, and are subjected to discrimination by Defendants. By failing to meet their obligation to provide voters who are disabled, cannot vote in person, and, due to their disability, cannot sign matching signatures an opportunity to vote that is equal and equally effective as that opportunity provided to others, Defendants are in violation of the ADA and the RA.

83.     The lack of reasonable accommodations—such as creating standards for comparing signatures on mail-in ballots and providing the opportunity to contest and cure a challenged mail-in ballot, or barring counties from rejecting mail-in ballots for signature mismatch or any mail-in

ballots submitted by persons with disabilities for signature mismatch—means that the CTD members at issue are excluded from participation in and denied the benefits of the services, programs, or activities of Defendants, and subjected to discrimination by Defendants. Requiring Defendants to provide these reasonable accommodations would not constitute an undue financial or administrative burden.

## PRAYER FOR RELIEF

WHEREFORE, considering the law and facts alleged herein, Plaintiffs pray the Court grant the following relief:

1. That the Court enter declaratory judgment that the State of Texas' statutory scheme requiring the rejection of mail-in ballots with alleged signature mismatches, specifically set out in Texas Election Code §§ 87.041(b)(2), (e), and (f), is unconstitutional and violates the ADA and the RA;

2. That the Court permanently enjoin the State of Texas, the Texas Secretary of State, the Brazos County Elections Administrator, the City of McAllen, Texas Secretary, the 254 county agencies administering elections, and all other political subdivisions administering elections from rejecting any mail-in ballot for signature mismatch reasons, or, in the alternative, require the State of Texas, the Texas Secretary of State, the Brazos County Elections Administrator, the City of McAllen, Texas Secretary, the 254 county agencies administering elections, and all other political subdivisions administering elections to (a) provide voters meaningful notice prior to the rejection of a mail-in ballot based on an alleged signature mismatch and (b) offer voters the ability to cure a mail-in ballot questioned for an alleged signature mismatch.

3. That Plaintiffs be awarded attorneys' fees under 42 U.S.C. § 1988 and 29 U.S.C. § 794a;

4. That all costs of this action be taxed against Defendants; and

5. That the Court award any additional or alternative relief as may be deemed appropriate under the circumstances.

Respectfully submitted this 7th day of August, 2019.


By:   *Hani Mirza*

**TEXAS CIVIL RIGHTS PROJECT**

Mimi M.D. Marziani
Texas Bar No. 24091906
mimi@texascivilrightsproject.org
Rebecca Harrison Stevens
Texas Bar No. 24065381
beth@texascivilrightsproject.org
Hani Mirza
Texas Bar No. 24083512
hani@texascivilrightsproject.org
Ryan V. Cox
Texas Bar No. 24074087
ryan@texascivilrightsproject.org
Zachary D. Dolling
Texas Bar No. 24105809
zachary@texascivilrightsproject.org

1405 Montopolis Drive
Austin, Texas 78741
512-474-5073 (Telephone)
512-474-0726 (Facsimile)

**WILLKIE FARR & GALLAGHER LLP**

Richard Mancino (NY Bar No. 1852797)
(*pro hac vice* forthcoming)
P. Maxwell Griffith (NY Bar No. 5323209)
(*pro hac vice* forthcoming)

25

787 Seventh Avenue
New York, New York 10019
Telephone:  (212) 728-8000
Facsimile:  (212) 728-8111
Email: rmancino@willkie.com
       mgriffith@willkie.com

-AND-

Jennifer J. Hardy (TX Bar No. 24096068)
(*pro hac vice* forthcoming)
Denis A. Fallon (TX Bar No. 24059731)
(*pro hac vice* forthcoming)
Garrett Johnston (TX Bar No. 24087812)
(*pro hac vice* forthcoming)
Audra White (TX Bar No. 24098608)
(*pro hac vice* forthcoming)

600 Travis Street, Suite 2100
Houston, Texas 77002
Telephone: (713) 510-1700
Facsimile: (713) 510-1799
Email: jhardy2@willkie.com
       afallon@willkie.com
       gjohnston@willkie.com
       awhite@willkie.com

***COUNSEL FOR PLAINTIFFS***

26

JS 44 (Rev 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

See Attached

**(b)** County of Residence of First Listed Plaintiff **Brazos**
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

See Attached

## DEFENDANTS

See Attached

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U S Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U S Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **PROPERTY RIGHTS** | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | ☐ 820 Copyrights | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 830 Patent | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 460 Deportation |
| | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 870 Taxes (U S Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☒ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Fourteenth Amendment to U.S. Constitution, Title II of ADA, and RA of 1973

Brief description of cause:
Violation of voting rights

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE _____ DOCKET NUMBER _____

DATE 08/07/2019

SIGNATURE OF ATTORNEY OF RECORD /s/ Hani Mirza

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG JUDGE _____

## I. (a) Plaintiffs

Richardson, George; Weisfeld, Rosalie; Austin Justice Coalition; Coalition of Texans with Disabilities; MOVE Texas Civic Fund; League of Women Voters of Texas; American GI Forum of Texas, Inc

## I. (c) Plaintiffs' Counsel

Mimi M.D. Marziani
Texas Bar No. 24091906
Rebecca Harrison Stevens
Texas Bar No. 24065381
Hani Mirza
Texas Bar No. 24083512
Ryan V. Cox
Texas Bar No. 24074087
Zachary D. Dolling
Texas Bar No. 24105809
Texas Civil Rights Project
1405 Montopolis Drive
Austin, Texas 78741
512-474-5073 (Telephone)
512-474-0726 (Facsimile)
mimi@texascivilrightsproject.org
beth@texascivilrightsproject.org
hani@texascivilrightsproject.org
ryan@texascivilrightsproject.org
zachary@texascivilrightsproject.org

Richard Mancino (NY Bar No. 1852797)**
P. Maxwell Griffith (NY Bar No. 5323209)**
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, New York 10019
Telephone:  (212) 728-8000
Facsimile:  (212) 728-8111
rmancino@willkie.com
mgriffith@willkie.com

-AND-

Jennifer J. Hardy (TX Bar No. 24096068)**
Denis A. Fallon (TX Bar No. 24059731)**
Garrett Johnston (TX Bar No. 24087812)**
Audra White (TX Bar No. 24098608)**
Willkie Farr & Gallagher LLP
600 Travis Street, Suite 2100

Houston, Texas 77002
Telephone: (713) 510-1700
Facsimile: (713) 510-1799
jhardy2@willkie.com
afallon@willkie.com
gjohnston@willkie.com
awhite@willkie.com

ATTORNEYS FOR PLAINTIFFS
** Pro hac vice application forthcoming

**I. (a) Defendants**

CURRENTLY VACANT, Texas Secretary of State;

TRUDY HANCOCK, Brazos County Elections Administrator,
in her official capacity;

PERLA LARA, City Secretary for City of McAllen,
in her official capacity.

Donate Now | Contact Us | Sign Up for Newsletter


# CTD ✈ Coalition of Texans with Disabilities

| HOME | ABOUT US | ADVOCACY | FILM FESTIVAL | BLOG | CONSULTING | GET INVOLVED |

Home >
CDS DIVISION

# ABOUT US

Founded in 1978, CTD is the largest and oldest member-driven cross-disability organization in the state. "Cross-disability" refers to all types of disabilities and different functional needs, rather than a particular disability or subset of disabilities. CTD envisions a future where all Texans with all disabilities may work, live, learn, play, and participate fully in the community of their choice.

We focus on governmental advocacy, public awareness activities, and professional disability consulting to make Texas a leader in disability-related public policy and culture.

![Infographic: ARTS & AWARENESS, COMMUNITY ORGANIZING, ADVOCACY, SOCIAL ENTREPRENEURSHIP. 1 IN 5 TEXANS HAS A DISABILITY. CTD PRIORITIES: INDEPENDENT LIVING, DISABILITY SERVICES, ATTENDANT WAGES, ACCESSIBLE PARKING, CIVIL RIGHTS, EMPLOYMENT, ACCESS TO MEDICATIONS. MISSION: CTD works to ensure that people with disabilities may live, work, learn, play, and participate fully in the community of their choice. CTD Coalition of Texans with Disabilities.]

*See full-sized Infographic*



**Exhibit**
**Chase Bearden**
**3**
5/19/2020   MJ

2228

CTD-00000080

Donate Now | Contact Us | Sign Up for Newsletter

# CTD

## Coalition of Texans with Disabilities

HOME    ABOUT US    ADVOCACY    FILM FESTIVAL    BLOG    CONSULTING    GET INVOLVED

Engaging the general public contributes to positive cultural shifts, and for this reason, CTD is committed to holding outstanding **public awareness** initiatives. Each year, we produce events and presentations that focus on disability in the arts, sports & recreation, and consumer education, most notably, our award winning Cinema Touching Disability Film Festival & Short Film Competition.



*Our staff (L-R, back row): Aracely Menendez, Rosie Williams, Denise Ellison, Dennis Borel, Chris Masey, Tiffany Williams, William Greer, Kit Cuny. (L-R, front row) Jennifer Bracy, Susie Angel, Chase Bearden, Laura Perna.*

## ABOUT US

Our Staff
Based in Austin, CTD's staff is composed of dedicated individuals with and without disabilities.

CTD-00000081



HOME     ABOUT US     ADVOCACY     FILM FESTIVAL     BLOG     CONSULTING     GET INVOLVED

Members of the media interested in leveraging our expertise or scheduling an interview about an issue or upcoming event are encouraged to contact Dennis Borel at 512-478-3366.

CDS DIVISION

View the CTD Media Kit

## ANNUAL REPORT

Learn about this year's advocacy and organizing activities, arts and community events, and more in our detailed, easy to read annual reports.

**2019 Annual Report**

More reports



1716 San Antonio St.
Austin, Texas 78701
Phone: (512) 478-3366
Fax: (512) 478-3370
email: info@txdisabilities.org

*CTD works to ensure that persons with disabilities may work, live, learn, play and participate fully in the community of their choice. CTD is a 501(c)(3) nonprofit organization with Federal Tax ID #74-2071160.*

Home | About Us | Advocacy | Film Festival | Blog | Consulting | Get Involved | CDS Division
Donate Now | Contact Us | Sign Up for Newsletter

Site Map   Site Information   Accessibility   Report A Website Problem
© 2020 Coalition of Texans with Disabilities
Site by: Mighty Citizen

CTD-00000082



**Coalition of Texans with Disabilities**

HOME     ABOUT US     ADVOCACY     FILM FESTIVAL     BLOG     CONSULTING     GET INVOLVED

CDS DIVISION

CTD-00000083

Document Filed Under Seal

salsa3.salsalabs.com/o/50324/t/0/blastContent.jsp?email_blast_KEY=1217958

Spread the word »  

## May 14

**CTD Competitions:**

**1. Adjusted Lens: CTD's Disability Photo Competition.** This is our very first year for this competition and it's part of this year's Cinema Touching Disability Short Film Competition. We are looking for photos that capture person(s) with disabilities working, living, learning, playing, and fully participating in their communities.

Deadline: August 24, 2012

Who can enter? Anyone who can take a digital photo.

Prizes:

*Grand Prize* -- $150.00 and a framed print of his/her photo. *2nd Place* -- A 1st edition copy of La Vida Brinca: A Book of Tragaluz Photographs by Bill Wittcliff (Value $50.00) and a framed print of his/her photo. *3rd Place* -- A framed print of his/her photo.

***All winning photos and selected entries will be featured at the Cinema Touching Disability Film Festival and displayed in a traveling Adjusted Lens exhibit.

For rules and entry instructions, visit **Adjusted Lens**

**2. 2012 Cinema Touching Disability Short Film Competition** We want to see your best 3-20 minute film made about disability or by a person with a disability.

Deadline: August 10, 2012

Who can enter? Emerging Filmmakers (18+ yrs) and Scholastic Filmmakers (grades 6th – 12th)



Logo for CTD Messenger

Party primaries for State & Federal Elections are right around the corner. Early voting begins May 14th until May 25th, and then the official Election Day will be held on Tuesday May 29th. While considering when to vote, keep in mind that early voting is much easier because the voting sites will be less crowded and you don't need to know what precinct you are assigned to. Just take your voters' registration card to any early voting site and vote. Also, be aware that the voter ID laws that were passed by the legislature in 2011 will not be in effect for these primaries. According to Secretary of State Hope Andrade, this is because they are currently under review by the courts & Department of Justice.

Picture: Secreta State Hope Andra talking to CTD St (Left to Right: Bry Smith, William Gr Chase Bearden, De Borel)

CTD urges everyone who is registered to vote to do so. Many people don't realize what exercising their right to vote really means. Not only are you picking your candidate choices, but your vote also shows your interest in what happens in your community and legislators will be more apt to listen to their constituents with disabilities.

### Voting at the Polls:

There are two ways to cast your ballot if you are a Texas voter with a disability or an ol Texas voter:

1. Independently with an accessible voting machine: Accessible machines are avail every polling place, except in some nonfederal elections that are held in counties have a population under 20,000.
2. At an accessible voting machine with assistance: You can be assisted by a person your choice that isn't an election worker, 2 election workers on Election Day, or election worker at early voting. However, the person you choose cannot be your employer, an agent of your employer, or an officer or agent of your union. He/sh also take an oath which states that he/she will not influence your vote, will mark ballot as you direct, and will not tell anyone how you voted.

### Alternative Methods of Voting:

Whether you are a Texas voter with a disability or an older Texas voter who is unable t physically get to voting polls or you just can't go into the voting place for some reason, can still exercise your right to vote by using one of the two other ways:

- Curbside voting: An election official can bring the ballot to you at the entrance c car at curbside. After you mark your ballot, give it back to an election official and he/she will put it in the ballot box. You may also request that a companion hand t ballot to you and deposit it for you. If you plan to do an election during curbside voting should call ahead so election officials will expect you.
- By mail: If you will be 65 or older on Election Day, have a disability, or will be c the county during early voting hours and on Election Day, you may apply to vote mail. Simply submit a completed and signed application for a ballot by mail any between now and May 23rd to the proper early voting clerk. Applications for a t



**Exhibit
Chase Bearden

5**

5/19/2020    MJ

CTD-00000026

Prizes:

**1st Place** -- $500
**2nd Place** -- $250
**3rd Place** -- $100

Click Here to enter our competition.

Or, for the rules and to find out more, visit:
Cinema Touching Disability Short Film Competition

3. **Pen 2 Paper Creative Writing Competition** is still collecting your stories, your perspectives, your fears, and your discoveries about disability.

Deadline: August 20, 2012

Contest is open to Texas writers, with or without disabilities, of all writing levels.

To find out guidelines and to look at entries from past winners, visit Pen 2 Paper.

Follow all the work we do and the progress we're making by checking us out on:



By clicking on the donate button below, you will become a supporting member of CTD and help us to keep advocating for Texans with disabilities.



*Table: Your polling places will meet these strict accessibility standards*

Logo for MY MEDICAID MATTERS: REAL PEOPLE REAL VOICES REAL REFORM

by mail may be submitted in person a main early voting polling place, as lo early voting by personal appearance taking place.

If you have any problems voting, ple contact Disability Rights Texas at 51 4816 or call the voting hotline 1-888- VOTE and someone will investigate matter.

The My Medicaid website has just launched at www.mmmtx.org, so take a moment t learn more about our education campaign. You will be able to learn more about the benefits of Medicaid, what could happen to Texas if Medicaid were reduced or eliminated, and how you can become a supporting organization. If all the informatio seems overwhelming, please at least find and sign our electronic petition.

Tel: (51
Fax: (51
Email: cotwc
Click here to

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

DR. GEORGE RICHARDSON,    *
ROSALIE WEISFELD, AUSTIN  *
JUSTICE COALITION,        *
COALITION OF TEXANS WITH  *
DISABILITIES, MOVE TEXAS  *
CIVIC FUND, LEAGUE OF     *
WOMEN VOTERS OF TEXAS,    *
and AMERICAN GI FORUM OF  *
TEXAS, INC.,              *
                         *
      Plaintiffs,       *
                         *          CIVIL ACTION NUMBER
VS.                       *          5:19-cv-0963
                         *
TEXAS SECRETARY OF        *
STATE, TRUDY HANCOCK, IN  *
HER OFFICIAL CAPACITY AS  *
BRAZOS COUNTY ELECTIONS   *
ADMINISTRATOR, AND PERLA  *
LARA IN HER OFFICIAL      *
CAPACITY AS CITY OF       *
McALLEN, TEXAS            *
SECRETARY,                *
                         *
      Defendants.       *


Remote Oral Deposition of

League of Women Voters of Texas,

By and through their Designated Representative,

GRACE CHIMENE

May 18, 2020

10:08 a.m.


Reported by:

Micheal A. Johnson, RDR, CRR

League of Women Voters of Texas - 5/18/2020

2

1          REMOTE ORAL DEPOSITION OF LEAGUE OF WOMEN

2    VOTERS OF TEXAS, BY AND THROUGH THEIR DESIGNATED

3    REPRESENTATIVE, GRACE CHIMENE, produced at the

4    instance of the Defendant, Texas Secretary of State,

5    in the above-styled and numbered cause on the

6    18th day of May, 2020, at 10:08 a.m., before Micheal

7    A. Johnson, RDR, CRR, Notary Public in and for the

8    State of Texas, reported by realtime stenographic

9    means, at the location of the witness, Austin,

10   Texas, pursuant to Notice of Oral Deposition, and in

11   accordance with the Federal Rules of Civil

12   Procedure.

13

14

15

16

17

18

19

20

21

22

23

24

25

3

```
 1                    REMOTE APPEARANCES

 2   ON BEHALF OF THE PLAINTIFFS:

 3      JoAnna Suriani
        WILLKIE FARR & GALLAGHER LLP
 4      1875 K Street, N.W.
        Washington, D.C. 20006-1238
 5      (202) 303-1193
        jsuriani@willkie.com
 6
        Samuel Kalar
 7      WILLKIE FARR & GALLAGHER LLP
        787 Seventh Avenue
 8      New York, New York 10019-6099
        (212) 728-8724
 9      skalar@willkie.com

10      Zachary Dolling
        Hani Mirza
11      Ryan Cox
        TEXAS CIVIL RIGHTS PROJECT
12      1405 Montopolis Drive
        Austin, Texas 78741
13      (512) 474-5073
        zachary@texascivilrightsproject.org
14      hani@texascivilrightsproject.org
        ryan@texascivilrightsproject.org
15
16   ON BEHALF OF THE DEFENDANT
     TEXAS SECRETARY OF STATE:
17
        Anne Marie Mackin
18      ASSISTANT ATTORNEY GENERAL
        Post Office Box 12548
19      Austin, Texas 78711-2548
        (512) 463-2798
20      anna.mackin@oag.texas.gov

21

22

23

24

25
```

1          REMOTE APPEARANCES (CONT.)

2  ON BEHALF OF THE DEFENDANT
   TRUDY HANCOCK IN HER OFFICIAL CAPACITY AS BRAZOS
3  COUNTY ELECTIONS ADMINISTRATOR:

4     J. Eric Magee
      ALLISON, BASS & MAGEE, LLP
5     402 West 12th Street
      Austin, Texas 78701
6     (512) 482-0701
      e.magee@allison-bass.com
7
      Bruce L. Erratt
8     BRAZOS COUNTY ATTORNEY'S OFFICE
      300 East 26th Street, Suite 1300
9     Bryan, Texas 77803
      (979) 775-7400
10    berratt@brazoscountytx.gov

11
   ON BEHALF OF THE DEFENDANT
12 PERLA LARA IN HER OFFICIAL CAPACITY AS CITY OF
   McALLEN, TEXAS SECRETARY:
13
      Isaac J. Tawil
14    Austin Stevenson
      CITY OF McALLEN
15    1300 West Houston Avenue
      McAllen, Texas 78501-5002
16    (956) 681-1090
      itawil@mcallen.net
17    astevenson@mcallen.net

18
   ALSO PRESENT:
19
      Brian Christopher, Video Technician
20

21

22

23

24

25

League of Women Voters of Texas - 5/18/2020

5

INDEX
GRACE CHIMENE
May 18, 2020

REMOTE APPEARANCES                              3

PROCEEDINGS                                     8


EXAMINATION OF GRACE CHIMENE:

BY MS. MACKIN                                   8

BY MR. TAWIL                                    88

BY MR. MAGEE                                    94

BY MS. SURIANI                                  107

BY MS. MACKIN                                   110


CORRECTIONS AND SIGNATURE                       118

REPORTER'S CERTIFICATION                        119

6

```
 1                    DEPOSITION EXHIBITS
                         GRACE CHIMENE
 2                       May 18, 2020

 3
      NUMBER              DESCRIPTION              MARKED
 4
      Exhibit 1      Defendant Secretary of          11
 5                   State's First Amended
                     Notice of Oral Deposition
 6                   Pursuant to Federal Rule
                     of Civil Procedure 30
 7
      Exhibit 2      Plaintiffs' Original           20
 8                   Complaint

 9    Exhibit 3      League of Women Voters of       37
                     Texas Education Fund
10                   (TEF) Proposed Budget for
                     2016-2018
11                   LWV-00000575

12    Exhibit 4      Explanation of Proposed         47
                     Budgets for 2016-2018
13                   Excerpts from 2016
                     Convention Workbook
14                   LWV-00000020 -
                     LWV-00000022
15
      Exhibit 5      Explanation of Proposed         65
16                   Budgets
                     LWV-00000068 -
17                   LWV-00000069

18    Exhibit 6      Explanation of Proposed         66
                     Budgets
19                   LWV-00000240 -
                     LWV-00000241
20
      Exhibit 7      Explanation of Proposed         68
21                   Budget for 2020-2022
                     LWV-00000151 -
22                   LWV-00000153

23

24

25
```

League of Women Voters of Texas - 5/18/2020

7

```
 1                    DEPOSITION EXHIBITS
                        GRACE CHIMENE
 2                       May 18, 2020

 3
    NUMBER              DESCRIPTION            MARKED
 4
    Exhibit 8       PowerPoint, LWV,              71
 5                  Empowering voters
                    Defending democracy, Get
 6                  in the Game
                    LWV-00000272 -
 7                  LWV-00000295

 8  Exhibit 9       PowerPoint, LWV               71
                    Empowering voters
 9                  Defending democracy, Vote
                    by Mail
10                  LWV-00000344 -
                    LWV-00000367
11
    Exhibit 10      Excel Spreadsheet            82
12                  LWV-00000701

13  Exhibit 12      Facebook Screenshot         110
                    LWV-00000702
14
    Exhibit 13      Facebook Screenshot         113
15                  LWV-00000703

16

17

18

19

20

21

22

23

24

25
```

League of Women Voters of Texas - 5/18/2020

8

```
 1                    PROCEEDINGS
 2                  GRACE CHIMENE,
 3   called as a witness, having been duly sworn by a
 4   Notary Public, was examined and testified as
 5   follows:
 6                    EXAMINATION
 7   BY MS. MACKIN:
 8        Q.    Good morning, my name is Anna Mackin.
 9   I'm an attorney with the Texas Office of the
10   Attorney General and I represent the defendant, the
11   Texas Secretary of State, in this lawsuit.  I'm
12   going to be taking your deposition today.
13              Would you please speak and spell your
14   name for the record.
15        A.    Grace Chimene, G-r-a-c-e C-h-i-m-e-n-e.
16        Q.    And, Ms. Chimene, I understand that you
17   have been deposed before; is that correct?
18        A.    Yes.
19        Q.    How many times?
20        A.    Once.
21        Q.    And was it also a virtual deposition,
22   just like this one today?
23        A.    Yes, it was.  Yes.  But I had an office
24   and now I don't have an office.
25        Q.    Well, thank you for your time today.
```

1  Some of this is probably going to be familiar to you

2  from your previous experience with a videoconference

3  deposition, but I just want to go over a couple of

4  ground rules to help us get a clear record and

5  hopefully do this as efficiently as we can for

6  everybody.

7           Please try to give a verbal answer to my

8  questions, a yes or a no, as opposed to huh-uh,

9  uh-huh, a shake of the head, just to make it clear

10  on the record what your response is.  Okay?

11       A.    Okay.

12       Q.    And I think the court reporter might even

13  be giving us some help with this, but I will try to

14  let you finish your answers before I ask my next

15  question and I ask that you please try to let me

16  finish my question before you begin your answer; is

17  that fair?

18       A.    Yes.

19       Q.    If you don't understand one of my

20  questions today, will you please tell me so that I

21  can ask it better or rephrase it?

22       A.    Okay.

23       Q.    And obviously if you need a break at any

24  time, that's completely fine.  I will have you

25  answer a question that is pending if you need to

1  take a break, but as soon as you answer any question

2  that I've already asked, we can go ahead and take a

3  restroom break, water break, whatever you need.

4  Okay?

5       A.    Okay.

6       Q.    And is there any reason that you might be

7  unable to answer my questions honestly, completely

8  and accurately today?

9       A.    There is no reason.

10       Q.    Do you have anyone in the room with you?

11       A.    I have people who will be walking in and

12  out of the room today.

13       Q.    Okay.  Now that the deposition is

14  underway, I'll ask that if you discuss the substance

15  of your testimony with anyone, that you please let

16  me know that.  Obviously, once the deposition is

17  over, I don't expect you to follow up if you have

18  conversations; but during the deposition please do

19  let me know if you communicate with anyone about the

20  substance of your testimony.  Okay?

21       A.    Okay.

22       Q.    And do you have any documents in front of

23  you?

24       A.    I opened up that one document that you

25  just sent in the chat.

1      Q.    The -- okay.  So I'm going to be sharing

2  some more documents with you today using that same

3  chat function.  Again, since we're situated

4  remotely, please let me know if you are referring to

5  any other document, website, text message, anything

6  like that in answering my questions.  Okay?

7      A.    Okay.

8      Q.    And so we did a test run, I believe, in

9  the chat box with the deposition notice, and I'm

10  going to go ahead and make that Exhibit 1 to this

11  deposition.  And I'll ask that if you do not still

12  have it open on your screen, will you please open

13  that up for me and let me know when you are ready to

14  proceed.

15              (Deposition Exhibit 1 marked for

16  identification.)

17      A.    Okay.  I'm ready.

18  BY MS. MACKIN:

19      Q.    Have you seen Exhibit 1 before?

20      A.    Yes.

21      Q.    And what is it?

22      A.    It says -- it's a notice.  It's a notice.

23      Q.    The notice --

24      A.    I don't know what the title is.

25      Q.    That's fine.  Do you understand that you

1    are here today to give testimony about the topics in

2    this notice?

3         A.    Yes.

4         Q.    Okay.  And you understand that this

5    document says that the League of Women Voters of

6    Texas is directed to designate one or more persons

7    to testify on its behalf on these topics and that

8    you are the person the League of Women Voters has

9    designated?

10        A.    Yes.

11        Q.    And I will ask that you just take the

12   time you need to scroll down to page 6 of the

13   notice, which lists the corporate representative

14   deposition topics.

15        A.    Okay.

16        Q.    And take a moment to review those topics

17   and let me know if you are prepared to testify on

18   all of those topics today.

19               (Witness reviews document.)

20        A.    Yes.  Though at this moment, I don't know

21   what duces tecum means.

22   BY MS. MACKIN:

23        Q.    Fair enough.  And we've sort of already

24   covered this, I just want to make sure that the

25   record's very clear, you understand that you are

League of Women Voters of Texas - 5/18/2020

13

1   here to testify on behalf of the League of Women

2   Voters and not in your personal capacity?

3        A.   Yes.

4        Q.   Okay.  And, of course, that your answers

5   today are going to bind the League of Women Voters

6   of Texas?

7        A.   Bind?  Is that what you said?

8        Q.   Yes.

9        A.   Okay.

10        Q.   Ms. Chimene, how did you prepare for

11   today's deposition?

12        A.   I read through all the documents that we

13   provided at the request, that I provided to the

14   lawyers and they shared with you.  I read through

15   them.  I also had a meeting on Friday with the

16   lawyers, and then I met with them for a few minutes

17   this morning.

18        Q.   And how long was your meeting on Friday?

19        A.   It was probably an hour.

20        Q.   Other than your attorneys, did you speak

21   with anyone to prepare for the deposition today?

22        A.   No.

23        Q.   And other than the documents that you

24   just discussed that were provided in response to our

25   discovery request, did you review any other

14

1  documents to prepare for the deposition today?

2     A.   Yes.  We -- after talking with the

3  lawyers on Friday, we made a request for -- that

4  we -- I believe they shared with you this morning,

5  to -- for some members to provide information if

6  they vote by mail or plan to vote by mail, and also

7  we sent out a survey to our members on Friday about

8  voting by mail.  And so I reviewed those too, those

9  results over the weekend.

10    Q.   And yes, your attorneys did provide those

11 to me --

12    A.   Okay.

13    Q.   -- this morning, so I appreciate you

14 walking me through that.  Any other documents that

15 you reviewed in preparation for the deposition

16 today?

17    A.   I don't believe so.

18    Q.   Okay.

19         MS. SURIANI:  Anna, before we move

20 on, I just want to object on the record about the

21 document request that came attached to the subpoena.

22 I know we all sent that to you in writing on Friday,

23 but I just want to put for the record that

24 specifically Request No. 2 attached to the subpoena

25 duces tecum, that, you know, we view it as untimely

1   and also vague and overbroad.  So I just want to

2   state that for the record before we move on.

3                   MS. MACKIN:  Thanks for that.  Were

4   any documents withheld on the basis of that

5   objection?

6                   MS. SURIANI:  I don't believe so.  We

7   produced those documents to you this morning that

8   Grace prepared and reviewed in preparation for the

9   deposition, which is in accordance with how we

10  viewed your discovery request.

11                  MS. MACKIN:  Thanks.

12  BY MS. MACKIN:

13      Q.    Okay.  Ms. Chimene, did you meet with

14  anyone at -- did you meet with anyone at the League

15  of Women Voters of Texas to prepare for today's

16  deposition?

17      A.    No.  I did ask the president of the other

18  leagues to provide themselves or members to vote by

19  mail.  I mentioned that earlier.  So that wasn't

20  really a meeting about this.  It was just a request.

21      Q.    Fair enough.  Thank you.  I appreciate

22  you being forthcoming.  And so just to kind of close

23  the loop on Exhibit 1 for now, are you adequately

24  familiar with the facts to testify on the topics?

25      A.    Yes.

1    Q.    Okay.  All right.  Before we get into the

2  sort of meat of the deposition, we talked about how

3  this is a 30(b)(6) deposition.  You are a corporate

4  representative, but I find it helpful to get a

5  little bit of information about your background, if

6  you will indulge me.

7          You are currently the president of the

8  League of Women Voters; is that right?

9    A.    I am president of the League of Women

10  Voters of Texas.

11    Q.    Thank you for that.  And I will do my

12  best to keep it very clear because I understand that

13  there's a few different levels of the organization.

14    A.    Yes.

15    Q.    And I appreciate you clarifying if I

16  ever --

17    A.    That's okay.

18    Q.    And so as president of the League of

19  Women Voters of Texas, what are your duties and

20  responsibilities?

21    A.    I lead the board meetings, I review

22  everything that goes out to the public, I review the

23  budget, I lead the convention.  Most everything that

24  goes through our committees on the board come

25  through me so that I can give final approval for

1   them.  I guess give overall guidance.  I give

2   direction to the board to try to help them get their

3   different committee work done.  It is a working

4   board.  It's not whatever the other kind of boards

5   are.  This is the only board I've ever been on.  It

6   is a working board where we actually are all

7   volunteers and we all get the work of the league

8   done.

9        Q.    So does the -- well, I'll hold back and

10  save that for later.

11       A.    Okay.

12       Q.    So the work with the league is volunteer

13  work; is that right?

14       A.    Yes.

15       Q.    Before you became involved with the

16  league, were you employed?

17       A.    Even as -- I just became -- I just

18  retired after --

19       Q.    Congratulations.

20       A.    -- becoming president -- because being

21  president is, like, more than a full-time job.

22  Before I was 30 --

23                 THE WITNESS:  One speaker at a time.

24       A.    So before, I was more than 30 years as a

25  pediatric nurse practitioner, all in Texas and

1  mostly doing outpatient pediatric care at different

2  clinics around Texas.  And I joined -- I guess

3  that's it.  Is that what you wanted?

4  BY MS. MACKIN:

5     Q.    Yes.  That's very helpful.  Thank you.

6  And so before you became president at the League of

7  Women Voters of Texas, did you go from member to

8  president, or did you have any other sort of

9  leadership roles before you took on the post of

10 president?

11    A.    So I joined the league in 2012 and then I

12 was -- when I joined, the legislative session was

13 in, so I was a -- something called a volunteer who

14 was a capitol corps member.  We provided -- we read

15 testimony at the capitol that other people had

16 written.  I represented the league on different

17 coalitions, then I joined the board in 2014 working

18 in advocacy.  Then in the next board session, I was

19 the chair of advocacy and then I became the

20 president.

21    Q.    At a high level, can you speak generally

22 about the League of Women Voters of Texas advocacy

23 activities that you participated in?

24    A.    So what the league does, we've been

25 around for 100 years, and so what we've done is we

League of Women Voters of Texas - 5/18/2020

19

1   have studies, we come up with positions.  And then

2   in advocacy, we support those positions, local

3   leagues do it at the local level.  Because I'm on

4   the state league, I do it at the state level, with

5   all the state activities that are going on, mostly

6   at the capitol.  So we support or oppose our

7   positions during the legislative session and

8   sometimes in the interim, depending on what's going

9   on.

10        Q.    Now that you say that, I actually think I

11  might know where I -- how I recognize your name,

12  because I did a tour last session in the Attorney

13  General's government relations office.  So I

14  remember some things and I remember hearing

15  testimony from league members and I think you may

16  have been among them.

17        A.    Well, I very well could be.  I mostly try

18  to do testimony on child health, anything to do with

19  health care.  That's where I try to limit it,

20  because that's what my specialty is and I know what

21  I'm talking about when I provide that testimony.

22        Q.    That doesn't always stop everyone at the

23  capitol from talking, but I'll leave that there.

24        A.    There you go.

25        Q.    Okay.  So I'm going to come back to

1  specifics about the league and I'm going to share

2  with you what will be Exhibit 2 to this deposition.

3            (Deposition Exhibit 2 marked for

4  identification.)

5       A.   Do you want me to open it?

6  BY MS. MACKIN:

7       Q.   Yes, please.  And let me know when you

8  have it pulled up.

9       A.   Okay.  Is it 00963?  That one?

10      Q.   It should be -- there are some numbers in

11 front of it, but it should be the Plaintiffs'

12 Original Complaint.

13      A.   That's what it says at the top.  Okay.

14      Q.   All right.  And do you have Exhibit 2

15 pulled up?

16      A.   I have 2019087_1.

17      Q.   Yes.  And I apologize.  That's the file

18 name.

19      A.   Okay.

20      Q.   But it was -- on my computer, but it will

21 be Exhibit 2 to the depo.

22      A.   Okay.

23      Q.   Have you seen this document before?

24      A.   Let me look at it.

25            (Witness reviews document.)

 1      A.    Yes.  It should have me in there.  Yes.

 2  BY MS. MACKIN:

 3      Q.    What is it?

 4      A.    The complaint.

 5      Q.    And just to be clear, it's the complaint

 6  that the plaintiffs in this lawsuit have filed.

 7  Does that seem right?

 8      A.    It says Plaintiffs' Original Complaint,

 9  at the top.

10      Q.    And did you review this document before

11  it was filed?

12      A.    Yes.

13      Q.    Do you remember how much time you spent

14  reviewing it before it was filed?

15      A.    Probably 30 minutes.

16      Q.    And I'm just going to ask a couple of

17  background questions about the other plaintiffs in

18  this case.  Obviously, the League of Women Voters of

19  Texas is one of the plaintiffs and that's why you

20  are here today.  I am curious as to whether the

21  League of Women Voters of Texas has had any prior

22  dealings with Dr. George Richardson, one of the

23  individual plaintiffs in the lawsuit?

24      A.    No.

25      Q.    And what about Ms. Rosalie Weisfeld?

22

1      A.     No.

2      Q.     Has League of Women Voters of Texas had

3  any prior dealings with the Austin Justice

4  Coalition, that you know of?

5      A.     Not that I know of.

6      Q.     Okay.  How about the Coalition of Texans

7  With Disabilities?

8      A.     Yes.

9      Q.     What was the nature of the prior dealings

10  between League of Women Voters of Texas and the

11  Coalition of Texans With Disabilities?

12     A.     We often work with them at coalition and

13  that group, and I e-mailed them and I work with them

14  on voting and election issues that have to do with

15  voters with disabilities.

16     Q.     Any other dealings that you can think of?

17     A.     With them?

18     Q.     Right.

19     A.     I can't imagine -- I don't know.  I

20  wouldn't -- I don't know.

21     Q.     Fair enough.  Has the League of Women

22  Voters of Texas had any prior dealings with MOVE

23  Texas Civic Fund?

24     A.     Yes.

25     Q.     And what was the nature of those

League of Women Voters of Texas - 5/18/2020

23

1  dealings?

2       A.    I have talked with them on the telephone.

3  They're in some of the coalitions we belong to.  It

4  always has to do with voting and elections.  I have

5  shared their information with local leagues so that

6  they can choose if they want to work with them at

7  the local level at their -- in their communities

8  where they may be serving college students.

9       Q.    Anything else?

10      A.    Not that I recall.

11      Q.    And has the -- well, okay.

12            Has the League of Women Voters of Texas

13  had any prior dealings with the Texas Secretary of

14  State's office?

15      A.    Yes.

16      Q.    And what was the nature of those

17  dealings?

18      A.    We work frequently with the Secretary of

19  State's office before, during and after elections,

20  trying to collaborate with them on improving voter

21  information -- voting information, election

22  information, trying to make the wording simple and

23  sometimes we go to their press conferences.

24  Occasionally, we have in-person meetings with the

25  Secretary of State.  We have in-person meetings with

1  some of their staff.  Sometimes I e-mail them,

2  generally about different ideas to improve voting

3  and election information in Texas.

4       Q.    So fair to say you have kind of a line of

5  communication with the Secretary of State's office?

6       A.    Yeah.  Yes.  Sorry.

7       Q.    That's fine.  And who specifically at the

8  Texas Secretary of State's office do you reach out

9  to if you want to send along an idea or raise an

10 issue?

11      A.    So there's three folks that I normally

12 would contact:  Keith Ingram and Christina Adkins.

13 And then if it's about, like, communications or

14 press or something like that, then it would be

15 Stephen Chang, I think his name is.  But I could be

16 wrong about his name.  I would have to -- it would

17 pop up in my e-mail if I started an e-mail to him.

18 That's generally who I would talk to, though we do

19 have specific in-person meetings with the Secretary

20 of State.

21      Q.    And in your experience, are the folks at

22 the Secretary of State's office responsive to you?

23      A.    It depends on what I'm asking them for.

24 They're always polite.  They always are responsive.

25 They don't always do what I ask.

League of Women Voters of Texas - 5/18/2020

1    Q.    Fair enough.  Now I see the word

2  "responsive" is somewhat unclear.  They always write

3  back.  They don't always do what you ask?

4    A.    There you go.  That's okay.  We have a

5  nice working relationship.

6    Q.    And how about -- to your knowledge, has

7  the League of Women Voters of Texas had any prior

8  dealings with the City of McAllen's secretary?

9    A.    No.

10    Q.    What about the --

11    A.    No.

12    Q.    What about the Brazos County elections

13  administrator?

14    A.    More than likely, yes.

15    Q.    And why do you -- what makes you say

16  that?

17    A.    Because we do something called a county

18  election website review.  We've done them on and off

19  since 2016, and we do contact the county election

20  administrators of all the counties and send them the

21  results of their county election website review.

22  And then I may have sent -- any e-mails would have

23  been about that.

24    Q.    Tell me about the county election website

25  review.

League of Women Voters of Texas - 5/18/2020

26

1        A.    In 2016, we did our first review and

2   we -- I think you have a document about it.  What we

3   found out is that there's 254 counties in Texas and

4   there is different information provided on county

5   websites.  Some counties were small and didn't have

6   websites, other counties at that point in 2016

7   didn't even have the word "election" or "vote" --

8   "voter" or "voting" on their county election

9   website.  So what we did was we created a

10  document -- a survey, and we reviewed the election

11  website using that survey to try to give an

12  objective review that would let us and them know

13  what is available on their website currently and if

14  it was easy for voters to find.  And then it's

15  changed over the years -- sorry, somebody is texting

16  me.  Go away.  Sorry.

17           So it has changed over the years what we

18  do -- what we review and what we look for.  So at

19  that point it was really important that voter ID

20  information in 2016 was there.  And then we provided

21  the election administrators with a report.  And what

22  we tried to do was give them certificates of -- if

23  they were outstanding, what we considered

24  outstanding according to our review.  And then we

25  sent them certificates and we provided them with

1   information about how they could improve using the

2   research that we did, from best -- gathering

3   together best practices.

4        Q.    In your experience, were the counties

5   receptive to feedback to making changes?

6        A.    We did see an improvement after we sent

7   them those reviews.  Some counties have more ability

8   to improve their websites than others and so we're

9   aware of that.  Some counties have more resources.

10  What was the question again?  I can't remember.

11       Q.    Whether counties were receptive to

12  feedback based on your findings in the county

13  election website review.

14       A.    Some counties were very receptive to

15  feedback and were very proud to receive their

16  certificate.  They really were.  It was wonderful.

17  And some counties probably ignored it or didn't get

18  the e-mail or just had too many things on their

19  plate because they're working so hard.  So it

20  depended on the counties.  There's 254 of them.  We

21  don't expect all of them to react the same way.

22       Q.    Fair enough.  I can imagine things look a

23  little different in Loving County with its 47

24  residents than they do in Harris.

25       A.    Yeah, absolutely.  And we appreciate that

1  and we try to give kudos to all the different size

2  counties, depending on how well they're doing.

3       Q.    All right.  So now I'm just going to

4  track along the topics in the deposition notice.  I

5  don't need you to pull it back up.

6       A.    Okay.

7       Q.    I'm just letting you know what I'm doing.

8            So how would you describe the mission of

9  the League of Women Voters of Texas?

10      A.    The mission of the league is empowering

11 voters and defending democracy.  I'm very happy that

12 now it's a four-word mission.  Before it was longer

13 and I couldn't memorize it.  So to me those words

14 are perfect for what we're trying to do and what

15 we've been trying to do over the years.  So I really

16 love our mission.  It's hard for me to say

17 defending -- empowering voters and defending

18 democracy without also saying yay at the end.

19      Q.    And you mentioned it used to be a longer

20 mission statement.  I can tell you that you were --

21 that was way too long for your taste.  When did the

22 mission statement -- the current mission

23 statement --

24      A.    I think maybe four years ago.  Maybe

25 four years ago.

League of Women Voters of Texas - 5/18/2020

1      Q.    And who developed it?

2      A.    The LWVUS.

3      Q.    Okay.  So you mentioned that the mission

4  statement changed.  Would you say that the

5  mission -- the actual mission of the League of Women

6  Voters of Texas has changed over time?

7      A.    No, I don't think so.  Not since I've

8  been in it.

9      Q.    And this actually pivots nicely into the

10  next thing I want to talk about.  You mentioned

11  League of Women Voters US.

12      A.    Uh-huh.

13      Q.    What is that?

14      A.    The League of Women Voters is a

15  three-tiered organization.  When you join the League

16  of Women Voters as a member, you normally join as

17  a -- into your local league, so the league that

18  serves your community, because that's where your

19  local activities are done.  When you join your local

20  league, you also are joining as a member of the

21  state league and the US league.  So we're all one

22  organization.  We speak with one voice and it is --

23  but it is serving -- the local leagues serve the

24  populations of the community, the state league

25  serves the whole state and the US league serves all

1 the US.

2       Q.    And can you explain to me a little bit

3 more -- I know this might not be a great question.

4 I'm just -- so I'm sorry.  Let me know if it doesn't

5 make sense -- but a little bit more about the

6 relationship between the US league, the state

7 leagues and the local leagues.

8       A.    The relationship?  So we're all members

9 of the same organization.  All our membership data

10 is kept up at the LWVUS.  So when you join, you

11 join -- you pay the money to join.  It's a

12 membership organization.  You pay the money to join.

13 Some of the money stays at the local level, some of

14 the money goes to the state level and some of the

15 money goes to the US level.

16       Q.    That's helpful.

17       A.    The positions -- yeah, okay.  The

18 positions are -- at the national level, we support

19 everything they do.  We support that at the state

20 level and also at the local level.  So we are a

21 membership organization.  We don't do something that

22 is not supported by one of our positions at the US

23 level, state or local level.  Does that make sense?

24       Q.    And so would there maybe be some

25 circumstances in which a state league or a local

1   league has a specific position that the national

2   league doesn't -- I'm not saying like something

3   contradictory, I mean something like more specific.

4        A.    Right.  And so they would, because a

5   local level league -- a local league is serving

6   their community.  So they may have -- take specific

7   issues in regard to traffic or in regard to access

8   to playgrounds, access to parks.  They may take --

9   you know, just things that have to do with the local

10  level.  So in the Houston area, it might be having

11  to do with the flooding that's going on.  Although

12  they may be using a state position, they may change

13  it a little bit -- they still support it, but to

14  make -- to help more at the local level, to be more

15  specific about what they support at the local level.

16       Q.    And I want to understand a little bit

17  more about how funds move between the different

18  levels, to the extent that they do.  I think you

19  mentioned that the -- that members pay dues and some

20  of it goes to local, some of it goes to state, some

21  of it goes to US; is that right?

22       A.    Yes.  They call it a per-member payment,

23  and you'll see that in some of the documents.  And a

24  per-member payment is what you pay when you join.

25  It's not really dues.  It's really something else, a

1  membership payment.  And that those per-member

2  payments, some stays at the local level, some at the

3  state level and the US level.  And any money that

4  comes in on top of that, the local leagues can keep.

5  So oftentimes people will make donations to their

6  local league to help pay for the Voters Guide or

7  some other activity that's going on and that would

8  be on top of the per-member payment.

9       Q.    And the League of Women Voters of Texas

10  currently -- we're going to get a little bit more

11  into the weeds of this later on -- but currently is

12  a 501(c)(3) organization; is that right?

13       A.    The League of Women Voters of Texas is

14  now a 501(c)(3).

15       Q.    And do you know the tax status of the

16  national League of Women Voters, whether it's a

17  501(c)(3)?

18       A.    They have -- there is a 501(c)(3) called

19  LWVUS Education Fund and there's a 501(c)(4), which

20  is probably -- but I'm not the president of the

21  LWVUS.

22       Q.    Fair enough.

23       A.    But I think -- that's my understanding.

24       Q.    You're not testifying on behalf of the

25  LWVUS, so I --

League of Women Voters of Texas - 5/18/2020

33

```
 1         A.     No.

 2         Q.     When was the League of Women Voters of

 3    Texas established?

 4         A.     It was established in October of 1919.

 5    And we celebrated our hundredth anniversary last

 6    October at the -- in San Antonio at the something

 7    hotel.  It was just a fantastic celebration.  We did

 8    invite the Secretary of State to come to it.

 9         Q.     Was it -- did she come?

10         A.     No, she couldn't make it.

11         Q.     And why was the League of Women Voters of

12    Texas established?

13         A.     So the League of Women Voters came about

14    through women fighting to -- doggonit -- fighting to

15    get the right to vote in the United States.  So that

16    fight went on for a very long time.  There was a lot

17    of organizations.  And in Texas, we got the right

18    before many other folks did because we got to vote

19    in a primary, so that was fantastic.  And then out

20    of those organizations came the League of Women

21    Voters of Texas and they met in that very same

22    hotel, if I could just remember the name of it.

23         Q.     My gosh.

24         A.     Where we had our meeting at, so it was

25    really great.
```

League of Women Voters of Texas - 5/18/2020

34

1    Q.    That's really cool.

2    A.    St. Anthony Hotel.

3    Q.    Beautiful.  Yes.

4    A.    Yes, it was gorgeous.  And I can just

5  imagine those women a hundred years ago having their

6  first meeting and us having another meeting.  It was

7  wonderful.  Okay.

8    Q.    Do you know where the League of Women

9  Voters of Texas is incorporated, like what state

10  it's incorporated in?

11    A.    Texas.

12    Q.    And so does the League of Women Voters of

13  Texas receive funding from the League of Women

14  Voters of the US?

15    A.    So the League of Women Voters of the US

16  often will provide something, they call -- they have

17  different names for it, but they're basically grants

18  that states and sometimes local leagues can apply

19  for.  And they're -- to do something specific in

20  general, and then that money comes to us.

21    Q.    Has the League of Women Voters of Texas

22  ever received a grant from the League of Women

23  Voters of the US to fund voter education activities?

24    A.    Yes.  I believe so.

25    Q.    Do you know when?

League of Women Voters of Texas - 5/18/2020

35

1       A.    No.  I don't know any specifics.

2  Generally what happens is grants come up and then we

3  apply for them and we get them and normally it has

4  something to do with the elections.  So it generally

5  would have been around an election.

6       Q.    And do you know --

7       A.    Sometimes the grants are more open and

8  you can do more things with them.  And sometimes

9  they're specific to a certain topic.

10      Q.    And that actually segues beautifully

11  into -- sorry, do you need a break?

12      A.    No.  My phone is distracting.  I'm going

13  to turn it over.

14      Q.    Into the next thing I want to talk about.

15  Are you able to kind of separate out what the League

16  of Women Voters of Texas does into like buckets or

17  categories of activity?

18      A.    So there is -- we create a biannual

19  budget every other year at -- before convention that

20  all the members vote on.  We create a budget and

21  provide it to them and it's in our convention

22  workbook.  And in that budget there are categories.

23  So there are some categories where the budget is

24  divided up into specific categories.  But they

25  aren't super specific.

1     Q.    And when you say they aren't super

2   specific, how, then -- well, actually, I have those

3   documents, so we can talk about it with the

4   documents.  That will probably be a little bit more

5   straightforward.

6     A.    Yes.

7     Q.    Before we do that, though, I -- yeah,

8   let's go ahead and do that.  So I'm going to share

9   with you a document.  There's a few -- in the

10  documents we received, I received the convention

11  workbook, which had, I think, the budget that you

12  proposed to -- I don't know if you propose it or

13  publish it or whatever, that you share with folks at

14  the convention and then I also received a document

15  marked confidential, that I don't know if that was

16  maybe a draft budget or something like that.

17    A.    I don't know.  When I look at it, I'll be

18  able to tell you more.

19    Q.    Okay.

20    A.    And you -- I believe you received more

21  than one convention workbook.

22    Q.    Yes.  Yes.

23    A.    Okay.

24    Q.    And specifically, I received both a

25  budget marked confidential and a convention workbook

League of Women Voters of Texas - 5/18/2020

37

 1  for 2016 through 2018 and then also for 2018 through

 2  2020.  But we can look at the documents.  I may have

 3  said that wrong.

 4      A.    There's one -- I think there's one more.

 5  Okay.

 6      Q.    Okay.  I'm going to start with the

 7  document labeled League of Women Voters 000 --

 8  several zeros, 575.  And I'm sharing that in the

 9  chat box now.

10      A.    Okay.

11            (Deposition Exhibit 3 marked for

12  identification.)

13  BY MS. MACKIN:

14      Q.    Do you recognize this document?

15      A.    In that I read it for this deposition,

16  yeah.

17      Q.    I see.  Okay.  And what is this document?

18      A.    This document is -- it is the budget that

19  was presented to the members of the delegates to the

20  convention, the statewide convention, so that the

21  delegates can vote on whether they approve or don't

22  approve the budget.

23      Q.    And do you know if this is the budget

24  that was ultimately -- well, strike that.

25            Was this budget approved?

1    A.    The budget that is in the convention

2  workbook was approved, and I did not compare the two

3  before this deposition.

4    Q.    Okay.  No problem.  I will go ahead and

5  pull the convention workbook.

6    A.    Okay.  I'm not going to be able to see

7  you for a second because I'm going take up the whole

8  screen with this document.

9    Q.    No problem.  I will not make any crucial

10 facial expressions.

11    A.    And is it up?

12    Q.    Not quite.  Sorry, I'm finding it.

13    A.    That's okay.

14    Q.    Well, I am trying to share a document.

15 Just one moment.

16          THE WITNESS:  Can I have a glass of

17 water, please.

18 BY MS. MACKIN:

19    Q.    Sorry, were you asking someone in your --

20    A.    I'm in the kitchen.

21    Q.    I don't mind if you have a glass of

22 water, if you were asking me.  Okay.  There we go.

23    A.    Okay.

24    Q.    I believe the budget appears on pages 21

25 and 22 of this document.

1        A.    Just a second.

2                    (Witness reviews document.)

3        A.    So to me, Anna, it starts on 19.  If you

4   scroll up to 19, just to see the whole budget --

5   BY MS. MACKIN:

6        Q.    I see.

7        A.    -- information.

8        Q.    Okay.

9        A.    Right.  And then 20 and 21 is what I have

10  it as.

11       Q.    Okay.

12       A.    Okay.

13       Q.    That makes sense.  And so at the top of

14  this document -- at the top of page 19, it looks

15  like it explains a little bit about what we already

16  touched on, the fact that -- well, I actually don't

17  know how much we touched on it.  But it looks like

18  there were two organizations, a 501(c)(3) and a

19  501(c)(4) for 2016-2018; is that right?

20       A.    Right.

21       Q.    And what was the -- what was the

22  difference between these two organizations, the

23  League of Women Voters of Texas and the League of

24  Women Voters of Texas Education Fund?

25       A.    So at -- during this convention at this

40

 1 | time in 2016, League of Women Voters of Texas was a

 2 | 501(c)(4).

 3 |     Q.    Okay.

 4 |     A.    League of Women Voters of Texas Education

 5 | Fund was a 501(c)(3).

 6 |     Q.    Okay.

 7 |     A.    They had -- at that point they had

 8 | different boards and different board meetings and

 9 | that's it.  Is there something else you want me to

10 | say?

11 |     Q.    I'm curious as to which -- would it be

12 | fair to say that all the activities that the League

13 | of Women Voters of Texas does now were split between

14 | the 501(c)(3) and the 501(c)(4) during 2016-2018?

15 |     A.    Yes.

16 |     Q.    Okay.  And kind of at a high level, what

17 | activities would the 501(c)(4) do compared to the

18 | 501(c)(3)?

19 |     A.    So the 501(c)(4) would do basically

20 | things at the capitol, lobby for bills that we

21 | supported, lobby against bills that we opposed.  And

22 | does that make sense?  High level.  Was there

23 | another question about the education fund?

24 |     Q.    I guess I'm just -- I'm trying to parcel

25 | out the difference between these two organizations

1  as they existed in 2016-2018.

2      A.    So at that time, the education fund did

3  the Voters Guide -- my understanding did the Voters

4  Guide and voter education, things like that.

5      Q.    And what type of voter education

6  activities did the League of Women Voters of Texas

7  Education Fund engage in for 2016-2018?

8      A.    I think there's a page that describes it

9  all, but I would presume to say that it says the

10  Voters Guide, the voter education, such as social

11  media, things we put -- you know, bookmarks,

12  trending thing, videos, anything that we created

13  about voter education.  If we did -- I don't know if

14  we did one or not that year, but a forum, any forums

15  or KiNet forums that had gone on would have gone on

16  through that thing too, that business organization.

17      Q.    And what would you educate voters about?

18      A.    So we -- I've got to move these out of

19  the way.  I can't talk to you without seeing your

20  face.  Okay.

21            So what we educate voters about is when

22  there's elections, when the important dates for the

23  election are.  We educate voters on how to register

24  to vote.  We educate voters on how to vote by mail.

25  We educate voters on early voting, on early voting

League of Women Voters of Texas - 5/18/2020

42

```
 1  dates.  We educate voters on -- oh, what's that

 2  called?  On the Voters Guide, where we provide

 3  voters with -- where we ask candidates questions who

 4  are running for office and those answers are put

 5  into something called a Voters Guide, where the

 6  voters can go and compare candidates and find

 7  candidate information so they can make an informed

 8  choice about who they're voting for.

 9      Q.    And I know that we're looking at a

10  document that's specific to 2016-2018, but --

11      A.    Yes.

12      Q.    -- would your answer be the same if I

13  asked you about 2018 to the present?

14      A.    No.  It would be slightly different

15  because we went through a change in organization in

16  the 2018 convention.

17      Q.    Okay.  How -- and after the change in

18  organization, how did the league's voter education

19  activities change?

20      A.    The voter education activities did not

21  change.  What was improved was that our budget was

22  each year, because we had -- we were doing most of

23  our work through our 501(c)(3), which at that point

24  became, with the members voting on it, the League of

25  Women Voters of Texas.  So we were able to do all of
```

League of Women Voters of Texas - 5/18/2020

43

1   our work under the 501(c)(3) League of Women Voters

2   of Texas.

3       Q.    I want to drill down a little on

4   something you mentioned about educating voters about

5   voter registration.  Does that mean that the league

6   is actively trying to register folks or is it more

7   of just a here's the education, here's the

8   information, now go out and register?

9       A.    We have -- we provide the information in

10  many, many different formats.  We also are actively

11  registering voters in person because Texas has the,

12  you know, archaic voter registration method.  And so

13  that our members are very enthusiastic about

14  registering the voters in their community, so that

15  is one of our main activities that we do.

16      Q.    Is that done -- the actual voter

17  registration, is that done by the local leagues or

18  is that done by the League of Women Voters of Texas?

19      A.    The members of the local leagues who are

20  also members of the League of Women Voters of Texas,

21  and US, they are registering voters in their local

22  community.  Yeah.  The board of Texas is just the

23  board.  All of the members are our members who are

24  all across Texas.

25      Q.    And does the League of Women Voters of

League of Women Voters of Texas - 5/18/2020

44

1    Texas provide funding to those voter registration

2    activities?

3         A.    Well, we provide some funding.  We also

4    provide resources.  We provide handouts that we

5    create at the state level and we provide those for

6    the local communities to use, to not just leagues

7    but other partnering organizations or anybody can

8    actually download those and share them with whoever

9    they want.  We have a lot of resources we provide

10   that include voter registration information.

11        Q.    And so I want to separate that out in

12   terms of you mentioned some funding and then you

13   also mentioned resources.  And when we're talking

14   about resources, I'm kind of envisioning that as

15   like PowerPoints, videos, like walking scripts, like

16   materials that get created at the state level.  Is

17   that a fair understanding?

18        A.    Almost.

19        Q.    Okay.

20        A.    My understanding would be that we are a

21   all-volunteer organization.  We have one and a half

22   staff.  I consider the resources of all those

23   volunteers to include -- to include the time and

24   energy and efforts of all those volunteers who are

25   actually registering or those volunteers who created

1   those documents and created the videos and created

2   the PowerPoints and did all that effort.  To me,

3   that is one of the biggest resources we have is the

4   volunteers who work for our organization who don't

5   work.  They volunteer for our organization.

6        Q.    And so I just want to make sure I

7   understand about -- does the League of Women Voters

8   of Texas provide money to support voter registration

9   efforts?

10       A.    We provide -- so we provide money for all

11  the efforts that local -- we do provide some money

12  that local could use for voter registration.

13       Q.    Okay.

14       A.    Yes, we do.

15       Q.    Do you provide anything that you say, you

16  have to use this for voter registration?

17       A.    The League of Women Voters of Texas does

18  not provide anything that says they have to use it

19  for voter registration, that I know of.

20       Q.    It's more of just locally use it for what

21  you need it for, basically?

22       A.    We have -- voter registration is such an

23  integral part of what we do.  It is -- it would be a

24  part of the Voters Guide, which we provide or pay

25  for for the leagues to use.  And it's a part of

 1 VOTE411, which is also a way that voters can get

 2 to -- information on registering.  It is a part of

 3 our website.  It is integral to what we do at the

 4 league.  So I wouldn't say that we provide resources

 5 and money, but it's not like in a little pot that

 6 says, just use this for voter registration.  It is

 7 in everything that we do.

 8        Q.    Fair enough.  I want to also talk about

 9 those state-level resources that you mentioned that

10 League of Women Voters of Texas creates and shares

11 with the local leagues.  I know you've listed some

12 examples, but can I get you to kind of maybe refresh

13 me on it because I wasn't writing them down.  You

14 mentioned the Voters Guide?

15        A.    The Voters Guide, yeah.  We have

16 PowerPoints.  We have bookmarks.  We have brochures.

17 We have handouts.  We have YouTubes, videos,

18 websites, web pages, graphics and we have people who

19 support all the voter registration activities, and I

20 consider them a resource.

21        Q.    Absolutely.  Anything else you can think

22 of?

23        A.    About -- ask the question again.  I can't

24 remember.

25        Q.    Sure.  Resources that the League of Women

47

1   Voters of Texas has available for local leagues.

2        A.    We have a section on our website called

3   Get Out the Vote that has research-based best

4   practices that we also create.  I'm trying to think

5   if there's anything else.  I'm sure there's many

6   more things.  I just cant recall them right now.

7        Q.    Okay.  And I think, based on the

8   conversation we just had, I might be about to ask a

9   question that you can't, like, precisely answer the

10  way I'm asking it, which is fine.  So just let me

11  know that, if that's the case.  I'm not trying to

12  suggest that your budget should look any different

13  than it does, but I just want to kind of be clear

14  about what the document shows.  If we can go back

15  to, let's see, the budget for 2016-2018, which

16  begins on page 19 of the 2016 convention workbook.

17       A.    Yes.

18       Q.    Which is marked League of Women Voters 20

19  and ends on page 21 of the convention workbook,

20  which is marked League of Women Voters 22.  And I'm

21  going to make those three pages an exhibit -- let's

22  see.  That will be Exhibit 4 to this deposition.

23            (Deposition Exhibit 4 marked for

24  identification.)

25

48

1  BY MS. MACKIN:

2       Q.    But scrolling down to League of Women

3  Voters 21, I want to talk through what these

4  categories mean.  So it looks like League of Women

5  Voters 21 is the (c)(4)'s budget and League of Women

6  Voters 22 is the (c)(3)'s budget?

7       A.    So for -- on my convention workbook that

8  I'm looking at, at the top left-hand page it says,

9  20.

10      Q.    Yes.

11      A.    And it says, League of Women Voters of

12 Texas Proposed Budget.

13      Q.    And I'm sorry, it's a little bit

14 confusing.  I was referring to the Bates number at

15 the bottom, which is one ahead of the Bates number

16 at the top.

17      A.    Okay.  I got it now.  Thank you.

18      Q.    So we're -- we're both looking at page 20

19 of the document, which is marked League of Women

20 Voters 21 down at the bottom.

21      A.    Yes.

22      Q.    And that would be the (c)(4)'s budget; is

23 that right?

24      A.    This, at this point, is the (c)(4)'s

25 budget.

League of Women Voters of Texas - 5/18/2020

49

```
1        Q.      And then the next page would be the

2    (c)(3)'s budget?

3        A.      It's the (c)(3)'s budget, yes.

4        Q.      And so on the (c)(4)'s budget, I'm

5    looking under Income --

6        A.      Income.  Wait, wait.  Let me find it.

7    Total Income or Income?  Okay.

8        Q.      So under these categories, what is PMP

9    and MALs?

10        A.      PMP is per-member payment.  MAL at that

11    point referred to members at large.  That would be a

12    person who joined the state league where there was

13    not a local league.

14        Q.      I see.  Okay.  And then Contributions and

15    Donations, that seems pretty straightforward.

16        A.      Uh-huh.

17        Q.      Projects, Gifts and Grants, what is --

18    well, there isn't anything there.

19        A.      There you go.

20        Q.      State Convention, is that ticket sales,

21    things like that?

22        A.      That is the income.  So it probably is

23    the -- yeah, when people register.

24        Q.      How much does it cost to attend the state

25    convention?
```

League of Women Voters of Texas - 5/18/2020

50

1      A.    At that point, I would have to find it in

2  the document to see.  Generally, we try to keep it

3  pretty reasonably priced.  That -- the registration

4  fee, I don't know.  I would have to look it up.  I

5  don't know.  But more than likely that state

6  convention income included other -- paying for

7  things to do, so like if they wanted to come to a

8  specific event or something else at convention.

9  Because then if you look down at expenses, most of

10  it is spent.

11      Q.    All right.  And what does Lobby Days

12  refer to under Income here?

13      A.    Lobby Days is, before every legislative

14  session we have a -- where people come from around

15  the state and they may spend the night at a hotel

16  and we have -- we present on different things that

17  we want that are important to the league and then we

18  have the members go out to visit with their

19  legislators about those specific issues that we're

20  trying to promote or oppose in that legislative

21  session.

22      Q.    And Investments, I know what that means.

23  All right.  All right.  And then down under

24  Expenses, tell me about how does the league of --

25  well, at this time, how did the League of Women

51

1  Voters of Texas spend money on advocacy?

2       A.    That -- most of that was spent on

3  printing flyers that we would give to our members

4  and our volunteers to drop off at their legislator's

5  office.  So it's probably spent on creating a

6  document and printing it.  That's what I would

7  suppose.

8            Let's see what else is there.  Budget.

9  So probably printing.  Sometimes we paid for -- I

10 don't know if at this point we did, the volunteers

11 would park in the parking garage and it costs money,

12 so we would probably set some money aside for them

13 to have their parking paid for.  Sometimes we paid

14 for, if they drove from wherever they were from and

15 then we would pay their -- the cost of driving.  And

16 occasionally we would pay for somebody to stay in a

17 hotel, if they needed to.

18      Q.    All right.  What about Mission Projects?

19      A.    Mission projects would have something to

20 do with whatever they're working on that supports

21 our mission that year.  I don't know any specifics

22 for that particular year.  I'm sorry.

23      Q.    That's okay.

24      A.    I would have to try to figure it out.

25      Q.    And it looks like State Convention is

League of Women Voters of Texas - 5/18/2020

52

1  just the money spent on the state convention.

2      A.    Yeah.

3      Q.    What about this next category,

4  Advocacy/D&M Software Services?

5      A.    What do you think D&M means?

6      Q.    I don't know.

7      A.    It might be some kind of service that we

8  were using to send out -- D&M.  It may be something

9  that we used to send the newsletters out with, you

10 know, so that we could share some of that expense

11 with -- on advocacy.  That's what I would suppose it

12 was.  Something to do with newsletters and getting

13 information out to our members and supporters.  D&M.

14 I have no idea.

15     Q.    All right.  How about Administration?

16     A.    So at that point we had -- I think at

17 that point, we had one employee.  And so that would

18 be her part of her salary, or if they -- yeah.

19 Looks like contractual services are below that.  So

20 it would probably be the advocacy part of her

21 salary.

22     Q.    Okay.  And then what would -- what would

23 Contractual Services refer to?

24     A.    So oftentimes we would have to get an IT

25 person to help us with some kind of IT problem or --

1  that's what I would presume that it was.  Sort of

2  IT-type help.

3      Q.    Development/Fundraising, fund-raising.

4      A.    Yeah, that might be fund-raising.

5      Q.    Development is a nice euphemism for it.

6  But, yeah, fund-raising is fund-raising.  I don't

7  think fund-raising is a dirty word.

8            Marketing/Social Media?

9      A.    So in 2016, we were just developing our

10  social media platforms.  So it probably had

11  something to do with Facebook for the next couple

12  years.  So Facebook or Instagram or -- and the

13  things that go along with promoting things, putting

14  stuff up on the Internet to promote.  In this case

15  it would be advocacy issues, information on issues

16  specific to a bill is my understanding.

17      Q.    And then what is Board Expenses Fund?

18      A.    So the board members come from all across

19  Texas.  And so when we meet, we meet -- I've got to

20  move that.  I can't not look at you.  So when we

21  meet, we meet generally at a hotel some place.

22  Lately it's been the Drury Inn.  Or if we go to

23  convention and it's some place else.  And those

24  board expenses are shared between the two different

25  organizations, and that is how we pay for it.

League of Women Voters of Texas - 5/18/2020

54

1    Sometimes the board members pay for it themselves

2    and sometimes they don't.  Also included would be

3    mileage or things like that.  Lunch maybe,

4    occasionally.  We get a lot of stuff done with very

5    little money, as you can tell.

6         Q.    Yes, I was actually going to comment on

7    how lean this budget is for everything that y'all

8    do.

9         A.    Well, we do a lot.  Most of our work, as

10   I was telling you before, the resources we have are

11   the member because we're a membership organization.

12   So our members and our board do most of the work.

13   Though we would appreciate any donations that come

14   our way.

15        Q.    Under Rent, what was the league paying

16   rent on?

17        A.    So we have condos that they bought

18   sometime maybe in the '70s, but I'm just guessing

19   because I wasn't here.  And that -- it is closer

20   to -- it's like on 1212 Guadalupe and it is a -- the

21   condo is up above and there are offices at the

22   bottom and we're at the bottom in one of the

23   offices.  So I would presume -- why would it say

24   rent?  Why would it say rent?  It may -- that's what

25   I presume it means, is maybe the HOA fees or

League of Women Voters of Texas - 5/18/2020

55

1   something like that.  Because they may have called

2   it rent and meant it to be something different

3   slightly.  Probably has something to do with our

4   office.

5        Q.    And I know the building you're talking

6   about and it honestly would not surprise me if that

7   was all HOA.

8        A.    Yeah.  It needs some work.  It's gotten

9   much better over time.  We have fixed it up

10  recently.

11       Q.    All right.  And then Staff Expenses?

12       A.    Staff expenses.  Up above it said

13  Administration and down below it says Staff.  So I

14  believe staff expenses is probably -- may be more

15  when the staff gets paid.  It's the share between

16  the two organizations of the expenses of having

17  staff.

18       Q.    And then this last category -- well,

19  under Total Expenses it says Transfer To/From

20  Reserves.

21       A.    Yeah.  So we -- yes.

22       Q.    Can you tell me about how the league

23  maintains reserves?  What are the reserves?

24       A.    My understanding -- I'm not the

25  treasurer.  My understanding is that we have --

League of Women Voters of Texas - 5/18/2020

56

1  reserves are when people make a large donation and

2  it's kept in an account that is stable, to try to

3  stabilize the organization and it's called the

4  reserves.  And I don't know how much was in it at

5  this time.  Occasionally, depending on what's going

6  on that year, something happens where we have to

7  take money out of the reserves and we're limited to

8  how much money we can take out, so we keep a --

9  track of that.  So money goes in from donations,

10  large donations, money comes out to help us make

11  sure we cover our expenses.

12      Q.    And I think this next page is going to go

13  more quickly since we've already talked about what

14  most of these categories mean.  Although, let me

15  just ask, is there any reason that you're aware of

16  that any of the categories on the page we just

17  looked at, League of Women Voters 21, would mean

18  something different as they are used on the next

19  page, League of Women Voters 22?

20      A.    No.

21      Q.    So then we only need to talk about the

22  ones that do not appear on the previous page.

23      A.    Okay.

24      Q.    If we go down, there's -- on Income on

25  the (c)(3)'s budget, it talks about Events/MDW.

57

1        A.      Excuse me.  So this is the education

2   fund.  It is a (c)(4).

3        Q.      Okay.  I'm sorry.  So the League of Women

4   Voters that we were just talking about, that's the

5   (c)(3) on League of Women Voters 21 and the

6   education fund on League of Women Voters 22 is the

7   (c)(4)?

8        A.      Yes.  The (c)(3) is on 21 and the

9   (c)(4) -- wait a second.  Doggonit.  The (c)(3) is

10  on page -- is the League of Women Voters Education

11  Fund and the (c)(4) is the League of Women Voters of

12  Texas.  The (c)(4) is on 21 and the (c)(3) is on 22.

13  Is that what you said and I misunderstood?  I

14  apologize if that's the case.

15       Q.      It's okay.  I'm sorry that this is a

16  little tedious to go through this line by line, but

17  I think we're almost done with this part.

18              I just want to ask about on the education

19  fund budget what --

20       A.      Okay.

21       Q.      -- underneath Income, there's a category

22  that says Events/MDW.

23       A.      Yes.

24       Q.      Do you know what that refers to?

25       A.      Income.  So the Making Democracy Work is

1   the name of our dinners that we have where we bring

2   in money.

3       Q.   Okay.  And what about Publications?

4       A.   So that would be the education income --

5   income.  This is income.  So when we -- income.  So

6   when we would make a Voters Guide, the league may

7   pay for -- and other organizations may pay for a

8   printed copy of it.  And so that would probably be

9   part of the publication's income.  I don't know if

10  there was other income from publications that year.

11  I don't know where it's coming from because I -- I

12  was on the board, but it's a long time ago.

13      Q.   Workshops and Seminars?

14      A.   Income.  So probably when we had

15  workshops around the state or if we had workshops at

16  an event, then we would probably charge $10 a person

17  or something like that.  That's where I guess that

18  money would come from.

19      Q.   Okay.  And I think we've actually covered

20  all of the different categories on that, so thank

21  you for bearing with me and moving through that --

22      A.   No problem.

23      Q.   Can you identify which of these expenses

24  were dedicated to voter registration efforts?

25      A.   So I would look at the League of Women

League of Women Voters of Texas - 5/18/2020

59

1  Voters of Texas Education Fund and I would say it

2  would be Mission Projects, is probably one of the

3  areas.  I would say the -- it's a part of everything

4  we do, so probably part of the social media is about

5  that.  Probably some of the staff expense because

6  they have to write the newsletters.  Probably some

7  of the -- you know, the software or whatever that we

8  use to send out newsletters and that's what I would

9  think, yes.  So it's mixed up all over in everything

10 we do.

11      Q.   So thank you for -- thank you.  So you

12 can't identify like a specific dollar amount,

13 though?

14      A.   I cannot.

15      Q.   Is it possible to identify which of these

16 resources were dedicated to educating voters about

17 voting by mail?

18      A.   I would -- I would -- it would be very

19 similar, in that it would be mixed up in everything

20 we do because it would be a part of our mission, it

21 would be a part of marketing social media, it would

22 be a part of staff expenses because -- and that

23 would be it, I think.  So it's -- again, it's mixed

24 up.

25      Q.   Fair enough.  All right.  I would like to

League of Women Voters of Texas - 5/18/2020

60

```
 1  move on to document --

 2       A.    So I can close this one?

 3       Q.    Yes.   Thank you.

 4       A.    Thank you.

 5             THE REPORTER:  Anna, we need to take

 6  a break soon.

 7             MS. MACKIN:  Oh, sure.  We can do

 8  that now.

 9             THE REPORTER:  We're off the record

10  now.

11             (Recess taken from 11:40 a.m. to

12  11:52 a.m.)

13  BY MS. MACKIN:

14       Q.    So I'm going to share with you another

15  exhibit, Ms. Chimene.  Please let me know when you

16  receive the document titled LWV51.

17       A.    Okay.

18       Q.    And if I could have you -- well, do you

19  recognize this document?

20       A.    Yes.

21       Q.    And what is it?

22       A.    It is the workbook to the 2018

23  convention.

24       Q.    And would you mind identifying for me the

25  pages of this workbook where the budget for
```

1  2018-2020 appears.

2         A.    Let's look on page 17.  Okay.  So the

3  explanation for the proposed budget is on Bates

4  number 68 and the budget spreadsheet is on Bates

5  number 69.  And is that it?  That's it.  Thank you.

6         Q.    And was this the budget that was adopted

7  for 2018-2020?

8         A.    Just a second.  It is a little bit more

9  complicated than that, so I need to read it so that

10 I understand and say things correctly.

11        Q.    Absolutely.  Take your time.

12               (Witness reviews document.)

13        A.    Just a second.  Let me go down now to the

14 budget.  I want to get it right.  Okay.  So the --

15 I'm going to try to turn this page so I can see it

16 in the right without straining my neck.  So yes, the

17 proposed budget which was adopted at this convention

18 was the Lone Star League of Women Voters budget,

19 which at that point was a combining LWV Texas and

20 the LWV Education Fund into one 501(c)(3)

21 organization.

22 BY MS. MACKIN:

23        Q.    Okay.  And so does the Lone Star League

24 of Women Voters still exist today?

25        A.    It was changed over to the League of

1  Women Voters of Texas.

2      Q.    I see.

3      A.    So it was like a holding name -- a

4  holding name.

5      Q.    To combine the two entities into that and

6  then rename it once they were combined?

7      A.    Yes.

8      Q.    Makes sense.

9      A.    Thank you.

10     Q.    Do you know why the decision was made to

11  combine -- well, essentially to no longer have a

12  (c)(4) for the League of Women Voters of Texas?

13     A.    We still have a (c)(4), but it is an

14  empty shell in case we need it.

15     Q.    Okay.

16     A.    Okay.  Just to be clear.

17     Q.    Thank you.  I appreciate that.

18     A.    Okay.  The reason why is -- my

19  understanding, and it's probably in this document

20  somewhere, is twofold.  One is that even our

21  treasurer is a volunteer person.  And it is very

22  complicated to try to figure out the money for two

23  different organizations.  And it's very complicated

24  to determine to raise money for two different

25  organizations.  And so we decided that it would be

League of Women Voters of Texas - 5/18/2020

63

1  much better to have one organization, especially

2  that -- since we don't spend a lot of money on

3  advocacy.

4        Q.    And so --

5        A.    On lobbying.  I'm sorry.  I'm sorry, can

6  I change?

7        Q.    Yes.

8        A.    I interrupted you and I apologize,

9  wherever you are.

10       Q.    On page LWV69, it lists Lone Star League

11 of Women Voters, League of Women Voters of Texas and

12 League of Women Voters of Texas Education Fund, up

13 at the top.

14       A.    That's right.

15       Q.    Under Lone Star League of Women Voters,

16 does that just combine the line items under League

17 of Women Voters of Texas and League of Women Voters

18 of Texas Education Fund?

19       A.    Yes, that is my understanding.

20       Q.    Okay.  And is it possible to look at this

21 document and identify what was spent on voter

22 registration activities?

23       A.    Because voter registration is integral to

24 our organization and our mission, it is mixed up in

25 here in everything we do, because it would be a part

64

1    of -- at convention, we would have training on voter

2    registration; at marketing and social media, we

3    would do marketing and social media about voter

4    registration.  We would have it in our -- have

5    information in our voter -- in our Voters Guide and

6    in -- we would produce many different educational

7    items or printed items, PowerPoints and things like

8    that, having to do with voter education.  So it

9    would be very hard to separate it out.

10        Q.    Would it be possible to --

11        A.    It would be impossible -- no, it's not

12   possible to separate it out, because it's

13   everywhere.

14        Q.    And what about voter education activities

15   specific to ballot by mail?

16        A.    That also is included in everything we

17   do.  Our mission is empowering voters and we would

18   empower voters with that information so that they

19   can vote in the elections.  So it is also mixed up

20   in everything we do, I think.

21        Q.    The next document I have is going to be

22   very quick.

23        A.    Okay.  So I can click out of this one?

24        Q.    Yes.  Thank you.  And I will make League

25   of Women Voters 68 through 69, Exhibit 5.

1          (Deposition Exhibit 5 marked for

2   identification.)

3   BY MS. MACKIN:

4       Q.    And then this next document that I am

5   showing you -- I'm sorry.  Just one moment.

6           All right.  Ms. Chimene, I'm sending you

7   a document in the chat box which should be titled

8   LWV240.

9       A.    Okay.

10      Q.    Please let me know when you are able to

11  pull up that document.

12      A.    I have the document.

13      Q.    And does -- what does that -- what does

14  that appear to be?

15      A.    It says it's the budget explanation of

16  proposed budgets.

17      Q.    And so does this appear to be the

18  proposed budget that was later adopted for

19  2018-2020?

20      A.    Yes.

21      Q.    Do you know --

22      A.    The one part -- the one section of it,

23  the Lone Star, because we consolidated at this

24  convention and so there are three budgets on here.

25  This budget, the one that says Lone Star League of

League of Women Voters of Texas - 5/18/2020

66

1  Women Voters, my understanding is that's the

2  consolidated budget.  And that is the budget for the

3  league of -- what became the League of Women Voters

4  of Texas.

5      Q.   And do you know if this document is

6  different from the budget we just looked at that --

7      A.   I don't know that it's different.  To me

8  it looks like a handout that was created from the

9  convention, but I did not compare the two to see if

10  it is different in some way.

11      Q.   Okay.  Fair enough.  And I'll make these

12  two pages, League of Women Voters 240 and 241,

13  Exhibit 6.

14           (Deposition Exhibit 6 marked for

15  identification.)

16      A.   Can I turn it off now?

17  BY MS. MACKIN:

18      Q.   Yes.  All right.  And so we talked

19  about -- well, I'm going to show you one more

20  exhibit.  I just shared a document titled LWV133.

21  Please let me know when you're able to pull up that

22  document.

23      A.   It's up.

24      Q.   And what does this document appear to be?

25      A.   This is the State Convention Workbook for

League of Women Voters of Texas - 5/18/2020

67

1    2020.

2         Q.    And, Ms. Chimene, are you able to

3    identify where in this document the budget for the

4    League of Women Voters of Texas for 2020 through

5    2022 appears?

6         A.    Let me go -- I believe it's page 19.

7    Just a minute.  So the budget begins on page 19,

8    which is Bates number 151, continuing to Bates

9    number 153.

10        Q.    And are you able to identify based on

11   this document, how much the League of Women Voters

12   of Texas spent on -- well, has budgeted for voter

13   registration for 2020 through 2022?

14        A.    No.

15        Q.    And is it for the same reasons that you

16   weren't able to on the previous budgets we looked

17   at?

18        A.    Yes.

19        Q.    And would your answer be the same with

20   respect to efforts to educate voters about ballots

21   by mail?

22        A.    Yes.

23        Q.    Okay.  I'm going to make that convention

24   workbook Exhibit 7.

25

 1             (Deposition Exhibit 7 marked for

 2  identification.)

 3  BY MS. MACKIN:

 4       Q.    And I have another document to share with

 5  you.

 6       A.    Okay.  I'm going to turn this off.

 7       Q.    Thank you.  All right.  I'm sharing a

 8  document that begins on League of Women Voters 272.

 9  Please let me know when you're able to open up that

10  document.

11       A.    I have the document open.

12       Q.    Do you recognize this document?

13       A.    Yes.

14       Q.    And what is it?

15       A.    It is a PowerPoint called Get in the

16  Game, along with the instructions for using it.

17       Q.    And what is this PowerPoint used for?

18       A.    This PowerPoint is used to educate mostly

19  league, but it could be used to educate other

20  members of the community or organizations.

21       Q.    And what is it used to educate about?

22       A.    This one is about voting and elections in

23  Texas.

24       Q.    Do you know who developed this

25  PowerPoint?

1      A.    This develop -- this was probably -- let

2  me look at the bottom.  No, it doesn't say.  To me

3  this looks like it was developed by -- at least

4  partially by Liz Erkel who developed all our Get Out

5  the Vote educational materials.

6      Q.    Do you know when this PowerPoint was

7  developed?

8      A.    Probably -- I would presume that it was

9  after the 2016 convention, but I don't know exactly

10  when that was developed and when it was updated, but

11  that's when we had -- we funded the Get Out the Vote

12  program that was created.

13      Q.    You mentioned something about this

14  PowerPoint being updated at some point?

15      A.    I would presume, and I'm just guessing,

16  that as election code changes, that the PowerPoint

17  in the Get Out the Vote section of the web page are

18  updated.  Let me see.  Sometimes they say it in here

19  somewhere.  No.  I can see that it has some

20  information from 2018 midterm elections, so I would

21  presume at some point it was updated.

22      Q.    Do you know how long it takes to present

23  this PowerPoint?

24      A.    No, I have not presented the PowerPoint.

25      Q.    And I know that you mentioned Liz Erkel

1  likely developed it.

2      A.    Uh-huh.

3      Q.    Do you know if Ms. Erkel always presents

4  this training or do other --

5      A.    No, she doesn't present the training.

6  She may present it in her league, but it is

7  available for any league or organization to use it,

8  download it and use it from our website.

9      Q.    Has the League of Women Voters of Texas

10  ever gotten any follow-up questions about this

11  training from someone who received it?

12             MS. SURIANI:  Objection, form.

13      A.    In general, we get --

14             MS. SURIANI:  Objection to form.

15             But you can answer if you understand,

16  Grace.

17      A.    I was going to answer in general, that in

18  general we get a lot of, wow, we can't believe what

19  a great job you are doing and how much leagues and

20  other organizations appreciate this material.

21  BY MS. MACKIN:

22      Q.    I have another -- let's see.  If I have

23  not yet made this an exhibit, I will mark it

24  exhibit -- I think we're on 8.

25

League of Women Voters of Texas - 5/18/2020

71

```
 1                    (Deposition Exhibit 8 marked for
 2   identification.)
 3   BY MS. MACKIN:
 4        Q.    And then share with you another document.
 5        A.    So I can close this one?
 6        Q.    You may.
 7        A.    Got it.
 8        Q.    You may.  This document begins at League
 9   of Women Voters 344.  Just let me know when you are
10   able to access that document.
11                    (Deposition Exhibit 9 marked for
12   identification.)
13        A.    Okay.
14   BY MS. MACKIN:
15        Q.    Ms. Chimene, do you recognize this
16   document?
17        A.    Yes.
18        Q.    And what is it?
19        A.    It is similar to the other PowerPoint.
20   It is a document probably created by Ms. Erkel.  It
21   looks like it was updated January 2019.
22        Q.    And do you know who presents this
23   PowerPoint?
24        A.    Each league has the PowerPoint available
25   for them to use.  I would presume that a league
```

League of Women Voters of Texas - 5/18/2020

72

1    would have one of their members present it, read it,

2    review it and be the presenter.  The presenter

3    would -- may be to the whole league so they learn

4    more about it, but it also may be presented at --

5    for the community at some event.

6         Q.    And like the last document we discussed,

7    is this document updated based on, for example,

8    changes in the election code?

9         A.    I would think it's updated perhaps on

10   changes to the election code and also some results

11   from elections are in there.  So there may be some

12   updates to the results from elections.

13        Q.    You mentioned a moment ago that the

14   League of Women Voters of Texas funded a Get Out the

15   Vote program?

16        A.    Yes.

17        Q.    When was that?

18        A.    I would have -- to be absolutely sure, I

19   would have to look at the convention workbook.  But

20   my memory says that it was in 2016 that they -- we

21   created a Get Out the Vote program and at convention

22   we have something called Fund A Need and at that

23   particular convention, if it's in the workbook, it

24   says -- that's when we asked the delegates to make a

25   donation for this specific project.

73

1      Q.     And what did the Get Out the Vote project

2   entail?

3      A.     The Get Out the Vote project was over

4   multiple years.  Liz is very talented.  And so she

5   created a timeline and it involved creating

6   educational tools to be used by leagues for leagues

7   by leagues for the community and by partner

8   organizations for their folks too.  And it includes

9   PowerPoints, it includes bookmarks, pamphlets.  We

10  update for every election the voter education

11  graphics, voter education videos.  We also over time

12  worked with different organizations to try to

13  encourage more organizations and businesses and

14  government organizations to promote voting in a

15  nonpartisan way in their communities.  So that's --

16  the whole goal was -- she liked the words Vote It

17  Counts and another theme was be a Texas voter, and

18  it was all about voter education and providing

19  information to league members and to the public.

20     Q.     And are -- so this PowerPoint I just

21  shared with you and the one we looked at immediately

22  prior, were these developed as part of that Get Out

23  the Vote program?

24     A.     More than likely they were developed by

25  that program.  Sometimes leagues themselves will

League of Women Voters of Texas - 5/18/2020

74

1  have additional information that they add into it.

2  So I couldn't tell by looking at it if they added

3  something from their own -- from their own, you

4  know, league.  But I would have to look at it really

5  closely to see.  But this one appears to be a

6  general statewide -- I'm looking at the bottom --

7  the last page, to make sure there's nothing specific

8  to a local area.  This seems to be general to -- so

9  it would meet the needs of all the leagues and

10  organizations across Texas.

11      Q.    The Get Out the Vote project you

12  mentioned, do you know how much the League of Women

13  Voters of Texas spent on that project?

14      A.    We would have to go -- we would have to

15  look back at the budgets maybe and see if there was

16  something in there.  If you want a specific number,

17  I would have to try to find that for you.  Sorry.

18      Q.    That's okay.  And if you wouldn't mind

19  during a break, if you're able to spend a couple

20  minutes --

21      A.    I'll look at the documents provided,

22  right, because I don't want to look at anything

23  else.  Look at the documents provided to see if it's

24  in there.  It may be in the convention workbook from

25  2018.

75

1      Q.    I appreciate that.

2      A.    And I -- yeah.  Thank you.

3      Q.    And did the League of Women Voters of

4  Texas track how many voters were registered as a

5  result of their Get Out the Vote project?

6      A.    We have -- no, we did not.

7                MS. MACKIN:  I think if it's all

8  right with everyone, it might be a good time to take

9  a quick break for lunch.

10                THE WITNESS:  Okay.

11                MS. SURIANI:  Grace, that's good with

12  us if it's good with you.

13                THE WITNESS:  Yes.

14                MS. SURIANI:  Anna, how long are you

15  thinking, an hour?

16                THE REPORTER:  We're off the record

17  now.

18                (Recess taken from 12:23 p.m. to

19  1:27 p.m.)

20  BY MS. MACKIN:

21      Q.    Ms. Chimene, are you ready?

22      A.    Yes.  May I update you on something you

23  asked me previously?

24      Q.    Yes, please.

25      A.    Okay.  If you go to 051, Bates

1  number 051.  Now I have to look for the number.

2            MS. SURIANI:  And I think that's

3  Exhibit 5.

4       A.    Did I get the wrong one?  Page number --

5  my page No. 28.  Let me see what the other type of

6  page is.  So Bates number 79 and 80.

7  BY MS. MACKIN:

8       Q.    Okay.

9       A.    You previously asked me about the Get Out

10  the Vote budget.

11      Q.    Yes.

12      A.    And you can ask me again so I know what

13  the question was.  I put it back on you.

14      Q.    I believe that the question was how much

15  did the League of Women Voters of Texas spend on its

16  Get Out the Vote campaign?

17      A.    So we spent exactly what we brought in

18  donated by our members at convention, which was

19  $8,000.

20      Q.    And do you know how much of that was

21  dedicated to preparing the two PowerPoints we looked

22  at in Exhibits 8 and 9?

23      A.    No, I don't know.

24      Q.    Does the League of Women Voters of Texas

25  plan to continue making educational materials

League of Women Voters of Texas - 5/18/2020

77

1  available on its website?

2       A.    Yes.

3       Q.    Including those about voting by mail?

4       A.    Yes.

5       Q.    For how long?

6       A.    As long as people are allowed to vote by

7  mail.

8       Q.    What would -- well, focusing in on the

9  issue of mismatched signatures, are you aware of any

10  individual voter that the League of Women Voters of

11  Texas has assisted in -- well, let me ask that

12  differently.

13            Has the League of Women Voters of Texas

14  ever assisted any individual voter after their

15  mail-in ballot was rejected for signature mismatch?

16            MS. SURIANI:  I'm going to object to

17  form.

18            Grace, if you understand, you can

19  answer.

20       A.    The League of Women Voters -- the League

21  of Women Voters of Texas is a part of the Election

22  Protection Coalition.  The Election Protection

23  Coalition provides a phone number and a service

24  where voters can call in when they have an issue.  I

25  would presume that any issues that came up would go

1   through -- would be routed through the Election

2   Protection Coalition that we're a major part of.

3   BY MS. MACKIN:

4        Q.    And what does -- how does the League of

5   Women Voters of Texas further the mission of the

6   Election Protection Coalition?

7        A.    How do we -- ask -- how do we further the

8   mission --

9        Q.    Let me ask it better.  Sorry.  It was a

10  confusing question.  Sorry.

11            How -- I guess I'm not familiar with the

12  Election Protection Coalition.  So can you tell me a

13  little bit about how the League of Women Voters of

14  Texas participates in that coalition and what it

15  does?

16        A.    The Election Protection Coalition is a

17  national telephone number and -- a lawyers committee

18  or something runs it and they -- in Texas, the major

19  partnering organizations kind of organize the work

20  of the Election Protection Coalition and the ACLU,

21  the Texas Civil Rights project, the League of Women

22  Voters and Common Cause, I believe, are like the

23  main organizers, partners or nonpartisan organizers.

24  And then we disperse the information out to other

25  organizations across Texas to voters.  We put the

1  information on all of our voting and election

2  materials or Get Out the Vote materials or

3  everything that we provide to the voters so that

4  there's a -- it is the resource -- so we disseminate

5  the information, the telephone number for voters to

6  call the Election Protection Coalition if there is a

7  problem with voting or elections that they've

8  experienced.

9           And then we also provide volunteers --

10  grassroots volunteers who actually go to the polls

11  during early voting and on election day.  In case

12  people are experiencing any issues, we can provide

13  them with information perhaps at that specific time

14  and if it's something they can solve or if it's

15  something that needs to be referred up to the

16  lawyers who actually man the lines.

17     Q.    And does -- as a member of the Election

18  Protection Coalition, does the League of Women

19  Voters of Texas contribute funds to the Election

20  Protection Coalition?

21     A.    You have seen our budget.

22     Q.    Sorry.  So is that a no?

23     A.    No.  What we provide are resources.  We

24  provide -- it is, you know, a part of our website,

25  it's a part of our printing materials, it's a part

1    of our education for our members and supporters, it

2    goes out in newsletters.  And so do we send funds to

3    the group?  We don't.  We also don't get any funds

4    from the group.  What we do is work with them

5    because it's such an important part of our mission

6    of empowering voters and defending democracy.

7        Q.    And so just to make sure I understand the

8    answer, there isn't like -- you couldn't give me

9    like the name of an individual voter who had their

10   ballot rejected for signature mismatch who then the

11   League of Women Voters of Texas went in and tried to

12   assist them with rectifying --

13       A.    No.

14       Q.    -- the rejection?  Okay.

15            The complaint mentions that the League of

16   Women Voters is bringing this lawsuit both in its

17   own right as the League of Women Voters and also on

18   behalf of members of the League of Women Voters.  Is

19   that consistent with your understanding?

20       A.    That is my understanding.

21       Q.    How many members is the league suing on

22   behalf of?

23       A.    I would presume all --

24            MS. SURIANI:  Objection.

25            Go ahead, you can answer, Grace.

1      A.    I would presume all of our members, which

2   is somewhere around -- it goes up and down, but

3   somewhere around 3,000.

4   BY MS. MACKIN:

5      Q.    Do you know if any of those league

6   members have ever had a mail-in ballot rejected

7   based on a signature mismatch?

8      A.    No, I don't know.

9      Q.    I'm going to share a document with you

10  that was produced to us this morning and it's

11  actually an Excel file.  And please let me know when

12  you're able to pull up that document.

13     A.    What number is it?

14     Q.    It -- the title of the Excel file is

15  LWV-00000701.

16     A.    I don't see it.

17            MS. SURIANI:  And I don't think it's

18  in --

19  BY MS. MACKIN:

20     Q.    I accidentally didn't send it.  User

21  error.  All right.  Let me know if that works.

22            THE WITNESS:  Do y'all see it?  Oh,

23  there it is down there at the bottom.

24     A.    Okay.  It's up.

25

League of Women Voters of Texas - 5/18/2020

82

1              (Deposition Exhibit 10 marked for

2   identification.)

3   BY MS. MACKIN:

4        Q.    Do you recognize this Excel file?

5        A.    Yes.

6        Q.    What is it?

7        A.    It is the -- it is the report spreadsheet

8   from a survey we sent out on Friday to our league

9   members.

10        Q.    And Friday would have been May 15th,

11   2020?

12        A.    15, yes.  And we sent it out in the

13   afternoon on the 15th.

14        Q.    And what questions did the survey ask?

15        A.    Can I open it and --

16        Q.    Absolutely.  Yes.  Yes.

17        A.    I'm going to make it be a wrap so I

18   can -- a wrap text so I can see it.  I can't do it.

19              Okay.  It says, have you voted by mail in

20   the past and are you planning on voting by mail in

21   the future.  That was the first question.  And the

22   answers available were yes and no.

23              And then it says, are you planning on

24   voting by mail in the future?  And the answers --

25   possible answers were yes and no.

1        And then it was, if you answered yes to

2  either of the questions above, under what category

3  were you eligible to vote by mail in the next

4  election?  And then it had the eligibility

5  categories for vote by mail.

6        And then I had -- we had people say which

7  league they were with.

8        Q.   Okay.  Did the survey collect any other

9  information?

10       A.   No.

11       Q.   So it didn't -- it didn't collect the

12  names of any respondents?

13       A.   No.  No, ma'am.

14       Q.   And how -- how was it -- how was this

15  survey prepared?  Was it Google Forms or Survey

16  Monkey?

17       A.   Google Forms.

18       Q.   And you may have said this, but I don't

19  recall.  Who was it sent out to?

20       A.   It was sent out to the member list.

21       Q.   Of the League of Women Voters of Texas?

22       A.   Texas, uh-huh.

23       Q.   And the first column shows a time stamp,

24  looks like a date and a time.

25       A.   Uh-huh.

League of Women Voters of Texas - 5/18/2020

84

1     Q.    So does that reflect when each of these

2  responses was received?

3     A.    Yes, that's what it reflects to me.

4     Q.    And I want to be super clear that I am

5  not suggesting any funny business on the part of the

6  league or anyone.  I just want to ask.  Is there --

7  do you know if there was anything to prevent the

8  same person from making duplicate submissions?

9     A.    Aren't you special?  I don't know because

10  I did not create the web form.

11     Q.    My mom thinks I'm special.

12     A.    Well, you're very special.  I am not that

13  devious, but I understand your -- I understand, but

14  I did not create the form so I don't know.

15     Q.    And just to be clear, I do not think that

16  you are devious.  The only reason I asked was

17  because I noticed that -- I think there may be three

18  responses that said like the exact same really

19  specific thing in the comments.

20     A.    Yeah.

21     Q.    And so that -- that's what made me ask

22  the question, not --

23     A.    Yeah.

24     Q.    -- suspicion of anyone monkeying around

25  with the document.

League of Women Voters of Texas - 5/18/2020

85

1    A.    Yeah.  This is a really important issue

2  to our members.  Our members tend to be older.  They

3  care a lot about voting in elections and I think

4  within the first -- you can look down here.  Within

5  the first hour we had already gotten 100 answers, so

6  I was pretty proud of the league members.

7    Q.    It is a very robust response.

8    A.    Yeah.

9    Q.    And prompt.  Do you know, then, if any of

10  the individuals who responded to this survey have

11  ever had their mail-in ballot rejected because of

12  signature mismatch?

13    A.    I did not --

14            MS. SURIANI:  Objection to form.

15  Sorry.

16            Grace, you can answer.

17    A.    I don't know and I did not read all the

18  responses.  I'm looking at them now.

19            (Witness reviews document.)

20    A.    Okay.  I don't see anything in there.

21  BY MS. MACKIN:

22    Q.    Okay.  There were also a few e-mails

23  produced to us and I think I might be able to make

24  this go a little bit more quickly if the answer is

25  the same for all of them, but I'm happy to pull up

1  any document if you're not sure or want to go

2  through them.

3       A.    It's okay.

4       Q.    We received a few e-mails.  Let's see.

5  There were -- one was from Virginia March, one was

6  from Cathy Murphee, one was from Mary Clair Rowe,

7  one was from Mitzi Michelle Rusk, one was from Jean

8  Richards, and one was from Marilyn Wills.

9       A.    Uh-huh.

10      Q.    Do you know if any of those individuals

11 have ever had a mail-in ballot rejected for

12 signature mismatch?

13      A.    I don't know.

14      Q.    Pivoting just a little bit -- actually

15 quite a bit.  We're done with the spreadsheet, so

16 you can close that.

17      A.    Okay.

18      Q.    Kind of bring things back to the

19 beginning, actually.  What is the purpose of the

20 county election website review?

21      A.    The purpose was to find what counties are

22 providing to their voters that they're serving in

23 their community to -- then to encourage the counties

24 to provide the information that is either required

25 legally or that we think would be a best practice

1    for counties to provide the voters.  Also for those

2    counties to use simple and clear language so that

3    voters can actually find what they're looking for.

4           Let me add one more thing.  And it's to

5    provide education to the county election officials

6    and the Secretary of State about how they might

7    improve their county election websites.

8         Q.   And actually pivoting back, there was one

9    more e-mail in the production we received this

10   morning that identified a few more individual league

11   member voters.  Looks like Leah and Steve Martindale

12   and Patricia Alford.

13        A.   Uh-huh.

14        Q.   Do you know if any of those individuals

15   have ever had a ballot by mail rejected for

16   signature mismatch?

17        A.   No, I don't.

18        Q.   Ms. Chimene, I want to thank you very

19   much for your time today and I'm sorry for making us

20   take a lunch break.  I didn't realize I would be

21   done so quickly, but I don't have any other

22   questions for you, other -- well, I have one more.

23   Have I treated you courteously today?

24        A.   Yes, you have.

25             MS. MACKIN:  We'll pass the witness.

88

1  Thank you.

2           MS. SURIANI:  Thanks, Anna.  Can we

3  take maybe a five-minute break and then come back

4  and hopefully finish out?

5           MR. MAGEE:  Yes.

6           MS. MACKIN:  That's all right.

7           MS. SURIANI:  Maybe back at like 2 --

8  you're on Eastern Time.  Sorry.  1:55 your time.

9           THE WITNESS:  Sounds good.

10          MS. SURIANI:  Great.  Thanks,

11  everyone.  We'll be back.

12          THE REPORTER:  We're off the record.

13          (Recess taken from 1:50 p.m. to

14  1:57 p.m.)

15                  EXAMINATION

16  BY MR. TAWIL:

17     Q.   Ms. Chimene, am I saying your name right?

18     A.   Chimene.

19     Q.   Chimene.  My name is Isaac.  Let me

20  introduce myself real quick.  My name is Isaac

21  Tawil.  I'm an attorney employed by the City of

22  McAllen.  I represent Perla Lara in her official

23  capacity as the secretary of the City of McAllen in

24  this lawsuit, and I have just a couple of questions

25  about your prior testimony.  And if you don't mind,

1  would you go back to that spreadsheet that was

2  admitted, I think as Exhibit No. 10.

3       A.   But it's the only spreadsheet.  So I can

4  open it up?

5       Q.   Yes, ma'am.  I'm sorry, I must have

6  poured myself a Coke or something when you were

7  first talking about it so my notes are a little bit

8  confused.

9            You said this was circulated to your

10 members Friday of last week?

11      A.   Yes.

12      Q.   That was the 15th of May?

13      A.   Yes.

14      Q.   And that was circulated to the League of

15 Women Voters for the state of Texas?

16      A.   The members -- all the members in Texas.

17      Q.   Okay.  And this was circulated as what

18 kind of survey?

19      A.   A Google Form.

20      Q.   Okay.  When was that Google Form

21 prepared?

22      A.   It was prepared about -- about 2:00 on

23 Friday.

24      Q.   And who circulated it?

25      A.   The League of Women Voters of Texas state

1  office.

2      Q.    So is there somebody that works in that

3  office?

4      A.    There -- we have one and a half

5  employees.  Nobody's working in the office at the

6  moment, but they are working from home.  Our

7  employee, Aileen McMurrer, created the survey --

8      Q.    How do you spell Ms. --

9      A.    -- at my request.  I'm sorry.

10     Q.    And how do you spell Ms. McMurrer's name?

11     A.    M-c-M-u-r-r-e-r, maybe.

12     Q.    Okay.  And she is a full-time employee of

13  what organization?

14     A.    The League of Women Voters of Texas.

15     Q.    Okay.  And does the League of Women

16  Voters of Texas have a physical office?

17     A.    Yes.

18     Q.    And that's closed because of the pandemic

19  right now?

20     A.    Yes.

21     Q.    Okay.  What is the address to that

22  office?

23     A.    1212 Guadalupe Street, Austin, Texas

24  78751, I think, on the ZIP code.

25     Q.    And you said she circulated this e-mail

1  at your request?

2      A.    Yes.

3      Q.    Okay.  Who developed the questions for

4  the survey?

5      A.    I --

6              MS. SURIANI:  I'm going to object to

7  form.

8              Grace, you can answer if you know,

9  but I'm going to object to form.

10     A.    Say it again.  Ask me the question again.

11  BY MR. TAWIL:

12     Q.    Who developed the questions for the

13  survey?

14              MS. SURIANI:  I'm going to object to

15  form and instruct you not to answer this question,

16  Grace, because it could infringe on attorney-client

17  privilege.

18              THE WITNESS:  Okay.

19  BY MR. TAWIL:

20     Q.    Were you instructed by somebody to create

21  the survey?

22              MS. SURIANI:  Again, I'm going to

23  renew my objection and tell you not to answer.

24  BY MR. TAWIL:

25     Q.    Have your attorneys been provided with a

League of Women Voters of Texas - 5/18/2020

92

1   copy of the survey?

2       A.    Yes.

3       Q.    Do you know why that survey or copy of

4   that survey was not provided to us with the

5   documents, the spreadsheet and the other e-mails

6   that were provided this morning?

7               MS. SURIANI:  I'm going to object to

8   the fact that it's misstating her prior testimony.

9   She already outlined the questions in the survey at

10  the top of the document.

11              MR. TAWIL:  That's fine.

12              MS. SURIANI:  But, Grace, you can

13  answer if you --

14  BY MR. TAWIL:

15      Q.    Is the survey -- is the survey something

16  you can print?

17      A.    It's an e-mail.

18      Q.    I'm not familiar with Google Forms, so I

19  don't know if I go into Google Forms, I can say

20  print survey or print results.  Is there a document

21  that can be generated from Google Forms?

22      A.    A document generated from Google Forms is

23  the Excel spreadsheet.  There is another document

24  that could be generated that -- but it would be

25  really, really long, which goes by each individual

League of Women Voters of Texas - 5/18/2020

93

```
 1   instead of a spreadsheet.

 2        Q.    I see.

 3        A.    I personally don't print anything unless

 4   I can help it.  So I really just don't know the

 5   answer.

 6        Q.    Okay.  And excluding any input you

 7   received from your lawyers, did anybody other than

 8   you work on the questions that were included in the

 9   survey?

10        A.    Yes.

11        Q.    Who were those people?

12        A.    Susan Schultz, S-c-h-u-l-t-z.

13              MS. SURIANI:  I'm going to object

14   again, though, because we're getting close to

15   attorney-client privilege.  I'm going to instruct

16   Grace not to answer any further.

17              MR. TAWIL:  I specifically told her

18   to exclude lawyers.  I only want to know nonlawyers

19   that participated in the preparation of the survey.

20   I don't see how that goes to attorney-client

21   privilege.

22              MS. SURIANI:  Yes.  To the extent

23   that it's only nonlawyers, you can answer, Grace.

24        A.    Then -- Susan is a member of the league

25   and she happens to be retired and was a lawyer.  I
```

 1 | don't know -- she helps -- she just is very helpful

 2 | for me.  Aileen McMurrer also helped.  She is sort

 3 | of the one who created it and is the final editor.

 4 | So all -- that's the three people who were outside

 5 | of my attorneys that helped, the two people, me

 6 | included, so that makes three.

 7 |              MR. TAWIL:  Okay.  Well, I appreciate

 8 | you answering my questions.  That's all I have right

 9 | now, so I'm going to pass the witness.

10 |                    EXAMINATION

11 | BY MR. MAGEE:

12 |      Q.    Hi, Ms. Chimene.  My name is Eric Magee

13 | and I'm -- I think I'm your neighbor as well.  We're

14 | at the corner of 12th and Guadalupe.

15 |      A.    There you go.  I think we're in 13th and

16 | Guadalupe.  I don't know.  It has a big 1212

17 | Guadalupe at the top.

18 |      Q.    We're in the old house next to the vacant

19 | lot.  That's our office.

20 |      A.    You are our neighbor.  Yes, you are.

21 |      Q.    I'm out here on the sun porch baking in

22 | the heat.

23 |              MR. MAGEE:  I just want to make sure

24 | I have the right exhibit number, maybe the court

25 | reporter or, Anna, you can tell me.  Was that

1   Exhibit 10 that we were just talking about, the

2   Excel spreadsheet?

3            MS. MACKIN:  I think so.  Brian, does

4   that sound right to you?

5            MR. MAGEE:  I'm just going to refer

6   to it as Exhibit 10 because that's what I wrote

7   down.

8   BY MR. MAGEE:

9        Q.   If you can look back at the Excel

10   spreadsheet that we've been referring to --

11       A.   Yes.

12       Q.   -- would you agree with me that there

13   were no responses from anyone in Brazos County?

14       A.   There are no leagues in Brazos County.

15       Q.   Okay.  What does that mean?

16       A.   Each league serves a community.  Some

17   members -- and Brazos County does not have a league.

18   What we do have are some members who live there.  So

19   when they ask -- answer the question which league

20   are you with, it wouldn't say Brazos County because

21   there is not a Brazos County league.

22       Q.   So what member would they be a member of?

23       A.   It would be called a member at large.

24       Q.   Okay.  So I looked through here and I

25   didn't see any members at large in here from the

League of Women Voters of Texas - 5/18/2020

96

```
 1  Bryan/College Station or Brazos County area.  And I
 2  actually Google searched as well, and some people --
 3  I think one person put in their ZIP code.  And I
 4  just -- I didn't see anybody, and I just wanted to
 5  know if you knew of any responses from Brazos
 6  County?
 7              MS. SURIANI:  Objection to form.
 8              You can answer, Grace, if you
 9  understand.
10      A.    So ask me the question again so I
11  understand, Eric.
12  BY MR. MAGEE:
13      Q.    Sure.  Do you know of anyone from -- a
14  member from Brazos County, either Bryan or College
15  Station or any other area within the county, that
16  responded to your survey?
17      A.    To this survey?
18      Q.    Correct.
19              MS. SURIANI:  Objection to form.
20              But you can answer, Grace.
21      A.    Let me look at it.
22  BY MR. MAGEE:
23      Q.    Okay.
24      A.    Because I don't -- some of these, I just
25  don't know how they answered.  I don't know what
```

1   WPRW means.  I'm looking.  I'm sorry, I have to

2   look.

3        Q.    That's okay.

4              (Witness reviews document.)

5        A.    This one, it says statewide, so I don't

6   know where that person's from.

7   BY MR. MAGEE:

8        Q.    Okay.

9        A.    So hold on.  Oftentimes people -- we

10  also -- member at large, we also call them state

11  members.  Hold on.  Isn't that interesting.  Let me

12  look at the top one more time.  This person said,

13  yes.  So just reviewing it with my eyes right now, I

14  do not see a city that I would say is in the Brazos

15  County area.

16       Q.    Okay.  And same thing, if you look at

17  No. 109 on the Excel spreadsheet, for example,

18  there's an individual that labeled themselves as a

19  statewide member, but then they actually put in the

20  comments section that they were from Austin, Texas.

21       A.    Isn't that interesting.  Uh-huh.

22       Q.    Do you see that?

23       A.    Yes.

24       Q.    Okay.  So besides the one person that you

25  identified that you don't know what they mean by

1  statewide, you didn't identify anyone else from

2  Brazos County?

3       A.    Not on this list.

4       Q.    And just so we're about -- talking about

5  the same one, you're talking about line 440 of the

6  Excel spreadsheet?

7       A.    Let me go down there.  Just a second.

8  440, yes.

9       Q.    One of the questions I have was, how many

10  surveys do y'all typically submit a year?

11      A.    We do surveys often after events, such as

12  convention, which we just had a -- our very first

13  virtual convention and we had a Zoom meeting at that

14  time.  We have a -- wait a second -- a survey that

15  went out to all the presidents of the leagues that

16  they're completing right now which is, our annual

17  survey.  Those are our main times that we do a

18  survey.

19      Q.    Do you have a committee that determines

20  when the league would send a survey to its members

21  or is that just a decision that you make as the

22  president yourself?

23      A.    There is no survey committee.  The idea

24  for a survey could come from any board member or any

25  nonboard member if they wanted to bring it up to us.

1      Q.    And then how are those surveys

2   authorized?  Is that just a decision that you make?

3      A.    Anything that comes out from the League

4   of Women Voters of Texas is reviewed by me.

5      Q.    And then you approve it if you want to

6   present the board with it?

7      A.    Reviewed, edited and approved by me,

8   uh-huh.

9      Q.    If you will look at Exhibit 7, it's over

10  there in the chat box, and it's the one that says

11  LWV and then it's the 133 number.

12     A.    Yes.  Just a second.

13     Q.    And I'm sorry, that's Exhibit 5.

14     A.    But it's the 133?

15     Q.    Yes.

16     A.    Okay.

17     Q.    But for your deposition, we've been

18  referring to it as Exhibit 5.

19     A.    Okay.

20     Q.    If you will look at page 30 of the

21  exhibit, but it's the Bates number LWV and then all

22  the zeros 81.

23     A.    Just a second.  81.

24     Q.    You know what?  Hold on.

25     A.    I don't think this is the right form

 1  because this says --

 2      Q.    I have them mixed up.  So we'll just talk

 3  to this one.  This is Exhibit 7, just so we're

 4  clear, for your deposition.

 5      A.    Okay.

 6      Q.    If you'll look at page 34, which is also

 7  LWV and then all the zeros 166.

 8      A.    166.  Just a minute.  Yes.

 9      Q.    So tell me what this document is.

10      A.    This is a document that shows where all

11  the current leagues are.

12      Q.    And then there's a column that says,

13  members.

14      A.    Wait a second.  Members, yes.

15      Q.    And so at the bottom it says -- there's a

16  total number of 2,620 members.

17      A.    Yes.  This was --

18      Q.    Is that your total membership?

19      A.    On January 31st of whatever year it was

20  done.  Is this the 2020?  If this is the 2020

21  workbook, that was from January 31st, 2020, of the

22  people who have paid their membership dues at that

23  particular time -- by that particular time.

24      Q.    Okay.  So if you look through your

25  membership, there's a column for each league --

League of Women Voters of Texas - 5/18/2020

1  local league, right, in Texas that you have?

2      A.    Yes.

3      Q.    And the number of members?

4      A.    Right.

5      Q.    And then you account for anybody that's

6  not a member of one of the local leagues, down here

7  at the bottom where it says, individual state

8  members?

9      A.    Yes.

10     Q.    And it identifies 34?

11     A.    Yes.

12     Q.    So of those 34, you believe there are

13  members from Brazos County in that 34 total?

14     A.    Yes.

15     Q.    Okay.  How many; do you know?

16     A.    When you're -- we sent in the

17  information, I believe it was three, but I would

18  have to look.

19     Q.    Okay.  Then I wanted to go to Exhibit 5,

20  which is LW3 --

21     A.    Wait a second.

22     Q.    Exhibit 7, which is LW344.

23     A.    344.  Yes.  Just a second.  Yes.

24     Q.    Let me get over here to the right page.

25  I'm sorry, let me just tell you a different one.

League of Women Voters of Texas - 5/18/2020

102

1      A.    Okay.

2      Q.    Exhibit 5 and it's LW -- it begins at

3  LWV51.

4      A.    51?

5      Q.    Yes.

6      A.    Open.  Yes.  This is --

7      Q.    And if you go down to page -- of yours, I

8  believe it's page 30 and of the Bates number, it's

9  LWV-0000081.

10      A.    81.  Just a minute.  Yes.

11      Q.    And so this is your member count for

12  2018, correct?

13      A.    Yes.  This is the member count of members

14  who were fully paid up by January 31st of whatever

15  the year was this was happening.  2018.

16      Q.    And so at that time, the document shows

17  that you had 2,140 members, correct?

18      A.    Yes.

19      Q.    And I don't see anyone identified as a

20  statewide at large member.

21      A.    No.

22      Q.    So then by this number in 2018 at the

23  time of your state convention, you would assume you

24  didn't have any members from Brazos County, correct?

25      A.    No.  I would assume that they didn't put

League of Women Voters of Texas - 5/18/2020

1   down the state members because state members are --

2   aren't allowed to go to convention.  So they didn't

3   feel the necessity for putting them in this

4   document.

5       Q.   So this is not an accurate total of your

6   number of membership?

7       A.   That's right.

8       Q.   Okay.  Is there a document in your 2018

9   workbook that would show your total membership

10   number?

11      A.   I do -- do not think so.  There might be.

12   I would have to look.

13      Q.   Okay.  I couldn't find one, so I was

14   curious if you knew of something off the top of your

15   head.

16      A.   Okay.

17      Q.   Earlier when you were talking about the

18   county election website review --

19      A.   Yes.

20      Q.   -- do you do other types of reviews for

21   counties?

22      A.   That is a good question.  Not all

23   254 counties, no.

24      Q.   Do you -- what other types of reviews do

25   you do?

1      A.     I don't know if local leagues, leagues

2   that serve a specific community, do a review.  I

3   have done a survey that went out to all the 4,000

4   high school principals to find out how they

5   registered their high school students.

6      Q.     And is that review or survey shared with

7   the county in any way?

8      A.     No.

9      Q.     Okay.  Have you done any type of specific

10  reviews, outside of the one you mentioned and the

11  school district review for Brazos County?

12     A.     No.

13     Q.     And the only time you've done this, the

14  county website review, was in 2016; is that correct?

15     A.     No.

16     Q.     Have you done other reviews for the

17  county website?

18     A.     Yes.

19     Q.     And do you issue those certificates

20  yearly, or how often have you issued those

21  certificates?

22     A.     Every time we do a review, we offer those

23  certificates to the counties that got an outstanding

24  award.

25     Q.     Okay.

League of Women Voters of Texas - 5/18/2020

105

1      A.      And Brazos County did really well.  I'm

2  just saying.

3      Q.      Okay.

4      A.      I had to put that in.

5      Q.      Well, thank you.  Because that was going

6  to be my next question.  There's no secret here.

7  It's been shared for like 20 minutes.  So if you

8  look in the chat box, there is something titled

9  Exhibit 11.

10     A.      What is that?  Exhibit 11?

11     Q.      Yes.

12     A.      Can I open it?

13     Q.      Yes.

14     A.      What is that?  That's from 2016.  I'm

15  sure it's been -- you've gotten more than that.

16     Q.      Yes, we have.

17     A.      Look at that.  I love your website.  I'm

18  telling you.

19     Q.      Well, that was -- we received numerous

20  ones of these, but I just wanted to make sure that

21  the first one that came out was in 2016, correct?

22     A.      Uh-huh.  Yes.

23     Q.      If you look down, the second page of that

24  is the outstanding evaluation, correct?

25     A.      Let me see.  Well, I see the certificate.

106

1      Q.    Yes.

2      A.    Yes.

3      Q.    And then there's some additional

4  documents at the end and it lists, I think,

5  15 counties that got outstanding, correct?

6      A.    Fifteen, yes.

7      Q.    And then 29 that got an honorable

8  mention?

9      A.    Yes.

10      Q.    And so then if you look specifically for

11  the comments for Brazos County, it's on page 13 of

12  that document.

13      A.    Just a second.

14      Q.    It's the one right after the certificate.

15      A.    Thirteen.  Yes.

16      Q.    And that just shows that -- I'm assuming

17  where it says, overall adequacy score and it says,

18  five perfect, that means that Brazos County got a

19  perfect score?

20      A.    I don't -- I would have to look at the

21  actual -- I don't think it means it got a perfect

22  score.  I think that there were levels, and I would

23  have to look and see what the numbers were, but did

24  fantastic -- but did great.

25      Q.    Okay.

League of Women Voters of Texas - 5/18/2020

107

1          MR. MAGEE:  Well, I don't think I

2   have any other questions for you, Ms. Chimene.

3          THE WITNESS:  Well, you tell them to

4   keep doing a great job because I do enjoy their

5   website.

6          MR. MAGEE:  Okay.  Thank you.

7          MS. SURIANI:  Grace, I just have a

8   few questions for you and I think we can close out

9   for the day, unless anyone has anything more.

10                    EXAMINATION

11  BY MS. SURIANI:

12     Q.    So just -- I think I just have two

13  questions, basically.  First, we talked at length

14  before about the Get Out the Vote project that was

15  started around 2016.

16     A.    Yes.

17     Q.    Is that right?

18     A.    Uh-huh.

19     Q.    So I just want to clarify.  Does all of

20  your vote by mail work that you do fall under this

21  Get Out the Vote special project?

22     A.    No.

23     Q.    And can you explain that a little bit

24  more?

25     A.    The Get Out the Vote project is

League of Women Voters of Texas - 5/18/2020

108

1  specifically for providing training to leagues and

2  partnering organizations and communities, whoever

3  wants to.  It's available on our website.  It's for

4  training material.  We do -- ask the question one

5  more time.

6      Q.    Sure.  Let me -- and I'll ask it a

7  different way.  So you've testified previously that

8  your Get Out the Vote work and your mail-in ballot

9  work specifically touches on multiple areas of your

10 budget; is that right?

11     A.    Right.

12     Q.    And so it's not just -- your vote -- let

13 me rephrase.

14          Your mail-in ballot-related work is not

15 only confined to this Get Out the Vote project?

16     A.    Absolutely.  We have mail-in ballot

17 information on our website, we have vote by mail

18 information on social media, we have vote by mail

19 information on our -- on YouTube and on Facebook

20 media and on Instagram and on Twitter, and we create

21 that information and it changes over time and we

22 create it and try to make it -- keep it fresh for

23 each election.  And so it is very time-consuming and

24 an important part of our work that we do.

25     Q.    Okay.  Great.  Thanks, Grace.  And the

1  one last question I wanted to ask you is, so we

2  talked a bit about the structure of the League of

3  Women Voters of Texas and the local leagues.  Is

4  there a local league for all of the 254 counties in

5  Texas?

6      A.    No, there is not.  What we do is -- so

7  any community that doesn't have a local league, the

8  League of Women Voters of Texas provides them the

9  service the best we can.  We provide Voter Guides,

10  we provide voter education and we do the county

11  election website survey and provide election

12  administrators with information to help them provide

13  best -- use best practices to provide voters with

14  information.

15      Q.    Great.  That makes sense.  So if a member

16  doesn't have a local league in their county, you

17  said already -- you testified already that they're

18  members at large.  Is that right, generally?

19      A.    They used to be -- in some places they're

20  called -- in some states they're called members at

21  large.  In Texas, because of the MAL being something

22  that we don't want to call people, we try to call

23  them more often, statewide members.

24      Q.    Understood.

25          MS. SURIANI:  Well, that's all I

League of Women Voters of Texas - 5/18/2020

110

1  have.  So I can pass the witness, unless anyone else

2  has any other questions.  Thank you, Grace.

3            THE WITNESS:  Thank you.

4            MS. MACKIN:  Ms. Chimene, I just

5  realized there are just a couple of quick questions

6  that I have not asked you, but I don't think this

7  should take too long.

8            THE WITNESS:  Okay.

9            FURTHER EXAMINATION

10 BY MS. MACKIN:

11     Q.    There are two documents that we received

12 this morning that I just wanted to get a little bit

13 of insight on.

14     A.    Okay.

15     Q.    I'm sharing a document in the chat box

16 marked League of Women Voters 702.  And that will be

17 the next exhibit to the deposition.  I believe we're

18 on 12.

19            (Deposition Exhibit 12 marked for

20 identification.)

21 BY MS. MACKIN:

22     Q.    All right.

23     A.    Yes, I have 702 open.

24     Q.    Do you recognize that document?

25     A.    Yes.

League of Women Voters of Texas - 5/18/2020

111

1  Q. And what is it?

2  A. It is -- I'm looking for the date.

3  Q. That was my next question.

4  A. I'm looking for the date.  It says

5 today's date is 5/16.

6  Q. Okay.  So --

7  A. Say it again.

8  Q. I'm sorry.  No, go ahead.

9  A. So it is a person who asked a question on

10 Facebook through the Facebook Messenger, and it

11 looks like it was in response to some information we

12 put up about the Texas primary runoff.  And that was

13 it.  I --

14  Q. And --

15  A. Yes.

16  Q. -- when -- was this message sent to you?

17  A. No.  This is not sent to me.  It is sent

18 to the League of Women Voters of Texas Facebook

19 page.

20  Q. I see.  And just so I'm clear, was that

21 received today?

22  A. Is this the 16th?  It looks like it was

23 the 16th.

24  Q. Okay.  So maybe -- May 16th, 2020?

25  A. Yes.

League of Women Voters of Texas - 5/18/2020

1    Q.    Okay.  And do you know if anyone

2  responded to that message?

3    A.    Sent by Grace Chimene.  It looks to me

4  like they might have asked for something, and I sent

5  them the Texas primary runoff thing and then they

6  sent me something back.  And when I say me, it's

7  because I'm an administrator on the page.

8    Q.    Okay.

9    A.    They're still not responding to me

10  personally.  They're sending me something to --

11  something to the league.

12    Q.    And --

13    A.    That's my understanding of what this page

14  is.

15    Q.    What is the name of the individual who

16  sent this message to the league?

17    A.    It looks like it is Virginia Martinez.

18    Q.    And is Virginia Martinez a member of the

19  League of Women Voters of Texas?

20    A.    I did not check that out.  Anybody can

21  follow our page.  We answer questions on voting when

22  we can.  And she contacted us through Facebook.

23    Q.    Do you know if Ms. Martinez has ever had

24  a ballot by mail rejected for signature mismatch?

25    A.    No.

113

1        Q.      That is all I have on that document.

2        A.      Thank you.

3        Q.      I'm going to share with you -- so you can

4   close out of it.

5        A.      Okay.

6        Q.      I'm going to share what will be

7   Exhibit 13 to this deposition.

8                (Deposition Exhibit 13 marked for

9   identification.)

10  BY MS. MACKIN:

11       Q.      And it is marked LWV703.  Please let me

12  know when you are able to pull up that document.

13       A.      I have it open.

14       Q.      And do you recognize this document?

15       A.      I believe it is -- we were contacted on

16  Facebook, the League of Women Voters of Texas, and

17  by Kathryn Motard.

18       Q.      And is Kathryn Motard a League of Women

19  Voters of Texas member?

20       A.      I don't know.

21       Q.      Is there a date on this message?

22       A.      It says 5/16.

23       Q.      So it was received on May 16th of 2020?

24       A.      Yes.

25       Q.      And I see that a response was sent.  Did

1  you send that response?

2      A.    That response is an automatic response.

3      Q.    I see.  So I didn't see that response on

4  the previous document.  Do you know why it's

5  included on this one and not on the previous one?

6      A.    I don't know.

7      Q.    And do you know if Ms. Motard has ever

8  had a ballot by mail rejected for signature

9  mismatch?

10     A.    No.

11     Q.    Of the education that the League of Women

12 Voters of Texas provides, do you provide any

13 educational materials about signature comparison or

14 document examination?

15              MS. SURIANI:  Objection to form.

16              You can answer if you understand,

17 Grace.

18     A.    Say it again.

19 BY MS. MACKIN:

20     Q.    Sure.  Does the League of Women Voters of

21 Texas provide any voter education materials about

22 signature comparison for mail-in ballots?

23     A.    Signature comparison.  We provide voter

24 education on our website, on the web page called

25 Vote By Mail.  On tips, it tells people -- voters

League of Women Voters of Texas - 5/18/2020

115

1   who go there or when we share it, it tells them to

2   make sure they use the same signature.  That

3   information is also provided in a recent YouTube

4   about vote by mail.

5        Q.   And what's the date on the recent YouTube

6   video you referenced?

7        A.   It would be within the last month.  So

8   it's voter education because of the huge concern

9   with more voters wanting to vote by mail because of

10  their concern about catching COVID.

11       Q.   So to the extent that you have voter

12  education materials that relate to signature

13  comparison, those would have been provided to us in

14  discovery in this lawsuit, right?

15       A.   You mean is there something else out

16  there that I don't know about?

17       Q.   Well, I mean is there something else out

18  there that hasn't been provided?

19       A.   The page and the new video, which came

20  out sometime, would -- about -- specifically about

21  signatures, is that what you're talking about?

22  Would be the ones that have -- I don't know if you

23  have those or not because we didn't talk about them.

24  And I don't know if they were in the hundred billion

25  page long list of documents.  Sorry.

League of Women Voters of Texas - 5/18/2020

1    Q.    We did.  We received screenshots from the

2  website, we received PowerPoints which we talked

3  about and we received a screenshot of the YouTube

4  page of the videos.

5    A.    Okay.  Thank you.

6    Q.    So to the best of your understanding, is

7  there anything else specific to signature

8  comparison?

9    A.    There are -- we create vote by mail

10  graphics to encourage voters and to provide them

11  with information, but they are not specific to the

12  signature, that I recall --

13    Q.    Okay.

14    A.    -- at this time.

15    Q.    So we just kind of ran through the list

16  of stuff that's specific to signature comparison.

17    A.    Uh-huh.

18    Q.    And then one last question that I

19  realized I forgot to ask when I was asking you about

20  Marilyn Wills.

21    A.    Yes.

22    Q.    I noticed that the e-mail included a

23  reference to her husband Dennis as well.

24    A.    That's right.

25    Q.    And it made me curious as to what

1  percentage of your members are male, if you know?

2      A.    I don't know what percentage is, but all

3  folks are invited to be a member who are over the

4  age of 16.

5      Q.    And do you know if Mr. Wills has ever had

6  a ballot by mail rejected for signature mismatch?

7      A.    I don't know.

8              MS. MACKIN:  All right.  Thank you

9  for indulging me with that second round,

10 Ms. Chimene.  I will pass the witness.

11             THE WITNESS:  Thank you.

12             MS. SURIANI:  And we'll reserve --

13 we'll reserve the remainder.  We're all set.

14             THE REPORTER:  Transcript orders?

15             MS. MACKIN:  E-tran is good with us.

16             MS. SURIANI:  We'll take a read and

17 sign, please.

18             MR. MAGEE:  E-tran is good with me.

19             MR. TAWIL:  And the same for Isaac.

20             THE REPORTER:  We're off the record.

21             (Deposition concluded at 2:40 p.m.)

22

23

24

25

118

1                    CORRECTIONS AND SIGNATURE

2    PAGE/LINE      CORRECTION              REASON FOR CHANGE

3    _____

4    _____

5    _____

6    _____

7    _____

8    _____

9    _____

10   _____

11   _____

12   _____

13   _____

14   _____

           I, GRACE CHIMENE, have read the foregoing
15   deposition and hereby affix my signature that same
     is true and correct except as noted herein.

16

17         _____
           GRACE CHIMENE
18
     STATE OF _____  )
19   COUNTY OF _____   )

20         Subscribed and sworn to before me by the
     said witness, GRACE CHIMENE, on this the _____
21   day of _____, 2020.

22

                    _____
23                  NOTARY PUBLIC IN AND FOR
                    THE STATE OF_____
24

25   My Commission Expires: _____

1                    REPORTER'S CERTIFICATION

2

3          I, Micheal A. Johnson, Registered Diplomate

4    Reporter, Certified Realtime Reporter and Notary

5    Public in and for the State of Texas, certify that

6    on the 18th day of May, 2020, I reported the Remote

7    Oral Deposition of GRACE CHIMENE, after the witness

8    had first been duly cautioned and sworn to testify

9    under oath; said deposition was subsequently

10   transcribed by me and under my supervision and

11   contains a full, true and complete transcription of

12   the proceedings had at said time and place; and that

13   reading and signing was requested.

14          I further certify that I am neither counsel

15   for nor related to any party in this cause and am

16   not financially interested in its outcome.

17          GIVEN UNDER MY HAND AND SEAL of office on

18   this 29th day of May, 2020.

19

20

21   _____
     MICHEAL A. JOHNSON, RDR, CRR
22   NCRA Registered Diplomate Reporter
     NCRA Certified Realtime Reporter
23   Notary Public in and for the
     State of Texas
24   My Commission Expires:  8/8/2020

25

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| DR. GEORGE RICHARDSON, ROSALIE WEISFELD, AUSTIN JUSTICE COALITION, COALITION OF TEXANS WITH DISABILITIES, MOVE TEXAS CIVIC FUND, LEAGUE OF WOMEN VOTERS OF TEXAS, and AMERICAN GI FORUM OF TEXAS, INC., | § § § § § § § § | |
| *Plaintiffs,* | § § | |
| v. | § § | No. 5:19-cv-00963 |
| | § | |
| TEXAS SECRETARY OF STATE, TRUDY HANCOCK, IN HER OFFICIAL CAPACITY AS BRAZOS COUNTY ELECTIONS ADMINISTRATOR, AND PERLA LARA IN HER OFFICIAL CAPACITY AS CITY OF MCALLEN, TEXAS SECRETARY, | § § § § § § | |
| *Defendants.* | § § | |

### DEFENDANT SECRETARY OF STATE'S FIRST AMENDED NOTICE OF ORAL DEPOSITION PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30

TO: League of Women Voters, by and through its attorneys of record, Hani Mirza, Zachary D. Dolling, Beth Stevens, and Ryan Cox, Texas Civil Rights Project, 1405 Montopolis Drive, Austin, Texas 78741; and Richard Mancino, Jennifer Hardy, Joanna Suriani, Willkie Farr & Gallagher LLP, 1875 K Street, N.W., Washington, DC 20006.

Defendant Texas Secretary of State hereby notices the deposition upon oral examination of League of Women Voters of Texas "LWVTX," including all subsidiaries, DBAs, and aliases, beginning at **10:00 AM** on, **Monday**, **May 18, 2020** and continuing from day to day until complete. The deposition will be held virtually via Zoom videoconference and will be transcribed and videotaped by a certified court reporter and videographer designated by Defendant. Defendant reserves the right to

1



Exhibit
Grace Chimene

1

5/18/20  MJ

use the deposition for any purpose permitted under the Federal Rules of Civil Procedure or Federal Rules of Evidence.

Pursuant to Federal Rule of Civil Procedure 30(b)(6), LWVTX is directed to designate one or more officers, directors, managing agents, or other persons who will testify on LWVTX's behalf regarding all information known or reasonably available to LWVTX with respect to the matters set forth in **Attachment A**.

Pursuant to Federal Rules of Civil Procedure 30(b)(2) and 45, LWVTX is also requested to produce at least 24 hours before the videoconference deposition, all documents in response to the subpoena duces tecum in **Attachment B**.

<div align="right">

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

RYAN L. BANGERT
Deputy First Assistant Attorney General

DARREN L. MCCARTY
Deputy Attorney General for Civil Litigation

THOMAS A. ALBRIGHT
Chief for General Litigation Division

*/s/ Anne Marie Mackin*
ANNE MARIE MACKIN
Texas Bar No. 24078898
Assistant Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2798 | FAX: (512) 320-0667
anna.mackin@oag.texas.gov

</div>

2

**ATTORNEYS FOR DEFENDANT**
**TEXAS SECRETARY OF STATE**

**CERTIFICATE OF SERVICE**

I certify that that on May 14, 2020 this notice was served upon counsel listed below via email.

**Hani Mirza**
hani@texascivilrightsproject.org
**Zachary D. Dolling**
zachary@texascivilrightsproject.org
**Rebecca Harrison Stevens**
beth@texascivilrightsproject.org
**Ryan V. Cox**
ryan@texascivilrightsproject.org
**Samuel Kalar**
skalar@willkie.com
**Joanna Suriani**
jsuriani@willkie.com
**Eric Magee**
e.magee@allison-bass.com
**Isaac J. Tawil**
itawil@mcallen.net
**Austin Stevenson**
astevenson@mcallen.net
**C. Robert Heath**
bheath@bickerstaff.com
**Gunnar P. Seaquist**
gseaquist@bickerstaff.com

*/s/Anne Marie Mackin*
ANNE MARIE MACKIN
Assistant Attorney General

3

## DEFINITIONS

The terms below are used in this notice as follows:

1. "League of Women Voters," "LWV," "LWVTX," "you," "your," or "yours" mean League of Women Voters of Texas (a plaintiff in this Lawsuit) and anyone acting or purporting to act on their behalf with respect to any matter inquired about herein, including without limitation representatives, employees, or agents.

2. "Austin Justice Coalition," or "AJC," means Austin Justice Coalition (a plaintiff in this Lawsuit), and anyone acting or purporting to act on its behalf with respect to any matter inquired about herein, including without limitation representatives, employees, or agents.

3. "Coalition of Texans with Disabilities" or "CTD" means Coalition of Texans with Disabilities (a plaintiff in this Lawsuit), and anyone acting or purporting to act on its behalf with respect to any matter inquired about herein, including without limitation representatives, employees, or agents.

4. "MOVE Texas Civic Fund," "MOVE Texas," or "MOVE" means MOVE Texas Civic Fund (a plaintiff in this Lawsuit), and anyone acting or purporting to act on its behalf with respect to any matter inquired about herein, including without limitation representatives, employees, or agents.

5. "Individual Plaintiffs" means Dr. George Richardson and Ms. Rosalie Weisfeld, natural persons who are plaintiffs in this lawsuit, and anyone acting or purporting to act on their behalf with respect to any matter inquired about herein, including without limitation representatives, employees, or agents.

6. "Organizational Plaintiffs" means AJC, CTD, MOVE, and LWVTX, and anyone acting or purporting to act on their behalf with respect to any matter inquired about herein, including without limitation representatives, employees, or agents.

7. "Plaintiffs" means the Individual Plaintiffs and the Organizational Plaintiffs.

8. "Person" means the plural as well as the singular and includes: natural persons, corporations, firms, associations, partnerships, joint ventures, trusts, estates, or any other form of legal entity; and governmental agencies, departments, units, or subdivisions thereof.

4

9.  "SOS" means the Defendant Texas Secretary of State, in her official capacity, including without limitation representatives, employees, agents, or officers acting on her behalf with respect to any matter inquired about herein.

10. "Defendants" means SOS; Trudy Hancock, in her official capacity as Brazos County Elections Administrator; and Perla Lara, in her official capacity as City of McAllen, Texas, Secretary.

11. "Lawsuit" means the case styled, *Dr. George Richardson, et. al. v. Texas Secretary of State, et al.*, civil action no. 5:19-cv-00963 in the United States District Court for the Western District of Texas, San Antonio Division.

12. "Complaint" means your live pleading in this case—as of service of these discovery requests, the document entitled "Plaintiff's Original Complaint," filed in this Lawsuit on August 7, 2019 (Dkt. 1).

13. "Communication" means any manner or means of disclosure, transfer, or exchange of information, whether oral, written, in-person, telephonic, electronic, digital, mailed, or otherwise.

14. "Document" includes all writings of every kind, source and authorship, both originals and all non-identical copies thereof including handwritten, typewritten, printed, photocopied, photographic, or electronically recorded matter. For purposes of illustration and not limitation, the term shall include: emails, Facebook postings, social media postings, letters, journals, diaries, bank statements, charts, Excel spreadsheets, handwritten notes, affidavits, schedules, workpapers, audio recordings, video recordings, transcriptions, contracts, agreements, and memoranda of any kind.

15. "Relating to" means in any way concerning, constituting, analyzing, discussing, describing, considering, modifying, amending, confirming, endorsing, evidencing, representing, supporting, substantiating, qualifying, negating or refuting, unless qualified by word of limitation.

16. The singular includes the plural and vice versa.

17. The masculine gender includes the feminine and vice versa.

18. All other terms are to be interpreted in accordance with their normal usage in the English language.

## <u>Attachment A</u>

### 30(B)(6) CORPORATE REPRESENTATIVE DEPOSITION TOPICS

1. Your mission.

2. Your organization, including your organizational structure, employees, physical assets, parent and sibling entities, tax status, and history; the services that you provide, and the activities you perform.

3. The activities on which you have spent funds or to which you have dedicated resources in Texas between January 1, 2017 and the present.

4. Your members on whose behalf you seek to maintain this suit.

5. The allegations you make in your Complaint and the factual bases therefor.

6. The relief that you contend would remedy the claims you make in this lawsuit.

7. The documents produced in response to

   a. the subpoena duces tecum described in Attachment B, and;

   b. Defendants' Requests for Admission, Interrogatories, and Requests for Production in this cause.

6

## Attachment B

To the extent not already produced by you in response to the Secretary of State's discovery requests in this cause, produce the following:

1. Documents sufficient to substantiate the factual allegations you make in your Complaint.

2. All communications between you and any person to assist them in voting by mail in Texas.

3. Documents sufficient to show all information described and/or requested in 30(b)(6) deposition topic numbers 2, 3, 4, and 5 in Attachment A to this notice.

4. To the extent not already provided in response to items 1-3 above, all documents reviewed in preparation for your deposition.

If documents responsive to these categories have already been produced in discovery, the witness is expected to be able to identify those documents by bates numbers.

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

DR. GEORGE RICHARDSON, ROSALIE   §
WEISFELD,     AUSTIN     JUSTICE   §
COALITION, COALITION OF TEXANS    §
WITH  DISABILITIES,  MOVE  TEXAS  §
CIVIC  FUND,  LEAGUE  OF  WOMEN   §
VOTERS OF TEXAS, and AMERICAN GI  §
FORUM OF TEXAS, INC.,             §
                                  §
              *Plaintiffs*        §
                                  §
v.                                §        Civil Case No. 5:19-cv-00963
                                  §
TEXAS SECRETARY OF STATE, TRUDY   §
HANCOCK, in her official capacity as  §
BRAZOS      COUNTY      ELECTIONS  §
ADMINISTRATOR, and PERLA LARA in  §
her  official  capacity  as  CITY  OF  §
MCALLEN, TEXAS SECRETARY,         §
                                  §
              *Defendants*.       §

## PLAINTIFFS' ORIGINAL COMPLAINT

Plaintiffs, Dr. George Richardson, Rosalie Weisfeld, Austin Justice Coalition, Coalition of

Texans with Disabilities, MOVE Texas Civic Fund, League of Women Voters of Texas, and

American GI Forum of Texas, Inc., file this Original Complaint seeking declaratory and injunctive

relief pursuant to 42 U.S.C. § 1983 and the United States Constitution. Plaintiff Coalition of

Texans with Disabilities additionally seeks declaratory and injunctive relief pursuant to Title II of

the Americans with Disabilities Act and the Rehabilitation Act of 1973.

### I.
### THE NATURE OF THE CASE

1.       The right to vote is a precious and fundamental political right that is preservative

of all other rights. By definition, it includes the right of qualified voters within a state to cast their



Exhibit
Grace Chimene

2

5/18/20  MJ

ballots and have them counted. But Texas unlawfully rejects the duly signed mail-in ballots of thousands of eligible voters every major election. Indeed, Texas counties rejected at least 1,873 mail-in ballots during the 2018 General Election and at least 1,567 mail-in ballots during the 2016 General Election solely on the basis of mismatching signatures. *See* Ex. A.

2.      Texas offers the opportunity to vote by mail to voters who are outside of their county during elections, voters with disabilities, voters 65 years-of-age or older, and voters confined in jail but otherwise eligible to vote.[1] Even though Texas' mail-in ballot process should make voting easier for voters from these underrepresented groups, the current flawed process leads to the unlawful disenfranchisement of these Texas voters. Specifically, current rules authorize untrained local election officials to arbitrarily and subjectively reject mail-in ballots if officials believe, based on their own layman analysis, that the signature on a ballot is not in fact the voter's signature. No advance notice is given to voters before their vote is rejected, and the decision to reject a mail-in ballot is final.

3.      For example, during the 2018 General Election, Brazos County rejected the mail-in ballot of Plaintiff Dr. George Richardson—a doctor whose signature has been used to prescribe countless medications—on the basis of a signature mismatch. The county gave him no notice of its decision until after the election, notwithstanding the fact that Dr. Richardson would have confirmed that it was his signature on the mail-in ballot if so asked. When Dr. Richardson confronted Brazos County officials, they told him that they had "eye-balled" his signature to determine it was not his.

---

[1] "A qualified voter is eligible for early voting by mail if, at the time the voter's early voting ballot application is submitted, the voter is confined in jail:
    (1)  serving a misdemeanor sentence for a term that ends on or after election day;
    (2)  pending trial after denial of bail;
    (3)  without bail pending an appeal of a felony conviction;  or
    (4)  pending trial or appeal on a bailable offense for which release on bail before election day is unlikely."
Tex. Elec. Code § 82.004(a)

2

4.      Similarly, during a city run-off election in 2019, the City of McAllen rejected Plaintiff Rosalie Weisfeld's mail-in ballot on the same basis. To her recollection, Ms. Weisfeld has voted in every primary, city, bond, constitutional, school district, county, runoff, water district, and general election for the last 30 years. Ms. Weisfeld would have confirmed that the signature was hers had she been asked. Yet, the City of McAllen gave her no notice of the rejection until after the election.

5.      Because Texas' mail-in ballot process fails to provide uniform standards for signature comparison, deprives voters of the ability to cure ballots questioned for an alleged signature mismatch, and fails to require meaningful pre-rejection notice to voters with ballots questioned for an alleged signature mismatch, the mail-in ballot process violates both the Equal Protection Clause and the Due Process Clause of the Fourteenth Amendment to the United States Constitution on its face and as applied to all Plaintiffs, including Dr. Richardson and Ms. Weisfeld. U.S. CONST. amend. XIV, § 1.

6.      For these same reasons, Texas' mail-in ballot process also violates Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12131, *et seq*., and the Rehabilitation Act of 1973 (RA), 29 U.S.C. § 794.3, with respect to voters who cannot sign matching or sufficiently similar signatures due to a disability. Defendants' refusal to reasonably accommodate this group of mail-in ballot voters with disabilities—either by allowing them to contest and cure a ballot rejected for signature mismatch or by not applying the signature comparison requirements to their ballots—discriminates against said voters and excludes them from participation in and unfairly denies them the benefits of the mail-in ballot process.

7.      Plaintiffs, therefore, respectfully request this court enter a declaratory judgment invalidating Texas' signature comparison procedure, as laid out in Texas Election Code §§

87.041(b)(2), (e), and (f), for violating the United States Constitution, the ADA, and the RA. Plaintiffs further request a permanent injunction enjoining Defendants from implementing Texas Election Code §§ 87.041(b)(2), (e), and (f) or, in the alternative, requiring that Defendants (1) provide voters meaningful notice prior to the rejection of a mail-in ballot and (2) offer voters the ability to cure a mail-in ballot questioned for an alleged signature mismatch.

## II.
## JURISDICTION AND VENUE

8.      This is a civil and constitutional rights action arising under 42 U.S.C. § 1983, the Fourteenth Amendment to the United States Constitution, Title II of the ADA, and the RA. This Court has jurisdiction over these claims under 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

9.      Venue in this Court is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district, and because Defendant Secretary of State conducts business in this district.

## III.
## PARTIES

### Individual Plaintiffs

10.      Plaintiff Dr. George Richardson is an individual voter who was improperly and unconstitutionally disenfranchised in the 2018 General Election. Dr. Richardson applied for a mail-in ballot for the 2018 General Election in Brazos County due to his eligibility as a voter over 65 years-of-age. After applying for a mail-in ballot, Dr. Richardson properly signed and timely mailed his ballot in compliance with the Texas Election Code. After the election, he received a letter from Brazos County notifying him that his ballot was rejected because of a signature mismatch. Dr. Richardson confronted county election officials who explained that the panel "eye-balls" the signatures, had determined his signature was not actually his, and that their decision was

final. Dr. Richardson is a physician who has signed hundreds of prescriptions every year for 41 years and has never had his signature questioned by a pharmacist. Had Brazos County notified Dr. Richardson during the election that county election officials questioned the signature on his ballot, Dr. Richardson would have confirmed that the signature on his ballot was, in fact, his own. Dr. Richardson wishes, intends, and plans to continue casting a mail-in ballot but, in order to avoid future disenfranchisement, will only do so when the county either stops rejecting mail-in ballots based on an alleged signature mismatch or provides voters, at the very least, a pre-rejection notice and the ability to cure mail-in ballots questioned for an alleged signature mismatch.

11.    Plaintiff Rosalie Weisfeld is an individual voter who was improperly and unconstitutionally disenfranchised in the 2019 McAllen, Texas city run-off election. Ms. Weisfeld applied for a mail-in ballot for the June 22, 2019 McAllen, Texas city run-off election because she had to be out of the county during the early voting period and on Election Day. After applying for a mail-in ballot, Ms. Weisfeld properly signed and timely mailed her ballot in compliance with the Texas Election Code. About ten days after the election, she received a letter from the City of McAllen, mailed to her out-of-town address where she was no longer staying, notifying her that her ballot was rejected because of an alleged signature mismatch. Had the City of McAllen notified Ms. Weisfeld during the election that city election officials questioned the signature on her ballot envelope, Ms. Weisfeld would have confirmed that the signatures on the application and envelope were both, in fact, her own. Ms. Weisfeld votes regularly. To her recollection, Ms. Weisfeld has voted in every primary, city, bond, constitutional, school district, county, runoff, water district, and general election for at least the last 30 years, and she plans to vote in every single upcoming election for which she is eligible to vote. Ms. Weisfeld regularly has professional and family obligations that require her to be out of her county of residence, requiring her to vote by mail on

many occasions in the past, and she intends to vote by mail in the future when such obligations prevent her from voting in person.

<div align="center">

Austin Justice Coalition

</div>

12.    Plaintiff Austin Justice Coalition (AJC) sues Defendants on its own behalf. AJC is a non-partisan, non-profit organization dedicated to "providing the tools for people of color and people who are marginalized to improve their lives by being the driving force behind their own liberation." As part of this mission, AJC operates #ProjectOrange, a coordinated campaign to enter the Travis County Jail, register eligible voters, and provide support to them in requesting and submitting mail-in ballots. AJC's #ProjectOrange mission is to ensure that eligible voters—those who have not been finally convicted of a felony or, if they have been convicted of a felony in the past, are "off paper"—are able to vote, despite their present confinement in county jails.

13.    Among other services, AJC, through its staff and volunteers, helps inmate voters fill out the mail-in ballot application section by section and instructs each inmate voter to write out their signature neatly. AJC works with the Travis County Jail and the Travis County Elections Department to ensure applications are received on time by the Elections Department, mail-in ballots are received by the inmate voters, and completed mail-in ballots are received by the Elections Department on time. While inmate voters fill their mail-in ballots, AJC, through its staff and volunteers, instructs each inmate voter to neatly write out the signature across the flap of the carrier envelope.

14.    AJC's mission is significantly frustrated by the current state laws and policies that result in the improper rejection of incarcerated voters' mail-in ballots. Because of Defendants' unlawful signature comparison procedure, each signed ballot improperly and arbitrarily rejected for an alleged signature mismatch undermines the efficacy of AJC's #ProjectOrange campaign.

<div align="center">

6

</div>

Moreover, AJC must expend additional resources, such as staff and volunteer time and resources instructing inmate voters to write out signatures neatly, when providing support to inmate voters with mail-in ballot applications and mail-in ballots due to the risk of arbitrary and unconstitutional rejection based on an alleged signature mismatch. The resources diverted for these purposes are transferred away from AJC's other voting-related activities.

<u>Coalition of Texans with Disabilities</u>

15.      Plaintiff Coalition of Texans with Disabilities (CTD) sues Defendants on its own behalf and on behalf of its members who use the mail-in ballot process based on their eligibility due to disability. These members are qualified individuals with a disability for purposes of the ADA and the RA.

16.      The interests at stake in this lawsuit are germane to CTD's purpose. CTD is a non-partisan, non-profit membership organization that works to ensure that people with disabilities may "live, work, learn, play, and participate fully in the community of their choice." CTD organizes events on subjects such as accessible voting, civil rights, and new state level initiatives with the potential to affect the disability community.

17.      CTD expends resources by informing voters statewide about their ability to cast a mail-in ballot, explains the rules and deadlines related to mail-in ballots, and encourages voters who are eligible to utilize mail-in ballots if they cannot vote in-person.

18.      CTD's mission is significantly frustrated by the current state laws and policies that result in the improper rejection of disabled voters' mail-in ballots. Many of the people CTD serves are especially likely to have variations in their signatures from one writing to the next, due to a disability. Because of Defendants' unlawful signature comparison procedure, each signed ballot improperly and arbitrarily rejected for an alleged signature mismatch undermines the efficacy of

<div align="center">7</div>

CTD's mail-in ballot work. Moreover, CTD must expend additional resources, such as staff and volunteer time and resources instructing voters to write out signatures neatly, when educating voters on completing mail-in ballot applications and mail-in ballots due to the risk of arbitrary and unconstitutional rejection based on an alleged signature mismatch. The resources diverted for these purposes are transferred away from CTD's other voting-related activities.

19.    Neither the claims asserted nor the relief requested by CTD require the participation of its individual members who regularly vote by mail. Plaintiffs seek only equitable relief which does not require any individualized inquiry into damages sustained by any member.

<u>MOVE Texas Civic Fund</u>

20.    Plaintiff MOVE Texas Civic Fund (MOVE) sues Defendants on its own behalf. MOVE's principal place of business is in San Antonio, Texas. MOVE is a non-partisan, non-profit, and grassroots organization "building power in underrepresented youth communities through civic education, leadership development, and issue advocacy." "MOVE" stands for "Mobilize. Organize. Vote. Empower." Since its inception, MOVE has worked to expand voter registration and equal access to voting. MOVE actively works to register eligible young people to vote and ensure that they cast a ballot that actually counts. In doing so, MOVE operates on 32 college campuses around the State of Texas, with 14 of those in the San Antonio area, and registers thousands of students to vote every year.

21.    Because college students are often absent from their counties of residence while attending school, MOVE provides support to students in applying for mail-in ballots when appropriate and follows up with them to ensure they have mailed their ballots in a timely manner. MOVE works with three distinct groups of students in relation to mail-in ballots: (1) eligible students who attend schools outside of Texas and away from their county of residence; (2) eligible

students who attend a Texas school outside of their county of residence; and (3) eligible students who attend a Texas school and consider their address at or nearby school as their residence, but are nevertheless away from school during an election for summer work, holidays, or another conflict.

22.     Depending on the election, MOVE expends resources to educate students about mail-in ballots, encourage eligible student voters to use mail-in ballots, and provide support to eligible student voters utilizing such ballots.

23.     MOVE's mission is significantly frustrated by the current state laws and policies that result in the improper rejection of youth voters' mail-in ballots. Because of Defendants' unlawful signature comparison procedure, each signed ballot improperly and arbitrarily rejected for an alleged signature mismatch undermines the efficacy of MOVE's mail-in ballot work. Moreover, MOVE must expend additional resources when providing support to voters with mail-in ballot applications and mail-in ballots due to the risk of arbitrary and unconstitutional rejection based on an alleged signature mismatch. MOVE sends messages through social media posts and paid texts to make sure that individual voters are following through with their mail-in ballot plans, and specifically warns voters, since the signature comparison procedure is strict and arbitrary, to sign mail-in ballots as clearly and legibly as possible to avoid improper rejection. The resources diverted for these purposes are transferred away from MOVE's in-person voting and voter registration activities.

<u>League of Women Voters of Texas</u>

24.     Plaintiff League of Women Voters of Texas (LWV) sues Defendants on its own behalf and on behalf of its members who use the mail-in ballot process. The interests at stake in this lawsuit are germane to LWV's purpose. LWV is a non-partisan, non-profit member

organization dedicated to empowering voters and defending democracy. LWV "strives for a democracy where every person has the desire, the right, the knowledge[,] and the confidence to participate in the democratic process." LWV actively works to register eligible people to vote and ensure that they actually cast a ballot that counts. In doing so, LWV operates across Texas, registering thousands every year.

25.   LWV expends resources to educate Texans about mail-in ballots, encourage eligible voters to use mail-in ballots, and provide support to eligible voters utilizing such ballots. LWV also prepares training materials for its members and local-area League of Women Voters organizations to use to educate and provide support to voters with the mail-in ballot process.

26.   LWV's mission is significantly frustrated by the current state laws and policies that result in the improper rejection of voters' mail-in ballots. Because of Defendants' unlawful signature comparison procedure, each signed ballot improperly and arbitrarily rejected for an alleged signature mismatch undermines the efficacy of LWV's work. Moreover, LWV must expend additional resources when providing support to voters with mail-in ballot applications and mail-in ballots due to the risk of arbitrary and unconstitutional rejection based on an alleged signature mismatch. Specifically, LWV must expend additional staff and volunteer time and resources instructing voters to write out signatures neatly through LWV's website, and LWV must expend additional staff and volunteer time and resources instructing voters to write out signatures neatly and have the signatures match each other as much as possible in PowerPoint presentations and scripts prepared for its members and local-area League of Women Voters organizations to use when educating and providing support to mail-in ballot voters. The resources diverted for these purposes are transferred away from LWV's other voting-related activities.

27.     Neither the claims asserted nor the relief requested by LWV require the participation of its individual members who regularly vote by mail. Plaintiffs seek only equitable relief which does not require any individualized inquiry into damages sustained by any member.

<u>American GI Forum of Texas, Inc.</u>

28.     Plaintiff American GI Forum of Texas, Inc. (AGIF) sues Defendants on its own behalf and on behalf of its members who use the mail-in ballot process. A significant portion of AGIF's members are eligible to vote by mail because they are: (1) classified as Disabled Veterans by the Department of Veterans Affairs; (2) military retirees 65 years-of-age or older; and/or (3) active duty service members and their families who are often stationed away from their county of residence in Texas.

29.     The interests at stake in this lawsuit are germane to AGIF's purpose. AGIF is a non-partisan, non-profit, Family Veterans, and member organization dedicated to addressing problems of discrimination and inequities endured by veterans and the communities in which they operate. AGIF requires at least 75% of its members be veterans. AGIF works to "enforce, defend, and protect the civil and human rights, [including voting rights,] of Hispanics, women, and other minorities, and to ensure equal opportunities as mandated by federal and state laws." AGIF and its constituent chapters across the state expend resources to register eligible Texas veterans, servicemembers, and their families to vote and to ensure that they actually cast a ballot that counts.

30.     The improper rejection of mail-in ballots frustrates AGIF and its chapters' mission of expanding voter registration and increasing voter turnout among AGIF's membership and the communities it serves, which is essential to advancing and leveraging its influence to advance policy change that benefits veterans, their families, and their communities. Texas' signature comparison procedure decreases overall confidence in the mail-in ballot process, and elections,

generally, which directly undermines the efforts AGIF and its chapters take to encourage eligible voters to use mail-in ballots and support those voters in making sure their mail-in ballots are counted.

31.     Neither the claims asserted nor the relief requested by AGIF require the participation of its individual members who regularly vote by mail. Plaintiffs seek only equitable relief which does not require any individualized inquiry into damages sustained by any member.

<center>Defendants</center>

32.     Defendant is the Texas Secretary of State (SOS). The SOS is the Chief Election Officer of the State of Texas. Tex. Elec. Code § 31.001(a). In this role, the SOS is responsible for enforcing elections statutes and routinely issues guidance to the county registrars of all 254 Texas counties on various elections procedures. SOS is a public entity under Title II of the ADA and the RA.

33.     Defendant Trudy Hancock is the Brazos County Elections Administrator (Brazos EA). She is sued in her official capacity. She is sued for the manner in which she implements the policies, customs, or practices at issue in this action. The Brazos EA is a public entity under Title II of the ADA and the RA.

34.     Defendant Perla Lara is the City of McAllen, Texas Secretary (McAllen City Secretary). She is the Chief Elections Official for the City of McAllen. The McAllen City Secretary is responsible for the administration of elections conducted within the City of McAllen, including joint elections with Hidalgo County as well as elections independent of the Hidalgo County. The McAllen City Secretary is sued for the manner in which she implements the policies, customs, or practices at issue in this action. The McAllen City Secretary is a public entity under Title II of the ADA and the RA.

<center>12</center>

# IV.
# FACTS

## Current Mail-in Ballot Procedures

35.      To vote a mail-in ballot, a voter must first send their county a mail-in ballot application via mail, fax (if available), or e-mail. *Application for a Ballot by Mail*, Texas Secretary of State, https://www.sos.state.tx.us/elections/voter/reqabbm.shtml (last visited June 25, 2019). A voter must submit the mail-in ballot application for a specific election 11 days before Election Day. *Id*. If a voter is voting by mail because the voter is disabled or is 65 years-of-age or older, the voter may use a single application to request mail-in ballots for all county elections in a calendar year. Tex. Elec. Code § 86.0015. While the voter can submit this annual application anytime during the calendar year, it still must be received at least 11 days before the first election in which the voter seeks to request a mail-in ballot. *Id*. § 86.0015(b-1).

36.      In order to successfully vote by mail, the voter must mark the ballot, place it in the official ballot envelope provided by the county, seal the official ballot envelope, place the official ballot envelope in the carrier envelope provided by the county, seal the carrier envelope, and sign the certificate on the carrier envelope. *Id*. § 86.005(a)-(c). Specifically, the carrier envelope certificate requires the voter to "certify that the enclosed ballot expresses [the voter's] wishes independent of any dictation or undue persuasion by any person," and includes a line for the voter's signature across the flap of the envelope. *Id*. § 86.013(c).

37.      Then, the carrier envelope must be returned to the county in a timely manner. *Id*. §§ 86.006(a), 86.013(c). Typically, counties must receive mail-in ballots that are not postmarked or do not have a delivery receipt by 7 p.m. on Election Day. Tex. Elec. Code § 86.007. At the latest, counties must receive mail-in ballots from voters inside the United States with a postmark

or delivery receipt dated on or before 7 p.m. on Election Day by 5 p.m. the next business day after Election Day. *Id*. § 86.007(a)(2).[2]

38.     The decision as to whether to reject a mail-in ballot is generally conducted by the Early Voting Ballot Board (EVBB), a statutorily required board established in each county that includes representatives from county parties. *See generally* Tex. Elec. Code § 87.001. The Early Voting Clerk, however, may determine that a Signature Verification Committee (SVC) should be established, in which case the SVC will perform the signature reviews rather than the EVBB. *See generally id*. § 87.027. SVCs are usually established in larger counties, but also appear in many smaller ones. An SVC is also mandatory if the Early Voting Clerk receives a timely petition of at least 15 registered voters requesting such a committee. *Id*. § 87.027(a-1).

39.     An SVC is composed of at least five members and, "[i]n an election in which party alignment is indicated on the ballot," must include at least two members designated by each county party on the ballot in equal numbers. *Id*. § 87.027(d). The chair of the SVC is appointed from a list provided by the party whose nominee for governor received the most votes in the county in the most recent gubernatorial general election. *Id*. The only qualification required to serve on an SVC is that the person be an eligible voter in the district or area for which the election is being held. Tex. Elec. Code § 87.027(e). Pursuant to these rules, SVC's are by law partisan committees of laypersons without any specific expertise or training.

40.     The only statutory guidance for an SVC to follow in performing reviews of mail-in ballots is stated in Tex. Elec. Code § 87.027(i), which provides:

---

[2] Counties must receive from non-military overseas voters mail-in ballots with a postmark or delivery receipt dated on or before 7 p.m. on Election Day no later than the 5th day after Election Day or, if the 5th day after Election Day falls on a Saturday, Sunday, or legal state or national holiday, then the deadline is extended to the next regular business day. *Id*. §§ 86.007(d), (d-1). Counties must receive from military overseas voters mail-in ballots no later than the 6th day after Election Day or, if the 6th day after Election Day falls on a Saturday, Sunday, or legal state or national holiday, then the deadline is extended to the next regular business day. *Carrier Envelope for FPCA Voter*, Texas Secretary of State, https://www.sos.state.tx.us/elections/forms/pol-sub/5-35.pdf (last visited June 25, 2019).

> The signature verification committee shall compare the signature on each carrier
> envelope certificate, except those signed for a voter by a witness, with the signature
> on the voter's ballot application to determine whether the signatures are those of
> the voter. The committee may also compare the signatures with any two or more
> signatures of the voter made within the preceding six years and on file with the
> county clerk or voter registrar to determine whether the signatures are those of the
> voter. Except [where more than one SVC is appointed in the same county], a
> determination under this subsection that the signatures are not those of the voter
> must be made by a majority vote of the committee's membership.

The same procedure is to be followed by the EVBB if an SVC is not appointed in a particular

county. Tex. Elec. Code § 87.027(j).

41.    The Election Code does not establish any standards or guidance that must be used

for actually determining if a signature is that of the voter, nor has SOS or any other entity used

rule-making authority to create such standards. Accordingly, each county (and even each

committee if multiple SVC panels are created) necessarily develops its own idiosyncratic,

arbitrary, and ad hoc procedure to determine that a ballot should be rejected. *See* Tex. Elec. Code

§ 87.041(b)(2) (requiring rejection). These standards will necessarily vary from county to county,

panel to panel, and even from meeting to meeting or ballot to ballot within the same committee

panel.

42.    The above signature verification procedure is not and cannot be performed

anonymously. In other words, members of the EVBB or SVC necessarily know which voter's

ballot they are considering prior to determining if it should be accepted or rejected.

43.    All decisions of the committee are final; if a voter's ballot is rejected, that voter has

no recourse or process to challenge the panel's determination that the voter's ballot was signed by

someone other than the voter.

44.    Additionally, the board is not required to send notice of rejection to the voter until

10 days after an election, regardless of how early it makes the decision to reject the ballot. *Id*.

§ 87.0431(a). These voters are not provided any kind of notice of their ballot's rejection, nor sufficient time to seek judicial relief, such as that sought in this Complaint, prior to the final votes in the election-at-issue being counted.

45.    Mail-in ballot procedures exclusively affect groups of people who are explicitly eligible by statute to apply for a ballot by mail, including: (1) disabled persons, (2) persons 65 years-of-age or older, (3) persons detained in state jails but otherwise eligible to vote, and (4) persons who will be out of their county of residence during the entire early voting period and on Election Day (a group with significant representation from active-duty military members and college students attending school away from their county of residence). *See* Tex. Elec. Code §§ 82.001–82.004.

46.    The groups that are eligible to vote by mail are also the same groups, in many cases, that are most likely to have signature variations that could cause an improper rejection—especially the elderly, disabled, and persons who speak English as a second language.

47.    A voter whose ballot is rejected is not given any notice of their rejection prior to the rejection, any opportunity to cure their ballot, or any ability to contest the decision of the EVBB or SVC since counties have until 10 days after Election Day to notify the voter of a rejected mail-in ballot. Tex. Elec. Code § 87.0431(a).

<u>Reasons Signatures Often Do Not Match</u>

48.    A person's signature may vary for a variety of reasons, both intentional and unintentional. Unintentional factors that can affect a person's handwriting include medical and/or physical factors such as growing old, illness, injury, symptoms from taking certain medicine, change in eyesight, and consuming alcohol and/or drugs; mechanical factors such as pen type, ink, signing surface, signing position, and paper quality; and psychological factors such as distress,

anger, fear, depression, happiness, and nervousness. *Democratic Executive Committee of Florida v. Lee*, 915 F.3d 1312, 1320 (11th Cir. 2019); *Saucedo v. Gardner*, 335 F. Supp. 3d 202, 212 (D.N.H. 2018). Moreover, a person's handwriting naturally changes over time. Variances between signatures are more prevalent in people who are elderly, disabled, under extreme stress, or who speak English as a second language. *Saucedo*, 335 F. Supp. 3d at 212.

49.     For the most part, signature variations are of little consequence in a person's life. But in the context of voting by mail, these variations become profoundly consequential under Texas' signature comparison procedure, as they may result in the improper disenfranchisement of eligible voters. Elderly and disabled voters, two groups of voters expressly permitted to use the mail-in ballot process, are especially likely to have signature variations.

<center>Texas' Alleged Signature-Matching Process Is Severely Flawed</center>

50.     As a procedure to verify identity, signature comparison is extremely unreliable. Members of EVBBs and SVCs are not handwriting experts, nor do they receive any training to assist in determining if two signatures were made by the same person. On its face, the signature comparison procedure for mail-in ballots gives no guidance on the questions that inevitably arise during signature comparison evaluations, including what stylistic variations suggest that two signatures were made by different individuals, and what threshold number of variations is required to conclude that the signature on the mail-in ballot carrier envelope, the mail-in ballot application, or previous documents is executed by a person other than the voter.

51.     Moreover, EVBBs and SVCs are required by the Texas Election Code to consider signatures in a vacuum, without regard to any other pertinent information that may be available.

<center>17</center>

## V.

## CAUSES OF ACTION

### COUNT ONE

**Violation of the Due Process Clause of the Fourteenth Amendment for Failure to Provide Pre-Rejection Notice and Opportunity to Cure**

52.     Plaintiffs re-allege and incorporate by reference the allegations contained in the preceding paragraphs.

53.     Section 1 of the Fourteenth Amendment to the United States Constitution prohibits states from depriving "any person of . . . liberty . . . without due process of law." U.S. CONST. amend. XIV, § 1.

54.     Defendants may not deprive mail-in ballot voters of procedural due process because each voter's fundamental right to vote is implicated when using a mail-in ballot.

55.     Counties throughout Texas have rejected and continue to reject thousands of mail-in ballots solely based on an error-prone and flawed signature comparison exercise conducted by election officials who are not trained in signature verification, resulting in the erroneous deprivation of the right to vote.

56.     Defendants have not established a procedure for providing voters whose mail-in ballots are rejected because of an alleged signature mismatch pre-rejection notice, an opportunity to be heard, or the ability to cure.

57.     By mandating the unilateral and non-reviewable rejection of mail-in ballots due to an alleged signature mismatch without according pre-rejection notice, an opportunity to be heard, and an ability to cure, Texas' scheme as outlined in Texas Election Code §§ 87.041(b)(2) and (d), both on its face and as it is applied, violates the Due Process Clause of the Fourteenth Amendment. Defendants deprived and continue to deprive Texas voters, including Mr. Richardson and Ms. Rosalie, voters provided support by organizational Plaintiffs, and voters who are members of

18

associational Plaintiffs, of adequate procedural due process to protect their fundamental right to vote.

58.     Providing a voter whose mail-in ballot has been questioned for an alleged signature mismatch a pre-rejection notice, an opportunity to be heard, and the ability to cure their ballot would avoid disenfranchisement and, thereby, protect the voter from the outright denial of their fundamental right to vote.

59.     Notice, an opportunity to be heard, and the ability to cure a ballot are already provided to voters in comparable circumstances. In-person voters whose ballots cannot be counted on Election Day due to lack of identity verification can provide photo identification confirming their identity within six days of Election Day to have their ballot counted. Tex. Elec. Code § 65.0541. It would not be burdensome to apply similar procedures to mail-in ballot voters with allegedly mismatched signatures.

60.     The fundamental right to vote is at stake, and the risk that even one person will be denied the right to cast a mail-in ballot outweighs any justification Defendants may put forward for depriving all mail-in ballot voters the same notice, opportunity to be heard, and ability to cure that is already provided to voters in comparable circumstances.

61.     This challenge is both facial and as-applied to the Plaintiffs in this case.

### COUNT TWO
### Violations of the Equal Protection Clause of the Fourteenth Amendment Due to Severe Burden on Voters Not Justified by Legitimate Government Interest

62.     Plaintiffs re-allege and incorporate by reference the allegations contained in the preceding paragraphs.

63.     The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution prohibits states from "deny[ing] to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1.

64.     Under the First Amendment and Equal Protection Clause of the Fourteenth Amendment, a state cannot utilize election practices that unduly burden the fundamental right to vote. *See Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983); *Burdick v. Takushi*, 504 U.S. 428, 434 (1992).

65.     A court considering a challenge to a state election law must carefully balance the character and magnitude of the injury to the First and Fourteenth Amendment rights that Plaintiffs seek to vindicate against the justifications put forward by Defendants for the burdens imposed by the rule. *See Anderson*, 460 U.S. 780, 789 (1983); *Burdick*, 504 U.S. 428, 434 (1992). A challenged regulation that imposes a severe burden on the right to vote must be narrowly tailored to advance a compelling state interest. *See Burdick*, 504 U.S. at 434.

66.     Defendants cannot burden the exercise of the right to vote by applying election law, policies, and practices in an arbitrary or inconsistent manner.

67.     By implementing a signature matching procedure, Defendants treat mail-in ballot voters differently than in-person voters. Tex. Elec. Code § 87.041(b)(2), (d).

68.     By implementing a signature matching procedure, Defendants treat differently than other mail-in ballot voters the members of CTD who are mail-in ballot voters and, due to their disability, cannot make their signatures match. Tex. Elec. Code § 87.041(b)(2), (d).

69.     Texas Election Code Sections 87.041(b)(2) and (d), by mandating the unilateral, arbitrary, and ad hoc rejection of mail-in ballots due to an alleged signature mismatch, disenfranchise mail-in ballot voters, a burden that is undoubtedly severe, especially when such

voters are given no pre-rejection notice or opportunity to resolve the mismatch or otherwise confirm their identity.

70.     Rejecting thousands of mail-in ballots based solely on an error-prone signature comparison procedure conducted by election officials who are not trained in signature verification and failing to provide mail-in ballot voters any opportunity to contest or cure signature mismatch determinations is neither reasonable nor narrowly tailored to serve any compelling and legitimate state interest, particularly since Defendants already otherwise verify a mail-in ballot voter's eligibility to cast a ballot and especially because Defendants provide voters in comparable circumstances an opportunity to be heard and ability to cure ballots.

## COUNT THREE
### Violation of Equal Protection Clause of the Fourteenth Amendment Due to Failure to Provide any Uniform Guidelines or Principles for Counties to Compare Signatures

71.     An electoral procedure becomes problematic "in the absence of specific standards to ensure its equal application." *Bush v. Gore*, 531 U.S. 98, 106 (2000). Such procedures are immediately suspect if "the standards for accepting or rejecting contested ballots might vary not only from county to county but [even] within a single county." *Id*. State and local governments have an "obligation to avoid arbitrary and disparate treatment of the members of [their] electorate." *Id.* at 105. Failure to establish procedures to ensure equal application of such rules renders them unconstitutional under the Fourteenth Amendment's Equal Protection Clause. *Id*. at 111.

72.     Texas has not promulgated any procedures to assist individual counties or the EVBB or SVCs within those counties in evaluating signatures on mail-in ballots, thereby creating an arbitrary system for evaluation in which committees of laypersons "eye-ball" signatures and evaluate them based on their own ad hoc standards.

73. The procedures for evaluating signatures for mail-in ballots in Texas therefore vary from county to county, from SVC to SVC in counties with multiple committees, and even from meeting to meeting and ballot to ballot.

74. Accordingly, Texas' procedures for evaluating mail-in ballot signature matches violate the Equal Protection Clause for their failure to provide specific standards to ensure their equal application.

## COUNT FOUR
## Violation of Title II of the Americans with Disabilities Act and the Rehabilitation Act of 1973

75. In addition to the previous claims, Plaintiff CTD brings the following specific claims against Defendants under Title II of the ADA and the RA. The rights and remedies under the ADA and the RA are almost entirely duplicative.

76. "No qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132; 28 C.F.R. § 35.149.

77. "No [person] shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subject to discrimination under any program or activity receiving federal funding assistance." 29 U.S.C. § 794(a); 45 C.F.R. § 1232.4(a).

78. Defendant SOS, as a state agency, and Defendants Brazos EA and McAllen City Secretary, as other political subdivision agencies, are public entities pursuant to 42 U.S.C. § 12131(1)(a) and (b), 45 C.F.R. § 1232.3(d), and 29 U.S.C. § 794. The administration of elections and voting, including mail-in ballot voting and the counting of votes, is a service, program, or activity provided by Defendants SOS, Brazos EA, and McAllen City Secretary.

79.     Defendants are recipients of federal funds. 29 U.S.C. § 794.

80.     For purposes of the ADA and the RA, CTD has members who are qualified individuals with physical and/or mental impairments that substantially limit one or more of their major life activities, including but not limited to performing manual tasks such as seeing, lifting, bending, concentrating, communicating, and/or working. 42 U.S.C. § 12102(1), (2); 45 C.F.R. § 1232.3(h).

81.     CTD has members who are disabled and meet the essential eligibility requirements for the receipt of mail-in ballot services and to participate in the mail-in ballot process provided by Defendant SOS through existing statutes, regulations, and guidance and by the Defendants Brazos EA and McAllen City Secretary through their administration of the mail-in ballot process. Thus, CTD has members who are qualified individuals with a disability entitled to the protections of the ADA and the RA in accessing Texas' service, program, or activity of mail-in ballots.

82.     Members of CTD who use the mail-in ballot process and, due to their disability, cannot make their signatures match, risk disenfranchisement. By reason of such disability, the members at issue have suffered and/or risk future exclusion from participation in and denial of the benefits of the services, programs, or activities of Defendants, and are subjected to discrimination by Defendants. By failing to meet their obligation to provide voters who are disabled, cannot vote in person, and, due to their disability, cannot sign matching signatures an opportunity to vote that is equal and equally effective as that opportunity provided to others, Defendants are in violation of the ADA and the RA.

83.     The lack of reasonable accommodations—such as creating standards for comparing signatures on mail-in ballots and providing the opportunity to contest and cure a challenged mail-in ballot, or barring counties from rejecting mail-in ballots for signature mismatch or any mail-in

ballots submitted by persons with disabilities for signature mismatch—means that the CTD members at issue are excluded from participation in and denied the benefits of the services, programs, or activities of Defendants, and subjected to discrimination by Defendants. Requiring Defendants to provide these reasonable accommodations would not constitute an undue financial or administrative burden.

## PRAYER FOR RELIEF

WHEREFORE, considering the law and facts alleged herein, Plaintiffs pray the Court grant the following relief:

1. That the Court enter declaratory judgment that the State of Texas' statutory scheme requiring the rejection of mail-in ballots with alleged signature mismatches, specifically set out in Texas Election Code §§ 87.041(b)(2), (e), and (f), is unconstitutional and violates the ADA and the RA;

2. That the Court permanently enjoin the State of Texas, the Texas Secretary of State, the Brazos County Elections Administrator, the City of McAllen, Texas Secretary, the 254 county agencies administering elections, and all other political subdivisions administering elections from rejecting any mail-in ballot for signature mismatch reasons, or, in the alternative, require the State of Texas, the Texas Secretary of State, the Brazos County Elections Administrator, the City of McAllen, Texas Secretary, the 254 county agencies administering elections, and all other political subdivisions administering elections to (a) provide voters meaningful notice prior to the rejection of a mail-in ballot based on an alleged signature mismatch and (b) offer voters the ability to cure a mail-in ballot questioned for an alleged signature mismatch.

3. That Plaintiffs be awarded attorneys' fees under 42 U.S.C. § 1988 and 29 U.S.C. § 794a;

4. That all costs of this action be taxed against Defendants; and

5. That the Court award any additional or alternative relief as may be deemed appropriate under the circumstances.

Respectfully submitted this 7th day of August, 2019.

By: *Hani Mirza*

**TEXAS CIVIL RIGHTS PROJECT**

Mimi M.D. Marziani
Texas Bar No. 24091906
mimi@texascivilrightsproject.org
Rebecca Harrison Stevens
Texas Bar No. 24065381
beth@texascivilrightsproject.org
Hani Mirza
Texas Bar No. 24083512
hani@texascivilrightsproject.org
Ryan V. Cox
Texas Bar No. 24074087
ryan@texascivilrightsproject.org
Zachary D. Dolling
Texas Bar No. 24105809
zachary@texascivilrightsproject.org

1405 Montopolis Drive
Austin, Texas 78741
512-474-5073 (Telephone)
512-474-0726 (Facsimile)

**WILLKIE FARR & GALLAGHER LLP**

Richard Mancino (NY Bar No. 1852797)
(*pro hac vice* forthcoming)
P. Maxwell Griffith (NY Bar No. 5323209)
(*pro hac vice* forthcoming)

25

787 Seventh Avenue
New York, New York 10019
Telephone:  (212) 728-8000
Facsimile:  (212) 728-8111
Email: rmancino@willkie.com
          mgriffith@willkie.com

-AND-

Jennifer J. Hardy (TX Bar No. 24096068)
(*pro hac vice* forthcoming)
Denis A. Fallon (TX Bar No. 24059731)
(*pro hac vice* forthcoming)
Garrett Johnston (TX Bar No. 24087812)
(*pro hac vice* forthcoming)
Audra White (TX Bar No. 24098608)
(*pro hac vice* forthcoming)

600 Travis Street, Suite 2100
Houston, Texas 77002
Telephone: (713) 510-1700
Facsimile: (713) 510-1799
Email: jhardy2@willkie.com
          afallon@willkie.com
          gjohnston@willkie.com
          awhite@willkie.com

***COUNSEL FOR PLAINTIFFS***

26

JS 44 (Rev 06/17)

Case 5:19-cv-00963-OLG Document 91 Filed 07/30/19 Page 2387 of 2561
Case 5:19-cv-00963-OLG Document 91 Filed 08/07/19 Page 1 of 1

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

See Attached

**(b)** County of Residence of First Listed Plaintiff    Brazos
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

See Attached

## DEFENDANTS

See Attached

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1 U S Government Plaintiff

☒ 3 Federal Question
*(U.S. Government Not a Party)*

☐ 2 U S Government Defendant

☐ 4 Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Personal Injury | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U S Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☒ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding    ☐ 2 Removed from State Court    ☐ 3 Remanded from Appellate Court    ☐ 4 Reinstated or Reopened    ☐ 5 Transferred from Another District *(specify)*    ☐ 6 Multidistrict Litigation - Transfer    ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Fourteenth Amendment to U.S. Constitution, Title II of ADA, and RA of 1973

Brief description of cause:
Violation of voting rights

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:

JURY DEMAND: ☐ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See Instructions):*

JUDGE      DOCKET NUMBER

DATE
08/07/2019

SIGNATURE OF ATTORNEY OF RECORD
/s/ Hani Mirza

**FOR OFFICE USE ONLY**

RECEIPT #     AMOUNT     APPLYING IFP     JUDGE     MAG JUDGE

## I. (a) Plaintiffs

Richardson, George; Weisfeld, Rosalie; Austin Justice Coalition; Coalition of Texans with Disabilities; MOVE Texas Civic Fund; League of Women Voters of Texas; American GI Forum of Texas, Inc

## I. (c) Plaintiffs' Counsel

Mimi M.D. Marziani
Texas Bar No. 24091906
Rebecca Harrison Stevens
Texas Bar No. 24065381
Hani Mirza
Texas Bar No. 24083512
Ryan V. Cox
Texas Bar No. 24074087
Zachary D. Dolling
Texas Bar No. 24105809
Texas Civil Rights Project
1405 Montopolis Drive
Austin, Texas 78741
512-474-5073 (Telephone)
512-474-0726 (Facsimile)
mimi@texascivilrightsproject.org
beth@texascivilrightsproject.org
hani@texascivilrightsproject.org
ryan@texascivilrightsproject.org
zachary@texascivilrightsproject.org

Richard Mancino (NY Bar No. 1852797)**
P. Maxwell Griffith (NY Bar No. 5323209)**
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 728-8000
Facsimile: (212) 728-8111
rmancino@willkie.com
mgriffith@willkie.com

-AND-

Jennifer J. Hardy (TX Bar No. 24096068)**
Denis A. Fallon (TX Bar No. 24059731)**
Garrett Johnston (TX Bar No. 24087812)**
Audra White (TX Bar No. 24098608)**
Willkie Farr & Gallagher LLP
600 Travis Street, Suite 2100

Houston, Texas 77002
Telephone: (713) 510-1700
Facsimile: (713) 510-1799
jhardy2@willkie.com
afallon@willkie.com
gjohnston@willkie.com
awhite@willkie.com

ATTORNEYS FOR PLAINTIFFS
** Pro hac vice application forthcoming

**I. (a) Defendants**

CURRENTLY VACANT, Texas Secretary of State;

TRUDY HANCOCK, Brazos County Elections Administrator,
in her official capacity;

PERLA LARA, City Secretary for City of McAllen,
in her official capacity.

Document Filed Under Seal

# EXPLANATION OF PROPOSED BUDGETS FOR 2016-2018

## Rationale

The League of Women Voters of Texas (LWV-TX) and League of Women Voters of Texas Education Fund (LWV-TEF) are two separate organizations and have separate budgets. The LWV- TX budget is adopted by the delegates at the biennial Convention; the LWV-TEF budget is adopted by the Board of Trustees at their first meeting after Convention.

Although separate organizations with separate budgets, LWV-TX and LWV-TEF are closely related and share the same Board; only their operational emphasis is different. For example, all lobbying is done through LWV-TX, a 501(c)(4) organization, while citizen information and education activities are carried out by LWV-TEF, a 501(c)(3). Where resources are shared, such as staff time and office facilities, the respective contributions and usage by the two organizations are carefully tracked and expenses are split accordingly. For these reasons, the proposed budgets for both LWV-TX and LWV-TEF are presented in this workbook to facilitate members' assessment of the financial outlook.

## Criteria and Assumptions

- Staff, administrative, and property expenses will be split 25:75 between LWV-TX and LWV-TEF. Ratios are based upon prior year's records kept by the executive administrator.
- Per member payment (PMP) rates remain unchanged at $22 per member, $33 for household and $12 for Student.
- The Ricoh office printer has been eliminated, thus reducing printing costs by $4360/year.
- Silent Auction benefits have been moved to LWV-TEF from LWV-TX.
- Odd number years have two Voters Guides published.
- "When You Go to Austin" guide will be discontinued. This information is now available electronically, eliminating the need for a paper guide.
- While it appears that board costs have gone up sharply, board members are now reporting their expenses. Except for lodging, most of these expenses are in-kind donations.
- Education Fund proposes aggressive fund raising campaigns.
- More emphasis will be placed on Development/Marketing/Social Media.
- More emphasis will be placed on Mission Projects & Member Services.

## Budget Committee Members:

Carol Olewin, Chair
Elaine Wiant, President
Miriam Foshay, Treasurer
Nancy Parra, VP Program
Laura Blackburn, VP Advocacy
Susan Morrison, Director

## Budget Questions & Answers Follow-up Work Shops

If you have questions about the proposed budgets, please contact the Budget Committee Chair Carol Olewin, by email, *c.olewin@gmail.com,* at any time before Convention weekend. She also will be available at Convention, along with the other committee members, to answer your questions.

Prior to adoption of the budget during plenary, delegates will have an opportunity to ask questions and make comments. Budget Q&A sessions will be held Friday and Saturday night during Convention to give delegates a chance to discuss the budget. We urge delegates to take advantage of those times to obtain advance answers to questions of a detailed or technical nature.

**2016 Convention Workbook - Houston, TX**

Exhibit
Grace Chimene

4

5/18/20  MJ

LWV-00000020

Case 5:19-cv-00963-OLG   Document 84   Filed 07/30/20   Page 2392 of 2561

**LEAGUE OF WOMEN VOTERS OF TEXAS**
**PROPOSED BUDGET FOR 2016-2018**

|  | BUDGET 2014-2016 | BUDGET 2016-2018 |
|---|---|---|
| **INCOME** | | |
| PMP & MALs | 46,600 | 43,716 |
| CONTRIBUTIONS/DONATIONS | 24,300 | 39,500 |
| PROJECTS/GIFTS/GRANTS | - | - |
| STATE CONVENTION | 25,000 | 20,000 |
| LOBBY DAYS | 500 | 500 |
| INVESTMENTS | 600 | 2,400 |
| **TOTAL INCOME** | 97,000 | 106,116 |
| | | |
| **EXPENSES** | | |
| ADVOCACY | 400 | 2,100 |
| MISSION PROJECTS | - | 5,840 |
| MEMBER SERVICES | - | 900 |
| STATE CONVENTION | 20,000 | 18,000 |
| ADVOCACY/D&M SOFTWARE SERVICES | - | 2,600 |
| ADMINISTRATION | 17,500 | 8,350 |
| CONTRACTUAL SERVICES | 6,000 | 4,925 |
| DEVELOPMENT/FUNDRAISING | - | 3,000 |
| MARKETING/SOCIAL MEDIA | - | 500 |
| BOARD EXPENSES | 10,200 | 18,600 |
| RENT | 4,800 | 4,800 |
| STAFF EXPENSES | 34,400 | 35,063 |
| **TOTAL EXPENSES** | 93,300 | 104,678 |
| | | |
| TRANSFER TO/FROM RESERVES | 3,700 | 1,438 |
| | | |
| **TOTAL EXPENSES and TRANSFERS** | **97,000** | **106,116** |

LWV-00000021

**LEAGUE OF WOMEN VOTERS OF TEXAS EDUCATION FUND (TEF)
PROPOSED BUDGET FOR 2016-2018**

| | BUDGET 2014-2016 | BUDGET 2016-2018 |
|---|---|---|
| **INCOME** | | |
| PMP & MALs | 26,600 | 24,120 |
| CONTRIBUTIONS/DONATIONS | 48,100 | 98,200 |
| PROJECTS/GIFTS/GRANTS | 40,900 | 19,000 |
| EVENTS/MDW | 26,500 | 27,500 |
| STATE CONVENTION FUNDRAISING | - | 5,000 |
| PUBLICATIONS | 13,500 | 21,500 |
| WORKSHOPS AND SEMINARS | 200 | 600 |
| INVESTMENTS | 2,400 | 25,000 |
| **TOTAL INCOME** | **158,200** | **220,920** |
| | | |
| **EXPENSES** | | |
| MISSION PROJECTS | 29,200 | 34,200 |
| MEMBER SERVICES | 5,900 | 4,800 |
| ADVOCACY/D&M SOFTWARE SERVICES | - | 2,600 |
| ADMINISTRATION | 27,200 | 25,050 |
| CONTRACTUAL SERVICES | 6,100 | 6,775 |
| DEVELOPMENT/FUNDRAISING | - | 9,000 |
| MARKETING/SOCIAL MEDIA | - | 1,500 |
| BOARD EXPENSES | 10,400 | 18,600 |
| PROPERTY EXPENSES | 26,900 | 19,500 |
| RENT | (4,800) | (4,800) |
| STAFF EXPENSES | 51,400 | 105,188 |
| **TOTAL EXPENSES** | **152,300** | **222,413** |
| | | |
| TRANSFER TO/FROM RESERVES | 5,900 | (1,493) |
| | | |
| **TOTAL EXPENSES and TRANSFERS** | **158,200** | **220,920** |

LWV-00000022

# Budget

## Explanation of Proposed Budgets

LWVTX = League of Women Voters of Texas, a 501(c)(4) social welfare organization
LWVTEF = League of Women Voters of Texas Education Fund, a 501(c)(3) trust
LSLWV = Lone Star League of Women Voters, a 501(c)(3) corporation

### Rationale

Three separate budgets are presented. The first budget assumes that the LWVTX and the LWVTEF consolidate their assets and functions into a single 501(c)(3) corporation, currently designated the LSLWV. The second and third budgets assume that the two current organizations (LWVTX & LWVTEF) remain unchanged. Delegates at Convention 2018 will adopt either the LSLWV or the LWVTX budget. If consolidation is not passed, the LWVTEF Board of Trustees will adopt the LWVTEF budget at their first meeting after Convention 2018.

Although LWVTX and LWVTEF have separate budgets, the two organizations are closely related and share the same board; only their operational emphasis is different. For example, all advocacy work is done through LWVTX, while citizen information and education activities are carried out by LWVTEF. Where resources are shared, such as staff time and office facilities, the respective contributions and use of resources by the two organizations are carefully tracked and expenses are split accordingly.

### Criteria and Assumptions

- Staff, administrative, and property expenses will be split 35% LWVTX and 65% LWVTEF. Ratios are based upon prior year's records kept by the executive administrator.
- Per-member-payments remain unchanged at $22/member, $11/additional household member, and $12/student.
- A new texting service will be funded by the fund-a-need campaign. Expenses for this service are included under the line item for online software services.
- While it appears that board expenses are high, board members now report their expenses. Most of these expenses are in-kind donations, except for lodging.
- Membership and Convention attendance will increase as we approach our 100th anniversary.
- The monthly *Action News! has replaced* the *Texas VOTER*. It is delivered exclusively by email, reducing the cost of member services.
- Emphasis will continue to be placed on development/marketing/social media.
- Property expenses include $1,500 to purchase a new laptop computer and two office chairs.
- Support staff hours will increase from 12 to 30 hours/week. A salary increase of 4% is built into the budget for each year of the biennium.
- If consolidation is not approved, there will be a net loss for the biennium due to an additional $4,000 required for accounting services.

### Budget Committee

Marilyn Wills, chair and president, LWV of Tyler/Smith County
Elaine Wiant, president
Marguerite "Meg" Scott-Johnson, secretary
Miriam Foshay, treasurer
Grace Chimene, vice president and chair, Advocacy Committee
Nancy Parra, vice president and chair, Education Committee

### Budget Q & A

If you have questions about the proposed budgets, please contact the chair of the Budget Committee, Marilyn Wills, by email at lwv_president@lwvtyler.org any time before Convention. The Budget Committee will be available to discuss your questions at Convention during two Q & A sessions Friday and Saturday evenings. We urge delegates to use these times to obtain advance answers to questions of a detailed or technical nature. See the workshop schedule on page **6**.



LWV Texas

## Proposed Budgets 2018-2020

| | LONE STAR LEAGUE OF WOMEN VOTERS 501(c)(3) | | LEAGUE OF WOMEN VOTERS OF TEXAS 501 (c)(4) | | LEAGUE OF WOMEN VOTERS OF TEXAS EDUCATION FUND 501(c)(3) | |
|---|---|---|---|---|---|---|
| | Biennium Budget | | Biennium Budget | | Biennium Budget | |
| | 2016-18 Actual ($)* | 2018-20 Proposed ($) | 2016-18 Actual ($)* | 2018-20 Proposed ($) | 2016-18 Actual ($)* | 2018-20 Proposed ($) |
| **Income** | | | | | | |
| Dues & per member payments | 77,780 | 84,049 | 51,381 | 65,549 | 26,399 | 18,500 |
| Individual donations | 148,636 | 110,900 | 17,769 | 29,742 | 130,867 | 81,158 |
| In-kind donations | 26,291 | 39,000 | 2,526 | 3,000 | 23,765 | 36,000 |
| Project funding | 35,224 | 50,000 | 0 | 0 | 35,224 | 50,000 |
| Fundraising events | 15,233 | 24,000 | 0 | 0 | 15,233 | 24,000 |
| State convention | 24,000 | 39,500 | 18,500 | 20,000 | 5,500 | 19,500 |
| Investments | 13,876 | 12,700 | 1,730 | 1,700 | 12,146 | 11,000 |
| Publications, Lobby Days, regional training | 24,543 | 31,800 | 829 | 1,800 | 23,714 | 30,000 |
| **Total income** | **365,583** | **391,949** | **92,735** | **121,791** | **272,848** | **270,158** |
| **Expenses** | | | | | | |
| Advocacy & lobbying | 5,272 | 9,390 | 5,242 | 9,390 | 0 | 0 |
| Mission projects | 65,945 | 51,500 | 0 | 2,000 | 65,945 | 49,500 |
| Member services | 4,195 | 2,450 | 940 | 800 | 3,255 | 1,650 |
| Convention | 15,000 | 18,000 | 15,000 | 18,000 | 0 | 0 |
| Online software services | 8,429 | 14,500 | 3,565 | 4,350 | 4,864 | 10,150 |
| Office expenses | 27,257 | 28,100 | 9,902 | 9,135 | 17,355 | 18,965 |
| Accounting, payroll, information technology, & website services | 17,946 | 7,240 | 4,699 | 5,053 | 13,247 | 6,187 |
| Development & fundraising | 11,363 | 18,000 | 3,977 | 5,850 | 7,386 | 12,150 |
| Marketing & social media | 1,729 | 3,100 | 564 | 1,003 | 1,195 | 2,098 |
| Board expenses | 34,145 | 42,200 | 17,073 | 21,100 | 17,072 | 21,100 |
| Property expenses | 17,634 | 22,530 | 0 | 0 | 17,634 | 22,530 |
| Rent | 0 | 0 | 4,800 | 4,800 | (4,800) | (4,800) |
| Salaries, payroll, taxes, benefits | 140,472 | 171,124 | 48,590 | 55,699 | 91,882 | 115,425 |
| **Total expenses** | **349,388** | **388,134** | **114,352** | **137,180** | **235,036** | **254,954** |
| **Net income** | **16,195** | **3,815** | **(21,617)** | **(15,388)** | **37,812** | **15,204** |

*Income and expenses are actual from June 1, 2016 to February 15, 2018, and estimated for the remaining 3½ months.

Convention 2018

LWV-0000000690

Document Filed Under Seal

## Budget

### Explanation of Proposed Budget for 2020-2022
### The League of Women Voters of Texas continues to have three entities:

- The League of Women Voters of Texas (LWVTX), is a 501(c)(3) corporation that began operations January 1, 2019. It is the membership organization of the state League, and the only one addressed at this Convention and in the budget below;
- League of Women Voters of Texas Education Fund (LWVTEF, or Ed Fund), is a 501(c)(3) trust that currently holds the 501(c)(3) accounts for local Leagues and some Leagues at large; and
- League of Women Voters of Texas Action Fund (LWVTAF), is a 501(c)(4) corporation, has been kept in case the lobbying allowed under 501(c)(3) rules is inadequate to address future circumstances. It was formerly the membership organization.

LWVTEF has no members; the trustees are the same individuals as the board members of LWVTX. Its sole function is to hold in trust the tax-exempt moneys raised by local Leagues. LWVTEF will be dissolved when it is no longer needed to hold funds of local Leagues.
LWVTAF has three board members, including the president of LWVTX and at least one off-board member. Under 501(c)(3) rules, it may not be related to LWVTX.

### Budget Criteria and Assumptions

- PMP rates remain unchanged at $22 per member, $11 for additional household members, and $0 for Student and Life members.
- The texting service will be continued through donations to Fund-a-Need. Its expenditures are listed under Online Software Services.
- Board costs have increased, primarily because board members are reporting more of their expenses. Except for lodging, most of these expenses are in-kind donations.
- Emphasis will continue to be placed on Development/Marketing/Social Media.
- A salary increase of 4% for office staff is built into the budget for each year of the biennium.

**Budget Committee Members:** Marilyn Wills, Chair (*LWV_president@lwvtyler.org*), Grace Chimene, President, Miriam Foshay, Treasurer, Elaine Wiant, Development Chair, Dorothy Marchand, Director

### Budget Questions & Answers Follow-up Workshop
If you have questions about the proposed budgets, please contact the Budget Committee Chair Marilyn Wills by email, *lwv_president@lwvtyler.org*, at any time before Convention. She also will be available at Convention, along with the other committee members, to answer your questions. Prior to adoption of the budget during plenary, delegates will have an opportunity to ask questions and make comments. A Budget Q&A session will be held Friday evening at 7:30 pm to give delegates a chance to discuss the budget. We urge delegates to take advantage of this time to obtain advance answers to questions of a detailed or technical nature.

**Exhibit**
**Grace Chimene**

**7**

5/18/20 MJ

LWV-00000151

# LWVTX BUDGET 2020-2022

| INCOME | 2018-2020 ACTUAL* | 2020-2022 PROPOSED BUDGET |
|---|---|---|
| DUES & PMP | 113,438 | 113,537 |
| INDIVIDUAL DONATIONS | 120,632 | 131,800 |
| IN-KIND DONATIONS | 15,957 | 18,000[a] |
| PROJECT FUNDING | 48,472 | 75,000[b] |
| FUNDRAISING EVENTS | 60,638 | 55,500[c] |
| STATE CONVENTION INCOME | 16,630 | 16,000 |
| INVESTMENT INCOME | 16,904 | 12,010 |
| PUBLICATIONS | 20,104 | 22,000 |
| LOBBY DAYS/REGIONAL TRAINING/OTHER | 5,759[d] | 4,700 |
| **TOTAL INCOME** | **418,534** | **428,547** |
| EXPENSES | 2018-2020 ACTUAL* | 2020-2022 PROPOSED BUDGET |
| ADVOCACY/LOBBYING/LOBBY DAYS | 8,204 | 9,500 |
| GRANT PROJECTS, VOTERS GUIDE, Vote411 | 69,643[e] | 65,300 |
| MEMBER SERVICES: SLL, REGIONAL TRAINING | 7,125 | 7,500 |
| CONVENTION | 10,609 | 16,500 |
| ONLINE SOFTWARE SERVICES | 18,234 | 25,700[h] |
| OFFICE EXPENSES | 35,321 | 31,700 |
| ACCOUNTING, PAYROLL, IT and WEB SERVICES | 15,464 | 15,200[f] |
| DEVELOPMENT/FUNDRAISING | 6,412 | 10,000 |
| BOARD EXPENSES | 37,864 | 33,200 |
| PROPERTY EXPENSES | 29,682[g] | 24,601 |
| SALARIES, PAYROLL TAXES, BENEFITS | 172,694 | 191,346 |
| **TOTAL EXPENSES** | **413,209** | **428,547** |
| **NET INCOME** | **7,282** | **0** |

LWV-00000152

**Budget Notes (cont.)**

*Income and expenses are actual from 06/01/18-02/15/20 and are estimated for the remaining 3 ½ months.  Note that figures for the year 6/01/18-5/31/19 represent the combined income and expenditures of LWVTAF, LWVTEF, and the new LWVTX corporation, which began operations 1/01/2019.

Notes:

    a)    In-kind donations are primarily board members' travel expenses for which reimbursement was not requested.

    b)    The Development Committee plans to find grants and funding for many of our projects, with special emphasis on the Voters Guide.

    c)    Our most successful fundraising project of the current biennium, the 100th Anniversary Luncheon, won't occur again for another 100 years. While we will have one less fundraiser, the Development Committee has embarked upon an ambitious plan to increase the proceeds of those that remain.

    d)    The current biennium includes funds from the sale of pins and mugs on this revenue line, as well as revenue from local Leagues that have requested to join the 501(c)(3) group exemption. Neither of these funds is anticipated in the coming biennium.

    e)    In the current biennium, we received $25,000 in grants from LWVUS towards educating Texans about redistricting. We do not anticipate such a large grant for the next biennium.

    f)    "Accounting" includes money for a full audit, the first in many years.

    g)    In the current biennium, we purchased two computers and received donations to buy new furniture for the State Office. We don't anticipate such large purchases in the coming biennium.

    h)    The addition of texting and Quickbooks Online increases the cost of online software services by about $7,500 per year.



- Hello. I am NAME, representing _____. Thank you for inviting me to talk about the League of Women Voters favorite topic—voting!

- Our goal is to empower citizens to shape better communities.

- As a nonpartisan organization, the League never endorses or opposes candidates or political parties. But we do advocate for positions on issues that our members have studied and agreed upon.

- We're not here to tell you who or what to voter for, but to encourage you to get in the game and make your own political decisions – don't let others make those important decisions for you.

*Sources*
https://my.lwv.org/texas/about-league-women-voters-texas
Artwork by Leticia Plate at http://govote.org



Exhibit
Grace Chimene
8
5/18/20  MJ

1

LWV-00000272

## Who can vote?

- U. S. citizen
- At least 18 on Election Day
- Not declared mentally incompetent
- Not completing punishment for a felony
- Registered to vote
  - Texas county of residence
  - 30 days before Election Day



2

Texas college students can vote as long as they are:

- A U.S. citizen
- 18 on Election Day
- Mentally competent
- Not serving a sentence for a felony
- Registered to vote 30 days ahead of time

*Sources*

a) Texas Secretary of State. (n.d.). *Register to vote.* Retrieved from http://www.votetexas.gov/register-to-vote/
b) Google images. Retrieved from https://images.google.com

2

LWV-00000273



If attending college <u>in Texas</u>, you can register to vote either by using your parents' home address or your college address, depending on where and how you want to vote.

**Sources**
Texas Secretary of State. (n.d.). Students. Retrieved from
    https://www.votetexas.gov/voting/index.html#students
Google images. Retrieved from https://images.google.com

3

LWV-00000274



- If you want to vote using your parents' address and will not be returning home to vote, you will vote absentee by mail.
- If you want to vote where you are attending college in Texas, you must register to vote through that county elections office.

**Sources**

Texas Secretary of State. (n.d.). Students. Retrieved from
   https://www.votetexas.gov/voting/index.html#students
Google images. Retrieved from https://images.google.com

4

LWV-00000275



- Texas allows students to keep their Texas county residency even when they move out-of-county or out-of-state to attend school.

- They only lose their residency if they establish residency in another state for any reason, such as to vote there.

- Thus they can apply for an absentee ballot in their county of residence.

***Sources***
a) Residence, 1 TEX. ELEC. CODE § 1.015(d).  Retrieved from http://www.statutes.legis.state.tx.us/Docs/EL/htm/EL.1.htm
b) Campus Vote Project. (n.d.). *Student guides.* Retrieved from http://campusvoteproject.org/studentguides/
c) Google images. Retrieved from https://images.google.com

5

LWV-00000276



**Out-of-state students**

**Vote at home**   *or*

- Request absentee ballot
- Check student voting guide for home state at:

http://campusvoteproject.org/studentguides/

**In Texas**

- Establish state residency
- Register to vote

LWV.

- Students <u>from another state</u> who are attending college in Texas can vote either at their legal residence in their home state or in Texas using their school address.
- To vote in their home state:
  - They would check the student voting guide in that state at the website shown on the screen.
  - Apply to vote by absentee ballot in their county of residence.
- To vote where they live while going to school in Texas, students must declare Texas residency and register to vote.

***Sources***
a) Residence, 1 TEX. ELEC. CODE § 1.015(d). Retrieved June 13, 2016, from http://www.statutes.legis.state.tx.us/Docs/EL/htm/EL.1.ht
b) Campus Vote Project. (n.d.). *Student guides.* Retrieved June 13, 2016, from http://campusvoteproject.org/studentguides/
c) Google images. Retrieved June 1, 2016, from https://images.google.com

6

LWV-00000277



- Students can establish residency for voting in Texas if
  - they intend to remain at their Texas school address for the time being, and
  - they live there except while college is not in session.
- To establish residency requires:
  - Texas mailing address
  - Utility or phone bill using the mailing address
  - If you own a vehicle, establishing residency requires:
    - Vehicle registration within 30 days
    - Texas Driver's License within 90 days
- Voter registration requires:
  - Mailing address within the county.

***Sources***
a) Residence, 1 Tᴇx. Eʟᴇᴄ. Cᴏᴅᴇ § 1.015(d).  Retrieved June 13, 2016, from http://www.statutes.legis.state.tx.us/Docs/EL/htm/EL.1.htm
b) Google images. Retrieved June 16, 2016 from https://images.google.com

7

LWV-00000278



## Student ID ≠ voter ID

**Valid photo ID**

- **Issued by Texas DPS**
  - Texas driver license
  - Texas Election ID
  - Texas personal ID
  - Texas concealed handgun license
- **Issued by U.S. Govt.**
  - Military ID card with photo
  - U.S. citizenship certificate with photo
  - U.S. passport



8

- First-time voters who did not list their Texas driver license number or last four digits of their Social Security number on their Voter Registration Application will be required to:
  - enclose a photocopy of a valid photo ID (from the list) if voting by mail when returning your ballet or
  - show a valid photo ID to vote in person.
- Only one of the seven forms of photo ID listed can be used and
  - the ID cannot have expired more than 4 years before voting
  - Voters age 70 and older may use an expired ID

***Sources***

a) Documentation of Proof of Identification, 63 Tex. Elec. Code § 63.0101. from http://www.statutes.legis.state.tx.us/Docs/EL/htm/EL.63.htm

b) An Act Relating to Requiring a Voter to Present Proof of Identification; Providing a Criminal Penalty and Increasing a Criminal Penalty. SB 5, 85th Texas Legislature 2017). Retrieved from https://legiscan.com/TX/bill/SB5/2017

c) Texas Secretary of State. (2016, January). *Notice to voter who must provide identification (for voters voting by mail).* Retrieved from http://www.sos.state.tx.us/elections/forms/pol-sub/5-22af.pdf

8

LWV-00000279

# Student ID ≠ voter ID



## Other ID

- Voter registration certificate
- Certified birth certificate
- Current utility bill
- Bank statement
- Government check
- Paycheck
- Or any other government document showing name and address



9

- Voters who do not have an acceptable ID can sign a simple form and enclose a copy of one of the following other documents.
- The form is called "Voter's Statement of Reasonable Impediment or Difficulty" and will be sent along with the ballot.

### Sources

a) Documentation of Proof of Identification, 1 TEX. ELEC. CODE § 1.0101. from http://www.statutes.legis.state.tx.us/Docs/EL/htm/EL.1.htm

b) An Act Relating to Requiring a Voter to Present Proof of Identification; Providing a Criminal Penalty and Increasing a Criminal Penalty. SB 5, 85th Texas Legislature (2017). Retrieved from http://www.capitol.state.tx.us

c) Texas Secretary of State. (2016, January). *Notice to voter who must provide identification (for voters voting by mail).* Retrieved from http://www.sos.state.tx.us/elections/forms/pol-sub/5-22af.pdf

9

LWV-00000280



- Send your Application for Ballot by Mail as early as 60 days before an election. This will give you plenty of time to receive your ballot, mark it, and mail it back to the county early voting clerk.
- The application must be **received** (not postmarked)
  - by your county early voting clerk
  - not later than the 11th day before Election Day.
    - For this election the date is _____.
- To obtain an application, you can either:
  - Call your local county elections office or the Texas Secretary of State Office or
  - Download and print an application or order one at this website
  - In either case, the completed application must be mailed to your county elections office.
    - Contact information for the elections office is available at the website.

Note to speaker: Information not easily retrievable by searching at VoteTexas.gov home page

**Resources**
a) Texas Secretary of State. *Application for a ballot by mail.* Retrieved from http://www.sos.state.tx.us/elections/voter/reqabbm.shtml
b) Texas Secretary of State. *Listing of county websites.* Retrieved from http://www.sos.state.tx.us/elections/voter/county.shtml
c) Google images. Retrieved from https://images.google.com

10

LWV-00000281



In completing the application:

- Your name and residence address must match what is on your voter registration card. If you have moved
    - Within the county: Update address online
    - To a different county: Fill out a new Voter Registration Application
- "Mail ballot to:"
    - This is the address where you want your ballot sent
    - And your student address must be out of the county of your primary residence to qualify for voting by mail.

*Sources*
a) Texas Secretary of State. (n.d.). *Application for ballot by mail* [form]. Retrieved from http://www.sos.state.tx.us/elections/forms/pol-sub/5-15f.pdf
b) Texas Secretary of State. (n.d.). *Voter name and address changes.* Retrieved from https://txapps.texas.gov/tolapp/sos/SOSACManager
c) Google images. Retrieved June 1, 2016, from https://images.google.com

11

LWV-00000282



- Sign and date your Application for Ballot by Mail.
    - Your signature MUST match the one on your voter registration card.
- If you are unable to sign it yourself:
    - A person can witness your mark or attest that you cannot make a mark.
    - The witness or assistant must not only sign the application but provide an address and the relationship to the voter.
        - Unless the witness is a close relative, it is a misdemeanor to to witness more than one Application for Ballot by Mail.
        - It is also a misdemeanor to omit the requested information.

***Sources***
a)   Texas Secretary of State. (n.d.). *Application for ballot by mail* [Form]. Retrieved from http://www.sos.state.tx.us/elections/forms/pol-sub/5-15f.pdf
b)   Google images. Retrieved from https://images.google.com

12

LWV-00000283



- Next, add the address of your county elections office to the designated spot on the application.

- Then fold the application, tape it shut, and put a first class stamp on it before mailing it.

- It can also be scanned and emailed or faxed to your elections office.

**Sources**

a) Texas Secretary of State. (n.d.). *Application for ballot by mail* [form]. Retrieved from http://www.sos.state.tx.us/elections/forms/pol-sub/5-15f.pdf

b) Google images. Retrieved June 1, 2016, from https://images.google.com

13

LWV-00000284



- When you get your ballot by mail, it will contain:
  - Instructions from the Texas Secretary of State,
  - an official ballot,
  - a ballot envelope, and
  - another envelope addressed to the county elections office (commonly called the carrier envelope).
- The two envelopes are usually different colors and vary from county to county and year to year.

*Sources*

a) Additional Balloting Materials, 7 Tᴇx. Eʟᴇc. Cᴏᴅᴇ § 86.002.  Retrieved from http://www.statutes.legis.state.tx.us/Docs/EL/htm/EL.86.htm
b) Election day. (2008, October 17). *Me and you and Ellie* [Blog]. Retrieved from http://meandyouandellie.blogspot.com/2008/10/election-day.html

14

LWV-00000285



- For each office, vote for the candidate of your choice.
    - Mark the ballot according to the instructions on the ballot envelope.
    - Some counties specify that the bubble be filled in by using a black or blue ink pen.
    - There is also a place at the top of the ballot to vote a straight ticket for one party.
- After you are done voting, fold the ballot and place it in the ballot envelope.

**Sources**
a) Marking and Sealing the Ballot, 7 Tex. Elec. Code § 86.005.  Retrieved from http://www.statutes.legis.state.tx.us/Docs/EL/htm/EL.86.htm
b) Lubbock County Elections Department. (2012). *How to mark a ballot by mail*. Retrieved June 8, 2016, from http://www.votelubbock.org/voter-education/how-to-mark-a-ballot/
c) Election day. (2008, October 17). *Me and you and Ellie* [Blog]. Retrieved from http://meandyouandellie.blogspot.com/2008/10/election-day.html

15

LWV-00000286



Seal the ballot envelope and place it inside the pre-addressed carrier envelope.

***Sources***

a) Marking and Sealing the Ballot, 7 Tᴇx. Eʟᴇᴄ. Cᴏᴅᴇ § 86.005. Retrieved from http://www.statutes.legis.state.tx.us/Docs/EL/htm/EL.86.htm
b) Election day. (2008, October 17). *Me and you and Ellie* [Blog]. Retrieved from http://meandyouandellie.blogspot.com/2008/10/election-day.html

16

LWV-00000287



- Seal the outside envelope before signing your name.
- Sign your name next to the X on the back o the envelope.
- Be sure this signature is exactly the same as the signature on your Application for Ballot by Mail.

***Sources***

a) Marking and Sealing the Ballot, 7 Tex. Elec. Code  § 86.005.  Retrieved from http://www.statutes.legis.state.tx.us/Docs/EL/htm/EL.86.htm
b) Election day. (2008, October 17). *Me and you and Ellie* [Blog]. Retrieved from http://meandyouandellie.blogspot.com/2008/10/election-day.html

17

LWV-00000288



- Add the required postage and mail!
- If you are afraid to mail the envelope with your signature showing, you can put it in a larger envelope to mail. But be sure to:
    - have the correct address and
    - add enough postage.
- You can also use UPS or FedEx.
- In any case, only one sealed ballot can be placed in another envelope for mailing (unless ballots are from the same address).
- If you cannot mail your own ballot, give it to a trusted friend to mail. Never give it to a stranger or a someone working for a candidate or political party.

*Sources*
a) Method of Returning Marked Ballot, 7 TEX. ELEC. CODE § 86.006. Retrieved from http://www.statutes.legis.state.tx.us/Docs/EL/htm/EL.86.htm
b) Election day. (2008, October 17). *Me and you and Ellie* [Blog]. Retrieved from http://meandyouandellie.blogspot.com/2008/10/election-day.html

18

LWV-00000289

**Deadlines –**

Last day to*
- Register to vote
- Apply for ballot by mail
- Vote by mail

*Date application/ballot must be underlined received





19

- Register to vote _____
- Apply to vote by mail _____
- Vote by mail _____
  - Note that all the deadlines are the dates the application or ballot must be **received** in the elections office–not post marked on the deadline.*
  - This means to get there on time, a local ballot must be mailed at least 3-4 days in advance of the deadline.

*Unless a late-arriving ballot deadline applies: Can be received the following day if it was postmarked on or before Election Day.

***Sources***
a)  Delivery of Application to Registrar,  2 TEX. ELEC. CODE § 13.042.  Retrieved from
    http://www.statutes.legis.state.tx.us/Docs/EL/htm/EL.13.htm
b)  Submitting Application for Ballot Voted by Mail: General Rule, 7 TEX. ELEC. CODE § 84.008.
    Retrieved from
    http://www.statutes.legis.state.tx.us/Docs/EL/htm/EL.84.htm
c)  Deadline for Returning Marked Ballot, 7 TEX. ELEC. CODE § 86.007.  Retrieved from
    http://www.statutes.legis.state.tx.us/Docs/EL/htm/EL.86.htm

19

LWV-00000290

## Common Errors

- Envelope not signed
- Signature does not match that on application
- Ballot mailed too late





20

There are always some ballots that don't count because of a simple oversight, such as:

- Forgetting to sign the outside envelope.
- The signature on the envelope and on the Application for Mail Ballot are different.
- Worst of all, it got in the mail too late to arrive by Election Day.

***Sources***

a) California Forward. (2014). Three common errors: Voting by Mail [Image] in *Your final vote by mail cheatsheet!* Retrieved from http://www.cafwd.org/reporting/entry/your-final-vote-by-mail-cheatsheet
b) Google images. Retrieved June 1, 2016, from https://images.google.com

20

LWV-00000291



In short, there are four basic steps:

- Register to vote
- Plan ahead
    - Apply to vote by mail as soon as you can
    - Or check out your polling place
- Learn about the candidates and their stands on the issues.
- If want a reminder to vote, sign up online to get text messages or emails.

**Source**
AIGA, the Professional Association for Design. (2016). *Get out the vote.* Retrieved from http://www.aiga.org/get-out-the-vote/

LWV-00000292



The power is in numbers!

- Millennials are not only the largest living generation in the U.S., but have caught up with Baby Boomers in their share of the electorate.[a]
    - Millennials comprise 1/3 of the voting-eligible population.[a]
- Politicians listen to the people who vote.
    - Senior citizens in this country have great government programs like Social Security and Medicare. That's because seniors as a group have a high turnout rate. So elected officials are very responsive to their needs.
    - Young people historically have had a low turnout rate, so politicians are less in tune with their needs.
- But more millennials are voting – the proportion of millennials eligible to vote who voted in the 2016 Presidential Election was 49%, an increase of 3% from 2012.[b,c]
- And in the 2018 midterm election, 31% youth ages 18-29 voted, up dramatically from 21% in 2014.[d]

**Sources**

[a]Fry, R. (2016, May 16). Millennials match Baby Boomers as largest generation in the U.S. electorate, but will they vote? *Pew Research Center FactTank.* Retrieved from https://tinyurl.com/y7b7k46c

[b]U.S. Census Bureau. (2017, May). Table 1. Reported voting and registration, by sex and single years of age: November 2016 (P20 Tables). *Voting and registration in the election of November 2016.* Retrieved from https://tinyurl.com/mdxxwza

[c]Fry, R. (2016, August 29). This may be the last presidential election dominated by Boomers and prior generations. *Pew Research Center Fact Tank.* https://tinyurl.com/ztdre2k

[d]CIRCLE. (2018, November 7). *Young people dramatically increase their turnout to 31%, shape 2018 midterm elections.* Retrieved from https://tinyurl.com/y7l9kpva

[e]AIGA, the Professional Association for Design. (2016). *Get out the vote.* Retrieved June 16, 2016, from http://www.aiga.org/get-out-the-vote/

22

LWV-00000293



Why vote? Because it counts in so many ways!

- Most importantly, voters elect officials who make government policies that effect our lives, such as the
    - Interest rates you pay on your student loan
    - Taxes taken out of your paycheck
    - Health care benefits you get at your job
    - Availability of bike paths, parks, and libraries where you live
- Some of you may not like the choices on the ballot or the fact that your preferred candidate in the last election lost.
    - But in fact, usually half the voters (more or less) win and the rest lose.
    - Close elections encourage elected officials to listen to diverse opinions on an issue.
    - In the upcoming election, we need to vote and make the best choice we can among those running to keep our government functioning.
- And, yes, one vote can make a difference.
    - In the May 2016 Irving city council election, a runoff election was avoided because when one provisional ballot was counted, it pushed the incumbent over the 50% threshold required to avoid a runoff, saving the city $70,000. (Brumfield, 2016)
- The only time your vote doesn't count is when you <u>don't vote</u>.

**Source**

Brumfield, L. (2016, May 13). One vote makes the difference as Meagher declared winner in Irving council race. *Dallas Morning News*. Retrieved fromhttps://tinyurl.com/y9wca8yv

23

LWV-00000294



Do you think that:

- College tuition should be free?
- The minimum wage for internships should be enforced?
- Pell grant awards should be increased to 100% of the average in-state tuition?
- Marijuana should be legalized?
- The voting age should be lowered to age 16?

Whatever your issue is that involves government policy, voting is one way to have some control over the decisions.

This is a competitive election, so be a game changer!

24

LWV-00000295



- Hello. I am NAME, representing _____. Thank you for inviting me to talk about the League's favorite topic— voting!
- Our goal is to empower citizens to shape better communities.
- As a nonpartisan organization, the League never endorses or opposes candidates or political parties.
- But we do advocate for positions on issues that our members have studied and agreed upon.

***Sources***
https://my.lwv.org/texas/about-league-women-voters-texas
*Google images*. Retrieved from https://images.google.com



Exhibit
Grace Chimene
9
5/18/20 MJ
exhibitsticker.com

1

LWV-00000344



Registered voters in Texas can cast a ballot by mail if they are:

- 65 years of age or older;
- disabled;
- confined in jail, but not convicted of a felony; or
- will be out of the county on Election Day **and** during early voting.

*Sources:*
Texas Secretary of State. *Application for a ballot by mail.* Retrieved from
    https://www.sos.state.tx.us/elections/voter/reqabbm.shtml
Google images. Retrieved from https://images.google.com

2

LWV-00000345



**Military & Overseas**

- Regular process
    1. Voter registration
    2. Ballot by mail application
- Federal Postcard Application

    Voter registration **and** application for ballot by mail on <u>one</u> form
    **www.fvap.gov**



- Members of the military and their family members and those residing overseas can vote absentee if they are:
    - A U.S. citizen, 18 years old, and absent from voting residence
- Can choose the
    - Regular two-step process to register to vote and apply for ballot by mail **or** the
    - One-step process using the Federal Postcard Application
    - In either case the applications are mailed to the county elections office.
- The Federal Voting Assistance Program (FVAP) website provides
    - Not only the
        - Postcard applications and
        - Deadlines for applications and returned ballots
    - But also links to
        - Absentee voting guidelines
        - State election website
        - Local elections office contact information
        - Recommended mailing dates by country so ballot arrives on time
            - This link is found on the information pages for members of the different branches of the service.

***Sources***
a) Texas Secretary of State. (n.d.). *Military & overseas voters.* Retrieved from http://www.votetexas.gov/military-overseas-voters/
b) U.S. Department of Defense. (n.d.). *Federal voting assistance program.* Retrieved from https://www.fvap.gov

3

LWV-00000346

# Texas college students

## Can vote absentee

- Must be registered to vote in Texas
- Apply for absentee ballot if living:
  - Out-of-county or
  - Out-of-state





4

- Texas allows students to keep their residency even when they move out-of-county or out-of-state to attend school.
- They only lose their residency if they establish residency in another state for any reason, such as to vote there.
- Thus they can apply for an absentee ballot in their county of residence.

*Sources*
a) Residence, 1 Tex. Elec. Code § 1.015(d). Retrieved from
   http://www.statutes.legis.state.tx.us/Docs/EL/htm/EL.1.htm
b) Campus Vote Project. (n.d.). *Student guides.* Retrieved from
   http://campusvoteproject.org/studentguides/

4

LWV-00000347



**Out-of-state students**

**Vote at home**   *or*   **In Texas**

- Request absentee ballot
- Check student voting guide for home state at:

http://campusvoteproject.org/studentguides/

- Establish state residency
- Register to vote



- Students <u>from another state</u> who are attending college in Texas can vote either at their legal residence in their home state or in Texas using their school address.
- To vote in their home state:
    - They would check the student voting guide in that state at the website shown on the screen.
    - Apply to vote by absentee ballot in their county of residence.
- To vote where they live while going to school in Texas, students must declare Texas residency and register to vote.

*Sources*

a) Residence, 1 TEX. ELEC. CODE § 1.015(d).  Retrieved June 13, 2016, from http://www.statutes.legis.state.tx.us/Docs/EL/htm/EL.1.ht
b) Campus Vote Project. (n.d.). *Student guides.* Retrived June 13, 2016, from http://campusvoteproject.org/studentguides/
c) Google images. Retrieved June 1, 2016, from https://images.google.com

5

LWV-00000348



## Student ID ≠ voter ID

**Valid photo ID**

- **Issued by Texas DPS**
  - – Texas driver license
  - – Texas Election ID
  - – Texas personal ID
  - – Texas concealed handgun license
- **Issued by U.S. Govt.**
  - – Military ID card with photo
  - – U.S. citizenship certificate with photo
  - – U.S. passport



- First-time voters who did not list their Texas driver license number or last four digits of their Social Security number on their Voter Registration Application will be required to:
  - enclose a photocopy of a valid photo ID (from the list) if voting by mail when returning your ballet or
  - show a valid photo ID to vote in person.
- Only one of the seven forms of photo ID listed can be used and
  - the ID cannot have expired more than 4 years before voting
  - Voters age 70 and older may use an expired ID

*Sources*
a) Documentation of Proof of Identification, 63 TEX. ELEC. CODE § 63.0101. from http://www.statutes.legis.state.tx.us/Docs/EL/htm/EL.63.htm
b) An Act Relating to Requiring a Voter to Present Proof of Identification; Providing a Criminal Penalty and Increasing a Criminal Penalty. SB 5, 85th Texas Legislature 2017). Retrieved from https://legiscan.com/TX/bill/SB5/2017
c) Texas Secretary of State. (2016, January). *Notice to voter who must provide identification (for voters voting by mail).* Retrieved from http://www.sos.state.tx.us/elections/forms/pol-sub/5-22af.pdf

6

LWV-00000349

## Student ID ≠ voter ID



**Other ID**

- Voter registration certificate (valid)
- Certified birth certificate
- Current utility bill
- Bank statement
- Government check
- Paycheck
- Or any other government document showing name and address



- Voters who do not have an acceptable ID can sign a simple form and enclose a copy of one of the following other documents.
- The form is called "Voter's Statement of Reasonable Impediment or Difficulty" and will be sent along with the ballot.

### *Sources*

a) Documentation of Proof of Identification, 63 TEX. ELEC. CODE § 63.0101. from http://www.statutes.legis.state.tx.us/Docs/EL/htm/EL.63.htm

b) An Act Relating to Requiring a Voter to Present Proof of Identification; Providing a Criminal Penalty and Increasing a Criminal Penalty. SB 5, 85th Texas Legislature (2017). Retrieved from https://legiscan.com/TX/bill/SB5/2017

c) Texas Secretary of State. (2016, January). *Notice to voter who must provide identification (for voters voting by mail).* Retrieved from http://www.sos.state.tx.us/elections/forms/pol-sub/5-22af.pdf

7

LWV-00000350



- Send your Application for Ballot by Mail as early as 60 days before an election. This will give you plenty of time to receive your ballot, mark it, and mail it back to the county early voting clerk.
- The application must be **received** (not postmarked)
  - by your county early voting clerk
  - not later than the 11th day before Election Day.
    - For this election the date is _____.
- To obtain an application, you can either:
  - Call your local county elections office or the Texas Secretary of State Office or
  - Download and print an application or order one at this website
  - In either case, the completed application must be mailed to your county elections office.
    - Contact information for the elections office is available at the website.

<u>Note to speaker</u>: Information not easily retrievable by <u>searching</u> at VoteTexas.gov home page

***Resources***
a) Texas Secretary of State. *Application for a ballot by mail.* Retrieved from http://www.sos.state.tx.us/elections/voter/reqabbm.shtml
b) Texas Secretary of State. *Listing of county websites.* Retrieved from http://www.sos.state.tx.us/elections/voter/county.shtml
c) Google images. Retrieved from https://images.google.com

8

LWV-00000351



In completing the application:

- Your name and residence address must match what is on your voter registration card. If you have moved
  - Within the county: Update address online
  - To a different county: Fill out a new Voter Registration Application
- "Mail my ballot to:"
  - This is the address where you want your ballot sent if not your residence address.
  - And that address depends on the reason you are voting by mail.

***Sources***

a) Texas Secretary of State. (n.d.). *Application for ballot by mail* [form]. Retrieved from http://www.sos.state.tx.us/elections/voter/reqabbm.shtml
b) Texas Secretary of State. (n.d.). *Voter name and address changes.* Retrieved from https://txapps.texas.gov/tolapp/sos/SOSACManager
c) Google images. Retrieved from https://images.google.com

9

LWV-00000352

**If age 65+ or disabled:**

**Ballot can be mailed to your:**

- Residence
- Assisted living/ retirement center
- Nursing home
- Hospital
- A relative





- If the reason you are requesting to vote by mail is that you are age 65 or older, you have several options where the ballot can be mailed, depending on your circumstances.
- It can be mailed to where you are living or will be residing for the time being or even a relative.

*Sources*
a) Texas Secretary of State. (n.d.). *Application for ballot by mail* [Form]. Retrieved from http://www.sos.state.tx.us/elections/voter/reqabbm.shtml
b) Google images. Retrieved from https://images.google.com

10

LWV-00000353

# 65+ or disability

**6a** **ONLY Voters 65 Years of Age or Older or Voters with a Disability:**
If applying for one election, select appropriate box.
If applying once for elections in the calendar year, select "Annual Application."

☐ Annual Application

Uniform and Other Elections:
☐ May Election
☐ November Election
☐ Other _____

Primary Elections:
You must declare one political party to vote in a primary:
☐ Democratic Primary
☐ Republican Primary

☐ Any Resulting Runoff

## **Others** – one election at a time

LWV

11

If you are voting by mail because you are disabled or are 65 or older:

- You can request to vote by mail in all elections in the calendar year.
- While you can submit this annual application anytime during the calendar year, it must be received in the county elections office at least 11 days before the first election in which you seek to request a ballot by mail.
    - The elections clerk should forward your annual application to other entities where you are a qualified voter. This means that the school district or city ballots will also be mailed to you.
- Those voting absentee (i.e., out-of-county)  and those in jail can only apply to vote by mail for the upcoming election.

***Source***
Texas Secretary of State. (n.d.). *Application for ballot by mail* [form]. Retrieved from http://www.sos.state.tx.us/elections/voter/reqabbm.shtml

11

LWV-00000354



- If you are voting absentee because you will not be anywhere in the county on Election Day <u>and</u> during early voting:
    - Your ballot MUST be mailed to an address outside the county where you can get it beginning on a specified date.
    - You must be out of county on all possible voting dates to vote absentee.
- If an inmate is eligible to vote, the ballot can be sent a relative or to the jail.

*Sources*
a) Texas Secretary of State. (n.d.). *Application for ballot by mail* [form]. Retrieved from http://www.sos.state.tx.us/elections/voter/reqabbm.shtml
b) Google images. Retrieved from https://images.google.com

12

LWV-00000355



- Sign and date your Application for Ballot by Mail.
    - Your signature MUST match the one on your voter registration card.
- If you are unable to sign it yourself:
    - A person can witness your mark or attest that you cannot make a mark.
    - The witness or assistant must not only sign the application but provide an address and the relationship to the voter.
        - Unless the witness is a close relative, it is a misdemeanor to to witness more than one Application for Ballot by Mail.
        - It is also a misdemeanor to omit the requested information.

***Sources***
a)   Texas Secretary of State. (n.d.). *Application for ballot by mail* [form]. Retrieved from http://www.sos.state.tx.us/elections/voter/reqabbm.shtml
b)   Google images. Retrieved from https://images.google.com

13

LWV-00000356



- Next, add the address of your county elections office to the designated spot on the application.

- Then fold the application, tape it shut, and put a first class stamp on it before mailing it.

- It can also be scanned and emailed or faxed to your elections office.

    - But the original must still be mailed and received at the elections office within 4 business days.

*Source*
a) Texas Secretary of State. (n.d.). *Application for ballot by mail* [form]. Retrieved from http://www.sos.state.tx.us/elections/voter/reqabbm.shtml
b) Google images. Retrieved from https://images.google.com

14

LWV-00000357



- When you get your ballot by mail, it will contain:
  - Instructions from the Texas Secretary of State,
  - an official ballot,
  - a ballot envelope, and
  - another envelope addressed to the county elections office (commonly called the carrier envelope).
- The two envelopes are usually different colors and vary from county to county and year to year.

*Sources*
a)   Additional Balloting Materials, 7 Tᴇx. Eʟᴇᴄ. Cᴏᴅᴇ  § 86.002.  Retrieved from http://www.statutes.legis.state.tx.us/Docs/EL/htm/EL.86.htm
b)   Election day. (2008, October 17). *Me and you and Ellie* [Blog]. Retrieved from http://meandyouandellie.blogspot.com/2008/10/election-day.html

15

LWV-00000358



- For each office, vote for the candidate of your choice.
  - Mark the ballot according to the instructions on the ballot envelope.
  - Some counties specify that the bubble be filled in by using a black or blue ink pen.
- After you are done voting, fold the ballot and place it in the ballot envelope.

***Sources***
a)  Marking and Sealing the Ballot, 7 Tex. Elec. Code § 86.005.  Retrieved from http://www.statutes.legis.state.tx.us/Docs/EL/htm/EL.86.htm
b)  Lubbock County Elections Department. (2012). *How to mark a ballot by mail*. Retrieved from http://www.votelubbock.org/voter-education/how-to-mark-a-ballot/
c)  Election day. (2008, October 17). *Me and you and Ellie* [Blog]. Retrieved from http://meandyouandellie.blogspot.com/2008/10/election-day.html

16

LWV-00000359



Seal the ballot envelope and place it inside the pre-addressed carrier envelope.

### Sources

a) Marking and Sealing the Ballot, 7 Tᴇx. Eʟᴇᴄ. Cᴏᴅᴇ § 86.005. Retrieved from http://www.statutes.legis.state.tx.us/Docs/EL/htm/EL.86.htm

b) Election day. (2008, October 17). *Me and you and Ellie* [Blog]. Retrieved from http://meandyouandellie.blogspot.com/2008/10/election-day.html

17

LWV-00000360



- Seal the outside envelope before signing your name.
- Sign your name next to the X on the back of the envelope.
- Be sure this signature is <u>exactly the same</u> as the signature on your Application for Vote by Mail.

### Sources

a) Marking and Sealing the Ballot, 7 TEX. ELEC. CODE § 86.005.  Retrieved from http://www.statutes.legis.state.tx.us/Docs/EL/htm/EL.86.htm
b) Election day. (2008, October 17). *Me and you and Ellie* [Blog]. Retrieved from http://meandyouandellie.blogspot.com/2008/10/election-day.html

18

LWV-00000361



- Add the required postage and mail!
- If you are afraid to mail the envelope with your signature showing, you can put it in a larger envelope to mail. But be sure to:
    - have the correct address and
    - add enough postage.
- You can also use UPS or FedEx.
- In any case, only one sealed ballot can be placed in another envelope for mailing (unless ballots are from the same address).
- If you cannot mail your own ballot, give it to a family member or trusted friend to mail. Never give it to a stranger or a someone working for a candidate or political party.

### Sources
a) Method of Returning Marked Ballot, 7 TEX. ELEC. CODE § 86.006.  Retrieved from http://www.statutes.legis.state.tx.us/Docs/EL/htm/EL.86.htm
b) Election day. (2008, October 17). *Me and you and Ellie* [Blog]. Retrieved from http://meandyouandellie.blogspot.com/2008/10/election-day.html

19

LWV-00000362



- If you need help reading, marking, or mailing the actual ballot, ask a family member or trusted friend for help.
  - The assistant may not in any way suggest who you should vote for.
  - Your vote is secret.
  - It is a crime for someone to coach you how to vote or to tell anyone how you voted.
- It's not uncommon for someone from a political organization to offer to help with your ballot soon after you've received it. We recommend you decline this kind of help for several reasons. If you allow your ballot to be mailed by someone you don't know, it might not be mailed at all.
  - If it's delivered to the elections office from the address of a candidate or a campaign's headquarters, your ballot will be rejected.
- Anyone who helps a voter with a mail ballot in person MUST put their name and address on the carrier envelope as a witness or assistant & check the appropriate box.
  - No one may be a witness (for voters who can't sign their name) for more than 1 carrier envelope per election.

### Sources

a) Texas Secretary of State. (n.d.) *Helpful hints on voting early by mail.* Retrieved from http://www.votetexas.gov/voting/when.html <Helpful Hints for Voting by Mail>
b) Election day. (2008, October 17). *Me and you and Ellie* [Blog]. Retrieved from http://meandyouandellie.blogspot.com/2008/10/election-day.html
c) Google images. Retrieved from https://images.google.com

20

LWV-00000363

## Deadlines –

### Last day to*

- Register to vote
- Apply for ballot by mail
- Vote by mail

*Date application/ballot
must be <u>received</u>





21

---

- Register to vote _____
- Apply to vote by mail _____
- Vote by mail _____

> - Note that all the deadlines are the dates the application or ballot must be **received** in the elections office–not post marked on the deadline.*
> - This means to get there on time, a local ballot must be mailed at least 3-4 days in advance of the deadline.

*Unless a late-arriving ballot deadline applies: Can be received the following day if it was postmarked on or before Election Day.

**Sources**
a) Delivery of Application to Registrar,  2 Tex. Elec. Code § 13.042.  Retrieved from http://www.statutes.legis.state.tx.us/Docs/EL/htm/EL.13.htm
b) Submitting Application for Ballot Voted by Mail: General Rule, 7 Tex. Elec. Code § 84.008.  Retrieved from http://www.statutes.legis.state.tx.us/Docs/EL/htm/EL.84.htm
c) Deadline for Returning Marked Ballot, 7 Tex. Elec. Code § 86.007.  Retrieved from http://www.statutes.legis.state.tx.us/Docs/EL/htm/EL.86.htm

21

LWV-00000364

# Common Errors

- Envelope not signed
- Signature does not match that on application
- Ballot mailed too late





22

There are always some ballots that don't count because of a simple oversight, such as:

- Forgetting to sign the outside envelope.
- The signature on the envelope and on the Application for Mail Ballot are different.
- Worst of all, it got in the mail too late to arrive by Election Day.

***Sources***
a) California Forward. (2014). Three common errors: Voting by Mail [Image] in *Your final vote by mail cheatsheet!* Retrieved from http://www.cafwd.org/reporting/entry/your-final-vote-by-mail-cheatsheet
b) Google images. Retrieved from https://images.google.com

22

LWV-00000365



So you <u>can</u> vote by mail, and now you know how:

1. Register to vote or check that your voter registration information is up-to-date.
2. Fill out the Application for Ballot by Mail.
3. Vote as soon as you get it in the mail.
4. Put it in the ballot envelope & seal; then stick that envelope in the outer envelope & seal.
5. Don't forget to sign the back of the envelope.
6. Add a stamp and mail it off.
7. Finally, celebrate our democracy and that you, too, can **Be a Texas Voter!**

23

LWV-00000366



Why vote? Because it counts in so many ways!
- Most importantly, voters elect officials who make significant decisions that effect our lives, such as
  - Taxes, roads, minimum wage, teacher pay, social security, health care—you name it
- Politicians listen to the people who vote—and they have access to the list of people who vote and where they live
  - Voting highlights the power of your neighborhood, city and state. The number of people voting from where you live affects the resources allocated to where you live. For example,
  - Senior citizens in this country have great government programs like Social Security and Medicare. That's because seniors as a group have a high turnout rate. So elected officials are very responsive to their needs. Young people on the other hand have a low turnout rate, so politicians are less in tune with their needs.
  - At the local level, have you ever wondered why the streets may be better in some parts of town than in others? If you look into it, you will almost always find that the areas with good streets are where voter turnout is high, and the areas with lots of pot holes are where voter turnout is low. The elected officials responsible for maintaining streets are more sensitive to areas where everybody votes and people talk to them.
- Some of you may not like the choices on the ballot or the fact that your preferred candidate in the last election lost.
  - But in fact, usually half the voters (more or less) win and the rest lose.
  - Close elections encourage elected officials to listen to diverse opinions on an issue.
  - In the upcoming election, we need to vote and make the best choice we can among those running to keep our government functioning.
- Being a voter empowers us to work toward solutions to problems in our community and our nation.
- The only time your vote doesn't count is when you don't vote.

24

LWV-00000367

Document Filed Under Seal



# LEAGUE OF WOMEN VOTERS®
## OF TEXAS EDUCATION FUND

September 30, 2016

Trudy Hancock
Elections Administrator.
302 E. 24th St.
Bryan, TX 77803

Dear Trudy Hancock,

The League of Women Voters of Texas would like to congratulate you on your Outstanding rating in our review of county election websites. Your commitment to helping your citizens by providing accurate and easy to find election information is commendable, and we wanted to honor you for your efforts. For more information on our review, please check out our website, www.lwvtexas.org.

As a nonpartisan political organization, the League of Women Voters of Texas (LWV-TX) encourages the informed and active participation of citizens in government. Essential to informed citizens who vote is election information. This study was undertaken to assess the online availability and adequacy of election information on official county websites in Texas. An online survey of the 242 existing official Texas county websites was conducted during the last 2 weeks of August 2016. The 6-item, closed-response questionnaire measured the adequacy of election information on the websites, using criteria adapted from the County Election Website Evaluation, a survey conducted by Ballotpedia, The Encyclopedia of American Politics, in 2012.

Your county is one of only forty-four counties to receive either an Outstanding or Honorable Mention Excellence Award. Please enjoy this certificate of excellence as a token of our appreciation for your hard work. We look forward to continuing to working with you in the future to further improve everyone's access to accurate and timely election information.

Sincerely,

Elain M. Wiant

Elain M. Wiant
Chair, LWV Texas Education Fund

**Exhibit**
**Grace Chimene**
**10**
5/18/20 MJ



# THE LEAGUE OF WOMEN VOTERS OF TEXAS

HONORS

*Brazos County*

For An *Outstanding* Evaluation

## 2016 Election Website Voter Education Review

Elaine Wiant, President - October 1, 2016

© 2004 GOES 441
All Rights Reserved

LITHO. IN U.S.A.

## Denton County

| | |
|---|---|
| Population estimate, 2015: | 780,612 |
| Elections administrator: | Lannie Noble |
| Website: | www.votedenton.com |
| Overall adequacy score: | 5-Perfect |
| Reviewer comments: | **Español** Clicking the icon at the top of the home page translates the entire website into Spanish. |

## Jefferson County

| | |
|---|---|
| Population estimate, 2015: | 254,308 |
| Elections administrator: | Carolyn Guidry |
| Website: | www.jeffersonelections.com |
| Overall adequacy score: | 5-Perfect |
| Reviewer comments: | Deadline for voter registration was found on county home page www.co.jefferson.tx.us. But on the elections website, the deadlines are buried on subpages and behind a dot on the event calendar, thus very difficult to find. |

## Potter County

| | |
|---|---|
| Population estimate, 2015: | 121,802 |
| Elections administrator: | Melyn Huntley |
| Website: | http://pottercountyvotes.com |
| Overall adequacy score: | 4-Very good |
| Reviewer comments: | The Potter County website www.co.potter.tx.us is provided by CIRA and uses the traditional CIRA template menus. The link to "Voting" under the "Services for Residents" Quicklinks menu takes the visitor the separate elections website. Lacked Spanish language translation. |

# Independently Built Websites

## Brazos County

| | |
|---|---|
| Population estimate, 2015: | 215,037 |
| Elections administrator: | Trudy Handcock |
| Website: | www.brazosvotes.org |
| Overall adequacy score: | 5-Perfect |
| Reviewer comments: | Excellent FAQs section. Valuable links to SOS, military & overseas voter information, LWV, and political parties may be missed as "Links" at top of home page is easily overlooked. Conflicting information on voter ID between elections and county www.brazoscountytx.gov/ websites. LWV link leads to KEOS89.1fm radio station website. |

## Comal County

| | |
|---|---|
| Population estimate, 2015: | 129,048 |
| Elections administrator: | Cynthia Jaqua |
| Website: | www.co.comal.tx.us/Elections.htm |
| Overall adequacy score: | 4-Very good |
| Reviewer comments: | Excellent Quicklinks menu. Everything but Spanish language. |

## Dallas County

| | |
|---|---|
| Population estimate, 2015: | 2,553,385 |
| Elections administrator: | Toni Pippins-Poole |
| Website: | www.dallascountyvotes.org |
| Overall adequacy score: | 5-Perfect |
| Reviewer comments: | Enhanced by fun photos, interactive map, and use of Upcoming Events space connected to Event Calendar. Facebook page used to post events. |

## Hays County

| | |
|---|---|
| Population estimate, 2015: | 194,739 |
| Elections administrator: | Joyce A Cowan |
| Website: | www.co.hays.tx.us/elections.aspx |
| Overall adequacy score: | 5-Perfect |
| Reviewer comments: | Engaging language on elections page to invite visitor to vote, register to vote, and be a poll worker. Excellent FAQs, e.g., "If I am in college, should I register in my hometown or in my college town?" |

## Travis County

| | |
|---|---|
| Population estimate, 2015: | 1,176,558 |
| Elections administrator: | Dana DeBeauvoir |
| Website: | www.traviscountyclerk.org/eclerk/Content.do?code=E.0 |
| Overall adequacy score: | 5-Perfect |
| Reviewer comments: | High information level but low website readability level—busy, overpowering legibility; complex wording and sentence structure; and difficult to understand. |

# Excellence Awards

## Outstanding

*15 (6%) of 242 county elections websites earned an overall score of 5-Perfect*

| | |
|---|---|
| Bastrop County | www.bastropvotes.org/ |
| Bexar County | www.bexar.org/1568/Elections-Department/ |
| Brazos County | www.brazosvotes.org |
| Dallas County | www.dallascountyvotes.org |
| Denton County | www.votedenton.com |
| DeWitt County | www.co.dewitt.tx.us/default.aspx?Dewitt_County/Elections |
| Gregg County | www.greggcountyvotes.com |
| Grimes County | www.co.grimes.tx.us/default.aspx?Grimes_County/Elections |
| Hays County | www.co.hays.tx.us/elections.aspx |
| Jefferson County | www.jeffersonelections.com |
| Lubbock County | www.votelubbock.org/election-information/ |
| Refugio County | www.co.refugio.tx.us/default.aspx?Refugio_County/Elections |
| Travis County | www.traviscountyclerk.org/eclerk/Content.do?code=E.0 |
| Waller County | www.co.waller.tx.us/page/Elections |
| Williamson County | www.wilco.org/CountyDepartments/Elections/tabid/450/Default.aspx |

# Honorable Mention

| 29 (12%) of 242 county elections websites earned an overall score of 4-Very good | |
|---|---|
| Burnet County | www.burnetcountytexas.org/default.aspx?name=elect.home |
| Caldwell County | www.co.caldwell.tx.us/default.aspx?Caldwell_County/ElectionInformation |
| Cameron County | www.co.cameron.tx.us/administration/elections_voter_registration/ |
| Chambers County | www.co.chambers.tx.us/default.aspx?name=elections |
| Collin County | www.collincountytx.gov/elections/Pages/default.aspx |
| Comal County | www.co.comal.tx.us/Elections.htm |
| Ector County | www.co.ector.tx.us/default.aspx?Ector_County/Elections |
| El Paso County | https://epcountyvotes.com |
| Ellis County | http://co.ellis.tx.us/index.aspx?nid=312 |
| Erath County | http://co.erath.tx.us/votinginfo.html |
| Fayette County | www.co.fayette.tx.us/default.aspx?Fayette_County/Elections |
| Fort Bend County | www.fortbendcountytx.gov/index.aspx?page=338 |
| Hidalgo County | https://tx-hidalgocounty.civicplus.com/index.aspx?nid=105 |
| Hood County | www.co.hood.tx.us/index.aspx?NID=222 |
| Jackson County | www.co.jackson.tx.us/default.aspx?Jackson_County/VotingElectionInformation |
| Kerr County | www.co.kerr.tx.us/elections/ |
| Lee County | www.co.lee.tx.us/default.aspx?Lee_County/Elections |
| Limestone County | www.co.limestone.tx.us/default.aspx?Limestone_County/Elections |
| McLennan County | www.mcmullencounty.org/elections/ |
| Midland County | www.co.midland.tx.us/departments/elections/Pages/default.aspx |
| Nacogdoches County | www.co.nacogdoches.tx.us/ElectionInformation/Index.asp |
| Potter County | http://pottercountyvotes.com |
| San Jacinto County | www.co.san-jacinto.tx.us/default.aspx?San-Jacinto_County/Elections |
| San Patricio County | www.co.san-patricio.tx.us/default.aspx?San-Patricio_County/Elections |
| Smith County | www.smith-county.com/Government/Departments/Elections/Default.aspx |
| Taylor County | www.taylorcountytexas.org/212/Elections |
| Terry County | www.co.terry.tx.us/default.aspx?Terry_County/Elections |
| Victoria County | www.victoriacountytx.org/index.php/en/county-departments?id=103 |
| Wharton County | www.co.wharton.tx.us/default.aspx?Wharton_County/Elections |

Document Filed Under Seal

Document Filed Under Seal

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

DR. GEORGE RICHARDSON,    *
ROSALIE WEISFELD, AUSTIN  *
JUSTICE COALITION,        *
COALITION OF TEXANS WITH  *
DISABILITIES, MOVE TEXAS  *
CIVIC FUND, LEAGUE OF     *
WOMEN VOTERS OF TEXAS,    *
and AMERICAN GI FORUM OF  *
TEXAS, INC.,              *
                          *
        Plaintiffs,       *
                          *          CIVIL ACTION NUMBER
VS.                       *          5:19-cv-0963
                          *
TEXAS SECRETARY OF        *
STATE, TRUDY HANCOCK, IN  *
HER OFFICIAL CAPACITY AS  *
BRAZOS COUNTY ELECTIONS   *
ADMINISTRATOR, AND PERLA  *
LARA IN HER OFFICIAL      *
CAPACITY AS CITY OF       *
McALLEN, TEXAS            *
SECRETARY,                *
                          *
        Defendants.       *


Remote Oral Deposition of

MOVE Texas Civic Fund,

By and through their Designated Representative,

HILLIARD DREW GALLOWAY

May 22, 2020

10:02 a.m.


Reported by:

Micheal A. Johnson, RDR, CRR

MOVE Texas - 5/22/2020

2

1        REMOTE ORAL DEPOSITION OF MOVE TEXAS CIVIC

2   FUND, BY AND THROUGH THEIR DESIGNATED

3   REPRESENTATIVE, HILLIARD DREW GALLOWAY, produced at

4   the instance of the Defendant, Texas Secretary of

5   State, in the above-styled and numbered cause on the

6   22nd day of May, 2020, at 10:02 a.m., before Micheal

7   A. Johnson, RDR, CRR, Notary Public in and for the

8   State of Texas, reported by realtime stenographic

9   means, at the location of the witness, Austin,

10  Texas, pursuant to Notice of Oral Deposition, and in

11  accordance with the Federal Rules of Civil

12  Procedure.

13

14

15

16

17

18

19

20

21

22

23

24

25

 1                    REMOTE APPEARANCES

 2   ON BEHALF OF THE PLAINTIFFS:

 3     JoAnna Suriani
       WILLKIE FARR & GALLAGHER LLP
 4     1875 K Street, N.W.
       Washington, D.C. 20006-1238
 5     (202) 303-1193
       jsuriani@willkie.com
 6
       Samuel Kalar
 7     WILLKIE FARR & GALLAGHER LLP
       787 Seventh Avenue
 8     New York, New York 10019-6099
       (212) 728-8724
 9     skalar@willkie.com

10     Zachary Dolling
       Hani Mirza
11     Ryan Cox
       TEXAS CIVIL RIGHTS PROJECT
12     1405 Montopolis Drive
       Austin, Texas 78741
13     (512) 474-5073
       zachary@texascivilrightsproject.org
14     hani@texascivilrightsproject.org
       ryan@texascivilrightsproject.org

15

16   ON BEHALF OF THE DEFENDANT
     TEXAS SECRETARY OF STATE:
17
       Anne Marie Mackin
18     ASSISTANT ATTORNEY GENERAL
       Post Office Box 12548
19     Austin, Texas 78711-2548
       (512) 463-2798
20     anna.mackin@oag.texas.gov

21

22

23

24

25

```
 1              REMOTE APPEARANCES (CONT.)

 2   ON BEHALF OF THE DEFENDANT
     TRUDY HANCOCK IN HER OFFICIAL CAPACITY AS BRAZOS
 3   COUNTY ELECTIONS ADMINISTRATOR:

 4     J. Eric Magee
       ALLISON, BASS & MAGEE, LLP
 5     402 West 12th Street
       Austin, Texas 78701
 6     (512) 482-0701
       e.magee@allison-bass.com
 7
       Bruce L. Erratt
 8     BRAZOS COUNTY ATTORNEY'S OFFICE
       300 East 26th Street, Suite 1300
 9     Bryan, Texas 77803
       (979) 775-7400
10     berratt@brazoscountytx.gov

11
     ON BEHALF OF THE DEFENDANT
12   PERLA LARA IN HER OFFICIAL CAPACITY AS CITY OF
     McALLEN, TEXAS SECRETARY:
13
       Isaac J. Tawil
14     Austin Stevenson
       CITY OF McALLEN
15     1300 West Houston Avenue
       McAllen, Texas 78501-5002
16     (956) 681-1090
       itawil@mcallen.net
17     astevenson@mcallen.net

18
     ALSO PRESENT:
19
       Amelia Christopher, Video Technician
20

21

22

23

24

25
```

5

INDEX
HILLIARD DREW GALLOWAY
May 22, 2020

REMOTE APPEARANCES                          3

PROCEEDINGS                                 7


EXAMINATION OF HILLIARD DREW GALLOWAY:

BY MS. MACKIN                               7

BY MR. STEVENSON                           49


CORRECTIONS AND SIGNATURE                  59

REPORTER'S CERTIFICATION                   60

```
 1                    DEPOSITION EXHIBITS
                    HILLIARD DREW GALLOWAY
 2                       May 22, 2020

 3
      NUMBER               DESCRIPTION              MARKED
 4
      Exhibit 1      Defendant Secretary of          10
 5                   State's Notice of Oral
                     Deposition Pursuant to
 6                   Federal Rule of Civil
                     Procedure 30
 7
      Exhibit 2      Plaintiffs' Original            19
 8                   Complaint

 9    Exhibit 3      MOE Texas 2020 Budgets          35
                     MOVE-00000917 -
10                   MOVE-00000919

11    Exhibit 4      09/05/2019 through             45
                     09/09/2019 E-mail Chain
12                   MOVE-00000519 -
                     MOVE-00000522
13
      Exhibit 5      07/05/2019 E-mail Chain         50
14                   MOVE-00000004 -
                     MOVE-00000007
15

16

17

18

19

20

21

22

23

24

25
```

1                      PROCEEDINGS

2                 HILLIARD DREW GALLOWAY,

3     called as a witness, having been duly sworn by a

4     Notary Public, was examined and testified as

5     follows:

6                      EXAMINATION

7     BY MS. MACKIN:

8         Q.    Good morning, Mr. Galloway.  If I could

9     please have you speak and spell your name for the

10    record.

11        A.    Good morning.  My name is Hilliard,

12    H-i-l-l-i-a-r-d, Drew, D-r-e-w, Galloway,

13    G-a-l-l-o-w-a-y.

14        Q.    Thank you.  And we had the opportunity to

15    cover some ground when I took your deposition for

16    another case, so I'm going to try to avoid

17    duplicative things, but -- and hopefully get us out

18    of here maybe a little earlier on our Friday.

19              Just a couple of those reminders.  We

20    will both try not to speak over one another so that

21    Mr. Johnson can get an accurate record of everything

22    that is said.  And obviously, if you need a break at

23    any time, just let me know.  Okay?

24        A.    Yes.  It's good to see you again.

25        Q.    You too.  I think -- was it a Friday the

MOVE Texas - 5/22/2020

8

1    last time too?  I can't remember.

2         A.    It was.

3         Q.    A great cherry on top of the week.  All

4    right.  So is there any reason that you might not be

5    able to answer my questions accurately and

6    completely today?

7         A.    No, not to my knowledge.

8         Q.    Okay.  And is anyone in the room with you

9    right now?

10        A.    No.

11        Q.    Okay.  Since we are situated remotely,

12   and this is a little bit different than your typical

13   in-person deposition, I would ask that if anybody

14   comes into the room with you, will you please let me

15   know that.  Okay?

16        A.    Yes.

17        Q.    And also now that the deposition is

18   underway, please let me know if you communicate with

19   anyone about the substance of your testimony or rely

20   on any text message or website that hasn't been made

21   an exhibit to the deposition in providing your

22   answer.  Okay?

23        A.    Yes, I understand.

24        Q.    Thank you.  And do you have any documents

25   in front of you?

1    A.    No.

2    Q.    Okay.  And so I think that the last time

3    we spoke, we used the chat function to -- or maybe I

4    showed you documents on the screen.  I can't

5    remember.

6    A.    I believe you showed me documents on the

7    screen, but I also have the deposition documents up

8    on my desktop.  So if you'd like to refer to it by

9    Bates stamp number --

10    Q.    Okay.

11    A.    -- I can do that.

12    Q.    I appreciate that.  We've got a couple

13    other defendants in this case, other than the

14    Secretary of State who I represent, but just so they

15    can get a copy of what I'm referring to, what I

16    think I will try to do is share the documents in the

17    chat function so that everybody can download them.

18    And we'll try that out with Exhibit 1 and if you

19    have any issues downloading them or anything like

20    that, we can hit it.

21    A.    I understand.

22    Q.    All right.  Great.  So I am going to

23    share a document with you that will be Exhibit 1 to

24    this deposition.

25

1              (Deposition Exhibit 1 marked for

2   identification.)

3   BY MS. MACKIN:

4        Q.    And please let me know when you are able

5   to pull up that document and are ready to discuss

6   it.

7        A.    I have the document open now.

8        Q.    And have you seen this document before?

9        A.    I have.

10       Q.    And what does it appear to be?

11       A.    This appears to be the notice of oral

12   deposition to our organization, MOVE Texas Civic

13   Fund.

14       Q.    And do you understand that this document

15   says that MOVE Texas Civic Fund is directed to

16   designate one or more persons to testify on its

17   behalf as to the topics in this notice?

18       A.    Yes, I do.

19       Q.    And you understand that you are the

20   person who has been designated to give that

21   testimony?

22       A.    Yes, I do.

23       Q.    Okay.  So please take the time that you

24   need to review the topics in the notice.  I believe

25   they're down on page 6.

1       (Witness reviews document.)

2       A.    I have reviewed page 6.

3  BY MS. MACKIN:

4       Q.    Thank you.  It's a little -- I think last

5  time I read them out loud to you and this is just a

6  little bit cleaner.

7       A.    No worries.

8       Q.    Are you prepared to testify on all of

9  these topics?

10      A.    Yes.

11      Q.    And you understand your testimony today

12  will bind MOVE Texas Civic Fund in this lawsuit?

13      A.    Yes.

14      Q.    Okay.  Thank you for that.  All right.

15            How did you prepare for the deposition

16  today?

17      A.    I prepared for the deposition today after

18  I was notified by our attorneys of the deposition

19  notice, by notifying the MOVE Texas Civic Fund board

20  of directors, which is in an advisory council

21  capacity, and then I notified the Alliance for Youth

22  Organizing, which is our 501(c)(3) fiscal sponsor,

23  and then I directed the staff to execute the

24  discovery requirements.

25      Q.    Okay.  And when you notified the board,

 1  what did you communicate to them?

 2       A.    I shared the deposition notice with them

 3  and instructed them that I would be representing the

 4  organization in this capacity.

 5       Q.    And is that what you communicated to the

 6  Alliance for Youth Organizing as well?

 7       A.    That's correct.

 8       Q.    Anything else?

 9       A.    Other than reviewing the files that were

10  produced, that's it.

11       Q.    Okay.  And what did the staff of MOVE

12  Texas Civic Fund search for in providing documents

13  to respond to this request?

14       A.    I directed the staff of MOVE Texas Action

15  Fund, which, again, is shared with MOVE Texas Civic

16  Fund, to search their e-mail account, to search

17  their cloud drives, storage drives, and to search

18  their computers for a series of terms.  There were

19  nine of them.  And they ranged from mail-in ballot,

20  to signature, to signature rejection.

21       Q.    Okay.  Thank you for that.  And other

22  than the documents that were produced to us, did you

23  review any other documents to prepare for the

24  deposition today?

25       A.    No.

1    Q.    All right.  And did you -- other than --

2  I know you mentioned conversations with the board

3  and the Alliance for Youth Organizing, did you meet

4  with anyone at MOVE Texas Civic Fund or MOVE Texas

5  Action Fund to prepare for this deposition today?

6    A.    No.

7    Q.    Okay.  And are you adequately familiar

8  with the facts to testify on all the topics in

9  Exhibit 1?

10    A.    Yes.

11    Q.    Okay.  Great.  That is all that I have on

12  that document for now.  You can close it out to the

13  side.

14          And so last time we talked, we dove into

15  your background quite a bit and I'm going to try not

16  to spend quite as much time here today on that

17  topic, since we've already covered it.  But just to

18  get a few things on the record, you are currently

19  the executive director of MOVE Texas Civic Fund; is

20  that right?

21    A.    That is correct.

22    Q.    Okay.  And what are your duties and

23  responsibilities in that role?

24    A.    My duties as executive director of MOVE

25  Texas Civic Fund include reporting and answering to

1    our board of directors, which is an advisory

2    capacity.  Additionally, working with the Alliance

3    for Youth Organizing, which is our 501(c)(3) fiscal

4    sponsor.  And also instructing, directing the staff

5    to meet the mission of MOVE Texas Civic Fund.

6         Q.    And do your duties -- well, let me back

7    up.

8               Are you also the executive director of

9    MOVE Texas Action Fund?

10        A.    That is correct.

11        Q.    And are your duties any different across

12   those two roles?

13        A.    My duties are similar in some ways.  I

14   also answer to a board of directors that is

15   independent, which is our MOVE Texas Action Fund

16   board, in addition to directing the staff for MOVE

17   Texas Action Fund.

18        Q.    Okay.  And have there been any changes in

19   your duties and responsibilities during your time as

20   executive director?

21        A.    There's been changes to the scope of my

22   responsibility as the organization has matured and

23   grown.  As you know, I joined in 2016 and the

24   organization was much smaller, but the general

25   purview of my roles and responsibilities have

1  remained the same.

2      Q.    An executive director is an executive

3  director.  Right.  I gotcha.

4          Again, just so we're clear on the record,

5  I believe you -- when you joined MOVE Texas Civic

6  Fund -- well, when you joined the MOVE Texas

7  organization in 2016, it was as executive director?

8      A.    That is correct.

9      Q.    Okay.  I'm going to -- I want to talk a

10 little bit about the organizational structure of

11 MOVE Texas Civic Fund and I'm going to try to --

12 normally, I would ask you those open-ended

13 questions, but because it's a little bit of a long

14 story, I'm going to ask you kind of leading

15 questions and you can just tell me if I'm wrong

16 because it took me a while to understand this the

17 last time we talked about it.  So not trying to put

18 words in your mouth, just going to walk through my

19 understanding and you can let me know if it's

20 correct.

21     A.    Yes.

22     Q.    So as I understand it, the MOVE

23 organization began as MOVE San Antonio and it was a

24 501(c)(4)?

25     A.    The organization started as a student

1  chapter at The University of Texas at San Antonio.

2  Those students filed a 501(c)(4) organization called

3  MOVE San Antonio and we became fiscally sponsored on

4  the 501(c)(3) side of -- by the Bus Federation, and

5  that is an entity called MOVE San Antonio

6  Federation.

7      Q.    And something I was a little bit unclear

8  of is whether MOVE San Antonio, the 501(c)(4), and

9  MOVE San Antonio Foundation, the 501(c)(3), whether

10  they were founded at the same time or whether one

11  came first?

12      A.    To my knowledge, MOVE San Antonio came

13  first and then we went through an affiliation

14  process with the then Bus Federation to become an

15  affiliate, which allowed us to be fiscally sponsored

16  by that organization.

17      Q.    Okay.  And my understanding is that this

18  was in 2013?

19      A.    MOVE San Antonio was formed in late 2013,

20  early 2014 and then we became an affiliation of

21  the -- an affiliate of the Bus Federation, which

22  again is now called the Alliance for Youth

23  Organizing, in 2014.

24      Q.    Okay.  Got it.  Do you know when the Bus

25  Federation became the Alliance for Youth Organizing?

17

1      A.    To the best of my knowledge, I believe

2  they changed names in 2017.

3      Q.    Okay.  And then my understanding is that

4  MOVE San Antonio Foundation -- well, let me back up.

5            In 2018, your -- the organization was

6  going to scale up and start engaging in activity

7  outside San Antonio and moving into other cities

8  across the state.  And so at that time MOVE

9  San Antonio Foundation, the 501(c)(3), was renamed

10 MOVE Texas Civic Fund; and MOVE San Antonio, the

11 501(c)(4), was renamed MOVE Texas Action Fund; is

12 that right?

13     A.    That is correct.  That happened in 2018.

14     Q.    Okay.  And did it happen at the same time

15 for both the (c)(3) and the (c)(4)?

16     A.    That is correct.

17     Q.    I mean, approximately.

18     A.    Within a couple weeks --

19     Q.    Paperwork, yeah, totally.  And so now,

20 MOVE Texas Civic Fund is fiscally sponsored by the

21 Alliance for Youth Organizing; is that right?

22     A.    That is correct.

23     Q.    And MOVE Texas Action Fund is funded by

24 donors?

25              MR. COX:  Object to form.

1      But go ahead, Drew, if you know.

2      A.    Both organizations are funded by donors.

3  BY MS. MACKIN:

4      Q.    Okay.  And we touched on this, but again,

5  just so we have a clear record.  Do all of the MOVE

6  Texas employees provide services to both the civic

7  fund and the action fund?

8      A.    Yes, for the most part.  There's

9  different functions of each organization that

10 belongs to that, but in general our full-time

11 employees and part-time employees formally work for

12 MOVE Texas Action Fund and then, as part of their

13 time reporting mechanism, they split that time

14 between (c)(3) and (c)(4) activities and we invoice

15 the (c)(3) for (c)(3) permissible activities.

16     Q.    Okay.  So the employees are paid -- their

17 check comes from the action fund and then the --

18 wait.  And then the action fund invoices the civic

19 fund for the hours spent on work for the (c)(3)?

20     A.    That is correct.

21     Q.    Okay.

22     A.    We pay them from the action fund and then

23 that is when we invoice the -- MOVE Texas Action

24 Fund invoices MOVE Texas Civic Fund.

25     Q.    Okay.  Thank you for that.  I'm going to

19

1  share a document with you which will be Exhibit 2 to

2  this deposition.

3              (Deposition Exhibit 2 marked for

4  identification.)

5  BY MS. MACKIN:

6      Q.   Please let me know when you're able to

7  open up that document and are ready to discuss it.

8      A.   Thank you.

9      Q.   Sure.

10     A.   I do have access to the document now.

11     Q.   Okay.  And what -- have you seen this

12 document before?

13     A.   I have.

14     Q.   What does it appear to be?

15     A.   This document is the original complaint

16 filed whenever we joined the lawsuit and the lawsuit

17 was filed.

18     Q.   And did you review Exhibit 2 before it

19 was filed?

20     A.   I reviewed parts of Exhibit 2.

21     Q.   Which parts?

22     A.   Any parts that dealt with MOVE Texas

23 Civic Fund.

24     Q.   Okay.  Fair enough.  Do you recall about

25 how much time you spent reviewing it before it was

1 filed?

2       A.    I believe it was approximately an hour.

3       Q.    Okay.  And about how much time would you

4 say you have spent on this case?

5       A.    Can I ask a clarifying question?

6       Q.    Of course.

7       A.    My personal time or -- I mean, is that me

8 personally or is that organizationally?

9       Q.    That's a great question.  I mean you

10 personally.  But since this is the deposition of

11 MOVE Texas Civic Fund and not of Drew Galloway, how

12 much time has your executive director spent on this

13 case?

14       A.    I would estimate somewhere in the 15- to

15 20-hour range.

16       Q.    Okay.  And now I want to walk through --

17 as you're aware, there's multiple plaintiffs and

18 multiple defendants in this lawsuit.  And so I just

19 want to talk through whether MOVE Texas Civic Fund

20 has had any prior dealings with the other parties.

21 So I just wanted to kind of put that headline out

22 there for you because I didn't -- I mean, you might

23 be like why are you asking me if I know Dr. George

24 Richardson, I don't -- so we're just going to walk

25 through all that.

21

1      A.    Yes, I understand.

2      Q.    Okay.  So has MOVE Texas Civic Fund had

3  any prior dealings with Dr. George Richardson?

4      A.    No, not to my knowledge.

5      Q.    And how about Rosalie Weisfeld, the other

6  individual plaintiff in this lawsuit?

7      A.    Yes.

8      Q.    And what was the nature of those dealings

9  between Ms. Weisfeld and MOVE Texas Civic Fund?

10     A.    To my knowledge, we received an e-mail

11 from Ms. Weisfeld about this situation, which was

12 then flagged for me and was sent to Texas Civil

13 Rights Project.

14     Q.    And by this situation, what do you mean

15 exactly?

16     A.    I'm sorry.  To clarify, to -- we were

17 notified of Ms. Weisfeld's rejection of her mail-in

18 ballot due to signature matching issues.

19     Q.    Okay.  And then you forwarded that along

20 to Texas Civil Rights Project?

21     A.    I believe the employee at MOVE Texas

22 Civic Fund that did that was Charlie Bonner, our

23 communications director.

24     Q.    Okay.  Gotcha.  All right.  Any other

25 prior dealings between MOVE Texas Civic Fund and

1 Rosalie Weisfeld?

2     A.    No.

3     Q.    All right.  Has MOVE Texas Civic Fund had

4 any prior dealings with the Austin Justice

5 Coalition?

6     A.    No, not to my knowledge.

7     Q.    How about the League of Women Voters of

8 Texas?

9     A.    Yes.

10     Q.    And what is the nature of the prior

11 dealings between the League of Women Voters of Texas

12 and MOVE Texas Civic Fund?

13     A.    We often work with the League of Women

14 Voters of Texas and their subsidiary leagues at the

15 local level, on voting rights issues, voter

16 education issues and general civic good.

17     Q.    Okay.  And when you say "often," about

18 how frequently?

19     A.    I would estimate that we speak to

20 somebody at the League of Women Voters of Texas once

21 a month.

22     Q.    Okay.  Do you know if it's usually the

23 same contact with the league or if it varies

24 depending on the nature of the communication?

25     A.    It varies on the nature of the

1  communication.

2      Q.    Okay.  Has MOVE Texas Civic Fund had any

3  prior dealings with the Texas Secretary of State's

4  office?

5      A.    Yes.

6      Q.    And what is the nature of those dealings?

7      A.    In addition to speaking directly with the

8  Secretary of State on important items that we care

9  about, including, like voter registration, voter

10  education, we also are plaintiffs in other lawsuits

11  that include the Texas Secretary of State.

12      Q.    And I know one of those lawsuits, because

13  I'm representing the Secretary, is Stringer versus

14  Hughes, I believe.  How many other lawsuits is MOVE

15  Texas Civic Fund pursuing against the Secretary of

16  State of Texas?

17      A.    We're only involved in three lawsuits

18  completely right now.  So I can't remember if the

19  Secretary of State is a named plaintiff in the Texas

20  Democratic Party, et al., lawsuit, but that's the

21  different -- that's a different entity as well.

22      Q.    Which --

23      A.    Texas Civic Fund, it's just Stringer II

24  and this case.

25      Q.    Okay.  Then you also mentioned a Texas

1   Democratic Party, et al., lawsuit.  Currently, I'm

2   aware of like seven of those.  So do you know

3   specifically which one?

4          A.     To my knowledge, MOVE Texas Action Fund

5   is involved in the Travis County case.

6          Q.     Related to voting by mail?

7          A.     That's correct.

8          Q.     Okay.  Thank you for that.  I want to

9   pivot back a little bit to -- you talked about

10  communicating with the Texas Secretary of State's

11  office about issues that are important to MOVE Texas

12  Civic Fund.  Do you have a contact at the Secretary

13  of State's office that you would typically reach out

14  to, or does it vary depending on what the

15  communication is about?

16         A.     It varies to the communication that

17  we're -- the nature of the communication.  I had

18  direct contact with the former Secretary of State

19  Rolando Pablos, and we have had contact with several

20  of the staff members that have been on since

21  Secretary Pablos left the office.

22         Q.     Has the -- has MOVE Texas Civic Fund had

23  any prior dealings with Perla Lara or the McAllen

24  city secretary?

25         A.     No, not to my knowledge.

25

1    Q.    Okay.  And how about Trudy Hancock or the

2  Brazos County election administrator?

3    A.    Not to my knowledge, other than if our

4  organizers engaged Brazos County election

5  administrator on voter registration, like

6  deputization, like those general items.

7    Q.    Okay.  But you're not sure whether or not

8  that happened?

9    A.    We have organizers that are deputized in

10  Brazos County.

11    Q.    Okay.  That is all that I have on the

12  complaint.  I'm going to put that off to the side.

13       I'm going to pivot to the topics in the

14  notice, starting with the first one.  And again, I

15  know we have covered this, but different case, fresh

16  record.  So what is MOVE Texas Civic Fund's mission?

17    A.    MOVE Texas Civic Fund is a grassroots

18  nonpartisan nonprofit organization building power

19  for young people through civic education, leadership

20  development and issue advocacy.

21    Q.    And who developed that mission statement?

22    A.    That mission statement was developed by

23  the founders of MOVE in 2013, roughly.

24    Q.    I actually -- I had one quick follow-up

25  question on that, to backtrack a little bit.

1          You mentioned that the MOVE organization

2 grew out of a student chapter at The University of

3 Texas at San Antonio.  A student chapter of what?

4      A.    MOVE Texas Civic -- the original founders

5 of what is now MOVE Texas Civic Fund and MOVE Texas

6 Action Fund formed a student-led organization at The

7 University of Texas at San Antonio that was called

8 Mobilize, Organize, Vote and Empower UTSA.

9      Q.    Got it.  Okay.  Cool.  Thank you for

10 that.  All right.

11          And so that mission statement that you

12 just discussed, based on our conversation, I think I

13 know the answer, but has that changed over time?

14      A.    No, that's been the overarching mission

15 statement since the organization was founded.

16      Q.    And is it the same as the mission of MOVE

17 Texas Action Fund?

18      A.    MOVE Texas Action Fund's mission is, you

19 know, very, very close, yes.

20      Q.    And I know that they do slight -- they do

21 some different activities, but do they use the same

22 mission statement?

23      A.    They use -- yes.  Yes.  A very similar

24 mission statement.

25      Q.    And so you mentioned civic education,

1  leadership development and issue advocacy as the big

2  activity, big project areas.  Are there documents

3  showing how MOVE Texas Civic Fund's resources are

4  divided across civic education, leadership

5  development and issue advocacy?

6      A.    The financial documents that we do have,

7  showing program allocations and resources, were

8  included in the deposition documents and that would

9  be the 2020 budget, the 2019 budget and I believe

10  the 2018 budget, if we produced that.

11      Q.    Okay.  And to hopefully get us out of

12  here a little bit quicker, I don't want to convey a

13  lack of interest in the other activities, but I'm

14  going to try to focus in on the activities that

15  could touch on this lawsuit.  And specifically, I'm

16  curious about the types of voter registration

17  activities that MOVE Texas Civic Fund conducts.  And

18  based on our previous conversation, I have an

19  understanding that there's several formats that

20  those activities take.  Would that be fair to say?

21      A.    That is fair to say.

22      Q.    And the ideas that I have of what those

23  formats are, are class raps, tabling, canvassing and

24  then a project where you mailed voter registration

25  applications to eligible voters; is that right?

1      A.    That is correct.  Those are the

2  overarching projects.  And again, on the mail --

3  registration mail project, that was a one-time

4  project.

5      Q.    Okay.  And just briefly so we can get it

6  on the record, what are class raps?

7      A.    Class raps are a term that we use for

8  class presentations.  This is where a youth

9  organizer will, with the permission of a university,

10  community college, high school or vocational school

11  professor or teacher, go into the classroom, present

12  on -- do a civics presentation and register students

13  to vote in that moment.

14      Q.    All right.  And then generally what is --

15  what is tabling?

16      A.    Tabling is a term that encompasses

17  whenever we are invited or request to attend a

18  certain specific event, which could be on a college

19  campus, a community college, university, it could be

20  lunchtime in a high school, it could also be on

21  community events, such as a farmers market,

22  something like that, where we actually set up a

23  stationary table and invite people to the table to

24  get registered to vote.

25      Q.    All right.  And then how about

1  canvassing?  What is that?

2      A.     Canvassing is our third method of voter

3  registration that involves youth organizers walking

4  around a specific campus, community college, high

5  school event and/or community event, with clipboards

6  and voter registration forms and asking individuals

7  if they would like to register to vote.

8      Q.     And then the one time that you mailed

9  voter registration applications out, when was that?

10      A.     That was in December of 2019.

11      Q.     And how did you determine which voters --

12  well, how did you determine which people to send

13  those voter registration applications to?

14      A.     We determined the list by age.

15      Q.     Okay.  What age?

16      A.     We chose voters that we believed were

17  unregistered or were not registered in our system,

18  under the age of 30.

19      Q.     And would you say that -- well, outside

20  of that specific mail-out project that we talked

21  about, in the context of all of MOVE Texas Civic

22  Fund's voter registration efforts, does MOVE Texas

23  Civic Fund target particular voters to get them

24  registered?

25      A.     We specifically target young voters,

1   which we identify as 17 and ten months, which is the

2   beginning age limit for voter registration, all the

3   way through, roughly, 35 years old.  But we target

4   mostly college students, high school students,

5   community college students, but we will register

6   anybody that walks up to the table.

7        Q.    Barely hanging on.  I turned 34 earlier

8   this week.  Got one more year.

9        A.    You passed our target demographic.

10       Q.    So other than those age criteria, does

11  MOVE Texas Civic Fund target voters in any other way

12  for its voter registration efforts?

13                  MR. COX:  Object to form.

14                  You can answer, Drew, if you have --

15  if you understand the question.

16       A.    We will register anybody that is in the

17  classroom or comes to our events regardless of age,

18  political ideology, demographic issues.

19  BY MS. MACKIN:

20       Q.    Okay.  Does MOVE Texas Civic Fund engage

21  in any voter registration efforts that are specific

22  to voting by mail?

23       A.    Can you repeat the question?

24       Q.    Sure.  Does MOVE Texas Civic Fund engage

25  in any voter registration activities that are

1  specific to voting by mail?

2              MR. COX:  Object to form.

3       A.    Voter registration is a precursor to

4  voting, whether that's in person or voting by mail,

5  so we register any Texan that we can register.  But

6  often, vote by mail questions arise in the voter

7  registration process, especially close to election

8  time.  And vote by mail questions arise in other

9  programming environments.

10 BY MS. MACKIN:

11      Q.    Okay.  And again, correct me if I'm

12 wrong, I'm not trying to put words in your mouth.

13 It sounds like vote by mail is a part of your voter

14 registration activities because it comes up.  I

15 mean --

16      A.    It's part of our civic education

17 activities, which a bucket of civic education work

18 is voter registration.

19      Q.    Are there specific projects or specific

20 outings, specific class raps or tabling events or

21 canvassing events, where MOVE Texas Civic Fund

22 focuses just on voting by mail?

23      A.    I'm not sure if I understand the

24 question.  So whenever we're doing voter

25 registration, we often talk about other -- or answer

1   questions of people that we're registering to vote.

2   Those questions can range from when is the next

3   election, to what IDs do I need to go vote, to what

4   happens if I take an internship and I leave the

5   county for the fall semester.  So when those

6   questions arise, our organizers have to answer them.

7   And so that's how vote by mail would come into that

8   environment.

9       Q.    Thank you for that.  Okay.

10       I want to talk now about the third topic

11   in the notice, the activities on which you, MOVE

12   Texas Civic Fund, have spent funds and to which you

13   have dedicated resources in Texas between

14   January 1st, 2017, and the present.  And based on

15   our earlier conversation, it sounds like the best

16   documents to show this information would be the

17   2017, 2018, 2019 and 2020 budgets that were produced

18   in discovery; is that right?

19       A.    That is correct.

20       Q.    Okay.  Then I am going to share those

21   documents.  And it is part of a larger PDF file that

22   begins on MOVE 916.

23       A.    I see that.  I have the document open

24   now.

25       Q.    Okay.  Thank you.  And then scrolling

1  down through this, on MOVE 917 titled MOVE Texas

2  2020 Budgets, is that an accurate reflection of the

3  MOVE Texas 2020 budgets?  It appears both for the

4  civic fund and the action fund?

5      A.    That is correct.  That is our

6  board-approved budgets.

7      Q.    Okay.  And just so the record is clear,

8  the first column is labeled Expenses, the second

9  column is labeled MOVE Texas, the third column is

10  labeled MOVE Texas Civic Fund, and the fourth column

11  is labeled MOVE Texas Action Fund.

12          Is the second column just the sum total

13  of the third and fourth columns?

14      A.    Yes, that is correct.

15      Q.    Okay.  So how much did MOVE Texas Civic

16  Fund budget for voter registration activities in

17  2020?

18      A.    MOVE Texas Civic Fund allocated the

19  majority of our overhead expenses, which you can see

20  in the first -- the third column, the first cell.

21  And then the youth organizing column, which is the

22  next one down, is also predominantly voter

23  registration.

24      Q.    And you say "predominantly."  What else

25  does it include?

1       A.    It could also include civic education

2  work as well.

3       Q.    So would there be any way for MOVE Texas

4  Civic Fund to put a dollar value on the money

5  allocated for voter registration efforts

6  specifically in 2020?

7       A.    We do not currently track -- track voter

8  registration at that level at this time.

9       Q.    Okay.  So would that be a no?

10      A.    No.

11      Q.    Okay.  And would your answer be the same

12  for 2019?

13      A.    One second.  I just need to make that

14  bigger because I can't see that section.  For the

15  2019 budget, which just to be -- just to clarify, is

16  MOVE-00000919, again, this is -- voter registration

17  would be included in wages and salaries and then

18  additionally things like office supplies and travel

19  and staff meals.

20      Q.    But would it be possible for MOVE Texas

21  Civic Fund to put a dollar value -- a precise dollar

22  value on the money spent specifically on voter

23  registration in 2019?

24      A.    No, we do not track voter registration.

25      Q.    And would your answer be the same for

1  2018?

2       A.    My answer would be the same.

3       Q.    And one last thing.  I'm not sure whether

4  we got a 2017 budget.  Do you know if that appears

5  anywhere in the production, Mr. Galloway?

6       A.    I do not see it in this file, but I --

7  I'm positive that we have a 2017 budget.

8       Q.    Based on your knowledge of the 2017

9  budget, even if the document's not in front of us,

10  is there a way for MOVE Texas Civic Fund to put a

11  dollar value on the funds spent specifically on

12  voter registration in 2017?

13      A.    No.

14      Q.    All right.  I'm going to make just

15  MOVE 917 through MOVE 919, Exhibit 3 to this

16  deposition.  And we can close out of that.  That's

17  all that I have on that.

18             (Deposition Exhibit 3 marked for

19  identification.)

20  BY MS. MACKIN:

21      Q.    Are any of the funds that MOVE Texas

22  Civic Fund receives restricted to use for certain

23  activities?

24      A.    We do have donor-restricted funds.

25      Q.    Do you have any donor-restricted funds

1   that are restricted to voter registration

2   90activities?

3       A.    No, not to my knowledge.

4       Q.    And does MOVE Texas Civic Fund track

5   whether each voter it registers is already

6   registered in their county of residence?

7       A.    We track the number of voters that we

8   register and we track the number of -- we do that by

9   tracking the number of people that we come in

10  contact with at the events that we hold.  We track

11  the number of forms that we turn in to the specific

12  county election administrators or election

13  departments.  And so that's what we track on voter

14  registration.

15      Q.    So you don't track whether each voter was

16  already registered in their county of residence?

17      A.    The only way that we would know if

18  they're registered in their county of residence is

19  when we ask them are you registered to vote, you

20  know, in the county that you live in.  If they say,

21  yes, I am, which at that point doesn't matter to the

22  voter registration question so much and we move on

23  to the next -- we move on to a different part of

24  that conversation.

25      Q.    Sure.  Okay.  You mentioned that you

1  track the number that you -- well, let me backtrack.

2  Do you ever -- so it's my understanding that all

3  your employees are volunteer deputy registrars such

4  that, you know, they can facilitate folks getting

5  registered --

6          MR. COX:  Object to form.

7      A.    I would say that the -- a very high

8  majority of our employees are volunteer voter deputy

9  registrars for at least one county.

10  BY MS. MACKIN:

11      Q.    Okay.  And so you said that you do track

12  the number of folks you come in contact with; is

13  that right?

14      A.    We track the number of people that

15  register to vote with us at an event, whether that

16  is a class rap, a tabling or a canvassing event.

17  And then we track the number of forms that we turn

18  in to the elections department.

19      Q.    Okay.  Do you offer applications for a

20  ballot by mail through any of your voter

21  registration efforts?

22      A.    Voter registration and vote by mail are

23  two different items for us.  So there is some, like,

24  overlap where that happens in the field, but often

25  vote by mail questions come up around election

1    times.  So we could be doing voter registration

2    pretty close to the election or the voter

3    registration deadline, but vote by mail often comes

4    up close to election times.

5         Q.    Does MOVE Texas Civic Fund engage in any

6    activities that are specific to vote by mail?

7         A.    Yes.

8         Q.    What are those?

9         A.    We educate young people about the ability

10   to vote by mail if they, one, have a disability or,

11   two, are not going to be in the county during the

12   election cycle; for instance, they have an

13   internship in another state or in Washington, D.C.,

14   or if they move back home for -- and there's a

15   summer election or something to those effects.

16        Q.    Okay.  Anything else?

17        A.    We also do -- MOVE Texas Action Fund and

18   MOVE Texas Civic Fund does some vote by mail

19   advocacy work at the elections administrators'

20   office.

21        Q.    Okay.  Which elections administrators?

22        A.    Bexar, Travis, Dallas, Harris, Webb and

23   Hays.

24        Q.    All right.  So I've got educating young

25   people about the ability to vote by mail if they're

1  eligible --

2       A.    Correct.

3       Q.    -- and advocacy to the elections

4  administrators that you mentioned.  Does MOVE Texas

5  Civic Fund engage in any other activity that is

6  specific to vote by mail?

7       A.    Not that I can think of right now.

8       Q.    Okay.  Can MOVE Texas Civic Fund

9  apportion the cost to register each voter that it

10 registers?

11      A.    We have a generalized cost of how much it

12 cost us to register a voter per year.

13      Q.    And what is that based on?

14      A.    That's based on the budgets that you saw

15 in 2020, 2019 and 2018.

16      Q.    And so what is that cost for 2020?

17      A.    Roughly, about $24 a voter.

18      Q.    And how is that $24 calculated?

19      A.    It's calculated by our projected civic

20 education activities and how many voters we project

21 that we're going to register during all of those --

22 like all of those activities.

23      Q.    Okay.  And is there a cost to register

24 each voter that MOVE Texas Civic Fund calculated for

25 its 2019 voter registration efforts?

1      A.    Yes.

2      Q.    And what is that?

3      A.    That cost ranged in the 19 to $20 range.

4      Q.    And how was that calculated?

5      A.    That was calculated by our entire civic

6   education bucket of work and a part of leadership

7   development as well, divided by the number of voters

8   we registered.

9      Q.    Okay.

10           MR. COX:  And if we get to a stopping

11   point logically fairly soon, I'd appreciate a short

12   break if we could.

13           MS. MACKIN:  Sure thing.  Yeah.  No,

14   we can take a break right now.  I was just about

15   to -- I was looking at my notes figuring out where

16   we were going to go next.  So let's go off the

17   record.

18           MR. COX:  Perfect.

19           (Recess taken from 10:58 a.m. to

20   11:12 a.m.)

21   BY MS. MACKIN:

22      Q.    All right, Mr. Galloway.  I am sending

23   you a document Bates-numbered MOVE 519.  If you

24   could please let me know when you're able to pull up

25   that document and are ready to discuss it.

1      A.    Yes, I will.

2            MR. COX:  I don't think it's come

3  through to us, Anna.

4            MS. MACKIN:  Oh, shoot, I --

5  Integrity messaged me with the question about the

6  exhibit that she just asked --

7            MR. COX:  And it's a private message?

8            MS. MACKIN:  -- and it switched it to

9  that.  Sorry about that.

10      A.    I have received it.  It's downloading.

11  BY MS. MACKIN:

12      Q.    Okay.

13      A.    I have it open now.

14      Q.    Okay.  Do you recognize this document?

15      A.    Yes.  It appears to be an e-mail from our

16  development manager John Wingert.

17      Q.    All right.  And then scrolling down to

18  page MOVE 521, about three-quarters of the way down

19  the page begins a September 5th, 2019, e-mail from

20  Sarah Audelo.  Do you see that?

21      A.    I do.

22      Q.    And it is addressed to

23  conclave@allianceforyouthaction.org.  Do you know,

24  are you a member of that e-mail list?

25      A.    I am.

42

 1      Q.    And who else, if you know, is on that

 2  e-mail list?

 3      A.    This is -- this e-mail list consists of

 4  all of the other executive directors of other

 5  Alliance for Youth Action and Alliance for Youth

 6  Organizing affiliates.

 7      Q.    Got it.  And in the second -- oh, just

 8  for the record, who is Sarah Audelo is --

 9      A.    Sarah Audelo --

10      Q.    Audelo, I'm sorry.

11      A.    -- is the executive director of the

12  Alliance for Youth Organizing and Alliance for Youth

13  Action.

14      Q.    And so the second paragraph she writes --

15  well, let's see.  The first sentence says,

16  "Apologies for the quick response request, but I was

17  just outreached by Democracy Fund staff about a

18  meeting next Wednesday to catch up."

19          Did I read that right?

20      A.    That's correct.

21      Q.    What is Democracy Fund?

22      A.    That is a national funder.

23      Q.    Of what?

24          MR. COX:  Object to form.  And also,

25  Anna, I think this is probably outside the scope of

43

1    this deposition.

2              MS. MACKIN:  Well, the document was

3    part of the production.

4              MR. COX:  I understand.

5              Drew, if you know, go ahead and

6    answer.  That's fine.

7        A.   Democracy Fund is, to my knowledge, a

8    nonpartisan or bipartisan organization that funds

9    democracy reform.

10   BY MS. MACKIN:

11       Q.   Okay.  And do you know how it does that?

12             MR. COX:  Object to form.

13       A.   I believe they issue grants.

14   BY MS. MACKIN:

15       Q.   Okay.  And in this second paragraph it

16   says, "As many of you know, we have all been chasing

17   their funding for some time, but frequently come up

18   short because historically we have taken an approach

19   that is centered bipartisanship in their funding

20   portfolio."

21             What does that sentence mean to you?

22             MR. COX:  Object to form.

23       A.   To my knowledge, Democracy Fund is funds,

24   either nonpartisanship or bipartisan democracy

25   reform.

44

1   BY MS. MACKIN:

2       Q.    And this -- this part of the sentence

3   that says, "We have all been chasing their funding

4   for some time, but frequently come up short because

5   historically they have taken an approach that is

6   centered bipartisanship," why would that be the

7   case?

8                   MR. COX:  Object to form.  And this

9   isn't an e-mail that -- that was sent by the civic

10  fund.  And so, you know, it doesn't have anything to

11  do with any of the topics in this notice in this

12  deposition.

13                  MS. MACKIN:  Well, it does --

14                  MR. COX:  I understand that it's a

15  document that we produced.

16                  So Drew, to the extent that you know

17  any of these things, you know, it's fine to answer

18  this; but at some point getting into the specifics

19  of, you know, what some other organization's e-mail

20  sent to a large Listserv that happened to include

21  the civic fund is just going to be, you know, too

22  far outside the scope of this, I think.

23                  MS. MACKIN:  Well, I think it does

24  directly relate to the funding, both the funds

25  received and what they're used for.

1              MR. COX:  I mean, it doesn't talk

2   anything about any specific funds received or

3   mention the civic fund in any way and it's not from

4   the civic fund.

5              But Drew, to the extent that you know

6   things about what this organization does, it's fine

7   to go ahead and answer the question.

8       A.    The only thing I know about Democracy

9   Fund is that they are a nonpartisan or bipartisan

10  organization that funds democracy reform.

11  BY MS. MACKIN:

12      Q.    Okay.  All right.  Oh, and that will be

13  Exhibit 4.  You can close out of that for now.

14              (Deposition Exhibit 4 marked for

15  identification.)

16  BY MS. MACKIN:

17      Q.    Who is charliekirk6@gmail.com?

18      A.    I believe that that is referring to

19  Charlie Bonner, who is the MOVE Texas communications

20  director.

21      Q.    Not the Charlie Kirk who --

22      A.    Not to my knowledge.

23      Q.    -- we see on television sometimes.  Okay.

24              When staff of MOVE Texas Civic Fund sends

25  an e-mail, I've noticed in the e-mails that were

1   produced, it looks like the signature block doesn't

2   distinguish between whether they're e-mailing on

3   behalf of the civic fund or the action fund; is that

4   correct?

5       A.   Per law, we put both organizations in our

6   signature line so that we are able to utilize a

7   common e-mail address.

8       Q.   And you don't have to, like, change it

9   every single time you're doing one type of work

10  versus the other?

11      A.   That's correct.

12      Q.   Okay.  So how would I know, in looking at

13  an e-mail sent by staff of the civic fund, whether

14  they were e-mailing in their role with the civic

15  fund or e-mailing in their role with the action

16  fund?

17              MR. COX:  Object to form.

18      A.   It would be determined upon the subject

19  of the e-mail.

20  BY MS. MACKIN:

21      Q.   Okay.  Do you know if MOVE Texas Civic

22  Fund has ever assisted any voter whose mail-in

23  ballot was rejected for signature mismatch?

24      A.   We produced an e-mail from Ms. Weisfeld,

25  or Weisfeld, notifying us that her ballot had been

47

1  rejected.  We also commonly have to educate young

2  people in classes, tabling, canvassing, other

3  activities, of the importance of making sure that

4  their signature is the same because of the situation

5  in Texas.

6       Q.    What I'm trying to get at, though, here

7  is -- so you passed along -- or someone with MOVE

8  passed along Ms. Weisfeld's information to Texas

9  Civil Rights Project.  Are you aware of any other

10  individual voter who MOVE Texas Civic Fund assisted

11  after their ballot was rejected for signature

12  mismatch?

13       A.    We have no documentation of any

14  discussion; otherwise we would have produced that.

15       Q.    So you're not aware of any specific

16  individual voter?

17       A.    That doesn't mean that it hasn't

18  happened.  We haven't answered those questions

19  orally or directed them to contact the elections

20  department.  We just have nothing else other than

21  what we produced in writing.

22       Q.    Okay.  So sitting here today you couldn't

23  give me the name any other voter who MOVE Texas

24  Civic Fund assisted after their ballot was rejected

25  for signature mismatch?

1     A.    Other than Ms. Weisfeld, we do not -- we

2 don't track that information.  Like the only reason

3 we know Ms. Weisfeld is because we have the e-mail

4 from her.

5     Q.    So you cannot give me the name of any

6 other individual voter whose mail-in ballot was

7 rejected for signature mismatch --

8          MR. COX:  Objection, asked and

9 answered, Anna.  I think he's answered that

10 question.

11         MS. MACKIN:  He has not given me yes

12 or no and it is a yes-or-no question.

13    A.    No.

14 BY MS. MACKIN:

15    Q.    Do you know if any voter who MOVE Texas

16 Civic Fund assisted in registering to vote has ever

17 had a ballot by mail rejected for signature

18 mismatch?

19    A.    We do not have written documentation,

20 other than Ms. Weisfeld, of this situation

21 happening.

22    Q.    Okay.  And just to be clear, did MOVE

23 Texas Civic Fund assist Ms. Weisfeld in registering

24 to vote?

25    A.    Not to my knowledge.

Case 5:19-cv-00963-OLG   Document 84   Filed 07/30/20   Page 2504 of 2561

MOVE Texas - 5/22/2020

49

1    Q.    Okay.  All right.  Just a few more

2  things.

3          Have all of MOVE Texas Civic Fund's

4  training materials specific to voting by mail been

5  produced to us in this case?

6    A.    Yes, to my knowledge.

7          MS. MACKIN:  Mr. Galloway, I

8  appreciate your time and bearing with me once again.

9  I do not have any other questions for you right now,

10  I so will -- I will thank you and pass the witness.

11          THE WITNESS:  Thank you.

12          MR. TAWIL:  Can we take a short break

13  just to gather some thoughts, maybe five minutes or

14  so, and then resume?

15          MR. COX:  Sure.

16          MS. MACKIN:  Sounds good.

17          (Recess taken from 11:26 a.m. to

18  11:36 a.m.)

19                    EXAMINATION

20  BY MR. STEVENSON:

21    Q.    Good afternoon, Mr. Galloway.

22    A.    Good afternoon.

23    Q.    My name is Austin Stevenson.  Like I just

24  told the court reporter, I represent Perla Lara in

25  her official capacity as the McAllen city secretary.

Integrity Legal Support Solutions
www.integrity-texas.com
2504

50

1  I just have a few questions for you today related to

2  this suit.

3       A.    Yes.  Thank you.

4       Q.    Have -- how did MOVE Texas Civic Fund

5  first become acquainted with Ms. Weisfeld?

6       A.    Ms. Weisfeld e-mailed our communication

7  manager Charlie Bonner's personal e-mail with some

8  information that I believe he might have seen on,

9  like social media as well.  I'm not sure if she put

10 it on social media, but she e-mailed him, and that

11 e-mail was sent from Charlie's personal e-mail

12 account to my e-mail account.

13      Q.    Okay.  I'm going to share a document with

14 you that was marked as MOVE 4 in the production

15 responses.  I'll put it in the chat, though.

16      A.    Thank you.

17      Q.    I'd like to mark this as the next exhibit

18 in the deposition.  I'll defer to the court reporter

19 on the number of it.

20            THE REPORTER:  It's 5.

21            MR. STEVENSON:  Thank you.

22            (Deposition Exhibit 5 marked for

23 identification.)

24 BY MR. STEVENSON:

25      Q.    Please let me know when you're able to

51

1    access the document?

2         A.    I do have the document open.

3         Q.    Okay.  Can you scroll down to what's

4    marked as Bates-stamped MOVE 00006?

5         A.    That's correct, I'm there.

6         Q.    Okay.  Do you see towards the bottom of

7    that page where there appears to be an e-mail from

8    Mr. Bonner, but it's his personal e-mail, to you on

9    Friday, July 5th at -- Friday, July 5th, 2019, at

10   9:17 a.m.?

11        A.    Yes, that's correct.

12        Q.    And it says, "Yessir!  She posted it on

13   Facebook and I was like WAIT we could do something

14   about this!"

15              Did I read that correctly?

16        A.    That's what the e-mail says.

17        Q.    Okay.  So is it your understanding that

18   Mr. Bonner saw the post on Facebook and he initiated

19   contact with Ms. Rosalie to receive -- for her to

20   e-mail the information to him?

21        A.    I'm not sure.  Like, that would be

22   speculation on my part.

23        Q.    Okay.  That's fair.  And at the very top

24   of this document marked Bates-stamped No. 4, the

25   first sentence is, "Would this be helpful for this

52

1   lawsuit?"  Do you see that?

2        A.    That's what the e-mail says.

3        Q.    Okay.  And what lawsuit is that referring

4   to?

5        A.    I'm assuming that it would either be this

6   lawsuit or any other voting rights lawsuit, but I'm

7   assuming that it's this lawsuit.

8        Q.    Okay.  Prior to the communications in

9   July of 2019, are you aware of any contact between

10  Texas MOVE Civic Fund and Rosalie Weisfeld?

11       A.    Not to my knowledge.

12       Q.    And were you designated by MOVE Texas

13  Civic Fund to testify on the topics in the

14  deposition today?

15       A.    Yes.

16       Q.    Okay.  And if you could just explain to

17  me a little bit more about the main mission of Texas

18  MOVE Civic Fund; who is the target demographic of

19  the organization?

20            MR. COX:  Object to form.

21       A.    MOVE Texas Civic Fund is a grassroots

22  nonpartisan nonprofit organization that builds power

23  for young Texans through civic education, leadership

24  development and issue advocacy.  We work

25  predominantly for younger Texans on college

1 campuses, community colleges, high schools, but as I

2 mentioned before, we register anybody to vote and we

3 assist any Texan.

4 BY MR. STEVENSON:

5      Q.    Did you assist Rosalie Weisfeld in

6 registering to vote?

7               MR. COX:  Objection, asked and

8 answered.

9               But go ahead, Drew.

10     A.    Not to my knowledge.

11 BY MR. STEVENSON:

12     Q.    What precedents or activities does MOVE

13 Civic Fund engage in in Hidalgo County?

14     A.    Currently, our operations are based out

15 of Bexar County, Webb County, Guadalupe County, Hays

16 County, Travis County, Dallas County and Harris

17 County.

18     Q.    Okay.  So based on that reply, I'm

19 guessing that there's not a physical presence in

20 Hidalgo County; is that correct?

21     A.    That is correct.  Even though we do

22 interact with students who are from Hidalgo County

23 that are at a separate college campus.

24     Q.    Okay.  And what is the nature of those

25 interactions?

1      A.    Per our mission, that would be civic

2 education, leadership development and issue

3 advocacy.

4      Q.    Do you have volunteers at Hidalgo County?

5 I know you said there's not a physical presence as

6 in an office, but do you send volunteers down on an

7 occasional basis?

8      A.    To my knowledge, we have not -- we do not

9 volunteer in Hidalgo County at this time.

10      Q.    Okay.  Has MOVE Civic Fund had any

11 contact or communication with Perla Lara in her

12 official capacity as the McAllen city secretary?

13      A.    Not to my knowledge.

14      Q.    Do you know if MOVE Texas Civic Fund has

15 ever assisted voters to register in a McAllen city

16 election?

17           MR. COX:  Object to form.

18      A.    We register voters across Texas and often

19 we will interact with voters that are registered

20 back at their home address and have questions about

21 elections that are upcoming.

22 BY MR. STEVENSON:

23      Q.    Right.  I understand.  Have any of those

24 been specifically for City of McAllen elections?

25      A.    I wouldn't have that information.  I

1  don't know.

2       Q.    Does the organization keep records of

3  which elections they are assisting individuals to

4  vote in?

5       A.    We do, but we don't keep records of

6  individual conversations.  We registered almost

7  65,000 people in the last year or two, two years.

8       Q.    Okay.  And out of those records, do any

9  of them reflect voting in McAllen city elections or

10 Hidalgo County?

11                 MR. COX:  Object to form.

12      A.    I don't know the answer to that because

13 we could have registered a Hidalgo County or some --

14 let's say, for instance, a student is registered in

15 Hidalgo County but comes to UT Austin to go to

16 school and they don't change their voter

17 registration, they want to stay registered in

18 Hidalgo County because that's where they live at

19 full-time.  If that's the case and we are teaching

20 them about elections, then that would apply to that

21 race; but we do not specifically educate on Hidalgo

22 County elections.

23 BY MR. STEVENSON:

24      Q.    And given that -- I understand the

25 hypothetical situation you just -- where a student

56

1  from Hidalgo County goes out of that county for an

2  education.  Do you have knowledge of that situation

3  ever occurring, specifically a student or any person

4  from Hidalgo County moving and seeking assistance of

5  Texas MOVE?

6      A.    Mr. Stevenson, I'm so sorry, somebody

7  from the complex that we work in just entered the

8  room.  So I just wanted to make you aware of that

9  and then I'm going to ask them to leave; is that

10 okay?

11     Q.    Okay.  Sure.

12              THE WITNESS:  Thank you.

13              MR. COX:  Austin, would you mind

14 repeating the question?  I think it would be

15 helpful.

16              MR. STEVENSON:  Sure.

17 BY MR. STEVENSON:

18     Q.    We talked about the situation where a

19 student from Hidalgo County moves to a university

20 outside of Hidalgo County and then would

21 theoretically receive assistance or education from

22 Texas MOVE Civic Fund that would then enable them to

23 vote in Hidalgo County.  It all makes sense.  I

24 understand what you're saying.  But my question is,

25 do you have any records or personal knowledge

1    that -- or does the organization have knowledge that

2    that has actually occurred, specifically somebody

3    from Hidalgo County received education from Texas

4    MOVE Civic Fund?

5         A.    Yes.  We helped a UTSA student about four

6    weeks ago that was -- this person's a UTSA student,

7    maybe this was mid-March, and when the coronavirus

8    situation happened and UTSA closed its doors, this

9    student went back to Hidalgo County and -- which is

10   where their parents lived.  And they contacted us

11   with some questions on housing and how to like --

12   and how to like advocate for student housing and

13   that kind of stuff.  So that is an example of us

14   interacting with young people from Hidalgo County

15   that we might know or we might not know where

16   they're, like, originally from.

17        Q.    Okay.

18              MR. STEVENSON:  Thank you for your

19   time today and I'll pass the witness.

20              THE WITNESS:  Thank you.

21              MR. MAGEE:  Sorry, I couldn't find my

22   button.  I'm going to pass the witness.

23              MR. COX:  Okay.  Anna, we're just

24   going to reserve any questions, but if you have any

25   follow-ups.

58

1              MS. MACKIN:  I do not.  It was nice

2  to see you again, Drew.

3              THE WITNESS:  Thank you so much.  So

4  good to see you.

5              MR. COX:  We're going to -- like to

6  read and sign, of course, and get a copy of the

7  transcript.

8              MS. CHRISTOPHER:  And any orders for

9  video copy?

10             MR. COX:  I think we better get a

11 video copy too.

12             MS. CHRISTOPHER:  And that's from?

13             MR. COX:  That's from Texas Civil

14 Rights Project.  You can send it to Hani or myself.

15             MR. STEVENSON:  And then we'll take a

16 copy of the transcript for Perla Lara, and e-mail is

17 fine.

18             THE REPORTER:  Anybody else?

19             MR. MAGEE:  Yeah, this is Eric Magee.

20 I don't need a video, but I will take a copy, and

21 E-Tran is fine with me.

22             THE REPORTER:  Okay.  I guess we're

23 off the record.

24             MS. MACKIN:  Thank y'all very much.

25             (Deposition concluded at 11:48 a.m.)

59

1                    CORRECTIONS AND SIGNATURE

2     PAGE/LINE      CORRECTION            REASON FOR CHANGE

3     _____

4     _____

5     _____

6     _____

7     _____

8     _____

9     _____

10    _____

11    _____

12    _____

13    _____

14    _____

15    _____

16    _____

17    _____

18    _____

19    _____

20    _____

21

22

23

24

25

MOVE Texas - 5/22/2020

60

1          I, HILLIARD DREW GALLOWAY, have read the
foregoing deposition and hereby affix my signature
that same is true and correct except as noted
2    herein.

3          _____

4          HILLIARD DREW GALLOWAY

5    STATE OF _____   )
     COUNTY OF _____    )
6
          Subscribed and sworn to before me by the
7    said witness, HILLIARD DREW GALLOWAY, on this the
     _____ day of _____, 2020.
8

9                         _____

                         NOTARY PUBLIC IN AND FOR
10                        THE STATE OF_____

11
     My Commission Expires: _____
12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    REPORTER'S CERTIFICATION

2

3          I, Micheal A. Johnson, Registered Diplomate

4    Reporter, Certified Realtime Reporter and Notary

5    Public in and for the State of Texas, certify that

6    on the 22nd day of May, 2020, I reported the Remote

7    Oral Deposition of HILLIARD DREW GALLOWAY, after the

8    witness had first been duly cautioned and sworn to

9    testify under oath; said deposition was subsequently

10   transcribed by me and under my supervision and

11   contains a full, true and complete transcription of

12   the proceedings had at said time and place; and that

13   reading and signing was requested.

14          I further certify that I am neither counsel

15   for nor related to any party in this cause and am

16   not financially interested in its outcome.

17          GIVEN UNDER MY HAND AND SEAL of office on

18   this 26th day of May, 2020.

19

20

21   _____
     MICHEAL A. JOHNSON, RDR, CRR
22   NCRA Registered Diplomate Reporter
     NCRA Certified Realtime Reporter
23
     Notary Public in and for the
24   State of Texas
     My Commission Expires:  8/8/2020
25

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

| | | |
|---|---|---|
| DR. GEORGE RICHARDSON, ROSALIE WEISFELD, AUSTIN JUSTICE COALITION, COALITION OF TEXANS WITH DISABILITIES, MOVE TEXAS CIVIC FUND, LEAGUE OF WOMEN VOTERS OF TEXAS, and AMERICAN GI FORUM OF TEXAS, INC., | § § § § § § § § | |
| *Plaintiffs,* | § § | |
| v. | § § | No. 5:19-cv-00963 |
| | § | |
| TEXAS SECRETARY OF STATE, TRUDY HANCOCK, IN HER OFFICIAL CAPACITY AS BRAZOS COUNTY ELECTIONS ADMINISTRATOR, AND PERLA LARA IN HER OFFICIAL CAPACITY AS CITY OF MCALLEN, TEXAS SECRETARY, | § § § § § § | |
| *Defendants.* | § § | |

## DEFENDANT SECRETARY OF STATE'S NOTICE OF ORAL DEPOSITION PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30

TO:   Austin Justice Coalition, by and through its attorneys of record, Hani Mirza, Zachary D. Dolling, Beth Stevens, and Ryan Cox, Texas Civil Rights Project, 1405 Montopolis Drive, Austin, Texas 78741; and Richard Mancino, Jennifer Hardy, Joanna Suriani, Willkie Farr & Gallagher LLP, 1875 K Street, N.W., Washington, DC 20006.

Defendant Texas Secretary of State hereby notices the deposition upon oral examination of MOVE Texas Civic Fund "MOVE," including all subsidiaries, DBAs, and aliases, beginning at **10:00 AM** on **Friday**, **May 22, 2020** and continuing from day to day until complete. The deposition will be held virtually via Zoom videoconference and will be transcribed and videotaped by a certified court reporter and videographer designated by Defendant. Defendant reserves the right to use the



deposition for any purpose permitted under the Federal Rules of Civil Procedure or Federal Rules of Evidence.

Pursuant to Federal Rule of Civil Procedure 30(b)(6), MOVE is directed to designate one or more officers, directors, managing agents, or other persons who will testify on MOVE's behalf regarding all information known or reasonably available to MOVE with respect to the matters set forth in **Attachment A**.

Pursuant to Federal Rules of Civil Procedure 30(b)(2) and 45, MOVE is also requested to produce at least 24 hours before the videoconference deposition, all documents in response to the subpoena duces tecum in **Attachment B**.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

RYAN L. BANGERT
Deputy First Assistant Attorney General

DARREN L. MCCARTY
Deputy Attorney General for Civil Litigation

THOMAS A. ALBRIGHT
Chief for General Litigation Division

*/s/ Anne Marie Mackin*
ANNE MARIE MACKIN
Texas Bar No. 24078898
Assistant Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2798 | FAX: (512) 320-0667
anna.mackin@oag.texas.gov

2

ATTORNEYS FOR DEFENDANT
TEXAS SECRETARY OF STATE

CERTIFICATE OF SERVICE

I certify that that on May 14, 2020 this notice was served upon counsel listed below via email.

**Hani Mirza**
hani@texascivilrightsproject.org
**Zachary D. Dolling**
zachary@texascivilrightsproject.org
**Rebecca Harrison Stevens**
beth@texascivilrightsproject.org
**Ryan V. Cox**
ryan@texascivilrightsproject.org
**Samuel Kalar**
skalar@willkie.com
**Joanna Suriani**
jsuriani@willkie.com
**Eric Magee**
e.magee@allison-bass.com
**Isaac J. Tawil**
itawil@mcallen.net
**Austin Stevenson**
astevenson@mcallen.net
**C. Robert Heath**
bheath@bickerstaff.com
**Gunnar P. Seaquist**
gseaquist@bickerstaff.com

*/s/ Anne Marie Mackin*
ANNE MARIE MACKIN
Assistant Attorney General

3

## Definitions

The terms below are used in this notice as follows:

1. "MOVE Texas Civic Fund," "MOVE Texas," "MOVE," "you," "your," or "yours" means MOVE Texas Civic Fund (a plaintiff in this Lawsuit), and anyone acting or purporting to act on its behalf with respect to any matter inquired about herein, including without limitation representatives, employees, or agents.

2. "Austin Justice Coalition," or "AJC," means Austin Justice Coalition (a plaintiff in this Lawsuit) and anyone acting or purporting to act on their behalf with respect to any matter inquired about herein, including without limitation representatives, employees, or agents.

3. "League of Women Voters," "LWVTX" or "LWV" means the League of Women Voters of Texas (a plaintiff in this Lawsuit), and anyone acting or purporting to act on its behalf with respect to any matter inquired about herein, including without limitation representatives, employees, or agents.

4. "Coalition of Texans with Disabilities" or "CTD" means Coalition of Texans with Disabilities (a plaintiff in this Lawsuit), and anyone acting or purporting to act on its behalf with respect to any matter inquired about herein, including without limitation representatives, employees, or agents.

5. "Individual Plaintiffs" means Dr. George Richardson and Ms. Rosalie Weisfeld, natural persons who are plaintiffs in this lawsuit, and anyone acting or purporting to act on their behalf with respect to any matter inquired about herein, including without limitation representatives, employees, or agents.

6. "Organizational Plaintiffs" means AJC, CTD, MOVE, and LWVTX, and anyone acting or purporting to act on their behalf with respect to any matter inquired about herein, including without limitation representatives, employees, or agents.

7. "Plaintiffs" means the Individual Plaintiffs and the Organizational Plaintiffs.

8. "Person" means the plural as well as the singular and includes: natural persons, corporations, firms, associations, partnerships, joint ventures, trusts, estates, or any other form of legal entity; and governmental agencies, departments, units, or subdivisions thereof.

9. "SOS" means the Defendant Texas Secretary of State, in her official capacity, including without limitation representatives, employees, agents, or officers acting on her behalf with respect to any matter inquired about herein.

4

10. "Defendants" means SOS; Trudy Hancock, in her official capacity as Brazos County Elections Administrator; and Perla Lara, in her official capacity as City of McAllen, Texas, Secretary.

11. "Lawsuit" means the case styled, *Dr. George Richardson, et. al. v. Texas Secretary of State, et al.*, civil action no. 5:19-cv-00963 in the United States District Court for the Western District of Texas, San Antonio Division.

12. "Complaint" means your live pleading in this case—as of service of these discovery requests, the document entitled "Plaintiff's Original Complaint," filed in this Lawsuit on August 7, 2019 (Dkt. 1).

13. "Communication" means any manner or means of disclosure, transfer, or exchange of information, whether oral, written, in-person, telephonic, electronic, digital, mailed, or otherwise.

14. "Document" includes all writings of every kind, source and authorship, both originals and all non-identical copies thereof including handwritten, typewritten, printed, photocopied, photographic, or electronically recorded matter. For purposes of illustration and not limitation, the term shall include: emails, Facebook postings, social media postings, letters, journals, diaries, bank statements, charts, Excel spreadsheets, handwritten notes, affidavits, schedules, workpapers, audio recordings, video recordings, transcriptions, contracts, agreements, and memoranda of any kind.

15. "Relating to" means in any way concerning, constituting, analyzing, discussing, describing, considering, modifying, amending, confirming, endorsing, evidencing, representing, supporting, substantiating, qualifying, negating or refuting, unless qualified by word of limitation.

16. The singular includes the plural and vice versa.

17. The masculine gender includes the feminine and vice versa.

18. All other terms are to be interpreted in accordance with their normal usage in the English language.

5

## Attachment A

### 30(B)(6) CORPORATE REPRESENTATIVE DEPOSITION TOPICS

1. Your mission.

2. Your organization, including your organizational structure, employees, physical assets, parent and sibling entities, tax status, and history; the services that you provide, and the activities you perform.

3. The activities on which you have spent funds or to which you have dedicated resources in Texas between January 1, 2017 and the present.

4. The allegations you make in your Complaint and the factual bases therefor.

5. The relief that you contend would remedy the claims you make in this lawsuit.

6. The documents produced in response to

    a. the subpoena duces tecum described in Attachment B, and;

    b. Defendants' Requests for Admission, Interrogatories, and Requests for Production in this cause.

6

## Attachment B

To the extent not already produced by you in response to the Secretary of State's discovery requests in this cause, produce the following:

1. Documents sufficient to substantiate the factual allegations you make in your Complaint.

2. All communications between you and any person to assist them in voting by mail in Texas.

3. Documents sufficient to show all information described and/or requested in 30(b)(6) deposition topic numbers 2, 3, and 4 in Attachment A to this notice.

4. To the extent not already provided in response to items 1-3 above, all documents reviewed in preparation for your deposition.

If documents responsive to these categories have already been produced in discovery, the witness is expected to be able to identify those documents by bates numbers.

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| DR. GEORGE RICHARDSON, ROSALIE WEISFELD, AUSTIN JUSTICE COALITION, COALITION OF TEXANS WITH DISABILITIES, MOVE TEXAS CIVIC FUND, LEAGUE OF WOMEN VOTERS OF TEXAS, and AMERICAN GI FORUM OF TEXAS, INC., | § § § § § § § § | |
| *Plaintiffs* | § § | |
| v. | § § | Civil Case No. 5:19-cv-00963 |
| TEXAS SECRETARY OF STATE, TRUDY HANCOCK, in her official capacity as BRAZOS COUNTY ELECTIONS ADMINISTRATOR, and PERLA LARA in her official capacity as CITY OF MCALLEN, TEXAS SECRETARY, | § § § § § § § | |
| *Defendants*. | § § | |

## PLAINTIFFS' ORIGINAL COMPLAINT

Plaintiffs, Dr. George Richardson, Rosalie Weisfeld, Austin Justice Coalition, Coalition of

Texans with Disabilities, MOVE Texas Civic Fund, League of Women Voters of Texas, and

American GI Forum of Texas, Inc., file this Original Complaint seeking declaratory and injunctive

relief pursuant to 42 U.S.C. § 1983 and the United States Constitution. Plaintiff Coalition of

Texans with Disabilities additionally seeks declaratory and injunctive relief pursuant to Title II of

the Americans with Disabilities Act and the Rehabilitation Act of 1973.

## I.
## THE NATURE OF THE CASE

1.     The right to vote is a precious and fundamental political right that is preservative

of all other rights. By definition, it includes the right of qualified voters within a state to cast their



Exhibit
Hilliard Drew Galloway

2

5/22/2020     MJ

ballots and have them counted. But Texas unlawfully rejects the duly signed mail-in ballots of thousands of eligible voters every major election. Indeed, Texas counties rejected at least 1,873 mail-in ballots during the 2018 General Election and at least 1,567 mail-in ballots during the 2016 General Election solely on the basis of mismatching signatures. *See* Ex. A.

2.       Texas offers the opportunity to vote by mail to voters who are outside of their county during elections, voters with disabilities, voters 65 years-of-age or older, and voters confined in jail but otherwise eligible to vote.[1] Even though Texas' mail-in ballot process should make voting easier for voters from these underrepresented groups, the current flawed process leads to the unlawful disenfranchisement of these Texas voters. Specifically, current rules authorize untrained local election officials to arbitrarily and subjectively reject mail-in ballots if officials believe, based on their own layman analysis, that the signature on a ballot is not in fact the voter's signature. No advance notice is given to voters before their vote is rejected, and the decision to reject a mail-in ballot is final.

3.       For example, during the 2018 General Election, Brazos County rejected the mail-in ballot of Plaintiff Dr. George Richardson—a doctor whose signature has been used to prescribe countless medications—on the basis of a signature mismatch. The county gave him no notice of its decision until after the election, notwithstanding the fact that Dr. Richardson would have confirmed that it was his signature on the mail-in ballot if so asked. When Dr. Richardson confronted Brazos County officials, they told him that they had "eye-balled" his signature to determine it was not his.

---

[1] "A qualified voter is eligible for early voting by mail if, at the time the voter's early voting ballot application is submitted, the voter is confined in jail:
    (1)  serving a misdemeanor sentence for a term that ends on or after election day;
    (2)  pending trial after denial of bail;
    (3)  without bail pending an appeal of a felony conviction;  or
    (4)  pending trial or appeal on a bailable offense for which release on bail before election day is unlikely."
Tex. Elec. Code § 82.004(a)

2

4.      Similarly, during a city run-off election in 2019, the City of McAllen rejected Plaintiff Rosalie Weisfeld's mail-in ballot on the same basis. To her recollection, Ms. Weisfeld has voted in every primary, city, bond, constitutional, school district, county, runoff, water district, and general election for the last 30 years. Ms. Weisfeld would have confirmed that the signature was hers had she been asked. Yet, the City of McAllen gave her no notice of the rejection until after the election.

5.      Because Texas' mail-in ballot process fails to provide uniform standards for signature comparison, deprives voters of the ability to cure ballots questioned for an alleged signature mismatch, and fails to require meaningful pre-rejection notice to voters with ballots questioned for an alleged signature mismatch, the mail-in ballot process violates both the Equal Protection Clause and the Due Process Clause of the Fourteenth Amendment to the United States Constitution on its face and as applied to all Plaintiffs, including Dr. Richardson and Ms. Weisfeld. U.S. CONST. amend. XIV, § 1.

6.      For these same reasons, Texas' mail-in ballot process also violates Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12131, *et seq*., and the Rehabilitation Act of 1973 (RA), 29 U.S.C. § 794.3, with respect to voters who cannot sign matching or sufficiently similar signatures due to a disability. Defendants' refusal to reasonably accommodate this group of mail-in ballot voters with disabilities—either by allowing them to contest and cure a ballot rejected for signature mismatch or by not applying the signature comparison requirements to their ballots—discriminates against said voters and excludes them from participation in and unfairly denies them the benefits of the mail-in ballot process.

7.      Plaintiffs, therefore, respectfully request this court enter a declaratory judgment invalidating Texas' signature comparison procedure, as laid out in Texas Election Code §§

87.041(b)(2), (e), and (f), for violating the United States Constitution, the ADA, and the RA. Plaintiffs further request a permanent injunction enjoining Defendants from implementing Texas Election Code §§ 87.041(b)(2), (e), and (f) or, in the alternative, requiring that Defendants (1) provide voters meaningful notice prior to the rejection of a mail-in ballot and (2) offer voters the ability to cure a mail-in ballot questioned for an alleged signature mismatch.

## II.
## JURISDICTION AND VENUE

8.      This is a civil and constitutional rights action arising under 42 U.S.C. § 1983, the Fourteenth Amendment to the United States Constitution, Title II of the ADA, and the RA. This Court has jurisdiction over these claims under 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

9.      Venue in this Court is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district, and because Defendant Secretary of State conducts business in this district.

## III.
## PARTIES

### Individual Plaintiffs

10.      Plaintiff Dr. George Richardson is an individual voter who was improperly and unconstitutionally disenfranchised in the 2018 General Election. Dr. Richardson applied for a mail-in ballot for the 2018 General Election in Brazos County due to his eligibility as a voter over 65 years-of-age. After applying for a mail-in ballot, Dr. Richardson properly signed and timely mailed his ballot in compliance with the Texas Election Code. After the election, he received a letter from Brazos County notifying him that his ballot was rejected because of a signature mismatch. Dr. Richardson confronted county election officials who explained that the panel "eye-balls" the signatures, had determined his signature was not actually his, and that their decision was

final. Dr. Richardson is a physician who has signed hundreds of prescriptions every year for 41 years and has never had his signature questioned by a pharmacist. Had Brazos County notified Dr. Richardson during the election that county election officials questioned the signature on his ballot, Dr. Richardson would have confirmed that the signature on his ballot was, in fact, his own. Dr. Richardson wishes, intends, and plans to continue casting a mail-in ballot but, in order to avoid future disenfranchisement, will only do so when the county either stops rejecting mail-in ballots based on an alleged signature mismatch or provides voters, at the very least, a pre-rejection notice and the ability to cure mail-in ballots questioned for an alleged signature mismatch.

11.     Plaintiff Rosalie Weisfeld is an individual voter who was improperly and unconstitutionally disenfranchised in the 2019 McAllen, Texas city run-off election. Ms. Weisfeld applied for a mail-in ballot for the June 22, 2019 McAllen, Texas city run-off election because she had to be out of the county during the early voting period and on Election Day. After applying for a mail-in ballot, Ms. Weisfeld properly signed and timely mailed her ballot in compliance with the Texas Election Code. About ten days after the election, she received a letter from the City of McAllen, mailed to her out-of-town address where she was no longer staying, notifying her that her ballot was rejected because of an alleged signature mismatch. Had the City of McAllen notified Ms. Weisfeld during the election that city election officials questioned the signature on her ballot envelope, Ms. Weisfeld would have confirmed that the signatures on the application and envelope were both, in fact, her own. Ms. Weisfeld votes regularly. To her recollection, Ms. Weisfeld has voted in every primary, city, bond, constitutional, school district, county, runoff, water district, and general election for at least the last 30 years, and she plans to vote in every single upcoming election for which she is eligible to vote. Ms. Weisfeld regularly has professional and family obligations that require her to be out of her county of residence, requiring her to vote by mail on

many occasions in the past, and she intends to vote by mail in the future when such obligations prevent her from voting in person.

<div align="center">Austin Justice Coalition</div>

12.     Plaintiff Austin Justice Coalition (AJC) sues Defendants on its own behalf. AJC is a non-partisan, non-profit organization dedicated to "providing the tools for people of color and people who are marginalized to improve their lives by being the driving force behind their own liberation." As part of this mission, AJC operates #ProjectOrange, a coordinated campaign to enter the Travis County Jail, register eligible voters, and provide support to them in requesting and submitting mail-in ballots. AJC's #ProjectOrange mission is to ensure that eligible voters—those who have not been finally convicted of a felony or, if they have been convicted of a felony in the past, are "off paper"—are able to vote, despite their present confinement in county jails.

13.     Among other services, AJC, through its staff and volunteers, helps inmate voters fill out the mail-in ballot application section by section and instructs each inmate voter to write out their signature neatly. AJC works with the Travis County Jail and the Travis County Elections Department to ensure applications are received on time by the Elections Department, mail-in ballots are received by the inmate voters, and completed mail-in ballots are received by the Elections Department on time. While inmate voters fill their mail-in ballots, AJC, through its staff and volunteers, instructs each inmate voter to neatly write out the signature across the flap of the carrier envelope.

14.     AJC's mission is significantly frustrated by the current state laws and policies that result in the improper rejection of incarcerated voters' mail-in ballots. Because of Defendants' unlawful signature comparison procedure, each signed ballot improperly and arbitrarily rejected for an alleged signature mismatch undermines the efficacy of AJC's #ProjectOrange campaign.

<div align="center">6</div>

Moreover, AJC must expend additional resources, such as staff and volunteer time and resources instructing inmate voters to write out signatures neatly, when providing support to inmate voters with mail-in ballot applications and mail-in ballots due to the risk of arbitrary and unconstitutional rejection based on an alleged signature mismatch. The resources diverted for these purposes are transferred away from AJC's other voting-related activities.

<u>Coalition of Texans with Disabilities</u>

15.     Plaintiff Coalition of Texans with Disabilities (CTD) sues Defendants on its own behalf and on behalf of its members who use the mail-in ballot process based on their eligibility due to disability. These members are qualified individuals with a disability for purposes of the ADA and the RA.

16.     The interests at stake in this lawsuit are germane to CTD's purpose. CTD is a non-partisan, non-profit membership organization that works to ensure that people with disabilities may "live, work, learn, play, and participate fully in the community of their choice." CTD organizes events on subjects such as accessible voting, civil rights, and new state level initiatives with the potential to affect the disability community.

17.     CTD expends resources by informing voters statewide about their ability to cast a mail-in ballot, explains the rules and deadlines related to mail-in ballots, and encourages voters who are eligible to utilize mail-in ballots if they cannot vote in-person.

18.     CTD's mission is significantly frustrated by the current state laws and policies that result in the improper rejection of disabled voters' mail-in ballots. Many of the people CTD serves are especially likely to have variations in their signatures from one writing to the next, due to a disability. Because of Defendants' unlawful signature comparison procedure, each signed ballot improperly and arbitrarily rejected for an alleged signature mismatch undermines the efficacy of

CTD's mail-in ballot work. Moreover, CTD must expend additional resources, such as staff and volunteer time and resources instructing voters to write out signatures neatly, when educating voters on completing mail-in ballot applications and mail-in ballots due to the risk of arbitrary and unconstitutional rejection based on an alleged signature mismatch. The resources diverted for these purposes are transferred away from CTD's other voting-related activities.

19. Neither the claims asserted nor the relief requested by CTD require the participation of its individual members who regularly vote by mail. Plaintiffs seek only equitable relief which does not require any individualized inquiry into damages sustained by any member.

<u>MOVE Texas Civic Fund</u>

20. Plaintiff MOVE Texas Civic Fund (MOVE) sues Defendants on its own behalf. MOVE's principal place of business is in San Antonio, Texas. MOVE is a non-partisan, non-profit, and grassroots organization "building power in underrepresented youth communities through civic education, leadership development, and issue advocacy." "MOVE" stands for "Mobilize. Organize. Vote. Empower." Since its inception, MOVE has worked to expand voter registration and equal access to voting. MOVE actively works to register eligible young people to vote and ensure that they cast a ballot that actually counts. In doing so, MOVE operates on 32 college campuses around the State of Texas, with 14 of those in the San Antonio area, and registers thousands of students to vote every year.

21. Because college students are often absent from their counties of residence while attending school, MOVE provides support to students in applying for mail-in ballots when appropriate and follows up with them to ensure they have mailed their ballots in a timely manner. MOVE works with three distinct groups of students in relation to mail-in ballots: (1) eligible students who attend schools outside of Texas and away from their county of residence; (2) eligible

8

students who attend a Texas school outside of their county of residence; and (3) eligible students who attend a Texas school and consider their address at or nearby school as their residence, but are nevertheless away from school during an election for summer work, holidays, or another conflict.

22.     Depending on the election, MOVE expends resources to educate students about mail-in ballots, encourage eligible student voters to use mail-in ballots, and provide support to eligible student voters utilizing such ballots.

23.     MOVE's mission is significantly frustrated by the current state laws and policies that result in the improper rejection of youth voters' mail-in ballots. Because of Defendants' unlawful signature comparison procedure, each signed ballot improperly and arbitrarily rejected for an alleged signature mismatch undermines the efficacy of MOVE's mail-in ballot work. Moreover, MOVE must expend additional resources when providing support to voters with mail-in ballot applications and mail-in ballots due to the risk of arbitrary and unconstitutional rejection based on an alleged signature mismatch. MOVE sends messages through social media posts and paid texts to make sure that individual voters are following through with their mail-in ballot plans, and specifically warns voters, since the signature comparison procedure is strict and arbitrary, to sign mail-in ballots as clearly and legibly as possible to avoid improper rejection. The resources diverted for these purposes are transferred away from MOVE's in-person voting and voter registration activities.

<u>League of Women Voters of Texas</u>

24.     Plaintiff League of Women Voters of Texas (LWV) sues Defendants on its own behalf and on behalf of its members who use the mail-in ballot process. The interests at stake in this lawsuit are germane to LWV's purpose. LWV is a non-partisan, non-profit member

9

organization dedicated to empowering voters and defending democracy. LWV "strives for a democracy where every person has the desire, the right, the knowledge[,] and the confidence to participate in the democratic process." LWV actively works to register eligible people to vote and ensure that they actually cast a ballot that counts. In doing so, LWV operates across Texas, registering thousands every year.

25.     LWV expends resources to educate Texans about mail-in ballots, encourage eligible voters to use mail-in ballots, and provide support to eligible voters utilizing such ballots. LWV also prepares training materials for its members and local-area League of Women Voters organizations to use to educate and provide support to voters with the mail-in ballot process.

26.     LWV's mission is significantly frustrated by the current state laws and policies that result in the improper rejection of voters' mail-in ballots. Because of Defendants' unlawful signature comparison procedure, each signed ballot improperly and arbitrarily rejected for an alleged signature mismatch undermines the efficacy of LWV's work. Moreover, LWV must expend additional resources when providing support to voters with mail-in ballot applications and mail-in ballots due to the risk of arbitrary and unconstitutional rejection based on an alleged signature mismatch. Specifically, LWV must expend additional staff and volunteer time and resources instructing voters to write out signatures neatly through LWV's website, and LWV must expend additional staff and volunteer time and resources instructing voters to write out signatures neatly and have the signatures match each other as much as possible in PowerPoint presentations and scripts prepared for its members and local-area League of Women Voters organizations to use when educating and providing support to mail-in ballot voters. The resources diverted for these purposes are transferred away from LWV's other voting-related activities.

27.     Neither the claims asserted nor the relief requested by LWV require the participation of its individual members who regularly vote by mail. Plaintiffs seek only equitable relief which does not require any individualized inquiry into damages sustained by any member.

<u>American GI Forum of Texas, Inc.</u>

28.     Plaintiff American GI Forum of Texas, Inc. (AGIF) sues Defendants on its own behalf and on behalf of its members who use the mail-in ballot process. A significant portion of AGIF's members are eligible to vote by mail because they are: (1) classified as Disabled Veterans by the Department of Veterans Affairs; (2) military retirees 65 years-of-age or older; and/or (3) active duty service members and their families who are often stationed away from their county of residence in Texas.

29.     The interests at stake in this lawsuit are germane to AGIF's purpose. AGIF is a non-partisan, non-profit, Family Veterans, and member organization dedicated to addressing problems of discrimination and inequities endured by veterans and the communities in which they operate. AGIF requires at least 75% of its members be veterans. AGIF works to "enforce, defend, and protect the civil and human rights, [including voting rights,] of Hispanics, women, and other minorities, and to ensure equal opportunities as mandated by federal and state laws." AGIF and its constituent chapters across the state expend resources to register eligible Texas veterans, servicemembers, and their families to vote and to ensure that they actually cast a ballot that counts.

30.     The improper rejection of mail-in ballots frustrates AGIF and its chapters' mission of expanding voter registration and increasing voter turnout among AGIF's membership and the communities it serves, which is essential to advancing and leveraging its influence to advance policy change that benefits veterans, their families, and their communities. Texas' signature comparison procedure decreases overall confidence in the mail-in ballot process, and elections,

generally, which directly undermines the efforts AGIF and its chapters take to encourage eligible voters to use mail-in ballots and support those voters in making sure their mail-in ballots are counted.

31.    Neither the claims asserted nor the relief requested by AGIF require the participation of its individual members who regularly vote by mail. Plaintiffs seek only equitable relief which does not require any individualized inquiry into damages sustained by any member.

<div align="center">Defendants</div>

32.    Defendant is the Texas Secretary of State (SOS). The SOS is the Chief Election Officer of the State of Texas. Tex. Elec. Code § 31.001(a). In this role, the SOS is responsible for enforcing elections statutes and routinely issues guidance to the county registrars of all 254 Texas counties on various elections procedures. SOS is a public entity under Title II of the ADA and the RA.

33.    Defendant Trudy Hancock is the Brazos County Elections Administrator (Brazos EA). She is sued in her official capacity. She is sued for the manner in which she implements the policies, customs, or practices at issue in this action. The Brazos EA is a public entity under Title II of the ADA and the RA.

34.    Defendant Perla Lara is the City of McAllen, Texas Secretary (McAllen City Secretary). She is the Chief Elections Official for the City of McAllen. The McAllen City Secretary is responsible for the administration of elections conducted within the City of McAllen, including joint elections with Hidalgo County as well as elections independent of the Hidalgo County. The McAllen City Secretary is sued for the manner in which she implements the policies, customs, or practices at issue in this action. The McAllen City Secretary is a public entity under Title II of the ADA and the RA.

# IV.
# FACTS

## Current Mail-in Ballot Procedures

35.     To vote a mail-in ballot, a voter must first send their county a mail-in ballot application via mail, fax (if available), or e-mail. *Application for a Ballot by Mail*, Texas Secretary of State, https://www.sos.state.tx.us/elections/voter/reqabbm.shtml (last visited June 25, 2019). A voter must submit the mail-in ballot application for a specific election 11 days before Election Day. *Id*. If a voter is voting by mail because the voter is disabled or is 65 years-of-age or older, the voter may use a single application to request mail-in ballots for all county elections in a calendar year. Tex. Elec. Code § 86.0015. While the voter can submit this annual application anytime during the calendar year, it still must be received at least 11 days before the first election in which the voter seeks to request a mail-in ballot. *Id*. § 86.0015(b-1).

36.     In order to successfully vote by mail, the voter must mark the ballot, place it in the official ballot envelope provided by the county, seal the official ballot envelope, place the official ballot envelope in the carrier envelope provided by the county, seal the carrier envelope, and sign the certificate on the carrier envelope. *Id*. § 86.005(a)-(c). Specifically, the carrier envelope certificate requires the voter to "certify that the enclosed ballot expresses [the voter's] wishes independent of any dictation or undue persuasion by any person," and includes a line for the voter's signature across the flap of the envelope. *Id*. § 86.013(c).

37.     Then, the carrier envelope must be returned to the county in a timely manner. *Id*. §§ 86.006(a), 86.013(c). Typically, counties must receive mail-in ballots that are not postmarked or do not have a delivery receipt by 7 p.m. on Election Day. Tex. Elec. Code § 86.007. At the latest, counties must receive mail-in ballots from voters inside the United States with a postmark

13

or delivery receipt dated on or before 7 p.m. on Election Day by 5 p.m. the next business day after Election Day. *Id*. § 86.007(a)(2).[2]

38.     The decision as to whether to reject a mail-in ballot is generally conducted by the Early Voting Ballot Board (EVBB), a statutorily required board established in each county that includes representatives from county parties. *See generally* Tex. Elec. Code § 87.001. The Early Voting Clerk, however, may determine that a Signature Verification Committee (SVC) should be established, in which case the SVC will perform the signature reviews rather than the EVBB. *See generally id*. § 87.027. SVCs are usually established in larger counties, but also appear in many smaller ones. An SVC is also mandatory if the Early Voting Clerk receives a timely petition of at least 15 registered voters requesting such a committee. *Id*. § 87.027(a-1).

39.     An SVC is composed of at least five members and, "[i]n an election in which party alignment is indicated on the ballot," must include at least two members designated by each county party on the ballot in equal numbers. *Id*. § 87.027(d). The chair of the SVC is appointed from a list provided by the party whose nominee for governor received the most votes in the county in the most recent gubernatorial general election. *Id*. The only qualification required to serve on an SVC is that the person be an eligible voter in the district or area for which the election is being held. Tex. Elec. Code § 87.027(e). Pursuant to these rules, SVC's are by law partisan committees of laypersons without any specific expertise or training.

40.     The only statutory guidance for an SVC to follow in performing reviews of mail-in ballots is stated in Tex. Elec. Code § 87.027(i), which provides:

---

[2] Counties must receive from non-military overseas voters mail-in ballots with a postmark or delivery receipt dated on or before 7 p.m. on Election Day no later than the 5th day after Election Day or, if the 5th day after Election Day falls on a Saturday, Sunday, or legal state or national holiday, then the deadline is extended to the next regular business day. *Id*. §§ 86.007(d), (d-1). Counties must receive from military overseas voters mail-in ballots no later than the 6th day after Election Day or, if the 6th day after Election Day falls on a Saturday, Sunday, or legal state or national holiday, then the deadline is extended to the next regular business day. *Carrier Envelope for FPCA Voter*, Texas Secretary of State, https://www.sos.state.tx.us/elections/forms/pol-sub/5-35.pdf (last visited June 25, 2019).

> The signature verification committee shall compare the signature on each carrier
> envelope certificate, except those signed for a voter by a witness, with the signature
> on the voter's ballot application to determine whether the signatures are those of
> the voter. The committee may also compare the signatures with any two or more
> signatures of the voter made within the preceding six years and on file with the
> county clerk or voter registrar to determine whether the signatures are those of the
> voter. Except [where more than one SVC is appointed in the same county], a
> determination under this subsection that the signatures are not those of the voter
> must be made by a majority vote of the committee's membership.

The same procedure is to be followed by the EVBB if an SVC is not appointed in a particular

county. Tex. Elec. Code § 87.027(j).

41.    The Election Code does not establish any standards or guidance that must be used

for actually determining if a signature is that of the voter, nor has SOS or any other entity used

rule-making authority to create such standards. Accordingly, each county (and even each

committee if multiple SVC panels are created) necessarily develops its own idiosyncratic,

arbitrary, and ad hoc procedure to determine that a ballot should be rejected. *See* Tex. Elec. Code

§ 87.041(b)(2) (requiring rejection). These standards will necessarily vary from county to county,

panel to panel, and even from meeting to meeting or ballot to ballot within the same committee

panel.

42.    The above signature verification procedure is not and cannot be performed

anonymously. In other words, members of the EVBB or SVC necessarily know which voter's

ballot they are considering prior to determining if it should be accepted or rejected.

43.    All decisions of the committee are final; if a voter's ballot is rejected, that voter has

no recourse or process to challenge the panel's determination that the voter's ballot was signed by

someone other than the voter.

44.    Additionally, the board is not required to send notice of rejection to the voter until

10 days after an election, regardless of how early it makes the decision to reject the ballot. *Id.*

§ 87.0431(a). These voters are not provided any kind of notice of their ballot's rejection, nor sufficient time to seek judicial relief, such as that sought in this Complaint, prior to the final votes in the election-at-issue being counted.

45. Mail-in ballot procedures exclusively affect groups of people who are explicitly eligible by statute to apply for a ballot by mail, including: (1) disabled persons, (2) persons 65 years-of-age or older, (3) persons detained in state jails but otherwise eligible to vote, and (4) persons who will be out of their county of residence during the entire early voting period and on Election Day (a group with significant representation from active-duty military members and college students attending school away from their county of residence). *See* Tex. Elec. Code §§ 82.001–82.004.

46. The groups that are eligible to vote by mail are also the same groups, in many cases, that are most likely to have signature variations that could cause an improper rejection—especially the elderly, disabled, and persons who speak English as a second language.

47. A voter whose ballot is rejected is not given any notice of their rejection prior to the rejection, any opportunity to cure their ballot, or any ability to contest the decision of the EVBB or SVC since counties have until 10 days after Election Day to notify the voter of a rejected mail-in ballot. Tex. Elec. Code § 87.0431(a).

<div align="center">Reasons Signatures Often Do Not Match</div>

48. A person's signature may vary for a variety of reasons, both intentional and unintentional. Unintentional factors that can affect a person's handwriting include medical and/or physical factors such as growing old, illness, injury, symptoms from taking certain medicine, change in eyesight, and consuming alcohol and/or drugs; mechanical factors such as pen type, ink, signing surface, signing position, and paper quality; and psychological factors such as distress,

anger, fear, depression, happiness, and nervousness. *Democratic Executive Committee of Florida v. Lee*, 915 F.3d 1312, 1320 (11th Cir. 2019); *Saucedo v. Gardner*, 335 F. Supp. 3d 202, 212 (D.N.H. 2018). Moreover, a person's handwriting naturally changes over time. Variances between signatures are more prevalent in people who are elderly, disabled, under extreme stress, or who speak English as a second language. *Saucedo*, 335 F. Supp. 3d at 212.

49.     For the most part, signature variations are of little consequence in a person's life. But in the context of voting by mail, these variations become profoundly consequential under Texas' signature comparison procedure, as they may result in the improper disenfranchisement of eligible voters. Elderly and disabled voters, two groups of voters expressly permitted to use the mail-in ballot process, are especially likely to have signature variations.

<div align="center">Texas' Alleged Signature-Matching Process Is Severely Flawed</div>

50.     As a procedure to verify identity, signature comparison is extremely unreliable. Members of EVBBs and SVCs are not handwriting experts, nor do they receive any training to assist in determining if two signatures were made by the same person. On its face, the signature comparison procedure for mail-in ballots gives no guidance on the questions that inevitably arise during signature comparison evaluations, including what stylistic variations suggest that two signatures were made by different individuals, and what threshold number of variations is required to conclude that the signature on the mail-in ballot carrier envelope, the mail-in ballot application, or previous documents is executed by a person other than the voter.

51.     Moreover, EVBBs and SVCs are required by the Texas Election Code to consider signatures in a vacuum, without regard to any other pertinent information that may be available.

<div align="center">17</div>

## V.
## CAUSES OF ACTION
### COUNT ONE
**Violation of the Due Process Clause of the Fourteenth Amendment for Failure to Provide Pre-Rejection Notice and Opportunity to Cure**

52.     Plaintiffs re-allege and incorporate by reference the allegations contained in the preceding paragraphs.

53.     Section 1 of the Fourteenth Amendment to the United States Constitution prohibits states from depriving "any person of . . . liberty . . . without due process of law." U.S. CONST. amend. XIV, § 1.

54.     Defendants may not deprive mail-in ballot voters of procedural due process because each voter's fundamental right to vote is implicated when using a mail-in ballot.

55.     Counties throughout Texas have rejected and continue to reject thousands of mail-in ballots solely based on an error-prone and flawed signature comparison exercise conducted by election officials who are not trained in signature verification, resulting in the erroneous deprivation of the right to vote.

56.     Defendants have not established a procedure for providing voters whose mail-in ballots are rejected because of an alleged signature mismatch pre-rejection notice, an opportunity to be heard, or the ability to cure.

57.     By mandating the unilateral and non-reviewable rejection of mail-in ballots due to an alleged signature mismatch without according pre-rejection notice, an opportunity to be heard, and an ability to cure, Texas' scheme as outlined in Texas Election Code §§ 87.041(b)(2) and (d), both on its face and as it is applied, violates the Due Process Clause of the Fourteenth Amendment. Defendants deprived and continue to deprive Texas voters, including Mr. Richardson and Ms. Rosalie, voters provided support by organizational Plaintiffs, and voters who are members of

associational Plaintiffs, of adequate procedural due process to protect their fundamental right to vote.

58.     Providing a voter whose mail-in ballot has been questioned for an alleged signature mismatch a pre-rejection notice, an opportunity to be heard, and the ability to cure their ballot would avoid disenfranchisement and, thereby, protect the voter from the outright denial of their fundamental right to vote.

59.     Notice, an opportunity to be heard, and the ability to cure a ballot are already provided to voters in comparable circumstances. In-person voters whose ballots cannot be counted on Election Day due to lack of identity verification can provide photo identification confirming their identity within six days of Election Day to have their ballot counted. Tex. Elec. Code § 65.0541. It would not be burdensome to apply similar procedures to mail-in ballot voters with allegedly mismatched signatures.

60.     The fundamental right to vote is at stake, and the risk that even one person will be denied the right to cast a mail-in ballot outweighs any justification Defendants may put forward for depriving all mail-in ballot voters the same notice, opportunity to be heard, and ability to cure that is already provided to voters in comparable circumstances.

61.     This challenge is both facial and as-applied to the Plaintiffs in this case.

**COUNT TWO**
**Violations of the Equal Protection Clause of the Fourteenth Amendment Due to Severe Burden on Voters Not Justified by Legitimate Government Interest**

62.     Plaintiffs re-allege and incorporate by reference the allegations contained in the preceding paragraphs.

63.     The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution prohibits states from "deny[ing] to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1.

64.     Under the First Amendment and Equal Protection Clause of the Fourteenth Amendment, a state cannot utilize election practices that unduly burden the fundamental right to vote. *See Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983); *Burdick v. Takushi*, 504 U.S. 428, 434 (1992).

65.     A court considering a challenge to a state election law must carefully balance the character and magnitude of the injury to the First and Fourteenth Amendment rights that Plaintiffs seek to vindicate against the justifications put forward by Defendants for the burdens imposed by the rule. *See Anderson*, 460 U.S. 780, 789 (1983); *Burdick*, 504 U.S. 428, 434 (1992). A challenged regulation that imposes a severe burden on the right to vote must be narrowly tailored to advance a compelling state interest. *See Burdick*, 504 U.S. at 434.

66.     Defendants cannot burden the exercise of the right to vote by applying election law, policies, and practices in an arbitrary or inconsistent manner.

67.     By implementing a signature matching procedure, Defendants treat mail-in ballot voters differently than in-person voters. Tex. Elec. Code § 87.041(b)(2), (d).

68.     By implementing a signature matching procedure, Defendants treat differently than other mail-in ballot voters the members of CTD who are mail-in ballot voters and, due to their disability, cannot make their signatures match. Tex. Elec. Code § 87.041(b)(2), (d).

69.     Texas Election Code Sections 87.041(b)(2) and (d), by mandating the unilateral, arbitrary, and ad hoc rejection of mail-in ballots due to an alleged signature mismatch, disenfranchise mail-in ballot voters, a burden that is undoubtedly severe, especially when such

voters are given no pre-rejection notice or opportunity to resolve the mismatch or otherwise confirm their identity.

70.     Rejecting thousands of mail-in ballots based solely on an error-prone signature comparison procedure conducted by election officials who are not trained in signature verification and failing to provide mail-in ballot voters any opportunity to contest or cure signature mismatch determinations is neither reasonable nor narrowly tailored to serve any compelling and legitimate state interest, particularly since Defendants already otherwise verify a mail-in ballot voter's eligibility to cast a ballot and especially because Defendants provide voters in comparable circumstances an opportunity to be heard and ability to cure ballots.

### COUNT THREE
**Violation of Equal Protection Clause of the Fourteenth Amendment Due to Failure to Provide any Uniform Guidelines or Principles for Counties to Compare Signatures**

71.     An electoral procedure becomes problematic "in the absence of specific standards to ensure its equal application." *Bush v. Gore*, 531 U.S. 98, 106 (2000). Such procedures are immediately suspect if "the standards for accepting or rejecting contested ballots might vary not only from county to county but [even] within a single county." *Id*. State and local governments have an "obligation to avoid arbitrary and disparate treatment of the members of [their] electorate." *Id.* at 105. Failure to establish procedures to ensure equal application of such rules renders them unconstitutional under the Fourteenth Amendment's Equal Protection Clause. *Id*. at 111.

72.     Texas has not promulgated any procedures to assist individual counties or the EVBB or SVCs within those counties in evaluating signatures on mail-in ballots, thereby creating an arbitrary system for evaluation in which committees of laypersons "eye-ball" signatures and evaluate them based on their own ad hoc standards.

Case 5:19-cv-00963   Document 94   Filed 08/07/19   Page 22 of 26

73.     The procedures for evaluating signatures for mail-in ballots in Texas therefore vary from county to county, from SVC to SVC in counties with multiple committees, and even from meeting to meeting and ballot to ballot.

74.     Accordingly, Texas' procedures for evaluating mail-in ballot signature matches violate the Equal Protection Clause for their failure to provide specific standards to ensure their equal application.

<div align="center">

**COUNT FOUR**
**Violation of Title II of the Americans with Disabilities Act and the Rehabilitation Act of 1973**

</div>

75.     In addition to the previous claims, Plaintiff CTD brings the following specific claims against Defendants under Title II of the ADA and the RA. The rights and remedies under the ADA and the RA are almost entirely duplicative.

76.     "No qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132; 28 C.F.R. § 35.149.

77.     "No [person] shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subject to discrimination under any program or activity receiving federal funding assistance." 29 U.S.C. § 794(a); 45 C.F.R. § 1232.4(a).

78.     Defendant SOS, as a state agency, and Defendants Brazos EA and McAllen City Secretary, as other political subdivision agencies, are public entities pursuant to 42 U.S.C. § 12131(1)(a) and (b), 45 C.F.R. § 1232.3(d), and 29 U.S.C. § 794. The administration of elections and voting, including mail-in ballot voting and the counting of votes, is a service, program, or activity provided by Defendants SOS, Brazos EA, and McAllen City Secretary.

<div align="center">22</div>

79.     Defendants are recipients of federal funds. 29 U.S.C. § 794.

80.     For purposes of the ADA and the RA, CTD has members who are qualified individuals with physical and/or mental impairments that substantially limit one or more of their major life activities, including but not limited to performing manual tasks such as seeing, lifting, bending, concentrating, communicating, and/or working. 42 U.S.C. § 12102(1), (2); 45 C.F.R. § 1232.3(h).

81.     CTD has members who are disabled and meet the essential eligibility requirements for the receipt of mail-in ballot services and to participate in the mail-in ballot process provided by Defendant SOS through existing statutes, regulations, and guidance and by the Defendants Brazos EA and McAllen City Secretary through their administration of the mail-in ballot process. Thus, CTD has members who are qualified individuals with a disability entitled to the protections of the ADA and the RA in accessing Texas' service, program, or activity of mail-in ballots.

82.     Members of CTD who use the mail-in ballot process and, due to their disability, cannot make their signatures match, risk disenfranchisement. By reason of such disability, the members at issue have suffered and/or risk future exclusion from participation in and denial of the benefits of the services, programs, or activities of Defendants, and are subjected to discrimination by Defendants. By failing to meet their obligation to provide voters who are disabled, cannot vote in person, and, due to their disability, cannot sign matching signatures an opportunity to vote that is equal and equally effective as that opportunity provided to others, Defendants are in violation of the ADA and the RA.

83.     The lack of reasonable accommodations—such as creating standards for comparing signatures on mail-in ballots and providing the opportunity to contest and cure a challenged mail-in ballot, or barring counties from rejecting mail-in ballots for signature mismatch or any mail-in

ballots submitted by persons with disabilities for signature mismatch—means that the CTD members at issue are excluded from participation in and denied the benefits of the services, programs, or activities of Defendants, and subjected to discrimination by Defendants. Requiring Defendants to provide these reasonable accommodations would not constitute an undue financial or administrative burden.

## PRAYER FOR RELIEF

WHEREFORE, considering the law and facts alleged herein, Plaintiffs pray the Court grant the following relief:

1. That the Court enter declaratory judgment that the State of Texas' statutory scheme requiring the rejection of mail-in ballots with alleged signature mismatches, specifically set out in Texas Election Code §§ 87.041(b)(2), (e), and (f), is unconstitutional and violates the ADA and the RA;

2. That the Court permanently enjoin the State of Texas, the Texas Secretary of State, the Brazos County Elections Administrator, the City of McAllen, Texas Secretary, the 254 county agencies administering elections, and all other political subdivisions administering elections from rejecting any mail-in ballot for signature mismatch reasons, or, in the alternative, require the State of Texas, the Texas Secretary of State, the Brazos County Elections Administrator, the City of McAllen, Texas Secretary, the 254 county agencies administering elections, and all other political subdivisions administering elections to (a) provide voters meaningful notice prior to the rejection of a mail-in ballot based on an alleged signature mismatch and (b) offer voters the ability to cure a mail-in ballot questioned for an alleged signature mismatch.

3. That Plaintiffs be awarded attorneys' fees under 42 U.S.C. § 1988 and 29 U.S.C. § 794a;

4. That all costs of this action be taxed against Defendants; and

5. That the Court award any additional or alternative relief as may be deemed appropriate under the circumstances.

Respectfully submitted this 7th day of August, 2019.


By:   *Hani Mirza*

**TEXAS CIVIL RIGHTS PROJECT**

Mimi M.D. Marziani
Texas Bar No. 24091906
mimi@texascivilrightsproject.org
Rebecca Harrison Stevens
Texas Bar No. 24065381
beth@texascivilrightsproject.org
Hani Mirza
Texas Bar No. 24083512
hani@texascivilrightsproject.org
Ryan V. Cox
Texas Bar No. 24074087
ryan@texascivilrightsproject.org
Zachary D. Dolling
Texas Bar No. 24105809
zachary@texascivilrightsproject.org

1405 Montopolis Drive
Austin, Texas 78741
512-474-5073 (Telephone)
512-474-0726 (Facsimile)

**WILLKIE FARR & GALLAGHER LLP**

Richard Mancino (NY Bar No. 1852797)
(*pro hac vice* forthcoming)
P. Maxwell Griffith (NY Bar No. 5323209)
(*pro hac vice* forthcoming)

787 Seventh Avenue
New York, New York 10019
Telephone:  (212) 728-8000
Facsimile:  (212) 728-8111
Email: rmancino@willkie.com
          mgriffith@willkie.com

-AND-

Jennifer J. Hardy (TX Bar No. 24096068)
(*pro hac vice* forthcoming)
Denis A. Fallon (TX Bar No. 24059731)
(*pro hac vice* forthcoming)
Garrett Johnston (TX Bar No. 24087812)
(*pro hac vice* forthcoming)
Audra White (TX Bar No. 24098608)
(*pro hac vice* forthcoming)

600 Travis Street, Suite 2100
Houston, Texas 77002
Telephone: (713) 510-1700
Facsimile: (713) 510-1799
Email: jhardy2@willkie.com
          afallon@willkie.com
          gjohnston@willkie.com
          awhite@willkie.com

**_COUNSEL FOR PLAINTIFFS_**

26

JS 44 (Rev 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
See Attached

**DEFENDANTS**
See Attached

**(b)** County of Residence of First Listed Plaintiff    Brazos
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
See Attached

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U S Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U S Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | Slander | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 340 Marine | Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 870 Taxes (U S Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☒ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Fourteenth Amendment to U.S. Constitution, Title II of ADA, and RA of 1973
Brief description of cause:
Violation of voting rights

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____ DOCKET NUMBER _____

DATE   08/07/2019

SIGNATURE OF ATTORNEY OF RECORD   /s/ Hani Mirza

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG JUDGE _____

## I. (a) Plaintiffs

Richardson, George; Weisfeld, Rosalie; Austin Justice Coalition; Coalition of Texans with Disabilities; MOVE Texas Civic Fund; League of Women Voters of Texas; American GI Forum of Texas, Inc

## I. (c) Plaintiffs' Counsel

Mimi M.D. Marziani
Texas Bar No. 24091906
Rebecca Harrison Stevens
Texas Bar No. 24065381
Hani Mirza
Texas Bar No. 24083512
Ryan V. Cox
Texas Bar No. 24074087
Zachary D. Dolling
Texas Bar No. 24105809
Texas Civil Rights Project
1405 Montopolis Drive
Austin, Texas 78741
512-474-5073 (Telephone)
512-474-0726 (Facsimile)
mimi@texascivilrightsproject.org
beth@texascivilrightsproject.org
hani@texascivilrightsproject.org
ryan@texascivilrightsproject.org
zachary@texascivilrightsproject.org

Richard Mancino (NY Bar No. 1852797)**
P. Maxwell Griffith (NY Bar No. 5323209)**
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, New York 10019
Telephone:  (212) 728-8000
Facsimile:  (212) 728-8111
rmancino@willkie.com
mgriffith@willkie.com

-AND-

Jennifer J. Hardy (TX Bar No. 24096068)**
Denis A. Fallon (TX Bar No. 24059731)**
Garrett Johnston (TX Bar No. 24087812)**
Audra White (TX Bar No. 24098608)**
Willkie Farr & Gallagher LLP
600 Travis Street, Suite 2100

Houston, Texas 77002
Telephone: (713) 510-1700
Facsimile: (713) 510-1799
jhardy2@willkie.com
afallon@willkie.com
gjohnston@willkie.com
awhite@willkie.com

ATTORNEYS FOR PLAINTIFFS
** Pro hac vice application forthcoming

**I. (a) Defendants**

CURRENTLY VACANT, Texas Secretary of State;

TRUDY HANCOCK, Brazos County Elections Administrator,
in her official capacity;

PERLA LARA, City Secretary for City of McAllen,
in her official capacity.

Document Filed Under Seal



John Wingert <john@movetexas.org>

---

## Fwd: Democracy Done Right Updates Requested by Tuesday at noon ET (for a funder)

**John Wingert** <john@movetexas.org>                                          Mon, Sep 9, 2019 at 2:15 PM
To: Alex Birnel <alex@movetexas.org>
Cc: Drew Galloway <drew@movetexas.org>

Here's an updated and expanded draft Alex and I have worked on:



Hey Sarah,

I'd be happy to share some updates with you on our work regarding voting rights.

A major win for MOVE last year was securing the polling place at Texas State University, which serves over 38,000 students. After lines lingered for three hours during early voting last November at the Texas State polling location, county officials were going to shut the polling place down halfway through Early Voting. MOVE threatened to sue the county, and they kept the polling location there for the rest of Early Voting and for Election Day, which allowed thousands more students to cast their ballot.

One of the major areas of focus for MOVE this year was our work in the Texas legislature against Senate Bill 9. The anti-voter bill would have criminalized innocent voting mistakes, increased barriers for elderly and disabled voters, allowed poll workers to look over the shoulder of those needing English language assistance, and added burdensome paperwork at every step of the voting process. MOVE with the help of our coalition partners organized protests, worked with legislators, and packed out hearing rooms to put the brakes on this terrible bill.

There was a great moment when MOVE's Advocacy Manager, Alex Birnel, said SB 9 would have been "creating another step in the process to cast a ballot that tired and busy people may not take. As a disabled voter, I know what it means to be tired, and as an advocate for voting rights, I know what it means to be busy. We need to make it easier not harder. Making it easier is MOVE's goal. Making it harder for everyone seems to be SB 9's goal . . . As someone who uses crutches, I think I know a crutch when I see one."

Due to our activism, this bill was slowed so much that it did not pass in the legislature. However, MOVE and our partners did not stop there. We have continued to use that energy and passion for voter inclusion to create a slate of local reforms. Our Democracy From the Ground Up campaign will target urban counties in Texas to adopt policies like polling locations on campuses with over 8,000 students for Early Voting and Election Day, making voter registrar training available in more languages and online, creating a civic engagement board of advisors requiring youth representation, as well as enforcing high school voter registration laws. We are really excited about these reforms and plan to see implementation across Dallas, Houston, and San Antonio before the end of the year.

We have also produced a campaign toolkit enabling people across all 254 counties of Texas to push for these reforms in their community with their county commissioners. Our goal is to activate 5,000 new voting rights advocates to take action either through testifying, protesting, blockwalking, phonebanking, or social media posting which will create pressure to pass these reforms and strengthen our democracy.

MOVE-00000519

This week, MOVE team members will also be speaking at redistricting hearings in Austin and San Antonio to make clear the impact of proposed district lines on college campuses. We know that the way these lines are drawn would deliberately put students in noncompetitive districts to dilute the power of their vote. MOVE Texas is not staying quiet about these attacks.

If you have any questions about the examples I've included here of MOVE's Democracy Done Right work, just reach out for clarification. Thanks for letting me know about this update from the Democracy Fund!

**John Wingert** *(he/him/his)*
Development Manager | MOVE Texas
1023 North Pine Street, San Antonio, TX 78202
john@movetexas.org | (314) 448-2687



On Fri, Sep 6, 2019 at 12:15 PM Alex Birnel <alex@movetexas.org> wrote:
John - I'll slack you regarding this.

Best,
Alex

On Fri, Sep 6, 2019 at 12:02 PM Drew Galloway <drew@movetexas.org> wrote:
Can you add more details about DFGU? Like some of the suggested initiatives?

Looping in Alex here in case he has any other ideas.

Once that is done and Alex is satisfied, you can send directly to Sarah and cc me. Thanks John!

Drew

On Fri, Sep 6, 2019 at 11:37 AM John Wingert <john@movetexas.org> wrote:
Below is a draft email you could send to Sarah, or if you'd rather I can send it myself. Just let me know.

Hey Sarah,

I'd be happy to share some updates with you on our work regarding voting rights.

A major win for MOVE last year was securing the polling place at Texas State University, which serves over 38,000 students. After lines lingered for three hours during early voting last November at the Texas State polling location, county officials were going to shut the polling place down halfway through Early Voting. MOVE threatened to sue the county, and they kept the polling location there for the rest of Early Voting and for Election Day, which allowed thousands more students to cast their ballot.

One of the major areas of focus for MOVE this year was our work in the Texas legislature against Senate Bill 9. The anti-voter bill would have criminalized innocent voting mistakes, increased barriers for elderly and disabled voters, allowed poll workers to look over the shoulder of those needing English language assistance, and added burdensome paperwork at every step of the voting process. MOVE with the help of our coalition partners organized protests, worked with legislators, and packed out hearing rooms to put the brakes on this terrible bill.

Case 5:19-cv-00963-OLG   Document 84   Filed 07/30/20   Page 2556 of 2561

There was a great moment when MOVE's Advocacy Manager, Alex Birnel, said SB 9 would have been "creating another step in the process to cast a ballot that tired and busy people may not take. As a disabled voter, I know what it means to be tired, and as an advocate for voting rights, I know what it means to be busy. We need to make it easier not harder. Making it easier is MOVE's goal. Making it harder for everyone seems to be SB 9's goal . . . As someone who uses crutches, I think I know a crutch when I see one."

Due to our activism, this bill was slowed so much that it did not pass in the legislature. However, MOVE and our partners did not stop there. We have continued to use that energy and passion for voter inclusion to create a slate of local reforms. These will target urban counties in Texas to adopt policies like polling locations on campuses with over 8,000 students for Early Voting and Election Day, making voter registrar training available in more languages and online, as well as enforcing high school voter registration laws. We are really excited about these reforms and plan to see implementation across Dallas, Houston, and San Antonio before the end of the year.

If you have any questions about the examples I've included here of MOVE's Democracy Done Right work, just reach out for clarification. Thanks for letting me know about this update from the Democracy Fund!


**John Wingert** *(he/him/his)*
Development Manager | MOVE Texas
1023 North Pine Street, San Antonio, TX 78202
john@movetexas.org | (314) 448-2687




On Fri, Sep 6, 2019 at 9:47 AM Drew Galloway <drew@movetexas.org> wrote:
Due next Tuesday

---------- Forwarded message ----------
From: **Sarah Audelo** <audelo@allianceforyouthaction.org>
Date: Thu, Sep 5, 2019 at 12:24 PM
Subject: Democracy Done Right Updates Requested by Tuesday at noon ET (for a funder)
To: conclave <conclave@allianceforyouthaction.org>
CC: Gary Decker <gary@allianceforyouthaction.org>, Scarlett Jimenez <scarlett@allianceforyouthaction.org>, Mariella Villacorta <mariella@allianceforyouthaction.org>, Dawn Boudwin <dawn@allianceforyouthaction.org>


Hey hey EDs!

Apologies for the quick response request, but I was just outreached to by Democracy Fund staff about a meeting next Wednesday to catch up.

As many of you know, we have all been chasing their funding for some time, but frequently come up short because historically they have taken an approach that has centered bipartisanship in their funding portfolio. I've heard recently that this approach is no more (YAY) and am even more excited about the prospect of funding as they are flying me out to SF to participate on a panel they're hosting for major donors.

As you can see, I'm very hopeful of finally getting some of these resources. We have a ton of great information about what you all have accomplished this year thus far on Democracy Done Right (thank you and congrats!). We have less information on what's to come. Can folks either reply all or at least to me and my team about what you're working on specifically as it relates to the Democracy Done Right campaign? This could include:

- 2020 state legislative work
- Clerk outreach & engagement

MOVE-00000521

- Litigation (in partnership with friends of course)
- Election protection work
- Getting polling places on campuses & jails/extending polling place hours/etc.
- Implementation work on bills you've helped to pass
- Poll worker recruitment/training
- Language access work
- Absentee ballot work
- Other administrative advocacy

I'm sure I'm missing categories, but you know what I'm basically talking about.

***We need this information by Tuesday, September 10th at noon*** so we can compile it all.

Holler if you have any questions and thank you in advance!

Sarah

--
**H. Drew Galloway**
Executive Director (he/him/his)
MOVE Texas Civic Fund & MOVE Texas Action Fund



E: drew@movetexas.org
P: (210) 396-0845
A: 1023 N Pine St, San Antonio, TX 78202
W: http://movetexas.org

--
**H. Drew Galloway**
Executive Director (he/him/his)
MOVE Texas Civic Fund & MOVE Texas Action Fund



E: drew@movetexas.org
P: (210) 396-0845
A: 1023 N Pine St, San Antonio, TX 78202
W: http://movetexas.org

--
**Alex Birnel**
Advocacy Manager (he/him/his)
MOVE Texas Action Fund



E: alex@movetexas.org
P: 210-422-3223
A: 1023 N Pine St, San Antonio, TX 78202
W: http://movetexas.org

MOVE-00000522



Drew Galloway <drew@movetexas.org>

---

### Fwd: My Ballot was Rejected by the EV Ballot Board / Signature Verification Committee

3 messages

**charliekirk6@gmail.com** <charliekirk6@gmail.com>       Fr
To: drew@movetexas.org

Would this be helpful for the lawsuit?
-cb
Sent from my iPhone

Begin forwarded message:

**Exhibit**
**Hilliard Drew Galloway**

**5**

5/22/2020   MJ

> **From:** Rosalie Weisfeld <rosalieweisfeld@gmail.com>
> **Date:** July 5, 2019 at 1:48:11 AM CDT
> **To:** Charlie Bonner <Charliekirk6@gmail.com>
> **Subject: My Ballot was Rejected by the EV Ballot Board / Signature Verification Committee**

Attachment : Photo of the rejection letter is included below.

I have been saying it for years, "We need to do away with Early Voting Ballot Board Signature Verification Committees", and now it happened to me. As a life long active voter and a former executive director of the Hidalgo County Democratic Party to ensure that every ballot by mail was counted and not rejected by the EV Ballot Board / Signature Verification Committee.

I am so angry on this 4th of July. I just received a letter from the City of McAllen that my ballot by mail was rejected so my vote was not counted in the McAllen City Council Run Off Election 6/22/2019.

Welcome to the USA where your ballot gets rejected without anyone even calling you to verify!!!! Many staff members at City Hall have my cell phone number including the City Secretary, City Attorney, as well as the Mayor, and probably all or at le the City Council members ... and no one even called to check with me.

I voted by mail in the last election as I was in New York for my niece's college graduation and traveling during early voting and on Election Day. I just received this letter stating that my ballot was rejected because it was determined that the signatu application for ballot by mail and the carrier envelope was not signed by the same person. NOT TRUE! I even took a photo of my signature on each application, cover letter and the carrier envelopes. None of them are exactly alike as the signature copies. However they were very, very similar!

I have voted in every election except for one since I registered to vote. Every school board election, every city council election, every primary, every runoff, every constitutional election, every presidential election, every gubernatorial election, ... I a is a real example of why early voting ballot boards should not be making determinations on signature verifications. People who serve on signature verification committees are not experts! I myself have served on many signature verification commit by mail. What happened to me is just plain wrong! My right to vote was stolen by the McAllen City Election Committee-members.

What can I do to ensure that no other citizen ever receives a letter rejecting their ballot to vote because some one else determined that - "It was determined that the signature on the application for ballot by mail and carrier envelope were not signe person."

I am sick to my stomach, physically ill and emotionally distraught. It feels horrible to know that my vote was not counted. I went through so much trouble to vote by mail. It is a tedious and somewhat complex process. It is hard to vote by mail. It wa me to participate. The two candidates got into the Run Off Election by a difference of only 1 vote. If my ballot for the May election had been rejected (it wasn't) there would not have even been a Run Off Election!!!

At the very least someone on the Board should be required to call a voter to ask the voter themself if the Board thinks their is a discrepancy in signatures. Truly, Signature Verification should not even be allowed by people who are not specialists in analysis!

Anything you can do to help will be most appreciated!

AW5-42
Prescribed by Secretary of State
Sec. 87.0431, Texas Election Code
3/07

## NOTICE OF REJECTED BALLOT

https://mail.google.com/mail/b/AH1rexTbpjqFv1wa8NjBmJqVwqMabrPztQQ87e10MN-R41BvV_qt/u/1?ik=7ee0a4ab67&view=pt&search=all&permthid=thread-f%3A1638224991955041514&simpl=msg-...   1/4

MOVE-00000004

This is to serve as notice that your ballot for the **June 22, 2019** Election was rejected by the early voting ballot board and was not counted.

Name of Voter   Weisfeld, Rosalie

VUID Number   1054678350

Reason for Rejection: (Check As Appropriate)

_____    1)    Certificate on carrier envelope was not properly executed.
- \_\_\_\_\_ You failed to sign your signature or make your mark.
- \_\_\_\_\_ The witness failed to indicate on the envelope that you could not make a mark.
- \_\_\_\_\_ The assistant or witness failed to print their name.
- \_\_\_\_\_ The assistant or witness failed to sign their name.
- \_\_\_\_\_ The residence address of the assistant or witness was not given.

✓    2)    It was determined that the signature on the application for ballot by mail and carrier envelope was not signed by the same person.

_____    3)    Application for ballot by mail did not state a legal ground for voting by mail.

_____    4)    Voter registration records indicated you did not have an effective registration for this election.

_____    5)    Address to which ballot was mailed was not outside the county. Voting early by mail due to expected absence from the county requires balloting materials be mailed to an address outside the county.

_____    6)    The residence address on the statement of residence is not located in the political subdivision conducting the election.

_____    7)    The mailing address on the application for ballot by mail did not match your voter registration address nor did the mailing address match any addresses provided on your statement of residence. Since you did not indicate on your application for a ballot by mail that you were having your ballot mailed to a hospital, retirement center, long term care facility, nursing home, jail, or a relative, your ballot was rejected.

_____    8)    The statement of residence was not included in the carrier envelope.



_____ 9) No identification was included with your mail ballot.

_____ 10) Other:

_____

Signature of Early Voting Ballot Board Judge

**June 22, 2019**

Date             **Weisfeld, Rosalie**

Rosalie Weisfeld
956.793.5814
Rosalieweisfeld@gmail.com
Sent from my iPhone

---

**Drew Galloway** <drew@movetexas.org>          Fri, Jul 5, 2019 at 8:34 AM
To: charliekirk6@gmail.com

Yes, can you send to Ryan and Hani at TCRP? This is such bs. Thanks Charlie!

Drew
[Quoted text hidden]
--
**H. Drew Galloway**
Executive Director (he/him/his)
MOVE Texas Civic Fund & MOVE Texas Action Fund



E: drew@movetexas.org
P: (210) 396-0845
A: 1023 N Pine St, San Antonio, TX 78202
W: http://movetexas.org

---

**charliekirk6@gmail.com** <charliekirk6@gmail.com>          Fri, Jul 5, 2019 at 9:17 AM
To: Drew Galloway <drew@movetexas.org>

Yessir! She posted it on Facebook and i was like WAIT we could do something about this!

Sent from my iPhone

On Jul 5, 2019, at 8:34 AM, Drew Galloway <drew@movetexas.org> wrote:

Yes, can you send to Ryan and Hani at TCRP? This is such bs. Thanks Charlie!

MOVE-00000006

Drew

On Fri, Jul 5, 2019 at 8:24 AM <charliekirk6@gmail.com> wrote:
> Would this be helpful for the lawsuit?
> -cb
> Sent from my iPhone
>
> Begin forwarded message:

> **From:** Rosalie Weisfeld <rosalieweisfeld@gmail.com>
> **Date:** July 5, 2019 at 1:48:11 AM CDT
> **To:** Charlie Bonner <Charliekirk6@gmail.com>
> **Subject: My Ballot was Rejected by the EV Ballot Board / Signature Verification Committee**

> Attachment : Photo of the rejection letter is included below.

> I have been saying it for years, "We need to do away with Early Voting Ballot Board Signature Verification Committees", and now it happened to me. As a life long active voter and a former executive director of the Hidalgo County Democratic Party I fought hard to ensure that every ballot by mail was counted and not rejected by the EV Ballot Board / Signature Verification Committee.

> I am so angry on this 4th of July. I just received a letter from the City of McAllen that my ballot by mail was rejected so my vote was not counted in the McAllen City Council Run Off Election 6/22/2019.

> Welcome to the USA where your ballot gets rejected without anyone even calling you to verify!!!! Many staff members at City Hall have my cell phone number including the City Secretary, City Attorney, as well as the Mayor, and probably all or at least some of the City Council members ... and no one even called to check with me.

> I voted by mail in the last election as I was in New York for my niece's college graduation and traveling during early voting and on Election Day. I just received this letter stating that my ballot was rejected because it was determined that the signature on the application for ballot by mail and the carrier envelope was not signed by the same person. NOT TRUE! I even took a photo of my signature on each application, cover letter and the carrier envelopes. None of them are exactly alike as the signatures are not copies. However they were very, very similar!

> I have voted in every election except for one since I registered to vote. Every school board election, every city council election, every primary, every runoff, every constitutional election, every presidential election, every gubernatorial election, ... I am furious! This is a real example of why early voting ballot boards should not be making determinations on signature verifications. People who serve on signature verification committees are not experts! I myself have served on many signature verification committees for ballots by mail. What happened to me is just plain wrong! My right to vote was stolen by the McAllen City Election Committee-members.

> What can I do to ensure that no other citizen ever receives a letter rejecting their ballot to vote because some one else determined that - "It was determined that the signature on the application for ballot by mail and carrier envelope were not signed by the same person."

> I am sick to my stomach, physically ill and emotionally distraught. It feels horrible to know that my vote was not counted. I went through so much trouble to vote by mail. It is a tedious and somewhat complex process. It is hard to vote by mail. It was important for me to participate. The two candidates got into the Run Off Election by a difference of only 1 vote. If my ballot for the May election had been rejected (it wasn't) there would not have even been a Run Off Election!!!

> At the very least someone on the Board should be required to call a voter to ask the voter themself if the Board thinks their is a discrepancy in signatures. Truly, Signature Verification should not even be allowed by people who are not specialists in handwriting analysis!

> Anything you can do to help will be most appreciated!


> <image1.jpeg>



> Rosalie Weisfeld
> 956.793.5814
> Rosalieweisfeld@gmail.com
> Sent from my iPhone

[Quoted text hidden]