IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| DR. GEORGE RICHARDSON, et al. § | |
| § | |
| *Plaintiffs*, § | |
| § | Civil Case No. 5:19-cv-00963 |
| v. § | |
| § | |
| TEXAS SECRETARY OF STATE, et al., § | |
| § | |
| § | |
| *Defendants*. § | |

**MOTION TO INTERVENE BY
PLAINTIFFS IN FLORES, ET AL. V. HUGHS, ET AL.**

Federico Flores, Jr., Maria Guerrero, and Vicente Guerrero, (collectively "Intervenors" or "*Flores* Plaintiffs") move to intervene in this case, pursuant to Federal Rule of Civil Procedure 24(b) and the first to file rule, based on their claims already brought in *Flores et al. v. Hughs et al.*, No. 7:18-cv-00113 (S.D. Tex. 2018) (the "*Flores* Litigation") (Docket sheet) (**Exhibit 1**). Intervenors have been litigating substantially similar issues against the Secretary of State for over two years in the Southern District of Texas, and have had a substantially similar motion for summary judgment on file for over one year. Their intervention in this lawsuit presently seeks only a temporary stay pursuant to the first-to-file rule pending decision in the *Flores* Litigation.[1]

Counsel for Intervenors has conferred with counsel for the existing Parties regarding this motion. Defendant Perla Lara, in her official capacity as the City Secretary of the City of McAllen, Texas, is unopposed. Counsel for Intervenors e-mailed the Secretary of State's counsel in the Richardson Litigation on August 19, 2020 (the

---

[1] *See* **Exhibit 2 (**Intervenors' Motion for Stay)

date of this filing), and has not received an indication. However, Intervenors' counsel has conferred extensively with the Secretary's counsel in the Flores Litigation and has been assured that the Secretary opposes all opportunities for Intervenors to acquire relief. Consequently, Intervenors consider the Secretary opposed. All other counsel have indicated that they are opposed.

## INTRODUCTION

A prospective party may seek to intervene *as of right* in certain specific circumstances, or may seek *permissive* intervention. Federal Rule of Civil Procedure 24(b) governs permissive intervention, and provides that "[o]n timely motion, the court may permit anyone to intervene who: … (B) has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). Permissive intervention is a matter "wholly discretionary with the [district] court … even though there is a common question of law or fact, or the requirements of Rule 24(b) are otherwise satisfied." *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 470-71 (5th Cir. 1984). However, "[R]ule 24 is to be construed liberally, and doubts resolved in favor of the proposed intervenor." *In re Lease Oil Antitrust Litigation*, 570 F.3d 244, 248 (5th Cir. 2009) (internal citations and punctuation omitted). Intervention is intended to prevent multiple lawsuits when common questions of law or fact are involved. *Deus v. Allstate Ins.*, 15 F.3d 506, 525 (5th Cir. 1994).

## BACKGROUND

### I. The First Filed Lawsuit

Intervenors' lawsuit was initially removed to the Southern District of Texas on April 14, 2018. *Flores* Litigation ECF No. 1 (Exhibit 1). The First Amended Complaint

adding the voter-Plaintiffs was filed November 30, 2018 (*Flores* Litigation ECF No. 1 (Exhibit 1)), and all parties renewed their dispositive motions on November 30, 2018. *Flores* Litigation ECF Nos. 22-24 (Exhibit 1).  The court set a hearing to consider those motions on March 19, 2019.  At the March hearing, the Court declined to rule on the Parties' motions and instead set another hearing and allowed for the Parties to conduct additional discovery.  *Flores* Litigation ECF Nos. 17-19 (Exhibit 1).

All parties filed amended motions on the deadline for dispositive motions on July 29, 2019.  *Flores* Litigation ECF Nos. 65-67 (Exhibit 1).

The *Flores* court once again held a hearing regarding the Parties' motions on October 10, 2019.  *Flores* Litigation ECF No. 80 (Exhibit 1).  During that hearing, the court recognized the weight of federal case law holding that mail-ballot signature-matching regimes like Texas's—lacking an adequate notification and cure procedure that would allow the voter to ensure his or her ballot is counted in the election—violate due process.  The court also recognized the gravity of the underlying right at risk of deprivation by these inadequate procedures: the right to vote.  While the Secretary argued that the ability of the "county election officer" to seek an injunction at his or her discretion under current Election Code § 87.127(a) offered an adequate procedural protection for the voter, the court rejected that argument.  The court recognized—as the *Flores* Plaintiffs had pointed out—that the ability of the "county election officer" (not the voter) to potentially (in his or her discretion) petition a court for the extraordinary remedy of an injunction was an "inadequate" protection, *Flores* Hearing Trans. (Oct. 16, 2019) at 8:24 (**Exhibit 3**), both because there is no guarantee of timely notice under Texas's statutory regime, *id.*, and even if there were, the suggested remedy is not available to the individual voter, i*d.* at 4:10-25 ("The State statute doesn't provide any

personal remedy to you other than maybe somebody might make the Complaint…. [T]here's nothing left to the individual voter.").

