1          IN THE UNITED STATES DISTRICT COURT

2          FOR THE SOUTHERN DISTRICT OF TEXAS

3                  MCALLEN DIVISION

4

5  LETICIA GARZA GALVAN, ET AL   §   CASE NO. 7:18-CV-00113
                                 §   MCALLEN, TEXAS
6  VERSUS                        §   WEDNESDAY
                                 §   OCTOBER 16, 2019
7  DAVID WHITLEY, ET AL          §   4:12 P.M. TO 4:41 P.M.

8

9                  <u>MOTIONS HEARING</u>

10       BEFORE THE HONORABLE RICARDO H. HINOJOSA
                UNITED STATES DISTRICT JUDGE

11

12

13     APPEARANCES:                    SEE NEXT PAGE

14     COURT RECORDER:                 ANTONIO TIJERINA

15

16

17

18

19

20              <u>TRANSCRIPTION SERVICE BY</u>:

21        JUDICIAL TRANSCRIBERS OF TEXAS, LLC
                935 ELDRIDGE ROAD, #144
22              SUGAR LAND, TEXAS 77478
                Tel: 281-277-5325
23            www.judicialtranscribers.com

24

25    Proceedings recorded by electronic sound recording;
         transcript produced by transcription service.

1                         APPEARANCES:

2

3   FOR THE PLAINTIFF:              NAJVAR LAW FIRM
                                    Austin Whatley, Esq.
4                                   4151 Southwest Freeway
                                    Suite 625
5                                   Houston, TX  77027
                                    281-404-4696
6

7   FOR THE DEFENDANT WHITLEY:      OFFICE OF THE ATTORNEY GENERAL
                                    Michael Abrams, Esq.
8                                   P.O. Box 12548
                                    Capital Station
9                                   Austin, TX  78711
                                    512-475-4103
10

11  FOR DEFENDANT GARCIA:           TEXAS RIOGRANDE LEGAL AID
                                    Jose Garza, Esq.
12                                  1111 N. Main Ave.
                                    San Antonio, TX  78212
13                                  210-212-3700

14

15

16

17

18

19

20

21

22

23

24

25

1      MCALLEN, TEXAS; WEDNESDAY, OCTOBER 16, 2019; 4:12 P.M.

2           THE COURT:  Civil Action No. M-18-113, Frederico

3  Flores, Jr. and others versus Texas Secretary of State and

4  others.

5           Can we have announcements for the parties as to

6  who's here?

7           MR. GARZA:  Jose Garza for the Defendants Martinez

8  Garcia, Daugherty I, Daugherty II.

9           THE COURT:  That's the local Board?

10          MR. GARZA:  The local Board, yes, sir.

11          MR. ABRAMS:  Michael Abrams for the Texas

12  Secretary of State.

13          THE COURT:  Well I guess now is Ms. Hughes; is

14  that correct?

15          MR. ABRAMS:  That's correct, Your Honor.

16          MR. WHATLEY:  Austin Whatley for Plaintiffs.

17          THE COURT:  I guess the issue here is the motion

18  for summary -- competing motions for summary judgment.  The

19  Plaintiffs' claim and cite court cases in Federal Courts

20  that -- the issue is the mail-in-ballots and the dispute

21  over -- you have to sign it twice and whether there's a

22  question by the Board, the counting Board, as to whether

23  these match.

24          The three plaintiffs that we have remaining and it

25  is these three plaintiffs that we still have, they were

1  notified after the election that their vote was not counted.

2  They did receive a notice, right?

3          MR. WHATLEY:  After the election, Your Honor.

4          THE COURT:  Right, because the Election Code of

5  the State of Texas says you have to receive notice within

6  10 days after the election, but no remedy is provided.

7  Other than I guess some official can file a lawsuit, but not

8  the individuals.

9          And how do we --

10         MR. ABRAMS:  Yes, Your Honor.  The County Election

11 Official can file an injunctive suit in the State District

12 Court.  In fact, we cited to an instance when that did

13 happen in Caldwell County.  And that's at Docket 70-1.

14         THE COURT:  Yeah, but the cases that -- the

15 federal cases that ruled on this very same subject have said

16 you need to be notified before the election so that you can

17 have some remedy available to you.

