FILED
August 21, 2020
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY: _____ JU
                    DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| DR. GEORGE RICHARDSON, ROSALIE WEISFELD, AUSTIN JUSTICE COALITION, COALITION OF TEXANS WITH DISABILITIES, MOVE TEXAS CIVIC FUND, and LEAGUE OF WOMEN VOTERS OF TEXAS,<br><br>*Plaintiffs*,<br><br>v.<br><br>TEXAS SECRETARY OF STATE, TRUDY HANCOCK, in her official capacity as BRAZOS COUNTY ELECTIONS ADMINISTRATOR, and PERLA LARA, in her official capacity as CITY OF MCALLEN, TEXAS SECRETARY,<br><br>*Defendants*. | § § § § § § § § § § § § § § § § § § § § § § § Civil No. SA-19-cv-00963-OLG |

## ORDER

On this date, the Court considered the status of the above-captioned action. Presently pending before the Court are Motions for Summary Judgment filed by each party with respect to each pending claim. *See* docket nos. 64, 65, 66 & 70.

Having reviewed the record, the Court believes it is necessary to request additional briefing from the parties. Specifically, in the event the Court concludes that Plaintiffs are entitled to summary judgment on one or more of their *constitutional* claims,[1] the present record does not

---

[1] For the avoidance of doubt, the Court has not yet determined that Plaintiffs are entitled to summary judgment on any of their claims. Further, in the event the Court issues judgment in CTD's favor with respect to CTD's ADA and RA claims, *see* docket no. 1 pp. 22-23, the Court will request additional briefing as to the appropriate remedy at that time, if necessary, in light of any other findings, conclusions and/or relief afforded.

permit the Court to determine the exact scope of the appropriate injunctive relief. Importantly, Plaintiffs have not explained what an appropriate remedy may look like, nor have any of the Defendants addressed the specific feasibility of—and/or burdens associated with—any remedial proposal. This is especially important given that one of the relevant factors under the *Mathews* due process analysis requires the Court to consider the government's interest, "including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).[2] Additionally, the Court believes now is the appropriate time to request supplemental briefing, so that—in the event the Court does conclude that Plaintiffs prevail on one or more of their constitutional claims—the Court may issue injunctive relief without further delay in advance of the November 2020 elections, if appropriate.

Of course, the Court can think of many potential remedies that may help mitigate the risk of disenfranchisement if the existing signature-comparison procedures are found to be unconstitutional. At one end, it may very well be appropriate to order the Secretary to notify local officials that a Court has found the existing procedures to be unconstitutional and that they are not to reject ballots based on a signature-mismatch until the legislature is able to add protections designed to prevent the disenfranchisement of mail-in voters. On the other hand, it is also possible that other narrower forms of relief may both appropriately mitigate the risk of disenfranchisement and permit the State to continue to utilize signature-comparison as one method of preventing voter fraud. For example, the Secretary could perhaps advise local officials to: (i) convene EVBBs prior to election day and/or provide more timely notice (in advance of election day or by electronic

---

[2] The parties dispute whether the *Mathews* framework is even applicable with respect to the any due process analysis, and for the avoidance of doubt, the Court has not yet concluded that it necessarily applies.

means) when able; (ii) instruct EVBBs to consider all signatures on file for a voter (from the prior six years), rather than just those on the application and carrier envelope, before officially rejecting a ballot on the basis of a signature mismatch; (iii) provide information to voters regarding the fact that their signatures on their applications and ballots will be compared and/or a warning that a failure to "match" signatures will result in a rejected ballot; (iv) instruct county election officials that the constitution *requires* that they pursue the remedy the Secretary contends is available in § 87.127 in the event a voter challenges a signature-mismatch determination; and/or (v) provide other means for voters to "cure" improperly rejected mail-in ballots, such as one similar to the remedy provided to voters who fail to present a photo ID during in person voting. It is also possible—if not likely—that the parties may have other proposals in mind that both protect mail-in voters' fundamental rights and the State's interests.

Accordingly, the Court will instruct Plaintiffs to file a brief (and any evidence or other supporting materials that they wish to attach) in which it sets forth what it believes is the appropriate remedy (and/or remedies) in the event the Court grants summary judgment in Plaintiffs' favor on Plaintiffs' constitutional claims. Plaintiffs may propose multiple forms of relief in their brief, either collectively or in the alternative. Additionally, in light of the fact that the upcoming general election is less than three months away, Plaintiffs may distinguish between relief that would be appropriate for the November 2020 elections and that which would be appropriate for subsequent elections. Finally, when addressing the form(s) of relief that may be appropriate, Plaintiffs should be cognizant that there very well may be good faith reasons as to why certain forms of relief may be impossible to implement in advance the November 2020 elections.

Following Plaintiffs' filing, Defendants will be provided an opportunity to file responses to Plaintiffs' brief (if each Defendant wishes to do so), and in any response(s), each Defendant

should addresses the appropriateness and/or feasibility of each form of relief proposed by Plaintiffs. Defendants should also advise the Court if there are any remedies that Defendants would agree to in the event the Court finds that the Plaintiffs' constitutional claims have merit.[3] In the event any Defendant contends that any of the remedies described by Plaintiffs would be impossible to implement for the November 2020 elections and/or subsequent elections, the Defendant must provide a specific explanation—accompanied by a sworn affidavit from someone with *personal knowledge* of the relevant election procedures—as to why each such remedy could not be implemented in the timeframe provided. The response(s) should also address (i) any *specific* burdens associated with the implementation of any proposed procedure,[4] (ii) why those burdens outweigh the benefit(s) of adding such a procedure, and (iii) any other reason the Defendant believes any proposed procedure is inappropriate. For the avoidance of doubt, Defendants are not required to respond to Plaintiffs' brief; however, any failure to respond to reasonable proposals will be considered as the Court evaluates the merits of the summary judgment motions (to the extent remedial "burdens" are relevant) and/or the scope of any remedy, if appropriate.

Finally, following Defendants' response(s), Plaintiffs will be provided an expedited opportunity to file a reply brief addressing Defendants' response(s). Defendants' may also file a sur-reply brief (or briefs) on an expedited basis in the event any Defendant believes doing so is appropriate.

---

[3] For example, the record indicates that the Secretary is already considering adding additional language regarding the signature-matching requirement to the "dear voter" letter provided to mail-in voters. *See* docket no. 84, Secretary 30(b)(6) Dep. at 76:25-78:4 (stating Secretary may consider adding the language used by Travis County in its "dear voter" letter to the standard form "dear voter" letter issued by the Secretary).

[4] Defendants should not rely on general speculation that providing additional protections for voters may add "chaos" to the voting process. *See* docket no. 75 pp. 12-13.

Accordingly, for the reasons set forth above, **IT IS THEREFORE ORDERED** that:

- Within five (5) days of the date of this Order, Plaintiffs shall file a brief—consistent with the above instructions—addressing the appropriate scope of any injunctive remedy (and/or remedies) in the event the Court concludes Plaintiffs are entitled to summary judgment on one or more of their constitutional claims;

- Within five (5) days of the date of Plaintiffs' brief, Defendants may file a response brief (and/or response briefs) consistent with the above instructions;

- Within two (2) days of the date of Defendants' response(s), Plaintiffs may file a reply brief; and

- In the event Plaintiffs file a reply brief, Defendants may have two (2) days to file a sur-reply brief (or briefs).

Finally, the parties may attach affidavits (or any other relevant evidence) to any of their filings for the Court's consideration.

**IT IS SO ORDERED.**

**SIGNED** this 21 day of August, 2020.

_____
ORLANDO L. GARCIA
Chief United States District Judge