UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

DR. GEORGE RICHARDSON, ROSALIE §
WEISFELD, AUSTIN JUSTICE §
COALITION, COALITION OF TEXANS §
WITH DISABILITIES, MOVE TEXAS §
CIVIC FUND, LEAGUE OF WOMEN §
VOTERS OF TEXAS, and AMERICAN GI §
FORUM OF TEXAS, INC., §
§
*Plaintiffs*, §
§
v. §          Civil Case No. 5:19-cv-00963-OLG
§
TEXAS SECRETARY OF STATE, TRUDY §
HANCOCK, in her official capacity as §
BRAZOS     COUNTY     ELECTIONS §
ADMINISTRATOR, and PERLA LARA in §
her   official   capacity   as   CITY   OF §
MCALLEN, TEXAS SECRETARY, §
§
*Defendants*. §

**PLAINTIFFS' SUPPLEMENTAL BRIEF IN RESPONSE TO THE COURT'S AUGUST 21ST ORDER**

In response to the Court's August 21, 2020 Order,[1] Plaintiffs provide the following

proposed remedies in the event the Court concludes that Plaintiffs are entitled to summary

judgment on one or more of their constitutional claims. In this brief, Plaintiffs propose that the

Court institute a narrowly tailored notice and cure or challenge process, or an injunction that would

prevent the rejection of ballots based on a signature mismatch determination. Plaintiffs believe that

a narrowly tailored notice and cure or challenge process is feasible to implement for the November

2020 General Election and future elections. However, if the Court determines that such a remedy

is not available, Plaintiffs propose the straightforward remedy of enjoining implementation of the

---

[1] Dkt. 88.

signature comparison procedure entirely unless and until the legislature implements appropriate safeguards.

## I.     NARROWLY TAILORED REMEDY

Plaintiffs believe the Court can order a narrowly tailored remedy in this case. In this section, Plaintiffs provide safeguards that would be required for any notice and cure or challenge process as well as a detailed proposal for a notice and cure process. As a general matter and as the Court mentioned in its Order, Plaintiffs recognize that there are many different ways to institute a notice and cure or challenge process.[2] To remedy Defendants' constitutional violations resulting from the application of the signature comparison provisions of the Texas Election Code, any narrowly tailored remedy must provide at a minimum the following five safeguards:

1. Voters should be provided notice of a signature mismatch determination with enough time for them to meaningfully take advantage of an opportunity to cure their ballot or challenge the determination;[3]

2. Notice should be provided to voters via mail, email (if provided on their application), and phone and text message (if provided on their application);[4]

3. Voters should be provided an opportunity to cure or challenge an Early Voting Ballot Board (EVBB) or Signature Verification Committee (SVC) determination in-person or via mail, email, facsimile, or hand delivery;[5]

4. No proof of identification requirements that are equally strict or stricter than the proof of identification requirements to vote by mail should be imposed on voters, since voters who receive carrier envelopes have already satisfied the identification requirements for voting; and

---

[2] *See generally VOPP: Table 15: States That Permit Voters to Correct Signature Discrepancies*, National Conference of State Legislatures, https://www.ncsl.org/research/elections-and-campaigns/vopp-table-15-states-that-permit-voters-to-correct-signature-discrepancies.aspx (last visited August 25, 2020); Dkt. 88 at 2–3.

[3] *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).

[4] *See* Dkt. 65 at 36 n.146. Similar procedures have been implemented in other jurisdictions. *See, e.g.*, Fl. Stat. Ann. § 101.68(4)(a); Utah Code Ann. § 20A-3a-401(5)(a).

[5] *See, e.g.*, Fl. Stat. Ann. § 101.68(4)(d), (e).

5. A notice and cure or challenge process should be accessible to all mail-in voters, including but not limited to out-of-county, state, and country voters; voters with disabilities; inmate voters; and voters of local, state, and federal elections.[6]

With this framework in mind, Plaintiffs propose the detailed process laid out below, which incorporates the five safeguards of a notice and cure or challenge process without changing the existing deadlines for reviewing mail-in ballots.[7]

Detailed Proposal:

Plaintiffs propose that the Court order Defendant Secretary of State to advise all Early Voting Clerks (EVCs) that for the signature comparison procedure to comply with the Constitution, the notice and cure requirements listed below must be followed before any ballot is rejected on the basis of a perceived signature mismatch:

1. The EVBB or SVC must complete signature comparisons of all mail-in ballots received on or before Election Day by one day after Election Day and complete signature comparisons for the rest of the mail-in ballots received during the election period by 9 a.m. on the 7th day after Election Day.[8]

2. If an EVBB or SVC determines it should reject a mail-in ballot because it believes that the signature on the carrier envelope or mail-in ballot application is not that of the voter, within 24 hours after this determination, the EVC must provide the voter notice via mail as well as by phone, text message, and email if the corresponding contact information is provided on the voter's mail-in ballot application.[9] Through this notice, the voter will be informed of their opportunity to verify that they signed both the carrier envelope and the mail-in ballot application to prevent the rejection of their mail-in ballot.

