IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| FEDERICO FLORES, JR., et al., | § | Civil Case No. 7:18-cv-00113 |
| | § | |
| *Plaintiffs*, | § | Hon. Ricardo Hinojosa |
| | § | |
| v. | § | INCLUDES REQUESTS PERTAINING |
| | § | TO: |
| RUTH R. HUGHS, IN HER OFFICIAL | § | |
| CAPACITY AS TEXAS SECRETARY | § | Dr. George Richardson, et al., v. Texas |
| OF STATE, et al., | § | Secretary of State, et al. |
| | § | |
| *Defendants*. | § | Civil Case No. 5:19-cv-00963 |
| | § | |
| | § | Hon. Orlando L. Garcia |

**PLAINTIFFS' RE-URGED MOTION FOR ENTRY OF JUDGMENT, OR IN THE ALTERNATIVE MOTION FOR TRANSFER, CONSOLIDATION, OR STAY**

Plaintiffs respectfully move for the Court to enter judgment on Plaintiffs' outstanding motion for summary judgment. Judgment should be entered without delay so that a constitutional process may be provided to voters in the November elections. In the alternative, if the Court does not enter judgment promptly, Plaintiffs move the Court to order an appropriate transfer and consolidation of this matter with certain proceedings before the United States District Court for the Western District of Texas[1] pursuant to the first to file rule and Local Rule 7.6.

**BACKGROUND**

**I. The First Filed Suit**

This lawsuit was filed and removed to this court in April 2018. *Flores* Litigation ECF No. 1. The First Amended Complaint adding the voter-Plaintiffs was filed November 30, 2018

---

[1] *Richardson et al. v. Hughs*, Civil Case No. 5:19-cv-00963-OLG (W.D. Tex. 2019) (**Exhibit 1**).

1

Exhibit 9

(Doc. 24), and all parties renewed their dispositive motions on November 30, 2018. The court set a hearing to consider those motions on March 19, 2019.

After the present voter-Plaintiffs—three elderly Starr County voters whose ballots were unconstitutionally thrown into the trash in March 2018—were added as plaintiffs, the Court extended the discovery period to permit Defendants to take the Plaintiffs' depositions. On June 15, 2019, the court reset the hearing regarding the parties' motions for September 18, 2019. *Flores* Litigation ECF No. 64. All parties filed amended motions on the deadline for dispositive motions on July 29, 2019. *Flores* Litigation ECF No. 65-67.

The Court once again held a hearing regarding the parties' motions on October 10, 2019. *Flores* Litigation ECF No. 80. During that hearing, the Court recognized the weight of federal case law holding that mail-ballot signature-matching regimes like Texas's—lacking an adequate notification and cure procedure that would allow the voter to ensure his or her ballot is counted in the election—violate due process.[2] The Court also recognized the gravity of the underlying right at risk of deprivation by these inadequate procedures: the right to vote.[3] While the Secretary argued that the ability of the "county election officer" to seek an injunction at his or her discretion under current Election Code § 87.127(a) offered an adequate procedural protection for the voter, the Court rejected that argument. The Court recognized—as Plaintiffs had pointed out—that the ability of the "county election officer" (not the voter) to potentially (in his or her discretion) petition a court for the extraordinary remedy of an injunction was an "inadequate" protection, *id.* at 8:24, both because there is no guarantee of timely notice under Texas's statutory regime, *id.*, and even if there were, the suggested remedy is not available to the individual voter, *id.* at 4:10-25 ("The State statute doesn't provide any personal remedy to you

---

[2] *E.g. Flores* Hearing Trans. (Oct. 16, 2019) at 4-5, 8 (**Exhibit 2**).
[3] *Id.* at 6:21-22.

2

Exhibit 9

other than maybe somebody might make the Complaint…. [T]here's nothing left to the individual voter.").[4]

Rather than issue an order at that hearing, the Court extended an opportunity to the Secretary of State to further digest the case law, strongly suggesting that the Secretary should explore the possibility of reaching a settlement with the Plaintiffs "to try to fix this for the future and everybody else, including [the Plaintiffs]." *Flores* Hearing Trans. (Oct. 16, 2019) at 26:5-9 (Exhibit 2). The Court set a status conference for December 12, which was then canceled (on December 9) and re-set for March 25, 2020.

