UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| LETICIA GARZA GALVAN, <br> MARTIE GARCIA VELA, <br> FEDERICO FLORES, JR., <br> MARIA GUERRERO, <br> VICENTE GUERRERO, and <br> AMELIA MARTINEZ <br> Plaintiffs, <br><br> v. <br><br> ROLANDO PABLOS, in his official capacity as Texas Secretary of State, and ARMANDINA MARTINEZ, ALMA GARCIA, ALICIA DOUGHERTY NO. 1, ALICIA DOUGHERTY NO. 2, YOLANDA MARTINEZ, <br> Defendants. | § § § § § § § § § § § § § § § § § | Civil Case No. 7:18-cv-00113 <br><br><br><br><br><br><br><br> DECLARATORY AND INJUNCTIVE RELIEF REQUESTED |

## PLAINTIFFS' FIRST AMENDED COMPLAINT[1]

TO THE HONORABLE JUDGE HINOJOSA:

Plaintiffs LETICIA "LETTY" GARZA GALVAN, MARTIE GARCIA VELA, FEDERICO FLORES, JR., MARIA GUERRERO, VICENTE GUERRERO, and AMELIA MARTINEZ hereby challenge Texas's statutory framework for rejection of mail-in ballots as a violation of federal constitutional rights, pursuant to 42 U.S.C. § 1983 and § 1988, as follows:

### PRELIMINARY STATEMENT

1.   Plaintiffs Galvan and Garcia Vela were candidates for County Judge of Starr County, and Judge of the 229th Judicial District Court, respectively, in the March 2018 Democratic primary elections.

---

[1] Counsel for all Defendants have provided written consent for this amended complaint. Therefore, pursuant to Fed. R. Civ. P. 15(a)(2), Plaintiffs file it without a motion for leave.

1

Galvan v Pablos, First Amd. Compl.

Exhibit 10

2

2. The purported margin of victory in Galvan's race for County Judge is only 159 votes, and the purported margin of victory in Garcia Vela's race for judge of the 229th Judicial District is only 106 votes.

3. Starr County officials report that out of 1,089 mail-in ballots returned to the elections department with regard to the 2018 primaries, an incredible 13.5% of them (147 ballots) ended up being rejected by the Early Voting Ballot Board (EVBB).

4. Plaintiffs Galvan and Garcia Vela filed a joint petition in election contest on April 6, 2018. *Galvan v. Vera*, No. DC-18-186 (229th Jud. Dist., Starr). That election contest has now concluded, with a judgment issued by the Fourth Court of Appeals in San Antonio affirming judgment for the contestees. *Galvan v. Vera*, No. 04-18-00309-CV, 2018 WL 4096383 (Tex. App.—San Antonio Aug. 29, 2018) (not designated for publication). Plaintiffs' constitutional claims raised in the instant action were not addressed, nor could they have been addressed, in the election contest, because Texas law holds that Texas courts sitting in election contests do not have jurisdiction to address constitutional claims.

5. Plaintiffs raise herein constitutional challenges regarding (i) the Texas procedures permitting rejection of a voter's mail-in ballot for perceived signature mismatch without providing an opportunity to affirm that the voter did, in fact, sign and submit the mail-in ballot or otherwise to cure any defects so that the vote may be counted in the election at issue, and (ii) those same procedures as violative of the guarantee of equal protection of the laws.

6. Specifically, Plaintiffs seek declaratory and permanent injunctive relief in this case, as well as nominal damages and attorneys' fees, costs, and expenses. While Plaintiffs Galvan and Garcia Vela had hoped to secure a ruling on these constitutional claims in time to affect their election contest, given that that contest is now finally disposed, Plaintiffs no longer seek any injunctive or

other relief that would require the re-counting of any ballots in the March 2018 primaries. Instead, Plaintiffs now seek declaratory and permanent injunctive relief as indicated below.

## PARTIES

7. At all times mentioned in this petition, Plaintiff LETICIA GARZA GALVAN was an individual residing at 495 Dr. Mario Ramirez Ave., Roma, Starr County, Texas. She is currently a member of the Roma Independent School District Board of Trustees, having been initially appointed in May 2011 and then re-elected in November 2016. While she was not successful in her campaign for the Democratic nomination for Starr County Judge in March 2018, she will run for public office again in the future and will be affected by the statutes and regulations challenged here.

