**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| DR. GEORGE RICHARDSON, ROSALIE WEISFELD, AUSTIN JUSTICE COALITION, COALITION OF TEXANS WITH DISABILITIES, MOVE TEXAS CIVIC FUND, and LEAGUE OF WOMEN VOTERS OF TEXAS, *Plaintiffs*, | § § § § § § § | |
| v. | § § | No. 5:19-cv-00963 |
| TEXAS SECRETARY OF STATE; TRUDY HANCOCK, in her official capacity as Brazos County Elections Administrator; and PERLA LARA, in her official capacity as City of McAllen, Texas Secretary, *Defendants*. | § § § § § § | |

**DEFENDANT SECRETARY OF STATE'S OPPOSED MOTION FOR STAY PENDING APPEAL**

On August 8, 2020, the Court entered an order mandating that Defendant Ruth R. Hughs, in her official capacity as Texas Secretary of State (Secretary), issue an advisory in ten days instructing the local election officials who administer Texas's mail-in ballot signature-verification requirement to either abandon that requirement for the upcoming election, or to implement significant changes thereto. Dkt. 99. The Secretary hereby moves for a stay during the pendency of her appeal to the United States Court of Appeals for the Fifth Circuit, Dkt. 100, and respectfully requests a ruling on this motion to stay by 5:00 PM on September 10, 2020. *See* FED. R. APP. P. 8(a)(1)(A). If no stay issues by that date and time, the Secretary intends to file a motion to stay in the Court of Appeals.

**ARGUMENT & AUTHORITY**

Federal Rule of Civil Procedure 62(d) provides that "[w]hile an appeal is pending from an interlocutory order or final judgment that grants, continues, modifies, refuses, dissolves, or refuses to dissolve or modify an injunction, the court may suspend, modify, restore, or grant an injunction." FED. R. CIV. P. 62(d). When considering whether to grant a stay pending appeal, courts consider four

factors: (1) applicant's likelihood of success on the merits; (2) applicant's irreparable harm in the absence of a stay; (3) harm to other parties; and (4) the public interest. *Nken v. Holder*, 556 U.S. 418, 426 (2009); *Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott*, 734 F.3d 406, 410 (5th Cir. 2013). The Fifth Circuit "has refused to apply these factors in a rigid, mechanical fashion," and has "held that the movant 'need only present a substantial case on the merits when a serious legal question is involved and show that the balance of equities weighs heavily in favor of granting the stay,'" as opposed to demonstrating a likelihood of success on the merits. *United States v. Baylor Univ. Med. Ctr.*, 711 F.2d 38, 39 (5th Cir. 1983) (per curiam) (quoting *Ruiz v. Estelle*, 650 F.2d 555, 565 (5th Cir.1981)).

The relevant factors favor issuing a stay pending resolution of the Secretary's appeal. This case presents "serious legal questions," including the propriety of enjoining a key ballot-integrity provision of Texas's mail-in ballot framework *after* the local election officials who implement that framework have begun to do so. *E.g.,* Dkt. 93.1 ¶¶ 4-6; Dkt. 93.2 ¶¶5, 8, 10 (detailing steps that have already been taken to prepare, print, and deliver mail-in ballot materials). Moreover, the balance of equities strongly favors issuing a stay, *see infra*, Parts II, III; *Veasey v. Abbott*, 870 F.3d at 391.

## I. The Secretary Presents a Substantial Case on the Merits and Is Likely to Prevail on Appeal.

### A. The Secretary's standing, merits, and *Purcell* arguments are substantial and likely to prevail on appeal.

As the Secretary has briefed, Plaintiffs lack standing,[1] Plaintiffs' claims fail on the merits,[2] and the *Purcell* principle counsels against enjoining a key ballot-integrity provision of Texas's mail-in ballot framework at this point in the election cycle.[3] The Secretary incorporates those arguments by reference here. This Court has rejected those arguments, but given the burdens and confusion the injunction will impose (*see infra*, Part II) and the substantial support for the Secretary's arguments, the Court of

[1] *See, e.g.*, Dkts. 70, 75, 79.
[2] *See, e.g.*, Dkts. 70, 75, 79.
[3] *See, e.g.*, Dkts. 93 at 18-19; 98 at 8-11.