Rather than issue an order at that hearing, the court extended an opportunity to the Secretary of State to further digest the case law, strongly suggesting that the Secretary should explore the possibility of reaching a settlement with the [*Flores*] Plaintiffs "to try to fix this for the future and everybody else, including [the *Flores* Plaintiffs]."[2]  The court set a status conference for December 12, which was then canceled (on December 9) and re-set for March 25, 2020.

At the third motions hearing on March 25, 2020, Judge Hinojosa denied the dispositive motions filed by the Secretary and the EVBB Defendants.[3]  While the Court recognized that "all that can be said here is that [Texas Election Code §87.127(a) is] an unconstitutional provision," *Flores* Hearing Trans. (Oct. 16, 2019) at 24:22-25 (Exhibit 3), it did not grant Plaintiffs' motion in favor of further briefing on the appropriate remedy.  *Id.* at 27:21-25; 28:1-3.  At this hearing, Judge Hinojosa indicated that he was not likely to rule prior to the July 2020 runoff elections.

Pursuant to the court's request for further remedy briefing, Plaintiffs filed their *Second Amended Motion for Summary Judgment* on April 1, 2020, describing the precise remedy they propose—a simple cure declaration to be executed by a voter whose ballot has been slated for rejection for signature discrepancy.  *Flores* Litigation ECF No. 94 (Pls.' Sec. Am. Mot. for Summ. J.) (**Exhibit 4**).  Plaintiffs submitted a proposed form cure declaration to the court.  The Secretary and the EVBB Defendants responded to the

---

[2] *Flores* Hearing Trans. (Oct. 16, 2019) at 26:5-9 (Exhibit 3).
[3] While the court granted EVBB's Defendants' motion in part on their claims for qualified immunity, it denied it as to the claims in their official capacity.  *See Flores* Litigation ECF docket entry (Mar. 25, 2020) (Exhibit 1).

4

*Flores* Plaintiffs' Mtn. to Intervene

Flores Plaintiffs' proposed remedy, and briefing on the remedy was completed with the filing of Plaintiffs' reply on April 29, 2020. *Flores* Litigation ECF No. 99 (Exhibit 1).

On May 1, 2020, Starr County Democratic Party ("SCDP") moved to intervene in order to seek an injunction in advance of the July 2020 primary runoff elections. *Flores* Litigation ECF No. 70 (Exhibit 1). SCDP made clear that it was not seeking to add any claims or arguments, but instead expressly adopted the *Flores* Plaintiffs' position and proposed remedy. *Id*. at 6-7. The *Flores* Plaintiffs filed a motion for entry of judgment on June 2, 2020. *Flores* Litigation ECF No. 107. Judge Hinojosa has not yet ruled on SCDP's motion to intervene, but Intervenors anticipate a ruling soon, as the July Runoffs have now been conducted. Intervenors are filing a motion in the *Flores* Litigation this week as well, seeking entry of judgment and, if necessary to provide Judge Hinojosa time to resolve the case, a stay of the litigation of this claim in this court until he issues his judgment.

## II. The Richardson Litigation

Sixteen months after the *Flores* Litigation was filed, a complaint was filed in this Court against the Texas Secretary of State, the Brazos County Elections Administrator, and the McAllen City Secretary. (*Richardson* Litigation ECF No. 1) ("*Richardson* Litigation"). Like the *Flores* Litigation, this lawsuit also challenges the Election Code's signature mismatch provisions as violative of voters' due process rights under the Fourteenth Amendment. *Id*. at 18-24. The *Richardson* Plaintiffs argue that the signature mismatch provisions violate equal protection, the Americans with Disabilities Act, and the Rehabilitation Act of 1973. *Id*. at 21-24

On June 22, the parties filed cross motions for summary judgment. *Richardson* Litigation ECF No. 64-70. In her motion, the Secretary argues that Plaintiffs lack standing because they cannot show associational standing, or cannot show causation and redressability in regards to their claims against the Secretary. *Richardson* Litigation ECF No. 70 at 25-26. The Secretary further argues that, even if the *Richardson* Plaintiffs had standing that under the *Anderson-Burdick* test, the signature mismatch provisions do not impose a severe burden on voters' rights, are supported by an important interest in election integrity, and adequate alternative processes exist in the form of an election contest and Texas Election Code § 87.217(a). *Id*. at 22-27. While the Secretary addresses the *Richardson* Plaintiffs' claims under the Equal Protection Clause and the ADA, this is dispensed of briefly. *Id*. at 28-31.