18         The State statute doesn't provide any personal

19 remedy to you other than maybe somebody might make the

20 Complaint, but nobody really is.  I mean, you actually have

21 to -- there's nothing left for the individual voter.

22         MR. ABRAMS:  Well, they can go to a County

23 Election Official and the County Election --

24         THE COURT:  Right, but not themselves.  I mean,

25 they can't do anything themselves.  There are at least like

1   three other Federal Courts that have already said in other

2   states this is a procedural due process violation.  And so

3   therefore you have to have some rights.

4          And those seem to indicate that you need the

5   requirement before the election to be notified there's

6   something wrong with your ballot here.  At least the

7   mail-in.  They can't really look at the ballot.  It's

8   just -- it has something to do with the application.

9          MR. ABRAMS:  Well, a few points to that, Your

10  Honor.  None of those other cases have this procedure were

11  County Election Official could actually bring a suit.

12          THE COURT:  Didn't one of them have that

13  procedure?

14          MR. ABRAMS:  I don't believe so.  I mean, I think

15  this statute took effect in September 1st of 2017 in Texas.

16  So it's still relatively new.

17          THE COURT:  Yeah, but the procedure doesn't even

18  come close to satisfying the ability to have some procedural

19  due process with regards to your -- it would appear to me

20  that something before the election is more important than

21  something after the election.

22          MR. ABRAMS:  I'm not sure the statute says that

23  they -- it has to be provided after the election.  The

24  County --

25          THE COURT:  I didn't read it -- I mean, if it

1    doesn't, why did these people not receive notice?

2             MR. ABRAMS:  Well, in this case the notices were

3    dated March 6th, which was the date of the Primary.  So they

4    had probably submitted their mail-in ballots several days

5    before.  And then the notices were -- the notice of

6    rejection was signed the day of.

7             And so that would theoretically give you time.

8    And, Your Honor, it's possible there are instances where,

9    you know, you could conceive of a situation where someone

10   isn't given notice in time.

11            But the record here doesn't show that the statute

12   is facially unconstitutional in all circumstances.  I think

13   that that's the --

14            THE COURT:  Well, it's really unconstitutional in

15   all circumstances before the election.  At least that's the

16   argument that the Plaintiffs are making.  That why do I care

17   after the election that somebody might notify me that it was

18   rejected, but I really -- there's nothing I can do about it.

19            I mean, your vote belongs to you as an individual.

20   It doesn't belong to some generality.  I mean, it's your own

21   personal right, which I consider one of our most personal

22   right to the United States, the right to vote.

23            MR. ABRAMS:  Well, what the Plaintiffs are asking

24   for is a post-election remedy.  I mean, they're asking for

25   the right to -- if a ballot is rejected, to have the right

1  after the election to find a way to fix it.  And what the

2  Secretary of State is saying is that there is a provision

3  here.  And the Plaintiffs contend it's inadequate.

4         THE COURT:  No, what I hear the Plaintiffs saying

5  is, Judge, you just need to find the statute

6  unconstitutional because the State of Texas needs to amend

7  their statute to reflect that before the election they need

8  to be notified.

9         I mean, I think that's what they're saying. That's

10  the relief they would like.

11         MR. ABRAMS:  Well, I don't know if they put

12  forward any specific request for relief, so.

13         THE COURT:  Well, they have said this is

14  unconstitutional, we're attacking on a constitutional basis,

15  Judge, this is procedural due process under the Section

16  1983, the 14th Amendment.

17         We're -- it's our right to vote.  There's nothing

18  that gives us any due process with regards to trying to

19  correct this.

20         MR. ABRAMS:  Well, the other issue, Your Honor, is

21  that these Plaintiffs don't intend to vote by mail in the

22  future elections.  They've acknowledged that they've

23  disclaimed an intent to vote by mail.  They'll only vote in

24  person in future elections.  So that's our --

25         THE COURT:  Well, they might or they might not.

1  They can't tell us for sure that they're not going to be

2  sick and they won't be able to walk over there.  They can't

3  tell us that for sure.  At some point, they may be able to

4  have to vote by mail again.  Or they may be out of the

5  country or they may be whatever.