3. In order to prevent the rejection of their mail-in ballot, the voter, while in-person or through hand delivery, mail, email, facsimile, or phone, must (a) affirm that they are the voter named on the mail-in ballot and that they signed both the carrier envelope and the mail-in ballot application; and (b) provide to the EVC the voter's name, date of birth, and all of the following identification numbers that have been

---

[6] *See Democratic Executive Committee of Florida v. Lee*, 915 F.3d 1312, 1323–24 (11th Cir. 2019).

[7] Plaintiffs also believe the Court can institute a narrowly tailored remedy that alters the existing Texas Election Code deadlines.

[8] The last day for an EVC to expect to receive a timely mail-in ballot is the 6th day after Election Day, which is the deadline for Federal Post Card Applicant ballots. *See* Tex. Elec. Code § 101.057(b).

[9] *See* Dkt. 65-1, Ex. 6; *see, e.g.*, Fl. Stat. Ann. § 101.68(4)(a); Utah Code Ann. § 20A-3a-401(5)(a).

issued to the voter: driver license number issued by the Department of Public Safety, Texas personal identification number issued by the Department of Public Safety, and the last four digits of Social Security Number.[10] In the alternative or if the voter has not been issued any of these identification numbers, the voter may provide a copy, scan, or picture of any of the following to the EVC to satisfy part (b):

  i.    any identification document issued by a governmental agency;
 ii.    any government document with the voter's name;
iii.    employee identification card;
 iv.    student identification card;
  v.    identification card provided by a commercial establishment;
 vi.    credit or debit card;
vii.    insurance plan identification card;
viii.   utility bill;
 ix.    bank statement;
  x.    lease or rental statement or agreement;
 xi.    tuition statement or bill; or
xii.    identification documents issued by homeless shelters and other temporary or transitional facilities.

The voter must provide the required affirmation and verifying information to the EVC by 5 p.m. on the 10th day after Election Day to prevent the EVBB or SVC from rejecting the ballot.[11]

4.   The EVC must memorialize in writing receiving the required affirmation and verifying information if provided over the phone by a voter, and retain and preserve such writings. The EVC must also retain and preserve all the required affirmation and verifying information submitted by a voter through other means.

5.   The EVC must provide along with all notices sent via mail or email a Notice of Provisional Rejection form that allows voters to provide the required affirmation and verifying information. The EVC must also provide a blank and usable version of this form on their website.[12] The Notice of Provisional Rejection form shall additionally explain that voters providing the required affirmation and verifying

---

[10] *See, e.g.*, Utah Code Ann. § 20A-3a-401(5)(b)(ii). If the Department of Public Safety has issued a voter a Texas driver's license number or personal identification number, the voter is required to provide that number on their voter registration form. Tex. Elec. Code § 13.002(c)(8)(A). If the voter has not been issued any of these numbers, they are required to provide the last four digits of their Social Security Number. *Id*. § 13.002(c)(8)(B). If a voter also does not have a Social Security Number, they may indicate this by checking a box on the voter registration application. *Id*. § 13.002(c)(8)(C).

[11] Texas Election Code Section 87.0431(a) requires the Presiding Judge of the EVBB to deliver a notice of rejection of a mail-in ballot by the 10th day after Election Day. Also, the earliest deadline to canvas an election is the 11th day after Election Day. *See* Tex. Elec. Code § 67.003(b).

[12] *Compare, e.g.*, Fl. Stat. Ann. § 101.68(4)(e).

information in-person or by hand delivery, mail, email, or facsimile must use this form to do so.[13]

6. If the voter fails to provide the required affirmation and verifying information by 5 p.m. on the 10th day after Election Day, the EVBB or SVC may reject the voter's mail-in ballot.[14]

The Court should further order Defendant Secretary of State to prescribe the Notice of Provisional Rejection form as described in the requirements above, and order that Defendant Secretary of State include information notifying voters of the signature comparison procedure in the Dear Voter Letter as well as the signature sections of the Application for Ballot by Mail (ABBM) and carrier envelope. The Court should also order local Defendants to adopt the procedures listed above.

For elections after the November 2020 General Election, Plaintiffs additionally request under this proposal that the Court order Defendant Secretary of State to add the following sentence in the phone and email section of the ABBM: "Used in case our office has questions or if your ballot is subject to being rejected for signature comparison issues."