In anticipation of the December motions hearing, counsel for Plaintiffs and the Secretary conferred. The Secretary's counsel advised that the Secretary would not agree to recommend or to implement a cure procedure. Instead, and despite the Court's admonishment at the October hearing, the Secretary maintained her position that § 87.127(a) was sufficient. The Secretary's Advisory, filed March 23, 2020, reflected that the Secretary's position did not change in the three-and-a-half months since counsel's December conference, and five months after the October hearing.

At the third motions hearing on March 25, 2020, this Court denied the dispositive motions filed by the Secretary and the EVBB Defendants.[5] The Court requested that the Plaintiffs amend their summary judgment motion to explain the precise remedial plan they seek. Accordingly, Plaintiffs filed their *Second Amended Motion for Summary Judgment* on April 1, 2020 (Doc. 94), specifically requesting a declaration that Texas's procedure is unconstitutional (*see* Sec. Amd. Compl (Doc. 58) Prayer Sec. 1), as well as prohibitory injunctive relief

---

[4] Plaintiffs explained numerous reasons why the Secretary's proposed procedure is insufficient, including those cited by the Court. *See Flores* Litigation ECF No. 77, at 6-7.
[5] While the court granted EVBB's Defendants' motion in part on their claims for qualified immunity, it denied it as to the claims in their official capacity. *See Flores* Litigation ECF docket entry (Mar. 25, 2020).

3

Exhibit 9

(enjoining Defendants from rejecting mail-in ballots for perceived signature mismatch without affording appropriate cure procedures), and mandatory injunctive relief (implementing appropriate remedial procedures, and requiring the Secretary to promulgate notice of such procedures). *See Sec. Amd. Compl.* (Doc. 58) Prayer (requesting all these forms of relief); Doc. 94 (reiterating and summarizing relief requested). The Secretary and the EVBB Defendants each responded, and Plaintiffs filed their joint reply (Doc. 99), completing remedy briefing on April 29, 2020.

On May 1, 2020, Starr County Democratic Party ("SCDP") moved to intervene and requested an injunction in order to seek relief in advance of the July 2020 primary runoff elections based on the same claims already being litigated by the current Plaintiffs. Doc. 100. SCDP was especially interested in securing relief in time for the July runoffs, and intervention in this lawsuit sought a timely ruling as the most efficient means of seeking such relief. *Id.* at 6-7. The Court has not issued a ruling on SCDP's motions.

In light of the Court's continued inaction, Plaintiffs filed a motion for entry of judgment on June 2, 2020 (Doc. 107), again requesting the Court to issue judgment on Plaintiffs' motion. No further orders have been issued by the Court.

## ARGUMENT

### I. Request for Entry of Judgment

Plaintiffs re-urge their motion for entry of judgment. This Court's desire to avoid issuing a judgment before the July runoff elections (as expressly stated on the record in the March hearing, without any further elaboration or reason provided) is no longer a concern as those elections have passed.

4

Exhibit 9

A federal court has "no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given." *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69, 77 (2013) (quoting *Cohens v. Virginia*, 6 Wheat. 264, 404, 5 L. Ed. 257 (1821)). The Supreme Court has cautioned that, where jurisdiction exists, "a federal court's 'obligation' to hear and decide a case is 'virtually unflagging.'" *Id.* (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)). The obligation to exercise its jurisdiction extends not merely to the general maintenance of jurisdiction over a case (rather than abstaining, for example), but includes the obligation to make a ruling on dispositive or other important motions. *In re School Asbestos Litigation*, 977 F.2d 764, 793 (3d Cir. 1992) ("[A] district court's failure to consider the merits of a summary judgment motion is a failure to exercise its authority when it has the duty to do so."). Mandamus has been recognized as an appropriate remedy when a district court arbitrarily refuses to rule on a motion. *Id.*; *United States v. Moussaoui*, 333 F.3d 509, 513 (4th Cir. 2003).