8. At all times mentioned in this petition, Plaintiff MARTIE GARCIA VELA was an individual residing at 1000 Rio Colorado, Rio Grande City, Starr County, Texas. While she was not successful in her 2018 campaign for the Democratic nomination for 229th District Court Judge, she will run for public office again in the future and will be affected by the statutes and regulations challenged here.

9. At all times mentioned in this petition, Plaintiff FEDERICO FLORES, JR. was an individual residing at 255 E. Palmas St., La Grulla, Starr County, Texas. Flores submitted a ballot by mail in the March 2018 primary elections in Starr County, but his ballot was rejected for a perceived signature discrepancy. Flores will vote by mail again in future elections.

10. At all times mentioned in this petition, Plaintiff MARIA GUERRERO was an individual residing at 19 Flores St., Roma, Starr County, Texas. Ms. Guerrero submitted a ballot by mail in the March 2018 primary elections in Starr County, but her ballot was rejected for a perceived signature discrepancy. Maria Guerrero will vote by mail again in future elections.

3

Galvan v Pablos, First Amd. Compl.

Exhibit 10

11. At all times mentioned in this petition, Plaintiff VICENTE GUERRERO was an individual residing at 19 Flores St., Roma, Starr County, Texas, and the husband of Plaintiff Maria Guerrero. Mr. Guerrero submitted a ballot by mail in the March 2018 primary elections in Starr County, but his ballot was rejected for a perceived signature discrepancy. Vicente Guerrero will vote by mail again in future elections.

12. At all times mentioned in this petition, Plaintiff AMELIA MARTINEZ was an individual residing at 232 Baldemar Ave., Roma, Starr County, Texas. Martinez, who is blind, submitted a ballot by mail in the March 2018 primary elections in Starr County, but her ballot was rejected for a perceived signature discrepancy. Martinez will vote by mail again in future elections.

13. Defendant ROLANDO B. PABLOS is the current Texas Secretary of State. His principal place of business is 1100 Congress, Capitol Building, Rm. 1E.8, Austin, TX 78701. He is sued in his official capacity only. The Secretary of State is the "Chief Election Officer" of Texas, Tex. Elec. Code 31.001, charged with obtaining and maintaining uniformity in the application, operation, and interpretation of the Election Code and with distributing comprehensive written directives and instructions to state and local authorities who administer election laws.

14. Defendant ARMANDINA MARTINEZ served as the presiding judge of the Early Voting Ballot Board for Starr County, Texas in the March 2018 Democratic Primary elections, and is a resident of Starr County. Defendant Armandina Martinez is sued in her official and individual capacity.

15. Defendants ALMA GARCIA, ALICIA DOUGHERTY NO. 1, ALICIA DOUGHERTY NO. 2 (the daughter of Alicia Daugherty No. 1), and YOLANDA MARTINEZ served as members of the Early Voting Ballot Board for Starr County, Texas in the March 2018 Democratic Primary elections. They are all residents of Starr County. These Defendants are sued in their official and individual capacities.

## JURISDICTION AND VENUE

16. This Court has jurisdiction over this case pursuant to 28 U.S.C. §§1331 and 1343. This civil action arises under the Fourteenth Amendment to the U.S. Constitution (due process and equal protection) and 42 U.S.C. § 1983. Plaintiffs seek a declaration of rights in this case of actual controversy within this Court's jurisdiction pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02.

17. Venue is proper in this Court under 28 U.S.C. § 1391(b) because all Defendants reside in this judicial district, and because a substantial part of the events or omissions giving rise to this claim occurred in this district.

## BACKGROUND

18. The initial canvass showed that Plaintiffs Galvan and Garcia Vela narrowly lost their races, and both candidates requested recounts. The post-recount canvass was certified on April 2, 2018. The certified vote allocation, post-recount, shows:

<u>Starr County Judge</u>

Leticia Garza Galvan  **7,032**

Eloy Vera  **7,191**

<u>Judge, 229th Dist. Ct.</u>

|  | Starr | Jim Hogg | Duval | Total |
|---|---|---|---|---|
| Martie Garcia Vela | 6619 | 898 | 1928 | **9445** |
| Baldemar Garza | 6961 | 798 | 1792 | **9551** |

Accordingly, Plaintiff Galvan's opponent, Eloy Vera, was declared the winner because he purportedly received 159 more votes than Galvan, and Plaintiff Garcia Vela's opponent, Baldemar Garza, was declared the winner because he purportedly received 106 more votes than Garcia Vela.