Appeals should have an opportunity to consider those arguments before the injunction is implemented. The Secretary's significant jurisdictional, prudential, and merits arguments, therefore, support entry of a stay. *See Baylor Univ. Med. Ctr.*, 711 F.2d at 39.

**B. The Injunction is vague and overbroad.**

The Secretary's appeal of the injunction's substance also presents independent bases upon which the Secretary has substantial arguments that are likely to prevail on appeal. Federal Rule of Civil Procedure 65(d) requires that an injunction be "specific in terms; [and] describe in reasonable detail, and not be reference to the complaint or other document, the act or acts sought to be restrained." This requires "that an ordinary person reading the court's order should be able to ascertain from the document itself *exactly* what conduct is proscribed." *United States Steel Corp. v. United Mine Workers of Am.*, 519 F.2d 1236, 1246 n. 20 (5th Cir. 1975) (emphasis added). And, the scope of relief is limited to the legal violation found. "Thus, an injunction is vague if it does not comply with the specificity requirements in in Rule 65(d), and is overbroad if it is not 'narrowly tailor[ed] . . . to remedy the specific action which gives rise to the order' as determined by the substantive law at issue." *Scott v. Schedler*, 826 F.3d 207, 211 (5th Cir. 2016) (per curiam) (citation omitted). On appeal, the Secretary is likely to prevail on her arguments that the injunction is both overbroad and impermissibly vague.

The injunction is overbroad because it exceeds the violations that the Court found and because it is not limited to the least intrusive means of remedying those violations. The Supreme Court has explained that "injunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the *plaintiffs*." *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994) (emphasis added). This principle is particularly relevant here, since the Constitution gives States the authority to choose the time, place, and manner of elections, absent federal law expressly to the contrary. U.S. CONST. art. I, §4 cl. 1. Texas retains authority to regulate mail-in ballots to the extent not preempted or otherwise controlled by federal law. *See id.*; *see generally Pavek v. Donald J. Trump for*

*President, Inc.*, 967 F.3d 905, 909 (8th Cir. 2020) (even where state does not challenge an injunction, "it is in the public interest to uphold the will of the people, as expressed by acts of the state legislature, when such acts appear harmonious with the Constitution").

The Court did not hold that signature verification is always unconstitutional, nor did it find that a large number of mail-in ballot applications have been improperly rejected in the State. Rather, it found that a single Plaintiff—Rosalie Weisfeld—had a ballot rejected for failure to satisfy Texas's signature-verification requirement. Dkt. 99 at 16-18. The record reflects that Weisfeld neither pursued any relief available under law[4] nor contacted the Secretary,[5] even though she had no basis to believe that she did not receive notice in time to avail herself of either of these options.[6] The Court further found that an organizational plaintiff—Coalition of Texans with Disabilities—expends resources informing voters about the signature-verification requirement. Dkt. 99 at 18-26.

The injunction is not tailored to these findings; instead, it completely displaces the State's interests in ballot integrity, uniform election administration, and enforcement of the Legislature's duly enacted laws.[7] As such, the inunction fails to display the "adequate sensitivity to the principles of federalism" required in the Elections Clause context. *Voting Rights Coal. v. Wilson*, 60 F.3d 1411, 1416 (9th Cir. 1995); *Ass'n of Cmty. Orgs. For Reform Now (ACORN) v. Edgar*, 56 F.3d 791, 798 (7th Cir. 1995).