Likewise, the *Richardson* Plaintiffs' motion for summary judgment places the same due process concerns at the forefront: The fact that "Texas's current election system leaves mail-in voters vulnerable to the outright violation of their fundamental right to vote by forcing their ballots to undergo an arbitrary and error-prone signature comparison procedure that provides no meaningful notice and cure protections." *Richardson* Litigation ECF No. 65 at 1. Principally amongst their claims, the *Richardson* Plaintiffs assert their right to vote is at risk of erroneous deprivation and, as there is no sufficient remedy process, "the Texas Election Code violates the Due Process Clause of the Fourteenth Amendment, the Equal Protection Clause of the Fourteenth Amendment, the ADA, and the RA." *Id*. at 29. Just as was the case in the *Flores* litigation, the *Richardson* Plaintiffs' motion argues that *Mathews* and not *Anderson-Burdick* is the appropriate standard. *Id*.

Despite the *Richardson* Plaintiffs' vast legal resources, it was not until June 22, 2020, that Plaintiffs in this lawsuit filed for summary judgment. *Id*. That is, more than one year after Intervenors' outstanding motion had been filed.

## ARGUMENT

### I. Common Questions of Law or Fact

"The decision to permit intervention under Rule 24(b)(2) requires a threshold determination that the applicant's claim or defense and the main action have a question of law or fact in common." *Newby v. Enron Corp.*, 443 F.3d 416, 421 (5th Cir. 2006) (internal quotations omitted).

This requirement is easily met here. Intervention is sought only to stay identical constitutional claims the Plaintiffs here have asserted against the same principal defendant (the Secretary of State).

The arguments made by the Secretary of State, with regards to voters' due process, have already been disposed of by the *Flores* court when it rejected the Secretary's motion for summary judgment. Relying principally on *Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181 (2008), the Secretary reasserted in her motion for summary judgment here (filed on June 22, 2020) that any burdens on voting rights are not severe because they are no worse than those placed on in person voting. *Richardson* Litigation ECF No. 70, at 25. This is the exact argument made—almost verbatim—by the Secretary in her motion for summary judgment, filed in the *Flores* Litigation on July 29, 2019—an argument already denied by the *Flores* court. *Flores* Litigation ECF No. 65 at 15 (Def. Tex. Sec. of State's First Am. Mot. for Summ. J.) (**Exhibit 5**). The Secretary also relies on the same important interests—"integrity of the election process"—in both cases to justify the burdens placed on voters. *See e.g. Richardson* Litigation ECF No.

70, at 25-26.  Further, despite the fact that the *Flores* court already flatly stated that Texas Election Code § 87.127(a)'s procedure "doesn't even come close, to satisfying the ability to have some procedural due process, *Flores* Hearing Trans. (Oct. 16, 2019) at 5:17-21 (Exhibit 3), the Secretary still relies on this as an "alternate process" in its motion here.  *Richardson* Litigation ECF No. 70 at 27.  The Secretary's due process arguments currently being asserted here have already been rejected by the *Flores* court when it denied her motion for summary judgment and began remedy briefing in the *Flores* litigation.  That briefing has been completed since April 29, 2020.  *Flores* Litigation ECF No. 99 (Exhibit 1).

Because the Intervenors' claims substantially overlap with the litigation, the threshold requirement is met.

**II.   Intervention Is Timely.**

The Fifth Circuit examines timeliness according to four factors:

> (1) the length of time during which the intervenor actually knew or reasonably should have known of his interest in the case; (2) the extent of prejudice to the existing parties to the litigation; (3) the extent of prejudice to the would-be intervenor; and (4) unusual circumstances.

*Adam Joseph Res. v. CNA Metals Ltd.*, 919 F.3d 856, 865 (5th Cir. 2019).  "The requirement of timeliness is not a tool of retribution to punish the tardy would-be intervenor, but rather a guard against prejudicing the original parties by failure to apply sooner[.]  *Id.*  "Federal courts should allow intervention 'where no one would be hurt and greater justice could be attained.'"  *Id.* (quoting *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994)).