6          What they're saying is it is unconstitutional,

7  it's unconstitutional when it happened to us and therefore

8  this is a violation on the part of the State of Texas with

9  no procedural due process.

10          And the idea that they have testified, well, I

11  don't really want to again try to subject myself to this in

12  depositions.  Well, yes, I understand that, but that doesn't

13  mean that you're not going to be put in a physical situation

14  where you won't have a choice or you will not be here on

15  certain days or whatever.

16          MR. ABRAMS:  Right, Your Honor.

17          THE COURT:  I mean, you still don't answer to me

18  how we get around all the other cases that are the same

19  thing.  And the other Federal Courts have already said this

20  is a problem.

21          MR. ABRAMS:  I think in this case, the fact the

22  record doesn't have evidence that this process is

23  inadequate.

24          THE COURT:  Well it is inadequate.  There's

25  nothing you can do before the election.  You didn't even

1  know.

2          MR. ABRAMS:  Well, that's because the ballots

3  aren't required to be -- I mean, the ballots can be --

4  someone can vote by mail and delivered to the early voting

5  ballot Board, I believe, up to the day after the election.

6  And so -- and that's to give the voters more time to vote.

7          And so the voters have the opportunity to vote by

8  mail up to that point.  I don't think --

9          THE COURT:  The mail ballots have to received by a

10  certain point before they're counted.  They just can't keep

11  on coming in and be counted.  There's a deadline within

12  which the mail ballots have to be received.

13          MR. ABRAMS:  Right.

14          THE COURT:  And if somebody didn't mail it in

15  time, they're not going to be counted.  That's not the

16  argument here.

17          MR. GARZA:  I think if they're postmarked before

18  the election.

19          THE COURT:  They're postmarked, yes, but --

20          MR. GARZA:  They can be received after the

21  election.

22          THE COURT:  Yes, but not --

23          MR. GARZA:  Right, not forever.  Indefinitely.

24          THE COURT:  -- received -- you postmarked it like

25  the day of the election or something.  I don't know if

1   that's the day that's the deadline here, but there has to be

2   a deadline anyway.  It isn't that they can keep on coming.

3          MR. ABRAMS:  Right.  I believe it's up to -- it

4   has to be received the day after the election is the drop

5   dead deadline.

6          And so that's when the ballots could be counted

7   and then -- well, well there's a difference to between

8   counting the ballots and reviewing whether the signatures on

9   the application and the carrier envelopes are the same.

10          So theoretically a voter could get a notification

11   before the election, I believe.

12          THE COURT:  Well, they might or might not.  I

13   mean, there are people who will not.

14          MR. ABRAMS:  That may be true and I still think it

15   goes to --

16          THE COURT:  So how do you explain those cases?

17          MR. ABRAMS:  Well, I think that there is -- well

18   two distinguishing --

19          THE COURT:  The one thing that within 10 days

20   after the election you may be notified, but at that point

21   what -- they're not going to count them.  They won't be

22   counted.

23          MR. ABRAMS:  Well, we don't know that, Your Honor,

24   because --

25          THE COURT:  Well there's already -- I mean, you

1   have do it before the canvassing Board and I don't know what

2   the deadline is for the canvassing Board.  And the

3   canvassing Board --

4         MR. ABRAMS:  The canvassing has to occur no later

5   than 11 days after the election.  And so we could have an

6   instance where, in this case for instance --

7         THE COURT:  Right, but they have 10 days to notify

8   you.  So they may postmark it on the 10th day.  The

9   canvassing Board has already met.  And so therefore, you

10  have no remedy because the statute says it has to be

11  presented to the canvassing Board as far as your Complaint

12  or whatever it is.  That's get presented to them.  At least

13  I understand it that way.

14        MR. ABRAMS:  The early -- I'm not sure I

15  understood that point, Your Honor.

16        THE COURT:  The notice to them has to be sent

17  before the canvassing Board meets.

18        MR. ABRAMS:  The notice has to be sent within

19  10 days after the election.

20        THE COURT:  Right, but there's something in that

21  statute about the canvassing Board and their involvement

22  here.

23        MR. ABRAMS:  Right, the County Election Official

24  can file an injunctive suit before the time for canvassing

25  occurs, which is by statute no later than 11 days after the

1   election.