## II.   ENJOINING IMPLEMENTATION OF THE ENITRE SIGNATURE COMPARISON PROCEDURE

While Plaintiffs recognize that remedial measures short of a complete injunction are available—and proposals for which are discussed above in the previous section—to the extent that the Court determines that such remedial measures are impossible, impractical, or overly burdensome, the Court should operate within its discretion to enjoin implementation of the signature comparison procedure entirely, leaving to the legislature the obligation of enacting law to bring the procedure into compliance with the Constitution.

---

[13] *Id*. § 101.68(4)(d), (e).

[14] Plaintiffs believe the Court could also institute a remedy similar to this detailed proposal where the notice and cure process begins after the rejection of a mail-in ballot.

Under this proposal, Texas election officials would be barred from rejecting mail-in ballots on the basis of the signature comparison provisions of the Texas Election Code. This is the most straightforward way to protect the constitutional rights implicated and can be accomplished, as the Court suggested, by:

> order[ing] the Secretary to notify local officials that a Court has found the existing procedures to be unconstitutional and that they are not to reject ballots based on a signature-mismatch until the legislature is able to add protections designed to prevent the disenfranchisement of mail-in voters.[15]

Moreover, this is the precise relief that has been granted following challenges to nearly identical signature comparison procedures in other states.[16]

Such an injunction will completely remove the risk of disenfranchisement caused by Texas' existing signature comparison procedure, poses no additional burden on voters, and is the most straightforward remedy available. Additionally, such an injunction would impose the least burden on elections officials, including local Defendants, tasked with implementing the signature comparison procedure because it would require them to stop implementing the procedure entirely.

The next Texas legislative session begins on January 12, 2021, in the immediate aftermath of the November 2020 General Election. Should the Texas legislature decide that new signature comparison procedures would be prudent, then appropriate constitutional protections can be developed and promulgated during that upcoming legislative session.

---

[15] Dkt. 88 at 2. If the Court decides to enjoin implementation of the signature comparison procedure, Plaintiffs additionally request the Court enjoin local Defendants from implementing any aspect of the signature comparison procedure.

[16] For example, in *Saucedo v. Gardner*, the United States District Court for the District of New Hampshire permanently enjoined the New Hampshire Secretary of State from enforcing the unconstitutional signature comparison provision of the state election code, noting that

> [a]lthough the enforcement of the provision falls primarily on local election officials, i.e., nonparties, the court is confident that the Secretary of State will take appropriate steps to ensure that this injunction is enforced.

335 F. Supp. 3d 202, 222 (D.N.H. 2018).

### III.   CONCLUSION

Plaintiffs request the Court grant summary judgment in their favor and order Defendants to implement a narrow notice and cure or challenge remedy by implementing Plaintiffs detailed proposal in Section I of this brief, or a remedy that provides at a minimum the five safeguards listed in the same section, even if such a remedy differs from Plaintiffs' detailed proposal. If the Court determines that a narrowly tailored remedy is impossible, impractical, or overly burdensome, Plaintiffs request the Court enjoin usage of the signature comparison procedure entirely.

Respectfully submitted,

/s/   *Hani Mirza*

**TEXAS CIVIL RIGHTS PROJECT**

Mimi M.D. Marziani
Texas Bar No. 24091906
mimi@texascivilrightsproject.org
Hani Mirza
Texas Bar No. 24083512
hani@texascivilrightsproject.org
Ryan V. Cox
Texas Bar No. 24074087
ryan@texascivilrightsproject.org
Zachary D. Dolling
Texas Bar No. 24105809
zachary@texascivilrightsproject.org

1405 Montopolis Drive
Austin, Texas 78741
512-474-5073 (Telephone)
512-474-0726 (Facsimile)

**WILLKIE FARR & GALLAGHER LLP**

Richard Mancino (NY Bar No. 1852797)
Samuel Kalar (NY Bar No. 5360995)
JoAnna Suriani (NY Bar No. 5706395)

7

787 Seventh Avenue
New York, New York 10019
Telephone: (212) 728-8000
Facsimile: (212) 728-8111
Email: rmancino@willkie.com
        skalar@willkie.com
        jsuriani@willkie.com

-AND-

Jennifer J. Hardy (TX Bar No. 24096068)
Denis A. Fallon (TX Bar No. 24059731)
Garrett Johnston (TX Bar No. 24087812)
Audra White (TX Bar No. 24098608)

600 Travis Street, Suite 2100
Houston, Texas 77002
Telephone: (713) 510-1700
Facsimile: (713) 510-1799
Email: jhardy2@willkie.com
        afallon@willkie.com
        gjohnston@willkie.com
        awhite@willkie.com

**COUNSEL FOR PLAINTIFFS**

**CERTIFICATE OF SERVICE**

By my signature below, I certify that a true and correct copy of the foregoing has been served on all counsel of record on August 26, 2020 through the Electronic Case File System of the Western District of Texas.

/s/ ___Hani Mirza

8