More than ten months ago now, the Court acknowledged the constitutional infirmities inherent in Texas's current process, and all but ordered the Secretary to agree to a cure. She has refused to do so, and, in the absence of a court judgment, continues to defend the constitutionality of the current illegal procedure. The merits and, now, the remedy having been fully presented, the Court has an obligation to enter a judgment and appropriate orders in this case. *See Veasey*, 830 F.3d at 270 ("The Texas Legislature is not scheduled to be in session again until January 2017, and the November 2016 general election is fast approaching. *It would be untenable to permit a law with a discriminatory effect to remain in operation for that election.*") (emphasis added). Thus, if the Court believes, as it strongly indicated ten months ago, that Texas's current statutory scheme allows election officials to throw Texas voters' ballots

5

Exhibit 9

in the trash without the cure process required by the Constitution, then the Court should enter a judgment to that effect, so that the appropriate remedy can be implemented before more voters' rights are needlessly violated in the November elections. Section 1983 was enacted specifically in order to give aggrieved parties, such as these Plaintiffs, a cause of action for the vindication of their constitutional rights, and for rendering unenforceable state statutes that violate federal rights. Any further delay in issuing judgment in this case allows the continuing enforcement of a process the Court has already stated to be unconstitutional. Where the Court has already indicated the statue is violating the rights of Texas voters, the Secretary has had every opportunity to present its arguments, and all parties agree that this case should be disposed of on dispositive motions, the Court's failure to issue a judgment without any further delay would needlessly permit the propagation of unconstitutional laws and contravene the principle applied by the Fifth Circuit in *Veasey*. Even the Secretary has recognized that the Court "indicated an inclination to grant Plaintiffs relief" at the October hearing, Doc. 96 at 8.

Lastly, the SCDP's motion to intervene on account of the runoff elections also need not give this court cause for further delay, as a judgment here would end their need for intervening and asserting identical arguments in the first place. In fact, the SCDP's *only* cause for intervening was to procure a judgment on the Plaintiffs' already argued claims before the July runoff, or in the least, before the November general election. *Flores* Litigation ECF No. 70 at 6-7.

## II. Motion for Transfer, Consolidation or Stay Pursuant to the First to File Rule

Sixteen months after the instant suit was filed, substantially related litigation was filed in the Western District of Texas, San Antonio Division. As there is substantial overlap between the instant litigation and the *Richardson* litigation, Plaintiffs move, pursuant to the first to file rule

6

Exhibit 9

and Local Rule 7.6, for a transfer, consolidation, or stay in the *Richardson* suit to either prevent interference with the resolution of Plaintiffs' claims here, or, at a minimum, to ensure the cases are resolved together, which is necessary to ensure Plaintiffs' ability and right to litigate the relief they are entitled to.

### a. San Antonio case filed sixteen months after the instant lawsuit

Sixteen months after the instant lawsuit was filed, several voters filed a complaint against the Texas Secretary of State, the Brazos County Elections Administrator, and the McAllen City Secretary. *Richardson* Litigation ECF No. 1 (Exhibit 1). Just as the Plaintiffs here, the *Richardson* complaint challenges the Election Code's signature mismatch provisions as violative of voters' due process rights under the Fourteenth Amendment. *Richardson* Litigation ECF No. 1 (*Plfs' Original Compl.*) at ¶¶ 52-83 (**Exhibit 3**).[6]

On June 22, the parties filed cross motions for summary judgment. *Richardson* Litigation ECF No. 64-66, 70 (Exhibit 1). The *Richardson* Plaintiffs' motion for summary judgment places the same due process argument at the forefront: The fact that "Texas's current election system leaves mail-in voters vulnerable to the outright violation of their fundamental right to vote by forcing their ballots to undergo an arbitrary and error-prone signature comparison procedure that provides no meaningful notice and cure protections." *Richardson* Litigation ECF No. 65 (*Pls.' Mot. for Summ. J.*) at 1 (**Exhibit 4**). Principally amongst their claims, the *Richardson* Plaintiffs assert their right to vote is at risk of erroneous deprivation and, as there is no sufficient remedy process, "the Texas Election Code violates the Due Process Clause of the Fourteenth Amendment, the Equal Protection Clause of the Fourteenth Amendment, the ADA, and the RA." *Id.* at 29. Just as was the case in the instant litigation, the