5

Galvan v Pablos, First Amd. Compl.

Exhibit 10

**Summary of Texas framework for applying for, and returning, ballot by mail, and delivery of timely-returned ballots to the Early Voting Ballot Board**

19.     Eligible voters in Texas may request a ballot to be voted by mail starting with the beginning of the year of the election.  Tex. Elec. Code 84.007(c).  Election administrators must send the mail ballot to the voter within seven days after the clerk accepts the application (if the ballots are already available) or seven days after the ballots become available, as applicable.  *Id.* 86.004(a).[2]  After completing the ballot, the marked ballot must be mailed back such that it arrives at the elections office before the polls close on Election Day, or by 5:00 p.m. on the day after Election Day, if the carrier envelope was postmarked for delivery by 7:00 p.m. on Election Day.  *Id.* 86.007(a).

20.     Because ballots are generally available approximately several weeks before a given primary election day, voters commonly return marked mail ballots to the elections administrators several weeks before Primary Election Day.

21.     However, the ballots are not received and reviewed by the Early Voting Ballot Board, to determine whether they meet the requirements for being counted, until much later.

22.     When a carrier envelope is received by the early voting clerk, the clerk determines whether it is timely and, if so, "the clerk shall enclose the carrier envelope and the voter's early voting ballot application in a jacket envelope."  *Id.* 86.011(a), (b).  The clerk shall also include in the jacket envelope a copy of the voter's federal postcard application if the ballot is voted under chapter 101, and the signature cover sheet, if the ballot is voted under Chapter 105.  *Id.* 86.011(b).

23.     The early voting clerk holds the jacket envelopes for the timely-delivered mail ballots until they are delivered to the EVBB, along with the other materials required to be delivered to the EVBB (like the ballot boxes, poll lists, list of registered voters, etc.) at a later date determined by

---

[2] Some details are left out of this summary, for example, regarding earlier deadlines for sending mail ballots to overseas and military voters.

6

Galvan v Pablos, First Amd. Compl.

Exhibit 10

statute. Tex. Elec. Code 87.021 - .024. The date of delivery to the EVBB can vary depending on the type of election equipment used and the population of the county conducting the election.

24. While the "general rule" states that "the materials" shall be delivered to the EVBB during the time the polls are open on election day, *id.* § 87.022, it appears that, in most elections, the materials may be delivered beginning when early voting by personal appearance concludes, with an earlier delivery date possible in elections conducted by populous counties.

25. In elections using paper ballots for early voting in person or by mail, elections in which early voting in-person is done on "voting machines," and elections in which early voting ballots are to be "counted by automatic tabulating equipment at a central counting station," the jacket envelopes may be delivered to the board "between the end of the period for early voting by personal appearance and the closing of the polls on election day, or as soon after closing as practicable[.]" *Id.* § 87.0221; see also §§ 87.023, 87.024.

26. In an election conducted by authority of a county with a population of 100,000 or more (or conducted jointly with such a county), the jacket envelopes may be delivered to the EVBB between the end of the *ninth* day before the conclusion of early voting and the close of polls on Election Day. *Id.* 87.0222.

**Procedure for appointment of Early Voting Ballot Board**

27. The EVBB consists of a presiding judge and at least two other members. Tex. Elec. Code § 87.002(a).

28. In a primary election, the county chair of the political party appoints the presiding judge. *See* § 87.002(b) ("Except as provided by Subsection (d) [dealing with general election for state and county officers], the presiding judge is appointed in the same manner as a presiding election judge."); § 32.001, .006 (each precinct must have a presiding and alternate election judge, and in a primary, "the judges for each precinct" are appointed by county chair).

7

Galvan v Pablos, First Amd. Compl.

Exhibit 10

29. The presiding judge then appoints the other members of the EVBB. 87.002(b) (("Except as provided by Subsection (c) [dealing with general election for state and county officers], the other members are appointed by the presiding judge in the same manner as the precinct election clerks."); § 32.031 ("The presiding judge for each election precinct shall appoint the election clerks to assist the judge in the conduct of an election at the polling place served by the judge.").