Thus, if implemented, the injunction would intrude upon Texas's authority to develop its own mail-in ballot framework. Indeed, injunctions aimed at state election laws must "impose no burdens on the state not authorized by the [relevant federal law] which would impair the State['s] retained

[4] This includes the potential to ask a county election officer to petition a court for relief. Election contests are also available to candidates where miscounted mail-in ballots impact the result of an election. *See, e.g.*, TEX. ELEC. CODE §§ 221.001-243.013; *Reese v. Duncan*, 80 S.W.3d 650, 660–62 (Tex. App.—Dallas 2002, pet. denied) (affirming order for a new election because mail-in ballots with non-matching signatures had been counted).
[5] Dkt. 70 at 5, 6.
[6] Dkt. 70 at 6 & n.17.
[7] *See, e.g.*, Dkt. 93 at 3-7.

power to conduct its state elections as it sees fit." *Wilson*, 60 F.3d at 1416. Specifically, the injunction is overbroad, at a minimum, insofar as it:

- Attempts to prevent any enforcement of Texas's signature-verification requirement by local election officials who are not parties to this case, Dkt. 99 at 100, Injunction, Part 2(a),

- Requires non-party local election officials to "pursue a challenge [under § 87.127] on behalf of" *any* voter who claims improper rejection of a mail-in ballot, regardless of whether

    - the ABBM and carrier envelope were signed by the same person;
    - the voter complied with other legal requirements for voting a mail-in ballot;
    - the official has the resources to pursue such action; or
    - any other circumstances

  Dkt. 99 at 102, Injunction Part (2)(b)(iv);

- Requires both the Secretary and non-party local election officials to implement burdensome new procedures on the eve of an already taxing election;

- Compels the Secretary—whenever a local election official does not comply with the previous paragraph—to take affirmative action in her official capacity to "order" the official "correct the offending conduct" under § 31.005; and,

- Requires Texas to implement court-devised notice-and-cure procedures on a statewide basis, without allowing Texas to develop its own;

These extraconstitutional requirements can hardly be said to "achieve the federal law's ends in the least obtrusive possible manner," as narrow tailoring and federalism require. *United States v. Louisiana*, 196 F. Supp. 3d 612, 677 (M.D. La. 2016) (vacated by settlement); *see also Scott*, 826 F.3d at 214. Since the provisions above impose "burdens on the state not authorized by law," *Wilson*, 60 F.3d at 1416, the Secretary will likely succeed on the merits on appeal.

## II. The Secretary will Suffer Irreparable Harm Absent a Stay.

A state suffers irreparable harm when an injunction "would frustrate the State's program" and "deprive[] the State of the opportunity to implement its own legislature's decisions." *Moore v. Tangipahoa Parish Sch. Bd.*, 507 F. App'x 389, 399 (5th Cir. 2013) (per curiam). Irreparable harm also

exists where "the denial of a stay will utterly destroy the status quo," *Providence Journal Co. v. FBI*, 595 F.2d 889, 890 (1st Cir. 1979), and "this harm cannot be undone," *Grutter v. Bollinger*, 247 F.3d 631, 633 (6th Cir. 2001) (order). When there is no mechanism for the State "to recover the compliance costs they will incur if the [injunction] is invalidated on the merits," an injury is irreparable. *Texas v. EPA*, 829 F.3d 405, 434 (5th Cir. 2016).

Moreover, the injunction inflicts an "institutional injury" from the "inversion of . . . federalism principles." *Texas v. EPA*, 829 F.3d 405, 434 (5th Cir. 2016). Federalism principles recognize that "any time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (alterations omitted) (Roberts, C.J. in chambers). And that right is not protected for the sake of state officials. Instead, the "ultimate purpose" of the structural provisions of the Constitution and of guarding state sovereignty, "is to protect the liberty and security of the governed." *Metro. Wash. Air-ports Auth. v. Citizens for Abatement of Aircraft Noise, Inc.*, 501 U.S. 252, 272 (1991).

Those concerns are particularly important here. "It is beyond cavil that 'voting is of the most fundamental significance under our constitutional structure.'" *Burdick v. Takushi*, 504 U.S. 428, 433 (1992). And it is one of the most fundamental obligations of the State to enact clear and uniform laws for voting to ensure "fair and honest" elections, to bring "order, rather than chaos, [to] the democratic process[]," and ultimately to allow the vote to be fully realized. *Storer v. Brown*, 415 U.S. 724, 730 (1974).