The parties in the instant case have just recently briefed their motions and this Court has not yet ruled.  The Secretary makes the same arguments defending the

statutes as she made in the *Flores* Litigation. Intervenors seek to apprise this Court that these arguments have already been filed and rejected by Judge Hinojosa, who denied the Secretary's summary judgment motion and denied the dispositive motion filed by the Starr County Defendants. *See Flores* Litigation ECF docket entry (Mar. 25, 2020) (Exhibit 1).

While Intervenors would be severely prejudiced if denied the ability to seek the appropriate relief already litigated by them, the Parties here will suffer no prejudice if the *Flores* Plaintiffs are allowed to intervene and temporarily stay the instant litigation. If permitted to intervene, Intervenors seek only to stay this Court's determination of the currently outstanding cross-motions for summary judgment *temporarily* until their first-filed claims asserted in their *Second Amended Motion for Summary Judgment* (incorporating evidence and arguments submitted in Docs. 67, 76, and 77) have been adjudicated. *Flores* Litigation ECF No. 94 (Exhibit 4).

### a. Length of time since learning of interest in the action.

The *Richardson* Plaintiffs filed their complaint in August 2019 and subsequently filed their motion for summary judgment on June 22, 2020. While Intervenors were aware of this litigation in early 2020, they also knew that the court of first-filed had already indicated in October 2019 that the challenged laws were unlikely to be upheld and had urged the Secretary of State's office to work with the Intervenors on a resolution. Not only has the Secretary refused to do so, but now it is clear she continues to lodge substantive defenses of the statutes in her recently filed briefs here that have already been rejected by another federal court.

Given the fact that the first-filed suit was filed over a year before the *Richardson* suit, Judge Hinojosa had denied the *Flores* defendants' motions in March, and

requested remedy briefing which was completed in April, the need for intervention here was not apparent until more recently, given the substance of the Secretary's repeated arguments with no mention of the *Flores* Litigation. However, now that the Parties here have filed and briefed dispositive motions, the *Flores* Plaintiffs must protect their interests by intervening into this case in order to secure a stay so that they may reach a judgment in the *Flores* Litigation. Intervenors' constitutional rights have been violated numerous times during elections over the past year, and removing their ability to obtain relief of their own making on account of a later filed suit brought by others would serve to usurp their right to exercise control over the appropriate relief.

### b. Prejudice to existing parties if intervention is allowed.

The relevant prejudice inquiry is whether the existing parties would be prejudiced by the intervenor's *delay* in seeking intervention—if any—"not the inconvenience to the existing parties of allowing the intervenor to participate." *Adam Joseph Resources*, 919 F.3d at 865; *In re Oil Antitrust Litigation*, 570 F.3d at 248 ("Any potential prejudice caused by the intervention itself is irrelevant, because it would have occurred regardless of whether the intervention was timely …. The only proper concern is how much more prejudice would come from Texas's intervening in January 2008 compared to its intervening in March 2006.").

Parties to the instant lawsuit cannot claim prejudice by the proposed intervention of the *Flores* Plaintiffs, given that the Intervenors do not seek to add any argument or otherwise expand the scope of the litigation. Rather, Intervenors seek only a temporary stay of the instant litigation so that their first-filed suit's outstanding motions may be resolved. Once a judgment has been reached, as is imminent, the *Richardson* lawsuit will be free to continue. Further, as Intervenors' suit seeks the same relief as Plaintiffs

Case 5:19-cv-00963-OLG   Document 86   Filed 08/19/20   Page 11 of 14

here and have already overcome the *Flores* Defendants' dispositive motions, Intervenors' stay may actually further the *Richardson* Plaintiffs' interests.

Likewise, the Defendants here are not being asked to litigate additional claims, but merely to allow the first-filed suit to reach its ruling on their motion. Defendants have already been litigating the potential unconstitutionality of the Election Code's mismatch provision and will suffer no additional harm whether the first-filed suit or this lawsuit is decided in favor of the Intervenors or not. Defendants will also suffer no prejudice as the Secretary of State is the principle defendant in both *Richardson* and *Flores* and has had the opportunity to present her arguments in each lawsuit. In fact, despite the second chance the *Richardson* Litigation has presented (after the Secretary's arguments were denied in *Flores*), the Secretary has merely repeated the same arguments. It is in the interest of the Secretary, and certainly of the taxpayers, to avoid duplicative litigation of the same issues.