2          THE COURT:  All right, and what -- that doesn't

3   give the right to the person that's being hurt here.   The

4   fact that the County Election Official might be able to.

5          And I don't know if you've ever been involved in

6   politics, but the County Election Official has certain

7   responsibilities with regards to having sides one way or

8   another possibly.

9          And so that still doesn't solve the problem.  It

10  isn't the County Election Official that has had a procedural

11  due process claim here.  It's the voter that's having the

12  procedural due process claim here.

13         And their point is, you can't really tell me,

14  Judge, that somehow we're outside the other cases that have

15  been decided because the County Official might, if they so

16  desire, after the election go file an injunction for me

17  rather than me being able to do anything myself.

18         MR. ABRAMS:  Your Honor, what the record reflects

19  is that that has at least happened in one other instance.

20  And there's just not enough --

21         THE COURT:  And it may have happened, but it

22  doesn't mean that it really still protects the individual's

23  rights here.  The procedural due process is for the

24  individual, not for the County Election Official.

25         MR. ABRAMS:  Well if someone's procedural due

1  process rights can be protected by this injunctive suit,

2  then we contend that there still is a mechanism --

3          THE COURT:  And someone might not.  And it's left

4  up to that individual to assert your procedural due process

5  under the Constitution in Section 1983, as opposed to

6  yourself being able to do this.

7          MR. ABRAMS:  Your Honor, this is the procedure

8  that the Texas Legislature developed to provide a remedy and

9  I don't think it's been tested as in those cases.  I think

10 that's the distinguishing factor here.

11         THE COURT:  Did you want to respond to any of

12 this?

13         MR. WHATLEY:  I think it's a distinction without a

14 difference Your Honor.  I think as you've rightfully queued

15 on, this isn't an alternative process for the Plaintiffs.

16 And if -- even if you point to an alternative process, if

17 it's unavailable to the Plaintiff or patently inadequate,

18 it's not an alternative process and it can't stand.

19         MR. ABRAMS:  Your Honor, we think that the process

20 that the Plaintiffs --

21         THE COURT:  I think it's the process, but frankly

22 I mean, I don't even know that anybody in the State

23 Legislature is aware that this is the process.  I mean, I

24 don't think that anybody has really stopped -- I don't think

25 that that was put in there to protect a procedural due

1  process rights.

2          MR. ABRAMS:  Well, I don't think the record

3  reflects on that one way or the other.  The process is

4  there.

5          THE COURT:  Okay, how long has it been there?  The

6  process is there after the election and has nothing to do

7  with the individual themselves.

8          MR. ABRAMS:  It's been in effect --

9          THE COURT:  It doesn't -- yes, it's been there,

10  but nobody's complained about it.

11          MR. ABRAMS:  You mean in another -- except for

12  this lawsuit.

13          THE COURT:  Exactly right.  This lawsuit.  And

14  just like in those other states that are very recent with

15  the regards to Federal Courts stepping in with regards to

16  the rights of the individual voter.  And so, yes, it's all

17  recent.

18          MR. ABRAMS:  Right.

19          THE COURT:  Those cases are recent.  This

20  challenge to this State's system is recent.

21          MR. ABRAMS:  Right, I just --

22          THE COURT:  I know you were sent down here to say

23  that, but from a common sense standpoint, I don't even know

24  that the Secretary of State had given -- I don't even know

25  how long she has been the Secretary of State.  I suspect not

1  too long.

2          MR. ABRAMS:  It was a recent appointment, Your

3  Honor.

4          THE COURT:  Right and so I don't even know that

5  she -- does she even know we have this lawsuit?

6          MR. ABRAMS:  Yes, Your Honor and you have General

7  Counsel for the Secretary of State here.

8          THE COURT:  Well, the General Counsel, of course,

9  knows because he's been the General Counsel for awhile.

10          MR. ABRAMS:  I believe the Secretary of State is

11  aware.

12          THE COURT:  That there's a lawsuit, but really

13  hasn't sat down and had a discussion with somebody about

14  these other cases that have ruled on it.