---

[6] The *Richardson* Plaintiffs also brought claims under the equal protection clause, Americans with Disabilities Act, and Rehabilitation Act of 1973. *Id.* at 21-24

7

Exhibit 9

*Richardson* Plaintiffs' motion argues that *Mathews* and not *Anderson-Burdick* is the appropriate standard. *Id.*

In her motion, the Secretary argues that Plaintiffs lack standing because they cannot show associational standing, or causation and redressability in regards to their claims against the Secretary. *Richardson* Litigation ECF No. 70 (*Secretary of State's Mot. for Summ. J*.) at 13-14 (**Exhibit 5**) ("*Richardson* MSJ"). The Secretary further argues that even if the *Richardson* Plaintiffs had standing that under the *Anderson-Burdick* test, the signature mismatch provisions do not impose a severe burden on voters' rights, are supported by an important interest in election integrity, and adequate alternative processes exist in the form of an election contest and Texas Election Code § 87.217(a). *Id.* at 22-27. In other words, the Plaintiffs in *Richardson* raise the same due process claim as Plaintiffs here, and the Secretary defends Texas's regime with the very same arguments she has already made, which this Court rejected five months ago.

On August 18, 2020, Plaintiffs filed a motion to intervene in the *Richardson* litigation, in order to seek a stay of the *Richardson* proceedings pending this Court's determination of their motion for summary judgment. Briefing on the motion to intervene is currently ongoing. *Richardson* Litigation ECF No. 86 (**Exhibit 6**). On August 21, 2020, the *Richardson* court issued an order requesting additional briefing by the *Richardson* parties regarding potential remedies with respect to the constitutional claims. *Richardson* Litigation ECF No. 88 at 1-2. While specifically stating that the court had not, and was not making a determination on the claims it issue, the court requested the parties to brief remedies. *Id.* at 2. While recognizing other potential remedies may be appropriate, the *Richardson* court specifically provided examples of potential remedies the Secretary could take:

> (i) convene EVBBs prior to election day and/or provide more timely notice (in advance of election day or by electronic means) when able; (ii) instruct EVBBs to

8

Exhibit 9

> consider all signatures on file for a voter (from the prior six years), rather than just those on the application and carrier envelope, before officially rejecting a ballot on the basis of a signature mismatch; (iii) provide information to voters regarding the fact that their signatures on their applications and ballots will be compared and/or a warning that a failure to "match" signatures will result in a rejected ballot; (iv) instruct county election officials that the constitution requires that they pursue the remedy the Secretary contends is available in § 87.127 in the event a voter challenges a signature-mismatch determination; and/or (v) provide other means for voters to "cure" improperly rejected mail-in ballots, such as one similar to the remedy provided to voters who fail to present a photo ID during in person voting.

*Id.* at 2-3. The *Richardson* court's request for the parties' thoughts as to the potential remedies illustrates Plaintiffs' important interest in securing a ruling from this Court or, at a minimum, in consolidating these cases to ensure that the Plaintiffs are afforded the ability to advocate as parties for the relief they desire, as discussed further below.