**Qualifying ballots voted by mail**

30. The Election Code distinguishes the process of reviewing mail-in ballots to determine whether to accept them from the process of counting the ballots, once they have been accepted. Tex. Elec. Code 87.0241.

31. "The [EVBB] may determine whether to accept early voting ballots voted by mail in accordance with Section 87.041 at any time after the ballots are delivered to the board." *Id.* 87.0241(a).

32. Therefore, only after the ballots are delivered to the EVBB may it examine them to determine if the particular ballots will be accepted or rejected.

33. Election Code 87.041, "Accepting Voter," describes the EVBB's review:

> (a) The early voting ballot board shall open each jacket envelope for an early voting ballot voted by mail and determine whether to accept the voter's ballot.
>
> (b) A ballot may be accepted only if:
>
>> (1) the carrier envelope certificate is properly executed;
>>
>> (2) neither the voter's signature on the ballot application nor the signature on the carrier envelope certificate is determined to have been executed by a person other than the voter, unless signed by a witness;
>>
>> (3) the voter's ballot application states a legal ground for early voting by mail;
>>
>> (4) the voter is registered to vote, if registration is required by law;
>>
>> (5) the address to which the ballot was mailed to the voter, as indicated by the application, was outside the voter's county of residence, if the ground for early voting is absence from the county of residence;
>>
>> (6) for a voter to whom a statement of residence form was required to be sent under Section 86.002(a), the statement of residence is returned in the carrier

> envelope and indicates that the voter satisfies the residence requirements prescribed by Section 63.0011; and
>
> > (7) the address to which the ballot was mailed to the voter is an address that is otherwise required by Sections 84.002 and 86.003.
>
> (c) If a ballot is accepted, the board shall enter the voter's name on the poll list unless the form of the list makes it impracticable to do so. The names of the voters casting ballots by mail shall be listed separately on the poll list from those casting ballots by personal appearance.
>
> **(d) A ballot shall be rejected if any requirement prescribed by Subsection (b) is not satisfied. In that case, the board shall indicate the rejection by entering "rejected" on the carrier envelope and on the corresponding jacket envelope.**
>
> (e) In making the determination under Subsection (b)(2), the board may also compare the signatures with any two or more signatures of the voter made within the preceding six years and on file with the county clerk or voter registrar to determine whether the signatures are those of the voter.
>
> (f) In making the determination under Subsection (b)(2) for a ballot cast under Chapter 101 or 105, the board shall compare the signature on the carrier envelope or signature cover sheet with the signature of the voter on the federal postcard application.
>
> (g) A person commits an offense if the person intentionally accepts a ballot for voting or causes a ballot to be accepted for voting that the person knows does not meet the requirements of Subsection (b). An offense under this subsection is a Class A misdemeanor.

Tex. Elec. Code Ann. § 87.041 (emphasis added).

34. Accepted ballots are removed from the carrier envelope (while remaining within the "ballot envelope") and set aside to be counted, and rejected carrier envelopes are placed into a larger envelope and sealed. *Id.* § 87.043(a), (b).

35. The presiding judge of the EVBB is required to provide written notice to the voter of the reason a mail ballot was rejected, but is only required to do so within 10 days after the election. *Id.* 87.0431.

36. While notice is thus provided for the reason a ballot was rejected, there is no process afforded *the voter* to rectify any deficiency with the carrier envelope that caused the rejection.

37. While the voter is afforded no means of challenging the rejection of his or her own ballot, the 85th Legislature added a provision permitting a "county election officer" a very limited means

9

Galvan v Pablos, First Amd. Compl.

Exhibit 10

of challenging a determination made by the EVBB, but only with court process and, in many cases, only after securing permission from the county chair of all political parties:

> (a) If a county election officer, as defined by Section 31.091, determines a ballot was incorrectly rejected or accepted by the early voting ballot board before the time set for convening the canvassing authority, the county election officer may petition a district court for injunctive or other relief as the court determines appropriate.
>
> (b) In an election ordered by the governor or by a county judge, the county election officer must confer with and establish the agreement of the county chair of each political party before petitioning the district court.

Tex. Elec. Code § 87.127.