The injunction threatens irreparable injury by injecting substantial confusion into a mail-in voting process that is already underway, with balloting materials already printed and distributed to voters. *See, e.g.*, Dkts. 93.1 ¶¶ 4-6; 93.2 ¶¶ 5, 8, 10 (detailing steps that, as of August 31, 2020, had already been taken to prepare, print, and distribute mail-in balloting materials). The injunction further causes harm by requiring Texas to eliminate or significantly alter its handling of mail-in ballots, depriving it of the opportunity to implement its legislature's decisions. Enjoining State officials from

carrying out validly enacted laws imposes irreparable harm. *Maryland v. King*, 567 U.S. at 1303; *New Motor Vehicle Bd. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977) (Rehnquist, J., in chambers) ("[A]ny time a State is enjoined by a Court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury.").

Moreover, implementing the injunction will alter the status quo at a crucial moment in the 2020 election cycle. The injunction requires the Secretary to instruct local election officials across the State to wholly abandon the Legislature's carefully considered signature-verification framework or to upend it at by implementing a minutely detailed court-created replacement scheme at a breakneck pace. As reflected in affidavits from the Secretary of State's Director of Elections and the Hays County election administrator, this will impose significant burdens on the Secretary and local officials and create widespread voter confusion. Dkts. 93.1, 93.2.

Given the irreparable harm the Secretary, local election officials, and the State will suffer if forced to implement the terms of the injunction, a stay pending appeal is appropriate. *See Ruiz v. Estelle*, 650 F.2d 555, 571 (5th Cir. 1981) (per curiam) (staying portions of district court order that imposed "burden[s] upon [the state agency] in terms of time, expense, and administrative red tape"); *Rufo v. Inmates of Suffolk Cty. Jail*, 502 U.S. 367, 381 (1992) (recognizing the public's interest in the "sound and efficient operation" of government programs). In balancing the equities, the undeniable harm to the State, the Secretary, local election officials—and most importantly voters across the State—far outweighs the improper rejection of a single voter's ballot in a past election and the alleged burden of educational efforts related to mail-in voting rules.

## III. The Remaining Factors Favor a Stay.

### A. A stay merely maintains the status quo and will not harm Plaintiffs.

A stay pending appeal will not threaten Plaintiffs with irreparable harm because it maintains the status quo, and Plaintiffs have alleged only a speculative threat of harm in the absence of an

injunction. "Because injunctive and declaratory relief cannot conceivably remedy any past wrong, plaintiffs seeking [such] relief" must show an injury that is "imminent. For a threatened future injury to satisfy the imminence requirement, there must be at least a substantial risk that the injury will occur." *Stringer v. Whitley*, 942 F.3d 715, 720–21 (5th Cir. 2019) (citations and quotation marks omitted).

The asserted "past wrong" of ballot-rejection "cannot conceivably [be] remed[ied]" by the injunction entered here. *Stringer*, 942 F.3d at 720 (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 108 (1998)). Indeed, standing "does not follow from the conclusion that the injunctive relief sought by a plaintiff would prevent the plaintiff from suffering the same injury in the future, which is always true when a plaintiff seeks an injunction prohibiting a defendant from repeating an action that injured the plaintiff in the past." *Stringer*, 942 F.3d at 721 (emphasis added). Instead, "Plaintiffs must also show that there is a substantial risk that they will suffer the potential future injury absent their requested relief." *Id.* Plaintiffs have not shown that existing measures to protect mail-in voters are so deficient that the absence of additional federal-court-ordered measures threatens them with imminent harm.