Because Intervenors propose to intervene simply to temporarily stay these proceedings, no discovery or further actions should be necessary. Once their relief has been acquired or denied, the *Richardson* Plaintiffs and this Court will be able to continue if so required.

For these reasons, this factor weighs exclusively in favor of intervention.

### c. Prejudice to Intervenors if its motion to intervene is denied.

To determine potential prejudice to Intervenors if intervention is denied, the court examines the opportunities Intervenors would have to seek the same relief if it cannot intervene. *In re Lease Oil Antitrust Litigation*, 570 F.3d at 249.

Without intervention and a subsequent stay, Intervenors may lose the ability to exercise control over the cure to signature mismatch provisions despite diligently

11

*Flores* Plaintiffs' Mtn. to Intervene

litigating these provisions for over two years. As the first-filed plaintiffs, the *Flores* Plaintiffs hold a particular and unique interest in acquiring the remedy they have sought.

### d. Unusual circumstances

Sometimes, "unusual circumstances" can weigh in favor of or against the intervention. *See Adam Joseph Resources*, 919 F.3d at 866; *In re Lease Oil Antitrust Litigation*, 570 F.3d at 250. There are several circumstances here that weigh in favor of the intervention.

The first is the public interest in ensuring a sufficient cure process regarding mail ballots slated for rejection for signature issues in upcoming elections, this is especially true given the anticipated uptick in the number of Texas voters who will choose to vote by mail during the coronavirus pandemic. The Intervenors have a pressing interest in securing relief before further votes are thrown out without a constitutionally sufficient cure process; a process that they have worked on for well over a year and will therefore be better situated to resolve. This is true in any election; it is more acute at this particular moment as more voters may wish to avail themselves of mail-in balloting. As the first-filed suit has already briefed and considered a cure procedure to the potentially unconstitutional provisions of the Election Code, that court is better situated to quickly afford relief as is imperative with the impending November elections.

The second unusual circumstance is the fact that, while it proceeds in analyzing the proposed remedy, the court in the first-filed suit has already strongly indicated that Texas's current process is invalid, just as has been held in *all the other states* where this issue has been litigated. Given the likely increased importance of mail balloting as an option for voters in the next several months, and the *Flores* court's recognition that the

current process violates voters' rights after almost a year of considering and repeated hearings, Intervenors believe that they are best situated in seeking the appropriate remedy.

Lastly, *the only reason* that Intervenors seek this intervention and stay is because their motion for summary judgment on the *same issue* against the *same principle Defendant* has been on file for more than a year and has been subsequently briefed regarding the appropriate remedy. Now on the eve of judgment, these suits act as an extreme example of the first to file rule's intended purpose.

## PRAYER

For the above reasons, Intervenors respectfully request that the Court permit them to intervene, and file the accompanying Motion for Stay (attached hereto as Exhibit 2) in the case.

Respectfully submitted,

/s/Austin Whatley
NAJVAR LAW FIRM, PLLC
*Austin M.B. Whatley*
Tex. Bar No. 24104681
S.D. Tex. No. 3348472
281.410.2003 [Phone]
austin@najvarlaw.com
2180 North Loop West, Ste. 255
Houston, TX 77018
281.410.2003 phone
281.582.4138 fax

*Of counsel:*
NAJVAR LAW FIRM, PLLC
*Jerad Wayne Najvar*
Tex. Bar No. 24068079
S.D. Tex No. 1155651
jerad@najvarlaw.com

13

*Flores* Plaintiffs' Mtn. to Intervene

281.404.4696 phone
281.582.4138 fax
Houston, TX 77018
*Lead Counsel for Intervenors*

### CERTIFICATE OF CONFERENCE

Counsel for Intervenors has conferred with counsel for the existing Parties regarding this motion. Defendant Perla Lara, in her official capacity as the City Secretary of the City of McAllen, Texas, is unopposed. Counsel for Intervenors e-mailed the Secretary of State's counsel in the Richardson Litigation on August 19, 2020 (the date of this filing), and has not received an indication. However, Intervenors' counsel has conferred extensively with the Secretary's counsel in the Flores Litigation and has been assured that the Secretary opposes all opportunities for Intervenors to acquire relief. Consequently, Intervenors consider the Secretary opposed. All other counsel have indicated that they are opposed.

*/s/ Austin Whatley*
Austin Whatley

### CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that on August 19, 2020, the foregoing document, along with any exhibits and proposed order, was served on all counsel of record in this matter by means of the court's CM/ECF system.

*/s/ Austin Whatley*
Austin Whatley

*Flores* Plaintiffs' Mtn. to Intervene