15          MR. ABRAMS:  Well, the Texas Secretary of State

16  can't amend state law.  And in fact, that goes to --

17          THE COURT:  No, the Secretary of State cannot

18  amend state laws, I understand that completely.  At the same

19  time, the Secretary of State has a lot to do with regards to

20  suggesting that the legislature do certain things in order

21  to comply with federal statutes, federal Constitution.  And

22  that Courts are going in this direction and that we need to

23  change something here or we have a problem.

24          I mean that's what the Secretary of State does.

25  She's in charge of the elections in the State of Texas.  And

1  so, from that standpoint, I think she is the proper party

2  because this is a state statute that's being challenged not

3  the action of the local County Clerk or whoever is the

4  County Clerk who is in charge of the elections locally at

5  that -- for the County Elections and these elections that

6  were being held.

7        But in the end, it's the Secretary of State that

8  protects the statute.

9        MR. GARZA:  On that note, Your Honor, I don't want

10  to interfere with the flow of the debate or discussion,

11  but --

12       THE COURT:  I would welcome you to interfere with

13  the flow of this discussion.

14       MR. GARZA:  The Plaintiffs have affirmatively

15  abandoned the "as applied" cause of action which we be then

16  something that would be aimed at the Election Board.  And

17  that they have agreed as stated in their responses that the

18  Board is entitled to qualified immunity.

19       And as the Court just indicated, the Secretary of

20  State is the proper party to defend the statute on this --

21       THE COURT:  It's an attack on the statute is what

22  it is.

23       MR. GARZA:  Exactly.

24       THE COURT:  It's not an attack --

25       MR. WHATLEY:  Your Honor, the local Election Board

1  has no role anymore now that the State --

2          THE COURT:  No, the Election Board was just

3  following the law.

4          MR. WHATLEY:  That's right.

5          THE COURT:  They didn't have -- there was no

6  statute requiring them to do -- there's nothing that they

7  did wrong.  They decided that this didn't meet the

8  requirements.  They complied with the statute.  They sent

9  out the notices during the 10-day period.  And so this isn't

10  really about the local Election Board.

11          MR. GARZA:  Right, so regardless of the Court's

12  ruling on the --

13          THE COURT:  I mean the local Election Board isn't

14  responsible for the statute.

15          MR. WHATLEY:  Right.

16          THE COURT:  There's nothing to indicate here that

17  the local Election Board did anything contrary to what the

18  present statute is supposed to do.

19          MR. WHATLEY:  Exactly.

20          MR. GARZA:  Your Honor, --

21          THE COURT:  Unless he's going to accuse him of

22  blatantly just lying for political purposes or something in

23  kicking these ballots out when they don't even know who they

24  voted for.

25          MR. GARZA:  At this stage, under the Amended

1  Complaint and under the most recent filings by the

2  Plaintiff, the only reason the Board is in is because

3  they're sued in their official capacity because they

4  enforced the statute.

5          But they have nothing within their discretion or

6  within their power that they can offer in terms of what the

7  Plaintiff seeks.  So regardless of where the Court moves on

8  the broad question of the constitutionality of the statute

9  and we didn't address it in our filings, the State did.

10         And we nominally accepted the State's position on

11  that.  The Board should be dismissed.

12         MR. WHATLEY:  Your Honor, we would completely

13  disagree with that.  It is correct that we have said that

14  they are entitled to qualified immunity, but that's only for

15  personal capacities.

16         In Section 1983 Civil Rights lawsuits, the

17  Government officials with the responsibility of enforcing

18  the challenged law are the proper defendants and that's been

19  stated by the Fifth Circuit --

20         THE COURT:  They're not the ones in charge of the

21  law.

22         MR. WHATLEY:  Yes, Your Honor, but --

23         THE COURT:  They had nothing to do with this law.

24         MR. WHATLEY:  But they are the ones who enforce

25  it.

1          THE COURT:  And it's a law -- that's the law.

2     They -- your Complaint here, unless you want to just mess it

3     up here.  In your Complaint here is that the Statute is

4     unconstitutional.  That's the only claim that you really

5     have.

6          There's nothing to indicate that this Board did

7     anything that they -- that the present statute requires them

8     to do.  In fact, quite to the contrary, they seemed to have

9     complied with the statute as they were supposed to.

10          So there's nothing that they have done.  They

11     didn't write the statute.  And it's the Secretary of State

12     who's responsible for the statute, if you're going to attack

13     the constitutionality of the state's statute not this

14     individual Board.