### b. Motion for transfer and consolidation, or for stay of *Richardson* litigation.

#### i. First to file rule

When substantial overlap is found between proceedings before two courts, "[t]he Fifth Circuit adheres to the general rule, that the court in which an action is first filed is the appropriate court to determine whether subsequently filed cases involving substantially similar issues should proceed," and, "[t]herefore, the 'first to file rule' not only determines which court may decide the merits of substantially similar cases, but also establishes which court may decide whether the second suit filed must be dismissed, stayed or transferred and consolidated." *Jaye v. Crane Merch. Sys., Inc.*, 3:19-CV-1523-X, 2020 WL 406942, at *2–3 (N.D. Tex. Jan. 24, 2020) (quoting *Sutter Corp. v. P & P Indus., Inc.*, 125 F.3d 914, 920 (5th Cir. 1997)); *Parallel Networks, LLC v. Microsoft Corp.*, 2:09-CV-172, 2009 WL 10708739, at *2 (E.D. Tex. Aug. 3, 2009). "Under this first-to-file rule, the cases need not be identical; rather, 'the crucial inquiry is one of substantial overlap.'" *In re Amerijet Intern., Inc.*, 785 F.3d 967, 976 (5th Cir. 2015), as revised (May 15, 2015) (quoting *Int'l Fid. Ins. Co. v. Sweet Little Mexico Corp.*, 665 F.3d 671,

678 (5th Cir. 2011)). "'The rule rests on principles of comity and sound judicial administration'" and the concern underlying the rule 'manifestly is to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result.'" *Id.* (quoting *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 603 (5th Cir.1999)).

Substantial overlap can exist even when the cases are not identical and the parties are different. *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950-51 (5th Cir. 1997); *West Gulf Maritime Ass'n v. ILA Deep Sea Local 24, S. Atl. & Gulf Coast Dist. of ILA, AFL-CIO*, 751 F.2d 721, 729 n.1 (5th Cir. 1985); *Mann Mfg., Inc. v. Hortex, Inc.,* 439 F.2d 403, 408 (5th Cir. 1971) ("[R]egardless of whether or not the suits here are identical, if they overlap on the substantive issues, the cases would be required to be consolidated in ... the jurisdiction first seized of the issues."); *Jefferson v. Mae*, 3:14-CV-00917-N-BK, 2014 WL 12639946, at *2 (N.D. Tex. Sept. 4, 2014) (citing *Int'l Fid. Ins. Co. v. Sweet Little Mexico Corp.*, 665 F.3d 671, 678 (5th Cir. 2011).

Here, Plaintiffs' suit was removed to the Southern District of Texas on April 16, 2018, more than one year before the *Richardson* Plaintiffs' suit was filed. *Richardson* Litigation ECF No. 1 (Exhibit 1). After the renewed dispositive motions were filed, this Court denied the Secretary's and the EVBB's dispositive motions, and requested remedy briefing, which was then completed months before the motions for summary judgment were filed in *Richardson*.

These two cases are both brought against the same primary defendant and are centered on the same legal claim. That is, that the Election Code's signature mismatch requirement as enforced by the Texas Secretary of State violates due process.

Exhibit 9

ii. **Plaintiffs must be afforded relief, or the opportunity to advance their relief in a consolidated case.**

The arguments made by the Secretary of State with regards to due process have already been disposed of by this court when it rejected the Secretary's motion for summary judgment. Relying principally on *Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181 (2008), the Secretary reasserted in the *Richardson* MSJ (filed on June 22, 2020) that even if she was a proper party and the *Richardson* Plaintiffs had standing, any burden on Plaintiffs' voting rights are not severe because they are no worse than those placed on in person voting. *Richardson* Litigation ECF No. 70 at 25 (Exhibit 4). If that line of argumentation sounds familiar to this Court, it is because the Secretary made this argument—almost verbatim—in her motion for summary judgment, filed in this case on July 29, 2019, which the Court ultimately denied. *Flores* Litigation ECF No. 65 at 15; *see also Flores* Hearing Trans. (Oct. 16, 2019) at 25:22-25 (Exhibit 2).[7] The Secretary also relies on the same important interests—"integrity of the election process"—to justify the burdens placed on voters. *See e.g. Richardson* Litigation ECF No. 70 at 25-26 (Exhibit 4). Further, despite the fact that this Court already flatly stated that Texas Election Code § 87.127(a)'s procedure "doesn't even come close, to satisfying the ability to have some procedural due process," *Flores* Hearing Trans. (Oct. 16, 2019) at 5:17-21 (Exhibit 2), the Secretary still relies on this as an "alternate process" in the *Richardson* MSJ. *Richardson* Litigation ECF No. 70 at 27 (Exhibit 4). The Secretary's due process arguments currently being asserted in the *Richardson* litigation have already been rejected by this Court when it denied her motion for summary judgment and began remedy briefing in this litigation. That briefing has been completed since April 29, 2020. *Flores* Litigation ECF No. 99.