**The EVBB's effectively unreviewable authority to reject mail ballots contrasted with the process for review of provisional ballots.**

38. Voters may vote provisionally pursuant to Election Code § 63.011.

39. The presiding judge of each precinct in which provisional ballots were cast is required to personally deliver them to the EVBB. *Id.* § 65.053. The statute specifically directs the "secretary of state" to "prescribe procedures by which the early voting ballot board may have access to the provisional ballots as necessary to implement this chapter." *Id.*

40. If a voter is accepted for provisional voting because he or she does not meet the voter ID requirements of Section 63.001(b), the voter has <u>six days after the election day</u> in which to either present an acceptable form of ID "to the voter registrar for examination," or execute an affidavit in the voter registrar's presence. *Id.* 65.0541. Here again, the Legislature directed the Secretary of State to prescribe procedures necessary to implement this section. *Id.*

41. The EVBB must then "verify and count provisional ballots as provided by this subchapter" within either thirteen days (general election for state and county officers) or nine days after election day. *Id.* 65.051(a), (a-1).

10
Galvan v Pablos, First Amd. Compl.

Exhibit 10

42. The EVBB's review of provisional ballots to determine whether a ballot is acceptable involves the application of somewhat complex statutes/regulations and requires the board to make factual determinations:

> (a) The early voting ballot board shall examine each affidavit executed under Section 63.011 and determine whether to accept the provisional ballot of the voter who executed the affidavit.
>
> (b) A provisional ballot shall be accepted if the board determines that:
>
>> (1) from the information in the affidavit or contained in public records, the person is eligible to vote in the election and has not previously voted in that election;
>>
>> (2) the person:
>>
>>> (A) meets the identification requirements of Section 63.001(b) at the time the ballot was cast or in the period prescribed under Section 65.0541;
>>>
>>> (B) notwithstanding Chapter 110, Civil Practice and Remedies Code, executes an affidavit under penalty of perjury that states the voter has a religious objection to being photographed and the voter has consistently refused to be photographed for any governmental purpose from the time the voter has held this belief; or
>>>
>>> (C) executes an affidavit under penalty of perjury that states the voter does not have any identification meeting the requirements of Section 63.001(b) as a result of a natural disaster that was declared by the president of the United States or the governor, occurred not earlier than 45 days before the date the ballot was cast, and caused the destruction of or inability to access the voter's identification; and
>>
>> (3) the voter has not been challenged and voted a provisional ballot solely because the voter did not meet the requirements for identification prescribed by Section 63.001(b).
>
> (c) If a provisional ballot is accepted, the board shall enter the voter's name on a list of voters whose provisional ballots are accepted.
>
> (d) If a provisional ballot is rejected, the board shall indicate the rejection by marking "rejected" on the envelope containing the provisional ballot.

Tex. Elec. Code Ann. § 65.054.

43. Because deciding whether a provisional vote is acceptable can necessitate review of voter registration records, the Election Code directs the Secretary of State to prescribe procedures by which the voter registrar shall provide assistance to the EVBB in reviewing the ballots. (In

11

Galvan v Pablos, First Amd. Compl.

Exhibit 10

elections held on the date of the general election for state and county officers, "the procedures must allow for seven calendar days for the voter registrar to review a provisional voter's eligibility."). *Id.* 65.052.

44. Accepted provisional ballots are then to be counted in the manner provided for counting of other early voting ballots. *Id.* 65.057.

**Plaintiff Amelia Martinez**

45. Plaintiff Amelia Martinez is legally blind. However, she is lucid, she takes pride in voting, and she insists on writing her own name when she votes by mail. Martinez signed her own name on her application and carrier envelope for the March 2018 primary elections.

46. Martinez will continue to vote by mail in future elections.

**Plaintiff Federico Flores, Jr.**

47. Plaintiff Federico Flores, Jr. signed his own name on his application and carrier envelope for the March 2018 primary elections.

48. Flores will continue to vote by mail in future elections.

**Plaintiffs Maria & Vicente Guerrero**

49. Plaintiffs Maria and Vicente Guerrero are married and reside together at their home. They both signed their own name on their applications and carrier envelopes for the March 2018 primary elections. When Maria was signing her application to vote by mail, she was worried about running out of space to write her whole name because she wanted to be careful not to write over the word "Date" printed in the box for the signature. Therefore, she consciously left two letters out of her name as she signed the application.

50. Both Maria and Vicente Guerrero will continue to vote by mail in future elections.

51. All voter Plaintiffs were upset to learn that their ballots were rejected and feel disenfranchised because their votes did not count.