**B. The public interest strongly favors a stay.**

When the State seeks a stay pending appeal, "its interest and harm merge with that of the public." *Veasey v. Abbott*, 870 F.3d 387, 391 (5th Cir. 2017) (per curiam) (citation omitted). Of course, the proper expenditure of state funds and implementation of state programs is a matter of public interest. *E.g.*, *Hamer v. Brown*, 831 F.2d 1398, 1402 (8th Cir. 1987). The efficient administration of government programs is also in the public interest. *See*, *e.g.*, *Rufo v. Inmates of Suffolk Cty. Jail*, 502 U.S. 367, 381 (1992). Thus, the burdens and uncertainty the injunction will impose upon not only the Secretary, but also the State, its local election officials, its voters, and its resources—on the precipice of an election, where the Court of Appeals might vacate or modify the injunction—show that a stay is in the public's interest. *See supra*, Part II. Balanced against the interests of the Plaintiffs—who have

not even shown that the remedial procedures would remedy any alleged injury—a stay pending appeal is appropriate.

Finally, the Supreme Court "has repeatedly emphasized that lower federal courts should ordinarily not alter the election rules on the eve of an election." *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 140 S. Ct. 1205, 1207 (2020). For example, in *Purcell v. Gonzalez*, 549 U.S. at 4, the Supreme Court relied on "considerations specific to election cases" to caution against federal court interference with impending elections. It explained that "[c]ourt orders affecting elections . . . can themselves result in voter confusion and consequent incentive to remain away from the polls. As an election draws closer, that risk will increase." *Id.* at 4–5. To account for those risks, a federal court considering a request to enjoin state election laws before an impending election must consider potential conflicts with the timing of elections and appellate proceedings. *See id.* Similarly, the Fifth Circuit declined to grant immediate relief on a Voting Rights Act claim even though several months remained before the general election. *See Veasey v. Abbott*, 830 F.3d 216, 243 (5th Cir. 2016) (en banc) (instructing the district court in July 2016 to "take the requisite time to reevaluate the evidence" and fashion a remedy to apply after the November 2016 election). There is undisputed evidence that many voters have already completed ABBMs, and local election officials have already printed mail-in ballot materials. Changing the mail-in ballot rules at this juncture will cause confusion among voters and officials. Dkt. 93.1 ¶¶ 3–6, 9, 14–16; Dkt. 93.2 ¶¶ 5, 8, 10. This further supports a stay under the *Purcell* principle.

Applying *Purcell*'s foundational doctrine, courts nationwide have reached similar results in recent months, weeks, and days, given the problems with changing balloting and other voting procedures at this point in the 2020 election cycle. For example, last week—in a case remarkably similar to this one—a Tennessee District Court noted that "lower federal courts should ordinarily not alter the election rules on the eve of an election," concluding, "[t]he Court believes that this principle applies here, at least to the extent that we may be considered to have reached the 'eve' of the

November general election, because to enjoin enforcement of the signature-verification system in advance of the upcoming general election would be to alter Tennessee's rules for that election." *Memphis A. Phillip Randolph Inst. v. Hargett*, No. 3:20-CV-00374, 2020 WL 5095459, at *22 (M.D. Tenn. Aug. 28, 2020) (quoting *Republican Nat'l Comm.*, 140 S. Ct. at 1207 (additional citation omitted)).[8]

Similar results abound. *See, e.g.*, *Kishore v. Whitmer*, No. 20-1661, 2020 WL 4932749, at *4 (6th Cir. Aug. 24, 2020) (affirming denial of preliminary injunction where plaintiffs alleged Michigan's ballot-access restrictions, when enforced alongside stay-at-home orders, unconstitutionally burdened voting rights) (citing, *inter alia*, *Republican Nat'l Comm.*, 140 S. Ct. at 1207; *Purcell*, 549 U.S. at 4–5); *Memphis A. Phillip Randolph Inst. v. Hargett*, No. 3:20-CV-00374, 2020 WL 4279623, at *1, *9 (M.D. Tenn. July 21, 2020) (declining to enjoin mail-in ballot procedures including "Tennessee's process for verifying that the signature on an absentee ballot matches the signature contained in the (purported) ballot-caster's voter registration record" where doing so would "change the State's careful scheduling into a chaotic attempt to get absentee ballots out on time") (quoting *Perry v. Judd*, 840 F. Supp. 2d 945, 954 (E.D. Va. 2012), *aff'd,* 471 F. App'x 219 (4th Cir. 2012)) (additional citations omitted).