15          MR. WHATLEY:  Yes, Your Honor, if I --

16          THE COURT:  You've given me nothing to indicate

17     that this individual Board purposely went to pick these

18     individuals out and said we're not going to count their

19     votes.

20          MR. WHATLEY:  Right, it's not as an applied

21     challenge, Your Honor.  But what is, is the Board are the

22     ones that are actually enforcing this and they're the ones

23     picking and choosing which signatures match or mismatch.

24          THE COURT:  That's going to be even if we have a

25     statute that matches what the other Federal Courts are

1  asking.  It will always be on the particular Board's

2  responsibility.

3          MR. WHATLEY:  I completely agree, Your Honor.

4          THE COURT:  I mean, somebody has to do it.  It's

5  not magic.  It isn't like we're going to put these names in

6  a machine and then maybe some day we will.  A machine will

7  be able to determine these signatures are so different I'm

8  cutting them out.

9          But that's not where we're at.  So this Board

10 doesn't do anything other than whatever -- you've complained

11 nothing other than they should have done something.

12         Well, they did what the statute requires them to

13 do.  They can't go writing the statute.

14         MR. GARZA:  WHATLEY:  The only thing that's left

15 is this official capacity claim.  And as far back as

16 *Kentucky versus Graham*, the Supreme Court has said that a

17 official capacity lawsuit is essentially a lawsuit against

18 the entity.

19         They represent Starr County.  Starr County has

20 nothing to do with this.  The entity they need is the State

21 of Texas.

22         THE COURT:  Starr County has a lot to do with a

23 lot of things that are very good.

24         MR. GARZA:  That's right.  That's right, Your

25 Honor.

1          THE COURT:  But that's just a statement made by

2   the Court with nothing to do with anything other than

3   claiming my county originality.  But that was a complete

4   joke.

5          It has nothing to do with anything as far as the

6   legal aspect of things here.  Not that I don't like Starr

7   County, quite to the contrary.

8          MR. WHATLEY:  Just to clarify, Your Honor, Starr

9   County is not entitled to sovereign immunity.  I didn't know

10  if we were making that argument or not.

11         MR. GARZA:  No, I didn't make that argument at

12  all.  All I said is the lawsuit is against the entity, the

13  entity at stake here is the State.

14         THE COURT:  The lawsuit is an attack on the

15  statute that's all this lawsuit's about.

16         MR. GARZA:  That's right.  That's right.

17         THE COURT:  There's nothing that the State has

18  done that that isn't in compliance with the statute.

19  There's nothing that the county employees did that is not in

20  compliance with the statute.

21         The Complaint here is the statute -- at least in

22  the cases that have been won here, the Complaint is there's

23  something wrong with the statute.  It's not that the

24  Secretary of State is responsible for this or.

25         The Secretary of State in this case has to be the

1  party because he's the one that will -- he or she is the one

2  that's trying to defend the statute.

3          But as far as a local Board, I mean, what are they

4  doing?  That's your claim here that this is a problem with

5  regards to your clients that their procedural due process

6  under Section 1983 and the 14th Amendment has not been

7  protected here.

8          MR. WHATLEY:  Right, Your Honor.

9          THE COURT:  As far as I'm concerned, you don't

10 have anything else that you can really have a claim here.

11         MR. WHATLEY:  Yes, Your Honor.  We can move on,

12 it's just that we did and do still hold that as the ones

13 enforcing it, we do think they are proper parties and liable

14 under *Buchanan v. Alexander*, but.

15         THE COURT:  Liable for what?  I mean for following

16 the laws it was and that they have the responsibility of

17 rewriting the statute and say we're not going to follow the

18 statute?

19         MR. WHATLEY:  No, Your Honor.  But as the local

20 officials enforcing the law, they are considered proper

21 parties under Fifth Circuit precedent.

22         THE COURT:  They may be proper parties, but

23 they're nominal proper parties if they are.  There's not

24 anything you're going to get from them.

25         MR. WHATLEY:  Right, Your Honor, but we would

1  still say that that --

2          THE COURT:  Well are you going to make your

3  argument or not?  Are you going to make the argument on the

4  strong point that you have?  I think I sort of lead you in

5  that direction, but we're not there yet, I guess.  We're

6  still arguing about this local Board that you haven't shown

7  me did anything that was contrary to what the statute

8  allowed them and required them to do, other than you're

9  still fighting that.