---

[7] "MR. ABRAMS: Well, it depends on what the Court does, Your Honor. And [y]our Honor, if I could? If the Court is inclined to disagree with our arguments that the Secretary of State isn't the proper party, that the Plaintiffs lack standing, that the process is sufficient as is. . ."

Exhibit 9

Plaintiffs here have already proposed a detailed, specific remedy that not only would afford constitutional process but does so in a manner that is simple for both the voter and the state to implement. *See* Doc. 90 (explaining proposed cure procedure utilizing simple declaration, based on relief granted by another federal court); Doc. 90-2 (*Flores* Plaintiffs' proposed cure declaration drafted to account specifically for Texas law). The constitutional infirmity with Texas's current process demands a uniform result, and the Plaintiffs have an interest in advocating for the specific relief that will cure the violation sufficiently. The separate litigation of these cases, or allowing Richardson to enter relief without consolidation first, threatens Plaintiffs' rights and ultimately threatens the finality of any such order secured without Plaintiffs' participation.

Several of the potential remedies the San Antonio court requested the parties' consideration of would not sufficiently solve the constitutional problem. Merely instructing the EVBB to use all of a voters' signatures from the prior six years that happen to be on file (and there is no requirement that multiple specimens be on file) does not cure the constitutional deficiency because natural variation can still occur and lead to a mistaken rejection. Plaintiffs' expert here testified that forensic document examiners require at least ten specimen signature samples for reference to compare to an at-issue signature, even under ideal conditions with experience, equipment, and lighting. And regardless of how many signatures are on file, due process does not permit the state to condition the franchise on a handwriting test—signature matching is merely a proxy for identifying the voter, and where there is any doubt, *identification* can be achieved through the cure process Plaintiffs have suggested.

Other potential remedies would also be insufficient. Merely providing voters with express advanced notice that their signatures will be compared to the signature on the voter

12

Exhibit 9

registration form is insufficient, because, again, it is not a handwriting test, and voters cannot necessarily replicate their signature without variation even if they try to do so, especially the elderly and infirm voters who take advantage of mail-in balloting. This was implicitly recognized by the District of New Hampshire, when it held New Hampshire's process unconstitutional despite acknowledging that voters were typically afforded an express notice that it was important to use the same signature. *See Saucedo v. Gardner*, No. 17-cv-183-LM, 2018 WL 3862704, *3 n.1 (D. N.H. 2018). The prospect of an election contest does not cure the lack of a validation procedure. *Democratic Executive Committee of Fla.v. Detzner*, F. Supp. 3d 1017, 1031 (S.D. Fla. 2018). In fact, the prospect of an election contest is even less helpful to voters in Texas than in Florida, because Texas law only permits losing candidates to bring an election contest—thus putting voters at the mercy of pleading for emergency court action to be taken by another party, just like Texas's current process that this Court has already determined insufficient.

Instructing county officials that they must pursue the remedy permitted under 87.127 would not be sufficient, because ultimately it still requires a vastly more burdensome procedure (which also threatens to delay the resolution of elections by requiring frequent emergency litigation), and does not change Texas law standard for how the EVBB must review signatures. In other words, the question in such litigation would be whether the EVBB abused its discretion in reviewing the signatures, but still without a substantive standard, or without simply providing a way for the voter to confirm that he or she indeed sent the questioned ballot. *See Flores* Litigation ECF No. 77 at 6-7 (*Plfs' Reply in Support of Am. Joint Mot. for Summ. J.*).