**Count 1: The lack of a process affording a voter the opportunity to cure a deficiency resulting in the rejection of his or her mail ballot violates the right to vote and the right to due process and equal protection of the law.**

52. The right to vote is a fundamental right. *See Wesberry v. Sanders,* 376 U.S. 1, 17 (1964) ("No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live. Other rights, even the most basic, are illusory if the right to vote is undermined."). State and local laws that unconstitutionally burden that right are impermissible. *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 42, 41 (2008).

53. "The right to vote by absentee ballot is not, in and of itself, a fundamental right. But once a State permits voters to vote absentee, it must afford appropriate due process protections, including notice and a hearing, before rejecting an absentee ballot." *Zessar v. Helander*, No. 05-C-1917, 2006 WL 642646 (N.D. Ill. Mar. 13, 2006).

54. Texas has no sufficient governmental interest to support its statutory regime, permitting the rejection of mail ballots for perceived signature mismatch while affording the voter no effective notice or timely procedure to cure a claimed deficiency.

55. Even if Texas could assert a sufficient governmental interest, for instance in the prevention of voter fraud, its regime still would not pass muster because Plaintiffs are not asking that any particular ballot be accepted, but merely that a procedure be afforded to permit voters to cure deficiencies that can be cured before they are disenfranchised in a given election. *See Florida Democratic Party v. Detzner*, No. 4:16-CV-607, 2016 WL 6090943 (N.D. Fla. Oct. 16, 2016).

56. Moreover, the process Texas has already implemented regarding the review and acceptance of provisional ballots demonstrates that its legitimate interests regarding mail ballots may be sufficiently protected by affording the same opportunity to mail-ballot voters to cure a curable deficiency as is provided to provisional ballot voters, who have six days after the election to

provide the requisite information. Given the availability of such a process to cure deficiencies, it is unnecessary to burden Plaintiffs' and voters' rights by the severe penalty of disenfranchisement. *See Detzner*, 2016 WL 6090943, *6. In fact, in the case of perceived signature mismatch, the cure can and should be as simple as providing a means for the voter, after timely notice of a perceived mismatch, to affirm that he or she did in fact sign and submit the ballot. The confirmation of the voter's identity is all that is required, which should then allow the vote to be counted. This is even simpler than the kinds of fact questions that some provisional ballots require officials to ascertain or examine before determining whether a provisional ballot will count.

57. The Texas statutes and associated regulations and policies as challenged herein have injured Plaintiffs in the March 2018 primary elections and will injure them in future election campaigns, as well as injuring the rights of other voters whose ballots have been and will be rejected. Money damages cannot adequately compensate for these constitutional injuries and, absent appropriate declaratory and equitable relief, the injuries are irreparable. There is no adequate remedy at law.

**Count 2: The lack of uniform standards for reviewing voter signatures to determine whether a ballot is acceptable violates equal protection.**

58. Texas imposes no uniform standards governing the review and acceptance of carrier envelopes, which determines whether a ballot is going to be accepted for counting or rejected.

59. Not only are there no standards governing this review across counties, but there is no training required for EVBB members who will be performing the review. The EVBB members are tasked with, among other things, reviewing voters' handwriting in the signatures on the carrier envelopes to see if it matches the signature on the voter application. Like the county canvassing boards at issue in *Detzner*, these EVBBs "are staffed by laypersons that are not required to undergo—and many do not participate in—formal handwriting-analysis education or training."

14

Galvan v Pablos, First Amd. Compl.

Exhibit 10

*Detzner*, *supra*, at *2. The federal district court in *Detzner* further pointed out that "handwriting experts are often challenged under *Daubert*. There is no way that any member of a canvassing board could survive a *Daubert* challenge yet the State of Florida empowers them to declare ballots illegal." *Id.* at *2 n.3.

60. Subjecting voters' mail-ballots to review that in many cases disenfranchises the voter but is guided by no statewide standards or training of those performing the review violates equal protection of the law, as the review inescapably will vary from county to county. A voter's ballot that may be rejected by the Starr County EVBB in the March 2018 primary might have been accepted and counted if reviewed by another county's EVBB, or even by the Starr County EVBB when it is staffed by different members in the November election.