Indeed, courts have declined to grant relief under *Purcell* even when strongly suggesting that a plaintiff has a meritorious constitutional claim. *E.g.*, *Garcia v. Griswold*, No. 20-CV-1268-WJM, 2020 WL 4926051, at *5 (D. Colo. Aug. 21, 2020) (denying request for temporary restraining order placing candidate on ballot after the deadline; concluding, "[a]t this very late hour, the Secretary's interest in ensuring that ballots are timely printed outweighs even a meritorious claim under the Constitution") (citing, *inter alia*, *Purcell*, 549 U.S. at 4–5); *Constitution Party of Va. v. Va. State Bd. of Elections*, No. 3:20-CV-349, 2020 WL 4001087, at *7 (E.D. Va. July 15, 2020) (recognizing, in challenge to signature requirement for ballot-access, that "defendants will suffer prejudice if the Court requires them to add

[8] This case also lends additional support to one of the Secretary's arguments on the merits: namely, that there is no procedural due process interest in an absentee ballot. *Hargett*, 2020 WL 5095459, at *7 (quoting *Jordan v. Fisher*, 823 F.3d 805, 810–11 (5th Cir. 2016), as revised (June 27, 2016)). *See also* Dkt. 79 at 1, 7–8; Dkt. 75 at 9–10; Dkt. 70 at 23.

a new element to the signature verification process in the middle of a global pandemic, weeks before they must finalize, approve, and print the ballots.") (citing *Republican Nat'l Comm.*, 140 S. Ct. at 1207); *Bond v. Dunlap*, No. 1:20-CV-00216-NT, 2020 WL 4275035, at *15 (D. Me. July 24, 2020) (denying request to enjoin ballot-access requirement because, "[w]hile the general election is a little over three months away, slashing the numerical signature requirement—after the submission deadline has already passed—would be altering state election rules in a way that goes beyond the court's role.") (citing, *inter alia*, *Esshaki v. Whitmer*, 2020 WL 2185553, at *2 (6th Cir. May 5, 2020) ("[F]ederal courts have no authority to dictate to the States precisely how they should conduct their elections.") (additional citation and quotation marks omitted)).

Because the mail-in balloting process is already underway, injunctive relief is inappropriate.

**CONCLUSION**

The Court should stay its September 8, 2020 Memorandum Opinion and Order granting injunctive relief pending resolution of the Secretary's appeal. The Secretary respectfully requests a ruling on her motion to stay by 5:00 PM on September 10, 2020.

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

RYAN L. BANGERT
Deputy First Assistant Attorney General

DARREN L. MCCARTY
Deputy Attorney General for Civil Litigation

THOMAS A. ALBRIGHT
Chief for General Litigation Division

*/s/ Anne Marie Mackin*
ANNE MARIE MACKIN
Texas Bar No. 24078898

Assistant Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2798 | FAX: (512) 320-0667
anna.mackin@oag.texas.gov

**ATTORNEY FOR DEFENDANT
TEXAS SECRETARY OF STATE**

## CERTIFICATE OF SERVICE

I certify that that on September 9, 2020, this document was filed electronically via the Court's CM/ECF system, causing electronic service upon all counsel of record.

*/s/ Anne Marie Mackin*
ANNE MARIE MACKIN
Assistant Attorney General

## CERTIFICATE OF CONFERENCE

I certify that that on September 9, 2020, I conferred via email with counsel for all parties regarding the relief requested in this motion. Counsel for Defendant Perla Lara, in her official capacity as City of McAllen, Texas Secretary; and counsel for Defendant Trudy Hancock, in her official capacity as Brazos County Election Administrator, indicated that they do not oppose the relief requested herein. Counsel for Plaintiffs indicated that they oppose to the relief requested herein.

*/s/ Anne Marie Mackin*
ANNE MARIE MACKIN
Assistant Attorney General