10          You've got the Secretary of State here.  This is

11  the person that really has control over statewide elections

12  and statewide voting statutes.  And so this is the person.

13          MR. WHATLEY:  Yes, sir, Your Honor.

14          MR. ABRAMS:  Your Honor, obviously we've argued

15  that the Secretary of State is not a proper party.

16          THE COURT:  Why?  We have no parties here as far

17  as what every --

18          MR. ABRAMS:  I understand the Court appears not to

19  be leaning in our direction on that, but I just wanted to

20  preserve that argument for the record.

21          THE COURT:  No, I know you have that argument, but

22  there has to be somebody here for the State statute.

23          MR. ABRAMS:  Well they've chosen to sue the

24  Secretary of State, but I'm not sure that any case says

25  there has to be a remedy if someone has a problem with the

1  statute.

2          So and the Secretary of State does not have any

3  control over the mail-in valid provisions that are at issue

4  here.

5          THE COURT:  No, the Secretary of State is -- the

6  person in the State of Texas that is responsible for the

7  elections being conducted properly.  Their Complaint is

8  there is something unconstitutional with regards to a

9  statute and the Secretary of State is being asked to enforce

10  here.  So we are suing the Secretary of State to try to get

11  to the statute itself.

12          MR. ABRAMS:  And this goes to possibly what might

13  be the next stage based on where --

14          THE COURT:  I mean, it isn't like Ruth Hughes

15  personally going to be liable here.

16          MR. ABRAMS:  No, no, because this is an official

17  capacity claim.

18          THE COURT:  Right, exactly.

19          MR. ABRAMS:  But, there's no injunction that could

20  issue against her that would effectively remedy the

21  Plaintiffs' claims because --

22          THE COURT:  No, all that can be said here is that

23  it's an unconstitutional provision and the Court has said

24  that and they have to do something about it because that's

25  what the other Federal Courts have done.

1    MR. ABRAMS:  Well, and to the point that they have

2  to do something about it, that's the crux of the issue with

3  these official capacity claims is who has to do something

4  about it.

5    THE COURT:  Well, the State Legislature has to do

6  something about it or somebody has to.  And for as long as

7  the Court says it's unconstitutional it can't be enforced.

8  And so I would suspect that somebody would want to fix it as

9  soon as possible if that's what the ruling were to be.

10    MR. ABRAMS:  And the Secretary of State, as we

11  previously discussed, cannot fix the statute on her own.

12    THE COURT:  No, she can't fix the statute on her

13  own, but if anybody is going to have an interest in getting

14  it fixed, it would be the Secretary of State because he or

15  she is the one that runs the state elections.

16    MR. ABRAMS:  The Secretary of State can implement

17  any changes.

18    THE COURT:  I know, but the Secretary of State can

19  go to the State Legislature and say we need to correct this

20  or somebody needs to.

21    MR. ABRAMS:  Well, it depends on what the Court

22  does, Your Honor.  And Your Honor, if I could?  If the Court

23  is inclined to disagree with our arguments that the

24  Secretary of State isn't the proper party, that the

25  Plaintiffs lack standing, that the process is sufficient as

1   it is, the Plaintiffs haven't put forward a suggestion of

2   what specific injunction would look like, so if the Court is

3   inclined to disagree with our --

4         THE COURT:  I haven't even said that I'm going to

5   grant them an injunction.  I'm just -- I was hoping that you

6   could go back to your office and tell them what the Court

7   was saying and see if there's someway that you could reach

8   an agreement with the Plaintiffs here to try to fix this for

9   the future and everybody else, including themselves.

10        MR. ABRAMS:  Your Honor, I'm an Assistant Attorney

11  General and I will pass --

12        THE COURT:  Well, don't underestimate your

13  authority to basically go back and say, you should have

14  heard the Judge.  He was suggesting that perhaps we should

15  sit down and have some discussion with them about how we can

16  try to -- and I think you need to give them these federal

17  cases.

18        And say, you know, this is what the Court was

19  talking about.  And I think that we, in our office, need to

20  figure out how we're going to proceed with this.