Accordingly, Plaintiffs have an important interest to advocate the relief they seek, and as the first-filed Plaintiffs, if that right is not ensured, any order entered by the *Richardson* court in

Exhibit 9

these Plaintiffs' absence would be subject to appellate reversal. The Fifth Circuit has made clear that it will enforce the implementation of the first to file in appropriate circumstances by vacating a judgment issued improperly by the second-filed court. *See e.g. Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947 (overturning later filed court's denial of motion to transfer and subsequent grant of summary judgment). This holds true even when the parties are not identical. *See e.g. W. Gulf Mar. Ass'n*, 751 F.2d 721 (vacating later filed court's issuance of preliminary injunction).

## CONCLUSION

Given the overwhelming facts weighing in favor of ensuring Plaintiffs reach a judgment on their claims, Plaintiffs again request that this Court enter judgment without delay.

In the alternative, the Court should enter an appropriate order to (i) transfer the *Richardson* case to this Court to be consolidated with Plaintiffs' claims, or (ii) transfer this case to the Western District of Texas to be consolidated with *Richardson*. While the first-to-file rule clearly holds that the consolidation should happen into the first-filed court, *Mann Mfg., Inc.*, 439 F.2d at 408 n. 6 ("the cases would be required to be consolidated in ... the jurisdiction first seized of the issues"), frankly, which court ultimately resolves the issue is not as important so long as these Plaintiffs are able to fully participate, *as parties*, in advocating for and securing the relief to which they are entitled. *See also* Local Rule 7.6.

Lastly, in lieu of immediate entry of judgment here or a transfer and consolidation as requested above, Plaintiffs request that this Court confer with the *Richardson* court to stay the matters pending in San Antonio pursuant to the first-to-file rule.

Exhibit 9

Respectfully submitted,

/s/Austin Whatley
*Austin M.B. Whatley*
Tex. Bar No. 24104681
S.D. Tex. No. 3348472
281.410.2003 [Phone]
austin@najvarlaw.com
2180 North Loop West, Ste. 255
Houston, TX 77018
281.410.2003 phone
281.582.4138 fax

*Of counsel:*
NAJVAR LAW FIRM, PLLC
*Jerad Wayne Najvar*
Tex. Bar No. 24068079
S.D. Tex No. 1155651
jerad@najvarlaw.com
281.404.4696 phone
281.582.4138 fax
Houston, TX 77018
*Lead Counsel for Plaintiffs*

## CERTIFICATE OF CONFERENCE

Counsel for Plaintiffs has conferred with counsel for the Secretary of State and the Early Voting Ballot Board Defendants regarding this motion. Counsel for the Early Voting Ballot Board Defendants indicated that they are unopposed to the motion to the extent that it requests entry of judgment, but are opposed to the extent it requests transfer, consolidation, or a stay. Counsel for the Secretary of State indicated that they are opposed to the motion to the extent that it requests an entry of judgment, but take no position to the extent it requests transfer, consolidation, or a stay.

*/s/ Austin Whatley*
Austin Whatley

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that on August 26, 2020, the foregoing document, along with any exhibits and proposed order, was served on the following counsel of record in this matter by means of the court's CM/ECF system:

15

Exhibit 9

Michael R. Abrams
PO Box 12548, Capitol Station
Austin, TX 78711
*Counsel for Defendant Ruth R. Hughs*

Martin Golando
405 N. Saint Mary's, Suite 700
San Antonio, TX 78205
*Counsel for ballot board Defendants*

Martie Garcia Vela
*Lead counsel for Starr County Democratic Party*

The court and counsel in the *Richardson* Litigation will also be provided with courtesy copies:

Robert T. Bass
402 West 12th Street
Austin, TX 78701
*Counsel for Defendant Trudy Hancock*

Ryan V. Cox
2911 N. Main Ave.
San Antonio, TX 78212
*Counsel for Plaintiffs*

Claude Robert Heath
3711 S. MoPac Expressway
Building One, Suite 300
Austin, TX 78746
*Counsel for Defendant Perla Lara*

Anne Marie Mackin
300 West 15th Street
General Litigation-11th Floor
Austin, TX 78701
*Counsel for Defendant Texas Secretary of State*

*/s/ Austin Whatley*
Austin Whatley

Exhibit 9