61. The Texas statutes and associated regulations and policies as challenged herein have injured Plaintiffs in the March 2018 primary elections and will injure them in future election campaigns, as well as injuring the rights of other voters whose ballots have been and will be rejected. Money damages cannot adequately compensate for these constitutional injuries and, absent appropriate declaratory and equitable relief, the injuries are irreparable. There is no adequate remedy at law.

**Count 3: The manner in which the Starr County EVBB reviewed carrier envelopes for acceptance in this election—whereby each individual member made unilateral decisions to accept or reject—violates equal protection.**

62. While the procedures challenged herein are unconstitutional even when implemented as required under the statutes and regulations, the Starr County EVBB exacerbated the constitutional infirmities in the March 2018 primaries by the particular manner in which it undertook review of the carrier envelopes.

63. Under no circumstances is it permissible under Texas law for an individual member of an EVBB to be vested with the authority to unilaterally determine whether a carrier envelope meets

15

Galvan v Pablos, First Amd. Compl.

Exhibit 10

the requirements for acceptance. But that is exactly what happened here. The Starr County EVBB in the March 2018 primaries divided the 987 mail ballot carrier envelopes they claim to have received into stacks for each individual member, and each individual member decided whether to accept or reject a given ballot in their stack.

64. Thus, in this case, the Plaintiffs and the voters whose ballots were cast in Starr County were subjected to unequal treatment within the EVBB itself, as the standards of review applied by each member of the board inarguably varied.

65. The Texas statutes and associated regulations and policies as challenged herein have injured Plaintiffs in the March 2018 primary elections and will injure them in future election campaigns, as well as injuring the rights of other voters whose ballots have been and will be rejected. Money damages cannot adequately compensate for these constitutional injuries and, absent appropriate declaratory and equitable relief, the injuries are irreparable. There is no adequate remedy at law.

**Prayer**

WHEREFORE, PREMISES CONSIDERED, Plaintiffs respectfully request:

1. Declaratory judgment that the statutes, regulations, and procedures as challenged herein violate the right to vote, due process of law, and equal protection of the law, as alleged herein, facially and as-applied;

2. A permanent injunction against the State of Texas, by and through Secretary Pablos or as otherwise deemed appropriate by this Court, and against the Starr County Early Voting Ballot Board and each of its members, from enforcement of the statutory procedure permitting mail ballot rejection for perceived signature mismatch without affording appropriate procedural due process permitting voters a method of seeking to cure any deficiency that may be cured to ensure their ballot is counted;

3. A permanent injunction or other appropriate order implementing constitutionally sufficient procedures to permit Texas voters whose mail ballots are slated to be rejected for perceived signature mismatch the opportunity to affirm their identity or otherwise to cure perceived deficiencies regarding their mail-in ballots so that they can be counted in the relevant election;

4. A permanent injunction or other appropriate order directing the Secretary of State to provide notice of any procedures ordered by this Court to the public, including via the Secretary's official website, and to the appropriate election administrator or other relevant election official of each county in Texas;

5. Any further orders necessary or expedient in effectuating the relief sought herein;

6. Nominal damages for the violation of Plaintiffs' constitutional rights;

7. Reasonable and necessary attorneys' fees, costs, and expenses pursuant to 42 U.S.C. § 1988; and

8. All other relief to which Plaintiffs may be entitled.

                                            Respectfully submitted,

                                            Jerad Wayne Najvar
                                            Tex. Bar No. 24068079
                                            Southern Dist. No. 1155651
                                            jerad@najvarlaw.com
                                            2180 North Loop West, Ste. 255
                                            Houston, TX 77018
                                            281.404.4696 phone
                                            281.582.4138 fax
                                            *Attorney in Charge for Plaintiffs*

*Of Counsel*:
NAJVAR LAW FIRM, PLLC
2180 North Loop West, Suite 255
Houston, TX 77018

**Certificate of Service**

Galvan v Pablos, First Amd. Compl.

Exhibit 10

The undersigned counsel hereby certifies that on October 14, 2018, the foregoing document, and any accompanying exhibits and proposed order, was served on the counsel of record in this matter by means of the court's CM/ECF system:

Mr. Eric Hudson
Mr. H. Carl Myers
PO Box 12548, Capitol Station
Austin, TX 78711
*Counsel for Defendant Pablos*

Mr. Martin Golando
405 N. Saint Mary's, Suite 700
San Antonio, TX 78205
*Counsel for ballot board Defendants*