21        MR. ABRAMS:  And, Your Honor, there is another --

22  which I'm sure the Court is aware -- there is another

23  lawsuit in San Antonio.

24        THE COURT:  Well, you should have told me that at

25  the very start.  I would have gladly waited for that one to

1    be done.

2            MR. ABRAMS:  Well that one is in its infancy.

3    It's just --

4            THE COURT:  Well, it isn't like we've gone past

5    the childhood very much here.

6            MR. ABRAMS:  Your Honor, that --

7            THE COURT:  I still -- we're still not walking

8    even.

9            MR. ABRAMS:  That case is -- I think a motion to

10   dismiss has been filed, but it's still pretty new.  But

11   there is a --

12           THE COURT:  And is it in Federal Court?

13           MR. ABRAMS:  It is, Your Honor.

14           THE COURT:  Okay and who's the judge in that case?

15           MR. ABRAMS:  It is Judge Orlando Garcia in

16   San Antonio.

17           THE COURT:  I would suspect that he would read

18   these cases and is going to.  If you want me to wait for him

19   to do it, I'll be glad to.

20           MR. ABRAMS:  Your Honor, --

21           THE COURT:  I have given you-all what I've given

22   you-all.  I'm going to have you back here in 30 days for a

23   status conference so you can tell me exactly what it is that

24   each side wants this Court to do.

25           And so we already told you we filed motions.  But

1  you didn't hear me before you filed the motions.  Having

2  said that, that doesn't mean that you-all need to stop

3  talking especially if there is one in San Antonio.

4          MR. ABRAMS:  There is a case in San Antonio that

5  raises the exact same claims.

6          THE COURT:  Yes, and I think that you-all should

7  watch that one closely also.

8          MR. WHATLEY:  Your Honor, before we're dismissed,

9  I might try the patience of the Court.  We have -- we've

10 submitted an exhibit --

11         THE COURT:  I'm more patient than I was 36 years

12 ago.

13         MR. WHATLEY:  We have submitted exhibits of some

14 of these other cases where some of the orders that were in

15 there and we have mentioned them in briefing.   And we do

16 think you have the authority to issue one of those.

17         I know that you said you're not going to be doing

18 that today.  But an example of one would be Florida Democrat

19 Party --

20         THE COURT:  I've seen them, yes.

21         MR. WHATLEY:  Okay.

22         THE COURT:  Do you think the Florida Democrat

23 Party did the right thing?

24         MR. WHATLEY:  Yes, Your Honor.

25         THE COURT:  Maybe I should bring you-all

1   Christmas Eve here.  I won't do that to you-all.

2           December the 12th at 4:00 p.m.

3           And the one in San Antonio is voters in Bexar

4   County that brought this action?

5           MR. ABRAMS:  I believe so.  I believe it's voters

6   in several different counties.

7           THE COURT:  Is it a class action?

8           MR. ABRAMS:  No, but it's several different

9   Plaintiff groups.  We can file an advisory with the Court

10  about the case information.

11          THE COURT:  And how long ago was this case filed?

12          MR. ABRAMS:  I believe it was two or three months

13  ago.

14          THE COURT:  What's kept them so long?

15          MR. ABRAMS:  Your Honor, we just defend the

16  lawsuits.  We don't bring them.

17          THE COURT:  And unlike these guys, you don't get

18  paid by the hour?

19          MR. ABRAMS:  That's correct.  Salary.

20          THE COURT:  If you-all don't have anything else,

21  you-all can be excused so I can take a guilty plea.

22      (The parties thank the Court.)

23      (Proceeding adjourned at 4:41 p.m.)

24

25                          *  *  *  *  *

1          I certify that the foregoing is a correct

2   transcript to the best of my ability produced from the

3   electronic sound recording of the proceedings in the above-

4   entitled matter.

5   /S/ MARY D. HENRY

6   CERTIFIED BY THE AMERICAN ASSOCIATION OF

7   ELECTRONIC REPORTERS AND TRANSCRIBERS, CET**337

8   JUDICIAL TRANSCRIBERS OF TEXAS, LLC

9   JTT TRANSCRIPT #61083

10  DATE FILED:  OCTOBER 26, 2019

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25